UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
: 
In re : Chapter 11
: 
DITECH HOLDING CORPORATION, *et al.*, : Case No. 19-10412 (JLG)
: 
Debtors.[1] : (Jointly Administered)
: Related Docket No. 10
------------------------------------------------------------X

### INTERIM ORDER (I) AUTHORIZING DEBTORS TO CONTINUE HONORING REVERSE ISSUER AND SERVICING OBLIGATIONS IN THE ORDINARY COURSE AND GRANTING RELATED RELIEF, (II) MODIFYING AUTOMATIC STAY ON A LIMITED BASIS TO FACILITATE DEBTORS' ONGOING OPERATIONS, AND (III) SCHEDULING A FINAL HEARING

Upon the motion (the "**Motion**")[2] of Ditech Holding Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105(a), 362, 363(c), 363(f), 1107(a), and 1108 of the Bankruptcy Code and Bankruptcy Rules 4001, 6003, and 6004, the Debtors request authority, but not direction, to (a) (i) honor and fund the Ginnie Mae Buyout Obligations, (ii) continue their securitization activities, (iii) honor the Ginnie Mae Agreements; and (iv) remit the Ginnie Mae Commitment Fee, the Ginnie Mae Guaranty Fee, amounts due from Borrower Paydown (each as defined below), and certain administrative fees arising from RMS's securitization activities; (b) (i) honor the Servicing Obligations, including by continuing to

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837).  The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

[2]   Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

perform under the Fannie Mae Agreements and honor their obligations under the MECA, (ii) honor and pay the Curtailment Obligations, (iii) collect and securitize the Servicing Fees, and (iv) remit the Servicer Advances; (c) continue assignment and claim reimbursement activities; (d) continue to employ and pay prepetition claims of the Critical Vendors; (e) continue honoring RMS's indemnification obligations to FHA in connection with defective loans; (f) fulfill compliance and regulatory obligations; and (g) provide assurances of future performance to Ginnie Mae and Fannie Mae, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing to consider the relief requested in the Motion on an interim basis on February 13, 2019 (the "**Hearing**"); and upon the Lombardo Declaration, filed contemporaneously with the Motion, and the record of the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted on an interim basis to the extent set forth herein.

2. The Debtors are authorized, but not directed, to continue in the ordinary course of business:

   a. (i) honor and fund the Ginnie Mae Buyout Obligations, (ii) continue their activities, (iii) honor the Ginnie Mae Agreements; and (iv) remit the Ginnie Mae Commitment Fee, the Ginnie Mae Guaranty Fee, amounts due from Borrower Paydown (each as defined below), and certain administrative fees arising from RMS's securitization activities;

   b. (i) honor the Servicing Obligations, including by continuing to perform under the Fannie Mae Agreements and honor their obligations under the MECA, (ii) honor and pay the Curtailment Obligations, (iii) collect and securitize the Servicing Fees, and (iv) remit the Servicer Advances (each as defined below);

   c. continue assignment and claim reimbursement activities;

   d. continue to employ and pay prepetition claims of the Critical Vendors;

   e. continue honoring their indemnification obligations to FHA in connection with defective loans;

   f. fulfill compliance and regulatory obligations; and

   g. provide assurances of future performance to Ginnie Mae and Fannie Mae.

3. The Debtors are authorized, but not directed, to continue selling REO Property (i) on an "as is where is" basis and without any representation and warranties except for title, in the ordinary course of business, in their discretion and subject to their business judgment, and consistent with past practices, and (ii) free and clear of any and all liens and encumbrances (a) under section 363(f) of the Bankruptcy Code to the extent the Debtors own the REO Property, and (b) to the extent permitted pursuant to applicable non-bankruptcy law for REO Property owned by third parties; *provided*, *that*, to the extent any lien, claim, or encumbrance exists on the property that is the subject of such sale, it shall attach to the proceeds realized from such sale.

3

**Additional Relief Related to the Debtors' Businesses**

4. The Debtors are authorized but not directed, to continue in the ordinary course of business (a) to fulfill state licensing requirements and to pay related obligations, (b) to submit to, and comply with, state and federal regulatory exams and audits and to pay related obligations, costs, and expenses, and (c) to remediate errors and/or lack of compliance with laws or regulations, including by continuing (i) to make payments to borrowers (*e.g.*, in the form of reimbursements, refunds, and/or out-of-pocket expenses), (ii) to forgive past due amounts and/or assessed but unpaid fees or other charges, (iii) to pay fees, fines, and/or penalties, either directly to the applicable authority or through a Critical Vendor, (iv) to incur and pay certain expenses, (v) to pay the costs and expenses of state and federal regulatory examinations, and (vi) to take such other measures as may be required by, or agreed to with, state and federal regulators.  For the avoidance of doubt, to the extent the Debtors' avail themselves provided under this Order, the Debtors shall pay all amounts due and meet all other ordinary course of business obligations to all MBS and similar trusts, including without limitation, the trustees thereunder.

**Critical Vendors**

5. Pursuant to sections 105(a) and 363(c) of the Bankruptcy Code, the Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay some or all of the prepetition claims of the Critical Vendors, upon such terms and in the manner provided in this Order and the Motion and subject to the Management Approval Process (as defined herein); provided, that payments to Critical Vendors on account of prepetition claims shall not exceed $35 million during the first thirty (30) days following the Commencement Date; provided further, that payments to Critical Vendors on account of such prepetition claims may not be accelerated and shall be made only in the ordinary course in accordance with Customary Trade Terms.

6. As used herein, the term "Management Approval Process" means the advance review and approval by the chief financial officer of the Company, following consultation with the Debtors' management and AlixPartners LLP, of any prepetition payment made to a Critical Vendor.

7. As soon as reasonably practicable following entry of this Order, the Debtors shall provide a list of potential Critical Vendors and the potential Critical Vendor claims (each, a "**Critical Vendor Claim**") thereof to the Court and the U.S. Trustee (the "**Critical Vendors List**"). The Critical Vendors List shall not be publicly filed. The Debtors shall not pay a claim as a Critical Vendor Claim unless such claim is set forth on the Critical Vendors List; provided, that the Debtors may update the Critical Vendors List from time to time with two business days' written notice and opportunity to object to the U.S. Trustee and any official committee appointed in these chapter 11 cases.

8. Promptly after entry of this Order and weekly thereafter, the Debtors shall provide counsel for any statutory committee appointed in the Debtors' chapter 11 cases, counsel to the Term Loan Lender Ad Hoc Group, and the U.S. Trustee with a schedule of all payments made to the Critical Vendors on account of the Critical Vendor Claims in accordance with the terms of this Order, which shall include the name and address of the Critical Vendor and the amount and date of the payment.

9. If a Critical Vendor refuses to supply products and/or services to the Debtors on Customary Trade Terms (or such other terms as are agreed by the parties) following receipt of payment on its prepetition claim, then the Debtors may, upon notice to any statutory committee appointed in the Debtors' cases and without further order of the Court:

    a. Declare that any payments made to the Critical Vendor on account of such claim be deemed to have been in payment of then-

WEIL:\96917920\2\41703.0010

    outstanding (or subsequently accruing) postpetition claims of the Critical Vendor without further order of the Court or action by any person or entity; and

  b. Take actions to recover or seek disgorgement of any payment made to the Critical Vendor on account of its prepetition claim to the extent that the payments exceeded the postpetition claims of the Critical Vendor, without giving effect to any rights of setoff, recoupment, claims, provision for payment of reclamation or trust fund claims, or other defense.

  10. Under such circumstances, such Critical Vendor shall immediately repay to the Debtors any payment made to it on account of its prepetition claims to the extent that such payments exceed its postpetition claims, without giving effect to any rights of setoff, recoupment, claims, provision for payment of reclamation or trust fund claims, or other defense.

  11. Nothing herein shall:

  a. Constitute a waiver of the Debtors' rights to seek damages, disgorgement or other appropriate remedies against any breaching Critical Vendor;

  b. Be construed to waive, limit, or in any way affect the Debtors' ability to dispute a claim of a Critical Vendor;

  c. Be deemed an admission to the validity of the underlying obligation, including any payment made pursuant to this Order;

  d. Be deemed to constitute an assumption or rejection of any executory contract or pre- or postpetition agreement between the Debtors and a Critical Vendor; or

  e. Be deemed to require the Debtors to make any of the payments to the Critical Vendors authorized herein.

  12. Notwithstanding entry of this Order, the Debtors' rights to enforce the automatic stay provision of section 362 of the Bankruptcy Code with respect to any creditor who demands payment of its prepetition claims as a condition to doing business with the Debtors postpetition are preserved.

WEIL:\96917920\2\41703.0010

**Limited Relief from Automatic Stay**

*Borrower Foreclosure and Eviction Proceedings*

13. The stay imposed by section 362(a) of the Bankruptcy Code is hereby modified to allow borrowers, mortgagors, and lienholders (each, an "**Interested Party**") to assert and prosecute claims, cross-claims, third-party claims, and counter-claims related to judicial and non-judicial foreclosure and eviction proceedings brought by the Debtors to the limited extent such claims, cross-claims, third-party claims, and counterclaims, including the appeals of such, have the sole purpose of defending, unwinding, or otherwise enjoining or precluding any foreclosure or eviction, and do not have an adverse effect on any of the Debtors' assets.

14. Absent further order of this Court, the automatic stay shall remain in full force and effect with respect to any and all other pending or future claims, cross-claims, third-party claims, and counterclaims by Interested Parties related to judicial and non-judicial foreclosure and eviction proceedings, including with respect to (a) monetary relief of any kind or any nature against the Debtors, (b) claims of recoupment or setoff, (c) relief that if granted would affect the amount, validity, and/or priority of lien(s) held by the Debtors, and (d) actions asserted in the form of a class action or collective action.

15. Should there be any disagreements between or among any Interested Parties and/or the Debtors regarding whether any claims, cross-claims, third-party claims, or counterclaims fall within the exception to the automatic stay approved by this Court, this Court shall have exclusive jurisdiction to hear and resolve such disputes.

*Borrower Bankruptcy Proceedings*

16. The automatic stay imposed by section 362(a) of the Bankruptcy Code applicable against a borrower who has sought, or may seek during the pendency of these cases,

7

bankruptcy protection under chapters 7, 11, 12, or 13 of the Bankruptcy Code (each, a "**Bankrupt Borrower**"), is hereby modified pursuant to the following terms and conditions:

    a.    except as set forth herein, and provided an action outlined below would not affect the value or validity of an asset or claim held by the Debtors, a Bankrupt Borrower, a Bankruptcy Trustee, or a United States Trustee shall be entitled:

        (i)    to assert or continue to assert an objection to a proof of claim, notice of payment change, notice of postpetition fee, expense, or charge, or response to notice of final cure (collectively, the "**Required Bankruptcy Documents**") filed by the Debtors in the Bankrupt Borrower's bankruptcy case;

        (ii)    to assert or continue to assert an objection to a motion to lift the automatic stay filed by the Debtors in the Bankrupt Borrower's bankruptcy case;

        (iii)    to assert appeals with respect to items (i) and (ii); and

        (iv)    to seek an accounting from the Debtors with respect to the Bankrupt Borrower's loan;

    b.    except as set forth herein, a Bankrupt Borrower shall be entitled:

        (i)    to engage in court-supervised or court-authorized loss-mitigation programs regarding the Bankrupt Borrower's loan; and

        (ii)    to engage in discussion with the Debtors and execute a modification of the Bankrupt Borrower's loan or otherwise discuss, enter into, and consummate settlements of claims and liens in accordance with the ordinary course of the Debtors' business and applicable law;

    c.    absent further order of this Court, the automatic stay shall remain in full force and effect with respect to all the Bankrupt Borrower's, the Bankruptcy Trustee's, and the United States Trustee's direct claims, counterclaims, motions, or adversary proceedings:[3]

---

[3] United States Trustees have been included in this provision out of an abundance of caution. However, as referenced in paragraph 29 of this Order, nothing herein shall be construed to limit the rights of the Office of the United States Trustee to take any action not subject to the automatic stay.

    (i) for monetary relief of any kind and of any nature against the Debtors, with the exception of: (A) a reduction in the amount of arrearage listed on a proof of claim that would not affect the total amount of the claim; (B) an objection to the amount listed on a notice of payment change; or (C) an objection to the amount past due listed on a response to notice of final cure;

    (ii) for violation of any local, state, or federal statute or other law in connection with the origination of the Bankrupt Borrower's loan;

    (iii) asserted in the form of a class action;

  d. absent further order of this Court, the automatic stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Bankrupt Borrower on behalf of any other class of borrowers;

  e. with the sole exception of objections to Debtors' proofs of claim permitted by subsection (a)(i) above, and solely for purposes of reducing any such claim and not for the purpose of obtaining an affirmative recovery or award, under no circumstances shall a Bankrupt Borrower, a Bankruptcy Trustee, or a United States Trustee be entitled to recoup, setoff, or collect from the Debtors any judgment or award related to any direct claim or counterclaim for which the automatic stay has been lifted by the terms of this Order;

  f. the Debtors shall retain the right, upon appropriate motion and notice to any Bankrupt Borrower, Bankruptcy Trustee, or United States Trustee, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by this Order, and to the extent such relief is sought, the Debtors will not object to such party's telephonic participation at any hearing on such motion;

  g. nothing set forth herein shall preclude or limit any Bankrupt Borrower, Bankruptcy Trustee, or United States Trustee from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest; and

  h. should there be any disagreements between the Debtors, a Bankrupt Borrower, a Bankruptcy Trustee, or a United States Trustee regarding whether any actions, claims, or counterclaims fall within the exception to the automatic stay approved by the Court, the Court shall have exclusive jurisdiction to hear and resolve such dispute.

9

*Actions Involving Amount, Validity, or Priority of Liens*

17. The automatic stay imposed by section 362(a) of the Bankruptcy Code applicable to actions involving the amount, validity, and/or priority of liens with respect to properties subject to mortgages owned or serviced by Ditech (such actions, "**Title Disputes**") is hereby modified to allow Interested Parties to assert a defense, including the appeals of such, in Title Disputes.

18. Absent further order of this Court, the automatic stay shall remain in full force and effect with respect to any and all other pending or future claims, cross-claims, third-party claims, and counterclaims against the Debtors, including with respect to (a) monetary relief of any kind or any nature against the Debtors, (b) relief that if granted would affect the amount, validity, and/or priority of lien(s) held by the Debtors, (c) actions for partition, eminent domain, or seizure of the property securing lien(s) held by the Debtors, (d) relief that is not necessary for the resolution of the Title Dispute, or (e) actions asserted in the form of a class action or collective action.

19. Should there be any disagreements between or among any Interested Parties and/or the Debtors regarding whether any claims, cross-claims, third-party claims, or counterclaims fall within the exception to the automatic stay approved by this Court, this Court shall have exclusive jurisdiction to hear and resolve such disputes.

**Additional Relief Related to Ginnie Mae and Fannie Mae**

20. The Debtors are authorized to provide to Ginnie Mae and Fannie Mae assurances of future performance under the applicable Ginnie Mae Agreements and Fannie Mae Agreements, as applicable, on the terms and conditions set forth in **Schedules 1** and **2** to this Order and to comply therewith; *provided*, *that*, nothing herein, including the provision of such assurances, shall be deemed to constitute an assumption or rejection of any executory contract or prepetition or postpetition agreement between the Debtors and Ginnie Mae or Fannie Mae, as

applicable. The acceptance by Ginnie Mae and Fannie Mae of the assurances and related relief granted pursuant to this Order shall not be deemed to constitute consent by Ginnie Mae or Fannie Mae of the assumption and assignment of the Ginnie Mae Agreements or Fannie Mae Agreements or release the Debtors from any obligations under the Ginnie Mae Agreements or Fannie Mae Agreements. Notwithstanding anything herein or in any order to the contrary, Ginnie Mae and Fannie Mae may seek additional assurance or modification to its grant of assurance provided herein so as to provide different or additional assurances, without prejudice to the right of the Debtors or any other party in interest to contest any such addition or modification.

21. For the avoidance of doubt, all payments by the Debtors to Ginnie Mae, Ginnie Mae-guaranteed MBS investors and Fannie Mae (including, without limitation, payments of principal and interest, Servicer Advances, and other servicing and subservicing related fees and claims, and with respect to the loans in Ginnie Mae sponsored securitizations (the "**Ginnie Securitized Loans**"), securitization related, escrows, fees and claims), and payments of the MECA REO Sale Proceeds shall be made free and clear of any lien, security interest, or other interest of any party, including, without limitation, any prepetition or postpetition lenders. The principal, interest, and funds for the payment of property taxes and insurance premiums collected by RMS in connection with its performance of the Servicing Obligations and the MECA REO Sale Proceeds are not property of the Debtors estates under section 541 of the Bankruptcy Code, and no lien or other interest therein will be given by the Debtors to any party.

22. Nothing in this Order constitutes a determination as to the applicability, if any, of the automatic stay under section 362(a) of the Bankruptcy Code to requests by Ginnie Mae or Fannie Mae to the Debtors to honor their servicing-related and with respect to the Ginnie Mae securitized loans, securitization-related, commitments and obligations, including, without

11

limitation, requests for payment of principal and interest, Servicer Advances, and other origination-related, servicing-related, and with respect to Ginnie Mae securitized loans, securitization-related, fees and claims, in each case to the extent provided under the relevant Ginnie Mae Agreements and Fannie Mae Agreements. Rather, the Debtors, Fannie Mae, and Ginnie Mae each reserve their rights with respect to this issue.

23.  To the extent that the automatic stay under section 362(a) of the Bankruptcy Code applies to requests by Ginnie Mae and Fannie Mae that the Debtors honor their servicing-related, and with respect to Ginnie Securitized Loans, securitization-related, commitments and obligations, the automatic stay is hereby modified to the limited extent necessary to allow Ginnie Mae and Fannie Mae to make such requests to the Debtors, including, without limitation, requests for payment of Servicer Advances and other servicing-related, and with respect to Ginnie Securitized Loans, securitization-related, fees and claims, in each case to the extent provided under the relevant Ginnie Mae Agreements or Fannie Mae Agreements; *provided*, *that*, Fannie Mae and Ginnie Mae reserve all rights to assert that they may exercise any and all rights available to them under their respective agreements notwithstanding the automatic stay.

### Other Relief

24.  Nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the final hearing to consider the relief requested in the Motion (the "**Final Hearing**").

25.  Nothing contained in the Motion or this Interim Order, nor any payment made pursuant to the authority granted by this Interim Order, shall constitute or be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim

against the Debtors; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

26. Notwithstanding anything to the contrary contained herein or in the Motion, any payment, obligation or other relief authorized by this Order shall be subject to and limited by the requirements imposed on the Debtors under the terms of any interim and/or final order approving the *Debtors' Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 365, 503, 507, 546, 548, 555, 559, and 561 (A) Authorizing Debtors to Enter Into Repurchase Agreement Facilities, Servicer Advance Facilities and Related Documents; (B) Authorizing Debtors to Sell Mortgage Loans and Servicer Advance Receivables in the Ordinary Course of Business; (C) Granting Back-Up Liens and Superpriority Administrative Expense Claims; (D) Authorizing Use of Cash Collateral and Granting Adequate Protection; (E) Modifying the Automatic Stay; (F) Scheduling a Final Hearing; and (G) Granting Related Relief*, as may be amended or superseded from time to time, or any budget in connection therewith, entered by the Court in these chapter 11 cases.

27. Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

28. Nothing herein shall be construed to limit the right of any governmental unit (as such term is defined in section 101(27) of the Bankruptcy Code) to take any action not subject to the automatic stay.

WEIL:\96917920\2\41703.0010

29. Nothing herein shall be construed to narrow or limit any exception to the automatic stay under section 362(b) of the Bankruptcy Code applicable to the United States Trustee Program or any other governmental unit pursuant to any police and regulatory power.

30. The requirements of Bankruptcy Rule 6003(b) have been satisfied.

31. Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

32. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

33. The Final Hearing shall be held on **March 14, 2019, at 11:00 a.m. (Prevailing Eastern Time)** and any objections or responses to the Motion shall be in writing, filed with the Court, and served in accordance with the Case Management Order.

34. This Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; provided that the Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order.

35. The Debtors are authorized to take all action necessary to effectuate the relief granted in this Interim Order.

36. The Court shall retain jurisdiction to hear and determine all maters arising from or related to the implementation, interpretation, and /or enforcement of this Order.

Dated: February 13, 2019
      New York, New York

                                                   /s/ *James L. Garrity, Jr.*
                                                   HONORABLE JAMES L. GARRITY, JR.
                                                   UNITED STATES BANKRUPTCY JUDGE

# Schedule 1

## Ginnie Mae Assurance of Future Performance

**Reverse Mortgage Solutions, Inc.**
**Ginnie Mae Assurance of Future Performance**[1]

1. RMS will provide Ginnie Mae staff and its designees with regular access to RMS's facilities, including reasonable access to the Debtors' books, records, and accounts, so as to allow Ginnie Mae to oversee RMS's performance of its securitization duties.

2. RMS will at all times maintain its securitization performance to the standards set forth in those certain Master Servicing Agreements dated as of March 6, 2014 (together with all Guaranty Agreements, MBS prospectus documents, cross default agreements, escrow agreements, Tri-Party agreement, corporate guaranty, acknowledgement agreement, supplements, addendums, amendments, and related agreements, the "**Ginnie Mae Servicing Agreements**" and, together with the Ginnie Mae securitization guidelines (the "**Ginnie Mae Guide**"), the "**Ginnie Mae Agreements**,") as well as to the following supplemental or existing standards:

    (a) RMS shall deliver custodial account reconciliations of all P&I accounts relating to Ginnie Mae-guaranteed loans via tapes to Ginnie Mae on or before the 15th day of the month immediately following the reconciliation period;

    (b) RMS shall provide Ginnie Mae with a copy of its key employee retention program and key employee incentive program and updates to form HUD 11702, as applicable;

    (c) RMS shall provide notice to Ginnie Mae of senior management departures and updates to form HUD 11702, as applicable, as required by the Ginnie Mae Agreements;

    (d) RMS shall provide Ginnie Mae with a report identifying the Critical Vendors for the Ginnie Mae-guaranteed MBS portfolio and access to a contact list of parties, as may be reasonably requested, (other than document custodians) to whom loan collateral documents have been or are delivered, including ancillary systems and location of any origination, credit, and servicing files, imaging and records stored in hard copy format;

    (e) RMS shall provide all reporting and other securitization information as requested by Ginnie Mae, including such additional reports that may be reasonably requested, as currently permitted under the Ginnie Mae Agreements;

    (f) RMS shall keep Ginnie Mae apprised of its ongoing compliance efforts, and will be entitled to apply for and obtain any extensions from Ginnie Mae, in Ginnie Mae's sole discretion, which extensions will not be withheld solely on the basis of RMS's bankruptcy proceedings. RMS may not seek extensions of the statutory requirement to obtain mortgage insurance or guaranty for pooled loans or

---

[1] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Ginnie Mae Agreements.

       extensions of regulatory requirements. A request to approve a transfer of issuer responsibility is not an extension request.

3.     RMS shall timely comply with the Ginnie Buyout Obligations set forth in the Ginnie Mae Agreements.

4.     RMS shall maintain response times to file requests as is current practice and RMS shall comply with the requisite timelines pursuant to the Ginnie Mae Agreements.

5.     RMS shall comply with all the terms and conditions outlined in the Ginnie Mae Notice of Violation dated as of February 8, 2019.

**Schedule 2**

**Fannie Mae Assurance of Future Performance**

**Reverse Mortgage Solutions, Inc.**
**Fannie Mae Assurances of Future Performance**[1]

1. RMS shall provide Fannie Mae staff with regular access to RMS facilities, including reasonable access to its books, records, and accounts, so as to allow Fannie Mae to oversee RMS's performance of its servicing duties.

2. RMS shall at all times maintain its servicing performance to the standards set forth in that certain Servicing Guide: Fannie Mae Single Family and that certain Fannie Mae Reverse Mortgage Loan Servicing Manual (collectively, the "**Fannie Mae Servicing Guides**"), and RMS's obligations thereunder are secured pursuant to that certain Pledge and Security Agreement dated as of December 19, 2014 (the "**Fannie Mae Pledge Agreement**" and together with the Fannie Mae Mortgage Selling and Servicing Contract and the Fannie Mae Servicing Guides, together with all supplements, addendums, amendments, and related agreements, the "**Fannie Mae Agreements**").  In addition:

    (a) RMS shall deliver to Fannie Mae the following information: (i) on a quarterly basis, a completed Mortgage Bank Financial Reporting Form, (ii) monthly financial statements, and (iii) weekly liquidity reporting, in each case, on the same timeframe as such reports were delivered immediately prior to the Commencement Date;

    (b) RMS shall provide Fannie Mae with a copy of its key employee retention program and key employee incentive program;

    (c) RMS shall at all times maintain staffing levels commensurate with the portfolio, including maintaining adequate staffing within the requisite servicing departments;

    (d) RMS shall provide notice to Fannie Mae within two (2) business days (i) of senior management departures and/or (ii) the number of loans per employee falling below the level as of the date of the bankruptcy filing;

    (e) RMS shall timely comply with all servicing action plans;

    (f) RMS shall continue regularly scheduled engagements with Fannie Mae, such as the monthly performance reviews at the current participation level, including RMS senior management;

    (g) RMS shall provide all reporting and other servicing information as reasonably requested by Fannie Mae, including such additional reports that may be requested, as currently permitted under the Fannie Mae Servicing Guide and/or the Reverse Mortgage Loan Servicing Manual;

---

[1] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Fannie Mae Agreements.

  (h) RMS shall keep Fannie Mae apprised of its ongoing compliance efforts, and will be entitled to apply for and obtain any extensions as it deems appropriate, which extensions will not be withheld solely on the basis of RMS's bankruptcy proceedings;

  (i) RMS must use best efforts to reduce the net population of loans in tax and insurance default, by ensuring that the percentage is on par or less than the book average as provided by Fannie Mae;

  (j) RMS shall timely respond to and resolve all requests for repurchase and "REO Gram" penalties for late reporting of loans entering "REO";

  (k) RMS shall deliver to Fannie Mae "End of Month Exception Reports" in a timely manner and keep reverse mortgage loans in the "eBoutique" reverse mortgage reporting system up to date and reconciled to the RMS system;

  (l) RMS shall remain responsible for the timely filing of FHA claims, including Initial and Supplemental claims; and

  (m) RMS shall remain responsible for timely response to and payment of HECM claim curtailment billings from Fannie Mae.

 3. RMS shall maintain response times to file requests (for servicing files) timely (within 30 days) as is current practice and RMS will comply with Fannie Mae timelines for appeal letters, identifying "impasse loans", and for supplying missing documents as well as timely addressing aged repurchase issues.

4. RMS shall at all times continue to provide services as referenced in the Mortgage Equity Conversion Asset Trust 2011-1 Servicing Agreement dated as of May 1, 2011. Such services to include: management and disposition of REO property and reviewing all FHA claims submitted by the servicer to ensure that any such claims were made in accordance with the FHA Handbook and the Servicing Agreement.

WEIL:\96917920\2\41703.0010