**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                          :
In re                                     :        **Chapter 11**
                                          :
**DITECH HOLDING CORPORATION**, *et al.*, :        **Case No. 19-10412 (JLG)**
                                          :
         Debtors.[1]                      :        **(Jointly Administered)**
                                          :        Related Docket No. 9
-----------------------------------------------------------------x

## INTERIM ORDER (I) AUTHORIZING DEBTORS TO CONTINUE ORIGINATION AND SERVICING OF FORWARD MORTGAGE LOANS IN ORDINARY COURSE AND GRANTING RELATED RELIEF, (II) MODIFYING AUTOMATIC STAY ON A LIMITED BASIS TO FACILITATE DEBTORS' ONGOING OPERATIONS, AND (III) SCHEDULING A FINAL HEARING

Upon the motion (the "**Motion**")[2] of Ditech Holding Corporation and its debtor

affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**" and, together with their non-debtor affiliates, the "**Company**"),

pursuant to sections 105(a), 362, 363(c), 1107(a), and 1108 of the Bankruptcy Code and

Bankruptcy Rules 4001, 6003, and 6004, the Debtors request authority, but not direction, to

continue in the ordinary course of business (a) to originate and purchase mortgage loans; (b) to

sell and securitize loans, including by performing under certain agreements with Fannie Mae,

Freddie Mac, Ginnie Mae, and private parties; (c) to service and subservice loans pursuant to

terms and conditions set forth in certain agreements with Fannie Mae, Freddie Mac, Ginnie Mae,

other applicable federal agencies, and private parties; (d) to make servicing advances; (e) to pay

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

prepetition amounts owed to critical vendors; (f) to fulfill compliance and regulatory obligations; and (g) to provide assurances of future performance to Fannie Mae, Freddie Mac, and Ginnie Mae, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing on February 13, 2019 to consider the relief requested in the Motion on an interim basis (the "**Hearing**"); and upon the Lombardo Declaration, filed contemporaneously with the Motion, and the record of the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.     The Motion is granted on an interim basis to the extent set forth herein.

### Forward Mortgage Origination Business

2.     The Debtors are authorized but not directed, to continue in the ordinary course of business:

WEIL:\96916546\2\41703.0010

(a)     to fund their origination and purchase of mortgage loans and to pay related obligations, regardless of whether such obligations arose prepetition or postpetition;

(b)     (i) to honor and perform under the GSE Sales Agreements, (ii) to pay the GSE Guaranty Fees, (iii) to honor and pay the GSE Repurchase Obligations, and (iv) to perform other activities and pay fees related to mortgage loan origination, including paying all obligations related to loans originated prepetition;

(c)     (i) to honor and perform under the Ginnie Mae Agreements, (ii) to honor and pay the Ginnie Mae Buyout Obligations, (iii) to pay the Ginnie Mae Fees, and (iv) to pay the Ginnie Mae Administrative Fees, including, in each instance, all obligations related to loans originated prepetition; and

(d)     (i) to sell mortgage loans to private investors and (ii) to enter into, and perform under, MLPAs, including, to pay all obligations related to loans originated prepetition.

### Forward Mortgage Servicing Business

3.      The Debtors are authorized but not directed, to continue in the ordinary course of business:

(a)     to service and subservice GSE Loans in the ordinary course, including by continuing to perform under the GSE Servicing Agreements and by continuing to honor and pay the GSE Repurchase Obligations and all prepetition amounts arising under the GSE Servicing Agreements;

(b)     to service Ginnie Securitized Loans in the ordinary course, including by continuing to perform under the Ginnie Mae Agreements and the applicable Government Loan Servicing Guidelines;

(c)     to service and subservice Private Loans in the ordinary course, including by continuing to perform under the Private Servicing Agreements;

(d)     (i) to sell MSRs and related reimbursement rights for Servicer Advances and (ii) the NRM Servicing Transition;

(e)     to service and subservice loans;

(f)     to make Servicer Advances, whether arising from prepetition or postpetition obligations, in accordance with the Agency Servicing Agreements and Private Servicing Agreements, as applicable;

(g)     (i) to modify loans and to participate in loan modification programs, (ii) make Loss Mitigation Payments, and (iii) to enter into, and perform under existing, Deferment and Forbearance Arrangements, including honoring all obligations related thereto that accrued in whole or part prior to the Commencement Date;

(h)     to engage in foreclosure activities with respect to Agency Loans, including to (i) to conduct foreclosures, short sales, deeds in lieu of foreclosure, and similar actions, (ii) to pay any T&I Advances and Corporate Advances, including any prepetition amounts owed, with respect to (A) GSE Loans in accordance with the applicable GSE Servicing Agreements and (B) Ginnie Securitized Loans until such loans are conveyed to the FHA or transferred into the custody of the VA, in each case as required pursuant to the applicable Government Loan Servicing Guidelines, (iii) to pay any P&I Advances, including any prepetition amounts owed, with respect to Ginnie Securitized Loans until such loans are conveyed to the FHA or transferred into the custody of the VA, in each case as required pursuant to the Ginnie Mae Agreements and the applicable Government Loan Servicing Guidelines, (iv) to distribute net sale proceeds to the appropriate parties in accordance with the applicable Agency Servicing Agreements, and (v) as necessary, to transfer or assign deeds to Agency REOs to the applicable owner of the Agency REO; and

(i)     to engage in foreclosure activities with respect to Private Loans, including to (i) pay any Servicer Advances—including any prepetition amounts owed—with respect to Private REOs and Private Loans in foreclosure, (ii) conduct Foreclosure Sales on Private Loans and sell Private REOs, whether owned by the Debtors or on behalf of third parties in the Debtors' capacity as servicer or subservicer, on an "as is where is" basis and without any representation and warranties except for title, in their discretion and subject to their business judgment, and free and clear of any and all liens and encumbrances either pursuant to (A) section 363(f) of the Bankruptcy Code, to the extent that the Private REO is owned by the Debtors, or (B) applicable non-bankruptcy law, to the extent the Private REO is owned by third parties; *provided that,* should any lien, claim, or encumbrance exist on such Private REOs, such liens, claims, or encumbrances shall attach to the proceeds from the sales thereof, and (iii) remit (A) overpayments to purchasers and (B) net sale proceeds to the

WEIL:\96916546\2\41703.0010

appropriate parties, each of (i) through (iii) in accordance with the relevant Private Servicing Agreements.

4.    As to mortgage loans not owned by Ditech, principal, interest, and funds for the payment of property taxes and insurance premiums collected by Ditech in connection with its performance of its Servicing Functions do not constitute property of the Debtors' estates under section 541 of the Bankruptcy Code, and no lien or other interest therein will be given by the Debtors to any party.

**Additional Relief Related to Forward Mortgage Origination and Servicing Businesses**

5.    The Debtors are authorized but not directed, to continue in the ordinary course of business (a) to fulfill state licensing requirements and to pay related obligations, (b) to submit to, and comply with, state and federal regulatory exams and audits and to pay related obligations, costs, and expenses, and (c) to remediate errors and/or lack of compliance with laws or regulations, including by continuing (i) to make payments to borrowers (*e.g.*, in the form of reimbursements, refunds, and/or out-of-pocket expenses), (ii) to forgive past due amounts and/or assessed but unpaid fees or other charges, (iii) to pay fees, fines, and/or penalties, either directly to the applicable authority or through a Critical Vendor, (iv) to incur and pay certain expenses, (v) to pay the costs and expenses of state and federal regulatory examinations, and (vi) to take such other measures as may be required by, or agreed to with, state and federal regulators.  For the avoidance of doubt, to the extent the Debtors avail themselves of the relief provided under this Order, the Debtors shall pay all amounts due and meet all other ordinary course of business obligations to all RMBS and similar trusts, including without limitation the trustees thereunder.

**Critical Vendors**

6.    Pursuant to sections 105(a) and 363(c) of the Bankruptcy Code, the Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to

5

pay some or all of the prepetition claims of the Critical Vendors, upon such terms and in the manner provided in this Order and the Motion and subject to the Management Approval Process (as defined below); *provided*, that payments to Critical Vendors on account of prepetition claims shall not exceed $35 million, during the first thirty (30) days following the Commencement Date; *provided*, *further*, that payments to Critical Vendors on account of such prepetition claims may not be accelerated and shall be made only in the ordinary course in accordance with Customary Trade Terms.

7.      As used herein, the term "**Management Approval Process**" means the advance review and approval by the chief financial officer of the Company, following consultation with the Debtors' management and AlixPartners LLP, of any prepetition payment made to a Critical Vendor.

8.      As soon as reasonably practicable following entry of this Order, the Debtors shall provide a list of potential Critical Vendors and the potential Critical Vendor claims (each, a "**Critical Vendor Claim**") thereof to the Court and the U.S. Trustee (the "**Critical Vendors List**"). The Critical Vendors List shall not be publicly filed. The Debtors shall not pay a claim as a Critical Vendor Claim unless such claim is set forth on the Critical Vendors List; provided, that the Debtors may update the Critical Vendors List from time to time with two business days' written notice and opportunity to object to the U.S. Trustee and any official committee appointed in these chapter 11 cases.

9.      Promptly after entry of this Order and weekly thereafter, the Debtors shall provide counsel for any statutory committee appointed in the Debtors' chapter 11 cases, counsel to the Term Loan Lender Ad Hoc Group, and the U.S. Trustee with a schedule of all payments made to the Critical Vendors on account of the Critical Vendor Claims in accordance with the

WEIL:\96916546\2\41703.0010

terms of this Order, which shall include the name and address of the Critical Vendor and the amount and date of the payment.

10.     If a Critical Vendor refuses to supply products and/or services to the Debtors on Customary Trade Terms (or such other terms as are agreed by the parties) following receipt of payment on its prepetition claim, then the Debtors may, upon notice to any statutory committee appointed in the Debtors' cases, and without further order of the Court:

(a)     Declare that any payments made to the Critical Vendor on account of such claim be deemed to have been in payment of then-outstanding (or subsequently accruing) postpetition claims of the Critical Vendor without further order of the Court or action by any person or entity; and

(b)     Take actions to recover or seek disgorgement of any payment made to the Critical Vendor on account of its prepetition claim to the extent that the payments exceeded the postpetition claims of the Critical Vendor, without giving effect to any rights of setoff, recoupment, claims, provision for payment of reclamation or trust fund claims, or other defense.

11.     Under such circumstances, such Critical Vendor shall immediately repay to the Debtors any payment made to it on account of its prepetition claims to the extent that such payments exceed its postpetition claims, without giving effect to any rights of setoff, recoupment, claims, provision for payment of reclamation or trust fund claims, or other defense.

12.     Nothing herein shall:

(a)     Constitute a waiver of the Debtors' rights to seek damages, disgorgement or other appropriate remedies against any breaching Critical Vendor;

(b)     Be construed to waive, limit, or in any way affect the Debtors' ability to dispute a claim of a Critical Vendor;

(c)     Be deemed an admission to the validity of the underlying obligation, including any payment made pursuant to this Order;

WEIL:\96916546\2\41703.0010

(d)     Be deemed to constitute an assumption or rejection of any executory contract or prepetition or postpetition agreement between the Debtors and a Critical Vendor; or

(e)     Be deemed to require the Debtors to make any of the payments to the Critical Vendors authorized herein.

13.     Notwithstanding entry of this Order, the Debtors' rights to enforce the automatic stay provision of section 362 of the Bankruptcy Code with respect to any creditor who demands payment of its prepetition claims as a condition to doing business with the Debtors postpetition are preserved.

## Limited Relief from Automatic Stay

### *Borrower Foreclosure and Eviction Proceedings*

14.     The stay imposed by section 362(a) of the Bankruptcy Code is hereby modified to allow borrowers, mortgagors, and lienholders (each, an "**Interested Party**") to assert and prosecute claims, cross-claims, third-party claims, and counter-claims related to judicial and non-judicial foreclosure and eviction proceedings brought by the Debtors to the limited extent such claims, cross-claims, third-party claims, and counterclaims, including the appeals of such, have the sole purpose of defending, unwinding, or otherwise enjoining or precluding any foreclosure or eviction, and do not have an adverse effect on any of the Debtors' assets.

15.     Absent further order of this Court, the automatic stay shall remain in full force and effect with respect to any and all other pending or future claims, cross-claims, third-party claims, and counterclaims by Interested Parties related to judicial and non-judicial foreclosure and eviction proceedings, including with respect to (a) monetary relief of any kind or any nature against the Debtors, (b) claims of recoupment or setoff, (c) relief that if granted would affect the amount, validity, and/or priority of lien(s) on property owned or serviced by the Debtors, and (d) actions asserted in the form of a class action or collective action.

WEIL:\96916546\2\41703.0010

16.     Should there be any disagreements between or among any Interested Parties and/or the Debtors regarding whether any claims, cross-claims, third-party claims, or counterclaims fall within the exception to the automatic stay approved by this Court, this Court shall have exclusive jurisdiction to hear and resolve such disputes.

*Borrower Bankruptcy Proceedings*

17.     The automatic stay imposed by section 362(a) of the Bankruptcy Code applicable against a borrower who has sought, or may seek during the pendency of these cases, bankruptcy protection under chapters 7, 11, 12, or 13 of the Bankruptcy Code (each, a "**Bankrupt Borrower**"), is hereby modified pursuant to the following terms and conditions:

(a)     except as set forth herein, and provided an action outlined below would not affect the value or validity of an asset or claim held by the Debtors, a Bankrupt Borrower, a Bankruptcy Trustee, or a United States Trustee shall be entitled:

(i)     to assert or continue to assert an objection to a proof of claim, notice of payment change, notice of postpetition fee, expense, or charge, or response to notice of final cure (collectively, the "**Required Bankruptcy Documents**") filed by the Debtors in the Bankrupt Borrower's bankruptcy case;

(ii)    to assert or continue to assert an objection to a motion to lift the automatic stay filed by the Debtors in the Bankrupt Borrower's bankruptcy case;

(iii)   to assert appeals with respect to items (i) and (ii); and

(iv)    to seek an accounting from the Debtors with respect to the Bankrupt Borrower's loan;

(b)     except as set forth herein, a Bankrupt Borrower shall be entitled:

(i)     to engage in court-supervised or court-authorized loss-mitigation programs regarding the Bankrupt Borrower's loan; and

(ii)    to engage in discussion with the Debtors and execute a modification of the Bankrupt Borrower's loan or otherwise discuss, enter into, and consummate settlements of claims and liens

9

in accordance with the ordinary course of the Debtors' business and applicable law;

(c)    absent further order of this Court, the automatic stay shall remain in full force and effect with respect to all the Bankrupt Borrower's, the Bankruptcy Trustee's, and the United States Trustee's direct claims, counterclaims, motions, or adversary proceedings:[3]

    (i)    for monetary relief of any kind and of any nature against the Debtors, with the exception of:  (A) a reduction in the amount of arrearage listed on a proof of claim that would not affect the total amount of the claim; (B) an objection to the amount listed on a notice of payment change; or (C) an objection to the amount past due listed on a response to notice of final cure;

    (ii)    for violation of any local, state, or federal statute or other law in connection with the origination of the Bankrupt Borrower's loan; or

    (iii)    asserted in the form of a class action;

(d)    absent further order of this Court, the automatic stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Bankrupt Borrower on behalf of any other class of borrowers;

(e)    with the sole exception of objections to Debtors' proofs of claim permitted by subsection (a)(i) above, and solely for purposes of reducing any such claim and not for the purpose of obtaining an affirmative recovery or award, under no circumstances shall a Bankrupt Borrower, a Bankruptcy Trustee, or a United States Trustee be entitled to recoup, setoff, or collect from the Debtors any judgment or award related to any direct claim or counterclaim for which the automatic stay has been lifted by the terms of this Order;

(f)    the Debtors shall retain the right, upon appropriate motion and notice to any Bankrupt Borrower, Bankruptcy Trustee, or United States Trustee, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by this Order, and to the extent such relief is sought, the Debtors will not object to such party's telephonic participation at any hearing on such motion;

---

[3] United States Trustees have been included in this provision out of an abundance of caution.  However, as referenced in paragraph 30 of this Order, nothing herein shall be construed to limit the rights of the Office of the United States Trustee to take any action not subject to the automatic stay.

(g)     nothing set forth herein shall preclude or limit any Bankrupt Borrower, Bankruptcy Trustee, or United States Trustee from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest; and

(h)     should there be any disagreements between the Debtors, a Bankrupt Borrower, a Bankruptcy Trustee, or a United States Trustee regarding whether any actions, claims, or counterclaims fall within the exception to the automatic stay approved by this Court, this Court shall have exclusive jurisdiction to hear and resolve such dispute.

*Actions Involving Amount, Validity, or Priority of Liens*

18.     The automatic stay imposed by section 362(a) of the Bankruptcy Code applicable to actions involving the amount, validity, and/or priority of liens with respect to properties subject to mortgages owned or serviced by the Debtors (such actions, "**Title Disputes**") is hereby modified to allow Interested Parties to assert a defense, including the appeals of such, in Title Disputes.

19.     Absent further order of this Court, the automatic stay shall remain in full force and effect with respect to any and all other pending or future claims, cross-claims, third-party claims, and counterclaims against the Debtors, including with respect to (a) monetary relief of any kind or any nature against the Debtors, (b) relief that if granted would affect the amount, validity, and/or priority of lien(s) held by the Debtors, (c) actions for partition, eminent domain, or seizure of the property securing lien(s) held by the Debtors, (d) relief that is not necessary for the resolution of the Title Dispute, or (e) actions asserted in the form of a class action or collective action.

20.     Should there be any disagreements between or among any Interested Parties and/or the Debtors regarding whether any claims, cross-claims, third-party claims, or counterclaims fall within the exception to the automatic stay approved by this Court, this Court shall have exclusive jurisdiction to hear and resolve such disputes.

WEIL:\96916546\2\41703.0010

**Additional Relief Related to Fannie Mae, Freddie Mac, and Ginnie Mae**

21.     The Debtors are authorized to provide to Fannie Mae, Freddie Mac, and Ginnie Mae assurances of future performance under the applicable Agency Agreements on the terms and conditions set forth in **Schedules 1**, **2**, and **3** to this Order and to comply therewith; *provided, that*, nothing herein, including the provision of such assurances, shall be deemed to constitute an assumption or rejection of any executory contract or prepetition or postpetition agreement between the Debtors and Fannie Mae, Freddie Mac, or Ginnie Mae, as applicable. The acceptance by Fannie Mae, Freddie Mac, and Ginnie Mae of the assurances and related relief granted pursuant to this Order shall not be deemed to constitute consent by Fannie Mae, Freddie Mac, and Ginnie Mae of the assumption and assignment of the applicable Agency Agreements or to the release of any Debtor from any obligations under the Ginnie Mae Agreements.  Notwithstanding anything herein or in any order to the contrary, Fannie Mae, Freddie Mac, and Ginnie Mae may seek additional assurances or modification to its grant of assurances provided herein so as to provide different or additional assurance, without prejudice to the right of the Debtors or any other party in interest to contest any such addition or modification.

22.     For the avoidance of doubt, all payments by the Debtors to Fannie Mae, Freddie Mac, Ginnie Mae, and Ginnie Mae guaranteed RMBS investors under the Agency Agreements (including, without limitation, repurchase or repurchase-related requests and requests for payments of principal and interest, Servicer Advances, and other origination-related, servicing-related, and with respect to Ginnie Securitized Loans, securitization-related escrows, fees and claims) shall be made free and clear of any lien, security interest, or other interest of any party, including, without limitation, any prepetition or postpetition lenders.

WEIL:\96916546\2\41703.0010

23.      Nothing in this Order constitutes a determination of the applicability, if any, of the automatic stay under Bankruptcy Code section 362(a) to requests by Fannie Mae, Freddie Mac, or Ginnie Mae to the Debtors to honor their origination-related, servicing-related, and with respect to Ginnie Securitized Loans, securitization-related, commitments and obligations, including, without limitation, repurchase or repurchase-related requests and requests for payment of principal and interest, Servicer Advances, and other origination-related, servicing-related, and with respect to Ginnie Securitized Loans, securitization-related, fees and claims, in each case to the extent provided under the relevant Agency Agreements, and the rights of all parties are reserved with respect thereto.

24.      To the extent that the automatic stay under Bankruptcy Code section 362(a) applies to requests by Fannie Mae, Freddie Mac, and Ginnie Mae that the Debtors honor their origination-related, servicing-related, and with respect to Ginnie Securitized Loans, securitization-related, commitments and obligations, the automatic stay is hereby modified to the limited extent necessary to allow Fannie Mae, Freddie Mac, and Ginnie Mae to make such requests to the Debtors, including, without limitation, repurchase or repurchase-related requests and requests for payment of principal and interest, Servicer Advances, and other origination-related, servicing-related, and with respect to Ginnie Securitized Loans, securitization-related, fees and claims, in each case to the extent provided under the relevant Agency Agreements; *provided, that*, Fannie Mae and Ginnie Mae reserve all rights to assert that they may exercise any and all rights available to them under their respective agreements notwithstanding the automatic stay.

WEIL:\96916546\2\41703.0010

### Other Relief

25.     Nothing in the Motion or this Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the final hearing to consider the relief requested in the Motion (the "**Final Hearing**").

26.     Nothing contained in the Motion or this Order, nor any payment made pursuant to the authority granted by this Order, shall constitute or be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (d) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

27.     Notwithstanding anything to the contrary contained herein or in the Motion, any payment, obligation or other relief authorized by this Order shall be subject to and limited by the requirements imposed on the Debtors under the terms of any interim and/or final order approving the Debtors' motion for *Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 365, 503, 507, 546, 548, 555, 559 and 561 (A) Authorizing Debtors to Enter Into Repurchase Agreement Facilities, Servicer Advance Facilities and Related Documents; (B) Authorizing Debtors to Sell Mortgage Loans and Servicer Advance Receivables in the Ordinary Course of Business; (C) Granting Back-Up Liens and Superpriority Administrative Expense Claims; (D) Authorizing Use of Cash Collateral and Granting Adequate Protection (E) Modifying the Automatic Stay; (F) Scheduling a Final Hearing; and (G) Granting Related Relief,* as may be amended or superseded from time to time, or any budget in connection therewith, entered by this Court in these chapter 11 cases.

28.    Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

29.    Nothing herein shall be construed to limit the right of any governmental unit (as such term is defined in section 101(27) of the Bankruptcy Code) to take any action not subject to the automatic stay.

30.    Nothing herein shall be construed to narrow or limit any exception to the automatic stay under section 362(b) of the Bankruptcy Code applicable to the United States Trustee Program or any other governmental unit pursuant to any police and regulatory power.

31.    The requirements of Bankruptcy Rule 6003(b) have been satisfied.

32.    Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

33.    Notwithstanding Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

34.    The Final Hearing shall be held on **March 14, 2019, at 11:00 a.m. (Prevailing Eastern Time)** and any objections or responses to the Motion shall be in writing, filed with the Court, and served in accordance with the Case Management Order.

35.    This Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; provided that the Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Order.

36.    The Debtors are authorized to take all action necessary to effectuate the relief granted in this Order.

WEIL:\96916546\2\41703.0010

37.     The Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, and/or enforcement of this Order.


Dated: February 13, 2019
       New York, New York

                                        /s/ *James L. Garrity, Jr.*
                                        HONORABLE JAMES L. GARRITY, JR.
                                        UNITED STATES BANKRUPTCY JUDGE

WEIL:\96916546\2\41703.0010

## Schedule 1

**Fannie Mae Assurances of Future Performance**

## <u>Fannie Mae Assurances of Future Performance</u>[1]

1.  Ditech shall provide Fannie Mae staff with regular access to Ditech facilities, including reasonable access to its books, records, and accounts, so as to allow Fannie Mae to oversee Ditech's performance of its servicing duties.

2.  Ditech shall at all times maintain its servicing performance to the standards set forth in certain Fannie Mae Mortgage Selling and Servicing Contract dated as of March 23, 2005 (together with all supplements, addendums, amendments, and related agreements, the "**Fannie Mae Mortgage Selling and Servicing Contract**"), which includes that certain Selling Guide:  Fannie Mae Single Family (together with all supplements, addendums, amendments, and related agreements, the "**Fannie Selling Guide**") and that certain Servicing Guide:  Fannie Mae Single Family (together with all supplements, addendums, amendments, and related agreements, the "**Fannie Servicing Guide**" and, together with the Fannie Selling Guide,  the "**Fannie Guides**"), that certain Subservicing Agreement effective as of December 22, 2010 (together with all supplements, addendums, amendments, and related agreements, the "**Fannie Subservicing Agreement**"), and that certain Pledge and Security Agreement effective as of December 19, 2014 (together with all supplements, addendums, amendments, and related agreements, the "**Fannie Pledge Agreement**" and, together further with the Fannie Mae Mortgage Selling and Servicing Contract, the Fannie Subservicing Agreement, and the Fannie Guides, the "**Fannie Agreements**"), as well as to the following supplemental standards:

    (a)  As to each separate portfolio of Fannie Mae loans serviced or subserviced by Ditech, Ditech shall maintain monthly STAR Scorecard metrics as good as or better than such metrics for such portfolio as of the month ending November 30, 2018;

    (b)  No STAR overall operational assessment can result in a rating of "red";

    (c)  Any formal servicing compliance review must not return an overall risk rating of 'high';

    (d)  As applicable, Ditech shall comply with the High Touch Servicing Protocols previously agreed to by Fannie Mae and Ditech;

    (e)  Ditech shall use best efforts to reduce the net population of seriously delinquent loans;

    (f)  Ditech shall timely comply with all servicing action plans;

    (g)  Ditech shall deliver custodial account reconciliations of all P&I and T&I accounts relating to Fannie Mae Loans via tapes to Fannie Mae on or before the fifteenth day of the month immediately following the reconciliation period;

    (h)  Ditech shall provide Fannie Mae with a copy of its key employee retention program and key employee incentive program;

---

[1] Capitalized terms used but not otherwise defined herein or in the Motion shall have the meaning ascribed to such term in the Fannie Agreements (as defined below).

(i)    Ditech shall at all times maintain staffing levels commensurate with the servicing portfolio, including maintaining adequate staffing within the requisite servicing departments;

(j)    Ditech shall provide notice to Fannie Mae, within two (2) business days, of (i) senior management departures and/or (ii) the number of loans per employee falling below the level as of the date of the bankruptcy filing;

(k)    Ditech shall provide all reporting and other servicing information as reasonably requested by Fannie Mae, including such additional reports that may be requested, as currently permitted under the Fannie Servicing Guide;

(l)    Ditech shall continue regularly scheduled engagements with Fannie Mae, such as the monthly performance reviews at the current participation level, including Ditech senior management;

(m)    Ditech shall keep Fannie Mae apprised of its ongoing compliance efforts, and will be entitled to apply for and obtain any extensions as it deems appropriate, which extensions will not be withheld solely on the basis of Ditech's bankruptcy proceedings;

(n)    Ditech shall deliver to Fannie Mae the following information:  (i) on a quarterly basis, a completed Mortgage Bank Financial Reporting Form, (ii) monthly financial statements, and (iii) weekly liquidity reporting, in each case, on the same timeframe as such reports were delivered immediately prior to the Commencement Date;

(o)    Ditech shall continue to meet margin requirements as may be required under the Fannie Agreements in connection with the sale of loans; and

(p)    Ditech agrees to comply with the Fannie Servicing Guide to facilitate the orderly transfer of servicing rights to any new servicer where applicable.

3.    Ditech shall maintain response times to file requests (for both origination and servicing files) timely (within 30 days) as is current practice and Ditech will comply with Fannie Mae timelines for appeal letters, identifying "impasse loans", and for supplying missing documents as well as timely addressing aged repurchase issues.

4.    Ditech shall not grant a lien or security interest (including any adequate protection liens) in (a) any cash, accounts, or other collateral (or any proceeds of the foregoing) that has been pledged to Fannie Mae pursuant to any collateral pledge agreement or other security agreement between Ditech and Fannie Mae (including, without limitation, the Fannie Pledge Agreement), or (b) any mortgage servicing rights with respect to mortgages which are now or hereafter serviced or subserviced by Ditech for Fannie Mae, except as otherwise expressly authorized by, that certain Acknowledgment Agreement With Respect to Servicing Advance Receivables, dated as of February 9, 2018 and effective as of February 12, 2018, and amended as of April 20, 2018 (as further amended, restated, supplemented or otherwise modified from time to time), among Fannie Mae, Ditech, Ditech Agency Advance Depositor LLC, Ditech Agency Advance Trust, Wells Fargo Bank, N.A, in its capacity as Indenture Trustee, and Barclays Bank PLC, in its capacity as Administrative Agent; or by that certain

2

First Amended and Restated Acknowledgment Agreement dated as of February 9, 2018 (as amended, restated, supplemented or otherwise modified from time to time), among Fannie Mae, Ditech, Credit Suisse AG, Cayman Islands Brach, in its capacity as collateral agent for the First Lien Secured Party, and Wilmington Savings Fund Society, FSB, in its capacity as Collateral Agent for the Second Lien Secured Party.  In addition, Ditech shall not seek to modify or otherwise affect Fannie Mae's rights under the Fannie Mae Pledge Agreement.

WEIL:\96916546\2\41703.0010

## **Schedule 2**

**Freddie Mac Assurances of Future Performance**

## Freddie Mac Assurances of Future Performance[1]

1. Ditech shall provide Freddie Mac staff with regular access to Ditech facilities, including reasonable access to its books, records, and accounts, so as to allow Freddie Mac to oversee Ditech's performance of its servicing duties.

2. Ditech shall at all times maintain its servicing performance consistent with the standards set forth in the that certain Master Agreement dated as of August 1, 2014, as amended and restated on October 6, 2017 (together with all supplements, addendums, amendments, and related agreements, the "**Freddie Master Agreement**"), that certain Purchase Agreement dated as of November 7, 2018 (together with all supplements, addendums, amendments, and related agreements, the "**Freddie Purchase Agreement**"), and the Freddie Mac Single-Family Seller/Servicer Guide (the "**Freddie Selling and Servicing Guide**" and, together with the Freddie Master Agreement and the Freddie Purchase Agreement, the "**Freddie Agreements**"), as well as with the following supplemental standards (*provided that*, nothing herein is intended to waive or release any of Ditech's current obligations under the Freddie Agreements):

    (a) In connection with any operation assessment by Freddie Mac's Counterparty Operations Risk Evaluation group ("**CORE**"), Ditech must maintain an operational assessment that is above "critical" or "major" for each finding in connection with such assessment.  If there is a finding by CORE of "critical," "major" or "other" for any matter that is within the scope of any CORE review, Ditech must remediate and address each such finding;

    (b) Ditech shall deliver custodial account reconciliations of all P&I and T&I accounts relating to Freddie Mac Loans via tapes to Freddie Mac on or before the fifth day of the month immediately following the reconciliation period;

    (c) Ditech shall provide Freddie Mac with a copy of its key employee retention program and key employee incentive program;

    (d) Ditech shall at all times maintain staffing levels commensurate with the servicing portfolio, including maintaining adequate staffing within the requisite servicing departments;

    (e) Ditech shall provide notice to Freddie Mac, within five business days, of senior management departures or larger-than-average departures of non-management personnel;

    (f) Ditech shall provide all reporting and other servicing information as reasonably requested by Freddie Mac, including (without limitation) fraud reports and such additional reports that may be requested by Freddie Mac, in accordance with the Freddie Selling and Servicing Guide;

---

[1] Capitalized terms used but not otherwise defined herein or in the Motion shall have the meaning ascribed to such term in the Freddie Agreements (as defined below).

(g)     Ditech shall confer and consult with Freddie Mac in good faith with respect to the implementation of any new programs/directives, and policy changes and Ditech will (i) comply with such changes if compliance is required pursuant to applicable law or regulation, or if noncompliance would itself constitute grounds for termination of Ditech as a seller/servicer under the Freddie Agreements, and (ii) use commercially reasonable efforts to comply with such changes in all other cases, notwithstanding possible additional costs to implement those changes;

(h)     Ditech shall keep Freddie Mac apprised of its ongoing compliance efforts, and will be entitled to apply for and obtain any extensions as it deems appropriate, which extensions will not be withheld solely on the basis of Ditech's bankruptcy proceedings. As with other lenders, Freddie Mac will acknowledge, but not approve, extension requests and will not assert a breach based solely on such non-compliance for up to 90 days of non-compliance;

(i)     Ditech shall continue (post-filing) its regularly scheduled meetings and engagements with Freddie Mac, including (without limitation) monthly executive meetings and any and all reviews relating to the servicing of the Freddie Mac servicing portfolio;

(j)     Ditech shall maintain response times to file requests (for both origination and servicing files) timely (within 30 days), as is current practice, and Ditech will comply with Freddie Mac timelines for appeal letters, and for supplying missing documents, as well as timely addressing aged repurchase issues; and

(k)     Ditech agrees to comply with the Freddie Selling and Servicing Guide, and specifically Chapter 7101 thereof, to facilitate the orderly transfer of servicing rights to any new servicing agent where applicable.

3.     Ditech shall not grant a lien or security interest (including any adequate protection liens) in (a) any cash, accounts, or other collateral (or any proceeds of the foregoing) that has been pledged to Freddie Mac pursuant to any collateral pledge agreement or other security agreement between Ditech and Freddie Mac (including, without limitation, the Amended and Restated Collateral Account Control Agreement, dated as of January 17, 2014, and the Amended and Restated Collateral Pledge Agreement, dated as of January 17, 2014) (collectively, the "**Freddie Mac Pledge Agreements**"), (b) any mortgage servicing rights with respect to mortgages which are now or hereafter serviced by Ditech for Freddie Mac, or (c) the "Servicing Collateral" as defined and referenced in, and except as otherwise expressly authorized by, that certain Second Amended and Restated Acknowledgement Agreement, dated as of October 30, 2015, among Freddie Mac, Ditech, and Credit Suisse AG, Cayman Islands Branch.  In addition, Ditech shall not seek to modify or otherwise affect Freddie Mac's rights under the Freddie Mac Pledge Agreements.

WEIL:\96916546\2\41703.0010

## **Schedule 3**

**Ginnie Mae Assurances of Future Performance**

WEIL:\96916546\2\41703.0010

## <u>Ginnie Mae Assurances of Future Performance</u>[1]

1. Ditech shall provide Ginnie Mae staff and its designees with regular access to Ditech facilities, including reasonable access to its books, records, and accounts, so as to allow Ginnie Mae to oversee Ditech's performance of its securitization duties.

2. Ditech shall at all times maintain its securitization performance to the standards set forth in that certain Master Servicing Agreement dated as of October 9, 2015 (collectively with the Cross-Default Agreement, that certain Escrow Tri-Party Agreement dated as of January 30, 2019, all guaranty agreements, RMBS prospectus documents, escrow agreements, acknowledgment agreements, supplements, addendums, amendments, and related agreements, the "**Ginnie Mae Master Servicing Agreements**") and the Ginnie Mae Mortgage-Backed Securities Guide (the "**Ginnie Mae Guide**" and, together with the Ginnie Mae Master Servicing Agreements, the "**Ginnie Mae Agreements**") as well as to the following supplemental or existing standards:

    (a) Ditech shall deliver custodial account reconciliations of all P&I and T&I accounts relating to Ginnie Securitized Loans via tapes to Ginnie Mae on or before the 15th day of the month immediately following the reconciliation period;

    (b) Ditech shall provide Ginnie Mae with a copy of its key employee retention program and key employee incentive program and updates to form HUD 11702, as applicable;

    (c) Ditech shall provide notice to Ginnie Mae of senior management departures and updates to form HUD 11702, as applicable, as required under the Ginnie Mae Agreements;

    (d) Ditech shall provide Ginnie Mae with a report identifying the Critical Vendors for the Ginnie Mae guaranteed RMBS portfolio and a contact list of parties (other than document custodians) to whom loan collateral documents have been or are delivered, including ancillary systems and location of any origination, credit, and servicing files, imaging, and records stored in hard copy format;

    (e) Ditech shall provide all reporting and other securitization information requested by Ginnie Mae, including such additional reports that may be reasonably requested, as currently permitted under the Ginnie Mae Agreements; and

    (f) Ditech shall keep Ginnie Mae apprised of its ongoing compliance efforts, and will be entitled to apply for and obtain any extensions from Ginnie Mae, in Ginnie Mae's sole discretion, which extensions will not be withheld solely on the basis of Ditech's bankruptcy proceedings. Ditech may not seek extensions of the statutory requirement to obtain mortgage insurance or guaranty for pooled loans or extensions of regulatory requirements. A request to approve a transfer of issuer responsibility is not an extension request.

---

[1] Capitalized terms used but not otherwise defined in the Motion shall have the meaning ascribed to such term in the Ginnie Mae Agreements (as defined below).

3.    Ditech shall maintain response times to file requests timely as is current practice and Ditech will comply with the requisite timelines pursuant to the Ginnie Mae Agreements.

4.    Ditech shall timely comply with the Ginnie Mae Buyout Obligations set forth in the Ginnie Mae Agreements.

5.    Ditech shall maintain delinquency rates on outstanding pools and loan packages below the threshold levels described in the Ginnie Mae Guide.

6.    Ditech shall comply with all the terms and conditions outlined in the Ginnie Mae Notice of Violation dated as of February 8, 2019.

WEIL:\96916546\2\41703.0010