WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
                            :

**In re**                               :        **Chapter 11**
                            :

**DITECH HOLDING CORPORATION,** *et al.*,  :        **Case No. 19-10412 (JLG)**
                            :

           **Debtors.**[1]          :        **(Jointly Administered)**
                            :
------------------------------------------------------------X

**NOTICE OF HEARING ON MOTION OF DEBTORS FOR ENTRY**
**OF AN ORDER (I) APPROVING DISCLOSURE STATEMENT AND NOTICE**
**OF DISCLOSURE STATEMENT HEARING, (II) ESTABLISHING SOLICITATION**
**AND VOTING PROCEDURES, (III) SCHEDULING SALE AND CONFIRMATION**
**HEARING, (IV) APPROVING SALE AND CONFIRMATION OBJECTION**
**PROCEDURES AND NOTICE OF SALE AND CONFIRMATION HEARING,**
**(V) APPROVING BIDDING PROCEDURES, (VI) APPROVING ASSUMPTION**
**AND ASSIGNMENT PROCEDURES, AND (VII) GRANTING RELATED RELIEF**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "**Motion**"), of Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order pursuant to sections 105, 363, 365, 502, 1125, 1126, and 1128 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 3003, 3016, 3017, 3018, 3020, 6004, 6006, and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 2002-1, 3017-1, 3018-1, 3020-1, 6004-1, 6006-1, and 9006-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), and the *Amended Sale Guidelines for the Conduct of Asset Sales Established and Adopted by the United States Bankruptcy Court for the Southern District of New York* (the "**Sale Guidelines**"), (a) approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code; (b) approving the form and manner of the Disclosure Statement Notice; (c) scheduling the Sale and Confirmation Hearing to consider approval of the sale of the Debtors' assets and confirmation of the Plan; (d) approving objection procedures to the confirmation of the Debtors' Plan, and the form and manner of the Sale and Confirmation Hearing Notice; (e) approving certain solicitation and voting procedures in connection with the Plan, including, among other things, (i) the form of Ballot; (ii) the form of Notice of Non-Voting Status – Unimpaired Classes; and (iii) the form of Notice of Non-Voting Status – Impaired Classes; (f) approving the Proposed Bidding Procedures; (g) approving the Assumption and Assignment Procedures for the assumption and assignment of the Assigned Contracts and the determination of the Cure Costs; and (h) approving the form and manner of the Cure Notice, all as more fully set forth in the Motion, will be held before the Honorable James L. Garrity, Jr., United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York,

2

Courtroom 601, One Bowling Green, New York, New York 10004 (the "**Bankruptcy Court**") on **April 11, 2019 at 11:00 a.m. (Eastern Time)** (the "**Hearing**"), or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the "**Objections**") to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules, shall be filed with the Bankruptcy Court (i) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399 on (i) the Chambers of the Honorable James L. Garrity, Jr. ("**Chambers**"), United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York, 10004; (ii) the Debtor, Ditech Holding Corporation, 1100 Virginia Drive, Suite 1000, Fort Washington, Pennsylvania 19034 (Attn: John Haas, General Counsel); (iii) William K. Harrington, U.S Department of Justice, Office of the U.S. Trustee, 201 Varick Street, Room 1006, New York, New York 10014 (Attn: Greg M. Zipes and Benjamin J. Higgins); (iv) proposed counsel to the Debtors, Weil, Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C. and Sunny Singh, Esq.); (v) proposed counsel to the Creditors' Committee, Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, New York 10017 (Attn: Robert J. Feinstein, Bradford J. Sandler, and Steven W. Golden) and Rich Michaelson Magaliff, LLP, 335 Madison Avenue, 9th Floor, New York, New York 10017 (Attn: Robert N. Michaelson and Elwood F. Collins); (vi) counsel to the Prepetition Term Loan Agent,

Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Brian M. Resnick and Michelle M. McGreal); (vii) counsel to the Term Loan Ad Hoc Group, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654 (Attn: Patrick J. Nash and John R. Luze); (viii) counsel to Barclays Bank PLC, as DIP Agent, and Barclays Capital Inc., as DIP lender, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, New York 10036 (Attn: Sarah M. Ward, Mark A. McDermott, and Melissa Tiarks); and (ix) counsel to Nomura Corporate Funding Americas, LLC, Jones Day LLP, 250 Vesey Street, New York, New York 10281 (Attn: Ben Rosenblum), so as to be filed and received no later than **April 4, 2019 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

   **PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

   **PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated: March 5, 2019
   New York, New York

      /s/ Sunny Singh
      WEIL, GOTSHAL & MANGES LLP
      767 Fifth Avenue
      New York, New York  10153
      Telephone:  (212) 310-8000
      Facsimile:  (212) 310-8007
      Ray C. Schrock, P.C.
      Sunny Singh

      *Proposed Attorneys for Debtors*
      *and Debtors in Possession*

WEIL:\96943995\1\41703.0008

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
                                                    :
In re                                               :    **Chapter 11**
                                                    :
**DITECH HOLDING CORPORATION,** *et al.,*           :    **Case No. 19-10412 (JLG)**
                                                    :
             **Debtors.**[1]                        :    **(Jointly Administered)**
                                                    :
---------------------------------------------------------------X

**MOTION OF DEBTORS FOR ENTRY OF AN**
**ORDER (I) APPROVING DISCLOSURE STATEMENT**
**AND NOTICE OF DISCLOSURE STATEMENT HEARING,**
**(II) ESTABLISHING SOLICITATION AND VOTING PROCEDURES,**
**(III) SCHEDULING SALE AND CONFIRMATION HEARING,**
**(IV) APPROVING SALE AND CONFIRMATION OBJECTION**
**PROCEDURES AND NOTICE OF SALE AND CONFIRMATION HEARING,**
**(V) APPROVING BIDDING PROCEDURES, (VI) APPROVING ASSUMPTION**
<u>**AND ASSIGNMENT PROCEDURES, AND (VII) GRANTING RELATED RELIEF**</u>

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) ("**Ditech**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

<u>**Preliminary Statement**</u>[2]

1.      Following months of good faith and arm's length negotiations, on February 11, 2019 (the "**Commencement Date**"), the Debtors commenced these chapter 11 cases to implement a value-maximizing restructuring with the support of an ad hoc group of the Debtors' Term Lenders holding, as of the Commencement Date, over seventy-five percent (75%) in aggregate, of the Debtors' term loans (the "**Term Loan Ad Hoc Group**") on the terms set forth in that certain Restructuring Support Agreement, dated as of February 8, 2019 (the "**RSA**").

2.      Consistent with the Debtors' obligations under the RSA, contemporaneously herewith, the Debtors filed the *Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors* (as may be amended, modified, or supplemented, the "**Plan**"), which contemplates (a) a debt-to-equity recapitalization transaction, whereby holders of Term Loan Claims will receive 100% of the New Common Stock of Reorganized Ditech (the "**Restructuring Transaction**") and (b) a simultaneous marketing process in which the Debtors will solicit bids for the sale of any and all of their assets.  In the event that the Debtors receive a bid for all or substantially all of their assets and the Debtors determine, in the exercise of their reasonable business judgment, that such bid represents a higher or better value than the

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such term in the Lombardo Declaration, the Disclosure Statement, or the Plan, each as defined below, as applicable.

WEIL:\96943995\1\41703.0008

Restructuring Transaction (such transaction, a "**Sale Transaction**"), the Plan permits the Debtors to toggle to a Sale Transaction in lieu of the Restructuring Transaction. In addition, the Plan also provides the Debtors with the flexibility to solicit bids for a portion of the Debtors' assets other than a sale in the ordinary course or a Sale Transaction (such transaction, an "**Asset Sale Transaction**").

3.    As described in the declaration of D. Reid Snellenbarger, a Managing Director and Shareholder at Houlihan Lokey Capital, Inc. ("**Houlihan Lokey**"), filed contemporaneously herewith in support of this Motion (the "**Snellenbarger Declaration**"), the Debtors and their advisors conducted a robust prepetition marketing and sale process (the "**Prepetition M&A Process**"), which was overseen by Ditech's board of directors as well as a special committee thereof (the "**Special Committee**"). Following a first round of indications of interest ("**IOIs**") received in July 2018, the Debtors undertook an extensive marketing effort that culminated in the receipt of three (3) second-round indications of interest by the end of August 2018. However, as further described in the Snellenbarger Declaration, the Debtors ultimately decided that the pursuit of such bids required additional capital and resulted in low recoveries to the Debtors' stakeholders.

4.    In support of the Debtors' postpetition marketing and sale process (the "**Postpetition M&A Process**"), the Debtors and their advisors have developed the bidding and auction procedures annexed as **Schedule 6** to the Proposed Order (as defined below) for the orderly and value maximizing marketing and sale of the Debtors' assets in these chapter 11 cases (the "**Proposed Bidding Procedures**"). Under the Proposed Bidding Procedures, parties may submit bids for the purchase and sale of any and all of the Debtors' assets in accordance with the Proposed Bidding Procedures. The Proposed Bidding Procedures are designed to promote a

competitive and expedient bidding process, and are intended to generate the greatest level of interest in the Debtors' assets. The Proposed Bidding Procedures are intended to provide the Debtors with flexibility to solicit proposals, negotiate transactions, provide stalking horse protections (if necessary and appropriate), hold an auction, and consummate a Sale Transaction or an Asset Sale Transaction, as applicable, for the highest or best value, all while protecting the due process rights of all interested parties and ensuring that there is a full and fair opportunity to review and consider proposed transactions.

5.     Given the exigencies of the Debtors' business operations and financial condition, as well as the fact that the Debtors' business is heavily regulated, it is vital that the Debtors exit chapter 11 in an efficient and timely manner. Accordingly, by this Motion, the Debtors seek to conduct the sale and the confirmation process in parallel, and request approval of a comprehensive set of procedures that will facilitate a Sale Transaction, an Asset Sale Transaction, or the Restructuring Transaction in a timely and efficient manner.

## Background

6.     On the Commencement Date, the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.     On February 27, 2019, the United States Trustee for Region 2 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**"). No trustee or examiner has been appointed in these chapter 11 cases.

8.     The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

9.     Information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Gerald A. Lombardo Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York* (the "**Lombardo Declaration**"), sworn and filed on the Commencement Date [ECF No. 2], and the *Disclosure Statement for Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors*, filed contemporaneously herewith (as may be amended, modified, or supplemented, the "**Disclosure Statement**"), which are each incorporated herein by reference.

## Jurisdiction

10.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

11.     By this Motion, pursuant to sections 105, 363, 365, 502, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3003, 3016, 3017, 3018, 3020, 6004, 6006, and 9006, Rules 2002-1, 3017-1, 3018-1, 3020-1, 6004-1, 6006-1, and 9006-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), and the *Amended Sale Guidelines for the Conduct of Asset Sales Established and Adopted by the United States Bankruptcy Court for the Southern District of New York* (the "**Sale Guidelines**"), the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), granting the following relief:

> (a)     approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code;

WEIL:\96943995\1\41703.0008

(b)     approving the form and manner of notice of the hearing to consider approval of the Disclosure Statement and Proposed Bidding Procedures, substantially in the form attached as **Schedule 1** to the Proposed Order;

(c)     scheduling a hearing (the "**Sale and Confirmation Hearing**") to consider confirmation of the Plan and, if applicable, approval of one or more Sale Transactions;

(d)     approving objection procedures to the confirmation of the Debtors' Plan and, if applicable, to one or more Sale Transactions, and the form and manner of the Sale and Confirmation Hearing Notice (as defined below), substantially in the form attached to the Proposed Order as **Schedule 2**;

(e)     approving solicitation and voting procedures in connection with the Plan, including, among other things, (i) the form of Ballot (as defined below), substantially in the form attached as **Schedule 3** to the Proposed Order; (ii) the form of Notice of Non-Voting Status – Unimpaired Classes (as defined below), substantially in the form attached as **Schedule 4** to the Proposed Order; and (iii) the form of Notice of Non-Voting Status – Impaired Classes (as defined below), substantially in the form attached as **Schedule 5** to the Proposed Order;

(f)     approving the Proposed Bidding Procedures, substantially in the form attached as **Schedule 6** to the Proposed Order;

(g)     approving the procedures set forth in the Proposed Order (the "**Assumption and Assignment Procedures**") for the assumption and assignment of the Debtors' executory contracts and unexpired leases (the "**Assigned Contracts**") and the determination of the amount necessary to cure any defaults thereunder (the "**Cure Costs**"); and

(h)     approving the form and manner of notice to each relevant non-Debtor counterparty to an executory contract or unexpired lease (collectively, the "**Contract Counterparties**") regarding the Debtors' potential assumption and assignment of certain executory contracts and unexpired leases of the Debtors and of the Debtors' calculation of the Cure Costs, substantially in the form attached to the Proposed Order as **Schedule 7** (the "**Cure Notice**").

12.     The following tables provide certain proposed dates related to relief requested in the Motion (subject to the Court's calendar), which comply with the milestones

WEIL:\96943995\1\41703.0008

contained in the RSA. As demonstrated herein, the proposed timing and notices related to the approval of the Disclosure Statement, the approval of the Proposed Bidding Procedures, the confirmation of the Plan, and the approval of one or more Sale Transactions, if any, are fair and reasonable under the circumstances and should be approved.

A. **Disclosure Statement, Solicitation and Voting Dates, and Plan Confirmation Timeline**

| Key Event | Proposed Date[3] |
|---|---|
| Disclosure Statement Objection Deadline | April 4, 2019 at 4:00 p.m. (ET) |
| Deadline to Reply to Disclosure Statement Objection(s) | April 8, 2019 at 4:00 p.m. (ET) |
| Voting Record Date | April 9, 2019 |
| Disclosure Statement Hearing | April 11, 2019 at 11:00 a.m. (ET) |
| Solicitation Date | 4 business days after entry of the Order Approving the Disclosure Statement (expected to be April 19, 2019) or as soon as reasonably practicable thereafter |
| Plan Supplement Filing | May 17, 2019 |
| Voting Deadline | May 24, 2019 at 4:00 p.m. (ET) |
| Rule 3018(a) Motion Deadline | May 24, 2019 at 4:00 p.m. (ET) |
| Plan Confirmation Objection Deadline (same as Sale Objection Deadline) | May 24, 2019 at 4:00 p.m. (ET) |
| Voting Certification Deadline | May 29, 2019 at 4:00 p.m. (ET) |
| Deadline to File (a) Reply to Plan Objection(s), (b) Brief in Support of Plan Confirmation, and (c) Declarations in Support of Confirmation | May 31, 2019 at 4:00 p.m. (ET) |
| Sale and Confirmation Hearing | June 5, 2019 at 11:00 a.m. (ET) |

---

[3] Unless otherwise stated, all times referenced in this Motion are to prevailing Eastern Time.

WEIL:\96943995\1\41703.0008

## B. **Proposed Bidding Procedures Timeline**

| Key Event | Proposed Date |
|---|---|
| Hearing to Consider Approval of Proposed Bidding Procedures<br><br>(same as Disclosure Statement Hearing) | April 11, 2019 at 11:00 a.m. (ET) |
| Deadline to Submit Non-Binding Indications of Interest | No later than April 15, 2019 at 4:00 p.m. (ET) |
| Deadline to Submit Bids | May 6, 2019 at 4:00 p.m. (ET) |
| Deadline for Debtors to Notify Bidders of Status as Qualified Bidders | May 10, 2019 at 4:00 p.m. (ET) |
| Auction, if necessary, to be conducted at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 | May 13, 2019 at 10:00 a.m. (ET) |
| Deadline to File Notice of (a) Successful Bid and Back-Up Bid and (b) Identity of Successful Bidder and Back-Up Bidder | One (1) business day following conclusion of the Auction |
| Deadline to File Objections to (a) Sale Transaction, (b) Cure Costs, and (c) Adequate Assurance of Future Performance<br><br>(same as Plan Confirmation Objection Deadline) | May 24, 2019 at 4:00 p.m. (ET) |
| Sale and Confirmation Hearing | June 5, 2019 at 11:00 a.m. (ET) |

13.     Summarized below are the various attachments and exhibits cited throughout this Motion:

| Document | Exhibits and Schedules |
|---|---|
| Proposed Order | **Exhibit A** to this Motion |
| Disclosure Statement | Filed Contemporaneously Herewith |
| Plan | Filed Contemporaneously Herewith |
| Form of Disclosure Statement Notice | **Schedule 1** to the Proposed Order |
| Form of Sale and Confirmation Hearing Notice | **Schedule 2** to the Proposed Order |

8

| Form of Term Loan Ballot | **Schedule 3** to the Proposed Order |
| Form of Notice of Non-Voting Status – Unimpaired Classes | **Schedule 4** to the Proposed Order |
| Form of Notice of Non-Voting Status – Impaired Classes | **Schedule 5** to the Proposed Order |
| Proposed Bidding Procedures | **Schedule 6** to the Proposed Order |
| Form of Cure Notice | **Schedule 7** to the Proposed Order |

## DISCLOSURE STATEMENT

14.     Under section 1125 of the Bankruptcy Code and Bankruptcy Rule 3016(b), the Debtors prepared and filed the Disclosure Statement to provide parties adequate information and disclosure regarding the terms of the Plan.  The Debtors intend to provide parties with the Disclosure Statement, once approved, in connection with the Debtors' solicitation of votes to accept or reject the Plan.

## I.     Approval of Disclosure Statement

15.     Pursuant to section 1125 of the Bankruptcy Code, a plan proponent must provide holders of impaired claims and equity interests with "adequate information" regarding a proposed chapter 11 plan.  In that regard, section 1125(a)(1) of the Bankruptcy Code provides:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).  Thus, a disclosure statement must, as a whole, provide information that is reasonably practicable to permit an informed judgment by impaired creditors or equity interest

WEIL:\96943995\1\41703.0008

holders entitled to vote on a plan of reorganization.  *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994); *In re PC Liquidation Corp.*, 383 B.R. 856, 866 (E.D.N.Y. 2008) (holding that a disclosure statement was adequate when it "enable[d] a reasonable creditor to make an informed judgment about the [p]lan"); *see also In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 600 (Bankr. S.D.N.Y. 2006) (explaining that "an adequate disclosure determination requires a bankruptcy court to find not just that there is enough information there, but also that what is said is not misleading"); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (adequacy of disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the policy of Chapter 11 towards fair settlement through a negotiation process between informed interested parties").

16.     The bottom-line requirement is that a disclosure statement must clearly and succinctly inform the "average unsecured creditor 'what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution.'"  *See In re Radco Props., Inc.*, 402 B.R. 666, 683 (Bankr. E.D.N.C. 2009) (quoting *In re Joseph A. Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991)).  In examining the adequacy of the information contained in a disclosure statement, bankruptcy courts have broad discretion.  *See In re A.H. Robins Co., Inc.*, 880 F.2d 694, 696 (4th Cir. 1989); *In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988); *see also In re Oxford Homes, Inc.*, 204 B.R. 264, 269 (Bankr. D. Me. 1997) (noting that Congress intentionally drew vague contours of what constitutes adequate information so that bankruptcy courts may exercise discretion to tailor them to each case's particular circumstances); *In re Dakota Rail, Inc.*, 104 B.R. 138, 143 (Bankr. D. Minn. 1989) (bankruptcy court has "wide discretion to determine . . . whether a disclosure statement contains adequate information, without burdensome, unnecessary, and cumbersome detail").  This grant of discretion was intended to facilitate effective reorganization

10

of a debtor in the broad range of businesses in which chapter 11 debtors engage and the broad range of circumstances that accompany chapter 11 cases. *See* H.R. Rep. No. 95-595, at 408–09 (1977). "In reorganization cases, there is frequently great uncertainty. Therefore the need for flexibility is greatest." *Id.* at 409. Accordingly, the determination of whether a disclosure statement contains adequate information is to be made on a case-by-case basis, focusing on the unique facts and circumstances of each case. *See In re PC Liquidation Corp.*, 383 B.R. at 865; *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001).

      17.    The Debtors submit that the Disclosure Statement contains adequate information necessary to enable all parties in interest to make an informed judgment with respect to the Plan as required by the Bankruptcy Code and the Bankruptcy Rules, including, but not limited to, a discussion of:

(a)    An overview of the Plan (§ V);

(b)    Key events leading to the commencement of the Debtors' chapter 11 cases (§ III);

(c)    The operation of the Debtors' businesses (§ II);

(d)    The indebtedness of the Debtors and information regarding pending claims (§ II.E.);

(e)    An overview of a liquidation analysis under chapter 7 (Exhibit E);

(f)    Risk factors affecting the Debtors (§ VIII);

(g)    The relationship of the Debtors with their affiliates (§ II.B. and Exhibit C);

(h)    Requirements for confirmation of the Plan (§ X.C.);

(i)    Financial information that would be relevant to determinations of whether to accept or reject the Plan (Exhibit D); and

(j)    Tax consequences of the Plan (§ VII).

18. In addition to the type of information that courts typically look for in a disclosure statement, the Disclosure Statement provides an analysis of the alternatives to confirmation and consummation of the Plan (§ XI).

19. Accordingly, the Debtors respectfully request that the Court approve the Disclosure Statement.

## II. Disclosure Statement Provides Adequate Notice of Release, Exculpation, and Injunction Provisions in Plan

20. Pursuant to Bankruptcy Rule 3016(c), "[i]f a plan provides for an injunction against conduct not otherwise enjoined under the Code, the plan and disclosure statement shall describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction." Fed. R. Bankr. P. 3016(c).

21. The Plan includes injunctions, releases, and exculpations highlighted in bold in Article X. The Disclosure Statement in Section V.I.6 describes in detail the releases provided under the Plan, the entities providing such releases, the entities being released, and the Claims and Causes of Action so released. Additionally, Section V.I.7 of the Disclosure Statement sets forth the terms of the exculpation provision under the Plan, and Section V.I.5 sets forth the injunction related to the release and exculpation provisions in the Plan. Each of the foregoing sections is set forth in conspicuous, bold print. Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c).

## III. Approval of Notice of Disclosure Statement Hearing

22. Bankruptcy Rule 3017(a) provides as follows:

> [A]fter a disclosure statement is filed in accordance with Rule 3016(b), the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest as

12

> provided in Rule 2002 to consider the disclosure
> statement and any objections or modifications
> thereto. The plan and the disclosure statement shall
> be mailed with the notice of the hearing only to the
> debtor, any trustee or committee appointed under the
> Code, the Securities and Exchange Commission and
> any party in interest who requests in writing a copy
> of the statement or plan.

Fed. R. Bankr. P. 3017(a).

23.     Bankruptcy Rules 2002(b) and (d) require notice to all creditors, indenture

trustees, and shareholders of the time set for filing objections to, and the hearing to consider the

approval of, a disclosure statement. In connection with the filing of this Motion, the Debtors will

serve a notice of the hearing to consider approval of the Disclosure Statement (the "**Disclosure**

**Statement Notice**"), in the form annexed to the Proposed Order as **<u>Schedule 1</u>**, by electronic

transmission and/or by first class mail upon all parties required to be noticed pursuant to

Bankruptcy Rules 2002 and 3017(a) and Local Rule 3017-1.

24.     In addition, consistent with Bankruptcy Rule 3017(a), the Debtors will

provide, at their expense, by electronic and/or first class mail, copies of the Disclosure Statement

and the Plan with the Disclosure Statement Notice to: (a) the U.S. Trustee; (b) the Creditors'

Committee; (c) the Securities and Exchange Commission; and (d) all parties who have specifically

requested such documents in the manner specified in the Disclosure Statement Notice. Copies of

the Disclosure Statement and the Plan will be on file with the Office of the Clerk of the Bankruptcy

Court for review during normal business hours (a fee may be charged) and are also available free-

of-charge on the Debtors' claims agent's website (http://dm.epiq11.com/Ditech).

25.     The Debtors submit that the foregoing procedures provide adequate notice

of the Disclosure Statement Hearing for all purposes and, accordingly, request that the Court

approve such procedures as adequate.

WEIL:\96943995\1\41703.0008

## IV. Approval of Procedures for Filing Objections to Disclosure Statement

26. The Debtors propose the procedures described below for parties to object or respond to the approval of the Disclosure Statement (the "**Disclosure Statement Objection Procedures**").

27. The Debtors propose that objections and responses, if any, to approval of the Disclosure Statement, must: (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (c) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (d) conform to the Bankruptcy Rules and the Local Rules; (e) be filed with the Court (i) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (f) be served upon the following parties in accordance with General Order M-399 **no later than April 4, 2019** at 4:00 p.m. (ET) (the "**Disclosure Statement Objection Deadline**"):

| *Debtors* | *Office of the U.S. Trustee* |
|---|---|
| Ditech Holding Corporation, et al. | William K. Harrington, U.S. Department of |
| 3000 Bayport Drive | Justice |
| Suite 985 | Office of the U.S. Trustee |
| Tampa, Florida 33607 | 201 Varick Street, Room 1006 |
| Attn: John Haas | New York, New York 10014 |
| | Attn: Greg M. Zipes |
| | Benjamin J. Higgins |

*Proposed Counsel to the Debtors*
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn: Ray C. Schrock, P.C.
      Sunny Singh

*Counsel to the Prepetition Administrative Agent*
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
Attn: Brian M. Resnick
      Michelle M. McGreal

*Counsel to the Term Loan Ad Hoc Group*
Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Attn: Patrick J. Nash
      John Luze

*Counsel to the DIP Agent and DIP Lender*
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, New York 10036
Attn: Sarah M. Ward
      Mark A. McDermott
      Melissa Tiarks

*Counsel to Nomura Corporate Funding Americas, LLC*
Jones Day
250 Vesey Street
New York, New York 10281
Attn: Ben Rosenblum

*Proposed Counsel to the Creditors' Committee*
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Attn: Robert J. Feinstein
      Bradford J. Sandler
      Steven W. Golden

and

Rich Michaelson Magaliff, LLP
335 Madison Avenue, 9th Floor
New York, New York 10017
Attn: Robert N. Michaelson
      Elwood F. Collins

Additionally, objections and responses shall be served upon any other entity designated by the Court (collectively with the above, the "**Objection Notice Parties**") so as to be actually received by the Objection Notice Parties no later than the Disclosure Statement Objection Deadline.

28.       The Debtors submit that, if there are objections to the Disclosure Statement, it will assist the Court, and may streamline the Disclosure Statement Hearing, if the Debtors reply to any such objections. Accordingly, the Debtors request that they be authorized to file and serve replies, including an omnibus reply, to any such objections and that the Court set **April 8, 2019** at

15

4:00 p.m. (ET) as the deadline for filing and service of such replies or omnibus reply to any objections to approval of the Disclosure Statement.

29.     Requiring objections and responses to the Disclosure Statement to be filed and served in accordance with the Disclosure Statement Objection Procedures will afford the Court, the Debtors, and other parties-in-interest sufficient time before the Disclosure Statement Hearing to consider and potentially resolve any objections and/or responses to the Disclosure Statement.  Based upon the foregoing, the Debtors respectfully request that the Court find that the Disclosure Statement Objection Procedures comply with the requirements of Bankruptcy Rules 3017(a) and Local Rule 3017-1.

### Solicitation and Voting Procedures

30.     In connection with solicitation of the Plan, the Debtors propose to implement the solicitation and balloting procedures described below.  The Debtors have retained Epiq Corporate Restructuring, LLC ("**Epiq**") as their claims and noticing agent and also as their administrative advisor under section 327(a) of the Bankruptcy Code to, among other things, implement the solicitation and balloting procedures described below.

**I.      Parties Entitled to Vote**

31.     The Court entered an order (the "**Bar Date Order**") that, among other things, sets (a) April 1, 2019 as the deadline for any parties in interest other than Governmental Units (as defined by section 101(27) of the Bankruptcy Code) to file proofs of claim against the Debtors (the "**Bar Date**") and (b) August 10, 2019 as the deadline for Governmental Units to file proofs of claim against the Debtors (the "**Governmental Bar Date**").

32.     The Debtors submit that Class 3 (Term Loan Claims) (the "**Voting Class**") is impaired but entitled to receive distributions under the Plan and, thus, may vote to accept or reject the Plan, subject to certain exceptions discussed below.

16

33.     To the extent that any of the following is true, a creditor who holds a Claim

in a Voting Class is nonetheless **not** entitled to receive a ballot or to vote on the Plan:

(a)     As of the Voting Record Date (as defined below), the outstanding amount of such creditor's Claim is zero ($0.00);

(b)     As of the Voting Record Date, such creditor's Claim has been disallowed, expunged, disqualified or suspended; or

(c)     Such creditor's Claim is subject to an objection or request for estimation as of ten (10) days before the Voting Deadline (as defined below), subject to the procedures set forth below.

34.     Section 1126(f) of the Bankruptcy Code provides that, for the purposes of

soliciting votes on confirmation of a plan of reorganization, "a class that is not impaired under a

plan, and each holder of a claim or interest of such class, are conclusively presumed to have

accepted the plan, and solicitation of acceptances with respect to such class from the holders of

claims or interests of such class is not required." 11 U.S.C. § 1126(f).  Conversely, section 1126(g)

of the Bankruptcy Code provides that "a class is deemed not to have accepted a plan if such plan

provides that the claims or interests of such class do not entitle the holders of such claims or

interests to receive or retain any property under the plan on account of such claims or interests."

*Id*. § 1126(g).

35.     The Plan does not impair certain Claims and Interests.  Pursuant to section

1126 of the Bankruptcy Code, the holders of such Claims and Interests are unimpaired and,

therefore presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Further,

the Plan provides that certain Claims and Interests are not entitled to receive or retain any property

under the Plan on account of such Claims and Interests.  Pursuant to section 1126(g) of the

Bankruptcy Code, the holders of such Claims and Interests are conclusively deemed to have not

accepted the Plan and, accordingly, are likewise not entitled to vote (together with the non-voting

unimpaired Claim and Interest holders, the "**Non-Voting Claim and Interest Holders**").

17

36.　　Holders of Claims and/or Interests in the following classes (collectively, the "**Non-Voting Classes**") constitute Non-Voting Claim and Interest Holders who are not entitled to vote:

| Class | Description | Impairment | Acceptance / Rejection |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 4 | Second Lien Notes Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 5 | General Unsecured Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 6 | Go-Forward Trade Claims | Impaired | Not Entitled to Vote (Deemed to Reject)[4] |
| Class 7 | Intercompany Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 8 | Intercompany Interests | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 9 | Parent Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 10 | Subordinated Securities Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

---

[4]　The holders of Claims in Class 6 (Go-Forward Trade Claims) are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan. The Bankruptcy Code does not require the solicitation of votes from such holders. Specifically, section 1126(g) of the Bankruptcy Code provides that "[n]otwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests." 11 U.S.C. § 1126(g). Bankruptcy courts have approved prepackaged or prearranged chapter 11 plans where the debtors did not solicit holders of general unsecured claims or equity interests who were deemed to reject the plan but received modest distributions under the plan. See, e.g., *In re Walter Investment Management Corp.*, Case No. 17-13446 (JLG) (Bankr. S.D.N.Y. January 18, 2018) (ECF No. 172) (confirming plan where impaired equity class that was deemed to reject the plan received distribution in the form of equity and/or warrants); *In re EV Energy Partners, L.P.*, Case No. 18-10814 (CSS) (Bankr. D. Del. May 17, 2018) (ECF No. 238) (same); *In re Nuverra Environmental Solutions, Inc*., Case No. 17-10949 (KJC) (Bankr. D. Del. July 25, 2017) (confirming plan where impaired general unsecured class that was deemed to reject the plan received distribution in the form of equity and/or warrants); *In re Tidewater Inc*., Case No. 17-11132 (BLS) (Bankr. D. Del. July 17, 2017) (ECF No. 378) (confirming plan where impaired equity class that was deemed to reject the plan received distribution in the form of equity and/or warrants).

18

37.     Because Class 1 (Priority Non-Tax Claims) and Class 2 (Other Secured Claims) are presumed to accept the Plan, in an effort to conserve the resources of the Debtors' Estates, the Debtors propose to send to holders of such Claims and Interests a notice of non-voting status (any such notice, a "**Notice of Non-Voting Status**"), substantially in the form annexed to the Proposed Order as **<u>Schedule 4</u>** ("**Notice of Non-Voting Status – Unimpaired Classes**"), which sets forth the manner in which a copy of the Plan and Disclosure Statement may be obtained. These Classes will also receive the Sale and Confirmation Hearing Notice (as defined below). The Debtors submit that such notice satisfies the requirements of Bankruptcy Rule 3017(d). The Debtors request that the Court determine that it is not required to distribute copies of the Plan or Disclosure Statement to any holder of an Unimpaired Claim or Interest unless otherwise requested. Additionally, with respect to holders of Claims or Interests of Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests), which Classes are Unimpaired and not entitled to vote on the Plan, pursuant to section 105(a) of the Bankruptcy Code, the Debtors propose that each holder be deemed to have received all required notices under the Proposed Order without actually distributing such notices to each party.

38.     Pursuant to section 1126(g) of the Bankruptcy Code, holders of Claims and Interests in Class 4 (Second Lien Notes Claims), Class 5 (General Unsecured Claims), Class 6 (Go-Forward Trade Claims), Class 9 (Parent Equity Interests) and Class 10 (Subordinated Securities Claims) are conclusively deemed to have rejected the Plan and, thus, are not entitled to vote. The Debtors propose to send to holders of Claims and Interests in these Classes a notice of non-voting status, substantially in the form annexed to the Proposed Order as **<u>Schedule 5</u>** ("**Notice of Non-Voting Status – Impaired Classes**"). These Classes will also receive the Sale and Confirmation Hearing Notice (as defined below). The Debtors submit that such notice is sufficient

19

and satisfies the requirements of Bankruptcy Rule 3017(d). The Debtors request that the Court determine that it is not required to distribute copies of the Plan or Disclosure Statement to any holder of an Impaired Claim or Interest that is not entitled to vote on the Plan.

## II. Voting Record Date

39. Bankruptcy Rule 3017(d) provides, in relevant part, that, for the purposes of soliciting votes in connection with the confirmation of a plan of reorganization, "creditors and equity security holders [must] include holders of stock, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3018(a) provides, in relevant part, that: "A plan may be accepted or rejected in accordance with § 1126 of the Code within the time fixed by the Court pursuant to Rule 3017." Fed. R. Bankr. P. 3018(a).

40. To identify and set the universe of creditors and Interest holders entitled to vote on the Plan, the Debtors request that the Court set **April 9, 2019** as the date for determining which creditors are entitled to vote on the Plan (the "**Voting Record Date**").

41. With respect to any transferred Claim, if the transferor of such Claim is entitled to vote with respect to the Plan, the Debtors propose that the transferee will be entitled to receive a Solicitation Package (as defined below) and vote to accept or reject the Plan on account of the transferred Claim only if: (a) all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date; or (b) the transferee files, no later than the Voting Record Date, (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer, and (ii) a sworn statement of the transferor supporting the validity of the transfer. In the event a Claim is transferred after the transferor has

20

completed a Ballot, the transferee of such Claim shall be bound by any vote (and the consequences thereof) made on the Ballot by the holder as of the Voting Record Date of such transferred Claim.

42. In addition, the Debtors request that the Court establish the Voting Record Date as the date for determining which creditors and Interest holders in Non-Voting Classes are entitled to receive a Notice of Non-Voting Status. The Debtors believe that the Voting Record Date is appropriate, as it facilitates the determination of which creditors are entitled to vote on the Plan or, in the case of Non-Voting Claim and Interest Holders, to receive the applicable Notice of Non-Voting Status.

## III. Approval of Solicitation Packages and Procedures for Distribution Thereof

43. Bankruptcy Rule 3017(d) lists the materials that must be provided to holders of Claims and Interests for the purpose of soliciting votes on a chapter 11 plan and providing adequate notice of the hearing to consider confirmation thereof. Specifically, Bankruptcy Rule 3017(d) provides, in relevant part, that:

> [u]pon approval of a disclosure statement, — except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders — the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,
>
> (a) the plan or a court-approved summary of the plan;
>
> (b) the disclosure statement approved by the court;
>
> (c) notice of the time within which acceptances and rejections of the plan may be filed; and
>
> (d) any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.

Fed. R. Bankr. P. 3017(d).

44.     The Debtors propose to mail or cause to be mailed solicitation packages (the "**Solicitation Packages**") containing the information described below no later than four (4) business days following entry of an order approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code (expected to be by April 19, 2019) or as soon as reasonably practicable thereafter (the "**Solicitation Date**"),  to the U.S. Trustee and the holders of Claims in the Voting Class, as required by Bankruptcy Rule 3017(d).

45.     In accordance with Bankruptcy Rule 3017(d), Solicitation Packages shall contain copies of:

(a)     The Proposed Order, as entered by the Court and without attachments;

(b)     The *Notice of (I) Approval of Disclosure Statement (II) Bidding Procedures and Auction (III) Establishment of Voting Record Date, (IV) Sale and Confirmation Hearing, (V) Sale and Confirmation Objection Procedures, and (VI) Procedures and Deadline for Voting on the Plan*, in substantially the form of **Schedule 2** to the Proposed Order (the "**Sale and Confirmation Hearing Notice**");

(c)     A link to the Debtors' website page containing the Plan and Disclosure Statement; and

(d)     If the recipient is entitled to vote on the Plan (as set forth herein), a Ballot (as defined below) customized for such holder (if applicable) and conforming to Official Bankruptcy Form No. B 314, in the form described below, and a postage-prepaid return envelope.[5]

46.     The Plan and Disclosure Statement will be available at no charge on the internet (http://dm.epiq11.com/Ditech).  In addition, any party entitled to receive a copy of the Plan and the Disclosure Statement may request either an electronic copy on a USB flash drive or a paper copy by contacting Epiq (a) in writing at Ditech Ballot Processing, c/o Epiq Corporate

---

[5]     Official Bankruptcy Form No. B 314 can be found at http://www.uscourts.gov/forms/bankruptcy-forms, the official website for the United States Bankruptcy Courts.

WEIL:\96943995\1\41703.0008

Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, Oregon 97005 or (b) by email at tabulation@epiqglobal.com, with a reference to "Ditech Holding Corporation" in the subject line. Upon receipt of such request, the Debtors will promptly provide such parties with a copy of the Plan and the Disclosure Statement at no cost to them.

47. The Debtors will not mail Solicitation Packages to holders of Claims that have already been paid in full; provided, however, that if any such Claim holder would be entitled to receive a Solicitation Package for any other reason, the Debtors will send such Claim holder a Solicitation Package in accordance with the procedures set forth herein.

48. The Debtors anticipate that the United States Postal Service may return some Solicitation Packages as undeliverable. The Debtors submit that it is costly and wasteful to mail Solicitation Packages to the same addresses from which mail previously was returned as undeliverable. Therefore, the Debtors request the Court waive the strict notice rule and excuse the Debtors from mailing Solicitation Packages to addresses from which the Debtors have received mailings returned as undeliverable, unless the Debtors are provided with a new mailing address sufficiently in advance of the Voting Deadline.

49. Further, the Debtors request authority to make non-substantive changes to the Disclosure Statement, the Plan, the Ballot, and related documents without further order of the Court, including ministerial changes to correct typographical and grammatical errors, and to make conforming changes among the Disclosure Statement, the Plan, the Ballot, and any other materials in the Solicitation Packages.

50. The Debtors submit that they have shown good cause for implementing the proposed notice and service procedures and request the Court's approval thereof.

WEIL:\96943995\1\41703.0008

**IV.    Approval of Notices of Non-Voting Status**

51.    Bankruptcy Rule 3017(d) permits a court to order that the Plan and Disclosure Statement need not be mailed to Unimpaired Classes.  In lieu thereof, a bankruptcy court may order that "notice that the class is designated in the plan as unimpaired and notice of the name and address of the person from whom the plan or summary of the plan and disclosure statement may be obtained upon request and at the plan proponent's expense, [and] notice of the time fixed for filing objections to and the hearing on confirmation" be mailed to such classes.  Fed. R. Bankr. P. 3017(d).

52.    As discussed above, the Non-Voting Classes are either:  (a) unimpaired and presumed to accept the Plan or (b) impaired and deemed to reject the Plan.  Accordingly, in lieu of a Solicitation Package, the Debtors propose to mail to (a) holders of Claims or Interests in Class 1 (Priority Non-Tax Claims) and Class 2 (Other Secured Claims) the Sale and Confirmation Hearing Notice and the Notice of Non-Voting Status – Unimpaired Classes, and (b) holders of Claims or Interests in Class 4 (Second Lien Notes Claims), Class 5 (General Unsecured Claims), Class 6 (Go-Forward Trade Claims), Class 9 (Parent Equity Interests) and Class 10 (Subordinated Securities Claims), the Sale and Confirmation Hearing Notice and the Notice of Non-Voting Status – Impaired Classes.

53.    Each Notice of Non-Voting Status provides (a) notice of the approval of the Disclosure Statement, (b) notice of the filing of the Plan, (c) notice of the holder's non-voting status, and (d) information on how to obtain copies of the Disclosure Statement and Plan.

54.    The Debtors submit that mailing the applicable Notice of Non-Voting Status and the Sale and Confirmation Hearing Notice to Non-Voting Classes satisfies the requirements of Bankruptcy Rule 3017(d).  Accordingly, the Debtors request that the Court direct that Solicitation Packages need not be mailed to Non-Voting Claim and Interest Holders.  Additionally,

24

pursuant to section 105(a) of the Bankruptcy Code, the Debtors propose that each holder of an Intercompany Claim or Intercompany Interest be deemed to have received all required notices under the Proposed Order without actually distributing such notices to each party.

## V. Approval of Form of Ballot

55. Bankruptcy Rule 3017(d) requires the Debtors to mail a form of ballot, which substantially conforms to Official Bankruptcy Form No. B 314, to "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). The Debtors propose to distribute to holders of Claims in the Voting Class – Class 3 (Term Loan Claims) – that are otherwise eligible to vote, a ballot substantially in the form attached to the Proposed Order as **Schedule 3** (the "**Ballot**"), which is incorporated herein by reference. Class 3 (Term Loan Claims) is the only Class entitled to vote to accept or reject the Plan. Although the Ballot is based on Official Bankruptcy Form No. B 314, it has been modified to address the specific circumstances of these chapter 11 cases and to include certain additional information that the Debtors believe is relevant and appropriate for the Voting Class.

## VI. Voting Deadline

56. Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of [a] disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject [a] plan . . . ." Fed. R. Bankr. P. 3017(c). The Debtors anticipate completing substantially all mailing of the Solicitation Packages by the Solicitation Date. Based on such schedule, the Debtors propose that, to be counted as a vote to accept or reject the Plan, each Ballot must be properly executed, completed, and delivered to Epiq: (a) by first-class mail (whether in the return envelope provided with each Ballot or otherwise); (b) by overnight courier; (c) by hand delivery; or (d) via Epiq's online balloting portal so that it is actually received by Epiq no later than **May 24, 2019** at 4:00 p.m. (ET) (the "**Voting Deadline**"), unless extended by the Debtors

25

either (i) for any holder of a Claim in a Voting Class by written (including by email) notice to such holder or (ii) for an entire Voting Class by notice filed by the Debtors in these chapter 11 cases. The Debtors submit that the proposed approximate 35-day solicitation period is a sufficient period within which creditors can make an informed decision whether to accept or reject the Plan.

57.    In addition to accepting hard copy Ballots via first class mail, overnight courier, and hand delivery, the Debtors request authorization to accept Ballots via electronic, online transmissions, solely through a customized online balloting portal on the Debtors' case website to be maintained by Epiq (the "**E-Ballot Portal**").  Parties entitled to vote may cast an electronic Ballot and electronically sign and submit the Ballot instantly by utilizing the E-Ballot Portal (which allows a holder to submit an electronic signature).  Instructions for electronic, online transmission of Ballots will be set forth on the forms of Ballots.  The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.  Ballots submitted by email, facsimile, or any other means of electronic submission not specifically authorized by these solicitation procedures shall not be counted.

## VII.    Tabulation Procedures

58.    Section 1126(c) of the Bankruptcy Code provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

59. Furthermore, Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a).

60. With respect to Term Loan Claims, solely for purposes of voting to accept or reject the Plan, and not for purposes of allowance or distribution, the Debtors propose the following:

(a) The Debtors shall be entitled to rely on the amounts of such Claims as set out in the register of the Prepetition Administrative Agent as of the Voting Record Date, and the Prepetition Administrative Agent will provide the Debtors or Epiq with the applicable records in electronic Microsoft Excel format no later than three (3) business days following the Voting Record Date;

(b) For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in the Voting Class shall be aggregated as if such creditor held one Claim against the Debtor(s) in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan;

(c) Notwithstanding anything contained herein to the contrary, the Debtors in their discretion, may waive any defects in a Ballot, or enter into a stipulation to settle or resolve any dispute in relation thereto, with a holder of a Claim that has completed a Ballot;

(d) Notwithstanding anything contained herein to the contrary, Epiq, in its discretion, may contact entities entitled to vote to cure any defects in the Ballot; and

(e) There shall be a rebuttable presumption that in the case where more than one timely, properly completed Ballot voting the same Claim is received, only the last properly completed Ballot will be counted unless the holder of the Claim receives Court approval otherwise.

61. If applicable, solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, a Claim, and without prejudice to the rights of the Debtors in any other context, the Debtors propose that each Claim within a Class entitled to vote to accept or reject the Plan be temporarily allowed in an amount

27

equal to the amount of such Claim as set forth in a timely filed proof of Claim, or, if no proof of

Claim was filed, the liquidated, noncontingent, undisputed amount of such Claim as set forth in

the applicable Debtors' schedule of assets and liabilities (collectively, as may be amended from

time to time, the "**Schedules**").  The foregoing general procedures will be subject to the following

exceptions:

(a)     If a Claim is deemed Allowed, pursuant to the Plan, such Claim shall be Allowed for voting purposes in the deemed Allowed amount set forth in the Plan;

(b)     If a Claim, for which a proof of Claim has been timely filed, is wholly contingent, unliquidated, or disputed (based on the face of the Claim or a reasonable review of the Claim and its supporting documentation), such Claim shall be allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00, unless such Claim is disputed in the manner set forth in subparagraph (f) below;

(c)     If a Claim, for which a proof of Claim was timely filed, lists an amount that is partially unliquidated or contingent, such Claim shall be temporarily allowed only in the liquidated, noncontingent amount set forth on the proof of Claim, unless such Claim is disputed in the manner set forth in subparagraph (f) below;

(d)     If a Claim has been estimated for voting purposes or otherwise allowed for voting purposes by order of the Court, such Claim shall be allowed in the amount so estimated or allowed by the Court for voting purposes only, and not for purposes of allowance or distribution, unless otherwise provided by order of the Court;

(e)     If a Claim is listed in the Schedules as contingent, unliquidated, disputed, in the amount of $0.00, or unknown, and a proof of Claim was not (i) filed by the applicable bar date for the filing of proofs of Claim established by the Bar Date Order or (ii) deemed timely filed by an order of the Court prior to the Voting Deadline, unless the Debtors have consented in writing, such Claim shall be disallowed for voting purposes, provided, however, if the applicable bar date has not yet passed, such Claim shall be entitled to vote in the amount of $1.00;

(f)     If the Debtors serve an objection to, or request for estimation of, a Claim at least ten (10) days before the Voting Deadline, such Claim shall be temporarily disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be

28

set forth in the objection or request for estimation, or as ordered by the Court before the Voting Deadline;

(g) For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class shall be aggregated as if such creditor held one Claim against the Debtor(s) in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan;

(h) Notwithstanding anything contained herein to the contrary, the Debtors in their discretion, may waive any defects in a Ballot, or enter into a stipulation to settle or resolve any dispute in relation thereto, with a holder of a Claim that has completed a Ballot;

(i) Notwithstanding anything contained herein to the contrary, Epiq, in its discretion, may contact entities entitled to vote to cure any defects in the Ballot;

(j) There shall be a rebuttable presumption that in the case where more than one timely, properly completed Ballot voting the same Claim is received, only the last properly completed Ballot will be counted unless the holder of the Claim receives Court approval otherwise;

(k) Notwithstanding anything to the contrary contained herein, any Claim holder who has filed or purchased duplicate Claims within the same Class shall be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims;

(l) If a proof of claim has been amended by a later proof of claim that is filed on or prior to the Voting Record Date, the later filed amending Claim shall be entitled to vote in a manner consistent with these tabulation rules, and the earlier filed Claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such amended Claim. Except as otherwise ordered by the Court, any amendments to proofs of claim after the Voting Record Date shall not be considered for purposes of these tabulation rules;

(m) If a Claim is filed in the amount of $0.00, the holder of such Claim shall not be entitled to vote on account of such Claim; and

(n) Holders of paid or otherwise satisfied claims are not entitled to vote.

62. The Debtors believe that the foregoing proposed procedures provide for a fair and equitable voting process. If the holder of any Claim seeks to challenge the allowance of its Claim for voting purposes, the Debtors propose that such Claim holder file with the Court a

motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes in a different amount (a "**Rule 3018(a) Motion**"). The Debtors request that the Court (a) fix May 24, 2019 at 4:00 p.m. (ET) (the "**Rule 3018(a) Motion Deadline**") as the deadline for the filing and serving a Rule 3018(a) Motion and (b) require that such Rule 3018(a) Motions be filed with the Court and served on undersigned counsel and the other Objection Notice Parties so as to be actually received not later than the Rule 3018(a) Motion Deadline. The Debtors propose that the Court consider only those Rule 3018(a) Motions that have been timely filed and served in accordance with the provisions of this paragraph. The Debtors further propose that upon entry of an order of the Court granting a Rule 3018(a) Motion, such creditor's Ballot be counted in accordance with the above designated guidelines, unless temporarily allowed in a different amount by an order of the Court entered prior to or concurrent with entry of an order confirming the Plan.

63.     The Debtors also request that (a) if no votes to accept or reject the Plan are received with respect to the Voting Class, such Class be deemed to have voted to accept the Plan, (b) creditors must vote all of their Claim(s) within the Voting Class, either to accept or reject the Plan and may not split their vote(s), and (c) a Ballot that partially rejects and partially accepts the Plan not be counted.

64.     The Debtors further propose that the following Ballots not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected: (a) any Ballot received after the Voting Deadline, unless the Debtors have granted in writing an extension of the Voting Deadline with respect to such Ballot; (b) any Ballot that is illegible or contains insufficient information to permit the identification of the Claim holder; (c) any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the

Plan; (d) any Ballot that is unsigned or without an original signature; provided, however, for the avoidance of doubt, a Ballot submitted via Epiq's E-Ballot Portal shall be deemed to contain an original signature; and (e) any Ballot transmitted to Epiq by facsimile, electronic transmission, or other electronic means (other than via Epiq's E-Ballot Portal). Ballots that are properly completed, executed, and timely returned to Epiq, but (a) do not indicate an acceptance or rejection of the Plan, (b) partially accept and partially reject the Plan (as discussed above), or (c) indicate both an acceptance and rejection of the Plan, will not be counted.

## VIII.  Voting Certification

65.     Local Rule 3018-1(a) requires that, at least seven (7) days prior to the Sale and Confirmation Hearing, subject to the Bankruptcy Court's discretion to shorten such period under Bankruptcy Rule 9006(c)(1), the voting agent certify in writing (the "**Voting Certification**") the amount and number (as applicable) of Allowed Claims in the Voting Class that voted to accept or reject the Plan, and the Debtors serve the Voting Certification upon, among others, (a) the Court; (b) the attorneys for the Debtors; (c) the U.S. Trustee; (d) the attorneys for the Creditors' Committee; (e) the attorneys for the Term Loan Ad Hoc Group and Prepetition Administrative Agent; and (f) the attorneys for the DIP Agent and DIP Lenders.  The Debtors will file the Voting Certification no later than **May 29, 2019** at 4:00 p.m. (ET) (the "**Voting Certification Deadline**").  The Voting Certification Deadline proposed herein is 7 days prior to the Sale and Confirmation Hearing, which the Debtors submit provides adequate notice under the circumstances.

## PROCEDURES FOR CONSIDERATION OF CONFIRMATION OF PLAN

## I.      Sale and Confirmation Hearing

66.     Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation" of a chapter 11

plan. Fed. R. Bankr. P. 3017(c). Pursuant to Bankruptcy Rule 2002(b), creditors must receive at least twenty-eight (28) days' notice of a confirmation hearing. In accordance with these rules, and in view of the Debtors' proposed solicitation schedule outlined herein, the Debtors request that a hearing on confirmation of the Plan (the "**Sale and Confirmation Hearing**") be scheduled for **June 5, 2019** at 11:00 a.m. (ET), or on such date and time as is convenient to the Court. The Sale and Confirmation Hearing may be adjourned or continued from time to time by the Court or the Debtors without further notice other than adjournments announced in open Court or as indicated in any notice of agenda of matters scheduled for hearing filed with the Court. The Debtors request that the Court find that the proposed date for the Sale and Confirmation Hearing is in compliance with the Bankruptcy Rules and the Local Rules.

## II.     Sale and Confirmation Hearing Notice

67.     Pursuant to Bankruptcy Rule 3017(d), notice of a plan confirmation objection deadline and hearing must be provided to all claim and equity security holders in accordance with Bankruptcy Rule 2002. Bankruptcy Rules 2002(b) and (d) require notice to all creditors, indenture trustees, and equity security holders, as of the time set for filing objections to, and the hearing set to consider, confirmation of a plan.

68.     In accordance with the foregoing, **no later than the Solicitation Date**, the Debtors propose to provide, by electronic and/or first class mail, all parties required to receive notice pursuant to Bankruptcy Rules 2002 and 3017(d) with a copy of the Sale and Confirmation Hearing Notice, which notice will set forth, among other things, (a) the Voting Deadline; (b) the Plan Objection Deadline and procedures for filing objections and responses to confirmation of the Plan and approval of one or more Sale Transaction; and (c) the time, date, and place for the Sale and Confirmation Hearing.

WEIL:\96943995\1\41703.0008

69.     The Debtors submit that the foregoing notice procedures comply with all notice requirements under Bankruptcy Rules 3017(d) and 2002(b) and (d).  Accordingly, the Debtors request that the Court find that such notice is due and proper and that no further notice is necessary.  Moreover, since Bankruptcy Rule 2002(*l*) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice," Fed. R. Bankr. P. 2002(*l*), the Debtors propose to publish the Sale and Confirmation Hearing Notice, with such modifications as the Debtors may deem appropriate for purposes of publication (the "**Publication Notice**"), in the national editions of *The New York Times*, *USA Today*, and, in the Debtors' discretion, such other publications of general circulation that the Debtors determine, **no later than the Solicitation Date**.  The Debtors believe that publication of this notice will give sufficient notice of the Sale and Confirmation Hearing to persons who do not otherwise receive notice by electronic or first class mail.

### III.     Objection Procedures

70.     Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."  Local Rule 3020-1 requires that objections to confirmation of a plan be filed no later than seven (7) days before the Sale and Confirmation Hearing.  Bankruptcy Rule 2002(b) provides that parties must receive at least twenty-eight (28) days' notice of the deadline for filing objections to confirmation.  Accordingly, the Debtors propose **May 24, 2019** at 4:00 p.m. (ET) as the deadline to object or respond to confirmation of the Plan (the "**Plan Objection Deadline**").  The Debtors request that the Court direct that any objections to confirmation of the Plan comply with the procedures for filing objections set forth in the Sale and Confirmation Hearing Notice.  Pursuant to Bankruptcy Rule 3020(b), "[i]f no objection is timely filed, the [C]ourt may determine that the plan has been

proposed in good faith and not by any means forbidden by law without receiving evidence on such issues." Fed. R. Bankr. P. 3020(b)(2).

71. The Debtors request that objections and responses, if any, to confirmation of the Plan: (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (c) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (d) conform to the Bankruptcy Rules and the Local Rules; (e) be filed with the Court (i) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (f) be served in accordance with General Order M-399 **no later than the Plan Objection Deadline**, and served upon the Objection Notice Parties.

72. The Debtors submit that, if there are objections to confirmation, it will assist the Court and may streamline the Sale and Confirmation Hearing if the Debtors file a reply to any such objections. Accordingly, the Debtors request that they be authorized to file and serve an omnibus reply to any such objections and that the Court set **May 31, 2019** (the "**Reply Deadline**") as the deadline for filing and service of replies or an omnibus reply to any objections to confirmation of the Plan.

73. The Debtors also request that the Court establish the Reply Deadline as the deadline for the Debtors to file their brief and any affidavits or declarations in support of confirmation of the Plan. In addition, the Debtors request that any party in interest be permitted

34

to file and serve a statement in support of confirmation of the Plan and/or reply to any objection to confirmation of the Plan by the Reply Deadline.

74.     The Debtors respectfully request that the Court approve the procedures for filing objections to the Plan and replies thereto and find that such procedures comply with Bankruptcy Rules 2002, 3017, and 3020 and Local Rule 3020-1.

## BIDDING PROCEDURES AND ASSUMPTION AND ASSIGNMENT PROCEDURES

### I.  Prepetition Marketing Process

75.     In June 2018, the Debtors initiated the Prepetition M&A Process with the assistance of Houlihan Lokey and Weil, Gotshal & Manges LLP ("**Weil**").  The Debtors, with the assistance of their advisors, undertook an extensive marketing effort soliciting interest from thirty-three (33) potentially interested parties including strategic investors (*i.e.*, investors holding investments in the mortgage industry) and financial investors (*i.e.*, private equity firms, hedge funds, etc., who may have an interest in the mortgage industry), with the aim of attracting multiple competing bids for the Debtors' assets or businesses.  In connection with such solicitation, the Debtors and their advisors prepared, among other things, a comprehensive information memorandum, financial projections, and an electronic data room to provide potential buyers with adequate information upon which to make an offer.

76.     During this process, ten (10) interested investors executed confidentiality agreements and were granted access to an electronic data room containing significant diligence and other confidential information about the Debtors' business.  The deadline for interested investors to submit initial bids was July 17, 2018.  The Debtors received four (4) indications of interest ("**IOIs**") from both strategic and financial investors.  In evaluating the IOIs, the Debtors and Houlihan Lokey analyzed, among other things:  (a) the structure of the proposed transaction, (b) the form and amounts of consideration offered, and (c) the assets to be acquired.  The Debtors

35

shared the IOIs with the Special Committee and following extensive discussions, the Debtors selected three (3) investors to attend onsite management presentations, which were held during the last week of July 2018. Snellenbarger Decl. ¶ 11.

77.     Throughout August 2018, the Debtors and their advisors actively engaged with each of the potential investors to clarify and firm up their bids in an effort to increase the consideration of the bids received in advance of the second and final round of bidding. The Debtors received three (3) second-round IOIs on or about August 21, 2018, two (2) of which were bids for the sale of certain servicing and reverse assets with subservicing retained by the Debtors (the "**Alternative Bids**") and one (1) of which was a bid for substantially all of the Debtors' net assets as a going concern (the "**All-Company Bid**"). Over the course of September and October 2018, the Debtors and their advisors engaged in extensive discussions with the final three bidders. Snellenbarger Decl. ¶ 13.

78.     Throughout September 2018, the Debtors and their advisors engaged in extensive discussions with each potential investor, coordinated discussions with the Debtors' management team, and provided additional due diligence materials in response to various diligence requests. In October 2018, following the evaluation of each IOI and discussions with the Special Committee, the Debtors and their advisors concluded that the Alternative Bids required significant additional capital to fund the investors' proposed business plans. As a result, the Debtors and their advisors decided to proceed with the potential investor that submitted the All-Company Bid. Snellenbarger Decl. ¶ 14.

79.     Throughout November and December 2018, the Debtors solicited input on the All-Company Bid from the Term Loan Ad Hoc Group and an ad hoc group of Second Lien Noteholders (the "**Second Lien Noteholder Ad Hoc Group**"). On December 17, 2019, the

Debtors elected to utilize the 30-day grace-period for the interest payment due under the Debtors'
Second Lien Notes (the "**Grace Period**").  Immediately following entry into the Grace Period, the
Debtors requested that the members of the Term Loan Ad Hoc Group and the Second Lien
Noteholder Ad Hoc Group get restricted to enable them to review and consider the terms of the
All-Company Bid.  Snellenbarger Decl. ¶ 15.

80.     The Debtors and their advisors conducted meetings at Weil's New York
office throughout the first week of December 2018 with each of the Term Loan Ad Hoc Group
and the Second Lien Noteholder Ad Hoc Group and their respective advisors to discuss the
feasibility of the All-Company Bid and to explore potential strategic alternatives.  Snellenbarger
Decl. ¶ 16.

81.     Despite extensive negotiations with the bidder who submitted the All-
Company Bid, such bidder ultimately rescinded the All-Company Bid in late December 2018, days
after the Debtors entered the Grace Period.  Following such rescission, the Debtors re-engaged a
previous bidder in connection with a potential bid for substantially all of the Debtors' assets.  After
several weeks of negotiations with such bidder, the Debtors ultimately decided not to pursue that
sale transaction at that time.  Snellenbarger Decl. ¶ 17.

82.     Following extensive deliberations with their advisors and the Special
Committee, the Debtors determined that entry into the RSA with the Term Loan Ad Hoc Group
provided the best means of maximizing value to the Debtors' Estates because the RSA
contemplates a debt-to-equity transaction while preserving the Debtors' ability to simultaneously
continue marketing all or substantially all of their assets to attract the highest or otherwise best
offer.  Snellenbarger Decl. ¶ 18.

WEIL:\96943995\1\41703.0008

## II. Need for Timely Sale Process

83.     The Debtors believe that the time periods set forth in the Proposed Bidding Procedures are reasonable and will provide parties with sufficient time and information to submit a bid for the Debtor's assets. In formulating the procedures and time periods set forth therein, the Debtors balanced the need to provide adequate and appropriate notice to parties in interest and potential bidders with the need to quickly and efficiently run a sale process in parallel with the confirmation process. The Proposed Bidding Procedures are designed to encourage all prospective bidders to submit bids at the outset of these chapter 11 cases to provide the highest or otherwise best available recoveries to the Debtors' stakeholders. The Debtors and the Term Loan Ad Hoc Group negotiated milestones in the RSA that permit the Debtors to conduct the sale and auction process while simultaneously ensuring that the Debtors have a viable path forward if they do not receive any Qualified Bids (as defined in the Proposed Bidding Procedures).[6]

84.     The Debtors' formulation of the Proposed Bidding Procedures was also informed by (a) the breadth of the prepetition marketing process, (b) the fact that a substantial portion of the market has already been contacted and has been provided with the opportunity to submit and formulate a binding bid, and (c) the fact that the Debtors' key stakeholders are aware that the Debtors seek a potential sale transaction of any and all of their assets pursuant to the Plan. Furthermore, potential bidders have had, and will, in accordance with the Proposed Bidding Procedures, continue to have access to comprehensive information prepared by the Debtors and their advisors that is compiled in an electronic data room. In light of the foregoing, the Debtors

---

[6]     Similarly, certain milestones have been included in the DIP Warehouse Facility Agreements that permit the Debtors to conduct an efficient sale process, while simultaneously ensuring that the Debtors have a viable path forward if they do not receive any Qualified Bids.

38

have determined that pursuing the Proposed Bidding Procedures is in the best interests of the Debtors' Estates and provides interested parties with sufficient opportunity to participate.

## III. Proposed Bidding Procedures

85.     The Proposed Bidding Procedures are designed to promote a competitive and expedient sale process for any and all of the Debtors' assets.  If approved, the Proposed Bidding Procedures will allow the Debtors to solicit and identify bids from potential bidders that constitute the highest or otherwise best offers for any and all of the Debtors' assets on a timeline that is consistent with the Debtors' solicitation timeline.

86.     The Proposed Bidding Procedures describe, among other things, (a) procedures for parties to access due diligence, (b) the process for submitting proposals to subservice the Debtors' loan portfolio, (c) the process for submitting bids for any and all of the Debtors' assets, the manner in which bidders and bids become, respectively, Qualified Bidders and Qualified Bids (as defined in the Proposed Bidding Procedures), (d) the receipt and negotiation of bids received, (e) the holding of an auction, if the Debtors receive two or more Qualified Bids for substantially the same assets (the "**Auction**"), (f) the selection and approval of one or more Successful Bidders and one or more Back-Up Bidders (as defined in the Proposed Bidding Procedures), and (g) the deadlines to file objections and notices in connection with the foregoing. The Debtors submit that the Proposed Bidding Procedures annexed to the Proposed Order as **Schedule 6** afford them the opportunity to pursue a streamlined sale process of their assets that will maximize the value of their Estates.

87.     The Debtors believe that the time periods set forth in the Proposed Bidding Procedures are reasonable and appropriate.  Under the proposed timeline, there will be 62 days and 80 days, respectively, between the filing of this Motion and the Bid Deadline (as defined in the Proposed Bidding Procedures) and the filing of this Motion and the Sale Objection Deadline

39

(as defined in the Proposed Bidding Procedures). The Proposed Bidding Procedures provide parties with sufficient time to formulate bids to purchase the Debtors' assets. As discussed above and in the Snellenbarger Declaration, the Debtors' business has been extensively marketed to strategic and financial investors in recent months and information regarding the Debtors' business has been made available in an electronic data room during such process. As such, many parties that may have an interest in bidding on the Debtors' assets likely already have conducted diligence and evaluated the Debtors' business and will not be bidding in a vacuum. In addition, potential bidders who have not previously conducted diligence on the Debtors' business will have immediate access to, subject to the execution of an appropriate confidentiality agreement, a substantial body of information regarding the Debtors' assets, including information gathered based upon specific due diligence requests of various parties who participated in the Prepetition M&A Process.

## IV. Designation of Stalking Horse Bidders

88. As set forth in the Proposed Bidding Procedures, the Debtors request authority to (a) designate one or more Stalking Horse Bidders for one or more of the assets, (b) enter into Stalking Horse Agreements with the Stalking Horse Bidders, and (c) provide the Stalking Horse Bidders with Stalking Horse Bid Protections (as defined below), where the Debtors determine, in the exercise of their reasonable business judgment, that setting a floor for certain assets is in the best interests of their Estates and creditors.

89. Having the flexibility to designate Stalking Horse Bidders for certain of the Debtors' assets will enhance the Debtors' ability to maximize value of those assets and, accordingly, is in the best interests of the Debtors' Estates.

90. Specifically, the Debtors may (a) establish initial overbid minimum and subsequent bidding increment requirements; (b) offer each Stalking Horse Bidder a break-up fee

40

in an amount agreed to by the Company in consultation with the Term Loan Ad Hoc Group and the official committee of unsecured creditors (a "**Termination Payment**"); (c) provide that, if the Stalking Horse Bidder bids on certain assets at the Auction, the Stalking Horse Bidder will be entitled to a credit in the amount of its Termination Payment against the increased purchase price for the assets; and (d) provide other appropriate and customary protections to a Stalking Horse Bidder (the Termination Payment and the other bid protection described in this paragraph collectively are referred to as the "**Stalking Horse Bid Protections**").

91.     Upon the designation of a Stalking Horse Bidder, the Debtors will file with the Bankruptcy Court, serve on the Objection Notice Parties, and cause to be published on the website maintained by Epiq (http://dm.epiq11.com/Ditech), a notice that contains information about the Stalking Horse Bidder(s) and attaches the proposed Stalking Horse Agreement (the "**Notice of Stalking Horse Bidder**").

92.     Parties in interest may file an objection to the designation of a Stalking Horse Bidder or to any of the terms included in the Stalking Horse Agreement, including to any of the Stalking Horse Protections (a "**Stalking Horse Objection**") within ten (10) calendar days after the filing of the Notice of Stalking Horse Bidder (the "**Stalking Horse Objection Deadline**").  If a timely Stalking Horse Objection is filed and served in accordance with the Proposed Bidding Procedures, the proposed Stalking Horse Protections provided for under such agreement will not be deemed approved until either the Stalking Horse Objection is resolved by agreement of the objecting party and the Debtors or by order of the Court resolving such objection. If no Stalking Horse Objection is timely filed and served in accordance with the Proposed Bidding Procedures, the Debtors' entry into the applicable Stalking Horse Agreement, including the

41

Stalking Horse Protections, will be deemed approved without further order of the Court upon the expiration of the Stalking Horse Objection Deadline.

93.     Given the Debtors' need to maximize value for creditors through a timely and efficient marketing and sale process, the ability to designate Stalking Horse Bidders and offer such bidders Stalking Horse Bid Protections is justified, appropriate, and essential.

## V.  Assumption and Assignment Procedures

94.     The Assumption and Assignment Procedures set forth in the Proposed Order will, among other things, govern the Debtors' provision of notice to the Contract Counterparties of Cure Costs in the event the Debtors decide to transfer the Assigned Contracts in connection with a Sale Transaction or an Asset Sale Transaction, as applicable.  The Debtors will file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties at least ten (10) days before the Sale Objection Deadline.

95.     Objections to the Cure Costs set forth on the Cure Notice (a "**Cure Objection**") and provision of adequate assurance of future performance (an "**Adequate Assurance Objection**") must: (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (c) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (d) conform to the Bankruptcy Rules and the Local Rules; (e) be filed with the Court (i) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable;

42

and (f) be served in accordance with General Order M-399 **no later than the Sale Objection Deadline**, and served upon the Objection Notice Parties.

## VI. Approval of Bidding Procedures, Stalking Horse Bid Protections, and Assumption and Assignment Procedures is Warranted and in Best Interest of Debtors and their Stakeholders

### A. Proposed Bidding Procedures are Fair and Reasonable

96. The Proposed Bidding Procedures are specifically designed to promote what courts have deemed to be the paramount goal of any proposed sale of property of a debtor's estate: maximizing the value of sale proceeds received by the estate. *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (bidding procedures and bid protections "are important tools to encourage bidding and to maximize the value of the debtor's assets"); *see also In re Metaldyne Corp.*, 409 B.R. 661, 670 (Bankr. S.D.N.Y. 2009) ("[b]idder protections are granted when a bidder provides a floor for bidding by expending resources to conduct due diligence and allowing its bid to be shopped around for a higher offer"). Courts uniformly recognize that procedures established for the purpose of enhancing competitive bidding are consistent with the fundamental goal of maximizing value of a debtor's estate. *See In re Integrated Res. Inc.*, 147 B.R. at 659 (observing that sale procedures "encourage bidding and . . . maximize the value of the debtor's assets").

97. The Proposed Bidding Procedures provide for an orderly, uniform, fair and appropriately competitive process through which interested parties may submit bids to purchase the Debtors' assets. The Debtors, with the assistance of their advisors, have structured the Proposed Bidding Procedures to promote active bidding by interested parties and to reach the highest or otherwise best offer reasonably available for the Debtors' assets. Additionally, the Proposed Bidding Procedures will allow the Debtors to conduct the Auction, if necessary, in a fair and transparent manner that will encourage participation by financially capable bidders with

43

demonstrated ability to timely consummate a Sale Transaction or an Asset Sale Transaction, as applicable. The Proposed Bidding Procedures provide the Debtors with an adequate opportunity to consider competing bids and to select the highest or otherwise best offer for the completion of a Sale Transaction or an Asset Sale Transaction, as applicable, in connection with confirmation of the Plan.

98. Moreover, an orderly and expeditious sale process is critical to preserve and realize the Debtors' going concern value and maximize recoveries for the Debtors' stakeholders. In formulating the Proposed Bidding Procedures, the Debtors balanced the need to provide adequate and appropriate notice to parties in interest and potential bidders with the need to quickly and efficiently run a sale process in parallel with the confirmation process. The Proposed Bidding Procedures provide for the marketing of any and all of the Debtors' assets and for the consummation of (a) an Asset Sale Transaction or (b) if applicable, a Sale Transaction, to the extent such Sale Transaction represents a higher or better value than the Restructuring Transaction.

99. This Court and other courts in this and other districts have approved procedures substantially similar to the Proposed Bidding Procedures. *See, e.g., In re Waypoint Leasing Holdings Ltd.*, Case No. 18-13648 (SMB) (Bankr. S.D.N.Y. Dec. 21, 2018) (ECF No. 159); *In re Sears Holdings Corp.,* Case No. 18-23538 (RDD) (Bankr. S.D.N.Y. Nov. 19, 2018) (ECF No. 816); *In re Cent. Grocers, Inc.* Case No. 17-10993 (LSS) (Bankr. D. Del. June 2, 2017) (ECF No. 338); *In re Angelica Corp.*, Case No. 17-10870 (JLG) (Bankr. S.D.N.Y. Apr. 28, 2017) (ECF No. 137); and *In re Aéropostale, Inc.*, Case No. 16-11275 (SHL) (Bankr. S.D.N.Y. Jul. 29, 2016) (ECF No. 527). Accordingly, the Proposed Bidding Procedures should be approved.

WEIL:\96943995\1\41703.0008

## B. The Stalking Horse Bid Protections are Reasonable and Appropriate

100.     The Proposed Bidding Procedures allow the Debtors to provide certain Stalking Horse Bid Protections for a designated Stalking Horse Bidder, such as the initial overbid requirement, the subsequent bidding increments, and the Termination Payment.     Bidding incentives such as these Stalking Horse Bid Protections have become commonplace in connection with sales of significant assets under section 363 of the Bankruptcy Code.     Moreover, approval of break-up fees as administrative expense claims as a form of bidder protections in connection with a sale of assets has become a recognized practice in chapter 11 cases because it enables a debtor to ensure a sale to a contractually committed buyer at a price the debtor believes is fair, while providing the debtor with the potential of obtaining an enhanced recovery through an auction process.

101.     Bankruptcy courts in this district analyze the appropriateness of bidding incentives such as the Stalking Horse Bid Protections under the "business judgment rule." Specifically, courts in this district consider whether:  (a) the relationship of the parties who negotiated the break-up fee was tainted by self-dealing or manipulation, (b) the fee encourages, rather than hampers, bidding, and (c) the amount of the fee is unreasonable relative to the proposed purchase price.  *In re Genco Shipping & Trading Ltd.*, 509 B.R. 455, 465 (Bankr. S.D.N.Y 2014) (citing *In re Metaldyne Corp.,* 409 B.R. at 670); *see also In re Integrated Res., Inc.*, 147 B.R. at 657–58 (holding that in evaluating bid protections, courts should employ the business judgment rule, which proscribes judicial second-guessing of the corporate debtor's actions taken in good faith absent self-dealing and in the exercise of honest judgment).

WEIL:\96943995\1\41703.0008

102.     First, the Stalking Horse Bid Protections will only be provided after good faith, arm's length negotiations with the Debtors who are acting in the interest of their Estates, consistent with their fiduciary duties.

103.     Second, the Debtors will only provide Stalking Horse Bid Protections if it will promote the interests of the Debtors' Estates to maximize value.  The Termination Payment will promote more competitive bidding for the Debtors' assets by inducing the Stalking Horse Bidder to hold its offer open as a minimum bid on which other bidders and the Debtors can rely. In doing so, any Stalking Horse Bidder will help lay the foundation for the Debtors' sale process and will serve as a catalyst for other Qualified Bids.  Accordingly, the Termination Payment is appropriate and any Stalking Horse Bidder is entitled to be compensated for the risk it is assuming and the substantial value it is conferring on the Debtors' Estates.

104.     Third, the Stalking Horse Bid Protections are reasonable in view of the substantial benefits the Debtors would receive from having a Stalking Horse Bid (as defined in the Proposed Bidding Procedures) serve as a floor for potential bidders, which would confirm that the Debtors receive the highest and best offer for the applicable assets.  Moreover, a Stalking Horse Bid will provide the Debtors with an opportunity to move forward with an Asset Sale Transaction or a Sale Transaction, as applicable, that has a high likelihood of consummation with a contractually committed party at a fair and reasonable purchase price.  Accordingly, the Stalking Horse Bid Protections will not deter or chill bidding, are reasonable, and their availability to the Debtors will enable the Debtors to maximize the value of their Estates.

## C.  Form and Manner of Sale and Confirmation Hearing Notice Should be Approved

105.     Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with at least twenty-one (21) days' notice of a hearing where the Debtors will seek to

use, lease, or sell property of the estate outside the ordinary course of business. The Sale and Confirmation Hearing Notice will be served in a manner that provides at least twenty-one (21) days' notice of, among other things, the Proposed Bidding Procedures, Auction, and Sale and Confirmation Hearing. The Debtors submit that the Sale and Confirmation Hearing Notice includes all information relevant to parties interested in or affected by a Sale Transaction or an Asset Sale Transaction. The Sale and Confirmation Hearing Notice will also be published on Epiq's website and once in the national editions of each of *The New York Times* and *USA Today*. Although the Debtors will provide at least twenty-eight (28) days' notice of the Sale and Confirmation Hearing after a hearing at which the Court enters an order approving the Disclosure Statement as required pursuant to Bankruptcy Rule 2002(b), the Debtors also seek approval of the Sale and Confirmation Hearing Notice as proper notice of the Proposed Bidding Procedures and Auction. Accordingly, the Debtors request that the Court approve the form and manner of the Sale and Confirmation Hearing Notice.

### D. Assumption and Assignment of Assigned Contracts Should be Approved

106. Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Upon finding that a debtor has exercised its sound business judgment in determining to assume an executory contract or unexpired lease, courts will approve the assumption under section 365(a) of the Bankruptcy Code. *See Nostas Assocs. v. Costich* (*In re Klein Sleep Prods., Inc.*), 78 F.3d 18, 25 (2d Cir. 1996); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.*), 4 F.3d 1095, 1099 (2d Cir. 1993). The assumption of the Assigned Contracts in connection with a Sale Transaction or an Asset Sale Transaction, as applicable, is an exercise of the Debtors' sound business judgment because the Assigned Contracts

47

are necessary to operate the Debtors' business and, as such, are essential to obtaining the highest or otherwise best offer for the Debtors' assets. Moreover, the Assigned Contracts will be assumed and assigned in accordance with the Assumption and Assignment Procedures approved by the Court pursuant to the Proposed Order, which will be reviewed by the Debtors' key stakeholders. Accordingly, the Debtors' assumption of the Assigned Contracts is an exercise of sound business judgment and should be approved.

107.     The consummation of any Sale Transaction or Asset Sale Transaction, as applicable, which will involve the assignment of the Assigned Contracts, will be contingent upon the Debtors' compliance with the applicable requirements of section 365 of the Bankruptcy Code. Section 365(b)(1) of the Bankruptcy Code requires that any outstanding defaults under the Assigned Contracts must be cured or that adequate assurance be provided that such defaults will be promptly cured. As set forth above, the Debtors propose to file with the Court, and serve on each Contract Counterparty, the Cure Notice indicating the Debtors' calculation of the Cure Cost for each such contract. The Contract Counterparties will have the opportunity to file objections to the proposed assumption and assignment of the Assigned Contracts to the Successful Bidder, including the proposed Cure Costs.

108.     Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided." 11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Azzari* (*In re Carlisle Homes, Inc.*), 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (citation omitted); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985)

48

(adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.,* 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").  Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease has financial resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding).

109.    As set forth in the Proposed Bidding Procedures, for a bid to qualify as a Qualified Bid, a Potential Bidder must include with its bid Adequate Assurance Information regarding its ability (and the ability of its designated assignee, if applicable) to perform under the Assigned Contracts (each as defined in the Proposed Bidding Procedures).  The Debtors will provide Adequate Assurance Information to all Contract Counterparties and the Contract Counterparties will have an opportunity to file an Adequate Assurance Objection in advance of the Sale and Confirmation Hearing.  Based on the foregoing, the Debtors' assumption and assignment of the Assigned Contracts satisfy the requirements set forth under section 365 of the Bankruptcy Code and should be approved.

110.    In addition, to facilitate the assumption and assignment of the Assigned Contracts, the Debtors further request that the Court find that all anti-assignment provisions in the Assigned Contracts, whether such provisions expressly prohibit or have the effect of restricting or

49

limiting assignment of such contract or lease, to be unenforceable under section 365(f) of the

Bankruptcy Code.[7]

## Notice

111.     Notice of this Motion has been provided to (i) William K. Harrington, U.S.

Department of Justice, Office of the U.S. Trustee, 201 Varick Street, Room 1006, New York, New

York 10014 (Attn: Greg M. Zipes and Benjamin J. Higgins); (ii) proposed counsel to the Creditors'

Committee, Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, New

York 10017 (Attn: Robert J. Feinstein, Bradford J. Sandler, and Steven W. Golden) and Rich

Michaelson Magaliff, LLP, 335 Madison Avenue, 9th Floor, New York, New York 10017 (Attn:

Robert N. Michaelson and Elwood F. Collins); (iii) the Debtors' five (5) largest secured creditors

on a consolidated basis; (iv) the Debtors' forty (40) largest unsecured creditors on a consolidated

basis; (v) the Internal Revenue Service; (vi) the United States Attorney's Office for the Southern

District of New York; (vii) counsel to the Prepetition Administrative Agent, Davis Polk &

Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Brian M. Resnick and

Michelle M. McGreal); (viii) counsel to the Term Loan Ad Hoc Group, Kirkland & Ellis LLP, 300

North LaSalle, Chicago, Illinois 60654 (Attn: Patrick J. Nash and John R. Luze); (ix) counsel to

the Wilmington Savings Fund Society, Pryor Cashman LLP, 7 Times Square, New York, New

York 10036 (Attn: Seth H. Lieberman); (x) counsel to the Second Lien Ad Hoc Group, Milbank,

Tweed, Hadley & McCloy LLP, 2029 Century Park East, Los Angeles, California 90067 (Attn:

---

[7]     Section 365(f)(1) provides in part that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease[.]"  11 U.S.C. § 365(f)(1).  Section 365(f)(3) further provides that, "[n]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee."  11 U.S.C. § 365(f)(3).

WEIL:\96943995\1\41703.0008

Gregory A. Bray and Melainie K. Mansfield); (xi) counsel to Barclays Bank PLC, as DIP Agent, and Barclays Capital Inc., as DIP lender, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, New York 10036 (Attn: Sarah M. Ward, Mark A. McDermott, and Melissa Tiarks); (xii) counsel to Nomura Corporate Funding Americas, LLC, Jones Day, 250 Vesey Street, New York, New York 10281 (Attn: Ben Rosenblum); (xiii) the Securities and Exchange Commission; (xiv) counsel to Fannie Mae, O'Melveny & Myers LLP, 400 South Hope Street, 18th Floor, Los Angeles, California 90071 (Attn: Stephen Warren, Jennifer Taylor and Darren Patrick); (xv) counsel to Freddie Mac, McKool Smith PC, 600 Travis St., Suite 7000, Houston, Texas 77002 (Attn: Paul D. Moak); and (xvi) U.S. Department of Housing and Urban Development, 451 Seventh St., SW, Room 9250, Washington, DC 20410 (Attn: Lisa Mulrain, Assistant General Counsel, Office of General Counsel, Finance Division) (collectively, the "**Notice Parties**").  The Debtors respectfully submit that no further notice is required.

112.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: March 5, 2019
New York, New York

/s/ Sunny Singh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh

*Proposed Attorneys for Debtors
and Debtors in Possession*

WEIL:\96943995\1\41703.0008