WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------X
                                              :
In re                                         :   Chapter 11
                                              :
DITECH HOLDING CORPORATION, et al.,           :   Case No. 19-10412 (JLG)
                                              :
              Debtors.¹                       :   (Jointly Administered)
                                              :
------------------------------------------------------------X
```

**NOTICE OF FILING OF PROPOSED ORDER (I) APPROVING DISCLOSURE STATEMENT AND NOTICE OF DISCLOSURE STATEMENT HEARING, (II) ESTABLISHING SOLICITATION AND VOTING PROCEDURES, (III) SCHEDULING SALE AND CONFIRMATION HEARING, (IV) APPROVING SALE AND CONFIRMATION OBJECTION PROCEDURES AND NOTICE OF SALE AND CONFIRMATION HEARING, (V) APPROVING BIDDING PROCEDURES, (VI) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (VII) GRANTING RELATED RELIEF**

        **PLEASE TAKE NOTICE** that on March 5, 2019, Ditech Holding Corporation

and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11

cases (collectively, the "**Debtors**") filed the *Motion of Debtors for Entry of an Order (I)*

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

*Approving Disclosure Statement and Notice of Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling Sale and Confirmation Hearing, (IV) Approving Sale and Confirmation Objection Procedures and Notice of Sale and Confirmation Hearing, (V) Approving Bidding Procedures, (VI) Approving Assumption and Assignment Procedures, and (VII) Granting Related Relief* (ECF No. 147) (the "**Motion**").

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file their *Proposed Order (I) Approving Disclosure Statement and Notice of Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling Sale and Confirmation Hearing, (IV) Approving Sale and Confirmation Objection Procedures and Notice of Sale and Confirmation Hearing, (V) Approving Bidding Procedures, (VI) Approving Assumption and Assignment Procedures, and (VII) Granting Related Relief*, a copy of which is attached hereto as **<u>Exhibit A</u>** (the "**Proposed Order**").

2

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held on **April 11, 2019 at 11:00 a.m. (Eastern Time)**, before the Honorable James L. Garrity, Jr., United States Bankruptcy Judge, in Room 601 of the United States Bankruptcy Court, One Bowling Green, New York, New York, 10004 to hear the Motion.

Dated: March 6, 2019
      New York, New York

/s/ Sunny Singh_____
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

WEIL:\96944321\2\41703.0010

**Exhibit A**

**Proposed Order**

4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                        :

In re                         :     Chapter 11

DITECH HOLDING CORPORATION, *et al.*,   :     Case No. 19-10412 (JLG)

              Debtors.[1]     :     (Jointly Administered)

-------------------------------------------------------------X

## ORDER (I) APPROVING DISCLOSURE STATEMENT AND NOTICE OF DISCLOSURE STATEMENT HEARING, (II) ESTABLISHING SOLICITATION AND VOTING PROCEDURES, (III) SCHEDULING SALE AND CONFIRMATION HEARING, (IV) APPROVING SALE AND CONFIRMATION OBJECTION PROCEDURES AND NOTICE OF SALE AND CONFIRMATION HEARING, (V) APPROVING BIDDING PROCEDURES, (VI) APPROVING ASSUMPTION <u>AND ASSIGNMENT PROCEDURES, AND (VII) GRANTING RELATED RELIEF</u>

Upon the motion, dated March 5, 2019 (the "**Motion**"),[2] of Ditech Holding

Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned

chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105, 363, 365, 502, 1125,

1126, and 1128 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 3003,

3016, 3017, 3018, 3020, 6004, 6006, and 9006 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules"),** Rules 2002-1, 3017-1, 3018-1, 3020-1, 6004-1, 6006-1, and 9006-1

of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), and

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

[2]     Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion or in the Plan, as applicable.

the *Amended Sale Guidelines for the Conduct of Asset Sales Established and Adopted by the United States Bankruptcy Court for the Southern District of New York* (the "**Sale Guidelines**"), for entry of order (a) approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code; (b) approving the form and manner of the Disclosure Statement Notice, substantially in the form attached hereto as **Schedule 1**; (c) scheduling the Sale and Confirmation Hearing to consider approval of the sale of the Debtors' assets and confirmation of the Plan; (d) approving objection procedures to the confirmation of the Debtors' Plan, and the form and manner of the Sale and Confirmation Hearing Notice, substantially in the form attached hereto as **Schedule 2**; (e) approving certain solicitation and voting procedures in connection with the Plan, including, among other things, (i) the form of Ballot, substantially in the form attached hereto as **Schedule 3**; (ii) the form of Notice of Non-Voting Status – Unimpaired Classes, substantially in the form attached hereto as **Schedule 4**; and (iii) the form of Notice of Non-Voting Status – Impaired Classes, substantially in the form attached hereto as **Schedule 5**; (f) approving the Proposed Bidding Procedures, substantially in the form attached hereto as **Schedule 6**; (g) approving the Assumption and Assignment Procedures for the assumption and assignment of the Assigned Contracts and the determination of the Cure Costs; and (h) approving the form and manner of the Cure Notice, substantially in the form attached hereto as **Schedule 7**; all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the parties listed therein; and such notice having been adequate and

appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing to consider the relief requested in the Motion (the "**Hearing**"); and upon the record of the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their Estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    <u>Jurisdiction and Venue</u>.    Consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Court has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334, and Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).

B.    <u>Statutory and Legal Predicates</u>.  The statutory and legal predicates for the relief requested in the Motion are sections 105, 363, 365, 502, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3003, 3016, 3017, 3018, 3020, 6004, 6006, and 9006, Local Rules 2002-1, 3017-1, 3018-1, 3020-1, 6004-1, 6006-1, and 9006-1, and the Sale Guidelines.

C.    <u>Notice of the Disclosure Statement Hearing and Disclosure Statement Objection Deadline</u>.  The procedures proposed in the Motion providing notice to all parties of the time, date, and place of the hearing to consider approval of the Disclosure Statement

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

WEIL:\96943990\1\41703.0008

(the "**Disclosure Statement Hearing**") and the deadline for filing objections to the Disclosure Statement and the publication of notice of the Disclosure Statement Hearing in the national editions of *The New York Times* and *USA Today*, provide due, proper, and adequate notice, comport with due process and comply with Bankruptcy Rules 2002 and 3017 and Local Rule 3017-1.  No further notice is required.

D.     The Disclosure Statement.  The Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code.

E.     Balloting and Voting Procedures.  The procedures set forth in the Motion for the solicitation and tabulation of votes to accept or reject the Plan provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code.

F.     Ballot.  The ballot substantially in the form annexed hereto as **Schedule 3** **(**the "**Ballot**"), including all voting instructions provided therein, is consistent with Official Bankruptcy Form No. B 314, addresses the particular needs of these chapter 11 cases, and provides adequate information and instructions for each individual entitled to vote to accept or reject the Plan.  No further information or instructions are necessary.

G.     Parties Entitled to Vote.  Pursuant to the Plan, holders of Claims in Class 3 (Term Loan Claims) are entitled to vote on account of such Claims.

H.     Parties Not Entitled to Vote.  Pursuant to the Plan, holders of Claims in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 7 (Intercompany Claims), and Class 8 (Intercompany Interests) are Unimpaired and, accordingly, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to accept the Plan and are not entitled to vote on account of such Claims.  Further, holders of Claims in Class 4 (Second Lien Notes), Class 5 (General Unsecured Claims), Class 6 (Go-Forward Trade Claims), Class 9 (Parent

Equity Interests) and Class 10 (Subordinated Securities Claims) are Impaired and are conclusively deemed to have rejected the Plan. Accordingly, pursuant to section 1126(g) of the Bankruptcy Code such holders are not entitled to vote on account of such Claims.

I.    Notices of Non-Voting Status.    The Notices of Non-Voting Status, substantially in the forms attached hereto as **Schedule 4** and **Schedule 5**, comply with the Bankruptcy Code, applicable Bankruptcy Rules, and applicable Local Rules and, together with the Sale and Confirmation Hearing Notice, provide adequate notice to Non-Voting Claim and Interest Holders of their non-voting status. No further notice is necessary.

J.    Solicitation Packages and Distribution Procedures.    The proposed distribution and contents of the Solicitation Packages comply with section 1126 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3017 and constitute sufficient notice to all interested parties of the Record Date, Voting Deadline, Plan Objection Deadline, Sale and Confirmation Hearing, and other related matters.

K.    Solicitation Period.    The period proposed by the Debtors in the Motion during which the Debtors may solicit votes to accept or reject the Plan is a reasonable and sufficient period of time for the Voting Class to make an informed decision regarding whether to accept or reject the Plan and timely return Ballots evidencing such decision.

L.    Notice of Sale and Confirmation Hearing and Plan Objection Deadline.    The procedures set forth in the Motion regarding notice to all parties of the time, date, and place of the hearing to consider confirmation of the Plan (the "**Sale and Confirmation Hearing**") and for filing objections or responses to the Plan, provide due, proper, and adequate notice, comport with due process and comply with Bankruptcy Rules 2002 and 3017. No further notice is required.

WEIL:\96943990\1\41703.0008

M.    Bidding Procedures.    The Debtors have articulated good and sufficient business reasons for the Court to approve the Bidding Procedures.  The Bidding Procedures are fair, reasonable, and appropriate.  The Bidding Procedures are reasonably designed to promote a competitive and expedient bidding process to generate the greatest level of interest in the Debtors' assets resulting in the highest or otherwise best offer.  The Bidding Procedures comply with the requirements of Local Rule 6004-1.

N.    Designation of Stalking Horse Bid.    The Debtors have articulated good and sufficient business reasons for the Court to authorize the Debtors to designate Stalking Horse Bidders and enter into Stalking Horse Agreements in accordance with the Bidding Procedures.

O.    Stalking Horse Bid Protections.    The Debtors have articulated good and sufficient business reasons for the Court to authorize the Debtors to offer Stalking Horse Bid Protections in accordance with the Bidding Procedures.

P.    Assumption and Assignment Procedures.    The Debtors have articulated good and sufficient business reasons for the Court to approve the Assumption and Assignment Procedures.  The Assumption and Assignment Procedures are fair, reasonable, and appropriate. The Assumption and Assignment Procedures provide an adequate opportunity for all Contract Counterparties to raise any objections to the proposed assumption and assignment or to the proposed Cure Costs.  The Assumption and Assignment Procedures comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

Q.    Notice of Bidding Procedures and Cure Notice.  The Sale and Confirmation Hearing Notice and the Cure Notice are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Assumption and Assignment Procedures, the Auction, and the Sale and Confirmation Hearing, as well as any and

WEIL:\96943990\1\41703.0008

all objection deadlines related thereto, and no other or further notice shall be required for the Motion and the procedures described therein, except as expressly required herein.

R.     Notice.  All other notices to be provided pursuant to the procedures set forth in the Motion are good and sufficient notice to all parties in interest of all matters pertinent hereto and of all matters pertinent to the Sale and Confirmation Hearing.  No further notice is required.

S.     Relief is Warranted.  The legal and factual bases set forth in the Motion establish just and sufficient cause to grant the relief requested therein.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.     The Motion is granted as set forth herein.

2.     All objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, hereby are overruled and denied on the merits with prejudice.

**Disclosure Statement**

3.     The Disclosure Statement contains adequate information in accordance with section 1125 of the Bankruptcy Code and is **APPROVED**.

4.     The form and manner of the notice of the hearing on the Disclosure Statement complied with all applicable Bankruptcy Rules and Local Rules.

5.     The Disclosure Statement (including all applicable exhibits thereto) provides sufficient notice of the injunction, exculpation, and release provisions contained in Article X of the Plan, in accordance with Bankruptcy Rule 3016(c).

WEIL:\96943990\1\41703.0008

## Solicitation and Voting Procedures

### *The Voting Record Date*

6.　　The Voting Record Date shall be **April 9, 2019**.  Only holders of Claims as of the Voting Record Date shall be entitled to vote to accept or reject the Plan.

7.　　With respect to any transferred Claim, if the transferor of such Claim is entitled to vote with respect to the Plan, the transferee shall be entitled to receive a Solicitation Package and vote to accept or reject the Plan on account of the transferred Claim only if:  (a) all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date or (b) the transferee files, no later than the Voting Record Date, (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim is transferred after the transferor has completed a Ballot, the transferee of such Claim shall be bound by any vote (and the consequences thereof) made on the Ballot by the holder as of the Voting Record Date of such transferred Claim.

### *Solicitation Packages*

8.　　The Solicitation Packages are **APPROVED**.

9.　　The Debtors shall mail the Solicitation Packages no later than **four (4) business days following the date of entry of the Disclosure Statement Order or as soon a reasonably practicable thereafter** (the "**Solicitation Date**"), to the U.S. Trustee and holders of Claims in the Voting Class entitled to vote on the Plan as of the Voting Record Date, as required by Bankruptcy Rule 3017(d).

10.　　Solicitation Packages shall contain a copy of:

(a)　　this Order (without attachments);

(b)　　the Sale and Confirmation Hearing Notice;

<ol type="a" start="3">
<li>a Ballot for the applicable holder; and</li>
<li>a link to the Debtors' website page containing the Plan and Disclosure Statement.</li>
</ol>

11. Any party entitled to receive a copy of the Plan and Disclosure Statement may request a copy of the Disclosure Statement (and attachments) either in electronic format on a USB flash drive or paper format by email or by written request. Upon receipt of such request, the Debtors will promptly provide such parties with a copy of the Plan and the Disclosure Statement at no cost to them.

12. The Debtors shall not be required to send Solicitation Packages to holders of Claims that have already been paid in full; provided, however, that if any such Claim holder would be entitled to receive a Solicitation Package for any other reason, the Debtors shall send such Claim holder a Solicitation Package in accordance with the procedures set forth in the Motion.

13. With respect to addresses from which the Debtors have received mailings returned as undeliverable by the United States Postal Service, the Debtors are excused from mailing Solicitation Packages or any other materials related to voting or confirmation of the Plan to those entities listed at such addresses unless the Debtors are provided with accurate addresses for such entities before the Voting Deadline, and failure to mail Solicitation Packages or any other materials related to voting or confirmation of the Plan to such entities will not constitute inadequate notice of the Sale and Confirmation Hearing or the Voting Deadline and shall not constitute a violation of Bankruptcy Rule 3017.

### *Notices of Non-Voting Status*

14. The Notices of Non-Voting Status are **APPROVED**.

15. With respect to the holders of Claims and/or Interests in Non-Voting Classes, the Debtors shall send the Sale and Confirmation Hearing Notice and the applicable

Notice of Non-Voting Status substantially in the forms attached hereto as **Schedule 4** and **Schedule 5**. No further notice is required with respect to holders of Claims and/or Interests in the Non-Voting Classes. With respect to Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests), the Debtors are not required to serve the applicable notice of Non-Voting Status or any other type of notice in connection with the solicitation of the Plan.

*Ballots*

16. The Ballot, substantially in the form attached hereto as **Schedule 3** is **APPROVED**.

17. The Debtors are authorized to make non-substantive changes to the Ballot and related documents without further order of the Court, including ministerial changes to correct typographical and grammatical errors, and to make conforming changes among the Ballot and any other materials in the Solicitation Packages prior to mailing.

18. The Voting Deadline shall be **May 24, 2019 at 4:00 p.m. (prevailing Eastern Time)** unless extended by the Debtors either (a) for any holder of a Claim in a Voting Class by written (including by email) notice to such holder or (b) for an entire Voting Class by notice filed by the Debtors in these chapter 11 cases.

19. All Ballots must be properly executed, completed, and delivered to Epiq by first-class mail, overnight courier, or hand delivery so that they are **actually received** by Epiq no later than the Voting Deadline. In addition to accepting hard copy Ballots via first class mail, overnight courier, and hand delivery, the Debtors are authorized to accept Ballots via electronic, online transmissions, solely through a customized online balloting portal on the Debtors' case website to be maintained by Epiq (the "**E- Ballot Portal**"). Parties entitled to vote may cast an electronic Ballot and electronically sign and submit the Ballot instantly by utilizing the E-Ballot

Portal (which allows a holder to submit an electronic signature). The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective. For the avoidance of doubt, holders may only cast Ballots electronically via the E-Ballot Portal. Ballots submitted by email, facsimile, or any other means of electronic submission not specifically authorized by the solicitation procedures shall not be counted.

### *Tabulation Procedures*

20.     The following tabulation procedures are **APPROVED**.

21.     With respect to Term Loan Claims, solely for purposes of voting to accept or reject the Plan, and not for purposes of allowance or distribution:

a)  The Debtors shall be entitled to rely on the amounts of such Claims as set out in the register of the Prepetition Administrative Agent as of the Voting Record Date, and the Prepetition Administrative Agent will provide the Debtors or Epiq with the applicable records in electronic Microsoft Excel format no later than three (3) business days following the Voting Record Date;

b)  For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in the Voting Class shall be aggregated as if such creditor held one Claim against the Debtor(s) in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan;

c)  Notwithstanding anything contained herein to the contrary, the Debtors in their discretion, may waive any defects in a Ballot, or enter into a stipulation to settle or resolve any dispute in relation thereto, with a holder of a Claim that has completed a Ballot;

d)  Notwithstanding anything contained herein to the contrary, Epiq, in its discretion, may contact entities entitled to vote to cure any defects in the Ballot; and

e)  There shall be a rebuttable presumption that in the case where more than one timely, properly completed Ballot voting the same Claim is received,

WEIL:\96943990\1\41703.0008

only the last properly completed Ballot will be counted unless the holder of the Claim receives Court approval otherwise.

22. If applicable, solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, a Claim, and without prejudice to the rights of the Debtors in any other context, each Claim within a Class entitled to vote to accept or reject the Plan is to be temporarily allowed in an amount equal to the amount of such Claim as set forth in a timely filed proof of Claim, or, if no proof of Claim was filed, the liquidated, noncontingent, undisputed amount of such Claim as set forth in the applicable Debtors' schedule of assets and liabilities (collectively, as may be amended from time to time, the "**Schedules**"), provided, that:

a) If a Claim is deemed Allowed, pursuant to the Plan, such Claim shall be Allowed for voting purposes in the deemed Allowed amount set forth in the Plan;

b) If a Claim, for which a proof of Claim has been timely filed, is wholly contingent, unliquidated, or disputed (based on the face of the Claim or a reasonable review of the Claim and its supporting documentation), such Claim shall be allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00, unless such Claim is disputed in the manner set forth in subparagraph (f) below;

c) If a Claim, for which a proof of Claim was timely filed, lists an amount that is partially unliquidated or contingent, such Claim shall be temporarily allowed only in the liquidated, noncontingent amount set forth on the proof of Claim, unless such Claim is disputed in the manner set forth in subparagraph (f) below;

d) If a Claim has been estimated for voting purposes or otherwise allowed for voting purposes by order of the Court, such Claim shall be allowed in the amount so estimated or allowed by the Court for voting purposes only, and not for purposes of allowance or distribution, unless otherwise provided by order of the Court;

e) If a Claim is listed in the Schedules as contingent, unliquidated, disputed, in the amount of $0.00, or unknown, and a proof of Claim was not (i) filed by the applicable bar date for the filing of proofs of Claim established by the Bar Date Order or (ii) deemed timely filed by an order of the Court prior to the Voting Deadline, unless the Debtors have consented in writing, such

Claim shall be disallowed for voting purposes, provided, however, if the applicable bar date has not yet passed, such Claim shall be entitled to vote in the amount of $1.00;

f) If the Debtors serve an objection to, or request for estimation of, a Claim at least ten (10) days before the Voting Deadline, such Claim shall be temporarily disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in the objection or request for estimation, or as ordered by the Court before the Voting Deadline;

g) For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class shall be aggregated as if such creditor held one Claim against the Debtor(s) in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan;

h) Notwithstanding anything contained herein to the contrary, the Debtors in their discretion, may waive any defects in a Ballot, or enter into a stipulation to settle or resolve any dispute in relation thereto, with a holder of a Claim that has completed a Ballot;

i) Notwithstanding anything contained herein to the contrary, Epiq, in its discretion, may contact entities entitled to vote to cure any defects in the Ballot;

j) There shall be a rebuttable presumption that in the case where more than one timely, properly completed Ballot voting the same Claim is received, only the last properly completed Ballot will be counted unless the holder of the Claim receives Court approval otherwise;

k) Notwithstanding anything to the contrary contained herein, any Claim holder who has filed or purchased duplicate Claims within the same Class shall be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims;

l) If a proof of claim has been amended by a later proof of claim that is filed on or prior to the Voting Record Date, the later filed amending Claim shall be entitled to vote in a manner consistent with these tabulation rules, and the earlier filed Claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such amended Claim. Except as otherwise ordered by the Court, any amendments to proofs of claim after the Voting Record Date shall not be considered for purposes of these tabulation rules;

m) If a Claim is filed in the amount of $0.00, the holder of such Claim shall not be entitled to vote on account of such Claim; and

n) Holders of paid or otherwise satisfied claims are not entitled to vote.

23. Any Ballot that is properly completed, executed, and timely returned to Epiq but does not indicate an acceptance or rejection of the Plan, or indicates both an acceptance and a rejection of the Plan, shall not be counted.

24. If no votes to accept or reject the Plan are received with respect to the Voting Class, such Class is deemed to have voted to accept the Plan.

25. Creditors must vote all of their Claim(s) within the Voting Class, either to accept or reject the Plan, and may not split their vote(s).

26. A Ballot that partially rejects and partially accepts the Plan shall not be counted.

27. The following Ballots shall not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected: (a) any Ballot received after the Voting Deadline unless the Debtors have granted in writing an extension of the Voting Deadline with respect to such Ballot; (b) any Ballot that is illegible or contains insufficient information to permit the identification of the Claim holder; (c) any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan; (d) any Ballot that is unsigned or without an original signature; provided, however, for the avoidance of doubt, a Ballot submitted via Epiq's E-Ballot Portal shall be deemed to contain an original signature; and (e) any Ballot transmitted to Epiq by facsimile, electronic transmission, or other electronic means (other than via Epiq's E-Ballot Portal).

28. **May 24, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "**Rule 3018(a) Motion Deadline**") shall be the deadline for the filing and serving of any motion requesting temporary allowance of a Claim for purposes of voting pursuant to Bankruptcy Rule 3018(a) (the "**Rule 3018(a) Motion(s)**"). Rule 3018(a) Motions must be filed with the Court and served

upon the following parties and such other parties as the Court may order (collectively, the "**Objection Notice Parties**"), so as to be **actually received** not later than the Rule 3018(a) Motion Deadline:

*Debtors*
Ditech Holding Corporation, et al.
3000 Bayport Drive
Suite 985
Tampa, Florida 33607
Attn: John Haas

*Office of the U.S. Trustee*
William K. Harrington, U.S. Department of Justice
Office of the U.S. Trustee
201 Varick Street, Room 1006
New York, New York 10014
Attn: Greg M. Zipes
        Benjamin J. Higgins

*Proposed Counsel to the Debtors*
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn: Ray C. Schrock, P.C.
        Sunny Singh

*Counsel to the Prepetition Administrative Agent*
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
Attn: Brian M. Resnick
        Michelle M. McGreal

*Counsel to the Term Loan Ad Hoc Group*
Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Attn: Patrick J. Nash
        John Luze

*Counsel to the DIP Agent and DIP Lender*
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, New York 10036
Attn: Sarah M. Ward
        Mark A. McDermott
        Melissa Tiarks

*Counsel to Nomura Corporate Funding Americas, LLC*
Jones Day
250 Vesey Street
New York, New York 10281
Attn: Ben Rosenblum

*Proposed Counsel to the Creditors' Committee*
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Attn: Robert J. Feinstein
        Bradford J. Sandler
        Steven W. Golden

and

Rich Michaelson Magaliff, LLP
335 Madison Avenue, 9th Floor
New York, New York 10017
Attn: Robert N. Michaelson
        Elwood F. Collins

WEIL:\96943990\1\41703.0008

29.     Nothing in this Order shall affect or limit any party's rights to object to any proof of claim or Rule 3018(a) Motion.

## Confirmation

### *Sale and Confirmation Hearing*

30.     The Sale and Confirmation Hearing shall be held on **June 5, 2019 at 11:00 a.m. (prevailing Eastern Time)**; provided, however, that the Sale and Confirmation Hearing may be adjourned or continued from time to time by the Court or the Debtors without further notice, including adjournments announced in open Court or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Court.

### *Plan Supplement*

31.     The Debtors are authorized to file and serve a supplement to the Plan on or before **May 17, 2019**, and to further supplement such plan supplement as necessary thereafter**.**

32.     The deadline to object or respond to confirmation of the Plan shall be **May 24, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the **"Plan Objection Deadline"**).

### *Notice of Sale and Confirmation Hearing*

33.     The Sale and Confirmation Hearing Notice substantially in the form attached hereto as **Schedule 2** is **APPROVED**, and provides due, proper, and adequate notice, comports with due process and complies with Bankruptcy Rules 2002 and 3017.

34.     The Debtors shall publish the Publication Notice in the national editions of *The New York Times* and *USA Today* and shall be authorized (but not required) to publish the Publication Notice in such other publications of general circulation as the Debtors shall determine, **no later than the Solicitation Date**.

WEIL:\96943990\1\41703.0008

*Objections to Confirmation*

35.     Objections and responses, if any, to confirmation of the Plan, must:  (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (c) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (d) conform to the Bankruptcy Rules and the Local Rules; (e) be filed with the Court (i) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (f) be served in accordance with General Order M-399. In addition to being filed with the Court, any such responses or objections must be served on the Objection Notice Parties, in addition to any such other parties as the Court may order, so as to be received by **no later than the Plan Objection Deadline**.  Pursuant to Bankruptcy Rule 3020(b), if no objection is timely filed, this Court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues.

36.     Objections to confirmation of the Plan that are not timely filed, served, and actually received in the manner set forth above shall not be considered unless otherwise agreed by the Debtors or determined by the Court.

37.     The Debtors are authorized to file and serve replies or an omnibus reply to any such objections along with their brief in support of confirmation of the Plan either separately or by a single, consolidated reply, as well as any affidavits or declarations in support of confirmation of the Plan on or before **May 31, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "**Reply Deadline**").  In addition, any party in interest may file and serve a statement in support

of confirmation of the Plan and/or a reply to any objections to confirmation of the Plan by the Reply Deadline.

**The Bidding Procedures**

38.    The Bidding Procedures, attached hereto as **Schedule 6**, are hereby **APPROVED**.

39.    The Bidding Procedures are incorporated herein by reference, and shall govern the bids and proceedings related to the sale of the Debtors' assets and the Auction. The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.

40.    The procedures and requirements set forth in the Bidding Procedures, including those associated with submitting a Qualified Bid, are fair, reasonable and appropriate, and are designed to maximize recoveries for the benefit of the Debtors' Estates, creditors, and all parties in interest.

41.    The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures in accordance with the terms of this Order and the Bidding Procedures.

*Designation of Stalking Horse Bidders*

42.    The Debtors are authorized to, in the exercise of their reasonable business judgment, designate one or more Stalking Horse Bidders for one or more of their assets and to enter into Stalking Horse Agreements for the sale of any such assets, in accordance with the terms of this Order and the Bidding Procedures.

43. Subject to the terms of this Order and the Bidding Procedures, the Debtors are authorized to (a) establish initial overbid minimum and subsequent bidding increment requirements; (b) offer each Stalking Horse Bidder a break-up fee in an amount agreed to by the Debtors in consultation with the Term Loan Ad Hoc Group and the official committee of unsecured creditors (a "**Termination Payment**"); (c) provide that, if the Stalking Horse Bidder bids on certain assets at the Auction, the Stalking Horse Bidder will be entitled to a credit in the amount of its Termination Payment against the increased purchase price for the assets; and (d) provide other appropriate and customary protections to a Stalking Horse Bidder (the Termination Payment and the other bid protection described in this paragraph collectively are referred to as the "**Stalking Horse Bid Protections**").

44. To the extent the Debtors designate a Stalking Horse Bidder with respect to any of their assets, the Debtors shall promptly upon the execution of a Stalking Horse Agreement (and in no event more than one (1) calendar day following such execution) (a) file with the Bankruptcy Court, (b) serve on the Objection Notice Parties, and (c) cause to be published on the website maintained by the Debtors' claims and noticing agent in these chapter 11 cases, located at Debtors' claims agent's website (http://dm.epiq11.com/Ditech), a notice containing information about the Stalking Horse Bidder(s) with the proposed Stalking Horse Agreement attached thereto (the "**Notice of Stalking Horse Bidder**").

45. Objections to the designation of a Stalking Horse Bidder or to any of the terms included in the Stalking Horse Agreement, including to any of the Stalking Horse Protections (a "**Stalking Horse Objection**") must:  (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (c) state with particularity the basis and nature of any objection; (d) conform to the Bankruptcy Rules and the

Local Rules; (e) be filed with the Court (i) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (f) be served in accordance with General Order M-399. In addition to being filed with the Court, any such responses or objections must be served on the Objection Notice Parties, in addition to any such other parties as the Court may order, so as to be received within ten (10) calendar days after the filing of the relevant Notice of Stalking Horse Bidder (the "**Stalking Horse Objection Deadline**").

46.     If a timely Stalking Horse Objection is filed and served with respect to an applicable Stalking Horse Agreement, the proposed Stalking Horse Bid Protections provided for under that agreement, shall not be approved until either (a) the Stalking Horse Objection is resolved by agreement of the objecting party and the Debtors or (b) by entry of an order by the Court resolving such objection.

47.     If no timely Stalking Horse Objection is filed and served with respect to an applicable Stalking Horse Agreement in accordance with the Bidding Procedures, the Stalking Horse Bid Protections shall be deemed approved without further order of the Court upon the expiration of the Stalking Horse Objection Deadline.

48.     For all purposes under the Bidding Procedures, any Stalking Horse Bidder approved as such pursuant to this Order shall be considered a Qualified Bidder, and the applicable Stalking Horse Bid shall be considered a Qualified Bid. In the event that the applicable Stalking Horse Bid is the only Qualified Bid received by the Debtors with respect to the assets subject to

WEIL:\96943990\1\41703.0008

such bid by the Bid Deadline, the applicable Stalking Horse Bidder shall be deemed the Successful Bidder with respect to such assets.

*Objections to Sale Transaction or Asset Sale Transaction*

49.    The Debtors may seek approval of a Sale Transaction or an Asset Sale Transaction, as applicable, at the Sale and Confirmation Hearing to be held on **June 5, 2019 at 11:00 a.m. (prevailing Eastern Time)**; provided that, the Debtors may seek an adjournment of such hearing as the Debtors deem appropriate in the exercise of their reasonable business judgment.

50.    Objections to a Sale Transaction or an Asset Sale Transaction, as applicable, including any objection to the sale of the Debtors' assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code (each, a "**Sale Objection**"), must:  (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (c) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (d) conform to the Bankruptcy Rules and the Local Rules; (e) be filed with the Court (i) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (f) be served in accordance with General Order M-399. In addition to being filed with the Court, any such responses or objections must be served on the Objection Notice Parties, in addition to any such other parties as the Court may order, so as to be received by **May 24, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection**

**Deadline**"); <u>provided</u> <u>that</u>, the Debtors may extend the Sale Objection Deadline, as the Debtors deem appropriate in the exercise of their reasonable business judgment. If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the Sale and Confirmation Hearing.

51.     A Successful Bidder shall appear at the Sale and Confirmation Hearing and be prepared, if necessary, to have a representative(s) testify in support of a Successful Bid and the Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and assigned to a Successful Bidder as part of the proposed transaction.

52.     Any party who fails to file with the Court and serve on the Objection Notice Parties a Sale Objection by the Sale Objection Deadline may be forever barred from asserting, at the Sale and Confirmation Hearing or thereafter, any Sale Objection to the relief requested in the Motion with regard to a Successful Bidder, or to the consummation and performance of a Sale Transaction or an Asset Sale Transaction, as applicable, contemplated by an asset purchase agreement between the Debtors and a Successful Bidder, including the transfer of assets to a Successful Bidder, free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code. Failure to object shall constitute consent for the purposes of section 363(f)(2) of the Bankruptcy Code.

WEIL:\96943990\1\41703.0008

*Sale and Confirmation Hearing Notice*

53.     The Sale and Confirmation Hearing Notice, substantially in the form attached hereto as **Schedule 2**, is **APPROVED**.

54.     The Sale and Confirmation Hearing Notice contains the type of information required under Bankruptcy Rule 2002 and Local Rule 6004-1, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

55.     All parties in interest shall receive or be deemed to have received good and sufficient notice of (a) the Motion; (b) the Bidding Procedures; (c) the Assumption and Assignment Procedures, including the proposed assumption and assignment of the Assigned Contracts to a Successful Bidder; (d) the Auction; (e) a Sale Transaction or an Asset Sale Transaction, as applicable, including the sale of the Debtors' assets free and clear of all liens, claims, encumbrances, and other interests; and (f) the Sale and Confirmation Hearing, and no further notice of the foregoing shall be required, if:

a)   As soon as reasonably practicable, but no later than the Solicitation Date the Debtors shall cause the Sale and Confirmation Hearing Notice to be filed with the Court and served by email, mail, facsimile, or overnight delivery on: (i) the Office of the United States Trustee for the Southern District of New York; (ii) counsel to the Prepetition Administrative Agent; (iii) counsel to the Term Loan Ad Hoc Group; (iv) counsel to Wilmington Savings Fund Society, FSB, as trustee under that certain Indenture for 9.0% Second Lien Senior Subordinated PIK Toggle Notes due 2024; (v) counsel to the Second Lien Noteholder Ad Hoc Group; (vi) counsel to the DIP Agent; (vii) counsel to the DIP Lenders; (viii) the Creditors' Committee; (ix) counsel to the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, and the Government National Mortgage Association; (x) any party who, in the past twelve (12) months, expressed in writing to the Debtors an interest in the Debtors' assets; (xi) the Contract Counterparties; (xii) all parties who are known to have asserted or believed by the Debtors to hold any lien, claim, encumbrance, or interest in the Debtors' assets; (xiii) the Securities and Exchange Commission; (xiv) the Internal Revenue Service; (xv) all applicable state attorneys' general and local authorities; (xvi) all applicable state and local taxing authorities; (xvii) the Federal Trade Commission; (xviii) the United States Department

of Justice; (xix) the United States Attorney's Office, (xx) the office of the New York Attorney General; (xxi) all of the Debtors' known creditors (for whom identifying information and addresses are available to the Debtors); (xxii) all entities that requested notice in these chapter 11 cases under Bankruptcy Rule 2002; and (xxiii) any other parties, including equity security holders, entitled to notice under Bankruptcy Rules 2002 and 3017; and

b)  As soon as reasonably practicable, but no later than the Solicitation Date, the Debtors shall cause the Sale and Confirmation Hearing Notice to be published on the website of the Debtors' claims and noticing agent and once in the national editions of each of *The New York Times* and *USA Today*.

### Assumption and Assignment Procedures

56.     The following Assumption and Assignment Procedures are reasonable and appropriate under the circumstances, fair to all Contract Counterparties, comply in all respects with the Bankruptcy Code, and are approved.

57.     The Cure Notice, substantially in the form attached hereto as **Schedule 7**, is reasonable, fair, and appropriate, contains the type of information required under Bankruptcy Rule 2002, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and is hereby **APPROVED**.

58.     The Cure Notice is reasonably calculated to provide sufficient notice to the Contract Counterparties of the Debtors' intent to assume and assign the Assigned Contracts in connection with a Sale Transaction or an Asset Sale Transaction, as applicable, and constitutes adequate notice thereof, and no other or further notice of the Debtors' proposed Cure Costs or the proposed assumption and assignment of the Assigned Contracts shall be required if the Debtors file and serve such notice in accordance with the Assumption and Assignment Procedures and this Order.

59.     The Debtors shall file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties at least ten (10) days before the Sale Objection Deadline.

Service of the Cure Notice in accordance with this Order on all Contract Counterparties is hereby deemed to be good and sufficient notice of the Cure Costs for, and the proposed assumption and assignment of, the Assigned Contracts. As soon as reasonably practicable after filing the Cure Notice, the Debtors shall post a copy of the Cure Notice on the website for the chapter 11 cases maintained by the Debtors' claims and noticing agent.

60. Objections, if any, to any proposed Cure Costs (each, a "**Cure Objection**") and to the provision of adequate assurance of future performance (each, an "**Adequate Assurance Objection**") must: (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (c) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (d) conform to the Bankruptcy Rules and the Local Rules; (e) be filed with the Court (i) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (f) be served in accordance with General Order M-399. In addition to being filed with the Court, any such responses or objections must be served on the Objection Notice Parties, in addition to any such other parties as the Court may order, so as to be received.

61. Any Cure Objection or Adequate Assurance Objection in respect of an Assigned Contract must be filed and served by **May 24, 2019 at 4:00 p.m. (prevailing Eastern Time)**. If a timely Cure Objection or Adequate Assurance Objection is received and such objection

WEIL:\96943990\1\41703.0008

cannot otherwise be resolved by the parties, such objection shall be heard at the Sale and Confirmation Hearing or such later date as the Debtors and a Successful Bidder may determine.

62.     To the extent the Debtors identify, at any time after the Cure Notice is served, additional contracts to be assumed and assigned to a Successful Bidder, the Debtors shall file with the Court and serve by first class mail on the applicable Contract Counterparty a supplemental Cure Notice (each, a "**Supplemental Cure Notice**," the form of which shall be substantially similar to the form of Cure Notice attached hereto as **Schedule 7**).

63.     If no timely Cure Objection is filed and served in respect of an Assigned Contract, the Cure Cost identified on the Cure Notice or a Supplemental Cure Notice, as applicable, will be the only amount necessary under section 365(b) of the Bankruptcy Code to cure all defaults under such Assigned Contract.  Any party failing to timely file a Cure Objection shall be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtors, their Estates, and a Successful Bidder.

64.     If no timely Adequate Assurance Objection is filed and served with respect to an Assigned Contract or a Successful Bidder, the Debtors will be deemed to have provided adequate assurance of future performance for such Assigned Contract in accordance with section 365(f)(2)(B) of the Bankruptcy Code.

65.     Further, if no timely Cure Objection or Adequate Assurance Objection is filed and served with respect to an Assigned Contract, the relevant Contract Counterparty shall be deemed to have consented to the assumption and assignment of the Assigned Contract to a Successful Bidder.

WEIL:\96943990\1\41703.0008

66.     Absent entry of a sale order and the closing of a Sale Transaction or an Asset Sale Transaction, as applicable, the Assigned Contracts shall not be deemed assumed or assigned, and shall in all respects be subject to further administration under the Bankruptcy Code.

67.     The inclusion of a contract, lease, or other agreement on the Cure Notice or any Supplemental Cure Notice shall not constitute or be deemed a determination or admission by the Debtors or any other party in interest that such contract or other document is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Cost is due (all rights with respect thereto being expressly reserved).  The Debtors reserve all of their rights, claims, defenses, and causes of action with respect to each contract or other document listed on the Cure Notice or any Supplemental Cure Notice.

### Provisions Applicable to Freddie Mac, Fannie Mae and Ginnie Mae

68.     ***Freddie Mac***.  Notwithstanding any other provision of this Order or any other order in these chapter 11 cases, (a) the Debtors' mortgage servicing rights with respect to mortgages which are now or hereafter serviced by the Debtors for Freddie Mac shall not be transferred by the Debtors to a Successful Bidder (or any other entity) without the express prior written consent of Freddie Mac in its sole and absolute discretion; (b) the Debtors and the Reorganized Debtors, as applicable, shall not assume, assume and assign, or otherwise transfer any agreement between any of the Debtors and Freddie Mac, including, without limitation, the Freddie Mac Agreements, without the express prior written consent of Freddie Mac in its sole and absolute discretion; and, (c) any proposed severance of rights and obligations or any other proposed modification of any agreement, including, without limitation, the Freddie Mac Agreements, between any of the Debtors and Freddie Mac shall be subject to the prior written consent of Freddie Mac in its sole and absolute discretion.  The Debtors and Freddie Mac shall enter into good faith negotiations and use commercially reasonable efforts to resolve the claims of

27

Freddie Mac and the assumption or assumption and assignment of the Freddie Mac Agreements in a Sale Transaction or an Asset Sale Transaction, as applicable.

69. ***Fannie Mae***. Notwithstanding any other provision of this Order or any other order in these Chapter 11 Cases to the contrary, (a) the Debtors' mortgage servicing rights and obligations relating to Fannie Mae shall not be transferred by the Debtors to a Successful Bidder (or any other person or entity) without the express prior written consent of Fannie Mae in its sole and absolute discretion; (b) the assumption or assumption and assignment of any agreements between any of the Debtors and Fannie Mae, including, without limitation, the Fannie Mae Lender Contracts, shall be subject to the express prior written consent of Fannie Mae in its sole and absolute discretion; and (c) any proposed severance of rights and obligations or any other proposed modification of any agreement, including, without limitation, the Fannie Mae Lender Contracts, between any of the Debtors and Fannie Mae shall be subject to the prior written consent of Fannie Mae in its sole and absolute discretion. Without limiting the generality of, and subject to, the foregoing, in connection with the proposed assumption or assumption and assignment of any agreement, including, without limitation, the Fannie Mae Lender Contracts, between any of the Debtors and Fannie Mae, may be assumed or assumed and assigned only upon (a)(i) the Reorganized Debtors agreeing to honor all obligations under the Fannie Mae Lender Contracts whether incurred prior to or after the Effective Date; (ii) in the case of an assignment in a Sale Transaction, as applicable, repayment in full of the Cure Amounts; or (iii) such other treatment of the Cure Amount or any other obligations as shall be agreed to by Fannie Mae and the Debtors in good faith negotiations and (b) adequate assurance of future performance.

70. ***Ginnie Mae***. Notwithstanding any other provision of this Order or any other order in these chapter 11 cases, (a) the Debtors' mortgage servicing and securitization

obligations relating to Ginnie Mae shall not be transferred by the Debtors to a Successful Bidder without the express prior written consent of Ginnie Mae in its sole and absolute discretion; (b) the assumption or assumption and assignment of any agreements between any of the Debtors and Ginnie Mae, including, without limitation, the Ginnie Mae Agreements, shall be subject to the express prior written consent of Ginnie Mae in its sole and absolute discretion; and (c) any proposed severance of rights and obligations or any other proposed modification of any agreement, including, without limitation, the Ginnie Mae Agreements, between any of the Debtors and Ginnie Mae shall be subject to the prior written consent of Ginnie Mae in its sole and absolute discretion. The Debtors and Ginnie Mae shall enter into good faith negotiations and use commercially reasonable efforts to resolve the claims of Ginnie Mae and the assumption or assumption and assignment of the Ginnie Mae Agreements in a Sale Transaction or an Asset Sale Transaction, as applicable.

### General Provisions

71.     The Debtors are authorized to make non-substantive changes to the Disclosure Statement, the Plan, the Ballot, the Bidding Procedures, the Assumption and Assignment Procedures, the Sale and Confirmation Hearing Notice, the Notice of Non-Voting Status – Unimpaired Classes, the Notice of Non-Voting Status – Impaired Classes, the Cure Notice, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming non-substantive changes to reflect any such changes made to the Disclosure Statement and the Plan prior to mailing.

72.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, or any applicable provisions of the Local Rules or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

WEIL:\96943990\1\41703.0008

73.     The Debtors are authorized to take all steps necessary or appropriate to carry out this Order.

74.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.


Dated:     _____, 2019
            New York, New York

                                    _____
                                    HONORABLE JAMES L. GARRITY JR.
                                    UNITED STATES BANKRUPTCY JUDGE

# <u>SCHEDULE 1</u>

**Form of Disclosure Statement Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                    :

In re                    :        **Chapter 11**
                    :

**DITECH HOLDING CORPORATION,** *et al.,*  :        **Case No. 19-10412 (JLG)**
                    :

          **Debtors.**[1]    :        **(Jointly Administered)**
                    :

------------------------------------------------------------X

### NOTICE OF HEARING TO CONSIDER
### APPROVAL OF DISCLOSURE STATEMENT FOR JOINT
### CHAPTER 11 PLAN OF DITECH HOLDING CORPORATION
### AND ITS AFFILIATED DEBTORS AND BIDDING PROCEDURES

**TO ALL PARTIES IN INTEREST:**

        **PLEASE TAKE NOTICE THAT** on March 5, 2019, Ditech Holding Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), filed the *Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors* (as may be amended, modified, or supplemented, the "**Plan**") and the *Disclosure Statement for Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors*, each dated March 5, 2019 (as may be amended, modified, or supplemented, the "**Disclosure Statement**").[2]

        **PLEASE TAKE FURTHER NOTICE THAT:**

        1.    A hearing (the "**Hearing**") will be held before the Honorable James L. Garrity, Jr., United States Bankruptcy Judge, in Room 601 of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), One Bowling Green, New York, New York 10004, on **April 11, 2019 at 11:00 a.m. (prevailing Eastern Time)**, to consider entry of an order determining, among other things, that the Disclosure Statement contains "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and approving the Disclosure Statement. At the same hearing, the Debtors will

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Disclosure Statement or the Plan, as applicable, or as the context otherwise requires.

seek approval of procedures (the "**Bidding Procedures**") related to the sale of all or substantially all of their assets pursuant to the Plan.

2.      Any party in interest wishing to obtain a copy of the Disclosure Statement or the Plan should contact Epiq, the Debtors' solicitation agent, in writing at Ditech Ballot Processing, c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, Oregon 97005 or by email at tabulation@epiqglobal.com with a reference to "Ditech Holding Corporation" in the subject line. Interested parties may also review the Disclosure Statement and the Plan free of charge on the internet (http://dm.epiq11.com/Ditech). In addition, the Disclosure Statement and Plan are on file with the Bankruptcy Court and may be reviewed by accessing the Bankruptcy Court's website: www.nysb.uscourts.gov. Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website. A PACER password can be obtained at: www.pacer.psc.uscourts.gov. Copies of the Disclosure Statement and Plan may also be examined by interested parties during normal business hours at the office of the Clerk of the Bankruptcy Court.

3.      Objections, if any, to approval of the Disclosure Statement or any of the other relief sought by the Debtors in connection with the Disclosure Statement, including the Bidding Procedures, must:

(a)     be in writing;

(b)     state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party;

(c)     state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection;

(d)     conform to the Bankruptcy Rules and the Local Rules;

(e)     be filed with the Court together with proof of service either (i) electronically or (ii) conventionally, as noted below:

(i)     *Electronic Filing*: the filer must be an attorney in possession of passwords and logins to both PACER and the Bankruptcy Court's Electronic Case Filing System; electronic filing must be in accordance with General Order M-399 (which can be found at http://nysb.uscourts.gov); or

(ii)     *Conventional Filing*: the filer must send the response or objection by mail, courier, or messenger to the Bankruptcy Court's clerk at the following address: United States Bankruptcy Court, One Bowling Green, New York, NY 10004; the hard copy of the response or objection should be accompanied by a CD-ROM containing the response or objection in text-searchable portable document format (PDF); and

(iii)   *All filers* – those filing electronically as well as those filing conventionally – must provide Bankruptcy Court Chambers with two separate, single-sided hard copies of the response or objection; any proposed order should be accompanied by a CD-ROM containing the response or objection in text searchable portable document format (PDF); and

(f)   be served upon the following parties in accordance with General Order M-399 so as to be received no later than **April 4, 2019 at 4:00 p.m. (prevailing Eastern Time)**:

*Debtors*
Ditech Holding Corporation, et al.
3000 Bayport Drive
Suite 985
Tampa, Florida 33607
Attn: John Haas

*Office of the U.S. Trustee*
William K. Harrington, U.S. Department of Justice
Office of the U.S. Trustee
201 Varick Street, Room 1006
New York, New York 10014
Attn: Greg M. Zipes
        Benjamin J. Higgins

*Proposed Counsel to the Debtors*
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn: Ray C. Schrock, P.C.
        Sunny Singh

*Counsel to the Prepetition Administrative Agent*
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
Attn: Brian M. Resnick
        Michelle M. McGreal

*Counsel to the Term Loan Ad Hoc Group*
Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Attn: Patrick J. Nash
        John Luze

*Counsel to the DIP Agent and DIP Lender*
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, New York 10036
Attn: Sarah M. Ward
        Mark A. McDermott
        Melissa Tiarks

*Counsel to Nomura Corporate Funding*     *Proposed Counsel to the Creditors'*
*Americas, LLC*                           *Committee*
Jones Day                                 Pachulski Stang Ziehl & Jones LLP
250 Vesey Street                          780 Third Avenue, 34th Floor
New York, New York 10281                  New York, New York 10017
Attn: Ben Rosenblum                       Attn: Robert J. Feinstein
                                                Bradford J. Sandler
                                                Steven W. Golden

                                          and

                                          Rich Michaelson Magaliff, LLP
                                          335 Madison Avenue, 9th Floor
                                          New York, New York 10017
                                          Attn: Robert N. Michaelson
                                                Elwood F. Collins

   4. **IF AN OBJECTION TO THE DISCLOSURE STATEMENT OR ANY OF THE OTHER RELIEF SOUGHT BY THE DEBTORS IN CONNECTION WITH THE DISCLOSURE STATEMENT, INCLUDING, THE BIDDING PROCEDURES, IS NOT FILED AND SERVED AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE DISCLOSURE STATEMENT, THE ADEQUACY THEREOF, OR THE OTHER RELIEF SOUGHT BY THE DEBTORS IN CONNECTION WITH THE DISCLOSURE STATEMENT, INCLUDING, THE BIDDING PROCEDURES, AND MAY NOT BE HEARD AT THE HEARING.**

   5. The Hearing may be adjourned from time to time without further notice to parties in interest other than by an announcement in Bankruptcy Court of such adjournment on the date scheduled for the Hearing or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Bankruptcy Court. The Debtors may modify the Disclosure Statement, as well as any of the other related documents, including, the Bidding Procedures, prior to, during, or as a result of the Hearing without further notice.

Dated: March 5, 2019
   New York, New York

     _____
     WEIL, GOTSHAL & MANGES LLP
     767 Fifth Avenue
     New York, New York 10153
     Telephone: (212) 310-8000
     Facsimile: (212) 310-8007
     Ray C. Schrock, P.C.
     Sunny Singh

     *Proposed Attorneys for Debtors*
     *and Debtors in Possession*

# SCHEDULE 2

**Form of Sale and Confirmation Hearing Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                                                            :
In re                                                       :    **Chapter 11**
                                                            :
**DITECH HOLDING CORPORATION**, *et al.*,                   :    **Case No. 19-10412 (JLG)**
                                                            :
                          **Debtors.**[1]                   :    **(Jointly Administered)**
                                                            :
------------------------------------------------------------X

**NOTICE OF (I) APPROVAL OF DISCLOSURE
STATEMENT, (II) BIDDING PROCEDURES AND
AUCTION, (III) ESTABLISHMENT OF VOTING RECORD
DATE, (IV) SALE AND CONFIRMATION HEARING,
(V) SALE AND CONFIRMATION OBJECTION PROCEDURES,
(VI) PROCEDURES AND DEADLINE FOR VOTING ON THE PLAN**

**TO ALL PARTIES IN INTEREST:**

> **PLEASE TAKE NOTICE THAT:**

> 1.      *Approval of Disclosure Statement*.  On [_____], the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") held a hearing (the "**Disclosure Statement Hearing**") at which it approved the *Disclosure Statement for Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors*, filed [_____] [ECF No. __] (as may be amended, modified, or supplemented, "**Disclosure Statement**")[2] in Ditech Holding Corporation and its debtor affiliates' chapter 11 cases (collectively, the "**Debtors**"), and thereafter entered an order (the "**Order**") with respect thereto.  The Order, among other things, authorizes the Debtors to solicit votes to accept or reject the *Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors*, filed on [_____] [ECF No. __] (as may be amended, modified, or supplemented, the "**Plan**").

> 2.      *Approval of Bidding Procedures*.  The Order further authorizes the Debtors to solicit offers for the purchase of their assets consistent with the bidding procedures

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837).  The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

[2]     Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such term in the Disclosure Statement, the Plan, or the Bidding Procedures (each as defined below), as applicable, or as the context otherwise requires.

(the "**Bidding Procedures**") approved by the Bankruptcy Court. Copies of the Order and the Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by the Debtors' claims and noticing agent, Epiq Corporate Restructuring, LLC (http://dm.epiq11.com/Ditech).

3. ***Non-Binding Indications of Interest.*** Parties interested in purchasing any of the Debtors' assets, whether as part of a Sale Transaction or an Asset Sale Transaction, are encouraged to contact the Debtors by **[_____], 2019 at 4:00 p.m. (ET)** in writing expressing their interest and identifying the assets in which they are expressing such interest (each a "**Non-Binding Indication of Interest**"). Non-Binding Indications of Interest should be sent to the Debtors' investment bankers, Houlihan Lokey Capital, Inc. (Attn: Reid Snellenbarger (RSnellenbarger@HL.com), Jeff Levine (JMLevine@HL.com), Jimmy Page (JPage@HL.com), and Dan Martin (DMartin@HL.com)). Submitting a Non-Binding Indication of Interest by this deadline does not obligate the interested party to submit a formal bid or to participate in the bidding process and does not exempt such party from also having to submit a Qualified Bid by the applicable Bid Deadline (as defined below) in order to participate in any subsequent Auction for the assets on which such party is indicating an interest, all as described below.

4. ***Bid Deadline***. The deadline to submit a Bid is **[_____] at 4:00 p.m. (ET)** (the "**Bid Deadline**"). The failure to abide by the procedures and deadlines set forth in the Order and the Bidding Procedures may result in the denial of your bid. Any party interested in submitting a bid for the Debtors' assets should contact the Debtors' investment bankers, Houlihan Lokey Capital, Inc. (Attn: Reid Snellenbarger (RSnellenbarger@HL.com), Jeff Levine (JMLevine@HL.com), Jimmy Page (JPage@HL.com), and Dan Martin (DMartin@HL.com)).

5. ***Auction***. The Auction, if necessary, has been scheduled for **[_____] at 10:00 a.m. (ET)**. If no Qualified Bid is received by the Qualified Bid Deadline, the Debtors will not conduct the Auction. The Debtors shall have the right, in their reasonable business judgment, in a manner consistent with the Debtors' fiduciary duties and applicable law, to adjourn or cancel the Auction. If the Auction is adjourned or cancelled, the Debtors shall file a notice with the Bankruptcy Court and publish such notice on the website of the Debtors' claims and noticing agent, Epiq Corporate Restructuring, LLC, (http://dm.epiq11.com/Ditech) in accordance with the Bidding Procedures. As soon as reasonably practicable following the conclusion of the Auction, the Debtors shall file with the Bankruptcy Court notice of the Successful Bid, Successful Bidder, Back-Up Bid, and Back-Up Bidder.

6. ***Sale and Confirmation Hearing***. A hearing to consider confirmation of the Plan and approval of a Sale Transaction or an Asset Sale Transaction (if any) (the "**Sale and Confirmation Hearing**") has been scheduled before the Honorable James L. Garrity, Jr., United States Bankruptcy Judge, in Room 601 of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), One Bowling Green, New York, New York 10004, on [_____] at [_____] **(prevailing Eastern Time)**. The Sale and Confirmation Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors without further notice other than adjournments announced in open court or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Bankruptcy Court. The Plan may be modified, if necessary, prior to, during, or as a result of the Sale and Confirmation Hearing.

WEIL:\96943990\1\41703.0008

7. ***Voting Record Date***.  The following holders of Claims and/or Interests against the Debtors as of [_____] (the "**Voting Record Date**") are entitled to vote on the Plan:

| Class | Description |
|---|---|
| Class 3 | Term Loan Claims |

8. ***Voting Deadline***.  All votes to accept or reject the Plan must be **actually received** by the Debtors' voting and tabulation agent, Epiq Corporate Restructuring, LLC ("**Epiq**"), by no later than [_____] **at 4:00 p.m. (prevailing Eastern Time)** (the "**Voting Deadline**").  Any failure to follow the voting instructions included with your Ballot may disqualify your Ballot and your vote.

9. ***Parties in Interest Not Entitled to Vote***.  Holders of Unimpaired Claims and/or Interests in classes deemed to accept the Plan are not entitled to vote and will not receive a Ballot.  In addition, holders of Impaired Claims in classes deemed to reject the Plan are not entitled to vote and will not receive a Ballot.  Such holders will instead receive a Notice of Non-Voting Status.  If you disagree with the amount or classification of your Claim and believe that you should be entitled to vote on the Plan or vote in a different amount, then you must serve on the parties identified in paragraph 11 below and file with the Bankruptcy Court a motion (a "**Rule 3018(a) Motion**") for an order pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") temporarily allowing your Claim in a different amount or in a different class for purposes of voting to accept or reject the Plan.  All Rule 3018(a) Motions must be filed on or before [_____] **at 4:00 p.m. (prevailing Eastern Time)**.  Rule 3018(a) Motions that are not timely filed and served in the manner set forth above shall not be considered.  As to any Claim holder filing a Rule 3018(a) Motion, such Claim holder's Ballot will be counted as provided in the Order except as may be otherwise ordered by the Bankruptcy Court.  Claim holders may contact Epiq in writing at Ditech Ballot Processing, c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, Oregon 97005, by email to tabulation@epiqglobal.com with a reference to "Ditech Holding Corporation" in the subject line, or by telephone at 866-486-4809 (Domestic) or 503-597-7698 (International) to receive an appropriate Ballot for any Claim for which a Proof of Claim has been timely filed and a Rule 3018(a) Motion has been granted.

10. ***Objections to Sale and Confirmation***.  Responses and objections, if any, to confirmation of the Plan or to a proposed Sale Transaction or Asset Sale Transaction, as applicable, including any objection to the sale of the Debtors' assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, must:

(a)     be in writing;

(b)     state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party;

(c)     state with particularity the basis and nature of any objection, and, if applicable, provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection;

(d)     conform to the Bankruptcy Rules and the Local Rules;

WEIL:\96943990\1\41703.0008

(e)        be filed with the Court together with proof of service either (i) electronically or (ii) conventionally, as noted below:

        (i)      *Electronic Filing*: the filer must be an attorney in possession of passwords and logins to both PACER and the Bankruptcy Court's Electronic Case Filing System; electronic filing must be in accordance with General Order M-399 (which can be found at http://nysb.uscourts.gov); or

        (ii)     *Conventional Filing*: the filer must send the response or objection by mail, courier, or messenger to the Bankruptcy Court's clerk at the following address: United States Bankruptcy Court, One Bowling Green, New York, NY 10004; the hard copy of the response or objection should be accompanied by a CD-ROM containing the response or objection in text-searchable portable document format (PDF); and

        (iii)    *All filers* – those filing electronically as well as those filing conventionally – must provide Bankruptcy Court Chambers with two separate, single-sided hard copies of the response or objection; any proposed order should be accompanied by a CD-ROM containing the response or objection in text searchable portable document format (PDF); and

(f)        be served upon the following parties in accordance with General Order M-399 so as to be received no later than [_____] **at 4:00 p.m. (prevailing Eastern Time) (the "Sale and Confirmation Objection Deadline")**:

| *Debtors* | *Office of the U.S. Trustee* |
|---|---|
| Ditech Holding Corporation, et al. | William K. Harrington, U.S. Department of Justice |
| 3000 Bayport Drive | |
| Suite 985 | Office of the U.S. Trustee |
| Tampa, Florida 33607 | 201 Varick Street, Room 1006 |
| Attn: John Haas | New York, New York 10014 |
| | Attn: Greg M. Zipes |
| |       Benjamin J. Higgins |

WEIL:\96943990\1\41703.0008

*Proposed Counsel to the Debtors*
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn: Ray C. Schrock, P.C.
      Sunny Singh

*Counsel to the Prepetition Administrative Agent*
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
Attn: Brian M. Resnick
      Michelle M. McGreal

*Counsel to the Term Loan Ad Hoc Group*
Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Attn: Patrick J. Nash
      John Luze

*Counsel to the DIP Agent and DIP Lender*
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, New York 10036
Attn: Sarah M. Ward
      Mark A. McDermott
      Melissa Tiarks

*Counsel to Nomura Corporate Funding Americas, LLC*
Jones Day
250 Vesey Street
New York, New York 10281
Attn: Ben Rosenblum

*Proposed Counsel to the Creditors' Committee*
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Attn: Robert J. Feinstein
      Bradford J. Sandler
      Steven W. Golden

and

Rich Michaelson Magaliff, LLP
335 Madison Avenue, 9th Floor
New York, New York 10017
Attn: Robert N. Michaelson
      Elwood F. Collins

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION TO CONFIRMATION OF THE PLAN OR TO A SALE TRANSACTION OR AN ASSET SALE TRANSACTION, AS APPLICABLE, BY THE SALE AND CONFIRMATION OBJECTION DEADLINE SHALL BE BARRED FROM ASSERTING, AT THE SALE AND CONFIRMATION HEARING OR THEREAFTER, ANY OBJECTION TO CONFIRMATION OF THE PLAN OR TO THE CONSUMMATION AND PERFORMANCE OF A SALE TRANSACTION OR AN ASSET SALE TRANSACTION, AS APPLICABLE, CONTEMPLATED BY AN ASSET PURCHASE AGREEMENT BETWEEN THE DEBTORS AND A SUCCESSFUL BIDDER (INCLUDING, WITHOUT LIMITATION, THE DEBTORS' TRANSFER OF THEIR ASSETS AND ASSUMPTION AND ASSIGNMENT OF THE ASSIGNED CONTRACTS, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO SECTION**

**363(F) OF THE BANKRUPTCY CODE), AND MAY NOT BE HEARD AT THE SALE AND CONFIRMATION HEARING.**

        11. ***Additional Information.*** Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement or the Plan should contact the Debtors' voting and tabulation agent, Epiq, in writing: Ditech Ballot Ballot Processing, c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, Oregon 97005 or by email at tabulation@epiqglobal.com with a reference to "Ditech Holding Corporation" in the subject line. Interested parties may also review the Disclosure Statement and the Plan free of charge on the internet (http://dm.epiq11.com/Ditech). In addition, the Disclosure Statement and Plan are on file with the Bankruptcy Court and may be reviewed for a fee by accessing the Bankruptcy Court's website: www.nysb.uscourts.gov. Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website. A PACER password can be obtained at: www.pacer.psc.uscourts.gov. Copies of the Disclosure Statement and Plan may also be examined by interested parties during normal business hours at the office of the Clerk of the Bankruptcy Court. **EPIQ IS NOT AUTHORIZED TO, AND WILL NOT PROVIDE, LEGAL ADVICE.**

WEIL:\96943990\1\41703.0008

## NOTICE REGARDING CERTAIN INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS IN THE PLAN

### *Select Defined Terms*

"***Definitive Documents***" means the documents (including any related orders, agreements, instruments, schedules or exhibits) that are necessary or desirable to implement, or otherwise relate to the Restructuring Transaction or the Sale Transaction, including, but not limited to: (a) the Plan; (b) the Bidding Procedures; (c) the Disclosure Statement; (d) any motion seeking approval of the adequacy of the Disclosure Statement, solicitation of the Plan, and the Bidding Procedures; (e) the Disclosure Statement Order; (f) the Bidding Procedures Order; (g) the DIP Order; (h) each of the documents comprising the Plan Supplement; (i) the Confirmation Order; (j) the Master Servicing Agreements; (k) the Management Incentive Plan Term Sheet; and (l) any purchase agreement in connection with the Sale Transaction or an Asset Sale Transaction.

"***Exculpated Parties***" means collectively the: (a) Debtors; (b) Reorganized Debtors; (c) the Wind Down Estates; (d) Consenting Term Lenders; (e) Prepetition Administrative Agent; (f) Prepetition Warehouse Parties, (g) DIP Credit Parties; (h) Creditors' Committee; (i) Exit Warehouse Facilities Lenders; and (j) with respect to each of the foregoing Entities in clauses (a) through (i), all Persons and Entities who acted on their behalf in connection with the matters as to which exculpation is provided herein.

"***Related Parties***" means with respect to any Exculpated Party or any Released Party, such Entities' predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, and all of their respective current and former officers, directors, principals, stockholders (and any fund managers, fiduciaries or other agents of stockholders with any involvement related to the Debtors), members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such persons' respective heirs, executors, estates, servants and nominees.

"***Released Parties***" means collectively the: (a) Debtors; (b) Reorganized Debtors; (c) the Wind Down Estates (if applicable); (d) Consenting Term Lenders; (e) Prepetition Administrative Agent; (f) Prepetition Warehouse Parties; (g) DIP Credit Parties; and (h) Related Parties for each of the foregoing.

"***Reorganization Transaction***" means, collectively, (a) issuance of the New Common Stock; (b) entry into the Amended and Restated Credit Facility Agreement; (c) entry into the Exit Working Capital Facility Agreement; (d) entry into the Exit Warehouse Facilities Documents; (e) execution of the Amended Organizational Documents; (f) entry into the Master Servicing Agreements, if applicable; (g) vesting of the Debtors' assets in the Reorganized Debtors, in each case, in accordance with the Plan; and (h) the other transactions that the Debtors and the Requisite Term Lenders reasonably determine are necessary or appropriate to implement the foregoing, in each case, in accordance with the Plan, RSA, and the DIP Order.

"***Reorganized Debtors***" means, solely with respect to the Reorganization Transaction, the Debtors, as reorganized pursuant to and under the Plan on or after the Effective Date.

WEIL:\96943990\1\41703.0008

"**_Sale Transaction_**" means the sale of all or substantially all of the Debtors' assets, or Interests in the Debtors owning all or substantially all of the Debtors' assets, contemplated by the Successful Bid.

*Select Provisions of the Plan*

12. **Injunctions, Releases, and Exculpation under Article X. Please be advised that Article X of the Plan contains the following provisions:**

**Section 10.5 of the Plan: Injunction**

(a) **Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan.**

(b) **Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished, discharged, or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Released Parties or the property of any of the Released Parties; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Released Parties or the property of any of the Released Parties; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties or the property of any of the Released Parties; (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Released Parties or the property of any of the Released Parties, except as contemplated or Allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

(c) **By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in this Section 10.5.**

WEIL:\96943990\1\41703.0008

(d)     The injunctions in this Section 10.5 shall extend to any successors of the Debtors and the Reorganized Debtors and their respective property and interests in property.

**Section 10.6 of the Plan: Releases**

(a)     **Estate Releases**.

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Definitive Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties will be deemed forever released and discharged, to the maximum extent permitted by law, by the Debtors, the Reorganized Debtors and their Estates, and the Wind Down Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, or Reorganized Debtors (as the case may be), or the Estates, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors or Reorganized Debtors (as the case may be), or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising prior to the Effective Date from, in whole or in part, the Debtors, the Chapter 11 Cases, the pre- and postpetition marketing and sale process, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any of the Debtors and any Released Party, the restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Disclosure Statement, the RSA, the Plan (including the Plan Supplement), the DIP Documents, and the Prepetition Warehouse Facilities (as defined in the DIP Order), or any related agreements, instruments, and other documents (including the Definitive Documents), and the negotiation, formulation, or preparation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, that nothing in this Section 10.6(a) shall be construed to release the Released Parties from willful misconduct, or intentional fraud as determined by a Final Order.

(b)     **Third-Party Releases.**

As of the Effective Date, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect or become effective after the Effective Date or (ii) as otherwise expressly provided in the Plan or in the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as

such law may be extended or integrated after the Effective Date, the Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably and forever, released, and discharged by:

> (i) the holders of Impaired Claims who voted to accept the Plan;

> (ii) the Consenting Term Lenders;

> (iii) holders of Term Loan Claims (Class 3) who abstain from voting on the Plan or vote to reject the Plan but do not opt-out of these releases on the Ballots; and

> (iv) with respect to any Entity in the foregoing clauses (i) through (iii), such Entity's (x) predecessors, successors and assigns, (y) subsidiaries, affiliates, managed accounts or funds, managed or controlled by such Entity and (z) all Persons entitled to assert Claims through or on behalf of such Entities with respect to the matters for which the releasing entities are providing releases.

in each case, from any and all Claims, Interests, or Causes of Action whatsoever, including any derivative Claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or arising prior to the Effective Date from, in whole or in part, the Debtors, the restructuring, the Chapter 11 Cases, the pre- and postpetition marketing and sale process, the purchase, sale or rescission of the purchase or sale of any security of the Debtors or Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan (including the Plan Supplement), the RSA, the Definitive Documents, the DIP Documents, the Prepetition Warehouse Facilities (as defined in the DIP Order), or any related agreements, instruments, or other documents, the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, that nothing in this Section 10.6(b) shall be construed to release the Released Parties from willful misconduct, or intentional fraud as determined by a Final Order.

### Section 10.7 of the Plan: Exculpation

To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any claim in connection with or arising out of the administration of the Chapter 11 Cases, the postpetition marketing and sale process, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors; the negotiation and pursuit of the Disclosure Statement, the RSA, the Reorganization Transaction or the Sale Transaction, as applicable,

WEIL:\96943990\1\41703.0008

the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan; the occurrence of the Effective Date; the DIP Documents; the Prepetition Warehouse Facilities (as defined in the DIP Order); the administration of the Plan or the property to be distributed under the Plan; the issuance of Securities under or in connection with the Plan; or the transactions in furtherance of any of the foregoing; except for fraud or willful misconduct, as determined by a Final Order.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability.**

> 13. The Plan also contains other related provisions that may affect your rights against the Debtors.

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

Dated: _____, 2019
        New York, New York

                                _____
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

WEIL:\96943990\1\41703.0008

## SCHEDULE 3

**Form of Ballot**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X
                :

In re                    :      **Chapter 11**
                :

**DITECH HOLDING CORPORATION,** *et al.,*  :      **Case No. 19-10412 (JLG)**
                :

           **Debtors.**[1]     :      **(Jointly Administered)**
                :
-------------------------------------------------------------X

**BALLOT FOR ACCEPTING OR REJECTING**
**JOINT CHAPTER 11 PLAN OF DITECH HOLDING**
**CORPORATION AND ITS AFFILIATED DEBTORS**

**BALLOT FOR:** *CLASS 3 – Term Loan Claims*

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 4:00 P.M., PREVAILING EASTERN TIME, ON [_____], 2019 (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.**

This ballot (the "**Ballot**") is provided to you to solicit your vote to accept or reject the *Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors* under Chapter 11 of the Bankruptcy Code, dated [_____] (as it may be amended or modified, the "**Plan**"). The Plan is attached as <u>Exhibit A</u> to the *Disclosure Statement for the Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors*, dated [_____] (as it may be amended or modified, the "**Disclosure Statement**").

Copies of the Disclosure Statement and the Plan will be on file with the Office of the Clerk of the Bankruptcy Court for review during normal business hours (a fee may be charged) and are also available free-of-charge on the Debtors' claims agent's website (http://dm.epiq11.com/Ditech).

All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to such terms in the Plan. The Disclosure Statement provides information to assist you in deciding how to vote on the Plan. You should review the Disclosure Statement and

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

the Plan in their entirety before you vote. You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

The Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code. The Plan can thereafter be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of the Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of [_____] (the "**Voting Record Date**"), a holder of a Claim against the Debtors arising under that certain Second Amended and Restated Credit Agreement, dated as of February 9, 2018 (and as amended by that certain Amendment No. 1 to Second Amended and Restated Credit Agreement, dated as of March 29, 2018), among Ditech, as the borrower, each of the other loan parties named therein, the Prepetition Administrative Agent and the other lenders party thereto, as amended, modified, or supplemented from time to time prior to the Commencement Date (the "**Prepetition Credit Agreement**" and such claims against the Debtors arising under the Prepetition Credit Agreement, collectively, the "**Term Loan Claims**").

If you have any questions on how to properly complete this Ballot, please call Epiq Corporate Restructuring, LLC (the "**Voting Agent**") at 866 897-6433 (domestic toll-free) or 646 282-2500 (international) and request to speak with a member of the Solicitation Team, or email tabulation@epiqglobal.com with a reference to "Ditech" in the subject line. **THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**This Ballot is to be used for voting by holders of Class 3 Claims (Term Loan Claims). In order for your vote to be counted, this Ballot must be properly completed, signed, and returned to the Voting Agent so that it is actually received <u>no later than 4:00 p.m. (Prevailing Eastern Time) on [_____] </u>(the "Voting Deadline"), unless such time is extended by the Debtors.**

**This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 3 Claims (Term Loan Claims).**

**INSTRUCTIONS FOR COMPLETING THE BALLOT**

This Ballot is submitted to you to solicit your vote to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement, including all exhibits thereto. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

To have your vote counted, you must complete, sign, and return this Ballot so that it its received by the Voting Agent no later than the Voting Deadline, unless such time is extended by the Debtors. Ballots must be delivered to the Voting Agent (i) at an appropriate address listed below or (ii) via the Voting Agent's E-Ballot platform by visiting **http://dm.epiq11.com/ditech**, clicking on the "E-Ballot" link and following the instructions set forth on the website. Holders are encouraged to submit their Ballots via the E-Ballot platform. If you choose to submit your Ballot via the E-Ballot platform, you should NOT submit your hard copy Ballot as well. Please choose only one method of return for your Ballot.

**If by U.S. Postal Service mail:**

>    Ditech Ballot Processing
>    c/o Epiq Corporate Restructuring, LLC
>    P.O. Box 4422
>    Beaverton, Oregon 97076-4422

**If by overnight delivery or personal delivery by hand:**

>    Ditech Ballot Processing
>    c/o Epiq Corporate Restructuring, LLC
>    10300 SW Allen Boulevard
>    Beaverton, Oregon 97005

**If by electronic submission:**

>    Visit http://dmepiq11.com/ditech. Click on the "E-Ballot" section of the Debtors' website and follow the directions to submit your E-Ballot. If you choose to submit your Ballot via Epiq's E-Ballot system, you should <u>not</u> also return a hard copy of your Ballot.

>    **IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

>    **Unique E-Ballot ID#:**
>    _____

>    **"E-Balloting" is the sole manner in which Ballots will be accepted via electronic transmission.**

WEIL:\96943990\1\41703.0008

**Ballots will not be accepted by telecopy, facsimile, or other electronic means of transmission (except via the Voting Agent's E-Ballot platform).**

**The following Ballots will not be counted in determining the acceptance or rejection of the Plan: (i) any Ballot that is illegible or contains insufficient information to permit the identification of the holder, (ii) any ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (iii) any unsigned Ballot, (iv) any ballot that does not contain an original signature (for the avoidance of doubt, a Ballot submitted by the E-Ballot platform shall be deemed to bear an original signature); and (v) any Ballot transmitted to the Voting Agent by facsimile, or electronic transmission, or other electronic means (other than Ballots entitled to be submitted via the Voting Agent's online balloting portal). An otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan or indicating both acceptance and rejection of the Plan will not be counted.**

To properly complete the Ballot, you must follow the procedures described below:

a. Make sure that the information contained in Item 1 is correct;

b. If you have a Class 3 – Term Loan Claim, cast one vote to accept or reject the Plan by checking the appropriate box in Item 2;

c. **Make sure to read the information regarding the Releases in Item 3. Holders of Claims who accept the Plan are automatically deemed to have consented to the release provisions in Section 10.6(b) of the Plan. If you vote to accept the Plan by checking the "accept" box in Item 2, but you also check the box in Item 3, your election to opt-out with respect to the releases contained in Section 10.6(b) of the Plan will not be counted, as your vote in favor of the Plan shall be deemed a consent to the releases set forth in Section 10.6(b) of the Plan to the fullest extent permitted by applicable law.**

d. If you vote to reject the Plan or abstain from voting on the Plan and elect to opt-out of the releases contained in Section 10.6(b) of the Plan, you must check the box in Item 3. Election to withhold consent is at your option. The failure to do so, whether or not you vote on the Plan, will be deemed your consent to the releases contained in Section 10.6(b) of the Plan to the fullest extent permitted by applicable law. Holders of Claims who accept the Plan may not opt-out of the releases contained in Section 10.6(b) of the Plan.

e. If you are completing this Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing on the appropriate line in Item 4. By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act);

f. If you hold other Class 3 – Term Loan Claims, you may receive more than one Ballot. Your vote will be counted in determining acceptance or rejection of the

Plan by a particular Class of Claims only if you complete, sign, and return the Ballot labeled for such Class of Claims in accordance with the instructions on that Ballot. Each Ballot votes only your Claims indicated on that Ballot. Please complete and return each Ballot you receive;

g.   You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan;

h.   If more than one timely, properly completed Ballot is received, only the last properly completed Ballot received by the Voting Agent will be counted, unless the holder of the Claim receives Bankruptcy Court approval otherwise;

i.   If you believe that you have received the wrong Ballot, please contact the Voting Agent immediately;

j.   Provide your name, mailing address, and any remaining information requested;

k.   Sign and date your Ballot; and

l.   Return your Ballot with an original signature to the Voting Agent. For the avoidance of doubt, a Ballot submitted by the E-Ballot platform shall be deemed to bear an original signature.

No Ballot shall constitute or be deemed a proof of Claim or an assertion of Claim.

In the event that (i) the Debtors revoke or withdraw the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THIS BALLOT, (B) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (C) DID NOT RECEIVE A LINK TO THE DEBTORS' WEBSITE PAGE CONTAINING THE DISCLOSURE STATEMENT AND PLAN, OR (D) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE VOTING AGENT AT (866) 8976433 (DOMESTIC TOLL-FREE) OR (646) 282-2500 (INTERNATIONAL) AND REQUEST TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM, OR BY E-MAILING TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "DITECH" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

WEIL:\96943990\1\41703.0008

# IMPORTANT INFORMATION REGARDING THE
## INJUNCTION, RELEASES, AND EXCULPATION PROVISIONS IN THE PLAN

### *Select Defined Terms*

"***Definitive Documents***" means the documents (including any related orders, agreements, instruments, schedules or exhibits) that are necessary or desirable to implement, or otherwise relate to the Restructuring Transaction or the Sale Transaction, including, but not limited to: (a) the Plan; (b) the Bidding Procedures; (c) the Disclosure Statement; (d) any motion seeking approval of the adequacy of the Disclosure Statement, solicitation of the Plan, and the Bidding Procedures; (e) the Disclosure Statement Order; (f) the Bidding Procedures Order; (g) the DIP Order; (h) each of the documents comprising the Plan Supplement; (i) the Confirmation Order; (j) the Master Servicing Agreements; (k) the Management Incentive Plan Term Sheet; and (l) any purchase agreement in connection with the Sale Transaction or an Asset Sale Transaction.

"***Exculpated Parties***" means collectively the: (a) Debtors; (b) Reorganized Debtors; (c) the Wind Down Estates; (d) Consenting Term Lenders; (e) Prepetition Administrative Agent; (f) Prepetition Warehouse Parties, (g) DIP Credit Parties; (h) Creditors' Committee; (i) Exit Warehouse Facilities Lenders; and (j) with respect to each of the foregoing Entities in clauses (a) through (i), all Persons and Entities who acted on their behalf in connection with the matters as to which exculpation is provided herein.

"***Related Parties***" means with respect to any Exculpated Party or any Released Party, such Entities' predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, and all of their respective current and former officers, directors, principals, stockholders (and any fund managers, fiduciaries or other agents of stockholders with any involvement related to the Debtors), members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such persons' respective heirs, executors, estates, servants and nominees.

"***Released Parties***" means collectively the: (a) Debtors; (b) Reorganized Debtors; (c) the Wind Down Estates (if applicable); (d) Consenting Term Lenders; (e) Prepetition Administrative Agent; (f) Prepetition Warehouse Parties; (g) DIP Credit Parties; and (h) Related Parties for each of the foregoing.

"***Reorganization Transaction***" means, collectively, (a) issuance of the New Common Stock; (b) entry into the Amended and Restated Credit Facility Agreement; (c) entry into the Exit Working Capital Facility Agreement; (d) entry into the Exit Warehouse Facilities Documents; (e) execution of the Amended Organizational Documents; (f) entry into the Master Servicing Agreements, if applicable; (g) vesting of the Debtors' assets in the Reorganized Debtors, in each case, in accordance with the Plan; and (h) the other transactions that the Debtors and the Requisite Term Lenders reasonably determine are necessary or appropriate to implement the foregoing, in each case, in accordance with the Plan, RSA, and the DIP Order.

"***Reorganized Debtors***" means, solely with respect to the Reorganization Transaction, the Debtors, as reorganized pursuant to and under the Plan on or after the Effective Date.

"**_Sale Transaction_**" means the sale of all or substantially all of the Debtors' assets, or Interests in the Debtors owning all or substantially all of the Debtors' assets, contemplated by the Successful Bid.

## _Select Provisions of the Plan_

## Section 10.5 of the Plan: Injunction

(a)     **Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan.**

(b)     **Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished, discharged, or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Released Parties or the property of any of the Released Parties; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Released Parties or the property of any of the Released Parties; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties or the property of any of the Released Parties; (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Released Parties or the property of any of the Released Parties, except as contemplated or Allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

(c)     **By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in this Section 10.5.**

WEIL:\96943990\1\41703.0008

(d)     The injunctions in this Section 10.5 shall extend to any successors of the Debtors and the Reorganized Debtors and their respective property and interests in property.

## Section 10.6 of the Plan: Releases

(a)     **Estate Releases**.

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Definitive Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties will be deemed forever released and discharged, to the maximum extent permitted by law, by the Debtors, the Reorganized Debtors and their Estates, and the Wind Down Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, or Reorganized Debtors (as the case may be), or the Estates, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors or Reorganized Debtors (as the case may be), or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising prior to the Effective Date from, in whole or in part, the Debtors, the Chapter 11 Cases, the pre- and postpetition marketing and sale process, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any of the Debtors and any Released Party, the restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Disclosure Statement, the RSA, the Plan (including the Plan Supplement), the DIP Documents, and the Prepetition Warehouse Facilities (as defined in the DIP Order), or any related agreements, instruments, and other documents (including the Definitive Documents), and the negotiation, formulation, or preparation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, that nothing in this Section 10.6(a) shall be construed to release the Released Parties from willful misconduct, or intentional fraud as determined by a Final Order.

(b)     **Third-Party Releases.**

As of the Effective Date, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect or become effective after the Effective Date or (ii) as otherwise expressly provided in the Plan or in the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as

WEIL:\96943990\1\41703.0008

such law may be extended or integrated after the Effective Date, the Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably and forever, released, and discharged by:

        (i)      the holders of Impaired Claims who voted to accept the Plan;

        (ii)     the Consenting Term Lenders;

        (iii)    holders of Term Loan Claims (Class 3) who abstain from voting on the Plan or vote to reject the Plan but do not opt-out of these releases on the Ballots; and

        (iv)    with respect to any Entity in the foregoing clauses (i) through (iii), such Entity's (x) predecessors, successors and assigns, (y) subsidiaries, affiliates, managed accounts or funds, managed or controlled by such Entity and (z) all Persons entitled to assert Claims through or on behalf of such Entities with respect to the matters for which the releasing entities are providing releases.

in each case, from any and all Claims, Interests, or Causes of Action whatsoever, including any derivative Claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or arising prior to the Effective Date from, in whole or in part, the Debtors, the restructuring, the Chapter 11 Cases, the pre- and postpetition marketing and sale process, the purchase, sale or rescission of the purchase or sale of any security of the Debtors or Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan (including the Plan Supplement), the RSA, the Definitive Documents, the DIP Documents, the Prepetition Warehouse Facilities (as defined in the DIP Order), or any related agreements, instruments, or other documents, the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, that nothing in this Section 10.6(b) shall be construed to release the Released Parties from willful misconduct, or intentional fraud as determined by a Final Order.

### Section 10.7 of the Plan: Exculpation

        To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any claim in connection with or arising out of the administration of the Chapter 11 Cases, the postpetition marketing and sale process, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors; the negotiation and pursuit of the Disclosure Statement, the RSA, the Reorganization Transaction or the Sale Transaction, as applicable,

the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan; the occurrence of the Effective Date; the DIP Documents; the Prepetition Warehouse Facilities (as defined in the DIP Order); the administration of the Plan or the property to be distributed under the Plan; the issuance of Securities under or in connection with the Plan; or the transactions in furtherance of any of the foregoing; except for fraud or willful misconduct, as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability.

WEIL:\96943990\1\41703.0008

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1**.  **Amount of Class 3 Claim (Term Loan Claims)**.  For purposes of voting to accept or reject the Plan, the undersigned certifies that as of [_____], the undersigned holds a Class 3 Claim (Term Loan Claims) against the Debtors in the amount set forth below.

| | |
|---|---|
| **Amount**:[2] | $[_____] |

**Item 2**.  **Vote on the Plan**.  The undersigned holder of a Class 3 Claim (Term Loan Claims) in the amount set forth in Item 1 above hereby votes to:

     **Check one box only**:     ❑     Accept the Plan

                                       ❑     Reject the Plan

**Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.**

**PLEASE TAKE NOTE THAT IF YOU SUBMIT THIS BALLOT TO THE VOTING AGENT AND EITHER: (A) FAIL TO INDICATE WHETHER YOU ARE ACCEPTING OR REJECTING THE PLAN OR (B) CHECK BOTH BOXES INDICATING THAT YOU ARE BOTH ACCEPTING AND REJECTING THE PLAN, YOUR BALLOT WILL NOT BE COUNTED IN DETERMINING THE ACCEPTANCE OR REJECTION OF THE PLAN.**

---

[2] For voting purposes only; subject to tabulation rules.

WEIL:\96943990\1\41703.0008

```
IMPORTANT INFORMATION REGARDING CERTAIN RELEASES BY HOLDERS
                          OF CLAIMS:

IF YOU RETURN A BALLOT AND VOTE TO ACCEPT THE PLAN, YOU ARE
AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE
PROVISIONS IN SECTION 10.6(b) OF THE PLAN REGARDLESS OF WHETHER
YOU CHECK THE BOX IN ITEM 3 BELOW.  IF YOU VOTE TO REJECT THE PLAN
OR ABSTAIN AND SUBMIT A BALLOT WITHOUT CHECKING THE BOX IN ITEM
3 BELOW, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES SET FORTH
IN SECTION 10.6(b) OF THE PLAN.  IF YOU FAIL TO SUBMIT A BALLOT, YOU
WILL BE DEEMED TO HAVE CONSENTED TO THE RELEASES FOUND IN
SECTION 10.6(b) OF THE PLAN.

IF YOU VOTE TO REJECT THE PLAN OR ABSTAIN, YOU MUST OPT OUT OF THE
RELEASES PROVIDED IN SECTION 10.6(b) OF THE PLAN BY CHECKING THE
BOX IN ITEM 3 BELOW, IN ORDER TO NOT BE BOUND BY SUCH RELEASES.
```

**Item 3**.  **Optional Release Election.  COMPLETE THIS ITEM 3 ONLY IF YOU VOTED
TO REJECT THE PLAN OR ARE ABSTAINING FROM VOTING ON THE PLAN IN
ITEM 2 ABOVE.**

Check this box if you elect <u>not</u> to grant the releases contained in Section 10.6(b) of the Plan.
Election to withhold consent is your option.

> ❑   The undersigned elects <u>not</u> to grant the releases contained in Section 10.6(b) of the
> Plan.

**Item 4**.  **Acknowledgements and Certification**.  By signing this Ballot, the undersigned
acknowledges receipt of a Solicitation Package and acknowledges that the solicitation is being
made pursuant to the terms and conditions set forth therein.  The undersigned certifies that as of
the Voting Record Date (a) it is the Holder of the Class 3 Claim (Term Loan Claims) identified in
Item 1 above or (b) the undersigned is an authorized signatory and has full power and authority to
vote to accept or reject the Plan on behalf of the Holder.

WEIL:\96943990\1\41703.0008

Print or Type Name of Holder: _____

Signature: _____

Name of Signatory (if different than Holder)[3]: _____

If by Authorized Agent, Title of Agent: _____

Street Address: _____

City, State, Zip Code: _____

Telephone Number: _____

E-mail Address: _____

Date Completed: _____

---

[3] If you are completing this Ballot on behalf of another person or entity, indicate your relationship with such person or entity and the capacity in which you are signing. You may be required to provide additional information or documentation with respect to such relationship.

WEIL:\96943990\1\41703.0008

## SCHEDULE 4

**Form of Notice of Non-Voting Status – Unimpaired**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                                     :

In re                               :        **Chapter 11**

                                       :

**DITECH HOLDING CORPORATION,** *et al.*,   :        **Case No. 19-10412 (JLG)**

                                       :

                Debtors.[1]         :        **(Jointly Administered)**

                                       :

------------------------------------------------------------X

## NOTICE OF NON-VOTING STATUS TO UNIMPAIRED CLASSES[2]

        PLEASE TAKE NOTICE THAT on [_____], the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") entered an order (the "**Order**") approving the *Disclosure Statement for Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors*, dated as of [_____] [ECF No. __] (as it may be amended, modified, or supplemented, the "**Disclosure Statement**"). The Order authorizes the Debtors to solicit votes to accept or reject the *Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors*, dated as of [_____] [ECF No. __] (as it may be amended, modified, or supplemented, the "**Plan**"), a copy of which is annexed as **Exhibit A** to the Disclosure Statement.

        Copies of the Disclosure Statement and the Plan will be on file with the Office of the Clerk of the Bankruptcy Court for review during normal business hours (a fee may be charged) and are also available free-of-charge on the Debtors' claims agent's website (http://dm.epiq11.com/Ditech).

        You can find information about the Debtors' confirmation hearing in the enclosed Sale and Confirmation Hearing Notice.

        **UNDER THE TERMS OF THE PLAN, YOUR CLAIM(S) AGAINST THE DEBTORS IS/ARE NOT IMPAIRED, AND THEREFORE, PURSUANT TO SECTION 1126(f) OF TITLE 11 OF THE UNITED STATES CODE, YOU ARE (A) DEEMED TO HAVE ACCEPTED THE PLAN AND (B) NOT ENTITLED TO VOTE ON THE PLAN.**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

[2]    Unimpaired Classes consist of Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 8 (Intercompany Claims), and Class 9 (Intercompany Interests). Per the Order, Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests) are deemed to have received all notices approved therein upon entry of the Order without actual delivery thereof and, thus, are not being served with this Notice.

**IF YOU HAVE ANY QUESTIONS ABOUT THE STATUS OF YOUR CLAIM(S), OR YOU WANT TO REQUEST A COPY OF THE ORDER, THE PLAN AND THE DISCLOSURE STATEMENT, YOU SHOULD CONTACT THE DEBTORS' VOTING AGENT, EPIQ CORPORATE RESTRUCTURING, LLC, BY TELEPHONE AT 866-486-4809 (DOMESTIC) OR 503-597-7698 (INTERNATIONAL). PLEASE BE ADVISED THAT EPIQ CORPORATE RESTRUCTURING, LLC CANNOT PROVIDE LEGAL ADVICE.**

Dated: _____, 2019
      New York, New York

 

                       _____
                       WEIL, GOTSHAL & MANGES LLP
                       767 Fifth Avenue
                       New York, New York 10153
                       Telephone:  (212) 310-8000
                       Facsimile:  (212) 310-8007
                       Ray C. Schrock, P.C.
                       Sunny Singh

                       *Proposed Attorneys for Debtors*
                       *and Debtors in Possession*

WEIL:\96943990\1\41703.0008

# <u>SCHEDULE 5</u>

**Form of Notice of Non-Voting Status – Impaired**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                        :

In re                            :        **Chapter 11**
                        :

**DITECH HOLDING CORPORATION,** *et al.*,   :        **Case No. 19-10412 (JLG)**
                        :

           Debtors.[1]         :        **(Jointly Administered)**
                        :
------------------------------------------------------------X

## <u>NOTICE OF NON-VOTING STATUS TO IMPAIRED CLASS</u>[2]

       PLEASE TAKE NOTICE THAT on [_____], the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") entered an order (the "**Order**") approving the *Disclosure Statement for Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors*, dated as of [_____] [ECF No. \_\_] (as it may be amended, modified, or supplemented, the "**Disclosure Statement**"). The Order authorizes the Debtors to solicit votes to accept or reject the *Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors*, dated as of [_____] [ECF No. \_\_] (as it may be amended, modified, or supplemented, the "**Plan**"), a copy of which is annexed as **<u>Exhibit A</u>** to the Disclosure Statement.

       Copies of the Disclosure Statement and the Plan will be on file with the Office of the Clerk of the Bankruptcy Court for review during normal business hours (a fee may be charged) and are also available free-of-charge on the Debtors' claims agent's website (http://dm.epiq11.com/Ditech).

       You can find information about the Debtors' confirmation hearing in the enclosed Sale and Confirmation Hearing Notice.

       **UNDER THE TERMS OF THE PLAN, AND PURSUANT TO SECTION 1126(G) OF TITLE 11 OF THE UNITED STATES CODE, YOU ARE (A) DEEMED TO HAVE REJECTED THE PLAN AND (B) NOT ENTITLED TO VOTE ON THE PLAN.**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

[2]    Impaired Classes not entitled to vote consist of Class 4 (Second Lien Notes Claims), Class 5 (General Unsecured Claims), and Class 6 (Go-Forward Trade Claims), Class 9 (Parent Equity Interests), and Class 10 (Subordinated Securities Claims).

**IF YOU HAVE ANY QUESTIONS ABOUT THE STATUS OF YOUR CLAIMS OR EQUITY INTEREST(S), OR YOU WANT TO REQUEST A COPY OF THE ORDER, THE PLAN AND THE DISCLOSURE STATEMENT, YOU SHOULD CONTACT THE DEBTORS' VOTING AGENT, EPIQ CORPORATE RESTRUCTURING, LLC, BY TELEPHONE AT 866-486-4809 (DOMESTIC) OR 503-597-7698 (INTERNATIONAL). PLEASE BE ADVISED THAT EPIQ CORPORATE RESTRUCTURING, LLC CANNOT PROVIDE LEGAL ADVICE.**

Dated: _____, 2019

                                 _____

                                 WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

WEIL:\96943990\1\41703.0008

# **SCHEDULE 6**

## **Proposed Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
                                             :

In re                                 :     **Chapter 11**

**DITECH HOLDING CORPORATION**, *et al.*,   :     **Case No. 19-10412 (JLG)**
                                             :

                   **Debtors.**[1]     :     **(Jointly Administered)**
                                             :
-----------------------------------------------------------X

## BIDDING PROCEDURES

### Overview

On February 11, 2019, Ditech Holding Corporation ("**Ditech**") and its debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). These chapter 11 cases have been consolidated for procedural purposes under the lead case: *In re Ditech Holding Corporation*, *et al.*, Case No 19-10412 (JLG).

On [____], 2019, the Bankruptcy Court entered an order (ECF No. __) (the "**Bidding Procedures Order**"), which, among other things, authorized the Debtors to solicit bids and approved these procedures (the "**Bidding Procedures**") for the consideration of the highest or otherwise best bid for all or a portion of the Debtors' assets on the terms and conditions set forth herein.[2]

The Bidding Procedures describe, among other things: (i) the procedures for bidders to submit bids for the Debtors' assets; (ii) the manner in which bidders and bids become Qualified Bidders and Qualified Bids; (iii) the process for negotiating the bids received; (iv) the conduct of the Auction if the Debtors receive Qualified Bids; (v) the procedure for the ultimate selection of any Successful Bidder; and (vi) the process for approval of a Sale Transaction or Asset Sale Transaction(s) at the Sale and Confirmation Hearing (as defined herein).

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

[2]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such term in the Bidding Procedures Order.

**The Debtors reserve the right, subject to the exercise of their reasonable business judgment, and in good faith consultation with the Consultation Parties (as defined herein), to modify or terminate these Bidding Procedures, to waive terms and conditions set forth herein, to extend any of the deadlines or other dates set forth herein, to adjourn the Auction and/or Sale and Confirmation Hearing, and/or to terminate discussions with any and all prospective bidders at any time and without specifying the reasons therefor, in each case, to the extent not materially inconsistent with these Bidding Procedures and/or the Bidding Procedures Order.**

<u>**Summary of Important Dates**</u>

| Key Event | Deadline |
|---|---|
| Deadline to submit Non-Binding Indications of Interest | No later than April 15, 2019 at 4:00 p.m. (ET) |
| Deadline to submit Bids | May 6, 2019 at 4:00 p.m. (ET) |
| Deadline for Debtors to notify Bidders of status as Qualified Bidders | May 10, 2019 at 4:00 p.m. (ET) |
| Auction, if necessary, to be conducted at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 | May 13, 2019 at 10:00 a.m. (ET) |
| Deadline to file notice of (i) Successful Bid and Back-Up Bid and (ii) identity of Successful Bidder and Back-Up Bidder | One (1) business day following conclusion of the Auction |
| Deadline to file objections to (i) Sale Transaction or Asset Sale Transaction, (ii) Cure Costs, and (iii) Adequate Assurance of future performance<br><br>(same as Confirmation Objection Deadline) | May 24, 2019 at 4:00 p.m. (ET) |
| Sale and Confirmation Hearing | June 5, 2019 at 11:00 a.m. (ET) |

<u>**Assets To Be Sold**</u>

The Debtors' assets are comprised of three primary segments described below. Parties may submit bids for the purchase and sale of any and all of the Debtors' assets, including any of the following segments or any assets in any such segments, in accordance with the terms and conditions set forth herein.

    a) <u>Forward Mortgage Origination Business</u>.

The Debtors originate mortgage loans exclusively through Ditech Financial LLC ("**Ditech Financial**"), an indirect wholly owned subsidiary of Ditech, through its consumer, correspondent

WEIL:\96943990\1\41703.0008

and wholesale lending channels. Almost all of the loans that Ditech Financial originates are conventional mortgage loans eligible for securitization by government-sponsored enterprises (such as Fannie Mae and Freddie Mac[3]) or mortgage loans eligible for securitizations guaranteed by Ginnie Mae.[4] Ditech Financial sells substantially all of the mortgage loans it originates into Fannie Mae- and Freddie Mac-sponsored securitizations or into mortgage pools insured by Ginnie Mae.

For the year ended December 31, 2018, Ditech Financial sold mortgage loans of $12.4 billion in unpaid principle balance ("**UPB**"), consisting of approximately (i) $5.4 billion in Fannie Mae/Freddie Mac conventional conforming loans, (ii) $7.0 billion of Ginnie Mae loans, and (iii) $28.3 million of jumbo and other loans. On average, Ditech Financial sells or securitizes loans funded through warehouse borrowings in approximately 20 days from the date of origination.

Parties may submit bids for the purchase and sale of any and all of the Debtors' assets in the Forward Mortgage Origination Business.

b)     Forward Mortgage Servicing Business.

Ditech Financial performs loan servicing for mortgage loans that fall into two categories: (i) mortgage loans for which Ditech Financial owns the mortgage service rights ("MSRs") and (ii) mortgage loans for which Ditech Financial performs subservicing for third party owners of MSRs. Ditech Financial typically originates the mortgage loans associated with such MSRs and sells them into securitization trusts sponsored by Fannie Mae or Freddie Mac (on a servicing-retained basis) or into mortgage pools insured by Ginnie Mae. The Company's servicing portfolio consists of MSRs related to Fannie Mae, Freddie Mac, and Ginnie Mae loans as well as manufactured housing and other private label loans. As of December 31, 2018, the Company's owned MSR portfolio consisted of (i) Fannie Mae MSRs relating to loans with $37.3 billion of UPB, (ii) Ginnie Mae MSRs relating to loans with $19.5 billion of UPB, (iii) Freddie Mac MSRs relating to loans with $215 million of UPB, and (iv) manufactured housing and private-label MSRs with $7.4 billion of UPB.

As of December 31, 2018, Ditech Financial serviced approximately 1.4 million loans with a total UPB of $170 billion, of which approximately 720,000 loans with a total UPB of $102 billion are subserviced by Ditech Financial.

Parties may submit bids for the purchase and sale of any and all of the Debtors' assets in the Forward Mortgage Servicing Business.

---

[3]     As used herein, "Fannie Mae" means the Federal National Mortgage Association, and "Freddie Mac" means the Federal Home Loan Mortgage Corporation. Fannie Mae and Freddie Mac are government-sponsored enterprises chartered by Congress that buy and securitize mortgage loans originated by mortgage lenders, thereby enabling such lenders quick access to liquidity fueled by market demand for mortgage backed securities ("**MBS**").

[4]     As used herein, "Ginnie Mae" means the Government National Mortgage Association. Ginnie Mae is a federal corporation within the Department of Housing and Urban Development ("**HUD**"), a federal agency, that guarantees investors the timely payment of principal and interest on MBS backed by federally insured or guaranteed loans (*e.g.*, loans insured by the Federal Housing Administration (the "**FHA**"), guaranteed by the Department of Veterans Affairs, or guaranteed by the Department of Agriculture).

WEIL:\96943990\1\41703.0008

c)    <u>Reverse Mortgage Servicing Business</u>.

Reverse Mortgage Solutions, Inc. ("**RMS**"), an indirect wholly owned subsidiary of Ditech, primarily focuses on servicing and subservicing reverse mortgage loans, the majority of which are home equity conversion mortgages ("**HECMs**") insured by the FHA.  A HECM is a type of loan that allows homeowners aged 62 or older to borrow money against the equity value of their homes.  Unlike traditional home equity loans, HECMs are non-recourse loans without a fixed term whose balances increase over time as interest and other fees are added to the borrowers' total obligations.  RMS also provides management and disposition services in connection with real estate owned property ("**REO Property**") through paying applicable taxes, insurance, homeowner's association fees, and property maintenance expenses.

When an HECM meets certain requirements, RMS, as the issuer of the related HECM securitization, is required to buyout such HECM from the relevant securitization.  As of December 31, 2018, HECM-buyout loans held on RMS's balance sheet totaled over $1 billion.
As of December 31, 2018, RMS serviced or subserviced approximately 88,000 loans with a total UPB of approximately $17.1 billion, of which approximately 35,000 loans with an unpaid principal balance of $7.4 billion are subserviced by RMS.
Parties may submit bids for the purchase and sale of any and all of the Debtors' assets in the Reverse Mortgage Servicing Business. [5]

### Due Diligence

The Debtors have posted copies of all material documents related to the Debtors' assets to the Debtors' confidential electronic data room (the "**Data Room**").  To access the Data Room, a party must submit to the Debtors' advisors:

(A)    an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors (unless such party is already a party to an existing confidentiality agreement with the Debtors that is acceptable to the Debtors for this due diligence process, in which case such agreement shall govern); and

(B)    sufficient information, as reasonably determined by the Debtors, to allow the Debtors to determine that the interested party (i) has the financial wherewithal to consummate a Sale Transaction or an Asset Sale Transaction, as applicable, and

---

[5]    Separate and apart from these procedures, the Debtors are evaluating a business model whereby all or substantially all of the Debtors' owned MSRs are subserviced by a third-party or third parties.  To evaluate this alternative, the Debtors are soliciting proposals (the "**Subservicing Proposals**") for the sub-servicing of approximately $63 billion UPB of owned Forward MSRs consisting of FNMA, FHLMC, GNMA, Manufactured Housing ("**MH**") and Private Label Securities ("**PLS**").  Subservicing Proposals are requested to include (i) all material pricing and other economic subservicing terms, (ii) if any servicing operation, employees or assets are acquired or included in the transaction and (iii) a proposed servicing transfer schedule.  Parties who are interested in further information or would like to submit a Subservicing Proposal should contact the Debtors' investment bankers, Houlihan Lokey Capital, Inc. ("**Houlihan Lokey**") (Attn: Jeff Levine (JMLevine@HL.com), Jimmy Page (JPage@HL.com), and Dan Martin (DMartin@HL.com)).  Interested parties should submit a proposal to Houlihan Lokey no later than April 1, 2019 at 5:00 p.m. (ET), unless extended in writing by the Debtors.

WEIL:\96943990\1\41703.0008

(ii) intends to access the Data Room for a purpose consistent with these Bidding Procedures.

An interested party that meets the aforementioned requirements to the satisfaction of the Debtors shall be a "**Potential Bidder**." As soon as practicable, the Debtors will provide such Potential Bidder access to the Data Room; provided that, such access may be terminated by the Debtors in their reasonable discretion at any time for any reason whatsoever, including that a Potential Bidder does not become a Qualified Bidder or these Bidding Procedures are terminated.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate a Sale Transaction or an Asset Sale Transaction, as applicable.

Until the Bid Deadline, the Debtors will provide any Potential Bidder with reasonable access to the Data Room and any additional information requested by Potential Bidders (subject to any restrictions pursuant to applicable law) that the Debtors believe to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to the Debtors' investment bankers, Houlihan Lokey (Attn: Abraham Mercado (AMercado@HL.com) and Dan Martin (DMartin@HL.com)). Unless prohibited by law or otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder will cease if (i) the Potential Bidder does not become a Qualified Bidder, (ii) these Bidding Procedures are terminated, or (iii) the Potential Bidder breaches any obligations under its confidentiality agreement.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Debtors' assets to any person or entity who (i) is not a Potential Bidder, (ii) does not comply with the participation requirements set forth herein, or (iii) in the case of competitively sensitive information, is a competitor of the Debtors.

## Designation of Stalking Horse Bidders

Designation of Stalking Horse Bidders. The Debtors may designate one or more Stalking Horse Bidders and enter into Stalking Horse Agreements with such Stalking Horse Bidders. To the extent the Debtors designate a Stalking Horse Bidder with respect to any of the assets, the Debtors shall promptly upon execution of a Stalking Horse Agreement (and in no event more than one (1) calendar day following such execution) file with the Bankruptcy Court, serve on the Objection Notice Parties, and cause to be published on the website maintained by the Debtors' claims and noticing agent in these chapter 11 cases, located at Debtors' claims agent's website at http://dm.epiq11.com/Ditech, a notice that contains information about the Stalking Horse Bidder, the Stalking Horse Bid, and attaches the proposed Stalking Horse Agreement (the "**Notice of Stalking Horse Bidder**").

Stalking Horse Bid Protections. The Debtors may (i) establish initial overbid minimum and subsequent bidding increment requirements; (ii) offer each Stalking Horse Bidder a break-up fee in an amount agreed to by the Company in consultation with the Term Loan Ad Hoc Group and the official committee of unsecured creditors (a "**Termination Payment**"); (iii) provide that, if the Stalking Horse Bidder bids on certain assets at the Auction, the Stalking Horse Bidder will be entitled to a credit in the amount of its Termination Payment against the increased purchase price

5

for the assets; and (iv) provide other appropriate and customary protections to a Stalking Horse Bidder (the Termination Payment and the other bid protection described in this paragraph collectively are referred to as the "**Stalking Horse Bid Protections**").

<u>Objections to Designation of Stalking Horse Bidders</u>.  Any objections (each, a "**Stalking Horse Objection**") to the designation of a Stalking Horse Bidder, including any Stalking Horse Bid Protections pursuant to the terms and provisions of a Stalking Horse Agreement, must (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (iii) state with particularity the basis and nature of any objection; (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the Court (a) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (vi) be served upon the Objection Notice Parties[6] within ten (10) calendar days after the filing of the relevant Notice of Stalking Horse Bidder.

If a timely Stalking Horse Objection is filed and served in accordance with the preceding paragraph, the proposed Stalking Horse Bid Protections will not be deemed approved until either the Stalking Horse Objection is resolved by agreement of the objecting party and the Debtors or by order of the Bankruptcy Court.

If no timely Stalking Horse Objection is filed and served with respect to an applicable Stalking Horse Agreement in accordance with the Bidding Procedures, the Stalking Horse Bid Protections shall be deemed approved without further order of the Court upon the expiration of the objection deadline.

For all purposes under the Bidding Procedures, any Stalking Horse Bidder approved as such pursuant to this Order shall be considered a Qualified Bidder, and the applicable Stalking Horse Bid shall be considered a Qualified Bid.  In the event that the applicable Stalking Horse Bid is the only Qualified Bid received by the Debtors in respect of the applicable assets by the Bid Deadline,

---

[6]     As defined in the Bidding Procedures Order, the Objection Notice Parties include: (a) Ditech Holding Corporation, et al., 3000 Bayport Drive, Suite 985, Tampa, Florida 33607 (Attn: John Haas); (b) William K. Harrington, U.S. Department of Justice, Office of the U.S. Trustee, 201 Varick Street, Room 1006, New York, New York 10014 (Attn: Greg M. Zipes and Benjamin J. Higgins); (c) Proposed counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C. and Sunny Singh); (d) Counsel to the Prepetition Administrative Agent, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Brian M. Resnick and Michelle M. McGreal); (e) Counsel to the Term Loan Ad Hoc Group, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654 (Attn: Patrick J. Nash and John Luze); (f) Counsel to the DIP Agent and DIP Lender, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, New York 10036 (Attn: Sarah M. Ward, Mark A. McDermott, and Melissa Tiarks); (g) Counsel to Nomura Corporate Funding Americas, LLC, Jones Day, 250 Vesey Street, New York, New York 10281 (Attn: Ben Rosenblum); and (h) Proposed Counsel to the Creditors' Committee, Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, New York 10017 (Attn: Robert J. Feinstein, Bradford J. Sandler, and Steven W. Golden), and Rich Michaelson Magaliff, LLP, 335 Madison Avenue, 9th Floor, New York, New York 10017 (Attn: Robert N. Michaelson and Elwood F. Collins).

the applicable Stalking Horse Bidder shall be deemed the Successful Bidder with respect to the applicable assets.

## Non-Binding Indications of Interest

Parties interested in purchasing any of the Debtors' assets, whether as part of a Sale Transaction or an Asset Sale Transaction, are encouraged to submit an indication of interest to the Debtors by **April 15, 2019 at 4:00 p.m. (ET)** in writing expressing their interest and identifying the assets in which they are expressing such interest (each a "**Non-Binding Indication of Interest**"). Non-Binding Indications of Interest should be sent to the Debtors' investment bankers, Houlihan Lokey (Attn: Reid Snellenbarger (RSnellenbarger@HL.com), Jeff Levine (JMLevine@HL.com), Jimmy Page (JPage@HL.com), and Dan Martin (DMartin@HL.com) and Ditechbids@weil.com).

Submitting a Non-Binding Indication of Interest by the deadline listed herein does not obligate the interested party to consummate a transaction, submit a formal bid or to participate in the bidding process. It also does not exempt such party from having to submit a Qualified Bid by the applicable Bid Deadline (as defined below) or comply with these Bidding Procedures to participate in any subsequent Auction for the assets on which such party is indicating an interest, all as described below.

## Bid Deadline

A Potential Bidder that desires to make a bid on any of the Debtors' assets shall deliver electronic copies of its bid so as to be received no later than **May 6, 2019 at 4:00 p.m. (ET)** (the "**Bid Deadline**"); provided that, the Debtors may extend the Bid Deadline without further order of the Bankruptcy Court subject to providing notice to all Potential Bidders and any Stalking Horse Bidders. **The submission of a bid by the Bid Deadline shall constitute a binding and irrevocable offer to acquire the assets specified in such bid.** Any party that does not submit a bid by the Bid Deadline will not be allowed to (i) submit any offer after the Bid Deadline or (ii) participate in any Auction.

Bids should be submitted by email to the following Debtor representatives:

| Weil, Gotshal & Manges LLP | Houlihan Lokey Capital, Inc. |
| --- | --- |
| Ditechbids@weil.com | Reid Snellenbarger |
| Ray C. Schrock, P.C. | (RSnellenbarger@HL.com) |
| (Ray.Schrock@weil.com) | Jeff Levine |
| Frederick Green | (JMLevine@HL.com) |
| (Frederick.Green@weil.com) | Jimmy Page |
| Sunny Singh | (JPage@HL.com) |
| (Sunny.Singh@weil.com) | Dan Martin |
| Amanda Fenster | (DMartin@HL.com) |
| (Amanda.Fenster@weil.com) | |
| Alexander W. Welch | |
| (Alexander.Welch@weil.com) | |

WEIL:\96943990\1\41703.0008

# Consultation Parties

Throughout the bidding process, the Debtors and their advisors will regularly and timely consult with the following parties (collectively, the "**Consultation Parties**"):

     i.    the Term Loan Ad Hoc Group and its advisors, Kirkland & Ellis LLP and FTI Consulting, Inc.;

    ii.    Barclays Bank PLC, in its capacity as DIP Agent, Barclays Capital Inc., in its capacity as DIP lender, and their advisors, Skadden, Arps, Slate, Meagher & Flom LLP;

   iii.    Nomura Corporate Funding Americas, LLC, in its capacity as DIP lender and its advisors, Jones Day LLP;

   iv.    the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases and its advisors, Pachulski Stang Ziehl & Jones LLP, Rich Michaelson Magaliff, LLP, and Goldin & Associates, LLC;

    v.    Fannie Mae and its advisors, O'Melveny & Myers LLP;

   vi.    Freddie Mac and its advisors, McKool Smith PC; and

  vii.    Ginnie Mae and its advisors.

The Debtors shall promptly provide copies of all Bids and Non-Binding Indications of Interest received by the Debtors to the Consultation Parties, but in no event later than the next calendar day after such Bid or Non-Binding Indications of Interest is received; provided that the Consultation Parties must treat such Bids or Non-Binding Indications of Interest and any related information as confidential and shall not publicly disclose such information without the written consent of the Debtors and the applicable Bidder.

The Debtors shall not consult with or provide copies of Bids regarding any assets to any Consultation Party pursuant to the terms of these Bidding Procedures if such party has a Bid for such assets pending, or expressed any written interest in bidding for any of the assets; provided, that if such Consultation Party chooses not to submit any Bid, then such party may receive copies of all Bids following expiration of the latest possible Bid Deadline (as such Bid Deadline may be extended by the Debtors pursuant to the terms of these Bidding Procedures). Notwithstanding the foregoing, if a member of the Creditors' Committee submits a Qualified Bid, the Creditors' Committee will maintain its consultation rights as a Consultation Party; provided that the Creditors' Committee shall exclude such member from any discussions or deliberations regarding a transaction involving the applicable assets, and shall not provide any confidential information regarding the assets or a transaction involving the assets to the bidding committee member.

For the avoidance of doubt, any consultation rights afforded to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their reasonable business judgment. Rights that Consultation Parties may have pursuant to the terms of other agreements or

WEIL:\96943990\1\41703.0008

orders of the Court shall not be affected by these Bidding Procedures or the Bidding Procedures Order.

## Form and Content of Qualified Bid

A bid is a signed document from a Potential Bidder received by the Bid Deadline that identifies the purchaser by its legal name and any other party that will be participating in connection with the bid (a "**Bid**"). To constitute a "**Qualified Bid**" a Bid must include, at a minimum, the following:

    i.    <u>Acquired Assets</u>. Each Bid must clearly identify, in writing and as applicable, the particular assets the Potential Bidder seeks to acquire from the Debtors, including any contracts and leases of the Debtors that would be assumed and assigned in connection with a proposed Sale Transaction or Asset Sale Transaction, as applicable. With respect to a bid for multiple assets or all of the Debtors' assets, each Bid must clearly state the allocation of value in U.S. dollars that the Potential Bidder associates with the Forward Mortgage Origination Business, the Forward Mortgage Servicing Business, and the Reverse Mortgage Servicing Business, including a description of any significant assumptions on which such valuation is based. For the avoidance of doubt, a Qualified Bid may include a bid for less than all or substantially all of the Debtors' assets.[7]

    ii.    <u>Purchase Price; Form of Consideration; Cash Requirements; Assumed Liabilities; Credit Bid</u>. Each Bid must clearly set forth, as applicable:

        (a)    <u>Purchase Price</u>. Each Bid must clearly identify the purchase price to be paid (the "**Purchase Price**"), and whether the Bid is based on an all-cash offer or consists of certain non-cash components, including, without limitation, a Credit Bid and/or the assumption of liabilities;

        (b)    <u>Cash Requirements</u>. Each Bid must provide sufficient cash consideration for the payment of any applicable Termination Payment in cash in full. Any Credit Bid (as defined herein) must include a cash component sufficient to pay any applicable Termination Payment and all obligations secured by senior liens on the applicable assets;

        (c)    <u>Assumed Liabilities</u>. Each Bid must clearly identify, in writing and as applicable, the particular liabilities, if any, the Bidder seeks to assume. For the avoidance of doubt, a

---

[7]    A Qualified Bid may include a bid for less than all or substantially all of the Debtors' assets. The Debtors shall consider such Qualified Bids as long as the Debtors have an acceptable sale, restructuring or other solution for any excluded assets.

Qualified Bid may include a bid for less than all or substantially all of the Debtors' liabilities; and

(d)       <u>Credit Bid</u>.  Persons or entities holding a perfected security interest in the assets specified in the Bid may seek to submit a credit bid (a "**Credit Bid**"), to the extent permitted by applicable law and the documentation governing the Debtors' prepetition or postpetition secured credit facilities, and subject to any applicable limitations set forth in the Prepetition Intercreditor Agreement.[8]

iii.    <u>Proposed APA</u>.  Each Bid must include an executed asset purchase agreement (the "**Proposed APA**") for the assets included in such Bid, together with a redline comparing the Proposed APA to the form APA distributed by the Debtors to Potential Bidders.

iv.    <u>Unconditional Offer</u>.  A statement that the Bid is formal, binding, and unconditional, is not subject to any further due diligence or financing contingency, and is irrevocable until the Debtors notify the Potential Bidder that such Bid is not a Successful Bid or a Back-Up Bid, or until the first business day after the close of a Sale Transaction or an Asset Sale Transaction, as applicable.

v.    <u>Proof of Financial Ability to Perform</u>.  Each Bid must contain such financial and other information that allows the Debtors to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate a Sale Transaction or an Asset Sale Transaction, as applicable, including, without limitation, such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party.  Without limiting the foregoing, such information must include current financial statements or similar financial information certified to be true and correct as of the date thereof, proof of financing commitments if needed to consummate the transaction (not subject to, in the Debtors' discretion, any unreasonable conditions), contact information for verification of such information, including any financing sources, and any other information reasonably requested by the Debtors necessary to demonstrate that such Potential Bidder has the ability to

---

[8]  "Prepetition Intercreditor Agreement" means the "Intercreditor Agreement" as defined in that certain Second Amended and Restated Credit Agreement, dated as of February 9, 2018 (and as amended by that certain Amendment No. 1 to Second Amended and Restated Credit Agreement, dated as of March 29, 2018), among Ditech, as the borrower, the Prepetition Administrative Agent and the other lenders party thereto, as amended, modified, or supplemented from time to time prior to the Commencement Date.  Capitalized terms used in this footnote but not otherwise defined herein shall have the meaning ascribed to such terms in the *Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, dated March 5, 2019 (as may be amended, modified, or supplemented).

WEIL:\96943990\1\41703.0008

consummate a Sale Transaction or an Asset Sale Transaction, as applicable, in a timely manner.

vi.   Designation of Contracts and Leases.   Each Bid must identify with particularity each and every executory contract and unexpired lease, the assumption and assignment of which is a condition to closing a Sale Transaction or an Asset Sale Transaction, as applicable; provided that, the Bid may allow for the Potential Bidder to remove executory contracts and unexpired leases from the list of contracts to be assumed and assigned any time prior to the closing of a Sale Transaction or an Asset Sale Transaction, as applicable; provided further, that to the extent the Debtors identify any additional executory contracts or unexpired leases after the Bid is submitted, the Bid may allow for the Potential Bidder to add such executory contracts and unexpired leases to the list of contracts to be assumed and assigned any time from and after the Bid is submitted.

vii.  Required Approvals.   A statement or evidence (i) that the Potential Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, or other antitrust laws, as applicable, and pay the fees associated with such filings; (ii) of the Potential Bidder's plan and ability to obtain all requisite governmental, regulatory, or other third-party approvals, including, among others, any licenses and approvals required by Freddie Mac, Fannie Mae, Ginnie Mae, the Federal Housing Finance Agency, and HUD, and the proposed timing for the Potential Bidder to undertake the actions required to obtain such approvals; and (iii) that the Bid is reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors.   A Potential Bidder further agrees that its legal counsel will coordinate in good faith with Debtors' legal counsel to discuss and explain such Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable.

viii. Authorization.   Each Bid must include evidence of corporate authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of a Bid, participation in the Auction, and closing of the transactions contemplated by the Potential Bidder's Proposed APA in accordance with the terms of the Bid and these Bidding Procedures.

ix.   No Entitlement to Expense Reimbursement or Other Amounts.   With the exception of any Stalking Horse Bid, expressly state that the Bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement, and a waiver of any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to the bidding process.

WEIL:\96943990\1\41703.0008

x.      <u>Joint Bids</u>. The Debtors may approve joint Bids in their reasonable discretion on a case-by-case basis.

xi.      <u>Representations and Warranties</u>. Each Bid must include the following representations and warranties:

        a.      a statement that the Potential Bidder has had an opportunity to conduct any and all due diligence regarding the applicable assets prior to submitting its Bid;

        b.      a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Potential Bidder's Proposed APA ultimately accepted and executed by the Debtors;

        c.      a statement that the Potential Bidder agrees to serve as Back-Up Bidder, if its Bid is selected as the next or highest or next best bid after the Successful Bid with respect to the applicable assets;

        d.      a statement that the Potential Bidder has not engaged in any collusion with respect to the submission of its Bid; and

        e.      a statement that the Potential Bidder agrees to be bound by the terms of the Bidding Procedures.

A Potential Bidder must also accompany its Bid with:

xii.      a cash deposit in the amount of ten percent (10%) of the Purchase Price (a "**Good Faith Deposit**"); <u>provided</u> <u>that</u>, a Potential Bidder submitting a Credit Bid will not be required to accompany its Bid with a Good Faith Deposit for any portion of the Purchase Price that is a Credit Bid, but shall be required to provide a good Faith Deposit for any portion of its Bid that is not a Credit Bid.

xiii.      the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the Bid submitted by the Potential Bidder.

xiv.      a covenant to cooperate with the Debtors to provide pertinent factual information regarding the Potential Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements.

WEIL:\96943990\1\41703.0008

xv.    if the value of a Bid includes additional non-cash components, a detailed analysis of the value of any additional non-cash component of the Bid and back-up documentation to support such value.

### Good Faith Deposit

A Good Faith Deposit must be deposited, prior to the Bid Deadline, with an escrow agent selected by the Debtors (the "**Escrow Agent**") pursuant to an escrow agreement to be provided by the Debtors. To the extent a Qualified Bid is modified before, during, or after the Auction, the Debtors reserve the right to require that such Qualified Bidder adjust its Good Faith Deposit so that it equals ten percent (10%) of the Purchase Price. If a Qualified Bidder is required to adjust its Good Faith Deposit, its status as a Qualified Bidder shall be suspended pending satisfaction of such adjustment.

### Review of Bids; Designation of Qualified Bids

The Debtors, in consultation with the Consultation Parties, will evaluate Bids that are timely submitted and may engage in negotiations with Potential Bidders who submitted Bids as the Debtors deem appropriate in the exercise of their business judgment, based upon the Debtors' evaluation of the content of each Bid.

A Bid received for the assets that is determined by the Debtors, in consultation with the Consultation Parties, to meet the requirements set forth herein will be considered a "**Qualified Bid**" and any bidder that submits a Qualified Bid (including any Stalking Horse Bid) will be considered a "**Qualified Bidder**."

By no later than **May 10, 2019** (the "**Qualified Bid Deadline**"), the Debtors shall determine, in their reasonable judgment, and in consultation with the Consultation Parties, which of the Bids received by the Bid Deadline qualifies as a Qualified Bid. The Debtors shall notify each Bidder who submits a Qualified Bid of its status as a Qualified Bidder by the Qualified Bid Deadline.

In evaluating the Bids, the Debtors may take into consideration the following non-binding factors:

1.    the amount of the purchase price and Credit Bid and/or other non-cash consideration, as applicable, set forth in the Bid (provided that for purposes of evaluating competing bids, every dollar of a Credit Bid shall be treated the same as a dollar from a cash or other non-cash Bid, and a Credit Bid shall not be considered inferior to a comparable cash or other non-cash Bid because it is a Credit Bid);

2.    the assets included in or excluded from the Bid, including any executory contracts or leases proposed to be assumed;

3.    the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates, taking into account any Stalking Horse Bidder's rights to any Termination Payment;

4.    any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities;

WEIL:\96943990\1\41703.0008

5. the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals;

6. the impact on employees and employee claims against the Debtors;

7. the impact on trade creditors; and

8. any other factors the Debtors may reasonably deem relevant consistent with their fiduciary duties.

The Debtors reserve the right, after consulting with the Consultation Parties, to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid. The Debtors may, after consulting with the Consultation Parties, amend or waive the conditions precedent to being a Qualified Bidder at any time, in their reasonable business judgment and in consultation with the Consultation Parties, in a manner consistent with their fiduciary duties and applicable law (as reasonably determined in good faith by the Debtors in consultation with their legal counsel).

The Debtors, in consultation with the Consultation Parties, may accept a single Bid or multiple partial Bids for non-overlapping assets such that, if taken together, such multiple partial bids would otherwise meet the standards for a single Qualified Bid as to any assets or combinations of assets that the Debtors determine to auction (in which event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the Auction).

Without the written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid for the Debtors during the period that such Qualified Bid remains binding as specified herein; provided that, any Qualified Bid may be improved at the Auction as set forth in these Bidding Procedures.

The Debtors, in consultation with the Consultation Parties, shall make a determination regarding the following:

(A) the assets and/or any combination of assets to be auctioned by the Debtors; and

(B) which Bids have been determined to be Qualified Bids and the applicable assets relating to such Qualified Bid.

Notwithstanding anything herein to the contrary, (a) the DIP Credit Parties (as defined in the DIP Order),[9] as applicable, shall be deemed to be Qualified Bidders with respect to any Credit Bid of

---

[9] The "**DIP Order**" means the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 507, 546, 548, 555, 559, 560 and 561 (A) Authorizing Debtors to Enter Into Repurchase Agreement Facilities, Servicer Advance Facilities and Related Documents; (B) Authorizing Debtors to Sell Mortgage Loans and Servicer*

WEIL:\96943990\1\41703.0008

the DIP Obligations (as defined in the DIP Order); (b) any Credit Bid of DIP Obligations submitted by the applicable DIP Credit Parties shall be deemed to be a Qualified Bid; and (c) the DIP Credit Parties shall have the right to Credit Bid any portion and up to the entire amount of the outstanding DIP Obligations at or before the Auction pursuant to section 363(k) of the Bankruptcy Code with respect to the collateral securing the DIP Obligations.

### Failure to Receive Qualified Bids For Substantially Similar Assets

If no Qualified Bid (other than the applicable Stalking Horse Bid, if any) is received by the Qualified Bid Deadline, the Debtors will not conduct the Auction, and shall file a notice with the Bankruptcy Court indicating that no Auction will be held. The Debtors shall also publish such notice on the website of their claims and noticing agent, Epiq Corporate Restructuring, LLC (http://dm.epiq11.com/Ditech).

### Auction Procedures

If the Debtors receive two or more Qualified Bids for substantially the same assets, the Debtors may, in their business judgment, conduct the Auction on **May 13, 2019**, **beginning at 10:00 a.m. (ET) at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153**. Only a Qualified Bidder will be eligible to participate at the Auction, subject to such limitations as the Debtors may impose in good faith. In addition, professionals and/or other representatives of the Debtors and the Consultation Parties shall be permitted to attend and observe the Auction. Each Qualified Bidder shall be required to confirm, both before and after the Auction, that it has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction.

The Debtors may adopt rules for the Auction at any time that the Debtors reasonably determine to be appropriate to promote a spirited and robust auction. Any rules developed by the Debtors will provide that all bids in the Auction will be made and received on an open basis, and all other bidders participating in the Auction will be entitled to be present for all bidding with the understanding that the true identity of each bidder placing a bid at the Auction will be fully disclosed to all other bidders participating in the Auction and that all material terms of a bid submitted in response to any successive bids made at the Auction will be disclosed to all other bidders. Each Qualified Bidder will be permitted what the Debtors reasonably determine to be an appropriate amount of time to respond to the previous bid at the Auction. The Auction will be conducted openly and shall be transcribed or recorded.

The Debtors may, in their discretion, identify the highest or otherwise best Qualified Bid as the successful bid (a "**Successful Bid**" and the bidder submitting such bid, a "**Successful Bidder**"). The Debtors may also identify a Qualified Bidder that submitted the next highest or otherwise best Qualified Bid as a back-up bid (a "**Back-Up Bid**" and the bidder submitting such bid, a "**Back-Up Bidder**"). A Back-Up Bid shall remain open and irrevocable until the earliest to occur of (i)

---

*Advance Receivables in the Ordinary Course of Business; (C) Granting Back-Up Liens and Superpriority Administrative Expense Claims; (D) Authorizing Use of Cash Collateral and Granting Adequate Protection; (E) Modifying the Automatic Stay; (F) Scheduling a Final Hearing; and (G) Granting Related Relief* [ECF No. 53].

consummation of a Sale Transaction or an Asset Sale Transaction, as applicable, with the Successful Bidder and (ii) the release of such Back-Up Bid by the Debtors in writing (such date, the "**Back-Up Bid Expiration Date**").  If a Sale Transaction or an Asset Sale Transaction, as applicable, with a Successful Bidder is terminated prior to the Back-Up Bid Expiration Date, the Back-Up Bidder shall be deemed a Successful Bidder and shall be obligated to consummate the Back-Up Bid as if it were a Successful Bid.  Provided, however, that the Debtors are not required to accept any bid or designate a Successful Bidder or Back-Up Bidder.

Within one (1) business day after the Auction, a Successful Bidder shall submit to the Debtors fully executed documentation memorializing the terms of a Successful Bid.  A Successful Bid may not be assigned to any party without the consent of the Debtors.

At any time before entry of an order approving an applicable Sale Transaction or Asset Sale Transaction envisioned by a Qualified Bid, the Debtors reserve the right to and may reject such Qualified Bid if such Qualified Bid, in the Debtors' judgment, is: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the applicable Sale Transaction or Asset Sale Transaction; or (iii) contrary to the best interests of the Debtors and their estates.

### Post-Auction Process

Within one (1) business day after the conclusion of the Auction, or as soon as reasonably practicable thereafter, the Debtors shall file with the Bankruptcy Court a notice of a Successful Bid, Successful Bidder, Back-Up Bid, and Back-Up Bidder.  Unless otherwise required pursuant to the Debtors' fiduciary duties, the Debtors shall not consider any bids submitted after the conclusion of the Auction.

Within seven (7) days after the Auction, the Debtors shall direct the Escrow Agent to return the deposit of any bidder, together with interest accrued thereon, who is not declared a Successful Bidder or Back-Up Bidder.  Within five (5) days after the Back-Up Bid Expiration Date, the Debtors shall direct the Escrow Agent to return the deposit of a Back-Up Bidder, together with interest accrued thereon (if any).  Upon the authorized return of any such deposit, the bid of such Potential Bidder, Qualified Bidder or Back-Up Bidder, as applicable, shall be deemed revoked and no longer enforceable.

A Successful Bidder's deposit shall be applied against the cash portion of the purchase price of such bidder's Successful Bid upon the consummation of a Sale Transaction or an Asset Sale Transaction, as applicable.

In addition to the foregoing, the deposit of a Qualified Bidder will be forfeited to the Debtors if (i) the Qualified Bidder attempts to modify, amend, or withdraw its Qualified Bid, except as permitted herein, during the time the Qualified Bid remains binding and irrevocable or (ii) the Qualified Bidder is selected as a Successful Bidder or Back-Up Bidder and refuses or fails to enter into the required definitive documentation or to consummate a Sale Transaction or an Asset Sale Transaction, as applicable, according to these Bidding Procedures.

WEIL:\96943990\1\41703.0008

## Notices Regarding Assumption and Assignment

The Debtors shall provide all notices regarding the proposed assumption and assignment of contracts and leases in accordance with the Assumption and Assignment Procedures included in the Bidding Procedures Order.

## Sale and Confirmation Hearing

If the Debtors elect to proceed with a Sale Transaction or an Asset Sale Transaction, the Debtors will seek the entry of an order authorizing and approving, among other things, the Sale Transaction or Asset Sale Transaction, as applicable, in which the Debtors' assets will be sold to the applicable Successful Bidder in connection with the Debtors' chapter 11 plan (the "**Plan**"), at a hearing before the Bankruptcy Court on **June 5, 2019 at 11:00 a.m. (ET)** (the "**Sale and Confirmation Hearing**"). Any Sale Transaction or Asset Sale Transaction approved by the Bankruptcy Court will be implemented pursuant and subject to the terms of the Plan. The Debtors, in the exercise of their business judgment, may adjourn the Sale and Confirmation Hearing without notice or with limited and shortened notice to parties, including by (i) an announcement of such adjournment at the Sale and Confirmation Hearing or at the Auction or (ii) the filing of a notice of adjournment with the Bankruptcy Court prior to the commencement of the Sale and Confirmation Hearing.

Objections to a Sale Transaction or Asset Sale Transaction, including any objection to the sale of the Debtors' assets free and clear of liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code (each, a "**Sale Objection**"), shall (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the Court (a) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (vi) be served upon the Objection Notice Parties (as defined in the in the Bidding Procedures Order) by **May 24, 2019 at 4:00 p.m. (ET)** (the "**Sale Objection Deadline**"); provided that, the Debtors may extend the Sale Objection Deadline, as the Debtors deem appropriate in the exercise of their reasonable business judgment. If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the Sale and Confirmation Hearing.

A Successful Bidder shall appear at the Sale and Confirmation Hearing and be prepared to have a representative(s) testify in support of the Successful Bid and such Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and/or assigned as part of the proposed transaction.

Any party who fails to file with the Court and serve on the Objection Notice Parties a Sale Objection by the Sale Objection Deadline may be forever barred from asserting, at the Sale and Confirmation Hearing or thereafter, any Sale Objection to the relief requested in the Motion with

WEIL:\96943990\1\41703.0008

regard to a Successful Bidder, or to the consummation and performance of a Sale Transaction or or an Asset Sale Transaction, as applicable, contemplated by an asset purchase agreement between the Debtors and a Successful Bidder, including the transfer of assets to a Successful Bidder, free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code. Failure to object shall constitute consent for the purposes of section 363(f)(2) of the Bankruptcy Code.

## Consent to Jurisdiction and Authority as Condition to Bidding

All bidders that participate in the bidding process shall be deemed to have (i) consented to the core jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way related to these Bidding Procedures, the bid process, the Auction, the Sale and Confirmation Hearing, or the construction and enforcement of any agreement or any other document relating to an applicable Sale Transaction or Asset Sale Transaction; (ii) waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the bid process, the Auction, the Sale and Confirmation Hearing, or the construction and enforcement of any agreement or any other document relating to an applicable Sale Transaction or Asset Sale Transaction; and (iii) consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the Sale and Confirmation Hearing, or the construction and enforcement of any agreement or any other document relating to an applicable Sale Transaction or Asset Sale Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

## Reservation of Rights

The Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, to modify these Bidding Procedures; waive terms and conditions set forth herein with respect to all Potential Bidders; extend the deadlines set forth herein; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth herein; and provide reasonable accommodations to any Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on any assets, in each case, to the extent not materially inconsistent with these Bidding Procedures and the Bidding Procedures Order. **The Debtors shall not be obligated to consummate or pursue any transaction with respect to any asset**.

WEIL:\96943990\1\41703.0008

## SCHEDULE 7

## Form of Cure Notice

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
:
In re                            :       **Chapter 11**
:
**DITECH HOLDING CORPORATION,** *et al.*,   :       **Case No. 19-10412 (JLG)**
:
**Debtors.**[1]           :       **(Jointly Administered)**
:
---------------------------------------------------------------X

## NOTICE OF CURE COSTS AND POTENTIAL
## ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES OF DEBTORS AS PART OF SALE TRANSACTION

Ditech Holding Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are seeking to conduct a bidding process for the sale of any and all of their assets pursuant to a motion, dated [_____] [ECF No. __] (the "**Motion**").

By order, dated [_____] [ECF No. __] (the "**Bidding Procedures Order**"),[2] the Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") approved certain bidding procedures (the "**Bidding Procedures**") that govern the sale of any and all of the Debtors' assets to the highest or otherwise best bidder.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU MAY BE A PARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT COULD BE ASSUMED AND ASSIGNED TO A SUCCESSFUL BIDDER IN CONNECTION WITH THE SALE OF THE DEBTORS' ASSETS**.

In accordance with the Assumption and Assignment Procedures and the Bidding Procedures Order, the Debtors may, in connection with a Sale Transaction or an Asset Sale Transaction, as applicable, with a Successful Bidder (as defined in the Bidding Procedures) seek

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order or the Motion.

to assume and assign to the Successful Bidder certain executory contracts and unexpired leases of the Debtors (the "**Assigned Contracts**") in connection with the sale of the Debtors' assets.

Each of the Assigned Contracts that may be assumed and assigned in connection with a Sale Transaction or an Asset Sale Transaction, as applicable, with a Successful Bidder and the Debtors' calculation of the Cure Costs with respect thereto are set forth on **Exhibit A** hereto. The Cure Costs are the only amounts proposed to be paid upon the assumption and assignment of the Assigned Contracts.

The inclusion of any contract or lease on **Exhibit A** shall not constitute or be deemed a determination or admission by the Debtors that such contract or other document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Notwithstanding the inclusion of any lease or contract on **Exhibit A**, a Successful Bidder is not bound to accept assignment of any Assigned Contract, and may amend the schedule of Assigned Contracts to remove any contract or lease at any time prior to the consummation of a Sale Transaction or an Asset Sale Transaction (each as defined in the Motion).

## Objections

### A. Cure Objections

14. Any objection to the proposed assumption, assignment, or potential designation of an Assigned Contract identified on Exhibit A, the subject of which objection is the Debtors' proposed Cure Costs must:

(a)     be in writing;

(b)     state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party;

(c)     state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection;

(d)     conform to the Bankruptcy Rules and the Local Rules;

(e)     be filed with the Court together with proof of service either (i) electronically or (ii) conventionally, as noted below:

(i)     *Electronic Filing*: the filer must be an attorney in possession of passwords and logins to both PACER and the Bankruptcy Court's Electronic Case Filing System; electronic filing must be in accordance with General Order M-399 (which can be found at http://nysb.uscourts.gov); or

(ii)     *Conventional Filing*: the filer must send the response or objection by mail, courier, or messenger to the Bankruptcy Court's clerk at the following address: United States Bankruptcy Court, One Bowling Green, New York, NY 10004; the hard copy of the response or

2

objection should be accompanied by a CD-ROM containing the response or objection in text-searchable portable document format (PDF); and

(iii) *All filers* – those filing electronically as well as those filing conventionally – must provide Bankruptcy Court Chambers with two separate, single-sided hard copies of the response or objection; any proposed order should be accompanied by a CD-ROM containing the response or objection in text searchable portable document format (PDF); and

(f) be served upon the following parties in accordance with General Order M-399 so as to be received no later than [_____] **at 4:00 p.m. (prevailing Eastern Time)**:

*Debtors*
Ditech Holding Corporation, et al.
3000 Bayport Drive
Suite 985
Tampa, Florida 33607
Attn:  John Haas

*Office of the U.S. Trustee*
William K. Harrington, U.S. Department of Justice
Office of the U.S. Trustee
201 Varick Street, Room 1006
New York, New York 10014
Attn:  Greg M. Zipes
         Benjamin J. Higgins

*Proposed Counsel to the Debtors*
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn:  Ray C. Schrock, P.C.
         Sunny Singh

*Counsel to the Prepetition Administrative Agent*
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
Attn: Brian M. Resnick
        Michelle M. McGreal

*Counsel to the Term Loan Ad Hoc Group*
Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Attn:  Patrick J. Nash
         John Luze

*Counsel to the DIP Agent and DIP Lender*
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, New York 10036
Attn: Sarah M. Ward
        Mark A. McDermott
        Melissa Tiarks

3

| | |
|---|---|
| ***Counsel to Nomura Corporate Funding Americas, LLC*** | ***Proposed Counsel to the Creditors' Committee*** |
| Jones Day | Pachulski Stang Ziehl & Jones LLP |
| 250 Vesey Street | 780 Third Avenue, 34th Floor |
| New York, New York 10281 | New York, New York 10017 |
| Attn: Ben Rosenblum | Attn: Robert J. Feinstein |
| | Bradford J. Sandler |
| | Steven W. Golden |

and

Rich Michaelson Magaliff, LLP
335 Madison Avenue, 9th Floor
New York, New York 10017
Attn: Robert N. Michaelson
Elwood F. Collins

**IF A COUNTERPARTY FAILS TO FILE WITH THE BANKRUPTCY COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY CURE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO THE AMOUNT TO CURE ANY DEFAULT UNDER THE APPLICABLE ASSIGNED CONTRACT. THE CURE COSTS SET FORTH ON EXHIBIT A HERETO SHALL BE CONTROLLING AND WILL BE THE ONLY AMOUNT NECESSARY TO CURE OUTSTANDING DEFAULTS UNDER THE APPLICABLE ASSIGNED CONTRACT UNDER BANKRUPTCY CODE SECTION 365(B), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE ASSIGNED CONTRACT, OR ANY OTHER DOCUMENT, AND THE APPLICABLE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT TO SUCH ASSIGNED CONTRACT AGAINST THE DEBTORS, ANY SUCCESSFUL BIDDER, OR THE PROPERTY OF ANY OF THEM.**

### B. Adequate Assurance Objections

Adequate Assurance Objections with respect to the assumption and assignment of any Assigned Contracts identified on Exhibit A to a Successful Bidder must be filed in accordance with the preceding paragraph by **[_____] at 4:00 p.m. (ET).**

**IF A COUNTERPARTY FAILS TO FILE WITH THE BANKRUPTCY COURT AND SERVE ON THE OBJECTION RECIPIENTS A TIMELY ADEQUATE ASSURANCE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE OF THE APPLICABLE ASSIGNED CONTRACT. THE SUCCESSFUL BIDDER SHALL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE APPLICABLE ASSIGNED CONTRACT IN ACCORDANCE WITH BANKRUPTCY CODE SECTION**

4

**365(F)(2)(B), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE ASSIGNED CONTRACT OR ANY OTHER DOCUMENT.**

### Sale and Confirmation Hearing

The Debtors will seek to assume and assign the Assigned Contracts at a hearing (the "**Sale and Confirmation Hearing**") that is scheduled to commence on **[_____] at [____] (ET)** before the Honorable James L. Garrity, Jr., in Room 601 of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), One Bowling Green, New York, New York 10004. Objections, if any, will be heard at the Sale and Confirmation Hearing or at a later hearing, as determined by the Debtors in accordance with the Bidding Procedures Order.

### Additional Information

Copies of the Motion, the Bidding Procedures Order, and the Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by the Debtors' claims and noticing agent, Epiq Corporate Restructuring, LLC (http://dm.epiq11.com/Ditech).


Dated: _____, 2019

                                          _____
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

WEIL:\96943990\1\41703.0008