**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| DITECH HOLDING CORPORATION, et al[1]., | ) | Case No. 19-10412 (JLG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |

# THE GEARY CLASS ACTION'S PROTECTIVE
# MOTION FOR DERIVATIVE STANDING TO BRING
# CERTAIN CLAIMS AND FOR AN EXTENSION
# OF TIME TO FORMALIZE CLAIMS AFTER INITIAL DISCOVERY

Now comes the GEARY CLASS ACTION ("GCA") and sets forth below its REQUEST FOR DERIVATIVE STANDING to file an adversary proceeding under Fed. R. Bankr. P. 7001 and/or contested matter under Fed. R. Bankr. P. 9014 against creditors of joint-Debtor, Ditech Financial, LLC ("DF") known as:

**CREDIT SUISSE AG,**
CAYMAN ISLANDS BRANCH
AGENT FOR CREDITOR PARTIES TO
SECOND AMENDED AND RESTATED
CREDIT AGREEMENT DATED 2/9/2018
ATTN: MEGAN E KANE
CREDIT SUISSE SERVICES (USA) LLC
ONE MADISON AVE
NEW YORK, NY 10010

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Matrix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

1

Based upon a preliminary investigation, the GCA believes that adversary proceedings or contested matters could involve the following:

1.  An adversary proceeding to require said creditors to establish the validity, extent and priority of their liens in the assets and property of DF;

2.  An adversary proceeding that seeks to avoid the lien rights of said creditors that are unperfected in the assets and property of DF;

3.  An adversary proceeding that seeks to avoid the fixing of any perfected lien rights of said creditors as fraudulent transfers or insider preferences under 11 U.S.C. §§544, 547, 548, 550 and 551;

4.  An adversary proceeding that seeks to recover to recover any payments made to said creditors within ninety (90) days and possibly up to 1-year prior to the date of filing of these Chapter 11 cases as preferences under 11 U.S.C. §§547, 550 and 551;

5.  An adversary proceeding or contested matter, to the extent leave to obtain individual standing is required, which seeks to engage in a recharacterization analysis to determine if said creditors' have debts, secured or otherwise, or whether the original advances made by such creditors were in the nature of equity; and

6.  An adversary proceeding or contested matter, to the extent leave to obtain individual standing is required, which seeks to equitably subordinate said creditors' rights and interests under 11 U.S.C. §510

## PRELIMINARY STATEMENT

DF filed Chapter 11 on 2/11/2019 together with numerous other entities who were said to operate under the corporate umbrella of Ditech Holding Corporation ("DHC"). ECF 1 (Case No. 19-10414-JLG). Three days prior thereto, DF was further said to be a co-signatory to a

Restructuring Support Agreement ("RSA") with certain unnamed creditors, collectively described as "Term Lenders", whose administrative agent, was Credit Suisse, AG. ECF 2 Dec. of G. Lombardo pg. 74-96. Pursuant to the terms of the RSA, DF and the other signatory debtor parties thereto agreed, *inter alia*, to waive any and all rights to challenge the nature of the creditors' rights of the Term Lenders including but not limited to the validity, enforceability, or priority of their contractual agreements and/or lien rights. ECF 2 Dec. of G. Lombardo pg. 81.

On 2/11/2019, DHC obtained an INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 507, 546, 548, 555, 559, 560 AND 561 (A) AUTHORIZING DEBTORS TO ENTER INTO REPURCHASE AGREEMENT FACILITIES, SERVICER ADVANCE FACILITIES AND RELATED DOCUMENTS; (B) AUTHORIZING DEBTORS TO SELL MORTGAGE LOANS AND SERVICER ADVANCE RECEIVABLES IN THE ORDINARY COURSE OF BUSINESS; (C) GRANTING BACK-UP LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (D) AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION; (E) MODIFYING THE AUTOMATIC STAY; (F) SCHEDULING A FINAL HEARING; AND (G) GRANTING RELATED RELIEF. ECF 53 ("Interim Order").

Pursuant to the terms of the Interim Order, any parties-in-interest other than the Chapter 11 Debtors (who already contractually promised not to do so), were given 45 calendar days[2] to move for derivative standing, and to seek the type of relief presented herein. ECF 53 at pg. 111. The security rights and interests of the principals of Credit Suisse, AG were said to stem from certain pre-petition security agreements allegedly entered into and guaranteed by DF on 2/9/2018.

---

[2] The Interim Order was entered on 2/13/2019, making the unilaterally imposed deadline of March 30, 2019 - which was a Saturday. Pursuant to Fed. R. Bankr. P. 9006(a)(1)(C), April 1, 2019 is therefore the final day to file this document under the Interim Order. ECF 53, at pg. 111.

3

The creditors involved in such agreements consist mostly of hedge fund companies who formerly invested in DHC's former corporate manifestation, Walter Investment Management Corp. ("WIMC"). Such creditor / investor relationships originated on an unsecured basis, with such creditors allegedly making "Tranche B" and "Revolving Loan" styled financial products available to WIMC. Over time, it appears that WIMC, and then DHC, attempted through various document amendments, and Chapter 11 Plan processes, to convert the pre-existing $1.2 billion in unsecured debt or equity relationships into secured-debt obligations using the assets of WIMC's subsidiary entities, including DF. At all relevant times prior to the conversion of DF's property and assets, the GCA was an active competing, unsecured creditor of DF. The GCA was never notified of any of these transactions. Given the extreme complexity of the underlying financial transactions between WIMC, DHC and these creditors / investors, the GCA, or any party-in-interest for that matter, would ordinarily exercise great caution and engage in significant preparation before even thinking about bringing an adversary proceeding or contested matter seeking the types of relief of the magnitude sought to be protected herein. However, the unilateral deadline imposed by the Interim Order makes clear that unless timely filed, such challenges will be waived and forever barred.

On March 7, 2019 the GCA filed a protective objection to the continuation of the Interim Order due in large part to the Debtors' byzantine and unnecessarily expedited case management structure. ECF 163 at pg. 3. The original hearing to consider the Interim Order and objections was scheduled for March 14, 2019. On March 8, 2019, the Debtors filed a Notice to adjourn the hearing until March 26, 2019. ECF 170. On March 22, 2019, the Debtors filed a second Notice to adjourn the hearing until April 11, 2019. As part of any final relief, it was the GCA's intention to seek an extension of time to file such challenges so that additional investigation and if necessary,

pre-suit discovery could be completed, inclusive of a comprehensive lien-perfection analysis. But, with the adjournments, the deadline imposed by the Interim Order will expire before the extension request can be heard.

For these reasons and the reasons set forth below, the GCA files the instant DERIVATIVE STANDING REQUEST only to comply with the time restrictions imposed by the Interim Order. All allegations and requests for the reserved relief are made without the benefit a complete investigation, and will be later supplemented, amended (or even withdrawn).

<u>REQUEST FOR DERIVATIVE STANDING</u>

It must be noted at the outset that the Debtors have expressly abdicated their duties as debtors-in-possession to seek the type of relief sought by the GCA herein. As mentioned above, the Debtors are contractually obliged not to raise such issues against the creditors / equity parties represented by Credit Suisse, AG. ECF 2, Dec. of G. Lombardo at 81. Moreover, the Debtors have pre-approved the claims of said creditors into an "allowed" status and amount and will not require said creditors to file proofs of claim, collectively or otherwise. Such provisions were provided in the context of the RSA, and in various of the Debtors' other filings, including the Amended Plan and Disclosure Statement.

On March 14, 2019, counsel for the GCA sent an email to the Debtors' counsel demanding that they confirm no later than March 18, 2019[3] that the Debtors would timely file an appropriate adversary proceeding against the creditor group represented by Credit Suisse, AG to address lien attachment, perfection and priority, and if appropriate, to address whether the granting of such liens on DF's assets was preferential and/or a fraudulent conveyance. EXHIBIT A. Counsel for

---

[3] The response date in the original email was errantly set as "February 18, 2019". EXHIBIT A. Counsel corrected that error on March 15, 2019 in a separate email. EXHIBIT B.

5

GCA received no response from the Debtors providing a justification for not bringing the types of relief requested.

Conferring derivative standing upon an individual creditor has been deemed appropriate where (i) the debtor-in-possession unjustifiably refuses or withholds consent to bring suit, and where (ii) pursuit of such claims are in the best interest of the estate. *Unsecured Creditors Committee v. Noyes (In re STN Enterprises)*, 779 F.2d 901, 904 (2nd Cir. 1985); *Commodore International, Ltd. v. Gould (In re Commodore International, Ltd.)*, 262 F.3d 96 (2nd Cir. 2001); and *Glinka v. Federal Plastics Mfg. (In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64, 70-72, FN 7 (2nd Cir. 2002).

Here, the creditors / equity interest holders represented by Credit Suisse, A.G. purport to hold over $960 million in debt, which was only relatively recently secured by the assets of DF. It remains unknown whether Credit Suisse, A.G. or any one or more of the represented creditors / equity interest holders properly perfected their alleged security interests following execution of the Second Amended and Restated Credit Agreement dated 2/9/2018. Indeed, the "executed" version of that document contained an "Existing Liens" Schedule [Schedule 6.01] that listed the UCC-1 Financing Statement filings of all secured creditors of DF. DF's recent Schedule D contains the same and/or similar UCC-1 information but omits any reference to UCC-1 filings of Credit Suisse, A.G. ECF 290 at pgs. 46-51. The GRC must question therefore whether such UCC-1 filings were ever made. Moreover, DHC via its control over DF, transferred all of the unencumbered equity in DF to the Credit Suisse, A.G. creditors / equity interest holders within a year and few days before the instant joint-Chapter 11 filings. That transfer was done at a time when DF was fully aware of the pendency of the GCA, and such transfer effectively rendered DF insolvent as to the rights all of DFs' unsecured creditors.

Unless thoroughly investigated and checked the likely outcome of these Chapter 11 cases will be to give all realizable value in DF to the Credit Suisse, A.G. creditors / equity interest holders and to pay unsecured creditors nothing. By allowing creditors like the GCA (and/or the Unsecured Creditors' Committee) to stand in the Debtors' shoes, significant value to the estate will be preserved for the benefit of all unsecured creditors. The Debtors have contractually waived any ability to bring these types of claims, and have not provided any further justification for choosing not to bring such claims.

WHEREFORE, the GRC would ask to the Court to recognize its request for derivative standing for the purposes of bringing the types of claims outlined on page 2, and provide it with sufficient time to conclude either informal or formal discovery to better formalize such claims and to prepare for a hearing on this matter.

Respectfully submitted,

/s/    James E. Nobile
James E. Nobile *(Pro Hac Vice)*
NOBILE & THOMPSON CO., L.P.A.
4876 Cemetery Rd.
Hilliard, Ohio 43026
Telephone:    (614) 529-8600
Facsimile:    (614) 529-8656
Email:    jenobile@ntlegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF on April 1, 2019. I also certify that the foregoing document is being served this day on the following counsel of record via transmission of Electronic Filing generated by CM/ECF:

All participants on the accumulated ECF service list generated by the ECF / CM system including:

Ditech Holding Corp., 1100 Virginia Drive, Suite 1000, Fort Washington, Pennsylvania 19034 (Attn: John Haas, General Counsel);

Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., and Sunny Singh), Attorneys for the Debtors

William K. Harrington, U.S. Department of Justice, Office of the U.S. Trustee, 201 Varick Street, Room 1006, New York, NY 10014 (Attn: Greg M. Zipes and Benjamin J. Higgins)

Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor,
New York, New York 10017 (Attn: Robert J. Feinstein, Bradford J. Sandler, and Steven W. Golden)

Rich Michaelson Magaliff, LLP, 335 Madison Avenue, 9th Floor, New York, New York 10017 (Attn: Robert N. Michaelson and Elwood F. Collins)

Kirkland & Ellis LLP, 300 North LaSalle, Chicago Illinois 60654 (Attn: Patrick J. Nash and John R. Luze)

Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, New York 10036 (Attn: Sarah M. Ward, Mark A. McDermott, and Melissa Tiarks)

Jones Day, 250 Vesey Street, New York, New York 10281 (Attn: Ben Rosenblum)

Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Brian M. Resnick and Michelle M. McGreal)

O'Melveny & Myers LLP, 400 South Hope Street, 18th Floor, Los Angeles, California 90071 (Attn: Stephen Warren, Jennifer Taylor and Darren Patrick

McKool Smith PC, 600 Travis St., Suite 7000, Houston, Texas 77002
(Attn: Paul D. Moak

U.S. Department of Housing and Urban Development, 451 Seventh St., SW, Room 9250, Washington, DC 20410 (Attn: Lisa Mulrain, Assistant General Counsel, Office of General Counsel, Finance Division);

United States Attorney's Office for the Southern District of New York, 86 Chambers Street, 3rd Floor, New York, New York 10007 (Attn: Peter Aronoff)

CREDIT SUISSE AG, CAYMAN ISLANDS BRANCH
AGENT FOR CREDITOR PARTIES TO
SECOND AMENDED AND RESTATED
CREDIT AGREEMENT DATED 2/9/2018
ATTN: MEGAN E KANE
CREDIT SUISSE SERVICES (USA) LLC
ONE MADISON AVE
NEW YORK, NY 10010

And, all other parties in interest not set forth above but included on the attached MASTER SERVICE LIST dated March 29, 2019.

/s/    James E. Nobile
James E. Nobile *(Pro Hac Vice)*
NOBILE & THOMPSON CO., L.P.A.