Hearing Date: April 11, 2019
Objection Deadline: April 4, 2019
Re Docket Nos. 147 and 315

**MCELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP**
Louis A. Modugno, Esq.
Michael R. Morano, Esq.
1300 Mount Kemble Ave.
Morristown, NJ 07960
(T) 973-993-8100; (F) 973-425-0161
lmodugno@mdmc-law.com
mmorano@mdmc-law.com
*Counsel to International Fidelity Insurance Company
and Allegheny Casualty Company*

**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| DITECH HOLDING CORPORATION, et al[1]. | Case No. 19-10412 (JLG) |
| Debtors. | Jointly Administered |

**INTERNATIONAL FIDELITY INSURANCE COMPANY
AND ALLEGHENY CASUALTY COMPANY'S OBJECTIONS TO:
MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) APPROVING
DISCLOSURE STATEMENT AND NOTICE OF DISCLOSURE STATEMENT
HEARING, (II) ESTABLISHING SOLICITATION AND VOTING PROCEDURES,
(III) SCHEDULE SALE AND CONFIRMATION HEARING; (IV) APPROVING SALE
AND CONFIRMATION OBJECTION PROCEDURES AND NOTICE OF SALE AND
CONFIRMATION HEARING, (V) APPROVING BIDDING PROCEDURES, (VI)
APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (VII)
GRANTING RELATED RELIEF (ECF No. 147); AND AMENDED DISCLOSURE
STATEMENT FOR AMENDED JOINT CHAPTER 11 PLAN OF DITECH HOLDING
<u>CORPORATION AND ITS AFFILIATED DEBTORS (ECF No. 315)</u>**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

International Fidelity Insurance Company and Allegheny Casualty Company, for themselves and on behalf of their affiliated sureties (collectively, "Surety"), by and through counsel, files this Objection to the Motion of Debtors for Entry of an Order: (I) Approving Disclosure Statement and Notice of Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling Sale and Confirmation Hearing; (IV) Approving Sale and Confirmation Objection Procedures and Notice of Sale and Confirmation Hearing, (V) Approving Bidding Procedures, (VI) Approving Assumption and Assignment Procedure, and (VII) Granting Related Relief (ECF No. 147); and Amended Disclosure Statement ("Disclosure Statement") for Amended Joint Chapter 11 Plan ("Plan") of Ditech Holding Corporation and its Affiliated Debtors (ECF No. 315, "Disclosure Statement"), and respectfully states as follows:

## BACKGROUND

1. On February 11, 2019, the above-referenced debtors ("Debtors") filed petitions for relief under Chapter 11 of Title 11 of the Bankruptcy Code.

2. Prior to the Petition Date, the Surety issued certain surety bonds in connection with the business operations of the Debtors and/or non-debtor affiliate(s) (collectively, the "Bonds"). *See* Docket Entry No. 70-1, Schedule 2 to the Interim Order.

3. Upon information and belief, as of the Petition Date, the aggregate penal limits of the Bonds was approximately $25,000,000.00. *See* Declaration of George Rettig, Esq. executed on March 7, 2019 (ECF No. 161) ("Rettig Decl.") at ¶ 4, Ex. A.

4. In consideration for the Surety's execution of bonds, including the Bonds, Ditech Holding Corporation executed that certain Agreement of Indemnity dated July 16, 2018, as may be amended and/or supplemented (the "Indemnity Agreement"). *See* Rettig Decl. at ¶ 3, Ex. A.

5.  Under the second section of the Indemnity Agreement, Ditech Holding Corporation agreed to:

> exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, court costs and the cost of services rendered by counsel . . .) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds . . . .

*See* Rettig Decl. Indemnity Agreement at at ¶ 3, Ex. A. Therefore, the Indemnity Agreement creates a contractual right of indemnification and/or right to exoneration in favor of the Surety.

6.  In consideration for the Surety's execution of bonds, including the Bonds, on or about February 8, 2018, Walter Investment Management Corp., and the Surety executed a Cash Collateral Escrow Agreement ("Cash Collateral Agreement"). *See* Rettig Decl. at ¶ 5, Ex. B.

7.  Under the Cash Collateral Agreement, cash was deposited in an account and such cash is to serve as collateral in favor of the Surety in connection with, among other things, the Bonds. The first section of the Cash Collateral Agreement provides, in relevant part, that:

> [t]he said cash shall be deposited in escrow with a trust company or depository designated by [the Surety] to indemnify [the Surety]:
> (a) Against any and all liability, loss, costs, damages, expenses, premiums and attorneys' fees . . .;
> (b) For the payment of all premiums on such bonds;
> (c) For the performance of every agreement . . . made by [Walter Investment Management Corp.] or by any of the principals in connection with said bonds;
> (d) Against any liability, loss, costs, expenses and attorneys' fees in connection with any claim to the collateral security by persons claiming adversely to [the Surety];
> (e) For any previously executed bond(s), or any subsequently executed bond(s), or any renewals or continuations thereof, issued for either or both the principal or [Walter Investment Management Corp.]

*See* Rettig Decl. at ¶ 5, Ex. B.

3

8. The Cash Collateral Agreement further provides, in relevant part, that the Surety has:

> the irrevocable right, power and authority, to at any time or times, in the event that the [Surety] shall incur or sustain or become liable for, or be threatened with, any loss, expense, charge, cost, liability or damage by reason of the execution of any of the aforesaid bonds, undertakings, or if the premiums thereon shall not have been paid, without further demand or notice and without advertisement, to withdraw the amount then in the escrow account and apply same to such liability . . . .

*See* Rettig Decl. at ¶ 5, Ex. B, fifth section.

9. The eighth section of the Cash Collateral Agreement provides that:

> [i]t is specifically agreed and understood that, during the duration of the escrow, the cash collateral escrow funds shall be excluded from the property of the Estate in connection with any bankruptcy proceeding filed at any time by [Walter Investment Management Corp.] and/or the aforesaid principal and/or their representatives, successors or assigns.

*See* Rettig Decl. at ¶ 5, Ex. B.

10. Upon information and belief, Walter Investment Management Corp., in connection with its previous bankruptcy proceedings, was succeeded by debtor, Ditech Holding Corporation.

11. In connection with, among other things, the Cash Collateral Agreement, the Surety holds, as security in its favor, cash collateral in the amount of $15,000,000.00 ("Cash Collateral"). *See* Rettig Decl. at ¶ 6.

### THE DISCLOSURE STATEMENT AND THE PLAN

12. Debtors have essentially proposed two options to move forward with their proceedings under the Disclosure Statement and the Plan.

13. Generally, under the sale option, the Debtors may sell substantially all of their assets, a portion of their assets, or their servicing rights. Under certain circumstances relating to a sale, the Debtors may roll a sale into a second option.

14. Under this second option: first lien debt is to be converted to equity and a new loan is to be issued to certain or all of the Debtors; second lien holders are wiped out; and unsecured creditors are, generally speaking, wiped out.

15. In addition, under the Disclosure Statement and the Plan, the Debtors, by way of a plan supplement or plan supplements, are to list the contracts they are assuming, with cure amounts, ten (10) days prior to the plan objection period. *See* section 8.2 of the Plan ("[a]t least ten (10) days before the deadline to object to confirmation of the Plan, the Debtors shall serve a notice on parties to executory contracts or unexpired leases to be assumed or assumed and assigned reflecting the Debtors' intention to potentially assume or assume and assign the contract or lease . . . and, where applicable, setting forth the proposed cure amount (if any)"). The Disclosure Statement and Plan further provide that parties that fail to timely object to such assumption or assumption and assignment, or proposed cure amounts, are "deemed to have assented" to such assumption. *Id.*

16. Further, the Debtors propose the right to amend their list of proposed assumed contracts and/or cure amounts up to one business day before a confirmation hearing. *See* section 8.9 of the Plan ("[t]he Debtors may amend the Assumption Schedule and any cure notice until the Business Day immediately prior to the commencement of the Confirmation Hearing . . . .").

17. Notwithstanding the Debtors' proposal to assume, or to assume and assign, certain contracts, neither the Plan nor the Disclosure Statement specifically address the treatment of the Bonds or the Surety.

5

18. Regardless of whether the Debtors proceed with the above-referenced first or second option, secured creditors (other than those mentioned above) and unsecured creditors are: deemed to be part of the same purportedly unimpaired class; are not permitted to vote on the Plan; and, are deemed to give broad releases in favor of a number of entities, including, without limitation, the Debtors, the Reorganized Debtors, the Wind Down estates (if applicable), and various lenders and agents, and their related parties.

## SPECIFIC OBJECTIONS[2]

19. By way of this Objection, the Surety objects to the Disclosure Statement and the Plan to the extent that they: (a) without the Surety's express consent, provide for the assumption and/or assumption and assignment of any of the Bonds, the Indemnity Agreement, the Cash Collateral Agreement and/or the Cash Collateral (*see* section A, *infra)*; (b) fail to provide the Surety with adequate notice and due process in connection with assumption or assumption and assignment procedures (*id.*); (c) provide for the non-consensual release of claims against non-debtor third parties (*see* section B, *infa*); and (d) purport to dispose of the Surety's subrogation, indemnity, setoff and recoupment rights (*id.* ).

20. If a plan or a provision of a plan is, on its face, non-confirmable as a matter of law, then it is appropriate for a court to disapprove the disclosure statement filed in support of that plan. See, e.g., In re Washington Associates, 141 B.R. 275 (Bankr. S.D.N.Y. 1992); In re McCall, 44 B.R. 242, 243 (Bankr. E.D. Pa 1984); see also In re American Capital Equip., LLC, 688 F.3d 145, 154 (3d Cir. 2012).

21. As outlined in greater detail below, the defects contained in the Disclosure Statement and the Plan render the Plan patently unconfirmable. Accordingly, the Surety

---

[2] In making these specific objections regarding the deficiencies in the Disclosure Statement and the Plan, the Surety reserves all rights to raise these and other objections to any future drafts of either the Disclosure Statement or the Plan, upon motion, or at a hearing before the Bankruptcy Court.

6

respectfully requests that the Court decline to approve the Disclosure Statement.

> **A. Neither the Bonds, the Indemnity Agreement Nor the Cash Collateral Agreement May be Assumed or Assumed and Assigned Absent the Express Consent of The Surety and Assumption/Assignment Procedures are Inappropriate**

21. To the extent that the Debtors seek to assume, or assume and assign, the Indemnity Agreement, the Bonds or the Cash Collateral Agreement, any such assumption and/or assumption and assignment is/are not allowed pursuant to 11 U.S.C. § 365(c)(2). The Indemnity Agreement is a financial accommodation contract through which the Bonds are issued by the Surety and otherwise governed. As such, these assets (the Bonds, the Indemnity Agreement and the Cash Collateral Agreement) may not be assumed or assigned without prior consent of the Surety.

22. As matters of financial accommodation, prior to issuing bonds, a surety's underwriters typically investigate and otherwise evaluate the financial status of the entities seeking the bonds (*see Generally In re Wegner Farms Co.*, 49 B.R. 440, 444 (Bankr. N.D. Iowa 1985) (the issuance of a bond is intimately connected to debtor's financial integrity…")).

23. The principal(s) on a bond, and their indemnitors, in consideration for the issuance of bonds by the surety, are generally required to furnish an indemnity agreement in favor of the surety. Such indemnity agreements – as with the instant Indemnity Agreement - requires, among other things, that the indemnitors indemnify and exonerate the surety for any and all losses, costs and/or expenses that may be incurred by the surety in connection with its issuance or execution of surety bonds.

24. Thus, although a potential purchaser is free to seek new bonds for the ongoing operations, the Debtors in this matter cannot simply assume and assign to any purchaser nor assume items on behalf of a reorganized debtor.

25. The Bankruptcy Code specifically prohibits debtors from assuming certain contracts. Section 365 (c)(2) provides the following in pertinent part:

(c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

…

(2) such contract is a contract to make a loan, or extend other debt financing or *financial accommodations*, to or for the benefit of the debtor, or to issue a security of the debtor

(emphasis added).[3]

26. Although the Bankruptcy Code does not define the term "financial accommodation", surety bonds are akin to guaranty agreements, which have been held to be considered "financial accommodations." *See e.g. In re Adana Mortg. Bankers, Inc.*, 12 B.R. 977, 986 (Bankr. N.D. Ga. 1980) (regarding "financial accommodations" as used in Section 365(e)(2)(B)).

27. In *In re Adana*, the Court found the following regarding guaranty agreements:

The debtor contends that the Guaranty Agreements do not constitute contracts to make financial accommodations to or for the benefit of debtor. To the contrary, the facts show that the Guaranty Agreements are contracts to make financial accommodations to or for the benefit of debtor. First, the debtor asserts that the securities constitute a type of liability of the debtor. Second, GNMA is obligated to pay the securities holders if the debtor fails to do so. In other words, GNMA is required by the Guaranty Agreements to make payments promptly on liabilities of the debtor, should the debtor fail to make them. The obligation to pay money on the obligation of another is a financial accommodation.

---

[3] In addition, Section 365(e)(2)(B) provides that although certain contracts cannot be terminated or modified based on the bankruptcy filing, this prohibition does not apply when "such contract is a contract to make a loan, or extend other debt financing *or financial accommodations*, to or for the benefit of the debtor, or to issue a security of the debtor." (emphasis added).

*Id.* at 987.

28. Indeed, surety bonds are considered "financial accommodations" because they represent obligations to pay money based on the obligations of another. *In re Wegner Farms Co.*, 49 B.R. 440 (Bankr. N.D. Iowa 1985). The *Wegner Farms* Court explained that:

> Certainly a surety bond does not fit neatly within the framework of traditional debt financing. Nonetheless, as noted by the court in *In re Adana Mortgage Bankers Inc.*, 12 B.R. 977, 987 (Bkrtcy.N.D.Ga.1980) (*Adana I*), even giving the term financial accommodation a narrow construction, "[t]he obligation to pay money on the obligation of another is a financial accommodation" within the meaning of section 365(c) and (e).

*Id.* at 444. Further, as set forth in *Matter of Edwards Mobile Home Sales, Inc.*, 119 B.R. 857, 859 (1990):

> [t]his Court agrees with the finding in *Wegner* and *Adana I* that an obligation to pay the debts of another is a "financial accommodation" and as such is encompassed by Section 365(c)(2). Accordingly, the Court finds the Ohio Casualty surety bond to be a financial accommodation which cannot be assumed pursuant to Section 365(c)(2).

29. Here, the Surety issued the Bonds on behalf of certain of the Debtors and their affiliates by virtue of, among other things, the Indemnity Agreement and the Cash Collateral Agreement. The Bonds, the Indemnity Agreement and the Cash Collateral Agreement are financial accommodation contracts, and therefore, they are not, absent the express consent of the Surety, assumable by the Debtors.

30. Further, here, the Debtors' proposed list of potentially assumed contracts, together with cure amounts, need not be filed until ten (10) days prior to a confirmation hearing. *See* section 8.2 of the Plan. Moreover, the proposed list of assumed contracts can be amended up until one business from the date of a confirmation hearing. These time frames prevent the Surety

9

a reasonable opportunity to evaluate and otherwise underwrite either the reorganized entity or a proposed purchaser, both of which generally require surety bonds in order to perform subject business operations.

31. As such, the Court should require in any order approving the Disclosure Statement and bid procedures: that the Debtors, within thirty (30) days of confirmation of any Plan, disclose to the Surety their intentions with respect to the Bonds; and that any potential purchaser, by the date by which they are required to submit a bid, disclose to the Surety its intention with respect to the Bonds. Further, the Debtors and any and all bids for the purchase of any of the Debtors' assets should disclose: whether the Debtors or a potential bidder intends to replace any or all of the Bonds; and/or how they intend to release and/or discharge, in their entirety, the Bonds. Also, to the extent the Debtors intend to assume, or assume and assign to any purchaser, any or all of the Bonds, the Debtors and any purchaser should be required to furnish evidence satisfactory for the Surety to determine whether any such bonds (including the Bonds) shall be continued or otherwise underwritten and issued by the Surety (subject to the Surety's discretion). This information that shall be disclosed to the Surety shall include any and all information which the Surety may require in connection with any underwriting process, as well as how such entity or entities will provide, at the request and discretion of the Surety, collateral and/or indemnity agreement(s) in favor of the Surety.[4]

    **B.    The Plan and Disclosure Statement Must Be Modified to Limit Non-Consensual Plan Releases and to Otherwise Protect the Surety's Subrogation Rights**

---

[4] Notwithstanding anything herein to the contrary, subject to the restrictions of the automatic stay to the extent applicable, the Surety reserves, among other rights, its right to issue, extend, cancel or terminate any and all bonds, including, but not limited to, the Bonds.

32. As noted above, under the Disclosure Statement and Plan, secured creditors such as the Surety[5] are not permitted to vote on the Plan and are deemed to furnish non-consensual releases of claims against the Debtors and non-debtor third parties (the "Plan Releases"). *See, e.g.*, the Plan at section 4.2(c)(concerning voting); *id.* at section 10.6(a) and (b)(concerning the Plan Releases).

33. The Second Circuit has explained that, absent the consent of the affected creditor, "[n]o case has tolerated nondebtor releases absent the finding of circumstances that may be characterized as unique." *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142 (2d Cir. 2005) (citing *In re Specialty Equip. Cos.*, 3 F.3d 1043, 1047 (7th Cir. 1993)).

34. Here, the Debtors have failed to identify unique or extraordinary circumstances which would justify the extension of the Plan Releases to non-consenting creditors. Accordingly, absent the express consent of a particular holder of a claim or interest, the proposed Plan Releases are prohibited and the Surety objects on this basis to the extent that they impose the Plan Releases absent affirmative consent. The Surety further objects to the Plan Releases as they require the Surety to release non-debtor affiliates of the Debtors which may be a principal or principals on certain of the Bonds, and are therefore obligated to indemnify the Surety.

35. The Plan Releases should, respectfully, also be limited by this Court to the extent they require any obligee or beneficiary under any of the Bonds to release the Debtors or any of their non-debtor affiliates.

36. Indeed, Section 509(a) of the Bankruptcy Code provides, in pertinent part, that "an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the

---

[5] It is noted that the Surety may be deemed an undersecured creditor, which is not permitted to vote on the Plan and may be deemed to furnish broad third-party releases because it is a secured creditor.

debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment." 11 U.S.C. §509(a).

37.  As a surety, the Surety is subrogated to the rights of any creditor to the extent that it pays such creditor's claim in whole or in part. As such, the Surety objects to the extent that parties to whom the Surety is or may become subrogated are subject to the Plan Releases, and such releases should be carved out from the Plan.

38.  Further, to the extent the Cash Collateral in favor of the Surety is being held by a third party, *i.e.*, a bank account, the Plan Releases could negatively impact the Surety's ability to draw upon such collateral, thereby negating the Surety's bargained-for rights.

39.  Accordingly, the Plan should provide that, to the extent the Surety, the reorganized debtors and/or any purchaser agree to the assumption and/or the assumption and assignment of the Bonds, the following provisions should be applicable:

> SURETY BONDS
> (a)  Notwithstanding any provision of the Disclosure Statement, the Plan, the Confirmation Order, or any plan supplement or any other related documents ("Plan Documents") to the contrary, upon the occurrence of the Effective Date, all existing surety bonds (each a "Surety Bond" and collectively, the "Surety Bonds") issued by the Surety or their respective past, present and future affiliates (each a "Surety", and collectively the "Sureties") and all indemnity agreements in place with each Surety with respect to such Surety Bonds (each an "Indemnity Agreement" and collectively, the "Indemnity Agreements") shall, upon the express written consent of the Surety, be deemed assumed and shall remain obligations of any of the reorganized debtors or any purchaser, as applicable, as of the Effective Date; provided that, in lieu of the assumption of a Surety Bond, the Surety may elect to issue a name-change rider to any such Surety Bond or to issue new surety bonds naming the applicable principal on the bond. Additionally, each obligation of any of the Debtors or their non-debtor affiliates that relates to a Surety Bond and/or any Indemnity Agreements is not being released, discharged, precluded or enjoined by any of the Plan Documents, and such shall remain obligations of the applicable reorganized debtor or purchaser as of the Effective

Date. Additionally, any such reorganized debtor or purchaser, as applicable, shall pay any and all premium and other obligations due or that may become due on or after the Effective Date, notwithstanding any of the Debtors or their non-debtor affiliates current and ongoing obligations to pay such premiums. On the Effective Date, provided that all unpaid premiums and loss adjustment expenses that are due to the Surety as of the Effective Date are paid to the applicable Surety, all associated Proofs of Claim on account of or in respect of any agreement with such Surety shall be deemed satisfied without further notice to or action by the Court. To the extent that, as of the Effective Date, the Surety has extended any credit to the reorganized debtors or any purchaser, such entities or affiliates shall, at the discretion of the Surety, execute any and all Indemnity Agreements or collateral-related agreements in favor of the Surety. *In addition to the foregoing assumption of the Indemnity Agreements, upon request of the applicable Surety, each applicable Reorganized Debtor shall enter into new indemnity agreements. Failure to expressly identify any Indemnity Agreement in any schedule of the Plan Documents, including, without limitation, the Plan or Disclosure Statement, shall not imply the rejection or failure to assume that agreement.*

(b) Notwithstanding any other provision of the Plan Documents, all letters of credit, proceeds from drawn letters of credit, if any, or other collateral issued to the Sureties as security for a Debtor's and/or Reorganized Debtor's obligations under the existing Bonds, the existing Indemnity Agreement or the existing Collateral Agreement, or any new Surety Bonds or Indemnity Agreements, or any security or trust interest of the Surety or any party whose rights the Surety may become subrogated to (including the rights of set-off and/or recoupment of said Surety or other party), shall remain in place to, among other things, secure against any losses, costs and/or expenses, including, but not limited to, attorneys' fees, incurred or to be incurred by the Sure, and the Surety's right to apply or otherwise use its existing Cash Collateral or any new collateral shall not in any manner be impacted.

(c) Notwithstanding any other provisions of the Plan Documents to the contrary, nothing in the injunction and release provisions of the Plan Documents, including but not limited to section 10.6 of the Plan, shall be deemed to apply to the Surety or to the Surety's claims, nor shall these provisions be interpreted to bar, impair, alter, diminish or enlarge the rights or obligations of the Surety or prevent or otherwise limit the Surety's rights under any and all bond issued by the Surety or Indemnity Agreements, including, but not limited to the existing Bonds, Indemnity Agreement, Collateral Agreement or Cash Collateral, or present or future letters of credit or the common law of suretyship, and the reorganized debtors, the

       Released Parties and/or any purchaser, as applicable, shall remain or otherwise become liable for all obligations thereunder to the Surety.

       (d)  Consistent with the potential assumption of any bonds or indemnity-related obligations, and the unimpairment of bonded obligations as provided herein, and notwithstanding any provision in the Plan Documents to the contrary, to the extent that the Surety pays or has paid, in part or in full, a claim which relates to a claim against any of the Debtors or any of their non-debtor affiliates, said claim against any of the Debtors shall not be eliminated or reduced and all of the Surety's subrogation rights shall remain and shall not be subordinated to any remaining claim or claims of said party against any of the Debtors. Moreover, the Plan Documents shall not impact any payment by the Surety, and the Plan Documents, shall not apply to claims covered by any bonds issued by the Surety, including, but not limited to the Bonds.

       (e)  Notwithstanding any provision in the Plan Documents to the contrary, including, but not limited to, Section 11.14 of the Plan, to the extent the Bankruptcy Court disallows a claim for reimbursement or contribution, all rights of a Surety under section 502(j) of the Bankruptcy Code shall remain.

       40.    Absent modifications of the language in the Plan and Disclosure Statement, both impermissibly violate the Surety's rights. The Court should also require that the Plan include protections for the benefit of the Surety to the extent the Bonds, the Collateral Agreement or the Indemnity Agreement are not being assumed or assumed and assigned by agreement of the Surety.

## **RESERVATION OF RIGHTS**

       41.    The submission of this Objection by the Surety is not intended as, and shall not be construed as: (a) the Surety's admission of any liability, or its waiver of any defenses, with respect to any pre-petition or post-petition claim(s) against any one or more of the bonds issued or executed by the Surety, including, but not limited to the Bonds; (b) a release, waiver or limitation of any rights of the Surety under any indemnity or other agreements in favor of the Surety, including, but not limited to the Indemnity Agreement or the Cash Collateral Agreement, or common law; (c) a release, waiver or limitation on the obligations owed to the

Surety by any of the Debtors and/or their non-debtor affiliates or subsidiaries; (d) the Surety's waiver or release of any right to exoneration it may have against anyone with respect to obligations relating to any bonds issued or executed by the Surety, including but not limited to the Bonds; (e) the Surety's waiver or release of its right to be subrogated to the rights of one or more of the claimants, obligees or beneficiaries paid in connection with any bonds issued by the Surety on behalf of any of the Debtors or their non-debtor affiliates or subsidiaries; (f) an election of remedy; or (g) consent to the determination of the Debtors' liability to the Surety by any particular court, including, without limitation, the Bankruptcy Court.

42. The Surety reserves the right to raise any arguments raised by any other party in their pleadings at the hearing on the Disclosure Statement and/or the Plan, including at the time of confirmation.

43. The Surety expressly reserves, and does not waive, any and all of its rights, claims, defenses, limitations, and/or exclusions in connection with its and the Debtors' rights and obligations under any and all bonds, including the Bonds, applicable law, or otherwise. The Surety further reserves all rights to assert any and all such rights, claims, defenses, limitations and/or exclusions in any appropriate manner or forum whatsoever (including, without limitation, any of its rights to have any non-core matter relating to the interpretation of its contractual rights and Debtors' contractual obligations adjudicated by the United States District Court).

44. The Surety further reserves all of its rights to raise any issues contained in this Objection and any other related issues in any procedurally-appropriate contested matter and/or adversary proceeding, including, without limitation, (a) objections to confirmation of any plan; (b) a separate adversary proceeding requesting any appropriate declaratory and/or injunctive relief; (c) or an objection to any subsequent motion seeking approval of an asset sale to any

15

prospective asset purchaser with respect to any contractual rights that may be adversely affected by a sale motion or the confirmation of any plan.

45. The Surety further reserves all of its rights to object to the details of subsequent versions of the Disclosure Statement, the Plan, and any other proposed sale and for such other and further relief as is appropriate.

**WHEREFORE**, the Surety respectfully requests that the Bankruptcy Court sustain its Objection to the Motion and the Disclosure Statement and deny approval of the Disclosure Statement, and, as such, confirmation of the Plan for the reasons above.

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

*/s/ Louis A. Modugno*
Louis A. Modugno, Esq.
Michael R. Morano, Esq.
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
Telephone:   (973) 993-8100
Facsimile:   (973) 425-0161
Email: lmodugno@mdmc-law.com
        mmorano@mdmc-law.com

*Counsel to International Fidelity Insurance Company and Allegheny Casualty Company*