**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
                                              :

In re                                   :       **Chapter 11**

**DITECH HOLDING CORPORATION**, *et al.*,   :       **Case No. 19-10412 (JLG)**
                                                :

Debtors.[1]                      :       **(Jointly Administered)**
                                              :       **Related Docket Nos. 147, 148, 150, 316**
------------------------------------------------------------X

## ORDER (I) APPROVING BIDDING PROCEDURES, (II) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (III) GRANTING RELATED RELIEF

Upon the motion, dated March 5, 2019 (the "**Motion**"),[2] of Ditech Holding Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 2002-1, 6004-1, 6006-1, and 9006-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), and the *Amended Sale Guidelines for the Conduct of Asset Sales Established and Adopted by the United States Bankruptcy Court for the Southern District of New York* (the "**Sale Guidelines**"), for entry of an order (a) approving the Proposed Bidding Procedures, substantially in the form attached hereto as **Schedule 1**; (b) approving the Assumption and Assignment Procedures for the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion or the Plan, as applicable.

assumption and assignment of the Assigned Contracts and the determination of the Cure Costs; and (c) approving the form and manner of the Cure Notice, substantially in the form attached hereto as **Schedule 2**; all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the parties listed therein as set forth in the affidavits of service filed with respect thereto (ECF Nos. 169 and 173); and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing to consider the relief requested in the Motion (the "**Hearing**"); and upon the record of the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

#### IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.  <u>Jurisdiction and Venue</u>.  Consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Court has jurisdiction to consider the Motion

---

[3]  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

WEIL:\97007307\1\41703.0010

and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334, and the Amended

Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).

B.    Statutory and Legal Predicates.  The statutory and legal predicates for the

relief requested in the Motion are sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy

Rules 2002, 6004, and 6006, Local Rules 2002-1, 6004-1, 6006-1, and 9006-1, and the Sale

Guidelines.

C.    Bidding Procedures.  The Debtors have articulated good and sufficient

business reasons for the Court to approve the Bidding Procedures.  The Bidding Procedures are

fair, reasonable, and appropriate.  The Bidding Procedures are reasonably designed to promote a

competitive and expedient bidding process to generate the greatest level of interest in the Debtors'

assets resulting in the highest or otherwise best offer.  The Bidding Procedures comply with the

requirements of Local Rule 6004-1.

D.    Designation of Stalking Horse Bid.  The Debtors have articulated good and

sufficient business reasons for the Court to authorize the Debtors to designate Stalking Horse

Bidders and enter into Stalking Horse Agreements in accordance with the Bidding Procedures.

E.    Stalking Horse Bid Protections.  The Debtors have articulated good and

sufficient business reasons for the Court to authorize the Debtors to offer Stalking Horse Bid

Protections in accordance with the Bidding Procedures.

F.    Assumption and Assignment Procedures.  The Debtors have articulated

good and sufficient business reasons for the Court to approve the Assumption and Assignment

Procedures.  The Assumption and Assignment Procedures are fair, reasonable, and appropriate.

The Assumption and Assignment Procedures provide an adequate opportunity for all Contract

Counterparties to raise any objections to the proposed assumption and assignment or to the

proposed Cure Costs. The Assumption and Assignment Procedures comply with the provisions

of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

G.    <u>Cure Notice</u>.  The Cure Notice is appropriate and reasonably calculated to

provide all interested parties with timely and proper notice of the Assumption and Assignment

Procedures, as well as any and all objection deadlines related thereto, and no other or further notice

shall be required for the Motion and the procedures described therein, except as expressly required

herein.

H.    <u>Notice</u>.  All other notices to be provided pursuant to the procedures set forth

in the Motion are good and sufficient notice to all parties in interest of all matters pertinent hereto.

No further notice is required.

I.    <u>Relief is Warranted</u>.  The legal and factual bases set forth in the Motion

establish just and sufficient cause to grant the relief requested therein.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.    The Motion is granted as set forth herein.

2.    All objections to the relief granted herein that have not been withdrawn with

prejudice, waived, or settled, and all reservations of rights included in such objections, are hereby

overruled and denied on the merits with prejudice.

**<u>The Bidding Procedures</u>**

3.    The Bidding Procedures, attached hereto as **<u>Schedule 1</u>**, are hereby

approved.

4.    The Bidding Procedures are incorporated herein by reference, and shall

govern the bids and proceedings related to the sale of the Debtors' assets and the Auction. The

failure to specifically include or reference any particular provision of the Bidding Procedures in

WEIL:\97007307\1\41703.0010

the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.

5.      The procedures and requirements set forth in the Bidding Procedures, including those associated with submitting a Qualified Bid, are fair, reasonable and appropriate, and are designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and all parties in interest.

6.      The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures in accordance with the terms of this Order and the Bidding Procedures.

### *Designation of Stalking Horse Bidders*

7.      The Debtors are authorized to, in the exercise of their reasonable business judgment, designate one or more Stalking Horse Bidders for one or more of their assets and to enter into Stalking Horse Agreements for the sale of any such assets, in accordance with the terms of this Order and the Bidding Procedures.

8.      Subject to the terms of this Order and the Bidding Procedures, the Debtors are authorized to, in consultation with the Consultation Parties (as defined in the Bidding Procedures), (a) establish initial overbid minimum and subsequent bidding increment requirements; (b) offer each Stalking Horse Bidder a break-up fee in an amount agreed to by the Debtors in consultation with the Term Loan Ad Hoc Group and the official committee of unsecured creditors (a "**Termination Payment**"); (c) provide that, if the Stalking Horse Bidder bids on certain assets at the Auction, the Stalking Horse Bidder will be entitled to a credit in the amount of its Termination Payment against the increased purchase price for the assets; and (d) provide

WEIL:\97007307\1\41703.0010

other appropriate and customary protections to a Stalking Horse Bidder (the Termination Payment and the other bid protection described in this paragraph collectively are referred to as the "**Stalking Horse Bid Protections**").   The Stalking Horse Bid Protections shall be described in detail, including the amount and calculation of such Stalking Horse Bid Protections, in the Notice of Stalking Horse Bidder.

9. To the extent the Debtors designate a Stalking Horse Bidder with respect to any of their assets, the Debtors shall promptly upon the execution of a Stalking Horse Agreement (and in no event more than one (1) calendar day following such execution) (a) file with the Bankruptcy Court, (b) serve on the parties listed below and such other parties as the Court may order (collectively, the "**Objection Notice Parties**"), and (c) cause to be published on the website maintained by the Debtors' claims and noticing agent in these chapter 11 cases, located at Debtors' claims agent's website (http://dm.epiq11.com/Ditech), a notice containing information about the Stalking Horse Bidder(s) with the proposed Stalking Horse Agreement attached thereto (the "**Notice of Stalking Horse Bidder**").   The Objection Notice Parties include:

| *Debtors* | *Office of the U.S. Trustee* |
|---|---|
| Ditech Holding Corporation, et al. | William K. Harrington, U.S. Department of |
| 3000 Bayport Drive | Justice |
| Suite 985 | Office of the U.S. Trustee |
| Tampa, Florida 33607 | 201 Varick Street, Room 1006 |
| Attn:  John Haas | New York, New York 10014 |
| | Attn: Greg M. Zipes |
| | Benjamin J. Higgins |
| | |
| *Counsel to the Debtors* | *Counsel to the Prepetition Administrative Agent* |
| Weil, Gotshal & Manges LLP | Davis Polk & Wardwell LLP |
| 767 Fifth Avenue | 450 Lexington Avenue |
| New York, New York 10153 | New York, New York 10017 |
| Attn:  Ray C. Schrock, P.C. | Attn: Brian M. Resnick |
| Sunny Singh | Michelle M. McGreal |

| | |
|---|---|
| ***Counsel to the Term Loan Ad Hoc Group*** | ***Counsel to the DIP Agent and DIP Lender*** |
| Kirkland & Ellis LLP | Skadden, Arps, Slate, Meagher & Flom LLP |
| 300 North LaSalle | 4 Times Square |
| Chicago, Illinois 60654 | New York, New York 10036 |
| Attn: Patrick J. Nash | Attn: Sarah M. Ward |
|     John Luze |     Mark A. McDermott |
| |     Melissa Tiarks |
| | |
| ***Counsel to Nomura Corporate Funding Americas, LLC*** | ***Proposed Counsel to the Creditors' Committee*** |
| Jones Day | Pachulski Stang Ziehl & Jones LLP |
| 250 Vesey Street | 780 Third Avenue, 34th Floor |
| New York, New York 10281 | New York, New York 10017 |
| Attn: Ben Rosenblum | Attn: Robert J. Feinstein |
| |     Bradford J. Sandler |

10.     The Stalking Horse Bid Protections shall be described in detail, including the amount and calculation of such Stalking Horse Bid Protections, in the Notice of Stalking Horse Bidder.

11.     Objections to the designation of a Stalking Horse Bidder or to any of the terms included in the Stalking Horse Agreement, including to any of the Stalking Horse Bid Protections (a "**Stalking Horse Objection**") must: (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party (unless such party is the U.S. Trustee or a Consultation Party (as defined in the Bidding Procedures)); (c) state with particularity the basis and nature of any objection; (d) conform to the Bankruptcy Rules and the Local Rules; (e) be filed with the Court (i) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable;

WEIL:\97007307\1\41703.0010

and (f) be served in accordance with the *Order Implementing Certain Notice and Case Management Procedures* (ECF No. 211) (the "**Case Management Order**").

12.     In addition to being filed with the Court, any such responses or objections must be served on the Objection Notice Parties, in addition to any such other parties as the Court may order, so as to be received within ten (10) calendar days after the filing of the relevant Notice of Stalking Horse Bidder (the "**Stalking Horse Objection Deadline**").

13.     If a timely Stalking Horse Objection is filed and served with respect to an applicable Stalking Horse Agreement, the proposed Stalking Horse Bid Protections provided for under that agreement, shall not be approved until either (a) the Stalking Horse Objection is resolved by agreement of the objecting party and the Debtors or (b) by entry of an order by the Court resolving such objection.

14.     If no timely Stalking Horse Objection is filed and served with respect to an applicable Stalking Horse Agreement in accordance with the Bidding Procedures, the Court may enter an Order approving the Stalking Horse Bid Protections upon the expiration of the Stalking Horse Objection Deadline.

15.     For all purposes under the Bidding Procedures, any Stalking Horse Bidder approved as such pursuant to this Order shall be considered a Qualified Bidder, and the applicable Stalking Horse Bid shall be considered a Qualified Bid.  In the event that the applicable Stalking Horse Bid is the only Qualified Bid received by the Debtors with respect to the assets subject to such bid by the Bid Deadline, the applicable Stalking Horse Bidder shall be deemed the Successful Bidder with respect to such assets.

WEIL:\97007307\1\41703.0010

*Objections to Sale Transaction or Asset Sale Transaction*

16.     If the Debtors elect to proceed with a Sale Transaction or an Asset Sale Transaction pursuant to the Debtors' chapter 11 plan (the "**Plan**"), the Debtors will seek the entry of an order authorizing and approving, among other things, the Sale Transaction or Asset Sale Transaction, as applicable, in which the Debtors' assets will be sold to the applicable Successful Bidder at a hearing before the Bankruptcy Court to be held on **June 20, 2019** (the "**Sale Hearing**"). The objection deadline for any Sale Transaction or Asset Sale Transaction to be approved at the Sale Hearing will be **June 10, 2019 at 4:00 p.m. (ET)**.

17.     The Debtors may elect to seek approval of a proposed sale in advance of the Sale Hearing.  To the extent the Debtors determine to do so, notice will be provided for alternative hearing dates and related timelines (subject to the Court's approval).  To the extent the Debtors seek to pursue any Sale Transactions or Asset Sale Transactions outside of the Plan, the Debtors shall file a notice of a hearing to approve the applicable Sale Transaction or Asset Sale Transaction and parties in interest shall be provided at least ten (10) calendar days to object to such sale; provided that, the Debtors may seek an adjournment of such hearing as the Debtors deem appropriate in the exercise of their reasonable business judgment.

18.     Objections to any Sale Transactions or Asset Sale Transactions, including any objection to the sale of the Debtors' assets free and clear of liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code (each, a "**Sale Objection**"), must: (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (c) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (d) conform to the Bankruptcy Rules and the Local Rules; (e) be filed with

9

the Court (i) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (f) be served in accordance with the Case Management Order by the applicable deadline set in accordance with this Order.  In addition to being filed with the Court, any such responses or objections must be served on the Objection Notice Parties, in addition to any such other parties as the Court may order, so as to be received by the objection date specified in the notice; provided that, the Debtors may extend such deadline, as the Debtors deem appropriate in the exercise of their reasonable business judgment.  If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the applicable sale hearing (which may be the Sale Hearing).

19.    A Successful Bidder shall appear at the applicable sale hearing (which may be the Sale Hearing) and be prepared, if necessary, to have a representative(s) testify in support of a Successful Bid and the Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and assigned to a Successful Bidder as part of the proposed transaction.

20.    Any party who fails to timely file with the Court and serve on the Objection Notice Parties a Sale Objection may be forever barred from asserting any Sale Objection to the applicable sale, or to the consummation and performance of a Sale Transaction or an Asset Sale Transaction, as applicable, contemplated by an asset purchase agreement between the Debtors and a Successful Bidder, including the transfer of assets to a Successful Bidder, free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code.

Failure to object shall constitute consent for the purposes of section 363(f)(2) of the Bankruptcy Code.

<u>**Assumption and Assignment Procedures**</u>

21.    The following Assumption and Assignment Procedures are reasonable and appropriate under the circumstances, fair to all Contract Counterparties, comply in all respects with the Bankruptcy Code, and are approved.

22.    The Cure Notice, substantially in the form attached hereto as **<u>Schedule 2</u>**, is reasonable, fair, and appropriate, contains the type of information required under Bankruptcy Rule 2002, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and is hereby approved.

23.    The Cure Notice is reasonably calculated to provide sufficient notice to the Contract Counterparties of the Debtors' intent to assume and assign the Assigned Contracts in connection with a Sale Transaction or an Asset Sale Transaction, as applicable, and constitutes adequate notice thereof, and no other or further notice of the Debtors' proposed Cure Costs or the proposed assumption and assignment of the Assigned Contracts shall be required if the Debtors file and serve such notice in accordance with the Assumption and Assignment Procedures and this Order.

24.    The Debtors shall file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties at least ten (10) days before the objection deadline to the applicable Sale Transaction or Asset Sale Transaction, which shall be specified in the Cure Notice. Service of the Cure Notice in accordance with this Order on all Contract Counterparties is hereby deemed to be good and sufficient notice of the Cure Costs for, and the proposed assumption and assignment of, the Assigned Contracts.  As soon as reasonably practicable after filing the Cure

11

Notice, the Debtors shall post a copy of the Cure Notice on the website for the chapter 11 cases maintained by the Debtors' claims and noticing agent.

25.     Objections, if any, to any proposed Cure Costs (each, a "**Cure Objection**") and to the provision of adequate assurance of future performance (each, an "**Adequate Assurance Objection**") must:  (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (c) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (d) conform to the Bankruptcy Rules and the Local Rules; (e) be filed with the Court (i) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (f) be served in accordance with the Case Management Order.  In addition to being filed with the Court, any such responses or objections must be served on the Objection Notice Parties, in addition to any such other parties as the Court may order, so as to be received by the objection deadline specified in the Cure Notice.

26.     Any Cure Objection or Adequate Assurance Objection in respect of an Assigned Contract must be filed and served within ten (10) calendar days of service of notice of the Debtors' intention to assume such Assigned Contract.  If a timely Cure Objection or Adequate Assurance Objection is received and such objection cannot otherwise be resolved by the parties, such objection shall be heard at a hearing scheduled prior to any scheduled closing of a Sale Transaction or an Asset Sale Transaction.

WEIL:\97007307\1\41703.0010

27.     To the extent the Debtors identify, at any time after the Cure Notice is served, additional contracts to be assumed and assigned to a Successful Bidder, the Debtors shall promptly file with the Court and serve by first class mail on the applicable Contract Counterparty a supplemental Cure Notice (each, a "**Supplemental Cure Notice**," the form of which shall be substantially similar to the form of Cure Notice attached hereto as **Schedule 2**).

28.     If no timely Cure Objection is filed and served in respect of an Assigned Contract, the Cure Cost identified on the Cure Notice or a Supplemental Cure Notice, as applicable, will be the only amount necessary under section 365(b) of the Bankruptcy Code to cure all defaults under such Assigned Contract.  Any party failing to timely file a Cure Objection shall be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtors, their Estates, and a Successful Bidder.

29.     If no timely Adequate Assurance Objection is filed and served with respect to an Assigned Contract or a Successful Bidder, the Debtors will be deemed to have provided adequate assurance of future performance for such Assigned Contract in accordance with section 365(f)(2)(B) of the Bankruptcy Code.

30.     Further, if no timely Cure Objection or Adequate Assurance Objection is filed and served with respect to an Assigned Contract, the relevant Contract Counterparty shall be deemed to have consented to the assumption and assignment of the Assigned Contract to a Successful Bidder.

31.     Absent entry of a sale order and the closing of a Sale Transaction or an Asset Sale Transaction, as applicable, the Assigned Contracts shall not be deemed assumed or assigned, and shall in all respects be subject to further administration under the Bankruptcy Code.

WEIL:\97007307\1\41703.0010

32.     The inclusion of a contract, lease, or other agreement on the Cure Notice or any Supplemental Cure Notice shall not constitute or be deemed a determination or admission by the Debtors or any other party in interest that such contract or other document is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Cost is due (all rights with respect thereto being expressly reserved).  The Debtors reserve all of their rights, claims, defenses, and causes of action with respect to each contract or other document listed on the Cure Notice or any Supplemental Cure Notice.

### Provisions Applicable to Freddie Mac, Fannie Mae and Ginnie Mae

33.     *Freddie Mac*.  Notwithstanding any other provision of this Order or any other order in these chapter 11 cases, (a) the Debtors' mortgage servicing rights with respect to mortgages which are now or hereafter serviced by the Debtors for Freddie Mac shall not be transferred by the Debtors to a Successful Bidder (or any other entity) without the express prior written consent of Freddie Mac in its sole and absolute discretion; (b) the Debtors and the Reorganized Debtors, as applicable, shall not assume, assume and assign, or otherwise transfer any agreement between any of the Debtors and Freddie Mac, including, without limitation, the Freddie Mac Agreements, without the express prior written consent of Freddie Mac in its sole and absolute discretion; and, (c) any proposed severance of rights and obligations or any other proposed modification of any agreement, including, without limitation, the Freddie Mac Agreements, between any of the Debtors and Freddie Mac shall be subject to the prior written consent of Freddie Mac in its sole and absolute discretion.  The Debtors and Freddie Mac shall enter into good faith negotiations and use commercially reasonable efforts to resolve the claims of Freddie Mac and the assumption or assumption and assignment of the Freddie Mac Agreements in a Sale Transaction or an Asset Sale Transaction, as applicable.

WEIL:\97007307\1\41703.0010

34.    ***Fannie Mae***.  Notwithstanding any other provision of this Order or any other order in these Chapter 11 Cases to the contrary, (a) the Debtors' mortgage servicing rights and obligations relating to Fannie Mae shall not be transferred by the Debtors to a Successful Bidder (or any other person or entity) without the express prior written consent of Fannie Mae in its sole and absolute discretion; (b) the assumption or assumption and assignment of any agreements between any of the Debtors and Fannie Mae, including, without limitation, the Fannie Mae Lender Contracts, shall be subject to the express prior written consent of Fannie Mae in its sole and absolute discretion; and (c) any proposed severance of rights and obligations or any other proposed modification of any agreement, including, without limitation, the Fannie Mae Lender Contracts, between any of the Debtors and Fannie Mae shall be subject to the prior written consent of Fannie Mae in its sole and absolute discretion.    Without limiting the generality of, and subject to, the foregoing, in connection with the proposed assumption or assumption and assignment of any agreement, including, without limitation, the Fannie Mae Lender Contracts, between any of the Debtors and Fannie Mae, may be assumed or assumed and assigned only upon (a)(i) the Reorganized Debtors agreeing to honor all obligations under the Fannie Mae Lender Contracts whether incurred prior to or after the Effective Date; (ii) in the case of an assignment in a Sale Transaction, as applicable, repayment in full of the Cure Amounts; or (iii) such other treatment of the Cure Amount or any other obligations as shall be agreed to by Fannie Mae and the Debtors in good faith negotiations and (b) adequate assurance of future performance.

35.    ***Ginnie Mae***.  Notwithstanding any other provision of this Order or any other order in these chapter 11 cases, (a) the Debtors' mortgage servicing and securitization obligations relating to Ginnie Mae shall not be transferred by the Debtors to a Successful Bidder without the express prior written consent of Ginnie Mae in its sole and absolute discretion; (b) the

15

assumption or assumption and assignment of any agreements between any of the Debtors and Ginnie Mae, including, without limitation, the Ginnie Mae Agreements, shall be subject to the express prior written consent of Ginnie Mae in its sole and absolute discretion; and (c) any proposed severance of rights and obligations or any other proposed modification of any agreement, including, without limitation, the Ginnie Mae Agreements, between any of the Debtors and Ginnie Mae shall be subject to the prior written consent of Ginnie Mae in its sole and absolute discretion. The Debtors and Ginnie Mae shall enter into good faith negotiations and use commercially reasonable efforts to resolve the claims of Ginnie Mae and the assumption or assumption and assignment of the Ginnie Mae Agreements in a Sale Transaction or an Asset Sale Transaction, as applicable.

### General Provisions

36.     The Debtors are authorized to make non-substantive changes to the Bidding Procedures, the Assumption and Assignment Procedures, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming non-substantive changes to reflect any such changes made to the Disclosure Statement and the Plan prior to mailing.

37.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, or any applicable provisions of the Local Rules or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

38.     The Debtors are authorized to take all steps necessary or appropriate to carry out this Order.

39.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

WEIL:\97007307\1\41703.0010

Dated:    April 23, 2019
          New York, New York

                                        /s/ *James L. Garrity, Jr.*
                                        THE HONORABLE JAMES L. GARRITY, JR.
                                        UNITED STATES BANKRUPTCY JUDGE

WEIL:\97007307\1\41703.0010

## Schedule 1

**Proposed Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
                                                           :
In re                                                      :    **Chapter 11**
                                                           :
**DITECH HOLDING CORPORATION**, *et al.*,                  :    **Case No. 19-10412 (JLG)**
                                                           :
            Debtors.[1]                                    :    **(Jointly Administered)**
                                                           :
---------------------------------------------------------------X

## BIDDING PROCEDURES

### Overview

On February 11, 2019, Ditech Holding Corporation ("**Ditech**") and its debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). These chapter 11 cases have been consolidated for procedural purposes under the lead case: *In re Ditech Holding Corporation*, *et al.*, Case No 19-10412 (JLG).

On [___], 2019, the Bankruptcy Court entered an order (ECF No. __) (the "**Bidding Procedures Order**"), which, among other things, authorized the Debtors to solicit bids and approved these procedures (the "**Bidding Procedures**") for the consideration of the highest or otherwise best bid for all or a portion of the Debtors' assets on the terms and conditions set forth herein.[2]

The Bidding Procedures describe, among other things: (i) the procedures for bidders to submit bids for the Debtors' assets; (ii) the manner in which bidders and bids become Qualified Bidders and Qualified Bids; (iii) the process for negotiating the bids received; (iv) the conduct of the Auction if the Debtors receive Qualified Bids; (v) the procedure for the ultimate selection of any Successful Bidder; and (vi) the process for approval of a Sale Transaction or Asset Sale Transaction(s) at the Sale Hearing (as defined herein).

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

[2]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such term in the Bidding Procedures Order.

**The Debtors reserve the right, subject to the exercise of their reasonable business judgment, and in good faith consultation with the Consultation Parties (as defined herein), to modify or terminate these Bidding Procedures, to waive terms and conditions set forth herein, to extend any of the deadlines or other dates set forth herein, to adjourn the Auction and/or Sale Hearing, and/or to terminate discussions with any and all prospective bidders at any time and without specifying the reasons therefor, in each case, to the extent not materially inconsistent with these Bidding Procedures and/or the Bidding Procedures Order.**

## Summary of Important Dates

| Key Event | Deadline |
|---|---|
| Deadline to submit Non-Binding Indications of Interest | No later than May 6, 2019 at 4:00 p.m. (ET) |
| Deadline to submit Bids | May 28, 2019 at 4:00 p.m. (ET) |
| Deadline for Debtors to notify Bidders of status as Qualified Bidders | May 29, 2019 at 4:00 p.m. (ET) |
| Auction, if necessary, to be conducted at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 | May 30, 2019 at 10:00 a.m. (ET) |
| Deadline to file notice of (i) Successful Bid and Back-Up Bid and (ii) identity of Successful Bidder and Back-Up Bidder | June 3, 2019 at 4:00 p.m. (ET) |
| Deadline to file objections to Sale Transaction or Asset Sale Transaction (same as Confirmation Objection Deadline) | June 10, 2019 at 4:00 p.m. (ET) |
| Sale Hearing | June 20, 2019 |

## Assets To Be Sold

The Debtors' assets are comprised of three primary segments described below. Parties may submit bids for the purchase and sale of any and all of the Debtors' assets, including any of the following segments or any assets in any such segments, in accordance with the terms and conditions set forth herein.

    a) <u>Forward Mortgage Origination Business</u>.

The Debtors originate mortgage loans exclusively through Ditech Financial LLC ("**Ditech Financial**"), an indirect wholly owned subsidiary of Ditech, through its consumer, correspondent and wholesale lending channels. Almost all of the loans that Ditech Financial originates are conventional mortgage loans eligible for securitization by government-sponsored enterprises (such

2

as Fannie Mae and Freddie Mac[3]) or mortgage loans eligible for securitizations guaranteed by Ginnie Mae.[4] Ditech Financial sells substantially all of the mortgage loans it originates into Fannie Mae- and Freddie Mac-sponsored securitizations or into mortgage pools insured by Ginnie Mae.

For the year ended December 31, 2018, Ditech Financial sold mortgage loans of $12.4 billion in unpaid principle balance ("**UPB**"), consisting of approximately (i) $5.4 billion in Fannie Mae/Freddie Mac conventional conforming loans, (ii) $7.0 billion of Ginnie Mae loans, and (iii) $28.3 million of jumbo and other loans. On average, Ditech Financial sells or securitizes loans funded through warehouse borrowings in approximately 20 days from the date of origination.

Parties may submit bids for the purchase and sale of any and all of the Debtors' assets in the Forward Mortgage Origination Business.

b)      Forward Mortgage Servicing Business.

Ditech Financial performs loan servicing for mortgage loans that fall into two categories: (i) mortgage loans for which Ditech Financial owns the mortgage service rights ("MSRs") and (ii) mortgage loans for which Ditech Financial performs subservicing for third party owners of MSRs. Ditech Financial typically originates the mortgage loans associated with such MSRs and sells them into securitization trusts sponsored by Fannie Mae or Freddie Mac (on a servicing-retained basis) or into mortgage pools insured by Ginnie Mae. The Company's servicing portfolio consists of MSRs related to Fannie Mae, Freddie Mac, and Ginnie Mae loans as well as manufactured housing and other private label loans. As of December 31, 2018, the Company's owned MSR portfolio consisted of (i) Fannie Mae MSRs relating to loans with $37.3 billion of UPB, (ii) Ginnie Mae MSRs relating to loans with $19.5 billion of UPB, (iii) Freddie Mac MSRs relating to loans with $215 million of UPB, and (iv) manufactured housing and private-label MSRs with $7.4 billion of UPB.

As of December 31, 2018, Ditech Financial serviced approximately 1.4 million loans with a total UPB of $170 billion, of which approximately 720,000 loans with a total UPB of $102 billion are subserviced by Ditech Financial.[5]

---

[3]     As used herein, **Fannie Mae** means the Federal National Mortgage Association, and **Freddie Mac** means the Federal Home Loan Mortgage Corporation. Fannie Mae and Freddie Mac are government-sponsored enterprises chartered by Congress that buy and securitize mortgage loans originated by mortgage lenders, thereby enabling such lenders quick access to liquidity fueled by market demand for mortgage backed securities ("**MBS**").

[4]     As used herein, "**Ginnie Mae**" means the Government National Mortgage Association. Ginnie Mae is a federal corporation within the Department of Housing and Urban Development ("**HUD**"), a federal agency, that guarantees investors the timely payment of principal and interest on MBS backed by federally insured or guaranteed loans (*e.g.*, loans insured by the Federal Housing Administration (the "**FHA**"), guaranteed by the Department of Veterans Affairs, or guaranteed by the Department of Agriculture).

[5]     The number of loans serviced by the Debtors and the total UPB associated therewith is subject to change based on certain events described in the Debtors' Disclosure Statement. *See Amended Disclosure Statement for Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* [ECF No. 315], Article III, Section C.

WEIL:\97007307\1\41703.0010

Parties may submit bids for the purchase and sale of any and all of the Debtors' assets in the Forward Mortgage Servicing Business.

c)       Reverse Mortgage Servicing Business.

Reverse Mortgage Solutions, Inc. ("**RMS**"), an indirect wholly owned subsidiary of Ditech, primarily focuses on servicing and subservicing reverse mortgage loans, the majority of which are home equity conversion mortgages ("**HECMs**") insured by the FHA.  A HECM is a type of loan that allows homeowners aged 62 or older to borrow money against the equity value of their homes. Unlike traditional home equity loans, HECMs are non-recourse loans without a fixed term whose balances increase over time as interest and other fees are added to the borrowers' total obligations. RMS also provides management and disposition services in connection with real estate owned property ("**REO Property**") through paying applicable taxes, insurance, homeowner's association fees, and property maintenance expenses.

When an HECM meets certain requirements, RMS, as the issuer of the related HECM securitization, is required to buyout such HECM from the relevant securitization.  As of December 31, 2018, HECM-buyout loans held on RMS's balance sheet totaled over $1 billion.

As of December 31, 2018, RMS serviced or subserviced approximately 88,000 loans with a total UPB of approximately $17.1 billion, of which approximately 35,000 loans with an unpaid principal balance of $7.4 billion are subserviced by RMS.
Parties may submit bids for the purchase and sale of any and all of the Debtors' assets in the Reverse Mortgage Servicing Business.

## Due Diligence

The Debtors have posted copies of all material documents related to the Debtors' assets to the Debtors' confidential electronic data room (the "**Data Room**").  To access the Data Room, a party must submit to the Debtors' advisors:

(A)      an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors (unless such party is already a party to an existing confidentiality agreement with the Debtors that is acceptable to the Debtors for this due diligence process, in which case such agreement shall govern); and

(B)      sufficient information, as reasonably determined by the Debtors, to allow the Debtors to determine that the interested party (i) has the financial wherewithal to consummate a Sale Transaction or an Asset Sale Transaction, as applicable, and (ii) intends to access the Data Room for a purpose consistent with these Bidding Procedures.

An interested party that meets the aforementioned requirements to the reasonable satisfaction of the Debtors shall be a "**Potential Bidder**."  As soon as practicable, the Debtors will provide such Potential Bidder access to the Data Room; provided that, such access may be terminated by the Debtors in their reasonable discretion at any time for any reason whatsoever, including that a Potential Bidder does not become a Qualified Bidder or these Bidding Procedures are terminated.

WEIL:\97007307\1\41703.0010

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate a Sale Transaction or an Asset Sale Transaction, as applicable.

Until the Bid Deadline, the Debtors will provide any Potential Bidder with reasonable access to the Data Room and any additional information requested by Potential Bidders (subject to any restrictions pursuant to applicable law) that the Debtors believe to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to the Debtors' investment bankers, Houlihan Lokey (Attn: Abraham Mercado (AMercado@HL.com) and Dan Martin (DMartin@HL.com)). Unless prohibited by law or otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder will cease if (i) the Potential Bidder does not become a Qualified Bidder, (ii) these Bidding Procedures are terminated, or (iii) the Potential Bidder breaches any obligations under its confidentiality agreement.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Debtors' assets to any person or entity who (i) is not a Potential Bidder, (ii) does not comply with the participation requirements set forth herein, or (iii) in the case of competitively sensitive information, is a competitor of the Debtors.

**Designation of Stalking Horse Bidders**

Designation of Stalking Horse Bidders. The Debtors may, in consultation with the Consultation Parties (as defined herein), designate one or more Stalking Horse Bidders and enter into Stalking Horse Agreements with such Stalking Horse Bidders. To the extent the Debtors designate a Stalking Horse Bidder with respect to any of the assets, the Debtors shall promptly upon execution of a Stalking Horse Agreement (and in no event more than one (1) calendar day following such execution) file with the Bankruptcy Court, serve on the Objection Notice Parties, and cause to be published on the website maintained by the Debtors' claims and noticing agent in these chapter 11 cases, located at Debtors' claims agent's website at http://dm.epiq11.com/Ditech, a notice that contains information about the Stalking Horse Bidder, the Stalking Horse Bid, and attaches the proposed Stalking Horse Agreement (the "**Notice of Stalking Horse Bidder**").

Stalking Horse Bid Protections. The Debtors may, in consultation with the Consultation Parties (as defined herein), (i) establish initial overbid minimum and subsequent bidding increment requirements; (ii) offer each Stalking Horse Bidder a break-up fee in an amount agreed to by the Company in consultation with the Term Loan Ad Hoc Group and the Committee (as defined herein) (a "**Termination Payment**"); (iii) provide that, if the Stalking Horse Bidder bids on certain assets at the Auction, the Stalking Horse Bidder will be entitled to a credit in the amount of its Termination Payment against the increased purchase price for the assets; and (iv) provide other appropriate and customary protections to a Stalking Horse Bidder (the Termination Payment and the other bid protection described in this paragraph collectively are referred to as the "**Stalking Horse Bid Protections**"). The Stalking Horse Bid Protections shall be described in detail, including the amount and calculation of such Stalking Horse Bid Protections, in the Notice of Stalking Horse Bidder.

Objections to Designation of Stalking Horse Bidders. Any objections (each, a "**Stalking Horse Objection**") to the designation of a Stalking Horse Bidder, including any Stalking Horse Bid

Protections pursuant to the terms and provisions of a Stalking Horse Agreement, must (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party (unless such party is the U.S. Trustee or a Consultation Party); (iii) state with particularity the basis and nature of any objection; (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the Court (a) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (vi) be served upon the Objection Notice Parties[6] within ten (10) calendar days after the filing of the relevant Notice of Stalking Horse Bidder.

If a timely Stalking Horse Objection is filed and served in accordance with the preceding paragraph, the proposed Stalking Horse Bid Protections will not be deemed approved until either the Stalking Horse Objection is resolved by agreement of the objecting party and the Debtors or by order of the Bankruptcy Court.

If no timely Stalking Horse Objection is filed and served with respect to an applicable Stalking Horse Agreement in accordance with the Bidding Procedures, the Stalking Horse Bid Protections shall be deemed approved without further order of the Court upon the expiration of the objection deadline.

For all purposes under the Bidding Procedures, any Stalking Horse Bidder approved as such pursuant to this Order shall be considered a Qualified Bidder, and the applicable Stalking Horse Bid shall be considered a Qualified Bid. In the event that the applicable Stalking Horse Bid is the only Qualified Bid received by the Debtors in respect of the applicable assets by the Bid Deadline, the applicable Stalking Horse Bidder shall be deemed the Successful Bidder with respect to the applicable assets.

## Non-Binding Indications of Interest

Parties interested in purchasing any of the Debtors' assets, whether as part of a Sale Transaction or an Asset Sale Transaction, are encouraged to submit an indication of interest to the Debtors by

---

[6]   As defined in the Bidding Procedures Order, the Objection Notice Parties include: (a) Ditech Holding Corporation, et al., 3000 Bayport Drive, Suite 985, Tampa, Florida 33607 (Attn: John Haas); (b) William K. Harrington, U.S. Department of Justice, Office of the U.S. Trustee, 201 Varick Street, Room 1006, New York, New York 10014 (Attn: Greg M. Zipes and Benjamin J. Higgins); (c) Counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C. and Sunny Singh); (d) Counsel to the Prepetition Administrative Agent, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Brian M. Resnick and Michelle M. McGreal); (e) Counsel to the Term Loan Ad Hoc Group, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654 (Attn: Patrick J. Nash and John Luze); (f) Counsel to the DIP Agent and DIP Lender, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, New York 10036 (Attn: Sarah M. Ward, Mark A. McDermott, and Melissa Tiarks); (g) Counsel to Nomura Corporate Funding Americas, LLC, Jones Day, 250 Vesey Street, New York, New York 10281 (Attn: Ben Rosenblum); and (h) Counsel to the Creditors' Committee, Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, New York 10017 (Attn: Robert J. Feinstein and Bradford J. Sandler).

**May 6, 2019 at 4:00 p.m. (ET)** in writing expressing their interest and identifying the assets in which they are expressing such interest (each a "**Non-Binding Indication of Interest**"). Non-Binding Indications of Interest should be sent to the Debtors' investment bankers, Houlihan Lokey (Attn: Reid Snellenbarger (RSnellenbarger@HL.com), Jeff Levine (JMLevine@HL.com), Jimmy Page (JPage@HL.com), and Dan Martin (DMartin@HL.com) and Ditechbids@weil.com).

Submitting a Non-Binding Indication of Interest by the deadline listed herein does not obligate the interested party to consummate a transaction, submit a formal bid or to participate in the bidding process. It also does not exempt such party from having to submit a Qualified Bid by the applicable Bid Deadline (as defined below) or comply with these Bidding Procedures to participate in any subsequent Auction for the assets on which such party is indicating an interest, all as described below. For the avoidance of doubt, a party that does not submit a Non-Binding Indication of Interest is not precluded from submitting a Qualified Bid by the Bid Deadline.

### Bid Deadline

A Potential Bidder that desires to make a bid on any of the Debtors' assets shall deliver electronic copies of its bid so as to be received no later than **May 28, 2019 at 4:00 p.m. (ET)** (the "**Bid Deadline**"); provided that, the Debtors may, in consultation with the Consultation Parties, extend the Bid Deadline without further order of the Bankruptcy Court subject to providing notice to all Potential Bidders and any Stalking Horse Bidders. **The submission of a bid by the Bid Deadline shall constitute a binding and irrevocable offer to acquire the assets specified in such bid.** Any party that does not submit a bid by the Bid Deadline will not be allowed to (i) submit any offer after the Bid Deadline or (ii) participate in any Auction.

Bids should be submitted by email to the following Debtor representatives:

| Weil, Gotshal & Manges LLP | Houlihan Lokey Capital, Inc. |
|---|---|
| Ditechbids@weil.com | Reid Snellenbarger |
| Ray C. Schrock, P.C. | (RSnellenbarger@HL.com) |
| (Ray.Schrock@weil.com) | Jeff Levine |
| Frederick Green | (JMLevine@HL.com) |
| (Frederick.Green@weil.com) | Jimmy Page |
| Gavin Westerman | (JPage@HL.com) |
| (Gavin.Westerman@weil.com) | Dan Martin |
| Sunny Singh | (DMartin@HL.com) |
| (Sunny.Singh@weil.com) | |
| Amanda Fenster | |
| (Amanda.Fenster@weil.com) | |
| Alexander W. Welch | |
| (Alexander.Welch@weil.com) | |

### Consultation Parties

Throughout the bidding process, the Debtors and their advisors will regularly and timely consult with the following parties (collectively, the "**Consultation Parties**"):

WEIL:\97007307\1\41703.0010

i.  the Term Loan Ad Hoc Group and its advisors, Kirkland & Ellis LLP and FTI Consulting, Inc.;

ii.  Barclays Bank PLC, in its capacity as DIP Agent, Barclays Capital Inc., in its capacity as DIP lender, and their advisors, Skadden, Arps, Slate, Meagher & Flom LLP;

iii.  Nomura Corporate Funding Americas, LLC, in its capacity as DIP lender and its advisors, Jones Day LLP;

iv.  the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "**Committee**") and its advisors, Pachulski Stang Ziehl & Jones LLP, Rich Michaelson Magaliff, LLP, and Goldin & Associates, LLC;

v.  Fannie Mae and its advisors, O'Melveny & Myers LLP;

vi.  Freddie Mac and its advisors, McKool Smith PC; and

vii.  Ginnie Mae and its advisors.

The Debtors shall promptly provide copies of all Bids and Non-Binding Indications of Interest received by the Debtors to the Consultation Parties, but in no event later than the next calendar day after such Bid or Non-Binding Indications of Interest is received; provided that the Consultation Parties must treat such Bids or Non-Binding Indications of Interest and any related information as confidential and shall not publicly disclose such information without the written consent of the Debtors and the applicable Bidder.

The Debtors shall not consult with or provide copies of Bids regarding any assets to any Consultation Party pursuant to the terms of these Bidding Procedures if such party has a Bid for such assets pending, or expressed any written interest in bidding for any of the assets; provided, that if such Consultation Party chooses not to submit any Bid, then such party may receive copies of all Bids following expiration of the latest possible Bid Deadline (as such Bid Deadline may be extended by the Debtors pursuant to the terms of these Bidding Procedures). Notwithstanding the foregoing, if a member of the Creditors' Committee submits a Qualified Bid, the Creditors' Committee will maintain its consultation rights as a Consultation Party; provided that the Creditors' Committee shall exclude such member from any discussions or deliberations regarding a transaction involving the applicable assets, and shall not provide any confidential information regarding the assets or a transaction involving the assets to the bidding committee member.

For the avoidance of doubt, any consultation rights afforded to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their reasonable business judgment. Further, for the avoidance of doubt, any rights that the Consultation Parties may have pursuant to the terms of other agreements, any orders of the Court, or the Bankruptcy Code are hereby reserved and shall not be affected by these Bidding Procedures or the Bidding Procedures Order. The rights of the Consultation Parties as to any Sale Transaction or Asset Sale Transaction, as applicable, are fully reserved.

WEIL:\97007307\1\41703.0010

## Form and Content of Qualified Bid

A bid is a signed document from a Potential Bidder received by the Bid Deadline that identifies the purchaser by its legal name and any other party that will be participating in connection with the bid (a "**Bid**").  To constitute a "**Qualified Bid**" a Bid must include, at a minimum, the following:[7]

      i.      <u>Acquired Assets</u>.  Each Bid must clearly identify, in writing and as applicable, the particular assets the Potential Bidder seeks to acquire from the Debtors, including any contracts and leases of the Debtors that would be assumed and assigned in connection with a proposed Sale Transaction or an Asset Sale Transaction, as applicable.  With respect to a bid for multiple assets or all of the Debtors' assets, each Bid must clearly state the allocation of value in U.S. dollars that the Potential Bidder associates with the Forward Mortgage Origination Business, the Forward Mortgage Servicing Business, and the Reverse Mortgage Servicing Business, including a description of any significant assumptions on which such valuation is based.  For the avoidance of doubt, a Qualified Bid may include a bid for less than all or substantially all of the Debtors' assets.[8]

      ii.      <u>Purchase Price; Form of Consideration; Cash Requirements; Assumed Liabilities; Credit Bid</u>.  Each Bid must clearly set forth, as applicable:

      (a)      <u>Purchase Price</u>.  Each Bid must clearly identify the purchase price to be paid (the "**Purchase Price**"), and whether the Bid is based on an all-cash offer or consists of certain non-cash components, including, without limitation, a Credit Bid and/or the assumption of liabilities;

      (b)      <u>Cash Requirements</u>.  Each Bid must provide sufficient cash consideration for the payment of any applicable Termination Payment in cash in full.  Any Credit Bid (as defined herein) must include a cash component sufficient to pay any applicable Termination Payment and all obligations secured by senior liens on the applicable assets;

      (c)      <u>Assumed Liabilities</u>.  Each Bid must clearly identify, in writing and as applicable, the particular liabilities, if any, the Bidder seeks to assume.  For the avoidance of doubt, a

---

[7]    The Debtors, in consultation with the Consultation Parties, may waive any of the following requirements with respect to any Bid where the circumstances justify such waiver.

[8]    A Qualified Bid may include a bid for less than all or substantially all of the Debtors' assets.  The Debtors shall consider such Qualified Bids as long as the Debtors have an acceptable sale, restructuring or other solution for any excluded assets.

Qualified Bid may include a bid for less than all or substantially all of the Debtors' liabilities; and

(d)     Credit Bid.  Persons or entities holding a perfected security interest in the assets specified in the Bid may seek to submit a credit bid (a "**Credit Bid**") on such assets, to the extent permitted by applicable law and the documentation governing the Debtors' prepetition or postpetition secured credit facilities, and subject to any applicable limitations set forth in the Prepetition Intercreditor Agreement.[9]

iii.     Proposed APA.  Each Bid must include an executed asset purchase agreement (the "**Proposed APA**") for the assets included in such Bid, together with a redline comparing the Proposed APA to the form APA distributed by the Debtors to Potential Bidders.

iv.     Unconditional Offer.  A statement that the Bid is formal, binding, and unconditional, is not subject to any further due diligence or financing contingency, and is irrevocable until the Debtors notify the Potential Bidder that such Bid is not a Successful Bid or a Back-Up Bid, or until the first business day after the close of a Sale Transaction or an Asset Sale Transaction, as applicable.

v.     Proof of Financial Ability to Perform.  Each Bid must contain such financial and other information that allows the Debtors, in consultation with the Consultation Parties, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate a Sale Transaction or an Asset Sale Transaction, as applicable, including, without limitation, such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party. Without limiting the foregoing, such information must include current financial statements or similar financial information certified to be true and correct as of the date thereof, proof of financing commitments if needed to consummate the transaction (not subject to, in the Debtors' discretion, any unreasonable conditions), contact information for verification of such information, including any financing sources, and any other information reasonably requested by the Debtors necessary to demonstrate adequate

---

[9]     "**Prepetition Intercreditor Agreement**" means the "Intercreditor Agreement" as defined in that certain Second Amended and Restated Credit Agreement, dated as of February 9, 2018 (and as amended by that certain Amendment No. 1 to Second Amended and Restated Credit Agreement, dated as of March 29, 2018), among Ditech, as the borrower, the Prepetition Administrative Agent and the other lenders party thereto, as amended, modified, or supplemented from time to time prior to the Commencement Date.  Capitalized terms used in this footnote but not otherwise defined herein shall have the meaning ascribed to such terms in the *Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, dated March 5, 2019 (as may be amended, modified, or supplemented).

WEIL:\97007307\1\41703.0010

assurance of future performance and to demonstrate that such Potential Bidder has the ability to consummate a Sale Transaction or an Asset Sale Transaction, as applicable, in a timely manner.

vi.    <u>Designation of Contracts and Leases</u>.    Each Bid must identify with particularity each and every executory contract and unexpired lease, the assumption and assignment of which is a condition to closing a Sale Transaction or an Asset Sale Transaction, as applicable; <u>provided</u> <u>that</u>, the Bid may allow for the Potential Bidder to remove executory contracts and unexpired leases from the list of contracts to be assumed and assigned any time prior to the closing of a Sale Transaction or an Asset Sale Transaction, as applicable; <u>provided</u> <u>further</u>, that to the extent the Debtors identify any additional executory contracts or unexpired leases after the Bid is submitted, the Bid may allow for the Potential Bidder to add such executory contracts and unexpired leases to the list of contracts to be assumed and assigned any time from and after the Bid is submitted.    As soon as reasonably practicable, the Debtors shall provide notice to the applicable contract counterparties of such removal and/or addition of such counterparty's executory contracts and unexpired leases.

vii.    <u>Required Approvals</u>.  A statement or evidence (i) that the Potential Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, or other antitrust laws, as applicable, and pay the fees associated with such filings; (ii) of the Potential Bidder's plan and ability to obtain all requisite governmental, regulatory, or other third-party approvals, including, among others, any rating agency requirements, licenses and approvals required by Freddie Mac, Fannie Mae, Ginnie Mae, the Federal Housing Finance Agency, and HUD, and the proposed timing for the Potential Bidder to undertake the actions required to obtain such approvals; (iii) of the Potential Bidder's plan and ability to transition servicing from the Debtors to its own servicing platform; and (iv) that the Bid is reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors.  A Potential Bidder further agrees that its legal counsel will coordinate in good faith with Debtors' legal counsel to discuss and explain such Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable.

viii.    <u>Disclosure of Identity and Corporate Authorization</u>.  Each Bid must (i) fully disclose the identity of the Potential Bidder of each entity that will be bidding or otherwise participating in such bid, and the complete terms of any such participation, and (ii) include evidence of corporate authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of a Bid, participation in the Auction, and closing of the transactions

11

contemplated by the Potential Bidder's Proposed APA in accordance with the terms of the Bid and these Bidding Procedures.

ix.    <u>No Entitlement to Expense Reimbursement or Other Amounts</u>.  With the exception of any Stalking Horse Bid, expressly state that the Bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement, and a waiver of any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to the bidding process.

x.    <u>Joint Bids</u>.  The Debtors may approve joint Bids in their reasonable discretion on a case-by-case basis.

xi.    <u>Representations and Warranties</u>. Each Bid must include the following representations and warranties:

a.    a statement that the Potential Bidder has had an opportunity to conduct any and all due diligence regarding the applicable assets prior to submitting its Bid;

b.    a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Potential Bidder's Proposed APA ultimately accepted and executed by the Debtors;

c.    a statement that the Potential Bidder agrees to serve as Back-Up Bidder, if its Bid is selected as the next or highest or next best bid after the Successful Bid with respect to the applicable assets;

d.    a statement that the Potential Bidder has not engaged in any collusion with respect to the submission of its Bid;

e.    a statement that all proof of financial ability to consummate a Sale Transaction or an Asset Sale Transaction, as applicable, in a timely manner and all information provided to support adequate assurance of future performance is true and correct; and

f.    a statement that the Potential Bidder agrees to be bound by the terms of the Bidding Procedures.

A Potential Bidder must also accompany its Bid with:

xii.    a cash deposit in the amount of ten percent (10%) of the Purchase Price (a "**Good Faith Deposit**"), unless otherwise agreed to by the Debtors, in

WEIL:\97007307\1\41703.0010

consultation with the Consultation Parties, and a Potential Bidder; provided that, a Potential Bidder submitting a Credit Bid will not be required to accompany its Bid with a Good Faith Deposit for any portion of the Purchase Price that is a Credit Bid, but shall be required to provide a good Faith Deposit for any portion of its Bid that is not a Credit Bid.

xiii.    the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the Bid submitted by the Potential Bidder.

xiv.    a covenant to cooperate with the Debtors and the Consultation Parties to provide pertinent factual information regarding the Potential Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements.

xv.    if the value of a Bid includes additional non-cash components, a detailed analysis of the value of any additional non-cash component of the Bid, including any conditions thereto, and back-up documentation to support such value.

## **Good Faith Deposit**

A Good Faith Deposit must be deposited, prior to the Bid Deadline, with an escrow agent selected by the Debtors (the "**Escrow Agent**") pursuant to an escrow agreement to be provided by the Debtors. To the extent a Qualified Bid is modified before, during, or after the Auction, the Debtors reserve the right to require that such Qualified Bidder adjust its Good Faith Deposit so that it equals ten percent (10%) of the Purchase Price (or such other amount as agreed to by the Debtors in consultation with the Consultation Parties in accordance with subsection (xii) of *Form and Content of Qualified Bid*). If a Qualified Bidder is required to adjust its Good Faith Deposit, its status as a Qualified Bidder shall be suspended pending satisfaction of such adjustment.

## **Review of Bids; Designation of Qualified Bids**

The Debtors, in consultation with the Consultation Parties, will evaluate Bids that are timely submitted and may engage in negotiations with Potential Bidders who submitted Bids as the Debtors deem appropriate in the exercise of their business judgment, based upon the Debtors' evaluation of the content of each Bid.

A Bid received for the assets that is determined by the Debtors, in consultation with the Consultation Parties, to meet the requirements set forth herein will be considered a "**Qualified Bid**" and any bidder that submits a Qualified Bid (including any Stalking Horse Bid) will be considered a "**Qualified Bidder**."

By no later than **May 29, 2019** (the "**Qualified Bid Deadline**"), the Debtors shall determine, in their reasonable judgment, and in consultation with the Consultation Parties, which of the Bids received by the Bid Deadline qualifies as a Qualified Bid. The Debtors shall notify each Bidder who submits a Qualified Bid of its status as a Qualified Bidder by the Qualified Bid Deadline.

WEIL:\97007307\1\41703.0010

In evaluating the Bids, the Debtors may take into consideration the following non-binding factors:

1.      the amount of the purchase price and Credit Bid and/or other non-cash consideration, as applicable, set forth in the Bid (provided that for purposes of evaluating competing bids, every dollar of a Credit Bid shall be treated the same as a dollar from a cash or other non-cash Bid, and a Credit Bid shall not be considered inferior to a comparable cash or other non-cash Bid because it is a Credit Bid);

2.      the assets included in or excluded from the Bid, including any executory contracts or leases proposed to be assumed;

3.      the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates, taking into account any Stalking Horse Bidder's rights to any Termination Payment;

4.      any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities;

5.      the proposed transition of servicing operations from the Debtors to the Qualified Bidder;

6.      the ability of the Qualified Bidder to service mortgages;

7.      the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals;

8.      the impact on employees and employee claims against the Debtors;

9.      the impact on trade creditors; and

10.     any other factors the Debtors may reasonably deem relevant consistent with their fiduciary duties.

The Debtors reserve the right, after consulting with the Consultation Parties, to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid.  The Debtors may, after consulting with the Consultation Parties, amend or waive the conditions precedent to being a Qualified Bidder at any time, in their reasonable business judgment and in consultation with the Consultation Parties, in a manner consistent with their fiduciary duties and applicable law (as reasonably determined in good faith by the Debtors in consultation with their legal counsel).

The Debtors, in consultation with the Consultation Parties, may accept a single Bid or multiple partial Bids for non-overlapping assets such that, if taken together, such multiple partial bids would otherwise meet the standards for a single Qualified Bid as to any assets or combinations of assets that the Debtors determine to auction (in which event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the Auction).

WEIL:\97007307\1\41703.0010

Without the written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid for the Debtors during the period that such Qualified Bid remains binding as specified herein; provided that, any Qualified Bid may be improved at the Auction as set forth in these Bidding Procedures.

The Debtors, in consultation with the Consultation Parties, shall make a determination regarding the following:

> (A)    the assets and/or any combination of assets to be auctioned by the Debtors; and

> (B)    which Bids have been determined to be Qualified Bids and the applicable assets relating to such Qualified Bid.

Notwithstanding anything herein to the contrary, (a) the DIP Credit Parties (as defined in the DIP Order),[10] as applicable, shall be deemed to be Qualified Bidders with respect to any Credit Bid of the DIP Obligations (as defined in the DIP Order); (b) any Credit Bid of DIP Obligations submitted by the applicable DIP Credit Parties shall be deemed to be a Qualified Bid; and (c) the DIP Credit Parties shall have the right to Credit Bid any portion and up to the entire amount of the outstanding DIP Obligations at or before the Auction pursuant to section 363(k) of the Bankruptcy Code with respect to the collateral securing the DIP Obligations; provided however, that any Credit Bid submitted by the DIP Credit Parties shall satisfy the requirements, as applicable, specified in "Form and Content of Qualified Bid" other than subsection (iii) (Proposed APA).

## **Bid Process for Private Label Securitizations**

1. Within three (3) business days of receipt of Non-Binding Indications of Interest and one (1) business day of determination of Qualified Bids, and subject to the applicable PLS Trustee entering into an acceptable confidentiality agreement, the Debtors will notify counsel to the PLS Trustees[11] by email of such Qualified Bids and provide the following details:

   - Treatment of the private label servicing agreements (the "**PLS Servicing Agreements**") is:

---

[10]    The "**DIP Order**" means the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 507, 546, 548, 555, 559, 560 and 561 (A) Authorizing Debtors to Enter Into Repurchase Agreement Facilities, Servicer Advance Facilities and Related Documents; (B) Authorizing Debtors to Sell Mortgage Loans and Servicer Advance Receivables in the Ordinary Course of Business; (C) Granting Back-Up Liens and Superpriority Administrative Expense Claims; (D) Authorizing Use of Cash Collateral and Granting Adequate Protection; (E) Modifying the Automatic Stay; (F) Scheduling a Final Hearing; and (G) Granting Related Relief* [ECF No. 53].

[11]    As used herein, "**PLS Trustees**" means the Bank of New York Mellon Trust Company, The Bank of New York Mellon, Deutsche Bank National Trust Company, and U.S. Bank, National Association, each on its own behalf and in its various capacities as trustee, indenture trustee, registrar, custodian and other agency roles and on behalf of certain affiliates in similar roles.

a) **Not Applicable** (e.g., Bid does not relate to PLS Servicing Agreements);

b) **Excluded** (e.g., Bid does not seek to assume any PLS Servicing Agreements);

c) **Assumed** (e.g., Bid seeks to assume PLS Servicing Agreements); or

d) **Conditionally Assumed** (e.g., Bid seeks to assume PLS Servicing Agreements, but also seeks to modify certain existing terms).

- If the treatment is "Assumed" or "Conditionally Assumed", the Debtors will provide the following information in relation to the Qualified Bid: (1) the name and contact details of the bidder, (2) the Bidders' bid package relating to (a) if applicable, any PLS Servicing Agreement to be "Assumed" and assigned specifying the securitization names and contract names, and (b) evidence of financial and operational ability to perform under the PLS Servicing Agreements, to the extent provided by the Bidder; and (3) with respect to any PLS Servicing Agreements where the treatment proposed is "Conditionally Assumed," information to determine the PLS Servicing Agreements proposed for such treatment and any proposed modifications to the existing terms of the PLS Servicing Agreements; provided that any communication with a Bidder must be done in the presence of the Debtors (or their advisors) unless expressly waived by the Debtors in writing.

2. No later than five (5) days from receipt of Non-Binding Indications of Interest, the Debtors will meet (including telephonically) with the PLS Trustees to discuss the treatment of PLS Servicing Agreements and, if applicable, the transition of servicing thereunder.

3. No later than five (5) days prior to determination of Qualified Bids, the Debtors will meet (including telephonically) with the PLS Trustees to discuss the treatment of PLS Servicing Agreements and, if applicable, the transition of servicing thereunder.

4. No later than two (2) days prior to the Auction (if applicable), the Debtors will meet (including telephonically) with the PLS Trustees to discuss the treatment of PLS Servicing Agreements and, if applicable, the transition of servicing thereunder.

5. The Debtors will continue to work in good faith with the PLS Trustees in the lead-up to the Sale Hearing and agree to meet with them on an as-needed basis, taking into consideration any extensions of deadlines and hearings set forth in this order.

6. The Debtors will make Potential Bidders aware of the representations and warranties that they may be required to make if they intend to assume or conditionally assume the PLS Servicing Agreements, and such representations and warranties will be sent to Potential Bidders; provided that failure to make such representations and warranties will not in and of itself disqualify a Potential Bidder as a Qualified Bidder.

WEIL:\97007307\1\41703.0010

7. In connection with a Successful Bidder's purchase of any of the servicing rights (the "**Servicing Rights**") related to the PLS Servicing Agreements and related transaction documents, the PLS Trustees have informed the Debtors that they intend to require that such Successful Bidder (the "**Purchaser**") make certain representations and warranties, on and as of the servicing transfer date (the "**Effective Date**"), and covenants, to be effective on and after the Effective Date, to the trustees of the applicable securitization trusts related to the PLS Servicing Agreements, which shall be similar to those provisions set forth below and which shall be set forth in a side letter with the applicable trustees.

### A.    Representations and Warranties.

(a) Due Incorporation and Good Standing.  Purchaser is duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation.  The Purchaser has all licenses necessary to carry on its business as currently being conducted and is duly authorized and qualified to do business in each applicable state contemplated by the Servicing Agreements or is otherwise exempt under applicable law from such qualification and no demand for such qualification has been made upon Purchaser by any state having jurisdiction and in any event Purchaser is or will be in compliance with the laws of any such state to the extent necessary to own the Servicing Rights and perform all of its obligations under the Servicing Agreements from and after the Effective Date.

(b) Authority and Capacity.  The Purchaser has all requisite power, authority and capacity to acquire the Servicing Rights from Seller and is able to operationally and administratively perform all of the servicer's obligations under the applicable Servicing Agreements.

(c) Obligation of Purchaser.  The acquisition of the Servicing Rights by the Purchaser shall constitute a legal, valid, binding and enforceable obligation of the Purchaser.

(d) No Conflict.  The acquisition of the Servicing Rights by the Purchaser and the performance by the Purchaser of its obligations under the Servicing Agreements will not conflict with or result in a breach of any of the terms, conditions or provisions of Purchaser's organizational documents or result in a material breach of any legal restriction or any material agreement or instrument to which Purchaser is now a party or by which it is, or its properties are,  bound, or constitute a material default or result in an acceleration under any of the foregoing, or result in the violation of any material law, rule, regulation, order, judgment or decree to which Purchaser is subject, or is otherwise applicable to the duties and obligations of the Purchaser under the Servicing Agreements or otherwise applicable to the assets related to such Servicing Agreements.

17

(e) <u>Litigation</u>.  There is no action, suit, proceeding, investigation or litigation pending or, to the best of Purchaser's knowledge, threatened, which either in any one instance or in the aggregate, would reasonably be expected to materially and adversely affect the Purchaser's ability to perform its obligations under the Servicing Agreements.

(f) <u>MERS Membership</u>.  The Purchaser is an approved member in good standing in the MERS system.

(g) <u>Servicing Platform</u>.  The Purchaser (a) is an approved servicer for Ginnie Mae, Freddie Mac or Fannie Mae, and (b) has a servicing portfolio, as applicable, of (i) residential mortgage loans with an unpaid principal balance of $[_____], (ii) home improvement contracts, promissory notes and installment loan agreements and home equity loans with an unpaid principal balance of $[_____], (iii) manufacturing housing conditional sales contracts and installment loan agreements with an unpaid principal balance of $[_____], and (iv) reverse mortgage loans with an unpaid principal balance of $[_____].

**B.  Covenants.**

(a) <u>Compliance with Servicing Agreements</u>.  The Purchaser shall service the assets in accordance with the applicable provisions of the related Servicing Agreement and applicable laws.

(b) <u>Cooperation</u>.  The Purchaser shall reasonably cooperate with the trustees and use commercially reasonable efforts as requested by the trustees to facilitate the transition of servicing to the Purchaser under the Servicing Agreements, which such transition shall be completed as soon as administratively practicable, but in no event later than [__] days from the Effective Date.

(c) <u>Required Borrower Notifications</u>.  The Purchaser shall be responsible for furnishing borrowers, in accordance with applicable law, with timely "hello letters" regarding the transfer of servicing of their loans.

**<u>Failure to Receive Qualified Bids For Substantially Similar Assets</u>**

If no Qualified Bid (other than the applicable Stalking Horse Bid, if any) is received by the Qualified Bid Deadline, the Debtors will not conduct the Auction, and shall file a notice with the Bankruptcy Court indicating that no Auction will be held.  The Debtors shall also publish such notice on the website of their claims and noticing agent, Epiq Corporate Restructuring, LLC (http://dm.epiq11.com/Ditech).

**<u>Auction Procedures</u>**

If the Debtors receive two or more Qualified Bids for substantially the same assets, the Debtors shall conduct the Auction on **May 30, 2019, beginning at 10:00 a.m. (ET) at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, or such other later date as may be determined by the Debtors in consultation with the Consultation Parties.**

WEIL:\97007307\1\41703.0010

Only a Qualified Bidder will be eligible to participate at the Auction, subject to such limitations as the Debtors may impose in good faith. In addition, professionals and/or other representatives of the Debtors and the Consultation Parties shall be permitted to attend and observe the Auction. Each Qualified Bidder shall be required to confirm, both before and after the Auction, that it has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction.

The Debtors may, in consultation with the Consultation Parties, adopt rules for the Auction at any time that the Debtors reasonably determine to be appropriate to promote a spirited and robust auction. Any rules developed by the Debtors will provide that all bids in the Auction will be made and received on an open basis, and all other bidders participating in the Auction will be entitled to be present for all bidding with the understanding that the true identity of each bidder placing a bid at the Auction will be fully disclosed to all other bidders participating in the Auction and that all material terms of a bid submitted in response to any successive bids made at the Auction will be disclosed to all other bidders. Each Qualified Bidder will be permitted what the Debtors, in consultation with the Consultation Parties, reasonably determine to be an appropriate amount of time to respond to the previous bid at the Auction. The Auction will be conducted openly and shall be transcribed or recorded.

The Debtors may, in the exercise of their business judgment, and in consultation with the Consultation Parties, identify the highest or otherwise best Qualified Bid as the successful bid (a "**Successful Bid**" and the bidder submitting such bid, a "**Successful Bidder**"). The Debtors may also identify a Qualified Bidder that submitted the next highest or otherwise best Qualified Bid as a back-up bid (a "**Back-Up Bid**" and the bidder submitting such bid, a "**Back-Up Bidder**"). A Back-Up Bid shall remain open and irrevocable until the earliest to occur of (i) consummation of a Sale Transaction or an Asset Sale Transaction, as applicable, with the Successful Bidder; (ii) the release of such Back-Up Bid by the Debtors in writing; and (iii) 120 days from the announcement of the Back-Up Bidder (unless otherwise agreed to by the Debtors, in consultation with the Consultation Parties) (such date, the "**Back-Up Bid Expiration Date**"). If a Sale Transaction or an Asset Sale Transaction, as applicable, with a Successful Bidder is terminated prior to the Back-Up Bid Expiration Date, the Back-Up Bidder shall be deemed a Successful Bidder and shall be obligated to consummate the Back-Up Bid as if it were a Successful Bid. Provided, however, that the Debtors are not required to accept any bid or designate a Successful Bidder or Back-Up Bidder.

Within one (1) business day after the Auction, a Successful Bidder shall submit to the Debtors fully executed documentation memorializing the terms of a Successful Bid. A Successful Bid may not be assigned to any party without the consent of the Debtors.

At any time before entry of an order approving an applicable Sale Transaction or Asset Sale Transaction envisioned by a Qualified Bid, the Debtors reserve the right to and may reject such Qualified Bid if such Qualified Bid, in the Debtors' judgment, is: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the applicable Sale Transaction or Asset Sale Transaction; or (iii) contrary to the best interests of the Debtors and their estates.

### Post-Auction Process

By **June 3, 2019 at 4:00 p.m. (ET)**, the Debtors shall file with the Bankruptcy Court a notice of a Successful Bid, Successful Bidder, Back-Up Bid, and Back-Up Bidder. Unless otherwise

WEIL:\97007307\1\41703.0010

required pursuant to the Debtors' fiduciary duties, the Debtors shall not consider any bids submitted after the conclusion of the Auction.

Within seven (7) days after the Auction, the Debtors shall direct the Escrow Agent to return the deposit of any bidder, together with interest accrued thereon, who is not declared a Successful Bidder or Back-Up Bidder. Within five (5) days after the Back-Up Bid Expiration Date, the Debtors shall direct the Escrow Agent to return the deposit of a Back-Up Bidder, together with interest accrued thereon (if any). Upon the authorized return of any such deposit, the bid of such Potential Bidder, Qualified Bidder or Back-Up Bidder, as applicable, shall be deemed revoked and no longer enforceable.

A Successful Bidder's deposit shall be applied against the cash portion of the purchase price of such bidder's Successful Bid upon the consummation of a Sale Transaction or an Asset Sale Transaction, as applicable.

In addition to the foregoing, the deposit of a Qualified Bidder will be forfeited to the Debtors if (i) the Qualified Bidder attempts to modify, amend, or withdraw its Qualified Bid, except as permitted herein, during the time the Qualified Bid remains binding and irrevocable or (ii) the Qualified Bidder is selected as a Successful Bidder or Back-Up Bidder and refuses or fails to enter into the required definitive documentation or to consummate a Sale Transaction or an Asset Sale Transaction, as applicable, according to these Bidding Procedures.

## Notices Regarding Assumption and Assignment

The Debtors shall provide all notices regarding the proposed assumption and assignment of contracts and leases in accordance with the Assumption and Assignment Procedures included in the Bidding Procedures Order.

## Sale Hearing

If the Debtors elect to proceed with a Sale Transaction or an Asset Sale Transaction pursuant to the Debtors' chapter 11 plan (the "**Plan**"), the Debtors will seek the entry of an order authorizing and approving, among other things, the Sale Transaction or Asset Sale Transaction, as applicable, in which the Debtors' assets will be sold to the applicable Successful Bidder at a hearing before the Bankruptcy Court to be held on **June 20, 2019** (the "**Sale Hearing**"). The objection deadline for any Sale Transaction or Asset Sale Transaction to be approved at the Sale Hearing will be **June 10, 2019 at 4:00 p.m. (ET)**.

The Debtors may elect to seek approval of a proposed sale in advance of the Sale Hearing. To the extent the Debtors determine to do so, notice will be provided for alternative hearing dates and related timelines (subject to the Court's approval). To the extent the Debtors seek to pursue any Sale Transactions or Asset Sale Transactions outside of the Plan, the Debtors shall file a notice of a hearing to approve the applicable Sale Transaction or Asset Sale Transaction and parties in interest shall be provided at least ten (10) calendar days to object to such sale; provided that, the Debtors may seek an adjournment of such hearing as the Debtors deem appropriate in the exercise of their reasonable business judgment.

WEIL:\97007307\1\41703.0010

Objections to any Sale Transactions or Asset Sale Transactions, including any objection to the sale of the Debtors' assets free and clear of liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code (each, a "**Sale Objection**"), must:  (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the Court (a) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (vi) be served in accordance with the Case Management Order by the applicable deadline set in accordance with this Order.  In addition to being filed with the Court, any such responses or objections must be served on the Objection Notice Parties, in addition to any such other parties as the Court may order, so as to be received by the objection date specified in the notice; provided that, the Debtors may extend such deadline, as the Debtors deem appropriate in the exercise of their reasonable business judgment.  If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the applicable sale hearing (which may be the Sale Hearing).

A Successful Bidder shall appear at the Sale Hearing and be prepared to have a representative(s) testify in support of the Successful Bid and such Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and/or assigned as part of the proposed transaction.

Any party who fails to file with the Court and serve on the Objection Notice Parties a Sale Objection by **June 10, 2019 at 4:00 p.m. (ET)** may be forever barred from asserting, at the Sale Hearing or thereafter, any Sale Objection to the relief requested in the Motion with regard to a Successful Bidder, or to the consummation and performance of a Sale Transaction or an Asset Sale Transaction, as applicable, contemplated by an asset purchase agreement between the Debtors and a Successful Bidder, including the transfer of assets to a Successful Bidder, free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code. Failure to object shall constitute consent for the purposes of section 363(f)(2) of the Bankruptcy Code.

## <u>Consent to Jurisdiction and Authority as Condition to Bidding</u>

All bidders that participate in the bidding process shall be deemed to have (i) consented to the core jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to an applicable Sale Transaction or Asset Sale Transaction; (ii) waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to an applicable Sale Transaction or Asset Sale Transaction; and (iii) consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other

WEIL:\97007307\1\41703.0010

document relating to an applicable Sale Transaction or Asset Sale Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

## Reservation of Rights

The Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, to modify these Bidding Procedures; waive terms and conditions set forth herein with respect to all Potential Bidders; extend the deadlines set forth herein; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth herein; and provide reasonable accommodations to any Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on any assets, in each case, to the extent not materially inconsistent with these Bidding Procedures and the Bidding Procedures Order. The rights of each Consultation Party are fully reserved as to the Sale Transaction and Asset Sale Transaction. **The Debtors shall not be obligated to consummate or pursue any transaction with respect to any asset**.

WEIL:\97007307\1\41703.0010

**<u>Schedule 2</u>**

**Form of Cure Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X
                                          :
In re                                     :    **Chapter 11**
                                          :
**DITECH HOLDING CORPORATION,** *et al.,* :    **Case No. 19-10412 (JLG)**
                                          :
              Debtors.[1]                 :    **(Jointly Administered)**
                                          :
-------------------------------------------------------------X

**NOTICE OF CURE COSTS AND POTENTIAL
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES OF DEBTORS AS PART OF SALE TRANSACTION**

      Ditech Holding Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are seeking to conduct a bidding process for the sale of any and all of their assets pursuant to a motion, dated March 5, 2019 (ECF No. 147) (the "**Motion**").

      By order, dated [_____] [ECF No. __] (the "**Bidding Procedures Order**"),[2] the Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") approved certain bidding procedures (the "**Bidding Procedures**") that govern the sale of any and all of the Debtors' assets to the highest or otherwise best bidder.

      **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU MAY BE A PARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT COULD BE ASSUMED AND ASSIGNED TO A SUCCESSFUL BIDDER IN CONNECTION WITH THE SALE OF THE DEBTORS' ASSETS**.

      In accordance with the Assumption and Assignment Procedures and the Bidding Procedures Order, the Debtors may, in connection with a Sale Transaction or an Asset Sale Transaction, as applicable, with a Successful Bidder (as defined in the Bidding Procedures) seek

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order or the Motion.

to assume and assign to the Successful Bidder certain executory contracts and unexpired leases of the Debtors (the "**Assigned Contracts**") in connection with the sale of the Debtors' assets.

Each of the Assigned Contracts that may be assumed and assigned in connection with a Sale Transaction or an Asset Sale Transaction, as applicable, with a Successful Bidder and the Debtors' calculation of the Cure Costs with respect thereto are set forth on **Exhibit A** hereto.  The Cure Costs are the only amounts proposed to be paid upon the assumption and assignment of the Assigned Contracts.

The inclusion of any contract or lease on **Exhibit A** shall not constitute or be deemed a determination or admission by the Debtors that such contract or other document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Notwithstanding the inclusion of any lease or contract on **Exhibit A**, a Successful Bidder is not bound to accept assignment of any Assigned Contract, and may amend the schedule of Assigned Contracts to remove any contract or lease at any time prior to the consummation of a Sale Transaction or an Asset Sale Transaction (each as defined in the Motion).

## **Objections**

### A.  Cure Objections

1.      Any objection to the proposed assumption, assignment, or potential designation of an Assigned Contract identified on Exhibit A, the subject of which objection is the Debtors' proposed Cure Costs must:

(a)      be in writing;

(b)      state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party;

(c)      state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection;

(d)      conform to the Bankruptcy Rules and the Local Rules;

(e)      be filed with the Court together with proof of service either (i) electronically or (ii) conventionally, as noted below:

(i)      *Electronic Filing*: the filer must be an attorney in possession of passwords and logins to both PACER and the Bankruptcy Court's Electronic Case Filing System; electronic filing must be in accordance with General Order M-399 (which can be found at http://nysb.uscourts.gov); or

(ii)      *Conventional Filing*: the filer must send the response or objection by mail, courier, or messenger to the Bankruptcy Court's clerk at the following address: United States Bankruptcy Court, One Bowling Green, New York, NY 10004; the hard copy of the response or

objection should be accompanied by a CD-ROM containing the response or objection in text-searchable portable document format (PDF); and

(iii)    *All filers* – those filing electronically as well as those filing conventionally – must provide Bankruptcy Court Chambers with two separate, single-sided hard copies of the response or objection; any proposed order should be accompanied by a CD-ROM containing the response or objection in text searchable portable document format (PDF); and

(f)    be served upon the following parties in accordance with General Order M-399 so as to be received no later than [_____] **at 4:00 p.m. (prevailing Eastern Time)**:

*Debtors*
Ditech Holding Corporation, et al.
3000 Bayport Drive
Suite 985
Tampa, Florida 33607
Attn: John Haas

*Office of the U.S. Trustee*
William K. Harrington, U.S. Department of Justice
Office of the U.S. Trustee
201 Varick Street, Room 1006
New York, New York 10014
Attn: Greg M. Zipes
       Benjamin J. Higgins

*Counsel to the Debtors*
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn: Ray C. Schrock, P.C.
       Sunny Singh

*Counsel to the Prepetition Administrative Agent*
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
Attn: Brian M. Resnick
       Michelle M. McGreal

*Counsel to the Term Loan Ad Hoc Group*
Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Attn: Patrick J. Nash
       John Luze

*Counsel to the DIP Agent and DIP Lender*
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, New York 10036
Attn: Sarah M. Ward
       Mark A. McDermott
       Melissa Tiarks

WEIL:\97007307\1\41703.0010

***Counsel to Nomura Corporate Funding Americas, LLC***
Jones Day
250 Vesey Street
New York, New York 10281
Attn: Ben Rosenblum

***Proposed Counsel to the Creditors' Committee***
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Attn: Robert J. Feinstein
      Bradford J. Sandler
      Steven W. Golden

and

Rich Michaelson Magaliff, LLP
335 Madison Avenue, 9th Floor
New York, New York 10017
Attn: Robert N. Michaelson
      Elwood F. Collins

**IF A COUNTERPARTY FAILS TO FILE WITH THE BANKRUPTCY COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY CURE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO THE AMOUNT TO CURE ANY DEFAULT UNDER THE APPLICABLE ASSIGNED CONTRACT.  THE CURE COSTS SET FORTH ON EXHIBIT A HERETO SHALL BE CONTROLLING AND WILL BE THE ONLY AMOUNT NECESSARY TO CURE OUTSTANDING DEFAULTS UNDER THE APPLICABLE ASSIGNED CONTRACT UNDER BANKRUPTCY CODE SECTION 365(B), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE ASSIGNED CONTRACT, OR ANY OTHER DOCUMENT, AND THE APPLICABLE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT TO SUCH ASSIGNED CONTRACT AGAINST THE DEBTORS, ANY SUCCESSFUL BIDDER, OR THE PROPERTY OF ANY OF THEM.**

### B. Adequate Assurance Objections

Adequate Assurance Objections with respect to the assumption and assignment of any Assigned Contracts identified on <u>Exhibit A</u> to a Successful Bidder must be filed in accordance with the preceding paragraph by **[_____] at 4:00 p.m. (ET).**

**IF A COUNTERPARTY FAILS TO FILE WITH THE BANKRUPTCY COURT AND SERVE ON THE OBJECTION RECIPIENTS A TIMELY ADEQUATE ASSURANCE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE OF THE APPLICABLE ASSIGNED CONTRACT. THE SUCCESSFUL BIDDER SHALL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE APPLICABLE ASSIGNED CONTRACT IN ACCORDANCE WITH BANKRUPTCY CODE SECTION**

WEIL:\97007307\1\41703.0010

**365(F)(2)(B), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE ASSIGNED CONTRACT OR ANY OTHER DOCUMENT.**

### Sale Hearing

The Debtors will seek to assume and assign the Assigned Contracts at a hearing (the "**Sale Hearing**") that is scheduled to commence on **[_____] at [____] (ET)** before the Honorable James L. Garrity, Jr., in Room 601 of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), One Bowling Green, New York, New York 10004. Objections, if any, that cannot otherwise be resolved by the parties, will be heard at a hearing scheduled prior to any scheduled closing of a Sale Transaction or an Asset Sale Transaction, as determined by the Debtors in accordance with the Bidding Procedures Order.

### Additional Information

Copies of the Motion, the Bidding Procedures Order, and the Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by the Debtors' claims and noticing agent, Epiq Corporate Restructuring, LLC (http://dm.epiq11.com/Ditech).

Dated: _____, 2019

_____
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

WEIL:\97007307\1\41703.0010