**Hearing Date and Time: May 14, 2019 at 11:00 a.m. (Eastern Time)**
**Objection Date and Time: May 13, 2019 at 4:00 p.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X
                                                             :
In re                                                        :    **Chapter 11**
                                                             :
**DITECH HOLDING CORPORATION**, *et al.*,                    :    **Case No. 19-10412 (JLG)**
                                                             :
            Debtors.[1]                                      :    **(Jointly Administered)**
                                                             :
-------------------------------------------------------------X

**NOTICE OF HEARING ON MOTION OF**
**DEBTORS FOR ENTRY OF AN ORDER (I) DISBANDING**
**THE OFFICIAL COMMITTEE OF CONSUMER CREDITORS**
**APPOINTED BY THE U.S. TRUSTEE OR, ALTERNATIVELY,**
**(II) LIMITING THE SCOPE OF SUCH COMMITTEE AND CAPPING**
**THE FEES AND EXPENSES WHICH MAY BE INCURRED BY SUCH COMMITTEE**

             **PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "**Motion**"),

of Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and its debtor

affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**"), for entry of an order pursuant to sections 105(a) and 1102(a) of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") (i) disbanding the official committee of consumer creditors appointed by the U.S. Trustee (the "**Consumer Creditors' Committee**") or, alternatively, (ii) if the Court determines not to disband the Consumer Creditors' Committee, limiting such committee's scope and capping the fees and expenses which may be incurred by such committee and its professionals, all as more fully set forth in the Motion, will be held before the Honorable James L. Garrity, Jr., United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 601, One Bowling Green, New York, New York 10004 (the "**Bankruptcy Court**") on **May 14, 2019 at 11:00 a.m. (Eastern Time)** (the "**Hearing**"), or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the "**Objections**") to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules, shall be filed with the Bankruptcy Court (i) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the *Order Implementing Certain Notice and Case Management Procedures* (ECF No. 211) (the "**Case Management Order**"), so as to be filed and received no later than **May 13, 2019 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to

the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Motion, which order may be entered without further notice or opportunity to be heard.

PLEASE TAKE FURTHER NOTICE that any objecting parties are required to

attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated: May 8, 2019
      New York, New York

/s/ Sunny Singh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh

*Attorneys for Debtors
and Debtors in Possession*

WEIL:\97027189\1\41703.0010

**Hearing Date and Time:  May 14, 2019 at 11:00 a.m. (Eastern Time)**
**Objection Date and Time: May 13, 2019 at 4:00 p.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X
:
**In re**                                                    :          **Chapter 11**
:
**DITECH HOLDING CORPORATION,** *et al.*,    :          **Case No. 19-10412 (JLG)**
:
**Debtors.**[1]                                              :          **(Jointly Administered)**
:
-------------------------------------------------------------X

**MOTION OF DEBTORS FOR**
**ENTRY OF AN ORDER (I) DISBANDING**
**THE OFFICIAL COMMITTEE OF CONSUMER CREDITORS**
**APPOINTED BY THE U.S. TRUSTEE OR, ALTERNATIVELY,**
**(II) LIMITING THE SCOPE OF SUCH COMMITTEE AND CAPPING**
**THE FEES AND EXPENSES WHICH MAY BE INCURRED BY SUCH COMMITTEE**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and its

debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**") file this motion (the "**Motion**") for entry of an order pursuant to

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837).  The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

sections 105(a) and 1102(a) of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") (i) disbanding the official committee of consumer creditors appointed by the U.S. Trustee (the "**Consumer Creditors' Committee**") or, alternatively, (ii) if the Court determines not to disband the Consumer Creditors' Committee, limiting such committee's scope solely to the treatment of consumer borrower claims under the Plan[2] (as defined below) or a Sale Transaction, and capping the fees and expenses which may be incurred by such committee and its professionals to $250,000 in the aggregate. In support of the Motion, the Debtors respectfully represent as follows:

**Preliminary Statement**

1.      The Debtors are at a critical stage of their chapter 11 cases. They are actively marketing and seeking bids for substantially all of their assets, all with the goal of maximizing value for their creditors and stakeholders. At the same time, the Debtors continue to run a large, complex, and heavily regulated business in chapter 11 to, among other things, preserve the option for a Reorganization Transaction—an unprecedented endeavor. While the Debtors have the support of the Ad Hoc Term Lender Group, successful completion of these chapter 11 cases in a reasonable timeframe is incredibly challenging, especially given the circumstances of these chapter 11 cases and the Debtors' industry.

2.      On May 10, 2019, the Debtors will seek an order from this Court for approval of their disclosure statement. Ahead of the disclosure statement hearing, following weeks of extensive negotiations, the Debtors have reached a settlement in principle with the official committee of unsecured creditors (the "**Creditors' Committee**") previously appointed in

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration (as defined below) or the *Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors* [ECF No. 145] (as may be further amended, modified, or supplemented, the "**Plan**"), as applicable.

WEIL:\97027189\1\41703.0010

these chapter 11 cases.  The settlement in principle with the Creditors' Committee is the result of a long process of good faith discussions and arms' length negotiations between the Debtors, the Ad Hoc Group of Term Lenders, and the Creditors' Committee, all represented by experienced and competent attorneys and financial advisors.

3.    On May 2, 2019—less than two weeks after the U.S. Trustee's decision to expand the Creditors' Committee and include two additional consumer creditors on the Creditors' Committee (instead of appointing an additional consumer creditors' committee), and one week before the Debtors' disclosure statement hearing—the United States Trustee for Region 2 (the "**U.S. Trustee**"), following two letters requesting the appointment of an official consumer creditors' committee and a letter from the Debtors requesting that the U.S. Trustee not appoint a new committee,[3] decided to appoint an additional creditors' committee—the Consumer Creditors' Committee.

4.    The U.S. Trustee's decision to appoint a separate official committee of consumer creditors at this stage of the chapter 11 cases—when the Debtors are in the middle of a bidding and sale process and have just reached a settlement in principle with the Creditors' Committee, and merely a week before the Debtors' disclosure statement hearing—is patently unreasonable and unwarranted.  The consumer creditors' interests are already more than adequately represented by the Creditors' Committee in these chapter 11 cases.  The Creditors' Committee has a fiduciary obligation to all general unsecured creditors.  The Creditors' Committee is represented by competent and experienced legal and financial professionals, and

---

[3]  *See* letter filed by J. Samuel Tenenbaum of the Investor Protection Center at Northwestern University School of Law, dated April 19, 2019 [ECF No. 429] and the letter filed by Mr. Wayne M. Greenwald, dated April 23, 2019 [ECF No. 449].  A copy of the Debtors' letter to the U.S. Trustee is attached hereto as **Exhibit B**.

WEIL:\97027189\1\41703.0010

the Creditors' Committee has engaged actively on a broad range of issues in these chapter 11 cases since its appointment.  The appointment of the Consumer Creditors' Committee at this stage could introduce unnecessary complexity and delay these chapter 11 cases and impose unnecessary incremental costs on the estates.  It will also cast a shadow on the bidding and sale process, and may jeopardize the entire reorganization of the Debtors' businesses to the detriment of all stakeholders.  Respectfully, such a decision—so close on the heels of appointing two members to the Creditors' Committee and the settlement reached thereafter—serves only to harm the Debtors' ability to reorganize.  Further, taxing these chapter 11 cases with the costs, expense and delay associated with the appointment of the Consumer Creditors' Committee, in addition to the Creditors' Committee, is unnecessary given the clear facts and circumstances in these chapter 11 cases.

5.      Accordingly, the Court should disband the Consumer Creditors' Committee should be disbanded or, alternatively, at a minimum, such committee's scope should be explicitly limited to the treatment of consumer borrower claims under the Plan or a Sale Transaction, and the fees and expenses which may be incurred by such committee and its professionals should be limited to $250,000 in the aggregate.[4]

### **Relief Requested**

6.      The Debtors respectfully request, pursuant to sections 105(a) and 1102(a) of the Bankruptcy Code, that this court enter an order (i) disbanding the Consumer Creditors' Committee appointed by the U.S. Trustee or (ii) alternatively, if the Court determines not to disband the Consumer Creditors' Committee, limiting such committee's scope solely to the

---

[4] Despite the Debtors filing the Motion, the Court should be aware that Debtors' counsel have already met with proposed counsel to the Consumer Creditors' Committee, Quinn Emanuel Urquhart & Sullivan, LLP.  Further, the Debtors have sent the amended disclosure statement and borrower notice to the Consumer Creditors' Committee's proposed counsel for review and comment in advance of the disclosure statement hearing.

WEIL:\97027189\1\41703.0010

treatment of consumer borrower claims under the Plan and imposing a cap on the fees and expenses which may be incurred by such committee and its professionals at $250,000 in the aggregate.

7.     A proposed form of order granting the relief requested herein is attached hereto as **Exhibit A** (the "**Proposed Order**").

**Background**

8.     On February 11, 2019 (the "**Commencement Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.     On February 27, 2019, the U.S. Trustee appointed the Creditors' Committee. On April 22, 2019, the U.S. Trustee appointed two additional members to the Creditors' Committee. On May 2, 2019, the U.S. Trustee appointed the Consumer Creditors' Committee. No trustee or examiner has been appointed in these chapter 11 cases.[5]

10.     The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

11.     The Debtors commenced these chapter 11 cases on a prearranged basis and have the support of more than eighty percent (80%) of their term loan lenders. Consistent with their obligations under that certain Restructuring Support Agreement, dated as of February 8, 2019 (the "**RSA**"), the Debtors filed a proposed plan of reorganization on March 5, 2019 [ECF

---

[5] *See Notice of Appointment of Official Committee of Unsecured Creditors* [ECF No. 127]; *Amended Notice of Appointment of Official Committee of Unsecured Creditors* [ECF No. 444]; *Second Amended Notice of Appointment of Official Committee of Unsecured Creditors* [ECF No. 497]; *Notice of Appointment of Official Committee of Consumer Creditors* [ECF No. 498].

WEIL:\97027189\1\41703.0010

No. 145] and will seek to emerge from chapter 11 on an expedited timeframe.  The Debtors filed amended proposed plans of reorganization on March 28, 2019 [ECF No. 315] and April 26, 2019 [ECF No. 469].

12.    Information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Gerald A. Lombardo Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York* (the "**First Day Declaration**"), sworn and filed on the Commencement Date [ECF No. 2].

### Jurisdiction

13.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Basis for Relief Requested

14.    Section 1102(a)(2) of the Bankruptcy Code provides that "[o]n the request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or equity security holders.  The United States trustee shall appoint any such committee."  11 U.S.C. § 1102(a)(2).  Unlike the appointment of an official committee of unsecured creditors, which is the norm in almost every case, appointment of additional committees is a disfavored and "extraordinary remedy that courts are reluctant to grant."  *See In re Residential Capital, LLC*, 480 B.R. 550, 557 (Bankr. S.D.N.Y. 2012); *In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006) (citing *In re Enron Corp.*, 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002)).

WEIL:\97027189\1\41703.0010

15.    A court may disband a committee under sections 1102 and 105 of the Bankruptcy Code where the committee is not necessary to protect the interests of its constituency, the administrative expense of the committee is not justified, and the presence of the committee is counter-productive to the process of the case.  *See In re Pacific Avenue*, LLC, 467 B.R. 868 (Bankr. W.D.N.C. 2012); *see also In re City of Detroit, Michigan*, Case No. 13-53846, (ECF No. 2784) (Bankr. E.D. Mich. Feb. 28, 2014) (finding the court had authority to disband a creditors' committee pursuant to section 105 of the Bankruptcy Code); *In re Delphi Corp.*, Case No. 05-44481 (ECF No. 15576) (Bankr. S.D.N.Y. Apr. 23, 2009) (granting disbandment motion brought under sections 105 and 1102 of the Bankruptcy Code).

16.    When considering whether to overturn the U.S. Trustee's decision to appoint an additional unsecured creditors' committee and disband such committee, bankruptcy courts typically employ a *de novo* standard of review.  *In re Sharon Steel Corp.*, 100 B.R. 767, 776 (Bankr. W.D.Pa. 1989) ("[T]he decision of the U.S. Trustee with respect to the appointment of additional official committees. . . is subject to *de novo* review by the Bankruptcy Court in order to determine the adequacy of the representation."); *In re Williams Comm'ns Grp., Inc.*, 281 B.R. 216, 219-20 (Bankr. S.D.N.Y. 2002); *In re McLean Industries, Inc.*, 70 B.R. 852, 857 (Bankr. S.D.N.Y. 1987) ("legislative history confirms that bankruptcy judges are to determine *de novo*, as they had previously, whether an additional committee is necessary to achieve adequate representation"); *In re Texaco*, 79 B.R. 560, 566 (Bankr. S.D.N.Y. 1987) ("[An] abuse of discretion standard does not apply with respect to the United States Trustee's initial exercise of discretion [to appoint an additional committee] because the concept of adequate representation is a legal issue which must be resolved judicially.").[6]

---

[6] Some bankruptcy courts have held that the court has the inherent power, as well as the statutory authority under Section 105(a), to review acts of the UST, under an "arbitrary and capricious" or "abuse of discretion" standard of

WEIL:\97027189\1\41703.0010

17.    In considering this extraordinary remedy, bankruptcy courts generally employ a two-step process.  First, the court determines whether the appointment of an additional committee is indeed necessary to assure the moving creditors are adequately represented.  Second, if the answer to the first question is yes, then the court must decide whether it should exercise its discretion and order such appointment.  *See Enron Corp.*, 279 B.R. at 685.  The burden is on the moving party to prove that the existing committee does not provide adequate representation.  *See Dana Corp.*, 344 B.R. at 38; *Enron Corp.*, 279 B.R. at 685; *In re Winn–Dixie Stores, Inc.*, 326 B.R. 853, 857 (Bankr. M.D.Fla. 2005); *In re Dow Corning Corp.*, 194 B.R. 121, 144 (Bankr. E.D.Mich. 1996), *rev'd on other grounds*, 212 B.R. 258 (E.D.Mich. 1997).

18.    Despite having discretion to direct the appointment of additional official committees, courts have been reluctant to grant such relief, and have described the "necessary to assure adequate representation" standard as ranging from a "high standard" to requiring a showing that an additional committee is "'absolutely required,' 'essential,' or 'indispensable.'"  *See In re Eastman Kodak*, No. 12–10202, 2012 WL 2501071, at *2 (Bankr. S.D.N.Y. June 28, 2012) (*quoting In re ShoreBank Corp.*, 467 B.R. 156, 164–65 (Bankr.N.D.Ill.2012)); *In re Oneida Ltd.*, 351 B.R. 79, 83 (Bankr. S.D.N.Y. 2006).

19.    When considering application of the "adequate representation" standard, bankruptcy courts in this district generally consider seven factors in deciding whether to appoint an additional official committee:

(1) the ability of the existing committee to function;

---

review.  *See, e.g., In re Barney's Inc.*, 197 B.R. 431, 438 (Bankr.S.D.N.Y.1996) (holding that the court reviews the U.S. Trustee's appointment of a committee under an "arbitrary and capricious" standard); *In re JNL Funding Corp.*, 438 B.R. 356, 362 (Bankr. E.D.N.Y. 2010) (finding the "arbitrary and capricious" standard of review applies to the U.S. Trustee's decision to appoint particular creditors to the general unsecured creditors' committee under section 1102(a)(1) of the Bankruptcy Code).  As discussed in this Motion, the Debtors submit that, even if the Court reviews the U.S. Trustee's decision to appoint the Consumer Creditors' Committee under an "arbitrary and capricious" standard of review, such decision does not pass muster in these circumstances.

8

(2) the nature of the case;

(3) the standing and desires of the various constituencies;

(4) the ability of creditors to participate in a case without an additional committee;

(5) the delay and additional cost that would result if the court appoints an additional committee;

(6) the tasks which a separate committee is to perform; and

(7) other factors relevant to the adequate representation issue.

No one factor is dispositive, and the consideration given to each depends on the circumstances of a particular chapter 11 case. *See, e.g., Dana Corp.*, 344 B.R. at 38; *Residential Capital*, 480 B.R. at 558.

20.     As demonstrated below, application of the governing legal standard to the facts at hand makes it clear that the Consumer Creditors' Committee's appointment in these chapter 11 cases is unwarranted and that the U.S. Trustee's decision to do so was unreasonable, arbitrary and capricious. Accordingly, the Consumer Creditors' Committee should be disbanded.

## A.     Consumer Creditors' Interests Are Already Adequately Represented By The Creditors' Committee

21.     Courts have held that an official creditors' committee "has a fiduciary duty to protect the interests of all unsecured creditors" and that the ability of an official committee to function is a significant factor in the determination of whether a court should order the appointment of another committee. *See Enron*, 279 B.R. at 686; *Mirant Americas Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.*, No. 02–cv–6274, 2003 WL 22327118, *4 (S.D.N.Y. Oct. 10, 2003); *In re Barney's, Inc.*, 197 B.R. 431, 442 (Bankr. S.D.N.Y. 1996). Courts have noted that "[c]reditor committees often contain creditors having a variety of viewpoints (heterogeneous); however, these differing views do not require a separate homogeneous committee unless they impair the ability to reach a consensus. The issue is not whether the Official Committee is an exact replica of the creditor body, but whether representation of various creditor types is adequate." *Dana Corp.*, 344 B.R. at 38-39.

WEIL:\97027189\1\41703.0010

"Adequate representation does not require proportionate representation of distinct groups of creditors on a committee of unsecured creditors. The determinative factor is whether the official committee is serving their interests as unsecured creditors. *Residential Capital*, 480 B.R. at 559. Further, while the interests of the official creditors' committee members may not always be aligned, the presence of potential conflict does not always require separate committees for representation to be adequate. *In re McLean Industries, Inc.*, 70 B.R. 852, 860 (Bankr. S.D.N.Y. 1987).

22.    Indeed, forming a separate committee solely to advance certain individual creditors' claims is not appropriate, because acting as *de facto* counsel for certain creditors would be an impermissible role for an official committee. *See Residential Capital*, 480 B.R. at 558-59 ("[F]orming a Borrowers Committee solely to advance individual borrowers' claims is not appropriate, because acting as *de facto* counsel for borrowers would be an impermissible role for an official committee"); *Mirant*, 2003 WL 22327118, *3 ("The principal purpose of creditors' committees is not to advocate any particular creditor class's agenda, but rather to 'strike a proper balance between the parties such that an effective and viable reorganization of the debtor may be accomplished.'") (quoting *Hills Stores*, 137 B.R. at 7); *see also In re Garden Ridge Corp.*, No. 04–10324, 2005 WL 523129, at *4, (Bankr. D. Del. Mar. 2, 2005) (declining to appoint an official committee for landlords because an official committee "is simply not intended to represent individual creditor interests").

23.    Accordingly, "in the vast majority of chapter 11 cases, a single committee of creditors has been deemed sufficient." *Residential Capital*, 480 B.R. at 558. *See also, e.g., In re Sharon Steel Corp.*, 100 B.R. 767, 777–78 (Bankr. W.D.Pa. 1989) (explaining that a single creditors committee is the norm and appointment of additional committees is an extraordinary

remedy); *In re Residential Capital, LLC*, 480 B.R. 550 (Bankr. S.D.N.Y. 2012) (holding that borrowers of residential mortgage servicer were "adequately protected" by the official committee of unsecured creditors and were not entitled to appointment of separate borrowers' committee); *see also In re Hills Stores Co.*, 137 B.R. 4 (Bankr. S.D.N.Y. 1992) (denying request for appointment of separate committee of subordinated bondholders); *In re Interco, Inc.*, 141 B.R. 422 (Bankr. E.D.Mo. 1992) (denying request to appoint separate committee of debenture holders); *In re Public Serv. Co. of N.H.*, 89 B.R. 1014, 1019 (Bankr. D.N.H. 1988) (declining request by individual debenture holders for appointment of separate committee); *In re Williams Comm'ns Grp., Inc.*, 281 B.R. 216, 223 (Bankr. S.D.N.Y. 2002) (denying motion for appointment of equity committee since shareholders' interests were adequately represented).

24.     The consumer creditors' interests are more than adequately represented by the Creditors' Committee in these chapter 11 cases. The Creditors' Committee has a fiduciary obligation to all general unsecured creditors. The Creditors' Committee is represented by competent and experienced legal and financial professionals, and the Creditors' Committee has engaged actively on a broad range of issues in these chapter 11 cases since its appointment. Indeed, to date in these chapter 11 cases, there have been no assertions by any party that the Creditors' Committee is doing anything but discharging its fiduciary duties to the estates and the estates' creditors. The consumer creditors have not pointed to a single instance in these chapter 11 cases where the ability of the Creditors' Committee to function has been impaired or where the Creditors' Committee has inadequately represented the consumer creditors, and no such complaints have been made to date.

25.     Further, the request to appoint an official committee of consumer creditors has already been addressed (appropriately, in the Debtors' view) by the U.S. Trustee's decision

WEIL:\97027189\1\41703.0010

to appoint two additional members—consumer borrower creditors—to the Creditors' Committee [ECF No. 444], particularly as, upon the appointment of the two new members, the total number of members representing consumer interests was three—1/3 of the total membership. Notably, this Court expressed the exact same sentiment at the hearing on April 11, 2019:

> [I]t just seems to me the case [and] where we are and the timing that is before us, it would probably make more sense, even from the perspective of the consumer creditors, to be part of a group that's been operating and then be able to benefit from all of the institutional knowledge there. You could very quickly get up to speed with things, but I'll leave that to you and others to figure out.

Apr. 11, 2019 Hr'g Tr., at 75, ¶15-22.

26.    Less than two weeks passed between the U.S. Trustee's decision to expand the Creditors' Committee and the subsequent decision to appoint the Consumer Creditors' Committee, and there has been no change in circumstances that warranted appointing another committee. At this stage of the chapter 11 cases—when the Debtors are in the middle of a bidding and sale process and have just reached a settlement in principle with the Creditors' Committee—a separate Consumer Creditors' Committee could delay these chapter 11 cases and may jeopardize the reorganization of the Debtors' businesses to the detriment of all stakeholders.

27.    Moreover, even without the appointment of an official committee of consumer creditors, the consumers and borrowers may continue to monitor and participate in these cases pursuant to section 1109(b) of the Bankruptcy Code, which allows any party in interest to be heard on any issue in a bankruptcy case, as they have done so far. For example, Wayne Greenwald P.C., purportedly on behalf of approximately 800 consumer creditors, filed a motion to extend the time to file proofs of claim [ECF No. 465]. Another group of consumer borrowers, represented by Kellett & Bartholow PLLC, has filed several objections to date, including an objection to the Debtors' bar date [ECF No. 22], an objection to the Debtors'

amended disclosure statement [ECF No. 355] and four joinders to other objections to the

Debtors' amended disclosure statement [ECF Nos. 350-354]. Yet another group of unsecured

creditors in these chapter 11 cases—the "Geary Class Action" group, represented by Nobile &

Thompson Co., L.P.A.—filed a motion to authorize it to have derivative standing to bring certain

claims in these chapter 11 cases [ECF No. 326] and an objection to the Debtors' disclosure

statement [ECF No. 336]. Following these objections, the Debtors made certain changes and

modifications to their disclosure statement. *See Notice of Filing of Amended Disclosure*

*Statement for Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated*

*Debtors* [ECF No. 470].

28. Clearly, there is no issue of inadequate representation here. The consumer

creditors are adequately represented by competent and experienced counsel and undoubtedly

"[t]heir voices have been and likely will continue to be heard in this case." *Dana Corp.*, 344

B.R. at 39-40.

**B. These Chapter 11 Cases Bear Strong Resemblance To Residential Capital And Warrant The Same Result**

29. In *Residential Capital*—a chapter 11 case of a residential mortgage

servicer—a group of homeowners filed a motion to appoint a separate borrowers' committee,

apart from the official committee of unsecured creditors. The court in *Residential Capital* denied

the motion and held that:

> (a) the borrowers have a representative on the Creditors Committee, (b) the Debtors are continuing to operate their mortgage servicing business subject to monitoring and sanctions for noncompliance with the borrower protections provided in the Government Agreements, (c) the Debtors will provide notice of the Bar Date to all borrowers whose mortgage loans are being serviced by the Debtors (not just borrowers who are in active litigation with the Debtors), (d) the Court has provided some relief from the automatic stay for borrowers pursuant to the

Supplemental Servicing Order, and (e) the Debtors have provided
telephonic access to the Court upon request.

*Residential Capital* 480 B.R. at 559-60.

30.    The homeowners in *Residential Capital* relied on *In re American Home
Mortgage Holdings*, No. 07–11047 (Bankr. D. Del. 2007). In *American Home*, the bankruptcy
court ordered appointment of an official committee of borrowers where (i) there was no borrower
representative member on the official creditors committee, (ii) borrowers apparently did not have
relief from the automatic stay to assert claims and counterclaims as defenses against
foreclosures, evictions and borrower bankruptcy proceedings, (iii) notice of the bar date was
provided to only those borrowers who were in active litigation with the debtors, and (iv) the
debtors had sold their mortgage loan servicing business and were in the process of liquidating,
and therefore were unable to provide relief to borrowers in distress. *See Residential Capital* 480
B.R. at 559-60.

31.    All of the factors relied on by the court in *Residential Capital* are present
here and dictate the same result. Specifically, (a) consumer creditors have *three* representatives
on the Creditors' Committee, (b) the Debtors are continuing to operate their business in the
ordinary course, subject to court supervision and close monitoring and sanctions for
noncompliance from Fannie Mae, Freddie Mac and Ginnie Mae, (c) the Debtors provided notice
of the general bar date to borrowers whose mortgage loans are being serviced by the Debtors (not
just borrowers who are in active litigation with the Debtors), (d) the Debtors have twice extended
the general bar date specifically for consumer borrowers giving them approximately 100 days to
file claims,[7] (e) the Court has provided tailored relief from the automatic stay for borrowers

---

[7]    *See Order Extending General Date Date Order* [ECF No. 272] and *Order Further Extending General Bar Date for
Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc* [ECF No. 496].

14

pursuant the OCB Orders,[8] and (f) the Debtors have prepared a notice tailored to consumer borrowers which will provide such parties with relevant information about these chapter 11 cases.  Further, following active discussions with the U.S. Trustee and the Creditors' Committee, the Debtors have filed an amended plan of reorganization, which includes a new class of Borrower Non-Discharged Claims (Class 7), and an amended disclosure statement that provides additional disclosure regarding certain aspects of the consumer borrower claims.[9]  This clearly shows that the consumer creditors are more than adequately informed and represented in these chapter 11 cases.

## C. The Costs of Another Committee And the Delays Attendant Thereto Cannot Be Justified

32.    Undoubtedly, the appointment of an additional official committee of consumer creditors will immediately be followed by a request from the committee of consumer creditors to retain its own professionals.  This will carry with it the obvious related significant costs, expenses, delays, and duplicative efforts, which will lead to potential adverse impacts on value for all stakeholders.  *See Dana Corp.*, 344 B.R. at 40 ("This Court is very aware of the high cost of legal and professional fees in large chapter 11 cases.  Appointing a separate committee for the Asbestos Claimants may inevitably lead to duplicative efforts in these cases."); *In re Winn-Dixie Stores, Inc.*, 326 B.R. 853, 858, n.4 (Bankr. M.D. Fla. 2005) ("In light of the numerous experts retained by the Debtors and the Creditors' Committee, the Court has little

---

[8]  The "**OCB Orders**" mean the *Final Order (I) Authorizing Debtors to Continue Origination and Servicing of Forward Mortgage Loans in Ordinary Course and Granting Related Relief, (II) Modifying Automatic Stay on a Limited Basis to Facilitate Debtors Ongoing Operations* [ECF No. 224] and the *Final Order (I) Authorizing Debtors to Continue Honoring Reverse Issuer and Servicing Obligations in the Ordinary Course and Granting Related Relief, (II) Modifying Automatic Stay on a Limited Basis to Facilitate Debtors Ongoing Operations* [ECF No. 229].

[9]  *See Notice of Filing of Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* [ECF No. 469] and *Notice of Filing of Amended Disclosure Statement for Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* [ECF No. 470].

WEIL:\97027189\1\41703.0010

doubt that an additional committee would seek to retain its own experts."); *In re Wang Labs, Inc.*, 149 B.R. 1, 4 (Bankr. D. Mass. 1992) ("appointment of additional committees is closely followed by applications to retain attorneys and accountants").  Such additional costs—where secured creditors, who have been paying administrative claims and are anticipated to lose hundreds of millions of dollars—are unfair and unjustified in these circumstances.  Absent a strong argument regarding inadequate representation, a debtor should not bear the burden of incurring additional professionals' fees on account of an additional creditors' committee.  Otherwise, the appointment of an additional creditors' committee merely burdens the Debtors with additional and likely substantial expenses without any corresponding benefit to the estate.

33.     Moreover, at this stage of the chapter 11 cases—when the Debtors are in the middle of a bidding and sale process and have just reached a settlement in principle with the Creditors' Committee ahead of the disclosure statement hearing scheduled for May 10, 2019—a separate official committee of consumer creditors would likely introduce unnecessary complexity and delay these chapter 11 cases, in addition to the unnecessary incremental costs.  Appointing an additional official creditors' committee on the eve of the disclosure statement hearing will undoubtedly delay these chapter 11 cases—to fulfill its statutory and fiduciary duties, the Consumer Creditors' Committee, along with its retained professionals, will need to spend considerable time and effort familiarizing itself with the complex issues involved in these chapter 11 cases, issues that the Creditors' Committee has already thoroughly reviewed and analyzed—with no real benefit either to the estate or to the consumer creditors.  The settlement in principle with the Creditors' Committee is the result of a long process of good faith discussions and arms' length negotiations between the Debtors, the Ad Hoc Group of Term Lenders, and the Creditors' Committee, all represented by experienced and competent attorneys

16

and financial advisors.  Additionally, appointing an additional creditors' committee at this stage

of the chapter 11 cases will cast a shadow on the Debtors' sale and auction process and may

potentially chill bidding.  Multiple official committees, each focused on the parochial interests of

one specific class of creditors, "will only weaken the impetus to compromise" on which a

successful reorganization depends.  *In re Enron Corp.*, 279 B.R. at 688-89 (quoting *In re Sharon

Steel Corp.*, 100 B.R. 767, 779 (Bankr. W.D. Penn. 1989)).  *See also Mirant Ams. Energy*, 2003

WL 22327118 at *8 ("because creditors would be balkanized into several independent

committees, each furthering the interests of only certain groups, the consultation and balancing

of interests necessary for a successful negotiation of a reorganization plan would be severely

hampered, leading to increased costs and delay").

34.    Ultimately, as noted earlier, even without the appointment of an official

committee of consumer creditors, the consumers and borrowers may continue to monitor and

participate in these cases as they have actively done so far.  Nothing prohibits the consumers and

borrowers from filing motions and objections in these chapter 11 cases, and the Debtors will

continue to respond to such objections and motions.  Where the Debtors deem appropriate, they

will amend their pleadings and plan of reorganization to address certain specific borrower issues

(as demonstrated by the recent changes to the plan of reorganization and disclosure statement).

**D. Alternatively, The Court Should Limit The Scope of Consumer Creditors' Committee
and Impose A Cap on Such Committee's Fees And Expenses**

35.    If, notwithstanding the above, the Court determines not to disband the

Consumer Creditors' Committee, the Debtors respectfully request that the Court explicitly limit

such committee's scope solely to the treatment of consumer borrower claims under the Plan or a

Sale Transaction, and impose a cap on the fees and expenses which may be incurred by such

committee and its professionals.  The Debtors request their liability for all fees and expenses

incurred by the Consumer Creditors' Committee and its professionals not exceed $250,000 in the aggregate (the "**Fee Cap**").

36.     Limiting the Committee's scope to the treatment of consumer borrower claims under the Plan and Sale Transaction and imposing the Fee Cap will ensure that the Consumer Creditors' Committee pursues only those legitimate goals for which the interests of the consumer creditors truly diverge from those of the other unsecured creditors.  Further, the Fee Cap will prevent duplicative and unnecessary costs of administering these chapter 11 cases. The proposed Fee Cap is reasonable and adequately tailored to ensure that the Consumer Creditors' Committee has sufficient resources to participate in these chapter 11 cases. Bankruptcy courts have previously imposed fee caps on official committees when such cap was justified under the circumstances.  *See, e.g. In re Horsehead Holding Corp.*, Case No. 16-10287 (CSS) (Bankr. D. Del. June 24, 2016) (imposing a cap on the fees and expenses of an equity committee); *In re Finova Cap. Corp.*, Case No. 01-0698 (PJW) (Bankr. D. Del. June 16, 2005) (imposing a cap on fees and expenses of an equity committee); *see also In re Tronox Inc.*, Case No. 09-10156 (ALG) (Bankr. S.D.N.Y. May 7, 2009) (prohibiting equity committee's retention of financial advisors absent findings, after motion and hearing, that equity committee was "unreasonably" denied access to debtors' and creditors' financial advisors and existing non-privileged work product).  For all the reasons previously stated, the imposition of the Fee Cap is necessary and appropriate in the context of these chapter 11 cases.[10]

---

[10] As an alternative construct, the Court could condition the payment of fees and expenses of the professionals hired by the Consumer Creditors' Committee upon a showing—at the end of the case—that their efforts resulted in an actual substantial contribution to their constituency, and were actual and necessary expenses.

WEIL:\97027189\1\41703.0010

## Conclusion

37.     For the reasons stated herein, the Debtors do not believe taxing these chapter 11 cases with the costs, expense, and delay associated with the appointment of an additional creditors' committee is appropriate or necessary given the clear facts and circumstances in these chapter 11 cases.   Accordingly, the Consumer Creditors' Committee should be disbanded or, alternatively, its scope should be limited to the treatment of consumer borrower claims under the Plan and its fees and expenses should be capped at $250,000 in the aggregate.

## Notice

38.     Notice of this Motion will be provided in accordance with the procedures set forth in the Order Implementing Certain Notice and Case Management Procedures [ECF No. 211] (the "**Case Management Order**").  The Debtors respectfully submit that no further notice is required.

39.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WEIL:\97027189\1\41703.0010

WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as the Court may deem just and

appropriate.

Dated: May 8, 2019
      New York, New York

            /s/ Sunny Singh
            WEIL, GOTSHAL & MANGES LLP
            767 Fifth Avenue
            New York, New York 10153
            Telephone:  (212) 310-8000
            Facsimile:  (212) 310-8007
            Ray C. Schrock, P.C.
            Sunny Singh

            *Attorneys for Debtors*
            *and Debtors in Possession*

WEIL:\97027189\1\41703.0010

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
                                            :
In re                                       :    **Chapter 11**
                                            :
**DITECH HOLDING CORPORATION**, *et al.*,   :    **Case No. 19-10412 (JLG)**
                                            :
          Debtors.[1]                       :    **(Jointly Administered)**
                                            :    **Related Docket No. [_]**
-----------------------------------------------------------------X

### ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) DISBANDING THE OFFICIAL COMMITTEE OF CONSUMER CREDITORS APPOINTED BY THE U.S. TRUSTEE OR, ALTERNATIVELY, (II) LIMITING THE SCOPE OF SUCH COMMITTEE AND CAPPING THE FEES AND EXPENSES WHICH MAY BE INCURRED BY SUCH COMMITTEE

Upon the motion dated May 8, 2019 (the "**Motion**")[2] of Ditech Holding

Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned

chapter 11 cases (collectively, the "**Debtors**"), for entry of an order pursuant to sections 105(a)

and 1102(a) of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**")

(i) disbanding the official committee of consumer creditors appointed by the U.S. Trustee (the

"**Consumer Creditors' Committee**") or (ii) alternatively, if the Court determines not to disband

the Consumer Creditors' Committee, limiting the fees and expenses which may be incurred by

such committee and its professionals to $250,000 in the aggregate, all as more fully set forth in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

the Motion; and the Court having jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference

M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested

relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the

Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having

been provided to the Notice Parties in accordance with the Case Management Order; and such

notice having been adequate and appropriate under the circumstances, and it appearing that no

other or further notice need be provided; and the Court having reviewed the Motion; and the

Court having held a hearing on the Motion to consider the relief requested in the Motion (the

"**Hearing**"); and the Court having determined that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and it appearing that the relief requested

in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in

interest; and upon all of the proceedings had before the Court and after due deliberation and

sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**

1.     The Motion is granted to the extent set forth herein.

2.     The Consumer Creditors' Committee appointed in the above captioned

chapter 11 cases is hereby disbanded.

3.     The Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2019
      New York, New York

                                      _____
                                        HONORABLE JAMES L. GARRITY, JR.
                                        UNITED STATES BANKRUPTCY JUDGE

WEIL:\97027189\1\41703.0010

## **Exhibit B**

**Debtors' Letter to the U.S. Trustee**

**Weil, Gotshal & Manges LLP**

CONFIDENTIAL
BY E-MAIL

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Ray C. Schrock, P.C.**
+1 (212) 310-8210
Ray.Schrock@weil.com

May 1, 2019

Office of the United States Trustee for Region 2
201 Varick Street, Suite 1006
New York, New York 10014
Attn: Greg Zipes, Esq. and Benjamin J. Higgins, Esq.

Re: *In re Ditech Holding Corporation, et al.*, Case No. 19-10412 (JLG):
    Debtors' Opposition to Requests to Appoint Official Committee of Consumer Creditors

Dear Mr. Zipes and Mr. Higgins:

Reference is made to the letter filed by J. Samuel Tenenbaum of the Investor Protection Center at Northwestern University School of Law, dated April 19, 2019 [ECF No. 429] and the letter filed by Mr. Wayne M. Greenwald, dated April 23, 2019 [ECF No. 449] (together, the "**Movants**"), requesting the appointment of an official committee of consumer creditors in the chapter 11 cases of Ditech Holding Corporation and its debtor affiliates (collectively, the "**Debtors**").[1]  Based on the facts of these chapter 11 cases and the applicable authority, the Debtors urge the U.S. Trustee to deny the request.  For the reasons set forth below, the Movants have failed to satisfy their burden to show that an appointment of an official committee of consumer creditors, in addition to the Official Committee of Unsecured Creditors (the "**Creditors' Committee**") already appointed—and at this stage of the chapter 11 cases, where the Debtors are in the middle of a sale and auction process and have just settled in principle with the Creditors' Committee ahead of the disclosure statement hearing scheduled for May 10, 2019—is necessary or appropriate in these chapter 11 cases.  On the contrary, appointing a separate official committee of consumer creditors months into these cases and merely a week before the Debtors' disclosure statement hearing could delay these chapter 11 cases and may jeopardize the entire reorganization of the Debtors' businesses to the detriment of all stakeholders.  Respectfully, such a decision is nothing short of arbitrary and capricious and serves only to harm the Debtors' ability to reorganize.

Section 1102(a)(2) of the Bankruptcy Code permits the appointment of an additional committee of creditors only if necessary to assure adequate representation of creditors.  Appointment of an additional committee is an "extraordinary remedy that courts are reluctant to grant."  *See In re Residential Capital, LLC*, 480 B.R. 550, 557 (Bankr. S.D.N.Y. 2012); *In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006) (citing *In re Enron Corp.*, 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002)).  In considering this

---

[1] The Debtors reserve the right to supplement this letter and/or submit additional responses to any additional requests that the United States Trustee appoint an official committee of consumer creditors in these chapter 11 cases.

**Weil, Gotshal & Manges LLP**

extraordinary remedy, courts employ a two-step process. First, a court determines whether the appointment of an additional committee is necessary to assure the movants are adequately represented. Second, if the answer to the first question is yes, then the court must decide whether it should exercise its discretion and order such appointment. *See Enron Corp.*, 279 B.R. at 685. The burden is on the moving party to prove that the existing committee does not provide adequate representation. *See Dana Corp.*, 344 B.R. at 38; *Enron Corp.*, 279 B.R. at 685; *In re Winn–Dixie Stores, Inc.*, 326 B.R. 853, 857 (Bankr. M.D.Fla. 2005); *In re Dow Corning Corp.*, 194 B.R. 121, 144 (Bankr. E.D.Mich. 1996), *rev'd on other grounds*, 212 B.R. 258 (E.D.Mich. 1997).

Despite having discretion to direct the appointment of additional official committees, courts have been hesitant to grant such relief, and have described the "necessary to assure adequate representation" standard as ranging from a "high standard" to requiring a showing that an additional committee is "'absolutely required,' 'essential,' or 'indispensable.'" *See In re Eastman Kodak*, No. 12–10202, 2012 WL 2501071, at *2 (Bankr. S.D.N.Y. June 28, 2012) (*quoting In re ShoreBank Corp.*, 467 B.R. 156, 164–65 (Bankr.N.D.Ill.2012)); *In re Oneida Ltd.*, 351 B.R. 79, 83 (Bankr. S.D.N.Y. 2006).

When considering application of the "adequate representation" standard, bankruptcy courts in this district generally consider seven factors in deciding whether to appoint an additional official committee:
  (1) the ability of the existing committee to function;
  (2) the nature of the case;
  (3) the standing and desires of the various constituencies;
  (4) the ability of creditors to participate in a case without an additional committee;
  (5) the delay and additional cost that would result if the court appoints an additional committee;
  (6) the tasks which a separate committee is to perform; and
  (7) other factors relevant to the adequate representation issue.
No one factor is dispositive, and the consideration given to each depends on the circumstances of a particular chapter 11 case. *See, e.g., Dana Corp.*, 344 B.R. at 38; *Residential Capital*, 480 B.R. at 558.

As demonstrated below, none of these factors supports the appointment of an additional committee of consumer creditors in these chapter 11 cases.

We have been advised that the Ad Hoc Group of Term Lenders supports the Debtors' position.

**A. Consumer Creditors' Interests Are Already Adequately Represented By The Creditors' Committee**

Courts have held that an official committee "has a fiduciary duty to protect the interests of all unsecured creditors" and that the ability of an official committee to function is a significant factor in the determination of whether a court should order the appointment of another committee. *See Enron*, 279 B.R. at 686; *Mirant Americas Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.*, No. 02–cv–6274, 2003 WL 22327118, *4 (S.D.N.Y. Oct. 10, 2003); *In re Barney's, Inc.*, 197 B.R.

**Weil, Gotshal & Manges LLP**

431, 442 (Bankr. S.D.N.Y. 1996). Courts have noted that "[c]reditor committees often contain creditors having a variety of viewpoints (heterogeneous); however, these differing views do not require a separate homogeneous committee unless they impair the ability to reach a consensus. The issue is not whether the Official Committee is an exact replica of the creditor body, but whether representation of various creditor types is adequate." *Dana Corp.*, 344 B.R. at 38-39. "Adequate representation does not require proportionate representation of distinct groups of creditors on a committee of unsecured creditors. The determinative factor is whether the official committee is serving their interests as unsecured creditors. *Residential Capital*, 480 B.R. at 559. Further, while the interests of the official creditors' committee members may not always be aligned, the presence of potential conflict does not always require separate committees for representation to be adequate. *In re McLean Industries, Inc.*, 70 B.R. 852, 860 (Bankr. S.D.N.Y. 1987).

Indeed, forming a separate committee solely to advance certain individual creditors' claims is not appropriate, because acting as *de facto* counsel for certain creditors would be an impermissible role for an official committee. *See Residential Capital*, 480 B.R. at 558-59 ("[F]orming a Borrowers Committee solely to advance individual borrowers' claims is not appropriate, because acting as *de facto* counsel for borrowers would be an impermissible role for an official committee"); *Mirant*, 2003 WL 22327118, *3 ("The principal purpose of creditors' committees is not to advocate any particular creditor class's agenda, but rather to 'strike a proper balance between the parties such that an effective and viable reorganization of the debtor may be accomplished.'") (quoting *Hills Stores*, 137 B.R. at 7); *see also In re Garden Ridge Corp.*, No. 04–10324, 2005 WL 523129, at *4, (Bankr. D. Del. Mar. 2, 2005) (declining to appoint an official committee for landlords because an official committee "is simply not intended to represent individual creditor interests").

Accordingly, "in the vast majority of chapter 11 cases, a single committee of creditors has been deemed sufficient." *Residential Capital*, 480 B.R. at 558. *See also, e.g., In re Sharon Steel Corp.*, 100 B.R. 767, 777–78 (Bankr. W.D.Pa. 1989) (explaining that a single creditors committee is the norm and appointment of additional committees is an extraordinary remedy); *In re Residential Capital, LLC*, 480 B.R. 550 (Bankr. S.D.N.Y. 2012) (holding that borrowers of residential mortgage servicer were "adequately protected" by the official committee of unsecured creditors and were not entitled to appointment of separate borrowers' committee); *see also In re Hills Stores Co.*, 137 B.R. 4 (Bankr. S.D.N.Y. 1992) (denying request for appointment of separate committee of subordinated bondholders); *In re Interco, Inc.*, 141 B.R. 422 (Bankr. E.D.Mo. 1992) (denying request to appoint separate committee of debenture holders); *In re Public Serv. Co. of N.H.*, 89 B.R. 1014, 1019 (Bankr. D.N.H. 1988) (declining request by individual debenture holders for appointment of separate committee); *In re Williams Comm'ns Grp., Inc.*, 281 B.R. 216, 223 (Bankr. S.D.N.Y. 2002) (denying motion for appointment of equity committee since shareholders' interests were adequately represented).

Consumer creditors' interests are more than adequately represented by the Creditors' Committee in these chapter 11 cases. The Creditors' Committee has a fiduciary obligation to all general unsecured creditors. The Creditors' Committee is represented by competent and experienced legal and financial

**Weil, Gotshal & Manges LLP**

professionals, and the Creditors' Committee has engaged actively on a broad range of issues in these chapter 11 cases since its appointment. The Movants have not pointed to a single instance where the ability of the Creditors' Committee to function has been impaired or where the Creditors' Committee has inadequately represented the consumer creditors, and no such complaints have been made to date.

Further, the request to appoint an official committee of consumer creditors has already been addressed (appropriately, in the Debtors' view) by the U.S. Trustee's decision to appoint two additional members—consumer borrower creditors—to the Creditors' Committee [ECF No. 444], particularly as, upon the appointment of these two new members, the total number of members representing consumer interests is three—1/3 of the total membership. Notably, the Bankruptcy Court expressed the exact same sentiment at the hearing on April 11, 2019:

> [I]t just seems to me the case [and] where we are and the timing that is before us, it would probably make more sense, even from the perspective of the consumer creditors, to be part of a group that's been operating and then be able to benefit from all of the institutional knowledge there. You could very quickly get up to speed with things, but I'll leave that to you and others to figure out.

Apr. 11, 2019 Hr'g Tr., at 75, ¶15-22.

It has not even been two weeks since the U.S. Trustee's decision to expand the Creditors' Committee and there has been no change in circumstances that warrants appointing another creditors' committee. At this stage of the chapter 11 cases—when the Debtors are in the middle of a bidding and sale process and have just reached a settlement in principle with the Creditors' Committee—a separate official committee of consumer creditors would likely delay these chapter 11 cases and may jeopardize the reorganization of the Debtors' businesses to the detriment of all stakeholders.

Moreover, even without the appointment of an official committee of consumer creditors, the consumers and borrowers may continue to monitor and participate in these cases as they have done so far.[2] The Movants are adequately represented by competent and experienced counsel and undoubtedly

---

[2] For example, Mr. Greenwald, purportedly on behalf of approximately 800 consumer creditors, filed a motion to extend the time to file proofs of claim [ECF No. 465]. Another group of consumer borrowers, represented by Mr. Theodore O. Bartholow III, has filed several objections to date, including an objection to the Debtors' bar date [ECF No. 22], an objection to the Debtors' amended disclosure statement [ECF No. 355] and four joinders to other objections to the Debtors' amended disclosure statement [ECF Nos. 350-354]. Yet another group of unsecured creditors in these chapter 11 cases—the "Geary Class Action" group—filed a motion to authorize it to have derivative standing to bring certain claims in these chapter 11 cases [ECF No. 326] and an objection to the Debtors' disclosure statement [ECF No. 336]. Following these objections, the Debtors made certain changes and modifications to their disclosure statement. *See Notice of Filing of Amended Disclosure Statement for Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* [ECF No. 470]. Clearly, there is no issue of inadequate representation here.

"[t]heir voices have been and likely will continue to be heard in this case." *Dana Corp.*, 344 B.R. at 39-40.

### B.    These Chapter 11 Cases Bear Strong Resemblance To *Residential Capital* And Warrant The Same Result

In *Residential Capital*—a chapter 11 case of a residential mortgage servicer—a group of homeowners filed a motion to appoint a separate borrowers' committee, apart from the official committee of unsecured creditors.  The court in *Residential Capital* denied the motion and held that:

> (a) the borrowers have a representative on the Creditors Committee, (b) the Debtors are continuing to operate their mortgage servicing business subject to monitoring and sanctions for noncompliance with the borrower protections provided in the Government Agreements, (c) the Debtors will provide notice of the Bar Date to all borrowers whose mortgage loans are being serviced by the Debtors (not just borrowers who are in active litigation with the Debtors), (d) the Court has provided some relief from the automatic stay for borrowers pursuant to the Supplemental Servicing Order, and (e) the Debtors have provided telephonic access to the Court upon request.

*Residential Capital* 480 B.R. at 559-60.

The homeowners in *Residential Capital* relied on *In re American Home Mortgage Holdings*, No. 07–11047 (Bankr. D. Del. 2007).  In *American Home*, the bankruptcy court ordered appointment of an official committee of borrowers where (i) there was no borrower representative member on the official creditors committee, (ii) borrowers apparently did not have relief from the automatic stay to assert claims and counterclaims as defenses against foreclosures, evictions and borrower bankruptcy proceedings, (iii) notice of the bar date was provided to only those borrowers who were in active litigation with the debtors, and (iv) the debtors had sold their mortgage loan servicing business and were in the process of liquidating, and therefore were unable to provide relief to borrowers in distress.  *See Residential Capital* 480 B.R. at 559-60.

All of the factors relied on by the court in *Residential Capital* are present here.  These chapter 11 cases bear close resemblance to *Residential Capital* and warrant the same result.  Here, (a) the consumer creditors have *three* representatives on the Creditors' Committee, (b) the Debtors are continuing to operate their business in the ordinary course, subject to court supervision and close monitoring and sanctions for noncompliance from Fannie Mae, Freddie Mac and Ginnie Mae, (c) the Debtors provided notice of the general bar date to borrowers whose mortgage loans are being serviced by the Debtors (not just borrowers who are in active litigation with the Debtors), (d) the Debtors have twice extended the general bar date specifically for consumer borrowers giving them approximately 100 days to file claims, (e) the Court has

Office of the United States Trustee for Region 2
May 1, 2019
Page 6

**Weil, Gotshal & Manges LLP**

provided tailored relief from the automatic stay for borrowers pursuant the OCB Orders,[3] and (f) the Debtors have prepared a notice tailored to consumer borrowers which will provide such parties with relevant information about these chapter 11 cases.  Further, following active discussions with the U.S. Trustee and the Creditors' Committee, the Debtors have filed an amended plan of reorganization, which includes a new class of Borrower Non-Discharged Claims (Class 7), and an amended disclosure statement that provides additional disclosure regarding certain aspects of the consumer borrower claims.[4]  This clearly shows that the consumer creditors are more than adequately informed and represented in these chapter 11 cases.

### C.   The Costs of An Official Consumer Creditors' Committee And the Delays Attendant Thereto Cannot Be Justified

Undoubtedly, the appointment of an additional official committee of consumer creditors will immediately be followed by a request from the committee of consumer creditors to retain its own attorneys, financial advisors and possibly other experts.  This will carry with it the obvious related significant costs, expenses, delays, and duplicative efforts, which will lead to potential adverse impacts on value for all stakeholders.  *See Dana Corp.*, 344 B.R. at 40 ("This Court is very aware of the high cost of legal and professional fees in large chapter 11 cases.  Appointing a separate committee for the Asbestos Claimants may inevitably lead to duplicative efforts in these cases."); *In re Winn-Dixie Stores, Inc.*, 326 B.R. 853, 858, n.4 (Bankr. M.D. Fla. 2005) ("In light of the numerous experts retained by the Debtors and the Creditors' Committee, the Court has little doubt that an additional committee would seek to retain its own experts."); *In re Wang Labs, Inc.*, 149 B.R. 1, 4 (Bankr. D. Mass. 1992) ("appointment of additional committees is closely followed by applications to retain attorneys and accountants").  Such additional costs—where secured creditors, who have been paying administrative claims and are anticipated to lose hundreds of millions of dollars—are unfair and unjustified in these circumstances.

Moreover, at this stage of the chapter 11 cases—when the Debtors are in the middle of a bidding and sale process and have just reached a settlement in principle with the Creditors' Committee ahead of the disclosure statement hearing scheduled for May 10, 2019—a separate official committee of consumer creditors would likely introduce unnecessary complexity and delay these chapter 11 cases, in addition to the unnecessary incremental costs.  The settlement in principle with the Creditors' Committee is the result

---

[3] The "**OCB Orders**" mean the *Final Order (I) Authorizing Debtors to Continue Origination and Servicing of Forward Mortgage Loans in Ordinary Course and Granting Related Relief, (II) Modifying Automatic Stay on a Limited Basis to Facilitate Debtors Ongoing Operations* [ECF No. 224] and the *Final Order (I) Authorizing Debtors to Continue Honoring Reverse Issuer and Servicing Obligations in the Ordinary Course and Granting Related Relief, (II) Modifying Automatic Stay on a Limited Basis to Facilitate Debtors Ongoing Operations* [ECF No. 229].

[4] *See Notice of Filing of Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* [ECF No. 469] and *Notice of Filing of Amended Disclosure Statement for Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* [ECF No. 470].

Office of the United States Trustee for Region 2                **Weil, Gotshal & Manges LLP**
May 1, 2019
Page 7

of a long process of good faith discussions and arms' length negotiations between the Debtors, the Ad Hoc Group of Term Lenders, and the Creditors' Committee, all represented by experienced and competent attorneys and financial advisors. Appointing an additional official creditors' committee on the eve of the disclosure statement hearing will delay these chapter 11 cases with no real benefit either to the estate or to the consumer creditors. Additionally, appointing an additional creditors' committee at this stage of the chapter 11 cases will cast a shadow on the Debtors' sale and auction process and may potentially chill bidding. Multiple official committees, each focused on the parochial interests of one specific class of creditors, "will only weaken the impetus to compromise" on which a successful reorganization depends. *In re Enron Corp.*, 279 B.R. at 688-89 (quoting *In re Sharon Steel Corp.*, 100 B.R. 767, 779 (Bankr. W.D. Penn. 1989)). *See also Mirant Ams. Energy*, 2003 WL 22327118 at *8 ("because creditors would be balkanized into several independent committees, each furthering the interests of only certain groups, the consultation and balancing of interests necessary for a successful negotiation of a reorganization plan would be severely hampered, leading to increased costs and delay").

Ultimately, as noted earlier, even without the appointment of an official committee of consumer creditors, the consumers and borrowers may continue to monitor and participate in these cases as they have actively done so far. Nothing prohibits the consumers and borrowers from filing motions and objections in these chapter 11 cases, and the Debtors will continue to respond to such objections and motions and, where the Debtors deem appropriate, amend their pleadings and plan of reorganization to address certain specific borrower issues (as demonstrated by the recent changes to the plan of reorganization and disclosure statement).

Absent a strong argument regarding inadequate representation, a debtor should not bear the burden of incurring additional professionals' fees on account of an additional creditors' committee. Otherwise, the appointment of an additional creditors' committee merely burdens the Debtors with additional and likely substantial expenses without any corresponding benefit to the estate.

In sum, the Debtors do not believe taxing these chapter 11 cases with the costs, expense, and delay associated with the appointment of an additional creditors' committee is appropriate or necessary given the clear facts and circumstances in these chapter 11 cases. Further, at this stage of the chapter 11 cases— when the Debtors are in the middle of a bidding and sale process and have just reached a settlement in principle with the Creditors' Committee a week before the Debtors' disclosure statement hearing—a decision to appoint a separate committee of consumer creditors would simply be arbitrary and capricious. Accordingly, the request should be denied.

If, notwithstanding the above, the U.S. Trustee is minded to pursue the appointment of a second creditors' committee, the Debtors respectfully request, on behalf of the estates and all stakeholders, that the U.S. Trustee delay its decision until a status or chambers conference can be scheduled with the court as soon as possible, where the Debtors and any other stakeholders may be heard on this issue. The Debtors submit that in these circumstances such a conference is justified and necessary. Alternatively, the Debtors

Office of the United States Trustee for Region 2
May 1, 2019
Page 8

**Weil, Gotshal & Manges LLP**

request to be heard by the U.S. Trustee in connection with the identity of the prospective members of such committee.[5]

Respectfully,

Ray C. Schrock, P.C.

cc:  Mr. J. Samuel Tenenbaum
    Mr. Wayne M. Greenwald
    Counsel to the Creditors' Committee
    Counsel to the Term Loan Ad Hoc Group
    Counsel to Barclays Bank PLC, as DIP Agent
    Counsel to Nomura Corporate Funding Americas, LLC

---

[5] Specifically, we are instructed by the Debtors that certain claims made to your office regarding representation on behalf of borrowers may be misleading and may relate to consumer borrowers whose claims have been resolved prepetition or who have no connection to the Debtors at all.  Accordingly, before making any appointment of members to a second creditors' committee, the U.S. Trustee should first satisfy themselves of the bona fides of such claim and the circumstances thereof.  If you would like to discuss further with the Debtors regarding such claims, we would be happy to discuss further.