JOSEPH C. LA COSTA, ATTORNEY AT LAW
(California Bar Number: 108443)
7860 Mission Center Court
Suite 103
 San Diego, CA 92108
joelacostaesq@gmail.com
Telephone: (619) 922-5287

Attorney for Plaintiff and Creditor

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Ditech<br><br>_____**Debtor,**_____ | ) Lead Cases No: 19-10412-jlg Ditech<br>) Holding Corporation<br>) 19-10411-jlg Green Tree Credit LLC<br>) Chapter 11<br>) |
| Michael Mc Christian<br>     Plaintiff and Creditor,<br><br>     vs.<br><br>DITECH HOLDING<br>CORPORATION MORTGAGE,<br>LLC, GREEN TREE CREDIT LLC<br>AND  BRECKENRIDGE PROP<br>FUND 2016 LLC;<br><br>     Defendants | ) VERIFIED COMPLAINT FOR:<br>)   1. DECLARATORY RELIEF [28<br>)      U.S.C. §§ 2201, 2202]<br>)   2. QUASI CONTRACT<br>)   3. NEGLIGENCE<br>)   4. VIOLATION OF 15 U.S.C.<br>)      §1692, ET SEQ.<br>)   5. VIOLATION OF CALIFORNIA<br>)      BUSINESS AND<br>)      PROFESSIONS CODE<br>)      SECTION 17200, ET SEQ.<br>)   6. ACCOUNTING<br>)   7. CANCELLATION OF<br>)      INSTRUMENTS<br>)   8. QUIET TITLE<br>)   9. SET ASIDE TRUSTEE'S SALE<br>) |

ADVERSARY PROCEEDING COMPLAINT

Page **1** of **67**

## **COMPLAINT**

COMES NOW, Plaintiff Michael McChristian (Hereinafter referred to as "Plaintiff "), an individual, by and through his attorney of record, Joseph La Costa for a Adversary Proceeding against Debtors, DITECH HOLDING CORPORATION ,   GREEN TREE CREDIT LLC,  A Subsidiary of Ditech (Hereinafter JOINTLY referred to as "DITECH"), and  Breckenridge Prop Fund 2016 LLC ('BRECKENRIDGE') as the purported Beneficiary acting on behalf of  Homecomings Financial, Inc. & GMAC, Inc.  (hereinafter jointly as "GMAC") Lender as nominee for Plaintiff's loan and executed the Security Instrument entitled "Deed of Trust" (Hereinafter referred to as "Deed of Trust"); and Breckenridge Prop Fund 2016 LLC ('BRECKENRIDGE') purported buyer at a foreclosure sale in January 2019, actions in this claim regarding the validity of that authority that has subsequently harmed Plaintiff financially, pleads as follows:

### I.    **STATEMENT OF THE CASE**

1.  Plaintiff alleges that Debtors have failed to exercise appropriate oversight, management supervision and corporate governance, and have failed to devote adequate financial, staffing, training, and legal resources to ensure proper administration and delivery of services to Plaintiff and Creditor; and have failed to establish and maintain adequate internal

ADVERSARY PROCEEDING COMPLAINT

controls, policies, and procedures, compliance risk management, and

internal audit and reporting requirements with respect to the

administration and delivery of services to Plaintiff and Creditor.

2. By reason of the conduct set forth above, DITECH and Debtors and/or

more than one other party engaged in unsafe or unsound practices that

expose them and Plaintiff to unacceptable operational, compliance,

legal, and reputational risks.

3. Through this action, Plaintiff seeks to stop Debtors fraudulent practices;

cancel any Assignment, which on information and belief is NOT validly

executed by the Debtor DITECH ; and determine the status of the

Debtors' claims.

## II.  <u>**JURISDICTION, VENUE AND PARTIES**</u>

4. This Court has original jurisdiction over the claims in this action based

on 28 U.S.C. §§ 1331, 1343, 2201, 2202, 12 U.S.C. § 2605, 15 U.S.C. §

1692, 42 U.S.C. § 1983 which confer original jurisdiction on federal

district courts in suits to address the deprivation of rights secured by

federal law.

5. This Court also has supplemental jurisdiction over the pendant state law

claims because they form a part of the same case or controversy under

Article III of the United States Constitution, pursuant to 28 U.S.C. § 1367.

6. This Court has original jurisdiction over the claims in this action based on 28 U.S.C. §1332, which confers original jurisdiction on federal district courts in suits between diverse citizens that involve an amount in controversy in excess of $75,000.00. This is also a Core Proceeding In Ditech's Bankruptcy.

7. The unlawful conduct, illegal practices, and acts complained of and alleged in this Complaint were all committed in the Southern District of California and involved real property located in the Southern District of California. However, venue properly lies in this District Since that is where Ditech has Filed for Chapter 11 Relief.

8. McChristian is now, and at all times mentioned herein an individual residing in the County of San Diego, State of California. At all relevant times to this action, Plaintiff and Creditor have owned the real property commonly known as 11118 Ironwood Drive, San Diego, CA further described as: Assessor's Parcel Number **363-191-22-00**

9. DITECH, Green Tree and Ditech, LLC are each an "institution-affiliated party" within the meaning of 12 U.S.C. § 1813(u) by virtue of DITECH acting as agent for lender with respect to serving as mortgagee in a

ADVERSARY PROCEEDING COMPLAINT

nominee capacity for the lender, and are each an "entity-affiliated party" within the meaning of 12 U.S.C. § 4502(11) by virtue of DITECH acting as agent for GMAC and Homecomings Financial Network (Hereinafter referred to as "Homecomings"); with respect to serving as mortgagee in a nominee capacity for the owner of residential mortgage loans.

10. DITECH is a wholly-owned subsidiary of DITECH, LLC. A Delaware Corporation. GREEN TREE is also a subsidiary of Ditech, which is the Lead Bankruptcy. and Breckenridge Prop Fund 2016 LLC is a California LLC and purported buyer at invalid Foreclosure Sale.

11. McChristian is presently ignorant of the true identity and capacity, but will amend this Complaint when their DOE identities have been ascertained according to proof at the time of trial. However, Plaintiff alleges on information and belief, that each and every Doe Debtor is in some manner responsible for the acts and conduct of the other Debtor(s), and were, and are responsible for the injuries, damages, and harm incurred by Plaintiff and Creditor. Plaintiff and Creditor further allege on information and belief that each such designated Debtor acted, and acts, as the authorized agent, representative, and associate of the other Debtor(s) in doing the things alleged herein.

ADVERSARY PROCEEDING COMPLAINT

12. Whenever reference is made in this Complaint to any act of any Debtor(s), that allegation shall mean that each Debtor acted individually and jointly with the other Debtor(s).

13. Any allegation about acts of any corporate or other business Debtor(s) means that the corporation or other business did the acts alleged through its officers, directors, employees, agents, secretaries and/or representatives while they were acting within the actual or ostensible scope of their authority.

14. At all relevant times, Debtor committed the acts, caused or directed others to commit the acts alleged in this Complaint. Additionally, some or all of the Debtor(s) acted as the agent of the other Debtor(s), and all of the Debtors acted within the scope of their agency if acting as an agent of the other.

15. At all relevant times, Debtor knew or realized that the other Debtor(s) were engaging in or planned to engage in the violations of law alleged in this Complaint. Knowing or realizing that the other Debtor(s) were engaged in or planning to engage in unlawful conduct, each Debtor nevertheless facilitated the commission of those unlawful acts. Each Debtor intended to and did encourage, facilitate, or assist in the

ADVERSARY PROCEEDING COMPLAINT

commission of the unlawful acts, and thereby aided and abetted the

other Debtor(s) in the unlawful conduct.

### III.   INTRODUCTION, FACTUAL AND GENERAL
### ALLEGATION

### MICHAEL MCCHRISTIAN'S LOAN

16. Plaintiff purchased his home in June of 1998 and has been battling this

false foreclosure for 6 years with HOMECOMINGS, GMAC, Green

Tree, and Ditech. Plaintiff's file kept on being moved for example  three

different servicing numbers were created for his account.


17.  In September 2011 Plaintiff filed bankruptcy due to the market

downturn of 2008. During this time I owned two homes 10914

Elderwood Lane and 11118 Ironwood Drive both home in San Diego ca

92131. This filing was done in an effort to save both homes.  He lost the

Elderwood home to foreclosure and moved back into Ironwood as it

was a rental at the time.


18. In August 2012, He applied for a loan modification with GMAC August

30, 2012, He received an update of the items needed to complete his

request and sent the items in.  None the less, some time in November of

ADVERSARY PROCEEDING COMPLAINT

2012, He  received a Notice of Default ("NOD") with a sale date of December 2012.

19. During October 25, 2012 , Plaintiff had a financial hardship and was granted a Loan Modification  by his mortgage servicer, GMAC Plaintiff made all of his required trial loan modification  payments as instructed.

20.  Nonetheless in January, 2013, Plaintiff received a transfer notice received stating the loan was being transferred to from GMAC to GREEN TREE along with two letters stating all payments have been received. Transfer date per the letter was Feb. 01, 2013. Note the letter stated to send all payments to Green Tree effective as of this date. This letter also has conflicting payments, fees, and balances from former correspondence from GMAC.

21.  On Feb. 8, 2013, Plaintiff received a short year history statement from GMAC indicating  his escrow was paid in full yet the letter indicates payments have not been dispersed or occurred.


22. On Feb. 10, 2013, Plaintiff   received another letter from GREEN TREE indicating his loan has been assigned to a "Bobby M" effective date 2-10-13.

23.  On Feb 19, 2013, Plaintiff was informed by GREEN TREE representative  "Steve B" at Ext 31652 not to make any payments until his file was received and uploaded from GMAC.

24. On  Feb 25, 2013,  Plaintiff spoke with Supervisor Mr. Thomas, to follow the earlier representatives direction which was not to pay  until GREEN TREE received and uploaded GMAC's loan modification file and confirmed the payment to be $1386.00.

25.  On February 27, 2013, Plaintiff requested a rush from Kimberley Ext 36280 and 22191, they were having trouble with the legal team for fees needed to finalize his modification.

26.  On March 9, 2013 Plaintiff spoke with Martin C at GREEN TREE for a follow up and was told it  still waiting on the loan mod to be uploaded.

27. On March 13, 2013, Plaintiff spoke again with Kimberly and again she state the documents for his modification were being generated and it should take a week.

28. On April 09 ,2013 Plaintiff received a letter from GREEN TREE of his loan be assigned per the representative Steven B payments for the loan modification trial from GMAC was extended again.

29. On April 15, 2013, Plaintiff received a notice or statement indicating to pay $28855.62 due by May 01, 2013. Plaintiff called immediately to

ADVERSARY PROCEEDING COMPLAINT

speak with Steven B at Ext 31652 but spoke with Dana ID262 and her supervisor Rick who stated to disregard this notice.

30. On April 19,2013, Plaintiff spoke with Jonny Id #EWJ, FNMA Dept. stating he reviewed Plaintiff's file and the report was that they were still trying to uploaded his file to and from GMAC to  the sever, to allow review of the documents to match against the items sent from GMAC tracking the trial payments ,which were confirmed as being received to the current escrow analysis, known Error in the system and was waiting for management to release the documents.

31. On May 13, 2013 Plaintiff received a letter from GREEN TREE regarding his dispute of the Notice of Default ("NOD") filed stating they would be resolve his issue or dispute by June 11, 2013.

32. On May 13, 2013, Plaintiff received a loan modification in the name of GREEN TREE asking me to accept this offer by singing and retuning the packet back to them by June 12, 2013.

33. On June 01,2013 Plaintiff received confirmation that his loan modification was approved listing GREEN TREE as the servicer the date of the notice on the contract is July 06, 2013.

34. On June 3, 2013, Plaintiff received a letter from GREEN TREE regarding receipt of the final loan modification doc's. The letter

ADVERSARY PROCEEDING COMPLAINT

indicated his inquiry to as to when Plaintiff could expect the final loan
modification.

35. On Oct. 07, 2013, Plaintiff received a statement indicating the amount
due was $2,701.34 .

36. On Oct. 23, 2013, received a letter from GREEN TREE indicating his
loan was current and apologizing for an inconvenience. On the same
day, Plaintiff also received the same day an escrow account disclosure
indicating his escrow was short $1.482.42.

37. On Nov 15, 2013, Plaintiff received a letter acknowledging me filing
bankruptcy and his request to have monthly statements with the correct
numbers and report his loan current to the credit agencies.

38. On December 5, 2013 Plaintiff received past due notice $3, 067.66
Plaintiff has copies of checks to show payments were made for all dates
through November 2013.

39. On December 06, 2013, Plaintiff received NOD and right to cure  in
the amount of $3,067.66

40. On December 10, 2013, Plaintiff received a notice of partial payment

41. On December 17, 2013,  Plaintiff received another apology letter for
billing errors on their behalf and notices that were sent an error.

42.  On January 03, 2014, Plaintiff received a letter stating his inquiry was under review.

43. On January 07 2014,  Plaintiff letter received from GREEN TREE indicating they have received his complaint and was reviewing his file.

44. On January 20 2014, Plaintiff received bankruptcy notice and NOD and right to cure letter in the amount of 1402.60.

45. On January 23 2014, Plaintiff received a letter from GREEN TREE indicating his loan modification as a HAMP loan and determined that the payment issues were related to fees capitalized during the application process and that his account has been corrected and all fees have been applied accordingly.

46. On March 01 2014, Plaintiff received a statement of information indicating total due at the time was $2,805.20 and that his account has unapplied funds pending a partial payment.

47. On March 07, 2014,  Plaintiff received a statement of information with a payment due of $4207.80 I requested a payment history and breakdown.

48. On March 13, 2014, Plaintiff received a letter from loss mitigation from GREEN TREE asking me to refinance or apply for a new loan modification when he already had one.

ADVERSARY PROCEEDING COMPLAINT

49. On April 03, 2014, Plaintiff received a packet to apply for a new loan modification.

50. On May 07, 2014, Plaintiff received statement of information indicating total payments due of $4,207.80. Statement indicated payment received in the amount of $1,388.00.

51. On May 12, 2014, Plaintiff received notice of availability of homeownership counseling.

52. On May 13, 2014, Plaintiff received notice of default and right to cure for the months of April 01 2014 to May 1 2014.

53. On May 15, 2014, Plaintiff spoke with Jill Johnson Ext 8745606 stated some loan modifications would be granted and some would not be acknowledged.

54. On May 16, 2014, Plaintiff received notice of partial payment and NOD in the amount of $1,206.62.

55. On July 7, 2014, Plaintiff received a statement of information indicating a payment due of $4,207.80.

56. On September 7 2014, Plaintiff received a statement of information indicating amount owed $5,610.40.

57. On September 10, 2014, Plaintiff received a loss mitigation options requesting him to apply for another loan modification.

ADVERSARY PROCEEDING COMPLAINT

58. On October 08, 2014, Plaintiff received a packet to apply for a new loan modification.

59. On December 07 2014, Plaintiff received a statement of information indicating a payment of $9,914.90.

60. On January 08, 2015, Plaintiff received a letter indicating his loan has been sent to an attorney to initiate foreclosure proceedings along with notice of a Chapter 11 filing GMAC/Residential Cap LLC.

61. On March 03, 2015, Plaintiff received a letter from GREEN TREE with an incorrect breakdown of his account history as they were not acknowledging the GMAC loan modification.

62. Just as the previous year Plaintiff received incorrect notices and threats to foreclosure all year long. With each year ending with a sale date.

63. In July 2015, Plaintiff notified the CFPB about the above events.

64. In July 2016 GREEN TREE which was now part of Ditech stopped reporting his payment history in their automated system., so that Plaintiff could not see status of his account.

65. On October 17, 2016, Plaintiff received debt validation from Clear Recon Corporation ("Clear Recon").

66. On November 29 2016, Plaintiff received 3 NOD with a sale date

67. On February 20 2017, Plaintiff received a stopping foreclosure notice from Clear Recon

68. On March 31, 2017 Plaintiff sent to Ditech with a check for 5600 to clear default at this point Cameron R was the representative.

69. On September 06, 2017 Plaintiff sent to Ditech regarding a return check being a bank error

70. On November 01, 2017, Plaintiff received a return check in the amount of $9,500.00 from Ditech stating that they were starting the foreclosure proceeding.

71. On December 01, 2017, Plaintiff received a letter from Ditech asking proof of the disputed amount owed based on the knowledge of an approved Loan modification.

72. On December 06, 2017, Plaintiff received a return check in the of 1500.00 stating that they were starting the foreclosure proceeding.

73. On December 18, 2017, Plaintiff sent 29 pages to Ditech to support his claim and dispute of balance on account of Ditech stating they had no record of his loan modification.

74. In January 2018, Plaintiff received 5 NOD.s with a sale date January 1, 2018 (again an error since no sales are set on New Years Day!).

ADVERSARY PROCEEDING COMPLAINT

75. On January 30, 2018, Plaintiff received from Clear Recon a reinstatement letter with the incorrect amount to cue the debt.

76. On February 14 2018, Plaintiff sent a letter to Ditech requesting information about the sale of his home.

77. On February 20 2018,  Plaintiff received a letter from Ditech stating they were looking Into his dispute.

78. On March 30, 2018, Plaintiff received a history that he requested from Ditech from the CFPB which showed his filing complaints against them throughout this process.

79. In April 2018 ,  Plaintiff filed chapter 13 to avoid foreclosure.

80. On December 4, 2018  his bankruptcy was dismissed without prejudice.

81. Plaintiff was shocked to find his home foreclosed i January 2019,  With Breckenridge being the buyer as he was  making  payments through the month of December. Plaimntiff had received no notice of a sale date from Clear Recon or Ditech during this time frame. DITECH purports to serve as mortgagee of record and nominee for the Plaintiff in local land records. DITECH takes action as mortgagee through documents executed by "certifying officers" of DITECH. DITECH has designated these individuals, who are officers or employees of Members or certain

third-parties who have contractual relationships with Members, as

officers of DITECH.

82. During the Mortgage Boom Era of 2002 to 2007, Wall Street investors

looked to feed their insatiable and reckless greed for profit by tapping

directly into the American Dream – home ownership. Mortgage lenders

and investment banks aggressively lured the American people into

predatory loans with teaser interest rates and into purchasing homes with

inflated appraisals and under the promise that the booming real estate

market would continue to boom. Wall Street took the soon to be toxic

loans and bundled them into "Mortgage Backed Securities" through a

process known as "Securitization." These "securities" were then sold to

investors in the form of certificates, whereby the investors became the

"Certificateholders" of the securities that were to be fed by the toxic

loans.

83. Knowing that the predatory loans would soon default and turn into toxic

assets, Wall Street placed their bets accordingly and bought exotic

insurance products in the form of "Credit default Swaps.[1]  Thus, when

---

[1] In 1995, JPMorgan Chase, created the Credit Default Swap (CDS).

Essentially, a CDS is a form of insurance intended to protect the buyer of the

_____

policy in case the borrower defaults on the loan. If the borrower defaults, the

buyer of the CDS receives a large payout for the cash value of the defaulted

loan. The main difference between a traditional insurance policy and a CDS is

that anyone can purchase a CDS, even those who have no direct "insurable

interest" in the lender. CDSs were instrumental during the housing bubble

because once the banks ran out of creditworthy borrowers, they had to turn to

uncreditworthy "subprime" borrowers. To avoid losses from default, the banks

moved these risky mortgages off their books by bundling them into

"securities" and selling them to investors. To induce the investors to buy these

securities the securities were then "insured" with credit default swaps. CDSs

allowed investors to bet against the average American to default on their

mortgage with little risk. CDS insurance was especially attractive to investors

who had knowledge of the subprime mortgage industry, since they knew the

likelihood of default on these loans was much higher. Notably, AIG Insurance

Company ("AIG"), an insurance carrier who owned a considerable market

share of these CDS policies, was unable to make good on these policies after

the housing bubble burst resulting in AIG seeking a government bailout. *See*

Justin Fox, *Why the Government Wouldn't let AIG Fail*?, TIME Business

(September 16, 2008)

ADVERSARY PROCEEDING COMPLAINT

Page **18** of **67**

the Mortgage Boom turned into a Mortgage Meltdown (which it did),
they would stand to make even more profit when the mortgage insurance
paid them out for their "losses."

However, in their rush to "securitize" the predatory loans, Wall Street
failed to actually follow its own rules and regulations, creating the
instant situation where the securities are not actually backed by any
mortgages at all. Under the standard model, the promissory notes were
*supposed* to be sold and transferred into a trust pool ("Securitized
Trust") that holds the promissory notes as collateral on the securities
bought by investors ("Certificateholders"). These "true sales" allow the
original lenders to move the notes off the books, eliminating the need to
maintain capital-adequacy reserves against default. The purpose of
securitizing collateral debt obligations was to provide a large supply of
money to lenders for originating loans, and to provide investment to
bond holders – which were expected to be relatively safe.

84. The Securitized Trusts, if ever formed properly, are subject to and
governed by (1) the Pooling and Servicing Agreement; (2) The

---

http://www.time.com/time/business/article/0.8599.1841699,00.html. Thus, in
the end, it was the American taxpayer who bore the burden of these CDS.

Mortgage and Loan Agreement; (3) the 424B5 Prospectus; (4) the common law trust rules of New York, and (5) Internal Revenue Code section 860A through 860G, better known as the Real Estate Mortgage Investment Conduit ("REMIC") rules.

85. An essential aspect of the mortgage securitization process is that the Trust must obtain and maintain good title to the mortgage loans comprising the pool for that certificate offering.  This is necessary in order for the Trustee of the purportedly Securitized Trust to be legally entitled to enforce the mortgage loans in case of default. In addition to other required documentation to complete the Collateral File of any given loan, two documents relating to each mortgage loan must be validly transferred to the Trust as part of the securitization process – the promissory note and the security instrument (deed of trust or mortgage). In this case, on information and belief, neither document was validly transferred to the purported beneficiary trust, , which Ditech . will purport to represent as "Trustee."

86. Here, Plaintiff alleges that the "true sales" never took place, because the Note and Deed of Trust were already transferred and sold to an as yet unidentified Third Party in or about December of the year 2005, and thereby whatever trust acquired it from Homecomings did not at any

time acquire any legal, equitable, and pecuniary interest in Plaintiff's

Note and Deed of Trust from the original lender. As a result, thereof

DITECH, which purports to have been Plaintiff's creditor actually has

and had no secured or unsecured right, title, or interest in Plaintiff's

Note, Mortgage Deed of Trust and Residence, and has no right to

collect mortgage payments, demand mortgage payments, or report

derogatorily against Plaintiff's credit, or undertake any other right

conferred in the Deed of Trust,[2] including the purported "sale" of the

property to BRECKENRIDGE In January 2019.

---

[2] Plaintiff's allegations are supported by the recent ruling of the Massachusetts

Supreme Judicial Court in *U.S. Bank vs. Ibanez,* SJC-10694, 2011 WL 38071.

In *Ibanez*, the court invalidated two foreclosure sales, finding that the lower

court did not err in concluding that the securitization documents submitted by

U.S. Bank and Wells Fargo failed to demonstrate that they were the holders of

the mortgages. The court rejected the banks' argument that the mortgages were

transferred via the applicable Pooling and Servicing Agreement and made clear

that, to foreclose, the banks must prove a complete and unbroken chain of title

from origination to securitization trust in full compliance of the PSA, i.e.

establish ownership of the mortgage.

ADVERSARY PROCEEDING COMPLAINT

87. Plaintiff alleges that the Defendant DITECH does not now, nor have they ever, owned any right, title, or interest in the Plaintiff's Note, Deed of Trust, or property.

88. Plaintiff further alleges that, on information and belief, that any TRUST created by Homecomings and GMAC1 that Defendant DITECH will claim owns Plaintiff's Note and Deed of Trust, has been dissolved due to the disbursement and receipt of mortgage insurance payouts to DITECH.

89. Nonetheless, DITECH attempts to take advantage of the complex structured financial system to defraud yet another homeowner. Plaintiff anticipates that DITECH will seek a Court-sanctioned bailout by submitting blatantly fraudulent and fabricated "assignment" via a Request for Judicial Notice, thereby committing a fraud on the Court, and attempting to further mislead Plaintiff and the Court into believing DITECH  is an actual creditor, and entitled to enforce the underlying obligation, when in fact they have no such standing.

90. Plaintiff does not dispute that money is owed money on the mortgage obligation.[3] Rather, Plaintiff disputes the amount owed, and seeks the Court's assistance in determining who the holder in due course is of the Note and Deed of Trust, and specifically what rights, if any, DITECH, and TRUST CREATED BY HOMECOMINGS has to claim a secured or unsecured interest in Plaintiff's Note, Deed of Trust and Property in the face of overwhelming evidence that DITECH is not and was not the true holder of Plaintiff's financial obligation, and therefore an acts undertaken by DITECH based on a claimed interest in the Note and

---

[3] However, simply because Plaintiff do not dispute this fact, the Court should not condone BONYNA 's fraudulent and predatory mortgage servicing practices and allow it to collect on money it is not owed. Simply put, the Court should not allow BONYNA to trample over 200 years of well-settled property laws just because Plaintiff "owes somebody the money." There is no concept in law regarding "Adverse Possession" of a debt obligation, and the Court should decline the Defendant's invitation to create such a right.

Deed of Trust is void and without any legal force or effect, including the attempt to sell the property. [4]

91. Plaintiff's information and belief is based on (1) a title report and analysis of the Property's county records; (2) direct written and oral communication with Defendants; (3) counsel's research, experience, and extensive review of depositions, case law, amicus briefs, correspondence, news articles, reports, and publicly available securitization documents and practices; (4) a review of the purported "Assignment of Deed of Trust"; 5) and an audit of multiple filings with the Securities and Exchange Commission ("SEC"), including multiple prospectus and Pooling and Servicing Agreements ("PSA") related to DITECH Securitization Trusts.

92. Nothing in the Plaintiff's complaint should be construed as an attack on the concept or practice of the establishment of securitization trusts, or an allegation of impropriety relating to the existence of securitization

---

[4] Plaintiff relies on the oft quoted maxim cited in *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 425 n. 10 (S.D.N.Y 2010) which sets that **someone who is not a party to a contract has no standing to enforce its terms**.

trusts.  When properly formed, these trusts conform to the established

law.  Plaintiff complains, however, that its Note and Deed of Trust are

not part of any securitization trust, and the discussion is included to

properly illustrate the nature of the entity that purports to be Plaintiff's

creditor, and more importantly the irregularities with respect to the

attempted transfer of Plaintiff's contract to the Trust further illustrate

the allegations set forth in this complaint that the Defendant DITECH

did not ever acquire a pecuniary interest in the Plaintiff's Note and

Deed of Trust contracts.

93. Plaintiff alleges, believes, and thereon asserts that on or around the time

of origination of Plaintiff's loan, GMAC sold their loan to another

entity or entities. **That entity was *not* DITECH.**

94. Plaintiff alleges on information and belief that GMAC never sold,

transferred, or granted the Note or Mortgage to the Sponsor or

Depositor of  the TRUST CREATED BY HOMECOMINGS, DITECH,

or any predecessor in interest of DITECH and that DITECH is merely a

third-party stranger to the loan transaction.

95. Plaintiff further alleges that none of the Defendants or Doe Defendants

can demonstrate or document that Plaintiff's Note was ever properly

endorsed, and transferred to DITECH, the TRUST CREATED BY

ADVERSARY PROCEEDING COMPLAINT

HOMECOMINGS or any other claimed predecessor in interest to DITECH.

96. Plaintiff has repeatedly requested that DITECH verify the validity of the debt. Although this information should be readily available to any mortgage servicer. DITECH has failed to provide any evidence to verify the owner and amount of Plaintiff's Mortgage or validate the claim to Plaintiff's debt obligation.

97. Plaintiff is unaware of the existence of any purported assignment of the Deed of Trust to DITECH and or TRUST CREATED BY HOMECOMINGS, as there is no recorded assignment known to the Plaintiff. The lack of a timely or valid actual assignment of the Note and Deed of trust into the trust res of The FOR TRUST CREATED BY HOMECOMINGS raises numerous red flags and further demonstrates that Plaintiff's Note and Deed of Trust were not properly or actually deposited into the TRUST CREATED BY HOMECOMINGS and that the lack of an actual assignment further demonstrates that GMAC had previously sold or transferred the interests in the Note and Deed of Trust to an as yet unidentified third party

98. The failure to EVER deposit Plaintiff's Note into the TRUST CREATED BY HOMECOMINGS at any time creates the consequence

ADVERSARY PROCEEDING COMPLAINT

that  DITECH neither individually nor as trustee for TRUST
CREATED BY HOMECOMINGS can claim any legal or equitable
right, title, or interest in Plaintiff's Note, Mortgage, Deed of Trust or
Property since the Note and Deed of Trust are not part of the trust res.
Standing to seek collection is precluded as a matter of law. The
Defendant's cannot seek to collect payments under a contract that they
were not a party to, and not the beneficiary of an assignment of.[5]

99.  Plaintiff does not allege or assert that he is a beneficiary or party to the
Trust PSA. Rather, Plaintiff alleges that the failure at any time to
transfer ownership of the Note and Deed of Trust to DITECH, and or
the TRUST CREATED BY HOMECOMINGS makes it impossible for
DITECH to claim, allege or assert that it was assigned, transferred or
granted Plaintiff's Note or Deed of Trust, or any interest therein, in any
manner whatsoever.

100. Plaintiff also alleges that the failure to properly and actually transfer
the Note and Deed of Trust to DITECH has resulted in an unperfected
lien that Defendants cannot enforce in any manner whatsoever, and that

---

[7] *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 425 n. 10 (S.D.N.Y 2010)

only the actual successor in interest to the Note and Deed of Trust has

any interest therein.[6]

101. Plaintiff relied on the misrepresentations of DITECH and has been

damaged in the following ways: (1) multiple parties may seek to

_____

[6] These allegations are identical to those brought by the Nevada Attorney

General against Bank of America, BAC Home Loans Servicing, and Quality,

in which Attorney General Catherine Cortez Masto alleges that these entities

engaged in unlawful and deceptive practices by misrepresenting to

homeowners that they had authority to foreclose despite the fact that these

were fatal deficiencies in transfers to the securitzation Trusts. *State of Nevada*

*vs. Bank of America et al.,* No. 3:11-cv-00135-RCJ, (C.D. Nev August 30,

2011). The AG concludes that, "[t]hese are not mere technicalities. The PSA's

spelled out specific procedures in order to ensure a proper transfer, protect the

Trusts as the holders in due course, and avoid subjecting the Trusts to taxation.

In addition, borrowers need to know the actual holders of their mortgages so

that, for example, they can investigate and assert available defenses in

foreclosures, including that the agent of the trustee lacks authority or standing

under the Note." *Id*. at ¶ 146.

enforce the debt obligation against him[7]; (2) the title to his home has

been clouded and rendered potentially unmarketable, as any would-be

buyer of Plaintiff's home will find themselves in legal limbo, unable to

know with any certainty whether they can safely buy Plaintiff's home or

get title insurance given the potential of competing claims between the

true owner of the Note and Deed of Trust or a successor or assign and

DITECH, and now the putative claims of Defendant

BRECKENRIDGE; (3) Plaintiff has been paying the wrong party for an

undetermined amount of time and overpaid in interest that was over

calculated; (4) Plaintiff is unable to determine whether he sent  monthly

mortgage payments to the right party since there are potentially

---

[7] The present existence or non-existence of a competing claim or creditor is

irrelevant to establish the Defendant's claims to the pecuniary rights under the

Note and Deed of Trust. Whether or not the true owner asserts their rights does

not allow the Defendant to collect payments under a contract it has no

demonstrable interest as a party or assignee, nor is it probative of any rights in

favor of the Defendant. Without more than a bald claim, the Defendant has no

rights superior to any other putative claimant. There is no legal concept of

"Adverse Possession" of a Promissory Note.

competing claims as between multiple creditors; (5) Plaintiff has expended significant funds to cover the cost of litigation and related costs.

102. In addition to seeking compensatory consequential, punitive, and other damages, Plaintiff seeks Declaratory Relief as to whether the Deed of Trust (Mortgage) secures any obligation of Plaintiff in favor of DITECH and/or the TRUST CREATED BY HOMECOMINGS such that any of them can collect Plaintiff's mortgage payments, demand payment, engage in debt collection activities, or undertake any other right conferred upon the Lender in the Note and Deed of Trust, including conducting a valid non-judicial foreclosure sale of the property to the exclusion of the true beneficial owner.

**IV.     DITECH HAS NO INTEREST IN THE NOTE AND DEED OF TRUST**

103.     As will be shown in more detail below, the Plaintiff alleges on information and belief that:

a.     The beneficiary under his Note and Deed of Trust is presently unknown.

b.     Defendant DITECH is not the successor or assign of the Note and Deed of Trust.

ADVERSARY PROCEEDING COMPLAINT

c.   At no time did GMAC effectuate any assignment of any interest in the Note and Deed of Trust, directly or indirectly, to either Defendant DITECH or the TRUST CREATED BY HOMECOMINGS, or any predecessor in interest to these entities.

104.   California Commercial Code section 3301 limits a negotiable instrument's enforcement to the following:

"Person entitled to enforce" an Instrument means (a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 or subdivision (d) of Section 3418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

105.   On information and belief, none of the Defendants were or are present holders in due course of Plaintiff's Note such that they can enforce Plaintiff's obligation and demand mortgage payments or undertake any activities permitted under the relevant Deed of Trust

including the collection of moneys or the exercise of rights under the
Deed of Trust, including the power of sale.

106.    On information and belief, Defendant DITECH was not and is not
a nonholder in Possession of Plaintiff's Note who has rights of the
holder.

107.    If there is a holder in due course of Plaintiff's Note at issue,
pursuant to California Commercial Code section 3301, et seq. it is the
entity that can actually establish a Pecuniary, legal, and equitable
interest in the Property, and provide an unbroken chain of title to
Plaintiff's Note and Mortgage.[8]

---

[8] The testimony of Linda DeMartini, a 10-year litigation manager for
Countrywide Home Loans in *In Re Kemp*, Case No. 0S-l8700-JHW (Bankr.
D.N.J. November 16, 2010) (for Publication) exposed the Shoddy handling of
mortgage notes and deeds of trust of securitized mortgages required to perfect
"holder in due Course" status. In that case Linda DeMartini described how
Countrywide failed to adhere to the most rudimentary of securitization
procedures, such as transferring the original promissory note to the trusts that
had purchased the loans, as required under the pooling and servicing
agreement Ms. DeMartini testified that it was standard Practice for

_____

Countrywide to warehouse the original notes, which were stored in Simi

Valley, California despite securitization contracts that required the notes to be

physically transferred to Sponsors trustees or custodians of the securitized

trusts. The findings in court decisions all over the country, news stories,

attorneys general's complaints, including one by the New York Attorney

General against Defendant New York Bank Mellon , and state and federal

investigations reveal that business practices like Countrywide's were common

place and, like Countrywide, most lenders failed to properly comply with

protocols required to properly securitize mortgage loans. Ms. Martini's

testimony has been corroborated by Abigail Field of CNN, who reviewed

foreclosures filed in two New York counties between 2006 and 2010 in which

of the 104 loans that were examined were endorsed by Countrywide: .". If the

lack of endorsement on these notes is typical - and 104 out of 104 suggests it

its – the problem occurs across Countrywide securities." *See* Abigail Field, *At*

*Bank of America, More Incomplete Mortgage Docs Raise More Questions,*

Fort., (June 3, 2011), http://finance.fortune.cnn/2011/06/03/at-bank-

of/america-moreincomplete-mortgage-docs-nad-more-questions/.

ADVERSARY PROCEEDING COMPLAINT

108.    On information and belief none of the Defendants, were/are

entitled to enforce Plaintiff's Note pursuant to § 3309 or subdivision (d)

of § 3418.

109.    Plaintiff alleges that, prior to demanding mortgage payments from

Plaintiff none of the Defendants or Doe Defendants had, nor presently

have, a secured or unsecured legal, equitable, or pecuniary interest in

Plaintiff's Note and/or Deed of Trust as required under California law -

irrespective of who is actually in physical possession of Plaintiff's Note.

110.    Plaintiff alleges on information and belief that DITECH  and/or its

agents are fraudulently enforcing a debt obligation in which they have

no pecuniary equitable or legal interest, and thus no standing to seek

collection or enforce the rights contained in the Note and Deed of Trust.

Thus, DITECH's conduct is part of a fraudulent debt collection scheme

to the detriment of the Plaintiff.

## V.    **DEFENDANT DITECH'S DEBT COLLECTION EFFORTS**

111.    The Plaintiff is informed, and believe and  thereon allege that in

spite of having no legitimate, demonstrable, and/or documented interest

in the subject Mortgage Note the defendant DITECH through its agents

and employees, has undertaken multiple and ongoing overt acts to

obtain moneys and ultimately to attempt to obtain title to Plaintiff's

ADVERSARY PROCEEDING COMPLAINT

property from the Plaintiff related to the Defendant DITECH's false

claim of ownership of the Mortgage Note and Deed of Trust, including

but not limited to the following acts which were neither authorized nor

undertaken on behalf of a real party in interest to the Note and/or Deed

of Trust:

112.    Mailing, or causing to be mailed, monthly billing statements to the

Plaintiff asserting a right to collect mortgage payments. (The names and

identities of those individuals who have sent payment requests to the

Plaintiff is unknown to the Plaintiff at this time, and discovery is

necessary to properly identify same. Leave of the Court will be made to

request an opportunity to file an amended complaint that fully and

completely identifies the ongoing overt acts in this regard, as well as the

identity of the DITECH employee or agent who authored the payment

demands.) Payments in this regard total exceed $75,000.00, but the

Defendants had no right to collect said payments.

113. The acts indentified herein where not authorized by any beneficial

owner of the Note and/or Deed of Trust.

114.    On January 10, 2019, Defendant DITECH, through its agent and

employee Clear Recon purportedly "sold" the Plaintiff's property to

BRECKENRIDGE by way of a non-judicial foreclosure "sale" who

ADVERSARY PROCEEDING COMPLAINT

Page **35** of **67**

now assert an ownership interest in the subject property to the exclusion of the Plaintiff's interests.

115.    The names and identities of those all the individuals who have sent payment demands to the Plaintiff, and recorded and/or caused to be recorded with the County Recorder are unknown to the Plaintiff at this time, and discovery is necessary to properly identify same. Leave of the Court will be made to request an opportunity to file an amended complaint that fully and completely identifies the ongoing overt acts in this regard, as well as the identity of the DITECH employee or agent who authored the respective demands.)

## VI.   **PLAINTIFF HAS SUFFERED AND CONTINUES TO SUFFER, SIGNIFICANT MONETARY, LEGAL AND EQUITABLE DAMAGES**

116.    The conduct described above by DITECH as well as their respective agents and employees, was malicious because Defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and Deed of Trust. However, despite such knowledge, Defendants continued to demand and attempt to collect Plaintiff's mortgage payments and take other collection actions as against the Plaintiff.

117.    Defendants engaged, and are engaging in, a pattern and practice of

defrauding Plaintiff, in that, on information and belief Defendants failed

to properly credit payments made, incorrectly calculated interest on the

accounts, and failed to accurately debit fees, as these payments

belonged to the true beneficiary of the Note and Deed of Trust, and

have never belonged to Defendant DITECH.

118.    On information and belief, at all times material DITECH had, and

has, actual knowledge that Plaintiff's accounts were not accurate, but

that Plaintiff would continue to make further payments based on

Defendant's inaccurate accounts.

119.    On information and belief, Plaintiff made payments based on the

improper, inaccurate, and fraudulent representations as to Plaintiff's

accounts.

120.    As a direct and proximate result of the actions of the Defendants,

set forth above, Plaintiff overpaid in interest.

121.    As a direct and proximate result of the actions of the Defendants

set forth above, Plaintiff's credit and credit score have been severely

damaged. Specifically because of the derogatory credit reporting on

their credit report on behalf of DITECH, Plaintiff may be unable to

refinance out of his present loan, buy another property, or sell his home, or otherwise have access to credit.

122.    As a direct and proximate result of the actions of the Defendant DITECH set forth above, the title to Plaintiff's home has been slandered, clouded, and its salability has been rendered potentially unmarketable.

123.    As a direct and proximate result of the actions of the Defendants set forth above, Plaintiff does not know who the current beneficiary of his Note and Mortgage actually is, such that he is now subject to double financial jeopardy.

124.    As a direct and proximate result of the actions of the Defendants set forth above, *multiple* parties can attempt to enforce Plaintiff's debt obligation.

125.    The conduct of DITECH and GREEN TREE  has led to the imminent loss of Plaintiff's home and to additional pecuniary damages. The pecuniary damages include, but are not limited to, the costs of over calculation and overpayment of interest, the costs of repairing Plaintiff's credit, the reduction and/or elimination of Plaintiff's credit limits, the costs associated with removing the cloud from their property title and attorneys' fees, in an amount to be proven at trial.

ADVERSARY PROCEEDING COMPLAINT

126.    The conduct of DITECH and GREEN TREE ' conduct, was

malicious because Defendants did not know the identity of the current

and true beneficiary of Plaintiff's note and Deed of Trust, yet they

intentionally and fraudulently covered up this defect by wrongfully

recording multiple fraudulent  documents, which would enable them to

***illegally and fraudulently*** collect on Plaintiff's debt, attempt to

undertake a fraudulent "Trustee's Sale," and consequently render the

title to the property unmarketable.

127.    The title to Plaintiff's Property has been rendered unmarketable

and unsalable because of the multiple claims being made against

Plaintiff's debt and underlying security (the "Subject Property"), and

because of the putative sale of the property to BRECKENRIDGE. If the

Assignment of the Deed of Trust, together with the Notice of Default,

and the "Trustee's Deed upon Sale" are  not cancelled and set aside,

together with all other documents recorded and identified herein,

Plaintiff will be incurably prejudiced. Plaintiff will be denied the

opportunity to identify and negotiate with their ***true creditor***, exercise

their right to verify and validate his debt, and now suffer the

consequences of a false claim of ownership asserted by

BRECKENRIDGE.

ADVERSARY PROCEEDING COMPLAINT

## VII.    PLAINTIFF HAS OFFERED TO AND IS READY WILLING AND ABLE TO UNCONDITIONALLY TENDER HIS OBLIGATION.

128.    Plaintiff  offers to and is ready, willing, and able to unconditionally tender his obligation. [9]

---

[9] Case law makes clear that **Plaintiff is only required to allege a credible offer of tender**, not actually tender. *Alicia v. GE Money Bank*, No. C 09-00091 SBA, 2009 WL 2136969 at *3 (N.D. Cal. July 16, 2009) (". . .debtor must allege a credible tender in the amount of the secured debt. . ."). Moreover, tender is **not** required when the owner's action attacks the validity of the underlying debt because the tender would constitute an affirmation of the debt. *Sacchi c. Mortgage Electronic Registration Systems, Inc.*, No. CV 11-1658 AHM, 2011 WL 2533029 (C.D. Cal June 24, 2011, at *16 (emphasis added) (citing *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997); *Stockton v. Newman*, 148 Cal. App 2d 558, 564 (1957). *See also, Foulkrod v. Wells Fargo Financial California Inc.*, No. CV 11-732-GHK (AJWx) (C.D. Cal. May 31, 2011) (". . .requiring plaintiff to tender the amount due on her loan at  This time would be illogical and inequitable given that he disputes that Wells Fargo has any rights under the loan.") In light of the fact that Plaintiff contests the legitimacy of the

129.     While Plaintiff maintains that the Defendants are complete

strangers to them without any demonstrable right, title, or interest in the

Plaintiff's property, Note, or Deed of Trust the Plaintiff has the

resources available, and other resources readily available, to place them

in a position whereby they may tender the entire loan proceeds owed to

their legitimate lender, and/or their legitimate successors, including past

due interest claims and penalty claims asserted by the Defendants which

as to be determined after deduction for non negotiasble checks issued

by Ditech ( They are non negotiable due to the fact of the present

Bankruptcy of Ditech which close all its former bank accounts.)

130.     The Plaintiff's resources for tender include:

    d.  The property secured by the Note and Deed of Trust has an

        approximate fair market value far in excess of what Ditech

        sold the property.   Pursuant to Cal. Civ. Proc. Code Section

        580d, the Plaintiff's liability under the Note and Deed of Trust

---

Defendants' claims to the mortgage payments it would be **illogical and**

**inequitable** to require Plaintiff to actually tender the amount given that

Plaintiff disputes whether Defendants have any rights under the loan. *See*

*Onofio v. Rice*, 55 Cal. App. 4th 413, 424 (1997).

is limited to the security interest in the property itself.  Thus
the property itself is and should be considered sufficient
tender of the Plaintiff's obligation since Plaintiff's obligation
under the Note and Deed of Trust will never exceed the
security interest in the property itself. In the event the
Defendants are the legitimate beneficiaries of the Note and
Deed of Trust the subject property represents 100% of
security interest created therein, and is available to the
legitimate beneficiary pursuant to the security terms set forth
in the Deed of Trust.

131.    The Plaintiff has ready access to savings, investments, and
retirement savings , which can be liquidated as needed with little or no
tax consequences in as little as 30 days.

132.    The Plaintiff is securing a financing commitment from various
lenders which sums can be used to provide any required tender.

133.    Based on the foregoing, Plaintiff has set forth factual allegations
demonstrating that he has the resources, or has the means to readily
obtain them, to be in a position to tender the entire loan proceeds.

## VIII. <u>FIRST CAUSE OF ACTION – DECLARATORY RELIEF; TO DETERMINE STATUS OF DEFENDANT'S CLAIMS [28 U.S.C. § 2201, 2202]</u>
**[As against DITECH,  BRECKENRIDGE and GREEN TREE ]**

134.    Plaintiff hereby incorporates by reference each and every one of

the preceding paragraphs as if the same were fully set forth herein.

135.    Section 2201(a) of Title 28 of the United States Code states:

"In a case of actual controversy within its jurisdiction, except

with respect to Federal taxes other than the actions brought

under section 7428 of the Internal Revenue Code of 1986, a

proceeding under section 505 or 1146 of title 11, or in any civil

action involving an antidumping or countervailing duty

proceeding regarding a class or kind of merchandise of a free

trade area country (as defined in section 516A(f)(10) of the

Tariff Act of 1930), as determined by the administering

authority, any court of the United States, upon the filing of an

appropriate pleading, may declare the rights and other legal

relations of any interested party seeking such declaration,

whether or not further relief is or could be sought. Any such

declaration shall have the force and effect of a final judgment

or decree and shall be reviewable as such."

136.   Section 2202 of Title 28 of the United States Code states:

"Further necessary or proper relief based on a declaratory

judgment or decree may be granted, after reasonable notice

and hearing, against any adverse party whose rights have been

determined by such judgment."

137.   Plaintiff alleges that neither Ditech , and or the related DITECH

trust ("TRUST CREATED BY HOMECOMINGS")  are the successor

and/or assign of the interests of the original lender GMAC.

138.   Plaintiff allege that neither Ditech , or the related DITECH trust

("TRUST CREATED BY HOMECOMINGS)  have a secured or

unsecured legal, equitable, or pecuniary interest in the lien evidenced by

the Deed of Trust and that the purported recorded assignments have no

value since they were executed fraudulently and without the authority,

direct or indirect, stated or implied, of the current beneficiary of the

Note and Deed of Trust.

139.   Plaintiff further alleges that none of the Defendants is the actual

successor in interest to GMAC with respect to the Note an Deed of

Trust, since GMAC sold, transferred or assigned all right title and

interest to a third party at some time well prior to the interests purported

to be asserted by the Defendants.

ADVERSARY PROCEEDING COMPLAINT

140.    Plaintiff further allege that Defendant DITECH had nothing to sell

to Defendant BRECKENRIDGEo n January 10, 2019.

141.    At some time after February 28, 2005, Defendant DITECH claims

they have a secured enforceable interest in, and perfected lien against,

the Plaintiff's Note, Deed of Trust and Property.

142.    At some time after February 28, 2005, Defendant DITECH claims

they have standing to obtain all of the rights and benefits under the Note

and Deed of Trust to the exclusion of the true beneficiary.

143.    On January 10, 2019, Defendant BRECKENRIDGE claims they

have own the subject property by virtue of a purchase/sale undertaken

by and between Defendant DITECH and Defendant BRECKENRIDGE.

144.    Thus, the competing allegations made by Plaintiff above establish

that a real and actual controversy exists as to the respective rights of the

parties to this matter with respect to the claimed interest by the

Defendant DITECH to the benefits and rights under the Note and Deed

of Trust, and the Plaintiff's denial that the Defendants have any right, or

standing to assert any right, under the Note and Deed of Trust, together

with the competing rights of potential putative creditors, and the

competing rights asserted between the Plaintiff and Defendant

BRECKENRIDGE as to the ownership interest of the subject property.

ADVERSARY PROCEEDING COMPLAINT

145.    Accordingly, Plaintiff requests the Court make a finding and issue

appropriate orders stating that DITECH and the Doe Defendants, have

no right or interest in Plaintiff's Note, Deed of Trust, or the Property,

which authorizes them, in fact or as a matter of law, to any benefit or

right set forth in the Note and Deed of Trust, and consequently the

"sale" to Defendant BRECKENRIDGE is and was void an without any

force or effect.

146.    Plaintiff will suffer prejudice if the Court does not determine the

rights and obligations of the parties because: (1) Plaintiff will be denied

the opportunity to identify and document their true and correct

creditor/lender and negotiate with them; (2) Plaintiff will be denied the

right to conduct discovery and have the claims of DITECH verified by a

custodian of records who has personal knowledge of the loan and all

transactions related to it; (3) Plaintiff will be denied the opportunity to

discover the true amount he still owes minus any illegal costs, fees and

charges; (4) Plaintiff will face dispossession of his family home.

147.    Due to the actual case and controversy regarding competing

claims and allegations, it is necessary that the Court declare the actual

rights and obligations of the parties and make a determination as to

whether the claims of DITECH and BRECKENRIDGE are enforceable

ADVERSARY PROCEEDING COMPLAINT

and whether they is secured by any right, title or interest in Plaintiff's

Property.

148.     Furthermore, the conduct of DITECH and one or more Doe

Defendants, and each of them, as herein described, was so malicious

and contemptible that it would be looked down upon and despised by

ordinary people. Plaintiff is therefore entitled to punitive damages in an

amount appropriate to punish Defendants and to deter others from

engaging in similar conduct.


**IX.     SECOND  CAUSE OF ACTION – QUASI CONTRACT**
**[As against DITECH and GREEN TREE ]**

149.     Plaintiff hereby incorporates by reference each and every one of

the preceding paragraphs as if the same were fully set forth herein.

150.     DITECH and others acting in concert with them for the pecuniary

benefit of DITECH, demanded monthly mortgage payments from

Plaintiff and continued to collect payments from Plaintiff. Plaintiff

reasonably relied upon DITECH assertion that it/they are/were entitled

to the benefit of Plaintiff's mortgage payments.

151.     DITECH and others acting in concert with them, knowingly

accepted payments and retained them for its own use knowing DITECH

had not acquired and never did acquire an interest in Plaintiff's Note, such that they could accept or keep Plaintiff's payments. It would be inequitable for DITECH to retain the payments it received from Plaintiff that it did not have the legal authority to collect. The equitable remedy of restitution when unjust enrichment has occurred is an obligation created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to their former position by return of the thing or its equivalent in money.

152.    DITECH has been unjustly enriched by collecting monthly payments from Plaintiff when it has and had no interest in his Note or Deed of Trust.

153.    Plaintiff seeks restitution for any payments made to DITECH including those payments made to others acting in concert with DITECH for its benefit that were not actually paid to the lender or beneficiary, if any.

X.      **THIRD CAUSE OF ACTION – NEGLIGENCE**
        **[As against DITECH and GREEN TREE ]**

154.    Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

ADVERSARY PROCEEDING COMPLAINT

155.   Defendant DITECH and Does 1 through 10, are jointly and

severally liable for DITECH negligent and reckless conduct.

156.   DITECH as the purported beneficiary of the Note and Deed of

Trust together with its agents and employees, including its purported

"trustee" have a duty to exercise reasonable care[10] and skill to follow

California law with regard to enforcement of monetary obligations,

and to refrain from taking or failing to take any action against

Plaintiff that they did not have the legal authority to do.  This

includes not collecting or demanding mortgage payments when they

---

[10] Normally, lenders and servicers do not owe a duty of care. *Nymark v. Heart Fed Savings and Loan Assn.*, 231 Cal. App. 3d 1089, 1093 (1991). However, a bank may be liable in negligence if it fails to discharge its contractual duties with reasonable care. *Das v. Bank of Am.*, 186 Cal. App. 4th 727, 741 (2010). Additionally, a bank may be liable for aiding and abetting a tort when it renders "substantial assistance" to a tortfeasor during a business transaction that it knowingly aided in the commission of the tort. *Id*. (*citing Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1144-45). In this case, Freddie Mac is NOT loaned money, and serves only as a trustee for a trust that claims to own his Note.

ADVERSARY PROCEEDING COMPLAINT

Page **49** of **67**

do not have the right to enforce the obligation, causing the Plaintiff to

overpay in interest, making credit reports to credit bureaus, and

failing to keep an accurate accounting of Plaintiff's mortgage

payments, credits, and debits.

157.   DITECH has a duty to exercise reasonable care and skill to refrain

from taking any action against Plaintiff that they do not have the

legal authority to do. As a direct and proximate result of the reckless

negligence, utter carelessness, and blatant fraud of the Defendant as

set forth above, the Chain of Title to Plaintiff's Property has been

rendered potentially unmarketable and defective and has caused

Plaintiff to potentially lose saleable title to the subject property.

158.   DITECH individually and on behalf of the TRUST CREATED

BY HOMECOMINGS, breached that duty when, in spite of having

no pecuniary or beneficial interest in the Plaintiff's Note and Deed of

Trust, it held itself out as Plaintiff's creditor, and improperly sought

the benefits there under without standing to do so.

159.   As a direct and proximate result of the negligence and

carelessness of the Defendant as set forth above, Plaintiff suffered,

and continues to suffer, general and special damages in an amount to

be determined at trial, including attorney's fees, and costs of bringing

ADVERSARY PROCEEDING COMPLAINT

suit to dispute, validate, and challenge said Defendant's purported

rights to enforce the debt obligations against them.

## XI.   FOURTH CAUSE OF ACTION – FOR VIOLATION OF 15 U.S.C. § 1692, ET SEQ.
### [As against DITECH and GREEN TREE ]

160.   Plaintiff hereby incorporates by reference each and every one of

the preceding paragraphs as if the same were fully set forth herein.

161.   Federal law prohibits the use of "any false, deceptive, or

misleading representation or means in connection with the collection of

any debt . . . including the false representation of . . . the character,

amount, or legal status of any debt . . . and the threat to take any action

that cannot legally be taken…"

162.   Defendant DITECH:

e.   Is one of the largest debt collectors in the United States and a

large part of its business is the collection of debt for third

parties, and as trustee for billions of dollars of securitized

mortgage debt, regular acts as trustee in the collection of the

securitization trusts; and

f.  It's role in the collection of Plaintiff's Note and Deed of Trust is as Trustee for another entity, a mortgage securitization trust, and not for itself or its own benefit; and

g.  Regularly uses interstate commerce, including the telephones and the mails with the principal purpose to collect the debts of another, in this case the mortgage backed securitization trust

h.  In illegally attempting to collect on Plaintiff's debt obligation in the manner described herein, Defendants DITECH falsely represented the status of the debt, in particular, that it was due and owing to Defendant DITECH, and or its principal, at the time the suit was filed;

i.  Falsely representing or implied that the debt was owing to Defendant DITECH, or its principal, as an innocent purchaser for value, when in fact, such an assignment had not been accomplished;

j.  Threatened to take action, namely engaging in collection activities that cannot legally be taken by them;

k.  Did in fact take action, namely by demanding payments from the Plaintiff, recording a fraudulent "Assignment of Deed of Trust" a  notice of "Default,"  a fraudulent notice of

ADVERSARY PROCEEDING COMPLAINT

"Trustee's Sale" and a fraudulent "Trustee's Deed upon Sale"

when such action cannot legally be taken by them; and

l.  Attempted to collect on the promissory note under false

pretenses; namely that DITECH was assigned Plaintiff's debt

when in fact they were not.

163.    The conduct described above, and more fully in the body of this

complaint, is in violation of 15 U.S.C. § 1692, et seq and therefore the

Plaintiff is entitled to any and all damages, rights, and remedies

provided therein.

## XII.  FIFTH  CAUSE OF ACTION – VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200, ET SEQ. [As against DITECH and GREEN TREE ]

164.    Plaintiff hereby incorporates by reference each and every one of

the preceding paragraphs as if the same were fully set forth herein.

165.    Defendant's conduct, for the reasons stated herein and fully

described above, is in direct violation of Cal. Penal Code Section

532(f)(a)(4), because, as shown and fully described above, the

Defendants have caused to be recorded multiple notices with the County

Recorder which the Defendants knew and know contain deliberate

misstatements, misrepresentations, and omissions.

ADVERSARY PROCEEDING COMPLAINT

166.    Defendant's conduct, for the reasons stated herein and fully

described above, is in direct violation of Cal. Penal Code Section 518,

because, as shown and fully described above, the Defendants have

threatened and continue to threaten the Plaintiff with threats to

dispossess the Plaintiff of possession and ownership of his property, and

threaten to foreclose and evict the Plaintiff from his property, and

threaten the Plaintiff with forcible eviction from his property though the

use of a public officer (Sheriff) from the Plaintiff's home unless the

Plaintiff pays moneys Demanded by the Defendants.

167.    California Business and Professions Code section 17200, et seq.,

prohibits acts of unfair competition, which means and includes any

unlawful, unfair or fraudulent business act and conduct that is likely to

deceive and is fraudulent in nature.

168. As more fully described above, Defendants' acts and practices are

unlawful, unfair, and fraudulent, and constitute an attempt to obtain

through threats and extortion, the Plaintiff's property (money and home)

under threat of imminent loss of their home  This conduct is ongoing

and continues to date.

169. Defendants engage in unfair, unlawful[11], extortive and fraudulent

business practices with respect to mortgage loan servicing and related

matters by, among other things:

      m. Executing and recording false and misleading documents; [12]

      n.  Executing and recording documents without the legal

         authority to do so;

---

[11] "Unlawful" acts or practices are those forbidden by law, be it civil or

criminal, federal, state or municipal, statutory, or court-made. *Saunders v.

Superior Court*, 27 Cal. 4th 832 (1994); *Hewlett v. Squaw Valley*, 54 Cal. 4th

499 (1997).

[12] Defendants recording of two assignments, a Notice of Default, and a Notice

of Trustee Sale violates Cal. Penal Code section 532(f)(a)(4), which prohibits

any person from filing a document related to a mortgage loan transaction with

the county recorder's office which that person knows to contain a deliberate

misstatement, misrepresentation, or omission. The facts demonstrate that

Defendants have committed mortgage fraud by filing said documents with the

county recorder's office with knowledge that the document contained a

deliberate misstatement, misrepresentation, or omission of fact.

ADVERSARY PROCEEDING COMPLAINT

o.  Failing to disclose the principal for which documents were being executed and recorded in violation of Cal. Civ. Code section 1095;

p.  Demanding and accepting payments for debts that were no standing to collect exists;

q.  Violating the Security First Rule;

r.  Reporting payments as late to credit bureaus without the legal right or authority to do so;

s.  Acting as a beneficiary without the legal authority to do so;

t.  Scheduling  a "Trustee's Sale" of the subject property without the legal authority to do so; and

u.  Using threats to forcibly evict the Plaintiff from his home absent voluntary payments of moneys the Defendant is not entitled to demand.

v.  Conducting a "trustee's sale" of the subject property.

w.  Other deceptive and coercive practices as described herein.

170. As more fully described above, Defendants' acts and practices are likely to deceive members of the public.

171. As more fully described above, Defendants acts and practices are unfair and the harm cause by the conduct outweighs any benefits that the conduct may have.

172. Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein Defendants violate several laws including Cal. Bus. and Prof. Code section 17200, et seq. and must be required to disgorge all profits related to their unfair, unlawful, and deceptive business practices.

173. Plaintiff alleges that Defendant's misconduct, as alleged herein, gave Defendants an unfair competitive advantage over their competitors. The scheme implemented by Defendants is designed to defraud California consumers and enrich the Defendants.

174. Plaintiff alleges that Defendant's misconduct is likely to deceive the public based on the Defendant's filings in the records of the County.

175. The foregoing acts and practices have caused substantial harm to California consumers, including Plaintiff.

176. By reason of the foregoing, Defendants have been unjustly enriched and should be required to make restitution to Plaintiff and other California consumers who have been harmed, and/or be enjoined from

continuing in such practices pursuant to Cal. Bus. Code sections 17203

and 17204.

177. As a direct and proximate result of the actions of Defendants, and each

of them, stated above, Plaintiff has been injured in that a cloud has been

placed upon title to Plaintiff's Property and Defendants have failed to

remove this cloud from Plaintiff's title.

178. Plaintiff is entitled to an order compelling DITECH and any other

defendants claiming an interest in and to the Property to take any and all

actions necessary to remove the cloud they have placed upon their title

and an order enjoining such Defendants from taking such action in the

future.


## XIII.   SIXTH CAUSE OF ACTION – ACCOUNTING
### [As against DITECH and GREEN TREE ]

179. Plaintiff hereby incorporates by reference each and every one of the

preceding paragraphs as if the same were fully set forth herein.

180. DITECH has held itself out to be Plaintiff's creditor and mortgage

servicer. As a result of this purported relationship with Plaintiff, said

Defendants have a fiduciary duty to Plaintiff to properly account for payments made by Plaintiff.[13]

181. As a result of the aforementioned fraudulent conduct, Plaintiff paid DITECH and other agents and employees of DITECH, mortgage payments for a period of many years. However, for the reasons stated herein, none of the money was actually owed to DITECH. For that reason, these moneys are due to be returned to the Plaintiff in full.

182. The exact amount of money due from Defendants to Plaintiff is unknown to Plaintiff and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions.

---

[13] To state of cause of action for accounting, a plaintiff must allege the existence of a fiduciary relationship, or accounts so complicated that an ordinary legal action demanding a fixed sum is impractical. 5 Witkin, Cal. Proc. 4th (1997) Pleading, section 775, p. 233. The elements for a claim for accounting are: 1) fiduciary relationship or other circumstances appropriate to the remedy; and 2) a balance due from the defendant to Plaintiff that can only be ascertained by an accounting. See Witkin, California Procedure, Pleadings, section 776, p 233 (4th ed.).

Plaintiff is informed, believes, and thereon alleges that the amount due

to them exceeds $75,000.00.

183. The Plaintiff specifically seek an accounting, and tie the cause of

action to the First, Second, Third, Fourth and Fifth cause of action

herein, as these causes of action will create a balance due from the

Defendant's to the Plaintiff.


XIV. **SEVENTH CAUSE OF ACTION – CANCELLATION OF INSTRUMENTS**
**[As against DITECH; BRECKENRIDGE and GREEN TREE ]**

184. Plaintiff hereby incorporate by reference each and every one of the

preceding paragraphs as if the same were fully set forth herein.

185. There is in existence certain written instruments which purport to be:

a. "Deed of Trust" recorded as Document No. 2005-0159780

b. "Deed" a/k/a "Deed Upon Foreclousure" recorded as Document

No. 2019-0014732

c. "Deed of Trust" recorded as Document No. 2019-30756

d. On or about January 15, 2019, "Trustee's Deed upon Sale" in

favor of Defendant BRECKENRIDGE was recorded with the San

Diego County Recorder's Office.

186. As set forth in detail above, the Defendant DITECH has and had no right, title, or interest in the relevant Note and Deed of Trust such that it could enjoy any of the benefits provided under said contracts, including declaring a default, or selling the property.

187. The preparation and recording of the referenced documents was performed at the direction and control and at the request of Defendant DITECH.

188. Since Defendant DITECH has and had no right to undertake the benefits conferred under the Note and Deed of Trust, the execution and recording of the document identified above was without legitimacy, force or effect.

189. If the above documents are not cancelled the Plaintiff faces the loss of title and possession of his property, additional pecuniary damages, and emotional distress.

190. Defendant DITECH knew at the time it executed or caused to be executed the above document that it was not entitled to execute same, and that it had no legitimate, demonstrable, or actual right title or interest in the relevant Note and Deed of Trust, but executed and recorded the documents nonetheless. Defendant DITECH created,

executed, and caused to be recorded the documents with the intent to

defraud the Plaintiff.

191. The Plaintiff therefore requests the Defendant be ordered to deliver the

subject documents to the Clerk for cancellation.

### XV.   <u>EIGHTH CAUSE OF ACTION - QUIET TITLE</u>
### [As against BRECKENRIDGE and GREEN TREE ]

192. Plaintiff hereby incorporates by reference each and every one of the

preceding paragraphs as if the same were fully set forth herein.

193. The Plaintiff claims an interest in the subject property as owner.

194. The Defendant BRECKENRIDGE claims to be the owner of the

property pursuant to a "trustee's sale" and issuance of a "trustee's deed

upon sale" by or on behalf of Defendant DITECH either directly or by

way of their agents on or about January 10, 2019 .

195. The claim asserted by BRECKENRIDGE although valid on its face, is

invalid and unenforceable because the interest they purport to have

acquired was acquired by way of a fraudulent transfer as more fully set

forth above, by or on behalf of Defendant DITECH who claimed to

have a right to conduct such a sale on January 10, 2019 in spite of

having no right to do so.

196. The acts or actions by Defendant DITECH and their agents, as set forth above, were in violation of Federal Law given the true interests in the Note and Deed of Trust belong to the successor of the actual lender, and NOT the Defendant DITECH.

197. Since Defendants DITECH had no right title or interest to convey to Defendant BRECKENRIDGE, no interest was created in the Plaintiff's property by operation of the purported "trustee's sale" of January 10, 2019.

198. The Plaintiff respectfully requests the Court determine that the Defendant's claims of an interest in the property are void as of January 10, 2019and that Defendant BRECKENRIDGE has no interest whatsoever in the Plaintiff's property created by the "trustee's sale".

## XVI.  <u>NINTH CAUSE OF ACTION - TO SET ASIDE TRUSTEE'S SALE</u>

**[Against DITECH, BRECKENRIDGE and all Doe Defendants]**

110.    Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

111.    The Foreclosing Defendant,  DITECH never had the legal authority to foreclose, i.e., the authority to exercise the power of sale as an assignee of the Note and Deed of Trust, because the Foreclosing

Defendants' interest was never obtained by the original Lender or a legitimate successor or assigned, and because any claimed interest was never acknowledged and recorded in violation of Civil Code § 2932.5, resulting in the non-judicial foreclosure sale being void ab initio.

112.     Moreover, the Foreclosing Defendant, DITECH never had the legal authority to foreclose because the instrument (Deed of Trust), which permitted foreclosure if the borrower was in default, is void as it was never assigned and/or transferred to the Foreclosing Defendants from the original lender.  Therefore, the Deed of Trust could not provide a basis for a foreclosure, and the non-judicial foreclosure is void ab initio.

113.     Accordingly, Plaintiff hereby requests an order of this Court that the Trustee's Sale was irregular in that it was legally void and conducted without any right or privilege by the Foreclosing Defendants.

**WHEREFORE,** Plaintiff prays as follows:

199. For compensatory, special and general damages in an amount according to proof at trial, but not less than $650,000, against Defendants DITECH, Green Tree inclusive; For reimbursement of

ADVERSARY PROCEEDING COMPLAINT

checks from Ditech totaling $15,400 that are not negotiable because of

the closure of accounts by Ditech and;

200. For punitive and exemplary damages in an amount to be determined

by the Court against all Defendants DITECH and Green Tree inclusive;

201. For an order compelling Defendants DITECH, BRECKENRIDGE and

Green Tree inclusive to remove any instrument which does not or could

be construed as constituting a cloud upon Plaintiff's title to the

Property, including any purported Assignment of Deed of Trust, and

other document filed with the County Recorder relative to the subject

property;

202. For an order finding that Defendants DITECH, BRECKENRIDGE and

Green Tree inclusive have no legally cognizable rights as to Plaintiff,

the Property, Plaintiff's Promissory Note, Plaintiff's Deed of trust or

any other matter based on contract or any of the documents prepared by

Defendants DITECH and Green Tree inclusive, tendered to and

executed by Plaintiff;

203. For the Court to issue an order restraining Defendants DITECH,

BRECKENRIDGE and Green Tree inclusive, their agents, or

employees from continuing or initiating any action against the Property

ADVERSARY PROCEEDING COMPLAINT

and enjoining Defendants, their agents or employees from doing so

during the pendency of this matter;

204. For an order compelling Defendants DITECH and Green Tree

inclusive to disgorge all amounts wrongfully taken by them from

Plaintiff and returning same to Plaintiff's interest thereon at the

statutory rate from the date the funds were first received from Plaintiff;

205. For a Declaration of Rights and Obligations as between the Plaintiff

and all Defendants with respect to the Note, Mortgage and Deed of

Trust and the subject property that is the subject of this complaint;

206. For an order setting aside the "Trustee's Sale" undertaken herein by

the Defendant DITECH.

207. For costs of suit incurred herein;

208. For reasonable attorney fees incurred, and

209. For such other and further relief as the Court may deem proper.

Date: May 13, 2019

         /s/ JOSEPH LA COSTA


Joseph C La Costa

Attorney for Plaintiff,

Michael McChristian


ADVERSARY PROCEEDING COMPLAINT

Page **66** of **67**

## <u>CERTIFICATION</u>

By signature below, counsel certifies that the foregoing document was prepared in TIME NEW ROMAN, 14-point font, in compliance with Local Rules regarding FONT Size.

Date: May 13, 2019

/s/ JOSEPH LA COSTA

_____

Joseph La Costa
Attorney for Plaintiff and Creditor,
Michael McChristian

ADVERSARY PROCEEDING COMPLAINT