# EXHIBIT 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| RICKY BARRION, SR. and | ) | |
| BRENDA G. BARRION, | ) | CASE NO. 13-52304-AEC |
| | ) | |
| DEBTORS | ) | |

------------------------------------------------------------------------------

| | | |
|---|---|---|
| DANIEL M. MCDERMOTT, | ) | |
| UNITED STATES TRUSTEE, | ) | |
| | ) | |
| MOVANT | ) | |
| | ) | Contested Matter |
| V. | ) | |
| | ) | |
| DITECH FINANCIAL LLC | ) | |
| f/k/a GREEN TREE SERVICING LLC, | ) | |
| | ) | |
| RESPONDENT | ) | |

### MOTION FOR ESCROW ACCOUNTING AND WAIVER OF ESCROW SHORTAGE

COMES NOW, Daniel M. McDermott, United States Trustee for Region 21 ("United States Trustee"), and respectfully moves the Court to enter an order requiring Ditech Financial LLC f/k/a Green Tree Servicing LLC ("Ditech") to submit post-petition escrow account reconciliation statements and permanently waive any escrow shortage from the Debtors' escrow account by funding Debtors' escrow account with the amount of the shortage, and states as follows:

### JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. §1334. This is a core proceeding. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1409. The U.S. Trustee is

charged with certain administrative responsibilities pursuant to 28 U.S.C. § 586(a)(3), including the supervision of cases pending under Chapter 13.

Pursuant to § 586(a)(3)(G), the U.S. Trustee monitors the progress of cases under title 11 and takes action as appropriate.   Congress has expressly given the United States Trustee standing under section 307 of the Bankruptcy Code to raise and be heard on any issue under title 11, except that the United States Trustee may not file a reorganization plan under chapter 11.   See 11 U.S.C. § 307.

## FACTS

1.      Ricky Barrion, Sr. and Brenda G. Barrion (hereinafter "Debtors") filed a voluntary petition under chapter 13 of the United States Bankruptcy Code on August 30, 2013.

2.      Debtors scheduled an interest in real property located at 871 Captain Kell Drive, Macon, Georgia 31204.

3.      Debtors' chapter 13 plan as confirmed reflected a prepetition mortgage arrearage to be cured through the plan.

4.      On April 16, 2018, the Chapter 13 Trustee filed her Notice of Final Cure Payment regarding claim number 8 [Doc. No. 34].

5.      On May 7, 2018, Ditech filed its Response to Notice of Final Cure Payment [Doc. No. 36] indicating the Debtors have paid all post-petition amounts due to be paid to Ditech.

6.      A review of the Claims Register reflects that no escrow-related Notices of Mortgage Payment Change were filed with the Court in 2014, 2015, 2016, and 2017.   It appeared Debtors' monthly escrow payment has been fixed at $216.33 since September of 2013.

7.      On May 17, 2018, the United States Trustee made an inquiry to Counsel for Ditech regarding the missing payment changes and the accuracy of their response to the final cure.   In response to the U.S. Trustee's inquiry, Ditech reviewed the Debtors' escrow account and determined that the Debtors' escrow account has a shortage in the amount of $169.11.

8.      Ditech, by and through its Counsel, has agreed to permanently waive the $169.11 shortage from the Debtors' escrow account by funding the Debtors' escrow account with said amount (see annual escrow account disclosure statement attached hereto as Exhibit A).   Ditech also agrees to ensure that its system of record reflects the account adjustments as contemplated herein.   Further, Ditech has agreed to file Notices of Mortgage Payment Change as required by Fed. R. Bankr. P. 3002.1 for any further changes in the Debtors' ongoing monthly mortgage payments.

WHEREFORE, the United States Trustee respectfully asks this Honorable Court to enter an order setting forth the terms of the agreement set out above.

Date:   May 29, 2018.

Respectfully submitted,

DANIEL M. MCDERMOTT
UNITED STATES TRUSTEE,
REGION 21

Office of the U.S. Trustee
440 Martin Luther King Jr. Blvd, Ste. 302
Macon, GA 31201         (478) 752-3545
robert.g.fenimore@usdoj.gov

By: /s/ Robert G. Fenimore
    Robert G. Fenimore
    Trial Attorney
    GA Bar No. 205202

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing pleading titled **MOTION FOR ESCROW ACCOUNTING AND WAIVER OF ESCROW SHORTAGE** either through the Court's electronic filing system or by placing a true and correct copy with the United States Postal Service with adequate postage affixed to assure first class delivery and addressed to:

Ditech Financial, LLC
c/o CT Corporation System, Registered Agent
289 S. Culver Street
Lawrenceville, GA 30046-4805

Green Tree Servicing, LLC
P.O. Box 6154
Rapid City, SD 57709-6154

Ricky Barrion, Sr.
Brenda G. Barrion
871 Captain Kell Drive
Macon, GA 31204

J. Roger Davis
Attorney for Debtors
Robert O. House, PC
433 Cherry Street, Suite A
Macon, GA 31201

Camille Hope
Office of the Chapter 13 Trustee
P.O. Box 954
Macon, GA   31202

And by email to Jared S. Roach, Counsel for Ditech Financial, LLC: JRoach@ReedSmith.com

This 29th day of May, 2018.

<table>
<tr><td></td><td>/s/ Robert G. Fenimore</td></tr>
<tr><td>Office of the U.S. Trustee</td><td>Robert G. Fenimore</td></tr>
<tr><td>440 Martin Luther King Jr. Blvd, Ste. 302</td><td>Trial Attorney</td></tr>
<tr><td>Macon, GA   31201</td><td>GA Bar No. 205202</td></tr>
<tr><td>(478) 752-3545</td><td>robert.g.fenimore@usdoj.gov</td></tr>
</table>

4

**SO ORDERED.**

**SIGNED this 30 day of May, 2018.**





**Austin E. Carter**
**United States Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| RICKY BARRION, SR. and | ) | |
| BRENDA G. BARRION, | ) | CASE NO. 13-52304-AEC |
| | ) | |
| DEBTORS | ) | |

-------------------------------------------------------------------------

| | | |
|---|---|---|
| DANIEL M. MCDERMOTT, | ) | |
| UNITED STATES TRUSTEE, | ) | |
| | ) | |
| MOVANT | ) | |
| | ) | Contested Matter |
| V. | ) | |
| | ) | |
| DITECH FINANCIAL LLC | ) | |
| f/k/a GREEN TREE SERVICING LLC, | ) | |
| | ) | |
| RESPONDENT | ) | |

**CONSENT ORDER RESOLVING UNITED STATES TRUSTEE'S MOTION FOR
ESCROW ACCOUNTING AND WAIVER OF ESCROW SHORTAGE**

The United States Trustee filed a Motion for Escrow Accounting and Waiver of Escrow

Shortage.   The parties, through counsel, have agreed as follows:

## **FACTS**

1.      Ricky Barrion, Sr. and Brenda G. Barrion (hereinafter "Debtors") filed a

voluntary petition under chapter 13 of the United States Bankruptcy Code on August 30, 2013.

2.      Debtors scheduled an interest in real property located at 871 Captain Kell Drive,

Macon, Georgia 31204.

3.      Debtors' chapter 13 plan as confirmed reflected a prepetition mortgage arrearage

to be cured through the plan.

4.      On April 16, 2018, the Chapter 13 Trustee filed her Notice of Final Cure Payment

regarding claim number 8 [Doc. No. 34].

5.      On May 7, 2018, Ditech filed its Response to Notice of Final Cure Payment [Doc.

No. 36] indicating the Debtors are current on all post-petition amounts due to Ditech.

6.      A review of the Claims Register reflects that no escrow-related Notices of

Mortgage Payment Change were filed with the Court in the case.  It appeared Debtors' monthly

escrow payment has been fixed at $216.33 since September of 2013.

7.      On May 17, 2018, the United States Trustee made an inquiry to Counsel for

Ditech regarding the missing payment changes and the accuracy of their response to the final

cure.  In response to the U.S. Trustee's inquiry, Ditech reviewed the Debtors' escrow account

and determined that the Debtors' escrow account has a shortage in the amount of $169.11.

8.      Ditech, by and through its Counsel, has agreed to permanently waive the $169.11

shortage from the Debtors' escrow account by funding the Debtors' escrow account with said

amount (see annual escrow account disclosure statement attached hereto as Exhibit A).  Ditech

also agrees to ensure that its system of record reflects the account adjustments as contemplated

herein.  Further, Ditech has agreed to file Notices of Mortgage Payment Change as required by

Fed. R. Bankr. P. 3002.1 for any further changes in the Debtors' ongoing monthly mortgage

payments.

      **ORDERED,** that Ditech will permanently waive the $169.11 shortage from the Debtors'

escrow account by funding the Debtors' escrow account with said amount (see annual escrow

account disclosure statement attached hereto as Exhibit A).  Further,

      **ORDERED**, that Ditech will file Notices of Mortgage Payment Change as required by

Fed. R. Bankr. P. 3002.1 for any further changes in the Debtors' ongoing monthly mortgage

payments.  Further,

      **ORDERED**, that Ditech will ensure that its system of record reflects the account

adjustments contemplated herein.

<u>**END OF DOCUMENT**</u>

Consented to by:

/s/Jared S. Roach
Jared S. Roach
Attorney for Ditech Financial, LLC
PA Bar No. 307541
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
(412) 288-3131
jroach@reedsmith.com


Consented to and Order prepared by:

/s/Robert G. Fenimore
Robert G. Fenimore
Trial Attorney
GA Bar No. 205202
Office of the United States Trustee
440 Martin Luther King Jr. Blvd.
Suite 302
Macon, GA  31201
(478) 752-3545
robert.g.fenimore@usdoj.gov

# ditech®

PO Box 6172
Rapid City , SD 57709-6172

| | |
|---|---|
| **Statement Date:** | 05/23/2018 |
| **Your Loan Account Number:** | |

**Questions?**

View your detailed, up-to-date escrow transactions
online at myaccount.ditech.com

Call Customer Service at **1-800-643-0202**
   Mon. – Fri. 7 am to 8 pm CST
   Sat. 7 am to 1 pm CST

RICKY BARRION
871 CAPTAIN KELL DR
MACON GA  31204-1438

---

| SECTION 1 | WHY AM I RECEIVING THIS STATEMENT? |
|---|---|

We review your escrow account every year to ensure it is properly funded, based on your upcoming taxes and/or insurance premiums. This statement provides details of any changes in your escrow account and resulting changes to your mortgage payment.

Our review shows your escrow account has no shortage or surplus at this time.  You have just enough funds to cover your minimum escrow balance.  See Section 4 for details.

**Effective July 01, 2018, your monthly mortgage payment will be $861.54.**

---

| SECTION 2 | WHY ARE MY PAYMENTS CHANGING? |
|---|---|

Changes to monthly escrow amounts are common. They're often caused by a change in your taxes and/or insurance premiums. So even if you have a surplus in your account, your monthly escrow payment could increase. This table shows how your escrow and mortgage payments are changing.

| | Current Payment | Changes | New Payment |
|---|---|---|---|
| Due Date | 05/01/2018 | | 07/01/2018 |
| Principal and Interest | $627.31 | | $627.31 |
| Escrow Payment | $216.33 | ↑ $17.90 | $234.23 |
| **TOTAL** | **$843.64** | **· $17.90** | **$861.54** |

We use anticipated payments from your escrow account to determine your monthly escrow payment:

| | |
|---|---|
| Combined Property Insurance | $1,159.00 |
| Combined Taxes | $1,651.80 |
| **TOTAL OUTGOING PAYMENTS** | $2,810.80  ÷ 12 months = **$234.23 Monthly Escrow** |

---

| SECTION 3 | WHAT DO I NEED TO DO? |
|---|---|

- If you use automatic bill pay, please contact your bank to adjust your mortgage payment amount, due July 01, 2018.

---

| SECTION 4 | HOW IS MY ESCROW SHORTAGE OR SURPLUS CALCULATED? |
|---|---|

Every year, we analyze what you'll need to pay in taxes and/or insurance premiums. We then calculate the amount you'll likely need in escrow to pay these bills. To determine if you have enough funds in your escrow account, we use this formula:

| | | |
|---|---|---|
| Lowest Projected Balance | $468.46 | (in gray below) |
| - Minimum Escrow Balance | $468.46 | (in gray below) |
| **Shortage Amount** | **$0.00** | |

Your escrow account has a minimum balance, as allowed by federal laws, state laws, or your mortgage contract. Your minimum balance includes up to two months of escrow payments to cover increases to your property taxes and/or homeowners insurance. Your minimum escrow balance is $468.46.

This table shows expected payments in and out of your account over the next 12 months:

| Date | What We Expect You to Pay to Escrow | What We Expect to Pay Out | Payment Description | Expected Balance | Balance Needed in Your Account |
|---|---|---|---|---|---|
| **Beginning Balance** | | | | $1,639.65 | $1,639.65 |
| 07/18 | $234.23 | | | $1,873.88 | $1,873.88 |
| 08/18 | $234.23 | | | $2,108.11 | $2,108.11 |
| 09/18 | $234.23 | $825.90 | CNTY TX PARC | $1,516.44 | $1,516.44 |
| 10/18 | $234.23 | $825.90 | CNTY TX PARC | $924.77 | $924.77 |
| 11/18 | $234.23 | | | $1,159.00 | $1,159.00 |
| 12/18 | $234.23 | | | $1,393.23 | $1,393.23 |
| 01/19 | $234.23 | $1,159.00 | HAZARD INS | $468.46 | $468.46 |
| 02/19 | $234.23 | | | $702.69 | $702.69 |
| 03/19 | $234.23 | | | $936.92 | $936.92 |
| 04/19 | $234.23 | | | $1,171.15 | $1,171.15 |
| 05/19 | $234.23 | | | $1,405.38 | $1,405.38 |
| 06/19 | $234.23 | | | $1,639.61 | $1,639.61 |
| **Ending Balance** | | | | $1,639.61 | $1,639.61 |
| **TOTAL** | **$2,810.76** | **$2,810.80** | | | |

| SECTION 5 | WHAT HAPPENED SINCE MY LAST ESCROW REVIEW? |
|---|---|

In this table, you can see payments you made into your escrow account and outgoing payments we made from your escrow account. If we projected to pay out a significantly different amount, you'll see the difference noted in gray. These differences may impact whether you have enough funds in your escrow account.

| Date | What You Actually Paid to Escrow | What We Expected You to Pay to Escrow | What We Actually Paid Out | What We Expected to Pay Out | Payment Description | Actual Balance | Expected Balance from Last Review |
|---|---|---|---|---|---|---|---|
| Beginning Balance | | | | | | $746.73 | $0.00 |
| 04/16 | $648.99 | | | | | $1,395.72 | $0.00 |
| 05/16 | $216.33 | | | | | $1,612.05 | $0.00 |
| 06/16 | $216.33 | | | | | $1,828.38 | $0.00 |
| 09/16 | | | $762.66 | | CNTY TX PARC | $1,065.72 | $0.00 |
| 11/16 | $865.32 | | $762.65 | | CNTY TX PARC | $1,168.39 | $0.00 |
| 12/16 | $432.66 | | | | | $1,601.05 | $0.00 |
| 01/17 | $216.33 | | $1,079.00 | | HAZARD INS | $738.38 | $0.00 |
| 02/17 | $216.33 | | | | | $954.71 | $0.00 |
| 03/17 | $216.33 | | | | | $1,171.04 | $0.00 |
| 05/17 | $432.66 | | | | | $1,603.70 | $0.00 |
| 06/17 | -$432.66 | | | | | $1,171.04 | $0.00 |
| 07/17 | $216.33 | | | | | $1,387.37 | $0.00 |
| 08/17 | $216.33 | | | | | $1,603.70 | $0.00 |
| 09/17 | $216.33 | | $825.90 | | CNTY TX PARC | $994.13 | $0.00 |
| 10/17 | $216.33 | | $825.90 | | CNTY TX PARC | $384.56 | $0.00 |
| 11/17 | $216.33 | | | | | $600.89 | $0.00 |
| 01/18 | $216.33 | | $1,159.00 | | HAZARD INS | -$341.78 | $0.00 |
| 03/18 | $432.66 | | | | | $90.88 | $0.00 |
| 04/18 | $432.66 | | | | | $523.54 | $0.00 |
| 05/18 | $899.78 E | | | | | $1,423.32 | $0.00 |
| 06/18 | $216.33 E | | | | | $1,639.65 | $0.00 |
| Ending Balance | | | | | | $1,639.65 | $0.00 |
| TOTAL | $6,308.03 | $0.00 | $5,415.11 | $0.00 | | | |

E = estimated future payment

| SECTION 6 | ADDITIONAL MESSAGES |
|---|---|

To the extent that you currently are protected by the automatic stay or have received a discharge from personal liability under the Bankruptcy Code, this Annual Escrow Account Disclosure Statement is for informational and/or compliance purposes only and is not a demand for payment from you personally or an attempt to impose personal liability. However, we retain the ability to enforce our lien on the property securing our loan, subject to applicable provisions of the Bankruptcy Code and other applicable law.

TIMOTHY S. LAFFREDI (SBN WI 1055133)
Assistant United States Trustee
MARGARET H. MCGEE (SBN 142722)
Trial Attorney
United States Department of Justice
Office of the U.S. Trustee
450 Golden Gate Ave., Rm 05-0153
San Francisco, CA 94102
Telephone: (415) 252-2080
Facsimile: (415) 705-3379
Email: maggie.mcgee@usdoj.gov

Attorneys for TRACY HOPE DAVIS
United States Trustee for Region 17

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

In re

GERARDO IBARRA GUZMAN and
MARTHA IBARRA,

Debtors.

Case No. 13-31893 HLB

Chapter 13

Date:  June 20, 2018
Time:  10:10 a.m.
Ctrm:  Hon. Hannah L. Blumenstiel
       450 Golden Gate Avenue
       16th Floor, Courtroom 19
       San Francisco, CA  94102

**UNITED STATES TRUSTEE'S MOTION FOR ESCROW ACCOUNT
RECONCILIATION STATEMENT, INCLUDING WAIVER OF UNNOTICED
ESCROW CHARGES OR REFUND OF ESCROW SURPLUS**

Tracy Hope Davis, United States Trustee for Region 17, by and through her undersigned

counsel, hereby submits this Motion for Escrow Account Reconciliation Statement, Including

Waiver of Unnoticed Escrow Charges or Refund of Escrow Surplus (the "Motion").

I.    **JURISDICTION AND VENUE**

This Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1334, 151 and 157.

Venue in this district and of this proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

UST'S MOTION FOR ESCROW ACCOUNT RECONCILIATION STATEMENT        1

The United States Trustee has standing to appear and be heard on this issue pursuant to 11 U.S.C. § 307.

The United States Trustee is charged with certain administrative responsibilities pursuant to 28 U.S.C. § 586 (a) (3), which include the supervision of the administration of cases pending under Chapter 13.  28 U.S.C. § 586(a)(3)(G) requires the United States Trustee to monitor the progress of cases under title 11 and take such actions as the United States Trustee deems appropriate to prevent undue delay in such progress

## II.    FACTUAL BACKGROUND

### A.  General Background

1.      Debtors filed a voluntary petition for relief under chapter 13 on August 21, 2013. ECF No. 1.

2.      The Second Amended Chapter 13 Plan (the "Plan") filed on March 18, 2014 treated Debtors' principal residence located at 1323 Madera Avenue, Menlo Park, California (the "Property") under 11 U.S.C. § 1322(b)(5). ECF No. 35.  The Plan was confirmed on April 21, 2014. ECF No. 39.

3.      Pursuant to the plan, Green Tree Servicing LLC[1] (hereinafter referred to as "Ditech"), the holder of the first deed of trust on the Property, was owed $4,977.05 in arrears and was to be paid $104 per month beginning in September 2014.  ECF No. 35.

4.      The monthly mortgage payment owed to Ditech includes an escrow amount to cover taxes and insurance.  ECF Claim 6-1 at 4.

5.      Under the terms of the confirmed plan, Debtors made direct regular monthly payments to Ditech.  ECF No. 35

### B.  Notices of Mortgage Payment Change

6.      During pendency of the case, Ditech never filed a Notices of Mortgage Payment Change ("PCN").  See ECF Claims Register.

---

[1] Green Tree Servicing LLC merged with Ditech Mortgage Corporation and DT Holdings LLC on August 31, 2015 and became Ditech Financial LLC ("Ditech").  See State of Delaware Certificate of Merger filed 8/13/2015 at corp.delaware.gov/authver.shtml.  Ditech filed a Request for Notice on November 28, 2106.  ECF No. 43

UST'S MOTION FOR ESCROW ACCOUNT RECONCILIATION STATEMENT      2

7.    PCNs should have been filed for the years 2014 through 2017 for changes to the escrow portion of the payment because the taxes paid through escrow changed during each of these years.  To Decl.

8.    The failure to file PCNs for four years, calls into question whether the Debtors escrow account balance is accurate.  To Decl.

### C. Request for Reconciliation

9.    Before closing the Bankruptcy Case, the United States Trustee asks this Court to require Ditech to conduct a full and complete escrow account review from 2013 to the present and file an Escrow Account Reconciliation Statement to identify the accurate status of the escrow account for these Debtors.

10.    If there are any unnoticed post-petition escrow charges, then, pursuant to Fed. R. Bankr. P. 3002.1(i), the Court should order Ditech to waive those unnoticed charges or to refund any surplus to the Debtor or chapter 13 trustee as appropriate.

11.    The Debtors should have sufficient funding in their escrow account after exiting bankruptcy consistent with their right to cure under 11 U.S.C. § 1322(d) (5).

## III.    DISCUSSION

### A. Motion For Escrow Account Reconciliation Statement

The United States Trustee is imposed with certain administrative responsibilities pursuant to 28 U.S.C. § 586(a)(3), which include the supervision of the administration of cases pending under Title 11. "The United States trustee may raise and may appear and be heard on any issue in any case or proceeding under this title . . . ."  11 U.S.C. § 307.  Courts have interpreted § 307 to apply broadly to the United States trustee.  *In re Joseph,* 208 B.R. 55 (Bankr. 9th Cir. 1997); *In re Alvarado,* 496 B.R. 200, 214 (Bankr. N.D. Ca. 2013) citing, *In re* Donovan, 215 F.3d 929 (9th Cir. 2000); In *re Subpoena Duces Tecum*, 461 B.R. 823, 828 (C.D. Ca. 2011).  "United States Trustees . . . will serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena." *In re Subpoena Duces Tecum*, *supra* at 828, quoting H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 1, 88 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6049.  Congress has stated that trustees are responsible for "protecting the public interest and ensuring that

bankruptcy cases are conducted according to law." *In re Revco D.S., Inc.,* 898 F.2d 498, 500 (6th Cir. 1990) (quoting H.Rep. 595 at 109, reprinted in 1978 U.S.Code Cong. & Admin. News at 6070).

### B.    Need for Escrow Account Reconciliation Statement

A chapter 13 debtor has the right to propose a plan providing "for the curing of any default within a reasonable time and maintaining payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b) (5). F.R.B.P. 3002.1(b) requires that,

> The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount including any change that results from an interest rate or escrow account adjustment, no later than 21 days before a payment in the new amount is due.

The Advisory Committee Notes to the implementation of Rule 3002.1 states that\

> This rule is new. It is added to aid in the implementation of § 1322(b)(5), which permits a chapter 13 debtor to cure a default and maintain payments on a home mortgage over the course of the debtor's plan.  It applies regardless of whether the trustee or the debtor is the disbursing agent for postpetition mortgage payments.

In order to be able to fulfill the obligations of § 1322(b)(5), a debtor and the trustee have to be informed of the exact amount needed to cure any prepetition arrearage, *see* Rule 3001(c)(2), and the amount of the post-petition payment obligation.  If the latter amount changes over time, due to the adjustment of the interest rate, escrow account adjustments, or the assessment of fees, expenses, or other charges, notice of any change in payment amount needs to be conveyed to the debtor and trustee.  Timely notice of these changes will permit the debtor or trustee to challenge the validity of any such charges, if appropriate, and to adjust post-petition mortgage payments to cover any undisputed, claimed adjustment.  Compliance with the notice provision of the rule should also eliminate any concern on the part of the holder of the claim that informing a debtor of a change in post-petition payment obligations might violate automatic stay.

UST'S MOTION FOR ESCROW ACCOUNT RECONCILIATION STATEMENT       4

As the Advisory Committee Notes make clear, the purpose of the Notice under Rule 3002.1(b) provides debtors with the ability to cure all prepetition arrears and to keep current on post-petition mortgage payments during the duration of the chapter 13 bankruptcy case.  The Rule also balances those rights of the debtor with the interests of the holder of the claim to receive post-petition funds needed to keep the escrow account current without violating the automatic stay.

Ditech has never filed a PCN in this case. The failure to file Notices of Mortgage Payment Change for four years, calls into question whether the escrow account balance is current.  The post-petition amounts owed to a mortgage servicer are addressed by Rule 3002.1 and relate to the original mortgage claim.  Filing the Response to Notice of Final Cure Payment under Rule 3002.1(g) "shall be filed as a supplement to the holder's proof of claim and is not subject to rule 3001(f)."[2]  "A proof of claim must be signed by a claim holder under penalty of perjury. Fed. R.Bankr.P. 3001(a) and Bankruptcy Official Form 10. Thus, again, the Rule 3002.1(g) response—as supplement to a proof of claim—must also be signed under penalty of perjury."  *In re Nieves,* 499 B.R. 222, 225 (Bankr. D. P.R. 2013). The Court, the Debtors, and the chapter 13 trustee, have an interest in ensuring that the post-petition payments remitted by the Debtors have been properly applied to the Debtors' account.  A disclosure of all receipts and disbursements provides the Court, the Debtors, and the chapter 13 trustee with the ability to ensure that the escrow account activity since 2013 is accurate. The United States Trustee asks the Court to order Ditech to conduct a full and complete escrow analysis from 2013 to present and prepare and file with the Court an Escrow Account Reconciliation Statement to identify all post-petition escrow payments to and disbursements from the escrow account of the Debtors prior to the closing of the bankruptcy case.

### C.  Waiver of Unnoticed Escrow Charges or Refund of Escrow Surplus

"Bankruptcy Rule 3002.1 (the "Rule") was promulgated in 2011, in response to a growing problem that had arisen in Chapter 13 cases throughout the country: debtors who had successfully completed their Chapter 13 plans, and paid all of their mortgage arrears and post-

---

[2] "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." F.R.B.P. 3001(f).

petition installment payments, would find themselves in renewed foreclosure proceedings due to undisclosed and unpaid post-petition charges and fees—a result clearly at odds with a debtor's right to a fresh start." *In re Gravel,* 556 B.R. 561, 568 (Bankr. D.Vt. 2016).

"To honor the promise and spirit of chapter 13 administrations for the compliant debtor . . . the remedy for a mortgage creditor's failure to provide appropriate notice is disallowance of the implicated deficiencies. Notice is vital to an effective rehabilitation, because it offers the opportunity to object and have a day in court, which ultimately allows a case to continue moving forward without ending in a surprise at the end of the case. It is from the twin pillars of a fresh start and the orderly administration of the estate to *all* creditors' benefit that the applicable notice requirements hang. Moreover, notice cannot function without a reasonable expectation that the rules will be followed by all. A mortgagee cannot spring upon the debtor a reticent debt that lingers like a haunting refrain." *In re Tavares,* 547 B.R. 204, 221 (Bankr. S.D. TX 2016).

"[C]ourts have determined that the proper remedy for a failure to abide by the required notice of escrow account analysis under RESPA is essentially a death knell: deeming a waiver of any right to recover any deficiencies encompassed by the failed period." *Tavares,* 547 B.R. at 220-21. [*citing* 2012 WL 4738651, at *3; *see e.g., In re Johnson,* 384 B.R. 763 (Bankr. E. D. Mich. 2008); *In re Dominique,* 368 B.R. 913 (Bankr. S. D. Fla. 2007)]

Rule 3002.1(i) provides:

If the holder of a claim fails to provide any information as required by subdivision (b), (c), or (g) of this rule, the court may, after notice and hearing, take either or both of the following actions:
    (1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
    (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

The failure of a mortgage servicer to file Notices of Mortgage Payment Change deprives a Debtor of the ability to timely challenge any inappropriate escrow charges and the right to cure any post-petition deficiencies under § 1322(b)(5). It is appropriate for Ditech to waive the collection of any unnoticed post-petition escrow charges that resulted from Ditech's failure to

conduct an escrow analyses and file Notices of Mortgage Payment Change for four years.  It is also appropriate to ensure that the escrow account is sufficiently funded so that no shortage is assessed against the Debtors resulting from the mortgage servicer's failure to file Notices of Mortgage Payment Change that would further harm the Debtors after the case closes. Where the creditor fails to notice post-petition claims, they waive the right to collect post-petition taxes and insurance and may even be subject to disgorgement back to the Trustee for any overpayment. *Tavares,* 547 B.R. at 220-21

Any surplus that might result from the failure to file the Notices of Mortgage Payment Change should be disclosed and either refunded to the Debtors or the chapter 13 trustee should be allowed to assess whether such surpluses are property of the estate and subject to administration by the chapter 13 trustee.

This Court has the authority and power under 11 U.S.C. § 105(a) to fashion orders providing appropriate relief to carry out the provisions of the Bankruptcy Code.  This Court also has the authority and power under 11 U.S.C. § 105(a) to take any action necessary to enforce or implement the Rules of Bankruptcy Procedure and to prevent abuses of process.

WHEREFORE, the United States Trustee respectfully asks this Court to require Ditech to:

a.)    Conduct a full and complete escrow analysis from 2013 to present and file an Escrow Account Reconciliation Statement with the Court;

b.)    Waive any unnoticed post-petition escrow charges and escrow shortages;

c.)    Refund any escrow surplus payable to the Debtors or chapter 13 trustee as appropriate;

1    d.)    Sufficiently fund the Debtor's escrow account to accurately reflect the chapter 13

2    trustee remittances and proper disbursements to ensure that the Debtors have cured their

3    mortgage account under 11 U.S.C. § 1322(b)(5); and

4    e.)    Comply with any other relief under Fed. R. Bankr. P. 3002.1(i) or otherwise as

5    the Court deems appropriate.

6

7

8    Dated: April 26, 2018                    TRACY HOPE DAVIS
                                              UNITED STATES TRUSTEE
9

10                                            /s/ Margaret H. McGee
                                              Trial Attorney
11                                            Office of the United States Trustee

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UST'S MOTION FOR ESCROW ACCOUNT RECONCILIATION STATEMENT         8

TIMOTHY S. LAFFREDI (SBN WI 1055133)
Assistant United States Trustee
MARGARET H. MCGEE (SBN 142722)
Trial Attorney
United States Department of Justice
Office of the U.S. Trustee
450 Golden Gate Ave., Rm 05-0153
San Francisco, CA 94102
Telephone: (415) 252-2080
Facsimile: (415) 705-3379
Email: maggie.mcgee@usdoj.gov

Attorneys for TRACY HOPE DAVIS
United States Trustee for Region 17

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 13-31893 HLB |
| GERARDO IBARRA GUZMAN and MARTHA IBARRA | Chapter 13 |
| Debtors. | |

**DECLARATION OF PARALEGAL SPECIALIST ANKEY TO IN SUPPORT OF UNITED STATES TRUSTEE'S MOTION FOR ESCROW ACCOUNT RECONCILIATION STATEMENT, INCLUDING WAIVER OF UNNOTICED ESCROW CHARGES OR REFUND OF ESCROW SURPLUS**

I, ANKEY TO, declare as follows:

1.      I am employed as a Paralegal Specialist in the Office of the United States Trustee, Region 17, San Francisco Division, 450 Golden Gate Avenue, Suite 5-0153, San Francisco, California 94102.

2.      I make this declaration based on my own personal knowledge of the facts of this matter and based upon my review of the official court docket for this case.  If called upon to do so, I could and would testify as to these facts.

DECL. - UST'S MOTION FOR ESCROW ACCOUNT RECONCILIATION STATEMENT     1

3.       I am informed and believed that Green Tree Servicing, LLC has changed its name to Ditech Financial, LLC.

4.       I reviewed the secured tax records on the website maintained by County of San Mateo Treasurer-Tax Collector for 1323 Madera Avenue, Menlo Park, CA, for 2015, 2016 and 2017.  Based on my review of the tax bills, the property taxes increased from year to year.

5.       PCNs should have been filed for the years 2013 through 2016 for changes to the escrow portion of the payment because the taxes paid through escrow changed during each of these years.

6.       The failure to file PCNs for four years, calls into question whether the Debtors escrow account balance is accurate.

I declare under penalty of perjury that the foregoing is true and correct this 26th day of April, 2018.

 /s/ Ankey To
ANKEY TO
Declarant

DECL. - UST'S MOTION FOR ESCROW ACCOUNT RECONCILIATION STATEMENT      2

Entered on Docket
October 11, 2018
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1　TIMOTHY S. LAFFREDI (SBN WI 1055133)
　Assistant United States Trustee
　JASON BLUMBERG (SBN NY 4055257)
2　Trial Attorney
　United States Department of Justice
3　Office of the U.S. Trustee
　Phillip J. Burton Federal Building
4　450 Golden Gate Ave. 5th Fl., #05-0153
　San Francisco, CA 94102
5　Telephone: (415) 252-2080
　Facsimile: (415) 705-3379
6　Email: jason.blumberg@usdoj.gov

7　Attorneys for Tracy Hope Davis
　United States Trustee for Region 17

**Signed and Filed: October 11, 2018**

**HANNAH L. BLUMENSTIEL**
**U.S. Bankruptcy Judge**

8　　　**UNITED STATES BANKRUPTCY COURT**
9　　　**NORTHERN DISTRICT OF CALIFORNIA**

10　In re

11　GERARDO IBARRA GUZMAN and
　MARTHA IBARRA,

12

13　　　　　　　Debtors.

14

15

Case No. 13-31893 HLB

Chapter 13

Date:　October 17, 2018
Time:　11:10 a.m.
Ctrm:　Hon. Hannah L. Blumenstiel
　　　450 Golden Gate Avenue
　　　16th Floor, Courtroom 19
　　　San Francisco, CA 94102

16　**ORDER ON UNITED STATES TRUSTEE'S MOTION FOR ESCROW ACCOUNT**
17　**RECONCILIATION STATEMENT, INCLUDING WAIVER OF UNNOTICED**
　　**ESCROW CHARGES OR REFUND OF ESCROW SURPLUS**

18　　　　Tracy Hope Davis, the United States Trustee for Region 17 (the "UST"), by and through

19　her counsel, and Ditech Financial, LLC ("Ditech"), by and through its counsel, having entered

20　into a stipulation (ECF No. 51) resolving the UST's motion for an escrow account reconciliation

21　statement, including waiver of unnoticed escrow charges or refund of escrow surplus (ECF No.

22　44):

23　　　　**IT IS HEREBY ORDERED:**

24　　　　1.　　Ditech has permanently waived the escrow shortage present in the Debtors'

25　account, which was in the amount of $206.37, and said sum shall never be sought from the

Debtors including after discharge;

1

2.     In accordance with the new Escrow Account Statement dated August 8, 2018 (which was attached to the Notice of Mortgage Payment Change filed on August 10, 2018), the escrow balance on the Debtors' account is $4,532.16 as of that date, the Debtors' monthly escrow payment effective September 1, 2018 in the amount of $601.03 is equal to the base amount (estimated taxes and insurance disbursements of $4,158.38 and $3,054.00, respectively, divided by twelve), and the Debtors' total monthly payment amount effective September 1, 2018, is $2,642.61 ($2,041.58 for principal and interest and $601.03 for escrow);

3.     Ditech shall sufficiently fund the Debtors' escrow account to (i) accurately reflect Chapter 13 trustee remittances and (ii) to ensure that Debtors have cured their mortgage account under 11 U.S.C. §1322(b)(5) upon completion of the Debtors' Second Amended Chapter 13 Plan (ECF No. 35) (the "Plan"); and

4.     Ditech shall comply with Fed. R. Bankr. P. 3002.1 for the remainder of the term of the Debtors' Plan.

***END OF ORDER***

2

## COURT SERVICE LIST

Ditech Financial LLC
c/o ALDRIDGE PITE, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933

Green Tree Servicing LLC
c/o Malcolm Cisneros, ALC
2112 Business Center Drive, 2nd Floor
Irvine, CA 92612

PROBER & RAPHAEL, A LAW CORPORATION
20750 Ventura Boulevard, Suite 100
Woodland Hills, California 91364

3

# Notice Recipients

District/Off: 0971–3      User: bgapuz      Date Created: 10/11/2018

Case: 13–31893      Form ID: pdfeoc      Total: 3

**Recipients of Notice of Electronic Filing:**

aty      Dean R. Prober      ecfnca@ecf.courtdrive.com

TOTAL: 1

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

cr      Green Tree Servicing LLC      Malcolm Cisneros      2112 Business Center Drive      Second Floor      Irvine, CA 92612

cr      Ditech Financial LLC      Aldridge Pite, LLP      4375 Jutland Drive, Suite 200      PO Box 17933      San Diego, CA 92117

TOTAL: 2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| MINNIE LANE, | ) | CASE NO. 14-70541-JTL |
| | ) | |
| DEBTOR | ) | |

------------------------------------------------------------------------

| | | |
|---|---|---|
| DANIEL M. MCDERMOTT, | ) | |
| UNITED STATES TRUSTEE, | ) | |
| | ) | |
| MOVANT | ) | |
| | ) | **Contested Matter** |
| V. | ) | |
| | ) | |
| DITECH FINANCIAL LLC | ) | |
| f/k/a GREEN TREE SERVICING LLC, | ) | |
| | ) | |
| RESPONDENT | ) | |

_____

### MOTION FOR ESCROW ACCOUNTING AND WAIVER OF ESCROW SHORTAGE

COMES NOW, Daniel M. McDermott, United States Trustee for Region 21 ("United States Trustee"), and respectfully moves the Court to enter an order requiring Ditech Financial LLC f/k/a Green Tree Servicing LLC ("Ditech") to submit post-petition escrow account reconciliation statements and permanently waive any escrow shortage from the Debtor's escrow account by funding Debtor's escrow account with the amount of the shortage, and states as follows:

### JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. §1334. This is a core proceeding.   Venue lies

in this District pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1409.   The U.S. Trustee is charged with certain administrative responsibilities pursuant to 28 U.S.C. § 586(a)(3), including the supervision of cases pending under Chapter 13.

Pursuant to § 586(a)(3)(G), the U.S. Trustee monitors the progress of cases under title 11 and takes action as appropriate.   Congress has expressly given the United States Trustee standing under section 307 of the Bankruptcy Code to raise and be heard on any issue under title 11, except that the United States Trustee may not file a reorganization plan under chapter 11.   See 11 U.S.C. § 307.

## **FACTS**

1.    Minnie Lane (hereinafter "Debtor") filed a voluntary petition under chapter 13 of the United States Bankruptcy Code on May 1, 2014.

2.    Debtor scheduled an interest in real property located at 36 Clinton Circle, Tifton, Georgia 31794.

3.    Debtor's chapter 13 plan as confirmed reflected a prepetition mortgage arrearage to be cured through the plan.

4.    On November 8, 2018, the Chapter 13 Trustee filed her Notice of Final Cure Payment regarding claim number 7 [Doc. No. 32].

5.    On November 29, 2018, Ditech filed its Response to Notice of Final Cure Payment [Doc. No. 33] indicating the Debtor has paid all post-petition amounts due to be paid to Ditech.

6.    A review of the Claims Register reflects that no escrow-related Notices of Mortgage Payment Change were filed with the Court in 2015, 2016, 2017 and 2018.   It appeared Debtor's monthly escrow payment has been fixed at $170.38 since August of 2014.

7.      The failure to file Notices of Mortgage Payment Change for 2015, 2016, 2017 and 2018, calls into question whether the Debtor's escrow account is properly funded.

8.      The U.S. Trustee asks this Honorable Court to require Ditech to conduct a full and complete escrow analysis from 2014 to the present and file an escrow account reconciliation statement to identify the accurate status of the escrow account for this Debtor.

9.      If there are any unnoticed post-petition escrow charges, then, pursuant to Fed. R. Bankr. P. 3002.1(i), the Court should order Ditech to waive those unnoticed charges or to refund any surplus to the Debtor or chapter 13 trustee as appropriate.

WHEREFORE, the United States Trustee respectfully asks this Honorable Court to compel Ditech to:

a.)     Conduct a full and complete escrow review from 2014 to present and file an Escrow Account Reconciliation Statement with the Court;

b.)     Waive any unnoticed post-petition escrow charges;

c.)     Refund any escrow surplus payable to the Debtor or chapter 13 trustee, as appropriate;

d.)     Sufficiently fund the Debtor's escrow account to accurately reflect the chapter 13 trustee remittances and proper disbursements to ensure that the Debtor has cured her mortgage account under 11 U.S.C. § 1322(b)(5); and

3

e.)       Comply with any other relief under Fed. R. Bankr. P. 3002.1(i) or otherwise as the

Court deems appropriate.

Date:   December 20, 2018.

<div style="margin-left:40%">

Respectfully submitted,

DANIEL M. MCDERMOTT
UNITED STATES TRUSTEE,
REGION 21

</div>

Office of the U.S. Trustee            By: /s/ Robert G. Fenimore
440 Martin Luther King Jr. Blvd, Ste. 302      Robert G. Fenimore
Macon, GA 31201      (478) 752-3545      Trial Attorney
robert.g.fenimore@usdoj.gov           GA Bar No. 205202

4

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing pleading titled **MOTION FOR ESCROW ACCOUNTING AND WAIVER OF ESCROW SHORTAGE** either through the Court's electronic filing system or by placing a true and correct copy with the United States Postal Service with adequate postage affixed to assure first class delivery and addressed to:

Ditech Financial, LLC
c/o CT Corporation System, Registered Agent
289 S. Culver Street
Lawrenceville, GA 30046-4805

Green Tree Servicing, LLC
P.O. Box 6154
Rapid City, SD 57709-6154

Minnie Lane
36 Clinton Circle
Tifton, GA 31794

Franklin D. Hayes
Attorney for Debtor
P.O. Box 2377
Douglas, GA 31533

Kristin Hurst
Office of the Chapter 13 Trustee
P.O. Box 1907
Columbus, GA 31902

And by email to Jared S. Roach, Counsel for Ditech Financial, LLC: JRoach@ReedSmith.com

This 20th day of December, 2018.

|  |  |
|---|---|
|  | /s/ Robert G. Fenimore |
| Office of the U.S. Trustee | Robert G. Fenimore |
| 440 Martin Luther King Jr. Blvd, Ste. 302 | Trial Attorney |
| Macon, GA 31201 | GA Bar No. 205202 |
| (478) 752-3545 | robert.g.fenimore@usdoj.gov |

5

**SO ORDERED.**

**SIGNED this 14 day of January, 2019.**



_____
John T. Laney, III
**United States Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| MINNIE LANE, | ) | CASE NO. 14-70541-JTL |
| | ) | |
|     DEBTOR | ) | |

-------------------------------------------------------------------------

| | | |
|---|---|---|
| DANIEL M. MCDERMOTT, | ) | |
| UNITED STATES TRUSTEE, | ) | |
| | ) | |
|     MOVANT | ) | |
| | ) | **Contested Matter** |
| V. | ) | |
| | ) | |
| DITECH FINANCIAL LLC | ) | |
| f/k/a GREEN TREE SERVICING LLC, | ) | |
| | ) | |
|     RESPONDENT | ) | |

_____

**CONSENT ORDER RESOLVING UNITED STATES TRUSTEE'S MOTION FOR
ESCROW ACCOUNTING AND WAIVER OF ESCROW SHORTAGE**

The United States Trustee filed a Motion for Escrow Accounting and Waiver of Escrow

Shortage. The parties, through counsel, have agreed as follows:

## FACTS

1. Minnie Lane (hereinafter "Debtor") filed a voluntary petition under chapter 13 of

the United States Bankruptcy Code on May 1, 2014.

2. Debtor scheduled an interest in real property located at 36 Clinton Circle, Tifton,

Georgia 31794.

3. Debtor's chapter 13 plan as confirmed reflected a prepetition mortgage arrearage

to be cured through the plan.

4. On November 8, 2018, the Chapter 13 Trustee filed her Notice of Final Cure

Payment regarding claim number 7 [Doc. No. 32].

5. On November 29, 2018, Ditech filed its Response to Notice of Final Cure

Payment [Doc. No. 33] indicating the Debtor has paid all post-petition amounts due to be paid to

Ditech.

6. Ditech has reviewed the Debtor's escrow account and determined that the

Debtor's escrow account currently has a shortage in the amount of $784.75.

7. Ditech, by and through its Counsel, has agreed to permanently waive the $784.75

shortage from the Debtor's escrow account by funding the Debtor's escrow account with said

amount (see annual escrow account disclosure statement attached hereto as Exhibit A). Ditech

also agrees to ensure that its system of record reflects the account adjustments as contemplated

herein. Further, Ditech has agreed to file Notices of Mortgage Payment Change as required by

Fed. R. Bankr. P. 3002.1 for any further changes in the Debtor's ongoing monthly mortgage

payments. It is, therefore,

**ORDERED,** that Ditech will permanently waive the $784.75 shortage from the Debtor's

escrow account by funding the Debtor's escrow account with said amount. Further,

**ORDERED**, that Ditech will file Notices of Mortgage Payment Change as required by

Fed. R. Bankr. P. 3002.1 for any further changes in the Debtor's ongoing monthly mortgage

payments. Further,

**ORDERED**, that Ditech will ensure that its system of record reflects the account

adjustments contemplated herein.

### END OF DOCUMENT

Consented to by:

/s/Jared S. Roach
Jared S. Roach
Attorney for Ditech Financial, LLC
PA Bar No. 307541
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
(412) 288-3131
jroach@reedsmith.com

Consented to and Order prepared by:

/s/Robert G. Fenimore
Robert G. Fenimore
Trial Attorney
GA Bar No. 205202
Office of the United States Trustee
440 Martin Luther King Jr. Blvd.
Suite 302
Macon, GA  31201
(478) 752-3545
robert.g.fenimore@usdoj.gov



MINNIE R LANE
36 CLINT CIR
TIFTON GA  31794-2157

**Statement Date:** 01/07/2019
**Your Loan Account Number:** ████████

**Questions?**

View your detailed, up-to-date escrow transactions online at **myaccount.ditech.com**

Call Customer Service at **1-800-643-0202**
 M–F 8am to 12am ET
 Saturday 8am to 5pm ET
 Sunday 1pm to 5pm ET

---

**SECTION 1    WHY AM I RECEIVING THIS STATEMENT?**

We review your escrow account every year to ensure it is properly funded, based on your upcoming taxes and/or insurance premiums.  This statement provides details of any changes in your escrow account and resulting changes to your mortgage payment.

Our review shows your escrow account has no shortage or surplus at this time.  You have just enough funds to cover your minimum escrow balance.  See Section 4 for details.

**Effective February 01, 2019, your monthly mortgage payment will be $545.85.**

---

**SECTION 2    WHY ARE MY PAYMENTS CHANGING?**

Changes to monthly escrow amounts are common. They're often caused by a change in your taxes and/or insurance premiums. So even if you have a surplus in your account, your monthly escrow payment could increase. This table shows how your escrow and mortgage payments are changing.

|  | Current Payment | Changes | New Payment |
|---|---|---|---|
| Due Date | 02/01/2019 |  | 02/01/2019 |
| Principal and Interest | $360.31 |  | $360.31 |
| Escrow Payment | $170.38 | h $15.16 | $185.54 |
| **TOTAL** | **$530.69** | **h $15.16** | **$545.85** |

We use anticipated payments from your escrow account to determine your monthly escrow payment:

| | |
|---|---|
| Combined Property Insurance | $1,430.00 |
| Combined Taxes | $796.41 |
| **TOTAL OUTGOING PAYMENTS** | **$2,226.41** ÷ 12 months = **$185.54 Monthly Escrow** |

---

**SECTION 3    WHAT DO I NEED TO DO?**

• If you use automatic bill pay, please contact your bank to adjust your mortgage payment amount, due February 01, 2019.

---

**SECTION 4    HOW IS MY ESCROW SHORTAGE OR SURPLUS CALCULATED?**

Every year, we analyze what you'll need to pay in taxes and/or insurance premiums. We then calculate the amount you'll likely need in escrow to pay these bills. To determine if you have enough funds in your escrow account, we use this formula:

| | | |
|---|---|---|
| Lowest Projected Balance | $371.08 | (in gray below) |
| - Minimum Escrow Balance | $371.08 | (in gray below) |
| **Shortage Amount** | **$0.00** | |

Your escrow account has a minimum balance, as allowed by federal laws, state laws, or your mortgage contract. Your minimum balance includes up to two months of escrow payments to cover increases to your property taxes and/or homeowners insurance. Your minimum escrow balance is $371.08.

This table shows expected payments in and out of your account over the next 12 months:

| Date | What We Expect You to Pay to Escrow | What We Expect to Pay Out | Payment Description | Expected Balance | Balance Needed in Your Account |
|---|---|---|---|---|---|
| **Beginning Balance** | | | | $927.63 | $927.63 |
| 02/19 | $185.54 | | | $1,113.17 | $1,113.17 |
| 03/19 | $185.54 | | | $1,298.71 | $1,298.71 |
| 04/19 | $185.54 | | | $1,484.25 | $1,484.25 |
| 05/19 | $185.54 | | | $1,669.79 | $1,669.79 |
| 06/19 | $185.54 | | | $1,855.33 | $1,855.33 |
| 07/19 | $185.54 | $1,430.00 | HAZARD INS | $610.87 | $610.87 |
| 08/19 | $185.54 | | | $796.41 | $796.41 |
| 09/19 | $185.54 | | | $981.95 | $981.95 |
| 10/19 | $185.54 | $796.41 | CNTY TX PARC | $371.08 | $371.08 |
| 11/19 | $185.54 | | | $556.62 | $556.62 |
| 12/19 | $185.54 | | | $742.16 | $742.16 |
| 01/20 | $185.54 | | | $927.70 | $927.70 |
| **Ending Balance** | | | | $927.70 | $927.70 |
| **TOTAL** | **$2,226.48** | **$2,226.41** | | | |

| SECTION 5 | WHAT HAPPENED SINCE MY LAST ESCROW REVIEW? |
|---|---|

In this table, you can see payments you made into your escrow account and outgoing payments we made from your escrow account. If we projected to pay out a significantly different amount, you'll see the difference noted in gray. These differences may impact whether you have enough funds in your escrow account.

| Date | What You Actually Paid to Escrow | What We Expected You to Pay to Escrow | What We Actually Paid Out | What We Expected to Pay Out | Payment Description | Actual Balance | Expected Balance from Last Review |
|---|---|---|---|---|---|---|---|
| **Beginning Balance** | | | | | | $915.31 | $0.00 |
| 05/16 | $340.76 | | | | | $1,256.07 | $0.00 |
| 07/16 | $340.76 | | $1,486.00 | | HAZARD INS | $110.83 | $0.00 |
| 08/16 | $170.38 | | | | | $281.21 | $0.00 |
| 09/16 | $340.76 | | | | | $621.97 | $0.00 |
| 10/16 | $170.38 | | $822.07 | | CNTY TX PARC | -$29.72 | $0.00 |
| 11/16 | $170.38 | | | | | $140.66 | $0.00 |
| 01/17 | $340.76 | | | | | $481.42 | $0.00 |
| 03/17 | $340.76 | | | | | $822.18 | $0.00 |
| 04/17 | $170.38 | | | | | $992.56 | $0.00 |
| 05/17 | $170.38 | | | | | $1,162.94 | $0.00 |
| 06/17 | | | $1,380.00 | | HAZARD INS | -$217.06 | $0.00 |
| 07/17 | $170.38 | | | | | -$46.68 | $0.00 |
| 08/17 | $340.76 | | | | | $294.08 | $0.00 |
| 09/17 | $170.38 | | | | | $464.46 | $0.00 |
| 10/17 | | | $821.25 | | CNTY TX PARC | -$356.79 | $0.00 |
| 11/17 | $340.76 | | | | | -$16.03 | $0.00 |
| 01/18 | $340.76 | | | | | $324.73 | $0.00 |
| 03/18 | $170.38 | | | | | $495.11 | $0.00 |
| 04/18 | $340.76 | | | | | $835.87 | $0.00 |
| 05/18 | $170.38 | | | | | $1,006.25 | $0.00 |
| 06/18 | $170.38 | | $1,430.00 | | HAZARD INS | -$253.37 | $0.00 |
| 07/18 | $170.38 | | | | | -$82.99 | $0.00 |
| 08/18 | $170.38 | | | | | $87.39 | $0.00 |
| 09/18 | $170.38 | | | | | $257.77 | $0.00 |
| 10/18 | $170.38 | | | | | $428.15 | $0.00 |
| 11/18 | $340.76 | | $796.41 | | CNTY TX PARC | -$27.50 | $0.00 |
| 12/18 | $955.13 | | | | | $927.63 | $0.00 |
| **Ending Balance** | | | | | | **$927.63** | **$0.00** |
| **TOTAL** | **$6,748.05** | **$0.00** | **$6,735.73** | **$0.00** | | | |

E = estimated future payment

| SECTION 6 | ADDITIONAL MESSAGES |
|---|---|

**To the extent that you currently are protected by the automatic stay or have received a discharge from personal liability under the Bankruptcy Code, this Annual Escrow Account Disclosure Statement is for informational and/or compliance purposes only and is not a demand for payment from you personally or an attempt to impose personal liability. However, we retain the ability to enforce our lien on the property securing our loan, subject to applicable provisions of the Bankruptcy Code and other applicable law.**

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Hector Alfonso Rojas | ) | Case No. 15-20461-MER |
| SSN: xxx-xx-5918, | ) | Chapter 13 |
| Mayra Yolanda Diaz | ) | |
| SSN: xxx-xx-5006, | ) | |
| | ) | |
| Debtors. | ) | |

## UNITED STATES TRUSTEE'S MOTION FOR RELIEF RELATING TO DITECH FINANCIAL LLC'S FAILURE TO COMPLY WITH FEDERAL RULE OF BANKRUPTCY PROCEDURE 3002.1

The United States Trustee for Region 19, Patrick S. Layng (the "UST"), files this motion for relief relating to Ditech Financial LLC's failure to comply with Fed. R. Bankr. P. 3002.1.  In support of this motion, the UST states as follows:

## PARTIES AND BACKGROUND

1.     Hector Alfonso Rojas and Mayra Yolanda Diaz (the "Debtors") filed a joint, voluntary petition for relief under Chapter 13 of Title 11, United States Code, on September 17, 2015 (the "Petition Date").

2.     Adam M. Goodman, Esq., is the Successor Chapter 13 Trustee in this case.

3.     Pursuant to 28 U.S.C. § 586(a)(3), the UST is charged with administrative oversight of the bankruptcy system in this District.  Such oversight is part of the UST's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.*), 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.),* 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as a "watchdog").

4.     The UST has standing to be heard on the issues raised by this motion pursuant to 11 U.S.C. §§ 307 and 502(a) and 28 U.S.C. § 586(a)(5).  This motion is filed pursuant to Fed. R. Bankr. P. 3002.1(i) and 11 U.S.C. § 502(a).

5.     On November 30, 2015, Ditech Financial LLC f/k/a Green Tree Servicing LLC ("Ditech") filed Proof of Claim No. 2-1 in this case (the "Proof of Claim"), asserting a claim in the amount of $186,541.04 secured by a deed of trust on real property of the Debtors located at 9500 Elizabeth Court, Thornton, CO 80229, which the UST understands to be the Debtors' principal residence.

6.     The Debtors' Amended Chapter 13 Plan provided that the Debtors would make regular postposition payments on the loan in the monthly amount of $1,365. *See* Amended Plan, Docket No. 16 at Part V(A).   The Court confirmed the Amended Plan by Order entered December 2, 2015.

According to Ditech, the Debtors' monthly escrow payment was $257.70 as of the Petition Date.

7.     The Debtors' mortgage loan is an escrowed loan, such that Ditech collects monthly contributions towards an escrow account to be used towards property tax and insurance expenses.

8.      Ditech submitted with its Proof of Claim an Annual Escrow Account Disclosure Statement dated September 28, 2015, which provided that the Debtors' monthly principal and interest payment was $1,106.90, and their monthly escrow payment was $257.70, for a total monthly payment of $1,364.59, which is in line with the monthly mortgage payment contained in the Debtors' Amended Plan.

9.     Also in the Annual Escrow Account Disclosure Statement, Ditech stated that the Debtors had been paying $257.70 towards escrow since April 2015 and projected that the Debtors' monthly payment to escrow would remain at $257.70 at least through November 2016.

Ditech recently purported to increase the escrow payment from $257.69 to $407.03.

10.     Fed. R. Bankr. P. 3002.1(b) requires the holder of a secured claim on a debtor's principal residence to file and serve "a notice of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment, no later than 21 days before a payment in the new amount is due."

11.     On October 9, 2017, Ditech filed a Notice of Mortgage Payment Change (the "Notice of Payment Change") to give notice that the Debtors' monthly escrow payment would increase from the "current escrow payment" of $257.69 to the "new escrow payment" of $407.03 beginning on November 1, 2017.  Ditech has not filed any other notices of payment changes in this case.

12.     The "current escrow payment" of $257.69 in the notice is in line with the Debtors' escrow payment as of the Petition Date per the Proof of Claim.  Therefore, on the face of the Notice of Payment Change, it would seem that Ditech properly gave notice of the first change in the escrow payment since the Petition Date.

### MISSING AND/OR INACCURATE NOTICES OF PAYMENT CHANGE

The Notice of Payment Change is erroneous.

13.     If there has been a change to a debtor's escrow account payment, Official Form 410S1 instructs the mortgage creditor to attach to a notice of payment change a copy of an escrow account statement and describe the basis for the change.  Ditech attached to the Notice of Payment Change an Escrow Account Disclosure Statement dated September 20, 2017 (the "Escrow Disclosure").

14.     Given the information in the Escrow Disclosure, the Notice of Payment Change is erroneous.  Specifically, Section 2 of the Escrow Disclosure provides that the Debtors' "current" escrow payment is $464.97, not $257.69 as represented in the Notice of Payment Change.

<u>Ditech failed to give notice of one or more prior payment changes.</u>

15.     While the Escrow Disclosure provides that the Debtors' current escrow payment is $464.97, Section 5 provides that the Debtors have actually been paying $464.97 to escrow each month since at least December 2016.[1]  The Escrow Disclosure does not provide historical information prior to December 2016.

16.     Therefore, sometime after the Petition Date, the Debtors' monthly escrow payment was increased from $257.70 (the amount in the Proof of Claim) one or more times to the current payment of $464.97, and the Debtors have actually been paying $464.97 per month since December 2016, and possibly earlier.  Ditech did not give notice of such payment increases in this case as required by Fed. R. Bankr. P. 3002.1(b), and is only now giving notice of a decrease in the payment from $464.97, albeit with an erroneous notice.

## REQUEST FOR RELIEF

17.     Pursuant to Fed. R. Bankr. P. 3002.1(i), if a creditor fails to provide a notice of payment change required by Fed. R. Bankr. P. 3002.1(b), the Court "may, after notice and hearing, take either or both of the following actions: (1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure."

18.     Ditech failed to comply with Fed. R. Bank. P. 3002.1(b) when it failed to file timely and/or accurate payment change notices concerning one or more changes to the monthly escrow payment.  Accordingly, the Court should take the following actions:

     a.  require Ditech to credit the Debtors' escrow account in an appropriate amount for any increases above $257.70 in the monthly escrow payment following September 2015 for which Ditech did not file a notice of an increase in the escrow payment;

     b.  require Ditech to refund to the Debtors an amount equal to each monthly escrow payment made by the Debtors since the Petition Date to the extent the payment exceeded $257.70;

     c.  require Ditech to waive any escrow shortage resulting from Ditech's failure to file notices of payment change; and

     d.  prohibit Ditech from seeking such shortages in the future.

---

[1] Oddly, also according to Section 5, during that same time period, Ditech "expected" the Debtors to pay $348.31 per month into escrow (even though the "current" payment according to Section 2 is $464.97 – the amount that the Debtors have been paying).

WHEREFORE, the UST requests that the Court enter an order granting the relief requested above.  The UST requests such further relief as the Court deems just and proper.

Dated: October 25, 2017                                Respectfully submitted,

PATRICK S. LAYNG
UNITED STATES TRUSTEE

/s/ Alan K. Motes
By: Alan K. Motes #33997
Trial Attorney for the U.S. Trustee
1961 Stout Street, Suite 12-200
Denver, CO  80294
(303) 312-7999 telephone
(303) 312-7259 fax
Alan.Motes@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below a copy of the **UNITED STATES TRUSTEE'S MOTION FOR RELIEF RELATING TO DITECH FINANCIAL LLC'S FAILURE TO COMPLY WITH FEDERAL RULE OF BANKRUPTCY PROCEDURE 3002.1**, notice and proposed order was served by deposit in the United States Mail, postage prepaid, to the following parties:

Dated: October 25, 2017

Ditech Financial LLC f/k/a Green Tree Servicing LLC
PO Box 44265
Jacksonville, FL 32231-4265

Susan J. Hendrick
Klatt Augustine Sayer Treinen & Rastede PC
9745 E. Hampden Ave., Ste. 400
Denver, CO 80231

Evan S. Singer
Padgett Law Group
6267 Old Water Oak Road, Suite 203
Tallahassee FL, 32312

Ditech Financial LLC
c/o The Corporation Company
7700 E Arapahoe Rd Ste 220
Centennial, CO 80112-1268

Hector Alfonso Rojas
9500 Elizabeth Court
Thornton, CO 80229

Mayra Yolanda Diaz
9500 Elizabeth Court
Thornton, CO 80229

Daniel T. Birney
1777 S. Bellaire St.
Ste. 419
Denver, CO 80222

George Dimitrov
1777 S. Bellaire St.,
Ste. 419
Denver, CO 80222

Adam M Goodman
Chapter 13 Trustee
P.O. Box 1169
Denver, CO 80201

/s/ Alan K. Motes
Office of the United States Trustee

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Hector Alfonso Rojas | ) | Case No. 15-20461-MER |
| SSN: xxx-xx-5918, | ) | Chapter 13 |
| Mayra Yolanda Diaz | ) | |
| SSN: xxx-xx-5006, | ) | |
| | ) | |
| Debtors. | ) | |

**ORDER GRANTING UNITED STATES TRUSTEE'S MOTION FOR RELIEF**
**RELATING TO DITECH FINANCIAL LLC'S FAILURE TO COMPLY WITH**
**FEDERAL RULE OF BANKRUPTCY PROCEDURE 3002.1**

This matter having come before the Court on the United States Trustee's Motion for Relief relating to Ditech Financial LLC's Failure to Comply with Federal Rule of Bankruptcy Procedure 3002.1, proper notice having been given, no responses having been filed, and good cause being shown therefor;

IT IS ORDERED that the Motion is granted.

IT IS FURTHER ORDERED that:

a. Ditech Financial LLC ("Ditech") shall credit the above-referenced Debtors' escrow account in an appropriate amount for any increases above $257.70 in the monthly escrow payment following September 2015 for which Ditech did not file a notice of an increase in the escrow payment;

b. Ditech shall refund to the Debtors an amount equal to each monthly escrow payment made by the Debtors since the Petition Date to the extent the payment exceeded $257.70;

c. Ditech shall waive any escrow shortage resulting from Ditech's failure to file notices of payment change; and

d. Ditech shall not seek such shortages in the future.

IT IS FURTHER ORDERED that within 30 days from the date of this Order, Ditech shall deliver documentation to counsel for the Debtors and counsel for the United States Trustee demonstrating that it has complied with items a. through c. above.

Done this _____ day of _____, 2017.


BY THE COURT:


_____
Michael E. Romero, Chief Judge
United States Bankruptcy Court

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Hector Alfonso Rojas | ) | Case No. 15-20461-MER |
| SSN: xxx-xx-5918, | ) | Chapter 13 |
| Mayra Yolanda Diaz | ) | |
| SSN: xxx-xx-5006, | ) | |
| | ) | |
| Debtors. | ) | |

## ORDER GRANTING UNITED STATES TRUSTEE'S MOTION FOR RELIEF RELATING TO DITECH FINANCIAL LLC'S FAILURE TO COMPLY WITH FEDERAL RULE OF BANKRUPTCY PROCEDURE 3002.1

This matter having come before the Court on the United States Trustee's Motion for Relief relating to Ditech Financial LLC's Failure to Comply with Federal Rule of Bankruptcy Procedure 3002.1, proper notice having been given, no responses having been filed, and good cause being shown therefor;

IT IS ORDERED that the Motion is granted.

IT IS FURTHER ORDERED that:

a. Ditech Financial LLC ("Ditech") shall credit the above-referenced Debtors' escrow account in an appropriate amount for any increases above $257.70 in the monthly escrow payment following September 2015 for which Ditech did not file a notice of an increase in the escrow payment;

b. Ditech shall refund to the Debtors an amount equal to each monthly escrow payment made by the Debtors since the Petition Date to the extent the payment exceeded $257.70;

c. Ditech shall waive any escrow shortage resulting from Ditech's failure to file notices of payment change; and

d. Ditech shall not seek such shortages in the future.

IT IS FURTHER ORDERED that within 30 days from the date of this Order, Ditech shall deliver documentation to counsel for the Debtors and counsel for the United States Trustee demonstrating that it has complied with items a. through c. above.


Done this 22nd day of November, 2017.


BY THE COURT:

Michael E. Romero, Chief Judge
United States Bankruptcy Court

# EXHIBIT 2

 

**Press Release**

For more information:

Media contacts:
Michelle Kersch
904.854.5043
michelle.kersch@bkfs.com

Megan Keohane
610.228.0404
megank@buchananpr.com

## Ditech Converts 1.4 Million Customers to Black Knight's LoanSphere MSP Servicing System

- Ditech converted approximately 1.4 million customers to Black Knight's MSP system.
- Conversion is a significant step in Ditech's migration to using MSP as its sole servicing platform.
- As previously announced, Ditech also implemented two Black Knight LoanSphere solutions that integrate with MSP: LoanSphere Bankruptcy and Foreclosure and LoanSphere Invoicing.

JACKSONVILLE, Fla. – April 25, 2016 – Ditech Financial LLC ("Ditech") and Black Knight Financial Services, Inc. (NYSE:BKFS), a leading provider of integrated technology, data and analytics to the mortgage and real estate industries, announced today that Ditech, has converted approximately 1.4 million customers from its servicing and sub-servicing portfolios onto LoanSphere MSP, Black Knight's industry-leading loan servicing system.

MSP offers a single, comprehensive platform to support mortgage loans and home equity products that helps clients manage all servicing processes, including loan boarding, payment processing, escrow administration, default management and more.

"We selected MSP because of its ability to provide Ditech with a robust, industry-standard servicing solution with the scale to support our servicing and sub-servicing business. We anticipate this technology will further enhance our ability to deliver an exceptional customer experience as well as our compliance capabilities, an important consideration in our industry's ever-changing regulatory environment," said David Schneider, president of Ditech. "We believe the conversion was successful, largely due to the tireless efforts of Ditech's knowledgeable and talented staff coupled with Black

Knight's experienced implementation and support teams, who provided strong technical, application and operational assistance throughout the process."

As previously announced, Ditech also implemented LoanSphere Bankruptcy and Foreclosure, an enterprise workflow application to support the bankruptcy and foreclosure processes; and LoanSphere Invoicing, a Web-based solution that streamlines billing and invoicing. Both solutions integrate with MSP.

"Black Knight has a strong track record of successful conversions, and we were pleased to partner with Ditech to support this implementation," said Joe Nackashi, president of Black Knight's Servicing Technologies division. "We look forward to continuing our partnership with Ditech by supporting their operational goals and future successes."

**About Ditech**
Ditech Financial LLC ("Ditech") makes financially sound homeownership possible for millions of customers.  Ditech is a well-known lender and servicer of residential mortgages.  With over 4,500 employees in locations across the U.S., the company provides residential mortgage products through a team of home loan specialists who are easily accessible by phone (1-800-700-9212) and online. Additionally, Ditech's Correspondent Lending Division partners with 600+ financial institutions nationwide.  Ditech is owned by Walter Investment Management Corp. (NYSE: "WAC"), a leading diversified mortgage banking firm.  For more information, please visit www.ditech.com.

**About LoanSphere**
LoanSphere is Black Knight's premier, end-to-end platform of integrated technology, data and analytics supporting the entire mortgage and home equity loan lifecycle – from origination to servicing to default. The platform delivers business process automation, workflow, rules and integrated data throughout the loan process, providing a better user experience, cost savings and support for changing regulatory requirements. By integrating lending functions and data, Black Knight's LoanSphere helps lenders and servicers reduce risk, improve efficiency and drive financial performance.

**About Black Knight Financial Services, Inc.**
Black Knight Financial Services, Inc. (NYSE: BKFS), a Fidelity National Financial (NYSE:FNF) company, is a leading provider of integrated technology, data and analytics solutions that facilitate and automate many of the business processes across the mortgage lifecycle.

Black Knight Financial Services is committed to being a premier business partner that lenders and servicers rely on to achieve their strategic goals, realize greater success and better serve their customers by delivering best-in-class technology, services and insight with a relentless commitment to excellence, innovation, integrity and leadership. For more information on Black Knight Financial Services, please visit www.bkfs.com.

**Disclaimer and Cautionary Note Regarding Forward-Looking Statements**

This press release contains "forward-looking statements" within the meaning of Section 27A of the Securities Act of 1933, as amended and Section 21E of the Securities Exchange Act of 1934, as amended, certain of which are related to Ditech Financial LLC, a wholly owned subsidiary of Walter Investment Management Corp. ("Walter Investment"). Statements that are not historical fact are forward-looking statements. Certain of these forward-looking statements can be identified by the use of words such as "believes," "anticipates," "expects," "intends," "plans," "projects," "estimates," "assumes," "may," "should," "will," "targets," or other similar expressions. Such forward-looking statements involve known and unknown risks, uncertainties and other important factors, and Walter Investment's actual results, performance or achievements could differ materially from future results, performance or achievements expressed in these forward-looking statements. These forward-looking statements are based on Walter Investment's current beliefs, intentions and expectations. These statements are not guarantees or indicative of future performance. Important assumptions and other important factors that could cause Walter Investment's actual results to differ materially from those forward-looking statements include, but are not limited to, those factors, risks and uncertainties described under the caption "Risk Factors" in the Walter Investment Annual Report on Form 10-K for the year ended December 31, 2015 and in Walter Investment's other filings with the SEC.

In addition, this press release may contain statements of Walter Investment's opinion or belief concerning market conditions and similar matters.  In certain instances, those opinions and beliefs could be based upon general observations by members of Walter Investment's management, anecdotal evidence and/or Walter Investment's experience in the conduct of its business, without specific investigation or statistical analyses. Therefore, while such statements reflect Walter Investment's view of the industries and markets in which it is involved, they should not be viewed as reflecting verifiable views and such views may not be shared by all who are involved in those industries or markets.

SOURCE: BLACK KNIGHT FINANCIAL SERVICES, INC. and DITECH FINANCIAL LLC

# # #

# EXHIBIT 3

B1 (Official Form 1) (4/10)

| UNITED STATES BANKRUPTCY COURT<br>NORTHERN DISTRICT OF TEXAS<br>DALLAS DIVISION | **Voluntary Petition** |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Martinez, Jr., Jose Angel** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names):<br>**aka Joe A. Martinez; aka Joe Martinez; dba Nan-Roc, Inc.** | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN (if more than one, state all): **xxx-xx-5274** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN (if more than one, state all): |

| Street Address of Debtor (No. and Street, City, and State):<br>**3519 Heritage Trail**<br>**Celina, TX**<br>ZIP CODE **75009** | Street Address of Joint Debtor (No. and Street, City, and State):<br>ZIP CODE |
|---|---|
| County of Residence or of the Principal Place of Business:<br>**Collin** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>**3519 Heritage Trail**<br>**Celina, TX**<br>ZIP CODE **75009** | Mailing Address of Joint Debtor (if different from street address):<br>ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above):<br>ZIP CODE | |

| Type of Debtor<br>(Form of Organization)<br>(Check one box.) | Nature of Business<br>(Check one box.) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed   (Check one box.) |
|---|---|---|
| ☑ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☐ Other | ☐ Chapter 7<br>☐ Chapter 9<br>☐ Chapter 11<br>☐ Chapter 12<br>☑ Chapter 13     ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding |

**Tax-Exempt Entity**
(Check box, if applicable.)
☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code).

**Nature of Debts**
(Check one box.)
☑ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."
☐ Debts are primarily business debts.

| Filing Fee   (Check one box.) | Chapter 11 Debtors |
|---|---|
| ☑ Full Filing Fee attached.<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | **Check one box:**<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>**Check if:**<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,343,300 *(amount subject to adjustment on 4/01/13 and every three years thereafter).*<br>**Check all applicable boxes:**<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

**Statistical/Administrative Information**

☑ Debtor estimates that funds will be available for distribution to unsecured creditors.
☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

Estimated Number of Creditors

| ☐ 1-49 | ☑ 50-99 | ☐ 100-199 | ☐ 200-999 | ☐ 1,000-5,000 | ☐ 5,001-10,000 | ☐ 10,001-25,000 | ☐ 25,001-50,000 | ☐ 50,001-100,000 | ☐ Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|

Estimated Assets

| ☐ $0 to $50,000 | ☐ $50,001 to $100,000 | ☑ $100,001 to $500,000 | ☐ $500,001 to $1 million | ☐ $1,000,001 to $10 million | ☐ $10,000,001 to $50 million | ☐ $50,000,001 to $100 million | ☐ $100,000,001 to $500 million | ☐ $500,000,001 to $1 billion | ☐ More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

Estimated Liabilities

| ☐ $0 to $50,000 | ☐ $50,001 to $100,000 | ☐ $100,001 to $500,000 | ☑ $500,001 to $1 million | ☐ $1,000,001 to $10 million | ☐ $10,000,001 to $50 million | ☐ $50,000,001 to $100 million | ☐ $100,000,001 to $500 million | ☐ $500,000,001 to $1 billion | ☐ More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

*Computer software provided by LegalPRO Systems, Inc., San Antonio, Texas (210) 561-5300, Copyright 1996-2011 (Build 9.1.5.2, ID 3301607844)*

B1 (Official Form 1) (4/10)                                                                                                  Page 2

| **Voluntary Petition** *(This page must be completed and filed in every case.)* | Name of Debtor(s): **Jose Angel Martinez, Jr.** |
|---|---|

### All Prior Bankruptcy Cases Filed Within Last 8 Years (If more than two, attach additional sheet.)

| Location Where Filed: **Northern District of Texas, Dallas Division** | Case Number: **09-37441-HDH13** | Date Filed: **11/30/2009** |
|---|---|---|
| Location Where Filed: | Case Number: | Date Filed: |

### Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor (If more than one, attach additional sheet.)

| Name of Debtor: | Case Number: | Date Filed: |
|---|---|---|
| District: | Relationship: | Judge: |

| **Exhibit A** (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) ☐ Exhibit A is attached and made a part of this petition. | **Exhibit B** (To be completed if debtor is an individual whose debts are primarily consumer debts.) I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b). **X** /s/ Len L. Nary                          6/6/2011 Len L. Nary                                    Date |
|---|---|

### Exhibit C

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

☑ No.

### Exhibit D

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

    ☑ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

    ☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

### Information Regarding the Debtor - Venue
(Check any applicable box.)

☑ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

### Certification by a Debtor Who Resides as a Tenant of Residential Property
(Check all applicable boxes.)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

    _____

    (Name of landlord that obtained judgment)

    _____

    (Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

B1 (Official Form 1) (4/10)                                                                                                                                 Page 3

| Voluntary Petition | Name of Debtor(s): **Jose Angel Martinez, Jr.** |
|---|---|
| *(This page must be completed and filed in every case)* | |

## Signatures

| Signature(s) of Debtor(s) (Individual/Joint) | Signature of a Foreign Representative |
|---|---|

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X **/s/ Jose Angel Martinez, Jr.**
 **Jose Angel Martinez, Jr.**

X _____

Telephone Number (If not represented by attorney)

**6/6/2011**
Date

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.

☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
(Signature of Foreign Representative)

_____
(Printed Name of Foreign Representative)

_____
Date

| Signature of Attorney* | Signature of Non-Attorney Bankruptcy Petition Preparer |
|---|---|

X **/s/ Len L. Nary**
 **Len L. Nary**                             Bar No. **00786131**

**Law Office of Len L. Nary**
**3010 LBJ Freeway**
**Suite 1200**
**Dallas, Texas 75234**
**len@narylawfirm.com**
Phone No. **(972) 888-6010**          Fax No. **(972) 851-9944**

**6/6/2011**
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)

| Signature of Debtor (Corporation/Partnership) | |
|---|---|

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

_____
Printed Name of Authorized Individual

_____
Title of Authorized Individual

_____
Date

Address

X _____

_____
Date

Signature of bankruptcy petiton preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.*

B 1D (Official Form 1, Exhibit D) (12/09)

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

In re:  **Jose Angel Martinez, Jr.**                                         Case No. _____

                                                                                                    (if known)

                Debtor(s)

## EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH
## CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below. If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file. If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you. If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

*Every individual debtor must file this Exhibit D. If a joint petition is filed, each spouse must complete and file a separate Exhibit D. Check one of the five statements below and attach any documents as directed.*

☑ 1. Within the 180 days **before the filing of my bankruptcy case,** I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

☐ 2. Within the 180 days **before the filing of my bankruptcy case,** I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit couseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me. *You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 14 days after your bankruptcy case is filed.*

☐ 3. I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the seven days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now. *[Summarize exigent circumstances here.]*

**If your certification is satisfactory to the court, you must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy petition and promptly file a certificate from the agency that provided the counseling, together with a copy of any debt management plan developed through the agency. Failure to fulfill these requirements may result in dismissal of your case. Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days. Your case may also be dismissed if the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing.**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

In re:   **Jose Angel Martinez, Jr.**                              Case No. _____

                                                                                   (if known)

                    Debtor(s)

## EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH
## CREDIT COUNSELING REQUIREMENT

*Continuation Sheet No. 1*

☐  4. I am not required to receive a credit counseling briefing because of:    *[Check the applicable statement.] [Must be accompanied by a motion for determination by the court.]*

    ☐  Incapacity.  (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilites.);

    ☐  Disability.  (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);

    ☐  Active military duty in a military combat zone.

☐  5. The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

**I certify under penalty of perjury that the information provided above is true and correct.**

Signature of Debtor:   **/s/ Jose Angel Martinez, Jr.**_____

                       Jose Angel Martinez, Jr.

Date:     **6/6/2011**_____

EXHIBIT 4

B6A (Official Form 6A) (12/07)

In re  **Jose Angel Martinez, Jr.**                                      Case No.   <u>11-33750-13</u>
                                                                                    (if known)

## SCHEDULE A - REAL PROPERTY

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting Any Secured Claim or Exemption | Amount Of Secured Claim |
|---|---|---|---|---|
| Single family home 3519 Heritage Trail Celina, Texas 75009 | FEE SIMPLE | - | $313,000.00 | $284,801.41 |
| 408 Paula Road, McKinney, Texas 75069 Home at 408 Paula Road, McKinney, Texas 75069 **per divorce decree owned 1/2 with ex spouse Total value approx. $120,000; will surrender if it cannot be sold, if sold any of debtor's proceeds will be dedicated to the Ch 13 plan. | FEE SIMPLE | - | $120,000.00 | $113,287.56 |
| | | Total: | $433,000.00 | |

(Report also on Summary of Schedules)

B6D (Official Form 6D) (12/07)

In re **Jose Angel Martinez, Jr.**　　　　　　　　Case No.　**11-33750-13**
　　　　　　　　　　　　　　　　　　　　　　　　　　　(if known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCT #:<br><br>**BAC Home Loans Servicing, LP ***<br>**1757 Tapo Canyon Road**<br>**Mail Stop CA6-913-LB-11**<br>**Simi Valley, CA 93063** | | - | DATE INCURRED:<br>NATURE OF LIEN:<br>**Fee Simple 2nd lien**<br>COLLATERAL:<br>**3519 Heritage Trail homestead**<br>REMARKS:<br><br>VALUE: **$313,000.00** | | | | **$72,359.28** | |
| ACCT #:<br><br>**BAC Home Loans Servicing, LP ***<br>**1757 Tapo Canyon Road**<br>**Mail Stop CA6-913-LB-11**<br>**Simi Valley, CA 93063** | | - | DATE INCURRED: **Various**<br>NATURE OF LIEN:<br>**Mortgage arrears 2nd lien**<br>COLLATERAL:<br>**3519 Heritage Trail homestead**<br>REMARKS:<br><br>VALUE: **$313,000.00** | | | | **$8,832.00** | |
| ACCT #: **xxx9591**<br><br>**BAC/Countrywide Home Lending ***<br>**400 Countrywide Way**<br>**Mail Stop SV-46**<br>**Simi Valley, CA 93065** | | | DATE INCURRED: **10/2001**<br>NATURE OF LIEN:<br>**Conventional Real Estate Mortgage**<br>COLLATERAL:<br>**Homestead -Heritage Trail**<br>REMARKS:<br>**3519 Heritage Trail - Celina**<br><br>VALUE: **$313,000.00** | | | | **$162,632.64** | |
| **Representing:**<br>**BAC/Countrywide Home Lending *** | | | **BAC Home Loans Servicing**<br>**fka Countrywide Home**<br>**7105 Corporate Drive**<br>**Plano, Texas 75024** | | | | **Notice Only** | **Notice Only** |

　　　　　　　　　　　　　　　　　　　Subtotal (Total of this Page) >　**$243,823.92**　　**$0.00**
　　　　　　　　　　　　　　　　Total (Use only on last page) >

_____**4**_____continuation sheets attached

(Report also on Summary of Schedules.)

(If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

B6D (Official Form 6D) (12/07) - Cont.

In re **Jose Angel Martinez, Jr.**                                      Case No.  **11-33750-13**
                                                                                        (if known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Representing: BAC/Countrywide Home Lending * | | | Bank of America Home Loans Servicing P.O. Box 650070 Dallas, Texas 75265 | | | | **Notice Only** | **Notice Only** |
| Representing: BAC/Countrywide Home Lending * | | | BARRETT DAFFIN, ET AL 15000 SURVEYOR BLVD STE 100,  DEPT 4000 ADDISON TX 75001 | | | | **Notice Only** | **Notice Only** |
| ACCT #: **xxx9591** BAC/Countrywide Home Lending * 400 Countrywide Way Mail Stop SV-46 Simi Valley, CA 93065 | | - | DATE INCURRED:  **Various** NATURE OF LIEN: **Mortgage arrears** COLLATERAL: **Homestead -Heritage Trail** REMARKS: <br><br> VALUE:  **$313,000.00** | | | | **$12,500.00** | |
| ACCT #: **xxxxxxx6319** Bank One/Chase * 8333 Ridgepoint Dr Irving, TX 75063 | X | - | DATE INCURRED:  **05/2003** NATURE OF LIEN: **Home Equity Line of Credit** COLLATERAL: **Ex-wife's property** REMARKS: **Property awarded to ex-wife** <br><br> VALUE:  **$125,000.00** | | | | **$83,542.00** | |

Sheet no. ____**1**____ of ____**4**____ continuation sheets attached
to Schedule of Creditors Holding Secured Claims

Subtotal (Total of this Page) >  **$96,042.00**   **$0.00**

Total (Use only on last page) >

(Report also on Summary of Schedules.)

(If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

B6D (Official Form 6D) (12/07) - Cont.

In re **Jose Angel Martinez, Jr.**

Case No. **11-33750-13**
(if known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCT #:<br><br>**CELINA ISD ***<br>**C/O Perdue, Brandon, Fielder**<br>**P.O. Box 13430**<br>**Arlington, Texas 76094-0430** | | - | DATE INCURRED:<br>NATURE OF LIEN:<br>**Fee Simple**<br>COLLATERAL:<br>**Homestead**<br>REMARKS:<br><br>VALUE: **$313,000.00** | | | | **$5,779.66** | |
| ACCT #:<br><br>**Chase Equity Home Loan ***<br>**P.O. Box 24714**<br>**Columbus, OH 43224** | | - | DATE INCURRED:<br>NATURE OF LIEN:<br>**Fee Simple**<br>COLLATERAL:<br>**Building awarded to ex in divorce**<br>REMARKS:<br><br>VALUE: **$110,000.00** | | | | **$82,087.00** | |
| ACCT #:<br><br>**COLLIN COUNTY TAX ASSES.**<br>**2300 BLOOMDALE RD, #2324**<br>**PO BOX 8046**<br>**MCKINNEY, TX 75070-8046** | | | DATE INCURRED:<br>NATURE OF LIEN:<br>**Property Tax**<br>COLLATERAL:<br>**Property taxes**<br>REMARKS:<br><br>VALUE: **$313,000.00** | | | | **$4,697.83** | |
| ACCT #: xxxx8664<br><br>**Countrywide Home Lending ***<br>**Attention: Bankruptcy SV-314B**<br>**PO Box 5170**<br>**Simi Valley, CA 93062** | | - | DATE INCURRED: **11/2004**<br>NATURE OF LIEN:<br>**Conventional Real Estate Mortgage**<br>COLLATERAL:<br>**408 Paula**<br>REMARKS:<br><br>VALUE: **$120,000.00** | | | | **$91,201.00** | |

Sheet no. _____**2**_____ of _____**4**_____ continuation sheets attached to Schedule of Creditors Holding Secured Claims

Subtotal (Total of this Page) > **$183,765.49** | **$0.00**

Total (Use only on last page) >

(Report also on Summary of Schedules.)

(If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

B6D (Official Form 6D) (12/07) - Cont.

In re **Jose Angel Martinez, Jr.**

Case No. **11-33750-13**

(if known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCT #: xxxxxx5651<br><br>**Hsbc Mortgage Corp Usa \***<br>**2929 Walden Ave**<br>**Depew, NY 14043** | | - | DATE INCURRED: **11/2004**<br>NATURE OF LIEN:<br>**Real Estate Mortgage without Other Collateral**<br>COLLATERAL:<br>**408 Paula**<br>REMARKS:<br>**Surrender 408 Paula Road, McKinney, Texas - surrendered.**<br><br>VALUE: **$120,000.00** | | | | **$22,086.56** | |
| **Representing:**<br>**Hsbc Mortgage Corp Usa \*** | | | **HSBC Mortgage Corp.**<br>**Bankruptcy Dept.**<br>**P.O. Box 2118**<br>**Eagan, MN 55121-4201** | | | | **Notice Only** | **Notice Only** |
| **Representing:**<br>**Hsbc Mortgage Corp Usa \*** | | | **ReconTrust**<br>**1800 Tapo Canyon Road**<br>**Mail Stop CA6-914-01-02**<br>**Simi Valley, CA 93063** | | | | **Notice Only** | **Notice Only** |
| ACCT #:<br><br>**Richard Dale Relyea, LP \***<br>**P.O. Box 842516**<br>**Dallas, Texas 75284-2516** | | - | DATE INCURRED:<br>NATURE OF LIEN:<br>**Property Tax- Alamo Tax Loan**<br>COLLATERAL:<br>**Heritage Trail homestead**<br>REMARKS:<br><br>VALUE: **$313,000.00** | | | | **$18,000.00** | |
| Sheet no. __3__ of __4__ continuation sheets attached to Schedule of Creditors Holding Secured Claims | | | Subtotal (Total of this Page) > | | | | **$40,086.56** | **$0.00** |
| | | | Total (Use only on last page) > | | | | | |
| | | | | | | | (Report also on Summary of Schedules.) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.) |

B6D (Official Form 6D) (12/07) - Cont.

In re **Jose Angel Martinez, Jr.**                     Case No. **11-33750-13**

                                                                (if known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| **Representing: Richard Dale Relyea, LP \*** | | | **Alamo Tax Loans 6840 San Pedro Ave., #201 San Antonio, Texas 78216** | | | | **Notice Only** | **Notice Only** |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

Sheet no. ___4___ of ___4___ continuation sheets attached
to Schedule of Creditors Holding Secured Claims

| | |
|---|---|
| Subtotal (Total of this Page) > | **$0.00** | **$0.00** |
| Total (Use only on last page) > | **$563,717.97** | **$0.00** |

(Report also on Summary of Schedules.)

(If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

# EXHIBIT 5

**Form B10** (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF TEXAS | PROOF OF CLAIM |
|---|---|

| Name of Debtor: JOSE ANGEL MARTINEZ, JR. | Case Number 11-33750-BJH-13 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property): BANK OF AMERICA, NA SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP ITS ASSIGNS AND/OR SUCCESSORS IN INTEREST | ☐ Check this box to indicate that this claim amends a previously filed claim. **Court Claim Number:** _____ *(If known)* |
| Name and address where notices should be sent: BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVIC 400 COUNTRYWIDE WAY MAIL STOP SV-46 SIMI VALLEY, CA 93065 Telephone number: | Filed on : |
| Name and address where payment should be sent (if different from above): BANK OF AMERICA, NA TX2-982-03-03 7105 CORPORATE PLANO, TX 75024 Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach a copy of statement giving particulars. ☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:** $211,637.61 | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.** |
| If all or part of your claim is secured, complete item 4 below; however, if all or part of your claim is unsecured, do not complete item 4. | |
| If all or part of your claim is entitled to priority, complete item 5. | Specify the priority of the claim. |
| ☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **2. Basis for Claim:** Mortgage Note (See instruction #2 on reverse side.) | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4). |
| **3. Last four digits of any number by which creditor identifies debtor:** ****9591 | |
| **3a. Debtor may have scheduled account as:** _____ (See instruction #3a on reverse side.) | ☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5). |
| **4. Secured Claim** (See instruction #4 on reverse side.) Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information. | ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7). |
| **Nature of property or right of setoff:** ☒ Real Estate ☐ Motor Vehicle ☐ Other Describe: | |
| **Value of Property:** $309,521.00   **Annual Interest Rate** 6.625% | ☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8). |
| **Amount of arrearage and other charges as of time case filed included in secured claim,** | ☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__). |
| if any: $ 63,861.76   **Basis for perfection:** Deed of Trust | **Amount entitled to priority:** $ _____ |
| **Amount of Secured Claim:** $211,637.61   **Amount Unsecured:** $ | *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See Instruction 7 and definition of "redacted" on reverse side.)* | |
| DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING. | |
| If the documents are not available, please explain: | |

| Date: 10/06/2011 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. /s/ BRIAN GLIDDEN                                        10/6/2011 BRIAN GLIDDEN **BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP** Attorneys for Claimant 15000 SURVEYOR BLVD. SUITE 100 ADDISON, TX 75001 (972) 341-0500 | **FOR COURT USE ONLY** |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

| BANKRUPTCY CASE NUMBER: | 11-33750-BJH13 | FILE NUMBER: | 00000002516367 |
|---|---|---|---|
| LOAN NUMBER: | ****9591 | CLIENT REFERENCE NUMBER: | |
| PRINCIPAL BALANCE: | $ 153,624.99 | **CONTRACT RATE: | 6.625% |

### ARREARAGE DETAIL

NUMBER OF PAYMENTS IN ARREARS  15
FROM 04/01/2010 THROUGH 06/01/2011

**THE POST PETITION PAYMENT FOR THIS LOAN IS $1,116.07.  EFFECTIVE  07/01/2011 THE POST PETITION PAYMENT WILL CHANGE TO $2,045.17 AND INCLUDES $655.77 FOR TAXES AND $273.33 FOR INSURANCE.**

ARREARAGE ON DEBT:

| 15 | PAYMENTS | EACH AT | $1,116.07 | |
|---|---|---|---|---|
| | | PAYMENT SUBTOTAL | | $16,741.05 |

ALLOWABLE CHARGES:

| POST-PETITION BANKRUPTCY ATTY. FEES & COSTS | $300.00 |
|---|---|
| UNCOLL. LATE CHARGES | $55.80 |
| ESCROW ADV / SHORTAGE | $47,880.91 |
| NSF FEES | $0.00 |
| INSPECTION FEES | $0.00 |
| ACCRUED LATE CHARGES | $0.00 |
| PRE-PETITION ATTY. FEES | $0.00 |

| Total Allowable Charges = | $48,236.71 |
|---|---|
| Subtotal = | $64,977.76 |
| Held In Suspense = | $1,116.00 |
| Total Arrearage Claim = | $63,861.76 |

**\*\*IF THIS IS AN ADJUSTABLE RATE LOAN, THE INTEREST RATE IS SUBJECT TO CHANGE PURSUANT TO THE TERMS OF THE NOTE.**

Send Payments To:
BANK OF AMERICA, NA
TX2-982-03-03
7105 CORPORATE
PLANO, TX  75024

<u>**CERTIFICATE OF SERVICE**</u>

     I hereby certify that on October 06, 2011, a true and correct copy of the Proof of Claim was

served via electronic means as listed on the Court's ECF noticing system or by regular first class

mail to the parties listed on the attached list.

                              Respectfully submitted,

                              BARRETT DAFFIN FRAPPIER
                              TURNER & ENGEL, LLP

                        BY: <u>/s/ BRIAN GLIDDEN</u>         10/06/2011
                              BRIAN GLIDDEN
                              TX NO. 24059829
                              15000 SURVEYOR BLVD. SUITE 100
                              ADDISON, TX 75001
                              Telephone: (972) 341-0500
                              Facsimile: (972) 661-7725
                              E-mail:  NDECF@BDFGROUP.COM
                              ATTORNEY FOR CLAIMANT

**BY ELECTRONIC NOTICE OR REGULAR FIRST CLASS MAIL:**

**DEBTOR:**
JOSE ANGEL MARTINEZ, JR.
3519 HERITAGE TRAIL
CELINA, TX  75009

**DEBTOR'S ATTORNEY:**
LEN L. NARY
3010 LBJ FREEWAY
SUITE 1200
DALLAS, TX  75234

**TRUSTEE:**
THOMAS DWAIN POWERS
125 E. JOHN CARPENTER FRWY.,
STE 1100
IRVING, TX  75062

# NOTE

OCTOBER 19, 2001          PLANO                              TEXAS
[Date]                   [City]                            [State]

3519 HERITAGE TRAIL, CELINA, TX 75009
                        [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 174,300.00     (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of  6.625   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  FIRST          day of each month beginning on
DECEMBER 01, 2001    . I will make these payments every month until I have paid all of the principal and interest and any
other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date
and will be applied to interest before Principal. If, on NOVEMBER 01, 2031    , I still owe amounts under this Note, I will
pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
 4500 PARK GRANADA, CALABASAS, CA 91302-1613
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,116.06

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.

Subject to the Prepayment penalty specified below, I may make a full Prepayment or partial Prepayments of my obligation.
The Note Holder will use all of my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial
Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in
writing to those changes.

If within the first SIXTY          months after the execution of the Note, I make any prepayment(s) within any
12-month period, the total of which exceeds twenty (20) percent of the original principal amount of this loan, I will pay a
prepayment penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of
my prepayment(s) within that 12-month period exceeds twenty (20) percent of the original principal amount of the loan. The
Note Holder will waive this penalty if I furnish the Note Holder with documentation, in the manner and at the time reasonably
specified by the Note Holder, identifying the prepayment as being in connection with the sale of the Property to an unrelated
Third Party.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other
loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge
shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me
which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the
Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated
as a partial Prepayment.

CONV
● Prepayment Note/Fixed Rate
2D0871XX (04/01)                         Page 1 of 2                    Initials: [signature]





## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   FIFTEEN   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)    _Michelle - Martinez_____ (Seal)
JOE A MARTINEZ            -Borrower   MICHELLE L MARTINEZ        -Borrower

_____ (Seal)    _____ (Seal)
                         -Borrower                              -Borrower

*[Sign Original Only]*

CONV
• Prepayment Note/Fixed Rate
2D0872XX (01/01)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
1800 Tapo Canyon

Countrywide Home Loans

610        D2  001  001

COUNTY CLERK'S MEMO
PORTIONS OF THIS
DOCUMENT NOT
REPRODUCIBLE
WHEN RECORDED

- [Space Above This Line For Recording Data] -

[Escrow/Closing #]                    [Doc ID #]

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

(A) "Security Instrument" means this document, which is dated OCTOBER 19, 2001       , together
with all Riders to this document.
(B) "Borrower" is
JOE A MARTINEZ,  AND MICHELLE L MARTINEZ,  (WHO ACQUIRED TITLE AS MICHELLE L. REQUEJO),
HUSBAND AND WIFE

Borrower is the grantor under this Security Instrument.
(C) "Lender" is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK              . Lender's address is
4500 PARK GRANADA, CALABASAS, CA 91302-1613
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is
JEFF PRINCE
Trustee's address is
1713 PRESTON ROAD #E, PLANO, TX 75093-
(E) "Note" means the promissory note signed by Borrower and dated OCTOBER 19, 2001        . The
Note states that Borrower owes Lender
ONE HUNDRED SEVENTY FOUR THOUSAND THREE HUNDRED and 00/100
Dollars (U.S. $    174,300.00    ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than NOVEMBER 01, 2031
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 1 of 12                                            Initials MCM  JM
   -6(TX) (0005)    CHL (08/00)    YMP MORTGAGE FORMS - (800)521-7291      Form 3044 1/01
CONV/VA




DOC ID #

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of COLLIN :
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

LOT 4, BLOCK F, OF PRESTON HILLS III, PHASE II, AN ADDITION TO COLLIN COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME J, PAGE 942, OF THE PLAT RECORDS OF COLLIN COUNTY, TEXAS.

Parcel ID Number:
3519 HERITAGE TRAIL, CELINA

which currently has the address of

[Street/City]

Texas    75009    ("Property Address"):
[Zip Code]

Initials:

Form 3044 1/01

-6(TX) (0005)    CHL (08/00)    Page 2 of 12

DOC ID #

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender

Initials

DOC ID #

may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional

-6(TX) (0005)     CHL (08/00)     Page 4 of 12     Initials: _____  Form 3044 1/01

DOC ID #

debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is

Initials: _____ JM

-6(TX) (0005)     CHL (08/00)     Page 6 of 12     Form 3044 1/01

DOC ID #

reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a

Initials: _Mem_    _JM_

**(CHL) -6(TX) (0008)**    **CHL (08/00)**    Page 8 of 12    **Form 3044 1/01**

single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In

regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check

Initials: _____ JM

DOC ID #

is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in

Initials: _____

Form 3044 1/01

-6(TX) (0005)    CHL (08/00)    Page 9 of 12

DOC ID #

pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee; Trustee Liability. All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. With any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

25. Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

26. Partial Invalidity. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:

☐ Purchase Money.

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ Owelty of Partition.

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☒ Renewal and Extension of Liens Against Homestead Property.

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

Initials:

DOC ID #

☐ **Acknowledgement of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

28. **Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____         _____ (Seal)
                                JOE A MARTINEZ                        -Borrower

_____         _____ (Seal)
                                MICHELLE L MARTINEZ                   -Borrower

                                _____ (Seal)
                                                                     -Borrower

                                _____ (Seal)
                                                                     -Borrower

DOC ID #

STATE OF TEXAS
County of *Collin*

Before me *the undersigned* *Michelle L. Martinez* on this day personally appeared
*Joe A. Martinez et ux Michelle L.* _____ known to me

(or proved to me on the oath of _____ or through *Texas Dr. License* )
to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she/
they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this *19th* day of *October, 2005*

(Seal)

_____
Notary Public



SUSAN WHITLEY
Notary Public, State of Texas
My Comm. Expires 12/23/05

My Commission Expires:

# RENEWAL AND EXTENSION EXHIBIT

DEED OF TRUST DATED FEBRUARY 24, 2000, RECORDED IN VOLUME 4612, PAGE 1262, OF THE DEED OF TRUST RECORDS OF COLLIN COUNTY, TEXAS, SECURING PROMISSORY NOTE OF EVEN DATE THEREWITH IN THE ORIGINAL PRINCIPAL SUM OF $177,300.00, EXECUTED BY JOE A. MARTINEZ AND MICHELLE L. REQUBIO, PAYABLE TO THE ORDER OF COUNTRYWIDE HOME LOANS, INC.

CHL
GV3039   RENEWAL AND EXTENSION EXHIBIT TO DEED OF TRUST

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE
DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND
UNENFORCEABLE UNDER FEDERAL LAW.
(THE STATE OF TEXAS)                                              (COUNTY OF COLLIN)
I hereby certify that this instrument was FILED in the File Number Sequence on the date
and the time stamped hereon by me and was duly RECORDED, in the Official Public
Records of Real Property of Collin County, Texas on

OCT 2 2 2001

*Helen Starnes*

Filed for Record in:
Collin County, McKinney TX
Honorable Helen Starnes
Collin County Clerk

On  Oct 22 2001
    At  3:26pm

Doc/Num  : 2001- 0134006

Recording/Type:DT        35.00
Receipt #:          34832

ASSIGNMENT OF NOTE
AND DEED OF TRUST

BDFTE No.:
Investor/Loan Type: FNMA

| | |
|---|---|
| Date of Assignment: | Effective September 22, 2009 |
| Assignor: | COUNTRYWIDE HOME LOANS, INC. |

| | |
|---|---|
| Assignee: | BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP |

| | |
|---|---|
| Assignee's Mailing Address: (including county) | 7105 CORPORATE DRIVE PTX-B-35 PLANO, TX 75024 |

NOTE and DEED OF TRUST--

| | |
|---|---|
| Maker/Grantor: | JOE A. MARTINEZ MICHELLE L. MARTINEZ |
| Date: | October 19, 2001 |
| Original Amount: | $ 174,300.00 |
| Payee: | COUNTRYWIDE HOME LOANS, INC. |

| | |
|---|---|
| Trustee: | JEFF PRINCE |
| Recording Information: (including county) | CLERK'S FILE NO. 2001-0134086 (COLLIN) |

Property (including any improvements) Subject to Deed of Trust:

LOT 4, BLOCK F, OF PRESTON HILLS III, PHASE II, AN ADDITION TO COLLIN COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME J, PAGE 942, OF THE PLAT RECORDS OF COLLIN COUNTY, TEXAS.

After Recording Return To:
Barrett Daffin Frappier Turner & Engel, LLP
15000 Surveyor Blvd., Suite 100
Addison, TX 75001
Attn: NDeX Title Services, LLC



HOLD FOR BDF

ASSIGNMENT OF NOTE
AND DEED OF TRUST

BDFTE No.:
Investor/Loan Type: FNMA

WHEREAS, on the date of assignment indicated above, for value received, Holder of the Note and Deed of Trust transferred and assigned each to Assignee, and warranted that the lien was valid against the property in the priority indicated; and

WHEREAS, the Holder of the Note and Deed of Trust and the Assignee desire to evidence and memorialize such transfer and assignment and warranty by this document;

NOW THEREFORE, for value received Holder of the Note and Deed of Trust does hereby evidence and memorialize its transfer and assignment of the Note and Deed of Trust to Assignee on the date of assignment indicated above.

When the context requires, singular nouns and pronouns include the plural.

COUNTRYWIDE HOME LOANS, INC.

BY: _____

ITS: _____ David Seybold, Attorney-in-Fact

CORPORATE ACKNOWLEDGMENT

State of _____Texas_____ §
County of _____Dallas_____ §

Before me, the undersigned Notary Public, on this day personally appeared David Seybold, who is the Attorney-in-Fact of COUNTRYWIDE HOME LOANS, INC, a corporation, on behalf of said corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed..

OCT 2 0 2009

Given under my hand and seal of office this _____ day of _____, 2009.

_____
Notary Public Signature

My Commission Expires:

SONIA CARDONA
Notary Public
State of Texas
My Comm. Exp. 06-20-2011

_____
Printed Name of Notary Public

PREPARED BY AND AFTER RECORDING RETURN TO: BDFTE, L.L.P.
15000 Surveyor Boulevard, Suite 100, Addison, Texas 75001

ASGNDOT.rpt - (04/24/08) / Ver-05

Page 2 of 2

Filed and Recorded
Official Public Records
Stacey Kemp, County Clerk
Collin County, TEXAS
10/29/2009 10:11:39 AM
$24.00 BNCPP
20091029001320743



# EXHIBIT 6

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| IN RE: | Case No: **11-33750-13** |
| **Jose Angel Martinez, Jr.** | DATED: **11/15/2011** |
| | Chapter: **13** |
| Debtor(s) | EIN: |
| Attorney Phone No: **(972) 888-6010** | Judge: **Barbara J. Houser** |

*AMENDED 11/16/2011*
**DEBTOR'S(S') CHAPTER 13 PLAN AND MOTION FOR VALUATION**
**SECTION I**
**DEBTOR'S(S') CHAPTER 13 PLAN - SPECIFIC PROVISIONS**
**FORM REVISED 5-25-06**

This Plan contains non-standard provisions in Section IV (last page): ☐ yes ☒ no

**A. DEBTOR PAYMENTS**   DEBTOR(S) PROPOSES TO PAY TO THE TRUSTEE THE SUM OF:

| | | |
|---|---|---|
| MONTHS 1 TO 1 | $600.00 | PER MONTH |
| MONTHS 2 TO 5 | $1,625.00 | PER MONTH |
| MONTHS 6 TO 60 | $1,950.00 | PER MONTH |

FOR A TOTAL OF  **$114,350.00**  ("BASE AMOUNT").                               .

FIRST PAYMENT IS DUE  **7/6/2011**  .

THE ESTIMATED UNSECURED CREDITORS POOL IS
**$0.00**  calculated as:  **$0.00**  (Disposable income per § 1325(b)(2)) x  **60 months**  (Applicable Commitment Period per § 1325(b)(4)), but not less than Debtor's equity in non-exempt property:  **$0.00**  pursuant to § 1325(a)(4).

**B. ADMINISTRATIVE AND DSO CLAIMS:**

1. **CLERK'S FILING FEE:**  Total filing fees paid through the plan, if any, are  **$0.00**  and shall be paid in full prior to disbursements to any other creditor.

2. **TRUSTEE FEES AND NOTICING FEES:** Trustee fees and any noticing fees shall be paid first out of each disbursement and as provided in General Order 2006-01.

3. **DOMESTIC SUPPORT OBLIGATIONS:**  Prior to discharge, Debtor will pay all post-petition Domestic Support Obligations (as defined in § 101(14A)) directly to the holder(s) of such obligation(s), unless payment through the Plan as hereinafter provided is agreed to in writing by the respective holder(s) of the claim(s) or their agent(s).  Pre-petition Domestic Support Obligations per Schedule "E" shall be paid the following monthly payments:

| DSO CLAIMANT(S) | SCHEDULED AMOUNT(S) | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|
| **Attorney General Child Support *** | $1,209.50 | **Direct Pay** | $1,000.00 |

**C. ATTORNEY FEES:**  TO  **Law Office of Len L. Nary ***  , TOTAL:  **$3,500.00**  ;  **$441.00**  PRE-PETITION;  **$3,059.00**  THROUGH TRUSTEE.  PRE-CONFIRMATION PAYMENTS TO DEBTOR'S ATTORNEY WILL BE PER THE AUTHORIZATION FOR ADEQUATE PROTECTION DISBURSEMENTS.  POST-CONFIRMATION PAYMENTS TO DEBTOR'S ATTORNEY WILL BE MADE FROM FUNDS REMAINING AFTER PAYMENT OF ADMINISTRATIVE AND DSO CLAIMS AS PROVIDED ABOVE ('B') AND EACH SPECIFIED MONTHLY PLAN PAYMENT TO SECURED CREDITORS ('D' AND/OR 'E' BELOW) BEFORE ANY PAYMENT TO PRIORITY CREDITORS ('H' BELOW) OR UNSECURED CREDITORS ('I' AND 'J' BELOW).

**D. HOME MORTGAGE ARREARAGE:**

| MORTGAGEE | SCHED. ARR. AMT | DATE ARR. THROUGH | % | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|---|---|
| **BAC Home Loans Servicing, LP *** | $6,676.56 | 6/6/2011 | 0.00% | **Month(s) 1-60** | Pro-Rata |
| **BAC/Countrywide Home Lending *** | $63,861.76 | 6/6/2011 | 0.00% | **Month(s) 1-60** | Pro-Rata |

Case No:  11-33750-13
Debtor(s):  **Jose Angel Martinez, Jr.**

If pursuant to this Plan, the Debtor pays through the Trustee the Allowed pre-petition Home Mortgage Arrearage Claim Amount to any Mortgagee identified in paragraph "D" or its assignee(s), while timely making all required post-petition mortgage payments, upon discharge, the mortgage will be reinstated according to its original terms, extinguishing any right of the Mortgagee or its assignee(s) to recover any amount alleged to have arisen prior to the filing of the petition.

**E.(1)  SECURED CREDITORS--PAID BY THE TRUSTEE**

| CREDITOR / COLLATERAL | SCHED. AMT. | VALUE | % | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|---|---|
| **Celina ISD**<br>**Business personal property** | **$2,493.30** | **$2,493.30** | **12.00%** | **Month(s) 1-60** | **Pro-Rata** |
| **COLLIN COUNTY TAX**<br>**Business property** | **$1,702.80** | **$1,702.80** | **12.00%** | **Month(s) 1-60** | **Pro-Rata** |
| **COLLIN COUNTY TAX**<br>**Business property** | **$2,995.03** | **$2,995.03** | **12.00%** | **Month(s) 1-60** | **Pro-Rata** |

**E.(2)(a)  SECURED 1325(a)(9) CLAIMS PAID BY THE TRUSTEE--NO CRAM DOWN:**

| CREDITOR / COLLATERAL | SCHED. AMT. | VALUE | % | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|---|---|

**E.(2)(b)  SECURED 1325(a)(9) CLAIMS PAID BY THE TRUSTEE--CRAM DOWN:**

| CREDITOR / COLLATERAL | SCHED. AMT. | VALUE | % | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|---|---|

*TO THE EXTENT THE VALUE AMOUNT IN E.(2)(b) IS LESS THAN THE SCHEDULED AMOUNT IN E.(2)(b), THE CREDITOR SHALL HAVE THE OPTION OF REQUIRING THE DEBTOR TO SURRENDER THE COLLATERAL BY OBJECTING TO THE PROPOSED TREATMENT.*

**IN THE EVENT THAT A CREDITOR OBJECTS TO THE TREATMENT PROPOSED IN PARAGRAPH E.(2)(b) THE DEBTOR RETAINS THE RIGHT TO SURRENDER THE COLLATERAL TO THE CREDITOR IN SATISFACTION OF THE CREDITOR'S CLAIM.  IF THE DEBTOR ELECTS TO SURRENDER THE COLLATERAL, THEN THE AUTOMATIC STAY WILL BE TERMINATED AS TO SUCH COLLATERAL UPON ENTRY OF THE ORDER CONFIRMING THE PLAN, UNLESS OTHERWISE ORDERED BY THE COURT.**

**ABSENT SUCH OBJECTION, THE CREDITOR(S) LISTED IN "E.(2)(b)" SHALL BE DEEMED TO HAVE "ACCEPTED" THE PLAN PER SECTION 1325(a)(5)(A) OF THE BANKRUPTCY CODE AND WAIVED THEIR RIGHTS UNDER SECTION 1325(a)(5)(B) AND (C) OF THE BANKRUPTCY CODE.**

*THE VALUATION OF COLLATERAL AND INTEREST RATE TO BE PAID ON THE ABOVE SCHEDULED CLAIMS IN E(1) AND E(2)(a) AND (b) WILL BE FINALLY DETERMINED AT CONFIRMATION.  THE CLAIM AMOUNT WILL BE DETERMINED BASED ON A TIMELY FILED PROOF OF CLAIM AND THE TRUSTEE'S RECOMMENDATION CONCERNING CLAIMS ("TRCC".)*

*EXCEPT FOR "VALUATION" AND "INTEREST RATE," CONFIRMATION HEREOF SHALL BE WITHOUT PREJUDICE TO THE DEBTOR'S, THE TRUSTEE'S, OR ANY SECURED CREDITOR'S RIGHT TO A LATER DETERMINATION OF THE ALLOWED AMOUNT OF ANY CREDITOR'S SECURED CLAIM.  TO THE EXTENT SUCH CLAIM IS ALLOWED FOR AN AMOUNT GREATER OR LESSER THAN THE "SCHEDULED AMOUNT" PROVIDED FOR ABOVE, AFTER THE TRCC IS FINAL, DEBTOR WILL MODIFY THE PLAN TO FULLY PROVIDE FOR SUCH ALLOWED SECURED CLAIM.*

**F.  SECURED CREDITORS--COLLATERAL TO BE SURRENDERED:**

| CREDITOR / COLLATERAL | SCHED. AMT. | VALUE | TREATMENT |
|---|---|---|---|
| **Bank of America, N.A.**<br>**Ex-wife's property** | **$93,908.91** | **$125,000.00** | **Ex-wifes; surrender for value** |

Case No:   11-33750-13
Debtor(s):   **Jose Angel Martinez, Jr.**

| | | | |
|---|---|---|---|
| **Bank of America, N.A.**<br>**Ex-wife's property** | $10,399.97 | $10,079.07 | Ex-wife's; surrender for value |
| **Chase Equity Home Loan ***<br>**Building awarded to ex in divorce** | $82,087.00 | $110,000.00 | Ex-wife's; surrender for value |
| **Hsbc Mortgage Corp Usa ***<br>**408 Paula** | $21,012.02 | $31,091.09 | Ex-wife's; surrender for value |
| **Silver Leaf Resorts, Inc**<br>**Time share** | $10,156.36 | $19,126.00 | Surrender for value |

*The Automatic Stay will terminate as to Collateral listed in this paragraph F. upon filing hereof but nothing in this Plan shall be deemed to abrogate any applicable non-bankruptcy law contract rights of the Debtor(s).*

G.   **SECURED CREDITORS--PAID DIRECT BY DEBTOR**

| CREDITOR /<br>COLLATERAL | SCHED. AMT. | VALUE | TREATMENT |
|---|---|---|---|
| **BAC Home Loans Servicing, LP ***<br>**3519 Heritage Trail homestead** | $77,540.36 | $101,362.39 | 3519 Heritage 2nd lien |
| **BAC/Countrywide Home Lending ***<br>**Homestead -Heritage Trail** | $211,637.61 | $313,000.00 | |
| **CELINA ISD ***<br>**Homestead** | $5,779.66 | $0.00 | (Escrowed in mort. payment) |

H.   **PRIORITY CREDITORS OTHER THAN DOMESTIC SUPPORT OBLIGATIONS:**

| CREDITOR | SCHED. AMT. | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|
| **INTERNAL REVENUE SERVICE *** | $33,129.49 | **Month(s) 1-60** | **Pro-Rata** |

I.   **SPECIAL CLASS:**

| CREDITOR /<br>JUSTIFICATION | SCHED. AMT. | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|

J.   **UNSECURED CREDITORS**

| CREDITOR | SCHED. AMT. | COMMENT |
|---|---|---|
| **AAA Financial Services** | $0.00 | |
| **Ace Cash Advance** | $1,226.80 | |
| **Ally Financial** | $2,001.50 | |
| **Autonation Financial** | ($1.00) | |
| **Bank Of America** | $0.00 | |
| **CALVALRY PORTFOLIO SERVICES** | $537.41 | |
| **CALVALRY PORTFOLIO SERVICES** | $2,561.91 | |
| **Candicia LLC** | $6,520.48 | |
| **Cash America** | $516.66 | |
| **Citibank Usa** | $0.00 | |
| **Compass Bank *** | $1,452.10 | Notice Only |
| **Discover Bank** | $13,262.02 | |
| **INTERNAL REVENUE SERVICE *** | $15,410.22 | Bifurcated portion of priority claim |
| **Portfolio Recovery Associates** | $1,427.54 | |
| **Portfolio Recovery Associates** | $8,721.21 | |
| **Portfolio Recovery Associates** | $5,042.42 | |
| **Portfolio Recovery Associates** | $658.15 | |

Case No: 11-33750-13
Debtor(s): **Jose Angel Martinez, Jr.**

| | |
|---|---|
| **Portfolio Recovery Associates** | **$15,023.34** |
| **Portfolio Recovery Associates** | **$560.18** |
| **SANMAR** | **$546.01** |
| **Sm Servicing** | **$0.00** |
| **Target** | **$0.00** |
| **Tcc Credit Union** | **$0.00** |
| **Viewpoint Bank** | **$0.00** |
| **Washington Mutual Home** | **$0.00** |
| **Washington Mutual Home** | **$0.00** |
| TOTAL SCHEDULED UNSECURED: | **$75,466.95** |

UNSECURED CREDITORS ARE NOT GUARANTEED A DIVIDEND WHEN A PLAN IS CONFIRMED, SEE GENERAL ORDER 2006-01. ALLOWED GENERAL UNSECURED CLAIMS MAY RECEIVE A PRO-RATA SHARE OF THE UNSECURED CREDITORS' POOL, BUT NOT LESS THAN THE SECTION 1325(a)(4) AMOUNT SHOWN IN SECTION I "A" ABOVE LESS ALLOWED ADMINISTRATIVE AND PRIORITY CLAIMS, AFTER THE TRCC BECOMES FINAL. A PROOF OF CLAIM MUST BE TIMELY FILED TO BE ALLOWED.

### K. EXECUTORY CONTRACTS AND UNEXPIRED LEASES:

| § 365 PARTY | ASSUME/REJECT | CURE AMOUNT | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|---|
| **Pitney Bowes Inc.** | **Rejected** | **$0.00** | | |

### L. CLAIMS TO BE PAID:

'TERM (APPROXIMATE)' SHOWN HEREIN GIVES THE ESTIMATED NUMBER OF MONTHS FROM THE PETITION DATE REQUIRED TO FULLY PAY THE  ALLOWED CLAIM.  IF ADEQUATE PROTECTION PAYMENTS HAVE BEEN AUTHORIZED AND MADE, THEY WILL BE APPLIED TO PRINCIPAL AS TO UNDER-SECURED  CLAIMS AND ALLOCATED BETWEEN INTEREST AND PRINCIPAL AS TO OVER-SECURED  CLAIMS.  *PAYMENT PURSUANT TO THIS PLAN WILL ONLY BE MADE TO SECURED, ADMINISTRATIVE, PRIORITY AND UNSECURED CLAIMS THAT HAVE BEEN ALLOWED OR THAT THE DEBTOR HAS AUTHORIZED IN AN ADEQUATE PROTECTION AUTHORIZATION.  GENERAL UNSECURED CLAIMS WILL NOT RECEIVE ANY PAYMENT UNTIL AFTER THE TRCC BECOMES FINAL.*

*THE "SCHED. AMT." SHOWN IN THIS PLAN SHALL NOT DETERMINE THE "ALLOWED AMOUNT" OF ANY CLAIM.*

### M. ADDITIONAL PLAN PROVISIONS:

SEE SECTION IV ON LAST PAGE FOR ADDITIONAL PLAN PROVISIONS, IF ANY.

Case No: 11-33750-13
Debtor(s): **Jose Angel Martinez, Jr.**

---

**SECTION II**
**DEBTOR'S(S') CHAPTER 13 PLAN--GENERAL PROVISIONS**
**FORM REVISED 5-25-06**

#### A. SUBMISSION OF DISPOSABLE INCOME

Debtor(s) hereby submits such portion of future earnings or other future income as herein provided to the supervision and control of the Trustee as necessary for the execution of the Plan as herein provided.

Debtor proposes to PAY TO THE TRUSTEE the Base Amount indicated in Section I, Part "A" hereof. If applicable, cause exists for payment over a period of more than three (3) years.

If the Plan does not pay 100% to all creditors, the Base Amount shall not be less than the sum of the allowed administrative expenses plus the allowed priority and secured claims (with interest if applicable) plus the greater of the unsecured creditors' pool, or the 11 USC 1325(a)(4) amount (Best Interest Test).

Payment of any claim against the Debtor may be made from the property of the estate or property of the Debtor(s), as herein provided.

#### B. ADMINISTRATIVE EXPENSES, DSO CLAIMS & PAYMENT OF TRUSTEE'S STATUTORY FEES AND NOTICING FEES

The Administrative Expenses of the Trustee shall be paid in full pursuant to 11 U.S.C. Sec 105(a), 503(b), 1326(b)(2), and 28 U.S.C. Sec 586(e)(1)(B). The Trustee's Fees & Expenses, not to exceed ten percent (10%) allowed pursuant to 28 U.S.C. Sec 586(e)(1)(B), shall be deducted from each payment. Additionally, the Trustee is authorized to charge and collect Noticing Fees as indicated in Section I, Part "B" hereof, pursuant to local rule. No Trustee fee will be collected on Noticing Fees.

Debtor will pay in full all Domestic Support Obligations that are due before discharge, including section 507(a)(1) Priority claims due before the petition was filed, but only to the extent provided for in this Plan.

#### C. ATTORNEY FEES

Debtor's(s') Attorney Fees totaling the amount indicated in Section I Part "C", shall be paid by the Trustee in the amount shown as "through Trustee", pursuant to this Plan and the Debtor's(s') Authorization for Adequate Protection Disbursements.

#### D. PRINCIPAL RESIDENCE ARREARAGES (HOME MORTGAGE)

Arrearage on claims secured only by a security interest in the Debtor's(s') principal residence shall be paid by the Trustee in the allowed pre-petition arrearage amount, and at the Annual Percentage of interest indicated in Section I, Part "D" herein. To the extent interest is provided, interest will be calculated from the date of the Petition. The principal balance owing upon confirmation of the Plan on the allowed pre-petition arrearage amount shall be reduced by the total of adequate protection paid less any interest (if applicable) made to the respective creditor by the Trustee. Unless otherwise provided, post-petition payments may be paid "Direct" by Debtor(s), beginning with the first payment due after the 'ARR. THROUGH' date in Section I, Part "D". Such creditors shall retain their liens. To the extent an arrearage claim is allowed in an amount in excess of the Sched. Arr. Amt., the Debtor will promptly Modify the Plan to provide for full payment of the allowed amount, or for surrender of the collateral, at Debtor's election. If Debtor elects to surrender the collateral, the creditor may retain all pre-surrender payments received pursuant hereto.

If pursuant to this Plan, the Debtor pays through the Trustee the Allowed pre-petition Home Mortgage Arrearage Claim Amount to any Mortgagee identified in paragraph "D" or its assignee(s), while timely making all required post-petition mortgage payments, upon discharge, the mortgage shall thereupon be reinstated according to its original terms, extinguishing any right of the Mortgagee or its assignee(s) to recover any amount alleged to have arisen prior to the filing of the petition.

#### E.(1) SECURED CLAIMS TO BE PAID BY TRUSTEE

The claims listed in Section I, Part "E(1)" shall be paid by the Trustee as "SECURED" to the extent of the lesser of the Claim Amount (per timely filed Proof of Claim not objected to by a party in interest), or the VALUE as shown of the collateral, which will be retained by the Debtor(s). Any amount claimed in excess of the value shall automatically be "split" and treated as unsecured as indicated in Section I, Part "H" or "J", per 11 U.S.C. Sec. 506(a). Such creditors shall retain their liens on the collateral described in Section I, Part "E(1)" until the earlier of the payment of the underlying debt determined under non-bankruptcy law or discharge under Section 1328, and shall receive interest at the Annual Percentage Rate indicated from the date of confirmation hereof, or if the value shown is greater than the Claim Amount, from the date of the Petition, up to the amount by which the claim is over-secured. The principal balance owing upon confirmation of the Plan on the allowed secured claim shall be reduced by the total of adequate protection paid less any interest (if applicable) paid to the respective creditor by the Trustee.

Case No: 11-33750-13
Debtor(s): **Jose Angel Martinez, Jr.**

---

E.(2)(a)  **SECURED SECTION 1325(a)(9) CLAIMS TO BE PAID BY THE TRUSTEE--NO CRAM DOWN**

Claims in Section I, Part "E(2)(a)" are either debts incurred within 910 days of the Petition date secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor or debts incurred within one year of the petition date secured by any other thing of value.

The claims listed in Section I, Part "E(2)(a)" shall be paid by the Trustee as "SECURED" to the extent of the "ALLOWED AMOUNT" (per timely filed Proof of Claim not objected to by a party in interest.)  Such creditors shall retain their liens on the collateral described in Section I, Part "E(2)(a)" until the earlier of the payment of the underlying debt determined under non-bankruptcy law or discharge under Section 1328, and shall receive interest at the Annual Percentage Rate indicated from the date of the Petition.  The principal balance owing upon confirmation of the Plan on the allowed secured claim shall be reduced by the total of adequate protection paid less any interest (if applicable) paid to the respective creditor by the Trustee.

E.(2)(b)  **SECURED SECTION 1325(a)(9) CLAIMS TO BE PAID BY THE TRUSTEE--CRAM DOWN**

The claims listed in Section I, Part "E(2)(b)" shall be paid by the Trustee as "SECURED" to the extent of the LESSER OF the Claim Amount (per timely filed Proof of Claim not objected to by a party in interest), or the VALUE as shown of the collateral, which will be retained by the Debtor(s).  Any amount claimed in excess of the value shall automatically be "split" and treated as unsecured as indicated in Section I, Part "H" or "J", per 11 U.S.C. Sec. 506(a).  Such creditors shall retain their liens on the collateral described in Section I, Part "E(2)(b)" until the earlier of the payment of the underlying debt determined under non-bankruptcy law or discharge under Section 1328, and shall receive interest at the Annual Percentage Rate indicated from the date of confirmation hereof, or if the value shown is greater than the Claim Amount, from the date of the Petition, up to the amount by which the claim is over-secured.

**IF THE "VALUE" SHOWN IN "E(2)(b)" ABOVE IS LESS THAN THE "SCHED. AMT." SHOWN, THE "ALLOWED AMOUNT" OF THE SECURED PORTION OF THE CLAIM SHALL NOT EXCEED THE "VALUE" DETERMINED AT CONFIRMATION.**

**IN THE EVENT THAT A CREDITOR OBJECTS TO THE TREATMENT PROPOSED IN THIS PARAGRAPH, THE DEBTOR RETAINS THE RIGHT TO SURRENDER THE COLLATERAL TO THE CREDITOR IN SATISFACTION OF THE CREDITOR'S CLAIM.  IF THE DEBTOR ELECTS TO SURRENDER THE COLLATERAL, THEN THE AUTOMATIC STAY WILL BE TERMINATED AS TO SUCH COLLATERAL UPON ENTRY OF THE ORDER CONFIRMING THE PLAN, UNLESS OTHERWISE ORDERED BY THE COURT.**

**ABSENT SUCH OBJECTION, THE CREDITOR LISTED IN "E.(2)(b)" SHALL BE DEEMED TO HAVE "ACCEPTED" THE PLAN PER SECTION 1325(a)(5)(A) OF THE BANKRUPTCY CODE AND WAIVED ITS RIGHTS UNDER SECTION 1325(a)(5)(B) AND (C) OF THE BANKRUPTCY CODE.**

To the extent a secured claim NOT provided for in Section I Part "D", "E(1)" or "E(2)" is allowed by the Court, Debtor(s) will pay the claim 'DIRECT' per the contract.

Each secured claim shall constitute a separate class.

F.    **SATISFACTION OF CLAIM BY SURRENDER OF COLLATERAL**

The claims listed in Section I, Part "F" shall be satisfied as 'SECURED' to the extent of the VALUE of the collateral, as shown, by SURRENDER of the collateral by the Debtor(s) on or before Confirmation.  Any amount claimed in excess of the value of the collateral as shown, to the extent it is allowed, shall be automatically "split" and treated as indicated in Section I, Part "H" or "J" per 11 U.S.C. Sec 506(a).

Each secured claim shall constitute a separate class.

G.    **DIRECT PAYMENTS BY DEBTOR(S)**

All secured claims listed in Section I, Part "G" shall be paid 'DIRECT' by the Debtor(s) in accordance with the terms of their agreement, unless otherwise provided in Section IV.

Each secured claim shall constitute a separate class.

Case No:    11-33750-13
Debtor(s):  **Jose Angel Martinez, Jr.**

---

#### H.  PRIORITY CLAIMS OTHER THAN DOMESTIC SUPPORT OBLIGATIONS

All allowed claims (i.e., those for which a Proof of Claim is timely filed and not objected to by a party in interest) entitled to priority under Section 507(a) of the Bankruptcy Code, other than Section 507(a)(1) Domestic Support Obligations, will be paid in full (except as provided in Section 1322(a)(4)) in deferred installments, unless the holder of such claim agrees to a different treatment of such claim.  Failure to object to continuation of this Plan shall not be deemed "acceptance" of the "SCHED AMT." shown in Section I Part "H" hereof.  The claims listed in Section I, Part "H" shall be paid their allowed amount by the Trustee in full as Priority without interest at the monthly amount indicated or pro rata.

Priority claims for taxes are unsecured and shall not accrue interest or penalty subsequent to the filing, and such interest or penalty as might otherwise accrue thereafter shall be discharged upon completion of the Plan.

#### I.   CLASSIFIED UNSECURED CLAIMS

Classified unsecured claims shall be treated as allowed by the Court.

#### J.   GENERAL UNSECURED CLAIMS TIMELY FILED

All other claims not otherwise provided for herein shall be designated general unsecured claims.  Payments, if any, to general unsecured claims will be on a pro rata basis.  All allowed general unsecured claims shall be paid in an amount under the Plan which is not less than the amount that would be paid on such claims if the estate of the Debtor(s) were liquidated under Chapter 7 of the Bankruptcy Code on the date of filing of the Petition herein.

Any delinquencies under the Plan on allowed secured claims, allowed priority claims and allowed classified unsecured claims must be brought current before any payments are made on general unsecured claims.

General unsecured claims may be paid concurrently with secured, priority and classified unsecured claims so long as each secured, priority, and classified unsecured creditor is receiving not less than its monthly installment as provided herein.  If the indicated monthly amount is insufficient to fully pay the monthly payment provided for such allowed secured, priority or classified unsecured claim(s) respectively, the Trustee shall pay in the following order: each classification of such allowed secured claim(s), priority claim(s) and classified unsecured claim(s) pro rata until all such payments within each subclass are current, prior to any other payments to allowed general unsecured claims.

General unsecured claims totaling the amount indicated in Section I Part "J", shall be paid by the Trustee, a PRO RATA share of the unsecured creditors' pool estimated in Section I, Part "A" but not less than the amount indicated pursuant to Section 1325(a)(4) less allowed administrative and priority claims, or the estimated % (if any) shown above.

#### K.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

As provided in Section 1322(b)(7) of the Bankruptcy Code, the Debtor(s) assumes or rejects the executory contracts or unexpired leases with the parties so indicated in Section I, Part "K".

Assumed lease and executory contract arrearage amounts shall be paid by the Trustee as indicated in Section I Part "K".

#### L.  CLAIMS TO BE PAID

See Section I, Part "L" of the Plan.

#### M.  ADDITIONAL PLAN PROVISIONS

The provisions set forth in Section IV are additional Plan provisions not otherwise referred to herein.

#### N.  POST-PETITION CLAIMS

Claims filed under Section 1305 of the Bankruptcy Code shall be paid as allowed.  To the extent necessary, Debtor will modify this Plan.

#### O.  LATE FILED CLAIMS AND CLAIMS NOT FILED

Late filed unsecured claims on pre-petition debt shall be paid pro rata, only after all other timely filed unsecured claims are paid in full.  Such payment shall be before any payment on pre-petition non-pecuniary penalties.  Late filed claims on priority pre-petition claims shall be paid in full before any payment on late filed general unsecured pre-petition claims.  Late filed secured claims shall be paid in full before any payment on late filed priority claims.

A claim not filed with the Court will not be paid by the Trustee post-confirmation regardless of its treatment in Section I or on the AAPD.

Case No: 11-33750-13
Debtor(s): **Jose Angel Martinez, Jr.**

---

**P.  CLAIMS FOR PRE-PETITION NON-PECUNIARY PENALTIES, FINES, FORFEITURES, MULTIPLE, EXEMPLARY OR PUNITIVE DAMAGES**

Any unsecured claim for non-pecuniary penalty, fines, forfeitures, multiple, exemplary or punitive damages, expressly including IRS penalty to date of petition on unsecured and/or priority claims, shall be paid only a pro rata share of any funds remaining after all other unsecured claims including late filed claims, shall have been paid in full.

**Q.  CLAIMS FOR POST-PETITION PENALTIES AND INTEREST**

No interest, penalty, or additional charge shall be allowed on any pre-petition claims subsequent to the filing of the petition, unless expressly provided herein.

**R.  BUSINESS CASE OPERATING REPORTS**

Upon confirmation, business debtors are no longer required to file operating reports with the Trustee, unless the Trustee requests otherwise.  However, a final operating report through the date of confirmation is required if operating reports were previously required.  Confirmation hereof shall terminate the Trustee's duties to investigate or monitor the debtor's business affairs, assets or liabilities.

**S.  NO TRUSTEE'S LIABILITY FOR DEBTOR'S POST CONFIRMATION OPERATION AND BAR DATE FOR CLAIMS FOR PRECONFIRMATION OPERATIONS**

The Trustee shall not be liable for any claim arising from the post-confirmation operation of Debtor's business.  Any claims against the Trustee arising from the pre-confirmation operation of the Debtor's business must be filed with the Bankruptcy Court within sixty (60) days after entry by the Bankruptcy Court of the Order of Confirmation hereof, or be barred.

**T.  DISPOSAL OF DEBTOR'S NON-EXEMPT PROPERTY AND TRUSTEE PAYMENTS UPON POST CONFIRMATION CONVERSION OR DISMISSAL**

Debtor shall not dispose of or encumber any non-exempt property or release or settle any lawsuit or claim by Debtor(s), prior to discharge, without consent of the Trustee or order of the Court after notice to the Trustee and all creditors.  Upon conversion or dismissal of the case post confirmation, the Trustee shall disburse all funds on hand in accordance with this Plan.

**U.  ORDER OF PAYMENT**

All claims shown in Section I, will be paid in the following order from each disbursement, to the extent allowed:

1st --   Administrative Fees and DSO claims in "B"
2nd --   Assumed lease and executory contract arrearage claims in "K"
3rd --   Specified monthly dollar amounts to secured claims in "D", "E(1)", and "E(2)"
4th --   Pro-rata among attorney fees in "C"
5th --   Pro-rata among secured claims in "D", "E(1)" and "E(2)"
6th --   Specified monthly dollar amounts to priority claims in "H"
7th --   Pro-rata among priority claims in "H"
8th --   Specified monthly dollar amounts to special class claims in "I"
9th --   Pro-rata among special class claims in "I"
10th -- Pro-rata among claims in "J" other than late filed and penalty claims
11th -- Pro-rata among late filed priority claims in "H"
12th -- Pro-rata among late filed general unsecured claims in "J"
13th -- Pro-rata among penalty claims in "J".

Case No:    11-33750-13
Debtor(s):    **Jose Angel Martinez, Jr.**

---

## V.    TRUSTEE'S RECOMMENDATION CONCERNING CLAIMS ("TRCC") PROCEDURE

Pursuant to General Order 2006-01, Paragraph 8, as soon as practicable after the governmental claims bar date, the Trustee shall prepare and serve on Debtor's counsel, all creditors who were scheduled, all creditors who filed claims and any party that has filed a Notice of Appearance, a Trustee's Recommendation Concerning Claims ("TRCC") and Notice of Hearing and Pre-Hearing Conference thereon.  The TRCC may be deemed in part to be an Objection to Claims.  Objections to the TRCC shall be filed within thirty (30) days from the date of service of the TRCC.  Unless an objection is timely filed as to the treatment of any claim, the claim will be allowed or approved only as described in the TRCC, and such treatment will be binding on all parties without further order of the court.  All unresolved objections to the TRCC shall be deemed waived if not timely filed or if the proponent of any such objection fails to attend the Trustee's Pre-Hearing Conference or give the Trustee prior written notice that a hearing is necessary.  To the extent secured and/or priority claims being paid through the Plan by the Trustee are allowed for amounts in excess of the amounts provided for in this Plan, the Debtor(s) will promptly modify the Plan to provide for full payment of the allowed amount.  After the TRCC becomes final, should the Plan then become infeasible and/or "insufficient", the Trustee shall be permitted to move the Court to dismiss the case for such reason.

### SECTION III
### MOTION FOR VALUATION

Pursuant to Bankruptcy Rule 3012, for purposes of 11 U.S.C. Sec 506(a) and § 1325(a)(5) and for purposes of determination of the amounts to be distributed to holders of secured claims who do not accept the Plan, Debtor(s) hereby moves the Court to value the collateral described in Section I, Part "E" and Part "F", as the LESSER of the value set forth therein, or any value claimed on the proof of claim.    **Any objection to valuation shall be filed at least five (5) business days prior to the date of the Trustee's pre-hearing conference regarding Confirmation, or be deemed waived.**

Case No:   11-33750-13
Debtor(s):   **Jose Angel Martinez, Jr.**

---

**SECTION IV**
**ADDITIONAL PLAN PROVISIONS**

Additional (non-standard) Plan provisions, if any,   <u>CAPITALIZED, BOLD AND UNDERSCORED ARE AS FOLLOWS:</u>
**None.**

Respectfully submitted,                      Case No.:   **11-33750-13**

**/s/ Len L. Nary**
Len L. Nary, Debtor's(s') Attorney

**00786131**
State Bar Number

**/s/ Jose Angel Martinez, Jr.**
Jose Angel Martinez, Jr., Debtor

**Law Office of Len L. Nary**
3010 LBJ Freeway
Suite 1200
Dallas, Texas 75234
len@narylawfirm.com
Bar Number:   00786131
Phone:   (972) 888-6010

<div align="center">

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**
Revised 11-1-05

</div>

IN RE: §
**Jose Angel Martinez, Jr.** §   CASE NO:  **11-33750-13**
§
Debtor(s) §
§

<div align="center">

*AMENDED 11/16/2011*

</div>

**AUTHORIZATION FOR ADEQUATE PROTECTION DISBURSEMENTS**    DATED: 11/15/2011_____.

The undersigned Debtor(s) hereby request that payments received by the Trustee prior to confirmation be disbursed in accordance with General Order 2005-05, as indicated below:

| Periodic Payment Amount | **Variable Plan Payments.  See Monthly Schedule below.*** | |
|---|---|---|
| Disbursements | First (1) | Second (2) (Other) |
| Account Balance Reserve | $5.00 | See below* |
| Trustee Fee | $59.50 | See below* |
| Filing Fee | $0.00 | See below* |
| Noticing Fee | $130.20 | See below* |
| **Subtotal Expenses/Fees** | **$194.70** | **See below*** |
| Available for Adequate Protection, Attorney Fees and Undisputed Priority Claims: | **$405.30** | **See below*** |

**SECURED CREDITORS:**

| Name | Collateral | Scheduled Amount | Value of Collateral | Adequate Protection Percentage | Adequate Protection Payment Amount |
|---|---|---|---|---|---|
| | | | | | |

<div align="right">

Total Adequate Protection Payments for Secured Creditors:      **$0.00**

</div>

**PRIORITY CREDITORS:**

| Name | Collateral | Scheduled Amount | Value of Collateral | Adequate Protection Percentage | Adequate Protection Payment Amount |
|---|---|---|---|---|---|
| | | | | | |

<div align="right">

Total Adequate Protection Payments for Priority Creditors:      **$0.00**

</div>

**SPECIAL CLASS CREDITORS:**

| Name | Collateral | Scheduled Amount | Value of Collateral | Adequate Protection Percentage | Adequate Protection Payment Amount |
|---|---|---|---|---|---|
| | | | | | |

<div align="right">

Total Adequate Protection Payments for Special Class Creditors:      **$0.00**

Total Adequate Protection Payments:      **$0.00**

Funds Available For Debtor's Attorney First Disbursement:      **$405.30**
Funds Available For Debtor's Attorney Future Disbursements:      **See below***

Available For Secured Creditors as Authorized by the Plan:      **$1,462.50****

</div>

** Amount is based on the plan payment scheduled on the month following the month when the attorney fees are paid in full.
*Computer software provided by LegalPRO Systems, Inc., San Antonio, Texas - (210) 561-5300.*

(H) **Jose Angel Martinez, Jr.**
(W)
(C#) **11-33750-13**

**AUTHORIZATION FOR ADEQUATE PROTECTION DISBURSEMENTS**                    Page 2

**\*Monthly Schedule**

| Month | Plan Payment | Account Balance Reserve | Related Expense to Trustee | Filing Fees | Noticing Fees | Subtotal Expenses/ Fees | Available | Available for APD | Available for Attorney |
|-------|-------------|------------------------|---------------------------|-------------|---------------|------------------------|-----------|-------------------|------------------------|
| 1 | $600.00 | $5.00 | $59.50 | $0.00 | $130.20 | $194.70 | $405.30 | $0.00 | $405.30 |
| 2 | $1,625.00 | | $162.50 | | | $162.50 | $1,462.50 | $0.00 | $1,462.50 |
| 3 | $1,625.00 | | $162.50 | | | $162.50 | $1,462.50 | $0.00 | $1,462.50 |

DATED:  **11/16/2011**

**/s/ Len L. Nary**
_____          _____
Attorney for Debtor(s)                                            Trustee, Attorney for Trustee or Trustee's Representative

**/s/ Jose Angel Martinez, Jr.**
_____
Debtor

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

IN RE: **Jose Angel Martinez, Jr.**

_____

*Debtor*

CASE NO.    **11-33750-13**

_____

CHAPTER    **13**

*Joint Debtor*

## CERTIFICATE OF SERVICE

_____

I, the undersigned, hereby certify that on November 16, 2011, a copy of the attached Chapter 13 Plan, with any attachments, was served on each party in interest listed below, by placing each copy in an envelope properly addressed, postage fully prepaid in compliance with Local Rule 9013 (g).

**/s/ Len L. Nary**

_____

Len L. Nary
Bar ID:00786131
Law Office of Len L. Nary
3010 LBJ Freeway
Suite 1200
Dallas, Texas 75234
len@narylawfirm.com
(972) 888-6010

_____

AAA Financial Services
P.O. Box 851001
Dallas, Texas 75285-1001

ALLIED INTERSTATE
PO BOX 361626
COLUMBUS, OH 43236-9921

Attorney General Child Support *
Attn: Bankruptcy
2001 Beach Street, Suite 700
Fort Worth, Texas 76103-2315

Ace America Cash Express
c/o Creditors Bankruptcy Services
P.O. Box 740933
Dallas, Texas 75374

Ally Financial
P.O. Box 130424
Roseline, MN 55113

ATTORNEY GENERAL-CHILD
SUPPORT
ATTN: BANKRUPTCY SECTION
10260 N CENTRAL EXPWY, STE 210
DALLAS, TX 75231-3426

Ace Cash Advance
8700 Main, #110
Frisco, Texas 75034

ATTORNEY GENERAL
COLLECTIONS DIVISION
BANKRUPTCY DIVISION
PO BOX 12548
AUSTIN TX 78711-2548

Autonation Financial
xxxxxxxxxxxx8696
3120 Ryder Trail S
Earth City, MO 63045

Alamo Tax Loans
6840 San Pedro Ave., #201
San Antonio, Texas 78216

ATTORNEY GENERAL
MAIN JUSTICE BLDG RM 5111
10TH & CONSTITUTION AVE NW
WASHINGTON DC 20530

BAC Home Loans Servicing
fka Countrywide Home
7105 Corporate Drive
Plano, Texas 75024

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

IN RE: **Jose Angel Martinez, Jr.**

CASE NO. **11-33750-13**

*Debtor*

CHAPTER **13**

*Joint Debtor*

## CERTIFICATE OF SERVICE
(Continuation Sheet #1)

| | | |
|---|---|---|
| BAC Home Loans Servicing, LP *<br>1757 Tapo Canyon Road<br>Mail Stop CA6-913-LB-11<br>Simi Valley, CA 93063 | Bank Of America<br>3210<br>De5-019-03-07<br>Newark, DE 19714 | BARRETT DAFFIN, ET AL<br>15000 SURVEYOR BLVD<br>STE 100, DEPT 4000<br>ADDISON TX 75001 |
| BAC Home Loans Servicing, LP *<br>1757 Tapo Canyon Road<br>Mail Stop CA6-913-LB-11<br>Simi Valley, CA 93063 | Bank of America<br>BAC Home Loans Servicing, LP<br>P.O. Box 650070<br>Dallas, Texas 75265 | BENEFICIAL<br>HRS<br>PO BOX 4153<br>CAROL STREAM , IL 60197-4153 |
| BAC/Countrywide Home Lending *<br>xxx9591<br>400 Countrywide Way<br>Mail Stop SV-46<br>Simi Valley, CA 93065 | Bank of America<br>P.O. Box 851001<br>Dallas, Texas 75285-1001 | CALVALRY PORTFOLIO SERVICES<br>500 Summit Lake Drive, Suite 400<br>Valhalla, NY 10595 |
| BAC/Countrywide Home Lending *<br>xxx9591<br>400 Countrywide Way<br>Mail Stop SV-46<br>Simi Valley, CA 93065 | Bank of America<br>P.O. Box 15710<br>Wilmington, DE 19886-5710 | CALVALRY PORTFOLIO SERVICES<br>500 Summit Lake Drive, Suite 400<br>Valhalla, NY 10595 |
| Bank Of America<br>0975<br>Attn: Bankruptcy NC4-105-02-99<br>PO Box 26012<br>Greensboro, NC 27410 | Bank of America<br>Home Loans Servicing<br>P.O. Box 650070<br>Dallas, Texas 75265 | Candicia LLC<br>c/o Weinstein & Riley<br>2001 Western Ave., Suite 400<br>Seattle, WA 98121 |
| Bank Of America<br>8137<br>4060 Ogletown/stanton Rd<br>Newark, DE 19713 | Bank of America, N.A.<br>8664<br>8333 Ridgepoint Dr<br>Irving, TX 75063 | Capital 1 Bank<br>xxxxxxxx3983<br>Attn: C/O TSYS Debt Management<br>PO Box 5155<br>Norcross, GA 30091 |
| Bank Of America<br>7954<br>De5-019-03-07<br>Newark, DE 19714 | Bank of America, N.A.<br>8664<br>8333 Ridgepoint Dr<br>Irving, TX 75063 | Capital One<br>P.O. Box 60599<br>City of Industry, CA 91716-0599 |

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

IN RE:  **Jose Angel Martinez, Jr.**

CASE NO.  **11-33750-13**

*Debtor*

CHAPTER  **13**

*Joint Debtor*

## CERTIFICATE OF SERVICE
(Continuation Sheet #2)

| | | |
|---|---|---|
| Capital One Bank<br>By American Infosource as Agent<br>P.O. Box 71083<br>Charlotte, NC 28272-1083 | Chase Equity Home Loan *<br>P.O. Box 24714<br>Columbus, OH 43224 | Color Graphix<br>979 C.R. 404<br>Gainesville, TX 76240 |
| Cash America<br>2700 Texoma Parkway<br>Sherman, Texas 75090 | Chevron Credit Bank NA<br>PO Box 9560<br>Concord CA 94524-1901 | Compass Bank *<br>P.O. Box 29075<br>Phoenix, AZ  85038-9075 |
| Celina ISD<br>McCreary, Veselka, Bragg & Allen<br>700 Jeffrey Way, Suite 100<br>P. O. Box 1269<br>Round Rock, Texas 78680 | Chryslr Fin<br>xxxxxx9986<br>27777 Franklin Rd<br>Southfield, MI 48034 | COMPTROLLER OF PUBLIC ACCTS<br>REVENUE ACCOUNTING DIVISION<br>BANKRUPTCY SECTION<br>AUSTIN TX 78711-3528 |
| CELINA ISD *<br>C/O Perdue, Brandon, Fielder<br>P.O. Box 13430<br>Arlington, Texas 76094-0430 | Chryslr Fin<br>xxxxxx0285<br>27777 Franklin Rd<br>Southfield, MI 48034 | Countrywide Home Lending *<br>xxxx8664<br>Attention: Bankruptcy  SV-314B<br>PO Box 5170<br>Simi Valley, CA 93062 |
| Cenlar Fsb<br>xxxxx8776<br>425 Phillips Blvd<br>Ewing, NJ 08618 | Citibank Usa<br>xxxxxxxxxx3997<br>Attn.: Centralized  Bankruptcy<br>PO Box 20507<br>Kansas City, MO 64195 | CR Evergreen LLC<br>MS 550<br>P.O. Box 91121<br>Seattle, WA 98111-9221 |
| Chase<br>xxxxxxx9093<br>Po Box 15298<br>Wilmington, DE 19850 | COLLIN COUNTY TAX<br>C/O GAY, MCCALL, ISAACKS . . .<br>777 E 15TH STREET<br>PLANO, TX  75074 | CST Company<br>P.O. Box 224768<br>Dallas, Texas 75222-4768 |
| Chase<br>P.O. Box 94014<br>Palatine, IL 60094-4014 | COLLIN COUNTY TAX<br>C/O GAY, MCCALL, ISAACKS . . .<br>777 E 15TH STREET<br>PLANO, TX  75074 | DALLAS COUNTY TAX ASSESSOR-<br>COLLECTOR<br>RECORDS BLDG. 1ST FLOOR<br>500 ELM STREET<br>DALLAS, TX 75202-3304 |

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

IN RE:  **Jose Angel Martinez, Jr.**                                    CASE NO.  **11-33750-13**

_____
*Debtor*

_____                          CHAPTER  **13**
*Joint Debtor*

## CERTIFICATE OF SERVICE
(Continuation Sheet #3)

---

| | | |
|---|---|---|
| Dell Commercial Credit<br>P.O. Box 689020<br>Des Moines, IA 50368-9020 | Exxon Mobil<br>Processing Center<br>P.O. Box 688938<br>Des Moines, IA 50368-8938 | GMAC<br>P.O. Box 130424<br>Roseville, MN 55113 |
| Department Stores Nat'l Bank<br>NCO Financial Systems<br>P.O. Box 137<br>Columbus, GA 31902-0137 | FINA<br>P.O. BOX 659585<br>SAN ANTONIO, TX 78265-9585 | Great American Leasing Co.<br>P.O. Box 660831<br>Dallas, Texas 75266-0831 |
| Discover Bank<br>DFS Services LLC<br>P.O. Box 3025<br>New Albany, OH 43054-3025 | FORD MOTOR CREDIT BANKRUPTCY<br>PO BOX 537901<br>LIVONIA, MI 48153-7901 | Griffith, Jay & Michael, LLP<br>2200 Forest Park Blvd.<br>Ft. Worth, Texas 76110-1732 |
| Discover Fin Svcs Llc<br>xxxxxxxx3800<br>Po Box15316<br>Wilmington, DE 19850 | G M A C *<br>xxxxxxxx1342<br>P O Box 380901<br>Bloomington, MN 55438 | GroGreen, Inc.<br>P.O. Box 861360<br>Plano, Texas 75086-1360 |
| ECMC<br>P.O. Box 75906<br>Saint Paul, MN 55175 | GE Moneybank<br>P.O. Box 960061<br>Orlando, FL 32896-0061 | HOME DEPOT<br>PO BOX 6029<br>THE LAKES, NV 88901-6029 |
| ER Solutions<br>500 SW 7th Street Bldg. A 100<br>Renton, WA 98055 | Gemb/lincoln Mercury Q<br>xxxxxxxx0300<br>Po Box 981439<br>El Paso, TX 79998 | Home Depot Business M.C.<br>P.O. Box 6925<br>The Lakes, NV 88901-6925 |
| EXPERIAN<br>PROFILE MAINTENANCE<br>PO BOX 9558<br>ALLEN, TX 75013 | Gisela Cruz<br>2631 Clearview<br>Dallas, Texas 75233 | Hsbc Bank<br>xxxxxxxxxxx9859<br>ATTN: BANKRUPTCY<br>PO BOX 5253<br>Carol Stream, IL 60197 |

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

IN RE: **Jose Angel Martinez, Jr.**

_____

_Debtor_

CASE NO.  **11-33750-13**

_____

_Joint Debtor_

CHAPTER  **13**

## CERTIFICATE OF SERVICE
(Continuation Sheet #4)

---

| | | |
|---|---|---|
| Hsbc Bank<br>xxxxxxxxxxxx7010<br>ATTN: BANKRUPTCY<br>PO BOX 5253<br>Carol Stream, IL 60197 | J.S. Paluch Co.<br>P.O Box 2703<br>Schiller Park, IL 60176 | Michelle Martinez<br>104 E. Broadway<br>Prosper, Texas 75098 |
| HSBC Bank Nevada<br>By PRA Receivables Mgt.<br>P.O. Box 12907<br>Norfolk, VA 23541 | Jose Angel Martinez, Jr.<br>3519 Heritage Trail<br>Celina, Texas 75009 | Michelle Martinez<br>P.O. Box 413<br>Prosper, Texas 75078 |
| Hsbc Mortgage Corp Usa *<br>xxxxx5651<br>2929 Walden Ave<br>Depew, NY 14043 | LINEBARGER GOGGAN, ET. AL<br>2323 BRYAN ST, STE 1600<br>DALLAS, TX 75201 | Midwest R&S Corp<br>xxxx6214<br>5th Street at 5th Ave.<br>Brookings, SD 57006 |
| HSBC Mortgage Corp.<br>Bankruptcy Dept.<br>P.O. Box 2118<br>Eagan, MN 55121-4201 | Lowes<br>P.O. Box 530970<br>Atlanta, GA 30353-0970 | MR THOMAS POWERS<br>CHAPTER 13 TRUSTEE<br>125 E JOHN CARPENTER FWY<br>11TH FL STE 1100<br>IRVING TX 75062 |
| Hsbc/rs<br>xxxxxxxxxx5810<br>HSBC Retail Services Attn: Bankruptcy<br>PO Box 15522<br>Wilmington, DE 19850 | Macys/fdsb<br>xxxxxxxxxx0820<br>Macy's Bankruptcy<br>PO Box 8053<br>Mason, OH 45040 | Nathan C. Cace, P.C.<br>10300 Heritage Boulevard<br>Suite 140<br>San Antonio, Texas 78216 |
| INTERNAL REVENUE SERVICE<br>P.O. BOX 21126<br>STOP N781<br>PHILADELPHIA, PA<br>19114-0326 | Macys/fdsb<br>xxxxxxxxxx7120<br>Macy's Bankruptcy<br>PO Box 8053<br>Mason, OH 45040 | National Capital Mgt.<br>8245 Tournament Drive<br>Suite 230<br>Memphis, TN 38125 |
| INTERNAL REVENUE SERVICE *<br>P.O. BOX 21126<br>Stop N781<br>PHILADELPHIA, PA<br>19114-0326 | Mel Martinez<br>3519 Heritage Trail<br>Celina, Texas 75009 | North Star Capital Acq.<br>c/o Jefferson Capital Systems<br>P.O. Box 7999<br>Saint Clound, MN 56302-9617 |

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

IN RE:  **Jose Angel Martinez, Jr.**

_____

*Debtor*

CASE NO.  **11-33750-13**


_____

*Joint Debtor*

CHAPTER  **13**

## CERTIFICATE OF SERVICE
(Continuation Sheet #5)

---

| | | |
|---|---|---|
| ORCHARD BANK<br>PO BOX 60102<br>CITY OF INDSTRY, CA 91716-0102 | Portfolio Recovery Associates<br>POB 41067<br>Norfolk, VA 23541 | Receivables Mgt. Corporation<br>P.O. Box 2471<br>Woburn, MA 01888 |
| Parker & Montgomery<br>P.O. Box 1147<br>McKinney, Texas 75070 | Portfolio Recovery Associates<br>POB 41067<br>Norfolk, VA 23541 | ReconTrust<br>1800 Tapo Canyon Road<br>Mail Stop CA6-914-01-02<br>Simi Valley, CA 93063 |
| Paul Ryan Richardson Insurance<br>4011 W. Plano Parkway, #124<br>Plano, Texas 75093 | Portfolio Recovery Associates<br>POB 41067<br>Norfolk, VA 23541 | Richard Dale Relyea, LP *<br>P.O. Box 842516<br>Dallas, Texas 75284-2516 |
| Pitney Bowes Inc.<br>P.O.Box 856390<br>Louisville, KY 40285-6390 | PRA Receivables Mgt.<br>c/o Sams Club<br>POB 41067<br>Norfolk, VA 23541 | Sallie Mae<br>xxxxxxxxxxxxxxxxxx0831<br>1002 Arthur Dr<br>Lynn Haven, FL 32444 |
| Portfolio Recovery Associates<br>POB 41067<br>Norfolk, VA 23541 | PRA Receivables Mgt.<br>As Agent of Portfolio Recovery<br>POB 41067<br>Norfolk, VA 23541 | Sams Club<br>xxxxxxxx0984<br>Attention:  Bankruptcy Department<br>PO Box 103104<br>Roswell, GA 30076 |
| Portfolio Recovery Associates<br>POB 41067<br>Norfolk, VA 23541 | Prober & Raphael<br>20750 Ventura Blvd.Suite 100<br>Woodland Hills, CA 91364 | SANMAR<br>30500 S E 79TH ST.<br>ISSAQUAH, WA 98027 |
| Portfolio Recovery Associates<br>POB 41067<br>Norfolk, VA 23541 | Progressive Insurance<br>P.O. Box 129<br>Grand River, OH 44045 | Sears/cbsd<br>xxxxxxxx1396<br>133200 Smith Rd<br>Cleveland, OH 44130 |

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

IN RE:  **Jose Angel Martinez, Jr.**

*Debtor*

CASE NO.  **11-33750-13**

CHAPTER  **13**

*Joint Debtor*

## CERTIFICATE OF SERVICE
(Continuation Sheet #6)

| | | |
|---|---|---|
| Sears/cbsd<br>xxx0463<br>133200 Smith Rd<br>Cleveland, OH 44130 | Target<br>xxxx0896<br>PO Box 9475<br>Minneapolis, MN 55440 | UNITED STATES ATTORNEY<br>3RD FL<br>1100 COMMERCE ST<br>DALLAS TX 75242 |
| Shell Card Center<br>P.O. Box 689151<br>Des Moines, IA 50368-9151 | Tcc Credit Union<br>xxxxxx0007<br>10103 Shoreview Rd<br>Dallas, TX 75238 | UNITED STATES TRUSTEE<br>RM 9C60<br>1100 COMMERCE ST<br>DALLAS TX 75242 |
| Silver Leaf Resorts, Inc<br>1221 Riverbend, Suite 120<br>Dallas, Texas 75247 | Texaco / Citibank<br>xxxxxx3336<br>Attn.: Centralized Bankruptcy<br>PO Box 20507<br>Kansas City, MO 64195 | Valero / Diamond Shamrock<br>P.O. Box 631<br>Amarillo, Texas 79105-0631 |
| Silverleaf Club<br>P.O. Box 359<br>Dallas, Texas 75221 | TEXAS ALCOHOLIC BEV COM<br>LICENSE AND PERMITS DIV<br>PO BOX 13127<br>AUSTIN TX 78711-3127 | Viewpoint Bank<br>xxxxxxxx0144<br>720 E. Arapaho<br>Richardson, TX 75083 |
| Sm Servicing<br>xxxxxxxxx101T<br>11100 Usa Parkway<br>Fishers, IN 46038 | TEXAS WORKFORCE COM<br>TEC BLDG BANKRUPTCY<br>101 E 15TH ST<br>AUSTIN TX 78778 | Washington Mutual Home<br>xxxxxxxxxx0000<br>324 W Evans St<br>Florence, SC 29501 |
| Sst/cigpf1<br>xxxx7599<br>201 N Walnut St # De1-10<br>Wilmington, DE 19801 | Thomas O'Bailey & Assoc.<br>6060 N. Central Expressway<br>Suite 400<br>Dallas, Texas 75206 | Washington Mutual Home<br>xxxxxxxxxx2897<br>324 W Evans St<br>Florence, SC 29501 |
| Student Loan Mkt Assn<br>xxxxxxxxx1013<br>11100 Usa Parkway<br>Fishers, IN 46038 | THOMAS POWERS<br>125 E JOHN CARPENTER FWY<br>11TH FL STE 1100<br>IRVING, TX 75062 | Washington Mutual Home<br>xxxx7889<br>324 W Evans St<br>Florence, SC 29501 |

Label Matrix for local noticing
0539-3
Case 11-33750-bjh13
Northern District of Texas
Dallas
Tue Nov 15 18:40:06 CST 2011

Celina ISD
co Michael Reed
P.O. Box 1269
Round Rock, TX 78680-1269

1100 Commerce Street
Room 1254
Dallas, TX 75242-1305

AAA FINANCIAL SERVICES
P.O. BOX 851001
DALLAS, TEXAS 75285-1001

ACE AMERICA CASH EXPRESS
C/O CREDITORS BANKRUPTCY SERVICES
P.O. BOX 740933
DALLAS, TEXAS 75374-0933

ACE CASH ADVANCE
8700 MAIN, #110
FRISCO, TEXAS 75033-3073

ALAMO TAX LOANS
6840 SAN PEDRO AVE., #201
SAN ANTONIO, TEXAS 78216-7201

ALLIED INTERSTATE
PO BOX 361626
COLUMBUS, OH 43236-1626

ATTORNEY GENERAL
COLLECTIONS DIVISION
BANKRUPTCY DIVISION
PO BOX 12548
AUSTIN TX 78711-2548

ATTORNEY GENERAL
MAIN JUSTICE BLDG RM 5111
10TH & CONSTITUTION AVE NW
WASHINGTON DC 20530-0001

ATTORNEY GENERAL CHILD SUPPORT *
ATTN: BANKRUPTCY
PO BOX 12017 CREDIT GROUP
AUSTIN, TX 78711-2017

ATTORNEY GENERAL-CHILD SUPPORT
ATTN: BANKRUPTCY SECTION
10260 N CENTRAL EXPWY, STE 210
DALLAS, TX 75231-3426

AUTONATION FINANCIAL
3120 RYDER TRAIL S
EARTH CITY, MO 63045-1518

Ace Cash Express
c/o B-Line, LLC
MS 550
PO Box 91121
Seattle, WA 98111-9221

Ally Financial (f/k/a GMAC
PO BOX 130424
Roseville MN 55113-0004

Attorney General of Texas
Region 9 Bankruptcy Section
2001 Beach Street, Suite 700
Fort Worth, TX 76103-2315

BAC HOME LOANS SERVICING
FKA COUNTRYWIDE HOME
7105 CORPORATE DRIVE
PLANO, TEXAS 75024-4100

BAC HOME LOANS SERVICING, LP *
1757 TAPO CANYON ROAD
MAIL STOP CA6-913-LB-11
SIMI VALLEY, CA 93063-3390

BAC Home Loan Servicing LP
400 National Way, Mail Stop CA6-919-01-2
Simi Valley, California 93065-6414

BAC Home Loans Servicing, LP
c/o BDFTE, LLP
15000 Surveyor Blvd Suite 100
Addison, TX 75001-4417

(c)BAC/COUNTRYWIDE HOME LENDING *
MAIL STOP SV-46
400 NATIONAL WAY
SIMI VALLEY CA  93065-6414

BANK OF AMERICA
4060 OGLETOWN/STANTON RD
NEWARK, DE 19713

BANK OF AMERICA
ATTN: BANKRUPTCY NC4-105-02-99
PO BOX 26012
GREENSBORO, NC 27420-6012

BANK OF AMERICA
BAC HOME LOANS SERVICING, LP
P.O. BOX 650070
DALLAS, TEXAS 75265-0070

BANK OF AMERICA
DE5-019-03-07
NEWARK, DE 19714

BANK OF AMERICA
HOME LOANS SERVICING
P.O. BOX 650070
DALLAS, TEXAS 75265-0070

BANK OF AMERICA
P.O. BOX 15710
WILMINGTON, DE 19886-5710

BANK OF AMERICA
P.O. BOX 851001
DALLAS, TEXAS 75285-1001

BANK ONE/CHASE *
8333 RIDGEPOINT DR
IRVING, TX 75063-5812

BARRETT DAFFIN, ET AL
15000 SURVEYOR BLVD
STE 100, DEPT 4000
ADDISON TX 75001-4417

BENEFICIAL
HRS
PO BOX 4153
CAROL STREAM , IL 60197-4153

(c)BANK OF AMERICA, N.A.
MAIL STOP SV-46
400 NATIONAL WAY
SIMI VALLEY CA  93065-6414

Bank of America, N.A.
c/o Prober & Raphael, ALC
20750 Ventura Blvd, Ste 100
Woodland Hills, CA 91364-6207


CANDICA L.L.C.
C O WEINSTEIN AND RILEY, PS
2001 WESTERN AVENUE, STE 400
SEATTLE, WA 98121-3132

CANDICIA LLC
C/O WEINSTEIN & RILEY
2001 WESTERN AVE., SUITE 400
SEATTLE, WA 98121-3132

(p)CAPITAL ONE
PO BOX 30285
SALT LAKE CITY UT 84130-0285


CAPITAL ONE
P.O. BOX 60599
CITY OF INDUSTRY, CA 91716-0599

CAPITAL ONE BANK
BY AMERICAN INFOSOURCE AS AGENT
P.O. BOX 71083
CHARLOTTE, NC 28272-1083

CASH AMERICA
2700 TEXOMA PARKWAY
SHERMAN, TEXAS 75090-1982


CASH AMERICA/CASHLAND
17 TRIANGLE PARK DRIVE
CINCINNATI, OH 45246-3411

CELINA ISD *
C/O PERDUE, BRANDON, FIELDER
P.O. BOX 13430
ARLINGTON, TEXAS 76094-0430

CENLAR FSB
425 PHILLIPS BLVD
EWING, NJ 08618-1430


CHASE
P.O. BOX 94014
PALATINE, IL 60094-4014

CHASE
PO BOX 15298
WILMINGTON, DE 19850-5298

CHASE EQUITY HOME LOAN *
P.O. BOX 24714
COLUMBUS, OH 43224-0714


CHEVRON CREDIT BANK NA
PO BOX 9560
CONCORD CA 94524-1956

(p)CHRYSLER FINANCIAL
27777 INKSTER RD
FARMINGTON HILLS MI 48334-5326

CITIBANK USA
ATTN.: CENTRALIZED  BANKRUPTCY
PO BOX 20507
KANSAS CITY, MO 64195-0507


COLLIN COUNTY TAX ASSES.
2300 BLOOMDALE RD, #2324
PO BOX 8046
MCKINNEY, TX  75070-8046

COLLIN COUNTY TAX ASSESSOR/COLLECTOR
C/O GAY MCCALL ISAACKS ET AL
777 E 15TH ST
PLANO TX 75074-5799

COLLIN COUNTY TAX ASSESSOR/COLLECTOR
PO BOX 8046
MCKINNEY TX 75070-8046


COLOR GRAPHIX
979 C.R. 404
GAINESVILLE, TX 76240

COMPASS BANK
P.O. BOX 10566
BIRMINGHAM, AL 35296-0001

COMPASS BANK *
P.O. BOX 29075
PHOENIX, AZ  85038-9075


COMPTROLLER OF PUBLIC ACCTS
REVENUE ACCOUNTING DIVISION
BANKRUPTCY SECTION
AUSTIN TX 78711-3528

COUNTRYWIDE HOME LENDING *
ATTENTION: BANKRUPTCY  SV-314B
PO BOX 5170
SIMI VALLEY, CA 93062-5170

CR EVERGREEN LLC
MS 550
P.O. BOX 91121
SEATTLE, WA 98111-9221


CST COMPANY
P.O. BOX 224768
DALLAS, TEXAS 75222-4768

Cavalry Portfolio Services, LLC
500 Summit Lake Drive Suite 400
Valhalla, NY 10595-2322

DALLAS COUNTY TAX ASSESSOR-COLLECTOR
RECORDS BLDG. 1ST FLOOR
500 ELM STREET
DALLAS, TX 75202-3304

DELL COMMERCIAL CREDIT
P.O. BOX 689020
DES MOINES, IA 50368-9020

DEPARTMENT STORES NAT'L BANK
NCO FINANCIAL SYSTEMS
P.O. BOX 137
COLUMBUS, GA 31902-0137

DISCOVER BANK
DFS SERVICES LLC
P.O. BOX 3025
NEW ALBANY, OH 43054-3025


DISCOVER FIN SVCS LLC
PO BOX15316
WILMINGTON, DE 19850-5316

Discover Bank
DB Servicing Corporation
PO Box 3025
New Albany, OH  43054-3025

ECMC
P.O. BOX 75906
SAINT PAUL, MN 55175-0906


ER SOLUTIONS
500 SW 7TH STREET BLDG. A 100
RENTON, WA 98057-2983

EXPERIAN
PROFILE MAINTENANCE
PO BOX 9558
ALLEN, TX 75013-9558

EXXON MOBIL
PROCESSING CENTER
P.O. BOX 688938
DES MOINES, IA 50368-8938


FINA
P.O. BOX 659585
SAN ANTONIO, TX 78265-9585

(p)FORD MOTOR CREDIT COMPANY
PO BOX 6275
DEARBORN MI 48121-6275

G M A C *
P O BOX 380901
BLOOMINGTON, MN 55438-0901


GE MONEYBANK
P.O. BOX 960061
ORLANDO, FL 32896-0061

GEMB/LINCOLN MERCURY Q
PO BOX 981439
EL PASO, TX 79998-1439

GMAC
P.O. BOX 130424
ROSEVILLE, MN 55113-0004


GREAT AMERICAN LEASING CO.
P.O. BOX 660831
DALLAS, TEXAS 75266-0831

GRIFFITH, JAY & MICHAEL, LLP
2200 FOREST PARK BLVD.
FT. WORTH, TEXAS 76110-1732

GROGREEN, INC.
P.O. BOX 861360
PLANO, TEXAS 75086-1360


HOME DEPOT
PO BOX 6029
THE LAKES, NV  88901-6029

HOME DEPOT BUSINESS M.C.
P.O. BOX 6925
THE LAKES, NV 88901-6925

HSBC BANK
ATTN: BANKRUPTCY
PO BOX 5253
CAROL STREAM, IL 60197-5253


HSBC BANK NEVADA
BY PRA RECEIVABLES MGT.
P.O. BOX 12907
NORFOLK, VA 23541-0907

HSBC MORTGAGE CORP USA *
2929 WALDEN AVE
DEPEW, NY 14043-2690

HSBC MORTGAGE CORP.
BANKRUPTCY DEPT.
P.O. BOX 2118
EAGAN, MN 55121-4201


HSBC Mortgage Services, Inc.
P.O. Box 21188
Eagan, Minnesota 55121-0188

(p)HSBC BANK
ATTN BANKRUPTCY DEPARTMENT
PO BOX 5213
CAROL STREAM IL 60197-5213

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346


J.S. PALUCH CO.
P.O BOX 2703
SCHILLER PARK, IL 60176-0703

JOSE ANGEL MARTINEZ, JR.
3519 HERITAGE TRAIL
CELINA, TEXAS 75009-5502

JPMorgan Chase Bank, N.A.
c/o Codilis & Stawiarski, P.C.
650 North Sam Houston Parkway East
Suite 450
Houston, Texas 77060-5908

LAW OFFICE OF LEN L. NARY
3010 LBJ FREEWAY
SUITE 1200
DALLAS, TEXAS 75234-2710

LINEBARGER GOGGAN ET AL
2323 BRYAN ST, STE 1600
DALLAS, TX 75201-2644

LOWES
P.O. BOX 530970
ATLANTA, GA 30353-0970

MACYS/FDSB
MACY'S BANKRUPTCY
PO BOX 8053
MASON, OH 45040-8053

MEL MARTINEZ
3519 HERITAGE TRAIL
CELINA, TEXAS 75009-5502

MICHELLE MARTINEZ
104 E. BROADWAY
PROSPER, TEXAS 75078-2933

MICHELLE MARTINEZ
3519 HERITAGE TRAIL
CELINA, TEXAS 75009-5502

MICHELLE MARTINEZ
P.O. BOX 413
PROSPER, TEXAS 75078-0413

MR THOMAS POWERS
CHAPTER 13 TRUSTEE
125 E JOHN CARPENTER FWY
11TH FL STE 1100
IRVING TX 75062-2324

NATIONAL CAPITAL MGT.
8245 TOURNAMENT DRIVE
SUITE 230
MEMPHIS, TN 38125-1741

NORTH STAR CAPITAL ACQ.
C/O JEFFERSON CAPITAL SYSTEMS
P.O. BOX 7999
SAINT CLOUND, MN 56302-7999

Nathan C. Cace, P.C.
10300 Heritage Boulevard
Suite 140
San Antonio, Texas 78216-3924

National Capital Management, LLC.
8245 Tournament Drive
Suite 230
Memphis, TN 38125-1741
USA

ORCHARD BANK
PO BOX 60102
CITY OF INDSTRY, CA 91716-0102

PARKER & MONTGOMERY
P.O. BOX 1147
MCKINNEY, TEXAS 75070-8148

PAUL RYAN RICHARDSON INSURANCE
4011 W. PLANO PARKWAY, #124
PLANO, TEXAS 75093-5620

PITNEY BOWES INC.
P.O.BOX 856390
LOUISVILLE, KY 40285-6390

(p)PORTFOLIO RECOVERY ASSOCIATES LLC
PO BOX 41067
NORFOLK VA 23541-1067

PRA RECEIVABLES MGT.
AS AGENT OF PORTFOLIO RECOVERY
POB 41067
NORFOLK, VA 23541-1067

PRA RECEIVABLES MGT.
C/O SAMS CLUB
POB 41067
NORFOLK, VA 23541-1067

PROBER & RAPHAEL
20750 VENTURA BLVD.SUITE 100
WOODLAND HILLS, CA 91364-6207

PROGRESSIVE INSURANCE
P.O. BOX 129
GRAND RIVER, OH 44045-0129

PROPERTY TAX SOLUTIONS*
8080 N. CENTRAL EXPRESSWAY
SUITE 880
DALLAS, TEXAS 75206-1865

RECEIVABLES MGT. CORPORATION
P.O. BOX 2471
WOBURN, MA 01888-0871

RECONTRUST
1800 TAPO CANYON ROAD
MAIL STOP CA6-914-01-02
SIMI VALLEY, CA 93063-6712

RICHARD DALE RELYEA, LP *
P.O. BOX 842516
DALLAS, TEXAS 75284-2516

SALLIE MAE
1002 ARTHUR DR
LYNN HAVEN, FL 32444-1683

SAMS CLUB
ATTENTION: BANKRUPTCY DEPARTMENT
PO BOX 103104
ROSWELL, GA 30076-9104

SEARS/CBSD
133200 SMITH RD
CLEVELAND, OH 44130

SHELL CARD CENTER
P.O. BOX 689151
DES MOINES, IA 50368-9151

SILVERLEAF CLUB
P.O. BOX 359
DALLAS, TEXAS 75221-0359

SM SERVICING
11100 USA PARKWAY
FISHERS, IN 46037-9203

SST/CIGPF1
201 N WALNUT ST # DE1-10
WILMINGTON, DE 19801-2920

STUDENT LOAN MKT ASSN
11100 USA PARKWAY
FISHERS, IN 46037-9203

SanMar
PO Box 529
Preston, WA 98050-0529

TARGET
PO BOX 9475
MINNEAPOLIS, MN 55440-9475

TCC CREDIT UNION
10103 SHOREVIEW RD
DALLAS, TX 75238-4413

TEXACO / CITIBANK
ATTN.: CENTRALIZED BANKRUPTCY
PO BOX 20507
KANSAS CITY, MO 64195-0507

TEXAS ALCOHOLIC BEV COM
LICENSE AND PERMITS DIV
PO BOX 13127
AUSTIN TX 78711-3127

TEXAS WORKFORCE COM
TEC BLDG BANKRUPTCY
101 E 15TH ST
AUSTIN TX 78778-0001

THOMAS O'BAILEY & ASSOC.
6060 N. CENTRAL EXPRESSWAY
SUITE 400
DALLAS, TEXAS 75206-5269

THOMAS POWERS
125 E JOHN CARPENTER FWY
11TH FL STE 1100
IRVING, TX 75062-2324

The Bank of New York Mellon, et al
c/o Bank of America, N.A.
Bk. Dept., Mail Stop CA6-919-01-23
400 National Way
Simi Valley, CA 93065-6414

U.S. TRUSTEE-NORTHERN DISTRICT
1100 COMMERCE, ROOM 976
DALLAS, TX 75242-1011

UNITED STATES ATTORNEY
3RD FL
1100 COMMERCE ST
DALLAS TX 75242-1074

UNITED STATES TRUSTEE
RM 9C60
1100 COMMERCE ST
DALLAS TX 75242-9998

VALERO / DIAMOND SHAMROCK
P.O. BOX 631
AMARILLO, TEXAS 79105-0631

VIEWPOINT BANK
720 E. ARAPAHO
RICHARDSON, TX 75081-2213

WASHINGTON MUTUAL HOME
324 W EVANS ST
FLORENCE, SC 29501-3430

Jose Angel Martinez Jr.
3519 Heritage Trail
Celina, TX 75009-5502

Len L. Nary
3010 LBJ Freeway, Suite 1200
Dallas, TX 75234-2710

Thomas Powers
125 E. John Carpenter Frwy., Suite 1200
Irving, TX 75062-2288

UST U.S. Trustee
1100 Commerce Street
Room 976
Dallas, TX 75242-1011

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

CAPITAL 1 BANK
ATTN: C/O TSYS DEBT MANAGEMENT
PO BOX 5155
NORCROSS, GA 30091

CHRYSLR FIN
27777 FRANKLIN RD
SOUTHFIELD, MI 48034

FORD MOTOR CREDIT BANKRUPTCY
PO BOX 537901
LIVONIA, MI 48153-7901

HSBC/RS
HSBC RETAIL SERVICES ATTN: BANKRUPTCY
PO BOX 15522
WILMINGTON, DE 19850

INTERNAL REVENUE SERVICE
P.O. BOX 21126
STOP N781
PHILADELPHIA, PA
19114-0326

(d)INTERNAL REVENUE SERVICE *
P.O. BOX 21126
STOP N781
PHILADELPHIA, PA
19114-0326

PORTFOLIO RECOVERY ASSOCIATES
POB 41067
NORFOLK, VA 23541

(d)Portfolio Recovery Associates, LLC
c/o Bank Of America
POB 41067
Norfolk VA 23541

(d)Portfolio Recovery Associates, LLC
c/o Beneficial Texas Inc.
POB 41067
Norfolk VA 23541

(d)Portfolio Recovery Associates, LLC
c/o M-shell Consumer
PO Box 41067
Norfolk VA 23541

(d)Portfolio Recovery Associates, LLC
c/o Sams Club
POB 41067
Norfolk VA 23541

(d)Portfolio Recovery Associates, LLC
c/o Sears
POB 41067
Norfolk VA 23541

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

BAC/COUNTRYWIDE HOME LENDING *
400 COUNTRYWIDE WAY
MAIL STOP SV-46
SIMI VALLEY, CA 93065

Bank of America, N.A.
400 Countrywide Way
Mail Stop SV-46
Simi Valley, CA 93065

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)BAC Home Loans Servicing, LP

(u)Bank of America, N.A.

(u)Collin County Tax Assessor-Collector

(u)JPMorgan Chase Bank, N.A.

(u)ALAMO TAX LOANS
6840 SAN PEDRO AVE.

(d)Celina ISD
co Michael Reed
P.O. Box 1269
Round Rock, TX 78680-1269

(d)Compass Bank
P.O. Box 10566
Birmingham, AL 35296-0001

(d)LAW OFFICE OF LEN L. NARY *
3010 LBJ FREEWAY
SUITE 1200
DALLAS, TEXAS 75234-2710

(u)MIDWEST LOAN SERVICES

End of Label Matrix
Mailable recipients    142
Bypassed recipients      9
Total                  151

# EXHIBIT 7



U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Barbara J. Houser*

**United States Bankruptcy Judge**

**Signed January 03, 2012**

---

Office of the Chapter 13 Trustee
125 E. John Carpenter Freeway, Suite #1100
Irving, Texas 75062
(214) 855-9200 /(214) 965-0756

In the United States Bankruptcy Court
For the Northern District of Texas
Dallas Division

In Re:                                                          Case # 11-33750-BJH-13
        JOSE ANGEL MARTINEZ JR

        Debtor(s)

---

Order Confirming Chapter 13 Plan, Valuing Collateral, Allowing Debtor's Attorney's Fees,
Providing for a Trustee's Recommendation Concerning Claims, and Other Related Matters
(With Revisions to the Plan as Specified Herein)

---

It having been determined after at least twenty-eight (28) days notice to all creditors, no
hearing having been requested and no Objection to Confirmation or Valuation having been
timely filed, or if filed, having been overruled or withdrawn:

That the Debtor'(s') Chapter 13 Plan ("Plan") complies with Chapter 13 and all applicable
provisions of Title 11, United States Code;

That any fee, charge or amount required under Chapter 13 of Title 28 of the United States
Code or by the Plan, to be paid before Confirmation, has been paid.

That the Plan has been proposed in good faith and not by any means forbidden by law;

That the value, as of the effective date of the Plan, of property to be distributed under
the Plan on account of each unsecured claim is not less than the amount that would be paid
on such claim if the estate of the Debtor(s) were liquidated under Chapter 7 of Title 11 of
the United States Code on such date;

Order Confirming Chapter 13 Plan, Page 2
JOSE ANGEL MARTINEZ JR
11-33750-BJH-13


That the Plan provides that the holders of secured claims who have not accepted the Plan
shall retain their liens until the earlier of the payment of the underlying debt
determined under non-bankruptcy law or discharge under Section 1328; and if this case is
dismissed or converted without completion of the Plan, such lien shall also be retained
by such holder to the extent recognized by applicable non-bankruptcy law; and the value,
as of the effective date of the Plan, of property to be distributed under the Plan on
account of secured claims whose holders have not accepted the Plan is not less than the
allowed amount of those claims; and as to the holders of secured claims who have not
accepted the Plan, if property to be distributed pursuant to the Plan is in the form of
periodic payments, such payments will be in equal monthly amounts; and if the holder of
the claim is secured by personal property, the amount of such payments will not be less
than an amount sufficient to provide the holder of such claim adequate protection during
the period of the Plan; or the Debtor will surrender the property securing such claim to
such holder;


That the action of the Debtor in filing the petition was in good faith;


That the Debtor has paid all amounts that are required to be paid under a Domestic Support
Obligation that first became payable after the date of the filing of the petition, if the
Debtor is required by a judicial or administrative order or by statute, to pay such
Domestic Support Obligation;


That the Debtor has filed all applicable Federal, State, and Local Tax Returns as required
by Section 1308 of Title 11 of the United States Code;


That no Objection to Confirmation has been filed by the Trustee or any unsecured creditor,
or if so, that the debtor(s) will pay under the Plan, all Debtor's(s') projected disposable
income for the applicable commitment period, to be applied to payments to unsecured
creditors under the Plan;


That Confirmation of Debtor's(s') Plan and the Valuation set forth therein have been
recommended by the Standing Chapter 13 Trustee; and


That no further operating reports are necessary or required to be filed with the Standing
Chapter 13 Trustee.


**IT IS THEREFORE ORDERED** that the Debtor's(s') Chapter 13 Plan filed 11/16/2011 is
confirmed.


**IT IS FURTHER ORDERED** the Debtor(s) shall pay variable payments to the Trustee beginning
on Wed Jul 06, 2011 as follows:


Debtor(s) proposes to pay to the trustee the sum of $600.00 for the first
month; $1,625.00 per month for the next 4 months; $1,950.00 per month for
the next 7 months; $1,977.00 per month for the final 48 months for a total
of $115,646.00 in 60 months.


**IT IS FURTHER ORDERED** that the allowed non-priority unsecured claims will be paid pro-rata
from the greater of an unsecured creditor's pool of $        .00 or non-exempt property of
$  8,592.00.

Order Confirming Chapter 13 Plan, Page 3
JOSE ANGEL MARTINEZ JR
11-33750-BJH-13


**IT IS FURTHER ORDERED** that the Debtor's(s') Attorney, LEN L NARY                , is allowed a
total fee not to exceed $3,500.00 with $3,059.00 to be paid through the plan by the
Trustee, unless a greater amount is approved by separate Order of the Court after hearing
on a fee application.

**IT IS FURTHER ORDERED** that for purposes of distribution under the Plan, Section 506 and
Section 1325 (a),(5) of the Bankruptcy Code, the value of collateral securing any claim
herein and treatment of the claim secured thereby is as set forth in Section I, Paragraphs
"E", "F" and "G" of the Debtor's(s') Chapter 13 Plan and Motion for Valuation herein
confirmed, EXCEPT:

| Creditor Name | Collateral Description | Scheduled Amount | Collateral Value | Interest Rate | Treatment |
|---|---|---|---|---|---|
| ATTORNEY GENERAL OF TEXAS | Child Support | $ 1,209.50 | $      .00 | .00% | Pro Rata |
| INTERNAL REVENUE SERVICE | Taxes - Priority | $ 17,719.27 | $      .00 | .00% | Pro Rata |

**IT IS FURTHER ORDERED** that if the Claim is not paid during the term (Approximate) shown
in Section I, Paragraphs D,E, H and/or I of the Plan, the Trustee shall continue to pay
the Claim until it is paid in full, as stated in Section II, Paragraph U of the Plan;

**IT IS FURTHER ORDERED** that the Trustee is authorized to receive, endorse, and apply to
any delinquent payments under the Plan, any Income Tax Refund payable to debtor(s) during
the pendency of this case, and apply any IRS refund in excess of $2000 pro-rata to Debtor's
allowed general unsecured creditors, per Paragraph 10 of General Order 2009-03.

**IT IS FURTHER ORDERED** that the Debtors shall not dispose of or encumber any non-exempt
property prior to discharge without consent of the Trustee or order of the Court after
notice to the Trustee and all creditors.

**IT IS FURTHER ORDERED** that the Standing Chapter 13 Trustee is hereby discharged from any
liability from the Debtor's(s') operation of business and from any further duty to
investigate the business of the Debtor or to require any further operating reports from
the Debtor.

**IT IS FURTHER ORDERED** that pursuant to General Order 2009-03, Paragraph 8, as soon as
practicable after the governmental claims bar date, the Trustee shall prepare and serve
on Debtor's counsel, all creditors who were scheduled, all creditors who filed claims
and any party that has filed a Notice of Appearance, a Trustee's Recommendation Concerning
Claims ("TRCC") and notice of hearing and pre-hearing conference thereon.  The TRCC may be
deemed in part to be an Objection to Claims.  Objections to the TRCC shall be filed within
thirty (30) days from the date of service of the TRCC.  Unless an objection is timely
filed as to the treatment of any claim, the claim will be allowed or approved only as
described in the TRCC, and such treatment will be binding on all parties without further
order of the Court. All unresolved objections to the TRCC shall be deemed waived if
not timely filed or if the proponent of any such obligation fails to attend the Trustee's
pre-hearing conference or give the Trustee prior written notice that a hearing is
necessary.


### End of Order ###

Order Confirming Modified Chapter 13 Plan, Page 4
JOSE ANGEL MARTINEZ JR
11-33750-BJH-13

Changes approved by:


/s/ Len Nary

# EXHIBIT 8

**Office of the Standing Chapter 13 Trustee**
**125 E. John Carpenter Freeway**
**Suite 1100, 11th Floor**
**Irving, TX  75062**
**(214) 855-9200 / (214) 965-0756  (Fax)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

IN RE:                                                            Case No:  **11-33750-BJH-13**
**JOSE ANGEL MARTINEZ JR**
          **Debtor**                                            Hearing Date: **1/24/2013**

**Notice of Pre-Hearing Conference and Hearing on**
**"Trustee's Recommendation Concerning Claims, Objection to Claims and Plan**
**Modification (if required)"**

TO:      ALL PARTIES IN INTEREST

A pre-hearing conference with the Chapter 13 Trustee concerning the Trustee's Recommendation Concerning Claims, Objection to Claims and Plan Modification (if required) ("TRCC") will be held at **8:30 a.m.** on **1/24/2013** at 125 E. John Carpenter Freeway, Suite 1100, 11th Floor, Irving, TX  75062.

Any  objection to the Pleading not resolved or defaulted at the Trustee's pre-hearing conference will be heard by the Court at 2:00 p.m. on the same day at 1100 Commerce Street, Fourteenth Floor, Dallas, Texas.

Pursuant to General Order 2010-01, unless an objection is timely filed as to the treatment of any claim or modification, the claim or modification will be allowed or approved as described in the TRCC, and such treatment will be final and binding on all parties.

TO BE CONSIDERED, ANY OBJECTION OR RESPONSE MUST BE MADE IN WRITING, FILED WITH THE COURT, AND A COPY SERVED ON ANY AFFECTED CREDITORS AND ON THE FOLLOWING PARTIES NO LATER THAN 12/06/2012.

| | |
|---|---|
| **Debtor:** | **JOSE ANGEL MARTINEZ JR, 3519 HERITAGE TRAIL, CELINA, TX  75009** |
| **Attorney:** | **LEN L NARY, 3010 LBJ FREEWAY, SUITE 1200, DALLAS, TX  75234** |
| **Court:** | **CLERK'S OFFICE, US BANKRUPTCY COURT, 1100 COMMERCE ST., 12TH FLOOR, DALLAS, TEXAS, 75202** |
| **Trustee:** | **TRUSTEE'S OFFICE, 125 E. JOHN CARPENTER FREEWAY, SUITE #1100, IRVING, TEXAS 75062** |

By: /s/ Thomas D. Powers

Thomas D. Powers, Chapter 13 Trustee
State Bar No. 16218700

### Certificate of Service

I hereby certify that a copy of the foregoing "Notice of Hearing on Trustee's Recommendation Concerning Claims, Objection to Claims and Plan Modification (if required)" and "Trustee's Recommendation Concerning Claims, Objection to Claims and Plan Modification (if required)" was served on the following parties at the addresses listed below by United States First Class Mail or via

Debtor: Jose Angel Martinez Jr, 3519 Heritage Trail, Celina, Tx 75009

Attorney: Len L Nary, 3010 Lbj Freeway, Suite 1200, Dallas, Tx 75234

Creditor(s): Aaa Financial Services, Po Box 851001, Dallas, Tx 75285

Ace Americas Cash Exp, Creditors Bankruptcy Service, Po Box 740933, Dallas, Tx 75374-0933

Alamo Tax Loans, 6840 San Pedro Ave No 201, San Antonio, Tx 78216

Allied Interstate, Po Box 361626, Columbus, Oh 43236-9921

Ally Financial, Po Box 130424, Roseville, Mn 55113

Ally Financial, Po Box 78367, Phoenix, Az 85062

Attorney General Of Texas, 2001 Beach Street Suite 700, Fort Worth, Tx 76103-2315

Attorney General Of Texas, Collections Div-Bankruptcy Sec, Po Box 12548, Austin, Tx 78711-2548

Attorney General Of Texas, Po Box 659791, San Antonio, Tx 78265

Autonation Financial, 3120 Ryder Trail S, Earth City, Mo 63045

Bac Home Loan Servicing Lp, Fka Countrywide Home Loans, 7105 Corporate, Plano, Tx 75024

Bac Home Loans Servicing Lp, Fka Countrywide Home Loans Ser, 400 Countrywide Way Ms Sv 46, Simi Valley, Ca 93065

Bank Of America Na, 400 Countrywide Way, Mail Stop Sv-46, Simi Valley, Ca 93065

Bank Of America Na, Bac Home Loan Servicing Lp, 7105 Corporate Dr Tx29820303, Plano, Tx 75024

Bank Of America, 4060 Ogletown Stanton Rd, Newark, De 19713

Bank Of America, Home Loans Servicing, Po Box 650070, Dallas, Tx 75265-0070

Bank Of America, Po Box 15710, Wilmington, De 19886-5710

Bank Of America, Po Box 26012, Nc41050299, Greensboro, Nc 27410

Bank One Chase, 8333 Ridgepoint Dr, Irving, Tx 75063

Barrett Daffin Frappier And, Engel Llp, 15000 Surveyor Blvd Ste 100, Addison, Tx 75001

Barrett Daffin Frappier Turner, 15000 Surveyor Blvd Ste 100, Addison, Tx 75001

Candica Llc, Co Weinstein And Riley Ps, 2001 Western Ave Ste 400, Seattle, Wa 98121

Candica Llc, Co Weinstein And Riley Ps, Po Box 3978, Seattle, Wa 98124-3978

Capital 1 Bank, Po Box 60599, City Of Industry, Ca 91716

Capital 1 Bank, Tsys Debt Management, Po Box 5155, Norcross, Ga 30091

Capital One Bank Usa Na, By American Infosource Lp, Po Box 71083, Charlotte, Nc 28272-1083

Cash America Cashland, 17 Triangle Park Drive, Cincinnati, Oh 45246

Cash America, 2700 Texoma Parkway, Sherman, Tx 75090

Cavalry Portfolio Service Llc, 500 Summit Lake Drive Ste 400, Valhalla, Ny 10595-1340

Celina Isd, Mccreary Veselka Bragg Allen, Po Box 1269, Round Rock, Tx 78680

Cenlar Fsb, 425 Phillips Blvd, Ewing, Nj 08618

Chase Equity Home Loan, Po Box 24714, Columbus, Oh 43224

Chase, Po Box 15298, Wilmington, De 19850

Chase, Po Box 94014, Palatine, Il 60094

Chevron Usa, Po Box 5010 Section 230, Concord, Ca 94524-1991

Chryslr Fin, 27777 Franklin Rd, Southfield, Mi 48034

Citibank Usa Sears, Po Box 182149, Columbus, Oh 43228

Citibank, Exception Payment Processing, Po Box 6305, The Lakes, Nv 88901-6305

Codilis And Stawiarski, 650 N Sam Houston Pkwy East, Suite 450, Houston, Tx 77060

Collin County Tax Asses, 2300 Bloomdale Rd No 2324, Po Box 8046, Mckinney, Tx 75070-8046

Collin County Tax Assessor Col, Co Gay Mccall Isaacks Et Al, 777 E 15Th St, Plano, Tx 75074

Collin County Tax Assessor Col, Po Box 8046, Mckinney, Tx 75070

Color Graphix, 979 Cr 404, Gainesville, Tx 76240

Compass Bank Unsecured, Po Box 201347, Arlington, Tx 76006

Compass Bank, Po Box 10566, Birmingham, Al 35296

Compass, Po Box 10566, Birmingham, Al 35296

Countrywide Home Lending, Bankruptcy Sv 314B, Po Box 5170, Simi Valley, Ca 93062

Cr Evergreen Ii Llc, Ms 550, Po Box 91121, Seattle, Wa 98111-9221

Cst Company, Po Box 224768, Dallas, Tx 75222-4768

Dell Commercial Credit, Po Box 689020, Des Moines, Ia 50368-9020

Department Stores Natl Bank, Nfinancial Systems, Po Box 137, Columbus, Ga 31902-0137

Discover Bank, Db Servicing Corporation, P O Box 3025, New Albany, Oh 43054-3025

Ecmc, Po Box 75906, St Paul, Mn 55175

Er Solutions, 500 Sw 7Th Street, Bldg A 100, Renton, Wa 98055

Experian, Po Box 9558, Allen, Tx 75013

Exxon Mobil, Processing Center, Po Box 688938, Des Moines, Ia 50368-8938

Fina, Po Box 659585, San Antonio, Tx 78265

Ford Motor Credit, Po Drawer 55 953 Chapter 13, Po Box 55000, Detroit, Mi 48255-0953

G M A C, Po Box 380901, Bloomington, Mn 55438

Gay Mccall Isaacks Gordon And, 777 East 15Th St, Plano, Tx 75074

Ge Money, Po Box 960061, Orlando, Fl 32896-0061

Gemb Lincoln Mercury Q, Po Box 981439, El Paso, Tx 79998

Gmac, Po Box 130424, Saint Paul, Mn 55113

Great American Leasing Co, Po Box 660831, Dallas, Tx 75266-0831

Griffith Jay And Michael Llp, 2200 Forest Park Blvd, Ft Worth, Tx 76110-1732

Grogreen Inc, Po Box 861360, Plano, Tx 75086-1360

Home Depot Business Mc, Po Box 6925, The Lakes, Nv 88901-6925

Home Depot, Po Box 6029, The Lankes, Nv 88901

Hon John Ashcroft, Attorney General Of The United, 1Oth And Pennsylvania Ave, Washington, Dc 20538

Household Finance Corp Iii, Hsbc Mtg Services Bk Dept, 636 Grand Regency Blvd, Brandon, Fl 33510

Household Finance Corporation, Co Hsbc Mortgage Services Inc, P O Box 21188, Eagan, Mn 55121

Hsbc Bank Nevada, By Pra Receivables Mgt, Po Box 12907, Norfolk, Va 23541

Hsbc Bank, Po Box 5253, Carol Stream, Il 60197

Hsbc Mortgage Corp Usa, 2929 Walden Ave, Depew, Ny 14043

Hsbc Mortgage Corporation Usa, Bankruptcy Department, Po Box 2118, Eagan, Mn 55121-4201

Hsbc Rs, Hsbc Retail Services Bankruptc, Po Box 15522, Wilmington, De 19850

Internal Revenue Service, Po Box 7317, Philadelphia, Pa 19101-7317

Internal Revenue Service, Po Box 7346, Philadelphia, Pa 19101-7346

Jose Angel Martinez Jr, 3519 Heritage Trail, Celina, Tx 75009

Js Paluch Company, Po Box 2703, Schiller Park, Il 60176

Law Office Of Len L Nary, 3010 Lbj Freeway Suite 1200, Dallas, Tx 75234

Len L Nary, 3010 Lbj Freeway, Suite 1200, Dallas, Tx 75234

Linebarger Goggan Blair Et Al, 2323 Bryan, Ste 1600, Dallas, Tx 75201

Linebarger Goggan Blair Sampso, 2323 Bryan St, 1720 Univision Center, Dallas, Tx 75201-2644

Lowes, Po Box 530970, Atlanta, Ga 30353

Macys Fdsb, Macys Bankruptcy, Po Box 8053, Mason, Oh 45040

Mccreary Veselka Bragg Allen, Po Box 1269, Round Rock, Tx  78680

Mel Martinez, 3519 Heritage Trail, Celina, Tx  75009

Michelle Martinez, 104 E Broadway, Prosper, Tx  75098

Michelle Martinez, 3519 Heritage Trail, Celina, Tx  75009

Michelle Martinez, Po Box 413, Prosper, Tx  75078

National Capital Management, 8245 Tournament Dr Ste 230, Memphis, Tn  38125

North Star Capital Acquisition, Jefferson Capital Systems Llc, Po Box 7999, Saint Cloud, Mn  56302-9617

Parker And Montgomery, Po Box 1147, Mckinney, Tx  75070

Paul Ryan Richardson Insurance, 4011 W Plano Parkway, No 124, Plano, Tx  75093

Pitney Bowes, Po Box 856390, Louisville, Ky  40285

Portfolio Recovery Assoc, Po Box 41067, Norfolk, Va  23541

Portfolio Recovery Associates, By Pra Receivables Management, Po Box 12914, Norfolk, Va  23541

Portfolio Recovery Associates, By Pra Receivables Management, Po Box 41067, Norfolk, Va  23541

Pra Receiables Management, Sams Club, Po Box 41067, Norfolk, Va  23451-1067

Pra Receivables Management Llc, As Agent Of Portfolio Recovery, Po Box 41067, Norfolk, Va  23541

Pra Receivables Management, Portfolio Recovery Assoc, Po Box 12914, Norfolk, Va  23541

Pra Receivables Mgmt Llc, Portfolio Recovery Assoc Llc, Po Box 12914, Norfolk, Va  23541

Pra Receivables Mgmt Llc, Portfolio Recovery Assoc Llc, Po Box 41067, Norfolk, Va  23541

Prober And Raphael A Law Corpo, 20750 Ventura Blvd Suite 100, Woodland Hills, Ca  91364

Prober And Raphael, 20750 Ventura Blvd Ste 100, Woodland Hills, Ca  91364

Progressive Insurance, Po Box 129, Grand River, Oh  44045

Property Tax Solutions, 8080 N Central Expwy, Ste 880, Dallas, Tx  75206

Quantum3 Group Llc, Po Box 788, Kirkland, Wa  98083-0788

Receivables Mgt Corporation, Po Box 2471, Woburn, Ma  01888

Recontrust, 1800 Tapo Canyon Road, Mail Stop Ca69140102, Simi Valley, Ca  93063

Richard Dale Relyea Lp, Po Box 842516, Dallas, Tx  75284-2516

Sallie Mae, 220 Lasley Ave, Hanover Twp, Pa  18706-1496

Sanmar, Po Box 529, Preston, Wa  98045

Sanmar, Po Box 529, Preston, Wa  98050

Silverleaf Club, Po Box 359, Dallas, Tx  75221

Silverleaf Club, Silverleaf Resorts, 1221 Riverbend Dr No 120, Dallas, Tx  75247

Sm Servicing, 11100 Usa Parkway, Fishers, In  46038

Sst Cigpf1, 201 N Walnut St, No De1 10, Wilmington, De  19801

State Comptroller, Revenue Accounting Div Bankrup, Po Box 13528, Austin, Tx  78711

Student Loan Mkt Assn, 11100 Usa Parkway, Fishers, In  46038

Target, Po Box 9475, Minneapolis, Mn  55440

Tcc Credit Union, 10103 Shoreview Road, Dallas, Tx  75238-4413

Texaco Citibank, Attn Centralized Bankruptcy, Po Box 20507, Kansas City, Mo  64195

Texas Alcoholic Beverage Comm, Licenses And Permits Division, Po Box 13127, Austin, Tx  78711-3127

Texas Employment Commission, Tec Building Bankruptcy, 101 East 15Th Street, Austin, Tx  78714-9080

The Bank Of New York Mellon, Bank Of America Bac Home Loans, 400 National Way Ms Ca69190123, Simi Valley, Ca  93065

The Bank Of New York Mellon, Bank Of America Bac Home Loans, 7105 Corporate Dr Mstx29820303, Plano, Tx  75024

Thomas Obailey And Assoc, 6060 N Central Expressway, Suite 400, Dallas, Tx  75206

United States Attorney, 801 Cherry Street, Unit 4, Fort Worth, Tx  76102-6882

Valero Diamond Shamrock, Po Box 631, Amarillo, Tx  79105-0631

Viewpoint, 720 E Arapaho, Richardson, Tx  75083

**JOSE ANGEL MARTINEZ JR**
 **Trustee's Recommendation Concerning Claims, Objection to Claims and Plan Modification (if required)**

Washington Mutual, 324 W Evans St, Florence, Sc 29501

Dated: 11/6/2012

By: /s/ Thomas D. Powers
Thomas D. Powers, Chapter 13 Trustee
State Bar No. 16218700

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

IN RE:                                                              Case No:  11-33750-BJH-13
**JOSE ANGEL MARTINEZ JR**
                    **Debtor**                                     Hearing Date: 1/24/2013

## Trustee's Recommendation Concerning Claims, Objection to Claims and Plan Modification (if required)

The Trustee hereby objects to the following claims for the reason(s) indicated, pursuant to Bankruptcy Rule 3007:

### I.

### OBJECTION -- NO PROOF OF CLAIM FILED

The following creditors were scheduled by the Debtor. No Proof of Claim has been filed by them or on their behalf, as required by Bankruptcy Rule 3002(a). The "bar date" for filing claims pursuant to Bankruptcy Rule 3002(c) has passed. Therefore the claims should be DISALLOWED.

| T'ee # | Creditor's Name | Sched Amount | Sched Amount |
|---|---|---|---|
| 1 | AAA FINANCIAL SERVICES | Unsecured | $ 0.00 |
| 8 | AUTONATION FINANCIAL | Unsecured | $ 0.00 |
| 158 | CELINA ISD | Secured | $ 5,779.66 |
| 28 | CHASE EQUITY HOME LOAN | Secured | $ 82,087.00 |
| 31 | CITIBANK | Unsecured | $ 0.00 |
| 81 | PITNEY BOWES | Secured | $ 0.00 |
| 96 | SM SERVICING | Unsecured | $ 0.00 |
| 99 | TARGET | Unsecured | $ 0.00 |
| 100 | TCC CREDIT UNION | Unsecured | $ 0.00 |
| 105 | VIEWPOINT | Unsecured | $ 0.00 |
| 106 | WASHINGTON MUTUAL | Unsecured | $ 0.00 |
| 159 | WASHINGTON MUTUAL | Unsecured | $ 0.00 |

### II.

### SPECIFIC OBJECTIONS

The Trustee hereby objects to the following claims, for the reason(s) indicated in Column 7. The claims should be ALLOWED/DISALLOWED as indicated in Column 4 for the amount and class indicated in Columns 5 and 6 respectively.

**JOSE ANGEL MARTINEZ JR**
 **Trustee's Recommendation Concerning Claims, Objection to Claims and Plan Modification (if required)**

| Column 1<br>Pacer # | Column 2<br>Creditor Name | Column 3<br>Claim | Column 4<br>Allow/<br>Disallow | Column 5<br>Amount | Column 6<br>Class | Column 7<br>Reason<br>(See Below) | Column 8<br>T'ee # |
|---|---|---|---|---|---|---|---|
| 20 | SANMAR | $ 546.01 | Disallow | $546.01 | Unsecured | 6 | 144 |

### CODE: "REASON(S)" FOR CLAIM OBJECTION

6 The claim filed by the creditor appears to be a duplicate of a previously filed claim. Therefore the claim should be DISALLOWED.

### III.

### TRUSTEE'S RECOMMENDATIONS CONCERNING ALLOWED CLAIMS

The Trustee hereby recommends the ALLOWANCE of the following claims for the amount and in the class listed below.

| T'ee<br>Clm # | DSO Creditors | Collateral | | Claim Amount | | | Paid By |
|---|---|---|---|---|---|---|---|
| 7 | ATTORNEY GENERAL OF TEXAS | CHILD SUPPORT | | $ 1,209.50 | | | Trustee |

| T'ee<br>Clm # | Secured 910 Creditors<br>No Cram Down | Collateral | Claim Amount | Value | % | Paid By |
|---|---|---|---|---|---|---|
| | *** NONE *** | | | | | |

| T'ee<br>Clm # | Secured Creditors | Collateral | Claim Amount | Value | % | Paid By |
|---|---|---|---|---|---|---|
| 11 | BANK OF AMERICA NA | 1ST LN/HOME/ARREARS | $ 63,861.76 | $ 313,000.00 | 0.00 | Trustee |
| 122 | BANK OF AMERICA NA | 1ST LN/HOME/CURRENT | $ 211,637.61 | $ 313,000.00 | 0.00 | Direct by Debtor |
| 24 | CELINA ISD | REAL PROPERTY | $ 2,493.30 | $ 2,493.30 | 0.00 | Late-Filed |
| 112 | COLLIN COUNTY TAX ASSESSOR CC | REAL PROPERTY | $ 2,995.03 | $ 2,995.03 | 0.00 | Withdrawn |
| 114 | COLLIN COUNTY TAX ASSESSOR CC | REAL PROPERTY | $ 1,702.80 | $ 1,702.80 | 0.00 | Trustee |
| 152 | HOUSEHOLD FINANCE CORP III | 2ND LN/408 PAULA/ARREARS | $ 236.99 | $ 125,000.00 | 0.00 | Surrender |
| 153 | HOUSEHOLD FINANCE CORP III | 2ND LN/408 PAULA/CURRENT | $ 21,012.02 | $ 31,091.09 | 0.00 | Surrender |
| 145 | SILVERLEAF CLUB | TIMESHARE | $ 10,156.36 | $ 19,126.00 | 0.00 | Surrender |
| 141 | THE BANK OF NEW YORK MELLON | 2ND LN/HOME/ARREARS | $ 6,676.56 | $ 101,362.39 | 0.00 | Trustee |
| 142 | THE BANK OF NEW YORK MELLON | 2ND LN/HOME/CURRENT | $ 77,540.36 | $ 101,362.39 | 0.00 | Direct by Debtor |
| 10 | THE BANK OF NEW YORK MELLON | 1ST LN/408 PAULA/ARREARS | $ 10,399.97 | $ 125,000.00 | 0.00 | Surrender |
| 121 | THE BANK OF NEW YORK MELLON | 1ST LN/408 PAULA/CURRENT | $ 93,908.91 | $ 125,000.00 | 0.00 | Surrender |

| T'ee<br>Clm # | Priority Creditors | Comment | | Claim Amount | | | Paid By |
|---|---|---|---|---|---|---|---|
| 65 | INTERNAL REVENUE SERVICE | TAXES | | $ 17,719.27 | | | Trustee |

| T'ee<br>Clm # | Unsecured - Special Class Creditors | Collateral | | Claim Amount | | | Paid By |
|---|---|---|---|---|---|---|---|
| | *** NONE *** | | | | | | |

| T'ee<br>Clm # | Unexpired Leases | Collateral | Claim Amount | Value | % | Paid By |
|---|---|---|---|---|---|---|
| | *** NONE *** | | | | | |

**JOSE ANGEL MARTINEZ JR**
 Trustee's Recommendation Concerning Claims, Objection to Claims and Plan Modification (if required)

| T'ee Clm # | Unsecured Creditors | Comment | Claim Amount |
|---|---|---|---|
| 118 | ALLY FINANCIAL | | $ 2,001.50 |
| 149 | CANDICA LLC | CAPITAL ONE | $ 6,520.48 |
| 151 | CASH AMERICA CASHLAND | | $ 516.66 |
| 78 | CAVALRY PORTFOLIO SERVICE LLC | HSBC/ORCHARD | $ 2,569.91 |
| 137 | CAVALRY PORTFOLIO SERVICE LLC | HSBC | $ 537.41 |
| 35 | COMPASS BANK | Late Filed - | $ 1,452.10 |
| 43 | DISCOVER BANK | | $ 13,262.02 |
| 134 | INTERNAL REVENUE SERVICE | TAXES | $ 4,532.73 |
| 133 | INTERNAL REVENUE SERVICE | PENALTY | $ 10,877.49 |
| 143 | NATIONAL CAPITAL MANAGEMENT | FIA CARD SERVICES | $ 7,105.37 |
| 15 | PORTFOLIO RECOVERY ASSOCIATES | BANK OF AMERICA | $ 5,042.42 |
| 93 | PORTFOLIO RECOVERY ASSOCIATES | SEARS/CITIBANK | $ 658.15 |
| 94 | PORTFOLIO RECOVERY ASSOCIATES | SHELL/CITIBANK | $ 1,427.54 |
| 18 | PRA RECEIVABLES MANAGEMENT | HSBC/BENEFICIAL | $ 15,023.34 |
| 92 | PRA RECEIVABLES MANAGEMENT | GE MONEY/SAMS CLUB | $ 560.18 |
| 12 | PRA RECEIVABLES MGMT LLC | BANK OF AMERICA | $ 8,721.21 |
| 3 | QUANTUM3 GROUP LLC | ACE CASH EXPRESS/BLINE | $ 1,226.80 |
| 136 | SANMAR | | $ 546.01 |
| 144 | SANMAR | | $ 546.01 |

**IV.**

**PLAN MODIFICATION, subject to feasibiltiy**

Pursuant to 11 U.S.C. Section 1329, and in accordance with General Order 2010-01, the Trustee requests the following Modification of the Debtor Confirmed Plan, subject to feasibility, herein:

- No Modification Needed.

By: /s/ Thomas D. Powers
Thomas D. Powers, Chapter 13 Trustee
State Bar No. 16218700

# EXHIBIT 9



U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Barbara J. Houser*

**United States Bankruptcy Judge**

**Signed February 12, 2013**

---

Office of the Standing Chapter 13 Trustee
125 E. John Carpenter Freeway
Suite 1100, 11th Floor
Irving, TX 75062
(214) 855-9200

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE:                                                          CASE NO:  11-33750-BJH-13
JOSE ANGEL MARTINEZ JR
                      DEBTOR

---

### Order on Trustee's Recommendation Concerning Claims, Objection to Claims and Plan Modification (if required)

At Dallas in said District:

On this day came on for hearing the Trustee's Recommendation Concerning Claims, Objections to Claims and Plan Modification (if required) (hereinafter referred to as "TRCC") dated 11/6/12, and any responses filed thereto.

After considering the pleadings, the evidence and stipulations, if any, and the argument of counsel, the Court finds that the following order should be entered:

IT IS THEREFORE ORDERED that all claims listed in Section I of the TRCC (No Proof of Claim Filed) are hereby **DISALLOWED** except for the following, if any, which are **ALLOWED**:

No Changes

Case 11-33750-bjh13 Doc 1634 Filed 06/23/13 Entered 06/23/13 07:18:36 Page 1 of 2
Case 11-33750-bjh13 Doc 1634-c 83 Filed 06/23/13 Entered 06/23/13 07:18:36 Exhibit 2-25

Pg 129 of 275

Order on Trustee's Recommendation Concerning Claims, Objection to Claims and Plan Modification (if required), Page 2
Case # 11-33750-BJH-13
JOSE ANGEL MARTINEZ JR


**IT IS FURTHER ORDERED** that all claims shown in Section II of the TRCC (Specific Objections) are hereby **ALLOWED** or **DISALLOWED** as shown therein except as follows:


No Changes

**IT IS FURTHER ORDERED** that all claims shown in Section III of the TRCC (Recommendations) are hereby **ALLOWED** as shown therein except as follows:


No Changes

**IT IS FURTHER ORDERED** that the Plan Modification shown in Section IV of the TRCC is **APPROVED** except as follows:


No Changes


Approved by:

/s/  Tom Powers
_____


### End of Order ###

# EXHIBIT 10

relationships that work

# green tree®

November 06, 2013

SCOTT LEMKE
201 S MCDONALD ST
STE E
MCKINNEY TX 75069-5624

Green Tree Servicing LLC
Attention: Loss Mitigation, T111
7360 South Kyrene Road
Tempe, AZ 85283

Re:   Green Tree Servicing LLC ("Green Tree")
    Borrower Name:    JOE A. MARTINEZ and MICHELLE L. MARTINEZ
    Account Number:    450
    Property Address:    3519 HERITAGE TRAIL
                 CELINA, TX  75009

Dear Scott Lemke:

**Congratulations!**  Your client is approved for a permanent modification.  This is the first step towards qualifying for a more affordable mortgage payment.  Please read this letter in its entirety so that your client understands all of the steps your client needs to take to modify their mortgage payments.

**What your client needs to do:**
To accept this offer and take advantage of this opportunity, your client must sign and return the enclosed Agreement by 12/06/2013.  After the signed Agreement has been received, your client's mortgage will then be permanently modified.  If your client does not provide the required signed Agreement by the above-referenced date, this offer will end and your client's loan will not be modified.

If you have any questions, please call us toll-free at 1-800-643-0202, Monday - Friday 7 a.m. to 8 p.m., and Saturday 7 a.m. to 1 p.m. CST.

Green Tree Servicing LLC
Attention: Loss Mitigation, T111
7360 South Kyrene Road
Tempe, AZ 85283
Fax: 1-877-612-2422

Sincerely,

Green Tree
1-800-643-0202
Monday - Friday 7 a.m. to 8 p.m., and Saturday 7 a.m. to 1 p.m. CST

**When Recorded Return To:**
Green Tree Servicing LLC
7360 South Kyrene Road
Tempe, AZ 85283

This document was prepared by Green Tree Servicing LLC

_____ [SPACE ABOVE THIS LINE FOR RECORDING DATA] _____

## LOAN MODIFICATION AGREEMENT

THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT. IF YOU ARE CURRENTLY IN BANKRUPTCY OR YOUR ACCOUNT WAS DISCHARGED IN BANKRUPTCY WITHOUT A REAFFIRMATION, THE SERVICER IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DEBT AS YOUR PERSONAL LIABILITY.

This Loan Modification Agreement ("Agreement"), between JOE A.
MARTINEZ and MICHELLE L. MARTINEZ ("Borrower") and Green Tree Servicing LLC ("Lender"), amends and supplements 1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated 10/19/2001 Recorded 10/22/2001 Instrument No. 20010134086
of the collin county clerk Records of collin county and (2) the Note, bearing the same
date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

3519 HERITAGE TRAIL
CELINA, TX 75009

the real property described in the above-referenced Security Instrument.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 11/01/2013, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $191,327.74 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 6.62500%, from 11/01/2013. Borrower promises to make monthly payments of principal and interest of U.S. $1,137.22, beginning on the 12/01/2013, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 6.62500% will remain in effect until principal and interest are paid in full. The new monthly payment amount does not include any amounts owed for escrow. Borrower may refer to the monthly billing statement for the escrow amount owed. If on 11/01/2053 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower's payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|
| 1-40 | 6.625% | 11/01/2013 | $1,137.22 | 12/01/2013 | 480 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

4. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

In Witness Whereof, the Lender and I have executed this Agreement.

Green Tree Servicing LLC _____

Lender

By: _____

Name: Susanne F Roman

Title: Licensed Loss Mitigation Specialist

License #: 820539

_____

Date

_____(Seal)

Joe A. Martinez

_____

Date

_____(Seal)

Michelle L. Martinez

_____

Date

Account#: ▮▮▮9450

_____ [SPACE BELOW THIS LINE FOR ACKNOWLEDGEMENT] _____

# EXHIBIT 11

# green tree®

Green Tree Servicing LLC
P.O. Box 6172
Rapid City, SD 57709-6172

January 06, 2014

LEN L. NARY
3010 LBJ FREEWAY
SUITE 1200
DALLAS TX 75234-2710

Re: Green Tree Servicing LLC ("Green Tree")
    Borrower Name:    JOE A MARTINEZ and MICHELLE L. MARTINEZ
    Account Number    ████9450

Dear Len L. Nary:

Thank you for contacting us about your client's mortgage. Based on a careful review of the information your client provided to us, your client is not eligible for mortgage modification assistance due to the following reason(s):

- Your client has failed to provided the final executed modification documents within the required time frame.

We recognize that this may be disappointing news for your client. However, in order to avoid the negative impacts to your client's credit rating resulting from late payments and to avoid foreclosure, it is important that your client makes the full payment, if any payment is currently due, as soon as possible and continue to make their mortgage payment by the scheduled due date.

To bring your client's mortgage current, your client must pay the total past due amount, if any. Please call us if your client wishes to receive a reinstatement amount for their loan. If your client is unable to pay their mortgage or bring it current, Green Tree will consider pursuing all available legal remedies up to and including the commencement of foreclosure proceedings. If your client's mortgage loan is reinstated and they subsequently experience a financial hardship, your client may contact us to request reconsideration for mortgage payment assistance or other alternatives to foreclosure.

Please send your client's payment in the full amount due to:

Green Tree
PO Box 94710
Palatine, IL 60094-4710

Your client may be eligible for other workout options offered by Green Tree. Some of the programs that may be available include:

- Short-Sale – A short sale allows your client to avoid foreclosure by selling their property and paying off their account. If your client sells their property for less than the total amount owed on the account, Green Tree may accept that amount as full satisfaction of their loan. Taking this action will not save your client's home, but Green Tree may pay your client cash upon completion of the sale of their home.

- Deed-In-Lieu of Foreclosure – A deed in lieu of foreclosure would allow your client to voluntarily deed their property to Green Tree in order to satisfy the account. Taking this action will not save your client's home, but Green Tree may pay your client cash upon completion of the Program.

It is your client's responsibility to contact Green Tree to discuss their above-referenced account. If your client wishes to explore their options or have any other questions, please contact your client's account representative. Your client's assigned account representative is   at , extension .

Our credit decision may have been based in part upon information obtained in a report from the below-referenced consumer reporting agency listed. Your client has the right under the Fair Credit Reporting Act to obtain a free copy of their credit report. Your client must request their free copy within 60 days of the date of this letter. Your client also has the right to dispute the information contained in their credit report with the credit reporting agency. The credit reporting



agency did not make the decision regarding your client's eligibility and is not able to provide your client with specific reasons as to why they are not eligible for a loan modification.

| | |
|---|---|
| Credit Reporting Agency: | Trans Union Consumer Solutions |
| Reporting Agency Address: | P.O. Box 2000<br>Chester, PA 19022-2000 |
| Toll Free Number: | 1-800-916-8800 |
| Web Address: | http://annualcreditreport.transunion.com/entry/disputeonline |

We also obtained your client's credit score from this consumer reporting agency and used it in making our credit decisio Your client's credit score is a number that reflects the information in their consumer report. Your client's credit score car change, depending on how the information in their consumer report changes.

*Your client's credit* score: 510

Date: 06/06/2013

Scores range from a low of 300 to a high of 850

Key factors that adversely affected your client's credit score:



- Serious delinquency and public record or collection filed

- Too few accounts currently paid as agreed

- Number of accounts with delinquency

- Length of time since derogatory public record or collection is too short

If your client has any questions regarding their credit score, they should contact Trans Union Consumer Solutions at:

Address: P.O. Box 2000, Chester, PA 19022-2000          Telephone number: 1-800-916-8800

The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a bindi contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Federal Trade Commission, which can be contacted at:

<center>
Federal Trade Commission<br>
Equal Credit Opportunity<br>
Washington, DC 20580
</center>

Counseling is available at no charge from HUD-approved counselors through the HOPE Hotline: 1-888-995-HOPE. Thi housing counseling on-demand service is available 24-hours a day/7-days a week in Spanish and English (other languages available on request). You may also visit http://www.hud.gov/offices/hsg/sfh/hcc/fc/.

If your client has concerns about the evaluation of their mortgage for foreclosure alternatives, then please contact the Loss Mitigation Response Unit at 1-855-840-8213.

Sincerely,

Green Tree
1-800-643-0202
Monday - Friday 7 a.m. to 8 p.m., and Saturday 7 a.m. to 1 p.m. CST

# EXHIBIT 12

ĀÄ ! " # $%&! " %$' &Ä() Ā*! +,$+ -Ā) !
Ä- ) ! . " ) Ä$# %1 ) +! $ / $1 " 0 &%
#&1 1&%$# 2 %-Ä$# 2 %-Ä

| | |
|---|---|
| Ä$) " 3 | +&%' $Ä- $99:;;<=> :' 4. :9; +.&* ! " ) $9; |
| 4- %'$&Ä5 "1$6 &) ! Ä"7$4) | 4Ā#5 " $ &) ' &) &$48$.-Ā%' ) |
| #" ' ! -) | **ĀÄ !"# $Ä%$%Ā&' $"()# $*&+, #Ā** |

* ?@A?BCDE$ FGF@BH) ?HI$EI$ BCJ@KDM$* @EFG?@E$>>N$9 OPQRF$+ RBKDF@9;$! @ADFQ RESBA$# $* ETF@A$ IUFA$RDA$ ÄEDUF$EI$/UCBH+?@E$* BM$ FCD$ $RF$E E?CDEV?@FG$DE$L?@E$DRF$GHB?HDCDRF$LHBS $UFADG$WHET$ RBA$WFC$KBCG$C$1?HH

**Ā-./ $01$' 2/ 345026$$** 5 ) " " Ä$1 )" " $%' )2 + Ä 5 $1 1+

---

**%47-8$' 92/ $&. 0975**

| **"0 925 " 84.$ :** | **&==0975 Ā9. >/ 2** | **"8-4 &;; / 25/ 3** | **"8-4 &880</ 3** | **&. 0975 *- 43** |
|---|---|---|---|---|
| NN | [=[9 | XY;QY98Y | XY;QY98Y | XY;QY98Y |
| ! EDH$&S E?C$* BG$WM$@ADF | | | | XY;QY98Y |

---

**, 075?8@Ä$7A047A$, 025A-A/ $*-@./ 75**

6 E@DB \F $A$* BCG

__ ! R@E?\RS$DRF$+ RBKDF@9;$+ ECG?DU    **X** # U@ELD$WMDF$# FWED@

---

] UDRCS$N9$GBMS$EI$DRF$AF@UF$EI$DRF$ÄEDUF$EI$/UCBH+?@E$* BM$FCDQ$RF$L@FGDE$6 Ā%1 $UH$BCGA$F@F$B$ %DDFS FCD$BA$B$A?KKH$FCDE$DRF$REGHF@A$K@E$EI$LHBS $ECD$RF$# FWED@$# FWED@A$+E?CA$BCG$RF$+ RBKDF@$ 9;$! @ADFQK?@A?BCDDE$/ FG8) 8 BCJ8* 8$>>N$9 OPQ$CGUBDC\$9P$T RHDRF@UB\ @FADRB$DRF$# FWED$RBA$KBCG$ UC$1?HHDRF$BS E?CDEV?UFGDE$L?@E$DRF$GHB?HDECDRF$LHBS a$BCGN$T RHDRF@DRF$# FWED@A$EDRF@U$AF$L?@E$CD ECB$HKBMS$FCDA$LECAADFCDT UR$99$Ā8%8+ $b $9;NNOP=P$$

! RF$ADB DS FCD$ARBHD$ S UF$DRF$EV?U@GL ?@E$E@KEADKFDDEC$BS E?CDQUBCM$DUBDRF$REGHF@$LECDCG$A @E$S BCU$?CKR$BA$EI$DRF$GBDF$EI$DRF$ADDF$ S FCD$ $RF$ADF$ FCD$ ABH$F$UFGBA$B$A?KKH$FCDE$DRF$ REGHF@A$K@E$EI$LHBS $BCG$CE$A$?WU$DE$) ?HH$>>9 OP8$ $BH@E$DEC$EDUMS BM$@A$BC$A$BDEC$A8

+&%'' $Ä- 8$99:;;<=> :' 4. :9;

**"# ) !%3"& # $Ä %$B# ) C!"#**

$RF@WMIS@UMSDRB$BSLEKMISSDRFSIE@EUC\$ÄEDUFSEIS' UBS+?@E$* BMSFCDST BAS$AF@FGSECSRFSKB@DFAS FADFG$WEET $WMS@UB2MSĀ8%8$6 BUSE@AF@FGSFELL@ECLBEMSDR@?\R$DRF$+E?@D_AS' +/ $%MADS $BSDRFSF:S BUS BGGF@AS@F\UADF@FGST UDR$DRF$+E?@DECSRUAS; @SGBMSEI$&?\?ADQN>9Y8

4- %' $&Ä5" 1$6 &) ! Ä"7$4) Q$=9[$. ") ! &5"$1 ) & 1Q+"1 Ä&Q$1 0 $$<=>>[

"1"+ !) - Ä +$%'') 2 +"$$1"Ä $1$Ä&) , Q>9>$1' 4$/ ) ""] &, Q%Ā ! "$9N>>$Q &11&%Q$1 0 $$<=N;e

5) ""Ä$1 )" "$%')2 +Ä 5$11+Q*- $ - 0 $<9Y[Q* &%&# "Ä&Q+&$$[99>[

"1"+ !) - Ä +$%'') 2 +"$$ĀCUDE$%DBDFAS! @ADF

# BDF$$&?\?ADS>;QN>9Y

fA$! RES BA$#8$*ET F@A

! RES BA$#8$*ET F@A
+RBKDF@9;$! @ADF
9N=$ $4ERC$B@KFCDF@/ @FT BM
%?UDS99>>$99DR$ EEE@
@UC\Q$1 0 $$<=>YN

# EXHIBIT 13



**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 31, 2016**

*Barbara J. Houser*

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

**In Re:** JOSE ANGEL MARTINEZ JR                          **Case #** 11-33750-BJH-13

**AKA:** JOE A MARTINEZ

**SSN:** Debtor 1 SSN: XXX-XX-5274*                         08/29/2016

---

## DISCHARGE OF DEBTOR(S) AFTER COMPLETION
## OF CHAPTER 13 PLAN

It appearing that the Debtor(s) is/are entitled to a discharge,

**IT IS ORDERED:**

The Debtor(s) is/are granted a discharge under section 1328(a) of Title 11, United States Code, (the Bankruptcy Code).

### ### End of Order ###

### SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION

*Setforth all names, including trade names, used by the debtor within the last 8 years. For joint debtors, set forth the last four digits of both Social Security numbers or individual taxpayer-identification numbers.

**Thomas D. Powers**
**125 E John Carpenter Freeway**
**Suite 1100 11th Floor**
**Irving, TX 75062**
**(214) 855-9200 / (214) 965-0758 (Fax)**

## EXPLANATION OF BANKRUPTCY DISCHARGE IN A CHAPTER 13 CASE

This court order grants a discharge to the person named as the debtor afer the debtor has completed all payments under the chapter 13 plan. It is not a dismissal of the case.

### Collection of Discharged Debts Prohibited

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. (In a case involving community property: There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.) A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

### Debts That Are Discharged

The chapter 13 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt is provided for by the chapter 13 plan or is disallowed by the court pursuant to section 502 of the Bankruptcy Code.

### Debts That Are Not Discharged

Some of the common types of debts which are NOT discharged in a chapter 13 case are:

  a.   Domestic support obligations;

  b.   Debts for most student loans;

  c.   Debts for most fines, penalties, forfeitures, or criminal restitution obligations;

  d.   Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;

  e.   Debts for restitution, or damages, awarded in a civil action against the debtor as a result of malicious or willful injury by the debtor that caused personal injury to an individual or death of an individual (in a case filed on or after October 17, 2005);

  f.   Debts provided for under section 1322(b)(5) of the Bankruptcy Code and on which the last payment is due after the date on which the final payment under the plan was due;

  g.   Debts for certain consumer purchases made after the bankruptcy case was filed if prior approval by the trustee of the debtor's incurring the debt was practicable but was not obtained;

  h.   Debts for certain taxes to the extent not paid in full under the plan (in a case filed on or after October 17, 2005);

  i.   Some debts which were not properly listed by the debtor (in a case filed on or after October 17, 2005).

**This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.**

# EXHIBIT 14

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

In re:

    JOSE ANGEL MARTINEZ JR

        Debtor(s)

Case No. 11-33750-BJH-13

## CHAPTER 13 STANDING TRUSTEE'S FINAL REPORT AND ACCOUNT

    Thomas D. Powers, chapter 13 trustee, submits the following Final Report and Account of administration of the estate pursuant to 11 U.S.C. § 1302(b)(1). The trustee declares as follows:

1)  The case was filed on 06/06/2011.

2)  The plan was confirmed on 01/03/2012.

3)  The plan was modified by order after confirmation pursuant to 11 U.S.C. § 1329 on 09/05/2012.

4)  The trustee filed action to remedy default by the debtor in performance under the plan 05/18/2012, 02/06/2015, 05/08/2015.

5)  The case was completed on 07/20/2016.

6)  Number of months from filing to last payment: 62.

7)  Number of months case was pending: 69.

8)  Total value of assets abandoned by court order:  NA .

9)  Total value of assets exempted: $38,423.60.

10) Amount of unsecured claims discharged without payment: $0.00.

11) All checks distributed by the trustee relating to this case have cleared the bank.

**UST Form 101-13-FR-S (9/1/2009)**

## Receipts:

| | |
|---|---|
| Total paid by or on behalf of the debtor | $118,006.00 |
| Less amount refunded to debtor | $0.00 |
| **NET RECEIPTS:** | **$118,006.00** |

## Expenses of Administration:

| | |
|---|---|
| Attorney's Fees Paid Through the Plan | $3,459.00 |
| Court Costs | $0.00 |
| Trustee Expenses & Compensation | $9,364.14 |
| Other | $113.74 |
| **TOTAL EXPENSES OF ADMINISTRATION:** | **$12,936.88** |

Attorney fees paid and disclosed by debtor:   $441.00

## Scheduled Creditors:

| Creditor Name | Class | Claim Scheduled | Claim Asserted | Claim Allowed | Principal Paid | Int. Paid |
|---|---|---|---|---|---|---|
| AAA FINANCIAL SERVICES | Unsecured | 0.00 | NA | NA | 0.00 | 0.00 |
| ALLY FINANCIAL | Unsecured | 2,001.50 | 2,001.50 | 2,001.50 | 302.77 | 0.00 |
| ATTORNEY GENERAL OF TEXAS | Priority | 1,209.50 | 1,209.50 | 1,209.50 | 1,209.50 | 0.00 |
| AUTONATION FINANCIAL | Unsecured | 0.00 | NA | NA | 0.00 | 0.00 |
| BANK OF AMERICA NA | Secured | 77,540.36 | 77,540.36 | 77,540.36 | 0.00 | 0.00 |
| BANK OF AMERICA NA | Secured | 6,676.56 | 6,676.56 | 6,676.56 | 6,676.56 | 0.00 |
| CASH AMERICA | Unsecured | 516.66 | 516.66 | 516.66 | 78.16 | 0.00 |
| CAVALRY PORTFOLIO SERVICES LL | Unsecured | 537.41 | 537.41 | 537.41 | 81.30 | 0.00 |
| CAVALRY PORTFOLIO SERVICES LL | Unsecured | 2,561.91 | 2,569.91 | 2,569.91 | 388.76 | 0.00 |
| CELINA ISD | Secured | 5,779.66 | NA | NA | 0.00 | 0.00 |
| CELINA ISD | Secured | 2,493.30 | 2,493.30 | 2,493.30 | 2,493.30 | 579.27 |
| CHASE EQUITY HOME LOAN | Secured | 82,087.00 | NA | NA | 0.00 | 0.00 |
| CITIBANK | Unsecured | 0.00 | NA | NA | 0.00 | 0.00 |
| COLLIN COUNTY TAX ASSESSOR | Secured | 2,995.03 | 2,995.03 | 2,995.03 | 0.00 | 0.00 |
| COLLIN COUNTY TAX ASSESSOR | Secured | 1,702.80 | 1,702.80 | 1,702.80 | 1,649.33 | 33.37 |
| COMPASS BANK | Unsecured | 1,452.10 | 1,452.10 | 1,452.10 | 219.66 | 0.00 |
| DISCOVER FINANCIAL SERVICES | Unsecured | 13,262.02 | 13,262.02 | 13,262.02 | 2,006.17 | 0.00 |
| GREEN TREE SERVICING LLC | Secured | 63,861.76 | 63,861.76 | 63,861.76 | 63,861.76 | 0.00 |
| GREEN TREE SERVICING LLC | Secured | 211,637.61 | 211,637.61 | 211,637.61 | 0.00 | 0.00 |
| HOUSEHOLD FINANCE CORPORATI | Secured | NA | 236.99 | 236.99 | 0.00 | 0.00 |
| HOUSEHOLD FINANCE CORPORATI | Secured | 21,012.02 | 21,012.02 | 21,012.02 | 0.00 | 0.00 |
| INTERNAL REVENUE SERVICE | Unsecured | NA | 10,877.49 | 10,877.49 | 0.00 | 0.00 |
| INTERNAL REVENUE SERVICE | Priority | 17,719.27 | 17,719.27 | 17,719.27 | 17,719.27 | 0.00 |
| INTERNAL REVENUE SERVICE | Unsecured | 15,410.22 | 4,532.73 | 4,532.73 | 685.67 | 0.00 |
| PITNEY BOWES | Secured | 0.00 | NA | NA | 0.00 | 0.00 |
| PORTFOLIO RECOVERY ASSOCIATE | Unsecured | 0.00 | 7,105.37 | 7,105.37 | 1,074.84 | 0.00 |
| PORTFOLIO RECOVERY ASSOCIATE | Unsecured | 560.18 | 560.18 | 560.18 | 84.74 | 0.00 |
| PORTFOLIO RECOVERY ASSOCIATE | Unsecured | 658.15 | 658.15 | 658.15 | 99.55 | 0.00 |
| PORTFOLIO RECOVERY ASSOCIATE | Unsecured | 1,427.54 | 1,427.54 | 1,427.54 | 215.95 | 0.00 |
| PORTFOLIO RECOVERY ASSOCIATE | Unsecured | 8,721.21 | 8,721.21 | 8,721.21 | 1,319.27 | 0.00 |

UST Form 101-13-FR-S (9/1/2009)

**Scheduled Creditors:**

| Creditor Name | Class | Claim Scheduled | Claim Asserted | Claim Allowed | Principal Paid | Int. Paid |
|---|---|---|---|---|---|---|
| PORTFOLIO RECOVERY ASSOCIATE | Unsecured | 5,042.42 | 5,042.42 | 5,042.42 | 762.78 | 0.00 |
| PORTFOLIO RECOVERY ASSOCIATE | Unsecured | 15,023.34 | 15,023.34 | 15,023.34 | 2,272.60 | 0.00 |
| QUANTUM3 GROUP LLC | Unsecured | 1,226.80 | 1,226.80 | 1,226.80 | 185.58 | 0.00 |
| SANMAR | Unsecured | NA | 546.01 | 546.01 | 0.00 | 0.00 |
| SANMAR CORP | Unsecured | 546.01 | 546.01 | 546.01 | 82.60 | 0.00 |
| SILVERLEAF RESORTS | Secured | 10,156.36 | 10,156.36 | 10,156.36 | 0.00 | 0.00 |
| SM SERVICING | Unsecured | 0.00 | NA | NA | 0.00 | 0.00 |
| TARGET | Unsecured | 0.00 | NA | NA | 0.00 | 0.00 |
| TCC CREDIT UNION | Unsecured | 0.00 | NA | NA | 0.00 | 0.00 |
| THE BANK OF NEW YORK MELLON | Secured | 93,908.91 | 93,908.91 | 93,908.91 | 0.00 | 0.00 |
| THE BANK OF NEW YORK MELLON | Secured | 10,399.97 | 10,399.97 | 10,399.97 | 0.00 | 0.00 |
| VANDA LLC | Unsecured | 6,520.48 | 6,520.48 | 6,520.48 | 986.36 | 0.00 |
| VIEWPOINT | Unsecured | 0.00 | NA | NA | 0.00 | 0.00 |
| WASHINGTON MUTUAL | Unsecured | 0.00 | NA | NA | 0.00 | 0.00 |
| WASHINGTON MUTUAL | Unsecured | 0.00 | NA | NA | 0.00 | 0.00 |

**Summary of Disbursements to Creditors:**

| | Claim Allowed | Principal Paid | Interest Paid |
|---|---|---|---|
| **Secured Payments:** | | | |
| Mortgage Ongoing | $404,098.90 | $0.00 | $0.00 |
| Mortgage Arrearage | $81,175.28 | $70,538.32 | $0.00 |
| Debt Secured by Vehicle | $0.00 | $0.00 | $0.00 |
| All Other Secured | $17,347.49 | $4,142.63 | $612.64 |
| **TOTAL SECURED:** | **$502,621.67** | **$74,680.95** | **$612.64** |
| | | | |
| **Priority Unsecured Payments:** | | | |
| Domestic Support Arrearage | $1,209.50 | $1,209.50 | $0.00 |
| Domestic Support Ongoing | $0.00 | $0.00 | $0.00 |
| All Other Priority | $17,719.27 | $17,719.27 | $0.00 |
| **TOTAL PRIORITY:** | **$18,928.77** | **$18,928.77** | **$0.00** |
| | | | |
| **GENERAL UNSECURED PAYMENTS:** | **$83,127.33** | **$10,846.76** | **$0.00** |

**Disbursements:**

| | |
|---|---|
| Expenses of Administration | $12,936.88 |
| Disbursements to Creditors | $105,069.12 |
| | |
| **TOTAL DISBURSEMENTS:** | **$118,006.00** |

**UST Form 101-13-FR-S (9/1/2009)**

12)  The trustee certifies that, pursuant to Federal Rule of Bankruptcy Procedure 5009, the estate has been fully administered, the foregoing summary is true and complete, and all administra matters for which the trustee is responsible have been completed. The trustee requests a final decr entered that discharges the trustee and grants such other relief as may be just and proper.

Dated: 03/13/2017

By: /s/ Thomas D. Powers
_____
Trustee

**STATEMENT**:  This Unified Form is associated with an open bankruptcy case, therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

**UST Form 101-13-FR-S (9/1/2009)**

# EXHIBIT 15

**ditech**
a Walter company

PO Box 6172
Rapid City, SD 57709-6172

**Servicing Department 1-800-643-0202**
Monday - Friday 8AM - 6PM

3-776-13141-0000017-001-1-000-000-000-000

Your tax information is also
available on the web.
**Web site: www.ditech.com**
NMLS ID: 1057

JOE A MARTINEZ
MICHELLE L MARTINEZ
3519 HERITAGE TRL
CELINA TX  75009-5502

*SEE REVERSE SIDE FOR ADDITIONAL INFORMATION*

## ANNUAL TAX AND INTEREST STATEMENT

JOE A MARTINEZ
MICHELLE L MARTINEZ
3519 HERITAGE TRL
CELINA TX  75009-5502

Ditech Financial LLC
PO Box 6172
Rapid City, SD 57709-6172
1-800-643-0202

TIN#  41-1795868

YEAR:  2017
LOAN #: ███████753
SSN:  ***-**-5274

**DISBURSEMENTS FROM ESCROW**

| PROPERTY TAX | $13,164.71 |
| HAZARD INSURANCE | $3,382.41 |
| MORTGAGE INSURANCE | $0.00 |

Questionable

CURRENT TOTAL PYMT    $2,045.16

**PRINCIPAL**

| BEG BALANCE | $125,933.77 |
| ENDING BALANCE | $121,175.05 |

**ESCROW RECONCILIATION**

| BEG BALANCE | ($62,260.48) |
| DEPOSITS | $10,712.40 |
| DISBURSEMENTS | $16,547.12 |
| ENDING BALANCE | ($68,095.20) |

**INTEREST DETAIL**

| TOTAL INTEREST APPLIED IN 2017 (NEXT DUE DATE 01/01/18) | $7,517.94 |
| 2017 NET INTEREST PAYMENTS REPORTED TO IRS | $7,517.94 |

*If the Tax ID Number shown above is incorrect or if the space is blank, please complete the Tax Identification Certification on the reverse side of this statement and return to us at our return address above.*

[X] CORRECTED (if checked)    April 30, 2018

# TAX IDENTIFICATION CERTIFICATION

In order to verify your deduction for mortgage interest paid during the calendar year, the IRS requires that you furnish your social security or taxpayer identification number to us. Failure to provide this information can result in a $50 penalty by the IRS. If you are an individual, please provide us with your social security number in the space indicated below. If you are a company or a corporation, please provide us with your taxpayer identification number (TIN) where indicated below. **Detach and mail this form to the company to whom you are presently making your payments.**

Borrower ___ ___ ___ - ___ - ___ ___ ___ ___    OR ___ ___ - ___ ___ ___ ___ ___ ___
                    Social Security No.                                    Taxpayer I.D. No. (TIN)

Co-Borrower ___ ___ ___ - ___ - ___ ___ ___ ___    OR ___ ___ - ___ ___ ___ ___ ___ ___
                    Social Security No.                                    Taxpayer I.D. No. (TIN)

**CERTIFICATION** - Under the penalties of perjury, I certify that the information provided on this form is true, correct and complete.

Borrower _____    _____
                         Signature                                              Date

Co-Borrower _____    _____
                         Signature                                              Date

This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return.

The amount shown may not be fully deductible by you on your Federal Income tax return. Limitations based on the cost and value of the secured property may apply. In addition, you may only deduct an amount of mortgage interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person.

## PRIVATE MORTGAGE INSURANCE DISCLOSURE

You have the right under the Homeowner's Protection Act to cancellation or termination of private mortgage insurance (PMI).

**Cancellation:** PMI will be cancelled on the Cancellation Date if you meet the following requirements: (1) you submit a written request to us to start PMI cancellation; (2) you have a good mortgage payment history (e.g., no mortgage payment was 30 or more days late in the past 12 months or 60 or more days late during the past 24 months); (3) you are current on the payments required by the mortgage; and (4) you provide evidence that the current value of the property is not lower than the Original Value of the property. **If you have a fixed rate loan,** the Cancellation Date is when your principal balance (1) is first scheduled to reach 80% of your property's Original Value (based on the initial amortization schedule) or (2) reaches 80% of your property's Original Value (based on actual payments). **If you have an adjustable rate loan,** the Cancellation Date is when your principal balance (1) is first scheduled to reach 80% of your property's Original Value (based on the amortization schedule then in effect) or (2) first reaches 80% of your property's Original Value (based on actual payments). You may contact us at the following address and telephone number to determine whether you may cancel PMI: 345 St. Peter Street, St. Paul, MN 55102, 1-800-643-0202.

**Termination:** **If you have a fixed rate loan** and you are current on the payments required by the mortgage, PMI will automatically terminate when your principal balance, based solely on the initial amortization schedule, is first scheduled to reach 78% of your property's Original Value. **If you have an adjustable rate loan** and you are current on the payments required by the mortgage, PMI will automatically terminate when your principal balance, based solely on the amortization schedule then in effect, is first scheduled to reach 78% of your property's Original Value. If PMI is not otherwise cancelled or automatically terminated, it will terminate on the first day of the month following the date that is the midpoint of the amortization period, as long as you are current on the payments required by the mortgage.

If your mortgage was a **refinance,** "Original Value" means the appraised value relied upon by the lender to approve the refinance. If your mortgage was a **purchase loan,** "Original Value" means the lesser of the sales price of the property or the appraised value of the property at the time the loan closed.



*[handwritten]* → BK DEPT.
1-888-298-7785

**ditech**
a Walter company

Ditech Financial LLC
PO Box 6172
Rapid City, SD 57709-6172
Phone: 1-877-624-8026
Fax: 1-866-870-9919
www.ditech.com

June 13, 2018

MARTINEZ JOE A
MARTINEZ MICHELLE L
3519 HERITAGE TRL
CELINA, TX 75009

Re:   Ditech Financial LLC("Ditech")
Account Number:  ▓▓▓7553
Property Address: 3519 HERITAGE TRL
                  CELINA, TX 75009

**THE PAYOFF ON THE ABOVE–REFERENCED ACCOUNT IS:**          **$173,785.91**

This amount is good through: Saturday, June 23, 2018.

**Any transactions that occur on or after June 13, 2018 may change the payoff amount.**

**Per State Requirements: per diem interest $21.06**

This includes the following:

| | | |
|---|---|---|
| **Principal Balance:** the amount currently owed on the account | | $116,021.95 |
| **Interest through Saturday, June 23, 2018 at 6.625%:** | $463.29 | |
| **Interest:** amount paid at a particular rate for the use of money lent | | $463.29 |
| **Paid Ahead Interest:** interest collected but not earned | | $0.00 |
| **Hazard/Flood Insurance*:** insurance to protect the property against loss from fire and other hazards | | $0.00 |
| **Total Corporate Advances:** | | $0.00 |
| **Late Fees:** fees charged to the customer by the servicer for payments received past due | | $0.00 |
| **Returned Check Fees:** fee for check(s) that had been returned to the servicer as the check(s) could not be processed against the check issuer's account | | $0.00 |
| **Total Other Fees:** | | $0.00 |
| **Deferred Interest:** | | $0.00 |
| **Escrow Balance Due:** escrow balance due | | $57,300.67 |
| **Unapplied Funds:** partial payment received by servicer | | $0.00 |
| **Release/Reconvey Fee:** amount paid by servicer to have lien released/reconveyed | | $0.00 |
| **Payoff Quote Fee:** fee charged by servicer for generating payoff quote | | $0.00 |
| **Total Other Credits:** | | $0.00 |

**This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained will be used for that purpose.**

Itemized Payoff Quote, 12/05/2017

*[handwritten]* Tom Powers / Trustee
105 Decker Ct. Ste 1150
Irving, TX 75062
214-855-9200
13Documents.com

EQUAL HOUSING LENDER

LTR-543

## Account Information

| | |
|---|---|
| Loan Number | 7553 |
| Principal Balance † | $115,146.43 |
| Escrow Balance | ($56,371.57) |
| Interest Rate | 6.625% |
| Next Interest Rate Reset | N/A |
| Interest Type | Actuarial |
| Prepayment Penalty | No |
| Property Address: | |

3519 HERITAGE TRL
CELINA TX 75009

† This is not your payoff amount. Please login to
MyAccount at ditech.com for a payoff figure.

## Past Payments Breakdown

| Since Last Statement/Month | |
|---|---|
| Principal | $875.52 |
| Interest | $640.54 |
| Escrow (Tax & Insurance) | $929.10 |
| Total Fees and Charges | $0.00 |
| Funds in Suspense | $0.00 |
| **Total Paid** | **$2,445.16** |
| Year to Date | |
| Principal | $6,028.62 |
| Interest | $4,583.80 |
| Escrow (Tax & Insurance) | $11,723.79 |
| Total Fees and Charges | $0.00 |
| Funds in Suspense | $0.00 |
| **Total Paid Year to Date** | **$22,336.21** |

## Explanation of Amount Due

| | |
|---|---|
| Principal | $480.36 |
| Interest | $635.70 |
| Escrow (Tax & Insurance) | $929.10 |
| Regular Monthly Payment | $2,045.16 |
| Total New Fees and Charges | $0.00 |
| Past Due Amount | $0.00 |

## Transaction Activity Since Last Statement

| Date | Description | Charges | Payments |
|---|---|---|---|
| 07/02/18 | Payments | $0.00 | $2,045.16 |
| 07/02/18 | Add'l Prin Pmt | $0.00 | $400.00 |

**Total Amount Due: $2,045.16**

## Important Messages (More information on the Back)

PARTIAL PAYMENTS: Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.

AUTOMATIC PAYMENT: In accordance with your authorization, your automatic payment is scheduled to be deducted from your bank.

---

✂- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ->

**PLEASE DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT**

JOE A MARTINEZ, MICHELLE L MARTINEZ
3519 HERITAGE TRL
CELINA TX 75009-5502

☐ Check box for address
changes on reverse side.

Make checks payable to Ditech Financial.

| Loan Number | Statement Date | Due Date | **Amount Due** |
|---|---|---|---|
| 7553 | 07/02/2018 | 08/01/2018 | **$2,045.16** |

If payment is received after 08/16/2018,
a $55.80 late fee will be charged

| | |
|---|---|
| Amount Due | $ , . |
| Additional Escrow | $ , . |
| Additional Late | $ , . |
| Additional Principal | $ , . |
| Total Amount Enclosed | $ , . |

Ditech
PO Box 660934
Dallas, TX 75266-0934

7553  3   00204516      0000204516

INTERNET REPRINT

91-9/10 or visit http://dm.oregon.gov.

## Other Important Information Regarding Your Account

- **Customer Service**
  Phone #: 1-800-643-0202
  TTY/TDD (hearing impaired) #: 711
  Fax #: 1-866-870-9919
  Hours: Monday - Friday 8AM - 6PM
  Telephone calls may be monitored or
  recorded for quality assurance and
  training purposes.

- **Designated Address for Qualified Written
  Requests, Notices of Error and Requests for
  Information**
  Ditech has designated the following address
  where mortgage loan customers must send any
  Qualified Written Request, Notice of Error or
  Requests for information:
  Ditech Financial LLC
  P.O. Box 6176
  Rapid City, SD 57709-6176

- **Bankruptcy Notices and Correspondence**
  NOTICE: Send notices and correspondence
  related to any bankruptcy filing by you to:
  Ditech Financial LLC
  P.O. Box 6154
  Rapid City, SD 57709-6154
  Telephone Number: 888-298-7785

- **Correspondence**
  Ditech Financial LLC
  P.O. Box 6172
  Rapid City, SD 57709-6172
  Fax #: 1-866-870-9919

Federal and state law prohibit certain methods
of debt collection, and require that we treat
you fairly.

If you have a complaint about the way we are
collecting this debt, please write to our
Customer Service Department at the following
address:

CUSTOMER SERVICE DEPARTMENT,
Ditech Financial LLC, P.O. Box 6172,
Rapid City, SD 57709-6172, or call
us toll-free at 1-800-643-0202
Hours: Monday - Friday 8AM - 6PM

The Federal Trade Commission and the
Consumer Financial Protection Bureau enforce
the Fair Debt Collection Practices Act. If you
have a complaint about the way we are
collecting your debt, please contact the FTC or
the CFPB. You can reach the FTC online at
www.ftc.gov/complaint; by phone at
1-877-FTC-HELP; or by mail at
600 Pennsylvania Ave., NW, Washington,
DC 20580. You can reach the CFPB online at
www.consumerfinance.gov/complaint; by
phone
at 1-855-411-2372; or by mail at Consumer
Financial Protection Bureau P.O. Box 4503,
Iowa City, IA 52244.

Notice About Electronic Check Conversion
When you provide a check as payment, you
authorize us either to use information from your
check to make a one-time electronic fund transfer
from your account or to process the payment
as a check transaction.

- **Payoff Checks**
  Regular and USPS overnight mail
  Ditech Financial LLC
  Attn: Payoff Department
  Dept CH 9052
  Palatine, IL 60055-9052

- **Payoff Checks**
  Non-USPS overnight mail
  Ditech Financial LLC
  Attention: 9052 - Payoffs
  5505 N Cumberland Ave, Suite 307
  Chicago, IL 60656

- **Insurance Property Claims**
  Ditech Financial LLC
  Attn: Claims
  P.O. Box 6100
  Rapid City, SD 57709-6100
  Phone #: 1-800-643-0202
  Claims Fax #: 1-800-215-2780

- **Insurance-Life & Disability,
  Assurant Insurance Agency
  Policies**
  Assurant Insurance Agency, Inc.
  Attn: Insurance Processing
  440 Mount Rushmore Rd
  Rapid City, SD 57701
  Phone #: 1-800-525-0960
  Fax #: 1-888-222-2108
  POI #: 1-800-223-8284

 **www.ditech.com**
Payments can be made at ditech.com free
of charge. Sign up in your MyAccount to
make payments online or enroll to have
your payment automatically debited from
your bank account each month.

 **Pay By Phone**
Call 1-800-643-0202
Have your checkbook ready!
An electronic payment fee of up to
$19 may be required for this option.

 **Moneygram**
For a location near you, call
1-800-666-3947. Ditech's receive
code is 0314-Ditech
A processing fee may apply.

 **Western Union Quick Collect**
A processing fee may apply.

 **Western Union Credit Card**
For same day service from the
convenience of your home,
call 1-800-325-6000.
A processing fee may apply.

| Payment | Pymt Options | Company Name | Code City |
|---|---|---|---|
| Walk-in (Cash) | Urgent | Ditech Financial LLC | Ditech-MN |
| | 1-800-325-6000 | | |

If not using any of the above-referenced options, please send payments to the address provided on this statement. Payments are not accepted at Ditech site locations.

## Address, Phone, and Name Changes

Type of change (check all that apply)

_____ Address      _____ Phone      _____ Email Address

Your Account # _____

Borrower Signature _____   Co-Borrower Signature _____

New Mailing Address: _____

New Phone Number: Day
(___) ___-____   Evening (___) ___-____   Email Address _____

Mobile Phone Number: (___) ___-____

# ditech.
PO Box 6172
Rapid City , SD 57709-6172

**Annual Escrow Account
Disclosure Statement**

**Statement Date:**            07/31/2018
**Your Loan Account Number:**  ████7553

6-776-14411-0000610-001-100-010-000-000

JOE A MARTINEZ
MICHELLE L MARTINEZ
11300 N CENTRAL EXPY
DALLAS TX 75243-6717

**Questions?**

View your detailed, up-to-date escrow transactions
online at myaccount.ditech.com

Call Customer Service at **1-800-643-0202**
 Mon. – Fri. 7 am to 8 pm CST
 Sat. 7 am to 1 pm CST

## SECTION 1   WHY AM I RECEIVING THIS STATEMENT?

We review your escrow account every year to ensure it is properly funded, based on your upcoming taxes and/or insurance premiums.
This statement provides details of any changes in your escrow account and resulting changes to your mortgage payment.

Our review shows your escrow account has a **shortage of $68,252.98**.  Once we pay your upcoming insurance and/or tax payments,
your escrow account will fall below the required minimum balance.  See Section 4 for details.  Your monthly mortgage payment is also
changing **October 01, 2018**. Your new payment amount depends on which option below you choose:

**OPTION 1: Pay Shortage Now**

- Pay in full by check or money order by **Sep. 24, 2018**.
- Your new monthly mortgage payment will be $2,365.12.

**OPTION 2: Spread Shortage Over 12 months
   (No action required)**

- Add $5,687.75 per month for 12 months to mortgage payment.
- Your new monthly mortgage payment will be $8,052.87.

## SECTION 2   WHY ARE MY PAYMENTS CHANGING?

Changes to monthly escrow amounts are common. They're often caused by a change in your taxes and/or insurance premiums. This
table shows how your escrow and mortgage payments are changing.

|                       | Current Payment | Changes      | OPTION 1 New Payment | OPTION 2 New Payment |
|-----------------------|-----------------|--------------|----------------------|----------------------|
| Due Date              | 08/01/2018      |              | 10/01/2018           | 10/01/2018           |
| Principal and Interest| $1,116.06       |              | $1,116.06            | $1,116.06            |
| Escrow Payment        | $929.10         | h $319.96    | $1,249.06            | $1,249.06            |
| Escrow Shortage       |                 |              |                      | $5,687.75            |
| **TOTAL**             | **$2,045.16**   | **h $319.96**| **$2,365.12**        | **$8,052.87**        |

use anticipated payments from
escrow account to determine
monthly escrow payment:

| Combined Property Insurance | $1,823.96 |
| Combined Taxes | $13,164.71 |
| **TOTAL OUTGOING PAYMENTS** | $14,988.67  ÷ 12 months = **$1,249.06 Monthly Escrow** |

## SECTION 3   WHAT DO I NEED TO DO?

### PAY YOUR SHORTAGE NOW

- Send a check or money order in the amount of $68,252.98, payable to Ditech Financial LLC by **Sep. 24, 2018**.
- Please write your Loan Account Number and "Escrow Shortage" on the check.
- Send the coupon at the bottom of this statement along with your check in the enclosed envelope.
- Unfortunately, you cannot make your escrow shortage payment online or over the phone.

### TO SPREAD YOUR SHORTAGE OUT

No action is needed to spread your shortage payments out. If we don't receive a shortage check or money order from you, we'll
automatically add shortage payments of $5,687.75 to your monthly payment.

### REMINDER

If you use automatic bill pay, please contact your bank to adjust your mortgage payment amount, due October 01, 2018.

## SECTION 4   HOW IS MY ESCROW SHORTAGE CALCULATED?

Every year, we analyze what you'll need to pay in taxes and/or insurance premiums. We then calculate the amount you'll likely need in escrow to pay these bills. To determine if you have enough funds in your escrow account, we use this formula:

| | | |
|---|---|---|
| Lowest Projected Balance | -$65,754.86 | (in gray below) |
| - Minimum Escrow Balance | $2,498.12 | (in gray below) |
| **Shortage Amount** | **-$68,252.98** | |

Your escrow account has a minimum balance, as allowed by federal laws, state laws, or your mortgage contract. Your minimum balance includes up to two months of escrow payments to cover increases to your property taxes and/or homeowners insurance. Your minimum escrow balance is $2498.12.

This table shows expected payments in and out of your account over the next 12 months:

| Date | What We Expect You to Pay to Escrow | What We Expect to Pay Out | Payment Description | Expected Balance | Balance Needed in Your Account |
|---|---|---|---|---|---|
| **Beginning Balance** | | | | -$54,513.37 | $13,739.61 |
| 10/18 | $1,249.06 | | | -$53,264.31 | $14,988.67 |
| 11/18 | $1,249.06 | | | -$52,015.25 | $16,237.73 |
| 12/18 | $1,249.06 | $13,164.71 | CNTY TX PARC | -$63,930.90 | $4,322.08 |
| 12/18 | | $1,823.96 | HAZARD INS | -$65,754.86 | $2,498.12 |
| 01/19 | $1,249.06 | | | -$64,505.80 | $3,747.18 |
| 02/19 | $1,249.06 | | | -$63,256.74 | $4,996.24 |
| 03/19 | $1,249.06 | | | -$62,007.68 | $6,245.30 |
| 04/19 | $1,249.06 | | | -$60,758.62 | $7,494.36 |
| 05/19 | $1,249.06 | | | -$59,509.56 | $8,743.42 |
| 06/19 | $1,249.06 | | | -$58,260.50 | $9,992.48 |
| 07/19 | $1,249.06 | | | -$57,011.44 | $11,241.54 |
| 08/19 | $1,249.06 | | | -$55,762.38 | $12,490.60 |
| 09/19 | $1,249.06 | | | -$54,513.32 | $13,739.66 |
| **Ending Balance** | | | | -$54,513.32 | $13,739.66 |
| **TOTAL** | **$14,988.72** | **$14,988.67** | | | |

## SECTION 5   WHAT HAPPENED SINCE MY LAST ESCROW REVIEW?

In this table, you can see payments you made into your escrow account and outgoing payments we made from your escrow account. If we projected to pay out a significantly different amount, you'll see the difference noted in gray. These differences may impact whether you have enough funds in your escrow account.

| Date | What You Actually Paid to Escrow | What We Expected You to Pay to Escrow | What We Actually Paid Out | What We Expected to Pay Out | Payment Description | Actual Balance | Expected Balance from Last Review |
|---|---|---|---|---|---|---|---|
| Beginning Balance | | | | | | -$52,974.95 | $0.00 |
| 04/16 | $2,787.30 | | | | | -$50,187.65 | $0.00 |
| 05/16 | $929.10 | | | | | -$49,258.55 | $0.00 |
| 08/16 | $929.10 | | | | | -$48,329.45 | $0.00 |
| 09/16 | $929.10 | | | | | -$47,400.35 | $0.00 |
| 10/16 | $929.10 | | | | | -$46,471.25 | $0.00 |
| 11/16 | $929.10 | | $5,636.00 | | HAZARD INS | -$51,178.15 | $0.00 |
| 12/16 | $929.10 | | $12,011.43 | | CNTY TX PARC | -$62,260.48 | $0.00 |
| 01/17 | $1,858.20 | | $1,558.45 | | HAZARD INS | -$61,960.73 | $0.00 |
| 02/17 | $929.10 | | | | | -$61,031.63 | $0.00 |
| 03/17 | -$929.10 | | | | | -$61,960.73 | $0.00 |
| 04/17 | $1,421.40 | | | | | -$60,539.33 | $0.00 |
| 06/17 | $929.10 | | | | | -$59,610.23 | $0.00 |
| 07/17 | $929.10 | | | | | -$58,681.13 | $0.00 |
| 08/17 | $929.10 | | | | | -$57,752.03 | $0.00 |
| 09/17 | $929.10 | | | | | -$56,822.93 | $0.00 |
| 10/17 | $929.10 | | | | | -$55,893.83 | $0.00 |
| 11/17 | $1,858.20 | | $13,164.71 | | CNTY TX PARC | -$67,200.34 | $0.00 |
| 12/17 | $928.94 | | $1,823.96 | | HAZARD INS | -$68,095.36 | $0.00 |
| 01/18 | $929.10 | | | | | -$67,166.26 | $0.00 |
| 02/18 | $929.10 | | | | | -$66,237.16 | $0.00 |
| 03/18 | $929.10 | | | | | -$65,308.06 | $0.00 |
| 04/18 | $6,149.19 | | | | | -$59,158.87 | $0.00 |
| 05/18 | $929.10 | | | | | -$58,229.77 | $0.00 |
| 06/18 | $929.10 | | | | | -$57,300.67 | $0.00 |
| 07/18 | $929.10 | | | | | -$56,371.57 | $0.00 |
| 08/18 | $929.10 E | | | | | -$55,442.47 | $0.00 |
| | $929.10 E | | | | | -$54,513.37 | $0.00 |
| ıg Balance | | | | | | -$54,513.37 | $0.00 |
| ıL | $32,656.13 | $0.00 | $34,194.55 | $0.00 | | | |

stimated future payment



JOE A MARTINEZ
MICHELLE L MARTIBNEZ
KELLETT & BARTHOLOW PLLC
11300 N CENTRAL EXPRESS
DALLAS TX 75243



Ditech Financial LLC
P.O. Box 6172
Rapid City, SD 57709-6172
Phone Number: (800) 643-0202
Fax Number: (866) 870-9919
ditech.com

August 28, 2018

JOE A MARTINEZ
MICHELLE L MARTINEZ
KELLETT & BARTHOLOW PLLC
11300 N CENTRAL EXPRESS
DALLAS TX 75243

RE: **Payoff Statement**
Account ███████ 553          Name: JOE A MARTINEZ
Property Address:  3519 HERITAGE TRL
                   CELINA TX 75009

The payoff on the above-referenced account is:          $170,878.62
This includes the following:

| | |
|---|---|
| Principal Balance: | $114,266.07 |
| Interest through 09/27/18 at 6.62500%: | $1,170.08 |
| Pro-Rated Mortgage Insurance Premium: | $0.00 |
| Escrow: | $55,442.47 |
| Prepayment Penalty Interest: | $0.00 |
| Buydown/Subsidy/Replacement Reserve Balance: | $0.00 |
| Payments Held in Suspense: | $0.00 |
| Legal Fees: | $0.00 |
| HUD Subsidy Balance: | $0.00 |
| Prepayment Penalty Flat Fee: | $0.00 |
| Pro-Rated Private Mortgage Insurance: | $0.00 |
| Pro-Rated Rural Housing Service Fees: | $0.00 |
| Corporate Advances: | $0.00 |
| Deferred Balance: | $0.00 |
| Late fees: | $0.00 |
| Returned Check Fees: | $0.00 |
| Other Fees: | $0.00 |

**TOTAL AMOUNT DUE:**          $170,878.62

This amount is good through 09/27/2018 and will accrue $20.74 interest per day after this date. **Any transactions that occur on or after 08/28/2018 may change the payoff amount.**



Payoff Quote – Generic Letter, 05/24/2016                              LTR-1434

All payoffs should be mailed to:

| Wiring Instructions – Fees Apply | Overnight Address – Fees Apply | Standard Mail – No Fees |
|---|---|---|
| ABA: 026009593<br>Account: 1257813511<br>Account Name: Ditech Financial LLC<br>Bank Name: Bank of America<br><br>Please add account holder's name and number. | Ditech<br>5505 N. Cumberland Avenue<br>Suite 307<br>Attention: 9052-PAYOFFS<br>Chicago, IL 60656 | Ditech<br>DEPT. CH 9052<br>Palatine, IL 60055-9052 |

MEMO SECTION:    Payoffs made to locations other than those supplied on this statement may cause a processing delay. The memo section (also referred to as Advice, Instructions to Beneficiary, or OBI) of the payoff wire must include the account name and 10-digit Ditech Financial LLC ("Ditech") account number.   If this information is not included or misplaced, the payoff cannot be applied and will be rejected.  The result of rejection will require a new payoff quote and likely a larger amount due.

Ditech reserves the right to demand additional funds to correct any error or omission in the above payoff figure that was calculated in good faith, whether the error or omission is mathematical, clerical, typographical, or for any transactions that occurred on or after the date of this payoff quote.

If your client is currently in an active bankruptcy, the amounts reflected above are contractual and may not be the amounts owed pursuant to the bankruptcy plan.

Payoff funds must be remitted using a money order, cashier's check or other certified instrument unless a Title Company remits funds.  Any refund (if applicable) will be mailed to the customer's address unless otherwise instructed.

**If you currently have your monthly payment set up on automatic withdrawal, or have any pending payments setup, we advise you to contact Customer Service at the below phone number to cancel your activation/payments prior to payoff.**

For release of documents, please refer to the following for your account type:

•    Mortgage Releases, satisfactions or reconveyances:  These will be mailed to the county for recording and will not be mailed to the party remitting the payoff check.

If the funds received are not sufficient to pay off the account in full, the funds will not be posted until the remaining amount is received to pay off the account in full.

Any existing lender-placed property insurance previously purchased by Ditech on the account will be canceled upon payoff and any related unearned premiums will be refunded.

f you have any other questions, please call Customer Service at (800) 643-0202.

Sincerely,

Ditech
(800) 643-0202
Monday – Friday, 7:00 a.m. to 8:00 p.m. CT, and Saturday 7:00 a.m. to 1:00 p.m. CT

Payoff Quote – Generic Letter, 05/24/2016                                                                LTR-1434

# EXHIBIT 16



<div align="right">

**Ditech Financial LLC**
P.O. Box 6172
Rapid City, SD 57709-6172
T: (800) 643-0202
F: (866) 870-9919
ditech.com

</div>

April 13, 2018

JOE A MARTINEZ
3519 HERITAGE TRL
CELINA TX 75009

RE: Ditech Financial LLC ("Ditech")
    Account Number: ████553

Dear Joe A. Martinez:

This letter is in response to your correspondence received by Ditech regarding the above-referenced account number.

The servicing of this account was transferred from Bank of America N.A. to Green Tree Servicing, LLC effective May 01, 2013. There were no changes to the account terms or conditions due to the transfer. Green Tree Servicing, LLC and Ditech Mortgage Corp. combined to form Ditech Financial LLC, also known as Ditech, effective August 31, 2015. The name change did not affect the terms or conditions of the account either.

Please be advised, when we acquired this account, the escrow account had a deficiency of $48,907.15. A deficiency occurs when the escrow account reaches a negative balance. The escrow account has not been re-analyzed since September 01, 2013 due to the bankruptcy status of the account. A permanent loan modification for the account was approved on November 06, 2013, which would have capitalized the negative balance of the escrow account and deferred it to the end of loan. However, we were unable to proceed and execute the loan modification for the account, as you did not provide the final executed modification documents signed within the required time frame. We have enclosed a copy of the letters dated November 06, 2013 and January 06, 2014 that were sent to the bankruptcy attorney for your reference.

Furthermore, your payments for the May 01, 2017 through October 01, 2017 due dates were received in a timely manner and, as of this date, no late fees have been assessed to the account. Enclosed is a payment history for this account, which also reflects the disbursements from the escrow account. If you have made payments that are not reflected on the enclosed payment history, please provide proof of the payments to the Ditech address or fax number listed above for additional research. Proof of a payment includes one or more of the following: legible copies of the front and back of the cashed money order or check, legible unaltered copies of the bank statement for the period the payment was processed, or legible receipts for Western Union, Money Gram, etc.

As of the date of this correspondence, the account is next due in the amount of $2,045.16 for the May 01, 2018 due date. The unapplied funds balance is $1,860.02.

We apologize for any confusion that this matter has caused. Our mission is to provide exceptional levels of servicing and we continuously strive to recognize opportunities for improvement.

If you have any further questions or concerns, please contact our Customer Service Department at (800) 643-0202, Monday - Friday, 7:00 a.m. to 8:00 p.m. CT, and Saturday 7:00 a.m. to 1:00 p.m. CT.

Sincerely,

Ditech
Customer Service

QpeZtCPf

*4·24·18 Automated SERVICE*
*$177,380.00*



EQUAL HOUSING
**LENDER**
LTR-199

Correspondence - Response Letter, 11/17/2015

# EXHIBIT 17

KAREN L. KELLETT
THEODORE O. BARTHOLOW, III ("THAD")
CAITLYN N. WELLS
O. MAX GARDNER, III, *Of Counsel*



11300 N. CENTRAL EXPRESSWAY, SUITE 301
DALLAS, TEXAS 75243
TEL.214.696.9000
FAX 214.696.9001
WWW.KBLAWTX.COM

July 24, 2018

Ditech Financial LLC
P.O. Box 6176
Rapid City, SD 57709-6176

*Via USPS Certified Mail, Return Receipt Requested*

Re:    *Request for Information*
       *Borrower: Joe Martinez*
       *Loan No. xxxxxx7553*
       *Property Address: 3519 Heritage Trail, Celina, TX 75009*

Dear Sir or Madam:

This is a Request for Information related your servicing of the mortgage loan of the above-named borrower. All references herein are to Regulation X of the Mortgage Servicing Act as amended by the Consumer Financial Protection Bureau pursuant to the Dodd-Frank Act. Please note that these Regulations became effective on January 10, 2014.

The written authority of the borrower to my law firm for this Request is attached hereto and incorporated herein by this reference.

Pursuant to Section 1024.36(c) of Regulation X, you must within five (5) days (excluding legal public holidays, Saturdays, and Sundays) provide our office with a response to this Request acknowledging receipt of the same.

Pursuant to § 1026.36 of Regulation Z, you must within seven (7) days (excluding legal public holidays, Saturdays and Sundays) provide our office with a Reinstatement Quote regarding the above captioned loan.

Pursuant to § 1026.36 of Regulation Z, you must within seven (7) days (excluding legal public holidays, Saturdays and Sundays) provide our office with an itemized Reinstatement Quote regarding the above captioned loan.

Pursuant to § 1026.36 of Regulation Z, you must within seven (7) days (excluding legal public holidays, Saturdays and Sundays) provide our office with a Payoff balance regarding the above-captioned loan. Please note that under this section, there can be no charge for providing the consumer with a "payoff balance."

Pursuant to § 1026.36 of Regulation Z, you must within seven (7) days (excluding legal public holidays, Saturdays and Sundays) provide our office with a detailed and itemized Payoff Statement regarding the above-captioned loan. Please note that under this section, there can be no charge for providing the consumer with a "payoff balance."

Pursuant to § 1024.36(d), you must respond no later than ten (10) days (excluding legal public holidays, Saturdays and Sundays) after you receive this request for information:

1. The identity of and address for the current owner of the mortgage loan identified herein.

2. The identity of and address for the master servicer of the mortgage loan identified herein.

3. The identity of and address for the current servicer of the mortgage loan identified herein.

Pursuant to § 1024.36(d)(ii)(2)(B), you must respond to the following requests not later than thirty (30) days (excluding legal public holidays, Saturdays, and Sundays) after you receive this request for information:

1. Please provide an exact reproduction of the life of loan mortgage transaction history for the above-captioned loan as it appears on the system of record used by the servicer, from the loan inception to the date of your response. The life of loan transaction history means any information from any software program or system by which the servicer records the current mortgage balance, the receipt of all payments, the assessment of any late fees or charges, and the recording of any corporate advances for any fees or charges, including but not limited to property inspection fees, broker price opinion fees, legal fees, escrow fees, processing fees, technology fees, or any other collateral charge.

2. To the extent this life of loan transaction history includes numeric or alpha-numeric codes, please attach a complete list of all such codes and state in plain English a short description for each such code.

3. Please provide copies of all escrow analyses performed on the Borrowers' account from the inception of the loan to the date of your response, including the most recent escrow analysis conducted on the loan.

For purposes of this request, the term "transaction history" includes any activity that credits or debits the outstanding account balance of the mortgage loan in this case. With respect to the transaction history for the subject loan, please provide a complete history of the following:

a) All payments received including the date of receipt;

b) All payments applied including the date of each application;

c) The order of application of all payments with respect to the amounts applied to principal, interest, escrow, late fees, any other fees and charges and the dates of each specific application;

d) All payments received and held in a suspense account, including the amount of each payment, the date each payment was received, the date each payment was placed in suspense, and the amount of the payment;

e) All payments that have been removed from any suspense account and applied to the loan, including the amount of each such application, the type of application (Principal, Interest, Escrow, Late Fees, Any other Fees or Charges), and the date of each such application;

f) The imposition of any late fees, including the amount of the fee, the date of the late fee, and the fact that a late fee was imposed and the reasons therefore;

g) The imposition of any fees such as legal fees, property inspection fees, broker price opinion fees, check by phone fees, telephone fees, or any other fees or charges, including the date of the fee, the reason for the imposition of the fee, and the name of the third-party vendor, if any, to whom the fee or charge was paid;

h) The imposition of daily interest charged to the account;

i) The amount of any partial payments sent to any suspense or unapplied funds account, including the date and amount of each such payment, an explanation of when and how any such funds held in suspense or unapplied funds was in fact applied, the type of application (Principal, Interest, Escrow, Late Fees, Any other Fees or Charges), and the date of each such application;

j) Statement of the current balance in any suspense or unapplied funds account.

Very truly yours,

Caitlyn N. Wells
*Attorney at Law*

cc:    *Joe Martinez*
[Enclosure]

## AUTHORIZATION FOR RELEASE OF RECORDS

To:  Ditech

**TO WHOM IT MAY CONCERN:**

I, the undersigned, hereby authorize the release of any and all of my account records to my attorneys, Theodore O. Bartholow, III ("Thad"), Karen L. Kellett, and Kellett & Bartholow PLLC, (hereinafter referred to as "ATTORNEY"), ATTORNEY's agents and representatives, or to the bearer of this authorization.

Furthermore, you are authorized to discuss those documents and my accounts with ATTORNEY and ATTORNEY's agents and representatives.

A copy or facsimile transmission of this authorization has the same force and effect as an original.

Signature: _____

Print Name: _Joe Martinez_____

Social Security Number: ███████████

Date of Birth: ███████████

# EXHIBIT 18

![ditech logo]
**ditech**®
a Walter company

Ditech Financial LLC
P.O. Box 6172
Rapid City, SD 57709-6172
Tel: 1-877-624-8026
Fax: 1-866-870-9919
Ditech.com

August 02, 2018

LETT & BARTHOLOW PLLC
11300 N CENTRAL EXPRESSWAY
SUITE 301
DALLAS TX 75243-6738

RE: Ditech Financial LLC ("Ditech")
    Account Number: ████7553

Dear LETT & BARTHOLOW PLLC:

Ditech Financial LLC or its Affiliates ("Ditech") received your correspondence regarding the above-referenced account on 07/30/2018.  Your  Request for Information is under review.

We are in the process of retrieving and reviewing the account and servicing files and other information on the subject *matter in order to fully investigate* your inquiry.  You can expect to receive the written response within 30  days from the date we received your correspondence.

If you have further questions or concerns, please do not hesitate to contact our Customer Service Department at 855-858-3873, Monday - Friday 8 a.m. to 4 p.m. MST.



Sincerely,

Ditech Customer Service
Correspondence Department
1-877-624-8026
Monday - Friday 8 a.m. to 4 p.m. MST

This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained *will be used* for that purpose.

Ditech Financial LLC
P.O. Box 6172
Rapid City, SD 57709-6172

+ 0893283 000000748 096C27 - 0927391
LETT & BARTHOLOW PLLC
11300 N CENTRAL EXPRESSWAY
SUITE 301
DALLAS TX 75243-6738



# EXHIBIT 19

 **ditech.**
a Walter company

Ditech Financial LLC
RAFAEL CRUZ
PO Box 6172
Rapid City, SD 57709-6172
Phone: 1-877-624-8026
Fax: 1-866-870-9919
www.ditech.com

August 8, 2018

MARTINEZ JOE A
11300 N CENTRAL EXPRESSWAY
LETT & BARTHOLOW PLLC
DALLAS, TX 75243

RE: **Payoff Statement**

Sent by: Mail

Customer Name: MARTINEZ JOE A and MARTINEZ MICHELLE L
Account Number: ▮▮▮553
Property Address: 3519 HERITAGE TRL
              CELINA, TX 75009
Next Payment Due Date: 09/01/2018        Account Type: Conv w/o PMI

THIS STATEMENT REFLECTS THE TOTAL AMOUNT DUE UNDER THE TERMS OF THE
NOTE/SECURITY INSTRUMENT THROUGH THE CLOSING DATE WHICH IS 08/18/2018. If this obligation
is not paid in full by this date, then you should obtain from us an updated payoff amount before closing.

Total Principal, Interest, and other amounts due under the Note/Security Instrument:

| | |
|---|---|
| Unpaid Balance: | $114,266.07 |
| Interest through 08/18/2018 at 6.625%: | $352.58 |
| Escrow: | $0.00 |
| Buydown Subsidy/Replacement Reserve Balance: | $0.00 |
| Payments Held in Suspense: | $0.00 |
| HUD Subsidy Balance: | $0.00 |
| Pro-Rated Mortgage Insurance Premium: | $0.00 |
| Pro-Rated Private Mortgage Insurance: | $0.00 |
| Pro-Rated Rural Housing Service Fees: | $0.00 |
| Corporate Advances: | $0.00 |
| Deferred Balance: | $0.00 |
| Late Fees: | $0.00 |
| Returned Check Fees: | $0.00 |
| Other Fees: | $0.00 |

**Total Amount Due:**                        $170,061.12

This amount is good through: 08/18/2018 and will accrue $20.74 interest per day after this date. **Any
transactions that occur on or after August 8, 2018 may change the payoff amount.**

Payoffs should be mailed to:

| Wiring Instructions – Fees Apply | Overnight Address – Fees Apply | Standard Mail – No Fees |
|---|---|---|
| ABA: 026009593 | Ditech | Ditech |
| Account: 1257813511 | 5505 N. CUMBERLAND AVE. #307 | DEPT CH 9052 |
| Account Name: Ditech Financial LLC | ATTENTION: 9052 - PAYOFFS | |
| Bank Name: Bank of America | CHICAGO, IL 60656 | PALATINE IL, 60055-9052 |

| Please add account holder's name and number. | | |
|---|---|---|

Special Information to Beneficiary:

The memo section (also referred to as Advice, Instructions to Beneficiary, or OBI) of the payoff wire must include the account name and 10-digit Ditech Financial LLC ("Ditech") account number. If this information is not included or misplaced, the payoff cannot be applied and will be rejected. The result of rejection will require a new payoff quote and likely a larger amount due.

## LEGAL NOTICES

**TEXAS FINANCE CODE SEC. 343.106 REQUIRES PAYOFF STATEMENT CONTAIN CLOSING DATE AND DATE THROUGH WHICH PAYOFF AMOUNT IS VALID. THESE REQUIREMENTS CANNOT BE DELETED FROM PAYOFF STATEMENT.**

**TEXAS FINANCE CODE SEC. 343.106 REQUIRES THE IMPLEMENTING RULE TO ALLOW MORTGAGE SERVICER AT LEAST SEVEN (7) BUSINESS DAYS FROM THE DATE OF RECEIPT OF PAYOFF REQUEST TO RESPOND TO A REQUEST MADE UNDER THE STATUTE. ANY AMOUNT HELD IN ESCROW AT CLOSING WILL BE SETTLED IN ACCORDANCE WITH APPLICABLE FEDERAL LAW.**

## OPTIONAL SECTIONS

This is an Adjustable Rate Mortgage. Under the terms of this account the next Change Date for the interest rate charged in N/A. We will only issue a payoff good through the next Change Date. If the closing date is past the next Change Date an updated Payoff Statement from us will be required.

If account has quotable per diem interest, then "Funds received after 08/18/2018 will be subject to an additional $20.74 of interest per day." FUNDS MUST BE RECEIVED BY 11:00AM CT USING THE OVERNIGHT MAILING ADDRESS FOR SAME-DAY PROCESSING. PAYOFFS ARE NOT POSTED ON WEEKENDS OR HOLIDAYS. INTEREST WILL BE ADDED TO THE ACCOUNT FOR THESE DAYS.

NOTE: This Note/Security Instrument is due for payment on 09/01/2018. If payment is not received by the 16th after the current due date a late charge of 5.000% of P&I will be assessed. Please add that amount to the payoff total.

Escrow Disbursement Amounts & Dates:

| Escrow Type | Est Disb Amt | Est Disb Date |
|---|---|---|
| Home Owners/Hazard | $1,823.96 | 12/01/2018 |
| CNTY TX PARCEL1 | $13,164.71 | 12/01/2018 |

Escrow Balance: $55,442.47

Release of Lien Processing:

For release of documents, please refer to the following for your account type:

- Mortgage Releases, satisfactions or reconveyances: These will be mailed to the county for recording and will not be mailed to the party remitting the payoff check.

Ditech reserves the right to demand additional funds to correct any error or omission in the above payoff figure that was calculated in good faith, whether the error or omission is mathematical, clerical, typographical, or for any transactions that occurred on or after the date of this payoff quote.

If you are currently in an active bankruptcy, the amounts reflected above are contractual and may not be the amounts owed pursuant to the bankruptcy plan.

Texas Payoff – Title Companies Only, 05/12/2015                          LTR-1435

If you currently have your monthly payment set up on automatic withdrawal, or have any pending payments setup, we advise you to contact Customer Service at the below phone number to cancel your activation/payments prior to payoff.

If the funds received are not sufficient to pay off the account in full, the funds will not be posted until the remaining amount is received.

Any existing lender-placed property insurance previously purchased by Ditech on the account will be canceled upon account payoff and any related unearned premiums will be refunded.

If you have any other questions, please call Customer Service at 1-877-624-8026, Monday through Friday 7am – 8pm and Saturday 7am – 1pm CST.

Sincerely,

Ditech
1-877-624-8026
Monday through Friday 7am – 8pm and Saturday 7am – 1pm CST

**BANKRUPTCY NOTICE If you are in bankruptcy or have been discharged in bankruptcy, this letter is for informational purposes only and is not intended to collect a debt, or an act to collect, assess, or recover all or any portion of the debt from you personally.**

Texas Payoff – Title Companies Only, 05/12/2015                                    LTR-1435

# EXHIBIT 20



**Ditech Financial LLC**
P.O. Box 6172
Rapid City, SD 57709-6172
T: (800) 643-0202
F: (866) 870-9919
ditech.com

August 10, 2018

CAITLYN N WELLS
LETT BARTHOLOW PLLC
11300 N CENTRAL EXPRESSWAY SUITE 301
DALLAS TX 75243

RE: Ditech Financial LLC ("Ditech")
   Account Number: ███553; Joe Martinez

Dear Caitlyn N. Wells:

This letter is in response to your Qualified Written Request received by Ditech regarding the above-referenced account number.

In compliance with RESPA guidelines, we are required to provide you with the name and contact information for the owner of the loan within 10 days of receiving your request. The owner of the account is:

Owner of the Mortgage Loan: Fannie Mae
Contact Address: 3900 Wisconsin Ave, NW
        Washington, DC, 20016-2892
Contact Phone Number: 1-800-2FANNIE (1-800-232-6643)
FNMA Loan Number: 1678704899

Further, please be advised that the owner does not service the account. All correspondence and inquiries concerning the account should be addressed to the servicer. The servicer has the authority to act on the owner's behalf with regard to the administration of the account and respond to any questions about the account.

We are in the process of retrieving and reviewing the origination and servicing files and other information on the subject matter, in order to fully investigate your inquiry. Once all the relevant documentation has been reviewed and the matter has been discussed with any relevant Ditech personnel involved, we will provide you with a written response. You can expect to receive the written response within thirty (30) business days from the date we received your correspondence.

If you have any further questions or concerns, please contact our Customer Service Department at (800) 643-0202, Monday - Friday, 7:00 a.m. to 8:00 p.m. CT, and Saturday 7:00 a.m. to 1:00 p.m. CT.

Sincerely,
V. West
Vanessa West
Correspondence Supervisor

JRFKUDHcwnL



EQUAL HOUSING
**LENDER**
LTR-199

Correspondence - Response Letter, 11/17/2015

# EXHIBIT 21



KAREN L. KELLETT
THEODORE O. BARTHOLOW, III ("THAD")
CAITLYN N. WELLS
O. MAX GARDNER, III, *Of Counsel*

11300 N. CENTRAL EXPRESSWAY, SUITE 301
DALLAS, TEXAS 75243
TEL.214.696.9000
FAX 214.696.9001
WWW.KBLAWTX.COM

August 21, 2018

Ditech Financial LLC
P.O. Box 6176
Rapid City, SD 57709-6176

*Via USPS, Certified Mail Return Receipt Requested*

9414 7118 9956 0157 4930 23

CERTIFIED MAIL
TRACKING NUMBER

Re:     *Notice of Error*
        *Borrowers: Joe Martinez*
        *Loan No. xxxxxx7553*
        *Property Address: 3519 Heritage Trail Celina, TX 75009*

Dear Representative:

Please consider this letter to constitute a Notice of Error under 12 CFR § 1024.35 of Regulation X of the Mortgage Servicing Act under RESPA, which Regulation became effective on January 10, 2014. These amendments implemented the Dodd-Frank Wall Street Reform and Consumer Protection Act provisions regarding mortgage loan servicing. Under these amendments, you must acknowledge receipt of this Notice within five (5) days of receipt (excluding legal public holidays, Saturdays, and Sundays) and must advise us of your responses to this notice within thirty (30) days of receipt (excluding legal public holidays, Saturdays, and Sundays).

Pursuant to § 1024.35(b) of Amended Regulation X, the term "error" includes any error relating to the servicing of the consumer's mortgage loan. Please note that "servicing" is defined in § 1024.2(b).

The written authority of the borrowers to my law firm is attached hereto and incorporated herein by this reference.

The borrower received a payoff statement from Ditech dated August 8, 2018, a copy of which is attached hereto for your reference, where Ditech miscalculated the total amount. The amounts for the unpaid balance and interest through 08/18/2018 total out to be $114,618.65 not $170,061.12. Please resend an accurate payoff statement, or, if you contend that the payoff you sent was accurate, please provide all information and documentation relied upon to calculate the payoff amount and explain why the amounts in the payoff statement do not add up to $170,061.12.

Please correct the errors and provide us with notification of the correction, the date of the correction, and contact information for further assistance; or after conducting a reasonable investigation and providing the borrower with a notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information for further assistance.

Please be advised that for 60 days after receipt of a Notice of Error, you may not furnish adverse information to any consumer reporting agency regarding any payment that is the subject of the Notice of Error pursuant to § 1024.35(i).

Very truly yours,

KELLETT & BARTHOLOW PLLC

Theodore O. Bartholow, III ("Thad")

cc:    *Joe Martinez*

[Enclosures]

## AUTHORIZATION FOR RELEASE OF RECORDS

To: _____

**TO WHOM IT MAY CONCERN:**

I, the undersigned, hereby authorize the release of any and all of my account records to my attorneys, Theodore O. Bartholow, III ("Thad"), Karen L. Kellett, and Kellett & Bartholow PLLC, (hereinafter referred to as "ATTORNEY"), ATTORNEY's agents and representatives, or to the bearer of this authorization.

Furthermore, you are authorized to discuss those documents and my accounts with ATTORNEY and ATTORNEY's agents and representatives.

A copy or facsimile transmission of this authorization has the same force and effect as an original.

Signature: _____

Print Name: _Joe Martinez_____

Social Security Number: ▉▉▉▉▉▉▉▉

Date of Birth: ▉▉▉▉▉▉

# EXHIBIT 22



JOE A MARTINEZ
MICHELLE L MARTIBNEZ
KELLETT & BARTHOLOW PLLC
11300 N CENTRAL EXPRESS
DALLAS TX 75243



Ditech Financial LLC
P.O. Box 6172
Rapid City, SD 57709-6172
Phone Number: (800) 643-0202
Fax Number: (866) 870-9919
ditech.com

August 28, 2018

JOE A MARTINEZ
MICHELLE L MARTINEZ
KELLETT & BARTHOLOW PLLC
11300 N CENTRAL EXPRESS
DALLAS TX 75243

RE: **Payoff Statement**
Account: ████ 7553                Name: JOE A MARTINEZ
Property Address:  3519 HERITAGE TRL
                   CELINA TX 75009

The payoff on the above-referenced account is:          $170,878.62
This includes the following:

| | |
|---|---|
| Principal Balance: | $114,266.07 |
| Interest through 09/27/18 at 6.62500%: | $1,170.08 |
| Pro-Rated Mortgage Insurance Premium: | $0.00 |
| Escrow: | $55,442.47 |
| Prepayment Penalty Interest: | $0.00 |
| Buydown/Subsidy/Replacement Reserve Balance: | $0.00 |
| Payments Held in Suspense: | $0.00 |
| Legal Fees: | $0.00 |
| HUD Subsidy Balance: | $0.00 |
| Prepayment Penalty Flat Fee: | $0.00 |
| Pro-Rated Private Mortgage Insurance: | $0.00 |
| Pro-Rated Rural Housing Service Fees: | $0.00 |
| Corporate Advances: | $0.00 |
| Deferred Balance: | $0.00 |
| Late fees: | $0.00 |
| Returned Check Fees: | $0.00 |
| Other Fees: | $0.00 |

**TOTAL AMOUNT DUE:**          $170,878.62

This amount is good through 09/27/2018 and will accrue $20.74 interest per day after this date.  **Any transactions that occur on or after 08/28/2018 may change the payoff amount.**



EQUAL HOUSING
LENDER

All payoffs should be mailed to:

| Wiring Instructions – Fees Apply | Overnight Address – Fees Apply | Standard Mail – No Fees |
|---|---|---|
| ABA: 026009593<br>Account: 1257813511<br>Account Name: Ditech Financial LLC<br>Bank Name: Bank of America<br><br>Please add account holder's name and number. | Ditech<br>5505 N. Cumberland Avenue<br>Suite 307<br>Attention: 9052-PAYOFFS<br>Chicago, IL 60656 | Ditech<br>DEPT. CH 9052<br>Palatine, IL 60055-9052 |

MEMO SECTION:   Payoffs made to locations other than those supplied on this statement may cause a processing delay. The memo section (also referred to as Advice, Instructions to Beneficiary, or OBI) of the payoff wire must include the account name and 10-digit Ditech Financial LLC ("Ditech") account number.   If this information is not included or misplaced, the payoff cannot be applied and will be rejected.  The result of rejection will require a new payoff quote and likely a larger amount due.

Ditech reserves the right to demand additional funds to correct any error or omission in the above payoff figure that was calculated in good faith, whether the error or omission is mathematical, clerical, typographical, or for any transactions that occurred on or after the date of this payoff quote.

If your client is currently in an active bankruptcy, the amounts reflected above are contractual and may not be the amounts owed pursuant to the bankruptcy plan.

Payoff funds must be remitted using a money order, cashier's check or other certified instrument unless a Title Company remits funds.  Any refund (if applicable) will be mailed to the customer's address unless otherwise instructed.

**If you currently have your monthly payment set up on automatic withdrawal, or have any pending payments setup, we advise you to contact Customer Service at the below phone number to cancel your activation/payments prior to payoff.**

For release of documents, please refer to the following for your account type:

- Mortgage Releases, satisfactions or reconveyances:  These will be mailed to the county for recording and will not be mailed to the party remitting the payoff check.

If the funds received are not sufficient to pay off the account in full, the funds will not be posted until the remaining amount is received to pay off the account in full.

Any existing lender-placed property insurance previously purchased by Ditech on the account will be canceled upon payoff and any related unearned premiums will be refunded.

f you have any other questions, please call Customer Service at (800) 643-0202.

Sincerely,

Ditech
(800) 643-0202
Monday – Friday, 7:00 a.m. to 8:00 p.m. CT, and Saturday 7:00 a.m. to 1:00 p.m. CT

# EXHIBIT 23

KELLETT & BARTHOLOW PLLC
11300 N CENTRAL EXPRESSWAY STE 301
DALLAS  TX 75243



Ditech Financial LLC
P.O. Box 6172
Rapid City, SD 57709-6172
T: (800) 643-0202
F: (866) 870-9919
ditech.com

September 6, 2018

KELLETT & BARTHOLOW PLLC
11300 N CENTRAL EXPRESSWAY STE 301
DALLAS  TX 75243

RE: Ditech Financial LLC ("Ditech")
    Account Number: ███7553; Joe Martinez

Dear Caitlyn N. Wells and Theodore O. Bartholow, III:

This letter is in response to your Qualified Written Requests received by Ditech regarding the above-referenced account number.

Ditech has ceased communications with your client. In addition, the mailing address on the account has been changed to reflect your office's address. We have noted our system with the authorization for Kellett & Barlow, PLLC. Therefore, your firm will have access to the account for all account details.

The servicing of the above account was transferred from Bank of America, N.A. to Ditech effective May 01, 2013. There were no changes to the account terms or conditions as a result of the servicing transfer. Please be aware, Ditech did not originate nor owns the account; it merely services it for a third party and can provide information that has been provided to us or from the servicing transfer date forward. We have enclosed a copy of our letter dated August 10, 2018, indicating the owner information for the account. All correspondence and inquiries concerning the mortgage account should be addressed to the account servicer. The servicer has authority to act on the owner's behalf with regard to the administration of the mortgage account and respond to any questions about the mortgage account.

Pursuant to your request, we have enclosed our payoff dated August 28, 2018, all of the Annual Escrow Account Disclosure Statements, and the payment history for the account. Please note that the payoff amount that was provided on August 08, 2018, did have the correct total payoff amount; however, the escrow amount due was not indicated as a line item. The escrow balance at the time was negative $55,442.47, which was included in the payoff quote calculations. The account is not in foreclosure; therefore, we are unable to provide a reinstatement quote. We have not assessed any fees toward this account. This includes (but not limited to) late fees, legal fees, Broker Price Opinion (BPO) fees, and inspection fees. There are not currently any funds in unapplied funds (UAF) or suspense.

The loan is an actual interest loan. Actuarial interest is earned and paid in arrears; therefore, the interest owed will be for 30 days regardless of when the monthly payment is received. If your client makes a payment prior to the due date, they will pay 30 days of interest for the prior month's accrual. Likewise, if they make a payment after the due date, you will also pay 30 days of interest for the prior month's accrual. When paying the account in full, interest will be assessed on a daily basis from the last monthly payment received until the day the payoff is received.

As of the date of this correspondence, the account is next due $8,052.87 for the October 01, 2018 due date. If this payment amount will cause a financial hardship for your client, please contact Customer Service at the number below to discuss what options are available to spread the shortage.

If you have any further questions or concerns, please contact our Customer Service Department at (800) 643-0202, Monday - Friday, 8:00AM to 12:00AM, ET, Saturday 8:00AM to 5:00PM, ET, and Sunday, 1:00PM to 5:00PM, ET.

Sincerely,

*Shea Andersen*

Customer Service Correspondence Supervisor

Correspondence - Response Letter, 11/17/2015



EQUAL HOUSING
LENDER
LTR-199

JRFoXVkl4jn

—
—

—
—



<div style="text-align: right">

**Ditech Financial LLC**
P.O. Box 6172
Rapid City, SD 57709-6172
T: (800) 643-0202
F: (866) 870-9919
ditech.com

</div>

August 10, 2018

CAITLYN N WELLS
LETT BARTHOLOW PLLC
11300 N CENTRAL EXPRESSWAY SUITE 301
DALLAS TX 75243

RE: Ditech Financial LLC ("Ditech")
    Account Number: ███553; Joe Martinez

Dear Caitlyn N. Wells:

This letter is in response to your Qualified Written Request received by Ditech regarding the above-referenced account number.

In compliance with RESPA guidelines, we are required to provide you with the name and contact information for the owner of the loan within 10 days of receiving your request. The owner of the account is:

Owner of the Mortgage Loan:  Fannie Mae
Contact Address:  3900 Wisconsin Ave, NW
                  Washington, DC, 20016-2892
Contact Phone Number:  1-800-2FANNIE (1-800-232-6643)
FNMA Loan Number: 1678704899

Further, please be advised that the owner does not service the account. All correspondence and inquiries concerning the account should be addressed to the servicer. The servicer has the authority to act on the owner's behalf with regard to the administration of the account and respond to any questions about the account.

We are in the process of retrieving and reviewing the origination and servicing files and other information on the subject matter, in order to fully investigate your inquiry. Once all the relevant documentation has been reviewed and the matter has been discussed with any relevant Ditech personnel involved, we will provide you with a written response. You can expect to receive the written response within thirty (30) business days from the date we received your correspondence.

If you have any further questions or concerns, please contact our Customer Service Department at (800) 643-0202, Monday - Friday, 7:00 a.m. to 8:00 p.m. CT, and Saturday 7:00 a.m. to 1:00 p.m. CT.

Sincerely,

V. West

Vanessa West

Correspondence Superviso

JRFKUDHcwnL



**EQUAL HOUSING**
**LENDER**
LTR-199

Correspondence - Response Letter, 11/17/2015



Ditech Financial LLC
P.O. Box 6172
Rapid City, SD 57709-6172
Phone Number: (800) 643-0202
Fax Number: (866) 870-9919
ditech.com

August 28, 2018

JOE A MARTINEZ
MICHELLE L MARTINEZ
KELLETT & BARTHOLOW PLLC
11300 N CENTRAL EXPRESS
DALLAS TX 75243

RE: **Payoff Statement**
Account: ████553          Name: JOE A MARTINEZ
Property Address: 3519 HERITAGE TRL
                  CELINA TX 75009

| | |
|---|---|
| The payoff on the above-referenced account is: | $170,878.62 |
| This includes the following: | |

| | |
|---|---|
| Principal Balance: | $114,266.07 |
| Interest through 09/27/18 at 6.62500%: | $1,170.08 |
| Pro-Rated Mortgage Insurance Premium: | $0.00 |
| Escrow: | $55,442.47 |
| Prepayment Penalty Interest: | $0.00 |
| Buydown/Subsidy/Replacement Reserve Balance: | $0.00 |
| Payments Held in Suspense: | $0.00 |
| Legal Fees: | $0.00 |
| HUD Subsidy Balance: | $0.00 |
| Prepayment Penalty Flat Fee: | $0.00 |
| Pro-Rated Private Mortgage Insurance: | $0.00 |
| Pro-Rated Rural Housing Service Fees: | $0.00 |
| Corporate Advances: | $0.00 |
| Deferred Balance: | $0.00 |
| Late fees: | $0.00 |
| Returned Check Fees: | $0.00 |
| Other Fees: | $0.00 |
| **TOTAL AMOUNT DUE:** | $170,878.62 |

This amount is good through 09/27/2018 and will accrue $20.74 interest per day after this date. **Any transactions that occur on or after 08/28/2018 may change the payoff amount.**



EQUAL HOUSING
LENDER

Payoff Quote – Generic Letter, 05/24/2016                          LTR-1434

All payoffs should be mailed to:

| Wiring Instructions – Fees Apply | Overnight Address – Fees Apply | Standard Mail – No Fees |
|---|---|---|
| ABA: 026009593<br>Account: 1257813511<br>Account Name: Ditech Financial LLC<br>Bank Name: Bank of America<br><br>Please add account holder's<br>name and number. | Ditech<br>5505 N. Cumberland Avenue<br>Suite 307<br>Attention: 9052-PAYOFFS<br>Chicago, IL 60656 | Ditech<br>DEPT. CH 9052<br>Palatine, IL 60055-9052 |

MEMO SECTION:    Payoffs made to locations other than those supplied on this statement may cause a processing delay. The memo section (also referred to as Advice, Instructions to Beneficiary, or OBI) of the payoff wire must include the account name and 10-digit Ditech Financial LLC ("Ditech") account number.   If this information is not included or misplaced, the payoff cannot be applied and will be rejected.  The result of rejection will require a new payoff quote and likely a larger amount due.

Ditech reserves the right to demand additional funds to correct any error or omission in the above payoff figure that was calculated in good faith, whether the error or omission is mathematical, clerical, typographical, or for any transactions that occurred on or after the date of this payoff quote.

If your client is currently in an active bankruptcy, the amounts reflected above are contractual and may not be the amounts owed pursuant to the bankruptcy plan.

Payoff funds must be remitted using a money order, cashier's check or other certified instrument unless a Title Company remits funds.  Any refund (if applicable) will be mailed to the customer's address unless otherwise instructed.

**If you currently have your monthly payment set up on automatic withdrawal, or have any pending payments setup, we advise you to contact Customer Service at the below phone number to cancel your activation/payments prior to payoff.**

For release of documents, please refer to the following for your account type:

• Mortgage Releases, satisfactions or reconveyances:  These will be mailed to the county for recording and will not be mailed to the party remitting the payoff check.

If the funds received are not sufficient to pay off the account in full, the funds will not be posted until the remaining amount is received to pay off the account in full.

Any existing lender-placed property insurance previously purchased by Ditech on the account will be canceled upon payoff and any related unearned premiums will be refunded.

If you have any other questions, please call Customer Service at (800) 643-0202.

Sincerely,

Ditech
(800) 643-0202
Monday – Friday, 7:00 a.m. to 8:00 p.m. CT, and Saturday 7:00 a.m. to 1:00 p.m. CT

Payoff Quote – Generic Letter, 05/24/2016                                                                LTR-1434

ditech®
PO Box 6172
Rapid City, SD 57709-6172

**Annual Escrow Account Disclosure Statement**

| | |
|---|---|
| **Statement Date:** | 07/31/2018 |
| **Your Loan Account Number:** | ███ 7553 |

6-776-14411-0000610-001-100-010-000-000

**Questions?**

JOE A MARTINEZ
MICHELLE L MARTINEZ
11300 N CENTRAL EXPY
DALLAS TX 75243-6717

View your detailed, up-to-date escrow transactions online at myaccount.ditech.com

Call Customer Service at **1-800-643-0202**
Mon. – Fri. 7 am to 8 pm CST
Sat. 7 am to 1 pm CST

---

## SECTION 1  WHY AM I RECEIVING THIS STATEMENT?

We review your escrow account every year to ensure it is properly funded, based on your upcoming taxes and/or insurance premiums. This statement provides details of any changes in your escrow account and resulting changes to your mortgage payment.

Our review shows your escrow account has a **shortage of $68,252.98**. Once we pay your upcoming insurance and/or tax payments, your escrow account will fall below the required minimum balance. See Section 4 for details. Your monthly mortgage payment is also changing **October 01, 2018**. Your new payment amount depends on which option below you choose:

**OPTION 1: Pay Shortage Now**

- Pay in full by check or money order by **Sep. 24, 2018**.
- Your new monthly mortgage payment will be $2,365.12.

**OPTION 2: Spread Shortage Over 12 months (No action required)**

- Add $5,687.75 per month for 12 months to mortgage payment.
- Your new monthly mortgage payment will be $8,052.87.

---

## SECTION 2  WHY ARE MY PAYMENTS CHANGING?

Changes to monthly escrow amounts are common. They're often caused by a change in your taxes and/or insurance premiums. This table shows how your escrow and mortgage payments are changing.

| | Current Payment | Changes | OPTION 1 New Payment | OPTION 2 New Payment |
|---|---|---|---|---|
| Due Date | 08/01/2018 | | 10/01/2018 | 10/01/2018 |
| Principal and Interest | $1,116.06 | | $1,116.06 | $1,116.06 |
| Escrow Payment | $929.10 | h $319.96 | $1,249.06 | $1,249.06 |
| Escrow Shortage | | | | $5,687.75 |
| **TOTAL** | **$2,045.16** | **h $319.96** | **$2,365.12** | **$8,052.87** |

| use anticipated payments from escrow account to determine monthly escrow payment: | | |
|---|---|---|
| Combined Property Insurance | $1,823.96 | |
| Combined Taxes | $13,164.71 | |
| **TOTAL OUTGOING PAYMENTS** | $14,988.67 | ÷ 12 months = **$1,249.06 Monthly Escrow** |

---

## TION 3  WHAT DO I NEED TO DO?

### PAY YOUR SHORTAGE NOW

- Send a check or money order in the amount of $68,252.98, payable to Ditech Financial LLC by **Sep. 24, 2018**.
- Please write your Loan Account Number and "Escrow Shortage" on the check.
- Send the coupon at the bottom of this statement along with your check in the enclosed envelope.
- Unfortunately, you cannot make your escrow shortage payment online or over the phone.

### TO SPREAD YOUR SHORTAGE OUT

No action is needed to spread your shortage payments out. If we don't receive a shortage check or money order from you, we'll automatically add shortage payments of $5,687.75 to your monthly payment.

### REMINDER

If you use automatic bill pay, please contact your bank to adjust your mortgage payment amount, due October 01, 2018.

## SECTION 4   HOW IS MY ESCROW SHORTAGE CALCULATED?

Every year, we analyze what you'll need to pay in taxes and/or insurance premiums. We then calculate the amount you'll likely need in escrow to pay these bills. To determine if you have enough funds in your escrow account, we use this formula:

| | | |
|---|---|---|
| Lowest Projected Balance | -$65,754.86 | (in gray below) |
| - Minimum Escrow Balance | $2,498.12 | (in gray below) |
| **Shortage Amount** | **-$68,252.98** | |

Your escrow account has a minimum balance, as allowed by federal laws, state laws, or your mortgage contract. Your minimum balance includes up to two months of escrow payments to cover increases to your property taxes and/or homeowners insurance. Your minimum escrow balance is $2498.12.

This table shows expected payments in and out of your account over the next 12 months:

| Date | What We Expect You to Pay to Escrow | What We Expect to Pay Out | Payment Description | Expected Balance | Balance Needed in Your Account |
|---|---|---|---|---|---|
| Beginning Balance | | | | -$54,513.37 | $13,739.61 |
| 10/18 | $1,249.06 | | | -$53,264.31 | $14,988.67 |
| 11/18 | $1,249.06 | | | -$52,015.25 | $16,237.73 |
| 12/18 | $1,249.06 | $13,164.71 | CNTY TX PARC | -$63,930.90 | $4,322.08 |
| 12/18 | | $1,823.96 | HAZARD INS | -$65,754.86 | $2,498.12 |
| 01/19 | $1,249.06 | | | -$64,505.80 | $3,747.18 |
| 02/19 | $1,249.06 | | | -$63,256.74 | $4,996.24 |
| 03/19 | $1,249.06 | | | -$62,007.68 | $6,245.30 |
| 04/19 | $1,249.06 | | | -$60,758.62 | $7,494.36 |
| 05/19 | $1,249.06 | | | -$59,509.56 | $8,743.42 |
| 06/19 | $1,249.06 | | | -$58,260.50 | $9,992.48 |
| 07/19 | $1,249.06 | | | -$57,011.44 | $11,241.54 |
| 08/19 | $1,249.06 | | | -$55,762.38 | $12,490.60 |
| 09/19 | $1,249.06 | | | -$54,513.32 | $13,739.66 |
| Ending Balance | | | | -$54,513.32 | $13,739.66 |
| **TOTAL** | **$14,988.72** | **$14,988.67** | | | |

## SECTION 5   WHAT HAPPENED SINCE MY LAST ESCROW REVIEW?

In this table, you can see payments you made into your escrow account and outgoing payments we made from your escrow account. If we projected to pay out a significantly different amount, you'll see the difference noted in gray. These differences may impact whether you have enough funds in your escrow account.

| Date | What You Actually Paid to Escrow | | What We Expected You to Pay to Escrow | What We Actually Paid Out | What We Expected to Pay Out | Payment Description | Actual Balance | Expected Balance from Last Review |
|---|---|---|---|---|---|---|---|---|
| Beginning Balance | | | | | | | -$52,974.95 | $0.00 |
| 04/16 | $2,787.30 | | | | | | -$50,187.65 | $0.00 |
| 05/16 | $929.10 | | | | | | -$49,258.55 | $0.00 |
| 08/16 | $929.10 | | | | | | -$48,329.45 | $0.00 |
| 09/16 | $929.10 | | | | | | -$47,400.35 | $0.00 |
| 10/16 | $929.10 | | | | | | -$46,471.25 | $0.00 |
| 11/16 | $929.10 | | | $5,636.00 | | HAZARD INS | -$51,178.15 | $0.00 |
| 12/16 | $929.10 | | | $12,011.43 | | CNTY TX PARC | -$62,260.48 | $0.00 |
| 01/17 | $1,858.20 | | | $1,558.45 | | HAZARD INS | -$61,960.73 | $0.00 |
| 02/17 | $929.10 | | | | | | -$61,031.63 | $0.00 |
| 03/17 | -$929.10 | | | | | | -$61,960.73 | $0.00 |
| 04/17 | $1,421.40 | | | | | | -$60,539.33 | $0.00 |
| 06/17 | $929.10 | | | | | | -$59,610.23 | $0.00 |
| 07/17 | $929.10 | | | | | | -$58,681.13 | $0.00 |
| 08/17 | $929.10 | | | | | | -$57,752.03 | $0.00 |
| 09/17 | $929.10 | | | | | | -$56,822.93 | $0.00 |
| 10/17 | $929.10 | | | | | | -$55,893.83 | $0.00 |
| 11/17 | $1,858.20 | | | $13,164.71 | | CNTY TX PARC | -$67,200.34 | $0.00 |
| 12/17 | $928.94 | | | $1,823.96 | | HAZARD INS | -$68,095.36 | $0.00 |
| 01/18 | $929.10 | | | | | | -$67,166.26 | $0.00 |
| 02/18 | $929.10 | | | | | | -$66,237.16 | $0.00 |
| 03/18 | $929.10 | | | | | | -$65,308.06 | $0.00 |
| 04/18 | $6,149.19 | | | | | | -$59,158.87 | $0.00 |
| 05/18 | $929.10 | | | | | | -$58,229.77 | $0.00 |
| 06/18 | $929.10 | | | | | | -$57,300.67 | $0.00 |
| 07/18 | $929.10 | | | | | | -$56,371.57 | $0.00 |
| 08/18 | $929.10 | E | | | | | -$55,442.47 | $0.00 |
| | $929.10 | E | | | | | -$54,513.37 | $0.00 |
| ıg Balance | | | | | | | -$54,513.37 | $0.00 |
| ıL | $32,656.13 | | $0.00 | $34,194.55 | $0.00 | | | |

stimated future payment

Green Tree   er   n  LLC
O      172
R    C      57709
1- 00-  3-0202

relationships that work

# green tree

JOE A MARTINEZ
MICHELLE  L MARTINEZ

e   e    er 01  2013

Re    In  Er  A    n       re    e  en
A    n  N

er J e A M r  ne   n M  e e L M r  ne

r  n     en  r  e   n  e  r       n    e       n

r  n    n  In ere          1 11  0
E   r                           97 13
T    M n        en           2 013 19

T    n   e     e      n  r  e r    n  r  n   e   n  r  e  n  n   e      e  n    e
T        e     r     r   n

| PAYMENTS TO ESCROW | | | PAYMENTS FROM ESCROW | | | | ESCROW BALANCE | |
|---|---|---|---|---|---|---|---|---|
| Month | Projected | Actual | Projected | Description | Actual | Description | Projected | Required |
| | | | | | | e   n | 12 7   03- | 5 03  17 |
| e  13 | 97 13 | 00 | 00 | | 00 | | 11   90- | 5 935 30 |
| O  13 | 97 13 | 00 | 00 | | 00 | | 10 9 9 77- | 32  3 |
| N   13 | 97 13 | 00 | 00 | | 00 | | 10 092  - | 7 729 5 |
| e  13 | 97 13 | 00 | 7 729 5 | T | 00 | | 1  925 07- | 97 13 |
| J n 1 | 97 13 | 00 | 00 | | 00 | | 1  027 9  - | 1 79  2 |
| e  1 | 97 13 | 00 | 00 | | 00 | | 15 130  1- | 2  91 39 |
| M r 1 | 97 13 | 00 | 00 | | 00 | | 1  233   - | 3 5   52 |
| A r 1 | 97 13 | 00 | 00 | | 00 | | 13 33  55- | 5  5 |
| M  1 | 97 13 | 00 | 00 | | 00 | | 12  39 2- | 53 2 7 |
| J n 1 | 97 13 | 00 | 00 | | 00 | | 11 5  2 29- | 279 91 |
| J  1 | 97 13 | 00 | 00 | | 00 | | 10   51 - | 7 117 0 |
| A  1 | 97 13 | 00 | 3 03  00 | H  r | 00 | | 12 7   03- | 5 03  17 |

LEA  E   EE  THI   TATEMENT  OR COM  ARI  ON    ITH THE ACT  AL ACTI  IT   IN  O  R
ACCO  NT AT THE  EN  O  THE  E  CRO   ACCO  NTING  COM   TATIONAL   EAR

C    n   1 79  2

n  re  er        r   e    n    n  e    n     e   1 79  2   r l    e    n    e
en     r     r  r         n    n  e    n    r r  e       en  r  e   e   e    er  n
A  r  n    r  r  re       en  r  e       r   r  e   n    n  e    n    e
1 79  2



T   ne   e    n rer    n rn e   n r e    nn  e    en
e   er   rer    n

r je e  E r     re en
H  r       3 03 00
T            7 729 5

T   r je e E r     re en   10 7 5 5  E r     en C    n  10 7 5 5  12 =   97 13

A  er er r n   r n  er  n     re r     n    r e   97 13     e er
re   e er   r er   e re   er e ne  0  n  T re   e e r   r e  e e en
r  e   en

**Green Tree**
**Attn: Escrow Dept L800-LM**
**345 St. Peter Street**
**St. Paul, MN 55102**

e  e  n      1- 00-  3-0202      e n q e n

Re  e

E r  A   n r  n
Green Tree

* Green Tree  er  n  LLC n r e  en e  n   n  r er n    n  n enn  n   Green Tree
C n  er    n C  n

**If you filed bankruptcy, this is not an attempt to collect a debt but is instead a legally required notice regarding your escrowed taxes and insurance.**

# Web History for Account

Inv    2B2

| Borrowers | JOE MARTINEZ, MICHELLE MARTINEZ | Address | | Prin Bal: | 113,380.85 |

| Source | Tran Date | Bac Date | Tran Amount | Tran Code | Tran Desc | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MSP | 09/01/2018 | | $400.00 | 175 | Prin Payment | 901 | Automated ACH Transaction | 10/01/18 | $400.00 | $0.00 | | | | | | -$54,513.37 | $113,380.85 |
| MSP | 09/01/2018 | | $2,045.16 | 173 | Payments | 901 | Automated ACH Transaction | 09/01/18 | $485.22 | $630.84 | $929.10 | | | | | -$54,513.37 | $113,780.85 |
| MSP | 08/01/2018 | | $400.00 | 175 | Prin Payment | 901 | Automated ACH Transaction | 09/01/18 | $400.00 | $0.00 | | | | | | -$55,442.47 | $114,266.07 |
| MSP | 08/01/2018 | | $2,045.16 | 173 | Payments | 901 | Automated ACH Transaction | 08/01/18 | $480.36 | $635.70 | $929.10 | | | | | -$55,442.47 | $114,666.07 |
| MSP | 07/02/2018 | | $400.00 | 175 | Prin Payment | 901 | Automated ACH Transaction | 08/01/18 | $400.00 | $0.00 | | | | | | -$56,371.57 | $115,146.43 |
| MSP | 07/02/2018 | | $2,045.16 | 173 | Payments | 901 | Automated ACH Transaction | 07/01/18 | $475.52 | $640.54 | $929.10 | | | | | -$56,371.57 | $115,546.43 |
| MSP | 06/01/2018 | | $400.00 | 175 | Prin Payment | 901 | Automated ACH Transaction | 07/01/18 | $400.00 | $0.00 | | | | | | -$57,300.67 | $116,021.95 |
| MSP | 06/01/2018 | | $2,045.16 | 173 | Payments | 901 | Automated ACH Transaction | 06/01/18 | $470.72 | $645.34 | $929.10 | | | | | -$57,300.67 | $116,421.95 |
| MSP | 05/23/2018 | | $0.00 | 147 | Misapp Rev | 5PZ | Payoff Transaction | 06/01/18 | $0.00 | $0.00 | -$1,732.10 | | | | | -$58,229.77 | $116,892.67 |
| MSP | 05/11/2018 | | $1,732.10 | 172 | Payments | 5WC | Automated Wire Transaction | 06/01/18 | $0.00 | $0.00 | $1,732.10 | | | | | -$56,497.67 | $116,892.67 |
| MSP | 05/01/2018 | | $400.00 | 175 | Prin Payment | 901 | Automated ACH Transaction | 06/01/18 | $400.00 | $0.00 | | | | | | -$58,229.77 | $116,892.67 |
| MSP | 05/01/2018 | | $2,045.16 | 173 | Payments | 901 | Automated ACH Transaction | 05/01/18 | $465.93 | $650.13 | $929.10 | | | | | -$58,229.77 | $117,292.67 |
| MSP | 04/30/2018 | 04/27/2018 | $0.00 | 173 | Payments | 8FC | Automated Suspense Transaction | 05/01/18 | $0.00 | $0.00 | $1,608.14 | | | -$1,608.14 | | -$59,158.87 | $117,758.60 |
| MSP | 04/27/2018 | 04/04/2018 | $0.00 | 173 | Payments | 4UL | Manual Transaction | 05/01/18 | $0.00 | $0.00 | $3,611.79 | | | -$3,611.79 | | -$60,767.01 | $117,758.60 |
| MSP | 04/27/2018 | 04/02/2018 | $0.00 | 175 | Prin Payment | 4UL | Manual Transaction | 05/01/18 | $400.00 | $0.00 | | | | -$400.00 | | -$64,378.80 | $117,758.60 |
| MSP | 04/27/2018 | 04/02/2018 | $0.00 | 173 | Payments | 4UL | Manual Transaction | 04/01/18 | $461.18 | $654.88 | $929.10 | | | -$2,045.16 | | -$64,378.80 | $118,158.60 |
| MSP | 04/27/2018 | 03/01/2018 | $0.00 | 175 | Prin Payment | 4UL | Manual Transaction | 04/01/18 | $400.00 | $0.00 | | | | -$400.00 | | -$65,307.90 | $118,619.78 |
| MSP | 04/27/2018 | 03/01/2018 | $0.00 | 173 | Payments | 4UL | Manual Transaction | 03/01/18 | $456.45 | $659.61 | $929.10 | | | -$2,045.16 | | -$65,307.90 | $119,019.78 |
| MSP | 04/27/2018 | 02/01/2018 | $0.00 | 175 | Prin Payment | 4UL | Manual Transaction | 03/01/18 | $400.00 | $0.00 | | | | -$400.00 | | -$66,237.00 | $119,476.23 |

| Source | Tran Date | Bac Date | Tran Amt | | Process | Process Desc | | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MSP | 04/27/2018 | 02/01/2018 | $0.00 | 173 | Payments | Manual Transaction | 4UL | 02/01/18 | $451.75 | $664.31 | $929.10 | | | -$2,045.16 | | -$66,237.00 | $119,876.23 |
| MSP | 04/27/2018 | 01/02/2018 | $0.00 | 175 | Prin Payment | Manual Transaction | 4UL | 02/01/18 | $400.00 | $0.00 | | | | -$400.00 | | -$67,166.10 | $120,327.98 |
| MSP | 04/27/2018 | 01/02/2018 | $0.00 | 173 | Payments | Manual Transaction | 4UL | 01/01/18 | $447.07 | $668.99 | $929.10 | | | -$2,045.16 | | -$67,166.10 | $120,727.98 |
| MSP | 04/27/2018 | 12/05/2017 | $0.00 | 173 | Payments | Manual Transaction | 4UL | 12/01/17 | $444.62 | $671.44 | $929.10 | | | -$2,045.16 | | -$68,095.20 | $121,175.05 |
| MSP | 04/27/2018 | 11/03/2017 | $0.00 | 173 | Payments | Manual Transaction | 4UL | 11/01/17 | $442.18 | $673.88 | $929.10 | | | -$2,045.16 | | -$69,024.30 | $121,619.67 |
| MSP | 04/27/2018 | 10/05/2017 | $0.00 | 173 | Payments | Manual Transaction | 4UL | 10/01/17 | $439.75 | $676.31 | $929.10 | | | -$2,045.16 | | -$69,953.40 | $122,061.85 |
| MSP | 04/27/2018 | 09/07/2017 | $0.00 | 173 | Payments | Manual Transaction | 4UL | 09/01/17 | $437.33 | $678.73 | $929.10 | | | -$2,045.16 | | -$70,882.50 | $122,501.60 |
| MSP | 04/27/2018 | 08/07/2017 | $0.00 | 173 | Payments | Manual Transaction | 4UL | 08/01/17 | $434.93 | $681.13 | $929.10 | | | -$2,045.16 | | -$71,811.60 | $122,938.93 |
| MSP | 04/27/2018 | 07/24/2017 | $1,609.42 | 173 | Payments | Manual Transaction | 4UL | 07/01/17 | $432.55 | $683.51 | $929.10 | | | -$435.74 | | -$72,740.70 | $123,373.86 |
| MSP | 04/27/2018 | | $0.00 | 147 | Misapp Rev | Manual Transaction | 4UK | 07/01/17 | $0.00 | $0.00 | | | | | | -$73,669.80 | $123,806.41 |
| MSP | 04/27/2018 | | $0.00 | 147 | Misapp Rev | Manual Transaction | 4UK | 07/01/17 | -$432.55 | -$683.51 | -$929.10 | | | $2,045.16 | | -$73,669.80 | $123,806.41 |
| MSP | 04/27/2018 | | $0.00 | 147 | Misapp Rev | Manual Transaction | 4UK | 08/01/17 | $0.00 | $0.00 | | | | | | -$72,740.70 | $123,373.86 |
| MSP | 04/27/2018 | | $0.00 | 147 | Misapp Rev | Manual Transaction | 4UK | 08/01/17 | -$434.93 | -$681.13 | -$929.10 | | | $2,045.16 | | -$72,740.70 | $123,373.86 |
| MSP | 04/27/2018 | | $0.00 | 147 | Misapp Rev | Manual Transaction | 4UK | 09/01/17 | $0.00 | $0.00 | | | | | | -$71,811.60 | $122,938.93 |
| MSP | 04/27/2018 | | $0.00 | 147 | Misapp Rev | Manual Transaction | 4UK | 09/01/17 | -$437.33 | -$678.73 | -$929.10 | | | $2,045.16 | | -$71,811.60 | $122,938.93 |
| MSP | 04/27/2018 | | $0.00 | 147 | Misapp Rev | Manual Transaction | 4UK | 10/01/17 | $0.00 | $0.00 | | | | | | -$70,882.50 | $122,501.60 |
| MSP | 04/27/2018 | | $0.00 | 147 | Misapp Rev | Manual Transaction | 4UK | 10/01/17 | -$439.75 | -$676.31 | -$929.10 | | | $2,045.16 | | -$70,882.50 | $122,501.60 |
| MSP | 04/27/2018 | | $0.00 | 147 | Misapp Rev | Manual Transaction | 4UK | 11/01/17 | $0.00 | $0.00 | | | | -$1.12 | $1.12 | -$69,953.40 | $122,061.85 |
| MSP | 04/27/2018 | | $0.00 | 147 | Misapp Rev | Manual Transaction | 4UK | 11/01/17 | -$442.18 | -$673.88 | -$929.10 | | | $2,045.16 | | -$69,953.40 | $122,061.85 |
| MSP | 04/27/2018 | | $0.00 | 147 | Misapp Rev | Manual Transaction | 4UK | 12/01/17 | -$444.62 | -$671.44 | -$928.94 | | | $2,045.00 | | -$69,024.30 | $121,619.67 |
| MSP | 04/27/2018 | | $0.00 | 147 | Misapp Rev | Manual Transaction | 4UK | 01/01/18 | -$447.07 | -$668.99 | -$929.10 | | | $2,045.16 | | -$68,095.36 | $121,175.05 |
| MSP | 04/27/2018 | | $0.00 | 147 | Misapp Rev | Manual Transaction | 4UK | 02/01/18 | $0.00 | $0.00 | | | | $400.00 | | -$67,166.26 | $120,727.98 |
| MSP | 04/27/2018 | | $0.00 | 147 | Misapp Rev | Manual Transaction | 4UK | 02/01/18 | -$400.00 | $0.00 | | | | | | -$67,166.26 | $120,727.98 |
| MSP | 04/27/2018 | | $0.00 | 147 | Misapp Rev | Manual Transaction | 4UK | 02/01/18 | -$451.75 | -$664.31 | -$929.10 | | | $2,045.16 | | -$67,166.26 | $120,327.98 |

| Source | Tran Date | Bac Date | Tran Amt | | Process | Process Desc | Due Date | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MSP | 04/27/2018 | | $0.00 | 147 | 4UK | Misapp Rev Manual Transaction | 03/01/18 | $0.00 | $0.00 | | | | $400.00 | | -$66,237.16 | $119,876.23 |
| MSP | 04/27/2018 | | $0.00 | 147 | 4UK | Misapp Rev Manual Transaction | 03/01/18 | -$400.00 | | | | | | | -$66,237.16 | $119,876.23 |
| MSP | 04/27/2018 | | $0.00 | 147 | 4UK | Misapp Rev Manual Transaction | 03/01/18 | -$456.45 | -$659.61 | -$929.10 | | | $2,045.16 | | -$66,237.16 | $119,476.23 |
| MSP | 04/27/2018 | | $0.00 | 147 | 4UK | Misapp Rev Manual Transaction | 04/01/18 | $0.00 | $0.00 | | | | $400.00 | | -$65,308.06 | $119,019.78 |
| MSP | 04/27/2018 | | $0.00 | 147 | 4UK | Misapp Rev Manual Transaction | 04/01/18 | -$400.00 | $0.00 | | | | | | -$65,308.06 | $119,019.78 |
| MSP | 04/27/2018 | | $0.00 | 147 | 4UK | Misapp Rev Manual Transaction | 04/01/18 | -$461.18 | -$654.88 | -$929.10 | | | $2,045.16 | | -$65,308.06 | $118,619.78 |
| MSP | 04/27/2018 | | $0.00 | 147 | 4UK | Misapp Rev Manual Transaction | 05/01/18 | $0.00 | $0.00 | | | | $400.00 | | -$64,378.96 | $118,158.60 |
| MSP | 04/27/2018 | | $0.00 | 147 | 4UK | Misapp Rev Manual Transaction | 05/01/18 | -$400.00 | | | | | | | -$64,378.96 | $118,158.60 |
| MSP | 04/27/2018 | | $0.00 | 147 | 4UK | Misapp Rev Manual Transaction | 05/01/18 | $0.00 | $0.00 | | | | | | -$64,378.96 | $117,758.60 |
| MSP | 04/27/2018 | | $0.00 | 147 | 4UK | Misapp Rev Manual Transaction | 05/01/18 | $0.00 | $0.00 | | | | | | -$64,378.96 | $117,758.60 |
| MSP | 04/27/2018 | | $0.00 | 147 | 4UK | Misapp Rev Manual Transaction | 05/01/18 | $0.00 | $0.00 | -$3,611.79 | | | $3,611.79 | | -$64,378.96 | $117,758.60 |
| MSP | 04/27/2018 | | $0.00 | 147 | 4UK | Misapp Rev Manual Transaction | 05/01/18 | $0.00 | $0.00 | -$1,860.02 | | | | | -$60,767.17 | $117,758.60 |
| MSP | 04/13/2018 | 04/12/2018 | $0.00 | 173 | 8FK | Automated Suspense Transaction | 05/01/18 | $0.00 | $0.00 | $1,860.02 | | | -$1,860.02 | | -$58,907.15 | $117,758.60 |
| MSP | 04/12/2018 | | $138.66 | 173 | 5BK | Manual Bankruptcy Transaction | 05/01/18 | $0.00 | $0.00 | | | | $138.66 | | -$60,767.17 | $117,758.60 |
| MSP | 04/12/2018 | | $1,721.36 | 173 | 5BK | Manual Bankruptcy Transaction | 05/01/18 | $0.00 | $0.00 | | | | $1,721.36 | | -$60,767.17 | $117,758.60 |
| MSP | 04/05/2018 | 04/04/2018 | $0.00 | 173 | 8FD | Automated Suspense Transaction | 05/01/18 | $0.00 | $0.00 | $3,611.79 | | | -$3,611.79 | | -$60,767.17 | $117,758.60 |
| MSP | 04/04/2018 | | $1,732.10 | 173 | 5CR | Manual Transaction | 05/01/18 | $0.00 | $0.00 | | | | $1,732.10 | | -$64,378.96 | $117,758.60 |
| MSP | 04/04/2018 | | $1,879.69 | 173 | 5CR | Manual Transaction | 05/01/18 | $0.00 | $0.00 | | | | $1,879.69 | | -$64,378.96 | $117,758.60 |
| MSP | 04/02/2018 | | $400.00 | 175 | 901 | Pnn Payment Automated ACH Transaction | 05/01/18 | $400.00 | $0.00 | | | | | | -$64,378.96 | $117,758.60 |
| MSP | 04/02/2018 | | $2,045.16 | 173 | 901 | Payments Automated ACH Transaction | 04/01/18 | $461.18 | $654.88 | $929.10 | | | | | -$64,378.96 | $118,158.60 |
| MSP | 03/01/2018 | | $400.00 | 175 | 901 | Pnn Payment Automated ACH Transaction | 04/01/18 | $400.00 | $0.00 | | | | | | -$65,308.06 | $118,619.78 |
| MSP | 03/01/2018 | | $2,045.16 | 173 | 901 | Payments Automated ACH Transaction | 03/01/18 | $456.45 | $659.61 | $929.10 | | | | | -$65,308.06 | $119,019.78 |

e 3          0

| Source | Tran Date | Bac Date | Tran Amt | | Process Desc | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MSP | 02/01/2018 | | $400.00 | 175 | Prin Payment | 901 | Automated ACH Transaction | 03/01/18 | $400.00 | $0.00 | | | | | | -$66,237.16 | $119,476.23 |
| MSP | 02/01/2018 | | $2,045.16 | 173 | Payments | 901 | Automated ACH Transaction | 02/01/18 | $451.75 | $664.31 | $929.10 | | | | | -$66,237.16 | $119,876.23 |
| MSP | 01/02/2018 | | $400.00 | 175 | Prin Payment | 901 | Automated ACH Transaction | 02/01/18 | $400.00 | $0.00 | | | | | | -$67,166.26 | $120,327.98 |
| MSP | 01/02/2018 | | $2,045.16 | 173 | Payments | 901 | Automated ACH Transaction | 01/01/18 | $447.07 | $668.99 | $929.10 | | | | | -$67,166.26 | $120,727.98 |
| MSP | 12/13/2017 | | -$1,823.96 | 351 | Hazard Ins Disb | H98 | Transaction | 12/01/18 | $0.00 | $0.00 | -$1,823.96 | | | | | -$68,095.36 | $121,175.05 |
| MSP | 12/05/2017 | | $2,045.00 | 172 | Payments | 8DA | Automated Lockbox Transaction | 12/01/17 | $444.62 | $671.44 | $928.94 | | | | | -$66,271.40 | $121,175.05 |
| MSP | 11/21/2017 | 11/06/2017 | $0.00 | 173 | Payments | BYD | Manual Bankruptcy Transaction | 11/01/17 | $442.18 | $673.88 | $929.10 | | | -$2,045.16 | | -$67,200.34 | $121,619.67 |
| MSP | 11/20/2017 | | -$13,164.71 | 312 | County Tax Disb | EGL | Transaction | 12/01/17 | $0.00 | $0.00 | -$13,164.71 | | | | | -$68,129.44 | $122,061.85 |
| MSP | 11/20/2017 | | $0.00 | 173 | Payments | 5BX | Manual Bankruptcy Transaction | 11/01/17 | $0.00 | $0.00 | | | | $1.12 | -$1.12 | -$54,964.73 | $122,061.85 |
| MSP | 11/06/2017 | | $0.00 | 173 | Payments | B0B | Automated Bankruptcy Transaction | 10/01/17 | $439.75 | $676.31 | $929.10 | | | -$2,045.16 | | -$54,964.73 | $122,061.85 |
| MSP | 11/03/2017 | | $2,045.00 | 172 | Payments | 8DA | Automated Lockbox Transaction | 10/01/17 | $0.00 | $0.00 | | | | $2,045.00 | | -$55,893.83 | $122,501.60 |
| MSP | 10/06/2017 | | $0.00 | 173 | Payments | B0A | Automated Bankruptcy Transaction | 09/01/17 | $437.33 | $678.73 | $929.10 | | | -$2,045.16 | | -$55,893.83 | $122,501.60 |
| MSP | 10/05/2017 | | $2,045.00 | 172 | Payments | 8DA | Automated Lockbox Transaction | 09/01/17 | $0.00 | $0.00 | | | | $2,045.00 | | -$56,822.93 | $122,938.93 |
| MSP | 09/08/2017 | | $0.00 | 173 | Payments | B0A | Automated Bankruptcy Transaction | 08/01/17 | $434.93 | $681.13 | $929.10 | | | -$2,045.16 | | -$56,822.93 | $122,938.93 |
| MSP | 09/07/2017 | | $2,045.00 | 172 | Payments | 8DA | Automated Lockbox Transaction | 08/01/17 | $0.00 | $0.00 | | | | $2,045.00 | | -$57,752.03 | $123,373.86 |
| MSP | 08/08/2017 | | $0.00 | 173 | Payments | B0B | Automated Bankruptcy Transaction | 07/01/17 | $432.55 | $683.51 | $929.10 | | | -$2,045.16 | | -$57,752.03 | $123,373.86 |
| MSP | 08/07/2017 | | $2,045.00 | 172 | Payments | 8DA | Automated Lockbox Transaction | 07/01/17 | $0.00 | $0.00 | | | | $2,045.00 | | -$58,681.13 | $123,806.41 |
| MSP | 07/10/2017 | | $0.00 | 173 | Payments | B0B | Automated Bankruptcy Transaction | 06/01/17 | $430.17 | $685.89 | $929.10 | | | -$2,045.16 | | -$58,681.13 | $123,806.41 |

e          0

| Source | Tran Date | Bac Date | Tran Am | | Process | Process Desc | Due Date | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MSP | 07/08/2017 | | $2,045.00 | 172 | Payments | 8DA | Automated Lockbox Transaction | 06/01/17 | $0.00 | $0.00 | | | | $2,045.00 | | -$59,610.23 | $124,236.58 |
| MSP | 06/07/2017 | | $0.00 | 173 | Payments | B0B | Automated Bankruptcy Transaction | 05/01/17 | $427.81 | $688.25 | $929.10 | | | -$2,045.16 | | -$59,610.23 | $124,236.58 |
| MSP | 06/06/2017 | | $2,045.00 | 172 | Payments | 8DA | Automated Lockbox Transaction | 05/01/17 | $0.00 | $0.00 | | | | $2,045.00 | | -$60,539.33 | $124,664.39 |
| MSP | 05/04/2017 | | $2,045.00 | 172 | Payments | 8DA | Automated Lockbox Transaction | 05/01/17 | $0.00 | $0.00 | | | | $2,045.00 | | -$60,539.33 | $124,664.39 |
| MSP | 04/17/2017 | | $0.00 | 173 | Payments | 5T9 | Manual Suspense Transaction | 05/01/17 | $0.00 | $0.00 | $492.30 | | | -$492.30 | | -$60,539.33 | $124,664.39 |
| MSP | 04/06/2017 | | $0.00 | 173 | Payments | B0B | Automated Bankruptcy Transaction | 04/01/17 | $425.46 | $690.60 | $929.10 | | | -$2,045.16 | | -$61,031.63 | $124,664.39 |
| MSP | 04/05/2017 | 04/03/2017 | $2,045.00 | 172 | Payments | 8CA | Automated Lockbox Transaction | 04/01/17 | $0.00 | $0.00 | | | | $2,045.00 | | -$61,960.73 | $125,089.85 |
| MSP | 03/01/2017 | | $0.00 | 147 | Misapp Rev | 7CT | Manual Transaction | 04/01/17 | -$425.46 | -$690.60 | -$929.10 | | | $435.74 | | -$61,960.73 | $125,089.85 |
| MSP | 02/28/2017 | | $0.00 | 173 | Payments | B0B | Automated Bankruptcy Transaction | 04/01/17 | $425.46 | $690.60 | $929.10 | | | -$2,045.16 | | -$61,031.63 | $124,664.39 |
| MSP | 02/27/2017 | | $2,045.00 | 172 | Payments | 8CB | Automated Lockbox Transaction | 04/01/17 | $0.00 | $0.00 | | | | $2,045.00 | | -$61,960.73 | $125,089.85 |
| MSP | 01/31/2017 | | $0.00 | 173 | Payments | B0B | Automated Bankruptcy Transaction | 03/01/17 | $423.12 | $692.94 | $929.10 | | | -$2,045.16 | | -$61,960.73 | $125,089.85 |
| MSP | 01/30/2017 | 01/29/2017 | $2,045.00 | 172 | Payments | 8CB | Automated Lockbox Transaction | 03/01/17 | $0.00 | $0.00 | | | | $2,045.00 | | -$62,889.83 | $125,512.97 |
| MSP | 01/23/2017 | | -$1,558.45 | 351 | Hazard Ins Disb | HOT | Transaction | 12/01/17 | $0.00 | $0.00 | -$1,558.45 | | | | | -$62,889.83 | $125,512.97 |
| MSP | 01/04/2017 | | $0.00 | 173 | Payments | B0D | Automated Bankruptcy Transaction | 02/01/17 | $420.80 | $695.26 | $929.10 | | | -$2,045.16 | | -$61,331.38 | $125,512.97 |
| MSP | 01/03/2017 | 01/02/2017 | $2,017.00 | 172 | Payments | 8CB | Automated Lockbox Transaction | 02/01/17 | $0.00 | $0.00 | | | | $2,017.00 | | -$62,260.48 | $125,933.77 |
| MSP | 12/15/2016 | | -$12,011.43 | 312 | County Tax Disb | EGL | Transaction | 12/01/16 | $0.00 | $0.00 | -$12,011.43 | | | | | -$62,260.48 | $125,933.77 |
| MSP | 12/08/2016 | | $0.00 | 173 | Payments | B0B | Automated Bankruptcy Transaction | 01/01/17 | $418.49 | $697.57 | $929.10 | | | -$2,045.16 | | -$50,249.05 | $125,933.77 |
| MSP | 12/07/2016 | 12/05/2016 | $2,017.00 | 172 | Payments | 8CA | Automated Lockbox Transaction | 01/01/17 | $0.00 | $0.00 | | | | $2,017.00 | | -$51,178.15 | $126,352.26 |

e 5          0

| Source | Tran Date | Bac Date | Tran Amt | | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MSP | 11/14/2016 | 11/09/2016 | $0.00 | 173 | BBD | Manual Bankruptcy Transaction | 12/01/16 | $416.19 | $699.87 | $929.10 | | | -$2,045.16 | | -$51,178.15 | $126,352.26 |
| MSP | 11/12/2016 | 11/09/2016 | $2,017.00 | 172 | 8CA | Automated Lockbox Transaction | 12/01/16 | $0.00 | $0.00 | | | | $2,017.00 | | -$52,107.25 | $126,768.45 |
| MSP | 11/01/2016 | | -$5,636.00 | 351 | HOT | Transaction | 10/01/17 | $0.00 | $0.00 | -$5,636.00 | | | | | -$52,107.25 | $126,768.45 |
| MSP | 10/10/2016 | 10/08/2016 | $0.00 | 173 | BD5 | Manual Bankruptcy Transaction | 11/01/16 | $413.91 | $702.15 | $929.10 | | | -$2,045.16 | | -$46,471.25 | $126,768.45 |
| MSP | 10/08/2016 | | $2,017.00 | 172 | 8CA | Automated Lockbox Transaction | 11/01/16 | $0.00 | $0.00 | | | | $2,017.00 | | -$47,400.35 | $127,182.36 |
| MSP | 09/08/2016 | 09/01/2016 | $0.00 | 173 | BID | Manual Bankruptcy Transaction | 10/01/16 | $411.63 | $704.43 | $929.10 | | | -$2,045.16 | | -$47,400.35 | $127,182.36 |
| MSP | 09/03/2016 | 09/01/2016 | $2,017.00 | 172 | 8CA | Automated Lockbox Transaction | 10/01/16 | $0.00 | $0.00 | | | | $2,017.00 | | -$48,329.45 | $127,593.99 |
| MSP | 08/11/2016 | | $0.00 | 173 | BMD | Manual Bankruptcy Transaction | 09/01/16 | $409.37 | $706.69 | $929.10 | | | -$2,045.16 | | -$48,329.45 | $127,593.99 |
| MSP | 05/16/2016 | | $0.00 | 173 | BD7 | Manual Bankruptcy Transaction | 08/01/16 | $407.13 | $708.93 | $929.10 | | | -$2,045.16 | | -$49,258.55 | $128,003.36 |
| MSP | 04/28/2016 | | $0.00 | 173 | BD7 | Manual Bankruptcy Transaction | 07/01/16 | $404.89 | $711.17 | $929.10 | | | | | -$50,187.65 | $128,410.49 |
| MSP | 04/28/2016 | | $0.00 | 173 | BD7 | Manual Bankruptcy Transaction | 06/01/16 | $402.67 | $713.39 | $929.10 | | | | | -$51,116.75 | $128,815.38 |
| MSP | 04/28/2016 | | $0.00 | 173 | BD7 | Manual Bankruptcy Transaction | 05/01/16 | $400.46 | $715.60 | $929.10 | | | -$6,135.48 | | -$52,045.85 | $129,218.05 |
| GTA | 03/17/2016 | | $2,045.16 | 118 | UF | UAF AUTOMATED TRANS-PMTS & REV | 04/01/16 | $398.26 | $717.80 | | | | | | -$52,974.95 | $129,618.51 |
| | | | | | ESC 80 | | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 03/17/2016 | | -$2,045.16 | 218 | UF | UAF AUTOMATED TRANS-PMTS & REV | 04/01/16 | $0.00 | $0.00 | | | | | | -$53,904.05 | $130,016.77 |
| | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 02/15/2016 | | $2,045.16 | 118 | UF | UAF AUTOMATED TRANS-PMTS & REV | 03/01/16 | $396.07 | $719.99 | | | | | | -$53,904.05 | $130,016.77 |

c        0

| Source | Tran Date | Bac | Date | Tran Amt | | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | ESC 80 | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 02/15/2016 | | | -$2,045.16 | 218 | | Disbursement:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 03/01/16 | $0.00 | $0.00 | | | | | -$54,833.15 | $130,412.84 |
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 01/18/2016 | | | $2,045.16 | 118 | | Payment:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 02/01/16 | $393.90 | $722.16 | | | | | -$54,833.15 | $130,412.84 |
| | | | | | | | ESC 80 | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 01/18/2016 | | | -$2,045.16 | 218 | | Disbursement:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 02/01/16 | $0.00 | $0.00 | | | | | -$55,762.25 | $130,806.74 |
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 12/17/2015 | | | $2,045.16 | 118 | | Payment:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 01/01/16 | $391.74 | $724.32 | | | | | -$55,762.25 | $130,806.74 |
| | | | | | | | ESC 80 | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 12/17/2015 | | | -$2,045.16 | 218 | | Disbursement:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 01/01/16 | $0.00 | $0.00 | | | | | -$56,691.35 | $131,198.48 |
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 11/25/2015 | | | -$10,957.28 | 210 | | Disbursement:Escrow Only | E7 | Esc Disb-County | | $0.00 | $0.00 | | | | | -$56,691.35 | $131,198.48 |
| | | | | | | | ESC 80 | | $0.00 | $0.00 | -$10,957.28 | | | | | | |
| GTA | 11/16/2015 | | | $2,045.16 | 118 | | Payment:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 12/01/15 | $389.58 | $726.48 | | | | | -$45,734.07 | $131,198.48 |
| | | | | | | | ESC 80 | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 11/16/2015 | | | -$2,045.16 | 218 | | Disbursement:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 12/01/15 | $0.00 | $0.00 | | | | | -$46,663.17 | $131,588.06 |
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 10/17/2015 | | | $2,045.16 | 118 | | Payment:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 11/01/15 | $387.45 | $728.61 | | | | | -$46,663.17 | $131,588.06 |
| | | | | | | | ESC 80 | | $0.00 | $0.00 | $929.10 | | | | | | |

| Source | Tran Date | Bac | Date | Tran Amt | | Process | Process Desc | Due Date | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GTA | 10/17/2015 | | | -$2,045.16 | 218 | Disbursement:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 11/01/15 | $0.00 | $0.00 | | | | | | -$47,592.27 | $131,975.51 |
| | | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 09/16/2015 | | | $2,045.16 | 118 | Payment:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 10/01/15 | $385.32 | $730.74 | | | | | | -$47,592.27 | $131,975.51 |
| | | | | | | ESC 80 | | | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 09/16/2015 | | | -$2,045.16 | 218 | Disbursement:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 10/01/15 | $0.00 | $0.00 | | | | | | -$48,521.37 | $132,360.83 |
| | | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 09/14/2015 | 09/13/2015 | | $2,000.00 | 112 | Mellon Chicago, IL | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | | -$48,521.37 | $132,360.83 |
| | | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | $2,000.00 | | | |
| GTA | 08/31/2015 | 08/30/2015 | | $2,000.00 | 112 | Mellon Chicago, IL | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | | -$48,521.37 | $132,360.83 |
| | | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | $2,000.00 | | | |
| GTA | 08/17/2015 | | | $2,045.16 | 118 | Payment:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 09/01/15 | $383.20 | $732.86 | | | | | | -$48,521.37 | $132,360.83 |
| | | | | | | ESC 80 | | | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 08/17/2015 | | | -$2,045.16 | 218 | Disbursement:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 09/01/15 | $0.00 | $0.00 | | | | | | -$49,450.47 | $132,744.03 |
| | | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 08/10/2015 | | | -$5,723.00 | 210 | Disbursement:Escrow Only | F7 | Esc Disb-Hazard/Fire | | $0.00 | $0.00 | | | | | | -$49,450.47 | $132,744.03 |
| | | | | | | ESC 80 | | | | $0.00 | $0.00 | -$5,723.00 | | | | | | |
| GTA | 08/08/2015 | 08/06/2015 | | $2,000.00 | 112 | Mellon Chicago, IL | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | | -$43,727.47 | $132,744.03 |
| | | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | $2,000.00 | | | |
| GTA | 07/31/2015 | 05/30/2015 | | $202.77 | 103 | BK Trustee Payment | T1 | CASH-TRUSTEE-PRE-PETITION | | $0.00 | $0.00 | | | | | | -$43,727.47 | $132,744.03 |
| | | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | $202.77 | | | |
| GTA | 07/17/2015 | | | $2,045.16 | 118 | Payment:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 08/01/15 | $381.10 | $734.96 | | | | | | -$43,727.47 | $132,744.03 |

c          0

| Source | Tran Date | Bac Date | Tran Amt | | Process | Process Desc | Due Date | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | ESC 80 | | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 07/17/2015 | | -$2,045.16 | 218 | Disbursement:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 08/01/15 | $0.00 | $0.00 | | | | | | -$44,656.57 | $133,125.13 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 06/26/2015 | 05/30/2015 | $2,517.17 | 103 | BK Trustee Payment | T1 | CASH-TRUSTEE-PRE-PETITION | | $0.00 | $0.00 | | | | | | -$44,656.57 | $133,125.13 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | $2,517.17 | | | |
| GTA | 06/17/2015 | 06/14/2015 | $2,000.00 | 112 | Mellon Chicago, IL | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | | -$44,656.57 | $133,125.13 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | $2,000.00 | | | |
| GTA | 06/16/2015 | | $2,045.16 | 118 | Payment:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 07/01/15 | $379.01 | $737.05 | | | | | | -$44,656.57 | $133,125.13 |
| | | | | | ESC 80 | | | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 06/16/2015 | | -$2,045.16 | 218 | Disbursement:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 07/01/15 | $0.00 | $0.00 | | | | | | -$45,585.67 | $133,504.14 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 05/27/2015 | 05/24/2015 | $2,000.00 | 112 | Mellon Chicago, IL | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | | -$45,585.67 | $133,504.14 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | $2,000.00 | | | |
| GTA | 05/27/2015 | 05/24/2015 | $2,000.00 | 112 | Mellon Chicago, IL | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | | -$45,585.67 | $133,504.14 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | $2,000.00 | | | |
| GTA | 05/18/2015 | | $2,045.16 | 118 | Payment:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 06/01/15 | $376.92 | $739.14 | | | | | | -$45,585.67 | $133,504.14 |
| | | | | | ESC 80 | | | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 05/18/2015 | | -$2,045.16 | 218 | Disbursement:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 06/01/15 | $0.00 | $0.00 | | | | | | -$46,514.77 | $133,881.06 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 04/16/2015 | | $2,045.16 | 118 | Payment:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 05/01/15 | $374.86 | $741.20 | | | | | | -$46,514.77 | $133,881.06 |
| | | | | | ESC 80 | | | | $0.00 | $0.00 | $929.10 | | | | | | |

| Source | Tran Date | Bac Date | Tran Amo | | Process | Process Desc | | Due Date | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GTA | 04/16/2015 | | -$2,045.16 | 218 | Disbursement:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 05/01/15 | $0.00 | $0.00 | | | | | | -$47,443.87 | $134,255.92 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 04/07/2015 | 04/06/2015 | $3,470.68 | 103 | BK Trustee Payment | T2 | CASH-TRUSTEE-POST-PETITION | | $0.00 | $0.00 | | | | | | -$47,443.87 | $134,255.92 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | $3,470.68 | | | |
| GTA | 04/07/2015 | 04/06/2015 | $279.58 | 103 | BK Trustee Payment | T1 | CASH-TRUSTEE-PRE-PETITION | | $0.00 | $0.00 | | | | | | -$47,443.87 | $134,255.92 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | $279.58 | | | |
| GTA | 03/17/2015 | | $2,045.16 | 118 | Payment:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 04/01/15 | $372.80 | $743.26 | | | | | | -$47,443.87 | $134,255.92 |
| | | | | | ESC 80 | | | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 03/17/2015 | | -$2,045.16 | 218 | Disbursement:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 04/01/15 | $0.00 | $0.00 | | | | | | -$48,372.97 | $134,628.72 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 02/28/2015 | 02/26/2015 | $2,000.00 | 112 | Mellon Chicago, IL | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | | -$48,372.97 | $134,628.72 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | $2,000.00 | | | |
| GTA | 02/28/2015 | 02/26/2015 | $2,000.00 | 112 | Mellon Chicago, IL | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | | -$48,372.97 | $134,628.72 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | $2,000.00 | | | |
| GTA | 02/14/2015 | | $2,045.16 | 118 | Payment:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 03/01/15 | $370.75 | $745.31 | | | | | | -$48,372.97 | $134,628.72 |
| | | | | | ESC 80 | | | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 02/14/2015 | | -$2,045.16 | 218 | Disbursement:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 03/01/15 | $0.00 | $0.00 | | | | | | -$49,302.07 | $134,999.47 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 02/03/2015 | 01/30/2015 | $1,737.36 | 103 | BK Trustee Payment | T2 | CASH-TRUSTEE-POST-PETITION | | $0.00 | $0.00 | | | | | | -$49,302.07 | $134,999.47 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | $1,737.36 | | | |
| GTA | 02/03/2015 | 01/30/2015 | $139.95 | 103 | BK Trustee Payment | T1 | CASH-TRUSTEE-PRE-PETITION | | $0.00 | $0.00 | | | | | | -$49,302.07 | $134,999.47 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | $139.95 | | | |

| Source | Tran Date | Bac Date | Tran Amt | | Process | Process Desc | Due Date | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GTA | 01/17/2015 | | $2,045.16 | 118 | UF | UAF AUTOMATED TRANS-PMTS & REV | 02/01/15 | $368.71 | $747.35 | | | | | | -$49,302.07 | $134,999.47 |
| | | | | | | ESC 80 | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 01/17/2015 | | -$2,045.16 | 218 | UF | UAF AUTOMATED TRANS-PMTS & REV | 02/01/15 | $0.00 | $0.00 | | | | | | -$50,231.17 | $135,368.18 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 12/29/2014 | 12/27/2014 | $1,737.75 | 103 | T2 | CASH-TRUSTEE-POST-PETITION | | $0.00 | $0.00 | | | | | | -$50,231.17 | $135,368.18 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,737.75 | | | |
| GTA | 12/29/2014 | 12/27/2014 | $139.98 | 103 | T1 | CASH-TRUSTEE-PRE-PETITION | | $0.00 | $0.00 | | | | | | -$50,231.17 | $135,368.18 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $139.98 | | | |
| GTA | 12/17/2014 | | $2,045.16 | 118 | UF | UAF AUTOMATED TRANS-PMTS & REV | 01/01/15 | $366.69 | $749.37 | | | | | | -$50,231.17 | $135,368.18 |
| | | | | | | ESC 80 | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 12/17/2014 | | -$2,045.16 | 218 | UF | UAF AUTOMATED TRANS-PMTS & REV | 01/01/15 | $0.00 | $0.00 | | | | | | -$51,160.27 | $135,734.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 12/01/2014 | 11/29/2014 | $1,738.82 | 103 | T2 | CASH-TRUSTEE-POST-PETITION | | $0.00 | $0.00 | | | | | | -$51,160.27 | $135,734.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,738.82 | | | |
| GTA | 12/01/2014 | 11/29/2014 | $140.07 | 103 | T1 | CASH-TRUSTEE-PRE-PETITION | | $0.00 | $0.00 | | | | | | -$51,160.27 | $135,734.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $140.07 | | | |
| GTA | 11/21/2014 | | -$9,368.21 | 210 | E7 | Esc Disb-County | | $0.00 | $0.00 | | | | | | -$51,160.27 | $135,734.87 |
| | | | | | | ESC 80 | | $0.00 | $0.00 | -$9,368.21 | | | | | | |
| GTA | 11/18/2014 | | $2,045.16 | 118 | UF | UAF AUTOMATED TRANS-PMTS & REV | 12/01/14 | $364.68 | $751.38 | | | | | | -$41,792.06 | $135,734.87 |
| | | | | | | ESC 80 | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 11/18/2014 | | -$2,045.16 | 218 | UF | UAF AUTOMATED TRANS-PMTS & REV | 12/01/14 | $0.00 | $0.00 | | | | | | -$42,721.16 | $136,099.55 |

| Source | Tran Date | Bac Date | Tran Amt | | Process | Process Desc | Due Date | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 11/08/2014 | 11/06/2014 | $1,700.00 | 112 | Mellon Chicago, IL | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | | -$42,721.16 | $136,099.55 |
| | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | $1,700.00 | | | |
| GTA | 11/08/2014 | 11/06/2014 | $500.00 | 112 | Mellon Chicago, IL | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | | -$42,721.16 | $136,099.55 |
| | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | $500.00 | | | |
| GTA | 10/17/2014 | | $2,045.16 | 118 | Payment:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 11/01/14 | $362.67 | $753.39 | | | | | | -$42,721.16 | $136,099.55 |
| | | | | | ESC 80 | | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 10/17/2014 | | -$2,045.16 | 218 | Disbursement:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 11/01/14 | $0.00 | $0.00 | | | | | | -$43,650.26 | $136,462.22 |
| | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 10/07/2014 | | $2,300.00 | 112 | Mellon Chicago, IL | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | | -$43,650.26 | $136,462.22 |
| | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | $2,300.00 | | | |
| GTA | 09/16/2014 | | $2,045.16 | 118 | Payment:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 10/01/14 | $360.68 | $755.38 | | | | | | -$43,650.26 | $136,462.22 |
| | | | | | ESC 80 | | | $0.00 | $0.00 | $929 10 | | | | | | |
| GTA | 09/16/2014 | | -$2,045.16 | 218 | Disbursement:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 10/01/14 | $0.00 | $0.00 | | | | | | -$44,579.36 | $136,822.90 |
| | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 09/10/2014 | 09/09/2014 | $1,000.00 | 112 | Mellon Chicago, IL | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | | -$44,579.36 | $136,822.90 |
| | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | $1,000.00 | | | |
| GTA | 09/06/2014 | 09/05/2014 | $2,000 00 | 112 | Mellon Chicago, IL | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | | -$44,579.36 | $136,822.90 |
| | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | $2,000.00 | | | |
| GTA | 08/30/2014 | 08/29/2014 | $1,860.78 | 103 | BK Trustee Payment | T1 | CASH-TRUSTEE-PRE-PETITION | | $0.00 | $0.00 | | | | | | -$44,579.36 | $136,822.90 |
| | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | $1,860.78 | | | |
| GTA | 08/18/2014 | | $2,045.16 | 118 | Payment:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 09/01/14 | $358.70 | $757.36 | | | | | | -$44,579.36 | $136,822.90 |
| | | | | | ESC 80 | | | $0.00 | $0.00 | $929 10 | | | | | | |

e 12
0

| Source | Tran Date | Bac Date | Tran Am | | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GTA | 08/18/2014 | | -$2,045.16 | 218 | Disbursement:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 09/01/14 | $0.00 | $0.00 | | | | | | -$45,508.46 | $137,181.60 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | -$2,045.16 | | |
| GTA | 08/11/2014 | | -$3,640.00 | 210 | Disbursement:Escrow Only | F7 | Esc Disb-Hazard/Fire | | $0.00 | $0.00 | | | | | -$45,508.46 | $137,181.60 |
| | | | | | ESC 80 | | | | $0.00 | $0.00 | -$3,640.00 | | | | | |
| GTA | 08/08/2014 | | $2,000.00 | 112 | Mellon Chicago, IL | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | -$41,868.46 | $137,181.60 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | $2,000.00 | | |
| GTA | 08/07/2014 | 08/01/2014 | $1,861.53 | 100 | Payment:Cash | N1 | Mellon - Los Angeles, CA | | $0.00 | $0.00 | | | | | -$41,868.46 | $137,181.60 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | $1,861.53 | | |
| GTA | 07/21/2014 | 07/20/2014 | $1,000.00 | 112 | Mellon Chicago, IL | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | -$41,868.46 | $137,181.60 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | $1,000.00 | | |
| GTA | 07/17/2014 | | $2,045.16 | 118 | Payment:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 08/01/14 | $356.73 | $759.33 | | | | | -$41,868.46 | $137,181.60 |
| | | | | | ESC 80 | | | | $0.00 | $0.00 | $929.10 | | | | | |
| GTA | 07/17/2014 | | -$2,045.16 | 218 | Disbursement:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 08/01/14 | $0.00 | $0.00 | | | | | -$42,797.56 | $137,538.33 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | -$2,045.16 | | |
| GTA | 07/14/2014 | 07/05/2014 | $1,862.28 | 103 | BK Trustee Payment | T2 | CASH-TRUSTEE-POST-PETITION | | $0.00 | $0.00 | | | | | -$42,797.56 | $137,538.33 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | $1,862.28 | | |
| GTA | 06/16/2014 | | $2,045.16 | 118 | Payment:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 07/01/14 | $354.78 | $761.28 | | | | | -$42,797.56 | $137,538.33 |
| | | | | | ESC 80 | | | | $0.00 | $0.00 | $929.10 | | | | | |
| GTA | 06/16/2014 | | -$2,045.16 | 218 | Disbursement:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 07/01/14 | $0.00 | $0.00 | | | | | -$43,726.66 | $137,893.11 |
| | | | | | Unapplied Funds | | | | $0.00 | $0.00 | | | | -$2,045.16 | | |
| GTA | 06/16/2014 | | $2,100.96 | 118 | Payment:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 06/01/14 | $352.83 | $763.23 | | | | | -$43,726.66 | $137,893.11 |

| Source | Tran Date | Bac Date | Tran Amt | | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | ESC 80 | | $0.00 | $0.00 | $929.10 | | | | | | |
| | | | | | | Late Fee Amount | | $0.00 | $0.00 | | $55.80 | | | | | |
| GTA | 06/16/2014 | | -$2,100.96 | 218 | | Disbursement:Unapplied UF Funds | 06/01/14 | $0.00 | $0.00 | | | | | | -$44,655.76 | $138,245.94 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$2,100.96 | | | |
| GTA | 06/16/2014 | | $2,045.16 | 118 | UF | Payment:Unapplied Funds | 05/01/14 | $350.89 | $765.17 | | | | | | -$44,655.76 | $138,245.94 |
| | | | | | | UAF AUTOMATED TRANS-PMTS & REV | | | | | | | | | | |
| | | | | | | ESC 80 | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 06/16/2014 | | -$2,045.16 | 218 | | Disbursement:Unapplied UF Funds | 05/01/14 | $0.00 | $0.00 | | | | | | -$45,584.86 | $138,596.83 |
| | | | | | | UAF AUTOMATED TRANS-PMTS & REV | | | | | | | | | | |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 06/16/2014 | | $2,045.16 | 118 | UF | Payment:Unapplied Funds | 04/01/14 | $348.96 | $767.10 | | | | | | -$45,584.86 | $138,596.83 |
| | | | | | | UAF AUTOMATED TRANS-PMTS & REV | | | | | | | | | | |
| | | | | | | ESC 80 | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 06/16/2014 | | -$2,045.16 | 218 | | Disbursement:Unapplied UF Funds | 04/01/14 | $0.00 | $0.00 | | | | | | -$46,513.96 | $138,945.79 |
| | | | | | | UAF AUTOMATED TRANS-PMTS & REV | | | | | | | | | | |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 06/16/2014 | | $2,045.16 | 118 | UF | Payment:Unapplied Funds | 03/01/14 | $347.05 | $769.01 | | | | | | -$46,513.96 | $138,945.79 |
| | | | | | | UAF AUTOMATED TRANS-PMTS & REV | | | | | | | | | | |
| | | | | | | ESC 80 | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 06/16/2014 | | -$2,045.16 | 218 | | Disbursement:Unapplied UF Funds | 03/01/14 | $0.00 | $0.00 | | | | | | -$47,443.06 | $139,292.84 |
| | | | | | | UAF AUTOMATED TRANS-PMTS & REV | | | | | | | | | | |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 06/16/2014 | | $2,045.16 | 118 | UF | Payment:Unapplied Funds | 02/01/14 | $345.14 | $770.92 | | | | | | -$47,443.06 | $139,292.84 |
| | | | | | | UAF AUTOMATED TRANS-PMTS & REV | | | | | | | | | | |
| | | | | | | ESC 80 | | $0.00 | $0.00 | $929.10 | | | | | | |

| Source | Tran Date | Bac | Date | Tran Amt | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GTA | 06/16/2014 | | | -$2,045.16 | 218 | Disbursement:Unapplied UF Funds | UAF AUTOMATED TRANS-PMTS & REV | 02/01/14 | $0.00 | $0.00 | | | | | | -$48,372.16 | $139,637.98 |
| | | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 06/16/2014 | | | $2,045.16 | 118 | Payment:Unapplied UF Funds | UAF AUTOMATED TRANS-PMTS & REV | 01/01/14 | $343.25 | $772.81 | | | | | | -$48,372.16 | $139,637.98 |
| | | | | | | ESC 80 | | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 06/16/2014 | | | -$2,045.16 | 218 | Disbursement:Unapplied UF Funds | UAF AUTOMATED TRANS-PMTS & REV | 01/01/14 | $0.00 | $0.00 | | | | | | -$49,301.26 | $139,981.23 |
| | | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 06/16/2014 | | | $2,045.16 | 118 | Payment:Unapplied UF Funds | UAF AUTOMATED TRANS-PMTS & REV | 12/01/13 | $341.36 | $774.70 | | | | | | -$49,301.26 | $139,981.23 |
| | | | | | | ESC 80 | | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 06/16/2014 | | | -$2,045.16 | 218 | Disbursement:Unapplied UF Funds | UAF AUTOMATED TRANS-PMTS & REV | 12/01/13 | $0.00 | $0.00 | | | | | | -$50,230.36 | $140,322.59 |
| | | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 06/16/2014 | | | $2,045.16 | 118 | Payment:Unapplied UF Funds | UAF AUTOMATED TRANS-PMTS & REV | 11/01/13 | $339.49 | $776.57 | | | | | | -$50,230.36 | $140,322.59 |
| | | | | | | ESC 80 | | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 06/16/2014 | | | -$2,045.16 | 218 | Disbursement:Unapplied UF Funds | UAF AUTOMATED TRANS-PMTS & REV | 11/01/13 | $0.00 | $0.00 | | | | | | -$51,159.46 | $140,662.08 |
| | | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 06/16/2014 | | | $2,045.16 | 118 | Payment:Unapplied UF Funds | UAF AUTOMATED TRANS-PMTS & REV | 10/01/13 | $337.62 | $778.44 | | | | | | -$51,159.46 | $140,662.08 |
| | | | | | | ESC 80 | | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 06/16/2014 | | | -$2,045.16 | 218 | Disbursement:Unapplied UF Funds | UAF AUTOMATED TRANS-PMTS & REV | 10/01/13 | $0.00 | $0.00 | | | | | | -$52,088.56 | $140,999.70 |
| | | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | -$2,045.16 | | | |

| Source | Tran Date | Bac | Date | Tran Amt | | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GTA | 06/16/2014 | | | $2,045.16 | 118 | UF | UAF AUTOMATED TRANS-PMTS & REV | 09/01/13 | $335.77 | $780.29 | | | | | | -$52,088.56 | $140,999.70 |
| | | | | | | | Payment:Unapplied Funds | | | | | | | | | | |
| | | | | | | | ESC 80 | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 06/16/2014 | | | -$2,045.16 | 218 | UF | UAF AUTOMATED TRANS-PMTS & REV | 09/01/13 | $0.00 | $0.00 | | | | | | -$53,017.66 | $141,335.47 |
| | | | | | | | Disbursement:Unapplied Funds | | | | | | | | | | |
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 06/16/2014 | | | $2,045.16 | 118 | UF | UAF AUTOMATED TRANS-PMTS & REV | 08/01/13 | $333.93 | $782.13 | | | | | | -$53,017.66 | $141,335.47 |
| | | | | | | | Payment:Unapplied Funds | | | | | | | | | | |
| | | | | | | | ESC 80 | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 06/16/2014 | | | -$2,045.16 | 218 | UF | UAF AUTOMATED TRANS-PMTS & REV | 08/01/13 | $0.00 | $0.00 | | | | | | -$53,946.76 | $141,669.40 |
| | | | | | | | Disbursement:Unapplied Funds | | | | | | | | | | |
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 06/16/2014 | | | $2,045.16 | 118 | UF | UAF AUTOMATED TRANS-PMTS & REV | 07/01/13 | $332.09 | $783.97 | | | | | | -$53,946.76 | $141,669.40 |
| | | | | | | | Payment:Unapplied Funds | | | | | | | | | | |
| | | | | | | | ESC 80 | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 06/16/2014 | | | -$2,045.16 | 218 | UF | UAF AUTOMATED TRANS-PMTS & REV | 07/01/13 | $0.00 | $0.00 | | | | | | -$54,875.86 | $142,001.49 |
| | | | | | | | Disbursement:Unapplied Funds | | | | | | | | | | |
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 06/16/2014 | | | $2,045.16 | 118 | UF | UAF AUTOMATED TRANS-PMTS & REV | 06/01/13 | $330.27 | $785.79 | | | | | | -$54,875.86 | $142,001.49 |
| | | | | | | | Payment:Unapplied Funds | | | | | | | | | | |
| | | | | | | | ESC 80 | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 06/16/2014 | | | -$2,045.16 | 218 | UF | UAF AUTOMATED TRANS-PMTS & REV | 06/01/13 | $0.00 | $0.00 | | | | | | -$55,804.96 | $142,331.76 |
| | | | | | | | Disbursement:Unapplied Funds | | | | | | | | | | |
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 06/16/2014 | | | $2,045.16 | 118 | UF | UAF AUTOMATED TRANS-PMTS & REV | 05/01/13 | $328.46 | $787.60 | | | | | | -$55,804.96 | $142,331.76 |
| | | | | | | | Payment:Unapplied Funds | | | | | | | | | | |
| | | | | | | | ESC 80 | | $0.00 | $0.00 | $929.10 | | | | | | |

| Source | Tran Date | Bac Date | Tran Date | Tran Amt | | Process | Process Desc | Due Date | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GTA | 06/16/2014 | | | -$2,045.16 | 218 | UF | Disbursement:Unapplied Funds | UAF AUTOMATED TRANS-PMTS & REV | 05/01/13 | $0.00 | $0.00 | | | | | | -$56,734.06 | $142,660.22 |
| | | | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 06/16/2014 | | | $2,045.16 | 118 | UF | Payment:Unapplied Funds | UAF AUTOMATED TRANS-PMTS & REV | 04/01/13 | $326.65 | $789.41 | | | | | | -$56,734.06 | $142,660.22 |
| | | | | | | | ESC 80 | | | $0.00 | $0.00 | $929.10 | | | | | | |
| GTA | 06/16/2014 | | | -$2,045.16 | 218 | UF | Disbursement:Unapplied Funds | UAF AUTOMATED TRANS-PMTS & REV | 04/01/13 | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | -$2,045.16 | | | |
| GTA | 06/16/2014 | 06/09/2014 | | $8,186.68 | 103 | T5 | BK Trustee Payment | REAPPLY-TRUSTEE-PRE-PETITION | | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | $8,186.68 | | | |
| GTA | 06/16/2014 | 06/09/2014 | | $260.75 | 103 | T5 | BK Trustee Payment | REAPPLY-TRUSTEE-PRE-PETITION | | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | $260.75 | | | |
| GTA | 06/16/2014 | 05/24/2014 | | $1,800.00 | 100 | 50 | Payment:Cash | Reverse/Reapply - Misc | | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | $1,800.00 | | | |
| GTA | 06/16/2014 | 05/24/2014 | | $500.00 | 100 | 50 | Payment:Cash | Reverse/Reapply - Misc | | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | $500.00 | | | |
| GTA | 06/16/2014 | 04/22/2014 | | $500.00 | 100 | 50 | Payment:Cash | Reverse/Reapply - Misc | | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | $500.00 | | | |
| GTA | 06/16/2014 | 04/22/2014 | | $17.00 | 100 | 50 | Payment:Cash | Reverse/Reapply - Misc | | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | $17.00 | | | |
| GTA | 06/16/2014 | 03/15/2014 | | $1,800.00 | 100 | 50 | Payment:Cash | Reverse/Reapply - Misc | | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | $1,800.00 | | | |
| GTA | 06/16/2014 | 02/18/2014 | | $1,700.00 | 100 | 50 | Payment:Cash | Reverse/Reapply - Misc | | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | $1,700.00 | | | |
| GTA | 06/16/2014 | 02/01/2014 | | $1,500.00 | 100 | 50 | Payment:Cash | Reverse/Reapply - Misc | | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |

e 17        0

| Source | Tran Date | Bac Date | Tran Amt | | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,500.00 | | | |
| GTA | 06/16/2014 | 01/17/2014 | $1,722.28 | 103 | BK Trustee Payment | T5 | REAPPLY-TRUSTEE-PRE-PETITION | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,722.28 | | | |
| GTA | 06/16/2014 | 01/15/2014 | $1,712.23 | 103 | BK Trustee Payment | T6 | REAPPLY-TRUSTEE-POST-PETITION | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,712.23 | | | |
| GTA | 06/16/2014 | 01/07/2014 | $1,800.00 | 100 | Payment:Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,800.00 | | | |
| GTA | 06/16/2014 | 01/07/2014 | $1,722.98 | 103 | BK Trustee Payment | T6 | REAPPLY-TRUSTEE-POST-PETITION | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,722.98 | | | |
| GTA | 06/16/2014 | 01/07/2014 | $1,200.00 | 100 | Payment:Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,200.00 | | | |
| GTA | 06/16/2014 | 01/07/2014 | $1,067.55 | 100 | Payment:Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,067.55 | | | |
| GTA | 06/16/2014 | 01/07/2014 | $665.48 | 103 | BK Trustee Payment | T6 | REAPPLY-TRUSTEE-POST-PETITION | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $665.48 | | | |
| GTA | 06/16/2014 | 01/07/2014 | $467.55 | 100 | Payment:Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $467.55 | | | |
| GTA | 06/16/2014 | 01/07/2014 | $467.55 | 100 | Payment:Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $467.55 | | | |
| GTA | 06/16/2014 | 01/07/2014 | $18.00 | 100 | Payment:Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $18.00 | | | |
| GTA | 06/16/2014 | 09/26/2013 | $1,067.35 | 103 | BK Trustee Payment | T6 | REAPPLY-TRUSTEE-POST-PETITION | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,067.35 | | | |
| GTA | 06/16/2014 | 09/10/2013 | $1,067.35 | 100 | Payment:Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |

| Source | Tran Date | Bac Date | Trar Am | | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,067.35 | | | |
| GTA | 06/16/2014 | 09/10/2013 | $288.12 | 100 | Payment:Cash | 50 | Reverse/Reapply - Misc | | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $288.12 | | | |
| GTA | 06/16/2014 | 09/02/2013 | $821.44 | 103 | BK Trustee Payment | T6 | REAPPLY-TRUSTEE-POST-PETITION | | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $821.44 | | | |
| GTA | 06/16/2014 | 09/02/2013 | $534.03 | 103 | BK Trustee Payment | T6 | REAPPLY-TRUSTEE-POST-PETITION | | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $534.03 | | | |
| GTA | 06/16/2014 | 09/02/2013 | $288.12 | 103 | BK Trustee Payment | T6 | REAPPLY-TRUSTEE-POST-PETITION | | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $288.12 | | | |
| GTA | 06/16/2014 | 08/09/2013 | $2,000.00 | 100 | Payment:Cash | 50 | Reverse/Reapply - Misc | | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $2,000.00 | | | |
| GTA | 06/16/2014 | 07/30/2013 | $1,734.93 | 103 | BK Trustee Payment | T6 | REAPPLY-TRUSTEE-POST-PETITION | | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,734.93 | | | |
| GTA | 06/16/2014 | 07/29/2013 | $1,735.60 | 103 | BK Trustee Payment | T6 | REAPPLY-TRUSTEE-POST-PETITION | | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,735.60 | | | |
| GTA | 06/16/2014 | 07/19/2013 | $1,200.00 | 100 | Payment:Cash | 50 | Reverse/Reapply - Misc | | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,200.00 | | | |
| GTA | 06/16/2014 | 06/13/2013 | $2,045.00 | 100 | Payment:Cash | 50 | Reverse/Reapply - Misc | | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $2,045.00 | | | |
| GTA | 06/16/2014 | 05/08/2013 | $2,045.00 | 100 | Payment:Cash | 50 | Reverse/Reapply - Misc | | $0.00 | $0.00 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $2,045.00 | | | |
| GTA | 06/16/2014 | 05/07/2013 | $3,425.89 | 100 | Payment:Cash | 50 | Reverse/Reapply - Misc | 01/01/13 | $321.30 | $794.76 | | | | | | -$57,663.16 | $142,986.87 |
| | | | | | P&I | 50 | Reverse/Reapply - Misc | 02/01/13 | $323.08 | $792.98 | | | | | | | |
| | | | | | P&I | 50 | Reverse/Reapply - Misc | 03/01/13 | $324.86 | $791.20 | | | | | | | |

| Source | Tran Date | Bac Date | Tran Amt | | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | ESC 80 | | $0.00 | $0.00 | $51.06 | | | | | | |
| | | | | | 50 | Payment:Cash Reverse/Reapply - Misc | | $0.00 | $0.00 | | | | | | | |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $26.65 | | | |
| GTA | 06/16/2014 | 06/13/2013 | $6,010.95 | 718 | UF | Reversal:Disb Unapplied Funds UAF AUTOMATED TRANS-PMTS & REV | 01/01/13 | $0.00 | $0.00 | | | | | | -$57,714.22 | $143,956.11 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $6,010.95 | | | |
| GTA | 06/16/2014 | 06/13/2013 | -$6,010.95 | 518 | UF | Reversal:Pymt Unapplied Funds UAF AUTOMATED TRANS-PMTS & REV | 01/01/13 | -$321.30 | -$794.76 | | | | | | -$57,714.22 | $143,956.11 |
| | | | | | | ESC 80 | | $0.00 | $0.00 | -$4,894.89 | | | | | | |
| GTA | 06/16/2014 | 07/30/2013 | $6,010.95 | 718 | UF | Reversal:Disb Unapplied Funds UAF AUTOMATED TRANS-PMTS & REV | 02/01/13 | $0.00 | $0.00 | | | | | | -$52,819.33 | $143,634.81 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $6,010.95 | | | |
| GTA | 06/16/2014 | 07/30/2013 | -$6,010.95 | 518 | UF | Reversal:Pymt Unapplied Funds UAF AUTOMATED TRANS-PMTS & REV | 02/01/13 | -$323.08 | -$792.98 | | | | | | -$52,819.33 | $143,634.81 |
| | | | | | | ESC 80 | | $0.00 | $0.00 | -$4,894.89 | | | | | | |
| GTA | 06/16/2014 | 09/02/2013 | $1,116.06 | 718 | UF | Reversal:Disb Unapplied Funds UAF AUTOMATED TRANS-PMTS & REV | 03/01/13 | $0.00 | $0.00 | | | | | | -$47,924.44 | $143,311.73 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,116.06 | | | |
| GTA | 06/16/2014 | 09/02/2013 | -$1,116.06 | 518 | UF | Reversal:Pymt Unapplied Funds UAF AUTOMATED TRANS-PMTS & REV | 03/01/13 | -$324.86 | -$791.20 | | | | | | -$47,924.44 | $143,311.73 |
| GTA | 06/16/2014 | 09/02/2013 | $1,116.06 | 718 | UF | Reversal:Disb Unapplied Funds UAF AUTOMATED TRANS-PMTS & REV | 04/01/13 | $0.00 | $0.00 | | | | | | -$47,924.44 | $142,986.87 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,116.06 | | | |
| GTA | 06/16/2014 | 09/02/2013 | -$1,116.06 | 518 | UF | Reversal:Pymt Unapplied Funds UAF AUTOMATED TRANS-PMTS & REV | 04/01/13 | -$326.65 | -$789.41 | | | | | | -$47,924.44 | $142,986.87 |
| GTA | 06/16/2014 | 09/02/2013 | $1,116.06 | 718 | UF | Reversal:Disb Unapplied Funds UAF AUTOMATED TRANS-PMTS & REV | 05/01/13 | $0.00 | $0.00 | | | | | | -$47,924.44 | $142,660.22 |

| Source | Tran Date | Bac | Date | Tran Am | | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,116.06 | | | |
| GTA | 06/16/2014 | | 09/02/2013 | -$1,116.06 | 518 | UF | Reversal:Pymt Unapplied Funds | 05/01/13 | -$328.46 | -$787.60 | | | | | | -$47,924.44 | $142,660.22 |
| GTA | 06/16/2014 | | 09/10/2013 | $1,116.06 | 718 | UF | Reversal:Disb Unapplied Funds | 06/01/13 | $0.00 | $0.00 | | | | | | -$47,924.44 | $142,331.76 |
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,116.06 | | | |
| GTA | 06/16/2014 | | 09/10/2013 | -$1,116.06 | 518 | UF | Reversal:Pymt Unapplied Funds | 06/01/13 | -$330.27 | -$785.79 | | | | | | -$47,924.44 | $142,331.76 |
| GTA | 06/16/2014 | | 09/26/2013 | $1,116.06 | 718 | UF | Reversal:Disb Unapplied Funds | 07/01/13 | $0.00 | $0.00 | | | | | | -$47,924.44 | $142,001.49 |
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,116.06 | | | |
| GTA | 06/16/2014 | | 09/26/2013 | -$1,116.06 | 518 | UF | Reversal:Pymt Unapplied Funds | 07/01/13 | -$332.09 | -$783.97 | | | | | | -$47,924.44 | $142,001.49 |
| GTA | 06/16/2014 | | 01/07/2014 | $2,158.65 | 718 | UF | Reversal:Disb Unapplied Funds | 03/01/13 | $0.00 | $0.00 | | | | | | -$47,924.44 | $141,669.40 |
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $2,158.65 | | | |
| GTA | 06/16/2014 | | 01/07/2014 | -$2,158.65 | 518 | UF | Reversal:Pymt Unapplied Funds | 03/01/13 | $0.00 | $0.00 | | | | | | -$47,924.44 | $141,669.40 |
| | | | | | | | ESC 80 | | $0.00 | $0.00 | -$2,158.65 | | | | | | |
| GTA | 06/16/2014 | | 01/07/2014 | $4,894.89 | 718 | UF | Reversal:Disb Unapplied Funds | 04/01/13 | $0.00 | $0.00 | | | | | | -$45,765.79 | $141,669.40 |
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $4,894.89 | | | |
| GTA | 06/16/2014 | | 01/07/2014 | -$4,894.89 | 518 | UF | Reversal:Pymt Unapplied Funds | 04/01/13 | $0.00 | $0.00 | | | | | | -$45,765.79 | $141,669.40 |
| | | | | | | | ESC 80 | | $0.00 | $0.00 | -$4,894.89 | | | | | | |
| GTA | 06/16/2014 | | 02/01/2014 | $4,894.89 | 718 | UF | Reversal:Disb Unapplied Funds | 05/01/13 | $0.00 | $0.00 | | | | | | -$40,870.90 | $141,669.40 |

| Source | Tran Date | Bac Date | Tran Amt | | Process | Process Desc | Due Date | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $4,894.89 | | | |
| GTA | 06/16/2014 | 02/01/2014 | -$4,894.89 | 518 | UF | Reversal:Pymt Unapplied Funds | 05/01/13 | $0.00 | $0.00 | | | | | | -$40,870.90 | $141,669.40 |
| | | | | | | UAF AUTOMATED TRANS-PMTS & REV | | | | | | | | | | |
| | | | | | | ESC 80 | | $0.00 | $0.00 | -$4,894.89 | | | | | | |
| GTA | 06/16/2014 | 04/22/2014 | $4,894.89 | 718 | UF | Reversal:Disb Unapplied Funds | 06/01/13 | $0.00 | $0.00 | | | | | | -$35,976.01 | $141,669.40 |
| | | | | | | UAF AUTOMATED TRANS-PMTS & REV | | | | | | | | | | |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $4,894.89 | | | |
| GTA | 06/16/2014 | 04/22/2014 | -$4,894.89 | 518 | UF | Reversal:Pymt Unapplied Funds | 06/01/13 | $0.00 | $0.00 | | | | | | -$35,976.01 | $141,669.40 |
| | | | | | | UAF AUTOMATED TRANS-PMTS & REV | | | | | | | | | | |
| | | | | | | ESC 80 | | $0.00 | $0.00 | -$4,894.89 | | | | | | |
| GTA | 06/16/2014 | 06/09/2014 | $4,894.89 | 718 | UF | Reversal:Disb Unapplied Funds | 07/01/13 | $0.00 | $0.00 | | | | | | -$31,081.12 | $141,669.40 |
| | | | | | | UAF AUTOMATED TRANS-PMTS & REV | | | | | | | | | | |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $4,894.89 | | | |
| GTA | 06/16/2014 | 06/09/2014 | -$4,894.89 | 518 | UF | Reversal:Pymt Unapplied Funds | 07/01/13 | $0.00 | $0.00 | | | | | | -$31,081.12 | $141,669.40 |
| | | | | | | UAF AUTOMATED TRANS-PMTS & REV | | | | | | | | | | |
| | | | | | | ESC 80 | | $0.00 | $0.00 | -$4,894.89 | | | | | | |
| GTA | 06/16/2014 | 06/09/2014 | $6,010.95 | 718 | UF | Reversal:Disb Unapplied Funds | 08/01/13 | $0.00 | $0.00 | | | | | | -$26,186.23 | $141,669.40 |
| | | | | | | UAF AUTOMATED TRANS-PMTS & REV | | | | | | | | | | |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $6,010.95 | | | |
| GTA | 06/16/2014 | 06/09/2014 | -$6,010.95 | 518 | UF | Reversal:Pymt Unapplied Funds | 08/01/13 | -$333.93 | -$782.13 | | | | | | -$26,186.23 | $141,669.40 |
| | | | | | | UAF AUTOMATED TRANS-PMTS & REV | | | | | | | | | | |
| | | | | | | ESC 80 | | $0.00 | $0.00 | -$4,894.89 | | | | | | |
| GTA | 06/16/2014 | 06/07/2014 | -$260.75 | 500 | T3 | Reversal:Pymt-Cash | | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | | REVERSAL-TRUSTEE PAYMENT | | | | | | | | | | |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$260.75 | | | |
| GTA | 06/16/2014 | 06/07/2014 | -$8,186.68 | 500 | T3 | Reversal:Pymt-Cash | | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | | REVERSAL-TRUSTEE PAYMENT | | | | | | | | | | |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$8,186.68 | | | |

| Source | Tran Date | Bac Date | Tran Amt | Process | Process Desc | Dup Pd Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GTA | 06/16/2014 | 05/23/2014 | -$500.00 | 500 | Reversal:Pymt-Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$500.00 | | | |
| GTA | 06/16/2014 | 05/23/2014 | -$1,800.00 | 500 | Reversal:Pymt-Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$1,800.00 | | | |
| GTA | 06/16/2014 | 04/21/2014 | -$17.00 | 500 | Reversal:Pymt-Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$17.00 | | | |
| GTA | 06/16/2014 | 04/21/2014 | -$500.00 | 500 | Reversal:Pymt-Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$500.00 | | | |
| GTA | 06/16/2014 | 03/15/2014 | -$1,800.00 | 500 | Reversal:Pymt-Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$1,800.00 | | | |
| GTA | 06/16/2014 | 02/18/2014 | -$1,700.00 | 500 | Reversal:Pymt-Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$1,700.00 | | | |
| GTA | 06/16/2014 | 02/01/2014 | -$1,500.00 | 500 | Reversal:Pymt-Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$1,500.00 | | | |
| GTA | 06/16/2014 | 01/17/2014 | -$1,722.28 | 500 | Reversal:Pymt-Cash | T3 | REVERSAL-TRUSTEE PAYMENT | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$1,722.28 | | | |
| GTA | 06/16/2014 | 01/07/2014 | -$1,712.23 | 500 | Reversal:Pymt-Cash | T3 | REVERSAL-TRUSTEE PAYMENT | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$1,712.23 | | | |
| GTA | 06/16/2014 | 09/03/2013 | -$665.48 | 500 | Reversal:Pymt-Cash | T3 | REVERSAL-TRUSTEE PAYMENT | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$665.48 | | | |
| GTA | 06/16/2014 | 10/09/2013 | -$467.55 | 500 | Reversal:Pymt-Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$467.55 | | | |
| GTA | 06/16/2014 | 10/09/2013 | -$1,800.00 | 500 | Reversal:Pymt-Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$1,800.00 | | | |
| GTA | 06/16/2014 | 11/07/2013 | -$1,067.55 | 500 | Reversal:Pymt-Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |

| Source | Tran Date | Bac Date | Tran Amt | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$1,067.55 | | | |
| GTA | 06/16/2014 | 11/07/2013 | -$1,200.00 500 | Reversal:Pymt-Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$1,200.00 | | | |
| GTA | 06/16/2014 | 11/25/2013 | -$1,722.98 500 | Reversal:Pymt-Cash | T3 | REVERSAL- TRUSTEE PAYMENT | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$1,722.98 | | | |
| GTA | 06/16/2014 | 12/07/2013 | -$18.00 500 | Reversal:Pymt-Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$18.00 | | | |
| GTA | 06/16/2014 | 12/07/2013 | -$467.55 500 | Reversal:Pymt-Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$467.55 | | | |
| GTA | 06/16/2014 | 09/03/2013 | -$1,067.35 500 | Reversal:Pymt-Cash | T3 | REVERSAL- TRUSTEE PAYMENT | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$1,067.35 | | | |
| GTA | 06/16/2014 | 09/10/2013 | -$288.12 500 | Reversal:Pymt-Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$288.12 | | | |
| GTA | 06/16/2014 | 09/10/2013 | -$1,067.35 500 | Reversal:Pymt-Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$1,067.35 | | | |
| GTA | 06/16/2014 | 08/31/2013 | -$288.12 500 | Reversal:Pymt-Cash | T3 | REVERSAL- TRUSTEE PAYMENT | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$288.12 | | | |
| GTA | 06/16/2014 | 08/31/2013 | -$534.03 500 | Reversal:Pymt-Cash | T3 | REVERSAL- TRUSTEE PAYMENT | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$534.03 | | | |
| GTA | 06/16/2014 | 08/31/2013 | -$821.44 500 | Reversal:Pymt-Cash | T3 | REVERSAL- TRUSTEE PAYMENT | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$821.44 | | | |
| GTA | 06/16/2014 | 08/09/2013 | -$2,000.00 500 | Reversal:Pymt-Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$2,000.00 | | | |
| GTA | 06/16/2014 | 06/12/2013 | -$1,734.93 500 | Reversal:Pymt-Cash | T3 | REVERSAL- TRUSTEE PAYMENT | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |

| Source | Tran Date | Bac | Date | Tran Amt | | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$1,734.93 | | | |
| GTA | 06/16/2014 | 05/13/2013 | | -$1,735.60 | 500 | Reversal:Pymt-Cash | T3 | REVERSAL-TRUSTEE PAYMENT | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$1,735.60 | | | |
| GTA | 06/16/2014 | 07/19/2013 | | -$1,200.00 | 500 | Reversal:Pymt-Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$1,200.00 | | | |
| GTA | 06/16/2014 | 06/10/2013 | | -$2,045.00 | 500 | Reversal:Pymt-Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$2,045.00 | | | |
| GTA | 06/16/2014 | 05/05/2013 | | -$2,045.00 | 500 | Reversal:Pymt-Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$2,045.00 | | | |
| GTA | 06/16/2014 | 04/30/2013 | | -$3,425.89 | 500 | Reversal:Pymt-Cash | 50 | Reverse/Reapply - Misc | $0.00 | $0.00 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$3,425.89 | | | |
| GTA | 06/09/2014 | | | $6,010.95 | 118 | Payment:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 08/01/13 | $333.93 | $782.13 | | | | | | -$21,291.34 | $141,335.47 |
| | | | | | | | ESC 80 | | $0.00 | $0.00 | $4,894.89 | | | | | | |
| GTA | 06/09/2014 | | | -$6,010.95 | 218 | Disbursement:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 08/01/13 | $0.00 | $0.00 | | | | | | -$26,186.23 | $141,669.40 |
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$6,010.95 | | | |
| GTA | 06/09/2014 | | | $4,894.89 | 118 | Payment:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 07/01/13 | $0.00 | $0.00 | | | | | | -$26,186.23 | $141,669.40 |
| | | | | | | | ESC 80 | | $0.00 | $0.00 | $4,894.89 | | | | | | |
| GTA | 06/09/2014 | | | -$4,894.89 | 218 | Disbursement:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 07/01/13 | $0.00 | $0.00 | | | | | | -$31,081.12 | $141,669.40 |
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$4,894.89 | | | |
| GTA | 06/09/2014 | 06/07/2014 | | $8,186.68 | 103 | BK Trustee Payment | T1 | CASH-TRUSTEE-PRE-PETITION | $0.00 | $0.00 | | | | | | -$31,081.12 | $141,669.40 |
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $8,186.68 | | | |
| GTA | 06/09/2014 | 06/07/2014 | | $260.75 | 103 | BK Trustee Payment | T1 | CASH-TRUSTEE-PRE-PETITION | $0.00 | $0.00 | | | | | | -$31,081.12 | $141,669.40 |
| | | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $260.75 | | | |

| Source | Tran Date | Bac Date | Tran Amt | | Process | Process Desc | Due Date | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GTA | 05/24/2014 | 05/23/2014 | $1,800.00 | 112 | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | | -$31,081.12 | $141,669.40 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,800.00 | | | |
| GTA | 05/24/2014 | 05/23/2014 | $500.00 | 112 | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | | -$31,081.12 | $141,669.40 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $500.00 | | | |
| GTA | 04/22/2014 | | $4,894.89 | 118 | UF | Payment:Unapplied Funds | UAF AUTOMATED TRANS-PMTS & REV | 06/01/13 | $0.00 | $0.00 | | | | | | -$31,081.12 | $141,669.40 |
| | | | | | | ESC 80 | | $0.00 | $0.00 | $4,894.89 | | | | | | |
| GTA | 04/22/2014 | | -$4,894.89 | 218 | UF | Disbursement:Unapplied Funds | UAF AUTOMATED TRANS-PMTS & REV | 06/01/13 | $0.00 | $0.00 | | | | | | -$35,976.01 | $141,669.40 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$4,894.89 | | | |
| GTA | 04/22/2014 | 04/21/2014 | $500.00 | 112 | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | | -$35,976.01 | $141,669.40 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $500.00 | | | |
| GTA | 04/22/2014 | 04/21/2014 | $17.00 | 112 | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | | -$35,976.01 | $141,669.40 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $17.00 | | | |
| GTA | 03/15/2014 | | $1,800.00 | 112 | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | | -$35,976.01 | $141,669.40 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,800.00 | | | |
| GTA | 02/18/2014 | | $1,700.00 | 112 | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | | -$35,976.01 | $141,669.40 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,700.00 | | | |
| GTA | 02/01/2014 | | $4,894.89 | 118 | UF | Payment:Unapplied Funds | UAF AUTOMATED TRANS-PMTS & REV | 05/01/13 | $0.00 | $0.00 | | | | | | -$35,976.01 | $141,669.40 |
| | | | | | | ESC 80 | | $0.00 | $0.00 | $4,894.89 | | | | | | |
| GTA | 02/01/2014 | | -$4,894.89 | 218 | UF | Disbursement:Unapplied Funds | UAF AUTOMATED TRANS-PMTS & REV | 05/01/13 | $0.00 | $0.00 | | | | | | -$40,870.90 | $141,669.40 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$4,894.89 | | | |
| GTA | 02/01/2014 | | $1,500.00 | 112 | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | | -$40,870.90 | $141,669.40 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,500.00 | | | |
| GTA | 01/17/2014 | | $1,722.28 | 103 | T1 | BK Trustee Payment CASH-TRUSTEE-PRE-PETITION | | $0.00 | $0.00 | | | | | | -$40,870.90 | $141,669.40 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,722.28 | | | |

e 2
0

| Source | Tran Date | Bac Date | Tran Amt | | Process | Process Desc | Due Date | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GTA | 01/15/2014 | 01/07/2014 | $1,712.23 | 103 | T2 | CASH-TRUSTEE-POST-PETITION | | $0.00 | $0.00 | | | | | | -$40,870.90 | $141,669.40 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,712.23 | | -$40,870.90 | $141,669.40 |
| GTA | 01/07/2014 | | $4,894.89 | 118 | UF | UAF AUTOMATED TRANS-PMTS & REV | 04/01/13 | $0.00 | $0.00 | | | | | | -$40,870.90 | $141,669.40 |
| | | | | | | ESC 80 | | $0.00 | $0.00 | $4,894.89 | | | | | | |
| GTA | 01/07/2014 | | -$4,894.89 | 218 | UF | Disbursement:Unapplied Funds | 04/01/13 | $0.00 | $0.00 | | | | | | -$45,765.79 | $141,669.40 |
| | | | | | | UAF AUTOMATED TRANS-PMTS & REV | | | | | | | | | | |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$4,894.89 | | -$45,765.79 | $141,669.40 |
| GTA | 01/07/2014 | | $2,158.65 | 118 | UF | Payment:Unapplied Funds | 03/01/13 | $0.00 | $0.00 | | | | | | -$45,765.79 | $141,669.40 |
| | | | | | | UAF AUTOMATED TRANS-PMTS & REV | | | | | | | | | | |
| | | | | | | ESC 80 | | $0.00 | $0.00 | $2,158.65 | | | | | | |
| GTA | 01/07/2014 | | -$2,158.65 | 218 | UF | Disbursement:Unapplied Funds | 03/01/13 | $0.00 | $0.00 | | | | | | -$47,924.44 | $141,669.40 |
| | | | | | | UAF AUTOMATED TRANS-PMTS & REV | | | | | | | | | | |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$2,158.65 | | -$47,924.44 | $141,669.40 |
| GTA | 01/07/2014 | 12/07/2013 | $467.55 | 100 | 36 | Payment:Cash | | $0.00 | $0.00 | | | | | | -$47,924.44 | $141,669.40 |
| | | | | | | Mellon-Chicago | | | | | | | | | | |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $467.55 | | -$47,924.44 | $141,669.40 |
| GTA | 01/07/2014 | 12/07/2013 | $18.00 | 100 | 36 | Payment:Cash | | $0.00 | $0.00 | | | | | | -$47,924.44 | $141,669.40 |
| | | | | | | Mellon-Chicago | | | | | | | | | | |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $18.00 | | -$47,924.44 | $141,669.40 |
| GTA | 01/07/2014 | 11/25/2013 | $1,722.98 | 103 | T2 | BK Trustee Payment | | $0.00 | $0.00 | | | | | | -$47,924.44 | $141,669.40 |
| | | | | | | CASH-TRUSTEE-POST-PETITION | | | | | | | | | | |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,722.98 | | -$47,924.44 | $141,669.40 |
| GTA | 01/07/2014 | 11/07/2013 | $1,200.00 | 100 | 36 | Payment:Cash | | $0.00 | $0.00 | | | | | | -$47,924.44 | $141,669.40 |
| | | | | | | Mellon-Chicago | | | | | | | | | | |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,200.00 | | -$47,924.44 | $141,669.40 |
| GTA | 01/07/2014 | 11/07/2013 | $1,067.55 | 100 | 36 | Payment:Cash | | $0.00 | $0.00 | | | | | | -$47,924.44 | $141,669.40 |
| | | | | | | Mellon-Chicago | | | | | | | | | | |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,067.55 | | -$47,924.44 | $141,669.40 |
| GTA | 01/07/2014 | 10/09/2013 | $1,800.00 | 100 | 36 | Payment:Cash | | $0.00 | $0.00 | | | | | | -$47,924.44 | $141,669.40 |
| | | | | | | Mellon-Chicago | | | | | | | | | | |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,800.00 | | -$47,924.44 | $141,669.40 |
| GTA | 01/07/2014 | 10/09/2013 | $467.55 | 100 | 36 | Payment:Cash | | $0.00 | $0.00 | | | | | | -$47,924.44 | $141,669.40 |
| | | | | | | Mellon-Chicago | | | | | | | | | | |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $467.55 | | | |

| Source | Tran Date | Bac Date | Tran Amt | | Process | Process Desc | | Due Date | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GTA | 01/07/2014 | 09/03/2013 | $665.48 | 103 | T2 | BK Trustee Payment | CASH-TRUSTEE-POST-PETITION | | $0.00 | $0.00 | | | | | | -$47,924.44 | $141,669.40 |
| | | | | | | Unapplied Funds | | | | | | | | $665.48 | | | |
| GTA | 01/06/2014 | 09/02/2013 | $17,822.20 | 711 | G6 | Reversal:Disb Insurance Only | Esc-Move to Corp Adv-Loan Mods | | $0.00 | $0.00 | | | | | | -$47,924.44 | $141,669.40 |
| | | | | | | INS 302 | | | $0.00 | $0.00 | | | $17,822.20 | | | | |
| GTA | 01/06/2014 | 09/02/2013 | $852.28 | 711 | G6 | Reversal:Disb Insurance Only | Esc-Move to Corp Adv-Loan Mods | | $0.00 | $0.00 | | | | | | -$47,924.44 | $141,669.40 |
| | | | | | | INS 301 | | | $0.00 | $0.00 | | | $852.28 | | | | |
| GTA | 01/06/2014 | 09/02/2013 | $29,369.34 | 711 | G3 | Reversal:Disb Insurance Only | Esc Disb-Neg Bal to Corp Adv | | $0.00 | $0.00 | | | | | | -$47,924.44 | $141,669.40 |
| | | | | | | INS 300 | | | $0.00 | $0.00 | | | $29,369.34 | | | | |
| GTA | 01/06/2014 | 09/02/2013 | -$17,822.20 | 540 | G6 | Reversal:Pymt Escrow Only-Cash | Esc-Move to Corp Adv-Loan Mods | | $0.00 | $0.00 | | | | | | -$47,924.44 | $141,669.40 |
| | | | | | | ESC 80 | | | $0.00 | $0.00 | -$17,822.20 | | | | | | |
| GTA | 01/06/2014 | 09/02/2013 | -$852.28 | 540 | G6 | Reversal:Pymt Escrow Only-Cash | Esc-Move to Corp Adv-Loan Mods | | $0.00 | $0.00 | | | | | | -$30,102.24 | $141,669.40 |
| | | | | | | ESC 80 | | | $0.00 | $0.00 | -$852.28 | | | | | | |
| GTA | 01/06/2014 | 09/02/2013 | -$29,369.34 | 540 | G3 | Reversal:Pymt Escrow Only-Cash | Esc Disb-Neg Bal to Corp Adv | | $0.00 | $0.00 | | | | | | -$29,249.96 | $141,669.40 |
| | | | | | | ESC 80 | | | $0.00 | $0.00 | -$29,369.34 | | | | | | |
| GTA | 11/19/2013 | | -$8,507.31 | 210 | E7 | Disbursement:Escrow Only | Esc Disb-County | | $0.00 | $0.00 | | | | | | $119.38 | $141,669.40 |
| | | | | | | ESC 80 | | | $0.00 | $0.00 | -$8,507.31 | | | | | | |
| GTA | 09/26/2013 | | $1,116.06 | 118 | UF | Payment:Unapplied Funds | UAF AUTOMATED TRANS-PMTS & REV | 07/01/13 | $332.09 | $783.97 | | | | | | $8,626.69 | $141,669.40 |
| GTA | 09/26/2013 | | -$1,116.06 | 218 | UF | Disbursement:Unapplied Funds | UAF AUTOMATED TRANS-PMTS & REV | 07/01/13 | $0.00 | $0.00 | | | | | | $8,626.69 | $142,001.49 |
| | | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | -$1,116.06 | | | |
| GTA | 09/26/2013 | 09/03/2013 | $1,067.35 | 103 | T2 | BK Trustee Payment | CASH-TRUSTEE-POST-PETITION | | $0.00 | $0.00 | | | | | | $8,626.69 | $142,001.49 |
| | | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | $1,067.35 | | | |
| GTA | 09/10/2013 | | $1,116.06 | 118 | UF | Payment:Unapplied Funds | UAF AUTOMATED TRANS-PMTS & REV | 06/01/13 | $330.27 | $785.79 | | | | | | $8,626.69 | $142,001.49 |

| Source | Tran Date | Bac Date | Tran Amt | | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GTA | 09/10/2013 | | -$1,116.06 | 218 | Disbursement:Unapplied Funds | UF UAF AUTOMATED TRANS-PMTS & REV | 06/01/13 | $0.00 | $0.00 | | | | | | $8,626.69 | $142,331.76 |
| | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | -$1,116.06 | | $8,626.69 | $142,331.76 |
| GTA | 09/10/2013 | | $1,067.35 | 100 | Payment:Cash | 36 | Mellon-Chicago | $0.00 | $0.00 | | | | | | $8,626.69 | $142,331.76 |
| | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | $1,067.35 | | $8,626.69 | $142,331.76 |
| GTA | 09/10/2013 | | $288.12 | 100 | Payment:Cash | 36 | Mellon-Chicago | $0.00 | $0.00 | | | | | | $8,626.69 | $142,331.76 |
| | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | $288.12 | | $8,626.69 | $142,331.76 |
| GTA | 09/10/2013 | | $711.88 | 140 | Payment:Escrow Only-Cash | 36 | Mellon-Chicago | $0.00 | $0.00 | | | | | | $8,626.69 | $142,331.76 |
| | | | | | ESC 80 | | | $0.00 | $0.00 | $711.88 | | | | | | |
| GTA | 09/10/2013 | | $200.20 | 140 | Payment:Escrow Only-Cash | 36 | Mellon-Chicago | $0.00 | $0.00 | | | | | | $7,914.81 | $142,331.76 |
| | | | | | ESC 80 | | | $0.00 | $0.00 | $200.20 | | | | | | |
| GTA | 09/02/2013 | | $1,116.06 | 118 | Payment:Unapplied Funds | UF UAF AUTOMATED TRANS-PMTS & REV | 05/01/13 | $328.46 | $787.60 | | | | | | $7,714.61 | $142,331.76 |
| GTA | 09/02/2013 | | -$1,116.06 | 218 | Disbursement:Unapplied Funds | UF UAF AUTOMATED TRANS-PMTS & REV | 05/01/13 | $0.00 | $0.00 | | | | | | $7,714.61 | $142,660.22 |
| | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | -$1,116.06 | | $7,714.61 | $142,660.22 |
| GTA | 09/02/2013 | | $1,116.06 | 118 | Payment:Unapplied Funds | UF UAF AUTOMATED TRANS-PMTS & REV | 04/01/13 | $326.65 | $789.41 | | | | | | $7,714.61 | $142,660.22 |
| GTA | 09/02/2013 | | -$1,116.06 | 218 | Disbursement:Unapplied Funds | UF UAF AUTOMATED TRANS-PMTS & REV | 04/01/13 | $0.00 | $0.00 | | | | | | $7,714.61 | $142,986.87 |
| | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | -$1,116.06 | | $7,714.61 | $142,986.87 |
| GTA | 09/02/2013 | | $1,116.06 | 118 | Payment:Unapplied Funds | UF UAF AUTOMATED TRANS-PMTS & REV | 03/01/13 | $324.86 | $791.20 | | | | | | $7,714.61 | $142,986.87 |
| GTA | 09/02/2013 | | -$1,116.06 | 218 | Disbursement:Unapplied Funds | UF UAF AUTOMATED TRANS-PMTS & REV | 03/01/13 | $0.00 | $0.00 | | | | | | $7,714.61 | $143,311.73 |
| | | | | | Unapplied Funds | | | $0.00 | $0.00 | | | | -$1,116.06 | | $7,714.61 | $143,311.73 |
| GTA | 09/02/2013 | 08/31/2013 | $821.44 | 103 | BK Trustee Payment | T2 | CASH-TRUSTEE-POST-PETITION | $0.00 | $0.00 | | | | | | $7,714.61 | $143,311.73 |

| Source | Tran Date | Bac Date | Tran Amt | | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $821.44 | | | |
| GTA | 09/02/2013 | 08/31/2013 | $534.03 | 103 | BK Trustee Payment | T2 CASH-TRUSTEE-POST-PETITION | | $0.00 | $0.00 | | | | | | $7,714.61 | $143,311.73 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $534.03 | | | |
| GTA | 09/02/2013 | 08/31/2013 | $288.12 | 103 | BK Trustee Payment | T2 CASH-TRUSTEE-POST-PETITION | | $0.00 | $0.00 | | | | | | $7,714.61 | $143,311.73 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $288.12 | | | |
| GTA | 09/02/2013 | 08/31/2013 | $912.08 | 144 | Payment:Escrow Only-BK Trustee | T2 CASH-TRUSTEE-POST-PETITION | | | | | | | | | $7,714.61 | $143,311.73 |
| | | | | | ESC 80 | | | $0.00 | $0.00 | $912.08 | | | | | | |
| GTA | 09/02/2013 | 08/31/2013 | $912.08 | 144 | Payment:Escrow Only-BK Trustee | T2 CASH-TRUSTEE-POST-PETITION | | $0.00 | $0.00 | | | | | | $6,802.53 | $143,311.73 |
| | | | | | ESC 80 | | | $0.00 | $0.00 | $912.08 | | | | | | |
| GTA | 09/02/2013 | | $17,822.20 | 140 | Payment:Escrow Only-Cash | G6 Esc-Move to Corp Adv-Loan Mods | | $0.00 | $0.00 | | | | | | $5,890.45 | $143,311.73 |
| | | | | | ESC 80 | | | $0.00 | $0.00 | $17,822.20 | | | | | | |
| GTA | 09/02/2013 | | $852.28 | 140 | Payment:Escrow Only-Cash | G6 Esc-Move to Corp Adv-Loan Mods | | $0.00 | $0.00 | | | | | | -$11,931.75 | $143,311.73 |
| | | | | | ESC 80 | | | $0.00 | $0.00 | $852.28 | | | | | | |
| GTA | 09/02/2013 | | $29,369.34 | 140 | Payment:Escrow Only-Cash | G3 Esc Disb-Neg Bal to Corp Adv | | $0.00 | $0.00 | | | | | | -$12,784.03 | $143,311.73 |
| | | | | | ESC 80 | | | $0.00 | $0.00 | $29,369.34 | | | | | | |
| GTA | 09/02/2013 | | -$17,822.20 | 211 | Disbursement:Insurance Only | G6 Esc-Move to Corp Adv-Loan Mods | | $0.00 | $0.00 | | | | | | -$42,153.37 | $143,311.73 |
| | | | | | INS 302 | | | $0.00 | $0.00 | | | -$17,822.20 | | | | |
| GTA | 09/02/2013 | | -$852.28 | 211 | Disbursement:Insurance Only | G6 Esc-Move to Corp Adv-Loan Mods | | $0.00 | $0.00 | | | | | | -$42,153.37 | $143,311.73 |
| | | | | | INS 301 | | | $0.00 | $0.00 | | | -$852.28 | | | | |
| GTA | 09/02/2013 | | -$29,369.34 | 211 | Disbursement:Insurance Only | G3 Esc Disb-Neg Bal to Corp Adv | | $0.00 | $0.00 | | | | | | -$42,153.37 | $143,311.73 |
| | | | | | INS 300 | | | $0.00 | $0.00 | | | -$29,369.34 | | | | |
| GTA | 08/09/2013 | | $2,000.00 | 112 | Mellon Chicago, IL | 36 Mellon-Chicago | | $0.00 | $0.00 | | | | | | -$42,153.37 | $143,311.73 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $2,000.00 | | | |
| GTA | 08/01/2013 | | -$3,036.00 | 210 | Disbursement:Escrow Only | F7 Esc Disb-Hazard/Fire | | $0.00 | $0.00 | | | | | | -$42,153.37 | $143,311.73 |
| | | | | | ESC 80 | | | $0.00 | $0.00 | -$3,036.00 | | | | | | |
| GTA | 07/30/2013 | | $6,010.95 | 118 | Payment:Unapplied Funds | UF UAF AUTOMATED TRANS-PMTS & REV | 02/01/13 | $323.08 | $792.98 | | | | | | -$39,117.37 | $143,311.73 |

e 30          0

| Source | Tran Date | Bac Date | Tran Amt | | Process | Process Desc | Due Date | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | ESC 80 | | $0.00 | $0.00 | $4,894.89 | | | | | | |
| GTA | 07/30/2013 | | -$6,010.95 | 218 | Disbursement:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 02/01/13 | $0.00 | $0.00 | | | | | | -$44,012.26 | $143,634.81 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$6,010.95 | | | |
| GTA | 07/30/2013 | 06/12/2013 | $1,734.93 | 103 | BK Trustee Payment | T2 | CASH-TRUSTEE-POST-PETITION | | $0.00 | $0.00 | | | | | | -$44,012.26 | $143,634.81 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,734.93 | | | |
| GTA | 07/29/2013 | 05/13/2013 | $1,735.60 | 103 | BK Trustee Payment | T2 | CASH-TRUSTEE-POST-PETITION | | $0.00 | $0.00 | | | | | | -$44,012.26 | $143,634.81 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,735.60 | | | |
| GTA | 07/19/2013 | | $1,200.00 | 112 | Mellon Chicago, IL | 36 | Mellon-Chicago | | $0.00 | $0.00 | | | | | | -$44,012.26 | $143,634.81 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $1,200.00 | | | |
| GTA | 06/13/2013 | | $6,010.95 | 118 | Payment:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 01/01/13 | $321.30 | $794.76 | | | | | | -$44,012.26 | $143,634.81 |
| | | | | | | ESC 80 | | $0.00 | $0.00 | $4,894.89 | | | | | | |
| GTA | 06/13/2013 | | -$6,010.95 | 218 | Disbursement:Unapplied Funds | UF | UAF AUTOMATED TRANS-PMTS & REV | 01/01/13 | $0.00 | $0.00 | | | | | | -$48,907.15 | $143,956.11 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | -$6,010.95 | | | |
| GTA | 06/13/2013 | 06/10/2013 | $2,045.00 | 106 | Mellon Los Angeles,CA | N1 | Mellon - Los Angeles, CA | | $0.00 | $0.00 | | | | | | -$48,907.15 | $143,956.11 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $2,045.00 | | | |
| GTA | 05/08/2013 | 05/05/2013 | $2,045.00 | 106 | Mellon Los Angeles,CA | N1 | Mellon - Los Angeles, CA | | $0.00 | $0.00 | | | | | | -$48,907.15 | $143,956.11 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $2,045.00 | | | |
| GTA | 05/07/2013 | 04/30/2013 | $3,425.89 | 100 | Payment:Cash | 88 | Acquisition Unapplied Funds | | $0.00 | $0.00 | | | | | | -$48,907.15 | $143,956.11 |
| | | | | | | Unapplied Funds | | $0.00 | $0.00 | | | | $3,425.89 | | | |
| GTA | 04/30/2013 | | -$48,907.15 | 210 | Disbursement:Escrow Only | QU | Acquired Negative ESC-Unknown | | $0.00 | $0.00 | | | | | | -$48,907.15 | $143,956.11 |
| | | | | | | ESC 80 | | $0.00 | $0.00 | -$48,907.15 | | | | | | |
| CONV | 04/05/2013 | | -$303.06 | QUD | Acq Disbr from Unapplied Funds/Susp | | 12/01/12 | $0.00 | $0.00 | | | | -$303.06 | | | $143,956.11 |
| CONV | 04/05/2013 | | $2,039.34 | QSP | Acq Payment to Unapplied Funds/Susp | | 12/01/12 | $0.00 | $0.00 | | | | $2,039.34 | | | $143,956.11 |

| Source | Tran Date | Bac | Date | Tran Amt | | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CONV | 03/12/2013 | | | $6,010.95 | 100 | | Payment:Cash | 12/01/12 | $319.54 | $796.52 | $4,894.89 | | | | | | $143,956.11 |
| CONV | 03/12/2013 | | | -$6,010.95 | QUD | | Acq Disbr from Unapplied Funds/Susp | 11/01/12 | $0.00 | $0.00 | | | | -$6,010.95 | | | $144,275.65 |
| CONV | 03/08/2013 | | | $2,045.00 | QSP | | Acq Payment to Unapplied Funds/Susp | 11/01/12 | $0.00 | $0.00 | | | | $2,045.00 | | | $144,275.65 |
| CONV | 03/07/2013 | | | -$5,398.83 | QUD | | Acq Disbr from Unapplied Funds/Susp | 11/01/12 | $0.00 | $0.00 | | | | -$5,398.83 | | | $144,275.65 |
| CONV | 03/07/2013 | | | $303.06 | QSP | | Acq Payment to Unapplied Funds/Susp | 11/01/12 | $0.00 | $0.00 | | | | $303.06 | | | $144,275.65 |
| CONV | 03/07/2013 | | | $6,814.72 | 100 | | Payment:Cash | 11/01/12 | $317.78 | $798.28 | $5,698.66 | | | | | | $144,275.65 |
| CONV | 02/05/2013 | | | $2,045.00 | QSP | | Acq Payment to Unapplied Funds/Susp | 10/01/12 | $0.00 | $0.00 | | | | $2,045.00 | | | $144,593.43 |
| CONV | 01/28/2013 | | | -$275.00 | QFA | | Acq Fee Assessed (W/Lates) | | $0.00 | $0.00 | | | | | -$275.00 | | $144,593.43 |
| CONV | 01/11/2013 | | | $1,863.94 | QSP | | Acq Payment to Unapplied Funds/Susp | 10/01/12 | $0.00 | $0.00 | | | | $1,863.94 | | | $144,593.43 |
| CONV | 01/09/2013 | | | $1,800.00 | QSP | | Acq Payment to Unapplied Funds/Susp | 10/01/12 | $0.00 | $0.00 | | | | $1,800.00 | | | $144,593.43 |
| CONV | 12/13/2012 | | | $1,812.82 | QSP | | Acq Payment to Unapplied Funds/Susp | 10/01/12 | $0.00 | $0.00 | | | | $1,812.82 | | | $144,593.43 |
| CONV | 12/10/2012 | | | -$7,729.56 | 210 | | Disbursement:Escrow Only | 10/01/12 | $0.00 | $0.00 | -$7,729.56 | | | | | | $144,593.43 |
| CONV | 12/04/2012 | | | $2,045.00 | QSP | | Acq Payment to Unapplied Funds/Susp | 10/01/12 | $0.00 | $0.00 | | | | $2,045.00 | | | $144,593.43 |
| CONV | 11/13/2012 | | | $2,045.17 | 100 | | Payment:Cash | 10/01/12 | $316.04 | $800.02 | $929.11 | | | | | | $144,593.43 |
| CONV | 10/10/2012 | | | $2,045.17 | 100 | | Payment:Cash | 09/01/12 | $314.30 | $801.76 | $929.11 | | | | | | $144,909.47 |
| CONV | 09/10/2012 | | | $2,045.17 | 100 | | Payment:Cash | 08/01/12 | $312.58 | $803.48 | $929.11 | | | | | | $145,223.77 |
| CONV | 09/10/2012 | | | -$2,045.17 | QUD | | Acq Disbr from Unapplied Funds/Susp | 07/01/12 | $0.00 | $0.00 | | | | -$2,045.17 | | | $145,536.35 |
| CONV | 09/07/2012 | | | $1,636.21 | QSP | | Acq Payment to Unapplied Funds/Susp | 06/01/12 | $0.00 | $0.00 | | | | $1,636.21 | | | $145,536.35 |
| CONV | 09/07/2012 | | | $2,045.17 | 100 | | Payment:Cash | 07/01/12 | $310.86 | $805.20 | $929.11 | | | | | | $145,536.35 |
| CONV | 08/15/2012 | | | $2,045.17 | 100 | | Payment:Cash | 06/01/12 | $309.16 | $806.90 | $929.11 | | | | | | $145,847.21 |
| CONV | 08/15/2012 | | | -$2,045.17 | QUD | | Acq Disbr from Unapplied Funds/Susp | 05/01/12 | $0.00 | $0.00 | | | | -$2,045.17 | | | $146,156.37 |
| CONV | 08/10/2012 | | | $2,031.42 | QSP | | Acq Payment to Unapplied Funds/Susp | 05/01/12 | $0.00 | $0.00 | | | | $2,031.42 | | | $146,156.37 |
| CONV | 08/10/2012 | | | -$523.75 | QUD | | Acq Disbr from Unapplied Funds/Susp | 05/01/12 | $0.00 | $0.00 | | | | -$523.75 | | | $146,156.37 |
| CONV | 08/07/2012 | | | $2,045.17 | 100 | | Payment:Cash | 05/01/12 | $307.46 | $808.60 | $929.11 | | | | | | $146,156.37 |

| Source | Tran Date | Bac | Date | Tran Amt | Dup | Process | Process Desc | Date Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CONV | 07/31/2012 | | | -$2,713.00 | 210 | | Disbursement:Escrow Only | 04/01/12 | $0.00 | $0.00 | -$2,713.00 | | | | | | $146,463.83 |
| CONV | 07/17/2012 | | | -$290.69 | QUD | | Acq Disbr from Unapplied Funds/Susp | 04/01/12 | $0.00 | $0.00 | | | | -$290.69 | | | $146,463.83 |
| CONV | 07/17/2012 | | | $523.75 | QSP | | Acq Payment to Unapplied Funds/Susp | 04/01/12 | $0.00 | $0.00 | | | | $523.75 | | | $146,463.83 |
| CONV | 07/10/2012 | | | $2,045.17 | 100 | | Payment:Cash | 04/01/12 | $305.77 | $810.29 | $929.11 | | | | | | $146,463.83 |
| CONV | 07/03/2012 | | | -$2,045.17 | QUD | | Acq Disbr from Unapplied Funds/Susp | 02/01/12 | $0.00 | $0.00 | | | | -$2,045.17 | | | $146,769.60 |
| CONV | 07/03/2012 | | | $2,045.17 | 100 | | Payment:Cash | 03/01/12 | $304.09 | $811.97 | $929.11 | | | | | | $146,769.60 |
| CONV | 06/12/2012 | | | $1,800.00 | QSP | | Acq Payment to Unapplied Funds/Susp | 02/01/12 | $0.00 | $0.00 | | | | $1,800.00 | | | $147,073.69 |
| CONV | 06/08/2012 | | | $2,045.17 | 100 | | Payment:Cash | 02/01/12 | $302.42 | $813.64 | $929.11 | | | | | | $147,073.69 |
| CONV | 06/08/2012 | | | -$2,045.17 | QUD | | Acq Disbr from Unapplied Funds/Susp | 01/01/12 | $0.00 | $0.00 | | | | -$2,045.17 | | | $147,376.11 |
| CONV | 06/07/2012 | | | $1,472.00 | QSP | | Acq Payment to Unapplied Funds/Susp | 01/01/12 | $0.00 | $0.00 | | | | $1,472.00 | | | $147,376.11 |
| CONV | 05/16/2012 | | | $2,045.17 | 100 | | Payment:Cash | 01/01/12 | $300.76 | $815.30 | $929.11 | | | | | | $147,376.11 |
| CONV | 05/11/2012 | | | $1,183.42 | QSP | | Acq Payment to Unapplied Funds/Susp | 12/01/11 | $0.00 | $0.00 | | | | $1,183.42 | | | $147,676.87 |
| CONV | 04/09/2012 | | | $2,045.17 | 100 | | Payment:Cash | 11/01/11 | $297.47 | $818.59 | $929.11 | | | | | | $147,676.87 |
| CONV | 04/09/2012 | | | $2,045.17 | 100 | | Payment:Cash | 12/01/11 | $299.11 | $816.95 | $929.11 | | | | | | $147,974.34 |
| CONV | 04/09/2012 | | | -$2,045.17 | QUD | | Acq Disbr from Unapplied Funds/Susp | 10/01/11 | $0.00 | $0.00 | | | | -$2,045.17 | | | $148,273.45 |
| CONV | 04/03/2012 | | | $1,239.59 | QSP | | Acq Payment to Unapplied Funds/Susp | 10/01/11 | $0.00 | $0.00 | | | | $1,239.59 | | | $148,273.45 |
| CONV | 03/08/2012 | | | -$2,045.17 | QUD | | Acq Disbr from Unapplied Funds/Susp | 10/01/11 | $0.00 | $0.00 | | | | -$2,045.17 | | | $148,273.45 |
| CONV | 03/08/2012 | | | $2,045.17 | 100 | | Payment:Cash | 10/01/11 | $295.83 | $820.23 | $929.11 | | | | | | $148,273.45 |
| CONV | 03/05/2012 | | | $2,654.52 | QSP | | Acq Payment to Unapplied Funds/Susp | 09/01/11 | $0.00 | $0.00 | | | | $2,654.52 | | | $148,569.28 |
| CONV | 03/02/2012 | | | $2,045.17 | 100 | | Payment:Cash | 09/01/11 | $294.21 | $821.85 | $929.11 | | | | | | $148,569.28 |
| CONV | 02/16/2012 | | | -$2,232.14 | QUD | | Acq Disbr from Unapplied Funds/Susp | 04/01/11 | $0.00 | $0.00 | | | | -$2,232.14 | | | $148,863.49 |
| CONV | 02/16/2012 | | | $1,116.07 | 100 | | Payment:Cash | 06/01/11 | $289.39 | $826.67 | $0.01 | | | | | | $148,863.49 |
| CONV | 02/16/2012 | | | $1,116.07 | 100 | | Payment:Cash | 05/01/11 | $287.80 | $828.26 | $0.01 | | | | | | $149,152.88 |
| CONV | 02/16/2012 | | | -$2,232.14 | QUD | | Acq Disbr from Unapplied Funds/Susp | 04/01/11 | $0.00 | $0.00 | | | | -$2,232.14 | | | $149,440.68 |
| CONV | 02/16/2012 | | | $1,116.07 | 100 | | Payment:Cash | 08/01/11 | $292.59 | $823.47 | $0.01 | | | | | | $149,440.68 |

| Source | Tran Date | Bac Date | Tran Amt | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|--------|-----------|----------|----------|---------|--------------|----------|-----------|----------|-------------|-----------|----------|----------|------------|-----------|----------|
| CONV | 02/16/2012 | | $1,116.07 | 100 | Payment:Cash | 07/01/11 | $290.99 | $825.07 | $0.01 | | | | | | $149,733.27 |
| CONV | 02/03/2012 | | $2,045.17 | 100 | Payment:Cash | 04/01/11 | $286.22 | $829.84 | $0.01 | | | $929.10 | | | $150,024.26 |
| CONV | 01/30/2012 | | $3,224.95 | QSP | Acq Payment to Unapplied Funds/Susp | 03/01/11 | $0.00 | $0.00 | | | | $3,224.95 | | | $150,310.48 |
| CONV | 01/06/2012 | | $2,045.17 | 100 | Payment:Cash | 03/01/11 | $284.65 | $831.41 | $0.01 | | | $929.10 | | | $150,310.48 |
| CONV | 12/16/2011 | | -$4,464.28 | QUD | Acq Disbr from Unapplied Funds/Susp | 02/01/11 | $0.00 | $0.00 | | | | -$4,464.28 | | | $150,595.13 |
| CONV | 12/16/2011 | | $1,116.07 | 100 | Payment:Cash | 01/01/11 | $281.53 | $834.53 | $0.01 | | | | | | $150,595.13 |
| CONV | 12/16/2011 | | $1,116.07 | 100 | Payment:Cash | 12/01/10 | $279.99 | $836.07 | $0.01 | | | | | | $150,876.66 |
| CONV | 12/16/2011 | | $1,116.07 | 100 | Payment:Cash | 02/01/11 | $283.09 | $832.97 | $0.01 | | | | | | $151,156.65 |
| CONV | 12/16/2011 | | $1,116.07 | 100 | Payment:Cash | 11/01/10 | $278.45 | $837.61 | $0.01 | | | | | | $151,439.74 |
| CONV | 12/14/2011 | | -$1,116.07 | 500 | Reversal:Pymt-Cash | 01/01/11 | -$283.09 | -$832.97 | -$0.01 | | | | | | $151,718.19 |
| CONV | 12/14/2011 | | -$1,116.07 | 500 | Reversal:Pymt-Cash | 11/01/10 | -$279.99 | -$836.07 | -$0.01 | | | | | | $151,435.10 |
| CONV | 12/14/2011 | | $1,116.07 | 100 | Payment:Cash | 12/01/10 | $279.99 | $836.07 | $0.01 | | | | | | $151,155.11 |
| CONV | 12/14/2011 | | -$1,116.07 | 500 | Reversal:Pymt-Cash | 10/01/10 | -$278.45 | -$837.61 | -$0.01 | | | | | | $151,435.10 |
| CONV | 12/14/2011 | | -$2,045.17 | QUD | Acq Disbr from Unapplied Funds/Susp | 10/01/10 | $0.00 | $0.00 | | | | -$2,045.17 | | | $151,156.65 |
| CONV | 12/14/2011 | | $1,116.07 | 100 | Payment:Cash | 01/01/11 | $281.53 | $834.53 | $0.01 | | | | | | $151,156.65 |
| CONV | 12/14/2011 | | -$1,116.07 | 500 | Reversal:Pymt-Cash | 12/01/10 | -$281.53 | -$834.53 | -$0.01 | | | | | | $151,438.18 |
| CONV | 12/14/2011 | | $2,045.17 | 100 | Payment:Cash | 10/01/10 | $276.92 | $839.14 | $0.01 | | | $929.10 | | | $151,156.65 |
| CONV | 12/14/2011 | | $1,116.07 | 100 | Payment:Cash | 02/01/11 | $283.09 | $832.97 | $0.01 | | | | | | $151,433.57 |
| CONV | 12/14/2011 | | $1,116.07 | 100 | Payment:Cash | 11/01/10 | $278.45 | $837.61 | $0.01 | | | | | | $151,716.66 |
| CONV | 12/14/2011 | | $1,116.07 | 100 | Payment:Cash | 03/01/11 | $284.65 | $831.41 | $0.01 | | | | | | $151,995.11 |
| CONV | 12/14/2011 | | -$1,116.07 | 500 | Reversal:Pymt-Cash | 02/01/11 | -$284.65 | -$831.41 | -$0.01 | | | | | | $152,279.76 |
| CONV | 12/08/2011 | | -$7,799.38 | 210 | Disbursement:Escrow Only | 09/01/10 | $0.00 | $0.00 | -$7,799.38 | | | | | | $151,995.11 |
| CONV | 12/05/2011 | | $929.17 | QSP | Acq Payment to Unapplied Funds/Susp | 09/01/10 | $0.00 | $0.00 | | | | $929.17 | | | $151,995.11 |
| CONV | 12/02/2011 | | $1,116.00 | QSP | Acq Payment to Unapplied Funds/Susp | 09/01/10 | $0.00 | $0.00 | | | | $1,116.00 | | | $151,995.11 |
| CONV | 11/08/2011 | | $2,045.17 | 100 | Payment:Cash | 09/01/10 | $275.40 | $840.66 | $0.01 | | | $929.10 | | | $151,995.11 |
| CONV | 11/08/2011 | | -$2,045.17 | QUD | Acq Disbr from Unapplied Funds/Susp | 09/01/10 | $0.00 | $0.00 | | | | -$2,045.17 | | | $152,270.51 |

| Source | Tran Date | Bac Date | Tran Amt | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CONV | 11/07/2011 | | $2,045.17 | 100 | Payment:Cash | 08/01/10 | $273.89 | $842.17 | $0.01 | | | $929.10 | | | $152,270.51 |
| CONV | 11/04/2011 | | -$150.00 | QFA | Acq Fee Assessed (W/Lates) | | $0.00 | $0.00 | | | | | -$150.00 | | $152,544.40 |
| CONV | 10/10/2011 | | -$150.00 | QFA | Acq Fee Assessed (W/Lates) | | $0.00 | $0.00 | | | | | -$150.00 | | $152,544.40 |
| CONV | 10/03/2011 | | $2,045.17 | 100 | Payment:Cash | 07/01/10 | $272.38 | $843.68 | $0.01 | | | $929.10 | | | $152,544.40 |
| CONV | 09/22/2011 | | -$2,611.00 | 210 | Disbursement:Escrow Only | 06/01/10 | $0.00 | $0.00 | -$2,611.00 | | | | | | $152,816.78 |
| CONV | 09/02/2011 | | $2,045.17 | 100 | Payment:Cash | 06/01/10 | $270.89 | $845.17 | $0.01 | | | $929.10 | | | $152,816.78 |
| CONV | 08/25/2011 | | $2,045.17 | 100 | Payment:Cash | 05/01/10 | $269.40 | $846.66 | $0.01 | | | $929.10 | | | $153,087.67 |
| CONV | 08/25/2011 | | -$2,045.17 | QUD | Acq Disbr from Unapplied Funds/Susp | 04/01/10 | $0.00 | $0.00 | | | | -$2,045.17 | | | $153,357.07 |
| CONV | 08/18/2011 | | -$5,000.00 | 210 | Disbursement:Escrow Only | 04/01/10 | $0.00 | $0.00 | -$5,000.00 | | | | | | $153,357.07 |
| CONV | 08/18/2011 | | -$1,069.01 | 210 | Disbursement:Escrow Only | 04/01/10 | $0.00 | $0.00 | -$1,069.01 | | | | | | $153,357.07 |
| CONV | 08/08/2011 | | $2,045.17 | QSP | Acq Payment to Unapplied Funds/Susp | 04/01/10 | $0.00 | $0.00 | | | | $2,045.17 | | | $153,357.07 |
| CONV | 07/08/2011 | | $929.10 | QSP | Acq Payment to Unapplied Funds/Susp | 04/01/10 | $0.00 | $0.00 | | | | $929.10 | | | $153,357.07 |
| CONV | 07/08/2011 | | $1,116.07 | 100 | Payment:Cash | 04/01/10 | $267.92 | $848.14 | $0.01 | | | | | | $153,357.07 |
| CONV | 05/26/2011 | | -$3,280.00 | 210 | Disbursement:Escrow Only | 03/01/10 | $0.00 | $0.00 | -$3,280.00 | | | | | | $153,624.99 |
| CONV | 12/06/2010 | | -$7,869.26 | 210 | Disbursement:Escrow Only | 03/01/10 | $0.00 | $0.00 | -$7,869.26 | | | | | | $153,624.99 |
| CONV | 08/24/2010 | | $1,116.07 | 100 | Payment:Cash | 03/01/10 | $266.45 | $849.61 | $0.01 | | | | | | $153,624.99 |
| CONV | 08/13/2010 | | $1,116.00 | QSP | Acq Payment to Unapplied Funds/Susp | 02/01/10 | $0.00 | $0.00 | | | | $1,116.00 | | | $153,891.44 |
| CONV | 07/30/2010 | | $0.00 | 140 | Payment:Escrow Only-Cash | 02/01/10 | $0.00 | $0.00 | $168.01 | | | -$168.01 | | | $153,891.44 |
| CONV | 07/15/2010 | | $1,116.83 | 100 | Payment:Cash | 02/01/10 | $264.99 | $851.07 | $0.01 | | | $0.76 | | | $153,891.44 |
| CONV | 06/28/2010 | | $0.01 | 140 | Payment:Escrow Only-Cash | 12/01/09 | $0.00 | $0.00 | $0.01 | | | | | | $154,156.43 |
| CONV | 06/28/2010 | | -$1,116.07 | QUD | Acq Disbr from Unapplied Funds/Susp | 12/01/09 | $0.00 | $0.00 | | | | -$1,116.07 | | | $154,156.43 |
| CONV | 06/28/2010 | | $1,116.06 | 100 | Payment:Cash | 01/01/10 | $263.53 | $852.53 | | | | | | | $154,156.43 |
| CONV | 06/17/2010 | | $1,116.00 | QSP | Acq Payment to Unapplied Funds/Susp | 12/01/09 | $0.00 | $0.00 | | | | $1,116.00 | | | $154,419.96 |
| CONV | 05/27/2010 | | -$4,104.00 | 210 | Disbursement:Escrow Only | 12/01/09 | $0.00 | $0.00 | -$4,104.00 | | | | | | $154,419.96 |

| Source | Tran Date | Bac | Date | Tran Amt | | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CONV | 05/14/2010 | | | -$1,116.07 | QUD | | Acq Disbr from Unapplied Funds/Susp | 12/01/09 | $0.00 | $0.00 | | | | -$1,116.07 | | | $154,419.96 |
| CONV | 05/14/2010 | | | $1,116.06 | 100 | | Payment:Cash | 12/01/09 | $262.09 | $853.97 | | | | | | | $154,419.96 |
| CONV | 05/14/2010 | | | $0.01 | 140 | | Payment:Escrow Only-Cash | 12/01/09 | $0.00 | $0.00 | $0.01 | | | | | | $154,682.05 |
| CONV | 05/11/2010 | | | $1,116.00 | QSP | | Acq Payment to Unapplied Funds/Susp | 11/01/09 | $0.00 | $0.00 | | | | $1,116.00 | | | $154,682.05 |
| CONV | 04/14/2010 | | | $1,116.07 | 100 | | Payment:Cash | 11/01/09 | $260.65 | $855.41 | $0.01 | | | | | | $154,682.05 |
| CONV | 03/12/2010 | | | $1,116.07 | 100 | | Payment:Cash | 10/01/09 | $259.22 | $856.84 | $0.01 | | | | | | $154,942.70 |
| CONV | 02/08/2010 | | | $1,116.07 | 100 | | Payment:Cash | 09/01/09 | $257.79 | $858.27 | $0.01 | | | | | | $155,201.92 |
| CONV | 01/07/2010 | | | $1,116.07 | 100 | | Payment:Cash | 08/01/09 | $256.38 | $859.68 | $0.01 | | | | | | $155,459.71 |
| CONV | 12/24/2009 | | | -$8,278.12 | 210 | | Disbursement:Escrow Only | 07/01/09 | $0.00 | $0.00 | -$8,278.12 | | | | | | $155,716.09 |
| CONV | 12/07/2009 | | | $1,283.46 | 100 | | Payment:Cash | 07/01/09 | $254.97 | $861.09 | $0.01 | | | $167.39 | | | $155,716.09 |
| CONV | 11/13/2009 | | | -$5,000.00 | 210 | | Disbursement:Escrow Only | 06/01/09 | $0.00 | $0.00 | -$5,000.00 | | | | | | $155,971.06 |
| CONV | 11/13/2009 | | | -$5,000.00 | 210 | | Disbursement:Escrow Only | 06/01/09 | $0.00 | $0.00 | -$5,000.00 | | | | | | $155,971.06 |
| CONV | 11/13/2009 | | | -$5,000.00 | 210 | | Disbursement:Escrow Only | 06/01/09 | $0.00 | $0.00 | -$5,000.00 | | | | | | $155,971.06 |
| CONV | 11/13/2009 | | | -$2,223.18 | 210 | | Disbursement:Escrow Only | 06/01/09 | $0.00 | $0.00 | -$2,223.18 | | | | | | $155,971.06 |
| CONV | 11/13/2009 | | | -$5,000.00 | 210 | | Disbursement:Escrow Only | 06/01/09 | $0.00 | $0.00 | -$5,000.00 | | | | | | $155,971.06 |
| CONV | 06/22/2009 | | | -$1,116.06 | 500 | | Reversal:Pymt-Cash | 06/01/09 | -$254.97 | -$861.09 | | | | | | | $155,971.06 |
| CONV | 06/16/2009 | | | $0.02 | 160 | | Payment:Late Chrg Only-Cash | 06/01/09 | $0.00 | $0.00 | | $0.02 | | | | | $155,716.09 |
| CONV | 06/16/2009 | | | $1,116.06 | 100 | | Payment:Cash | 06/01/09 | $253.57 | $862.49 | | | | | | | $155,716.09 |
| CONV | 06/16/2009 | | | $1,116.06 | 100 | | Payment:Cash | 07/01/09 | $254.97 | $861.09 | | | | | | | $155,969.66 |
| CONV | 06/16/2009 | | | $1,116.06 | 100 | | Payment:Cash | 05/01/09 | $252.18 | $863.88 | | | | | | | $156,224.63 |
| CONV | 03/26/2009 | | | $1,116.06 | 100 | | Payment:Cash | 02/01/09 | $248.05 | $868.01 | | | | | | | $156,476.81 |
| CONV | 03/26/2009 | | | $1,116.06 | 100 | | Payment:Cash | 03/01/09 | $249.42 | $866.64 | | | | | | | $156,724.86 |
| CONV | 03/26/2009 | | | $1,395.04 | 100 | | Payment:Cash | 04/01/09 | $250.79 | $865.27 | | $278.98 | | | | | $156,974.28 |
| CONV | 01/23/2009 | | | $1,116.06 | 100 | | Payment:Cash | 12/01/08 | $245.33 | $870.73 | | | | | | | $157,225.07 |
| CONV | 01/23/2009 | | | $1,116.06 | 100 | | Payment:Cash | 01/01/09 | $246.68 | $869.38 | | | | | | | $157,470.40 |

c 3          0

| Source | Tran Date | Bac Date | Tran Amt | Process | Process Desc | Due Date | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CONV | 12/10/2008 | | $1,116.06 | 100 | Payment:Cash | 11/01/08 | $243.98 | $872.08 | | | | | | | $157,717.08 |
| CONV | 10/23/2008 | | $1,116.06 | 100 | Payment:Cash | 10/01/08 | $242.64 | $873.42 | | | | | | | $157,961.06 |
| CONV | 09/29/2008 | | $1,171.86 | 100 | Payment:Cash | 09/01/08 | $241.31 | $874.75 | | $55.80 | | | | | $158,203.70 |
| CONV | 08/22/2008 | | $1,171.86 | 100 | Payment:Cash | 08/01/08 | $239.98 | $876.08 | | $55.80 | | | | | $158,445.01 |
| CONV | 07/22/2008 | | $2.66 | 120 | Payment:Prin Only-Cash | 07/01/08 | $2.66 | $0.00 | | | | | | | $158,684.99 |
| CONV | 07/22/2008 | | $1,174.52 | 100 | Payment:Cash | 07/01/08 | $238.65 | $877.41 | | $58.46 | | | | | $158,687.65 |
| CONV | 06/30/2008 | | $0.00 | QUD | Acq Disbr from Unapplied Funds/Susp | 06/01/08 | $0.00 | $0.00 | | $53.14 | | -$53.14 | | | $158,926.30 |
| CONV | 06/27/2008 | | $1,116.06 | 100 | Payment:Cash | 06/01/08 | $237.34 | $878.72 | | | | | | | $158,926.30 |
| CONV | 06/19/2008 | | $1,225.00 | 100 | Payment:Cash | 05/01/08 | $236.04 | $880.02 | | $55.80 | | $53.14 | | | $159,163.64 |
| CONV | 04/22/2008 | | $1,171.86 | 100 | Payment:Cash | 04/01/08 | $234.74 | $881.32 | | $55.80 | | | | | $159,399.68 |
| CONV | 03/21/2008 | | $1,227.66 | 100 | Payment:Cash | 03/01/08 | $233.46 | $882.60 | | $111.60 | | | | | $159,634.42 |
| CONV | 02/26/2008 | | $1,116.06 | 100 | Payment:Cash | 02/01/08 | $232.17 | $883.89 | | | | | | | $159,867.88 |
| CONV | 01/25/2008 | | $1,283.46 | 100 | Payment:Cash | 01/01/08 | $230.90 | $885.16 | | $167.40 | | | | | $160,100.05 |
| CONV | 12/24/2007 | | $1,116.06 | 100 | Payment:Cash | 12/01/07 | $229.63 | $886.43 | | | | | | | $160,330.95 |
| CONV | 12/24/2007 | | $1,116.06 | 100 | Payment:Cash | 11/01/07 | $228.37 | $887.69 | | | | | | | $160,560.58 |
| CONV | 10/19/2007 | | $1,171.86 | 100 | Payment:Cash | 10/01/07 | $227.12 | $888.94 | | $55.80 | | | | | $160,788.95 |
| CONV | 09/14/2007 | | $1,116.06 | 100 | Payment:Cash | 09/01/07 | $225.87 | $890.19 | | | | | | | $161,016.07 |
| CONV | 08/20/2007 | | $1,227.66 | 100 | Payment:Cash | 08/01/07 | $224.63 | $891.43 | | $111.60 | | | | | $161,241.94 |
| CONV | 07/25/2007 | | $1,116.06 | 100 | Payment:Cash | 07/01/07 | $223.40 | $892.66 | | | | | | | $161,466.57 |
| CONV | 06/06/2007 | | $1,116.06 | 100 | Payment:Cash | 06/01/07 | $222.17 | $893.89 | | | | | | | $161,689.97 |
| CONV | 05/10/2007 | | $1,116.06 | 100 | Payment:Cash | 05/01/07 | $220.87 | $895.19 | | | | | | | $161,912.14 |
| CONV | 04/09/2007 | | $1,116.06 | 100 | Payment:Cash | 04/01/07 | $219.29 | $896.77 | | | | | | | $162,133.01 |
| CONV | 04/09/2007 | | $55.80 | 120 | Payment:Prin Only-Cash | 04/01/07 | $55.80 | $0.00 | | | | | | | $162,352.30 |
| CONV | 03/15/2007 | | $1,116.06 | 100 | Payment:Cash | 03/01/07 | $217.78 | $898.28 | | | | | | | $162,408.10 |
| CONV | 03/15/2007 | | $55.80 | 120 | Payment:Prin Only-Cash | 03/01/07 | $55.80 | $0.00 | | | | | | | $162,625.88 |
| CONV | 02/14/2007 | | $55.80 | 120 | Payment:Prin Only-Cash | 02/01/07 | $55.80 | $0.00 | | | | | | | $162,681.68 |

c 37    0

| Source | Tran Date | Bac Date | Tran Amt | | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CONV | 02/14/2007 | | $1,116.06 | 100 | | Payment:Cash | 02/01/07 | $216.42 | $899.64 | | | | | | | $162,737.48 |
| CONV | 01/30/2007 | | $1,171.86 | 100 | | Payment:Cash | 01/01/07 | $215.23 | $900.83 | | $55.80 | | | | | $162,953.90 |
| CONV | 12/20/2006 | | $1,171.86 | 100 | | Payment:Cash | 12/01/06 | $214.05 | $902.01 | | $55.80 | | | | | $163,169.13 |
| CONV | 12/01/2006 | | $1,171.86 | 100 | | Payment:Cash | 11/01/06 | $212.87 | $903.19 | | $55.80 | | | | | $163,383.18 |
| CONV | 10/18/2006 | | $1,171.86 | 100 | | Payment:Cash | 10/01/06 | $211.70 | $904.36 | | $55.80 | | | | | $163,596.05 |
| CONV | 09/26/2006 | | $1,171.86 | 100 | | Payment:Cash | 09/01/06 | $210.54 | $905.52 | | $55.80 | | | | | $163,807.75 |
| CONV | 08/21/2006 | | $1,171.86 | 100 | | Payment:Cash | 08/01/06 | $209.39 | $906.67 | | $55.80 | | | | | $164,018.29 |
| CONV | 07/24/2006 | | $1,171.86 | 100 | | Payment:Cash | 07/01/06 | $208.23 | $907.83 | | $55.80 | | | | | $164,227.68 |
| CONV | 06/20/2006 | | $1.80 | 120 | | Payment:Pnn Only-Cash | 06/01/06 | $1.80 | $0.00 | | | | | | | $164,435.91 |
| CONV | 06/20/2006 | | $1,395.06 | 100 | | Payment:Cash | 06/01/06 | $207.08 | $908.98 | | $279.00 | | | | | $164,437.71 |
| CONV | 05/17/2006 | | $1,171.86 | 100 | | Payment:Cash | 05/01/06 | $205.95 | $910.11 | | $55.80 | | | | | $164,644.79 |
| CONV | 04/20/2006 | | $1,116.06 | 100 | | Payment:Cash | 04/01/06 | $204.82 | $911.24 | | | | | | | $164,850.74 |
| CONV | 04/10/2006 | | $1,116.06 | 100 | | Payment:Cash | 03/01/06 | $203.69 | $912.37 | | | | | | | $165,055.56 |
| CONV | 02/24/2006 | | $1,171.86 | 100 | | Payment:Cash | 02/01/06 | $202.57 | $913.49 | | $55.80 | | | | | $165,259.25 |
| CONV | 01/24/2006 | | $1,171.86 | 100 | | Payment:Cash | 01/01/06 | $201.46 | $914.60 | | $55.80 | | | | | $165,461.82 |
| CONV | 12/23/2005 | | $1,116.06 | 100 | | Payment:Cash | 12/01/05 | $200.35 | $915.71 | | | | | | | $165,663.28 |
| CONV | 11/25/2005 | | $1,116.06 | 100 | | Payment:Cash | 11/01/05 | $199.25 | $916.81 | | | | | | | $165,863.63 |
| CONV | 10/04/2005 | | $1,171.86 | 100 | | Payment:Cash | 10/01/05 | $198.16 | $917.90 | | $55.80 | | | | | $166,062.88 |
| CONV | 09/26/2005 | | $1,116.06 | 100 | | Payment:Cash | 09/01/05 | $197.07 | $918.99 | | | | | | | $166,261.04 |
| CONV | 07/29/2005 | | $1,116.06 | 100 | | Payment:Cash | 08/01/05 | $195.99 | $920.07 | | | | | | | $166,458.11 |
| CONV | 06/30/2005 | | $1,116.06 | 100 | | Payment:Cash | 07/01/05 | $194.91 | $921.15 | | | | | | | $166,654.10 |
| CONV | 05/31/2005 | | $1,116.06 | 100 | | Payment:Cash | 06/01/05 | $193.84 | $922.22 | | | | | | | $166,849.01 |
| CONV | 04/28/2005 | | $1,116.06 | 100 | | Payment:Cash | 05/01/05 | $192.78 | $923.28 | | | | | | | $167,042.85 |
| CONV | 03/31/2005 | | $1,116.06 | 100 | | Payment:Cash | 04/01/05 | $191.72 | $924.34 | | | | | | | $167,235.63 |
| CONV | 02/28/2005 | | $1,116.06 | 100 | | Payment:Cash | 03/01/05 | $190.67 | $925.39 | | | | | | | $167,427.35 |
| CONV | 01/31/2005 | | $1,116.06 | 100 | | Payment:Cash | 02/01/05 | $189.62 | $926.44 | | | | | | | $167,618.02 |

| Source | Tran Date | Bac | Date | Tran Amt | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CONV | 12/30/2004 | | | $1,116.06 | 100 | Payment:Cash | 01/01/05 | $188.58 | $927.48 | | | | | | | $167,807.64 |
| CONV | 12/01/2004 | | | $1,116.06 | 100 | Payment:Cash | 12/01/05 | $187.55 | $928.51 | | | | | | | $167,996.22 |
| CONV | 11/01/2004 | | | $1,116.06 | 100 | Payment:Cash | 11/01/04 | $186.52 | $929.54 | | | | | | | $168,183.77 |
| CONV | 10/01/2004 | | | $1,116.06 | 100 | Payment:Cash | 10/01/04 | $185.49 | $930.57 | | | | | | | $168,370.29 |
| CONV | 09/01/2004 | | | $1,116.06 | 100 | Payment:Cash | 09/01/04 | $184.47 | $931.59 | | | | | | | $168,555.78 |
| CONV | 07/30/2004 | | | $1,116.06 | 100 | Payment:Cash | 08/01/04 | $183.46 | $932.60 | | | | | | | $168,740.25 |
| CONV | 07/01/2004 | | | $1,116.06 | 100 | Payment:Cash | 07/01/04 | $182.45 | $933.61 | | | | | | | $168,923.71 |
| CONV | 06/10/2004 | | | $1,116.06 | 100 | Payment:Cash | 06/01/04 | $181.41 | $934.65 | | | | | | | $169,106.16 |
| CONV | 05/21/2004 | | | $10.00 | 120 | Payment:Prin Only-Cash | 05/01/04 | $10.00 | $0.00 | | | | | | | $169,287.57 |
| CONV | 05/06/2004 | | | $1,116.06 | 100 | Payment:Cash | 05/01/04 | $180.40 | $935.66 | | | | | | | $169,297.57 |
| CONV | 04/12/2004 | | | $1,116.06 | 100 | Payment:Cash | 04/01/04 | $179.41 | $936.65 | | | | | | | $169,477.97 |
| CONV | 03/09/2004 | | | $1,116.06 | 100 | Payment:Cash | 03/01/04 | $178.42 | $937.64 | | | | | | | $169,657.38 |
| CONV | 02/10/2004 | | | $1,116.06 | 100 | Payment:Cash | 02/01/04 | $177.45 | $938.61 | | | | | | | $169,835.80 |
| CONV | 01/12/2004 | | | $1,116.06 | 100 | Payment:Cash | 01/01/04 | $176.47 | $939.59 | | | | | | | $170,013.25 |
| CONV | 12/10/2003 | | | $1,116.06 | 100 | Payment:Cash | 12/01/03 | $175.50 | $940.56 | | | | | | | $170,189.72 |
| CONV | 11/10/2003 | | | $1,116.06 | 100 | Payment:Cash | 11/01/03 | $174.54 | $941.52 | | | | | | | $170,365.22 |
| CONV | 10/14/2003 | | | $1,116.06 | 100 | Payment:Cash | 10/01/03 | $173.58 | $942.48 | | | | | | | $170,539.76 |
| CONV | 09/10/2003 | | | $1,116.06 | 100 | Payment:Cash | 09/01/03 | $172.63 | $943.43 | | | | | | | $170,713.34 |
| CONV | 08/08/2003 | | | $1,171.86 | 100 | Payment:Cash | 07/01/03 | $170.74 | $945.32 | | $55.80 | | | | | $170,885.97 |
| CONV | 08/08/2003 | | | $1,116.06 | 100 | Payment:Cash | 08/01/03 | $171.68 | $944.38 | | | | | | | $171,056.71 |
| CONV | 06/13/2003 | | | $1,116.06 | 100 | Payment:Cash | 06/01/03 | $169.80 | $946.26 | | | | | | | $171,228.39 |
| CONV | 05/16/2003 | | | $1,116.06 | 100 | Payment:Cash | 05/01/03 | $168.87 | $947.19 | | | | | | | $171,398.19 |
| CONV | 04/04/2003 | | | $1,116.06 | 100 | Payment:Cash | 04/01/03 | $167.94 | $948.12 | | | | | | | $171,567.06 |
| CONV | 03/03/2003 | | | $1,116.06 | 100 | Payment:Cash | 03/01/03 | $167.02 | $949.04 | | | | | | | $171,735.00 |
| CONV | 01/31/2003 | | | $1,116.06 | 100 | Payment:Cash | 02/01/03 | $166.10 | $949.96 | | | | | | | $171,902.02 |
| CONV | 01/03/2003 | | | $1,116.06 | 100 | Payment:Cash | 01/01/03 | $165.19 | $950.87 | | | | | | | $172,068.12 |

| Source | Tran Date | Bac | Date | Tran Amt | | Process | Process Desc | Due Paid | Prin Paid | Int Paid | Escrow Paid | Late Paid | Ins Paid | UAF/Susp | Other Paid | Escrow Bal | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CONV | 12/03/2002 | | | $1,116.06 | 100 | | Payment:Cash | 12/01/02 | $164.28 | $951.78 | | | | | | | $172,233.31 |
| CONV | 10/30/2002 | | | $1,116.06 | 100 | | Payment:Cash | 11/01/02 | $163.38 | $952.68 | | | | | | | $172,397.59 |
| CONV | 10/02/2002 | | | $1,116.06 | 100 | | Payment:Cash | 10/01/02 | $162.48 | $953.58 | | | | | | | $172,560.97 |
| CONV | 09/03/2002 | | | $1,116.06 | 100 | | Payment:Cash | 09/01/02 | $161.59 | $954.47 | | | | | | | $172,723.45 |
| CONV | 08/02/2002 | | | $1,116.06 | 100 | | Payment:Cash | 08/01/02 | $160.70 | $955.36 | | | | | | | $172,885.04 |
| CONV | 07/03/2002 | | | $1,116.06 | 100 | | Payment:Cash | 07/01/02 | $159.82 | $956.24 | | | | | | | $173,045.74 |
| CONV | 05/31/2002 | | | $1,116.06 | 100 | | Payment:Cash | 06/01/02 | $158.94 | $957.12 | | | | | | | $173,205.56 |
| CONV | 04/29/2002 | | | $1,116.06 | 100 | | Payment:Cash | 05/01/02 | $158.07 | $957.99 | | | | | | | $173,364.50 |
| CONV | 04/03/2002 | | | $1,116.06 | 100 | | Payment:Cash | 04/01/02 | $157.20 | $958.86 | | | | | | | $173,522.57 |
| CONV | 02/27/2002 | | | $1,116.06 | 100 | | Payment:Cash | 03/01/02 | $156.34 | $959.72 | | | | | | | $173,679.77 |
| CONV | 01/29/2002 | | | $1,116.06 | 100 | | Payment:Cash | 02/01/02 | $155.48 | $960.58 | | | | | | | $173,836.11 |
| CONV | 12/28/2001 | | | $1,116.06 | 100 | | Payment:Cash | 01/01/02 | $154.63 | $961.43 | | | | | | | $173,991.59 |
| CONV | 11/28/2001 | | | $1,116.06 | 100 | | Payment:Cash | 12/01/01 | $153.78 | $962.28 | | | | | | | $174,146.22 |
| CONV | 10/22/2001 | | | $411.32 | 135 | | Interest Payment - Cash | 11/01/01 | $0.00 | $411.32 | | | | | | | $174,300.00 |

Report Date: 9/6/2018. History Show for Dates: 10/22/2001 to 9/6/2018
*Source: 'MSP' = History on the MSP servicing system, 'GTA' = History on the GTA servicing system, 'CONV' = Acquired History from other servicer.
**The Displayed Prin Bal is an estimate based on history trans. THIS BALANCE IS NOT A PAYOFF BALANCE. The current principal balance is $113,380.85. The current principal is out of balance with displayed principal balance. The Displayed Escrow Balance is an estimate based on history trans. The Current Escrow Balance is ($54,513.37).

c   0        0

# EXHIBIT 24



# Conversion /
# Loan Boarding



# Conversion – Loan Boarding Team





© 2015 | Ditech Financial LLC | Proprietary    2

# Conversion Team Locations




a Walter company

© 2015  |  Ditech Financial LLC  |  Proprietary    3

# Acquisitions – Year To Date





# Conversion Process – Key Steps

**Due Diligence (Pre-Conversion)**

Due Diligence occurs after Letter of Intent is signed and prior to contract execution

Due Diligence plan created is tailored to the transaction

Review of 9 data fields from prior servicer to the loan documents – 3rd Party Review of Sample

Results are compiled and submitted to Transfer Oversight Committee for review

Contract execution proceeds or is delayed / cancelled

**Conversion**

Transformation of data and document images onto Ditech systems / applications

Preparation of the business units for the conversion

Customer notification

Boarding Live to the servicing system

**Data Integrity (Post-Conversion)**

Review of 9 data fields comparing the Ditech boarded data to the Prior Servicer data

3rd party review of Sample

Review / Correction of Errors process begins



# Loan Boarding Typical Process: 60 Day View

### Deal Notification

- Internal Kick-off Call
- High Level Overview of Portfolio
- Review of PSA
- Plan Resources
- Due Diligence Plan Created

### Due Diligence

- Engage the Prior Servicer
- Data-Document Review by 3rd Party Completed
- Due Diligence Plan Results are Compiled and Reviewed
- Transfer Oversight Committee Approves the Transfer
- Transfer / Sale Dates are Confirmed

### Conversion Kickoff

- Contract Executed – Joint Transfer Plan is Finalized
- Introduction of Servicing Transfer Teams
- Deliverables & Conversion Calendar are established
- Initial Data Delivery

### Conversion Process

- Process calls with the Operational Business Units
- Data Transformation / Mapping onto Ditech Systems
- Image Delivery Begins
- Loss Mitigation Accounts are Identified (30 day)

### Pre-Conversion

- Refreshed Data
- Prepare Welcome Letters
- Prepare Customer Service Team
- Good-Bye Letters Mailed
- Fees/Advances Review by Legal Compliance
- IVR/UCSe Data Preloaded
- Images are boarded to NIS

### Customer Notification

- Enhanced Welcome Package is mailed to Current Accounts (7-10 days prior to the Transfer Date)
- Loss Mitigation Accounts are Identified (5 day)

### Transfer of Service

- Ditech becomes Servicer of Record
- Final Data received and translated
- Loans Board Live to the Servicing System 8 - 10 days post transfer
- Welcome Calls Begin
- Loss Mitigation documentation review process begins

### Post Conversion

- Invoice / Advance Reconciliation begins
- Internal Audit(s) Begin
- Debt Validation Letters Mailed
- Trailing Images are boarded to NIS



© 2015 | Ditech Financial LLC | Proprietary    6

# Conversion Workbook – Task Management

| Task | Assigned To | Comments |
|---|---|---|
| **Conversion Name - Transfer Date** | | |
| Due Diligence Contacts: Transaction Managers: ; Due Diligence Team: | | |
| Due Diligence Review - Managed by the Due Diligence Team - Performed on all conversions except existing "flow". This process is required by the CFPB Consent Order - Review of 9 prior servicer data fields to the source of truth documents. | | |
| Conversion Due Diligence - Managed by the Transaction Managers - Usually performed on conversions with new servicers only and may be performed offsite. - All business units participate. Transfer Oversight Committee reviewed due diligence findings and issues and determines if conversion will proceed. | | |
| Participate in the Due Diligence Kickoff Call | Conversion Project Manager | Transaction Manager will coordinate the call |
| Obtain the Transferring Servicer Contacts (Contact Transaction Manager) | Conversion Project Manager | |
| If applicable- Submit the Conversion Due Diligence Questionnaire to the Due Diligence Team (Add file location) | Conversion Project Manager | |
| Review the Preliminary Purchase Sale Agreement or Servicing Agreement Document - Provide feedback to P&P and Document any Conversion Red-Flags | Conversion Project Manager | |
| If needed, Obtain Sample Data File | Conversion Project Manager | For New Servicers - If we are unfamiliar with their Data System or File Format |
| If needed, Obtain Sample Document Images in all Formats | Conversion Project Manager | For New Servicers - If we are unfamiliar with their Data System or File Format |
| Submit Conversion Due Diligence Scorecard to the Transfer Oversight Committee (TOC) | Conversion PM Conversion Director | Scorecard development is still in progress. Provide feedback on any Conversion Red-Flags to the TOC |
| Obtain Transfer Oversight Committee Decision regarding the Transfer (Approved or Denied or Delayed) | Transaction Manager | |
| Start Up phase occurs after Deal Notification and may begin with an introductory call with the Transferring Servicer, either in conjuction with the Due Diligence Introductory call or a Stand Alone Conversion Kick-off call | | |
| Determine Secure Data Transmission Method - Set up Secure FTP Site if needed (See process document in N\ File Location) | Conversion Project Manager | See Secure Site Setup procedures |
| Coordinate with the Transferring Servicer to finalize a version of the Transfer Instructions to be used for the PSA/Contract | Conversion Project Manager | |



© 2015 | Ditech Financial LLC | Proprietary    7

# Conversion Workbook – Checklist

| CONVERSION NAME | | | |
|---|---|---|---|
| | **Conversion PM Name here** | | **October 1, 2015** |
| | **Transaction Mgr Name here** | | |
| | | | |
| Number of Accounts | | Delinquency Data | # of Accounts |
| UPB | | Current | |
| Number of 1st Lien Accounts | | 30 DPD | |
| Number of 2nd Lien Accounts | | 60 DPD | |
| Number of Home Equity Loans (Real Estate) | | 90 DPD | |
| Number of HELOC Loans | | 120+ DPD | |
| | | | |
| Asset Owner Name | | Transferring Servicer Short Name | |
| Transferring Servicer Full Legal Name | | Transferring Servicer's Servicing System | |
| Transfer Instructions Used | | Ditech Boarding System (GTA or MSP) | |
| | | | |
| GTAS0B Library | | | |
| GTA Account Numbers | | | |
| Loan Servicing Code - LSCOD1 | | | |
| Subservicer Code - SBSCOD | | | |
| Dealer Number | | | |
| Investor Number (s) | | | |
| Pool Number (s) | | | |
| GL Plan (s) | | | |
| Cost Model Type | | | |
| | | | |
| Prior Servicer Preliminary Inflight Mod Count | | Prior Servicer Final Inflight Mod Count | |
| Category 1 Count | | Category 1 Count | |
| Category 2 Count | | Category 2 Count | |
| Category 3 Count | | Category 3 Count | |
| Category 4 Count | | Category 4 Count | |
| Category 5 Count | | Category 5 Count | |
| Category 6 Count | | Category 6 Count | |
| Prior Servicer Preliminary Short Sale Count | | Prior Servicer Final Short Sale Count | |



# Conversion Workbook – CFPB Tracking

| | | CONVERSION NAME | | | | | |
|---|---|---|---|---|---|---|---|
| | | Conversion PM Name here | | | | | October 1, 2015 |
| | | | | | | | |
| 44 | Servicing Data | Initial Data File Delivery | -30 | 9/1 | | | |
| 44 | Servicing Data | Initial Loss Mitigation Data File(s) Delivery | 30 | 9/1 | | | |
| 41 | Loss Mitigation | Initial Loan List of In-Process Loss Mitigation Accounts | -30 | 9/1 | | | |
| 42 | Loss Mitigation | Initial Loan List of Completed Loss Mitigation within last 60 days | 30 | 9/1 | | | |
| 43 | Loss Mitigation | Initial Loan List of Denied & Disengaged Loss Mitigation within last 60 days | 30 | 9/1 | | | |
| 44 | Images | Initial Images Delivered | -30 | 9/1 | | | |
| 41 | Loss Mitigation | Updated Loan List of In-Process Loss Mitigation Accounts & Loss Mitigation Program | -5 | 9/26 | | | |
| 42 | Loss Mitigation | Updated Loan List of Completed Loss Mitigation within last 60 days | -5 | 9/26 | | | |
| 43 | Loss Mitigation | Updated Loan List of Denied & Disengaged Loss Mitigation within last 60 days | -5 | 9/26 | | | |
| | Servicing Data | Final Data Files Delivery | 0 | 10/1 | | | |
| | Servicing Data | Final Loss Mitigation Data File(s) Delivery | 3 | 10/4 | | | |



© 2015 | Ditech Financial LLC | Proprietary    9

# Conversion Workbook – Image Delivery



| | | | CONVERSION NAME | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | October 1, 2015 | |
| | 5/12/2015 | 2 Hard drives | Initial image extraction | Media Password:<br>Passcode =<br>passcode = | 1st Hard drive is a Apricorn USB 3.0 labeled as OCWEN HD 44<br>2nd Hare Drive is a data locker (EMC2) Labeled as Ocwen 15 | Tracking from Landmark to |
| | 5/27/2015 | 1 Hard Drive | Secondary Initial image extraction | Password: | Seagate Expansion hard drive | From Ocwen to GT: |
| | 6/5/2015 | CDR | Delta Loss Mit Extraction | | Saved at ▪ | Tracking from Ocwen to GT: |
| | 7/24/2015 | 2 CDs | Delta 18 7/21 | | CDs | |
| | 8/3/2015 | DVD | Delta 22 Sweep | | DVD | |
| | 8/5/2015 | DVD | Delta 23 Sweep 7/28-8/3 | | DVD | |
| | 7/9/2015 | DVD | Delta Loss Mit Extraction- Sweep 12 | | N:\ACQUISITIONS\ACTIVE CONVERSIONS\ | |
| | 7/13/2015 | DVD | Delta11 7/9 | | Drop Site | |
| | 7/15/2015 | Flash Drive | Delta 12 7/10-7/12 | | Lexar Flash Drive | |
| | 7/15/2015 | DVD | Delta 13 7/13 | | Delta bulk 13 | |
| | 7/16/2015 | Flash Drive | Delta 14 7/14 | | Lexar Flash Drive | |


a Walter company

© 2015 | Ditech Financial LLC | Proprietary   10

# Data Mapping Overview

## Servicing System Transfer Experience

- The Company has performed numerous transfers from many 3rd Party and Proprietary Loan Servicing Systems
- E.g. LPS MSP, FiServ, ALS, ACLS, CACS, FICS, LSAMS, Harland, Action, CitiLink

## Mapping Tools / Services

- **Map-It – A middleware tool (*for loans moving to GTA*)**
  - Current Servicer Data Dictionary and file map all fields through Map-It
  - Maps and field translation are reviewed with transferring servicer experts
  - Raw data is converted through internally developed "spin process" within the test servicing system; data validation is performed
- **Electronic Loan Interface (ELI) (*account boarding tool for MSP*)**
  - Transferring servicer data files are loaded into ELI
  - Data points are mapped to MSP data fields
  - Accounts are boarded to MSP using new account transactions
- **Black Knight Financial Services (BKFS) Acquisition Service for account boarding (*used for large or complex transfers*)**
  - Data definition document is created with mapping and data definitions
  - BKFS loads accounts to MSP through the transfer of data from the seller client to Ditech's MSP client.

## Exception Processing

- Rejected fields (i.e., coding or data exceptions) are reviewed and processed appropriately
- Corrected accounts are transferred back through the spin process
- This process is repeated until all errors and all accounts are converted


**ditech.**
a Walter company

© 2015 | Ditech Financial LLC | Proprietary   11

# In Flight Loss Mitigation

### Prior to Transfer

- Ditech requires the prior servicer to provide the following information:
  - Supply a detailed list of accounts with pending loss mitigation applications, completed loss mitigation options and approved loss mitigation plans, including but not limited to:
    - Repayment plans
    - Forbearances
    - Modification trial periods
    - Modification offers
    - Liquidation files in progress.
  - Identify all documents received for the loss mitigation application and provide a list of information required to complete loss mitigation package

### After Transfer

- Ditech completes the following steps:
  - Properly evaluates all loss mitigation applications in progress at the time of transfer:
    - Meets any appropriate response requirements
    - Applies any in-flight loss mitigation plans to the accounts
  - Attempts to obtain missing information from the prior servicer before attempting to obtain it from the customer
  - Resolves pending loss mitigation requests and gives customers the opportunity to provide any necessary missing information
  - Reviews transferred accounts in active trial or permanent modification agreements to determine if payments made by the customer are consistent with the terms provided by the prior servicer



© 2015 | Ditech Financial LLC | Proprietary  12

# Balancing

| Financial | Monthly Payment Amounts | Status's/Flags |
|---|---|---|
| Principal Bal | P&I Payment | Next Payment Due Date |
| Second Principal Bal | Escrow Payment | Esc Tax Flag Record Count |
| Escrow Bal | | Esc Ins Flag Record Count |
| Escrow Advance Bal | | Esc MI Flag Record Count |
| Suspense Bal | | FHA Loan Record Count |
| Restricted Escrow Bal | | FHA Case Number Validation |
| Late Charge Bal | | VA Loan Record Count |
| NSF Balance | | USDA Loan Record Count |
| Repl Reserve Bal | | Lien Position Validation |
| 3rd Party Corp Adv | | ARM Loan Record Count |
| Rec Corp Adv | | Foreclosure Loan Record Count |
| | | SCRA Loan Record Count |
| | | Property Type Validation |
| | | Loan Purpose Validation |



# Post-Transfer Reviews

- **Post transfer audits validate account information has been converted properly**

  - Data Integrity Process Completed Within 20 Days Post-Transfer
    - Conversion team collaborates with the Data Integrity Team to provide data and images for the review

  - Contract to converted data review by QA Data Integrity Unit
    - Depending on size of portfolio and determined risk, either a statistically valid sample or a 100 percent review is performed

  - Week 1 Compliance Report Issued
    - Ditech Compliance Department issues findings for initial review of immediate legal and financial conversion elements

  - Legal Closing Memo Issued
    - Ditech Legal Department issues findings of legally required customer communication (RESPA Servicing Transfer Notices, Privacy Statements and Debt Validation Notices)

  - Thirty and Sixty-day Conversion Internal Audit Reports Issued
    - Ditech Internal Audit completes comprehensive examination of converted accounts against previously documented due diligence of conversion concerns

  - Bi-weekly Conversion Executive Update
    - Review of Conversion Dashboard and Issues
    - Lessons learned for future conversions



© 2015 | Ditech Financial LLC | Proprietary   14

# Deboarding

- Ditech transfers documents electronically to ensure it accurately transfers all relevant borrower information

- Ditech works with the new servicer to ensure it sends all legally required notices

- Ditech takes the following steps when off-boarding accounts involved in loss mitigation:
    - Supplies a detailed list of accounts with pending loss mitigation applications, completed loss mitigation options and approved loss mitigation plans
    - Provides specifically identified documents that have been received for the loss mitigation application with a list of information still required from the customer in order to complete the application
    - Provides access to all loss mitigation accounts using a secure system, such as a web portal, compact disk or portable drive, containing loan documentation up to 45-60 days before transfer
    - Maintains communication with the transferee servicer and addresses any requests for missing information or documentation promptly and accurately.

- Ditech identifies the current status of any loans involved in a Hardest Hit Fund prior to transfer





# Conversion / Loan Boarding

Questions / Answers



# EXHIBIT 25

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
05/19/2017

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 15-34818** |
| **KATRINA LONG JONES,** | § | |
| | § | **Chapter 13** |
| Debtor. | § | |
| | § | |
| | § | |

| | | |
|---|---|---|
| **KATRINA LONG JONES** and **NATASHA HILL,** | § | |
| | § | |
| Plaintiffs | § | **Adversary No. 16-3235** |
| | § | |
| v. | § | |
| | § | |
| **ATLAS ACQUISITION LLC and AVI SCHILD,** | § | |
| | § | |
| Defendants. | § | |

<u>**ORDER DENYING ATLAS ACQUISITION LLC AND AVI SCHILD'S**</u>
<u>**MOTION TO DISMISS PLAINTIFFS' CLASS CERTIFICATION CLAIMS**</u>
[This Order Relates to Adv. Doc. No. 27]

## I. BRIEF INTRODUCTION

Presently pending before this Court is the motion of the defendants to dismiss this adversary proceeding. The plaintiffs, who seek to prosecute this adversary proceeding as a class action, vigorously oppose the request for dismissal. For the reasons set forth herein, this Court denies the motion to dismiss.

## II. PROCEDURAL BACKGROUND

On September 14, 2015, Katrina Long Jones ("Ms. Jones") filed a voluntary petition initiating the main Chapter 13 case in this Court. [Main Case No. 15-34818, Doc. No. 1]. On October 22, 2015, Atlas Acquisition LLC ("Atlas") filed a proof of claim in Ms. Jones's main

case, and Avi Schild ("Schild") (hereinafter, Atlas and Schild will collectively be referred to as the "Defendants") signed the proof of claim as "President." [Main Case No. 15-34818, Claim No. 5]. Atlas subsequently withdrew Claim No. 5 on April 20, 2016. [Main Case No. 15-34818, Doc. No. 49].

On October 24, 2016, Ms. Jones, on behalf of herself and others similarly situated, initiated this adversary proceeding by filing a complaint against the Defendants. [Adv. Doc. No. 1]. On December 30, 2016, Ms. Jones and Natasha Hill ("Ms. Hill") (collectively, the "Plaintiffs"), on behalf of themselves and others similarly situated, filed a First Amended Complaint against the Defendants, which is presently the "live" pleading (the "Complaint"). [Adv. Doc. No. 22]. Ms. Hill is a debtor in a Chapter 13 case (Case No. 15-31663) currently pending before the United States Bankruptcy Court for the Western District of Louisiana. [Id. at p. 3 ¶ 5]. According to the Complaint, the Plaintiffs request that this Court award them actual damages, statutory damages, punitive damages, and other legal and equitable relief for the Defendants' abuse of the bankruptcy system and their willful and intentional disregard for the requirements for filing legitimate claims in many Chapter 13 cases throughout the country. [Id. at pp. 26–36 of 37]. Specifically, the Plaintiffs allege that the Defendants have abused "the bankruptcy process by filing fraudulent, false, and misleading proofs of claim in bankruptcy cases . . . ." [Id. at pp. 1–2 ¶ 1]. Further, the Plaintiffs contend that the Defendants have been "gaming" the bankruptcy system by filing proofs of claim in various Chapter 13 cases only to withdraw such claims after being exposed by debtors' counsel, the Chapter 13 trustees, the bankruptcy courts, and/or the United States Trustee's office. [Id. at p. 8 ¶ 30]. Indeed, the Plaintiffs assert that the Defendants' intentional filing of deficient claims, only to withdraw them when challenged, is in fact its "business model since at least August 2012." [Id. at p. 21 ¶ 89].

On January 31, 2017, the Defendants filed their Motion to Dismiss Plaintiffs' Class Certification Claims (the "Motion to Dismiss"). [Adv. Doc. No. 27]. On the same day, the Defendants filed a brief in support of the Motion to Dismiss. [Adv. Doc. No. 28]. On March 3, 2017, the Plaintiffs filed their response to the Motion to Dismiss, [Adv. Doc. No. 29], and on April 14, 2017, the Plaintiffs filed their amended response to the Motion to Dismiss, [Adv. Doc. No. 32]. Then, on April 15, 2017, the Defendants filed their supplemental brief in support of the Motion to Dismiss. [Adv. Doc. No. 33]. On April 19, 2017, this Court held a hearing on the Motion to Dismiss (the "Hearing") during which the Court heard oral arguments from both the Plaintiffs' counsel and the Defendants' counsel regarding three specific issues raised in the Motion to Dismiss. The Court then took the matter under advisement. Thereafter, on April 26, 2017, the Plaintiffs filed a post-hearing brief. [Adv. Doc. No. 42].

### III. THRESHOLD CONCLUSIONS

As a threshold matter, it is worth noting that this Court has jurisdiction to determine whether it has subject matter jurisdiction over this adversary proceeding. *Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376–77 (1940) (holding that a federal court has authority to determine whether it has subject matter jurisdiction over a dispute); *In re AE Liquidation, Inc.*, 435 B.R. 894, 900 (Bankr. D. Del. 2010); *VeraSun Energy Corp. v. W. Plains Co.*, No. 08-12606 (BLS), 2013 WL 3336870, at *6–7 (Bankr. D. Del. June 28, 2013). Moreover, for purposes of ruling on the Motion to Dismiss, this Court concludes that the issue of the constitutional authority of a bankruptcy court to enter a *final* order, as articulated in *Stern v. Marshall*, 564 U.S. 462 (2011), is not a concern here. This is so because denial of the Motion to Dismiss is not a final order. *See Truong v. Kartzman*, 513 F.3d 91, 93 (3d Cir. 2008) (stating that "an order in an individual adversary proceeding is not final unless it ends the litigation on

the merits and leaves nothing more for the court to do but execute the judgment") (internal citations omitted); *Smith v. AET Inc.*, Civ. Act. Nos. C-07-123, C-07-124, C-07-126, 2007 WL 1644060, at *3 (S.D. Tex. June 4, 2007) ("Denial of a motion to dismiss does not resolve a 'discrete issue' in the pending litigation, as is required for an order to be considered 'final' for purposes of Section 158(a)(1).") (citing *In re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 734 (5th Cir. 1995)).

The Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(1)[1] for lack of subject matter jurisdiction.[2] The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction (i.e., the Plaintiffs in the suit at bar). *McNutt v. GM Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Davis v. U.S.*, 597 F.3d 646, 649 (5th Cir. 2009). A court must assume that all of the allegations in the complaint are true. *Garcia v. U.S.*, 776 F.2d 116, 117 (5th Cir. 1985). A court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on "the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ynclan v. Dep't of the Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991).

With regard to a Rule 12(b)(6) motion, a court may grant a request for dismissal when a party fails to "state a claim upon which relief can be granted." The determination of a Rule 12(b)(6) motion requires a court to "accept[ ] all well-pleaded facts [of the complaint] as true, viewing them in the light most favorable to the plaintiff." *Torch Liquidating Trust v. Stockstill*,

---

[1] Any reference to a "Rule" is a reference to the Federal Rules of Civil Procedure, and any reference to "the Code" refers to the United States Bankruptcy Code. Further, any reference to any section (i.e., §) refers to a section in 28 U.S.C., unless otherwise noted.

[2] Bankruptcy Rule 7012(b) sets forth that Rule 12(b) of the Federal Rules of Civil Procedural applies in adversary proceedings.

4

561 F.3d 377, 384 (5th Cir. 2009) (quoting *Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.)*, 495 F.3d 191, 205 (5th Cir. 2007)). Thus, a court may not look outside of the complaint when ruling on a Rule 12(b)(6) motion. *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir.1992). Further, a Rule 12(b)(6) motion should be denied if the plaintiff pleads "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "[T]he complaint must contain either direct allegations or permit properly drawn inferences to support" all facts necessary for proper relief. *Torch Liquidating Trust*, 561 F.3d at 384 (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995)). The defendant bears the burden to show that the plaintiff has not stated a claim. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

#### IV. ANALYSIS OF THE THREE ISSUES RAISED IN THE MOTION TO DISMISS

In the Motion to Dismiss, the Defendants argue that the Complaint should be dismissed for three separate and distinct reasons. They contend that:

> (1) This Court has no jurisdiction under § 1334 to certify a nationwide class of Chapter 13 debtors;

> (2) The Plaintiffs are not qualified as adequate class representatives as a matter of law; and

> (3) The Plaintiffs' claims cannot be certified under Rule 23(b)(3) as a matter of law.

[*See* Adv. Doc. No. 33, p. 1 of 14].

The Court denies the Motion to Dismiss because it finds that: (a) it has subject matter jurisdiction to certify a nationwide class of debtors; (b) a separate evidentiary hearing must be held to determine whether the Plaintiffs qualify as adequate class representatives; and (c) a

5

separate evidentiary hearing must be held to determine whether the Plaintiffs' claims can be certified under Rule 23(b)(3). The Court discusses its reasons for denying the Motion to Dismiss below.

## A. Whether This Court has Subject Matter Jurisdiction to Certify a Nationwide Class of Chapter 13 Debtors?

There is no question that any analysis of a bankruptcy court's subject matter jurisdiction begins with § 1334. Section 1334(a) confers upon district courts the original and exclusive jurisdiction of all cases under title 11. Section 1334(b), in turn, provides that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." District courts are then authorized to refer these cases and proceedings to the bankruptcy judges for that district. § 157(a). In fact, the District Court for the Southern District of Texas has provided for such referral to the bankruptcy judges by General Order 2012-6 (entitled General Order of Reference), which automatically refers all eligible cases and proceedings to the bankruptcy courts.

Therefore, in order for this Court to have jurisdiction over the putative class members' claims set forth in the Complaint, these claims must constitute: (1) a core proceeding "arising under" title 11; (2) a core proceeding "arising in" a case under title 11; *or* (3) a proceeding "related to" a case under title 11. *U.S. Brass Corp. v. Travelers, Ins. Grp. (In re U.S. Brass Corp.)*, 301 F.3d 296, 303–04 (5th Cir. 2002) (citing §§ 1334(a)-(b)). Because § 1334(b) contains disjunctive language, and because the third category of jurisdiction is the broadest, the Fifth Circuit has determined that a matter need only be "related to" a bankruptcy case for a bankruptcy court to have jurisdiction. *Id.* at 304; *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir. 1999) (citing *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995)).

6

However, although "related to" jurisdiction is considered the broadest category of a bankruptcy court's jurisdiction, it is not the only category. As noted in the paragraph above, bankruptcy courts also have jurisdiction over matters that "arise under" or "arise in cases under" title 11. *See, e.g.*, *In re Legal Xtranet, Inc.*, 453 B.R. 699, 705 n.1 (Bankr. W.D. Tex. 2011) ("[I]f 'related to' jurisdiction is *not* found, that does not mean that there can be no bankruptcy subject matter jurisdiction . . . [a] matter might . . . *not* be 'related to' the bankruptcy case . . . yet clearly fall within the bankruptcy subject matter jurisdiction of the federal courts, by virtue of either arising under a provision of title 11 . . . or arising in the bankruptcy case . . . .") (emphasis in original); *In re Rodriguez*, 396 B.R. 436, 448 (Bankr. S.D. Tex. 2008) ("Bankruptcy courts' subject matter jurisdiction is not limited to matters 'related to cases under title 11.' Bankruptcy courts also have subject matter jurisdiction over matters arising under title 11 and arising in cases under title 11."); *In re Simmons*, 205 B.R. 834, 843 (Bankr. W.D. Tex. 1997) ("Finding that it is only necessary to determine whether a matter is *at least* 'related to' the bankruptcy in this case, . . . therefore, does not usurp the possibility that one of these 'distinguishable' categories ["related to," "arising under," or "arising in"] incorporates matters which would otherwise fall outside the 'related to' penumbra.") (emphasis in original).

1. The Arguments Made by the Defendants and by the Plaintiffs

The Defendants assert that bankruptcy courts (including this Court) lack subject matter jurisdiction over a nationwide class of debtors. Holding this position, they seek to dismiss the Plaintiffs' request to certify a nationwide class of debtors under Rule 12(b)(1). Specifically, the Defendants assert that this Court lacks jurisdiction because the Plaintiffs' claims do not "arise under" title 11, but rather: (1) "the Plaintiffs' claim for abuse of process arises under the Court's inherent authority and 11 U.S.C. § 105;" (2) the Plaintiffs' claim under Bankruptcy Rule 3001

"arises under a Federal Rules of Bankruptcy Procedure," which in turn, arises under § 2075 of title 28; and (3) "the Plaintiffs' claims for declaratory and injunctive relief arise under title 28, rather than title 11." [Adv. Doc. No. 28, p. 15 of 64]. Further, while counsel for the Defendants concedes that this Court does have "arising in" jurisdiction, [Apr. 19, 2017 Tr. 26:13–29:7], he insists that "arising in" jurisdiction only vests in the "home court" of a bankruptcy case, [*id.* at 9:11–15], and therefore this Court lacks jurisdiction over a *nationwide* class. However, counsel for the Defendants concedes that this Court may have jurisdiction over a nationwide class of debtors if "arising under" jurisdiction exists. [*Id.* at 26:10–23]. Finally, the Defendants contend that this Court lacks "related to" jurisdiction because "claims in cases arising in other districts cannot have a conceivable effect on the estate being administered in [the Southern District of Texas]." [Adv. Doc. No. 28, p. 11 of 64].

The Plaintiffs argue that because district courts have jurisdiction over nationwide class actions, so do bankruptcy courts. The Plaintiffs assert that "28 U.S.C. § 1334(b) grants subject matter jurisdiction to the District Court over any debtor's claims that fall within the court's 'related to,' 'arising in,' or 'arising under' jurisdiction . . . ." [Adv. Doc. No. 29, pp. 7–8 of 30]. They contend that because their claims invoke substantive rights created by the Code (i.e., by seeking redress under 11 U.S.C. § 105 for the Defendants' violations and abuses of 11 U.S.C. §§ 501 and 502)[3] and by the Bankruptcy Rules (i.e., Bankruptcy Rule 3001(a), (c)(2)(D)), they fall within the Court's "arising under" jurisdiction. [*Id.* at p. 12 of 30]; [Apr. 19, 2017 Tr. 42:17–20].

---

[3] In their post-hearing brief, in footnote six, the Plaintiffs state the following: "Plaintiffs' complaint does invoke the Code, and in particular Code §§ 501 and 502. In *Rojas*, the plaintiffs did include a cause of action for violation of 11 U.S.C. §§ 501 and 502. If the Court believes that such specific counts are necessary for the Court to invoke its § 105(a) powers to provide the relief Plaintiffs seek, the Court should allow Plaintiffs to amend their complaint." [Adv. Doc. No. 42, p. 5 of 13] (citation omitted). This Court construes the Complaint as asserting a cause of action for violation of 11 U.S.C. §§ 501 and 502, but if the Plaintiffs want to amend the Complaint to plead with even greater specificity, the Court will grant them leave to do so, unless, of course, the Defendants can convince the Court otherwise. Needless to say, the Plaintiffs need to file a motion for leave to amend and, if they do, the Defendants have the right to oppose the motion—and thereafter, the Court will make a decision.

Additionally, at the Hearing, the Plaintiffs argued that this Court has "arising in" jurisdiction because "[their] claims can only arise in bankruptcy court." [Apr. 19, 2017 Tr. 42:17–21]. Further, with regard to the Defendants' assertion that this Court lacks "related to" jurisdiction, the Plaintiffs insist that the "related to" prong should not be conflated with the "arising in" and "arising under" prongs. [Adv. Doc. No. 29, p. 13 of 30].

Interpreting the plain language of §§ 1334 and 157, and Fifth Circuit precedent, this Court finds that it has jurisdiction over a nationwide class of debtors, as discussed below.

2. <u>Analysis of a Bankruptcy Court's Jurisdiction Over a Nationwide Class of Debtors</u>

The Court first notes that there is no question that bankruptcy courts are permitted to handle class actions in adversary proceedings. After all, Bankruptcy Rule 7023 incorporates Rule 23, which authorizes bankruptcy courts to certify a class action. *In re Wilborn*, 609 F.3d 748, 754 (5th Cir. 2010) ("[C]lass action proceedings are expressly allowed in the Federal Bankruptcy Rules, which provide that the requirements for class actions under Federal Rule of Civil Procedure 23 apply in adversary proceedings . . . if bankruptcy court jurisdiction is not permitted over a class action of debtors, [Bankruptcy] Rule 7023 is virtually read out of the rules."). Thus, assuming that all prerequisites for class certification under Rule 23 are satisfied, this Court may certify a class action. While the Defendants do not dispute that this Court may certify a class action within the Southern District of Texas, [Apr. 19, 2017 Tr. 5:12–14], they insist that bankruptcy courts (including this Court) cannot exercise jurisdiction over a *nationwide* class of debtors. This Court disagrees based upon existing law within the Fifth Circuit.

In *Bolin*, more than one million former debtors sought certification of a nationwide class asserting claims against Sears for its unlawful attempts to collect discharged debts. 231 F.3d 970, 972 (5th Cir. 2000). The class sought injunctive, declaratory, and monetary relief under the

Code, RICO, and the Truth in Lending Act. *Id.* at 973. The district court certified the

nationwide class under Rule 23(b)(2) and Sears appealed. *Id.* On appeal, the Fifth Circuit

vacated the district court's certification on the basis that the certified class did not fit within the

confines of Rule 23(b)(2). *Id.* at 978. Interestingly, while the Fifth Circuit had a duty to

consider the district court's subject matter jurisdiction, it did not directly address the issue of

whether the district court had subject matter jurisdiction to certify a nationwide class of debtors.

*Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 147 (2009) ("[T]he Court of Appeals would indeed

have been duty bound to consider whether the Bankruptcy Court had acted beyond its subject-

matter jurisdiction.") (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)). While it did

not directly address the issue, the Fifth Circuit chose not to dismiss the suit, but rather remanded

to the district court for reconsideration of the certification question. *Bolin*, 231 F.3d at 979.

Thus, the Fifth Circuit's decision not to dismiss the suit represents an implicit approval of the

District Court's ability to certify a nationwide class of debtors. *Cano v. GMAC Mortg. Corp. (In*

*re Cano)*, 410 B.R. 506, 550 (Bankr. S.D. Tex. 2009) ("The Fifth Circuit has implied that

bankruptcy courts have jurisdiction over nationwide bankruptcy class actions.").

Applying this interpretation to the dispute at bar, because the District Court for the

Southern District of Texas has jurisdiction over a nationwide class of debtors, *see id.*, this

Court—operating as a unit of the District Court for the Southern District of Texas—has the

authority to adjudicate all matters that fall within the District Court's bankruptcy jurisdiction.

§ 1334. Indeed, as noted previously, in the Southern District of Texas, General Order 2012-6

automatically refers all eligible cases and proceedings to the bankruptcy courts. Thus, based on

the language set forth in §§ 1334 and 157 and General Order 2012-6, this Court concludes that it

may exercise jurisdiction over a nationwide class of debtors, including the class for whom the

Plaintiffs have filed the Complaint—assuming of course that the Plaintiffs satisfy all other requirements for a class action.

3. The Court has "Arising Under" Jurisdiction in this Adversary Proceeding

As noted above, bankruptcy courts exercise jurisdiction—through referral from the district courts—over core proceedings (i.e., cases that "arise under" and "arising in" title 11) and proceedings that are "related to" a bankruptcy case. Although not precisely defined, a matter "arising under" title 11 "invokes a substantive right provided by title 11." *Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987). Indeed, the Defendants argue that the only way this Court may have jurisdiction over a nationwide class of debtors is if the Plaintiffs' claims invoke a substantive right provided by the Code (i.e., "arises under" title 11). [Apr. 29, 2017 Tr. 26:10–23].

The Fifth Circuit has suggested that substantive rights may be created not only by the Code, but by the Bankruptcy Rules. Specifically, in *Matter of Wood*, the Fifth Circuit made clear that "[i]f the proceeding involves a right created by the *federal bankruptcy law*, it is a core proceeding." 825 F.2d at at 97 (emphasis added). Further, the Fifth Circuit, in *Matter of Smith*, stated that "[b]ankrupty courts cannot use their equity powers under Section 105(a) to fashion *substantive rights and remedies not contained in the Bankruptcy Code or [Bankruptcy] Rules* or to negate substantive rights or remedies that are available." 21 F.3d 660, 666 (5th Cir. 1994) (emphasis added).

Here, the Plaintiffs argue that, by seeking 11 U.S.C. § 105 redress for the Defendants' violations and abuses of 11 U.S.C. §§ 501 and 502, the class action invokes substantive rights created by the Code. [Adv. Doc. No. 29, pp. 11–12 of 30]; [Apr. 19, 2017 Tr. 42:17–20]. Further, the Plaintiffs contend that the class action invokes substantive rights created by federal bankruptcy law—namely, Bankruptcy Rule 3001. [Adv. Doc. No. 29, p. 12 of 30]; [Apr. 19,

11

2017 Tr. 42:17–20]. Strongly disagreeing with the Plaintiffs, the Defendants assert that the putative class action's claims for an abuse of process arising under the Court's inherent power and 11 U.S.C. § 105, violations under Bankruptcy Rule 3001, and relief under title 28 do not constitute substantive rights created by bankruptcy law. [Adv. Doc. No. 28, p. 15 of 64].

The Fifth Circuit in *Matter of Smith* made it clear that while bankruptcy courts may not create, modify, or expand substantive rights, such substantive rights may originate from the Bankruptcy Rules in addition to the Code. 21 F.3d at 666 ("Bankrupty courts cannot use their equity powers under Section 105(a) to fashion *substantive rights and remedies not contained in the Bankruptcy Code or [Bankruptcy] Rules . . . .*") (emphasis added). Here, the Plaintiffs are neither asking this Court to create *new* substantive rights created by the Code or Bankruptcy Rules, nor are they asking this Court to modify or expand substantive rights that are already provided for in the Code or the Rules. And, while many of the Bankruptcy Rules do not provide a substantive right "created by federal bankruptcy law," Bankruptcy Rule 3001—the specific rule that the Plaintiffs allege the Defendants violated—does in fact give rise to a substantive right created by federal bankruptcy law. Indeed, Bankruptcy Rule 3001(c)(2)(D)(iii) provides that the Plaintiffs have the right to be "award[ed] other appropriate relief, including reasonable expenses and attorney's fees caused by the failure [to attach supporting documentation to a proof of claim]." *Compare Marek v. Chesny*, 473 U.S. 1, 35 (1985) ("The right to attorney's fees is 'substantive' under any reasonable definition of [the term,] '[s]uch rules shall not abridge, enlarge or modify any substantive right.'") (quoting § 2072), *with In re Myles*, 395 B.R. 599, 608 (Bankr. M.D. La. 2008) (finding that Bankruptcy Rule 2016 creates no substantive right, but rather, "provides the mechanism for bankruptcy court approval of attorney compensation from the estate"). Thus, there is no question that Bankruptcy Rule 3001(c) provides the Plaintiffs a

12

substantive right created by federal bankruptcy law—namely, the right to recover "appropriate relief, including reasonable expenses and attorney's fees." *See Matter of Wood*, 825 F.2d at 97 ("If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding [i.e., invokes a substantive right]."). Accordingly, the Plaintiffs have satisfied their burden under Rule 12(b)(1) because they have shown that this Court has "arising under" jurisdiction for suits seeking to enforce substantive rights created by sections of the Code and, additionally, substantive rights created by the Bankruptcy Rules. *Davis*, 597 F.3d at 649.

4. The Court has "Arising In" Jurisdiction in This Adversary Proceeding

Even assuming that this Court lacks "arising under" jurisdiction, the Court nevertheless has "arising in" jurisdiction.

A bankruptcy court has core "arising in" jurisdiction to adjudicate proceedings "that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Matter of Wood,* 825 F.2d at 97. Stated differently, a bankruptcy court has "arising in" jurisdiction to "hear administrative matters that arise *only* in bankruptcy cases." *Id.* (emphasis in original). Here, the Court finds that it has "arising in" jurisdiction because the Plaintiffs' claims, and those of the purported class members, could not possibly exist outside of bankruptcy.

As stated above, the Plaintiffs argue that this Court has "arising in" jurisdiction because their claims arise from the Defendants' filing of "fraudulent, false, and misleading proofs of claim" in numerous bankruptcy cases throughout the country. [Adv. Doc. No. 22, pp. 1–2 ¶ 1]. This Court agrees. Assuming that all of the Plaintiffs' allegations set forth in the Complaint are true, *Garcia*, 776 F.2d at 117, there is no question that when a party files a proof of claim in a bankruptcy case—and this is what the Complaint alleges that the Defendants did—then "arising

in" jurisdiction exists; indeed, the filing of a proof of claim can *only* "arise in" a bankruptcy case. Because the Plaintiffs' claims are based on alleged violations of 11 U.S.C. §§ 501 and 502, and Bankruptcy Rule 3001, the claims could "arise *only* in bankruptcy cases"—a point that the Defendants do not contest. [Apr. 19, 2017 Tr. 6:8–10, 9:11–15]. Accordingly, the Plaintiffs have met their burden under Rule 12(b)(1) to show that this Court has "arising in" jurisdiction. *Davis*, 597 F.3d at 649.

However, having found that this Court has "arising under" and "arising in" jurisdiction over a nationwide class does not end the inquiry. The Plaintiffs still have the burden to establish all the elements under Rule 23(a) and (b) in order to obtain class certification in this particular adversary proceeding. *See In re Kosmos Energy Ltd. v. Sec. Litig.*, 299 F.R.D. 133, 144 (N.D. Tex. 2014) ("Plaintiff bears the burden of establishing all four general class certification elements under Rule 23(a) and the two additional certification requirements under Rule 23(b)(3)"). The Defendants contend that, as a matter of law, the Plaintiffs cannot satisfy this particular rule. [*See* Adv. Doc. No. 33, p. 1 of 14]. The Plaintiffs assert that they can and should be afforded the opportunity to do so at an evidentiary hearing. [Adv. Doc. No. 29, p. 18 of 30]. The Court now addresses this issue.

## B. Whether the Plaintiffs Qualify as Adequate Class Representatives Under Rule 23(a)(4)?

Rule 23(a)(4) requires that the proposed representatives of a class action "fairly and adequately protect the interests of the class." The Defendants argue that Ms. Jones is not a suitable class representative because, among other things, she faces a conflict of interest "between her fiduciary duty to maximize recovery for the creditors in her own personal case and her duties to the unnamed class members." [Adv. Doc. No. 28, p. 20 of 64]. The Defendants argue that Ms. Hill also is not a suitable class representative because this Court lacks subject

14

matter jurisdiction over her bankruptcy case and, additionally, because she is barred from asserting claims under the doctrine of judicial estoppel. [*Id.* at p. 21 of 64]. The Plaintiffs assert that the Defendants' request for this Court to dismiss the Plaintiffs' class certification under Rule 23 is premature, as this issue should be decided at a separate class certification evidentiary hearing. [Adv. Doc. No. 29, p. 18 of 30].

The Court finds merit in the Plaintiffs' argument. Indeed, the statements made by counsel for the Defendants at the Hearing regarding the issue of adequate class representatives convince this Court all the more that the Plaintiffs' position is correct:

> Now, admittedly this would normally be something you would decide on an evidentiary record . . . But what we know from looking at the plans that were filed in this case and the Schedules and the proceedings the Court can take judicial notice of its file and, I've also argued that the Court can take notice of documents available on ECF, which gets[the Court] to be able to look at Ms. Hill's file . . . .

[Apr. 19, 2017 Tr.12:24–13:8]. This Court is unable to discern how taking judicial notice of its file somehow deprives the Plaintiffs of an evidentiary hearing on class certification. As one court has stated:

> The concept of [Federal Rule of Evidence 201] is to take judicial notice of a fact whose accuracy cannot be reasonably questioned. Defendants have not addressed the two prongs of the [Federal Rule of Evidence 201(b)] test and why they are met in the present case. Therefore, the Court does not believe it would be appropriate to take notice of the contents of the records. If Defendants would like to admit certain statements from the records at trial, they will have to go through the proper evidentiary channels.

*Feuerbacher v. Wells Fargo Bank*, Case No. 4:15-CV-59, 2016 WL 3669744, at *2 n.1 (E.D. Tex. July 11, 2016). The Defendants here, like the defendants in *Feuerbacher*, have failed to satisfy the two prongs of Federal Rule of Evidence 201(b).

Moreover, courts have generally held that granting a motion to dismiss concerning class certification qualifications before discovery has commenced and before a hearing on class certification has been conducted is premature. *See, e.g., Grant v. Houser*, Civ. Act. Nos. 10–805, 10–872, 2010 WL 3303853, at *6 (E.D. La. Aug. 17, 2010) (denying defendants' motion to dismiss in its entirety and holding that "it is premature to determine whether Plaintiffs will be able to meet the Rule 23 requirements . . . [and that] the question can be properly revisited in response to a motion to certify the class"); *Duplessie v. Zale Corp.*, No. 3:04-CV-2361-M, 2005 WL 1189840, at *1 (N.D. Tex. May 18, 2005) (denying Zale's motion to dismiss after finding that "Zale's arguments concerning Duplessie's adequacy as a class representative premature"). *See also In re Enron Corp. Sec., Derivative & Erisa Litig.*, No. MDL-1446, Civ.A.H-01-3624, 2004 WL 405886, at *24 (S.D. Tex. Feb. 25, 2004) ("Since class certification issues are premature in *Newby* because the Court must first address pending motions to dismiss . . . , and because a hearing and a proper record will be necessary to decide certification issues, the Court defers ruling on part of ICER's motion, i.e., to intervene as a class representative."); *Pinero v. Jackson Hewitt Tax Serv., Inc.*, 638 F.Supp.2d 632, 640 (E.D. La. 2009) (denying the defendants' motion to dismiss as premature because "[d]efendants have yet to answer plaintiff's complaint and have moved to stay discovery until the motions to dismiss are resolved").

Accordingly, for all of these reasons, the Court rejects the Defendants' argument that, as a matter of law, the Plaintiffs cannot serve as class representatives, and instead will schedule a separate hearing at which time the Plaintiffs may present evidence in support of class certification and the Defendants may present evidence in opposition thereto.[4] This approach

---

[4] The Court notes that the Defendants are entitled to introduce evidence in support of their judicial estoppel argument. However, the Court notes that the arguments made by the Plaintiffs on pages seven through ten in their post-hearing brief as to why this defense is inapplicable here are compelling, and the Defendants will need to address them should they continue to insist that the Plaintiffs are estopped from prosecuting the Complaint.

accords with the Fifth Circuit's holding in *Merrill v. S. Methodist University* that "the district court should ordinarily conduct an evidentiary hearing on this question [of class certification]." 806 F.2d 600, 608–09 (5th Cir. 1986).

## C. Whether the Plaintiffs may Proceed Under Rule 23(b)(3)?

The Defendants next contend that, as a matter of law, the Plaintiffs cannot satisfy Rule 23(b)(3) and therefore, this Court should grant the Motion to Dismiss. Specifically, it is the Defendants' position that the Plaintiffs cannot proceed under Rule 23(b)(3) as a matter of law because, among other things, "individuals issues clearly dominate over common issues." [Adv. Doc. No. 28, p. 34 of 64]. The Plaintiffs argue that just like the Defendants' request to dismiss this suit because the Plaintiffs cannot serve as class representatives, the arguments regarding the Plaintiffs' failure to qualify under Rule 23(b)(3) is premature. [Adv. Doc. No. 29, p. 24 of 30]. The Plaintiffs also contend that the question is not whether there are *any* individual issues, but whether common questions of law or fact *predominate*. [*Id.* at p. 25 of 30]. This is only one aspect of Rule 23 that the Plaintiffs have the burden of proving at a separate class certification hearing, and the Plaintiffs assert that they should be afforded the opportunity to satisfy this burden at an evidentiary hearing.

The Court finds merit in the Plaintiffs' argument, and it will thus give them the opportunity to show that a class action should be certified under Rule 23(b)(3). *See, e.g., Lang v. DirecTV, Inc.*, 735 F.Supp.2d 421, 439–40 (E.D. La. Aug. 13, 2010) (denying defendants' motion to strike the class allegations and finding that "these arguments are premature [because] . . . the record is not sufficiently developed for the Court to determine whether class certification would be appropriate"); *Grant*, 2010 WL 3303853, at *6 (denying defendants' motion to dismiss in its entirety and holding that "it is premature to determine whether Plaintiffs will be able to

17

meet the Rule 23 requirements . . . [and that] the question can be properly revisited in response to a motion to certify the class"); *Bros. v. Portage Nat'l Bank*, Civ. Act. No. 3:06-94, 2007 WL 965835, *7 (W.D. Pa. Mar. 29, 2007) (explaining that a Rule 12(b)(6) motion must not be used "as a vehicle for preempting a certification motion").

Accordingly, the Court rejects the Defendants' argument that, as a matter of law, the Plaintiffs cannot satisfy the elements of Rule 23(b)(3) to obtain class certification, and finds that the Defendants have not met their burden in establishing that the Plaintiffs have not stated a claim for which relief can be granted. Rule 12(b)(6); *Davis*, 824 F.3d at 349. Rather, the Court will schedule a separate hearing at which time the Plaintiffs may present evidence in support of class certification and the Defendants may present evidence in opposition thereto. Once again, this approach accords with the Fifth Circuit's holding in *Merrill*, 806 F.2d at 608–09, that "the district court should ordinarily conduct an evidentiary hearing on this question [of class certification]."

## V. Conclusion

There is no question that class actions serve a valuable remedial role. Indeed, class actions promote efficiency and economy, as debtors, in many cases, do not have the resources to litigate issues with their creditors individually. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974); *In re Wilborn*, 609 F.3d at 752–54. While this Court recognizes that it does not have freewheeling jurisdiction to adjudicate any and all matters brought in bankruptcy court, it simply cannot ignore the plain language set forth in §§ 1334 and 157, Bankruptcy Rule 7023, Fifth Circuit precedent (i.e., *Matter of Smith*), and General Order 2012-6 for the Southern District of Texas. As discussed herein, this Court's jurisdiction arises by referral from the District Court for the Southern District of Texas. This means that if the District Court may

exercise jurisdiction over claims of a debtor class, then General Order 2012-6 instructs that such proceedings are automatically referred to this Court. Thus, this Court finds that it may exercise subject matter jurisdiction over a nationwide class of debtors. That said, however, it remains for the Plaintiffs to establish that they should be certified as a class under Rule 23—and that is why an evidentiary hearing needs to be held. For all the reasons set forth above, it is therefore:

ORDERED that the Motion to Dismiss is denied in its entirety; and it is further

ORDERED that an evidentiary class certification hearing shall be held on August 2, 2017, at 10:00 A.M., in Courtroom 600, 6th Floor, Bob Casey Federal Courthouse, 515 Rusk Street, Houston, Texas.

Signed on this 19th day of May, 2017.

Jeff Bohm
United States Bankruptcy Judge