Objection Deadline: June 13, 2019 at 4:00 p.m. (Eastern Time)
Reply Deadline: June 18, 2019 at 4:00 p.m. (Eastern Time)
Hearing Date and Time: June 20, 2019 at 11:00 a.m. (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------X
                                                              :
In re                                                         :    **Chapter 11**
                                                              :
**DITECH HOLDING CORPORATION**, *et al.*,    :    **Case No. 19-10412 (JLG)**
                                                              :
                          Debtors.[1]                         :    **(Jointly Administered)**
                                                              :
----------------------------------------------------------------X

**NOTICE OF HEARING ON MOTION OF DEBTORS**
**PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY**
**PROCEDURE FOR APPROVAL OF A SETTLEMENT AGREEMENT AND**
**MUTUAL RELEASE AMONG DEBTORS AND  BANK OF AMERICA, N.A.**

          **PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "**Motion**"),

of Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and its debtor

affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**"), for entry of an order pursuant to Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**") for approval of a settlement agreement, dated

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

as of May 20, 2019 among (i) Ditech Financial LLC and (ii) Bank of America, N.A., all as more fully set forth in the Motion, will be held before the Honorable James L. Garrity, Jr., United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 601, One Bowling Green, New York, New York 10004 (the "**Bankruptcy Court**") on **June 20, 2019 at 11:00 a.m. (Eastern Time)** (the "**Hearing**"), or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the "**Objections**") to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules, shall be filed with the Bankruptcy Court (i) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the *Order Implementing Certain Notice and Case Management Procedures* (ECF No. 211) (the "**Case Management Order**"), so as to be filed and received no later than **June 13, 2019 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated: June 12, 2019
     New York, New York

/s/ Sunny Singh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

Objection Deadline: June 13, 2019 at 4:00 p.m. (Eastern Time)
Reply Deadline: June 18, 2019 at 4:00 p.m. (Eastern Time)
Hearing Date and Time: June 20, 2019 at 11:00 a.m. (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------X
                                      :
In re                                 :    Chapter 11
                                      :
DITECH HOLDING CORPORATION, et al.,   :    Case No. 19-10412 (JLG)
                                      :
        Debtors.²                     :    (Jointly Administered)
                                      :
------------------------------------------------------------X
```

## MOTION OF DEBTORS PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR APPROVAL OF A SETTLEMENT AGREEMENT AND MUTUAL RELEASE AMONG DEBTORS AND  BANK OF AMERICA, N.A.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and its

debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**"), respectfully represent as follows in support of this motion

(the "**Motion**"):

---

²    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

**Background**

1.      On February 11, 2019 (the "**Commencement Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On February 27, 2019, the United States Trustee for Region 2 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors.  On May 2, 2019, the U.S. Trustee appointed an official committee of consumer creditors.  No trustee or examiner has been appointed in these chapter 11 cases.

3.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

4.      The Debtors commenced these chapter 11 cases on a prearranged basis and have the support of more than eighty percent (80%) of their term loan lenders, who have committed to support a value-maximizing chapter 11 plan that contemplates a debt-to-equity recapitalization transaction and provides for the simultaneous marketing of all or substantially all of the Debtors' assets to the extent such sale represents higher or better value than the recapitalization transaction.  Consistent with their obligations under that certain Restructuring Support Agreement, dated as of February 8, 2019, the Debtors filed the *Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors* on March 5, 2019 (ECF No. 145) (as amended, modified, and supplemented, the "**Plan**").[3]  On May 10, 2019, the Court entered an

---

[3]     The Debtors have since then revised the Plan, most recently at ECF No. 542.

WEIL:\97067277\3\41703.0010

order approving the *Amended Disclosure Statement for Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors* (ECF No. 543).  The Debtors commenced solicitation of the Plan on May 13, 2019.

5.      Information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Gerald A. Lombardo Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York* (the "**Lombardo Declaration**"), sworn and filed on the Commencement Date (ECF No. 2). [4]

## Jurisdiction

6.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

7.      By this Motion, pursuant to Bankruptcy Rule 9019(a), the Debtors seek approval of a settlement agreement, dated as of May 20, 2019 (the "**Second Settlement Agreement**"), among (i) Ditech Financial LLC ("**Ditech Financial**"), and (ii) Bank of America, N.A. ("**BANA**," and together with Ditech Financial, the "**Parties**").  A copy of the Second Settlement Agreement is annexed hereto as **Exhibit 1**. [5]

8.      A proposed form of order approving the relief requested herein is annexed hereto as **Exhibit 2** (the "**Proposed Order**").

---

[4]     Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Second Settlement Agreement.

[5]     In the event that there is any inconsistency between the summary or description of the terms of the Second Settlement Agreement in this Motion, the actual terms and conditions of the Second Settlement Agreement will control.

3

### The Second Settlement Agreement

9.      Ditech Financial (as successor to Green Tree Servicing LLC), as Purchaser, and BANA, as Seller (together with Ditech Financial LLC, the "**Parties**"), entered into the *Mortgage Servicing Rights Purchase and Sale Agreement*, dated and effective as of January 6, 2013 (the "**MSRPSA**") pursuant to which Ditech Financial purchased mortgage servicing rights ("**MSRs**") from BANA relating to a pool of mortgage loans.  In connection with that purchase of MSRs, Ditech Financial paid for and received associated corporate advances from BANA, and also received certain rights under the MSRPSA to seek indemnification from BANA for certain unreimbursed corporate advances.  Ditech Financial collected some, but not all, of the corporate advances that it purchased from BANA.  Ditech Financial then sought indemnification under the MSRPSA from BANA for a portion of the unreimbursed corporate advances.  For various reasons, BANA maintained that it was not liable for indemnifying Ditech Financial for certain of those advances.  Following a consensual informal dispute resolution process, BANA and Ditech agreed to settle the indemnification claims, as more fully set out in the Second Settlement Agreement (and along similar lines as the First Settlement Agreement).[6]

10.      The Parties have entered into the Second Settlement Agreement to resolve a portion of the Excluded Claims, referred to as the "**Corporate Advances Bulk Claims**" that were described in Section 3(c) and set forth in Schedule B of the First Settlement Agreement, while leaving unresolved the Excluded Claims described in (i) Section 3(a) of the First

---

[6]      Effective as of December 31, 2018, the Parties entered into a settlement agreement (the "**First Settlement Agreement**"), which settled certain causes of action, claims and defenses that Ditech or BANA may have against each other arising out of or relating to the MSRPSA and a letter agreement effective as of June 26, 2014, except for certain "**Excluded Claims**" (as defined in the First Settlement Agreement).  Pursuant to the First Settlement Agreement, the Parties continue to have certain rights and obligations to each other, including regarding the Excluded Claims (except for the Corporate Advances Bulk Claims, as defined below) and confidentiality.

Settlement Agreement, or (ii) Section 3(b) and set forth in Schedule A of the First Settlement

Agreement, upon the terms set forth in the Second Settlement Agreement.

11.    The salient terms of the Second Settlement Agreement are as follows:

   a.    Upon the entry of the Proposed Order approving the Debtors' entry into the Second Settlement Agreement (the "**Effective Date**"), in accordance with the Second Settlement Agreement, the BANA Releasors have agreed to release the Ditech Released Parties from any and all claims, rights, demands, causes of action, damages, liabilities, costs, expenses or losses of any kind or character whatsoever, whether presently known or unknown, asserted or unasserted, arising out of or related to the Corporate Advances Bulk Claims.  This release does not apply to any Remaining Excluded Claims.

   b.    Within five (5) business days of the Effective Date, BANA has agreed to pay or cause to be paid to Ditech Financial the Settlement Payment of $7,600,000 without offset (the "**Settlement Amount**"), in accordance with the Second Settlement Agreement.

   c.    Upon the occurrence of the Effective Date and subject to payment in full of the Settlement Payment, the Ditech Releasors have agreed to release and discharge the BANA Released Parties from any and all claims, rights, demands, causes of action, damages, liabilities, costs, expenses or losses of any kind or character whatsoever, whether presently known or unknown, asserted or unasserted, that the Ditech Releasors ever had, may currently have, or may have in the future arising out of or related to the Corporate Advances Bulk Claims, in accordance with the Second Settlement Agreement.

   d.    To ensure that obligations and rights under the First Settlement Agreement are preserved, the Debtors have agreed that the First Settlement Agreement as modified by the Second Settlement Agreement shall be identified for assumption (or assumption and assignment) pursuant to 11 U.S.C. § 365 and pursuant to the Plan and order confirming the Plan in the chapter 11 cases, in accordance with the terms of the Second Settlement Agreement.

12.    The effectiveness of the Second Settlement Agreement is conditioned on

the Court's approval of the Debtors' entry into the Second Settlement Agreement.

5

13.     The Debtors have determined in its informed business judgment that the terms of the Second Settlement Agreement are in the best interests of the Debtors and their estates.

14.     Approval of the Second Settlement Agreement resolves certain remaining disputes and issues arising out of or related to the MSRPSA and the Letter Agreement (each as defined below) with respect to Corporate Advances Bulk Claims (as defined below), and provides for the payment of funds to the Debtors and certain releases by the parties to the Second Settlement Agreement.  In addition, entry into the Second Settlement Agreement will avoid future disputes and expenses in relation with the Corporate Advances Bulk Claims.

## The Second Settlement Agreement Is in
## The Debtors' Best Interests and Should Be Approved

15.     The Debtors submit that the Second Settlement Agreement is in the Debtors' best interests and should be approved under Rule 9019 of the Bankruptcy Rules. Bankruptcy Rule 9019(a) provides "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." Fed. R. Bankr. R. 9019(a).  This rule empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate." *In re Drexel Burnham Lambert Group*, *Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). The settlement need not result in the best possible outcome for the debtor, but must not "fall beneath the lowest point in the range of reasonableness." *Id.*; *see also Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

16.     Compromises are "a normal part of the process of reorganization." *Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).

WEIL:\97067277\3\41703.0010

Compromises may be effected separately during the reorganization proceedings or in the body of the plan itself. *In re Drexel Burnham Lambert Group Inc.*, 138 B.R. at 758. The decision to approve a particular compromise lies within the sound discretion of the Court. *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). The Court's discretion may be exercised "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). A proposed compromise and settlement implicates the issue of whether it is "fair and equitable, and in the best interest of the [debtor's] estate." *In re Best Products*, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted). The court must apprise itself "of all relevant facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.*, 390 U.S. at 424.

17.    Courts typically consider the following factors in determining whether a settlement should be approved: (i) the probability of success in litigation, with due consideration for the uncertainty in fact and law; (ii) the difficulties of collecting any litigated judgment; (iii) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; (iv) the proportion of creditors who do not object to, or who affirmatively support, the proposed settlement; (v) the competence and experience of counsel who support the settlement; (vi) the relative benefits to be received by members of any affected class; (vii) the extent to which the settlement is truly the product of arm's-length bargaining and not the product of fraud or collusion; and (viii) the debtor's informed judgment that the settlement is fair and reasonable. *See Id.*; *In re Ashford Hotels, Ltd.*, 226 B.R. 797, 804 (Bankr. S.D.N.Y. 1998); *In re Best Prods. Co.*, 168 B.R. at 50.

7

18.     While a court must "evaluate . . . all . . . factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), or conduct a full independent investigation. *Drexel Burnham Lambert Group*, 134 B.R. at 496.   Moreover, in reviewing a global compromise, a court need not be aware of or decide the particulars of each individual claim resolved by the settlement or "assess the minutia of each and every claim"; rather, a court "need only canvass the issues and see whether the settlement falls 'below the lowest point in the range of reasonableness.'" *Shugrue*, 165 B.R. at 123.  As one court explained in assessing a global settlement of claims, "[t]he appropriate inquiry is whether the Second Settlement Agreement *in its entirety* is appropriate for the . . . estate." *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 430 (S.D.N.Y. 1993), *aff'd* 17 F.3d 600 (2d Cir. 1993) (emphasis added).

19.     Here, the Second Settlement Agreement will benefit the Debtors, and its creditors.  First, the Second Settlement Agreement will provide the Debtors with $7,600,000 in cash, which will directly benefit the Debtors and their estates.  In addition, entry into the Second Settlement Agreement will avoid future disputes and expenses in relation with the Corporate Advances Bulk Claims.  Absent the Second Settlement Agreement, the Debtors only option would be to pursue costly arbitration for payment of the non-reimbursed advance receivables, the prospects of which are uncertain with no guarantee of a better outcome than the agreement reached in the Second Settlement Agreement.  Moreover, the Second Settlement Agreement is the product of arm's length bargaining between sophisticated parties, each of which were

8

represented by counsel, and resolves complex and highly technical claims among BANA and the Debtors.

20.    For the reasons stated above, and in the Debtors' informed business judgment, the compromises set forth in the Second Settlement Agreement are a "fair and equitable" resolution of the parties' dispute, well within the "range of reasonableness," and are in the best interests of the Debtors and their respective estates and creditors.    Accordingly, the Debtors request that the Second Settlement Agreement be approved pursuant to Bankruptcy Rule 9019, effective immediately upon entry of an order granting the relief requested herein.

### Waiver of Bankruptcy Rule 6004(h)

21.    Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  The Debtors seek a waiver of the 14-day stay extant in Bankruptcy Rule 6004(h) to avoid any delays in the receipt of the Settlement Amount, which will inure to the benefit of the Debtors and their estates.

### Notice

22.    Notice of this Motion will be provided in accordance with the procedures set forth in the *Order Implementing Certain Notice and Case Management Procedures* (ECF No. 211) (the "**Case Management Order**").  The Debtors respectfully submit that no further notice is required.

23.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

9

**WHEREFORE** the Debtors respectfully request that the Court grant the relief requested

herein and such other and further relief as it deems just and proper.

Dated: June 12, 2019
      New York, New York

                             /s/ Sunny Singh
                             WEIL, GOTSHAL & MANGES LLP
                             767 Fifth Avenue
                             New York, New York  10153
                             Telephone:  (212) 310-8000
                             Facsimile:   (212) 310-8007
                             Ray C. Schrock, P.C.
                             Sunny Singh

                             *Attorneys for Debtors*
                             *and Debtors in Possession*

## Exhibit 1

**Second Settlement Agreement**

EXECUTION VERSION

## SECOND SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Second Settlement Agreement (the "Second Agreement") is entered into as of May 20, 2019, by and between Bank of America, N.A. ("BANA") and Ditech Financial LLC ("Ditech") (each of BANA and Ditech is a "Party" under this Second Agreement, and together they constitute the "Parties").

WHEREAS, the Parties entered into the Mortgage Servicing Rights Purchase and Sale Agreement, by and between BANA, as Seller, and Ditech (as successor to Green Tree Servicing LLC), as Purchaser, dated and effective as of January 6, 2013 (the "MSRPSA");

WHEREAS, the Parties entered into a letter agreement memorializing certain covenants and understandings, by and between BANA, as Seller, and Ditech (as successor to Green Tree Servicing LLC), as Purchaser, dated and effective as of June 26, 2014 (the "Letter Agreement");

WHEREAS, the Parties entered into a Settlement Agreement (the "First Settlement Agreement") effective as of December 31, 2018, which settled causes of action, claims and defenses that Ditech or BANA may have had arising out of or related to the MSRPSA and the Letter Agreement (the "Potential Claims"), except for the "Excluded Claims," as therein defined;

WHEREAS, on February 11, 2019, Ditech Holding Corporation, Ditech and the other debtors identified therein filed cases under chapter 11 of the United States Bankruptcy Code styled as *In re Ditech Holding Corporation, et al.,* Case No. 19-10412 (JLG) (the "Chapter 11 Cases"), pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, on March 5, 2019, Ditech and its affiliated debtors in possession filed the Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors [ECF No. 245] (as it has been or may be modified or amended, the "Plan");

WHEREAS, the Parties wish to settle a portion of the Excluded Claims herein referred to as the "Corporate Advances Bulk Claims" that were described in Section 3(c) and set forth in Schedule B of the First Settlement Agreement, while leaving unresolved the Excluded Claims described in (i) Section 3(a) of the First Settlement Agreement, or (ii) Section 3(b) and set forth in Schedule A of the First Settlement Agreement;

WHEREAS, pursuant to the First Settlement Agreement the Parties continue to have certain rights and obligations to each other, including regarding the Excluded Claims (other than the Corporate Advances Bulk Claims) and confidentiality;

WHEREAS, the Parties agree that capitalized terms used herein but not defined herein or in the First Settlement Agreement, shall have the meanings ascribed to them in the MSRPSA;

NOW, THEREFORE, for good and valid consideration, the receipt and sufficiency of which is hereby acknowledged by all Parties hereto, the Parties agree as follows:

41944296

1.      **Court Approval**.  Within fifteen (15) business days after the execution of this Second Agreement, or upon such longer period as agreed by the Parties, Ditech shall file a stipulation or pleading, either on notice and hearing or under presentment ("Approval Pleading"), which Approval Pleading shall be in form and substance reasonably acceptable to the Parties.  Ditech shall file the Approval Pleading in the Chapter 11 Cases and seek entry of an order approving, among other things, entry by Ditech into this Second Agreement, including the release of claims in favor of BANA as set forth in Section 4 herein (the "Order").  The Order shall be in form and substance reasonably acceptable to the Parties.

2.      **Effective Date.**  This Second Agreement shall be effective on the date the Order is entered (the "Effective Date"); *provided* that upon execution of this Second Agreement, it is binding on the Parties (subject to the terms of this Second Agreement).  If the Order is not entered or the Order is reversed or vacated on appeal, this Second Agreement shall be null and void and the Parties shall be restored to their positions before execution (or performance) of this Second Agreement.

3.      **Settlement Payment.**  Within five (5) business days after the Effective Date, BANA shall pay or cause to be paid to Ditech the sum of $7,600,000 in cash by wire transfer and without offset (the "Settlement Payment").  The Parties acknowledge that following payment of the Settlement Payment, any Threshold (as defined in Section 11.06(a) of the MSRPSA) remaining after the First Settlement Agreement shall be fully exhausted, and that no Threshold amounts shall be due or applicable to Ditech in the future under the MSRPSA.  The Settlement Payment shall be wired to Ditech as follows:

> Name of Bank: Citibank, N.A., 111 Wall Street, New York, NY 10043
> ABA Number: 021000089
> Beneficiary Account Number: 31115011
> Beneficiary Account Name: Ditech Financial LLC

4.      **Releases.**

      a.      The term "BANA Released Parties" and "Ditech Released Parties" shall mean, respectively:

> i.   With respect to BANA, BANA and/or any person, partnership, firm, corporation, limited liability company, trust, or other entity or organization in which BANA has a controlling interest or which is, was, or will be related to or affiliated with BANA;
>
> ii.  With respect to each of the persons and entities in Section 4(a)(i) above, their respective past, present or future general partners, limited partners, officers, directors, trustees, members, employees, agents, servants, attorneys, accountants, independent contractors, insurers, co-insurers, re-insurers, and other representatives of such persons and

entities (in each case, only in their capacity as such);

iii. With respect to Ditech, Ditech and/or any person, partnership, firm, corporation, limited liability company, trust, or other entity or organization in which Ditech has a controlling interest or which is, was, or will be related to or affiliated with Ditech;

iv. With respect to each of the persons and entities in Section 4(a)(iii) above, their respective past, present or future general partners, limited partners, officers, directors, trustees, members, employees, agents, servants, attorneys, accountants, independent contractors, insurers, co-insurers, re-insurers, and other representatives of such persons and entities (in each case, only in their capacity as such).

b.    Upon the occurrence of the Effective Date and subject to payment in full of the Settlement Payment, Ditech, on its own behalf, and on behalf of any and all of its past, present and future partners, directors, officers, employees, agents, representatives, attorneys, consultants, corporate parents, subsidiaries, divisions, subdivisions, affiliates, administrators, predecessors, successors, heirs, executors and assigns, in their respective capacities as such (collectively, the "Ditech Releasors"), hereby completely release and forever discharge the BANA Released Parties from any and all claims, rights, demands, causes of action, damages, liabilities, costs, expenses or losses of any kind or character whatsoever, whether presently known or unknown, asserted or unasserted, that the Ditech Releasors ever had, may currently have, or may have in the future arising out of or related to the Corporate Advances Bulk Claims, provided that the Parties agree and acknowledge that this release does not apply to any Remaining Excluded Claims.

c.    Upon the occurrence of the Effective Date, BANA, on its own behalf, and on behalf of any and all of its past, present and future partners, directors, officers, employees, agents, representatives, attorneys, consultants, corporate parents, subsidiaries, divisions, subdivisions, affiliates, administrators, predecessors, successors, heirs, executors and assigns, in their respective capacities as such (collectively, the "BANA Releasors"), hereby completely release and forever discharge the Ditech Released Parties from any and all claims, rights, demands, causes of action, damages, liabilities, costs, expenses or losses of any kind or character whatsoever, whether presently known or unknown, asserted or unasserted, that the BANA Releasors ever had, may currently have, or may have in the future arising out of or related to the Corporate Advances Bulk Claims, provided that the Parties agree and acknowledge that this release does not apply to any Remaining Excluded Claims.

d.    Each Party fully understands that facts relating to any matter covered by this Second Agreement might be found hereafter to be other than or different from the facts now believed by it to be true.  With respect to the release set forth in this Second Agreement, each Party expressly accepts and assumes the risk of such possible differences in fact and agrees that this Second Agreement will nevertheless remain in effect.  Each Party, on its own behalf and on behalf of the Ditech Releasors and BANA Releasors, as the case may be,

3

expressly waives, with respect to the releases set forth in this Second Agreement, any rights, benefits and protections afforded by California Civil Code Section 1542, which provides,

> "[A] GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR,"

and any statutory, common law, or other doctrines of similar effect under the law of any state or other jurisdiction.

5.   **Claims Not Released**.

  a.   The Ditech Releasors and the BANA Releasors do not release, waive, or discharge claims to enforce any provision of this Second Agreement.

  b.   The Ditech Releasors and the BANA Releasors do not release, waive or discharge (and do not waive any defenses with respect to) claims arising from a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ("Demand") for any loans listed on **Schedule A** of the First Settlement Agreement which is also attached hereto, provided that the Demand is based solely ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. If Ditech receives a Demand that Ditech believes should be excluded under this Section 5(b), Ditech must send a copy of the Demand to BANA within ten (10) business days. After reviewing the Demand, if BANA believes that the Demand is based ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ BANA has the right to appeal the Demand on that basis and the Parties agree to work in good faith to resolve those disputed Demands.

  c.   "Remaining Excluded Claims" means claims (and defenses thereto) that are reserved in Sections 5(a) or 5(b). For the avoidance of doubt, with respect to the loans listed on Schedule A, BANA does not waive any defenses with respect to time periods, survival periods or deadlines under the MSRPSA, including without limitation the periods for a Party to provide an indemnification notice or otherwise notify a Party of actual or potential claims pursuant to the MSRPSA.

6.   **First Settlement Agreement.**

  a.   The First Settlement Agreement as modified by this Second Agreement shall be assumed pursuant to 11 U.S.C. § 365 by Ditech under the Plan and order confirming the Plan in the Chapter 11 Cases.

  b.   Ditech shall include the First Settlement Agreement on the Assumption Schedule (as defined in the Plan). If Ditech pursues a Sale Transaction or any Asset Sale Transaction(s) (each of those terms as defined in the Plan), either (i) Ditech shall provide that the First Settlement Agreement shall be assumed and assigned under the purchase agreement

for such Sale Transaction or any applicable Asset Sale Transaction(s), or (ii) Ditech or the Wind Down Estates (as defined in the Plan), as applicable, shall assume the First Settlement Agreement.

        c.     Between execution of this Second Agreement and entry of an order of the Bankruptcy Court approving assumption of the First Settlement Agreement, the Parties shall perform their obligations under the First Settlement Agreement as if it had been assumed under 11 U.S.C. § 365 in the Chapter 11 Cases.

        d.     BANA acknowledges and agrees that no cure amount is owed as of execution of this Second Agreement.  BANA reserves the right to assert a cure amount for any defaults occurring between execution of this Second Agreement and entry of an order of the Bankruptcy Court approving assumption of the First Settlement Agreement.

        e.     BANA acknowledges and agrees that no adequate assurance in addition to obligations under this Second Agreement (and the First Settlement Agreement as modified herein) shall be required of Ditech in connection with assumption by Ditech of the First Settlement Agreement.  BANA reserves the right to seek, or to contest, adequate assurance if Ditech seeks approval from the Bankruptcy Court to assume and assign the First Settlement Agreement.

        7.     **Confidentiality.**

        a.     The existence of this Second Agreement, the fact that the Parties have resolved their differences, the terms of this Second Agreement and the settlement embodied herein, and all discussions, correspondence, and communications of any nature whatsoever leading up to or in connection with this Second Agreement and this settlement are "<u>Confidential Information</u>" and shall not be disclosed by any Party, except that, subject to the obligations described below, disclosure of such information shall be permitted in the following limited circumstances:  (i) in an action by any Party to enforce the provisions of this Second Agreement, to the extent reasonably required for the purposes of such enforcement; (ii) in response to a court order, subpoena, or other demand made in accordance with applicable law; (iii) (A) in communications with or in response to requests or demands by a governmental or quasi-governmental authority or self-regulatory organization having jurisdiction over such Party, or (B) as that Party may elect in its reasonable discretion as part of its filings with the Securities and Exchange Commission on Form 8-K, 10-Q, or 10-K or related disclosures (including financial supplements substantially consistent with past practice), or similar public disclosures and reports under non-U.S. reporting regimes, with other governmental authorities, or other financial reporting obligations, including statutory financial reporting requirements, GAAP reporting requirements, and federal, state, or local tax returns, provided that disclosure of this settlement by Ditech in such filings, disclosures or reports will not reference BANA or specifically reference this settlement between Ditech and BANA unless in the opinion of counsel to Ditech or Ditech's auditors, any such disclosure is required by applicable law; and (iv) to such Party's subsidiaries, affiliates, their respective directors, officers, external or internal agents, representatives, professional advisers, attorneys, accountants, auditors, insurers and reinsurers, successors, assigns, and employees, who have a need to know and are under a duty to implement

41944296

appropriate measures to maintain the confidentiality, security, and integrity of such information, and to qualified bidders, investors or potential third-party strategic partners or purchasers conducting due diligence with respect to a Party in connection with the sale of such Party or its assets, who have a need to know and agree to be bound by this provision. Notwithstanding the foregoing, Ditech may disclose the contents of this Second Agreement and the First Settlement Agreement in connection with the Approval Pleading, provided that this Second Agreement, the First Settlement Agreement, and corresponding portions of the Approval Pleading shall be filed under seal to the extent requested by BANA.

    b.  Should any Party, or any Party's respective affiliates, receive a request for disclosure or become required by law to disclose any Confidential Information pursuant to Section 7(a)(ii) herein after the execution of this Second Agreement (and excluding any subpoena, document request, or other discovery served prior to the execution of this Second Agreement, and any disclosure covered under Sections 7(a)(i), (iii) or (iv) herein), the Party receiving such a request shall promptly, and in no case more than five (5) business days following receipt of such a request (so long as it is legally permitted to provide such notification), notify the other Party to afford it the opportunity to object or seek a protective order prior to the disclosure of any such information. Each Party agrees that it shall use commercially reasonable efforts to obtain assurance that confidential treatment will be accorded to any Confidential Information that is provided to any governmental authority or any other person.

    c.  The Parties agree that irreparable harm would result to the Parties if any part of the covenant contained in this Section 7 is not performed in accordance with the terms hereof and that any relevant non-breaching Party shall be entitled to an injunction or injunctions to prevent breaches of this provision or to enforce it specifically in addition to any other remedy to which that Party is entitled at law or in equity; provided, however, that the foregoing shall not apply to the extent the granting of any right to specific performance would contravene the terms of any binding order of any governmental authority. Each Party acknowledges that legal damages arising out of this covenant would not adequately compensate the other Party for the harm caused by any breach of it, including due to the uncertain risks and liabilities to which such a breach could potentially expose the non-breaching Party. Notwithstanding any other provision of this Second Agreement, any proceeding to seek injunctive relief in accordance with this Section may be brought in the state courts of New York, in New York County, or the federal district court in the Southern District of New York and the Parties consent to the exclusive jurisdiction of such courts in any such proceeding. The question of whether any such claim for injunctive relief is arbitrable shall be decided by the court in which such action is brought.

    d.  For purposes of this Second Agreement, Confidential Information shall not include information that (i) is or becomes generally available to and known by the public other than as a result of disclosure by a Party in violation of this Second Agreement; (ii) becomes available to a Party from a source other than the disclosing Party, provided that the receiving Party has no knowledge that such source is prohibited from disclosing such information to the receiving Party by a contractual, legal, or fiduciary obligation; or (iii) is independently developed by a Party without reference to, or use of, the Confidential Information.

e.      Each Party agrees that when making a disclosure permitted hereunder to a nonparty to this Second Agreement, such Party shall disclose only the minimum amount of information reasonably required under the circumstances.

f.      Except as otherwise provided in this Section 7, the Parties agree that they will not publicly announce or otherwise disclose any information relating to the execution of this Second Agreement or the Settlement Payment being made pursuant to this Second Agreement.

8.      **Entire Agreement.**  The First Settlement Agreement and this Second Agreement contain the entire agreement among the Parties and shall not be modified in any way except in writing executed by the Party to be bound thereby.

9.      **Construction.**  The language of all parts of this Second Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.  This Second Agreement was prepared jointly by the Parties, and no presumptions or rules of interpretation based upon the identity of the Party preparing or drafting the Second Agreement, or any part thereof, shall be applicable or invoked.

10.      **No Admission of Liability.**  This Second Agreement does not constitute an admission by any Party of any liability or wrongdoing whatsoever, and is the result of a compromise within the provisions of the Federal Rules of Evidence, and any similar statutes or rules, and shall not be used or admitted in any proceeding for any purpose; provided, however, that this paragraph shall not apply to any claims to enforce this Second Agreement.

11.      **Parties to Bear Own Costs.**  Each Party shall bear its own costs and expenses, including any and all legal fees in relation to the negotiation and documentation of this Second Agreement.

12.      **Binding Effect.**  This Second Agreement binds and inures to the benefit of the Parties and their respective past and present agents, employees, attorneys, representatives, officers, directors, shareholders, the bankruptcy estates in the Chapter 11 Cases, the reorganized entities under the confirmed plan of reorganization in the Chapter 11 Cases, a chapter 7 or 11 trustee or other representative of any or all of the estates in the Chapter 11 Cases, successors, assigns, transferees, insurers and sureties, and all of their subsidiaries, parents, predecessors, successors and affiliated companies.

13.      **Severability.**  Should any of the provisions of this Agreement be rendered invalid by a court or government agency of competent jurisdiction, it is agreed that this shall not in any way or manner affect the enforceability of the other provisions of this Agreement, which shall remain in full force and effect, and the Parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the greatest extent possible.

41944296

14.    **Counterpart Signature Pages.**  This Second Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original, and all of which together will constitute one and the same agreement.  This Second Agreement may be executed by email signature, which shall have the same effect and force as an original signature.

15.    **Headings.**  The section headings contained in each section of this Second Agreement are intended solely for convenience of reference and shall not limit or expand the express terms of this Second Agreement or otherwise be used in its construction.

16.    **Choice of Law.**  This Second Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed in the State of New York, and the rights and obligations of the Parties to the Second Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York without giving effect to that State's choice of law principles.

17.    **Dispute Resolution**.  Any dispute, claim, or controversy arising out of or relating to this Second Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by confidential arbitration.  Such arbitration shall be conducted by a neutral arbitrator associated with JAMS who is mutually agreeable to the Parties.  Any such arbitration shall be confidential in all respects and subject to Section 7 hereof.  Unless otherwise agreed to in writing, such proceeding shall proceed in New York, and the Arbitrator's costs associated with the same shall be shared equally by the Parties.


IN WITNESS WHEREOF, the Parties have caused this Second Agreement to be executed by themselves or their duly authorized representatives as of the date hereof.

**ACCEPTED AND AGREED:**

BANK OF AMERICA, N.A.

By:_____
Title: _Senior Vice President_____


DITECH FINANCIAL LLC

By:_____
Title:_____


8

41944296

14. **Counterpart Signature Pages.** This Second Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original, and all of which together will constitute one and the same agreement. This Second Agreement may be executed by email signature, which shall have the same effect and force as an original signature.

15. **Headings.** The section headings contained in each section of this Second Agreement are intended solely for convenience of reference and shall not limit or expand the express terms of this Second Agreement or otherwise be used in its construction.

16. **Choice of Law.** This Second Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed in the State of New York, and the rights and obligations of the Parties to the Second Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York without giving effect to that State's choice of law principles.

17. **Dispute Resolution**. Any dispute, claim, or controversy arising out of or relating to this Second Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by confidential arbitration. Such arbitration shall be conducted by a neutral arbitrator associated with JAMS who is mutually agreeable to the Parties. Any such arbitration shall be confidential in all respects and subject to Section 7 hereof. Unless otherwise agreed to in writing, such proceeding shall proceed in New York, and the Arbitrator's costs associated with the same shall be shared equally by the Parties.


IN WITNESS WHEREOF, the Parties have caused this Second Agreement to be executed by themselves or their duly authorized representatives as of the date hereof.

**ACCEPTED AND AGREED:**

BANK OF AMERICA, N.A.

By:_____
Title:_____


DITECH FINANCIAL LLC

By:_____
Title: SVP

8

41944296

[Schedule A]

[See Certain Fannie Mae Demand loans per Section 3(b) of the First Settlement Agreement and
Attached as Schedule A Thereto]

41944296

**<u>Exhibit 2</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                        :
In re                                   :    **Chapter 11**
                                        :
**DITECH HOLDING CORPORATION**, *et al.*, :    **Case No. 19-10412 (JLG)**
                                        :
            Debtors.[1]                 :    **(Jointly Administered)**
                                        :    **Related Docket No. [__]**
-------------------------------------------------------------X

**ORDER APPROVING A SETTLEMENT**
**AGREEMENT AND MUTUAL RELEASE WITH BANK OF AMERICA, N.A.**

Upon the motion, dated June 12, 2019 (the "**Motion**"),[2] of Ditech Holding

Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned

chapter 11 cases (collectively, the "**Debtors**"), pursuant to Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), for approval of the settlement agreement

(the "**Second Settlement Agreement**") among (i) Ditech Financial LLC ("**Ditech Financial**"),

and (ii) Bank of America, N.A. ("**BANA**" together with the Debtors, the "**Parties**"), all as more

fully described in the Motion; and the Court having jurisdiction to consider the Motion and the

relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order

of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and

the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue

being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

notice of the Motion having been provided in accordance with the Case Management Order; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**

1.     The Motion is granted to the extent set forth herein.

2.     Pursuant to Bankruptcy Rule 9019, the Second Settlement Agreement is approved, including Section 6.

3.     The Debtors are authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate the Second Settlement Agreement, including Section 6 thereof, and perform any and all obligations contemplated therein without further order of the Court.

4.     This Order shall be binding on the Parties and their respective successors in interest and assigns to the same extent as set forth in Section 12 of the Second Settlement Agreement.

5.     Nothing in this Order shall constitute or effectuate an assumption of the First Settlement Agreement or the Second Settlement Agreement.

2

6.      To the extent that a provision of the order confirming the Debtors' chapter 11 plan affects any relief provided pursuant to this Order, such provision shall be in form and substance agreeable to BANA.

7.      Notwithstanding the possible applicability of any Bankruptcy Rule, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry pursuant to Rule 6004(h).

8.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of thereof; no other or further notice of the Motion shall be required.

9.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2019
         New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

WEIL:\97067277\3\41703.0010