**Hearing Date and Time:  August 7, 2019 at 11:00 a.m. (Eastern Time)**
**Objection Date and Time: July 31, 2019 at 4:00 p.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X
:
In re                                                          :          **Chapter 11**
:
**DITECH HOLDING CORPORATION**, *et al.*,     :          **Case No. 19-10412 (JLG)**
:
Debtors.[1]                                             :          **(Jointly Administered)**
:
-------------------------------------------------------------X

## NOTICE OF HEARING ON MOTION OF
## DEBTORS PURSUANT TO SECTION 1121(d) OF THE
## BANKRUPTCY CODE TO FURTHER EXTEND EXCLUSIVE PERIODS

        **PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "**Motion**"),

of Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and its debtor

affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**"), for entry of an order pursuant to section 1121(d) of chapter 11 of

title 11 of the United States Code (the "**Bankruptcy Code**") to further extend the Debtors'

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

exclusive periods in which to file a chapter 11 plan and solicit acceptances thereof, all as more fully set forth in the Motion, will be held before the Honorable James L. Garrity, Jr., United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 601, One Bowling Green, New York, New York 10004 (the "**Bankruptcy Court**") on **August 7, 2019 at 11:00 a.m. (Eastern Time)** (the "**Hearing**"), or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the "**Objections**") to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules (each as defined in the Motion), shall be filed with the Bankruptcy Court (i) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the *Order Implementing Certain Notice and Case Management Procedures* (ECF No. 211) (the "**Case Management Order**"), so as to be filed and received no later than **July 31, 2019 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to

attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated: July 24, 2019
New York, New York

/s/ Sunny Singh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

WEIL:\97130807\1\41703.0011

**Hearing Date and Time:  August 7, 2019 at 11:00 a.m. (Eastern Time)**
**Objection Date and Time: July 31, 2019 at 4:00 p.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
                                                              :
**In re**                                                     :     **Chapter 11**
                                                              :
**DITECH HOLDING CORPORATION,** *et al.*,                     :     **Case No. 19-10412 (JLG)**
                                                              :
                              **Debtors.**[1]                 :     **(Jointly Administered)**
                                                              :
---------------------------------------------------------------X

## MOTION OF DEBTORS PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE TO FURTHER EXTEND EXCLUSIVE PERIODS

TO THE HONORABLE JAMES L. GARRITY, JR.,
UNITED STATES BANKRUPTCY JUDGE:

Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and its

debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**") file this motion (the "**Motion**") for entry of an order further

extending the periods during which the Debtors have the exclusive right to file a chapter 11 plan

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

(the "**Exclusive Filing Period**") and to solicit acceptances thereof (the "**Exclusive Solicitation Period**," and together with the Exclusive Filing Period, the "**Exclusive Periods**") by two (2) months through and including October 10, 2019 and December 9, 2019, respectively.  In support of the Motion, the Debtors respectfully represent as follows:[2]

### Preliminary Statement

1.        On June 10, 2019, the Court entered an order extending (a) the Exclusive Filing Period through and including August 10, 2019, and (b) the Exclusive Solicitation Period through and including October 9, 2019, in each case, without prejudice to the Debtors' rights to seek additional extensions of such periods (ECF No. 685) (the "**First Exclusivity Order**").  The Debtors' confirmation hearing is currently scheduled to begin on August 7, 2019.  The Debtors' Exclusive Filing Period ends three days later—on August 10, 2019.  Accordingly, out of an abundance of caution, by this Motion, the Debtors are seeking a modest two-month extension of the Exclusive Periods to complete prosecution of their Plan and Sale Transaction embodied therein, should confirmation of the Plan take longer than expected.

2.        As further discussed below, the Debtors have made significant progress towards the confirmation and consummation of a consensual chapter 11 plan and seek—as a precautionary matter only—an additional extension of two (2) months to ensure that they can get these chapter 11 cases over the finish line and bring them to a successful close without interruption or unnecessary delay.

3.        The Debtors deserve a further extension of exclusivity.  In the two (2) months that passed since the First Exclusivity Order was entered, the Debtors have completed

---

[2]    Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Plan or Disclosure Statement (both as defined herein), as applicable.

WEIL:\97130807\1\41703.0011

their court-approved postpetition marketing process (the "**Postpetition Marketing Process**").[3] Specifically, in accordance with the Bidding Procedures Order, on June 18, 2019, the Debtors filed the *Notice of Designation of Stalking Horse Bid and Request for Approval of Stalking Horse Bid Protections (Forward Business)* (ECF No. 722) (the "**Notice of Designation of Stalking Horse Bidder (Forward Business)**") and the *Notice of Designation of Stalking Horse Bid and Request for Approval of Stalking Horse Bid Protections (Reverse Business)* (ECF No. 724) (the "**Notice of Designation of Stalking Horse Bidder (Reverse Business)**").

4.      Pursuant to the Notice of Designation of Stalking Horse Bidder (Forward Business), the Debtors announced that (a) the Debtors had accepted a stalking horse bid (the "**Forward Stalking Horse Bid**") submitted by New Residential Investment Corp. (the "**Forward Stalking Horse Bidder**"); (b) Ditech Holding Corporation and Ditech Financial LLC ("**Forward Sellers**") and the Froward Stalking Horse Bidder had executed a stalking horse agreement for the purchase of certain of the Debtors' assets (the "**Forward Stalking Horse Agreement**"); and (c) the estimated Purchase Price (as defined in the Bidding Procedures Order) payable to the Debtors under the Forward Stalking Horse Agreement, assuming the Debtors' March 31, 2019 balance sheet, was estimated to be approximately $1,055 million in cash prior to the repayment of approximately $613 million of principal amounts outstanding under the DIP.

5.      Pursuant to the Notice of Designation of Stalking Horse Bidder (Reverse Business), the Debtors announced that (a) the Debtors had accepted a stalking horse bid (the "**Reverse Stalking Horse Bid**" and together with the Forward Stalking Horse Bid, the "**Stalking Horse Bids**") submitted by Mortgage Assets Management, LLC and SHAP 2018-1, LLC

---

[3]    The Postpetition Marketing Process is governed by the *Order (I) Approving Bidding Procedures, (II) Approving Assumption and Assignment Procedures, and (III) Granting Related Relief* (ECF No. 456) (the "**Bidding Procedures Order**").

WEIL:\97130807\1\41703.0011

(together, the "**Reverse Stalking Horse Bidder**"); (b) Ditech Holding Corporation, Walter Reverse Acquisition LLC, and Reverse Mortgage Solutions, Inc. (the "**Reverse Sellers**") and the Reverse Stalking Horse Bidder had executed a stalking horse agreement for the purchase of certain of the Debtors' assets (the "**Reverse Stalking Horse Agreement**"); and (c) the estimated Purchase Price (as defined in the Bidding Procedures Order) payable to the Debtors under the Reverse Stalking Horse Agreement, assuming the Debtors' March 31, 2019 balance sheet, was estimated to be approximately $762 million, based upon management's estimates, approximately $616 million of which would be available to pay the DIP Obligations.

6.      On July 10, 2019, the Debtors filed the *Notice of (I) Cancellation of Auction, (II) Sale and Confirmation Objection Deadline, and (III) Successful Bidders* (ECF No. 830) (the "**Notice of Successful Bidders**"). Pursuant to the Notice of Successful Bidders, the Debtors announced that (a) no Qualified Bids (other than the Stalking Horse Bids) were received by the Bid Deadline (as defined in the Bidding Procedures Order); (b) the Auction (as defined in the Bidding Procedures Order) was cancelled; and (c) as no Qualified Bids were received by the Bid Deadline, the Debtors selected the Forward Stalking Horse Bid and the Reverse Stalking Horse Bid as the Successful Bid for their respective Acquired Assets (each as defined in the Stalking Horse Bids).

7.      As demonstrated by the significant progress that has been made, the Debtors are committed to moving expeditiously through the confirmation process and towards implementation of the Sale Transaction and consummation of the Plan.

**Relief Requested**

8.      The Debtors request, pursuant to section 1121(d) of the Bankruptcy Code, an additional two (2)-month extension of (a) the Exclusive Filing Period through and including October 10, 2019, and (b) the Exclusive Solicitation Period through and including December 9,

2019, to complete prosecution of their Plan and the Sale Transaction, in each case, without prejudice to the Debtors' right to seek additional extensions of such periods.

9.       A proposed form of order granting the relief requested herein is attached hereto as **Exhibit A** (the "**Proposed Order**").

## Background

10.       On February 11, 2019 (the "**Commencement Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").   The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

11.       On February 27, 2019, the United States Trustee for Region 2 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**").   On May 2, 2019, the U.S. Trustee appointed an official committee of consumer creditors (the "**Consumer Creditors' Committee**").   No trustee or examiner has been appointed in these chapter 11 cases.

12.       The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

13.       The Debtors commenced these chapter 11 cases on a prearranged basis and have the support of more than eighty percent (80%) of their term loan lenders.   Consistent with their obligations under that certain Restructuring Support Agreement, dated as of February 8, 2019, the Debtors filed the *Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors* on March 5, 2019 (ECF No. 145) (as amended, modified, and supplemented,

5

the "**Plan**")[4] and the accompanying Disclosure Statement (ECF No. 146) (the "**Disclosure Statement**").  On May 10, 2019, the Court entered an order approving the *Amended Disclosure Statement for Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors* (ECF No. 543).  The Debtors commenced solicitation of the Plan on May 13, 2019.

14.    Information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Gerald A. Lombardo Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York* (the "**Lombardo Declaration**"), sworn and filed on the Commencement Date (ECF No. 2).

### Jurisdiction

15.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested Should Be Granted

16.    Pursuant to section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for cause.  *See* 11 U.S.C. § 1121(d) ("[O]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.").  However, the 120-day period "may not be extended beyond a date that is 18 months after the [petition] date" and the 180-day period "may not be extended beyond a date that is 20 months after the [petition] date."  *Id.* §§ 1121(d)(2)(A), (B).

---

[4]    The Debtors have since then revised the Plan, most recently at ECF No. 542.

WEIL:\97130807\1\41703.0011

17.    The Exclusive Periods established by Congress were incorporated in the Bankruptcy Code to afford a debtor a full and fair opportunity to propose a chapter 11 plan and enable solicitation of acceptances of the plan without the deterioration and disruption of a debtor's business that might be caused by the filing of multiple competing plans.  Indeed, the primary objective of a chapter 11 case is the formulation, confirmation, and consummation of a consensual chapter 11 plan.

18.    As stated, section 1121(d) of the Bankruptcy Code empowers a Bankruptcy Court to extend the Exclusive Periods "for cause."  The Bankruptcy Code neither defines the term "cause" for purposes of section 1121(d) nor establishes formal criteria for an extension.  The legislative history of section 1121 indicates that "cause" is intended to be a flexible standard to balance the competing interests of a debtor and its creditors.  *See* H.R. Rep. No. 95-595, at 231–32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give bankruptcy courts great flexibility to protect a debtor's interests by allowing a debtor unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

19.    In exercising its broad discretion to determine whether "cause" exists, the Court should be guided by a variety of factors.  *See In re Borders Grp., Inc.*, 460 B.R. 818, 821−22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity."); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying objective factors courts historically have considered in determining whether cause exists to extend or terminate exclusivity); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y.

7

1987) (identifying factors used by courts to determine whether cause exists to extend exclusivity).  Those factors include, without limitation:

   i.   the size and complexity of the debtor's case;

   ii.  the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

   iii. the existence of good faith progress towards reorganization;

   iv.  the fact that the debtor is paying its bills as they become due;

   v.   whether the debtor has demonstrated reasonable prospects for filing a viable plan;

   vi.  whether the debtor has made progress in negotiations with its creditors;

   vii. the amount of time which has elapsed in the case;

   viii. whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

   ix.  whether an unresolved contingency exists.

*Adelphia Commc'ns*, 352 B.R. at 587 (noting that the nine factors listed above are "objective factors which courts historically have considered in making determinations of this character"); *see also Borders*, 460 B.R. at 822 (evaluating the nine factors set forth in *Adelphia* to hold that debtor established cause to extend exclusivity); *McLean Indus.*, 87 B.R. at 834; *accord In re Express One*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (identifying all of the nine factors as relevant in determining whether cause exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (holding that the debtor showed cause to extend exclusive period based upon certain of the nine factors).  The above factors are not the exclusive bases for the exercise of the Court's discretion to extend the Exclusive Periods.  *See Adelphia Commc'ns*, 352 B.R. at 586-87.

20.     Application of the identified standards to the facts of these chapter 11 cases demonstrates that ample cause exists to grant the Debtors' requested extensions of the Exclusive Periods. The extensions are necessary and appropriate for the Debtors in order to ensure their efforts to emerge from bankruptcy can be brought to fruition.

**A.  These Chapter 11 Cases Are Large and Complex**

21.     It is well-established that the size and complexity of a debtor's case alone may constitute cause to extend the Exclusive Periods. *See In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.") (citing *Gaines v. Perkins* (*In re Perkins*), 71 B.R. 294, 298 (W.D. Tenn. 1987); *In re Pine Run Trust*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986); *In re United Press International, Inc.*, 60 B.R. 265, 270 (Bankr. D.C. 1986); *In re American Federation of Television and Radio Artists*, 30 B.R. 772, 774 (Bankr. S.D.N.Y. 1983)).

22.     The legislative history provides that "if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement." H.R. Rep. No. 95-595, at 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963. Moreover, "[t]he large size of a debtor and the consequent difficulty in formulating a plan . . . for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods." *Texaco*, 76 B.R. at 326.

23.     The size and complexity of, and the legal issues involved in, these chapter 11 cases warrant the requested extension of the Exclusive Periods. The Debtors' businesses are

9

operated across three (3) primary segments: (i) forward mortgage origination; (ii) forward mortgage servicing; and (iii) reverse mortgage servicing. As of December 31, 2018, the Debtors serviced or subserviced (a) approximately 1.3 million forward residential loans with an unpaid principal balance of $170.1 billion and (b) approximately 88,000 reverse mortgage loans with an unpaid principal balance of $17.1 billion.

24.     The Debtors and their advisors continue to run a large, complex, and heavily regulated business in chapter 11. Simultaneously, the Debtors have dedicated significant time and effort to the Postpetition Marketing Process and have been involved in extensive negotiations with potential third party purchasers for both whole-company bids and more discreet financial asset bids. Now that the Debtors have successfully executed two purchase agreements for the sale of substantially all of their assets, the Debtors require additional time to obtain the requisite approvals from the Bankruptcy Court and from the relevant regulatory authorities to effectuate the Sale Transaction and the Plan. The instant chapter 11 cases are indisputably of the size and complexity that Congress and courts recognized warranting extensions of the Exclusive Periods as requested.

**B.  The Debtors Have Demonstrated Reasonable Prospects For Confirming A Viable Plan And Require Additional Time To Resolve Issues Critical To The Chapter 11 Process**

25.     This is the Debtors' second motion requesting an extension of the Exclusive Periods. In the two (2) months since the entry of the First Exclusivity Order, the Debtors have made significant progress in these chapter 11 cases and are very close to the finish line.

26.     Pursuant to the Bidding Procedures Order, the Debtors' financial advisor, Houlihan Lokey Capital, Inc., undertook an extensive Postpetition Marketing Process to solicit interest from third parties, including strategic investors and financial investors. These efforts

10

bore fruit and the Debtors have secured two successful bids for the forward and reverse businesses. These two bids combined account for the sale of substantially all of the Debtors' assets and, if approved, will allow the Debtors to pursue the Sale Transaction and consummate the Plan.

27.    In addition to the foregoing, since the entry of the First Exclusivity Order, the Debtors have, among other things:

- Filed their Plan Supplement (ECF No. 844), which includes, among other documents, the schedules of assumption, assignment and/or rejection of executory contracts and unexpired leases, and a substantially final version of the GUC Recovery Trust Agreement;

- Continued to work cooperatively with the Creditors' Committee and Consumer Creditors' Committee, including production of documents to the Consumer Creditors' Committee in response to discovery requests relating to the Plan;

- Modified the automatic stay to allow certain borrower claims to continue in the interest of expedited resolution;

- Worked with the office of the U.S. Trustee to comply with U.S. Trustee's operating guidelines and to provide information to the U.S. Trustee's office;

- Timely filed their monthly operating reports; and

- Responded to countless consumer borrower and other inquiries related to the status of these cases, specific contract counterparty demands, and other matters related to ongoing operations and the administration of these cases.

28.    Notwithstanding the significant progress that has been made to date, as a precautionary measure, the Debtors seek the relief set out herein to ensure that the considerable progress already achieved does not unravel by the loss of exclusivity. Under these circumstances, the requested extensions of the Exclusive Periods are necessary and appropriate to afford the Debtors the opportunity to achieve the objectives of chapter 11 as contemplated by section 1121 of the Bankruptcy Code.

WEIL:\97130807\1\41703.0011

**C. The Debtors Are Not Seeking to Use Exclusivity to Pressure Creditors To Submit To The Debtors' Demands**

29. Courts may consider practical factors in determining that "cause" exists to extend the Exclusive Periods. *See In re Borders Group, Inc.*, 460 B.R. at 827-28 (noting that it was important for the Court to consider practical factors in refusing to terminate exclusivity). Refusing to grant this Motion and extend the Exclusive Periods at this stage would adversely affect the Debtors' administration of these chapter 11 cases and undo the Debtors' hard won achievements to date.

30. The Debtors' relationship with their stakeholders and respective professionals, is transparent, cooperative, and constructive. The Debtors' conduct in these chapter 11 cases, in particular, and the support of their key stakeholders, demonstrates that the Debtors are acting in a prudent and transparent manner and are not seeking these extensions to delay artificially the administration of these chapter 11 cases. The Debtors have engaged extensively with the foregoing parties and will continue to do so in an attempt to achieve a fully consensual chapter 11 plan. The request for extending the Exclusive Periods is not a negotiation tactic. Indeed, many parties have filed objections to the Plan and will have a full opportunity to be heard as to their objections if they cannot be consensually resolved. The Debtors intend to continue to work constructively with all other constituents—including the Consumer Creditors' Committee—to seek a consensual confirmation of the Plan.

31. Finally, this Motion is without prejudice to any party seeking to shorten the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code. *See* 11 U.S.C. § 1121(d). As such, no party in interest will be prejudiced if the requested extensions are approved.

**D. Important Contingencies Must Be Resolved By The Debtors**

32.     Courts have recognized the need to resolve important contingencies as justification for extending the Exclusive Periods. *See, e.g.*, *Borders*, 460 B.R. at 826; *Adelphia Commc'n*s, 352 B.R. at 587. Here, the Debtors' confirmation hearing is scheduled for August 7, 2019—only three (3) days before the expiration of the current Exclusive Filing Period. The Debtors request an extension of the Exclusive Periods so that they are able to consummate the Sale Transaction without needing to worry about a competing plan being filed by creditors in the event the confirmation process is slightly delayed for any reason.

33.     The extension of the Exclusive Periods as requested will not prejudice any party in interest, but rather will afford the Debtors a realistic opportunity to pursue approval of the Sale Transaction and the Plan. Failure to extend the Exclusive Periods as requested herein would defeat the very purpose of section 1121 of the Bankruptcy Code, *i.e.*, to provide the Debtors with a meaningful and reasonable opportunity to propose and pursue a confirmable chapter 11 plan.

**E. The Debtors Are Making Required Postpetition Administrative Expense**

34.     Courts considering an extension of exclusivity also may assess a debtor's liquidity and ability to pay costs and expenses of administration. *Adelphia Commc'ns*, 352 B.R. at 587; *Texaco*, 76 B.R. at 322. The Debtors are paying their administrative expenses as they come due, and will continue to do so.

**F. Relatively Little Time Has Elapsed Since These Chapter 11 Cases Were Commenced**

35.     Less than six (6) months have passed since the Commencement Date. This is the Debtors' second request for an extension of the Exclusive Periods. Courts in this District routinely grant similar requests by debtors to extend their exclusive periods to file and

solicit a chapter 11 plan. *See, e.g., In re Sears Holdings Corp.*, No. 18-23538 (Bankr. S.D.N.Y. June 25, 2019) (ECF No. 4353) (initially granting the debtors' request for a four-month extension of the exclusive periods, and subsequently granting the debtors' request for an additional two-month extension of the exclusive periods); *In re Tops Holding II Corp.*, No. 18-22279 (Bankr. S.D.N.Y. Oct. 24, 2018) (ECF No. 715) (initially granting the debtors' request for a four-month extension of the exclusive periods, and subsequently granting the debtors' request for an additional three-month extension of the exclusive periods). For all of the reasons set forth above, the facts and circumstances of this case demonstrate that sufficient cause exists to grant the requested relief.

## Conclusion

36.    For the reasons stated herein, the requested extension of the Exclusive Periods is warranted and necessary to afford the Debtors a full opportunity to complete the chapter 11 process and confirm the Plan, as contemplated by section 1121 of the Bankruptcy Code. Accordingly, the Exclusive Periods should be extended as requested.

## Notice

37.    Notice of this Motion will be provided in accordance with the procedures set forth in the *Order Implementing Certain Notice and Case Management Procedures* (ECF No. 211) (the "**Case Management Order**"). The Debtors respectfully submit that no further notice is required.

38.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: July 24, 2019
      New York, New York

/s/ Sunny Singh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh

*Attorneys for Debtors
and Debtors in Possession*

WEIL:\97130807\1\41703.0011

**<u>Exhibit A</u>**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

                            :

In re                            :      **Chapter 11**

                            :

**DITECH HOLDING CORPORATION**, *et al.*,   :      **Case No. 19-10412 (JLG)**

                            :

              Debtors.[1]     :      **(Jointly Administered)**

                            :      Related Docket No. [_]

-------------------------------------------------------------X

## ORDER PURSUANT TO SECTION 1121(d) OF THE
## BANKRUPTCY CODE FURTHER EXTENDING THE EXCLUSIVE PERIODS

Upon the motion, dated July 24, 2019 (the "**Motion**")[2] of Ditech Holding

Corporation (f/k/a Walter Investment Management Corp.) and its debtor affiliates, as debtors and

debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**")

pursuant to section 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), for

entry of an order further extending the Debtors' exclusive periods in which to file a chapter 11

plan (the "**Exclusive Filing Period**") and solicit acceptances thereof (the "**Exclusive**

**Solicitation Period**," and together with the Exclusive Filing Period, the "**Exclusive Periods**"),

all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion

and the relief requested therein pursuant to 28 U.S.C. §§ 157and 1334, and the Amended

Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and

venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion having been provided to the Notice Parties in accordance with the

Case Management Order; and such notice having been adequate and appropriate under the

circumstances, and it appearing that no other or further notice need be provided; and the Court

having reviewed the Motion; and the Court having held a hearing on the Motion to consider the

relief requested in the Motion on August 7, 2019 (the "**Hearing**"); and upon the record of the

Hearing; and the Court having determined that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and it appearing that the relief requested in the

Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest;

and upon all of the proceedings had before the Court and after due deliberation and sufficient

cause appearing therefor,

## IT IS HEREBY ORDERED THAT

1.      The Motion is granted to the extent set forth herein.

2.      Pursuant to section 1121(d) of the Bankruptcy Code, the Debtors'
Exclusive Filing Period in which to file a chapter 11 plan is extended through and including
October 10, 2019.

3.      Pursuant to section 1121(d) of the Bankruptcy Code, the Debtors'
Exclusive Solicitation Period in which to solicit acceptances of their chapter 11 plan is extended
through and including December 9, 2019.

4.      The extensions of the Exclusive Periods granted herein are without
prejudice to such further requests that may be made pursuant to section 1121(d) of the

WEIL:\97130807\1\41703.0011

Bankruptcy Code by the Debtors or any party in interest, for cause shown, upon notice and a hearing.

5.      Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

6.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

7.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2019
       New York, New York

       _____
       THE HONORABLE JAMES L. GARRITY, JR.
       UNITED STATES BANKRUPTCY JUDGE

3