WILLIAM K. HARRINGTON
United States Trustee for Region 2
201 Varick Street, Suite 1006
New York, New York 10014
Telephone: (212) 510–0500
By: Greg M. Zipes
    Benjamin J. Higgins
    Trial Attorneys

HEARING DATE:  December 12, 2019
HEARING TIME:   11:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
In re                                          :
                                               :
                                               :  Case No. 19-10412 (JLG)
DITECH HOLDING                                 :
CORPORATION, *et al.*,                         :  Chapter 11
                                               :
              Debtors.                         :  (Joint Administration)
                                               :
---------------------------------------------------------x

### OBJECTION AND RESPONSE OF THE UNITED STATES TRUSTEE REGARDING FINAL FEE APPLICATIONS

TO:    THE HONORABLE JAMES L. GARRITY,
       UNITED STATES BANKRUPTCY JUDGE:

       William K. Harrington, the United States Trustee for Region 2 (the "United States

Trustee"), respectfully submits this omnibus response to the final fee applications (the "Final

Applications") of the retained professionals (the "Retained Professionals"), seeking awards of

compensation and reimbursement of out-of-pocket expenses in the above-captioned chapter 11

cases of Ditech Holding Corporation and its affiliated debtors (collectively, the "Debtors"):

| Debtors' Professional Name | Period | Fees | Expenses |
|---|---|---|---|
| Weil, Gotshal & Manges LLP (Counsel to Debtors), Dkt. No. 1618 | 2/11/19-9/30/19 | $17,852,574.20 | $443,873.08 |
| Houlihan Lokey Capital, Inc. (Investment Banker for the Debtors), Dkt. No. 1608 | 2/11/19-9/30/19 | $11,525,000.00 | $65,718.37 |

| | | | |
|---|---|---|---|
| AlixPartners, LLP (Financial Advisor for the Debtors), Dkt. No. 1609 | 2/11/19- 9/30/19 | $6,367,263.50 | $198,714.55 |
| PricewaterhouseCoopers LLP (Tax, Valuation, and Accounting Consultants for the Debtors), Dkt. No. 1612 | 2/11/19- 9/30/19 | $705,061.90 | $10,491.62 |
| Ernst & Young LLP (Auditor and Tax Advisor for the Debtors), Dkt. No. 1610 | 2/11/19- 9/30/19 | $2,677,929.00 | $74,118.17 |
| Orrick, Herrington & Sutcliff LLP (Special Securitization Counsel for Debtors), Dkt. No. 1593 | 4/1/19- 9/30/19 | $942,379.49 | $3,476.45 |
| Bradley Arant Boult Cummings LLP (Special Counsel for Debtors), Dkt. No. 1613 | 2/11/19- 9/30/19 | $2,108,526.06 | $13,329.14 |
| Protiviti Inc. (Business Consultant for Debtors), Dkt. No. 1611 | 2/11/19- 9/30/19 | $86,258.00 | $0 |
| Epiq Corporate Restructuring, LLC (Administrative Agent), Dkt. No. 1607 | 2/11/19- 9/30/19 | $49,158.00 | $0 |

| Unsecured Creditors Committee's Professional Name | Period | Fees | Expenses |
|---|---|---|---|
| Pachulski Stang Ziehl & Jones LLP (Counsel to the Committee) | 2/26/19- 9/30/19 | $2,105,085.00 | $41,074.39 |
| Goldin Associates, LLC (Financial Advisor to the Official Committee of Unsecured Creditors), Dkt. No. 1568 | 2/26/19- 9/30/19 | $1,397,945.00 | $6,907.70 |
| Rich Michaelson Magaliff, LLP (Special Industry Counsel to the Official Committee of Unsecured Creditors), Dkt. No. 1547 | 2/26/19- 9/30/19 | $365,880.00 | $7,803.15 |
| Sonya Davis (Pro Se), Dkt. No. 1507 | 3/19- 11/14/19 | $1,800 | $1,750.00 |

| | | | |
|---|---|---|---|
| Expenses of Unsecured Creditors' Committee, Dkt. No. 1569 | 2/26/19-9/30/19 | | $2,926.24 |
| | | | |

| Consumer Creditors Committee's Professional Name | Period | Fees | Expenses |
|---|---|---|---|
| Quinn Emanuel Urquhart & Sullivan, LLP (Counsel to the Official Committee of Consumer Creditors), Dkt. No. 1619 | 5/6/19-9/30/19 | $2,489,506.75 | $87,092.32 |
| TRS Advisors LLC (Financial Advisor to the Official Committee of Consumer Creditors), Dkt. No. 1615 | 5/6/19-9/30/19 | $616,666.67 | $13,528.61 |
| Osler, Hoskin & Harcourt LLP (Special Corporate and Tax Counsel to the Official Committee of Consumer Creditors), Dkt. No. 1617 | 6/6/19-9/30/19 | $63,410.80 | $255.51 |
| Tara Twomey (Special Consumer Counsel to the Official Committee of Consumer Creditors), Dkt. No. 1614 1614 | 6/13/19-9/30/19 | $108,730.00 | $13,232.59 |
| Application for Reimbursement of Expenses Incurred by Committee Members (Official Committee of Consumer Creditors), Dkt. No. 1576 | 5/2/19-9/30/19 | 0 | $15,961.64 |
| | **Totals** | $49,461,374.37 | $998,503.53 |

## OBJECTION AND RESPONSE

At the outset, the United States Trustee acknowledges the difficult challenges facing the Debtors and the Committees (defined below) over the course of these cases. But even in large, complex cases, professionals are expected to maintain the same billing judgment and efficiency that they would in any other chapter 11 case. In particular, under 11 U.S.C. § 330, professionals should ensure that they only bill for services and expenses that are "reasonable," "necessary," and "beneficial" to the client; that they exercise billing judgment that is comparable to what would be expected of them by a client outside of bankruptcy; and that their requests for fees and expenses are consistent with all applicable fee guidelines and orders.

The United States Trustee has identified several major areas of concern based on his review of the Final Applications. The Final Applications reflect numerous instances of questionable billing judgment and overstaffing, and in some instances, professionals appear to have simply disregarded the Local Guidelines, as set forth below.

## BACKGROUND

1.      On February 11, 2019 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

2.      The United States Trustee appointed an Official Committee of Unsecured Creditors (the "Unsecured Creditors' Committee") on February 27, 2019 and an Official Committee of Consumer Creditors (the "Consumer Committee" and together with the Unsecured Creditors' Committee, the "Committees") on May 2, 2019. Dkt. Nos. 127 and 498, respectively.

3.      The Debtors filed, on March 5, 2019, a proposed plan of reorganization, as subsequently amended, and related disclosure statement. *See* Dkt. Nos. 145, 146. Also on

March 5, 2019, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Approving Disclosure Statement and Notice of Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling Sale and Confirmation Hearing, (IV) Approving Sale and Confirmation Objection Procedures and Notice of Sale and Confirmation Hearing, (V) Approving Bidding Procedures, (VI) Approving Assumption and Assignment Procedures, and (VII) Granting Related Relief* [Dkt. No. 147] (the "Disclosure Statement and Bidding Procedures Motion").  The Disclosure Statement and Bidding Procedures Motion sought, among other things, the approval of bidding procedures governing the sale of assets pursuant to section 363 of the Bankruptcy Code (the "Bidding Procedures").  The Bidding Procedures were approved on April 23, 2019.  *See Order (I) Approving the Bidding Procedures, (II) Approving Assumption and Assignment Procedures, and (III) Granting Related Relief* (the "Bidding Procedures Order"). Dkt. No. 456.

4.        On May 10, 2019, the Debtors filed the *Amended Joint Chapter 11 Plan of Ditech Holding Company and Its Affiliated Debtors*.  Dkt. No. 542.

5.        On May 10, 2019, the Court entered the *Order (I) Approving Disclosure Statement and Notice of Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling Confirmation Hearing, (IV) Approving Confirmation Objection Procedures and Notice of Confirmation Hearing, and (V) Granting Related Relief*.  Dkt. No. 544.

6.        On June 18, 2019, pursuant to the Bidding Procedures Order, the Debtors filed the (a) *Notice of Designation of Stalking Horse Bid and Request for Stalking Horse Bid Protections (Forward Business)* related to the sale of the Debtors' forward mortgage business (the "Forward Business"); and the (b) *Notice of Designation of Stalking Horse Bid and Request for Approval of*

*Stalking Horse Bid Protections (Reverse Business)* related to the sale of the Debtors' reverse mortgage business (the "Reverse Business").  Dkt. Nos. 722 and 724, respectively.

7.      On July 30, 2019, the Debtors filed the *Second Amended Joint Chapter 11 Plan of Ditech Holding Company and Its Affiliated Debtors* (the "Second Amended Plan").  Dkt. No. 1032.

8.      On August 14, 2019, the United States Trustee appointed a consumer privacy ombudsman (the "Ombudsman") pursuant to 11 U.S.C. § 332.  Dkt. No. 1159.  The Court subsequently approved this appointment on August 20, 2019.  Dkt. No. 1206.

9.      On August 28, 2019, the Court issued the *Memorandum Decision on Confirmation of the Second Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, in which the Court denied confirmation of the Debtors' Second Amended Plan.  *See* Dkt. No. 1240.

10.     On September 11, 2019, the Debtors filed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (the "Plan") and the *Disclosure Statement Supplement for the Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (the "Disclosure Statement").  Dkt. No. 1287.  On September 26, 2019, the Court entered the *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors*.  Dkt. No. 1404.

11.     In accordance with 11 U.S.C. § 332, the Ombudsman filed the (a) *Report of the Consumer Privacy Ombudsman* with respect to the Forward Business on August 28, 2019 [Dkt. No. 1237], and (b) *Report of the Consumer Privacy Ombudsman* with respect to the Reverse Business on September 25, 2019 [Dkt. No. 1379], wherein she made specific recommendations

regarding the scope of personally identifiable information to be sold as part of the sale of the

Forward Business and the Reverse Business.

12.    On September 30, 2019, the Debtors consummated the sale transaction for the

Reverse Business.  On October 1, 2019, the Debtors consummated the sale transaction for the

Forward Business.  *See Notice of Consummation of Sale Transactions Under Forward Stalking*

*Horse Purchase Agreement and Reverse Stalking Horse Purchase Agreement* [Dkt. No. 1463].

## **LEGAL STANDARDS**

**I.    Reasonableness of Fees**

Bankruptcy Code Section 330(a)(1) provides that:

> After notice to the parties in interest and the United States trustee and a hearing, and subject to section 326, 328, and 329, the court may award to a trustee, … an examiner, … or a professional person employed under section 327 or 1103 –
>
> (A)    reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, … or attorney and by any paraprofessional person employed by any such person; and
>
> (B)    reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

Section 330 of the Bankruptcy Code focuses on reasonableness and benefit to the estate

of the professionals' services.  *In re Lederman Enter., Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993);

*In re Fibermark, Inc.*, 349 B.R. 385, 396 (Bankr. Vt. 2006).  Accordingly, an application for

compensation and reimbursement of expenses must demonstrate that the professional's services

were necessary and conferred a benefit to the estate or its creditors.  *In re Engel*, 124 F.3d 567,

573 (3d Cir. 1997) (citing *In re Arkansas Co., Inc.* 798 F.2d 645, 650 (3d Cir. 1986) (other

citation omitted)).

Each applicant bears the burden of proof in all fee matters. *In re Northwest Airlines Corp.*, 400 B.R. 393, 398 (Bankr. S.D.N.Y. 2009) (*citing In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997)); *In re JLM, Inc.*, 210 B.R. 19, 24 (B.A.P. 2d Cir. 1997). The failure of an applicant to sustain the burden of proof as to the reasonableness of the compensation may result in the denial of the request for compensation. *In re Beverly Mfg. Corp.*, 841 F.2d 365 (11th Cir. 1988).

The Court has an independent burden to review fee applications "lest overreaching … professionals drain [the estate] of wealth which by right should inure to the benefit of unsecured creditors." *Keene Corp.*, 205 B.R. at 695 (*quoting In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 844 (3d Cir. 1994)). Under Section 330 of the Bankruptcy Code, the Bankruptcy Court has the authority to reduce fees or expenses when they are disproportionate to the benefit to the estate, even if it already has approved the professional's retention under Sections 327 and 328 of the Bankruptcy Code. *In re Taxman Clothing Co.*, 49 F.3d 310, 316 (7th Cir. 1995); *see also Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 262-63 (3d Cir. 1995) (affirming lower courts' denial of improperly documented and inadequately detailed expenses).

## II.    Actual and Necessary Expenses

Under Section 330(a)(1)(B) of the Bankruptcy Code, only documented expenses that are actual and necessary are reimbursable. 11 U.S.C. § 330(a)(1)(B). Professionals must "furnish enough specificity for the Court to establish whether a given expense was both actual and necessary." *In re Korea Chosun Daily Times, Inc.*, 337 B.R. 758, 769 (Bankr. E.D.N.Y. 2005) (quoting *In re S.T.N. Enters., Inc.*, 70 B.R. 823, 834 (Bankr. D. Vt. 1987)). Expenses are "actual" if they are incurred and not based on a formula or *pro rata* calculation. *In re Bennett Funding Group, Inc.*, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997). Expenses are "necessary" if

they were "reasonably needed to accomplish proper representation of the client." *In re American Preferred Prescription, Inc.*, 218 B.R. 680, 686-87 (Bankr. E.D.N.Y. 1998).

## OBJECTIONS AND RESPONSES

### A.    Debtors' Professionals

### Weil Gotshal & Manges LLP

#### The Applicant Fails To Meet Its Burden To Demonstrate Its Fees are Reasonable

The Applicant has provided a helpful and thorough chart listing its customary and comparable compensation.  *See* Final Fee Application at Exhibit B, Docket No. 1618.  That chart demonstrates that the Applicant's blended hourly rate for these cases is more than it customarily charges other clients.  *Id.*

### Exhibit B

#### Customary and Comparable Compensation Disclosures

| Category of Timekeeper | Blended Hourly Rate | |
|---|---|---|
| | Billed by timekeepers in the New York offices, excluding bankruptcy[1] | Billed in this fee application |
| Partner | $1,211.00 | $1,327.00 |
| Counsel | $969.00 | $1,059.00 |
| Senior Associate (7 years or more since first admission) | $907.00 | $994.00 |
| Mid-level Associate (4-6 years since first admission) | $823.00 | $917.00 |
| Junior Associate (0-3 years since first admission) | $606.00 | $678.00 |
| Paralegal | $308.00 | $297.00 |
| Other | $297.00 | $362.00 |
| All timekeepers aggregated | $817.00 | $820.00 |

The Applicant charged a blended hourly rate for partners in these cases that is $116 higher than it charges other clients.  *Id.*  The Applicant also charged significantly more for associates in these cases than it charges its non-bankruptcy clients.  *Id.*  In short, except for the

category of "Other" non-legal professionals, the Applicant charged a blended hourly rate for each category of individuals working on these cases that is higher than it charges its non-bankruptcy clients. *Id.* The Applicant does not offer an explanation for these increased rates.

Section 330(a)(3)(f) of the Bankruptcy Code provides that the reasonableness of a fee must take into consideration "the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." 11 U.S.C. § 330(a)(3)(f).

Bankruptcy courts in the Second Circuit review fee applications under a market driven approach. *See Residential Capital, LLC*, 504 B.R. 358, 368 (Bankr. S.D.N.Y. 2014). Fees awarded in bankruptcy cases must be commensurate with fees awarded in non-bankruptcy matters. *See XO Commc'ns, Inc.* (*XO Commc'ns I*), 332 B.R. 330, 343 (Bankr S.D.N.Y. 2005) (*citing Ames Dep't Stores*, 76 F.3d 66, 71 (2d Cir. 1996)(noting that when Congress enacted section 330, it took the "the position that 'compensation in bankruptcy matters be commensurate with the fees awarded in non-bankruptcy cases'"); *In re Bennett Funding Grp., Inc.*, 213 B.R. 234, 250 (Bankr. N.D.N.Y. 1997)(courts should rely on the market of comparable legal services to assist in determining the level of compensation to be awarded).

A firm's rates should not increase simply because the client files for bankruptcy or restructuring attorneys are assigned to the matter. *See In Re Flemings Companies, Inc*., 304 B.R. 85, 92-93 (Bankr. D. Del 2003)(in reviewing hourly rates charged by firm's bankruptcy professionals, court held that rates must be commensurate with those charged by other practice areas); *see also Burgess v. Klenske (In re Manoa Fin. Co., Inc.)* 853 F.2d 687, 690 (9th Cir. 1988) ("Congress did not intend to authorize higher compensation than attorneys would receive for comparable non-bankruptcy services"); *cf. In re Raytech Corp.*, 241 B.R. 785, 790 (D. Conn 1999)(in determining hourly rate for travel time, court held that pegging hourly rate to that paid

by clients for similar services outside bankruptcy provides assurance that the estate is paying

competitive, but not premium prices).  It is the Applicant's burden to demonstrate the

reasonableness of its requested fees.  Absent a sufficient justification for the discrepancy

between the rates charged in these cases and the rates the Applicant charges its non-bankruptcy

clients, the requested fees should not be approved.

**Budget**: The Applicant's Final Fee Application sets forth the budgeted and actual fees

and expenses for the period from July 1, 2019 through September 30, 2019 at Exhibit C:

---

19-10412-jlg   Doc 1618   Filed 11/14/19   Entered 11/14/19 23:58:03   Main Document
Pg 49 of 1804

### Exhibit C

**Budgeted and Actual Fees and Expenses**

|  | Budget for Fees and Expenses | Actual Fees and Expenses |
|---|---|---|
| July 1, 2019 through July 31, 2019 | $3,250,000.00 | $2,165,836.40 |
| August 1, 2019 through August 31, 2019 | $2,900,000.00 | $2,280,530.83 |
| September 1, 2019 through September 30, 2019 | $2,700,000.00 | $2,583,321.75 |
| **Total** | **$8,850,000.00** | **$7,029,688.98** |

---

The Applicant's budget was not broken down into specific project or task categories as

is customary for large chapter 11 cases.  When budgets set forth specific estimates for

commonly used project or task categories, they can be effective tools toward focusing the scope

of the engagement and promoting efficiency in staffing.  An aggregated budget, such as the

Applicant's budget, that does not identify individual components or tasks (while better than

having no budget at all), is not the equivalent of an itemized budget.

The utility of the itemized budget is as much about the process itself as the end number,

as it forces the professionals and the client to consider concerns of case management and

efficiency upfront and as the case progresses.  Aggregated budgets do not bring the same level

of discipline and accountability into the case management process.  For example, if counsel

greatly exceeded the budget for one area of work but was within the overall budget, that

information would be helpful to know in reviewing the reasonable of the requested fees.  There

may be a reasonable explanation for the variation, or there may not.

Presumably the aggregated budget number in the Applicant's budget was based on some

assessment by counsel of the anticipated work and the relative time and effort required to

accomplish each part of the engagement.  The Applicant should disclose this information.

### Specific Objections

The Applicant has provided its time records and supporting searchable electronic data to

the United States Trustee's office.  The United States Trustee has reviewed this information and

provided comments to this Applicant.  The concerns are as follows:

A. **Block billing:**  Block billing, also known as "lumping," is the practice of using a

single time entry, or a single segment of a time entry, to describe two or more discrete

tasks without specifying the total time spent on each task.  Block billing is often

objectionable because it prevents a reviewer from accurately evaluating the efficiency

and necessity of the timekeeper's work and because it raises questions about whether

time has been recorded contemporaneously and accurately.  *See Robinson v. City of

Edmund*, 160 F.3d 1275 (10th Cir. 1998).  In particular, block billing may occur when

a timekeeper combines the time for a task and related correspondence or discussions

about the task, when a time entry combines multiple communications, or when a

timekeeper combines time for preparation for an activity with the activity itself,

without specifying how much time was spent on each.  Although block billing may be

appropriate where the combined time value of the tasks is *de minimis*, the United

States Trustee may object to block billing in longer time segments or entries.

Although the Applicant's Final Fee Application contained many instances of

block billing, the United States Trustee identified only those time records with block

billing of 2.5 hours or greater. And for these time entries, the United States Trustee

requests a reduction of 20 percent. For example, on February 13, 2019, one of the

Applicant's professionals billed a single eight-hour entry for preparing for and

attending a hearing without indicating how much time was spent on each activity. On

May 29, 2019, one of the Applicant's professionals billed a single 5.2-hour entry for

multiple calls as well as "related prep and follow-up." On September 10, 2019, one

professional billed a single 3.8-hour entry for multiple discussions and to "review

materials." The time entries with the block billing issues are attached as Exhibit <u>A</u>.

The United States Trustee requests a total reduction sought: **<u>$65,082</u>**.

B. **<u>Vague entries</u>:** A vague entry is a fee entry that does not contain sufficient detail for

a reviewer to assess the reasonableness, necessity, or benefit to the client of the fee.

In particular, fees may be objectionable if they do not identify the subject of the task

performed: thus, entries such as "discuss research" or "review draft motion" may be

objectionable to the extent that they do not identify the specific issue, pleading, or

document being worked on. Similarly, fees may be objectionable if they contain

terms such as "attention to" or "work on" without explaining the exact type of work

being performed by the timekeeper. Fee entries which describe correspondence,

meetings, or other communications also may be objectionable if they do not identify

the other parties to those communications. Finally, vague entries may be

13

objectionable if they contain identical boilerplate language to describe the

timekeeper's work, without differentiating the work performed under each entry.

Here, the Applicant's Final Application contains many instances of vague entries.

For example, the following fee entries or segments do not adequately describe the

subject of the task being performed:

| | |
|---|---|
| 2/22/19: | CALL WITH LITIGATION TEAM |
| 3/30/19: | REVIEW AGREEMENTS |
| 4/16/19: | REVIEW MOTION AND EMAILS TO [other timekeeper], OTHERS RE: SAME |
| 4/27/09: | CORRESPOND AND COORDINATE WITH INTERNAL TEAM |
| 5/13/19: | DISCUSSION WITH [other timekeepers] |
| 5/27/19: | REVIEW MEMO |

Additionally, the following fee entries or segments are examples of the

Applicant's fee entries that do not adequately describe the task being performed:

| | |
|---|---|
| 2/12/19: | TAX PLANNING |
| 2/27/19: | PLAN ISSUES AND STRUCTURING |
| 4/11/19: | ATTENTION TO MATTERS RE: NDAS |
| 9/25/19: | ATTENTION TO IP RELEASES |

Additionally, the following fee entries or segments are examples of the

Applicant's fee entries that do not identify the parties to communications:

| | |
|---|---|
| 3/1/19: | CALL RE: UNENCUMBERED ASSETS |
| 5/17/19: | CORRESPONDENCE AND UPDATES ON THE ESCROW AGREEMENTS |
| 6/5/19: | CORRESPONDENCE RE: SALE ISSUES |

14

6/9/19:          CALL REGARDING DISCLOSURE SCHEDULES

9/21/19:         EMAILS RE DRAFT FILINGS

Finally, the Final Application contains numerous instances of boilerplate entries or repeated language to describe a timekeeper's work.  For example, there are at least five entries by the same timekeeper, each at least an hour in length, described simply as "RESPOND TO CASE EMAILS."  Similarly, one of the Applicant's timekeepers billed for "WORK WITH LEGAL TEAM TO PROVIDE DOCUMENTS FOR REVIEW" for separate time entries of 1.2 hours, 7.2 hours, 4.3 hour, 2.1 hours, 6.3 hours, 6.8 hours, 2.9 hours, 3.6 hours, 1.45 hours, 1.8 hours, and 1.9 hours.

In sum, for the vague time entries identified of at least 1 hour, the United States Trustee requests a reduction by 50 percent.  The total requested reduction is: **$374,824**. The time entries with the vagueness issues are attached as Exhibit B.

C. **Conference staffing:**  Professionals should exercise billing judgment by limiting the amount of time that is billed to internal conferences involving multiple timekeepers. Particularly in the case of larger conferences, the Applicant should be prepared to justify the necessity both of billing for the conference as well as each timekeeper's participation.  The United States Trustee has identified conferences for which an excessive number of timekeepers appear to have been billed.  These conferences should be limited to four professionals.  This total in excess of this time: **$11,175**. The time entries with conferences with more than four attorneys are attached as Exhibit C.  The United States Trustee did *not* object to court staffing decisions, even though it appears in numerous instances that four (or more) professionals billed to attend routine hearings.

**Summary of Specific Fee Objections:**  In some cases, a particular fee entry may be objectionable on multiple grounds.  In such cases, the United States Trustee has sought only a single fee reduction. The total fee reduction fee sought is: **$451,081**.

**Expenses:**  The United States Trustee has found expenses (meals and local travel) for days in which professionals billed for fewer than four hours.  These expenses are attached as Exhibit D.  The United States Trustee requests a **$25,000** reduction in expenses to account for these entries.

## Houlihan Lokey Capital, Inc.

The Applicant billed on a flat fee basis.  Typically, expenses such as car service and meals must correspond to work-days.  Without typical time records, the United States Trustee is unable to confirm that the Applicant is properly apportioning expenses.  The United States Trustee has been in communication with the Applicant and understands that the Applicant will reduce its expense requests for days that professionals worked for fewer than four hours on the cases.

## AlixPartners, LLP

Certain professionals charged more than $500 per night for hotels.  The total expenses should be reduced to reflect a maximum of $500 per night.  The United States Trustee has been in communication with the Applicant and understands that the Applicant will reduce its expense requests consistent with the United States Trustee's request.

**Bradley Arant Boult Cummings LLP**

In connection with concerns raised by the United States Trustee regarding charges for meals exceeding the $20 per meal maximum set forth in fee guidelines for the Southern District of New York ("Fee Guidelines"), the Applicant has reduced its expenses so that no meal was billed at more than $20 per meal per person.

**No objections:**

PricewaterhouseCoopers LLP
Ernst & Young LLP
Orrick, Herrington & Sutcliff LLP
Protiviti Inc.
Epiq Corporate Restructuring, LLC

The United States Trustee has no objection to the fees and expenses of these Applicants.

**B.      Creditors' Committee Professionals**

**Pachulski Stang Ziehl & Jones LLP**

The Applicant has provided its time records and supporting searchable electronic data to the United States Trustee's office.  The United States Trustee has reviewed this information and provided comments to this Applicant.  The concerns are as follows:

A. **Vague entries:**  As detailed above, a vague entry is a fee entry that does not contain sufficient detail for a reviewer to assess the reasonableness, necessity, or benefit to the client of the fee.  Although there were many instances of vague billing, the United States Trustee has only identified time records of more than one hour.  For those time entries, the United States Trustee has sought a discount of 50 percent.  The total discount sought is $53,653.25.  The vague time entries are attached as Exhibit E.

B. **Transitory Professionals and Grazing:** "Transitory" professionals are professionals who bill a relatively small number of hours to the case.  While the use of such

professionals may be appropriate in some circumstances, this practice may be objectionable for two reasons: first, because transitory professionals often lack familiarity with the case, the fees for their services may be of questionable benefit to the client relative to other timekeepers.  Secondly, new timekeepers will often find it necessary to spend time reviewing case background materials in order to understand their assignment, resulting in unnecessary fees that could have been avoided by delegating the assignment to another timekeeper.  Also objectionable is the related practice of "grazing," or billing non-productive time (such as attending meetings or reviewing correspondence) in a matter outside the timekeeper's general area of responsibility. In particular, the United States Trustee may object to non-productive tasks billed by a timekeeper in a matter where it does not appear that the timekeeper has performed any substantive services to the client.  For the same reasons, grazing may also occur when the entirety of a timekeeper's work within a category consists of "reviewing" or "analyzing" particular issues, where there is no apparent connection to any work product for the client.

The United States Trustee has identified certain time entries that appear to fall into these categories, as set forth on Exhibit F.  Absent further justification, the United States Trustee seeks a reduction of **$23,446.50**.

C. **Duplicate fee entries:** Absent some explanation, the Applicant must explain the following fees constituting duplication of time in the amount of **$5,679.50**.

| Date | Timekeeper | Narrative | Code | Hours | Matching Entry Narrative | Code | Match Hours | Duplicate Entries Amount | Duplicate Entry Segment Hours | Duplicate Entry Segment $ |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/19/2015 | Mikels,Richard | Review documents regarding plan. (3.2) | PD-Plan | 3.20 | [Line 2575] [6/19/2015] Review documents regarding plan. (3.2) | PD-Plan | 3.20 (whole entry match) | | 3.20 | $3,440.00 |
| 3/5/2019 | Orgel,Robert | Further revise DIP objection (1.6); preparation of message to R3M, Golden Associates and PSZJ team re draft objection (.5) | FN | 2.10 | [Line 198] [3/5/2019] Further revise DIP objection (1.6); further review DIP related documents and comments (.3); telephone conference with E. Collins, Golden Associates, etc. re DIP issues (.5); telephone conference with Robin D. re DIP issues (.3); review Golden discovery message, agreement list, and revise missing discovery list (.4) | FN | 3.10 | Further revise DIP objection | 1.60 | $1,752.00 |
| 3/8/2019 | Sandler,Bradford | Various emails with Weil regarding Houlihan Lokey retention (0.5) | RP | 0.50 | [Line 513] [3/8/2019] Various emails with Weil regarding Houlihan Lokey retention. (0.5) | RP | 0.50 | Various emails with Weil regarding Houlihan Lokey retention. (0.5) | 0.50 | $487.50 |

**Summary of Specific Fee Objections:** In some cases, a particular fee entry may be objectionable on multiple grounds. In such cases, the United States Trustee has sought only a single fee reduction. The total fee reduction fee sought is: **$82,779.40** (less than the total above, reflecting that some time entries fell under multiple categories).

**Expenses**: The United States Trustee identified any local travel of above $150, any airfare of above $1,000, any nightly hotel expenses of above $500 and any meal of above $20. The total requested expense reduction is **$2,001.26**.

## Goldin Associates, LLC

The Applicant did not attach time records to the fee application. However, the United States Trustee has reviewed the monthly fee statements. Many of these statements contain entries that are vague. The United States Trustee attaches the seventh monthly fee statement of Goldin Associates for the month of September 2019 (Dkt. No. 1508) as Exhibit G. Many of the entries do not provide sufficient detail to determine either the specific task performed or how the task was linked to substantive services provided to the client. For example, many of the time entries contained on the attached exhibit bill the estate to simply "review" various documents or

pleadings.   The United States Trustee requests that this Applicant supplement its time entries or accept an appropriate reduction.

**Rich Michaelson Magaliff, LLP**

The United States Trustee has had discussions with the Applicant.  The Applicant has significant time billed under "Case Administration." The parties have agreed to a **$10,000** reduction in fees to account for this time.

**Unsecured Creditors' Committee Expenses**

The United States Trustee has no objection to the reimbursement of expenses in the amount of $2,926.24.[1]

**Sonya Davis**

The United States Trustee understands that this Applicant is *pro se*.  However, she has provided no time records and was not retained order of the Court.  Absent further explanation, the Court should deny the Applicant's fees of $1,800 and expenses of $1,750.

C.    **Consumer Committee Professionals/Others**

**TRS Advisors LLC**

The United States Trustee has requested clarification of TRS's expenses in connection with "Legal Fees" of $3,886 and "Research/Database" of $8,934.10.  The United States Trustee hopes to have a resolution of this issue by the time of the hearing.

**No objection:**
Quinn Emanuel Urquhart & Sullivan, LLP
Osler, Hoskin & Harcourt LLP
Tara Twomey
Expenses Incurred Official Committee of Consumer Creditors

The United States Trustee has no objection to the fees and expenses of these Applicants.

---

[1] In the Application at ¶ 15, there is a reference to $15,990.62.  This appears to be an error.

### D.    Consumer Privacy Ombudsman

The United States Trustee has no objection to the payment of the fees and expenses of the

Ombudsman.

## CONCLUSION

**WHEREFORE,** the United States Trustee respectfully submits that the Court enter an

order (i) reducing the fees allowed to the Retained Professionals by the appropriate amounts, (ii)

reducing the reimbursement of expenses to the Retained Professionals by the appropriate

amounts, and (iii) granting such other relief as is just.

Dated: New York, New York
      December 5, 2019                              Respectfully submitted,

                                            WILLIAM K. HARRINGTON
                                            UNITED STATES TRUSTEE, REGION 2

By:    */s/ Greg M. Zipes*
          Greg M. Zipes
          Benjamin J. Higgins
          Trial Attorneys
          Office of the United States Trustee
          201 Varick Street, Suite 1006
          New York, NY 10014
          Tel. No. (212) 510-0500