**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**John P. Dell'Italia, Esq.**
**Dell'Italia & Santola**
**18 Tony Galento Plaza**
**Orange, NJ  07050**
**(973) 672-8000**
**JPD1617**

-------------------------------------------------x

In re:

Ditech Holding Corporation, et al

                                              Debtor

-------------------------------------------------x

Case No.:19-10412 (jlg)

Chapter:  11

## MOTION FOR RELIEF FROM THE
## AUTOMATIC STAY

**PLEASE TAKE NOTICE** that the undersigned attorney for the Movant/debtor Norma

Chin, shall move before the United States Bankruptcy Judge, Hon. James L. Garrity, Jr., 1

Bowling Green, New York, New York, 10004 on the ___ day of December, 2019 at ___ a.m., or

as soon thereafter as counsel may be heard, for the following relief:

       A.      For an Order to Vacate the Automatic Stay pursuant to 11 U.S.C. 362

(d) (1) and/or (2) to permit Norma Chin, debtor to proceed against the Secured

Creditor Ditech Holding Corporation et al and to strip its second lien from the

residential real property of the Debtor(s) known as 2609 Hamilton Avenue, Union,

New Jersey, 07083(hereinafter "Premises"), by Motion in the United States

Bankruptcy Court, District of New Jersey, Newark, New Jersey on December 5,

2019 and

       B.      For such other relief as is just.

NOV 2 1 2019

**STATEMENT OF NON-NECESSITY OF BRIEF**:  The Movant certifies pursuant to D.N.J. LBR 9013-2 that the within motion involves common questions of law and fact and does not involve complex or novel issues such as to require the submission of a legal brief.

**PLEASE TAKE FURTHER NOTICE** that in support of this Motion, counsel will rely upon the Certification of John P. Dell'Italia, attorney for the debtor and if there is no opposing papers filed, counsel will waive oral argument.

**DELL'ITALIA & SANTOLA**
**Attorneys for Plaintiff**

By: _____
John P. Dell'Italia, Esq.

Dated: November 13, 2019

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**John P. Dell'Italia, Esq.**
**Dell'Italia & Santola**
**18 Tony Galento Plaza**
**Orange, NJ   07050**
**(973) 672-8000**
**JPD1617**

```
------------------------------------------------x
```
In re:

Ditech Holding Corporation, et al

                                   Debtor
```
------------------------------------------------x
```

Case No.: 19-10412 (jlg)

Chapter: 11

**CERTIFICATION IN SUPPORT FOR RELIEF**
**FROM THE AUTOMATIC STAY**

John P. Dell'Italia, Esq. does hereby certify:

1.  I represent the debtor Norma Chin whom filed for Chapter 13 bankruptcy on September 19, 2019 under case 19-27911 in the Newark District of New Jersey.

2.  In the Chapter 13 Plan the debtor is curing arrears on the first mortgage over a 5 year period, however stripping the second lien by debtor Ditech Holding Corporation ("Ditech") pursuant to 11 U.S.C. § 1322(b)(2) and 11 U.S.C. §522(f). A copy of the plan, notice of confirmation and appraisal and service to the CEO of Ditech is attached as **Exhibit A.**

3.  On July 10, 2006, A mortgage was recorded in the Union County Register in Book M11759 at page 0849 by assignee MERS, as nominee for IndyMac Bank FSB served by Ditech Holding Corporation in the amount of $54,000.00. A copy is attached to this certification as **Exhibit B.**

4. On October 24, 2019, Ditech sent a letter stating that this debtor's loan had been settled in full. A copy of that letter is attached as **Exhibit C.**

5. There is no equity in the debtor's property and there are no objections filed by any party on behalf of the debtor Ditech.

6. The Trustee Marie Ann Greenberg adjourned the confirmation hearing until December 5, 2019, so the debtor can Vacate the Stay for purposes of continuing to confirmation.

7. In light of the above, the debtor prays that the Court grant the debtor Norma Chinn Relief from the Automatic Stay as to the debtor's mortgage loan by Ditech and the property known as 2609 Hamilton Terrace, Union, New Jersey.

I hereby certify that the foregoing statements made by me and the attached Local Form 16 are true. I am aware that if  any of the foregoing statements made by me are willfully  false, I am subject to punishment.

**DELL'ITALIA & SANTOLA**
**Attorneys for Plaintiff**

By: _____
    John P. Dell'Italia, Esq.

Dated: November 13, 2019

# Exhibit A

| | **Joanne Rajoppi,**<br>**Union County Clerk**<br>**Union County, New Jersey**<br>Recording Data Cover Page<br>Pursuant to N.J.S.A. 46:26A-5 | | Received & Recorded<br>Union County, NJ<br>9/12/2019 15:15<br>**Joanne Rajoppi**<br>**County Clerk**<br>Operator<br>ALZATE | Mortgage-2<br>Inst#    **678450**<br>Consider.        .00<br>RT Fee        .00 | Pgs-3 |

| **DATE OF DOCUMENT**<br>08/30/2019 | **TYPE OF DOCUMENT**<br>Gold Sealed Order |
|---|---|
| **FIRST PARTY NAME**<br>NORMA CHIN | **SECOND PARTY NAME**<br>DEUTSCHE BANK NATIONAL TRUST COMPANY<br>GSAA HOME EQUITY TRUST 2006-17 |
| **ADDITIONAL FIRST PARTIES** | **ADDITIONAL SECOND PARTIES** |

| **THE FOLLOWING SECTION IS REQUIRED FOR DEEDS ONLY** | |
|---|---|
| **BLOCK** | **LOT** |
| **MUNICIPALITY** | **CONSIDERATION** |
| **MAILING ADDRESS OF GRANTEE** | |

| **THE FOLLOWING SECTION IS FOR ORIGINAL MORTGAGE BOOKING & PAGING INFORMATION FOR ASSIGNMENTS, RELEASES, DISCHARGES & OTHER ORIGINAL MORTGAGE AGREEMENTS ONLY** | |
|---|---|
| **ORIGINAL BOOK**<br>11759 | **ORIGINAL PAGE**<br>829 |

| **UNION COUNTY, NEW JERSEY RECORDING DATA PAGE**<br>This cover page is for use in Union County, New Jersey only.<br>Please do not detach this page from the original document as it<br>contains important recording information and is part of the<br>permanent record. Forms available at clerk.ucnj.org |
|---|

M14594    0956



Received & Recorded  Mortgage-2
Union County, NJ     Inst#    408953
7/10/2006 1 0:29                       Pge-1 5
Joanne Rajoppi       Consider.      .00
County Clerk         RT Fee         .00
Operator
LETUNIC

After recording please return to: _                          ·t

Chicago Title  #1193319
ServiceLink Division
4000 Industrial Blvd
Aliquippa, PA 15001                      rite-400/500.

*[Street Address]*
Kansas City, MO 64131

*[City, State  Zip Code]*

*[Telephone No.]*

**Prepared by:**

*[Signature of Natural Person]*

Shane Hassler
*[Name of Natural Person]*

901 East 104th Street 5th Floor
*[Street Address]*

Kansas City, MO 64131
*[City, State  Zip Code]*

*[Telephone No.]*

_____[Space Above This Line For Recording Data]_____

# SECONDARY MORTGAGE LOAN

MIN 100055401237108420

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19, and 20.  Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A)    "Security Instrument" means this document, which is dated    June 27, 2006    , together with all Riders to this document.

(B)    "Borrower" is  Norma Chin, unmarried and Sharon Chin, married

Borrower is the mortgagor under this Security Instrument.
Loan No: 123710842

New Jersey Mortgage–Single Family–Secondary Mortgage Loan                    MERS Modified Form 3801 01/01
—THE COMPLIANCE SOURCE, INC.—                        Page 1 of 12      Modified By "The Compliance Source, Inc." 14102NJ 03/01 Rev. 12/05
www.compliancesource.com                                              © 2003, The Compliance Source, Inc.

(C)    "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D)    "**Lender**" is IndyMac Bank, F.S.B., a federally chartered savings bank.

Lender is a    Federal Savings Bank    organized and existing under the laws of    United States of America    . Lender's address is    155 North Lake Avenue, Pasadena, CA 91101

(E)    "**Note**" means the promissory note signed by Borrower and dated    June 27, 2006    . The Note states that Borrower owes Lender    fifty four thousand and NO/100ths
Dollars (U.S. $ 54,000.00    )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    July 1, 2021    .

(F)    "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(G)    "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, if allowed under Applicable Law, and all sums due under this Security Instrument, plus interest.

(H)    "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Home Improvement Rider | ☐ Revocable Trust Rider | |
| ☒ Other(s) [specify]   ID: First/Second Lien Balloon Rider | | |

(I)    "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)    "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)    "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)    "**Escrow Items**" means those items that are described in Section 3.

(M)    "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

Loan No: 123710842

New Jersey Mortgage–Single Family–Secondary Mortgage Loan
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 2 of 12

MERS Modified Form 3801 01/01
Modified By "The Compliance Source, Inc." 14102NJ 03/02 Rev. 12/05
© 2003, The Compliance Source, Inc.

(N)    "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)    "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)    "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)    "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

County                                of                      Union
[Type of Recording Jurisdiction]    [Name of Recording Jurisdiction]
See Exhibit A attached hereto and made a part hereof APN# L32 B4410

which currently has the address of                    2609 Hamilton Terrace
                                                      [Street]
         Union               ,  New Jersey    07083        ("Property Address"):
                            [City]            [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Other Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and if allowable under Applicable Law, any prepayment charges and late charges due under the Note. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

2. **Application of Payments or Proceeds.** Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14 or in such manner or location as required under Applicable Law. Except as otherwise described in this Section 2, and as permitted under Applicable Law, all payments accepted and applied by Lender shall be applied as set forth in the Note and then for any amounts due under Section 3.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. To the extent permitted by Applicable Law, voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Unless required by Lender, Borrower shall not be required to pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall not pay Lender the Funds for Escrow Items unless Lender notifies Borrower of Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 8. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 8 and pay such amount and Borrower shall then be obligated under Section 8 to repay to Lender any such amount. Lender may revoke the waiver as to any or all

Loan No: 1237l0842

New Jersey Mortgage–Single Family–Secondary Mortgage Loan
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 4 of 13
MERS Modified Form 3801 01/01
Modified By "The Compliance Source, Inc." 14302M 03/02 Rev. 12/05
© 2005, The Compliance Source, Inc.

Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender. If under Section 21 the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

4.   **Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument. Borrower shall pay when due, all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien other than a lien disclosed to Lender in Borrower's application or in any title report Lender obtained which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.

Lender may require Borrower to pay a one-time charge for real estate tax verification and/or reporting service used by Lender in connection with this Loan if allowed under Applicable Law.

5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or Loan No: 123710842

New Jersey Mortgage–Single Family–Secondary Mortgage Loan
—THE COMPLIANCE SOURCE, INC.—                          Page 5 of 12
www.compliancesource.com

MERS Modified Form 3801 01/01
Modified by "The Compliance Source, Inc." 14182NJ 03/03 Rev. 12/03
© 2003, The Compliance Source, Inc.

similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall be added to the unpaid balance of the loan and interest shall accrue at the Note rate, from the time it was added to the unpaid balance until it is paid in full.

Subject to Applicable Law, all insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage, or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Loan No: 1237I0842

New Jersey Mortgage-Single Family—Secondary Market Loan—THE COMPLIANCE SOURCE, INC.
MERS Modified Form 3801 01/01                    Page 6 of 11                    © 2001, The Compliance Source, Inc.
www.compliancesource.com

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

7. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

8. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which has or may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has or may attain priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument if allowed under Applicable Law. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

9. **Mortgage Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.

10. **Assignment of Miscellaneous Proceeds; Forfeiture.** The Miscellaneous Proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

Loan No: 123710842

New Jersey Mortgage–Single Family–Secondary Mortgage Loan
—THE COMPLIANCE SOURCE, INC.—                    Page 7 of 12                    MERS Modified Form 3801 01/01
www.compliancesource.com                                                          Modified By "The Compliance Source, Inc." 14182MU 03/02 Rev. 12/03
                                                                                  © 2002, The Compliance Source, Inc.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, as allowed under Applicable Law. The absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly

Loan No: 123710842

New Jersey Mortgage–Single Family–Secondary Mortgage Loan    MERS Modified Form 3801 01/01
—THE COMPLIANCE SOURCE, INC.—    Modified By "The Compliance Source, Inc." 14102NJ 03/03 Rev. 11/03
www.compliancesource.com    Page 8 of 12    © 2003, The Compliance Source, Inc.

requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, as allowed under Applicable Law; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under

Loan No: 123710842

New Jersey Mortgage–Single Family–Secondary Mortgage Loan          MERS Modified Form 3801 01/01
—THE COMPLIANCE SOURCE, INC—          Page 9 of 12          Modified By "The Compliance Source, Inc." 14162NJ 03/02 Rev. 12/05
www.compliancesource.com          © 2005, The Compliance Source, Inc.

the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, if required under Applicable Law, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this section. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

20. **Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in the Note or this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument,

Loan No: 123710842

New Jersey Mortgage–Single Family–Secondary Mortgage Loan
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 10 of 12

MERS Modified Form 3801 01/01
Modified By "The Compliance Source, Inc." 1418JNJ 03/02 Rev. 12/03
© 2001, The Compliance Source, Inc.

foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at §§ 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

23. **No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

**REQUEST FOR NOTICE OF DEFAULT**
**AND FORECLOSURE UNDER SUPERIOR** _____
**MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give Notice to Lender, at Lender's address set forth on page one of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

**— NOTICE TO BORROWER —**
**Read this promissory note or loan agreement before you sign.**
**Do not sign this promissory note or loan agreement if it contains blank spaces.**
**The promissory note or loan agreement is secured by a secondary mortgage on your real property.**

_____ [Signatures on Following Page] _____

Loan No: 123710842
New Jersey Mortgage–Single Family–Secondary Mortgage Loan
—THE COMPLIANCE SOURCE, INC.—           Page 11 of 12
www.compliancesource.com

MERS Modified Form 3801 01/01
Modified By "The Compliance Source, Inc." 14812XJ 03/02 Rev. 12/05
© 2005, The Compliance Source, Inc.

# Exhibit "A"
# Legal Description

All that certain parcel of land situated in the Township of Union, County of Union, State of New Jersey, being known and designated as Lot 84 as shown on a certain Map entitled, "Map of Hamilton Park, Union Township, Union Co., N.J." said Map being filed in the Union County Clerk's Office on 05-08-1950 as Map No. 338-D, being further bounded and described as follows:

Beginning at a point on the Northeasterly sideline of Hamilton Terrace, said point being distant 125.00 feet from the proposed intersection of the Northeasterly sideline of Hamilton Terrace and the Southeasterly sideline of Liberty Avenue, if both were extended to intersect, from said beginning point; thence

(1) North 48°54' East, 116.00 feet to a point; thence

(2) South 77°26' East, 32.07 feet to a point; thence

(3) South 41°06' East, 25.16 feet to a point; thence

(4) South 48°54' West, 135.00 feet to the aforesaid Northeasterly sideline of Hamilton Terrace; thence

(5) Continuing along the same, North 41°06' West, 51.00 feet to the Point or Place of Beginning.

Tax ID:   Lot 32 Block 4410

1193319 - 1

M1759-0860

MIN: 100055401237108420

**BALLOON RIDER**                Loan #: 123710842
(To be attached to the Security Instrument.)

THIS RIDER is made this 27th    day of        June,  2006         and is
incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust
or Deed to Secure Debt (the "Security Instrument"), of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
IndyMac Bank, F.S.B., a federally chartered savings bank

(the "Lender") of the same date and covering the property described in the Security
Instrument and located at:

2609 Hamilton Terrace, Union, NJ 07083
[Property Address]

ADDITIONAL COVENANT: In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Balloon Rider:  Borrower is aware that this loan is due and payable in full on the
1st        day of        July,  2021              , with a Balloon Payment of
$    47,691.38           , based upon scheduled payments. Borrower acknowledges and
agrees that Lender has not made any representations to Borrower, either oral or written, that
Lender will subordinate its lien created by this Security Instrument to any other lien which the
Property may hereafter become subject to, including, without limitation, any lien arising from
Borrower's  subsequent  construction  of  improvements  on  the  Property.  Borrower
acknowledges and agrees that Lender is under no obligation to subordinate its lien created by
this Security Instrument to any lien created hereafter and Lender does not intend to
subordinate its lien to any other lien which the Property may hereafter become subject to.

Page 1 of 2
-8480056 (9805)        ELECTRONIC LASER FORMS, INC. - (800)327-0545

FORM INDYMAC 153
9/26/95

IN WITNESS WHEREOF, Borrower has executed this Balloon Rider and fully understands the conditions thereof.

Date: 6-28-06

_____ (Seal)
Norma Chin                    -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
Kirk Chin                     -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
Sharon Chin                   -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

Loan No: 123710842

-8480056 (0005)                    Page 2 of 2

FORM INDYMAC 153
9/26/95

M#1759-0862

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

 

**SANDRA A. BURTON**

Printed Name: _____ [Please Complete]

_____ (Seal)
Norma Chin                        -Borrower
                                  [Printed Name]

Printed Name: _____ [Please Complete]

_____ (Seal)
Sharon Chin                       -Borrower
                                  [Printed Name]

_____ (Seal)
Kirk Chin                         -Borrower
                                  [Printed Name]

_____ (Seal)
                                  -Borrower
                                  [Printed Name]

_____ [Acknowledgment on Following Page] _____

State of _New Jersey_ §
County of _Union_     § ss:   **SANDRA A. BURTON**
                      §        Notary Public

On _June 28, 2006_ , before me   [name and title of the officer],
personally appeared  Norma Chin and Sharon Chin and Kirk Chin

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the instrument as his/her/their own act.

**SANDRA A. BURTON**
Notary Public of New Jersey     Signature _____ [Printed Name]
Commission Expires 09/18/2006   **SANDRA A. BURTON**

                                Title of Officer _Notary Public_

Loan No: 123710842

New Jersey Mortgage–Single Family–Secondary Mortgage Loan
—THE COMPLIANCE SOURCE, INC.—          Page 12 of 12     MERS Modified Form 3801 01/01
www.compliancesource.com                                Modified By "The Compliance Source, Inc." 14102NJ 03/02 Rev. 11/03
                                                        © 2003, The Compliance Source, Inc.

*END OF DOCUMENT*

**M·I I 759-0863**

SERVICE LINK                    Inst.#
4000 INDUSTRTIAL BLVD           408963

ALIQUIPPA              PA 15001-9902    Paid
                       Recording Fee    170.00
Mortgage               RT Fee           .00

# Exhibit B

**CHAPTER 13 PLAN TRANSMITTAL LETTER**

Second Notice to Creditors affected by Motions in Chapter 13 Plans:

    You should have previously received from the court a copy of the plan proposed by the
Debtor and a Notice of the Hearing on Confirmation.

     The enclosed plan is a copy of the one sent to you by the court.  It has been served upon
you again because **the plan contains  motions that may affect your interest adversely**.  All
forms of relief sought by motion appear in Part 7 of the plan.

    The Confirmation Hearing has been scheduled for ___December 5, 2019~~November 7, 2019~~@8:30___.
**Objections** to any relief sought in the plan, including relief sought by motion, **must be filed
seven days prior to the Confirmation Hearing.**

    YOU SHOULD CONSULT WITH YOUR ATTORNEY PROMPTLY, SINCE ENTRY
OF AN ORDER OF CONFIRMATION WILL BIND YOU TO ALL OF THE TERMS OF THE
CONFIRMED PLAN

*Last revised 4/20/11*

**STATISTICAL INFORMATION ONLY: Debtor must select the number of each of the following items included in the Plan.**

| 0 | Valuation of Security | 0 | Assumption of Executory Contract or Unexpired Lease | 0 | Lien Avoidance |

Last revised: September 1, 2018

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In Re:

NORMA EVADNE CHIN

Case No.: 19-27911

Judge: VFP

Debtor(s)

## Chapter 13 Plan and Motions

☒ Original   ☐ Modified/Notice Required   Date: SEPTEMBER 15, 2019

☒ Motions Included   ☐ Modified/No Notice Required

THE DEBTOR HAS FILED FOR RELIEF UNDER
CHAPTER 13 OF THE BANKRUPTCY CODE

### YOUR RIGHTS MAY BE AFFECTED

You should have received from the court a separate *Notice of the Hearing on Confirmation of Plan*, which contains the date of the confirmation hearing on the Plan proposed by the Debtor. This document is the actual Plan proposed by the Debtor to adjust debts. You should read these papers carefully and discuss them with your attorney. Anyone who wishes to oppose any provision of this Plan or any motion included in it must file a written objection within the time frame stated in the *Notice*. Your rights may be affected by this plan. Your claim may be reduced, modified, or eliminated. This Plan may be confirmed and become binding, and included motions may be granted without further notice or hearing, unless written objection is filed before the deadline stated in the Notice. The Court may confirm this plan, if there are no timely filed objections, without further notice. See Bankruptcy Rule 3015. If this plan includes motions to avoid or modify a lien, the lien avoidance or modification may take place solely within the chapter 13 confirmation process. The plan confirmation order alone will avoid or modify the lien. The debtor need not file a separate motion or adversary proceeding to avoid or modify a lien based on value of the collateral or to reduce the interest rate. An affected lien creditor who wishes to contest said treatment must file a timely objection and appear at the confirmation hearing to prosecute same.

---

**The following matters may be of particular importance. Debtors must check one box on each line to state whether the plan includes each of the following items. If an item is checked as "Does Not" or if both boxes are checked, the provision will be ineffective if set out later in the plan.**

---

THIS PLAN:

☒ DOES ☐ DOES NOT CONTAIN NON-STANDARD PROVISIONS. NON-STANDARD PROVISIONS MUST ALSO BE SET FORTH IN PART 10.

☒ DOES ☐ DOES NOT LIMIT THE AMOUNT OF A SECURED CLAIM BASED SOLELY ON VALUE OF COLLATERAL, WHICH MAY RESULT IN A PARTIAL PAYMENT OR NO PAYMENT AT ALL TO THE SECURED CREDITOR. SEE MOTIONS SET FORTH IN PART 7, IF ANY.

☒ DOES ☐ DOES NOT AVOID A JUDICIAL LIEN OR NONPOSSESSORY, NONPURCHASE-MONEY SECURITY INTEREST. SEE MOTIONS SET FORTH IN PART 7, IF ANY.

Initial Debtor(s)' Attorney: JPD   Initial Debtor: NI   Initial Co-Debtor: _____

**Part 1:    Payment and Length of Plan**

a.  The debtor shall pay $ _____ 682.00 _____ per _____ MONTH _____ to the Chapter 13 Trustee, starting on _____ OCTOBER 1, 2019 _____ for approximately _____ 60 _____ months.

b.  The debtor shall make plan payments to the Trustee from the following sources:

☒    Future earnings

☐    Other sources of funding (describe source, amount and date when funds are available):

c.  Use of real property to satisfy plan obligations:

☐  Sale of real property
Description:
Proposed date for completion: _____

☐  Refinance of real property:
Description:
Proposed date for completion: _____

☐  Loan modification with respect to mortgage encumbering property:
Description:
Proposed date for completion: _____

d.  ☐ The regular monthly mortgage payment will continue pending the sale, refinance or loan modification.

e.  ☐ Other information that may be important relating to the payment and length of plan:

**Part 2:   Adequate Protection ☒ NONE**

a.  Adequate protection payments will be made in the amount of $ _____ to be paid to the Chapter 13 Trustee and disbursed pre-confirmation to _____ (creditor).

b.  Adequate protection payments will be made in the amount of $ _____ to be paid directly by the debtor(s) outside the Plan, pre-confirmation to: _____ (creditor).

**Part 3:   Priority Claims (Including Administrative Expenses)**

a.    All allowed priority claims will be paid in full unless the creditor agrees otherwise:

| Creditor | Type of Priority | Amount to be Paid |
|---|---|---|
| CHAPTER 13 STANDING TRUSTEE | ADMINISTRATIVE | AS ALLOWED BY STATUTE |
| ATTORNEY FEE BALANCE | ADMINISTRATIVE | BALANCE DUE: $ 2,250.00 |
| DOMESTIC SUPPORT OBLIGATION | | |

b.    Domestic Support Obligations assigned or owed to a governmental unit and paid less than full amount: Check one:

☒ None

☐ The allowed priority claims listed below are based on a domestic support obligation that has been assigned to or is owed to a governmental unit and will be paid less than the full amount of the claim pursuant to 11 U.S.C.1322(a)(4):

| Creditor | Type of Priority | Claim Amount | Amount to be Paid |
|---|---|---|---|
| | Domestic Support Obligations assigned or owed to a governmental unit and paid less than full amount. | | |

**Part 4:    Secured Claims**

### a. Curing Default and Maintaining Payments on Principal Residence: ☐ NONE

The Debtor will pay to the Trustee (as part of the Plan) allowed claims for arrearages on monthly obligations and the debtor shall pay directly to the creditor (outside the Plan) monthly obligations due after the bankruptcy filing as follows:

| Creditor | Collateral or Type of Debt | Arrearage | Interest Rate on Arrearage | Amount to be Paid to Creditor (In Plan) | Regular Monthly Payment (Outside Plan) |
|---|---|---|---|---|---|
| OCWEN LOAN SERVICING | 2609 HAMILTON AVENUE UNION | 32,000.00 | 0 | 32,000.00 | 2,610.00 |

### b. Curing and Maintaining Payments on Non-Principal Residence & other loans or rent arrears:  ☒ NONE

The Debtor will pay to the Trustee (as part of the Plan) allowed claims for arrearages on monthly obligations and the debtor will pay directly to the creditor (outside the Plan) monthly obligations due after the bankruptcy filing as follows:

| Creditor | Collateral or Type of Debt | Arrearage | Interest Rate on Arrearage | Amount to be Paid to Creditor (In Plan) | Regular Monthly Payment (Outside Plan) |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

### c. Secured claims excluded from 11 U.S.C. 506:  ☒ NONE

The following claims were either incurred within 910 days before the petition date and are secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor(s), or incurred within one year of the petition date and secured by a purchase money security interest in any other thing of value:

| Name of Creditor | Collateral | Interest Rate | Amount of Claim | Total to be Paid through the Plan Including Interest Calculation |
|---|---|---|---|---|
|  |  |  |  |  |

**d. Requests for valuation of security, Cram-down, Strip Off & Interest Rate Adjustments** ☐ **NONE**

1.) The debtor values collateral as indicated below. If the claim may be modified under Section 1322(b)(2), the secured creditor shall be paid the amount listed as the "Value of the Creditor Interest in Collateral," plus interest as stated. The portion of any allowed claim that exceeds that value shall be treated as an unsecured claim. If a secured claim is identified as having "NO VALUE" it shall be treated as an unsecured claim.

**NOTE: A modification under this Section ALSO REQUIRES
the appropriate motion to be filed under Section 7 of the Plan.**

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Superior Liens | Value of Creditor Interest in Collateral | Annual Interest Rate | Total Amount to be Paid |
|---|---|---|---|---|---|---|---|
| DITECH MORTGAGE | PROPERTY | 51,000.00 | 235,000.00 | 306,000.00 | 0 | 0 | 0 DI |

2.) Where the Debtor retains collateral and completes the Plan, payment of the full amount of the allowed secured claim shall discharge the corresponding lien.

> DITECH MORTGAGE DATED JUNE 27, 2006 BY INDYMAC BANKS FSB AND MERS RECORDED ON JULY 10, 2006 IN MORTGAGE BOOK M11759 AT PAGE 0849 IN THE AMOUNT OF $54,000.00.

**e. Surrender** ☒ **NONE**

Upon confirmation, the stay is terminated as to surrendered collateral only under 11 U.S.C. 362(a) and that the stay under 11 U.S.C 1301 be terminated in all respects. The Debtor surrenders the following collateral:

| Creditor | Collateral to be Surrendered | Value of Surrendered Collateral | Remaining Unsecured Debt |
|---|---|---|---|
| | | | |

**f. Secured Claims Unaffected by the Plan** ☒ NONE

The following secured claims are unaffected by the Plan:

**g. Secured Claims to be Paid in Full Through the Plan**: ☒ NONE

| Creditor | Collateral | Total Amount to be Paid Through the Plan |
|---|---|---|
|  |  |  |

## Part 5:   Unsecured Claims ☐ NONE

a. **Not separately classified** allowed non-priority unsecured claims shall be paid:

☐ Not less than $ _____ to be distributed *pro rata*

☒ Not less than _5_____ percent

☐ *Pro Rata* distribution from any remaining funds

b. **Separately classified unsecured** claims shall be treated as follows:

| Creditor | Basis for Separate Classification | Treatment | Amount to be Paid |
|---|---|---|---|
|  |  |  |  |

**Part 6:    Executory Contracts and Unexpired Leases  ☒ NONE**

(NOTE:  See time limitations set forth in 11 U.S.C. 365(d)(4) that may prevent assumption of non-residential real property leases in this Plan.)

All executory contracts and unexpired leases, not previously rejected by operation of law, are rejected, except the following, which are assumed:

| Creditor | Arrears to be Cured in Plan | Nature of Contract or Lease | Treatment by Debtor | Post-Petition Payment |
|---|---|---|---|---|
|  |  |  |  |  |

**Part 7:    Motions  ☐ NONE**

**NOTE:  All plans containing motions must be served on all potentially affected creditors, together with local form, *Notice of Chapter 13 Plan Transmittal*, within the time and in the manner set forth in D.N.J. LBR 3015-1. A *Certification of Service, Notice of Chapter 13 Plan Transmittal and valuation* must be filed with the Clerk of Court when the plan and transmittal notice are served.**

a. **Motion to Avoid Liens Under 11. U.S.C. Section 522(f).**  ☐ NONE

The Debtor moves to avoid the following liens that impair exemptions:

| Creditor | Nature of Collateral | Type of Lien | Amount of Lien | Value of Collateral | Amount of Claimed Exemption | Sum of All Other Liens Against the Property | Amount of Lien to be Avoided |
|---|---|---|---|---|---|---|---|
| DITECH MORTGAGE CO | 2609 HAMILTON AVENUE, UNION, NJ | SECOND MORTGAGE | 51,000.00 | 235,000.00 | 0 | 306,000.00 | 51,000.00 |

**b. Motion to Avoid Liens and Reclassify Claim from Secured to Completely Unsecured.** ☐ **NONE**

The Debtor moves to reclassify the following claims as unsecured and to void liens on collateral consistent with Part 4 above:

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Superior Liens | Value of Creditor's Interest in Collateral | Total Amount of Lien to be Reclassified |
|---|---|---|---|---|---|---|
| DITECH MORTGAGE | 2609 HAMILTON AVENUE, UNION | 51,000.00 | 235,000.00 | 306,000.00 BY OCWEN MORTGAGE | 0 | 51,000.00 EST ORIGINALLY $54,000.00 |

**c. Motion to Partially Void Liens and Reclassify Underlying Claims as Partially Secured and Partially Unsecured.** ☒ **NONE**

The Debtor moves to reclassify the following claims as partially secured and partially unsecured, and to void liens on collateral consistent with Part 4 above:

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Amount to be Deemed Secured | Amount to be Reclassified as Unsecured |
|---|---|---|---|---|---|
| | | | | | |

## Part 8:    Other Plan Provisions

**a. Vesting of Property of the Estate**

☒    Upon confirmation

☐    Upon discharge

**b. Payment Notices**

Creditors and Lessors provided for in Parts 4, 6 or 7 may continue to mail customary notices or coupons to the Debtor notwithstanding the automatic stay.

**c. Order of Distribution**

The Standing Trustee shall pay allowed claims in the following order:

1) Ch. 13 Standing Trustee commissions

2) _____

3) _____

4) _____

**d. Post-Petition Claims**

The Standing Trustee ☒ is, ☐ is not authorized to pay post-petition claims filed pursuant to 11 U.S.C. Section 1305(a) in the amount filed by the post-petition claimant.

---

**Part 9:    Modification ☐ NONE**

If this Plan modifies a Plan previously filed in this case, complete the information below.

Date of Plan being modified: _____.

| Explain below **why** the plan is being modified: | Explain below **how** the plan is being modified: |
|---|---|
| | |

Are Schedules I and J being filed simultaneously with this Modified Plan?    ☐   Yes    ☐   No

---

**Part 10:    Non-Standard Provision(s): Signatures Required**

**Non-Standard Provisions Requiring Separate Signatures:**

☐ NONE

☒ Explain here:

MODIFY THE SECOND MORTGAGE BY DITECH IN THE GROSS AMOUNT OF $54,000.00, $51,000.00 DUE ON ACCOUNT

Any non-standard provisions placed elsewhere in this plan are ineffective.

## Signatures

The Debtor(s) and the attorney for the Debtor(s), if any, must sign this Plan.

By signing and filing this document, the debtor(s), if not represented by an attorney, or the attorney for the debtor(s) certify that the wording and order of the provisions in this Chapter 13 Plan are identical to Local Form, *Chapter 13 Plan and Motions*, other than any non-standard provisions included in Part 10.

I certify under penalty of perjury that the above is true.

Date: <u>SEPTEMBER 15, 2019</u>

/S/ NORMA EVADNE CHIN
Debtor

Date: _____

Joint Debtor

Date: <u>SEPTEMBER 15, 2019</u>

/S/ JOHN P. DELL'ITALIA, ESQ.
Attorney for Debtor(s)

7190785449
File No. spr13676830

APPRAISAL OF



LOCATED AT:

2609 HAMILTON TER
UNION, NJ 07083

FOR:

OCWEN LOAN SERVICING LLC
1661 WORTHINTON ROAD
WEST PALM BEACH, FL, 33409

BORROWER:

NORMA CHIN

AS OF:

March 8, 2019

BY:

STEVE MOROZOV

7190785449

## Exterior-Only Inspection Residential Appraisal Report
File No. spr13676830

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | |
|---|---|
| Property Address 2609 HAMILTON TER | City UNION   State NJ   Zip Code 07083 |
| Borrower NORMA CHIN | Owner of Public Record CHIN, NORMA & KIRK   County UNION |
| Legal Description BLOCK 04410 LOT 00032 | |
| Assessor's Parcel # 2919-04410-0000-00032-0000 | Tax Year 2018   R.E. Taxes $ 8,177 |
| | Map Reference MAP POINT   Census Tract 0327.00 |

Neighborhood Name UNION   Special Assessments $ 0   [ ] PUD   HOA $ 0   [ ] per year [ ] per month

Occupant [X] Owner [ ] Tenant [ ] Vacant   Special Assessments $ 0

Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)

Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) MARKET VALUE

Lender/Client OCWEN LOAN SERVICING LLC   Address 1661 WORTHINTON ROAD, WEST PALM BEACH, FL 33409

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [X] Yes [ ] No

Report data source(s) used, offering price(s), and date(s). DOM Unk;The subject has been listed in the past 12 month for $152.000. gsmls#3435443. ld 12/13/2017.

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ _____ Date of Contract _____ Is the property seller the owner of public record? [ ] Yes [ ] No   Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No

If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|
| Location [ ] Urban [X] Suburban [ ] Rural | Property Values [ ] Increasing [X] Stable [ ] Declining | PRICE $(000) | AGE (yrs) | One-Unit | 85 % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | 200 Low | 15 | 2-4 Unit | 5 % |
| Growth [ ] Rapid [X] Stable [ ] Slow | Marketing Time [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | 450 High | 95 | Multi-Family | 5 % |
| | | 350 Pred. | 75 | Commercial | 5 % |
| | | | | Other | % |

Neighborhood Boundaries I-78 TO THE NORTH AND EAST, ROUTE 22 TO THE SOUTH, RAHWAY RIVER TO THE WEST.

Neighborhood Description See Attached Addendum

Market Conditions (including support for the above conclusions) See Attached Addendum

| | |
|---|---|
| Dimensions 51 X 135 | Area 6885 sf   Shape RECTANGULAR   View N;Res;Res |
| Specific Zoning Classification RA | Zoning Description Residential |
| Zoning Compliance [ ] Legal [X] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe) | |

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No   If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street ASPHALT | [X] | |
| Gas | [X] | | Sanitary Sewer | [X] | | Alley NONE | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No   FEMA Flood Zone X   FEMA Map # 34013c0134f   FEMA Map Date 09/09/2006

Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No   If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No   If Yes, describe.

Source(s) Used for Physical Characteristics of Property [ ] Appraisal Files [ ] MLS [X] Assessment and Tax Records [X] Prior Inspection [ ] Property Owner

[ ] Other (describe)   Data Source(s) for Gross Living Area prior inspection

| GENERAL DESCRIPTION | GENERAL DESCRIPTION | Heating / Cooling | Amenities | Car Storage |
|---|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | [ ] Concrete Slab [ ] Crawl Space | [ ] FWA [X] HWBB | Fireplace(s) # 0 | [ ] None |
| # of Stories 1.5 | [X] Full Basement [X] Finished | [ ] Radiant | WoodStove(s) # 0 | [X] Driveway   # of Cars 2 |
| Type [X] Det. [ ] Att. [ ] S-Det/End Unit | [ ] Partial Basement [ ] Finished | [ ] Other | [X] Patio/Deck d/p | Driveway Surface MACADAM |
| [X] Existing [ ] Proposed [ ] Under Const. | Exterior Walls brick/vinyl/AVG | Fuel GAS | Porch NONE | [X] Garage   # of Cars 1 |
| Design (Style) Cape Cod | Roof Surface ASPHALT/AVG | [ ] Central Air Conditioning | Pool NONE | [ ] Carport   # of Cars 0 |
| Year Built 1950 | Gutters & Downspouts ALUM/AV | [X] Individual | Fence NONE | [x] Attached [ ] Detached |
| Effective Age (Yrs) 15 | Window Type DH-WOOD/AVG | [ ] Other | Other NONE | [ ] Built-In |
| Appliances [ ] Refrigerator [ ] Range/Oven | [ ] Dishwasher [ ] Disposal [ ] Microwave [ ] Washer/Dryer | Other (describe) | | |

Finished area above grade contains: 7 Rooms   4 Bedrooms   1.1 Bath(s)   1,543 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.) NONE APPARENT DURING ROUTINE DRIVE-BY OBSERVATION.

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.). C5;NONE APPARENT DURING ROUTINE DRIVE-BY OBSERVATION.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No   If Yes, describe.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No   If No, describe.

Freddie Mac Form 2055   March 2005   UAD Version 9/2011   Produced using ACI software, 800.234.8727 www.aciweb.com   Page 1 of 6   Fannie Mae Form 2055 March 2005   2055_05UAD 12/18/2015

7190785449

## Exterior-Only Inspection Residential Appraisal Report
File No. spr13676830

There are **16** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 210,000 to $ 310,000 .

There are **19** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 210,000 to $ 310,000 .

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 2609 HAMILTON TER | 2750 LINWOOD RD | | 2470 DAYTON AVE | | 339 WASHINGTON AVE | |
| | UNION, NJ 07083 | UNION, NJ 07083 | | UNION, NJ 07083 | | UNION, NJ 07083 | |
| Proximity to Subject | | 0.15 miles NW | | 0.32 miles SE | | 2.42 miles SE | |
| Sale Price | $ | | $ 230,000 | | $ 284,000 | | $ 285,075 |
| Sale Price/Gross Liv. Area | $ 0.00 sq.ft. | $ 153.33 sq.ft. | | $ 141.29 sq.ft. | | $ 161.97 sq.ft. | |
| Data Source(s) | | Gsmls #3493180;DOM 31 | | gsmls #3489157 ;DOM 12 | | gsmls #3494415;DOM 16 | |
| Verification Source(s) | | TAX RECORD | | TAX RECORD | | TAX RECORD | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Cash;0 | | Cash;0 | | Cash;0 | |
| Date of Sale/Time | | s09/18;c09/18 | | s09/18;c08/18 | | s09/18;c08/18 | |
| Location | N;Res;Res | N;Res;Res | | N;Res;Res | | N;Res;Res | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 6885 sf | 5000 sf | 0 | 5000 sf | 0 | 12632 sf | -2,000 |
| View | N;Res;Res | N;Res;Res | | N;Res;Res | | N;Res;Res | |
| Design (Style) | DT1.5;Cape Cod | DT2;COLONIAL | 0 | DT3;Split Level | 0 | DT1.5;Cape Cod | 0 |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | |
| Actual Age | 69 | 66 | 0 | 62 | 0 | 81 | 0 |
| Condition | C5 | C5 | | C5 | | C5 | |
| Above Grade | Total 7 Bdrms 4 Baths 1.1 | Total 7 Bdrms 3 Baths 1.1 | 0 | Total 7 Bdrms 3 Baths 2.0 | -3,000 | Total 7 Bdrms 3 Baths 2.0 | -3,000 |
| Room Count | 7 4 1.1 | 7 3 1.1 | 1,000 | 7 3 2.0 | -7,000 | 7 3 2.0 | -3,000 |
| Gross Living Area | 1,543 sq.ft. | 1,500 sq.ft. | 1,000 | 2,010 sq.ft. | -7,000 | 1,760 sq.ft. | -3,000 |
| Basement & Finished | 772sf400sfin | 750sf720sfin | 0 | 700sf0sfin | 0 | 1200sf1140sfin | 0 |
| Rooms Below Grade | 1rr0br0.0ba0o | 1rr0br0.1ba0o | -3,000 | | 4,000 | 1rr0br0.1ba0o | -3,000 |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | HWBB Ind/Air | HWRAD Ind/Air | 0 | HWRAD Ind/Air | 0 | HWRAD C/Air | -3,000 |
| Energy Efficient Items | NONE | NONE | | NONE | | NONE | |
| Garage/Carport | 1ga2dw | 1gbi2dw | 0 | 1gbi1dw | 0 | 1ga1dw | 0 |
| Porch/Patio/Deck | Patio/Deck | E/PORCH | 2,000 | Patio/Deck | | PATIO, E/P, C/P | -5,000 |
| FIREPLACE | NONE | NONE | | NONE | | 1 FIREPLACE | -3,000 |
| Net Adjustment (Total) | | [X] + [ ] - | $ 0 | [ ] + [X] - | $ 6,000 | [ ] + [X] - | $ 22,000 |
| Adjusted Sale Price | | Net Adj. 0.0% | | Net Adj. -2.1% | | Net Adj. -7.7% | |
| of Comparables | | Gross Adj. 2.6% $ 230,000 | | Gross Adj. 4.9% $ 278,000 | | Gross Adj. 7.7% $ 263,075 | |

I [X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain THE SUBJECT AND COMPARABLE

TRANSFER AND SALES HISTORY WAS RESEARCHED BY THE APPRAISER.

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data source(s) TAX RECORD

My research [ ] did [X] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.

Data source(s) TAX RECORD

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | TAX RECORD | TAX RECORD | TAX RECORD | TAX RECORD |
| Effective Date of Data Source(s) | 03/08/2019 | 03/08/2019 | 03/08/2019 | 03/08/2019 |

Analysis of prior sale or transfer history of the subject property and comparable sales OUR RESEARCH AND ANALYSIS INTO THE AVAILABLE LOCAL
DATA SOURCES AS WELL AS DISCUSSION WITH ONE OR MORE OF THE INDIVIDUALS INVOLVED IN THE LENDING
PROCESS HAS NOT REVEALED ANY INDICATION OR VERIFICATION THAT THE SUBJECT PROPERTY HAS TRANSFERRED IN
THE PAST 36 MONTHS PRIOR TO THE DATE OF THIS APPRAISAL. ALSO OUR RESEARCH AND ANALYSIS HAS NOT
REVEALED ANY PRIOR TRANSFERS OF THE COMPARABLE SALES UTILIZED IN THE 12 MONTHS PRIOR TO THEIR MOST
RECENT TRANSFER AS NOTED IN THE SALES COMPARISON APPROACH.

Summary of Sales Comparison Approach    See Attached Addendum

Indicated Value by Sales Comparison Approach $ 235,000        Cost Approach (if developed) $ 0        Income Approach (if developed) $ 0

Indicated Value by: Sales Comparison Approach $235,000
THE APPRAISER HAS RELIED UPON THE SALES ANALYSIS AS IT IS A REFLECTION OF THE BUYERS AND SELLERS IN THE
MARKET, AND IS CONSIDERED THE MOST RELIABLE VALUE INDICATOR

This appraisal is made [X] "as is", [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,
[ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required
inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 235,000

as of 03/08/2019 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 2055 March 2005        UAD Version 9/2011        Produced using ACI software, 800.234.8727 www.aciweb.com        Page 2 of 6        Fannie Mae Form 2055 March 2055_05UAD 1218/2015

Absolute Enterprises, Inc.

7190785449

## Exterior-Only Inspection Residential Appraisal Report
File No. spr13676830

**ADDITIONAL COMMENTS**

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value) LAND VALUE ESTIMATED VIA LOCAL LAND SALE OR ABSTRACTION METHOD

| COST APPROACH | | | |
|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE .......................... = $ | | 0 |
| Source of cost data LOCAL BUILDERS | Dwelling 1,543 Sq. Ft. @ $ ............ = $ | | |
| Quality rating from cost service AVERAG Effective date of cost data CURRENT | Sq. Ft. @ $ ............ = $ | | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Garage/Carport Sq. Ft. @ $ ............ = $ | | |
| | Total Estimate of Cost-New ............ = $ | | 0 |
| COST APPROACH NOT NECESSARY IN RIDE BY APPRAISAL. | Less 50 Physical Functional External | | |
| | Depreciation $0 | = $ ( | 0) |
| | Depreciated Cost of Improvements ............................... = $ | | 0 |
| | "As-is" Value of Site Improvements ............................... = $ | | 0 |
| Estimated Remaining Economic Life (HUD and VA only) 35 Years | INDICATED VALUE BY COST APPROACH ....................... = $ | | 0 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| INCOME | |
|---|---|
| Estimated Monthly Market Rent $ X Gross Rent Multiplier = $ | Indicated Value by Income Approach |
| Summary of Income Approach (including support for market rent and GRM) | |

### PROJECT INFORMATION FOR PUDs (if applicable)

**PUD INFORMATION**

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No   Unit type(s) ☐ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project

Total number of phases ___ Total number of units ___ Total number of units sold ___

Total number of units rented ___ Total number of units for sale ___ Data source(s) ___

Was the project created by the conversion of an existing building(s) into a PUD? ☐ Yes ☐ No   If Yes, date of conversion.

Does the project contain any multi-dwelling units? ☐ Yes ☐ No   Data source(s)

Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No   If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

7190785449

## Exterior-Only Inspection Residential Appraisal Report

File No. spr13676830

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1.  The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2.  The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3.  The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4.  The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5.  The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

**Exterior-Only Inspection Residential Appraisal Report**

File No. 713078544g

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

Freddie Mac Form 2055 March 2005                                                                 Fannie Mae Form 2055 March 2005

UAD Version 9/2011                Produced using ACI software, 800.234.8727 www.aciweb.com                Page 5 of 6
2055_GMJAD 12182018

7190785449

**Exterior-Only Inspection Residential Appraisal Report**   File No. spr13676830

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _V Morozov_ | Signature _____ |
| Name STEVE MOROZOV | Name _____ |
| Company Name MOROZOV APPRAISAL, INC | Company Name _____ |
| Company Address 444 HORIZON DRIVE | Company Address _____ |
| EDISON, NJ 08817 | Telephone Number _____ |
| Telephone Number (732)319-5530 | Email Address _____ |
| Email Address slavamorozov@yahoo.com | Date of Signature _____ |
| Date of Signature and Report 03/08/2019 | State Certification # _____ |
| Effective Date of Appraisal 03/08/2019 | or State License # _____ |
| State Certification # _____ | State _____ |
| or State License # 42RA00391400        State # _____ | Expiration Date of Certification or License _____ |
| or Other (describe) _____ | |
| State NJ | |
| Expiration Date of Certification or License 12/31/2019 | |

ADDRESS OF PROPERTY APPRAISED
2609 HAMILTON TER
UNION, NJ 07083

APPRAISED VALUE OF SUBJECT PROPERTY $ 235,000

LENDER/CLIENT
Name No AMC
Company Name OCWEN LOAN SERVICING LLC
Company Address 1661 WORTHINTON ROAD
WEST PALM BEACH, FL 33409
Email Address _____

SUBJECT PROPERTY
☐ Did not inspect exterior subject property
☐ Did inspect exterior of subject property from street
   Date of Inspection _____

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
   Date of Inspection _____

Freddie Mac Form 2055 March 2005          UAD Version 9/2011          Produced using ACI software, 800.234.8727 www.aciweb.com          Fannie Mae Form 2055 March 2005
Page 6 of 8          2055_05UAD 12182015

Absolute Enterprises, Inc.

7190785449
File No. spr13676830

## Exterior-Only Inspection Residential Appraisal Report

| FEATURE | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address | 2609 HAMILTON TER<br>UNION, NJ 07083 | 749 LIBERTY AVE<br>UNION, NJ 07083 | | 1330 BARBARA AVE<br>UNION, NJ 07083 | | | |
| Proximity to Subject | | 0.98 miles SW | | 1.29 miles SE | | | |
| Sale Price | $ | | $ 259,900 | | $ 259,995 | | $ |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 194.54 sq. ft. | | $ 178.08 sq. ft. | | $ sq. ft. | |
| Data Source(s) | | Gsmls # 3527314 ;DOM 23 | | gsmls #3487031 ;DOM 200 | | | |
| Verification Source(s) | | EXTERIOR OBSERVATION | | EXTERIOR OBSERVATION | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | Listing | | Listing | | | |
| Concessions | | ;0 | | ;0 | | | |
| Date of Sale/Time | | Active | -7,797 | Active | -7,800 | | |
| Location | N;Res;Res | N;Res;Res | | N;Res;Res | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | 6885 sf | 6534 sf | 0 | 5000 sf | 0 | | |
| View | N;Res;Res | N;Res;Res | | N;Res;Res | | | |
| Design (Style) | DT1.5;Cape Cod | DT1.5;Cape Cod | | DT1.5;Cape Cod | | | |
| Quality of Construction | Q4 | Q4 | 0 | Q4 | 0 | | |
| Actual Age | 69 | 63 | | 79 | | | |
| Condition | C5 | C5 | | C5 | | | |
| Above Grade | Total 7 Bdrms 4 Baths 1.1 | Total 7 Bdrms 3 Baths 2.0 | -3,000 | Total 8 Bdrms 3 Baths 2.1 | -6,000 | Total Bdrms Baths | |
| Room Count | | | | | | | |
| Gross Living Area | 1,543 sq. ft. | 1,336 sq. ft. | 3,000 | 1,460 sq. ft. | 1,000 | sq. ft. | |
| Basement & Finished | 772sf400sfin | 900sf0sfin | 0 | 1000sf950sfin | 0 | | |
| Rooms Below Grade | 1rr0br0.0ba0o | | 4,000 | 1rr0br0.0ba0o | | | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | | |
| Heating/Cooling | HWBB Ind/Air | FWA Ind/Air | 0 | HWRAD Ind/Air | 0 | | |
| Energy Efficient Items | NONE | NONE | | NONE | | | |
| Garage/Carport | 1ga2dw | 1gbi1dw | 0 | 1ga1dw | 0 | | |
| Porch/Patio/Deck | Patio/Deck | Patio/Deck | | C/PORCH | 4,000 | | |
| FIREPLACE | NONE | NONE | | 1 FIREPLACE | -3,000 | | |
| Net Adjustment (Total) | | [ ] + [X] - $ | 3,797 | [ ] + [X] - $ | 11,800 | [ ] + [ ] - $ | |
| Adjusted Sale Price | | Net Adj. -1.5% | | Net Adj. -4.5% | | Net Adj. % | |
| of Comparables | | Gross Adj. 6.8% $ | 256,103 | Gross Adj. 8.4% $ | 248,195 | Gross Adj. % $ | |

| ITEM | SUBJECT | COMPARABLE SALE NO. 4 | COMPARABLE SALE NO. 5 | COMPARABLE SALE NO. 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | TAX RECORD | TAX RECORD | TAX RECORD | |
| Effective Date of Data Source(s) | 03/08/2019 | 03/08/2019 | 03/08/2019 | |
| Summary of Sales Comparison Approach | | | | |

7190785449
File No. spr13676830

## Uniform Appraisal Dataset Definitions

### Condition Ratings and Definitions

**C1**   The improvements have been very recently constructed and have not previously been occupied. The entire structure and all components are new and the dwelling features no physical depreciation.*

*Note: Newly constructed improvements that feature recycled materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100% new foundation and the recycled materials and the recycled components have been rehabilitated/re-manufactured into like-new condition. Recently constructed improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (i.e., newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).

**C2**   The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category either are almost new or have been recently completely renovated and are similar in condition to new construction.

*Note: The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.

**C3**   The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

*Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.

**C4**   The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

*Note: The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.

**C5**   The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

*Note: Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.

**C6**   The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

*Note: Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.

### Quality Ratings and Definitions

**Q1**   Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

**Q2**   Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residences constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high-quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

**Q3**   Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

**Q4**   Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

**Q5**   Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

**Q6**   Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure.

### Definitions of Not Updated, Updated, and Remodeled

**Not Updated**
Little or no updating or modernization. This description includes, but is not limited to, new homes.
Residential properties of fifteen years of age or less often reflect an original condition with no updating. If no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical /functional deterioration.

**Updated**
The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.
An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

**Remodeled**
Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.
A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of square footage). This would include a complete gutting and rebuild.

### Explanation of Bathroom Count

The number of full and half baths is reported by separating the two values by a period. The full bath is represented to the left of the period. The half bath count is represented to the right of the period. Three-quarter baths are to be counted as a full bath in all cases. Quarter baths (baths that feature only toilet) are not to be included in the bathroom count.

7190785449
File No. spr13676830

## Uniform Appraisal Dataset Definitions

### Abbreviations Used in Data Standardization Text

| Abbrev. | Full Name | Appropriate Fields |
|---|---|---|
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| A | Adverse | Location & View |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| AT | Attached Structure | Design(Style) |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| B | Beneficial | Location & View |
| BsyRd | Busy Road | Location |
| cp | Carport | Garage/Carport |
| Cash | Cash | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| Comm | Commercial Influence | Location |
| c | Contracted Date | Date of Sale/Time |
| Conv | Conventional | Sale or Financing Concessions |
| cv | Covered | Garage/Carport |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| DOM | Days On Market | Data Sources |
| DT | Detached Structure | Design(Style) |
| dw | Driveway | Garage/Carport |
| Estate | Estate Sale | Sale or Financing Concessions |
| e | Expiration Date | Date of Sale/Time |
| FHA | Federal Housing Authority | Sale or Financing Concessions |
| g | Garage | Garage/Carport |
| ga | Garage - Attached | Garage/Carport |
| gbi | Garage - Built-In | Garage/Carport |
| gd | Garage - Detached | Garage/Carport |
| GR | Garden Structure | Design(Style) |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| HR | High Rise Structure | Design(Style) |
| Ind | Industrial | Location & View |

| Abbrev. | Full Name | Appropriate Fields |
|---|---|---|
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| Listing | Listing | Sale or Financing Concessions |
| MR | Mid-Rise Structure | Design(Style) |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| op | Open | Garage/Carport |
| o | Other | Basement & Finished Rooms Below Grade |
| O | Other | Design(Style) |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PwrLn | Power Lines | View |
| PubTrn | Public Transportation | Location |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RT | Row or Townhouse | Design(Style) |
| RH | Rural Housing - USDA | Sale or Financing Concessions |
| SD | Semi-detached Structure | Design(Style) |
| s | Settlement Date | Date of Sale/Time |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site, Basement |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
| WtrFr | Water Frontage | Location |
| Wtr | Water View | View |
| w | Withdrawn Date | Date of Sale/Time |
| Woods | Woods View | View |

### Other Appraiser-Defined Abbreviations

| Abbrev. | Full Name | Appropriate Fields | Abbrev. | Full Name | Appropriate Fields |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

UAD Version 9/2011

Produced using ACI software, 800.234.8727 www.aciweb.com
Uniform Appraisal Dataset Definitions

2055_05UAD 12162015

ADDENDUM

| | File No.: spr13676830 |
|---|---|
| Borrower: NORMA CHIN | Case No.: 7190785449 |
| Property Address: 2609 HAMILTON TER | |
| City: UNION | State: NJ | Zip: 07083 |
| Lender: OCWEN LOAN SERVICING LLC | |

Intended Use/User Statement:
The Appraisal Is Intended For Use By The Loan Supervisor For Decision Making Purposes. Ocwen Loan Servicing, Llc Is The Intended User. Altisource And Its Subsidiary Springhouse, Llc, Are Additional Intended Users. The Appraisal Is Not Intended For Use In A Mortgage Finance Transaction.

THE SUBJECT AND COMPARABLE SALES ARE LOCATED IN SIMILAR NEIGHBORHOODS. ALL SALES UTILIZED IN THIS REPORT WERE CONSIDERED TO BE THE BEST AND MOST SIMILAR AVAILABLE. ADJUSTMENTS TO THE COMPARABLES ARE BASED ON MARKET REACTION FOR THE DIFFERENCES. BECAUSE ACTUAL MEASUREMENTS OF THE COMPARABLE PROPERTIES ARE NOT POSSIBLE AND PUBLIC DATA SOURCE IS NOT ALWAYS AVAILABLE TO IDENTIFY SQUARE FOOTAGE THE GROSS LIVING AREA OF THE COMPARABLE IS SOMETIMES ESTIMATED BASED UPON NORMAL APPRAISAL PRACTICES . IF THE SUBJECT'S VALUE IS NOT BRACKETED WITHIN THE SALES PRICE OF THE COMPS, IT IS NOT CONSIDERED AN OVER OR UNDER IMPROVEMENT. ALL SALES WERE GIVEN CONSIDERATION IN FINAL ESTIMATE OF VALUE.

**Neighborhood Description**
THE SUBJECT IS LOCATED IN RESIDENTIAL NEIGHBORHOOD COMPOSED OF OWNER OCCUPIED SINGLE FAMILY HOMES. THESE HOMES RECEIVE REGULAR MAINTENANCE AND ARE LOCATED WITHIN REASONABLE PROXIMITY TO SCHOOLS, SHOPPING, AND OTHER NORMAL CONVENIENCES.THE MAJOR EMPLOYMENT CENTERS ARE WITHIN A REASONABLE COMMUTE AND EASILY ACCESSIBLE . THE SUBJECT NEIGHBORHOOD IS COMPOSED DIFFERENT STYLE, WOOD FRAME DWELLINGS THAT ARE, FOR THE MOST PART, WELL MAINTAINED WITH EFFECTIVE AGES SOMEWHAT LESS THAN ACTUAL AGES. MOST HOMES ARE OF AVERAGE QUALITY MATERIALS AND DISPLAY A HIGH LEVEL OF CONFORMITY AND COMPATIBILITY.

**Neighborhood Market Conditions**
CONVENTIONAL FINANCING IS READILY AVAILABLE AT RATES PURCHASERS CONSIDER ATTRACTIVE AND SELLERS NEED TO NEGOTIATE A SALE ON FINANCING RELATED CONCESSIONS. MLS AND PUBLIC RECORDS ARE CURRENTLY SHOWING RESALES WITH AN AVERAGE OF 1-6 MONTH FOR MARKETING. LOCAL MARKET CONDITIONS PRESENTLY CONSTITUTE AN OVER SUPPLY SUPPLY/DEMAND RELATIONSHIP.

**Comments on Sales Comparison**
EACH COMPARABLE SALE UTILIZED IN THE SALES COMPARISON APPROACH TO VALUE HAS BEEN ANALYZED FOR DIFFERENCES AND SIMILARITIES BETWEEN IT AND THE SUBJECT PROPERTY. THE APPRAISER HAS BASED THE ANALYSIS AND ANY ADJUSTMENTS TO THE COMPARABLE SALES ON THE MARKET DATA FOR THE DEFINED NEIGHBORHOOD AND FOR COMPETING LOCATIONS. EVERY EFFORT HAS BEEN MADE TO SELECT THE COMPARABLE WHICH PROPERLY BRACKETS THE SUBJECT IN TERMS OF VALUE, GROSS LIVING AREA, PRICE/GLA. SELECTED COMPARABLES ARE THE MOST SIMILAR COMPARABLES IN PROXIMITY, LOT SIZE, QUALITY, AGE, ROOM COUNT, AND OTHER PERTINENT FEATURES AS NOTED IN THE SALES GRID. ALL ADJUSTMENTS ARE CONSIDERED PRACTICAL AND MARKET DERIVED. ALL COMPARABLES ARE CONSIDERED GOOD INDICATORS OF VALUE AND ALL ARE ANALYZED AND WEIGHED IN ARRIVING AT FINAL ESTIMATE OPINION OF MARKET VALUE.

SUBJECT PROPERTY PHOTO ADDENDUM

| | File No.: spr13676830 |
|---|---|
| Borrower: NORMA CHIN | |
| Property Address: 2609 HAMILTON TER | Case No.: 7190785449 |
| City: UNION | State: NJ | Zip: 07083 |
| Lender: OCWEN LOAN SERVICING LLC | |



**FRONT VIEW OF
SUBJECT PROPERTY**

Appraised Date: March 8, 2019
Appraised Value: $ 235,000



**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**

COMPARABLE PROPERTY PHOTO ADDENDUM

| | | |
|---|---|---|
| | File No.: | spr13676830 |
| Borrower: NORMA CHIN | Case No.: | 7190785449 |
| Property Address: 2609 HAMILTON TER | | |
| City: UNION | State: NJ | Zip: 07083 |
| Lender: OCWEN LOAN SERVICING LLC | | |



**COMPARABLE SALE #1**

2750 LINWOOD RD
UNION, NJ 07083
Sale Date: s09/18;c09/18
Sale Price: $ 230,000



**COMPARABLE SALE #2**

2470 DAYTON AVE
UNION, NJ 07083
Sale Date: s09/18;c08/18
Sale Price: $ 284,000



**COMPARABLE SALE #3**

339 WASHINGTON AVE
UNION, NJ 07083
Sale Date: s09/18;c08/18
Sale Price: $ 285,075

COMPARABLE PROPERTY PHOTO ADDENDUM

| | File No.: spr13676830 |
|---|---|
| Borrower: NORMA CHIN | Case No.: 7190785449 |
| Property Address: 2609 HAMILTON TER | |
| City: UNION    State: NJ    Zip: 07083 | |
| Lender: OCWEN LOAN SERVICING LLC | |



**COMPARABLE SALE #4**

749 LIBERTY AVE
UNION, NJ 07083
Sale Date: Active
Sale Price: $ 259,900



**COMPARABLE SALE #5**

1330 BARBARA AVE
UNION, NJ 07083
Sale Date: Active
Sale Price: $ 259,995



**COMPARABLE SALE #6**

Sale Date:
Sale Price: $



**LOCATION MAP**

| | |
|---|---|
| Borrower: NORMA CHIN | File No.:  spr13676830 |
| Property Address: 2609 HAMILTON TER | Case No.: 7190785449 |
| City: UNION | State: NJ    Zip: 07083 |
| Lender: OCWEN LOAN SERVICING LLC | |

| Borrower: NORMA CHIN | File No.: spr13676830 |
| Property Address: 2609 HAMILTON TER | Case No.: 7190785449 |
| City: UNION | State: NJ | Zip: 07083 |
| Lender: OCWEN LOAN SERVICING LLC | |

THIS DOCUMENT IS PRINTED ON WATERMARKED PAPER, WITH A MULTI-COLORED
BACKGROUND AND MULTIPLE SECURITY FEATURES. PLEASE VERIFY AUTHENTICITY.

## State Of New Jersey
## New Jersey Office of the Attorney General
## Division of Consumer Affairs

THIS IS TO CERTIFY THAT THE

Real Estate Appraisers Board

HAS LICENSED

Steve  Morozov
444 Horizon Drive
Edison, NJ 08817

FOR PRACTICE IN NEW JERSEY AS A(N):  Licensed Residential Appraiser

11/11/2017  TO  12/31/2019
VALID

42RA00391400
LICENSE/REGISTRATION/CERTIFICATION #

_____
Signature of Licensee/Registrant/Certificate Holder

_____
ACTING DIRECTOR

| | File No.: spr13676830 |
|---|---|
| Borrower: NORMA CHIN | Case No.: 7190785449 |
| Property Address: 2609 HAMILTON TER | State: NJ    Zip: 07083 |
| City: UNION | |
| Lender: OCWEN LOAN SERVICING LLC | |

## Property Details

Actions ▾

Subject Info

### LOCATION

ADDRESS: 2609 Hamilton Ter Union, NJ 07083-4561

COUNTY: Union

NEIGHBORHOOD NAME: Battle Hill

SUBDIVISION NAME: Hamilton Park

COMMUNITY NAME: Union

MAP REFERENCE: 32

LEGAL DESCRIPTION: Incl Lot 84

DATA TYPE: Blended

TRACT/RECORDER #: 4410 / 32

SECTION/TOWNSHIP/RANGE: N

PARCEL ID: 19-04410-0000-00032

CENSUS TRACT: 329.01

MSID: 58069816

### OWNERSHIP AND ASSESSMENTS

OWNER: Norma Chin

OWNER SPOUSE:

SECOND OWNER: Kuk Chin

SELLER: Josette E Desonis

PUBLIC RECORD LAST UPDATED: 2/21/2019

ASSESSOR ROLL YEAR: 2018

PROPERTY TAX AMOUNT: $8,554

OWNER/OCCUPIER EXEMPTION REQUESTED: Yes

### SALE INFORMATION

SALE TYPE  DATE    DOC SIGNING DATE  PRICE  DOC #  OWNER    SELLER    TRANSACTION TYPE  DISTRESSED PROPERTY TRANSACTION

CONTRACT  No Contract Data Within Last 12 Months

CLOSED    2/18/2015  1/5/2001          268687  Sharen Chin  Norma Chin  Not Arms Length Sale  No

FIRST MORT AMT $197,880          LOAN TYPE  Conventional          LENDER: Golden Natl Mtg Corp



**Borrower:**   Chin, Norma

**Address:**   2609  Hamilton Ter, UNION, NJ 07083



Date of Report:   03/12/2019
Loan Id:   7190785449
Product:   FNMA 2055

| Property Characteristics | | |
|---|---|---|
| | **Vendor Opinion** | **Reconciled Opinion** |
| Property Type | | Single Family Residence |
| GLA | | 1543 |
| Bedroom (count) | | 4 |
| Bathroom (count) | | 1 |
| Half-Bathroom (count) | | 1 |
| Age | | 69 |
| Condition | | A-Average |
| View | | Typical |
| Location | | Suburban |
| Occupancy | | Owner |
| Lot Size | | 6885 |
| Average Months in Market | | 4 |
| 30 Day (Quick Sale) As-Is Price | | |
| Normal Market Time As-Is | | |
| As-Repaired Price | | |
| **Reconciled Market Value:** | **$235000.00** | |

Altisource

## Review Comments:

Subject property is suburb of Union, NJ. It is an occupied single family detached residence built in 1950 with a Gross Living Area of 1,543 sq. ft. in average condition with 4 bedrooms, 1.5 baths, fully finished basement on a 6,885 sq. ft. lot. The property has a 1 car attached garage. Property characteristics were reconciled using the Origination Appraisal as recent 1004, Current Exterior Appraisal Report , Online resources and recent photographs. They described the property similarly. According to Exterior Appraisal Report and online sources the subject has not sold or transferred in the past 36 months and is currently listed for sale on 04/11/2018 price $152,000. The subject property is located close to school, worship place and interstate highway. The subject property and all the comparables used for value support are from the same neighborhood and are affected by the same external factors. The Subjects market is increasing. There is limited REO activity in the immediate market area. The below properties were considered to be the most similar comparables to the subject: 2750 LINWOOD RD UNION, NJ 07083 Sale price - $230,000, Date of Sale – 9/2018, Distance 0.15 miles Gross Living Area – 1,500 sq. ft. Bed - 3 , Bath – 1.5 Year Built - 1953 , Lot size – 5,000 sq. ft. from 2055 report This comparable is similar to story/design, similar in condition, similar in gross living area and inferior in bed count. This comp over all equal to subject. 1052 Creger Ave Union, NJ 07083 Sale price - $260,333, Date of Sale – 11/20/2018, Distance 0.39 miles Gross Living Area – 1,300 sq. ft. Bed - 3 , Bath - 2 Year Built - 1954 , Lot size – 7,405 sq. ft. from online source This comparable is similar to story/design, superior in condition, smaller in gross living area and inferior in bed count. This comp over all superior to subject. Note: exception has taken for extending gross living area difference more than 10% due to which are closer to subject. The above comparables support the appraiser value of $235,000. There is no significant variance from the prior reviewed value .

## Miscellaneous:

19-27911-VFP NORMA EVADNE CHIN

| | | |
|---|---|---|
| Type: bk | Chapter: 13 v | Office: 2 (Newark) |
| Assets: y | Judge: VFP | Case Flag: DebtEd SUPDIS |

### U.S. Bankruptcy Court

### District of New Jersey

Notice of Electronic Filing

The following transaction was received from John P. Dell'Italia entered on 10/8/2019 at 10:49 AM EDT and filed on 10/8/2019

**Case Name:**     NORMA EVADNE CHIN
**Case Number:**   19-27911-VFP
**Document Number:** 11

**Docket Text:**
Confirmation Certificate of Service (related document:[3] Chapter 13 Plan and Motions filed by Debtor NORMA EVADNE CHIN) filed by John P. Dell'Italia on behalf of NORMA EVADNE CHIN. (Attachments: # (1) Certified Mail Receipt) (Dell'Italia, John)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** Cert of service Ditech.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1002741850 [Date=10/8/2019] [FileNumber=54788438-0] [5a659439a969d2b100e1c3f54bb2a070ed0d260c223408c45e7e449c818cebf54e94013a3180f1ecd2fec99a7ddee075479172ee3759bff002ff77ac8cd78929]]
**Document description:** Certified Mail Receipt
**Original filename:** C:\fakepath\Cert mail receipt.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1002741850 [Date=10/8/2019] [FileNumber=54788438-1] [0a3239fb7ccb218ecd891e11c0d43048e1b7b399062e59027608d8d8a6ae8870cd5ef0471db5e6484e04a088d28057841469dbd2b765fa44c50ea51a1d1de4a6]]

**19-27911-VFP Notice will be electronically mailed to:**

John P. Dell'Italia on behalf of Debtor NORMA EVADNE CHIN
johnpdell@aol.com

Marie-Ann Greenberg
magecf@magtrustee.com

U.S. Trustee
USTPRegion03.NE.ECF@usdoj.gov

**19-27911-VFP Notice will not be electronically mailed to:**

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>Dell'Italia & Santola<br>18 Tony Galento Plaza<br>Orange, NJ  07050<br>(973) 672-8000<br>JPD1617 | |
| In Re:<br><br>Norma Evadne Chin | |

| | |
|---|---|
| Case No.: | 19-27911 |
| Chapter: | 13 |
| Adv. No.: | |
| Hearing Date: | November 7, 2019 |
| Judge: | VFP |

## CERTIFICATION OF SERVICE

1.  I, _____John P. Dell'Italia_____ :

    ☒ represent _____Norma Evadne Chin_____ in this matter.

    ☐ am the secretary/paralegal for _____, who represents

    _____ in this matter.

    ☐ am the _____ in this case and am representing myself.

2.  On _____October 7, 2019_____, I sent a copy of the following pleadings and/or documents to the parties listed in the chart below.

    Chapter 13 Plan, Cover sheet and appraisal on property for Confirmation Scheduled for November 7, 2019 @ 8:30 am. Certified mail received attached.

3.  I certify under penalty of perjury that the above documents were sent using the mode of service indicated.

Date: _____October 8, 2019_____          /s/ John P. Dell'Italia, Esq._____
                                            Signature

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| Thomas F. Marano, CEO<br>DITECH Mtg<br>1100 Virginia Drive<br>Fort Washington, PA  19034<br><br>US CERT#94071108987650457733 20 | CEO for Ditech Mtg | ☐ Hand-delivered<br>☐ Regular mail<br>☒ Certified mail/RR<br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
| | | ☐ Hand-delivered<br>☐ Regular mail<br>☐ Certified mail/RR<br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
| | | ☐ Hand-delivered<br>☐ Regular mail<br>☐ Certified mail/RR<br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
| | | ☐ Hand-delivered<br>☐ Regular mail<br>☐ Certified mail/RR<br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
| | | ☐ Hand-delivered<br>☐ Regular mail<br>☐ Certified mail/RR<br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |

## Certified Mail Electronic Delivery Confirmation™



DellItalia and Santola
18 TONY GALENTO PLZ
ORANGE NJ 07050-2611

US POSTAGE AND FEES PAID
FIRST-CLASS
Oct 03 2019
Mailed from ZIP 07050
1 oz First-Class Mail Letter



071S00777793

**USPS CERTIFIED MAIL**

9407 1108 9876 5045 7733 20

DITECH MTG
Thomas F. Marano, CEO
1100 VIRGINIA DR
FORT WASHINGTON PA 19034-3276

| Reference | |
|---|---|
| USPS # | 9407110898765045773320 |
| USPS Mail Class | Certified with Electronic Delivery Confirmation |
| USPS Status | Your item was delivered at 9:27 am on October 7, 2019 in FORT WASHINGTON, PA 19034. |
| USPS History | Held at Post Office, Retrieved from full parcel locker, 10/05/2019, 9:39 am, FORT WASHINGTON, PA 19034 |
| | Arrived at Unit, October 5, 2019, 9:16 am, FORT WASHINGTON, PA 19034 |
| | Departed USPS Regional Destination Facility, 10/04/2019, 7:59 pm, PHILADELPHIA PA DISTRIBUTION CENTER |
| | Arrived at USPS Regional Destination Facility, 10/04/2019, 10:35 am, PHILADELPHIA PA DISTRIBUTION CENTER |
| | Arrived at USPS Regional Origin Facility, 10/03/2019, 9:58 pm, KEARNY NJ DISTRIBUTION CENTER |
| | Accepted at USPS Origin Facility, October 3, 2019, 8:43 pm, ORANGE, NJ 07050 |
| | Shipping Label Created, USPS Awaiting Item, October 3, 2019, 2:57 pm, ORANGE, NJ 07050 |

**Electronic Delivery Confirmation Report © 2019 Certified Mail Envelopes, Inc. All rights reserved.**
The data collected for this mail label was authored and reported by The United States Postal Service USPS. Copies are available from your Post Office or online at www.USPS.com.  USPS Certified Mail™ is a registered trademark of The United States Postal Service. All rights reserved.
**Report Design Copyright 2019** Certified Mail Envelopes, Inc.  www.Certified-Mail-Labels.com www.Certified-Mail-Envelopes.com
**Date Verified: 10/08/2019 (UTC)**

# Exhibit C

 **ditech.**
HOME LOANS

Ditech Financial LLC
PO Box 15009
Tempe, AZ 85284-01009

October 24, 2019

DELL'ITALIA AFFINITO & SANTOLA
18 TONY GALENTO PLAZA
ORANGE, NJ 07050

Re:    Ditech Financial LLC ("Ditech")
       Customer Name(s):  NORMA AND SHARON CHIN
       Account Number:    71771844
       Property Address:  2609 HAMILTON TERR
                          UNION, NJ 07083

**THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT.  IF YOUR CLIENT IS
CURRENTLY IN BANKRUPTCY OR THEY DISCHARGED THIS DEBT IN A BANKRUPTCY, THE SERVICER
IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DEBT AS THEIR PERSONAL LIABILITY.**

Dear John Dell'Italia:

Thank you for contacting us about your client's mortgage.  Your client was evaluated for mortgage payment
assistance based upon the eligibility requirements of Deutsche Bank National Trust Company, as Trustee and
Supplemental Interest Trustee for IndyMac ABS, Inc., Home Equity Mortgage Asset-Backed Trust, Series INDS
2006-2B, the owner of the mortgage account.  Based on a careful review of the information your client provided to
us, they are not eligible for mortgage modification assistance due to the following reason(s):

- Your client's loan has been settled in full.

It is your responsibility to contact Ditech to discuss your client's above-referenced account.  If your client wishes
to explore their options or has any other questions, please contact your client's account representative.  Your
client's assigned account representative is Marcie S. at 1-855-858-3873, extension 50091.

Our credit decision may have been based in part upon information obtained in a report from the below-referenced
consumer reporting agency listed.  Your client has the right under the Fair Credit Reporting Act to obtain a free
copy of their credit report.  Your client must request their free copy within 60 days of the date of this letter.  Your
client also has the right to dispute the information contained in their credit report with the credit reporting agency.
The credit reporting agency did not make the decision regarding your client's ineligibility and is not able to provide
your client with specific reasons as to why they are not eligible for a modification.

Credit Reporting Agency:          TRANSUNION

Reporting Agency Address:         2 BALDWIN PLACE, P.O. BOX 1000
                                  CHESTER, PA 19022

Toll Free Number:                 800-888-4213

Web Address:                      http://www.transunion.com

We also obtained your client's credit score from this consumer reporting agency and used it in making our credit
decision.  Your client's credit score is a number that reflects the information in their consumer report.  Your client's
credit score can change, depending on how the information in their consumer report changes.

Your client's credit score: Not scored

Generic Modification Denial & Ineligible Letter-ABK, 12/28/2015                              LTR-479(ABK)

Date: NA

Scores range from a low of 350 to a high of 850

Key factors that adversely affected your client's credit score: NA

If your client has any questions regarding their credit score, they should contact TRANSUNION at:

Address:  2 BALDWIN PLACE, P.O. BOX 1000 CHESTER, PA 19022    Telephone number: 800-888-4213

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.  The Federal agency that administers compliance with this law concerning this creditor is the Federal Trade Commission, which can be contacted at:

Federal Trade Commission
Equal Credit Opportunity
Washington, DC 20580

Counseling is available at no charge from HUD-approved counselors through the HOPE Hotline: 1-888-995-HOPE.  This housing counseling on-demand service is available 24-hours a day/7-days a week in Spanish and English (other languages available on request).  Your client may also visit **http://www.hud.gov/offices/hsg/sfh/hcc/fc/**.

Ditech has designated the following address where mortgage loan customers must send any Qualified Written Request, Notice of Error or Request for Information:  PO Box 15009, Tempe, AZ 85284-0109.

Sincerely,


Ditech
1-800-643-0202
Monday – Friday 7 a.m. to 8 p.m. and Saturday 7 a.m. to 1 p.m. CST

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**John P. Dell'Italia, Esq.**
**Dell'Italia & Santola**
**18 Tony Galento Plaza**
**Orange, NJ   07050**
**(973) 672-8000**
**JPD1617**

------------------------------------------------x

In re:                                                          Case No.:19-10412 (jlg)

Ditech Holding Corporation, et al                     Chapter: 11

                           Debtor.

-----------------------------------------------x

**CERTIFICATION OF SERVICE**

John P. Dell'Italia, Esq., certifies as follows:

1.      I Represent the Movant and the debtor Norma Chin in this matter.

2.      I the attorney for this debtor in the United States Bankruptcy Court District of Newark New Jersey under case 19-27911.

3.      On November 13, 2019,  this office caused to be mailed with required postage thereon a copy of Notice of Motion for Relief from the Automatic Stay , Certification of Counsel, Supporting Exhibits thereof, Certification of Service and Proposed Order to the following:

[SPACE]

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| Weil, Gotshal et al<br>Ray C. Shrock, Esq.<br>767 Fifth Avenue<br>New York, NY 10153 | Debtor(s)' Attorney | ☐ Hand-delivered<br>Regular mail<br>☐ Certified mail/RR<br>☒ Other: <u>Notice of Electronic Filing</u><br>(D.N.J. LBR 5005-1) |
| Sunny Singh, Esq.<br>Weil Gotshal et al<br>767 Fifth Avenue<br>New York, NY 10153 | | ☐ Hand-delivered<br>Regular mail<br>☐ Certified mail/RR<br>☒ Other: <u>Notice of Electronic Filing</u> |
| Debra L Felder, Esq.<br>1152 15th Street NW<br>Washington DC 20005 | | (D☐ Hand-delivered<br>Regular mail<br>☐ Certified mail/RR<br>☒ Other: <u>Notice of Electronic Filing</u> |
| Thomas C Mitchell, Esq.<br>405 Howard Street<br>San Francisco, CA 94105 | | (☐ Hand-delivered<br>Regular mail<br>☐ Certified mail/RR<br>☒ Other: <u>Notice of Electronic Filing</u><br>(D.N.J. LBR 5005-1)D.N.J. LBR 5005-1).N<br>LBR 5005-1) |
| Greg M. Zipes<br>Office of the US Trustee<br>33 Whitehall Street 21st Floor<br>New York, NY 10004 | Trustee in Bankruptcy | ☐ Hand-delivered<br>Regular mail<br>☐ Certified mail/RR<br>☒ Other: <u>Notice of Electronic Filing</u><br>(D.N.J. LBR 5005-1) |
| Ditech Home Loans<br>PO Box 15009<br>Tempe, AZ 85284 | Debtor(s) | ☐ Hand-delivered<br>☒ Regular mail<br>☐ Certified mail/RR<br>☐ Other: <u>Notice of Electronic Filing</u><br>(D.N.J. LBR 5005-1) |
| Thomas F. Marano, CEO<br>DITECH MTG<br>1100 Virginia Drive<br>Fort Washington PA 19034 | | ☐ Hand-delivered<br>☒ Regular mail<br>☐ Certified mail/RR<br>☐ Other: <u>Notice of Electronic Filing</u><br>(D.N.J. LBR 5005-1) |
| Nicholas V. Rogers, Esq.<br>Phelan Hallinan, Diamond & Jones<br>1617 JFK Boulevard, Suite 1400,<br>Philadelphia, PA 19103. | Bankruptcy Attorney for Ditech New Jersey | ☐ Hand-delivered<br>☒ Regular mail<br>☐ Certified mail/RR<br>☐ Other: <u>Notice of Electronic Filing</u><br>(D.N.J. LBR 5005-1) |

I hereby certify under penalty of perjury that the above documents were sent using the mode of service indicated.

Dated: <u>November 13, 2019</u>

**DELL'ITALIA & SANTOLA**
**Attorneys for Debtor/Movant**

By: _____
        John P. Dell'Italia, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**John P. Dell'Italia, Esq.**
**Dell'Italia & Santola**
**18 Tony Galento Plaza**
**Orange, NJ   07050**
**(973) 672-8000**
**JPD1617**

-------------------------------------------------x

In re:                                    Case No.:19-10412 (jlg)

Ditech Holding Corporation, et al        Chapter: 11

                           Debtor.

------------------------------------------------- x

### ORDER VACATING AUTOMATIC STAY

        Upon the motion by John P. Dell'Italia, Esq. attorney for the Movant

and Debtor Norma Chin and Ditech Holding Corporation, (_____)

and under Bankruptcy Code 11 U.S.C. §362(d) for relief from the automatic stay as

to certain property as hereinafter set forth, and for cause shown, it is

        **ORDERED** that the automatic stay is hereby vacated to permit the movant to

institute or resume and prosecute to conclusion one or more action(s) in the U. S.

Bankruptcy Court District of Newark New Jersey to pursue the movant's rights

against the following:

        Debtor Ditech Holding Corporation, et al its Case 19-10412-jlg in the

Southern District of New York and its lien dated June 27, 2006  recorded on July 10,

2006 in M 11759 at page 849 on the

                ☒ Real property more fully described as:

                2609 Hamiton Terrace, Union, New Jersey

                BLOCK: 4410; LOT:32   and it is further

**ORDERED** that the movant may join the debtor and any trustee appointed in this case as defendants in its action(s) irrespective of any conversion to any other chapter of the Bankruptcy Code.

The movant shall serve this order on the debtor, any trustee and any other party who entered an appearance on the motion.

_____
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge