UNITED STATES BANKRUPTCY COURT        NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                           :

In re                                    :        Chapter 11
                           :

DITECH HOLDING CORPORATION, *et al.*,    :        Case No. 19-10412 (JLG)
                           :

Debtors.[1]                        :        (Jointly Administered)
                           :
---------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER ON THE THIRTY-SECOND OMNIBUS OBJECTION TO PROOFS OF CLAIMS WITH RESPECT TO THE CLAIMS OF VIATCHESLAV STREKALOV AND ELENA EVGLEVSKAYA (CLAIM NOS. 156 AND 2627)

**APPEARANCES**:

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
By:     Sunny Singh
        Richard W. Slack
        Angeline J. Hwang

*Counsel to the Plan Administrator*

Tara Twomey
P.O. Box 5146
Carmel, CA 93921

*Consumer Representative*

Viatcheslav Strekalov
11 Shoshone Trail
Wayne, NJ 07470

*Claimant, pro se*

---

[1]     The Debtors' Plan (as defined below) was confirmed, which created the Wind Down Estates. The Wind Down Estates, along with the last four digits of each of their federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

**HONORABLE JAMES L. GARRITY, JR.**
**UNITED STATES BANKRUPTCY JUDGE:**

## Introduction

By order dated September 26, 2019 (the "Confirmation Order"), Ditech Holding

Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates

(collectively, the "Debtors") confirmed the Third Amended Joint Chapter 11 Plan of Ditech

Holding Corporation and its Affiliated Debtors (the "Plan").[2]  Under the Plan, the Plan

Administrator, the GUC Recovery Trustee, and the Consumer Representative have the exclusive

authority to object to Claims filed against the Debtors.[3]  In accordance with the Court's Claims

Procedures Order, the Plan Administrator and the Consumer Representative jointly filed

Omnibus Objections to Proofs of Claim (each an "Objection") that extend to thousands of

Claims.  Under those procedures if a creditor challenges an Objection, it is deemed to hold a

"Contested Claim" and the Court will conduct either a "Merits Hearing" or a "Sufficiency

Hearing" on the Contested Claim.  The matter before the Court is the Objection of the Plan

Administrator and Consumer Representative to the claims filed by Viatcheslav Strekalov

---

[2]    *See* Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, dated
September 22, 2019 [ECF No. 1326]; Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding
Corporation and Its Affiliated Debtors, dated September 26, 2019 [ECF No. 1404]. All capitalized terms are defined
below or in the Plan.  All references to "ECF No. ___" are references to documents filed in these Chapter 11 Cases,
Jointly Administered under Case No. 19-10412.

[3]    Briefly, and without limitation, the Plan calls for the consummation of a Sale Transaction followed by the
"Wind Down" of the Estates. *See* Plan Article V (Means for Implementation).  For these purposes, the term "Wind
Down" means "following the closing of the Sale Transaction, the process to wind down, dissolve and liquidate the
Estates and distribute any remaining assets in accordance with the Plan."  *See id.* § 1.184.  The "Wind Down
Estates" consist of the Debtors (excluding Reorganized RMS) pursuant to and under the Plan on or after the
Effective Date. *See id.* § 1.186.  The Plan Administrator appointed under the Plan (*see id.* § 1.130) has the authority
and right on behalf of each of the Debtors to carry out and implement all provisions of the Plan, including, without
limitation, to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors, other than
with respect to General Unsecured Claims and Consumer Creditor Claims (*see id.* § 5.6(e)).  The Plan Administrator
is also responsible for making distributions to holders of Allowed Claims in accordance with the Plan, other than
with respect to holders of Allowed General Unsecured Claims and Allowed Consumer Creditor Claims. *Id.*

("Strekalov") and Elena Evglevskaya ("Evglevskaya" and with Strekalov, the "Claimants")

against Ditech Financial LLC ("Ditech Financial").  Pursuant to the Objection, the Plan

Administrator and Consumer Representative seek to expunge the Contested Claims.

     The Court conducted a Sufficiency Hearing on the claims.  Pursuant to the Claims

Procedure Order, the legal standard of review that the Court applies at a Sufficiency Hearing is

equivalent to the standard applied by the Court upon a motion to dismiss pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure.[4]  For the reasons stated herein, the Court finds

that accepting all factual allegations asserted by the Claimants in support of their Contested

Claims as true, drawing all reasonable inferences in the Claimants' favor, and interpreting the

Contested Claims, Response and Sur-Reply submitted by the *pro se* Claimants to raise the

strongest arguments that they suggest, the Contested Claims fail to state claims against Ditech

Financial that are plausible on their face.  Accordingly, the Court sustains the Objection and

expunges the Contested Claims.

## Jurisdiction

     The Court has jurisdiction over this matter pursuant to §§ 1334(a) and 157(a) of title 28

of the United States Code, and the Amended Standing Order of Referral of Cases to Bankruptcy

Judges of the United States District Court for the Southern District of New York, dated January

31, 2012 (Preska, C.J.).  This is a core proceeding.  28 U.S.C. § 157(b)(2)(B).

## Background

     On February 11, 2019 (the "Commencement Date"), the Debtors commenced voluntary

cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The

---

[4]    Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") makes Rule 12 of the
Federal Rules of Civil Procedure applicable herein.

chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule

1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  On March 27,

2019, the Debtors filed their schedules of assets and liabilities and statements of financial affairs

(collectively, the "Schedules") (ECF Nos. 289-313).  On May 7, 2019, the Debtors filed certain

amended Schedules (ECF Nos. 511-512).

On February 22, 2019, the Court entered the Order Establishing Deadline for Filing

Proofs of Claim and Approving the Form and Manner of Notice Thereof (ECF No. 90) (the "Bar

Date Order").  Pursuant to the Bar Date Order, the Court set April 1, 2019 at 5:00 p.m.

(prevailing Eastern Time) as the deadline for each person or entity, not including governmental

units (as defined in § 101(27) of the Bankruptcy Code) to file a proof of claim in the Debtors'

chapter 11 cases (the "General Bar Date").  On March 27, 2019, the Court extended the General

Bar Date to April 25, 2019 at 5:00 p.m. (prevailing Eastern Time) (ECF No. 272) (the "Extended

General Bar Date").  On May 2, 2019, the Court extended the Extended General Bar Date solely

for consumer borrowers to June 3, 2019 at 5:00 p.m. (prevailing Eastern Time) (ECF No. 496).

The claims register is prepared and maintained by Epiq Corporate Restructuring, LLC.  It shows

that approximately 7,800 proofs of claim were filed in the chapter 11 cases.  Pursuant to the

Confirmation Order, the Court set the deadline for each person or entity asserting Administrative

Expense Claims to file proofs of claim in the chapter 11 cases to thirty-five (35) days from the

date of service of the notice of entry of the Confirmation Order - November 11, 2019.

## Claim Objection Procedures

Under the Plan, the Plan Administrator, on behalf of each of the Wind Down Estates, has

exclusive authority to object to Administrative Expense Claims, Priority Tax Claims, Priority

Non-Tax Claims, and Intercompany Claims; the GUC Recovery Trustee, on behalf of the GUC

Recovery Trust, has the exclusive authority to object to General Unsecured Claims; and the

Consumer Representative has the exclusive authority to object to Consumer Creditor Claims.

*See* Plan § 7.1.  Hereinafter, the Plan Administrator, GUC Recovery Trustee and the Consumer

Representative collectively will be referred to as the "Estate Representatives."  On November 19,

2019, the Bankruptcy Court entered an Order Approving (I) Claim Objection Procedures and (II)

Claim Hearing Procedures (ECF No. 1632) (the "Claims Procedures Order").  That order

authorizes the Estate Representatives to object to Claims in accordance with Claims Objection

Procedures set forth in the order.  *See* Claims Procedures Order ¶ 2.  Without limitation, the

procedures authorize the Estate Representatives to file Omnibus Objections to Claims seeking

reduction, reclassification, or disallowance of Claims.  In support of those objections, the Estate

Representatives are permitted to rely on the grounds set forth in Bankruptcy Rule 3007(d), as

well as on one or more of the following grounds:

(1) The amount claimed contradicts the Debtor's books and records;
(2) The Claim seeks recovery of amounts for which the Debtors are not liable;
(3) The Claims are not entitled to the asserted status or priority;
(4) There is insufficient legal basis for the Claim;
(5) The Claims do not include sufficient documentation to ascertain the validity of such Claims;
(6) The Claims were or will be satisfied in the normal course of business;
(7) The Claims have been waived, withdrawn, or disallowed pursuant to an agreement with the Debtors or an order of this Court; and
(8) The Claims are objectionable under section 502(e)(1) of the Bankruptcy Code.

*See id.* ¶ 2(i)(a)-(h).

Under the procedures, a properly filed and served response to an Omnibus Objection

gives rise to a "Contested Claim."  The Estate Representative is required to schedule a contested

hearing (each a "Claim Hearing") for each such claim.  *Id.* ¶ 3(iv).  The Claim Hearing will be

scheduled as either a "Sufficiency Hearing" or a "Merits Hearing."  A Sufficiency Hearing is a

non-evidentiary hearing to address whether the Contested Claim has stated a claim for relief that

can be allowed against the Debtors. *Id.* ¶ 3(iv)(a). The legal standard of review that the Court

will apply at a Sufficiency Hearing is equivalent to the standard that the Court applies to motions

under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Id.* A Merits Hearing is an

evidentiary hearing on the merits of the Contested Claims. *Id.* ¶ 3(iv)(b).

## Contested Claims

The following Contested Claims are at issue herein:

| Claim No. 156 | Claimants: | Viatcheslav Strekalov and Elena Evglevskaya (the "Strekalov Claim") |
| | | |
| | Debtor: | Ditech Financial |
| | Amount: | $1,650,000 ($700,000 secured) |
| | Status: | Partially secured non-priority claim |
| | | |
| Claim No. 2627 | Claimants: | Viatcheslav Strekalov and Elena Evglevskaya (the "Administrative Expense Claim," and together with the Strekalov Claim, the "Strekalov Claims") |
| | | |
| | Debtor: | Ditech Financial |
| | Amount: | $1,650,000 |
| | Status: | Administrative expense claim under 11 U.S.C. § 503. |

The Claimants filed a "Certification in Support of Claim" (the "Strekalov Certification")

consisting of approximately 45 pages of documents in support of the Strekalov Claim. They

filed a two-page document in support of the Administrative Expense Claim.

The Plan Administrator and Consumer Representative filed an Objection to those claims.[5]

In part, in support of the Objection, the Plan Administrator and Consumer Representative assert,

as follows:

> The Plan Administrator asserts that based on the books and records, the Plan Administrator believes there is no basis for the Proof(s) of Claim.
>
> The Plan Administrator, with the assistance of its professionals, and the Consumer Representative have examined each Claim, documentation provided with respect to each Claim and the Debtors' respective books and records, and have determined in each case that (i) there is insufficient evidence to support the validity of the Claims, in the amounts and priorities asserted, and/or (ii) such Claims are deemed to have no merit by the Debtors.
>
> The Plan Administrator and the Consumer Representative believe the Claims have no basis at all in their entirety based on the Debtors' books and records and the supporting documentation submitted by the Borrower, if any.

*See* Thirty-Second Omnibus Claims Objection ¶ 13.

The Claimants timely filed a response to the Objection (the "Response").[6]  The Plan

Administrator and Consumer Representative jointly filed a reply to the Response (the "Reply").[7]

They did not submit any documents in support of the Reply.  The Claimants filed a Sur-Reply,

including four documents in support of the Sur-Reply.[8]  The Court conducted a Sufficiency

Hearing on the Contested Claims.

---

[5]    *See* Thirty-Second Omnibus Claims Objection to Proofs of Claim (No Basis Consumer Creditor Litigation Claims)*, dated January 17, 2020 (ECF No. 1764).

[6]    *See* Notice of Opposition of Hearing on Thirty-Second Omnibus Claims Objection To Proof of Claim, dated February 18, 2020 (ECF No. 1831).

[7]    *See* Joint Reply of Plan Administrator and Consumer Representative in Support of the Thirty-Second Omnibus Objection with Respect to Claim of Elena Evglevskaya And Viatcheslav Strekalov (Claim Nos. 156 And 2627), dated March 24, 2020 (ECF No. 2031).

[8]    *See* The Reply For Joint Reply of Plan Administrator and Consumer Representative In Support of the Thirty Second Omnibus Objection With Respect to Claim of E. Evglevskaya and V. Strekalov (ECF No. 2083).

## **Applicable Legal Standards**

Under § 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed under

section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. §

502(a). *See also* Fed. R. Bankr. P. 3001(f) ("A proof of claim executed and filed in accordance

with these rules shall constitute prima facie evidence of the validity and amount of the claim.").

Section 502(b) sets forth the grounds for disallowing a properly filed proof of claim. *See* 11

U.S.C. § 502(b); *see also Travelers Cas. and Sur. Co. of Am. v. Pacific Gas and Elec. Co.,* 549

U.S. 443, 449 (2007) ("But even where a party in interest objects [to a claim], the court 'shall

allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions

enumerated in § 502(b)"); *HSBC Bank USA, N.A. v. Calpine Corp.*, No. 07 Civ. 3088 (GBD),

2010 WL 3835200 at *5 (S.D.N.Y. Sept. 15, 2010) ("All claims are allowed unless specifically

proscribed by one of the nine exceptions listed in § 502(b)." (citing *Travelers*, 549 U.S. at 449)).

As relevant, § 502(b) states that if a party in interest objects to a claim, the Court:

> [A]fter notice and a hearing, shall determine the amount of such claim in lawful
> currency of the United States as of the date of the filing of the petition, and shall
> allow such claim in such amount, except to the extent that— (1) such claim is
> unenforceable against the debtor and property of the debtor, under any agreement
> or applicable law for a reason other than because such claim is contingent or
> unmatured[.]

11 U.S.C. § 502(b)(1). Whether a claim is allowable "generally is determined by applicable

nonbankruptcy law." *In re W.R. Grace & Co*., 346 B.R. 672, 674 (Bankr. D. Del. 2006). In the

face of a properly filed claims objection, the claimant must prove by a preponderance of the

evidence that under applicable law the claim should be allowed. *In re Rockefeller Ctr. Props*.,

272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000) ("Once an objectant offers sufficient evidence to

overcome the prima facie validity of the claim, the claimant is required to meet the usual burden

of proof to establish the validity of the claim."). "[T]he ultimate burden of persuasion is always

on the claimant." *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991).

Bankruptcy Rule 7008 incorporates Rule 8 of the Federal Rule of Civil Procedure. As

relevant, Rule 8 states that a claim for relief must contain "a short and plain statement of the

claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "In determining

whether a party has met their burden in connection with a proof of claim, bankruptcy courts have

looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." *In re

DJK Residential LLC,* 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009). *See also In re 20/20 Sport,

Inc.,* 200 B.R. 972, 978 (Bankr. S.D.N.Y. 1996) ("In bankruptcy cases, courts have traditionally

analogized a creditor's claim to a civil complaint [and] a trustee's objection to an answer[.]").

Accordingly, claims drafted by *pro se* claimants "are to be construed liberally, but they must

nonetheless be supported by specific and detailed factual allegations sufficient to provide the

court and the defendant with 'a fair understanding of what the plaintiff is complaining about and

... whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortg., LLC (In re Residential

Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (quoting *Iwachiw v. New York City

Bd. of Elections,* 126 Fed. Appx. 27, 29 (2d Cir. 2005)).

Pursuant to the Claims Procedures Order, "the legal standard of review that will be

applied by the Court at a Sufficiency Hearing will be equivalent to the standard applied by the

Court [pursuant to Bankruptcy Rule 7012] upon a motion to dismiss for failure to state a claim

upon which relief can be granted." *See* Claims Procedures Order ¶ 3(iv)(a). Under Rule

12(b)(6), a claim may be dismissed due to a "failure to state a claim upon which relief can be

granted." Fed. R. Civ. P. 12(b)(6). Under that rule, "a complaint must contain sufficient factual

matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 323-24 (2d Cir. 2011), *cert. denied*, 565 U.S. 1241 (2012).  In assessing the sufficiency of the allegations, the Court accepts the complaint's factual allegations as true and must draw reasonable inferences in favor of the plaintiff.  *Tellabs Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 323 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. at 678.  As such, courts "are not bound to accept as true a legal conclusion couched as a factual allegation[.]"  *Twombly*, 550 U.S. at 555.  In assessing the merits of the Rule 12(b)(6) motion, the Court "must liberally construe all claims . . . and draw all reasonable inferences in favor of the plaintiff."  *See In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 353 (S.D.N.Y. 2011) (citing *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003)).  In particular, the Court must construe a *pro se* complaint liberally.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008); *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008).  Moreover, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. at 322.

### Facts[9]

On December 31, 2004, the Claimants executed a mortgage on the property located at 11 Shoshone Trail, Wayne, NJ 07470 (the "Property") to secure a thirty-year $330,000 loan from

---

[9]    Subject to the standards applicable to Rule 12(b)(6) motions, the Court relies on the Contested Claims, the Response, the Sur-Reply and the documents attached to those documents as the source of the Facts for this Memorandum Decision and Order.

Coastal Capital Corp d/b/a the Mortgage Shop ("Coastal Capital") to Evglevskaya (the "Mortgage"). The Mortgage secured a promissory note executed by Evglevskaya as a sole borrower (the "Note"). In June 2013, Bank of America, N.A. ("BANA") assigned the Note and Mortgage to Ditech Financial (the "2013 Assignment"). *See* Strekalov Certification at 22. On February 12, 2014, Evglevskaya requested that the Federal National Mortgage Association ("Fannie Mae") "void [her] responsibility pertaining to the loan." *See id.* at 29.

On or about January 26, 2015, Ditech Financial sued to foreclose the Mortgage (the "Foreclosure Action") in the Superior Court of New Jersey, Chancery Division, Passaic County (the "Trial Court"). *See* Strekalov Certification at 40. In September 2016, while that action was pending, Strekalov sued BANA, Fannie Mae, and Ditech Financial in the Trial Court for damages arising out of their alleged wrongdoing in connection with the Mortgage (the "State Civil Action"). In June 2017, the Trial Court granted Ditech Financial and Fannie Mae's motions to dismiss the State Civil Action, and in January 2019, the Superior Court of New Jersey, Appellate Division (the "Appeals Court") affirmed the Judgment of Dismissal. *See Strekalov v. Bank of Am., N.A.*, No. A-4360-16T1, 2019 WL 166596, at *1 (N.J. Super. Ct. App. Div. Jan. 11, 2019) ("*Strekalov v. BANA*"). In February 2016, Strekalov filed a third-party complaint in the Foreclosure Action, asserting counterclaims against Ditech Financial and third-party claims against BANA and Fannie Mae. On June 8, 2016 (the "June 8 Decision"), the Trial Court granted motions by BANA and Fannie Mae dismissing the third-party complaint and third-party claims with prejudice. On February 21, 2017, the Trial Court granted Ditech Financial's motion for summary judgment on its complaint in the Foreclosure Action, and on January 30, 2018, it entered a final judgment awarding Ditech Financial the sum of $546,532.79 and directing that the Property be sold (the "Judgment of Foreclosure," together with the Judgment of

Dismissal, the "New Jersey Judgments"). The Appeals Court affirmed that decision. *See Ditech Financial, LLC v. Evglevskaya*, Civil Action No. A-2633-17T4, 2019 WL 3187966, at *1 (N.J. Super. Ct. App. Div. July 16, 2019) ("*Ditech v. Evglevskaya*").

In appealing the Judgment of Foreclosure, the Claimants argued that Ditech Financial lacked standing to sue because the Mortgage was fraudulent and was illegally assigned to Ditech Financial. *See Ditech v. Evglevskaya*, 2019 WL 3187966, at *2. Strekalov asserted that in 1997, an individual named Vitaly Bushteyn defrauded the Claimants in obtaining a mortgage against the Property (the "Bushteyn Mortgage"), that neither he nor Evglevskaya was liable on that mortgage, and that the Trial Court failed to account for that in entering the Judgment of Foreclosure. *Id.* The Appeals Court rejected that argument. Based upon its review of the Trial Court record, it found that the Trial Court accounted for the Bushteyn Mortgage and did not base its decision to award Ditech Financial the Judgment of Foreclosure on the basis of the Claimants' default under the Bushteyn Mortgage. *Id.* It noted that the Trial Court found that the Claimants were not responsible for the repayment of the Bushteyn Mortgage, and that public records showed that the Bushteyn Mortgage was discharged on February 18, 2005. *Id.* The Appeals Court also held that the Trial Court correctly found that to secure Evglevskaya's obligations under the Note, the Claimants, as joint tenants, executed the Mortgage on December 31, 2004, and that the transaction was not related to the Bushteyn Mortgage. *Id.* Strekalov also contended that the Trial Court erred in finding that the Mortgage had been properly assigned to Ditech Financial. The Appeals Court rejected that argument. *Id.* at *3. It held that the unchallenged certifications submitted at trial by Ditech Financial's and Fannie Mae's employees demonstrated that Ditech Financial was in possession of the Note and Mortgage and that it held those instruments by reason of the assignments from Coastal Capital to BANA, from BANA to Green

Tree, and Green Tree to Ditech Financial. *Id.* at *2. The Appeals Court affirmed the Judgment

of Foreclosure. *Id.* at *2. In doing so, it found that there were no material issues with the

"validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to

resort to the mortgaged premises," and, as such, Ditech Financial was entitled to enforce its

rights and pursue a foreclosure action. *Id.* (citations omitted).

In his complaint in the State Civil Action, Strekalov asserted that Ditech Financial and

the other defendants were "trying to impose on [him] and Evglevskaya responsibility for the

return of a loan in the amount of $330,000 which they never requested and [had] been issued

fraudulently to third parties as proven in the [c]ourt of law." *Strekalov v. BANA*, 2019 WL

166596, at *2. He claimed that the defendants harmed his and Evglevskaya's credit and caused

them "moral and health damages . . . at $100,000 each." *Id.* On June 7, 2017, the Trial Court

granted Ditech Financial and Fannie Mae's motions to dismiss the complaint with prejudice. *Id.*

The Trial Court barred the relief sought in the complaint on the following grounds:

> Under principles of res judicata -- the Trial Court determined the "plaintiff's ...
> claims are nothing more than repackaged versions of the same unsupported
> allegations of [his] prior [counterclaims] and third-party claims in the foreclosure
> action [filed in February 2016], which were all dismissed with prejudice" in the
> June 8 Decision.

> To the extent that any of Strekalov's current claims differed from the prior
> counterclaims and third-party claims resolved in the June 8 Decision, Trial Court
> found that those claims were barred under the "entire controversy doctrine,"
> because they should have been raised in February 2016.

> The Mortgage was executed in December 2004, and Strekalov filed the complaint
> in September 2016, accordingly, the claims were barred by the six-year statute of
> limitations.

> As Evglevskaya was the only mortgagee on the Mortgage, Strekalov lacked
> standing to assert claims on Evglevskaya's behalf.

*See id.* The Appeals Court affirmed the Judgment of Dismissal.

On March 11, 2019, the Claimants timely filed the Strekalov Claim. In it, the Claimants assert a partially secured claim for damages totaling $1,650,000 allegedly occasioned by Ditech Financial's "deliberate collusion to defraud." *See* Strekalov Claim, Part 2, ¶ 8. On November 4, 2019, the Claimants filed the unsecured Administrative Expense Claim in the sum of $1,650,000. As support for that claim, they assert that "[t]he debt was formed as a result of fraud on the part of Ditech Financial, LLC., which unlawfully appropriated the rights to the contested loan[.]" Administrative Expense Claim at 1. The Strekalov Claims arise out of the same facts and seek to redress the same alleged pre-petition wrongdoing. In short, the Claimants assert that the Mortgage was fraudulent, that BANA had been removed as servicer of the loan as of July 1, 2012, and thus could not legally assign it to Ditech Financial in 2013, and, as such, Ditech Financial, as assignee, lacked the authority to foreclose on the Property. In resolving the merits of the Objection, the Court will consider the arguments made and facts introduced by the Claimants in support of both claims.

## Analysis

The Claimants make three arguments in support of the Strekalov Claims and in opposition to the Plan Administrator's objection to their claims. First, they assert that Ditech Financial colluded with BANA to illegally acquire, service and seek to foreclose upon a fraudulent mortgage. Strekalov Certification at 5. They contend that during a deposition, Todd A. Visser, a Ditech Financial representative "nearly confirmed collusion between Bank of America and Green Tree." *Id.* at 6, 37-38.[10] *See also* Sur-Reply, ¶ I, § 3; ¶ II, § 4. As support, they point to a portion of a transcript of a deposition given by Mr. Visser on September 20, 2016. *See* Strekalov Certification at 37-38. However, the Claimants overstate the significance of that

---

[10]    Ditech Financial is Green Tree's successor.

testimony.  In substance, Mr. Visser: (i) testified to the fact that Green Tree started servicing

Evglevskaya's loan on June 1, 2013; (ii) described the protocol utilized by Green Tree when the

servicing rights to loans are transferred to Green Tree; and (iii) testified that he did not know the

specifics of the deal between Green Tree and BANA.  *Id.*  Mr. Visser's testimony cannot

reasonably be construed as confirming, let alone suggesting, that Green Tree and BANA

colluded to illegally acquire, service and seek to foreclose on Evglevskaya's "fraudulent

mortgage."  Next, the Claimants contend that BANA was not a legitimate administrator of the

Note and did not have the power to assign the Note to Green Tree because "[s]ince as of July 1,

2012 it was dismissed from performing any activities with the loan by the last owner, which was

the Fannie Mae Company."  *Id.* at 5-6; *see also* Sur-Reply, ¶ I, § 3; ¶ II, § 4.  As support for

those contentions, they rely on correspondence that they had with Fannie Mae.  They point to a

July 25, 2012 email from Fannie Mae to Evglevskaya, in which Fannie Mae states, in part,

"please [do] not list Bank of America . . . as the mortgage holder (from July 1,2012 mortgage

holder Fannie Mae only [sic])".[11]  They also point to a June 28, 2013 letter from Fannie Mae to

---

[11]    In all, the email reads, as follows:

Hello Ms Evglevskaya,

I have reviewed your package. However, below is a list of missing documents or corrections that is
needed for the counselor.

[P]lease list self employed income and social security income in the correct space on page2 of the
Uniform
Borrowers Asst. Form inside the budget [sic]
[P]lease not list Bank of America on page 2 as the mortgage holder ( from July 1,2012 mortgage
holder Fannie Mae only) [sic]
[P]lease send all schedules for the 2010 & 2011 tax returns
year to date profit and loss statement
hardship letter- which an example of how to write one is attached
2 most recent bank statements with all pages that are numbered

If you have any questions, please give me a call but I can be reached by email faster.

Sur-Reply Appendix No. 1.

Evglevskaya.  *See* Sur-Reply Appendix No. 3.  Fannie Mae sent the letter in response "to the

letter [it] received on May 21, 2013, dated. May 17, 2013, about the legality of transferring

service rights to [Evglevskaya's] loan to Green Tree Servicing, LLC."  *Id.*  Fannie Mae advised

that "[y]our mortgage loan that was previously serviced by BANK OF AMERICA is from July

1, -2012 at disposal -Fannie Mae only[,]" and "[f]rom the indicated date BANK OF AMERICA

has no rights to any operations with this loan."  *Id.*  It advised  Evglevskaya that in connection

with her appeal, it was "investigating all the circumstances associated with this loan[,] and that

"[f]or the period of investigation, [it] decided not to appoint a new servicer for this loan."  *Id.*

Fannie Mae concluded by informing Evglevskaya that she would "be informed additionally of

the results of the investigation."[12]  The Claimants read that correspondence to prove that BANA

lacked the authority to assign the Note and Mortgage to Green Tree.  From that, they contend

that BANA's notice of the assignment of the Note and Mortgage to Green Tree (*see* Strekalov

Certification at pp. 22-25) proves that Ditech Financial and BANA colluded to defraud them.

However, a fair reading of the correspondence is that the Claimants challenged BANA's

---

[12]    They also cite to Strekalov's January 21, 2014 letter to Fannie Mae.  The text reads as follows:

> A profound investigation has been conducted lately related to the receipt of this loan.
>
> The fact of numerous forgeries, conducted by third parties upon the receipt and use of this loan, has been proved.
>
> I have several times presented and sent at your address all necessary documents. For instance, one of the letters, dated December 12, 2013.
>
> Taking into consideration our mutual desire to regulate this issue, please find attached a text of Agreement for signing.
>
> Should you have any additions or notes on your part, please send them to me immediately.
>
> Thank you for cooperation.

Sur-Reply Appendix No. 3.  That self-serving letter does not add support to the Claimant's assertion that BANA was not authorized to assign the Note to Green Tree.

assignment of the Note to Green Tree and asked Fannie Mae to consider that issue.  At best, the

language in Fannie Mae's July 25, 2012 email regarding BANA's right to service the Note and

Mortgage that the Claimants rely on in asserting that BANA had no such rights in 2013, is

ambiguous.  That is confirmed by the fact that nearly a year later, in its June 28, 2013 letter to

Evglevskaya, Fannie Mae advised the Claimants that it was investigating the circumstances

associated with the transfer of the Note and Mortgage.  None of the documents that the

Claimants have submitted in support of the claims further their contention that BANA lacked

authority to assign the Note and Mortgage to Green Tree.  Finally, the Claimants assert that

Ditech Financial has caused them "enormous financial damage, irreparable damage to their

business reputation and financial history, damage to their health, as well as tremendous moral

suffering."  Strekalov Certification at 6-7.  They say that those damages total, as follows:

> "Actually" stolen funds – around $ 700,000.00;
>
> Damage to business reputation - $ 500,000.00;
>
> Damage to credit and financial history - $250,000.00; and
>
> Damage to health and moral suffering - $ 200,000.00.

*See id* at 7.  Further, they assert that Ditech Financial, in coordination with BANA stole

$613,023.04 from them (*id.* at 6, 20) and executed an illegal assignment of the servicing rights

under the Mortgage and Note to Ditech Financial (*id*. at 22).  As support for those contentions,

the Claimants cite to a (i) Ditech Billing Statement, dated January 16, 2019 showing Accelerated

Amount of $613,023.04 (*id.* at 20); and (ii) BANA Notice to Evglevskaya dated May 11, 2013

advising that BANA was transferring loan servicing rights to Green Tree (*id.* at 22-25).

However, the Claimants do not say what made the transaction illegal, and the Contested

Claims and supporting documents are silent as to how Ditech Financial stole funds from the

Claimants or how the Claimants otherwise suffered injuries at the hands of Ditech.  Still, in their

Response, the Claimants contend that "Ditech Holding's actions are based on fraud[.]"  *See*

Response at 2.  In New York, the elements of a cause of action for fraudulent misrepresentation

are "that: (1) the defendant made a false representation of a material fact; (2) with knowledge of

its falsity; (3) with scienter, namely an intent to defraud the plaintiff; (4) and upon which

plaintiff justifiably relied; (5) thereby causing damage to the plaintiff."  *Cofacredit v. Windsor

Plumbing Supply*, 187 F.3d 229, 239 (2d Cir. 1999) (citing *Cohen v. Koenig*, 25 F.3d 1168, 1172

(2d Cir. 1994)).  Despite the well-established rule that "the submissions of a *pro se* litigant must

be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*[,]'" a

pro se plaintiff must still plead sufficient facts to state a claim that is plausible on its face.

*Triestman v. Federal Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir. 2006) (alteration in

original) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).  The Claimants have

failed to do so.  Neither the Response nor the Strekalov Certification contains facts supporting

the Claimants' allegations of fraud.  Likewise, the Claimants offered no documentation to

demonstrate that Ditech Financial engaged in fraud.  No reading of the Strekalov Claims or the

Response suggests that the Claimants could plausibly state a claim of fraud against Ditech

Financial.  For those reasons, the Claimants have not met their burden to demonstrate that the

Contested Claims state claims against Ditech Financial that are plausible of their face.

The claims underlying the Strekalov Claims substantially overlap with the claims that the

Claimants unsuccessfully asserted against Ditech Financial in the Foreclosure Action and State

Civil Action.  "[I]t is well settled that a court may dismiss a claim on *res judicata* or collateral

estoppel grounds on a Rule 12(b)(6) motion."  *Bd. of Managers of 195 Hudson St. Condo. v.

Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 470 (S.D.N.Y. 2009) (citation omitted); *see*

*also Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (affirming a Rule 12(b)(6) dismissal

on res judicata grounds). "A court may consider a *res judicata* defense on a Rule 12(b)(6)

motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents

attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine*

*SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014). Courts may take judicial notice of

matters of public record, including court rulings, when considering motions to dismiss. *See*

*Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

The doctrine of res judicata holds that "a final judgment on the merits of an action

precludes the parties or their privies from relitigating issues that were or could have been raised

in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). It constitutes an absolute bar "not

only as to every matter which was offered and received to sustain or defeat the claim or demand,

but as to any other admissible matter which might have been offered for that purpose." *SEC v.*

*First Jersey Secs., Inc.,* 101 F.3d 1450, 1463 (2d Cir. 1996) (quoting *Nevada v. United States*,

463 U.S. 110, 129–30, 103 S .Ct. 2906, 77 L. Ed. 2d 509 (1983)). State judicial proceedings

"'shall have the same full faith and credit in every court within the United States . . . as they

have by law or usage in the courts of such State . . . from which they are taken.'" *Marrese v.*

*Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (quoting 28 U.S.C. § 1738). "To

determine the effect of a state court judgment, federal courts . . . are required to apply the

preclusion law of the rendering state." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir.

2000). Here, New Jersey is the rendering state. Thus, to determine whether the New Jersey

Judgments bar the Claimants from asserting the Strekalov Claims, the Court will consider

whether (1) the New Jersey Judgments were final judgments on the merits; (2) the litigants were

the same parties; (3) the prior court was of competent jurisdiction; and (4) the causes of action

were the same.  *See Mullarkey v. McKenna (In re Mullarkey)*, 536 F.3d 215, 225 (3d Cir. 2008)

("Both New Jersey and federal law apply res judicata or claim preclusion when three

circumstances are present: '(1) a final judgment on the merits in a prior suit involving (2) the

same parties or their privies and (3) a subsequent suit based on the same cause of action.'")

(quoting *Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 1991)).

The New Jersey Judgments were final judgments on the merits issued by courts of

competent jurisdiction against the Claimants, and in favor of Ditech Financial and others.  In the

Foreclosure Case, the Claimants argued that "Ditech [Financial] lacked standing to foreclose . . .

the mortgage [was] fraudulent and was illegally assigned to Ditech [Financial]."  *See Ditech v.

Evglevskaya*, 2019 WL 3187966, at *2.  Thus, the claims asserted against Ditech Financial in the

Foreclosure Case are virtually identical to those at issue in the Strekalov Claims.  The Trial

Court found that "there were no material issues with the 'validity of the mortgage, the amount of

the indebtedness, and the right of the mortgagee to resort to the mortgaged premises,' [thus,]

Ditech was entitled to enforce its rights and pursue a foreclosure action," and the Appeals Court

affirmed.  *Id*.  In the State Civil Action, the Claimants alleged that BANA, Ditech Financial, and

Fannie Mae were "trying to impose on [them] responsibility for the return of a loan in the

amount of $330,000 which they never requested and [had] been issued fraudulently to third

parties as proven in the [c]ourt of law."  *See Strekalov v. BANA*, 2019 WL 166596, at *2.  As

discussed above, the Appeals Court affirmed the dismissal of the case on numerous procedural

grounds.  Applying the res judicata doctrine, the Appeals Court found that Claimants' allegations

in the State Civil Action were "nothing more than repackaged versions of the same unsupported

allegations of [their] prior counterclaims and third-party claims in the [F]oreclosure [A]ction…,

which were all dismissed with prejudice on June 8, 2016."  *Id.* (quotation marks omitted).  On

appeal, the court also "found cause to dismiss the action by examining the substance of plaintiff's

complaint.  To the extent the complaint raised common law fraud claims, the complaint was

deficient because it did not allege all the requirements of" the fraud claim.  *Id.* at *3.  The

Appeals Court also held that any allegations concerning harm to the Claimants' credit were pre-

empted by the Fair Credit Reporting Act.  *Id.*  Application of the doctrine of res judicata bars the

Claimants from asserting those claims herein, and provides additional grounds for sustaining the

Objection and expunging the Strekalov Claims.

## <u>Conclusion</u>

Based on the foregoing, the Court finds that the Claimants have not met their burden of

demonstrating that the Strekalov Claims state claims against Ditech Financial that are plausible

on their face.  The Court sustains the Objection and expunges the Strekalov Claims.

IT IS SO ORDERED.

Dated: July 3, 2020
       New York, New York

                                        /s/ *James L. Garrity, Jr.*
                                        Honorable James L. Garrity, Jr.
                                        United States Bankruptcy Judge