UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **In re Ditech Holding Corporation,** *et al.*, <br><br> Debtor. | ) <br> ) Chapter 11 <br> ) <br> ) Case No. 19-10412 (JLG) <br> ) <br> ) <br> ) |

# RESPONSE IN OPPOSITION OF KEVIN G. SNYDER AND THE ESTATE OF MARY SNYDER TO THE CONSUMER CLAIM TRUSTEE'S TWENTY-NINTH OMNIBUS OBJECTION TO PROOFS OF CLAIM

**TABLE OF CONTENTS**

Introduction ........................................................................................................................... 4

Background ........................................................................................................................... 5

Standard of Review ............................................................................................................... 8

Argument ............................................................................................................................... 9

    I.    The Snyders have set forth a cause of action for violation of South Carolina Supreme Court Administrative Order 2011-05-02-01. ..................................................... 11

        A.    Failure to send correspondence to the correct address after notice. ............................. 12

        B.    Failure to timely respond to foreclosure intervention request. ..................................... 13

        C.    Repeated contacts with represented mortgagors. ............................................................ 13

        D.    Inappropriate conduct in litigation. ................................................................................. 14

        E.    Spoliation of evidence. .................................................................................................... 15

        F.    Relief for Violation of the Admin Order. ....................................................................... 15

    II.    The Snyders have set forth a cause of action for Breach of Contract. ............................... 17

    III.    The Snyders have set forth a cause of action for a violation of the South Carolina Unfair Trade Practices Act. ................................................................................................. 18

Conclusion ........................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Fuller v. E. Fire & Cas. Ins. Co.,* 124 S.E.2d 602 (S.C. 1962) ....................................................... 17

*In re DiBattista*, 615 B.R. 31 (Bankr. S.D.N.Y. 2020) ................................................................... 16

*In re Granite Partners, L.P.*, 210 B.R. 508 (Bankr. S.D.N.Y. 1997) ............................................. 8

*In re Marini*, 28 B.R. 262 (Bankr. E.D.N.Y. 1983) ........................................................................ 15

*In re Mortgage Foreclosure Actions*, 720 S.E.2d 908 (S.C. 2011) ....................................... passim

*In re Soliman*, 539 B.R. 692 (Bankr. S.D.N.Y. 2015) ..................................................................... 16

*In re Workman*, 392 B.R. 189 (Bankr. D.S.C. 2007) ..................................................................... 16

*Kershaw County Board of Education v. U.S. Gypsum Co.*, 396 S.E.2d 369 (S.C. 1990) ............. 16

*Minter v. GOCT, Inc.,* 473 S.E.2d 67, 70 (S.C.Ct.App.1996) ......................................................... 17

*Reisner v. Stoller*, 51 F.Supp.2d 430 (S.D.N.Y. 1999). .................................................................... 8

*Richardson v. Hambright*, 374 S.E.2d 296 (S.C. 1988) .................................................................. 15

*State ex rel. McLeod v. Brown*, 294 S.E.2d 781 (S.C. 1982) .......................................................... 18

*Tharpe v. GE Moore Co.*, 174 S.E.2d 397 (S.C. 1970) ................................................................... 17

**Statutes**

11 U.S.C. § 523 .................................................................................................................................. 15

15 U.S.C. § 1692c ............................................................................................................................. 14

S.C. Code § 36-1-201 ....................................................................................................................... 11

S.C. Code § 37-1-102 ....................................................................................................................... 19

S.C. Code § 37-22-110 ..................................................................................................................... 19

S.C. Code § 39-5-140 ....................................................................................................................... 18

S.C. Code § 39-5-20 ......................................................................................................................... 18

**Treatises**

*Restatement (Second) of Torts* § 8A (1965) ..................................................................................... 15

## Introduction

Kevin G. Snyder and the Estate of Mary S. Snyder (the "Snyders" or "Claimants") are the claimants in claim number 20043.[1] The Consumer Claims Trustee's grounds for disallowance of this claim are:

> Claim based on litigation, where trial court found in favor of Debtors as to injunctive and equitable claims. The trial court's findings preclude further relief on the issues presented. Fails to state an affirmative claim for which relief may be granted.

(Exhibit A to Objection, p. 10). The central premise of this argument is incorrect: the trial court's orders specifically reserved judgment on the causes of action germane to this claim (*i.e.* those requesting monetary relief):

> 8. …it is undisputed by the parties that [the Snyders'] counterclaims for Breach of Contract and Unfair Trade Practices are stayed…[The Snyders'] counterclaim for Civil Compensatory Contempt is stayed to the extent it seeks a monetary award…

(App 20-21 – March 27, 2019 order on motions for summary judgment).

> 2. [The Snyders'] counterclaims for Breach of Contract, Unfair Trade Practices, and (to the extent it seeks a monetary award) Civil Compensatory Contempt are stayed as a result of the Petition for Bankruptcy…

(App 27 – April 23, 2019 final order). Furthermore, the Snyders and Ditech stipulated on January 2, 2020, the Snyders may pursue their monetary claims against Ditech before this Court:

> This stipulation [of dismissal] is made without prejudice to, and specifically preserving, [the Snyders'] claim in the pending bankruptcy (Number 0000020042, amended by Number 0000020043) and [the Snyders'] appeal of non-monetary claims that are pending before the South Carolina Court of Appeals (Number 2019-000575).

(App 434). For these reasons alone, the Snyders' claims should be allowed. Additionally, the Snyders' claims should be allowed pursuant to the following:

---

[1] The undersigned is the "person…who will have the ultimate authority to settle or otherwise resolve the Claim on behalf of the claimant" requested by the notice of hearing.

**Background**

These claims arise out of misconduct during the servicing of the Snyders' mortgage. The Debtor is the purported successor to the original Plaintiff, BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP. The Claimants are Kevin Snyder, in his individual capacity as a mortgagor of the property, and as personal representative of his late wife, who was also a mortgagor.[2] Debtor's predecessor BAC Home Loans Servicing, L.P. ("BAC") filed the original foreclosure Complaint and Lis Pendens on September 23, 2010, and amended the Complaint and Lis Pendens on October 13, 2010. (App 35-39, 42, 45-49, 56-57). Kevin and Mary Snyder were served a Notice Foreclosure Intervention on December 17, 2012, which was denied. (App 59-60, 63). Undersigned counsel appeared for the Snyders on May 3, 2013, filing his notice of appearance with the Clerk of Court and serving it on BAC's counsel. (App 66).

On June 3, 2013, the Snyders filed and served their answer and counterclaims. (App 70-76). Three of these counterclaims (reproduced verbatim in the Argument, *infra*) form the basis of their claim in Bankruptcy.

BAC purportedly transferred the Snyders' loan at some point shortly thereafter to Green Tree Servicing, LLC, and on June 17, 2013, the Snyders' counsel sent Green Tree a letter informing it of the Snyders' representation, and enclosing a copy of *In re Mortgage Foreclosure Actions*, 720 S.E.2d 908 (S.C. 2011) (the "Admin Order"). (App 121). The Snyders' counsel followed up this letter with another letter on July 18, 2013, that enclosed a written authorization from the Snyders (requested by Green Tree) and another copy of the Admin Order. (App 144-45). BAC / Green Tree's attorney was copied on this letter. (App 144). These opening communications

---

[2] During the pendency of the underlying foreclosure action, Kevin Snyder's profoundly disabled daughter died (December 22, 2014), and almost a year later his wife, former Defendant Mary Snyder, died of undiagnosed lung cancer (November 23, 2015).

inaugurated a nearly six year period of bungled communications and foreclosure interventions, presented in detail in Argument I.

Pursuant to a September 30, 2013, status hearing, the foreclosure action was stayed pending foreclosure intervention. The Snyders' counsel was not provided notice of this hearing or order. (App 4). On March 12, 2014, the Master-in-Equity, without notice or hearing, granted BAC's motion to replace BAC Home Loans Servicing, LP with Green Tree Servicing, LLC as Plaintiff. (App 179-87).

Green Tree substituted counsel in the foreclosure action on April 9, 2015, and again on July 2, 2018. (App 9-12). The parties engaged in discovery, and Snyder filed a motion to compel on November 29, 2018 to compel Green Tree's responses to his discovery. (App 88-90, 179-87). Pursuant to a December 10, 2018, status conference (where the Snyders' motion to compel was heard without a court reporter), the Master-in-Equity issued a consent scheduling order and a consent order amending the caption to replace Green Tree Servicing, LLC with Ditech Financial, LLC. (App 13-16).

Ditech filed notice of its bankruptcy with the Master-in-Equity on March 1, 2019 (amended May 1, 2019). All parties filed motions for summary judgment on March 11, 2019. (App 291-433). The Master-in-Equity heard the motions for summary judgment at a pre-trial hearing on March 18, 2019. On March 27, 2019 the Master-in-Equity granted Ditech summary judgment as to the non-stayed portions (*i.e.* non-monetary relief) of Snyder's counterclaim for civil compensatory contempt, but denied it as to Snyder's quiet title counterclaim and Ditech's foreclosure action. (App 19-22). The Master-in-Equity's order also acknowledged Snyders' counterclaims for breach of contract and unfair trade practices were stayed. (App 21). The Snyders timely appealed this order to the South Carolina Court of Appeals (case number 2019-000575) on

March 29, 2019. Though the Snyders argued the Master-in-Equity lacked jurisdiction due to the pending appeal, the Master-in-Equity proceeded with a final hearing on April 1, 2019. (App 27 ¶ 1). The Master-in-Equity issued his final order on April 23, 2019, ordering the foreclosure of the mortgage and the sale of 1752 Orange Grove Shores. (App 23-32). Snyder amended his notice of appeal to include this order and also filed a motion for supersedeas on May 2, 2019. The Court of Appeals denied the motion for supersedeas, and this appeal remains pending.

On January 2, 2020, the parties filed with the Master-in-Equity a stipulation of dismissal dismissing Snyders' state law causes of action for monetary relief (portions of the civil compensatory contempt claim, breach of contract, unfair trade practices), but specifically preserving the Snyders' right to pursue these claims before this Court. (App 434).

## Standard of Review

According to the Notice of Hearing: "The legal standard of review that will be applied by the Court at a Sufficiency Hearing will be equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim upon which relief can be granted." (Entry 2837 p. 5). This district has set forth this standard as follows:

> On a motion to dismiss, the factual allegations in the complaint are presumed true, and all reasonable inferences are drawn in the plaintiff's favor. Dismissal is proper only when the plaintiff would not be entitled to any type of relief, even if it prevailed on the merits of its factual allegations. In addition to the complaint itself, the Court may consider the contents of any documents attached to the complaint or incorporated by reference, matters as to which it can take judicial notice, and documents in the non-moving party's possession or which it knew of or relied on in connection with its complaint.

*In re Granite Partners, L.P.*, 210 B.R. 508, 514 (Bankr. S.D.N.Y. 1997). "The court may also take judicial notice of matters of public record, such as pleadings and court orders from prior litigation between the parties." *Reisner v. Stoller*, 51 F.Supp.2d 430, 440 (S.D.N.Y. 1999).

# Argument

The basis of this claim are the counterclaims asserted before the Master-in-Equity, which are reproduced below:

**As a Further Defense
and by way of First Counterclaim
(Civil Compensatory Contempt)**

21. Plaintiff has failed to comply with Supreme Court Administrative Order 2011-05-02-01 in the following particulars:
    a. Failing to make a good faith effort to evaluate the Defendants for eligibility for foreclosure intervention;
    b. Failing to give the Defendants a full and fair opportunity to submit additional information to determine their eligibility for foreclosure intervention;
    c. Frustrating Defendants' ability to comply with foreclosure intervention or loss mitigation programs;
    d. Negotiating with the Defendants in bad faith;
    e. Generally failing to comply with the terms of this order in good faith; and
    f. Other particulars that shall be uncovered after a reasonable period of discovery.
22. As a direct, foreseeable, and proximate result of the above acts of omissions, the Defendants have suffered actual, direct, incidental, consequential, and special damages, including, but not limited to, attorneys' fees, costs, mental distress and anguish, and any other damages to be discovered after a reasonable period of discovery and determined by the trier of fact.
23. Defendants are entitled to a judgment against the Plaintiff in the amount of the above-referenced damages, attorneys' fees and costs, dismissal of the Plaintiff's complaint, and any other relief this Court deems just and proper.

**As a Further Defense
and by way of Second Counterclaim
(Breach of Contract)**

24. To the extent the mortgage referenced by the Plaintiff is an actionable contract between Plaintiff and the Defendants, the Plaintiff has breached this contract by:
    a. failing to notify the borrower(s) of the assignment of the alleged mortgage;
    b. violating the implied covenant of good faith and fair dealing as described in paragraph 21; and

  c. other particulars as will be determined after a reasonable amount of discovery.

25. As a direct, foreseeable, and proximate result of the Plaintiff's breach, the Defendants have suffered actual, direct, incidental, consequential, and special damages and the aims of the contract have been frustrated beyond repair.

26. Defendants are entitled to a judgment against the Plaintiff in the amount of the above-referenced damages, dismissal of the Plaintiff's complaint, recission of the contract, attorneys' fees and costs, and any other relief this Court deems just and proper.

**As a Further Defense**
**and by way of Third Counterclaim**
**(Unfair Trade Practices)**

27. The Plaintiff has engaged in the following unfair, oppressive, and/or deceptive acts:
  a. its violations of Administrative order 2011-05-02-01 detailed in paragraph 21;
  b. its violations of RESPA and the Attorney Preference Statute detailed in paragraph 14; and
  c. other acts and omissions to be determined after a reasonable period of discovery.

28. The Plaintiff has engaged in the aforementioned deceptive and unfair conduct in commerce in South Carolina and other states.

29. The Plaintiff's acts are capable of repetition and, upon information and belief, have been repeated.

30. The Plaintiff's conduct affects the public interest of the people of South Carolina.

31. The Plaintiff knew or should have reasonably known that its conduct violated the South Carolina Unfair Trade Practices Act, S.C. Code §§ 39-5-10 et seq., and was therefore a willful violation of the Act.

32. As a direct, foreseeable, and proximate result of the Plaintiff's unfair and deceptive practices, the Defendants have suffered actual, direct, incidental, consequential, and special damages.

33. Defendants are entitled to a judgment against the Plaintiff in the amount of the above-referenced damages (including treble damages), dismissal of the Plaintiff's complaint, attorneys' fees and costs, and any other relief this Court deems just and proper.

(App 73-75). The Snyders' February 28, 2019, cover letter to claim 20043 also references Snyder's responses to interrogatories (and an exhibit of documents), Debtor's responses to discovery, and

an affidavit of attorney's fees. (Claim 20043 pp. 4-5). Construing the facts in these documents, plus others available in the public record,[3] in a light most favorable to the Snyders, they have presented valid causes of action against Debtor.

**I.       The Snyders have set forth a cause of action for violation of South Carolina Supreme Court Administrative Order 2011-05-02-01.**

The Snyders asserted a counterclaim for Civil Compensatory Contempt in their counterclaims, based on Ditech's predecessor's violations the Admin Order. (App 73-74 ¶¶ 21-23). The Admin Order states in relevant part:

> The Court having jurisdiction over the foreclosure action shall hear and determine any dispute concerning any party's compliance with this order, including without limitation, the failure of any party to act in good faith in complying with the terms of this order. In the event the Court determines that any party to the foreclosure action, or their acting agent, has failed to comply with the terms of this order, or has not attempted to reach an agreement for foreclosure intervention in good faith, the Court may, in its discretion, impose such sanctions as it determines to be reasonable and just under the circumstances, including without limitation, the assessment of reasonable attorneys' fees and costs against the culpable party.

*In re Mortgage Foreclosure Actions*, 720 S.E.2d at 910.

"Good faith" is defined as: "honesty in fact and the observance of reasonable commercial standards of fair dealing." S.C. Code § 36-1-201(20).[4] Documents authenticated by Ditech's Responses to Snyders' Requests to Admit establish multiple instances where Ditech did not act in good faith:

---

[3] The full appellate record can be reviewed at:
https://ctrack.sccourts.org/public/caseView.do?csIID=69621

[4] As the note and mortgage in this case are subject to articles 3 & 9 of the Uniform Commercial Code, this definition is appropriately used here.

A.  Failure to send correspondence to the correct address after notice.

Throughout the foreclosure intervention process, Ditech and its predecessors repeatedly mailed critical correspondence and documents to the wrong mailing address.[5] The Snyders are aware of the following misdirected documents, but the true amount of lost correspondence is certainly greater:

a) Green Tree's March 13, 2014, application deficiency letter (App 152-54) used an incorrect address;

b) Green Tree's May 7, 2014, August 7, 2014, and September 7, 2014, billing statements (App 157, 161-62) used an incorrect address;

c) Green Tree's August 6, 2014 acknowledgement letter (App 160) used an incorrect address;

d) Green Tree sent an October 2014 foreclosure intervention application to an incorrect address, resulting in denial of a proposed modification (App 163); and

e) Ditech's April 13, 2016 foreclosure intervention application (App 168-70) is addressed to the Snyders' counsel's prior address, despite being informed of the new address a year earlier (App 164, 168-70).

The Snyders' counsel placed Ditech and its predecessors on notice of changes of address and/or incorrect addressing on October 22, 2014, March 4, 2015, and March 26, 2015. (App 163-64, 168). These failures, at a minimum, contributed to the excessive delays in processing the Snyder's multiple applications for foreclosure intervention/mitigation.[6]

---

[5] Ditech largely admits these mistakes. (App 103-15).

[6] Though more of a technical than substantive violation of the Supreme Court's order, Ditech's predecessors also required the Snyders' counsel to repeatedly submit needless written authorizations. Undersigned counsel appeared of record in this action on May 3, 2013. (App 118).

B.  Failure to timely respond to foreclosure intervention request.

Ditech's predecessor ignored the Snyders' June 17, 2013, request for foreclosure intervention until the Snyders' counsel repeatedly contacted Ditech's predecessor's counsel in August of 2013. (App 121, 128, 131-32). Ditech's predecessor's counsel provided the foreclosure intervention application on August 21, 2013. (App 133). This also contributed to delays in foreclosure intervention.

C.  Repeated contacts with represented mortgagors.

Ditech and its predecessors consistently, repeatedly, and flagrantly continued to contact the Snyders via telephone and/or mail until approximately 2017, when Ditech began mailing all correspondence, including billing statements, to the Snyders' counsel. The Admin Order mandates that foreclosure communications shall flow through the Mortgagor's attorney: "…the Mortgagee *shall* communicate with and otherwise deal with the Mortgagor through the Mortgagor's attorney" *In re Mortgage Foreclosure Actions*, 720 S.E.2d at 909 (emphasis added). On June 17, 2013, the Snyders' counsel contacted Ditech's predecessor directly to inform it of the Snyders' representation, though Ditech's predecessor's attorney had been notified on May 3, 2013. (App 118-21). Included in the June 17, 2013, letter was a copy of the Admin Order. The Snyders' counsel notified Ditech and its predecessors on June 17, 2013, July 18, 2013, October 30, 2013, November 6, 2013, November 12, 2013, June 4, 2014, and August 1, 2014, that the Snyders were represented by counsel and/or to cease communications with the Snyders. (App 121, 137, 139-47,

---

Ditech's predecessor's attorneys were served with this notice of appearance the same day. (App 119). Undersigned counsel informed Green Tree of his retention by letter dated June 17, 2013. (App 121). Green Tree, however, demanded that the Snyders execute a separate authorization form (App 145) before it would discuss this matter with the Snyders' counsel. While the Snyders did execute an authorization on July 9, 2013 (provided July 18, 2013) (App 143-45), Ditech's predecessor repeatedly demanded it be re-submitted. (App 142, 147).

13

158). By attempting direct contact, Ditech and its predecessors repeatedly violated the clear mandate of the Admin Order and the repeated requests of the Snyders.[7] (*e.g.* App 136, 139-140).

D.      Inappropriate conduct in litigation.

On June 14, 2013, Ditech's predecessor served requests to admit on the Snyders. (App 123). The Snyders timely served answers to these requests on July 15, 2013 (July 14, 2013 fell on a Sunday). (App 122-27). On August 13, 2013, the Snyders' counsel spoke with Ditech's predecessor's counsel via telephone about the potential for settlement of this matter. (App 128, 587). On the same day, Ditech's predecessor's counsel executed an Affidavit of Default, stating the Snyders had failed to respond to its Requests to Admit. (App 129-30, 587). Not only was this affidavit false, it was never served on the Snyders' counsel when it was filed with the court.[8] (App 129-30, 156). The Snyders' counsel did not learn of this affidavit until March 27, 2014, when the Snyders' counsel received a notice of the entry of a heretofore-unknown order amending the caption. (App 155). Upon review of the docket online, the Snyders' counsel discovered that he had not been informed of: (1) Ditech's predecessor's counsel's filing of the August 13, 2013, affidavit; (2) a September 30, 2013, status conference that Ditech's predecessor's counsel allowed to go forward without notice to the Snyders' counsel; (3) a September 30, 2013 order staying this case pending foreclosure intervention; and (4) Ditech's predecessor's counsel's filing of a motion and proposed order to amend on February 20, 2014, which was granted without hearing. (App 129-30, 134-135, 148-150, 156).

---

[7] Because this debt was in dispute, Ditech's predecessors' acts also violated the Fair Debt Collection Practices Act. *See* 15 U.S.C. § 1692c(c). These violations serve as an alternative basis for relief.

[8] Ditech is unable to deny that the affidavit is false, though it does admit it was never served on the Snyders' counsel. (App 106).

The Snyders' counsel immediately wrote Ditech's predecessor's counsel and demanded that Ditech's predecessor's counsel request the court strike the August 13, 2013 affidavit. (App 156). The Snyders' counsel referenced this request again on March 26, 2015 and April 28, 2015; the affidavit remained part of the record until struck/withdrawn at the motion for summary judgment hearing on March 18, 2019 (App 156, 168, 172-73, 587-88).

E.     Spoliation of evidence.

On March 4, 2015, the Snyders' counsel requested that Ditech's predecessor preserve documents related to this action. (App 164). Ditech, in its responses to Snyders' Third Set of Interrogatories, explains that it could not admit or deny several requests due to a lack of records from its predecessor. (App 99-101). The loss or destruction of these records have thus frustrated factfinding in this matter and have also contributed to the extreme delay in proceedings.

F.     Relief for Violation of the Admin Order.

As set forth above, Ditech (through its predecessor) has repeatedly violated the terms of the Admin Order, despite having notice of these violations and of the applicable order. As it is in the business of mortgage servicing, it is fair to assume that Ditech was aware of the consequences of its years-long pattern of conduct (*i.e.* substantial accrued interest and fees), thus making its conduct willful or intentional.[9] *See Restatement (Second) of Torts* § 8A (1965) (Acts are intentional when the actor "desires to cause consequences of his act, or…he believes that the consequences are substantially certain to result from it."); *see also In re Marini*, 28 B.R. 262 (Bankr. E.D.N.Y. 1983) (citing 11 U.S.C. § 523(a)(7)) (contempt not dischargeable); *In re Soliman*, 539 B.R. 692

---

[9] If not willful or intentional, Ditech's conduct evidences gross indifference to the Snyders' rights and manifests disregard for Plaintiff's duties under the Supreme Court's order. *Cf. Richardson v. Hambright*, 374 S.E.2d 296, 298 (S.C. 1988) ("Gross negligence is the intentional, conscious failure to do something which is incumbent upon one to do or the doing of a thing intentionally that one ought not to do.").

(Bankr. S.D.N.Y. 2015) (citing 11 U.S.C. § 523(a)(6)) (willful and malicious injury not dischargeable). Ditech's spoliation of evidence would further support sanctions under South Carolina discovery law. *E.g. Kershaw County Board of Education v. U.S. Gypsum Co.*, 396 S.E.2d 369, 372 (S.C. 1990). The Admin Order explicitly allows for awards of attorneys' fees. *In Re Mortgage Foreclosure Actions*, 720 S.E.2d at 910. According to the attached Declaration of Attorney's Fees and Costs, the Snyders have incurred attorney's fees and costs in this matter totaling $43,821.02. These fees and costs are appropriately awarded to the Snyders for Ditech's violations of the Admin Order.

Other damages are also appropriate for Ditech's violation of the Admin Order. *See In Re Mortgage Foreclosure Actions*, 720 S.E.2d at 910 ("…the Court may, in its discretion, impose such sanctions as it determines to be reasonable and just under the circumstances, including <u>without limitation</u>, the assessment of reasonable attorneys' fees and costs against the culpable party.") (emphasis added); *see also In re Workman*, 392 B.R. 189 (Bankr. D.S.C. 2007) (contempt action awarding compensatory damages of $9,000.00, or $176.00 for debtor's lost wages, $7,641.50 in legal fees, and $1,182.650 for injury to debtors' credit and their lost opportunity to refinance their home); *In re DiBattista*, 615 B.R. 31 (Bankr. S.D.N.Y. 2020) (civil contempt can compensate for any harm that has previously resulted, including emotional distress). The chief injury Ditech has caused is the unnecessary delay, for approximately ten years, of the fair consideration of the Snyders' multiple applications for modification. As of April 1, 2019, this loan accumulated $149,616.64 in accrued interest, advances, and fees. (App 26). As of September 18, 2020, this loan had accumulated $167,446.98 in accrued interest, advances, and fees.[10] (App 436).

---

[10] The outstanding principal of this loan is $137,020.25. (App 23-32).

Based on the case law above, these $167,446.98 (and growing) of ill-gotten charges are properly considered compensatory damages for Ditech's violation of the Admin Order.

**II.     The Snyders have set forth a cause of action for Breach of Contract.**

Snyder asserted a counterclaim for Breach of Contract in his counterclaims, based on Ditech's predecessor's failure to notify Snyder of an assignment of the mortgage and for its breach of the implied covenant of good faith. (App 74 ¶¶ 24-26). "This being an action for the breach of contract, the burden was upon the [plaintiff] to prove the contract, its breach, and the damages caused by such breach." *Fuller v. E. Fire & Cas. Ins. Co.,* 124 S.E.2d 602, 610 (S.C. 1962). There exists in every contract an implied covenant of good faith and fair dealing. *Tharpe v. GE Moore Co.*, 174 S.E.2d 397 (S.C. 1970). "The general rule is that for a breach of contract the defendant is liable for whatever damages follow as a natural consequence and a proximate result of such breach." *Fuller*, 124 S.E.2d at 610. "The purpose of an award of damages for breach of contract is to put the plaintiff in as good a position as he would have been in if the contract had been performed." *Minter v. GOCT, Inc.,* 473 S.E.2d 67, 70 (S.C.Ct.App.1996). "The proper measure of compensation is the loss actually suffered by the plaintiff as a result of the breach." *Id.* The ill-gotten $167,446.98 in ill-gotten fees and interest, directly and proximately caused by the acts of Ditech, represent the damages obtainable for Ditech's violation of the implied covenant of good faith and fair dealing.

**III. The Snyders have set forth a cause of action for a violation of the South Carolina Unfair Trade Practices Act.**

The Snyders asserted a counterclaim for a violation of the South Carolina Unfair Trade Practices Act ("SCUPTA") in their counterclaims, based on Ditech's predecessor's failure to comply with the Admin Order and its failure to comply with South Carolina's attorney preference statute. (App 75 ¶¶ 27-33).

SCUPTA provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." S.C. Code § 39-5-20(a). "The South Carolina Legislature directed that the courts be guided in construing the UTPA by the interpretations given by the Federal Trade Commission and by the Federal Courts to the Federal Trade Commission Act…" *State ex rel. McLeod v. Brown*, 294 S.E.2d 781, 783 (S.C. 1982).

> Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by Section 39-5-20 may bring an action individually, but not in a representative capacity, to recover actual damages. If the court finds that the use or employment of the unfair or deceptive method, act or practice was a willful or knowing violation of Section 39-5-20, the court shall award three times the actual damages sustained and may provide such other relief as it deems necessary or proper. Upon the finding by the court of a violation of this article, the court shall award to the person bringing such action under this section reasonable attorney's fees and costs.

S.C. Code § 39-5-140(a). The acts described in Argument I also constitute unfair and deceptive practices actionable under SCUPTA. Further, the late Mary Snyder was a signatory to the mortgage securing the loan at issue in this action (she was not a signatory to the note), and she was not given a choice of who to represent her at closing. (App 71, 188-90, 317-35). South Carolina's Attorney Preference Statue provides:

> The creditor must ascertain prior to closing the preference of the borrower as to the legal counsel that is employed to represent the debtor in all matters of the transaction relating to the closing of the transaction and except in the case of a loan

18

on property that is subject to the South Carolina Horizontal Property Act (Section 27-31-10, et seq.) the insurance agent to furnish required hazard and flood property insurance in connection with the mortgage and comply with such preference.

S.C. Code § 37-10-102(a). Chapter 22 of South Carolina's Consumer Protection Code ("Mortgage Lending") defines a "borrower" as: "a natural person in whose dwelling a security interest is or is intended to be retained or acquired if that person's ownership interest in the dwelling is or is to be subject to the security interest." S.C. Code § 37-22-110(7). Because Mary Snyder (now her estate) is a party to this lawsuit and to the mortgage, including her in the definition of "borrower" is consistent with the liberal construction and remedial nature of the Consumer Protection Code. *See* S.C. Code § 37-1-102 (Purposes; rules of construction).

As set forth in Argument I, Ditech's violations of the Admin Order were intentional; thus, the Snyders must be awarded attorneys' fees and costs of $43,821.02. Further, the $167,446.98 in ill-gotten interest and other charges set forth Argument I must be trebled to $502,340.94.

## **Conclusion**

The claims of Kevin Snyder and the Estate of Mary Snyder must be allowed.

Dated: 10/13/2020            By:  /s/ Jason Scott Luck

Jason Scott Luck (*pro hac vice*)
P.O. Box 47
Bennettsville, SC 29512
843.479.6863 (o)
843.479.7222 (f)
jason@luck.law

**Attorney for Kevin Snyder and the Estate of Mary Snyder**