UNITED STATES BANKRUPTCY COURT        NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
*In re:*                :      Case No. 19-10412 (JLG)
                         :      Chapter 11
Ditech Holding Corporation, *et al.*,    :
                         :      (Jointly Administered)
                Debtors[1]  :
-------------------------------------------------------- x

# MEMORANDUM DECISION AND ORDER GRANTING PLAN ADMINISTRATOR'S SIXTH OMNIBUS MOTION TO ENFORCE THE PLAN INJUNCTION AND CONFIRMATION ORDER [ECF NO. 2656] AS IT RELATES TO GAUTAM AND PANTHOBI SHARMA

**A P P E A R A N C E S :**

WEIL, GOTSHAL & MANGES, LLP
*Attorneys for Debtors*
767 Fifth Avenue
New York, New York 10153
<u>By:</u>    David Hill, Esq.
        Sunny Singh, Esq.
        Richard W. Slack, Esq.
        Cliff Sonkin, Esq.

TANNENBAUM HELPERN SYRACUSE & HIRSCHTRITT, LLP
*Attorneys for Gautam and Panthobi Sharma*
900 Third Avenue
New York, New York 10022
<u>By:</u>   Michael Riela, Esq.

---

[1]    The Wind Down Estates, along with the last four digits of their federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## Introduction[2]

Section 10.5 of the Debtors' confirmed Plan[3] contains an injunction provision (the "Plan

Injunction") which bars the holders of claims that arose prior to the Plan's Effective Date from

"commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or

other proceeding of any kind" against or affecting the Debtors.  Gautam and Panthobi Sharma

(the "Sharmas") are party to a Note and Mortgage relating to certain residential real property.

Eight days after the Effective Date, Ditech Financial LLC ("Ditech") commenced an action

against the Sharmas in Illinois state court to foreclose the Mortgage (the "Foreclosure Action").

In that action, the Sharmas are asserting counterclaims against Ditech for money damages

occasioned by and arising out of Ditech's alleged breach of contract and foreclosure on the

Mortgage (the "Counterclaims").  The Plan Administrator contends, and the Sharmas deny, that

the Plan Injunction bars them from pursuing any claim for money damages against Ditech in the

Foreclosure Action.  The matter before the Court is the Plan Administrator's Sixth Omnibus

Motion to Enforce the Plan Injunction and Confirmation Order (the "Motion").[4]  The Plan

Administrator filed a Reply to the Objection.[5] As relevant, through the Motion, the Plan

Administrator seeks to enforce the Plan Injunction and enjoin the prosecution of the

---

[2]    Capitalized terms that are not defined in this section either are defined below, or have the meanings ascribed to them in the confirmed Plan.

[3]    Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors (ECF No. 1326) ("Plan");  Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors (the "Confirmation Order") [ECF No. 1404].

[4]    Plan Administrator's Sixth Omnibus Motion to Enforce the Plan Injunction and Confirmation Order [ECF No. 2656].

[5]    Plan Administrator's Reply to the Objection of Gautam and Panthobi Sharma To the Sixth Omnibus Motion to Enforce the Plan Injunction and Confirmation Order [ECF No. 2804]. The Declaration of Richard Slack (the "Slack Declaration") is annexed as Ex. 1 to the Reply.

Counterclaims.  The Sharmas object to the Motion.[6]  For the reasons stated herein, the Court

overrules the Objection and grants the Motion.

## **Jurisdiction**

A party invoking this Court's post-confirmation jurisdiction must demonstrate both (i)

that the matter has a "close nexus to the bankruptcy plan or proceeding, as when a matter affects

the interpretation, implementation, consummation, execution, or administration of the confirmed

plan or incorporated litigation trust agreement," *Penthouse Media Group v. Guccione (In re Gen.*

*Media, Inc.),* 335 B.R. 66, 73 (Bankr.S.D.N.Y.2005) (quoting *Binder v. Price Waterhouse &*

*Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 168-69 (3d Cir. 2004)); and (ii) that the plan

provides for the retention of jurisdiction over the dispute.  *Id.* (citing *Hosp. and Univ. Prop.*

*Damage Claimants v. Johns Manville Corp. (In re Johns–Manville Corp.*), 7 F.3d 32, 34 (2d

Cir.1993)).  *See also Cohen v. CDR Creances S.A.S.* (*In re Euro-Am. Lodging Corp.*)*,* 549 F.

App'x 52, 54 (2d Cir. 2014) ("A party may invoke the authority of the bankruptcy court to

exercise post-confirmation jurisdiction only if the matter has a close nexus to the bankruptcy

plan . . . and the plan provides for the retention of such jurisdiction . . . ") (internal citations

omitted) (summary order); *Ace Am. Ins. Co. v. State of Mich. Workers' Comp. Ins. Agency* (*In re*

*DPH Holdings Corp.*), 448 F. App'x 134, 137 (2d Cir. 2011) (summary order), *cert. denied*, 567

U.S. 935 (2012).  *See also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (a

bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders).

---

[6]    Objection of Gautam and Panthobi Sharma to Plan Administrator's Sixth Omnibus Motion to Enforce the Plan
Injunction and Confirmation Order [ECF No. 2778] (the "Objection").

The Motion has a "close nexus" to the Plan, because the Plan Administrator seeks to enforce the Plan Injunction – a provision of the Plan – and the Confirmation Order, a prior order of the Court. *See, e.g.*, *In re Avaya Inc.*, No. 17-10089 (SMB), 2018 WL 4381524, at *3 (Bankr. S.D.N.Y. Sept. 12, 2018) (finding that motion to enforce Bar Date Order injunction and Discharge Injunction under confirmed plan had "close nexus" to plan.) The Plan provides for the retention of jurisdiction over the dispute because under the Plan the Court retained jurisdiction "to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court[,]" (Plan, Art. XI § 11.1(g)), "to hear, adjudicate, decide, or resolve any and all matters related to Article X of the Plan, including, without limitation, the releases, discharge, exculpations, and injunctions issued thereunder." *Id.,* Art. XI § 11.1(n). Accordingly, the Court has subject matter jurisdiction over the Motion.

### Background

On February 11, 2019, Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates (the "Debtors") filed petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in this Court. They remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 26, 2019, the Debtors confirmed their Plan, and on September 30, 2019 (the "Effective Date"), the Plan became

effective.[7]  Article X of the Plan addresses the "Effect Of Confirmation Of Plan."  Section 10.5

of the Plan contains the Plan's Injunction provisions.  As relevant, it states that

> [A]ll Entities who have held, hold, or may hold Claims against or Interests in the
> Debtors . . . are permanently enjoined, on and after the Effective Date, solely with
> respect to any Claims, Interests . . . from (i) commencing, conducting or
> continuing in any manner, directly or indirectly, any suit, action, or other
> proceeding of any kind (including, without limitation, any proceeding in a
> judicial, arbitral, administrative or other forum) against or affecting the Debtors . .
> . ."

Plan, Art. X § 10.5(b).  It also provides that "[t]he injunctions in this Section 10.5 shall extend to

any successors of the Debtors (including the Wind Down Estates) . . . and their respective

property and interests in property."  *Id.* Art. X § 10.5(d). The Wind Down Estates and their

counsel reviewed pending litigations against the Debtors to identify litigations where, among

other things, (i) the parties to such litigations were, in fact, asserting pre-petition monetary

claims against the Debtors (as opposed to, for example, a defense to a foreclosure action), (ii) the

litigation against the relevant Debtors was active, and (iii) the counterparty was aware of the Plan

Injunction.  Motion ¶ 2.  The Wind Down Estates sent letters to approximately 565 litigants who

have filed claims for monetary damages against the Debtors to inform them of the Court's

confirmation of the Plan and the Plan Injunction and to request that they dismiss the monetary

claims subject to the Plan Injunction.  *Id*. ¶ 3.[8]  Once informed of the Plan Injunction or after

follow-up communications, more than 400 parties voluntarily dismissed their monetary claims

against the Debtors. *Id.*  The correspondence notwithstanding, some parties (the "Litigation

Parties") either continued to actively pursue their monetary damages claims, affirmatively

---

[7]    Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation
and its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative
Expense Claims [ECF No. 1449].

[8]    *See* Motion Ex. 2 (sample of letter).

refused to dismiss them or have ignored repeated requests and refused to even respond to the

letters and emails notifying them of the Plan Injunction.  *Id.* ¶ 4.

Gautam and Panthobi Sharma

The Sharmas are among the Litigation Parties.  On November 16, 2007, Gautam and

Panthobi Sharma executed a promissory note (the "Note") and a mortgage (the "Mortgage") with

Bank of America, N.A., relating to residential real property located at 554 Bovidae Circle,

Naperville, Illinois. Objection ¶ 7.  The Mortgage and the Note were subsequently modified

pursuant to a loan modification agreement that the parties executed in June 2018.  *Id.*

On April 23, 2019, the Debtors defaulted under the Mortgage when a check for their

April Mortgage payment was not honored by the Sharmas' bank. The Mortgage provides that

upon default, "Lender at its option may require immediate payment in full of all sums secured by

this Security Instrument without further demand and may foreclose this Security Instrument by

judicial proceeding." *See* Mortgage ¶ 22.[9]  On May 1, 2019, Ditech sent a notice to Mr. Sharma

regarding the delinquency of his mortgage account.[10]  In that notice, Ditech advised him, among

other things, that the "[f]ailure to make a payment as described above may result in Ditech

exercising its contractual rights[,]" and that "[t]his notice does not preclude Ditech from pursuing

additional legal or equitable remedies available pursuant to applicable state or federal laws."

May 1 Notice.  Ditech also informed the Sharmas that in sending the notice, it was acting as "a

debt collector . . . in an attempt to collect a debt." *Id.*  On May 7, 2019, Ditech sent another

notice to Mr. Sharma regarding the delinquency of his mortgage account.[11]  Without limitation,

---

[9]    A copy of the Mortgage is annexed as Ex. A to the Complaint for Foreclosure (the "Complaint") which is
annexed as Ex. A to the Objection.

[10]    A copy of the notice (the "May 1 Notice") is annexed as Ex. C to the Slack Declaration.

[11]    A copy of the notice (the "May 7 Notice") is annexed as Ex. D to the Slack Declaration.

in the "Frequently Asked Questions" section of the notice, Ditech advised Mr. Sharma, among

other things, that

> If you do not respond to your lender's notices to you regarding past due
> payments, your lender may refer your loan to foreclosure in accordance with your
> mortgage loan documents and applicable law.

May 7 Notice. On May 23, 2019, Ditech sent a notice to Mr. Sharma regarding the delinquency

of his mortgage account.[12]  In that notice, Ditech advised Mr. Sharma, among other things, that

"YOUR ACCOUNT IS OR WAS MORE THAN 30 DAYS PAST DUE . . . ." *Id.*

Bar Date

On February 22, 2019, the Court entered an order establishing a General Bar Date for

claims of April 1, 2019, at 5:00 p.m. (prevailing Eastern Time).[13]   In part, the order states that

the term "claim" is "as defined in Section 101(5) of the Bankruptcy Code."  As relevant, the

Court-approved "Notice of Deadlines Requiring Filing of Proofs of Claim" states that

> Under section 101(5) of the Bankruptcy Code and as used in this notice, the word
> "claim" means a right to (a) payment, whether or not such right is reduced to
> judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,
> disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an
> equitable remedy for breach of performance if such breach gives rise to a right to
> payment, whether or not such right to an equitable remedy is reduced to
> judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured,
> or unsecured.

On May 2, 2019 (just after the Sharmas' payment default under the Mortgage), this Court

entered an order further extending the Bar Date for consumer borrower claims to June 3, 2019, at

5:00 p.m. (prevailing Eastern Time).[14]  Between May 3, 2019 and May 8, 2019, Epiq Corporate

---

[12]    A copy of the notice (the "May 23 Notice") is annexed as Ex. E to the Slack Declaration.

[13]    Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof
[ECF No. 90].

[14]    Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers *Nunc Pro Tunc*
[ECF No. 496].

Restructuring, LLC ("Epiq"), as the Debtors' noticing agent, sent notice of the extended Bar

Date to the Sharmas, by email and mail.  *See* Conklin Affidavit ¶ 2.[15]  In addition, between May

2019 and October 2019, Epiq provided the Sharmas with actual notice of the Ditech bankruptcy

proceedings by multiple mailings and emails.  *See* Conklin Affidavit.  Epiq's records do not

indicate that any mailing or email to the Sharmas was returned or bounced back as undelivered.

*Id.* ¶7.  The Sharmas did not file a proof of claim herein.

<u>The Foreclosure Action</u>

On October 8, 2019, eight days after the Effective Date, Ditech commenced the

Foreclosure Action against the Sharmas in the Circuit Court for the Eighteenth Judicial Circuit in

DuPage County – Wheaton, Illinois.  In its Complaint, Ditech asserts, among other things, that

the Sharmas are in default under the Mortgage because they failed to pay the required monthly

Mortgage installments due April 1, 2019 and thereafter. Complaint ¶ 3(J).  On March 10, 2020,

the Sharmas filed their Answer and Affirmative Defenses in the Foreclosure Action (the

"Sharma Answer").[16]  For their affirmative defenses, the Sharmas assert that prior to

commencing the Foreclosure Action, Ditech failed to provide them with written notices (i) called

for under sections 20 and 22 of the Mortgage (First and Second Affirmative Defenses); and (ii)

as required under both 12 C.F.R. § 1024.39(b), a Consumer Financial Protection Bureau

("CFPB") regulation, and the Federal Real Estate Settlement Procedures Act ("RESPA") (Third

Affirmative Defense).  *See* Sharma Answer at 3-9.  *See also* Objection ¶¶ 2, 10, 11.  On March

10, 2020, the Sharmas also filed the following Counterclaims against Ditech:

---

[15]    *See* Affidavit of Service of Tim Conklin, from Epiq, the Debtors' noticing agent, annexed as Ex. 2 to the Reply [ECF No. 2804].

[16]    A copy of the Sharmas Answer and Affirmative Defenses is annexed to the Objection as Ex. B.

|  |  |
|---|---|
| Count I: | Breach of Contract Based on Section 20 of the Mortgage |
| Count II: | Breach of Contract Based on Section 22 of the Mortgage |
| Count III: | Violation of the Consumer Financial Protection Bureau Regulations:  Noncompliance with 12 C.F.R. § 1024.39 |
| Count IV: | Violation of the Illinois Consumer Fraud Act: Breach of Contract Based [sic] Section 20 of the Mortgage |
| Count V: | Violation of the Illinois Consumer Fraud Act: Breach of Contract Based [sic] Section 22 of the Mortgage |
| Count VI: | Violation of the Illinois Consumer Fraud Act: Noncompliance with 12 C.F.R. § 1024.39 |

*See* Counterclaims.[17] *See also* Objection ¶¶ 3, 13.  In the Counterclaims, the Sharmas seek two forms of monetary damages from Ditech: (i) actual damages occasioned by the Ditech's alleged breaches of the Mortgage and alleged violations of state law (e.g., Counterclaim ¶ 40 ),[18] and (ii) attorneys' fees and other costs under 735 ILCS 5/15-1510 of the Illinois Mortgage Foreclosure Law (e.g., Counterclaim ¶ 41.)[19]  That provision authorizes a state court to award reasonable attorneys' fees and costs to a defendant in a foreclosure action who prevails in a motion, an affirmative defense or counterclaim, or in the foreclosure action.[20]

---

[17]    A copy of the Counterclaims is annexed to the Objection as Ex. C.

[18]    Counterclaim ¶ 40 states, as follows:

> As a direct and proximate result of said breach, the Plaintiff caused GAUTAM SHARMA and PANTHOBI SHARMA to incur damages in an amount equal to the payments Plaintiff claims Defendants failed to pay under the Mortgage and/or Note, any and all fees, interests, costs, alleged by Plaintiff is due to it, including, but not necessarily limited to attorney's fees, property inspection costs/fees, court reporter fees, expenses and costs of litigation, as stated and alleged by Plaintiff in its Complaint; as well as Defendants' own fees, costs, expenses and attorney's fees relative to these proceedings.

[19]    Counterclaim ¶ 41 states, as follows:

> Pursuant to 735 ILCS 5/15-1510, the Plaintiff is liable to GUATAM SHARMA and PANTHOBI SHARMA for all fees, costs, and expenses incurred relative to these proceedings.

[20]    Section 5/15-1510 states, as follows:

The Motion

  In the Motion**,** the Plan Administrator is seeking the entry of an order pursuant to sections 105(d), 524 and 1141 of the Bankruptcy Code and Rules 1015(c), 3020(d) and 9007 of the Federal Rules of Bankruptcy Procedure and the Confirmation Order, for authority to enforce the Plan Injunction.  The Plan Administrator seeks to (i) enforce the Plan Injunction by prohibiting the Litigation Parties from continuing prosecution of their monetary claims against the Debtors; (ii) permit the Plan Administrator on behalf of the Wind Down Estates to seek sanctions in the event that a Litigation Party continues its refusal to dismiss its monetary claims against the Debtors; and (iii) permit the Wind Down Estates, upon entry of the Proposed Order to file a notice (the "Enforcement Notice")[21] in each court before which a Litigation Party is asserting monetary claims against the Debtors, including a description of the order and the ability to seek sanctions.  Motion at ¶ 5.  Prior to the initial hearing on the Motion, eight Litigation Parties filed formal or informal objections to the Motion or requested that the hearing with respect to their matters be adjourned.  Seven of those Litigation Parties either have dismissed their claims or are

---

   (a) The court may award reasonable attorney's fees and costs to the defendant who prevails in a motion, an affirmative defense or counterclaim, or in the foreclosure action. A defendant who exercises the defendant's right of reinstatement or redemption shall not be considered a prevailing party for purposes of this Section. Nothing in this subsection shall abrogate contractual terms in the mortgage or other written agreement between the mortgagor and the mortgagee or rights as otherwise provided in this Article which allow the mortgagee to recover attorney's fees and costs under subsection (b).

   (b) Attorneys' fees and other costs incurred in connection with the preparation, filing or prosecution of the foreclosure suit shall be recoverable in a foreclosure only to the extent specifically set forth in the mortgage or other written agreement between the mortgagor and the mortgagee or as otherwise provided in this Article.

735 ILCS 5/15-1510 (2009).

[21] A proposed form of Enforcement Notice is annexed as Ex. 5 to the Motion.

in negotiations with Debtors to dismiss their claims through consensual stipulations. The Sharmas' Objection is the only remaining objection to the Motion.

The Sharmas do not dispute that the Plan Injunction bars the prosecution of the Counterclaims for monetary relief if the claims arose prior to the Plan's Effective Date. They contend that the Motion must be denied with respect to them because (i) the Counterclaims for attorney's fees and costs arise under a state statute that applies to foreclosure actions (i.e., the Illinois Mortgage Foreclosure Law), and not under the terms of the Note and Mortgage, and (ii) Ditech's acts and omissions that gave rise to the Counterclaims for attorneys' fees and costs occurred after the Effective Date, when Ditech commenced the Foreclosure Action without first providing the notices that are required by RESPA, CFPB regulation and the Mortgage. Objection ¶ 5.

The Plan Administrator disputes those contentions. It asserts that Counts I, II, IV and V of the Counterclaims are breach of contract claims relating from the Mortgage, and that Counts III and VI explicitly arise out of the Foreclosure Action. Reply ¶ 13. Moreover, it maintains that claims arising out of prepetition contracts, whether purely contractual or statutory in nature, are prepetition claims, even if those claims are not asserted until after Plan confirmation. *Id.* ¶ 3. Thus, it argues that the Counterclaims seeking monetary relief are subject to the Plan Injunction. *Id.* ¶ 4.

The Court considers those matters below.

### Discussion

Section 10.5(b) of the Plan enjoins a holder of a "claim" from "commencing, conducting or continuing in any manner, directly or indirectly" any separate actions outside of the Bankruptcy Court seeking monetary relief against the Debtors. Under section 1.29 of the Plan,

the term "claim" has "the meaning set forth in section 101(5) of the Bankruptcy Code, as against

any Debtor." *See* Plan, Art. I § 1.29.  Section 101(5) of the Bankruptcy Code defines "claim" to

include any

> right to payment, whether or not such right is reduced to judgment, liquidated,
> unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,
> equitable, secured, or unsecured.

11 U.S.C. § 101(5)(A).  The term "claim" is "sufficiently broad to encompass any possible right

to payment."  *Mazzeo v. United States (In re Mazzeo),* 131 F.3d 295, 302 (2d Cir. 1997). A "right

to payment ... usually refer[s] to a right to payment recognized under state law." *Travelers*

*Casualty & Surety Co. of America v. Pacific Gas & Electric Co.,* 549 U.S. 443, 451 (2007)

(internal quotation marks and citation omitted).  "A claim will be deemed to have arisen pre-

petition if the relationship between the debtor and the creditor contained all of the elements

necessary to give rise to a legal obligation—a right to payment—under the relevant non-

bankruptcy law." *Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.)*, 209

F.3d 125, 129 (2d Cir.2000)  (internal quotation marks omitted).  Under the Bankruptcy Code a

"contingent" claim  "refers to obligations that will become due upon the happening of a future

event that was within the actual or presumed contemplation of the parties at the time the original

relationship between the parties was created."  *Ogle v. Fid. & Deposit Co. of Md.,* 586 F.3d 143,

146 (2d Cir.2009) (internal quotation marks omitted) (quoting *In re Manville Forest Prods.*

*Corp.,* 209 F.3d 125, 128–29 (2d Cir.2000)); *see also In re St. Vincent's Catholic Med. Ctrs.,*

440 B.R. 587, 602 (Bankr.S.D.N.Y.2010).

Courts apply the "fair contemplation" test to determine whether a claim exists for breach

of contract.  Contract claims arise upon the execution of an agreement.  *Pearl-Phil GMT (Far E.)*

*Ltd. v. Caldor Corp.*, 266 B.R. 575, 582 (S.D.N.Y. 2001) (the "Bankruptcy Court's conclusion is

11

supported by the clear weight of case law in this Circuit which recognizes that contract-based

bankruptcy claims arise at the time the contract is executed. For example, courts consistently

hold that a post-petition breach of a pre-petition contract gives rise only to a prepetition claim"];

*In re Texaco Inc.*, No. 10-CV-8151 CS, 2011 WL 4526538, at *4 (S.D.N.Y. Sept. 28, 2011),

*aff'd sub nom. In re Texaco, Inc.,* 505 F. App'x 77 (2d Cir. 2012) ("Contract claims arise upon

execution of an agreement.")  As a matter of law, the breach of the Mortgage was within the

actual or presumed contemplation of the parties when the Sharmas executed the Note and

Mortgage.  *See In re Russell*, 193 B.R. 568, 571 (Bankr.S.D.Cal.1996) ("It is within the fair

contemplation of the parties entering into a contract that the other party may breach it, or have

made representations to induce the making of the contract. Thus, a contingent claim arises at that

point in time, although it may never mature.")  Moreover, here, the Sharmas' breach of the

Mortgage was fully within the parties contemplation as of the Bar Date because, at that time, the

Sharmas were in payment default under the Mortgage – and both the Sharmas and Ditech were

aware of the breach. The Sharmas were on notice that if they did not cure the default, Ditech

could seek to foreclose the Mortgage. As noted, the Mortgage provides that "[i]f the default is

not [timely] cured . . . Lender at its option may require immediate payment in full of all sums

secured by this Security Instrument without further demand and may foreclose this Security

Instrument by judicial proceeding."  Mortgage ¶ 22.  Moreover, prior to the Bar Date, in its

correspondence with the Sharmas in May of 2019, Ditech advised that it was a "debt collector"

seeking "to collect a debt," and notified the Sharmas that it was contemplating "refer[ing] your

loan to foreclosure in accordance with your mortgage loan documents and applicable law."

During the argument on the Motion, the Sharmas conceded that as of the Bar Date, it was within

the fair contemplation of the parties that Ditech could commence the Foreclosure Action, and

that in doing so, the Debtor could violate the notice requirements contained in sections 20 and 22

of the Mortgage, thereby giving rise to monetary compensatory damage claims for breach of

contract and violations of state law.  Thus, they concede that as of the Bar Date, they held a

contingent, unmatured claim for damages occasioned by Ditech's alleged breach of the

Mortgage.  Cf. *Rescap Liquidating Trust v. PHH Mortg. Corp. (In re Residential Capital, LLC*),

558 B.R. 77, 85-86 (S.D.N.Y. 2016) ("*Rescap II*") (stating "[t]he appellees do not dispute that

they contemplated that litigation related to the Contracts might arise when they executed the

Contracts with the protective Clauses, hence the inclusion of the provisions that enable the

appellees to claim attorney's fees in the event of contractual breach, or that provide for covenants

not to sue or forum selection clauses"), *rev'g and remanding* 541 B.R. 202 (Bankr. S.D.N.Y.

2015)("*Rescap I*"). The Sharmas had actual notice of the Bar Date but did not file a claim.

The Sharmas did not make the same concession with respect to the Counterclaims

seeking attorney's fees and other costs under the Illinois Mortgage Foreclosure Law.  It is settled

that prepetition contract-based claims for attorney's fees are deemed to arise upon execution of

the contract.  *See Ogle v. Fid. & Deposit Co. of Md.,* 586 F.3d 143, 147 (2d Cir.2009) (holding

that post-petition attorney's fees permitted under a pre-petition contract were properly a

contingent claim brought through a proof of claim and were "deemed to have arisen pre-

petition"); *see also Rescap II*, 558 B.R. at 85 (counterclaims for attorney's fees and costs under

the provisions of a prepetition contract were unsecured contingent claims that were within the

contemplation of the parties when they executed the contract).  The Sharmas contend that the

required elements necessary to give rise to a "right to payment" of attorney's fees and costs

under the Illinois Mortgage Foreclosure Law arose after the Effective Date, when Ditech

commenced the Foreclosure Action.  They say that is so because the Counterclaims for

attorney's fees and costs arise independently under state law, not out of the Note and Mortgage. Objection ¶¶ 20-22. The Court finds no merit in that argument. As pled, the Counterclaims arise out of the Note and Mortgage, as the Sharmas seek damages stemming from and arising out of Ditech's alleged breach of contract and foreclosure on the Mortgage. Counterclaims I, II, IV and V are breach of contract claims relating to the Mortgage. *See* Counterclaim I ¶¶ 21-26 (alleging breach of obligation to provide Notice of Grievance as required by § 20 of the Mortgage); Counterclaim II ¶¶ 48-52 (alleging breach of obligation to provide written notice of acceleration as required by § 22 of the Mortgage); Counterclaim IV ¶¶ 124-28 (alleging breach of obligation to provide Notice of Grievance as required by § 20 of the Mortgage); Counterclaim V ¶¶ 150-54 (alleging breach of obligation to provide Notice of Grievance as required by § 20 of the Mortgage). Counterclaims III and VI stem from the Foreclosure Action. As it was in the fair contemplation of the parties that Ditech could breach the notice provisions in sections 20 and 22 of the Mortgage, it follows that it was in the fair contemplation of the parties that the Sharmas could assert claims for compensatory damages under the Mortgage, as well as claims for attorney's fees and costs under the Illinois Mortgage Foreclosure Law. That is especially so, because 735 ILCS 5/15-1510(a) applies solely to mortgage foreclosure actions. *See* 735 ILCS 5/15-1103 (2019) ("The authority of the court [to award attorney's fees and costs] continues during the entire pendency of the foreclosure and until disposition of all matters arising out of the foreclosure.") It is irrelevant that the Sharmas are seeking attorney's fees and costs under state law, rather than under the terms of the Note and Mortgage. The Plan Injunction bars the Sharmas from recovering monetary damages equally under the contract and under state law. *See In re Rubin Family Irrevocable Stock Trust*, 516 B.R. 221, 227 (Bankr. E.D.N.Y. 2014) ("Although the facts of both *Ogle* and *Travelers* involved pre-petition contracts upon which the

14

claim to attorney's fees was based, the holdings of those cases also extend to claims for attorney

fees' and costs which are based upon statute."); *In re CD Realty Partners,* 205 B.R. 651, 656–60

(Bankr. D. Mass. 1997) (finding that claims could have been fairly contemplated even though

"[t]he claim at issue is a hybrid, both contractual and statutory. It is rooted in the Debtor's and its

predecessor's contractual promises of pension benefits to their employees. But ERISA and the

MPPAA regulate and specify how an employer shall meet its contractual obligations to provide

pension benefits").[22]

    Alternatively, the Sharmas contend that the Plan Injunction does not bar them from

asserting the state law counterclaims for attorney's fees and costs because in electing to sue the

Sharmas post Effective Date, Ditech has subjected itself to the strictures of the attorney's fees

provisions under state law, irrespective of its bankruptcy discharge. As support, the Sharmas

---

[22]    In this light, the Sharmas misplace their reliance on cases discussing when regulatory and tort claims arise under the Bankruptcy Code. *See* Objection ¶¶ 23-30.

    Rule 137 of the Illinois Supreme Court Rules is the Illinois equivalent of Federal Rule of Civil Procedure 11. Neither the Sharma Answer and Affirmative Defenses, nor the Counterclaims refers to Rule 137. Still, the Sharmas mention it throughout the Objection. *See* Objection ¶¶ 3, 4, 6, 14, 18, 21, 28, 40. Among other things, they argue that if the Court grants the Motion, it will effectively invalidate the powers afforded to the state court by Rule 137, and give mortgagees like Ditech freer rein to commence improper foreclosure actions. Objection ¶ 18. The Court disagrees. Rule 137 "is designed to prohibit the abuse of the judicial process by claimants who make vexatious and harassing claims based upon unsupported allegations of fact or law." *Peterson v. Randhava,* 313 Ill.App.3d 1, 7 (2000) (citing *Senese v. Climatemp, Inc.,* 289 Ill.App.3d 570, 581 (1997)); *see also Resurgence Capital, LLC v. Kuznar,* 2017 IL App (1st) 161853, ¶ 16  (The rule is intended "to discourage attorneys and parties from filing frivolous or false matters and asserting claims without any basis in law or fact, by penalizing those who engage in such wrongful conduct.") (citing *Baker v. Daniel S. Berger, Ltd.,* 323 Ill. App. 3d 956, 963 (2001)). The rule is penal in nature and must be strictly construed. It is not a fee shifting vehicle for the benefit of  prevailing parties. *Toland v. Davis,* 295 Ill.App.3d 652, 657 (1998). *See also Peterson v. Randhava,* 313 Ill.App.3d at 6-7 ("The rule is not intended to penalize litigants and their attorneys merely because they were zealous, yet unsuccessful.") A claim under Rule 137 must be brought in the action where the allegedly improper pleading is filed (Rule 137(b))  and arises when that pleading is filed. *Peterson v. Randhava,* 313 Ill.App.3d at 7 ("In deciding whether the imposition of sanctions is appropriate, the court must determine what was reasonable for the attorney or the signing party to believe at the time of filing, rather than engaging in hindsight.")  The Plan Injunction does not bar the application of Rule 137 in this matter.

rely on *Siegel v. Federal Home Loan Mortg. Corp.*, 143 F.3d 525 (9th Cir. 1998) and *Boeing*

*North American, Inc. v. Ybarra (In re Ybarra),* 424 F.3d 1018 (9th Cir.2005).  In those cases, the

Ninth Circuit determined that there was an exception to the discharge of attorney's fees when the

debtor elects to "return to the fray" in order to bring an action against a creditor after the debtor

receives its discharge in bankruptcy.  In part, the *Siegel* court stated that

> [The debtor] had been freed from the untoward effects of contracts he had entered
> into Freddie Mac could not pursue him further, nor could anyone else. He,
> however, chose to return to the fray and to use the contract as a weapon. It is
> perfectly just, and within the purposes of bankruptcy, to allow the same weapon
> to be used against him.

*Siegel*, 143 F.3d at 533 (citations omitted).  "In other words, while his bankruptcy did protect

him from the results of his past acts, including attorney's fees associated with those acts, it did

not give him carte blanche to go out and commence new litigation about the contract without

consequences."  *Id.* at 534.  In *In re Ybarra*, after filing a voluntary petition under chapter 11of

the Bankruptcy Code,[23] the debtor ("Ybarra") successfully vacated an order in the state court

dismissing an action she had filed against her employer (together with its successor, "Rockwell")

prior to filing for bankruptcy protection.  424 F.3d at 1020-21.  While the action was pending,

the bankruptcy court granted Ybarra a discharge in bankruptcy.  Ultimately Rockwell prevailed

in the litigation and the state court awarded it attorney's fees and costs (the "Fee Award").  *Id.* at

1021.  Rockwell sought leave in the bankruptcy court to enforce the Fee Award.  The bankruptcy

court granted the motion, but only to the extent of fees and costs that accrued after Ybarra filed

for bankruptcy.  In so ruling, the bankruptcy court relied on *Siegel*.  *Id.*  The Bankruptcy

Appellate Panel of the Ninth Circuit reversed, holding that the entire Fee Award was

encompassed in the discharge.  *Id.*  In reversing that judgment, the Ninth Circuit held that the

---

[23]    The case was later converted to one under Chapter 7 of the Bankruptcy Code.

fees and costs incurred post-petition were not discharged.  In doing so, the circuit reaffirmed

"that claims for attorney fees and costs incurred post-petition are not discharged where post-

petition, the debtor voluntarily commences litigation or otherwise voluntarily 'return[s] to the

fray.'" *Id.* at 1026 (citing *Siegel*, 143 F.3d at 533-34).  It found that

> [w]hether attorney fees and costs incurred through the continued prosecution of
> litigation initiated pre-petition may be discharged depends on whether the debtor
> has taken affirmative post-petition action to litigate a prepetition claim and has
> thereby risked the liability of these litigation expenses.

*Id.*  It concluded "that by affirmatively reviving the state suit, Ybarra 'returned to the fray.' Thus,

under *Siegel,* Rockwell's claim for attorney fees and costs *incurred* post-petition was not

discharged in the bankruptcy." *Id.*

In support of their argument, the Sharmas also rely on this Court's decision in *Rescap I*.

As described by the district court, in that case, after the bar date, and the effective date of the

debtors' plan, the Rescap Liquidating Trust (the "Trust"), as debtors' successor, sued a number

of pre-petition lenders alleging breaches of various contracts among the parties. *Rescap II*, 558

B.R. at 84.  The lenders asserted that the Trust's lawsuits breached certain provisions in the

contracts which purported to entitle each lender to seek damages in the form of attorney's fees

and costs.  *Id.* at 79. The lenders filed counterclaims (the "Lender Counterclaims") to recover

those damages.  *Id.* at 79-80. The Trust sought to enjoin the lenders from asserting the Lender

Counterclaims.  It argued that the counterclaims were subject to the bankruptcy discharge and

the injunction provisions of the bar date order.  In denying the motion, the bankruptcy court

found that the Lender Counterclaims were not prepetition claims subject to the bar date order and

bankruptcy discharge because they resulted from the voluntary post confirmation actions of the

Debtor and the Trust.  *Id.* at 84-85.  In part, the court adopted the "Ybarra rule."  On appeal, the

district court reversed and remanded the case for proceedings consistent with its opinion.

Without limitation, the district court found that the Trust's reliance on the Ybarra Rule was

"unpersuasive." *Id.* at 88**.**  In doing so, the court found that the Ybarra rule "had never been

relied upon in this Circuit prior to the Bankruptcy Court's Order in this case" and that the

exception "is at odds with well-established Second Circuit precedent that looks to contract

execution as the time of claim accrual, not to the act that caused the breach, let alone the

character of, or intent associated with, that act." *Id.* (citations omitted).   It also found that the

fact that the rule "is not rooted in statutory interpretation, but policy considerations . . . further

weighs against its adoption." *Id.* at 89.  The court found that to be particularly so, given that the

Second Circuit "has cautioned, '[e]xceptions to dischargeability are narrowly construed against

the creditor's objections, and *confined to those plainly expressed in the Bankruptcy Code*.'"  *Id.*

(quoting *In re Furio*, 77 F.3d 622, 624 (2d Cir.1996)) (citations omitted).  It concluded that

"there is therefore no basis for reading an exception for 'voluntarily ... returning to the fray' into

the Bankruptcy Code where there is otherwise no statutory support for the exception and the

Court of Appeals has instructed that 'the term "claim" is sufficiently broad to encompass any

possible right to payment.'" *Id.* (quoting *In re Mazzeo*, 131 F.3d 295, 302 (2d Cir. 1997)).

Nonetheless, the Sharmas urge the Court to adopt the rationale of *Siegel, Ybarra* and this

Court's decision in *Rescap I* and find that in electing to sue the Sharmas post Effective Date,

Ditech "returned to the fray" and, as such, is at risk for attorneys' fees and costs under Illinois

Mortgage Foreclosure Law.  They contend that the district court's criticism of *Ybarra* in *Rescap*

*II* focused largely on Second Circuit precedent that looks to contract execution as of the time of

accrual, while the Sharmas are not relying on the terms of their Mortgage for their

Counterclaims.  However, as previously discussed, the Court finds that distinction irrelevant,

since the state law Counterclaims arise out of a breach of the Mortgage and were within the

contemplation of the parties.  *See In re Rubin Family Irrevocable Stock Trust*, 516 B.R. 221

(Bankr. E.D.N.Y. 2014).  The Sharmas contend that there is a sound basis for excepting those

Counterclaims from the discharge and Plan Injunction for the following reasons.

> *First*, enforcing the discharge in this type of situation would force creditors like
> the Sharmas to file contingent proofs of claim, which this Court in *Residential
> Capital* observed could clog the claims docket with (mostly) needless protective
> proofs of claim.

> *Second*, enforcing the discharge would give the estate leeway to file improper
> foreclosure actions after the Effective Date, which is against the public policy of
> Illinois law.

Objection ¶ 40.  They say that by application of the Illinois Mortgage Foreclosure Law, plaintiffs

like Ditech, that file improper foreclosure actions may be burdened with the defendants'

attorney's fees and costs.  They say that if the discharge were to apply here, the estate would

have freer rein to file improper foreclosure actions in Illinois.  They maintain that this would

have the unintended consequence of rewarding Ditech's misconduct of (a) failing to abide by

conditions precedent in contracts it drafted, which should be construed against it, (b) failing to

abide by its obligation to provide notices under the CFPB regulation, and (c) prosecuting

foreclosure actions without a good faith basis.  They contend that this is of particular concern

where the target of the foreclosure actions are consumers like the Sharmas, and not large,

sophisticated businesses.  *Id.*

The Court finds no merit to those contentions and declines the Sharmas request to apply

the rationale of *Ybarra* and *Siegel* in this case.  Turning first to the second point, the Sharmas

overstate that risk that the discharge of the claims under Illinois Mortgage Foreclosure Law will

reward litigation misconduct on Ditech's part.  That is because, as Ditech concedes, the statutory

right to attorney's fees and costs can be used as defenses to Ditech's claims.  Reply ¶ 16

("Pursuant to Sections 4.6 and 5.6 of the Plan, the Plan Administrator does not dispute that the

Sharmas retain the right to assert defenses in the Foreclosure Action . . .")  *See Rescap II*, 558

B.R. at 89 ("Moreover, the appellees overstate the risk that discharge of their contingent claims

for attorney's fees would allow the Trust to engage in riskless litigation. The Trust concedes that

the appellees' contractual rights to attorney's fees can be used as defenses or setoffs against the

Trust's claims.")  As to the first point, it is not unfair for creditors like the Sharmas – who, prior

to the Bar Date, are in default under their prepetition contracts and are on notice that the

counterparty may commence litigation on account of the breach, to file a claim.  *Id.*  ("In this

case, the Trust's litigation on the Contracts was entirely foreseeable, certainly within the

appellees' contemplation at the time of Contract execution with the protective Clauses (a point

the appellees do not dispute) and in fact presaged during the bankruptcy proceedings by the

disclosure statement and the Plan Supplement.") The Plan Injunction bars them from recovering

monetary damages from the Debtors arising out of its alleged breach of the Mortgage*. See, e.g.,*

*Conway Hosp. Inc. v. Lehman Bros. Holdings Inc.*, 531 B.R. 339, 343 (S.D.N.Y. 2015).

<u>Conclusion</u>

Based on the foregoing, the Court overrules the Objection and grants the Motion.

IT IS SO ORDERED.

Dated: New York, New York
    November 30, 2020

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge