JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
Richard Levin
rlevin@jenner.com

*Attorneys for the Consumer Claims Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- X
                               :
In re                                   :           Chapter 11
                               :
DITECH HOLDING CORPORATION, *et al.,*  :           Case No. 19-10412 (JLG)
                               :
      Wind Down Estates.[1]          :           (Jointly Administered)
------------------------------------------------------------------- X

**NOTICE OF**
**CONSUMER CLAIMS TRUSTEE'S OPPOSITION TO GUC RECOVERY**
**TRUST'S OBJECTION TO CLASSIFY GEARY CLAIM (No. 20041) AS**
**CONSUMER CREDITOR CLAIM; CROSS-MOTION TO CLASSIFY AS A**
<u>**GENERAL UNSECURED CLAIM**</u>

On December 1, 2020, the Consumer Claims Trustee filed the attached *Consumer Claims Trustee's Opposition To GUC Recovery Trust's Objection To Classify Geary Claim (No. 20041) As Consumer Creditor Claim; Cross-Motion To Classify As General Unsecured Claim Or, In The Alternative, As A Non-363(o) Claim* (the "**Opposition and Cross-Motion**"), which (1) opposes the *Ditech Holding Corporation GUC Recovery Trust's Objection To Classify The Proof Of Claim Of The Geary Class Action Plaintiffs (Brian And Connie Geary, Individually And On Behalf Of Others Similarly Situated) (Claim No.*

---

[1] The Wind Down Estates, along with the last four digits of each of their federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania19034.

1

*20041) As A Consumer Creditor Claim For Distribution, If Any, From The Consumer Creditor Recovery Cash Pool* [ECF 2972]; and (2) cross-moves to classify Claim No. 20041 as a General Unsecured Claim on the grounds that Claim No. 20041 is not a claim that comes within the definition of "Consumer Creditor Claim" under the Plan.[2]

If you *do not* oppose the classification of Claim No. 20041 as proposed in this Opposition and Cross-Motion, you do not need to file a written response or appear for the hearing. The Court may allow and classify your claim as proposed.

If you *do* oppose the classification of Claim No. 20041 as proposed in this Opposition and Cross-Motion, **you must file a written response hereto. If you do not respond to this Notice, the Court may allow and classify Claim No. 20041 as proposed without further notice or hearing.**

The Court has ordered that certain procedures—the "**Claims Hearing Procedures**"—apply to this Opposition and Cross-Motion and to any response you file. A copy of the Claims Hearing Procedures is Attachment 1 to this Notice. The Claims Hearing Procedures impose deadlines for action. Failure to comply with the Claim Hearing Procedures may result in the allowance and classification of Claim No. 20041 as proposed without further notice. Please review them carefully if you oppose allowance and classification of the claim as proposed.

Among other things, the Claims Hearing Procedures require that you file with the Bankruptcy Court and send a copy of your response so that it is received by **December 10, 2020** to:

---

[2] Third Amended Joint Chapter 11 Plan Of Ditech Holding Corporation And Its Affiliated Debtors [ECF 1287 at 36] (the "**Plan**").

2

(1) Consumer Claims Trustee, Tara Twomey, Ditech Consumer Recovery Trust, c/o Settlement Administrator, PO Box 1607, Blue Bell, PA 19422 or via email to info@ditech-settlement.com;

(2) The chambers of the Honorable James L. Garrity, Jr., United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004. Claimants wishing to file by email should check the court website for operating procedures, which are subject to frequent changes due to COVID-19 accommodations.

**The Claims Hearing Procedures also require that every response to the Objection contain the following**:

a. a caption identifying the court (U.S. Bankruptcy Court for the Southern District of New York), the Debtor (Ditech Holding Corporation, et al), the case number (19-10412); and the document to which the response is directed (Consumer Claim Trustee's Thirty-Sixth Omnibus Objection to Proofs of Claim);

b. the name of the claimant and a description of the basis for the claim;

c. a statement describing why the claim should not be classified as proposed, including the specific factual and legal bases upon which you will rely in opposing the Objection;

d. all documentation or other evidence upon which you will rely in opposing the Objection and Cross-Motion, <u>excluding</u> documentation provided with the original Proof of Claim; and

e. the name, address, telephone number and email of the person (which may be the claimant or the claimant's legal representative) who will have the ultimate authority to settle or otherwise resolve the Claim on behalf of the claimant.

**A HEARING ON THE OBJECTION, OPPOSITION, AND CROSS-MOTION will be held on December 17, 2020 at 11:00 a.m. EST** in the United States Bankruptcy Court, New York, New York, telephonically, via Court Solutions (www.court-solutions.com). The

Claims Hearing Procedures govern the procedures at the hearing. If you file a written response to the Opposition and Cross-Motion, you should plan to appear at that hearing, unless the Consumer Claims Trustee notifies you that the hearing will be postponed to a later date. You may participate in the hearing telephonically by complying with the Court's instructions (including providing prior written notice to the attorneys for the Consumer Claims Trustee), which can be found on the Court's website at www.nysb.uscourts.gov.

**CLAIMANTS SHOULD NOT CONTACT THE CLERK OF THE BANKRUPTCY COURT TO DISCUSS THE LEGAL MERITS OF THEIR CLAIMS.**

ANY QUESTIONS SHOULD BE DIRECTED TO THE OFFICE OF THE CONSUMER CLAIMS TRUSTEE AT INFO@DITECH-SETTLEMENT.COM OR 877-783-6297

DATED: December 1, 2020.

/s/ Richard Levin
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
Richard Levin
rlevin@jenner.com

*Attorneys for Consumer Claims Trustee*

## Attachment 1

## COURT-ORDERED CLAIM HEARING PROCEDURES

The claim hearing procedures (the "**Claim Hearing Procedures**") have been ordered by the United States Bankruptcy Court for the Southern District of New York (the "**Court**") to apply to the chapter 11 cases of the Ditech Holding Corporation and its affiliates (each, a "**Debtor**").[3]

### Claim Hearing Procedures

1. Under the Court's "**Case Management Order**" (*Order Implementing Certain Notice and Case Management Procedures*, dated March 19, 2019 (ECF No. 211)), the Court established periodic hearings in these cases and required the Plan Administrator (which term includes the Consumer Claims Trustee), on behalf of the Wind Down Estates, to schedule response deadlines for claims objections to be heard at the hearings the Plan Administrator schedules with the Court.

2. If a claimant properly files and serves a response to an objection, the Plan Administrator will schedule a hearing (a "**Claim Hearing**") to consider the claim (a "**Contested Claim**"), the objection, and the response as follows:

   (a) If the objection asserts that the Contested Claim fails to state a legal basis for a claim against the Debtor, that the Plan Administrator does not intend to introduce evidence in support of the objection, that is, that the Contested Claim should be dismissed under Bankruptcy Rule 7012, the hearing (a "**Sufficiency Hearing**"), will go forward at the date stated in the Notice Of Hearing to which this Attachment 1 is attached. The legal standard of review that will be applied by the Court at a Sufficiency Hearing will be equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim upon which relief can be granted.

---

[3] Capitalized terms used but not otherwise defined in this Attachment 1 shall have the meanings assigned to those terms in the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (the "**Third Amended Plan**") (ECF No. 1326) or the *Order Approving (I) Claims Objection Procedures and (II) Claim Hearing Procedures* (the "**Order**") (ECF No. 1632), as applicable, which are available at https://dm.epiq11.com/case/ditech.

    (b) If the Plan Administrator instead intends to proceed with an evidentiary hearing on the merits of a Contested Claim (a "**Merits Hearing**"), the Plan Administrator must serve upon the relevant Claimant, by email or overnight delivery and file with the Court, a notice (a "**Notice of Merits Hearing**") substantially in the form attached as Exhibit 2 to the Order establishing these Claims Hearing Procedures, at least 30 calendar days before the date of the Merits Hearing. The rules and procedures applicable to a Merits Hearing will be set forth in any scheduling order issued by the Court in connection with the Merits Hearing.

3. Discovery with respect to a Contested Claim will not be permitted until either (i) the Court has held a Sufficiency Hearing and determined that the Contested Claim states a claim that could be allowed and should not be dismissed pursuant to Bankruptcy Rule 7012 or (ii) the Plan Administrator has served the Claimant a Notice of Merits Hearing with respect to the Contested Claim.

4. The Plan Administrator may file and serve a reply (a "**Reply**") to a Response no later than 4:00 p.m. EST on the day that is at least five business days before the date of the hearing.

5. The Plan Administrator, in its sole discretion, may postpone a hearing scheduled in accordance with these Claims Hearing Procedures at any time by providing notice to the Court and the Claimant.

6. The Court will consider appropriate sanctions, including allowance or disallowance of the Contested Claim, if either party does not follow the Claim Hearing Procedures.

JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
Richard Levin
rlevin@jenner.com

*Attorneys for the Consumer Claims Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                              :
In re                                                         :    Chapter 11
                                                              :
DITECH HOLDING CORPORATION, *et al.*,                         :    Case No. 19-10412 (JLG)
                                                              :
                        Wind Down Estates.[4]                 :    (Jointly Administered)
                                                              :
------------------------------------------------------------- X

CONSUMER CLAIMS TRUSTEE'S OPPOSITION TO GUC RECOVERY
TRUST'S OBJECTION TO CLASSIFY GEARY CLAIM (No. 20041) AS
CONSUMER CREDITOR CLAIM; CROSS-MOTION TO CLASSIFY AS A
<u>GENERAL UNSECURED CLAIM</u>

Tara Twomey, the Consumer Claims Trustee, on behalf of the Consumer Creditor Recovery Trust:

(1) opposes the *Ditech Holding Corporation GUC Recovery Trust's Objection To Classify The Proof Of Claim Of The Geary Class Action Plaintiffs (Brian And Connie Geary, Individually And On Behalf Of Others Similarly*

---

[4] The Wind Down Estates, along with the last four digits of each of their federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

1

*Situated) (Claim No. 20041) As A Consumer Creditor Claim For Distribution, If Any, From The Consumer Creditor Recovery Cash Pool* [ECF 2972] (the "Motion"); and

(2) cross-moves to classify Claim No. 20041 as a General Unsecured Claim.

This Opposition and Cross-Motion does not seek to address the merits of the Gearys' claim, whether, if the Gearys' claim is classified as a Consumer Creditor Claim, it should be classified as a 363(o) Claim (as that term is defined in the Plan), or the separate motion the Gearys filed under Bankruptcy Rule 7023 to certify the class they purport to represent. [*The Geary Class Action's Motion To Apply Fed. R. Bankr. P. 7023 To Any Objection, Valuation Or Other Contested Matter Regarding Its Claim Pursuant To Fed. R. Bankr. 9014*, ECF 2954.]

## FACTS

For the purposes of this Opposition and Cross-Motion, the Consumer Claims Trustee does not dispute the facts asserted in Proof of Claim No. 20041 nor in the Motion, but does not accept any legal conclusions stated in the Proof of Claim or Motion. Those facts are:

Brian and Connie Geary borrowed money from CitiFinancial to finance the purchase of a car. Claim No. 20041, Attachment 1 (Class Action Complaint), at 2. During their 2011 chapter 7 bankruptcy, they reaffirmed the debt. *Id.* at 3. They paid the debt in full in 2013, four months faster than required under their reaffirmation agreement. *Id.* Perhaps because of the accelerated payments, CitiFinancial appears not to have adequately recorded that the Gearys had paid their car loan in full and continued to send

2

them statements and telephoned to demand payment. *Id.* The Gearys attempted to resolve the matter, but CitiFinancial continued its collection efforts. *Id.* at 3–7.

Effective November 1, 2013, CitiFinancial transferred the servicing rights to the Gearys' car loan to Green Tree Servicing LLC, a predecessor to one of the debtors in these chapter 11 cases. *Id.* at 4. Green Tree sent a form letter from both Green Tree and CitiFinancial to the Gearys before the transfer to inform the Gearys of the transfer, which included a payment coupon with instructions to make payment to Green Tree. *Id.* Green Tree continued to seek collection from the Gearys. *Id.* 4–7.

The Gearys then filed a putative class action against Green Tree in the United States District Court for the Southern District of Ohio, case no. 14-CV-00522, alleging a violation of 15 U.S.C. § 1692g, the Fair Debt Collection Practices Act. Claim No. 20041, Attachment 1. Although the District Court certified the class, *id.*, Attachment 2, Green Tree filed a motion to decertify the class based on discovery from the Gearys. Claim No. 20041, Statement In Support Of Proof Of Claim Of Brian And Connie Geary, Individually And On Behalf Of Others Similarly Situated, at 2. Before the District Court could hear that motion, Green Tree filed its chapter 11 case in this Court, imposing the automatic stay of the District Court litigation. *Id.* The Gearys filed Proof of Claim No. 20041 as a class proof of claim in this chapter 11 case, alleging the same violation of 15 U.S.C. § 1692g.

3

The Debtors confirmed a chapter 11 plan on September 29, 2019.[5] The Plan classifies General Unsecured Claims in Class 5 and "Consumer Creditor Claims" in Class 6. The Plan defines both terms:

> "***General Unsecured Claim*** means any Claim against the Debtors (excluding any Intercompany Claims and Consumer Creditor Claims) as of the Commencement Date that is neither secured by collateral nor entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court."

Plan § 1.94, at 9 [ECF 1287 at 52].

> ***Consumer Creditor Claim*** means any Claim asserted by a Borrower against the Debtors."

Plan § 1.36, at 4 [ECF 1287 at 46].

> "***Borrower*** means any individual, as of the Commencement Date, whose current or former mortgage loan or reverse mortgage was originated, serviced, sold, consolidated, or owned by any of the Debtors."

*Id.* § 1.23.

The Plan provides for a fund to satisfy Consumer Creditor Claims, separate from the fund to satisfy General Unsecured Claims. Plan §§ 4.5(b), 4.6(b) [ECF 1287 at 65–67].

## ARGUMENT

### I.    The Gearys' Claim Is a General Unsecured Claim, Not A Consumer Creditor Claim

To qualify as a Consumer Creditor Claim, the Claim must be held by an individual who has or had a "mortgage loan or reverse mortgage." The Plan does not define

---

[5] Third Amended Joint Chapter 11 Plan Of Ditech Holding Corporation And Its Affiliated Debtors [ECF 1287 at 36 et seq.] (the "**Plan**"); Order Confirming Third Amended Joint Chapter 11 Plan Of Ditech Holding Corporation And Its Affiliated Debtors [ECF 1404].

4

"mortgage," but throughout the chapter 11 cases, the term was used to describe only a lien on residential property, i.e., home-secured loans.

- The debtor in possession financing motion defined "Mortgage Loan" as only "a one-to-four family residential mortgage or home equity loan." *Debtors' Motion For Interim And Final Orders (A) Authorizing Debtors To Enter Into Repurchase Agreement Facilities, Servicer Advance Facilities And Related Documents; (B) Authorizing Debtors To Sell Mortgage Loans And Servicer Advance Receivables In The Ordinary Course Of Business; (C) Granting Back-Up Liens And Superpriority Administrative Expense Claims; (D) Authorizing Use Of Cash Collateral And Granting Adequate Protection; (E) Modifying The Automatic Stay; (F) Scheduling A Final Hearing; And (G) Granting Related Relief* [ECF 26, at 232.]

- Under the Forward Stalking Horse Agreement, "Mortgage Loan" was defined as "any forward residential mortgage loan secured by a 1-4 family residential property, whether in the form of a mortgage, deed of trust, or other equivalent security instrument that was originated, purchased, serviced or subserviced by a Seller." *Notice of Designation of Stalking Horse Bid and Request for Approval of Stalking Horse Bid Protections (Forward Business)* [ECF 722, at 53].

- The definition of "Mortgage Loan" in the Reverse Stalking Horse Agreement was essentially the same—"reverse residential mortgage loan secured by a 1-4 family residential property …." *Notice Of Designation Of*

5

*Stalking Horse Bid And Request For Approval Of Stalking Horse Bid Protections (Reverse Business)* [ECF 724, at 48].

Other documents in the case use the term mortgage in a context where only residential property loans could be included:

- The Final Order (I) Authorizing Debtors To Continue Origination And Servicing Of Forward Mortgage Loans In Ordinary Course And Granting Related Relief And (Ii) Modifying Automatic Stay On A Limited Basis To Facilitate Debtors' Ongoing Operations [ECF 224, at 1, n.2] provides "the term 'mortgage loan' … include[s] both mortgages and deeds of trusts." A deed of trust is a security device used in many states instead of a mortgage to evidence a lien on real property.

- In the *Motion Of Debtors Requesting Authority To (I) Continue Using Existing Cash Management System, Bank Accounts, And Business Forms, (II) Implement Changes To The Cash Management System In The Ordinary Course Of Business, (III) Continue Intercompany Transactions, (IV) Provide Administrative Expense Priority For Postpetition Intercompany Claims, (V) Extend Time To Comply With, Or Seek Waiver Of, 11 U.S.C. § 345(B), And (VI) Granting Related Relief*, the description of the Debtors' business makes clear the business focused on residential mortgage loans. [ECF 4, at 4–6.]

The Plan provided for a sale of the Debtors' mortgages, reverse mortgages, and mortgage servicing rights under the two Stalking Horse Agreements. Plan § 5.6 [ECF 1287, at 73]. As those Agreements apply only to mortgages on residential property, the

6

term "mortgage" in the definition of "Borrower" should be construed *in pari materia* and include only residential property loans, not cars loans. *See U.S. v. Daugerdas*, 892 F.3d 545 (2d Cir. 2018) ("the *in pari materia* canon of statutory interpretation teaches that 'language used in one portion of a statute … should be deemed to have the same meaning as the same language used elsewhere in the statute.'").

The definition of "Borrower" also informs the meaning of "mortgage." Under the statutory construction maxim *noscitur a sociis*, literally, "recognized by its partners," a court should construe the meaning of a term based on the meaning of other words in the same provision. As the Supreme Court explained, "words are often known by the company they keep." *Lagos v. U.S.*, 138 S. Ct. 1684, 1688–89 (2018); *see Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 274–75, 133 S. Ct. 1754, 1760 (2013) (using *noscitur a sociis* to interpret "defalcation" in Bankruptcy Code section 523(a)(4), based on the word's "neighbors"). Here, the definition of Borrower refers to a "mortgage loan or reverse mortgage."

"A reverse mortgage is a loan or line of credit available to a person over the age of 62 who has equity in real estate, typically the person's home." *Summers v. Fin. Freedom Acquisition LLC*, 807 F.3d 351, 354 (1st Cir. 2015); *accord Iaffaldano v. Sun W. Mortg. Co.*, Fed. Appx. 907, 909 (11th Cir. 2019) ("a home-equity conversion mortgage, commonly called a 'reverse mortgage'"). Reverse mortgages are for residential property. By association, "mortgage" should be interpreted to mean residential property loans, not car loans.

Although the term "mortgage" might once have applied to a security interest in personal property (i.e., a chattel mortgage), but that usage has fallen into disuse,

7

especially with the enactment of the Uniform Commercial Code in all U.S. jurisdictions, which now refers to a personal property or chattel "mortgage" as a security interest. Indeed, even the Plan distinguishes between mortgages and security interests, referring to "each Lien, mortgage and security interests" several times.[6]

In addition, the Plan's definition of "Borrower" was limited to "any individual, as of the Commencement Date, whose current or former mortgage loan or reverse mortgage was originated, serviced, sold, consolidated, or owned by any of the Debtors." The Gearys' car loan was originated by CitiFinancial, not by any of the Debtors. Because it was fully paid more than five years before the Commencement Date, their car loan was not "sold, consolidated, or owned by any of the Debtors" as of the Commencement Date. Therefore, they do not qualify as "Borrowers." Nor was the car loan serviced by any of the Debtors. The Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq., which governs the servicing of "federally-related mortgage loans," defines "servicing" to mean:

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any federally related mortgage loan, including amounts for escrow accounts under section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2603(i)(3). As the Gearys not only admit but affirmatively allege, none of the Debtors received any payment, scheduled or otherwise, from the Gearys. Therefore, their car loan was not serviced by any of the Debtors.

---

[6] Plan §§ 4.3(c)(ii), 5.7(b)(ii); *see also id.* §§ 5.8(a), 5.8(b) ("no lien or security interest shall attach to, modify, prime or otherwise affect (A) mortgage servicing rights with respect to mortgages …)"; *id.* § 12.5 ("Lien, mortgage, deed of trust, or security interest").

8

Because their Claim arises from a car loan, not a mortgage loan, and the car loan was paid long before the bankruptcy, the Gearys are not Borrowers, and their Claim is not a Consumer Creditor Claim as defined in the Plan.

Under the Plan's definition, a claim that is not a Consumer Creditor Claim, is not secured, and is not entitled to priority is a General Unsecured Claim. The Gearys do not assert that their claim is secured or entitled to priority. Therefore, the Gearys' claim is a General Unsecured Claim under the Plan.

## CONCLUSION

For all the foregoing reasons, this Court should deny the GUC Recovery Trustee's motion to classify the Gearys' claim as a Consumer Creditor Claim and classify the claim as a General Unsecured Claim. The Consumer Claim Trustee reserves all rights as to the merits of the Gearys' claim, its classification as a 363(o) Claim (or not), and the Gearys' motion to certify the claim as a class proof of claim under section 7023, as none of those issues are raised in the GUC Recovery Trust's motion.

DATED: December 1, 2020.

/s/  Richard Levin
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
Richard Levin
rlevin@jenner.com

*Attorneys for Consumer Claims Trustee*