**UNITED STATES BANKRUPTCY COURT**　　　　　NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
*In re:*　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:　Case No. 19-10412 (JLG)
Ditech Holding Corporation, *et al.*,　　　:　Chapter 11
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　Debtors.　　:　(Jointly Administered)
------------------------------------------------------- x

**MEMORANDUM DECISION AND ORDER DENYING REORGANIZED RMS'S[1]
SECOND OMNIBUS MOTION TO ENFORCE INJUNCTIVE PROVISIONS OF PLAN
AND CONFIRMATION ORDER AGAINST
<u>DR. ELIE NASSAR</u>**

<u>A P P E A R A N C E S</u>:

REED SMITH LLP
*Attorneys for Reorganized RMS*
599 Lexington Avenue
New York, New York 10022
<u>By:</u>　　Christopher Lynch, Esq.


Dr. Elie T. Nassar
*Appearing Pro Se*
4525 Clayhead Road
Richmond, TX 77406

---

[1]　On September 26, 2019, the Court confirmed the Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors, which created Reorganized RMS. The last four digits of Reorganized RMS's federal tax identification number are 2274.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## Introduction

In November 2018, Dr. Elie Nassar ("Dr. Nassar") sued Reverse Mortgage Solutions,

Inc. ("RMS"), as mortgage servicer, in a now consolidated action (the "Texas Action") pending

in the United States District Court for the Southern District of Texas.[2] Without limitation, in that

action Dr. Nassar is seeking compensatory and punitive damages from RMS occasioned by its

alleged breach of contract, fraud and other wrongdoing.  In February 2019, RMS and certain of

its affiliates (the "Debtors") filed petitions for reorganization under title 11 of Chapter 11 of the

United States Code (the "Bankruptcy Code") in this Court.  In September 2019, the Debtors

confirmed their joint Chapter 11 plan (the "Plan"),[3] and the Plan has become effective.  Under

the Plan, Reorganized RMS is the successor to RMS, and is now servicing Dr. Nassar's

mortgage.

Pursuant to section 10.3 of the Plan, holders of claims arising prior to the Plan's Effective

Date (defined below) are deemed to have discharged Reorganized RMS to the fullest extent

provided under section 1141 of the Bankruptcy Code.  Section 10.5 of the Plan contains an

injunction (the "Plan Injunction") which bars the holders of claims that arose prior to the

Effective Date from "commencing, conducting or continuing in any manner, directly or

indirectly, any suit, action, or other proceeding of any kind" against or affecting, among others,

---

[2]   *See Nassar v. Reverse Mortgage Solutions, Inc. et al.*, Civil Action No. 4:18-cv-4695 (S.D. Tex. Dec. 13, 2018).
All citations to documents filed in the Texas Action will be to: "[Dkt No. ___] (Texas Action)."

[3]   Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors [ECF No. 1326]
("Plan"); Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated
Debtors [ECF No. 1404] (the "Confirmation Order").  References to "ECF No. __" are to documents filed in the
electronic docket in the Debtors' jointly administered Chapter 11 cases under Case No. 19-10412.

Reorganized RMS and its property.  Dr. Nassar did not file a claim in these cases.  RMS did not

give him actual notice of  the General Bar Date (defined below) or any other matter arising in the

Debtors' cases.  Dr. Nassar first learned of the pendency of the Debtors' cases in May 2019 –

well in advance of the General Bar Date and Plan confirmation hearing.  Thereafter, he took no

steps to involve himself in the cases.

     After the Effective Date, Dr. Nassar has continued to prosecute the Texas Action.

Reorganized RMS advised him that, in its view, he is doing so in violation of the Plan Injunction

and requested that he dismiss his damage claims asserted against it therein.  Dr. Nassar refuses to

do so.  The matter before the Court is Reorganized RMS's Second Omnibus Motion to Enforce

Injunctive Provisions of the Plan and Confirmation Order (the "Motion").[4]  In substance,

Reorganized RMS seeks entry of an order enforcing the Plan Injunction against Dr. Nassar by

prohibiting him from continuing to prosecute his monetary claims in the Texas Action.  Dr.

Nassar opposes the Motion (the "Objection").[5]  For the reasons set forth herein, the Court

sustains the Objection and denies the Motion.

---

[4]     *See* Reorganized RMS's Second Omnibus Motion to Enforce Injunctive Provisions of Plan and Confirmation
Order [ECF No. 2086] (the "Motion").  In support of the Motion, Reorganized RMS filed

> Reorganized RMS'S Reply to Original Objection to Second Omnibus Motion Received from Elie
> T. Nassar; First Amendment to Original Objection to Second Omnibus Motion Received by Elie
> T. Nassar; Second Amendment to Original Objection to Second Omnibus Motion Received by
> Elie T. Nassar; and Third Amendment to RMS'S Second Omnibus Judicial Estoppel Dismissal
> Received by Elie T. Nassar [ECF No. 2347] ("Reply"); and

> Reorganized RMS'S Supplemental Brief Regarding the Original Objection to Second Omnibus
> Motion Received from Elie T. Nassar; Second Amendment to Original Objection to Second
> Omnibus Motion Received by Elie T. Nassar; and Third Amendment to RMS'S Second Omnibus
> Judicial Estoppel Dismissal Received by Elie T. Nassar [ECF No. 2444] ("Supplemental Reply").

[5]     Dr. Nassar filed the following documents in support of his objection (collectively, the "Objection"):

> Request to Reschedule Objections Deadline of April 15, 2020 and Hearing Time April 22, 2020
> Due to Corona Pandemic Bans in Texas and in New York [ECF No. 2246];

**Jurisdiction**

A party invoking this Court's post-confirmation jurisdiction must demonstrate both (i) that the matter has a "close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan or incorporated litigation trust agreement," *Penthouse Media Group v. Guccione (In re Gen. Media, Inc.),* 335 B.R. 66, 73 (Bankr.S.D.N.Y.2005) (quoting *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 168-69 (3d Cir. 2004)); and (ii) that the plan provides for the retention of jurisdiction over the dispute. *Id.* (citing *Hosp. and Univ. Prop. Damage Claimants v. Johns Manville Corp. (In re Johns–Manville Corp.*), 7 F.3d 32, 34 (2d Cir.1993)). *See also Cohen v. CDR Creances S.A.S.* (*In re Euro-Am. Lodging Corp.*)*,* 549 F. App'x 52, 54 (2d Cir. 2014) ("A party may invoke the authority of the bankruptcy court to exercise post-confirmation jurisdiction only if the matter has a close nexus to the bankruptcy plan . . . and the plan provides for the retention of such jurisdiction . . . ") (internal citations omitted) (summary order); *Ace Am. Ins. Co. v. State of Mich. Workers' Comp. Ins. Agency* (*In re DPH Holdings Corp.*), 448 F. App'x 134, 137 (2d Cir. 2011) (summary order), *cert. denied*, 567 U.S. 935 (2012). *See also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (a

---

Dr. Elie T. Nassar's First Amendment to Notice of Hearing on Reorganized RMS'S Second Omnibus Motion to Enforce Injunctive Provisions of Plan and Confirmation Order [ECF No. 2247]; and

Dr. Elie Nassar's Third Amendment to Original Objection to Notice of Hearing on Reorganized RMS's Second Omnibus Motion Enforce Injunctive Provisions of Plan and Confirmation Order; Judicial Estopel [sic] prohibits RMS and it's Attorneys from Taking Inconsistent Legal Standing Between Federal Court of Southern District of Texas Houston Division and United States Bankruptcy Court Southern District of New York; Request to Dismiss RMS' Second Omnibus Motion in Full due to Judicial Estopel [sic] Violation [ECF No. 2308].

In resolving the Motion, the Court does not consider arguments in the Objection that focus on the merits of the claims that Dr. Nassar is asserting in the Texas Action.  The issue before the Court is whether Dr. Nassar's claims for money damages against Reorganized RMS are barred by section 10.5 of the Plan.

bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders).

The Motion has a "close nexus" to the Plan, because Reorganized RMS seeks to enforce the Plan Injunction – a provision of the Plan – and the Confirmation Order, a prior order of the Court. *See, e.g.*, *In re Avaya Inc.*, No. 17-10089 (SMB), 2018 WL 4381524, at *3 (Bankr. S.D.N.Y. Sept. 12, 2018) (finding that motion to enforce Bar Date Order injunction and Discharge Injunction under confirmed plan had "close nexus" to plan). The Plan provides for the retention of jurisdiction over the dispute because under the Plan the Court retained jurisdiction "to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court[,]" (Plan, Art. XI § 11.1(g)), and "to hear, adjudicate, decide, or resolve any and all matters related to Article X of the Plan, including, without limitation, the releases, discharge, exculpations, and injunctions issued thereunder." *Id.*, Art. XI § 11.1(n). Accordingly, the Court has subject matter jurisdiction over the Motion.

## Background

On February 11, 2019 (the "Petition Date"), the Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code in this Court.  Post-petition, the Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On September 26, 2019, the Debtors confirmed their Plan, and on September 30, 2019 (the "Effective Date") the Plan became effective.[6]

---

[6]   Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims [ECF No. 1449].

On December 22, 2011, Dr. Nassar obtained a reverse mortgage from First National Bank

of Layton on his real property located at 4525 Clayhead Road, Richmond, Texas 77406.  The

loan was later assigned to Finance of America Reverse.  RMS serviced the loan.   As of the

Petition Date, Dr. Nassar was suing RMS, among others, in the Texas Action.  In that lawsuit,

among other things, Dr. Nassar is asserting claims for monetary damages, including attorney's

fees, against RMS, occasioned by RMS's alleged breach of contract, fraud, illegal acceleration of

his loan, illegal inspections, and violations of the Texas Fair Debt Collection Act.

On February 22, 2019, the Court entered a bar date order (the "General Bar Date

Order").[7]  As relevant, that order directed the Debtors to mail the Court-approved Claim Form

and Bar Date Notice at least thirty-five (35) days prior to the applicable bar date to:

> all creditors and other known holders of potential claims as of the date of the
> order; including all persons listed in the schedules as holding claims; and

> all parties to pending litigation against the Debtors (as of the date of the entry of
> the order.)

General Bar Order ¶¶ 10(e), (f).  It also directed that

> Pursuant to Bankruptcy Rule 2002(l) and the Guidelines, the Debtors shall publish
> the Bar Date Notice, once in the national editions of *The New York Times* and
> *USA Today* at least twenty-eight (28) days prior to the General Bar Date, which
> publication is hereby approved and shall be deemed good, adequate and sufficient
> publication notice of the Bar Dates and the Procedures for filing proofs of claim
> in these chapter 11 cases.

*Id.* ¶ 12.  By orders dated March 27, 2019 and May 2, 2019, the Court extended the General Bar

Date ultimately to June 3, 2019.[8]  By order dated May 10, 2019 the Court approved the Debtors'

---

[7]    *See* Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof [ECF No. 90].

[8]    *See* Order Extending General Bar Date [ECF No. 272]; Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers *Nunc Pro Tunc* [ECF No. 496].

Disclosure Statement and Scheduled the Confirmation Hearing. That order directed the Debtors

to mail the Court approved Confirmation Hearing Notice to all creditors and publish it in the

national editions of *The New York Times* and *USA Today*.[9]

In their schedules, the Debtors identify Dr. Nassar as an unsecured creditor holding a

claim in an "unknown" amount. The Debtors show that the "Basis for Claim" is "Litigation" and

that the claim is contingent, unliquidated and disputed. They list Dr. Nassar's address as "NOT

AVAILABLE."[10] The relevant affidavits of service filed in the case reveal that Dr. Nassar is not

listed as having been given notice of the General Bar Date[11] or of the subsequent extensions of

the General Bar Date.[12] Moreover, the affidavits of service filed by RMS to evidence service of

the documents relating to RMS's disclosure statement and Plan, including the Confirmation

Hearing Notice, list Dr. Nassar as: "Elie Nassar, Pro Se," without a street address.[13] Dr. Nassar

---

[9]    Order (I) Approving Disclosure Statement and Notice of Disclosure Statement Hearing, (II) Establishing
Solicitation and Voting Procedures, (III) Scheduling Confirmation Hearing, (IV) Approving Confirmation Objection
Procedures and Notice of Confirmation Hearing, and (V) Granting Related Relief [ECF No. 544].

[10]    *See* Schedule of Assets and Liabilities for Reverse Mortgage Solutions, Inc. [ECF No. 308] at 126.

[11]    Affidavit of Service of General Bar Date Order [ECF No. 131].

[12]    *See* Affidavits of Service of the extended General Bar Date [ECF Nos. 532, 586].

[13]    Those affidavits include:

Affidavit of Service [ECF No. 169] at 418 of the Disclosure Statement for Joint Chapter 11 Plan
of Ditech Holding Corporation and its Affiliated Debtors [ECF No. 146];

Affidavit of Service [ECF No. 169] at 418 of the Notice of Hearing on Motion of Debtors for
Entry of an Order (I) Approving Disclosure Statement and Notice of Disclosure Statement
Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling Sale and
Confirmation Hearing, (IV) Approving Sale and Confirmation Objection Procedures and Notice of
Sale and Confirmation Hearing, (V) Approving Bidding Procedures, (VI) Approving Assumption
and Assignment Procedures, and (VII) Granting Related Relief [ECF No. 147];

Affidavit of Service [ECF No. 169] at 418 of the Notice of Hearing to Consider Approval of
Disclosure Statement for Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated
Debtors and Bidding Procedures [ECF No. 149];

Affidavit of Service [ECF No. 587] at 476 of the Notice of (I) Non-Voting Status of Consumer
Borrowers (II) Approval of Disclosure Statement, (III) Confirmation Hearing, and (V) [*sic*] Sale

6

denies receiving any documents relating to the bankruptcy cases from the Debtors. *See* Objection [ECF No. 2247], Ex. 5 Nassar Decl. ¶¶ 3-4. The Debtors also were ordered to publish notice of the Commencement of the Case, General Bar Date, Confirmation Hearing Notice and Confirmation Order.[14] The docket in the case reflects that the Debtors published notice of the Confirmation Hearing Notice[15] but the docket does not reflect evidence, like affidavits of service, that RMS published notice of the Commencement of the Case, General Bar Date or the Confirmation Order.

On March 22, 2019, five days after the Debtors filed their bankruptcy schedules, RMS filed a *Notice of Bankruptcy and Imposition of Automatic Stay* (the "Notice of Bankruptcy") in the Texas Action.[16] In substance, that notice: (i) advised that on February 11, 2019, RMS had

---

and Confirmation Objection Procedures; Order (I) Approving Bidding Procedures, (II) Approving Assumption and Assignment Procedures, and (III) Granting Related Relief [ECF No. 456]; and Affidavit of Service [ECF No. 587] at 476 of the Order (I) Approving Disclosure Statement and Notice of Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling Confirmation Hearing, (IV) Approving Confirmation Objection Procedures and Notice of Confirmation Hearing, and (V) Granting Related Relief [ECF No. 544].

[14]  *See* Order (I) Authorizing Debtors to (A) File A Consolidated List of Creditors And (B) File a Consolidated List of Debtors' 40 Largest Secured Claims, (II) Authorizing Debtors to Redact Certain Personal Identification Information for Individual Creditors and Interest Holders, (III) Approving the Form and Manner of Notifying Creditors of Commencement of These Chapter 11 Cases, And (IV) Approving the Form and Manner of Notifying Creditors of These Chapter 11 Cases, and (IV) Approving Publication Notice to Borrowers [ECF No. 71]; Affidavit of Service [ECF No. 95];

Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof [ECF No. 90]; Affidavit of Service [ECF No. 131];

Order (I) Approving Disclosure Statement and Notice of Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling Confirmation Hearing, (IV) Approving Confirmation Objection Procedures and Notice of Confirmation Hearing, and (V) Granting Related Relief [ECF No. 544]; and

Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors [ECF No. 1401].

[15]  *See* Affidavit of Publication [ECF No. 823] evidencing publication of the Notice of (I) Approval of Disclosure Statement, (II) Establishment of Voting Record Date, (III) Confirmation Hearing, (IV) Confirmation Objection Procedures, (V) Procedures and Deadline for Voting on the Plan [ECF No. 544-1].

[16]  [Dkt No. 34] (Texas Action).

7

filed a voluntary Chapter 11 case in the United States Bankruptcy Court for the Southern District

of New York; and (ii) asserted that Dr. Nassar's claims for breach of contract, fraud, and/or

violations of any federal statute and all requests to recover monetary damages and/or attorney's

fees were subject to the automatic stay and, as such, continued prosecution of those claims was

prohibited.  RMS did not serve a copy of the Notice of Bankruptcy on Dr. Nassar.  However, Dr.

Nassar concedes that no later than May 2019, he had actual knowledge of the pendency of the

Debtors' bankruptcy cases, and in pleadings that he filed in the Texas Action beginning in June

2019, Dr. Nassar acknowledged that RMS was in bankruptcy.[17]

Under the Plan, Reorganized RMS is the successor to RMS.  Article X of the Plan

addresses the "Effect Of Confirmation Of Plan."  Section 10.3 of the Plan's governs the

Discharge of Claims and Termination of Interests under the Plan.  As relevant, it states

> In a Sale Transaction, upon the Effective Date and in consideration of the
> distributions to be made hereunder . . . each holder . . . of a Claim . . . shall be
> deemed to have forever waived, released, and discharged Reorganized RMS, to
> the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from
> any and all Claims . . . against . . .  Reorganized RMS that arose prior to the
> Effective Date . . .

---

[17]    In particular, on June 4, 2019, Dr. Nassar filed *Plaintiff's Response to the Order Signed by His Honor Judge David Hittner on May 13, 2019 Doocket* [sic] *Number 38 (2 pages) Notice Number: 20190514-11 Explaining Impact of RMS Bankruptcy on Plaintiff Dr. Elie Nassar Law Suit* [sic] *Against Defendants. See* Reply Ex. C. That pleading contains several references to RMS's bankruptcy filing.  *Id.* at 2 ("I will be specific and show your honor how my law suit [sic] is impacted by the RMS bankruptcy"); *id.* at 4 ("The scheduling order that this honorable entered in this case is null and void as far as RMS is in bankruptcy and should be reentered and revaluated when RMS Is out of bankruptcy"); *id.* at 5 ("considering the RMS bankruptcy I am going to go ahead and offer FNB via their attorney an offer of settlement…").  On June 17, 2019, Nassar filed *Plaintiff's Response to Defendant's Reverse Mortgage Solutions: Brief Regarding Impact of RMS's Bankruptcy (document 40) and Defendant First National Bank of Layton's Joinder in Adoption of Defendant Reverse Mortgage Solutions, Inc.'s Brief Regarding Impact of RMS's Bankruptcy. See* Reply Ex. D. In that document, Dr. Nassar notes that "RMS filed for bankruptcy on March 22, 2019" (*id.* at 4); says that "this is how bad RMS is and that is why they are in bankruptcy" (*id.* at 7); and that he "cannot proceed with [his] law suit [sic] until RMS is out of bankruptcy."  *Id.* at 12.

Plan, Art. X § 10.3(b).  Section 10.5 of the Plan contains the Plan Injunction.  As relevant, it

states

> [A]ll Entities who have held, hold, or may hold Claims against or Interests in the
> Debtors (whether proof of such Claims or Interests has been filed or not and
> whether or not such Entities vote in favor of, against or abstain from voting on the
> Plan or are presumed to have accepted or deemed to have rejected the Plan) and
> other parties in interest, along with their respective present or former employees,
> agents, officers, directors, principals, and affiliates are permanently enjoined, on
> and after the Effective Date, solely with respect to any Claims, Interests, and
> Causes of Action that will be or are extinguished, discharged, or released pursuant
> to the Plan from (i) commencing, conducting, or continuing in any manner,
> directly or indirectly, any suit, action, or other proceeding of any kind (including,
> without limitation, any proceeding in a judicial, arbitral, administrative or other
> forum) against or affecting the Debtors, Reorganized Debtors, Reorganized RMS,
> . . . or the property of any of the Debtors, Reorganized Debtors, Reorganized
> RMS . . .

*Id.* Art. X § 10.5(b). It also provides that "[t]he injunctions in this Section 10.5 shall extend to

any successors of the Debtors (including the Wind Down Estates), the Reorganized Debtors,

Reorganized RMS, and their respective property and interests in property." *Id.* Art. X § 10.5(d).

After the Effective Date, Reorganized RMS advised Dr. Nassar of the Court's

confirmation of the Plan and the Plan Injunction provisions.  Reorganized RMS requested Dr.

Nassar to voluntarily dismiss his damage claims against it in the Texas Action – in accordance

with the Plan Injunction.  Motion ¶¶ 2-3.  Dr. Nassar refuses to do so.

## Discussion

"It is well-established that once confirmed, a debtor's reorganization plan binds the

debtor and all creditors, regardless of whether the creditor has accepted the plan, provided that

the creditor has 'been given notice sufficient to satisfy due process.'" *DePippo v. Kmart Corp.*,

335 B.R. 290, 295 (S.D.N.Y. 2005) (quoting *Daewoo Int'l (Am.) Corp. Creditor Trust v. SSTS*

*Am. Corp.,* No. 02 Civ. 9629, 2003 WL 21355214, at *3 (S.D.N.Y. June 11, 2003)); *see also* 11

U.S.C. § 1141(a) (providing that provisions of a confirmed plan bind the debtor and any creditor

regardless of whether the creditor accepted the plan). "Notice is the cornerstone underpinning

Bankruptcy Code procedure." *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage*

*Indus., Inc.),* 43 F.3d 714, 720 (1st Cir.1994). As relevant, the Federal Rules of Bankruptcy

Procedure ("Bankruptcy Rules") require a debtor to provide its creditors with the following

information:

> Notice of bankruptcy filing. Fed. R. Bankr. P. 2002(f).

> Notice of the deadline for filing proofs of claim. Fed. R. Bankr. P. 2002(a).

> Notice of the deadline for filing objections and to consider approval of a
> disclosure statement and the confirmation of a chapter 11 plan. Fed. R. Bankr. P.
> 2002(b).

> Notice of the hearing on confirmation of a chapter 11 plan. Fed. R. Bankr. P.
> 3017(d).

> Notice of the order confirming a chapter 11 plan. Fed. R. Bankr. P. 2002(f).

Those notice requirements are designed to provide procedurally adequate notice to creditors.

*See, e.g., In re Grumman Olson Indus., Inc.*, 467 B.R. 694, 706 (S.D.N.Y. 2012) ("The notice

requirements of bankruptcy law are 'founded in fundamental notions of procedural due

process.'") (quoting *In re Savage Indus., Inc.*, 43 F.3d 714, 721 (2d Cir. 1994)); *In re Circle K*

*Corp.,* 198 B.R. 784, 789 (Bankr. D. Ariz. 1996) ("The noticing requirements imposed by the

Code and Rules ensure that creditors can be expected to learn of important actions in a

bankruptcy that affect their rights.") (citation omitted).

To satisfy due process there must be "notice reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S.

306, 314 (1950). That is to say that "[n]otice need not be perfect but reasonable based on the

circumstances." *Francis v. Eaton (In re Eaton),* 327 B.R. 79, 82–83 (Bankr.D.N.H.2005)

(citations omitted).   An important factor in assessing the adequacy of notice provided by a debtor to a creditor in a given situation in a bankruptcy case, is whether the creditor to whom the notice is directed is known or unknown.  *In re Queen Elizabeth Realty Corp.,* No. 13-12335 (SMB), 2017 WL 1102865, at *3 (Bankr. S.D.N.Y. Mar. 24, 2017) ("The nature of the notice [called for under the Bankruptcy Code] depends on whether the creditor is known or unknown.") *aff'd*, 586 B.R. 95 (S.D.N.Y. 2018);  *In re Avaya Inc.,* 2018 WL 4381524 at * 3 (same).  "While actual notice is required if the creditor is a 'known' creditor, constructive notice is sufficient where a creditor is 'unknown.'"  *DePippo v. Kmart Corp.*, 335 B.R. at 295–96.  *See also In re BGI, Inc.*, 476 B.R. 812, 820 (Bankr. S.D.N.Y. 2013) ("For unknown creditors, constructive notice, such as notice by publication, will suffice."); *In re U.S.H. Corp. of New York*, 223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998)("[I]f a creditor is known to the debtor, notice by publication is not constitutionally reasonable, and actual notice of the relevant bar dates must be afforded to the creditor.").

Section 342 of the Bankruptcy Code provides that "[t]here shall be given such notice as is appropriate . . . of an order for relief in a case in a case under this title."  11 U.S.C. § 342(a). That section establishes the requisite notice for parties affected by a debtor's bankruptcy, and section 521(a)(1) complements it by directing that in a voluntary chapter 11 case, the debtor "file a list of creditors . . . "  11 U.S.C. § 521(a)(1)(A).[18]  On the Petition Date, Dr. Nassar was a

---

[18]    Bankruptcy Rule 1007(a)(1) directs that "[i]n a voluntary case, the debtor shall file with the petition a list containing the name and address of each entity included or to be included on Schedules D, E/F, G, and H as prescribed by the Official Forms."  As noted in *In re Curtin*, Case No. 8:19-bk-02502- RCT, 2020 WL 5745937 at *2 (Bankr. M.D. Fla. Mar. 10, 2020):

> This "list of creditors" [called for under Rule 1007(d)(1)] is commonly referred to as the "Creditor Matrix," and is distinct from a debtor's schedules. The Creditor Matrix is simply a list of the creditors' addresses. The Creditor Matrix is critically important in any bankruptcy case because it is used by the debtor, the Clerk of Court, and other parties in interest as the service list when either the Code or Rules require service of a pleading on "all creditors."

known creditor holding a contingent, disputed, and unliquidated claim against RMS. The

Debtors identified him as such in their list of creditors – but failed to include an address in that

listing.[19]  Where, as here, RMS failed to schedule Dr. Nasser, a creditor, as required by section

521, "[t]he burden of establishing that [Dr. Nasser] has received adequate notice rests with

[RMS]."  *In re Massa*, 187 F.3d 292, 296 (2d Cir. 1999); *see also In re Queen Elizabeth Realty

Corp.*, 2017 WL 1102865, at *3 (same) (citing *In re Massa*, 187 F.3d at 296).

RMS did not serve Dr. Nassar with notice of the General Bar Date or extensions thereto

or the Confirmation Hearing Notice – although the Court directed it to do so.  Indeed, it is

undisputed that RMS did not serve Dr. Nassar with any of the notices that the Court directed it to

send to its creditors during the Chapter 11 case.  It is also undisputed that Dr. Nassar did not

have actual knowledge of the General Bar Date or Plan confirmation hearing.   Nonetheless,

Reorganized RMS contends that the Plan is binding on Dr. Nassar because as of May 2019,

when Dr. Nassar obtained actual knowledge of RMS's bankruptcy case he had "sufficient due

process" to have enabled him to timely file a claim in these cases and participate in the Plan

confirmation process.  Supplemental Reply ¶ 17.[20]

In part, in support for that argument, Reorganized RMS relies on *In re Medaglia*, 52 F.3d

451 (2d Cir. 1995) and *In re Alton*, 837 F.2d 457 (11th Cir. 1988).  In substance, it asserts that

---

[19]    Under section 521(a)(1) of the Bankruptcy Code, "[t]he debtor lists the creditors, so it is the debtor's knowledge of a creditor, not the creditor's knowledge of his claim, which controls whether the debtor has a duty to list that creditor."  *Levin v. Maya Constr. (In re Maya Constr. Co.),* 78 F.3d 1395, 1399 (9th Cir. 1996).

[20]    Assuming, *arguendo*, that the Debtors published notice of the General Bar Date they would have provided Dr. Nassar with constructive notice of the bar date and Plan confirmation hearing.  *See, e.g., In re Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.,* 471 B.R. 331, 340 (Bankr. S.D.N.Y. 2012) (finding that "[w]ith respect to constructive notice, publication of relevant information in a newspaper is sufficient . . ."); *In re XO Communications*, 301 B.R. 782, 792 (Bankr. S.D.N.Y. 2003) (noting that "[c]onstructive notice can be satisfied through publication notice . . ." ).  Reorganized RMS does not contend that publication notice satisfied due process in this case.  It is not sufficient to do so because Dr. Nassar is a known creditor entitled to actual notice of the commencement of the bankruptcy case and of the key events in the case.  *See, e.g.,  In re U.S.H. Corp. of New York*, 223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998).

those cases further the proposition that where a debtor fails to serve a reorganization plan on a creditor and the plan is confirmed, the plan nonetheless will be binding on the creditor if the creditor receives actual notice of the pendency of the chapter 11 case with adequate time to file a claim in the case and to object to plan confirmation, because "due process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right."  Supplemental Reply ¶ 9 (quoting *In re Medaglia*, 52 F.3d at 455).

*Alton* and *Medaglia* address the application of section 523(a)(3)(B) of the Bankruptcy Code in lawsuits brought against individual debtors by creditors (the "objecting creditors") challenging the dischargeability of their pre-petition debts.  Under section 523(a)(3)(B), a discharge under sections 727 and 1141 of the Bankruptcy Code does not discharge an individual debtor from any debt of a kind specified in section 523(a)(2), (4) or (6) if such debt is neither listed nor scheduled under section 521(1) in time to permit the "timely filing of a proof of claim and timely request for a determination of dischargeability of such debt[s]. . . unless. . . such creditor  had notice or actual knowledge of the case in time for such timely filing and request. . . ." 11 U.S.C. § 523(a)(3)(B).  Under the Bankruptcy Code, in accordance with section 523(c)(1) and Bankruptcy Rule 4007, objections to the discharge of particular debts must be filed within 60 days of the first meeting of creditors (the "claim discharge bar date").  In *Medaglia* and *Alton*:

> The debtors failed to include the objecting creditors in the list of creditors filed with the clerk's office in accordance with section 521(1) of the Bankruptcy Code and Bankruptcy Rule 1007(a)(1).

> The clerk's offices did not serve the objecting creditors with notice of the first meeting of creditors, which, among other things, advised creditors of the claim discharge bar date.

> The objecting creditors obtained actual knowledge of the commencement of the chapter 7 cases – but not of the claim discharge bar date – before the claims discharge bar dated lapsed.
>
> The objecting creditors filed, or sought leave to file, their complaints under section 523 objecting to the dischargeability of their claims after the claims discharge bar dates lapsed.
>
> The trial courts rejected the objecting creditors' complaints as time barred.

*See In re Medaglia*, 52 F.3d at 453-454; *In re Alton*, 837 F.2d at 458-459. In their respective appeals, each creditor contended that it was denied due process because the debtor failed to provide it with actual notice of the claims discharge bar date. As relevant, at issue in both cases was whether the objecting creditors' actual knowledge of the bankruptcy petition, without receipt of formal notice of the claims discharge bar date, satisfied Fifth Amendment due process. *In re Medaglia*, 52 F.3d at 454-457; *In re Alton*, 837 F.2d at 458-461. In *Medaglia*, the Second Circuit framed the issue before it as "whether [the creditors] actual knowledge of the bankruptcy petition was a constitutionally permissible substitute for formal notice of the [claim discharge bar date], satisfying the requirements of due process." 52 F.3d at 453. The circuit found "that the plain meaning of [section 523(a)(3)(B)], which permits general knowledge of a case to substitute for particular knowledge of the bar date, [does not] violate constitutional due process." *Id.* at 454. It noted that section 523 "contemplates the situation of unlisted creditors who have timely, actual knowledge of a 'case' but fail to receive official notice of the [claim discharge] bar date," and that "[t]he section imposes a burden on such creditors to come forward before the bar date. . ." *Id.* at 455. Nonetheless, it reasoned that "[w]hile general knowledge that a bankruptcy proceeding has commenced is not the same as specific knowledge of the [claim discharge] bar date," such knowledge was sufficient for purposes of section 523(a)(3)(B) because "provisions of the Code do enable a creditor to estimate the bar date with relative accuracy based only on

14

knowledge of when a Chapter 7 petition was filed." *Id.*  Specifically, the circuit found that by

application of Bankruptcy Rule 4007(c), a creditor can "estimate the [claim discharge] bar date

with relative accuracy based only on knowledge of when a Chapter 7 petition was filed." *Id.*

That is because Bankruptcy Rule 4007(c) "sets a bar date as 60 days following the date set for

the first meeting of creditors, and [Bankruptcy Rule] 2003(a) sets the first meeting of creditors as

'not less than 20 nor more than 40 days after the order for relief.'" *Id.*  In that light, relying, in

part, on *Alton*, the Second Circuit found that

> Even if a creditor learns of the bankruptcy proceeding at a relatively late date (but
> before the [claim discharge] bar date), Rule 4007(c) permits the creditor to move
> the court for an order extending the time in which to file objections to
> dischargeability.  Therefore, while it is true that § 523(a)(3)(B) does impose a
> burden on unlisted creditors who obtain timely knowledge of a bankruptcy
> proceeding, that burden is minimal and certainly does not deprive unlisted
> creditors of their opportunity to be heard.

*Id.* at 455 (also noting the general rule that "due process is not offended by requiring a person

with actual, timely knowledge of an event that may affect a right to exercise due diligence and

take necessary steps to preserve that right.").

The creditor in *Medaglia* also argued that *City of New York v. New York, New Haven &*

*Hartford R.R. Co.,* 344 U.S. 293 (1953) precluded a holding that actual knowledge of a Chapter

7 proceeding can substitute for formal notice of the bar date consistent with due process.  52 F.3d

at 456.  In *New York*, the debtor (the "Railroad") was a debtor in a reorganization case under

section 77 of the Bankruptcy Act, the predecessor of the Chandler Act of 1938.  344 U.S. at 293.

The City of New York (the "City") was a lien creditor of the Railroad.  In contravention of

section 77(c)(4) of the Act (a notice provision analogous to section 521(1) of the Code), the

district court in the reorganization proceeding did not order the Railroad to file a list of creditors.

*Id.* at 294. Thereafter, the district court fixed a claims bar date, and directed the Railroad to mail

the bar date order to all creditors that had already appeared in court, and publish notice of the bar

date.  The City had not appeared in the case.  Thus, under the district court's order, the City was

not entitled to actual notice of the bar date.  The City did not receive a copy of the bar date order

and never filed a claim.  *Id.* at 294.  Following the  reorganization, the Railroad sought a

declaratory judgment establishing its title to certain properties free of the City's tax liens. The

City objected on the grounds that it had not received formal notice of the bar date.  The district

court rejected that argument, and, on appeal, the Second Circuit affirmed the district court.  The

Supreme Court reversed, stating that "even creditors who have knowledge of a reorganization

have a right to assume that the statutory 'reasonable notice' will be given them before their

claims are forever barred."  *Id.* at 297.  On the basis of that holding, the *Medaglia* creditor argued

that actual knowledge of the debtor's chapter 7 cases could not fairly substitute for formal notice

of a claim discharge bar date.  52 F.3d at 456.   In rejecting that contention, the Second Circuit

found that in *New York*,  the Supreme Court was construing section 77 of the Act, not the

Constitution, that the statute provided that "[t]he judge shall cause reasonable notice of the

period in which claims may be filed, . . .by publication or otherwise" and that notice by

publication was not "reasonable notice" in the circumstances,  because language in the statute

gave the City the "right to assume" that it would receive actual notice of the claims bar date

before the Railroad could expunge its claim.  *Id*. at 456.  The Second Circuit distinguished

*Medaglia* from *New York* on the grounds that section 523(a)(3)(B) "does contain a constructive

notice clause that makes crystal clear that a creditor with timely, actual knowledge of the 'case'

does *not* have the 'right to assume' that it will receive formal notice before its claims are barred.

Section 523(a)(3)(B) specifically qualifies any right to assume receipt of formal notice."  *Id.* at

457.

16

*Medaglia* and *Alton* do not support Reorganized RMS's assertion that the Plan Injunction

bars Dr. Nassar's continued prosecution of the Texas Action.  Approximately one year after it

issued *Alton*, the Eleventh Circuit rejected application of *Alton* in a case, like this one, where a

corporate debtor argued that a creditor, who did not file a claim in the case, and whose claims

were not scheduled by the debtor and who did not receive official notice of any kind from the

bankruptcy court, but had actual knowledge of the pendency of the case, was nonetheless bound

by the discharge provisions in the debtor's confirmed Chapter 11 plan.  *See Spring Valley Farms,*

*Inc. v. Crow (In re Spring Valley Farms, Inc.)*, 863 F.2d 832 (11th Cir. 1989).   The Eleventh

Circuit reasoned that "Section 523(a)(3) places a burden of inquiry upon a creditor only when the

debtor is an 'individual debtor.'  A corporate debtor is not an individual debtor for the purposes

of Section 523."  *Id.* at 834.[21]   Several courts in this circuit likewise have found that section 523

applies only to individual debtors, and not to corporate debtors.  *See In re MF Global Holdings,*

*Ltd.,* No. 11–15059(MG), 2012 WL 734175 (Bankr. S.D.N.Y. Mar. 6, 2012), at *3 ("In the

Second Circuit, it is well-settled that section 523 does not apply to corporate debtors."); *Adam*

*Glass Serv., Inc. v. Federated Dep't Stores, Inc.,* 173 B.R. 840, 842 (E.D.N.Y.1994) ("§ 523 only

applies to individual debtors.") (citing *In re Spring Valley Farms Inc.,* 863 F.2d 832); *In re*

*Automatic Plating of Bridgeport, Inc.,* 202 B.R. 540, 542 (Bankr.D.Conn.1996) ("In this circuit,

---

[21]    As the Eleventh Circuit noted:

> A corporate debtor is not an individual debtor for the purposes of Section 523. *Yamaha Motor*
> *Corp. v. Shadco, Inc.,* 762 F.2d 668, 670 (8th Cir.1985) (applying Section 523 to corporations
> would "render meaningless employment by Congress of the term 'individual'") (*citing In re*
> *Kuempel Co.,* 14 B.R. 324, 325 (Bankr.S.D.Ohio 1981)); *In re Push & Pull Enter., Inc.,* 84 B.R.
> 546, 548 (N.D.Ind.1988) ("It is almost undebatable and universally held that a corporate Chapter
> 11 debtor is not subject to the dischargeability provisions of 11 U.S.C.A. § 523."); *Collier on*
> *Bankruptcy,* § 523.04 at 523-11 (1988).

*Spring Valley Farms, Inc. v. Crow (In re Spring Valley Farms, Inc.)*, 863 F.2d 832, 834 (11th Cir. 1989).

it is well settled that § 523 does not apply to corporate debtors."); *In re Trafalgar Associates,* 53 B.R. 693, 696 (Bankr.S.D.N.Y.1985) ("[S]ection [523] on its face applies only to individual debtors, and not to limited partnerships. . . "). On that basis, section 523 is inapplicable herein because RMS is a corporate debtor, not an individual debtor.

Moreover, Dr. Nasser's knowledge that RMS filed a Chapter 11 case did not provide him with enough information to ascertain the General Bar Date. That is because that date is not fixed by application of provisions in the Bankruptcy Code or Bankruptcy Rules that are keyed to the commencement of the Chapter 11 case. It is fixed in the discretion of the bankruptcy court. *See* Fed. R. Bankr. P. 3003(c)(3) ("The court shall fix. . . the time within which proofs of claim or interest may be filed."). In *Medaglia,* the Second Circuit found that "[u]nlike knowledge of an individual debtor petition, knowledge of a corporate reorganization petition does not readily enable a creditor to estimate the bar date." 52 F.3d at 457. *See also Levin v. Maya Constr. (In re Maya Constr. Co.),* 78 F.3d 1395, 1399 (9th Cir. 1996) (distinguishing impact of lack of formal notice in Chapter 7 and 13 from Chapter 11 cases "because the lack of formal notice of a proof of claims deadline is not as significant in those chapters. In contrast, the rule governing proofs of claims in a Chapter 11 suit, which instructs the court to fix a proof of claims deadline and permits the court to extend that deadline 'for cause shown,' Fed. R. Bankr. P. 3003(c)(3), the rule governing Chapter 7 and 13 proceedings provides that proofs of claim shall be filed within 90 days of the first creditors meeting and specifies limited exceptions. Fed. R. Bankr. P. 3002."); *Shu Lun Wu v. May Kwan Si, Inc.,* 508 B.R. 606, 612 (S.D.N.Y. 2014) ("Although section 523(a)(3)(A) applies in both chapter 7 and chapter 11 cases, notice principles are applied differently depending on the chapter. A central reason for this is that the time to file a proof of claim in a chapter 7 case is triggered by the meeting of creditors, whereas in chapter 11 cases a

bar date for filing proofs of claim is set after application to the bankruptcy court, and can occur at any time.")  The same reasoning applies regarding Plan confirmation.  Dr. Nassar's knowledge that RMS filed a Chapter 11 case did not provide him with sufficient information to ascertain the Plan confirmation hearing date because it too is set by the Court.  *See* Fed. R. Bankr. P. 3017 (prescribing notice provisions regarding hearing on a debtor's disclosure statement and reorganization plan.)

Still, Reorganized RMS asserts that, in any event, the Plan Injunction bars Dr. Nassar's continued prosecution of the claim.  As support, it relies on *Sequa Corp. v. Christopher (In re Christopher)*, 28 F.3d 512 (5th Cir. 1994).  In *Christopher,* the debtor filed for bankruptcy under Chapter 11. He and other investors sought to purchase insurance companies from Sequa Corporation ("Sequa") during the pendency of his bankruptcy case.  *See id.* at 513. During the case, Sequa sued the debtor in New York for claims arising from the transaction.  *See id.* at 514. While that action was pending, the bankruptcy court confirmed the debtor's Chapter 11 plan. *See id.* The debtor did so without providing notice of the plan and plan confirmation hearing to Sequa.  After the plan went effective, the debtor then filed an adversary proceeding in the bankruptcy court seeking discharge of Sequa's claims. *See id.*  The court held that the post-petition claims were discharged by the confirmation order.[22]  On appeal, Sequa argued that post-petition creditors were entitled to formal notice of important dates and filing deadlines under the Due Process Clause. *See id.* at 515. The Fifth Circuit found that to meet the due process requirements under *Mullane* (as applied in *Bank of Marin v. England*, 385 U.S. 99 (1966)), notice to Sequa had to apprise it of the pendency of the Chapter 11 case, and be sufficiently timely to permit Sequa to protect its rights as a post-petition creditor under the debtor's plan.  *See*

---

[22]    *See Christopher v. Am. Universal Ins. Group, Inc. (In re Christopher),* 148 B.R. 832 (Bankr.N.D.Tex.1992).

*id.* at 518.  The Court found that the actual notice of Christopher's bankruptcy possessed by

Sequa was sufficient to satisfy the dictates of due process and *Mullane*.  First, there was no

dispute that Sequa had actual knowledge of the Chapter 11 case.  The circuit found that the

notice was sufficiently timely because post-petition creditors are protected by the preferred status

that they occupy in Chapter 11 cases and because imposing a strict requirement for actual notice

to all post-petition claimants could be extremely onerous for large Chapter 11 debtors.  *See id*. at

519.  In sum, the Fifth Circuit concluded "that the actual notice of Christopher's bankruptcy

possessed by [Sequa] was sufficient to satisfy the dictates of due process and *Mullane*.  We

decline [Sequa's] invitation to use the Due Process Clause to fill what appears to us to be an

intentional and generally unproblematic gap in the Code's notice provisions."  *See id.*

  *Christopher* is not binding on this Court and is distinguishable.  The Fifth Circuit limited

its holding in *Christopher* to "postpetition plaintiffs in [Sequa's] position."  28 F.3d at 519.  Dr.

Nassar is not a post-petition plaintiff seeking to better already enhanced rights to payment of an

administrative priority claim under the Plan.  Moreover, the Fifth Circuit has rejected application

of *Christopher* in cases, like this one, in which the Bankruptcy Code and Bankruptcy Rules

dictate the notice requirements to creditors.  *See In re National Gypsum Co.*, 208 F.3d 498, 510

(5th Cir. 2000).[23]  In any event, the majority of the Circuit Courts that have considered the matter

---

[23] In that case, among the issues before the Fifth Circuit was whether, in and of itself, general notice of the
existence of reorganization plan provided sufficient notice to contract counterparties of the debtor's intent to assume
executory contracts as part of its plan.  The circuit rejected application of *Christopher*, as follows:

> National Gypsum contends that the bankruptcy court was correct to dispose of this issue on
> constitutional due process grounds pursuant to *Sequa Corp. v. Christopher (Matter of
> Christopher)*, 28 F.3d 512 (5th Cir.1994), rather than on statutory grounds pursuant to § 365 and
> Bankruptcy Rule 6006. Based on this analysis, National Gypsum concludes that Century is barred
> from recovery even though a fact question remains concerning whether Century received the
> formal notice ordered by the court. We conclude that the district court correctly rejected this
> analysis, because the result is controlled by the Bankruptcy Code and Rules, obviating the need to
> ascertain how constitutional due process considerations would fill the perceived statutory lacuna.
> Even if there was a gap to fill, the constitutional due process standard set forth in *Christopher* has
> never been extended to apply to assumption of executory contracts.

hold that a creditor's actual knowledge of the pendency of a Chapter 11 case does not impose

upon it an affirmative burden to intervene to present a claim, and that the creditor has a right to

formal notice of the bankruptcy proceedings before his claims are barred forever.  *See Paging*

*Network, Inc. v. Nationwide Paging, Inc. (In re Arch Wireless, Inc.)*, 534 F.3d 76, 83 (1st

Cir.2008); *In re Harbor Tank Storage Co.*, 385 F.2d 111, 115 (3d Cir.1967); *Fogel v. Zell*, 221

F.3d 955, 964 (7th Cir.2000); *In re Maya Constr. Co.*, 78 F.3d 1395, 1399 (9th Cir.1996); *In re*

*Unioil*, 948 F.2d 678, 684 (10th Cir.1991); *In re Spring Valley Farms, Inc.*, 863 F.2d 832, 835

(11th Cir.1989).[24]

Judge Frank's dissent in *City of New York v. New York, N.H. & H.R. Co.* (*In re New York,*

*N.H. & H.R. Co.*), 197 F.2d 428, 431–32 (2d Cir. 1952) is consistent with the majority of the

circuits cited above.  In part, Judge Frank noted that "without some specific statutory provision

imputting [sic] knowledge of the bar order to anyone merely having knowledge of the

reorganization proceedings, I think the City cannot be charged with notice of whatever it could

have found, if it had carefully examined the reorganization records." *Id.* at 431.  As the *Medaglia*

court noted, in reversing the Second Circuit, the Supreme Court effectively adopted Judge

Frank's reasoning.  52 F.3d at 456.  A debtor who fails to give notice to known potential

---

*In re National Gypsum Co*., 208 F.3d 498, 510 (5th Cir. 2000) (footnote omitted).

[24]    None of the other cases that Reorganized RMS cites in support of its argument are binding on this Court. Moreover, each adheres to the minority view, which this Court declines to endorse.  *See Robbins v. Amoco Prod. Co.*, 952 F.2d 901, 908 (5th Cir. 1992) (creditor bound by chapter 11 plan where she "had both actual and inquiry notice of the bankruptcy proceedings, yet…failed to take any action to avoid discharge of her claims."). *In re Pilgrim's Pride Corp.*, 564 B.R. 534, 544 (Bankr. N.D. Tex. 2017) ("At least in the Fifth Circuit, a creditor who receives actual notice of a bankruptcy filing in sufficient time to protect its rights must do so or else risk discharge of its claim"); *Ranger Ins. Co. v. Wolcott (In re TLI, Inc.)*, 1998 U.S. Dist. Lexis 15488 at *14-15 (N.D. Tex. Sept. 25, 1998)(although creditors "were not listed as creditors and were not served with formal notice of several important dates related to the bankruptcy [including the bar date]," the confirmed plan barred their claims (and due process was afforded) because they had actual notice of the bankruptcy proceeding); *Kirkpatrick v. Cheff*, 118 Wash. App. 772, 777–78, 76 P.3d 1211, 1214 (2003) (finding chapter 11 plan was binding where debtor did not provide "formal notice of the reorganization plan, the hearing, or the confirmation" because "actual knowledge of the bankruptcy proceedings afforded [creditors] the opportunity to present objections to the plan.").

creditors risks that its obligations to those creditors will not be discharged.  *See Adam Glass*

*Serv., Inc. v. Federated Dep't Stores, Inc.,* 173 B.R. 840, 842–43 (E.D.N.Y.1994) (explaining

that when a creditor does not receive sufficient notice in a bankruptcy proceeding, due process

prevents discharge of the creditor's claims); *Daewoo Int'l (Am.) Corp. Creditor Trust v. SSTS*

*Am. Corp.,* 02 CIV. 9629(NRB), 2003 WL 21355214, at *2 (S.D.N.Y. June 11, 2003) ("[I]f

actual notice is not afforded [to a known creditor], the known creditor's claims cannot be

discharged."); *In re Nuttall Equip. Co., Inc.,* 188 B.R. 732, 735 (Bankr.W.D.N.Y.1995) ( "There

is abundant authority to the effect that prepetition claims against a corporate Chapter 11 debtor

are not discharged under 11 U.S.C. § 1141(d)(1) if the debtor knew of the claim and did not

schedule the creditor and if the creditor, therefore, never received the notices required by

statute.").  Recently, in *In re Avaya, Inc*., Judge Bernstein adopted that view, as follows:

> In chapter 11 cases, notice of or awareness that a bankruptcy case is pending does
> not give the creditor the information needed to ascertain the bar date, *GAC Enter.,*
> *Inc. v. Medaglia* (*In re Medaglia* ), 52 F.3d 451, 457 (2d Cir. 1995); *Shu Lun Wu*
> *v. May Kwan Si, Inc.*, 508 B.R. 606, 612 (S.D.N.Y. 2014), and a creditor who was
> not served with notice of the bar date but nonetheless learns that a case is pending
> is not under a duty to discover the bar date. *City of New York v. New York, N.H. &*
> *H.R. Co.* (*In re New York, N.H. & H.R. Co.*), 197 F.2d 428, 431–32 (2d Cir. 1952)
> (Frank, J., dissenting), *rev'd*, 344 U.S. 293 (1953).

2018 WL 4381524, at *3.  *See also In re Queen Elizabeth Realty Corp.*, 586 B.R. 95, 107

(S.D.N.Y. 2018) (same); *In re Brunswick Hospital Center, Inc.*, No. 892–80487–20, 1997 WL

836684, at *5 (Bankr. E.D.N.Y. Sept. 12, 1997) ("[T]he burden is on the Chapter 11 debtor to

cause formal notice to be given to creditors. A creditor who is not given notice, even if it has

actual knowledge of the reorganization, does not have a duty to investigate or inject itself into

the proceedings.")  The Court finds those cases persuasive.

## Conclusion

Based on the foregoing, the Court finds that the Plan Injunction is not binding on Dr. Nassar because he was a known creditor of Debtors, and the Debtors failed to provide him with actual notice of the General Bar Date, the Confirmation Hearing Notice, or any other matter arising in the case. Although Dr. Nassar had actual knowledge of the pendency of RMS's Chapter 11 case, he had no duty to discover the General Bar Date or otherwise to intervene in the case. Accordingly, the Court sustains Dr. Nassar's Objection and denies the Motion.

IT IS SO ORDERED.

Dated: New York, New York
         January 2, 2021

/s/ *James L. Garrity, Jr.*

Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge