| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | **NOT FOR PUBLICATION** |

------------------------------------------------------- x
*In re:*

Ditech Holding Corporation, *et al.*,

                                       Debtors.¹

------------------------------------------------------- x

Case No. 19-10412 (JLG)

Chapter 11

(Jointly Administered)

# MEMORANDUM DECISION AND ORDER SUSTAINING THE ELEVENTH OMNIBUS OBJECTION AND TWENTY-EIGHTH OMNIBUS OBJECTION TO PROOF OF CLAIMS (NO BASIS CONSUMER CREDITOR CLAIMS) AGAINST <u>MICHAEL J. DONAHUE</u>

<u>**A P P E A R A N C E S :**</u>

WEIL, GOTSHAL & MANGES, LLP
*Attorneys for Debtor*
767 Fifth Avenue
New York, New York 10153
<u>By:</u>    Richard Slack, Esq.
         Sunny Singh, Esq.

Mr. Michael J. Donahue
*Appearing Pro Se*

---

¹ On September 26, 2019, the Court confirmed the Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors [ECF No. 1404] (the "Plan"), which created the Wind Down Estates. The Wind Down Estates, along with the last four digits of their federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034. All references to "ECF No. ___" are references to documents filed in these Chapter 11 Cases, Jointly Administered under Case No. 19-10412.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction

Under the Plan, the Plan Administrator,[2] the GUC Recovery Trustee, and the Consumer Representative have the exclusive authority to object to claims filed against the Debtors. In accordance with the Court's Claims Procedures Order, the Plan Administrator and the Consumer Representative have filed Omnibus Objections to Proofs of Claim that extend to thousands of claims. Under those procedures if a creditor challenges a claim objection, it is deemed to hold a "Contested Claim" and the Court will conduct either a "Merits Hearing" or a "Sufficiency Hearing" to resolve the Contested Claim. The matters before the Court are the objections of the Plan Administrator and Consumer Representative (the "Objections") to the two claims filed by Michael J. Donahue ("Donahue" or the "Claimant") against Ditech Holding Corporation (the "Donahue Contested Claims"). Pursuant to the Objections, the Plan Administrator and Consumer Representative seek to expunge those claims.

In considering the merits of the Objections, the Court conducted a Sufficiency Hearing on the Donahue Contested Claims. Pursuant to the Claims Procedure Order, the legal standard of review that the Court applies at a Sufficiency Hearing is equivalent to the standard applied by the Court upon a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3] For the reasons stated herein, the Court finds that accepting all factual allegations asserted by the *pro se* Claimant in support of his claims as true, drawing all reasonable inferences in the Claimant's favor, and interpreting the claims and Responses submitted by the Claimant to raise the strongest arguments that they suggest, the Donahue Contested Claims fail

---

[2]  All capitalized terms are defined below or in the Plan.

[3]  Rule 7012 of the Federal Rules of Bankruptcy Procedure makes Rule 12(b)(6) applicable herein.

to state claims against Ditech that are plausible on their face. For that reason, the Court sustains the Objections and expunges the Donahue Contested Claims.

## Jurisdiction

A party invoking this Court's post-confirmation jurisdiction must demonstrate both (i) that the matter has a "close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan or incorporated litigation trust agreement," *Penthouse Media Group v. Guccione (In re Gen. Media, Inc.)*, 335 B.R. 66, 73 (Bankr.S.D.N.Y.2005) (quoting *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 168-69 (3d Cir. 2004)); and (ii) that the plan provides for the retention of jurisdiction over the dispute. *Id.* (citing *Hosp. and Univ. Prop. Damage Claimants v. Johns Manville Corp. (In re Johns–Manville Corp.)*, 7 F.3d 32, 34 (2d Cir.1993)). *See also Cohen v. CDR Creances S.A.S. (In re Euro-Am. Lodging Corp.)*, 549 F. App'x 52, 54 (2d Cir. 2014) ("A party may invoke the authority of the bankruptcy court to exercise post-confirmation jurisdiction only if the matter has a close nexus to the bankruptcy plan . . . and the plan provides for the retention of such jurisdiction . . . ") (internal citations omitted) (summary order); *Ace Am. Ins. Co. v. State of Mich. Workers' Comp. Ins. Agency (In re DPH Holdings Corp.)*, 448 F. App'x 134, 137 (2d Cir. 2011) (summary order), *cert. denied*, 567 U.S. 935 (2012). *See also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (a bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders).

The Objections have a "close nexus" to the Plan, because the Plan Administrator and the Consumer Representative seek to determine the validity of the Donahue Contested Claims which affect the administration of the Plan. Section 7.1 of the Plan gives the Plan Administrator and Consumer Representative the right to object to claims. *See* Plan, Art. VII, § 7.1. The Plan

2

provides for the retention of jurisdiction over the dispute because under the Plan the Court retained jurisdiction "to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim or Class of Claims." *Id.* Art. XI, § 11.1(d). Accordingly, the Court has subject matter jurisdiction over the Objections.

## Background

On February 11, 2019 (the "Commencement Date"), the Debtors commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). On March 28, 2019, the Debtors filed their schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules") [ECF Nos. 289-313]. On May 7, 2019, the Debtors filed certain amended Schedules. [ECF Nos. 511-512].

On February 22, 2019, the Court entered the Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof. [ECF No. 90] (the "Bar Date Order"). Pursuant to the Bar Date Order, the Court set April 1, 2019 at 5:00 p.m. (prevailing Eastern Time) as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in the Chapter 11 Cases (the "General Bar Date"). On March 27, 2019, the Court extended the General Bar Date to April 25, 2019 at 5:00 p.m. (prevailing Eastern Time). [ECF No. 272] (the "Extended General Bar Date"). On May 2, 2019, the Court extended the Extended General Bar Date solely for consumer borrowers to June 3, 2019 at 5:00 p.m. (prevailing Eastern Time) [ECF No. 496]. The claims register is prepared and maintained by Epiq Corporate Restructuring, LLC. It shows that approximately 7,800 proofs of claim (the claims therein, the "Claims") were filed

3

in the Chapter 11 Cases. The Plan was confirmed by order dated September 26, 2019 (the "Confirmation Order"). Pursuant to the Confirmation Order, the Court set the deadline for each person or entity asserting Administrative Expense Claims to file proofs of claim in the Chapter 11 Cases to thirty-five (35) days from the date of service of the notice of entry of the Confirmation Order.

## Claim Objection Procedures

Under the Plan, the Plan Administrator, on behalf of each of the Wind Down Estates, has exclusive authority to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims; the GUC Recovery Trustee, on behalf of the GUC Recovery Trust, has the exclusive authority to object to all General Unsecured Claims; and the Consumer Representative has the exclusive authority to object to all Consumer Creditor Claims. *See* Plan, Art. VII, § 7.1. On November 19, 2019, the Bankruptcy Court entered an Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures. [ECF No. 1632] (the "Claims Procedures Order"). That order authorizes the Estate Representatives to object to Claims in accordance with Claims Objection Procedures set forth therein. *See* Claims Procedures Order ¶ 2. Without limitation, the procedures authorize the Estate Representatives to file Omnibus Objections to Claims seeking reduction, reclassification, or disallowance of Claims. In support of those objections, they are permitted to rely on the grounds set forth in Bankruptcy Rule 3007(d), as well as on one or more of the following grounds:

(1) The amount claimed contradicts the Debtor's books and records;
(2) The Claim seeks recovery of amounts for which the Debtors are not liable;
(3) The Claims are not entitled to the asserted status or priority;
(4) There is insufficient legal basis for the Claim;
(5) The Claims do not include sufficient documentation to ascertain the validity of such Claims;
(6) The Claims were or will be satisfied in the normal course of business;

(7) The Claims have been waived, withdrawn, or disallowed pursuant to an agreement with the Debtors or an order of this Court; and

(8) The Claims are objectionable under section 502(e)(1) of the Bankruptcy Code.

*See id.* ¶ 2(i)(a)-(h).

Under the Claims Procedures Order, a properly filed and served response to an Omnibus Objection gives rise to a "Contested Claim." The Estate Representative is required to schedule a contested hearing (each a "Claim Hearing") for each such claim. *Id.* ¶ 3(iv). The Claim Hearing will be scheduled as either a "Sufficiency Hearing" or a "Merits Hearing." A Sufficiency Hearing is a non-evidentiary hearing to address whether the Contested Claim has stated a claim for relief that can be allowed against the Debtors. *Id.* ¶ 3(iv)(a). The legal standard of review that the Court will apply at a Sufficiency Hearing is equivalent to the standard that the Court applies to motions under Rule 12(b)(6). *Id.* A Merits Hearing is an evidentiary hearing on the merits of the Contested Claims. *Id.* ¶ 3(iv)(b).

## Contested Claims

The Donahue Contested Claims are:

| Claim No. 24629 | Claimant: | Donahue (the "Donahue Claim") |
|---|---|---|
| | Debtor: | Ditech Holding Corporation ("Ditech Holding")[4] |
| | Amount: | $1,800,000 |
| | Status: | Secured non-priority, administrative expense claim under 11 U.S.C. § 503(b)(9)[5] |

---

[4] While the claims themselves identify Ditech Holding as the Debtor, the substance and documentation annexed in support of the claims allege a claim against Ditech Financial LLC.

[5] Bankruptcy Code section 503(b)(9) provides as follows:

> (b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including –
>
> * * *
>
> (9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods

5

| | | |
|---|---|---|
| Claim No. 60123 | Claimant: | Donahue (the "Administrative Expense Claim" or "Admin. Expense Claim") |
| | Debtor: | Ditech Holding |
| | Amount: | $1,800,000 |
| | Status: | Administrative expense claim under 11 U.S.C. § 503 |

The Claimant filed approximately 300 pages of documents in support of the Donahue Claim. He filed the Administrative Expense Claim as an amendment to the Donahue Claim. *See* Admin. Expense Claim ¶ 4. It includes a two-page description of the claim.

The Plan Administrator and Consumer Representative filed joint Objections to those claims.⁶ In part, in support of the Objections, the Plan Administrator and Consumer Representative assert, as follows:

> [B]ased on the books and records, the Plan Administrator believes there is no basis for the Proof(s) of Claim.
>
> \*        \*        \*        \*
>
> The Plan Administrator, with the assistance of its professionals, and the Consumer Representative have examined each [Claim], documentation provided with respect to each [Claim] and the Debtors' respective books and records, and have determined in each case that (i) there is insufficient evidence to support the validity of the Claims, in the amounts and priorities asserted, and/or (ii) such Claims are deemed to have no merit by the Debtors. . . . The Plan Administrator and the Consumer Representative believe the Claims have no basis at all in their entirety

---

have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9). This provision gives additional protection to certain trade creditors by allowing suppliers of goods to assert administrative expense claims for the value of goods sold and delivered to, and received by, a debtor/customer in the ordinary course of business within 20 days of the debtor's bankruptcy filing. It has no application to the Donahue Claim. The Court will treat the Donahue Claim as an alleged secured non-priority claim.

⁶   *See* Eleventh Omnibus Claims Objection to Proofs of Claim (No Basis Consumer Creditor Claims), dated January 17, 2020 [ECF No. 1743] (the "Eleventh Omnibus Objection"); Twenty-Eighth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Admin Claims), dated January 17, 2020 [ECF No. 1760].

> based on the Debtors' books and records and the supporting documentation submitted by the Borrower, if any.

*See, e.g.,* Eleventh Omnibus Objection ¶ 13.

The Claimant timely filed a response (the "Response") to the Objections. *See* Response [ECF No. 1862]. The Plan Administrator and Consumer Representative filed a joint reply to the Response. *See* Joint Reply of Plan Administrator and Consumer Representative in Support of the Eleventh Omnibus Objection with Respect to Claim of Michael Donahue (Claim Nos. 24629 and 60123), dated March 24, 2020 [ECF No. 2026] (the "Reply"). They did not submit any documents in support of the Reply. The Court conducted Sufficiency Hearings on the Contested Claims.

## Applicable Legal Standards

Under section 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). *See also* Fed. R. Bankr. P. 3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."). Section 502(b) sets forth the grounds for disallowing a properly filed proof of claim. *See* 11 U.S.C. § 502(b); *see also Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.,* 549 U.S. 443, 449 (2007) ("But even where a party in interest objects [to a claim], the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b)"); *HSBC Bank USA, N.A. v. Calpine Corp.*, No. 07 Civ. 3088 (GBD), 2010 WL 3835200 at *5 (S.D.N.Y. Sept. 15, 2010) ("All claims are allowed unless specifically proscribed by one of the nine exceptions listed in § 502(b).") (citing *Travelers*, 549 U.S. at 449). As relevant, section 502(b) states that if a party in interest objects to a claim, the Court:

> [A]fter notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that— (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]

11 U.S.C. § 502(b)(1). Whether a claim is allowable "generally is determined by applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006). In the face of a properly filed claims objection, the claimant must prove by a preponderance of the evidence that under applicable law the claim should be allowed. *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000) ("Once an objectant offers sufficient evidence to overcome the prima facie validity of the claim, the claimant is required to meet the usual burden of proof to establish the validity of the claim."). "[T]he ultimate burden of persuasion is always on the claimant." *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991).

Bankruptcy Rule 7008 incorporates Rule 8 of the Federal Rule of Civil Procedure. As relevant, Rule 8 states that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." *In re DJK Residential LLC,* 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009). *See also In re 20/20 Sport, Inc.*, 200 B.R. 972, 978 (Bankr. S.D.N.Y. 1996) ("In bankruptcy cases, courts have traditionally analogized a creditor's claim to a civil complaint [and] a trustee's objection to an answer...."). Accordingly, claims drafted by *pro se* claimants "are to be construed liberally, but they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the plaintiff is complaining about and . . . whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortgage, LLC (In re*

*Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (quoting *Iwachiw v. New York City Bd. of Elections,* 126 Fed. Appx. 27, 29 (2d Cir. 2005)).

Pursuant to the Claims Procedures Order, "the legal standard of a review that will be applied by the Court at a Sufficiency Hearing will be equivalent to the standard applied by the Court [pursuant to Bankruptcy Rule 7012] upon a motion to dismiss for failure to state a claim upon which relief can be granted." *See* Claims Procedures Order, ¶ 3(iv)(a). Under Rule 12(b)(6), a claim may be dismissed due to a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under that rule, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 323-24 (2d Cir. 2011), *cert. denied*, 565 U.S. 1241 (2012). In assessing the sufficiency of the allegations, the Court accepts the complaint's factual allegations as true and must draw reasonable inferences in favor of the plaintiff. *Tellabs Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 323 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ideal Steel Supply Corp.*, 652 F.3d at 324 (quoting *Ashcroft v. Iqbal*, 556 U.S. at 678). As such, courts "are not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Twombly*, 550 U.S. at 555. In assessing the merits of the Rule 12(b)(6) motion, the Court "must liberally construe all claims . . . and draw all reasonable inferences in favor of the plaintiff." *See In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 252 (S.D.N.Y. 2011) (citing *Cargo Partner AG v. Albatrans, Inc.*, 352 F.2d 41, 44 (2d Cir. 2003)). In particular, the Court must construe a *pro se* complaint liberally. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008); *Boykin v.*

9

*KeyCorp,* 521 F.3d 202, 213–14, 216 (2d Cir.2008). Moreover, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. at 322.

### Facts[7]

In or about April 1995, Claimant purchased the house located at 4106 Prospect Avenue, Los Angeles, CA 90027 (the "Property"). *See* Donahue Claim at 4. He financed the purchase with a residential mortgage loan (the "Loan") on the Property that was serviced by Bank of America ("BofA"). At some point the servicing rights were transferred to Ditech Financial LLC (f/k/a Green Tree Servicing LLC) ("Ditech Financial"). Reply ¶ 1; Admin. Expense Claim at 3. In obtaining his mortgage, the Claimant used an appraiser from BofA's "approved list", who intentionally overstated the size of his home as 1025 sq. ft. Response at 1. The Claimant maintains that the appraiser did so to ensure that the Claimant could qualify for a mortgage, because under California law, it is illegal for a bank to finance a home that is smaller than 1000 sq. ft. *Id.* The Claimant asserts that the Property was only 930 sq. ft. *Id.*

The Claimant is a member of the Directors Guild of America and worked in Hollywood as a film director. Response at 1. In September 2001, he was diagnosed with AIDS. *Id.* In 2009 he lost his job when his employer of 19 years discovered his HIV status. Donahue Claim at 4. The bottom five discs in his spine are crushed, and he has been on Social Security Disability Income ("SSDI") since March 2010. *Id.* Beginning in or about the middle of 2017, the Claimant

---

[7] Subject to the standards applicable to Rule 12(b)(6) motions, the Court relies on the Donahue Contested Claims, and the documents annexed to those claims, the Response and the Reply as the source of facts for this Memorandum Decision and Order.

10

attempted "to get a loan modification from Ditech [Financial] but was denied 3 times." Admin. Expense Claim at 3. He explains that in seeking the loan modification, he enlisted the services of: (i) a private mortgage assistance company, (ii) Keep Your Home California state sponsored program, and (iii) Neighborhood Assistance Councils of America ("NACA"). *Id.* Specifically, on or about August 21, 2017, Claimant authorized Statewide Enrollment Group to assist him in resolving his mortgage loan issues. Donahue Claim at 293-301. On or about September 11, 2017, Claimant reached out to NACA for assistance in filing a Request for Mortgage Assistance. *Id.* at 12-32. On December 10, 2018, NACA notified Claimant that his application did not include required documents. *Id.* at 289-301.[8] Nonetheless, the Claimant maintains that each time he was told that he qualified for a loan modification and should be approved on the application, but each time he was rejected by the nameless "investment fund." Response at 2. He says that he advised them that he was disabled, had four terminal illnesses but had a guaranteed SSDI income for life, and that if they could not help him, no one could -- but that he was denied a loan modification anyway. Admin. Expense Claim at 3.

The Claimant also says that Ditech advised him that he was qualified under the Federal Housing Administration's ("FHA") home loan modification program. He says that despite providing all the requested documents, and meeting all their requested requirements for applications, he was denied a loan modification. Response at 2. In substance, he contends that he was an ideal candidate for a loan modification because he had guaranteed income for life – his SSDI payments – that was more than enough to make payments on his mortgage if Ditech

---

[8] Claimant does not allege or provide any evidence that he submitted a complete loss mitigation application to Ditech. *See* 12 C.F.R. § 1024.41(b)(1) (describing a complete loss mitigation application). Even if such an application was sent, Claimant does not allege facts of what, if anything, Ditech did wrong in evaluating the application.

granted the loan modification. Admin. Expense Claim at 3. He maintains that he was denied a loan modification because he was discriminated against because he is gay, and a person living with AIDS for the last 19 years. *Id.* He asserts that the disgust and disregard on the part of Ditech personnel once he submitted his personal statements in each round of applications was apparent not only in their decisions to reject his applications, but also in their comments about his "gay lifestyle" and "health situations." *Id.* He says that Ditech was trying to force him into foreclosure and that they freely acknowledged they were denying his rights to qualify for the FHA home loan modification programs. *Id.*[9]

In early 2019, the Claimant was in dire financial straits. He was in default under the mortgage and foreclosure was on the horizon. Response at 2. There was equity in the Property but, on advice of counsel, the Claimant determined that in a foreclosure sale, he would not recover any of the equity. *Id.* at 2-3. To avoid that situation, the Claimant put his home up for sale. In late January 2019, the Claimant called Ditech to explain that he was attempting to sell his home and that he did not want to be foreclosed before he sold. *Id.* at 3. He says that the

---

[9] The Claimant asserts, as follows:

> Let's just state it plainly, which I did repeatedly in discussions where [Ditech] freely acknowledged they were denying my rights to qualify for the FHA home loan modification programs:
>
> I'm a senior citizen. I'm on SSDI disability payments guaranteed for life. I've been paying on 4106 Prospect Avenue Los Angeles California for 23 years. I've had AIDS and Hepatitis B and Sleep Apnea and Allergy Related Asthma (four terminal diseases, incurable) for 19 years. I have a guaranteed federal income for life. I would easily be able to make the payments on my income if they granted the loan modification. However, they never would. They wanted to force me into foreclosure. Which they tried to do again and again, illegally accelerating my payments and the foreclosure process faster than the law would allow were it properly enforced. Their legal team charge me $12,000.00 just to "reinstate" my loan when it was not even legally in foreclosure.

Admin. Expense Claim at 3.

Ditech representative advised him that Ditech had offered him loan modification (which he denies) and that she could arrange a loan modification through Ditech, but not through the FHA. *Id.* The Claimant explains that Ditech approved a loan modification, and that it called for him to enter a 40-year loan that would reduce his monthly mortgage expense by $120.00.[10] He says those savings were not enough to solve his financial problems. He declined the loan modification and went forward with the sale of his home. *Id.*

After a couple of proposed sales fell through, on March 19, 2019, the Claimant sold the Property to an investor developer for $785,000, at least $300,000 below market value of the property according to Zillow estimates. *See* Donahue Claim at 94; Response at 3. He says that he had to sell the Property at a below market value because prospective purchasers could not get bank financing because the Property was undersized. Response at 3. The Claimant contends that since 2009, his mortgage indebtedness was the only debt that he had and that Ditech destroyed his credit. *Id.* He maintains that by the time he sold his home, Ditech had given him an "F" rating on the mortgage loan. He asserts that as a direct consequence, he was unable to qualify for another mortgage, and was forced to move well outside the area in which he desired to live. *Id.*

In both the Donahue Claim and Administrative Expense Claim, the Claimant seeks damages totaling $1.8 million. *See* Donahue Claim; Admin. Expense Claim. In support of the Administrative Expense Claim,[11] the Claimant asserts that his plan had been to remain in

---

[10] At the time, Donahue paid $2,020 per month on his mortgage; half going to principle and the other half to interest. Response at 3. Under the proposed modification, Ditech would double their income to almost $2,000 monthly on interest, on the same $360,000 mortgage, while his first payment would only pay a dollar of principal. *Id.* Donahue found the reset of his amortization schedule to be particularly objectionable. *Id.*

[11] The stated "basis" of the Administrative Expense Claim is "discrimination FHA loan modification." *See* Admin. Expense Claim ¶ 8.

13

Hollywood until he was 67, at which time, he believes the Property would easily have been worth $1.8 million. He asserts that because he was forced to sell due to Ditech's discrimination, predatory lending, and refusal to allow him his FHA qualified home loan modification, he lost most of his planned retirement and the equity he would have otherwise had in the Property. Admin. Expense Claim at 4. He maintains that Ditech's actions cost him $1.8 million. *Id.* He asserts that, for his entire life he has suffered discrimination due to being gay, and the last 19 years from AIDS discrimination as well. He maintains that it is not surprising to him that Ditech and its employees also discriminated against him and asks this Court to cure the financial damages that he suffered at the hands of Ditech. *Id.* [12]

## **Analysis**

The Claimant makes three arguments in support of the Donahue Contested Claims. The Claimants conclusory allegations in support of those claims are not supported by the documents he has submitted. Even the most generous reading of the claims and Response does not support a viable claim for recovery against Ditech Financial. First, Claimant asserts that "Bank of America wholly owned Greentree and Ditech and used them to commit mortgage crimes." *See* Response at 1. He complains that in 1995, BofA commissioned a fraudulent appraisal of the Property, and, as a consequence, he was "saddled" with a home that "would have to be enlarged, or sold for cash, or to a developer." *Id.* However, the alleged fraudulent appraisal of the Property occurred in 1995, years before Ditech Financial became the servicer for the Property.

---

[12] In his Response, the Claimant asserts that he lost $5,000,000 because he was unable to get the FHA loan modification. Response at 3. He reasons that if he had gotten the FHA loan modification, he would have been able to remain in the Property until 2030 – when the Property would have been conservatively worth $6,000,000. *Id.* at 4. He contends that he lost that because Ditech and Bank of America investments denied him fair access to the FHA loan modification. There is nothing in the record that supports this estimate.

14

Thus, the Claimant alleges fraud and other wrongdoing on the part of BofA, not Ditech Financial.[13] Next, the Claimant maintains that Ditech acted improperly in denying him an FHA Home Loan Modification but does not allege that his loan was insured by the FHA and subject to FHA loss mitigation guidelines.[14] As Ditech Financial correctly notes, under the Making Homes Affordable Program ("MHA"), the HAMP program offered a variety of loss mitigation alternatives. However, the MHA program ended on December 31, 2016, before Claimant sought any loan modification. *See* Dep't of Treasury, MHA Supplemental Directive 16-02 (March 3, 2016) (noting the termination of the MHA Program Dec. 21, 2016), available at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd1602.pdf. In any event, even as the Claimant contends that Ditech Financial wrongly failed to grant him a loan modification (Response at 2), he concedes that Ditech Financial offered him a loan modification that he rejected as insufficient because even with the proposed $120 monthly savings under the modified loan, he could not afford the mortgage payments. *Id.* at 3. Finally, in support for his assertion that Ditech Financial was trying to force him into foreclosure, he contends that Ditech Financial's "legal team charge[d] [him] $12,000.00 just to 'reinstate' [the] loan when it was not even legally in foreclosure." Admin. Expense Claim at 3. However, the Claimant does not

---

[13]   The Claimant has not alleged grounds to hold Ditech Financial liable for BofA's alleged wrongdoing. The Claimant asserts that BofA was sued for accelerated illegal foreclosures and then transferred his mortgage to Greentree lending, and from there to Ditech. Response at 1. He contends that BofA wholly owned Greentree and Ditech and used them to commit mortgage crimes and protect themselves through a corporate shield while the crimes were being committed. He requests the Court to consider piercing the corporate veil to assign the crime(s) appropriately to BofA. There is no support for the Claimants' contention. In any event, he seeks to hold BofA accountable for alleged bad acts by Greentree and Ditech Financial. That is irrelevant in this case, as the Claimant complains about BofA's alleged bad acts.

[14]   The Claimant does not allege or provide any evidence that a complete loss mitigation application was submitted to Ditech. *See* 12 C.F.R. § 1024.41(b)(1) (describing a complete loss mitigation application). Even if such an application was sent, Claimant does not allege what, if anything, Ditech did wrong in evaluating the application.

challenge the reinstatement amount and does not deny that he was behind on his mortgage payments. Claimant alleges that he was denied a modification of the Loan due to discrimination because he is gay, and a person living with AIDS for the last 19 years. The Court takes allegations of discrimination, as it does all allegations, very seriously.

The Fair Housing Act prohibits any person or entity "whose business includes engaging in residential real estate-related transactions" from discriminating against any person "in making available such a transaction, or in the terms or conditions of such a transaction," due to that person's race, color, religion, sex, handicap, familial status, or national origin. *See* 42 U.S.C. 3605. It defines a "real estate-related transaction" to include the "making or purchasing of loans or providing other financial assistance" for purchasing or maintaining a dwelling, or where the loan or financial assistance is secured by residential real property. *Id.* at 3605(b). To state a claim under Section 3605 of the Fair Housing Act, Claimant must plead that: (1) he is a member of a protected class; (2) he attempted to engage in a "real estate-related transaction" and met all of the relevant qualifications for doing so; (3) the defendant refused to transact business with the applicant despite her qualifications; and (4) the defendant continued to engage in the type of transaction in question with other parties with similar qualifications who are outside the protected class. *Jackson v. Wells Fargo Home Mortgage*, No. 15-CV-5062 (PKC) (ST), 2018 WL 8369422 at *4 (E.D.N.Y. 2020) (citations omitted). Even assuming that the Claimant could qualify as a member of a protected class, he has not alleged facts in support of the claims of discrimination.

## Conclusion

Based on the foregoing, the Court finds that the Claimant has not met his burden of demonstrating that the Donahue Contested Claims allege claims against Ditech

Financial that are plausible on their face.  The Court sustains the Objections and expunges those claims.

IT IS SO ORDERED.

Dated:  New York, New York
        January 20, 2021

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge