UNITED STATES BANKRUPTCY COURT                     NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
In re:                                           :
                                                 :   Case No. 19-10412 (JLG)
Ditech Holding Corporation, *et al.*,            :   Chapter 11
                                                 :
                                                 :   (Jointly Administered)
                              Debtors.[1]        :
------------------------------------------------------- x

### MEMORANDUM DECISION AND ORDER SUSTAINING THE THIRTY-SECOND OMNIBUS OBJECTION TO PROOF OF CLAIMS (NO BASIS CONSUMER CREDITOR LITIGATION CLAIMS) AGAINST <u>DARRYL KEITH BROWDER</u>

**A P P E A R A N C E S :**

WEIL, GOTSHAL & MANGES, LLP
*Attorneys for Debtor*
767 Fifth Avenue
New York, New York 10153
<u>By:</u>    Richard Slack, Esq.
        Sunny Singh, Esq.

Mr. Darryl Keith Browder
*Appearing Pro Se*
1925 10th Street
Des Moines, IA 50314

---

[1]    On September 26, 2019, the Court confirmed the Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors. *See* Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors [ECF No. 1326] ("Plan"); Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors [ECF No. 1404] (the "Confirmation Order"). The Plan created the Wind Down Estates of Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and its debtor affiliates (excluding Reorganized RMS) (collectively, the "Wind Down Estates"). The Wind Down Estates, along with the last four digits of their federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034. References to "ECF No. __" are to documents filed in the electronic docket in these jointly administered cases under Case No. 19-10412 (the "Chapter 11 Cases").

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## Introduction

Under the Debtors' Plan, the Plan Administrator for the Wind Down Estates,[2] the GUC

Recovery Trustee, and the Consumer Representative have the exclusive authority to object to

claims filed against the Debtors.  In accordance with the Court's Claims Procedures Order,[3] the

Plan Administrator and the Consumer Representative have filed Omnibus Objections to Proofs

of Claim that extend to hundreds of claims. Under the Claims Procedures Order, if a creditor

challenges a claim objection, it is deemed to hold a "Contested Claim" and the Court will

conduct either a "Sufficiency Hearing" or a "Merits Hearing" to resolve the objection.  Daryl

Keith Browder (the "Claimant" or "Browder") filed twelve proofs of claims against Ditech

Financial LLC ("Ditech Financial") in these Chapter 11 Cases, one of which was duplicative and

has been withdrawn (collectively the "Browder Claims").[4]  Those claims arise out of a lawsuit

filed by Browder against Ditech Financial.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Thirty-Second Omnibus Claims Objection to Proofs of Claim (No Basis Consumer Creditor Litigation Claims) [ECF No. 1764] or the Plan, as applicable.

[3]    *See* Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures. [ECF No. 1632] (the "Claims Procedures Order").

[4]    The following are the filing numbers and dates for the Claimant's Proofs of Claim: 785 (filed April 01, 2019); 2287 (filed June 10, 2019); 2496 (filed October 17, 2019); 2498 (filed October 17, 2019); 2514 (filed October 17, 2019); 2516 (filed October 18, 2019); 2582 (filed November 01, 2019); 2588 (filed November 04, 2019); 2665 (filed November 08, 2019); 2686 (filed November 11, 2019); 2695 (filed November 08, 2019); 2802 (filed November 11, 2019). The Claimant filed some of the claims against Ditech Holding Corporation. However, the documentation submitted in support of those claims identifies Ditech Financial as the relevant Debtor. The Court treats those claims as asserted against Ditech Financial, not Ditech Holing Corporation.  Following discussions with the Plan Administrator, the Claimant withdrew Proof of Claim No. 2287. *See* Notice of Withdrawal [ECF No. 1777].

The Plan Administrator and Consumer Representative filed a joint objection to the Browder Claims (the "Objection")[5] and seek to expunge those claims as "No Basis Consumer Creditor Litigation Claims."  In considering the merits of the Objection, the Court conducted a Sufficiency Hearing on those claims.  Pursuant to the Claims Procedures Order, the legal standard of review that the Court applies at a Sufficiency Hearing is equivalent to that which the Court applies under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[6]

For the reasons stated herein, the Court finds that accepting all factual allegations asserted by the pro se Claimant in support of his claims as true, drawing all reasonable inferences in the Claimant's favor, and interpreting the Browder Claims and the Claimant's responses to the Objection to raise the strongest arguments that they suggest, the Browder Claims fail to state plausible claims against the Wind Down Estates or the Consumer Creditor Reserve, as a matter of law. For that reason, the Court sustains the Objection and expunges the Browder Claims.

## Jurisdiction

A party invoking this Court's post-confirmation jurisdiction must demonstrate both (i) that the matter has a "close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan or incorporated litigation trust agreement," *Penthouse Media Group v. Guccione (In re Gen. Media, Inc.),* 335 B.R. 66, 73 (Bankr.S.D.N.Y.2005) (quoting *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.),* 372 F.3d 154, 168-69 (3d Cir. 2004)); and (ii) that the plan provides for the retention of jurisdiction over the dispute. *Id.* (citing *Hosp. and Univ. Prop.*

---

[5]   *See* Thirty-Second Omnibus Claims Objection to Proofs of Claim (No Basis Consumer Creditor Litigation Claims) [ECF No. 1764].

[6]   Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") makes Rule 12 of the Federal Rules of Civil Procedure applicable herein.

*Damage Claimants v. Johns Manville Corp. (In re Johns–Manville Corp.)*, 7 F.3d 32, 34 (2d Cir.1993)). *See also Cohen v. CDR Creances S.A.S.* (*In re Euro-Am. Lodging Corp.*)*,* 549 F. App'x 52, 54 (2d Cir. 2014) ("A party may invoke the authority of the bankruptcy court to exercise post-confirmation jurisdiction only if the matter has a close nexus to the bankruptcy plan . . . and the plan provides for the retention of such jurisdiction . . . ") (internal citations omitted) (summary order); *Ace Am. Ins. Co. v. State of Mich. Workers' Comp. Ins. Agency* (*In re DPH Holdings Corp.*), 448 F. App'x 134, 137 (2d Cir. 2011) (summary order), *cert. denied*, 567 U.S. 935 (2012). *See also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (a bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders).

The Objection has a "close nexus" to the Plan because the Plan Administrator and the Consumer Representative seek to determine the validity of the Browder Claims, and section 7.1 of the Plan gives the Plan Administrator and Consumer Representative the right to do so.  *See* Plan, Art. VII, § 7.1.  Thus, it affects the execution or administration of the Plan.  Moreover, under the Plan the Court retained jurisdiction "to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim or Class of Claims." *Id.* Art. XI, § 11.1(d). Accordingly, the Court has subject matter jurisdiction over the Objection.

## Background

On February 11, 2019 (the "Commencement Date"), the Debtors commenced voluntary cases under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 22, 2019, the Court entered the Bar Date Order.[7]  That order fixed April 1, 2019 at 5:00 p.m. (prevailing Eastern Time) as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").  On March 27, 2019, the Court extended the General Bar Date to April 25, 2019 at 5:00 p.m. (prevailing Eastern Time) (the "Extended General Bar Date").[8]  On May 2, 2019, the Court extended the Extended General Bar Date solely for consumer borrowers to June 3, 2019 at 5:00 p.m. (prevailing Eastern Time).[9] The claims register is prepared and maintained by Epiq Corporate Restructuring, LLC.  It shows that approximately 7,800 proofs of claim (the claims therein, the "Claims") were filed in the Chapter 11 Cases. The Plan was confirmed by order dated September 26, 2019.  Pursuant to the Confirmation Order, the Court set the deadline for each person or entity asserting Administrative Expense Claims to file proofs of claim in the Chapter 11 Cases to thirty-five (35) days from the date of service of the notice of entry of the Confirmation Order. The Claimant timely filed the Browder Claims herein.

### Claim Objection Procedures

Under the Plan, the Plan Administrator, on behalf of each of the Wind Down Estates, has exclusive authority to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims; the GUC Recovery Trustee, on behalf of the GUC Recovery Trust, has the exclusive authority to object to all General Unsecured Claims; and the

---

[7]    *See* Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof. [ECF No. 90] (the "Bar Date Order").

[8]    *See* Order Extending General Bar Date [ECF No. 272].

[9]    *See* Order Further Extending General Bar Date For Filing Proofs of Claim for Consumer Borrowers *Nunc Pro Tunc* [ECF No. 496].

Consumer Representative has the exclusive authority to object to all Consumer Creditor Claims.

*See* Plan, Art. VII, § 7.1.  On November 19, 2019, the Bankruptcy Court entered the Claims

Procedures Order.  That order authorizes the Estate Representatives to object to Claims in

accordance with Claims Objection Procedures set forth therein. *See* Claims Procedures Order ¶

2.  Without limitation, the procedures authorize the Estate Representatives to file Omnibus

Objections to Claims seeking reduction, reclassification, or disallowance of Claims.  In support

of those objections, they are permitted to rely on the grounds set forth in Bankruptcy Rule

3007(d), as well as on one or more of the following grounds:

(1) The amount claimed contradicts the Debtor's books and records;
(2) The Claim seeks recovery of amounts for which the Debtors are not liable;
(3) The Claims are not entitled to the asserted status or priority;
(4) There is insufficient legal basis for the Claim;
(5) The Claims do not include sufficient documentation to ascertain the validity of such Claims;
(6) The Claims were or will be satisfied in the normal course of business;
(7) The Claims have been waived, withdrawn, or disallowed pursuant to an agreement with the Debtors or an order of this Court; and
(8) The Claims are objectionable under section 502(e)(1) of the Bankruptcy Code.

*See id.* ¶ 2(i)(a)-(h).

Under the Claims Procedures Order, a properly filed and served response to an Omnibus

Objection gives rise to a Contested Claim.  The Estate Representative is required to schedule a

contested hearing (each a "Claim Hearing") for each such claim. *Id.* ¶ 3(iv).  The Claim Hearing

is to be scheduled as either a "Sufficiency Hearing" or a "Merits Hearing." A Sufficiency

Hearing is a non-evidentiary hearing to address whether the Contested Claim has stated a claim

for relief that can be allowed against the Debtors. *Id.* ¶ 3(iv)(a).  The legal standard of review

that the Court will apply at a Sufficiency Hearing is equivalent to the standard that the Court

applies to motions under Rule 12(b)(6). *Id.*  A Merits Hearing is an evidentiary hearing on the

merits of the Contested Claims. *Id.* ¶ 3(iv)(b).

**Browder Claims**

The Browder Claims aggregate approximately $18,373,400. The Claimant characterizes

those claims as (i) secured in the approximate aggregate amount of $12,105,087, (ii)

administrative in the approximate aggregate amount of $3,107,787, (iii) entitled to priority in the

aggregate amount of $1,051,437, and (iv) unsecured in an approximate aggregate amount of

$2,109,087. In support of those claims, the Claimant has submitted more than five hundred pages

of documents.

In support of their Objection, the Plan Administrator and Consumer Representative

assert, as follows:

> The Plan Administrator, with the assistance of its professionals, and the Consumer
> Representative have examined each [Browder Claim], documentation provided
> with respect to each [Browder Claim] and the Debtors' respective books and
> records, and have determined in each case that (i) there is no record of the [Browder
> Claim] on the docket of another court; or (ii) another court has issued a ruling
> denying the relief sought in the [Browder Claims], and the claimant has exhausted
> opportunities to appeal. The Plan Administrator and the Consumer Representative
> believe the [Browder Claims] are not merely unsecured Consumer Creditor
> Litigation Claims that have been erroneously asserted in part as an administrative
> expense, priority, and/or secured claim, but rather are Claims that have no basis at
> all in their entirety based on the Debtors' books and records, the supporting
> documentation submitted by [Browder], if any, and review of the relevant court
> dockets and records.

Objection ¶ 13. In contesting the Objection, the Claimant filed two responses–the "First

Response" and the "Second Response"– and a sur-reply (the "Sur-Reply," collectively with the

First Response and Second Response, the "Responses").[10] The Plan Administrator and Consumer

---

[10]    *See* Notice of Creditor as a [sic] Darryl Keith Browder, Objection to the Defendants as [sic] Ditech
Holding Corporation, and the Wind Down Estate, Notice of Hearing on Thirty-Second Omnibus Claims
Objection to Proffs [sic] of Claim (No Basis Consumer Creditor Litigation Claims) [ECF No. 1893] (the
"First Response");  Motion for Allowance of Claims Under § 503(b)(9)[ECF No. 2034] (the "Second
Response"); and Consumer Creditor, as Darryl Keith Browder, Objection to the Debtors Joint Reply of
Plan Administrator and Consumer Representative in Support of Thirty-Second Omnibus Objection with

Representative filed a joint reply (the "Reply") in support of the Objection.[11] The Court

conducted a Sufficiency Hearing on the Browder Claims.

## **Applicable Legal Standards**

Under section 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed under

section 501 of this title, is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. §

502(a).  *See also* Fed. R. Bankr. P. 3001(f) ("A proof of claim executed and filed in accordance

with these rules shall constitute prima facie evidence of the validity and amount of the claim.").

Section 502(b) sets forth the grounds for disallowing a properly filed proof of claim.  *See* 11

U.S.C. § 502(b); *see also Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.,*

549 U.S. 443, 449 (2007) ("But even where a party in interest objects [to a claim], the court

'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions

enumerated in § 502(b)"); *HSBC Bank USA, N.A. v. Calpine Corp.*, No. 07 Civ. 3088 (GBD),

2010 WL 3835200 at *5 (S.D.N.Y. Sept. 15, 2010) ("All claims are allowed unless specifically

proscribed by one of the nine exceptions listed in § 502(b).") (citing *Travelers*, 549 U.S. at 449).

As relevant, section 502(b) states that if a party in interest objects to a claim, the Court:

> [A]fter notice and a hearing, shall determine the amount of such claim in lawful
> currency of the United States as of the date of the filing of the petition, and shall
> allow such claim in such amount, except to the extent that— (1) such claim is
> unenforceable against the debtor and property of the debtor, under any agreement
> or applicable law for a reason other than because such claim is contingent or
> unmatured[.]

---

Respect to Claims of Darryl Keith Browder Nos. 785, 2514, 2516, 2496, 2498, 2582, 2665, 2686, 2695, and 2802)) [ECF No. 2082] (the "Sur-Reply").

[11]    *See* Joint Reply of Plan Administrator and Consumer Representative in Support of Thirty-Second Omnibus Objection with Respect to Claims of Darryl Keith Browder (Claim Nos. 785, 2514, 2516, 2496, 2498, 2582, 2588, 2665, 2686, 2695, and 2802) [ECF No. 2030].

11 U.S.C. § 502(b)(1).  Whether a claim is allowable "generally is determined by applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).  In the face of a properly filed claim objection, the claimant must prove by a preponderance of  the evidence that under applicable law the claim should be allowed.  *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000) ("Once an objectant offers sufficient evidence to overcome the prima facie validity of the claim, the claimant is required to meet the usual burden of proof to establish the validity of the claim.").  "[T]he ultimate burden of persuasion is always on the claimant." *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991).

Bankruptcy Rule 7008 incorporates Rule 8 of the Federal Rule of Civil Procedure.  As relevant, Rule 8 states that a request for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  "In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." *In re DJK Residential LLC,* 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009).  *See also In re 20/20 Sport, Inc.,* 200 B.R. 972, 978 (Bankr. S.D.N.Y. 1996) ("In bankruptcy cases, courts have traditionally analogized a creditor's claim to a civil complaint [and] a trustee's objection to an answer...."). Accordingly, claims drafted by pro se claimants "are to be construed liberally, but they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the plaintiff is complaining about and . . .  whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (quoting *Iwachiw v. New York City Bd. of Elections,* 126 Fed. Appx. 27, 29 (2d Cir. 2005)).

Pursuant to the Claims Procedures Order, "the legal standard of review that will be applied by the Court at a Sufficiency Hearing will be equivalent to the standard applied by the Court [pursuant to Bankruptcy Rule 7012] upon a motion to dismiss for failure to state a claim upon which relief can be granted." *See* Claims Procedures Order, ¶ 3(iv)(a). Under Rule 12(b)(6), a claim may be dismissed due to a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under that rule, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 323-24 (2d Cir. 2011), *cert. denied*, 565 U.S. 1241 (2012). In assessing the sufficiency of the allegations, the court accepts the claim's factual allegations as true and must draw reasonable inferences in favor of the plaintiff. *Tellabs Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 323 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ideal Steel Supply Corp.*, 652 F.3d at 324 (quoting *Ashcroft v. Iqbal*, 556 U.S. at 678). As such, courts "are not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555. In assessing the merits of the Rule 12(b)(6) motion, the Court "must liberally construe all claims . . . and draw all reasonable inferences in favor of the plaintiff." *See In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 252 (S.D.N.Y. 2011) (citing *Cargo Partner AG v. Albatrans, Inc.*, 352 F.2d 41, 44 (2d Cir. 2003)). In particular, the Court must construe a pro se complaint liberally. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008); *Boykin v. KeyCorp,* 521 F.3d 202, 213–14, 216 (2d Cir.2008). Moreover, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine

9

when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. at 322.

### Facts[12]

On May 17, 2007, the Claimant obtained a residential mortgage loan from Countrywide Home Loans totaling $72,900 secured by a mortgage on real property located at 1925 10th Street, Des Moines, Iowa (the "Property"). *See* Claim No. 2582 at 25-30. In May 2011, the servicing of Claimant's mortgage loan was transferred to Ditech Financial. Claimant alleges that his then fiancé (the "Payor") who resides in the Republic of Ghana, agreed to make a series of scheduled payments to his mortgage account between April and May 2017. *See* Sur-Reply at 4-5. Those payments coincided with the Claimant's scheduled mortgage payments. Each scheduled mortgage payment totaled approximately $1,060. *See* Sur-Reply at 48; Claim No. 2516 at 68. The Payor agreed to make payments to the Claimant's account well in excess of that amount. On April 27, 2017, the Payor authorized a payment totaling $9,940.86 on account of the mortgage (the "First Mortgage Payment"). *See* Sur-Reply at 50 and Claim No. 2516 at 68. After the payment was posted, there was an overage in Claimant's account totaling $7,918.04 with respect to the First Mortgage Payment. The Claimant requested Ditech Financial to transfer those funds to an account belonging to his son (the "Overage Transfer"). Claim No. 2516 at 68. Ditech Financial complied with that request. *Id.* On May 4, 2017, the Payor authorized a payment totaling $9,970.43 on account of Claimant's mortgage (the "Second Mortgage Payment"). Sur-Reply at 50. After that payment was posted, there was an overage in the account

---

[12]    Subject to the standards applicable to Rule 12(b)(6) motions, the Court principally relies on the Browder Claims and the Responses as the source of facts for this Memorandum Decision and Order.

totaling $7,918.04 with respect to the First Mortgage Payment.  The Claimant requested that

such overage be redirected to his son's account. Ditech Financial refused the request due to

concerns over unauthorized account activity. *See* Reply ¶ 2.  Ditech Financial advised the

Claimant that if there were excess funds in the mortgage account after the Payor's transfer, it

would send those funds back to the Payor's account.  Claim No. 2516 at 69. After Ditech

returned the overage from the Second Mortgage Payment to the Payor, she cancelled the

scheduled payments, including a payment of $9,970.43 on May 16, 2017, that Ditech Financial

returned to the Payor's account as an unauthorized transfer.  Reply ¶ 2.

By letter dated August 1, 2017, Ditech Financial advised the Claimant that as of January

1, 2017, his account had been in arrears by at least one month, and that as of the date of the

correspondence he had a late fee balance of $34.16.  *See* Sur-Reply at 50.  Further, as it related to

the payments from the Payor, the letter advised the Claimant:

1. $9,940.86 payment scheduled via online payment account on April 27, 2017
   was returned to Payor on May 26, 2017 as not authorized by the customer;

2. $9,970.43 payment scheduled via online payment account on May 4, 2017 was
   cancelled on May 4, 2017; and

3. $9,970.43 payment scheduled via online payment account on May 10, 2017 was
   returned to Payor on May 16, 2017.

*Id*.  The letter further advised the Claimant that it had processed the Overage Transfer in error

because the sum of $7,918.04 had been returned to the Payor's account. *Id*.  The Claimant

contends that Ditech Financial did not return any of the funds to the Payor's account and that

Ditech Financial debited his mortgage account in the amount of the Overage Transfer and

assessed late fees due to the resulting debit balance.  *See* Sur-Reply at 4-5.

On January 26, 2018, the Claimant sued Ditech Financial in Iowa state court (the "Iowa Action") for damages occasioned by Ditech Financial's alleged negligence, harassment, discrimination, racial profiling, slander, defamation, violations of the Fourth, Fifth and Fourteenth Amendments, predatory lending, fraud, violation of "state and federal laws" and breach of contract. *See* Claim No. 785 at 63-85.  Ditech removed the Iowa Action to the United States District Court for the Southern District of Iowa, Central Division, Case No. 4:18-cv-00048-JAJ (the "Iowa Federal Court").  Reply ¶ 3.  By order dated October 2, 2018 (the "Iowa Order"), the Iowa Federal Court dismissed all of the claims alleged in support of the Iowa Action, except the Claimant's claim for breach of contract.  Claim No. 785 at 83-85. [13]  In that order the court also denied various motions filed by the Claimant, including his motion for lost wages, motion to strike, motion to transfer the case to state court, and motion to file documents. *Id.*

The Claimant objected to confirmation of the Plan. [14]  Without limitation, in his Second Plan Objection, the Claimant challenged the injunction contained in the Plan (the "Plan Injunction"). In his objection, and in substance, Browder acknowledged that if approved, the Plan Injunction would enjoin him from continuing to prosecute his breach of contract claim in the Iowa Action in favor of the claims resolution process under the Plan. *See* Second Plan Objection at 4.  The Court confirmed the Plan, including, without limitation, the Plan Injunction and a settlement incorporated in the Plan with the Official Committee of Consumer Creditors by

---

[13]   The Iowa Federal Court did not consider dismissal of the breach of contract claim because the underlying motion did not seek dismissal of that claim.  *See* Claim No. 785 at 83-85.

[14]   *See* Motion Under Rule 3018(a) and Response and Objections to Ditech Holding Corporation, Plan and Sale Transaction or an Asset Sale Transaction, and Voting an Ballot [sic] [ECF No. 738] (the "First Plan Objection"); and Declaration of Darryl Keith Browder [ECF No. 1479] (the "Second Plan Objection" and the "First Plan Objection" are jointly referred to as "Plan Objections").

which $10,000,000 has been contributed to a Consumer Creditor Reserve for the benefit of

Allowed Consumer Creditor Claims. *See* Plan, Art. I, §§ 1.38, 1.39. On September 26, 2019, the

Court entered the Confirmation Order. On September 30, 2019, the Plan became effective.[15]

Thereafter, the Claimant and Ditech Financial executed a stipulation in the Iowa Action (the

"Iowa Stipulation") dismissing the Iowa Action, with prejudice, as barred by the Plan Injunction.

*See* Sur-Reply, Ex. A.[16]

**Discussion**

In the Responses, and in support of his claims, the Claimant purports to demonstrate that

he can assert facts supporting: (i) damage claims (including punitive damages) based on Ditech

Financial's alleged breach of contract, fraud, and disclosure of trade secrets.[17] He also raises a

---

[15]    Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims [ECF No. 1449].

[16]    In part, the Iowa Stipulation reads, as follows:

> On September 26, 2019, the Bankruptcy Court entered the *Order Confirming Third Amended Joint Chapter 11 Plan bf Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) approving the terms of the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1326) (the "Plan").

> The Plan contains a permanent injunction (the "Injunction") that specifically prohibits parties from prosecuting against Ditech any claim for monetary recovery (including attorney's fees) on account of any claim arising prior to September 30, 2019 (the Plan Effective Date and closing date for the transactions under the Plan).

> Because Plaintiff's claims in this matter have been enjoined by the Injunction, the parties now desire to enter this Joint Stipulation for Dismissal with Prejudice and hereby stipulate to the dismissal, with prejudice, of this action in its entirety, with the Parties to bear their own attorneys' fees and costs.

Iowa Stipulation ¶¶ 2-4.

[17]    *See* First Response at 5-6; Second Response at 1,3 and 4; Sur-Reply at ¶¶ 4-11.

number of evidentiary matters that he suggests support his damage claims.[18]  In addition to

attempting to buttress his claims, in the Responses, the Claimant seeks to obtain relief from the

Confirmation Order and Iowa Stipulation, and to compel the Plan Administrator and Consumer

Trustee to settle his claims in the case for a lump sum payment of $999,000.[19]  As discussed

below, construing the facts and law in a light most favorable to the pro se Claimant, the

Responses do not state plausible claims for relief against the Wind Down Estates or the

Consumer Creditor Reserve and, as such, do not salvage the Browder Claims.

   The Claimant has not alleged facts that support any aspect of his damage claims against

Ditech Financial.  Under Iowa law, the elements of a claim for breach of contract are: "(1) the

existence of a contract, (2) the terms and conditions of the contract, (3) that [plaintiff] has

performed all the terms and conditions required under the contract, (4) the defendant's breach of

the contract in some particular way, and (5) that plaintiff has suffered damages as a result of

defendant's breach." *Royal Indem. Co. v. Factory Mut. Ins. Co.,* 786 N.W.2d 839, 846 (Iowa

2010) (citing *Molo Oil Co. v. River City Ford Truck Sales, Inc.,* 578 N.W.2d 222, 224 (Iowa

1998)).  The Claimant complains that Ditech Financial improperly returned funds to the Payor[20]

and erred when it reversed the Overage Payment to his son's account. Claim No. 785 at 22.

Ditech Financial was the subservicer of the Claimant's loan and took the actions underlying the

Claimant's breach of contract claim in that capacity.  The Claimant has failed to plead the

---

[18]    *See* First Response at 1.

[19]    *See* First Response at 5-6; Second Response at 1,3; Sur-Reply at ¶¶ 4-5.

[20]    He complains that Ditech Financial improperly returned the following payments to the Payor: (1) a
$517.08 payment into the mortgage account received on March 3, 2017; (2) a $9,940.86 scheduled
payment into the mortgage account on April 27, 2017; (3) a $9,970.43 scheduled payment into the
mortgage account on May 4, 2017; and (4) a $9,970.43 scheduled payment into the mortgage account on
May 10, 2017. *See* Claim No. 2496 at 71.

existence of a specific contract between himself and Ditech Financial, as loan subservicer.

Moreover, Claimant has not identified any specific term or condition breached by Ditech

Financial, and Claimant has not alleged his own performance under a contract with Ditech

Financial.  For those reasons, the Court finds that the Claimant has failed to state a claim for

breach of contract against Ditech Financial.  *See Horras v. Am. Capital Strategies, Ltd.*, 729 F.3d

798, 804 (8th Cir. 2013) (affirming the dismissal of Count II for breach of contract under Iowa

law and noting that Horras pleads no facts suggesting that the alleged contract between ACS and

HHC manifested an intent to benefit him); *Williams v. Sec. Nat. Bank of Sioux City, IA.*, 293 F.

Supp. 2d 958, 970–71 (N.D. Iowa 2003) (holding that the "absence of any contract language

supporting the alleged terms of the contracts authorizing SNB not to diversify the assets of the

DPW Trust and the impossibility of breaching non-existent terms of the contracts in this case

stand as 'insuperable bar[s] to relief' on SNB's breach-of-contract claims, which warrant

dismissal of the breach-of-contract claim for failure to state a claim upon which relief can be

granted."); *Spears v. Com Link, Inc.,* 837 N.W.2d 680 (Iowa Ct. App. 2013) (in relevant part,

finding no error in the district court's grant of summary judgment on the breach-of-contract

claim and noting that some of the entities Spears alleges breached the share purchase agreement

were not yet in existence at the time Spears executed the agreement and those entities were not

parties to the contract.).[21]

---

[21]    The Claimant seeks, at a minimum, $999,000 in damages for the breach of contract claim.  *See*
Second Response, p. 1.  The Claimant also seeks "double damages and attorney fees at the maximum
legal rate[.]" First Response at 5. Lastly, the Claimant seeks punitive damages. *See* Second Response, p.
3.  The Claimant has failed to demonstrate that he is entitle to any such relief.  First, the Claimant does
not allege grounds in support of his request for attorney fees, and, in any event, the Claimant cannot get
attorney's fees because he was not represented by counsel in the Iowa Action.  Second, he cannot support
his $999,000 breach of contract claim because his actual economic loss (i.e., the alleged loss from the
canceled payments) totaled only approximately $40,000.  The Claimant also seeks punitive damages
totaling $25,000,000.  First Response at 5.  As to punitive damages, the Supreme Court has stated that
"few awards exceeding a single-digit ratio between punitive and compensatory damages will satisfy due

Nor has the Claimant alleged facts that could support a fraud claim against Ditech

Financial.  As a matter of law, the Claimant cannot state a fraud claim based on the allegations

underlying the Iowa Action because the Iowa Federal Court dismissed Claimant's fraud claims

on the merits.  Application of the principles of *res judicata* bars the Claimant from relitigating

those matters herein.  *See In re Brazelton Cedar Rapids Grp. LC,* 264 B.R. 195 (Bankr. N.D.

Iowa 2001) (holding that *res judicata* applied to preclude debtor from attempting to assert

defenses to judgment in federal court via objections to creditor's proof of claim challenging

existence of underlying obligation); *In re Scharpf,* No. BR 09-00246, 2012 WL 589649, at *3

(Bankr. N.D. Iowa Feb. 22, 2012) (holding in relevant part that the "law of claim preclusion

prevents relitigation in this forum of the dischargeability of Mr. Thola's claim.").  Moreover,

none of the Claimant's contentions in furtherance of the Browder Claims or in the Responses

substantiates his assertion that Ditech Financial defrauded him.  The elements of a claim for

common law fraud are: (1) a misrepresentation, (2) fraudulent intent, or scienter, (3) intent to

induce reliance, (4) justifiable reliance and (5) damage.  *See McLeodUSA Telecommunications*

*Servs., Inc. v. Qwest Corp.*, 469 F. Supp. 2d 677, 707 (N.D. Iowa 2007); *see also McGough v.*

*Gabus*, 526 N.W.2d 328, 331 (Iowa 1995).  Common law fraud claims are subject to the Rule

9(b) pleading requirements.  *De Wit v. Firstar Corp.*, 879 F. Supp. 947, 989 (N.D. Iowa 1995).

To satisfy those requirements, a claimant "must state with particularity the circumstances

constituting fraud[.]"  Fed. R. Civ. P. 9(b).  The Court understands the Claimant to contend that

---

process" except where "a particularly egregious act has resulted in only a small amount of  economic
damages[.]" *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 410 (2003).  Here, the Claimant is
seeking punitive damages in an amount roughly twenty-five (25) times larger than the asserted
compensatory damages.  Moreover, the facts alleged in support of the Browder Claims do not
demonstrated that Ditech Financial's activity in reversing the payments was "egregious."  Finally, under
Iowa law, ordinary breach of contract claims do not warrant punitive damages.  *See Seastrom v. Farm*
*Bureau Life Ins. Co.*, 601 N.W. 2d 339, 347 (Iowa 1999).

Ditech Financial, its counsel, and AlixPartners LLP ("AlixPartners") committed fraud and perjury in filing the "First Nelson Declaration"[22] in the Chapter 11 Cases because in it, Mr. Nelson failed to acknowledge the pending Iowa Action. *See* First Response at 4-6.  Claimant alleges that others furthered the fraud by filing other documents in the Chapter 11 Cases which likewise did not acknowledge the Iowa Action.[23] However, Claimant's fraud claim fails as a matter of law. First, none of these declarations relate to Contested Claims, generally, or to the Browder Claims or Mr. Browder, in particular. Rather, these declarations were filed in support of Plan confirmation to provide pertinent information about the Chapter 11 Cases[24] and to file of record documents used by the Debtors at the confirmation hearing.[25]  In particular, the Claimant misconstrues the contents of the First Nelson Declaration.  In his declaration, Mr. Nelson demonstrated how consumer claims were categorized under the Debtor's proposed plan and how

---

[22]    *See* Declaration of James Nelson of AlixPartners LLP, Debtors' Financial Advisor, in Support of Global Settlement and Confirmation of the Amended Plan [ECF No. 1035].

[23]    Specifically, in the Responses the Claimant alleges fraud on the Court in the filing of several documents apart from the First Nelson Declaration including, the Declaration of Gerald A. Lombardo, Debtors' Chief Financial Officer, in Support of the Sale Transactions and Confirmation of the Amended Plan [ECF No. 1033]; the Declaration of Sunny Singh in Support of the Sale Transactions and Confirmation of the Amended Plan [ECF No. 1036]; the Declaration of Reid Snellenbarger of Houlihan Lokey Capital, Inc., Debtors' Investment Banker, in Support of the Sale Transactions and Confirmation of the Third Amended Plan [ECF No. 1332]; the Second Supplemental and Restated Declaration of Jane Sullivan of Epiq Corporate Restructuring, LLC Regarding Voting and Tabulation of Ballots Cast on the Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors [ECF No. 1333]. *See* First Response at 4-6; Sur-Reply ¶¶ 5-11.

[24]    *See* Declaration of Gerald A. Lombardo, Debtors' Chief Financial Officer, in Support of the Sale Transactions and Confirmation of the Amended Plan [ECF No. 1033]; Declaration of Reid Snellenbarger of Houlihan Lokey Capital, Inc., Debtors' Investment Banker, in Support of the Sale Transactions and Confirmation of the Third Amended Plan [ECF No. 1332].

[25]    *See* Declaration of Sunny Singh in Support of the Sale Transactions and Confirmation of the Amended Plan [ECF No. 1036, Ex. A] (attaching Private Investor Servicing Agreement); Second Supplemental and Restated Declaration of Jane Sullivan of Epiq Corporate Restructuring, LLC Regarding Voting and Tabulation of Ballots Cast on the Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors [ECF No. 1333, Exs. A-B] (including ballot tabulation summary).

AlixPartners calculated the value of claims on an aggregate level. *See* First Nelson Declaration at ¶¶ 8-10.[26]  In his declaration, Mr. Nelson made no representation about specific claims or creditor accounts.  Nor did any other declarant.  None of declarations that the Claimant relies on to establish his fraud claim support that claim.  The Claimant fails to allege facts that support any element of a fraud claim.  The Claimant plainly has failed to state a fraud claim against Ditech Financial.  The Claimant also requests sanctions against AlixPartners, the Plan Administrator's counsel, and the Consumer Representative "for fraud […] and perjury at the maximum legal rate" in connection with the representations made in the First Nelson Declaration.  First Response at 6.  The request for sanctions is procedurally improper. *See* Fed. R. Civ. P. 11 ("A motion for sanctions must be made separately from any other motion.").  Moreover, and in any event, the Claimant has not stated a claim for such relief.

Finally,  the Claimant has not stated a damage claim predicated on the misappropriation of trade secrets.  A "trade secret" consists of

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper

---

[26]    In resolving the Objection, the Court can consider the contents of all of the declarations cited herein, because the Claimant relies on them in support of the Browder Claims. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (stating "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *State Universities Ret. Sys. of Illinois v. Astrazeneca PLC*, 334 F. App'x 404, 406 (2d Cir. 2009) (noting that on a 12(b)(6) motion to dismiss, "a court may consider documents when 'there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim'").

means by, another person who can obtain economic value from the disclosure or use of the information. . . .

18 U.S.C. § 1839(3).

For these purposes, the term "misappropriation" means the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or disclosure or use of a trade secret of another without express or implied consent. 18 U.S.C. § 1839(5). The Court construes the Browder Claims and Responses to assert that the number of the Claimant's loan account serviced by Ditech Financial is a trade secret that Ditech misappropriated. *See* Second Response at 3. The Claimant cannot plausibly state a claim for misappropriation of a trade secret because the Claimant did not generate the account number and cannot allege facts demonstrating that he derived economic value from the loan account number. *See, e.g., Elsevier Inc. v. Doctor Evidence, LLC*, No. 17-CV-5540 (KBF), 2018 WL 557906, at *4 (S.D.N.Y. Jan. 23, 2018) ("[T]o survive a motion to dismiss, a party alleging that it owns a trade secret must put forth specific allegations as to the information owned and its value.") Moreover, the Claimant's loan number is not a secret. The account number is known to the servicer, and all others who generated the loan or serviced the loan. *See Art & Cook, Inc. v. Haber,* 416 F. Supp. 3d 191, 196 (E.D.N.Y. 2017) (noting that where lists are little more than a compilation of publicly available information: emails and phone numbers for buyers at well-known retailers, that list is not a trade secret); *TNS Media Research, LLC v. TRA Glob., Inc.*, 977 F. Supp. 2d 281, 315 (S.D.N.Y. 2013) (finding that there was no information to support misappropriation of trade secrets claim. Specifically, the court determined that "information consisting simply of business possibilities or goals is not a trade secret" likewise "[p]rice lists, product samples, and marketing plans are all items that are not, as a matter of law, protected

as trade secrets."). The Claimant cannot plausibly allege a claim against Ditech Financial for misappropriation of trade secrets.

In support of the Browder Claims, the Claimant challenges the Objection on the basis of "hearsay, leading, […] irrelevance, speculation, […] and badgering the consumer creditor[.]" First Response at 1. However, he misplaces his reliance on those rules because they do not govern the allowance or disallowance of the Browder Claims, and are not the source of potential damage claims against Ditech Financial. Some of the rules that the Claimant cites apply to the mode of examining a witness. *See* Fed. R. Evid. 611(c) (governing the use of leading questions); *Alford v. United States*, 282 U.S. 687, 694 (1931) (finding that a trial judge should protect the witness from questions which "go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate"). Others govern the admissibility of evidence. *See, e.g.,* Fed. R. Evid. 802 ("Hearsay is not admissible…"); Fed. R. Evid. 402 ("Irrelevant evidence is not admissible…"); Fed. R. Evid. 602 (governing speculation and the need for personal knowledge in admissible testimony). Those rules are not relevant to the resolution of the Objection because, as noted, principles applicable to Rule 12(b)(6) motions govern the conduct of the Sufficiency Hearing. Neither the Plan Administrator nor the Consumer Representative sought to admit any evidence at the Sufficiency Hearing, or in support of the Objection. They based the Objection on the Browder Claims, as filed. Claimant misplaces his reliance on the Rules of Evidence. They provide no support for the validity of the Browder Claims.

The Claimant also seeks to revisit provisions of the Plan and to vacate the Iowa Stipulation. As to the former, he contends that $5,000,000 is an insufficient amount with which to fund the Consumer Creditor Reserve established under the Plan and requests that the Court increase the size of the Consumer Creditor Recovery Cash Pool to $25,000,000. *See* First

Response at 2.  The Claimant misstates the amount of the Consumer Creditor Reserve.  As previously noted, under the Plan, the Consumer Creditor Reserve is funded with a Consumer Creditor Recovery Cash Pool composed of $10,000,000.  *See* Plan, Art. I, §§ 1.38, 1.39.  In any case, the Claimant's objection to the amount in the Consumer Creditor Recovery Cash Pool is an untimely objection to the confirmation of the Plan, which is not a proper objection to the reconciliation of his claims.

The Plan Injunction bars the holders of claims that arose prior to the Plan's Effective Date from "commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind" against or affecting the Debtor.  *See* Plan, Art. X, § 10.5.  The Claimant does not deny that his breach of contract claim in the Iowa Action falls squarely within the scope of the Plan Injunction, and it plainly does.  Nonetheless, he asserts that the injunction should not bar his continued prosecution of that claim in the Iowa Federal Court, because the Consumer Representative and Ditech Financial's local counsel tricked him into executing the Iowa Stipulation and agreeing to dismiss that claim.  Second Response at 3. In substance, he says that local counsel advised him that he could not pursue his contract claim against Ditech Financial in the Iowa Federal Court due to the Plan Injunction, but despite his request that counsel provide him with a copy of the order, he had not received one as of the date of the Sufficiency Hearing.  *Id.*  Assuming the truth of those assertions, the Claimant has not demonstrated grounds for excepting the contract claim from the scope of the Plan Injunction. The Claimant had notice of the Plan and confirmation hearing.  In his Plan Objections, the Claimant challenged Ditech Financial's right, under the Plan, to limit the Claimant from prosecuting his claims against it.  *See* First Plan Objection at 2; Second Plan Objection at 4.  The

Court overruled those objections in confirming the Plan.[27]    The Claimant is bound by the

Confirmation Order.  That Debtors' local counsel allegedly failed to provide a copy of the order

to Claimant when they executed the Iowa Stipulation does not diminish, in any way, the force

and effect of the stipulation and Plan Injunction.

Finally, the Claimant seeks to compel the Plan Administrator and Consumer

Representative to settle his claims by making a lump sum payment to him of $999,000. Second

Response at 1. As a general matter, settlements or compromises are favored in bankruptcy cases

and are encouraged. *See In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 226

(Bankr.S.D.N.Y.2007).  However, a court does not have the authority to require parties enter into

a settlement agreement.  *In re A.T. Reynolds & Sons, Inc.*, 424 B.R. 76, 88 (Bankr. S.D.N.Y.

2010), *rev'd on other grounds*, 452 B.R. 374 (S.D.N.Y. 2011).  Thus, as a matter of law,

Claimant's demand that the Court compel the Plan Administrator and Consumer Representative

to settle his claims fails to provide grounds for relief.

## Conclusion

Based on the foregoing, the Court finds that accepting all of the pro se Claimant's factual

allegations in support of the Browder Claims as true, drawing all reasonable inferences in the

Claimant's favor, and interpreting the Browder Claims and the Responses to the Objection to

raise the strongest arguments that they suggest, the Browder Claims fail to state plausible claims

---

[27]    *See* Confirmation Order ¶ 2 ("Any and all objections to the . . . Third Amended Plan . . . that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice . . . ").

against the Wind Down Estates or the Consumer Creditor Reserve, as a matter of law.  The Court

sustains the Objection and expunges the Browder Claims.

IT IS SO ORDERED.

Dated: New York, New York
         February 2, 2021

                                                    /s/ *James L. Garrity, Jr.*
                                                    Hon. James L. Garrity, Jr.
                                                    U.S. Bankruptcy Judge