| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT | NOT FOR PUBLICATION |
| SOUTHERN DISTRICT OF NEW YORK | |

------------------------------------------------------- x

In re:                                                      :      Case No. 19-10412 (JLG)
                                                           :
                                                           :      Chapter 11
Ditech Holding Corporation, *et al.*,                       :
                                                           :
                                                           :      (Jointly Administered)
                              Debtors.[1]   :

------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER SUSTAINING THE NINTH OMNIBUS OBJECTION (NO BASIS CONSUMER CREDITOR CLAIMS) WITH RESPECT TO CLAIM OF JAMES BEEKMAN

**A P P E A R A N C E S :**

WEIL, GOTSHAL & MANGES, LLP
*Attorneys for Debtor*
767 Fifth Avenue
New York, New York 10153
By:    Richard Slack, Esq.
         Sunny Singh, Esq.


Mr. James Beekman
*Appearing Pro Se*
427 9th Street
West Palm Beach, FL 33401

---

[1]    On September 26, 2019, the Court confirmed the Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors. *See* Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors [ECF No. 1326] ("Plan"); Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors [ECF No. 1404] (the "Confirmation Order"). The Plan created the Wind Down Estates of Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and its debtor affiliates (excluding Reorganized RMS) (collectively, the "Wind Down Estates"). The Wind Down Estates, along with the last four digits of their federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034. References to "ECF No. __" are to documents filed in the electronic docket in these jointly administered cases under Case No. 19-10412 (the "Chapter 11 Cases").

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction

Under the Debtors' Plan, the Plan Administrator for the Wind Down Estates,[2] the GUC

Recovery Trustee, and the Consumer Representative have the exclusive authority to object to

claims filed against the Debtors.  In accordance with the Court's Claims Procedures Order,[3] the

Plan Administrator and the Consumer Representative have filed Omnibus Objections to Proofs

of Claim that extend to hundreds of claims. Under the Claims Procedures Order, if a creditor

challenges a claim objection, it is deemed to hold a "Contested Claim" and the Court will

conduct either a "Sufficiency Hearing" or a "Merits Hearing" to resolve the objection

James Beekman (the "Claimant" or "Beekman") filed a proof of claim (Claim No. 24376)

(the "Initial Claim") against Ditech Financial LLC ("Ditech Financial") in these Chapter 11

Cases, which claim was superseded by Claim No. 24909 (the "Beekman Claim").[4]  That claim

arises out litigation pending against Beekman in the Florida state court.  Ditech Financial is not a

party to that litigation.  The Plan Administrator and Consumer Representative filed a joint

objection to the Beekman Claim (the "Objection")[5] and seek to expunge the claim as a  "No

Basis Consumer Creditor Claim."  In considering the merits of the Objection, the Court

conducted a Sufficiency Hearing on the Beekman Claim.  Pursuant to the Claims Procedures

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in
the Ninth Omnibus Objection to Proofs of Claim (No Basis Consumer Litigation Claims) [ECF No. 1741]
or the Plan, as applicable.

[3]    *See* Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures. [ECF No.
1632] (the "Claims Procedures Order").

[4]    The Court expunged the Initial Claim by order dated January 27, 2020.  *See* Order Granting Third
Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims) [ECF No. 1780].

[5]    Ninth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims) [ECF No. 1741].

Order, the legal standard of review that the Court applies at a Sufficiency Hearing is equivalent

to that which the Court applies under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[6]

For the reasons stated herein, the Court finds that accepting all factual allegations

asserted by the pro se Claimant in support of his claim as true, drawing all reasonable inferences

in the Claimant's favor, and interpreting the Beekman Claim and the Claimant's responses to the

Objection to raise the strongest arguments that they suggest, the Beekman Claim fails to state a

plausible claim against the Wind Down Estates or the Consumer Creditor Reserve, as a matter of

law. For that reason, the Court sustains the Objection and expunges the Beekman Claim.

### <u>Jurisdiction</u>

A party invoking this Court's post-confirmation jurisdiction must demonstrate both (i)

that the matter has a "close nexus to the bankruptcy plan or proceeding, as when a matter affects

the interpretation, implementation, consummation, execution, or administration of the confirmed

plan or incorporated litigation trust agreement," *Penthouse Media Group v. Guccione (In re Gen.*

*Media, Inc.),* 335 B.R. 66, 73 (Bankr.S.D.N.Y.2005) (quoting *Binder v. Price Waterhouse &*

*Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 168-69 (3d Cir. 2004)); and (ii) that the plan

provides for the retention of jurisdiction over the dispute. *Id.* (citing *Hosp. and Univ. Prop.*

*Damage Claimants v. Johns Manville Corp. (In re Johns–Manville Corp.*), 7 F.3d 32, 34 (2d

Cir.1993)).  *See also Cohen v. CDR Creances S.A.S. (In re Euro-Am. Lodging Corp.),* 549 F.

App'x 52, 54 (2d Cir. 2014) ("A party may invoke the authority of the bankruptcy court to

exercise post-confirmation jurisdiction only if the matter has a close nexus to the bankruptcy

plan . . . and the plan provides for the retention of such jurisdiction . . .") (internal citations

omitted) (summary order); *Ace Am. Ins. Co. v. State of Mich. Workers' Comp. Ins. Agency (In re*

---

[6]    Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") makes Rule 12 of the Federal Rules of Civil Procedure applicable herein.

*DPH Holdings Corp.*), 448 F. App'x 134, 137 (2d Cir. 2011) (summary order), *cert. denied*, 567

U.S. 935 (2012). *See also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (a

bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders).

The Objection has a "close nexus" to the Plan because the Plan Administrator and the

Consumer Representative seek to determine the validity of the Beekman Claim, and section 7.1

of the Plan gives the Plan Administrator and Consumer Representative the right to do so. *See*

Plan, Art. VII, § 7.1. Thus, it affects the execution or administration of the Plan. Moreover,

under the Plan the Court retained jurisdiction "to consider the allowance, classification, priority,

compromise, estimation, or payment of any Claim or Class of Claims." *Id.* Art. XI, § 11.1(d).

Accordingly, the Court has subject matter jurisdiction over the Objection.

## **Background**

On February 11, 2019, the Debtors commenced voluntary cases under Chapter 11 of title

11 of the United States Code (the "Bankruptcy Code"). The Chapter 11 Cases are being jointly

administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 22, 2019, the Court entered the Bar Date Order.[7] That order fixed April 1,

2019 at 5:00 p.m. (prevailing Eastern Time) as the deadline for each person or entity, not

including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a

proof of claim in the Chapter 11 Cases (the "General Bar Date"). On March 27, 2019, the Court

extended the General Bar Date to April 25, 2019 at 5:00 p.m. (prevailing Eastern Time) (the

"Extended General Bar Date").[8] On May 2, 2019, the Court extended the Extended General Bar

---

[7]    *See* Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof. [ECF No. 90] (the "Bar Date Order").

[8]    *See* Order Extending General Bar Date [ECF No. 272].

Date solely for consumer borrowers to June 3, 2019 at 5:00 p.m. (prevailing Eastern Time).[9] The

claims register is prepared and maintained by Epiq Corporate Restructuring, LLC.  It shows that

approximately 7,800 proofs of claim (the claims therein, the "Claims") were filed in the Chapter

11 Cases. The Plan was confirmed by order dated September 26, 2019.  Pursuant to the

Confirmation Order, the Court set the deadline for each person or entity asserting Administrative

Expense Claims to file proofs of claim in the Chapter 11 Cases to thirty-five (35) days from the

date of service of the notice of entry of the Confirmation Order. The Claimant timely filed the

Beekman Claim herein.

## Claim Objection Procedures

Under the Plan, the Plan Administrator, on behalf of each of the Wind Down Estates, has

exclusive authority to object to all Administrative Expense Claims, Priority Tax Claims, Priority

Non-Tax Claims, and Intercompany Claims; the GUC Recovery Trustee, on behalf of the GUC

Recovery Trust, has the exclusive authority to object to all General Unsecured Claims; and the

Consumer Representative has the exclusive authority to object to all Consumer Creditor Claims.

*See* Plan, Art. VII, § 7.1.  On November 19, 2019, the Bankruptcy Court entered the Claims

Procedures Order.  That order authorizes the Estate Representatives to object to Claims in

accordance with Claims Objection Procedures set forth therein. *See* Claims Procedures Order ¶

2.  Without limitation, the procedures authorize the Estate Representatives to file Omnibus

Objections to Claims seeking reduction, reclassification, or disallowance of Claims.  In support

of those objections, they are permitted to rely on the grounds set forth in Bankruptcy Rule

3007(d), as well as on one or more of the following grounds:

> (1) The amount claimed contradicts the Debtor's books and records;
> (2) The Claim seeks recovery of amounts for which the Debtors are not liable;

---

[9]    *See* Order Further Extending General Bar Date For Filing Proofs of Claim for Consumer Borrowers
*Nunc Pro Tunc* [ECF No. 496].

(3) The Claims are not entitled to the asserted status or priority;

(4) There is insufficient legal basis for the Claim;

(5) The Claims do not include sufficient documentation to ascertain the validity of such Claims;

(6) The Claims were or will be satisfied in the normal course of business;

(7) The Claims have been waived, withdrawn, or disallowed pursuant to an agreement with the Debtors or an order of this Court; and

(8) The Claims are objectionable under section 502(e)(1) of the Bankruptcy Code.

*See id.* ¶ 2(i)(a)-(h).

Under the Claims Procedures Order, a properly filed and served response to an Omnibus Objection gives rise to a Contested Claim. The Estate Representative is required to schedule a contested hearing (each a "Claim Hearing") for each such claim. *Id.* ¶ 3(iv). The Claim Hearing is to be scheduled as either a "Sufficiency Hearing" or a "Merits Hearing." A Sufficiency Hearing is a non-evidentiary hearing to address whether the Contested Claim has stated a claim for relief that can be allowed against the Debtors. *Id.* ¶ 3(iv)(a). The legal standard of review that the Court will apply at a Sufficiency Hearing is equivalent to the standard that the Court applies to motions under Rule 12(b)(6). *Id.* A Merits Hearing is an evidentiary hearing on the merits of the Contested Claims. *Id.* ¶ 3(iv)(b).

## Beekman Claim

The Beekman Claim aggregates $9,000,000. The Claimant characterizes the claim as administrative in the amount of $3,000,000 and priority in the amount of $6,000,000. As to the latter, he maintains that an amount of $3,000,000 is entitled to priority under section 507(a)(7) of the Bankruptcy Code and another $3,000,000 is entitled to priority under section 507(a)(10) of the Bankruptcy Code. In support of their Objection, the Plan Administrator and Consumer Representative assert, as follows:

The Plan Administrator, with the assistance of its professionals, and the Consumer Representative have examined each [Beekman Claim], documentation provided with respect to [the Beekman Claim] and the Debtors' respective books and records, and have determined in each case that (i) there is insufficient evidence to support

the validity of the [Beekman Claim] in the amounts and priority asserted, (ii) such [Beekman Claim] [is] deemed to have no merit by the Debtors, and/ or (iii) the applicable claimant's consumer account has already been corrected and therefore no such [Beekman Claim] exists, as described in Exhibit A annexed hereto under the heading "Basis for Objection." The Plan Administrator and the Consumer Representative believe the [Beekman Claim] [is] not merely unsecured Consumer Creditor Litigation Claims that have been erroneously asserted in part as an administrative expense, priority, and/or secured claim, but rather are Claims that have no basis at all in their entirety based on the Debtors' books and records, the supporting documentation submitted by [Beekman], if any.

Objection ¶ 13.  In contesting the Objection, the Claimant filed two responses, the "First Response" and the "Second Response" (collectively, the "Responses").[10] The Plan Administrator and Consumer Representative filed a joint reply (the "Reply") in support of the Objection.[11] The Court conducted a Sufficiency Hearing on the Beekman Claim.

## **Applicable Legal Standards**

Under section 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  *See also* Fed. R. Bankr. P. 3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."). Section 502(b) sets forth the grounds for disallowing a properly filed proof of claim.  *See* 11 U.S.C. § 502(b); *see also Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.,* 549 U.S. 443, 449 (2007) ("But even where a party in interest objects [to a claim], the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions

---

[10]    *See* James Beekmans [sic] Objection to Proof of Claim and Request for Classification Claim Number: 24609 [ECF No. 1902] (the "First Response").  On September 8, 2020, after the Sufficiency Hearing, Beekman filed an affidavit in support of the Beekman Claim.  *See* Affidavit of Claimant James Beekman in Support of Claim No. 24609 [ECF No. 2833] (the "Second Response").  The Second Response does not introduce new arguments or facts in support of the claim.  In resolving the Objection, the Court considered the matters raised in, and documents annexed to, the Second Response.

[11]    *See* Joint Reply of Plan Administrator and Consumer Representative in Support of the Ninth Omnibus Objection with Respect to Claim of James Beekman (Claim No. 24609) [ECF No. 2032].

enumerated in § 502(b)"); *HSBC Bank USA, N.A. v. Calpine Corp.*, No. 07 Civ. 3088 (GBD), 2010 WL 3835200 at *5 (S.D.N.Y. Sept. 15, 2010) ("All claims are allowed unless specifically proscribed by one of the nine exceptions listed in § 502(b).") (citing *Travelers*, 549 U.S. at 449). As relevant, section 502(b) states that if a party in interest objects to a claim, the Court:

> [A]fter notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that— (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]

11 U.S.C. § 502(b)(1).  Whether a claim is allowable "generally is determined by applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).  In the face of a properly filed claim objection, the claimant must prove by a preponderance of the evidence that under applicable law the claim should be allowed.  *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000) ("Once an objectant offers sufficient evidence to overcome the prima facie validity of the claim, the claimant is required to meet the usual burden of proof to establish the validity of the claim.").  "[T]he ultimate burden of persuasion is always on the claimant." *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991).

Bankruptcy Rule 7008 incorporates Rule 8 of the Federal Rule of Civil Procedure.  As relevant, Rule 8 states that a request for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  "In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." *In re DJK Residential LLC,* 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009).  *See also In re 20/20 Sport, Inc.,* 200 B.R. 972, 978 (Bankr. S.D.N.Y. 1996) ("In bankruptcy cases, courts have traditionally analogized a creditor's claim to a civil complaint [and] a trustee's objection to an answer....").

Accordingly, claims drafted by pro se claimants "are to be construed liberally, but they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the plaintiff is complaining about and . . . whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (quoting *Iwachiw v. New York City Bd. of Elections,* 126 Fed. Appx. 27, 29 (2d Cir. 2005)).

Pursuant to the Claims Procedures Order, "the legal standard of review that will be applied by the Court at a Sufficiency Hearing will be equivalent to the standard applied by the Court [pursuant to Bankruptcy Rule 7012] upon a motion to dismiss for failure to state a claim upon which relief can be granted." *See* Claims Procedures Order, ¶ 3(iv)(a). Under Rule 12(b)(6), a claim may be dismissed due to a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under that rule, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 323-24 (2d Cir. 2011), *cert. denied*, 565 U.S. 1241 (2012). In assessing the sufficiency of the allegations, the court accepts the claim's factual allegations as true and must draw reasonable inferences in favor of the plaintiff. *Tellabs Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 323 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ideal Steel Supply Corp.*, 652 F.3d at 324 (quoting *Ashcroft v. Iqbal*, 556 U.S. at 678). As such, courts "are not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555. In assessing the merits of the Rule 12(b)(6) motion, the Court "must liberally construe all claims . . . and draw all reasonable inferences in favor of the plaintiff." *See In re*

8

*J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 252 (S.D.N.Y. 2011) (citing *Cargo Partner*

*AG v. Albatrans, Inc.*, 352 F.2d 41, 44 (2d Cir. 2003)). In particular, the Court must construe a

pro se complaint liberally. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d

Cir.2008); *Boykin v. KeyCorp,* 521 F.3d 202, 213–14, 216 (2d Cir.2008). Moreover, "courts

must consider the complaint in its entirety, as well as other sources courts ordinarily examine

when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the

complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v.*

*Makor Issues & Rights, Ltd.*, 551 U.S. at 322.

### Discussion[12]

In 2006, Beekman obtained two loans from IndyMac Bank, F.S.B. ("IndyMac") secured

by mortgages on different parcels of real property. On November 15, 2006, the Claimant

obtained a $320,000 loan (the "Loan") from IndyMac Bank, F.S.B. ("IndyMac") secured by a

mortgage (the "Residential Property Mortgage") on real property located at 427 9th Street, West

---

[12]    The Claimant and IndyMac have been in litigation in the state court of Florida for more than 12 years
in at least two foreclosure actions, involving different parcels of real estate. In support of his Responses,
Beekman cites to documents of record in both actions. As noted, in resolving the Objection, the Court
can consider the contents of the orders and documents that the Claimant cites in his Responses and in
support of the Beekman Claim. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322
(2007); *State Universities Ret. Sys. of Illinois v. Astrazeneca PLC*, 334 F. App'x 404, 406 (2d Cir. 2009).
Moreover, it is well settled that a court "may take notice of proceedings in other courts, both within and
without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St.
Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir.1979). *See, e.g., Kasey v.
Molybdenum Corp. of America*, 336 F.2d 560, 563 (9th Cir. 1964) (where parties had history of litigation
in state court, court took "judicial notice of . . . officially reported decisions and refers to them for a better
understanding of the complicated factual situation here existing."); *Church of Scientology Int'l v. Time
Warner, Inc.,* 806 F.Supp. 1157, 1159 n.2 (S.D.N.Y.1992) (court took judicial notice of reported
decisions dealing with Scientology organizations); *Wingate v. Gives*, 05 Civ. 1872 (LAK), 2016 WL
519634, at *1 (S.D.N.Y. Feb. 5, 2016) (court took judicial notice of facts in reported state court
decisions). Thus, subject to the standards applicable to Rule 12(b)(6) motions, the Court primarily relies
on the Beekman Claim, the Responses, and the documents of record in the Residential Property Action
(defined below), including state court decisions issued therein, as the primary source of facts for this
Memorandum Decision and Order.

Palm Beach, Florida, 33401 (the "Residential Property").[13]  On December 21, 2006, the

Claimant obtained a $192,000 loan from IndyMac secured by a mortgage ("Rental Property

Mortgage") on real property located at 425 9th Street, West Palm Beach, Florida 33401 (the

"Rental Property").[14]  Beekman defaulted under both loans.

On December 31, 2008, IndyMac commenced an action in the state court of Florida to

foreclose the Rental Property Mortgage.[15]  On or about April 19, 2010, it assigned its interest in

the mortgage and note to OneWest Bank, F.S.B. ("OneWest").[16]  On August 20, 2010, OneWest

obtained a final judgement of foreclosure against Beekman.[17]  On November 17, 2011,  the clerk

issued a certificate of sale to OneWest,[18] and, thereafter, closed the case.  On October 28, 2017

Beekman, through his counsel, filed a motion seeking to reopen the case and to enjoin the sale of

the Rental Property.[19]  Beekman took no steps to obtain a hearing on the motion and the state

court entered an order closing the case for lack of prosecution.[20]

---

[13]    *Fed. Home Loan Mortg. Corp. v. Beekman, et al.,* Case No. 50-2009-CA-001458-XXXX-MB, ECF
No. 6 at 4-6, *Complaint to Foreclose Mortgage and to Enforce Lost Loan Documents* (Fla. 15th Cir. Ct.
2009) (hereinafter referred to as the "Residential Property Action").  All references to the documents filed
in this action shall be cited as "Residential Property Action, ECF No. ___".

[14]    *IndyMac Fed. Bank, F.S.B. v. Beekman, et al.,* Case No. 50-2008-CA-041520-XXXX-MB, ECF No.
6 at 4-6, *Complaint to Foreclose Mortgage and to Enforce Lost Loan Documents* (Fla. 15th Cir. Ct. 2008)
(hereinafter referred to as the "Rental Property Action"). All references to the documents filed in this
action shall be cited as "Rental Property Action, ECF No. ___".

[15]    Rental Property Action, ECF No. 6.

[16]    *Id*. at ECF No. 32.

[17]    *Id*. at ECF No. 34.

[18]    *Id*. at ECF No. 75.

[19]    *Id*. at ECF No. 403.

[20]    *Id*. at ECF No. 408.

On or about January 15, 2009, the Federal Home Loan Mortgage Corporation commenced an action to foreclose the Residential Property Mortgage.[21]  The Residential Property Action is pending but prosecution of the action was stayed on December 14, 2020, when Beekman commenced his voluntary case under chapter 7 of the Bankruptcy Code in United States Bankruptcy Court for the Southern District of Florida.[22]

In response to the Objection, Beekman says that the lenders and servicers of his Loan have harmed him financially, physically, and emotionally, that Ditech Financial should be held liable for damages for its acts against him, and that there is no justification for expunging his claim.  First Response ¶¶ 77, 78.  Beekman explains that in his claim, he seeks to redress alleged wrongdoing by Ditech Financial in connection with the Loan and its efforts to foreclose the Residential Property Mortgage.  In his First Response, as support for the claim, Beekman contends that he is entitled to compensatory and punitive damages for his financial loss, damaged credit, and loss of his business, destruction of his property, hundreds of thousands of dollars in legal expenses, physical harm, mental anguish, and emotional distress occasioned by the lenders and Ditech Financial's alleged (i) fraudulent misrepresentations, (ii) fraud, and (iii) intentional infliction of emotional distress.  *Id.* ¶¶ 1, 19, 52, 73.  He describes his case as one where the lender and its servicers purport to help homeowners, like himself, but in reality, are unceasingly attempting to foreclose on their property.  *Id.* ¶ 9.  The Court considers those matters below.

---

[21]    Residential Property Action, ECF No. 6.

[22]    *See* Notice of Filing Chapter 7 Bankruptcy. [Residential Property Action, ECF No. 421].

Fraudulent Misrepresentation

Central to Beekman's claim that Ditech Financial is liable for damages caused by its misrepresentations is his contention that for the last 12 years the lender and Ditech Financial have sought to foreclose the Residential Property Mortgage, despite the fact that he applied for, and received a mortgage loan modification with respect to that mortgage, and made at least four payments on account of the modified mortgage. *Id.* Beekman says that Ditech Financial agreed to a mortgage loan modification and, thereafter reneged on its agreement. He says that in doing so, Ditech Financial and its agents failed to honor their fiduciary, moral and contractual obligations. *Id.* He also says that, as a consequence, he has been exposed to litigation that has resulted in his loss of property, which has caused him emotional distress. He insists that, as a matter of law, he is entitled to recover damages from Ditech. *Id.* ¶¶ 4, 11.

The events relating to the alleged promised loan modification occurred a few years after Beekman obtained the Loan. Beekman says that he inquired about obtaining a mortgage modification and was told by the lender that to qualify for a mortgage modification he had to be in arrears on his mortgage payments. *Id.* ¶ 16. He says that based on that advice, he intentionally stopped paying his mortgage and, once in arrears on the mortgage, applied for a mortgage modification. *Id.* ¶¶ 16, 17. Beekman says that the lender and Ditech Financial offered him a mortgage loan modification and that he made at least four payments under the modified mortgage loan. As support for those contentions, Beekman relies on the events of an October 21, 2013 hearing in the Residential Property Action.[23] That day, the Federal Home

---

[23]   As relevant, Beekman asserts, as follows:

> Even after the Plaintiff prevailed over the Defendant at an extensive 8 hour trial on October 21, 2013 where eyewitness Deborah Berry gave unrefuted testimony in support of Plaintiff. The Honorable Judge Howard Harrison ruled in favor of Plaintiff; Florida Case No. 502009CA001458, and stated on the record that "Beekman is credible." First Response ¶ 6.

Loan Mortgage Corporation ("FHLMC"), as plaintiff, conducted a non-jury trial regarding the

Residential Property.  At the close of the trial, and after hearing the arguments and evidence

presented by the parties, the court ruled that FHLMC "shall take nothing" on its Count 1 for

foreclosure of the mortgage.  *See Fed. Home Loan Mortg. Corp. v. Beekman*, No.

502009CA0014588XXXMBAW, 2013 WL 12147456 at *1, ¶ 1 (Fla. Cir. Ct. Oct. 30, 2013).  In

making that ruling, the trial court found that

> James Beekman was offered a HAMP modification by the Plaintiff's agent,
> Indymac Mortgage Services, a Division of OneWest Bank, ("Indymac"),
> requiring three trial period payments of $1631.78. The Court finds that Defendant
> tendered four payments in this amount toward this modification, and that such
> payments were timely made. The Court further determines that Defendant
> submitted all required documentation, and that he was otherwise qualified for
> HAMP relief. The Court finds that Indymac failed to approve Defendant's
> application for a permanent HAMP modification, and that this denial was without
> justification.

*Id.* ¶ 2.  The court found that the issues relating to Beekman's HAMP application were tried by

the consent of the parties.  *Id.* ¶ 3.  Based upon those determinations, the trial court directed, as

follows:

> The parties are ordered to comply with the HAMP modification offer;
> specifically, Defendant shall begin paying the sum of $1631.78, as and for his
> mortgage payment, including principal, interest, and escrow, on January 1, 2014,
> with all other amounts to be added on at the end of the loan term set forth in the
> Mortgage which is the subject of this action. These payments shall continue in
> this amount until the end of the initial loan term.

*Id.* ¶ 4.  However, on appeal, the Florida District Court of Appeal reversed and remanded the

case to the trial court.  *See Fed. Home Loan Mortg. Corp. v. Beekman*, 174 So.3d 472, 477 (Fla.

---

The record [of the October 21, 2013 hearing] shows that Indymac Bank was unjustified
in its denial of a HAMP modification and that Beekman was qualified [for a loan
modification]. Additionally, Beekman made 4 payments towards a modification that were
accepted and cashed and indeed had submitted all the financial documentation requested
by the lenders for a modification at least five times and that the lenders repeatedly and
intentionally lost Beekman's modification paperwork, and denied his modification with
the prior lenders representatives telling him "the investors had better options, plain and
simple." *Id.*

4th DCA 2015). In so ruling, the Appellate Court found that (i) the issue of loan modification

was neither requested in Beekman's pleadings nor tried by consent; and (ii) the trial court

exceeded its authority by granting an unbargained-for modification contract. *Id.* at 475-76.

Under Florida law, to state a claim for relief for fraudulent misrepresentations, a claimant

must allege facts demonstrating that: "(1) there was a misrepresentation of material fact; (2) the

representer either knew of the misrepresentation, made the misrepresentation without knowledge

of its truth or falsity, or should have known the representation was false; (3) the representer

intended to induce another to act on the misrepresentation; and (4) injury resulted to a party

acting in justifiable reliance upon the misrepresentation." *Tiara Condo. Ass'n, Inc. v. Marsh &*

*McLennan Companies, Inc.*, 607 F.3d 742, 747 (11th Cir. 2010), *certified question*

*answered,* 110 So. 3d 399 (Fla. 2013). Beekman misplaces his reliance on the events of the

October 21, 2013 hearing in the Residential Property Action as support for his assertion that

Ditech Financial misrepresented facts to him regarding mortgage loan modifications, or for any

other purpose. That is because, as noted the Florida appellate court reversed the trial court's

grant of the loan modification. Beekman's assertions to the contrary notwithstanding, he has not

demonstrated that he obtained–or was promised–a mortgage loan modification for any of his

properties. Beekman also contends that:

> Ditech, at all times made material misrepresentations and colluded with multiple
> banking shell company entities, and other agents to use in a constant rotation of
> Limited Liability companies to elude answering the complaints by Plaintiff. First
> Response ¶ 5.

> Ditech have [sic] utilized their immense power, and intentional misrepresentations
> and undertook illegal actions to defraud Plaintiff through the loss of his home and
> home-based business, and it has subjected Beekman to a mortgage foreclosure
> scheme based on bank fraud that is well known and Plaintiff is surely a victim of.
> *Id.* ¶ 6.

However, Beekman provides no support for those contentions and he cannot plausibly do so.

The events that give rise to Beekman's claims against Ditech Financial for its alleged

14

misrepresentations arose prior to 2013, but Ditech Financial did not begin to service the Loan

until February 2016.  In short, Beekman fails to state a claim for relief against Ditech for

fraudulent misrepresentation, and he cannot do so.[24]

Fraud

In support of his claim for fraud damages, Beekman focuses primarily on actions of

IndyMac in connection with the origination and servicing of the Rental and Residential Property

Mortgages, and matters relating to the lender's conduct of the Rental and Residential Property

Actions.  As to the former, he maintains that when he applied for the Rental Property Mortgage,

the lender misrepresented to him that he could combine that mortgage with the existing

Residential Property Mortgage.  First Response ¶ 15.   He also maintains that the lender

concealed material information from him, including:

> a) Its true intention with regard to pooling the mortgages;
> b) The identity of the true investor in the mortgage pools;
> c) That the lender was receiving payments from third parties; and
> d) That the lender had no intention to assist Beekman in refinancing or modifying
> the mortgage.[25]

*Id.* ¶ 10.  Beekman contends that the lender illegally charged fees and insurance and interest

under the mortgages and filed a false affidavit.  *Id.*  Beekman also complains of the lender's

alleged fraud in prosecuting the Rental and Residential Property Actions.  Beekman asserts that

the lender submitted a false Assignment of Mortgage to defraud him and cause harm to him and

his business (*id.* at ¶ 31); suborned the perjury of its witness at the October 21, 2013 hearing,

who swore to the veracity of documents it knew to be false (*id.*); and willfully foreclosed on the

---

[24]    The Claimant does not contend that Ditech Financial serviced the Rental Property Mortgage.

[25]    To that end, he asserts that the lender's agents misrepresented via telephone that they sought to assist
the Claimant when, instead, they hung up on him multiple times, while the lender obstructed the
Claimant's many attempts to settle the matter.  First Response ¶ 13.

Rental Property despite clear and convincing evidence of fraud.  *Id.* ¶ 32.[26]  He complains of

other irregularities in connection with the conduct of the Rental Property Action (*id.* ¶¶ 33-39)

and Residential Property Action.  *Id.* ¶¶ 40-50.

The elements of a fraud claim under Florida law are: (i) a false statement concerning a

specific material fact; (ii) the maker's knowledge that the representation is false; (iii) an intention

that the representation induces another's reliance; and (iv) consequent injury by the other party

acting in reliance on the representation.  *Wadlington v. Cont'l Med. Servs., Inc.*, 907 So. 2d 631,

632 (Fla. Dist. Ct. App. 2005).  "In alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also XP*

*Glob., Inc. v. AVM, L.P.*, No. 16-CV-80905, 2016 WL 6679427, at *5 (S.D. Fla. Nov. 14, 2016).

To satisfy the heightened pleading requirements under Rule 9(b), a plaintiff must "offer more

than mere conjecture," *U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301,

1313 (11th Cir. 2002), and "requires that a complaint plead facts giving rise to an inference of

fraud." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed. Appx. 81, 86

(11th Cir. 2008).  To satisfy Rule 9(b), the complaint must set forth "(1) precisely what

statements were made in what documents or oral representations or what omissions were made,

and (2) the time and place of each such statement and the person responsible for making (or, in

the case of omissions, not making) same, and (3) the content of such statements and the manner

---

[26]   The Claimant elaborates on the alleged fraud, as follows:

> [The lenders] collectively orchestrated their fraud scheme in a court of law. [They] used
> the litigation privilege to answer complaints of fraud. [They] filed frivolous objections
> and influenced the courts with monies to the courts. At all times [they] objected to
> subpoena discovery and struck jury trial demands to conceal the facts of the Fraud from
> the public and handpicked swayed judges. This fact prejudiced the [Claimant] and [the
> lenders] took advantage of [Claimant] in a court of law with malicious foresight and
> malice forethought  knowing the Plaintiff would not get a fair trial and would be
> prevented by bank from getting due process.  *Id.* ¶ 32.

in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *XP Glob., Inc. v. AVM, L.P.*, 2016 WL 6679427, at *5.

The facts that Beekman alleges in support of his contention that the lender defrauded him do not support a fraud claim against Ditech Financial because it was not servicing any of the Beekman mortgages at the time of the lender's alleged wrongdoing. As support for his claim that Ditech Financial defrauded him, Beekman points to Ditech's alleged constant switching of identities to elude Beekman's complaints of dual tracking, fraudulent misrepresentation, tortious misrepresentation, perjury, forgery, fraud upon the court and unjustified denial of a loan modification. First Response ¶ 8. He also points to Ditech Financial's alleged insurance fraud, notary fraud, predatory lending, failing to disclose third party payments from special share-loss agreements from the Federal Deposit Insurance Corporation, and other sources, as well as fraud in the origination, concealment, fabrication of documents, illegal evictions, and refusing to settle after a court ordered mediation as well as refusing Beekman's court ordered payments, after multiple attempts to settle with Ditech Financial. *Id.* In sum, Beekman asserts that Ditech Financial's actions have prejudiced him based on misrepresentations by the lender, and the fact that Ditech Financial and all of its agents allegedly manipulated the courts and have been committing fraud. *Id.*

However, those allegations fall short of stating a fraud claim against Ditech Financial. The Claimant fails to allege facts demonstrating that Ditech Financial knowingly made a false statement of a material fact to Claimant, that the Claimant relied on it, and that he was injured as a consequence. *See Barrett v. Scutieri*, 281 F. App'x 952, 954 (11th Cir. 2008) (affirming dismissal of the complaint with prejudice noting that "Barrett's fraud claim fails procedurally and substantively. He did not set forth a specific oral or written statement or omission by Scutieri about a material fact"); *Kelly v. Aurora Loan Servs.,* No. 610CV1789ORL22DAB, 2011 WL

17

13298913, at *3 (M.D. Fla. Aug. 9, 2011) (dismissing Count II for failure to allege

misrepresentation of material facts); *Dawley v. NF Energy Corp. of Am.*, No.

610CV1015ORL22DAB, 2011 WL 13298730, at *3 (M.D. Fla. July 19, 2011) (dismissing

complaint with prejudice noting that the claims fail to allege fraud, the commission of fraud or

fraud by omission); *Simpson v. Zwinge*, No. 12-60817-CIV, 2013 WL 12141352, at *4 (S.D. Fla.

Jan. 31, 2013), *aff'd,* 531 F. App'x 985 (11th Cir. 2013) (dismissing the complaint with prejudice

and noting that Plaintiff failed to state a plausible claim for fraud in Count I because the

complaint does not identify any particular false statements of material fact).  Moreover,

Beekman cannot plausibly state a fraud claim against Ditech Financial.  That is because the

source of Beekman's complaint are actions taken by the lenders prior to Ditech's appointment as

servicer of the Loan.  *See, e.g.,* First Response ¶¶ 8, 31, 32, 48-51, 56-60.

Intentional Infliction of Emotional Distress

Beekman says that the lenders' refusal to modify his mortgage loan after five application

attempts exposed him to cruel and unfair conditions and over 10 years of suffering.  *Id.* ¶ 71.  He

contends that he was under pressure due to the actions of the bank and all of its other entities,

i.e., IndyMac Bank, IndyMac Federal, Freddie Mac, One West Bank and IndyMac Mortgage

Services.  He asserts that they repeatedly asked him to submit and resubmit loan modification

applications, trial payments, and HAMP packages (which he says he submitted 5-7 times), only

to be called on a daily basis, sometimes 5, 6, 7 times a day to be harassed by the bank asking for

things he had already submitted over and over again.  *Id.* ¶ 74.  He maintains that the lenders

ruined his life, health, and credit by declining to restructure or modify the mortgage.  *Id.*

Beekman says that by reneging on their promises to modify the Rental and Residential Property

Mortgages, and employing extortion-like tactics to threaten him with foreclosure and eviction,

the lenders have subjected him to undue stress that has caused him to suffer mental anguish,

anxiety attacks, and ultimately a heart attack which resulted in an emergency hospital stay. *Id.* ¶ 71.[27]  He says that he is suffering from Post-Traumatic Stress Disorder as a result of injuries caused by the lender's abuse of the loan modification process, coupled with the extensive litigation, wrongful foreclosure and the devious actions by Ditech Financial, IndyMac Bank, One West Bank, Indymac Mortgage Services, The Law Offices of David J. Stem and The Law Offices of Douglas C. Zahm. *Id.* ¶ 72.  He complains that Ditech Financial opposed all efforts to negotiate a fair and equitable settlement between himself and the lender despite his numerous attempts to stop the foreclosure actions and prevent further personal and financial damage to him. *Id.* ¶ 73.

To sustain an action for the intentional infliction of emotional distress under Florida law, the Claimant must demonstrate: "(1) [t]he wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 954–55 (Fla. Dist. Ct. App. 2017).  A plaintiff's "subjective response" to such alleged conduct "does not control the question of whether the tort of intentional infliction of emotional distress occurred." *Liberty Mut. Ins. Co. v. Steadman*, 968 So.2d 592, 595 (Fla. 2d DCA 2007).  Florida courts recognize the cause of action "only in the most outrageous

---

[27]    He says that Deborah Berry, the other person residing in the home, also suffers from undue stress, lack of sleep, and mental trauma. *Id.* ¶ 71.  Beekman explains that he suffered from a nervous break-down, became depressed and suicidal and went to the emergency room of Good Samaritan Hospital on August 14, 2011, for treatment of chest pains. *Id.* ¶ 74.  He also says that at the age of 46 he suffered a mild heart attack, induced by stress, and worry that was caused by IndyMac Mortgage Services and One West Bank trying to steal his house and possibly making him homeless. *Id.* ¶ 75.  He links his heart attack to his receipt of a letter from One West Bank a/k/a IndyMac Mortgage Services stating that they denied his mortgage loan modification application and reiterated to him that the investor had other and better options. *Id.*

circumstances." *Mundy v. S. Bell Tel. & Tel. Co.*, 676 F.2d 503, 505 (11th Cir. 1982) (citing

*Habelow v. Travelers Ins. Co.*, 389 So.2d 218, 220 (Fla. 5th Dist.Ct.App.1980)). Moreover,

liability for the intentional infliction of emotional distress "does not extend to mere insults,

indignities, threats, or false accusations." *See Estate of Roig v. United Parcel Serv., Inc.*, No. 20-

CV-60811, 2020 WL 6875790, at *12 (S.D. Fla. Sept. 30, 2020), *report and recommendation

adopted,* No. 20-CV-60811, 2020 WL 6873892 (S.D. Fla. Nov. 22, 2020). Instead "[l]iability

has been found only where the conduct has been so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

utterly intolerable in a civilized community. Generally, the case is one in which the recitation of

the facts to an average member of the community would arouse his resentment against the actor,

and lead him to exclaim, 'Outrageous!'" *Gallogly v. Rodriguez*, 970 So.2d 470, 472 (Fla. 2d

DCA 2007) (quoting Restatement (Second) of Torts § 46 cmt. d (1965) and noting that the

Restatement of Torts defines the type of outrageous conduct needed to support the second

element of a claim for intentional infliction of emotional distress). The Court has no doubt that

the Rental and Residential Property Actions have taken a toll on the Claimant financially,

physically, and emotionally. The Court regrets that the Claimant has suffered through mental

anguish, anxiety attacks, and a heart attack. However, he has failed to allege facts that

demonstrate the Ditech Financial is liable for the infliction of emotional distress. It is not

plausible that Claimant could state such a claim because the focus of Beekman's complaint is on

actions taken in connection with the mortgage loan modification process and the commencement

and conduct of the Rental and Residential Property Actions. All of the actions Beekman

complains of pre-date Ditech Financial's involvement as servicer. As such, he cannot state a

claim for the intentional infliction of emotional distress against Ditech Financial. *See Marchisio

v. Carrington Mortg. Servs., LLC*, No. 12-CV-14264-DLG, 2012 WL 12897471, at *3 (S.D. Fla.

Nov. 29, 2012) (granting motion to dismiss and noting that the claim for intentional infliction of emotional distress regarding actions by mortgagor to induce plaintiff to pay a debt plaintiff claims is no longer due, was not sufficiently described).

### Conclusion

Based on the foregoing, the Court finds that accepting all of the pro se Claimant's factual allegations in support of the Beekman Claim as true, drawing all reasonable inferences in the Claimant's favor, and interpreting the Beekman Claim and the Responses to the Objection to raise the strongest arguments that they suggest, the Beekman Claim fails to state plausible claims against the Wind Down Estates or the Consumer Creditor Reserve, as a matter of law. The Court sustains the Objection and expunges the Beekman Claim.

IT IS SO ORDERED.

Dated:  New York, New York
       February 8, 2021

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge