UNITED STATES BANKRUPTCY COURT                    NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- x
In re:                                         :
                                               :    Case No. 19-10412 (JLG)
                                               :    Chapter 11
Ditech Holding Corporation, *et al.*,          :
                                               :
                                               :    (Jointly Administered)
                              Debtors.[1]      :
----------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER SUSTAINING THE SIXTY-SEVENTH OMNIBUS OBJECTION (NO BASIS CONSUMER CREDITOR CLAIMS) WITH RESPECT TO CLAIM OF BURTON DEZIHAN

**A P P E A R A N C E S :**

WEIL, GOTSHAL & MANGES LLP
*Attorneys for the Plan Administrator*
767 Fifth Avenue
New York, New York 10153
By:   Ray C. Schrock, P.C.
      Richard W. Slack, Esq.
      Sunny Singh, Esq.

JENNER & BLOCK LLP
*Attorneys for the Consumer Claims Representative*
919 Third Avenue
New York, NY 10022
By:   Richard Levin, Esq.

Mr. Burton Dezihan
*Appearing Pro Se*
12802 149th St E
Puyallup, WA 98374

---

[1]    The confirmation of the Debtors' Third Amended Plan (as defined below) created the Wind Down Estates. The Wind Down Estates, along with the last four digits of their federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## Introduction[2]

Burton Dezihan (the "Claimant") filed six Proofs of Claim against Ditech Financial LLC

f/k/a Green Tree Servicing LLC ("Ditech" or "Debtor") in these Chapter 11 Cases.[3] By

stipulation, the parties agreed that five of the six claims would be deemed withdrawn and Proof

of Claim 2884 (the "Claim") would be the surviving claim (the "Stipulation").[4] As explained

below, the Claim recites that it seeks $53,043.86 of which, $225,000 is secured, $53,043.86 is

unsecured and $3,025 is entitled to priority status under 11 U.S.C. § 507(a)(7). In support of the

Claim and in substance, the Claimant contends that he has been damaged by Ditech's alleged

misapplication of mortgage payments and violations of federal statutes including the Real Estate

Settlement Procedures Act ("RESPA"), and Ditech's failure to respond to his subpoena.

In their Sixty-Seventh Omnibus Claims Objection (the "Objection"),[5] the Plan

Administrator and the Consumer Claims Representative (collectively, the "Estate

Representatives") seek to disallow and expunge the Claim. The Claimant, appearing pro se

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sixty-Seventh Omnibus Claims Objection or the Third Amended Plan, as applicable.  References hereinafter to "ECF No. ___" are to documents filed in the electronic docket in these jointly administered cases under Case No. 19-10412 (the "Chapter 11 Cases").

[3]    Those Claims are as follows: Proof of Claim No. 2816 filed November 7, 2019; Proof of Claim No. 2629 filed November 8, 2019; Proof of Claim No. 2845 filed January 3, 2020; Proof of Claim Nos. 2862 and 2866 filed February 10, 2020; and Proof of Claim No. 2884 filed June 1, 2020.

[4]    Stipulation and Order Regarding Claims of Burton Dezihan (Claim Nos. 2629, 2816, 2845, 2862, 2866, and 2884) [ECF No. 3127]. The parties stipulated that any supporting documents included with the withdrawn claims, as well as the respective responses filed by Claimant, will be considered part of the surviving Claim.

[5]    *See* Sixty-Seventh Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims) [ECF No. 3121].

responded to the Objection.[6] The Estate Representatives submitted a joint reply to the Response (the "Reply").[7]

The Estate Representatives contend that the Court should disallow and expunge the Claim because it fails to state a claim for relief against Ditech. The Claimant disputes that position. Pursuant to the Claims Procedures Order,[8] the Court conducted a Sufficiency Hearing on the Claim.[9]  The Claimant and Estate Representatives appeared at the Sufficiency Hearing and were heard in support of their respective positions. The legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[10] *See* Claims Procedures Order ¶ 3(iv)(a).

As explained below, the Claim is disallowed and expunged as time-barred since Claimant filed it approximately one-year after the Consumer Borrower Bar Date (as defined below) expired and has not demonstrated excusable neglect in failing to timely file the Claim. Moreover, and in any event, the Court finds that even if the Claim is not time-barred, accepting all factual allegations asserted by the pro se Claimant in support of the Claim as true, drawing all reasonable inferences in the Claimant's favor, and interpreting the Claim and the Claimant's

---

[6]    *See* Objection to Dismissal-Expungement of Claim [ECF No. 2541] (the "First Response"); Notice of Objection to Disallowance and Expungement of Claim [ECF No. 2657] (the "Second Response"); Supplement to Objection Mailed 2020/05/22 Regarding Claims#: 2629 & 2816 & 2862 & 2866 "Notice of Hearing on Fifty-Fourth Omnibus Claims Objections to Proofs of Claims" [ECF No. 2574] (the "Third Response" together with the First and Second Responses, the "Responses").

[7]    *See* Joint Reply of Plan Administrator and Consumer Representative in Support of the Sixty-Seventh Omnibus Objection with Respect to Claim of Burton Dezihan (Claim No. 2884) [ECF No. 3393].

[8]    *See* Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures [ECF No. 1632] (the "Claims Procedures Order").

[9]    *See* May 27, 2021 Hr'g. Tr. [ECF No. 3423].

[10]    Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

Responses to the Objection to raise the strongest arguments that they suggest, the Claim fails to state a plausible claim against Ditech, as a matter of law. For those reasons, the Court sustains the Objection and disallows and expunges the Claim.

## Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

Approximately twenty-years ago Claimant executed a mortgage in favor of Countrywide Home Loans, Inc. on the real property located at 12802 149th Street East, Puyallup, Washington (the "Property"). *See* Claim at 4; Proof of Claim 2862 at 6, 8.[11] In February 2002, the Department of Veterans Affairs purchased the mortgage on the Property. *See* Proof of Claim 2629 at 16. On October 3, 2006, Claimant's now ex-spouse, Rebecca Raelen a/k/a Rebecca Sue Dezihan, took out a second mortgage on the Property in the amount of $37,000. *See* Proof of Claim 2866 at 34. The Claimant and Ms. Raelan divorced in 2009 and Claimant was awarded the Property. *Id.*

On February 28, 2013 Ditech was the servicer on the second, but not the first, mortgage. At that time, it reached an agreement with Ms. Raelan to settle the full balance due on the second mortgage for payment of the sum of $12,000. *Id.* at 23, 34. *See also* Claim at 8; Third Response at 12. Ms. Raelen made the payment and on March 19, 2013, Ditech acknowledged receipt of the settlement payment as payment in full of the second mortgage. Claim at 9. On May 17, 2013,

---

[11]    References herein to pages of the Claim, Proof of Claim and Responses are cited to the particular PDF page of the document.

Nationwide Title Clearing, Inc. executed a Deed of Reconveyance noting that the "obligation(s) secured by the Deed of Trust have been fully satisfied. . ." *Id.* at 10. Thereafter, Ditech ceased servicing the second mortgage.

In June 2016, Residential Credit Solutions, Inc. transferred servicing rights on the first mortgage to Ditech. *See* Proof of Claim 2845 at 9. On or about April 12, 2017, Ditech submitted a billing statement to Claimant noting that $1,720.70 was due and owing under the first mortgage. This amount represents the regular monthly payment of $860.35 and a past due amount of $860.35. *See* Proof of Claim 2816 at 9. On April 22, 2017, Claimant sent a letter to Ditech demanding that it rectify its accounting/billing errors and requesting reimbursement of $172.58 in expenses that he allegedly incurred in responding to Ditech's billing statements. *See* Proof of Claim 2629 at 7-8.  On September 1, 2017, Claimant sent a letter to Ditech in which he advised (i) that payments on his account were corrected, and (ii) that his payments were properly applied. *Id.* at 11.

In November 2017, Ditech transferred servicing rights on the first mortgage to BSI Financial Services ("BSI"). *See* Proof of Claim 2866 at 33; Proof of Claim 2629 at 20. On November 30, 2017, Claimant sent Ditech a letter in which he advised that he had just been made aware that the second mortgage had been paid in full by his ex-spouse, and complained that he had not received any reduction in the amount outstanding under the first mortgage on account of the satisfaction of the second mortgage. *See* Proof of Claim 2629 at 14. In the letter, Claimant requested, without explanation, that the amount due and owing under the first mortgage be reduced by the sum of $37,000 originally owed on the second mortgage. *Id.* Notably, in that letter, Claimant does not allege that there remained any misapplied payments by Ditech. *See id.*

**The Chapter 11 Cases**

On February 11, 2019, (the "Petition Date") Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates ("Debtors") filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court. The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019 at 5:00 p.m. (prevailing Eastern Time) as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in the Debtors' Chapter 11 Cases (the "General Bar Date").[12] Thereafter, the Court extended the General Bar Date for consumer borrowers, twice, and ultimately to June 3, 2019 at 5:00 p.m. (prevailing Eastern Time) (the "Consumer Borrower Bar Date").[13]

On September 26, 2019, the Debtors confirmed their Third Amended Plan,[14] and on September 30, 2019, that plan became effective.[15] The Plan Administrator is a fiduciary appointed under the Third Amended Plan who is charged with the duty of winding down, dissolving and liquidating the Wind Down Estates. *See* Third Amended Plan, Art. I, ¶¶ 1.130, 1.184, 1.186. The Consumer Claims Representative is a fiduciary appointed under the Third

---

[12]    *See* Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof [ECF No. 90].

[13]    *See* Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers *Nunc Pro Tunc* [ECF No. 496].

[14]    *See* Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors [ECF No. 1326] (the "Third Amended Plan"); Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors [ECF No. 1404].

[15]    Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims [ECF No. 1449].

Amended Plan who is responsible for the reconciliation and resolution of Consumer Creditor Claims and distribution of funds to holders of Allowed Consumer Creditor Claims in accordance with the Third Amended Plan. *Id.,* Art. I, ¶ 1.41. Under the plan, the Plan Administrator, on behalf of each of the Wind Down Estates, is authorized to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims; and the Consumer Claims Representative has the exclusive authority to object to all Consumer Creditor Claims. *See id.*, Art. VII, § 7.1.

**The Proof of Claim**

Claimant filed each of his six Proofs of Claim after the Consumer Borrower Bar Date expired.[16] On January 17, 2020, the Plan Administrator filed the Twenty-Eighth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims) [ECF No. 1760] objecting to Proofs of Claim Nos. 2629 and 2816. On May 8, 2020, the Estate Representatives jointly filed the Fifty-Fourth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims) [ECF No. 2326] objecting to Proofs of Claim Nos. 2862 and 2866. Claimant responded to the objections and opposed the expungement of Proofs of Claim Nos. 2629, 2816, 2862 and 2866.

On June 22, 2020, Claimant sought to conduct discovery on the Proofs of Claim by serving a subpoena on Ditech. *See* Reply Ex. A, Subpoena. Ditech did not respond to the subpoena. On September 22, 2020, the parties entered into the Stipulation pursuant to which Claimant withdrew Proofs of Claim Nos. 2629, 2816, 2845 and 2862, and the parties agreed that the Claim (i.e., Proof of Claim No. 2884) would remain the sole surviving Claim in these Chapter 11 Cases.[17] On December 23, 2020, the Plan Administrator filed the Objection. The

---

[16]    *See supra* note 3.

[17]    *See supra* note 4.

Stipulation preserved the rights of the Estate Representatives to dispute the amount of, basis for, or validity of the Claim. *See* Stipulation ¶ J.2. The Stipulation also provided that the Response as well as documents filed in support of the withdrawn Proofs of Claim would be considered part of the surviving Claim. *Id.* ¶ J.1.

The Claimant, acting pro se, filed the Claim on June 1, 2020, well after the Consumer Borrower Bar Date expired. The Claim seeks $53,043.86 against Ditech, of which $53,043.86 is unsecured, $225,000 is secured and $3,025 is entitled to priority payment. The Claim values the Property at $184,995.77.[18] Claimant contends broadly that Ditech accepted and misapplied payments between his first and second mortgage, violated sections of RESPA and failed to respond to his subpoena. In support of the Claim, the Claimant attaches and relies on the document also filed separately as the Third Response, the settlement confirmation letter from the Hopp Law Firm, Deed of Reconveyance, a copy of the cancelled check as evidence demonstrating payment in full of the second mortgage, as well as various documents filed in these Chapter 11 Cases relating to the withdrawn claims.[19]

**Claims Procedures Order**

On November 19, 2019, the Court entered the Claims Procedures Order. Under that order, the Estate Representatives are authorized to file Omnibus Objections seeking reduction, reclassification, or disallowance of Claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order. *See* Claims Procedures Order ¶ 2(i)(a)-(h). A properly filed and served response to an Objection gives rise to a "Contested Claim" that will be resolved at a Claim Hearing. *Id.* ¶ 3(iv). The Estate Representatives have the

---

[18]    *See* Claim at 2.

[19]    *See id.* at 4-20.

option of scheduling the Claim Hearing as either a "Merits Hearing" or a "Sufficiency Hearing."

*Id.* ¶ 3(iv)(a),(b).  A "Merits Hearing" is an evidentiary hearing on the merits of a Contested

Claim. A "Sufficiency Hearing" is a non-evidentiary hearing to address whether the Contested

Claim states a claim for relief against the Debtors. The legal standard of review that will be

applied by the Court at a Sufficiency Hearing is equivalent to the standard applied by the Court

upon a motion to dismiss for failure to state a claim upon which relief can be granted. *Id.* ¶

3(iv)(a).

**The Objection**

In the Objection, the Estate Representatives contend that the Court should disallow and

expunge the Claim because it is filed well after the Consumer Borrower Bar Date (Reply ¶¶ 39-

43), it fails to state a cognizable claim against Ditech under Rule 12(b)(6) (*id.* ¶¶ 24-35), it fails

to plead fraud with particularity as required by Rule 9(b) (*id.* ¶¶ 36-38),[20] or, at a minimum, the

Court should reclassify the secured claim to an unsecured Consumer Creditor Claim, subject to

further determination of its status as a section 363(o) or non-section 363(o) claim. *Id.* ¶¶ 44-55.

## <u>Applicable Legal Standards</u>

Under section 502(a) of the Bankruptcy Code, "a claim ... proof of which is filed under

section 501 of this title, is deemed allowed, unless a party in interest ... objects." 11 U.S.C. §

502(a). The filing of a proof of claim constitutes "prima facie evidence of the validity and

amount of a claim." Fed. R. Bank. P. 3001(f). If an objection refuting at least one of the claim's

essential allegations is asserted, the claimant has the burden to demonstrate the validity of the

claim. *See, e.g., Rozier v. Rescap Borrower Claims Tr. (In re Residential Capital, LLC)*, 15 Civ.

3248(KPF), 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation*

---

[20]    Rule 9(b) is made applicable herein by Bankruptcy Rule 7009.

*Co. (In re Motors Liquidation Co.)*, No. 09-50026, 2012 WL 1886755, at *3 (S.D.N.Y. May 12,

2012); *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd sub nom. Peter J.

Solomon Co., L.P. v. Oneida, Ltd.*, No. 09-cv-2229, 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010).

Section 502(b) sets forth the grounds for disallowing a properly filed proof of claim. *See* 11

U.S.C. § 502(b); *see also Travelers Cas. and Sur. Co. of Am. v. Pacific Gas and Elec. Co.,* 549

U.S. 443, 449 (2007) ("But even where a party in interest objects [to a claim], the court 'shall

allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions

enumerated in § 502(b)").

In filing the Objection to the Claim, the Estate Representatives initiated a contested

matter.  *See* Fed. R. Bankr. P. 3007 advisory committee's note ("[t]he contested matter initiated

by an objection to a claim is governed by Rule 9014. . .").  *See also In re Tender Loving Care

Health Servs., Inc.*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an

objection to a claim, the objection has initiated a contested matter").  Bankruptcy Rule 9014

governs contested matters. The rule does not explicitly provide for the application of Bankruptcy

Rule 7012.  However, Bankruptcy Rule 9014 provides that a bankruptcy court "may at any stage

in a particular matter direct that one or more of the other Rules in Part VII shall apply." Fed. R.

Bankr. P. 9014. The Court did so here. Under the Claims Procedures Order, the legal standard of

review the Court applies at a Sufficiency Hearing is equivalent to the standard applied by the

Court under Rule 12(b)(6) on a motion to dismiss for failure to state a claim upon which relief

could be granted. *See* Claims Procedure Order ¶ 3(iv)(a).  *See also In re 20/20 Sport, Inc.*, 200

B.R. 972, 978 (Bankr. S.D.N.Y. 1996) ("In bankruptcy cases, courts have traditionally

analogized a creditor's claim to a civil complaint [and] a trustee's objection to an answer. . . ").

In applying Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the Claim in light of the pleading requirements under Rule 8(a) of the Federal Rules of Civil Procedure.[21] Rule 8(a)(2) states that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). To meet that standard, the Claim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("*Iqbal*") (citations omitted); *accord Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) ("*Twombly*"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 570. To satisfy Rule 12(b)(6), the "pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted). In considering whether that standard is met for a particular claim, the court must assume the truth of all material facts alleged in support of the claim and draw all reasonable inferences in the claimant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, the court "need not accord 'legal conclusions, deductions or opinions that are couched as factual allegations . . . a presumption of truthfulness.'" *Hunt v. Enzo Biochem, Inc.*, 530 F.Supp.2d 580, 591 (S.D.N.Y. 2008) (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)). In short, "[i]n ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (citation and internal quotation marks omitted).

---

[21]    Rule 8 is incorporated herein pursuant to Bankruptcy Rule 7008.

Where, as here, the Claimant is proceeding pro se, the Court will liberally construe the Claim,

although the claims must nonetheless be supported by specific and detailed factual allegations

that provide a fair understanding for the basis of the claim and the legal grounds for recovery

against a debtor. *Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC)*, 489 B.R.

489, 494 (Bankr. S.D.N.Y. 2013) (citing *Iwachiw v. New York City Bd. of Elections*, 126 Fed.

Appx. 27, 29 (2d Cir. 2005)).

## Discussion

### The Claim is Time Barred

 As noted, pursuant to Bankruptcy Rule 3002, the Debtors fixed the Consumer Borrower

Bar Date as June 3, 2019. The Claimant filed the Claim on June 1, 2020. Accordingly, it is not

timely filed. As a threshold matter, the Estate Representatives argue that the Court should

expunge the Claim on that basis. Claimant argues that the bar date is not binding on him because

he did not receive actual notice of it. *See, e.g.,* Proof of Claim 2816 at 1.

Bar dates are "critically important to the administration of a successful chapter 11

case." *In re Musicland Holding Corp.,* 356 B.R. 603, 607 (Bankr.S.D.N.Y.2006). They are not

designed merely as a "a procedural gauntlet" but rather serve "as an integral part of the

reorganization process" and the efficient administration of bankruptcy cases. *In re Hooker

Invest., Inc.,* 937 F.2d 833, 840 (2d Cir.1991). Rule 9006(b)(1) governs the permissibility of

filing a late claim in a chapter 11 case. *See Pioneer Inv. Servc. Co. v. Brunswick Associated Ltd.

P'ship,* 507 U.S. 380, 389 (1993) ("The 'excusable neglect' standard of Rule 9006(b)(1) governs

late filings of proofs of claim in Chapter 11 cases but not in Chapter 7 cases."); *see also Midland

Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.),* 419 F.3d 115, 121 (2d

Cir. 2005) ("Rule 9006 governs the admission of proofs of claim filed after a court-ordered bar

date.") (citing *Pioneer,* 507 U.S. at 382). Under that rule, the court has discretion to extend the

11

bar date to late filed claims "where the failure to act was the result of excusable neglect." Fed.

R. Bankr. P. 9006(b)(1). In *Pioneer*, the Supreme Court construed the phrase "excusable neglect"

as it is used in Bankruptcy Rule 9006(b)(1) and concerned the filing of late claims. It found that

the determination is an equitable one that takes account of all of the surrounding circumstances:

> These include. . . the danger of prejudice to the debtor, the length of the delay and
> its potential impact on judicial proceedings, the reason for the delay, including
> whether it was within the reasonable control of the movant, and whether the
> movant acted in good faith.

*Pioneer*, 507 U.S. at 395. The burden of proof rests with the party asserting excusable neglect. *In*

*re Enron Corp.*, 419 F.3d at 121.

Creditors are entitled to receive notice of the bar date. The nature of the notice depends

on whether the creditor is known or unknown. A known creditor is one whose identity is either

known or "reasonably ascertainable by the debtor." *Tulsa Prof'l Collection Serv., Inc. v.*

*Pope,* 485 U.S. 478, 490 (1988). An unknown creditor is one whose "interests are either

conjectural or future or, although they could be discovered upon investigation, do not in due

course of business come to knowledge [of the debtor]." *Mullane v. Central Hanover Bank &*

*Trust Co.,* 339 U.S. 306, 317 (1950). Before considering application of the *Pioneer* standards to

the Objection, the Court considers whether the Debtor provided Claimant with notice of the

Consumer Borrower Bar Date.

The Debtor did not schedule Claimant as a creditor in its case. *See* Reply ¶ 40. It bears

the burden of demonstrating that the Claimant received adequate notice of the bar date. *In re*

*Massa*, 187 F.3d 292, 296 (2d Cir. 1999). Known creditors are entitled to actual notice of the bar

date, and unknown creditors are generally entitled to notice by publication. *See DePippo v.*

*Kmart Corp.*, 335 B.R. 290, 295–96 (S.D.N.Y. 2005) ("While actual notice is required if the

creditor is a 'known' creditor, constructive notice is sufficient where a creditor is

12

'unknown.'"); *In re BGI, Inc.*, 476 B.R. 812, 820 (Bankr. S.D.N.Y. 2013) ("For unknown

creditors, constructive notice, such as notice by publication, will suffice."). As of the Petition

Date, the Debtor was not a party to litigation with Claimant and was not servicing the first

mortgage. Claimant was an unknown creditor of Ditech who was entitled to receive constructive

notice of the Consumer Borrower Bar Date. Pursuant to the Court's order, the Debtor published

Notice of the Consumer Borrower Bar Date as well as the procedures for filing claims herein in

national editions of the *New York Times* and *USA Today*.[22] That notice satisfies due process

requirements for unknown creditors like the Claimant. *See In re Motors Liquidation Co.*, 576

B.R. 761, 778 (Bankr. S.D.N.Y. 2017), *aff'd*, 599 B.R. 706 (S.D.N.Y. 2019) (unknown creditor

was provided with constructive notice of the claims bar date through publication in global,

national, and local newspapers); *In re XO Commc'n, Inc.*, 301 B.R. 782, 795 (Bankr. S.D.N.Y.

2003) (finding that "Teligent was an 'unknown' creditor at the time the Debtor filed its

Schedules and, therefore, Teligent's due process rights were satisfied with publication notice

in *The Wall Street Journal*."); *In re Best Prod. Co., Inc.,* 140 B.R. 353, 358 (Bankr. S.D.N.Y.

1992) (holding that "publication of the Bar Date notice was reasonably calculated to apprise

unknown creditors of the necessity to file proofs of claim before the October 31 deadline. . .").

The Claimant bears the burden of demonstrating his excusable neglect in failing to timely

file the Claim. *In re Enron Corp.,* 419 F.3d at 121 ("The burden of proving excusable neglect

lies with the late-claimant.") (quoting *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir.

2000)). Courts look to the factors set forth in *Pioneer* to determine whether excusable neglect is

pled. They do not assign equal weigh to each factor. Typically, "the length of the delay, the

danger of prejudice, and the movant's good faith 'usually weigh in favor of the party seeking the

---

[22]    *See* Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice
Thereof [ECF No. 90]; Affidavit of Publication (of Bar Date) [ECF No. 3387].

extension.'" *Id.* at 122 (quoting *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir.

2003), *cert. denied*, 540 U.S. 1105 (2004)). The reason for the delay may be the most important

factor. "While prejudice, length of delay, and good faith might have more relevance in a close[d]

case, the reason-for-delay factor will always be critical to the inquiry." *Silivanch*, 333 F.3d at

366 n.7 (quoting *Graphic Commc'ns Int'l Union v. Quebecor Printing Providence, Inc.,* 270

F.3d 1, 5–6 (1st Cir. 2001) (alterations in original)).  Here, the nearly one year delay in filing the

Claim is both significant and prejudicial to the Debtors and Estate Representatives. Claimant has

made no effort to explain why he did not timely file the Claim or to address any of the *Pioneer*

factors. He has failed to demonstrate excusable neglect in the untimely filing of the Claim.

Accordingly, the Court disallows and expunges the late-filed Claim. *See In re DDi Corp.*, 304

B.R. 626, 630 (Bankr. S.D.N.Y. 2004) (granting debtor's motion to expunge the class Claim as

untimely late); *In re Alexander's Inc.,* 176 B.R. 715, 723 (Bankr. S.D.N.Y. 1995) (granting

debtor's motion to expunge a claim filed one year after the bar date and holding that the delay in

filing did not result from "excusable neglect."); *In re New York Seven-Up Bottling Co., Inc.,* 153

B.R. 21, 24 (Bankr. S.D.N.Y. 1993) (granting debtor's motion to expunge the claims of Great

Waters and Poland Spring as untimely).

The Claim Fails to Assert a Claim
For Relief Under Rule 12(b)(6)

In support of the Claim, Claimant argues that he is entitled to recover damages from

Ditech for five reasons. He asserts that: (i) Ditech failed to account for payments and reduce his

first mortgage by the value of the second mortgage ($37,000) which was paid off; (ii) Ditech

owes him monies representing sums for "loss and misapplied" payments; (iii) Ditech violated

various federal statutes, including RESPA; (iv) Ditech fraudulently received payments and

defrauded him; and (v) Ditech failed to respond to Claimant's subpoena. Assuming, *arguendo,*

that Claimant could demonstrate grounds excusing his failure to timely file the Claim, the Court

finds that it nonetheless will be expunged because the Claim fails to state a claim for relief under

Rule 12(b)(6) and fails to satisfy pleading requirements under Rule 9(b). The Court considers

those matters below.

<u>Whether Ditech Failed to Account for the Pay-Off</u>

Claimant asserts that Ditech accepted monthly payments and misapplied them to his

account. He argues that Ditech did not give full credit of those payments to his loan account or

inform him of the payoff on the second mortgage, and did not apply the full deduction of the

"credit set-off" on the first mortgage ($37,000) to the outstanding balance owed on the first

mortgage. *See* Claim at 4 and 6. As discussed below, even assuming the truth of the facts pled in

the Claim, and construing them in the light most favorable to Claimant, Claimant cannot

plausibly assert a claim at law that Ditech misapplied payments on his first mortgage account.

Claimant asserts that Ditech misapplied the payments to his mortgage accounts. *See*

Claim at 2, Part 2, ¶ 8. *See also* Proof of Claim 2816 at 7.  However, documents provided by

Claimant, in support of his Claim do not support that contention. First, the second mortgage was

paid in full in March 2013, (Claim at 9; Proof of Claim 2866 at 24; Proof of Claim 2845 at 5)

and a Deed of Reconveyance was issued shortly thereafter. *See* Claim at 10; Proof of Claim 2866

at 25; Proof of Claim 2845 at 6. Even Claimant admits that the second mortgage was paid off

and no longer in existence. *See* Proof of Claim 2866 at 5.

Second, Ditech began servicing the first mortgage in June 2016 and transferred servicing

rights to BSI in November 2017. *See* Reply ¶¶ 2-3. In April 2017, Claimant sent letters to Ditech

asserting that payments were improperly applied and demanded that Ditech correct its errors. *See*

Claim 2816 at 7.  On September 1, 2017, Claimant sent Ditech a letter noting that that payments

on his account had been correctly applied, and acknowledging that his cashier checks were

properly applied to his first mortgage account. *Id.* at 11. In an earlier letter Claimant notes that

there were "discrepancies regarding the mortgage account as handled by Residential Credit

Solutions, Inc. of Fort Worth Texas." Proof of Claim 2845 at 9; Proof of Claim 2629 at 10

(attaching first page of communication to Residential Credit Solutions, Inc. making accusations

of "accounting discrepancies" and indicating that Claimant's loan is at "a fixed 2% interest rate

without penalties for early pay-off" and expressing concern that "RCS Inc. and any future

servicer are trying to make up that income loss"). In November 2017, Ditech transferred

servicing rights on the first mortgage to BSI. *See* Proof of Claim 2866 at 33; Proof of Claim

2629 at 20. The documents annexed in support of the Claim show that during the period that

Ditech serviced the first mortgage, and prior to transferring servicing rights to BSI, it corrected

any misapplication of funds on account of the first mortgage and reconciled its records with

Claimant's records. To the extent that Claimant contends that there remain misapplied funds

from when Residential Credit Solutions, Inc. was servicing the mortgage, that does not support a

claim against Ditech. Therefore, Claimant fails to assert a plausible claim that Ditech misapplied

funds on the first mortgage account.

Shortly after Ditech transferred the servicing rights to the first mortgage to BSI, Claimant

sent Ditech a letter in which he advised that he had just been made aware that the second

mortgage had been paid in full for the lump sum of $12,000, and complained that he had not

received a reduction of the value of the second mortgage ($37,000) from the first mortgage. *See*

Proof of Claim 2866 at 5-6.  Claimant asserts that while the account was paid off, he was never

notified and so he continued to make payment on the second mortgage and Ditech continued to

accept those payments. *Id.* He claims that to bar Ditech from "double dipping," the full amount

of the second mortgage ($37,000), should be credited against the first mortgage. *Id.* As to these

arguments, the record shows, and Claimant agrees, that the second mortgage was paid in full. *See*

16

*id.*; Proof of Claim 2629 at 11. Additionally, Claimant agrees that as of November 2017, the date

Ditech last serviced the first mortgage and well after the second mortgage was satisfied, there

remained no misapplied payments by Ditech on account of the first mortgage. *See* Proof of

Claim 2816 at 11. The Claimant has not demonstrated any basis in law or fact for crediting the

first mortgage with any portion of the second mortgage.

### Whether Claimant is Owed Sums for "Loss and Misapplied Funds"

Without providing factual support, Claimant asserts that he is entitled to various sums

from Ditech based on "loss and misapplied funds." *See* Proof of Claim 2862 at 31. He asserts

that he is owed $12,543.86 which includes $1,920.00 as a "carry over" from Residential Credit

Solutions, Inc.; $683.33 for "unapplied amounts;" $172.58 in certified mail costs; and $3,000 for

"reference research" and service fees. *See id.* Claimant provides no basis for the costs requested,

or an explanation of how he arrived at certain figures. The "loss and misapplied funds" relate to

discrepancies in the account when it was serviced by Residential Credit Solutions, Inc. As such,

even if true, those alleged losses provide no support for claims against Ditech. To the extent

there were misapplied payments or issues regarding Ditech's servicing of the first mortgage,

those issues were resolved before Ditech transferred the servicing rights to BSI. *See* Proof of

Claim 2816 at 11. The Court finds no merit to the Claimant's contention.

### Whether Ditech Violated Federal Statutes

Claimant contends that Ditech violated various federal statutes in servicing the first

mortgage. *See, e.g.,* Proof of Claim 2862 at 13 (listing among others, "FCRA, 15 U.S.C. §

1681s-2(b)(1), 28 U.S.C. § 1334 and §§ 157"). His principal argument in support is that Ditech

violated RESPA when it failed to comply with the requirements of § 2605(e). *See* Proof of Claim

2862 at 13; Proof of Claim 2816 at 3.  RESPA requires mortgage loan servicers who receive a

"qualified written request" ("QWR") for action or information from a borrower to respond and

act within a period of time set forth in statute. *See* 12 U.S.C. § 2605(e) (1)–2605(e)(2). To assert

a claim under RESPA, a movant must allege facts showing both a violation of a RESPA duty and

actual pecuniary damages causally connected to the violation. *See Congdon v. Wells Fargo Bank,*

*N.A.,* No. C16-1629 RSL, 2017 WL 2443649, at *3 (W.D. Wash. June 6, 2017), *aff'd sub nom.*

*Congdon v. Wells Fargo Bank Nat'l. Ass'n*, 728 F. App'x 740 (9th Cir. 2018).

Claimant fails to plead the elements of a claim under RESPA and he cannot plausibly do

so. As a preliminary matter, Claimant fails to plead specific acts, and damages occasioned by

Ditech's conduct which violate RESPA. *See* Proof of Claim 2862 at 13; Proof of Claim 2816 at

3. *See Williams v. Wells Fargo Bank, N.A.*, No. C10-5880BHS, 2012 WL 72727, at *7 (W.D.

Wash. Jan. 10, 2012) (citing *Iqbal*, 556 U.S. 662 (2009) (noting that the RESPA claim consists

of conclusory statement that does not meet the pleading threshold under applicable standards.).

Assuming, *arguendo*, that Claimant submitted a QWR and Ditech failed to respond within the

statutory time period, Claimant makes no allegation of how this act directly caused any financial

loss. *See Congdon*, 2017 WL 2443649, at *3. Therefore, Claimant's claim under RESPA fails as

a matter of law. *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 539–40 (E.D.N.Y.

2015) (dismissing a claim under RESPA because plaintiff's claim was unsupported by fact);

*Corazzini v. Litton Loan Servicing LLP*, 1:09–cv–199 (MAD/ATB), 2010 WL 6787231, at *12

(N.D.N.Y. June 15, 2010) (noting that "the courts have consistently dismissed complaints under

RESPA if they do not allege actual damages or state merely that in a conclusory fashion the

defendant caused damages to the plaintiff."); *Roth v. CitiMortgage, Inc.,* No. 12–CV–2446, 2013

WL 5205775, at *7 (E.D.N.Y. Sept. 11, 2013) (RESPA claim failed because plaintiff failed to

plead actual financial damages or any facts to support that the alleged violations were the

proximate cause of emotional harm).

Claimant fails to plead facts in support of the Claim which, if true, demonstrate a right to relief against Ditech under any statute. As such, he fails to state a claim for relief against Ditech. *See Hammer v. Supreme Ct. of U.S.*, No. 05 CIV. 4137 (RJH), 2005 WL 1946038, at *1 (S.D.N.Y. Aug. 11, 2005) (noting that "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory" under Rule 12(b)(6) (citing *Balistreri v. Pacifica Police Department*, 901 F .2d 696, 699 (9th Cir.1990)); *Rice v. U.S. Supreme Court*, 2003 WL 22999539, No. 03 Civ. 55821(CRB), at *2 (N.D.Cal.2003) (dismissing pro se plaintiff's claims against the Supreme Court with prejudice because they were so "unsubstantial as to be devoid of merit").

<u>Whether Claimant Pleads Fraud with Particularity</u>

Claimant asserts that Ditech "fraudulently" received payments from him and defrauded him. *See* Proof of Claim 2866 at 5. Specifically, he claims that Ditech "fraudulently took a full payment to close a debt then continued to charge me for a debt it had supposedly closed." *Id.* However, Claimant fails to plead fraud with particularity as required under the Federal Rules of Civil Procedure.

To assert a claim of fraud or mistake, a party must state "with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To plead a fraud claim, a party must provide more than general allegations of fraud, and "[e]ven where fraud is not an element of the claim, the allegations must satisfy [Rule 9(b)] if the claim is based on fraudulent conduct." *In re AlphaStar Ins. Grp. Ltd.,* 383 B.R. 231, 257 (Bankr. S.D.N.Y. 2008). When pleading scienter, parties "must allege facts that give rise to a strong inference of fraudulent intent." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 179 (2d Cir. 2004). A party can meet this standard by "(1) alleging facts to show that defendant[ ] had both motive and

19

opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *PetEdge, Inc. v. Garg*, No. 1:15-CV-9606-GHW, 2017 WL 564088, at \*9 (S.D.N.Y. Feb. 10, 2017) (alteration in original) (internal citation omitted). "To qualify as 'strong,' the inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of the other explanations." *In re AlphaStar Ins. Grp. Ltd.,* 383 B.R. at 257.

Claimant makes the conclusory allegation that Ditech defrauded him. He provides no facts to support this contention. Specifically, Claimant fails to allege facts to show who, what, when, where and how Ditech committed fraud. In his Claim and Responses, Claimant fails to provide any facts demonstrating that Ditech had either motive or opportunity to commit fraud, or facts to constitute a strong circumstantial evidence of conscious misbehavior or recklessness by Ditech. The alleged fraud claim fails as a matter of law. *See Silvester v. Selene Fin., LP*, No. 18-CV-02425 (PMH), 2021 WL 861080, at \*2 (S.D.N.Y. Mar. 8, 2021) ("Specifically, '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake,' Fed. R. Civ. P. 9(b), 'the who, what, when, where, and how: the first paragraph of any newspaper story.'"). *See also Musalli Factory for Gold & Jewellry Co. v. JPMorgan Chase Bank, N.A.,* 382 F. App'x 107, 108–09 (2d Cir. 2010) (affirming dismissal by the district court and noting that "Rule 9(b) requires that the complaint allege facts with a greater specificity than is evident here. We hold that the complaint fails to allege with sufficient specificity facts that link Gambella, and JPMorgan Chase Bank in turn, to any fraud perpetrated by Boktor and NYF."); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1132 (2d Cir. 1994) (affirming the district court's order dismissing claims for failure to plead fraud with the particularity required by Rule 9(b)).

Whether Ditech's Failure to Respond to the Subpoena
<u>Provides Grounds for Relief Against Ditech</u>

On June 22, 2020, Claimant purported to serve a subpoena on Ditech. It is undisputed that Ditech failed to respond to the subpoena. Claimant argues the failure "alone is sufficient to prevent disallowance/ expungement of claim 2884." *See* Reply ¶ 34; *see also* May 27, 2021 Hr'g. Tr. 53: 1-5 [ECF No. 3423]. The Court finds no merit to that contention.

First, the use of a subpoena is procedurally improper at this stage of the pleadings. The Sufficiency Hearing was a non-evidentiary hearing. The Claims Procedures Order bars discovery with respect to a Contested Claim prior to a Sufficiency Hearing. *See* Claims Procedures Order at 5 (noting that "[d]iscovery with respect to a Contested Claim will not be permitted until either (a) the Court has held a Sufficiency Hearing and determined that the Contested Claim states a claim that could be allowed and should not be dismissed pursuant to Bankruptcy Rule 7012 or (b) the Estate Representatives have served the relevant Claimant a Notice of Merits Hearing with respect to the Contested Claim."). For that reason, Ditech's failure to comply with the discovery request does not support Claimant's claim for relief.

Moreover, and in any event, Claimant fails to comply with Rule 45(a)(3), as incorporated through Bankruptcy Rule 9016. That rule requires that a subpoena be signed either by the Clerk of Court or an attorney authorized to practice in this Court. Additionally, Rule 45(b)(1) states that a party is not permitted to serve a subpoena. The Claimant signed and served the subpoena. The Claimant, an individual, is not an attorney. Therefore, the subpoena is procedurally defective. Finally, contrary to Claimant's assertion, Ditech's failure to respond to the subpoena is not grounds *per se* to overrule the Objection. *See* Reply ¶ 34; *see also* May 27, 2021 Hr'g. Tr. 53: 1-5 [ECF No. 3423].

21

The Court disallows and expunges the Claim for the additional reason that, as set forth above, it fails to state a claim for relief against Ditech. Because the Court concludes that the Claim must be expunged, it need not, and does not consider the balance of the Estate Representatives' arguments in support of their claims for relief.

## Conclusion

Based on the foregoing, the Court sustains the Objection and disallows and expunges the Claim.

IT IS SO ORDERED.

Dated:  New York, New York
June 25, 2021

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge