NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x

In re:                                                                   :       Case No. 19-10412 (JLG)
                                                                            :       Chapter 11
Ditech Holding Corporation, *et al.*,                        :
                                                                            :
                                                         Debtors.[1]   :       (Jointly Administered)
                                                                            :
------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER DENYING CLAIMANT JAMES BEEKMAN'S REQUEST FOR LEAVE TO AMEND

**A P P E A R A N C E S :**

Mr. James Beekman
*Appearing Pro Se*
427 9th Street
West Palm Beach, FL 33401

WEIL, GOTSHAL & MANGES, LLP
*Attorneys for Plan Administrator*
767 Fifth Avenue
New York, New York 10153
By:    Ray C. Schrock, P.C.
          Richard W. Slack, Esq.
          Sunny Singh, Esq.

JENNER & BLOCK LLP
*Attorneys for the Consumer Claims Representative*
919 Third Avenue
New York, NY 10022
By:    Richard Levin, Esq.

---

[1]      The confirmation of the Debtors' Third Amended Joint Chapter 11 Plan created the Wind Down Estates. The Wind Down Estates, along with the last four digits of their federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

**HON. JAMES L. GARRITY, JR.**
<u>**U.S. BANKRUPTCY JUDGE**</u>

## Introduction

James Beekman (the "**Claimant**") filed a proof of claim against Ditech Financial LLC

f/k/a Green Tree Servicing LLC ("**Ditech**) in these jointly administered chapter 11 cases. On

February 9, 2021, the Court sustained the objection to the Claim filed by the Plan Administrator

and Consumer Representative (collectively, the "**Estate Representatives**") and expunged and

disallowed the Claim. *See* Memorandum Decision and Order Sustaining the Ninth Omnibus

Objection (No Basis Consumer Creditor Claims) With Respect to Claim of James Beekman (the

"**Decision**") [ECF No. 3218].[2] The matter before the Court is the Claimant's Request For Leave

To Amend the Claim (the "**Request to Amend**") [ECF No. 3361]. The Estate Representatives

oppose the request. For the reasons stated herein, the Court denies it.

## Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States

District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This

is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

On February 11, 2019, Ditech Holding Corporation (f/k/a Walter Investment

Management Corp.), and certain of its affiliates (the "**Debtors**") filed petitions for relief under

chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). On February 22,

2019, the Court entered an order fixing April 1, 2019 as the deadline for non-governmental units

to file a proof of claim in the chapter 11 cases (the "**General Bar Date**"). On March 27, 2019,

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Decision. The designation "ECF No. ___" refers to a document filed on the electronic docket in the Debtors' chapter 11 bankruptcy case (No. 19-10412-JLG).

the Court extended the General Bar Date to April 25, 2019, and again to June 3, 2019, but only

with respect to consumer borrowers (the "**Second Extended Consumer Bar Date**").  By order

dated September 26, 2019, the Debtors confirmed their Third Amended Joint Chapter 11 Plan. In

the Confirmation Order, the Court set the deadline for the filing Administrative Expense Claims

to thirty-five days from the date of service of the notice of entry of the Confirmation Order.

Between March 29, 2019 and October 4, 2019, the Debtors served Claimant's counsel of

record in his Florida state court action with notice of the bankruptcy proceedings, including

notice of the Second Extended Consumer Bar Date and confirmation of the Plan.  None of these

notices were returned as undelivered.  On October 9, 2019, after the Second Extended Consumer

Bar Date expired, the Claimant filed proof of claim 24376 (the "**Initial Claim**") against Ditech.

On November 8, 2019, the Claimant filed proof of claim 24609 (the "**Claim**"), which superseded

and replaced the Initial Claim.  The Claim seeks a total of $9 million in damages consisting of a

$3 million administrative priority claim and $6 million priority expense status under sections

507(a)(7) and (a)(10) of the Bankruptcy Code.

On January 17, 2020, the Estate Representatives objected to the allowance of the Claim

in their Ninth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims) (the

"**Objection**") [ECF No. 1741]. On February 20, 2020, Claimant filed his Objection to Proof of

Claim and Request for Classification Claim Number: 24609 (the "**Response**") [ECF No. 1902].

The Court conducted a Sufficiency Hearing on the Objection and on February 9, 2021, the Court

sustained the Objection and disallowed and expunged the Claim. The Court found that Claimant

failed to state a claim against Ditech because, among other things, the allegations of potential

wrongdoing by lenders occurred several years prior to Ditech's appointment as servicer of

Claimant's Loan. *See* Decision at 14-15 ("The events that give rise to Beekman's claims against

2

Ditech for its alleged misrepresentations arose prior to 2013, but Ditech did not begin to service the Loan until February 2016. In short, Beekman fails to state a claim for relief against Ditech for fraudulent misrepresentation, and he cannot do so."); 18 ("Moreover, Beekman cannot plausibly state a fraud claim against Ditech. That is because the source of Beekman's complaint are actions taken by the lenders prior to Ditech's appointment as servicer of the Loan."); and 20 ("All of the actions Beekman complains of pre-date Ditech's involvement as servicer. As such, he cannot state a claim for the intentional infliction of emotional distress against Ditech Financial.").

On February 22, 2021, Claimant filed a Motion for Rehearing asking the Court to reconsider the Decision (the "**Motion for Rehearing**") [ECF No. 3261]. On April 26, 2021, the Estate Representatives filed the Objection/Joint Opposition of Plan Administrator and Consumer Representative to Motion for Rehearing [ECF No. 3341]. On June 1, 2021, the Court denied the Motion for Rehearing. *See* Memorandum Decision and Order Denying Motion for Rehearing [ECF No. 3424].

On April 29, 2021, Claimant filed the Request to Amend. On May 20, 2021, the Estate Representatives filed their Joint Opposition to the Request to Amend (the "**Opposition**") [ECF No. 3394]. On May 24, 2021, Claimant filed an Affidavit In Support of Motion to Amend (the "**Beekman Affidavit**") [ECF No. 3401], which attaches a replacement Exhibit A to the Request to Amend.[3] On May 27, 2021, the Court held a hearing on the Request to Amend. At the hearing, the Court authorized Claimant to serve and file copies of documents filed by Ditech in the State of Florida that Claimant believes supports the Claim. *See* Transcript of May 27, 2021 Hearing

---

[3] On June 2, 2021, Claimant filed the Claimant James Beeman's Notice Of Filing Affidavit In Support Of Motion To Amend (the "**Beekman Supplement**") [ECF No. 3451], which is substantively identical to the Beekman Affidavit and its attachment.

(the "**Transcript**") at 93:6-8, 93:24-94:2 [ECF No. 3423]; *see also* Minutes of Proceedings, May 27, 2021 [ECF No. 3342]. On June 3, 2021, Claimant submitted a Notice of Filing (the "**Notice**") [ECF No. 3437], attaching two assignments of mortgage. One is recorded on August 2, 2016 from Residential Credit Solutions, Inc. ("**RCS**") to Ditech (the "**2016 Assignment of Mortgage**"), and the other is recorded on December 9, 2019 from Ditech to Specialized Loan Servicing, LLC ("**SLS**") (the "**2019 Assignment of Mortgage**" and with the 2016 Assignment of Mortgage, the "**2016 and 2019 Assignments of Mortgage**"). The Court also authorized the Estate Representatives to serve and file a supplemental memorandum addressing any submission made by Claimant. *See* Transcript at 94:7-10; *see also* Minutes of Proceedings, May 27, 2021. On June 18, 2021, the Estate Representatives filed their Joint Supplemental Memorandum of Plan Administrator and Consumer Representative in Opposition to Request For Leave To Amend (the "**Reply**") [ECF No. 3463].

On June 24, 2021, the Court heard additional argument on the Request to Amend. At that time, the Court requested the Estate Representatives to supplement the record with (i) a highlighted excerpt of Federal Home Loan Mortgage Corporation's *Freddie Mac Default-Related Legal Services Reference Guide*, and (ii) a highlighted excerpt of the servicing guide of Federal National Mortgage Association, specifically *A2-1-0, Execution of Legal Documents*. On June 28, 2021, in response to that request, the Estate Representatives served and filed their Joint Supplemental Submission In Opposition To Request For Leave To Amend (the "**Joint Supplemental Submission**") [ECF No. 3482].

### Legal Standard

The standards applicable to the Request to Amend are identical to those relevant to a motion to amend a complaint under Federal Rule 15 and Bankruptcy Rule 7015. *See In re*

*McLean Industries, Inc.,* 121 B.R. 704, 710 (Bankr. S.D.N.Y. 1990) ("The test under Rule 15 is

basically the same as that developed in the case law for amending claims in bankruptcy...."). *See*

*also In re Drexel Burnham Lambert Group, Inc.,* 159 B.R. 420, 425 (Bankr. S.D.N.Y. 1993)

("[T]he analysis for amendment of a proof of claim is identical to that of Rule 15 regardless of

whether the rule is expressly adopted by the Bankruptcy Court."); *Integrated Resources, Inc. v.*

*Ameritrust Company National Assoc., et al.,* 157 B.R. 66, 70 (Bankr. S.D.N.Y. 1993) ("While

Federal Rule 15 which governs amendment to pleadings is not directly applicable to claims

proceedings under Bankruptcy Rule 9014, the determination regarding amendment parallels

considerations under that rule.").

"Amendments [to pleadings] are favored as a general matter . . . in order to facilitate a

proper decision on the merits." *McCallister Bros. Inc. v. Ocean Marine Indem. Co.,* 742 F. Supp.

70, 80 (S.D.N.Y. 1989) (internal quotation marks omitted) (citations omitted). Federal Rule 15

provides that leave to amend the pleadings should be "freely give[n] ... when justice so requires."

Fed. R. Civ. P. 15(a)(2). Nonetheless, it is settled that "futility of amendment" is a sufficient

basis to deny a motion to amend a complaint. *See State Teachers Ret. Bd. v. Fluor Corp.,* 654

F.2d 843, 856 (2d Cir. 1981) ("Reasons for a proper denial of leave to amend include undue

delay, bad faith, futility of amendment, and … prejudice to the opposing party."). A proposed

amendment is considered to be 'futile' "if the proposed amendment fails to state a legally

cognizable claim or fails to raise triable issues of fact." *AEP Energy Servs. Gas Holding Co. v.*

*Bank of Am., N.A.,* 626 F.3d 699, 726 (2d Cir. 2010) (citing *Milanese v. Rust–Oleum Corp.,* 244

F.3d 104, 110-11 (2d Cir. 2001)). That standard applies equally to a request to amend a proof of

claim. *See In re Drexel Burnham Lambert Grp., Inc.,*159 B.R. at 426 (citing *Foman v. Davis,*

371 U.S. 178, 182 (1962)). That is so, even where, as here, the Claimant is acting *pro se. See*

*Terry v. Inc. Vill. of Patchogue Board of Trustees*, 826 F.3d 631, 633 (2d Cir. 2016) ("Although district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings, leave to amend need not be granted when amendment would be futile.").

## Discussion

The Claimant seeks leave to assert a claim against Ditech pursuant to Fla. Stat. Ann. § 817.535(8) (the "**Florida Statute**"). *See* Request to Amend ¶ 3. In relevant part, the Florida Statute states that

> Any person adversely affected by an instrument filed in the official record which contains a materially false, fictitious, or fraudulent statement or representation has a civil cause of action under this section without regard to whether criminal charges are pursued under [§ 817.535(2)].

Fla. Stat. Ann. § 817.535(8)(a).[4] For these purposes, the term "file" means "to present an instrument for recording in an official record or to cause an instrument to be presented for recording in an official record." *Id.* § 817.535(1)(a). The term "filer" means "the person who presents an instrument for recording in an official record or causes an instrument to be presented for recording in an official record." *Id.* § 817.535(1)(b). To state a claim for "slander of title" under this section, the plaintiff must allege and prove the following elements:

> (1) A falsehood (2) has been published, or communicated to a third person (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff and (4) in fact, the falsehood

---

[4] As relevant, § 817.535(2) of the Florida Statute states that

> A person who files or directs a filer to file, with the intent to defraud or harass another, any instrument containing a materially false, fictitious, or fraudulent statement or representation that purports to affect an owner's interest in the property described in the instrument commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat. Ann. § 817.535(2)(a). As such, that section "creates a civil action in favor of any person adversely affected by an instrument filed in an official record which contains such a material false statement without regard to whether any criminal charges were pursued against the offender." *Brooklands, Inc. v. Sweeney,* No. 14-81298-CIV, 2015 WL 1930239, at *2 n. 3 (S.D. Fla. Apr. 28, 2015).

does play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages are proximately caused as a result of the published falsehood.

*McAllister v. Breakers Seville Ass'n, Inc.*, 981 So. 2d 566, 573 (Fla. Dist. Ct. App. 2008) (citations omitted).

In his Request to Amend, Claimant asserts that the alleged fraudulent misrepresentations were "made by prior servicers" and "occur[ed] prior to [Ditech's] appearance as servicer." He does not complain that Ditech filed any instrument in Florida's official record. *See* Request to Amend ¶¶ 3-4. Thus, on its face, the Request to Amend fails to state a cognizable claim under the Florida Statute because Claimant does not contend that Ditech is a "filer" or that it "filed" an instrument in the Florida official record. Claimant cannot state a claim for relief under the Florida Statute. Accordingly, it would be futile to authorize Claimant to amend the Claim to assert a claim under the Florida Statute because, as amended, the Claim could not survive a motion to dismiss. *See Brooklands, Inc. v. Sweeney*, No. 14-81298-CIV, 2015 WL 1930239, at *3 n.5 (S.D. Fla. Apr. 28, 2015) (finding claims for violation of § 817.535(8)(a) were appropriately dismissed because the instrument, a UCC lien, was not filed within the "official record" of the State of Florida).

In this regard, *Drexel* is instructive. There, appellant filed a claim alleging that Drexel improperly liquidated his margin account. *In re Drexel Burnham Lambert Group, Inc.*, 159 B.R. at 421. After the bankruptcy judge expunged the claim for lack of merit, appellant moved to amend the claim to include evidence of an oral agreement between appellant and Drexel to settle the claim – an agreement Drexel allegedly violated. *Id*. The court denied the motion to amend because "a claim under a purported settlement agreement not memorialized in a writing is unenforceable," making the amendment futile. *Id*. at 427. Here, Claimant's request to amend the

Claim is equally futile, because, as a matter of law, he cannot state a claim for relief under the Florida Statute. As such, the Court denies the Request to Amend. *See Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164-65 (2d Cir. 2015) ("A proposed amendment to a complaint is futile when it could not withstand a motion to dismiss.") (internal quotation marks omitted). *See also Krys v. Pigott*, 749 F.3d 117, 134 (2d Cir. 2014) ("Leave to amend may properly be denied if the amendment would be futile.") (citation omitted).

In reaching this conclusion, the Court notes that notwithstanding that the Florida Statute applies only to the actual filer of a false document and Ditech is not alleged to be a "filer," Claimant argues that there are grounds for holding Ditech liable under the Florida Statute. He contends that Ditech conspired with prior mortgage servicers in advancing fraudulent assignments of mortgage, and that Ditech knowingly ratified and approved the fraudulent loan records generated by prior servicers. The Court considers those matters below.

Whether Claimant Can Demonstrate That
Ditech Ratified Acts Of Prior Servicers

Claimant asserts that the first reason that Ditech is responsible for the effects of the misrepresentations occurring prior to its appearance as servicer is that it has ratified and approved the loan records generated by prior servicers, "including but not limited to Indymac Bank, FSB, Indymac Loan Services, One West Bank and Ocwen [Loan Servicing, LLC] which contain the misrepresentations."  Request to Amend ¶ 4. Claimant maintains that Ditech has made affirmative representations that the records are accurate, thereby assuming the benefit of those records and, as such it is responsible for any liability which may arise from those records, including, but not limited to instruments recording in the official records of Palm Beach County, Florida. *Id.*

As support for his contention, Claimant cites to the Amended Notice of Filing Affidavit of Stewart Derrick ("Derrick") in Support of Renewed Motion for Summary Judgment (the "**2019 Ditech Affidavit**")[5] and a "volume of so-called loan records." *Id.* ¶ 5, Ex. A. In reviewing that affidavit, the Claimant asserts that Derrick testified under oath "to the true intentions of Ditech's predecessors with regard to the assignments of mortgage." *Id.* ¶ 7. He says that Ditech's representative, Derrick, acting on behalf of Ditech and with Ditech's "full authorization and authority, would only have personal knowledge of the intentions of the companies named in the assignments from secret or undisclosed communications with the other persons and companies or if they were all acting in furtherance of an express conspiracy." *Id.* He maintains that "[e]ither way" he is "able to and has, or will if permitted to amend, set forth a plausible claim that Ditech is liable for the conduct of which Claimant complains." *Id.* As support, he points to the fact that in the 2019 Ditech Affidavit, Derrick states that

> Although there have been numerous Assignments of Mortgage among the loan servicers for this loan [sic], the Assignments of Mortgage <u>did not transfer ownership of the Note and Mortgage to anyone but [Federal Home Loan Mortgage Corporation ("FHLMC")]</u>.

*Id.* ¶ 9 (quoting 2019 Ditech Affidavit ¶ 8.) He asserts that the statement is false because each of the prior assignments among the loan servicers "appear to transfer ownership of the Note and/or Mortgage." *Id.* ¶ 10.[6] The Court does not credit that argument. The highlighted excerpts of

---

[5] The 2019 Ditech Affidavit was filed with the Circuit Court of the Fifteenth Judicial Circuit In And For Palm Beach County, Florida in the matter *Federal Home Loan Mortgage Corp. v. James G. Beekman, et al.* no. 50 2009 CA001458 XXXX MB.

[6]     As support for that contention, Claimant asserts, as follows:

> 11. The first assignment was prepared by David J. Stern, Esq., who is nationally infamous for generating false, fraudulent and fictitious assignments of mortgage.

> 12. The second assignment, on its face, represents that it is a transfer, not of any "servicing rights," but instead, the "full benefit" of the mortgage. It states that "said Assignor hereby grants and

Federal Home Loan Mortgage Corporation's *Freddie Mac Default-Related Legal Services Reference Guide,* and the servicing guide of Federal National Mortgage Association, specifically *A2-1-0, Execution of Legal Documents*, are clear that FHMLC and Fannie Mae call for loan servicers to appear on the land records as the record mortgagee to facilitate performance of the servicer's contractual responsibilities. *See* Joint Supplemental Submission, Exs. A, B. The loan servicers are not transferred ownership interests in the Note and/or Mortgage. They are listed as mortgagees to facilitate the loan servicer's performance of its contractual duties. Thus, there is no merit to Claimant's assertion that Ditech has ratified the wrongdoing of prior servicers.

Whether Claimant Can Demonstrate That Ditech
Conspired With Prior Servicers To Injure Claimant

Claimant contends that by filing the 2019 Ditech Affidavit, and by basing a claim of standing in the Florida foreclosure action upon one or more of the false and fraudulent statements, which he alleges Ditech knows to be false and fraudulent, "Ditech is acting in furtherance of a conspiracy to unlawfully deprive Claimant of his properties by presenting fabricated evidence and recording instruments in the official records containing materially false or fictitious representations." Request to Amend ¶ 15. He asserts that the "other participants in

---

conveys unto the said Assignee, the Assignor's interest under the Mortgage." The Assignee is Ocwen Loan Servicing, LLC.

13. The third assignment shows, in exchange for "value received," a transfer of "all beneficial interest under a certain Mortgage" on Claimant's property. The Assignor is Ocwen and the Assignee is Residential Credit Solutions, Inc.

14. In the fourth assignment, the "party of the first part" (Assignor) is Residential Credit Solutions. Inc. The "party of the second part" (Assignee) is Ditech Financial, LLC. The fourth assignment attests that Assignor "does hereby grant, bargain, sell, assign. transfer and set over unto" the Assignee "a certain mortgage, " "to have and to hold the same unto the said party of the second part, heirs, legal representatives, successors and assigns forever."

Request to Amend ¶¶ 11-14.

the conspiracy include [Mortgage Electronic Registration Systems, Inc. ("MERS")], FHLMC,

IndyMac Bank, FSB; OneWest Bank, and Ocwen Loan Servicing, LLC." *Id.*

Claimant argues that the law of conspiracy makes each conspirator liable for the acts of

the other conspirators which acted in furtherance of the conspiracy. *Id.* ¶ 16. He says that Ditech

is responsible for the acts of the prior servicers because "persons joining a conspiracy, with

knowledge of its general purpose and scope may be held liable for all activity in furtherance of

the conspiracy which took place before they joined it." *Id.* (quoting *James v. Nationsbank Tr. Cp.*

*(Fla.) Nat. Assoc.,* 639 So. 2d 1031, 1032 (Fla. Dist. Ct. App. 1994). However, Claimant

misplaces his reliance on *James* because the Florida court rejected that proposition. In *James,*

Nationsbank purchased appellants' notes and mortgages from GDC, which was indicted for

criminal fraud shortly after the purchase. *Id.* After the indictment, the appellants refused to pay

their mortgages on the grounds that they had been fraudulently induced to purchase their homes

through a conspiracy to defraud by GDC and Nationsbank, among others. *Id.* In rejecting that

argument, the Florida court held that mere knowledge of fraud did not subject Nationsbank to

liability because "the fraud and any conspiracy to defraud the appellants took place, if at all, at

the time appellants purchased their homes and delivered their notes and mortgages," which was

prior to the assignment of the notes and mortgages to Nationsbank. *Id.* at 1033.

The situation here is similar to that in *James*. In the Decision, in disallowing the Claim,

the Court found, in part, that "[t]he events that give rise to Beekman's claims against Ditech

Financial for its alleged misrepresentations arose prior to 2013, but Ditech Financial did not

begin to service the Loan until February 2016." Decision at 14-15. Just as the appellant in *James*

failed to demonstrate grounds for holding Nationsbank liable as a conspirator for bad acts

committed before Nationsbank purchased the notes and mortgages, Claimant cannot demonstrate

that Ditech is responsible for the alleged wrongdoing of its predecessor servicers that occurred more than three years before it began to service Claimant's mortgage. *See Baxter v. State*, 586 So. 2d 1196, 1199 (Fla. Dist. Ct. App. 1991) ("It has been well settled that mere presence at the scene of an offense coupled with knowledge of the offense is insufficient to establish a conspiracy.") (quoting *Jimenez v. State*, 535 So. 2d 343, 344 (Fla. Dist. Ct. App. 1988)).

Claimant also argues that paragraph 7 of the 2019 Ditech Affidavit strengthens the plausibility of his assertion that Ditech has adopted the actions of all previous servicers on the subject loan or loans. Request to Amend ¶ 17. In the Request to Amend, he contends that paragraph 7 of the 2019 Ditech Affidavit reads, as follows:

> I have personal knowledge of Ditech's boarding process and process of incorporating prior service [sic] business records. During the servicer transfer, when Ditech obtains the business records from a prior servicer, it is **Plaintiff's** standard business procedure to review said documents for accuracy during as [sic] those documents are relied upon by Ditech. Once this review is completed, Ditech incorporates those records into its own business records and said documents are stored in Ditech's computer system.

*Id.* ¶ 17 (emphasis in original). From there, Claimant argues that

> The Plaintiff in the case is FHLMC; Ditech appears to testify that FHLMC has a standard business practice of reviewing loan records for accuracy. Here again is a badge of fraud emblematic of participation in the conspiracy of which Claimant complains. It is a false statement about a material fact under oath, and it concerns the roles, and relationships to the subject loan, of the various entities.

*Id.*

The Estate Representatives correctly assert that Claimant does not accurately quote the 2019 Ditech Affidavit. *See* Reply ¶¶ 17-19. In fact, paragraph 7 of that affidavit does not speak to the "Plaintiff's" standard business practices. It speaks to "Ditech's" procedures, as follows:

> I have personal knowledge of Ditech's boarding process and process of incorporating prior service business records. During the servicer transfer, when Ditech obtains the business records from a prior servicer, it is **Ditech's** standard business procedure to review certain documents for accuracy as those documents

> are relied upon by Ditech. Once this review is completed, Ditech incorporates
> records it receives from the prior servicer into its own business records and said
> documents are stored into Ditech's computer system.

Opposition ¶ 18 (quoting Request to Amend Ex. A ¶ 4) (emphasis in original).

The Claimant is acting *pro* se, and the Court credits his assertion that he mistakenly cited to the wrong affidavit in his papers. In further support of his argument, Claimant submits an affidavit of the same Ditech employee filed in the same Florida state court litigation on or about November 21, 2018 (the "**2018 Ditech Affidavit**"). *See* Beekman Supplement Ex. 1. It mirrors the Claimant's quotation in paragraph 17 of the Request to Amend; *i.e.*, it speaks to the "Plaintiff's" standard business procedure. *Id.* ¶ 7. The Claimant has presented the Court with two affidavits purportedly submitted by the same Ditech employee in the Florida state court litigation involving Claimant's mortgage, one of which seems to be discussing the "Plaintiff's" servicing practices. The Court need not look behind either the 2018 Ditech Affidavit or the 2019 Ditech Affidavit. That is because Florida's litigation privilege precludes the Claimant from relying on an allegedly tortious statement made in another action as a basis for grounds for relief in this matter. Florida's litigation privilege provides immunity for actions that occur in judicial proceedings. *See Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 383 (Fla. 2007) (citing *Myers v. Hodges*, 44 S. 357 (Fla. 1907)). In *Levin, Middlebrooks, Mabie, Thomas, Mayes Mitchell, P.A. v. United States Fire Insurance Co*., 639 So. 2d 606 (Fla. 1994), the Supreme Court of Florida held that the litigation privilege applied to all torts, finding that "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves … tortious behavior ... so long as the act has some relation to the proceeding." *Id*. at 608. Applied here, this precludes the contradictory, and

potentially tortious, statements in those affidavits from giving rise to a claim outside of the litigation the affidavits were submitted.

The 2016 and 2019 Assignments Of Mortgage

In his Notice, to bolster his contention that Ditech has conspired with the prior servicers of his mortgage, Claimant included the 2016 and 2019 Assignments of Mortgage. On their face, the assignments contain no apparent misrepresentations, and Claimant does not point to any such misrepresentations. The assignments do not support Claimant's conclusory assertion that Ditech knew that prior assignments of mortgage that transferred servicing were fraudulent. *See* Request to Amend ¶¶ 4, 15. Mortgage assignments are frequently filed in connection with a transfer of servicing when mortgage accounts are in default or foreclosure. As set forth in the 2019 Employee Affidavit, loan servicers commonly utilize assignments of mortgage to ensure that "they receive notices, such as tax delinquencies, and have the authority to act as the mortgagee." *See* 2019 Employee Affidavit ¶ 8. For that reason, it is common practice for the receiving servicer to file an assignment of mortgage for the prior servicer. That is what happened with respect to the 2016 and 2019 Assignments of Mortgage. The 2016 Assignment of Mortgage reflects the assignment of the servicing of Claimant's mortgage from RCS to Ditech. It is executed by a then Assistant Vice President of Ditech, as attorney-in-fact for RCS, the prior servicer of Claimant's mortgage. *See* Notice at 2. Likewise, the 2019 Assignment of Mortgage reflects a transfer of servicing of the Claimant's mortgage from Ditech to SLS. *See* Notice at 3-4. The 2019 Assignment of Mortgage was filed by the subsequent servicer, specifically Rebecca Higley, Vice President of First American Mortgage Solutions. *Id.* The assignments merely show that Ditech began to service Claimant's mortgage in 2016 and transferred the servicing of Claimant's loan to SLS in 2019.

On August 22, 2016, approximately three weeks after Ditech filed the 2016 Assignment of Mortgage in connection with the transfer of servicing from RCS to Ditech, Claimant commenced a civil action in the United States District Court for the Southern District of Florida (the "**Florida Court**") against FHLMC, the owner of Claimant's note and mortgage, and approximately 35 entities and individuals, including Indymac Bank, Indymac Mortgage Services, OneWest Bank, Ocwen Financial, LLC and Ditech as "agents, multiple parties, representatives, hires and servicers" for FHLMC. *See* Reply Ex. A, Civil Docket, *Beekman v. Federal Home Loan Mortgage Corporation*, 16-CV-81477-KAM (S.D. Fla. Aug. 22, 2016) (the "**Florida Action**"). The Florida Court dismissed the initiating complaint, with leave to amend, because it "fail[ed] to plead sufficient facts for the Court to be able to draw the reasonable inference that the defendant is liable for the misconduct alleged." Reply Ex. C, Order Granting Defendant's Motion to Dismiss (the "**Florida Dismissal Order**") at 1-2. Following the dismissal, the Claimant filed an amended complaint with the Florida Court (the "**Florida Amended Complaint**"). That complaint alleges eight causes of action: breach of contract, fraud, intentional infliction of emotional distress, RICO, unjust enrichment, and violations of the Florida's Deceptive Practices Act and 15 U.S.C. § 1692. *Id.* at 1. As relevant herein, Claimant alleged that FHLMC committed fraud and made misrepresentations by filing multiple fraudulent assignments of mortgage in a separate pending Florida state court foreclosure action against Claimant (*see* Florida Amended Complaint ¶ 72); and that other assignments of mortgage filed in Florida in connection with transfer of the servicing of his loan were fraudulent, including those to Ocwen Loan Servicing, LLC ("**Ocwen**") and RCS. *See id.* ¶¶ 90, 91, 97, 102-106.

Claimant did not specifically identify the 2016 Assignment of Mortgage to Ditech as a document relevant to his Florida Amended Complaint. However, he alleged that each of the

previous assignments of mortgage filed in Florida in connection with the transfer of the servicing

of his loan were fraudulent, including those to Ocwen and RCS (Ditech's predecessor), based on

the same allegations contained in the Claim: that the original assignment of the mortgage was

improper and fraudulent. *See id.* ¶¶ 90, 91, 97, 102-106. Further, in the Request to Amend,

Claimant specifically references and attaches the assignments of mortgage that preceded the

2016 Assignment of Mortgage (collectively, the "**Pre-2016 Assignments of Mortgage**"). *See*

Request to Amend ¶¶ 11-13, Request to Amend Ex. A at 10-22. Claimant's theories of liability

in his Request to Amend with respect to the 2016 and 2019 Assignments of Mortgage explicitly

rely on the arguments made in the Florida Action that the Pre-2016 Assignments of Mortgage are

improper and fraudulent. *See id.* ¶ 4 ("The first reason that Ditech Financial is responsible for the

effects of the misrepresentations occurring prior to its appearance as servicer is that it has ratified

and approved the loan records generated by prior servicers, including but not limited to Indymac

Bank, FSB, IndyMac Loan Services, OneWest Bank and Ocwen which contain the

representations . . . It is also therefore naturally responsible for any liability which may arise

from those records, including but not limited to instruments records in the official records of

Palm Beach County, Florida."); *id.* ¶15 ("[B]y basing a claim of standing in the foreclosure

action upon one or more of these false and fraudulent instruments, which it knows to be false and

fraudulent, Ditech is acting in furtherance of a conspiracy to unlawfully deprive Claimant of his

properties by presenting fabricated evidence and recording instruments in the official records

containing materially false or fictitious representations. Claimant alleges that other participants

in the conspiracy include MERS, FHLMC, IndyMac Bank, FSB; OneWest Bnk [sic], FSB,

Ocwen Loan Servicing, LLC.")

On November 2, 2017, the Florida Court dismissed the Florida Amended Complaint. *See* Florida Dismissal Order at 1. The court dismissed the complaint against FHLMC, with prejudice. *See id.*, n.1. It also, *sua sponte,* dismissed the complaint without prejudice as to the other approximately 35 defendants, including Ditech. Claimant then appealed to the Eleventh Circuit Court of Appeals, which affirmed the Florida Dismissal Order and denied Claimant's request for panel rehearing on October 29, 2020 and rehearing *en banc* on November 19, 2020. *See* Reply Ex. D, Court of Appeals Docket # 19-11061 at 5, *Beekman v. Federal Home Loan Mortgage Corporation,* 19-11061 (11th Cir. Mar. 21, 2019). Thus, the Florida Action fully resolved the issues underlying Claimant's assertion that the 2016 and 2019 Assignments of Mortgage were improper or fraudulent.

"Under federal law, a party is collaterally estopped from relitigating an issue if a four-part test is met: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Westchester v. U.S. Dep't of Hous. & Urb. Dev.*, 778 F.3d 412, 417 (2d Cir. 2015) (quoting *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (internal quotation marks omitted)). Each element of the test is met here. First, in support of the Florida Amended Complaint, Claimant specifically alleged that the Pre-2016 Assignments of Mortgage were improper and fraudulent. He makes the same allegations in paragraphs 10-13 of the Request to Amend. Following briefing by both the Claimant and movant (*see* Reply Ex. A), the motion to dismiss the Florida Amended Complaint was granted. Further, the Florida Court's decision was affirmed by the Eleventh Circuit following Claimant's appeal, and the circuit court denied Claimant's motions for panel rehearing and rehearing *en banc*. *See* Reply Ex. D. Thus,

the second and third elements for collateral estoppel are satisfied here, because Claimant actually litigated the issue of whether the Pre-2016 Assignments of Mortgage were improper and fraudulent,[7] and was afforded a full and fair opportunity to do so. Finally, in dismissing the Florida Amended Complaint, the Florida Court held that none of the allegations were sufficient to state a claim upon which relief could be granted. As such, Claimant is barred under the doctrine of collateral estoppel from raising the issue of whether the prior assignments of mortgage were fraudulent in connection with the Claim.

Although Ditech was included in the Florida Amended Complaint as a defendant, Ditech was never served by Claimant and did not otherwise appear in the Florida Action. *See* Reply Ex. A at 1. Claimant's failure to serve Ditech with the Florida Amended Complaint is of no moment in the application of the doctrine of collateral estoppel here. *See Salvador v. Touro Coll. & Univ. Sys.*, 749 F. App'x 39, 42 (2d Cir. 2018) ("[C]ollateral estoppel [may] be invoked, either defensively or offensively by a nonparty to the prior litigation.") (quotations omitted). As discussed above, the issue that was litigated and decided in the Florida Action is the same issue upon which Claimant now contends he has a claim under the Florida Statute. That is, whether the Pre-2016 Assignments of Mortgage were improper and fraudulent. *See* Request to Amend ¶¶ 4, 15. Claimant's theories do not rest upon any independent wrong committed by Ditech. Claimant makes no specific allegations with respect to the 2016 and 2019 Assignments of Mortgage. Rather, Claimant's theories rest on his assertion that the Pre-2016 Assignment of Mortgages were fraudulent and Ditech allegedly knew that they were fraudulent. *See id.* ¶ 15. As the Florida Court determined that the Pre-2016 Assignments of Mortgage were not fraudulent, that issue has

---

[7] Dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is a "judgment on the merits." *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3 (1981).

been fully litigated, and Claimant is now collaterally estopped from raising the same issue here

in support of the Request to Amend.

Whether Claimant Has Demonstrated That
He Can Plead Fraud With Particularity

Even assuming, *arguendo*, the Claimant is not collaterally estopped from relying upon

allegations regarding the prior assignments of mortgage, Claimant has failed to adequately plead

a claim for relief against Ditech. Similar to the pleading defects addressed by the Decision, the

Request to Amend does not adequately state a claim against Ditech. Moreover, the application of

the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure

underscores such inadequacies.[8]

In reviewing claims brought under the Florida Statute, courts have applied the heightened

pleading standard under Rule 9(b). *See Dragash v. Fed. Nat'l Mortg. Ass'n*, No. 8:15-CV-847-T-

TGW, 2016 WL 9632958, at *3 (M.D. Fla. Mar. 14, 2016), *aff'd*, 700 F. App'x 939 (11th Cir.

2017) (holding that Rule 9(b) applied to plaintiff's allegations that defendant committed fraud in

violation of the Florida Statute). Here, Claimant merely makes the conclusory allegation that the

assignments of mortgage contain false or fraudulent statements, and that Ditech knowingly

"ratified and approved" these fraudulent documents. He provides no facts to support this claim.

The Request to Amend, the Beekman Affidavit, and the Beekman Supplement provide no

support for these allegations and the allegations thus fall short of the pleading requirements for a

fraud claim. *See Silvester v. Selene Fin., LP*, No. 18-CV-02425 (PMH), 2021 WL 861080, at *2

(S.D.N.Y. Mar. 8, 2021) ("Specifically, '[i]n alleging fraud or mistake, a party must state with

---

[8] Bankruptcy Rule 7009 incorporates Rule 9 of the Federal Rules of Civil Procedure. Rule 9 provides that in asserting a claim of fraud or mistake, a party must state "with particularity the circumstances constituting fraud or mistake. Malice, Intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

particularity the circumstances constituting fraud or mistake,' Fed. R. Civ. P. 9(b), 'the who, what, when, where, and how: the first paragraph of any newspaper story.'"). Claimant alleges no facts to show who, what, when, where and how Ditech came to be aware of the fraudulent documents, perpetuated and committed fraud. *See Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622, 626 (2d Cir. 2020) ("To comply with Rule 9(b) as to a claim of fraudulent misrepresentation, the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.") (quotations omitted). Additionally, the Request to Amend, Beekman Affidavit and Beekman Supplement, fail to provide any information to show that Ditech had either motive or opportunity to commit fraud, nor do they provide strong circumstantial evidence of conscious misbehavior or recklessness. Claimant therefore fails to satisfy the requirements of Federal Rule 9(b).

## Conclusion

Based on the foregoing, the Court denies Claimant's Request to Amend.

IT IS SO ORDERED.

Date:   June 29, 2021
        New York, New York

/s/ *James L. Garrity, Jr.*

Honorable James L. Garrity, Jr.
United States Bankruptcy Judge