WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Richard W. Slack
Sunny Singh

*Attorneys for Plan Administrator*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
                        :

**In re**                        :        **Chapter 11**
                        :

**DITECH HOLDING CORPORATION,** *et al.,*  :        **Case No. 19-10412 (JLG)**
                        :

            **Debtors.**[1]        :        **(Jointly Administered)**
                        :

------------------------------------------------------------X

### NOTICE OF HEARING ON JOINT MOTION OF PLAN ADMINISTRATOR AND CONSUMER REPRESENTATIVE TO ENFORCE THE PLAN INJUNCTIONS AND CONFIRMATION ORDER AGAINST DARRYL K. BROWDER, HOLD HIM IN CONTEMPT, AND IMPOSE SANCTIONS

              **PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "**Motion**"),

of the Plan Administrator,[2] on behalf of Ditech Holding Corporation (f/k/a Walter Investment

Management Corp.) and its debtor affiliates (excluding Reorganized RMS) (collectively,

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "**Plan**"), which created the Wind Down Estates. The Wind Down Estates, along with the last four digits of their federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

the "**Wind Down Estates**"), for entry of an order pursuant to sections 105(d), 524 and 1141 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 1015(c), 3020(d) and 9007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Court's *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors* (the "**Confirmation Order**") (ECF No. 1404), to enforce the injunction provisions contained in the Plan, all as more fully set forth in the Motion, will be held before the Honorable James L. Garrity, Jr., United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 723, One Bowling Green, New York, New York 10004 (the "**Bankruptcy Court**") on **July 29, 2021 at 11:00 a.m. (prevailing Eastern Time)** (the "**Hearing**"), or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the "**Objections**") to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules, shall be filed with the Bankruptcy Court (i) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the *Order Implementing Certain Notice and Case Management Procedures* (ECF No. 211) (the "**Case Management Order**"), so as to be filed and received no later than **July 22, 2021 at 4:00 p.m. (prevailing Eastern Time)** (the "**Objection Deadline**").

\* \* \*

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to

attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated: July 15, 2021
      New York, New York

                    /s/ Richard W. Slack
                    WEIL, GOTSHAL & MANGES LLP
                    767 Fifth Avenue
                    New York, New York  10153
                    Telephone:  (212) 310-8000
                    Facsimile:  (212) 310-8007
                    Ray C. Schrock, P.C.
                    Richard W. Slack
                    Sunny Singh
                    David F. Hill, IV

                    *Attorneys for Plan Administrator*

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Richard W. Slack
Sunny Singh

JENNER & BLOCK LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 891-1600
Richard Levin

*Attorneys for the Plan Administrator*

*Attorneys for the Consumer Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X
                                :

**In re**                        :       **Chapter 11**
                                :

**DITECH HOLDING CORPORATION, *et al.*,**  :      **Case No. 19-10412 (JLG)**
                                :

            **Debtors.**[1]      :       **(Jointly Administered)**
                                :

-------------------------------------------------------------X

## JOINT MOTION OF PLAN ADMINISTRATOR AND CONSUMER REPRESENTATIVE TO ENFORCE THE PLAN INJUNCTIONS AND CONFIRMATION ORDER AGAINST DARRYL K. BROWDER, HOLD HIM IN CONTEMPT, AND IMPOSE SANCTIONS

---

[1]    The Wind Down Estates, along with the last four digits of each of their federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...............................................................................1

JURISDICTION ....................................................................................................5

FACTUAL BACKGROUND.......................................................................................6

A.    The Confirmation Order, the Plan Injunctions, and the Exculpation Provision .................6

B.    Mr. Browder's Mortgage and the First Iowa Action ...........................................9

C.    Proceedings Before the Court .......................................................................11

D.    The New Iowa Action.................................................................................13

ARGUMENT ......................................................................................................15

A.    The New Iowa Action Is Barred By the Plan Injunctions and the Barton Doctrine..........15

   1.    The Section 10.5 Injunction Covers the Claims against Ditech
         and the Wind Down Estates.................................................................16

   2.    The Section 10.5 Injunction, the Exculpation Provision, and the Barton
         Doctrine Bar Mr. Browder From Bringing the New Iowa Action Against
         Mr. Singh, Ms. Stumph-Turner, and the Consumer Representative.....................18

   3.    The Forward Purchaser Injunction Prohibits Mr. Browder From Bringing
         the New Iowa Action gainst the Forward Purchaser Defendants ........................24

B.    Mr. Browder's Violations of the Plan Injunctions and this Court's Orders Warrant
      Holding Him in Contempt and the Imposition of Sanctions.............................................26

   1.    Mr. Browder's Conduct Warrants the Imposition of Sanctions ...........................26

   2.    Being a Pro se Litigant Does Not Shield Mr. Browder's Knowing
         and Flagrant Conduct.........................................................................27

   3.    The Court Should Award Sanctions to Motivate Mr. Browder to Comply
         with the Plan Injunctions and to Deter Mr. Browder from Further
         Violations......................................................................................28

CONCLUSION.....................................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aegean Marine Petroleum Network Inc.*,
  599 B.R. 717 (Bankr. S.D.N.Y. 2019) ...................................................................................20

*In re Amos*,
  2010 WL 2026628 (Bankr. N.D. Ga. Feb. 18, 2010) ............................................................31

*In re Anderson*,
  884 F.3d 382 (2d Cir. 2018) ..................................................................................................15

*Barton v. Barbour*,
  104 U.S. 126 (1881) ...............................................................................................................22

*Browder v. Wind Down Estates*,
  21-cv-198 (S.D. Iowa July 14, 2021) (attached as Exhibit 4 to the Slack
  Declaration) ...........................................................................................................................14

*In re Charter Commc'ns*,
  2010 WL 502764 (Bankr. S.D.N.Y. Feb. 8, 2010) .................................................................19

*In re Covelli*,
  550 B.R. 256 (Bankr. S.D.N.Y. 2016) ..............................................................................30, 31

*In re Davitch*,
  336 B.R. 241 (Bankr. W.D. Pa. 2006) ...................................................................................30

*In re DeLorean Motor Co.*,
  991 F.2d 1236 (6th Cir. 1993) ...............................................................................................23

*In re Elegant Concepts, Ltd.*,
  67 B.R. 914 (Bankr. E.D.N.Y. 1986) ......................................................................................31

*In re Flushing Hosp. & Med. Ctr.*,
  395 B.R. 229 (Bankr. E.D.N.Y. 2008) ....................................................................................20

*In re Granite Broad. Corp.*,
  369 B.R. 120 (Bankr. S.D.N.Y. 2007) ....................................................................................20

*In re Hughes*,
  360 B.R. 202 (Bankr. N.D. Tex. 2007) ...................................................................................28

*In re LandAmerica Fin. Grp., Inc.*,
  2013 WL 1819984 (Bankr. E.D. Va. Apr. 30, 2013) ..............................................................19

*Lawrence v. Goldberg*,
    573 F.3d 1265 (11th Cir. 2009) ...................................................................23

*In re Lehman Bros. Holdings Inc.*,
    2013 WL 6283572 (Bankr. S.D.N.Y. Dec. 3, 2013), *aff'd sub nom. In re*
    *Lehman Bros. Holdings, Inc.*, 645 F. App'x 6 (2d Cir. 2016) ................................26

*In re Manchanda*,
    2016 WL 3034693 (Bankr. S.D.N.Y. May 19, 2016)...........................................26

*McDonald v. Head Crim. Ct. Supervisor Officer*,
    117 F.R.D. 55 (S.D.N.Y. 1987) *aff'd*, 850 F.2d 121 (2d Cir. 1988)......................27

*In re MF Glob. Holdings Ltd.*,
    2013 WL 2352440 (Bankr. S.D.N.Y. May 29, 2013)...........................................28

*In re MF Glob. Holdings Ltd.*,
    562 B.R. 866 (Bankr. S.D.N.Y. 2017)..................................................22, 23

*In re Nat'l Heritage Found., Inc.*,
    2013 WL 3167698 (Bankr. E.D. Va. June 21, 2013)...........................................30

*In re Nicholas*,
    457 B.R. 202 (Bankr. E.D.N.Y. 2011)..............................................................28

*In re Olsen*,
    358 B.R. 609 (Bankr. S.D.N.Y. 2007)..............................................................28

*Peia v. Coan*,
    2006 WL 798873 (D. Conn. Mar. 23, 2006) ......................................................23

*In re Residential Cap., LLC*,
    512 B.R. 179 (Bankr. S.D.N.Y. 2014).......................................................15, 30

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012) .........24

**Statutes**

11 U.S.C. § 101..........................................................................................25, 26

11 U.S.C. § 105.............................................................................2, 6, 15, 16, 26

11 U.S.C. § 524..................................................................................................2, 6

11 U.S.C. § 1141................................................................................................2, 6

28 U.S.C. § 157.....................................................................................................6

28 U.S.C. § 1334........................................................................................................6

28 U.S.C. § 1408........................................................................................................6

28 U.S.C. § 1409........................................................................................................6

**Other Authorities**

Fed. R. Bankr. P. 1015..............................................................................................2, 6

Fed. R. Bankr. P. 3020.................................................................................................2

Fed. R. Bankr. P. 9007..............................................................................................2, 6

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The Plan Administrator[1] on behalf of Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and its debtor affiliates (excluding Reorganized RMS) (collectively, the "**Wind Down Estates**"), and the Consumer Representative submit this joint motion (the "**Motion**"), pursuant to section 105(d), 524 and 1141 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Federal Rules of Bankruptcy Procedure 1015(c), 3020(d), and 9007, and Sections 4.6 and 10.5 of the Plan, for an order to enforce the injunction provisions contained in Paragraph 3 of Schedule 2 (the findings of fact and conclusions of law with respect to the Sale Transaction to the Forward Purchaser) to the Confirmation Order (the "**Sale Injunction**"), Section 4.6 of the Plan (the "**Forward Purchaser Injunction**") and Section 10.5 of the Plan (the "**Section 10.5 Injunction**") (collectively, the "**Plan Injunctions**"). The Motion also seeks to hold Darryl K. Browder in contempt and for the Court to impose monetary sanctions for his violations of the Plan Injunctions and orders of this Court. The declaration of Richard W. Slack, counsel for the Plan Administrator (the "**Slack Declaration**"), is filed contemporaneously herewith in support of the Motion.

## PRELIMINARY STATEMENT

1.      On April 1, 2021, Mr. Browder filed an action in Iowa state court (the "**New Iowa Action**") seeking tens of millions of dollars in monetary relief against Ditech Holding Corporation ("**Ditech**"), the Wind Down Estates, Sunny Singh from Weil, Gotshal & Manges LLP (counsel to the Debtors and the Wind Down Estates), and Tara Twomey (the Consumer

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such term in the confirmed *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors* (the "**Plan**") (ECF 1326) and the *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "**Confirmation Order**").

Representative in these chapter 11 cases). Mr. Browder also named as defendants a subsidiary of the Forward Stalking Horse Purchaser, NewRez LLC, d/b/a Shellpoint Mortgage Servicing ("**Shellpoint**"), which is also the current servicer of Mr. Browder's mortgage, Shellpoint's foreclosure counsel, SouthLaw P.C. ("**SouthLaw**," and together with Shellpoint, the "**Forward Purchaser Defendants**"), and Megan Stumph-Turner Ditech's local counsel in a prior Iowa federal court action (that Mr. Browder agreed to dismiss with prejudice as a result of the Section 10.5 Injunction). This action has not been served on any of the defendants except Shellpoint, which was served in June 2021.

2.       The New Iowa Action raises precisely the same issues and underlying claims that this Court rejected in disallowing Mr. Browder's claims filed in the chapter 11 cases. Indeed, the filing of the New Iowa Action by Mr. Browder was less than two months after the Court issued a detailed opinion analyzing and rejecting Mr. Browder's monetary claims in his proofs of claim, and less than four months after the Court expressly denied Mr. Browder's motion to lift the stay to allow him to prosecute an action in Iowa.

3.       The Motion by the Plan Administrator and the Consumer Representative seeks to enforce this Court's Plan Injunctions and orders which already explicitly prevent Mr. Browder from bringing the New Iowa Action and which Mr. Browder has already ignored in filing that action. The Motion therefore seeks to enjoin Mr. Browder from pursuing or taking any further steps to prosecute the New Iowa Action against all of the defendants and to require Mr. Browder to dismiss the New Iowa Action.

4.    The filing of the New Iowa Action is a flagrant violation of numerous provisions of the Plan and this Court's orders, including:

- Section 10.5(a) of the Plan and Paragraph 10 of the Confirmation Order which enjoins Mr. Browder from "from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan" – which includes interfering with the proof of claim process and the filing of claims after this Court has expunged those claims.

- Section 10.5(b) of the Plan and Paragraph 10 of the Confirmation Order which enjoins Mr. Browder from "commencing, conducting, or continuing in any manner, directly or indirectly" the New Iowa Action.

- Section 4.6(b) of the Plan and the Sale Injunction that enjoin Mr. Browder from raising claims arising from pre-Effective Date conduct against the Forward Purchaser Defendants and affiliates or representatives of the Forward Stalking Horse Purchaser.

- This Court's December 2, 2020 *Order Denying Motion of Darryl K. Browder* (the "**Lift Stay Denial Order**") (ECF No. 3051) which expressly denied the motion of Mr. Browder seeking to allow him to pursue monetary claims against Ditech in the Iowa courts.

5.    Mr. Browder is well aware of this Court's orders and the Plan having (a) litigated extensively in these chapter 11 cases concerning these precise claims; (b) expressly agreed to dismiss a prior Iowa lawsuit raising these same claims as a result of the Section 10.5 Injunction; and (c) having expressly made a motion to lift the stay which was denied by this Court.

Mr. Browder has simply chosen to ignore the Confirmation Order, Plan Injunctions and this Court's Lift Stay Denial Order that prevent him from bringing the New Iowa Action against all of the defendants.

6. The Plan Injunctions cover all of the claims asserted against all of the defendants. Accordingly, the Plan Administrator and Consumer Representative seek to enforce the Plan and the Confirmation Order and to seek relief for all of the defendants named in the New Iowa Action.[2] As discussed below, the Plan Injunctions and Plan exculpation provision were designed to cover precisely these types of claims against not just the Debtors and the Wind Down Estates, but also claims against the counsel of the Debtors and the Consumer Representative arising out of the same set of facts that directly and indirectly affect the Debtors and Consumer Creditor Reserve. The Plan Injunctions here also expressly cover claims against the Forward Stalking Horse Purchaser, its affiliates and those acting on their behalf.

7. In addition, the filing of the New Iowa Action against Mr. Singh, Ms. Twomey and Ms. Stumph-Turner is also barred by the *Barton* Doctrine established by the Supreme Court in 1881. The *Barton* Doctrine requires that a party obtain bankruptcy court approval before suing a trustee or other person appointed by the bankruptcy court. This doctrine obviously would cover claims against the Consumer Representative appointed and approved by the Court as part of the Plan, and courts have expressly held that this doctrine also protects a trustee or similar administrator and its counsel.

---

[2]  Paragraph 3 of the Confirmation Order sets forth, in part, that: "Debtors, the Plan Administrator, the GUC Trustee, and the Consumer Representative (as applicable) are authorized to take all actions required under the Third Amended Plan and the Plan Supplement to effectuate the Third Amended Plan and the transactions contemplated therein."

8.     As a result of the Plan Injunctions and the *Barton* Doctrine, the Plan Administrator and Consumer Representative respectfully request that this Court issue an order against Mr. Browder imposing immediate injunctive relief requiring him to dismiss the New Iowa Action and enjoining him from attempting to serve, file any paper upon any defendant, or in any way continue to prosecute the New Iowa Action.

9.     Lastly, the Plan Administrator and Consumer Representative seek monetary sanctions if Mr. Browder does not timely comply – a step neither party takes lightly. Given that this Court's orders already enjoin Mr. Browder from bringing the New Iowa Action and these orders have already been explicitly ignored and violated – even though Mr. Browder is well aware of them – it appears that simply obtaining another order of this Court enjoining Mr. Browder is likely to be unsuccessful without some additional element of encouragement. Specifically, the movants request that if Mr. Browder refuses to dismiss the New Iowa Action within 7-days, then sanctions would be implemented with increasing amounts the longer Mr. Browder refuses to dismiss the action. No sanctions would be imposed so long as Mr. Browder timely complies with the Plan Injunctions. Unfortunately, given Mr. Browder's prior conduct and knowing disregard for this Court's orders, the Plan Administrator and the Consumer Representative believe that sanctions are both necessary and appropriate.

**JURISDICTION**

10.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Article XI of the Plan. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

11.     The statutory predicates for the relief requested herein are sections 105(d), 524, and 1141 of the Bankruptcy Code and Fed. R. Bankr. P. 1015(c), 3020(d), and 9007.

## FACTUAL BACKGROUND

12.     This Court has already extensively addressed the claims of Mr. Browder. The underlying facts of Mr. Browder's mortgage are well known to the Court and are set out in detail in the Court's February 2, 2021 *Memorandum Decision and Order Sustaining the Thirty-Second Omnibus Objection to Proof of Claims (No Basis Consumer Creditor Litigation Claims) against Darryl Keith Browder* (ECF No. 3208) (the "**Memorandum Decision and Order**").[3] For ease of reference, the most relevant facts are set forth below.

### A.     The Confirmation Order, the Plan Injunctions, and the Exculpation Provision

13.     On September 26, 2019, this Court entered the Confirmation Order, confirming the Plan, which set forth a number of separate injunction provisions. One of these provisions, Section 10.5(a) of the Plan prevents a claimant such as Mr. Browder from interfering with the implementation of the Plan, including the claims process. Section 10.5(a) of the Plan, provides, in applicable part, that:

> (a) Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions **to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan**.

---

3     The facts contained in the Memorandum Decision and Order are supported by the following documents, most of which were filed by Mr. Browder, and are hereby incorporated by reference: *Motion for Relief from Stay* (ECF No. 2814) (the "**Lift Stay Motion**"); Exhibits attached to Lift Stay Motion (ECF No. 2814-1) (the "**Lift Stay Motion Exhibits**"); *Opposition of the Plan Administrator to the Motion of Darryl K. Browder for Relief from Stay* (ECF No. 2835) (the "**Lift Stay Opposition**"); *Thirty-Second Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Litigation Claims)* (ECF No. 1764) (the "**Thirty-Second Omnibus Objection**); *First Response of Darryl Browder* (ECF No. 1893) (the "**First Omnibus Objection Response**"); *Second Response of Darryl Browder* (ECF No. 2082) (the "**Second Omnibus Objection Response**").

14. Section 10.5(b) of the Plan further prevents a claimant from bringing claims for monetary relief:

> (b) [A]ll Entities who have held, hold, or may hold Claims against or Interests in the Debtors . . . are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished, discharged, or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, **directly or indirectly**, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) **against or affecting the Debtors, Reorganized Debtors, Reorganized RMS, GUC Recovery Trust, or the Consumer Creditor Reserve or the property of any of the Debtors, Reorganized Debtors, Reorganized RMS, GUC Recovery Trust or the Consumer Creditor Reserve** . . .

The express language of Section 10.5(b) makes it clear that the provision covers more than claims against the Debtors and Wind Down Estates by not just enjoining claims "against" the Debtors (and other expressly named persons), but also claims "affecting" the Debtors – which necessarily includes claims other than those simply against the Debtors.

15. In addition, the Plan contains a separate injunction preventing a claimant from asserting pre-Effective Date claims against the Forward Stalking Horse Purchaser, its Affiliates, including Shellpoint, and anyone acting on their behalf (such as Shellpoint's counsel, SouthLaw). Section 4.6(b) of the Plan, provides, in relevant part, that:

> Each holder of a Consumer Creditor Claim, including a 363(o) Claim, shall be enjoined from **bringing, asserting or prosecuting such Consumer Creditor Claim against the Forward Stalking Horse Purchaser**, Reverse Stalking Horse Purchaser, Reorganized RMS, or any of their Affiliates (or anyone acting on their behalf), except as provided in Section 5.6(d)(iii), or seeking monetary damages from the Forward Stalking Horse Purchaser, Reverse Stalking Horse Purchaser, Reorganized RMS or any of their

Affiliates (or anyone acting on their behalf) on account of such Consumer Creditor Claim . . .[4]

16.     Further, the Sale Injunction, Paragraph 3 of Schedule 2 to the Confirmation Order and "incorporated [t]herein by reference in [its] entirety" (Confirmation Order ¶ M), provides a similar injunction preventing suits against Shellpoint. This provision states in relevant part, that:

> [A]ll Persons and Entities . . . holding Claims against the Acquired Assets or against the Debtors in respect of the Acquired Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any Claims of any kind or nature whatsoever (including, without limitation, Claims or Liabilities relating to any act or omission of any originator, holder or servicer of Mortgage Loans prior to the Closing, and any indemnification Claims or Liabilities relating to any act or omission of the Sellers or any other Person or Entity prior to the Closing) against the Forward Buyer or any Affiliate of the Forward Buyer or any of their respective property, successors and assigns, or the Acquired Assets, as an alleged successor or on any other grounds. . .

17.     Finally, the Plan also contains, in Section 10.7, an exculpation provision (the "**Exculpation Provision**") that provides, in relevant part, that:

> To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and **each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any claim in connection with or arising out of the administration of the Chapter 11 Cases**, the postpetition marketing and sale process, the purchase, sale, or rescission of the purchase or sale of any security or asset of the Debtors; the negotiation and pursuit of the Disclosure Statement, the RSA, the Reorganization Transaction or the Sale Transaction, as applicable, the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan; the

---

4   Section 5.6(d)(iii) of the Plan provides that the Plan does not "affect a Borrower's right, if any, to correct any inaccurate statement of amounts due under the Borrower's loan or any other inaccurate terms related to the Borrower's loan" and is entirely inapplicable to Mr. Browder's affirmative claims in the New Iowa Action.

occurrence of the Effective Date; the DIP Documents; the Prepetition Warehouse Facilities (as defined in the DIP Order); **the administration of the Plan** or the property to be distributed under the Plan; the issuance of Securities under or in connection with the Plan; or the transactions in furtherance of any of the foregoing; except for fraud or willful misconduct, as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability.

The Plan defines "Exculpated Parties" as "(a) Debtors . . . (e) the Wind Down Estates . . . (p) Consumer Representative . . . all Persons and Entities who acted on their behalf in connection with the matters as to which exculpation is provided herein." Plan § 1.77.

18.  This Court also retained jurisdiction over "all matters arising in, arising under, and related to the Chapter 11 Cases," specifically including "to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court" and "to hear, adjudicate, decide, or resolve any and all matters related to Article X of the Plan, including, without limitation, the releases, discharge, exculpations, and injunctions issued thereunder."  Plan §§ 11.1 (g), (n).

**B.  Mr. Browder's Mortgage and the First Iowa Action**

19.  Mr. Browder entered into a mortgage and note in May 2007 with Countrywide Home Loans, Inc. as security for a piece of property located at 1925 10th St., Des Moines, Iowa 50314-2418 (the "**Iowa Property**").  *See* Memorandum Decision and Order at 10. The servicing of Mr. Browder's mortgage was transferred to Ditech in 2011.

20.  On January 29, 2018, Mr. Browder filed an action against Ditech in Iowa state court in the District Court of Polk County (the "**First Iowa Action**"). *See* Memorandum Decision and Order at 12. Ditech subsequently removed the First Iowa Action to the Southern

District of Iowa.  *See* First Iowa Action Docket at ECF No. 1 (attached as **Exhibit 1** to the Slack Declaration). The First Iowa Action alleged improper conduct by Ditech as servicer of Mr. Browder's mortgage and alleged a number of causes of action against Ditech, including negligence, harassment, discrimination, racial profiling, lost wages, slander, defamation, violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, other state and federal laws and fraud, along with breach of contract.  *See* Memorandum Decision and Order at 12. Specifically, Mr. Browder alleged that Mr. Browder's then fiancée, Cecilia Addo, made a series of payments to Ditech in April and May 2017, which resulted in overages in Mr. Browder's mortgage account and that these payments were improperly returned to Ms. Addo instead of crediting the account of Mr. Browder's son, as Mr. Browder had requested. *Id.* at 10-11.  The complaint then contends that these actions by Ditech led to Mr. Browder's account being in arrears.

21.     On October 2, 2018, the District Court in the First Iowa Action dismissed all of Mr. Browder's tort claims, leaving only a breach of contract claim.  *Id.* at 12.  On October 11, 2018, Ditech filed its Answer and Affirmative Defenses in the First Iowa Action. *Id.*

22.     Effective November 1, 2019, the servicing of Mr. Browder's mortgage was transferred to Shellpoint.  *See* Lift Stay Opposition at 138.

23.     In November 2019, Mr. Browder signed and returned a stipulation (the "**First Iowa Action Stipulation**") prepared by Ditech's local counsel, Ms. Stumph-Turner, that dismissed the First Iowa Action with prejudice in order to bring Mr. Browder into compliance with the Section 10.5 Injunction. *See* Memorandum Decision and Order at 13. Upon the filing of the First Iowa Action Stipulation, the First Iowa Action was terminated by the Iowa District Court on November 21, 2019. *See* id.

24.     Almost immediately after executing and returning the stipulation dismissing the First Iowa Action, Mr. Browder improperly sought to unwind the First Iowa Action Stipulation. On January 6, 2020, Mr. Browder filed a motion in the First Iowa Action to dismiss the First Iowa Action Stipulation (the "**Iowa Motion**"). *See* Lift Stay Opposition at 141. The filing of the Iowa Motion was itself a violation of the Section 10.5 Injunction. The Iowa Motion was denied on January 27, 2020. First Iowa Action Docket at ECF No. 44. Mr. Browder did not file an appeal of the District Court's denial of the Iowa Motion and the First Iowa Action remains dismissed with prejudice. *See id.* at 1.

25.     As recently as March 24, 2021, Mr. Browder continued to file motions in the First Iowa Action, each of which is also a violation of the Section 10.5 Injunction. The most recent filing was styled as a "motion to shop for the truth on this case to prove that plaintiff ,and judge john a. jarvey ,do have a conflict of interest against each other.and to prove seditious abuse of judicial process,and to prove trade secrets." This motion was denied on March 30, 2021 and there have been no subsequent filings. *Id.* at 1.

C.     **Proceedings Before the Court**

26.     Between April 1, 2019 and November 11, 2019, Mr. Browder filed 12 proofs of claim in these chapter 11 cases. *See* Memorandum Decision and Order at 1. One of these proofs of claim, Proof of Claim No. 2516, attached the First Iowa Complaint. *See* Lift Stay Opposition at 96-100.

27.     On January 17, 2020, the Plan Administrator and the Consumer Representative jointly brought the Thirty-Second Omnibus Objection, which included, among others, Mr. Browder's proofs of claim. *See* Memorandum Decision and Order at 2. Mr. Browder filed his First Omnibus Objection Response to the Thirty-Second Omnibus Motion on February 18, 2020. *Id.* at 6. In the First Omnibus Objection Response, Mr. Browder alleged that counsel for

the Plan Administrator and the Consumer Representative had committed fraud and perjury and demanded sanctions. *See id.* at 18. The Plan Administrator and Consumer Representative replied to Mr. Browder's objection on March 24, 2020. *See id.* at 6-7.  Mr. Browder filed the Second Omnibus Objection Response on March 30, 2020. *See id.* at 6. In the Second Omnibus Objection Response, Mr. Browder alleged that he was tricked or compelled under duress by Ms. Stumph-Turner into signing the First Iowa Action Stipulation. *See id.* at 21.

28. On August 20, 2020, Mr. Browder filed the Lift Stay Motion with this Court to lift the automatic stay and proceed with the First Iowa Action, specifically requesting that he be allowed to assert claims against Ditech. *See* Lift Stay Motion at 1, 9 and 15. The Plan Administrator opposed the Lift Stay Motion. *See* Lift Stay Opposition. On October 29, 2020, this Court held a hearing on the Lift Stay Motion, at which Mr. Browder did not appear. *See* October 29, 2020 Hearing Transcript at 47:3-7 (ECF No. 2940). On December 7, 2020, this Court entered the Lift Stay Denial Order, denying the Lift Stay Motion and retaining "jurisdiction to hear and determine all matters arising from implementation of this Order." Lift Stay Denial Order at 2.

29. On February 2, 2021, the Court issued a twenty-four page opinion that addressed in detail and rejected Mr. Browder's proofs of claim. The Court thus granted the Thirty-Second Omnibus Motion and expunged Mr. Browder's proofs of claim. *See* Memorandum Decision and Order at 24. As extensively set forth in the Memorandum Decision and Order, Mr. Browder's proofs of claim arose from the same pre-Effective Date conduct already litigated in the First Iowa Action. *Id.* at 10-12. As the Court further noted in its Memorandum Decision and Order, in connection with Mr. Browder's objection to the confirmation of the Plan, that "Browder acknowledged that if approved, the Plan Injunction would enjoin him from continuing to prosecute his breach of contract claim in the Iowa Action in favor of the claims resolution process under the

Plan." *Id.* at 12. In addition to expunging Mr. Browder's proofs of claim, the Court also rejected

Mr. Browder's demand for sanctions against Mr. Singh and the Consumer Representative. *Id.* at

19. The Court also rejected Mr. Browder's contention that the First Iowa Action Stipulation, and

the Section 10.5 Injunction underpinning it, were invalid. *Id.* at 23 ("The Claimant is bound by the

Confirmation Order. That Debtors' local counsel allegedly failed to provide a copy of the order to

Claimant when they executed the Iowa Stipulation does not diminish, in any way, the force and

effect of the stipulation and Plan Injunction.").

### D. The New Iowa Action

30.     On April 1, 2021, Mr. Browder filed the New Iowa Action. *See Petition at

Law and Jury Demand* at 1 (the "**New Iowa Complaint**"). The New Iowa Complaint is attached

as **Exhibit 2** to the Slack Declaration.[5] The factual allegations contained in the New Iowa

Complaint are substantively identical to those alleged and dismissed with prejudice in the First

Iowa Action and asserted and expunged in connection with Mr. Browder's proofs of claim.[6] There

is no underlying allegation of wrongdoing in the New Iowa Action that has not been addressed

and already dismissed by this Court in connection with the Lift Stay Motion and the resolution of

the proofs of claim in the Memorandum Decision and Order.

---

[5]     All quotations from the New Iowa Complaint are as they appear in the original document.

[6]     *See, e.g.*, New Iowa Complaint ¶13 ("plaintiff, as a darryl keith.browder, monthly mortgage payment, was only $470.43.the defenants charged plaintiff,$478.97 to much money to pay my monthly mortgage.the defendants also reported it to the credit agencies illegally.and they also charged the plaintiff, illegal late fees,."); *id.* ¶14 ("the plaintiff, as a darryl keith.browder, met this beautiful lady on line by the name of cecilia addo . . .she told me she will get in touch with her deceased dad attorney and will send me money from her dad account in canada."); *id.* ¶15-19 (alleging the same transfers and reversals in relations to payments by Ms. Addo in April and May 2017 as in the First Iowa Action); *id*. ¶30 ("as a result of the april 27, 2017, and june 01,2017, and may 17,2017 ,and april 28, 2017.and may 02, 2017, and may 4,2017. may 10,2017,october 01,2017 ,and january 01,2018 and fraud,and breach, and negligence,.plaintiff suffered injuries and damages through no fault of his own.").

31.     Mr. Browder's claims against the Forward Purchaser Defendants raise the same underlying allegations as the pre-petition claims against Ditech contained in the First Iowa Action and Mr. Browder's expunged proofs of claim. *Compare* New Iowa Complaint at ¶¶30-31 ("as a result of the april 27,2017 , and june 01,2017,and may 17,2017,and april 28,2017.and may 02,2017,and may 4,2017.may 10,2017,october 01,2017,and january 01,2018 and fraud,and breach,and negligence,.plaintiff suffered injuries and damages through no fault of his own. . . . plaintiff as a darryl keith.browder,is entitled to the $7,000,000.00 seven million dollars CAUSE the fraud and the breach,and the negligence,from the newrez llc dba shellpoint mortgage servicing . . ."); *id.* ¶78 ("THE DEFENDANT AS A SOUTH LAW 13160 FOSTER SUITE 100 OVERLAND PARK KS 66213.knew about this fraud,and breach,and negligent and sent the plaintiff,as a darryl keith.browder,documents statting that they are going to foreclose on plaintiff,home at 1925 10th street DES MOINES.IOWA 50314.any time this month as APRIL 10,2021; *with* First Iowa Complaint ¶¶ 7-17; and Memorandum Decision and Order at 11-13.

32.     While the filing of the New Iowa Action is itself a violation of the various injunctions set forth in the Plan and Confirmation Order, Mr. Browder has attempted to actively litigate the action, including having multiple notices "filed," as recently as June 30, 2021. *See* New Iowa State Court Docket at 3 (attached as **Exhibit 3** to the Slack Declaration). On July 2, 2021, Shellpoint removed the New Iowa Action to the United States District Court for the Southern District of Iowa. *See* Docket, *Browder v. Wind Down Estates,* 21-cv-198 (S.D. Iowa July 14, 2021) (attached as **Exhibit 4** to the Slack Declaration). Although Mr. Browder has apparently not yet served any defendant other than Shellpoint, based on his notices, he appears to be actively attempting to do so.

# ARGUMENT

## A.  The New Iowa Action Is Barred By the Plan Injunctions and the *Barton* Doctrine

33.     The Confirmation Order and Plan Injunctions, as well as the *Barton* Doctrine bar Mr. Browder from prosecuting or maintaining the New Iowa Action in its entirety against all of the defendants, and the Court should order Mr. Browder to dismiss it immediately.

34.     It is well established that bankruptcy courts have the power to enforce their orders, both inherently and pursuant to Section 105(a). *See In re Anderson,* 884 F.3d 382, 391 (2d Cir. 2018) (noting the "undisputed power of a bankruptcy court to enforce its own orders" and that "Congress afforded the bankruptcy courts wide latitude to enforce their own orders, specifically granting these specialty courts the power to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.'") (quoting 11 U.S.C. § 105(a)).

35.     The Court thus has ample authority to enforce the Confirmation Order, the Plan, the Lift Stay Denial Order, and the Memorandum Decision and Order, as it has repeatedly found in issuing its omnibus injunction orders.[7] *See also In re Residential Cap., LLC,* 512 B.R.

---

[7]     *See Plan Administrator's Omnibus Motion to Enforce Injunctive Provisions of Plan and Confirmation Order* (ECF No. 1688); *Plan Administrator's Second Omnibus Motion to Enforce Injunctive Provisions of Plan and Confirmation Order* (ECF No. 1786); *Plan Administrator's Third Omnibus Motion to Enforce Injunctive Provisions of Plan and Confirmation Order* (ECF No. 1946); *Plan Administrator's Fourth Omnibus Motion to Enforce Injunctive Provisions of Plan and Confirmation Order* (ECF No. 2285); *Plan Administrator's Fifth Omnibus Motion to Enforce Injunctive Provisions of Plan and Confirmation Order* (ECF No. 2436); *Plan Administrator's Sixth Omnibus Motion to Enforce The Plan Injunction and Confirmed Order* (ECF No. 2656) (each, an "**Omnibus Injunction Motion**"). On January 23, 2020, the Court granted the First Omnibus Injunction Motion (ECF No. 1770), on February 25, 2020 the Court granted the Second Omnibus Injunction Motion (ECF No. 1920), on June 3, 2020 the Court granted the Third Omnibus Injunction Order (ECF No. 2459) and the Fourth Omnibus Injunction Motion (ECF No. 2460), on July 8, 2020 the Court granted the Fifth Omnibus Injunction Motion (ECF No. 2653), and on October 6, 2020 the Court granted the Sixth Omnibus Injunction Motion (ECF No. 2886) (collectively, the "**Omnibus Injunction Orders**").

179, 192 (Bankr. S.D.N.Y. 2014) (enjoining a litigant who was on notice that its state law claims were in violation of a plan injunction from continuing to pursue said claims).

<strong>1. The Section 10.5 Injunction Covers the Claims against Ditech and the Wind Down Estates</strong>

36. The Section 10.5 Injunction on its face covers claims for monetary relief against Ditech and the Wind Down Estates. Indeed, this Court has held on multiple occasions that the Section 10.5 Injunction expressly covers monetary claims against Ditech and the Wind Down Estates, including in explicitly denying Mr. Browder leave to pursue his claims against Ditech and the Wind Down Estates in Iowa court. *See* Omnibus Injunction Orders; Lift Stay Denial Order at 2. Further, by signing the First Iowa Action Stipulation and in objecting to confirmation of the Plan, Mr. Browder has explicitly recognized the Section 10.5 Injunction. *See* Memorandum Decision and Order at 12 ("In his objection, and in substance, Browder acknowledged that if approved, the Plan Injunction would enjoin him from continuing to prosecute his breach of contract claim in the Iowa Action in favor of the claims resolution process under the Plan."); *id.* at 13 n. 16 ("In part, the Iowa Stipulation reads . . . [t]he Plan contains a permanent injunction (the 'Injunction') that specifically prohibits parties from prosecuting against Ditech any claim for monetary recovery (including attorney's fees) on account of any claim arising prior to September 30, 2019 (the Plan Effective Date and closing date for the transactions under the Plan).")

37. Section 10.5(a) of the Plan, enjoins "all holders of Claims and Interests . . . from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan." By filing an action in Iowa state court where the underlying claims asserted have already been fully addressed by this Court in disallowing and expunging Mr. Browder's proofs of claim, Mr. Browder is

actively interfering with the implementation of the claims process in these chapter 11 cases in violation of Section 10.5(a).

38. Further, Section 10.5(b) of the Plan enjoins a holder of a "Claim" from "commencing, conducting or continuing in any manner, directly or indirectly" any separate actions outside of the bankruptcy proceedings seeking, among other things, monetary relief against the Debtors, as well as "acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan." Section 10.5(b) expressly precludes Mr. Browder from bringing the New Iowa Action which alleges claims for monetary relief against Ditech.

39. Pursuant to Section 10.5(d) of the Plan, the Section 10.5 Injunction provisions explicitly extend not only to Ditech but to the Wind Down Estates.

40. As this Court has found when granting the Plan Administrator's prior Omnibus Enforcement Motions to enforce the Section 10.5 Injunction, this Court has the jurisdiction and authority to enjoin claimants such as Mr. Browder from continuing to prosecute the New Iowa Action, which asserts monetary claims against Ditech and the Wind Down Estates. *See,* e.g., the Omnibus Injunction Orders. Mr. Browder's violation of the Section 10.5 Injunction is both flagrant and willful. Not only did Mr. Browder ignore this Court's holding in the Memorandum Decision and Order that "Claimant is bound by the Confirmation Order" and that the First Iowa Action "falls squarely within the scope of the Plan Injunction," Mr. Browder explicitly declined to abide by this Court's denial of his request for a lift of stay to pursue his claims in Iowa court by once again filing, in the same Iowa court, the same claims that he brought in the First Iowa Action. This Court should not permit such brazen disobedience of its orders and

should require Mr. Browder to immediately dismiss the New Iowa Action against Ditech and the Wind Down Estates.

> **2.** **The Section 10.5 Injunction, the Exculpation Provision, and the *Barton* Doctrine Bar Mr. Browder From Bringing the New Iowa Action Against Mr. Singh, Ms. Stumph-Turner, and the Consumer Representative**

41.     In addition to Ditech and the Wind Down Estates, Mr. Browder also named as defendants Mr. Singh, counsel for the Wind Down Estates, Ms. Stumph-Turner, counsel for Ditech in the First Iowa Action, and the Consumer Representative (collectively, the "**Individual Defendants**"). With regard to Mr. Singh, Mr. Browder alleges that he is liable for the same pre-petition conduct alleged against Ditech, as well as filing "numerous documents on plaintiff" in connection with the bankruptcy proceedings and "telling the court about the joint stipulation for dismissal" filed in the First Iowa Action. *See* New Iowa Complaint ¶¶ 68-70. The allegations against Ms. Stumph-Turner and Ms. Twomey also largely arise out of Ditech's pre-petition conduct. In addition, Mr. Browder alleges that Ms. Stumph-Turner is liable for executing the First Iowa Action Stipulation designed to implement the Section 10.5 Injunction. *See id.* ¶¶ 41-50. All of the allegations against the individuals center on the claims that this Court expunged in its Memorandum Decision and Order and actions to implement the Plan and this Court's orders.

> **a)** **The Individual Defendants are Covered by the Section 10.5 Injunction**

42.     Mr. Browder is attempting an "end run" around this Court's Memorandum Decision and Order and Lift Stay Denial Order by bringing identical claims, not only against Ditech and the Wind Down Estates, as discussed above, but counsel for Ditech as well as the Consumer Representative.  This is precisely the type of conduct that the Plan Injunctions were intended to and expressly enjoin.

43. The Individual Defendants are covered by Section 10.5(a) of the Plan that enjoins conduct intended to interfere with the implementation of the Plan, including the proof of claim process and the Plan Exculpation Provision. Section 10.5(a) of the Plan provides that Mr. Browder is prohibited "from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan."

44. The New Iowa Action allegations against Ditech's counsel and the Consumer Representative all arose out of their enforcement and implementation of the Plan, including enforcing the Plan Injunctions and participating in the proof of claim process. Thus, all of Mr. Browder's claims in the New Iowa Action against Mr. Singh, Ms. Stumph-Turner, and the Consumer Representative constitutes the type of "interference" that Courts have held are enjoined under similar plan injunctions preventing interference with implementation of a plan. *See In re Charter Commc'ns,* 2010 WL 502764, at *5 (Bankr. S.D.N.Y. Feb. 8, 2010) (granting a motion to enforce a plan injunction with respect to a separate action in federal court against individual officer defendants released pursuant to a confirmed plan); *In re LandAmerica Fin. Grp., Inc.*, 2013 WL 1819984, at *5 (Bankr. E.D. Va. Apr. 30, 2013) (holding that a state court action brought against a trustee appointed pursuant to a confirmed plan "constitutes a collateral attack on the Plan that serves to interfere with its implementation and consummation").

45. This result is particularly appropriate when considered in light of the Exculpation Provision contained in Section 10.7 of the Plan that expressly encompasses all of the Individual Defendants. The Exculpation Provision provides that "each Exculpated Party is hereby released and exculpated from, any claim . . . liability for any claim in connection with or arising out of the administration of the Chapter 11 Cases . . .  the Plan . . . the administration of the Plan .

19

. . except for fraud or willful misconduct, as determined by a Final Order." The Plan defines "Exculpated Parties" as "(a) Debtors . . . (e) the Wind Down Estates . . . (p) Consumer Representative . . . all Persons and Entities who acted on their behalf in connection with the matters as to which exculpation is provided herein." Plan § 1.77. Courts within the Second Circuit and Southern District of New York have consistently found that exculpatory provisions are proper to protect those authorized by bankruptcy courts to carry out the bankruptcy process, even after the effective date of a plan. *See In re Flushing Hosp. & Med. Ctr.*, 395 B.R. 229, 235 (Bankr. E.D.N.Y. 2008) ("It is apparent that the exculpation provisions quoted above are not limited to pre-effective date claims. By their terms, these provisions apply to 'any act or omission in connection with, or arising out of ... the administration of the Plan.' Adopting [litigant's] interpretation would render the "administration of the Plan" clause meaningless, because conduct during the administration of the Plan necessarily occurs after the effective date of the Plan."); *In re Aegean Marine Petroleum Network Inc.*, 599 B.R. 717, 720 (Bankr. S.D.N.Y. 2019) ("I think that a proper exculpation provision is a protection not only of court-supervised fiduciaries, but also of court-supervised and court-approved transactions. . . . In the absence of gross negligence or intentional wrongdoing, parties should not be liable for doing thing that the Court authorized them to do and that the Court decided were reasonable things to do."); *In re Granite Broad. Corp.*, 369 B.R. 120, 139 (Bankr. S.D.N.Y. 2007) (approving exculpation clause "for actions in connection, related to, or arising out of the Reorganization Cases," noting that the language "generally follows the text that has become standard in this district and is sufficiently narrow to be unexceptional" and that " the Plan provides exculpation only for acts or omissions in connection with the Plan and the bankruptcy cases. It requires, in effect, that any claims in connection with the bankruptcy case be raised in the case and not be saved for future litigation.").

46. The Exculpation Provision expressly covers acts falling under the "administration of the Plan" – which by definition occur post-Effective Date. Here, acts by Mr. Singh and the Consumer Representative in connection with the claims process are an essential part of the administration of the Plan and are covered by the Exculpation Provision. Specifically, Mr. Singh, on behalf of Ditech and the Wind Down Estates, and the Consumer Representative have pursued a Court-authorized process to properly categorize claims as either consumer claims (entitled to specified recovery from specified assets) or secured, priority, or administrative claims (entitled to a recovery from other specified asserts) and to only permit legally valid claims to recover pursuant to the Plan. Similarly, the execution of a stipulation by Ms. Stumph-Turner to implement the Section 10.5 Injunction by requiring the dismissal of the First Iowa Action is also in furtherance of the administration of the Plan. As such, the Exculpation Provision in Section 10.7 of the Plan applies to shield the conduct of these Individual Defendants from collateral attack in a separate lawsuit.[8]

47. Put differently, Section 10.5(a) of the Plan requires dismissal of an action challenging conduct which was taken by bankruptcy professionals in implementing the Plan before the Court, especially when those individuals are exculpated for that very conduct.

48. In addition, Section 10.5(b) of the Plan also covers the Individual Defendants. On its face, Section 10.5(b) not only prohibits direct claims against the Debtors, it prohibits indirect claims or those that "affect" the Debtors and their successors or the Consumer

---

[8] The Plan Administrator and Consumer Representative recognize the Exculpation Provision contains a discrete limitation on its scope for obligations arising post-Effective Date out of the Plan or any agreement entered into after the Effective Date. Mr. Browder's allegations, however, arose prior to the Effective Date and in connection with the enforcement and "administration of the Plan" which is explicitly covered by the exculpation. Therefore, the limitation in Section 10.7 is not applicable. See Plan Section 10.7 ("Notwithstanding anything to the contrary in the foregoing, the exculpation set forth herein does not release any post-Effective Date obligation or liability of any Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.").

Creditor Reserve. If the clause had been intended to cover only claims against the entities expressly covered in the clause, it would not have also provided that claims "affecting" such entities, including the Debtors or the Consumer Creditor Reserve, would also be enjoined. Here, the Wind Down Estates and the Consumer Representative have been required to spend significant time and resources to respond to the New Iowa Action, including with respect to claims asserted against counsel for the Debtors and the Consumer Representative which arise solely out of alleged pre-petition conduct or conduct implementing the Plan on behalf of Debtors and the Consumer Creditor Reserve. The Wind Down Estates and the Consumer Representative will be required to expend significantly more resources if the New Iowa Action were permitted to proceed.

49.     Thus, the Court should enforce the Section 10.5 Injunction and require Mr. Browder to dismiss the New Iowa Action against the Individual Defendants.

### b)     The *Barton* Doctrine

50.     In addition to enforcing the Section 10.5 Injunction, this Court also has the authority to enjoin Mr. Browder's prosecution of the New Iowa Action against Mr. Singh, Ms. Stumph-Turner and the Consumer Representative pursuant to the *Barton* Doctrine. The *Barton* Doctrine, named for the 1881 Supreme Court case establishing it, prohibits suits against those appointed to carry out duties by a bankruptcy court without the leave of that court. *See In re MF Glob. Holdings Ltd.*, 562 B.R. 866, 876 (Bankr. S.D.N.Y. 2017); *Barton v. Barbour*, 104 U.S. 126 (1881).

51.     In *In re MF Global*, Judge Glenn sets forth an extensive analysis of the *Barton* Doctrine, noting its expansion over time to encompass not only bankruptcy trustees but their counsel. *Id.* at 875. In holding that the *Barton* Doctrine applies broadly to those appointed by a bankruptcy court to carry out official duties, in that case a plan administrator, Judge Glenn notes

that "the *Barton* Doctrine protects the [plan administrator and its agent] in their pursuit of court-sanctioned actions. Parties like the [plan administrator and its agent] should not be impeded from carrying out their duties or sidetracked with vexing litigation by frustrated litigants." *Id.* at 877. The New Iowa Action is quintessential example of "vexing litigation by frustrated litigants" and precisely the sort of action the *Barton* Doctrine is intended to prohibit.

52.     The Debtors, the Plan Administrator and the Consumer Representative are explicitly authorized by this Court to "take all actions required under the Third Amended Plan and the Plan Supplement to effectuate the Third Amended Plan." Confirmation Order ¶ 3. As noted by Judge Glenn in *In re MF Global*, the *Barton* Doctrine has also been extended to the counsel and agents of those appointed by the court. 562 B.R. at 873-75. Other courts within the Second Circuit as well as multiple Courts of Appeal have similarly found that the *Barton* Doctrine covers counsel and other agents. *Peia v. Coan*, 2006 WL 798873, at *1 (D. Conn. Mar. 23, 2006) ("The *Barton* Doctrine extends to attorneys who represent the bankruptcy estate, not only to the trustee himself."); *Lawrence v. Goldberg*, 573 F.3d 1265, 1270 (11th Cir. 2009) ("Trustee was appointed by the bankruptcy court, and the Trustee's court-approved counsel . . .functioned as the equivalent of court-appointed officers by helping the Trustee execute his official duties."); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993) ("We hold, as a matter of law, counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee, where as here, they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets."). The *Barton* Doctrine is particularly salient here, where the Court has already considered and rejected the allegations raised by Mr. Browder against Mr. Singh, Ms. Stumph-Turner and the Consumer Representative in connection with the expungement of Mr. Browder's proofs of claim. *See* Memorandum Decision and Order at 19, 23.

53.     Where the *Barton* Doctrine has been violated, "the only appropriate remedy is to order cessation of the improper action." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 460 B.R. 106, 116 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012) (internal quotations omitted). That is precisely what this Court should do: order Mr. Browder to dismiss the New Iowa Action immediately as against Mr. Singh, Ms. Stumph-Turner, and the Consumer Representative.

### 3.     The Forward Purchaser Injunction Prohibits Mr. Browder From Bringing the New Iowa Action Against the Forward Purchaser Defendants

54.     Mr. Browder is also prohibited from prosecuting the New Iowa Action against the Forward Purchaser Defendants. The Forward Purchaser Injunction, Section 4.6(b) of the Plan, provides that "each holder of a Consumer Creditor Claim, including a 363(o) Claim, shall be enjoined from bringing, asserting or prosecuting such Consumer Creditor Claim against the Forward Stalking Horse Purchaser, Reverse Stalking Horse Purchaser, Reorganized RMS, or any of their Affiliates (or anyone acting on their behalf), except as provided in Section 5.6(d)(iii), or seeking monetary damages from the Forward Stalking Horse Purchaser, Reverse Stalking Horse Purchaser, Reorganized RMS or any of their Affiliates (or anyone acting on their behalf) on account of such Consumer Creditor Claim . . ."

55.     Further, the Sale Injunction provides that "all Persons and Entities . . . holding Claims against the Acquired Assets or against the Debtors in respect of the Acquired Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any Claims of any kind or nature whatsoever (including, without limitation, Claims or Liabilities relating to any act or

omission of any originator, holder or servicer of Mortgage Loans prior to the Closing . . . against the Forward Buyer or any Affiliate of the Forward Buyer . . . ."

56.     Both Shellpoint and SouthLaw are covered by the injunctions in Section 4.6(b) and the Sale Injunction. The Plan adopts section 101(2) of the Bankruptcy Code's definition of "Affiliates." Plan § 1.4. The Forward Stalking Horse Purchaser and Forward Buyer, New Residential Investment Corp, is the parent company of Shellpoint and thus Shellpoint is an Affiliate under section 101(2) of the Bankruptcy Code. SouthLaw, as counsel to Shellpoint, is certainly "acting on … behalf" of the Forward Stalking Horse Purchaser or Shellpoint.

57.     Mr. Browder's allegations against Shellpoint, and its counsel SouthLaw, explicitly arose pre-petition and are substantively identical to the claims alleged against Ditech. *Compare* New Iowa Complaint ¶¶ 28-30, 78; *with* First Iowa Complaint ¶¶ 7-17; and Memorandum Decision and Order at 11-13.[9]

58.     The Forward Purchaser Injunction and Sale Injunction clearly and unambiguously bar Mr. Browder from prosecuting the New Iowa Action against the Forward Purchaser Defendants.

59.     Therefore, this Court should immediately enjoin Mr. Browder from continuing to prosecute, in any manner, including service of process or the filing of any papers, the New Iowa Action and require him to dismiss the New Iowa Action.

---

[9]     Although Mr. Browder references an April 2021 foreclosure letter from SouthLaw, he also alleges in the same sentence that the foreclosure allegations arose from the "fraud,and breach,and negligent" allegations of Ditech's pre-petition conduct. See New Iowa Complaint ¶78; id. ¶30 ("as a result of the april 27,2017 , and june 01,2017,and may 17,2017,and april 28,2017.and may 02,2017,and may 4,2017. mav 10,2017,october 01,2017,and january 01,2018 and fraud,and breach,and negligence,.plaintiff suffered injuries and damages through no fault of his own.") (emphasis added)

### B. Mr. Browder's Violations of the Plan Injunctions and this Court's Orders Warrant Holding Him in Contempt and the Imposition of Sanctions

#### 1. Mr. Browder's Conduct Warrants the Imposition of Sanctions

60.     Under 11 U.S.C. § 105(a), the Court has broad authority to issue contempt orders and award sanctions to enforce compliance with its orders. *In re Manchanda*, 2016 WL 3034693 at *4 (Bankr. S.D.N.Y. May 19, 2016). A finding of contempt and an award of sanctions requires that "1) the order the party failed to comply with is clear and unambiguous, (2) proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." *In re Lehman Bros. Holdings Inc.*, 2013 WL 6283572, at *1 (Bankr. S.D.N.Y. Dec. 3, 2013), *aff'd sub nom. In re Lehman Bros. Holdings, Inc.*, 645 F. App'x 6 (2d Cir. 2016).

61.     Each of the elements necessary to find Mr. Browder in contempt and award sanctions is easily established. First, the Plan Injunctions are clear and unambiguous and Mr. Browder is well aware of these Plan provisions. This Court has already recognized that Mr. Browder has acknowledged that the Plan Injunctions bar him from pursuing his claims outside of the proof of claim resolution process. Memorandum Decision and Order at 12. Moreover, Mr. Browder executed a stipulation dismissing his First Iowa Action with prejudice expressly to comply with the Plan Injunctions – a telling admission that Mr. Browder is well aware of the Plan Injunctions.

62.     Mr. Browder also filed the Lift Stay Motion to allow him to pursue these same claims in an Iowa court – another clear and unambiguous recognition by Mr. Browder that he required this Court's permission to pursue his pre-petition claims outside of the bankruptcy proceedings. *See* Lift Stay Motion at 1, 9 and 15. Thus, there is little question that the Plan

Injunctions are clear and unambiguous and that Mr. Browder has acknowledged his awareness of these restrictions.

63. The second and third factors – a lack of compliance with this Court's orders and the lack of any effort to comply – are also easily established. After (a) executing a stipulation dismissing the First Iowa Action (and the claims therein) with prejudice, (b) this Court separately dismissed Mr. Browder's proofs of claim in a detailed opinion considering and addressing each of his claims, and (c) filing the Lift Stay Motion and having such motion denied, Mr. Browder has chosen to violate the Plan Injunctions by filing the New Iowa Action. As discussed above, this action not only asserts claims against the Debtors and the Wind Down Estates, but seeks to indirectly assert the same claims by, among other things, naming the Consumer Representative and the Plan Administrator's counsel as defendants. These claims are the same as those this Court has already considered and expunged in the claims resolution process. Mr. Browder's ongoing efforts to pursue these expunged and enjoined claims establish his intent to continue to disregard the Plan Injunctions and this Court's orders.

## 2. Being a Pro se Litigant Does Not Shield Mr. Browder's Knowing and Flagrant Conduct

64. Appearing *pro se* is not a license to ignore court orders or abuse court processes. *See McDonald v. Head Crim. Ct. Supervisor Officer*, 117 F.R.D. 55, 58 (S.D.N.Y. 1987) ("[S]pecial solicitude for the difficulties that a *pro se* plaintiff must face does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights.") *aff'd*, 850 F.2d 121 (2d Cir. 1988); *In re MF Glob. Holdings Ltd.*, 2013 WL 2352440, at *4 (Bankr. S.D.N.Y. May 29, 2013) (imposing a civil fine on a *pro se* litigant for repeated frivolous filings); *In re Olsen*, 358 B.R. 609, 627 (Bankr. S.D.N.Y.

2007) (ordering a *pro se* litigant to pay opposing counsel's reasonable attorney's fees expended responding to frivolous motions and for ignoring a court order).

65.     While Courts are willing to provide *pro se* litigants some additional leeway, Courts will not hesitate to sanction a *pro se* litigant where the conduct warrants it. *See In re Nicholas*, 457 B.R. 202, 224 (Bankr. E.D.N.Y. 2011) (holding a *pro se* creditor in contempt and awarding the debtor reasonable attorney's fees and $5000 in punitive damages after the creditor commenced an action in state court in knowing violation of the discharge injunction); *In re Olsen*, 358 B.R. 609, 628 (Bankr. S.D.N.Y. 2007) (holding a *pro se* debtor in contempt and awarding a party reasonable attorney's fees associated with addressing contemptuous conduct after the debtor ignored discovery orders and filed a recusal motion in a bad faith attempt to delay an evidentiary hearing); *In re Hughes*, 360 B.R. 202, 209 (Bankr. N.D. Tex. 2007) (holding a *pro se* debtor in contempt and fining her $10,000 after the debtor, who had filed several frivolous bankruptcy petitions and had been barred from filing any new petitions for two years, assisted her aunt in filing another frivolous petition).

**3.      The Court Should Award Sanctions to Motivate Mr. Browder to Comply with the Plan Injunctions and to Deter Mr. Browder from Further Violations**

66.     The Plan Administrator and the Consumer Representative seek sanctions for the costs and expenses, including legal fees incurred, in (a) making the Motion to enforce the Plan Injunctions; and (b) any actions required to dismiss the New Iowa Action if Mr. Browder continues to refuse to dismiss that action.

67.     Mindful of the fact that Mr. Browder is *pro se*, the Plan Administrator and Consumer Representative respectfully propose to the Court a sanctions structure that (a) allows Mr. Browder a period of time to comply with the Plan Injunctions after an order by the Court on

the Motion by dismissing the New Iowa Action without the imposition of any monetary sanctions; and (b) if Mr. Browder fails to comply, then implements an increasing sanction up to a cap. This proposed mechanism would take into consideration the *pro se* nature of Mr. Browder and provide a period for compliance while providing for a reasonable sanction if Mr. Browder refuses to comply. This proposed sanctions would work as follows:

- Mr. Browder would be ordered to withdraw or dismiss the new Iowa Action within seven days of the entry of the proposed order (the "**Proposed Order**") (attached as **Exhibit 5** to the Slack Declaration).  If Mr. Browder dismisses the New Iowa Action during this period, no monetary sanctions would be imposed.

- If Mr. Browder fails to dismiss the New Iowa Action within seven days of the entry of the Proposed Order, the Court would then require Mr. Browder to pay a sanction of $100 for each business day thereafter that he fails to dismiss the New Iowa Action, up to ten business days.

- If Mr. Browder continues to fail to dismiss, with prejudice, the New Iowa Action after this 7-day grace period and 10 business day period, the Court would increase the daily sanction to $200 per business day, and that sanction would continue until Mr. Browder dismisses the New Iowa Action or the sanction reaches a cap of $10,000, subject to further review and adjustment by the Court.

- The Plan Administrator and Consumer Representative would submit their reasonable fees and expenses to the Court in connection with making the

Motion to enforce the Plan Injunctions and any action required to dismiss the New Iowa Action. The Court would then have the discretion to approve the amount of the sanction to be shared by the Plan Administrator and Consumer Representative in proportion to the cost and expenses, including legal fees, each expended.

68.     Courts routinely use sanctions to encourage a party to comply with court orders. *See In re Covelli*, 550 B.R. 256, 269 (Bankr. S.D.N.Y. 2016); *In re Davitch*, 336 B.R. 241, 252 (Bankr. W.D. Pa. 2006) (requiring a creditor to pay to a trustee $100 per day of noncompliance); *In re Nat'l Heritage Found., Inc*., 2013 WL 3167698, at *21 (Bankr. E.D. Va. June 21, 2013) (requiring a creditor, pursing litigation outside of bankruptcy court in violation of the court's Confirmation Order, to pay $500 per day to the debtor until it dismissed its claims with prejudice). The Court has broad discretion in shaping appropriate sanctions to serve these ends. *Id.* Indeed, Courts have imposed sanctions in similar circumstances to those here. *See In re Residential Cap., LLC*, 512 B.R. at 192  (enjoining a litigant that brought state law claims in violation of a plan injunction from continuing to pursue those claims, holding them in contempt, and holding that appropriate sanctions were an award of reasonable attorney's fees).

69.     Bankruptcy courts also have the power to structure sanctions to provide increasingly harsh penalties the longer noncompliant behavior continues. *See, e.g., In re Elegant Concepts, Ltd.*, 67 B.R. 914, 922 (Bankr. E.D.N.Y. 1986) (imposing sanctions of $100 per day that *pro se* litigants failed to withdraw a state law claim that violated the automatic stay, beginning ten days from the date of the court's order); *In re Amos*, 2010 WL 2026628, at *2 (Bankr. N.D. Ga. Feb. 18, 2010) (awarding debtors sanctions, starting at $100 per day that noncompliant conduct continued, and increasing to $500 per day over time).

70.     In *In re Covelli*, a litigant pursued a claim in state court against debtors in violation of the discharge injunction and despite the bankruptcy court's warnings that the litigant was required to pursue his claim in an adversary proceeding in bankruptcy. 550 B.R. at 270 (Bankr. S.D.N.Y. 2016). The court found the litigant in contempt, ordered that the litigant withdraw or dismiss his state court claim within seven days of the date of the contempt order, and ordered that, after the seven day period, the litigant would be required to pay $100 to debtors per day that the claim for a deficiency judgment was not withdrawn. *Id.* at 271.

71.     Here, the Court should impose a similar sanction structure to the one imposed in *In re Covelli* to provide Mr. Browder a final opportunity to comply with the Plan Injunctions without the imposition of monetary sanctions, and then institute a daily sanction to motivate Mr. Browder to comply, if necessary.

* * *

## CONCLUSION

The Plan Administrator and Consumer Representative respectfully request that this Court

grant the Motion and issue an order requiring that the New Iowa Action be dismissed, holding Mr.

Browder in contempt, and imposing sanctions if the New Iowa Action is not promptly dismissed.

Dated: July 15, 2021
      New York, New York

/s/ Richard W. Slack
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh
Richard W. Slack
David F. Hill, IV

*Attorneys for Plan Administrator*

/s/ Richard Levin
JENNER & BLOCK LLP
919 Third Avenue
New York, New York 10022
(212) 891-1600
Richard Levin
Email: rlevin@jenner.com

*Attorneys for Consumer Representative*