UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

------------------------------------------------------------ x

In re:

Ditech Holding Corporation, *et al.*,

Debtors.[1]

------------------------------------------------------------ x

Case No. 19-10412 (JLG)

Chapter 11

(Jointly Administered)

# MEMORANDUM DECISION AND ORDER SUSTAINING THE FORTY-SIXTH OMNIBUS OBJECTION (NO BASIS CONSUMER CREDITOR CLAIMS) WITH RESPECT TO CLAIMS OF ALETHIA HANKINS

**A P P E A R A N C E S :**

WEIL, GOTSHAL & MANGES LLP
*Attorneys for the Plan Administrator*
767 Fifth Avenue
New York, New York 10153
<u>By:</u>   Ray C. Schrock, P.C.
        Richard W. Slack, Esq.
        Sunny Singh, Esq.


JENNER & BLOCK LLP
*Attorneys for the Consumer Claims Representative*
919 Third Avenue
New York, NY 10022
<u>By:</u>   Richard Levin, Esq.


Ms. Alethia Hankins
*Appearing Pro Se*
670 Smith Road NE
Supply, NC 28462

---

[1] The confirmation of the Debtors' Third Amended Plan (as defined below) created the Wind Down Estates. The Wind Down Estates, along with the last four digits of their federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

Introduction[2]

Alethia Hankins (the "Claimant") filed Proofs of Claim Nos. 2740 and 21464 (collectively the "Claims") in these Chapter 11 Cases. They purport to assert unsecured claims against Ditech Financial LLC f/k/a Green Tree Servicing LLC ("Ditech") in the sums of $5 million and $24,000, respectively. In their Forty-Sixth Omnibus Claims Objection (the "Objection"),[3] the Plan Administrator and the Consumer Claims Representative (collectively, the "Estate Representatives") seek to disallow and expunge the Claims on the grounds that they fail to state claims for relief against Ditech. The Claimant, appearing pro se, responded to the Objection (the "Response").[4] The Estate Representatives submitted a joint reply to the Response (the "Reply").[5]

Pursuant to the Claims Procedures Order,[6] the Court conducted a Sufficiency Hearing on the Claims, at which time counsel for the Estate Representatives and Claimant, acting pro se, were heard by the Court. The legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss a complaint for failure to state a claim upon which

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Forty-Sixth Omnibus Claims Objection and the Third Amended Plan. References to "ECF No. __" herein are to documents filed in the electronic docket in these jointly administered cases under Case No. 19-10412 (the "Chapter 11 Cases").

[3] See Forty-Sixth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims) [ECF No. 2145].

[4] See Response of Alethia Hankins [ECF No. 2441].

[5] See Joint Reply of The Consumer Representative and Plan Administrator in Support of the Forty-Sixth Objection with Respect to Claim of Alethia Hankins (2740, 21464) [ECF No. 3539].

[6] See Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures [ECF No. 1632].

2

relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[7] *See* Claims Procedures Order ¶ 3(iv)(a).

As explained below, accepting all factual allegations asserted by the pro se Claimant in support of the Claims as true, drawing all reasonable inferences in the Claimant's favor, and interpreting the Claims and the Claimant's Response to raise the strongest arguments that they suggest, the Claims fail to state plausible claims for relief against Ditech. Accordingly, the Court sustains the Objection and disallows and expunges the Claims.

## Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

In 1997, Claimant executed a Manufactured Home Retail Installment Contract and Security Agreement (the "Loan") for the purchase of a manufactured home, i.e., a mobile home (the "Manufactured Home"). Reply ¶ 3. Green Tree Financing Corporation, now known as Ditech originated the Loan in the original principal balance of $28,034. The Loan is secured by the Manufactured Home. *Id.*

**The Chapter 11 Cases**

On February 11, 2019 (the "Petition Date"), Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates ("Debtors") filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.

---

[7] Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019 at 5:00 p.m. (prevailing Eastern Time) as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in the Debtors' Chapter 11 Cases (the "General Bar Date").[8] Thereafter, the Court extended the General Bar Date for consumer borrowers, twice, and ultimately to June 3, 2019 at 5:00 p.m. (prevailing Eastern Time) (the "Consumer Borrower Bar Date").[9]

On September 26, 2019, the Debtors confirmed their Third Amended Plan,[10] and on September 30, 2019, that plan became effective.[11] The Plan Administrator is a fiduciary appointed under the Third Amended Plan who is charged with the duty of winding down, dissolving and liquidating the Wind Down Estates. *See* Third Amended Plan, Art. I, ¶¶ 1.130, 1.184, 1.186. The Consumer Claims Representative is a fiduciary appointed under the Third Amended Plan who is responsible for the reconciliation and resolution of Consumer Creditor Claims and distribution of funds to holders of Allowed Consumer Creditor Claims in accordance with the Third Amended Plan. *Id.,* Art. I, ¶ 1.41. Under the plan, the Plan Administrator, on behalf of each of the Wind Down Estates, is authorized to object to all Administrative Expense

---

[8] *See* Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof [ECF No. 90].

[9] *See* Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers *Nunc Pro Tunc* [ECF No. 496].

[10] *See* Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors [ECF No. 1326] (the "Third Amended Plan"); Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors [ECF No. 1404].

[11] Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims [ECF No. 1449].

Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims; and the Consumer Claims Representative has the exclusive authority to object to all Consumer Creditor Claims. *See id.*, Art. VII, § 7.1.

**The Proof of Claim**

Claimant asserts that she received a loan modification from Ditech on her Loan in November 2018. She says that despite obtaining this modification, Ditech reported the account as delinquent to certain credit reporting agencies ("CRA"), noted the delinquency on her credit report, and sent her past due billing statements. Claim No. 2740 at 1; Claim No. 21464 at 4, 6, 10, 22.[12] In May 2019, Claimant sent Ditech a letter that purported to be a "Notice of Error" under Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2606, *et seq.* ("RESPA"). In that letter, Claimant disputed the purported status of the Loan and the notation on her credit report. Claim No. 21464 at 17-20; Claim No. 2740 at 16-19. Ditech investigated the claims and on June 4, 2019 sent a letter acknowledging that the delinquency on the account was in error and noting that they would correct the error. Claim No. 21464 at 12; Claim No. 2740 at 7. Thereafter, Ditech sent Claimant a notice informing her that she was behind in her mortgage payments and that Ditech had the right to commence foreclosure proceedings against the Manufactured Home. Claim No. 2740 at 8.

On April 25, 2019, Claimant filed Claim No. 21464 asserting an unsecured claim of $24,000 based on alleged improper loan servicing and collection by Ditech. Claim No. 21464 at 1-2. Claimant attached various billing statements, correspondence with Ditech and financial information in support of the Claims. According to the documentation, the Loan was a "Manufactured Home Account." *See id.* at 22-23. On November 9, 2019, after the Consumer

---

[12] References herein to pages of the Claims and Responses are cited to the particular PDF page of the document.

Borrower Bar Date expired, Claimant filed Claim No. 2740. That claim is not supported by a Proof of Claim form. Rather, it attaches a narrative in which Claimant asserts a claim of $5 million for damages that she allegedly suffered as a result of Ditech's false reports to the CRAs that she was delinquent on her loan payments. *See* Claim No. 2740 at 1. That narrative includes copies of correspondence between Claimant and Ditech, Claimant's redacted medical records and billing invoices from Ditech. The same supporting documentation attached to Claim No. 21464 was also attached to Claim No. 2740.

**Claims Procedures Order**

On November 19, 2019, the Court entered the Claims Procedures Order. Under that order, the Estate Representatives are authorized to file Omnibus Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order. *See* Claims Procedures Order ¶ 2(i)(a)-(h). A properly filed and served response to an Objection gives rise to a "Contested Claim" that will be resolved at a Claim Hearing. *Id.* ¶ 3(iv). The Estate Representatives have the option of scheduling the Claim Hearing as either a "Merits Hearing" or a "Sufficiency Hearing." *Id.* ¶ 3(iv)(a),(b). A "Merits Hearing" is an evidentiary hearing on the merits of a Contested Claim. A "Sufficiency Hearing" is a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. The legal standard of review that will be applied by the Court at a Sufficiency Hearing is equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim upon which relief can be granted. *Id.* ¶ 3(iv)(a).

**The Objection**

In the Objection, the Estate Representatives contend that the Court should disallow and expunge the Claims because they fail to state cognizable claims against Ditech. *See* Objection ¶ 13; Reply ¶¶ 19-28.

## Applicable Legal Standards

Under section 502(a) of the Bankruptcy Code, "a claim ... proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). The filing of a proof of claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bank. P. 3001(f). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See, e.g., Rozier v. Rescap Borrower Claims Tr. (In re Residential Capital, LLC)*, 15 Civ. 3248(KPF), 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 09-50026, 2012 WL 1886755, at *3 (S.D.N.Y. May 12, 2012); *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd sub nom. Peter J. Solomon Co., L.P. v. Oneida, Ltd.*, No. 09-cv-2229, 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010). Section 502(b) sets forth the grounds for disallowing a properly filed proof of claim. *See* 11 U.S.C. § 502(b); *see also Travelers Cas. and Sur. Co. of Am. v. Pacific Gas and Elec. Co.,* 549 U.S. 443, 449 (2007) ("But even where a party in interest objects [to a claim], the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b)").

In filing the Objection, the Estate Representatives initiated a contested matter. *See* Fed. R. Bankr. P. 3007 advisory committee's note ("[t]he contested matter initiated by an objection to a claim is governed by Rule 9014. . ."). *See also In re Tender Loving Care Health Servs., Inc.*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the

objection has initiated a contested matter"). Bankruptcy Rule 9014 governs contested matters. The rule does not explicitly provide for the application of Bankruptcy Rule 7012. However, Bankruptcy Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply." Fed. R. Bankr. P. 9014. The Court did so here. Under the Claims Procedures Order, the legal standard of review the Court applies at a Sufficiency Hearing is equivalent to the standard applied by the Court under Rule 12(b)(6) on a motion to dismiss for failure to state a claim upon which relief could be granted. *See* Claims Procedure Order ¶ 3(iv)(a). *See also In re 20/20 Sport, Inc.*, 200 B.R. 972, 978 (Bankr. S.D.N.Y. 1996) ("In bankruptcy cases, courts have traditionally analogized a creditor's claim to a civil complaint [and] a trustee's objection to an answer. . . .").

In applying Rule 12(b)(6) to the Claims, the Court assesses the sufficiency of the facts alleged in support of the Claims in light of the pleading requirements under Rule 8(a) of the Federal Rules of Civil Procedure.[13] Rule 8(a)(2) states that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). To meet that standard, the Claims "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("*Iqbal*") (citations omitted); *accord Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) ("*Twombly*"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 570. To satisfy Rule 12(b)(6), the "pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008)

---

[13] Rule 8 is incorporated herein pursuant to Bankruptcy Rule 7008.

8

(citation omitted). In considering whether that standard is met for a particular claim, the court must assume the truth of all material facts alleged in support of the claim and draw all reasonable inferences in the claimant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, the court "need not accord 'legal conclusions, deductions or opinions that are couched as factual allegations . . . a presumption of truthfulness.'" *Hunt v. Enzo Biochem, Inc.*, 530 F.Supp.2d 580, 591 (S.D.N.Y. 2008) (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)). In short, "[i]n ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (citation and internal quotation marks omitted). Where, as here, the Claimant is proceeding pro se, the Court will liberally construe the Claims, although the Claims must nonetheless be supported by specific and detailed factual allegations that provide a fair explanation for the basis of the Claims and the legal grounds for recovery against Ditech. *Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (citing *Iwachiw v. New York City Bd. of Elections*, 126 Fed. Appx. 27, 29 (2d Cir. 2005)).

## Discussion

The essence of the Claims is that Ditech wrongfully reported inaccurate information about the status of the Loan to the CRAs. The Estate Representatives contend, and the Court finds that the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, is applicable to the conduct at issue in the Claims.[14] The FCRA is a "comprehensive statutory scheme designed to regulate the consumer reporting industry." *Ross v. FDIC*, 625 F. 3d 808, 812 (4th Cir. 2010). It

---

[14] By its terms, the FCRA preempts other common law claims related to credit reporting, such as defamation or negligence. 15 U.S.C. § 1681h(e), as well as other state laws regulating an information furnisher's duties. § 1681t(b)(1)(F); *see MacPherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45 (2d Cir. 2011).

governs the accuracy of credit reporting information on customers. Section 1681s-2 imposes duties on furnishers of information (like Ditech) to CRAs. Section 1681s-2(a) addresses the responsibilities of an information furnisher to provide accurate information to a CRA, and section 1681s-2(b) sets forth the duties of an information furnisher in the face of a dispute regarding the completeness or accuracy of a consumer's credit report. *See* § 1681s-2; *see also Sprague v. Salisbury Bank and Trust Company*, 969 F.3d 95, 98-99 (2d Cir. 2020) (discussing application of sections 1681s-2(a) & (b)).

Under section 1681s-2(a), information furnishers must refrain from knowingly reporting inaccurate information, *see* § 1681s–2(a)(1), and must correct any information they later discover to be inaccurate. *See* § 1681s–2(a)(2). The FCRA affords consumers the right to dispute any information reported to a credit reporting agency. *See* § 1681g(c)(1)(B)(iii). Moreover, in appropriate circumstances, a consumer may bring a civil cause of action against any person who willfully or negligently fails to comply with any requirement imposed under FCRA and, as appropriate, recover actual or statutory damages, punitive damages, costs, and attorney's fees. *See* § 1681n (civil liability for willful noncompliance); § 1681o (civil liability for negligent noncompliance). However, section 1681s-2(d) specifically limits enforcement of section 1681s-2(a) exclusively to federal agencies and officials and select state officials. *See* § 1681s-2(d). Accordingly, "the FCRA does not provide a private cause of action for violations of Section 1681s-2(a)." *Sprague v. Salisbury Bank and Trust Co.*, 969 F.3d at 99 (citing § 1682s-2(d)). *Accord Longman v. Wachovia Bank, N.A.,* 702 F.3d 148, 151 (2d Cir. 2012) ("[T]he statute plainly restricts enforcement of [§ 1681s-2(a)] to federal and state authorities.").

Section 1681s-2(b) directs that after being notified that there is a dispute regarding the accuracy or completeness of a consumer creditor report, an information furnisher must take steps

to address the problem.[15] That notice must come from a CRA, not the consumer. *See* § 1681i(a)(2) (providing that once a "consumer reporting agency receives notice of a dispute from any consumer. . . the agency shall provide notification of the dispute to any person who provided any item of information in dispute"); *see also Sprague v. Salisbury Bank and Trust Co.,* 969 F.3d at 99 ("The statute is clear that the notice triggering these duties [under section 1681s-2(b)] must come from a CRA, not the consumer."); *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011) ("Notice under § 1681i(a)(2) must be given by a credit reporting agency, and cannot come directly from the consumer."); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009) ("[Section 1681s–2(b)] obligations are triggered upon notice of dispute—that is, when a person who furnished information to a CRA receives notice from the CRA that the consumer disputes the information." (internal quotation marks omitted)).

---

[15] Upon receipt of notice of a dispute regarding the completeness or accuracy of any information provided to a CRA, section 1681s-2(b) calls for the information furnisher to:

>  (A) conduct an investigation with respect to the disputed information;
>
>  (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
>  (C) report the results of the investigation to the consumer reporting agency;
>
>  (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
>  (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>
>>   (i) modify that item of information;
>>
>>   (ii) delete that item of information; or
>>
>>   (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b).

The Claimant contends that on or about May 2, 2019, she submitted a dispute regarding the accuracy of the credit report to Ditech and that Ditech responded by correcting the inaccurate information. *See* Claim No. 21464, p. 12, 17-20; Claim No. 2740, p. 7, 16-19. Claimant does not allege she ever submitted a dispute to any CRA or that Ditech failed to conduct a reasonable investigation in response to a dispute communicated to it by a CRA. As a result, regardless of what she communicated directly to Ditech and how Ditech responded, Claimant has not stated a claim for relief under section 1681s-2(b). Without submitting a dispute to a CRA, Claimant has failed to state a claim for relief under section 1681s-2(b). *See Sprague v. Salisbury Bank & Tr. Co.*, 969 F.3d at 99 ("Appellants do not even allege that they notified a CRA of the discrepancy. The Amended Complaint alleges only that, after receiving the Report, Sprague directly notified Salisbury of the Report's inaccuracy . . . This alone is insufficient to state a claim under Section 1681s-2(b)."); *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1154 (9th Cir. 2009) ("[N]otice of a dispute received directly from the consumer does not trigger furnishers' duties under [§ 1681s-2(b)]."); *Elmore v. N. Fork Bancorporation, Inc.*, 325 F. Supp. 2d 336, 340 (S.D.N.Y. 2004) (noting that the terms of the statute are quite clear. "Even assuming the existence of a private right of action for violation of Section 1681s–2(b), that right of action exists only for violations post-dating the furnisher's receipt of a report from the credit reporting agency.").

The Claimant also asserts that, by continuing to report her as delinquent under the Loan, after her loan modification, Ditech furnished false information to the CRAs. When construed in a light most favorable to the Claimant, at best, that allegation asserts a violation of section 1681s-2(a). It fails to state a claim for relief against Ditech because there is no private right of action under section 1681s-2(a). *See, e.g., Howard v. Mun. Credit Union*, No. 05 Civ. 7488(LAK), 2008 WL 782760, at * 7 (S.D.N.Y. Mar. 25, 2008) (granting Rule 12(b)(6) motion to dismiss

12

claim for relief under section 1681s-2(a) on grounds that provision does not provide a private right of action.)

The Claimant fails to state a claim for relief against Ditech under FCRA. Likewise, to the extent that Claimant purports to assert a claim against Ditech under RESPA, her claim fails as a matter of law. RESPA imposes certain servicing requirements on "federally related mortgage." *See* 12 U.S.C. § 2605. A "federally related mortgage" is secured by lien on a residential real property for the occupancy of one to four units. *See* § 2602(1). Regulation X provides that manufactured homes are included in the definition of "federally related mortgage" but only to extent that it is secured by the real property on which the manufactured home is placed. 12 CFR § 1024.2(b). The Claimant does not allege that her Loan is a "federally related mortgage." Rather she has indicated that the Loan is related to a Manufactured Home only. Claim No. 21464 at 22-23. The Claimant does not and cannot assert that the Loan is also secured by the real property upon which the Manufactured Home sits. RESPA does not apply because the Loan is not a "federally related mortgage." Accordingly, Claimant cannot state a claim for relief against Ditech under RESPA.

## Conclusion

Based on the foregoing, the Court sustains the Objection and disallows and expunges the Claims.

IT IS SO ORDERED.

Dated: New York, New York
       August 4, 2021

                                            /s/ *James L. Garrity, Jr.*
                                            Hon. James L. Garrity, Jr.
                                            U.S. Bankruptcy Judge