| | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | | NOT FOR PUBLICATION |

------------------------------------------------------------ x
In re:                                            :
                                                  :   Case No. 19-10412 (JLG)
Ditech Holding Corporation, *et al.*,             :   Chapter 11
                                                  :
                        Debtors.[1]               :   (Jointly Administered)
                                                  :
------------------------------------------------------------ x

## MEMORANDUM DECISION AND ORDER SUSTAINING THE TWENTY-SECOND OMNIBUS OBJECTION (INSUFFICIENT DOCUMENTATION AND UNTIMELY UNSECURED CONSUMER CREDITOR CLAIMS) WITH RESPECT TO CLAIM OF <u>TERRENCE L. GRUNDY</u>

**A P P E A R A N C E S :**

JENNER & BLOCK LLP
*Attorneys for the Consumer Claims Representative*
919 Third Avenue
New York, NY 10022
<u>By:</u>    Richard Levin, Esq.


Mr. Terrence L. Grundy
*Appearing Pro Se*
15507 S. Normandie
#403
Gardena, CA 90247

---

[1] The confirmation of the Debtors' Third Amended Plan (as defined below) created the Wind Down Estates. The Wind Down Estates, along with the last four digits of their federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction[2]

Terrence L. Grundy (the "Claimant") filed Proof of Claim 24300 against Ditech Financial LLC f/k/a Green Tree Servicing LLC in these Chapter 11 Cases. The Claim recites that it is an unsecured claim for damages in the sum of $10 million. In support of the Claim and in substance, the Claimant contends that the Debtors reported incorrect information to a company known as DataVerify and that the Debtors assessed improper fees to his account.

In the Twenty-Second Omnibus Claims Objection (the "Objection"),[3] the Consumer Claims Representative seeks to disallow and expunge the Claim. The Claimant, appearing pro se responded to the Objection (the "Response").[4] The Consumer Claims Representative submitted a reply to the Response (the "Reply").[5] The Consumer Claims Representative contends that the Claim fails to state a claim for relief against the Debtors. The Claimant disputes that position. Pursuant to the Claims Procedures Order,[6] the Court conducted a Sufficiency Hearing on the Claim. The Claimant and Consumer Claims Representative appeared at the hearing and were heard in support of their respective positions. The legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Twenty-Second Omnibus Claims Objection and the Third Amended Plan, as applicable. References hereinafter to "ECF No.__" are to documents filed in the electronic docket in these jointly administered cases under Case No. 19-10412 (the "Chapter 11 Cases").

[3] *See* Consumer Claims Trustee's Twenty-Second Omnibus Objection to Proofs of Claims (Insufficient Documentation and Untimely Unsecured Consumer Creditor Claims) [ECF No. 2320].

[4] *See* Objection to Motion [ECF No. 2595].

[5] *See* Reply of Consumer Representative in Support of the Twenty-Second Omnibus Objection with Respect to the Claim of Terrence Grundy [ECF No. 3538].

[6] *See* Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures [ECF No. 1632] (the "Claims Procedures Order").

2

upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[7] *See* Claims Procedures Order ¶ 3(iv)(a).

As explained below, the Court disallows and expunges the Claim as time-barred since Claimant filed it approximately four months after the Consumer Borrower Bar Date expired and has not demonstrated excusable neglect in failing to timely file the Claim. Moreover, and in any event, the Court finds that accepting all factual allegations asserted by the pro se Claimant in support of the Claim as true, drawing all reasonable inferences in the Claimant's favor, and interpreting the Claim and the Response to raise the strongest arguments that they suggest, the Claim fails to state a plausible claim against the Debtors. For those reasons, the Court sustains the Objection and disallows and expunges the Claim.

## Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

On December 21, 2007, Claimant executed a note and deed of trust (the "Mortgage Loan") in favor of Bank of America, N.A. ("BoA"). Reply ¶ 1. The Mortgage Loan was secured by real property located at 500 North Willowbrook Avenue S-1, Compton, CA 90220 (the "Property"). *Id.* As of December 1, 2011, BoA transferred servicing of the Mortgage Loan to Green Tree Servicing, LLC ("Green Tree"). In August of 2015, Green Tree merged with DT Holdings LLC and Ditech Mortgage Corp. and was renamed Ditech Financial LLC ("Ditech").

---

[7]   Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

*Id.* Effective November 1, 2019, Ditech transferred the servicing of the Mortgage Loan to Shellpoint Mortgage Servicing. *Id.*

**The Chapter 11 Cases**

On February 11, 2019 (the "Petition Date"), Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates ("Debtors") filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court. The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019 at 5:00 p.m. (prevailing Eastern Time) as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in the Debtors' Chapter 11 Cases (the "General Bar Date").[8] Thereafter, the Court extended the General Bar Date for consumer borrowers, twice, and ultimately to June 3, 2019 at 5:00 p.m. (prevailing Eastern Time) (the "Consumer Borrower Bar Date").[9]

On September 26, 2019, the Debtors confirmed their Third Amended Plan,[10] and on September 30, 2019, that plan became effective.[11] The Consumer Claims Representative is a fiduciary appointed under the Third Amended Plan who is responsible for the reconciliation and

---

[8] *See* Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof [ECF No. 90].

[9] *See* Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers *Nunc Pro Tunc* [ECF No. 496].

[10] *See* Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors [ECF No. 1326] (the "Third Amended Plan"); Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors [ECF No. 1404].

[11] Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims [ECF No. 1449].

resolution of Consumer Creditor Claims and distribution of funds to holders of Allowed Consumer Creditor Claims in accordance with the Third Amended Plan. *Id.*, Art. I, ¶ 1.41. Under the plan, the Consumer Claims Representative has the exclusive authority to object to all Consumer Creditor Claims. *See id.*, Art. VII, § 7.1.

**The Proof of Claim**

On October 7, 2019, approximately four months after the Consumer Bar Date expired, the Claimant, acting pro se, filed the Claim. The Claimant alleges that he holds a $10 million unsecured "Consumer Claim[]" against Ditech. *See* Claim at 2.[12] He did not include further explanation of the Claim or documents in support of the Claim.

In his Response, the Claimant cites two grounds in support of the Claim. First, he contends that Ditech injured him when it submitted an inaccurate credit report to DataVerify and failed to cause DataVerify to correct the inaccurate report. Claimant explains that in August 2018, he contracted to purchase investment property in Indiana, and that he was seeking financing to underwrite the purchase. He asserts that at some point in the process, the mortgage underwriter discovered that Ditech reported to DataVerify that in 2016, a foreclosure proceeding had been commenced against the Property. Response at 4. Claimant maintains (and apparently, there is no dispute) that the DataVerify report is incorrect, that the Property was not, and had not been the subject of a foreclosure action, and that Ditech was informed of the mistake, acknowledged it, and failed to correct it. *Id.* at 1. He asserts that as a result of Ditech's failure to correct the inaccurate information posted on DataVerify, the deal for the investment property was cancelled and he lost his $5,800 down payment on the investment property. *Id.* In the Response, Claimant provides copies of correspondence that he had with Ditech and his realtor in

---

[12]   References herein to pages of the Claim and Responses are cited to the particular PDF page of the document.

5

Indiana. *See id.* at 2-8. Second, the Claimant complains that Ditech charged him late fees of $49.63 when his Mortgage Loan payments were not, in fact, late and that Ditech "harassed and threatened [him] with phone calls all day and night long regarding these wrong overdue charges." *Id.* at 6. In support of these allegations, the Claimant has attached a text version of a billing statement dated July 16, 2019, which shows a total amount due of $4,916.47. *Id.* at 8. The statement provides that this amount was determined by adding "Total New Fees and Charges" of $49.63 to his regular payment of principal, interest, escrow – which subtotaled $1,443.22. *Id.* Also, on the same billing statement is an amount of $3,423.63 which is designated the "Past Due Amount." *Id.*

**Claims Procedures Order**

On November 19, 2019, the Court entered the Claims Procedures Order. Under that order, the Consumer Claims Representative is authorized to file Omnibus Objections seeking reduction, reclassification, or disallowance of Claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order. *See* Claims Procedures Order ¶ 2(i)(a)-(h). A properly filed and served response to an Objection gives rise to a "Contested Claim" that will be resolved at a Claim Hearing. *Id.* ¶ 3(iv). The Consumer Claims Representative has the option of scheduling the Claim Hearing as either a "Merits Hearing" or a "Sufficiency Hearing." *Id.* ¶ 3(iv)(a),(b). A "Merits Hearing" is an evidentiary hearing on the merits of a Contested Claim. A "Sufficiency Hearing" is a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. The legal standard of review that will be applied by the Court at a Sufficiency Hearing is equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim upon which relief can be granted. *Id.* ¶ 3(iv)(a).

**The Objection**

In the Objection, the Consumer Claims Representative contends that the Court should disallow and expunge the Claim because it was not timely filed, and because it fails to state a cognizable claim against Ditech. *See* Objection ¶ 10; Reply ¶¶ 13-25. The Court considers those matters below.

## Applicable Legal Standards

Under section 502(a) of the Bankruptcy Code, "a claim ... proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). The filing of a proof of claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bank. P. 3001(f). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See, e.g., Rozier v. Rescap Borrower Claims Tr. (In re Residential Capital, LLC)*, 15 Civ. 3248(KPF), 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 09-50026, 2012 WL 1886755, at *3 (S.D.N.Y. May 12, 2012); *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd sub nom. Peter J. Solomon Co., L.P. v. Oneida, Ltd.*, No. 09-cv-2229, 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010). Section 502(b) sets forth the grounds for disallowing a properly filed proof of claim. *See* 11 U.S.C. § 502(b); *see also Travelers Cas. and Sur. Co. of Am. v. Pacific Gas and Elec. Co.*, 549 U.S. 443, 449 (2007) ("But even where a party in interest objects [to a claim], the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b)").

In filing the Objection to the Claim, the Consumer Claims Representative initiated a contested matter. *See* Fed. R. Bankr. P. 3007 advisory committee's note ("[t]he contested matter initiated by an objection to a claim is governed by Rule 9014. . ."). *See also In re Tender Loving*

7

*Care Health Servs., Inc.*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter"). Bankruptcy Rule 9014 governs contested matters. The rule does not explicitly provide for the application of Bankruptcy Rule 7012. However, Bankruptcy Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply." Fed. R. Bankr. P. 9014. The Court did so here. Under the Claims Procedures Order, the legal standard of review the Court applies at a Sufficiency Hearing is equivalent to the standard applied by the Court under Rule 12(b)(6) on a motion to dismiss for failure to state a claim upon which relief could be granted. *See* Claims Procedure Order ¶ 3(iv)(a). *See also In re 20/20 Sport, Inc.*, 200 B.R. 972, 978 (Bankr. S.D.N.Y. 1996) ("In bankruptcy cases, courts have traditionally analogized a creditor's claim to a civil complaint [and] a trustee's objection to an answer. . . ").

In applying Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the Claim in light of the pleading requirements under Rule 8(a) of the Federal Rules of Civil Procedure.[13] Rule 8(a)(2) states that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). To meet that standard, the Claim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("*Iqbal*") (citations omitted); *accord Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) ("*Twombly*"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 570. To satisfy Rule 12(b)(6), the "pleadings must create the possibility of a right to relief that is more than

---

[13]    Rule 8 is incorporated herein pursuant to Bankruptcy Rule 7008.

8

speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted). In considering whether that standard is met for a particular claim, the court must assume the truth of all material facts alleged in support of the claim and draw all reasonable inferences in the claimant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, the court "need not accord 'legal conclusions, deductions or opinions that are couched as factual allegations . . . a presumption of truthfulness.'" *Hunt v. Enzo Biochem, Inc.*, 530 F.Supp.2d 580, 591 (S.D.N.Y. 2008) (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)). In short, "[i]n ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (citation and internal quotation marks omitted). Where, as here, the Claimant is proceeding pro se, the Court will liberally construe the Claim, although the Claim must nonetheless be supported by specific and detailed factual allegations that provide a fair understanding for the basis of the claim and the legal grounds for recovery against a debtor. *Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (citing *Iwachiw v. New York City Bd. of Elections*, 126 Fed. Appx. 27, 29 (2d Cir. 2005)).

## **Discussion**

<u>Whether the Claim is Time Barred</u>

As noted, pursuant to Bankruptcy Rule 3002, the Debtors fixed the Consumer Borrower Bar Date as June 3, 2019. The Claimant filed the Claim on October 7, 2019. Accordingly, it is not timely filed. The Consumer Claims Representative argues that the Court should expunge the Claim on that basis alone. Claimant does not deny that he filed the Claim after the bar date

expired. However, he argues that the bar date is not binding on him because he did not receive actual notice of it. *See* Response at 1.

Bar dates are "critically important to the administration of a successful chapter 11 case." *In re Musicland Holding Corp.,* 356 B.R. 603, 607 (Bankr.S.D.N.Y.2006). They are not designed merely as a "a procedural gauntlet" but rather serve "as an integral part of the reorganization process" and the efficient administration of bankruptcy cases. *In re Hooker Invest., Inc.,* 937 F.2d 833, 840 (2d Cir.1991). Rule 9006(b)(1) governs the permissibility of filing a late claim in a chapter 11 case. *See Pioneer Inv. Servc. Co. v. Brunswick Associated Ltd. P'ship,* 507 U.S. 380, 389 (1993) ("The 'excusable neglect' standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases but not in Chapter 7 cases."); *see also Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.),* 419 F.3d 115, 121 (2d Cir. 2005) ("Rule 9006 governs the admission of proofs of claim filed after a court-ordered bar date.") (citing *Pioneer*, 507 U.S. at 382). Under that rule, the court has discretion to extend the bar date to late filed claims "where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1). In *Pioneer,* the Supreme Court construed the phrase "excusable neglect" as it is used in Bankruptcy Rule 9006(b)(1) and concerned the filing of late claims. It found that the determination is an equitable one that takes account of all of the surrounding circumstances:

> These include. . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer*, 507 U.S. at 395. The burden of proof rests with the party asserting excusable neglect. *In re Enron Corp*, 419 F.3d at 121.

10

Creditors are entitled to receive notice of the bar date. The nature of the notice depends on whether the creditor is known or unknown. A known creditor is one whose identity is either known or "reasonably ascertainable by the debtor." *Tulsa Prof'l Collection Serv., Inc. v. Pope,* 485 U.S. 478, 490 (1988). An unknown creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 317 (1950). Before considering application of the *Pioneer* standards to the Objection, the Court considers whether the Ditech provided Claimant with adequate notice of the Consumer Borrower Bar Date.

Ditech bears the burden of demonstrating that the Claimant received adequate notice of the bar date. *In re Massa*, 187 F.3d 292, 296 (2d Cir. 1999). Known creditors are entitled to actual notice of the bar date, and unknown creditors are generally entitled to notice by publication. *See DePippo v. Kmart Corp.*, 335 B.R. 290, 295–96 (S.D.N.Y. 2005) ("While actual notice is required if the creditor is a 'known' creditor, constructive notice is sufficient where a creditor is 'unknown.'"); *In re BGI, Inc.*, 476 B.R. 812, 820 (Bankr. S.D.N.Y. 2013) ("For unknown creditors, constructive notice, such as notice by publication, will suffice.")  As of the Petition Date, there was no pending action between Claimant and Ditech and Claimant was not scheduled as a creditor on Ditech's schedules. *See* Schedules of Assets and Liabilities [ECF No. 300]. *See* Reply ¶ 23. Claimant was an unknown creditor of Ditech and was entitled to receive constructive notice of the Consumer Borrower Bar Date. *See In re Chemtura Corp.*, No. 09-11233 (JLG), 2016 WL 11651714, at *12 (Bankr. S.D.N.Y. Nov. 23, 2016) (holding that a "'known' creditor is one whose identity is either known or 'reasonably ascertainable by the debtor . . . a creditor's identity is 'reasonably ascertainable' if that creditor can be identified through 'reasonably diligent efforts . . . Reasonably diligent efforts does not require

11

impracticable and extended searches . . . [a] debtor need only focus the search on its own books and records") (internal citations and quotations omitted); *In re Drexel Burnham Lambert Grp. Inc.*, 151 B.R. 678, 680-81 (Bankr. S.D.N.Y.), *aff'd*, 157 B.R. 532 (S.D.N.Y. 1993) (noting that "[f]or obvious reasons, debtors need not provide actual notice to unknown creditors. It is widely held that unknown creditors are entitled to no more than constructive notice (i.e., notice by publication) of the bar date").

Pursuant to the Court's order, Ditech published Notice of the Consumer Borrower Bar Date as well as the procedures for filing claims herein in national editions of the *New York Times* and *USA Today*.[14] The Court found that such publication "shall be deemed good, adequate and sufficient publication notice of the Bar Dates and the Procedures for filing proofs of claim in these Chapter 11 Cases."[15]  That notice satisfies due process requirements for unknown creditors like the Claimant. *See In re Motors Liquidation Co.*, 576 B.R. 761, 778 (Bankr. S.D.N.Y. 2017), *aff'd*, 599 B.R. 706 (S.D.N.Y. 2019) (unknown creditor was provided with constructive notice of the claims bar date through publication in global, national, and local newspapers); *In re XO Commc'n, Inc.*, 301 B.R. 782, 795 (Bankr. S.D.N.Y. 2003) (finding that "Teligent was an 'unknown' creditor at the time the Debtor filed its Schedules and, therefore, Teligent's due process rights were satisfied with publication notice in *The Wall Street Journal*."); *In re Best Prod. Co., Inc.,* 140 B.R. 353, 358 (Bankr. S.D.N.Y. 1992) (holding that "publication of the Bar Date notice was reasonably calculated to apprise unknown creditors of the necessity to file proofs of claim before the October 31 deadline. . .").

---

[14]    *See* Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof [ECF No. 90]; Affidavit of Publication (of Bar Date) [ECF No. 3387].

[15]    Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof [ECF No. 90] ¶ 12.

The Claimant bears the burden of demonstrating his excusable neglect in failing to timely file the Claim. *In re Enron Corp.*, 419 F.3d at 121 ("The burden of proving excusable neglect lies with the late-claimant.") (quoting *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000)). Courts look to the factors set forth in *Pioneer* to determine whether excusable neglect is pled. They do not assign equal weigh to each factor. Typically, "the length of the delay, the danger of prejudice, and the movant's good faith 'usually weigh in favor of the party seeking the extension.'" *Id.* at 122 (quoting *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003), *cert. denied*, 540 U.S. 1105 (2004)). The reason for the delay may be the most important factor. "While prejudice, length of delay, and good faith might have more relevance in a close[d] case, the reason-for-delay factor will always be critical to the inquiry." *Silivanch*, 333 F.3d at 366 n.7 (quoting *Graphic Commc'ns Int'l Union v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5–6 (1st Cir. 2001) (alterations in original)). Here, the nearly four month delay in filing the $10 million Claim is both significant and prejudicial to the Debtors and Consumer Claims Representative. Claimant has made no effort to explain why he did not timely file the Claim or to address any of the *Pioneer* factors. He has failed to demonstrate excusable neglect in the untimely filing of the Claim. Accordingly, the Court disallows and expunges the late-filed Claim. *See In re DDi Corp.*, 304 B.R. 626, 630 (Bankr. S.D.N.Y. 2004) (granting debtor's motion to expunge the class Claim as untimely late); *In re Alexander's Inc.,* 176 B.R. 715, 723 (Bankr. S.D.N.Y. 1995) (granting debtor's motion to expunge a claim filed one year after the bar date and holding that the delay in filing did not result from "excusable neglect."); *In re New York Seven-Up Bottling Co., Inc.,* 153 B.R. 21, 24 (Bankr. S.D.N.Y. 1993) (granting debtor's motion to expunge the claims of Great Waters and Poland Spring as untimely).

Whether The Claim Asserts A
<u>Claim For Relief Against Ditech</u>

Claimant argues that he is entitled to recover damages from Ditech because: (i) Ditech reported incorrect data to DataVerify and later failed to correct that information; and (ii) Ditech assessed improper fees to his account. Assuming, *arguendo,* that Claimant could demonstrate grounds excusing his failure to timely file the Claim, the Court finds that it nonetheless will expunge the Claim because it fails to state a claim for relief against Ditech. The Court considers those matters below.

Claimant asserts that he was deprived of the opportunity to purchase investment property in Indiana when Ditech reported incorrect information to DataVerify which caused the sale of the Indiana property to be terminated prior to closing and resulted in the loss of his down payment. Response at 1. Specifically, in 2016 Ditech reported to DataVerify that foreclosure on his Property was commenced. *Id.* Claimant asserts that upon learning of this mistake on his credit report, he immediately contacted Ditech who he claims admitted that the foreclosure report was incorrect. *Id.* at 1-3. He maintains that after sending several letters and emails to Ditech in which he reported the problem, Ditech refused to correct the error by taking the information off of DataVerify. *Id.* Claimant states that as a result of Ditech's failure to remove or correct this information, the contract to purchase his second home was cancelled at the last minute and he lost his down payment of $5,800.

The Consumer Claims Representative reads those allegations in support of the Claim and the arguments in the Response as purporting to assert claims against Ditech under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq.* ("FCRA"). The Claimant does not object to that characterization of the Claim. The Court will consider whether the Claim states grounds for relief under FCRA.

14

FCRA is a "comprehensive statutory scheme designed to regulate the consumer reporting industry." *Ross v. FDIC*, 625 F. 3d 808, 812 (4th Cir. 2010). It governs the accuracy of credit reporting information on customers. *See* 15 U.S.C. § 1681, *et. seq*. Section 1681s-2 of FCRA imposes duties on furnishers of information, like Ditech, to consumer reporting agencies ("CRA"), like DataVerify. Section 1681s-2(a) addresses a furnisher's responsibilities under FCRA to provide accurate information to a CRA, and section 1681s-2(b) sets forth an information furnisher's duties in the face of a dispute regarding the completeness or accuracy of a consumer's credit report. *See* § 1681s-2; *see also Sprague v. Salisbury Bank and Trust Company*, 969 F.3d 95, 98-99 (2d Cir. 2020) (discussing application of sections 1681s-2(a) & (b).

Under section 1681s-2(a), information furnishers must refrain from knowingly reporting inaccurate information, *see* § 1681s–2(a)(1), and must correct any information they later discover to be inaccurate. *See* § 1681s–2(a)(2). Under FCRA, consumers have the right to dispute any information reported to a credit reporting agency. *See* § 1681g(c)(1)(B)(iii). Moreover, in appropriate circumstances, a consumer may bring a civil cause of action against any person who willfully or negligently fails to comply with any requirement imposed under the FCRA and, as appropriate, recover actual or statutory damages, punitive damages, costs, and attorney's fees. *See* § 1681n (civil liability for willful noncompliance); § 1681o (civil liability for negligent noncompliance). However, section 1681s-2(d) specifically limits enforcement of section 1681s-2(a) exclusively to federal agencies and officials and select state officials. *See* § 1681s-2(d). Accordingly, "the FCRA does not provide a private cause of action for violations of Section 1681s-2(a)." *Sprague v. Salisbury Bank and Trust Co.*, 969 F.3d at 99 (citing § 1682s-2(d)). *Accord Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) ("[T]he statute plainly restricts enforcement of [§ 1681s-2(a)] to federal and state authorities.").

15

Section 1681s-2(b) mandates that an information furnisher take certain steps after being notified that there is a dispute regarding the accuracy or completeness of a consumer creditor report.[16] The statute is clear that such notice must come from a CRA, not the consumer. *See* § 1681i(a)(2) (providing that once a "consumer reporting agency receives notice of a dispute from any consumer. . . the agency shall provide notification of the dispute to any person who provided any item of information in dispute"); *see also Sprague v. Salisbury Bank and Trust Co.,* 969 F.3d at 99 ("The statute is clear that the notice triggering these duties [under section 1681s-2(b)] must come from a CRA, not the consumer."); *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011) ("Notice under § 1681i(a)(2) must be given by a credit reporting agency, and cannot come directly from the consumer."); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009) ("[Section 1681s–2(b)] obligations are triggered upon notice of

---

[16] Upon receipt of notice of a dispute regarding the completeness or accuracy of any information provided to a CRA, section 1681s-2(b) calls for the information furnisher to:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--

    (i) modify that item of information;

    (ii) delete that item of information; or

    (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b).

dispute—that is, when a person who furnished information to a CRA receives notice from the CRA that the consumer disputes the information." (internal quotation marks omitted)).

Claimant asserts that Ditech furnished inaccurate information to DataVerify and refused to correct the information when he notified Ditech of the error. *See* Response at 1. He maintains that "[he] sent letters and emails to Ditech pleading with them to resolve this situation. They refused." *Id.* But Claimant has not alleged that he informed the CRA (DataVerify) of the error and requested that they remove the inaccurate information from his record, or that DataVerify communicated that dispute to Ditech, and that Ditech then failed to conduct a reasonable investigation in response to the notification by DataVerify. Because a dispute filed directly with a furnisher does not trigger an affirmative duty to investigate the issues, Claimant fails to assert a claim at law against Ditech under section 1681s-2(b). *See Sprague v. Salisbury Bank & Tr. Co.*, 969 F.3d 95, 99 (2d Cir. 2020) ("Appellants do not even allege that they notified a CRA of the discrepancy. The Amended Complaint alleges only that, after receiving the Report, Sprague directly notified Salisbury of the Report's inaccuracy . . . This alone is insufficient to state a claim under Section 1681s-2(b)."); *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1154 (9th Cir. 2009) ("[N]otice of a dispute received directly from the consumer does not trigger furnishers' duties under [§ 1681s-2(b)]."); *Elmore v. N. Fork Bancorporation, Inc.*, 325 F. Supp. 2d 336, 340 (S.D.N.Y. 2004) (noting that the terms of the statute are quite clear. "Even assuming the existence of a private right of action for violation of Section 1681s–2(b), that right of action exists only for violations post-dating the furnisher's receipt of a report *from the credit reporting agency*."). Moreover, Claimant cannot state a claim for relief against Ditech under § 1681s-2(a) because, as noted, there is no private right of action under § 1681s-2(a). *See, e.g., Howard v. Mun. Credit Union*, No. 05 Civ. 7488(LAK), 2008 WL 782760, at * 7 (S.D.N.Y. Mar. 25, 2008)

17

(granting Rule 12(b)(6) motion to dismiss claim for relief under section 1681s-2(a) on grounds that provision does not provide a private right of action.)

As noted, Claimant also complains that Ditech erroneously assessed late fees against him. *See* Response at 1. He also claims that Ditech harassed and threatened him with phone calls all day and night to collect on the loan. In support of these allegations, he provides email text versions of his mortgage statements for July which notes a past due amount of $3,423.62, late fees of $49.63 and a regular monthly payment of $1,443.22. *Id.* at 8. The Consumer Representative reads those allegations as purporting to assert a breach of contract claim against Ditech. Claimant does not object to that assessment of the Claim. To state a claim for breach of contract under California law, Claimant must plead the elements of : "(1) the contract, (2) plaintiff's performance of the contract or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to the plaintiff." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010), *quoting Careau & Co. v. Security Pacific Business Credit, Inc.,* 222 Cal. App. 3d 1371, 1388 (1990). Claimant has not plead any facts to allege: (i) the existence of a specific contract between himself and Ditech; (ii) his own performance under the contract or excuse for performance under the contract; (iii) a breach of the contract by Ditech; and (iv) any resulting damage to him by Ditech. Claimant fails to assert a claim at law for breach of contract against Ditech. *See Lee v. Impac Funding Corp.,* No. CV119222PSGAJWX, 2012 WL 13012390, at *3 (C.D. Cal. July 19, 2012) (granting the motion to dismiss the cause of action for breach of contract because plaintiff failed to plead the elements of the claim); *Prince-Weithorn v. GMAC Mortg., LLC*, No. CV 11-00816 SJO PLAX, 2011 WL 11651984, at *4 (C.D. Cal. May 5, 2011) (finding that Plaintiffs breach of contract claim fails as a matter of law because there was no private right to action).

Accordingly, the Court disallows and expunges the Claim for the additional reason that it fails to state a claim for relief against Ditech.

## Conclusion

Based on the foregoing, the Court sustains the Objection and disallows and expunges the Claim.

IT IS SO ORDERED.

Dated: New York, New York
       August 4, 2021

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge