**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**NOT FOR PUBLICATION**

------------------------------------------------------- x

*In re:*

Ditech Holding Corporation, *et al.,*

                              Debtors.[1]

------------------------------------------------------- x

:
:
:
:
:
:
:
:

Case No. 19-10412 (JLG)
Chapter 11

(Jointly Administered)

# MEMORANDUM DECISION AND ORDER GRANTING THE JOINT MOTION OF PLAN ADMINISTRATOR AND CONSUMER REPRESENTATIVE TO ENFORCE THE PLAN INJUNCTIONS AND CONFIRMATION ORDER AGAINST DARRYL K. BROWDER, HOLD HIM IN CONTEMPT, AND IMPOSE SANCTIONS

<u>**A P P E A R A N C E S**</u> **:**

WEIL, GOTSHAL & MANGES, LLP
*Attorneys for the Plan Administrator*
767 Fifth Avenue
New York, New York 10153
<u>By:</u>    Ray C. Schrock, P.C.
        Richard Slack, Esq.
        Sunny Singh, Esq.

JENNER & BLOCK LLP
*Attorneys for the Consumer Representative*
919 Third Avenue
New York, New York 10022
By:    Richard Levin, Esq.

Mr. Darryl Keith Browder
*Appearing Pro Se*
P.O Box 41413
Des Moines, IA 50311

---

[1]    The confirmation of the Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors [ECF No. 1326] (the "Plan") created the Wind Down Estates. The Wind Down Estates, along with the last four digits of their federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573. References hereinafter to "ECF No. ___" are to documents filed in the electronic docket in these jointly administered cases under Case No. 19-10412 (the "Chapter 11 Cases").

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## Introduction

Darryl Browder ("Claimant" or "Mr. Browder") purports to be a  Consumer Creditor

Claimant of the Debtors. Prepetition, he sued Ditech Financial LLC ("Ditech Financial") in Iowa

state court to recover damages that he says Ditech Financial caused in servicing his mortgage

(the "First Iowa Action").[2] He timely filed twelve proofs of claim (one of which he withdrew) in

these jointly administered cases seeking to recover damages based upon the allegations of

wrongdoing on Ditech Financial's part underlying the First Iowa Action (the "Browder Claims").

Ditech Financial objected to those claims and the Court conducted a Sufficiency Hearing on the

claims. Pursuant to a Memorandum Decision and Order dated February 2, 2021 (the "Browder

Memorandum Decision and Order")[3] the Court sustained the objection and expunged those

claims. On April 1, 2021, the Claimant filed another lawsuit in Iowa state court (the "New Iowa

Action").[4] In it he seeks tens of millions of dollars in monetary relief against Ditech Holding

Corporation ("Ditech"), the Wind Down Estates, as well as from Sunny Singh, Esq. (from Weil,

Gotshal & Manges LLP, counsel to the Debtors and the Wind Down Estates), Megan Stumph-

---

[2]    *Darryl Keith Browder v. Ditech Financial, LLC, et. al.,* Case No. 4:18-cv-00048-JAJ-SBJ (S.D. Iowa Feb. 19, 2018).

[3]    Memorandum Decision and Order Sustaining the Thirty-Second Omnibus Objection to Proof of Claims (No Basis Consumer Creditor Litigation Claims) against Darryl Keith Browder [ECF No. 3208]. The facts contained in the Browder Memorandum Decision and Order are supported by the following documents, most of which were filed by Mr. Browder, and are hereby incorporated by reference: Motion for Relief from Stay [ECF No. 2814] (the "Lift Stay Motion"); Exhibits attached to Lift Stay Motion [ECF No. 2814-1] (the "Lift Stay Motion Exhibits"); Opposition of the Plan Administrator to the Motion of Darryl K. Browder for Relief from Stay [ECF No. 2835] (the "Lift Stay Opposition"); Thirty-Second Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Litigation Claims) [ECF No. 1764] (the "Thirty-Second Omnibus Objection); First Response of Darryl Browder [ECF No. 1893] (the "First Omnibus Objection Response"); Second Response of Darryl Browder [ECF No. 2082] (the "Second Omnibus Objection Response").  Capitalized terms not defined herein have the meanings ascribed to them in these documents or as defined in the Plan.

[4]    *Darryl Keith Browder v. SouthLaw, et. al.,* Case No. 4:21-cv-00198-JAJ-SBJ (S.D. Iowa July 2, 2021).

Turner, Esq., Ditech's local counsel in the First Iowa Action and Tara Twomey, Esq., the

Consumer Representative in these Chapter 11 Cases.[5] Claimant also named NewRez LLC, d/b/a

Shellpoint Mortgage Servicing ("Shellpoint"), a subsidiary of the Forward Stalking Horse

Purchaser under the Plan, which is also the current servicer of Claimant's mortgage, as a

defendant, along with Shellpoint's foreclosure counsel, SouthLaw P.C. ("SouthLaw,").[6] The

facts and damage claims underlying the New Iowa Action mirror those that the Claimant alleged

in support of the First Iowa Action and the Browder Claims.

On September 26, 2019, the Debtors confirmed their Plan,[7] and on September 30, 2019

(the "Effective Date"), the Plan became effective.[8] The matter before the Court is the joint

motion (the "Motion") of the Plan Administrator and the Consumer Representative (the

"Movants") pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, Federal Rules of

Bankruptcy Procedure 1015(c), 3020(d), and 9007, and Sections 4.6 and 10.5 of the Plan, for an

order: (A) enforcing the injunction provisions contained in the Confirmation Order (the "Sale

Injunction"), and in Sections 4.6 (the "Forward Purchaser Injunction") and 10.5 (the "Section

10.5 Injunction") of the Plan (collectively, the "Plan Injunctions"); and (B) holding Claimant in

---

[5]    Hereinafter, the Court will refer to Sunny Singh, Megan Stumph-Turner and Tara Twomey collectively as the "Individual Defendants."

[6]    Hereinafter, the Court will  refer to Shellpoint and SouthLaw collectively as the "Forward Purchaser Defendants".

[7]    *See* Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors [ECF No. 1404] (the "Confirmation Order").

[8]    Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims [ECF No. 1449].

contempt and imposing monetary sanctions for his violations of the Plan Injunctions and orders

of this Court.[9]  Claimant opposes the Motion.[10]

    For the reasons set forth herein, the Court grants the Motion.

## Jurisdiction

    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.

This is a core proceeding pursuant to 28 U.S.C. § 157(b). A party invoking this Court's post-

confirmation jurisdiction must demonstrate both (i) that the matter has a "close nexus to the

bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation,

consummation, execution, or administration of the confirmed plan or incorporated litigation trust

agreement[,]" *Penthouse Media Group v. Guccione (In re Gen. Media, Inc.),* 335 B.R. 66, 73

(Bankr.S.D.N.Y.2005) (quoting *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l,*

*Inc.)*, 372 F.3d 154, 168-69 (3d Cir. 2004)); and (ii) that the plan provides for the retention of

jurisdiction over the dispute. *Id.* (citing *Hosp. and Univ. Prop. Damage Claimants v. Johns*

*Manville Corp. (In re Johns–Manville Corp.*), 7 F.3d 32, 34 (2d Cir.1993)). *See also Cohen v.*

*CDR Creances S.A.S.* (*In re Euro-Am. Lodging Corp.*)*,* 549 F. App'x 52, 54 (2d Cir. 2014) ("A

party may invoke the authority of the bankruptcy court to exercise post-confirmation jurisdiction

only if the matter has a close nexus to the bankruptcy plan. . . and the plan provides for the

retention of such jurisdiction. . .") (internal citations omitted) (summary order); *Ace Am. Ins. Co.*

---

[9]    Joint Motion of Plan Administrator and Consumer Representative to Enforce the Plan Injunctions and Confirmation Order Against Darryl K. Browder, Hold Him in Contempt, and Impose Sanctions [ECF No. 3529]; Declaration of Richard W. Slack in Support of Joint Motion of Plan Administrator and Consumer Representative to Enforce the Plan Injunctions and Confirmation Order Against Darryl K. Browder, Hold him in Contempt, and Impose Sanctions [ECF No. 3523] (the "Slack Decl.").

[10]    The Consumer Creditor As a Darryl Keith Browder, Motion to Vacate or Set Aside the Defendant Notice of Hearing on Joint Motion of Plan Administrator and Consumer Representative to Enforce the Injunctions and Confirmation Order Against Darryl K. Browder, Hold him in Contempt, and Impose Sanctions on the Grounds of Fraud, by Judge James L. Garrity, Jr. and his Assistance [sic] Willie, on the Grounds of Fraud, and Breach, and a Violation of my 4th and 14th Amendment to the United States Constitution [ECF No. 3551] (the "Opposition").

*v. State of Mich. Workers' Comp. Ins. Agency* (*In re DPH Holdings Corp.*), 448 F. App'x 134, 137 (2d Cir. 2011) (summary order), *cert. denied*, 567 U.S. 935 (2012). *See also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (a bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders).

The Motion has a "close nexus" to the Plan because the Plan Administrator and the Consumer Representative are appointed under the Plan and they seek to enforce the Plan Injunctions against Mr. Browder, who filed proofs of claim herein and is subject to the Plan. Moreover, under the Plan, the Court retained jurisdiction over "all matters arising in, arising under, and related to the Chapter 11 Cases," specifically including "to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court" and "to hear, adjudicate, decide, or resolve any and all matters related to Article X of the Plan, including, without limitation, the releases, discharge, exculpations, and injunctions issued thereunder." Plan §§ 11.1 (g), (n). Those types of matters are at issue in the Motion. Accordingly, the Court has post-confirmation jurisdiction to resolve the Motion.

### Background

**The Plan Injunctions**

On February 11, 2019 (the "Petition Date"), Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates ("Debtors") filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court. The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Mr. Browder filed twelve proofs

of claims against Ditech Financial in these Chapter 11 Cases, one of which was duplicative and was withdrawn. As discussed below, those claims arise out of the facts at issue, and the claims asserted, in the First Iowa Action.

The Plan Administrator is a fiduciary appointed under the Plan who is charged with the duty of winding down, dissolving and liquidating the Wind Down Estates. Plan §§ 1.130, 1.184, 1.186. The Consumer Claims Representative is a fiduciary appointed under the Plan who is responsible for the reconciliation and resolution of Consumer Creditor Claims and distribution of funds to holders of Allowed Consumer Creditor Claims in accordance with the Plan. *Id.* § 1.41. Under the Plan, the Plan Administrator, on behalf of each of the Wind Down Estates, is authorized to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims; and the Consumer Claims Representative has the exclusive authority to object to all Consumer Creditor Claims. *Id.* § 7.1. The Plan Administrator and Consumer Representative filed a joint objection to the Browder Claims (the "Thirty-Second Omnibus Objection")[11] and sought to expunge those claims as "No Basis Consumer Creditor Litigation Claims." After conducting a Sufficiency Hearing on those claims, the Court sustained the objection and disallowed and expunged the Browder Claims. Browder Memorandum Decision and Order.

In the Motion, the Plan Administrator and Consumer Claims Representative seek an order enforcing the Plan Injunctions. Briefly, the Section 10.5 Injunction bars a claimant from interfering with the implementation or consummation of the Plan,[12] and enjoins a claimant from

---

[11]    Thirty-Second Omnibus Claims Objection to Proofs of Claim (No Basis Consumer Creditor Litigation Claims) [ECF No. 1764].

[12]    As relevant, Section 10.5(a) states that:

> (a) Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors,

bringing claims for monetary relief on account of, among other things, claims and causes of

action that are extinguished, discharged, or released pursuant to the Plan.[13] The Forward

Purchaser Injunction is a separate injunction preventing a claimant from asserting pre-Effective

Date claims against the Forward Stalking Horse Purchaser, its Affiliates and anyone acting on

their behalf.[14] The Sale Injunction provides a similar injunction preventing suits against the

Forward Buyer or any Affiliates of the Forward Buyer.[15] Finally, section 10.7 the Plan contains

---

> principals, and affiliates, shall be enjoined from taking any actions to interfere with the
> implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or
> released pursuant to the Plan.

Plan § 10.5(a).

[13]    As relevant, Section 10.5(b) states, as follows:

> (b) [A]ll Entities who have held, hold, or may hold Claims against or Interests in the Debtors . . .
> are permanently enjoined, on and after the Effective Date, solely with respect to any Claims,
> Interests, and Causes of Action that will be or are extinguished, discharged, or released pursuant to
> the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any
> suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a
> judicial, arbitral, administrative or other forum) against or affecting the Debtors, Reorganized
> Debtors, Reorganized RMS, GUC Recovery Trust, or the Consumer Creditor Reserve or the
> property of any of the Debtors, Reorganized Debtors, Reorganized RMS, GUC Recovery Trust or
> the Consumer Creditor Reserve . . .

*Id.* § 10.5(b).

[14]    Section 4.6(b) states, in part, that:

> Each holder of a Consumer Creditor Claim, including a 363(o) Claim, shall be enjoined from
> bringing, asserting or prosecuting such Consumer Creditor Claim against the Forward Stalking
> Horse Purchaser, Reverse Stalking Horse Purchaser, Reorganized RMS, or any of their Affiliates
> (or anyone acting on their behalf), except as provided in Section 5.6(d)(iii), or seeking monetary
> damages from the Forward Stalking Horse Purchaser, Reverse Stalking Horse Purchaser,
> Reorganized RMS or any of their Affiliates (or anyone acting on their behalf) on account of such
> Consumer Creditor Claim . . .

Plan § 4.6(b).  Section 5.6(d)(iii) of the Plan provides that the Plan does not "affect a Borrower's right, if any, to
correct any inaccurate statement of amounts due under the Borrower's loan or any other inaccurate terms related to
the Borrower's loan." *Id.* § 5.6(d)(iii). It is inapplicable to Mr. Browder's affirmative claims in the New Iowa
Action.

[15]    Paragraph 3 of Schedule 2 to the Confirmation Order states in relevant part, that:

> [A]ll Persons and Entities . . . holding Claims against the Acquired Assets or against the Debtors
> in respect of the Acquired Assets of any kind or nature whatsoever shall be, and hereby are,
> forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise

an exculpation provision (the "Exculpation Provision").[16] The Plan defines "Exculpated Parties"

to include "(a) Debtors . . . (e) the Wind Down Estates . . . (p) Consumer Representative . . .

[and] all Persons and Entities who acted on their behalf in connection with the matters as to

which exculpation is provided herein." Plan § 1.77.

**Claimant's Mortgage and the First Iowa Action**

In May 2007, Claimant entered into a mortgage and note with Countrywide Home Loans,

Inc. as security for real property located at 1925 10th St., Des Moines, Iowa 50314-2418.

Browder Memorandum Decision and Order at 10. In 2011, Ditech began the servicing of Mr.

Browder's mortgage. On January 29, 2018, Claimant filed the First Iowa Action against Ditech

in the District Court of Polk County, Iowa. *Id.* at 12. Ditech subsequently removed the First Iowa

Action to the United States District Court for the Southern District of Iowa (the "Iowa U.S.

---

pursuing any Claims of any kind or nature whatsoever (including, without limitation, Claims or
Liabilities relating to any act or omission of any originator, holder or servicer of Mortgage Loans
prior to the Closing, and any indemnification Claims or Liabilities relating to any act or omission
of the Sellers or any other Person or Entity prior to the Closing) against the Forward Buyer or any
Affiliate of the Forward Buyer or any of their respective property, successors and assigns, or the
Acquired Assets, as an alleged successor or on any other grounds. . .

It is incorporated by reference in its entirety in paragraph M of the Confirmation Order.

[16]    As relevant, the Exculpation Provision states that:

To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and
each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit,
judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any claim
in connection with or arising out of the administration of the Chapter 11 Cases, the postpetition
marketing and sale process, the purchase, sale, or rescission of the purchase or sale of any security
or asset of the Debtors; the negotiation and pursuit of the Disclosure Statement, the
RSA, the Reorganization Transaction or the Sale Transaction, as applicable, the Plan, or the
solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan; the
occurrence of the Effective Date; the DIP Documents; the Prepetition Warehouse Facilities (as
defined in the DIP Order); the administration of the Plan or the property to be distributed under the
Plan; the issuance of Securities under or in connection with the Plan; or the transactions in
furtherance of any of the foregoing; except for fraud or willful misconduct, as determined by a
Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases,
indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties
from liability.

Plan § 10.7.

District Court"). First Iowa Action (Doc. No. 1).[17] In support of that action, Claimant alleged improper conduct by Ditech as servicer of his mortgage and asserted a number of causes of action against Ditech, seeking to recover lost wages and damages based upon, among other things Ditech's alleged breach of contract, negligence, harassment, discrimination, racial profiling, slander, defamation, violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and other state and federal laws, and fraud. Browder Memorandum Decision and Order at 12. Central to the complaint was Claimant's assertion that his then fiancée, Cecilia Addo, made a series of mortgage payments to Ditech on his behalf in April and May 2017, which resulted in overages in his mortgage account and that those payments were improperly returned to Ms. Addo instead of being crediting to the account of his son, as Claimant had requested. *Id.* at 10-11. Claimant says that Ditech's actions led to his account being in arrears. On October 2, 2018, the Iowa U.S. District Court dismissed all of the tort claims that Mr. Browder alleged in the First Iowa Action, leaving only the breach of contract claim. *Id.* at 12. On October 11, 2018, Ditech filed its Answer and Affirmative Defenses in the First Iowa Action. First Iowa Action (Doc No. 25).

Effective November 1, 2019, Ditech transferred the servicing of Claimant's mortgage to Shellpoint. Lift Stay Opposition at 138. The breach of contract claim in the First Iowa Action was pending as of the Effective Date. To bring Claimant into compliance with the Section 10.5 Injunction, in November 2019, Mr. Browder signed and returned a stipulation (the "First Iowa Action Stipulation") prepared by Ditech's local counsel, Ms. Stumph-Turner, that dismissed the First Iowa Action with prejudice. Browder Memorandum Decision and Order at 13. The parties filed the First Iowa Action Stipulation in the Iowa U.S. District Court, and on November 21,

---

[17]    Slack Decl., Ex. 1 (Notice of Removal).

2019, that court terminated the First Iowa Action. *Id.* at 12. On January 6, 2020, Claimant filed a

motion in the First Iowa Action to dismiss the First Iowa Action Stipulation (the "Iowa

Motion"). Lift Stay Opposition at 141. On January 27, 2020, the Iowa U.S. District Court denied

the Iowa Motion. First Iowa Action (Doc. No. 44). Claimant did not file an appeal of the Iowa

U.S. District Court's denial of the Iowa Motion and the First Iowa Action remains dismissed

with prejudice.

**Claimant's Proceedings Before the Court**

Between April 1, 2019 and November 11, 2019, Mr. Browder filed the Browder Claims

in these Chapter 11 Cases. Browder Memorandum Decision and Order at 1. One such claim,

Proof of Claim No. 2516, attached the First Iowa Complaint. Lift Stay Opposition at 96-100. On

January 17, 2020, the Plan Administrator, and the Consumer Representative jointly brought the

Thirty-Second Omnibus Objection, which included, among others, the Browder Claims. Browder

Memorandum Decision and Order at 2. On February 18, 2020, Mr. Browder filed his First

Omnibus Objection Response to the Thirty-Second Omnibus Objection. *Id.* at 6. In that

response, Mr. Browder alleged that counsel for the Plan Administrator and the Consumer

Representative had committed fraud and perjury and demanded sanctions. *Id.* at 18. On March

24, 2020, the Plan Administrator and Consumer Representative replied to Mr. Browder's

objection. *Id.* at 6-7. On March 30, 2020, Mr. Browder filed the Second Omnibus Objection

Response. *Id.* at 6. In the Second Omnibus Objection Response, Mr. Browder alleged that he was

tricked or compelled under duress by Ms. Stumph-Turner into signing the First Iowa Action

Stipulation. *Id.* at 21.

On August 20, 2020, Mr. Browder filed the Lift Stay Motion with this Court to lift the

automatic stay and proceed with the First Iowa Action, specifically requesting that he be allowed

to assert claims against Ditech. Lift Stay Motion at 1, 9 and 15. The Plan Administrator opposed

the Lift Stay Motion. Lift Stay Opposition. On October 29, 2020, this Court held a hearing on the

Lift Stay Motion, at which time Mr. Browder did not appear. Oct. 29, 2020 Hr'g Tr. at 47:3-7

[ECF No. 2940]. On December 7, 2020, this Court entered the Lift Stay Denial Order, denying

the Lift Stay Motion and retaining "jurisdiction to hear and determine all matters arising from

implementation of this Order." Lift Stay Denial Order at 2.

On February 2, 2021, the Court issued the Browder Memorandum Decision and Order in

which the Court sustained the Thirty-Second Omnibus Objection and expunged the Browder

Claims. Browder Memorandum Decision and Order at 24. Without limitation, in that decision,

the Court found that the Browder Claims arose from the same pre-Effective Date conduct at

issue in the First Iowa Action (*id* at 10-12), and that in his objection to Plan confirmation,

"Browder acknowledged that if approved, the Plan Injunction would enjoin him from continuing

to prosecute his breach of contract claim in the Iowa Action in favor of the claims resolution

process under the Plan." *Id*. at 12.  In addition to expunging the Browder Claims, the Court

rejected both Mr. Browder's demand for sanctions against Mr. Singh and the Consumer

Representative (*id*. at 19), and his contention that the First Iowa Action Stipulation, and the

Section 10.5 Injunction underpinning it, were invalid. *Id.* at 23 ("The Claimant is bound by the

Confirmation Order. That Debtors' local counsel allegedly failed to provide a copy of the order

to Claimant when they executed the Iowa Stipulation does not diminish, in any way, the force

and effect of the stipulation and Plan Injunction.").

**The New Iowa Action**

On April 1, 2021, Mr. Browder filed the New Iowa Action. The factual allegations contained in the New Iowa Complaint[18] are substantively identical to those alleged and dismissed with prejudice in the First Iowa Action and asserted and expunged in connection with the Browder Claims.[19] Moreover, Mr. Browder's claims against the Forward Purchaser Defendants raise the same underlying allegations as the pre-petition claims against Ditech contained in the First Iowa Action and the expunged Browder Claims.[20]  There is no underlying allegation of wrongdoing in the New Iowa Action that has not been addressed and dispensed with by this Court in connection with the Lift Stay Motion and the resolution of the Browder Claims in the Browder Memorandum Decision and Order. On July 2, 2021, Shellpoint removed the New Iowa Action to the United States District Court for the Southern District of Iowa. Slack Decl., Ex. 4 (Docket in New Iowa Action). Although Mr. Browder has apparently not yet served

---

[18]    Slack Decl., Ex. 2 (Petition at Law and Jury Demand) (the "New Iowa Complaint").

[19]    *See, e.g.,* New Iowa Complaint ¶13 ("plaintiff, as a darryl keith.browder[sic], monthly mortgage payment, was only $470.43.the defendants charged plaintiff, $478.97 to [sic] much money to pay my monthly mortgage. the [sic] defendants also reported it to the credit agencies illegally. [sic] and they also charged the plaintiff, illegal late fees,."); *id.* ¶14 ("the plaintiff, as a darryl keith.browder [sic], met this beautiful lady on line [sic] by the name of cecilia addo [sic]. . . she told me she will get in touch with her deceased dad [sic] attorney and will send me money from her dad [sic] account in Canada [sic]."); *id.* ¶15-19 (alleging the same transfers and reversals in relations to payments by Ms. Addo in April and May 2017 as in the First Iowa Action); *id.* ¶30 ("as a result of the april [sic] 27, 2017, and june [sic] 01, 2017, and may [sic] 17, 2017, and april [sic] 28, 2017.and [sic] may [sic] 02, 2017, and may 4, 2017. may [sic] 10, 2017, october [sic] 01, 2017, and January [sic] 01, 2018 and fraud, and breach, and negligence. Plaintiff suffered injuries and damages through no fault of his own.").

[20]    *Compare* New Iowa Complaint at ¶¶30-31 ("as a result of the april [sic] 27, 2017, and june [sic] 01, 2017, and may [sic] 17, 2017, and april [sic] 28, 2017.and [sic] may [sic] 02, 2017, and may [sic] 4, 2017.may [sic]  10, 2017, october [sic] 01, 2017, and January [sic] 01, 2018 and fraud, and breach, and negligence, plaintiff suffered injuries and damages through no fault of his own. . . . plaintiff as a darryl keith.browder [sic], is entitled to the $7,000,000.00 seven million dollars CAUSE [sic] the fraud and the breach, and the negligence, from the newrez llc dba shellpoint mortgage servicing [sic] . . ."); *id.* ¶78 ("THE DEFENDANT AS A SOUTH LAW 13160 FOSTER SUITE 100 OVERLAND PARK KS 66213. knew [sic] about this fraud, and breach, and negligent and sent the plaintiff, as a darryl keith.browder [sic],documents statting [sic] that they are going to foreclose on plaintiff, [sic] home at 1925 10th street DES MOINES, IOWA 50314.any [sic] time this month as APRIL 10, 2021); *with* First Iowa Complaint ¶¶ 7-17; and Browder Memorandum Decision and Order at 11-13.

the New Iowa Complaint on any defendant other than Shellpoint, based on his notices, he

appears to be actively attempting to do so.

**The Motion**

In the Motion, the Plan Administrator and the Consumer Representative seek to enforce

the Plan Injunctions and Court orders which they contend explicitly prevent Mr. Browder from

bringing the New Iowa Action and which Mr. Browder ignored in filing that action. Motion ¶ 3.

They seek to enjoin Mr. Browder from pursuing or taking any further steps to prosecute the New

Iowa Action against all of the defendants and to require Mr. Browder to dismiss the New Iowa

Action. They maintain that in filing the New Iowa Action, Mr. Browder violated:

> Section 10.5(a) of the Plan and Paragraph 10 of the Confirmation Order which
> enjoins Mr. Browder from "from taking any actions to interfere with the
> implementation or consummation of the Plan in relation to any Claim
> extinguished, discharged, or released pursuant to the Plan" – which includes
> interfering with the proof of claim process and the filing of claims after this
> Court has expunged those claims.

> Section 10.5(b) of the Plan and Paragraph 10 of the Confirmation Order which
> enjoins Mr. Browder from "commencing, conducting, or continuing in any
> manner, directly or indirectly" the New Iowa Action.

> Section 4.6(b) of the Plan and the Sale Injunction that enjoin Mr. Browder from
> raising claims arising from pre-Effective Date conduct against the Forward
> Purchaser Defendants and affiliates or representatives of the Forward Stalking
> Horse Purchaser.

> This Court's December 2, 2020 Order Denying Motion of Darryl K. Browder (the
> "Lift Stay Denial Order") (ECF No. 3051) which expressly denied the motion of
> Mr. Browder seeking to allow him to pursue monetary claims against Ditech in
> the Iowa courts.

Motion ¶ 4. They also maintain that the *Barton* Doctrine bars prosecution of the New Iowa

Action against the Individual Defendants. *Id.* ¶ 7.

The Plan Administrator and the Consumer Representative assert that Mr. Browder is well

aware of this Court's orders and the Plan Injunctions having (a) litigated extensively in these

13

Chapter 11 Cases the same claims alleged in support of the New Iowa Action; (b) expressly

agreed to dismiss the First Iowa Action (in order to comply with the Section 10.5 Injunction) in

which he raised these same claims; and (c) having expressly made a motion to lift the stay to

pursue these claims which was denied by this Court. They contend that Mr. Browder has simply

chosen to ignore the Confirmation Order, Plan Injunctions and this Court's Lift Stay Denial

Order that prevent him from bringing the New Iowa Action against any and all of the defendants.

*Id.* ¶ 5. The Plan Administrator and Consumer Representative request that this Court issue an

order against Mr. Browder imposing immediate injunctive relief requiring him to dismiss the

New Iowa Action and enjoining him from attempting to serve, file any paper upon any

defendant, or in any way continue to prosecute the New Iowa Action. They also seek monetary

sanctions if Mr. Browder does not timely comply with the Court's order. *Id*. ¶ 9. Specifically,

they ask the Court to impose monetary sanctions against Mr. Browder if he refuses to dismiss the

New Iowa Action within 7 days, in increasing amounts the longer Mr. Browder refuses to

dismiss the action. *Id.*

Mr. Browder opposes the Motion and seeks to vacate or set aside the notice of hearing on

the Motion, hold the Court and members of the Court's staff in contempt and assess sanctions.

He asserts that this Court prevented him from attending a hearing, prevented him from speaking

with the Consumer Claims Representative, and incorrectly represented that this was not a "core

proceeding." Opposition at 2-3. Mr. Browder also seeks to have the Court recuse itself from

these Chapter 11 Cases and stop all hearings herein and in the First Iowa Action and New Iowa

Action. He claims that because he has named the Court as a party in the First Iowa Action and

New Iowa Action and the Court violated his rights under the Fourth and Fourteenth Amendments

of the United States Constitution when it issued rulings against him in these Chapter 11 Cases, the Court cannot objectively rule on the Motion. Opposition at 12.

The Court considers the merits of the Motion and the Opposition thereto below.

## Discussion

A bankruptcy court has the inherent power to enforce its own orders. *Back v. LTV Corp. (In re Chateaugay Corp.)*, 213 B.R 633, 638 (S.D.N.Y. 1997). *See also In re Hoti Enterprises, L.P.*, 12 CV 8030(VB), 2013 WL 1812197, at * 18 (S.D.N.Y. April 26, 2013) (noting that "[t]he bankruptcy court had the inherent power to enforce its own order.") Section 105(a) of the Bankruptcy Code empowers a bankruptcy court with authority to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). "The statutory contempt powers given to a bankruptcy court under § 105(a) complement the inherent powers of a federal court to enforce its own order." *Solow v. Kalikow (In re Kalikow),* 602 F.3d 82, 96 (2d Cir. 2010). *See also Anderson v. Credit One Bank, N.A. ( In re Anderson)*, 884 F.3d 382, 391 (2d Cir. 2018) ("[T]he bankruptcy court retains a unique expertise in interpreting its own injunctions and determining when they have been violated. Congress afforded the bankruptcy courts wide latitude to enforce their own orders, specifically granting these specialty courts the power to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of' the Bankruptcy Code.") (quoting 11 U.S.C. § 105(a)). Accordingly, the Court has ample authority to enforce the Confirmation Order, the Plan, the Lift Stay Denial Order, and the Browder Memorandum Decision and Order.[21]

---

[21]    This is not the first time that the Court has been asked to enforce the injunctive provisions of the Plan and Confirmation Order. *See* Plan Administrator's Omnibus Motion to Enforce Injunctive Provisions of Plan and Confirmation Order [ECF No. 1688]; Plan Administrator's Second Omnibus Motion to Enforce Injunctive Provisions of Plan and Confirmation Order [ECF No. 1786]; Plan Administrator's Third Omnibus Motion to

**Application of the Section 10.5 Injunction To Ditech,**
**The Wind Down Estates and Individual Defendants**

On its face, the Section 10.5 Injunction covers claims for monetary relief against Ditech

and the Wind Down Estates,[22] and this Court has so ruled on multiple occasions. Omnibus

Injunction Orders.[23] Moreover it did so explicitly in denying Mr. Browder leave to pursue his

claims against Ditech and the Wind Down Estates in Iowa court.  Lift Stay Denial Order at 2.

Mr. Browder does not deny the force of the Section 10.5 Injunction.[24] In filing the New Iowa

Action, Mr. Browder is actively interfering with the implementation of the claims process in

these Chapter 11 Cases in violation of Section 10.5(a) of the Plan. As relevant, that section

enjoins "all holders of Claims and Interests . . . from taking any actions to interfere with the

implementation or consummation of the Plan in relation to any Claim extinguished, discharged,

or released pursuant to the Plan." Plan § 10.5(a). Moreover, the New Iowa Action asserts

monetary claims against Ditech and the Wind Down Estates in violation of the Section 10.5(b) of

---

Enforce Injunctive Provisions of Plan and Confirmation Order [ECF No. 1946]; Plan Administrator's Fourth Omnibus Motion to Enforce Injunctive Provisions of Plan and Confirmation Order [ECF No. 2285]; Plan Administrator's Fifth Omnibus Motion to Enforce Injunctive Provisions of Plan and Confirmation Order [ECF No. 2436]; Plan Administrator's Sixth Omnibus Motion to Enforce The Plan Injunction and Confirmed Order [ECF No. 2656] (each, an "Omnibus Injunction Motion"). In each instance, the Court granted the motion. On January 23, 2020, the Court granted the First Omnibus Injunction Motion [ECF No. 1770], on February 25, 2020 the Court granted the Second Omnibus Injunction Motion [ECF No. 1920], on June 3, 2020 the Court granted the Third Omnibus Injunction Order [ECF No. 2459] and the Fourth Omnibus Injunction Motion [ECF No. 2460], on July 8, 2020 the Court granted the Fifth Omnibus Injunction Motion [ECF No. 2653], and on October 6, 2020 the Court granted the Sixth Omnibus Injunction Motion [ECF No. 2866] (collectively, the "Omnibus Injunction Orders").

[22]    Pursuant to Section 10.5(d) of the Plan, the Section 10.5 Injunction provisions explicitly extend not only to Ditech but to the Wind Down Estates.

[23]    *Supra* n.20.

[24]    By signing the First Iowa Action Stipulation and in objecting to confirmation of the Plan, Mr. Browder has explicitly recognized the Section 10.5 Injunction.  Browder Memorandum Decision and Order at 12 ("In his objection, and in substance, Browder acknowledged that if approved, the Plan Injunction would enjoin him from continuing to prosecute his breach of contract claim in the Iowa Action in favor of the claims resolution process under the Plan."); *id.* at 13 n.16 ("In part, the Iowa Stipulation reads . . . [t]he Plan contains a permanent injunction (the 'Injunction') that specifically prohibits parties from prosecuting against Ditech any claim for monetary recovery (including attorney's fees) on account of any claim arising prior to September 30, 2019 (the Plan Effective Date and closing date for the transactions under the Plan)").

the Plan. That provision enjoins a holder of a "Claim" from "commencing, conducting or continuing in any manner, directly or indirectly" any separate actions outside of the bankruptcy proceedings seeking, among other things, monetary relief against the Debtors, as well as "acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan." Plan § 105(b). Accordingly, Section 10.5 Injunction bars continued prosecution of the New Iowa Action against Ditech and Wind Down Estates.

That injunction also stays continued prosecution of the New Iowa Action against the Individual Defendants. As noted, Claimant named the Individual Defendants as defendants in the New Iowa Action. He asserts that Mr. Singh is liable for the same prepetition conduct alleged against Ditech, as well as for filing "numerous documents on plaintiff" in connection with the bankruptcy proceedings and "telling the court about the joint stipulation for dismissal" filed in the First Iowa Action. New Iowa Complaint ¶¶ 68-70. His complaints against Ms. Stumph-Turner and Ms. Twomey largely arise out of Ditech's pre-petition conduct. He also alleges that Ms. Stumph-Turner is liable for executing the First Iowa Action Stipulation. *Id.* ¶¶ 41-50. The allegations against the Individual Defendants in the New Iowa Action arise out of their enforcement and implementation of the Plan, including enforcing the Plan Injunctions and participating in the claim resolution process. *See* New Iowa Complaint ¶¶ 47-70.  As such, Mr. Browder's pursuit of the New Iowa Action is precisely the type of interference that the Plan Injunction provisions like Section 10.5(a) enjoin. *In re Charter Commc'ns*, No. 09-11435 (JMP), 2010 WL 502764, at *5 (Bankr. S.D.N.Y. Feb. 8, 2010) (granting a motion to enforce a plan injunction with respect to a separate action in federal court against individual officer defendants released pursuant to a confirmed plan); *In re LandAmerica Fin. Grp., Inc.*, No. 08-35994-KRH, 2013 WL 1819984, at *5 (Bankr. E.D. Va. Apr. 30, 2013) (holding that a state court action

17

brought against a trustee appointed pursuant to a confirmed plan "constitutes a collateral attack

on the Plan that serves to interfere with its implementation and consummation"). Section 10.5(a)

of the Plan enjoins conduct intended to interfere with the implementation of the Plan. Mr.

Browder's commencement of the New Iowa Action falls squarely within the scope of that

section as it interferes with, among other things, the claims resolution process. As such, the

Movants have demonstrated grounds for enjoining prosecution of that action against the

Individual Defendants.

Filing the New Iowa Action also interferes with the Plan Exculpation Provision and thus

Plan implementation under Section 10.5. Section 10.7 of the Plan provides that "each Exculpated

Party is hereby released and exculpated from, any claim . . . liability for any claim in connection

with or arising out of the administration of the Chapter 11 Cases . . . the Plan . . . the

administration of the Plan . . . except for fraud or willful misconduct, as determined by a Final

Order." Plan § 10.7. The Plan defines the term "Exculpated Parties" to include the Debtors, the

Wind Down Estates, the Consumer Representative and "all Persons and Entities who acted on

their behalf in connection with the matters as to which exculpation is provided herein." *Id.* §

1.77. The Individual Defendants fall within the scope of that provision. It is settled that

exculpatory provisions are proper to protect those authorized by bankruptcy courts to carry out

the bankruptcy process, even after the effective date of a plan. *See In re Flushing Hosp. & Med.

Ctr.,* 395 B.R. 229, 235 (Bankr. E.D.N.Y. 2008) ("It is apparent that the exculpation provisions

quoted above are not limited to pre-effective date claims. By their terms, these provisions apply

to 'any act or omission in connection with, or arising out of. . . the administration of the Plan.'

Adopting [litigant's] interpretation would render the 'administration of the Plan' clause

meaningless, because conduct during the administration of the Plan necessarily occurs after the

effective date of the Plan."); *In re Aegean Marine Petroleum Network Inc.*, 599 B.R. 717, 720

(Bankr. S.D.N.Y. 2019) ("I think that a proper exculpation provision is a protection not only of

court-supervised fiduciaries, but also of court supervised and court-approved transactions. . . . In

the absence of gross negligence or intentional wrongdoing, parties should not be liable for doing

things that the Court authorized them to do and that the Court decided were reasonable things to

do."); *In re Granite Broad. Corp.*, 369 B.R. 120, 139 (Bankr. S.D.N.Y. 2007) (approving

exculpation clause "for actions in connection, related to, or arising out of the Reorganization

Cases," noting that the language "generally follows the text that has become standard in this

district and is sufficiently narrow to be unexceptional" and that "the Plan provides exculpation

only for acts or omissions in connection with the Plan and the bankruptcy cases. It requires, in

effect, that any claims in connection with the bankruptcy case be raised in the case and not be

saved for future litigation.").

The Exculpation Provision expressly covers acts falling under the "administration of the

Plan" – which by definition occurs post-Effective Date. Actions taken by Mr. Singh and the

Consumer Representative in connection with the claims process are an essential part of the

administration of the Plan and are covered by the Exculpation Provision. Together, in their

respective official capacities, they have pursued a Court-authorized process to properly

categorize claims as either consumer claims (entitled to specified recovery from specified assets)

or secured, priority, or administrative claims (entitled to a recovery from other specified assets)

and to only permit legally valid claims to recover pursuant to the Plan. Ms. Stumph-Turner's

execution of the First Iowa Action Stipulation to implement the Section 10.5 Injunction by

requiring the dismissal of the First Iowa Action likewise is in furtherance of the administration of

the Plan. As such, the Exculpation Provision in Section 10.7 of the Plan applies to shield the

conduct of these Individual Defendants from collateral attack in a separate lawsuit.[25]

Finally, on its face, Section 10.5(b) of the Plan bars Mr. Browder from asserting claims

against the Individual Defendants. It prohibits creditors, like Mr. Browder, from asserting claims

"against or affecting" the Debtor and Consumer Creditor Reserve, among others.  Plan § 10.5(b).

It is undisputed that the Wind Down Estates and the Consumer Representative have been

required to spend significant time and resources to respond to the New Iowa Action, including

with respect to claims asserted against counsel for the Debtors and the Consumer Representative

which arise solely out of alleged pre-petition conduct or conduct implementing the Plan on

behalf of Debtors and the Consumer Creditor Reserve. The Wind Down Estates and the

Consumer Representative will be required to expend significantly more resources if the New

Iowa Action were permitted to proceed. This Court has the jurisdiction and authority to enjoin

Mr. Browder from continuing to prosecute the New Iowa Action, which asserts monetary claims

against Ditech, the Wind Down Estates and the Individual Defendants. *See, e.g.,* the Omnibus

Injunction Orders. Mr. Browder's violation of the Section 10.5 Injunction is both flagrant and

willful. Not only did Mr. Browder ignore this Court's holding in the Browder Memorandum

Decision and Order that "Claimant is bound by the Confirmation Order" and that the First Iowa

Action "falls squarely within the scope of the Plan Injunction," Mr. Browder explicitly declined

to abide by this Court's denial of his request for a lift of stay to pursue his claims in Iowa court

---

[25]    The Exculpation Provision contains a discrete limitation on its scope for obligations arising post-Effective Date
out of the Plan or any agreement entered into after the Effective Date. Plan § 10.7 ("Notwithstanding anything to the
contrary in the foregoing, the exculpation set forth herein does not release any post-Effective Date obligation or
liability of any Entity under the Plan or any document, instrument, or agreement (including those set forth in the
Plan Supplement) executed to implement the Plan."). The actions of the Individual Defendants that are the source of
the Claimant's complaint fall outside that limitation. His allegations are based on actions taken by the Individual
Defendants prior to the Effective Date and in connection with the enforcement and "administration of the Plan"
which is explicitly covered by the exculpation. Therefore, the limitation in Section 10.7 is not applicable.

by once again filing, in the same Iowa court, the same claims that he brought in the First Iowa

Action. The Court directs Mr. Browder to dismiss the New Iowa Action against Ditech, the Wind

Down Estates and Individual Defendants.

Separate and apart from the Section 10.5 Injunction, application of the *Barton* Doctrine

bars continued prosecution of the New Iowa Action against the Individual Defendants. The

*Barton* Doctrine was created from common law by the Supreme Court in *Barton v. Barbour,* 104

U.S. 126, 26 L.Ed. 672 (1881). There, the Court held that before suing a court-appointed

receiver, the petitioning party must first seek leave of the court that appointed him or her. *Id.* The

doctrine has been observed in the post-receivership context and has been extended to bankruptcy

trustees. *See MF Global Holdings, Ltd.,* 562 B.R. 866, 873 (Bankr. S.D.N.Y. 2017) ("*MF*

*Global*") (citing *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 460 B.R. 106,

116 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012) (citing *Lebovits v. Scheffel (In*

*re Lehal Realty Assocs.)*, 101 F.3d 272, 276 (2d Cir.1996)) (describing the "well-recognized line

of cases" extending the *Barton* Doctrine to bankruptcy trustees, and its application in the post-

receivership context). In *MF Global,* Judge Glenn extended the scope of the doctrine to a court-

appointed Plan Administrator under a confirmed chapter 11 plan. 562 B.R. at 876. The *Barton*

Doctrine is based on the principle that "a trustee in bankruptcy is an officer of the court that

appoints him." *In re Lehal Realty Associates,* 101 F.3d 272, 276 (2d Cir. 1996) (citations

omitted). The purpose of the doctrine is to give effect to the appointing court's strong interest in

protecting the trustee from personal liability for acts taken within the scope of the trustee's

official duty. *Id.* The doctrine "extends to attorneys or other agents who represent the

bankruptcy estate, not only to the trustee himself." *Peia v. Coan,* 2006 WL 798873 at *1 (D.

Conn. March 23, 2006). *See also Lawrence v. Goldberg,* 573 F.3d 1265, 1270 (11th Cir. 2009)

("Trustee was appointed by the bankruptcy court, and the Trustee's court-approved counsel . . . functioned as the equivalent of court-appointed officers by helping the Trustee execute his official duties."); *In re DeLorean Motor Co.,* 991 F.2d 1236, 1241 (6th Cir. 1993) ("We hold, as a matter of law, counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee, whereas here, they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets.").

The doctrine applies here, as the Plan Administrator and the Consumer Claims Representative and their respective agents "should not be impeded from carrying out their duties or sidetracked with vexing litigation by frustrated litigants." *MF Global*, 562 B.R. at 877. Its application is particularly appropriate because the Court has already considered and rejected the allegations raised by Mr. Browder against the Individual Defendants in connection with the expungement of the Browder Claims. Browder Memorandum Decision and Order at 19, 23.  The Court finds that in commencing the New Iowa Action, Mr. Browder violated the *Barton* Doctrine.  Thus, in addition to enforcing the Section 10.5 Injunction, the Court enjoins Mr. Browder's prosecution of the New Iowa Action against Individual Defendants pursuant to the *Barton* Doctrine. Where the *Barton* Doctrine has been violated, "the only appropriate remedy is to order cessation of the improper action." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC,* 460 B.R. 106, 116 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012) (internal quotations omitted). Accordingly, for that additional reason, the Court enjoins Mr. Browder from prosecuting the New Iowa Action and directs him to dismiss the New Iowa Action, with prejudice.

**Application of the Forward Purchaser and Sale**
**Injunctions To The Forward Purchaser Defendants**

Section 4.6(b) of the Plan, provides that "each holder of a Consumer Creditor Claim,

including a 363(o) Claim, shall be enjoined from bringing, asserting or prosecuting such

Consumer Creditor Claim against the Forward Stalking Horse Purchaser, Reverse Stalking Horse

Purchaser, Reorganized RMS, or any of their Affiliates (or anyone acting on their behalf), except

as provided in Section 5.6(d)(iii), or seeking monetary damages from the Forward Stalking

Horse Purchaser, Reverse Stalking Horse Purchaser, Reorganized RMS or any of their Affiliates

(or anyone acting on their behalf) on account of such Consumer Creditor Claim . . ."  Plan § 4.6.

Moreover, the Sale Injunction provides that "all Persons and Entities . . . holding Claims against

the Acquired Assets or against the Debtors in respect of the Acquired Assets of any kind or

nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined

from asserting, prosecuting, or otherwise pursuing any Claims of any kind or nature whatsoever

(including, without limitation, Claims or Liabilities relating to any act or omission of any

originator, holder or servicer of Mortgage Loans prior to the Closing . . . against the Forward

Buyer or any Affiliate of the Forward Buyer . . . ." Confirmation Order, Schedule 2 ¶ 3.

New Residential Investment Corp is the Forward Stalking Horse Purchaser and Forward

Buyer under the Plan. It is also is the parent company of Shellpoint. The Plan adopts section

101(2) of the Bankruptcy Code's definition of "Affiliates." Plan § 1.4. Shellpoint is an "affiliate"

of New Residential under section 101(2) of the Bankruptcy Code.[26] As such, Shellpoint falls

within the scope of the Forward Purchaser Injunction and the Sale Injunction. SouthLaw is

acting as counsel to Shellpoint. It is "acting on. . . behalf" of the Forward Stalking Horse

---

[26]    The term "affiliate" includes a "corporation 20 percent or more of whose outstanding voting securities are
directly or indirectly owned, controlled, or held with the power to vote, by the debtor . . ." 11 U.S.C. § 101(2)(B).

Purchaser or Shellpoint. It falls within the scope of the Forward Purchaser Injunction. Mr.

Browder's allegations against Shellpoint, and SouthLaw explicitly arose pre-petition and are

substantively identical to the claims alleged against Ditech. *Compare* New Iowa Complaint ¶¶

28-30, 78; *with* First Iowa Complaint ¶¶ 7-17; and Browder Memorandum Decision and Order at

11-13. The Forward Purchaser and Sale Injunction bar Mr. Browder's continued prosecution of

the New Iowa Action against the Forward Purchaser Defendants.

Based on the foregoing, the Court enjoins Mr. Browder from continuing to prosecute, in

any manner, including service of process or the filing of any papers in, the First Iowa Action and

the New Iowa Action, against all defendants as set forth in the Motion.

**Whether Mr. Browder's Conduct
Warrants the Imposition of Sanctions**

Under section 105(a) of the Bankruptcy Code, the Court has broad authority to issue

contempt orders and award sanctions to enforce compliance with its orders. *In re Manchanda*,

2016 WL 3034693 at *4 (Bankr. S.D.N.Y. May 19, 2016). A finding of contempt and an award

of sanctions requires that "(1) the order the party failed to comply with is clear and

unambiguous, (2) proof of noncompliance is clear and convincing, and (3) the party has not

diligently attempted to comply in a reasonable manner." *In re Lehman Bros. Holdings Inc.*, 2013

WL 6283572, at *1 (Bankr. S.D.N.Y. Dec. 3, 2013), *aff'd sub nom. In re Lehman Bros.

Holdings, Inc.*, 645 F. App'x 6 (2d Cir. 2016). Application of those factors supports the Movants

request that the Court hold Mr. Browder in contempt and award sanctions.

The Plan Injunctions are clear and unambiguous, and it is undisputed that Mr. Browder is

well aware of these Plan provisions. The Court has already noted that Mr. Browder has

acknowledged that the Plan Injunctions bar him from pursuing his claims outside of the claim

resolution process. *See* Browder Memorandum Decision and Order at 12. Moreover, his actions

24

confirm that he is aware of the Plan Injunctions. For example, in the First Iowa Action

Stipulation, Mr. Browder agreed to dismiss the First Iowa Action with prejudice expressly to

comply with the Plan Injunctions. First Iowa Action Stipulation ¶¶ 3-4. Moreover, in filing the

Lift Stay Motion to obtain leave of this Court to pursue these same claims in an Iowa court, he

acknowledged the Plan Injunctions.  Lift Stay Motion at 1, 9 and 15. The Movants have shown

that the Plan Injunctions are clear and unambiguous, and that Mr. Browder has acknowledged as

much. Accordingly, they have demonstrated the first of the three *Lehman* factors. Mr. Browder

has chosen to violate the Plan Injunctions by filing the New Iowa Action notwithstanding that (i)

he executed the First Iowa Action Stipulation dismissing the First Iowa Action (and the claims

therein) with prejudice, (ii) this Court separately dismissed the Browder Claims, and (iii) the

Court denied the Lift Stay Motion. Those facts provide clear and convincing evidence of both

Mr. Browder's noncompliance with the Plan Injunctions and his failure to diligently attempt to

comply with the injunctions in a reasonable manner. Accordingly, the Movants have

demonstrated grounds under the *Lehman* test to hold Mr. Browder in contempt for violating the

Plan Injunctions and to award sanctions against him. The Court finds Mr. Browder in contempt

of this Court for his intentional and willful violations of the Plan Injunctions.

In reaching this conclusion, the Court notes that Mr. Browder has appeared pro se

throughout these proceedings. However, that does not give him license to ignore this Court's

orders or abuse court process. *See McDonald v. Head Crim. Ct. Supervisor Officer*, 117 F.R.D.

55, 58 (S.D.N.Y. 1987) ("[S]pecial solicitude for the difficulties that a pro se plaintiff must face

does not extend to the willful, obstinate refusal to play by the basic rules of the system upon

whose very power the plaintiff is calling to vindicate his rights.") *aff'd*, 850 F.2d 121 (2d Cir.

1988); *In re MF Glob. Holdings Ltd*., 2013 WL 2352440, at *4 (Bankr. S.D.N.Y. May 29, 2013)

(imposing a civil fine on a pro se litigant for repeated frivolous filings); *In re Olsen*, 358 B.R.

609, 627 (Bankr. S.D.N.Y. 2007) (ordering a pro se litigant to pay opposing counsel's reasonable

attorney's fees expended responding to frivolous motions and for ignoring a court order).

Moreover, while courts routinely provide pro so litigants with additional leeway in construing

their pleadings, in appropriate circumstances, courts sanction pro se litigants. This is one such

circumstance.  In the New Iowa Action, Mr. Browder asserts claims against the Debtors, the

Wind Down Estates, and the Individual Defendants. These claims are the same as those this

Court has already considered and expunged in the claims resolution process and in the Lift Stay

Order, denied Mr. Browder's request to pursue such claims. Mr. Browder's ongoing efforts to

pursue these expunged and enjoined claims establish his intent to continue to disregard the Plan

Injunctions and this Court's orders. It is appropriate to sanction him for those actions. *See In re

Nicholas*, 457 B.R. 202, 224 (Bankr. E.D.N.Y. 2011) (holding a pro se creditor in contempt and

awarding the debtor reasonable attorney's fees and $5000 in punitive damages after the creditor

commenced an action in state court in knowing violation of the discharge injunction); *In re

Olsen*, 358 B.R. 609, 628 (Bankr. S.D.N.Y. 2007) (holding a pro se debtor in contempt and

awarding a party reasonable attorney's fees associated with addressing contemptuous conduct

after the debtor ignored discovery orders and filed a recusal motion in a bad faith attempt to

delay an evidentiary hearing); *In re Hughes*, 360 B.R. 202, 209 (Bankr. N.D. Tex. 2007)

(holding a pro se debtor in contempt and fining her $10,000 after the debtor, who had filed

several frivolous bankruptcy petitions and had been barred from filing any new petitions for two

years, assisted her aunt in filing another frivolous petition).

The Movants seek sanctions for the costs and expenses, including legal fees incurred, in

(a) making this Motion to enforce the Plan Injunctions; and (b) any actions required to dismiss

the New Iowa Action if Mr. Browder continues to refuse to dismiss that action. Motion at ¶ 66.

Courts routinely use sanctions to encourage a party to comply with court orders. *See In re Covelli*, 550 B.R. 256, 269 (Bankr. S.D.N.Y. 2016) ("*Covelli*"); *In re Davitch*, 336 B.R. 241, 252 (Bankr. W.D. Pa. 2006) (requiring a creditor to pay to a trustee $100 per day of noncompliance); *In re Nat'l Heritage Found., Inc*., 2013 WL 3167698, at *21 (Bankr. E.D. Va. June 21, 2013) (requiring a creditor, pursing litigation outside of bankruptcy court in violation of the court's Confirmation Order, to pay $500 per day to the debtor until it dismissed its claims with prejudice). Courts have imposed sanctions in circumstances similar to those here. *In re Residential Cap., LLC*, 512 B.R. 179, 193 (Bankr. S.D.N.Y. 2014) (enjoining a litigant who brought state law claims in violation of a plan injunction from continuing to pursue those claims, holding them in contempt, and holding that appropriate sanctions were an award of reasonable attorney's fees). The Court finds that the Movants have demonstrated grounds for sanctioning Mr. Browder.

The Court has broad discretion in shaping appropriate sanctions to serve these ends. For example, bankruptcy courts have the power to structure sanctions to provide increasingly harsh penalties the longer noncompliant behavior continues. *See, e.g., In re Elegant Concepts, Ltd.,* 67 B.R. 914, 922 (Bankr. E.D.N.Y. 1986) (imposing sanctions of $100 per day that pro se litigants failed to withdraw a state law claim that violated the automatic stay, beginning ten days from the date of the court's order); *In re Amos*, 2010 WL 2026628, at *2 (Bankr. N.D. Ga. Feb. 18, 2010) (awarding sanctions to the debtors starting at $100 per day that noncompliant conduct continued and increasing to $500 per day over time). That is the format of the sanctions that the Movants seek in the Motion. They ask the Court to structure the sanctions award in a way that (i) allows Mr. Browder a period of time to comply with the Plan Injunctions after an order by the Court on

the Motion by dismissing the New Iowa Action without the imposition of any monetary

sanctions; and (ii) if Mr. Browder fails to comply, then implements an increasing sanction up to a

cap. Motion ¶ 67. They contend, and the Court agrees, that such a mechanism accounts for Mr.

Browder's status as a pro se litigant, by providing him with an opportunity to comply with the

Court's order, and reasonable sanctions if he refuses to do so. In considering that proposal the

Court finds *Covelli* instructive. In that case, a litigant pursued a claim in state court against

debtors in violation of the discharge injunction and despite the bankruptcy court's warnings that

the litigant was required to pursue his claim in an adversary proceeding in bankruptcy. 550 B.R.

at 270. The court found the litigant in contempt, ordered that the litigant withdraw or dismiss his

state court claim within seven days of the date of the contempt order, and ordered that, after the

seven day period, the litigant would be required to pay $100 to the debtors per day that the claim

for a deficiency judgment was not withdrawn. *Id.* at 271.

> The Court sanctions Mr. Browder, as follows:

> No later than 7 days after entry of this Order, Mr. Browder shall take all
> appropriate actions to dismiss the New Iowa Action in its entirety against all
> defendants.

> Should Mr. Browder fail to dismiss the New Iowa Action within such 7 day
> period, Mr. Browder will be sanctioned $100 for each business day that he fails to
> dismiss the New Iowa Action, up to 10 business days. If, after the 7 day grace
> period and 10 business days, Mr. Browder still has not dismissed the New Iowa
> Action, the daily sanction will increase to $200 per business day, continuing until
> Mr. Browder dismisses the New Iowa Action or the sanction reaches a cap of
> $10,000, subject to further review and adjustment by the Bankruptcy Court.

In connection with the sanction, the Plan Administrator and Consumer Representative shall

submit their reasonable fees and expenses incurred in connection with making this Motion to

enforce the Plan Injunctions and, if Mr. Browder has not dismissed the New Iowa Action in

response to this Order, any action required to dismiss the New Iowa Action to the Bankruptcy

Court, which retains the discretion to approve the amount of sanction to be shared by the Plan

Administrator and Consumer Representative proportionally to cost and expenses, including legal

fees, each expended.

**The Recusal Request**

In support of his Objection, Mr. Browder contends that I must recuse myself and cease

presiding over this matter. He says that I should do so because (i) he has amended his complaint

in the New Iowa Action to name me as a defendant in that action,[27] and filed papers in the First

Iowa Action to recuse me and the Honorable John A. Jarvey, the presiding judge therein, from

the First Iowa Action and these Chapter 11 Cases;[28] and (ii) that on the strength of a ruling that I

made from the bench during a hearing, I violated Mr. Browder's rights under the Fourth and

Fourteenth Amendments of the United States Constitution.[29]

Section 455 of title 28 of the United States Code is made applicable to this case by

Bankruptcy Rule 5004(a). That rule states, as follows:

> A bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from
> presiding over the proceeding or contested matter in which the disqualifying
> circumstances arises or, if appropriate, shall be disqualified from presiding over
> the case.

Fed. R. Bankr. R. 5004(a). In relevant part, section 455 states, as follows:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify
> himself in any proceeding in which his impartiality might reasonably be
> questioned.

> (b) He shall also disqualify himself in the following circumstances:

---

[27]    New Iowa Action (Doc. 6), Plaintiff Motion to Amend This Case (S.D. Iowa July 26, 2021).

[28]    First Iowa Action (Doc. 50) Motion to Charge Both Judges with Fraud and Sedition and Motion to Recuse Both
Judges John Jarvey and James L. Garrity, Jr. (S.D. Iowa May 10, 2021).

[29]    *See* Opposition at 12.

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding,

28 U.S.C. § 455(a), (b)(1).[30] Recusal motions are committed to the trial court's discretion. *Apple v. Jewish Hosp. & Med. Ctr.,* 829 F.2d 326, 333 (2d Cir.1987). Disqualification is required if a reasonable factual basis exists for doubting the judge's impartiality. *In re Beard*, 811 F.2d 818, 827 (8th Cir. 1987). In assessing the merits of a recusal motion, the inquiry the Court must make is whether a reasonable person would have a reasonable basis for questioning the judge's impartiality, not whether the judge is in fact impartial. *Rice v. McKenzie*, 581 F.2 1114, 1116 (4th Cir. 1978). In doing so, the court applies an objective test. The appearance of impropriety must be determined "by examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all of the relevant facts would recuse the

---

[30]    Sections 455(b)(2) – (5) plainly are not relevant herein. They mandate that a bankruptcy judge disqualify himself in any proceeding:

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

28 U.S.C. §§ 455(b)(2) – (5).

judge." *In re Drexel Burnham Lambert Inc.,* 861 F.2d 1307, 1313 (2d Cir.1988); *accord United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992); *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d at 333. "The alleged bias and prejudice sufficient to warrant disqualification must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); *accord Lewis v. Tuscan Dairy Farms, Inc.,* 25 F.3d 1138, 1141 (2d Cir.1994). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *see United States v. Colon,* 961 F.2d 41, 44 (2d Cir.1992); *Schiff v. United States,* 919 F.2d 830, 834 (2d Cir.1990) *cert. denied,* 501 U.S. 1238, 111 S.Ct. 2871, 115 L.Ed.2d 1037 (1991). Instead, a judge's rulings should constitute grounds for appeal, not for recusal. *See Liteky v. United States*, 510 U.S. at 554. "Nor can a litigant force a judge's recusal merely by filing a complaint or instituting a suit against him or her." *United States v. Sykes*, No. 05-CR-6057 CJS, 2008 WL 3049975, at *3 (W.D.N.Y. July 31, 2008) (citing *United States v. Martin-Trigona,* 759 F.2d 1017, 1020-21 (2d Cir.1985)). The Court has an affirmative duty "not to disqualify [it]self unnecessarily." *See Mazzei v. The Money Store*, 483 F. Supp. 2d 323, 327 (S.D.N.Y. 2007) (citing *Nat'l Auto Brokers Corp. v. General Motors Corp.,* 572 F.2d 953, 958 (2d Cir.1978)).

In his Opposition, Mr. Browder claims that because he has named me as a party in the First Iowa Action and New Iowa Action, I cannot rule on the Motion and must recuse myself from matters in these Chapter 11 Cases that involve him. The First Iowa Action was dismissed pursuant to the First Iowa Action Stipulation and the case remains closed. Chief Judge John A. Jarvey denied Claimant's motion for recusal in the First Iowa Action because, among other

31

things, that case is closed. In any event, it is settled law that "a judge is not required to recuse

him or herself simply because a litigant before the judge has filed suit or made a complaint

against him or her." *Salten v. Cty. Of Suffolk*, No. 08-CV-5294 SJF AKT, 2012 WL 3260266, at

*2 (E.D.N.Y. Aug. 6, 2012) (citing *Jenkins v. Sladkus,* No. 04 Civ. 1595, 2004 WL 1238360, at

*1 (S.D.N.Y. June 3, 2004)). *See also United States v. Svkes.* No. 05–CR–6057, 2008 WL

3049975, at *3 (W.D.N.Y. July 31, 2008) (litigant cannot "force a judge's recusal merely by

filing a complaint or instituting a suit against him or her"); *United States v. Nagy.* 19 F.Supp.2d

139, 140–141 (S.D.N.Y.1998) (A judge "is not disqualified merely because a litigant sues or

threatens to sue him [or her]. Such an easy method for obtaining disqualification should not be

encouraged or allowed."); *Jemzura v. Public Service Comm'n,* 961 F.Supp. 406, 411

(N.D.N.Y.1997) ("[T]he general rule is that recusal is not appropriate merely because a party has

sued or threatens to sue the judge presiding over that party's litigation. . . . The logic behind the

rule is to prevent 'judge-shopping' by litigants."). Like in the First Iowa Action, it appears that

here, Mr. Browder is attempting to judge shop.

     Mr. Browder next argues that in my prior rulings, I violated his rights under the Fourth

and Fourteenth Amendments and that these adverse rulings constitute grounds for recusal.

However, "[a]dverse rulings against a party do not render a judge biased such that recusal is

proper." *United States v. Nagy*, 19 F. Supp. 2d at 140. Mr. Browder had the opportunity to appeal

the Browder Memorandum Decision and Order and any orders with which he disagreed, but

failed to do so. A motion for recusal is not a substitute for an appeal of any adverse ruling. *See*

*Roe v. City of New York*, No. 20-CV-4059 (LLS), 2021 WL 955833, at *3 (S.D.N.Y. Mar. 12,

2021) (citing *Liteky v. United States*, 510 U.S. at 555 ("noting that [a]lmost invariably, [judicial

rulings] are proper grounds for appeal, not for recusal")). *See also Salten v. Cty. Of Suffolk*, 2012

32

WL 3260266, at *2 ("Litigants are entitled to an unbiased judge; not to a judge of their choosing"). For these reasons, recusal is unwarranted, and I deny Claimant's request that I recuse myself from this matter. *See Liteky v. United States*, 510 U.S. at 556 (holding that disqualification of the judge was not proper and noting that the first recusal motion was based on rulings made, and statements uttered, by the judge were routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses. "All occurred in the course of judicial proceedings, *and* neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible."); *Mazzei v. The Money Store*, 483 F. Supp. 2d 323, 327 (S.D.N.Y. 2007) (holding that recusal was not appropriate and "noting plaintiffs' absolute failure to demonstrate any grounds upon which this Court is required to recuse itself. . . This Court has spent at least four years with these cases and will not allow plaintiffs' baseless claims to result in needlessly burdening another judge with gaining the familiarity with the above-captioned actions that this Court has already acquired").

## Conclusion

Based on the foregoing, the Court grants the Motion. The Movants shall settle an order consistent with this Memorandum Decision in accordance with Local Rule 9074-1.

Dated: August 20, 2021
      New York, New York

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge