**UNITED STATES BANKRUPTCY COURT**　　　　　NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- x
In re:　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:　Case No. 19-10412 (JLG)
Ditech Holding Corporation, *et al.*,　　:　Chapter 11
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:　(Jointly Administered)
　　　　　　　　　　　　　Debtors.[1]　:
--------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER SUSTAINING THE FIFTEENTH OMNIBUS OBJECTION (NO BASIS CONSUMER CREDITOR CLAIMS) WITH RESPECT TO CLAIM OF ALTON W. OBERT

**A P P E A R A N C E S :**

WEIL, GOTSHAL & MANGES LLP
*Attorneys for the Plan Administrator*
767 Fifth Avenue
New York, New York 10153
By:　Ray C. Schrock, P.C.
　　　Richard W. Slack, Esq.
　　　Sunny Singh, Esq.

JENNER & BLOCK LLP
*Attorneys for the Consumer Claims Representative*
919 Third Avenue
New York, NY 10022
By:　Richard Levin, Esq.

Ms. Suzanne Roberts
*Appearing Pro Se*
813 SE 8th Street
Pendleton, OR 97801

---

[1]　The confirmation of the Debtors' Third Amended Plan (as defined below) created the Wind Down Estates. The Wind Down Estates, along with the last four digits of their federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573. References to "ECF No. __" herein are to documents filed in the electronic docket in these jointly administered cases under Case No. 19-10412 (the "Chapter 11 Cases").

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

**Introduction**[2]

Suzanne E. Roberts ("Ms. Roberts") filed Proof of Claim No. 1998 (the "Claim") against

Reverse Mortgage Solutions, Inc. ("RMS") in these Chapter 11 Cases on behalf of her now

deceased father, Alton W. Obert ("Mr. Obert") (the "Claimant"). The Claim in the sum of

$148,868.64 and consists of a secured claim ($133,450.17), and an unsecured priority claim

($15,418.47). In their objection, the Plan Administrator and the Consumer Claims Representative

(collectively, the "Estate Representatives") seek to disallow and expunge the Claim on the

grounds that it fails to state a claim for relief against RMS. *See Fifteenth Omnibus Objection to*

*Proofs of Claim (No Basis Consumer Creditor Claims)* [ECF No. 1747] (the "Objection"). Ms.

Roberts filed a response to the Objection. *See* handwritten document construed as a *Response to*

*the Objection* [ECF No. 1877] (the "Response"). The Estate Representatives submitted a reply to

the Response. *See Joint Reply of the Consumer Representative and Plan Administrator in*

*Support of the Fifteenth Omnibus Objection with Respect to Claim of Alton W. Obert (1998)*

[ECF No. 3618] (the "Reply").[3]

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the
*Fifteenth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims)* [ECF No. 1747] or the Third
Amended Plan, as applicable.

[3]   The Reply annexes exhibits consisting of the underlying mortgage documents. The Court takes judicial notice
of those documents. *See Chestnut v. Wells Fargo Bank, N.A.,* No. 10-CV-4244JSARL, 2011 WL 838914, at *1
(E.D.N.Y. Mar. 2, 2011) ("The Complaint, however, contains limited factual material relating to Plaintiffs'
contractual dispute with Wells Fargo . . . Instead, the Complaint largely combines legal argument with a public
policy critique of the mortgage industry . . . Consequently, the Court largely constructs this section from documents
that it can take judicial notice of, such as the underlying mortgage documents . . . *See Int'l Audiotext Network, Inc. v.*
*Am. Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (in contract action, court can take judicial notice of underlying
contract as a document 'integral to the complaint'); *Ng v. HSBC Mortg. Corp.*, 2010 WL 889256, at *9 n. 13
(E.D.N.Y. Mar.10 2010) (in mortgage dispute, taking judicial notice of settlement statements)").

Pursuant to the Claims Procedures Order,[4] the Court conducted a Sufficiency Hearing on the Claim, at which time counsel for the Estate Representatives and Ms. Roberts were heard by the Court. The legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss a complaint for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[5] *See* Claims Procedures Order ¶ 3(iv)(a).

As explained below, accepting all factual allegations asserted by the Claimant in support of the Claim as true, drawing all reasonable inferences in the Claimant's favor, and interpreting the Claim and the Response to raise the strongest arguments that they suggest, the Claim fails to state a plausible claim for relief against RMS. Accordingly, the Court sustains the Objection and disallows and expunges the Claim.

## Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

On December 5, 2007, Mr. Obert entered into an Adjustable Rate Home Equity Conversion Loan Agreement (the "Reverse Mortgage")[6] with Urban Financial Group, Inc. ("Urban"). Contemporaneously with the Reverse Mortgage, Mr. Obert executed a note (the "Note") and entered into a deed of trust (the "Deed of Trust") securing real property located at

---

[4]    *See Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures* [ECF No. 1632].

[5]    Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

[6]    A copy of the Reverse Mortgage is annexed as Exhibit A to the Reply.

816 NE 3rd Avenue, Milton-Freewater, Oregon 97862 (the "Property").[7] Without limitation, the Note provides that "immediate payment in full of all outstanding principal and accrued interest" can be required if "[f]or a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower (the 'Primary Residency Provision')." *See* Note at 2. Under the Deed of Trust, Mr. Obert is the "Grantor," Urban is the "Beneficiary" and Alan E. South, Esq. is the "Trustee." The Deed of Trust mandates that Mr. Obert occupy the Property as his principal residence, pay property taxes and maintain fire, flood and hazard insurance. *See* Deed of Trust at 2. It also provides that if Mr. Obert fails to make the required property tax or hazard insurance payments, the payments can be advanced and added to the Reverse Mortgage. *Id.* at 2-3. Under the Note, Mr. Obert was not personally liable for any principal payments or interest under the Reverse Mortgage, with the debt enforceable "only through sale of the Property." Note at 1.

In late March 2018, Mr. Obert was hospitalized and in early April, he was moved to Walla Walla State Veterans Home in Walla Walla, Washington (the "Veterans Home"). *See* Claim at 16.[8] On April 27, 2018, Mr. Obert notified RMS that he would be residing at the Veterans Home for an indefinite period of time. *Id.* at 9. On May 1, 2008, Urban transferred servicing of the Reverse Mortgage to RMS. *See* April 15, 2008 RMS Welcome Letter.[9] Between August 6, 2018 and January 4, 2019, RMS sent a series of notices to Mr. Obert, requesting that he verify his occupancy of the Property. *See* Claim at 13-15.

---

[7]    Copies of the Note and Deed of Trust are annexed as Exhibits B and C, respectively, to the Reply.

[8]    References herein to particular pages of the Claim and Response are cited to the particular PDF page of the Claim and Response.

[9]    A copy of the RMS Welcome Letter is annexed as Exhibit D of the Reply.

As of April 2, 2019, Mr. Obert's loan balance was $119,427.68. *Id.* at 10. On May 14,

2019, having been residing at the Veterans Home for more than a year, Mr. Obert was in default

under the Primary Residence Provision in the Note. The Property was foreclosed upon and on or

about May 16, 2019, it sold for $70,001 to a third-party bidder through a trustee's sale. *See* May

16, 2019 Letter from Quality Loan Service Corp. (the "Sale Confirmation").[10]  On May 23, 2019,

the trustee's deed was recorded. *See* May 23, 2019 Trustee's Deed for Notice of Default.[11] As

Mr. Obert's loan balance was almost $120,000, the trustee's sale resulted in a deficiency of

almost $50,000, for which Mr. Obert was not personally liable, pursuant to the terms of the Note.

At the time of the foreclosure, Mr. Obert still resided at the Veterans Home. *See* Claim at 8.

**The Chapter 11 Cases**

On February 11, 2019 (the "Petition Date"), Ditech Holding Corporation (f/k/a Walter

Investment Management Corp.) and certain of its affiliates ("Debtors") filed petitions for relief

under chapter 11 of the Bankruptcy Code in this Court.  The Debtors remained in possession and

control of their business and assets as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1,

2019 at 5:00 p.m. (prevailing Eastern Time) as the deadline for each person or entity, not

including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a

proof of claim in the Debtors' Chapter 11 Cases (the "General Bar Date"). *See Order*

*Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice*

*Thereof* [ECF No. 90].  Thereafter, the Court extended the General Bar Date for consumer

borrowers, twice, and ultimately to June 3, 2019 at 5:00 p.m. (prevailing Eastern Time) (the

---

[10]    A copy of the Sale Confirmation is annexed as Exhibit E of the Reply.

[11]    A document showing that the Trustee's Deed for Notice of Default was recorded on May 23, 2019 is annexed as
Exhibit F of the Reply.

"Consumer Borrower Bar Date"). *See Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc* [ECF No. 496].

On September 26, 2019, the Debtors confirmed their Third Amended Plan, and on September 30, 2019, that plan became effective. *See Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors* [ECF No. 1326] (the "Third Amended Plan"); *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors* [ECF No. 1404]. *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims* [ECF No. 1449]. The Plan Administrator is a fiduciary appointed under the Third Amended Plan who is charged with the duty of winding down, dissolving and liquidating the Wind Down Estates. *See* Third Amended Plan, Art. I, ¶¶ 1.130, 1.184, 1.186. The Consumer Claims Representative is a fiduciary appointed under the Third Amended Plan who is responsible for the reconciliation and resolution of Consumer Creditor Claims and distribution of funds to holders of Allowed Consumer Creditor Claims in accordance with the Third Amended Plan. *Id.,* Art. I, ¶ 1.41. Under the plan, the Plan Administrator, on behalf of each of the Wind Down Estates, is authorized to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims; and the Consumer Claims Representative has the exclusive authority to object to all Consumer Creditor Claims. *See id.*, Art. VII, ¶ 7.1.

**The Proof of Claim**

On May 31, 2019, Ms. Roberts filed the Claim on behalf of the Claimant. *See* Claim at 16. The Claim attaches a Washington state durable power of attorney on behalf of Mr. Obert in

5

favor of Ms. Roberts which terminates upon Mr. Obert's death. *See id.* at 4-7.[12] The Claim

asserts a secured claim in the amount of $133,450.17 (*id.* at 2, ¶ 9) and a priority claim for

$15,418.47. *Id.* at 3, ¶ 12. The Claimant does not specify why the Claim is entitled priority status

and does not identify any Wind Down Estate-owned property securing the Claim.

The Claim includes largely unspecified complaints about the Reverse Mortgage on the

Property, including that the Note required Mr. Obert to obtain hazard insurance. *See id.* at 17, 23.

The Claim also appears to seek $11,315.68 in deferred taxes owed on the Property, to stop any

foreclosures on the Property, to require the Debtors to purchase long-term healthcare for seniors,

including Mr. Obert, and to require the Debtors to pay $15,418.47 in overdue payments owed by

Mr. Obert to the Veterans Home. *Id.* at 23. Still, the focus of the Claim is on the alleged

unfairness of the origination of the Reverse Mortgage. Ms. Robert identifies "the basis of the

claim" as "[e]lder financial theft, fraud and abuse." *Id.* at 2, ¶ 8. She annexes a number of

documents to the proof of claim. One of the documents is the April 27, 2018 letter to RMS from

Mr. Obert, on stationary from the Veterans Home, notifying RMS that he was residing

"indefinitely" at the Veterans Home. *Id.* at 9. Another document is an unaddressed, handwritten

letter from Ms. Roberts dated February 25, 2019, that states, among other things, that Mr. Obert

was moved from a hospital to the Veterans Home on April 6, 2018 and that he "is presently

---

[12]     Mr. Obert passed away on August 22, 2019 – after Ms. Roberts filed the Claim, but before the Estate
Representatives filed the Objection and Ms. Roberts filed the Response. *See* Response at 5. As such, the power of
attorney does not provide Ms. Roberts standing to file the Response. *See Tyler on behalf of Butler v. Whezel*, 457
P.3d 338 (Or. Ct. App. 2019) (dismissing for lack of standing an appeal brought by the trustee of a revocable trust
who, upon death of the principal, "no longer had authority to pursue the financial abuse claims on Butler's behalf").
*See also Dickerson v. Murfield,* 183 Or. 149, 163 (1948) (stating that in the absence of special circumstances, a
power of attorney is revoked by the death of the principal) (citations omitted). Bankruptcy Rule 3001((b) provides
that "[a] proof of claim shall be executed by the creditor or the creditor's authorized agent . . ." Fed. R. Bankr. P.
3001(b). Ms. Roberts had standing to file the Claim. "When an objection to claim is contested, a contested matter is
created." *In re Rockefeller Ctr. Props.,* 272 B.R. 524, 540 (Bankr. S.D.N.Y. 2000). Bankruptcy Rule 9014(c)
specifically makes Bankruptcy Rule 7025 applicable. Rule 7025 provides that if a party dies, and the claim is not
extinguished, the court may order substitution of the proper party. Mr. Obert's death does not extinguish the Claim.
The Court assumes that Ms. Roberts has standing to act on behalf of her father's estate.

being held against his will" at the Veterans Home. That letter also asserts that Mr. Obert had

been "victimized" by a mortgage company. *Id.* at 16-18.  Ms. Roberts also attaches a completed

*Congressional Inquiry Privacy Release Form* and *Complaint Form for the Division of Financial*

*Regulation* wherein she identifies RMS as the "Agency Involved." The relief that she is seeking

in those documents is (i) to stop foreclosure, restore equity, protect seniors from predatory and

unethical laws/practices; and (ii) to require mortgage companies to purchase long term health

care so seniors can stay in their homes. *Id*. at 19-23.

In her Response, Ms. Roberts amplified her complaints regarding the origination of the

Reverse Mortgage by asserting, among other things:

> Elder Financial Abuse has occurred in the most contemptible manner, by
> deception allowing borrowers to sign over their life's work with NO attempt to
> protect homeowners. Response at 3.

> Debtors should be required to include homeowner's insurance, property taxes, and
> a long and short term medical care policy as part of the loan process. *Id.*

> Coercion by leading the borrower into believing they will be allowed to remain in
> the home when in fact within 90 days of not being able to return home the
> Foreclosure starts. *Id.* at 4.

> The borrower had NO legal or personal representative of family member present, during
> or before the signing of the loan documents. *Id.*

She summarized, as follows:

> The borrower, Mr. Obert, my dad, died homeless and destitute in a nursing home
> he could not afford. A nursing home ill equipped to care for him. Under staffed on
> all fronts, medically, administratively, and one physician for over 60 patients. The
> borrower, the "patient," Mr. Obert, my dad fought hard for eighteen months to go
> HOME. He did not make it home. He should be made whole.

> My part in this as a lay person. A daughter who said this is wrong. I must tell
> someone. I did tell many people about what happened to this "borrower,"
> "patient," proud homeowner dad. My dad paid the ultimate price for being
> deceived into a devastating financial decision. He died in a strange place. To the
> end of his life, he never understood why he could not go home. This is malice in
> its purest form. To take a man's life's work is malicious, premediated, planned,
> executed financial abuse.

7

*Id.* at 5. The Response included a complaint regarding the conduct of the non-judicial foreclosure

sale:

> The borrower had taken from the home all his furniture, appliances and two wheel
> chairs by the Debtors. Mr. Seaquist of Seaquist Realty in Milton-Freewater
> Oregon executed the Debtors foreclosure. We were unable to schedule the mover
> before the locks were changed.
>
> We assert that this company was not qualified to service a home equity release
> opportunity to borrowers.

*Id.* at 4.

**Claims Procedures Order**

On November 19, 2019, the Court entered the Claims Procedures Order. Under that

order, the Estate Representatives are authorized to file Omnibus Objections seeking reduction,

reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d)

and additional grounds set forth in the Claims Procedures Order. *See* Claims Procedures Order ¶

2(i)(a)-(h). A properly filed and served response to an Objection gives rise to a "Contested

Claim" that will be resolved at a Claim Hearing. *Id.* ¶ 3(iv). The Estate Representatives have the

option of scheduling the Claim Hearing as either a "Merits Hearing" or a "Sufficiency Hearing."

*Id.* ¶ 3(iv)(a),(b).  A "Merits Hearing" is an evidentiary hearing on the merits of a Contested

Claim. A "Sufficiency Hearing" is a non-evidentiary hearing to address whether the Contested

Claim states a claim for relief against the Debtors. The legal standard of review that will be

applied by the Court at a Sufficiency Hearing is equivalent to the standard applied by the Court

upon a motion to dismiss for failure to state a claim upon which relief can be granted. *Id.* ¶

3(iv)(a).

**The Objection**

In the Objection, the Estate Representatives contend that the Court should disallow and

expunge the Claim because it fails to state cognizable claims against RMS. *See* Objection ¶ 17;

8

Reply ¶¶ 19-28. Alternatively, the Estate Representatives argue that if the Claim is not expunged, it should be re-characterized from a secured and priority claim, to an unsecured, Consumer Creditor Claim, subject to further determination of its status as a section 363(o) or a non-section 363(o) claim.  Reply ¶¶ 29-37.

### Applicable Legal Standards

Under section 502(a) of the Bankruptcy Code, "a claim ... proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). The filing of a proof of claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bank. P. 3001(f). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See, e.g., Rozier v. Rescap Borrower Claims Tr. (In re Residential Capital, LLC)*, 15 Civ. 3248(KPF), 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 09-50026, 2012 WL 1886755, at *3 (S.D.N.Y. May 12, 2012); *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd sub nom. Peter J. Solomon Co., L.P. v. Oneida, Ltd.*, No. 09-cv-2229, 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010). Section 502(b) sets forth the grounds for disallowing a properly filed proof of claim. *See* 11 U.S.C. § 502(b); *see also Travelers Cas. and Sur. Co. of Am. v. Pacific Gas and Elec. Co.,* 549 U.S. 443, 449 (2007) ("But even where a party in interest objects [to a claim], the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b)").

In filing the Objection, the Estate Representatives initiated a contested matter.  *See* Fed. R. Bankr. P. 3007 advisory committee's note ("[t]he contested matter initiated by an objection to a claim is governed by Rule 9014. . ."). *See also In re Tender Loving Care Health Servs., Inc.*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the

objection has initiated a contested matter"). Bankruptcy Rule 9014 governs contested matters.

The rule does not explicitly provide for the application of Bankruptcy Rule 7012. However,

Bankruptcy Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter

direct that one or more of the other Rules in Part VII shall apply." Fed. R. Bankr. P. 9014. The

Court did so here. Under the Claims Procedures Order, the legal standard of review the Court

applies at a Sufficiency Hearing is equivalent to the standard applied by the Court under Rule

12(b)(6) on a motion to dismiss for failure to state a claim upon which relief could be granted.

*See* Claims Procedure Order ¶ 3(iv)(a). *See also In re 20/20 Sport, Inc.*, 200 B.R. 972, 978

(Bankr. S.D.N.Y. 1996) ("In bankruptcy cases, courts have traditionally analogized a creditor's

claim to a civil complaint [and] a trustee's objection to an answer. . . ").

In applying Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts

alleged in support of the Claim in light of the pleading requirements under Rule 8(a) of the

Federal Rules of Civil Procedure.[13] Rule 8(a)(2) states that a claim for relief must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R.

Civ. P. 8(a)(2). To meet that standard, the Claim "must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S.

662, 678 (2009) ("*Iqbal*") (citations omitted); *accord Bell Atlantic Corp. v. Twombly,* 550 U.S.

544, 570 (2007) ("*Twombly*"). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 570. To satisfy Rule

12(b)(6), the "pleadings must create the possibility of a right to relief that is more than

speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008)

---

[13]   Rule 8 is incorporated herein pursuant to Bankruptcy Rule 7008.

(citation omitted). In considering whether that standard is met for a particular claim, the court

must assume the truth of all material facts alleged in support of the claim and draw all reasonable

inferences in the claimant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98

(2d Cir. 2007). However, the court "need not accord 'legal conclusions, deductions or opinions

that are couched as factual allegations . . . a presumption of truthfulness.'" *Hunt v. Enzo

Biochem, Inc.*, 530 F.Supp.2d 580, 591 (S.D.N.Y. 2008) (quoting *In re NYSE Specialists Sec.

Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)). In short, "[i]n ruling on a motion pursuant to Fed. R. Civ.

P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to

assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC

Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (citation and internal quotation marks omitted).

Where, as here, the Claimant is proceeding pro se, the Court will liberally construe the Claim,

although the Claim must nonetheless be supported by specific and detailed factual allegations

that provide a fair explanation for the basis of the Claim and the legal grounds for recovery

against the Debtors. *Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC)*, 489 B.R.

489, 494 (Bankr. S.D.N.Y. 2013) (citing *Iwachiw v. New York City Bd. of Elections*, 126 Fed.

Appx. 27, 29 (2d Cir. 2005)).

## Discussion

Assuming the truth of the allegations asserted in support of the Claim, Mr. Obert suffered

financial devastation by reason of Urban's predatory lending practices and suffered physically

and mentally in an allegedly understaffed Veterans Home. It pains the Court to review those

allegations. However, the Court lacks the power to assist Ms. Roberts in redressing those alleged

wrongs. RMS is not affiliated with Urban, and Ms. Roberts has not alleged grounds for holding

RMS accountable for Urban's wrongdoing in originating the Reverse Mortgage. Further it is

plain that Ms. Roberts must direct the complaints regarding the quality of her father's care at the

Veterans Home to the Veterans Home. She has not alleged facts demonstrating that RMS is accountable for harm that her father suffered at the hands of Urban and the Veterans Home. As noted, in the Response, Ms. Roberts refers to "forced place hazard insurance" and asserts that hazard insurance, property taxes, and long and short term medical care policies should all be included as part of the Reverse Mortgage. *See* Response at 3. However, the requirement for Mr. Obert to maintain hazard insurance and pay property taxes, and in the event of non-payment, for the servicer to pay those costs and add them to the loan balance, is plainly set forth in the Deed of Trust. *See* Deed of Trust at 2-3. There is no provision in any of the Reverse Mortgage documents for the lender (or anyone else) to provide Mr. Obert with medical care or long-term care insurance. Ms. Roberts also appears to object to the inclusion of the Primary Residence Requirement in the Reverse Mortgage (Response at 4), which again was an express provision included in the Note. *See* Note at 2. Finally, Ms. Roberts must direct her complaints about the conduct of the non-judicial foreclosure sale of the Property to the Trustee under the Deed of Trust. In short, the Claim does not assert facts demonstrating that the Claimant can assert a plausible claim for relief against RMS. For that reason, RMS has demonstrated grounds to disallow and expunge the Claim. *See Sotheby's, Inc. v. Stone*, 388 F. Supp. 3d 265, 276 (S.D.N.Y. 2019) (granting the motion to dismiss defendant's counterclaim for failure to plead facts to support a cause of action for breach of contract); *In re Residential Cap., LLC*, 529 B.R. 806, 818 (Bankr. S.D.N.Y. 2015) (sustaining the objection because claimant "does not allege how GMACM contravened the terms of her Note and Mortgage"); *In re Henderson*, 423 B.R. 598, 615 (Bankr. N.D.N.Y. 2010) (noting that "[d]ismissal is therefore appropriate when the plaintiff would not be entitled to any type of relief, even if plaintiff were to prevail on the veracity of its factual allegations." (citations omitted).

12

Moreover, and in any event, the claims at issue are barred by applicable statutes of limitation under Oregon law. The Note and Deed of Trust were both executed almost fourteen years ago on December 5, 2007. In Oregon, the statute of limitations for fraud is two years from the date of discovery, six years for contract claims, and seven years from the date of the discovery for claims of elder abuse. *See* ORS §12.110(1); ORS §12.080; ORS § 124.130.[14] "The discovery rule in ORS 12.110(1) creates the following disjunctive test for fraud-claim accrual: a fraud claim accrues when the plaintiff has discovered facts or, in the exercise of reasonable diligence, should have discovered facts that would alert a reasonable person to the existence of the three elements of an actionable injury, which are (1) harm, (2) causation, and (3) tortious conduct—viz., the alleged fraud." *Murphy v. Allstate Ins. Co.*, 284 P.3d 524, 528 (Or.App. 2012). The Estate Representatives contend, and the Court agrees, that fraud claims relating to the origination of the Reverse Mortgage accrued on the later of the date that the Claimant executed the Note and the date that the Deed of Trust was recorded. The Note was executed on December 5, 2007 and the Deed of Trust was recorded on December 12, 2007. Therefore, the latest the statute of limitations for any potential claim by Mr. Obert expired was December 12, 2014, which was five years prior to the filing of the Claim. Reply ¶ 21. For claims of elder abuse and fraud arising from origination documents, the date of discovery is the date the loan is fully executed, and the Deed of Trust is recorded. *Swango v. Nationstar Sub1, LLC*, 2018 WL 4100661, at *11 (D. Or. Aug. 27, 2018) (holding that, under Oregon law, a plaintiff's 2018 elder

---

[14]   In an action for breach of contract, the six-year statute of limitations runs from the date of breach, not the date of the contract. *Waxman v. Waxman & Assocs., Inc.,* 224 Or. App. 499, 512 (2008) (concluding that the trial court correctly held that plaintiffs' contract claims are barred by the statute of limitations and that the arbitration award cannot be given preclusive effect.). *See also* ORS § 12.080(4) providing that "[a]n action for taking, detaining or injuring personal property, including an action for the specific recovery thereof, excepting an action mentioned in ORS 12.137; shall be commenced within six years"). Here, the breach of contract claim accrued in and the statute of limitations ran six years later, in 2013. Therefore, the claim for breach of contract ran several years before the Claim was filed.

financial abuse and fraud claims based on the terms of a reverse mortgage loan and deed of trust

were time barred because the statute of limitations began to run in 2009, when the loan was

finalized, and the underlying deed of trust was recorded). The Note and Deed of Trust were

recorded in 2007. Accordingly, the statute of limitations expired almost five years before Ms.

Roberts filed the Claim in 2019.

The facts relevant to the Claim are analogous to those previously considered by this

Court in connection with the claim of Victor Khoury. Mr. Khoury alleged that he was tricked by

an unnamed gentleman into entering into a reverse mortgage, which was also originated by

Urban, in 2010 and later serviced by RMS. *See* June 24, 2021 Omnibus Hr'g. Tr. at 48:20-25,

50:3-9.[15] In expunging Mr. Khoury's claim, the Court noted that RMS "really has nothing to do"

with the origination of the reverse mortgage and that the claim was really that "you never should

have taken out the reverse mortgage and you were pressured into doing it unfairly by a predatory

lender." *Id.* at 53:23-54:6. The Court also expunged Mr. Khoury's claim on the grounds that the

statute of limitations had passed on any potential claim against RMS. *Id.* at 58:18- 21 ("And so

because you've not alleged facts that support a claim and the only claims you would have would

be barred by the running of time, right, I'm going to be sustaining the objection."). Here, the

claims of alleged wrongdoing and unfairness arise from the execution of the Reverse Mortgage

and the plain terms of the Note and Deed of Trust. Moreover, as in *Khoury*, any applicable

statute of limitations long expired before the Chapter 11 Cases were filed.

The fraud claim also fails to state a claim for relief against RMS because it does not

allege fraud with particularity. Under Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), in

"alleging fraud or mistake, a party must state with particularity the circumstances constituting

---

[15]   A copy of the transcript is annexed as Exhibit G to the Reply.

fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be

alleged generally." Fed. R. Civ. P. 9(b).[16] Additionally, in this circuit, pleading fraud requires

more than general allegations of intent to prove fraud. When pleading scienter, parties "must

allege facts that give rise to a strong inference of fraudulent intent." *First Capital Asset Mgmt.,*

*Inc. v. Satinwood, Inc.,* 385 F.3d 159, 179 (2d Cir. 2004). Claimant can meet this standard by

"(1) alleging facts to show that defendant[ ] had both motive and opportunity to commit fraud, or

by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or

recklessness." *PetEdge, Inc. v. Garg*, No. 1:15-CV-9606-GHW, 2017 WL 564088, at *9

(S.D.N.Y. Feb. 10, 2017) (alteration in original) (internal citation omitted). "To qualify as

'strong,' the inference of scienter must be more than merely 'reasonable' or 'permissible'—it

must be cogent and compelling, thus strong in light of the other explanations." *In re AlphaStar*

*Ins. Grp. Ltd.*, 383 B.R. 231, 257 (Bankr. S.D.N.Y. 2008).

   The Claim contains few allegations directed against RMS and those that are so directed,

do not identify any statement or other representation made by RMS that is alleged to be

fraudulent. Moreover, neither the Claim nor Response contain any allegation giving rise to a

strong inference of fraudulent intent of RMS. The Response contains (i) allegations of "coercion

by leading the borrower into believing they will be allowed to remain in the home," and (ii)

accuses the Debtors of manipulating the insurance industry. *See* Response at 2, 3.

Neither allegation gives rise to a cogent and compelling inference of fraudulent intent, and

therefore the Claim and Response do not satisfy the Rule 9(b) pleading standard. *See Musalli*

*Factory for Gold & Jewellry Co. v. JPMorgan Chase Bank, N.A.,* 382 F. App'x 107, 108–09 (2d

Cir. 2010) (affirming dismissal by the district court and noting that "Rule 9(b) requires that the

---

16   Rule 9 is made applicable herein by Bankruptcy Rule 7009.

complaint allege facts with a greater specificity than is evident here. We hold that the complaint

fails to allege with sufficient specificity facts that link Gambella, and JPMorgan Chase Bank in

turn, to any fraud perpetrated by Boktor and NYF."); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d

1124, 1132 (2d Cir. 1994) (affirming the district court's order dismissing claims for failure to

plead fraud with the particularity required by Rule 9(b)); *In re Ditech Holding Corp.*, No. 19-

10412 (JLG), 2021 WL 2690315, at *9 (Bankr. S.D.N.Y. June 29, 2021) (holding, among other

things that the claimant there makes the conclusory allegation that Ditech defrauded him but

pleads no facts to support this contention).

### Conclusion

Based on the foregoing, accepting all factual allegations asserted on behalf of the

Claimant in support of the Claim as true, drawing all reasonable inferences in the Claimant's

favor, and interpreting the Claim and the Response to raise the strongest arguments that they

suggest, the Claim fails to state a plausible claim for relief against RMS. Accordingly, for that

reason, the Court sustains the Objection and disallows and expunges the Claim.[17]

IT IS SO ORDERED.

Dated:  New York, New York
        October 1, 2021

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge

---

[17]   In so ruling, the Court does not consider the Estate Representatives' alternative arguments in support of the Objection.