| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |

------------------------------------------------------- x
In re:                                                  :
                                                        :   Case No. 19-10412 (JLG)
Ditech Holding Corporation, *et al.*,                   :
                                                        :   Chapter 11
                                                        :
                                 Debtors.¹              :   (Jointly Administered)
                                                        :
------------------------------------------------------- x

# MEMORANDUM DECISION AND ORDER SUSTAINING THE FOURTEENTH OMNIBUS OBJECTION (NO BASIS CONSUMER CREDITOR CLAIMS) WITH RESPECT TO CLAIM OF SONIA LOWE

**A P P E A R A N C E S :**

WEIL, GOTSHAL & MANGES LLP
*Attorneys for the Plan Administrator*
767 Fifth Avenue
New York, New York 10153
<u>By:</u>   Ray C. Schrock, P.C.
       Richard W. Slack, Esq.
       Sunny Singh, Esq.


JENNER & BLOCK LLP
*Attorneys for the Consumer Claims Representative*
919 Third Avenue
New York, NY 10022
<u>By:</u>   Richard Levin, Esq.


Ms. Sonia Lowe²
*Appearing Pro Se*
7155 West 2nd Way
Hialeah, FL 33014

---

¹ The confirmation of the Debtors' Third Amended Plan (as defined below) created the Wind Down Estates. The Wind Down Estates, along with the last four digits of their federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

² Ms. Lowe, acting pro se, filed written opposition to the Estate Representatives' objection to her claim. She did not appear at the Sufficiency Hearing conducted on her claim by this Court.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## Introduction[3]

Sonia Lowe (the "Claimant") filed Proof of Claim No. 24611 (the "Claim") against Reverse Mortgage Solutions, Inc. ("RMS") in these Chapter 11 Cases.[4] As explained below, the Claim is based on "Contract/Executory Contract" and is filed in the sum of $120,658.00, of which $58,000.00 is secured and $62,658.00 is unsecured. In support of the Claim, the Claimant contends that RMS failed to pay a line of credit and charged $4,658.98 in service fees.

In their Fourteenth Omnibus Claims Objection (the "Objection"),[5] the Plan Administrator and the Consumer Claims Representative (collectively, the "Estate Representatives") seek to disallow and expunge the Claim. The Claimant, appearing pro se, responded to the Objection (the "Response").[6] The Estate Representatives submitted a joint reply to the Response (the "Reply").[7] The Estate Representatives contend, and the Claimant denies, that the Court should disallow and expunge the Claim because it fails to state a claim for relief against RMS. Pursuant

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Fourteenth Omnibus Claims Objection and the Third Amended Plan, as applicable. References herein to "ECF No. __" are to documents filed in the electronic docket in these jointly administered cases under Case No. 19-10412 (the "Chapter 11 Cases").

[4] *See* Proof of Claim No. 24611.

[5] *See Fourteenth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims)* [ECF No. 1746].

[6] *See Subject: Objecting to the Disallowance and Expungement of my Claim Concerning Ditech Holding Corporation* [ECF No. 2037].

[7] *See Joint Reply of Plan Administrator and Consumer Representative in Support of the Fourteenth Omnibus Objection with Respect to Claim of Sonia A. Lowe (Claim No. 24611)* [ECF No. 3702]. The Reply annexes exhibits consisting of documents referenced in the Claimant's pleadings; the Claimant's allegations in support of the Claim are based on these documents. The Court takes judicial notice of those documents. *See Ng v. HSBC Mortg. Corp.*, No. 07-CV-5434 RRM/VVP, 2010 WL 889256, at *9 n. 13 (E.D.N.Y. Mar.10 2010) (in mortgage dispute, taking judicial notice of settlement statements)"); *Leon v. Shmukler*, 992 F. Supp. 2d 179, 184 (E.D.N.Y. 2014) ("It is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records").

to the Claims Procedures Order,[8] the Court conducted a Sufficiency Hearing on the Claim. The Estate Representatives participated at the hearing and were heard in support of their positions. The Claimant did not appear at the hearing.[9] The legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[10] *See* Claims Procedures Order ¶ 3(iv)(a).

As explained below, the Claim is disallowed and expunged because accepting all factual allegations asserted by the pro se Claimant in support of the Claim as true, drawing all reasonable inferences in the Claimant's favor, and interpreting the Claim and the Claimant's Response to the Objection to raise the strongest arguments that they suggest, the Claim fails to state a plausible claim for relief against RMS. Accordingly, the Court sustains the Objection and disallows and expunges the Claim.

## Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[8] *See Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures* [ECF No. 1632] (the "Claims Procedures Order").

[9] The telephonic hearing was originally scheduled for September 30, 2021 at 11 a.m. (ET). Claimant did not appear at the hearing, nor did she register to attend the hearing. The Court adjourned the hearing to October 26, 2021 at 11 a.m. (ET). At the Court's instruction, counsel for the Plan Administrator provided written notice of the adjournment to the Claimant and the dial-in procedures for attending the adjourned hearing. The Claimant did not respond to the Plan Administrator and as noted, did not appear at the October hearing.

[10] Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

On or about October 12, 2004, Claimant executed a mortgage (the "New Century Mortgage") in favor of New Century Mortgage Corporation ("New Century") on certain real property located at 7155 West 2nd Way, Hialeah, FL 33014 (the "Property") to secure a thirty-year $58,000.00 loan (the "Loan") from New Century. *See* Claim at 1, 7-29, 35.[11] On March 7, 2007, Claimant entered into a balloon mortgage with Berta M. Sanders to secure a promissory note with the final principal payment due at maturity of $111,031.25 (the "Balloon Mortgage"). *See* First Mortgage and Security Agreement dated March 7, 2007 and recorded March 13, 2007.[12] Apparently, the purpose of the loan, in part, was to pay off the New Century Mortgage. On April 8, 2007, New Century released the New Century Mortgage because it received full payment of the Loan. *See* Florida Full Satisfaction & Release of Collateral recorded with the Clerk of Court for Miami-Dade County, Florida.[13] On April 10, 2008, Claimant entered into a Home Equity Conversion Loan Agreement (the "Reverse Mortgage Agreement") with World Alliance Financial Corp.–not with RMS. *See* Reverse Mortgage Agreement at 1.[14] The Reverse Mortgage Agreement provides advances for a principal limit of $161,520.00. *Id.* Ex. 1, Payment Plan. The disbursements made at closing on the Reverse Mortgage Agreement were: (i) closing costs of $15,167.18, (ii) discharge of liens of $113,293.49, (iii) loan advance of $7,000, and (iv) servicing fee set aside of $5,408.63, leaving a line of credit of $20,650.70. *Id.*

---

[11]    References herein to particular pages of the Claim and Response are cited to the particular PDF page of the Claim and Response.

[12]    A copy of the First Mortgage and Security Agreement is annexed as Exhibit A to the Reply.

[13]    A copy of the Florida Full Satisfaction & Release of Collateral is annexed as Exhibit B to the Reply.

[14]    A copy of the Home Equity Conversion Loan Agreement is annexed as Exhibit C to the Reply.

Contemporaneously with the Reverse Mortgage Agreement, the Claimant executed an Adjustable Rate Note (the "Note") and an Adjustable Rate Home Equity Conversion Mortgage (the "Mortgage").[15] Under the terms of the Note, interest accrues monthly on the principal balance of the Reverse Mortgage Agreement, and the accrued interest is then added to the loan balance. *See* Reverse Mortgage Agreement ¶ 2.12.2. In connection with the Reverse Mortgage Agreement, Claimant executed a *U.S. Department of Housing and Urban Development Settlement Statement* (the "HUD Settlement Statement") that shows among other things, that the proceeds of the Reverse Mortgage Agreement were used to pay the $113,293.49 Balloon Mortgage owed to Berta M. Sanders. *See* HUD Settlement Statement at 1.[16] RMS is not a party to the Reverse Mortgage Agreement. However, since the origination of that agreement, RMS has acted as servicer of the mortgage.[17] *See* Claim at 30-39.

**The Chapter 11 Cases**

On February 11, 2019 (the "Petition Date"), Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates ("Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors remained in possession and control of their business and assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019 at 5:00 p.m. (prevailing Eastern Time) as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a

---

[15] A copy of the Adjustable Rate Home Equity Conversion Mortgage is annexed as Exhibit D to the Reply.

[16] A copy of the HUD Settlement Statement is annexed as Exhibit E to the Reply.

[17] Under the Plan, Reorganized RMS is the successor to RMS, and is now servicing Claimant's reverse mortgage loan.

proof of claim in the Debtors' Chapter 11 Cases (the "General Bar Date").[18] Thereafter, the Court extended the General Bar Date for consumer borrowers, twice, and ultimately to June 3, 2019 at 5:00 p.m. (prevailing Eastern Time).[19]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, and on September 30, 2019, that plan became effective.[20] The Plan Administrator is a fiduciary appointed under the Third Amended Plan who is charged with the duty of winding down, dissolving and liquidating the Wind Down Estates. *See* Third Amended Plan, Art. I, ¶¶ 1.130, 1.184, 1.186. The Consumer Claims Representative is a fiduciary appointed under the Third Amended Plan who is responsible for the reconciliation and resolution of Consumer Creditor Claims and distribution of funds to holders of Allowed Consumer Creditor Claims in accordance with the Third Amended Plan. *Id.*, Art. I, ¶ 1.41. Under the plan, the Plan Administrator, on behalf of each of the Wind Down Estates, is authorized to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims; and the Consumer Claims Representative has the exclusive authority to object to all Consumer Creditor Claims. *See id.*, Art. VII, ¶ 7.1.

**The Proof of Claim**

On November 8, 2019, Claimant filed the Claim. Claimant asserts a Claim in the sum of $120,658.00, of which $58,000.00 is secured and $62,658.00 is unsecured. Claim at 2, 5. The

---

[18] *See Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [ECF No. 90].

[19] *See Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc* [ECF No. 496].

[20] *See Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors* [ECF No. 1326] (the "Third Amended Plan"); *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors* [ECF No. 1404]. *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims* [ECF No. 1449].

basis of the Claim is "Contract/ Executory Contract" (*id.*) and, specifically, "RMS failed to pay my line of credit & charge $4,658.98 servic [sic] Fee." *Id.* at 5. In support of the Claim, Claimant attaches various mortgage and closing documents relating to the New Century Mortgage (*id.* at 7-29) and correspondence from RMS regarding servicing of the Reverse Mortgage Agreement pre and post confirmation of the Third Amended Plan. *Id.* at 30-39. In her Response, Claimant asserts, without alleging facts, that "Ditech Holding Corporation was responsible for my line of credit, for an amount evaluated to be $ 62,658.98. The claim should not be disallowed, expunged, reduced or reclassified for this reason: Ditech Holding Corporation did not fulfilled [sic] its commitment to me concerning the line of credit." *See* Response at 1.

**Claims Procedures Order**

On November 19, 2019, the Court entered the Claims Procedures Order. Under that order, the Estate Representatives are authorized to file Omnibus Objections seeking reduction, reclassification, or disallowance of Claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order. *See* Claims Procedures Order ¶ 2(i)(a)-(h). A properly filed and served response to an Objection gives rise to a "Contested Claim" that will be resolved at a Claim Hearing. *Id.* ¶ 3(iv). The Estate Representatives have the option of scheduling the Claim Hearing as either a "Merits Hearing" or a "Sufficiency Hearing." *Id.* ¶ 3(iv)(a),(b). A "Merits Hearing" is an evidentiary hearing on the merits of a Contested Claim. A "Sufficiency Hearing" is a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. The legal standard of review that will be applied by the Court at a Sufficiency Hearing is equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim upon which relief can be granted. *Id.* ¶ 3(iv)(a).

**The Objection**

In their Objection, the Estate Representatives contend that the Court should disallow and expunge the Claim because it fails to state a cognizable claim against RMS or any of the Debtors. Reply ¶¶ 18-25. Alternatively, they assert that at a minimum, the Court should reclassify the secured claim to an unsecured Consumer Creditor Claim, subject to further determination of its status as a section 363(o) or non-section 363(o) claim. *Id.* ¶¶ 26-30.

## **Applicable Legal Standards**

Under section 502(a) of the Bankruptcy Code, "a claim ... proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). The filing of a proof of claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bank. P. 3001(f). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See, e.g., Rozier v. Rescap Borrower Claims Tr. (In re Residential Capital, LLC)*, 15 Civ. 3248 (KPF), 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 09-50026, 2012 WL 1886755, at *3 (S.D.N.Y. May 12, 2012); *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd sub nom. Peter J. Solomon Co., L.P. v. Oneida, Ltd.*, No. 09-cv-2229, 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010). Section 502(b) sets forth the grounds for disallowing a properly filed proof of claim. *See* 11 U.S.C. § 502(b); *see also Travelers Cas. and Sur. Co. of Am. v. Pacific Gas and Elec. Co.*, 549 U.S. 443, 449 (2007) ("But even where a party in interest objects [to a claim], the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b)").

In filing the Objection to the Claim, the Estate Representatives initiated a contested matter. *See* Fed. R. Bankr. P. 3007 advisory committee's note ("[t]he contested matter initiated

8

by an objection to a claim is governed by Rule 9014. . .").  *See also In re Tender Loving Care Health Servs., Inc.*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter").  Bankruptcy Rule 9014 governs contested matters. The rule does not explicitly provide for the application of Bankruptcy Rule 7012.  However, Bankruptcy Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply." Fed. R. Bankr. P. 9014. The Court did so here. Under the Claims Procedures Order, the legal standard of review the Court applies at a Sufficiency Hearing is equivalent to the standard applied by the Court under Rule 12(b)(6) on a motion to dismiss for failure to state a claim upon which relief could be granted. *See* Claims Procedure Order ¶ 3(iv)(a).  *See also In re 20/20 Sport, Inc.*, 200 B.R. 972, 978 (Bankr. S.D.N.Y. 1996) ("In bankruptcy cases, courts have traditionally analogized a creditor's claim to a civil complaint [and] a trustee's objection to an answer. . . ").

In applying Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the Claim in light of the pleading requirements under Rule 8(a) of the Federal Rules of Civil Procedure.[21] Rule 8(a)(2) states that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). To meet that standard, the Claim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("*Iqbal*") (citations omitted); *accord Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) ("*Twombly*"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 570. To satisfy Rule

---

[21]  Rule 8 is incorporated herein pursuant to Bankruptcy Rule 7008.

12(b)(6), the "pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted). In considering whether that standard is met for a particular claim, the court must assume the truth of all material facts alleged in support of the claim and draw all reasonable inferences in the claimant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, the court "need not accord 'legal conclusions, deductions or opinions that are couched as factual allegations . . . a presumption of truthfulness.'" *Hunt v. Enzo Biochem, Inc.*, 530 F.Supp.2d 580, 591 (S.D.N.Y. 2008) (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)). In short, "[i]n ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (citation and internal quotation marks omitted). Where, as here, the Claimant is proceeding pro se, the Court will liberally construe the Claim. Nonetheless, the Claim must be supported by specific and detailed factual allegations that provide a fair understanding for the basis of the Claim and the legal grounds for recovery against RMS. *Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (citing *Iwachiw v. New York City Bd. of Elections*, 126 Fed. Appx. 27, 29 (2d Cir. 2005)).

## Discussion

Claimant does not assert a cognizable claim for relief against RMS. She argues that she is entitled to recover damages from RMS because RMS failed to pay her line of credit in the amount of $62,658.98 and RMS improperly charged her $4,658.98 in service fees. *See* Claim at 2, 5; Response at 1. The documents provided by Claimant in support of her Claim do not substantiate her allegations.

The Claim for $4,658.98 in service fees is similarly unsupported by any facts. Moreover, it is directly contrary to the Reverse Mortgage Agreement and federal regulations related to reverse mortgages. The Reverse Mortgage Agreement authorizes RMS as servicer to set aside a servicing fee of $5,408.63. *See* Reverse Mortgage Agreement Ex. 1, Payment Plan. As such, in resolving the Objection, the Court is not bound by the Claimant's contentions that RMS improperly charged her the servicing fee. *See In re Livent, Inc. Noteholders Sec. Litig.,* 151 F. Supp. 2d 371, 405-406 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense. . . or that are contradicted. . . by documents upon which its pleadings rely, or by facts of which the court may take judicial notice."). Additionally, under federal regulations, reverse mortgage servicers are permitted to collect a fixed service charge payable from the servicing fee set aside. 24 C.F.R. § 206.207(b)(2) (providing that if certain conditions are met, the servicer is permitted to collect a fixed monthly charge for servicing the mortgage loan from the time of closing of the loan through the life of the mortgage loan). Nothing in the documents submitted with the Claim or the Response provides support for Claimant's assertion or indicates that RMS charged Claimant's account any other service fees. *See* Claim at 1-32; Response at 1-12.

Claimant asserts that $62,658.00 represents the unsecured portion of her Claim and is the amount necessary to cure any defaults as of the date of the petition. Claim at 2, 5. However, the documents provided by Claimant in support of her Claim, and the documents provided by the Estate Representatives, do not evidence a line of credit of $62,658.00. *See* Reverse Mortgage Agreement, Note and HUD Settlement Statement.

To the extent that the Claimant is referring to monies owed under the Balloon Mortgage, that mortgage was satisfied when World Alliance Financial Corp. made payment in full on April 10, 2008. *See* HUD Settlement Statement at 1. World Alliance Financial Corp. is not RMS. To

11

the extent the Claimant is referring to the line of credit that was part of the Reverse Mortgage Agreement, that line of credit at origination totaled $20,650.70 not $62,658.98. *See* Reverse Mortgage Agreement Ex. 1, Payment Plan (noting the "Principal Limit for Line of Credit" is $20,650.70). Moreover, RMS did not originate the Reverse Mortgage Agreement. As such, it could not have been responsible for a failure to pay off a line of credit with proceeds from the Reverse Mortgage Agreement when the reverse mortgage was originated. Claimant has not explained or provided any detail as to how RMS "did not fulfill[] its commitment . . . concerning the line of credit." *See* Response at 1. The record is devoid of any evidence that RMS was required to pay off any line of credit for Claimant. *See ESI, Inc. v. Coastal Power Prod. Co.*, 13 F. Supp. 2d 496, 497 (S.D.N.Y. 1998) ("[i]f the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint.") (citations omitted). *See also Hammer v. Supreme Ct. of U.S.*, No. 05 CIV. 4137 (RJH), 2005 WL 1946038, at *1 (S.D.N.Y. Aug. 11, 2005) (noting that "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory" under Rule 12(b)(6)); *In re XO Commc'ns, Inc.*, 330 B.R. 394, 418 (Bankr. S.D.N.Y. 2005) (stating that "to withstand a motion to dismiss, the 'claims must be supported by specific and detailed factual allegations'").

      Finally, the statute of limitations for breach of contract and tort claims arising under state or federal law has long since expired. In Florida, breach of contract claims, and tort claims are subject to a five and four year statute of limitations, respectively. *See* Fla. Stat. Ann. § 95.11(2)-(3) (West 2018). Causes of action, such as those arising under federal statute such as the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, or the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, have even shorter statute of limitations periods. TILA requires that actions arising under this statute be brought "within one year from the date of the

occurrence of the violation." 15 U.S.C. § 1640(e). RESPA actions are required to be brought within three years for claims arising from servicing of the mortgage loan or one year from the date of the occurrence of the violation for claims relating to title insurance or "kickbacks" related to the mortgage loan. 12 U.S.C. § 2614. The alleged failure to pay off the line of credit occurred in 2008 when Claimant entered into the Reverse Mortgage Agreement and RMS began servicing the mortgage loan. Therefore, the latest the Claim could have expired is 2013, which is six years before the Petition Date. Therefore, the Claim is time barred and is expunged on this basis alone. *See Holland v. Chase Bank USA, N.A.,* 475 F. Supp. 3d 272 (S.D.N.Y. 2020) (holding that the claim under the Fair Credit Reporting Act had been extinguished due to running of limitations period); *Dins v. Bank of Am., N.A.*, No. 16-CV-5741 (KBF), 2017 WL 570944, at *3 (S.D.N.Y. Feb. 13, 2017) (ruling, among other things, that construing the pleading liberally, the plaintiff brought this lawsuit far outside TILA's one-year statute of limitations); *Feliciano v. U.S. Bank Nat. Ass'n*, No. 13-CV-5555 KBF, 2014 WL 2945798, at *5 (S.D.N.Y. June 27, 2014) (finding that the claims asserted under RESPA was untimely by more than a year and therefore fails as a matter of law).

The facts relevant to the Claim are analogous to those previously considered by this Court in connection with the claim of Victor Khoury. Mr. Khoury alleged that he was tricked by an unnamed gentleman into entering into a reverse mortgage in 2010 and later serviced by RMS. *See* June 24, 2021 Omnibus Hr'g. Tr. at 48:20-25, 50:3-9.[22] In expunging Mr. Khoury's claim, the Court noted that RMS "really has nothing to do" with the origination of the reverse mortgage and that the claim was really that "you never should have taken out the reverse mortgage and you were pressured into doing it unfairly by a predatory lender." *Id.* at 53:23-54:6. The Court also

---

22   A copy of the transcript is annexed as Exhibit F to the Reply.

expunged Mr. Khoury's claim on the grounds that the statute of limitations had passed on any potential claim against RMS. *Id.* at 58:18- 21 ("And so because you've not alleged facts that support a claim and the only claims you would have would be barred by the running of time, right, I'm going to be sustaining the objection."). Here, the claims of alleged wrongdoing arise from the execution of the Reverse Mortgage Agreement and the plain terms of the Note. Moreover, as with Mr. Khoury's claim, any applicable statute of limitations long expired before the Chapter 11 Cases were filed.

## Conclusion

Based on the foregoing, the Court sustains the Objection and disallows and expunges the Claim.[23]

IT IS SO ORDERED.

Dated: New York, New York
       October 26, 2021

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge

---

[23] In so ruling the Court does not consider the Estate Representatives' alternative arguments in support of the Objection.