**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**NOT FOR PUBLICATION**

-------------------------------------------------------- x

In re:                                                          :       Case No. 19-10412 (JLG)

                                                                :       Chapter 11

Ditech Holding Corporation, *et al.*,                          :

                                                                :       (Jointly Administered)

                                        Debtors.[1]             :

-------------------------------------------------------- x

### MEMORANDUM DECISION AND ORDER SUSTAINING THE THIRTY-SECOND OMNIBUS OBJECTION WITH RESPECT TO THE CLAIM OF CYNTHIA SETTLES (CLAIM NO. 511)

**A P P E A R A N C E S :**

WEIL, GOTSHAL & MANGES LLP
*Attorneys for the Plan Administrator*
767 Fifth Avenue
New York, New York 10153
By:    Ray C. Schrock, P.C.
         Richard W. Slack, Esq.
         Sunny Singh, Esq.


JENNER & BLOCK LLP
*Attorneys for the Consumer Claims Representative*
919 Third Avenue
New York, NY 10022
By:    Richard Levin, Esq.


Ms. Cynthia Settles
*Appearing Pro Se*
37 Ossman Court
Garnerville, N.Y. 10923

---

[1]    The confirmation of the Debtors' Third Amended Plan (as defined below) created the Wind Down Estates. The Wind Down Estates, along with the last four digits of their federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## Introduction[2]

Cynthia Settles (the "Claimant") filed Proof of Claim No. 511 (the "Claim") against

Ditech Financial LLC ("Ditech") in these Chapter 11 Cases. The Claim recites that it is a secured

claim in an unspecified amount based upon the claims she is asserting in *Settles v. OneWest*

*Bank, F.S.B., et al.,* Index No. SU-2015-001317 (the "State Court Action"), an action that is

pending in the New York State Supreme Court, Rockland County (the "State Court").  As

support for the Claim, the Claimant attached a copy of the complaint in the State Court Action

(the "Complaint").  The litigation relates to the Claimant's alleged rights in real property that she

acquired with the proceeds of a loan from IndyMac Bank, F.S.B. ("Indy Mac") secured by a

mortgage on the property. Ditech was not a party to the loan transaction. It appeared in the State

Court Action as the successor-in-interest to certain of the defendants named in the Complaint.

In their Thirty-Second Omnibus Claims Objection (the "Objection"),[3] the Plan

Administrator and the Consumer Claims Representative (collectively, the "Estate

Representatives") seek to disallow and expunge the Claim. The Claimant, acting pro se,

responded to the Objection (the "Response")[4] and the Estate Representatives submitted a joint

reply to the Response (the Reply").[5]  The Estate Representatives contend that the Court should

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Thirty-Second Omnibus Claims Objection and the Third Amended Plan, as applicable. References to "ECF No. __" are to documents filed in the electronic docket in these jointly administered cases under Case No. 19-10412 (the "Chapter 11 Cases").

[3]    *See Thirty-Second Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Litigation Claims)* [ECF No. 1764].

[4]    *See Response of Cynthia Settles to Debtor' [sic] Thirty-Second Omnibus Objection to Proof of Claims (No Basis Consumer Creditor Litigation Claims)* [ECF No. 1833].

[5]    *See Joint Reply of Consumer Representative and Plan Administrator in Support of the Thirty-Second Omnibus Objection with Respect to Claim of Cynthia Settles (Claim No. 511)* [ECF No. 3767].

expunge the Claim because, for a host of reasons, it fails to state a claim for relief against Ditech. Pursuant to the Claims Procedures Order,[6] the Court conducted a Sufficiency Hearing on the Claim. At the hearing, the Estate Representatives were represented by counsel, and the Claimant appeared pro se. The legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[7] *See* Claims Procedures Order ¶ 3(iv)(a).

Under Rule 12(b)(6), it is appropriate to dismiss a claim on *res judicata* and/or collateral estoppel grounds when the elements of those affirmative defenses are apparent on the face of the claim. As explained below, that is the case here. For that reason, the Court sustains the Objection and disallows and expunges the Claim.

## Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[6]    *See Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures* [ECF No. 1632].

[7]    Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Background[8]

On May 12, 2003, Claimant executed a promissory note in the sum of $196,000.00 in

favor of Indy Mac secured by a mortgage on the real property located at 37 Ossman Court,

Garnerville, New York (the "Property"). *See* Response at 101.  On May 27, 2003, the mortgage

was recorded in the Rockland County Clerk's Office. *Id.* at 187.  Mortgage Electronic

Registration Systems Inc. ("MERS") is named as nominee for IndyMac, as the beneficiary. *Id.*

On June 11, 2007, Claimant executed a Consolidation, Extension and Modification Agreement,

which modified the unpaid principal balance under the note to $239,000.00. *Id.* at 187.  Claimant

defaulted on her payments under the terms of the mortgage. *Id.*  On July 19, 2010, One West

Bank, FSB ("One West") commenced a foreclosure action (Index No. 7992/2010) (the

"Foreclosure Action") against the Property in the State Court. *Id.*  The State Court granted One

West's motion for leave to enter a default judgment against Claimant, and entered an *Order Of

Reference In Foreclosure*, appointing a referee to compute the amount due to One West on the

---

[8]    As discussed below, in applying Rule 12(b)(6) to the Claim, the Court tests the legal sufficiency of the Claim.
Accordingly, in resolving the Objection, the Court assumes the truth of the well plead facts in support of the Claim.
*See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("In
any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make
findings of fact."). The Claimant annexed a copy of the Complaint to both her Claim and Response to the Objection.
She attached additional documents relating to the litigation in the State Court to the Response.  The Estate
Representatives likewise annexed documents relevant to the State Court Action to their Reply.

    In resolving a Rule 12(b)(6) motion, the Court "may take notice of proceedings in other courts, both within and
without the federal judicial system, if those proceedings have a direct relation to matters at issue."  *St. Louis Baptist
Temple, Inc. v. FDIC,* 605 F.2d 1169, 1172 (10th Cir.1979); *Kasey v. Molybdenum Corp. of America*, 336 F.2d 560,
563 (9th Cir. 1964) (where parties had history of litigation in state court, court took "judicial notice of . . . officially
reported decisions and refers to them for a better understanding of the complicated factual situation here existing.");
*Wingate v. Gives*, 05 Civ. 1872 (LAK), 2016 WL 519634, at *1 (S.D.N.Y. Feb. 5, 2016) (court took judicial notice
of facts in reported state court decisions); *Church of Scientology Int'l v. Time Warner, Inc.,* 806 F.Supp. 1157, 1159
n.2 (S.D.N.Y.1992) (court took judicial notice of reported decisions dealing with Scientology organizations). *See
also Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (stating that on a motion
to dismiss for failure to state a claim a court may consider materials extrinsic to the pleadings, if the materials are
integral to the complaint or matters subject to judicial notice). The matters at issue in the Claim necessarily mirror
those at issue in the State Court Action. The documents cited and submitted by the Claimant and Estate
Representatives are integral to that litigation and the Claim. Subject to the standards applicable to Rule 12(b)(6)
motions, the Court takes judicial notice of those documents.  In citing to those documents, the Court will cite to the
PDF page number of the particular document.

note and mortgage and to determine whether the Property could be sold in parcels. *Id.*[9] On

August 2, 2013, Claimant filed a *Motion to Vacate Plaintiff's Order of Reference and Default

Judgment*. *Id.* at 187-188. On October 11, 2013, the State Court denied the motion. *Id.* at 188.

On October 17, 2013, over Claimant's objection, the State Court entered a *Judgment of

Foreclosure and Sale*. *Id.*[10] The Claimant moved by Order to Show Cause, pursuant to N.Y.

C.P.L.R. 5015(a)(1) and/or (a)(3) to vacate the *Judgment of Foreclosure and Sale*. On January

23, 2014, the State Court issued an *Order* denying the motion. *Id.* at 188.[11] On October 24,

2014, the Property was sold and the winning bid was assigned to Federal Home Loan Mortgage

Corporation ("Freddie Mac"). *Id.* Thereafter, the referee's deed in foreclosure (the "Referee's

Deed") was recorded in the Rockland County Clerk's Office. *Id.*

Claimant contends that, notwithstanding the sale of the Property in October 2014, she

rescinded the loan and mortgage on the Property effective March 17, 2015, by giving proper

notice under the Truth in Lending Act ("TILA") in a letter to One West. *Id.* at 14. On July 29,

2015, Claimant commenced the State Court Action against One West, MersCorp Holdings Inc.,

MERS, Freddie Mac, Sara Z. Boriskin, Esq., RAS Boriskin LLC (with Sara Boriskin,

"Boriskin") and others. *Id.* at 25-27. The Complaint[12] includes the following nine causes of

action: (Count 1) Quiet Title (RPAPL Article 15), (Count 2) CPLR Article 30, (Count 3) Fraud,

(Count 4) Fraudulent Conveyance, (Count 5) Nullification and Cancellation of Referee's Deed,

the Mortgage From the Public Record, as Each are of No Effect, and Have Clouded Plaintiff's

---

[9]    A copy of the *Order Of Reference In Foreclosure* is annexed as Exhibit B to the Reply.

[10]   A copy of the *Judgment of Foreclosure and Sale* is annexed as Exhibit C to the Reply.

[11]   A copy of the *Order* is annexed as Exhibit D to the Reply.

[12]   A copy of the Complaint is annexed to the Claim at 5-46, and to the Response at 23-65. In citing to the
Complaint, the Court will cite to the Response.

Title, (Count 6) Slander of Title, (Count 7) Aiding and Abetting, (Count 8) Intentional Infliction

of Emotional Distress, and (Count 9) Rescissory Damages. *Id.* at 45-63.

One West and Freddie Mac requested an extension of time to respond to the Complaint.

The Claimant rejected the request.  One West and Freddie Mac filed an Answer to the Complaint

approximately two months after the time to do so expired. *See id.* at 112-148, 190.  On

November 5, 2015, the Claimant filed a motion for default judgment against them.  At or about

the same time, Boriskin filed a motion to dismiss the Complaint. *See id.* at 188.  Ditech, in its

capacity as successor-in-interest to One West and Freddie Mac moved by Order to Show Cause

for an order denying the Claimant's motion for a default judgment against One West and Freddie

Mac and compelling the Claimant to accept One West's and Freddie Mac's late-served Answer.

*Id.* at 179-198. On February 2, 2017, the State Court issued its *Decision and Order*[13] in which it:

(i) granted the motion to dismiss Boriskin from the Complaint, (ii) denied the Claimant's motion

for default judgments against One West and Freddie Mac, (iii) granted Ditech's motion to vacate

the default judgments against One West and Freddie Mac, and (iv) directed Claimant to accept

the late-served Answer of One West and Freddie Mac. *Id.* at 15-16.  In dismissing Boriskin from

the Complaint, the State Court found that the Claimant failed to state a claim for rescission of the

loan and mortgage under TILA because the Claimant had failed to demonstrate that she could

tender the principal of the loan. *Id.* at 15.[14]  In granting Ditech's motion to vacate One West's

and Freddie Mac's defaults, the State Court held, among other things, that Ditech had stated

reasonable excuses for their defaults and two potential defenses to the underlying claims: (a) the

---

[13]    A copy of the *Decision and Order* is annexed to the Response at 13-17.

[14]    The State Court noted that "in order to state a cause of action for recission of a loan and mortgage under TILA,
a mortgagee must assert both the mortgagor's alleged TILA disclosure violation and that he or she can tender to the
mortgagor the principal of the loan." Response at 15 (quoting *Cervini v Zanoni,* 95 A.D.3d. 919, 921 (2d Dept
2012)).

claims asserted in the Complaint were already litigated in the Foreclosure Action and thus barred

under the doctrine of *res judicata* and collateral estoppel, and (b) the claims fail on the merits.

As to the latter, the State Court reasoned that its determination that the Claimant failed to state a

cause of action for rescission of the loan and mortgage was dispositive of the merits of the

balance of the claims at issue in the State Court Action, because each such claim was premised

on the alleged fact that Claimant had properly rescinded the loan and mortgage. *Id.* at 16. On

March 15, 2017, the Claimant filed an interlocutory appeal of the *Decision and Order* with the

Appellate Division of the Supreme Court of the State of New York, Second Judicial Department

(the "Appellate Division"). *Id.* at 12. On December 4, 2018, the Appellate Division affirmed the

decision. *See Appellate Division Decision and Order*.[15]  There has been no additional activity in

the State Court Action.

**The Chapter 11 Cases**

On February 11, 2019, Ditech Holding Corporation (f/k/a Walter Investment

Management Corp.) and certain of its affiliates ("Debtors") filed petitions for relief under chapter

11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.  The Debtors

remained in possession of their business and assets as debtors and debtors in possession pursuant

to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered

an order fixing April 1, 2019 at 5:00 p.m. (prevailing Eastern Time) as the deadline for each

person or entity, not including governmental units (as defined in section 101(27) of the

Bankruptcy Code) to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[16]

---

[15]    A copy of the *Appellate Division Decision and Order* is annexed as Exhibit A to the Reply.

[16]    *See Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [ECF No. 90].

Thereafter, the Court extended the General Bar Date for consumer borrowers, twice, and ultimately to June 3, 2019 at 5:00 p.m. (prevailing Eastern Time).[17]

On September 26, 2019, the Debtors confirmed their Third Amended Plan,[18] and on September 30, 2019, that plan became effective.[19] The Plan Administrator is a fiduciary appointed under the Third Amended Plan who is charged with the duty of winding down, dissolving and liquidating the Wind Down Estates. *See* Third Amended Plan ¶¶ 1.130, 1.184, 1.186. The Consumer Claims Representative is a fiduciary appointed under the Third Amended Plan who is responsible for the reconciliation and resolution of Consumer Creditor Claims and distribution of funds to holders of Allowed Consumer Creditor Claims in accordance with the Third Amended Plan. *Id.* ¶ 1.41. Under the plan, the Plan Administrator, on behalf of each of the Wind Down Estates, is authorized to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims; and the Consumer Claims Representative has the exclusive authority to object to all Consumer Creditor Claims. *See id*. ¶ 7.1.

**The Proof of Claim**

On March 21, 2018, Claimant timely filed the Claim against Ditech, as a secured claim in an undetermined amount. She states that the basis of her claim is the State Court Action. *See* Claim at 2. She annexed a copy of the Complaint to the Claim.

---

[17]   *See Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc* [ECF No. 496].

[18]   *See Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors* [ECF No. 1326] (the "Third Amended Plan"); *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors* [ECF No. 1404].

[19]   *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims* [ECF No. 1449].

**Claims Procedures Order**

Under the Claims Procedures Order, the Estate Representatives are authorized to file Omnibus Objections seeking reduction, reclassification, or disallowance of Claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order. *See* Claims Procedures Order ¶ 2(i)(a)-(h). A properly filed and served response to an Objection gives rise to a "Contested Claim" that will be resolved at a Claim Hearing. *Id.* ¶ 3(iv). The Estate Representatives have the option of scheduling the Claim Hearing as either a "Merits Hearing" or a "Sufficiency Hearing." *Id.* ¶ 3(iv)(a),(b). A "Merits Hearing" is an evidentiary hearing on the merits of a Contested Claim. A "Sufficiency Hearing" is a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. The legal standard of review that will be applied by the Court at a Sufficiency Hearing is equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim upon which relief can be granted. *Id.* ¶ 3(iv)(a).

**The Objection**

The Estate Representatives challenge the sufficiency of the Claim. They contend that it fails to state a claim for relief against Ditech, and that by application of Rule 12(b)(6), the Court must disallow and expunge the Claim. They maintain that to the extent Claimant relies on her Complaint as the basis for relief herein, she is barred from doing so by application of the principles of collateral estoppel and *res judicata.* Reply ¶¶ 12-14. Alternatively, they contend that the causes of action in the Complaint fail on the merits (Counts 6, 8 and 9), fail to meet the heightened pleading standards (Counts 3, 4 and 7) or fail to request recovery that is available through the claims process (Counts 1, 2 and 5). *Id.* ¶¶ 15-33. Finally, they contend, in any event,

that the Claim should be reclassified from a secured claim to a Consumer Creditor Claim, which

would limit the amount of recovery on the Claim. *Id.* ¶¶ 34-37.

<u>**Applicable Legal Standards**</u>

Under section 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed under

section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. §

502(a). The filing of a proof of claim constitutes "prima facie evidence of the validity and

amount of a claim." Fed. R. Bank. P. 3001(f). If an objection refuting at least one of the claim's

essential allegations is asserted, the claimant has the burden to demonstrate the validity of the

claim. *See, e.g., Rozier v. Rescap Borrower Claims Tr. (In re Residential Capital, LLC)*, 15 Civ.

3248(KPF), 2016 WL 796860, at \*9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation

Co. (In re Motors Liquidation Co.)*, No. 09-50026, 2012 WL 1886755, at \*3 (S.D.N.Y. May 12,

2012); *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd sub nom. Peter J.

Solomon Co., L.P. v. Oneida, Ltd.*, No. 09-cv-2229, 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010).

Section 502(b) sets forth the grounds for disallowing a properly filed proof of claim. *See* 11

U.S.C. § 502(b); *see also Travelers Cas. and Sur. Co. of Am. v. Pacific Gas and Elec. Co.*, 549

U.S. 443, 449 (2007) ("But even where a party in interest objects [to a claim], the court 'shall

allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions

enumerated in § 502(b)").

In filing the Objection to the Claim, the Estate Representatives initiated a contested

matter.  *See* Fed. R. Bankr. P. 3007 advisory committee's note ("[t]he contested matter initiated

by an objection to a claim is governed by Rule 9014 . . ."). *See also In re Tender Loving Care

Health Servs., Inc.*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an

objection to a claim, the objection has initiated a contested matter").  Bankruptcy Rule 9014

governs contested matters. The rule does not explicitly provide for the application of Bankruptcy

Rule 7012.  However, Bankruptcy Rule 9014 provides that a bankruptcy court "may at any stage

in a particular matter direct that one or more of the other Rules in Part VII shall apply." Fed. R.

Bankr. P. 9014. The Court did so here. Under the Claims Procedures Order, the legal standard of

review the Court applies at a Sufficiency Hearing is equivalent to the standard applied by the

Court under Rule 12(b)(6) on a motion to dismiss for failure to state a claim upon which relief

could be granted. *See* Claims Procedures Order ¶ 3(iv)(a).  *See also In re 20/20 Sport, Inc.*, 200

B.R. 972, 978 (Bankr. S.D.N.Y. 1996) ("In bankruptcy cases, courts have traditionally

analogized a creditor's claim to a civil complaint [and] a trustee's objection to an answer. . . ").

In applying Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts

alleged in support of the Claim in light of the pleading requirements under Rule 8(a) of the

Federal Rules of Civil Procedure.[20] Rule 8(a)(2) states that a claim for relief must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R.

Civ. P. 8(a)(2). To meet that standard, the Claim "must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S.

662, 678 (2009) ("*Iqbal*") (citations omitted); *accord Bell Atlantic Corp. v. Twombly,* 550 U.S.

544, 570 (2007) ("*Twombly*"). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 570. To satisfy Rule

12(b)(6), the "pleadings must create the possibility of a right to relief that is more than

speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008)

(citation omitted).  In considering whether that standard is met for a particular claim, the court

---

[20]    Rule 8 is incorporated herein pursuant to Bankruptcy Rule 7008.

must assume the truth of all material facts alleged in support of the claim and draw all reasonable

inferences in the claimant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98

(2d Cir. 2007). However, the court "need not accord 'legal conclusions, deductions or opinions

that are couched as factual allegations . . . a presumption of truthfulness.'" *Hunt v. Enzo

Biochem, Inc.*, 530 F.Supp.2d 580, 591 (S.D.N.Y. 2008) (quoting *In re NYSE Specialists Sec.

Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)).

## Discussion

In substance, the Claimant contends that her Claim is based upon the Complaint that she

filed pro se in the State Court Action. She attaches a copy of the Complaint to the Claim.

Submissions by pro se litigants, like the Claimant, should be held "to less stringent standards

than formal pleadings drafted by lawyers . . . ." *Hughes v. Rowe,* 449 U.S. 5, 9 (1980) (per

curiam) (quoting *Haines v. Kerner,* 404 U.S. 519, 520 (1972)). Accordingly, the Court will

construe the allegations underlying the Complaint (and thus, the Claim) liberally and interpret

them "to raise the strongest arguments that [they] suggest[]." *McPherson* v. *Coombe,* 174 F.3d

276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). In the

Complaint, the Claimant contends that the Property "is held by [Claimant] free and clear of any

claim to an estate, trust or other interests of Defendants." Response at 24. She says that "[i]t

appears from the public records" that the defendants in the State Court Action "may claim some

estate, right, title, lien or interest in or to the [P]roperty adverse to [Claimant's] title and interest,

and these claims constitute a cloud on [Claimant's] title to the property." *Id.* She "disputes the

title and ownership of the [P]roperty" and contends that "the Defendants fraudulently procured

[an] interest in [Claimant's] property, fraudulently conveyed said interest in the subject property

by filing false and fraudulent documents in the public record, and have unlawfully sold, assigned

and/or transferred the Property, to Defendant Freddie Mac, or others, who do not have lawful ownership or a security interest in [Claimant's] property which is described in detail herein." *Id.*

In making those allegations and asserting the nine claims for relief in the Complaint, the Claimant assumes that pursuant to TILA, she rescinded the loan and mortgage effective March 17, 2015.[21] She maintains that in the wake of the rescission of the loan and mortgage transaction under TILA, the "loan deal" was canceled and the "lender" or "creditor" was required to return the canceled note, file a satisfaction of mortgage, and disgorge all money paid starting with the alleged origination of the "loan" transaction and continuing through all monthly payments. Response at 29. She contends that the defendants failed to comply with TILA and focuses on the defendants' violations of their alleged obligations to restore Claimant's rights in the Property. She asserts that TILA requires the defendants to "return any money or property that has been given to anyone in connection with the transaction" and that their failure to perform this action as well as any other action to reflect the termination of the security interest is a clear violation of TILA. *Id.* at 62. She also contends that the Referee's Deed filed after the alleged rescission was without legal basis and was done vindictively to harm her in retaliation for the rescission. *Id.*

As the State Court noted in the *Decision and Order*, "Plaintiff's alleged rescission of the subject loan and mortgage is the essential factual underpinning" of the Complaint. Response at 16. In the Ninth Cause of Action, the Claimant demands either that the defendants deliver all funds paid to them or that they cancel the security interest on the Property. *Id.* at 63. However, by the time the Claimant allegedly rescinded the loan and mortgage on March 17, 2015, the

---

[21]    In part, in the Complaint, the Claimant asserts, as follows:

> Plaintiff further seeks enforcement of her rescission of the "transaction", described below, which became effective by operation of law on March 17, 2015 per 15 U.S.C. § 1635; Regulation Z § 226.23.

*See* Response at 25.

foreclosure judgment had been entered and the foreclosure sale had been concluded. Moreover,

as discussed above, in its *Decision and Order*, the State Court ruled that the Claimant failed to

state a claim for recission under TILA–a decision affirmed by the *Appellate Division Decision

and Order*.   As such, she errs in asserting that she rescinded the loan and mortgage, and, in any

event, she is estopped from obtaining any relief in this case on account of the Claim that stems

from the alleged rescission of the loan and mortgage under TILA.

 *Res judicata* and collateral estoppel are related but distinct doctrines that may bar a party

from litigating certain claims or issues in a subsequent proceeding. *Flaherty v. Lang,* 199 F.3d

607, 612 (2d Cir. 1999). "[I]t is well settled that a court may dismiss a claim on *res judicata* or

collateral estoppel grounds under a Rule 12(b)(6) motion." *Linden Airport Mgmt. Corp. v. New

York City Econ. Dev. Corp.*, No. 08 CIV. 3810 (RJS), 2011 WL 2226625, at *3 (S.D.N.Y. June

1, 2011) (internal quotation marks omitted) (quoting *Sassower v. Abrams,* 833 F. Supp. 253, 264

n.18 (S.D.N.Y. 1993)). "When a defendant raises *res judicata* or collateral estoppel as an

affirmative defense and 'it is clear from the face of the complaint, and consideration of matters

which the court may take judicial notice of, that the plaintiff's claims are barred as a matter of

law,' dismissal under Rule 12(b)(6) is appropriate." *Id.* (quoting *Conopco, Inc. v. Roll Int'l*, 231

F.3d 82, 86 (2d Cir. 2000)). A pro se claimant is "not exempt . . . from compliance with relevant

rules of procedural and substantive law . . . ." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d

Cir.1983) (internal quotations and citation omitted).   Accordingly, the doctrine of collateral

estoppel and *res judicata* are equally applicable to pro se claimants. *See, e.g., Iwachiw v. Gen.

Elec. Corp.,* No. 99–3668, 2000 WL 381977, at *3–4 (E.D.N.Y. Feb. 22, 2000) (applying *res

judicata* and collateral estoppel to bar the action by the pro se plaintiff who sought to litigate

matters in the federal forum that have already been litigated in arbitration); *Caldwell v. Pesce*, 83

F. Supp. 3d 472, 481 (S.D.N.Y. 2015) ("[T]he doctrines of *res judicata* and collateral

estoppel apply to *pro se* litigants." (citing *Austin v. Downs, Rachlin & Martin Burlington St.

Johnsbury*, 270 F. App'x 52 (2d Cir. 2008))).

Collateral estoppel is synonymous with "issue preclusion." "[U]nder collateral estoppel,

once a court has decided an issue of fact or law necessary to its judgment, that decision may

preclude relitigation of the issue in a suit on a different cause of action involving a party to the

first case." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (quoting *Allen v. McCurry*, 449

U.S. 90, 94 n.5 (1980)). *See also Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir.

2002) ("Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating

in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior

proceeding.").  Application of the doctrine does not require an identity of parties in the

proceedings. *Amadsau v. Bronx Lebanon Hosp. Ctr.*, No. 03 CIV.6450 LAK AJP, 2005 WL

121746, at *8 (S.D.N.Y. Jan. 21, 2005), *report and recommendation adopted sub nom. Amadasu

v. Rosenberg,* No. 03CIV.6450LAK, 2005 WL 954916 (S.D.N.Y. Apr. 26, 2005), *aff'd,* 225 F.

App'x 32 (2d Cir. 2007) ("[T]he doctrine of collateral estoppel does not require that the same

parties are named in the earlier action in order to apply to the instant action.").

"[T]he preclusive effect of a state court determination in a subsequent federal action is

determined by the rules of the state where the prior action occurred . . . ."  *New York v. Sokol (In

re Sokol)*, 113 F.3d 303, 306 (2d Cir. 1997) (citing 28 U.S.C. § 1738). *See also Migra v. Warren

City School Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984) ("a federal court must give to a state-court

judgment the same preclusive effect as would be given that judgment under the law of the State

in which the judgment was rendered."). In New York, for issue preclusion to apply, "(1) the

identical issue must have been necessarily decided in the prior action and must be decisive in the

present action, and (2) the party who is precluded from relitigating the issue must have had a full and fair opportunity to contest the matter in the prior action." *Strough v. Inc. Vill. of W. Hampton Dunes,* 78 A.D.3d. 1037, 1039 (2d Dept 2010). *See also Rojas v. Romanoff,* 186 A.D.3d. 103, 108 (1st Dept 2020) ("Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action . . . There is a limit to the reach of issue preclusion, however. In accordance with due process, it can be asserted only against a party to the first lawsuit, or one in privity with a party." (internal citations omitted)).

The goal of recission under TILA is to return the parties to the "status quo ante"*. See Am. Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 820 (4th Cir.2007) ("The equitable goal of rescission under TILA is to restore the parties to the 'status quo ante.'"); *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 421 (1st Cir.2007) ("Rescission [under TILA] essentially restores the status quo ante; the creditor terminates its security interest and returns any monies paid by the debtor in exchange for the latter's return of all disbursed funds or property interests.").  In the *Decision and Order*, the State Court held that "to state a cause of action for rescission of a loan and mortgage under TILA, a mortgagee must assert both the mortgagor's alleged TILA disclosure violation and that he or she can tender to the mortgagor the principal of the loan." *See* Response at 15 (citation omitted). Upon reviewing the supporting documentation in that case, which is the same supporting documentation that the Claimant references in support of her Claim, the State Court determined that while the Claimant outlined One West's alleged TILA disclosure violations, she failed to submit any evidence that she could tender the principal of the loan. *Id.* Therefore, the court held that she failed to state a cause of action for rescission of the mortgage under TILA. *Id.*

The Claimant is barred from asserting a loan rescission claim under TILA against Ditech because she is collaterally estopped from contending that she communicated her ability to repay the principal of the loan in her letter to One West. The Claimant was a party to the State Court Action and the Complaint forms the basis of her Claim. In the *Decision and Order*, the State Court granted Boriskin's motion to dismiss the Complaint for failure to state a valid legal claim, which is a final adjudication for purposes of preclusion. Response at 15. The issues in this and the State Court Action are identical because the Claim and State Court Action are based upon the same alleged violation of TILA performed by One West after the Claimant allegedly rescinded the loan and mortgage via the letter to One West, the mortgagee. The issue of whether the Claimant communicated the ability to repay the principal amount of the loan–a required element to state a cause of action under TILA for rescission of the loan–in her letter to the mortgagee is the same in both matters. The State Court dismissed the Complaint against Boriskin because the Claimant failed to state a claim for rescission of the loan and mortgage, since she failed to allege facts demonstrating that she communicated to One West that she had the ability to repay the principal amount of the loan. The issue of whether the Claimant communicated to One West that she could repay the loan was actually litigated in the State Court, and the resolution of that issue was necessary to the State Court's determination that the Claimant failed to state a valid legal claim against Boriskin. *Id.* Therefore, because all of the requirements are met, the doctrine of issue preclusion bars the Claimant from contending that she communicated the ability to repay the principal amount in her communication to the mortgagee. *See In re Residential Cap., LLC*, 501 B.R. 624, 638 (Bankr. S.D.N.Y. 2013) (expunging proof of claim as barred by application of collateral estoppel where the sole supporting documentation for the claim was the plaintiff/claimant's state court complaint that had been dismissed on the merits); *Romaka v. H&R*

17

*Block Mortg. Corp.,* No. 17-CV-7411(JS)(ARL), 2018 WL 4783979, at *6 (E.D.N.Y. Sept. 30,

2018) (holding that collateral estoppel precludes "[p]laintiff from re-litigating the rescission's

validity, whether characterized as a claim under TILA or the [Fair Debt Collection Practices

Act], or as a wrongful foreclosure claim," where "the identical issue . . . was litigated in the

foreclosure action."); *Rutty v. Esagoff,* No. 17-CV-1485, 2017 WL 2178432, at *2 (E.D.N.Y.

May 17, 2017) ("By virtue of the doctrine of collateral estoppel, plaintiff is precluded from

claiming that the foreclosure was improper, that the assignments were backdated, that certain

entities dissolved, and the myriad other factual issues that this Court had to previously consider

in the [f]oreclosure [a]ction.").

     As a consequence, the Claimant is not only barred from obtaining Rescissory Damages

under the Ninth Cause of Action in the Complaint, but she is also barred from obtaining relief

under other causes of action that are based on the alleged rescission of the loan and mortgage. To

that extent, the Court sustains the Objection and expunges the Claim. Moreover, and in any

event, the Claimant misplaces her reliance on any of the nine causes of action in the Complaint

as the support for her Claim, because she fails to account for the fact that her rights to the

Property or interests in the Property were finally adjudicated in the Foreclosure Action before

she allegedly rescinded the loan and mortgage and filed the Complaint. As discussed above, and

as summarized below:

     On July 19, 2010, One West commenced the Foreclosure Action and properly
served the Claimant with the summons and complaint.

     On March 27, 2012, the State Court entered the *Order of Reference in
Foreclosure.*

     On August 2, 2013, Claimant filed a *Motion to Vacate Plaintiff's Order of
Reference and Default Judgment.*

     On October 11, 2013, the State Court denied the motion.

On October 17, 2013, over the Claimant's objection, the State Court entered the *Judgment of Foreclosure and Sale*.

On October 24, 2013, the Property was sold, and the bid was assigned to Freddie Mac.

On October 24, 2013, the Referee's Deed in foreclosure was recorded in the Rockland County Clerk's Office.

On November 21, 2013, the Claimant filed an Order to Show Cause to again vacate the default judgment. The State Court denied the application, noting that it had "examined the merits of this foreclosure action on more than one occasion, and in executing an order of reference, in denying defendant's previous motion, and in executing a judgment of foreclosure, found the documentation to be in all respects proper." *See Order* at 1-2.

Thus, by the time that the Claimant filed the Complaint, the State Court had considered and rejected her claims to ownership of the Property three times. In support of the Claim, she makes arguments that she could have raised in the Foreclosure Action and asks the Court to disregard the unvacated *Judgment of Foreclosure and Sale* entered on October 17, 2013 and the foreclosure sale which transferred ownership to Freddie Mac on October 24, 2014. However, she is barred from obtaining such relief.

*Res judicata* and claim preclusion bar the "relitigation . . . of claims that were, or could have been, brought in an earlier litigation between the same parties or their privies." *Bank of N.Y. v. First Millennium, Inc.,* 607 F.3d 905, 919 (2d Cir.2010). *See also Nilsen v. City of Moss Point,* 701 F.2d 556, 560 (5th Cir. 1983) ("it is black-letter law that *res judicata,* by contrast to narrower doctrines of issue preclusion, bars all claims that were or *could have been* advanced in support of the cause of action on the occasion of its former adjudication . . . not merely those that were adjudicated."). As with collateral estoppel, the Court applies New York law of *res judicata* to the State Court judgement in the Foreclosure Action. *In re Sokol*, 113 F.3d at 306. New York takes a transactional approach to *res judicata*: "once a claim is brought to a final conclusion, all

other claims arising out of the same transaction or series of transactions are barred, even if based

upon different theories or if seeking a different remedy." *Sosa v. J.P. Morgan Chase Bank*, 33

A.D.3d. 609, 611 (2d Dept 2006) (internal quotation marks and citation omitted).  In determining

what qualifies as the "same transaction," courts look to: "how the facts are related in time, space,

origin or motivation; whether they form a convenient trial unit; and whether treating them as a

unit conforms to the parties' expectations." *See Marinelli Assocs. v. Helmsley–Noyes Co.,* 265

A.D.2d. 1, 5 (1st Dept 2000).  Even if there are variations in the facts alleged or different relief is

sought, if the actions are grounded on the same gravamen of the wrong, *res judicata* applies.

*Yeiser v. GMAC Mortg. Corp.,* 535 F. Supp. 2d 413, 422 (S.D.N.Y. 2008).

In New York, the doctrine of *res judicata,* or claim preclusion bars actions where: (i)

there is a final judgment on the merits, (ii) involving the same parties or their privies, and (iii)

involving the same cause of action. *See Landau v. LaRossa, Mitchell & Ross*, 11 NY3d 8, 12–13

(2008) (citing *Parker v. Blauvelt Volunteer Fire Co.,* 93 NY2d 343, 347 (1999) ("a valid final

judgment bars future actions between the same parties on the same cause of action. As a general

rule, once a claim is brought to a final conclusion, all other claims arising out of the same

transaction or series of transactions are barred, even if based upon different theories or if seeking

a different remedy."). *See also Matter of Grainger (Shea Enters.),* 309 N.Y. 605, 616 (1956)

(noting "[t]he general doctrine of res judicata gives binding effect to the judgment of a court of

competent jurisdiction and prevents the parties to an action, and those in privity with them, from

subsequently re-litigating any questions that were necessarily decided therein").

Those elements are satisfied here. The default judgment entered by that court in the

Foreclosure Action is a final judgment on the merits. *Aghaeepour v. N. Leasing Sys., Inc.,* 378 F.

Supp. 3d 254, 265 (S.D.N.Y. 2019) (citing *Lazides v. P & G Enterprises*, 58 A.D.3d. 607 (2d

Dept 2009) ("It is well settled that default judgments can have *res judicata* effect.")); *Stora v. City of New York*, 24 Misc. 3d 906, 910 (Sup. Ct., NY County 2009) ("judgments on default can have res judicata effect"); *Allstate Insurance Company v. Williams*, 29 A.D.3d. 688, 690 (2d Dept 2006) ("doctrine [of *res judicata*] is applicable to an order or judgment entered upon default that has not been vacated, as well as to issues that were or could have been raised in the prior proceeding").

One West, as plaintiff, and the Claimant, as a defendant, were parties to the Foreclosure Action. Ditech was not a party to the action, but is the successor-in-interest to, and is in privity with, One West. *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d at 423 (noting that "New York law provides that privity extends to parties 'who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action.'"). *See also Talley v. LoanCare Servicing, Div. of FNF*, No. 15-CV-5017 (JMA) (AKT), 2018 WL 4185705, at *7 (E.D.N.Y. Aug. 31, 2018) ("Under New York law, both the party servicing the mortgage and the party that later acquires it (becoming a successor in interest) are considered to be in privity with the party to the original action concerning the mortgage for purposes of *res judicata*."). Accordingly, the second element of *res judicata* is satisfied. So is the third element. The State Court Action involves matters plainly at issue in the Foreclosure Action. Moreover, "[a] judgment of foreclosure and sale entered against a defendant is final to all questions at issue between the parties, and all matters of defense which were or might have been litigated in the foreclosure action are concluded." *Dupps v. Bettancorp*, 121 A.D.3d. 746, 747 (2d Dept 2014) (internal quotations marks omitted) (citations omitted).

Application of the doctrine of *res judicata* bars the Claim in its entirety. *See Matter of Baudoin,* 981 F.2d 736, 744 (5th Cir. 1993) (holding that the proof of claim filed therein is barred by *res judicata* because "the current claim is identical to those disposed of in the prior bankruptcies."); *Siegel v. Fed. Home Loan Mortg. Corp.,* 143 F.3d 525 (9th Cir. 1998) (holding among other things, that *res judicata* applied to bar mortgagor's claims arising from foreclosures and the prior allowance of mortgagee's proofs of claim against discharged mortgagor-debtor was a final judgment for *res judicata* purposes.); *Matter of AMR Corp.*, 566 B.R. 657, 667-668 (S.D.N.Y. 2017) (affirming the bankruptcy court's expungement of the proof of claim because it was "a transparent attempt to avoid the preclusive effect of the Florida judgment" and because "*res judicata* bars Davidson from raising these issues in his proof of claim because they either were or could have been raised in the Florida state court lawsuit.").  For that additional reason, the Court sustains the Objection and expunges the Claim.[22]

### Conclusion

Based on the foregoing, the Court sustains the Objection and expunges the Claim.

IT IS SO ORDERED.

Dated:  New York, New York
        December 3, 2021

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge

---

[22]    The Court need not and will not consider the balance of the Estate Representatives' arguments in support of the Objection.