**UNITED STATES BANKRUPTCY COURT**                    NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x

In re:                                          :       Case No. 19-10412 (JLG)
                                                :       Chapter 11
Ditech Holding Corporation, *et al.*,           :
                                                :
                                                :       (Jointly Administered)
                              Debtors.[1]        :

------------------------------------------------------- x

### MEMORANDUM DECISION AND ORDER SUSTAINING THE SIXTY-THIRD AND FIFTIETH OMNIBUS OBJECTIONS WITH RESPECT TO THE CLAIMS OF ROY J. DIXON JR. (CLAIM NOS. 2896 AND 2906) AND DENYING THE VARIOUS RELATED MOTIONS FILED BY ROY J. DIXON JR.

**A P P E A R A N C E S :**

WEIL, GOTSHAL & MANGES LLP
*Attorneys for the Plan Administrator*
767 Fifth Avenue
New York, New York 10153
By:    Ray C. Schrock, P.C.
       Richard W. Slack, Esq.
       Sunny Singh, Esq.
       Natasha S. Hwangpo, Esq.
       David F. Hill, IV, Esq.


JENNER & BLOCK LLP
*Attorneys for the Consumer Representative*
919 Third Avenue
New York, NY 10022
By:    Richard Levin, Esq.


Mr. Roy J. Dixon Jr.
*Appearing Pro Se*
6394 Emerald Dunes Drive, Unit 201
West Palm Beach, FL 33411

---

[1]    The confirmation of the Debtors' Third Amended Plan (as defined below) created the Wind Down Estates. The Wind Down Estates, along with the last four digits of their federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction[2]

Roy J. Dixon Jr. (the "Claimant") filed Proof of Claim No. 2896 ("First Dixon Claim") and Proof of Claim No. 2906 ("Duplicate Dixon Claim") (together, the "Dixon Claims") against Ditech Financial LLC ("Ditech") in these Chapter 11 Cases. Both claims are filed as unsecured claims in the sum of $303,500 and seek damages occasioned by the foreclosure sale of certain real property. Both were filed after the Bar Date lapsed.

The matters before the Court are the objections to the Dixon Claims filed by the Plan Administrator on behalf of Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and its debtor affiliates (excluding Reorganized RMS) (collectively, the "Wind Down Estates") and the Consumer Representative (the "Objections").[3] The Claimant is proceeding pro se. He filed a response in opposition to the Objections (the "Response"),[4] as well as the following documents: (i) the Evidentiary Hearing Motion;[5] (ii) the Evidentiary Hearing Scheduling Motion;[6] (iii) the Claim Amendment Motion;[7] and (iv) the Duplicate Claim

---

[2]    Capitalized terms that are not defined herein shall have the meanings ascribed in the Objections and the Third Amended Plan.

[3]    *See* Sixty-Third Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims) [ECF No. 2840] (filed om  behalf of the Plan Administrator and Consumer Representative) (the "Sixty-Third Omnibus Objection"); Fiftieth Omnibus Objection to Proofs of Claim (Duplicate or Amended Unsecured Consumer Creditor Claims) (ECF No. 3737) (filed on behalf of the Consumer Representative) (the "Fiftieth Omnibus Objection" and together with the Sixty-Third Omnibus Objection, the "Objections"). References to "ECF No. ___" herein are to documents filed in the electronic docket in these jointly administered cases under Case No. 19-10412 (the "Chapter 11 Cases").

[4]    Opposition Response to Consumer Claims Trustee Objection to Proof of Claim [ECF No. 2936].

[5]    FRCP Rule 60(b)(6) Motion Requesting Evidentiary Hearing Memorandum of Law in Support [ECF No. 3563].

[6]    Motion Requesting the Court to Schedule a Specially Set Evidentiary Hearing on the Claimant's Motion Requesting an Evidentiary Hearing on Claimant's Proof of Claim [ECF No. 3985].

[7]    Motion Requesting Leave to File an Amended Proof of Claim [ECF No. 3810].

Response.[8] The Plan Administrator and Consumer Representative filed a joint reply to the

Response, and in further support of the Objections (the "Reply").[9] The Claimant filed a Sur-

Reply in further support of the Dixon Claims.[10]

The Plan Administrator and Consumer Representative contend that the Court should

disallow and expunge the Dixon Claims because they are time barred since they were filed after

the Bar Date lapsed, and, in any event because the Court lacks jurisdiction to hear the claims

under the *Rooker-Feldman* doctrine, and the claims are barred by *res judicata*. To address the

Objections, pursuant to the Claims Procedures Order,[11] the Court conducted a Sufficiency

Hearing on the Dixon Claims. The legal standard of review at a Sufficiency Hearing is

equivalent to the standard applied to a motion to dismiss for failure to state a claim upon which

relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule

12(b)(6)").[12] *See* Claims Procedures Order ¶ 3(iv)(a).

---

[8]     Response to the Wind Down Estates Consumer Claim Trustee's Fiftieth Omnibus Objection to Proofs of Claim [ECF No. 3811].

[9]     Joint Reply of Plan Administrator and Consumer Claim's Trustee in Support of the Sixty-Third and Fiftieth Omnibus Objections with Respect to Claims of Roy J. Dixon (Claim Nos. 2896 and 2906) and in Opposition to (I) the Motion Requesting Leave to File an Amended Proof of Claim (ECF No. 3810); (II) The Motion Requesting Evidentiary Hearing Memorandum of Law in Support (ECF No. 3563); and (III) the Motion Requesting the Court to Schedule a Specially Set Evidentiary Hearing on the Claimant's Motion Requesting the Court to Schedule a Specially Set Evidentiary Hearing on the Claimant's Motion Requesting an Evidentiary Hearing on Plaintiff's Proof of Claim (ECF No. 3985) [ECF No. 3994].

[10]     Claimant Roy Joe Dixon Jr. Reply to Joint Reply of Plan Administrator and Consumer Claims Trustee in Support of the Sixty-Third and Fiftieth Omnibus Objections With Respect to Claims of Roy J. Dixon (Claim Nos. 2896 And 2906) And in Opposition to (I) The Motion Requesting Leave to File an Amended Proof of Claim (ECF No. 3810); (II) The Motion Requesting Evidentiary Hearing Memorandum of Law in Support (ECF No. 3563); And (III) The Motion Requesting The Court to Schedule a Specially Set Evidentiary Hearing on the Claimant's Motion Requesting an Evidentiary Hearing on Plaintiff's Proof of Claims (ECF No. 3985) With Memorandum of Law [ECF No. 4006].

[11]     *See* Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures [ECF No. 1632].

[12]     Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

For the reasons set forth herein, the Court sustains the Objections and expunges the Dixon Claims.[13] The Court also denies the Claim Amendment Motion, the Evidentiary Hearing Scheduling Motion, and the Evidentiary Hearing Motion.

## Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

### The Dixon Claims[14]

Claimant was the owner of real property located at 163 Rivera Court, Royal Palm Beach, Florida 33411 (the "Property"). Response ¶ 1.[15] On January 25, 2007, Claimant executed a note (the "Note") in favor of Countrywide Home Loans, Inc. ("Countrywide"). *See* Ex. 1.[16] The Note is secured by a mortgage on the Property (the "Mortgage"), which was recorded on February 2,

---

[13]   In support of the Objection, the Plan Administrator and Consumer Representatives also argue that the Claims should be reclassified as Consumer Creditor Claims because the Claims are not secured by an interest in property of the Debtors and are they entitled to priority status. Reply ¶¶ 33-42.  Given the Court's determination to expunge the Claims, the Court does not address the alternative arguments.

[14]   The Court can properly take judicial notice of the underlying mortgage documents that form the basis for the Dixon Claims, as well as matters of public record, such as recording documents and court records. *See* Memorandum Decision and Order Sustaining the Fifteenth Omnibus Objection (No Basis Consumer Creditor Claims) With Respect to Claim of Alton W. Obert at 1 (Oct. 3, 2021) [ECF No. 3718] (taking judicial notice of underlying mortgage documents). *See also Sutton ex rel. Rose v. Wachovia Sec., LLC,* 208 F. App'x 27, 30 (2d Cir. 2006) (holding that filings and orders in other courts "are undisputably matters of public record"); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC,* 127 F. Supp. 3d 156, 165-66 (S.D.N.Y. 2015) (taking judicial notice of property records from a county website); *Chestnut v. Wells Fargo Bank, N.A.,* Case No. 10–CV–4244 (JS)(ARL), 2011 WL 838914, at *1 n.1 (E.D.N.Y. Mar. 2, 2011) (holding, in the context of a breach of contract action arising from a mortgage, that the "Complaint, however, contains limited factual material relating to Plaintiffs' contractual dispute with Wells Fargo . . . Consequently, the Court largely constructs this section from documents that it can take judicial notice of, such as the underlying mortgage documents, the state court records, and the related bankruptcy proceeding).

[15]   All citations to documents filed by the Claimant, including the Dixon Claims and Response are to the particular PDF page number of the document.

[16]   Citations to "Ex. ____" are to the exhibits annexed to the Reply.

2007. *See* Ex. 2. The Mortgage identifies Countrywide as the lender and Mortgage Electronic

Registration Systems, Inc. as nominee for the lender, as the mortgagee. *Id.* at 1. On April 27,

2009, Countrywide merged into BAC Home Loans Servicing, LP, which succeeded to

Countrywide's interest in the Note. On January 31, 2011, Claimant entered into a modification

agreement with respect to the Mortgage. *See* Ex. 3. On June 1, 2013, Green Tree Servicing LLC

(which became Ditech in August 2015) began servicing the Mortgage.

The Florida State Court Foreclosure Action

As of October 2014, the Claimant was in default under the Mortgage as he had failed to

make required monthly payments. On October 28, 2014, Ditech initiated a foreclosure action

titled *Green Tree Servicing LLC v. Roy J. Dixon*, Case No. 2014CA013158 (the "Florida State

Court Foreclosure Action") by filing a complaint (the "Complaint") against the Claimant in the

Fifteenth Judicial Circuit Court in Palm Beach County, Florida (the "Florida State Trial Court").

*See* Ex. 4. On August 24, 2015, Claimant, acting pro se, filed his answer to the Complaint. *See*

Ex. 5. In it he alleged, among other things, that Ditech lacked standing to foreclose on the

Property because it failed to provide required notices of default and acceleration, failed to

comply with foreclosure prevention requirements, and violated the Real Estate Settlement

Procedures Act. *See id.* The answer also raised a number of other alleged legal deficiencies and

affirmative defenses. *See id.* at 2-4.

On April 18, 2016, the Florida State Trial Court entered a final judgment of foreclosure

in favor of Ditech. *See* Ex. 6. On December 20, 2018, the court vacated the judgment because, at

the time it was entered, there were pending interlocutory appeals. *See* Ex. 7, Order Granting in

Part Defendants' 1.540(b) Motions to Vacate. On September 27, 2019, after Claimant's appeals

were dismissed, the Florida State Trial Court entered a final judgment of foreclosure (the "Final

Florida State Court Foreclosure Judgment") in favor of Ditech, setting the sale date for November 4, 2019. *See* Ex. 8.

On November 4, 2019, the Property was publicly auctioned (the "Foreclosure Sale") and sold for $303,500. *See* Ex. 9, Foreclosure Certificate of Sale. On April 27, 2021, the Florida State Trial Court entered its Notice and Order Closing Reopened Case. *See* Ex. 10.

The Florida State Appellate Court Action

Claimant, acting pro se, filed two appeals of the Final Florida State Court Foreclosure Judgment to the Florida District Court of Appeal (the "Florida State Appellate Court"); the first (Case No. 4D19-3246) on October 21, 2019, and the second (Case No. 4D19-3768) on November 18, 2019. *See* Ex. 11, Appellate Docket for Case No. 4D19-3246; Ex. 12, Appellate Docket for Case No. 4D19-3768. On December 10, 2019, the appeals were consolidated into case No. 4D19-3768. *See* Ex. 11, Appellate Docket for Case No. 4D19-3246 at 8.

On April 30, 2020, the Florida State Appellate Court affirmed the judgment of the Florida State Trial Court *per curiam*. *See* Ex. 13, April 30, 2020 Order. On June 5, 2020, Claimant's motion for rehearing was denied. *See* Ex. 11 at 2. On June 24, 2020, Claimant appealed the Florida State Appellate Court's order denying rehearing to the Florida State Supreme Court. *See* Ex. 14, Appellants' Notice of Apeal [sic] to the Florida Supreme Court for Writ of Certiorari. On June 29, 2020, the Florida State Supreme Court dismissed Claimant's appeal. *See* Ex. 15, June 29, 2020 Florida State Supreme Court Order.

The Florida Bankruptcy Court Action

On May 6, 2016, during the pendency of the Florida State Court Foreclosure Action, Claimant, represented by counsel, filed for bankruptcy (Case No. 16-16588) (the "Dixon Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of Florida

(the "Florida Bankruptcy Court"). *See* Ex. 16, Dixon Bankruptcy Case Docket at 1. On

September 26, 2016, Ditech filed a proof of claim in the Dixon Bankruptcy Case seeking

$308,701.81, the amount then due on the Mortgage. *See* Ex. 17, Proof of Claim No. 7 filed in the

Dixon Bankruptcy Case (the "Ditech Proof of Claim").

On October 14, 2016, the Claimant objected to the Ditech Proof of Claim. The Claimant

sought to reduce the amount claimed to $24,000 or less, arguing that Ditech had miscalculated

pre-default escrow payments and that correcting these errors would result in a reduced claim. *See*

Ex. 18, Objection to Claim on Shortened Notice. On March 17, 2017, Claimant amended his

objection, arguing that Ditech lacked standing to foreclose on the Property because Ditech was

not the servicer on the Note and Claimant was not in default. *See* Ex. 19, Amended Objection to

Claim. On April 13, 2017, the Florida Bankruptcy Court overruled Claimant's objection and

allowed the Ditech Proof of Claim. *See* Ex. 20.

On December 7, 2016, while Ditech and Claimant were litigating the merits of the Ditech

Proof of Claim, Claimant filed an adversary proceeding in the Florida Bankruptcy Court styled

as a class action lawsuit, against Ditech. *See* Ex. 21, Verified Class Action Adversary Complaint

(Case No. 16-01660) (the "First Bankruptcy Complaint"). In support of the First Bankruptcy

Complaint, the Claimant alleged that Ditech lacked standing in the Florida State Court

Foreclosure Action to foreclose on the Property and had engaged in a fraudulent scheme during

that action to conceal this scheme from the Florida State Trial Court. *Id.* at 23-39. On January 1,

2017, the Florida Bankruptcy Court granted Claimant's motion to dismiss the First Bankruptcy

Complaint. *See* Ex. 22.

On January 17, 2017, Claimant filed a second adversary proceeding (Case No. 17-01019)

(the "Second Bankruptcy Adversary Proceeding") against Ditech in the Florida Bankruptcy

Court. *See* Ex. 23, Second Bankruptcy Adversary Proceeding Docket at 1. On January 31, 2017,

Claimant filed an Amended Verified Adversary Complaint (the "Second Bankruptcy

Complaint"). In it he sought to expunge the Ditech Proof of Claim, and to obtain monetary relief

in the form of damages equal to all the money that he paid to Ditech while it serviced the loan,

and declaratory relief that Ditech lacked standing to bring the Florida State Court Foreclosure

Action and had engaged in various fraudulent acts to conceal this fact. *See* Ex. 24 at 17-28. On

February 7, 2017, Ditech filed a motion to dismiss the Second Bankruptcy Complaint. In support

of the motion, Ditech asserted that the Second Bankruptcy Complaint was meritless, including

that the action was an impermissible collateral attack on a pending state action, and was barred

by application of the *Rooker-Feldman* doctrine. *See* Ex. 25 at 7-13. On April 13, 2017, the

Florida Bankruptcy Court granted the motion and dismissed the Second Bankruptcy Complaint.

*See* Ex. 26. On April 13, 2017, the Florida Bankruptcy Court entered final judgment in the

Second Bankruptcy Adversary Proceeding in favor of Ditech dismissing the Second Bankruptcy

Complaint. *See* Ex. 27, Final Judgment (the "Second Bankruptcy Adversary Proceeding Final

Judgment").

<u>The Florida Federal Court Action</u>

On January 8, 2019, while the Florida State Court Foreclosure Action was pending,

Claimant filed suit against Ditech in the United States District Court for the Southern District of

Florida (the "Florida Federal Court") (Case No. 9:19-cv-80022) (the "Florida Federal Court

Action"), based on allegations that Ditech, through the use of allegedly forged documents

submitted during the Florida State Court Foreclosure Action, had violated the Uniform Code of

Military Justice, and committed mortgage fraud. *See* Ex. 28, Federal Action Complaint ¶¶ 13-25,

34, 39. Over the next year and a half, the Claimant made numerous amendments to his complaint

and filed a number of motions, and added Bank of America, N.A. as a defendant to the action. *See* Ex. 29.

On February 11, 2019 (the "Petition Date") Ditech and certain of its affiliates ("Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court. On March 8, 2019, Ditech notified the Florida Federal Court that it had filed for bankruptcy and was subject to the automatic stay. *Id.* at 17. On March 21, 2019, the Florida Federal Court entered its Order on Suggestion of Bankruptcy staying the Florida Federal Court Action as to Ditech. *See* Ex. 30. The Claimant sought leave to amend the Federal Action Complaint to join three defendants: Federal Housing Finance Agency, as Conservator of the Federal National Mortgage Association, the law firm of Roberson, Anschutz & Schneid PL, and Erik T. Samsing in his individual capacity and to add five new claims.

On July 3, 2019, the Florida Federal Court issued its Order and Opinion on Third Motion to Amend. *See* Ex. 31. In it the court noted that on March 8, 2019, Ditech had notified the court that it had filed for bankruptcy in this Court and that because Claimant sought damages against Ditech, the Claimant's complaint was in violation of the automatic stay. *Id.* at 6-7. The court found that, "[a]ny actual complaint subsequently filed that seeks monetary damages against Ditech would violate this Court's Stay Order and the automatic stay in Ditech's Chapter 11 bankruptcy case, and is void and without legal effect." *Id.* at 7. In response, on July 19, 2019, Claimant filed his Verified Second Amended Complaint, which dropped Ditech as a defendant and named only Bank of America, N.A., as a defendant. *See* Ex. 32.

On March 6, 2020, the Florida Federal Court issued its Final Order Dismissing Case the verified Second Amended Complaint with prejudice, and directing the clerk of court to close the matter. *See* Ex. 33.

<u>The Florida Federal Court Appeal</u>

On April 6, 2020, Claimant appealed the Final Order Dismissing Case to the Eleventh

Circuit Court of Appeals. *See* Ex. 34, Plaintiff's Notice of Appeal. On June 28, 2021, the circuit

court issued its *per curiam* order and opinion affirming the Final Order Dismissing Case, and

dismissing the Federal Action. *See* Ex. 35.

## **The Chapter 11 Cases**

As of the Petition Date, the Debtors remained in possession and control of their business

and assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code. On February 22, 2019, the Court entered an order fixing April 1, 2019 at 5:00 p.m.

(prevailing Eastern Time) as the deadline for each person or entity, not including governmental

units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in the

Debtors' Chapter 11 Cases (the "General Bar Date").[17] Thereafter, the Court extended the bar

date to April 30, 2019 (the "Extended General Bar Date") and then further extended the General

Bar Date solely for consumer creditors to June 3, 2019 at 5:00 p.m. (prevailing Eastern Time)

(the "Bar Date").[18]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, and on

September 30, 2019, that plan became effective.[19] The Plan Administrator is a fiduciary

appointed under the Third Amended Plan who is charged with the duty of winding down,

---

[17]    Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof [ECF No. 90].

[18]    Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc [ECF No. 496].

[19]    Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors [ECF No. 1326] (the "Third Amended Plan"); Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors [ECF No. 1404]. Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims [ECF No. 1449].

dissolving and liquidating the Wind Down Estates. *See* Third Amended Plan, Art. I, ¶¶ 1.130, 1.184, 1.186. The Consumer Representative is a fiduciary appointed under the Third Amended Plan who is responsible for the reconciliation and resolution of Consumer Creditor Claims and distribution of funds to holders of Allowed Consumer Creditor Claims in accordance with the Third Amended Plan. *Id.,* Art. I, ¶ 1.41. Under the plan, the Plan Administrator, on behalf of each of the Wind Down Estates, is authorized to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims; and the Consumer Representative has the exclusive authority to object to all Consumer Creditor Claims. *See id.*, Art. VII, ¶ 7.1.

**The Proofs of Claim, Objections and Responses**

On July 16, 2020, Claimant filed the First Dixon Claim seeking $303,500 based on the Property's sale price in the Florida State Court Foreclosure Action. *See* First Dixon Claim at 1. That claim:

> Acknowledges that it was filed after the Bar Date;
>
> Acknowledges that it is not a secured claim, but lists real estate as a basis for asserting secured status;
>
> Asserts that it is entitled to priority status under 11 U.S.C. § 507(a) in the amount of $303,500, but does not specify which subsection of the statute provides priority status;
>
> Asserts that Claimant was damaged by Ditech's Foreclosure Sale of the Property because Ditech did not own the Note; and
>
> Demands that Ditech turn over the proceeds from the Foreclosure Sale ($303,500) on the grounds that Ditech's counsel committed civil theft.

*Id.* at 2-6. The Claimant annexed miscellaneous documents in support of the First Dixon Claim.

On September 18, 2020, the Plan Administrator and Consumer Representative filed the Sixty-Third Omnibus Objection, which lists the First Dixon Claim among the claims subject to

the objection. The Plan Administrator and Consumer Representative object to that claim on the grounds that it is invalid and was filed after the Bar Date lapsed. On October 15, 2020, Claimant filed the Response. In it, he alleges that Ditech, by virtue of its bankruptcy filing, is a non-existent entity and committed civil theft by obtaining the proceeds of the Foreclosure Sale. *See* Response at 7-9. He also challenges Ditech's standing to bring the Florida State Court Foreclosure Action by alleging that various assignments and other documents and statements submitted to the Florida State Trial Court were fraudulent. The Claimant also contends that the state court judge "participated" in Ditech's alleged fraud. *Id.*

On October 16, 2020, Claimant filed the Duplicate Dixon Claim seeking $303,500. That claim:

Acknowledges that it was filed after the Bar Date;

Lists "real estate" as a basis for asserting secured status – although it acknowledges that it is not a secured claim;

Does not assert that it is entitled to priority status under 11 U.S.C. § 507(a);

Asserts that Claimant was damaged by Ditech's Foreclosure Sale because he "has been paying the wrong party for 15 years and has been robbed of his home; and Demands that the Court allow the Dixon Claims and set an evidentiary hearing on the claims." The Claimant annexed the Response and all exhibits thereto to the First Dixon Claim as exhibits to the claim.

Like the First Dixon Claim, the Duplicate Dixon Claim asserts that it is based on various other causes of action, including fraud and civil theft arising from Ditech's servicing of the loan and the Florida State Court Foreclosure Action. *See* Duplicate Dixon Claim at 4; Duplicate Claim Response at 1, 9-12. As such, the Duplicate Dixon Claim is functionally identical to the First Dixon Claim, except it attaches the Response and all exhibits thereto in place of the attachments to the First Dixon Claim.

On July 21, 2021, Claimant filed the Evidentiary Hearing Motion. In it, he requests that this Court set an evidentiary hearing on the First Dixon Claim, pursuant Rule 60(b)(6) of the Federal Rules of Civil Procedure. *See* Evidentiary Hearing Motion at 1.

On October 18, 2021, the Consumer Representative filed the Fiftieth Omnibus Objection, which lists the Duplicate Dixon Claim among the claims subject to the objection. *See* Fiftieth Omnibus Objection ¶ 12.

On November 16, 2021, Claimant filed his Duplicate Claim Response. In it, he asserts that the Duplicate Dixon Claim is not a duplicate of the First Dixon Claim, but nonetheless states that, as with the First Dixon Claim, this proof of claim is based on allegations of fraud, civil theft, and various other causes of action arising from Ditech's servicing of the loan and the subsequent Florida State Court Foreclosure Action. *See* Duplicate Claim Response at 1.

On December 13, 2021, Claimant filed his Claim Amendment Motion. In it, he requests that this Court allow him to file an amended proof of claim which would list "other claims against Ditech Financial LLC that were stayed in the Federal District Court For the Southern District of Florida under Case No. 19-cv-80022." *See* Claim Amendment Motion at 1.

On April 8, 2022, Claimant filed his Evidentiary Hearing Scheduling Motion, wherein he requests that this Court set a separate hearing date for the Evidentiary Hearing Motion.

On April 14, 2022, the Plan Administrator and Consumer Representative filed their Reply in support of the Objections. They say that the Court should disallow and expunge the Dixon Claims because:

> (i) The proofs of claim were filed approximately one year after the Bar Date even though both Claimant and his bankruptcy counsel were properly served with notice of the Bar Date, thus the claims are time barred.

(ii) A resolution of Claimant's proofs of claim on the merits would require this Court to review and reject the Final Florida State Court Foreclosure Judgment and this Court lacks jurisdiction to do so under the *Rooker-Feldman* doctrine.

(iii) Claimant is a serial litigant whose claims have already been litigated in both the Florida State Court Foreclosure Acton and the Second Bankruptcy Adversary Proceeding. As such, the claims here are barred by *res judicata.*

Reply ¶¶ 38-65. Alternatively, they contend, in any event, that the Court should reclassify the Dixon Claims from secured claims to consumer creditor claims, which would limit the amount of recovery on the claims. *Id.* ¶¶ 66-73.

On April 20, 2022, Claimant filed his Sur-Reply.

Pursuant to the Claims Procedures Order, the Court conducted a Sufficiency Hearing on the Claims.

## **Applicable Legal Standards**

Under section 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The filing of a proof of claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bank. P. 3001(f). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See, e.g., Rozier v. Rescap Borrower Claims Tr. (In re Residential Capital, LLC)*, 15 Civ. 3248 (KPF), 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 09-50026 (REG), 2012 WL 1886755, at *3 (S.D.N.Y. May 12, 2012); *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd sub nom. Peter J. Solomon Co., L.P. v. Oneida, Ltd.*, No. 09-cv-2229(DC), 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010).

14

Section 502(b) sets forth the grounds for disallowing a properly filed proof of claim. *See* 11 U.S.C. § 502(b); *see also Travelers Cas. and Sur. Co. of Am. v. Pacific Gas and Elec. Co.*, 549 U.S. 443, 449 (2007) ("But even where a party in interest objects [to a claim], the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b)").

In filing the Objections to the Dixon Claims, the Plan Administrator and Consumer Representative initiated a contested matter. *See* Fed. R. Bankr. P. 3007 advisory committee's note ("[t]he contested matter initiated by an objection to a claim is governed by Rule 9014 . . ."). *See also In re Tender Loving Care Health Servs., Inc.*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter"). Bankruptcy Rule 9014 governs contested matters. The rule does not explicitly provide for the application of Bankruptcy Rule 7012. However, Bankruptcy Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply." Fed. R. Bankr. P. 9014. The Court did so here. Under the Claims Procedures Order, the legal standard of review the Court applies at a Sufficiency Hearing is equivalent to the standard applied by the Court under Rule 12(b)(6) on a motion to dismiss for failure to state a claim upon which relief could be granted. *See* Claims Procedures Order ¶ 3(iv)(a). *See also In re 20/20 Sport, Inc.*, 200 B.R. 972, 978 (Bankr. S.D.N.Y. 1996) ("In bankruptcy cases, courts have traditionally analogized a creditor's claim to a civil complaint [and] a trustee's objection to an answer. . . ").

In applying Rule 12(b)(6) to the Dixon Claims, the Court assesses the sufficiency of the facts alleged in support of the claims in light of the pleading requirements under Rule 8(a) of the

Federal Rules of Civil Procedure.[20] Rule 8(a)(2) states that a claim for relief must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R.

Civ. P. 8(a)(2). To meet that standard, the Dixon Claims "must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S.

662, 678 (2009) ("*Iqbal*") (citations omitted); *accord Bell Atlantic Corp. v. Twombly,* 550 U.S.

544, 570 (2007) ("*Twombly*"). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 570. To satisfy Rule

12(b)(6), the "pleadings must create the possibility of a right to relief that is more than

speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008)

(citation omitted).  In considering whether that standard is met for a particular claim, the court

must assume the truth of all material facts alleged in support of the claim and draw all reasonable

inferences in the claimant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98

(2d Cir. 2007).  However, the court "need not accord 'legal conclusions, deductions or opinions

that are couched as factual allegations . . . a presumption of truthfulness.'" *Hunt v. Enzo

Biochem, Inc.*, 530 F.Supp.2d 580, 591 (S.D.N.Y. 2008) (quoting *In re NYSE Specialists Sec.

Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)).

## Discussion

As noted, the Plan Administrator and Consumer Representative contend that the Court

should sustain the Objections and dismiss and expunge the Dixon Claims because: (i) the claims

are time-barred since Claimant filed them after the Bar Date lapsed; (ii) the Court lacks

jurisdiction to adjudicate the claims under the *Rooker-Feldman* doctrine; and (iii) because the

---

[20]    Rule 8 is incorporated herein pursuant to Bankruptcy Rule 7008.

claims are barred by application of the doctrine of *res judicata.* The Court considers those matters below.

**Late Filed Claims**

As relevant to the Dixon Claims, the Bar Date is June 3, 2019. Claimant filed the First Dixon Claim and the Duplicate Dixon Claim on July 16, 2020, and October 16, 2020, respectively. As such, Claimant filed both claims more than a year after the Bar Date expired.

Bar dates are "critically important to the administration of a successful chapter 11 case." *In re Musicland Holding Corp.,* 356 B.R. 603, 607 (Bankr. S.D.N.Y. 2006). They are not designed merely as a "a procedural gauntlet" but rather serve "as an integral part of the reorganization process" and the efficient administration of bankruptcy cases. *Fidelity Bank, N.A. v. Hooker Investments, Inc*., 937 F.2d 833, 840 (2d Cir. 1991). The bar date allows "the parties in interest to ascertain with reasonable promptness the identity of those making claims against the estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization." *Id.* ("If individual creditors were permitted to postpone indefinitely the effect of a bar order ... the institutional means of ensuring the sound administration of the bankruptcy estate would be undermined."). Accordingly, bar dates are strictly enforced. *See In re Residential Cap., LLC,* Case No. 12-12020 (MG), 2020 WL 1228646, at *4 (Bankr. S.D.N.Y. Mar. 12, 2020) ("a strict application of the [bar date] is needed to effectively manage the claims process…") (internal quotations omitted); *In re AMR Corp*., 492 B.R. 660, 663 (Bankr. S.D.N.Y. 2013) ("The bar date is strictly enforced."); *In re Keene Corp*., 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995) ("The bar date is akin to a statute of limitations, and must be strictly observed.").

To satisfy due process there must be "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co*., 339 U.S.

306, 314 (1950). That is to say that "[n]otice need not be perfect but reasonable based on the

circumstances." *Francis v. Eaton (In re Eaton),* 327 B.R. 79, 82–83 (Bankr. D.N.H. 2005)

(citations omitted). An important factor in assessing the adequacy of notice provided by a debtor

to a creditor in a given situation in a bankruptcy case, is whether the creditor to whom the notice

is directed is known or unknown. *In re Queen Elizabeth Realty Corp.,* No. 13-12335 (SMB),

2017 WL 1102865, at *3 (Bankr. S.D.N.Y. Mar. 24, 2017) ("The nature of the notice [called for

under the Bankruptcy Code] depends on whether the creditor is known or unknown.") *aff'd*, 586

B.R. 95 (S.D.N.Y. 2018); *In re Avaya Inc.,* Case No. 17-10089 (SMB), 2018 WL 4381524 at *

3 (Bankr. S.D.N.Y. Sept. 12, 2018) (same). While actual notice is required if the creditor is a

'known' creditor, constructive notice is sufficient where a creditor is 'unknown.'" *DePippo v.

Kmart Corp.*, 335 B.R. 290, 295–96 (S.D.N.Y. 2005). *See also In re BGI, Inc.*, 476 B.R. 812,

820 (Bankr. S.D.N.Y. 2013) ("For unknown creditors, constructive notice, such as notice by

publication, will suffice.").

The Claimant contends that the Court should excuse his delay in filing the Dixon Claims

because he did not receive timely notice of the Bar Date. First Dixon Claim at 4. The Claimant

was scheduled in these Chapter 11 Cases as a creditor holding an unsecured claim in an unknown

amount which was based in litigation. *See* Schedules of Assets and Liabilities for Ditech

Financial LLC [ECF No. 290] at 316. Thus, as a known creditor, Claimant was entitled to

receive actual notice of the Bar Date. *See In re U.S.H. Corp. of New York*, 223 B.R. 654, 658

(Bankr. S.D.N.Y. 1998)("[I]f a creditor is known to the debtor, notice by publication is not

constitutionally reasonable, and actual notice of the relevant bar dates must be afforded to the

creditor."). The record reflects that the Debtors provided the Claimant notice of the Bar Date, as

follows:

> On February 25, 2019, the Debtors served notice of the General Bar Date, together with a sample Proof of Claim form, to the Claimant, by first class mail directed to the Claimant at the Property–163 Rivera Court,  Royal Palm Beach, FL 33411.[21] The Debtors mailed four envelopes containing notice of the General Bar Date orders to the Property addressed to the Claimant, as follows: Blanche Dixon and Roy J. Dixon Jr.,[22] Roy J. Dixon and Blanche Dixon;[23] Roy J. Dixon, Debtor and  Roy Joe Dixon, *et. al*.,[24] respectively.

> Between March 29, 2019 and April 2, 2019, the Debtors served multiple notices of the Extended General Bar Date to the Claimant, by first class mail directed to the Claimant at the Property.[25] The Debtors mailed four envelopes to the Property containing notice of the Extended General Bar Date addressed to the Claimant, as follows: Blanche Dixon and Roy J. Dixon Jr.  Roy Joe and Blanche Dixon; Roy J. Dixon and Blanche Dixon; Roy J. Dixon, Debtor; Roy Joe Dixon, *et. al*.[26] The Debtors also sent notice of the Extended General Bar Date to Claimant, though his counsel in the Florida Bankruptcy Action by first class mail directed to: "Roy Dixon, 2001 Palm Beach LKS Blvd 410, c/o K. Drake Ozment, West Palm Beach, FL 33409."[27]

> On May 8, 2019, the Debtors sent notice of the further extended consumer bar date to Claimant, through his counsel in the Florida Bankruptcy Action by first class mail directed to: "Roy Dixon, 2001 Palm Beach LKS Blvd 410, c/o K. Drake Ozment, West Palm Beach, FL 33409."[28]

---

[21]     Affidavit of Service of Forrest Kuffer regarding (I) Notice of Deadlines Requiring Filing of Proofs of Claim and (II) Proof of Claim Form [ECF No. 142] at 162.

[22]     *Id.*.

[23]     *Id.* at 1095.

[24]     *Id.*

[25]     Ex. 36, Affidavit of Service by Tim Conklin, Ex. B – Service List.

[26]     *Id.*

[27]     *Id.,* Ex. K.

[28]     Ex. 36, Affidavit of Service by Tim Conklin ¶ 7(b) ("by causing true and correct copies to be enclosed securely in separate postage pre-paid envelopes and delivered via first class mail to: Roy J Dixon, 2001 Palm Beach LKS Blvd 410, c/o K Drake Ozment, West Palm Beach, FL 33409.").

"It is well settled that proof that a letter was properly addressed and placed in the mail system creates a presumption that the letter was received in the usual time by the addressee." *In re AMR Corp.*, 492 B.R. at 663. As a matter of law, that presumption cannot be overcome by the addressee's mere assertion that he did not receive the mail at issue. *Id.* at 663-64 ("Federal courts in New York have held quite uniformly that an affidavit of non-receipt is insufficient to rebut the presumption of receipt created by proof of mailing."); *In re Trump Taj Mahal Associates,* 156 B.R. 928, 939 (Bankr. D.N.J. 1993) ("If a party were permitted to defeat the presumption of receipt of notice resulting from the certificate of mailing by a simple affidavit to the contrary, the scheme of deadlines and bar dates under the Bankruptcy Code would come unraveled."). The Claimant has failed to rebut that presumption. Moreover, the record reflects that (i) Claimant occupied the Property until November 2019 (Sur-Reply at 7); (ii) on March 8, 2019, the Debtors filed a Notice of Bankruptcy Filing and Imposition of Automatic Stay in the Federal Action (Federal Action Docket at 17); and (iii) on March 21, 2019, the Florida Federal Court issued its Order of Suggestion of Bankruptcy, which stayed the Federal Action against Ditech because of its filing for bankruptcy. *See* Ex. 30, Order on Suggestion of Bankruptcy at 1.

The record is clear that that the Debtors provided Claimant with timely actual notice of the Bar Date. The Claimant filed the Dixon Claims more than a year after the Bar Date lapsed. Accordingly, the Dixon Claims are time-barred as late-filed claims. *See In re DDi Corp.*, 304 B.R. 626, 630 (Bankr. S.D.N.Y. 2004) (granting debtor's motion to expunge the class Claim as untimely late); *In re Alexander's Inc.,* 176 B.R. 715, 723 (Bankr. S.D.N.Y. 1995) (granting debtor's motion to expunge a claim filed one year after the bar date); *In re New York Seven-Up Bottling Co., Inc.,* 153 B.R. 21, 24 (Bankr. S.D.N.Y. 1993) (granting debtor's motion to expunge the claims of Great Waters and Poland Spring as untimely).

Bankruptcy Rule 9006(b)(1) governs late-filed claims in chapter 11 cases. *See Pioneer Inv. Servc. Co. v. Brunswick Associated Ltd. P'ship,* 507 U.S. 380, 389 (1993) ("The 'excusable neglect' standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases but not in Chapter 7 cases."); *see also Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.),* 419 F.3d 115, 121 (2d Cir. 2005) ("Rule 9006 governs the admission of proofs of claim filed after a court-ordered bar date.") Under the Bankruptcy Rules, the court has discretion to extend a bar date to late filed claims "where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1). In *Pioneer,* the Supreme Court construed the phrase "excusable neglect" as it is used in Bankruptcy Rule 9006(b)(1) as it relates to late-filed claims. It found that the determination of "excusable neglect" is an equitable one that takes account of all of the surrounding circumstances:

> These include. . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer*, 507 U.S. at 395. The burden of proof rests with the party asserting excusable neglect. *In re Enron Corp*, 419 F.3d at 121.

The Claimant has not sought leave to file a late-filed claim. Based on the facts in the record, it is unlikely that he would be able to establish such neglect. However, the Court need not further consider the matter because, as discussed below, the Dixon Claims are barred by application of the doctrine of *res judicata*, and under the *Rooker-Feldman* doctrine, the Court lacks jurisdiction to give the Claimant the relief he is seeking in the Dixon Claims.

## Application of the *Rooker-Feldman* Doctrine

For the Claimant to obtain the relief he seeks in the Dixon Claims, the Court essentially must look behind the Final Florida State Court Foreclosure Judgment and reject it. However, the

Court lacks jurisdiction to do so. By application of the *Rooker-Feldman* doctrine, "lower federal courts lack subject-matter jurisdiction over claims that effectively challenge state-court judgments." *In re Wilson*, 410 F. App'x 409, 410 (2d Cir. 2011). "The Rooker-Feldman doctrine [applies to] cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting the district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). In this circuit, there are four requirements that must be met before the *Rooker–Feldman* doctrine applies: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the federal court proceedings commenced. *Green v. Mattingly,* 585 F.3d 97, 101 (2009) (citing *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir.2005)). Here, all four prongs of the doctrine are satisfied.

The Claimant lost in the state court and the Dixon Claims, Response and Sur-Reply are direct and explicit attacks on the Final Florida State Court Foreclosure Judgment. *See, e.g.,* Response at 6 ("[T]he state court erroneously entered a final judgment of foreclosure in favor of the defunct plaintiff Green Tree Servicing, LLC and not its successor Ditech financial [sic] LLC . . ."); Sur-Reply at 7 ("The Claimant is not challenging the April 18, 2016, null and void vacated final judgment of foreclosure but the September 27, 2019, re-foreclosure of the Claimant's family home without a trial or evidentiary hearing, that was unlawfully awarded to Ditech Financial LLC."). "Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the Rooker-Feldman doctrine." *In re Moise*, 575 B.R. 191, 202 (Bankr. E.D.N.Y. 2017) (dismissing adversary complaint under the *Rooker-Feldman* doctrine

22

seeking to reverse the state court foreclosure judgment); *see, e.g.*, *Ford v. US. Dept. of Treasury IRS*, 50 Fed. Appx. 490 (2d Cir. 2002) (holding that *Rooker–Feldman* barred plaintiff's attempt to seek reversal of the state court foreclosure judgment); *In re Demarais*, Adversary No. 07–90223, 2008 WL 3286218, at *4 n.6 (Bankr. N.D.N.Y. 2008) (noting that vacatur of the underlying "Judgment of Foreclosure and Sale would be inappropriate under the Rooker–Feldman doctrine").

The Dixon Claims seek damages in the amount of the cash paid for the Property at the Foreclosure Sale, based upon Ditech's alleged fraud on the state court. *See* First Dixon Claim at 1, 5; Duplicate Dixon Claim at 9. The First Dixon Claim also alleges that the foreclosure proceeding was "unlawful" and intended to "steal the Dixons ['] home." First Dixon Claim at 5. Thus, the second prong of the *Rooker-Feldman* doctrine is satisfied because the Claimant complains of injuries which flow directly from the Final Florida State Court Foreclosure Judgment. This is a direct attack on that judgment. *Rooker-Feldman* applies with equal force to the allowance of a proof of claim. *Nath v. JP Morgan Chase Bank*, No. 15-CV-3937 (KMK), 2016 WL 5791193, at *6 (S.D.N.Y. Sept. 30, 2016) (applying *Rooker-Feldman* in the proof of claims context).

The third prong is satisfied because the Claimant asks the Court to review the Final Florida State Court Foreclosure Judgment and reject it as a product of fraud. *See* Response at 8 ("The state court Judge John S. Kastrenakes participated in Ditech Financial LLC fraud by instructing Ditech Financial LLC's counsel to draft a unilateral final judgment Order that fraudulently asserted 'a non-jury trial was held on September 23, 2019 and evidence was presented.'").

Finally, the Final Florida State Court Foreclosure Judgment was entered on September

26, 2019, before Claimant filed the Dixon Claims on July 16, 2020 and October 16, 2020. *See*

Final Florida State Court Foreclosure Judgment at 1; First Dixon Claim at 1; Duplicate Dixon

Claim at 1.

It is plain that the allegations contained in the Dixon Claims arise from the Final Florida

State Court Foreclosure Judgment. In resolving the Dixon Claims, the Court would be required

to look behind the judgment and determine whether the Final Florida State Court Foreclosure

Judgement is the product of alleged fraud. The Court lacks subject-matter jurisdiction to do so

pursuant to the *Rooker-Feldman* doctrine. *See, e.g., Borrani v. Nationstar Mortg. LLC*, 820 F.

App'x 20, 22 (2d Cir. 2020) ("The district court properly concluded that it lacked jurisdiction,

pursuant to the Rooker-Feldman doctrine, over Borrani's Racketeer Influenced and Corrupt

Organizations Act ('RICO'), 18 U.S.C. § 1961; wire fraud, fraud and deceit, 18 U.S.C. §§ 1343

and 1503; and emotional distress claims (claims 1-5 and 9). All of these claims are based on

injuries caused by the state court's judgment of foreclosure against Borrani and invite the federal

court to review that judgment."); *In re Ward*, 423 B.R. 22, 27 (Bankr. E.D.N.Y. 2010)

("[t]he *Rooker–Feldman* doctrine prevents this Court from reviewing the validity of the

Foreclosure Judgment."); *Gray v. Americredit Fin. Servs., Inc.,* No. 07 Civ. 4039, 2009 WL

1787710, at *4 (S.D.N.Y. June 23, 2009) ("Courts in this Circuit have consistently held that a

plaintiff who lost possession of his home in a state court foreclosure proceeding is barred by the

*Rooker–Feldman* doctrine from attacking the state court judgment in federal district court.");

*Goddard v. Citibank, NA,* No. 04CV5317 (NGG)(LB), 2006 WL 842925, at *4 (E.D.N.Y. Mar.

27, 2006) ("To the extent that Plaintiff asks that this court find the Judgment of Foreclosure to be

invalid because her mortgage payments were up to date ... I find that this claim is barred by the *Rooker–Feldman* doctrine.").

## **Application of the Doctrine of *Res Judicata***

In substance, the Dixon Claims are based on matters adjudicated in both the Florida State Foreclosure Court Action and the Second Bankruptcy Adversary Proceeding. "[I]t is well settled that a court may dismiss a claim on *res judicata* or collateral estoppel grounds under a Rule 12(b)(6) motion." *Linden Airport Mgmt. Corp. v. New York City Econ. Dev. Corp.*, No. 08 CIV. 3810 (RJS), 2011 WL 2226625, at *3 (S.D.N.Y. June 1, 2011) (internal quotation marks omitted) (quoting *Sassower v. Abrams,* 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993)). "When a defendant raises *res judicata* or collateral estoppel as an affirmative defense and 'it is clear from the face of the complaint, and consideration of matters which the court may take judicial notice of, that the plaintiff's claims are barred as a matter of law,' dismissal under Rule 12(b)(6) is appropriate." *Id.* (quoting *Conopco, Inc. v. Roll Int'l,* 231 F.3d 82, 86 (2d Cir. 2000)).

Under both Florida state law and federal law, *res judicata* precludes the Claimant from re-litigating the same claims that were actually litigated, or could have been litigated, against Ditech in the Florida State Court Foreclosure Action and/or Second Bankruptcy Adversary Proceeding. *See Zikofsky v. Marketing 10, Inc.,* 904 So.2d 520, 523 (Fla. 4th Dist.Ct.App.2005) ("[A] court looks not only at the causes of action actually raised in the first suit, but also every other matter which the parties might have litigated and had determined, within the issues as framed by the pleadings or as incident to or essentially connected with the subject matter of the first litigation.") (internal quotations omitted); *In re Residential Capital, LLC*, No. 12-12020 (MG), 2015 WL 1567131, at *2 (S.D.N.Y. Apr. 3, 2015) (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)) ("The doctrine of res judicata precludes the same parties from litigating claims in a

subsequent suit based on the same cause of action if there has been a final judgment on those claims.").

<u>The Florida State Court Foreclosure Action</u>

"[T]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred . . . ."  *New York v. Sokol (In re Sokol)*, 113 F.3d 303, 306 (2d Cir. 1997) (citing 28 U.S.C. § 1738). *See also Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984) ("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.").  Although the Court construes the Dixon Claims liberally, the pro se Claimant is not exempt from the rules of *res judicata. See Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir.1981) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law. One who proceeds pro se with full knowledge and understanding of the risks involved acquires no greater rights than a litigant represented by a lawyer, unless a liberal construction of properly filed pleadings be considered an enhanced right.") (internal citations omitted); *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983) (Petitioner [appearing pro se] is not, however, excused "from compliance with relevant rules of procedural and substantive law.").

The Final Florida State Court Foreclosure Judgement of Foreclosure was entered by the Florida State Trial Court and was affirmed on appeal by the Florida State Supreme Court. In Florida, *res judicata* applies where there is a judgment on the merits in a prior suit and bars subsequent litigation where there is: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality [or capacity] of the persons for or against whom the claim is made." *Certex USA, Inc. v. Vidal*, 706

F. Supp. 2d 1291, 1293 (S.D. Fla. 2010); *The Fla. Bar v. St. Louis,* 967 So.2d 108, 119

(Fla.2007); *Petillo v. World Savings Bank, FSB*, No. 6:08–cv–1255–Orl–19GJK, 2009 WL

2178953, at *4 (M.D.Fla. July 21, 2009). "Importantly, [in Florida] the doctrine of res judicata

not only bars issues that were raised, but it also precludes consideration of issues that could have

been raised but were not raised in the first case." *Fla. Dep't of Transp. v. Juliano,* 801 So. 2d

101, 105 (Fla. 2001). *Res judicata* applies to affirmative defenses, as well as all defenses and

compulsory counterclaims that were, or could have been, raised in the prior matter. *Liberty*

*Transp., LLC v. Banyan Air Servs., Inc.,* 982 So. 2d 1231, 1232 (Fla. Dist. Ct. App. 2008) ("If

the elements of res judicata are satisfied, claims, defenses, and compulsory counterclaims are all

barred in a subsequent action.").

In the context of a foreclosure action, any and all issues related to the amount, validity,

and entitlement to foreclose on a debt must be raised in the foreclosure proceeding or they will

be barred by *res judicata*. *In re Collado*, Nos. 09–32049–BKC–AJC, 10–3019–BKC–AJC–A,

2010 WL 3282595, at *2 (Bankr. S.D. Fla. Aug. 13, 2010) ("Litigation of defenses and

compulsory counterclaims, are part and parcel to the mortgage foreclosure action wherein the

amount, validity, and entitlement to foreclose the debt were adjudicated. Thus, given that a final

judgment has been entered by a State Court of competent jurisdiction, based on the doctrines of

res judicata and collateral estoppel, Collado cannot now state a cause of action for fraud which

should have been asserted by way of a compulsory counterclaim and or affirmative defenses in

the foreclosure proceeding.").

The elements of *res judicata* under Florida law are satisfied here. As to the first

element—identity of the thing sued for—courts look to whether both actions are grounded in

"the same loan transaction, mortgage, and residential property." *Beepot v. J.P. Morgan Chase*

*Nat. Corp. Servs., Inc.,* 57 F. Supp. 3d 1358, 1371 (M.D. Fla. 2014), *aff'd sub nom. Beepot v. JP Morgan Chase Nat. Corp. Servs., Inc.,* 626 F. App'x 935 (11th Cir. 2015); *Nivia v. Nationstar Mortg., LLC,* Case No., No. 13–Civ–24080, 2014 WL 4146889, at *4 (S.D. Fla. Aug. 21, 2014) ("The mortgage loan at issue in the instant suit is the same mortgage loan that was foreclosed in the state court foreclosure action."). The Dixon Claims and the Response make clear that all of the claims arise from the Florida State Court Foreclosure Action. The Claimant takes issue with the Final Florida State Court Foreclosure Judgment. In support of the Dixon Claims, the Claimant asserts that Ditech lacks standing to foreclose on the Property. *See* First Dixon Claim at 16; Duplicate Dixon Claim at 13. The Claimant also seeks monetary damages for the injuries he allegedly suffered as a result of the Florida State Court Foreclosure Action and entry of the Final Florida State Court Foreclosure Judgment. *See* First Dixon Claim at 1. Claimant did not seek monetary damages against Ditech in the Florida State Court Foreclosure Action and he is barred by the doctrine of *res judicata* from asserting the claim herein because he could have asserted the claim in Florida. *See Puff 'N Stuff of Winter Park, Inc.,* 945 F. Supp. 1523, 1529 (M.D. Fla. 1996) ("Simply because some remedies sought in the instant case are different from those sought in state court does not impede the operation of claim preclusion presently"). Because the Dixon Claims are premised on the same underlying conduct—the Claimant's default under the Mortgage, the Florida State Court Foreclosure Action and Foreclosure Sale of the Property—the Claimant is barred from seeking any remedy for wrongs allegedly arising out of the Florida State Court Foreclosure Action. *Id.*

As to the second element—the identity of the cause of action—courts look to "whether the facts or evidence necessary to maintain the suit are the same in both actions." *Tyson v. Viacom, Inc.,* 890 So. 2d 1205, 1209 (Fla. Dist. Ct. App. 2005). *Zikofsky v. Mktg. 10,* Inc., 904

So. 2d 520, 523 (Fla. Dist. Ct. App. 2005) ("[A]court looks not only at the causes of action actually raised in the first suit, but also at every other matter which the parties might have litigated and had determined, within the issues as [framed] by the pleadings or as incident to or essentially connected with the subject matter of the first litigation.") (internal citations and quotations marks omitted). As support for the First Dixon Claim, Claimant states that the basis of his $303,500 claim is "Home Sold $303,500" and "Personal Injury." *See* First Dixon Claim at 1. The Duplicate Dixon Claim states that its basis for seeking damages of $303,500 is "Real estate property." *See* Duplicate Dixon Claim at 2. In the Dixon Claims, the Claimant seeks damages equal to the amount paid for the Property at auction during the Florida State Court Foreclosure Action. *See* Ex. 9, Foreclosure Certificate of Sale. In the Response, the Claimant attacks the Florida State Court Foreclosure Action, including Ditech's standing to bring the action. *See* Response ¶¶ 8-24; Duplicate Dixon Claim at 6-9. As a matter of law, a Florida court cannot enter a foreclosure judgment without finding that the plaintiff has standing to foreclose. *McLean v. JP Morgan Chase Bank Nat'l Ass'n*, 79 So. 3d 170, 173 (Fla. 4th DCA 2012) ("A crucial element in any mortgage foreclosure proceeding is that the party seeking foreclosure must demonstrate that it has standing to foreclose."). As the Florida State Court Foreclosure Action was already adjudicated, the Florida State Trial Court necessarily found that Ditech had standing to foreclose. The Final Florida State Court Foreclosure Judgement is final and the Property was sold. The Claimant is foreclosed from reasserting the claim again or attacking the judgment through the claims resolutions process.

The third factor—identity of the parties—is satisfied. Ditech and the Claimant are parties to the Dixon Claims and are the same parties to the Florida State Court Foreclosure Action.

The fourth factor—identity of the quality in the person for or against whom the complaint is made—is also satisfied. In applying this factor, courts consider whether the "parties in the state action had the incentive to adequately litigate the claims in the same character or capacity as would the parties to the federal action." *McDonald v. Hillsborough County School Bd.*, 821 F.2d 1563, 1566 (11th Cir. 1987) (citing *Ford v. Dania Lbr. & Supply Co.,* 150 Fla. 435, 7 So.2d 594 (1942)). In the Dixon Claims, the Claimant explicitly asserts the same claims as those asserted in the Florida State Court Foreclosure Action—that Ditech acted unlawfully which harmed him in connection with its servicing of his mortgage. The Claimant litigated his claims in the Florida State Court Foreclosure Action, including whether Ditech had standing to foreclose and whether Ditech acted as servicer on the loan. Ditech and the Claimant were afforded the opportunity to raise defenses to protect their respective interests in the Property, which they did. The Claimant cannot relitigate those claims herein. *See Stockton v. Lansiquot*, 838 F.2d 1545, 1547 (11th Cir. 1988) (holding that the fourth *res judicata* factor is met when "[t]his same plaintiff sued the same defendants for relief on substantially the same claim, arising from the same circumstances, and raised the same underlying issues in the federal proceeding as he had previously raised in the state proceeding."); *Radle v. Allstate Ins. Co.,* 758 F. Supp. 1464, 1468 (M.D. Fla. 1991) ("The Court finds that [the fourth *res judicata* factor] has been met. These Plaintiffs sued the same defendants, or those in privity with them, for the same relief on substantially the same claims, arising from the same incident.").

<u>The Second Bankruptcy Adversary Proceeding</u>

In the Dixon Claims, the Claimant reasserts the causes of action he previously raised and resolved in the Second Bankruptcy Adversary Proceeding. In that action, the Claimant challenged Ditech's Proof of Claim filed in his bankruptcy case on the grounds that, among other

things, Ditech lacks standing to file a claim, lacks standing to foreclose on the Property, and lacks standing to receive payments on the Property. *See* Ex. 24, Second Bankruptcy Adversary Proceeding Complaint ¶¶ 13-17. The Florida Bankruptcy Court dismissed the Second Adversary Action and entered the Second Adversary Proceeding Final Judgment.

Federal law determines the preclusive effect of a federal judgment. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002); *PRC Harris, Inc. v. Boeing Co.,* 700 F.2d 894, 896 n.1 (2d Cir. 1983). Under federal law, "res judicata, or claim preclusion, holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Monahan v. N.Y.C. Dep't of Corr*., 214 F.3d 275, 284 (2d Cir. 2000) (internal quotation marks omitted). *Res judicata* "bars later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir.2007) (quoting *In re Teltronics Servs., Inc*., 762 F.2d 185, 190 (2d Cir.1985)). "[E]ven claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.,* 198 F.3d 85, 88 (2d Cir. 1999).

As a matter of law, final judgments in adversary proceedings are adjudications on the merits. *Lawrence Grp., Inc. v. Barton*, 262 B.R. 30, 32 (N.D.N.Y. 2001) ("The September 5, 2000, Memorandum–Decision and Order constituted a final judgment on the merits in the adversary proceedings. . . . Accordingly, the claim asserted here cannot be relitigated, as the same claim was previously litigated in the adversary proceedings"). With respect to the first prong of the *res judicata* test, the Second Bankruptcy Adversary Proceeding Final Judgment

operates as an adjudication on the merits. The second and third elements are satisfied as well because there is no dispute that the Florida Bankruptcy Court had jurisdiction to enter the Second Bankruptcy Adversary Proceeding Final Judgment, and that Ditech and the Claimant are parties to both the Second Bankruptcy Adversary Proceeding and the Dixon Claims.

The last element is also satisfied. The Claimant, through the Second Bankruptcy Adversary Proceeding, sought to collaterally attack the Florida State Court Foreclosure Action and Final Florida State Court Foreclosure Judgment by arguing that Ditech lacked standing to bring the Florida State Court Foreclosure Action and had engaged in a fraudulent scheme to conceal that fact from the Florida State Trial Court. *See* Ex. 24, Second Bankruptcy Adversary Proceeding Complaint ¶¶ 13-17, 22-28. The allegations in the Second Bankruptcy Complaint are substantively identical to those raised in support of the Dixon Claims. *See* First Dixon Claim at 4-6; Duplicate Dixon Claim at 6-9. Therefore, the Second Bankruptcy Adversary Proceeding also bars the Dixon Claims and constitutes sufficient grounds to disallow the claims. *Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.,* 652 F. Supp. 2d 463, 470 (S.D.N.Y. 2009) (It is "well settled that a court may dismiss a claim on res judicata or collateral estoppel grounds on a Rule 12(b)(6) motion.").

*          *          *          *

To summarize, the Dixon Claims are time barred because they were filed after the Bar Date lapsed. Moreover, and in any event, the Court lacks jurisdiction over those claims under the *Rooker-Feldman* doctrine, and the claims fail to state plausible claims for relief against Ditech because they are barred by application of the doctrine of *res judicata.* Therefore, the Court sustains the Objections and expunges the Dixon Claims. In doing so, the Court finds no merit to

the Claim Amendment Motion, the Evidentiary Hearing Scheduling Motion, and the Evidentiary Hearing Motion.

### **The Claim Amendment Motion**

On December 13, 2021, the Claimant filed his Claim Amendment Motion, wherein he requests that this Court allow him to file an amended proof of claim which would list "other claims against Ditech Financial LLC that were stayed in the Federal District Court for the Southern District of Florida under Case No. 19-cv-80022." Claim Amendment Motion at 1. In assessing the merits of a request for leave to file an amended claim, courts apply the standards applicable under Federal Rule 15 to motions to amend a complaint. *See* Fed. R. Civ. P. 15; *In re Ditech Holding Corp.,* No. 19-10412, 2021 WL 4530339, at *4 (Bankr. S.D.N.Y. Oct. 4, 2021). Rule 15 is made applicable herein by Bankruptcy Rule 7015.

At bottom, leave to amend a claim generally is freely given, except in cases in which it would be futile to do so. A proposed amendment to a claim is considered to be "futile" if the claim, as amended, fails to state a legally cognizable claim or fails to raise triable issues of fact. *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.,* 626 F.3d 699, 726 (2d Cir. 2010) ("Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact") (citing *Milanese v. Rust-Oleum Corp.,* 244 F.3d 104, 110-11(2d Cir. 2010)). Repleading a claim is futile when the defects in the claim are substantive, rather than the product of inartful or procedurally deficient pleading. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) (holding that a court did not err in denying a pro se litigant leave to amend because "[t]he problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.").

As set forth above, the Court expunged the Dixon Claims because they are barred by application of the doctrine of *res judicata*, they are time barred, and the Court lacks jurisdiction to grant the relief sought in the claims under the *Rooker-Feldman* doctrine. None of these defects can be cured by the amendment proposed by the Claimant. The defects are incurable and leave to amend is futile. *Lobaito v. Chase Bank*, 529 F. App'x 100, 102 (2d Cir. 2013) (holding that a district court did not err in denying a pro se litigant leave to amend where "the defects in his complaint were substantive, and leave to amend would have been futile.").

### The Evidentiary Hearing Motion and Evidentiary Hearing Scheduling Motion

In the Evidentiary Hearing Motion, Claimant requests that this Court set an evidentiary hearing on the First Dixon Claim, based on Federal Rule 60(b)(6). That rule is inapplicable for two reasons: (i) it permits courts to grant relief from a judgment and the Court lacks jurisdiction under *Rooker-Feldman* to grant the Claimant the relief he seeks from the Final Florida State Court Foreclosure Judgment; and (ii) the Clams Procedures Order establishes procedures for scheduling and conducting evidentiary hearings on proofs of claims. The Evidentiary Hearing Motion does not comply with that order. In the Evidentiary Hearing Scheduling Motion, the Claimant requests that this Court set a separate hearing date on the Evidentiary Hearing Motion. The Evidentiary Hearing Scheduling Motion and Evidentiary Hearing Motion are procedurally improper and run afoul of the Claims Procedures Order.

Under that order, the Plan Administrator and Consumer Representative have the option of scheduling the Claim Hearing as either a "Merits Hearing" (evidentiary hearing)  or a "Sufficiency Hearing" (a non-evidentiary hearing). Claims Procedures Order ¶ 3(iv)(a),(b). The Plan Administrator and Consumer Representative scheduled the hearing on the Dixon Claims as a Sufficiency Hearing. Under the Claims Procedure Order, the Claimant is not entitled to a

Merits Hearing unless he demonstrates at the Sufficiency Hearing that the Dixon Claims state

claims for relief under Rule 12(b)(6). He has failed to do so. For the reasons set forth above, the

Court finds that the Claimant has failed to plead facts demonstrating that the Dixon Claims state

plausible claims for relief against the Debtors. The Claimant is not entitled to a Merits Hearing

(i.e., an evidentiary hearing on the Dixon Claims).

## **Conclusion**

Based on the foregoing, the Court sustains the Objections and expunges the Dixon

Claims.[29] In addition, the Court denies the Claim Amendment Motion, the Evidentiary Hearing

Motion and the Evidentiary Hearing Scheduling Motion.

IT IS SO ORDERED.

Dated: New York, New York
       May 28, 2022

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge

---

[29]    The Court need not and will not consider the balance of the Plan Administrator and Consumer Representative's arguments in support of the Objections.