**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

NOT FOR PUBLICATION

------------------------------------------------------- x

*In re:*

Ditech Holding Corporation, *et al.*,

Debtors.[1]

:  
:  
:  
:  
:  
:  
:  
:  

Case No. 19-10412 (JLG)  
Chapter 11

(Jointly Administered)

------------------------------------------------------- x

**MEMORANDUM DECISION AND ORDER SUSTAINING THE TRUSTEE AND PLAN ADMINISTRATOR'S OBJECTION TO THE WALTERS CLAIM AND THE <u>ADDITIONAL CLAIMS AND DISALLOWING AND EXPUNGING THE CLAIMS</u>**

<u>**A P P E A R A N C E S :**</u>

JENNER & BLOCK LLP  
*Attorneys for Consumer Claims Trustee*  
919 Third Avenue  
New York, New York 10022  
<u>By:</u>    Richard Levin, Esq.

WEIL GOTSHAL & MANGES LLP  
*Attorneys for Plan Administrator*  
767 Fifth Avenue  
New York, New York 10153  
<u>By:</u>    Ray C. Schrock, P.C., Esq.  
       Sunny Singh, Esq.

WAYNE GREENWALD, P.C.  
*Attorneys for 800 Consumer Creditors*  
475 Park Avenue South—18th Floor  
New York, New York 10016  
<u>By:</u>    Wayne M. Greenwald, Esq.

---

[1]    The Debtors' *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1326, was confirmed, which created the Wind Down Estates. The Wind Down Estates, along with the last four digits of each of their federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573. References to "ECF No. __" are references to documents filed on the electronic docket in these Chapter 11 Cases.

CHRISTOPHER M. FERRARO, P.C.
*Attorneys for 800 Consumer Creditors*
925 S. Capital of Texas Highway, Suite B225
Austin, Texas 78746
By:   Christopher M. Ferraro, Esq.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

**Introduction**[2]

Stella Johnson, Bernadette Martinez, and Monique J. Scranton (collectively, the "Walters Claimants") jointly filed Proof of Claim No. 21367 (the "Walters Claim") in these Chapter 11 Cases as a purported class proof of claim on behalf of themselves and approximately 800 individuals in Mississippi and Texas (the "Consumer Creditors") who are listed in Exhibit A to the Rider to Proof of Claim (the "Creditor List").[3]   In it, each purports to assert a damage claim

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Objection of the Consumer Claims Trustee and the Plan Administrator to Claim No. 21367 of Stella Johnson, Bernadette Martinez & Monique J. Scranton*, or the Third Amended Plan, as applicable.

[3]   The Walters Claimants did not number the pages of the Walters Claim.  In citing to the claim, the Court cites to the electronic page number and, as appropriate, paragraphs on the page. The Walters Claim is a 3203-page document that consists of a three-page "Proof of Claim (Official Form 410)," as supported by:

Pages 4-8: "Backup Documentation"

Pages 9-32: "Rider to Proof of Claim," including Exhibit A consisting of the Creditor List.

Pages 33-369: *Roshonda Addison & Harry Howard v. Green Tree, et al.,* Circuit Court of Amite Co., MS No. 12-CV-0041-S.  Miscellaneous pleadings, correspondence, transcripts, and the Krisner Consulting "Construction Report (Built Conditions)" regarding the condition of Ms. Addison and Mr. Howard's home (283-369).

Pages 370-462: *Green Tree Servicing as Successor By Merger To Walters Mortgage Co. LLC v. Billy V. Brown & Gwendolyn Brimage,* Circuit Court of Simpson County, MS, Civil Action No. 2014-357. Miscellaneous pleadings and decision denying plaintiff's motion for summary judgment (459-462).

Pages 463-3203: Documents from The Ferraro Law Firm (the "Ferraro Law Firm Documents"), as purported counsel to various consumer claimants, consisting of:
    463-479: List of Clients represented by firm.

against the Debtors for wrongs allegedly committed by the Debtors' former affiliates, Jim Walter Homes, Inc., and Walter Mortgage Company, to each of them in connection with the construction and simultaneous financing of their homes.  *See* Walters Claim, ¶¶ 3–4.  Before the Walters Claimants filed the Walters Claim, the six individuals identified below (the "Additional Claimants") separately filed their own claims in these Chapter 11 Cases seeking damages from the Debtors for wrongs allegedly committed by Jim Walter Homes, Inc., and Walter Mortgage Company in connection with the construction and financing of their homes (the "Related Claims"). Each Additional Claimant is among the Consumer Creditors listed in the Creditor List.

The matters before the Court are the objections to the Walters Claim and to the Related Claims jointly filed by the Consumer Claims Trustee ("Trustee"), on behalf of the Consumer Creditor Recovery Trust established under the Debtors' confirmed Plan, and the Plan Administrator appointed under the Plan, on behalf of the Wind Down Estates established under the Plan.  As summarized below, and in notes 4–10, during the period of January through May 2020, the Trustee and Plan Administrator filed certain Omnibus Claim Objections which together

---

480-1994: Form document requests by Ferraro to Green Tree on behalf of individual clients.

1995-3203: Copies of three Mississippi Litigation and Mediation Requests; support for the third such request consisting of (i) list of claimants, and (ii) "initial construction defects summaries" for each such claimant.

encompassed all of the Related Claims ("the "Related Claims Objections"). Each Additional

Claimant responded to the objection to their claim(s) (the "Additional Claimants' Responses"):

| | |
|---|---|
| George Waters | Claim No. 60195[4] |
| Teresa Darty | Claims Nos. 1797,[5] 2502[6] |
| Stanley Harrison | Claim No. 60239[7] |
| James Miller | Claims Nos. 2552, 2559, 2574[8] |
| Ive McDonald | Claim No. 2630[9] |
| Mose and Betty Arrington | Claim No. 21622[10] |

On May 8, 2020, the Trustee and Plan Administrator jointly filed an objection to the claims

of the Walters Claimants (the "Walters Claim Objection" [11] collectively with the Related Claims

Objections, the "Objection"), and, in that objection, replied to the Additional Claimants'

Responses to the Related Claims Objections. The Walters Claimants did not respond to the

Walters Claim Objection, and the Additional Claimants did not file additional documents in

support of their claims. However, the Consumer Creditors filed a response to the Walters Claim

---

[4]   *Twenty-seventh Omnibus Objection*, ECF No. 1759.  *Response*, ECF No. 1886.

[5]   *Thirty-first Omnibus Objection*, ECF Nos. 1763.  *Response*, ECF No. 1887.

[6]   *Twenty-eighth Omnibus Objection*, ECF No. 1760.  *Response*, ECF No. 1887.

[7]   *Twenty-second Omnibus Objection*, ECF No. 1754.  *Response*, ECF No. 1888.

[8]   *Twenty-eighth Omnibus Objection*, ECF No. 1760.  *Response*, ECF No. 1889.

[9]   *Twenty-fourth Omnibus Objection*, ECF No. 1756.  *Response*, ECF No. 1890.

[10]   *Nineteenth Omnibus Objection*, ECF No. 1751.  *Response*, ECF No. 1891.

[11]   *Objection Of The Consumer Claims Trustee And The Plan Administrator To Claim No. 21367 of Stella Johnson, Bernadette Martinez & Monique J. Scranton*, ECF No. 2324.

4

Objection (the "Response").[12]    The Trustee and Plan Administrator filed a joint reply to the Response (the "Reply").[13]

The Response does not address the six Related Claims or Ms. Scranton's damage claim. In the Response, the Consumer Creditors mislabel the Walters Claim Objection as the "Consumer Claims Administrator's Objection to the 800 Creditors' Proof of Claim."  Response ¶ 1.  They contend that the only issue asserted in the Walters Claim Objection is that the Consumer Creditors' claims do not qualify as claims under section 363(o) of the Bankruptcy Code. *Id.* ¶ 2.  They say that the Court should overrule that objection because the Consumer Creditors' claims are based on consumer credit transactions squarely within the ambit of section 363(o), not on alleged construction defects, and because the claims are not barred by statutes of limitations. *Id.* ¶ 3. That Response is wide of the mark.  As explained below, the Court finds that the causes of action in the Walters Claim are barred by applicable statutes of limitations.  Moreover, the matters before the Court are the Trustee's and Plan Administrator's objections to the Walters Claim and Related Claims.  Those objections do not encompass the "800 Creditors' Proof of Claim" and do not address section 363(o) of the Bankruptcy Code.  Those matters are not before the Court.  In addition to filing the Walters Claim, the Walters Claimants filed a Motion for Class Certification.[14] That motion is not presently before the Court, and a class has not been certified in these cases.[15]

---

[12]    *800 Consumer Creditors' Response To The Consumer Claims Administrator's Objection To Their Claim*, ECF No. 3531.

[13]    *Reply Of The Consumer Claims Trustee And The Plan Administrator To The Response Of M. Scranton, S. Johnson And B. Martinez And "800 Consumer Creditors" To Objections To Their Proofs Of Claim (Claim Nos. 21367, 1745, 1797, 2502, 2552, 2559, 2574, 2630, 21622, 60195, 60239)*, ECF No. 3781.

[14]    *Motion by Monique Scranton, Stella Johnson, Bernadette Martinez, Individually and as Representative Claimants for 800 Consumer Creditors, Seeking Orders, Pursuant to Fed. R. Bankr. P. 7023, Certifying Them as a Class and Authorizing Their Prosecuting Their Class Proof of Claim as a Class Action with Point and Authorities*, ECF No. 2438.

[15]    Until a class is certified, the legal sufficiency of allegations in the class claim depends on only the named claimant:

At the request of the Trustee and Plan Administrator, and in accordance with the Claims Procedures Order,[16] the Court conducted a non-evidentiary "Sufficiency Hearing" to consider whether the Related Claims and claims of the Walters Claimants state claims for relief against the Debtors.  The legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[17]  As explained below, applying that standard, the Court disallows and expunges each Related Claim, and the claims of Stella Johnson, Bernadette Martinez and Monique J. Scranton since accepting all factual allegations asserted in support of the claims as true, drawing all reasonable inferences in the respective claimant's favor, and interpreting the respective claims and the responses to the objections to raise the strongest arguments that they suggest, the claims fail to state plausible claims for relief against the Debtors.

## **Jurisdiction**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

In order to maintain a class action, Plaintiffs must first establish that they have a valid claim with respect to the shares that they purchased.  If the named plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim.

*Goldberger v. Bear, Stearns & Co.*, No. 98 Civ. 8677, 2000 WL 1886605, at *1 (S.D.N.Y. Dec. 28, 2000); *accord In re Initial Pub. Offering Sec. Litig*, 214 F.R.D. 117, 122 (S.D.N.Y. 2002).

[16]    *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

[17]    *See* Claims Procedures Order ¶ 3(iv)(a). Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

### The Chapter 11 Cases

On February 11, 2019, Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates ("Debtors") filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court (the "Chapter 11 Cases"). The Debtors remained in possession and control of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019 at 5:00 p.m. (prevailing Eastern Time) as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[18] Thereafter, the Court extended the General Bar Date for consumer borrowers, twice, and ultimately to June 3, 2019 at 5:00 p.m. (prevailing Eastern Time).[19]

On September 26, 2019, the Debtors confirmed their Third Amended Plan,[20] and on September 30, 2019, that plan became effective.[21] The Plan Administrator is a fiduciary appointed under the Third Amended Plan who is charged with the duty of winding down, dissolving and liquidating the Wind Down Estates. *See* Third Amended Plan ¶¶ 1.130, 1.184, 1.186. In accordance with the Third Amended Plan, the Trustee is responsible for the reconciliation and

---

[18]    *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[19]    *See Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[20]    *See Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors*, ECF No. 1404.

[21]    *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

resolution of Consumer Creditor Claims and distribution of funds from the trust to holders of

Allowed Consumer Creditor Claims. *Id.* ¶ 1.41. The Plan Administrator, on behalf of each of the

Wind Down Estates, is authorized to object to all Administrative Expense Claims, Priority Tax

Claims, Priority Non-Tax Claims, and Intercompany Claims; and the Trustee has the exclusive

authority to object to all Consumer Creditor Claims. *See id.* ¶ 7.1.

**The Proofs of Claim**

The Related Claims

      Below, the Court provides a brief summary of the Related Claims.

George Waters

      On November 11, 2019, George Waters filed Proof of Claim No. 60195 as an administrative claim in an "undetermined amount." The basis of the claim is noted as "Customer Claims." Mr. Waters annexed no supporting documents to the claim. He is included in the Creditor List. He is also identified in the Ferro Law Firm Documents as the owner of a poorly constructed home—"[a]ge of house 15." *See* Walters Claim at 3118.

Teresa Darty

      Teresa Darty filed claims in these Chapter 11 Cases on May 21, 2019 (Proof of Claim No. 1797) and October 15, 2019 (Proof of Claim No. 2502).[22] In Claim No. 1797, Ms. Darty asserts a secured claim, but does not state the amount of the claim. She indicates that the "value of property" is $44,550.00. Ms. Darty filed Claim No. 2502 as an "Administrative Expense Claim" in the sum of $6,000 based on "the damage that I claimed on my proof of claims form, filed in July 2019 . . . [and] for damages done after February 11, 2019." She states that those alleged damages were caused by "mortgage and financing, interest rates." Claim No. 2502 at 1. Ms. Darty is included in the Creditor List. The Walters Claim does not annex any documents in support of Ms. Darty's claim.

Stanley Harrison

      On November 11, 2019, Stanley Harrison filed Proof of Claim No. 60239 as an administrative expense claim in an undetermined amount based on a "Customer Claim." Mr. Harrison annexed no supporting documents to the claim. Mr. Harrison is included in the Creditor List. The Walters Claim does not annex any documents in support of his claim.

---

[22] Ms. Darty also filed a secured claim in these cases on May 17, 2019 (Claim No. 1745). By order dated July 8, 2020, the Court sustained the Plan Administrator's objection to the claim and disallowed and expunged it. *See Order Granting Fifty-Fourth Omnibus Objection To Proof Of Claim (No Basis Consumer Creditor Claims)*, ECF No. 2652.

<u>James Miller</u>

On October 15, 2019, James Miller filed Proofs of Claim Nos. 2552, 2559 and 2574. The claims are identical. Each claim asserts an administrative expense claim in the sum of $140,000 on account of the Debtors' alleged breach of contract based on "unsatisfactory and incomplete work" in the construction of his home. Mr. Miller provides no documentation in support of his claims. He is included in the Creditor List. The Ferro Law Firm Documents annexed to the claim purport to demonstrate "[d]efects present in the residence" which is his home of 20 years ("Age of house 20 years").

<u>Ive McDonald</u>

On November 8, 2019, Ive McDonald filed Proof of Claim No. 2630 as an administrative expense claim in the sum of $5,000 based on monies owed to him for Ditech's alleged failure to report to the credit bureaus that he purchased his home. *See* Proof of Claim 2630 at 1. Mr. McDonald says that as a result of Ditech's failure to report the purchase, he has suffered and was denied the opportunity to purchase a vehicle without a co-signer. *See id.* He also says that Ditech failed to send correct billing statements reflecting the accurate amounts due. *Id.* at 1–2. Mr. McDonald did not attach any documents in support of the claim. He is included in the Creditor List, and the Walters Claim includes Ferro Law Firm Documents purporting to show alleged construction defects in his "house of 17 years." *See* Walters Claim at 2768.

<u>Mose and Betty Arrington</u>

On May 7, 2019, Mose and Betty Arrington (the "Arringtons") filed Proof of Claim No. 21622 as an unsecured claim in an undetermined amount based on "Customer Claims." They assert that the claim is entitled to priority treatment under section 507(a)(10) of the Bankruptcy Code. *See* Proof of Claim 21622 at 1–2. The Arringtons did not annex any documents in support of the claim. However, they are included in the Creditor List, and the Walters Claim annexes Ferro Law Firm Documents purporting to show alleged defects in the construction of the Arringtons' home, which was "[b]uilt, 1982." *See* Walters Claim at 2084–85.

<u>The Walters Claim</u>

In support of the Walters Claim, the Walters Claimants, as purported class representatives, say that they and the Consumer Creditors identified in the Creditor List are victims of a home construction/financing scheme pursuant to which: (i) the Consumer Creditors purchased homes constructed by Jim Walter Homes, Inc.; (ii) Jim Walter Homes, Inc. concealed construction defects in the homes; (iii) the Consumer Creditors financed their purchases through Walter Mortgage Company and were misled into signing loan documents that included 30-year notes in the inflated

principal amount equal to: (a) the actual disclosed principal amount of the loan, plus (b) a sum equal to the thirty years of interest that would accrue over the term of the note; and (iv) the Consumer Creditors pledged their homes as security for payment of the notes. *See* Walters Claim ¶¶ 3, 4, 10. They maintain that the promised (but not delivered) quality homes were the catalyst that fueled Ditech's financial scheme. They assert that Ditech's predecessors bundled the notes/mortgages and sold them to investors but retained the servicing and other rights related to the loans. *See id.* ¶¶ 5–6.

The Walters Claimants maintain that the Consumer Creditors are universally rural dwellers, racial minorities, of lower income, and "unsophisticated." *Id.* ¶¶ 7, 8. Thus, when they executed the loan documents, they did not understand what they were signing, that they were promised things they did not receive, and that most of the homes were poorly constructed and required frequent repairs that the homeowners could not afford to make. *Id.* They say that the Consumer Creditors are stuck with debts reflected in their home counties' property registers that vastly exceed the amount that they borrowed to purchase their homes—due to the fact that the full amount of the principal and thirty years of interest is reported as the debt's principal amount. *Id.* ¶¶ 9, 10.

Despite being labeled as two of the three purported class representatives, neither Ms. Johnson nor Ms. Scranton is identified as a Consumer Creditor on the Creditor List. Ms. Scranton is not listed in the Ferro Law Documents, although Ms. Johnson is identified in the documents as the owner of a poorly constructed home "[b]uilt 2007" and financed and constructed by Jim Walter Homes and Walter Mortgage Company, respectively. *Id.* at 2615. The Walters Claim represents that its "Exhibits 'A' 'B' and 'C' are copies of pleadings in proceedings commenced by Stella Johnson, Bernadette Martinez, and Monique J. Scranton, respectively. *See id.* ¶ 11. The Walters

Claimants are mistaken, because the only attachments to the claim are documents relating to two motions for summary judgment in Mississippi state courts brought on behalf of other parties. One was filed in an action brought by Roshonda Addison and Harry Howard (*id.* at 33), neither of whom is included in the Creditor List. That action was settled in August 2017.[23] The other was filed in an action brought jointly by Billy V. Brown, who is not on the Creditor List, and Gwendolyn Brimage, who is on the list. *See id.* at 370. That case was compelled to arbitration,[24] but the claimants never filed an arbitration complaint. Neither action is a class action.

**The Legal Claims Asserted in the Claims**

The Walters Claim, and by implication, the Related Claims, assert claims for monetary damages against the Debtors and their predecessors for alleged violations of various federal and state statutes relating to real estate financing, as follows:

(i) deceptive, predatory, and harmful housing scheme, targeting victims on the basis of race, color, and national origin, constituting "reverse redlining" and violating the federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq.,

(ii) the federal Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 et seq.,

(iii) the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.,

(iv) violations of the federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq.;

(v) willful and systemic violations of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.;

(vi) violation of MISS. CODE ANN. § 81-19-1, the Consumer Loan Broker Act;

---

[23]    *See* Agreed Order of Dismissal with Prejudice, *Green Tree Servicing, LLC v. Addison*, Circuit Court of Amite County, Miss., Cause No. 12-CV-0041-S (Jan. 4, 2018). A copy is attached as Exhibit B to the Objection.

[24]    *See* Opinion and Order and Final Judgment, *Green Tree Servicing, LLC v. Brimage*, United States District Court, Southern District of Mississippi, Civil Action No. 3:16-cv-458-WHB-JCG, ECF 11, 12 (Mar. 15, 2017). Copies of the Opinion and Order and Final Judgment are annexed as Exhibits C and D, respective, to the Walters Claim Objection.

(vii) violation of MISS. CODE ANN. § 81-18-55, the Mississippi S.A.F.E. Mortgage Act, and particularly MISS. CODE ANN. § 81-18- 55(1)(f);

(viii) infliction of emotional distress; and

(ix) unspecified other violations of federal and state law.

Walters Claim ¶¶ 13–14 (collectively, the "Damage Claims"); *see also* Response ¶¶ 5, 34–47.  The Walters Claimants "seek monetary compensation for various forms of damages and injuries[,]"(Walters Claim ¶ 14), and although "[t]he exact amount of each of the Class Creditor's claims is unknown to the [Walters Claimants] . . . [t]he [Walters Claimants] estimate that the total amount of the Class Creditors' claims is approximately eighty million dollars ($80,000,000)."  *Id.* ¶¶ 18–19.  Finally, they "seek on their own behalf and on behalf of the Class Creditors an allowed administrative priority claim for the reasonable attorneys' fees and costs in prosecuting this claim as authorized by [applicable state and federal law]."  *Id.* ¶ 22.

**The Objections to The Proofs of Claims**

The Related Claims

Each of the Related Claims is the subject of a Related Claims Objection.  *See supra* notes 4–10.  In those objections the Trustee and Plan Administrator seek to disallow and expunge the claims on various grounds, including that they lack sufficient documentation to support the validity of the claim and that there is no merit to the claim.  In addition, the Trustee and Plan Administrator contend that the claims are barred by the application of relevant statutes of limitation.  *See* Walters Claim Objection ¶¶ 21–23.

The Walters Claim

The Trustee and Plan Administrator seek to disallow and expunge the Walters Claim on the grounds that the Damage Claims are barred by application of the relevant statutes of limitations.  *See id.* ¶¶ 18, 21–34.  The longest statute of limitations applicable to the Damage Claims is five

years.[25]  In substance, the Trustee and Plan Administrator contend, and the Walters Claimants do

not deny, that any claim that accrued before February 11, 2014 (five years prior to the Petition

Date) is barred by the statute of limitations, except for a claim for which a Walters Claimant

commenced a state-court action within the applicable statute of limitations that was still pending

on the Petition Date.   The Walters Claim does not identify any such action.   The documents

---

[25]    The Statutes of Limitations applicable to the Damage Claims, are as follows:

Federal Fair Housing Act—Two-year statute of limitations. 42 U.S.C. § 3613(a). *See Garcia v. Brockway*, 526 F.3d 456 (9th Cir.), *cert. denied*, 555 U.S. 1069 (2008) (plaintiffs required to bring private civil action for failure to properly design and construct within two years of completion of construction phase).

Federal Equal Credit Opportunity Act—Five-year statute of limitations. 15 U.S.C. § 1691e(f).

Federal Truth in Lending Act—One-year statute of limitations running from the date of the violation, but some violations carry a three-year limitations period. 15 U.S.C. § 1641(e).

Real Estate Procedures Settlement Act—One-year or three-year statute of limitations, depending on the nature of the violation. 15 U.S.C. § 2614.

Fair Debt Collection Practices Act—One-year statute of limitations. 15 U.S.C. § 1692k(d).

Mississippi Consumer Loan Broker Act—The statute of limitations for an action under the Mississippi Consumer Loan Broker Act is governed by the general Mississippi statute of limitations for "actions not otherwise specifically provided for," MCA § 15-1-49(1), which is three years.

Mississippi S.A.F.E. Mortgage Act, and particularly MCA §81-18-55(1)(f)—The Mississippi S.A.F.E. Mortgage Act, and particularly MCA §81-18-1 et seq., is repealed effective July 1, 2020. However, the repeal date has previously been extended by the Mississippi legislature. Assuming it is extended again and so would apply to the Walters Claim, the statute of limitations would be three years—the same as for violation of the Consumer Loan Broker Act.

Infliction of emotional distress—The statute of limitations for negligent infliction of emotional distress is three years. MCA § 15-1-49(1); *Bristow v. Baskerville*, 2010 U.S. Dist. LEXIS 129131 (S.D. Miss. Dec. 6, 2010), *vacated*, 2011 U.S. Dist. LEXIS 41860 (S.D. Miss. Apr. 12, 2011). For intentional infliction of emotional distress, the period is also three years. *Guthrie v. J.C. Penney Co.,* 803 F.2d 202 (5th Cir. Miss. 1986); *CitiFinancial Mortg. Co. v. Washington*, 967 So. 2d 16 (Miss. 2007) (one year from time of loan, for action against lender for misrepresentations or omissions at time of loan).

annexed to the Walters Claim show that Ms. Johnson's house was built in 2007 (*id.* at 2615), and Ms. Martinez's house was built in 2008 (*id*. at 2750); but there is nothing that shows when Ms. Scranton's claim might have accrued.  The Trustee and Plan Administrator assert that nothing in the Walters Claim demonstrates or even alleges that the Damage Claims accrued later than February 11, 2014.  Moreover, they maintain that the Related Claims relate to houses built between 1982 and 2004.  Accordingly, the Trustee and Plan Administrator assert that the Walters Claim and Related Claims are barred by their respective statutes of limitations.

In their Response, the Consumer Creditors contend that the statutes of limitations do not bar the Walters Claim because the Debtors' actions give rise to continuing torts under federal and Mississippi state law that toll the statutes of limitations.  Additionally, they assert that application of the "discovery rule" (or "layman's test") and principles of "fraudulent concealment" likewise toll the running of the statutes of limitations.  Finally, they contend that at a minimum, genuine issues of material fact relating to the application of statutes of limitations are present, and, under Mississippi law, limitations are an issue for the jury to decide.  *See* Response ¶¶ 48–62.

**The Claim Objection Hearing**

Under the Claim Procedures Order, a properly filed and served response to a claim objection gives rise to a "Contested Claim" to be resolved at a Claim Hearing.  *See* Claim Procedures Order ¶ 3(iv).  Where, as here, the Trustee and Plan Administrator argue that the Contested Claims, i.e., the Walters Claim and Related Claims, fail to state claims for relief, the Court conducts a non-evidentiary "Sufficiency Hearing."  *Id.* ¶ 3(iv)(a), (b).  The legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for

failure to state a claim upon which relief may be granted under Rule 12(b)(6). *Id.* ¶ 3(iv)(a). The Court conducted a Sufficiency Hearing on the Walters Claim and Related Claims.[26]

### Applicable Legal Standards

Under section 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The filing of a proof of claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bank. P. 3001(f). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See, e.g.*, *Rozier v. Rescap Borrower Claims Tr. (In re Residential Capital, LLC)*, 15 Civ. 3248, 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 09-50026, 2012 WL 1886755, at *3 (S.D.N.Y. May 12, 2012); *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd sub nom. Peter J. Solomon Co., L.P. v. Oneida, Ltd.*, No. 09-cv-2229, 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010). Section 502(b) sets forth the grounds for disallowing a properly filed proof of claim. *See* 11 U.S.C. § 502(b); *see also Travelers Cas. and Sur. Co. of Am. v. Pac. Gas and Elec. Co.*, 549 U.S. 443, 449 (2007) ("But even where a party in interest objects [to a claim], the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b)").

In filing the Objections, the Trustee and Plan Administrator initiated contested matters. *See* Fed. R. Bankr. P. 3007 advisory committee's notes (1983) ("The contested matter initiated by an objection to a claim is governed by Rule 9014 . . . ."); *see also Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs., Inc.)*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter").

---

[26]    *Transcript Regarding Hearing Held on 1/20/2022*, ECF No. 3876 (Hr'g Trans.).

Bankruptcy Rule 9014 governs contested matters. The rule does not explicitly provide for the application of Bankruptcy Rule 7012. However, Bankruptcy Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply." Fed. R. Bankr. P. 9014. The Court did so here since the Claims Procedures Order states that the legal standard of review the Court applies at a Sufficiency Hearing is equivalent to the standard applied by the Court under Rule 12(b)(6) on a motion to dismiss for failure to state a claim upon which relief could be granted. *See* Claim Procedures Order ¶ 3(iv)(a); *see also In re 20/20 Sport, Inc.*, 200 B.R. 972, 978 (Bankr. S.D.N.Y. 1996) ("In bankruptcy cases, courts have traditionally analogized a creditor's claim to a civil complaint [and] a trustee's objection to an answer . . . .").

In applying Rule 12(b)(6) to the Walters Claim and Related Claims, the Court assesses the sufficiency of the facts alleged in support of the claims in light of the pleading requirements under Rule 8(a) of the Federal Rules of Civil Procedure.[27] Rule 8(a)(2) states that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). To meet that standard, the claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*")). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678; *accord Twombly*, 550 U.S. at 570. In considering whether that standard is met for a particular claim, the court must assume the truth of all material facts alleged in support

---

[27]    Rule 8 is incorporated herein pursuant to Bankruptcy Rule 7008.

of the claim and draw all reasonable inferences in the claimant's favor.  *See ATSI Commc'ns, Inc.*

*v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

## Discussion

As an initial matter, on the face of the documents, the claims of the Walters Claimants are

time-barred.  They assert claims under Mississippi state law for violations of MISS. CODE ANN.

§§ 81-19-1 and 81-18-55, and for infliction of emotional distress—these causes of action each

carry a three-year statute of limitations. *See supra* note 23.  The claimants also assert claims under

five federal statutes: FHA, ECOA, TILA, RESPA, and FDCPA.  The longest applicable federal

statute of limitations is five years, which applies to the ECOA claims.  *Id.*  All the houses in this

case were built and financed between 1982 and 2009.  Walters Claim at 2061–3203.  The Walters

Claim alleges no activity by Ditech or its predecessor (other than servicing loans) after 2009,

approximately ten years before the February 11, 2019 petition date.  Accordingly, on the face of

the Walters Claim, all the federal and state claims are time-barred.  The Consumer Creditors assert

that the apparent time-bar is not fatal to those claims, since the asserted harms give rise to

continuing torts under federal and Mississippi state law, and application of the "discovery rule"

and principles of "fraudulent concealment" tolls the running of the statute of limitations.

Accordingly, the Court evaluates the claims in light of those asserted exceptions to the facial

time-bar.

The Related Claims

The Additional Claimants filed what are essentially identical responses to the Related

Claims Objections,[28] in which they do not provide substantive responses to the objections.  They

have not attempted to demonstrate that the Related Claims state plausible claims for relief against

---

[28]    In discussing the objections to the Related Claims, the Court will cite to the Darty Response.

the Debtors. Rather, they "oppose[] the Objection[s] because [they are] part of a class of consumers that have already filed a proof of claim" (citing the Walters Claim). *See, e.g.*, Darty Response ¶ iii. Further, they assert that "[their] claim[s] were apparently filed individually and illustrate why adjudicating these claims as a class is a much more efficient resolution." *Id.* Finally, they maintain that "[t]he documents that [they] will rely upon are included as exhibits in the [Walters Claim]" and that "[they] will supplement individually, if required." *Id.* ¶ iv. Likewise, in the Response, the Consumer Creditors do not address the substance of the Related Claims. Rather, they assert, in essence, that the Court should disregard, not expunge, the Related Claims. *See* Response ¶¶ 63, 65. They say that the Court should disregard the Arrington, Harrison, McDonald, Miller, and Waters claims because "[t]hese claims were misfiled before the creditors were aware that current counsel would represent them along with the remaining [Consumer Creditors]." Response ¶ 63. They urge the Court to disregard Ms. Darty's claims because "current counsel was unaware that these claims were to be filed and Darty expects to be part of the [Consumer Creditors'] claims rather than pursuing her claims independently." Response ¶ 65. Neither purported excuse provides grounds for the Court to disregard the filed claims. Moreover, it appears that the Arringtons, Harrison, McDonald, Miller and Waters were represented by counsel when they filed their claims.[29]

Neither the Additional Claimants nor the Consumer Creditors provided substantive responses to the Related Claims Objections. They have not attempted to demonstrate that the Related Claims state plausible, timely filed claims for relief against the Debtors. The claims plainly fail to do so. Accordingly, the Court sustains the Related Claims Objections and disallows

---

[29] *See* Letters of Representation annexed to the Walters Claim at 508 (Arrington), 1058 (Harrison), 1423 (McDonald), 1461 (Miller), 1893 (Waters).

and expunges those claims, subject only to possible participation in any recovery of the class, if the Court certifies the class and allows the class claim.

<u>The Walters Claim</u>

Ms. Scranton did not respond to the objection to her claim.  The Response does not provide a substantive response to the claim or any support for the claim.  As noted, Ms. Scranton is not identified as a Consumer Creditor on the Creditor List, and is not listed in the Ferro Documents.  The Walters Claim fails to allege any facts in support of the Scranton claim.  The Court grants the Trustee's and Plan Administrator's objection to the claim, and disallows and expunges it, subject only to possible participation in any recovery of the class—if the class is certified and a class claim is allowed.

In sanctioning the Claim Objections Procedures, the Court approved a form of the Notice of Omnibus Objection (the "Omnibus Objection Notice").  *See* Claim Procedures Order Ex. 1.  In part, the Notice states that a claimant's response to an objection, if any, "must contain at a minimum the following . . . (iv) all documentation or other evidence of the Claim, to the extent not included with the Proof of Claim previously filed with the Bankruptcy Court, upon which you will rely in opposing the Objection . . . ."  *Id.*  As support for their Response, the Consumer Creditors annexed copies of miscellaneous documents, including portions of the transcripts of depositions of individuals taken in an arbitration proceeding and state court actions (Walters Claimants' Response Exs. A, B, D, & E),[30] a First Amended Complaint for Arbitration (the

---

[30]    Those transcripts are:

Deposition of Joe Kelly, *Crosby v. Green Tree Servicing LLC, et al.*, Circuit Court of Smith County, Mississippi Civil Action No. 2015-92 (Ex. A).

Deposition of Sally A. Leon, *Green Tree Servicing LLC v. Roshonda Addison and Harry Howard,* Circuit Court of Amite County, Mississippi, Civil Action No. 12-CV-0041-S (Ex. B).

"Martinez Arbitration Complaint") filed by Bernadette Martinez against "Ditech, Inc. Successor

By Merger To Walter Mortgage Company LLC" and others (*id.* Ex. C),[31] a copy of a hand-written

letter from Stella Johnson to the Trustee's counsel (*id.* Ex. F), and an order denying summary

judgment in a state court proceeding not involving any of the Claimants (*id.* Ex. G).[32]   At the

Hearing, Consumer Creditors' counsel asserted that, in responding to the Walters Claim Objection

(and as purportedly authorized by the Notice of the Claim Objection), the creditors "painstakingly

set out the details and facts underlying [their] claims" and in doing so "incorporated, by reference,"

the Martinez Arbitration Complaint.  *See* Hr'g Trans. 33:12–17.  He says that the complaint was

filed in September 2019 and "sets out in meticulous detail how Ms. Martinez was defrauded by

Ditech.    There's even a section of the complaint that says, 'How Ms. Martinez was

Defrauded' . . . ." *Id.* at 33:19–23.

There is little overlap between the Walters Claim and the Martinez Arbitration Complaint.

The latter includes twenty-two claims for relief, sixteen of which are not included in the Walters

---

Deposition of Roshonda Addison Cotton, *Green Tree Servicing LLC v. Roshonda Addison and Harry Howard,* Circuit Court of Amite County, Mississippi, Civil Action No. 12-CV-0041-S (Ex. D).

Deposition of Jeanatta Brown, JAMS Arbitration Case No. 14440005054 (Ex. E).

[31]   *Martinez v. Ditech, Inc. Successor by Merger to Walter Mortgage Company, LLC.*   In the Arbitration Complaint Ms. Martinez purports to assert general money damage claims against Ditech predicated on Civil conspiracy (Count Two), Negligence (Count Three). Gross Negligence (Count Four), Negligent Hiring (Count Five), Negligent Misrepresentation (Count Six), Fraudulent Inducement/Fraudulent Concealment (Count Seven), Fraud (Count Eight), Breach of Contract (Count Eight [sic]), Breach of Covenant of Good Faith and Fair Dealing (Count Nine), Breach of Implied Warranty (Count Ten), Agency (Count Eleven),  Respondiat Superior (Count Twelve), Intentional Infliction of Emotional Distress (Count Thirteen), Unjust Enrichment (Count Fourteen), Wrongful Foreclosure (Count Fifteen), Violation of the Equal Credit Opportunity Act (Count Sixteen), Violations of the Fair Housing Act (Count Seventeen), Violations of the Truth-in-Lending Act (Ability to Repay) (Count Nineteen [sic]), Violation of the Truth-in-Lending Act (Pre-Loan Counseling) (Count Twenty), Violation of the Truth-in-Lending Act (Mandatory Disclosure) (Count Twenty-One), Violation of the Truth-in-Lending Act (Appraisal) (Count Twenty-Two).

[32]   Order Denying Plaintiff's Motion for Summary Judgment and Granting Defendant Brimage's Motion for Leave, *Green Tree Servicing LLC, Successor By Merger To Walter Mortgage Company, LLC. v. Billy Y. Brown and Gwendolyn Brimage*, Cause No. 2014-357 (Circuit Court of Simpson County, Mississippi Aug. 2, 2016).

Claim, and it does not include the Mississippi state statutory claims that are in the Walters Claim. Moreover, in the complaint, Ms. Martinez seeks general money damages, punitive damages, attorneys' fees and expenses, and other costs and expenses, as well as the imposition of a constructive trust, and an injunction staying ejectment/eviction proceedings against her. *See* Martinez Arbitration Complaint ¶¶ 154–70. Those claims and the evidence in support of the claims are not alleged in support of the Walters Claim. Still, at the hearing, counsel took the position that in annexing the Martinez Arbitration Complaint to their Response, the Consumer Creditors effectively amended the Walters Claim to include all of the allegations of fact and law contained in the Martinez Arbitration Complaint, and that they were permitted to do so under the Claims Objections Procedures. Hr'g Tr.42:23–43:1 ("Well, Your Honor, excuse me, but the claims hearing procedure says just that. We shall submit all documentation or other evidence upon which we rely in opposing the objection."). Moreover, counsel contended that the standard to be applied in resolving the Walters Claim Objection is not the standard applied to Rule 12(b)(6) motions. Rather, it is whether "we stated a claim with particularity [and] the answer to that is unquestionably, yes. Ms. Martinez, I need to say, is one of the representatives' named plaintiffs, here . . . ." 33:19–34:1. The Court finds no merit to those contentions.

First, in accordance with the Claims Procedures Order, the Court conducted a Sufficiency Hearing on the Walters Claim. In resolving the Walters Claim Objection, the Court will apply the standards applicable to Rule 12(b)(6) motions, counsel's contentions to the contrary notwithstanding. It is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). "To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief." *Morgan*

*Distrib. Co v. Unidynamic Corp.*, 868 F.2d 982, 995 (8th Cir 1989) (citation omitted). The plain

language of the Omnibus Objection Notice that counsel relies on does not provide otherwise.  The

Court construes that language in light of the well-settled standards governing Rule 12(b)(6)

motions. In resolving the Walters Claim Objection, the Court will not consider the facts and legal

theories introduced in the Martinez Arbitration Complaint.  *See Lim v. Radish Media, Inc.,* No. 21

Civ. 4379, 2022 WL 2292768, at *5 n.5 (S.D.N.Y. June 24, 2022) ("However, the Court cannot

consider allegations raised for the first time in a brief opposing the motion to dismiss because 'it

is axiomatic that a complaint may not be amended by the brief in opposition to a motion to

dismiss.'" (quoting *Kirya Joel All. v. Vill. of Kiryas Joel*, No. 11 Civ. 3982, 2011 WL 5995075, at

*5 (S.D.N.Y. Nov. 29, 2011))); *Palm Beach Mar. Museum, Inc. v. Hapoalim Sec. USA, Inc.*, 810

F. App'x 17, 20 (2d Cir. 2020) (summary order) ("[W]e find that the District Court's dismissal of

the complaint was proper because a complaint may not be amended by advocating a different

theory of liability in an opposition brief wholly unsupported by factual allegations in the

complaint."); *Aaronson v. Kellogg Co.*, 837 F. App'x 850, 850–51 (2d Cir. 2021) (summary order)

(holding that a claim first asserted in an opposition to a motion to dismiss was not "validly

asserted").

The  objection  to  the  Johnson  and  Martinez  claims  underlying  the  Walters  Claim  is

narrowly tailored, as the Trustee and Plan Administrator contend that those claims are barred by

statutes of limitations.  "Although the statute of limitations is ordinarily an affirmative defense that

must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6)

motion if the defense appears on the face of the complaint."  *Ellul v. Congregation of Christian

Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014); *see also Ghartey v. St. John's Queens Hosp.*, 869

F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a

statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss."). The same holds true for a proof of claim. "The claims allowance process of the Bankruptcy Code contemplates that time-barred claims may be filed and expressly preserves the statute of limitations as a defense and a ground for disallowance of the claim." *In re Hess*, 404 B.R. 747, 750–51 (Bankr. S.D.N.Y. 2009) (quoting *Simpson v. PRA Receivables Mgmt., LLC (In re Simpson)*, No. 08-137, 2008 WL 4216317, at *2 (N.D. Ala. Aug. 29, 2008)). Section 502(b)(1) requires disallowance of a claim that is unenforceable under applicable non-bankruptcy law. A claim that is barred by the applicable statute of limitations is barred and subject to disallowance. *See In re Brill*, 318 B.R. 49, 53 (Bankr. S.D.N.Y. 2004) ("A challenged claim will not be allowed by the bankruptcy court if the claim is barred by the applicable statute of limitations."); *B-Real, LLC v. Chaussee (In re Chaussee)*, 399 B.R. 225, 240 n.16 (B.A.P. 9th Cir. 2008) ("Because the statute of limitations is an affirmative defense, a debtor is indeed burdened by the requirement that an objection be filed to a proof of claim that is, on its face, clearly time-barred.").

The Consumer Creditors do not dispute that a valid statute of limitations defense would require the disallowance of the Walters Claim, and they do not dispute the applicable statutes of limitations set forth in the Walters Claim Objection.[33] However, as noted, they contend that the statute of limitations does not bar the claims because the Debtors' actions give rise to continuing torts under federal and Mississippi state law, and that application of the "discovery rule" and principles of "fraudulent concealment" tolls the running of the statute of limitations. The Court considers those matters below.

---

[33] As support for the Claim, the Consumer Creditors' Response asserts that the Walters Claim is based on damages claims under the following federal and Mississippi state statutes: Fair Housing Act, 42 U.S.C. § 3601 et seq., the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq., the Truth in Lending Act, 15 U.S.C. § 1601 et seq.; and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., the Mississippi Consumer Loan Broker Act, Miss. Code Ann. § 81-19-1 (2022), and the Mississippi S.A.F.E. Mortgage Act, *Id.* § 81-18-55.

## I.      The Continuing Violation Doctrine

The Consumer Creditors label Ditech's actions as a "continuing tort."  They say that Ditech's alleged "consumer credit scheme" is "outside the statute of limitations" because "[e]ach monthly mortgage statement and payment obtained therefrom continues to wrongfully enriching [sic] Ditech and constitutes a continuing violation."  Response ¶ 49.  The Court considers that matter below.

Federal Law

Under the continuing violation doctrine, a court can allow recovery for violations outside the applicable limitations period if those violations are so closely related to violations within the limitations period that they can be regarded as a single continuing violation.  *Lucente v. Cnty. Of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020).  "Where, by contrast, plaintiffs complain of 'discrete acts' separated in time, the usual limitations rule applies."  *Desuze v. Ammon*, 990 F.3d 264, 271 (2d Cir. 2021) (quoting *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015)).  Notably, "courts in the Second Circuit 'have been loath to apply [the continuing violation doctrine] absent a showing of compelling circumstances.'"  *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 292 (S.D.N.Y. 2011) (alteration in original) (quoting *Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006)).  To allege a continuing violation, "a plaintiff must identify a specific act that is discriminatory and that occurred within the limitations period."  *Johnson v. Wells Fargo Bank, N.A. (In re Johnson)*, No. 13-1445, 2014 WL 4197001, at *14 (Bankr. E.D.N.Y. Aug. 22, 2014) (holding that a "monthly payment obligation" on a debtor's home loan was not alleged to arise "from a specific discriminatory act . . . within the limitations period, or how this payment obligation was an act in violation of the FHA's proscriptions against discriminatory lending.").

The Consumer Creditors say that the doctrine applies to the federal law claims asserted by Ms. Johnson and Ms. Martinez. It is undisputed that the longest applicable federal statute of limitations in this action is five years. It is also undisputed that the harms the claimants complain of arise from actions taken by Ditech and its predecessors in interest regarding the servicing and/or origination of the loans.   Response ¶¶ 4–13, 17–33.   What is disputed is whether the act of collecting monthly mortgage payments constitutes a continuing violation or is merely the lingering effect of past activity. The Walters Claimants raise allegations of discrimination, redlining, and improper mortgage terms, which they say occurred after 2009, ten years before the Petition Date. At the Sufficiency Hearing, Consumer Creditors' counsel argued that the claims flow from the "build the home of your dreams" scheme peddled by Ditech.  Hr'g Trans. at 31:19–32:3.   The Consumer Creditors maintain that under *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982), the monthly servicing of the loan constitutes a continuing violation sufficient to toll the applicable statute of limitations.  Response ¶ 51.

*Havens Realty Corp.* involved a class action asserting various forms of discriminatory housing practices by Havens Realty Corp., including "racial steering" in violation of section 804 of the FHA.[34]  *Id.* at 367.  An organization called Housing Opportunities Made Equal (HOME), sent out two testers, one white and one black, to determine whether Havens practiced racial steering.  *Id.* at 368–69.  They found that it did.  *Id.*  Havens told the black tester that no apartments were available, but it told the white tester that there were vacancies.  *Id.*  A few months later, a black prospective tenant inquired about renting an apartment.  *Id.*  He was told that there were no apartments available, despite the fact that there were unoccupied units.  *Id.*  At the time, a 180-day

---

[34]    Section 804 is now codified at 42 U.S.C. § 3604.

limitation period applied to the claims under the FHA.[35]  *Id.* at 369–70.  By the time the complaint

was filed, the incidents where the black tester was denied housing were more than 180 days past,

and only the prospective tenant's denial was within the limitations period.  *Id.*  The defendant

moved to dismiss the claims against the black tester, the white tester, and HOME on the grounds

that (i) these plaintiffs lacked standing, and (ii) their claims were barred by the statute of

limitations, since the acts taken against the testers occurred outside the statute of limitations.[36]  *Id.*

at 369.  The district court granted the motion on those grounds.  *Id.*  On appeal, the Fourth Circuit

reversed and remanded the case, determining that (i) the testers and HOME had standing because

they were harmed by the landlord's discriminatory actions, and (ii) the discriminatory acts against

the testers and HOME were not outside the statute of limitations, because they formed one

longstanding continuing violation that had persisted until the prospective tenant's denial within

180 days of the complaint.  *Coles v. Havens Realty Corp.*, 633 F.2d 384, 392 (4th Cir. 1980).  The

Supreme Court granted Havens's petition for certiorari and affirmed the appellate court, holding

that, where a plaintiff, pursuant to the FHA, challenges not just one incident of conduct violative

of the Act, but an unlawful practice that continues into the limitations period, the complaint is

timely when it is filed within 180 days of the last asserted occurrence of that practice.  *Havens

Realty Corp. v. Coleman*, 455 U.S. 363, 380–81 (1982).

The Trustee and Plan Administrator argue, correctly, that the Consumer Creditors do not

assert a continuing violation that recurs with each instance of servicing the loans.  Instead, they

---

[35]    As aforementioned, the applicable period is now two years.  42 U.S.C. § 3613(a).

[36]    Both tester plaintiffs asserted that the harm they had incurred was a deprivation of the benefits of living in an integrated neighborhood, and the black tester alleged that the misinformation given to her about apartment availability caused her a "specific injury."  *Havens Realty Corp.*, 633 F.3d at 69.  The asserted harms to HOME were the frustration of its efforts to facilitate equal access to housing, which drained its resources, and the deprivation of its members of the benefits of living in an integrated neighborhood.  *Id.*

describe the single historical violation of predatory loan origination, which has continuing consequences. The case of *In re Johnson,* 2014 WL 4197001, is instructive. In that adversary proceeding, a chapter 13 debtor asserted claims under the FHA against his loan originator, mortgage broker and mortgage servicing agents, arising out of a loan and mortgage associated with the 2006 purchase of his home. The debtor asserted that the loan originator "made misrepresentations during the loan originating process as part of a larger scheme designed to extend credit on unfavorable terms to African-American borrowers." *Id.* at *1. The debtor alleged that, in 2006, the loan originator "artificially originated the purchase price of the home and encouraged Johnson to take out a second loan and mortgage secured by the property," such that "the second mortgage proceeds could be used as a down payment on the first mortgage, so that the first mortgage would meet federal housing guidelines and be marketable in the secondary mortgage market." *Id.* at *2. This scheme was repeatedly perpetrated by the loan originator, and "a disproportionate number of mortgage loans originated . . . were made to minority borrowers, especially African-Americans." *Id.* Liability was asserted against the loan servicers as assignees of the loan and because the originator had "originated loans in reliance on their credit policies." *Id.* at *3.

Because the adversary proceeding was brought approximately seven years after the mortgage origination, the claims fell outside of the two-year FHA statute of limitations period. *Id.* at *13. Johnson argued that the continued servicing of his mortgage was a continuing violation that brought his claims within the FHA's statute of limitations. *Id.* The *Johnson* court considered whether each act of servicing a mortgage that was discriminatorily originated, i.e., whether the accrual of each monthly payment was another act in violation of the FHA, such that the continuing-violation doctrine would be satisfied. *Id.* at *14. The court found that the debtor did

not "show how his regular monthly payment obligation on his home loan arose from a specific discriminatory act by the Defendants within the limitations period, or how this payment obligation was an act in violation of the FHA's proscriptions against discriminatory lending." *Id.* Accordingly, the court found that the continuing violation doctrine did not bring Johnson within the applicable statute of limitations.

Here, the Consumer Creditors raise the same argument that was rejected in *Johnson*. They argue that the continuing-violation doctrine is satisfied by the continued accrual of obligations under a mortgage that was discriminatorily originated. Response ¶¶ 30, 34, 48–51. However, bare allegations that obligations have continued under a mortgage that was discriminatorily originated, without the allegation of some further specifically discriminatory action, are insufficient to establish that the continuing-violation doctrine applies. *In re Johnson*, 2014 WL 4197001, at *14. While the practice of reverse redlining was and is reprehensible, continuing mortgage obligations alone cannot be used to enlarge the time to challenge discriminatory mortgage originations. *See id.*

The circumstance presented here and in *Johnson* is distinguishable from the situation in *Havens Realty Corp.*, where there was an additional discriminatory act taken within the limitations period that could be viewed in conjunction with the otherwise time-barred acts as one violation. 455 U.S. at 380. Instead, like the debtor in *Johnson*, the Consumer Creditors have pointed only to the continued servicing of discriminatory loans as the basis for their continuing violation argument. As in that case, the continued loan obligations are not discriminatory in themselves—instead, they are merely "consequence[s] of prior discrimination." *In re Johnson*, 2014 WL 4197001, at *14. The harm the Consumer Claimants complain of, i.e., servicing the loan, is merely a continuing consequence of the loan entered into by the Walters Claimants and the Debtors' predecessor in

28

interest.  The other discriminatory practices that the Claimants complain of—the recording of the Deed and Note in the applicable county records reflecting principal plus 30 years of interest— occurred at the time of filing documents in the record, shortly after the closing of the loan. Therefore, the continuing violation doctrine does not apply to the federal claims and those claims are time-barred.

Mississippi State Law

The Consumer Creditors contend that under Mississippi law, a plaintiff may recover for a continuing violation in its entirety "if at least a portion of the alleged violation occurs within the applicable period" or "where the later act itself constitutes a violation."  Response ¶ 50.  They maintain that "[b]oth conditions apply here."  *Id.*  As support, they rely on *Hendrix v. City of Yazoo City, Miss.*, 744 F. Supp. 1412, 1414 (S.D. Miss. 1989), *aff'd* 911 F.2d 1102 (5th Cir. 1990).  In *Hendrix*, the plaintiff firefighters were employed by defendant, Yazoo City, Mississippi and brought the action alleging violations of section 8 of the 1985 Amendments to the Fair Labor Standards Act (FLSA).  *Id.* at 1413.  The city filed a motion to dismiss the action on the basis that the suit was not filed within the limitations period provided by statute.  The statute of limitations for claims brought under the FLSA for non-willful violations is two years from the date the cause of action accrues and three years for willful violations.  *Id.* at 1414 (citing 29 U.S.C. § 255(a)). The defendant moved to dismiss the complaint, arguing that the plaintiffs' claims accrued on the date on which the wage reduction became effective, and therefore the plaintiffs' suit, which was filed three years and one month later, was untimely.  *Id.*  The plaintiffs argued that the defendant's acts constituted a continuing violation such that as long as the reduced base wage rates remained in effect, a new cause of action accrued each time the defendant paid the plaintiffs the lowered

wage. *Id.* The district court held that the complaint was barred by the FLSA's three-year statute of limitations for willful violations. Notably, the court found no continuing violation. *Id.* at 1417.

On appeal, the Fifth Circuit Court of Appeals affirmed the judgment dismissing the complaint. *See Hendrix*, 911 F.2d at 1102. In part, the court noted that

> [T]he continuing violation doctrine embraces two types of cases. The first includes cases in which the original violation occurred outside the statute of limitations, but is closely related to other violations that are not time-barred. In such cases, recovery may be had for all violations, on the theory that they are part of one, continuing violation.
>
> The second type of continuing violation is one in which an initial violation, outside the statute of limitations, is repeated later; in this case, each violation begins the limitations period anew, and recovery may be had for at least those violations that occurred within the period of limitations.

*Id.* at 1103. Relevant to that determination is "whether the practice at issue is part of, or a repetition of, a past discriminatory act, in which case there is a continuing violation, or whether it is facially neutral, simply giving effect to prior discrimination, in which case there is no continuing violation." *Id.* at 1104. The key to the inquiry of when the actual violation occurred "is whether the original discriminatory act had 'the degree of permanence that should trigger an employee's awareness of and duty to assert his or her rights.'" *Id.* (quoting *Berry v. Bd. of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir. 1983)). In affirming the district court, the appellate court reasoned that "the firefighters were fully aware of the City's reduction in their base rate of pay when they received their April 15, 1986, paychecks. The reduction in pay was itself the violation; subsequent pay packets simply gave it continuing effect in a facially neutral manner." *Id.* at 1105.

The Walter Claimants assert claims under the Mississippi Consumer Loan Broker Act, Miss. Code Ann. § 81-19-1 (2022), and the Mississippi S.A.F.E. Mortgage Act, *id.* § 81-18-55, each of which relates to origination of the loans and provides a three-year statute of limitations. The Consumer Creditors assert that the Mississippi state-law claims are timely under the

continuing violation doctrine because a portion of the continuing violation—servicing the loan and

collecting payments—occurred within the applicable limitations period, and so under state law,

they may recover for the continuing violation in its entirety.  Response ¶ 51.  The Trustee and Plan

Administrator dispute that contention.  They say that the claim is barred by the three-year statute

of limitations, because claims under §§ 81-19-1 and 81-18-55 relate to origination of the loans.

*See Ishee v. Fannie Mae*, No. 13-cv-234, 2015 U.S. Dist. LEXIS 15223, *42–43 (S.D. Miss. Feb.

6, 2015) (explaining that the S.A.F.E. Mortgage act applies to mortgage brokers, lenders, and loan

originators); *McCrillis v. WMC Mortg. Corp.*, 133 F. Supp. 2d 470, 476 (S.D. Miss. 2000)

(explaining that § 81-19-1 only "limits the amount paid by a borrower to a broker for service

charges to three percent of the amount of the loan").

Analogous to the federal continuing-violation doctrine, Mississippi state law has a similar

exception, which it styles as its "continuing-tort doctrine."  *Estate of Fedrick v. Quorum Health*

*Res., Inc.*, 45 So. 3d 641, 643 (Miss. 2010).

> A "continuing tort" is one inflicted over a period of time; it involves a wrongful
> conduct that is repeated until desisted, and each day creates a separate cause of
> action.  A continuing tort sufficient to toll a statute of limitations is occasioned by
> continual unlawful acts, not by continual ill effects from an original violation.

*Id.* (quoting *Pierce v. Cook*, 992 So. 2d 612, 619 (Miss. 2008)).  A Mississippi intermediate

appellate court has considered whether the subsequent ill effects of an impermissibly obtained

mortgage can satisfy the state's continuing-tort doctrine.  *Brown-Howle v. Cmty. Bank*, 327 So. 3d

651, 658 (Miss. Ct. App. 2018).  In that case, in 2016, a conservator brought suit on behalf of a

mentally incompetent plaintiff against mortgage servicers and the plaintiff's neighbors, asserting

inter alia that a 2009 mortgage was unenforceable because the plaintiff lacked capacity to obtain

the loan, and that the neighbors had had exercised undue influence and misappropriated the

plaintiff's loan proceeds.  *Id.* at 653, 657–58.  Under Mississippi law, the longest applicable statute

of limitations was three years.  *Id.* at 655.  The plaintiff argued that the statute of limitations had continued throughout the duration of a mortgage servicer's servicing of the loan and subsequent foreclosure proceedings.  *Id.* at 657–58.  The state appellate court found that the "wrongful conduct" occurred only when the plaintiff obtained the mortgage loan, and while "the 'continued ill effects' of the purported wrongful act resulted in the foreclosure of [her] home, the wrongful conduct was not repeated."  *Id.* at 658.

The Trustee and Plan Administrator correctly assert that the Walters Claimants have failed to allege any facts demonstrating that mortgage origination activity continued at any time after February 11, 2016 (three years before the Petition Date).  Reply ¶ 12.  In fact, no facts are pleaded to show any activity by Ditech or its predecessor in interest after 2009.  Thus, even if the continuing-tort doctrine applied, there are no facts pleaded that would constitute a continuing violation by the Debtors.  *See Brown-Howle*, 327 So. 3d at 658; *see also In re Johnson*, 2014 WL 4197001, at *14.  Therefore, and for the same reasons given with respect to the federal claims, the limitations period has long since expired.  Thus, the claims under state law are time-barred.

## II.    **The Fraudulent Concealment Doctrine**

Federal Law

The Supreme Court first applied the fraudulent concealment doctrine in the late 1800s in *Bailey v. Glover*, 88 U.S. 342 (1874).  Since then, the fraudulent concealment doctrine, which some courts refer to as the *Bailey* doctrine, has permeated federal law.  *In re Ahead by a Length, Inc.*, 100 B.R. 157, 163 (Bankr. S.D.N.Y. 1989).  The fraudulent concealment doctrine tolls the statute of limitations, which begins to run only when the fraud is uncovered.  *Id.*  Its purpose is "to prevent a defendant from concealing a fraud or committing a fraud which by its nature is concealed

until such time as the party committing the fraud could plead the statute of limitations to protect it." *Id.* The Supreme Court articulated the fraudulent concealment doctrine as follows:

> [W]hen there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to conceal itself, the statute [of limitations] does not begin to run until the fraud is discovered by, or becomes known to, the party suing, or those in privity with him.

*Bailey v. Glover*, 88 U.S. 342, 349 (1874); *see In re Ahead by a Length, Inc.*, 100 B.R. at 163.

"The doctrine of fraudulent concealment is read into every federal statute of limitations and state statutes adopted by federal law and was developed to prevent wrongdoers from concealing their actions and later perpetrating a further fraud by asserting the bar of limitations." *Humphrey v. J. B. Land Co.,* 478 F. Supp. 770, 772 (S.D. Tex. 1979). However, "[a] party seeking to apply this tolling doctrine must show that he exercised reasonable care and diligence in seeking to learn the facts which would disclose the fraud." *Id.* "Unawareness of facts or law, alone, does not justify suspending the operation of the statute. The party seeking protection under this doctrine must have exercised reasonable care and diligence in seeking to learn the facts which would disclose fraud." *Morgan v. Koch*, 419 F.2d 993, 997 (7th Cir. 1969) (citations omitted); *see Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 355–56 (D. Conn. 2012) ("In the context of a claim of fraudulent concealment, plaintiffs must show: (1) concealment of the alleged wrongdoing; and (2) plaintiffs' failure to discover the facts giving rise to their claims despite their exercise of due diligence."). Allegations of fraudulent concealment must comport with the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Miller v. Countrywide Bank, N.A.*, 571 F. Supp. 2d 251, 264 (D. Mass. 2008).[37]

---

[37]    Under Rule 9(b), a claim of fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Rule 9 applies to an objection to claim. See Fed. R. Bankr. Proc. 9014(c) (applying Rule 7009, which incorporates Rule 9, to contested matters); Rule 3007 (objection to claim is a contested matter).

For the federal fraudulent concealment doctrine to apply, and for the relevant statute of limitations to be equitably tolled, the Walters Claimants must plead facts sufficient to show: (i) that Ditech concealed its wrongdoings; and (ii) that the Walters Claimants failed to discover the facts giving rise to their claims despite their exercise of due diligence.  They have failed to allege any facts to support a claim that the Debtors, or their predecessors, fraudulently concealed the underlying alleged statutory violations, or that they exercised reasonable care and diligence in learning what transpired.  Moreover, the Walters Claim and Response suggest that the conduct of Ditech and its predecessors, other than the securitization of the mortgages, was open and notorious.[38]  At least three members of the purported class asserted essentially the same causes of action as set forth in the Walters Claim in actions commenced in 2014 and 2015, more than three years before the Petition Date.  *See* Response Ex. G at 1, *Green Tree Servicing LLC, Successor By Merger To Walter Mortgage Company, LLC. v. Billy V. Brown and Gwendolyn Brimage*, Cause No. 2014-357 (Circuit Court of Simpson County, Mississippi Aug. 2, 2016); Response Ex. H, *James Crosby v Green Tree Servicing, et al.,* No. 15-cv-726 (S.D. Miss. Feb. 18, 2016) at 1; *see also Millsap v. Jim Walter Homes*, No. 2:14-CV-198, Docket No. 41 (S.D. Miss. May 28, 2015) (remanding similar lawsuit to state court).  The facts underlying the claims asserted here were available to the Walters Claimants more than three years before the Petition Date.

Therefore, the Walters Claimants do not and cannot satisfy the requirement that they failed to discover the facts giving rise to their claims or that such failure was despite their exercise of due diligence. *See, e.g.*, *Lanza v. Merrill Lynch & Co.*, 154 F.3d 56, 60 (2d Cir. 1998) (holding that

---

[38]    Although the Walters Claim and the Response assert that the securitization of the mortgages was difficult to understand, neither the Walters Claim nor the Response allege that the securitization was part of the harm the Claimants suffered, only that the alleged conduct was in furtherance of a securitization.  Walters Claim ¶¶ 3–10; Response ¶¶ 5, 22, 53.  Nothing in the Walters Claim or the Response suggests that the claims would not lie but for the securitization or that the securitizations were any essential element of the liability.  Whether or not the Claimants understood the securitization is not relevant to the fraudulent concealment issue.

investors did not adequately plead they satisfied the due diligence requirement of the fraudulent

concealment doctrine where they did not plead that they exercised due diligence and made "no

allegation of any specific inquiries of [the defendant], let alone detail when such inquiries were

made, to whom, regarding what, and with what response").; *Koch v. Christie's Int'l PLC*, 699 F.3d

141, 157 (2d Cir. 2012) (holding that a plaintiff did not satisfy the due diligence requirement where

he received a report suggesting he had been the victim of a wine forgery but did not investigate it

for more than four years); *see also Zirvi v. Flatley*, 838 F. App'x 582, 587 (2d Cir. 2020) (summary

order) (rejecting, in the fraudulent-concealment context, plaintiffs' "conclusory claims that they

could not have discovered the misappropriation through the exercise of diligence because

defendants engaged in a decades-long fraudulent 'conspiracy' of 'camouflage, disguise and

nomenclature changes.'" (alterations omitted)).

Mississippi State Law

To establish fraudulent concealment under Mississippi state law, "there must be shown

some act or conduct of an affirmative nature designed to prevent and which does prevent discovery

of the claim." *Robinson v. Cobb*, 763 So.2d 883, 887 (Miss. 2000) (quoting *Reich v. Jesco, Inc.*,

526 So. 2d 550, 552 (Miss. 1988)); *see also Holaday v. Moore*, 169 So. 3d 847, 853 (Miss. 2015)

("This Court has held that '[f]raudulent concealment of a cause of action tolls its statute of

limitations' and '[t]he fraudulent concealment doctrine applies to any cause of action.'"

(alterations in original) (quoting *Robinson*, 763 So. 2d at 887)).   Moreover, Mississippi also

requires that the party asserting a fraudulent concealment argument has the burden to demonstrate

that they performed due diligence in an attempt to discover the claim. *Holaday*, 169 So. 3d at 853.

Thus, for the Walter Claimants to establish grounds for fraudulent concealment, they must

demonstrate that Ditech and its predecessors engaged in affirmative acts of concealment and that

even though they acted with due diligence in attempting to discover the alleged wrongdoing, they were unable to do so. *Robinson*, 763 So. 2d at 887. They have failed to plead facts demonstrating that they can meet that burden. The Walters Claim contains no allegations of any "act or conduct of an affirmative nature designed to prevent and which does prevent discovery of the claim," nor of their due diligence. The Walters Claimants allege only that the securitizations were too complex to understand. *Robinson*, 763 So.2d at 887. Moreover, because the Mississippi claims relate to loan brokers and certain foreclosure prerequisites, neither of which are alleged in the Walters Claim or the Response, any claims about the securitizations cannot support a claim of fraudulent concealment of the Mississippi claims.

The Consumer Creditors make only the conclusory assertions that "Ditech's and its predecessors' [sic] continually concealed their sophisticated scheme," Response ¶ 59, and that scheme "would be undetectable by lay, unsophisticated homeowners such as the 800 creditors," *id.* ¶ 60. Additionally, they briefly mention that in the *Crosby* case, the Southern District of Mississippi "held that Ditech had transactional structuring which amounted to a subsequent affirmative act of concealment," but they do not explain the nature of the transactional structuring in that case.[39] *Id.* ¶ 59. Here, the Walters Claimants have alleged nothing further to support those conclusory assertions about the purported concealment of a scheme. First, the claimants have not represented the nature of the purportedly deceptive transactional structure before this court. *See*

---

[39] The claimants make no assertion that the issue in this case is identical to the one before the Southern District of Mississippi—they assert only that the *Crosby* case "shares the same fact pattern as the 800 Creditors and was litigated by counsel for the 800 Creditors," with no further details. Response ¶ 59. To the extent that the creditors represent that this Court is bound to arrive at the same conclusion as in that case, their reliance on *Crosby* is misplaced. The claimants have not asserted a collateral-estoppel argument with respect to *Crosby*, and they certainly have not alleged the four elements of collateral estoppel. *See Cayuga Nation v. Tanner*, 6 F.4th 361, 374 (2d Cir. 2021) ("a party may invoke issue preclusion only if: '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party [raising the issue] had a full and fair opportunity to litigate the issue [in the prior proceeding]; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" (alterations in original) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288–89 (2d Cir. 2002))).

*Robinson*, 763 So.2d at 887.   Even if they had, the claimants have not met the Mississippi requirement to show that they actually performed some kind of due diligence with respect to the claim.   *See Holaday*, 169 So. 3d at 853; *cf. Lanza*, 154 F.3d at 60.   Accordingly, the claimants have failed to meet their fraudulent-concealment burden on their Mississippi state claims.

### The Discovery Rule and the Layman's Test

The Consumer Creditors generally assert that the limitations period within which to bring an action is equitably tolled under the discovery rule. *See* Response ¶¶ 52–56.   The Consumer Creditors say that is so because their group is comprised of lay people, rural Mississippians and Texans who were unsophisticated borrowers, and who they say could not possibly have been expected to detect Ditech's complex consumer-credit scheme to obtain, package, service, and sell consumer-credit securities.   Response ¶ 53.   In support, the Claimants cite to an instance where they say that Ditech's own lawyer could not explain the consumer transaction documents provided to the 800 creditors. *See id.*

Federal Law

The Walters Claimants assert claims under the following federal statutes: the FHA, ECOA, TILA, RESPA, and FDCPA.   Walters Claim ¶¶ 13–14.   Notably, the Walters Claimants advanced a discovery-rule[40] argument only with respect to their state claims.   *Id.* ¶¶ 52–56.   The state-law arguments are addressed below.   Because the Walters Claimants did not raise a discovery-rule argument with respect to the federal claims, it is waived.   *In re Centric Brands, Inc.*, 639 B.R. 34, 40 n.3 (Bankr. S.D.N.Y. 2022) (citing *In re AMR Corp.*, 598 B.R. 365, 384 (Bankr. S.D.N.Y.

---

[40]    As discussed below, the purported "Layman's Test" derives only from Mississippi state law.

2019)).  However, in the interest of completeness, the Court will also address the discovery rule to the extent it may have bearing on the federal claims.

The federal discovery rule applies generally to federal statutes of limitations unless the statute provides otherwise.  *See TRW Inc. v. Andrews*, 534 U.S. 19 (2001).  Under the federal version of this rule, the statute of limitations begins to run when the plaintiff discovered or should have discovered the injury.  *Fritz v. Resurgent Cap. Servs., LP*, 955 F. Supp. 2d 163, 172–73 (E.D.N.Y. 2013); *see Miller v. Countrywide Bank, N.A.*, 571 F. Supp. 2d 251, 263 (D. Mass. 2008). The general discovery rule applies to FHA claims.  *Adkins v. Morgan Stanley*, No. 12-cv-7667, 2013 WL 3835198, at *5 (S.D.N.Y. July 25, 2013); *Saint-Jean v. Emigrant Mortg. Co.*, 50 F. Supp. 3d 300, 314–16 (E.D.N.Y. 2014) (applying the general discovery rule to FHA claims).  Courts are split as to whether the discovery rule applies to actions under the ECOA, TILA, RESPA, and FDCPA.[41]

Regardless, the Claimants have not demonstrated that they can avail themselves of the general discovery rule with respect to the FHA or any other claims, chiefly because they have not alleged facts demonstrating that (i) they did not actually discover their claims less than (at most)

---

[41]    *See Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 81–82 (2d Cir. 2019) (declining to decide whether the discovery rule could apply to the FDCPA, since the plaintiff's claim in that case "would be time-barred in any event"); *Wise ex rel. Wilson v. Union Acceptance Corp.*, No. IP 02-0104-C-M/S, 2002 WL 31730920, at *5 (S.D. Ind. Nov. 19, 2002) (applying discovery rule to ECOA); *Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 509 (5th Cir. 2008) (stating, in the ECOA context, "a discovery rule does not apply to statutes that key the start of the limitations period to 'the date of the occurrence of the violation.'" (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 32 (2001)); *Adkins v. Morgan Stanley*, No. 12-cv-7667, 2013 WL 3835198, at *5 (S.D.N.Y. July 25, 2013) (holding that the general discovery rule applies to the FHA but not to the ECOA, since the latter has a limited discovery rule at § 1691e(f)(1)–(2)); *McAnaney v. Astoria Fin. Corp.*, No. 04-cv-1101, 2007 WL 2702348, at *6 (E.D.N.Y. Sept. 12, 2007) (noting that, in the TILA context, the discovery rule applies only to "open-end" credit transactions, rather than "closed-end" one-time loan transactions, such as a residential mortgage loan); *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-cv-3291, 2014 WL 4742509, at *10 & n.14 (E.D.N.Y. Sept. 23, 2014) (holding that the discovery rule is inapplicable to RESPA).  Generally, the discovery rule cannot be applied to the FDCPA or RESPA.  *See Rotkiske v. Klemm*, 140 S. Ct. 355, 359 (2019) (FDCPA); *Cunningham v. M&T Bank Corp.*, 814 F.3d 156, 162 (3d Cir. 2016) (RESPA).  However, there may be an exception in cases of fraud.  *Rotkiske*, 140 S. Ct. at 361 (citing *Merck & Co. v. Reynolds*, 559 U.S. 633, 644 (2013)).

five years prior to asserting their claims, and (ii) that they should not have discovered their claims earlier. *See Fritz*, 955 F. Supp. 2d at 172–73; *Miller*, 571 F. Supp. 2d at 263. As aforementioned, they plead no activity by Ditech or its predecessors after 2009—there is nothing in the claimant's papers, other than generalized allegations of fraud and complexity, to explain why these claims should not have been discovered more than five years ago. *See id.* Further, as discussed with respect to the fraudulent-concealment argument, the claimants assert only vague accusations that Ditech's transactional structure was inherently deceptive, due to its complexity. Response ¶¶ 59–60. These conclusory assertions cannot establish that their years-old claims should not have been discovered sooner. *See Fritz*, 955 F. Supp. 2d at 172–73; *Miller*, 571 F. Supp. 2d at 263. In any event, the issue is waived. *In re AMR Corp.*, 598 B.R. at 384.

Mississippi State Law Claims

As a preliminary matter, the Consumer Creditors assert that, under Mississippi state law, a jury must decide whether the limitations period is tolled or expired. In support, they say that the Mississippi intermediate appellate court held that "unsophisticated, minimally educated plaintiffs faced with opaque language made the statute of limitations issue a jury question." Response ¶ 55 (citing *Baker v. Raymond James & Assocs. Inc.*, No. 2019-CA-73-COA, 2020 WL 1685704, at *4 (Miss. Ct. App. Apr. 7, 2020), *reh'g denied* (July 21, 2020), *cert. granted sub nom. Travis v. Raymond James & Assocs. Inc.,* 304 So. 3d 1121 (Miss. 2020), *rev'd*, 312 So. 3d 720 (Miss. 2021)). However, the claimants' reliance is misplaced. This case was reversed on appeal. The Mississippi Supreme Court held that the claims were barred by the statute of limitations, and the discovery rule did not apply to the claims. The Mississippi high court also stated, as relevant, that whether the suit is barred by the statute of limitations may certainly present a jury question. *Baker*, 312 So. 3d at 723 (citing *Benvenutti v. McAdams*, 162 So. 3d 808, 814 (Miss. 2015)). But, "as

with other putative fact questions, the question may be taken away from the jury if reasonable minds could not differ as to the conclusion." *Id.* (quoting *Benvenutti v. McAdams*, 162 So. 3d at 814). Therefore, the Court finds, in this instance, that the issue of whether the discovery rule applies to the limitations period is not purely an issue for the jury to decide. In this instance, the Court finds it appropriate to rule on the issue.

The Walters Claimants assert two claims under Mississippi law: the Consumer Loan Broker Act, MCA § 81-19-1, and the Mississippi S.A.F.E. Mortgage Act, MCA § 81-18-55. There is no dispute that Mississippi's general three-year statute of limitations, MCA § 15-1-49, applies to the state law claims alleged in the Walters Claim. As relevant, it states, as follows:

> (1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.

> (2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

MCA § 15-1-49 (1), (2).

The claimants assert that the state statute of limitations could not have run against them because of their lack of sophistication and the inherently complex nature of the financings. They claim:

> As lay, rural Mississippians, the 800 Creditors could not possibly have been expected to detect Ditech's sophisticated consumer credit scheme to obtain, package, service and sell consumer credit securities.

Response ¶ 53. at 14. However, that argument misses the mark. Section 15-1-49(2) sets forth Mississippi's "discovery rule." That rule has no application herein, because it applies to injury to property. *Donald v. Amoco Production Co.*, 735 So. 2d 161, 168 (Miss. 1999). If an injury is

latent, the statute of limitations starts to run when a layman could realistically perceive a previously secret injury. *Id.* But the statute begins to run upon discovery of the injury itself, not later when the plaintiff discovers the cause of the injury. *City of Tupelo v. Patterson*, 208 So. 3d 556, 569 (Miss. 2017).[42] Under the facts asserted in this case, application of the relevant Mississippi state "discovery rule" does not toll the three-year statute of limitations.

Both of the Mississippi state law claims are time-barred. The Consumer Loan Broker Act applies only to loan brokers. The only cause of action it provides to a borrower is for a loan broker's violation of a list of requirements, mainly relating to fees and service charges, use of false or misleading advertising, or false promises to induce the borrower to use the loan broker's services. MISS. CODE ANN. § 81-19-1; *McCrillis*, 133 F. Supp. 2d at 476. The Walters Claimants allege that the mortgages were placed directly with Jim Walter Mortgage Company, not involving any loan broker. Walters Claim ¶ 3. Even crediting the new allegations contained in the Response, the Consumer Creditors do not allege the use of a loan broker. Response, ¶ 19 ("Ditech was the source of the debt and paper."), ¶ 24 ("Oftentimes these consumer credit transactions occurred with only one Ditech agent and without a notary present."). The claims allege nothing to suggest that loan brokers were involved, that the Walters Claimants did not discover until later that loan brokers arranged the loans, or even that the involvement of loan brokers was hidden by misrepresentations that would have prevented discovery of claims under the Loan Broker Act. To

---

[42] In describing the Mississippi discovery rule, the Walters Claimants cite to two cases that explain the rule. Response ¶ 54 (citing *Stringer v. Trapp*, 30 So. 3d 339, 342 (Miss. 2010); *Holaday v. Moore*, 169 So. 3d 847, 850 (2015)). In a footnote in their Reply, the Trustee and Plan Administrator assert that the cases are inapposite "because they involve medical malpractice claims that are governed by a different statutory provision, MCA 15-1-36, and different discovery rules." Reply at 9 n.2. That criticism is correct. Both *Stringer* and *Holaday*'s discussions of a "discovery rule" refer to a statutory discovery rule that applies only in cases of medical malpractice. MISS. CODE ANN. § 15-1-36; *see Stringer*, 30 So. 3d at 341–42 (applying § 15-1-36(1)); *Holaday*, 169 So. 3d at 850 (applying § 15-1-36(2)). The medical-malpractice discovery rule is distinct from the § 15-1-49 discovery rule at issue, and accordingly § 15-1-36 has no bearing on this case.

the extent the Response addresses loan brokers at all, it does so in a conclusory manner that makes clear that the Walters Claimants would or should have known at the time of the loans themselves that loan brokers were not involved. Response ¶ 43 ("Here, Ditech made false promises to the 800 Creditors in order to influence or induce them to use its consumer loan broker's services . . . ."). Thus, the discovery rule is not applicable to those claims. None of the claims of Ms. Johnson and Ms. Martinez arose from mortgages placed after 2009. Therefore, the Mississippi statute of limitations bars claims under the Consumer Loan Broker Act.

The Mississippi S.A.F.E. Mortgage Act provision on which the claimants rely, MCA § 81-18-55(1)(f), requires a mortgage lender to mail detailed information to a borrower at least 45 days before a power of sale foreclosure auction is conducted. MISS. CODE ANN. § 81-18-55; *Ishee*, 2015 U.S. Dist. LEXIS 15223, *42–43. The Walters Claim does not allege facts demonstrating that Ditech failed to mail the required information to claimants within the specified time period. Moreover, the Response does not allege facts demonstrating that Ditech violated Mississippi's S.A.F.E. Mortgage Act within or outside of the limitations period. Rather, it generally alleges that Ditech foreclosed on the properties. Response ¶ 25 ("Ditech also serviced the loans, collected, and foreclosed on the same people which it had fraudulently qualified."). Finally, the Walters Claim does not allege that any foreclosure sale occurred within three years before the February 2019 Petition Date or that either of the Claimants was unaware of a foreclosure auction such that the discovery rule would apply. Therefore, the Mississippi statute of limitations bars claims under the S.A.F.E. Mortgage Act.

## <u>Conclusion</u>

Based on the foregoing, the Court sustains the Trustee and Plan Administrator's Objection

to the Walters Claim and the Additional Claims, and disallows and expunges those claims.

**IT IS SO ORDERED.**

Dated:  New York, New York
        October 26, 2022

                                          /s/ *James L. Garrity, Jr.*
                                          Hon. James L. Garrity, Jr.
                                          U.S. Bankruptcy Judge