UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

------------------------------------------------------- x

In re:

Ditech Holding Corporation, *et al.*,

                                          Debtors.[1]

------------------------------------------------------- x

Case No. 19-10412 (JLG)

Chapter 11

(Jointly Administered)

## MEMORANDUM DECISION AND ORDER DENYING THE MOTION FOR RELIEF FROM THE PLAN INJUNCTION FILED BY JAMIL GEORGE RABADI

<u>A P P E A R A N C E S</u>:

SILVERMAN & SARDAR LLP
*Attorney for the Movant*
420 Lexington Avenue, Suite 300
New York, New York 10170
<u>By:</u>    Daniel E. Silverman, Esq.

JBV LAW FIRM
*Attorney for the Movant*
The CAAR, 1210 N. Jefferson Street, Suite F
Anaheim, California 92807
<u>By:</u>    Adam Apollo, Esq. (admitted *Pro Hac Vice*)

WEIL, GOTSHAL & MANGES LLP
*Attorneys for the Wind Down Estates*
767 Fifth Avenue
New York, New York 10153
<u>By:</u>    Ray C. Schrock, P.C.
         Richard W. Slack, Esq.
         Sunny Singh, Esq.
         Natasha S. Hwangpo, Esq.

---

[1]    On September 26, 2019, the Court confirmed the Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors (ECF No. 1404) (the "Plan"), which created the Wind Down Estates. The Wind Down Estates, along with the last four digits of their federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

**Introduction**[2]

The matter before the Court is the Motion for Relief (the "Motion")[3] filed by Jamil

George Rabadi (the "Movant"). In the Motion, Movant seeks an order of this Court pursuant to

sections 362(d) and 105 of the Bankruptcy Code and Bankruptcy Rule 4001(a) and Local

Bankruptcy Rule 4001-1 granting him relief from the automatic stay and/or from the Plan

Injunction to serve an amended complaint (the "Amended Complaint") on Ditech Financial, LLC

("Ditech"), in an adversary proceeding that is pending against Ditech and others in the United

States District Court for the Central District of California (the "California Court"). Movant

commenced that adversary proceeding against Ditech without leave of this Court. The Wind

Down Estates ("WDE") filed an objection to the Motion (the "Objection").[4] The Movant filed a

Reply[5] and a Supplemental Reply[6] to the Objection. The Court heard arguments on the Motion.[7]

For the reasons stated herein, the Court denies the Motion.

---

[2]    Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

[3]    *Notice of Motion for Relief*, ECF No. 3839. References to "ECF No. __" are references to documents filed on the electronic docket in these Chapter 11 Cases.

[4]    *Objection to Motion of Jamil George Rabadi for Relief from the Plan Injunction Provisions*, ECF No. 3896.

[5]    *Reply to Objection of Wind Down Estates to Motion of Jamil George Rabadi for Relief from the Plan Injunction Provisions*, ECF No. 3901.

[6]    Reply, Ex. 1 (Supplemental Reply to Objection of Wind Down Estates to Motion of Jamil George Rabadi for Relief from the Plan Injunction Provisions).

[7]    *See* Feb. 24, 2022 Hr'g Tr., ECF No. 3912.

**Jurisdiction**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Background**

Movant is an individual homeowner who resides at 31761 Paseo Bonito, Castaic Area, California 91384 (the "Property"). Motion at 2, 6. On December 9, 2015, Express Skyline ("Skyline") made a $402,573.00 loan to the Movant (the "Loan") secured by a mortgage on the Property through a Deed of Trust made on December 9, 2015 (the "Deed of Trust").[8] *Id.* at 6. The Deed of Trust names Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary of the Deed of Trust and Fidelity National Title Company ("Fidelity") as the trustee. *Id.* at 6–7. At some point thereafter, Ditech began servicing the Loan. *See id.* at 7. Movant alleges that, at some unspecified time, Ditech notified Movant that he had missed four Loan payments and commenced foreclosure proceedings against him. *See* Amended Complaint ¶¶ 13, 16. On September 25, 2017, LSI Title Company recorded a Notice of Default dated September 17, 2017 (the "Notice of Default"),[9] against the Property on behalf of Ditech. It states that Movant was in arrears on the Loan as of that date. *See* Notice of Default at 2.

**The First California Action**

On March 14, 2018, Movant filed suit against Ditech in California Superior Court, Los Angeles (the "California State Court"), Case No. PC058368 (the "First California Action"). *See*

---

[8]    A copy of the Deed of Trust is annexed as Exhibit A to the Amended Complaint.

[9]    A copy of the Notice of Default is annexed as Exhibit B to the Amended Complaint.

First California Action Complaint.[10] The action is premised on Ditech's actions while it was the servicer on the Loan. In the First California Action, Movant asserts the following five causes of action against Ditech: (i) breach of contract (First California Action Complaint ¶¶ 23–28); (ii) breach of the covenant of good faith and fair dealing (*id.* ¶¶ 29–35); (iii) negligence (*id.* ¶¶ 36–39); (iv) wrongful foreclosure (*id.* ¶¶ 40–43); and (v) violation of the California Business and Professional Code (*id.* ¶¶ 44–66). On June 13, 2018, Ditech filed a Notice of Recission of the Notice of Default, which was recorded in the Official Records in Los Angeles County, California (the "Notice of Recission").[11] Motion at 4.

**The Chapter 11 Cases**

On February 11, 2019 (the "Petition Date"), prior to trial in the First California Action, Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates, including Ditech (collectively, the "Debtors"), filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors remained in possession and control of their business and assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On February 22, 2019, the Court entered an order fixing April 1, 2019 at 5:00 p.m. (prevailing Eastern Time) as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[12] The Court extended the General Bar Date for

---

[10]  *Verified Complaint for: (1) Breach of Contract; (2) Breach of Covenant of Good Faith and Fair Dealing; (3) Negligence' (4) Wrongful Foreclosure; and (5) Unfair Business Practices – Cal. Bus. & Prof. Code § 17200, et seq.* A copy of the First California Action Complaint is annexed as Exhibit B to the Objection.

[11]  A copy of the Notice of Rescission is annexed as Exhibit C to the Objection.

[12]  *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof,* ECF No. 90.

consumer borrowers, twice, and ultimately to June 3, 2019 at 5:00 p.m. (prevailing Eastern Time).[13]

On September 26, 2019, the Debtors confirmed their Plan, and on September 30, 2019, that Plan became effective (the "Effective Date").[14] The Plan Injunction Provisions, in pertinent part, prohibit "all Entities who have held, hold, or may hold Claims against or Interests in the Debtors . . . from . . . commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors . . . ." Plan § 10.5(b). Section 10.5(d) of the Plan states that "[t]he injunctions in this Section 10.5 shall extend to any successors of the Debtors (including the Wind Down Estates), the Reorganized Debtors, Reorganized RMS, and their respective property and interests in property." *Id.* § 10.5(d). This Court also retained jurisdiction over "all matters arising in, arising under, and related to the Chapter 11 Cases," specifically including the authority "to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court" and "to hear, adjudicate, decide, or resolve any and all matters related to Article X of the Plan, including, without limitation, the releases, discharge, exculpations, and injunctions issued thereunder." *Id.* §§ 11(f); 11(n).

---

[13]    *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[14]    *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors*, ECF No. 1326 (the "Plan"); *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors*, ECF No. 1404 (the "Confirmation Order"); *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

**The Proofs of Claim**

On March 15, 2019, Movant filed a proof of claim in these Chapter 11 Cases (Claim No.

367).[15]  Movant amended his proof of claim twice, first on March 22, 2019 (Claim No. 455), and

again on April 17, 2019 (Claim No. 1051) (the "Rabadi Claim").[16] The Rabadi Claim is filed as a

general unsecured claim in the sum of $275,000. In it, Movant seeks damages from Ditech based

on the same allegations against Ditech at issue in the First California Action and this Motion. *See*

Rabadi Claim at 2. Movant attached a copy of the First California Action Complaint in support

of the claim. *Id.* at 12–21. On January 7, 2020, while the Rabadi Claim was pending, Movant

voluntarily dismissed the First California Action against Ditech.[17]

On September 18, 2020, the Consumer Representative filed the Twenty-Ninth Omnibus

Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims)

(the "Twenty-Ninth Omnibus Objection"),[18] which included the Rabadi Claim.[19] As support for

the objection, the Consumer Representative states that the Rabadi Claim fails to provide a

sufficient basis for relief because the claim "alleges that Ditech failed to account for all payments

made but does not identify any such payments or provide proof of payments made and not

credited." Twenty-Ninth Omnibus Objection at 22. Movant was properly served with the

Twenty-Ninth Omnibus Objection.[20] Movant did not respond to the objection. On November 9,

---

[15]    A copy of Claim No. 367 is annexed as Exhibit D to the Objection.

[16]    Copies of Claim No. 455 and Claim No. 1051 are annexed as Exhibits E and F, respectively, to the Objection.

[17]    A copy of the Request for Dismissal is annexed as Exhibit G to the Objection.

[18]    *Consumer Claims Trustee's Twenty-Ninth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims)*, ECF No. 2837.

[19]    The Court expunged Claim Nos. 367 and 455 as duplicate or amened proofs of claim. *Order Granting Consumer Claims Trustee's Twenty-Seventh Omnibus Objection to Proofs of Claim (Duplicate or Amended Unsecured Consumer Creditor Claims)*, ECF No. 2808 at 5.

[20]    *See Affidavit of Service of Greg Winter, Epiq Corporate Restructuring LLC*, ECF No. 2854 at 1, 11.

2020, the Court entered an order granting the Twenty-Ninth Omnibus Objection and expunging, among others, the Rabadi Claim with prejudice. *See* Rabadi Claim Order at 11.[21]

**The California Action**

On April 30, 2020, Ditech assigned the Deed of Trust to NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") via a Corporate Assignment of Deed to Trust (the "Assignment").[22] On August 27, 2020, Movant filed a complaint (the "California Action Complaint") in the California State Court against Shellpoint seeking relief on account of many of the same loan-servicing related harms alleged in support of the First California Action and the Rabadi Claim (the "California Action").[23] In substance, in the California Action, Movant asserts that Ditech erroneously failed to credit his Loan account with certain Loan payments that he made to Ditech, Shellpoint reported those alleged missed payments to credit agencies, and, in doing so, Shellpoint has damaged Movant's credit rating. *See* California Action Complaint ¶¶ 12–19. On October 15, 2020, Shellpoint removed the action to the United States District Court for the Central District of California[24] and then moved to dismiss the California Action on the grounds that it cannot be held liable for its predecessor's errors in the account ledgers. Motion at 4–5. Counsel for Shellpoint and Movant met and conferred on March 29, 2021 and

---

[21]    *Order Granting Consumer Claims Trustee's Twenty-Ninth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims)*, ECF No. 2996.

[22]    A copy of the Assignment is annexed as Exhibit H to the Objection.

[23]    *See Jamil George Rabadi v. Shellpoint Mortgage Servicing*, No. 20STCV32784 (Cal. Sup. Ct. Aug. 27, 2020). A copy of the California Action Complaint is attached as Exhibit I to the Objection.

[24]    *See* Removal from the Superior Court of California for the County of Los Angeles, Case No. 20STCV32784, *Jamil George Rabadi v. NewRez LLC, et al.*, No. 2:20-CV-09465 (C.D. Cal. Oct. 15, 2020). A copy of the docket is annexed as Exhibit J to the Objection.

July 28, 2021. *See id.* at 5. As a result of the meetings, Movant determined that it must add

Ditech as a necessary party to the California Action. *See id.*

On or around January 2022, Movant filed the Amended Complaint in the California

Action.[25] The Amended Complaint purports to assert seven causes of action against Shellpoint

and a cause of action for declaratory relief against Shellpoint and Ditech (the "Declaratory

Judgment Claim"). As to the latter, Movant seeks a declaration against Ditech stating that

Movant was not in default under the Note and that Ditech lacked the right to record the Notice of

Default or late Loan payments to the credit reporting agencies. Amended Complaint ¶ 98.

## Legal Standard

Although Movant has styled the Motion as a motion for relief from the automatic stay,

following the consummation of a confirmed chapter 11 plan, courts consider a motion to lift the

automatic stay as a motion to modify the plan injunction. *See, e.g.*, *Grayson v. WorldCom, Inc.*

*(In re WorldCom, Inc.)*, No. 05-5704, 2006 WL 2270379, at *2 n.3 (S.D.N.Y. Aug. 4, 2006).

Parties seeking relief from a plan injunction must satisfy the same standard applicable to a

motion to lift the automatic stay pursuant to section 362 of the Bankruptcy Code. *See, e.g.*, *In re*

*WorldCom, Inc.*, No. 02–13533, 2007 WL 841948, at *5 (Bankr. S.D.N.Y. Mar. 12, 2007)

("Although the factors set forth in *Sonnax* pertain to determining 'cause' with respect to a

request for relief from the automatic stay rather than relief from or modification of the Plan

Injunction, the Court finds that the same principles of 'cause' would also apply in the context of

the Plan Injunction."); *In re Fucilo*, No. 00–36261, 2002 WL 1008935, at *9 (Bankr. S.D.N.Y.

Jan. 24, 2002) ("Determining whether relief from the permanent injunction is warranted under

appropriate circumstances should be analyzed pursuant to a cause standard. Such a cause

---

[25]    A copy of the Amended Complaint is annexed as Exhibit A to the Objection.

standard is found in *In re Sonnax Industries, Inc.*, 907 F.2d 1280 (2d Cir. 1990).") (internal

citations omitted). The movant has the burden to demonstrate cause for relief from the stay or

plan injunction. *See In re SquareTwo Financial Serv. Corp.*, No. 17–10659, 2017 WL 4012818,

at *5 (Bankr. S.D.N.Y. Sept. 11, 2017).

## The Motion

The Movant contends that while servicing the Loan, Ditech (i) failed to give credit to

Movant for payments made, (ii) maintained an inaccurate accounting in connection with the

Loan and refused to fully investigate such inaccuracies despite Movant's many requests, (iii)

furnished inaccurate information concerning Movant to credit reporting agencies, (iv) wrongly

called Movant's Loan in default, (v) erroneously reported and then on September 27, 2017

wrongfully recorded the Notice of Default in the Official Records of the office of the Recorder of

Los Angeles County, California, (vi) wrongly commenced the process to foreclose on Movant's

Loan, and (vii) wrongly refused and failed to take the necessary steps to correct the above-

referenced wrongs. Motion at 2-3. Movant complains that Shellpoint presently perpetuates

Ditech's bad acts, and in error continues improperly to rely upon Ditech's wrongful accounting

and other bad acts, which taken separately or together, have adversely impacted and injured, and

continue to adversely impact and injure him. *Id*. at 3. Movant concedes that Ditech filed the

Notice of Recission of Notice of Default. *See id.* at 4. However, he contends that, nonetheless,

the records on file with the Official Records of the Office of the Recorder of Los Angeles

County, California, as well as with the credit reporting agencies have not been fully repaired, and

Shellpoint as successor servicer has continued to adopt Ditech's original erroneous accounting of

the Loan (including payments and charges made in connection therewith) and has further

neglected to credit payments and overcharges based on purported interest for phantom debts. *Id.*

Movant asserts that Ditech's erroneous accounting, refusal to accept timely and sufficient mortgage payments for want of a larger erroneous demand, false reporting, and erroneous recording of the Notice of Default based thereon, form the gravamen of the California Action. *Id.* at 5. He contends that Ditech is a necessary party to the California Action because, as a prerequisite to this cause of action in the California Action, Movant will need to prove an action for breach of contract against the lender, and similarly maintain a cause of action for an accounting, including during a period Ditech was servicing the Loan and Movant's account. *Id.* at 5-6. Movant argues that complete relief, including remedying the alleged false reporting that is adversely affecting his credit, can only be afforded to him in the California Action via a Judicial Order on a Declaratory Relief cause of action, declaring, among other things, that he was not in default under the terms of the Loan, as Ditech reported. Movant contends that Ditech is complicit in Shellpoint's maintaining of the erroneous accounting of the Debtor, and thus must be joined as a party. *Id.* at 6.

The WDE contends that the Court should deny the Motion because: (i) Movant violated the Plan Injunction by filing the Amended Complaint in the California Action (Objection ¶ 3); (ii) Movant's claims are barred by the doctrine of *res judicata* (*id.* ¶¶ 22–27); (iii) Ditech is not a necessary party to the California Action as required under Federal Rule 19 because (a) Movant cannot bring a declaratory judgment against Ditech under applicable law (*id.* ¶¶ 28–35), and (b) Ditech need not be a party for Movant to receive complete relief for his breach of contract and accounting claims against Shellpoint (*id.* ¶¶ 36–38); (iv) there is no applicable exception to the Lien Release Motion and Lien Release Order that could be applicable to this Motion (*id.* ¶ 30 n.4); and (v) cause does not exist under the *Sonnax* factors to grant the Movant relief from the Plan Injunction (*id.* ¶¶ 39–55).

In the Reply, Movant reasserts that Ditech is a necessary party to the California Action and that cause exists under the *Sonnax* factors to grant the relief requested in the Motion. *See* Reply ¶¶ 30–42. Movant also reasons that the Lien Release Motion and Order provide an exception to the Plan Injunction, and that the relief he seeks against Ditech in the California Action is analogous to that provided for in the Lien Release Order. *See id.* ¶¶ 2–13. Further, he argues that the claims in the California Action are different from those alleged in support of the First California Action Complaint upon which the Rabadi Claim was based, and therefore the claim expungement orders do not bar the California Action, pursuant to the application of the *res judicata* doctrine. *See id.* ¶¶ 16–29. In addition, Movant argued at the hearing that his claims are premised on different facts from those asserted in the Rabadi Claim. *See* Feb 24, 2022 Hr'g Tr. at 37:12-20. Specifically, Movant alleges that the claim expungement orders did not address facts related to the inaccurate credit reporting. *See id.* at 38:10-18, 79:13-19. Movant alleges both new and continuing harm to this day related to the inaccurate credit reporting, first by Ditech and then later by Shellpoint. *See id.* at 39:21-40:4. Finally, Movant argued that his claims for a declaratory judgment are not barred by *res judicata* because of an exception to the Federal Declaratory Judgment Act.

The Court reviews these claims below.

## Discussion

### Whether The Declaratory Judgment Claim Is Barred By The Doctrine Of *Res Judicata*

The WDE contends that the Movant's Declaratory Judgment Claim against Ditech is barred by the doctrine of *res judicata*. It argues that because the Rabadi Claim Order expunging the Rabadi Claim was entered without objection by the Movant and was not appealed, the order constitutes a final adjudication of the Rabadi Claim on the merits. *See* Objection ¶ 24. At the

hearing, the WDE clarified its position and asserted that because the Court expunged the Rabadi

Claim under the Bankruptcy Code (and thus federal law), the Declaratory Judgment Claim is

barred by the application of federal *res judicata* law. *See* Feb 24, 2022 Hr'g Tr. at 65:1-17.

Federal law governs the question of whether the disallowance and expungement of the

Rabadi Claim bars prosecution of the Amended Complaint against Ditech. *See In re Ames Dep't.*

*Stores, Inc.*, No. 01-42217, 2006 WL 2400107, at *11 (Bankr. S.D.N.Y. June 6, 2006), *aff'd*, No.

06-5394, 2008 WL 7542200 (S.D.N.Y. June 4, 2008), *aff'd*, 319 F. App'x 40 (2d Cir. 2009)

(applying federal preclusion law to issues previously decided by a federal court). Under federal

law, "res judicata, or claim preclusion, holds that a final judgment on the merits of an action

precludes the parties or their privies from relitigating issues that were or could have been raised

in that action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (internal

quotation marks omitted); *see also In re Residential Cap.*, *LLC*, 507 B.R. 477, 491 (Bankr.

S.D.N.Y. 2014) (quoting *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985) (noting

that in federal court, *res judicata* bars a cause of action that was or could have been litigated in a

prior proceeding if there exists "(1) a final judgment on the merits, (2) by a court of competent

jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same

[claim, or] cause of action.").

There is no dispute that this Court is a court of competent jurisdiction to issue the Rabadi

Claim Order. In this circuit, an order allowing a claim in a bankruptcy case is a final judgment

for the purpose of *res judicata*. *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621,

625 (2d Cir. 2007) (holding that "a bankruptcy court order allowing an uncontested proof of

claim constitutes a 'final judgment' and is thus a predicate for *res judicata*."). As support for that

determination, the circuit cited the Ninth Circuit's decision *Siegel v. Fed. Home Loan Mortg.*

*Corp.*, 143 F.3d 525 (9th Cir. 1998). In that case, the court held that "the allowance or disallowance of a claim in bankruptcy is binding and conclusive on all parties or their privies, and being in the nature of a final judgment, furnishes a basis for a plea of res judicata." *Id.* at 529 (internal quotation marks omitted); *see also In re Los Gatos Lodge, Inc.*, 278 F.3d 890, 894 (9th Cir. 2002) ("Proofs of claims themselves are not final judgments giving rise to res judicata, but the bankruptcy court's allowance or disallowance of a proof of claim is a final judgment."). The Court finds that on that basis, the Rabadi Claim Order disallowing the Rabadi Claim is a final judgment on the merits and thus a predicate for *res judicata.* Moreover, the Rabadi Claim Order states that the claim is "disallowed with prejudice" and that "this Order shall be a final order with respect to each of the . . . Claims identified on Exhibit A." Rabadi Claim Order at 2.

Movant does not dispute that he and Ditech are the relevant parties to the California Action and are the parties to the Rabadi Claim. However, he contends that that while some of the wrongs complained of in the Amended Complaint are the same as those set forth in the Rabadi Claim, the Amended Complaint includes allegations of wrongdoing that are not complained of or otherwise plead in the Rabadi Claim. *See* Reply ¶ 18. Movant asserts that the Amended Complaint alleges violations respecting fair debt collection practices, including repeated erroneous and otherwise false and improper reporting of late mortgage payments to credit bureaus and destruction of Movant's credit, that Ditech erroneously reported Movant's default and arrears to credit reporting agencies, that the erroneous reports damaged Movant's once pristine credit, and that Movant wants his credit record restored. *See* Amended Complaint ¶¶ 94, 98-99. He contends that none of those claims are alleged in support of the Rabadi Claim. Reply ¶ 19. Thus, he asserts that the Amended Complaint and Rabadi Claim do

not involve the same cause of action for purposes of the *res judicata* analysis. *Id.* ¶ 20. The Court

finds no merit to that argument.

Under federal law, *res judicata* bars cases that arise from the same "operative nucleus of

fact" from being relitigated. *In re Residential Cap., LLC*, 507 B.R. at 492; *see also Monahan v.*

*N.Y.C. Dept. of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000) ("[A] final judgment on the merits

of an action precludes the parties or their privies from relitigating issues that were or could have

been raised in that action."). "The essential question is whether the overlapping facts sufficiently

relate to each other to constitute a single transaction or series of transactions." *In re Residential*

*Cap., LLC*, 507 B.R. at 493. The Movant's Declaratory Judgment Claim is predicated on the

same set of facts that formed the basis of the Rabadi Claim, which the Court expunged in the

Rabadi Claim Order. Movant asserts that the facts alleged in support of the Amended Complaint

are different because these facts were reported to Credit Reporting Agencies and effected his

credit. *See* Reply ¶¶ 18-19. However, the issues arose from the same Loan, the same Property,

and the same disputed stream of payments. Therefore, the Declaratory Judgment Claim is barred

by application of *res judicata. See Alcarmen v. J.P. Morgan Chase Bank*, No. 13–1575, 2014

WL 3368647, at *7 (N.D. Cal. July 8, 2014) (noting that "[t]he civil actions in both state court

and this Court arise from the same loan, the same property, the same deed of trust, and the same

foreclosure proceedings" and determining that the same transactional nucleus of facts test is

met); *see also Northern California River Watch v. Humboldt Petroleum, Inc.*, 162 F.App'x 760,

763 (9th Cir. 2006) ("Simply identifying continuing harm from the same conduct is insufficient

to overcome res judicata."); *Huck on Behalf of Sea Air Shuttle Corp. v. Dawson*, 106 F.3d 45, 50

(3d Cir. 1997) (finding *res judicata* where the same set of facts from an earlier judgment caused

continued damage).

**Whether The Declaratory Judgment Exception To**
***Res Judicata* Applies To The Declaratory Judgment Claim**

Movant argues that the "Declaratory Judgment Exception" to *res judicata* applies to the Declaratory Judgment Claim. Supplemental Reply ¶ 15 ("[T]here is an exception to claim preclusion with respect to actions for declaratory judgment. As opposed to judgments in coercive actions, declaratory judgment actions do not bar matters that ***could*** have been litigated. A party to a declaratory judgment action may pursue declaratory relief based on the same cause of action in a later case."). As support for that proposition, Movant relies on *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 196 (2d Cir. 2010); *Allan Block Corp. v. Cty. Materials Corp.*, 512 F.3d 912, 916 (7th Cir. 2008) and the Restatement (Second) of Judgments § 33 (1982). *Id*. Movant misstates the Declaratory Judgment Exception.

The Declaratory Judgment Exception provides that "an exception to res judicata for cases in which the only relief sought in the first suit is a declaratory judgment." *Allan Block*, 512 F.3d at 916. The Declaratory Judgment Exception "limits the preclusive effect of the declaratory judgment to the subject matter of the declaratory relief sought and permits the plaintiff or defendant to continue to pursue further declaratory or coercive relief." *Duane Reade*, 600 F.3d at 196 (internal citations omitted). The cases cited by Movant stand for the proposition that where the first action is a declaratory judgment action, later coercive actions will not be barred by *res judicata.* The facts here call for a different result.  As the court held in *Duane Reade*, where the initial action is coercive, the declaratory judgment exception does not apply. *Id.* ("We agree with the district court's conclusion that there were claims other than those for declaratory relief and that those claims had the effect of disqualifying this case from the declaratory judgment exception."); *see also Mycogen Corp. v. Monsanto Co.*, 51 P.3d 297, 303-04 (Cal. 2002) ("a declaratory judgment does not constitute an absolute bar to subsequent proceedings[,]" but "only

purely declaratory judgments are exempt from the bar of res judicata, [which] is consistent with the view espoused by the Restatement Second of Judgments and the majority of courts that have considered this issue.") (citations omitted). The Rabadi Claim seeks "coercive" relief as it seeks relief against Ditech based on Ditech's "Negligence, Wrongful Foreclosure, and Unfair Business Practices." *See* First California Action Complaint ¶¶ 36-66. The Court finds that the Declaratory Judgment Exception does not apply, and that Movant is barred by application of the doctrine of *res judicata* from asserting the Declaratory Judgment Claim against Ditech in the Amended Complaint.

**Whether The Movant Can Bring The
Declaratory Judgment Claim Under Federal Law**

In any event, Movant is barred under the Federal Declaratory Judgment Act from asserting the Declaratory Judgment Claim. Movant seeks a declaratory judgment in the Amended Complaint stating that he never defaulted on his Loan and thus that Ditech lacked any right to record a Notice of Default Against the Property or to report any default or arrears of mortgage payments to credit reporting agencies. *See* Amended Complaint ¶¶ 92-100. Shellpoint removed the California Action to the federal court based upon federal question jurisdiction. Objection ¶ 33. The WDE argues that the Court should apply the Federal Declaratory Judgment Act as opposed to applying state law to the claim. *See Shell Gulf of Mex., Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 636 (9th Cir. 2014) (applying the federal Declaratory Judgment Act where the court was sitting in federal question jurisdiction); *cf. Cont'l Cas. Co. v. Nationwide Mut. Ins. Co.*, No. 14–07326, 2014 WL 12607694, at *7 (C.D. Cal. Nov. 3, 2014) ("Though not always consistently, federal courts have frequently applied California's declaratory judgment statute, Cal. Civ. Proc. Code § 1060, rather than the federal statute, 28 U.S.C. § 2201, when sitting in diversity.). The Court credits that argument.

The Federal Declaratory Judgment Act provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). This statute does not create new substantive rights, but merely expands the remedies available in federal courts. *Countrywide Home Loans, Inc. v. Mortg. Guar. Ins. Corp.*, 642 F.3d 849, 853 (9th Cir.2011). A federal court may only grant a declaratory judgment in "controversies which are such in the constitutional sense." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937). To determine whether a declaratory judgment action presents a justiciable case or controversy, courts consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *Shell Gulf of Mexico Inc*, 771 F.3d at 635. Similarly, under California law, the purpose of a declaratory judgment is to "serve some practical end in quieting or stabilizing an uncertain or disputed jural relation . . . or to liquidate doubts with respect to uncertainties or controversies that might otherwise result in subsequent litigation." *Meyer v. Sprint Spectrum L.P.*, 200 P.3d 295, 303 (Cal. 2009) (internal citations omitted).

Under the Federal Declaratory Judgment Act, "courts may decline the exercise jurisdiction where a declaratory judgment claim only seeks to review the legality of past conduct, or where it simply duplicates other, more germane causes of action, even if those cause of action fail." *Cont'l Cas. Co.*, 2014 WL 12607694, at *7; *see also Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986) (affirming dismissal of claim under the Declaratory Judgment Act where "[t]he legal relations between the parties are not uncertain or in need of clarification"); *SRS Distrib. v. Int'l Integration LLC*, No. 14-2178, 2014 WL 12579804, at *6 (C.D. Cal. Oct. 6,

2014) ("[C]ourts have refused to entertain DJA claims where the controversy has been

effectively settle by the decision of some other tribunal . . . or where the DJA claim only seeks to

adjudicate the legality of past conduct"); *Bornhauser v. Jacksonville Post Closing*, No. 15-9994,

2016 WL 7444965, at *6 (C.D. Cal. Mar. 17, 2016) ("This claim [for declaratory relief] fails as

to BANA because Plaintiff has not established the existence of a justiciable controversy between

herself and BANA, which no longer services her loan."). Movant also argues that the Bankruptcy

Code defines the term "claim" as the "right to payment . . . ; or right to an equitable remedy for

breach of performance if such breach gives rise to a right to payment . . . ." 11 U.S.C. §101(5).

Declaratory relief is neither and as such is not included in the meaning of "claim." Reply ¶ 14.

Movant also maintains that the Court has not considered whether to grant declaratory relief, and

thus, it could not have been expunged it as a cause of action when the Court expunged the

Rabadi Claim. *Id.* ¶ 34. Movant also argues that this standard is permissive – "courts may" – and

that this Court has discretion to allow the Declaratory Judgment Claim to continue.

Movant's arguments fail simply because there is no present or future dispute between

Movant and Ditech, as this Court already expunged the Rabadi Claim which was premised on

Ditech's actions while it acted as servicer of the Loan. Like the Rabadi Claim, the Amended

Complaint is predicated on the actions Ditech took or did not take in servicing the Loan. Further,

Ditech sold its servicing rights to the Loan prior to Plan confirmation. As such, Ditech no longer

services the Loan and has not done so for a number of years. As a result, it has no ability to take

any action or direct Shellpoint to do anything with respect to the Loan. *See Bornhauser*, 2016

WL 7444965, at *6; *In re Residential Cap., LLC,* 531 B.R. 1, 14–15 (Bankr. S.D.N.Y. 2015)

(dismissing request for declaratory relief and noting that "[b]ecause the Debtors no longer have

any interest in the First Priority Loan, Robertson has failed to establish how a favorable ruling

against the Debtors would redress any invasion of a legally protected interest."). For these

reasons, the Court finds that there is no "cause" to grant the relief requested simply because the

declaratory relief sought against Ditech is not permissible as a matter of law.

### Whether The Plan Injunction Bars Movant From Asserting The Declaratory Judgment Claim

The WDE contends that the Plan Injunction bars Movant from asserting the Declaratory

Judgment Claim in the Amended Complaint because that claim was extinguished, discharged,

and released under the Plan, and, as such, the Plan Injunction bars Movant from asserting it. *See*

Objection ¶¶ 26-27.  The Movant disputes that contention. He argues the Declaratory Judgment

Claim was not discharged under the Plan. *See* Reply ¶ 14. In substance, Movant argues that the

Plan incorporated the definition of "Claim" under section 101(5) of the Bankruptcy Code, and

that definition does not include declaratory relief which does not itself include a "right to

payment." *Id.* Therefore, Movant asserts that the Plan Injunction does not bar him from asserting

the Declaratory Judgment Claim. *See id.* ¶ 15.

The Court addressed a similar issue in these Chapter 11 Cases in resolving the *Browder*

Motion.[26] In that motion, the Plan Administrator and Consumer Representative jointly filed a

motion to enforce the Plan Injunction against Darryl K. Browder, a creditor, to enjoin that

prosecution of an action in Iowa state court (the "New Iowa Action"). In response to the motion,

Mr. Browder did not challenge the force of the Plan Injunction. Browder Decision at 16.[27]

Instead, Browder generally made unfounded assertions that his constitutional rights had been

---

[26]    *Joint Motion of Plan Administrator and Consumer Representative to Enforce the Plan Injunctions and Confirmation Order Against Darryl K. Browder, Hold Him in Contempt, and Impose Sanctions*, ECF No. 3529.

[27]    *Memorandum Decision and Order Granting the Joint Motion of Plan Administrator and Consumer Representative to Enforce the Plan Injunctions and Confirmation Order Against Darryl K. Browder, Hold Him in Contempt, and Impose Sanctions*, ECF No. 3627 (the "Browder Decision").

infringed in the course of various court proceedings. *See id.* at 14-15. In addition to rejecting

Browder's patently meritless constitutional claims, the Court conducted a thorough analysis of

the Plan Injunction. *Id.* at 20–21. The Court found that the Plan Injunction covers not just claims

asserted against the Debtors, but also claims affecting the Debtors. *Id.* at 20. The Court reasoned

that section 10.5 of the Plan

> enjoins a holder of a "Claim" from "commencing, conducting or continuing in any
> manner, directly or indirectly" any separate actions outside of the bankruptcy
> proceedings seeking, among other things, monetary relief against the Debtors, as
> well as "acting or proceeding in any manner, in any place whatsoever, that does not
> conform to or comply with the provisions of the Plan." Plan § 10.5(b). Accordingly,
> Section 10.5 Injunction bars continued prosecution of the New Iowa Action against
> Ditech and Wind Down Estates.

*Id.* at 17. The Court comes to the same conclusion here. Prosecution of the Declaratory Judgment

Claim will adversely affect Ditech. The Plan Injunction is applicable to the California Action.

**Whether The Lien Release Order And**
**Lien Release Motion Are Applicable**

In July 2021, the Plan Administrator moved for an order that, inter alia, found that the

WDE abandon any remaining interests in liens on borrowers' properties, and clarified that third

parties are permitted to commence and continue non-monetary quiet title actions (the "Lien

Release Motion").[28] As relevant to the Motion, in support of the Lien Release Motion, the Plan

Administrator argued that, given the advanced stage of the winding-down process, it was

inefficient to require the Plan Administrator to continue to respond to each title/lien inquiry, and

that such a requirement would keep these Chapter 11 Cases open for several additional years.

---

[28]    *Motion of Plan Administrator for Entry of Order in Aid of Execution of Third Amended Joint Chapter 11 Plan*
*of Ditech Holding Corporation and its Affiliated Debtors (I) Releasing Wind Down Estate Liens on Property Owned*
*by Borrowers, (II) Clarifying that Third Parties are Permitted to Commence and Continue Non-Monetary Quiet*
*Title Actions, (III) Finding Wind Down Estates and Plan Administrator Need Take No Further Action to Respond to*
*Title/Lien Inquiries, and (IV) Granting Related Relief*, ECF No. 3565.

Lien Release Motion ¶ 3. Accordingly, the Plan Administrator requested clarification "that Inquiry Parties are permitted . . . to commence and continue Title Disputes, including specifically actions for non-monetary quiet title claims or any other non-monetary relief to correct applicable land or motor vehicle records." *Id.* ¶ 4. The motion defined "Inquiry Parties" as "Borrowers, successor servicers, and third parties or their representatives . . . who seek to resolve issues with title and liens that have emerged in the chain of title to the properties in question, or otherwise seek to release liens on their properties that were not previously released (each a 'Title/Lien Inquiry')." *Id.* ¶ 2. The Lien Release Motion defined the term "Title Disputes" to refer to "actions involving the amount, validity, and/or priority of liens with respect to properties subject to mortgages owned or serviced by the Debtors," *id.* ¶ 1, and it further defined the term "Quiet Title Action" to refer to "actions for non-monetary quiet title claims or any other non-monetary relief to correct applicable land or motor vehicle records," *id.* ¶ 4. The Lien Release Motion provides that it does not modify the stay except in a limited circumstance of establishing a process by which an Inquiry Party may proceed with its Title Dispute or otherwise resolve issues with title and liens in the chain of title to the applicable property. *Id.* ¶ 22.

This Court entered an order granting commensurate relief (the "Lien Release Order").[29] The Lien Release Order clarifies that "the Automatic Stay remains modified to permit Inquiry Parties to commence and continue disputes, including Title Disputes and non-monetary Quiet Title Actions or other non-monetary relief against the Wind Down Estates." Lien Release Order ¶ 8. The Lien Release Order uses those terms as they are defined in the Lien Release

---

[29]  *Order Granting Motion of Plan Administrator for Entry of Order in Aid of Execution of Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors (I) Releasing Wind Down Estate Liens on Property Owned by Borrowers, (II) Clarifying that Third Parties are Permitted to Commence and Continue Non-Monetary Quiet Title Actions, (III) Finding Wind Down Estates and Plan Administrator Need Take No Further Action to Respond to Title/Lien Inquiries, and (IV) Granting Related Relief*, ECF No. 3673.

Motion. *Id.* at 1 n.2. The Lien Release Order also explicitly found that the WDE abandon all

interests in and release all liens on the property of any borrower "as it relates to any Title/Lien

Inquiry submitted or remaining unanswered after entry of this Order, including any future

Title/Lien Inquiries." *Id.* ¶ 7.

Essentially, Movant argues that there are exceptions to the Plan Injunction, specifically in

connection with quiet title actions for properties that were "subject to mortgage [sic] owned or

serviced by the Debtors." Reply ¶ 3 (alteration in original). Specifically, he contends that the

Lien Release Motion and Lien Release Order permit him to name Ditech as a defendant in the

California Action. *Id.* The Movant asserts that in seeking to implement the Lien Release Order,

the Plan Administrator recognized the need to provide for an efficient process by which inquiry

parties may commence and prosecute non-monetary quiet title actions because the WDE no

longer holds any interest in the respective liens (and may have abandoned any interest in the

lien), and hopefully obtain an expedited resolution of their quiet title actions. *Id.* ¶ 10. He

analogizes uncontested motions pertaining to Ditech's abandoned or nonexistent interest in liens

to his contested motion for relief from the Plan Injunction to join Ditech as a party in ongoing

litigation and to obtain a declaratory judgment requiring Ditech to rectify his credit. *Id.* ¶¶ 10, 13.

The WDE argues briefly that the Lien Release Motion and Order apply only "to quiet title

actions for properties that were subject to mortgage[s] owned or serviced by the Debtors and

[are] not applicable" to Movant's instant Motion or the California Action. Objection ¶ 10 n.4.

The Court agrees with the WDE's argument.

Fundamentally, Movant does not seek to quiet title to land, correct land, or vehicle

records, or bring an action involving the amount, validity, and/or priority of liens. The Lien

Release Motion and Lien Release Order afford claimants a channel (outside the bankruptcy

claim resolution process) by which claimants can bring non-monetary claims against Ditech and

obtain efficient resolution of their loan-related disputes. Instead, Movant seeks only "declaratory

judgment regarding whether the Debtor erred in connection with accounting and/or reporting the

Loan and as to the relative rights and activities in connection with the Movant, the Debtor, the

Property and the Loan." Motion at 12. Movant chiefly errs in his assertion that the Lien Release

Order allows him to pursue the Declaratory Judgment Claim against Ditech just because it is

non-monetary. *See* Reply ¶ 13. Instead, the Lien Release Order is tailored to situations where

parties "seek to resolve issues with title and liens that have emerged in the chain of title to the

properties in question, or otherwise seek to release liens on their properties that were not

previously released." Lien Release Motion ¶ 2. Because Movant does not seek such relief, he

does not qualify as an "Inquiry Party" for purposes of the Lien Release Order.[30] *See id.* Further,

this is not a Title Dispute because resolution of the Declaratory Judgment Claim would not

resolve the amount, validity, or priority of any lien. *See id.* ¶ 1. Moreover, the declaratory action

is not a Quiet Title Action because it does not request "non-monetary relief to correct applicable

*land or motor vehicle* records." *Id.* ¶ 4 (emphasis added). To the contrary, it seeks unique relief

in the form of a declaratory judgment with the ultimate goal of improving Movant's credit.

Accordingly, the relevant provision of the Lien Release Order is patently inapplicable. Lien

Release Order ¶¶ 7-8.

     The Court finds no grounds to construe the Lien Release Order to apply to the distinct set

of facts here, where Movant seeks to continue the California Action and name Ditech as a

---

[30]   Title/Lien Inquiries are made for a variety of reasons, e.g., former Borrowers may have lost the lien release
documents, title agents may have failed to record the lien release, the recording agency may have failed to record the
document, etc.  To aid Borrowers and mortgage servicers in reaching satisfactory resolutions of their Title/Lien
Inquiries and Title Disputes, the Plan Administrator has remained responsive to each post-Effective Date Title/Lien
Inquiry to the extent possible. Lien Release Motion ¶ 2.

23

necessary party to obtain a declaratory judgment against it and require that Ditech take actions to rectify his credit report. The Lien Release Order pertains only to uncontested matters wherein the Debtors have abandoned any interest in a lien. By contrast, Movant does not seek to settle any related title issues. The two circumstances are distinct. The Lien Release Order provides only a narrow exception to allow parties to resolve lien disputes. While Movant seeks solely declaratory relief against Ditech, that non-monetary request is not equivalent to the narrowly tailored relief granted in the Lien Release Order. Thus, Movant has again failed to show cause as to why he is entitled to relief from the Plan Injunction.

**Whether Ditech Is A Necessary**
**Party To The California Action**

Movant contends that Ditech is a necessary party to the California Action and, as such, is required to be joined therein. Motion at 5; *see also* Supplemental Reply ¶ 8. He further says that complete relief cannot be accorded without Ditech because it was Ditech who misapplied or failed to account for the Loan payments while it acted as servicer. Motion at 5; *see also* Supplemental Reply ¶ 4. Therefore, he asserts that it is only Ditech and not Shellpoint that may fix the mistakes and make him whole. *See* Supplemental Reply ¶¶ 4, 7. Movant says that a declaratory judgment requiring full correction to Movant's records is necessary to remedy the Notice of Default Ditech previously filed. He also asserts that Ditech must be joined as a necessary party so that he may pursue his claims against Shellpoint for breach of contract and an accounting. Motion at 5. The WDE argues that Ditech cannot be deemed a necessary party because there is no relief that can be accorded by Ditech. *See* Objection ¶¶ 33-35.

Federal Rule of Civil Procedure 19(a) governs mandatory joinders of necessary parties. Specifically, it provides that,

    (1) Required Party. A person who is subject to service of process and whose joinder
will not deprive the court of subject-matter jurisdiction must be joined as a party
if:

        (A) in that person's absence, the court cannot accord complete relief
among existing parties; or

        (B) that person claims an interest relating to the subject of the action and is
so situated that disposing of the action in the person's absence may:

            (i) as a practical matter impair or impede the person's ability to
protect the interest; or

            (ii) leave an existing party subject to a substantial risk of incurring
double, multiple, or otherwise inconsistent obligations because of
the interest.

Fed. R. Civ. P. 19(a) is made applicable herein by Bankruptcy Rule 7019. "It is well established that a party to a contract which is the subject of the litigation is considered a 'necessary' party." *Known Litig. Holdings, LLC v. Navigators Ins. Co.*, 934 F. Supp. 2d 409, 421 (D. Conn. 2013); *see Delcon Constr. Corp. v. U.S. Dep't of Hous. & Urban Dev.*, 205 F.R.D. 145, 148 (S.D.N.Y. 2002) (same); *Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 141 (2d Cir. 2002) ("If the resolution of a plaintiff's claim would require the definition of a non-party's rights under a contract, it is likely that the non-party is necessary under Rule 19(a)."); *Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 707-08 (S.D.N.Y. 1997) (stating that a "direct party to the contract which is under dispute" is "a necessary party to this litigation"); *Kawahara Enters., Inc. v. Mitsubishi Elec. Corp.*, No. 96-9631, 1997 WL 589011, at *3 (S.D.N.Y. Sept. 22, 1997) (determining that the "adjudication of plaintiff's breach of contract . . . claims" required the parties to the contract to be joined as necessary parties to the action). Further, a party is only necessary if meaningful relief is impossible without joining that party. *Disabled Rts. Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004) ("In conducting the Rule 19(a)(1) analysis, the court asks whether the absence of the party would preclude the district court from fashioning meaningful relief as between the parties.").

As an initial matter, Ditech does not and cannot possibly have an interest in the California Action, as Ditech no longer services the Loan and has assigned all rights associated with the Loan to Shellpoint. Specifically, the Corporate Assignment of Deed of Trust assigning all servicing rights to the Loan from Ditech to Shellpoint provided that Ditech "convey, grant, assign, transfer and set over . . . all rights due" on the Deed of Trust to Shellpoint. *See* Objection, Ex. H (Corporate Assignment of Deed of Trust). Therefore, by the very language of the Assignment, Ditech has no rights or authority as it relates to the Property and has not had any such rights since April 2020. Further, Movant admits that "Ditech has abandoned and release [sic] all interest in and to the Loan." Motion at 10. Thus, there is nothing supporting Movant's contention that Ditech is a necessary party, as complete relief between the current parties to the California Action (Shellpoint and Movant) can be accorded without joining Ditech. But even assuming *arguendo* that the Court found that Ditech was a necessary party, Ditech would not be able to provide any relief to Movant because Ditech no longer has any rights to the Loan.

**Whether Cause Exists Under The Sonnax Factors**
**To Grant Movant Relief From The Plan Injunction**

Movant asserts that cause exists under the *Sonnax* factors to grant relief from the Plan Injunction. *See* Motion at 9. The Court disagrees and finds that Movant has not, and cannot, demonstrate cause to lift the Plan Injunction to permit him to proceed against Ditech in the California Action. The Court reviews the factors as argued by the parties.

The twelve *Sonnax* factors are as follows:

(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286. All twelve factors may not be relevant in every case, *In re Bogdanovich*, 292 F.3d 104, 110 (2d Cir. 2002), nor is each factor assigned equal weight in every case, *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994).

A movant bears the initial burden of demonstrating cause for relief from a plan injunction. *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 142 (2d Cir. 1999). If the movant "cannot satisfy the relevant *Sonnax* Factors and thereby fail to make an initial showing of cause for relief from the injunction, the Court will deny the motion." *In re SquareTwo Fin. Servs. Corp.*, 2017 WL 4012818, at *5. However, if a movant meets its burden and demonstrates cause for relief from a plan injunction, the burden will shift to the plan administrator to prove that the debtor is "entitled to the continued protections of the injunction." *Id.* Here, Movant asserts that the *Sonnax* factors weigh in favor of granting relief from the Plan Injunction. Motion at 10. The WDE says that Movant cannot show "cause" by satisfying the *Sonnax* factors. Objection ¶¶ 39–55. The Court reviews each of the factors below.

1.    <u>Whether relief would result in a partial or complete resolution of the issues</u>

Movant says that relief from the Plan Injunction would permit him to finally obtain a real resolution to his issues concerning the Loan, as neither Shellpoint nor any other successor servicer would be able to hide behind Ditech's actions or lack of action. *See* Motion at 10. Further, Movant says that complete relief against Ditech was not already adjudicated through the orders expunging the three Proofs of Claim and so the relief in the Motion is not barred by *res*

*judicata*. *See* Reply ¶ 33. Additionally, Movant asserts that complete relief can only be accorded to him if Ditech is made a party to the California Action. *See id.* The WDE asserts that Ditech cannot provide any relief to Movant, since Ditech has no rights to the Loan. *See* Objection ¶ 43.

The Court agrees with the WDE's position. As discussed above, Movant's Declaratory Judgment Claim is barred by *res judicata*. The issues in this case were completely resolved when the Court expunged the Rabadi Claims, and further litigation of "those claims in *any* forum would be futile." *In re Residential Cap., LLC*, 507 B.R. at 848. Further, Ditech retains no interest in the Loan or the Property and so there is no relief that Ditech can provide to Movant. For these reasons, the Court finds that this factor weighs against granting relief from the stay and the Plan Injunction.

2.    <u>Lack of any connection with or interference with the bankruptcy case</u>

Movant asserts that, because the Declaratory Judgment Claim was not raised in the Rabadi Claim, it was not expunged and therefore is not barred by *res judicata*. Thus, he says that the Declaratory Judgment Claim has not yet been considered, let alone expunged, so there can be no interference "with the orderly administration of the claims reconciliation process," nor are this Court's orders being undermined. Reply ¶ 34. He further asserts that, because the Debtor has no asset left to protect, it is not entitled to the continued protection of the Plan Injunction. *Id.* The WDE asserts that the claim underlying the Declaratory Judgment Claim was already considered and is barred by *res judicata*. Objection ¶ 44.

This factor weighs against granting relief from the Plan Injunction. If the Court were to modify the Plan Injunction to permit Movant to seek the requested relief against Ditech—relief that this Court has already considered and denied and which would require that the WDE litigate the claim again in another forum—it would undercut the finality of the Court's order, the

administration of claims process, and the purpose of the stay and Plan Injunction. *See In re Residential Cap., LLC*, 501 B.R. 624, 644 (Bankr. S.D.N.Y. 2013) (noting that requiring debtors to continue participating in state court litigation "would upend the 'strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court'" and that any additional litigation costs would diminish the estate (quoting *Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir. 1992))). Therefore, this factor weighs heavily in favor of denying the Motion.

3.    <u>Whether the other proceeding involves the debtor as a fiduciary</u>

Movant says that Ditech's role in servicing his Loan is "akin to that of a fiduciary, whose pre-and post-petition activities are being relied and acted upon by a present servicer post-petition." *See* Motion at 10–11. However, California law is clear that a mortgage servicer owes no fiduciary duties to its mortgagor. *See Davis v. Nationstar Mortg.*, *LLC*, No. 16-2599, 2016 WL 7178466, at *8 (E.D. Cal. Dec. 9, 2016) ("Here, with regard to plaintiffs' claim that defendants breached a duty with regard to their conduct in lending and servicing the mortgage loan, and in their attempts to foreclose on the property at issue, the allegations show that defendants owed no such duty to plaintiffs as a matter of law."); *Huerta v. Ocwen Loan Servicing*, No. 09-05822, 2010 WL 728223, at *4 (N.D. Cal. Mar. 1, 2010) ("[A] loan servicer has no fiduciary duty to a borrower when its involvement in the transaction does not exceed the scope of its conventional role as a loan servicer."). Because no fiduciary relationship exists here, the third *Sonnax* Factor weighs against lifting the stay. *See In re Residential Cap., LLC*, No. 12-12020, 2012 WL 3555584, at *3 (Bankr. S.D.N.Y. Aug. 16, 2012).

4.    Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action

Movant asserts that the California Court "is a specialized forum with the necessary expertise to hear and decide the [] California Action." Motion at 11. He also asserts that California courts "are specialized forums relative to a bankruptcy court in New York when it comes to adjudicating issues pertaining to a California mortgage, the servicing of that mortgage, and California real property of a California individual." Reply ¶ 35. The WDE argues that the "Central District of California is not a specialized tribunal." Objection ¶ 46 (citing *In re Containership Co. (TCC) A/S*, 466 B.R. 219, 232 (Bankr. S.D.N.Y. 2012)).

There is limited case law interpreting this factor. *In re Bogdanovich*, 292 F.3d at 110 (2d Cir. 2002) (noting that not every *Sonnax* factor is relevant in each case). At least one court has held that this factor weighs against granting relief where the movants failed to demonstrate "the exclusive or primary jurisdiction" of another court over the cases they seek to prosecute. *In re Containership Co. (TCC) A/S*, 466 B.R. at 232. While the California court may be better versed in state law issues arising under California law, the Movant has not shown that it has exclusive or primary jurisdiction over the case. *See id.* In that vein, the request for declaratory judgment arises under the Federal Declaratory Judgment Act, which essentially any federal court could adjudicate. Thus, this factor weighs against granting the Motion.

5.    Whether the Debtor's insurer has assumed full responsibility for defending it

Movant asserts that it is "unaware whether Debtor's insurer, if any, has assumed full responsibility for defending it in the [] California Action," but it "submits that the cost of defense should be minimal to Debtor as the facts underlying the [] California Action are not overly complex and there should be no real material dispute regarding them." Motion at 11. The WDE states that Ditech would not be represented by an insurer if it is joined in the California Action.

Objection ¶ 47. Thus, if the Court were to allow the California Action to proceed, "Ditech would be forced to directly incur the costs of all legal fees and expenses to defend their interests." *Id.* (citing *In re Residential Cap., LLC*, No. 12–12020, 2012 WL 3249641, at *5 (Bankr. S.D.N.Y. Aug. 7, 2012); *DePippo v. Kmart Corp.*, 335 B.R. 290, 298 (S.D.N.Y. 2005)). The Movant does not dispute the WDE's assertion in its Reply.

This factor is typically binary—either an insurer has assumed responsibility, or no insurer has assumed liability. Movant initially asserted that it was unaware of whether an insurer has assumed responsibility, Motion at 11, and the WDE clarified that no insurer had done so, Objection ¶ 47. *See In re Residential Cap., LLC*, 2012 WL 3249641, at *5 ("[The movant] believes that the Debtor Defendants have insurance coverage for some or all of any judgment rendered against them, but the Objection shows that this belief is mistaken."). Accordingly, the fifth *Sonnax* factor weighs against granting relief from the Plan Injunction. *See id.*

6.    Whether the action primarily involves third parties

On the sixth factor, Movant makes only the conclusory assertion that "the [] California Action primarily involves third parties." Motion at 11. The WDE asserts that the "contention that the California Action primarily involves third parties, while true, is undermined by Movant's argument that Ditech is somehow a necessary party to the California Action." Objection ¶ 48. Further, there is no need "to modify the Plan Injunction to assist Movant in resolving claims against Shellpoint, especially where doing so would disturb a final judgment against the Movant and frustrate the orderly disposition of claims under the Plan." *Id.* (citing *In re SquareTwo Fin. Servs. Corp.*, 2017 WL 4012818, at *7 n.11).

In his Reply, Movant asserts that "Ditech can be viewed as a primary party." Reply ¶ 36. The Reply refers broadly to the portion of Supplemental Reply that argues "Ditech is necessary

in California." *Id.* The relevant portion of the Supplemental Reply primarily asserts that Ditech is

a necessary party under Federal Rule of Civil Procedure 19. Supplemental Reply ¶¶ 6–12.

A bankruptcy court "should not grant relief from the stay under the sixth *Sonnax* Factor if

the debtor is the main party to the litigation." *In re Residential Cap., LLC*, 2012 WL 3555584, at

\*4 (citing *City Ins. Co. v. Mego Int'l Inc. (In re Mego Int'l Inc.)*, 28 B.R. 324, 326 (Bankr.

S.D.N.Y. 1983)); *see Jackson v. GMAC Mortg., LLC*, No. 12-00111, 2013 U.S. Dist. LEXIS

181066, at \*12 (S.D. Ala. Dec. 30, 2013) ("The court should not grant relief from the stay under

the sixth *Sonnax* Factor if the debtor is the main party to the litigation."); *see also In re*

*WorldCom, Inc.*, 2006 WL 2270379, at \*10 (holding that the bankruptcy court did not abuse its

discretion in holding that the sixth *Sonnax* factor did not favor lifting the stay because the action

did not primarily involve third parties); *In re Taub*, 413 B.R. 55, 64–65 (Bankr. E.D.N.Y. 2009)

(holding that, where the debtor and the movant (the debtor's estranged husband) were both active

participants in the bankruptcy case and the divorce action the movant sought to prosecute, the

sixth *Sonnax* factor was neutral).

Fundamentally, the WDE concedes that the Debtors are not the main parties to the

California Action but contends that Movant's argument to that effect is inconsistent with his

position that Ditech is a necessary party to that action under Federal Rule of Civil Procedure 19.

*See* Objection ¶ 48. Confusingly, the Reply and Supplemental Reply double down on Movant's

position that Ditech is a necessary party. *See* Reply ¶ 36; Supplemental Reply ¶¶ 6–12. In any

event, because the Movant maintains that Ditech is a necessary party to the California Action, he

has failed to meet his burden on this factor.  *See In re SquareTwo Fin. Servs. Corp.*, 2017 WL

4012818, at \*5. Accordingly, the sixth *Sonnax* factor weighs against granting relief. *See In re*

*Residential Cap., LLC*, 2012 WL 3555584, at \*4.

7.    <u>Whether litigation in another forum would prejudice the interests of other creditors</u>

Movant argues that prosecution of the California Action would not prejudice the interests of other creditors because "remedying prior erroneous accounting and reporting . . . will not expose Debtor to any monetary judgment or otherwise divert funds from other creditors." Motion at 11. The WDE contends that allowing the California Action to proceed "will prejudice the interest of other creditors by requiring Ditech to expend money and time towards defending an action on the other side of the country that has already been resolved by the Bankruptcy Court in the claims reconciliation process." Objection ¶ 49 (citing *In re SquareTwo Fin. Servs. Corp.*, 2017 WL 4012818, at *7). In his Reply, Movant contends that Ditech could avoid the cost of litigation it fears by voluntarily settling, which would not cause any harm to creditors. Reply ¶ 37.

The Court finds that because the claim was already adjudicated, there is no need for the Debtor to expend additional funds or relitigate closed matters.  Therefore, this factor weighs against granting the Motion.

8.    <u>Whether the Declaratory Judgment Claim arising from the other action is subject to equitable subordination</u>

Movant and the WDE agree that the California Action will not result in any equitable subordination, rendering this factor irrelevant. *See* Motion at 11; Objection ¶ 50; Reply ¶ 38. Accordingly, this factor is inapplicable here. *See In re Bogdanovich*, 292 F.3d at 110.

9.    <u>Whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor</u>

Movant and the WDE agree that the California Action will not result in an avoidable judicial lien, rendering this factor irrelevant. *See* Motion at 11; Objection ¶ 51; Reply ¶ 39. Accordingly, this factor is also inapplicable here.  *See In re Bogdanovich*, 292 F.3d at 110.

10.     The interests of judicial economy and the expeditious and economical resolution of
litigation

Movant asserts that "the interests of judicial economy and the expeditions and

economical resolution of litigation weigh in favor of the relief sought herein and adding the

Debtor as a party in the [] California Action, including but not limited to the reasons already

outlined in connection with the other factors." Motion at 11. The WDE contends that allowing

Movant "to set aside this Court's final judgment on the Rabadi Claim and file claims raising the

same underlying issues again in California undercuts the orderly disposition of claims,"

especially because "there is no basis to bring a declaratory judgment action against Ditech since

[there] is no actual dispute between Ditech and Movant: monetary relief claims are barred and

any injunctive relief is moot." Objection ¶ 52. In his Reply, Movant generally reiterates his

position that "Movant seeks to pursue Ditech for declaratory judgment on account of matters that

have not yet been adjudicated, and, in any event, an order directing Ditech to notice requisite

reporting agencies, etc. of its errors and restore Movant's credit." Reply ¶ 40.

The Court agrees with the WDE. Because the claims were already adjudicated and the

orders remain final, it is plainly not in the interest of judicial economy to reopen those claims and

require Ditech to appear as a party in a case across the country. *See In re Burack, Inc.*, 132 B.R.

814, 817–18 (Bankr. S.D.N.Y. 1991) (noting that judicial economy was not served by allowing

the completion of a "proceeding which may ultimately be irrelevant and which would interfere

with the debtor's efforts to formulate and achieve a successful Chapter 11 plan of

reorganization"); *see also In re Cicale*, No. 05-14462, 2007 WL 1893301, at *4 (Bankr.

S.D.N.Y. June 29, 2007) (noting that the tenth *Sonnax* factor weighed in favor of granting relief

only where relief would not result in delay and allowing other prosecution to proceed might

"alleviate the need for any further proceedings in the bankruptcy court."). Accordingly, this

factor weighs against granting the Motion.

11.     Whether the parties are ready for trial in the other proceeding

Movant asserts that the California Action has been pending for several years.  Motion

at 11.  The WDE says that the parties are still at the pleading stage, and it appears that the parties

are a long way from trial. Objection ¶ 53.

This factor relates to the stage the litigation is currently in, not the length of time the case

is on the docket. *See Sonnax*, 907 F.2d at 1287. Where an action has not started discovery and

the parties are not prepared for trial, this action weighs against lifting the stay. *See In re Bally

Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 624 (Bankr. S.D.N.Y 2009) ("[T]he

parties have not even started conducting the extensive discovery necessary to make a

determination on the class certification issue and are therefore not ready for trial.").

While the actions may have been pending for some time, the matter before the Court is

the Motion to allow Movant to file an Amended Complaint naming Ditech as a necessary party.

The Court finds that the parties are still in the early pleading stages. This factor weighs against

granting the Motion.

12.     Impact of the stay on the parties and the balance of harms

Movant asserts that lifting the Plan Injunction will permit him to obtain relief that he has

been pursuing in California for years, without significantly impacting the Debtor, and denial of

the Motion would cause him greater harm. Motion at 11. The WDE asserts that granting the

Motion would subject the Debtor to additional litigation costs for claims already resolved by this

Court. Objection ¶ 54.

The Court agrees with the WDE. The underlying claims that form the basis of the

declaratory judgment action have been resolved. For that reason, requiring the Debtor to reopen

litigation on a closed matter, in another forum goes against the principles of *res judicata* and

judicial economy. *See In re SquareTwo Financial Serv. Corp.*, 2017 WL 4012818, at \*7; *see also*

*In re Residential Cap., LLC*, No. 12-12020, 2012 WL 3423285, at \*8 (Bankr. S.D.N.Y. Aug. 14,

2012) (noting that the movant "like all other unsecured creditors of the Debtors, should not be

permitted to litigate his affirmative claims for damages outside of the bankruptcy court"). For

this reason, this factor weighs heavily in favor or denying the Motion. For these reasons, the

Court finds that Movant has failed to plead "cause" under the *Sonnax* factors for relief from the

Plan Injunction to pursue the California Action against Ditech. On this, the Court denies the

Motion.

### Conclusion

For all of the foregoing reasons, the Court finds that the Movant has not satisfied his

burden to demonstrate "cause" to justify granting relief from the Plan Injunction. Accordingly,

the Court denies the Motion.

IT IS SO ORDERED.


Dated: New York, New York
November 14, 2022


/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge