**UNITED STATES BANKRUPTCY COURT**          NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x

In re:                                              :
                                                    :   Case No. 19-10412 (JLG)
                                                    :   Chapter 11
Ditech Holding Corporation, *et al.*,               :
                                                    :
                                                    :   (Jointly Administered)
                                   Debtors.[1]      :

------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER SUSTAINING THE FORTY-THIRD OMNIBUS OBJECTION TO PROOF OF CLAIMS (NO BASIS CONSUMER CREDITOR CLAIMS) AGAINST MICHAEL J. KELSEY

**A P P E A R A N C E S :** [2]

WEIL, GOTSHAL & MANGES, LLP
*Attorneys for Plan Administrator*
767 Fifth Avenue
New York, New York 10153
By:    Ray C. Schrock, P.C., Esq.
       Sunny Singh, Esq.

JENNER & BLOCK, LLP
*Attorneys for the Consumer Representative*
919 Third Avenue
New York, New York 10022
By:    Richard Levin, Esq.

Mr. Michael J. Kelsey
*Appearing Pro Se*
67 Grove Avenue
East Hanover, New Jersey 07936

---

[1]    The Debtors' *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1326, was confirmed, which created the Wind Down Estates. The Wind Down Estates, along with the last four digits of each of their federal tax identification numbers, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573. References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412 (the "Chapter 11 Cases").

[2]    Mr. Kelsey is acting pro se herein and, as such, filed pleadings in response to the Objection to his Claim. As explained below, the Court scheduled a telephonic Sufficiency Hearing on the contested claim Objection on several occasions. Health problems prevented Mr. Kelsey from attending any of the scheduled hearings and likely would prevent him from attending a future scheduled Sufficiency Hearing. Accordingly, after a conference with a representative of Mr. Kelsey and representatives from the Plan Administrator and Consumer Representative, the Court determined to resolve the Objection on the papers, without a hearing.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## Introduction[3]

On January 18, 2019, the Superior Court of New Jersey, Chancery Division, Morris County (the "State Court") awarded Ditech Financial LLC f/k/a Green Tree Servicing LLC ("Ditech") summary judgment in its action (the "Foreclosure Action") to foreclose on the Property securing its Mortgage Loan to Michael J. Kelsey (the "Claimant"). In doing so, the State Court dismissed, with prejudice, the affirmative defenses and Counterclaims that the Claimant asserted in his Answer to the State Court Complaint. On April 28, 2019, Mr. Kelsey filed Proof of Claim No. 1620 (the "Claim")[4] against Ditech in these Chapter 11 Cases as a secured claim in the sum of approximately $465,849. In substance, as support for the Claim, the Claimant relies on the Counterclaims that the State Court dismissed, with prejudice, in the Foreclosure Action.

In their Forty-Third Omnibus Claims Objection (the "Objection"),[5] the Plan Administrator and the Consumer Claims Representative (the "Consumer Representative") seek to disallow and expunge the Claim. The Claimant, appearing pro se, submitted a response to the

---

[3]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Objection, the Claims Procedure Order, and the Third Amended Plan.

[4]   The Claimant annexed voluminous documents in support of the Claim. Although there are separate single and multi-page documents, the pages of the documents attached are numbered sequentially. In citing to the documents attached to the Claim, the Court will cite to the numbered pages of the Claim.

[5]   *Forty-Third Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims)*, ECF No. 1976.

Objection (the "Response").[6] The Plan Administrator and Consumer Representative submitted a joint reply to the Response (the "Reply").[7]

In their Objection, the Plan Administrator and Consumer Representative challenge the legal sufficiency of the Claim. *See* Objection at 25. Pursuant to the Claims Procedures Order,[8] the filing of the Response caused an adjournment of the Objection so that the Court may conduct a Sufficiency Hearing (as defined in the Claims Procedure Order). Under that order, the legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[9] *See* Claims Procedures Order ¶ 3(iv)(a).

The Court scheduled a telephonic Sufficiency Hearing on the Claim for July 29, 2021.[10] At the Claimant's request and to accommodate his medical condition, the Court rescheduled the Sufficiency Hearing from July 29, 2021 to August 24, 2021.[11] Thereafter, at the Claimant's request and with the consent of the Plan Administrator and Consumer Representative, the Court adjourned and rescheduled the telephonic Sufficiency Hearing several times. In November 2022, the Plan Administrator requested a status conference with the Claimant and the Court, seeking

---

[6]   *Opposition/Objection to the Disallowance and Expungement of Claimant's Proof of Claim Number 1620*, ECF No. 2413. The Claim and Response are largely unsorted and contain few internal reference points. References herein to particular pages of the Claim and Response are cited to the particular PDF page of the Claim and Response.

[7]   *Joint Reply of Plan Administrator and Consumer Representative in Support of the Forty-Third Omnibus Objection with Respect to Claim of Michael J. Kelsey (Claim No. 1620)*, ECF No. 3600.

[8]   *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

[9]   Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

[10]   *Notice of Hearing of Forty-Third Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims) Solely as to Claim No. 1620*, ECF No. 3514.

[11]   *Notice of Agenda of Matters Scheduled for Telephonic Hearing on July 29, 2021 at 11:00 A.M.*, ECF No. 3572 ¶ 11.

direction on scheduling the Sufficiency Hearing, given the Claimant's continued inability to attend any such hearing.[12] On November 17, 2022, the Court conducted a telephonic status conference. Mr. Kelsey's caretaker attended the conference on his behalf. At the conference, the caretaker advised the Court that Mr. Kelsey remains ill and is unable to attend a telephonic Sufficiency Hearing.[13] She also inquired about the status of an offer to settle the Claim that she understood the Consumer Representative had made to Mr. Kelsey.[14] At the Court's request, the Consumer Representative agreed to resubmit the settlement offer to Mr. Kelsey, through the caretaker, who agreed to help facilitate the settlement discussions among the parties. The Court directed the Plan Administrator to provide a letter to the Court on or before December 9, 2022, setting forth the status of the settlement discussions.[15] The Court also advised the parties that if they were not able to resolve the Objection, the Court would consider the matter fully submitted and issue a written ruling on the Objection, without hearing argument on the Objection.[16] On December 9, 2022, the Plan Administrator reported that, while the parties exchanged multiple offers of settlement, they were unable to resolve the Objection.[17] The Plan Administrator requested that the Court issue a ruling on the Objection, which it now does.

Construing the Claim in the light most favorable to the Claimant, and drawing all inferences in his favor, the Claim fails to state a claim for relief against Ditech. As explained

---

[12]   *Notice of Agenda of Matters Scheduled for Telephonic Hearing on November 17, 2022 at 11:00 A.M.*, ECF No. 4381 ¶ 1.

[13]   *See November 17, 2022, Hr'g. Tr.*, ECF No. 4388 at 14:20-15:11.

[14]   *Id.* at 15:19-16:3.

[15]   *Minute Order signed on November 22, 2022*, ECF No. 4403.

[16]   *November 17, 2022 Hr'g. Tr.* at 18:6-11; *see also Minute Order signed on November 22, 2022.*

[17]   *Letter to the Honorable James L. Garrity, Jr. Regarding Status of Settlement Offer to Michael J. Kelsey*, ECF No. 4437.

below, the Claim is barred by application of the doctrine of res judicata under New Jersey state

law because the Claimant is asserting the same claims against Ditech that the State Court

dismissed, with prejudice, in granting Ditech summary judgment in the Foreclosure Action.

Moreover, in any event, none of the causes of action that the Claimant asserts in support of the

Claim state claims for relief under applicable non-bankruptcy law. Accordingly, the Court

sustains the Objection and disallows and expunges the Claim.[18]

### Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States

District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This

is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background[19]

On September 23, 2013, Claimant executed a note in the sum of $355,550 (the "Note")

secured by a mortgage ("Mortgage Loan") in favor of Mortgage Electronic Registration Systems

---

[18]   The Plan Administrator and Consumer Representative also object to the secured status of the Claim. The Court does not reach this issue, given its determination to disallow and expunge the Claim on the grounds that it fails to state a claim for relief.

[19]   As discussed below, in applying Rule 12(b)(6) to the Claim, the Court tests the legal sufficiency of the Claim. Accordingly, in resolving the Objection, the Court assumes the truth of the well-pleaded facts in support of the Claim. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact."). In support of the Claim and the Objection, the Claimant and Plan Administrator and Consumer Representative, respectively, rely on pleadings filed and decisions rendered in the Foreclosure Action. It is well settled that in resolving a Rule 12(b)(6) motion, the court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir.1979); *Kasey v. Molybdenum Corp. of Am.*, 336 F.2d 560, 563 (9th Cir. 1964) (where parties had history of litigation in state court, court took "judicial notice of . . . officially reported decisions and refers to them for a better understanding of the complicated factual situation here existing."); *Wingate v. Gives*, No. 05-1872, 2016 WL 519634, at *1 (S.D.N.Y. Feb. 5, 2016) (court took judicial notice of facts in reported state court decisions); *Church of Scientology Int'l v. Time Warner, Inc.*, 806 F. Supp. 1157, 1159 n.2 (S.D.N.Y. 1992) (court took judicial notice of reported decisions dealing with Scientology organizations); *see also Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (stating that on a motion to dismiss for failure to state a claim, a court may consider materials extrinsic to the pleadings, if the materials are integral to the complaint or matters subject to judicial notice). The matters at issue in

Inc. ("MERS") as nominee for Green Tree Servicing LLC. *See* Dismissal Order, Statement of Reasons at 1.[20] The Mortgage Loan was secured by the real property located at 67 Grove Avenue, East Hanover, New Jersey (the "Property"). *See id.* On December 7, 2015, MERS assigned the Mortgage Loan to Ditech, as successor in interest to Green Tree Servicing, LLC. *Id.*

In October 2017, the Claimant entered into a loan modification agreement with Ditech (the "Loan Modification Agreement"). *See id.* The Mortgage Loan, as modified (the "Modified Mortgage Loan"), incorporated the default terms of the Mortgage Loan and provided that "[a]ll the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder." *See* Loan Modification Agreement ¶ 8(a) (A copy of the Loan Modification Agreement is annexed to the Claim at pages 430-35). The Loan Modification Agreement called for the Claimant to make his first payment of $1,525.20 on or before December 1, 2017. *Id.* ¶ 8. Claimant failed to make this payment, and the Modified Mortgage Loan went into arrears. *See* Dismissal Order, Statement of Reasons at 1. By letter to the Claimant dated February 20, 2018 (the "Notice of Default") Ditech advised him that he was in default under the Loan Modification Agreement and demanded that he cure the deficiency by March 27, 2018. Claim at 127 (Notice of Default). Claimant did not make any payment on account of the Modified Mortgage Loan until May 2018. Dismissal Order, Statement of Reasons at 4-5.

---

the Claim mirror those at issue and finally resolved against the Claimant in the Foreclosure Action. The documents cited by the Claimant and Plan Administrator and Consumer Representative, respectively, directly bear on the merits of the Objection. Thus, subject to the standards applicable to Rule 12(b)(6) motions, the Court takes judicial notice of the documents that the Claimant and Plan Administrator and Consumer Representative rely on in support of their respective positions in this matter. As necessary, the Court cites to those documents herein.

[20]  *Order Granting Plaintiff's Motion for Summary Judgment*, No. F-012792-18 (N.J. Super. Ct. Ch. Div. Jan. 18, 2019). A copy of the Dismissal Order is annexed as Exhibit A to the Reply.

On June 19, 2018, Ditech sought to exercise its rights under the Modified Mortgage Loan to foreclose on the Property and filed a complaint (the "State Court Complaint") in the State Court, commencing the Foreclosure Action.[21] On August 15, 2018, Claimant filed an answer to the State Court Complaint (the "Answer"). *See* Claim at 6-66 (copy of the Answer).[22] In the Answer, among other things, he challenged whether Ditech processed the Loan Modification Agreement. He asserted that Ditech has not provided a verification of the debt necessary to rightfully commence foreclosure proceedings against the Property and that Ditech did not properly credit his loan payments, and therefore he was not in default under the Mortgage Loan. *See* Answer ¶ 1 (Claim at 8). In the Answer, the Claimant asserted counterclaims against Ditech (the "Counterclaims") for negligence, fraud, predatory lending, and unjust enrichment, as well as violations of the Truth in Lending Act ("TILA"), the New Jersey Consumer Fraud Act ("CFA"), and the Fair Debt Collection Practices Act ("FDCPA"). *See* Answer ¶ 10 (Claim at 53); *see also* Dismissal Order, Statement of Reasons at 2 (summarizing the Claimant's Counterclaims). On October 12, 2018, Ditech moved for summary judgment in the Foreclosure Action. Claimant did not assert a Counterclaim against Ditech under the Real Estate Settlement Procedures Act ("RESPA") and included his RESPA claims only in his opposition to summary judgment and in the failed attempt to amend his answer. *See id.* at 8. The State Court held that Ditech established that it held the Note, that the Note was valid, that the Claimant was in default under the Modified Mortgage Loan, and that Ditech had the right to foreclose on the Property. The State Court granted the summary judgment motion and dismissed the Counterclaims with prejudice. *See id.*

---

[21]   A copy of the State Court Complaint is included in the Claim. *See* Claim at 70-77.

[22]   In the Foreclosure Action, the Claimant filed an amendment to the State Court Complaint that was neither authorized nor recognized by the State Court. A copy of this document is also included in the Claim. *See id.* at 277-312.

at 1, 8. On April 1, 2019, Ditech transferred its servicing rights under the Mortgage Loan to

LoanCare, LLC ("Loan Care"). Shortly thereafter, Loan Care was substituted as plaintiff in the

Foreclosure Action in place of Ditech. *See* Reply, Ex. B (Order Substituting Plaintiff).

Claimant sought to have the State Court reconsider its decision in favor of Ditech and

moved, inter alia, to vacate the order granting summary judgment, for a temporary restraining

order, to reinstate defendant's answer, for reconsideration, and to stay the foreclosure

proceeding. Claim at 441-87 (Motion for Reconsideration).[23] The State Court denied the motion

with prejudice and barred the Claimant from filing any additional motions without first obtaining

leave of court ("Order Denying Claimant's Motions").[24] The State Court also granted sanctions

against Claimant and in favor of Loan Care for attorney's fees and costs related to its defense of

the various motions. Claimant did not appeal those orders.[25]

**The Chapter 11 Cases**

On February 11, 2019, Ditech Holding Corporation (f/k/a Walter Investment

Management Corp.) and certain of its affiliates (the "Debtors") filed petitions for relief under

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court. The

Debtors remained in possession of their business and assets as debtors and debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court

entered an order fixing April 1, 2019 at 5:00 p.m. (prevailing Eastern Time) as the deadline for

each person or entity, not including governmental units (as defined in section 101(27) of the

---

[23]    *Notice of Motion for Reconsideration of the January 18, 2019 Order; and to Reinstate Defendant's Answer and Affirmative Defenses; and to Reinstate Defendant's Counterclaims*

[24]    Civil Action Order, No. F-012792-18 (N.J. Super. Ct. Ch. Div. Aug. 31, 2020) A copy of that order is annexed as Exhibit C to the Reply.

[25]    *Id.*

Bankruptcy Code) to file a proof of claim in the Debtors' Chapter 11 Cases (the "General Bar Date").[26] Thereafter, the Court extended the General Bar Date for consumer borrowers, twice, and ultimately to June 3, 2019, at 5:00 p.m. (prevailing Eastern Time).[27]

On September 26, 2019, the Debtors confirmed their Third Amended Plan,[28] and on September 30, 2019, that plan became effective.[29] The Plan Administrator is a fiduciary appointed under the Third Amended Plan who is charged with the duty of winding down, dissolving, and liquidating the Wind Down Estates. *See* Third Amended Plan, art. I, ¶¶ 1.130, 1.184, 1.186. The Consumer Representative is a fiduciary appointed under the Third Amended Plan who is responsible for the reconciliation and resolution of Consumer Creditor Claims and distribution of funds to holders of Allowed Consumer Creditor Claims in accordance with the Third Amended Plan. *See id.* art. I, ¶ 1.41. Under the Third Amended Plan, the Plan Administrator, on behalf of each of the Wind Down Estates, is authorized to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims; and the Consumer Representative has the exclusive authority to object to all Consumer Creditor Claims. *See id.* art. VII, ¶ 7.1.

---

[26]    *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[27]    *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[28]    *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors*, ECF No. 1326 (the "Third Amended Plan"); *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors*, ECF No. 1404.

[29]    *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

**The Proof of Claim**

On April 28, 2019, Claimant timely filed the Claim against Ditech as a secured claim in the amount of approximately $465,849, based on the value of the Property and "pending lawsuit and judgment against the debtor," noting that he "believes debtor does not have possession of and never had possession of a true, actual, correct, valid and complete copy of the Note, original Note, Proof of Title, Promissory Note and/or Deed." Claim at 1-2. In support of the Claim, the Claimant relies on documentation filed in the Foreclosure Action, including exhibits attached thereto. *See id.* at 6-487. He alleges that: (i) Ditech did not hold "a true, valid and completed Promissory Note" when it commenced the Foreclosure Action; (ii) Ditech negligently serviced his account; (iii) Ditech acted fraudulently and violated the CFA; (iv) Ditech engaged in predatory lending; (v) Ditech was unjustly enriched; and (vi) Ditech violated the FDCPA, TILA, and RESPA. Response at 8, 12-13, 23, 25.

**The Objection**

In support of the Objection, the Plan Administrator and Consumer Representative challenge the sufficiency of the Claim and contend that it fails to state a claim for relief under applicable non-bankruptcy law. They contend that by application of Rule 12(b)(6), the Court must disallow and expunge it. *See* Reply ¶¶ 28, 54. They contend that the Claim is barred by application of the doctrine of res judicata because it is based on the Counterclaims that the State Court dismissed with prejudice. *Id.* ¶¶ 17-26. Alternatively, they contend that the Court should expunge the Claim because it fails to state a cognizable claim for relief against Ditech (*id.* ¶¶ 27-54) or, at a minimum, reclassify the secured claim as an unsecured Consumer Creditor Claim, subject to further determination of its status as a section 363(o) or non-section 363(o) claim (*id.* ¶¶ 55-62).

## Applicable Legal Standards

Under section 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The filing of a proof of claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See, e.g.*, *Rozier v. Rescap Borrower Claims Tr. (In re Residential Cap., LLC)*, No. 15-3248, 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 09-50026, 2012 WL 1886755, at *3 (S.D.N.Y. May 12, 2012); *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd sub nom. Peter J. Solomon Co., L.P. v. Oneida, Ltd.*, No. 09-2229, 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010). Section 502(b) sets forth the grounds for disallowing a properly filed proof of claim. *See* 11 U.S.C. § 502(b); *see also Travelers Cas. and Sur. Co. of Am. v. Pac. Gas and Elec. Co.*, 549 U.S. 443, 449 (2007) ("But even where a party in interest objects [to a claim], the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b).").

In filing the Objection, the Plan Administrator and Consumer Representative initiated a contested matter. *See* Fed. R. Bankr. P. 3007 advisory committee's note to 1983 adoption ("The contested matter initiated by an objection to a claim is governed by Rule 9014 . . . ."); *see also Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs., Inc.)*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter"). Bankruptcy Rule 9014 governs contested matters. The rule does not explicitly provide for the application of Bankruptcy Rule 7012. However, Bankruptcy Rule

9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply." Fed. R. Bankr. P. 9014. The Court did so here. Under the Claims Procedures Order, the legal standard of review the Court applies at a Sufficiency Hearing is equivalent to the standard applied by the Court under Rule 12(b)(6) on a motion to dismiss for failure to state a claim upon which relief could be granted. *See* Claims Procedure Order ¶ 3(iv)(a); *see also In re 20/20 Sport, Inc.*, 200 B.R. 972, 978 (Bankr. S.D.N.Y. 1996) ("In bankruptcy cases, courts have traditionally analogized a creditor's claim to a civil complaint [and] a trustee's objection to an answer . . . .").

In applying Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the Claim in light of the pleading requirements under Rule 8(a) of the Federal Rules of Civil Procedure.[30] Rule 8(a)(2) states that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet that standard, the Claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (hereinafter "*Iqbal*") (citations omitted); *accord Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (hereinafter "*Twombly*"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 570. To satisfy Rule 12(b)(6), the "pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). In considering whether that standard is met for a particular claim, the court must assume the truth of all material facts alleged in support of the claim and draw all reasonable

---

[30]    Rule 8 is incorporated herein pursuant to Bankruptcy Rule 7008.

inferences in the claimant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, the court "need not accord 'legal conclusions, deductions or opinions that are couched as factual allegations . . . a presumption of truthfulness.'" *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 591 (S.D.N.Y. 2008) (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)). In short, "[i]n ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). Where a claimant is proceeding pro se, the Court will construe the claim liberally, although the claim must nonetheless be supported by specific and detailed factual allegations that provide a fair understanding for the basis of the claim and the legal grounds for recovery against a debtor. *Kimber v. GMAC Mortgage, LLC (In re Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (citing *Iwachiw v. N.Y.C. Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005) (summary order)).

## Discussion

### *The Claim is Barred by Res Judicata*

Res judicata precludes a party from relitigating the same claims in a subsequent action that were, or could have been, litigated in a prior action. *See In re Residential Cap., LLC*, No. 12–12020, 2015 WL 1567131, at *2 (S.D.N.Y. Apr. 3, 2015) ("The doctrine of res judicata precludes the same parties from litigating claims in a subsequent suit based on the same cause of action if there has been a final judgment on those claims." (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008))). Res judicata and claim preclusion bar the "relitigation . . . of claims that were, or could have been, brought in an earlier litigation between the same parties or their

privies." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 919 (2d Cir. 2010). The doctrine

of res judicata is applicable to motions under Rule 12(b)(6). *Linden Airport Mgmt. Corp. v.*

*N.Y.C. Econ. Dev. Corp.*, No. 08-3810, 2011 WL 2226625, at *3 (S.D.N.Y. June 1, 2011). "It is

settled that under Rule 12(b)(6), dismissal of a claim on res judicata grounds is appropriate when

the elements of res judicata are apparent on the face of the claim." *In re Ditech Holding Corp.*,

No. 19-10412, 2021 WL 2881489, at *2 (Bankr. S.D.N.Y. July 6, 2021); *see also Murry v. GSA*,

553 F. App'x 362, 364 (5th Cir. 2014) (unpublished) ("Dismissal under Rule 12(b)(6) on *res*

*judicata* grounds is appropriate when the elements of res judicata are apparent on the face of the

pleadings." (citing *Kan. Reinsurance Co. v. Cong. Mortg. Corp.*, 20 F.3d 1362, 1366 (5th Cir.

1994))); *Freeman v. Sikorsky Aircraft Corp.*, 151 F. App'x 91, 92 (2d Cir. 2005) (summary

order) ("the affirmative defense of *res judicata* may be raised in a Rule 12(b)(6) motion 'when

all of the relevant facts are shown by the court's own records.'" (quoting *Day v. Moscow*,

955 F.2d 807, 811 (2d Cir. 1992))).

    Although the Court construes claims made by a pro se claimant liberally, a pro se

claimant is not exempt from application of the doctrine of res judicata. *See Traguth v. Zuck*, 710

F.2d 90, 95 (2d Cir. 1983) (noting that the right to self-representation "does not exempt a party

from compliance with relevant rules of procedural and substantive law" (quoting *Birl v. Estelle*,

660 F.2d 592, 593 (5th Cir. 1981))).

    "[T]he preclusive effect of a state court determination in a subsequent federal action is

determined by the rules of the state where the prior action occurred . . . ." *New York v. Sokol (In*

*re Sokol)*, 113 F.3d 303, 306 (2d Cir. 1997); *see also Migra v. Warren City Sch. Dist. Bd. of*

*Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court

judgment the same preclusive effect as would be given that judgment under the law of the State

in which the judgment was rendered."); *Paralex Assocs. v. Deutsch (In re Deutsch)*, 575 B.R.

590, 597 (Bankr. S.D.N.Y. 2017) ("The law is well settled that a state court judgment must be

given preclusive effect, at least for collateral estoppel purposes, in a subsequent federal court

proceeding if the state in which the judgment was rendered would do so." (quoting *Wharton v.

Shiver (In re Shiver)*, 396 B.R. 110, 117 (Bankr. S.D.N.Y. 2008))). Under New Jersey law,

dismissal on res judicata grounds is appropriate where the following three elements are satisfied:

> (1) the judgment in the prior action must be valid, final, and on the merits; (2) the
> parties in the later action must be identical to or in privity with those in the prior
> action; and (3) the claim in the later action must grow out of the same transaction
> or occurrence as the claim in the earlier one.

*Watkins v. Resorts Int'l Hotel & Casino*, 591 A.2d 592, 599 (N.J. 1991). In New Jersey, the prior

judgment bars both the matters actually determined in the previous proceedings and all claims

that could have been raised in the first action. *Bondi v. Citigroup, Inc.,* 32 A.3d 1158, 1185 (N.J.

Super. Ct. App. Div. 2011) (citing *Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co.*,

662 A.2d 536 (N.J. 1995)); *see also D'Angelo v. Ocwen Loan Servicing, LLC*, No. A-5645-17T1,

2020 WL 2296946, at *5 (N.J. Super. Ct. App. Div. May 8, 2020), *cert. denied,* No. 084998,

2021 WL 2333208 (N.J. June 4, 2021)). Conversely, a claim that could not have been presented

in the first action, for instance because of the first court's lack of jurisdiction over the claim, will

not be barred in the subsequent action. *Bondi*, 32 A.3d at 1185 (citing *Watkins*, 591 A.2d at 599).

This is known as the "entire controversy doctrine," which is "New Jersey's specific, and

idiosyncratic, application of traditional res judicata principles" that "extinguishes any subsequent

federal-court claim that could have been joined but was not raised in the prior state

action." *Davis v. Fein Such Kahn & Shepard PC*, No. 18-8560, 2020 WL 3481782, at *5 (D.N.J.

June 25, 2020) (quoting *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir.

1997)). New Jersey State Court Rule 4:30A codifies the entire controversy doctrine and provides

that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine." *Id.* at *6. However, that rule applies only to claims that could have been joined in the prior proceeding. *Id.* Further, in the context of foreclosure matters, the entire controversy doctrine is limited to "germane" claims. *See Siljee v. Atl. Stewardship Bank*, No. 15-1762, 2016 WL 2770806, at *8 (D.N.J May 12, 2016) (citing N.J. Ct. Rule 4:64-5). In New Jersey, a summary judgment order is final for res judicata purposes, as long as "the actual merits" are adjudicated. *Walker v. Choudhary*, 40 A.3d 63, 74-75 (N.J. Super. Ct. App. Div. 2012).

In the Foreclosure Action, the Claimant asserted that Ditech lacked standing to foreclose on his Property and claimed he was not in default under the terms of the Modified Mortgage Loan, which he claims Ditech negligently serviced. Claimant asserted the Counterclaims in the Foreclosure Action and argued that Ditech violated various state and federal statutes (including RESPA) and was unjustly enriched due to their actions. *See* Dismissal Order, Statement of Reasons at 2. The State Court rejected Claimant's contentions as meritless and struck the Counterclaims. It found that Ditech possessed the Note, that the Note was valid, that Claimant was in default under the terms of the Modified Mortgage Loan, and that the evidence presented did not support the contention that Ditech misapplied or failed to account for payments made. *Id.* at 2-5. In so ruling, the State Court found that Ditech established the elements required to proceed with a foreclosure action. The State Court granted Ditech summary judgment and struck Claimant's Answer and Counterclaims. Dismissal Order at 1. Claimant sought reconsideration of this order, which was denied, and Claimant was barred from filing subsequent motions without leave of court. Order Denying Claimant's Motions at 1.

The Court considers the import of the Dismissal Order against the elements of res judicata as applied by New Jersey case law. In New Jersey, a summary judgment order is a final order for res judicata purposes, provided that the court adjudicates the "the actual merits" of the underlying claims. *Walker*, 40 A.3d at 75. In granting Ditech summary judgment on the State Court Complaint, the State Court considered the merits of the Claimant's causes of action and dismissed them with prejudice. *See* Dismissal Order, Statement of Reasons at 1-8. It determined that the Claimant's negligence claim was deficient both because the record indicated that Ditech was not negligent as a matter of fact and because Ditech, as an arms-length servicer of the Mortgage Loan, owed no duty to the Claimant. *See id.* at 5-6. It granted summary judgment dismissing the fraud and CFA claims because, respectively, the Claimant had "not alleged a misrepresentation knowingly made by [Ditech]" (*id.* at 6), and because the Claimant had "not shown a causal connection between any alleged unlawful conduct and an ascertainable loss." *Id.* The State Court found the Claimant's allegations of predatory lending, unjust enrichment, and violations of the FDCPA and TILA to be without merit, and for that reason granted summary judgment dismissing those claims. *See id.* at 6-8.

The State Court dismissed the Claimant's allegations of RESPA violations because that cause of action was raised outside the Answer, and it was therefore "procedurally improper." *Id.* at 8. However, because this claim is germane to the Foreclosure Action, it is also barred here. *See Puche v. Wells Fargo NA*, 256 F. Supp. 3d 540, 548 (D.N.J. 2017) ("Claims that loan servicers violated their statutory duties under RESPA are germane to foreclosure proceedings on the mortgaged property"). Under New Jersey law, "[a] plaintiff who fails to allow the trial court the opportunity to supervise the entire controversy risks losing the right to bring that claim later." *Mystic Isle Dev. Corp. v. Perskie & Nehmad*, 662 A.2d 523, 560 (N.J. 1995); *see also Siljee*,

2016 WL 2770806, at *8 (noting the limitation on the entire controversy doctrine to actions which are 'germane' to the foreclosure). Finally, after granting the summary judgment motion, the State Court denied the Claimant's motions to vacate summary judgment, to reinstate the Claimant's answer and affirmative defenses, and for reconsideration. *See* Order Denying Claimant's Motions at 1. In fact, the Claimant requested and was subsequently denied reconsideration three times in the Foreclosure Action. *See id.* at 4.

In short, the Dismissal Order is a final judgment on the merits, rendered by a court of competent jurisdiction. *See Delacruz v. Alfieri*, 145 A.3d 695, 707 (N.J. Super. Ct. Law Div. 2015) ("Claims are considered resolved by final judgment for res judicata purposes if they are pleaded and disposed of by the court."). Accordingly, the first element of res judicata under New Jersey law is satisfied. So is the second element, as it is undisputed that the Claimant and Ditech are parties to the Foreclosure Action and are the parties to the Claim. The third element is satisfied because the Counterclaims asserted by Claimant in the Foreclosure Action are the very same causes of action asserted in support of the Claim. Claimant makes the same arguments in support of the Claim as he made in the Foreclosure Action. *See* Claim at 6-487; Response at 7-23, 40-103. Indeed, both the Claim and Response rely exclusively on briefing materials from the State Court. *See* Claim at 6-66 (Answer); *id.* at 70-77 (Foreclosure Complaint); *id.* at 212-439 (Amended Answer); *id.* at 441-487 (Motion for Reconsideration); Response at 40-103 (Motion to Vacate Summary Judgment and Other Relief Requested). Thus, all three elements for res judicata under New Jersey law are satisfied. *Watkins*, 591 A.2d at 599 The Court sustains the Objection, since, on the face of the Claim, it is barred by res judicata.

### *The Claim Fails to State a Claim for Relief under Non-Bankruptcy Law*

Moreover, and in any event, even accepting the facts alleged in support of the Claim as true and construing them in the light most favorable to Claimant, the Claim fails to assert a claim for relief against Ditech under applicable non-bankruptcy law.

#### *Standing to Foreclose*

Claimant asserts that Ditech lacked standing to bring the Foreclosure Action because it did not hold "a true, valid and completed Promissory Note" when it commenced the Foreclosure Action. Response at 7. Under New Jersey state law, "a party seeking to foreclose a mortgage must own or control the underlying debt." *Wells Fargo Bank, N.A. v. Ford*, 15 A.3d. 327, 329 (N.J. Super. Ct. App. Div. 2011) (quoting *Bank of New York v. Raftogianis*, 13 A.3d 435, 438 (N.J. Super. Ct. Ch. Div. 2010)); *see also Deutsche Bank Nat. Tr. Co. v. Mitchell*, 27 A.3d 1229, 1236 (N.J. Super. Ct. App. Div. 2011) ("[t]o show standing . . . in a foreclosure action, the plaintiff must show that it is the holder of the note and the mortgage at the time the complaint was filed." (quoting *In re Foreclosure Cases*, 521 F. Supp. 2d 650, 653 (S.D. Ohio 2007))), *cert. denied*, 194 A.3d 978 (2018). Ditech's rights, if any, to enforce the Note are governed by Article III of the Uniform Commercial Code and, specifically, New Jersey Statute § 12A:3-301. That section states that the "person entitled to enforce an instrument" is (i) "the holder of the instrument"; (ii) "a nonholder in possession of the instrument who has the rights of a holder"; or (iii) "a person not in possession of the instrument who is entitled to enforce the instrument pursuant to [section] 12A:3-309 or subsection d. of 12A:3-418." N.J. Stat. § 12A:3-301 (1995).

The facts alleged in support of the Claim show that the Note was assigned to Ditech in December 2015, s*ee* Claim at 72, which was well before the Foreclosure Action was brought in July 2018. *See id.* at 69-87. Additionally, the State Court held that the Note was endorsed in

blank, Ditech was in possession of the Note at the commencement of the Foreclosure Action, and

the validity of the Note was not in dispute. *See* Dismissal Order, Statement of Reasons at 3.

Therefore, Ditech plainly had standing to bring the Foreclosure Action.

### *Negligence*

Under New Jersey law, to state a claim for negligence, Claimant must allege facts

demonstrating the following four elements: "(1) a duty of care, (2) a breach of that duty,

(3) proximate cause, and (4) actual damages." *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015)

(quoting *Polzo v. Cnty. of Essex*, 960 A.2d 375, 384 (N.J. 2008)). Claimant cannot state a claim

for negligence against Ditech. First, under New Jersey law, a mortgagee does not owe a duty of

care to a mortgagor. *See Ramos v. Wells Fargo Bank, N.A.*, No. 16-0880, 2016 WL 6434423,

at *12 (D.N.J. Oct. 31, 2016) ("New Jersey law is clear that when the contractual relationship is

between a lending bank and a borrower, the lender 'does not owe a duty of care to a borrower,

even if the borrower is a consumer.'" (quoting *Stolba v. Wells Fargo & Co.*, No. 10-6014,

2011 WL 3444078, at *5 (D.N.J. Aug. 8, 2011))); *see also, Shepherd v. Selene Fin., LP*, No. A-

4783-18T1, 2020 WL 3443496, at *4 (N.J. Super. Ct. App. Div. June 24, 2020) (noting that

"there is a general rule against imposing a duty in the context of a mortgagor-mortgagee

relationship" (citing *In re Trevino*, 535 B.R. 110, 150 (Bankr. S.D. Tex. 2015))). Claimant has

not cited any case law to the contrary, and the State Court previously ruled that such a duty of

care did not exist between Ditech and Claimant.  *See* Dismissal Order, Statement of Reasons at

5-6.

The negligence claim also fails because the Claimant cannot allege facts demonstrating

that Ditech's alleged wrongdoing is the proximate cause of his alleged damages. That is because

any harm to the Claimant was caused by his failure to make the required payments under the

Mortgage Loan, not by Ditech's actions. Indeed, the Mortgage Loan was in default. *See, e.g.*, Claim at 62 (noting that he would "immediately cure all default payments in order to avoid any further foreclosure actions"); *id* at 223 ("In good faith, it is the Defendant, Michael J. Kelsey's intention to cure all default payments via one or more of the following options, if applicable.").

Claimant asserts that he is in default under the Mortgage Loan because Ditech failed to credit his account with payments that he made in August 2017, September 2017, October 2017, and May 2018. *See* Claim at 464. On the face of the Claim, there is no merit to that contention. First, the payments the Claimant made in August 2017, September 2017 and October 2017 were for amounts that he owed under the Mortgage Loan, prior to execution of the Loan Modification Agreement. *See* Claim at 430; Dismissal Order, Statement of Reasons at 1. The Claimant signed the Loan Modification Agreement on November 24, 2017. *See* Claim at 430-35 (Loan Modification Agreement). The Claimant agreed to the "amount payable under the Note and Security Instrument," or the new principal balance, as of that date. *Id.* at 430. Ditech commenced the Foreclosure Action in response to Claimant's failure to make the required payments beginning in January 2018, after the parties executed the Loan Modification Agreement. *See* Dismissal Order, Statement of Reasons at 1, 4; Claim at 127. Second, the payment of $2,105.10 made by the Claimant in May 2018 was insufficient to bring the loan current. At that time, the Claimant owed an amount due of $10,830.54 to bring the loan current. *See* Dismissal Order, Statement of Reasons at 4-5; Claim at 92. Assuming, arguendo, that the payment of $2,105.10 was not properly credited by Ditech, that fact is irrelevant since the Claimant would still have a deficiency of more than $8,000. The facts alleged in support of the Claim are clear that the Claimant defaulted under the Modified Mortgage Loan when he failed to make the payments called for thereunder in August, September, and October 2017 and in May 2018. The Claimant's

allegations that his failure to make those payments was caused by "negligent servicing" or Ditech's "refus[al] to accept payments" are conclusory and without support.

The Claimant's negligence claim fails both because Ditech owed no duty to Claimant and because the Claimant has not, and cannot, allege facts demonstrating that Ditech proximately cause the Claimant's alleged damages.

*Fraud*

Claimant alleges that by not accepting payments on his account, Ditech "is trying to defraud" him, and he claims that he is "extremely concerned and questions whether or not the [Loan Modification Agreement] was ever legitimate and valid or if it was dishonest and fraudulent." *See, e.g.*, Claim at 12, 23, 25, 27, 58, 463. To state a claim for fraud under New Jersey law, Claimant must allege facts demonstrating: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by [Ditech] of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 260 (N.J. 2005) (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350 (1997)). Pleading fraud requires more than general allegations of fraud, and "where fraud is not an element of the claim, the allegations must satisfy [Rule 9(b)] if the claim is based on fraudulent conduct." *O'Connell v. Arthur Andersen, LLP (In re AlphaStar Ins. Grp. Ltd.)*, 383 B.R. 231, 257 (Bankr. S.D.N.Y. 2008). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Pleading fraud with particularity includes alleging facts sufficient to support "the who, what, when, where, and how: the first paragraph of any newspaper story." *Silvester v. Selene Fin., LP*, No. 18-02425,

2021 WL 861080, at *2 (S.D.N.Y. Mar. 8, 2021) (quoting *Backus v. U3 Advisors, Inc.*,

No. 16-8990, 2017 WL 3600430, at *9 (S.D.N.Y. Aug. 18, 2017)).

The Claimant alleges that Ditech "is trying to defraud" him, and the Claimant questions

whether the Loan Modification Agreement "was ever legitimate and valid or if it was dishonest

and fraudulent." Claim at 13, 15, 291, 382, 458. The Claimant asserts only that Ditech made

misrepresentations; he does not identify any particular statements that were material

misrepresentations. The Claimant also does not assert any facts that demonstrate that Ditech

knowingly made a misrepresentation. *See id.* at 397, 408. The Claimant made the same

allegations in support of his Counterclaims against Ditech in the Foreclosure Action, and the

State Court found that the Claimant "has not alleged a misrepresentation knowingly made by

[Ditech]." Dismissal Order, Statement of Reasons at 6. The same holds true here. The Claimant's

allegations about Ditech's conduct concerning the Loan Modification Agreement also lack detail.

*See* Claim at 13, 15, 291, 382, 458. They do not describe "who made the statements, where and

when the statements were made, [nor] state why the statements were fraudulent" as required

under Rule 9(b). *4 Hour Wireless v. Smith*, No. 01-9133, 2002 WL 31654963, at *2 (S.D.N.Y.

Nov. 22, 2002). The Claimant has failed to state a claim for fraud in support of the Claim.

<u>Unjust Enrichment</u>

To state a claim for unjust enrichment under New Jersey law, a claimant must allege facts

demonstrating "that the defendant 'received a benefit, and that retention of that benefit without

payment therefor would be unjust.'" *Hartz Mountain Indus., Inc. v. Merck Sharp & Dohme

Corp.*, No. A-2402-14T2, 2016 WL 7157224, at *6 (N.J. Super. Ct. App. Div. Dec. 8, 2016)

(quoting *Assocs. Com. Corp. v. Wallia*, 211 N.J. Super. 231, 243 (N.J. Super. Ct. App.

Div. 1986)). The payments that the Claimant made were on account of amounts due and owing

under the Mortgage Loan and Modified Mortgage Loan. They plainly did not unjustly enrich

Ditech. Moreover, unjust enrichment "liability will not be imposed . . . if an express contract

exists concerning the identical subject matter," and "there is no ground for implying a promise as

long as a valid unrescinded contract governs the rights of the parties." *Suburban Transfer Serv.,*

*Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226–27 (3d Cir. 1983). Here, the payments made by

Claimant on his account are contractually owed under the Note, Mortgage Loan and Modified

Mortgage Loan. The State Court rejected this same cause of action for unjust enrichment and

held:

> There is no showing that it is unjust for [Ditech] to retain the mortgage it holds on
> the Property. [Ditech] gave a loan in exchange for this mortgage and was not
> unjustly enriched by it. Any payments [Ditech] has received are not unjustly
> retained. These payments were made to [Ditech] in an attempt to satisfy a loan.

Dismissal Order, Statement of Reasons at 7. That reasoning is equally applicable here. Ditech

was not unjustly enriched by Claimant's mortgage payments. *See Baker v. Inter Nat. Bank*, No.

08-5668, 2012 WL 174956, at *10 (D.N.J. Jan. 19, 2012) (holding that since an express contract

governed the relationship of the parties, there was no basis for an unjust enrichment claim). The

Claimant has failed to state a claim for unjust enrichment in support of the Claim

   *Truth In Lending Act*

   Claimant broadly alleges that Ditech violated TILA, 15 U.S.C. § 1601, *et. seq.* TILA

"promote[s] the informed use of credit by assuring a meaningful disclosure of credit terms."

*Hariprasad v. Master Holdings Inc.*, 788 F. App'x 783, 787 (2d Cir. 2019) (summary order)

(quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 186 (2d Cir. 2016)). Lenders are required to

"provide borrowers with clear and accurate disclosures of terms dealing with things like finance

charges, annual percentage rates of interest, and the borrower's rights." *Id.* (quoting *Beach v.*

*Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998)). Here, the Claim fails as a matter of law because

Claimant has not provided a basis or pleaded any facts to support a TILA claim. The Claim fails

to identify what portion of the TILA statute Ditech is alleged to have violated. *See Cedeno v.*

*IndyMac Bancorp, Inc.*, No. 06-6438, 2008 WL 3992304, at *4 (S.D.N.Y. Aug. 26, 2008) ("The

plaintiff has failed to allege the specific provision of TILA that the defendant violated and the

plaintiff's allegations fail to state a claim under TILA."); *see also Nials v. Bank of Am.*, No. 13-

5720, 2014 WL 1174504, at *9 (S.D.N.Y. Mar. 21, 2014) (dismissing TILA claims that were

included "in a laundry list of causes of action" because there was "no basis to even speculate as

to the legal theory on which TILA . . . [was] invoked").

The State Court dismissed this same allegation in the Foreclosure Action because

"[Claimant] has not alleged that [Ditech] violated any particular section of the Truth in Lending

Act, or requested any remedy pursuant to the Truth in Lending Act. Given the lack of clarity

surrounding [Claimant's] allegations concerning the Truth in Lending Act, the court is unable to

identify a potential violation of the Truth in Lending Act by [Ditech] . . . ." Dismissal Order,

Statement of Reasons at 7. The Claim fails to state a claim under TILA.

### *Real Estate Settlement Procedures Act*

Claimant broadly asserts that Ditech violated RESPA, 12 U.S.C. §§ 2606, *et seq.*,

because, on twenty-one (21) occasions, Ditech failed to respond to his communications. *See*

Claim at 308-10. RESPA requires mortgage loan servicers who receive a "qualified written

request" ("QWR") for action or information from a borrower to respond and, if necessary, to act

within statutorily mandated periods of time. *See* 12 U.S.C. § 2605(e)(1)–(2). "To plead a claim

under the RESPA, plaintiff must offer proof either by attaching the letter or pleading with

specificity such facts—such as when the letter was sent and to whom it was directed, why it was

sent, and the contents of the letter—that the Court may determine if the letter qualifies as a QWR

or notice of error." *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 538

(E.D.N.Y. 2015) (citing *Miller v. HSBC Bank U.S.A., N.A.*, No 13-7500, 2015 WL 585589,

at *10 (S.D.N.Y. Feb. 11, 2015) (collecting cases)). Moreover, a "plaintiff seeking actual

damages under § 2605 must allege that the damages were proximately caused by the defendant's

violation of RESPA." *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 264 (S.D.N.Y. 2017)

(quoting *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-3291, 2012 WL 1372260, at *5 (E.D.N.Y.

Apr. 18, 2012)). Conclusory assertions alone are insufficient. *Id.*

The Claim fails on both counts. The Claimant states in a conclusory manner that Ditech

has failed to respond to multiple communications, but he does not plead any facts to show that

the communications at issue met the requirements of a QWR. *Jones v. ABN AMRO Mortg. Grp.,

Inc.*, 551 F. Supp. 2d 400, 411 (E.D. Pa. 2008) ("Plaintiffs do not specifically allege that . . . any

correspondence met the requirements of a RESPA QWR."), *aff'd*, 606 F.3d 119 (3d Cir. 2010);

*see also Scocca v. Cendant Mortg. Corp.*, No. 04-704, 2004 WL 2536837, at *3 (E.D. Pa.

Nov. 9, 2004) (dismissing a RESPA QWR claim in part because "[i]n his amended complaint,

plaintiff never claims that he sent defendant a qualified written request"). Moreover, the

Claimant has not pleaded facts to show that he suffered damages as a direct result of Ditech's

RESPA violation. Therefore, any RESPA claim fails as a matter of law.

<u>New Jersey Consumer Fraud Act and Predatory Lending</u>

The Claimant broadly asserts that Ditech violated the CFA. *See* Response at 24; Claim at

49-53; *see also* N.J. Stat. Ann. § 56:8-1 to -20. To state a claim for relief under the CFA, the

Claimant must plead facts demonstrating: "(1) unlawful conduct by defendant; (2) an

ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the

ascertainable loss." *Edwards v. Countrywide Home Loans*, No. A-1571-10T4, 2012 WL

6720205, at *2 (N.J. Super. Ct. App. Div. Dec. 28, 2012) (citing *Int'l Union of Operating Eng'rs*

*Loc. No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1086 (N.J. 2007)). The CFA

defines "unlawful practice" as

> The act, use or employment by any person of any unconscionable commercial
> practice, deception, fraud, false pretense, false promise, misrepresentation, or the
> knowing, concealment, suppression, or omission of any material fact with intent
> that others rely upon such concealment, suppression or omission, in connection
> with the sale or advertisement of any merchandise or real estate, or with the
> subsequent performance of such person as aforesaid, whether or not any person has
> in fact been misled, deceived or damaged thereby, is declared to be an unlawful
> practice.

N.J. Stat. Ann. § 56:8-2. The Claimant has not alleged facts to satisfy any of these elements, nor

has he pleaded facts to support an assertion of unlawful conduct by Ditech directly attributable to

loss he suffered. The State Court previously ruled that the Claimant failed to plead facts

sufficient to show a connection between any alleged unlawful conduct and an ascertainable loss.

*See* Dismissal Order, Statement of Reasons at 6.

The Claimant also asserts that Ditech engaged in predatory lending regarding his loan

modification. *See* Response at 24; Answer ¶ 10; Claim at 53. It is unclear whether the Claimant

is asserting a claim of predatory lending under the CFA or under New Jersey common law.

Based on the foregoing, to the extent the Claimant is asserting a claim under the CFA for

predatory lending, that claim fails as a matter of law.

Predatory lending is described as

> a mismatch between the needs and capacity of the borrower . . . . In essence, the
> loan does not fit the borrower, either because the borrower's underlying needs for
> the loan are not being met or the terms of the loan are so disadvantageous to that
> particular borrower that there is little likelihood that the borrower has the capability
> to repay the loan.

*Deutsche Bank Nat'l Tr. Co. v. Merz*, No. A-3771-17T1, 2019 WL 4940213, at *4 (N.J. Super.

Ct. App. Div. Oct. 8, 2019) (omission in original) (quoting *Nowosleska v. Steele*, 400 N.J. Super.

297, 305 (App. Div. 2008)). Additionally, predatory lending is also described as

> The practice of making loans containing interest rates, fees or closing costs that are
> higher than they should be in light of the borrower's credit and net income, or
> containing other exploitative terms that the borrower does not comprehend. . . .
> [P]redatory lending is the situation where a mortgage broker or mortgage lender
> engages in fraudulent, deceptive or sharp practices to induce borrowers (often the
> elderly or minorities) to enter into bad loans, which would include loans that are
> overpriced, loans where there is no net economic benefit to the borrower, loans
> where the borrower cannot afford the payment so the lender is relying on the
> borrower's equity for payment, and loans with other exploitative terms not
> understood by the borrower[].

*Id.* (alterations in original) (quoting *Nowosleska*, 400 N.J. Super. at 305 n.3). After the Claimant

defaulted under the terms of the Mortgage Loan, he entered into a Loan Modification Agreement

with Ditech that allowed him to retain the Property and avoid foreclosure. Claim at 430-35. The

Loan Modification Agreement provided that the principal balance would be deferred, and the

interest rate was reduced from 4.990% to 4.125%. *Id.* at 71, 430-31. The terms of the Loan

Modification Agreement required that the first payment would be due December 2017.

*Id.* at 430. The Claimant defaulted under the terms of the Modified Mortgage Loan. The

Claimant does not allege that Ditech failed to disclose material terms of the modification, nor

does he allege that he did not understand the terms when he entered into the modification. *See

Deutsche Bank Nat'l Tr. Co.*, 2019 WL 4940213, at *5 (rejecting claims of predatory lending

and finding that it was uncontroverted that lender disclosed all loan terms to defendant); *U.S.

Bank Nat. Ass'n v. Curcio*, 130 A.3d 1269, 1280 (N.J. Super. Ct. App. Div. 2016) (declining to

consider the defendant's unsupported and conclusory statement as asserting a claim for predatory

lending). Accordingly, the Claimant fails to state a claim of predatory lending under New Jersey

common law.

*Fair Debt Collection Practices Act*

Finally, the Claimant alleges that Ditech violated the FDCPA, 15 U.S.C. § 1692, *et seq*.

Claim at 53; Response at 23. The threshold requirements for relief under the FDCPA are:

"(1) the plaintiff must be a 'consumer,' (2) the defendant must be a 'debt collector,' and (3) the

defendant must have committed some act or omission in violation of the FDCPA." *Scott v. Am.*

*Sec. Ins. Co. (In re Scott)*, 572 B.R. 492, 529 (Bankr. S.D.N.Y. 2017). It is not disputed that the

Claimant is a consumer. Under the FDCPA, a "debt collector" is any person "who uses any

instrumentality of interstate commerce or the mails in any business the principal purpose of

which is the collection of any debts, or who regularly collects or attempts to collect, directly or

indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6).

This broad definition is subject to a significant limitation. It excludes "any person collecting or

attempting to collect any debt owed or due or asserted to be owed or due another to the extent

such activity . . . concerns a debt which was not in default at the time it was obtained by such

person." *Id.* § 1692a(6)(F); *see also Whittingham v. Mortg. Elec. Registration Servs., Inc.*,

No. 06-3016, 2007 WL 1456196, at *7 (D.N.J. May 15, 2007) ("Importantly, the legislative

history of the FDCPA demonstrates that the term 'debt collectors' does not encompass a

mortgage servicing company." (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208

(5th Cir. 1985) (*citing* S. REP. NO. 95-382, at 3 (1977))). Ditech began servicing the account

prior to it going into default; therefore, by definition, Ditech is not a debt collector under the

FDCPA. *See In re Wiggins*, No. 12-26993, 2016 WL 7115864, at *6 (Bankr. D.N.J.

Dec. 6, 2016) ("Congress did not define a debt collector as those 'in house' collectors for

creditors collecting debt owed them, banks collecting mortgage and student loan debt they had

originated, or mortgage servicing companies who serviced loans that were not in default at the

time they began servicing the loan."). Accordingly, the Claimant fails to state a claim for relief

under the FDCPA. Under identical facts, and for the same reason, the State Court previously held

that the Claimant was unable to state a claim for violation of the FDCPA by Ditech. *See*

Dismissal Order, Statement of Reasons at 8.

### Conclusion

Based on the foregoing, the Court sustains the Objection and disallows and expunges the

Claim.

IT IS SO ORDERED.


Dated: New York, New York
       December 22, 2022

                                              /s/ *James L. Garrity, Jr.*
                                              Hon. James L. Garrity, Jr.
                                              U.S. Bankruptcy Judge