UNITED STATES BANKRUPTCY COURT                    NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

In re:                                               :
                                                     :      Case No. 19-10412 (JLG)
                                                     :      Chapter 11
Ditech Holding Corporation, *et al.*,                :
                                                     :
                                                     :      (Jointly Administered)
                                    Debtors.[1]      :

------------------------------------------------------- x

**MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS
TRUSTEE'S TWENTY-NINTH OMNIBUS OBJECTION TO PROOF OF CLAIMS
(INSUFFICIENT LEGAL BASIS UNSECURED CONSUMER CREDITOR CLAIMS)
<u>AGAINST JARED FREEDMAN</u>**


**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
919 Third Avenue
New York, New York 10022
<u>By:</u>    Richard Levin, Esq.

Mr. Jared Freedman
*Appearing Pro Se*
1027 N. Northlake Drive
Hollywood, Florida 33019

---

[1]    The Debtors' *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1326, was confirmed, which created the Wind Down Estates. References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412 (the "Chapter 11 Cases"). The Wind Down Estates, along with the last four digits of each of their federal tax identification numbers, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**

**U.S. BANKRUPTCY JUDGE**

## Introduction[2]

On April 25, 2019, Jared Freedman (the "Claimant") filed Proof of Claim No. 21375 (the "Claim") as an unsecured claim in the amount of $21,480,000.00 against Ditech Holding Corporation ("Ditech") on account of certain "Litigation." Proof of Claim at 1-2.[3] In her Twenty-Ninth Omnibus Claims Objection (the "Objection"),[4] the Consumer Claims Trustee seeks an order

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Claims Procedure Order and the Third Amended Plan.

[3]   The Claim consists of a numbered three-page Proof of Claim (Official Form 410), a numbered seven page "PROOF OF CLAIM NARRATIVE FOR CREDITOR JARED FREEDMAN" (the "Claim Narrative"), and approximately 230 pages of supporting documents. Those documents are not sequentially numbered. They consist of copies of the documents listed below. The listed page numbers herein correspond to the page numbers listed in the electronic copy on file on the electronic docket.

> Second GMAC Foreclosure, Complaint at 11-37 and 38-63
> First GMAC Foreclosure, Order of Dismissal at 64
> Second GMAC Foreclosure, Order of Dismissal at 65
> Consent Order at 66-132
> Title Report for the Property at 133-34
> Ditech Foreclosure, Amended Answer and Affirmative Defenses at 135-37
> Second GMAC Foreclosure, Motion to Dismiss at 138-47
> Quiet Title Action, Verified Petition at 148-234
> Quiet Title Action, Motion to Dismiss at 235-41.

[4]   *Consumer Claims Trustee's Twenty-Ninth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims)*, ECF No. 2837.

disallowing and expunging the Claim. The Claimant, acting pro se, responded to the Objection (the "Response"),[5] and the Consumer Claims Trustee replied to the Response (the "Reply").[6]

In her Objection, the Consumer Claims Trustee challenges the legal sufficiency of the Claim. *See* Objection at 3, 16. Pursuant to the Claims Procedures Order,[7] the filing of the Response caused an adjournment of the Objection so that the Court could conduct a Sufficiency Hearing on the Claim. The legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[8] *See* Claims Procedures Order ¶ 3(iv)(a). On December 22, 2022, the Court conducted a telephonic Sufficiency Hearing. The Claimant and the Consumer Claims Trustee, both appearing pro se, were heard at the hearing.

The Court has reviewed the Claim and the Objection, Response and Reply, including all documents submitted in support thereof and has considered the arguments made by the Claimant and the Consumer Claims Trustee in support of their respective positions. As explained below,

---

[5]    *Response to Objection to Disallow Proof of Claim*, ECF No. 2899. The Claimant supports the twenty-four page Response with the following Exhibits:

> Exhibit A – Billing Records OWCEN & Green Tree
> Exhibit B – Green Tree's Title Search
> Exhibit C – OCWEN final judgement in the Quiet Title Action
> Exhibit D – Docket for Quiet Title Action
> Exhibit E – Claimant's Property Report
> Exhibit F – First GMAC Assignment
> Exhibit G – Second GMAC Assignment
> Exhibit H – Ditech Assignment
> Exhibit I – New Residential Assignment
> Exhibit J – NewRez Assignment
> Exhibit K – Docket Ditech Foreclosure Action.

[6]    *The Reply of the Consumer Claims Trustee in Support of the Twenty-Ninth Omnibus Objection with Respect to Claim of Jared Freedman (21375)*, ECF No. 4436.

[7]    *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

[8]    Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

accepting all factual allegations asserted by the Claimant in support of the Claim as true, drawing all reasonable inferences in the Claimant's favor, and liberally interpreting the Claim and the Response to the Objection to raise the strongest arguments that they suggest, the Claim fails to state plausible claims for relief against Ditech. Accordingly, the Court sustains the Objection and disallows and expunges the Claim.

### Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background[9]

**The Mortgage**

On April 1, 2008, Claimant executed a note in the amount of $273,000.00 (the "Note")[10] in favor of GMAC Mortgage LLC d/b/a Ditech ("GMAC"). The Note is secured by a mortgage

---

[9]    As discussed below, in applying Rule 12(b)(6) to the Claim, the Court tests the legal sufficiency of the Claim. Accordingly, in resolving the Objection, the Court assumes the truth of the well-pleaded facts in support of the Claim. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact."). In support of the Claim and the Objection, both the Claimant and the Consumer Claims Trustee rely on pleadings filed and decisions rendered in the several lawsuits including, without limitation, the Quiet Title Action and the Ditech Foreclosure Action. It is settled that in resolving a Rule 12(b)(6) motion, the court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979); *Kasey v. Molybdenum Corp. of Am.*, 336 F.2d 560, 563 (9th Cir. 1964) (where parties had history of litigation in state court, court took "judicial notice of . . . officially reported decisions and refers to them for a better understanding of the complicated factual situation here existing."); *Wingate v. Gives*, No. 05-1872, 2016 WL 519634, at *1 (S.D.N.Y. Feb. 5, 2016) (court took judicial notice of facts in reported state court decisions); *Church of Scientology Int'l v. Time Warner, Inc.*, 806 F. Supp. 1157, 1159 n.2 (S.D.N.Y. 1992) (court took judicial notice of reported decisions dealing with Scientology organizations); *see also Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (stating that on a motion to dismiss for failure to state a claim, a court may consider materials extrinsic to the pleadings, if the materials are integral to the complaint or matters subject to judicial notice). The documents cited by the Claimant and Consumer Claims Trustee directly bear on the legal sufficiency of the Claim and the merits of the Objection. Thus, subject to the standards applicable to Rule 12(b)(6) motions, the Court takes judicial notice of those documents. As necessary, the Court cites to those documents herein.

[10]    Copies of the Note are annexed to the Claim at 35-37 and 61-63.

(the "Mortgage")[11] on real property located at 600 90th Street, Surfside, Florida 33154 (the "Property"). The Mortgage identifies GMAC as the lender and Mortgage Electronic Systems, Inc. ("MERS") as nominee for the lender as mortgagee. On April 21, 2008, the Mortgage was recorded with the Clerk of the Florida Court, Florida in Book 26336, Page 4648.[12]

## The GMAC Foreclosure Actions

On December 4, 2008, GMAC, through counsel ("Counsel I") filed a foreclosure action (the "First GMAC Foreclosure Action") against the Claimant in the Circuit Court of the 11th Judicial Circuit, in and for Miami-Dade County, Florida (the "Florida Court"). Claim Narrative at 1. He maintains that he raised several defenses in the First GMAC Foreclosure Action, including that GMAC and Counsel I defrauded him. *Id.*

On April 28, 2009, after GMAC filed the First GMAC Foreclosure Action, an assignment of the Mortgage from MERS to GMAC was recorded with the Clerk of the Florida Court in Book 26843, Page 1653 (the "First GMAC Assignment").[13] On January 7, 2011, the Florida Court dismissed the First GMAC Foreclosure Action for lack of prosecution.[14]

On May 14, 2012, an assignment of the Mortgage from MERS, as the assignor, to GMAC, as the assignee (the "Second GMAC Assignment"), was recorded with the Clerk of the Florida Court in Book 28109, Page 2336.[15] On September 4, 2012, GMAC, represented by different counsel ("Counsel II"), filed a foreclosure action against the Claimant in the Florida Court (the

---

[11]    Copies of the Mortgage are annexed to the Claim at 17-32 and 44-59.

[12]    A copy of the Property Report is annexed to the Response as Exhibit E.

[13]    A copy of the First GMAC Assignment is attached to the Claim at 205, and to the Response as Exhibit F.

[14]    A copy of the Order of Dismissal (F.W.O.P.) is attached to the Claim at 64.

[15]    A copy of the Second GMAC Assignment is attached to the Claim at 34, and to the Response as Exhibit G.

"Second GMAC Foreclosure Action").[16] On December 11, 2013, the Florida Court dismissed the Second GMAC Foreclosure Action for lack of prosecution.[17]

## The Quiet Title Action

On December 3, 2014, the Claimant filed a petition (the "Verified Petition")[18] in the Florida Court to quiet title to the Property (the "Quiet Title Action"). He named GMAC, MERS, Ally Financial Inc., Residential Capital, LLC, Green Tree Servicing, LLC, and Walter Investment Management Corporation as defendants in the action. In support of the Verified Petition, he asserts that the Mortgage is "invalid and unenforceable in part, because it became fully matured on October 30, 2008, and the Statute of Limitations for the enforcement thereof has expired pursuant to Florida Statutes Section 95.281(1)(a)." Verified Petition ¶ 15 (Claim at 151). He also contends that the Mortgage remains on the record and is thus a cloud on the title to the Property. *Id*. ¶ 16 (Claim at 151). He asserts that pursuant to language in an acceleration letter, the Mortgage was in default and fully matured on October 30, 2008. *See id.* ¶ 45 (Claim at 156-57). The Quiet Title Action is pending in the Florida Court.

## The Ditech Foreclosure Action

On March 16, 2017, an assignment of the Mortgage from GMAC to Ditech Financial dated March 14, 2017, was recorded with the Clerk of the Florida Court (the "Ditech Assignment") in Book 30548, Page 3134.[19] On March 14, 2017, Ditech filed a complaint (the "Ditech

---

[16]   *GMAC Mortgage LLC v. Freedman*, No. 12-34796-CA-27 (Fla. Cir. Ct. Aug 30, 2012). A copy of the complaint is attached to the Claim at 11-63.

[17]   Order on the Defendant's Motion for Dismissal is recorded with the Clerk of the Florida Court in Book 28950, Page 0547.

[18]   Verified Petition to Quiet Title and For Other Relief, *Freedman v. GMAC Mortgage LLC*, No. 14-0305910 (Fla. Cir. Ct. Dec. 3, 2014). A copy of the Verified Petition is annexed to the Claim at 148-234.

[19]   A copy of the Ditech Assignment is attached to the Response as Exhibit H.

Complaint")[20] in the Florida Court initiating the Ditech Foreclosure Action against the Property.

In its complaint, Ditech asserts that the Claimant has defaulted under the Mortgage by failing to

make any payments thereunder since May 1, 2012. Ditech Complaint ¶ 8. It asks the Florida Court

to foreclose on the Mortgage, and to determine what is due and owing on the Note and Mortgage

(the "Foreclosure Count"). *Id.* at 3. Ditech also requests the Florida Court to reform both the deed

and the Mortgage (the "Reformation Counts"). *Id.* at 3-4.

On August 8, 2017, the Claimant filed his Motion to Dismiss Ditech Complaint[21] in the

Florida Court. Claimant contends, without limitation, that Ditech lacks standing to initiate the

action and that Ditech failed to include any evidence of Mortgage assignments in support of the

complaint to demonstrate that it has the right to enforce the Mortgage. *See* Motion to Dismiss

Ditech Complaint ¶ 2. On October 11, 2017, the Florida Court denied the Claimant's motion.[22] On

August 19, 2019, Ditech filed a motion for summary judgment on all counts.[23] On November 27,

2019, the Claimant filed a motion for continuance of the hearing on the summary judgment

motion.[24] On December 11, 2019, the Florida Court granted the motion for continuance of the

---

[20]   Complaint to Foreclose Mortgage and for Reformation of Deed and for Mortgage Reformation, *Ditech Financial LLC v. Freedman*, No. 17-006155-CA-01 (Fla. Cir. Ct. Mar. 14, 2017), Docket No. 7. A copy of the Complaint may be viewed on the Clerk of Courts for Miami-Dade County's public website. http://www2 miami-dadeclerk.com/ocs/Search.aspx.

[21]   Motion to Dismiss, *Ditech Financial LLC v. Freedman*, No. 17-006155-CA-01 (Fla. Cir. Ct. Aug. 8, 2017), Docket No. 32 (the "Motion to Dismiss Ditech Complaint"). A copy of the Motion to Dismiss may be viewed on the Clerk of Courts for Miami-Dade County's public website. http://www2.miami-dadeclerk.com/ocs/Search.aspx.

[22]   Order on Defendant's Motion to Dismiss, *Ditech Financial LLC v. Freedman*, No. 17-006155-CA-01 (Fla. Cir. Ct. Oct. 11, 2017), Docket No. 40. A copy of this order may be viewed on the Clerk of Courts for Miami-Dade County's public website. http://www2 miami-dadeclerk.com/ocs/Search.aspx.

[23]   Motion for Summary Final Judgment of Foreclosure and For Entry of Supplemental Order, *Ditech Financial LLC v. Freedman*, No. 17-006155-CA-01 (Fla. Cir. Ct. Aug. 19, 2019), Docket No. 103. A copy of this motion may be viewed on the Clerk of Courts for Miami-Dade County's public website. http://www2 miami-dadeclerk.com/ocs/Search.aspx.

[24]   Defendant's Motion for Continuance of Hearing, *Ditech Financial LLC v. Freedman*, No. 17-006155-CA-01 (Fla. Cir. Ct. Nov. 27, 2019), Docket No. 108. A copy of this motion may be viewed on the Clerk of Courts for Miami-Dade County's public website. http://www2.miami-dadeclerk.com/ocs/Search.aspx.

hearing and denied the motion for summary judgment, but the Florida Court allowed Ditech to "reset its motion for summary judgment."[25]

On December 19, 2019, Ditech assigned the Mortgage to New Residential Mortgage LLC,[26] which, in turn, assigned the Mortgage to NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint Mortgage Servicing").[27] On May 10, 2022, Shellpoint Mortgage Servicing assigned the Mortgage to U.S. Bank Trustee National Association ("U.S. Bank"), not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust.[28] On June 2, 2022, Ditech filed a motion to substitute U.S. Bank as the Plaintiff in the Ditech Foreclosure Action (the "Motion to Substitute").[29] On June 17, 2022, Ditech filed a second motion for summary judgment on the Ditech Foreclosure Complaint.[30] On December 12, 2022, the Florida Court denied summary judgment on the Foreclosure Count, but granted summary judgment as to the Reformation Counts.[31] The Ditech Foreclosure Action remains pending against the Claimant.

---

[25]  Order Granting Motion For Continuance of Trial, *Ditech Financial LLC v. Freedman*, No. 17-006155-CA-01 (Fla. Cir. Ct. Dec. 12, 2019), Docket No. 113. A copy of this order may be viewed on the Clerk of Courts for Miami-Dade County's public website. http://www2.miami-dadeclerk.com/ocs/Search.aspx.

[26]  Recorded in Book 31756, Page 1919. A copy of this assignment is attached to the Response as Exhibit I.

[27]  Recorded in Book 32003, Page 4697. A copy of this assignment is attached to the Response as Exhibit J

[28]  Recorded in Book 33120, Page 2755. A copy of this assignment is attached to the Motion to Substitute.

[29]  Amended Motion to Substitute, *Ditech Financial LLC v. Freedman*, No. 17-006155-CA-01 (Fla. Cir. Ct. June 2, 2022), Docket No. 149. A copy of this motion may be viewed on the Clerk of Courts for Miami-Dade County's public website. http://www2.miami-dadeclerk.com/ocs/Search.aspx. The Florida Court has yet to rule on this motion.

[30]  Motion for Summary Final Judgment of Foreclosure, *Ditech Financial LLC v. Freedman*, No. 17-006155-CA-01 (Fla. Cir. Ct. June 17, 2022), Docket No. 150. A copy of this motion may be viewed on the Clerk of Courts for Miami-Dade County's public website. http://www2.miami-dadeclerk.com/ocs/Search.aspx.

[31]  Order Granting in Part Plaintiff's Motion for Summary Judgment, *Ditech Financial LLC v. Freedman*, No. 17-006155-CA-01 (Fla. Cir. Ct. Dec. 12, 2022), Docket No. 161. A copy of this order may be viewed on the Clerk of Courts for Miami-Dade County's public website. http://www2.miami-dadeclerk.com/ocs/Search.aspx.

**The Chapter 11 Cases**

On February 11, 2019, Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates (the "Debtors") filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court. The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019 at 5:00 p.m. (prevailing Eastern Time) as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in the Debtors' Chapter 11 Cases (the "General Bar Date").[32] Thereafter, the Court extended the General Bar Date for consumer borrowers, twice, and ultimately to June 3, 2019, at 5:00 p.m. (prevailing Eastern Time).[33]

On September 26, 2019, the Debtors confirmed their Third Amended Plan,[34] and on September 30, 2019, that plan became effective.[35] The Consumer Claims Trustee is a fiduciary appointed under the Third Amended Plan who is responsible for the reconciliation and resolution of Consumer Creditor Claims and distribution of funds escrowed in the Consumer Claim Reserve to holders of Allowed Consumer Creditor Claims in accordance with the Third Amended Plan. *See* Third Amended Plan, art. I, ¶ 1.41. Under the Third Amended Plan, the Consumer Claims

---

[32]    *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[33]    *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[34]    *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors*, ECF No. 1326 (the "Third Amended Plan"); *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors*, ECF No. 1404.

[35]    *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

Trustee has the exclusive authority to object to all Consumer Creditor Claims. *See id.*, art. VII, ¶ 7.1.

**The Proof of Claim**

On April 25, 2019, the Claimant filed the Claim as an unsecured claim in the amount of $21,480,000.00. Mr. Freedman asserts that on April 1, 2008, when he executed the Mortgage with GMAC/MERS—

(i) he was handed two identical stacks of closing documents, both blank,

(ii) he was told to sign one stack of documents, and keep the other, and

(iii) he did as he was instructed and has retained and is in possession of the original set of unsigned closing documents.

*See* Claim Narrative at 1. He maintains that within ninety days of the closing of his Mortgage, GMAC defrauded him with the "currently illegal and now famous Forced Placed Insurance Escrow Underage Scam, done in June 2008. (Practices involved were made illegal in 2010 under Federal Law)." *Id*.[36] He says that he refused to make payments on his Mortgage until the alleged fraud was corrected, and that at the end of November 2008, GMAC admitted, in writing, that he was correctly insured the entire time, and that he had no fault whatsoever. *Id*.

Mr. Freedman asserts that, after GMAC acknowledged its error, in the first week of December 2008, he tendered Mortgage payments that would have cured all arrearages. He submits

---

[36] More specifically, Mr. Freedman says the Mortgage called for him to provide GMAC evidence that he insured the Property. He asserts that he provided it at the closing, and, at that time, GMAC fixed his tax/insurance escrow under the Mortgage at $629.09 per month. *See* Claim at 142-43. In early May 2008, he received a letter from GMAC calling for him to produce evidence of hazard insurance. *Id*. at 143. He contacted GMAC to explain that he supplied the evidence of insurance at the closing and that the monthly escrow already accounted for the insurance coverage. *Id*. In mid-June 2008, he received another letter from GMAC requesting evidence of hazard insurance. *Id*. He maintains that in response thereto, he faxed to GMAC proof of the insurance, and that GMAC confirmed the receipt of the fax, on June 30, 2008. *Id*. He asserts that nonetheless, GMAC obtained insurance for the Property, with Balboa Insurance Company for $4,124.62, and added the cost of insurance to the Mortgage. *Id*. He describes GMAC's action as "fraud", and labels it as "the currently illegal and now famous Forced Placed Insurance Escrow Underage Scam." *Id*.

that, nevertheless, GMAC Loss Mitigation refused to accept them and commenced the First GMAC Foreclosure Action against him. *Id.*[37] He says that the action was brought under Fla. Stat. 673.3091 to enforce a lost, destroyed, or stolen promissory note and mortgage, and that GMAC included copies of a signed (but not co-signed) Mortgage and a blank unsigned Note in support of the complaint. *Id*. at 2.[38] Mr. Freedman says that he vigorously contested the First GMAC Foreclosure Action and that on January 7, 2011, the court dismissed the action for lack of prosecution. *Id*. at 1.

On September 4, 2012, GMAC commenced the Second GMAC Foreclosure Action against the Property. Mr. Freedman argues that GMAC could not exist and that GMAC's counsel produced a Note and Mortgage without any explanation as to how it came to possess them. Claim Narrative at 2. He says that he immediately challenged those documents as fraudulent and in defense of the action, raised the same defenses that he raised in the First GMAC Foreclosure Action. He also accused GMAC of producing fraudulent and materially altered documents. *Id*. He maintains that GMAC did not respond to the allegations and that on December 11, 2012, the court granted his Motion to Dismiss pursuant to Rule 1.420(e) of Florida Rules of Civil Procedure. *Id*.

On December 3, 2014, the Claimant filed the Verified Petition commencing the Quiet Title Action. *Id*.[39] In support of that action, he asserts that, "at some point prior to GMAC's bankruptcy,

---

[37]   Mr. Freedman says that just prior to the call, his case was not listed on the docket of the Florida Court. He contends that on December 5, 2008, GMAC's Counsel I committed foreclosure fraud against him by filing the papers with the Florida Court to put his house into foreclosure (Case No. 08-75016 CA), and then refused his offered full payment. Claim Narrative at 1.

[38]   Mr. Freedman says that the copy of the Mortgage and Note provided by GMAC has peculiar features like the originals he retains, and this copy is also present in the Miami Dade County Court Record. He says that GMAC, "together with many other unscrupulous law firms, committed this same type of fraud, and worse, on an industrial scale, which eventually got it fined out of existence and into Chapter 11 Bankruptcy on May 14, 2011, by the Federal Government together with State Attorney Generals from nearly all fifty States." *Id.* at 2.

[39]   Mr. Freedman named GMAC Mortgage LLC d/b/a Ditech, Mortgage Electronic Registration Systems, Inc. a/k/a/ MERS, Ally Financial Inc., Residential Capital, LLC, Green Tree Servicing, LLC, and Walter Investment Management Corporation as defendants in the action. Claim at 148-149.

the original Note and Mortgage were destroyed and written off the books." *Id*. In the Verified Petition, Mr. Freedman declares that the following organizations might claim to hold the Mortgage, although none of them could have it, for the reasons stated below:

GMAC – does not exist as its assets were sold off in bankruptcy auctions.[40]

OCWEN Financial ("OCWEN") – acquired GMAC's home mortgage portfolio, but his Property is not listed among OCWEN's assets.[41]

Ditech – does not and never has existed as a commercial mortgage lending entity, as it is a "d/b/a/" of GMAC Mortgage, LLC.[42]

MERS – was the original assignee of the Mortgage, not GMAC.[43]

Ally Financial ("Ally") – defaulted in the litigation and made no claim to the Mortgage.[44]

Residential Capital ("Rescap") – defaulted in the litigation and made no claim to the Mortgage.[45]

---

[40]    Mr. Freedman asserts that neither his Property nor his open legal actions against GMAC are listed on GMAC's bankruptcy schedules. *See* Claim Narrative at 2.

[41]    Mr. Freedman says that his Property is not listed in the SEC copies of the asset ledgers of assets sold by GMAC and accepted by OCWEN. *Id*. He also asserts that OCWEN filed a Motion to Dismiss the Quiet Title Action, claiming full ownership of the Mortgage, but that "after they realized they had nothing, they wanted out, but demanded [he] sign a waiver." *Id*. at 3. He says that he refused to do so and demanded $30,000 for legal fees. He explains that OCWEN "then faded into the woodwork for a year, then came out with motions to extricate themselves from the case, ultimately claiming zero ownership interest, and hanging Green Tree out to dry." *Id*.

[42]    Mr. Freedman asserts that "Ditech" was, and is, a name brand only, and that any attempt to suggest that Ditech was a functional standalone company is "fraud." Claim Narrative at 3. He explains that he named Ditech in the Verified Petition commencing the Quiet Title Action because he "expected more fraud." *Id*. He contends that his suspicions were confirmed when "Green Tree tried and did assume the name Ditch by claiming an impossible merger in 2016." *Id*.

[43]    Mr. Freedman says that MERS assigned his Mortgage to GMAC twice. *Id*. He says that the first assignment was in 2009, and that the second assignment was in 2012, after GMAC had already entered bankruptcy proceedings. *Id*.

[44]    Mr. Freedman explains that he named Ally as a defendant in the Quiet Title Action "because GMAC announced during a chaotic period preceding their bankruptcy that they were changing their name with, merging, or otherwise becoming different commercial enterprises. *Id*. Ally was one of those pronounced 'Merging'. Ally was named 'Just in Case' GMAC shed assets to Ally while undergoing the days long 'Merger'." *Id*.

[45]    Mr. Freedman says that Rescap "is the actual organization that served as a repository of corporate assets, involved in the liquidation of GMAC assets and handing of final affairs." *Id*. He maintains that "RESCAP was announced as one of the name-change organizations during the chaotic period preceding their bankruptcy, with several variations of this single name appearing frequently." *Id*.

> Green Tree Servicing[46] – the Mortgage Servicer of Choice for OCWEN's stake of the GMAC Bankruptcy mortgage portfolio auction win. Mr. Freedman says that "[t]heir [sic] is copious evidence that Green Tree believed that OCWEN had the rights to the Mortgage when they clearly did not. This evidence, among other things, comes in the form of inspection reports billed to the OCWEN account by Green Tree Accounts Payable over a period of years."

> Walter Investment – the actual company that made the servicing agreement with OCWEN to service the mortgages they acquired in GMAC's bankruptcy auction. Walter Investment owns Green Tree.

See Claim Narrative at 2-3. Mr. Freedman asserts that after he commenced the Quiet Title Action, three entities stepped forward and claimed ownership of the Mortgage: MERS (twice, once through the OCWEN attorney, and once through the Green Tree attorney), OCWEN, and Green Tree. Id. at 4. He says that eventually, OCWEN, Walters Financial and MERS admitted in writing that it had no interest in the Mortgage. Id.

Mr. Freedman contends that in 2015, Green Tree was found guilty of fraud by the Federal Government and ordered to pay over $60 million in damages as part of a permanent injunction against their fraudulent foreclosure activities (the "Consent Order").[47] Claim Narrative at 2-3. He also says that under that order—

---

[46]    Mr. Freedman labels Green Tree Servicing as the "Front Company for Walter Investment, the people who showed up out of thin air claiming to own/service the Mortgage after [he] won the second foreclosure case." Id.

[47]    On April 21, 2015 the Federal Trade Commission ("FTC") and Consumer Financial Protection Bureau (collectively, "Plaintiffs"), filed a lawsuit against Green Tree Servicing LLC ("Green Tree")

> under Sections 5(a) and 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a) and 53(b); the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p; and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x, to obtain permanent injunctive relief, restitution, disgorgement, and other equitable relief for violations of the FDCPA, Section 5 of the FTC Act, and the FCRA.

FTC v. Green Tree Servicing LLC, No. 15-2064, 2018 WL 614472, at *1 (D. Minn. Jan. 8, 2018) adopted by 2018 WL 614731, at *1 (D. Minn. Jan. 29, 2018) (citation omitted). To resolve that litigation, the parties entered into a stipulated consent order ("Consent Order"). See Stipulated Order for Permanent Injunction and Monetary Judgment, FTC v. Green Tree Servicing LLC, No. 15-2064 (D. Minn. Apr. 23, 2015). In broad strokes, pursuant to the order, Green Tree was directed to pay Plaintiffs $48,000,000 to establish a redress fund, that Plaintiffs managed. FTC v. Green Tree Servicing LLC, 2018 WL 614472, at *1. In addition, the Consent Order established an oversight regime

13

> The government directed Green Tree to produce the origination of all mortgages and notes, how they got them, and what rights they had to service them before contacting any potential debtor.
>
> When pressed to show this documentation, [e]specially how they came into possession of Mr. Freedman's Note and Mortgage, it was never produced even until this day.
>
> To side-step their reporting requirements and collection obligations, in 2015, shortly after the Consent Order, Green Tree announced that it was merging with Ditech – a company that did not exist – as it was only a name brand of GMAC (dba DITECH).

*Id.*[48] Mr. Freedman asserts that during the Quiet Title Action, Green Tree was compelled to produce discovery of all documents it claimed to have relating to the servicing of the Mortgage. *Id.* He says that Green Tree turned over documents of home inspections and other foreclosure activities and the most important points from these are:

> A) Green Tree listed OCWEN as the customer on all the housing inspections, and there are dozens of them over years.
>
> B) Green Tree paid for multiple title searches, but only show the results of one.
>
> C) The results of Green Tree's own title search show that the title owner is UNKNOWN.
>
> D) There is no lineage of how Green Tree got the right to service the Mortgage.

---

whereby Plaintiffs would oversee Green Tree's compliance with the Consent Order. To that end, without limitation, the order calls for Green Tree to: (1) submit compliance reports to Plaintiffs, (2) respond to requests for additional information by Plaintiff regarding compliance reports and compliance in general; and (3) comply with Plaintiffs' subsequent discovery requests without court intervention. *Id.*

[48]   Mr. Freedman asserts that Green Tree calls itself "Ditech" in every filing and document, and that to further perpetrate a fraud upon the individual State courts, the Federal courts, and the People of the USA, it claims ownership of old GMAC paper that was signed under the dba Ditech LLC name during the mortgage crisis of 2008 – 2011. Claim Narrative at 4. He maintains that this also allows Ditech to escape public scrutiny for their enjoined malfeasance as all references to the Consent Order and related penalties were very quickly swept away due to professional grade and very expensive Search Engine Optimization and were therefore totally disconnected from the new Ditech brand. *Id.*

*Id.* at 4-5. He says that the documents represented by Green Tree's lawyers as the original Note and Mortgage do not look old enough to be decade old documents, "and by expert testimony, they look nothing like the originals from 2008." *Id.* at 5.

Mr. Freedman contends that after Green Tree dragged its feet for nearly one year and refused to produce any discovery as directed in response to his Motions to Compel, the judge in the Quiet Title Action ordered Green Tree to file a foreclosure action against him within ninety days or drop the case. *Id.* at 4. On March 13, 2017, Ditech filed the Ditech Foreclosure Action. *See* Response, Ex. K (Ditech Foreclosure Action Docket). Mr. Freedman maintains that months after his request for the full packet of closing documents, Ditech's lawyers finally produced what they allegedly represented to be the original closing documents. He says that on April 11, 2019, he inspected these documents, and like the Note and Mortgage produced by Green Tree, those documents looked nothing at all like the originals from 2008. Claim Narrative at 5. He also says that other documents produced were clearly not originals, seeming to be copies of copies. *Id.* Finally, he maintains that key documents retained in the original 2008 set of closing documents are not included in the set produced by Ditech's attorneys. *Id.*[49]

Mr. Freedman says that the Ditech Foreclosure Action is the third attempt to foreclosure on his home since 2008, and that he was the victor in the first two actions. Claim Narrative at 5. He says that he has made no Mortgage payments to any entity since June of 2008, because the original fraud perpetrated against him has never been addressed, and now, due to the financial

---

[49]    Mr. Freedman maintains for more than a decade, he has personally accused multiple law firms, GMAC, Ditech, MERS, Rescap, and all the "other assorted shell-game entities of industrial scale and endemic fraud." Claim Narrative at 5. He says that he has specifically accused Green Tree of fraud after they "appeared out of nowhere claiming [his] mortgage, when they tried to file the second foreclosure against him with [Counsel II] on behalf of GMAC while GMAC was barred by Bankruptcy Court from any such action." *Id.*

industries' own malfeasance, it is impossible to identify the true holder in due course of the Note and Mortgage. He says that he launched his Quiet Title Action to resolve the issue. *Id*.

Mr. Freedman maintains that in 2014, he was content to prosecute the Quiet Title Action as compensation for his extensive damages over six years, but that when Green Tree allegedly "stepped up to thwart him, claiming to be the same entity as Ditech from 2008, they assumed all the copious and substantial liability that had previously accumulated to the original and defunct entity." Claim Narrative at 5. He asserts that in the intervening five years, Green Tree has exhibited extreme bad faith and contempt for him, using a seemingly bottomless war chest of legal funds to grind him down, in a blatant attempt to deny him justice. *Id*. He says that these actions occurred while Green Tree was violating the plainly worded Consent Order prohibiting Green Tree and their agents from exactly that sort of activity. *Id*.

Mr. Freedman contends that when Green Tree initiated the Ditech Foreclosure Action, the third fraudulent foreclosure against him, "they opened themselves to an extreme amount of liability due to the near decade's worth of well-documented fraudulent precedent." *Id.* He says that there was no real recourse for damages for him in the Quiet Title Action, but once Green Tree filed the Ditech Foreclosure Action, they opened the venue to his demand for actual, statutory, and punitive damages. *Id*. at 5-6. He maintains that Green Tree has refused to walk away and instead continued to double and triple down with fraud on top of fraud and that such repeated fraud is the fault of the executives of Walters Management, many of whom are no longer there. *Id.* To summarize, "Jared Freedman refuses to walk away from the abject destruction of his best earning years at the hands of what he considers to be hardened criminals." *Id*. at 6.

<u>The Elements of the Claim</u>

Mr. Freedman describes himself as "a successful serial entrepreneur who was gravely harmed by the actions of GMAC (dba Ditech LLC), and then Walters Management/Green Tree Financial, and now Ditech Holdings." Claim Narrative at 6. He asserts that he "has incurred substantial legal expenses, suffered grievous harm to his reputation, lost multiple multi-million-dollar opportunities, and had to liquidate irreplaceable 100+ year old family heirlooms to pay for legal bills." *Id.*[50]

Mr. Freedman summarizes the elements of the Claim, as follows:

| | |
|---|---|
| Leal Fees (currently ongoing) | $106,000 |
| Property Depreciation | $500,000 |
| Town Fees & Fines | $54,000 |
| Defamation<br>($250,000 per year x 10 years) | $2,500,000 |
| Consumer Credit Destruction<br>($100,000 per year x 10 years) | $1,000,000 |
| Lost Business Opportunities<br>($300,000 per year x 10 years) | $3,000,000 |
| Sub Total: | $7,160,000 |
| Knowing, Willful & Malicious Multiplier: | x 300% |
| Total Claim: | $21,480,000 |

*Id.* at 6.

---

[50]    Mr. Freedman contends that even with all this, at the height of being oppressed by GMAC/Ditech, he managed to create and release a Top 20 Android Paid Casual Game, that was in the Top 40 for his category on Google Play for over two years (2011 – 2013), competing against over a million other products in the same category. Claim Narrative at 6. He says that it all came to a halt on a single day in July of 2013. He "strongly believes the loss of this revenue can be traced directly to activity perpetrated by Walters Management/Green Tree, due to the fact that any corporation or investor could see the long legal trail left on Jared Freedman's record thereby marking him an irresponsible 'Bad Risk.'" *Id.*

He advises that it is his "strong belief that shifting entity known as Walters Management/Green Tree/Ditech Financial/Ditech Holdings has committed, and is still committing, serial Bankruptcy Fraud in an (often successful!) attempt to shield themselves from the repercussions of their industrial scale malfeasance." *Id.* at 7. He contends that "due to this long history of well documented fraud, that bankruptcy protections offer no relief." He also "strongly believes that the cost of this going unpunished will eventually be the total destruction of the Public's Faith in our real-estate and financial systems." *Id.*

**The Objection to the Proof of Claim**

On September 18, 2020, Consumer Claims Trustee objected to the Claim on the basis that:

(i)    Claimant's Quiet Title Complaint alleges wrongdoing by GMAC, not Debtor, and does not state a claim for which relief can be granted in this proceeding.

(ii)   Transfer of servicing rights from GMAC to Debtor does not state a claim for which relief can be granted.

(iii)  Claimant's prior recoveries from government actions against GMAC and Countrywide do not form the basis of a claim against Debtor, nor does his successful defense of prior foreclosure actions constitute a claim against Debtor.

Objection at 16.

**The Response To The Objection to the Proof of Claim**

On October 16, 2020, the Claimant filed his Response to the Objection. In it, he reiterates that the two lawsuits involve the Debtors and not GMAC. *See* Response at 2-4. He also contends that since Ditech injected itself into the Quiet Title Action, he is asserting a counterclaim against Ditech for damages resulting from "its fraudulent title transfers; the filing of a fraudulent foreclosure action; document falsification; credit destruction; business opportunity and reputation

destruction; as well as, fees, fines and depreciation of the real property, all caused by Ditech's

malfeasance." *Id.* at 4.

In the Response, the Claimant addresses each component of the Consumer Claim Trustee's

Objection, as follows:

**(i) Claimant's quiet title complaint alleges wrongdoing by GMAC, not Debtor, and does not state a claim for which relief can be granted in this proceeding.**

The Claimant asserts that his Quiet Title Complaint does, in fact, allege fraud on behalf of

GMAC, and, specifically, fraud that involved the destruction of the Claimant's Mortgage and Note.

He says that he has documented how:

> GMAC's fraud resulted in its dissolution and the imposition of massive fines by the Federal Government, as well as various United States Attorney Generals.
>
> GMAC was forced into bankruptcy and forced to liquidate and dissolve, finalizing in 2013, with no further activity, legally, possible.
>
> Ditech purposefully, and, affirmatively, stepped into the shoes of GMAC in the Claimant's Quiet Title action and is, actively, litigating as a defendant in opposition to the Claimant's Quiet claim in said lawsuit.

*See* Response at 5. He maintains that by seeking affirmative relief against him in the Claimant's

Quiet Title Action (without any actual lawful basis), Ditech is now responsible for and is, in fact,

perpetuating all of GMAC's wrongdoing and is further damaging the Claimant. *Id.*

**(ii) Transfer of servicing rights from GMAC to Debtor does not state a claim for which relief can be granted.**

The Claimant asserts that he has a claim against Ditech based on its alleged fraudulent

conduct, on the grounds that Ditech has asserted servicing rights and/or an interest in the

Claimant's Property and is defending against the Claimant's Quiet Title Action and has, indeed,

initiated foreclosure proceedings against him. He contends that he:

> specifically, documented in his Claim how such a transfer of servicing rights, as claimed, repeatedly, by Ditech, never, legally, occurred; and

> contests Ditech's representation that they ever had or have servicing rights to the
> Claimant's real property when, in fact, they did not then, and do not now, possess
> any such rights.

Response at 6. Moreover, he says that, for years, including with the filing of multiple motions to

compel in the lawsuits pending in the Florida Court, he demanded documentation of the chain of

title, whereby Ditech received the servicing rights they claim; and that Ditech has not been

forthcoming with that discovery. *Id.* The Claimant asserts that it is critical that Ditech produce

such documentation, as the Claimant has, repeatedly, demonstrated how OCWEN was the winner

of the GMAC bankruptcy auction in which Walters Management, with its servicing company

Green Tree, would service the accounts purchased by OCWEN, as part of a publicly announced

joint venture. *Id.* He says based on his complete and thorough search of the official bankruptcy

asset listings, filed with the Securities and Exchange Commission (the "SEC"), he knows that his

Property was not a GMAC asset at the time of GMAC's bankruptcy, and that his Mortgage and

Note were either securitized multiple times, destroyed, and/or written off, as part of GMAC's

malfeasance before its bankruptcy filing. *Id.* He contends that during the conduct of discovery in

the Quiet Title Action, after tens of thousands of dollars were spent by the Claimant, and multiple

motions to compel had been filed, in May 2017, an incomplete set of documents was, finally,

delivered to him. *Id.* at 7. He says these documents:

> Made it clear that Walters/Green Tree was basing its rights to the Claimant's real
> property from the OCWEN/Walters joint venture, as Green Tree was billing the
> OCWEN account for monthly home inspections for multiple years. Evidenced
> invoices for multiple title searches, but only the results Green Tree's internal title
> search (valid through June 23, 2014), indicated that the title rights to the Claimant's
> real property belonged to "Current Beneficiary: NOT CLEAR."

*See id.*

Moreover, he maintains that Ditech has been, and is continuing, to attempt to assert rights

to the Claimant's Property, without demonstrating how it obtained such alleged rights, even after

judicial orders to compel were entered. *Id.* He says this is a clear case of fraud, a blatant consumer

rights violation, and a contravention of the heart and spirit of the Consent Order, which along with

the imposition of financial damages in the amount of $63,000,000.00, further forbade them from

attempting to collect on any mortgages, without first documenting how they came into possession

of the rights. *Id.* at 7-8.

**(iii) Claimant's prior recoveries from government actions against GMAC and Countrywide do not form the basis of a claim against Debtor, nor does his successful defense of prior foreclosure actions constitute a claim against Debtor.**

The Claimant asserts that his claim against Ditech is based on the following:

Neither Ditech Mortgage Corp, nor Ditech Financial LLC has any relation to the original GMAC Mortgage, LLC d//b/a Ditech, and Claimant maintains that these name changes amounted to chicanery, used to further confuse consumers and the courts.

Moreover, the Claimant's Quiet Title Action states that it is certain, that neither GMAC nor OCWEN had any interest in his Mortgage or Note, as it is well documented by the SEC that the Claimant's Property was not an asset of GMAC at the time of its bankruptcy or bankruptcy asset sale.

*See* Response at 10. The Claimant also asserts—

All of the derivative claims arising from the initial claim that GMAC was in possession of his Mortgage at the time of its bankruptcy, and was therefore, part of OCWEN's purchase for the OCWEN/Walters/Green Tree joint venture, are, in fact, void.

In over ten years of highly contentious lawsuits, Walters/Green Tree/Ditech never once produced proof to the contrary, even after being compelled multiple times to do so. Even in October 2020, Ditech refuses to produce court ordered discovery regarding same in the foreclosure case filed by Ditech against the Claimant.

*See id.* at 10-11. The Claimant asserts that the "primacy" of the Walters/Green Tree/Ditech claim

to have rights to service and, thereby, collect payments from and foreclose on the Claimant, arise

21

from OCWEN, a named defendant in the Claimant's Quiet Title Action. *Id.* at 11. However, he

argues—

> OCWEN spent three years attempting to extricate themselves from the Claimant's Quiet Title Action after their initial Motion to Dismiss was denied by the Florida Court.

> In the Motion to Dismiss, OCWEN claimed that it had possession of the Claimant's Mortgage and Note. Later, OCWEN recanted and obtained a Final Judgement, indicating that it did not have, and never had, any interest in the Claimant's Property.

*See id.*

The Claimant asserts that Ditech made "False Claims" to the Court in Florida. He contends

that—

> Ditech, who at the time was known as, Walters Management/Green Tree, also filed a Motion to Dismiss the Claimant's Quiet Title action on February 18, 2015.

> Like OCWEN, Ditech also claimed an interest in the Claimant's Property, and the Claimant, successfully, defended against a flurry of vexatious legal maneuvers for over six years.

> The Claimant demanded discovery in early 2015 from Ditech. Ditech responded that it did not have the documents requested by the Claimant; then said they did not have to provide the documents; and then, when threated with sanctions, suddenly, produced an incomplete batch of scanned documents of unknown providence.

> The critical documents, evidencing providence and chain of title, as to the Claimant's Property, to date, have never been produced by Ditech.

> What was produced, purporting to be the actual mortgage and note, were obviously false and fraudulent documents. The Claimant did not need an expert to see that none of the signatures on the documents produced by Ditech, were his signatures.

*See id.* at 11-12. The Claimant maintains that on November 28, 2016, after years of Ditech doing

its best to drag out the case and drive up his fees and costs, the State ordered Ditech to file the

foreclosure complaint within ninety days or be foreclosed from filing same. He asserts that Ditech

finally filed its threatened foreclosure complaint against the Claimant ninety-seven days later, on March 17, 2017. *Id.* at 12.

The Claimant emphasizes that the day before, on March 16, 2017, and going back to the first Motion to Dismiss filed by Ditech on February 18, 2015, neither Ditech, Walters, Green Tree, MERS nor any other entity under the control of Ditech had title to his Property, consistent with the title search produced by Ditech. Nonetheless, on March 16, 2017, Ditech recorded a fraudulent transfer of title, relative to his Property, the first of several that were to follow. *Id.* at 12-13.

The Claimant asserts that the supporting documents demonstrate that Ditech has committed fraud in several different forms:

(i)     False claims made to the court,

(ii)    Fraudulent transfers of title,

(iii)   Filing of fraudulent foreclosure action,

(iv)    Fraudulent collection attempts in violation of the Fair Debt Collections Practices Act and a Federal Injunction,

(v)     Vexatious litigation,

(vi)    Falsification of documents, and

(vii)   Bankruptcy fraud.

*Id.* at 4.

**<u>The Reply to the Response to the Objection of the Proof of Claim</u>**

On December 13, 2022, Consumer Claims Trustee filed her Reply to the Response. The Consumer Claims Trustee argues that:

(i)     The Claim fails to state any viable ground for recovery against the Consumer Credit Reserve (Reply ¶¶ 14-18, 28);

(ii)    The Claim is barred by the Florida Litigation Privilege (*id.* ¶¶ 19-20);

23

(iii)    The fraud claims are not pled according to Rule 9(b) (*id.* ¶¶ 22-27).

**Applicable Legal Standards**

Under section 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The filing of a proof of claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). Section 502(b) prescribes nine categories of claims which will be disallowed, including that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See, e.g.*, *Rozier v. Rescap Borrower Claims Tr. (In re Residential Cap., LLC)*, No. 15-3248, 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 09-50026, 2012 WL 1886755, at *3 (S.D.N.Y. May 12, 2012); *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd sub nom. Peter J. Solomon Co., L.P. v. Oneida, Ltd.*, No. 09-2229, 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010); *see also Travelers Cas. and Sur. Co. of Am. v. Pac. Gas and Elec. Co.*, 549 U.S. 443, 449 (2007) ("But even where a party in interest objects [to a claim], the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b).").

In filing the Objection, the Consumer Claims Trustee initiated a contested matter. *See* Fed. R. Bankr. P. 3007 advisory committee's note to 1983 adoption ("The contested matter initiated by an objection to a claim is governed by Rule 9014 . . . ."); *see also Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs., Inc.)*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter").

Bankruptcy Rule 9014 governs contested matters. The rule does not explicitly provide for the application of Bankruptcy Rule 7012. However, Bankruptcy Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply." Fed. R. Bankr. P. 9014. The Court did so here. Under the Claims Procedures Order, the legal standard of review the Court applies at a Sufficiency Hearing is equivalent to the standard applied by the Court under Rule 12(b)(6) on a motion to dismiss for failure to state a claim upon which relief could be granted. *See* Claims Procedure Order ¶ 3(iv)(a); *see also In re 20/20 Sport, Inc.*, 200 B.R. 972, 978 (Bankr. S.D.N.Y. 1996) ("In bankruptcy cases, courts have traditionally analogized a creditor's claim to a civil complaint [and] a trustee's objection to an answer. . . .").

In applying Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the Claim in light of the pleading requirements under Rule 8(a) of the Federal Rules of Civil Procedure.[51] Rule 8(a)(2) states that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet that standard, the Claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (hereinafter "*Iqbal*") (citations omitted); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (hereinafter "*Twombly*"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 570. To satisfy Rule 12(b)(6), the "pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). In considering whether that standard is met for a particular claim, the court must assume the truth of

---

[51]    Rule 8 is incorporated herein pursuant to Bankruptcy Rule 7008.

all material facts alleged in support of the claim and draw all reasonable inferences in the claimant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, the court "need not accord 'legal conclusions, deductions or opinions that are couched as factual allegations . . . a presumption of truthfulness.'" *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 591 (S.D.N.Y. 2008) (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)). In short, "[i]n ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). Where a claimant is proceeding pro se, the Court will construe the claim liberally, although the claim must nonetheless be supported by specific and detailed factual allegations that provide a fair understanding for the basis of the claim and the legal grounds for recovery against a debtor. *Kimber v. GMAC Mortg., LLC (In re Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (citing *Iwachiw v. N.Y.C. Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005) (summary order)). A Court may not "invent factual allegations" that were not pled by the pro se litigant. *In re Nofer*, 514 B.R. 346, 353 (Bankr. E.D.N.Y. 2014) (citing *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## Analysis

In the Proof of Claim, the Claimant seeks damages from the Debtors equal to $7,160,000 on account of:

(a) Legal fees,

(b) Property depreciation,

(c) Town Fees & Fines,

(d) Defamation,

(e) Consumer Credit Destruction, and

(f) Lost Business Opportunities.

Claim Narrative at 9. He seeks to treble those damages based on the Debtors' alleged "Knowing,

Willful & Malicious" behavior, for damages totaling the sum of $21,480,000. *Id.* In the Response,

and in further support for the Claim, he asserts that the supporting documents demonstrate that he

has claims against Ditech based on the following:

(i)     Vexatious litigation,

(ii)    Fraudulent collection attempts in violation of the Fair Debt Collections
        Practices Act and a Federal Injunction,

(iii)   False claims made to the court,

(iv)    Fraudulent transfers of title,

(v)     Filing of fraudulent foreclosure action, and

(vi)    Bankruptcy fraud.

Response at 4.

In support of the Claim, the Claimant asserts that Ditech cannot assert any rights in either

the Quiet Title Action or Ditech Foreclosure Action because the original Note and Mortgage:

> (i) are missing or destroyed (*see* Claim at 5, 168-69), (ii) were improperly assigned
> multiple times (*see id.* at 5, 158-59), (iii) were assigned to an unknown party (*see
> id.* at 162, 165-66), (iv) were not included in either the First or Second GMAC
> Foreclosure Actions (*see id.* at 5), or (v) were otherwise materially altered (*see id.*
> at 5, 159-160; Response at 12).

He says that, consequently, in pursuing any alleged rights in those actions, Ditech's actions are

rife with fraud (*see* Response at 16, 20) and have caused him damage for the past ten years (*see*

Claim at 9, Response at 2, 17). Thus, the Claimant seeks damages from Ditech based on actions

taken in the Quiet Title Action and Foreclosure Action.

The Consumer Claims Trustee asserts that, as a matter of law, the individual claims asserted in support of the Claim, as supplemented by the Response, do not support any viable claim against the Consumer Creditor Reserve because (i) they do not state claims for relief that are plausible on their face; (ii) the Claim is barred by Florida's litigation privilege, to the extent that it is based on Ditech's ligation conduct in the Quiet Title Action or Foreclosure Action; and (iii) the Claimant fails to meet the elevated pleading standards for fraud under Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)"). Reply ¶¶ 18, 20, 27-28.

"In Florida, absolute immunity attaches to any act that occurs during the course of a judicial proceeding so long as the act has some relation to the proceeding." *Kinsey v. MLH Fin. Servs.*, Nos. 12–10451, 12–10452, 2013 WL 536019, at *2 (11th Cir. 2013) (unpublished) (citing *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007)); *see also Levin, Middlebrooks, Mabie, Thomas, Mayes Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So.2d 606, 608 (Fla. 1994) ("the privilege is afforded to any act including defamatory statements or other tortious behavior").[52] The Florida litigation privilege applies to common-law causes of action, statutory causes of action or even a cause of action based on some other origin. *See Gaisser v. Portfolio Recovery Assocs., LLC*, 571 F. Supp. 2d 1273, 1279 (S.D. Fla. 2008) (citing *Echevarria*, 950 So. 2d at 384.). Notably,

> [t]his absolute immunity resulted from the balancing of two competing interests: the right of an individual to enjoy a reputation unimpaired by defamatory attacks versus the right of the public interest to a free and full disclosure of facts in the conduct of judicial proceedings. In determining that the public interest of disclosure outweighs an individual's right to an unimpaired reputation, courts have noted that

---

[52] Affirmative defenses may be raised on a motion to dismiss where the complaint itself establishes the circumstances under which the affirmative defense applies. *See In re Sept. 11 Prop. Damages & Bus. Loss Litig.*, 481 F. Supp. 2d 253, 258 (S.D.N.Y. 2007) (quoting *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004)). Similarly, Florida courts have held that, "although an affirmative defense, the litigation privilege can be considered in resolving a motion to dismiss where, like here, the complaint affirmatively and clearly shows the conclusive applicability of the affirmative defense to the proceeding. *Lawrence v. Goldberg*, No. 06-21952, 2008 WL 10665426, at *12 (S.D. Fla. Feb. 12, 2008) (citing *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1277 (11th Cir. 2004)).

> participants in judicial proceedings must be free from the fear of later civil liability
> as to anything said or written during litigation so as not to chill the actions of the
> participants in the immediate claim.

*Levin*, 639 So.2d at 608 (internal citations omitted).[53] Florida courts apply Florida's litigation privilege to preclude plaintiffs from asserting claims arising out of a defendant's acts taken in connection with foreclosure actions. *See, e.g.*, *Esmailzadegan v. Ventura Greens at Emerald Dunes Condo. Ass'n*, No. 17-81040, 2018 WL 3699343, at *8 (S.D. Fla. April 25, 2018), *adopted by* 2018 WL 3699308 (May 11, 2018) (dismissing debt collection claim pursuant to the Florida litigation privilege where the claim was based upon an affidavit utilized in a foreclosure action); *Peterson v. JPMorgan Chase Bank, NA*, 219 F. Supp. 3d 1195, 1197 (S.D. Fla. 2016) (dismissing complaint with prejudice because "the litigation privilege precludes Plaintiff from asserting any claim arising out of Defendants' acts taken in connection with the foreclosure action and bankruptcy action").

"The elements of fraud under Florida law are: (i) a false statement concerning a special material fact; (ii) the maker's knowledge that the representation is false; (iii) an intention that the

---

[53]   The Florida litigation privilege only applies to state law causes of action. *See Moskovits v. Mercedes-Benz USA, LLC*, No. 21-20122, 2022 WL 283001, at *19 (S.D. Fla. Jan. 10, 2022) ("[A]n absolute privilege under state law 'cannot defeat a federal cause of action'" (quoting *Suchite v. Kleppini*, 819 F. Supp. 2d 1284, 1292 (S.D. Fla. 2011) (declining to apply Florida's litigation privilege to an FLSA retaliation Claim)); *see also Phillips v. Mitchell's Lawn Maint. Corp.*, No. 13-20854, 2015 WL 12533113, at *3–5 (S.D. Fla. Nov. 17, 2015) (collecting cases). Application of the privilege to a cause of action does not eliminate the cause of action. *LatAm Investments, LLC v. Holland & Knight, LLP*, 88 So.3d 240, 243 (Fla. 3d DCA 2011). Since the privilege is limited to actions taken or related to a judicial proceeding, a claimant may still pursue a claim when the actions are taken outside the proceeding or are unrelated to the proceeding. *Id.*, *see e.g.*, *Olson v. Johnson*, 961 So.2d 356, 360 (Fla. 2d DCA 2007) (holding that the litigation privilege did not extend to statements leading to a claimant's arrest as those statements were made prior to the initiation of the judicial proceeding against him). "This does not mean, however, that a remedy for a participant's misconduct is unavailable in Florida. On the contrary, just as '[r]emedies for perjury, slander, and the like committed during judicial proceedings are left to the discipline of the courts, the bar association, and the state.' Other tortious conduct occurring during litigation is equally susceptible to that same discipline." *See Levin*, 639 So.2d at 608 (quoting *Wright v. Yurko*, 446 So.2d 1162, 1164 (Fla. 5th DCA 1984)). An exception to the broad immunity provided by the Florida litigation privilege occurs when the application of the privilege "would eviscerate [a] long-established cause of action." *See Debrincat v. Fischer*, 217 So.3d 68, 70 (Fla. 2017) (holding that the litigation privilege cannot protect a litigant from a claim of malicious prosecution).

representation induces another's reliance; and (iv) consequent injury by the other party acting in reliance on the representation." *Moriber v. Dreiling*, 194 So.3d 369, 373 (Fla. 3d DCA 2016) (citations omitted). Furthermore, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also XP Glob., Inc. v. AVM, L.P.*, No. 16-80905, 2016 WL 6679427, at \*5 (S.D. Fla. Nov. 14, 2016). To satisfy the heightened pleading requirements under Rule 9(b), a plaintiff must "offer more than mere conjecture," *U.S. ex rel. Clausen v. Lab'y Corp. of Am., Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002), and "requires that a complaint plead facts giving rise to an inference of fraud." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed. App'x. 81, 86 (11th Cir. 2008).

To satisfy Rule 9(b), the complaint must set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made . . . (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same . . . (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *XP Glob., Inc. v. AVM, L.P.*, 2016 WL 6679427, at \*5. Pro se filers are not excluded from the requirements of Rule 9(b). *See In re Residential Cap., LLC*, 531 B.R. 1, 19 (Bankr. S.D.N.Y. 2015) (ruling that a pro se filer did not meet the standards for pleading fraud under Rule 9(b)).

The Claimant does not address the Consumer Claims Trustee's contention that the Florida litigation privilege is applicable to claims arising out of the Debtors' prosecution of the Quiet Title Action and the Foreclosure Action. However, he maintains that the Claim alleges fraud claims against Ditech. The Claimant asserts that to date, in the Quiet Title and Foreclosure Actions, Ditech has not demonstrated that it is an authorized agent of an entity that has the right to enforce the Note or even that the Note exists. Response at 20. He says that the Ditech has falsely represented to the

Florida Court that it is the holder of the Note and Mortgage, when, in fact, it does not hold either document. *See id.* He contends that Ditech lacks standing to assert any claim against him premised on the Note and Mortgage, and that Ditech is perpetrating a fraud on the Florida Court and in doing so, has damaged him, all as set forth in the Claim. *See id.*

The Claimant maintains that the allegations in support of the Claim easily satisfy the Rule 8(a) pleading standards since they contain "very specific and detailed factual allegations, as to Ditech's violative and fraudulent conduct, which includes attempting to negate such culpability by filing for bankruptcy protection to avoid liability and the damages to which the Claimant is entitled." Response at 21. He reiterates that "Ditech is not a valid creditor or holder of the Claimant's [N]ote related to the Claimant's [Property], yet has, fraudulently, asserted such position in the Claimant's [Q]uiet [T]itle [A]ction in Florida, as well as in the [F]oreclosure [A]ction that Ditech has, wrongfully, filed against the Claimant." *Id.* at 21-22. He also contends that the Claim satisfies the Rule 12(b)(6) pleading standards because "the Claimant, clearly, sets forth what made Ditech's actions and, indeed, transactions, fraudulent and illegal, and the Claimant's supporting documents also, clearly elucidate how Ditech, never was a holder in due course, is not a holder in due course, and has facilitated fraudulent assignments of the Claimant's [M]ortgage, thereby causing the Claimant to suffer injuries at the hands of Ditech." *Id.* at 23. Finally, he maintains that he "has plead[ed] sufficient facts to state a claim that is plausible on its face, which supports the Claimant's allegations of fraud and has, in fact, offered documentation to demonstrate that Ditech engaged in fraud." *Id.*

The Court considers those matters below.

Of the elements of the Claim listed in the Proof of Claim, only Ditech's alleged "defamation" provides a substantive ground for relief against Ditech. The "Legal fees, Town Fees

& Fines, Property depreciation, Consumer Credit Destruction or Lost Business Opportunities"
may provide measures of damages against Ditech, assuming the Claimant demonstrates
wrongdoing on Ditech's part giving rise to damages against Ditech, but they do not provide a
substantive basis for relief against Ditech. In any event, to the extent that those elements of the
Claim could be viewed to provide substantive grounds for relief against Ditech, construing the
facts alleged in support of the Claim and in the Response in a light most favorable to the pro se
Claimant, the Court finds that the Claimant has failed to allege facts stating prima facie grounds
for relief for those elements of the Claim. As such, the Court disallows and expunges them.

<u>Defamation</u>

The Claimant complains that the lawsuits have destroyed his reputation and cost him
business opportunities. Claim Narrative at 6. He asserts that the long legal trail of lawsuits with
GMAC, Walters Management/Green Tree, and now Ditech have made him a "bad risk" in the eyes
of corporations and potential investors. *Id.* It is settled, that under Florida law, the litigation
privilege extends to allegedly defamatory statements made by a party to the litigation in the context
of the litigation. *Levin*, 639 So.2d at 608 (findings the privilege is afforded to allegedly defamatory
statements made in the context of litigation). However, in disallowing and expunging the
defamation claim, the Court need not rely solely on Florida's litigation privilege. To state a claim
for defamation under Florida law, the Claimant must allege facts demonstrating that: "(1) the
defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the
falsity of the statement caused injury to the plaintiff." *Bass v. Rivera*, 826 So.2d 534, 535 (Fla. 2d
DCA 2002). Even construing the facts alleged in support of the Claim and in the Response in a
light most favorable to the pro se Claimant, the Court finds that the Claimant has failed to allege
facts demonstrating that he has been injured by a false statement published by Ditech to a third

party. He has failed to state a defamation claim against Ditech. *See Valencia v. Citibank Int'l*, 728 So.2d 330, 330-31 (Fla. 3d DCA 1999) (affirming lower court dismissal of defamation claim for lack of publication); *Johnson v. Darnell*, No. 17-87, 2018 WL 3672759, at *9 (N.D. Fla. 2018) (dismissing defamation claim for failure to state a claim where plaintiff contended that his false arrest and imprisonment resulted in his name and picture being published on a most wanted list). For that additional reason, the Court disallows and expunges the "defamation" element of the Claim.

Furthermore, none of the elements of the Claim identified in the Response provides the Claimant with a substantive ground for relief against Ditech. The Court reviews those claims below.

Vexatious Litigation

The Claimant argues that the docket in the Quiet Title Action and the docket in the Ditech Foreclosure Action[54] demonstrate how Ditech has "taken every measure to delay, obfuscate, and misdirect, by pursuing false and fraudulent legal claims in the afore described lawsuits." Response at 17. He says that the court record related to the ongoing fraud being perpetrated by Ditech on behalf of now-bankrupt mortgage companies has, severely, and perhaps, irreparably, tarnished the Claimant's reputation, as well as robbed him of precious capital during critical periods of his businesses' growth. *Id.* He also says that in addition to the evidence of this activity in the docket of the Quiet Title Action, the court docket in the Foreclosure Action evidences the same. Moreover, he argues that in litigating with him, the Debtors have "exhibited extreme bad faith and contempt . . . using a seemingly bottomless war chest of legal funds to grind him down." Claim Narrative at 5.

---

[54]    The dockets for the Quiet Title Action and for the Ditech Foreclosure Action are annexed as Exhibits D and K to the Response, respectively.

The Florida litigation privilege extends to any statements by the Debtors that Claimant says adversely impacted his reputation. *See Fridovich v. Fridovich*, 598 So.2d 65, 66 (Fla. 1992) ("The law in Florida has long been that defamatory statements made in the course of judicial proceedings are absolutely privileged, and no cause of action for damages will lie, regardless of how false or malicious the statements may be, so long as the statements are relevant to the subject of inquiry."); *see also James v. Leigh*, 145 So.3d 1006, 1008-09 (Fla. 1st DCA 2014) (holding that the absolute immunity afforded to statements made in a proceeding may not be waived).

Moreover, the Claimant has not alleged facts or a legal theory in support of his claim of "vexatious litigation." Under Florida law, a "vexatious litigant" is a person "who, in the immediately preceding 5-year period, has commenced, prosecuted or maintained, pro se, five or more civil actions in any court in this state [excluding small claims cases], which actions have been finally and adversely determined against such person." *Smith v. Fisher*, 965 So.2d 205, 208 (Fla. 4th DCA 2007) (citing § 68.093(2)(d)1, Fla. Stat. (2005)). Ditech plainly is not a vexatious litigant under Florida law.[55] Accordingly, the Court disallows and expunges the "vexatious litigation" element of the Claim.

---

[55]    To the extent that the Claim and Response could be construed as purporting to assert a claim for malicious prosecution under Florida law, the Claimant has failed to state a claim for such relief. Under Florida law, the Claimant must allege facts demonstrating the following six elements:

> (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued;

> (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding;

> (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff;

> (4) there was an absence of probable cause for the original proceeding;

> (5) there was malice on the part of the present defendant; and

> (6) the plaintiff suffered damage as a result of the original proceeding.

34

Fraudulent Collection In Violation of the Fair Debt
Collections Practices Act and the Consent Order

### Violation of the Consent Order

The Claimant reads the Consent Order to "mandate[] that Green Tree Servicing provide the complete documentation, as to how the servicer attained the rights to service the mortgage" Response at 16. In support of the Claim, the Claimant asserts that in the Quiet Title Action, "Ditech did not comply" with that directive. *Id.* at 16-17. However, the Claimant does not cite to the provisions of the Consent Order that direct Green Tree to "provide complete documentation, as to how the servicer attained the rights to service the mortgage." Moreover, and in any event, "an independent analysis of the Consent Order shows that third parties were not given an enforceable right under the Consent Order." *See FTC v. Green Tree Servicing LLC*, 2018 WL 614472, at *3. Thus, "[b]ecause [the Claimant] has no legally protected interest under the Consent Order, he cannot show an injury in fact." *Id.* at *4. That means that the Claimant lacks standing to enforce the Consent Order. *Id.* at *1. For that reason, the Court disallows and expunges that element of the Claim.

### Violations of the Fair Debt Collection Practices Act

The Claimant asserts that Ditech's commencement of the Foreclosure Action and its debt collection efforts, in general, violate section 1692g of the Fair Debt Collections Practices Act (the "FDCPA") because Ditech has not "validated" his debt. Response at 16 (citing 15 U.S.C. § 1692g). Moreover, he says that in the Florida Court, Ditech has vigorously opposed the Claimant's efforts to cause Ditech to validate the Note and Mortgage. Response at 16. Indeed,

---

*Alamo Rent–A–Car, Inc. v. Mancusi*, 632 So.2d 1352, 1355 (Fla. 1994). There are no facts of record supporting a claim of malicious prosecution.

he contends that Ditech has yet to produce the requisite documentation to substantiate its claim in the Ditech Foreclosure Action. *Id.*

Section 1692g sets forth the requirements for the validation of debts under the FDCPA and provides for the following:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing . . . (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). If a debtor disputes the debt within the thirty-day period, the debt collector must cease collection of the debt until the debt collector obtains verification of the debt or the original creditor's information and a copy of same is mailed to the consumer." 15 U.S.C. § 1692g(b). That is to say that the debt is disputed, the debt collector must "validate" the debt. *Hinkle v. Midland Credit Mgmt, Inc.*, 827 F.3d 1295, 1300 n.6 (11th Cir. 2016) ("The phrase "validation period" is a reference to § 1692g of the FDCPA, which requires a debt collector to validate a debt when a consumer disputes the debt in writing within a certain period of time. 15 U.S.C. § 1692g(b)."); *see also Ferrer v. Bayview Loan Servicing, LLC*, No. 15-20877, 2015 WL 13816225, at *3 (S.D. Fla. Aug. 24, 2015) ("Section 1692g dictates a debt collector's responsibility to validate a debt upon a request to do so.").

The Claimant summarily asserts that Ditech violated section 1692g because it has failed to validate his debt in the Florida Court. The only collection activity that the Claimant cites is Ditech's commencement of the Foreclosure Action. Assuming, *arguendo,* that the FDCPA is applicable herein, the formal pleading commencing the Foreclosure Action does not constitute an

36

"initial communication" under section 1692g. *See* 15 U.S.C. 1692g(d) ("A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of [§ 1692(g)(d)]."). It is settled in the Eleventh Circuit that a legal action, its pleadings, and related papers and correspondence cannot constitute "communications" under the FDCPA. *See Vega v. McKay,* 351 F.3d 1334, 1337 (11th Cir.2003) (holding that a complaint package was not actionable under the FDCPA because it did not constitute an "initial communication"); *see also Rajbhandari v. U.S. Bank*, 305 F.R D. 689, 693 (S.D. Fla. 2015) ("Here, there are no allegations that Plaintiff received anything other than a complaint seeking foreclosure. Therefore, Plaintiff's claim . . . for a violation of 15 U.S.C. § 1692g(a)(3) fails."). For that reason, the Court disallows and expunges that FDCPA element of the Claim.

### False Claims Made to the Florida Court

Mr. Freedman asserts that Ditech made "false claims" to the Florida Court. Response at 4. However, he asserts no facts in support of that element of his Claim. He fails to state any grounds for relief. Accordingly, the Court disallows and expunges that element of the Claim.

### The Fraud Claims

#### Bankruptcy Fraud

The Claimant maintains that Ditech filed for bankruptcy protection primarily to avoid "copious accrued liability from years of malfeasance and nefarious business practices." Response at 18. He asserts that the commencement of the bankruptcy case is part of a pattern and practice by a group of companies and individuals that has unfolded over a decade, of committing a wide range of punishable activities and then filing for bankruptcy protection to avoid responsibility for those acts. *Id.* In referring to Ditech's bankruptcy case, the Claimant says that this is the third time that he has witnessed entities that either held his Note (i.e., GMAC) or claimed to hold his Note

(i.e., Walters/Green Tree/Ditech) commit "industrial scale malfeasance that is recognized and sanctioned, heavily, by the United States Government," and then file for bankruptcy protection "to simply avoid responsibility, change their name, obtain fresh victims, all while keeping all of the old victims squirming and on the proverbial hook." *Id.*

Title 18, section 157 of the United States Code defines the crime of Bankruptcy Fraud as:

A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so—

(1) files a petition under title 11, including a fraudulent involuntary petition under section 303 of such title;

(2) files a document in a proceeding under title 11; or

(3) makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title, shall be fined under this title, imprisoned not more than 5 years, or both.

18 U.S.C. § 157. There is no private right of action for bankruptcy fraud. *See Schneorson v. Franklyn (In re Schneorson)*, No. 22-40494, 2022 WL 4647555, at *13 (Bankr. E.D.N.Y. Sept. 29, 2022) (collecting cases); *see also* 18 U.S.C. § 158 (providing that the Attorney General of the United States shall designate the individuals that may carry out enforcement activities for bankruptcy fraud violations). Accordingly, as a matter of law, the Claimant cannot state a claim for bankruptcy fraud. *See Fair v. Verizon Comm'ns Inc.*, 621 Fed.App'x 52, 53 (2d Cir. 2015) (summary order) ("Determinations that a federal statute does not provide a private right of action are typically subject to dismissal under [Rule 12(b)(6)] for failure to state a claim.").

Moreover, and in any event, the Claimant has not alleged facts that support a common law fraud claim. To satisfy Rule 9(b), the Claimant must allege facts in support of Ditech's alleged "bankruptcy fraud" that set forth "(1) precisely what statements were made in what documents or

oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *XP Glob., Inc. v. AVM, L.P.*, 2016 WL 6679427, at *5. The Claimant plainly fails to meet those standards. In purporting to assert a claim for "bankruptcy fraud" the Claimant has not alleged facts demonstrating that Ditech knowingly made a false statement of a material fact to the Claimant, that the Claimant relied on it, or that he was consequently injured. *Barrett v. Scutieri*, 281 F. App'x 952, 954 (11th Cir. 2008); *see also Simpson v. Zwinge*, No. 12-60817, 2013 WL 12141352, at *4 (S.D. Fla. Jan. 31, 2013), *aff'd* 531 F. App'x 985 (11th Cir. 2013) (dismissing fraud claim where complaint did not identify any particular false statements of material fact). Accordingly, the Court disallows and expunges the "Bankruptcy Fraud" element of the Claim.

Fraudulent Transfers of Title

In substance, the Claimant contends that Ditech, in concert with GMAC, MERS and Shellpoint Mortgage Servicing fraudulently transferred the Mortgage, and in doing so, placed a cloud on the Claimant's title to the Property. Response at 15. He says that the transactions demonstrate that Ditech and NewRez, the winning bidder at Ditech's bankruptcy auction, have made assignments more times in the last twelve months, than were made in last twenty years, in an obvious effort to obfuscate the true providence of the title to Claimant's Property. Response at 15.

The Claimant contends, as follows:

> Under Florida law, the assignee of a mortgage cannot commence a foreclosure action until the assignment of the note and mortgage is complete. In contravention of Florida law, an attorney for GMAC caused his employee to file an Assignment

of Mortgage from MERS to GMAC on April 28, 2009--four months after he filed a foreclosure action on behalf of GMAC against MERS. *See* Response at 14.

GMAC filed for bankruptcy protection on May 14, 2012. On that day, MERS recorded an assignment of the Mortgage from MERS to GMAC - at that point, a defunct and bankrupt entity - notwithstanding that the assignment (i) violated MERS' policy not to conduct transfers for bankrupt entities, and (ii) was inconsistent with the previously recorded assignment of the Mortgage. *See id.*

The results of the Claimant's recent title search performed on August 3, 2020, indicate that the last Vesting Deed Information is a Warranty Deed in favor of the Claimant, recorded on June 15, 1994. This is consistent with the Claimant's purchase of his real property. *See id.* at 13.

On December 15, 2014, the Claimant filed his Quiet Title Action. As of that time, GMAC was the assignee of the Mortgage. In early 2015, OCWEN, Walters/Green Tree, and MERS all claimed to have title to the Claimant's property, as alleged by these entities in various motions to dismiss the Claimant's Quiet Title action. *See id.* at 12.

On March 16, 2017, Ditech caused two South Dakota document processors to act as lawyers on behalf of GMAC (a defunct entity) to transfer the Note and Mortgage from GMAC to Ditech Financial LLC, when there was not yet any existing legal entity known as, Ditech Financial, LLC, which is, in reality, Walters Investment Management/Green Tree. *See id.* at 14-15.

Thus, the alleged fraudulent assignment from GMAC to Ditech Financial placed a cloud on the Claimant's title. Moreover, one day later, on March 17, 2017, Ditech commenced the alleged fraudulent foreclosure action against the Claimant in the Florida Court. *See id.* at 15.

On January 6, 2020, Ditech used the alleged fraudulent assignment as the basis to assign the Mortgage to New Residential Mortgage LLC. *See id.*

On July 13, 2020, New Residential Mortgage LLC made another transfer to a "new jumble of names" at the same address as New Residential Mortgage LLC to New Rez LLC d/b/a Shellpoint Mortgage Servicing. *See id.*

Under Florida law to state a claim for fraud, the Claimant must allege facts demonstrating:

"(i) a false statement concerning a specific material fact; (ii) the maker's knowledge that the

representation is false; (iii) an intention that the representation induces another's reliance; and (iv)

consequent injury by the other party acting in reliance on the representation." *Cohen v. Kravit Est. Buyers, Inc.*, 843 So.2d 989, 991 (Fla. 4th DCA 2003).

The Claimant makes a generalized accusation that Ditech misrepresented the Ditech Assignment and asserts conclusory wrongdoing. *See* Response at 14-15. He fails to detail the specific misrepresentation in the Ditech Assignment outside of a several conclusory statements that lead him to believe that it was not possible for GMAC to assign the Mortgage to Ditech. In the Claim and Response, he fails to allege that Ditech knowingly made a false representation, who relied on the false statement and what the specific injury was caused. *See Yanks v. Barnett*, 563 So.2d 766, 778 (Fla. 3d DCA 1990) (finding "that the buyers failed to present competent evidence to support their claim for fraudulent misrepresentation."). The Court finds that the Claimant has not stated a claim for fraud under Florida law. The Court disallows and expunges this "Fraudulent Transfers of Title" element of the Claim.

Fraudulent Foreclosure

The Claimant asserts that Ditech does not have standing to initiate the Ditech Foreclosure action because it cannot demonstrate that it has the right to foreclose by reason of the Fraudulent Title Transfers. Furthermore, he asserts that "[f]oreclosing on a property with unclean hands and without a clean chain of title is fraud." *Id.* at 16. He cites to no support for that position and there is none. The Court disallows and expunges this "Fraudulent Foreclosure" element of the Claim.

Falsification of Documents

The Claimant contends that in 2015, 2016 and 2017 and in connection with the prosecution of the Quiet Title Action, he demanded that OCWEN, Walters/Green Tree, and MERS produce proof of the chain of tile and the Mortgage and Note for inspection. Response at 17. He says that they failed to comply with those demands. He further asserts that in May 2018, Ditech produced

what it claimed to be the original Mortgage and Note. *Id.* The Claimant asserts that upon inspection by an "acclaimed forensic document examiner" and after a comparison with the original duplicate set of closing documents retained by the Claimant, there was no question that the two sets of documents are different. *Id.* at 17-18 He says that he raised that matter as a defense to Ditech's Foreclosure Action. *Id.* at 18.

"Forgery exists under Florida law where the defendant makes a writing which falsely purports to be the writing of another, made with the intent to injure or defraud any person. The instrument in question must have some legal efficacy." *Schauer v. Gen. Motors Acceptance Corp.*, 819 So.2d 809, 814 (Fla. 4th DCA 2002). In Florida, "[f]orgery is recognized as a species of fraud . . . ." *Bennett v. Mortg. Elec. Registration Sys., Inc.*, 230 So. 3d 100, 106, n.3 (Fla. 3d DCA 2017) (citation omitted). "[A]s with any kind of fraud, resulting damages to the plaintiff are an essential element." *Id.* (citing *Poliakoff v. Nat'l Emblem Ins. Co.*, 249 So2.d 477 478 (Fla. 3d DCA 1971). The Florida litigation privilege bars the Claimant's assertion of a damage claim against Ditech based on its alleged forgery. *Perl v. Omni Int'l of Miami, Ltd.,* 439 So.2d 316, 317 (Fla.Dist.Ct.App.1983) (finding that litigation immunity barred a damage claim for "fraud, perjury, and forgery" based on "alleged false testimony and alleged false documentary evidence."). Moreover, and in any event, the Claimant has not stated a claim for fraud under Florida law because, at a minimum, he has not alleged facts demonstrating that he was misled by the allegedly forged documents, that he relied to his detriment on the documents or that he suffered damages by reason of Ditech's alleged submission of the alleged forgeries. The Court disallows and expunges the claim for "Falsification of Documents."

## **Conclusion**

Based on the foregoing, the Court sustains the Objection and disallows and expunges the

Claim.

IT IS SO ORDERED.


Dated:  New York, New York
        February 7, 2023


                                            /s/ *James L. Garrity, Jr.*
                                            Hon. James L. Garrity, Jr.
                                            U.S. Bankruptcy Judge