UNITED STATES BANKRUPTCY COURT                    NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
In re:                                           :
                                                 :    Case No. 19-10412 (JLG)
                                                 :    Chapter 11
Ditech Holding Corporation, *et al.*,            :
                                                 :
                                                 :    (Jointly Administered)
                            Debtors.[1]          :
------------------------------------------------------- x

### MEMORANDUM DECISION AND ORDER SUSTAINING THE PLAN ADMINISTRATOR'S TWENTY-EIGHTH OMNIBUS OBJECTION, THE CONSUMER CLAIMS TRUSTEE'S FIFTIETH OMNIBUS OBJECTION AND THE PLAN ADMINISTRATOR'S AND CONSUMER CLAIMS TRUSTEE'S EIGHTY-FIRST OMNIBUS OBJECTION TO THE CLAIMS OF LISA JANCO

A P P E A R A N C E S : [2]

JENNER & BLOCK, LLP
*Attorneys for the Consumer Representative*
1155 Avenue of the Americas
New York, New York 10022
By:    Richard Levin, Esq.

WEIL, GOTSHAL & MANGES LLP
*Attorneys for the Plan Administrator*
767 Fifth Avenue
New York, New York 10153
By:    Ray C. Schrock, P.C., Esq.
       Richard W. Slack, Esq.
       Natasha S. Hwangpo, Esq.

---

[1]    The Debtors' *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1326, was confirmed, which created the Wind Down Estates. The Wind Down Estates, along with the last four digits of each of their federal tax identification numbers, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

[2]    Ms. Janco is acting pro se herein and, in that capacity, filed Responses to the Objections to her Claims. As explained below, the Court scheduled a telephonic Sufficiency Hearing on the Objections which Ms. Janco did not attend.  The Court determined to resolve the Objections on the papers, without a hearing.

Ms. Lisa Janco
*Appearing Pro Se*
9020 West Ave J, Space #2
Lancaster, California 93536

## HON. JAMES L. GARRITY, JR.
## U.S. BANKRUPTCY JUDGE

### Introduction[3]

In these Chapter 11 Cases, Lisa Janco (the "Claimant") brought an adversary proceeding

(the "Adversary Proceeding")[4] and the following three proofs of claim against Ditech Holding

Corporation ("Ditech"): Proof of Claim 2585 ("Claim 2585"), Proof of Claim 2916 ("Claim

2916"), and Proof of Claim 2919 ("Claim 2919," collectively the "Claims"). The damages that

the Claimant sought in the Adversary Proceeding complaint (the "Complaint"),[5] which are also

sought in the Claims, relate to and arise out of the Ditech's alleged pre-petition faults and

wrongdoing in servicing a mortgage loan obligation of the Claimant. In broad strokes, in support

of the Claims, she asserts that Ditech (i) required her to pay excessive amounts into the mortgage

loan's escrow account, (ii) misapplied payments made in 2016 to her escrow account, (iii) refused

to return funds paid by the State of California as part of the Property Tax Postponement Program

(defined below as the "CA Property Tax Payment"), and (iv) failed to provide a timely

disbursement of the proceeds of an insurance policy paid to Ditech by CSE Insurance Company

(the "CSE Insurance Proceeds"). She also purports to assert causes of action against Ditech for

violations of the Americans with Disabilities Act ("ADA"), the California Unruh Act, the

---

[3]     Capitalized terms shall have the meanings ascribed to them herein and in the Objections and Third Amended Plan, as applicable. References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. References to "AP ECF No. __" are to documents filed on the electronic docket in the Adversary Proceeding under Case No. 20-01051.

[4]     *Janco v. Ditech Financial LLC*, No. 20-01051 (Bankr. S.D.N.Y. Feb. 12, 2020).

[5]     *Complaint*, AP ECF No. 1.

California Disabled Persons Act (Cal. Civ. Code § 51.4), the Fair Credit Reporting Act ("FCRA"), the Federal Trade Commission Act, the Civil Rights Act, and the Real Estate Settlement Procedures Act ("RESPA").  In addition, she purports to allege causes of action against Ditech for personal injury against a disabled person, breach of contract, embezzlement, larceny, and fraud while acting in a fiduciary capacity.

The Consumer Claims Trustee and the Plan Administrator of Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and its debtor affiliates (excluding Reorganized RMS) filed Objections to the Claims.  In substance, they seek to disallow and expunge the Claims on the grounds that the Claims fail to state claims for relief against Ditech under state or federal law and because, in any event, the Claims are time-barred.  They also assert that the Claims are not entitled to administrative expense priority under the Bankruptcy Code—title 11 of the United States Code.  The Claimant contests the Objections.  On April 27, 2023, in accordance with the Claims Procedure Order,[6] the Court conducted a Sufficiency Hearing on the Claims.  Through counsel, the Consumer Claims Trustee and Plan Administrator appeared at the hearing.  The Claimant did not appear at the hearing.  The Court did not hear arguments from the Consumer Claims Trustee or the Plan Administrator, and it resolves the Objections based upon its review of the voluminous papers submitted in support of, and in opposition to, the Claims.

For the reasons stated herein, the Court sustains the Objections and disallows and expunges the Claims.

### **Jurisdiction**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States

---

[6]    *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

### Facts Relevant to the Claims

On January 21, 2016, the Claimant made a payment on her mortgage, and $484 was applied to her escrow account, bringing the escrow balance to $1,328.59. Claim 2919 at 103. On February 12, 2016, the Claimant made a $2,500 payment to Ditech. Claim 2916 at 62. According to Ditech's records, at that time it held $187.46 in suspense, and the Claimant was in arrears under the mortgage on account of her failure to pay January and February 2016 mortgage payments in the amount of $1,370.69 each, plus late fees in the amount of $44.33. *Id.* at 62, 64. Ditech applied the $2,500 payment first to the suspense account, bringing the account balance to $2,687.36. *Id.* at 64. It then applied the funds in the suspense account to the Claimant's outstanding January payment (i.e., $1,370.69), leaving a balance in the suspense account of $1,316.67. *Id.* As of that date, the balance in the escrow account was $1,812.59. Claim 2919 at 103.

On March 8, 2016, Ditech made a disbursement for property taxes in the amount of $1,919.36, leaving an escrow deficiency of ($106.77). *Id.* Ditech credited the escrow account with payments of $484 on each of March 12 and March 31, 2016, and it added interest of $5.59 to the escrow account, bringing the escrow account balance to $866.82. *Id.*

On May 9, 2016, the Claimant made a payment of $1,502 to Ditech (the "May 9 Payment"). *See* Claim 2916 at 64. Based upon what appeared to be the instructions on the remittance coupon, Ditech applied the payment to the escrow account. *See id.*; Complaint at 100–01. On July 21, 2016, Ditech ran an escrow analysis on the Claimant's account and refunded $1,562.46 to the Claimant. Claim 2916 at 64. The refund took into account the application of the May 9 Payment to the Claimant's escrow account. *Id.*

4

By letter dated March 14, 2017, the California State Controller's Office ("SCO") informed the Claimant that she was approved for a 2016-17 Property Tax Postponement. *Id.* at 57. The letter explained that the SCO would make a payment to the Los Angeles County Tax Collector's Office on her behalf by June 30, 2017. *Id.* It further explained that if the Tax Collector's Office received payments from the lender after the SCO office made the tax payment, the duplicate payment will be refunded to the lender. *Id.*

In July 2017, Ditech performed its annual analysis of the Claimant's escrow account. Because the mortgage was in delinquent status, Ditech did not share the analysis with the Claimant. *Id.*

On July 8, 2017, the SCO refunded the property tax disbursements made by Ditech on November 28, 2016 and on March 23, 2017, aggregating $3881.31 (the "CA Property Tax Payment"). Claim 2916 at 59. On July 8, 2017, Ditech applied the CA Property Tax Payment to the Claimant's escrow account bringing the escrow balance from a deficiency of ($751.57) to a surplus of $3,131.74. Claim 2919 at 103.

On July 10, 2017, Ditech approved the Claimant for a trial loan modification plan. Claim 2916 at 27. The trial plan called for the Claimant to make three payments to Ditech of $1,553.02 for the months of August, September, and October 2017. The Claimant made those payments. *Id.* at 63. On November 4, 2017, Ditech mailed the Claimant permanent loan modification documents printed in a standard font size. *Id.* The Claimant refused to sign these documents because the loan modification agreement called for her to make escrow payments for her property taxes. Claim 2919 at 19, 124, 156–57.

On January 16, 2018, Ditech sent the Claimant a year-end escrow account history.  It showed escrow account deposits and disbursements of $3,256.45 and $1,739.70, respectively, and a resulting balance of $2,542.59.  Claim 2916 at 52.

On January 30, 2018, Ditech responded to the Claimant's request for billing statements printed in larger fonts and informed her they were consulting with their vendor to determine if it was feasible for Ditech to accommodate the request.  *Id.* at 64.

On March 7, 2018, Ditech sent the Claimant an escrow account disclosure statement that showed an escrow surplus of $3,671.24 and that informed her that she would receive a surplus check unless her account was past due.  Claim 2919 at 83.

On March 18, 2018, Ditech sent the Claimant a mortgage billing statement showing that the Claimant had not made a mortgage payment since July 2017 and that she was $16,571.47 in arrears under the mortgage.  *Id.* at 85.  The billing statement also disclosed $278.66 in suspense and Ditech's March 14, 2018 distribution of $2,017.35 for property taxes.  *Id.*

On April 6, 2018, Ditech referred the Claimant's account for foreclosure.  At that time, the account was 279 days past due.  Claim 2916 at 60.

The Claimant asserts Ditech withheld the CSE Insurance Proceeds.  *Id.* at 3.  Neither the Claims nor the Responses provide details on the amount of insurance proceeds, when Ditech allegedly received the proceeds, or the amount of the proceeds and interest thereon to which the Claimant believes she was entitled.

The Claimant lodged a complaint with the Los Angeles County Consumer & Business Affairs investigator, raising concerns over her monthly payment amount with Ditech, particularly in relation to paying monthly escrow for property taxes.  *See* Claim 2919 at 148–50.  By a letter dated July 23, 2018, Ditech responded to the Los Angeles County Consumer & Business Affairs

6

investigator, contending that it had not received any payments from the SCO for property taxes on the Claimant's account since its receipt of the CA Property Tax Payment in July 2017. *Id.* at 148. Ditech explained that, because the Claimant's Annual Statement of Postponed Property Taxes showed property taxes were due on her property, it was unable to remove the property tax escrow from Claimant's account. *Id.* Ditech asserted that it attempted to get additional information from the taxing authority to confirm that the property taxes should be removed from the Claimant's records, but it could not obtain such information without her assistance, which was not forthcoming. *Id.* at 149. On July 23, 2018, Ditech followed up with the Claimant, explaining that it was unable to remove the property tax escrow without her cooperation. *Id.*

On January 30, 2019, the SCO filed a release of lien for the Postponed Property Taxes. Second Response at 212.

On July 16, 2019, the Claimant paid off her account. Claim 2916 at 60.

## The Chapter 11 Cases

On February 11, 2019 (the "Petition Date"), Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates (the "Debtors") filed petitions for relief (the "Chapter 11 Cases") of the Bankruptcy Code in this Court. The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019 at 5:00 p.m. (prevailing Eastern Time) as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[7] Thereafter, the Court

---

[7]    *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

extended the General Bar Date for consumer borrowers like the Claimant twice, ultimately setting the date as June 3, 2019, at 5:00 p.m. (prevailing Eastern Time).[8]

On September 26, 2019, the Debtors confirmed their Third Amended Plan,[9] and on September 30, 2019, that plan became effective.[10]  Upon entry of the Confirmation Order,[11] the Court set November 11, 2019, as the Administrative Expense Bar Date.  The Plan Administrator is a fiduciary appointed under the Third Amended Plan who is charged with the duty of winding down, dissolving, and liquidating the Wind Down Estates.  *See* Third Amended Plan, art. I, ¶¶ 1.130, 1.184, 1.186.  Under the Plan, "[a]ny claim asserted by a Borrower against the Debtors" is a Consumer Creditor Claim.  *Id.* art. I, ¶ 1.36.  The Plan provides that holders of Allowed Consumer Creditor Claims "shall receive such holder's Pro Rata share of the Consumer Creditor Net Proceeds" in accordance with the Plan.  *Id*. art. IV, ¶ 4.6.  The Consumer Claims Trustee is a fiduciary appointed under the Third Amended Plan who is responsible for the reconciliation and resolution of Consumer Creditor Claims and distribution of funds to holders of Allowed Consumer Creditor Claims in accordance with the Third Amended Plan.  *See id.* art. I, ¶ 1.41.  The Plan mandates that the Plan Administrator reserve an amount sufficient to pay holders of Disputed Claims "the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims."  *Id.* art. VI, ¶ 6.3(b).  It also provides that the Plan Administrator, on

---

[8]   *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[9]   *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1326 (the "Third Amended Plan").

[10]   *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

[11]   *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1404 (the "Confirmation Order").

behalf of each of the Wind Down Estates, is authorized to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims. *See id.* art. VII, ¶ 7.1. Additionally, the Consumer Claims Trustee has the exclusive authority to object to all Consumer Creditor Claims. *See id.*

## The Claims Procedures Order

On November 19, 2019, the Court entered the Claims Procedures Order. Under that order, the Plan Administrator and the Consumer Claims Trustee are authorized to file Omnibus Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order. *See* Claims Procedures Order ¶ 2(i)(a)–(h). A properly filed and served response to an objection gives rise to a "Contested Claim" that will be resolved at a Claim Hearing. *Id.* ¶ 3(iv). The Plan Administrator and/or the Consumer Claims Trustee, as appropriate, has the option of scheduling the Claim Hearing as either a "Merits Hearing" or a "Sufficiency Hearing." *Id.* ¶ 3(iv)(a), (b). A "Merits Hearing" is an evidentiary hearing on the merits of a Contested Claim. A "Sufficiency Hearing" is a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. The legal standard of review that will be applied by the Court at a Sufficiency Hearing is equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[12] *Id.* ¶ 3(iv)(a).

---

[12] Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In filing the Objections, the Consumer Claims Trustee and Plan Administrator initiated contested matters. *See* Fed. R. Bankr. P. 3007 advisory committee's note to 1983 adoption ("The contested matter initiated by an objection to a claim is governed by Rule 9014. . . ."); *see also Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs., Inc.)*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter"). Bankruptcy Rule 9014 governs contested matters. The rule does not explicitly provide for the application of Bankruptcy Rule 7012. However, Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply." Fed. R. Bankr. P. 9014. The Court does so here.

## The Claims, Amended Claims, Objections, Responses and Adversary Proceeding

Below, the Court describes the Adversary Proceeding and the Claims.

## The Adversary Proceeding

On February 12, 2020, the Claimant filed the Complaint in this Court, initiating the Adversary Proceeding against Ditech. The Claimant sought damages in the amount of $100,000. Complaint at 2. She purported to assert claims against Ditech for violations of RESPA, FCRA, and ADA. Complaint at 10–11. On January 13, 2021, the Plan Administrator filed a motion to dismiss the Adversary Proceeding (the "Motion to Dismiss")[13] in favor of resolving the claims in the claims resolution process. Motion to Dismiss ¶¶ 17–19. In support of the Motion to Dismiss, the Plan Administrator maintained that the Claimant had filed Claim 2585, which was still pending at that time. *Id.* ¶ 4. Furthermore, he argued that since the Claimant was solely seeking monetary relief, she was effectively asserting a claim within the Adversary Proceeding. *See id.* ¶ 19. He argued that the Claimant should not be permitted to avoid the claims resolution process by filing an Adversary Proceeding. *Id.* On March 25, 2021, the Court conducted a hearing on the Motion to Dismiss. In substance, the Court found that the Claimant was attempting to liquidate her claim against Ditech via the Adversary Proceeding, which runs afoul of the claims resolution process.[14] On April 7, 2021, the Court entered an order dismissing the Adversary Proceeding.[15]

## Claim 2585

On November 4, 2019, Claimant filed Claim 2585 as an administrative expense claim against Ditech in the sum of $100,000, plus unknown, and undetermined compensatory and

---

[13]   *Motion to Dismiss Adversary Proceeding of Lisa Janco*, AP ECF No. 8.

[14]   *Transcript of Hearing Held on March 25, 2021*, AP ECF No. 11 at 32:14–25.

[15]   *Order Granting Plan Administrator's Motion to Dismiss Adversary Proceeding of Lisa Janco*, AP ECF No. 12.

punitive damages, plus interest.  As support for the claim, she asserts that Ditech (i) violated RESPA by funneling her payments into her escrow account; (ii) committed fraud by refusing to advance her the CA Property Tax Payments; and (iii) committed fraud by withholding the CSE Insurance Proceeds.  Claim No. 2585 at 1.

On January 7, 2020, the Plan Administrator objected to Claim 2585 (the "Twenty-Eighth Omnibus Objection")[16] on the basis that the claim lacked "sufficient documentation to support the validity of the claim."  Twenty-Eighth Omnibus Objection, Ex. A at 25.

On February 26, 2020, the Claimant filed a response to the Twenty-Eighth Omnibus Objection (the "First Response").[17]

### Claim 2916

On April 19, 2021, Claimant filed Claim 2916 against Ditech.  It purports to amend Claim 2585.  Claim 2916 at 1.  The proof of claim asserts a $659,950.00 unsecured claim against Ditech for damages allegedly caused by: (i) illegal foreclosure, (ii) embezzlement of government monies, (iii) bad faith, (iv) larceny, (v) fraud, (vi) actual fraud, (vii) ADA violations, and (viii) civil rights damages.  *Id.*

On October 18, 2021, the Consumer Claims Trustee objected to Claim 2916 (the "Fiftieth Omnibus Objection")[18] on the basis that Claim 2916 was a duplicate or amendment of Claim 2585 and identifying Claim 2585 as the surviving Claim.  Fiftieth Omnibus Objection, Ex. A at 6.

---

[16] *Twenty-Eighth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Admin Claims)*, ECF No 1760.

[17] *Objection of Lisa Janco*, ECF No. 2033.

[18] *Consumer Claim Trustee's Fiftieth Omnibus Objection to Proofs of Claim (Duplicate or Amended Unsecured Consumer Creditor Claims)*, ECF No 3737.

On December 6, 2021, the Claimant filed her response (the "Second Response")[19] to the

Fiftieth Omnibus Objection.

**Claim 2919**

On August 23, 2021, the Claimant filed Claim 2919 against Ditech, amending Claim 2585

and Claim 2916, on an "Administrative Proof of Claim" form in which she asserts an

administrative claim based upon (i) Personal injury/wrongful death, (ii) Taxes (State of California

Property Tax), and (iii) Other (Fraud, Embezzlement and Larceny), in the amount of $687,000

plus personal injury damages and compensatory damages. Claim 2919 at 1–2. Claimant alleges

that the grounds for the claim arise from: (i) violations of ADA federal laws, (ii) violations of the

California Unruh Act, (iii) violations of the "discrimination disability act," (iv) "personal injury

on a blind person," (v) breach of contract and breach of California's "unfair business practices

dealings act," (vi) larceny, (vii) embezzlement of the CA Property Tax Payment, (viii) violations

of the FCRA, (ix) violations of the Fair Trade Act, (x) violations of the Civil Rights Act, and

(xi) "actual fraud while acting in a [fiduciary] capacity." *Id.* at 2.

On April 15, 2022, the Plan Administrator and Consumer Claims Trustee jointly objected

to Claim No. 2919 (the "Eighty-First Omnibus Objection"[20] and together with the Twenty-Eighth

Omnibus Objection and Fiftieth Omnibus Objection, the "Objections") on the basis that it fails to

state claims for relief against Ditech, is not entitled to administrative expense priority, and was

filed after the General Bar Date.  Eighty-First Omnibus Objection, Ex. A at 1.

---

[19]    *Objection of Disallowance of Amended Proof of Claim #2585 Filed by Lisa Janco*, ECF No. 3800.

[20]    *Eighty-First Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims)*, ECF No. 3995.

On June 1, 2022, the Claimant filed her response to the Eighty-First Omnibus Objection (the "Third Response").[21]

On April 18, 2023, the Plan Administrator and Consumer Claims Trustee filed a joint reply to address all Claims and the First, Second, and Third Responses (the "Reply").[22]

On April 26, 2023, the Claimant filed another response with the Court (the "Fourth Response" [23] and together with the First, Second, and Third Response, the "Responses").

To summarize, the Plan Administrator and Consumer Claims Trustee seek to disallow and expunge the Claims on the grounds that they fail to state claims for relief against Ditech under applicable state and federal law. They also assert that the Claims are not entitled to administrative priority status and, as a consequence, are time-barred. The Court first considers whether the allegations asserted in support of the Claims state claims for relief against Ditech. Thereafter, the Court will consider whether the Claims are entitled to administrative priority status, and then it will determine whether they were timely filed.

### Applicable Legal Standards

Under section 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."

---

[21]    *Objection of Disallowance of Amended Proof of Claim #2919 filed by Lisa Janco*, ECF No. 4093. On November 18, 2022, the Claimant filed an *Objection to Erase Records from Servers, and the Right to be Heard at the Hearing*, ECF No. 4387, in opposition to the *Motion of the Wind Down Estates for Entry of Order in Aid of Execution of Third Amended Joint Chapter Plan of Ditech Holding Corporation and Its Affiliated Debtors (I) Authorizing the Wind Down Estates to (A) Abandon and Dispose of Obsolete Physical Records and (B) Not Take Further Action or Incur Further Liability to Maintain Access to Additional Obsolete Electronic Records, and (II) Granting Related Relief*, ECF No. 4350.

[22]    *Joint Reply of the Consumer Claims Trustee and Plan Administrator in Support of the Twenty-Eighth Omnibus Objection with Respect to the Administrative Expense of Lisa Janco (2585), the Fiftieth Omnibus Objection with Respect to the Unsecured Claim of Lisa Janco (2916) and the Eighty-First Omnibus Objection to the Administrative Expense Claim of Lisa Janco (2919)*, ECF No. 4705.

[23]    *Statement filed by Lisa Janco*, ECF No. 4720. The Fourth Response appears to focus on reasserting that Ditech has committed crimes in the State of California (e.g., embezzlement) as it relates to the CA Property Tax Payment.

11 U.S.C. § 502(a).  The filing of a proof of claim constitutes "prima facie evidence of the validity and amount of a claim."  Fed. R. Bankr. P. 3001(f).  Section 502(b) prescribes nine categories of claims that will be disallowed, including that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."  11 U.S.C. § 502(b)(1).  If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  *See, e.g.*, *Rozier v. Rescap Borrower Claims Tr. (In re Residential Cap., LLC)*, No. 15-3248, 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 09-50026, 2012 WL 1886755, at *3 (S.D.N.Y. May 12, 2012).

Under Rule 12(b)(6), a claim may be dismissed due to a "failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In applying Rule 12(b)(6) to the Claims, the Court assesses the sufficiency of the facts alleged in support of the Claims in light of the pleading requirements under Rule 8(a) of the Federal Rules of Civil Procedure.[24]  Rule 8(a)(2) states that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To meet that standard, the Claims "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (hereinafter "*Iqbal*") (citations omitted); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (hereinafter "*Twombly*").  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 570.  To satisfy Rule 12(b)(6), the "pleadings must create the possibility of a right to relief that is more than speculative."  *Spool v. World Child Int'l Adoption*

---

[24]    Rule 8 is incorporated herein pursuant to Bankruptcy Rule 7008.

*Agency*, 520 F.3d 178, 183 (2d Cir. 2008). In considering whether that standard is met for a particular claim, the court must assume the truth of all material facts alleged in support of the claim and draw all reasonable inferences in the claimant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, the court "need not accord 'legal conclusions, deductions or opinions that are couched as factual allegations . . . a presumption of truthfulness.'" *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 591 (S.D.N.Y. 2008) (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)). In short, "[i]n ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). Where a claimant is proceeding pro se, the Court will construe the claim liberally, although the claim must nonetheless be supported by specific and detailed factual allegations that provide a fair understanding for the basis of the claim and the legal grounds for recovery against a debtor. *Kimber v. GMAC Mortg., LLC (In re Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (citing *Iwachiw v. N.Y.C. Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005) (summary order)); *see also McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156–57 (2d Cir. 2017) (discussing the policy considerations undergirding liberal construction of pro se litigants' filings). However, a Court may not "invent factual allegations" that were not pleaded by the pro se litigant. *Mirarchi v. Nofer (In re Nofer)*, 514 B.R. 346, 353 (Bankr. E.D.N.Y. 2014) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).

## Analysis

### *Whether the Claims and Responses State Viable Claims for Recovery Against Ditech*

#### *Breach of Contract*

For the Claimant to state a claim for breach of contract under California law, she must allege facts demonstrating: (1) a contract, (2) her performance of the contract or excuse for nonperformance, (3) Ditech's breach of the contract, and (4) the resulting damage to her. *Richman v. Hartley*, 169 Cal. Rptr. 3d 475, 478 (Cal. Ct. App. 2014). Where, as here, the claim is purportedly based upon a breach of a written contract—the mortgage loan—the terms of the contract must be set out verbatim in the body of the complaint, or a copy of the written contract must be attached to the complaint and incorporated by reference. *See Daniels v. Select Portfolio Servicing, Inc*., 201 Cal. Rptr. 3d 390, 412–14 (Cal. Ct. App. 2016); *FPI Dev., Inc. v. Nakashima*, 282 Cal. Rptr. 508, 517 (Cal. Ct. App. 1991); *Otworth v. Southern Pac. Transp. Co.*, 212 Cal. Rptr. 743, 747 (Cal. Ct. App. 1985).

In support of Claim 2919, the Claimant alleges there was a "CA Breech [sic] of Contract Laws." Claim 2919 at 2. The Court understands that the Claimant maintains that Ditech breached her mortgage agreement. She did not annex a copy of the mortgage loan in support of the Claims and failed to allege facts in support of that allegation, nor did she identify the provision of the mortgage loan that Ditech purportedly breached. Moreover, she does not assert that she was performing under the contract. Claim 2916 at 60.

The Court finds that the Claimant has failed to state a claim against Ditech for breach of contract.

### *Fraud*

To state a claim for fraud under California law, the Claimant must allege facts demonstrating: (1) a misrepresentation of a material fact (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588, 596 (Cal. Ct. App. 2011) (citing *Robinson Helicopter Co., Inc. v. Dana Corp*, 102 P.3d 268, 274 (Ca. 2004)); *see also Serv. by Medallion, Inc. v. Clorox Co.*, 52 Cal. Rptr. 2d 650, 655 (Cal. Ct. App. 1996) (combining misrepresentation and scienter as a single element).

Federal Rule of Civil Procedure Rule 9(b)[25] mandates that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Pleading fraud with particularity includes alleging facts sufficient to support "the who, what, when, where, and how: the first paragraph of any newspaper story." *Silvester v. Selene Fin., LP*, No. 18-02425, 2021 WL 861080, at *2 (S.D.N.Y. Mar. 8, 2021) (quoting *Backus v. U3 Advisors, Inc.*, No. 16-8990, 2017 WL 3600430, at *9 (S.D.N.Y. Aug. 18, 2017)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Knowledge and intent do not need to be pleaded with particularity. *See Iqbal*, 556 U.S. at 686 ("Rule 9(b) requires particularity when pleading 'fraud or mistake,' while allowing [m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally." (alterations in original) (quoting Rule 9(b))). The Ninth Circuit has developed a two-pronged test to determine if knowledge or scienter is adequately pleaded, enquiring first whether the standalone allegations are sufficient to infer scienter, and if they are not, conducting a holistic review to determine whether the allegations "combine to create a strong inference of intentional conduct or deliberate recklessness." *Brown v. China Integrated Energy,*

---

[25]    Rule 9(b) is made applicable herein by Bankruptcy Rule 7009.

*Inc.*, 875 F. Supp. 2d 1096, 1105 (C.D. Cal. 2012) (quoting *New Mexico State Inv. Council v. Ernst & Young*, *LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011)).

In the Claims, the Claimant asserts that Ditech committed fraud by (i) withholding the CA Property Tax Payments, and (ii) keeping the CSE Insurance Proceeds.  Claim 2585 at 1; Claim 2916 at 3; Claim 2919 at 10.  The Claimant also asserts that Ditech defrauded her by providing the loan modification paperwork in "microfont," Claim 2919 at 5, that it "committed Mortgage Fraud all over the states and ran to the Bankruptcy Court of New York," *id.* at 59, and that it committed fraud by changing a credit into a debit, Claim 2916 at 5.  She summarily recites various elements of a claim for fraud, but she neglects to tie any of them to the facts of her case.  *See* Second Response at 27–28.  Essentially, the Claimant fails to allege specific facts to support any of the elements of a claim for fraud required under California state law.

Next, the Claimant alleges no facts to support her contention that Ditech owes her the CSE Insurance Proceeds.  Rather, she points to a December 6, 2017 communication to Ditech in which she accuses Ditech of withholding "800.00 or more on hold in an account from CSE Insurance." *See* Complaint at 73.  Moreover, the Claimant does not quantify the amount of insurance funds that the Claimant contends Ditech received from CSE Insurance Company or allege facts demonstrating when or why Ditech received the funds.

In support of her contention that Ditech was fraudulently withholding CA Property Tax Payments, the Claimant asserts that Ditech

> funneled a mortgage payment into [her escrow account] as so they can receive late penalties and this is as usual how their scheme worked make them late mark up their credit, Check their Equity and if it a lot than they can embezzle and defraud them to eventually take their home.

First Response at 1; *see also* Complaint at 1 ("In researching my home of 30 years [Ditech] found out I had 65% of my house paid off and a lot of Equity and said I was magically approved for this

18

modification I did not want or need."). Moreover, although the Claimant states repeatedly that Ditech withheld the CA Property Tax Payments, the payment history annexed to Claim 2916 shows that Ditech received and applied the funds to her account, including on July 8, 2017. Claim 2916 at 59.

In support of her fraud claim, the Claimant asserts that Ditech was under investigation by the Consumer Financial Protection Bureau (the "CFPB") and the Los Angeles County Consumer and Business Affairs unit for mortgage fraud. Claim 2585 at 1; Claim 2916 at 3; Claim 2919 at 10. While the documents show that the CFPB and Los Angeles County Consumer and Business Affairs unit opened complaints against Ditech, they also show that Ditech responded to those complaints. The Claimant alleges that the investigations are ongoing, but she provides no support for that assertion. Moreover, the Claimant annexed a copy of the complaint that she filed against Ditech with the CFPB to Claim 2916, which demonstrates that the complaint is closed. Claim 2916 at 15. She also attaches a copy of Ditech's responsive letter to Los Angeles County Consumer and Business Affairs, dated July 23, 2018. It is identical to the letter Ditech supplied to the CFPB. *Id.* at 148. The Claimant provides no evidence that the Los Angeles County Consumer and Business Affairs unit took any further action on her behalf.

The Claimant fails to plead both the elements of fraud under California law and the requisite particularity under Rule 9(b). Instead, she makes general conclusory accusations of fraudulent behavior by Ditech. She fails to plead any facts demonstrating that Ditech either misrepresented or concealed information about her mortgage. She also fails to allege facts demonstrating that she relied upon any misrepresentation by Ditech. Finally, and in any event, the Claimant fails to state that Ditech acted with knowledge and intent to defraud her.

The Court concludes that the Claimant has not stated a claim for fraud against Ditech under California law.

### Americans with Disabilities Act

As relevant, the ADA states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."   42 U.S.C. § 12182(a). Mortgage servicing and enforcement are considered "services" under section 12182(a), and title III of the ADA applies to the provision of those services.  *Webster Bank v. Oakley*, 265 Conn. 539, 572–73 (Conn. 2003).

Under the ADA, "discrimination includes . . . a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. . . ."  42 U.S.C. § 12182(b)(2)(A)(ii).  "[T]he statute contemplates three enquiries: whether the requested modification is 'reasonable', whether it is 'necessary' for the disabled individual, and whether it would 'fundamentally alter the nature of' the policy, practice, or procedure.  *PGA Tour, Inc. v Martin*, 532 U.S. 661, 683 n.38 (2001) (quoting 42 U.S.C. § 12182(b)(2)(A)(ii)).

The Claimant complains that Ditech violated the ADA by failing to provide her written communications in large print documents.  She asserts that Ditech sent her May 1, 2016 billing statement in regular font notwithstanding that is was "dealing with a partially sighted person or

legal blind." First Response at 8. However, the Claimant does not allege facts demonstrating that Ditech was aware of her disability prior to sending that billing statement.

The Claimant contends that by letter dated May 9, 2017, her attorney informed Ditech of her condition and requested that Ditech provide her with monthly statements printed in a larger font size. First Response at 9. However, the letter makes no such request. Claim 2585 at 62. Instead, the letter requests that her May 2016 Payment, which Ditech applied to her escrow account, be reapplied as a credit against the mortgage. *Id*.

On December 6, 2017, the Claimant submitted a written request to Ditech, in which she stated that she is legally blind and accused Ditech of refusing to put "any & all correspondence in large font." Complaint at 72. On December 14, 2017, the Claimant filed a complaint with the CFPB stating that Ditech has refused to provide her correspondence and communications in a larger font. Claim 2919 at 59. On January 30, 2018, Ditech responded to the Claimant's complaint with the CFPB. In the response, it acknowledged the Claimant's request that it increase the font size in its written communications with the Claimant and stated that it was consulting with its print vendor to determine how to accommodate the request. Claim 2916 at 64. While Ditech's correspondence was in an increased font size, billing statements provided by Ditech to the Claimant after January 2018 were still in a regular font size. The Claimant fails to allege how she was subsequently harmed by the failure to provide communications in a larger font size.

The ADA provides that the Attorney General can bring an action for a violation of the ADA seeking monetary relief, as well as injunctive relief and civil penalties for the victims of discrimination. 42 U.S.C. § 12188(b)(2). Private plaintiffs are not entitled to compensatory damages under the ADA. As such, they are unavailable to the Claimant through the bankruptcy claims resolution process. Private plaintiffs are limited to injunctive relief and attorney's fees.

42 U.S.C. § 12188(a); *A.R. v. Kogan*, 964 F. Supp. 269, 271 (N.D. Ill. 1997); *Munson v. Del Taco, Inc.*, 208 P.3d 623, 628 (Cal. 2009). Injunctive relief is not available through the claims resolution process. *See In re J.S. II, L.L.C.*, 427 B.R. 673, 675 (Bankr. N.D. Ill. 2010) (noting that injunctive relief should be pursued under Bankruptcy Rule 7001); *see also* 11 U.S.C. § 101(5) (defining "claim" as a right to payment). Furthermore, any claim for injunctive relief would be moot as Ditech no longer services the mortgage, and the Claimant no longer owns the home. Finally, the Claimant has not demonstrated in any of her Claims that she incurred attorney fees in connection with her ADA grievances against Ditech.

The Court concludes that the Claimant has not stated a claim for relief against Ditech under the ADA.

### California's Unruh Act

The Unruh Act provides:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, ***disability***, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b) (emphasis added). "A plaintiff can recover under the [Unruh Act] on two alternate theories: (1) a violation of the ADA (Cal. Civ. Code § 51, subd. (f)); or (2) denial of access to a business establishment based on intentional discrimination." *Martinez v. Cot'n Wash, Inc.*, 297 Cal. Rptr. 3d 712, 717 (Cal. Ct. App. 2022) (alteration in original) (quoting *Martinez v. San Diego County Credit Union*, 264 Cal. Rptr. 3d 600, 607 (Cal. Ct. App. 2020)).

The Court construes the Claims to assert that Ditech violated the Unruh Act by its failure to provide the Claimant with communications and monthly statements in a large-print font. Claim 2919 at 54. The Court has already determined that the Claimant failed to state a claim against

22

Ditech under the ADA.  Accordingly, to state a claim under the Unruh Act, the Claimant must allege facts demonstrating "intentional discrimination," which requires allegations supporting "willful, affirmative misconduct" with specific intent "to accomplish discrimination."  *Koebke v Bernardo Heights Country Club*, 115 P.3d 1212, 1228 (Cal. 2005); *see also Martinez*, 297 Cal. Rptr. 3d at 718.  A claimant "seeking to establish a case under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act."  *Harris v. Cap. Growth Invs. XIV*, 805 P.2d 873, 893 (Cal. 1991).

The Claimant has not sufficiently alleged that Ditech's conduct was intentional or willful. When it learned of the Claimant's disability in January 2018, Ditech reached out to its print vendor to inquire if the vendor could accommodate the Claimant's request for a larger font size.  Except for the billing statements, Ditech sent subsequent communications to the Claimant in large print as requested.  Claim 2916 at 64.  The Claimant has not alleged facts demonstrating that prior to January 2018, Ditech was aware of her disability and intentionally ignored her requests.

The Court finds that the Claimant has not alleged facts that support a claim for relief under California's Unruh Act.

### Real Estate Settlement Procedures Act

The Claimant asserts that Ditech "[broke] Impound Laws and the RESPA Laws" when Ditech "funneled [her] Mortgage payments into [her] Escrow account."  Complaint at 2.  However, those allegations fail to state a claim for relief against Ditech under RESPA.  First, the Claimant does not identify the subsection of RESPA she believes Ditech violated.  Further, the Claimant's argument is belied by the fact that, as the Claimant acknowledges, the remittance coupon that she submitted on May 9, 2016, designated $1,502 of the payment as additional escrow funds. Complaint at 100.

On February 1, 2013, Ditech began servicing the Claimant's mortgage. Claim 2919 at 172. The record is clear that, in maintaining Claimant's escrow account, Ditech adhered to applicable RESPA rules and regulations. It is undisputed that Ditech paid interest on the Claimant's escrow account as required by RESPA, as follows: $0.66 in 2013, $19.41 in 2014, $14.05 in 2015, $48.49 in 2016, and $57.03 in 2017. *Id.* at 173. Further, Ditech conducted an escrow analysis each year of the Claimant's escrow account. 12 U.S.C. § 2609(c); Reg. X § 1024.17(g) to (i).

On July 21, 2016, Ditech conducted an annual escrow analysis pursuant to 12 CFR § 1024.17(c)(2), determined there was a surplus in the Claimant's escrow account, and refunded $1,562.46 to the Claimant. Claim 2919 at 64, 118. The record does not support Claimant's assertion that Ditech impermissibly withheld the CA Property Tax Payment. The payment history shows that Ditech made property tax disbursements on November 28, 2016, and March 23, 2017, in the amounts of $1,941.66 and $1,941.65, respectively, which reduced Claimant's escrow balance to a deficit of ($751.57). Claim 2916 at 59.

RESPA does not require an annual escrow statement be mailed to the borrower if the borrower is more than 30 days overdue. Reg. X § 1024.17(i)(2). The next scheduled escrow analysis was scheduled to be run in July 2017, but due to the delinquent status, an analysis was not mailed to the Claimant. Claim 2919 at 164. On July 8, 2017, the State of California made the CA Property Tax Payment in the amount of $3,883.31 to Ditech. That day, Ditech applied the payment to Claimant's escrow account, bringing the balance to a surplus of $3,131.74. Claim 2916 at 51–58.

On March 7, 2018, Ditech provided the Claimant with an Annual Escrow Account Disclosure Statement as required by RESPA. Claim 2919 at 151. The escrow statements showed an escrow surplus of $3,671.24. *Id.* Regulation X permits a servicer to change one escrow account

computation year to another year if the servicer issues a "short year" annual escrow account statement. Reg. X § 1024.17(i)(4). The effect of a short year statement is to end the escrow account computation year for the escrow account and establish the beginning date of the new escrow account computation year. *Id.* Ditech elected to do so, and on July 21, 2018, it provided the Claimant with an Annual Escrow Disclosure Statement. Claim 2919 at 136.

On December 17, 2018, Ditech conducted a review of the Claimant's escrow account and sent her the annual escrow statement, even though the account was delinquent. *Id.* at 218. At the time of the analysis, Ditech determined there was an escrow deficiency of ($3,284.23). *Id.*

On July 16, 2019, the Claimant paid off her account. Claim 2916 at 60. On August 13, 2019, twenty business days after the Claimant's account was paid in full, Ditech sent a Final Escrow Account Disclosure Statement to the Claimant and refunded the balance as required by section 2506(g) of RESPA. Claim 2919 at 146.

In sum, the Claimant has not alleged facts demonstrating that Ditech violated RESPA in the servicing of her mortgage. Moreover, in any event, the Court concludes that the Claimant has failed to state a claim for relief under RESPA.

### *California Civil Code § 2954.8(a)*

The Claimant asserts that "Di-Tech is still in possession of the [CSE Insurance Proceeds] which also should have interest applied for as long as they have kept it, fee's that Di-Tech LLC fraudulently charged to me [sic]." Third Response at 4–5. As support for that contention, the Claimant quotes the text of section 2954 of the California Civil Code. *Id.* at 8. As relevant, that section requires a lender "that receives money in advance for payment of taxes and assessments on the property, for insurance, or for other purposes relating to the property" to pay 2% interest per annum on the amount so held. California Civil Code § 2954.8(a). Section 2954.8(a) does not

apply to insurance proceeds—funds received after the fact, for losses—"because they are not received . . . in advance for specified purposes." *Gray v. Quicken Loans, Inc.*, 275 Cal. Rptr. 3d 787, 789 (Cal. Ct. App. 2021) (quoting *Lippitt v. Nationstar Mortg., LLC*, No. 19-1115, 2020 WL 3891676, at *7 (C.D. Cal. Apr. 16, 2020) (omission in original)).

The Claimant does not specify the amount of money that Ditech is holding.  In a December 6, 2017 communication to Ditech, she states Ditech is withholding "800.00 or more on hold in an account from CSE Insurance."  Complaint at 73.  Claimant fails to plead sufficient facts to support her claim that Ditech erroneously withheld insurance proceeds, and the statutory law does not support her contention that Ditech was obliged to pay interest on any such monies in violation of California Civil Code.

### Fair Credit Reporting Act

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *see* 15 U.S.C. § 1681.  Section 1681s-2(a) imposes a duty on "furnishers of information to provide accurate information." 15 U.S.C. § 1681s-2(a).  In part it bars "a person from furnish[ing] any information relating to a customer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." *Id.* § 1681s-2(a)(1)(A).  This section does not create a private right of action. *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012); *Howard v. Mun. Credit Union*, No. 05-7488, 2008 WL 782760, at *7 (S.D.N.Y. Jan. 24, 2008) (A furnisher's duties under Section 1681s-2(a) "are only

enforceable by a government agency or official; no private right of action is available under this provision.").

A furnisher's failure to conduct a reasonable investigation in response to a dispute communicated to it by a consumer reporting agency ("CRA") is actionable under FCRA § 1681s-2(b).  By itself, a dispute sent directly to the furnisher does not trigger any duties under section 1681s-2(b).  That section is implicated only if the consumer submits his or her dispute to a CRA and the CRA then communicates that dispute to the furnisher. *Sprague v. Salisbury Bank & Tr. Co.*, 969 F.3d 95, 99 (2d Cir. 2020) ("Appellants do not even allege that they notified a CRA of the discrepancy.  The Amended Complaint alleges only that, after receiving the Report, Sprague directly notified Salisbury of the Report's inaccuracy. This alone is insufficient to state a claim under Section 1681s-2(b)." (internal citation omitted)); *see also Elmore v. N. Fork Bancorporation, Inc.*, 325 F. Supp. 2d 336, 340 (S.D.N.Y. 2004).

The Claimant alleges that Ditech violated the FCRA but does not provide any specifics as to when the alleged violation occurred, what information was purportedly misreported, and which CRA produced this erroneous report. *See* Claim 2916 at 7; Claim 2919 at 2, 45, 59.  In the Third Response, the Claimant provides a partial screenshot of her credit report, but this report does not identify the source of the credit report or the date of the credit report.  Third Response at 37–38. Central to the Claims is the Claimant's assertion that the May 9 Payment was misapplied to the escrow account.  On February 24, 2017, Ditech sent the Claimant a letter stating that it could not reallocate the May 9 Payment because it was effectively returned when Ditech sent to the Claimant escrow surplus funds in the amount of $1,562.46 in July 2016.  Complaint at 99.  Ditech reviewed the matter and determined that the information reported to the credit reporting agencies was true

and correct and that $1,474.07 was due as of February 1, 2017, the outstanding late fee balance was $50.85, and the unapplied funds balance was $278.55. *Id.* at 99–101.

By letter dated May 9, 2017, Claimant's counsel advised Ditech that the Claimant inadvertently "transferred her entire mortgage payment of [sic] into her impound account." Claim 2585 at 62. The letter does not specify which payment was mistakenly allocated. *Id.* Assuming the payment at issue is the May 9 Payment, the letter fails to acknowledge that Ditech had refunded the escrow shortage on July 21, 2016. Reply ¶ 84. Instead, Claimant asks that the account be reconciled, late fees removed, and that Ditech "agree to communicate to the major credit bureaus that the reports of payment delinquency were the result of a mistake that does not constitute an intentional failure to make timely mortgage payments." Claim 2585 at 62. Ditech asserts that, in essence, the Claimant was asking it to rectify her own mistake by covering for her with the credit bureaus, but that the mistake was not Ditech's to correct. Reply ¶ 84.

Claimant also provides a document stating that Ditech removed missed payments on her Equifax credit report, but the letter is not dated, and the report is not included. Third Response at 22. In handwriting, Claimant appears to allege that Ditech "left deragatory [sic] remarks trying to delete evidence of missed payments. The missed payments were fraud to do a fraudulent filing of foreclosure." *Id.* Claimant provides no information to support this contention.

In construing the Claims in a light most favorable to the Claimant, at best, these allegations assert a violation of section 1681s-2(a), for which there is no private right of action. Claimant does not allege she ever submitted a dispute to a CRA or that Ditech failed to conduct a reasonable investigation in response to a dispute communicated to it by a CRA. Accordingly, regardless of what the Claimant communicated directly to Ditech and how Ditech responded, Claimant has not stated a claim for relief under section 1681s-2(b).

### *California Unfair Competition Law*

The Claimant alleges that Ditech engaged in unfair business practices. Claim 2919 at 2. California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practices." Cal. Bus. & Prof. § 17200. In consumer cases arising under the UCL, a business practice is "unfair" if (1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not reasonably have been avoided by consumers themselves. *Camacho v. Auto. Club of S. California*, 48 Cal. Rptr. 3d 770, 777 (Cal. Ct. App. 2006).

The Claimant has failed to state any basis on which Ditech operated unfairly or any allegation of any substantial injury because of such unfair practice. As outlined above, Ditech appropriately applied the Claimant's May 9 Payment to escrow as instructed on the remittance coupon and applied the CA Property Tax Payment to her escrow account as required by RESPA.

The Claimant has failed to state a claim for relief under the UCL.

### *Claimant's Remaining Causes of Actions*

In Claim 2919, the Claimant also listed several causes of action, including personal injury on a blind person, larceny, embezzlement of California Property Tax Program for the Blind, Fair Trade Act, Federal Disability Discrimination Act, California's Rehabilitation Act of 1966, violation of California's Real Estate Act. Claim 2919 at 3. The Claimant makes broad conclusory allegations, but the allegations contained within her narratives do not state a plausible claim against Ditech. *See, e.g.*, Second Response at 8–15; Claim 2585 at 1; First Response at 15–16. Additionally, many of the allegations made by Claimant appear to be criminal in nature, for which there is no right to recovery. *See* Third Response at 75–83, 88–91, 94–134, 153–62, 165–73, 203–

05, 215–17, 219–26.  The Claimant lists the elements as the "Crime of Embezzlement."  *Id.* at 69.

She also provides the criminal penalties available.  *Id*. at 44.

Similarly, the documents attached to her Claims contain no plausible facts to support her

allegations.  Most of the documents include complaints she filed with other governmental agencies,

including a police report to the Los Angeles County Sheriff's Department.  *Id.* at 16–18, 21–34.

However, none of these allegations states a legal claim against Ditech for which she can or should

be compensated.  Nor do the documents support any of the allegations of wrongdoing asserted in

her Responses.

*          *          *          *

Based on the foregoing and construing the Claimant's submissions in the light most

favorable to her and drawing all inferences in her favor, the Court determines that the Claimant

has failed to state any claims for relief against Ditech.  For that reason, the Court disallows and

expunges the Claims.

### *Whether the Claims Are Entitled to Administrative Priority Under the Bankruptcy Code*

On November 4, 2019, the Claimant filed Claim 2585 as an administrative priority claim,

although she did not assert any basis for granting it such status.  On April 19, 2021, the Claimant

filed Claim 2916, as an amendment to Claim 2585.  She did not file the claim as an administrative

priority claim.  On August 23, 2021, the Claimant filed Claim 2919, amending both Claim 2585

and Claim 2916.  The claim form that she submitted in support of Claim 2919 is titled

"Administrative Proof of Claim" and includes boxes designating the following categories of claims

giving rise to administrative expense priority: (i) Goods sold; (ii) Services performed; (iii) Money

loaned; (iv) Personal injury/wrongful death; (v) Taxes and (vi) Other.  The Claimant checked the

boxes for Personal injury/wrongful death, Taxes (with a handwritten explanation that the taxes

30

were for the State of California Property Tax) and Other (with a handwritten explanation that she was asserting an administrative claim for "Fraud", "Embezzlement", and "Larceny").   In the Reply, the Plan Administrator and Consumer Claims Trustee specify that they are objecting to the Claims on the basis that the Claimant fails to state claims for relief against Ditech and that the Claims are not entitled to administrative expense priority status.

The Claimant bears the burden of establishing that the Claims are entitled to administrative priority status under the Bankruptcy Code.  *See, e.g.*, *In re Bethlehem Steel Corp.*, 479 F.3d 167, 172 (2d Cir. 2007) ("The burden of proving entitlement to priority payment . . . rests with the party requesting it"); *In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991) ("The burden of establishing entitlement to priority rests with the claimant and 'should only be granted under extraordinary circumstances.'" (quoting *In re Amfesco Indus., Inc.*, 81 B.R 777, 785 (Bankr. E.D.N.Y. 1988)).  Section 503 of the Bankruptcy Code establishes an administrative expense priority for certain enumerated categories of estate expenses.   Specifically, section 503(b)(1)(A) of the Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed, administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate. . . ." 11 U.S.C. § 503(b)(1)(A).  Generally, courts determine that claims qualify as administrative priority claims if the underlying right to payment arose from a post-petition transaction with the debtor's estate and that the conduct giving rise to the transaction benefitted the estate.   *See In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991) ("The burden of establishing entitlement to priority rests with the claimant and should only be granted under extraordinary circumstances, to wit, when the parties seeking priority have sustained their burden of demonstrating that their services are actual and necessary to preserve the estate.").

In the Claims, the Claimant asserts that Ditech misapplied her May 9 Payment, but this action occurred in May 2016, well before the Petition Date.  The Claimant also asserts that Ditech did not pay her the CA Property Tax Payment, but that payment was received and applied to the Claimant's account in July 2017, before the Petition Date.  The Claimant does not demonstrate any basis on which to accord administrative priority status to her pre-petition damage claims against Ditech.

Ditech construes Claim 2916 as asserting an administrative expense claim under section 503(b)(9) of the Bankruptcy Code.  Reply ¶ 97.  This section states that "the value of any goods received by the debtor within twenty days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business" shall be allowed as administrative expenses.  11 U.S.C. § 503(b)(9).  The Claimant does not allege any such facts to support a contention that she holds an administrative expense claim pursuant to section 503(b)(9) of the Bankruptcy Code.  The Claims relate to mortgage servicing, not to the sale of goods to Ditech within twenty days of the Petition Date under the ordinary course of its business.

Based on the foregoing, the Court finds that the Claims are not entitled to administrative priority status under the Bankruptcy Code.

### *Whether the Claims Are Timely Filed.*

As noted, the Court fixed June 3, 2019, as the General Bar Date in the Chapter 11 Cases and November 11, 2019, as the Administrative Expense Bar Date.  The Plan Administrator and Consumer Claims Trustee contend that another basis for disallowing and expunging the Claims is that the Claimant did not timely file them.  They reason that, at best, the Claimant timely filed Claim 2585 as an administrative expense claim and that Claims 2916 and 2919—each filed well

after both bar dates—relate back to the timely filed Claim 2585. The Plan Administrator and Consumer Claims Trustee argue that, given the Court's determination that the Claims are not entitled to administrative priority status, Claim 2585 (and any amendments thereto) are not timely filed Administrative Proofs of Claim; rather, they are late-filed general unsecured claims. The Court agrees.

The bar date is "an integral step in the reorganization process." *In re Best Prods. Co., Inc.*, 140 B.R. 353, 357 (Bankr. S.D.N.Y. 1992). The bar date allows "the parties in interest to ascertain with reasonable promptness the identity of those making claims against the estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization." *Id.* "The Second Circuit strictly observes bar dates . . . [and] the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule." *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 119 (Bankr. S.D.N.Y. 2010).

The Claimant did not timely file the Claims. Accordingly, the Court disallows and expunges the Claims for the additional reason that they are time-barred.

## Conclusion

Based on the foregoing, the Court sustains the Objections and disallows and expunges the Claims.

IT IS SO ORDERED.

Dated: New York, New York
       May 4, 2023

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge