| | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | | NOT FOR PUBLICATION |

------------------------------------------------------ x
In re:                                                                           :
                                                                                       :     Case No. 19-10412 (JLG)
Ditech Holding Corporation, *et al.*,                     :     Chapter 11
                                                                                       :
                                                                                       :     (Jointly Administered)
                                                      Debtors.[1]      :
------------------------------------------------------ x

# MEMORANDUM DECISION AND ORDER GRANTING THE PLAN ADMINISTRATOR'S MOTION AND AUTHORIZING THE WIND DOWN ESTATES TO (I) ABANDON AND DISPOSE OF OBSOLETE PHYSICAL RECORDS AND (II) NOT TAKE FURTHER ACTION ON INCUR FURTHER LIABILITY TO MAINTAIN ACCESS TO ADDITIONAL OBSOLETE ELECTRONIC RECORDS

<u>**A P P E A R A N C E S :**</u>

WEIL, GOTSHAL & MANGES LLP
*Attorneys for the Plan Administrator*
*on Behalf of the Wind Down Estates*
767 Fifth Avenue
New York, New York 10153
<u>By:</u>    Ray C. Schrock, P.C.
          Richard W. Slack
          Natasha S. Hwangpo

Ms. Launa Lishamer
*Appearing Pro Se*
223 174th Ave. E.
Redington Shores, Florida 33708

---

[1] The Debtors' *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1326, was confirmed, which created the Wind Down Estates. The Wind Down Estates, along with the last four digits of each of their federal tax identification numbers, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction[2]

The matter before the Court is the Plan Administrator's motion, on behalf of the Wind Down Estates, and in aid of execution of the Debtors' Third Amended Plan, pursuant to sections 105(a), 554(a) and 1142(b) of the Bankruptcy Code, Rule 6007 of the Bankruptcy Rules, and Rule 2015-1 of the Local Rules for the Bankruptcy Court for the Southern District of New York (the "Local Rules"), for the entry of an order authorizing the Wind Down Estates to (i) abandon and dispose of the Obsolete Physical Records; and (ii) not take further action or incur further liability to maintain access to the Additional Obsolete Electronic Records (the "Motion").[3]

Three parties in interest objected to the Motion: Launa L. Lishamer (the "Lishamer Objection"),[4] Finance of America Reverse LLC ("FAR") (the "Finance of America Objection"),[5] and Lisa Janco (the "Janco Objection").[6] The Plan Administrator filed a reply to the objections

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Third Amended Plan. References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412.

[3]  *Motion of the Wind Down Estates for Entry of Order in Aid of Execution of Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors (I) Authorizing the Wind Down Estates to (A) Abandon and Dispose of Obsolete Physical Records and (B) Not Take Further Action or Incur Further Liability to Maintain Access to Additional Obsolete Electric Records, and (II) Granting Related Relief*, ECF No. 4350.

[4]  *Objection to Debtors Motion Dockets #4350 and #4352 Authorizing the Wind Down Estates Proposed Motion: (A) Abandon and Dispose of Obsolete Physical Records and (B) Not Take Further Action or Incur Further Liability to Maintain Access to Additional Obsolete Electric Records, and (II) Granting Related Relief*, ECF No. 4370.

[5]  *Limited Objection of Finance of America Reverse LLC to Motion of the Wind Down Estates for Entry of Order in Aid of Execution of Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors (I) Authorizing the Wind Down Estates to (A) Abandon and Dispose of Obsolete Physical Records and (B) Not Take Further Action or Incur Further Liability to Maintain Access to Additional Obsolete Electric Records, and (II) Granting Related Relief*, ECF No. 4369.

[6]  *Objection to Erase Records from Servers, and the Right to be Heard at the Hearing*, ECF No. 4387.

(the "Reply"),[7] which is supported by the declaration of Kathryn Schultea (the "Schultea Declaration").

FAR withdrew the Finance of America Objection.[8] By order dated May 4, 2023, the Court disallowed and expunged Ms. Janco's claim.[9] That order is final. Accordingly, the Court overrules the Janco Objection as moot. The Court heard arguments on the Motion from the Wind Down Estates, by their counsel, and Ms. Lishamer, acting pro se. The Court finds that the Plan Administrator has demonstrated that in furtherance of his mandate under the Third Amended Plan, and in the exercise of his business judgment, he has rightly concluded that it is in the best interests of the Wind Down Estates to abandon the Obsolete Physical Records and Additional Obsolete Electronic Records because those records are burdensome to the estate and of inconsequential value to the estate. Moreover, independent of that showing, the Plan Administrator has demonstrated that documents that may have some plausible nexus to the Lishamer Claim either are being retained by the Wind Down Estates or are publicly available to Ms. Lishamer. The Court overrules the Lishamer Objection and grants the Motion.

---

[7] *The Wind Down Estates' Omnibus Reply in Further Support of Motion of the Wind Down Estates for Entry of Order in Aid of Execution of Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors (I) Authorizing the Wind Down Estates to (A) Abandon and Dispose of Obsolete Physical Records and (B) Not Take Further Action or Incur Further Liability to Maintain Access to Additional Obsolete Electric Records, and (II) Granting Related Relief*, ECF No. 4697.

[8] *Notice of Withdrawal of Limited Objection of Finance of America Reverse LLC to Motion of the Wind Down Estates for Entry of Order in Aid of Execution of Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors (I) Authorizing the Wind Down Estates to (A) Abandon and Dispose of Obsolete Physical Records and (B) Not Take Further Action or Incur Further Liability to Maintain Access to Additional Obsolete Electric Records, and (II) Granting Related Relief*, ECF No. 4670.

[9] *Memorandum Decision and Order Sustaining the Plan Administrator's Twenty-Eighth Omnibus Objection, the Consumer Claims Trustee's Fiftieth Omnibus Objection and the Plan Administrator's and Consumer Claims Trustee's Eighty-First Omnibus Objection to the Claims of Lisa Janco*, ECF No. 4726.

**Jurisdiction**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

Pursuant to the Confirmation Order, the Court retained jurisdiction to, among other things, "interpret, implement, and enforce the terms and provisions of [the Confirmation Order], all amendments thereto, and any waivers and consents thereunder." Confirmation Order ¶ 66.[10] Moreover, pursuant to the Plan, as of the Effective Date, the Court shall retain jurisdiction "over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes . . . to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan." Third Amended Plan, art. XI, § 11.1(k). The relief that the Plan Administrator is seeking in this Motion concerns the implementation and furtherance of the Plan and Confirmation Order.

**Background**

**The Chapter 11 Cases**

On February 11, 2019 (the "Petition Date"), Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates (the "Debtors"), including Ditech Financial, LLC ("Ditech Financial"), filed petitions for relief under Chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the

---

[10] *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors*, ECF No. 1404.

Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, at 5:00 p.m. (prevailing Eastern Time) as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[11] Thereafter, the Court extended the General Bar Date for consumer borrowers, like Ms. Lishamer, twice, ultimately setting the date as June 3, 2019, at 5:00 p.m. (prevailing Eastern Time).[12]

On September 26, 2019, the Court entered the Confirmation Order approving the Debtors' Third Amended Plan,[13] and on September 30, 2019, that plan became effective.[14] In broad strokes, and without limitation, pursuant to the Third Amended Plan, the Debtors sold their forward and reverse mortgage loan business to the Forward Stalking Horse Purchaser and Reverse Stalking Horse Purchaser and their respective mortgage servicers, and the Debtors paid their creditors with the sale proceeds. The Confirmation Order created the Wind Down Estates. The Plan Administrator is a fiduciary appointed under the Third Amended Plan who is charged with the duty of winding down, dissolving, and liquidating the Wind Down Estates. *See* Third Amended Plan, art. I, §§ 1.130, 1.184, 1.186. The Consumer Claims Trustee is a fiduciary appointed under the Third Amended Plan who is responsible for the reconciliation and resolution of Consumer

---

[11] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[12] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[13] *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1326.

[14] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

Creditor Claims and distribution of funds to holders of Allowed Consumer Creditor Claims in accordance with the Third Amended Plan. *See id.* art. I, § 1.41.

**The Wind Down Estates**

The Wind Down Estates no longer have any operating businesses, and in the more than three years since the Effective Date of the Third Amended Plan, the Plan Administrator has made extensive progress in winding down the affairs of the Debtors. Among other things, the Plan Administrator has:

> Transferred mortgage loans and related loan servicing files in their entirety to the Forward Buyer, New Residential Investment Corp. ("NewRez") and its designated servicers, pursuant to the Sale Transaction authorized by the Third Amended Plan.
>
> Reduced Ditech's workforce from more than 2,900 employees to zero full-time employees, and a few contractors on a part-time basis, all of whom are employed solely for wind down purposes.

*See* Schultea Declaration ¶ 4. On April 4, 2022, in furtherance of the wind-down of the Debtors' businesses, the Plan Administrator, on behalf of the Wind Down Estate, sought Court authorization to permit the Wind Down Estates not to incur further expense regarding data stored on servers sold (the "Sold Servers") to the Forward Buyer (the "Electronic Data Motion").[15] In furtherance of that motion, the Wind Down Estates, working with the Consumer Claims Trustee, among others, identified, downloaded, and retained information deemed related to (i) any unresolved claims or litigation involving the Debtors; (ii) the administration of the Wind Down Estates and unclaimed borrower funds; (iii) the Debtors' obligations under Bond and Surety, as defined in the Confirmation Order; and (iv) any required tax and financial records. (collectively, the "Retained

---

[15] *Motion of the Wind Down Estates for Entry of Order in Aid of Execution of Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors (I) Authorizing the Wind Down Estates Not to Take Any Further Action or Incur Further Liability Regarding the Electronic Data Stored on the Sold Servers upon the Expiration of the Wind Down Estates' Access to the Sold Servers, and (II) Granting Related Relief*, ECF No. 3969.

Records"). Electronic Data Motion ¶¶ 11, 18. On June 23, 2022, the Court entered an order granting the Electronic Data Motion.[16] That order authorized the Plan Administrator to abandon electronic records stored on the Sold Servers upon the expiration of the Wind Down Estates' access to those servers; it allowed the Plan Administrator to take no action to replace the Sold Servers.

Still, the Wind Down Estates are incurring substantial ongoing document/data storage charges, as follows:

> The Wind Down Estates store approximately 135,000 boxes of documents and tapes, which contain approximately 237 million files (the "Obsolete Physical Records") that were accumulated by the Debtors in conducting the forward and reverse businesses, which were subsequently sold pursuant to the Third Amended Plan. The Obsolete Physical Records are stored and maintained by multiple vendors at an aggregate cost of over $47,000 a month, or approximately $570,000 a year.
>
> The Wind Down Estates have additional electronic data stored on third-party servers or accessed through third-party software (the "Additional Obsolete Electronic Records") which are no longer useful to the Wind Down Estates. The Additional Obsolete Electronic Records consist of emails and attachments thereto related to matters pertaining to the Debtors' previous forward and reverse businesses. The maintenance of access to the Additional Obsolete Electronic Records costs the Wind Down Estates approximately $250,000 per year without any corresponding benefit.

Schultea Declaration ¶¶ 5-6.

**The Motion**

The Plan Administrator seeks an order pursuant to sections 105(a), 554(a), 1142(b) of the Bankruptcy Code, Rule 6007 of the Bankruptcy Rules and Local Rule 2015-1 authorizing the Wind Down Estates (i) to abandon and dispose of the Obsolete Physical Records; and (ii) not take further action and incur further costs to maintain the Additional Obsolete Electronic Records. Motion ¶ 9;

---

[16] *Order in Aid of Execution of Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors (I) Authorizing the Wind Down Estates Not to Take Any Further Action or Incur Further Liability Regarding the Electronic Data Stored on the Sold Servers upon the Expiration of the Wind Down Estates' Access to the Sold Servers, and (II) Granting Related Relief*, ECF No. 4131.

7

*see also id.*, Ex. A (Proposed Order). The Plan Administrator asserts that the relief in this Motion does not impact the Retained Records and that the Wind Down Estates will continue to take commercially reasonable steps to assure the Retained Records are preserved. Motion ¶ 22.

**The Objection**

Ms. Lishamer filed an unsecured claim against Ditech Financial in the sum of $500,000. *See* Claim No. 23944 (the "Lishamer Claim"). In general, and without limitation or prejudice, in her claim, Ms. Lishamer seeks damages occasioned by Ditech Financial's alleged wrongdoing in servicing her loan, particularly in the wake of Hurricane Irma. As filed, the Lishamer Claim asserts damages, including punitive damages in the absence of compensatory damages, together with attorney fees and costs of litigation, and pre-judgment and post-judgment interest, for: (i) misrepresentation involving transaction causation and loss causation; (ii) lost earnings due to time and effort; (iii) recovery of interest and finance charges; (iv) not abiding by Fannie Mae guidelines for credit reporting and delay in returned insurance checks; (v) not providing modification options or forbearance information; (vi) violations of RESPA Regulations X and Z, FDIC regulations, Florida Statute 559.72, Fair Credit Reporting Act; and (vii) all other relief as may be just and proper. Lishamer Claim at 4.

On October 23, 2020, the Consumer Claims Trustee objected to the Lishamer Claim on the basis that, without limitation, Ms. Lishamer failed to allege specific facts related to her legal claims and failed to identify the legal basis for her claim.[17] In her response to the objection, and without limitation, Ms. Lishamer asserts damages based upon Ditech's alleged: (i) breach of the Deed of Trust; (ii) violation of section 19 of the FDIC Act; (iii) dishonesty or breach of trust; (iv) violation

---

[17] *See Consumer Claims Trustee's Twenty-Ninth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims)*, ECF No. 2837 at 18.

8

of Florida's Deceptive and Unfair Trade Practices Act; (v) violation of RESPA, 12 U.S.C. § 2605 and 12 C.F.R §§ 1024.35, 1024.36, 1024.41(c)(1); (vi) violation of Fair Credit Reporting Act; (vii) misappropriation of funds 18 U.S.C § 1344; (viii) failure to promptly credit account 12 C.F.R. § 1026.36; (ix) failure to provide accurate accounting 12 C.F.R. § 1026.41; and (x) violation of Section 501.202 of the Florida Consumer Protection Statute.[18] The Consumer Claims Trustee has not scheduled a hearing on the objection to the Lishamer Claim.

Ms. Lishamer objects to the Motion essentially on the grounds that as the hearing on her claim has not been scheduled, and the Motion is vague with regard to the documents and electronic data that the Wind Down Estates will preserve, she may be prejudiced in the defense of her claim, if documents and electronic data that she may require to defend the merits of her claim are not preserved. Lishamer Objection at 2. In support of the objection, she states as follows:

> I am asserting my right under due process and statute 9014 to oppose and reject said motion as my case is still pending, a hearing date has not been set to determine the class status of my claim. Attached included in this objection is Exhibit A, dated August 23, 2021 which indicates New Residential Mortgage is the current owner of my note.
>
> Judge Garrity agreed to a hearing date to be set in the future. My Proof of Claim is now classified as a Class 6 Creditor. I believe that my claim may qualify to be classified as a 363(0) (see Exhibit A) and perhaps a Summary Judgement under Florida Deceptive and Unfair Trade Practices, Chapter 501-part II, Florida Statutes Section 501.1377 whereas I believe that my Proof of Claim provides information that proves that Ditech Financial was fraudulent as well as other violation stated in Docket #2982.
>
> The Debtors interpretation of Obsolete records and electronic records is vague. My objection is related to any and all records, filings, hearings, transcripts related to my case that would be detrimental to my case as the Debtors motions are requesting relief of liability.

---

[18] *Statement and Motion and Order Pursuant to Bankruptcy Rule 9014 to Protect this Claim from Being Discarded/Deleted*, ECF No. 2982, at 5, 9-11.

> Title 18 U.S. Code Section 2071 may be applicable and be in conflict with the Debtors Motion as proposed in Dockets #4350 and #4352.

Objection at 2.

**The Reply**

In the Reply, the Plan Administrator addresses the Lishamer Objection stating that "the Wind Down Estates, at the request and direction of the Consumer Claims Trustee, have retained the entire servicing file for the underlying loans and mortgages of [] Ms. Lishamer." Schultea Declaration ¶ 8. Moreover, the Plan Administrator contends that he is not aware of any document related to the Lishamer Claim that the Wind Down Estates have not retained. *Id.* The Plan Administrator argues that the relief requested in the Motion should not prejudice the rights of Ms. Lishamer and further notes that the Consumer Claims Trustee has not objected to the Motion. Reply ¶ 5.

**The Hearing**

On May 11, 2023, the Court conducted a hearing on the Motion. After hearing from the parties, and in an effort to determine whether the parties could resolve the Lishamer Objection, the Court set up a process whereby Ms. Lishamer could set forth requests for documents to be preserved by May 15, 2023, at 12:00 p.m. (prevailing Eastern Time), and the Wind Down Estates, in coordination with the Consumer Claims Trustee, would have the opportunity to respond to those requests by May 17, 2023, at 12:00 p.m. (prevailing Eastern Time). The Court adjourned the hearing to May 18, 2023.

The Plan Administrator did not receive any timely requests for preservation by Ms. Lishamer. On May 15, 2023, at 4:00 p.m., the Plan Administrator wrote to inform the Court that Ms. Lishamer had not provided any requests for preservation. After that communication, Ms. Lishamer provided a number of requests for preservation of documents to the Plan Administrator.

10

She sent two additional emails adding more requests into the evening on May 15, 2023. A copy of these emails is attached as Exhibit A to the letter to the Court of Richard W. Slack, as counsel to the Plan Administrator, dated May 17, 2023 (the "Slack Letter").[19] In all, Ms. Lishamer made seventeen requests for preservation.

Upon receipt of these requests, the Plan Administrator coordinated with the Consumer Claims Trustee and her counsel and then timely responded to Ms. Lishamer's requests for preservation. The response is set forth in Exhibit B to the Slack Letter. The Plan Administrator confirmed that the documents in twelve of the seventeen requests (items 2, 4, 7–11, 13–17) were either being preserved by the Wind Down Estates—as Retained Records—or were publicly available documents. With respect to four of the requests (items 1, 3, 5, and 12), the Plan Administrator advised that he was not able to understand the requests and therefore was not able to respond as to whether some or all of the documents sought were being preserved—although, in the Plan Administrator's view, none of the requests are relevant to the Lishamer Claim. With respect to one request (item 6), which appears to request that the Wind Down Estates preserve all documents shared with NewRez, the Plan Administrator advised Ms. Lishamer that the Wind Down Estates preserved documents provided to NewRez relating to her loan and mortgage, but they were not willing to preserve all documents shared with New Residential with respect to thousands of loans for other consumers or the many thousands of documents created in negotiating the agreements in the Plan. Ms. Lishamer responded to the Slack Letter with her own status update, which included her responses to the Plan Administrator's review of her seventeen requests for preservation (the "Lishamer Letter").[20]

---

[19] *Letter to the Honorable James L. Garrity, Jr. Regarding Obsolete Data Motion (ECF No. 4350)*, ECF No. 4746.

[20] *Launa Lishamer's Status Update Letter to the Honorable James L. Garrity, Jr.*, ECF No. 4748.

On May 18, 2023, the Court conducted the adjourned hearing on the Motion. After hearing additional arguments from the parties and confirming that they could not resolve the Lishamer Objection, the Court took the matter under advisement and adjourned the hearing on the Motion to May 25, 2023, for holding purposes.[21]

## Discussion

Together, sections 105(a) and 1142(b) of the Bankruptcy Code vest the Court with broad authority over the property administered under the Third Amended Plan, including the authority to issue orders necessary to implement the relevant provisions of the plan and the Bankruptcy Code. Under section 105, "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); *see also Hosp. & Univ. Prop. Damage Claimants v. Johns Manville Corp. (In re Johns Manville Corp.)*, 7 F.3d 32, 34 (2d Cir. 1993) (finding that bankruptcy courts retain post-confirmation jurisdiction to the extent provided in the plan of reorganization). Section 1142(b) of the Bankruptcy Code provides that

> [t]he court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act . . . that is necessary for the consummation of the plan.

11 U.S.C. § 1142(b). This section "empowers the bankruptcy court to enforce the unperformed terms of a confirmed plan." *In re WorldCom, Inc.*, No. 02-13533, 2009 WL 2959457, at *7 (Bankr. S.D.N.Y. May 19, 2009) (quoting *U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 306 (5th Cir. 2002)); *see also In re Park Ave. Radiologists, P.C.*, 450 B.R. 461, 467 (Bankr. S.D.N.Y. 2011) ("Additionally, 11 U.S.C. § 1142 confers limited post-confirmation jurisdiction upon the bankruptcy court for the purpose of implementing the plan.");

---

[21] At the close of the hearing, the Court extended the parties' time to attempt to negotiate a resolution to the Lishamer Objection to Friday, May 19, 2023, at 12:00 p.m. (prevailing Eastern Time). By emailed dated May 19, 2023, Mr. Slack advised the Court that the parties were not able to resolve their dispute.

*In re Oversight & Control Comm'n of Avanzit, S.A.*, 385 B.R. 525, 535 (Bankr. S.D.N.Y. 2008) ("The bankruptcy court retains jurisdiction under 11 U.S.C. § 1142(b) . . . and it has 'continuing responsibilities to satisfy itself that the [p]lan is being properly implemented.'" (alteration in original) (quoting *Findley v. Blinken (In re Joint E. & S. Dist. Asbestos Litig.)* 982 F.2d 721, 750 (2d Cir. 1992))). Section 1142(b) is not an independent source of power; it does not confer any substantive rights on a party apart from what is provided for in the plan. *See Vill. of Rosemont v. Jaffe*, 482 F.3d 926, 935 (7th Cir. 2007) (citing *In re U.S. Brass Corp.*, 301 F.3d at 306).

Section 554(a) of the Bankruptcy Code provides that a trustee or debtor in possession "after a notice and hearing . . . may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a); *see also* Fed. R. Bankr. P. 6007(a) (authorizing abandonment on advance notice); Local Rule 2015-1 cmt. ("On request, the Court may issue an appropriate order limiting storage of the debtor's books, records, and papers. Disposal of the debtor's books, records, and papers is governed by sections 363 and 554 of the Bankruptcy Code."). "The abandonment power embodied in Section 554 enables the trustee to rid the estate of burdensome or worthless assets, and so speeds the administration of the estate . . . and also protects the estate from diminution." *In re Quanta Resources Corp.*, 739 F.2d 912, 915 (3d Cir. 1984); *see also Mele v. First Colony Ins. Co.*, 127 B.R. 82, 85 (D.D.C. 1991) ("[A]bandonment provisions are designed to allow the trustee to relinquish assets that would be a financial drain on the estate, or relieve the trustee of the financial burden of administering inconsequential assets that would cost more than they are worth to the estate.").

The Third Amended Plan contemplates that, post-confirmation, the Wind Down Estates may abandon burdensome property, and the Confirmation Order preserves the Court's jurisdiction to authorize such abandonment. As relevant, the Third Amended Plan provides that, except for

13

property of the Debtors' Estates that was acquired by the Forward Stalking Horse Purchaser or the Reverse Stalking Horse Purchaser, all remaining property of the Debtors' Estates shall vest in the Wind Down Estates, and on or after the Effective Date . . . the Wind Down Estates may take any action including the "use, acquisition, sale, lease and disposition of property" and "the entry into transactions, agreements, understandings, or arrangements, whether in or other than in the ordinary course of business . . . ." Third Amended Plan, art. X, § 10.1.  It also provides that, after the Effective Date, pursuant to the Third Amended Plan, the Plan Administrator shall wind down, sell, liquidate, and may operate, use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action remaining with the [Wind Down Estates] after consummation of the Sale Transaction . . . ." Third Amended Plan, art. V, § 5.6(e)(iii).

> Pursuant to Article XI of the Third Amended Plan, this Court retained jurisdiction over:
>
> all matters arising in, arising under, and or related to the Chapter 11 Cases for, among other things, the following purposes:
>   . . .
>   (b) to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;
>   . . .
>   (k) to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan."

Third Amended Plan, art. XI, § 11.1.  Also, pursuant to the Confirmation Order, this Court retained jurisdiction to "interpret, implement, and enforce the terms and provisions of this Order, all amendments thereto, and any waivers and consents thereunder." Confirmation Order ¶ 66.

A trustee's decision to abandon property of the estate is within the trustee's discretion, and that decision is "bounded only by [the discretion] of the court." *In re Interpictures, Inc.*, 168 B.R. 526, 535 (Bankr. E.D.N.Y. 1994); *see In re Blasingame,* 598 B.R. 864, 871 (B.A.P. 6th Cir. 2019). Still, the party requesting abandonment has the burden of proof. *In re CC Holdings 2000 LLC*,

No. 18-CV-2139, 2020 WL 1430012, at *2 (D. Conn. Mar. 24, 2020) (citing 5 Collier on Bankruptcy ¶ 554.02); *In re Wilton Armetale, Inc.*, 618 B.R. 424, 433 (Bankr. E.D. Pa. 2020) (same). The standard for abandoning estate assets is written in the disjunctive and is met if the Plan Administrator can show that the Obsolete Physical Records and the Additional Electronic Obsolete Records either are "burdensome to the estate" or are "of inconsequential value and benefit to the estate." 5 Collier on Bankruptcy ¶ 554.02[1] (citing *In re A.J. Lane & Co.*, 133 B.R. 264 (Bankr. D. Mass. 1991); *In re Johnston*, 49 F.3d 538 (9th Cir. 1995)).

Courts apply the business judgment standard to a trustee's decision to abandon estate property. To meet that burden, the trustee "need only demonstrate that he has exercised sound business judgment in making the determination to abandon." *In re Cult Awareness Network, Inc.*, 205 B.R. 575, 579 (Bankr. N.D. Ill. 1997); *see also In re Slack*, 290 B.R. 282, 284 (Bankr. D.N.J. 2003) ("The court only needs to find the trustee made: 1) a business judgment; 2) in good faith; 3) upon some reasonable basis; and 4) within the trustee's scope of authority.") (citations omitted). The party opposing the abandonment must show some likely benefit to the estate, not mere speculation about possible scenarios in which there might be a benefit to the estate. *In re Cult Awareness*, 205 B.R. at 579.

The Plan Administrator has plainly met his burden herein. The Debtors have accumulated the Obsolete Physical Records and the Additional Obsolete Electronic Records over the course of many years in the ordinary course of their business operations. They no longer engage in these business operations and have been winding down their business since the Effective Date. The continued storage of the Obsolete Physical Records and the Additional Obsolete Electronic Records by the Wind Down Estates serves no apparent usefulness because the retention of those records does not contribute in any way to future distributions to creditors. *See* Motion ¶¶ 16, 19;

*see also* Schultea Declaration ¶ 9 ("[T]he benefits to the estates of maintaining access to the Obsolete Physical Records and the Additional Obsolete Electronic Records is vastly outweighed by the costs and potential liability of doing so."). Neither the Buyers nor subsequent servicers of the Debtors' business operations have requested access to or possession of the Obsolete Physical Records. Motion ¶ 13. It costs the Wind Down Estates approximately $570,000 per year to preserve and store the Obsolete Physical Records, while the maintenance of access to the servers and software and personnel to access the systems related to the Additional Obsolete Electronic Records cost the Wind Down Estates approximately $250,000 per year. Schultea Declaration ¶¶ 5–6. There is no corresponding benefit to the Wind Down Estates for those expenditures. *See id.* ¶ 9. Disposing of the Obsolete Physical Records and not taking further action to maintain access to the Additional Obsolete Electronic Records will result in substantial cost savings, freeing up funds that can be more effectively applied towards the necessary costs of administration of the Wind Down Estates or to the payment of creditors. Motion ¶ 28. Moreover, abandoning and disposing of the Obsolete Physical Records and abandoning access to the Additional Obsolete Electronic Records is consistent with the mandate of the Plan Administrator to conduct the operations of the Wind Down Estates as efficiently as possible, so as to maximize recoveries for creditors.

The relief that the Plan Administrator seeks in this Motion is limited only to the Obsolete Physical Records and the Additional Obsolete Electronic Records. It does not affect in any way the Retained Records, which include Ms. Lishamer's servicing file. The Plan Administrator, on behalf of the Wind Down Estates, will continue to take commercially reasonable steps to assure that the Retained Records are preserved in accordance with the terms of the Plan, the Confirmation Order, and any other applicable laws. Motion ¶ 22.

Based on the foregoing, the Court finds that the Plan Administrator has demonstrated both that the retention of the Obsolete Physical Records and Additional Obsolete Electronic Records is burdensome to the estate and that these records have inconsequential value to the estate. Furthermore, the Court finds that the Plan Administrator has made a reasonable business decision to abandon these records, while at the same time preserving the Retained Records. *See In re Motors Liquidation Co.*, 625 B.R. 605, 613 (Bankr. S.D.N.Y. 2021) (finding that books and records were no longer necessary to the completion of the case); *In re MF Glob. Inc.*, 535 B.R. 596, 608 (Bankr. S.D.N.Y. 2015) (concluding trustee established a sound business reason to abandon certain property—"jettison[ing] unnecessary systems and records" to quickly close a proceeding—and granting trustee's motion to abandon).

To challenge the Motion, Ms. Lishamer must demonstrate that the Plan Administrator has abused his discretion in making the business decision to abandon these records. *In re Interpictures*, 168 B.R. at 535. She has failed to do so. Indeed, in her objection, Ms. Lishamer does not challenge the Plan Administrator's business judgment or his determination that the retention of the Obsolete Physical Records and Additional Obsolete Electronic Records is burdensome to the estate and that the records are of inconsequential value to the estate. *In re Cult Awareness*, 205 B.R. at 579. (finding that the opposing parties have not met their burden to demonstrate that the Trustee abused his discretion or made an unsound business decision in abandoning assets). The Court overrules the Lishamer Objection.

Ms. Lishamer opposes the Motion because she has not taken discovery from the Debtors in connection with the objection to her claim, and she believes that she will be prejudiced in the defense of her claim if the Plan Administrator abandons the Obsolete Physical Records and Additional Obsolete Electronic Records before she conducts her discovery. Independent from the

Court's determination that the Plan Administrator is authorized to abandon the Obsolete Physical Records and the Additional Obsolete Electronic Records, the Court finds no merit to that contention. The record clearly shows that the Plan Administrator has worked closely with the Consumer Claims Trustee to identify documents that are relevant to claims objections—the Retained Records—including the entirety of Ms. Lishamer's servicing file. The Court has reviewed the Slack Letter and Lishamer Letter. The Court agrees with the Plan Administrator's assertion that in reviewing the seventeen requests for preservation, the Court should consider whether the documents that Ms. Lishamer is asking the Plan Administrator to preserve bear some reasonable connection to a colorable claim against the Debtors. In reviewing the Lishamer Claim and Response to the objection to that claim, the Court finds that nine of the requests (item 6 (as limited by the Plan Administrator), and items 7-11, 13, 15, and 16) meet that standard. Documents responsive to those requests are either being preserved by the Wind Down Estates or are publicly available. In making that determination, the Court does not find that the Lishamer Claim states colorable claims against the Debtors. The sufficiency of the Lishamer Claim is not before the Court. The Court finds that four requests (items 2, 4, 14, 17) do not meet that standard, but documents responsive to those requests are publicly available documents related to these Chapter 11 Cases and thus are not subject to abandonment herein. The Court finds that four requests (items 1, 3, 5, and 12) do not meet that standard and are not publicly available. The Plan Administrator is not required to preserve any such documents.

**Conclusion**

For the reasons stated herein, the Court overrules the Janco Objection and Lishamer Objection and grants the Motion.

IT IS SO ORDERED.

Dated: New York, New York
       May 24, 2023

*/s/ James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge