**UNITED STATES BANKRUPTCY COURT**          NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x

In re:                                              :
                                                    :    Case No. 19-10412 (JLG)
                                                    :    Chapter 11
Ditech Holding Corporation, *et al.*,               :
                                                    :
                                                    :    (Jointly Administered)
                                    Debtors.[1]     :

------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS TRUSTEE'S FIFTY-THIRD OMNIBUS OBJECTION TO PROOFS OF CLAIM OF OSCAR RIVERA AND CARLOS CASO

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10022
By:    Richard Levin

Carlos R. Caso, PA
*Attorney for Creditors Carlos R.*
*Caso and Oscar D. Rivera*
2525 Ponce de Leon Blvd. Suite 300
Coral Gables, Florida 33134
By:    Carlos R. Caso

---

[1]    The Debtors' *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1326, was confirmed, which created the Wind Down Estates. The Wind Down Estates, along with the last four digits of each of their federal tax identification numbers, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## Introduction[2]

On April 24, 2019, Oscar D. Rivera filed Proof of Claim No. 21138 ("Claim 21138") as an unsecured claim for $0.00 against Ditech Financial LLC ("Ditech"). Claim 21138 at 1–2. That same day, Carlos R. Caso (together with Mr. Rivera, the "Claimants") filed Proof of Claim No. 21141 ("Claim 21141," and together with Claim 21138, the "Claims") as an unsecured claim for $0.00 against Ditech. Claim 21141 at 1–2.[3] The Claims are nearly identical and arise out of the foreclosure of the Claimants' jointly owned Property. Each claim consists of two "Official Form 410, Proof of Claim,"[4] and each annexes a Statement in Support of Proof of Claim of Oscar D. Rivera and Carlos R. Caso (the "Joint Statement")[5] and the Amended Complaint for Damages (the "Amended Complaint" or "Am. Complt.")[6] filed by the Claimants in their now-discontinued State Court Action. In substance, in support of the Claims, the Claimants assert that in foreclosing on the Property, Ditech (i) failed to comply with Pennsylvania's Act 6 notice requirements; (ii) violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); (iii) committed fraud; and (iv) breached the Mortgage contract.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order, and Third Amended Plan, as applicable. References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. References to "AP ECF No. __" are to documents filed on the electronic docket in Adversary Proceeding No. 19-01203.

[3]    For ease of reference, the Court will cite to Claim 21141 as representative of both claims.

[4]    Claim 21141 at 1–6. The pages of Claim 21141 are not consecutively numbered. In citing to Claim 21141, the Court will use the page count in the electronic copies of the claim.

[5]    *Id.* at 7–8.

[6]    *Id.* at 9–22. The Amended Complaint consists of four Counts for relief and fifty-eight numbered paragraphs. It includes two exhibits. In citing to the Amended Complaint, the Court will cite to "Claim 21141 at __ (Am. Complt. __)."

On June 1, 2019, the Claimants commenced an adversary proceeding in these Chapter 11 Cases against Ditech (the "Adversary Proceeding")[7] by filing a complaint against the Debtors seeking a determination of the dischargeability of their claims against Ditech under section 523 of the Bankruptcy Code (the "Bankruptcy Complaint").[8]   On October 7, 2019, the Claimants voluntarily dismissed the Adversary Proceeding.[9]

In her Fifty-Third Omnibus Claims Objection (the "Objection"),[10] the Consumer Claims Trustee asserts that the Claims (i) fail to state claims against Ditech for which relief can be granted; (ii) are based on litigation related to a foreclosure action filed in 2011 against the Property by GMAC Mortgage, LLC ("GMAC"), the predecessor servicer; and (iii) do not set forth a liquidated damages amount.  Objection, Ex. A (List of Claims) at 1.  On March 18, 2022, the Claimants filed a joint response (the "Response")[11] to the Objection.  On May 15, 2023, the Consumer Claims Trustee filed her reply (the "Reply")[12] to the Response.  On May 23, 2023, the Claimants filed a joint sur-reply (the "Sur-Reply").[13]

---

[7]   *Oscar D. Rivera v. Ditech Financial LLC*, No. 19-01203 (Bankr. S.D.N.Y. filed June 1, 2019).

[8]   *Complaint for Determination of Dischargeability Pursuant to Section 523 of the Bankruptcy Code*, AP ECF No. 1.

[9]   *Notice of Voluntary Dismissal Pursuant to Rule 7041*, AP ECF No. 9.

[10]   *Consumer Claims Trustee's Fifty-Third Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims)*, ECF No. 3910.

[11]   *Response to Consumer Claims Trustee's Fifty-Third Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims)*, ECF No. 3942.

[12]   *Reply of the Consumer Claims Trustee in Support of the Fifty-Third Omnibus Objection with Respect to the Claims of Oscar D. Rivera (21138) and Carlos R. Caso (21141)*, ECF No. 4736.

[13]   *Sur-Reply to Consumer Claims Trustee's Fifty-Third Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims)*, ECF No. 4757.  The Claimants did not seek leave of the Court to file the Sur-Reply.  However, the Consumer Claims Trustee does not object to the Court including it in the record of this proceeding.  The Court will do so.

Pursuant to the Claims Procedures Order,[14] the filing of the Response caused an adjournment of the Objection so that the Court could conduct a Sufficiency Hearing on the Claims. Under that order, the legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[15] *See* Claims Procedures Order ¶ 3(iv)(a). On May 25, 2023, the Court conducted a telephonic Sufficiency Hearing on the Claims. The Consumer Claims Trustee appeared at the hearing through counsel. Mr. Caso, an attorney, appeared at the hearing representing himself and Mr. Rivera. The Court heard argument on the Objection.

The Court has reviewed the Claims, Objection, Response, Reply, and Sur-Reply, including all documents submitted in support thereof and has considered the arguments made by the parties in support of their respective positions. As explained below, accepting all the well-pleaded factual allegations asserted by the Claimants in support of the Claims as true, drawing all reasonable inferences in the Claimants' favor, and liberally construing the Claims, Response, and Sur-Reply to raise the strongest arguments that they suggest, the Claims fail to state plausible claims for relief against Ditech. Accordingly, the Court sustains the Objection and disallows and expunges the Claims.

---

[14]   *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

[15]   Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In filing the Objection, the Consumer Claims Trustee initiated a contested matter. *See Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs., Inc.)*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter"). Bankruptcy Rule 9014 governs contested matters. The rule does not explicitly provide for the application of Bankruptcy Rule 7012. However, Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply." Fed. R. Bankr. P. 9014. The Court does so here in the Claims Procedures Order.

**Jurisdiction**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Background**

**The Mortgage Loan**

The Claimants are residents of the State of Florida. Bankruptcy Complaint ¶¶ 8–9. On or about June 2, 2005, the Claimants purchased real property located at 424 South Prince Street, Lancaster, PA 17603 (the "Property"). Claim 21141 at 9 (Am. Complt. ¶¶ 1, 3). In connection with the purchase, Mr. Rivera executed a promissory note (the "Note"),[16] and both Claimants executed a mortgage in the amount of $31,200 (the "Mortgage").[17] *Id.* (Am. Complt. ¶ 3). The Mortgage appointed Mortgage Electronic Registration Systems, Inc. ("MERS") as the Nominee for Arlington Capital Mortgage Corp. Mortgage at 1; *see also* Claim 21141 at 9 (Am. Complt. ¶¶ 4–5).

---

[16] The Note is annexed to the Reply as Exhibit B. The Court can properly take judicial notice of matters of public record. *See Sutton ex rel. Rose v. Wachovia Sec., LLC*, 208 F. App'x 27, 30 (2d Cir. 2006) (summary order) (holding that filings and orders in other courts "are undisputably matters of public record"). "In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011); *see also Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (noting that courts "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007))); *Leon v. Shmukler*, 992 F. Supp. 2d 179, 184 (E.D.N.Y. 2014) ("It is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records."). The documents cited by the Claimants and Consumer Claims Trustee directly bear on the legal sufficiency of the Claims and the merits of the Objection. The Court takes judicial notice of those documents.

[17] The Mortgage is annexed to the Reply as Exhibit A.

On or about September 21, 2011, MERS assigned the Mortgage to GMAC.[18]  *See* Claim 21141 at 9 (Am. Complt. ¶ 6).  On June 23, 2013, GMAC assigned the Mortgage to Green Tree Servicing, LLC ("Green Tree"), which later became Ditech.[19]

On May 1, 2011, Mr. Rivera stopped making the Mortgage payments called for under the Note.  *Id.* (Am. Complt. ¶ 7).  By letter dated August 29, 2011, GMAC sent the Claimants an Act 6 notice (the "Act 6 Notice") informing them that the Mortgage was past due and that they had thirty days to cure the default by paying $1,473.32[20] plus any charges due during the thirty-day period.  *Id.* at 10 (Am. Complt. ¶ 8); *id.* at 16 (Am. Complt., Ex. A. at 1).  On September 21, 2011, the Claimants sent a payment in the form of a cashier's check in the amount of $1,841.93 by priority mail to GMAC with an expected delivery date of September 23, 2011.  *Id.* at 19–20 (Am. Complt., Ex. A at 4–5).  The amount tendered included "$1473.32 due through August 29, 2011, as stated in the Act 6 Notice; plus $348.61 for the September 2011 payment and $20.00 for possible late fee."  *Id.* at 10 (Am. Complt. ¶ 10).

By a letter to Mr. Rivera dated October 5, 2011 (the "October 5 Letter"), GMAC rejected the tendered funds and advised that it would not apply the payment because it was for less than the amount due.  Claim 21141 at 10 (Am. Complt. ¶¶ 11–12); *id.* at 22 (Am. Complt., Ex. B at 1).  The letter instructed the Claimants to contact GMAC's law firm to confirm the amount required to cure the default and provided the name, address, and telephone number of the law firm.  *Id.* at 22 (Am. Complt., Ex. B at 1).  Nothing in the record suggests that the Claimants reached out to GMAC's counsel or cured their default by subsequently remitting the correct amount of funds to GMAC.

---

[18]    The assignment of the Mortgage from MERS to GMAC is annexed to the Reply as Exhibit C.

[19]    The assignment of the Mortgage from GMAC to Green Tree is annexed to the Reply as Exhibit D.

[20]    The sum of $1,473.32 consists of $1,394.44 in monthly Mortgage payments, $69.02 in late charges, and $11.25 in inspections, minus $1.39 in suspense.  Claim 21141 at 16 (Am. Complt., Ex. A at 1).

**The Litigation**

State Foreclosure Action

On November 18, 2011, GMAC initiated a foreclosure action against the Claimants and the Property (the "State Foreclosure Action")[21] by filing a foreclosure complaint in the Court of Common Pleas, County of Lancaster, Pennsylvania (the "State Court"). On January 18, 2012, the Claimants filed a motion to dismiss the State Foreclosure Action. State Foreclosure Docket at 4. On July 17, 2012, the State Court denied the Claimants' motion to dismiss the foreclosure complaint. *Id.* On September 7, 2012, the Claimants filed an answer to the foreclosure complaint and counterclaims. *Id.* On April 30, 2013, the State Court struck the Claimants' counterclaims for failing to relate to the origination of the Mortgage, but the State Court declined to strike the Claimants' New Matter defenses related to Act 6 and their alleged payment made in response to the Act 6 Notice. *Id.* at 3.

Claimant Rivera's Chapter 13 Case

On September 30, 2013, Mr. Rivera filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code (the "Chapter 13 Petition")[22] in the United States Bankruptcy Court for the Southern District of Florida.[23] The petition identifies the Property as an estate asset—but not Mr. Rivera's residence—and Mr. Caso as a co-debtor. Chapter 13 Petition at 8. On October 11, 2013, Green Tree filed a proof of claim in the chapter 13 case in the amount of $40,728.52 (the

---

[21]    *GMAC v. Oscar D. Rivera and Carlos R. Caso*, No. CI-11-13841 (Pa. Ct. Com. Pl. filed Nov. 18, 2011). The docket in this State Foreclosure Action (the "State Foreclosure Docket") is annexed to the Reply as Exhibit E. It is also available at https://prothonotary.lancastercountypa.gov/CivilCourt.Public/.

[22]    *In re Rivera*, No. 13-33330 (Bankr. S.D. Fla. filed Sept. 30, 2013). The Chapter 13 Petition is annexed to the Reply as Exhibit G.

[23]    The chapter 13 case docket is annexed to the Reply as Exhibit F.

"Green Tree Claim").[24]  The claim did not include a request for attorney's fees for September 2011.

Green Tree Claim at 4.  On April 23, 2014, the bankruptcy court entered an order (the "Agreed

Order")[25] that granted Green Tree a secured claim of $30,000.00 under the Mortgage.  Agreed

Order at 3.  On June 18, 2014, the bankruptcy court entered an order confirming Mr. Rivera's

plan.[26]  The plan excluded the Property, and the Property was released from the bankruptcy estate.

On June 10, 2015, the bankruptcy court granted Green Tree's motion for relief from the automatic

stay as to Mr. Caso,[27] and it allowed Green Tree to proceed with foreclosure of the Mortgage.

<u>Claimants' State Court Action</u>

On January 26, 2016, the Claimants filed an action against Green Tree in the State Court

(the "State Court Action").[28]  On March 18, 2016, the Claimants filed the Amended Complaint in

that action to include claims for (1) violations of Pennsylvania Act 6; (2) violations of the

UTPCPL; (3) fraud; and (4) breach of contract.

On April 7, 2016, Green Tree filed preliminary objections to the Amended Complaint (the

"Preliminary Objections"),[29] asserting, without limitation, that the Claimants failed to plead fraud

with particularity, that they failed to timely plead fraud, and that the UTPCPL claim should be

dismissed because the Property was not the Claimants' primary residence.  Preliminary Objections

---

[24]    The Green Tree Claim is annexed to the Reply as Exhibit H.

[25]    *Agreed Order Granting Motion to Value and Determine Secured Status of Lien on Real Property Held by Green Tree Servicing LLC as the Duly Authorized Servicer for Federal National Mortgage Association*.  The Agreed Order is annexed to the Reply as Exhibit I.

[26]    *Order Confirming Chapter 13 Plan*.  The order is annexed to the Reply as Exhibit J.

[27]    *Order Granting Motion for Relief from Co-Debtor Automatic Stay (Non-Filing Co-Debtor Carlos R. Caso)*.  The order is annexed to the Reply as Exhibit K.

[28]    *Rivera and Caso v. Green Tree Servicing, LLC et. al.*, No. 16-00686 (Pa. Ct. Com. Pl. filed Jan. 26, 2016).

[29]    *Defendant's Brief in Support of Its Preliminary Objections to Plaintiffs' Amended Complaint*.  The Preliminary Objections are annexed to the Reply as Exhibit L.

at 3–5.  The parties each subsequently filed several additional preliminary objections, all based on

procedural disputes.  Reply ¶ 21.  On August 19, 2016, the State Court Action was consolidated

with the State Foreclosure Action.  *See* State Foreclosure Docket at 1–2.

On November 7, 2016, the State Court denied Green Tree's Preliminary Objections and

directed Green Tree to file an answer within thirty days.  *See* Preliminary Objections Order.[30]  On

January 14, 2020, Federal National Mortgage Association was substituted for Green Tree in the

State Court Action.  State Foreclosure Docket at 1.  On March 24, 2020, due to these Chapter 11

Cases, Claimants discontinued the State Court action as against Green Tree in the State Court

Action.  *Id.* at 1.[31]

## The Chapter 11 Cases

On February 11, 2019, Ditech Holding Corporation (f/k/a Walter Investment Management

Corp.) and certain of its affiliates (the "Debtors") filed petitions for relief under chapter 11 of the

Bankruptcy Code in this Court (the "Chapter 11 Cases").  The Debtors remained in possession of

their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.  On February 22, 2019, the Court entered an order fixing April 1,

2019, at 5:00 p.m. (prevailing Eastern Time) as the deadline for each person or entity, not including

governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim

in the Chapter 11 Cases (the "General Bar Date").[32]  Thereafter, the Court extended the General

---

[30]    The Preliminary Objections Order is annexed to the Sur-Reply as Exhibit C.

[31]    The Claimants' filing in the State Court Action states, "Please mark any claim by Oscar R. Rivera and Carlos R. Caso against Defendant Green Tree Servicing LLC n/k/a Ditech Financial LLC, as discontinued as required by Order of the Bankruptcy Court of the Southern District of New York under case number 19-10412 JLG."  Praecipe to Discontinue Matter against Green Tree Servicing, LLC, n/k/a Ditech Financial LLC pursuant to Pa. R. C. P. 229, *GMAC v. Oscar D. Rivera and Carlos R. Caso*, No. CI-11-13841 (Pa. Ct. Com. Pl. Mar. 24, 2020) (available at https://prothonotary.lancastercountypa.gov/CivilCourt.Public/)

[32]    *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

Bar Date for consumer borrowers, twice, ultimately setting the date as June 3, 2019, at 5:00 p.m. (prevailing Eastern Time).[33]

On September 26, 2019, the Debtors confirmed their Third Amended Plan,[34] and on September 30, 2019, that plan became effective.[35]  The Plan Administrator is a fiduciary appointed under the Third Amended Plan who is charged with the duty of winding down, dissolving, and liquidating the Wind Down Estates.  *See* Third Amended Plan, art. I, §§ 1.130, 1.184, 1.186.  The Consumer Claims Trustee is a fiduciary appointed under the Third Amended Plan who is responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of funds to holders of Allowed Consumer Creditor Claims in accordance with the Third Amended Plan.  *See id.* art. I, § 1.41.  The Consumer Claims Trustee has the exclusive authority to object to Consumer Creditor Claims.  *See id.* art. VII, § 7.1.  The Third Amended Plan also provides that the Plan Administrator, on behalf of each of the Wind Down Estates, is authorized to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims.  *See id.*

**The Claims Procedures Order**

On November 19, 2019, the Court entered the Claims Procedures Order.  That order authorizes the Plan Administrator and the Consumer Claims Trustee to file Omnibus Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order.  *See*

---

[33]  *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[34]  *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1326.

[35]  *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

Claims Procedures Order ¶ 2(i)(a)–(h).  A properly filed and served response to an objection gives

rise to a "Contested Claim" that will be resolved at a Claim Hearing.  *Id.* ¶ 3(iv).  The Plan

Administrator and/or the Consumer Claims Trustee, as appropriate, has the option of scheduling

the Claim Hearing as either a "Merits Hearing" or a "Sufficiency Hearing."  *Id.* ¶ 3(iv)(a), (b).  A

"Merits Hearing" is an evidentiary hearing on the merits of a Contested Claim.  A "Sufficiency

Hearing" is a non-evidentiary hearing to address whether the Contested Claim states a claim for

relief against the Debtors.  The legal standard of review that the Court applies at a Sufficiency

Hearing is equivalent to the standard applied by the Court upon a motion to dismiss for failure to

state a claim upon which relief can be granted under Rule 12(b)(6).  *Id.* ¶ 3(iv)(a).

## The Claims

The Claimants purport to base their Claims on "[p]ending litigation in Pennsylvania state

court."  Claim 21141 at 5.  In their Joint Statement, the Claimants estimate their damages to be

between $25,000 and $40,000 each, plus compensatory, treble, and punitive damages.  *Id.* at 8.

## The Objection

On February 24, 2022, the Consumer Claims Trustee objected to the Claims on the basis

that the Claims (i) fail to state a claim against Ditech for which relief can be granted; (ii) are based

on litigation related to a foreclosure action filed in 2011 against the Property by the predecessor

servicer; and (iii) do not set forth a liquidated amount.  Objection, Ex. A (List of Claims) at 1.

## The Response

In their Response, the Claimants assert that in the State Court Action, Green Tree argued

that it could not be held responsible for the actions of GMAC, its predecessor, but the State Court

rejected that argument.  Response ¶¶ 1–4.  They maintain that the Consumer Claims Trustee is

making the same argument in support of her Objection.  They contend that the Court must reject

that argument and "uphold the [S]tate [C]ourt ruling and preclude an objection based on a new party's assessment of the facts." *Id.* ¶ 7; *see id.* ¶ 6 ("To the extent the same issue has been litigated between the parties, the ruling in the prior determination should be dispositive of the issue in the instant case.").

**The Reply**

In her Reply, the Consumer Claims Trustee argues that (i) her Objection is not barred by either res judicata or collateral estoppel, Reply ¶¶ 35–41; and (ii) that none of the counts alleged in support of the Amended Complaint state a claim for relief against Ditech, *id.* ¶¶ 42–69.

**The Sur-Reply**

In their Sur-Reply, the Claimants assert (i) that they have alleged sufficient factual matters, when accepted as true, to state claims for relief against Ditech, Sur-Reply ¶¶ 1–12; (ii) that in overruling the Preliminary Objections to the Amended Complaint, the State Court determined the validity of their claims against a Rule 12(b)(6) standard, and so the Consumer Claims Trustee is collaterally estopped from relitigating this issue, *id.* ¶¶ 13–16; and (iii) the Claims should be classified as section 363(o) claims, *id.* ¶¶ 17–19.

**Applicable Legal Standards**

Under section 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The filing of a proof of claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). Section 502(b) prescribes nine categories of claims that will be disallowed, including that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). If an objection refuting at least one of the

12

claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See, e.g.*, *Rozier v. Rescap Borrower Claims Tr. (In re Residential Cap., LLC)*, No. 15-cv-3248, 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 11-cv-8444, 2012 WL 1886755, at *3 (S.D.N.Y. May 12, 2012).

Under Rule 12(b)(6), a claim may be dismissed due to a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In applying Rule 12(b)(6) to the Claims, the Court assesses the sufficiency of the facts alleged in support of the Claims in light of the pleading requirements under Rule 8(a) of the Federal Rules of Civil Procedure.[36] Rule 8(a)(2) states that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet that standard, the Claims "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 570. To satisfy Rule 12(b)(6), the "pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). In considering whether that standard is met for a particular claim, the Court must assume the truth of all material facts alleged in support of the claim and draw all reasonable inferences in the Claimants' favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, the Court "need not accord 'legal conclusions, deductions or opinions that are couched as factual allegations . . . a presumption of

---

[36] Rule 8 is incorporated herein pursuant to Bankruptcy Rule 7008.

truthfulness.'" *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 591 (S.D.N.Y. 2008) (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)).  In short, "[i]n ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)).  Where a claimant is proceeding pro se, the Court will construe its claim liberally, although the claim must nonetheless be supported by specific and detailed factual allegations that provide a fair understanding for the basis of the claim and the legal grounds for recovery against a debtor.  *Kimber v. GMAC Mortg., LLC (In re Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (citing *Iwachiw v. N.Y.C. Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005) (summary order)); *see also McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156–57 (2d Cir. 2017) (discussing the policy considerations undergirding liberal construction of pro se litigants' filings).  However, the Court may not "invent factual allegations" that were not pleaded by the pro se litigant.  *Mirarchi v. Nofer (In re Nofer)*, 514 B.R. 346, 353 (Bankr. E.D.N.Y. 2014) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).

## Analysis

### Whether the Consumer Claims Trustee's Objection Is Barred by Application of the Doctrine of Res Judicata

Res judicata bars the "relitigation . . . of claims that were, or could have been, brought in an earlier litigation between the same parties or their privies." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 919 (2d Cir. 2010); *see also In re Residential Cap., LLC*, No. 12-12020, 2015 WL 1567131, at *2 (Bankr. S.D.N.Y. Apr. 3, 2015) ("The doctrine of res judicata precludes the same parties from litigating claims in a subsequent suit based on the same cause of action if

there has been a final judgment on those claims." (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008))).

"To determine the effect of a state court judgment, federal courts . . . are required to apply the preclusion law of the rendering state." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."). The State Court Action was adjudicated in Pennsylvania; therefore, the Court will apply Pennsylvania's rules of res judicata. Under Pennsylvania law, res judicata applies to final judgments on the merits where there exists:

> (1) identity of the thing sued upon or for; (2) identity of the causes of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or capacity of the parties suing or being sued.

*Henion v. Workers' Comp. Appeal Bd. (Firpo & Sons, Inc.)*, 776 A.2d 362, 365–66 (Pa. Commw. Ct. 2001). Res judicata applies to matters that could or should have been litigated. *Id.* at 366. Nonappealable interlocutory orders have no res judicata effect. *DAP Fin. Mgmt. Co. v. Ciotti*, No. 1566, 2000 WL 33711071, at *2 (Pa. Ct. Com. Pl. May 16, 2000).

The Claimants contend that the Preliminary Objections Order is a final order pursuant to which the State Court rejected all of the matters asserted by the Consumer Claims Trustee in support of the Objection. Response ¶¶ 3–5. They maintain that the Preliminary Objections Order is dispositive of the issues raised in the Objection and that the Court should uphold the ruling of the State Court and overrule the Objection. *Id.* ¶¶ 6–7; *see also* Sur-Reply ¶¶ 1–12. The Court disagrees.

15

The Preliminary Objections Order essentially consists of a single paragraph.  In it, the State Court denies Defendant's Preliminary Objections to Plaintiffs' Amended Complaint—without explanation—and directs the Defendant "to file a verified answer to Plaintiffs' Amended Complaint within thirty (30) days of this Order."  Preliminary Objections Order.  Thus by its terms, it is plainly not a final order.  Moreover, under Pennsylvania law, it is settled that the order of the common pleas court overruling the Preliminary Objections is an interlocutory order, not a final order.  *See Creighton v. City of Pittsburgh*, 132 A.2d 867, 870 (Pa. 1957) (holding that for purposes of an appeal, "[t]he order overruling the city's preliminary objection [to an assumpsit complaint] was not a final order, it was interlocutory").  Accordingly, that order has no res judicata effect.  *Id.*

### Whether the Consumer Claims Trustee's Objection is Barred by Application of the Doctrine of Collateral Estoppel

Collateral estoppel acts to foreclose litigation in a subsequent action where issues of law or fact were actually litigated and were necessary to a previous final judgment.  *Henion*, 776 A.2d at 365.  The Court applies Pennsylvania law in assessing whether the Objection is barred by application of the doctrine of collateral estoppel.  *Conopco*, 231 F.3d at 87.  Under Pennsylvania law, collateral estoppel, or issue preclusion, bars a subsequent lawsuit where four prongs are met:

> (1) an issue decided in a prior action is identical to one presented in a later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action or is in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

*Rue v. K-Mart Corp.*, 713 A.2d 82, 84 (Pa. 1998).

The Claimants argue that the Consumer Claims Trustee is collaterally estopped by the Preliminary Objections Order from raising the matters at issue in the Objection.  *See* Sur-Reply ¶¶ 13–16.  However, there is no support for that contention.

16

Contrary to the Claimants' contentions, and as set forth above, in the Preliminary Objections Order, the State Court did not specifically address, let alone resolve, the issues raised by the Consumer Claims Trustee in support of the Objection. Moreover, and in any event, nonappealable interlocutory orders are not final judgments on the merits and thus have no collateral estoppel effect. *DAP Fin. Mgmt. Co.*, 2000 WL 33711071, at *2. The doctrine of collateral estoppel is not applicable here because the State Court did not resolve any issues in the Preliminary Objections Order, and, in any event, that order is not a final order. *See Creighton*, 132 A.2d at 870.

### **Whether the Claims State a Claim for Relief against Ditech**

#### *Violation of Pennsylvania Act 6 Requirements*

Act 6 "is a consumer protection statute for residential mortgage debtors that provides an 'extensive program designed to avoid mortgage foreclosures.'" *Bayview Loan Servicing, LLC v. Lindsay*, 185 A.3d 307, 308 (Pa. 2018) (quoting *Bennett v. Seave*, 554 A.2d 886, 891 (Pa. 1989); *see also Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 357 (E.D. Pa. 2013) ("Act 6 is a 'comprehensive interest and usury law with numerous functions, one of which is that it offers homeowners with residential mortgages a measure of protection from overly zealous residential mortgage lenders.'" (quoting *In re Graboyes*, 223 F. App'x 112, 114 (3d Cir. 2007))).

In part, Act 6 requires a residential mortgage lender to give at least thirty days' notice to a borrower before the lender may accelerate a mortgage loan or commence a foreclosure action. 41 Pa. Cons. Stat. § 403(a). It also provides that before a mortgage lender gives thirty days' notice, it cannot charge a borrower with the payment of attorney's fees. *Id.* § 406(3). However, after the thirty-day period, the lender may assess reasonably incurred legal fees, but not in excess of $50.00. *Id.*; *see also Flores v. Shapiro & Kreisman*, 246 F. Supp. 2d 427, 431 (E.D. Pa. 2002).

17

The Claimants assert that GMAC violated Act 6 by charging attorney's fees that accrued during the thirty-day period. They allege that they "tendered the required amount in the required period and lender rejected the tender of funds," and that "Defendant's rejection of the full tender to require additional attorney's fees was a direct violation of [section 406 of] Act 6." Claim 21141 at 11 (Am. Complt. ¶¶ 27-29). However, the Claimants do not allege facts demonstrating that GMAC charged them attorney's fees. They merely presume that to be the case. *See* Bankruptcy Complaint ¶ 14(k) ("Check was returned on or about October 5, 2011 by letter stating that it was insufficient to cover the outstanding amount, that foreclosure proceeding had begun and provided instructions to contact their law firm to find out how much was due, presumably including attorney's fees."). Moreover, the Act 6 Notice, which itemizes the amount due and owing under the Note, does not include a claim for attorney's fees. Claim 21141 at 16 (Am. Complt., Ex. A at 1). Where documents appropriately before the Court on a Rule 12(b)(6) motion "contradict the allegations in the amended complaint, the documents control." *Rapoport v. Asia Elecs. Holding Co., Inc.*, 88 F. Supp. 2d. 179, 184 (S.D.N.Y. 2000) ("This Court finds that the documents contradict Plaintiffs' allegations and, therefore, this Court must grant Defendants' motion to dismiss."); *see also Feick v. Fleener*, 653 F.2d 69, 75 (2d Cir. 1981) ("Since the documents upon which appellants based their claim show on their face absence of any grounds for relief, dismissal was proper.").

The Court finds that the Claimants have failed to allege facts sufficient to state claims for violations of Pennsylvania's Act 6 notice requirements.

### *Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law*

The general purpose of the UTPCPL is to protect the public from fraud and unfair or deceptive business practices. *See* 73 Pa. Cons. Stat. § 201-1 *et seq.*; *see also Pirozzi v. Penske Olds-Cadillac-GMC, Inc.*, 605 A.2d 373, 375 (Pa. Super. Ct. 1992) ("The purpose of the UTPCPL

is to protect the public from fraud and unfair or deceptive business practices and the statute is the principal means for doing so . . . ."); *Loduca v. WellPet LLC*, 549 F. Supp. 3d 391, 400 (E.D. Pa. 2021) (noting that "the underlying foundation and purpose behind Pennsylvania's Consumer Protection Law was the prevention of fraud and protection of the public from unfair or deceptive business practices and to even the bargaining power between consumers and sellers in commercial transactions").

The UTPCPL provides a private right of action for any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers ascertainable loss as a result of the respondent's use or employment of an unlawful practice. 73 Pa. Cons. Stat. § 201-9.2(a); *Schwarzwaelder v. Fox*, 895 A.2d 614, 619 (Pa. Super. Ct. 2006). "To show that a defendant's actions caused 'ascertainable loss' under the UTPCPL, '[a]n actual loss of money or property must have occurred to state a cognizable UTPCPL claim.'" *Opris v. Sincerta Reprod. Med.*, No. 21-3072, 2022 WL 1639417, at *13 (E.D. Pa. May 24, 2022) (alterations in original) (quoting *Allen v. Wells Fargo, N.A.*, No. 14-5283, 2015 WL 5137953, at *8 (E.D. Pa. Aug. 28, 2015)). Under the UTPCPL, "[d]amages cannot be speculative, and the plaintiff must have suffered harm as a result of the defendant's wrongful conduct, meaning he must be able to show an actual loss of money or property." *Jarzyna v. Home Props., L.P.*, 185 F. Supp. 3d 612, 626 (E.D. Pa. 2016).

The Claimants' UTPCPL claims fail for multiple reasons. The Claimants have not alleged facts demonstrating that the Property relates to personal, family or household purposes and, apparently, they cannot do so. In the Bankruptcy Complaint, the Claimants allege that they reside in Florida. Bankruptcy Complaint ¶¶ 8–9; *see also* Chapter 13 Petition at 8–9. (listing the Property and thirteen additional properties located in Lancaster, Pennsylvania as real property in which he

is a "joint tenant"). Second, the Claimants do not allege facts demonstrating an "ascertainable loss." They do not allege facts demonstrating that they suffered an actual loss of money or property. Rather, they merely assert that "[a]s a proximate result from Defendant's actions, Plaintiffs have been damaged with the dissemination of derogatory information and the filing of the foreclosure." Claim 21141 at 12 (Am. Complt. ¶ 41). Finally, the Claimants have not alleged facts demonstrating that Ditech, as assignee, was responsible for the allegedly deceptive practices. *See WM Specialty Mortg. LLC v. Shuttleworth*, No. 10802, 2007 WL 2411749, at *1 (Pa. Ct. Com. Pl. Jan 8, 2007) (dismissing homeowner's counterclaim for violations of UTPCPL in a foreclosure action because the alleged violations were committed by the original lender, not the foreclosing assignee); *Canty v. Equicredit Corp. of Am.*, No. 01-5804, 2003 WL 21243268, at *3 (E.D. Pa. May 8, 2003) (granting summary judgment in favor of defendant on UTPCPL count where plaintiff could not establish derivative liability in the defendant as assignee of the contract).

The Court finds that the Claimants have failed to state claims for violations of Pennsylvania's UTPCPL.

### *Fraud*

A claimant alleging fraud must set forth facts sufficient to demonstrate (1) a material misrepresentation of an existing fact; (2) scienter; (3) justifiable reliance; and (4) damages. *Booze v. Allstate*, 750 A.2d 877, 880 (Pa. Super. Ct. 2000). Both the federal rules and Pennsylvania rules of civil procedure mandate that claims sounding in fraud be pleaded with particularity. Fed. R. Civ. P. 9(b); Pa. R. C. P. 1019(b). When pleading a state of mind, like scienter, particularity is not required, but a party "must allege facts that give rise to a strong inference of fraudulent intent." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004).

In support of the Claims, the Claimants failed to plead facts demonstrating the elements of fraud. The Claimants assert that the October 5 Letter contains a material misrepresentation of an

existing fact because it falsely states that the funds the Claimants tendered in satisfaction of the

Mortgage payment were less than the amount needed to cure any default.  Claim 21141 at 12 (Am.

Complt. ¶ 45).   However, they do not allege facts demonstrating that together, the letter and

returned payment constitute a "misrepresentation."   Moreover, they fail to allege how the funds

remitted were sufficient to cure any default.   They do not allege facts that give rise to a strong

inference that Green Tree acted with intent or knowledge of wrongdoing.   The Claimants also do

not allege any facts demonstrating that they relied upon any misrepresentation in the October 5

Letter and how that misrepresentation caused them damages.   The Court concludes that the

Claimants have not sufficiently pleaded claims for fraud against Ditech.  *Cnty of Lackawanna v.

Verrastro*, No. 08 CV 887, 2009 WL 3825873, at *49–50 (Pa. Ct. Com. Pl. June 4, 2009)

(sustaining preliminary objection where claimant did not sufficiently plead reliance and damages);

*Perkins v. State Farm Ins. Co.*, 589 F. Supp 2d 559, 568 (M.D. Pa. 2008) (granting motion to

dismiss fraud claim where plaintiff did not plead fraud with particularity); *Colaizzi v. Beck*, 895

A.2d 36, 40 (Pa. Super. Ct. 2006) (dismissing fraud claim where plaintiff did not plead

misrepresentation); *Mele Const. Co. Inc. v. Crown Am. Corp.*, 618 A.2d 956, 961 (Pa. Super. Ct.

1992) (finding that scienter was not pleaded).

    The Consumer Claims Trustee also asserts that the Claimants are time-barred from

asserting claims for fraud based on the October 5 Letter and returned payment.  Reply ¶ 64.  "The

statute of limitations is an affirmative defense on which the defendant bears the burden of proof."

*Ellington Long Term Fund, Ltd. v. Goldman, Sachs & Co.*, No. 09-cv-9802, 2010 WL 1838730,

at *2 (S.D.N.Y. May 4, 2010).  "Where the dates in the complaint show that an action is barred by

a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to

dismiss." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989); *see also New*

*York v. W. Side Corp.*, 790 F. Supp. 13, 28 (E.D.N.Y. 2011) ("[I]t is well established that a statute of limitations defense may only be resolved on a pre-answer motion to dismiss where the complaint alleges specific information to permit such a finding.").  "Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter." *Ghartey*, 869 F.2d at 162.  For claims sounding in fraud, federal courts look to state law for the relevant statute of limitations.  *In re Reyes*, 627 B.R. 569, 575 (Bankr. S.D.N.Y. 2021).

Pennsylvania has a two-year statute of limitations for claims sounding in fraud.  42 Pa. Cons. Stat. § 5524(7); *AAMCO Transmissions, Inc. v. Harris*, 759 F. Supp. 1141, 1144 (E.D. Pa. 1991).  The statute begins to run "at the time 'the right to institute and maintain the suit arises.'" *Beauty Time, Inc. v. VU Skin Sys., Inc.*, 118 F.3d 140, 144 (3d Cir. 1997) (quoting *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)); *see also* 42 Pa. Cons. Stat. § 5502(a) ("The time within which a matter must be commenced . . . shall be computed . . . from the time the cause of action accrued.").  The Claimants contend that GMAC defrauded them in October 2011, when it rejected the Mortgage payment.  *See* Claim at 12 (Am. Complt. ¶¶ 45–46).  As a general rule, once a cause of action has accrued and the prescribed statutory period has run, an injured party is barred from bringing its cause of action.  *Pocono Int'l Raceway*, 468 A.2d at 471.  The Consumer Claims Trustee contends that the Claimants are barred from asserting the fraud claim because it arose in October 2011, the statute of limitations lapsed in or about October 2013, and the Claimants did not assert that claim until January 26, 2016, when they commenced the State Court Action.  Reply ¶ 64.  The Claimants say that the claim is not time-barred because they did not discover GMAC's alleged fraud until December 2014.

The discovery rule is an exception to the general rule governing statutes of limitations because it tolls the running of a statute of limitations. The rule "originated in cases in which the injury or its cause was neither known nor reasonably knowable." *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005). The purpose of the rule "has been to exclude from the running of the statute of limitations that period of time during which a party who has not suffered an immediately ascertainable injury is reasonably unaware he has been injured, so that he has essentially the same rights as those who have suffered such an injury." *Id.*; *see also Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000) ("The discovery rule is a judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct.").

Under Pennsylvania law, the "salient point" giving rise to the application of the discovery rule "is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause." *Pocono Int'l Raceway*, 468 A.2d at 47. For these purposes, "reasonable diligence is not an absolute standard, but is what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised." *Fine*, 870 A.2d at 858. That is to say that "[t]he question in any given case is not, what did the plaintiff know of the injury done him? [B]ut, what might he have known, by the use of the means of information within his reach, with the vigilance the law requires of him?" *Id.* (alterations in original) (quoting *Scranton Gas & Water Co. v. Lackawanana Iron & Coal Co.*, 31 A. 484, 485 (Pa. 1895)).

As the parties invoking the discovery rule, the Claimants bear the burden of demonstrating its application herein. *Wilson v. El-Daief*, 964 A.2d 354, 362 (Pa. 2009). They have failed to meet

that burden.  In support of the fraud claim, the Claimants assert that the October 5 Letter contains

a material misrepresentation of an existing fact because it falsely states that the funds that the

Claimants tendered in satisfaction of the Mortgage payment were less than the amount needed to

cure any default and that foreclosure proceedings had already begun.  Claim 21141 at 12 (Am.

Complt. ¶ 45).  They allege that

> Defendant knew that the statements contained in the letter were false because
> Defendant had prepared the Act 6 Notice and knew the amounts required, had
> received the tender, knew that attorney's fees could not be charged under Act 6,
> and knew that a foreclosure action had not been filed with the courts.

*Id*. (Am. Complt. ¶ 46).  The Claimants maintain that they "were unaware that the statements

contained in the letter were false and only discovered the fraudulent nature of Defendant's action

in December 2014 while researching Defendant's motion in the bankruptcy case with regards to

the subject property.  *Id*. at 11–12 (Am. Complt. ¶ 48).

The Claimants do not allege facts demonstrating that upon receipt of the October 5 Letter,

they used "reasonable diligence" to evaluate their alleged injury and Ditech's alleged role in

causing that injury.  First, they could have determined whether the Property was the subject of a

foreclosure action by reviewing the State Court record.  Moreover, the October 5 Letter invited the

Claimants to contact GMAC's attorneys, but the Claimants do not allege that they investigated the

matter further at that time.  Reasonable diligence would require that the Claimants, at a minimum,

take those steps.  *See Cochran v. GAF Corp*, 666 A.2d 245, 249 (Pa. 1995) (To demonstrate

reasonable diligence, a party must establish that it exhibited "those qualities of attention,

knowledge, intelligence and judgment which society requires of its members for the protection of

their own interests and the interests of others.").  The Court finds that the fraud claim is

time-barred.  *See In re Reyes*, 627 B.R. at 578 (finding the plaintiffs were on notice of alleged

fraud upon receipt of a loan modification denial letter in contrast with their expectation on being

approved for a loan modification and finding that the plaintiffs did not exercise reasonable diligence when the plaintiffs failed to follow up on the denial); *see also Beltz v. Erie Indem.*, 279 F. Supp. 3d 569, 584 (W.D. Pa. 2017) (finding statute of limitations defense applicable on a motion to dismiss a conversion claim); *McCracken v. Ford Motor Co.*, 588 F. Supp. 2d 635, 642 (E.D. Pa. 2008) (finding statute of limitations defense available on a Rule 12(b)(6) motion where the complaint facially shows noncompliance with the limitations period.)

The Claimants fail to state fraud claims against Ditech.

*Breach of Contract*

To allege breach of contract in Pennsylvania, the Claimant must show "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004). If a complaint fails to sufficiently plead one of these elements, the breach of contract claim should be dismissed. *Assembly Tech. Inc. v. Samsung Techwin Co.*, 695 F. Supp. 2d 168, 180 (E.D. Pa. 2010) (dismissing breach of contract claim because complaint did not sufficiently allege a breach of contractual duty).

Claimants purport to assert breach of contract claims based upon the Mortgage, which they both executed. Claim 21141 at 13 (Am. Complt. ¶ 53). They allege GMAC breached the Mortgage by failing to apply the payments correctly pursuant to paragraph 2 of the Mortgage.[37] *Id*. (Am. Complt. ¶¶ 54–55). They also allege that pursuant to paragraph 19 of the Mortgage[38]

---

[37]    In relevant part, paragraph 2 of the Mortgage states:

> Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3 [Funds for Escrow Items].

Mortgage ¶ 2.

[38]    In relevant part, paragraph 19 of the Mortgage states:

they were entitled to reinstate the monthly Mortgage payments upon curing their default under the Mortgage, but that GMAC breached the Mortgage by "failing to cancel the acceleration of the principal amount and reinstating the monthly mortgage payments." *Id.* (Am. Complaint ¶¶ 56–57).

Beyond conclusory statements that GMAC breached these two paragraphs of the Mortgage, the Claimants do not make any specific factual allegations in support of their claims. For example, the Claimants do not identify the monthly Mortgage payments that GMAC allegedly misapplied in breach of the Mortgage or allege facts demonstrating that GMAC misapplied the payments. Furthermore, the Claimants failed to remit the funds necessary to cure the default as outlined in the October 5 Letter as required under paragraph 19 of the Mortgage. They do not demonstrate how the payment they made was the correct amount to cure the default. The Claimants have not alleged facts demonstrating that GMAC breached its duties under the Mortgage. *See* Claim 21141 at 13 (Am. Complt. ¶ 55) (stating merely, "Defendant breached the mortgage agreement by failing to apply the payments correctly"). In short, the Claimants have not alleged a plausible claim that Ditech breached the Mortgage. Mere conclusory statements are insufficient to state a claim for breach of contract. *See 412 N. Front St. Assocs., LP v. Spector Gadon & Rosen*, 151 A.3d 646, 657 (Pa. Super. Ct. 2016); *Rambo v. Green*, No. 03894, 2005 WL 579943, at *2 (Pa. Ct. Com. Pl. Feb. 28, 2005).

"[B]reach of contract damages must be damages that actually resulted from the defendant's breach." *Dicicco v. Citizens Fin. Grp., Inc.*, No. 15-267, 2015 WL 5302767, at *9 (E.D. Pa. Sept. 10, 2015) (citing *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 182 (3rd Cir. 2015)). The

---

Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued . . . . Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred . . . .

Mortgage ¶ 19.

Claimants assert that they were damaged "by virtue of the subsequent foreclosure, which was filed against them, the dissemination of derogatory information during an extended period of time to the credit bureaus." Claim 21141 at 13 (Am. Complt. ¶ 58). "In order to recover damages pursuant to a breach of contract, the plaintiff must show a causal connection between the breach and the loss." *Logan v. Mirror Printing Co. of Altoona, Pa.*, 600 A.2d 225, 226 (Pa. Super. Ct. 1991). The Claimant must also "establish damages with reasonable certainty . . . . 'At a minimum, reasonable certainty embraces a rough calculation that is not too speculative, vague or contingent upon some unknown factor.'" *Ruggiero v. Nocenti*, 556 F. Supp. 3d 512, 528 (E.D. Pa. 2021) (quoting *ATACS Corp. v. Trans World Commc'n, Inc.*, 155 F.3d 659, 668–69 (3d Cir. 1998)). "Applying the reasonable certainty standard does not preclude an award of damages because of some uncertainty as to the precise amount of damages incurred." *ATACS Corp*, 155 F.3d at 669. The Claimants here have not demonstrated a causal link between Green Tree breaching paragraphs 2 and 9 of the Mortgage and the damages they assert, certainly in light of the fact that Rivera stopped making payments on the Note. Claim 21141 at 9 (Am. Complt. ¶ 7); *see also Fritz v. Glen Mills Sch.*, 894 A.2d 172, 179 (Pa. Commw. Ct. 2006) (finding that the plaintiff failed to produce evidence of damages).

The limitations period for a breach of contract claim in Pennsylvania is four years. 42 Pa. Cons. Stat. § 5525(a)(1); *Borel Builders, Inc. v. Burke*, No. 1445, 2023 WL 371660, at *5 (Pa. Super. Ct. Jan. 24, 2023) ("A breach of contract claim must be brought within four years of the breach."). The Consumer Claims Trustee contends that an additional ground for dismissing the breach of contract claim is that it is time-barred. Reply ¶ 69. In Pennsylvania, there is a split of authority over whether the discovery rule applies to breach of contract cases. *Compare Carulli v. N. Versailles Twp. Sanitary Auth.*, 216 A.3d 564, 583–84 (Pa. Commw. Ct. 2019) (concluding that

27

the discovery rule should not be extended to breach of contract actions involving express written negotiated contracts), *with Morgan v. Petroleum Prods. Equip. Co.*, 92 A.3d 823 (Pa. Super. Ct. 2014) (stating that the discovery rule applies to all causes of action including breach of contract).  As explained below, the Claimants cannot satisfy the discovery rule.

An action accrues "when the plaintiff could have first maintained the action to a successful conclusion." *Fine*, 870 A.2d at 857.  "Under Pennsylvania law any breach of contract entitles the injured party to at least nominal damages." *Welding Eng'rs Ltd. v. NFM/Welding Eng'rs, Inc.*, 352 F. Supp. 3d 416, 434 (E.D. Pa. 2018) (citing *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 497 (3d Cir. 2015) (noting that under Pennsylvania law, summary judgment would be inappropriate if the only argument against a breach of contract claim was the absence of damages because such claimant would be "nonetheless entitled to recover nominal damages")); *see also Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 500 F. Supp. 1312, 1320 (W.D. Pa. 1980) ("The majority of cases indicate that nominal damages will be awarded any time a breach of contract is shown."); *Carulli*, 216 A.3d at 582 (citing *Freedom Oil Works Co. v. Williams*, 152 A. 741, 743 (Pa. 1930) (holding that where defendant admitted there was a breach of contract, plaintiffs were entitled at least to nominal damages)).

The Claimants assert that GMAC breached the Mortgage when it allegedly misapplied the Mortgage payments, failed to cancel the acceleration of the principal amount of the Mortgage, and reinstate the monthly Mortgage payments.  Claim 21141 at 13 (Am. Complt. ¶¶ 55–57).  That claim crystalized when Claimants received the October 5 Letter.  The discovery rule is not applicable to these breach of contract claims.  This is not a case where the existence of an alleged breach of contract, or the very existence of an injury, could not reasonably have been ascertained in the exercise of due diligence.  The Court finds that the claim is time-barred.

The Court concludes that the Claimants have not stated claims against Ditech for breach of contract.

### Conclusion

Based on the foregoing, the Court sustains the Objection and disallows and expunges the Claims.


IT IS SO ORDERED.

Dated: New York, New York
June 1, 2023


/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge