```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
In re                                                            :    Chapter 11
                                                                 :
DITECH HOLDING CORPORATION, et al.,                              :    Case No. 19-10412 (JLG)
                                                                 :
                    Debtors.¹                                    :    (Jointly Administered)
                                                                 :
-----------------------------------------------------------------X
```

### GLOBAL NOTES AND STATEMENTS OF
### LIMITATION REGARDING THE WIND DOWN ESTATES'
### POST-CONFIRMATION QUARTERLY OPERATING REPORT FOR
### THE PERIOD FROM APRIL 1, 2023 THROUGH JUNE 30, 2023

1. **Basis of Presentation.** This post-confirmation quarterly operating report (the "**Quarterly Report**") has been prepared solely for the purpose of complying with the quarterly reporting requirements applicable in these Chapter 11 Cases. The Quarterly Report is in a format acceptable to the U.S. Trustee. The Quarterly Report should not be relied upon by any persons for information relating to current or future financial conditions, events, or performance of the Wind Down Estates. The supplemental information contained herein is limited in scope and covers the period of April 1, 2023 through June 30, 2023. Moreover, such information is preliminary, unaudited, and subject to change. The Plan Administrator prepared this Quarterly Report relying primarily upon the information set forth in the Wind Down Estates' books and records. In preparing this Quarterly Report, the Plan Administrator made reasonable efforts to supplement the information set forth in the Wind Down Estates' books and records with additional information concerning transactions that may not have been identified therein, to the extent necessary.

---

¹ On September 26, 2019, the Court entered the *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "**Confirmation Order**"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief* (ECF No. 3903) (the "**Closing Order**"). Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Pursuant to the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "**Remaining Wind Down Estate**") (Case No. 19-10412 (JLG) shall remain open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates shall be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

| | |
|---|---:|
| In re: Ditech Holding Corporation, *et al.* | Case No. 19-10412 (JLG) |
| | Reporting Period: **April 1, 2023 to June 30, 2023** |
| | Federal Tax I.D. #13-39050486 |

2. **Consolidated Entity Accounts Payable and Disbursements Systems.** In the ordinary course of business, the Wind Down Estates utilize an integrated, centralized cash management system to collect, concentrate, and disburse funds (the "**Cash Management System**"). The Cash Management System provides a seamless accounting function across all entities in a single location, reducing banking expenses, permitting prompt and accurate liquidity tracking and allowing accurate intercompany allocations and transfers.

3. **Background.** On February 11, 2019 (the "**Commencement Date**"), Ditech Holding Corporation ("**Ditech**") and thirteen (13) affiliates filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

   On September 22, 2019, the Debtors filed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors* (ECF No. 1326) (the "**Third Amended Plan**"). On September 26, 2019, the Bankruptcy Court entered the *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors* (ECF No. 1404) (the "**Confirmation Order**").[2] Pursuant to the Third Amended Plan, the Debtors sold their (i) forward business to New Residential Investment Corp. pursuant to that certain *Asset Purchase Agreement* by and among Ditech Holding Corporation, Ditech Financial LLC, and New Residential Investment Corp., dated June 17, 2019 (as amended, modified, and supplemented from time to time, the "**Forward Stalking Horse Purchase Agreement**") and (ii) reverse business to Mortgage Assets Management, LLC and SHAP 2018-1, LLC pursuant to that certain *Stock and Asset Purchase Agreement* by and among Ditech Holding Corporation, Walter Reverse Acquisition LLC, Reverse Mortgage Solutions, Inc., Mortgage Assets Management, LLC, and SHAP 2018-1, LLC, dated June 17, 2019 (as amended, modified, and supplemented from time to time, the "**Reverse Stalking Horse Purchase Agreement**" and together with the Forward Stalking Horse Purchase Agreement, the "**Purchase Agreements**").

   The Effective Date of the Third Amended Plan occurred on September 30, 2019 (the "**Effective Date**"). *See Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims* (ECF No. 1449).

---

[2]  Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Third Amended Plan or Confirmation Order, as applicable.

In re: Ditech Holding Corporation, *et al.*            Case No. 19-10412 (JLG)
Reporting Period: April 1, 2023 to June 30, 2023
Federal Tax I.D. #13-39050486

4. **Claims Administration.** As of June 30, 2023, 7,954 proofs of claim in the amount of $5.9 billion were filed in these Chapter 11 Cases. The Plan Administrator has reviewed the claims filed as secured, priority, and/or administrative ("**SPA**") claims, which includes approximately 3,891 claims with an asserted aggregate claim value of approximately $2.9 billion. Approximately 1,400 of these 3,890 proofs of claim filed included unliquidated amounts. To the extent that a proof of claim was filed partially as an SPA claim and partially filed as a General Unsecured Claim, the Plan Administrator is coordinating resolution of such claims with the GUC Recovery Trustee and/or the Consumer Representative in accordance with the terms of the Third Amended Plan, including providing research and other diligence materials to the GUC Recovery Trustee and the Consumer Representative in connection with the claims administration process.

As of June 30, 2023, the Plan Administrator has filed eighty-three (83) omnibus objections seeking to disallow, reclassify, and/or reduce or sought to otherwise have withdrawn 3,887 of the SPA claims filed in the amount of approximately $2.9 billion (the "**Disputed SPA Claims**"). As of June 30, 2023, the Bankruptcy Court entered orders expunging, allowing, reclassifying to unsecured and/or claimants have voluntarily withdrawn 3,874 of the Disputed SPA Claims, which were filed in the amount of $2.9 billion. As of June 30, 2023, there were 14 adjourned Disputed SPA Claims filed in the amount of approximately $0.7 million. In the third quarter of 2020, three claimants with an aggregate asserted claim amount of $234.4 million filed notices of appeal to the United States District Court ("**District Court**") without seeking a stay or posting an appeal bond. The appellants failed to comply with procedural deadlines or prosecute their appeal until directed to do so by the District Court on August 13, 2021. Consequently, given these procedural deficiencies, no cash amounts are held in reserve related to any of the claims for which an appeal is pending. On August 13, 2021, the District Court entered an order setting September 13, 2021 as the deadline for two of the appellants to file their designation of record on appeal and statement of issues, which they did. On September 23, 2021, the Debtors filed the counter-designation of records; on December 17, 2021, the Debtors filed the response brief; on January 14, 2022, the appellants filed their reply brief. The Debtors await ruling on these matters from the District Court. In November 2020, the Bankruptcy Court issued an order reclassifying a $90 million claim (the "**Pefley Claim**") from an asserted SPA claim to an unsecured Consumer Creditor Claim (*see* ECF No. 2987). Subsequent to the issuance of the order, the Plan Administrator filed a motion to estimate the SPA portion of the Pefley Claim in the amount of zero dollars (the "**Pefley Estimation Motion**") to allow for further Plan distributions (*see* ECF No. 3120). The Bankruptcy Court approved the Pefley Estimation Motion on February 16, 2021 (*see* ECF No. 3234).

Additionally, there are $0.2 million of SPA claims for which objections have not been filed as of June 30, 2023.

3

In re: Ditech Holding Corporation, *et al.*  
Case No. 19-10412 (JLG)  
Reporting Period: April 1, 2023 to June 30, 2023  
Federal Tax I.D. #13-39050486

A summary of the status of the filed SPA claims as of June 30, 2023 is as follows:

**Ditech Holding Corporation, et al.**
**Claims Status Summary**
**As of June 30, 2023**

| ($ in millions) | Count | SPA |
|---|---|---|
| **Total Claims** | **3,891** | **$ 2,906.6** |
| Withdrawn/Expunged Claims | 3,769 | 2,873.0 |
| Allowed Claims[1] | 40 | 25.0 |
| Reclassified to Unsecured[2] | 65 | 7.8 |
| Disputed Claims Pending Contested Hearing | 14 | 0.7 |
| Claims Under Review | 3 | 0.2 |

Footnotes

[1] Allowed Claims filed in the SPA amount of $25.0 million have been allowed in the amount of $5.9 million.

[2] Reclassified to Unsecured includes $2.0 million of claims originally filed as SPA claims that have not yet been fully resolved by the GUC Trustee or Consumer Representative or been granted relief to estimate reserves at zero for purposes of determining the Disputed Claims Reserve and therefore continue to be included in the Disputed Claims Reserve.

Under the Third Amended Plan, the Plan Administrator is required to satisfy or reserve for asserted SPA claims before distributions on account of Term Loan Claims can be made. As of the date of this report, the reserve is approximately $3 million, which includes the Disputed Claims Pending Contested Hearing, Claims Under Review, and $2.0 million of certain claims not otherwise subject to a final order, each in the table above. The amount and timing of distributions is subject to the Plan Administrator's requirement to reserve for Disputed SPA Claims under the Third Amended Plan. The Plan Administrator is continuing to file objections to expunge, reclassify, or reduce and/or allow the SPA claims as promptly as possible.

Certain SPA claims filed by Finance of America Reverse LLC ("**FOA**") (Claims Nos. 21347 and 60182) were reclassified as General Unsecured Claims. These claims asserted that (1) certain short form amendments extending the terms of certain prepetition contracts created new post-petition contracts giving rise to administrative expense liability, and, in the alternative, (2) the Debtors' post-petition conduct pursuant to prepetition contracts give rise to administrative expense liability. FOA filed a claim asserting $375,000 in administrative expense liability (*see* Claim No. 60182), which it subsequently increased to $14 million plus other amounts to be determined in its response to the Plan Administrator's objection (*see* ECF No. 2315). The Plan Administrator objected both to the status of the claims as administrative expense claims and to the amounts of the asserted claims and filed a reply to the responses filed by FOA (ECF No. 3076). A sufficiency hearing related to the classification of the FOA claims was held on January 28, 2021. In October 2021, the Bankruptcy Court issued an Order sustaining the Debtors' Objection to the FOA administrative claims and reclassified them to General Unsecured Claims. In November 2021, FOA filed a Notice of Appeal. On September 23, 2022, the District Court reversed and remanded the Bankruptcy Court order for further

In re: Ditech Holding Corporation, *et al.*                                          Case No. 19-10412 (JLG)
Reporting Period: April 1, 2023 to June 30, 2023
Federal Tax I.D. #13-39050486

proceedings. On March 28, 2023, the Wind Down Estates and FOA reached a settlement allowing the FOA administrative claim in the amount of $5 million in full and final resolution of the administrative claim. The settlement payment was made on March 31, 2023 and is reflected in the cash on hand as of June 30, 2023.

5. **Past and Future Distributions**

(A) **Past Distributions.** On July 16, 2020, as a result of claim resolutions in the third quarter 2020, the Board of Directors approved a distribution to the Term Lenders of record as of July 17, 2020 in the amount of $188 million. The distribution was made to the Prepetition Administrative Agent on or about August 7, 2020. On March 10, 2021, as a result of claim resolutions in the first quarter 2021, the Board of Directors approved a second distribution to the Term Lenders of record as of July 17, 2020 in the amount of $135 million. The distribution was made to the Prepetition Administrative Agent on or about March 12, 2021. On June 28, 2022, the Board of Directors approved a third distribution to the Term Lenders of record as of July 17, 2020 in the amount of $56 million. This distribution was made to the Prepetition Administrative Agent on or about July 7, 2022. Onn January 27, 2023, the Board of Directors approved a fourth distribution to the Term Lenders of record as of July 17, 2020 in the amount of $30 million. This distribution was made to the Prepetition Administrative Agent on or about February 8, 2023. On May 23, 2023, the Board of Directors approved a fifth distribution to the Term Lenders of record as of July 17, 2020 in the amount of $20 million. This distribution was made to the Prepetition Administrative Agent on or about June 1, 2023. Further, on July 7, 2023, the Board of Directors approved a sixth distribution to the Term Lenders of record as of July 17, 2020 in the amount of $17.5 million. This distribution was made to the Prepetition Administrative Agent on or about July 12, 2023. All distributions are made by the Wind Down Estates to the Prepetition Administrative Agent in its capacity as distribution agent under the Third Amended Plan. The Plan Administrator has no information related to the distribution amounts for each specific holder of interests in the Term Loan, and any inquiries related to individual distributions or amounts thereof should be directed to the Prepetition Agent who is solely responsible for the custody and distribution of funds to Term Lenders.

(B) **Future Distributions.** The Plan Administrator has made tremendous progress since the confirmation date, including the distribution to unit holders of $409 million, resolving all sales escrows which held back approximately 2/3rds of the sale proceeds, expunged approximately $3 billion of administrative, priority and secured claims, resolved numerous contested matters, completed the return of over $100 million to Borrowers related to unclaimed property, resolved over 700 lawsuits pending in courts other than the Bankruptcy Court, and asserted and collected approximately $56 million in tax refunds, including approximately $18 million in refunds not known at the time of the confirmation but discovered and sought by the sole efforts of the Plan Administrator. Despite all of the success to date, there remains open claims awaiting hearing or orders, appeals to the District Court related to orders issued related to claims, pending litigation outside of the Bankruptcy Court, further unclaimed property to distribute, surety funds to collect, and various other wind down tasks. The timing and outcome of resolution of these matters is uncertain and not within the control of the Plan Administrator. Consequently, the Plan Administrator is retaining reserves which it believes is prudent in order to complete the wind down of the Debtors without material risk of administrative insolvency.

Additionally, any cash not subject to a reserve is required to be withheld from distribution as a safeguard against the risk that delays in closing the case outside the control of the Plan Administrator may cause additional unforeseen expenses. The Plan Administrator reviews the reserves and excess cash continuously and as matters become resolved, and the timeline to complete the wind down becomes more certain, then the reserves and excess cash will be reviewed for prompt distribution.

6. **Cash on Hand.** As of June 30, 2023, the Wind Down Estates have cash on hand in the amount of approximately $51 million, excluding restricted cash in the amount of approximately $0.2 million. The cash on hand excludes cash held in certain mortgage related accounts and unclaimed property (*see* Note 12).

7. **Excluded Assets.** The Plan Administrator continues to pursue the collection of operational assets and assets excluded from the Purchase Agreements to offset the forecasted wind down costs, including amounts due under service agreements related to the Purchase Agreements, other accounts receivables, advances, prepaid deposits and collateral held by the issuers of surety bonds primarily related to operational licenses in the process of being surrendered by the Wind Down Estates. None of these amounts are reflected in the cash on hand as of June 30, 2023. The excluded assets as of June 30, 2023 consist of $15 million of cash collateral for certain surety bonds which supported the Wind Down Estates' historical mortgage operations, against which a $1 million reserve is recorded. The reserve for the surety bonds was reduced to $1 million from $5 million in the second quarter of 2022 to reflect that the Wind Down Estates ceased mortgage operations in connection with the sale of its mortgage operations and cessation of servicing. In the second quarter 2022 and the third quarter of 2022, the Wind Down Estates received $49.6 million and $6.5 million of IRS refunds, respectively. The issuers of the surety bonds, International Fidelity Insurance Company and Allegheny Casualty Company, continue to withhold the remaining surety cash collateral which is delaying receipt and distribution of the surety cash collateral.

8. **Excluded Liabilities.** The Plan Administrator continues to settle and satisfy operational liabilities and liabilities excluded from the Purchase Agreements including runoff of prior benefit plan expenses and employee liabilities, various accrued liabilities and accounts payable related to the servicing and originations operations and corporate overhead charges (the "**Excluded Liabilities**"). As the Wind Down Estates continue to incur certain residual charges and pass-through receipts, the amount of Excluded Liabilities could continue to fluctuate as the Wind Down Estates fix and settle costs related to those operational activities. As of June 30, 2023, the amount of Excluded Liabilities is estimated to be approximately $0.1 million, reduced since the Effective Date as liabilities were paid (which payments are reflected in the cash on hand as of June 30, 2023). The Excluded Liabilities as of June 30, 2023 are separate and in addition to the reserve for future costs and costs incurred but not yet paid set forth in Note 9 below.

9. **Wind Down Costs.** The Debtors, prior to confirmation and the Plan Administrator being selected, disclosed certain pre-confirmation budget estimates in the *Notice of Filing of Summary of Estimated Net Proceeds in Connection with the Stalking Horse Bids* dated June 18, 2019 (ECF No. 725) (the "**Pre-Confirmation Estimates**"). Actual results and future

19-10412-jlg    Doc 4820    Filed 07/20/23    Entered 07/20/23 15:50:22    Main Document
Pg 7 of 13

In re: Ditech Holding Corporation, *et al.*                                    Case No. 19-10412 (JLG)
                                                          Reporting Period: April 1, 2023 to June 30, 2023
                                                                          Federal Tax I.D. #13-39050486

estimates subsequent to the closing of the transactions contemplated in the Purchase Agreements have resulted in significant variances to the Pre-Confirmation Estimates. As disclosed in Note 4, the Plan Administrator resolved all remaining issues related to the Forward Stalking Horse Purchase Agreement, which included the collection of $25 million of indemnification escrow funds not contemplated in the Pre-Confirmation Estimates. Additionally, the Plan Administrator collected the entire escrow related to the Reverse Stalking Horse Purchase Agreement, including the receipt of purchase price adjustments of $17.9 million. Finally, the Plan Administrator collected tax refunds of approximately $56 million as a result of the carryback of tax losses and other refunds which were not previously anticipated or calculated in any recovery analyses. These favorable results are offset by additional expenditures and revised estimates of future expenditures, aged payables withheld from the payables system, related timing differences and the failure by the Debtors, prior to confirmation, to include adequate expense estimates related to several areas including IT costs, required audit fees and related expenses associated with the servicing operations and licenses, facility wind down costs, required data retention and destruction costs, costs associated with reconciliation and resolution of approximately $3 billion of filed secured, priority and administrative proofs of claim and other claims agent costs, legal expenses related to the prosecution of claims and collections of assets excluded from the Purchase Agreements, and other general wind down operating expenses. References to pre-confirmation wind down estimates are not comparable given the prior lack of budgeting of material matters, timing differences, the passage of time from when the original pre-confirmation budget was developed, and the use of more detailed methodologies employed by the Plan Administrators relative to forecasting expenses and liabilities.

Based on further analysis, as of March 31, 2020, the Plan Administrator established a reserve of approximately $133 million for the future costs related to the wind down, which included payroll, severance, termination of benefit plans, IT and data administration and destruction costs, document retention and destruction costs, facility lease terminations and related expenses, professional fees, audit and tax fees, U.S. Trustee fees, insurance premiums, operational runoff expenses, estimated SPA Claim payments, and other administrative expenses.

The total reserve as of March 31, 2023 was $28 million of known or expected future costs to be incurred during the wind down of the Wind Down Estates, plus an additional reserve of approximately $30 million for unanticipated costs and expenses. Additionally, the Plan Administrator exercises its business judgment relative to any excess cash not held in reserve to determine whether cash should be distributed or further held as a contingency related to unanticipated potential delays outside the control of the Plan Administrator. The total reserve is reduced from time to time from the expenditure of the actual wind down costs, and the additional reserve may fluctuate in relation to risks associated with changes in costs, increased duration of the wind down, resolution of disputed SPA claims, regulatory issues, tax consequences, and other factors that may be identified in the future. In the second quarter 2022, the Plan Administrator reclassified $4 million of reserve related to excluded assets to expected future costs to reflect the delay and increased costs in administration driven by claims resolution delays, ongoing litigation and other administrative costs. To date, $5.9 million of SPA claims have been allowed. The Plan Administrator expects the additional

19-10412-jlg    Doc 4820    Filed 07/20/23    Entered 07/20/23 15:50:22    Main Document
Pg 8 of 13

In re: Ditech Holding Corporation, *et al.*                                                           Case No. 19-10412 (JLG)
Reporting Period: April 1, 2023 to June 30, 2023
Federal Tax I.D. #13-39050486

allowance of certain claims, of which $5.9 million has been paid and reduced the cash on hand as of June 30, 2023. Although it is not possible to estimate the full extent of SPA claim amounts to be allowed as of the date hereof, it is currently anticipated that these claims would approximate $3 million, which is not reflected in the base $26 million of reserves disclosed below. Due to the uncertainties surrounding the duration of the case and the costs and efforts to resolve the remaining pending matters, there is no additional cash distributable at this time, other than the distributions already contemplated in Note 5. Note 4 provides further disclosures regarding Claims Administration and related potential material contingencies that could affect these estimates.

As of June 30, 2023, the $28 million reserve has been reduced by an aggregate of $2 million due to the payment of anticipated and budgeted wind down, operational or other costs, net of cash receipts (which cash spend is reflected in the cash on hand as of June 30, 2023). Therefore, the reserve balance is $26 million as of June 30, 2023 (excluding incurred but not paid expenses as described below), plus the additional reserve, which has been reduced to an amount of approximately $20 million for unanticipated costs and expenses. Additionally, as of June 30, 2023, there is approximately $1 million of incurred expenses that have not yet been paid, which will require the use of cash as such amounts are billed and paid.

In the third quarter of 2020, the Board of Directors revised and reduced their amended incentive plan (the "**Amended Revised Incentive Plan**") for the Plan Administrator. The Amended Revised Incentive Plan is based on the recovery to Term Lenders and the timing of the incentive payments is dependent upon achievement of certain recovery ranges. The timing of such incentive payments coincides with the payment of such recoveries to the Term Lenders. The recovery incentive award is payable to the three-member Plan Administrator (in the aggregate) and is calculated as a percentage of the incremental gross cash distributed above 25% to the Term Lenders. No incentive is payable for Term Lender recoveries below 25%. For Term Lender recoveries between 25% and 49%, the recovery incentive award percentage is 1.75%, and for Term Lender recoveries above 49%, the recovery incentive award percentage is 2.5%. No inferences should be drawn from the recovery percentage ranges shown as to the ultimate recovery for the Wind Down Estates, which remains subject to a variety of factors.

10. **Litigation Matters.** On February 21, 2020, the Plan Administrator filed a civil action in the U.S. District Court, Middle District of Florida, Tampa Division entitled *Ditech Financial, LLC v. AIG Specialty Insurance Company et al.* [8:20 cv 00409-WFJ-AEP] seeking $10 million in damages plus interest, fees, and other expenses related to breach of an insurance contract. The action relates to claims filed against AIG Specialty Insurance Company under a bankers' professional liability insurance policy purchased by the Wind Down Estates and Starr Indemnity & Liability Company under a related excess policy purchased by the Wind Down Estates that were denied. The Wind Down Estates have not forecasted or recorded any anticipated recoveries from this litigation. Summary judgment motions were filed and heard by the District Court. On September 20, 2021, the District Court granted summary judgment in favor of the insurers and on October 13, 2021, the Wind Down Estates filed a notice of appeal with the 11th Circuit Court of Appeals. Briefing of the appeal is completed and oral argument was held on October 25, 2022.

19-10412-jlg    Doc 4820    Filed 07/20/23    Entered 07/20/23 15:50:22    Main Document
Pg 9 of 13

In re: Ditech Holding Corporation, *et al.*                                    Case No. 19-10412 (JLG)
                                                           Reporting Period: April 1, 2023 to June 30, 2023
                                                                          Federal Tax I.D. #13-39050486

As of the Confirmation Date, the Wind Down Estates were named in over 800 lawsuits related to their ongoing mortgage business. The vast majority of the lawsuits are pre-petition matters which are stayed pursuant to the Confirmation Order, and in certain cases the litigation matters have been assumed by the subsequent servicer(s). The Plan Administrator has worked diligently to take steps in these Chapter 11 Cases to enforce the injunction provision of the Third Amended Plan as it relates to these litigation matters and has taken action as needed in the courts in which the matters were initially filed to enforce the applicable orders entered by the Bankruptcy Court. Additionally, certain lawsuits were filed post-petition and post-confirmation during the continued servicing of loans that were subject to Sale Transactions. Although the Plan Administrator does not expect these cases to present any material liability to the Wind Down Estates, the dismissal or resolution of these cases will incur additional time and expenses not previously anticipated or budgeted. Since the Effective Date, the Plan Administrator has reduced the case count to 13 cases, although periodically new cases are filed to which the Wind Down Estates are required to respond. The Plan Administrator sought relief in the Bankruptcy Court to enjoin such cases and circumstances may require the Plan Administrator to take additional action in courts in which the cases are pending.

11. **Plan Administration Updates.**

(A) *Data Management and Records Retention*. In May 2020, Ditech's document data box count in storage was 147,925. During the course of the third quarter of 2020, the Plan Administrator reduced the box inventory related to aged or immaterial document data down to 95,163, which resulted in an annual savings of $109,000. As of December 31, 2022, the document box count storage was approximately 94,331. As discussed below, the Plan Administrator is in the process of abandoning and disposing the remaining boxed document material and electronic data, which includes approximately 135,000 boxes in total. The records and data retention costs incurred and the personnel costs to maintain such data is approximately $100,000 per month. The Plan Administrator filed a motion with the Bankruptcy Court on April 4, 2022 seeking authorization to not take any further action or incur further liability regarding all electronic data related to the sold mortgages stored on servers that were sold and transferred to the Forward Buyer (the "**Sold Servers**") upon the expiration of the Wind Down Estates' access to the Sold Servers, which expired in October 2022. The Court issued an order approving the motion on June 23, 2022 (ECF No. 4131). This order has reduced total costs by approximately $50,000 per month. The Plan Administrator filed a *Motion of the Wind Down Estates for Entry of an Order in Aid of Execution of Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors (I) Authorizing the Wind Down Estates to (A) Abandon and Dispose of Obsolete Physical Records and (B) Not Take Further Action or Incur Further Liability to Maintain Access to Additional Obsolete Electronic Records, and (II) Granting Related Relief* on November 2, 2022 (*see* ECF No. 4350) seeking to dispose of certain physical records and terminate access to additional electronic records. The Bankruptcy Court issued an order approving the motion on May 24, 2023 (see ECF No. 4763). The Plan Administrator is in the process of taking the necessary actions to abandon and dispose of the records as approved in the order.

19-10412-jlg    Doc 4820    Filed 07/20/23    Entered 07/20/23 15:50:22    Main Document
Pg 10 of 13

In re: Ditech Holding Corporation, *et al.*  Case No. 19-10412 (JLG)
Reporting Period: April 1, 2023 to June 30, 2023
Federal Tax I.D. #13-39050486

(B) *Title/Lien Inquiries*. Since the Effective Date, the Plan Administrator has received and continues to receive inquiries from Borrowers, successor servicers, and third parties or their representatives who seek to resolve issues with title and liens that have merged in the chain of title to the properties in question, or otherwise seek to release liens on their properties that were not previously released (each a "**Title/Lien Inquiry**"). Pursuant to the Third Amended Plan, the Debtors' businesses were sold or transferred, and accordingly the mortgages owned or serviced by the Debtors were also sold or transferred, and the sold mortgages are now being serviced by other parties. The Wind Down Estates thus do not have any remaining interest in these mortgages. The continued attention to responding to Title/Lien Inquiries was costly and no longer feasible given where the Wind Down Estates are in the late stage of winding down these cases. Therefore, the Plan Administrator filed a motion with the Bankruptcy Court to release the Wind Down Estates' liens on property owned by borrowers, clarifying that third parties are permitted to commence and continue non-monetary quiet title actions, and finding that the Wind Down Estates and Plan Administrator need take no further action to respond to Title/Lien Inquiries (*see* ECF No. 3565). The Bankruptcy Court approved the motion on September 7, 2021 (*see* ECF No. 3673).

12. **Unclaimed Property.** On September 30, 2020, the Plan Administrator filed the *Motion of Plan Administrator for Entry of Order in Aid of Execution of Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors (I) Authorizing Plan Administrator to Return Unclaimed Borrower Funds to Ascertained Borrowers, if Any, (II) Establishing Procedures for Remaining Borrowers to Submit Requests for Return of Unclaimed Borrower Funds, (III) Establishing Special Deadline After Which Wind Down Estates Will Cease Efforts to Locate Borrowers and to Return Unclaimed Borrower Funds, and (IV) Granting Related Relief* (ECF No. 2874) (the "**Unclaimed Funds Motion**"), related to the proposed distribution under the Third Amended Plan of certain borrower funds in the pre-petition and post-petition periods. The Unclaimed Funds Motion sets forth a process pursuant to which former Ditech borrowers may ascertain whether the Wind Down Estates hold any funds which were previously issued to borrowers but remain uncashed. The Unclaimed Funds Motion also sets forth a process to receive such funds, including by logging on to the website UnclaimedProperty.Ditech.com to provide the information necessary for a borrower to claim such funds. A hearing on the Unclaimed Funds Motion was held on December 17, 2020, and the Court entered an order granting the relief sought therein, subject to certain reporting and meet and confer obligations, on January 12, 2021 (*see* ECF No. 3159). On August 9, 2021, the Court entered an order to extend the time period to return monies to former Borrowers to January 7, 2022 (*see* ECF No. 3602). On December 22, 2021, the court entered an order to extend the time period to return monies to former Borrowers to July 6, 2022 (*see* ECF No. 3830). As of April 30, 2022, the Plan Administrator had distributed $92.7 million of $112.1 million in Unclaimed Funds to former Borrowers (*see* ECF No. 4040). On September 27, 2021, the Court entered an order approving voluntary and non-binding mediation to resolve disputes with respect to the administration of any remaining Unclaimed Borrower Funds (*see* ECF No. 3708). During the mediation process the mediator, Former US District Court Judge Joseph Farnan, conducted several group and individual sessions with the participants and a settlement agreement (the "**Unclaimed Funds Settlement Agreement**") was reached. On April 26, 2022, the Plan Administrator filed the

19-10412-jlg    Doc 4820    Filed 07/20/23    Entered 07/20/23 15:50:22    Main Document
Pg 11 of 13

In re: Ditech Holding Corporation, *et al.*  Case No. 19-10412 (JLG)
Reporting Period: April 1, 2023 to June 30, 2023
Federal Tax I.D. #13-39050486

*Motion of Plan Administrator, on Behalf of Wind Down Estates, for Entry of Order (I) Authorizing and Approving Settlement Agreement Between Wind Down Estates and Participating State Agencies Resolving Disputes Regarding Administration of Unclaimed Borrower Funds and (II) Granting Related Relief* (ECF No. 4023) (the "**Unclaimed Funds Settlement Motion**") seeking approval of the Unclaimed Funds Settlement Agreement and other related matters. On May 24, 2022, the Plan Administrator filed an amended version of the Unclaimed Funds Settlement Agreement (the "**Amended Unclaimed Funds Settlement Agreement**") related to the Unclaimed Funds Settlement Motion (ECF No. 4069). On June 8, 2022, the Court entered an order approving the Unclaimed Funds Settlement Motion, including approval of the Amended Unclaimed Funds Settlement Agreement (ECF No. 4110) (the "**Unclaimed Funds Settlement Order**"). The Wind Down Estates have completed the steps necessary to implement and comply with the terms of the Amended Unclaimed Funds Settlement Agreement and Unclaimed Funds Settlement Order. The Plan Administrator completed the initial distribution to all states in the third quarter of 2022. The final distribution was sent in the fourth quarter of 2022.

13. **Reservation of Rights.** Nothing contained in this Quarterly Report shall constitute a waiver of any rights of the Wind Down Estates or an admission with respect to these Chapter 11 Cases, including, but not limited to, matters involving objections to claims, allocation of sale proceeds among the Wind Down Estates, enforcement of the Third Amended Plan confirmed by the Bankruptcy Court, and/or causes of action arising under the Bankruptcy Code or any other relevant applicable laws to recover assets or avoid transfers.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re: DITECH HOLDING CORPORATION, *et al.*         Case No.: 19-10412-JLG
Reporting Period April 1, 2023 to June 30, 2023

**POST-CONFIRMATION QUARTERLY OPERATING REPORT**

This Quarterly Report has been prepared solely for the purpose of complying with the quarterly reporting requirements applicable in these chapter 11 cases. The Quarterly Report is in a format acceptable to the U.S. Trustee. The financial information contained herein is limited in scope and covers a limited time period. Moreover, such information is preliminary and unaudited, and is not prepared in accordance with GAAP.

I declare under penalty of perjury that this report and the attached documents are true and correct to the best of my knowledge and belief.

_____         July 20, 2023
Signature of Authorized Individual*        Date

John J. Ray, III, President
Printed Name of Authorized Individual

*Authorized individual must be an officer, director or shareholder if debtor is a corporation.

In re: DITECH HOLDING CORPORATION, et al.

Case No.: 19-10412-JLG
Reporting Period April 1, 2023 to June 30, 2023

| DITECH HOLDING CORPORATION, *et al.* | | | |
|---|---|---|---|
| | Yes | No | Comments |
| Have any assets been sold or transferred outside the normal course of business, or outside the plan, during this reporting period? | | X | |
| Are any post-confirmation sales or payroll taxes past due? | | X | |
| Are any amounts owed to post-confirmation creditors/vendors over 90 days delinquent? | X | | During the reporting period, the Debtors were current on postpetition payables, taking into consideration pending credits, adjustments, and disputes that arise in the ordinary course of business. |
| Is the Debtor delinquent on any post-confirmation plan payments? | | X | |

| INSURANCE INFORMATION | | | |
|---|---|---|---|
| | Yes | No | Comments |
| Are real and personal property, vehicle/auto, general liability, fire, theft, worker's compensation, and other necessary insurance coverages in effect? | X | | |
| Are all premium payments current? | X | | |

| SCHEDULE OF CASH DISBURSEMENTS ($) [1] | | | |
|---|---|---|---|
| Case No. | Debtor Entity Name: | Cash Disbursements | UST Quarterly Fees |
| 19-10412 | Ditech Holding Corporation | 23,396,888 | 187,175 |
| **Totals:** | | $ 23,396,888 | $ 187,175 |

**Footnotes**

1) Ditech Financial LLC, as a former mortgage servicer, continues to periodically receives funds on behalf of former borrowers and makes payments to successor mortgage servicers with monies originally funded by the borrower. These payments solely represent "pass through" payments and are not cash expenditures of Ditech Financial LLC. The Wind Down Estates have excluded such "pass through" payments from the reported disbursements.

2) On February 22, 2022, the Bankruptcy Court entered a final decree closing the Chapter 11 cases of all of the Reorganized Debtors except Ditech Holding Corporation (ECF No. 3903). All payments of the Wind Down Estates are reported as payments of Ditech Holding Corporation.