UNITED STATES BANKRUPTCY COURT                    NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
In re:                                              :
                                                    :    Case No. 19-10412 (JLG)
                                                    :    Chapter 11
Ditech Holding Corporation, *et al.*,               :
                                                    :
                                                    :    (Jointly Administered)
                                    Debtors.[1]     :
------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS TRUSTEE'S FORTY-NINTH OMNIBUS OBJECTION TO PROOF OF CLAIM (INSUFFICIENT LEGAL BASIS UNSECURED CREDITOR CLAIMS) FILED BY JACQUELINE McCOY

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Representative*
1155 Avenue of the Americas
New York, New York 10022
By:    Richard Levin

Jacqueline McCoy[2]
146 Pecan Row Lane
Alexandria, Louisiana 71303

FINE LEGAL SERVICES, LLC
*Attorneys for Claimant*
4615 Parliament Drive Suite 202
Alexandria, Louisiana 71303
By:    Jeremy Cedars

---

[1]    The Debtors' *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1326, was confirmed, which created the Wind Down Estates. The Wind Down Estates, along with the last four digits of each of their federal tax identification numbers, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

[2]    Ms. McCoy acted pro se in filing her Claim and Response to the Consumer Claims Trustee's Objection to the Claim. At the Sufficiency Hearing she was represented by Mr. Jeremy Cedars. Ms. McCoy did not appear at that hearing.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction[3]

On May 31, 2019, the Claimant, pro se, filed proof of claim number 1999 (the "Claim") as

an unsecured claim in the amount of $250,000.00 against Ditech Holding Corporation ("Ditech").

Claim at 1.  The Claimant lists the basis of her claim as "RESP[A] violations, loss of credit

worthiness . . . see attached suit."  *Id.*  As support for the Claim, she attaches a complaint (the

"Complaint") that she filed against "Ditech," "TIAA," and "Everhome" on October 5, 2018, in the

United States District Court for the Western District of Louisiana (the "District Court Action").[4]

On October 17, 2021, the Consumer Claims Trustee filed her Forty-Ninth Omnibus Objection (the

"Objection").[5]  In it, she objects to the Claim on the grounds that the Claimant fails to state a legal

claim for which relief can be granted.  Objection, Ex. A (List of Claims) at 3.  On or around

November 10, 2021, the Claimant, pro se, provided an informal response to the Consumer Claims

Trustee.  On June 30, 2023, the Trustee filed the informal response (the "Response")[6] with the

---

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objections, Claims Procedures Order, and Third Amended Plan, as applicable.  References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412.

[4]    *Jacqueline McCoy Hamilton v. Ditech Financial LLC*, No. 18-cv-01333 (W.D. La. filed Oct. 9, 2018).  The docket in the District Court Action is annexed to the Reply as Exhibit D.  The Complaint is annexed to the Reply as Exhibit C.  The Court can properly take judicial notice of matters of public record.  *See Sutton ex rel. Rose v Wachovia Sec., LLC*, 208 F. App'x 27, 30 (2d Cir. 2006) (summary order) (holding that filings and orders in other courts "are undisputably matters of public record"); *Ferrari v. County of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*"); *Kaplan v Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) ("[Courts] must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

[5]    *Consumer Claims Trustee's Forty-Ninth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims)*, ECF No. 3736.

[6]    *Response of Jacqueline McCoy to the Forty-Ninth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims) (Claim No. 1999)*, ECF 4796.

Court.  On July 11, 2023, the Consumer Claims Trustee filed a reply (the "Reply")[7] in support of her Objection.

Pursuant to the Claims Procedures Order,[8] the filing of the Response caused an adjournment of the Objection so that the Court could conduct a Sufficiency Hearing on the Claim. Under that order, the legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[9]  Claims Procedures Order ¶ 3(iv)(a).  On July 27, 2023, in accordance with the Claims Procedures Order, the Court conducted a Sufficiency Hearing on the Claim.  The Consumer Claims Trustee and the Claimant appeared through their respective counsel, and the Court heard arguments on the Objection.

The Court has reviewed the Claim, Objection, Response, and Reply, including all documents submitted in support thereof, and has considered the arguments made by the parties in support of their respective positions.  As explained below, accepting all the well-pleaded factual allegations asserted by the Claimant in support of the Claim as true, drawing all reasonable inferences in the Claimant's favor, and liberally construing the Claim and Response to raise the strongest arguments that they suggest, the Claim fails to state plausible claims for relief against Ditech.  Accordingly, the Court sustains the Objection and disallows and expunges the Claim.

---

[7]    *Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee's Forty-Ninth Omnibus Objection with Respect to the Claim of Jacqueline McCoy (1999)*, ECF No. 4805.

[8]    *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

[9]    Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  In filing the Objection, the Consumer Claims Trustee initiated a contested matter.  *See Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs., Inc.)*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter").  Bankruptcy Rule 9014 governs contested matters.  The rule does not explicitly provide for the application of Bankruptcy Rule 7012.  However, Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply."  Fed. R. Bankr. P. 9014.  The Court does so here in the Claims Procedures Order.

### Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background

### The Mortgage Loan

On February 2, 2009, the Claimant executed a promissory note (the "Note")[10] in favor of New South Federal Savings Bank ("New South Federal") in the amount of $185,000.00. The Note was secured by a mortgage (the "Mortgage",[11] and together with the Note, the "Mortgage Loan") on the property located at 146 Pecan Row Lane, Alexandria, Louisiana 71303 (the "Property").

### The Chapter 11 Cases

On February 11, 2019, Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates (the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, at 5:00 p.m. (prevailing Eastern Time) as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[12] Thereafter, the Court extended the General

---

[10]   The Note is annexed to the Reply as Exhibit A.

[11]   The Mortgage is annexed to the Reply as Exhibit B.

[12]   *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

Bar Date for consumer borrowers, twice, ultimately setting the date as June 3, 2019, at 5:00 p.m. (prevailing Eastern Time).[13]

On September 26, 2019, the Debtors confirmed their Third Amended Plan,[14] and on September 30, 2019, that plan became effective.[15]  The Consumer Claims Trustee is a fiduciary appointed under the Third Amended Plan who is responsible for the reconciliation and resolution of Consumer Creditor Claims and distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims in accordance with the Third Amended Plan.  *See id.* art. I, § 1.41.  The Consumer Claims Trustee has the exclusive authority to object to all Consumer Creditor Claims.  *See id.* art. VII, § 7.1.

**The Claims Procedures Order**

On November 19, 2019, the Court entered the Claims Procedures Order.  Under that order, the Consumer Claims Trustee is authorized to file Omnibus Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order.  *See* Claims Procedures Order ¶ 2(i)(a)–(h).  A properly filed and served response to an objection gives rise to a "Contested Claim" that will be resolved at a Claim Hearing.  *Id.* ¶ 3(iv).  The Consumer Claims Trustee has the option of scheduling the Claim Hearing as either a "Merits Hearing" or a "Sufficiency Hearing."  *Id.* ¶ 3(iv)(a), (b).  A "Merits Hearing" is an evidentiary hearing on the merits of a

---

[13]    *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[14]    *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1404.

[15]    *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

Contested Claim. A "Sufficiency Hearing" is a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. The legal standard of review that the Court will apply at a Sufficiency Hearing is equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

### **The Claim**

On May 31, 2019, the Claimant filed her Claim herein asserting an unsecured claim in the amount of $250,000.00 against Ditech. Claim at 1. The Claimant lists the basis of her claim as "RESP[A] violations, loss of credit worthiness . . . see attached suit." *Id*. She attaches the Complaint that she filed in the District Court Action. The Complaint lists twelve items in support of her claims for damages and equitable relief. The Consumer Claims Trustee construes the Complaint as asserting the following causes of action: (1) Fraud, (2) Breach of Fiduciary Duty, (3) Negligent Misrepresentation, (4) Violations of the Real Estate Settlement Procedures Act ("RESPA"), (5) Violations of the Fair Credit Reporting Act ("FCRA"), and (6) Intentional Infliction of Emotional Distress. Reply ¶ 3 (citing Claim at 8–9). She notes that the Claimant also complains of (1) deterioration and damage to the Property due to an alleged delay in distribution of insurance proceeds, (2) "excessive collection tactics," (3) dual tracking and fraudulent practices in the loan modification process, (4) inaccurate billing statements, (5) the failure of Ditech to advance property taxes, and (6) misapplication of payments. *Id*. Claimant requests equitable relief to prevent foreclosure proceedings. *Id*. The gravamen of the Claim is that Claimant has suffered financial damage occasioned by Ditech's denial of her loan modification application and loan servicing defaults.

According to the Claimant, in February 2017, she applied for a loan modification. *Id.* at 16. She says that Ditech advised her that it would process the loan modification application within thirty days, but she states that it took several months for Ditech to process the application. She attributes the delay to Ditech's repeated requests for the same information from her. *Id.* at 17. In August 2017, Ditech denied the loan modification due to the Claimant's low credit score. *Id.* at 16. In September 2017, Ditech informed her that she needed to pay $13,808.00 in order to reinstate the loan. *Id.* at 17.[16]

In April 2017, the Claimant's Property sustained storm damage. *Id.* She alleges that Ditech delayed in distributing her insurance proceeds and, as a consequence, she was unable to have necessary repairs made to the Property. The repairs were incomplete. *Id.* She further alleges that Ditech's delay in releasing the proceeds was an intentional attempt to intimidate her. *Id.* at 24.

The Claimant asserts that Ditech misreported the balance on her account for two consecutive months beginning in or about September 2017. *Id.* at 16. She also broadly complains about inaccurate credit reporting by Ditech's predecessor servicer, Everhome Mortgage Company ("Everhome"). *Id.* at 20.

In a letter (attached to the Complaint) from the Claimant to Ditech, dated May 15, 2019, the Claimant asserts that she was a "victim of the cruelty of intimidation, manipulation, loss mitigation fraud, predatory, deceitful practices, prolonged 'in review' status, to reposition to loss of my home, by Ditech." *Id.* at 22. She contends that Ditech harassed her by (i) making numerous telephone calls to her; (ii) taking photographs of her home; and (iii) posting notices on her front

---

[16]    The Claimant alleges that, in 2018, Ditech preapproved her for a loan modification. Claim at 14. She says she learned of this when she called Ditech to request that a loan modification application be sent to her. *Id.* She maintains that Ditech advised her that it counted her then most recent Mortgage payment as the first payment in the loan modification trial period. Claim at 17.

door requesting that she contact Ditech.  *Id.* at 22, 24.  She says that the alleged harassment caused

her to experience multiple health issues.  *Id.* at 24.

**The Objection**

On October 17, 2021, the Consumer Claims Trustee filed her Objection to the Claim.  In

it, she challenges the Claim on the ground that it fails to state a legal claim for which relief can be

granted.  Objection, Ex. A (List of Claims) at 3.

**The Response**

The Response largely mirrors the Claim, although the Claimant provides additional details

concerning her 2017 loan modification application.  She contends that, after she filed the

application in January 2017, she received the packet from Ditech containing requests for

information that she completed and mailed back in February 2017.  Response at 5.  She says

thereafter, Ditech notified her by letter that it would take it thirty days to review that packet.  *Id.*

She states that thereafter, she received a letter stating that her package was incomplete and that she

would need to send in additional documentation.  *Id.*  She contends that for the next nine months

Ditech continually marked her packet as incomplete and advised her that she would have to provide

more information.  *Id.*  She says that Ditech eventually denied the loan modification due "to time

factors and credit score."  *Id.* at 5–6.

The Claimant maintains that following Ditech's denial of her loan modification in 2017,

she received conflicting information about the payment amount necessary to cure her default.  *Id.*

at 6.  She states that on September 7, 2017, she received notice that the cure amount was

$14,747.12 and that the next day she verified that the amount due was $13,808.00.  *Id.*  She

contends that on September 8, 2017, she purchased a cashier's check in that amount.  *Id.*  The

Claimant does not provide a formal notice to cure or an explanation as to why the balance allegedly

decreased.  The Claimant does not allege that she made any payments between the issuance of the notice to cure and her verification of the amount due.  She alleges that a billing statement shows a payment of $1308.00 posted to her account on September 13, 2017, but she does not attach the billing statement.  *Id.*  She asserts that her October 2017 billing statement showed an amount due of $3,901.02, but she does not provide that statement.  *Id.*  She seems to suggest that the October billing statement did not credit her for the $13,808 payment.  *Id.*

The Claimant provides two billing statements for the month of July 2017.  One is dated July 17, 2017.  Response at 12.  The other is dated July 13, 2017.  *Id.* at 13.  She correctly contends that the July 13, 2017 statement shows a $1,408.68 payment posted to her account that does not appear on the July 17, 2017 statement.  *Id.* at 11.  The Claimant attaches a Validation of Debt Notice from Shellpoint Mortgage Servicing, dated December 16, 2019.  Response at 14.  She does not explain the relevance of this notice.

## The District Court Action

On October 9, 2018, the Claimant filed the Complaint in the District Court Action.  *See* Reply, Ex. D at docket entry 1.  On December 21, 2018, Ditech filed a motion to dismiss for failure to state a claim for relief.  *Id.* at docket entry 6.  On February 26, 2019, prior to a ruling on Ditech's motion, Ditech filed a suggestion of bankruptcy.  *Id.* at docket entry 17.  On January 27, 2020, the parties jointly filed a motion to dismiss, which the District Court granted on January 28, 2020.  *Id.* at docket entries 25–26.

## The Reply

On July 11, 2023, the Consumer Claims Trustee filed her Reply in support of her Objection, asserting that the Claim fails to meet the pleading standards under Rule 8 of Federal

Rules of Civil Procedure ("Rule 8")[17] and that the Claim fails to assert facts sufficient to state a claim for relief under Rule 12(b)(6).

<u>**Applicable Legal Principles**</u>

Under section 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  The filing of a proof of claim constitutes "prima facie evidence of the validity and amount of a claim."  Fed. R. Bankr. P. 3001(f).  Section 502(b) prescribes nine categories of claims that will be disallowed, including that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."  11 U.S.C. § 502(b)(1).  If an objection filed pursuant to section 502(b)(1) refutes at least one of the claim's essential allegations, the claimant has the burden to demonstrate the validity of the claim.  *See, e.g.*, *Rozier v. Rescap Borrower Claims Tr. (In re Residential Cap., LLC)*, No. 15-cv-3248, 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 11-cv-8444, 2012 WL 1886755, at *3 (S.D.N.Y. May 12, 2012).

In assessing the merits of the Objection, the Court must consider the sufficiency of the allegations in support of the Claim in light of the pleading requirements established by Rules 8(a) and 12(b)(6) and determine whether Claimant has stated a claim for relief against Ditech.  The Consumer Claims Trustee asserts that the Court should disallow and expunge the Claim because it does not satisfy the pleading threshold of Rule 8(a) and does not state a claim upon which relief can be granted as required by Rule 12(b)(6).

---

[17]    Rule 8 is incorporated herein pursuant to Bankruptcy Rule 7008.

The function of the pleading "is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1998). Rule 8(a) mandates that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, to meet that standard, a pleading must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8(a) does not require "'detailed factual allegations', but it demands more than an unadorned, the defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "When a complaint does not comply with the requirement that it be short and plain, the court has the power . . . in response to a motion by the defendant . . . to dismiss the complaint." *Salahuddin*, 861 F.2d at 42 (2d Cir. 1998). A court may dismiss a complaint under Rule 8(a) that lacks sufficient details. *Samuel v. Bellevue Hosp. Cent.*, No. 07-CV-6321, 2008 WL 3895575, at *3–4 (S.D.N.Y. Aug. 22, 2008) (dismissing claims pleaded with insufficient detail pursuant to Rule 8(a)); *Jaffe v. Cap. One Bank*, No. 09-CV-4106, 2010 WL 691639, at *5 (S.D.N.Y. Mar. 1, 2010) (finding that the complaint does not meet Rule 8(a) standards where it presented "unadorned, the defendant-unlawfully-harmed-me accusations").

Under Rule 12(b)(6), a claim may be dismissed due to a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To satisfy Rule 12(b)(6), the "pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). In considering whether that standard is met for a particular claim, the Court must assume the truth of all material facts alleged in support of the claim and draw all reasonable inferences in the claimant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, the Court "need not accord 'legal

11

conclusions, deductions or opinions that are couched as factual allegations . . . a presumption of

truthfulness.'" *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 591 (S.D.N.Y. 2008) (quoting

*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)).  In short, "[i]n ruling on a

motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal

feasibility of the complaint, not to assay the weight of the evidence which might be offered in

support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting

*Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)).  Where a claimant is proceeding pro se, the

Court will construe the claim liberally, although the claim must nonetheless be supported by

specific and detailed factual allegations that provide a fair understanding for the basis of the claim

and the legal grounds for recovery against a debtor.  *Kimber v. GMAC Mortg., LLC (In re*

*Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (citing *Iwachiw v. N.Y.C. Bd.*

*of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005) (summary order)); *see also McLeod v. Jewish*

*Guild for the Blind*, 864 F.3d 154, 156–57 (2d Cir. 2017) (discussing the policy considerations

undergirding liberal construction of pro se litigants' filings).

### Discussion

Recently, in *In re Golden*, Judge Stong summarized the Supreme Court's "two-step

approach" for courts to follow in deciding a motion to dismiss, as follows:

> First, a court should "identify[ ] pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.
> "While legal conclusions can provide the framework of a complaint, they must be
> supported by factual allegations." *Id.*  Thus, "[t]hreadbare recitals of the elements
> of a cause of action, supported by mere conclusory statements, do not suffice."
> *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Second, "[w]hen there
> are well-pleaded factual allegations, a court should assume their veracity and then
> determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556
> U.S. at 679.  A claim is plausible "when the plaintiff pleads factual content that
> allows the court to draw the reasonable inference that the defendant is liable for the
> misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

*In re Golden*, 596 B.R. 239, 256 (Bankr. E.D.N.Y. 2019) (alteration in original). The Court will apply that approach in resolving the Objection.

The Consumer Claims Trustee asserts that the Court should expunge the Claim because neither the Claim nor the Response meet the minimal pleading standards under Rule 8. Reply ¶¶ 28–29. The Complaint asserts six causes of action and several broad grievances not as easily identifiable as a specific cause of action. Claim at 8–9. Generally, the Claim and Response include a list of grievances against Ditech without context and factual support necessary to create a cohesive whole that describes the claim. Half of the Complaint lists items that cannot be contained within a cause of action. Where the Claimant purports to identify a cause of action, she fails to plead any of the legal elements of the action, much less to anchor the elements to facts. "In accordance with the liberal pleading standards of Rule 8, 'a plaintiff must disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369, 384 (Bankr. S.D.N.Y. 2007) (quoting *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir. 2000)). The Claim and Response fail to satisfy that standard. There is insufficient detail in those documents for the Consumer Claims Trustee to ascertain and defend against the Claim asserted against the Debtors. The Court finds that the Claim and Response, either separately or collectively, do not meet the pleading requirements of Rule 8(a) because the allegations contained within are vague, confusing, and difficult to understand. That is grounds for disallowing and expunging the Claim. *See Phipps v. City of New York*, No. 17-cv-6603, 2019 WL 4274210, at *2 (S.D.N.Y. Sept. 10, 2019) (dismissing a complaint under Rule 8(a) that was "convoluted, confusing, and difficult to comprehend"); *Djangmah v. Magafara*, No. 16-cv-6136, 2018 WL 4080346, at *3 (S.D.N.Y. Aug. 26, 2018) (dismissing a complaint under Rule

8(a) that was "so confusing, ambiguous and incomprehensible that it does not place Defendants on fair notice of Plaintiff's claims").

Moreover, as explained below, even the most generous review of the Response and Claim demonstrates that the Claim fails to include factual allegations that provide a fair explanation for the basis of the claim and legal grounds for recovery. Accordingly, the Claim runs afoul of Rule 12(b)(6).

**Fraud**

The Louisiana Civil Code defines fraud as a "misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." LA. CIV. CODE. ANN. art. 1953. The elements of fraud are "a misrepresentation of material facts made with the intent to deceive where there was reasonable and justifiable reliance by the plaintiff and resulting injury." *Dunlap v. Empire Trading Grp.*, 331 So. 3d 932, 935 (La. Ct. App. 2021). The party asserting fraud has the burden of proof. *Id.* Central to the Claim is Claimant's assertion that Ditech mishandled her loan modification application and that she suffered damages as a consequence. She alleges "Loan Modification Fraud (mortgage companies receives [sic] for Loan modifictations [sic] and loss mitigation) several packages sent when not requested or needed toenhance [sic] their numbers." Claim at 11. She refers to the acts alternately as "[f]raudulent practices via Home Loan Modification/Dual Tracking/Double Standard" and "loss mitigation fraud". Claim at 7, 17.

She alleges that in January 2017, she contacted Ditech, and in February 2017, she received and completed a loan modification packet. Response at 1. She explains that for the next nine months she was repeatedly asked for additional information to complete her loan modification packet. *Id.* Ultimately, she was denied a loan modification based on her credit score and the

14

amount of time it took to complete the modification request. *Id.* at 2. In her narrative, the Claimant fails to identify a misrepresentation of material fact.

The Claimant also does not allege facts demonstrating that Ditech intended to deceive her. She makes conclusory statements such as "Dual Tracking and Double Standard acts committed to suit their needs" or "Unauthorized Loan Modification (HAMP) active in Trial period. Batch Approval." Response at 16–17. She also states in relation to the Debtors that "Its [sic] routine and their MO to request more info from an application to buy time." *Id.* at 7. She asserts that, when she spoke with a representative from Ditech in February 2017, the representative told her that she did not need to make a payment and that "it will be in the modification." *Id.* at 5. She alleges that the representative stated, under his breath, "yet another one here we go again, such an immoral company taking advantage of consumers." *Id.* The Claimant's subjective belief along with these allegations are insufficient to plead an intent to deceive.

When pleading scienter, a party "must allege facts that give rise to a *strong* inference of fraudulent intent." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004) (quoting *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999)). The Claimant may meet this standard by "(1) alleging facts to show that defendant[] had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *PetEdge, Inc. v. Garg*, No. 15-cv-9606, 2017 WL 564088, at *9 (S.D.N.Y. Feb. 10, 2017) (alteration in original) (quoting *S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996)). "To qualify as 'strong,' 'the inference of scienter must be more than merely "reasonable" or "permissible"—it must be cogent and compelling, thus strong in light of the other explanations.'" *O'Connell v. Arthur Andersen, LLP (In re AlphaStar Ins. Grp. Ltd.)*, 383 B.R. 231, 257 (Bankr. S.D.N.Y. 2008) (quoting *Tellabs v.*

*Makor Issues & Rts.*, 551 U.S. 308, 324 (2007)).  The Claimant's allegations of Ditech's intent are

neither cogent nor compelling.  She provides no support to suggest that she had, in fact, supplied

all the necessary information for Ditech to process the loan modification application in February

2017.  At best, she may have received different information from different customer service

representatives; however, differing accounts do not rise to the level of strong circumstantial

evidence of conscious misbehavior or recklessness.

Additionally, the billing statements annexed to the Claim show that the Claimant made no

Mortgage payments between January 2017 and June 2017.  Both the statements show a total past

due amount of $12,491.86.  Response at 8–9.  Under the Mortgage, Ditech was entitled to

accelerate the loan following any default and to pursue foreclosure in the absence of reinstatement.

Mortgage ¶¶ 23–23.  Instead of initiating foreclosure proceedings against the Claimant, Ditech

attempted to modify the terms of the loan, which would have permitted the Claimant to remain in

her home.  The Claimant has failed to demonstrate how Ditech obtained an unjust advantage by

eventually denying her loan modification and forcing her to reinstate her Mortgage.  She does

challenge the arrears on her account as invalid, and she acknowledges that she was in the process

of a loan modification starting in January 2017.

The Claimant also fails to plead fraud under the heightened standard of Rule 9(b) of the

Federal Rules of Civil Procedure ("Rule 9(b)").[18]  *See Romabach v. Chang*, 355 F.3d 164, 167 (2d

Cir. 2004) ("Rule 9(b) applies when the claim sounds in fraud").  This Rule requires that "[i]n

alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud

or mistake."  Fed. R. Civ. P. 9(b).  Pleading fraud with particularity includes alleging facts

sufficient to support "the who, what, when, where, and how: the first paragraph of any newspaper

---

[18]    Rule 9 is incorporated herein pursuant to Bankruptcy Rule 7009.

story." *Silvester v. Selene Fin., LP*, No. 18-cv-02425, 2021 WL 861080, at *2 (S.D.N.Y. Mar. 8, 2021) (quoting *Backus v. U3 Advisors, Inc.*, No. 16-cv-8990, 2017 WL 3600430, at *9 (S.D.N.Y. Aug. 18, 2017)).  Rule 9(b) applies to state law claims, such as fraud, brought in a federal court. *See Fisher v. APP Pharms., LLC*, No. 08-cv-11047, 2011 WL 13266819, at *6 n.2 (S.D.N.Y. Feb 28, 2011).  The Claimant has not met the heightened pleading standards under Rule 9.

The Claimant has failed to state a claim for fraud against Ditech.

### Breach of Fiduciary Duty

In Louisiana, "[t]he elements of a breach-of-fiduciary-duty claim are: '(1) a breach by a fiduciary of an obligation to another; (2) a knowing collusion or participation in the breach by the fiduciary; and (3) damages suffered by another as a result of the breach.'"  *Satterfeal v LoanCare, LLC*, No. 18-1021, 2019 WL 5777379, at *4 (M.D. La. Nov. 5, 2019) (quoting *Brockman v. Salt Lake Farm P'ship*, 768 So. 2d 836, 844 (La. Ct. App. 2000)).  The burden of proof is on the plaintiff, who must demonstrate "proof of fraud, breach of trust or action outside the limits of the fiduciary's authority." *Brockman*, 768 So. 2d at 844.  "[T]he relationship between a borrower and its lender generally does not create a fiduciary duty or impose a duty of good faith and fair dealing." *Guajardo v. JP Morgan Chase Bank, N.A.*, 605 F. App'x 240, 247 (5th Cir. 2015) (per curiam) (alteration in original) (quoting *Baskin v. Mortg. & Tr., Inc.*, 837 S.W.2d 743, 747 (Tex. App. 1992)); *see also Fitch v. Wells Fargo Bank, N.A.*, 709 F. Supp. 2d 510, 517 n.50 (E.D. La. 2010) (collecting cases).  Furthermore, under Louisiana law "mortgage lenders do not owe a fiduciary duty to their borrowers simply because of their status as a borrower; without explicit language in the contract, there is no fiduciary duty."  *Woodside v. Pac. Union Fin., LLC*, No. 17-12191, 2018 WL 1419349, at *6 (E.D. La. Mar. 22, 2018).  Louisiana law provides,

> No financial institution . . . shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties

other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary. . . . This Section is not limited to credit agreements and shall apply to all types of relationships to which a financial institution may be a party.

La. Stat. Ann. § 6:1124.

Even if a business relationship between the Claimant (as borrower) and Ditech (as mortgage-servicer) gave rise to more than an arm's-length relationship, creating a heightened duty of care, the Claimant has not alleged facts demonstrating a breach of the duty of care. The Claimant has not alleged knowing collusion or participation by Ditech in the alleged breach of fiduciary duty. Moreover, the fact that the purpose of the loan modification was to potentially enable her to retain her home, combined with the fact that she fell substantially behind on her Mortgage, she fails to allege damages from any breach.

The Claimant fails to state a claim for breach of fiduciary duty.

### Negligent Misrepresentation

Under Louisiana law, to state a claim for negligent misrepresentation requires the plaintiff to demonstrate the following elements: "(1) there must be a legal duty on the part of the defendant to supply correct information; (2) there must be a breach of that duty; and (3) the breach must have caused damages to the plaintiff." *Schaumburg. v. State Farm Mut. Auto. Ins. Co.*, 421 F. App'x 434, 440 (5th Cir. 2011) (per curiam) (quoting *Cypress Oilfield Contractors, Inc. v. McGoldrick Oil Co.*, 525 So. 2d 1157, 1162 (La. Ct. App. 1988)). Mortgage servicers, like Ditech, have such a duty because they are required to supply correct information to borrowers in connection with a loss mitigation application. 12 C.F.R. § 1024.38(b)(2). The Claimant has not alleged facts demonstrating that Ditech breached that duty. Instead, she has alleged that she applied for a loan modification, that the process took longer than she was initially told due to requests for additional

18

documentation, and that she was denied a loan modification due to a low credit score and the time it took to process the loan modification. Even assuming the allegations to be true, the Claimant does not assert a legal duty that was breached by Ditech. Moreover, she does not allege damages. She was behind on her Mortgage payments, and Ditech required her to reinstate her Mortgage.

The Claimant fails to state a claim for negligent misrepresentation.

### Violations of RESPA

Under RESPA, mortgage servicers, like Ditech, must provide written notice of the transfer of loan servicing not less than fifteen days prior to the effective date of the transfer. 12 C.F.R. § 1024.33(b)(3)(i). The Claimant asserts that the assignment of her Mortgage gave rise to a RESPA violation because it was "inaccurate." Claim at 21. In support, she refers to an assignment from New South Federal to Everhome and from Everhome to Green Tree. She does not contend that New South Federal or Everhome failed to provide her notice of a service transfer. Rather, she asserts that there were years-long gaps between the "transfer date" and "file date." *Id.* The Claimant's specific RESPA allegations are unclear and, in any event, not leveled against Ditech.

RESPA prohibits foreclosure referral where a borrower has submitted a complete loss mitigation package during the pre-foreclosure review period, otherwise known as a prohibition on dual tracking. 12 C.F.R. § 1024.41(f)(2). A servicer may not make the first notice of foreclosure unless the borrow has been notified that they are not eligible for any loss mitigation options, and the requisite period of time for an appeal as passed. 12 C.R.F. § 1024.41(f)(2)(i). The Claimant alleges that Ditech engaged in dual tracking; however, her allegations are merely generalized statements of "fraudulent practices via home loan modification/dual tracking/double standard" and "Dual Tracking and Double Standard acts committed to suit their needs," and her allegations do not provide any specific dates or evidence. Claim at 8–9, 14. The facts alleged do not support a

claim for a violation of RESPA due to dual tracking.  The Claimant even acknowledges that Ditech

notified her that her loss mitigation application was denied prior to sending her a formal notice of

cure default.  Response at 6.

The Claimant fails to state a claim for RESPA violations.

**Violations of FCRA**

FCRA governs the accuracy of credit reporting information on consumers.  15 U.S.C.

§ 1681.  Information furnishers, such as a mortgage servicer, must refrain from knowingly

reporting inaccurate information and must correct any information that they later discover to be

inaccurate.  *Id.* § 1681s-2(a)(1)–(2).  FCRA provides a process whereby a consumer has the right

to dispute any information reported to a credit reporting agency.  *Id.* § 1681g(c)(1)(B)(iii).[19]

However, section 1681-2(d) limits the enforcement of section 1681s-2(a) exclusively to federal

agencies and officials and select state officials.  *Id.* § 1681s-2(d); *see also Longman v. Wachovia

Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) (FCRA "plainly restricts enforcement of [§ 1681-

2(a)] to federal and state authorities.").

The only provision of FCRA that is actionable against a furnisher of information, like

Ditech, becomes relevant when the furnisher fails to conduct a reasonable investigation in response

to a consumer dispute communicated to it by a credit reporting agency.  15 U.S.C. § 1681s-2(b).

By itself, a dispute communicated from a consumer to a furnisher directly does not trigger the duty

under section 1681s-2(b).  *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir.

2010) ("Although a consumer may dispute credit information directly to a furnisher . . . the

consumer has no private right of action if the furnisher does not reasonably investigate the

---

[19]    In appropriate circumstances, a consumer may bring a civil cause of action against any person who willfully or
negligently fails to comply with any requirement imposed under FCRA and, as appropriate, recover actual and
statutory damages, punitive damages, costs, and attorney's fees.  *See* 15 U.S.C. § 1681n (civil liability for willful
noncompliance); § 1681(o) (civil liability for negligent noncompliance).

consumer's claim after direct notification."). The Claimant merely makes conclusory assertions of credit reporting violations, primarily against the predecessor servicers. She does not assert that she filed a dispute with any of the credit reporting agencies. The Claimant therefore has not asserted a violation of FCRA that would rise to a claim against Ditech.

**<u>Intentional Infliction of Emotional Distress</u>**

In Louisiana, "[a] plaintiff claiming intentional infliction of emotional distress must establish three elements: '(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.'" *Cangelosi v. New Orleans Hurricane Shutter and Window, LLC*, No. 12-147, 2012 WL 5613403, at *2 (E.D. La. Nov. 15, 2012) (quoting *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1022 (La. 2000)). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991) (citing Restatement (Second) of Torts § 46 (AM. L. INST. 1948)).

The Claimant's allegations do not show that Ditech's conduct in processing her loan modification application and requiring reinstatement of her Mortgage was extreme and outrageous. The allegations do not demonstrate that any of Ditech's actions were based on a desire to inflict extreme emotional distress. Despite the apparent severity of her health issues, the allegations do not show that the issues were a result of Ditech's actions and that Ditech's conduct went past all

possible bounds of decency.  The Court finds that the Claimant has failed to allege facts stating a claim for intentional infliction of emotional distress.

## Insurance Dispute

In addition to the six specific and clearly identifiable causes of action, the Claimant makes several other complaints about the servicing of her Mortgage.  One involves the release of insurance money.  The Claimant alleges that, in the aftermath of a storm that caused damage to her Property, Ditech neglected to endorse the insurance funds check in a timely manner.  Claim at 17.  She maintains that the check was released to her in May 2017, cashed by Ditech in June 2017, and partially released to her in September 2017.  *Id.* at 17, 23.  Standing alone, these facts do not state a viable legal claim against Ditech.  The Mortgage provides that Ditech may disburse proceeds for repairs and restoration in a single payment or a series of payments, and it also provides that Ditech has the right to hold insurance proceeds until it has an opportunity to inspect the Property to ensure that the work has been completed to its satisfaction.  Mortgage ¶ 5.[20]  The Claimant does not allege that Ditech was in violation of the terms of the Mortgage and fails to provide sufficient facts or allegations to articulate or to support a claim.

To the extent that the Claimant asserts that the delay in the release of the insurance proceeds constitutes negligence, she has not asserted any facts that support a claim for negligence.  Under

---

[20]    The Mortgage states as follows:

> In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds . . . shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security interest is not lessened.  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.

Mortgage ¶ 5.

Louisiana law, to prove negligence, the Claimant must demonstrate "(1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element)" *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 633 (La. 2006) (identifying the breach element as "(2) the defendant's conduct failed to conform to the appropriate standard"). The Claimant does not plead any of the elements of a negligence claim. She does not contend that the Debtors had a duty to conform to a specific standard and that they did not meet that standard, such that the failure caused the deterioration and damage to her Property. She does not allege that the delay in the release of the funds was the cause of her alleged injuries. It is unclear from the narrative whether Ditech had an opportunity to inspect the Property to ensure that the work had been properly completed. The Claimant also vaguely asserts that Ditech's actions created a threat that she would lose her insurance if the repairs were not completed. Claim at 8, 25. But those allegations are not supported by facts that state a claim for relief.

**The Other Allegations**

The Claimant also makes broad allegations of (i) "excessive collection tactics"; (ii) inaccurate billing statements; (iii) Ditech's failure to advance property taxes; and (iv) misapplication of payments. Claim at 8–9. She requests equitable relief to prevent foreclosure proceedings. *Id.* at 9. Her vague allegations do not state plausible claims for relief. She does not itemize any elements of any causes of action, nor does she apply facts of the matter to required elements. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action,

23

supported by mere conclusory statements, do not suffice."). With respect to these remaining complaints regarding collection tactics, billing statements, property taxes, and misapplied payments, the Claimant does not provide sufficient detail, either legal claims or facts, for the Court to determine an ascertainable claim against Ditech.

## Conclusion

Based on the foregoing, the Court sustains the Objection and disallows and expunges the Claim.


IT IS SO ORDERED.


Dated: New York, New York
       July 29, 2023


                                        /s/ *James L. Garrity, Jr.*
                                        Hon. James L. Garrity, Jr.
                                        U.S. Bankruptcy Judge