**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NOT FOR PUBLICATION

------------------------------------------------------- x

In re:

Ditech Holding Corporation, *et al.*,

Debtors.[1]

:
:
:
:
:
:
:
:

Case No. 19-10412 (JLG)

Chapter 11

(Jointly Administered)

------------------------------------------------------- x

### MEMORANDUM DECISION AND ORDER SUSTAINING THE ELEVENTH OMNIBUS OBJECTION TO PROOF OF CLAIM FILED BY KEVIN L. ETTER AND THE TWENTY-FIRST OMNIBUS OBECTION TO PROOF OF CLAIM FILED BY KEVIN L. ETTER

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10022
By: Richard Levin

Kevin L. Etter[2]
2367 Arizona Way
Yuba City, California 94991

LAW OFFICES OF ERIN E. WIETECHA
*Attorneys for Claimant*
88 Suydam Street, Suite A
Brooklyn, New York 11221
By: Erin E. Wietecha

---

[1]    The Debtors' *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1326, was confirmed, which created the Wind Down Estates. The Wind Down Estates, along with the last four digits of each of their federal tax identification numbers, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

[2]    Mr. Etter acted pro se in filing the Claims.  He was represented by counsel in filing his Response.  At the Sufficiency Hearing, he acted pro se.  Ms. Wietecha attended the Sufficiency Hearing but did not formally appear at the hearing or purport to act as Claimant's counsel.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction[3]

On October 5, 2019, Kevin L. Etter (the "Claimant"), pro se, filed proof of claim number 24280 ("Claim 24280") as an administrative expense claim in the amount of $273,505.50 against Ditech Financial, LLC f/k/a Green Tree Servicing, LLC ("Ditech"). Claim 24280 at 1–2. That day, the Claimant also filed proof of claim number 24281 ("Claim 24281" and together with Claim 24280, the "Claims") as an unsecured claim in the amount of $273,505.50 against Ditech. Claim 24281 at 1–2. The Claims are identical, except for the different classifications. Each claim consists of the "Official Form 410, Proof of Claim,"[4] an explanatory narrative,[5] and approximately 146 pages of supporting documentation.

In their Eleventh Omnibus Objection[6] the Plan Administrator and Consumer Claims Trustee seek an order disallowing and expunging Claim 24280. In their Twenty-First Omnibus Objection[7] (together with the Eleventh Omnibus Objection, the "Objections"), they seek an order disallowing and expunging Claim 24281. The Plan Administrator and Consumer Claims Trustee object to each claim on the grounds that it has "no merit based on Company review." Eleventh Omnibus Objection, Ex. A (List of Claims) at 24; Twenty-First Omnibus Objection, Ex. A (List

---

[3]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objections, Claims Procedures Order and Third Amended Plan, as applicable. References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412.

[4]  Claim 24280 at 1–3. For ease of reference, in discussing the contents of the Claims, the Court will cite to Claim 24280 as representative of both claims. The pages of Claim 24280 are not consecutively numbered. In citing to Claim 24280, the Court will use the page count in the electronic copies of the Claims.

[5]  Claim 24280 at 4–11.

[6]  *Eleventh Omnibus Objection to Proofs of Claim (No Basis Consumer Claims)*, ECF No. 1743.

[7]  *Twenty-First Omnibus Objection to Proofs of Claim (No Basis Consumer Claims)*, ECF No. 1753.

of Claims) at 13.    On February 13, 2020, the Claimant, through counsel, responded to the Objections (the "Response").[8]   On May 19, 2023, the Plan Administrator and Consumer Claims Trustee jointly replied to the Response (the "Reply").[9]

Pursuant to the Claims Procedures Order,[10] the filing of the Response caused an adjournment of the Objections so that the Court could conduct a Sufficiency Hearing on the Claims.   Under that order, the legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[11]   Claims Procedures Order ¶ 3(iv)(a).   On July 27, 2023, in accordance with the Claims Procedures Order, the Court conducted a Sufficiency Hearing on the Claims.   The Consumer Claims Trustee and Plan Administrator appeared through counsel.   The Claimant acted pro se.[12]   The Court heard arguments on the Objections.

The Court has reviewed the Claims, Objections, Response, and Reply, including all documents submitted in support thereof, and has considered the arguments made by the parties in

---

[8]    *Claimant's Response to the Wind Down Estates' Twenty-First Omnibus Objection to Proofs of Claim*, ECF No. 1814.

[9]    *Joint Reply of Consumer Claims Trustee and Plan Administrator in Support of the Eleventh Omnibus Objection with Respect to the Claim of Kevin Etter (24280) and the Twenty-First Omnibus Objection with Respect to the Claim of Kevin Etter (24281)*, ECF No. 4752.

[10]    *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

[11]    Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").   In filing the Objections, the Consumer Claims Trustee and Plan Administrator initiated a contested matter.   *See Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs., Inc.)*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter").   Bankruptcy Rule 9014 governs contested matters.   The rule does not explicitly provide for the application of Bankruptcy Rule 7012.   However, Bankruptcy Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply."  Fed. R. Bankr. P. 9014.   The Court does so here in the Claims Procedures Order.

[12]    Ms. Wietecha attended the Sufficiency Hearing but did not formally appear at the hearing or purport to act as Claimant's counsel.

support of their respective positions. As explained below, accepting all the well-pleaded factual allegations asserted by the Claimant in support of the Claims as true, drawing all reasonable inferences in the Claimant's favor, and liberally construing the Claims and Response to raise the strongest arguments that they suggest, the Claims fail to state plausible claims for relief against Ditech. Accordingly, the Court sustains the Objections and disallows and expunges the Claims.

### Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background

**The Mortgage Loan**

On August 26, 2009, the Claimant executed a note in favor of Bank of America, N.A. ("Bank of America") in the amount of $236,970.00 (the "Note").[13] The Note was secured by a mortgage (the "Mortgage" and, together with the Note, the "Mortgage Loan"), executed by the Claimant and his wife, Christine Etter, as co-borrowers, on the property located at 9090 County

---

[13] The Note and Mortgage are annexed to the Reply as Exhibit A. The Court can properly take judicial notice of matters of public record. *See Sutton ex rel. Rose v. Wachovia Sec., LLC*, 208 F. App'x 27, 30 (2d Cir. 2006) (summary order) (holding that filings and orders in other courts "are undisputably matters of public record"). "In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011); *see also Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) ("[Courts] must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007))); *Leon v. Shmukler*, 992 F. Supp. 2d 179, 184 (E.D.N.Y. 2014) ("It is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records."). The documents cited by the Claimant, Consumer Claims Trustee, and Plan Administrator directly bear on the legal sufficiency of the Claims and merits of the Objections. The Court takes judicial notice of those documents.

Road 128D, Wildwood, Florida 34785 (the "Property").    The Mortgage names Mortgage Electronic Registration Systems, Inc. as the nominee for Bank of America.  Mortgage at 1.  On April 1, 2013, Ditech began servicing the Mortgage Loan.  Claim 24280 at 80.  On February 11, 2019, Ditech assigned the Mortgage Loan to New Residential Mortgage, LLC ("New Residential") (the "New Residential Assignment").  *Id.* at 41.    Effective April 1, 2019, LoanCare, LLC ("LoanCare") began subservicing the Mortgage Loan for New Residential. *Id.* at 42.  On August 6, 2019, New Residential assigned the Mortgage to LoanCare.  On August 12, 2019, the Claimant sold the Property and paid the Mortgage Loan in full.  *Id.* at 7; Response ¶ 29.

### The Bank of America Foreclosure Action

On September 9, 2011, Bank of America filed a foreclosure complaint against the Claimant, initiating a foreclosure action (the "Bank of America Foreclosure Action")[14] in the Circuit Court of Sumter County, Florida (the "Florida Court").  On October 17, 2011, the Claimant filed a motion to dismiss (the "Motion to Dismiss")[15] the Bank of America Foreclosure Action.

On May 1, 2012, the Claimant executed a loan modification with Bank of America (the "Bank of America Loan Modification").[16]  It provided for an interest-bearing principal balance of $209,875.00, a deferred non-interest-bearing principal balance of $35,199.83, and an interest rate of 4.625%.  Bank of America Loan Modification at 2.  The Claimant defaulted on the Bank of America Loan Modification within six months.  Claim 24280 at 92.

---

[14]    *Bank of America, N.A. v. Kevin Etter*, No. 602011CA001131CAAXSU (Fla. Cir. Ct. filed Sept. 9, 2011).  The docket in the Bank of America Foreclosure Action is annexed to the Reply as Exhibit B (the "Bank of America Docket").  It is also publicly available at https://www.civitekflorida.com/ocrs/county/60/.

[15]    *Motion to Dismiss for Failure to State a Cause of Action and Failure to Include an Indispensable Party via Intentional Separation of the Note and Mortgage*, Bank of America Docket, Oct. 17, 2011.

[16]    The Bank of America Loan Modification is annexed to the Reply as Exhibit C.

On October 26, 2012, the Florida Court denied the Motion to Dismiss (the "Order Denying Motion to Dismiss").[17]  In that order, the Florida Court stated, in part:

> The Court notes Defendants' first assertion that the Complaint should be dismissed since the Mortgage and Note have been split is without merit.  Plaintiff has attached a copy of the Note issued to the Plaintiff and a copy of the Mortgage transferred to the Plaintiff.
>
> The Court notes Defendants' second assertion that the Assignment is defective is based upon their allegation that the Assistant Secretary is not a corporate officer.  Such an allegation goes beyond the four corners of the Complaint.  In addition, the Court notes the Plaintiff is named on the Mortgage as the lender.  Consequently, this assertion is without merit.
>
> Regarding Defendants [sic] last claim, the Court notes the proper party with standing to foreclose a note and mortgage is the holder of the note and mortgage or the holder's representative.  Thus, the party seeking foreclosure must present evidence that it owns and holds the note and mortgage in question in order to proceed with a foreclosure action.  In this case, the Plaintiff has attached a copy of the Note in its name and a copy of the Mortgage and Assignment.

Order Denying Motion to Dismiss ¶¶ 5–7.

On November 27, 2012, Bank of America voluntarily dismissed the Bank of America Foreclosure Action without prejudice to its rights to enforce the Mortgage Loan.[18]

**The Etter Bankruptcy**

On November 8, 2012, the Claimant filed a voluntary petition for relief (the "Etter Bankruptcy")[19] under chapter 7 of title 11 of the United States Code ("Bankruptcy Code").  On February 13, 2013, the Claimant received a discharge from bankruptcy. Etter Bankruptcy Docket, No. 24.  On February 18, 2014, the chapter 7 trustee issued a final report.  *Id.*, No. 32.  On July 9, 2014, the clerk closed the Etter Bankruptcy.  *Id.*, No. 37.

---

[17]    The *Order on Defendants' Motion to Dismiss for Failure to State a Cause of Action and Failure to Include an Indispensable Party via Intentional Separation of the Note and Mortgage* is annexed to the Reply as Exhibit D.

[18]    The *Notice of Dismissal Without Prejudice and Discharge of Lis Pendens* is annexed to the Reply as Exhibit F.

[19]    *In re Kevin L. Etter*, No. 12-07292, (Bankr. M.D. Fla. filed Nov. 8, 2012).  The docket for the Etter Bankruptcy is annexed to the Reply as Exhibit E (the "Etter Bankruptcy Docket").

**The Green Tree Foreclosure Action**

On October 4, 2013, Green Tree filed a verified foreclosure complaint (the "Green Tree Complaint")[20] against the Claimant initiating a foreclosure action in the Florida Court (the "Green Tree Foreclosure Action").[21]  In the complaint, Green Tree asserts that the Claimant defaulted under the terms of the Mortgage Loan by failing to make the payment amount due on October 1, 2012, and all subsequent payments.  Green Tree Foreclosure Complaint ¶ 7.  On February 27, 2014, Green Tree filed an affidavit (the "Affidavit of Indebtedness")[22] declaring the total amount due under the Mortgage Loan as $269,490.69.  The Claimant did not respond to the Green Tree Complaint or to the Affidavit of Indebtedness.  On March 3, 2014, the Florida Court entered a default judgment against the Claimant.  Green Tree Foreclosure Docket, Mar. 3, 2014.  The parties dispute the final resolution of the Green Tree Foreclosure Action.

The Claimant asserts that he sought, but was denied, loss mitigation from Green Tree in the summer of 2013.  Claim 24280 at 4.  As support for this contention, he attaches a letter from Green Tree dated August 21, 2013 (the "Green Tree Loss Mitigation Letter"), which states, in substance, that he was denied loss mitigation because his income was insufficient for the program guidelines.  *Id.* at 106.  The Claimant contends that after Green Tree denied his request for loss mitigation, he brought the Mortgage Loan current, and the Florida Court dismissed the Green Tree Foreclosure Action.  *Id.* at 4.

---

[20]    The Green Tree Complaint is annexed to the Reply as Exhibit H.

[21]    *Green Tree Servicing, LLC v. Kevin Etter*, Case No. 2013CA001631AXMX, (Fla. Cir. Ct. filed Oct. 4, 2013). The docket in the Green Tree Foreclosure Action is annexed to the Reply as Exhibit G (the "Green Tree Foreclosure Docket").  It is also publicly available at https://www.civitekflorida.com/ocrs/county/60/.

[22]    The Affidavit of Indebtedness is annexed to the Reply as Exhibit I.  The total amount due of $269,490.69 consists of (i) unpaid principal balance of $207,572.39; (ii) accrued interest of $12,789.60; (iii) "Aq. Mod. Principal" of $35,199.83; (iv) past due escrow of $5,019.72; (v) escrow shortage of $680.87; (vi) escrow unbilled but due of $8,514.53; and (vii) unapplied fees of $286.25.

The Plan Administrator and Consumer Claims Trustee assert that (i) on May 27, 2014, the Claimant executed a loan modification agreement with Green Tree (the "Green Tree Loan Modification");[23] (ii) on June 16, 2014, Green Tree filed an ex parte motion to dismiss the Green Tree Foreclosure Action,[24] in which Green Tree notes that the parties have agreed to the resolution of the foreclosure claim; and (iii) on June 23, 2014, the Florida Court dismissed the action, without prejudice. Green Tree Loan Modification Docket, June 23, 2014.

### The Chapter 11 Cases

On February 11, 2019, (the "Petition Date") Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates, including Ditech (collectively, the "Debtors"), filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On February 22, 2019, the Court entered an order (the "Bar Date Order")[25] fixing April 1, 2019, at 5:00 p.m. (prevailing Eastern Time) as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in these Chapter 11 Cases (the "General Bar Date"). As relevant, that order directed the Debtors

---

[23]    A copy of the Green Tree Loan Modification is annexed to Claim 24280 at pages 74–77.

[24]    The *Ex-Parte Motion to Withdraw Original Loan Documents from Court File and Dismiss Case Without Prejudice* is annexed to the Reply as Exhibit J.

[25]    *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

to mail the Court-approved Claim Form[26] and Bar Date Notice[27] at least thirty-five (35) days prior to the General Bar Date to

> all creditors and other known holders of potential claims as of the date of the order; including all persons listed in the schedules as holding claims; and all parties to pending litigation against the Debtors (as of the date of the entry of the Proposed Order.) . . . .

Bar Date Order ¶ 10(e), (f).  The order also directed that

> Pursuant to Bankruptcy Rule 2002(l) and the [United States Bankruptcy Court for the Southern District of New York's Procedural Guidelines for Filing Requests for Orders to Set the Last Date for Filing Proofs of Claim, updated as of December 1, 2015], the Debtors shall publish the Bar Date Notice, once in the national editions of *The New York Times* and *USA Today* at least twenty-eight (28) days prior to the General Bar Date, which publication is hereby approved and shall be deemed good, adequate and sufficient publication notice of the Bar Dates and the Procedures for filing proofs of claim in these chapter 11 cases.

*Id.* ¶ 12.

Thereafter, the Court extended the General Bar Date for consumer borrowers, twice, ultimately setting their applicable bar date as June 3, 2019, at 5:00 p.m. (prevailing Eastern Time) (the "Consumer Claims Bar Date").[28]  The Affidavit of Service[29] filed by the Debtors' servicing agent shows that the Debtors served the Claimant with notice of the Consumer Claims Bar Date.

---

[26]    The Claim Form is annexed as Exhibit 2 to the Bar Date Order.

[27]    The Bar Date Notice is annexed as Exhibit 1 to the Bar Date Order.

[28]    *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[29]    The Affidavit of Service demonstrating that the Debtors served the Claimant with notice of the extended Consumer Claims Bar Date is annexed to the Reply as Exhibit K.

On September 26, 2019, the Debtors confirmed their Third Amended Plan,[30] and on September 30, 2019, that plan became effective.[31]  Upon entry of the Confirmation Order, the Court set November 11, 2019, as the Administrative Expense Bar Date.  The Plan Administrator is a fiduciary appointed under the Third Amended Plan who is charged with the duty of winding down, dissolving, and liquidating the Wind Down Estates.  *See* Third Amended Plan, art. I, §§ 1.130, 1.184, 1.186.  The Consumer Claims Trustee is a fiduciary appointed under the Third Amended Plan who is responsible for the reconciliation and resolution of Consumer Creditor Claims and distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims in accordance with the Third Amended Plan.  *See id.* art. I, § 1.41.  The Consumer Claims Trustee has the exclusive authority to object to all Consumer Creditor Claims.  *See id.* art. VII, § 7.1.  The Third Amended Plan also provides that the Plan Administrator, on behalf of each of the Wind Down Estates, is authorized to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims.  *See id.*

**The Claims Procedures Order**

On November 19, 2019, the Court entered the Claims Procedures Order.  Under that order, the Plan Administrator and Consumer Claims Trustee are authorized to file Omnibus Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order.  *See* Claims Procedures Order ¶ 2(i)(a)–(h).  A properly filed and served response to an objection gives

---

[30]    *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1404 (the "Confirmation Order")

[31]    *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

rise to a "Contested Claim" that will be resolved at a Claim Hearing.  *Id.* ¶ 3(iv).  The Plan

Administrator and/or Consumer Claims Trustee, as appropriate, has the option of scheduling the

Claim Hearing as either a "Merits Hearing" or a "Sufficiency Hearing."  *Id.* ¶ 3(iv)(a), (b).  A

"Merits Hearing" is an evidentiary hearing on the merits of a Contested Claim.  A "Sufficiency

Hearing" is a non-evidentiary hearing to address whether the Contested Claim states a claim for

relief against the Debtors.  The legal standard of review that will be applied by the Court at a

Sufficiency Hearing is equivalent to the standard applied by the Court upon a motion to dismiss

for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  *Id.* ¶ 3(iv)(a).

### **The Claims**

The Claimant's issues with Green Tree began in 2013, shortly after Green Tree began

servicing the Mortgage Loan.   Claim 24280 at 4.   The Claimant asserts that Green Tree

immediately raised his annual escrow charges from $1,200 to $6,000, which caused an increase in

his monthly Mortgage payment of approximately $400.  *Id.*  He also complains (i) that he was

unable to make Mortgage payments online and instead had to call customer service to make those

payments; (ii) that Green Tree sometimes accepted and sometime rejected his payments; and

(iii) that Green Tree applied payments inconsistently.  *Id.*  He alleges that due to Green Tree's

misapplication of his Mortgage payments, his account incorrectly showed his status as delinquent,

and, as a consequence, Green Tree brought the Green Tree Foreclosure Action.  *Id.*  In support of

this assertion, the Claimant attaches an online payment history from Ditech's website.  *Id.* at 25–

27.   The Claimant says that, eventually, "they corrected the escrow and refunded our

overpayments."  *Id.* at 4.

The Claimant contends that although he made all his Mortgage payments during the period

from January 1, 2014, to May 1, 2018, the payoff amount on the Mortgage Loan increased by

$56,300.26. Claim 24280 at 4–5. He maintains that he was not aware of that fact until May 2018 because Ditech did not include principal payoff information on his monthly Mortgage statements. He argues that he would have disputed his payoff amount sooner had Ditech included the payoff information in his Mortgage statements. *Id.* at 4.

The Claimant asserts that, in the fall of 2018, he and his wife decided to move to California. He contends that he "knew by this point that the mortgage payoff was incorrect . . . but received no assistance from Ditech." *Id.* at 5. Consequently, in January 2019, he "decided to stop paying the mortgage." *Id.* He claims that Ditech "responded" by assigning the Mortgage Loan to New Residential Mortgage on February 11, 2019, "coincidentally the same date as [Ditech's] bankruptcy filing." *Id.*

On April 1, 2019, the subservicing of the Claimant's Mortgage Loan was transferred to LoanCare. *Id.* On April 20, 2019, LoanCare sent a written debt validation request to the Claimant, who through counsel, lodged a written dispute of the debt. *Id.* In response to the written dispute, LoanCare directed the Claimant to Lakeview Loan Servicing, who subsequently directed the Claimant back to LoanCare. *Id.* The Claimant contends that this was a "deliberate attempt to mislead." *Id.* He also says that LoanCare's responsive letter included a copy of the assignment of the Mortgage from New Residential to the Federal National Mortgage Association ("Fannie Mae"), dated February 15, 2019 (the "Fannie Mae Assignment"). *Id.* at 6. The Claimant argues that this document contradicts the local county records and is "the first [of a] number of questionable, if not fraudulent documents that have been presented by Ditech and [LoanCare]." *Id.*

The Claimant contends that in mid-June 2019, he and his wife located a purchaser for the Property. Claim 24280 at 6. He asserts that he and his attorney attempted to "get our payoff

amount right and get to the bottom of things" prior to closing. *Id.* He says that as part of his investigation, he contacted Fannie Mae, who he says was "surprised that we had been given a document stating that the [M]ortgage had been assigned to them on [February 15, 2019]." *Id.* Fannie Mae informed the Claimant about the Green Tree Loan Modification executed in 2014. *Id.* He contends that he was unaware of the Green Tree Loan Modification before this time and argues that he was instead denied the loan modification by Green Tree in 2013. *Id.*

The Claimant asserts that he and his counsel received the Green Tree Loan Modification document on August 9, 2019, and that this was the first time he ever viewed this document. *Id.* at 7. He lists this as the second fraudulent document produced by Ditech and LoanCare. *Id.* The Claimant contends, without limitation, that the Green Tree Loan Modification document is invalid because: (i) it is not countersigned by a Green Tree representative; (ii) it is missing pages and/or has duplicate pages; (iii) the commission number for the notary does not exist; (iv) the signature on the document is not his signature; (v) the document was never recorded with the county; (vi) the Green Tree Loan Modification is not mentioned on the Assignment of Mortgage from Ditech to New Residential Mortgage, LLC; and (vii) the Green Tree representative was not an employee of the company in 2014. Claim 24280 at 7.

On August 12, 2019, even as he believed that the Mortgage Loan payoff amount was "WAY too much," the Claimant went to the closing on the sale of the Property. *Id.* He states that, "[u]nder duress, we paid the amount provided by [LoanCare] to clear title for the new owners." *Id.*

On August 7, 2019, the Claimant lodged a complaint (the "CFPB Complaint") concerning LoanCare with the Consumer Financial Protection Bureau ("CFPB"). *Id.* On September 11, 2019,

LoanCare sent a response to the Claimant's CFPB Complaint (the "CFPB Response").[32]   In the

Claim, the Claimant provides a response to the CFPB Response and argues that the Green Treen

Loan Modification was fraudulent and that Green Tree was not properly applying payments in

2013–2014.   Claim 24280 at 8–9.   The Claimant maintains that Ditech and LoanCare/New

Residential have "conspired together to enforce a [loan] modification that they knew to be, at the

very least non-existent, and perhaps fraudulent." *Id.* at 11.

As damages, Claimant asks that the $273,505.50 remitted to LoanCare at the time of the

sale of the property be returned to him. *Id.* He additionally requests accrued interest, commencing

August 12, 2019, and treble damages and attorney's fees pursuant to "Florida Statute §501.203."

*Id.*

### The Objections

The Plan Administrator and Consumer Claims Trustee assert that the Claims have "no

merit based on Company review." *See* Eleventh Omnibus Objection, Ex. A (List of Claims) at 24;

Twenty-First Omnibus Objection, Ex. A (List of Claims) at 13.

### The Response

The Claimant, through counsel, asserts new claims for violations of the Florida Deceptive

and Unfair Trade Practices Act ("FDUTPA") and for wrongful foreclosure. *Id.* ¶ 1.   He asserts

that inflated escrow charges forced him into foreclosure.   Response ¶¶ 6–8.   He characterizes the

inflated escrow charges as follows: "[Green Tree] repeatedly took interest-free loans from the

Etters in the form of an escrow cushion that was unaffordable to the Etter[s] and ultimately

excessive, and these excess charges are evidenced by the refunds." *Id.* ¶ 7.   As evidence, the

---

[32]   A copy of the seventy-eight-page CFPB Response is annexed to Claim 24280 at pages 80–158.

14

Claimant attaches an escrow refund check dated February 3, 2016, in the amount of $2,008.26. *Id.*, Ex. A at 16.

The Claimant contends that (i) the Green Tree Foreclosure Action was dismissed because he became current on his loan, and (ii) that the payment history shows that Green Tree accepted payments and applied them to the Mortgage Loan between October 2013 and June 2014. *Id.* ¶ 11. He alleges that the purported Green Tree Loan Modification was based upon a stale loan modification application that he neither authorized nor executed. *Id.* ¶¶ 12–13, 18. He denies that Green Tree offered him a three-month trial payment plan. *Id.* ¶ 16. He argues that the purported second loan modification application submitted in 2014 is dated July 7, 2013—the date of the first loan modification application. *Id.* ¶ 12. He complains that the alleged Green Tree Loan Modification added $64,173 in interest-bearing principal to the account, which he asserts he did not owe. *Id.* ¶ 21.

He argues that the Green Tree Loan Modification nullified the Bank of America Loan Modification "given that [Green Tree] removed the deferred principal, erroneously added to the total principal amount, and increased [the] monthly [Mortgage] payment. *Id.* ¶ 24. He asserts that the nullification of the Bank of America Loan Modification voids the entire Mortgage Loan and entitles him to the $273,505.50 payoff amount that he paid to LoanCare when he sold the Property. *Id.* The Claimant also asserts that the transfer of servicing rights from Ditech to LoanCare is invalid, as the transfer did not refer to the Green Tree Loan Modification and the notice of service transfer indicated that the servicing rights did not transfer on February 11, 2019, but rather transferred on April 1, 2019. Response ¶ 26; *id.*, Ex. A at 42. Because the Claimant contends that

the Green Tree Loan Modification was invalid, he seeks damages for the increased interest paid

pursuant to that loan modification, or approximately $9,600.  *Id.* ¶ 29.[33]

The Claimant argues that because he had claims against Ditech as of the Petition Date, he

should have been notified of these Chapter 11 Cases.  *Id.* ¶ 34.  The Claimant contends that he did

not receive any notice of these Chapter 11 Cases and that this lack of notice excuses the untimely

filing of his Claims.  He also argues that the Court should extend the Consumer Claims Bar Date

to accommodate his late filing.  *Id.* ¶¶ 31, 34.

## The Reply

The Consumer Claims Trustee and Plan Administrator argue that (i) the Claimant has failed

to state a claim for relief against the Debtors, Reply ¶¶ 40–74; (ii) Florida's voluntary payment

doctrine bars the Claimant from recovering damage claims, including the payoff amount, *id.* ¶¶ 75–

76; and (iii) to the extent the Claimant seeks recovery from LoanCare, the relief is not available

through the bankruptcy process, and, in any event, the Court lacks jurisdiction to entertain claims

that are not asserted against the Debtors, *id.* ¶¶ 77–80.  They also argue that Claim 24280 should

not be granted administrative priority, *id.* ¶¶ 81–86, and that both Claims should be disallowed and

expunged, as they were filed well after the Consumer Claims Bar Date, *id.* ¶¶ 87–91.

---

[33]    As explained by the Claimant,

> The Etters sold their home on August 12, 2019, after their so-called [Green Tree Loan Modification]
> was purportedly boarded on June 1, 2014.  Thus, they incurred over 5 years' [worth] of interest that
> they did not agree to, as they paid 5 years' worth of extra interest on the portion of principal that
> was previously deferred by Bank of America.   Five years is about 1/8 of the life of the purportedly
> modified loan, amounts to approximately $9,600 in extra interest that the Etters never agreed to pay.

Reply ¶ 29.

16

## Applicable Legal Standards

Under section 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The filing of a proof of claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). Section 502(b) prescribes nine categories of claims that will be disallowed, including that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). If an objection filed pursuant to section 502(b)(1) refutes at least one of the claim's essential allegations, the claimant has the burden to demonstrate the validity of the claim. *See, e.g.*, *Rozier v. Rescap Borrower Claims Tr. (In re Residential Cap., LLC)*, No. 15-cv-3248, 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 11-cv-8444, 2012 WL 1886755, at *3 (S.D.N.Y. May 12, 2012).

Under Rule 12(b)(6), a claim may be dismissed due to a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In applying Rule 12(b)(6) to the Claims, the Court assesses the sufficiency of the facts alleged in support of the Claims in light of the pleading requirements under Rule 8(a) of the Federal Rules of Civil Procedure.[34] Rule 8(a)(2) states that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet that standard, the Claims "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

---

[34]   Rule 8 is incorporated herein pursuant to Bankruptcy Rule 7008.

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 570.  To satisfy Rule 12(b)(6), the "pleadings

must create the possibility of a right to relief that is more than speculative."  *Spool v. World Child*

*Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).  In considering whether that standard is

met for a particular claim, the court must assume the truth of all material facts alleged in support

of the claim and draw all reasonable inferences in the claimant's favor.  *See ATSI Commc'ns, Inc.*

*v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  However, the court "need not accord 'legal

conclusions, deductions or opinions that are couched as factual allegations . . . a presumption of

truthfulness.'"  *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 591 (S.D.N.Y. 2008) (quoting

*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)).  In short, "[i]n ruling on a

motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal

feasibility of the complaint, not to assay the weight of the evidence which might be offered in

support thereof.'"  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting

*Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)).  Where a claimant is proceeding pro se, the

Court will construe the claim liberally, although the claim must nonetheless be supported by

specific and detailed factual allegations that provide a fair understanding for the basis of the claim

and the legal grounds for recovery against a debtor.  *Kimber v. GMAC Mortg., LLC (In re*

*Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (citing *Iwachiw v. N.Y.C. Bd.*

*of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005) (summary order)).  A court may not "invent

factual allegations" that were not pled by the pro se litigant.  *In re Nofer*, 514 B.R. 346, 353 (Bankr.

E.D.N.Y. 2014) (citing *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).

The Plan Administrator and Consumer Claims Trustee contend that even the most generous reading of the Claims and the Response does not support any viable claim for recovery against the Wind Down Estates or Consumer Creditor Recovery Cash Pool as a matter of law.

The Court reviews the Claims below.

## Analysis

## Whether the Claimant Has Stated a Claim for Relief Against the Debtors

### Fraud

The Claimant does not explicitly make a fraud claim or plead any of the elements of such a claim. However, "loan modification fraud" is central to the Claim. Under Florida law, the elements of fraud are: (i) a false statement concerning a special material fact; (ii) the maker's knowledge that the representation is false; (iii) an intention that the representation induces another's reliance; and (iv) consequent injury by the other party acting in reliance on the representation. *Moriber v. Dreiling*, 194 So. 3d 369, 373 (Fla. Dist. Ct. App. 2016). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b);[35] *see also XP Glob., Inc. v. AVM, L.P.*, No. 16-cv-80905, 2016 WL 6679427, at *5 (S.D. Fla. Nov. 14, 2016). To satisfy the heightened pleading requirements under Rule 9(b), a plaintiff must "offer more than mere conjecture," *U.S. ex rel. Clausen v. Lab'y Corp. of Am., Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002), and a complaint must "plead facts giving rise to an inference of fraud." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x. 81, 86 (11th Cir. 2008) (per curium). The complaint must set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the

---

[35]    Rule 9(b) is incorporated herein by Bankruptcy Rule 7009.

case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *XP Glob., Inc.*, 2016 WL 6679427, at *5.

The Claimant fails to meet that burden. He complains that the Green Tree Loan Modification is facially invalid because (i) it is not signed by a Green Tree representative; (ii) the commission number for the notary "doesn't exist"; (iii) the document was not officially recorded; and (iv) according to his research, the Green Tree representative was not a Green Tree employee. Claim 24280 at 7. However, none of these conclusory allegations amounts to a false statement of material fact by Green Tree. He provides no information to support his conclusion that Green Tree made a false statement of fact, much less that Green Tree had knowledge that the misrepresentation was false. Nor does he clearly indicate that Green Tree intended for him to rely on the alleged false statement of material fact.

The Claimant has not alleged facts demonstrating that he was injured by his reliance on the Green Tree Loan Modification. He says that under the terms of the Green Tree Modification, he incurred additional interest payments of approximately $9,600. Response ¶ 29. The terms of the Bank of America Loan Modification included a non-interest-bearing deferral of $35,199.83, which therefore obliged the Claimant to pay 4.625% in interest on a principal balance of $209,875.00. Claim 24280 at 83. The Green Tree Loan Modification eliminated the non-interest-bearing deferral and capitalized additional arrears, requiring Claimant to pay 4.625% in interest on a principal balance of $274,048.32. *Id.* at 71. The Plan Administrator and Consumer Claims Trustee contend that although the Claimant has established that the implementation of the Green Tree Loan Modification caused him to pay additional interest over the life of the loan, he fails to acknowledge that he defaulted on the Bank of America Loan Modification within six months, *id.* at 92, and that

on May 24, 2013, Green Tree issued a Notice of Default showing a past due amount of $11,030.08 and showing that the Claimant had not made a Mortgage payment between October 1, 2012, and May 1, 2013, *id.* at 98. They assert, and the Court agrees, that the Claimant cannot show that his reliance on the allegedly fraudulent Green Tree Loan Modification cost him money because the source of his problems was his own chronic deficiency.

As of the date of the Green Tree Loan Modification, the Claimant was in the middle of an active foreclosure action. A Green Tree billing statement dated January 10, 2014, showed an outstanding amount due of $27,144.09 and indicated that the total principal paid in 2013 was $159.82 and the total interest paid in 2013 was $800.63. Claim 24280 at 36. According to the Affidavit of Indebtedness filed in the Green Tree Foreclosure Action, as of February 27, 2014, the Claimant owed $27,004.72 in arrearages for escrow and interest alone. The Claimant contends that he brought his balance current during the Green Tree Foreclosure Action and that this was the reason the foreclosure was dismissed. Response at 3. However, he provides no evidence that he brought the account current through proof of payment or even a description of when and to whom he made the payment. There are no facts to support his suggestion that he did or would have been able to maintain the terms of the Bank of America Loan Modification, much less that he was entitled to do so.

In addition, the Claimant does not plead his claim for fraud with the requisite particularity required under Rule 9(b). *See Romabach v. Chang*, 355 F.3d 164, 167 (2d Cir. 2004) ("We conclude that Rule 9(b) applies when the claim sounds in fraud."). Pleading fraud with particularity includes alleging facts sufficient to support "the who, what, when, where, and how: the first paragraph of any newspaper story." *Silvester v. Selene Fin., LP*, No. 18-cv-02425, 2021 WL 861080, at *2 (S.D.N.Y. Mar. 8, 2021) (quoting *Backus v. U3 Advisors, Inc.*, No. 16-

cv-8990, 2017 WL 3600430, at *9 (S.D.N.Y. Aug. 18, 2017)).  Rule 9(b) applies to state law claims, such as fraud, brought in a federal court.  *See Fisher v. APP Pharms., LLC*, No. 08-cv-11047, 2011 WL 13266819, at *6 n.8 (S.D.N.Y. Feb. 28, 2011). Here, the Claimant provides no factual details to support his assertion of "loan modification fraud."

The Court finds that the Claimant has not alleged facts that state a claim of fraud against Ditech.

### Florida Deceptive and Unfair Trade Practices Act

The FDUTPA is intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2); *see also Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2d 602, 605–06 (Fla. Dist. Ct. App. 1997) (discussing the purpose of FDUTPA in light of its legislative history).  To state a claim for relief under FDUTPA, the Claimant must allege facts demonstrating "(i) a deceptive act or unfair practice; (ii) causation; and (iii) actual damages."  *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d, 1350, 1364 (M.D. Fla. 2007).  "[A] deceptive practice is one that is 'likely to mislead' consumers."  *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000).  Courts define an unfair practice as "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"  *Samuels v. King Motor Co. of Fort Lauderdale,* 782 So. 2d 489, 499 (Fla. Dist. Ct. App. 2001) (quoting *Spiegel, Inc. v. Fed. Trade Comm'n,* 540 F.2d 287, 293 (7th Cir. 1976)).

In the narrative attached to the Claim and in the Response, the Claimant does not articulate the elements of a claim under FDUPTA.  Rather, he purports to impute malice to transactions

related to Green Tree's servicing of the Mortgage.  The Court reviews each of these allegations below.

### Green Tree Loan Modification

The Claimant denies receiving a loan modification offer or accepting the loan modification in 2014.  Response at 4.  Although the Claimant's notarized signature appears on the Green Tree Loan Modification, he "disputes that this is an agreement that [he] signed."  Claim 24280 at 7. However, that denial flies in the face of the fact that (i) the Claimant made loan payments for four years in the amounts called for under the modification agreement; and (ii) he appeared to make three monthly trial period payments of $1,976.94 on the pay history, which posted on March 6, 2014, April 1, 2014, and April 28, 2014.  *Id.* at 27–28.  On the face of the documents, the loan modification became effective on May 1, 2014, and the Claimant signed it on May 27, 2014.  *Id.* at 74, 77.  It does not support his claim under FDUTPA.

### Escrow Account Issues

The Claimant asserts that Green Tree raised the yearly escrow charge for insurance from $1,200 to $6,000 per year.  Claim 24280 at 4.  He asserts that the change in escrow payments caused him to default on his Mortgage payments.  Response ¶ 8.  The Claimant provides no escrow statements from Bank of America showing that his annual escrow costs were ever $1,200.  In support of the Claims, he provides (i) an escrow statement from Green Tree, dated March 6, 2014, showing a projected annual payment of $5,841.56 for hazard insurance and (ii) an escrow payment history for the period from January 2014 through February 2015 that shows an escrow disbursement in the amount of $2029.64 for "Hazard/Fire."  Claim 24280 at 12–15.  The documents filed in support of the Claims do not demonstrate that Green Tree erred in managing the escrow account.  Furthermore, while the Claimant asserts that Green Tree made mistakes on

the escrow account, he acknowledges that "[e]ventually they corrected the escrow and refunded our overpayments." *Id.* at 4.

In any event, at the time Green Tree took over the servicing of the Mortgage loan in April 2013, the loan was already in default.  On May 24, 2013 Green Tree issued a Notice of Default that showed no payments toward the Mortgage Loan since October 1, 2012, including no payments to escrow.  The Claimant has not alleged facts demonstrating that it was Green Tree's alleged escrow overcharge at the time of service transfer that caused him to fall behind on his Mortgage.

### **Rejected Partial Payments and Misapplied Payments**

The Claimant asserts that after Ditech increased the escrow payment he continued to "make our normal payments outlined in our 2012 loan modification with Bank of America" but that Ditech rejected these as partial payments.  Claim 24280 at 4.  Those contentions do not support his Claim.

First, the Claimant does not identify specific payments that Ditech rejected.  Second, under the Mortgage, when the escrow increased, the Claimant did not have the option of paying the amount called for under the Bank of America Loan Modification.  He was obligated to remit the new total monthly payment amount:

> Borrower shall pay to Lender on the date Periodic Payments are due under the Note, until Note is paid in full, a sum . . . to provide for payment of amounts due for . . . taxes and . . . premiums for any and all insurance required by Lender. . . .  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the

amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.

Mortgage ¶ 3.  Finally, pursuant to the Mortgage, Green Tree is permitted to reject partial payments:

> Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the loan current.  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.

Mortgage ¶ 1.  The Claimant complains that Green Tree would sometimes accept payments and other times reject the payments.  Claim 24280 at 4.  He also asserts that some payments "would be applied to escrow and other times to insurance."  *Id.*  Claimant, however, fails to identify the allegedly rejected, misapplied, or inconsistently applied payments and therefore fails to demonstrate that any application of payments was erroneous.

### **Principal Balance**

The Claimant compares a payoff statement issued by Green Tree on January 24, 2014, showing an alleged payoff balance of $207,572.39, Claim 24280 at 112, with a billing statement from May 1, 2018, from Ditech that shows a principal balance of $263,872.65, *id.* at 34.  From there, the Claimant argues that the principal increased over those four years by $56,300.26.  *Id.* at 5.  However, the Claimant misstates the payoff amount listed on the January 24, 2014 payoff statement.  At that time, the payoff balance, as shown on the statement was $273,645.69.[36]  *Id.* at 112.  This reflects a principal paydown of $10,175.67 over those four years, which is consistent

---

[36]    The total Payoff Amount of $273,645.69 consists of (i) Unpaid Principal Balance of $207,572.39; (ii) Deferred Interest Free Principal Balance of $35,199.83; (iii) Accrued Interest of $12,789.60; (iv) Escrow Past Due of $5,019.72; (v) Escrow Unbilled but Due $8,514.53; (vi) Escrow Shortage of $680.87; and (vii) Foreclosure Costs, filing fees and attorney fees of $4,155.00, minus a Suspense Balance or Unapplied Funds of $286.25.  Claim 24280 at 112; Reply, Ex. D. (Affidavit of Indebtedness).

with the payment history during that time period. *Id.* at 25–27. The Green Tree Loan Modification lists the principal balance at that time—May 17, 2014—of $274,048.32. The Claimant has provided no support for his contention that $56,300.26 in principal was added to the loan between 2014 and 2018.

### Periodic Statements

The Claimant argues that he would have disputed this allegedly wrong Mortgage payoff amount sooner, but that during the period of 2014 to 2018, Green Tree deliberately issued periodic statements without the "principal payoff information." Claim 24280 at 4. He states that he was "unaware of the problem for years due to either Ditech's intentional deceitful behavior or their incompetence." *Id.* He attaches various statements from the period of 2014 to 2018 to Claim 24280 as evidence; however, several statements are redacted in the areas where the unpaid principal balance information would appear. *Id.* at 28–33. The Claimant contends that the first statement that shows the outstanding principal balance was issued on May 1, 2018. This statement does not appear to have any redactions. *Id.* at 34. The Claimant also provides one unredacted monthly statement dated September 15, 2015, entitled "Monthly Informational Statement" that shows (i) year-to-date interest paid; (ii) escrow balance; (iii) corporate advance balance; and (iv) total amount due. *Id.* at 37.

Under the "periodic statement rule," mortgage loan servicers like Ditech are required to provide periodic statements showing the: (i) amount due; (ii) due date; and (iii) late fee amounts. 12 C.F.R. § 1026.41(d)(1). Since attempts to collect a debt from a borrower in bankruptcy run afoul of the automatic stay, the rule excepts servicers from mailing billing statements to debtors in bankruptcy. 11 U.S.C. § 362(a)(6); 12 C.F.R. § 1026.41(e)(5). On November 8, 2012, the Claimant filed for bankruptcy under chapter 7 of the Bankruptcy Code. On February 13, 2013,

26

the Claimant received a discharge, and on July 9, 2014 the Claimant's bankruptcy estate was

closed. *See* Etter Bankruptcy Docket at entries 1, 24, 37.  While the chapter 7 discharge relieved

the Claimant of personal liability on the Mortgage Loan, it did not extinguish the lien against the

Property.  11 U.S.C. § 524(a)(1); *see also Pierre v. Welfare (In re Pierre)*, 194 B.R. 927, 929

(Bankr. S.D. Fla. 1996) ("[T]he Courts have uniformly held that a bankruptcy discharge has no

effect upon a lien which survives the bankruptcy and remains enforceable to the extent permitted

under state law.").  "If a debtor retains nonexempt collateral under section 521(a)(2), the debtor

has the options of reaffirmation, redemption or surrender." *Failla v. Citibank, N.A.*, 542 B.R. 606,

609 (S.D. Fla. 2015).  Because Claimant did not reaffirm the loan, the servicer continued to qualify

for an exemption from the periodic statement rule.  12 C.F.R. § 1026.41(e)(5)(ii).  Each of the

periodic billing statements attached to Claim 24280 contains the following informational

statement:

> THIS IS NOT A BILL.  THIS STATEMENT IS FOR INFORMATIONAL
> PURPOSES ONLY.  If you were an obligor on this account prior to the filing of a
> Chapter 7 bankruptcy, and you have received a discharge, and if the debt was not
> reaffirmed in the bankruptcy case, Green Tree is exercising only its rights under the
> security agreement as allowed by law.  Green Tree is not attempting any act to
> collect or recover the discharged debt as your personal liability.  If the above
> amount is not received by the stated date, Green Tree may exercise its right to seek
> possession of the collateral.

*See, e.g.*, Claim 24280 at 28.  As such, the facts alleged by the Claimant do not show that the

absence of the outstanding principal balance on the monthly informational statements was

"intentionally deceitful behavior" or "incompetence" on the part of Ditech.

### **Assignment Issues**

On the Petition Date, Ditech initiated the New Residential Assignment in these Chapter 11

Cases.  The Claimant contends that it did so in response to his decision to stop paying the Mortgage

Loan in January 2019.  Claim 24280 at 5.  The Claimant provides no support for that contention

and for his assertion that the transfer on the Petition Date makes this assignment inherently fraudulent.

The Claimant attaches an unrecorded assignment of Mortgage, dated February 15, 2019, purportedly provided by LoanCare, wherein New Residential assigned the Mortgage to Fannie Mae. The Claimant contends that the Fannie Mae Assignment contradicts the New Residential Assignment and was "the first of a number of questionable, if not fraudulent documents that have since been presented by Ditech and [LoanCare]." *Id.* at 6. He also states that he later contacted Fannie Mae by telephone and that the Fannie Mae representative said that they had no record of the Fannie Mae Assignment. *Id.*

The Claimant asserts that "the fact that [Ditech] transferred our loan on the very day of their bankruptcy deserves to be rectified." *Id.* at 11. The Claimant fails to state a legal claim regarding the New Residential Assignment and does not provide support for the argument that the transfer of his Mortgage Loan on the Petition Date makes this assignment inherently fraudulent. As to the Fannie Mae Assignment, the document was executed after the Mortgage had been assigned to New Residential. The Claimant fails to explain or support his contention that this document, provided by LoanCare, supports a claim against the Debtors.

### **Loan Modification Applications**

In July 2013, the Claimant submitted a loan modification application to Green Tree. Claim 24280 at 18. On August 21, 2013, Green Tree denied this application on the basis of insufficient income. *Id.* at 106. The Claimant alleges that Green Tree fraudulently relied upon the July 2013 loan modification application in granting the Green Tree Loan Modification. *Id.* at 9; *see also* Response ¶ 13 ("Miraculously, a year after they were denied for insufficient income, the Etters were suddenly approved by Green Tree on identical financials."). The Claimant denies that

he received a loan modification offer in 2014, that he was offered a three-month trial payment plan, that he accepted the loan modification, and that he signed the Green Tree Loan Modification. Response ¶¶ 15–18.

According to the Note and Green Tree Loan Modification, the Mortgage Loan was a Fannie Mae loan.  As of July 1, 2013, servicers of Fannie Mae loans were required to offer eligible borrowers who were at least ninety days delinquent on their mortgage a streamlined modification process in order to lower their monthly payments.[37]  This streamlined modification process required the servicer to send unsolicited loan modification offers to the borrower, who could receive a loan modification simply by completing a trial payment plan.[38]  Borrowers were not required to either request or submit a loan modification package, and servicers were permitted to implement the modification without reviewing a complete loss mitigation application.[39]  Servicers could effectively pre-approve borrowers for a loan modification by offering a trial period payment plan.[40]  This new streamlined modification process was implemented shortly after Green Tree denied the Claimant a loan modification in 2013.  That plainly undercuts the Claimant's assertion that Green Tree fraudulently resubmitted the July 2013 loan modification in order to create a fraudulent loan modification in May 2014.

At the Sufficiency Hearing, the Claimant argued that the implementation of the streamlined modification process occurred on July 1, 2013, which was before he requested his loan

---

[37]    FHFA Announces New Streamlined Modification Initiative (2013) (available at https://www.fhfa.gov/Media/PublicAffairs/Pages/FHFA-Announces-New-Streamlined-Modification-Initiative.aspx)

[38]    This program expired in 2017, when the Flex Modification superseded all GSE loan modification programs.

[39]    Fannie Mae January 2017 Single-Family Servicing Guide, at D2-3.2-08, Fannie Mae Streamlined Modification (eff. Jan. 18, 2017) (available at https://singlefamily.fanniemae.com/media/19256/display).

[40]    Fannie Mae January 2017 Single-Family Servicing Guide, at F-1-24, Processing a Fannie Mae Streamlined Modification (eff. Nov. 9, 2016).

modification which was denied on August 21, 2013. In Claim 24280, the Claimant states that he filled out the required paperwork on July 7, 2013. Claim 24280 at 4. The fact that he filed an application for a loan modification after the streamlined modification process began does not negate the fact that he was offered trial period payments in 2014.

The Claimant argues that "[t]here is no indication that [he and his wife] were offered a three-month trial plan, either, which one would usually expect to see where a borrower was previously denied for insufficient income and then later mysteriously approved." Response ¶ 16. However, the Claimant's payment history shows that three payments were made of $1,976.94 on March 6, 2014, April 1, 2014, and April 28, 2014, just prior to the loan modification effective date of May 1, 2014. Claim 24280 at 27–28. Moreover, the Claimant has submitted documents showing that he continued to make Mortgage payments for at least four years following the modification. Where, as here, "the allegations of [the Claim] are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the [Claim]." *Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1232–33 (S.D.N.Y. 1994). The Court does not accept as true the Claimant's assertion that Green Tree fraudulently relied on the July 2013 loan modification agreement in granting the Green Tree Loan Modification. The Claimant does not state a claim for relief under FDUTPA.

### **Wrongful Foreclosure**

Florida recognizes a cause of action for wrongful foreclosure. *Bank of N.Y. Mellon v. Reyes*, 126 So. 3d 304, 309 n.4 (Fla. Dist. Ct. App. 2013). The elements of such a claim are that a foreclosure sale occurred, and the plaintiff was not in default. *Jallali v. Christiana Tr.*, 297 So. 3d 580, 584 (Fla. Dist. Ct. App. 2014).

The Claimant argues that the "documentary evidence submitted with his claim supports [a claim for wrongful foreclosure]." Response ¶ 37. The Court disagrees. First, the evidence demonstrates that there was no foreclosure sale of the Property, as the Claimant and his wife sold it to a private purchaser in August 2019. *See* Claim 24280 at 7 ("On Monday, 8-12-19, we had to go to closing without resolution on our payoff, knowing that the payoff amount was WAY too much, and we would be owed a lot of money back. Under duress, we paid the amount provided by Loancare to clear the title for the new owners."). Second, the Claimant admits that, in 2019, he and his wife "decided to stop paying the Mortgage," *id.*, and he acknowledges that he was in default under the Mortgage. *See* Response ¶ 9 ("It is undisputed that the Etters fell behind in their payments and that their loan went into foreclosure in 2013."). The Court finds that the Claimant cannot allege facts that demonstrate that he has a claim for wrongful foreclosure against Ditech.

### **Breach of Contract**

The Claimant contends that when Green Tree "removed the deferred principal, erroneously added to the total principal amount, and increased [his] monthly payment," Green Tree nullified the Bank of America Loan Modification and voided the Mortgage Loan. Response ¶ 24. Upon this basis, the Claimant seeks full reimbursement of the payoff amount paid to LoanCare when the Property was sold in 2019. *Id.* The Claimant does not plead or assert a particular legal basis for this contention. The Court will analyze it under breach of contract.

Under Florida law, the elements for a breach of contract are: (i) a valid contract; (ii) a breach of the contract; and (iii) damages. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006). To maintain a breach of contract action, the Claimant must allege facts demonstrating that he performed his obligations under the contract or provided a legally valid excuse for nonperformance. *Id.* The Bank of America Loan Modification altered and

31

supplemented the terms of the Mortgage Loan, but it did not eliminate the Claimant's obligations under the Mortgage Loan to pay his monthly Mortgage payments and escrow. Claim 24280 at 82. By April 2013, when Green Tree began to service the Mortgage Loan, the Claimant had already breached the terms of the Bank of America Loan Modification by failing to make payments under that contract since October 2012. This fact undercuts the Claimant's argument that, but for the Green Tree Loan Modification, he would have been entitled to maintain the terms of the Bank of America Loan Modification.

The Claimant does not dispute the validity of the Bank of America Loan Modification; however, he appears to argue that the Green Tree Loan Modification nullified it and caused him damages. He asserts damages presumably as the terms of the Green Tree Loan Modification were less favorable than the terms of the Bank of America Loan Modification. However, the Claimant fails to state a claim against Green Tree for breach of contract. He also does not articulate any legal basis for finding that the Green Tree Loan Modification nullified the Bank of America Loan Modification and voided the Mortgage Loan. It is well settled that "cancellation or rescission will not be granted solely for breach of contract, in the absence of fraud, mistake, undue influence . . . or some other independent ground for equitable interference." *Reyes*, 126 So. 3d at 308 (quoting *Int'l Realty Assocs. v. McAdoo*, 99 So. 117, 119 (Fla. 1924)). The Claimant does not state a claim for breach of contract, fraud, or violations of FDUTPA. The Claimant also does not assert any equitable grounds upon which he would be entitled to void the Mortgage Loan.

Finally, the Claimant's central claim is that the Green Tree Loan Modification was fraudulent and therefore unenforceable. However, his damage claim rests on the presumption that the modification was enforceable. "A party cannot simultaneously enforce a contract and disavow it." *Reyes*, 126 So. 3d at 308 n.2; *see also Hustad v. Edwin K. Williams & Co.-E.*, 321 So. 2d 601,

603 (Fla. Dist. Ct. App. 1975) (recognizing that damages for breach of contract and rescission are mutually exclusive remedies, such that "[i]f the contract is rescinded, it is as though it had never existed, but if the remedy sought is damages for its breach the injured party necessarily thereby recognizes and affirms the initial validity and enforceability of the contract.").

The Claimant fails to allege facts that demonstrate a breach of contract action against Ditech. The Claimant also fails to allege facts that demonstrate that he is entitled to a nullification of the Mortgage Loan and thus a refund of the entire payoff amount.

**Whether the Claim is Barred by the Voluntary Payment Doctrine**

The Plan Administrator and Consumer Claims Trustee assert the voluntary payment doctrine as a defense against the Claims. Reply ¶¶ 75–76. Florida's voluntary payment doctrine "provides that 'where one makes a payment of any sum under a claim of right with knowledge of the facts, such a payment is voluntary and cannot be recovered.'" *Ruiz v. Brink's Home Sec., Inc.*, 777 So. 2d 1062, 1064 (Fla. Dist. Ct. App. 2001) (quoting *City of Miami v. Keton*, 115 So. 2d 547, 551 (Fla. 1959)).

"Because the voluntary payment doctrine requires the party asserting it to show that the person who made the payment had full knowledge of the relevant facts, including allegedly wrongful conduct, the doctrine is ordinarily treated as an affirmative defense that may not be raised on a motion to dismiss." *Carrero v. LVNV Funding, LLC*, No. 11–62439, 2014 WL 6433214, at *6 (S.D. Fla. Oct. 27, 2014); *see also Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*, 198 F. Supp. 3d 1332, 1342 (S.D. Fla. 2016) ("the voluntary payment doctrine is an affirmative defense that may not be raised on a motion to dismiss"). An exception to that general rule applies where the affirmative defense appears on the face of the claim. *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984) ("Generally, the existence of an affirmative defense

will not support a motion to dismiss.   Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint."); *see also Ruiz*, 777 So. 2d at 1064 (stating, after reviewing an appeal of a motion to dismissed based upon the voluntary payment doctrine, "[i]f the allegations of the complaint demonstrate the existence of an affirmative defense, such defense may be considered on a motion to dismiss.").

The Claimant contends that as of autumn 2018, he believed the payoff amount under the Mortgage Loan to be incorrect, and at that time, he was having difficulty getting answers from Ditech, LoanCare, New Residential and Lakeview Loan Servicing to what he believed to be an incorrect payoff amount.   Claim 24280. at 5–6 (stating, e.g., "[w]e then used the contact information for New Residential Mortgage, which was provided by LoanCare and our calls and inquiries were never responded to.").   He also contends that his counsel had difficulty getting answers from LoanCare.  *Id.* at 6.   He states that, "[d]uring the month of July, our lawyer made countless calls, received requests for authorizations, and so began the endless loop of tickets and calls."  *Id.*   He also states that "[o]n 8/1/19 we met with our lawyer and discussed various details of our loan.  During that time, we contacted the legal group representing [LoanCare], so that we could try and work things out regarding our payoff.  But to no avail as they needed to 'discuss matters' further with [LoanCare]."  *Id.* at 6.   He even notes that LoanCare "was not even responding to its own lawyer, who was doing his best to help us."  *Id.*   The Claimant says:

> On [August 8, 2019], a representative from [LoanCare's] accounting department called us late that night.  She looked through our documentation and had a copy of the [Green Tree Loan Modification].  We were still in confusion about this since we had never been aware of nor agreed to any alleged loan modification with

[Green Tree]. She said this is why there was a difference in the payoff amount that we were disputing. However, she was still looking into the details of it.

*Id.* at 7. Finally, the Claimant concludes that he and his wife went to closing without resolution to the amount of the payoff and paid the amount provided by LoanCare "under duress" in order to close. *Id.*

The Plan Administrator and Consumer Claims Trustee argue that the "Claimant was aware of the loan modification once he began making trial payments in March 2014 and that he continued to be aware of it when he adjusted the next four years' worth of payments to comport with the principal and interest obligation set forth in the modification." Reply ¶ 75. Alternatively, they argue that, even if the Claimant was not aware of the Green Tree Loan Modification until August 9, 2019, he admits to paying off the loan despite that knowledge. *Id.*

In *Jefferson Cnty v. Hawkins*, 2 So. 362 (Fla. 1887), the Florida Supreme Court articulated the foundation for Florida's voluntary payment doctrine, as follows:

> [M]oney voluntarily paid upon claim of right, with full knowledge of all the facts, cannot be recovered back merely because the party, at the time of payment, was ignorant, or mistook the law, as to his liability. The illegality of the demand paid constitutes of itself no ground for relief, but there must be, in addition, some compulsion or coercion attending its assertion which controls the conduct of the party making the payment. To constitute such compulsion or coercion as will render payment involuntary, there must be some actual or threatened exercise of power possessed, or supposed to be possessed, by the party exacting or receiving the payment over the person or property of the party making the payment, from which the latter has no other means of immediate relief than by advancing the money.

*Id.* at 365. Indeed, "[a]ll payments are presumed to be voluntary until the contrary is made to appear. . . . Payment made in pursuance of a bargain or compromise is voluntary." *N. Miami v. Seaway Corp.*, 9 So. 2d 705, 707 (Fla. 1942) (internal citations omitted) (addressing the payment of taxes). Thus, "[w]here one makes a payment of any sum under a claim of right with knowledge of the facts, such payment is voluntary and cannot be recovered." *City of Miami v. Keton*,

115 So. 2d 547, 551 (Fla. 1959).    A payment will be "considered to have been tendered 'involuntarily' if payment is demanded, and the potential consequences of non-payment are sufficiently severe so as to leave little or no choice but to tender payment." *City of Key West v. Fla. Cmty. Coll.*, 81 So. 3d 494, 500 (Fla. Dist. Ct. App. 2012).    That is to say that "the pressure or advantage must be of such an extent as to remove the situation from the ordinary debtor-creditor relationship and negate the voluntariness of the payment." *Hassen v. Mediaone of Greater Fla., Inc.*, 751 So. 2d 1289, 1290 (Fla. Dist. Ct. App. 2000).    *In City of Miami v. Kory*, 394 So. 2d 494 (Fla. Dist. Ct. App. 1981), the court explained, as follows:

> [T]here are in essence two factors which must coexist in order to establish duress[,] one which deals with the party allegedly under duress; the other, with the party allegedly imposing it.  It must be shown (a) that the act sought to be set aside was effected involuntarily and thus not as an exercise of free choice or will and (b) that this condition of mind was caused by some improper and coercive conduct of the opposite side.

*Id.* at 497.

It is clear from the face of Claims that the Claimant (i) freely elected to close on the sale of the Property and pay off the Mortgage, even as he believed that the payoff amount was overstated, and (ii) that Ditech did not, in any way, coerce him to close the sale.  Indeed, the Claimant acknowledges that he closed notwithstanding that Ditech allegedly failed to respond to his requests for confirmation of the payoff amount under the Mortgage.  *See* Claim 24280 at 6–7. Thus, from the face of the Claims, it is clear that Ditech did not demand anything of the Claimant and did not coerce the Claimant to do anything.  Claimant elected to close on the sale of the Property and to pay off the Mortgage, even absent the payoff information.  *See Kunzelmann v. Wells Fargo Bank, N.A.*, No. 11-cv-81373, 2012 WL 2003337, at *3 (S.D. Fla. June 4, 2012) (voluntary payment doctrine will bar claim where record shows that claimant voluntarily paid the insurance premiums at issue with full knowledge of their alleged excessiveness).

Application of the voluntary payment doctrine bars the Claims.

**Whether the Court May Consider Claims Asserted Against LoanCare**

In addition to asserting claims against Ditech, the Claimant also purports to assert claims against LoanCare, the successor-servicer. He contends that "Ditech and Loancare/New Residential Mortgage conspired together to enforce a modification that they knew to be, at the very least, non-existent, and perhaps, fraudulent." Claim 24280 at 11.

Effective April 1, 2019, LoanCare assumed collection of the Claimant's Mortgage payments. *Id.* at 42. On April 11, 2019, LoanCare mailed the Claimant a debt validation letter, which the Claimant disputed through counsel. *Id.* at 5. On June 21, 2019, LoanCare responded to the Claimant's dispute. *Id.* On August 7, 2019, Claimant filed the CFPB Complaint. *Id.* at 7. On September 11, 2019, LoanCare provided the CFPB Response and attempted to validate the debt. The Claimant alleges that the delay in debt validation amounts to a violation of the Fair Debt Collections Practices Act. *Id.* at 8. In the CFPB Response, LoanCare stated that its "files do not support a determination that the loan modification agreement Mr. Etter executed with Green Tree Servicing on May 27, 2014[,] was fraudulent or that the final unpaid principal balance of the loan was incorrect." *Id.* at 80. Claimant complains that "eventually [LoanCare] responded, but only because they were forced to do so. And then, in their 105-page response, they bury the 'evidence' which really isn't any kind of proof of their case at all." *Id.* at 10.

"The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995); *see also In re Fairfield Sentry Litig.*, 458 B.R. 665, 674 (S.D.N.Y. 2011) ("Subject matter jurisdiction over bankruptcy cases is a creature of statute."). Section 1334 of title 28 of the United States Code confers upon the district courts "original and exclusive jurisdiction of all cases arising under

title 11." 28 U.S.C. § 1334(a). The statute also vests the district courts with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11" *Id.* § 1334(b). Pursuant to 28 U.S.C. § 157, the district courts may "refer" any or all of these proceedings "to the bankruptcy judges for the district." The United States District Court for the Southern District of New York has done so through the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). Once a proceeding has been referred, "[t]he manner in which a bankruptcy judge may act . . . depends on the type of proceeding involved." *Stern v. Marshall*, 564 U.S. 462, 473 (2011). In that regard, and "[t]o satisfy constitutional limitations on the subject matter jurisdiction of the Article I bankruptcy courts, bankruptcy jurisdiction is divided into 'core' and 'non-core' jurisdiction." *In re Fairfield Sentry*, 458 B.R. at 674 (citations omitted). "Determining whether a case is core or non-core is a threshold question." *Silvester v. Selene Fin., LP*, No. 18-cv-02425, 2019 WL 1316475, at *4 (S.D.N.Y. Mar. 21, 2019).

Core proceedings are those that either "arise under" title 11, or "arise in" cases under title 11. *See Stern*, 564 U.S. at 476 ("Under our reading of the statute, core proceedings are those that arise in a bankruptcy case or under Title 11"). Proceedings that "arise under" the Bankruptcy Code are those "that clearly invoke substantive rights created by federal bankruptcy law." *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108–09 (2d Cir. 2006). A claim "arises in" a bankruptcy case if the claim, by its nature, "can only be brought in a bankruptcy case because it has no existence outside of bankruptcy." *Ames Dep't Stores Inc. v. Lumbermens Mut. Cas. Co. (In re Ames Dept. Stores, Inc.)*, 542 B.R. 121, 135 (Bankr. S.D.N.Y. 2015). "Non-core proceedings are those that are not core 'but that [are] otherwise related to a case under title 11.'" *Scott v. Am. Sec.*

*Ins. Co. (In re Scott)*, 572 B.R. 492, 511 (Bankr. S.D.N.Y. 2017) (quoting 28 U.S.C. § 157(c)(1)).

"The test for determining whether litigation has a significant connection with a pending bankruptcy

proceeding [sufficient to confer bankruptcy jurisdiction] is whether its outcome might have any

'conceivable effect' on the bankrupt estate.  If that question is answered affirmatively, the litigation

falls within the 'related to' jurisdiction of the bankruptcy court."  *Publicker Indus. Inc. v. United*

*States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992).

      In these Chapter 11 Cases, the Third Amended Plan has been confirmed.  Section 1334

does not expressly limit a bankruptcy court's jurisdiction following plan confirmation.  *U.S. Brass*

*Corp. v. Travelers Ins. Grp., Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 304 (5th Cir. 2002).

However, courts generally agree that once confirmation occurs, the bankruptcy court's jurisdiction

shrinks.  *See, e.g.*, *In re Metro-Goldwyn-Mayer Studios Inc.*, 459 B.R. 550, 555 (Bankr.

S.D.N.Y. 2011); *Guccione v. Bell*, No. 06-cv-492, 2006 WL 2032641, at *4 (S.D.N.Y. July 20,

2006).  Consequently, a party invoking the bankruptcy court's post-confirmation jurisdiction must

satisfy two requirements.  "First, the matter must have a close nexus to the bankruptcy plan or

proceeding, as when a matter affects the interpretation, implementation, consummation, execution

or administration of the confirmed plan and second, the plan must provide for the retention of

jurisdiction over the dispute."  *Kassover v. Prism Venture Partners, LLC (In re Kassover)*, 336

B.R. 74, 78–79 (S.D.N.Y. 2006) (citing *Penthouse Media Grp. v. Guccione (In re General Media*

*Inc.)*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005)).

      The claims against LoanCare fail to satisfy the two-part test.  First, those claims have no

nexus, let alone a close nexus, to the Third Amended Plan.  The claims do not affect the

interpretation, implementation, consummation, execution, or administration of the plan.  *In re*

*Kassover*, 336 B.R. 80 (finding that claims against an individual in her role as post-confirmation

distributing agent of sale proceeds, not estate proceeds, had no effect on the estate); *Silvester*, 2019 WL 1316475, at *5 (holding that the close nexus test was not satisfied as "the fraud claims are separate and distinct from the core bankruptcy proceeding").    Second, in entering the Confirmation Order, the court did not retain any jurisdiction over LoanCare.

To the extent that the Claimant seeks recovery from LoanCare under the Fair Debt Collections Practices Act or asserts any other cause of action against LoanCare, this relief is not available in these Chapter 11 Cases, as the Court lacks subject matter jurisdiction over those causes of action.

**Whether Claim 24280 Is Entitled to Administrative Priority**

The key difference between the Claims is that the Claimant filed Claim 24280 as an administrative expense claim and Claim 24281 as an unsecured claim.    The Claimant bears the burden of establishing that Claim 24280 is entitled to administrative priority status under the Bankruptcy Code.    *See, e.g.*, *In re Bethlehem Steel Corp.*, 479 F.3d 167, 172 (2d Cir. 2007) ("The burden of proving entitlement to priority payment . . . rests with the party requesting it."); *In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991) ("The burden of proving entitlement to an administrative expense is on the claimant and the measure of proof is a preponderance of the evidence.").

Section 503 of the Bankruptcy Code establishes an administrative expense priority for certain enumerated categories of estate expenses.    The Claimant asserts that Claim 24280 is entitled to administrative expense priority under section 503(b)(9) of the Bankruptcy Code.    *See* Claim 24280 at 2.    This section provides that "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business" shall be allowed as

administrative expenses.  11 U.S.C. § 503(b)(9).  A claimant seeking allowance and payment of an administrative expense claim under section 503(b)(9) must show that (i) the claim arises from the sale of goods to the debtor; (ii) the claimant sold the debtor goods in the ordinary course of the debtor's business; (iii) the goods were received by the debtor within twenty days of the bankruptcy filing; and (iv) the value of the goods.  The Claimant fails to allege any facts that demonstrate that Ditech received goods from him within twenty days of the commencement of these Chapter 11 Cases, much less that he sold those goods to Ditech in the ordinary course of Ditech's business. Beyond merely checking an administrative expense claim box, the Claimant provided no details that the Court could consider, and thus, he has failed to demonstrate any facts that would support his contention that he holds an administrative expense claim against Ditech.

Based on the foregoing, the Court finds that the Claim 24280 is not entitled to administrative priority status under the Bankruptcy Code.

### Whether the Claims Are Timely Filed Claims Against Ditech

The Consumer Claims Bar Date was June 3, 2019.  The Claimant filed the Claim 24280 after the Consumer Claims Bar Date lapsed, but prior to the November 11, 2019, the Administrative Expense Bar Date.  However, as set forth above, that claim is not entitled to administrative expense priority status.  It is a late filed consumer claim.  So is Claim 24281 as the Claimant filed it on October 5, 2019—well past the Consumer Claims Bar Date.

The bar date is "an integral step in the reorganization process."  *In re Best Prods. Co., Inc.*, 140 B.R. 353, 357 (Bankr. S.D.N.Y. 1992).  The bar date allows "the parties in interest to ascertain with reasonable promptness the identity of those making claims against the estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization."  *Id*. "The Second Circuit strictly observes bar dates . . . [and] the equities will rarely if ever favor a

party who fails to follow the clear dictates of a court rule." *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 119 (Bankr. S.D.N.Y. 2010).

The Claimant concedes that he did not timely file Claim 24281 against the Debtors; however, he argues that he never received notice of these Chapter 11 Cases and that the Court should extend his time for filing that claim pursuant to Bankruptcy Rule 9006(b)(1).[41] Response ¶ 34.  The Affidavit of Service filed by Ditech in the Chapter 11 Cases shows that it timely served the Claimant with notice of the Consumer Claims Bar Date at his address and email address.  Reply, Ex. K (Affidavit of Service), ECF No. 496.

Moreover, and in any event, as of the Petition Date, the Claimant is an "unknown creditor" requiring only publication notice.  *See In re BGI, Inc.*, 476 B.R. 812, 820 (Bankr. S.D.N.Y. 2012) ("For unknown creditors, constructive notice, such as notice by publication, will suffice.").  As of the Petition Date, there was no pending action between the Claimant and Ditech, and the Debtors had no reason to suspect that the Claimant had a legal claim against them.  *See In re Chemtura Corp.*, No. 09-11233, 2016 WL 11651714, at *12 (Bankr. S.D.N.Y. Nov. 23, 2016) (holding that a "'known' creditor is one whose identity is either known or 'reasonably ascertainable by the debtor' . . . a creditor's identity is 'reasonably ascertainable' if that creditor can be identified through 'reasonably diligent efforts'"); *In re Drexel Burnham Lambert Grp. Inc.*, 151 B.R. 678, 680–81 (Bankr. S.D.N.Y. 1993), *aff'd*, 157 B.R. 532 (S.D.N.Y. 1993) (noting that, "[f]or obvious

---

[41]    Bankruptcy Rule 9006(b)(1) states in relevant part,

> when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b)(1)

reasons, debtors need not provide actual notice to unknown creditors.  It is widely held that unknown creditors are entitled to no more than constructive notice (i.e., notice by publication) of the bar date.").  In these Chapter 11 Cases, Ditech provided publication notice of the bar date through the national editions of *The New York Times* and *USA Today*.  Bar Date Order ¶ 12.

The Claimant contends that he is entitled to relief from the Bar Date pursuant to Bankruptcy Rule 9006.  Response ¶ 34.  "[Bankruptcy] Rule 9006(b)(1) permits a court to extend the bar date after the expiration of the specified period on a motion by the late filer 'where the failure to act was the result of excusable neglect.'"  *In re Arts Des Provinces de France, Inc.*, 153 B.R. 144, 147 (Bankr. S.D.N.Y.1993) (quoting Fed. R. Bankr. P. 9006(b)(1)).  The Supreme Court construed the phrase "excusable neglect" as it is used in Bankruptcy Rule 9006(b)(1) and concerned the filing of late claims.  *Pioneer Inv. Servs. Co. v. Brunswick Associated Ltd. P'ship*, 507 U.S. 380, 395.  It found that the determination is an equitable one that takes account of all of the surrounding circumstances:

> These include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.*  The burden of proof rests with the party asserting excusable neglect.  *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 121 (2d Cir. 2005).  The Claimant has failed to meet his burden under Bankruptcy Rule 9006.

Based on the foregoing, the Court finds that the Claims were not timely filed, and thus, for that additional reason, the Claimant is barred from asserting these Claims.

## **Conclusion**

Based on the foregoing, the Court sustains the Objections and disallows and expunges the

Claims.


IT IS SO ORDERED.

Dated:  New York, New York
August 1, 2023


/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge