UNITED STATES BANKRUPTCY COURT           NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- x

In re:                           :    Case No. 19-10412 (JLG)

                                 :    Chapter 11

Ditech Holding Corporation, *et al.*,    :

                                 :

                  Debtors.[1]  :    (Jointly Administered)

--------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER SUSTAINING THE PLAN ADMINISTRATOR'S AND CONSUMER CLAIMS TRUSTEE'S THIRTY-FIRST OMNIBUS OBJECTION AND THE CONSUMER CLAIM TRUSTEE'S FIFTY-NINTH OMNIBUS OBJECTION WITH RESPECT TO THE PROOFS OF CLAIM FILED BY DOUGLAS WAIN AND ELISA WAIN

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10022
By:    Richard Levin

WEIL, GOTSHAL & MANGES LLP
*Attorneys for the Plan Administrator*
767 Fifth Avenue
New York, New York 10153
By:    Ray C. Schrock, P.C.
        Richard W. Slack
        Alexander Welch

Douglas Wain and Elisa Wain
*Appearing Pro Se*
PO Box 7473
Westlake Village, California 91359

---

[1]    The Debtors' *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1326, was confirmed, which created the Wind Down Estates. The Wind Down Estates, along with the last four digits of each of their federal tax identification numbers, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction[2]

On May 30, 2019, Douglas and Elisa Wain (the "Claimants") filed proof of claim number 23007 ("Claim 23007") asserting an unsecured claim in an undetermined amount against Ditech Financial LLC ("Ditech").  Claim 23007 at 1–2.  On November 8, 2019, the Claimants filed proof of claim number 60075 ("Claim 60075," and together with Claim 23007, the "Claims").  In it, they assert an administrative expense claim in an undetermined amount against Ditech Holding Corporation.  Claim 60075 at 1–2.

On January 17, 2020, the Plan Administrator and the Consumer Claims Trustee jointly filed their Thirty-First Omnibus Objection (the "Thirty-First Objection").[3]  In it, they object to and seek to expunge Claim 60075 on the basis that it is duplicative of Claim No. 23007.  Thirty-First Objection, Ex. A (List of Claims) at 18.

On September 23, 2022, the Consumer Claims Trustee filed her Fifty-Ninth Omnibus Objection (the "Fifty-Ninth Objection," and together with the Thirty-First Objection, the "Objections").[4]  In it, she objects to Claim 23007 on the basis that the claim "[f]ails to state a claim for which relief can be granted" and on the basis that the "[c]laim is unliquidated."  Fifty-Ninth Objection, Ex. A (List of Claims) at 2.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objections, Claims Procedures Order and Third Amended Plan, as applicable.  References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412.

[3]    *Thirty-First Omnibus Objection to Proofs of Claim (Duplicative Consumer Creditor Claims)*, ECF No. 1763.

[4]    *Consumer Claims Trustee's Fifty-Ninth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims)*, ECF No. 4264.

On March 24, 2020, the Claimants filed a response (the "First Response")[5] to the Thirty-First Objection.  On June 6, 2023, they filed another response to both Objections (the "Second Response,"[6] and together with the First Response, the "Responses").

On July 17, 2023, the Plan Administrator and Consumer Claims Trustee jointly filed a reply (the "Reply")[7] in support of the Objections.

On August 28, 2023, the Claimants filed a three-page letter with this Court, which the Court will consider as a surreply (the "Surreply").[8]  As part of the Surreply, the Claimants requested that the Court adjourn the Sufficiency Hearing for ninety days (the "Adjournment Request").

On August 29, 2023, the Plan Administrator and Consumer Claims Trustee filed a response objecting to the Adjournment Request (the "Adjournment Response").[9]

Pursuant to the Claims Procedures Order,[10] the filing of the Responses caused an adjournment of the Objections so that the Court could conduct a Sufficiency Hearing on the Claims.  Under that order, the legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim upon which relief may be

---

[5]    *Objection to Motion*, ECF No. 2488.

[6]    *Objection*, ECF No. 4813.

[7]    *Joint Reply of the Consumer Claims Trustee and Plan Administrator in Support of the Thirty-First Omnibus Objection with Respect to the Claim of Douglas Wain and Elisa Wain (Claim 60075) and the Fifty-Ninth Omnibus Objection with Respect to the Claim of Douglas Wain and Elisa Wain (Claims 23007 and 60075)*, ECF No. 4814.

[8]    *Objection to Motion*, ECF No. 4853.

[9]    *Objection of the Plan Administrator and Consumer Claims Trustee to Motion of Douglas and Elisa Wain to Adjourn August 31, 2023 Hearing on Joint Thirty-First Omnibus Objection to Proofs of Claim (Duplicative Consumer Creditor Claims) Solely as to Claim No. 60075, the Consumer Claim Trustee's Fifty-Ninth Omnibus Objection to Proos of Claim (Insufficient Legal Basis Consumer Creditor Claims) Solely as to Claim No. 23007, and the Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim Solely as to Claim No. 23007*, ECF No. 4854.

[10]    *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[11]  Claims

Procedures Order ¶ 3(iv)(a).

On August 31, 2023, in accordance with the Claims Procedures Order, the Court conducted

a Sufficiency Hearing on the Claims.  The Consumer Claims Trustee appeared through counsel

and the Claimants appeared pro se.  The Court heard arguments on the Objections.

The Court has reviewed the Claims, Objections, Responses, Reply, Surreply, and the

Adjournment Response, including all documents submitted in support thereof, and has considered

the arguments made by the parties in support of their respective positions.  As explained below,

accepting all the well-pleaded factual allegations asserted by the Claimants in support of the

Claims as true, drawing all reasonable inferences in the Claimants' favor, and liberally construing

the Claims and Responses to raise the strongest arguments that they suggest, the Claims fail to

state a plausible claim for relief against Ditech.  Accordingly, the Court sustains the Objections

and disallows and expunges the Claims.

### **Jurisdiction**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States

District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska,

C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[11]    Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the
"Bankruptcy Rules").  In filing the Objections, the Consumer Claims Trustee and Plan Administrator initiated a
contested matter.  *See Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs., Inc.)*, 562 F.3d 158,
162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested
matter").  Bankruptcy Rule 9014 governs contested matters.  The rule does not explicitly provide for the application
of Bankruptcy Rule 7012.  However, Rule 9014 provides that a bankruptcy court "may at any stage in a particular
matter direct that one or more of the other Rules in Part VII shall apply."  Fed. R. Bankr. P. 9014.  The Court does so
here in the Claims Procedures Order.

## Background

### The Mortgage Loan

On March 5, 2008, the Claimants executed a promissory note in favor of Central Bank & Trust Co. d/b/a/ Central Bank Mortgage Co. ("Central Bank") in the amount of $417,000 (the "Note").[12]  The Note is secured by a mortgage (the "Mortgage,"[13] and together with the Note, the "Mortgage Loan") on the property located at 2711 Barbados Lane, Lexington, Kentucky 40509 (the "Property").  Subsequently, Ditech became the servicer on the Mortgage.

### The Loan Modification

On April 9, 2018, after the Claimants fell behind on the Mortgage Loan payments, Ditech sent the Claimants an unsolicited Modification Trial Period Plan Notice (the "Notice").  Second Response at 26.  This Trial Period Plan required the Claimants to pay $2,745.31 in May, June, and July of 2018.  *Id.*  The Notice stated that the Mortgage Loan would be modified provided that the Claimants (i) successfully completed the Trial Period Plan by making the required payments; (ii) executed two copies of the modification agreement; and (iii) met all the applicable qualification requirements and Ditech executed the modification agreement.  *Id.* at 26–27.

---

[12]    The Note is annexed to the Reply as Exhibit A.  The Court can properly take judicial notice of matters of public record.  *See Sutton ex rel. Rose v Wachovia Sec., LLC*, 208 F. App'x 27, 30 (2d Cir. 2006) (summary order) (holding that filings and orders in other courts "are undisputably matters of public record"); *Ferrari v. County of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*."); *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) ("[Courts] must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007))); *Leon v. Shmukler*, 992 F. Supp. 2d 179, 184 n.1 (E.D.N.Y. 2014) ("It is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records."); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (noting that courts can take judicial notice of an underlying contract in a contract action as a document "integral to the complaint").

[13]    The Mortgage is annexed to the Reply as Exhibit B.

5

On September 11, 2018, Ditech sent the Claimants a permanent loan modification agreement for their Mortgage Loan (the "Modification Agreement"). *Id.* at 41. The Modification Agreement required the Claimants to execute and return the agreement by October 11, 2018. *Id.* The Modification Agreement also required the Claimants make their first payment of $2,773.69 on October 1, 2018. *Id.* Douglas Wain ("Douglas") alleges that they signed, notarized, and mailed the Modification Agreement back to Ditech on October 2, 2018. He provided a copy of the Modified Agreement, which is signed by the Claimants, dated October 2, 2018. *Id.* at 23, 51. It also includes another signature which states "10-2-2018 Notary, Judy B. Kerr 4-16-2022" and includes a notary stamp. *Id.*

In a letter to the Consumer Claims Trustee, dated March 19, 2019, Douglas explained that the Claimants "do not have a U.S.P.S. receipt for [the] October 2, 2018 mailing," and asserted that Ditech provide them "a postage paid and pre-addressed return envelope with special tracking information on it," and that was then "used to send the [Modification] Agreement back to Ditech." *Id.* at 59. The Claimants provided a mail receipt for $10.00 dated October 2, 2018. It does not include a description of the transaction, any reference to mail or mail contents, or tracking information. *Id.* at 52.

The Claimants allege that they called Ditech multiple times to inquire about the effective date of the modified loan and to inquire about payment instructions. *Id.* at 23. Douglas contends that he received calls from "Oliver," at Ditech on October 2 and 10, 2018. *Id.* He further asserts that, except for a request to update their homeowner's insurance, he "never received a call, or a returned call, letter, document, or any contact at all from Ditech regarding the [Modification] Agreement until the first week in March 2019." *Id.* at 59.

6

The Modification Agreement required that the Claimants make their new total modified monthly mortgage payments beginning October 1, 2018. *Id.* at 43. The Claimants do not provide proof of any payment under the Modification Agreement between July 12, 2018 and August 6, 2019.

On February 27, 2019, Ditech denied the Claimants' modification for "fail[ure] to provide the final executed modification documents within the required time frame." *Id.* at 54. Douglas alleges that on March 13, 2019, "Oliver" told him that "the [Modification] Agreement was never received by Ditech" but later told him that "the [Modification] Agreement was received by Ditech but was missing . . . Elisa's signature." *Id.* at 59.

On June 29, 2019, the Claimants signed and notarized a new loan modification agreement (the "Second Modification Agreement"). *Id.* at 69. On July 5, 2019, a representative from Ditech counter-signed and notarized the Second Modification Agreement. *Id.* at 69–70. They allege that they received the executed agreement on July 28, 2019 and that they "immediately made two payments to Ditech" of $2,654.69 on August 6 and 7, 2019, "to keep [their] account current." *Id.* at 24. They assert that any negative credit reports regarding their Mortgage Loan from September 2018 to the present are "the result of Ditech's failure to honor the modification agreement entered into with Ditech." *Id.*

**The Second Mortgage**

On June 28, 2016, the Claimants entered into a Gold Line Equity Agreement in favor of Central Bank in the amount of $350,000. The Gold Line Equity Agreement was secured by a second mortgage on the Property (the "Second Mortgage"). *See Wain v. Cent. Bank & Tr. Co.*, No. 2021-CA-0202, 2022 WL 16702687, at *1 (Ky. Ct. App. Nov. 4, 2022).[14] Beginning in

---

[14] The docket in this case (the "Docket") is annexed to the Reply as Exhibit C.

August 2018, the Claimants fell behind on their payments for the Second Mortgage. *Id.* On March 6, 2019, Central Bank filed an action to foreclose on the Second Mortgage in the Fayette Circuit Court (the "Kentucky Court"). *Id.* On April 19, 2019, the Claimants filed an answer asserting "that Central Bank failed to negotiate in good faith" and counterclaims for breach of contract, fraud, violation of the Truth in Lending Act (TILA), 15 U.S.C. § 1666a, and the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.100–367.360. *Id.* On November 14, 2019, Central Bank filed an Amended Complaint joining Ditech as the first mortgagee of the Property, as a defendant. *Id.* at *1 n.1. On December 2, 2019, Ditech filed its protective answer. *See* Reply, Ex. C (Docket) at 5. The Claimants did not file any monetary crossclaims against Ditech.

On January 20, 2021, the Kentucky Court granted Central Bank Partial Summary Judgment on the Pleadings and Order of Sale of the Property against the Claimants. *Wain*, 2022 WL 16702687, at *1–2. The court ruled that Central Bank had a valid and enforceable second mortgage on the Property and awarded the bank $358,412.72 plus interest from March 6, 2019, costs, and attorney's fees. *Id.* at *2. The trial court directed that the Master Commissioner sell the Property and apply the proceeds among the lienholders. *Id.* On November 4, 2022, the Court of Appeals of Kentucky affirmed the judgment and order of sale entered by the Kentucky Court in favor of Central Bank.[15] *Id.* at *1.

On February 10, 2021, the Kentucky Court entered a Report of Sale. Docket at 10. On February 23, 2021, the court confirmed the sale. *Id.* at 11. On March 16, 2021, NewRez LLC d/b/a Shellpoint Mortgage Servicing substituted in place of Ditech as defendant and Ditech was dismissed. *Id.*

---

[15]    A copy of the decision is annexed to the Reply as Exhibit D.

**The Chapter 11 Cases**

On February 11, 2019 (the "Petition Date"), Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates (the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, at 5:00 p.m. (prevailing Eastern Time) as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[16] Thereafter, the Court extended the General Bar Date for consumer borrowers, twice, ultimately setting the date as June 3, 2019, at 5:00 p.m. (prevailing Eastern Time).[17]

On September 26, 2019, the Debtors confirmed their Third Amended Plan,[18] and on September 30, 2019, that plan became effective.[19] The Plan Administrator is a fiduciary appointed under the Third Amended Plan who is charged with the duty of winding down, dissolving, and liquidating the Wind Down Estates. *See* Third Amended Plan, art. I, §§ 1.130, 1.184, 1.186. The Plan Administrator, on behalf of each of the Wind Down Estates, is authorized to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany

---

[16]    *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[17]    *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[18]    *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1404.

[19]    *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

Claims. *See id.* art. VII, § 7.1. The Consumer Claims Trustee is a fiduciary appointed under the Third Amended Plan who is responsible for the reconciliation and resolution of Consumer Creditor Claims and distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims in accordance with the Third Amended Plan. *See id.* art. I, § 1.41. The Consumer Claims Trustee has the exclusive authority to object to all Consumer Creditor Claims. *See id.* art. VII, § 7.1.

**The Claims Procedures Order**

On November 19, 2019, the Court entered the Claims Procedures Order. Under that order, the Plan Administrator and Consumer Claims Trustee are authorized to file Omnibus Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order. *See* Claims Procedures Order ¶ 2(i)(a)–(h). A properly filed and served response to an objection gives rise to a "Contested Claim" that will be resolved at a Claim Hearing. *Id.* ¶ 3(iv). The Plan Administrator and/or Consumer Claims Trustee, as appropriate, has the option of scheduling the Claim Hearing as either a "Merits Hearing" or a "Sufficiency Hearing." *Id.* ¶ 3(iv)(a), (b). A "Merits Hearing" is an evidentiary hearing on the merits of a Contested Claim. A "Sufficiency Hearing" is a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. The Plan Administrator and Consumer Claims Trustee requested the Court to conduct a Sufficiency Hearing on the Claims. The legal standard of review that the Court will apply at the Sufficiency Hearing is equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

10

**The Claims**

On May 30, 2019, the Claimants filed Claim 23007 asserting an unsecured claim in an undetermined amount against Ditech.  Claim 23007 at 1–2.  The Claimants do not assert a basis for Claim 23007.  *Id.* at 2.  They did not attach any documentation to the claim and did not provide a narrative or other explanation for the nature and basis of Claim 23007.  On November 8, 2019, the Claimants filed Claim 60075, asserting an administrative expense claim in an undetermined amount against Ditech.  Claim 60075 at 1–2.  The Claimants assert "Other Basis" and "Breach of Cont-TILA-FCRA-RESPA-+" as the basis for Claim 60075.  *Id.* at 2.  Attached to Claim 60075 is a copy of Claim 23007.  *Id.* at 3–5.  The Claimants did not provide any other documentation and did not provide a narrative or other explanation for the nature and basis of Claim 60075, including a basis for asserting an administrative expense claim.

**The Objections**

In the Thirty-First Objection, the Plan Administrator and Consumer Claims Trustee object to and seek to expunge Claim 60075 on the basis that it is duplicative of Claim No. 23007.  Thirty-First Objection, Ex. A (List of Claims) at 18.  In the Fifty-Ninth Objection, the Consumer Claims Trustee objects to Claim 23007 on the basis that the claim "[f]ails to state a claim for which relief can be granted" and on the basis that the "[c]laim is unliquidated."  Fifty-Ninth Objection, Ex. A (List of Claims) at 2.

**The Responses**

In the First Response, the Claimants object to the disallowance of Claim 60075 on the ground that the Court had not yet resolved the objection to Claim 23007.  First Response at 1–2.  They also assert that the Claims are "intertwined," not duplicative, and that since 2020, they have been suffering continuing and on-going damages that may fall under administrative expense

claims. *Id.* at 2. They also explain that they "disputed Ditech's self-inflicted, false, erroneous and fraudulent reporting directly to the three credit agencies in August 2019 and again in December 2019." *Id.* at 6.

In their Second Response, the Claimants state that they object "to any and all motions and efforts by the Ditech Holding Corp.[,] Consumer Creditor Recovery Trust, Office of the Claims Trustee/Consumer Representative, or anyone else, to dismiss, reduce, disallow, reclassify or object in any way to our Proof of Claim No. 23007 or our Administrative Claim No. 60075 in the referenced Ditech Bankruptcy case or in any related case. This includes but is not limited to the Ditech Consumer Representative Fifty-Ninth objection." Second Response at 1. The Claimants allege that Ditech committed fraud, breached the Mortgage contract, violated the Truth in Lending Act ("TILA"), violated the Fair Credit Reporting Act ("FCRA"), and violated the Kentucky Consumer Protection Act ("KCPA"). *Id.* at 3. The Claimants' Second Response asserts an unsecured claim in the amount of $3,106,000. *Id.* at 12.

**The Reply**

In the Reply, the Plan Administrator and Consumer Claims Trustee argue that the Claims fail to state claims for relief under Rule 12(b)(6) and, in the alternative, that the Court should recharacterize Claim 60075 as an unsecured claim and disallow it as a duplicate of Claim 23007.

**The Surreply**

In a letter to the Court, the Claimants again object to any and all motions that seek "to dismiss, reduce, disallow, reclassify or object" to their Claims. Surreply ¶ 1. They note that on July 17, 2023, the Consumer Claims Trustee filed an "eighty paragraph, twenty-eight-page" Reply with this Court, "which not one of the subjects in their filing [were] ever raised with us before in the last four and one-half years." *Id.* They maintain that "[d]espite our good faith . . . the

[Consumer Claims Trustee has] blindsided us with [her Reply]. *Id.* They describe the Reply as an attempt to "railroad and bully us." *Id.* They assert that the accusations in the Reply are "false" and "that majority of [the Reply] is completely irrelevant." *Id.* at 2. They further state that,

> All the actions taken by mortgage holders happened <u>after</u> Ditech's breaches. Ditech['s] breach was the <u>original event</u> that snowballed our predicament. In addition, all the other legislation [the Consumer Claims Trustee] mentions in [her] filing is still ongoing, including an ongoing review by the Kentucky Supreme Court.

*Id.*

In substance, they contend that Fannie Mae brokered an agreement between Ditech and themselves. They assert that, as part of the agreement, (i) the parties agreed to a new payment plan; and (ii) Ditech committed to cleaning up and correctly adjusting their credit reports. *Id.* They assert that Ditech violated that agreement in that it "never lifted a finger to clean up and correctly adjust our credit reports." *Id.* They further assert that the Consumer Claims Trustee "failed to mention that we have sent them copies of our communications with Fannie Mae as well as our communications with Ditech regarding our credit reports and our sworn affidavits about the credit reports with the credit reports themselves." *Id.* The Claimants did not attach the copy of any purported agreement brokered by Fannie Mae or provide any additional communications between themselves, Fannie Mae and Ditech to the Surreply.

The Claimants also request that the Court grant them ninety-days to reply to "each false accusation" in the Reply. *Id.*

**<u>The Response to the Adjournment Request</u>**

In the Adjournment Response, the Plan Administrator and Consumer Claims Trustee note that the Court had previously adjourned the Sufficiency Hearing on the Claims from July 27, 2023, to August 31, 2023, and object to the Adjournment Request on the basis that the Claimants knew

as early as July 21, 2023 that the Sufficiency Hearing was adjourned for one month, yet they filed

their Adjournment Request just days prior to the hearing. Adjournment Response at 2–3. They

argue that the record is complete for a Sufficiency Hearing on the Claim and that there is no reason

for further delay. *Id.* at 3.

The Court conducted the Sufficiency Hearing on August 31, 2023.

**The Estimation Motion**

On September 23, 2023, the Consumer Claims Trustee filed a motion to estimate claims

(the "Motion to Estimate"),[20] which sought, among other things, to estimate Claim 23007 for

purposes of reserves at $0.00 as an unsecured claim that was not a section 363(o) claim. After

receiving an informal objection to the motion by the Claimants, the Consumer Claims Trustee

adjourned the matter, with respect to Claim 23007, to a date to be determined.[21] Subsequently, the

Consumer Claims Trustee filed a notice of hearing,[22] scheduling the Motion to Estimate, with

respect to Claim 23007, to be heard with the Objections on August 31, 2023.

**Applicable Legal Standards**

Under section 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed under

section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C.

§ 502(a). The filing of a proof of claim constitutes "prima facie evidence of the validity and

---

[20]  *Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4266.

[21]  *Notice of Adjournment of Hearing Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4326.

[22]  *Notice of Hearing on the Plan Administrator and Consumer Claims Trustee's Joint Thirty-First Omnibus Objection to Proofs of Claim (Duplicative Consumer Creditor Claims) Solely as to Claim No. 60075, the Consumer Claims Trustee's Fifty-Ninth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Consumer Creditor Claims) Solely as to Claim 23007, and the Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim Solely as to Claim No. 23007*, ECF No. 4815.

amount of a claim." Fed. R. Bankr. P. 3001(f). Section 502(b) prescribes nine categories of claims that will be disallowed, including that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). If an objection filed pursuant to section 502(b)(1) refutes at least one of the claim's essential allegations, the claimant has the burden to demonstrate the validity of the claim. *See, e.g.*, *Rozier v. Rescap Borrower Claims Tr. (In re Residential Cap., LLC)*, No. 15-cv-3248, 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 11-cv-8444, 2012 WL 1886755, at *3 (S.D.N.Y. May 12, 2012).

Under Rule 12(b)(6), a claim may be dismissed due to a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In applying Rule 12(b)(6) to the Claims, the Court assesses the sufficiency of the facts alleged in support of the Claims in light of the pleading requirements under Rule 8(a) of the Federal Rules of Civil Procedure.[23] Rule 8(a)(2) states that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet that standard, the Claims "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 570. To satisfy Rule 12(b)(6), the "pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). In considering whether that standard is

---

[23]    Rule 8 is incorporated herein pursuant to Bankruptcy Rule 7008.

met for a particular claim, the court must assume the truth of all material facts alleged in support

of the claim and draw all reasonable inferences in the claimant's favor. *See ATSI Commc'ns, Inc.*

*v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, the court "need not accord 'legal

conclusions, deductions or opinions that are couched as factual allegations . . . a presumption of

truthfulness.'" *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 591 (S.D.N.Y. 2008) (quoting

*Cal. Pub. Empls.' Ret. Sys. v. N.Y. Stock Exch., Inc. (In re NYSE Specialists Sec. Litig.)*, 503 F.3d

89, 95 (2d Cir. 2007)). In short, "[i]n ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the

duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of

the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622

F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)).

Where a claimant is proceeding pro se, the Court will construe the claim liberally, although

the claim must nonetheless be supported by specific and detailed factual allegations that provide a

fair understanding for the basis of the claim and the legal grounds for recovery against a debtor.

*Kimber v. GMAC Mortg., LLC (In re Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y.

2013) (citing *Iwachiw v. N.Y.C. Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005) (summary

order)). A court may not "invent factual allegations" that were not pleaded by the pro se litigant.

*In re Nofer*, 514 B.R. 346, 353 (Bankr. E.D.N.Y. 2014) (citing *Chavis v. Chappius*, 618 F.3d 162,

170 (2d Cir. 2010)).

## Discussion

### *Whether the Claimants State a Claim for Fraud*

In their Second Response, the Claimants list fraud as one basis for their Claim. Under

Kentucky law, a claim of fraud by misrepresentation requires finding the following six elements:

> (1) that the declarant made a material representation to the plaintiff, (2) that this
> representation was false, (3) that the declarant knew the representation was false or

16

made it recklessly, (4) that the declarant induced the plaintiff to act upon the misrepresentation, (5) that the plaintiff relied upon the misrepresentation, and (6) that the misrepresentation caused injury to the plaintiff.

*Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009) (citing *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999)).  The Claimants must establish each of these elements by "clear and convincing evidence."  *United Parcel Serv. Co.*, 996 S.W.2d at 468.  "Where the proven facts or circumstances merely show inferences, conjecture, or suspicion, or such as to leave reasonably prudent minds in doubt, it must be regarded as a failure of proof to establish fraud."  *Bates v. All. Banking Co.*, No. 2016-CA-000410, 2017 WL 3328116, at *5 (Ky. Ct. App. Aug. 4, 2017).  "A plaintiff is required to prove fraud by clear and convincing evidence, a heightened standard of proof."  *Norwich v. Norwich*, 459 S.W.3d 889, 899 (Ky. Ct. App. 2015) (citing *Hardin v. Savageau*, 906 S.W.2d 356, 357 (Ky. 1995)).

The misrepresentation in support of a fraud claim must relate to a past or present fact that is material, a "mere statement of opinion or prediction may not be the basis of an action."  *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 562 (6th Cir. 2013) (quoting *McHargue v. Fayette Coal & Feed Co.*, 283 S.W.2d 170, 172 (Ky. 1955)).  Moreover, the plaintiff's reliance must be reasonable.  *Bates*, 2017 WL 3328116, at *5.

"Kentucky courts have long suggested that '[t]he very essence of actionable fraud or deceit is the belief in and reliance upon the statements of the party who seeks to perpetrate the fraud.'"  *W. Diamond LLC v. Barnes*, No. 12-cv-00028, 2013 WL 253281, at *4 (W.D. Ky. Jan. 23, 2013) (alteration in original) (quoting *Wilson v. Henry*, 340 S.W.2d 449, 451 (Ky. 1960)).  The law "requires that the party claiming fraud show that he or she relied on the alleged misrepresentation, not a third party."  *Compressed Gas Corp., Inc. v. U.S. Steel Corp.*, 857 F.2d 346, 352 (6th Cir. 1988) (citing *Wilson,* 340 S.W.2d at 451).  In determining if a claimant's reliance is reasonable, a

17

court should consider the claimant's knowledge and experience. *Bassett v. NCAA*, 428 F. Supp. 2d 675, 682 (E.D. Ky. 2006). Reliance "is not reasonable 'when either minimal investigation would have revealed the truth, or when [the relying party] closes its eyes and passively accepts the contradictions that exist in the information available to it." *First Tech. Cap. Inc. v. JPMorgan Chase Bank, N.A.*, 53 F. Supp. 3d 972, at 995 (E.D. Ky. 2014) (alteration in original) (quoting *Claypool v. Brock*, No. 2010-CA-1268, 2011 WL 3793419, at *3 (Ky. Ct. App. Aug. 26, 2011)).

Rule 9(b) of the Federal Rules of Civil Procedure,[24] requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). That rule applies when the claim sounds in fraud. *Romabach v. Chang*, 355 F.3d 164, 167 (2d Cir. 2004). Rule 9(b) applies to state law claims, such as fraud, brought in a federal court. *See Fisher v. APP Pharms., LLC*, No. 08-cv-11047, 2011 WL 13266819, at *6 n.8 (S.D.N.Y. Feb 28, 2011).

In support of their fraud claim, the Claimants submit:

(i) Ditech's Trial Period Plan Modification offer dated April 9, 2018, which offered to modify the Claimants' mortgage if they met all the applicable qualification requirements and made the required trial period plan payments of $2,745.31 on May 1, 2018; June 1, 2018; and July 1, 2018. Second Response, Attachment 1 at 27.

(ii) Documentation showing that they made payments of $2,745.31 on May 1, 2018; June 4, 2018; and July 11, 2018. *Id.*, Attachment 2 at 32, 34, 37.

On September 11, 2018, Ditech approved the Claimants for a permanent modification. The approval called for Claimants to sign and return the signed agreement by October 11, 2018, and to make their first payment of $2,773.69 on October 1, 2018. *Id.*, Attachment 3, at 41, 43.

---

[24]    Rule 9 is incorporated herein pursuant to Bankruptcy Rule 7009.

The Claimants say that they executed the agreement and returned it to Ditech. As support for that argument, they misplace their reliance on a purported Modification Agreement, and on their alleged lack of communications with Ditech.

First, as support for their argument, they submit a copy of a Modification Agreement that they attest (i) they signed on October 2, 2018, before a notary, *id*. at 23, 79, and (ii) on October 2, 2018, returned to Ditech by mail, *id*. at 23; *see id.*, Attachment 6, at 59.

The Claimants have not provided proof that they returned the document to Ditech. The Claimants' proof of mailing includes a receipt from a mailing service that reflects a $10 charge on October 2, 2018, but it does not include either the address where the document was mailed or tracking information. *Id.*, Attachment 4, at 52. Their testimony regarding service of the document on Ditech contradicts their documentary evidence. They say that they believe that "Ditech sent us a postage paid and re-addressed return envelope with special tracking information on it and it was that we used to send the [Modification] Agreement back to Ditech." *Id.*, Attachment 6, at 59. Thus, the Claimants assert differing and inconsistent accounts of the mailing: on the one hand, they assert that they paid $10 to mail the agreement; on the other hand, they say they used a postage pre-paid envelope. Even if the Claimants did mail the agreement on October 2, 2018, nothing in the record contradicts Ditech's position that it did not receive the agreement. Because the September 11, 2018 communication from Ditech conditions the first modification agreement on its actual receipt of the signed agreement, and the Wains have not plausibly alleged that Ditech actually received the first agreement, the first modification cannot have ever taken effect. *Id.*, Attachment 4 at 41.

The Claimants also complain that after they sent the Modification Agreement to Ditech, they placed calls to Ditech regarding the modification but "could not get anyone [from Ditech] on

the phone, when we did, we left messages that were never returned, when we spoke to them, we never got the same answer twice." Response at 6, Second Response at 11. However, they do not provide the dates on which they called Ditech, the telephone numbers called, the name of the person, if any, they spoke to, or the substance of the conversations, if any. *See id.*

They allege that they received a call from "Oliver at Ditech 800 643 0202 Ext. 31667 on October 2, 2018 and October 10, 2018." *Id.*, Attachment 6, at 59. The Claimants state after they received the messages, they "never received a call, or returned call, letter, document, or any contact at all from Ditech regarding the [Modification] Agreement until the first week in March 2019," when Ditech denied the modification due the Claimants failing "to provide the final executed modification agreements within the required time frame." *Id.*

Claimants also provide a copy of the Second Modification Agreement which is signed, dated, and notarized as of June 29, 2019. *Id.*, Attachment 8, at 69–70. The notary signature on this agreement included a dated statement from the notary that it "was acknowledged before me this 29th day of June 2019 by DOUGLAS A. WAIN and ELISA WAIN (name of person acknowledged)." *Id.*, Attachment 8, at 70. This agreement was accepted and acknowledged by Ditech. *Id.*, Attachment 8, at 72.

The Claimants have failed to state a claim for fraud against Ditech under Kentucky law. None of the Claimants' conclusory allegations demonstrate that Ditech made a false statement of material fact to them. Claimants provide no information to support their conclusion that Ditech made a false statement of fact to them, much less that Ditech had knowledge that any such representation was false or that it intended the Claimants to rely on a false statement of material fact. Moreover, Claimants fail to allege any reliance or action taken by Claimants based upon their belief that they had timely submitted the Modification Agreement. For example, they provide no

20

proof that they made payments pursuant to the terms of the Modification Agreement.  Instead, the Claimants provide their offer dated March 19, 2019, to "immediately start to make payments" if Ditech accepted the agreement from October 2, 2018.  *Id.*, Attachment 6, at 59.  The only other payments Claimants claim they made were "two payments to Ditech, on Aug 6, 2019, for $2,654.69 and on Aug 7, 2019, for $2,654.59" pursuant to a second loan modification agreement offered by Ditech on June 25, 2019.  *Id.* at 24.  Finally, although Claimants assert that they were damaged by Ditech's failure to accept the October 2018 loan modification agreement, they fail to allege the injury caused by their reliance.  That is telling, especially in light of the later executed superseding Second Modification Agreement.

The Claimants fail to state a claim for fraud against Ditech.

### *Whether the Claimants State a Claim for Breach of Contract*

Under Kentucky law, to establish a breach of contract claim, the claimant must allege facts demonstrating: "(1) the existence of a contract; (2) a breach of that contract; and (3) damages flowing from that breach."  *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. Ct. App. 2007).  In support of their breach of contract claims, the Claimants allege that Ditech "committed a 'breach of contract' more than once, on many occasions, with false promises and commitments to correct our credit reports.  That Ditech would fix their misrepresentations, errors, and misreport [sic] to these agencies."  Second Response at 3.  They say that the last breach of contract by Ditech "was a deal brokered by Fannie [Mae] between Ditech and us."  *Id.* at 3–4.

The only documentation to support their claim is the copy of the Modification Agreement signed on October 2, 2018, which was never executed by Ditech, and an email exchange between the Claimants and the Fannie Mae Resource Center, dated March 18, 2019, in which the Fannie

Mae Consumer Escalations Resolution Group requested that the Claimants "provide a copy of the executed modification agreement." *Id.* at 5.

In the Surreply, the Claimants reiterate that Fannie Mae brokered an agreement between Ditech and themselves to "start clean with a clean slate." Surreply at 2. This alleged agreement purportedly included a commitment by Ditech to clean up and correctly adjust their credit reports. *Id.* The Claimants contend that they sent "copies of our communications with Fannie Mae" to the Consumer Claims Trustee. *Id.* However, excluding the email exchange with the Fannie Mae Resource Center noted above, the Claimants failed to provide this Court with any communications with Fannie Mae, much less an agreement purporting to commit Ditech to cleaning up their credit reports. The Claimants have failed to allege facts demonstrating the first element of a claim for breach of contract.

The Claimants also failed to allege facts in support of the second element of the claim. Ditech is excused from any claim for breach because the Claimants breached the Mortgage when they defaulted on the loan. "No principle in the law of contracts is better settled than that the breach of an entire and indivisible contract in a material particular excuses further performance by the other party and precludes an action for damages on the unexecuted part of the contract." *O'Bryan v. Mengel Co.,* 6 S.W.2d 249, 251 (Ky. 1928); *see also Bennett v. Bank of Am., N.A.*, 126 F. Supp. 3d 871, 881 (E.D. Ky. 2015) (finding Bank of America was excused from any possible breach "because the [plaintiffs] breached the mortgage contract first by defaulting on the loan."). Moreover, to recover for breach of contract, the Claimants must show "the existence of a duty imposed by the contract . . . and a breach thereof." *Strong v. Louisville & Nashville R.R. Co.*, 43 S.W.2d 11, 13 (Ky. Ct. App. 1931). The Claimants fail to point to any particular provision in the Mortgage that Ditech allegedly breached.

Neither the Note nor the Mortgage reference an obligation on Ditech's part to provide a loan modification or to correct the Claimants' credit reports.  The Mortgage states:

> Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower.  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

Mortgage ¶ 12.  Because the Mortgage Loan did not obligate Ditech to agree to a loan modification, it could not have breached the Mortgage by failing to evaluate the Claimants for a loan modification.  *Bennett*, 126 F. Supp. 3d at 881.  Ditech had no duty, either by law or by contract, to offer Claimants a loan modification.  *Strong*, 43 S.W.2d at 13.

Kentucky law also does not provide a cause of action for a breach of good faith and fair dealing, outside the insurance context.  *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 102 (Ky. 2000) ("[T]he tort of 'bad faith' appl[ies] only to those persons or entities (and their agents) who are 'engaged . . . in the business of entering into contracts of insurance.'" (omission in original) (quoting Ky. Rev. Stat. Ann. § 304.1-040)); *see also Ennes v. H & R. Block E. Tax Servs., Inc.*, No. 01CV-447-H, 2002 WL 226345, at *4 (W.D. Ky. Jan. 11, 2002) ("[D]espite obvious opportunity to do so, Kentucky courts have not extended the tort action for breach of the covenant of good faith and fair dealing to non-insurance contracts.").  The Claimants do not cite to any law extending the covenant of good faith and fair dealing to a mortgage contract.  As such, the Court rejects the breach of contract claim.  *Bennett*, 126 F. Supp. 3d at 881.

Finally, the Claimants' performance under the Trial Period Plan, by making the required payments, did not form a contract that Ditech could have breached. Ditech described the Trial Period Plan as the "first step toward qualifying for more affordable mortgage payments." Second Response at 26. The Notice required that the Claimants successfully make each trial payments, submit two executed copies of the Modification Agreement, and meet all applicable qualification requirements. *Id.* at 27. The loan modification was also conditioned upon Ditech receiving the Modification Agreement. *Id.* at 41. The Claimants fail to demonstrate that all those requirements were met.

The Court finds that the Claimants have not alleged facts sufficient to state a claim for breach of contract by Ditech.

### ***Whether the Claimants State a Claim for a violation of the Truth in Lending Act***

The Claimants state TILA as a basis for Claim 60075. They also include violation of TILA as one of the five bases listed in their Second Response. Second Response at 3. However, the Claimants provide no details in support of the assertion that Ditech violated the TILA. The TILA requires creditors to "provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Maris v. Chase Home Fin. LLC*, 736 F.3d 711, 714 (6th Cir. 2013) (quoting *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998)); *see also Coyer v. HSBC Mortg. Servs. Inc*, 701 F.3d 1104, 1109 (6th Cir. 2012) ("TILA requires that creditors make certain disclosures as to the terms of lending arrangements and provides for civil liability for failure to comply with its provisions."). The Claimants do not explain how Ditech violated TILA and do not offer any evidence in support of the alleged violations, and thus do not state a claim for relief. *Khadher v. PNC Bank, N.A.*, 577 F.

24

App'x 470, 479 (6th Cir 2014) (finding the plaintiff's "argument fails" as the plaintiff did not explain how the defendant violated TILA or offer evidence of the alleged violations).

Furthermore, "[c]laims for damages under TILA . . . are governed by 15 U.S.C. § 1640(e), which provides that any claim . . . must be brought within one year from the date the violation occurred." *GMAC Mortg., LLC v. McKeever*, No. 08-459, 2010 WL 3470312, at *4 (E.D. Ky. Aug. 31, 2010). The statute of limitations for claims alleging a violation of disclosure requirements begins to run when the agreement is entered, and the lender does not make the required disclosures. *Wike v. Vertrue, Inc.*, 566 F.3d 590, 593 (6th Cir. 2009); *see also Welch v. Decision One*, No. 12-2282, 2014 WL 13004385, at *1 (6th Cir. Dec. 30, 2014) (stating that the alleged violations would have occurred when the loan was signed). The Claimants entered into the Mortgage Loan on March 5, 2008. The statute of limitations has long run on any possible violation of TILA. *See Rudisell v. Fifth Third Bank*, 622 F.2d 243, 246 (6th Cir. 1980) (noting that TILA requires that disclosures be made before credit is extended).

To the extent that the Claimants assert a claim based on the Trial Period Plan offer, their claim would still fail because they do not allege that Ditech entered into the Modification Agreement that the Claimants signed on October 2, 2018. Additionally, as previously noted, the Claimants did not adequately plead any specific violations of TILA, and that extends to any violation based on the Modification Agreement and even the Second Modification Agreement which was executed by all parties. *Khadher*, 577 F. App'x at 479.

### ***Whether the Claimants State a Claim for a violation of the Fair Credit Reporting Act***

The Claimants assert that Ditech "wrongfully reported [false information] to the Credit Bureau." Second Response at 1. The FCRA governs the accuracy and fairness of credit reporting

information on consumers. *See* 15 U.S.C. § 1681. As such, it is the only applicable law that would cover such conduct.

Section 1681s-2(a) address the responsibilities of an information furnisher, such as Ditech, to provide accurate information to a credit reporting agency ("CRA"), including a duty to refrain from knowingly reporting inaccurate information, and correcting any information that the furnisher later discovers to be inaccurate. *See id.* § 1681s-2(a). Section 1681s-2(b) sets forth the duties of an information furnisher in the face of a dispute regarding the completeness or accuracy of a consumer's credit report. *See id.* § 1681s-2(b); *see also Sprague v. Salisbury Bank and Tr. Co.*, 969 F.3d 95, 98–99 (2d Cir. 2020) (discussing the application of sections 1681s-2(a) & (b)). Under section 1681g, consumers have the right to dispute any information that has been reported to a CRA and appears on their credit report. 15 U.S.C. § 1681g(c)(1)(B)(iii).

In appropriate circumstances, a consumer may bring a civil cause of action against any person who willfully or negligently fails to comply with any requirement imposed under the FCRA. *See id.* § 1681n (civil liability for willful noncompliance); *id.* § 1681o (civil liability for negligent noncompliance). Section 1681s-2(d), however, limits the enforcement of section 1681s-2(a)—dealing with furnishers providing accurate information to the CRAs—exclusively to federal agencies and officials and select state officials. *See id.* § 1681s-2(d). In other words, "the FCRA does not provide a private cause of action for violations of Section 1681s-2(a)." *Sprague*, 969 F.3d at 99; *accord Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) ("Although we have not previously addressed whether the [FCRA] provides a private right of action for violations of § 1681s-2(a), the statute plainly restricts enforcement of that provision to federal and state authorities.").

The only provision of the FCRA that is actionable against a furnisher of information, like Ditech, arises when the furnisher fails to conduct a reasonable investigation in response to a consumer dispute communicated to it by a credit reporting agency.  15 U.S.C. § 1681s-2(b).  However, a dispute communicated from a consumer to a furnisher directly, does not trigger the duty under section 1681s-2(b).  *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010) ("Although a consumer may dispute credit information directly to a furnisher . . . the consumer has no private right of action if the furnisher does not reasonably investigate the consumer's claim after direct notification.").

The Claimants assert that Ditech continued to report them as delinquent and furnished false information to the credit bureaus after they submitted the Modification Agreement on October 2, 2018.  Second Response at 24 ("[A]ny negative credit entries regarding our Ditech account from September 2018 to the present are the result of Ditech's failure to honor the [M]odification [A]greement we entered into with Ditech.").  They make that contention even as they acknowledge that they kept attempting to contact Ditech between October 2018 and February 2019 to determine the status of the Modification Agreement.  *Id.* at 59.  The Claimants do not assert that they made any payments during this time.  They acknowledge that they were informed in February 2019 that their loan modification request had been denied, and it was not until they obtained the Second Modification Agreement, eventually executed by all parties in July 2019, that the Claimants allege making payments in August 2019.  Construing these facts in a light most favorable to the Claimants, the allegations assert a violation of section 1681s-2(a) and not section 1681s-2(b).[25]

---

[25]    As noted, section 1681s-2(b) sets forth the duties of an information furnisher in the face of a dispute regarding the completeness or accuracy of a consumer's credit report.  That section states, in relevant part:

> After receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the [information furnisher] shall—

The latter of which is actionable by consumers under the statute, not the former. *See, e.g.*, *Howard v. Mun. Credit Union*, No. 05-cv-7488, 2008 WL 782760, at *7–8 (S.D.N.Y. Mar. 25, 2008) (granting a motion to dismiss where the court found the allegations aligned with a section 1681s-2(a) violation).

As it applies to section 1681s-2(b), there is no claim under the FCRA if the claimant fails to allege facts demonstrating (1) that any CRA notified the information furnisher in writing that any information provided to the CRA was inaccurate; (2) that the information furnisher failed to investigate after receiving such notice; and (3) that the information furnisher failed to report the results of such investigation to the CRA. *Murray v. JPMorgan Chase NA*, No. 10-3097, 2010 WL 3283012, at *5 (C.D. Ill. Aug. 18, 2010). The failure to allege that a notice of inaccuracy was provided to the information furnisher from a CRA is fatal to such a claim. *Markovskaya v. Am. Home Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340, 344 (E.D.N.Y. 2012) ("It is clear that Defendant is a furnisher of information, and not a credit reporting agency. Accordingly, as set forth above, Plaintiff's only claim can be pursuant to Section 1681s–2(b). As noted, such a claim is stated only when Plaintiff can show that the furnisher received information regarding a consumer's credit directly from a credit reporting agency, and not only from the consumer."). The Claimants stated that the "disputed Ditech's self-inflicted, false, erroneous and fraudulent reporting directly to the three credit agencies in August 2019 and again in December 2019." Second Response at 12. Though the Claimants list three credit reports as part of their evidence, they fail to allege what

---

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

15 U.S.C. § 1681s-2(b)(1).

information was erroneously reported.  The Claimants fail to state a claim under section 1681s-2(b) because they do not allege that Ditech was notified in writing that there was a dispute, that Ditech failed to investigate after receiving such notice and/or that Ditech failed to report their results back to the reporting CRA.

### *Whether the Claimants State a Claim for a Violation of the Kentucky Consumer Protection Act*

The Claimants assert that Ditech violated the KCPA.  Under the KCPA "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes" may bring an action against the seller or lessor for damages suffered as a result of their "[u]nfair, false, misleading, or deceptive acts or practices[.]" Ky. Rev. Stat. Ann. §§ 367.170; 367.220(1).  The KCPA does not apply to "real estate transactions" by individual homeowners. *Craig v. Keene*, 32 S.W.3d 90, 91 (Ky. Ct. App. 2000); *see also Chesser v. Fifth Third Bank, Nat'l Ass'n*, No. 19-081, 2020 WL 354308, at *3 (E.D. Ky. Jan. 21, 2020) (finding that a "mortgage is not a good" for purposes of the KCPA).  For these purposes, a "real estate transaction" encompasses "any transaction involving or touching upon real estate." *Todd v. Ky. Hartland Mortg., Inc.*, No. 2002-CA-002038, 2003 WL 21770805, at *3 (Ky. Ct. App. Aug. 1, 2003).  Courts have held that the KPCA does not apply to claims by a homeowner against the holder of a mortgage, as this is a transaction upon real estate. *See, e.g.*, *id.*; *Riley v. Wells Fargo Bank, N.A.*, No. 16-cv-157, 2017 WL 2240570, at *5 (E.D. Ky. May 22, 2017) ("The transaction in question involves a mortgage loan for Plaintiff's home, and, thus, the KCPA is not applicable because this is real estate transaction by an individual homeowner."); *Chesser*, 2020 WL 354308, at *3 ("[T]he mortgage in this case is not a good under the KCPA, and the act does not apply to real estate transactions, including mortgages.").  This reasoning has also been applied to loan servicers in conducting the servicing of a mortgage. *Johnson v. Nationstar Mortg., LLC*, No. 17-00074, 2017 WL 3401303,

at *5 (W.D. Ky. Aug. 8, 2017).  The Court finds that because the Claims are all based around the Mortgage Loan, this is a "real estate transaction" that is not under the purview of the KCPA. Therefore, the Claimants have not stated a claim for relief against Ditech under the KCPA.

### *Whether Claim 60075 Is Entitled to Administrative Expense Priority*

While the two Claims are virtually identical, the Claimants asserted Claim 60075 as an administrative expense claim and Claim 23007 as an unsecured claim.  The Claimants bear the burden of establishing that Claim 60075 is entitled to administrative priority status under the Bankruptcy Code.  *See, e.g.*, *In re Bethlehem Steel Corp.*, 479 F.3d 167, 172 (2d Cir. 2007) ("The burden of proving entitlement to priority payment . . . rests with the party requesting it"); *In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991) ("The burden of proving entitlement to an administrative expense is on the claimant and the measure of proof is a preponderance of the evidence.").

Section 503 of the Bankruptcy Code establishes an administrative expense priority for certain enumerated categories of estate expenses.  Most of these categories do not apply to Claim 60075 (post-petition taxes and related penalties, compensation and expenses of professionals, committees, and certain creditors and indenture trustees, fees and mileage, rent, health care-related expenses, payment for goods received within twenty days before bankruptcy).  The most relevant category for the Claimants is section 503(b)(1)(A).  It provides that "[a]fter notice and a hearing, there shall be allowed, administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate. . . ." 11 U.S.C. § 503(b)(1)(A).  Generally, courts determine that claims qualify as administrative priority claims if the underlying right to payment arose from a post-petition transaction with the debtor's estate and that the conduct giving rise to the transaction benefitted the estate.  *See In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. 482, 489 (Bankr.

30

S.D.N.Y. 1991) ("The burden of establishing entitlement to priority rests with the claimant and should only be granted under extraordinary circumstances, to wit, when the parties seeking priority have sustained their burden of demonstrating that their services are actual and necessary to preserve the estate." (quoting *In re Amfesco Indus., Inc.*, 81 B.R 777, 785 (Bankr. E.D.N.Y. 1988))).

The Claimants filed Claim 60075, on an Administrative Expense Claim form, but they did not provide any narrative explaining the basis for this assertion. In their First Response, the Claimants contend that they have "continuing and ongoing damages by Ditech in 2020" and that "[m]any of these damages in 2020 may fall under Administrative Claims." First Response at 2. The Claimants, however, do not elaborate on this contention. From the arguments made in the Second Response, it is clear that the Claimants base their Claims on Ditech not honoring the Modification Agreement signed by the Claimants on October 2, 2018, the servicing of their mortgage, and fraudulent reporting to the CRAs. All these events took place before the Petition Date in these Chapter 11 Cases.

Based on the foregoing, the Court finds that the Claim 60075 is not entitled to administrative priority status under the Bankruptcy Code. As such, the Court reclassifies this claim as an unsecured consumer creditor claim. Furthermore, the Court finds that Claim 60075 as an unsecured consumer creditor claim is a duplicate of Claim 23007.

## Conclusion

Based on the foregoing, the Court sustains the Thirty-First Objection as it pertains to Claim 60075 and disallows and expunges this claim. The Court also sustains the Fifty-Ninth Objection

as it pertains to Claim 23007 and disallows and expunges this claim.  The Court denies, as moot,

the Estimation Motion.

IT IS SO ORDERED.

Dated: New York, New York
       August 31, 2023

                                        /s/ *James L. Garrity, Jr.*
                                        Hon. James L. Garrity, Jr.
                                        U.S. Bankruptcy Judge