**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**NOT FOR PUBLICATION**

-------------------------------------------------------- x

In re:                                                                   :

                                            :

Ditech Holding Corporation, *et al.*,                        :

                                            :

                                   Debtors.[1]    :

-------------------------------------------------------- x

Case No. 19-10412 (JLG)
Chapter 11

(Jointly Administered)

**MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS TRUSTEE'S TWENTY-FIFTH OMNIBUS OBJECTION WITH RESPECT TO THE PROOF OF CLAIM FILED BY CAROLYN J. WHITE**

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10022
By:    Richard Levin

Carolyn J. White
*Appearing Pro Se*
3456 Rue Royal
Mobile, Alabama 36693

---

[1]    The Debtors' *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1326, was confirmed, which created the Wind Down Estates. The Wind Down Estates, along with the last four digits of each of their federal tax identification numbers, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## Introduction[2]

On April 19, 2019, Carolyn J. White (the "Claimant") filed proof of claim number 1092 (the "Claim") asserting an unsecured claim in the amount of $219,400.00 against Ditech Holding Corporation. Claim at 1–2. As a basis for the Claim, she states, "Mortgage Loan — Lender paid PMI and principal balance more than home value." *Id.* at 2. On June 12, 2020, the Consumer Claims Trustee filed her Twenty-Fifth Omnibus Objection (the "Objection").[3] In it, she objects and seeks to expunge the Claim on the basis that the "Claimant does not state the basis for a cognizable legal claim, as she alleges no breach of common law or statutory obligation." Objection, Ex. A. (List of Claims) at 9. On or about July 12, 2020, the Claimant provided the Consumer Claims Trustee with an informal response to the Objection. She did not file a formal response to the Objection with the Court. On August 8, 2022, the Consumer Claims Trustee filed the Claimant's informal response (the "Response")[4] on the docket of these Chapter 11 Cases. On August 18, 2023, the Consumer Claims Trustee filed a reply (the "Reply").[5]

Pursuant to the Claims Procedures Order,[6] the filing of the Response caused an adjournment of the Objection so that the Court could conduct a Sufficiency Hearing on the Claim.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable. References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412.

[3]    *Consumer Claims Trustee's Twenty-Fifth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims)*, ECF No. 2544.

[4]    *Informal Response of Carolyn J. White to the Consumer Claims Trustee's Twenty-Fifth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis) (ECF No. 2544)*, ECF No. 4189.

[5]    *Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee's Twenty-Fifth Omnibus Objection with Respect to the Claim of Carolyn White (1092)*, ECF No. 4840

[6]    *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

Under that order, the legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[7]  Claims Procedures Order ¶ 3(iv)(a).

On August 31, 2023, in accordance with the Claims Procedures Order, the Court conducted a Sufficiency Hearing on the Claim.  The Consumer Claims Trustee appeared through counsel and the Claimant appeared pro se.  The Court heard arguments on the Objection.

The Court has reviewed the Claim, Objection, Response, and Reply, including all documents submitted in support thereof, and has considered the arguments made by the parties in support of their respective positions.  As explained below, accepting all the well-pleaded factual allegations asserted by the Claimant in support of the Claim as true, drawing all reasonable inferences in the Claimant's favor, and liberally construing the Claim and Response to raise the strongest arguments that they suggest, the Claim fails to state a plausible claim for relief against Ditech.  Accordingly, the Court sustains the Objection and disallows and expunges the Claim.

## Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[7]    Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  In filing the Objection, the Consumer Claims Trustee initiated a contested matter.  *See Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs., Inc.)*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter").  Bankruptcy Rule 9014 governs contested matters.  The rule does not explicitly provide for the application of Bankruptcy Rule 7012.  However, Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply."  Fed. R. Bankr. P. 9014.  The Court does so here in the Claims Procedures Order.

## Background

### The Mortgage Loan

On September 28, 2007, the Claimant executed a promissory note (the "Note")[8] in favor of New South Federal Savings Bank in the amount of $339,200. The Note was secured by a mortgage (the "Mortgage,"[9] and together with the Note, the "Mortgage Loan") on the property located at 7150 Winding Brook Court, Mobile, Alabama 36695 (the "Property"). On or about November 24, 2008, servicing of the Mortgage Loan was transferred to Everhome Mortgage ("Everhome"). Claim at 6, 11. On or about July 1, 2010, the Claimant modified the Mortgage Loan with Everhome, but she notes that Everhome did not reduce the principal balance. *Id.* On or about April 15, 2014, servicing of the Mortgage Loan was transferred to Green Tree, which later became Ditech Financial LLC ("Ditech"). *Id.*

### The Ditech Loan Modification Process

On May 25, 2018, the Claimant received initial loan modification paperwork from Ditech. *Id.* at 6. By a letter dated June 18, 2018, the Claimant received confirmation that her loan modification application was complete and that Ditech was evaluating the application. *Id.* at 6, 55. On June 27, 2018, Ditech approved her loan modification application and offered her a trial

---

[8]   The Note is annexed to the Reply as Exhibit A. The Court can properly take judicial notice of matters of public record. *See Sutton ex rel. Rose v Wachovia Sec., LLC*, 208 F. App'x 27, 30 (2d Cir. 2006) (summary order) (holding that filings and orders in other courts "are undisputably matters of public record"); *Ferrari v. County of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*."); *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) ("[Courts] must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Leon v. Shmukler*, 992 F. Supp. 2d 179, 184 n.1 (E.D.N.Y. 2014) ("It is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records."); *see Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (in contract action, court can take judicial notice of underlying contract as a document "integral to the complaint").

[9]   The Mortgage is annexed to the Reply as Exhibit B.

payment plan. *Id.* at 51. On or about July 2, 2018, the Claimant appealed the loan modification

on the following bases:

1. A 480-month term is not feasible since she had already paid on the Mortgage Loan for eleven years.

2. The $281,000 estimated fair market value is greater than the $268,000 appraisal that she submitted with her application.

3. The interest rate modification of 0.1% is inadequate.

4. The loan has PMI attached to it, and she should be able to remove the PMI.

5. The forbearance (presumably the deferred balance) merely prolongs the problem for her.

6. The loan modification is not a permanent fix since she is planning her retirement.

*Id.* at 54. In a letter dated July 25, 2018 (the "July 25 Letter"), Ditech explained the basis for the

figures used in the loan modification offer. *Id.* at 51. The pre-modification principal balance was

$297,045.94. The modification was based on a property valuation of $281,000.00 and included a

non-interest-bearing deferred balance of $29,903.16, leaving an interest-bearing principal balance

of $268,911.08. *Id.* at 51.

On July 31, 2018, the Claimant sent a letter purporting to include a check for $200 for a

formal appraisal in connection with the loan modification. *Id.* at 50. The Claimant also requested

a principal reduction of $29,903.16, the same amount as the deferred balance proposed in the loan

modification. *Id.* at 6. The Claimant reasoned that the principal reduction "instead of a

forbearance" would "bring [her] loan in line with the value of the [Property]." *Id.*

The Claimant says that Ditech sent multiple letters to her between August 15, 2018, and

September 10, 2018, indicating that it was continuing to review her dispute. *Id.* at 6–7. By letter

dated September 14, 2018, Ditech acknowledged receipt of her appraisal check and informed her

that it would make three attempts to schedule an on-site appraisal of her Property. *Id.* at 46. At

this point in the chronology, the Claimant expresses frustration at her inability to get answers from Ditech. *Id.* at 7. In November 2018, the Claimant informed Ditech that she was going to cease making her Mortgage payments, explaining, "[t]hat was the only way I got some action going again on my case." *Id.* On November 19, 2019, the Claimant received a notice from Ditech, stating the amount past due as $1,959.31. *Id.* at 45.

On November 19, 2018, Ditech completed the appraisal that it conducted at the Claimant's request. *Id.* at 19. By a letter dated December 19, 2019, Ditech provided her with the results of that appraisal—a valuation of $270,000. *Id.*

**The Ditech Short Sale Process**

On November 19, 2018, the Claimant requested a short sale. *Id.* at 42. According to Ditech, this was the second short sale requested by the Claimant and therefore she was instructed to submit new paperwork. Reply ¶ 22. The Claimant sent Ditech a hardship letter, noting that she was "perplexed" that she had been asked to submit updated paperwork in connection with her second request for a short sale, since she had been "working since April 2018 to get some solutions." Claim at 42.

By a letter dated November 27, 2018, Ditech requested certain documents related to her short sale, including the "Preliminary HUD/Closing Disclosure Forms" and the "Multiple Listing Service." *Id.* at 37. The Claimant alleges that she had previously provided this documentation; however, that documentation was to be supplied from her real estate agent. *Id.* at 7. On December 10, 2018, the Claimant informed Ditech that her short sale contract fell through and that neither a short sale nor loan modification was an option at that point. *Id.*

On March 8, 2019, the Claimant verbally requested a short sale. *Id.* at 8. That same day, Ditech responded by email, (i) acknowledging the receipt of the offer; (ii) providing a checklist of required documents; and (iii) requesting that she submit a third-party authorization form to enable

6

Ditech to communicate directly with her real estate agent.  *Id.* at 84–85.  On March 11, 2019, the Claimant signed a short sale contract with a buyer for $283,300.  *Id.* at 9.  On March 25, 2019, Ditech sent the Claimant a letter informing her that the short sale application package was incomplete.  *Id.*  The Claimant contends that by March 29, 2019, the buyer was threatening to back out of the deal.  *Id.*  The Claimant complains that during this time she was having difficulty communicating with Ditech and "going around in circles."  *Id.*

On April 2, 2019, Ditech advised the Claimant that certain short sale documents needed to be uploaded directly to Fannie Mae's Home Path Short Sales Portal ("HomePath").  *Id.*  That day, the HomePath system recorded a submission from the Claimant's real estate agent.  *Id.* at 73–74. The confirmation advised that the initial review process would take four to five days, after which notification of next steps would be provided.  *Id.*  By letter dated April 3, 2019, Ditech informed the Claimant that her short sale application was complete.  *Id.* at 18.  According to the Claimant, however, the buyer backed out of the deal on April 11, 2019 "due to noncommunication with seller's mortgage company."  *Id.* at 10.

The Claimant contends that she ultimately sold the home in August 2019 and took a "sizeable loss."  Response at 5.

**<u>The PMI Cancellation Process</u>**

On December 10, 2018, the Claimant requested cancellation of her Private Mortgage Insurance ("PMI").  Claim at 7.  By letter dated December 18, 2018, Ditech indicated to the Claimant that her PMI was lender-paid and could not be terminated by the borrower until the mortgage was refinanced, paid off, or otherwise terminated.  *Id.* at 30.  By letter dated December 28, 2018, Ditech denied the Claimant's request for PMI cancellation based on late

payments.  *Id.* at 27.  The Claimant disputed both these assessments made by Ditech and again requested that PMI be cancelled.  *Id.* at 8.

The Claimant contends that a representative from Ditech's escrow department promised her to "order [an] appraisal to see if PMI could be dropped."  *Id.* at 7.  Finally, the Claimant includes a letter dated May 10, 2017, denying cancellation of her escrow payment because she had not reached the 80% loan-to-value threshold.  *Id.* at 62.

## The Chapter 11 Cases

On February 11, 2019, (the "Petition Date") Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates, including Ditech (collectively, the "Debtors"), filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court (the "Chapter 11 Cases").  The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On February 22, 2019, the Court entered an order fixing April 1, 2019, at 5:00 p.m. (prevailing Eastern Time) as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code), to file a proof of claim in these Chapter 11 Cases (the "General Bar Date").[10]  Thereafter, the Court extended the General Bar Date for consumer borrowers, twice, ultimately setting their applicable bar date as June 3, 2019, at 5:00 p.m. (prevailing Eastern Time).[11]

---

[10]  *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[11]  *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

On September 26, 2019, the Debtors confirmed their Third Amended Plan,[12] and on September 30, 2019, that plan became effective.[13]  The Consumer Claims Trustee is a fiduciary appointed under the Third Amended Plan who is responsible for the reconciliation and resolution of Consumer Creditor Claims and distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims in accordance with the Third Amended Plan.  *See* Third Amended Plan, art. I, § 1.41.  The Consumer Claims Trustee has the exclusive authority to object to all Consumer Creditor Claims.  *See id.*, art. VII, § 7.1.

**The Claims Procedures Order**

On November 19, 2019, the Court entered the Claims Procedures Order.  Under that order, the Consumer Claims Trustee is authorized to file Omnibus Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order.  *See* Claims Procedures Order ¶ 2(i)(a)–(h).  A properly filed and served response to an objection gives rise to a "Contested Claim" that will be resolved at a Claim Hearing.  *Id.* ¶ 3(iv).  The Consumer Claims Trustee has the option of scheduling the Claim Hearing as either a "Merits Hearing" or a "Sufficiency Hearing."  *Id.* ¶ 3(iv)(a), (b).  A "Merits Hearing" is an evidentiary hearing on the merits of a Contested Claim.  A "Sufficiency Hearing" is a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors.  The legal standard of review that will be applied by the Court at a Sufficiency Hearing is equivalent to the standard applied by the

---

[12]   *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1404

[13]   *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

Court upon a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

## The Claim

The Claimant asserts her Claim as an unsecured claim in the amount of $219,400. Claim at 2. She lists the basis of the Claim as "Mortgage Loan — Lender Paid PMI and principal balance more than home value." *Id.* She provides a table that details the components of the Claim: (i) difference in amount paid for the home and Ditech's valuation—$69,000; (ii) twelve years of stress, pain and suffering—$100,000; and (iii) refund of TSP funds—$50,000. *Id.* at 5. She also details a chronological narrative of her allegations against the Debtors. *See* Claim at 6–10. The Claimant asks the Court to reimburse her for the PMI that she attempted to cancel multiple times. *Id.* at 6. She also asks the Court to reduce the principal balance on her Mortgage Loan because the loan was "overvalued" at the time of origination in 2007, and notes that she paid approximately $339,000 for her Property, yet Ditech valued her Property as worth only $270,000. *Id.* She asks the Court to review and restructure her loan, in order to afford her "the opportunity to relinquish the extreme stress" that she has been under, and to "right the wrong with this predatory loan that started with Everhome Mortgage," and to permit her to establish some equity in the Property and recover the funds she expended to repair the "pex plumbing" in it. *Id.* at 10.

## The Objection

In her Objection, the Consumer Claims Trustee asserts that the Court should disallow and expunge the Claim stating, "Claimant asserts that Debtors failed to timely process a loss mitigation application. Claimant does not state the basis for a cognizable legal claim, as she alleges no breach of common law or statutory obligation." Objection, Ex. A. (List of Claims) at 9.

**The Response**

In the Response, the Claimant requests that the Court allow her Claim "to proceed per the 2009 Home Affordability Modification Program, the Fair Housing Act, 42 U.S.C. § 3605 et seq., the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., the National Foreclosure Settlement and the Independent Foreclosure Review." Response at 4. She asserts that Everhome mishandled her loan modification, that it failed to provide her with pay-for-performance incentive payments she was entitled to under HAMP, and that it transferred servicing of her Mortgage Loan to Green Tree to ensure that "it would not be a part of the loan inventories being reviewed for predatory lending." *Id.* at 4–5. She also alleges that the decline of her Property's value is attributable to major plumbing issues. *Id.* at 5. Finally, she states that she sold the Property in August 2019 taking a "sizable loss." *Id.*

**The Reply**

In the Reply, the Consumer Claims Trustee asserts that the Claimant (i) fails to adequately plead a claim under Rule 8(a) of the Federal Rules of Civil Procedure ("Rule 8(a)"),[14] Reply ¶¶ 45–47; and (ii) fails to assert facts sufficient to state a plausible claim under Rule 12(b)(6), *id.* ¶¶ 48–81.

## Applicable Legal Standards

Under section 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The filing of a proof of claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). Section 502(b) prescribes nine categories of claims that will be disallowed, including that "such claim is unenforceable against the debtor and property

---

[14]    Rule 8 is incorporated herein pursuant to Bankruptcy Rule 7008.

of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). If an objection filed pursuant to section 502(b)(1) refutes at least one of the claim's essential allegations, the claimant has the burden to demonstrate the validity of the claim. *See, e.g.*, *Rozier v. Rescap Borrower Claims Tr. (In re Residential Cap., LLC)*, No. 15-cv-3248, 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 11-cv-8444, 2012 WL 1886755, at *3 (S.D.N.Y. May 12, 2012).

Under Rule 12(b)(6), a claim may be dismissed due to a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In applying Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the Claim in light of the pleading requirements under Rule 8(a) of the Federal Rules of Civil Procedure. Rule 8(a)(2) states that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet that standard, the Claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 570. To satisfy Rule 12(b)(6), the "pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). In considering whether that standard is met for a particular claim, the court must assume the truth of all material facts alleged in support of the claim and draw all reasonable inferences in the claimant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, the court "need not accord 'legal

12

conclusions, deductions or opinions that are couched as factual allegations . . . a presumption of truthfulness.'" *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 591 (S.D.N.Y. 2008) (quoting *Ca. Pub. Emps.' Ret. Sys. v. N.Y. Stock Exch., Inc. (In re NYSE Specialists Sec. Litig.)*, 503 F.3d 89, 95 (2d Cir. 2007)).  In short, "[i]n ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)).  Where a claimant is proceeding pro se, the Court will construe the claim liberally, although the claim must nonetheless be supported by specific and detailed factual allegations that provide a fair understanding for the basis of the claim and the legal grounds for recovery against a debtor. *Kimber v. GMAC Mortg., LLC (In re Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (citing *Iwachiw v. N.Y.C. Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005) (summary order)).  A court may not "invent factual allegations" that were not pled by the pro se litigant. *Mirarchi v. Nofer (In re Nofer)*, 514 B.R. 346, 353 (Bankr. E.D.N.Y. 2014) (citing *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).

## Discussion

### The Claimant Fails to Adequately Plead a Claim Under Rule 8(a)

The Consumer Claims Trustee asserts that the Court should expunge the Claim because neither the Claim nor the Response meet the minimal pleading standards under Rule 8. Reply ¶¶ 45–47.  While the Claim contains a detailed chronology of alleged issues that the Claimant faced in attempting to (i) modify her Mortgage Loan to reduce her principal balance; (ii) process a short sale; and (iii) cancel PMI, none of her complaints are framed as a cause of action.  While the Claimant accuses the Debtors of "nonprofessional handling of [her] loan" and

"snare tactics [sic]," these are not cognizable legal claims. Claim at 6. While the Response broadly requests relief under HAMP, the Fair Housing Act, the Fair Credit Reporting Act, the National Foreclosure Settlement, and the Independent Foreclosure Review, the Claimant fails to plead the elements of any causes of action under those laws.

"In accordance with the liberal pleading standards of Rule 8, 'a plaintiff must disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369, 384 (Bankr. S.D.N.Y. 2007) (quoting *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir. 2000)). The Claim and Response fail to satisfy that standard. There is insufficient detail in those documents to state a claim for relief against the Debtors. The Court finds that the Claim and Response, either separately or collectively, do not meet the pleading requirements of Rule 8(a) because the allegations contained within are vague, confusing, and difficult to understand. That is grounds for disallowing and expunging the Claim. *See Phipps v. City of N.Y.*, No. 17-cv-6603, 2019 WL 4274210, at *2 (S.D.N.Y. Sept. 10, 2019) (dismissing a complaint under Rule 8(a) that was "convoluted, confusing, and difficult to comprehend"); *Djangmah v. Magafara*, No. 16-cv-6136, 2018 WL 4080346, at *3 (S.D.N.Y. Aug. 26, 2018) (dismissing a complaint under Rule 8(a) that was "so confusing, ambiguous and incomprehensible that it does not place Defendants on fair notice of Plaintiff's claims").

**The Claimant Fails to Assert Facts Sufficient to State a Plausible Claim Under Rule 12(b)(6)**

The Claimant seeks relief based on the Debtors' alleged failure to (1) cancel her PMI, (2) reduce the principal balance on her loan through a loan modification, and (3) timely complete a short sale. PMI is regulated under the Homeowner's Protection Act ("HPA") and loss mitigation procedures are governed by the Real Estate Settlement Procedures Act ("RESPA"). Although the

Claimant does not directly implicate either statutory scheme, the Court will liberally construe the Claimant's complaints as requests for relief under the HPA and RESPA.

## HPA

"In 1998, Congress enacted the HPA to 'establish Federal guidelines for disclosure and termination of private mortgage insurance.'" *Fellows v. CitiMortgage, Inc.*, 710 F.Supp.2d 385, 396 (S.D.N.Y. 2010) (quoting H.R. Rep. No. 105-55, at 4 (1997)). HPA, codified under 12 U.S.C. § 4901, et. seq., establishes uniform procedures designed to address homeowners' difficulties in cancelling private mortgage insurance. *See id.* In the case of Borrower Paid Mortgage Insurance ("BPMI"), a borrower may request the cancellation of PMI on a fixed rate mortgage once the principal balance of the mortgage reaches eighty percent of the original value of the property securing the loan. 12 U.S.C. § 4901(2). To request cancellation of BPMI, the borrower must (1) submit a request in writing; (2) have a good payment history; (3) be current on payments; and (4) establish that the value of the property securing the mortgage has not declined below the original value of the property. *Id.* § 4902(a). These requirements only apply to BPMI and do not apply to Lender Paid Mortgage Insurance ("LPMI"). *Id.* § 4905(b) ("Sections 4902 through 4904 of this title do not apply in the case of lender paid mortgage insurance."). LPMI is "private mortgage insurance that is required in connection with a residential mortgage transaction, payments for which are made by a person other than the borrower." *Id.* § 4905(a)(2).

The Claimant has LPMI, not BPMI. Claim at 30, 42. Accordingly, she does not have the right to cancel the PMI. Lenders typically recoup LPMI based on higher interest rates on the mortgage loan. 144 Cong. Rec. S8268 (daily ed. July 15, 1998) (Sen. Carol Moseley-Braun); *see also Dwoskin v. Bank of Am., N.A.*, No. 11-1109, 2016 WL 3955932, at *1 (D. Md. July 22, 2016) ("LPMI usually causes a mortgage interest rate to be higher than that of a mortgage with borrower

paid mortgage insurance"), *aff'd*, 888 F.3d 117 (4th Cir. 2018).  The Claimant seems to understand the impact of the LPMI on the Mortgage Loan's interest rate.  *See* Claim at 11 ("My PMI is wrapped up in the interest rate.").  She sought to remove the LPMI to lower her interest rate.  *Id.* at 11, 30.

On December 10, 2018, the Claimant verbally informed Ditech that she wished to remove the PMI.  *Id.* at 30.  On December 18, 2018, Ditech advised the Claimant in writing that she had LPMI and as such, the PMI was terminable only upon a refinance or pay off.  *Id.*  Ditech provided the Claimant with a copy of the "Disclosure Concerning Lender Paid Mortgage Insurance."  *Id.*

On December 28, 2018, the Debtors issued a form letter response to the Claimant's request to cancel her PMI.  They checked the box indicating that she was not entitled to cancel the PMI because,

> You made one or more mortgage payments that was either 30 days or more past due within the past 12-month period or 60 days or more past due within the past 24-month period.

*Id.* at 26–27.  Nothing in the letter suggests that Claimant may request an appraisal in order to dispute the denial of PMI removal.  *Id.*  The only evidence that the Claimant provides that Ditech would consider the removal of her PMI based on an appraisal is her contention that in October 2018, a customer service representative in the escrow department promised to "order [an] appraisal to see if PMI could be dropped."  *Id.* at 7.  However, the only reason to perform an appraisal in connection with removing PMI is to confirm that the value of the property has not declined in value in association with BPMI.  12 U.S.C. § 4902(a)(4); *see also id.* § 4905(b).[15]

---

[15]    As set forth in the December 28, 2018 form letter, a ground for denying removal of PMI is that: "Ditech has obtained a valuation showing that the value of the property securing the mortgage has declined below its original value."  Ditech did not select this as the reason for denial of her request.  Claim at 27.

The response provided by Ditech's customer service representative, does not change the fact that the Claimant's PMI is LPMI and thus ineligible for termination via a change in the value of the Property.  *Id.* § 4905(b).  Even if the PMI had been BPMI, the Claimant would not have been able to cancel the PMI because (1) her principal balance exceeded the original value of the home, and (2) she had made at least one late payment in the past twelve months.  The Claimant made at least one payment that was thirty days or more past due in the past year.  Under HPA, cancellation of BPMI is predicated on "good payment history."[16]  12 U.S.C. § 4902(a)(2).

Furthermore, the Claimant's assertion that the decline in the property value should result in the removal of PMI is misplaced, as it is inapposite under HPA.  Claim at 54; 12 U.S.C. § 4902(a)(4).  The original Mortgage Loan amount was $339,200.  Note at 1; Mortgage at 2.  The appraisal completed on November 19, 2018, valued the Property at $270,000.  This appraisal was conducted at the Claimant's request in connection with her dispute of the June 2018 loan modification and had nothing to do with PMI removal.  She provides no information—aside from an unsubstantiated phone call in October 2018—to suggest that Ditech ever represented that an appraisal would be necessary to terminate PMI.  She acknowledges the negative equity in her Property, noting that in July 2018, she requested a principal reduction to bring her loan "in line

---

[16]    As defined by the HPA,

> "The term 'good payment history' means, with respect to a mortgagor, that the mortgagor has not—(A) made a mortgage payment that was 60 days or longer past due during the 12-month period beginning 24 months before the later of (i) the date on which the mortgage reaches the cancellation date, or (ii) the date that the mortgagor submits a request for cancellation under section 4902(a)(1) of this title ; or (B) made a mortgage payment that was 30 days or longer past due during the 12-month period preceding the later of (i) the date on which the mortgage reaches the cancellation date, or (ii) the date that the mortgagor submits a request for cancellation under section 4902(a)(1) of this title"

12 U.S.C. §4901(4).

with the value of the home and those in the neighborhood" and noting that she sold her home at a loss in August 2019.  Claim at 6; Response at 5.

As part of her Claim, the Claimant includes a May 10, 2017 letter denying the cancellation of escrow because she had not reached the 80% loan-to-value threshold.  Claim at 62.  The purpose of this letter is unclear, as nothing in the letter invites her to conduct an appraisal in order to remove escrow or PMI.  *Id.*

Private individuals seeking relief under the HPA may be entitled to a maximum of $2,000.00 in statutory damages per violation, plus costs and reasonable attorney's fees.  12 U.S.C. § 4907(a)(2)–(4).  Actions must be brought within two years of the discovery of the violation, *id.* § 4907(b), and enforcement of compliance with the HPA is delegated to the Consumer Financial Protection Bureau, *id.* § 4909(a).  Where violations occur, mortgagees or servicers are required to reimburse the mortgagor unpaid mortgage insurance premiums from the date upon which those premiums were scheduled to terminate under the act.  *Id.* § 4909(c)(3).

The Claimant alleges that, because her Mortgage Loan is a Fannie Mae loan, "there are other measures to determine if PMI can be dropped."  Claim at 8.  However, Fannie Mae has identical requirements for mortgage insurance termination.[17]

The Court finds that because the Claimant had LPMI and not BPMI, she could not terminate her PMI without either paying off the loan or obtaining a loan modification.  She obtained no such relief.  As such, the Claimant is not entitled to reimbursement for premiums and is not entitled to statutory damages, costs, and attorney's fees under the HPA.

---

[17]    *See Fannie Mae December 2018 Single-Family Servicing Guide*, at B8.1-04, Termination of Conventional Mortgage Insurance (eff. Dec 12, 2018).

**RESPA**

***Failure to Reduce Principal Balance***

Claimant asserts that Debtors should have agreed to reduce the principal balance of the Mortgage Loan because it was "overvalued" at origination in 2007.  She cites no authority obligating the Debtors to do so.  Loss Mitigation procedures are governed by RESPA.  12 C.F.R. § 1024.41.  Loss mitigation refers to the steps mortgage servicers take to work with borrowers to prevent foreclosure.  *Choi v. Kondaur Cap. Corp.*, No. 21-1895, 2022 WL 847566, at *2 n.2 (N.D. Ill. Mar. 22, 2022).  Although borrowers may seek relief for violations of section 1024.41, nothing in the statute imposes a duty on servicers to provide borrowers with any specific loss mitigation option.  12 C.F.R. § 1024.41(a); 12 U.S.C. § 2605(f).

On July 31, 2018, the Claimant requested a principal reduction of $29,903.16—the amount of the deferred balance—reasoning that the principal reduction, "instead of forbearance" would "bring [her] loan in line with the value of the home and those in the neighborhood."  Claim at 6.  However, the Debtors were not obliged to forgive her deferred balance to bring her home value in line with those of her neighbors or for any other reason.

The Claimant was offered a Fannie Mae Flex Modification.  In it, to determine the new modified mortgage loan terms, the servicer first establishes the mark-to-market loan-to-value ratio, which is defined as the gross unpaid principal balance, including capitalized arrearages, divided by the current value of the property.[18]  Next, the servicer sets the interest rate to a fixed rate based on the existing amortization tables and extends the term of the loan by 480 months from the

---

[18]    *Fannie Mae December 2018 Single-Family Servicing Guide*, at F-1-30, Processing a Fannie Mae Flex Modification (eff. Sept. 13, 2017).

modification date.[19]  The Fannie Mae Flex Modification does not provide for a principal reduction. In the July 25 Letter, Ditech stretched the terms of the loan to create the most favorable payment situation possible that would allow the Claimant to retain her home while remaining compliant with the Fannie Mae Guidelines.  Claim at 51 ("[W]e have completed the terms of the associated modification to the maximum of our ability.").  The Claimant appealed this proposed modification as unsatisfactory.  *Id.* at 54.  However, Ditech could not change the offer based on the Claimant's dissatisfaction with the proposed terms.

The Claimant requested a loan modification in May 2018, seeking to reduce the principal balance.  *Id.* at 6.  By that time, the Claimant's Property had been on the market for approximately fifteen months.  *Id.*  Thus, it appears that the Claimant's motivation was to be able to sell the Property and break even.  The purpose of a loan modification is to keep a borrower in their home. The principal reduction that Claimant sought would not help her retain her home.  There is no statutory support for the Claimant's position that a servicer is obligated to reduce a principal balance based on a drop in a property's market value.

The Claimant cites to the Principal Reduction Alternative ("PRA") option, once offered on certain qualifying HAMP modifications.  Response at 6–7.  In 2009, the Making Home Affordable Program was launched to assist homeowners to prevent foreclosures.[20]  It expired on December 30, 2016.[21]  While the Claimant cites favorably to this program, it expired approximately seventeen

---

[19]    *Fannie Mae December 2018 Single-Family Servicing Guide*, at D2-3.2-09, Fannie Mae Flex Modification (eff. Sept. 18, 2018).

[20]    *Fannie Mae December 2018 Servicing Guide*, at D2-3.2-06, Fannie Mae HAMP Modification (eff. Sept. 13, 2017).

[21]    *Id.*

months before she sought her loan modification in May 2018.  Thus, this program is not available to the Claimant.

### The Loan Modification

The Claimant complains about Ditech's "nonprofessional handling" of her loan but does not explain how Ditech's actions violated any servicing guidelines.  As her chronology demonstrates, during 2018, the Claimant changed her mind multiple times about loss mitigation options.  First, she opted for a short sale, then a loan modification, then rejecting the terms of that modification before obtaining a short sale buyer in April 2019.  While it is clear from her narrative that she was dissatisfied with Ditech, such dissatisfaction does not rise to the level of a cause of action against the Debtors.  *See Iqbal*, 556 U.S. at 678 (noting that the complaint demands more than an unadorned, the defendant unlawfully harmed me accusation).

### The Short Sale

The Claimant also complains about the Short Sale process.  *See, e.g.*, Claim at 42.  Within five days of the receipt of an initial short sale offer, a servicer is required to (1) acknowledge receipt of the offer; (2) provide the borrower with a checklist of required documentation; and (3) refer the borrower's real estate agent to HomePath in order to register the short sale offer, and within thirty days of a completed application package, the servicer must either approve, decline or provide a counter-offer.[22]  There is nothing in the Claimant's short sale timeline that suggests that Ditech did not adhere to these guidelines in handling the short sale.  For example, in April 2018, just nine days passed between the date on which the Claimant's real estate agent provided the offer directly to Fannie Mae's HomePath and the potential buyer apparently backed out of the short sale.

---

[22]    *Fannie Mae December 2018 Single-Family Servicing Guide*, at D-2-3, Fannie's Home Retention and Liquidation Workout Options (eff. Nov. 14, 2018).

As noted, under the guidelines, the investor has thirty days from receipt of completed borrower response package in which to review and respond to a short sale offer proffered by a borrower. Even if, as the Claimant asserts, she had submitted a completed package on March 11, 2019, Fannie Mae had until April 11, 2019, to approve, decline, or provide a counteroffer. Claimant fails to allege that Debtors made errors in the processing of the short sale of the Property. The Claimant contends that she sold her Property in August 2019 and took a "sizeable loss." However, a "sizeable loss" is not a measure of damages given that the Debtors are not responsible for the decline in the value of the Claimant's Property.

**Other Causes of Action**

The Response seeks relief under five "causes of action," but the claims in these actions are either too vague or asserted against the prior servicer, Everhome. Response at 4. The Claimant seeks relief under (1) 2009 Home Affordability Modification Program; (2) the Fair Housing Act ("FHA"); (3) the Fair Credit Reporting Act ("FCRA"); (4) the National Foreclosure Settlement and (5) the Independent Foreclosure Review. *Id.*

*Mishandling of the HAMP Loan*

The Claimant's complaints about HAMP all deal with actions or omissions by the prior servicer. Response at 4. ("I tried on several occasions to request a home Modification under 2009 Home Affordability Modification Program (HAMP). [Everhome] intentionally lost paper work, stated emails [were] never received, failed to return phone calls, and did not provide any knowledge of being sued for improper handling of loans."). She also complains that Everhome did not comply with the terms of the pay-for-performance program. *Id.* None of the Claimant's contentions regarding Everhome, or the HAMP program implicate Ditech. The Court finds that the Claimant has not stated a claim for relief against Ditech under the HAMP cause of action.

### FHA Violations

The Claimant lists FHA as a cause of action, but she does not attempt to explain how Ditech violated the FHA. *Id.* Under the FHA, it is "unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a). The Response merely states that she is "petition[ing] the court to allow [her] claim to proceed per . . . the Fair Housing Act, 42 U.S.C. § 3605 et seq." *Id.* That statement is too broad and not specific enough to enable the Consumer Claims Trustee to determine a cause of action. *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The Claimant simply has not alleged facts in her Claim or Response that state a claim for relief against Ditech under FHA.

### FCRA Violations

The Claimant lists FCRA as a cause of action, but she does not attempt to explain how Ditech violated the FCRA. Response at 4. The FCRA governs the accuracy and fairness of credit reporting information on consumers. *See* 15 U.S.C. § 1681. Section 1681s-2(a) addresses the responsibilities of an information furnisher, such as Ditech, to provide accurate information to a credit reporting agency ("CRA"). Information furnisher must refrain from knowingly reporting inaccurate information, *see id.* § 1681s-2(a)(1) and must correct any information that the furnisher later discovers to be inaccurate, *see id.* § 1681s-2(a)(2). Section 1681s-2(b) sets forth the duties of an information furnisher in the face of a dispute regarding the completeness or accuracy of a consumer's credit report. *See id.* § 1681s-2(b); *see also Sprague v. Salisbury Bank and Tr. Co.*,

969 F.3d 95, 98–99 (2d Cir. 2020) (discussing the application of sections 1681s-2(a) & (b)).  Under section 1681g, consumers have the right to dispute any information that has been reported to a CRA and appears on their credit report.  15 U.S.C. § 1681g(c)(1)(B)(iii).

In appropriate circumstances, a consumer may bring a civil cause of action against any person who willfully or negligently fails to comply with any requirement imposed under the FCRA.  *See id.* § 1681n (civil liability for willful noncompliance); *id.* § 1681o (civil liability for negligent noncompliance).  Section 1681s-2(d), however, limits the enforcement of section 1681s-2(a)—dealing with furnishers providing accurate information to the CRAs—exclusively to federal agencies and officials and select state officials.  *See id.* § 1681s-2(d).  In other words, "the FCRA does not provide a private cause of action for violations of Section 1681s-2(a)."  *Sprague*, 969 F.3d at 99; *accord Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) ("Although we have not previously addressed whether the [FCRA] provides a private right of action for violations of § 1681s-2(a), the statute plainly restricts enforcement of that provision to federal and state authorities.").

The only provision of the FCRA that is actionable against a furnisher of information, like Ditech, arises when the furnisher fails to conduct a reasonable investigation in response to a consumer dispute communicated to it by a CRA.  15 U.S.C. § 1681s-2(b).  However, a dispute communicated from a consumer to a furnisher directly, does not trigger the duty under section 1681s-2(b).  *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010) ("Although a consumer may dispute credit information directly to a furnisher . . . the consumer has no private right of action if the furnisher does not reasonably investigate the consumer's claim after direct notification.").

The Claimant merely lists FCRA in a list of five actions under which she is petitioning the Court in support of her Claim. Response at 4. She does not allege that her credit reports were inaccurate, that she disputed any inaccuracies to the CRAs and that Ditech did not investigate her disputes when informed of the dispute by the CRAs. The Claimant has not stated a claim for relief under the FCRA against Ditech.

### The National Foreclosure Settlement and the Independent Foreclosure Review

The Claimant includes the National Foreclosure Settlement and the Independent Foreclosure Review as grounds for her Claim. Response at 4. Distributions to eligible borrowers under the National Foreclosure Settlement were fully administered as of December 31, 2016.[23] Distributions under the Independent Foreclosure Review settlement were completed as of July 2013.[24] The Court has no jurisdiction to order a distribution under expired settlement funds, and the Claimant makes no argument as to why she would be entitled to compensation. The Court finds that the Claimant has not stated a claim for relief under either of these two programs.

As noted, where an objection refuting at least one of the claim's essential allegations is asserted, the claimant bears the burden to demonstrate the validity of the claim. *See In re Residential Cap.*, 2016 WL 796860, at *9; *In re Motors Liquidation Co.*, 2012 WL 1886755, at *3. The Claimant has failed to meet her burden of proof as she has provided no specific factual allegations that would support her conclusory statements.

---

[23] *What was the National Mortgage Settlement?*, CONSUMER FINANCIAL PROTECTION BUREAU, https://www.consumerfinance.gov/ask-cfpb/what-was-the-national-mortgage-settlement-en-2071/ (last visited Aug. 31, 2023).

[24] *Independent Foreclosure Review*, BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, https://www.federalreserve.gov/consumerscommunities/independent-foreclosure-review htm (last visited Aug. 31, 2023).

**<u>Conclusion</u>**

Based on the foregoing, the Court sustains the Objection and disallows and expunges the

Claim.


IT IS SO ORDERED.


Dated: New York, New York
August 31, 2023

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge