| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |

------------------------------------------------------- x
In re:                                                  :
                                                        :   Case No. 19-10412 (JLG)
Ditech Holding Corporation, *et al.*,                   :   Chapter 11
                                                        :
                                        Debtors.[1]     :   (Jointly Administered)
                                                        :
------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER SUSTAINING THE PLAN ADMINISTRATOR'S TWENTY-EIGHTH OMNIBUS OBJECTION AND THE CONSUMER CLAIMS TRUSTEE'S FORTY-THIRD OMNIBUS OBJECTION WITH RESPECT TO THE PROOFS OF CLAIM FILED BY HELENA KATRAKIS

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10022
<u>By:</u>    Richard Levin

WEIL, GOTSHAL & MANGES LLP
*Attorneys for the Plan Administrator*
767 Fifth Avenue
New York, New York 10153
<u>By:</u>    Ray C. Schrock, P.C.
        Richard W. Slack
        Alexander Welch

Helena Katrakis
*Appearing Pro Se*
5439 Kenwood Drive
North Port, Florida 34287

---

[1] The Debtors' *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1326 ("Third Amended Plan"), was confirmed, which created the Wind Down Estates. The Wind Down Estates, along with the last four digits of each of their federal tax identification numbers, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

**Introduction**[2]

On July 30, 2019, Helena Katrakis (the "Claimant") filed Proof of Claim No. 24025 ("Claim 24025"), asserting an unliquidated unsecured claim in the amount of $56,000 against Ditech Holding Corporation. Claim 24025 at 1–2.[3] She identifies the basis of her claim only as "Borrower." *Id.* at 2. That same day, the Claimant filed Proof of Claim No. 24028 ("Claim 24028," and together with Claim 24025, the "Unsecured Claims") asserting an unliquidated unsecured claim in the amount of $56,331.13 against Ditech Holding Corporation. Claim 24028 at 1–2. She again identifies the basis of her claim only as "Borrower." *Id.* at 2. On November 8, 2019, the Claimant filed Proof of Claim No. 60039 ("Claim 60039," or the "Administrative Claim" and together with the Unsecured Claims, the "Claims") asserting an unliquidated administrative expense claim in an "undetermined" amount against Ditech Financial LLC. Claim 60039 at 1–2. She identifies the basis of the claim as "Customer Claims." *Id.* at 2.

On January 17, 2020, the Plan Administrator filed his Twenty-Eighth Omnibus Objection (the "Twenty-Eighth Objection").[4] In it, he objects to and seeks to expunge the Administrative Claim on the basis that the "[c]laim lacks sufficient documentation to support the validity of the claim." Twenty-Eighth Objection, Ex. A (List of Claims) at 27. On February 21, 2020, the

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objections, Claims Procedures Order, and Third Amended Plan, as applicable. References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412.

[3] Because the Claims and Responses do not have internal page numbers, references herein to these filings are to the particular PDF page of the document.

[4] *Twenty-Eighth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Admin Claims)*, ECF No. 1760.

2

Claimant filed a response to the Twenty-Eighth Objection (the "First Response").[5] On April 16, 2021, the Consumer Claims Trustee filed her Forty-Third Omnibus Objection (the "Forty-Third Objection," and together with the Twenty-Eighth Objection, the "Objections"). In it, she objects to and seeks to expunge the Unsecured Claims on the basis that the "Claimant fails to state a claim upon which relief may be granted" and that the "Claim[s] [were] filed untimely." Forty-Third Objection, Ex. A. (List of Claims) at 3. On May 26, 2021, the Claimant filed a response to the Forty-Third Objection (the "Second Response,"[6] and together with the First Response, the "Responses"). On August 18, 2023, the Plan Administrator and Consumer Claims Trustee filed a joint reply (the "Reply").[7]

Pursuant to the Claims Procedures Order,[8] the filing of the Responses caused an adjournment of the Objections so that the Court could conduct a Sufficiency Hearing on the Claims. Under that order, the legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[9] Claims Procedures Order ¶ 3(iv)(a).

---

[5]  *Objection to Motion*, ECF No. 1904.

[6]  *Objection to Motion*, ECF No. 3598.

[7]  *Joint Reply of Consumer Representative and Plan Administrator in Support of the Twenty-Eighth Omnibus Objection with Respect to the Administrative Expense Claim of Helena Katrakis (No. 60039) and the Consumer Claims Trustee's Forty-Third Omnibus Objection with Respect to the Claims of Helena Katrakis (Nos. 24025, 24028)*, ECF No. 4842.

[8]  *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

[9]  Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In filing the Objections, the Consumer Claims Trustee and Plan Administrator initiated a contested matter. *See Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs., Inc.)*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter"). Bankruptcy Rule 9014 governs contested matters. The rule does not explicitly provide for the application of Bankruptcy Rule 7012. However, Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply." Fed. R. Bankr. P. 9014. The Court does so here in the Claims Procedures Order.

On September 28, 2023, in accordance with the Claims Procedures Order, the Court conducted a Sufficiency Hearing on the Claims. The Plan Administrator and Consumer Claims Trustee appeared through counsel, and the Claimant appeared pro se. The Court has reviewed the Claims, Objections, Responses, and Reply, including all documents submitted in support thereof, and has considered the arguments made by the parties in support of their respective positions. As explained below, accepting all the well-pleaded factual allegations asserted by the Claimant in support of the Claims as true, drawing all reasonable inferences in the Claimant's favor, and liberally construing the Claims and Responses to raise the strongest arguments that they suggest, the Claims fail to state plausible claims for relief against Ditech.

Accordingly, the Court sustains the Objections and disallows and expunges the Claims.

### Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background

**The Mortgage Loan**

On June 25, 2007, the Claimant executed a promissory note (the "Note") and mortgage (the "Mortgage," and together with the Note, the "Mortgage Loan")[10] in favor of Homecomings

---

[10] The Note and Mortgage are annexed to the Reply as Exhibit A-1 and A-2, respectively. The Court can properly take judicial notice of matters of public record. *See Sutton ex rel. Rose v. Wachovia Sec., LLC*, 208 F. App'x 27, 30 (2d Cir. 2006) (summary order) (holding that filings and orders in other courts "are undisputably matters of public record"); *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*."); *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) ("[Courts] must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." (quoting *Tellabs, Inc. v. Makor Issues*

Financial, LLC (f/k/a Homecomings Financial Network, Inc.). The principal amount of the Note was $99,000.00 with an interest rate of 6.625%, a monthly principal and interest payment of $633.91, and a term of thirty years. Note at 1. The Mortgage Loan was secured by real property located at 5439 Kentwood Drive, North Port, Florida 34287 (the "Property"). On February 14, 2013, Ditech Financial LLC (f/k/a Green Tree Servicing, LLC) ("Ditech") began the servicing of the Mortgage Loan.

On July 23, 2015, the Claimant, represented by counsel, executed a Home Affordable Modification Agreement (the "Loan Modification"),[11] which modified the original terms of the Mortgage Loan. Under the terms of the Loan Modification, for the first five years, the interest rate was set to 2% and the principal and interest payment was reduced to $217.70. Loan Modification at 3. Thereafter, the interest rate and monthly payment stepped up to a maximum rate of 3.875% and principal and interest payment of $285.30. *Id.* The new principal balance on the Mortgage Loan was $128,220.68, of which $71,889.55 was interest bearing and $56,331.13 was a deferred, non-interest-bearing amount (the "Deferred Balance"). *Id.* at 2.

On December 19, 2019, Ditech assigned the Mortgage Loan to New Residential Mortgage LLC ("New Rez"). *See* Reply, Ex. C (Assignment).

---

*& Rts., Ltd.*, 551 U.S. 308, 322 (2007))); *Chestnut v. Wells Fargo Bank, N.A.*, No. 10-cv-4244, 2011 WL 838914, at *1 n.1 (E.D.N.Y. Mar. 2, 2011) (holding, in the context of a breach of contract action arising from a mortgage, that the "Complaint, however, contains limited factual material relating to Plaintiffs' contractual dispute with Wells Fargo . . . . Consequently, the Court largely constructs this section from documents that it can take judicial notice of, such as the underlying mortgage documents, the state court records, and the related bankruptcy proceeding"); *Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co*., 62 F.3d 69, 72 (2d Cir. 1995) (in contract action, court can take judicial notice of underlying contract as a document "integral to the complaint").

[11]   The Loan Modification is annexed to the Reply as Exhibit B. It is also attached to Claim 24028 at 14–19.

**The Chapter 11 Cases**

On February 11, 2019 (the "Petition Date"), Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates, including Ditech (collectively, the "Debtors"), filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in these Chapter 11 Cases (the "General Bar Date").[12] Thereafter, the Court extended the General Bar Date for consumer borrowers, twice, ultimately setting their applicable bar date as June 3, 2019.[13] On July 30, 2019, the Claimant and the Debtors stipulated that she would have until July 31, 2019, to file her proof of claim.[14]

On September 26, 2019, the Debtors confirmed their Third Amended Plan,[15] and on September 30, 2019, that plan became effective.[16] Upon entry of the Confirmation Order, the Court set November 11, 2019, as the Administrative Expense Bar Date. The Plan Administrator is a fiduciary appointed under the Third Amended Plan who is charged with the duty of winding

---

[12] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[13] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[14] *Stipulation and Order Granting Extension to Helen Katrakis for Filing Proof of Claims*, ECF No. 1127.

[15] *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1404 (the "Confirmation Order").

[16] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

down, dissolving, and liquidating the Wind Down Estates. *See* Third Amended Plan, art. I, §§ 1.130, 1.184, 1.186. The Consumer Claims Trustee is a fiduciary appointed under the Third Amended Plan who is responsible for the reconciliation and resolution of Consumer Creditor Claims and distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims in accordance with the Third Amended Plan. *See id.* art. I, § 1.41. The Consumer Claims Trustee has the exclusive authority to object to all Consumer Creditor Claims. *See id.* art. VII, § 7.1. The Third Amended Plan also provides that the Plan Administrator, on behalf of each of the Wind Down Estates, is authorized to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims. *See id.*

**The Claims Procedures Order**

On November 19, 2019, the Court entered the Claims Procedures Order. Under that order, the Plan Administrator and Consumer Claims Trustee are authorized to file Omnibus Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order. *See* Claims Procedures Order ¶ 2(i)(a)–(h). A properly filed and served response to an objection gives rise to a "Contested Claim" that will be resolved at a Claim Hearing. *Id.* ¶ 3(iv). The Plan Administrator and/or Consumer Claims Trustee, as appropriate, has the option of scheduling the Claim Hearing as either a "Merits Hearing" or a "Sufficiency Hearing." *Id.* ¶ 3(iv)(a), (b). A "Merits Hearing" is an evidentiary hearing on the merits of a Contested Claim. A "Sufficiency Hearing" is a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. The legal standard of review that will be applied by the Court at a Sufficiency Hearing is equivalent to the standard applied by the Court in evaluating a motion to

7

dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

**The Claims**

On July 30, 2019, the Claimant filed Claim 24025. The claim includes a letter dated June 26, 2019 (the "June 26 Letter"). Later in the day on July 30, 2019, the Claimant filed Claim 24028. It contains a letter dated June 30, 2019 (the "June 30 Letter"). The June 26 Letter and the June 30 Letter are substantively identical. The June 30 Letter purports to replace the June 26 Letter. Claim 24028 at 4. In the June 30 Letter, the Claimant complains about the Deferred Balance portion of the Loan Modification. *Id.* She contests the Deferred Balance on the basis that "no documentation was provided to justify this amount." *Id.* She further contends that she was coerced into signing the Loan Modification. *Id.* Claim 24028 includes a printout of emails between the Claimant and her attorney, and a Ditech billing statement from April 2019.

On November 8, 2019, the Claimant filed the Administrative Claim against Ditech. The basis of the Administrative Claim is identified as "Customer Claims." The claim is not supported by legal or factual allegations or documents.

**The Objections**

In his Twenty-Eighth Objection, the Plan Administrator objects to the Administrative Claim on the basis that the "Claim lacks sufficient documentation to support the validity of the claim." Twenty-Eighth Objection, Ex. A (List of Claims) at 27.

In her Forty-Third Objection, the Consumer Claims Trustee objects to the Unsecured Claims stating:

> Claimant alleges the amounts were improperly added to her balance during 2015 loan modification. Review of Debtors' books and records support modification capitalization and deferred balance. Claimant fails to state a claim upon which

8

> relief may be granted; any claim arising from the 2015 modification would also be barred by the applicable statute of limitations. Claim filed untimely.

Forty-Third Objection, Ex. A (List of Claims) at 3. She also contends that Claim 24025 is a duplicate of Claim 24028. *Id.*

**The Responses**

In her First Response (to the Twenty-Eighth Objection), the Claimant states that she does not believe that she owes the $1,418.28 reflected on her December 16, 2019 billing statement from New Rez (the "Billing Statement"). First Response at 1. She attaches a copy of the Billing Statement to the First Response. *Id.* at 5. The $1,418.28 total is comprised of $439.90 in principal, interest and escrow due plus $978.38 in overdue payments. *Id.*

In her Second Response (to the Forty-Third Objection), the Claimant challenges the Deferred Balance. The Second Response includes a letter dated July 2, 2015, from her counsel to Ditech, which raised several issues with the then-proposed Loan Modification (the "July 2 Letter"). Second Response at 8. While raising an issue with the overall principal balance contained in the modification, the July 2 Letter does not raise a specific issue with the Deferred Balance. *Id.* Instead, it (i) requests that Ditech adjust the Claimant's monthly payment to be in line with HAMP Guidelines; (ii) requests that Ditech include certain language in the Loan Modification contract regarding a reduction in principal for making on-time payments; (iii) disputes the capitalization of the corporate advances and interest arrearages and requests that the overall principal balance be set to $92,351.06; and (iv) requests that Ditech provide an extension to the Claimant for signing the Loan Modification contract, noting that the Claimant will continue to make required payments but wishes to resolve these issues first. *Id.* On July 23, 2015, the Claimant signed the Loan Modification. *Id.* at 1.

**The Reply**

The Plan Administrator and Consumer Claims Trustee assert that the Unsecured Claims and the Administrative Claim do not state plausible claims for breach of contract. *Id.* ¶¶ 16–22.

**Applicable Legal Standards**

Under section 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The filing of a proof of claim executed and filed in accordance with the Bankruptcy Rules constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). Section 502(b) prescribes nine categories of claims that will be disallowed, including any claim that "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). If an objection filed pursuant to section 502(b)(1) refutes at least one of the claim's essential allegations, the claimant has the burden to demonstrate the validity of the claim. *See, e.g.*, *Rozier v. Rescap Borrower Claims Tr. (In re Residential Cap., LLC)*, No. 15-cv-3248, 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 11-cv-8444, 2012 WL 1886755, at *3 (S.D.N.Y. May 12, 2012).

Under Rule 12(b)(6), a claim may be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In applying Rule 12(b)(6) to the Claims, the Court assesses the sufficiency of the facts alleged in support of the Claims in light of the pleading requirements under Rule 8(a) of the Federal Rules of Civil Procedure.[17] Rule 8(a)(2) states that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet that standard, the Claims "must contain

---

[17] Rule 8 is incorporated herein pursuant to Bankruptcy Rule 7008.

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 570. To satisfy Rule 12(b)(6), the claims "must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). In considering whether that standard is met for a particular claim, the court must assume the truth of all material facts alleged in support of the claim and draw all reasonable inferences in the claimant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, the court "need not accord 'legal conclusions, deductions or opinions that are couched as factual allegations . . . a presumption of truthfulness.'" *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 591 (S.D.N.Y. 2008) (quoting *Cal. Pub. Empls.' Ret. Sys. v. N.Y. Stock Exch., Inc. (In re NYSE Specialists Sec. Litig.)*, 503 F.3d 89, 95 (2d Cir. 2007)). In short, "[i]n ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the [claim], not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)).

## Discussion

### Whether the Claimant States a Claim for Relief for the Unsecured Claims

The Claimant asserts her Unsecured Claims in an amount equal to the Deferred Balance. Claim 24028 at 2, 4. The Loan Modification expressly provides for the Deferred Balance of $56,311.13. Loan Modification at 2. The Claimant was represented by counsel during the Loan Modification process. *See* Second Response at 8. Indeed, the Claimant executed the Loan

11

Modification while at her attorney's office. *Id.* at 5. Nonetheless, at the heart of the Unsecured Claims is Claimant's assertion that she lacks sufficient information regarding the Deferred Balance, and she believes she was coerced into signing the Loan Modification. *See* Claim 24028 at 4. As support for the latter, she says that she had no choice but to execute the Loan Modification because, had she refused to do so, Ditech would have exercised its rights as a secured creditor, foreclosed on her Property, and taken her home away. Second Response at 1. The Claimant may have felt pressured to execute the Loan Modification, but Ditech's resort to its remedies under the defaulted Mortgage is not "coercion" giving rise to claims against Ditech. Indeed, as noted, the Claimant executed the modification with the benefit of the advice of her counsel.

Further, the July 2 letter, included in the Second Response, raised several issues related to the terms of the Loan Modification but none dealt with the Deferred Balance. *See* Second Response at 8. One such issue dealt with the fact that corporate advances and interest arrearages were added to the principal balance of the Mortgage Loan. The July 2 Letter did not raise any issues regarding the Deferred Balance. *See id.* The Claimant provides no evidence of any discussions with Ditech prior to signing the Loan Modification.

Where, as here, a pro se Claimant asserts a claim against the Debtors, the Court construes the Claim liberally and interprets it "to raise the strongest argument that [it] suggest[s]." *McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994)). However, a pro se claimant's claim must be supported by specific detailed factual allegations that provide the Court and the Debtors a fair understanding for the basis of the claim and the legal grounds for recovery against the Debtors. *Kimber v. GMAC Mortg., LLC (In re Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (citing *Iwachiw v. N.Y.C. Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005) (summary order)). A court may not

12

"invent factual allegations" that were not pled by the pro se litigant. *In re Nofer*, 514 B.R. 346, 353 (Bankr. E.D.N.Y. 2014) (citing *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).

The Unsecured Claims plainly run afoul of Rules 8(a) and 12(b)(6) because they fail to allege facts in support of a legally cognizable claim against Ditech. *See In re Residential Cap.*, 489 B.R. at 494; *see also Iqbal*, 556 U.S. at 678 (noting that the complaint demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation). The Unsecured Claims and First Response fail to state a claim for relief against Ditech.

**Whether the Claimant States a Claim for Relief for the Administrative Claim**

The Billing Statement shows that the Claimant owes a total amount due of $1,418.28. First Response at 5. This amount is comprised of $439.90 in her regular monthly principal, interest, and escrow due, plus $978.38 in overdue payments. *Id.* The Claimant that she does not owe the amounts reflected on her Billing Statement, but she provides no basis for challenging these amounts. First Response at 1 ("When I called New Rez they told me that [D]itech said I owed this money. I do not think I owe this money. So I am asserting a claim in the amount of $1,418.28."). Moreover, in asserting the Administrative Claim, the Claimant challenges the Billing Statement from non-Debtor New Rez, not any conduct of the Debtors. The Claimant has not demonstrated how her claim against New Rez relates to Ditech in any way. Accordingly, for those reasons, the Administrative Claim and First Response fail to plead any cause of action against the Debtors.

**<u>Conclusion</u>**

Based on the foregoing, the Court sustains the Objections and disallows and expunges the Unsecured Claims and Administrative Claim.

IT IS SO ORDERED.

Dated: New York, New York
September 29, 2023

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge