| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | **NOT FOR PUBLICATION** |

------------------------------------------------------- x
In re:                                                                 :
                                                                            :    Case No. 19-10412 (JLG)
Ditech Holding Corporation, *et al.*,                  :    Chapter 11
                                                                            :
                                                      Debtors.[1]  :    (Jointly Administered)
                                                                            :
------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER SUSTAINING THE PLAN ADMINISTRATOR'S AND CONSUMER CLAIMS TRUSTEE'S SIXTY-THIRD OMNIBUS OBJECTION WITH RESPECT TO THE PROOF OF CLAIM FILED BY ROBERT EWING AND CARLA EWING

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10022
By:     Richard Levin

WEIL, GOTSHAL & MANGES LLP
*Attorneys for the Plan Administrator*
767 Fifth Avenue
New York, New York 10153
By:     Ray C. Schrock, P.C.

Robert Ewing and Carla Ewing
*Appearing Pro Se*
1243 Softwind Drive
Indianapolis, Indiana 46260

---

[1]    The Debtors' *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1326 (the "Third Amended Plan"), was confirmed, which created the Wind Down Estates. The Wind Down Estates, along with the last four digits of each of their federal tax identification numbers, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

**Introduction**[2]

On June 6, 2019, Robert and Carla Ewing (the "Claimants") filed proof of claim number 23661 (the "Claim"), asserting an unliquidated secured claim in the amount of $97,000.00 against Ditech Holding Corporation. Claim at 1–2.[3] They identify "Customer Fee" as the basis for their Claim. *Id.* at 2.

On September 18, 2020, the Plan Administrator and Consumer Claims Trustee filed their Sixty-Third Omnibus Objection (the "Objection").[4] In it, they object to and seek to expunge the Claim on the basis that the Claim was "determined to have no merit based on Company review." Objection, Ex. A (List of Claims) at 2. On October 14, 2020, the Claimants filed a response to the Objection (the "Response").[5] On September 15, 2023, the Consumer Claims Trustee filed a reply (the "Reply")[6] in further support of the Objection.

Pursuant to the Claims Procedures Order,[7] the filing of the Response caused an adjournment of the Objection so that the Court could conduct a Sufficiency Hearing on the Claim. Under that order, the legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim upon which relief may be granted under

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order, and Third Amended Plan, as applicable. References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412.

[3] The Claim and Response do not have internal page numbers. Citations to those filings refer to the PDF page number.

[4] *Sixty-Third Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims)*, ECF No. 2840.

[5] *Objection to Motion*, ECF No. 2937.

[6] *Reply of Consumer Representative in Support of the Sixty-Third Omnibus Objection with Respect to the Claim of Robert & Carla Ewing*, ECF No. 4876.

[7] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

2

Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[8] Claims Procedures Order ¶ 3(iv)(a).

On September 28, 2023 in accordance with the Claims Procedures Order, the Court conducted a Sufficiency Hearing on the Claim. The Consumer Claims Trustee appeared through counsel, and the Claimants appeared pro se. The Court has reviewed the Claim, Objection, Response, and Reply, including all documents submitted in support thereof, and has considered the arguments made by the parties in support of their respective positions.

For the reasons set forth herein, the Court sustains the Objection and disallows and expunges the Claim.

## Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

**The Mortgage Loan**

On or about June 8, 2007, the Claimants executed a promissory note (the "Note")[9] in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as Nominee for Countrywide Home

---

[8] Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In filing the Objection, the Consumer Claims Trustee initiated a contested matter. *See Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs., Inc.)*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter"). Bankruptcy Rule 9014 governs contested matters. The rule does not explicitly provide for the application of Bankruptcy Rule 7012. However, Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply." Fed. R. Bankr. P. 9014. The Court does so here in the Claims Procedures Order.

[9] The Note is annexed to the Reply as Exhibit A. The Court can properly take judicial notice of matters of public record. *See Sutton ex rel. Rose v. Wachovia Sec., LLC*, 208 F. App'x 27, 30 (2d Cir. 2006) (summary order) (holding that filings and orders in other courts "are undisputably matters of public record"); *Ferrari v. Cnty. of Suffolk*, 790 F.

Loans, Inc. d/b/a/ America's Wholesale Lender ("Countrywide") in the amount of $270,368.00 with a term of thirty years. The Note was secured by a mortgage (the "Mortgage"[10] and together with the Note, the "Mortgage Loan") on the property located at 1243 Soft Wind Drive, Indianapolis, Indiana 46260 (the "Property"). On July 27, 2010, MERS assigned the Mortgage to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing LP ("BAC Home Loans"). *See* Reply, Ex. C (Assignment). Bank of America is successor by merger to BAC Home Loans. On August 20, 2011, the Mortgage was modified with a new principal balance of $323,549.85, of which $37,084.73 was deferred with no interest. *See* Reply, Ex. D (Complaint) at 8. On May 8, 2013, Bank of America assigned the Mortgage to Green Tree Servicing, LLC, which later became Ditech Financial, LLC ("Ditech"). *See* Reply, Ex. E (Assignment). In December 2013, the Mortgage was modified with a new principal balance of $356,750.19, of which $90,985.19 was deferred with no interest. *See* Claim at 8; *see also* Reply Ex. F. (Loan Modification). On March 8, 2019, Ditech assigned the Mortgage Loan to New Residential Mortgage, LLC. *See* Reply, Ex. G (Assignment).

**The Chapter 11 Cases**

On February 11, 2019, Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates (the "Debtors") filed petitions for relief under chapter 11 of the

---

Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*."); *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) ("[Courts] must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007))); *Leon v. Shmukler*, 992 F. Supp. 2d 179, 184 n.1 (E.D.N.Y. 2014) ("It is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records."); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (noting that courts can take judicial notice of an underlying contract in a contract action as a document "integral to the complaint").

[10]   The Mortgage is annexed to the Reply as Exhibit B.

4

Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[11] Thereafter, the Court extended the General Bar Date for consumer borrowers, twice, ultimately setting the date as June 3, 2019.[12]

On September 26, 2019, the Debtors confirmed their Third Amended Plan,[13] and on September 30, 2019, that plan became effective.[14] The Plan Administrator is a fiduciary appointed under the Third Amended Plan who is charged with the duty of winding down, dissolving, and liquidating the Wind Down Estates. *See* Third Amended Plan, art. I, §§ 1.130, 1.184, 1.186. The Plan Administrator, on behalf of each of the Wind Down Estates, is authorized to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims. *See id.* art. VII, § 7.1. The Consumer Claims Trustee is a fiduciary appointed under the Third Amended Plan who is responsible for the reconciliation and resolution of Consumer Creditor Claims and distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims in accordance with the

---

[11] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[12] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[13] *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1404.

[14] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

Third Amended Plan. *See id.* art. I, § 1.41. The Consumer Claims Trustee has the exclusive authority to object to all Consumer Creditor Claims. *See id.* art. VII, § 7.1.

**The Claims Procedures Order**

On November 19, 2019, the Court entered the Claims Procedures Order. Under that order, the Plan Administrator and Consumer Claims Trustee are authorized to file Omnibus Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order. *See* Claims Procedures Order ¶ 2(i)(a)–(h). A properly filed and served response to an objection gives rise to a "Contested Claim" that will be resolved at a Claim Hearing. *Id.* ¶ 3(iv). The Plan Administrator and/or Consumer Claims Trustee, as appropriate, has the option of scheduling the Claim Hearing as either a "Merits Hearing" or a "Sufficiency Hearing." *Id.* ¶ 3(iv)(a), (b). A "Merits Hearing" is an evidentiary hearing on the merits of a Contested Claim. A "Sufficiency Hearing" is a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. The legal standard of review that will be applied by the Court at a Sufficiency Hearing is equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

**The Claim**

On June 3, 2019, the Claimants filed their unliquidated secured Claim in the amount of $97,000. Claim at 1–2. The Claimants assert that this Claim is secured by the value of their real estate. *Id.* at 2. Attached to the Claim is a brief narrative in which the Claimants allege that (i) Bank of America failed to disclose corporate advance fees in the amount of $96,882.46 (the "Corporate Advance Fees") and (ii) the imposition of said fees violates the Truth in Lending Act ("TILA"), which requires uniform standardized disclosures of costs and charges to consumers. *Id.*

at 4. The Claimants contend that the disputed amount of $96,882.46 should be removed from their Mortgage balance. *Id.* They contend that a Ditech representative, identified as "Chris," informed them on December 4, 2013, that $52,567.43 of the Corporate Advance Fees were for attorney's fees. *Id.* at 6. Attached to the Claim is an unsigned loan modification agreement from November 22, 2013. *Id.* at 8. Also attached is a heavily redacted billing statement, dated May 16, 2019, that shows $6,779.68 due as of June 1, 2019 (the "Billing Statement") and a May 30, 2019 statement from Ditech showing a payoff amount of $346,620.67 (the "Payoff Statement"). Claim at 14–17.

### The Objection

On September 18, 2020, the Plan Administrator and Consumer Claims Trustee objected to the Claim on the basis that the Claim was "determined to have no merit based on Company review." Objection, Ex. A (List of Claims) at 2.

### The Response

In the Response, the Claimants allege that Bank of America failed to properly credit their mortgage payments and fraudulently deferred principal, interest, and fees. Response at 1. In support of their Claim, the Claimants provide a letter, dated August 30, 2011, from Bank of America that summarizes a proposed loan modification. *Id.* at 2. The proposed loan modification would include a new principal balance of $323,549.85, with $37,084.73 of that balance being deferred. *Id.* The letter also states that the Claimant's delinquent balance as of September 1, 2011, includes interest arrears from between May 1, 2009 and September 1, 2022, in the amount of $45,117.28; fees and costs in the amount of $0.00; and a delinquent escrow amount of $12,895.71 for a total amount of $58,012.99 added to the principal balance. *Id.* at 4. They also include a payment history for 2011 through 2013, which the Claimants assert shows that Bank of America

fraudulently deferred principal, interest, and fees despite its receipt of Mortgage payments. *Id.* at 1, 6–13. The Claimants do not allege which payments were not properly credited, and they do not provide any proof of payments. A review of this payment history demonstrates that credits flowed to principal, interest, and fees and shows that the principal balance decreased from $286,465.12 to $284,411.12 before the Mortgage Loan was modified and the principal balance subsequently increased to $360,198.39. *Id.* at 6–13. Finally, the Claimants provide a document they marked as Exhibit 3. *Id.* at 14–15. Without explanation, they contend this document comes from the Consumer Claims Trustee and assert that it has no relevance. *Id.* at 1.

**The Estimation Motion**

On March 24, 2023, the Plan Administrator and Consumer Claims Trustee filed a motion to estimate claims (the "Estimation Motion")[15] for the purposes of setting a distribution reserve, which included the Claim. Estimation Motion, Ex. A (List of Claims) at 1. The Estimation Motion sought to have the secured portion of the Claim reclassified as a Class 6 Consumer Creditor Claim that is not a 363(o) Consumer Creditor Claim, as defined by the Third Amended Plan and estimated in the total amount of $97,000. *Id.* The Claimants did not object to the Estimation Motion. By an order dated May 10, 2023, the Court granted the Estimation Motion.[16]

**The Reply**

On September 15, 2023, the Consumer Claims Trustee filed her Reply in support of the Objection, asserting that the Claim fails to assert facts sufficient to state a claim for relief under Rule 12(b)(6) for fraud or a TILA violation. Reply ¶¶ 27–40.

---

[15] *Consumer Claims Trustee and Plan Administrator's Joint Omnibus Motion to Reclassify Certain Proofs of Claim and Consumer Claims Trustee's Motion to Estimate for Purposes of Distribution Reserves*, ECF No. 4662.

[16] *Order Granting Consumer Claims Trustee and Plan Administrator's Joint Omnibus Motion to Reclassify Certain Proofs of Claim and Consumer Claims Trustee's Motion to Estimate for Purposes of Distribution Reserves*, ECF No. 4732.

**Applicable Legal Principles**

Under section 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The filing of a proof of claim executed and filed in accordance with the Bankruptcy Rules constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). Section 502(b) prescribes nine categories of claims that will be disallowed, including that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). If an objection filed pursuant to section 502(b)(1) refutes at least one of the claim's essential allegations, the claimant has the burden to demonstrate the validity of the claim. *See, e.g., Rozier v. Rescap Borrower Claims Tr. (In re Residential Cap., LLC)*, No. 15-cv-3248, 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 11-cv-8444, 2012 WL 1886755, at *3 (S.D.N.Y. May 12, 2012).

In assessing the merits of the Objection, the Court must consider the sufficiency of the allegations in support of the Claim in light of the pleading requirements established by Rules 8(a) and 12(b)(6) and determine whether Claimants have stated a claim for fraud or for a violation of TILA. The Consumer Claims Trustee asserts that the Court should disallow and expunge the Claim because it does not satisfy the pleading threshold of Rule 8(a) and does not state a claim upon which relief can be granted as required by Rule 12(b)(6).

The function of the pleading "is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1998). Rule 8(a) mandates that a complaint contain "a short and plain statement of the claim

9

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, to meet that standard, a pleading must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8(a) does not require "'detailed factual allegations', but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "When a complaint does not comply with the requirement that it be short and plain, the court has the power . . . in response to a motion by the defendant . . . to dismiss the complaint." *Salahuddin*, 861 F.2d at 42. Under Rule 8(a), a court may dismiss a complaint that lacks sufficient details. *Samuel v. Bellevue Hosp. Ctr.*, No. 07-cv-6321, 2008 WL 3895575, at *3–4 (S.D.N.Y. Aug. 22, 2008) (dismissing claims pleaded with insufficient detail pursuant to Rule 8(a)); *Jaffe v. Cap. One Bank*, No. 09-cv-4106, 2010 WL 691639, at *5 (S.D.N.Y. Mar. 1, 2010) (finding that the complaint does not meet Rule 8(a) standards where it presented "unadorned, the defendant-unlawfully-harmed-me accusations").

Under Rule 12(b)(6), a claim may be dismissed due if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To satisfy Rule 12(b)(6), the claim "must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). In considering whether that standard is met for a particular claim, the Court must assume the truth of all material facts alleged in support of the claim and draw all reasonable inferences in the claimant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, the Court "need not accord 'legal conclusions, deductions or opinions that are couched as factual allegations . . . a presumption of truthfulness.'" *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 591 (S.D.N.Y. 2008) (quoting *Cal. Pub. Empls.' Ret. Sys. v. N.Y. Stock Exch., Inc. (In re NYSE Specialists Sec. Litig.)*, 503 F.3d

89, 95 (2d Cir. 2007)). In short, "[i]n ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the [claim], not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). Where a claimant is proceeding pro se, the Court will construe the claim liberally, although the claim must nonetheless be supported by specific and detailed factual allegations that provide a fair understanding for the basis of the claim and the legal grounds for recovery against a debtor. *Kimber v. GMAC Mortg., LLC (In re Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (citing *Iwachiw v. N.Y.C. Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005) (summary order)); *see also McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156–57 (2d Cir. 2017) (discussing the policy considerations undergirding liberal construction of pro se litigants' filings).

## Discussion

### Whether the Claim States a Claim for Fraud Under Rule 12(b)(6)

The Claimants alleged Bank of America "fraudulently deferred principle, [sic] interest and fees despite receipt of mortgage payments." Response at 1. They challenge the Corporate Advance Fees added to their Mortgage balance because the fees seem "extremely high and they aren't broken down clearly to me." Claim at 6. The Claimants purportedly rely on the difference between the Billing Statement, which according to the Claimants shows a principal balance of $249,738.21, and the Payoff Statement, which stated that $346,620.67 was required to pay off the Mortgage Loan. *Id.* at 14–18. However, the Claimants redacted the Account Information on the Billing Statement, including the referenced principal balance. *See* Claim at 14.

Under Indiana law, the elements of actual fraud are: (i) a material misrepresentation of past or existing fact by the defendant, which; (ii) was false; (iii) was made with knowledge or reckless

11

ignorance of the falsity; (iv) was relied upon by the plaintiff; and (v) proximately caused the plaintiff's injury. *Kapoor v. Dybwad*, 49 N.E.3d 108, 121 (Ind. Ct. App. 2015) (quoting *Rice v. Strunk*, 670 N.E.2d 1280, 1289 (Ind. 1996)); *Schott v. Huntington Nat'l Bank*, 914 F. Supp. 2d 933, 941 (S.D. Ind. 2012) ("Under Indiana law, a claim for fraud will lie when there is a material misrepresentation of past or existing fact made with knowledge of or reckless disregard for the falsity of the statement, and the misrepresentation relied upon to the detriment of the relying party." (quoting *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 675 (Ind. 1997))). In alleging fraud, a claimant must clear an additional hurdle of "stating all such averments with particularity." *See Schott*, 914 F. Supp. 2d at 937. "Overly general allegations of fraud and misrepresentation do not satisfy the heightened pleading standard." *Id.* at 941.

Other than to generally state that their payments were not credited, resulting in "the mounting, undisclosed [Corporate Advance Fees] now totaling $96,882.46," the Claimants fail to explain how behavior by Bank of America in 2013 was fraudulent or untimely resulting in a difference in balances. Claim at 4. The Claimants fail to allege which payments were made and not credited, what representations were made by Bank of America, and how they relied upon those representations such that they were caused to sustain an injury. The Claimants include an unsigned loan modification offer dated November 22, 2013. *Id.* at 8–13. The Claimants do not indicate the significance of this document. They also fail to acknowledge that on December 16, 2013, they signed the Loan Modification with Ditech, agreeing to a new principal balance of $356,750.19, with a deferred non-interest-bearing principal of $90,985.19. Loan Modification at 1. The Claimants do not allege that they were unaware of the Corporate Advance Fees from Bank of America until after signing the Loan Modification. Instead, the Claimants provide an email exchange with the Indiana Attorney General's office predating the execution of the Loan

12

Modification by approximately a week, in which they specifically raised their concerns about the Corporate Advance fees. Claim at 6–7. Despite those concerns, they executed the Loan Modification. The Claimants, in short, are trying to hold Ditech accountable for Corporate Advance Fees added to their Mortgage Loan by Bank of America, even though they subsequently entered into an agreement with Ditech that stipulated their Mortgage balance was $356,750.19, explicitly including those same fees.

The Court holds that the Claimants have not stated a claim for fraud under Indiana law.

**Whether the Claim States a Claim for TILA Violation Under Rule 12(b)(6)**

The Claimants allege that the imposition of the Corporate Advance Fees constitutes a breach of TILA because Bank of America failed to disclose the fees as required. Claim at 4 ("These fees are also in violation to The Truth in Lending Act of 1968 which requires uniform and standardized disclosures of costs and charges to consumers of which we have not been able to substantiate with any of the three mortgage lenders (BAC, Green Tree and Ditech)."). The Claimants do not cite to the specific TILA provisions that govern disclosure, nor do they provide specific factual allegations to support their complaint. In their Response, the Claimants allege that their payments were not applied correctly and only generally reference eight pages of payment history. Response at 6–13. They do not provide proof of payment or allege which payments were incorrectly applied.

TILA was enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). TILA requires lenders to disclose information

13

about all charges and fees associated with a loan.  12 C.F.R. § 1026.17(a); *see also id.* § 1026.17(b) ("The creditor shall make disclosures before consummation of the transaction.").

Section 1639f(a) of TILA requires that "[i]n connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt . . . ."  15 U.S.C. § 1639f(a).  In other words, this section requires the prompt crediting of home loan payments, generally "as of the date of receipt." *Id.*  Furthermore, with respect to any residential mortgage loan, section 1638(f) requires a creditor, assignee, or servicer to send the obligor periodic statements containing information such as the remaining principal, the current interest rate, a description of late payment fees, and contact information through which the obligor can obtain more information about the mortgage. *Id.* § 1638(f).

Under TILA, Congress limited the liability of assignees to circumstances where the violation is "apparent on the face of the disclosure statement," and the assignment was voluntary. 15 U.S.C. § 1641(a), (e).  "Only violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents will make the assignee liable under TILA." *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 694 (7th Cir. 1998); *see also Dawoudi v. Nationstar Mortg. LLC*, 448 F. Supp. 3d 918, 928 (N.D. Ill. 2020) (dismissing TILA claim for failure to provide a payoff balance because that balance can be provided only after the origination of the loan and therefore could not appear on the face of the disclosure statement).  TILA does not define the term "disclosure statement." *Dawoudi*, 448 F. Supp. 3d at 928.  That term refers to the "disclosure of certain terms and conditions of credit before consummation of a consumer credit transaction." *Rendler v. Corus Bank*, 272 F.3d 992, 996 (7th Cir. 2001) (quoting *Valencia v.*

14

*Anderson Bros. Ford*, 617 F.2d 1278, 1282 (7th Cir. 1980), *rev'd on other grounds*, 452 U.S. 205 (1981)).

The Claimants do not allege that the TILA violations are "apparent on the face of the disclosure statement" as required under section 1641.  Moreover, they make broad allegations that may implicate sections 1638 and 1639f; however, they do not provide sufficient information to support their conclusory allegation of incorrect application of payments.  The only payment history provided by the Claimants begins in 2011 before Ditech was assigned the Mortgage and ends just after the Claimants executed the Loan Modification Agreement.  Any potential violation by Bank of America would not translate to Ditech.  *See Crum v. SN Servicing Corp.*, No. 19-cv-02045, 2020 WL 5629694, at *2 (S.D. Ind. Sept. 21, 2020) ("Neither a failure to timely credit received loan payments as required by § 1639f nor a failure to transmit periodic statements as required by § 1638(f) involves the disclosure statement; by definition, such noncompliance would occur after any pre-transaction disclosures.").

Accordingly, the Claimants have failed to allege facts demonstrating that Ditech, as assignee, is liable for any alleged violations of TILA caused by Bank of America.  As for Ditech's own action, the Court cannot identify a legally cognizable claim based upon a violation of TILA.  The payment history provided by the Claimants begins in 2011, before Ditech was assigned the Mortgage and ends just after the Claimants executed the Loan Modification with Ditech.  The only other documents provided by the Claimants in relation to Ditech are the Billing Statement and Payoff Statement, and those documents demonstrate that Ditech complied with TILA's requirements to provide periodic statements and to pay off statements when requested.  Neither of those documents show a failure to credit payments.

The Court finds that the Claimants have not stated a claim for a violation of TILA.

15

## Conclusion

Based on the foregoing, the Court sustains the Objection and disallows and expunges the Claim.

IT IS SO ORDERED.

Dated: New York, New York
September 29, 2023

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge