UNITED STATES BANKRUPTCY COURT                    NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
In re:                                          :
                                                :    Case No. 19-10412 (JLG)
Ditech Holding Corporation, *et al.*,           :    Chapter 11
                                                :
                                                :    (Jointly Administered)
                              Debtors.[1]       :
------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS TRUSTEE AND PLAN ADMINISTRATOR'S SEVENTY-SECOND OMNIBUS OBJECTION WITH RESPECT TO THE PROOF OF CLAIM FILED BY CYNTHIA A. SUMMERS

A P P E A R A N C E S :

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10022
By:    Richard Levin

WEIL, GOTSHAL & MANGES LLP
*Attorneys for the Plan Administrator*
767 Fifth Avenue
New York, New York 10153
By:    Ray C. Schrock, P.C.

Cynthia A. Summers
*Appearing Pro Se*
406 Boyd Street
Leesville, South Carolina 29070

---

[1]    The Debtors' *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1326 (the "Third Amended Plan"), was confirmed, which created the Wind Down Estates. The Wind Down Estates, along with the last four digits of each of their federal tax identification numbers, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction[2]

On May 3, 2019, Cynthia A. Summers (the "Claimant") filed Proof of Claim No. 1657 (the "Claim"), asserting an unsecured claim in the amount of $25,679.00 and a secured claim in the amount of $25,679.00 for a total claim of $51,358.00 against Ditech Holding Corporation. Claim at 1–2.[3] She identifies the basis of her Claim as "Mishandling of loan." *Id.* at 2.

On March 19, 2021, the Plan Administrator and Consumer Claims Trustee filed their Seventy-Second Omnibus Objection (the "Objection").[4] In it, they object to and seek to expunge the Claim on the basis that the Claim was "determined to have no merit based on Company review." Objection, Ex. A (List of Claims) at 4. On April 15, 2021, the Claimant filed a response to the objection (the "Response").[5] On September 14, 2023, the Consumer Claims Trustee filed a reply in further support of the Objection (the "Reply").[6]

Pursuant to the Claims Procedures Order,[7] the filing of the Response caused an adjournment of the Objection so that the Court could conduct a Sufficiency Hearing on the Claim. Under that order, the legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim upon which relief may be granted under

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order, and Third Amended Plan, as applicable. References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412.

[3]    Because the Claim and Response do not have internal page numbers, references herein to those documents are to the PDF page number of the document.

[4]    *Seventy-Second Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims)*, ECF No. 3280.

[5]    *Notice of Objection*, ECF No. 3396.

[6]    *Reply of the Consumer Claims Trustee in Support of the Plan Administrator and Consumer Claims Trustee's Seventy-Second Omnibus Objection with Respect to the Claim of Cynthia Summers (Claim No. 1657)*, ECF No. 4874.

[7]    *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[8]  Claims Procedures

Order ¶ 3(iv)(a).

On September 28, 2023, in accordance with the Claims Procedures Order, the Court

conducted a Sufficiency Hearing on the Claim.  The Consumer Claims Trustee appeared through

counsel, and the Claimant appeared pro se.  The Court has reviewed the Claim, Objection,

Response, and Reply, including all documents submitted in support thereof, and has considered

the arguments made by the parties in support of their respective positions.

For the reasons set forth below, the Court sustains the Objection, and disallows and

expunges the Claim.

### Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States

District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska,

C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background

**The Mortgage Loan**

On or about November 29, 1995, Kirk Summers, the Claimant's spouse ("Mr. Summers"),

executed a promissory note (the "Note")[9] in favor of Great Eastern Financial Services, Inc. in the

---

[8]    Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  In filing the Objection, the Consumer Claims Trustee initiated a contested matter.  *See Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs., Inc.)*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter").  Bankruptcy Rule 9014 governs contested matters.  The rule does not explicitly provide for the application of Bankruptcy Rule 7012.  However, Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply."  Fed. R. Bankr. P. 9014.  The Court does so here in the Claims Procedures Order.

[9]    The Note is annexed to the Reply as Exhibit A.  The Court can properly take judicial notice of matters of public record.  *See Sutton ex rel. Rose v. Wachovia Sec., LLC*, 208 F. App'x 27, 30 (2d Cir. 2006) (summary order) (holding that filings and orders in other courts "are undisputably matters of public record"); *Ferrari v. Cnty. of Suffolk*, 790 F.

amount of $30,000 with a term of fifteen years. Attached to the Note is a Balloon Rider. Note at 3. The Note was secured by a mortgage (the "Original Mortgage")[10] on the property located at 406 Boyd St., Leesville, South Carolina, 29070 (the "Property"). Both the Claimant and Mr. Summers signed the Original Mortgage.

On May 3, 1999, the Original Mortgage was assigned to Green Tree Financial Servicing Corporation. Reply, Ex. C (Assignment). Green Tree Financial Servicing Corporation later became Green Tree Servicing LLC, which later became Ditech Financial, LLC ("Ditech"). On October 7, 2015, Ditech assigned the loan to U.S. Bank, N.A., as Trustee on behalf of Home Improvement and Home Equity Loan Trust 1996-C. Reply, Ex. C (Assignment). On September 6, 2016, Ditech, as servicer, entered into a loan modification agreement with the Claimant and Mr. Summers (the "Loan Modification").

On April 27, 2018, the Claimant and Mr. Summers executed an amended mortgage (the "Amended Mortgage"[11] and together with the Note and Original Mortgage, the "Mortgage Loan"). On August 2, 2018, the Amended Mortgage was recorded. The Amended Mortgage remedied an error in the legal description attached to the Original Mortgage, updated the assignment history of the Mortgage Loan, and acknowledged the Loan Modification. Amended Mortgage at 1–2. The Amended Mortgage lists the Claimant and Mr. Summers as borrowers. *Id.* at 1.

---

Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*."); *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) ("[Courts] must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007))).

[10]    The Original Mortgage is annexed to the Reply as Exhibit B.

[11]    The Amended Mortgage is annexed to the Reply as Exhibit E.

**The Foreclosure Action**

On January 7, 2016, Ditech filed a complaint for Reformation of Mortgage and Foreclosure (the "Foreclosure Complaint")[12] in the Court of Common Pleas, County of Lexington, South Carolina (the "State Court") in the case styled *Green Tree Servicing, LLC v. Kirk and Cynthia Summers*, No. 2016 CP 3200060 (Ct. Com. Pl. filed Jan. 7, 2016) (the "Foreclosure Action").[13] The Foreclosure Complaint sought to reform the deed to remedy a scrivener's error in the legal description attached to the Original Mortgage. Foreclosure Complaint ¶¶ 12–16. It also sought to foreclose on the Note and Original Mortgage. *Id.* ¶¶ 17–34.

In the Foreclosure Complaint, Ditech contended that the monthly payments due on the Note and Original Mortgage were in default since January 1, 2011, and as of that date, the amount of $26,998.08 was due and owing. *Id.* ¶ 19. Ditech also asserted that it held the primary lien on the Property and that approximately eleven distinct federal, state and county tax liens on the Property were junior liens that should be subordinated. *Id.* ¶¶ 21, 23–33. The Claimant and Mr. Summers filed an answer and counterclaims (the "Answer and Counterclaims")[14] asserting that (i) Ditech was aware of the error in the deed at the time of origination but proceeded to record the deed and accept payments on the loan, Answer and Counterclaims ¶¶ 36–38; (ii) the loan was paid in full, *id.* ¶ 38; (iii) the Claimant and Mr. Summers were unaware of the balloon payment, *id.* ¶ 42; and (iv) the Claimant's signature on the Balloon Rider was forged, *id.* ¶¶ 40–41. On May 9, 2016, Ditech filed a reply. *See* Foreclosure Docket at 2. On September 13, 2018, the parties stipulated a dismissal of the lawsuit without prejudice. *Id.*

---

[12]    The Foreclosure Complaint is annexed to the Reply as Exhibit G.

[13]    The docket in the Foreclosure Action (the "Foreclosure Docket") is annexed to the Reply as Exhibit F.

[14]    The Answer and Counterclaims are annexed to the Reply as Exhibit H.

**The Chapter 11 Cases**

On February 11, 2019, Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates (the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[15] Thereafter, the Court extended the General Bar Date for consumer borrowers, twice, ultimately setting the date as June 3, 2019.[16]

On September 26, 2019, the Debtors confirmed their Third Amended Plan,[17] and on September 30, 2019, that plan became effective.[18] The Plan Administrator is a fiduciary appointed under the Third Amended Plan who is charged with the duty of winding down, dissolving, and liquidating the Wind Down Estates. *See* Third Amended Plan, art. I, §§ 1.130, 1.184, 1.186. The Plan Administrator, on behalf of each of the Wind Down Estates, is authorized to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims. *See id.* art. VII, § 7.1. The Consumer Claims Trustee is a fiduciary appointed under the Third Amended Plan who is responsible for the reconciliation and resolution of Consumer Creditor

---

[15]    *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[16]    *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[17]    *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1404.

[18]    *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

Claims and distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims in accordance with the Third Amended Plan.  *See id.* art. I, § 1.41.  The Consumer Claims Trustee has the exclusive authority to object to all Consumer Creditor Claims.  *See id.* art. VII, § 7.1.

**The Claims Procedures Order**

On November 19, 2019, the Court entered the Claims Procedures Order.  Under that order, the Plan Administrator and Consumer Claims Trustee are authorized to file Omnibus Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order.  *See* Claims Procedures Order ¶ 2(i)(a)–(h).  A properly filed and served response to an objection gives rise to a "Contested Claim" that will be resolved at a Claim Hearing.  *Id.* ¶ 3(iv).  The Plan Administrator and/or Consumer Claims Trustee, as appropriate, has the option of scheduling the Claim Hearing as either a "Merits Hearing" or a "Sufficiency Hearing."  *Id.* ¶ 3(iv)(a), (b).  A "Merits Hearing" is an evidentiary hearing on the merits of a Contested Claim.  A "Sufficiency Hearing" is a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors.  The legal standard of review that will be applied by the Court at a Sufficiency Hearing is equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  *Id.* ¶ 3(iv)(a).

**The Claim**

On May 3, 2019, the Claimant filed her Claim asserting a total claim of $51,358.00, of which $25,679.00 is filed as a secured claim and $25,679.00 is filed as an unsecured claim.  Claim at 2.  She asserts the basis of her claim as "Mishandling of loan."  *Id.*  In her narrative, she asserts several alleged problems that she encountered over the life of the loan including, (i) an erroneous

legal description; (ii) forged signature on the Balloon Rider; (iii) change in mortgage payment and account number; and (iv) errors in the loan modification. The Court summarizes each of the alleged problems below.

### *Erroreous Legal Description*

The Claimant asserts that the legal description attached to the Original Mortgage was erroneous, and as such, she was prevented from receiving financial subsidies from the county for repairs on her Property. *Id.* at 22. As support, she attaches a 2014 letter which explains that the land upon which the Property is located was subdivided into six parcels after the Claimant and Mr. Summers executed the Original Mortgage in 1995. *Id.* at 24. This had the effect of rendering the legal description incomplete. *See id.* As support, she attaches a plat map and three iterations of the legal description of the Property. *Id.* at 25–28.

Apart from her assertion that she was unable to receive financial subsidies from the county, the Claimant does not explain how she was damaged by the incorrect legal description.

### *Balloon Rider Signature*

The Claimant contends that the signature bearing her name on the Balloon Rider annexed to the Original Mortgage does not belong to her and argues that this "illegal signature" renders the Mortgage Loan "null and void." *Id.* at 32. She requests that this Court release her from her mortgage obligation. *Id.* Attached to the Claim is a letter from Green Tree, dated August 15, 2012, that responds to the Claimant's contention that she did not sign the Balloon Rider. In it, Green Tree notes that (i) the loan originated nearly seventeen years prior, and it has no knowledge of the circumstances surrounding the loan origination; (ii) ancillary loan documents in the file are signed by the Claimant and are not disputed; (iii) both the Original Mortgage and Federal Truth-in-Lending Disclosure Statement (the "TILA Statement") bearing the undisputed Claimant's

signature refer to the balloon payment due on January 1, 2011; and (iv) as of August 15, 2012, the account was 591 days past due. *Id.* at 34. Following the letter is the TILA Statement, signed by the Claimant, which shows that the Claimant and Mr. Summers agree to make (i) 179 payments of $355.46, commencing on February 1, 1996; and (ii) one payment of $27,047.79 on January 1, 2011. *Id.* at 35–36. As support for her contention that her signature on the Balloon Rider is forged, the Claimant includes the Property Owner's Affidavit and Name Affidavit bearing her signature. *Id.* at 37–39. She asserts that those signatures are distinguishable. *Id.* at 32. Finally, as support for her contention, the Claimant attaches a letter, invoice, and cancelled check from a Forensic Document Examiner, but she does not provide any information regarding that examiner's review or conclusions. *Id.* at 41–44.

### Change to the Mortgage Payment and Account Number

The Claimant asserts that in March 2019, coinciding with a change in her loan account number, Ditech lowered her monthly payment from $471.46 to $355.46. *Id.* at 8. As support, she attaches what appears to be a screenshot from her Ditech account showing a payment in the amount due of $355.46 on March 1, 2019. *Id.* at 15. She also attaches a letter from Ditech, dated February 21, 2019, informing her of the account number change. *Id.* at 18. In March and April 2019, she made monthly mortgage payments of $355.46 each. *Id.* at 8. However, she acknowledges that by April 17, 2019, Ditech informed her that $355.46 was not the correct monthly payment amount due. *Id.* The Claimant does not provide any additional documentation to support her contention that the monthly mortgage payment was changed by Ditech. She includes documentation with her Claim that shows she had been regularly paying $471.46 each month for several years. *Id.* at 10. She also includes four Ditech billing statements all showing a monthly mortgage payment amount of $471.46, *id.* at 14, 17, 19–20, two letters from Ditech, dated April

9

2019, demonstrating that her account was past due, *id.* at 11–13.  She further alleges that Ditech reported her as delinquent to the credit bureaus, but she offers no information or documentation to support the negative reporting claim.  *Id.* at 8.  She asks the Court to require Ditech to reimburse her for any overpayments that she may have made on the Mortgage Loan.  *Id.*

### Quitclaim Deed and Loan Modification

On March 29, 2015, Mr. Summers executed a Quitclaim Deed, releasing his interest in the Property to the Claimant.  *Id.* at 22; Reply, Ex. I (Quitclaim Deed).  On September 6, 2016, when the parties executed the Loan Modification, Mr. Summers co-signed the agreement.  *Id.* at 22, 30. The Claimant alleges that the erroneous legal description was attached to the Loan Modification. *Id.* at 22.  She contends that because her husband signed the Quitclaim Deed, his signature on the Loan Modification, and the erroneous legal description, "has to be illegal."  *Id.*  As support, she includes the first and last page of the Loan Modification agreement, with the last page showing her husband's signature.  *Id.* at 29–30. She also annexes to the Claim a largely illegible legal description.  *Id.* at 31.  She does not state how her husband's signature on the Loan Modification or the attachment of the erroneous description of the Property to the Loan Modification has caused her damages.

### **The Objection**

On March 19, 2021, the Plan Administrator and Consumer Claims Trustee filed their Objection to the Claim.  In it, they object to and seek to expunge the Claim on the basis that the Claim is "determined to have no merit based on Company review."  Objection, Ex. A (List of Claims) at 4.

**The Response**

On April 15, 2021, the Claimant filed her Response to the Objection.  It contains no narrative or additional explanation of the Claim and instead consists of a cover sheet and a copy of a March 16, 2017 letter from the Claimant's counsel, Brian Boger ("Mr. Boger"), to Ditech regarding payments submitted by the Claimant after the Loan Modification.  Response at 2–4.  In it, Mr. Boger expresses general confusion about the billing statements and payment application after the Loan Modification.  *Id.*  The letter also refers to a January 2017 correspondence from Ditech concerning an escrow shortage.  *Id.* at 4.  Mr. Boger asserts that the Claimant was never advised about changes to her escrow account, and as she was not receiving billing statements, she was not aware of the correct monthly payment amount due.  *Id.*  Mr. Boger further contends that the Claimant has overpaid Ditech by $327.62.  *Id.*

**The Motion to Estimate**

On March 24, 2023, the Plan Administrator and Consumer Claims Trustee filed a motion to estimate claims (the "Estimation Motion")[19] for the purposes of setting a distribution reserve, which included the Claim.  Estimation Motion, Ex. A (List of Claims) at 2.  The Estimation Motion sought to have the priority and secured portions of the Claim reclassified as a Class 6 Consumer Creditor Claim that is not a 363(o) Consumer Creditor Claim, as defined by the Third Amended Plan and estimated in the total amount of $51,358.00.  *Id.*  The Claimant did not object to the Estimation Motion.  By an order dated May 10, 2023, the Court granted the Estimation Motion.[20]

---

[19]    *Consumer Claims Trustee and Plan Administrator's Joint Omnibus Motion to Reclassify Certain Proofs of Claim and Consumer Claims Trustee's Motion to Estimate for Purposes of Distribution Reserves*, ECF No. 4662.

[20]    *Order Granting Consumer Claims Trustee and Plan Administrator's Joint Omnibus Motion to Reclassify Certain Proofs of Claim and Consumer Claims Trustee's Motion to Estimate for Purposes of Distribution Reserves*, ECF No. 4732.

**The Reply**

On September 14, 2023, the Consumer Claims Trustee filed a Reply in support of the Objection. She asserts that the Claim fails to adequately plead a claim under Rule 8(a) of the Federal Rules of Civil Procedure ("Rule 8(a)").[21] Reply ¶¶ 45–47. She also contends that, reading the claim in the light most favorable to the Claimant, the Claim purports to state claims against the Debtors for breach of contract and violation of the Fair Credit Reporting Act (the "FCRA"). She asserts that the Claim fails to assert facts sufficient to state a claim for relief under Rule 12(b)(6). *Id.* ¶¶ 48–84.

## Applicable Legal Principles

Under section 502(a) of the Bankruptcy Code, a "claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The filing of a proof of claim executed and filed in accordance with the Bankruptcy Rules constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). Section 502(b) prescribes nine categories of claims that will be disallowed, including that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). If an objection filed pursuant to section 502(b)(1) refutes at least one of the claim's essential allegations, the claimant has the burden to demonstrate the validity of the claim. *See, e.g.*, *Rozier v. Rescap Borrower Claims Tr. (In re Residential Cap., LLC)*, No. 15-cv-3248, 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 11-cv-8444, 2012 WL 1886755, at *3 (S.D.N.Y. May 12, 2012).

---

[21]    Rule 8(a) is incorporated herein pursuant to Bankruptcy Rule 7008.

In assessing the merits of the Objection, the Court must consider the sufficiency of the allegations in support of the Claim in light of the pleading requirements established by Rules 8(a) and 12(b)(6) and determine whether Claimant has stated a claim for relief. The Consumer Claims Trustee asserts that the Court should disallow and expunge the Claim because it does not satisfy the pleading threshold of Rule 8(a) and does not state a claim upon which relief can be granted as required by Rule 12(b)(6).

The function of the pleading "is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1998). Rule 8(a) mandates that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, to meet that standard, a pleading must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8(a) does not require "'detailed factual allegations', but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "When a complaint does not comply with the requirement that it be short and plain, the court has the power . . . in response to a motion by the defendant . . . to dismiss the complaint." *Salahuddin*, 861 F.2d at 42. Under Rule 8(a), a court may dismiss a complaint that lacks sufficient details. *Samuel v. Bellevue Hosp. Ctr.*, No. 07-cv-6321, 2008 WL 3895575, at *3–4 (S.D.N.Y. Aug. 22, 2008) (dismissing claims pleaded with insufficient detail pursuant to Rule 8(a)); *Jaffe v. Cap. One Bank*, No. 09-cv-4106, 2010 WL 691639, at *5 (S.D.N.Y. Mar. 1, 2010) (finding that the complaint does not meet Rule 8(a) standards where it presented "unadorned, the defendant-unlawfully-harmed-me accusations").

Under Rule 12(b)(6), a claim may be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To satisfy Rule 12(b)(6), the claim "must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).  In considering whether that standard is met for a particular claim, the Court must assume the truth of all material facts alleged in support of the claim and draw all reasonable inferences in the claimant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  However, the Court "need not accord 'legal conclusions, deductions or opinions that are couched as factual allegations . . . a presumption of truthfulness.'" *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 591 (S.D.N.Y. 2008) (quoting *Cal. Pub. Empls.' Ret. Sys. v. N.Y. Stock Exch., Inc. (In re NYSE Specialists Sec. Litig.)*, 503 F.3d 89, 95 (2d Cir. 2007)).  In short, "[i]n ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the [claim], not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)).  Where a claimant is proceeding pro se, the Court will construe the claim liberally, although the claim must nonetheless be supported by specific and detailed factual allegations that provide a fair understanding for the basis of the claim and the legal grounds for recovery against a debtor. *Kimber v. GMAC Mortg., LLC (In re Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (citing *Iwachiw v. N.Y.C. Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005) (summary order)); *see also McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156–57 (2d Cir. 2017) (discussing the policy considerations undergirding liberal construction of pro se litigants' filings).

## Discussion

### The Claimant Fails to Adequately Plead a Claim Under Rule 8(a)

The Consumer Claims Trustee asserts that the Court should expunge the Claim because neither the Claim nor the Response meets the minimal pleading standards under Rule 8. Reply ¶¶ 45–47. The Claim itemizes general grievances against both Ditech and other entities, which include: (i) an errononous legal description; (ii) allegedly forged signature on the Balloon Rider; (iii) change in mortgage payment and account number; and (iv) errors in the loan modification. While the Claim includes these general grievances, the Claimant does not articulate any specific legal claims. Similarly, the Response articulates issues the Claimant has with Ditech. However, across both submissions, the Claimant, while expressing frustration and confusion regarding her mortgage and its servicing, does not assert any cognizable legal claim.

"In accordance with the liberal pleading standards of Rule 8, 'a plaintiff must disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369, 384 (Bankr. S.D.N.Y. 2007) (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)). The Claim and Response fail to satisfy that standard. There is insufficient detail in those documents to state a claim for relief against the Debtors. The Court finds that the Claim and Response, either separately or collectively, do not meet the pleading requirements of Rule 8(a) because the allegations contained within are vague, confusing, and difficult to understand. That is grounds for disallowing and expunging the Claim. *See Phipps v. City of New York*, No. 17-cv-6603, 2019 WL 4274210, at *2 (S.D.N.Y. Sept. 10, 2019) (dismissing a complaint under Rule 8(a) that was "convoluted, confusing, and difficult to comprehend"); *Djangmah v. Magafara*, No. 16-cv-6136, 2018 WL 4080346, at *3 (S.D.N.Y.

Aug. 26, 2018) (dismissing a complaint under Rule 8(a) that was "so confusing, ambiguous and incomprehensible that it does not place Defendants on fair notice of Plaintiff's claims").

## The Claimant Fails to Assert Facts Sufficient to State a Plausible Claim Under Rule 12(b)(6)

## Breach of Contract

Under South Carolina law, the elements for a breach of contract are (i) the existence of a contract; (ii) a breach of the contract; and (iii) damages caused by the breach. *Hotel and Motel Holdings, LLC v. BJC Enter., LLC*, 780 S.E.2d 263, 272, (S.C. Ct. App. 2015). "The general rule is that for a breach of contract the defendant is liable for whatever damages follow as a natural consequence and a proximate result of such breach." *S. Glass & Plastics Co. v. Kemper*, 732 S.E.2d 205, 209 (S.C. Ct. App. 2012) (quoting *Fuller v. E. Fire & Cas. Ins. Co.*, 240 S.C. 75, 89 (1962)). The purpose of the damages award in a breach of contract action is to put the claimant in as good a position as if the contract had been performed. *Minter v. GOCT, Inc.*, 473 S.E.2d 67, 70 (S.C. Ct. App. 1996). The measure of damages is the loss suffered by the claimant resulting from the breach. *Collins Holding Corp. v. Landrum*, 601 S.E.2d 332, 333 (S.C. 2004); *Drews Co., Inc. v. Ledwith-Wolfe Assocs., Inc.*, 371 S.E.2d 532, 534 (S.C. 1998).

### *Erroneous Legal Description*

The Claimant asserts that because of the incorrect legal description on the deed, she was unable to receive funds from the county for repairs. Claim at 22. She maintains that she has been unable to remedy this issue "up until this day." *Id.* She does not differentiate between the deed showing ownership in the Property and the legal description securing the mortgagee's interest in the Property. She also does not acknowledge that the Amended Mortgage, executed on April 27, 2018, and recorded on August 2, 2018, explicitly corrected the legal description. *See* Amended Mortgage. The Claimant attaches a 2014 letter relating to a title insurance policy claim filed by

16

Ditech in October 2011.  *Id.* at 24.  As explained by this letter, the Property was subdivided following the original sale, and therefore the Mortgage Loan did not encumber the correct parcel. *Id.*  At the time of the letter, Green Tree was attempting to foreclose on the Property, but it was unable to foreclose as the deeds in the chain of title contained incomplete lot designations.  *Id.* Apart from complaining about being cut off from subsidies, the Claimant does not explain how she was damaged by the incorrect legal description.

Furthermore, during the approximately five-year period of the disputed over the legal description in the title, the Claimant remained in her home but did not make a mortgage payment.[22] A contract "may be avoided or reformed on the ground of mutual mistake of fact where the mistake is common to both parties and, by reason of it, each has done what neither intended."  *Adams Co. v. James F. Pederson Co.*, 418 S.E.2d 337, 339 (S.C. Ct. App. 1992).  Before a contract is reformed, evidence must be shown that it was a mutual mistake.  *Sims v. Tyler*, 281 S.E.2d 229, 230 (S.C. 1981).  The Claimant does not assert that she tried to avoid or reform the Mortgage Loan. Rather, she apparently wants to remedy the legal description in the mortgage.  However, that is contradicted by her position in the Foreclosure Action.  While the Debtors explicitly sought reformation of the Mortgage in order to correct the legal description so that they could proceed with foreclosure, in her Answer and Counterclaim, the Claimant denied each allegation regarding inaccurate legal descriptions and argued that the Debtors were aware of the erroneous deed at the time of origination and recorded it anyway.  Answer and Counterclaims ¶ 36.  There are several issues with the Claimant's shifting position.  First, Ditech was not the servicer of the Mortgage

---

[22]    The Foreclosure Complaint, filed January 1, 2016, states that the date of default was January 1, 2011.  Claimant denied the default date but, as a defense, claimed that the mortgage was paid in full as of January 1, 2011, because her signature on the Balloon Rider was forged, thus relieving her of the obligation to make the balloon payment.  Nowhere in the Claim or Response does Claimant assert that she made any additional payments on the mortgage between January 2011 and September 2016 (following the Loan Modification).

Loan at the time of origination; thus, it could not have negligently or otherwise recorded a mortgage that was unsecured by real property. Second, the legal description was fixed by the Amended Mortgage recorded on August 2, 2018, prior to the filing of the Claim. Third, it is not reasonable for the Claimant to seek relief against the Debtors for their failure to rehabilitate a title issue which the Debtors themselves tried to remedy in the Foreclosure Action. Finally, the title issue was ultimately fixed by the Amended Mortgage, which was recorded on August 2, 2018, roughly a month before the Foreclosure Action was dismissed by mutual stipulation.

Potential issues with the deed and the subdividing of the Property were apparently anticipated at origination in the Property Owner's Affidavit, executed by the Claimant and Mr. Summers, which states,

> It is Affiant's intention to convey the entire property at such location as security for a loan of even date herewith from Great Eastern Financial Services, Inc., by Deed to Secure Debt of even date herewith from Affiant to Great Eastern Financial Services, Inc. to make such loan; that if said Deed to Secure Debt does not contain a full or proper legal description of the property when executed by Affiant, Affiant hereby authorizes Great Eastern Financial Services, Inc. or the firm of Ron Greenburg, Attorney at Law to insert a full legal description or correct the legal description in said Deed and hereby ratifies and affirms said Deed to Secure Debt as if such description were inserted prior to execution.

Claim at 37. This apparent anticipation would make it difficult for the Claimant to avoid or reform the underlying contract based on mutual mistake.

Generally, a party must be in privity of contract with another to maintain a breach of contract action against them. *Bob Hammond Constr. Co., Inc. v. Banks Constr. Co.*, 440 S.E.2d 890, 891 (S.C. Ct. App. 1993). The Debtors were not a party to the contract at origination. Ditech began servicing the Mortgage Loan on May 3, 1999. The Original Mortgage, with the deficient legal description, was executed in 1995. Any claim relating to title issues would run against the

originator, Great Eastern Financial Services, Inc.  In any event, the Amended Mortgage obviates the need to consider that issue, and the Claimant fails to establish any damages.

Under the Truth-in-Lending Act ("TILA"), a "security interest" is defined as an interest in property that secured performance of a consumer credit obligation recognized by state or federal law.  12 C.F.R. § 1026.2(a)(25).  TILA requires a creditor to disclose if the creditor has or will acquire a security interest in the consumer's property purchased as part of the transaction.  15 U.S.C. § 1601(a); 12 C.F.R. § 1026.18(m) ("The creditor shall make disclosures before the consummation of the transaction.").  If the consumer purchases the encumbered property as part of the credit transaction (a credit sale) or with the proceeds of the credit transaction (a loan), the property need only be generally identified.  *See* 15 U.S.C. § 1638(a)(9)(A); 12 C.F.R. § 1026.18(m).  TILA imposes liability for damages upon "any creditor" who violates the Act.  15 U.S.C. § 1640(a).  Congress limited the liability of assignees to circumstances where the violation is "apparent on the face of the disclosure statement," and the assignment was voluntary. 15 U.S.C. § 1640(a).  The erroneous legal description is part of the Original Mortgage and not apparent on the face of the disclosure statement.

### Balloon Rider Signature

The Claimant asserts that the signature on the Balloon Rider, annexed to the Original Mortgage, is not her signature.  Claim at 32.  She requests that this Court declare the Mortgage Loan null and void and release the mortgage.  *Id.*  As support for her argument, she attaches several other signature pages to demonstrate her signature.  *Id.* at 36, 38–39.  She also attaches an invoice from a forensic document examiner; however, she does not include any of that examiner's conclusions.  *Id.* at 41–43.  Under South Carolina law:

> It is generally affirmed, as a rule, that fraud avoids all contracts.  But it would be more correct to say, fraud makes all contracts voidable; for it is at the option of the

> party to be affected by the fraud, whether or not he will treat the contract as void, and rescind it. The right to rescind, however, is subject to this restriction, that if, after discovery of the fraud, one party still avails himself of the benefit of the contract, or permits the other to proceed with the execution of it, he will thereby be held to have waived the tort and affirmed the contract.

*Levister v. S. Ry. Co.*, 35 S.E. 207, 209 (1900) (quoting *M'Corkle v. Doby*, 1 Strob. 396, 402 (1847)). Claimant does not affirmatively assert a fraud claim. Moreover, in the Foreclosure Action, the Claimant asserted the signature issue as a defense to the foreclosure. She then subsequently signed the Loan Modification, in 2016, and the Amended Mortgage, in 2018. She cannot now disavow the Original Mortgage after both modifying the loan and amending the Original Mortgage. She cannot now request that this Court nullify the Original Mortgage based on an alleged breach of a contract that has since been reformed. Furthermore, information concerning the balloon payment was contained in both the Original Mortgage, Original Mortgage at 2, and the TILA Statement, Claim at 35, both of which were signed by the Claimant. The TILA Statement expressly provides for a balloon payment of $27,047.79 due on January 1, 2011. *Id.* She does not dispute those signatures. She cannot demonstrate that she was unaware of the required balloon payment. She also cannot show damages flowing from the allegedly unauthorized signature. Even if the Claimant had not consented to the terms of the Balloon Rider, given the information contained within other documents that she signed, it is not plausible that she was unaware of her obligation to make a lump sum payment on the mortgage on January 1, 2011.

Any claim for breach of contract related to her signature on the Balloon Rider is barred by the statute of limitations. Breach of contract actions in South Carolina have a three-year statute of limitations. S.C. Code § 15-3-530 (2023). The statute of limitations began to run when the Claimant knew or through reasonable diligence should have known that she had a cause of action. *True v. Monteith*, 489 S.E.2d 615, 616 (S.C. 1997) (citing S.C. Code § 15-3-535 (Supp. 1996)).

The contract was executed in 1995, and therefore the Claimant is well outside the statute of limitations.  The Claimant was aware of the alleged signature issue in 2012 when she filed a complaint with the Review Examiner for the Board of Financial Institutions and hired the forensic document examiner.  Claim at 34, 41.

The Claimant cannot establish a breach of contract claim against the Debtors as it relates to her signature on the Balloon Rider.

### Change to the Mortgage Payment and Account Number

The Claimant alleges that in March 2019, Ditech reduced the monthly amount due on her mortgage from $471.46 to $355.46.  Claim at 8.  As support, the Claimant attaches a screenshot from her online Ditech portal showing that a payment was due on March 1, 2019, in the amount of $355.46.  *Id.* at 15.  The Claimant maintains that this change in the payment amount was due to a change in the account number on her Mortgage Loan.  *Id.* at 8.  The Claimant made payments of $355.46 in March and April 2019.  *Id.*  Ditech allegedly reported her payments as delinquent to the credit bureaus.  *Id.*  Every other document attached to the Claim contradicts the alleged mortgage payment change.  The pay history showing payments made between April 23, 2018, and April 22, 2019, demonstrates that the Claimant regularly paid $471.46 until March 2019.  Each of the periodic statements attached to the Claim shows a monthly payment due of $471.46.  *Id.* at 14, 17, 19–20.  The Claim also annexes a notice of delinquent payment, dated April 17, 2019, directing the Claimant to send $471.46 for her April 2019 payment.  *Id.* at 11.  Even if the Claimant was misled by the error on the March 2019 electronic statement, the statement issued on April 8, 2019, was clear about her arrears and ongoing monthly mortgage payment.  That April 8, 2019 billing statement clearly shows that the $355.46 paid in March 2019 was received and placed into a suspense account.  *Id.* at 14.  That billing statement shows a payment due in the amount of

$471.46 and a past due amount of $942.92, consisting of two payments. *Id.* The Claimant's account was not escrowed, so it is not reasonable for the Claimant to assume that her payment changed as a result of a change in the escrow amount. It is not plausible for the Claimant to claim that she was unaware that the required monthly payment was $471.46.

While the Claimant's monthly loan payment at origination was $355.46, the payment amount after the Loan Modification in 2016 was $471.46, as shown by the documentation attached to the Claim. Furthermore, the Claimant does not demonstrate any damages from making the lower payment. The payment history on the account shows that the payments the Claimant made were applied to principal and interest and not fees. *Id.* at 10. The billing statement dated April 8, 2019, also does not show any late charges due and owing. *Id.* at 14. Within a month of the erroneous information on the electronic statement, Ditech mailed the Claimant an accurate billing statement and a follow-up letter showing the correct amount due. The February 13, 2019 periodic billing statement shows an amount due of $471.46 and an amount past due of $471.46, for a total amount due of $942.92. Claim at 17. The Claimant acknowledges making payments of just $355.46 each for March 2019 and April 2019 based on the online statement. It is not plausible that the Claimant was unaware that her account was in arrears and that payments of $355.46 would not bring her account current.

Ditech alerted the Claimant to the change in her account number by notice dated February 21, 2019. *Id.* at 18. There is nothing in this letter that suggests that the account number change resulted in a change in her monthly payment amount. *Id.*

The Claimant fails to demonstrate a breach of contract by Ditech related to her monthly payment amount and account number change.

*Quit Claim Deed and Loan Modification*

On October 1, 2015, Mr. Summers released his interest in the Property to the Claimant via a Quitclaim Deed.  Claim at 22; Reply, Ex. I (Quitclaim Deed).  On September 6, 2016, both the Claimant and Mr. Summers signed the Loan Modification.  Claim at 30.

The Claimant alleges that the deed containing the inaccurate property description was attached to the 2016 Loan Modification.  Claim at 22.  As support, the Claimant attaches just two pages of the loan modification and an illegible legal description of the Property.  *Id.* at 30–31.  It is not possible from this incomplete documentation for the Court to determine what form of deed, if any, was attached to the Loan Modification.  Additionally, the Original Loan was amended in 2018 to correct the description of the Property in the deed.  The updated legal description attached to the Amended Mortgage was not recorded until August 2, 2018, nearly two years after the Loan Modification was implemented.  The Claimant does not establish that the Debtors committed an error by attaching the only available and most current iteration of the deed to the Loan Modification.

The Claimant objects to the inclusion of her husband's signature on the Loan Modification and argues that including him on the Loan Modification "has to be illegal."  *Id.* at 22.  However, the Quitclaim deed only transferred her husband's interest in the Property to her; it did not extinguish his liability on the Mortgage Loan.  Mr. Summers was the only signatory on the Note.  It was not illegal or improper for him to sign the Loan Modification.

The Claimant has not established that Ditech breached the Mortgage Loan as it relates to her husband's signature on the Loan Modification.

**Violations of the FCRA**

FCRA governs the accuracy of credit reporting information on consumers.  15 U.S.C. § 1681.  Information furnishers, such as a mortgage servicer, must refrain from knowingly reporting inaccurate information and must correct any information that they later discover to be inaccurate.  *Id.* § 1681s-2(a)(1)–(2).  FCRA provides a process whereby a consumer has the right to dispute any information reported to a credit reporting agency.  *Id.* § 1681g(c)(1)(B)(iii).[23] However, section 1681-2(d) limits the enforcement of section 1681s-2(a) exclusively to federal agencies and officials and select state officials.  *Id.* § 1681s-2(d); *see also Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) (FCRA "plainly restricts enforcement of [§ 1681-2(a)] to federal and state authorities").

The only provision of FCRA that is actionable against a furnisher of information, like Ditech, becomes relevant only when the furnisher fails to conduct a reasonable investigation in response to a consumer dispute communicated to it by a credit reporting agency.  15 U.S.C. § 1681s-2(b).  By itself, a dispute communicated from a consumer to a furnisher directly does not trigger the duty under section 1681s-2(b).  *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010) ("Although a consumer may dispute credit information directly to a furnisher . . . the consumer has no private right of action if the furnisher does not reasonably investigate the consumer's claim after direct notification.").  The Claimant asserts that Ditech told her that her insufficient payment was reported to the credit bureaus.  Claim at 8.  The Claimant does not assert however, that she disputed this negative report with any of the credit reporting agencies.  She also

---

[23]    In appropriate circumstances, a consumer may bring a civil cause of action against any person who willfully or negligently fails to comply with any requirement imposed under FCRA and, as appropriate, recover actual and statutory damages, punitive damages, costs, and attorney's fees.  *See* 15 U.S.C. § 1681(n) (civil liability for willful noncompliance); § 1681(o) (civil liability for negligent noncompliance).

does not dispute that she sent a short payment to Ditech.   She cannot establish that Ditech's furnishing of information to the credit bureaus was inaccurate.

The Claimant has not established a violation of the FCRA.

### Conclusion

Based on the foregoing, the Court sustains the Objection and disallows and expunges the Claim.

IT IS SO ORDERED.

Dated: New York, New York
        September 29, 2023

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge