**UNITED STATES BANKRUPTCY COURT**                    NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x
In re:                                              :
                                                    :    Case No. 19-10412 (JLG)
Ditech Holding Corporation, *et al.*,               :    Chapter 11
                                                    :
                                                    :    (Jointly Administered)
                                        Debtors.[1] :
-------------------------------------------------------- x

### MEMORANDUM DECISION AND ORDER SUSTAINING THE PLAN ADMINISTRATOR'S AND CONSUMER CLAIMS TRUSTEE'S SIXTY-THIRD OMNIBUS OBJECTION WITH RESPECT TO THE PROOF OF CLAIM FILED BY MA DELOURDES IPINA

A P P E A R A N C E S :

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10022
By:    Richard Levin

WEIL, GOTSHAL & MANGES LLP
*Attorneys for the Plan Administrator*
767 Fifth Avenue
New York, New York 10153
By:    Ray C. Schrock, P.C.

Ma DeLourdes Ipina
*Appearing Pro Se*
2617 Meadowridge Drive
Garland, Texas 75044

---

[1]    The Debtors' *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1326 ("Third Amended Plan"), was confirmed, which created the Wind Down Estates. The Wind Down Estates, along with the last four digits of each of their federal tax identification numbers, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction[2]

On June 3, 2019, Ma Delourdes Ipina (the "Claimant") filed proof of claim number 23734 (the "Claim"), asserting a secured claim in the amount of $195,565.00 and an unsecured claim in the amount of $5,434.40 for a total claim of $200,999.40 against Ditech Financial LLC f/k/a/ Green Tree Servicing, LLC ("Ditech").[3]    Claim at 1–2.[4]    She identifies the basis of her Claim as "MONEY DID NOT APPLY TO MY ACCOUNT."  *Id.* at 2.

On September 18, 2020, the Plan Administrator and Consumer Claims Trustee filed their Sixty-Third Omnibus Objection to proofs of claim (the "Objection").[5]    In it, they object to and seek to expunge the Claim on the basis that the Claim was "determined to have no merit based on Company review."   Objection, Ex. A (List of Claims) at 3.   On June 16, 2021, the Claimant filed a response to the Objection (the "Response").[6]   On September 14, 2023, the Plan Administrator and Consumer Claims Trustee filed a reply in further support of the Objection (the "Reply").[7]

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order, and Third Amended Plan, as applicable.  References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412.

[3]    For ease and convenience, the Court will refer to both Green Tree Servicing and Ditech Financial LLC as Ditech.

[4]    In addition to the Claim, on June 3, 2019, the Claimant filed proof of claim number 23563 ("Claim 23563"), and on November 11, 2019, the Claimant filed proof of claim number 60231 ("Claim 60231").  By order dated March 18, 2020, Claim 60231 was disallowed and expunged.  *See Order Granting Twenty-Second Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims)*, ECF No. 1988 at 28.  By order dated May 15, 2020, Claim 23563 was disallowed and expunged.  *See Order Granting Thirty-Sixth Omnibus Objection to Proofs of Claim (Amended/Duplicative Consumer Creditor Claims)*, ECF No. 2366 at 6. Because the Claim and Response do not have internal page numbers, references to those documents herein are to the particular PDF page of the document.

[5]    *Sixty-Third Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims)*, ECF No. 2840.

[6]    *Letter filed by Ma Delourdes Ipina*, ECF No. 3597.

[7]    *Joint Reply of the Consumer Claims Trustee and Plan Administrator in Support of the Sixty-Third Omnibus Objection with Respect to the Claim of Ma Delourdes Ipina (Claim No. 23734)*, ECF No. 4875.

Pursuant to the Claims Procedures Order,[8] the filing of the Response caused an adjournment of the Objection so that the Court could conduct a Sufficiency Hearing on the Claim. Under that order, the legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[9]  Claims Procedures Order ¶ 3(iv)(a).

On September 28, 2023, in accordance with the Claims Procedures Order, the Court conducted a Sufficiency Hearing on the Claim.  The Consumer Claims Trustee appeared through counsel, and the Claimant appeared pro se.  The Court has reviewed the Claim, Objection, Response, and Reply, including all documents submitted in support thereof, and has considered the arguments made by the parties in support of their respective positions.

For the reasons set forth herein, the Court sustains the Objection and disallows and expunges the Claim.

## <u>Jurisdiction</u>

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[8]    *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

[9]    Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  In filing the Objection, the Consumer Claims Trustee initiated a contested matter.  *See Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs., Inc.)*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter").  Bankruptcy Rule 9014 governs contested matters.  The rule does not explicitly provide for the application of Bankruptcy Rule 7012.  However, Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply."  Fed. R. Bankr. P. 9014.  The Court does so here in the Claims Procedures Order.

## Background

### The Mortgage Loan

On December 6, 2007, the Claimant executed a promissory note (the "Note")[10] in favor of Countrywide Bank, FSB ("Countrywide"). The Note was secured by a mortgage (the "Mortgage"[11] and together with the Note the "Mortgage Loan") on the property located at 2617 Meadowridge Drive, Garland, Texas 75044 (the "Property"). On March 29, 2019, Bank of America assigned the mortgage to Ditech (the "Assignment").[12] Ditech assumed the servicing of the loan, which at the time had a principal balance of $107,271.73. Response at 8.

### The Chapter 11 Cases

On February 11, 2019, Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates (the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in the Chapter 11 Cases (the

---

[10] The Note is annexed to the Reply as Exhibit A. The Court can properly take judicial notice of matters of public record. *See Sutton ex rel. Rose v. Wachovia Sec., LLC*, 208 F. App'x 27, 30 (2d Cir. 2006) (summary order) (holding that filings and orders in other courts "are undisputably matters of public record"); *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*."); *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) ("[Courts] must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007))).

[11] The Mortgage is annexed to the Reply as Exhibit B.

[12] The Assignment is annexed to the Reply as Exhibit C.

"General Bar Date").[13]    Thereafter, the Court extended the General Bar Date for consumer

borrowers, twice, ultimately setting the date as June 3, 2019.[14]

On September 26, 2019, the Debtors confirmed their Third Amended Plan,[15] and on

September 30, 2019, that plan became effective.[16]  The Plan Administrator is a fiduciary appointed

under the Third Amended Plan who is charged with the duty of winding down, dissolving, and

liquidating the Wind Down Estates.  *See* Third Amended Plan, art. I, §§ 1.130, 1.184, 1.186.  The

Plan Administrator, on behalf of each of the Wind Down Estates, is authorized to object to all

Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany

Claims.  *See id.* art. VII, § 7.1.  The Consumer Claims Trustee is a fiduciary appointed under the

Third Amended Plan who is responsible for the reconciliation and resolution of Consumer Creditor

Claims and distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor

Recovery Cash Pool to holders of Allowed Consumer Creditor Claims in accordance with the

Third Amended Plan.  *See id.* art. I, § 1.41.  The Consumer Claims Trustee has the exclusive

authority to object to all Consumer Creditor Claims.  *See id.* art. VII, § 7.1.

**The Claims Procedures Order**

On November 19, 2019, the Court entered the Claims Procedures Order.  Under that order,

the Plan Administrator and Consumer Claims Trustee are authorized to file Omnibus Objections

seeking reduction, reclassification, or disallowance of claims on the grounds set forth in

---

[13]    *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*,
ECF No. 90.

[14]    *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*,
ECF No. 496.

[15]    *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated
Debtors*, ECF No. 1404.

[16]    *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation
and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative
Expense Claims*, ECF No. 1449.

Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order. *See* Claims Procedures Order ¶ 2(i)(a)–(h). A properly filed and served response to an objection gives rise to a "Contested Claim" that will be resolved at a Claim Hearing. *Id.* ¶ 3(iv). The Plan Administrator and/or Consumer Claims Trustee, as appropriate, has the option of scheduling the Claim Hearing as either a "Merits Hearing" or a "Sufficiency Hearing." *Id.* ¶ 3(iv)(a), (b). A "Merits Hearing" is an evidentiary hearing on the merits of a Contested Claim. A "Sufficiency Hearing" is a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. The legal standard of review that will be applied by the Court at a Sufficiency Hearing is equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

## The Claim

On June 3, 2019, the Claimant filed her claim that both listed an undetermined amount and asserted that her Claim was secured by the Property in the amount of $195,565.00, identifying the unsecured portion of the Claim at $5,434.00, which totals $200,999.40. Claim at 2. She asserts that the basis of her Claim is that "MONEY DID NOT APPLY TO MY ACCOUNT." *Id.* The Claimant provides no further explanation, nor does she allege any facts as to the nature and basis of her Claim. Annexed to her Claim, she attaches personal bank statements from January 2018 through December 2018. *Id.* at 4–42. Presumably the purpose of these statements is to demonstrate monthly payments to Ditech. The Claimant attaches a single Ditech billing statement, dated May 16, 2019, showing a past due amount of $3,747.56. *Id.* at 43. She also attaches an unsigned loan modification agreement with an effective date of June 1, 2019, reflecting an unpaid principal balance of $100,832.28 and a maturity date of June 1, 2059. *Id.* at 44. This agreement

6

calls for monthly principal and interest payments of $511.51. *Id.* Finally, the Claim includes the first page of a loss mitigation solicitation letter, dated March 11, 2019. *Id.* at 53.

## **The Objection**

On September 18, 2020, the Plan Administrator and the Consumer Claims Trustee objected to the Claim on the basis that the "claim determined to have no merit based on Company review." Objection, Ex. A (List of Claims) at 3.

## **The Response**

In the Response, the Claimant requests the refund of twenty-one mortgage payments allegedly made between April 2013 and January 2015. Response at 2. She also requests that the Court award her interest and damages for a total of $57,599.00. *Id.* at 2–3. The Claimant asserts that she made all her required payments to Ditech, but none of her payments were applied to her Mortgage Loan. *Id.* at 1. She estimates that the twenty-one uncredited payments total $23,580. *Id.* at 3. She also claims that she is owed $6,170.63 for amounts capitalized pursuant to a loan modification and owed $5,569.23 for amounts allegedly stolen by Ditech. *Id.* She also seeks $17,280 for nine years of overpaid interest. *Id.* The Claimant alleges that she was required to pay additional money for home and car insurance premiums due to Ditech's inaccurate credit reporting; however, she provides no support for that assertion. *Id.* She also contends that she incurred expenses for faxes, gas, and days off work in order to send in proof of payment to Ditech, totaling $5,000. *Id.*

Attached to the Response, the Claimant includes a Notice of Default from Bank of America showing arrearages of $2,292.36 and a payment due on March 1, 2013. *Id.* at 15. She includes multiple pages of billing statements from Bank of America from 2007, 2008, 2010 and 2012. *Id.* at 14–19. She attaches a letter, dated April 12, 2013, from Ditech showing an unpaid principal

balance of $109,806.05 as of March 31, 2013. *Id.* at 14. She attaches the second page of the Assignment, which shows a principal balance of $107,271.73, with an effective date of April 1, 2013, and first payment due on February 1, 2013. *Id.* at 8.

By letter dated June 16, 2014, from the Claimant's attorney, she denies owing arrearages of $6,628.78 and demands that Ditech cease its foreclosure activities. *Id.* at 9. She asserts in the letter that she has made all required mortgage payments since April 2013. The letter further states that Ditech returned two checks because the payments did not fully cure the delinquency. *Id.* The letter references a loan modification. *Id.* Attached to the Response are two pages of a HAMP Loan Modification Agreement, effective October 1, 2014, showing a principal balance of $113,441.78 and maturity date of January 1, 2038. *Id.* at 7. It is unclear from this agreement who the parties of the transaction are and if the agreement was ever executed. By letter dated December 23, 2014, purportedly sent from the Claimant to Ditech, the Claimant alleges that her payments have not been properly applied to her account since the Assignment and Ditech's servicing of her Mortgage Loan. She also describes confusion around a 2013 loan modification and increases in her principal balance. *Id.* at 22–23. The Claimant attaches several letters she purportedly sent to Fannie Mae with questions concerning the application of payments, amounts due, and principal balance on her billing statements. *Id.* at 25–31. Finally, the Claimant attaches a letter dated May 16, 2014, from Citibank to Ditech that purportedly included a payment history from the bank; however, the attached payment history was not included with the Response. *Id.* at 32.

**The Estimation Motion**

On March 24, 2023, the Plan Administrator and Consumer Claims Trustee filed a motion to estimate claims (the "Estimation Motion")[17] for the purposes of setting a distribution reserve, which included the Claim.  Estimation Motion, Ex. A (List of Claims) at 1.  The Estimation Motion sought to have the secured portion of the Claim reclassified as a Class 6 Consumer Creditor Claim that is not a 363(o) Consumer Creditor Claim, as defined by the Third Amended Plan and estimated in the total amount of $200,999.40.  *Id.*  The Claimant did not object to the Estimation Motion.  By an order dated May 10, 2023, the Court granted the Estimation Motion.[18]

**The Reply**

On September 14, 2023, the Plan Administrator and Consumer Claims Trustee filed their Reply in support of the Objection.  In substance, they maintain that the Claim and Response fail to meet the basic pleading requirement under Rule 8(a) of the Federal Rules of Civil Procedure ("Rule 8(a)").[19]  Reply ¶¶ 34–39.  They also assert that, reading the Claim in the light most favorable to the Claimant, the Claim purports to state claims against Ditech for fraud, conversion, theft and violations of the Fair Credit Reporting Act ("FCRA").  They assert that the Claim fails to assert facts sufficient to state a claim for relief under Rule 12(b)(6).  *Id.* ¶¶ 40–71.

### Applicable Legal Standards

Under section 502(a) of the Bankruptcy Code, a "claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."  11 U.S.C.

---

[17]    *Consumer Claims Trustee and Plan Administrator's Joint Omnibus Motion to Reclassify Certain Proofs of Claim and Consumer Claims Trustee's Motion to Estimate for Purposes of Distribution Reserves*, ECF No. 4662.

[18]    *Order Granting Consumer Claims Trustee and Plan Administrator's Joint Omnibus Motion to Reclassify Certain Proofs of Claim and Consumer Claims Trustee's Motion to Estimate for Purposes of Distribution Reserves*, ECF No. 4732.

[19]    Rule 8(a) is incorporated herein pursuant to Bankruptcy Rule 7008.

§ 502(a).  The filing of a proof of claim executed and filed in accordance with the Bankruptcy

Rules constitutes "prima facie evidence of the validity and amount of a claim."  Fed. R. Bankr.

P. 3001(f).  Section 502(b) prescribes nine categories of claims that will be disallowed, including

that "such claim is unenforceable against the debtor and property of the debtor, under any

agreement or applicable law for a reason other than because such claim is contingent or

unmatured."  11 U.S.C. § 502(b)(1).  If an objection filed pursuant to section 502(b)(1) refutes at

least one of the claim's essential allegations, the claimant has the burden to demonstrate the

validity of the claim.  *See, e.g.*, *Rozier v. Rescap Borrower Claims Tr. (In re Residential Cap.,*

*LLC)*, No. 15-cv-3248, 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors*

*Liquidation Co. (In re Motors Liquidation Co.)*, No. 11-cv-8444, 2012 WL 1886755, at *3

(S.D.N.Y. May 12, 2012).

In assessing the merits of the Objection, the Court must consider the sufficiency of the

allegations in support of the Claim in light of the pleading requirements established by Rules 8(a)

and 12(b)(6) and determine whether Claimant has stated a claim for relief.  The Plan Administrator

and Consumer Claims Trustee assert that the Court should disallow and expunge the Claim

because it does not satisfy the pleading threshold of Rule 8(a) and, in any event, does not state a

claim upon which relief can be granted as required by Rule 12(b)(6).

The function of the pleading "is to give the adverse party fair notice of the claim asserted

so as to enable him to answer and prepare for trial."  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d

Cir. 1998).  Rule 8(a) mandates that a complaint contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Accordingly, to meet that

standard, a pleading must contain "enough facts to state a claim for relief that is plausible on its

face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Rule 8(a) does not require "'detailed

factual allegations', but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

"When a complaint does not comply with the requirement that it be short and plain, the court has

the power . . . in response to a motion by the defendant . . . to dismiss the complaint." *Salahuddin*,

861 F.2d at 42.  Under Rule 8(a), a court may dismiss a complaint that lacks sufficient details.

*Samuel v. Bellevue Hosp. Ctr.*, No. 07-cv-6321, 2008 WL 3895575, at *3–4 (S.D.N.Y. Aug. 22,

2008) (dismissing claims pleaded with insufficient detail pursuant to Rule 8(a)); *Jaffe v. Cap. One

Bank*, No. 09-cv-4106, 2010 WL 691639, at *5 (S.D.N.Y. Mar. 1, 2010) (finding that the

complaint does not meet Rule 8(a) standards where it presented "unadorned, the-defendant-

unlawfully-harmed-me accusations").

Under Rule 12(b)(6), a claim may be dismissed if it "fail[s] to state a claim upon which

relief can be granted." Fed. R. Civ. P. 12(b)(6).  To satisfy Rule 12(b)(6), the claim "must create

the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l

Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).  In considering whether that standard is met

for a particular claim, the Court must assume the truth of all material facts alleged in support of

the claim and draw all reasonable inferences in the claimant's favor.  *See ATSI Commc'ns, Inc. v.

Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  However, the Court "need not accord 'legal

conclusions, deductions or opinions that are couched as factual allegations . . . a presumption of

truthfulness.'" *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 591 (S.D.N.Y. 2008) (quoting

*Cal. Pub. Empls.' Ret. Sys. v. N.Y. Stock Exch., Inc. (In re NYSE Specialists Sec. Litig.)*, 503 F.3d

89, 95 (2d Cir. 2007)).  In short, "[i]n ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the

duty of a court 'is merely to assess the legal feasibility of the [claim], not to assay the weight of

the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622

F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). Where a claimant is proceeding pro se, the Court will construe the claim liberally, although the claim must nonetheless be supported by specific and detailed factual allegations that provide a fair understanding for the basis of the claim and the legal grounds for recovery against a debtor. *Kimber v. GMAC Mortg., LLC (In re Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (citing *Iwachiw v. N.Y.C. Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005) (summary order)); *see also McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156–57 (2d Cir. 2017) (discussing the policy considerations undergirding liberal construction of pro se litigants' filings).

## Discussion

### The Claimant Fails to Adequately Plead a Claim Under Rule 8(a)

The Consumer Claims Trustee and Plan Administrator assert that the Court should expunge the Claim because neither the Claim nor the Response meets the minimal pleading standards under Rule 8(a). Reply ¶¶ 34–39. Although the Claimant refers to "fraud" and "theft" in her narrative about unapplied payments in the Response, she fails to list any specific causes of action in support of the Claim. The Claimant does not plead any elements of a cause of action or anchor the elements to any allegations of facts. Moreover, although the Claimant annexes bank statements and an unsigned loan modification to the Claim, she provides no explanation or context for their inclusion in the Claim. The Claim provides no explanatory narrative, and the Response essentially asks for a refund of twenty-one mortgage payments made between April 2013 and January 2015, with no explanation. Response at 2. The Claimant does not assert any cognizable legal claim.

"In accordance with the liberal pleading standards of Rule 8, 'a plaintiff must disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Nisselson v. Softbank*

*AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369, 384 (Bankr. S.D.N.Y. 2007) (quoting

*Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)).  The Claim and Response do not meet that

standard.  There is insufficient detail in those documents to state a claim for relief against the

Debtors.  The Claim and Response, either separately or collectively, fail to meet the pleading

requirements of Rule 8(a) because the allegations contained within are vague, confusing, and

difficult to understand.  That is grounds for disallowing and expunging the Claim.  *See Phipps v.*

*City of New York*, No. 17-cv-6603, 2019 WL 4274210, at *2 (S.D.N.Y. Sept. 10, 2019) (dismissing

a complaint under Rule 8(a) that was "convoluted, confusing, and difficult to comprehend");

*Djangmah v. Magafara*, No. 16-cv-6136, 2018 WL 4080346, at *3 (S.D.N.Y. Aug. 26, 2018)

(dismissing a complaint under Rule 8(a) that was "so confusing, ambiguous, and incomprehensible

that it does not place Defendants on fair notice of Plaintiff's claims").

## The Claimant Fails to Assert Facts Sufficient to State a Plausible Claim Under Rule 12(b)(6)

The Consumer Claims Trustee and Plan Administrator contend, and the Court agrees, that,

at best, the Claim purports to state claims against Ditech for fraud, conversion, theft and violations

of FCRA.  The Court agrees that the Claimant has failed to state a claim for relief under any of

those actions.

## Fraud

The Claimant raises the issue of fraud in her Response and generally bases her Claim on

Ditech's "refusing to apply [her] payments correctly to her loan."  Response at 1.  Rule 9(b) of the

Federal Rules of Civil Procedure,[20] requires that "[i]n alleging fraud or mistake, a party must state

with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  That rule

applies when the claim sounds in fraud.  *Rombach v. Chang*, 355 F.3d 164, 167 (2d Cir. 2004);

---

[20]    Rule 9 is incorporated herein pursuant to Bankruptcy Rule 7009.

*see also MCR Oil Tools, LLC v. Wireline Well Servs. Tunis.*, No. 19-cv-2536, 2022 WL 875978, at *4 (N.D. Tex. Mar. 24, 2022) (noting that Rule 9(b) applies to "a state-law fraudulent inducement claim"). Rule 9(b) applies to state law claims, such as fraud, brought in a federal court. *See Fisher v. APP Pharms., LLC*, No. 08-cv-11047, 2011 WL 13266819, at *6 n.8 (S.D.N.Y. Feb 28, 2011). Pleading fraud with particularity includes alleging facts sufficient to support "the who, what, when, where, and how: the first paragraph of any newspaper story." *Silvester v. Selene Fin., LP*, No. 18-cv-02425, 2021 WL 861080, at *2 (S.D.N.Y. Mar. 8, 2021) (quoting *Backus v. U3 Advisors, Inc.*, No. 16-cv-8990, 2017 WL 3600430, at *9 (S.D.N.Y. Aug. 18, 2017)). The Claimant has not pleaded her fraud claims with any particularity and has not met the heightened pleading standards under Rule 9(b). *MCR Oil Tools, LLC*, 2022 WL 875978, at *4 (citing *Hoffman v. L&M Arts*, 838 F.3d 568, 576 (5th Cir. 2016)). She has failed to meet the heightened pleading standards for a fraudulent inducement claim.

Under Texas law, there are multiple types of fraud that can be recognized in connection with real property, including common-law fraud, fraudulent inducement, and statutory fraud. Below, the Court considers each category of fraud.

### ***Common-Law Fraud***

Under Texas law, the elements for common-law fraud include the following: "(1) a material misrepresentation; (2) which was false; (3) which was either known to be false when made or was asserted without knowledge of its truth; (4) which was intended to be acted upon by the other party; (5) which the other party relied upon; and (6) which caused injury to the other party." *Baxsto, LLC v. Roxo Energy Co., LLC*, 668 S.W.3d 912, 927–28 (Tx. App. 2023) (citing *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015)). The Claimant does not plead any of these elements.

Claimant makes a number of arguments in support of her fraud claim. She contends that changes in the principal balance of the Mortgage Loan over an eight-year period show that the Debtors failed to properly apply mortgage payments.[21]  However, absent proof of payment, it is not possible to track the significance of the changes in the principal amount of the loan.  That does not support a fraud claim.  Claimant also points to the fact that by January 1, 2015, the principal balance of the Mortgage Loan had risen to $113,003.57. Response at 2.[22]  However, in the Response, the Claimant acknowledges that in September 2014, the loan was modified, and that effective September 1, 2014, Claimant's new principal balance was $113,441.78. *Id.* at 7, 23. Thus, that does not add to Claimant's fraud claim.[23]

Neither does Claimant's contention that, according to the amortization schedule, the balance on her loan as of June 13, 2021, should have been $93,321.97. Response at 2.[24] That is because an amortization schedule is a payment schedule that assumes all payments are made timely and in full throughout the life of the loan.  The record shows that the Claimant failed to do so. Moreover, that schedule does not account for the loan modification in 2014, which capitalized arrears and modified the interest rate, and, as such, necessarily would reset the amortization schedule. The fact that her loan fell out of step with the original amortization schedule does not show that payments were misapplied and is insufficient to support a claim for fraud.

---

[21]    For example, she claims that (i) on April 17, 2012, her principal balance was $108,731, Response at 2; (ii) on April 1, 2013, her mortgage servicing transferred from Bank of America to Green Tree with a principal balance of $107,271.73, *id*. at 2, 8.; and (iii) by April 12, 2013, according to a validation of debt letter from Green Tree, the principal balance was $109,806.05; *id*. at 14.

[22]    This balance is confirmed by a periodic billing statement dated December 11, 2014.  Response at 5.

[23]    Claimant's confusion about the increased principal balance following the loan modification reflects a fundamental misunderstanding of the loan modification process, but it does not support a claim for fraud.

[24]    In support of this proposition, she attaches an amortization schedule prepared by Countrywide on December 7, 2007. Response at 17.

Claimant provides bank statements showing outgoing monthly payments to Green Tree from January 2018 through December 2018. Claim at 4–42. The statements confirm that Claimant made twelve payments during that time period, but that most of them were untimely.[25] It is not clear from the Claimants' documents whether the monthly payment of $1,176.58 that Claimant made throughout 2018 was the full required monthly payment or whether it included a late fee.[26] However, it is clear from the records that only three of the twelve payments she made in 2018 were on time. Three payments (March 7, 2018, August 3, 2018, and September 4, 2018) were made more than a month late. The remaining six payments were made outside of the fifteen-day late-fee window. Thus, the statements alone do not support Claimant's fraud claim. Finally, Claimant insists that Green Tree alone was responsible for failing to properly apply payments from the first month they began servicing the loan, in April 2013. Response at 1.

However, a Bank of America billing statement dated February 27, 2013, shows the loan was already in default before Green Tree began servicing it, with arrearages of $2,310.63, late fees and charges of $110.61, and a negative escrow balance of $890.96. *Id.* at 15.

To summarize, in the Claim, the Claimant demands a refund for twenty-one mortgage payments made between April 2013 to January 2015. However, she provides no explanation as to

---

[25] Pursuant to the terms of the Note, payments were due on the first of each month. *See* Note, Ex. A. Late fees of 5% of the overdue payment of principal and interest were due on payments received fifteen calendar days after the due date. *Id.* The 2014 loan modification required payments be made on the first of each month. Response at 7. The Mortgage provides as follows with respect to late payments:

> If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.

Mortgage ¶ 2.

[26] Also, it is not evident whether Claimant's payments were already delinquent as of January 1, 2018.

why she is entitled to have those debts forgiven. Claimant does not allege facts demonstrating that Ditech knowingly made material misrepresentations that were false with the intention to induce her to rely on such representations to her detriment. In short, Claimant does not state a claim for common-law fraud under Texas law.

### *Fraudulent Inducement*

In Texas, fraudulent inducement is a "particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 582 (N.D. Tex. 2013) (quoting *Bohnsack v. Varco, LP*, 668 F.3d 262, 277 (5th Cir. 2012)). "A fraudulent inducement claim can also be based on the failure to disclose a material fact." *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 198 (5th Cir. 2016) (citing *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986)).

The Claimant and Ditech were bound by the terms of the Mortgage Loan, and therefore, in theory the Claimant could assert a claim for fraudulent inducement. However, "[t]he elements of fraudulent inducement are the same as the elements for fraud, 'plus the added element that the fraud related to an agreement between the parties.'" *Id.* (quoting *In re VNA, Inc.*, 403 S.W.3d 483, 487 (Tex. App. 2013)). The Claimant has failed to allege facts stating a claim for common-law fraud under Texas law. It follows that she has not stated a claim for fraudulent inducement.

### *Statutory Fraud*

Under Texas law, to state a claim for statutory fraud, the claimant must allege facts demonstrating the following elements:

> (1) the transaction involves real estate or stock; (2) the defendant made a false representation of a past or existing material fact or made a promise to do an act with the intention of not fulfilling it; (3) the defendant made the false representation or promise for the purpose of inducing the claimant to enter into a contract; and (4) the plaintiff relied on the false representation or promise in entering into the contract.

*Nelson v. McCall Motors, Inc.*, 630 S.W.3d 141, 147 (Tex. App. 2020) (citing Tex. Bus. & Com. Code Ann. § 27.01(a) (West 2015)).  Texas courts have declined to find statutory fraud in the context of a mortgage contract.  *See, e.g.*, *Powell v. BAC Home Loans Servicing, LP*, No. 11-cv-80, 2011 WL 5837250, at *7 (E.D. Tex. Nov. 21, 2011) ("Section 27.01 does not apply to a party who merely loaned money for the purchase of real estate."); *Wheeler v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 13-cv-364, 2013 WL 3965304, at *6 (S.D. Tex. Aug. 1, 2013) ("Statutory fraud cannot arise from a transaction between mortgagor and a mortgage servicer because it does not involve the sale or transfer of real estate."); *Marketic v. U.S. Bank Nat'l Ass'n*, 436 F. Supp. 2d 842, 856 (N.D. Tex. 2006) ("It is well established that a cause of action for statutory fraud does not arise from a transaction between a mortgagor and a mortgagee because such a transaction does not involve the sale or transfer of real estate from one party to another.").  Even if the Claimant could plead the elements of statutory fraud, the claim would fail because her claim does not involve a contract for the sale of real estate or stock.

### Conversion

The Claimant alleges that "I made all my payments to Green Tree LLC and Ditech, this [sic] two companies theft [sic] my money.  They are responsible for all the theft and have to refund my money as soon as possible."  Response at 1.  The Court construes this assertion as a claim for conversion.  "Under Texas law, conversion is defined as the wrongful exercise of dominion and control over another's property, in denial of or inconsistent with his rights."  *Roubinek v. Select Portfolio Servicing Inc.*, No. 11-cv-3481, 2012 WL 2358560, at *5 (N.D. Tex. June 21, 2012) (citing *Bandy v. First State Bank*, 835 S.W.2d 609, 622 (Tex. 1992)).

Pursuant to the Note and Mortgage, the Claimant was obligated to make payments on her loan.  Ditech, as the servicer of the Mortgage Loan, had the right to receive those payments.  The

Claimant does not allege facts demonstrating that Ditech unlawfully exercised dominion and control over funds that she paid on account of her Mortgage Loan. She provides documentation of payments that she made in 2018 but no information to suggest that those payments were not properly credited. She requests the reimbursement of twenty-one payments made, but again, does not provide any evidence that those payments were not properly credited to her account. Also, she acknowledges that the loan was modified in 2014 and that arrears were capitalized. Response at 3, 23. She provides a default letter, dated March 2019, Claim at 53, and subsequent loan modification offer dated June 1, 2019, *id.* at 45. The documents that she provides do not support a claim for conversion.

"Where money is involved, it is subject to conversion only when it can be described or identified as specific chattel, but not where an indebtedness may be discharged by the payment of money generally." *Mitchell Energy Corp. v. Samson Res. Co.*, 80 F.3d 976, 984 (5th Cir. 1996) (quoting *Crenshaw v. Swenson*, 611 S.W.2d 886, 891 (Tex. App. 1980)). Courts have rejected conversion claims against mortgage servicers by borrowers. *See, e.g.*, *Felchak v. JP Morgan Chase Bank, N.A.*, No. 12-2847, 2013 WL 1966972, at *4 (S.D. Tex. May 10, 2013); *Calle Monsalve v. CMG Fin.*, No. 21-cv-00058, 2021 WL 2444168, at *7–8 (W.D. Tex. June 15, 2021).

Application of the economic loss doctrine also bars any claim for conversion. "A claim in tort will not lie when the only injury alleged is for economic damages that are caused by the failure to perform a contract." *Dixon v. Wells Fargo Bank, N.A.*, No. 14-cv-1977, 2014 WL 6769107, at *3 (N.D. Tex. Dec. 1, 2014) (denying plaintiff-borrower's conversion claim for cure payments on delinquent mortgage under economic loss rule as a veiled breach of contract claim). The Claimant seeks recoupment of Mortgage payments made pursuant to the underlying Mortgage Loan. Courts have found that a plaintiff's conversion claim for failure to apply mortgage payments

is barred by the economic loss doctrine because the loss suffered was the loss of the mortgage payments themselves. *Roubinek*, 2012 WL 2358560, at *5 ("The only loss he appears to assert in support of this claim is the loss of the mortgage payments themselves. This is precisely the type of economic loss that Texas courts have found is not recoverable in tort."). All the alleged damages the Claimant seeks flow directly from the Mortgage Loan. The Court finds that she is barred from asserting a conversion claim pursuant to the economic loss doctrine.

The Claimant has not stated a claim for conversion under Texas state law.

**Theft**

The Texas Theft Liability Act ("TTLA") governs civil liability for actions for theft in Texas. Tex. Civ. Prac. & Rem. Code Ann. §§ 134.001–134.005 (West 2023). Section 134.002(2) defines theft as "unlawfully appropriating property or unlawfully obtaining services" as described by the Texas Penal Code. *Id.* § 134.002(2). Appropriation of property is considered unlawful if it is done "without the owner's effective consent." Tex. Penal Code § 31.03(b)(1) (West 2023). The Claimant has not demonstrated that Ditech unlawfully appropriated any of her property. There was no foreclosure on the Claimant's Property. The Claimant has not demonstrated that Ditech failed to credit her monthly payments. The Mortgage Loan permits Ditech to accept her monthly payments, which she willingly remits, to reduce her outstanding debt. The Claimant cannot show that the Debtors unlawfully appropriated her payments without her consent, and thus she fails to state a claim under the TTLA.

**Violations of the FCRA**

FCRA governs the accuracy of credit reporting information on consumers. 15 U.S.C. § 1681. Information furnishers, such as a mortgage servicer, must refrain from knowingly reporting inaccurate information and must correct any information that they later discover to be

inaccurate. *Id.* § 1681s-2(a)(1)–(2). FCRA provides a process whereby a consumer has the right to dispute any information reported to a credit reporting agency. *Id.* § 1681g(c)(1)(B)(iii).[27] However, section 1681-2(d) limits the enforcement of section 1681s-2(a) exclusively to federal agencies and officials and select state officials. *Id.* § 1681s-2(d); *see also Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) (FCRA "plainly restricts enforcement of [§ 1681-2(a)] to federal and state authorities").

The only provision of FCRA that is actionable against a furnisher of information, like Ditech, becomes relevant only when the furnisher fails to conduct a reasonable investigation in response to a consumer dispute communicated to it by a credit reporting agency. 15 U.S.C. § 1681s-2(b). By itself, a dispute communicated from a consumer to a furnisher directly does not trigger the duty under section 1681s-2(b). *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010) ("Although a consumer may dispute credit information directly to a furnisher . . . the consumer has no private right of action if the furnisher does not reasonably investigate the consumer's claim after direct notification."). The Claimant complains that her credit was damaged due to information reported to the credit reporting agencies. Response at 2–3. The evidence however shows that she was delinquent on her payments. More importantly, the Claimant does not assert that she disputed the information furnished by Ditech to the credit reporting agencies or that Ditech failed to investigate or correct any errors based on such a report.

The Claimant fails to state a claim for a violation of the FCRA.

---

[27] In appropriate circumstances, a consumer may bring a civil cause of action against any person who willfully or negligently fails to comply with any requirement imposed under FCRA and, as appropriate, recover actual and statutory damages, punitive damages, costs, and attorney's fees. *See* 15 U.S.C. § 1681n (civil liability for willful noncompliance); § 1681(o) (civil liability for negligent noncompliance).

## **<u>Conclusion</u>**

Based on the foregoing, the Court sustains the Objection and disallows and expunges the

Claim.

IT IS SO ORDERED.


Dated: New York, New York
       September 29, 2023


/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge