**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x

In re:

Ditech Holding Corporation, *et al.*,

Debtors.[1]

-------------------------------------------------------- x

Case No. 19-10412 (JLG)

Chapter 11

(Jointly Administered)

## MEMORANDUM DECISION AND ORDER OVERRULING THE CONSUMER CLAIMS TRUSTEE'S FORTY-SIXTH OMNIBUS OBJECTION WITH RESPECT TO THE PROOF OF CLAIM FILED BY WARREN W. PRATT AND MONA G. PRATT

<u>A P P E A R A N C E S</u>:

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10022
<u>By:</u>    Richard Levin

THE LAW OFFICES OF ROBERT M. FOX
*Attorneys for the Claimants*
630 Third Avenue
New York, New York 10017
<u>By:</u>    Robert M Fox

THE LAW OFFICE OF HENRY MCLAUGHLIN, PC
*Attorneys for the Claimants*
707 E. Main Street, Suite 1050
Richmond, Virginia 23219
<u>By:</u>    Henry W. McLaughlin

---

[1]    On September 26, 2019, the Court confirmed the Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates.  On February 22, 2022, the Court entered the Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief (ECF No. 3903) (the "Closing Order").  Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837).  Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate") (Case No. 19-10412 (JLG) remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction[2]

On April 1, 2019, Warren W. Pratt ("Warren") and his wife, Mona G. Pratt ("Mona," and together with Warren, the "Claimants"), filed proof of claim number 20374 (the "Claim")[3] asserting an unliquidated unsecured claim in the amount of $750,000 against Ditech Holding Corporation.  Claim at 1–2.  The Claimants assert that the basis of the Claim is "fraud."  *Id.* at 5. The Claim is predicated on allegations by the Claimants in support of Count II in their Complaint filed against Ditech in the State Court Action pending in Virginia as of the Petition Date.

On June 18, 2021, the Consumer Claims Trustee filed her Forty-Sixth Omnibus Objection to Proofs of Claim (the "Objection").[4]  In it, she objects to and seeks to disallow and expunge the Claim.  On March 23, 2023, the Consumer Claims Trustee filed a motion to estimate certain claims (the "Estimation Motion"),[5] including the Claim, which she estimates at zero.  Estimation Motion, Ex. A (List of Claims) at 3.  On April 13, 2023, the Claimants filed a response to the Estimation Motion (the "Estimation Response").[6]  On July 14, 2023, the Claimants filed a response to the

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.  References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412.

[3]    On March 29, 2019, the Claimants filed proof of claim number 821.  On April 7, 2021, the court disallowed and expunged that claim as a duplicative claim.  *See Order Granting Consumer Claims Trustee's Thirty-Seventh Omnibus Objection to Proofs of Claim (Duplicate or Amended Unsecured Consumer Creditor Claims)*, ECF No. 3312.

[4]    *Consumer Claims Trustee's Forty-Sixth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims)*, ECF No. 3461.

[5]    *Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4650.

[6]    *Response and Objection to Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4695.

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

Objection (the "Response").[7]  On August 18, 2023, the Consumer Claims Trustee filed a reply in further support of the Objection(the "Reply").[8]

Pursuant to the Claims Procedures Order,[9] the filing of the Response caused an adjournment of the Objection to the Claim so that the Court could conduct a Sufficiency Hearing on the Claim.  Under that order, the legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[10]  Claims Procedures Order ¶ 3(iv)(a).   In accordance with the Claims Procedures Order, the Court conducted a Sufficiency Hearing on the Claim.  The Consumer Claims Trustee and the Claimants appeared through their respective counsel.

The Court has reviewed the Claim, Objection, Response, and Reply, including all documents submitted in support thereof, and has considered the arguments made by the parties during the Sufficiency Hearing.  For the reasons set forth herein, the Court finds that the Claim states a claim for Actual Fraud under Virginia law.   Accordingly, the Court overrules the Objection.  The Court will consider the trustee's challenge to the compensatory and punitive damages that the Claimants are seeking in the Claim in conjunction with the hearing on the

---

[7]    *Response by Warren W. Pratt and Mona G. Pratt Opposing Objection Seeking to Disallow the Pratts' Claim (Claim No. 20374)*, ECF No. 3519.  The Claim and the Response do not have internal page numbers.  Citations to those documents are to the PDF page numbers.  The Response amends and supersedes a response filed by the Claimants on July 13, 2023.  *See Response by Warren W. Pratt and Mona G. Pratt Opposing Objection Seeking to Disallow the Pratts' Claim (Claim No. 20374)*, ECF No. 3511.

[8]    *Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee's Twenty-Fifth Omnibus Objection to the Claims of Warren W. Pratt and Mona G. Pratt (20374) and the Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim Solely as to Claim No. 20374*, ECF No. 4846.

[9]    *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

[10]    Rule 12(b)(6) is made applicable herein pursuant to Bankruptcy Rule 7012.

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

Estimation Motion.  The Court directs counsel to the Claimants and to the Consumer Claims

Trustee to contact Chambers to schedule the hearing on that motion.

## Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States

District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska,

C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

### The Mortgage Loan

On August 20, 2003, the Claimants executed a promissory note (the "Note")[11] in favor of

New South Federal Savings Bank ("New South") in the amount of $188,000.  The Note was

secured by a deed of trust (the "Deed of Trust," and together with the Note, the "Mortgage Loan")

on the real property, located at 3510 Cold Harbor Road, Mechanicsville, Virginia 23111 (the

"Property"), which appointed Jacob A. Lutz III as trustee for the benefit of Mortgage Electronic

Registration Systems, Inc ("MERS") as the nominee for New South.  The Mortgage Loan was

modified on January 26, 2010.  Reply ¶ 1.  On March 2, 2015, MERS assigned the Mortgage Loan

---

[11]    In resolving the Objection, the Court "may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011).  Moreover, because the Claim is based on the Count II of the Complaint, the Court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)); *see also Leon v. Shmukler*, 992 F. Supp. 2d 179, 184 n.1 (E.D.N.Y. 2014) ("It is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records.").  The Note, Deed of Trust, Assignment, and Notice of Default referenced herein are incorporated in the Complaint and filed in the State Court.  The Note, Deed of Trust, and Assignment are annexed to the Reply as Exhibits A, B, and C, respectively.  The Notice of Default is annexed as Exhibit B to the Complaint.  The Court takes judicial notice of those documents.

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

to Green Tree Servicing, LLC, which is now Ditech Financial, LLC.[12]  Complaint ¶ 7; *see also*

Reply, Ex. C (Assignment).

On August 20, 2014, Ditech sent a notice of default (the "Notice of Default") to the

Claimants stating that they had thirty days to cure the default by sending a total amount of

$3,636.19.  Complaint, Ex. B (Notice of Default).  Ditech advised the Claimants that if they did

not cure the default in a timely manner, it might accelerate the Note and foreclose on the Property

pursuant to the Deed of Trust.  *Id.*  The Claimants did not cure the default.  On August 4, 2015,

the Trustee sold the Property at a foreclosure sale.  Complaint ¶ 20.

**The State Court Action**

On or about August 3, 2017, the Claimants sued Ditech and others in the Circuit Court for

Hanover County Virginia (the "State Court" and the "State Court Action"), seeking compensatory

and punitive damages aggregating $750,000.  In the underlying complaint (the "Complaint"),[13] the

Claimants purport to assert causes of action against Ditech for (i) Breach of Contract (Count I), *id.*

¶¶ 10–28; (ii) Actual Fraud (Count II), *id.* ¶¶ 29–47; and (iii) Breach of Implied Covenant of Good

Faith and Fair Dealing (Count III), *id.* ¶¶ 48–55.

On September 11, 2017, Ditech filed a demurrer to the Complaint ("Ditech's Demurrer"),

pursuant to Rule 3.8 of the Rules of the Supreme Court of Virginia, asserting that the Claimants

failed to set forth sufficient allegations to state a claim against Ditech or to establish causation or

a nexus between the alleged wrong and the harm suffered.  Response at 56.[14]  By order dated

---

[12]    For ease and convenience, the Court will refer to both Green Tree Servicing and Ditech Financial LLC as "Ditech."

[13]    The Complaint includes exhibits A–D.  It is annexed to the Claim at 9–45.  When citing to the Claim, the Court cites to the relevant PDF page numbers.  When citing to the Complaint, the Court will refer to the relevant paragraphs and exhibits of the Complaint, as necessary.

[14]    The Demurrer, including exhibits, is annexed to the Response at 313–33.

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

August 9, 2018, the State Court sustained Ditech's Demurrer with respect to Claimants' Breach of

Contract and Breach of Implied Covenant of Good Faith and Fair Dealing claims and dismissed

Counts I and III with prejudice.  It overruled the demurrer to Count II, the Actual Fraud Claim.

*Id.* at 191.[15]

On August 30, 2018, Ditech filed an answer and affirmative defenses to the Complaint.  *Id.*

at 198–204.  On March 30, 2020, the Claimants moved for a voluntary non-suit due to these

Chapter 11 Cases.  *Id.* at 207–212.  The State Court has not entered a non-suit order.  *Id.* at 3.  The

Actual Fraud Claim did not proceed to the merits in the State Court Action.

**The Chapter 11 Cases**

On February 11, 2019, (the "Petition Date") Ditech Holding Corporation (f/k/a Walter

Investment Management Corp.) and certain of its affiliates, including Ditech (collectively, the

"Debtors"), filed petitions for relief under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code") in this Court (the "Chapter 11 Cases").  The Debtors remained in possession

of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for

each person or entity, not including governmental units (as defined in section 101(27) of the

---

[15]   The order states as follows:

> On this day came the parties upon Defendant Ditech Financial, LLC's ("Ditech") Demurrer to Plaintiffs' Complaint.  Upon review of the parties' written submissions and the arguments presented at the hearing, for the reasons stated from the bench it is hereby

> **ORDERED** that Ditech's Demurrer is sustained in part and denied in part.  Ditech's Demurrer with respect to Counts I (Breach of Contract) and III (Breach of Implied Covenant of Good Faith and Fair Dealing) is sustained and Counts I and III shall be dismissed with prejudice.  Ditech's Demurrer to Count II (Actual Fraud) is denied.

Response at 191.

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

Bankruptcy Code), to file a proof of claim in these Chapter 11 Cases (the "General Bar Date").[16]

Thereafter, the Court extended the General Bar Date for consumer borrowers, twice, ultimately

setting their bar date as June 3, 2019.[17]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, and on

September 30, 2019, that plan became effective.[18]  Under the Third Amended Plan, "[a]ny claim

asserted by a Borrower against the Debtors" is a Consumer Creditor Claim.  Third Amended Plan,

art. I, § 1.36.  Section 4.6 of the plan provides a fund, the "Consumer Creditor Net Proceeds," to

be distributed pro rata among holders of Allowed Consumer Creditor Claims, except that holders

of Allowed 363(o) Claims must be satisfied in full before any distributions to holders of other

Consumer Creditor Claims.  *Id.* art. IV, § 4.6.  The Consumer Claims Trustee is a fiduciary

appointed under the plan who is responsible for the reconciliation and resolution of Consumer

Creditor Claims and distribution of the Consumer Creditor Net Proceeds  from the Consumer

Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims in accordance with

the Third Amended Plan.  *See id.* art. I, § 1.41.  The Consumer Claims Trustee has the exclusive

authority to object to all Consumer Creditor Claims.  *See id.* art. VII, § 7.1.  Moreover, the trustee

is authorized to estimate  contingent, unliquidated or Disputed Consumer Creditor Claims pursuant

to section 502(c) of the Bankruptcy Code or otherwise, including to establish a reserve for

distribution purposes.  *See id*. § 7.6.

---

[16]   *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*,
ECF No. 90.

[17]   *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*,
ECF No. 496.

[18]   *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation
and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative
Expense Claims*, ECF No. 1449.

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

## The Claims Procedures Order

On November 19, 2019, the Court entered the Claims Procedures Order.  Under that order, the Consumer Claims Trustee is authorized to file Omnibus Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order.  *See* Claims Procedures Order ¶ 2(i)(a)–(h).  A properly filed and served response to an objection gives rise to a "Contested Claim" that will be resolved at a Claim Hearing.  *Id.* ¶ 3(iv).  The Consumer Claims Trustee has the option of scheduling the Claim Hearing as either a "Merits Hearing" or a "Sufficiency Hearing."  *Id.* ¶ 3(iv)(a), (b).  A "Merits Hearing" is an evidentiary hearing on the merits of a Contested Claim.  A "Sufficiency Hearing" is a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors.  The legal standard of review that will be applied by the Court at a Sufficiency Hearing is equivalent to the standard applied by the Court on a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  *Id.* ¶ 3(iv)(a).

## The Claim

In the Claim, the Claimants purport to assert an unliquidated unsecured claim against Ditech in the sum of $750,000.  Claim at 1–2.  They seek damages based on Ditech's alleged fraud in servicing the Mortgage Loan, and as support for the Claim, the Claimants rely on and annex the Complaint.

In support of the Claim, the Claimants say that at some unspecified time, Ditech sent them a notice advising that they needed to make a payment of approximately $10,000 to bring the Mortgage Loan current.  Complaint ¶ 30.  They maintain that Warren sent a check in that amount to Ditech, but that Ditech sent it back because the amount to bring the loan current had increased to approximately $12,000.  *Id.*  Ditech sent the Claimants a billing statement showing that the

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

amount due under the Mortgage Loan was $12,205.11.  The Claimants contend that Warren sent

Ditech a personal check in that amount (the "Check"), to bring the mortgage current.  *Id.* ¶¶ 31–

32.  They assert that Ditech received the Check and that if Ditech had accepted it they would have

brought the loan current.  They allege that, in returning the Check, Ditech justified its actions "on

the grounds that [it] had sent notice to the Pratts" that it would accept only spendable funds because

previous payments from the Claimants had been returned for insufficient funds.  *Id.* ¶ 32. They

contend that they did not have actual notice that Ditech returned the Check until after August 4,

2015.  *Id.*

On August 3, 2015, a Ditech representative who identified himself as "Matt" (hereinafter,

the "Ditech Representative") called the Claimants' home and spoke to Warren.  *Id.* ¶ 33.  The

Claimants say that, at that time, the home had been advertised for foreclosure, but that neither of

the Pratts was aware of that fact, and Warren had sent enough funds to bring the loan current but

was not aware that Ditech would return the Check to him.  They say that in his conversation with

the Ditech Representative, Warren "asked what he could do to save his home" and the

representative "told Warren that he could possibly be approved for a loan modification," *id.* ¶ 36,

and promised "to send the Pratts paperwork to fill out to apply for a loan modification," *id.*¶ 35.

They say that Warren "asked [the Ditech Representative] if foreclosure would be prevented by his

applying for a loan modification" and that the representative "assured Warren that 'you have about

two weeks.'"  *Id.* ¶¶ 36–37.

The Claimants maintain that the statement that "you have about two weeks" assured

Warren that "if he wished to proceed to seek a loan modification as proposed by [the Ditech

Representative] he was safe from foreclosure and had about two weeks to make his application."

*Id*. ¶ 37.  They assert that the "assurance" by the Ditech Representative was "intentionally false"

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

because he "knew that the foreclosure would not be stayed the next day to allow the Pratts to file

an application for a loan modification." *Id.* ¶ 38.   The Claimants contend that the Ditech

Representative's "intentional false assurance" was "part of Ditech's pattern and practice of

encouraging borrowers to believe they were safe from foreclosure to prevent them from taking

action to stop foreclosure." *Id.* ¶ 39.   They say that Ditech "knows that most foreclosures are

stopped, usually through bankruptcies, resulting in a greater cost to lenders in such cases, so that

[Ditech], as a pattern and practice sought to encourage borrowers to refrain from stopping

foreclosure by verbal assurances in the belief such assurances would be hard to prove and that

[Ditech] and its lenders would profit from the avoidance of the additional costs involved when

foreclosures are stopped, usually through bankruptcies." *Id.*

The Claimants maintain that Warren believed the Ditech Representative's alleged false

assurances to be true and that he reasonably relied upon them because "he knew he had tendered

a significant amount of money that could normally be an indication to a lender of his good faith in

seeking to avoid foreclosure by some reasonable means." *Id.* ¶ 40.   They also assert that if Warren

had not believed the alleged false assurances and relied on them, and if the Ditech Representative

had, instead, told him truthfully that a foreclosure sale was scheduled the next day, Warren would

have retained a lawyer who would have stopped the foreclosure sale, including via bankruptcy if

necessary. *Id.* ¶ 41.   They maintain that Warren told Mona about the assurances he had allegedly

received from the Ditech Representative, that she also reasonably believed them to be true, and

that, absent such a belief, she would have supported Warren and joined him in retaining legal

counsel to stop the foreclosure sale. *Id.* ¶ 42.

The Claimants contend that on August 4, 2015, in furtherance of the alleged fraud, Ditech,

through its agent, conducted the foreclosure sale. *Id.* ¶ 43.   They say that as a proximate result of

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

the alleged fraud, they sustained, and will continue to sustain, damages.  *Id.* ¶ 44.  They assert that,

based on the facts set forth in the Complaint, they are entitled to entry of a judgment in their favor

against Ditech for compensatory damages, including for emotional distress and punitive damages,

and for an order requiring Ditech to pay the reasonable attorney's fees of their legal counsel for

preparing, filing, and maintaining Count II of the Complaint.  *Id.* ¶¶ 45–47.

## The Estimation Motion

In the Estimation Moton, the Consumer Claims Trustee seeks to estimate the Claim at zero.

Estimation Motion, Ex. A (List of Claims) at 3.  The Estimation Response separates the Claim into

component parts consisting of $350,000 for punitive damages and $400,000 in compensatory

damages.  The latter includes $37,800 in additional shelter costs and $26,000 in lost tax deductions;

the balance is for lost equity in the Property.  Estimation Response at 2–4.

## The Claim Objection

In her Objection, the Consumer Claims Trustee seeks to disallow and expunge the Claim.

She asserts that the "Claim [is] precluded by dismissal in prior court action.  To the extent not

precluded, Claimants fail to state a claim upon which relief may be granted."  Objection, Ex. A

(List of Claims) at 3.

## The Response

In the Response, the Claimants argue that the Court should overrule the Objection.  First,

they assert that the Claim is"[not] precluded by the dismissal in a prior court action," because the

State Court Action is still pending, and Count II was not dismissed from the Complaint.  Response

at 1.  They are correct.[19]  Second, they contend that, contrary to the Consumer Claims Trustee's

---

[19]    On March 9, 2020, Ditech filed a pleading titled "Ditech Financial LLC's Notice of Bankruptcy Status" in the
State Court Action.  Response 2.  In response to that notice, on March 30, 2020, the Pratts filed a "Notice of Non-
Suit" in the State Court Action.  *Id.* at 2–3.  There is no dispute that under Virginia law, a plaintiff has the right to file
a non-suit motion once, and upon the entry of an order granting such motion, any pending claim in the case non-suited
is dismissed without prejudice.  *Id.* at 3 (citing Va. Code Ann. Section 8.01-3.80; Va Code Ann. Section 8.01-

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

assertions, the Claim adequately pleads a claim for Actual Fraud under Virginia law. To that end, they note that under Virginia law, in overruling Ditech's demurrer to their fraud claim, the State Court necessarily held that, as pleaded, the claim (Count II) sets forth grounds upon which monetary damages could be awarded. Response at 4.[20] They argue that the State Court correctly resolved that issue and that the Court should follow suit and overrule the Objection. *Id.* Finally, the Claimants annex the Complaint to the Response,[21] and they argue that they have stated a claim for Actual Fraud under Virginia law because they pleaded facts demonstrating that:

> after they sent a personal check sufficient to bring the loan current, which the lender returned, at a time when they didn't know their payment had been returned, a representative of Ditech, the day before the disputed foreclosure of their home, made an intentional false statement that they had about two weeks to prevent foreclosure, which prevented them [from] taking action; which they could have taken to prevent the loss of their home, and such intentional fraud caused them

---

229(E)(3); *Berryman v. Moody*, 132 S.E. 2d 900 (1964)). As discussed above, the Claimants' fraud claim is pending in the State Court Action. The State Court has not entered a non-suit order; the State Court Action is pending in the State Court. If a non-suit order is entered, it will be without prejudice to the Claimants' right to assert the fraud claim.
[20]   Under Virginia law, "[t]he purpose of a demurrer is to determine whether a motion for judgment states a cause of action upon which the requested relief may be granted." *Tronfeld v. Nationwide Mut. Ins. Co.*, 636 S.E.2d 447, 449 (2006). In considering the merits of a demurrer, the "sole question" for the court "is whether the facts pled, implied, and fairly and justly inferred are legally sufficient to state a cause of action against the defendant." *Thompson v. Skate Am., Inc.*, 540 S.E. 2d 123, 126 (Va. 2001); *see also Fun v. VMI*, 427 S.E.2d 181, 183 (Va. 1993) (noting that in considering a demurrer, the court does not "evaluate and decide the merits of a claim; [a demurrer] only tests the sufficiency of factual allegations to determine whether the motion for judgment states a cause of action."). As such, a demurrer is equivalent to a Rule 12(b)(6) motion to dismiss under federal law. *Law v. PHC-Martinsville, Inc.*, 89 Va. Cir. 231, 231 n.2 (Va. Cir. Ct. 2014); *see also Morgan v. Wal-Mart Stores E, LP*, No. 10-669, 2010 WL 4394096, at *2 (E.D. Va. Nov. 1, 2010) (treating a demurrer as a motion to dismiss for failure to state a claim after removal).

In Virginia, "the authorities are uniform to the effect that a demurrer goes to the heart of the case and, if sustained, it is a decision on the merits." *Rivers v. Norfolk, Baltimore & Carolina Line, Inc.*, 210 F. Supp. 283, 287 (E.D. Va. 1962); *see also Astrop v. Eckerd Corp.*, No. 09cv681, 2010 WL 1779992, at *3, (E.D. Va. Apr. 29, 2010) (noting that, in Virginia, "an order granting a demurrer is a decision on the merits of the case and is entitled to preclusive effect"). The Claimants acknowledge that in sustaining Ditech's demurrers to the contract claims (Counts I and III), the State Court dismissed those claims, with prejudice, and that the ruling is binding on them. That is why they have not included them in the Claim. Response at 2. In contrast, they are asserting the claim for Actual Fraud under Count II. In denying a demurrer, a court merely determines that the factual allegations pleaded in the complaint and the reasonable inferences drawn therefrom are sufficient to state a cause of action. *Riverview Farm Assocs. Va. Gen. P'ship v. Bd. of Supervisors of Charles Cnty.*, 528 S.E.2d 99, 103 (Va. 2000).

[21]   They also annexed to the Response: (i) all the pleadings and orders in the State Court Action, Response, Ex. A; (ii) the statement of pleadings and orders on the web site of the State Court, *id.*, Ex. B; (iii) the order overruling Ditech's demurrer as to the fraud claim against ditech, *id.*, Ex. C; (iv) the pleading titled "Ditech Financial LLC's Notice of Bankruptcy Status," *id.*, Ex. D; (v) motion to non-suit, *id.*, Ex. E; (vi) Ditech's Demurrer to Complaint, *id.*, Ex. F; (v) the Memorandum in Support of Demurrer to Complaint, *id.*, Ex. G; and (vi) the Complaint, *id.*, Ex. H.

considerable damage, including loss of equity, cost to defend against eviction, damage to credit and considerable emotional distress.

*Id.* at 4–5.

### The Reply

In the Reply, the Consumer Claims Trustee argues that the Claimants have (i) failed to adequately plead a claim for fraud under Rules 8(a) ("Rule 8(a)")[22] and 9(b) ("Rule 9(b)")[23] of the Federal Rules of Civil Procedure, Reply ¶¶ 23–30; (ii) failed to assert facts sufficient to state a plausible claim for fraud under Rule 12(b)(6), *id.* ¶¶ 31–46; and (iii) failed to establish a basis for the damages alleged in support of their Claim, *id.* ¶¶ 47–50.

### Applicable Legal Standards

Under section 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). A claim "executed and filed in accordance with [the Federal Rules of Bankruptcy Procedure] shall constitute prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f); *see also* 4 Collier on Bankruptcy ¶ 502.02[3][e] (16th ed. 2023) ("The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules, constitutes *prima facie* evidence of the validity and amount of the claim under Federal Rule of Bankruptcy Procedure 3001(f) and Code section 502(a).").

Section 502(b) sets forth the grounds for disallowing a proof of claim filed under section 501 of the Bankruptcy Code. *See* 11 U.S.C. § 502(b); *see also Travelers Cas. and Sur. Co. of Am. v. Pac. Gas and Elec. Co.*, 549 U.S. 443, 449 (2007) ("But even where a party in interest objects [to a claim], the court 'shall allow' the claim 'except to the extent that' the claim implicates any

---

[22]   Rule 8 is incorporated herein pursuant to Bankruptcy Rule 7008.

[23]   Rule 9 is incorporated herein pursuant to Bankruptcy Rule 7009.

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

of the nine exceptions enumerated in § 502(b)").  As relevant, section 502(b) of the Bankruptcy

Code provides that the Court shall determine and allow the amount of a claim subject to an

objection as of the bankruptcy petition date "except to the extent that . . . (1) such claim is

unenforceable against the debtor and property of the debtor, under any agreement or applicable

law for a reason other than because such claim is contingent or unmatured . . . ."  11 U.S.C.

§ 502(b)(1).  As a general rule, courts apply state law in determining whether a claim is allowable

under section 502(b)(1).  *See In re Hess*, 404 B.R. 747, 749 (Bankr. S.D.N.Y. 2009) ("What claims

of creditors are valid and subsisting obligations against the bankrupt at the time a petition is filed,

is a question which, in the absence of overruling federal law, is to be determined by reference to

state law." (quoting *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161 (1946)));

*see also In re Genco Shipping & Trading Ltd.*, 550 B.R. 676, 680 (S.D.N.Y. 2015) (noting that as

used in section 502(b)(1), the term "[a]pplicable law most often relates to state law").

Pursuant to the Claims Procedures Order, in reviewing the legal sufficiency of the Claim,

the Court applies the standards under Rule 12(b)(6).  In doing so, the Court considers whether the

Claim "state[s] a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In applying

Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the

Claim in light of the pleading requirements under Rule 8(a).  Because the Claim purports to assert

a fraud claim under Virginia law against Ditech, it must also satisfy the heightened pleading

standards under Rule 9(b).

## Discussion

To state a claim for Actual Fraud under Virginia law, the Claimants must allege facts

demonstrating: (1) a false representation, (2) of a material fact, (3) made intentionally and

knowingly, (4) with intent to mislead, (5) reliance by the party mislead, and (6) resulting in

damages to the party.  *Prospect Dev. Co., Inc. v. Bershader*, 515 S.E.2d 291, 297 (Va. 1999); *see*

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

*also Cohn v. Knowledge Connections, Inc.*, 585 S.E.2d 578, 581 (Va. 2003).  The Claimant must

plead fraud with particularity and ultimately prove it by clear and convincing evidence.  *Mortarino*

*v. Consultant Eng'g Servs.*, 467 S.E.2d 778, 782 (Va. 1996).

As support for the Claim, the Claimants rely on their allegations of Actual Fraud in support

of Count II of the Complaint.  *See* Claim at 5; Complaint ¶¶ 29–47.  The Consumer Claims Trustee

contends that the Court should disallow and expunge the Claim because it fails to comply with the

formal pleading standards under Rules 8(a) and 9(b).  She also asserts that, in any event, the Court

must expunge the Claim under Rule 12(b)(6) because it fails to state a substantive claim of Actual

Fraud against Ditech under Virginia law.  Finally, she contends that the Court should disallow and

expunge the Claim because the Claimants fail to allege facts that provide a basis for awarding the

damages asserted in the Claim.

## Whether the Claim Meets the Pleading Requirements of Rules 8(a) and 9(b)

The function of a pleading "is to give the adverse party fair notice of the claim asserted so

as to enable him to answer and prepare for trial."  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.

1998).   Rule 8(a)(2) mandates that a complaint contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Rule 8(d)(1) is clear that

"each allegation in a pleading [must] be simple, concise, and direct" but that "[n]o technical

[pleading] form is required."  Fed. R. Civ. P. 8(d)(1).  At all times, the Court must construe

pleadings "so as to do justice."  Fed. R. Civ. P. 8(e).

"The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleadings

system, which was adopted to focus litigation on the merits of a claim."  *Swierkiewicz v. Sorema*

*N.A.*, 534 U.S. 506, 514 (2002).  To satisfy Rule 8(a), a claimant "is not required to prove his case

at the pleading stage."  *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

A pleading "does not have to set out in detail the facts on which the claim for relief is based."

*Owens v. Suter*, 02-cv-8198, 2003 WL 942554, at *1 (S.D.N.Y. Mar. 7, 2003) (quoting 2 Moore's

Federal Practive ¶ 8.04[1], at 8–22 (3d ed. 2002))   However, it "must give the court and the

defendant 'fair notice of what [the] plaintiff's claim is and the grounds upon which it rests.'"   *Id.*

(quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)); *see also Nisselson v. Softbank*

*AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369, 384 (Bankr. S.D.N.Y. 2007) ("In

accordance with the liberal pleading standards of Rule 8, 'a plaintiff must disclose sufficient

information to permit the defendant to have a fair understanding of what the plaintiff is

complaining about and to know whether there is a legal basis for recovery.'" (quoting *Kittay v.*

*Kornstein,* 230 F.3d 531, 541 (2d Cir. 2000))).   Thus, "[t]he key to Rule 8(a)'s requirements is

whether adequate notice is given."  *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004).   For

these purposes, "adequate notice," *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995), is notice

that "will enable the adverse party to answer and prepare for trial, allow the application of res

judicata, and identify the nature of the case so that it may be assigned the proper form of trial," *id.*

at 86.

Rule 8 does not require "'detailed factual allegations,' but it demands more than an

unadorned, the defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   Thus, a "pleading that

offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will

not do.' . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Cellamare v.*

*Millbank, Tweed, Hadley & McCloy, LLP*, No. 03-cv-0039, 2003 WL 22937683, at *4 (E.D.N.Y.

Dec. 2, 2003) (noting that a claim will not satisfy Rule 8(a) if it "contain[s] such conclusory or

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

general allegations [that it] deprive[s] the defendant of fair notice of the nature of a claim.").

Rather, to meet the standards under Rule 8, a pleading must contain "enough facts to state a claim

for relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Chavis v. Chappius*,

618 F.3d 162, 170 (2d Cir. 2010) (noting that, while a court must accept as true all of the well-

pleaded allegations in a complaint, that tenet is inapplicable to legal conclusions and to threadbare

recitals of the elements of a cause of action supported by mere conclusory statements); *Jaffe v.*

*Cap. One Bank*, No. 09-cv-4106, 2010 WL 691639, at *5 (S.D.N.Y. Mar. 1, 2010) (finding that

the complaint did not meet Rule 8(a) standards where it presented "unadorned, the defendant-

unlawfully-harmed-me accusations" (quoting *Twombly*, 550 U.S. at 555)).

When a complaint fails to comply with the Rule 8 pleading standards, "the court has the

power . . . in response to a motion by the defendant . . . to dismiss the complaint." *Salahuddin*,

861 F.2d at 42 (2d Cir. 1998); *see also Samuel v. Bellevue Hosp. Cent.*, No. 07-cv-6321, 2008 WL

3895575, at *3–4 (S.D.N.Y. Aug. 22, 2008) (dismissing claims pleaded with insufficient detail

pursuant to Rule 8(a)).  However, in applying Rule 8, it is settled that "[t]he fundamental command

of the Federal Rules of Civil Procedure is 'never to exalt form over substance.'" *Amron v. Morgan*

*Stanley Inv. Advisors Inc.*, 464 F.3d 338, 343 (2d Cir. 2006) (quoting *Phillips v. Girdich*, 408 F.3d

124, 128 (2d Cir. 2005)).  When considering the merits of an objection to the adequacy of a claim

under Rule 8(a), the Court is mindful of the "jurisprudential preference for adjudication of cases

on their merits rather than on the basis of formalities." *Salahuddin*, 861 F.2d at 42.  Accordingly,

dismissal of a pleading under Rule 8 "is usually reserved for those cases in which the complaint is

so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well

disguised." *Salahuddin*, 861 F.2d at 42; *see also Swierkiewicz*, 534 U.S. at 514 ("Given the

Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

clear that no relief could be granted under any set of facts that could be proved consistent with the

allegations.'" (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984))).

Rule 9(b) mandates that a claimant meet a heightened pleading standard, when alleging

fraud or malice in a federal court.  Pursuant to Rule 9(b):

> In alleging fraud or mistake, a party must state with particularity the circumstances
> constituting fraud or mistake.  Malice, intent, knowledge and other conditions of a
> person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).  The rule applies to state law claims, such as fraud, brought in a federal court.

*See Fisher v. APP Pharms., LLC*, No. 08-cv-11047, 2011 WL 13266819, at *6 n.8 (S.D.N.Y. Feb.

28, 2011).

Rule 9(b) does not displace Rule 8; rather, the Court must "balance[] the requirements

of Rule 9(b) and their overall purposes with the requirements of notice pleading under Rule 8(a)."

*Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00-cv-8688, 2003 WL

22218643, at *6 (S.D.N.Y. Sept. 25, 2003).  As relevant, the "purpose of Rule 9(b)" is "to provide

a defendant with fair notice of a plaintiff's [fraud] claim." *O'Brien v. Nat'l Prop. Analysts*

*Partners*, 936 F.2d 674, 676 (2d Cir. 1991).  Thus, to satisfy the pleading requirements of

Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent,

(2) identify the speaker, (3) state where and when the statements were made, and (4) explain why

the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.

1993). That is to say that the "plaintiff must plead the who, what, when and where of his

allegations." *U.S. ex rel. Barmak v. Sutter Corp.*, No. 95-cv-7637, 2003 WL 21436213, at *4

(S.D.N.Y. June 20, 2003); *see also U.S. ex rel. Vallejo v. Investronica, Inc.*, 2 F. Supp. 2d 330,

336 (W.D.N.Y. 1998) ("In this Circuit, to pass muster under Rule 9(b), the amended complaint

must allege when and where the statements were made, identify the individual responsible for the

statements, and specify the content of the alleged fraudulent statements.").

"[W]hile Rule 9(b) permits scienter to be demonstrated by inference, this 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.'" *O'Brien*, 936 .2d at 676 (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)). Accordingly, when pleading scienter, parties "must allege facts that give rise to a strong inference of fraudulent intent." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004) (quoting *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999)). That may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *accord ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Allegations that are conclusory or unsupported by factual assertions are insufficient. *See Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986).

The Consumer Claims Trustee asserts that neither the Claim nor the Response meets these minimum pleading standards. Reply ¶ 27. She maintains that, although the Claim contains allegations of "misrepresentation" by the Ditech Representative, it fails to sufficiently plead that any such statements were made intentionally and knowingly with the intent to mislead. *Id.* To that end, she asserts that the Claimants fail to allege that the Ditech Representative even knew of the foreclosure sale and that they admit that he did not mention the foreclosure sale during the conversation. *Id.* ¶38 (citing Estimation Response at 2.). She also says that the Complaint fails to satisfy the minimum pleading requirements because the Claimants "speculated as to the meaning of Ditech representative's statements without obtaining information as to the status of their alleged payment to reinstate the mortgage or possible foreclosure sale." *Id.* ¶38. The Court disagrees.

In the Complaint, the Claimants allege that (i) Warren asked the Ditech Representative what he could do to save his home, (ii) the representative told him that he could possibly be approved for a loan modification, (iii) the representative promised to send him the paperwork for the loan modification, and (iv) the representative stated that the process would take about two weeks. *Id.* ¶¶ 35–38. They assert that the representative assured Warren that "if he wished to proceed to seek a loan modification as proposed by [the Ditech Representative] he was safe from foreclosure and had about two weeks to make his application," *id.* ¶ 37, but that the "assurance" by the Ditech Representative was "intentionally false" because he "knew that the foreclosure would not be stayed the next day to allow the Pratts to file an application for a loan modification." *Id.* ¶ 38. The Claimants allege that the Ditech Representative's "intentional false assurance" was "part of Ditech's pattern and practice of encouraging borrowers to believe they were safe from foreclosure to prevent them from taking action to stop foreclosure," *id.* ¶ 39, and that they reasonably believed and relied upon those assurances and that, but for those assurances, they would have sought legal counsel to stop the foreclosure. *Id.* ¶¶ 40–41.

The Claim satisfies the pleading requirements of Rule 8(a). It plainly gives the Consumer Claim Trustee sufficient information to provide her with a fair understanding of the legal and factual bases of the Claimants' complaint. *See Owens*, 2003 WL 942554, at *1; *In re MarketXT Holdings Corp.*, 361 B.R. at 384. The allegations in support of the Claim are not "confused, ambiguous, vague, or otherwise unintelligible." *Salahuddin*, 861 F.2d at 42. The Claimants plead the "who, what, when and where" of their allegations. *Barmak*, 2003 WL 21436213, at *4. They allege that the Ditech Representative intentionally misled them in furtherance of Ditech's alleged scheme to prevent borrowers from taking actions to halt foreclosures. They assert that the representative made those statements even though he knew that the request for a loan modification

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

would not stay the foreclosure sale.  The Court also finds that those allegations are sufficient to plead a "strong inference" of fraud under Rule 9(b).  *See Shields*, 25 F.3d at 1128.

Finally, the Consumer Claims Trustee asserts that the Claimants fail to provide their alleged proof of payment or any other communications from Ditech between the Notice of Default in March 2014 and the Monthly Statement in March 2015.  (citing Response at 14. ("[The Ditech Representative] assured Warren Pratt that 'you have about two weeks', thereby assuring Warren Pratt that, if he wished to proceed to seek a loan modification as proposed by [the Ditech Representative] he was safe from foreclosure and had about two weeks to make his application").  However, to satisfy Rule 8(a), the Claimants are not required to prove their case at the pleading stage.  *Ricciuti,* 941 F.2d at 123.

The Court finds that the Claim satisfies the pleading requirements under Federal Rules 8(a) and 9(b).

### Whether the Claimant Has Stated a Claim for Fraud Against the Debtors

A court will disallow and expunge a claim under Rule 12(b)(6), if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In applying Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the Claim in light of the pleading requirements under Rule 8(a).  In applying Rule 12(b)(6), the Court "must accept as true all of the factual allegations set out in [the claim]."  *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001).  The claim "must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Rosenblum v. Thomson Reuters (Markets) LLC*, 984 F. Supp. 2d 141, 145 (S.D.N.Y.

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

2013) (quoting *Iqbal*, 556 U.S. at 678).  The standard is "not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Palin v. New

York Times Co.*, 940 F.3d 804, 810 (2d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678).  To satisfy

Rule 12(b)(6), "the factual allegations 'must create the possibility of a right to relief that is more

than speculative.'"  *Allman v. Sony BMG Music Ent.*, No. 06-cv-3252, 2008 WL 2477465, at *1

(S.D.N.Y. 2008) (quoting *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir.

2008)).  In considering whether that standard is met for a particular claim, the court must assume

the truth of all material facts alleged in support of the claim and draw all reasonable inferences in

the claimant's favor.  *See John v. Whole Foods Market Grp., Inc.*, 858 F.3d 732, 736 (2d Cir.

2017).  "However, 'legal conclusions, deductions or opinions couched as factual allegations are

not given a presumption of truthfulness.'"  *Loc. 8a-28a Welfare and 401(k) Ret. Funds v. Golden

Eagles Architectural Metal Cleaning & Refinishing*, 277 F. Supp. 2d 291, 294 (S.D.N.Y. 2003)

(quoting *Ying Jing Gan v. City of New York*, 996 F.2d 522, 534 (2d Cir. 1993)).  In applying Rule

12(b)(6) "the task of this Court . . .  is 'merely to assess the legal feasibility of the [Claim], not to

assay the weight of the evidence which might be offered in support thereof.'"  *Larkin v. Ricenberg*,

No. 05-cv-3384, 2006 WL 678964, at *1 (S.D.N.Y. Mar. 17, 2006) (quoting *Sims v. Artuz*, 230

F.3d 14, 20 (2d Cir. 2000)).

"There is a critical distinction between the notice requirements of Rule 8 and the

requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."

*Wynder*, 360 F.3d at 80.  The latter mandates that even a well-pleaded complaint must state a

legally cognizable claim for relief.  *See id.*  "A complaint could include a wealth of specific and

particular facts, which would otherwise meet the standard for plausibility, but in some instances,

no amount or combination of those facts could ever give rise to a violation of law."  *Alharbi v.*

22

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

Miller, 368 F. Supp. 3d 527, 560 (E.D.N.Y. 2019).  Thus, even when a complaint is sufficient to

meet Rule 8(a)'s formal notice requirements,  it will nonetheless be dismissed under Rule 12(b)(6)

if the conduct alleged does not give rise to a violation of law.  *Id.*; *see also  Straker v. Metropolitan

Transit Authority*, 333 F. Supp. 2d 91, 102 (E.D.N.Y. 2004) ( drawing a distinction between fair

notice of what the plaintiff's claim is and the grounds upon which it rests, such that "conclusory

allegations cannot satisfy the latter").

As a general rule, to state a claim for fraud under Virginia law, the "fraud must relate to a

present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or

statements as to future events."  *Soble v. Herman*, 9 S.E.2d 459, 464 (Va. 1940); *see also Lloyd v.

Smith*, 142 S.E. 363, 365 (Va. 1928) (under Virginia law, "an action based upon fraud must aver

the misrepresentation of present pre-existing facts, and cannot ordinarily be predicated on

unfulfilled promises or statements as to future events.").  The rationale underlying that standard is

that:

> [A] mere promise to perform an act in the future is not, in a legal sense, a
> representation, and a failure to perform it does not change its character. The very
> nature of a promise to do something in the future is such that its truth or falsity, as
> a general rule, cannot be determined at the time it is made.

*Soble,* 9 S.E. 2d at 500.  However, promises will support a fraud claim if they "are made with a

present intention not to perform them, or on promises made without any intention to perform

them."  *Lloyd*, 142 S.E. at 365.  In those situations, "the gist of fraud . . . is not the breach of the

agreement to perform, but the fraudulent intent" as courts hold that "the fraudulent purposes of the

promisor and his false representation of an existing intention to perform, when such an intent did

not exist, is the misrepresentation of a fact."  *Id.*  Accordingly, "the state of the promisor's mind

at the time he makes the promise is a fact, and one which is exclusively within the promisor's own

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

knowledge; so that, if he represents his state of mind—that is, his intention—as being one thing when in fact his purpose is just the contrary, he misrepresents a then existing fact." *Id.* That is to say that "when he expressly or impliedly avers that he has an existing intention to fulfil his promise, that intention is a fact, and if false and fraudulent is a fraudulent representation which may or may not supply the basis for an action in tort for the deceit." *Id.*

The Consumer Claims Trustee contends that the Claim does not meet the pleading requirements of Rule 12(b)(6) and does not state a fraud claim under Virginia law because it fails to allege facts demonstrating that the Ditech Representative made a false representation of a material fact to Warren. She asserts that the Claimants allege that the Ditech Representative knew that the "foreclosure would not be stayed the next day," Reply ¶ 28 (citing Response at 14), but that they do not allege that the representative even knew of the foreclosure sale and acknowledge that the representative did not mention the foreclosure sale. *Id.* (citing Estimation Response at 2). She says that the only allegations by the Claimants as to the representative's knowledge are that (i) the representative was going to send an application for a loan modification, (ii) approval of a loan modification could possibly prevent foreclosure, and (iii) the Claimants had "about two weeks." *Id.* ¶ 29. She argues that those statements constitute promises to perform in the future and, as such, none of them are a material fact that the Claimants could rely upon. *Id.* She contends that "the mere promise to perform in the future is not a representation" in support of a fraud claim. *Id.* (citing *Soble*, 9 S.E. 2d 459).

The Claimants dispute those contentions and maintain that the Ditech Representative's statements constitute misrepresentations that support the fraud claim. They rely on *Boykin v. Hermitage Realty*, 360 S.E.2d 177 (Va. 1987). In *Boykin*, the Supreme Court of Virginia ruled that a real estate agent (the "Agent") fraudulently induced certain individuals (the "Purchasers")

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

to purchase condominium units (and to pay a $1,000 premium for each unit) by deliberately

misrepresenting to them an existing fact, i.e., that the area behind the units would remain

undeveloped, even as the agent knew that the developer was going to, and did, construct a

playground in that property.  *Boykin,* 360 S.E.2d at 177-78.[24]  The court found that the agent's

representations to the Purchasers were unconditional promises of privacy made in reply to their

express and unambiguous requests to acquire units that had backyard privacy.  *Id*. at 178.  The

court found the Agent's "repeated assurances that the area would remain undeveloped were

deliberate misrepresentations of existing facts, all made to induce the several plaintiffs to pay a

premium price for property they otherwise would not have bought."  *Id*.

     The Court finds that *Boykin* supports the Claim.  In Count II of the Complaint, the

Claimants allege that that the Ditech Representative deliberately misrepresented to them an

existing fact.  They assert that even as the Ditech Representative knew that the foreclosure sale

was scheduled for the next day, and that the representative knew that the foreclosure would not be

---

[24]    In *Boykin*, the Virginia Supreme Court reversed the trial court's decision to set aside a jury verdict in favor of the
Purchasers against the real estate company marketing the units and the Agent (collectively, the "Defendants").  *Boykin,*
360 S.E.2d at 179.  During the sale process, the Plaintiffs advised the Agent that they valued "privacy" and that they
were interested only in acquiring units that backed on to wooded areas that would remain in their natural state and not
be developed.  *Id*. at 178.  The Agent showed them units that backed on to a wooded area and knowingly and
intentionally misrepresented to them that the area would not be developed.  *Id*.  Relying on those misrepresentations
as true, the purchasers acquired the units, and each paid an additional $1,000 fee, for backyard privacy.  Several
months later, the developer constructed a playground in the wooded area behind the units.  *Id*.

     The Plaintiffs sued the Defendants for damages occasioned by their alleged fraud and deceit.  After a trial, the
jury returned verdicts for each Plaintiff against the Defendants.  Thereafter, the trial court granted the Defendants'
motion to set the verdicts aside and entered judgment for the Defendants.  *Id*.  In so ruling, the trial court found that
"the [P]laintiffs produced no evidence that can realistically be characterized as misrepresentation with respect to
actually existing or past facts."  *Id*.  On appeal, the issue before the Virginia Supreme Court was "whether the evidence
was sufficient to support the findings of a jury that the [D]efendants had induced the [P]laintiffs to enter into a contract
of sale by misrepresenting an existing fact."  *Id*. at 177.  The court found that the trial court erred in setting the verdicts
aside.  *Id*.  In reviewing the trial court record, the court found that the Agent was fully aware of the Plaintiffs' desire
to acquire units with private backyards, and that the Agent's representations to the Plaintiffs were unconditional
promises of privacy made in reply to their express and unambiguous requests to acquire units that had backyard
privacy.  *Id*. at 178.  The court found the Agent's "repeated assurances that the area would remain undeveloped were
deliberate misrepresentations of existing facts, all made to induce the several [P]laintiffs to pay a premium price for
property they otherwise would not have bought."  *Id*.

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

stayed the next day to allow the Pratts to file an application for a loan modification, Complaint ¶ 38, he "assured Warren Pratt that 'you have about two weeks,'" *id.* ¶ 37. That was a false statement of a present event because the foreclosure sale was scheduled for the next day. The Court finds that, based on *Boykin,* those allegations adequately plead the intentional misrepresentation of an existing fact in support of the Claim.

In her Reply, the Consumer Claims Trustee also contends that the Claim fails to state a claim for relief under Virginia law because the Claimants do not plead facts demonstrating that they relied upon the statements made by the Ditech Representative. Reply ¶ 45. She says that, at best, the Claimants state that if they had known the foreclosure sale was scheduled for the next day, they would have retained legal counsel who would have stopped the foreclosure by filing a Chapter 13 bankruptcy. *Id.* (citing Estimation Response at 3.) She says that, although Warren contends that he and Mora did not take steps to stop the foreclosure sale in reliance on Warren's conversation with the Ditech Representative, Ditech had no affirmative obligation to contact the Claimants the day before the foreclosure sale to inform them of the pending sale, and, in any event, it does not seem plausible they would have been able to both obtain and file for bankruptcy within a day. *Id.* The trustee maintains that the Claimants have not alleged facts demonstrating that they reasonably relied on the alleged misrepresentations. The Complaint states that had the Pratts known about the foreclosure they would have retained a lawyer who would have stopped the foreclosure, by bankruptcy if necessary. Complaint ¶¶ 41–42. During the Sufficiency Hearing, the trustee, through her counsel, acknowledged that it is not implausible that the Pratts could have commenced a bankruptcy case to stay the foreclosure sale. The Court finds that those allegations plead the element of reliance in support of the fraud claim.

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

The Claimants allege that their reliance on the Ditech Representative's "false assurance" was "reasonable because [they] knew [they] had tendered a significant amount of money that would normally be an indication to a lender of his good faith in seeking to avoid foreclosure by some reasonable means." Complaint ¶ 40. In response, the Consumer Claims Trustee notes that the Claimants do not allege that they discussed their payment with the Ditech Representative, and that in the Estimation Response, they assert that the representative called to tell them that they needed to "pay a large amount to bring the loan current," but then go on to say that Warren "believing Ditech already had the $12,205.11 check he had sent," asked what he could do to save the home. Reply ¶ 41 (citing Estimation Response at 2). In that light, she contends that it is not plausible that the Claimants relied on the Ditech Representative's statements because they would not have been concerned with saving their home from foreclosure, since they claim that they tendered the Check to Ditech to reinstate the Mortgage Loan in full. Reply ¶ 41. The Court disagrees. It is not implausible that a borrower that is in default under its mortgage, and is cold-called by its lender offering a potential loan modification after it sent a check to the lender which it believed cured its default under its loan, would question the lender about the potential foreclosure of its property, and refrain from taking action, in reliance on the lender's assurances with respect to the property.

Finally, the Consumer Claims Trustee asserts that it does not seem plausible that Ditech would wait until the day before the foreclosure sale to try to prevent the Claimants from taking any action to stop the foreclosure. Reply ¶¶ 42–44. She maintains that given the high bar for the recission of a foreclosure sale under Virginia law, it makes little sense to presume that the alleged telephone call with the Ditech Representative was intended to stop the Claimants from taking action. As support, the trustee cites to *Young-Allen v. Bank of Am., N.A.*, 839 S.E.2d 897 (Va.

19-10412 Ditech – G.23 Pratt Summary
October 13, 2023

2020).  Reply ¶ 44.  The Court need not address that issue because the plausibility of Ditech's actions do not bear on whether the Claimants have stated a claim for Actual Fraud under Virginia law.

Based on the foregoing, and on the Court's review of the allegations in support of the Count II of the Complaint that the Court must accept as true, the Court finds that the Claim satisfies Rule 12(b)(6) and states a claim for Actual Fraud under Virginia law.

### Conclusion

For the reasons set forth herein, the Court finds that the Claim states a claim for Actual Fraud under Virginia law.  Accordingly, the Court overrules the Objection.  The Court will consider the trustee's challenge to the compensatory and punitive damages that the Claimants are seeking in the Claim in conjunction with the hearing on the Estimation Motion.  The Court directs counsel to the Claimants and to the Consumer Claims Trustee to contact Chambers to schedule the hearing on that motion.

IT IS SO ORDERED.

Dated:  New York, New York
        October 13, 2023

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge