UNITED STATES BANKRUPTCY COURT                    NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
In re:                                               :
                                                     :   Case No. 19-10412 (JLG)
Ditech Holding Corporation, *et al.*,                :   Chapter 11
                                                     :
                                                     :
                                   Debtors.[1]       :   (Jointly Administered)
------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS TRUSTEE'S TWENTY-NINTH OMNIBUS OBJECTION WITH RESPECT TO THE PROOF OF CLAIM FILED BY KEVIN SNYDER AND THE ESTATE OF MARY SNYDER

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10022
By:    Richard Levin

JASON SCOTT LUCK
*Attorneys for the Claimants*
107 South Parsonage Street
Bennettsville, South Carolina 29512
By:    Jason Luck

---

[1]    On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412.  Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate") (Case No. 19-10412 (JLG) remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction[2]

On February 28, 2018, Kevin Snyder and the Estate of Mary Snyder[3] (the "Snyders" or the "Claimants")[4] filed Proof of Claim No. 20043 (the "Claim") asserting an unliquidated unsecured claim against Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) ("Ditech Holding") in the sum of $300,000. Claim at 1–2.[5] In her Twenty-Ninth Omnibus Objection to Proofs of Claim (the "Objection"),[6] the Consumer Claims Trustee seeks an order disallowing and expunging the Claim. On October 13, 2020, the Claimants filed a response (the "Response")[7] to the Objection. On June 13, 2023, the Consumer Claims Trustee replied to the Response (the "Reply").[8] On June 22, 2023, the Claimants filed a surreply to the Reply (the "Surreply").[9]

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[3]    Mary Snyder passed away in November 2015. Response at 5 n.2. Kevin Snyder is the personal representative for her estate. *Id.* at 5.

[4]    The term "Snyders" refers to Kevin and Mary Snyder, and the term "Claimants" refers to Kevin Snyder and the Estate of Mary Snyder.

[5]    Because the Claim and Response do not have internal page numbers, references herein to those filings are to the PDF page number(s) of the relevant document.

[6]    *Consumer Claims Trustee's Twenty-Ninth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims)*, ECF No. 2837.

[7]    *Response in Opposition of Kevin G. Snyder and the Estate of Mary Snyder to the Consumer Claim Trustee's Twenty-Ninth Omnibus Objection to Proofs of Claim*, ECF No. 2879.

[8]    *Reply of the Consumer Claims Trustee in Support of the Twenty-Ninth Omnibus Objection with Respect to the Claim of Kevin Snyder and the Estate of Mary Snyder (Claim No. 20043) and the Related Motion to Estimate*, ECF No. 4784.

[9]    *Surreply to the Reply of the Consumer Claims Trustee in Support of the Twenty-Ninth Omnibus Objection with Respect to the Claim of Kevin Snyder and the Estate of Mary Snyder (Claim No. 20043) and the Related Motion to Estimate*, ECF No. 4791. The Consumer Claims Trustee did not object to the Court's consideration of the Surreply.

Pursuant to the Claims Procedures Order,[10] the filing of the Response caused an adjournment of the Objection so that the Court could conduct a Sufficiency Hearing on the Claim. The legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[11]  Claims Procedures Order ¶ 3(iv)(a).

The Consumer Claims Trustee and Claimants appeared at the Sufficiency Hearing through their respective counsel, and the Court heard arguments from the parties.  The Court has reviewed the Claim, Objection, Response, Reply, and Surreply, including all documents submitted in support thereof, and it has considered the arguments made by the parties in support of their positions.

For the reasons set forth herein, the Court sustains the Objection and disallows and expunges the Claim.

## Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[10]   *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

[11]   Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  In filing the Objection, the Consumer Claims Trustee and Plan Administrator initiated a contested matter.  *See Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs., Inc.)*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter").  Bankruptcy Rule 9014 governs contested matters.  The rule does not explicitly provide for the application of Bankruptcy Rule 7012.  However, Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply." Fed. R. Bankr. P. 9014.  Here, the Court did so in the Claims Procedures Order.

## Background

### The Mortgage Loan

On April 21, 2005, Kevin Snyder executed a promissory note in favor of Gateway Funding Diversified Mortgage Services L.P. ("Gateway") in the amount of $135,000.00 (the "Note").[12] The Note was secured by a mortgage (the "Mortgage"[13] and together with the Note, the "Mortgage Loan") on real property located at 1752 Orange Grove Shores Drive, Charleston, South Carolina 29407 (the "Property"). Kevin and Mary Snyder are listed as borrowers on the Mortgage. Mortgage at 1. BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP ("BAC") originally serviced the Mortgage Loan. Response at 5. BAC is the predecessor loan servicer to Green Tree Servicing, LLC ("Green Tree"), which later became Ditech Financial LLC ("Ditech").

### The State Court Foreclosure Action

On September 23, 2010, BAC filed a foreclosure complaint and lis pendens (the "Foreclosure Petition"),[14] initiating a foreclosure action (the "State Court Foreclosure Action")[15]

---

[12]    The Note is annexed to the Reply as Exhibit A. The Court can properly take judicial notice of matters of public record. *See Sutton ex rel. Rose v. Wachovia Sec., LLC*, 208 F. App'x 27, 30 (2d Cir. 2006) (summary order) (holding that filings and orders in other courts "are undisputably matters of public record"). "In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011); *see also Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) ("[Courts] must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007))); *Leon v. Shmukler*, 992 F. Supp. 2d 179, 184 (E.D.N.Y. 2014) ("It is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records."). The documents cited by the Claimants and Consumer Claims Trustee directly bear on the legal sufficiency of the Claim and merits of the Objection. The Court takes judicial notice of those documents.

[13]    The Mortgage is annexed to the Reply as Exhibit B.

[14]    The Foreclosure Petition is annexed to the Reply as Exhibit D.

[15]    *Ditech Financial, LLC v. Snyder*, Case No. 2010-CP-10-7838 (S.C. Ct. Com. Pl. filed Sept. 23, 2010).

in the Court of Common Pleas for Charleston County, South Carolina (the "State Court"). Response at 5; State Court Docket at 3.[16]  In support of the Foreclosure Petition, BAC asserted that the Snyders made no monthly payments on the Mortgage since September 1, 2008. Foreclosure Petition at 5, ¶ 12.

On December 17, 2012, the Snyders were served a Notice of Foreclosure Intervention,[17] which was denied.  Response at 5; State Foreclosure Docket at 3.  On June 1, 2013, BAC transferred the Mortgage Loan to Green Tree.  Response at 5, 274–75.  In May 2013, the Snyders retained counsel, and on June 3, 2013, they filed an answer with counterclaims (the "Answer and Counterclaims")[18] to the Foreclosure Petition.  Response at 5; State Foreclosure Docket at 3.  In it, they asserted four defenses to BAC's claims:

> (i) Violation of the South Carolina Supreme Court Administrative Order 2011-05-02-01 (the "Administrative Order"),[19]
>
> (ii) Lack of standing to sue;
>
> (iii) Failure to mitigate damages, and
>
> (iv) Setoff/recoupment claims for violation of the South Carolina Attorney Preference Statute (the "Attorney Preference Statute") as to Mary Snyder and for violations of the Real Estate Settlement Procedures Act ("RESPA").

See Answer and Counterclaims ¶¶ 11–14.  They also asserted the following Counterclaims against BAC:

> (a) Violation of the Administrative Order for failing to make a good faith effort to evaluate Claimants for foreclosure intervention (the "Civil Compensatory Contempt Claim");

---

[16]    The State Court docket is annexed to the Reply as Exhibit E (the "State Court Docket").

[17]    Ditech describes the Notice of Foreclosure Intervention as being akin to a loan modification.  Reply ¶ 5.

[18]    The Answer and Counterclaims is annexed to the Reply as Exhibit F.

[19]    See In re Mortg. Foreclosure Actions, 720 S.E.2d 908 (S.C. 2011).  The Administrative Order is annexed to the Reply as Exhibit C.

(b) Breach of contract for failing to notify Claimants of the assignment of the mortgage and for violating the implied covenant of good faith and fair dealing (the "Breach of Contract Claim");

(c) Unfair trade practices under the South Carolina Unfair Trade Practices Act ("SCUTPA") for violations of the Administrative Order, RESPA, and the Attorney Preference Statute (the "SCUTPA Claim"); and

(d) Quiet title (the "Quite Title Claim").

*See id.* ¶¶ 21–34.

On June 17, 2013, the Snyders' counsel sent Green Tree a letter informing it of his representation of the Snyders and enclosing a copy of the Administrative Order.  Response at 5. On July 18, 2013, the Snyders' counsel sent letters to Green Tree and its counsel enclosing a written authorization for representation from the Snyders and a copy of the Administrative Order. *Id.*  On September 30, 2013, the State Court stayed the State Court Foreclosure Action pending foreclosure intervention.  *Id.* at 6; State Court Docket at 2.

Over the next four years, foreclosure intervention continued.  Reply ¶ 14.  By letter dated June 8, 2017, Ditech denied the Snyders' loan modification because the loan exceeded six months' delinquency, and the modified principal and interest payment was greater than the pre-modification principal and interest payment.  Response at 322.  During the State Court Foreclosure Action and foreclosure intervention, the parties engaged in extensive discovery over the course of several years.  *See id.* at 6; Reply ¶ 14.

On March 1, 2019, Ditech filed a Notice of Bankruptcy Filing and Imposition of Automatic Stay in the State Court Foreclosure Action.  Response at 6; State Court Docket at 3.  On March 11, 2019, the parties filed cross-motions for summary judgment in the State Court Foreclosure Action. On March 18, 2019, the Master-in-Equity heard arguments on the motions.  Response at 6; State Court Docket at 2.

In support of its summary judgment motion (the "Ditech Summary Judgment Motion")[20], Ditech asserted that the Claimants' Counterclaims seeking monetary relief—Civil Compensatory Contempt Claim (portions related to monetary relief), Breach of Contract Claim, and the SCUTPA Claim (the "Claimants' Monetary Counterclaims")—were stayed. Ditech Summary Judgment Motion at 1. It contended that the foreclosure, any nonmonetary Counterclaims (or portions of thereof), and any equitable defenses could proceed to judgment. Response at 6; Ditech Summary Judgment Motion at 1. Ditech argued that it was entitled to summary judgment because:

> (i) It had shown it was the holder of the Note and Mortgage, the debt was in default, and all conditions precedent to foreclosure had been fulfilled;
>
> (ii) No material fact was in dispute as to the validity of the Mortgage for the Quiet Title claim;
>
> (iii) Claimants' Quiet Title defense as to the Attorney Preference Statute failed because Mary Snyder did not qualify for preference under the statute; and
>
> (iv) Claimants failed to establish that Ditech's predecessor-in-interest did not comply with the Administrative Order.

Ditech Summary Judgment Motion at 2.

The Claimants moved for summary judgment (the "Claimants' Summary Judgment Motion")[21] on the nonmonetary portions of their Counterclaims for Civil Compensatory Contempt and Quite Title (the "Claimants' Nonmonetary Counterclaims"). The Claimants argued that Ditech and its predecessors repeatedly violated the Administrative Order. Claimants' Summary Judgment Motion at 2–6. They requested that the State Court strike Ditech's Amended Complaint and Ditech's Reply to the Claimants' Counterclaims and issue a default judgment in their favor on

---

[20]   The Ditech Summary Judgment Motion, with exhibits, is annexed to the Response at 227–43.

[21]   The Claimants' Summary Judgment Motion is annexed to the Response at 344–52.

the Claimants' Nonmonetary Counterclaims.  *Id.* at 8. The Claimants also requested that the State

Court dissolve Ditech's lien on the Property or that it rescind the Mortgage Loan.  *Id.* at 7–8.

On March 27, 2019, the Master-in-Equity denied the Claimants' Summary Judgment

Motion and granted the Ditech Summary Judgment Motion (the "Summary Judgment Order")[22] as

to the non-monetary portion of Civil Compensatory Contempt Claim, but denied and deferred for

trial the Quiet Title Claim and Ditech's foreclosure action.  Summary Judgment Order ¶¶ A, B &

E; State Court Docket at 1.   The Master-in-Equity struck the Claimants' affirmative defenses

alleging violations of the Attorney Preference Statute, and acknowledged that the Claimants'

Breach of Contract Claim and the SCUTPA Claim were stayed.  Summary Judgment Order ¶ C.

On March 29, 2019, the Claimants appealed four separate interlocutory orders issued by the

Master-in-Equity, including the Summary Judgment Order (the "Appeal")[23] to the South Carolina

Court of Appeals (the "Court of Appeals").  Response at 6–7; State Court Docket at 2.

On April 26, 2019, the Master-in-Equity issued an Order and Judgment of Foreclosure and

Sale (the "Foreclosure Judgment")[24] directing the foreclosure of the Mortgage and sale of the

Property.  Response at 7.  In the Foreclosure Judgment, the Master-in-Equity made the following

pertinent findings:

> (i) Ditech complied with the Administrative Order; (ii) service on Claimants was
> proper; (iii) Ditech had standing to sue; (iv) Ditech fully complied with its
> obligations under the Mortgage Loan and applicable Federal and State law
> regarding furnishing of notices; and (v) Ditech waived its right to a deficiency
> judgment.

---

[22]   The Summary Judgment Order is annexed to the Reply as Exhibit G.

[23]   *Ditech Financial, LLC v. Kevin G. Snyder*, No. 2019-00575 (S.C. Ct. App. filed Apr. 1, 2019).  The docket for
the Appeal (the "Court of Appeals Docket") is annexed to the Reply as Exhibit J.

[24]   The Foreclosure Judgment is annexed to the Reply as Exhibit H.

Foreclosure Judgment at 2–5.  The Master-in-Equity made the following pertinent conclusions of law:

> (i) the Appeal did not stay the State Court Foreclosure Action, and the action was unaffected by the Appeal such that the Master-in-Equity was authorized to make rulings in the State Court Foreclosure Action; (ii) that the Claimants' Monetary Counterclaims were stayed pursuant to these Chapter 11 Cases; (iii) that the Claimants were not entitled to the remedy of quiet title; (iv) that Ditech satisfied the requirements of the Administrative Order; and (v) that a judgment of foreclosure and sale was appropriate.

*Id.* at 5–6.

On November 10, 2021, the Master-in-Equity issued an order of sale and disbursement.

State Court Docket at 1.

**<u>The Stipulation of Dismissal</u>**

On January 2, 2020, the Claimants and Ditech executed a Stipulation of Dismissal [25] in the State Court Foreclosure Action.  In it, the parties stipulate to the following: (i) dismissal, with prejudice, of all the Claimants' SCUTPA Claims, (ii) dismissal, with prejudice, of all Claimants' Breach of Contract Claims seeking monetary recovery (including attorneys' fees), and (iii) dismissal with prejudice, for all of the Claimants' Civil Compensatory Contempt Claims seeking monetary recovery (including attorneys' fees).  Stipulation of Dismissal at 1.[26]  The stipulation further provides that it

---

[25]    The Stipulation of Dismissal is annexed to the Reply as Exhibit I.

[26]    The parties made the Stipulation of Dismissal
pursuant to the permanent injunction entered by the United States Bankruptcy Court for the Southern District of New York in the cases indexed at case number 19-10412 (JLG), as more particularly set forth in the *Order Confirming Third  Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF 1404) approving the terms of the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1326) (the "Plan").  The Plan contains a permanent injunction . . . that specifically prohibits parties from prosecuting against Plaintiff any claim for monetary recovery (including attorney's fees) on account of any claim arising prior to September 30, 2019 (the Plan Effective Date and closing date for the transactions under the Plan).
Stipulation of Dismissal at 1-2.

is made without prejudice to, and specifically preserving, [Claimants'] claims in the pending [Chapter 11 Cases] (Number 0000020042, amended by Number 0000020043) and Defendant's appeal of non-monetary claims that are pending before the South Carolina Court of Appeals (Number 2019-000575).

*Id.* at 2.

**The Appeals**

On May 1, 2019, the Claimants filed an Amended Notice of Appeal to include an appeal from the Foreclosure Judgment. Response at 7; Reply ¶ 28; State Court Docket at 2; Court of Appeals Docket at 3. On May 2, 2019, the Claimants filed a Motion for Supersedeas in the State Court Foreclosure Action to suspend the foreclosure sale and all case activity. Reply ¶ 28; State Court Docket at 2. On October 18, 2019, the State Court granted the motion and ordered the Claimants to post a bond of $25,000. Reply ¶ 28; State Court Docket at 2.

On July 20, 2022, the Court of Appeals issued a decision affirming the Master-in-Equity's rulings (the "Appellate Decision").[27] Court of Appeals Docket at 1. The Court of Appeals found that neither Ditech nor its predecessors violated the Administrative Order by failing to act in good faith during the foreclosure process. Appellate Decision at 9–10. The Court of Appeals affirmed the Master-in-Equity's grant of summary judgment in favor of Ditech as to the Claimants' non-stayed Civil Compensatory Contempt Claim. *Id*. at 10. The Court found that the issue associated with the alleged Attorney Preference Statute was moot because it would have served as a setoff to Ditech's claim, but Ditech had waived its rights to a deficiency judgment. *Id*. at 12–13. The Court of Appeals found the Master-in-Equity's decision to proceed with the foreclosure, notwithstanding the pending appeals, was harmless error. *Id.* at 14.

---

[27]    The Appellate Decision is annexed to the Reply as Exhibit K.

**The State Supreme Court Action**

On November 23, 2022, the Claimants filed a Petition for Writ of Certiorari (the "Petition") in the South Carolina State Supreme Court.[28]  State Supreme Court Docket at 1.  Ditech objected to the Petition, and the Claimants responded to the Objection.  *Id.*  On May 24, 2023, the South Carolina State Supreme Court denied the Petition and ended the case.  *Id.*

**The Chapter 11 Cases**

On February 11, 2019, Ditech Holding and certain of its affiliates, including Ditech (the "Debtors") filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court (the "Chapter 11 Cases").  The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[29]  Thereafter, the Court extended the General Bar Date for consumer borrowers, twice, ultimately setting the date as June 3, 2019.[30]

---

[28]  *Ditech Financial, LLC v. Kevin G. Snyder, Individually and as Personal Representative of the Estate of Mary Snyder*, No. 2022-001651 (S.C. Sup. Ct. filed Nov. 23, 2022).  The docket in the State Supreme Court Action (the "State Supreme Court Docket") is annexed to the Reply as Exhibit L.

[29]  *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[30]  *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

On September 26, 2019, the Debtors confirmed their Third Amended Plan,[31] and on September 30, 2019, that plan became effective.[32]  The Consumer Claims Trustee is a fiduciary appointed under the Third Amended Plan who, in accordance with the plan, is responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims.  *See* Third Amended Plan art. I, § 1.41.  The Consumer Claims Trustee has the exclusive authority to object to Consumer Creditor Claims.  *See id.* art. VII, § 7.1.

**The Claims Procedures Order**

On November 19, 2019, the Court entered the Claims Procedures Order.  Under that order, the Consumer Claims Trustee is authorized to file Omnibus Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order.  *See* Claims Procedures Order ¶ 2(i)(a)–(h).  A properly filed and served response to an objection gives rise to a "Contested Claim" that will be resolved at a Claim Hearing.  *Id.* ¶ 3(iv).  The Consumer Claims Trustee has the option of scheduling the Claim Hearing as either a "Merits Hearing" or a "Sufficiency Hearing."  *Id.* ¶ 3(iv)(a), (b).  A "Merits Hearing" is an evidentiary hearing on the merits of a Contested Claim.  A "Sufficiency Hearing" is a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors.  The legal standard of review that the Court applies at a Sufficiency Hearing is equivalent to the standard applied by the Court upon a

---

[31]    *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1326.

[32]    *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

*Id.* ¶ 3(iv)(a).

## The Claim

The Claim asserts an unliquidated  unsecured claim against Ditech Holding in the sum of $300,000.  Claim at 1–2.  The Claim amends and supersedes Proof of Claim No. 20042.[33]  The basis of the Claim is "Litigation."  The Claimants annexed to the Claim approximately ninety pages of documents, including correspondence among the parties and documents utilized in the State Court Foreclosure Action.  They annexed a letter in which their counsel explains:

> (i) The amount sought under the Claim—$300,000—is equal to the estimated payoff of the Mortgage Loan ($254,101.83, as of October 7, 2016) plus attorneys' fees and costs of $24,853.51; and

> (ii) The "Litigation" referred to in the Claim relates to Green Tree's, Ditech's and their predecessors' alleged violations of  (a) the Administrative Order, (b) SCUTPA, and (c) the implied covenant of good faith and fair dealing in the Mortgage Loan.

*See id.* at 4–5.  Counsel also asserts that the debt underlying the Claim is not dischargeable in these Chapter 11 Cases.

## The Objection

On September 18, 2020, the Consumer Claims Trustee filed her Objection to the Claim. In the Objection, the trustee seeks an order disallowing and expunging the Claim, on the ground that it "[f]ails to state an affirmative claim for which relief may be granted."  Objection, Ex. A (List of Claims) at 10.  As support for that contention, the Consumer Claims Trustee asserts:

---

[33]    The Court disallowed and expunged Proof of Claim No. 20042 as an amended claim.  *See Order Granting Consumer Claims Trustee's Twenty-Seventh Omnibus Objection to Proofs of Claim (Duplicate or Amended Unsecured Consumer Creditor Claims)*, ECF No. 2808.

[The] Claim [is] based on [the State Court Foreclosure Action], where trial court found in favor of Debtors as to injunctive and equitable claims.  The trial court's findings preclude further relief on the issues presented.

*Id.*

**The Response**

In their Response to the Objection, the Claimants assert that the "central premise" of the Objection is incorrect because (i) the State Court specifically stayed its consideration of the Monetary Counterclaims (i.e., the Breach of Contract Claim, the SCUTPA Claim and the Civil Compensatory Contempt Claim—to the extent it seeks a monetary award); and (ii) the Stipulation of Dismissal preserved those claims for adjudication in these Chapter 11 Cases.  Response at 4.  The Claimants also assert that they have stated claims for (i) Civil Compensatory Contempt based on violations of the Administrative Order; (ii) Breach of Contract based upon failure to notify Claimants of a mortgage assignment and breach of good faith and fair dealing related to the Administrative Order; and (iii) violations of SCUTPA, based on violations of the Administrative Order, RESPA, and the Attorney Preference Statute.  *Id.* at 5–11.  The appendix to the Response contains approximately 360 pages consisting primarily of pleadings and orders from the State Court Foreclosure Action.

**The Reply**

The Claim and Response essentially identify three causes of action: (i) Civil Compensatory Contempt, based on violation of the Administrative Order, (ii) Breach of Contract, based upon failure to notify Claimants of a mortgage assignment and breach of good faith and fair dealing related to the Administrative Order, and (iii) claims under SCUTPA, for violations of the Administrative Order, RESPA, and the Attorney Preference Statute.

In her Reply, the Consumer Claims Trustee asserts that since both the State Court and the Court of Appeals found that Ditech complied with the Administrative Order, the claim for Civil

13

Compensatory Contempt and portions of the Breach of Contract Claim and SCUTPA Claim relating to the Administrative Order are barred by the doctrine of collateral estoppel. Reply ¶ 40. She also asserts that to the extent that the Court of Appeals order affirms only the non-stayed portions of the Counterclaim for Civil Compensatory Contempt (and does not address monetary compensation), the factual finding that Ditech complied with the Administrative Order applies equally to the Claimants' request for monetary relief through the bankruptcy process. *Id.* ¶ 41. Finally, she asserts that the Claimants have failed to plead sufficient facts to support the elements of the remaining claims for breach of contract and violations of SCUTPA. *Id.* ¶ 42.

**<u>The Surreply</u>**

The Claimants assert that pursuant to the Stipulation of Dismissal, they split their claims against Ditech between this Court—which will adjudicate the Monetary Counterclaims—and the Court of Appeals—that adjudicated the Nonmonetary Counterclaims. Surreply at 1. They argue that collateral estoppel does not apply because South Carolina follows section 26 of the Restatement (Second) of Judgments (Am. L. Inst. 1982) (the "Restatement"), which they say provides that collateral estoppel will not apply when the parties have agreed to split the claim, as here. Surreply at 1. Moreover, the Claimants argue that even if the Counterclaims were not split, they are not barred by collateral estoppel because the issues in the Claim were not actually litigated, directly determined, or even necessary to support the prior judgment. *Id.* at 2. They contend that the issue before the Court of Appeals was Civil Compensatory Contempt for nonmonetary damages, while the issue before this Court is Civil Compensatory Contempt for monetary damages. Surreply at 2. They label the Civil Compensatory Contempt issue before the Court of Appeals as an "all or nothing" proposition. *Id.* They say that, in contrast, in resolving the issue this Court can apportion damages if the Debtors were at fault. *Id.* They argue that since collateral

14

estoppel is not applicable, the Court is free to exercise its own judgment in reviewing the Claimants' claims, particularly claims for bad faith by the Debtors in the loss mitigation process. *Id.*

## The Estimation Motion

On March 23, 2023, the Consumer Claims Trustee filed a motion to estimate certain claims (the "Estimation Motion"),[34] which sought to estimate the Claim, among others, for purposes of setting a reserve. The Consumer Claims Trustee seeks to estimate the Claim at $300,000 and classify the Claim as a non-363(o) claim, as defined in the Third Amended Plan. Estimation Motion, Ex. A, at 4. The Claimants responded to the Estimation Motion (the "Response to Estimation Motion"),[35] arguing that they were entitled to an increase in amount owed since the filing of the Claim and therefore entitled to a reserve in the amount of $400,000. Response to Estimation Motion at 5. They also argue that the Claim should be accorded administrative expense priority. *Id.* at 6. In the Reply, the Consumer Claims Trustee argues that the Court must address the Estimation Motion only if it overrules her Objection to the Claim. Reply ¶ 11.

## Applicable Legal Standards

Under section 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The filing of a proof of claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). Section 502(b) prescribes nine categories of claims that will be disallowed, including that "such claim is unenforceable against the debtor and property

---

[34]    *Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4650.

[35]    *Response in Opposition of Kevin G. Snyder and the Estate of Mary Snyder to the Consumer Claim Trustee's Motion to Classify Certain Proofs of Claim,* ECF No. 4686.

of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."    11 U.S.C. § 502(b)(1).    If an objection filed pursuant to section 502(b)(1) refutes at least one of the claim's essential allegations, the claimant has the burden to demonstrate the validity of the claim. *See, e.g.*, *Rozier v. Rescap Borrower Claims Tr. (In re Residential Cap., LLC)*, No. 15-cv-3248, 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 11-cv-8444, 2012 WL 1886755, at *3 (S.D.N.Y. May 12, 2012).

Under Rule 12(b)(6), a claim may be dismissed if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In applying Rule 12(b)(6) to a claim, the court assesses the sufficiency of the facts alleged in support of the claim in light of the pleading requirements under Rule 8(a) of the Federal Rules of Civil Procedure.[36]  Rule 8(a)(2) states that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To meet that standard, the claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *accord Twombly*, 550 U.S. at 570.  To satisfy Rule 12(b)(6), the "pleadings must create the possibility of a right to relief that is more than speculative."  *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).  In considering whether that standard is met for a particular claim, the court must assume the truth of all material facts alleged in support of the claim and draw all reasonable inferences in the claimant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493

---

[36]    Rule 8 is incorporated herein pursuant to Bankruptcy Rule 7008.

F.3d 87, 98 (2d Cir. 2007). However, the court "need not accord 'legal conclusions, deductions or opinions that are couched as factual allegations . . . a presumption of truthfulness.'" *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 591 (S.D.N.Y. 2008) (quoting *Cal. Pub. Empls.' Ret. Sys. v. N.Y. Stock Exch., Inc. (In re NYSE Specialists Sec. Litig.)*, 503 F.3d 89, 95 (2d Cir. 2007)). In short, "[i]n ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the [claim], not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)).

## Analysis

### Whether Collateral Estoppel Bars Claims Relating to the Administrative Order

Collateral estoppel, also known as issue preclusion, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Schiro v. Farley*, 510 U.S. 222, 232 (1994) (quoting *Ashe v. Swenson,* 397 U.S. 436, 443 (1970)). A court may dismiss a claim on collateral estoppel grounds on a Rule 12(b)(6) motion. *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 505 (S.D.N.Y. 2016); *see also Fallica v. Bank of Am.*, 22-cv-1297, 2023 WL 4824434, at * 11 (E.D.N.Y. Jun. 1, 2023) ("The doctrine of collateral estoppel is also properly reviewed under Rule 12(b)(6)."). "To determine the effect of a state court judgment, federal courts . . . are required to apply the preclusion law of the rendering state." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.").

17

The Consumer Claims Trustee correctly asserts that an allegation that is central to the Claim is that Ditech and its predecessor committed Civil Compensatory Contempt by violating the Administrative Order.  Reply ¶ 43.  She asserts that the Claimants previously advanced that issue and that it was rejected by both the State Court and the Court of Appeals.  *Id.*  The Court credits that contention.

The Claimants first raised the Civil Compensatory Contempt Counterclaim in the Answer and Counterclaims that they filed in the State Court Foreclosure Action.  There, the Claimants alleged that the Debtors violated the Administrative Order by:

(1) failing to make good faith efforts to evaluate Claimants for foreclosure intervention;

(2) failing to give Claimants a full and fair opportunity to submit additional information in support of their eligibility for foreclosure intervention;

(3) frustrating Claimants' ability to comply with foreclosure intervention or loss mitigation programs; and

(4) negotiating in bad faith.

Answer and Counterclaims ¶ 21.  Additionally, in support of their July 11, 2019, summary judgment motion, the Claimants contended that Ditech violated the Administrative Order by:

(1) failing to send correspondence to the right address;

(2) failing to respond to foreclosure intervention requests; and

(3) failing to communicate with Claimants through counsel.

Claimants' Summary Judgment Motion at 2–4.

In addressing the Claimants' Summary Judgment Motion, the Master-in-Equity directly determined the issue of Ditech's compliance with the Administrative Order.  Summary Judgment Order ¶ 9.  It concluded that Ditech's predecessors-in-interest timely provided foreclosure intervention notices and filed a Certificate of Compliance with the court, noting that Claimants

18

had been served with the requisite notice but failed to remit loss mitigation documents. *Id.* ¶ 3.

Moreover, it found that after taking over the servicing of the loan in 2013, Ditech offered the

Snyders a loan modification in 2014, which they rejected. *Id.* ¶¶ 5–6. In 2017, the Snyders were

again evaluated for a loan modification, but they were deemed ineligible. *Id.* ¶ 7. The Snyders

appealed from the determination of ineligibility and were again denied. *Id.* The State Court found

that Ditech acted in good faith and complied with the provisions of the Administrative Order. *Id.*

¶ 9. It further noted:

> To the extent that Defendants have pled a cause of action for Civil Compensatory
> Contempt, there is no disputed issue of material fact with respect to Plaintiff's
> compliance with the terms of the Administrative Order, and summary judgment is
> proper as to the non-stayed portions of Defendants' claim for Civil Compensatory
> Contempt.

*Id.* ¶ 10.

Further, in issuing the Foreclosure Judgment in April 2019, the Master-in-Equity made

express findings of fact and conclusions of law that confirmed that Ditech complied with the

Administrative Order. *See* Foreclosure Judgment, Findings ¶ 2 ("The Court has determined that

Plaintiff has complied with the Administrative Order of the Supreme Court . . . ."); Conclusions of

Law ¶ 4 ("Plaintiff has met the requirements of the Administrative Order of the South Carolina

Supreme Court (2011-05-02-01) . . . and (2009-05-22-01) . . . ."). Those findings by the State

Court were necessary to support the prior judgment in that the Court was able to proceed with the

foreclosure.

The Court of Appeals affirmed, finding that the Master-in-Equity did not err in making a

finding that Ditech complied with the Administrative Order. Appellate Decision at 9. "Snyder

argues the record contained a scintilla of evidence showing Ditech and its predecessors violated

the Administrative Order by failing to act in good faith during the foreclosure intervention process.

We disagree." *Id.* at 7.  The Court of Appeals further held that:

> [T]he master did not err in granting summary judgment as to this issue.  Viewing the facts in the light most favorable to Snyder, we conclude there was no genuine issue as to any material fact concerning whether Ditech complied with the Administrative Order.  Snyder supplied no evidence to show Ditech or its predecessors failed to comply with the Administrative Order.  Rather, the record shows BAC filed and served upon the Snyders a notice of foreclosure intervention and when the Snyders failed to respond to the notice, BAC filed and served the Snyders with a notice of denial of loan modification.  These actions complied with the Administrative Order. . . .  Subsequently, Snyder's counsel contacted Green Tree in June 2013, inquiring about the Snyders' options for foreclosure modification or intervention.  The foreclosure intervention process continued for four years, even after Snyder rejected Ditech's modification terms in March 2015.  We acknowledge evidence showed Ditech and its predecessors sent correspondence to the wrong address on five occasions during this period and directly contacted Snyder on one occasion after being notified he was represented by counsel.  However, considering Snyder's counsel's three changes of address, Green Tree's merger with Ditech, and the significant amount of correspondence exchanged between the parties during this period, we find the evidence does not demonstrate Ditech's actions constituted a failure to act in good faith during the foreclosure intervention process.

*Id.* at 9–10.  These findings by the Court of Appeals and the prior findings of the State Court were necessary to support their respective decisions and clearly demonstrate that the Claimants had a fair and full opportunity to litigate the issues surrounding the Administrative Order.

Under South Carolina law, the party asserting collateral estoppel, or "issue preclusion", must demonstrate that the issue was "(1) actually litigated in the prior action; (2) directly determined in the prior action; and (3) necessary to support the prior judgment." *Carolina Renewal v. Dept. of Trans.*, 684 S.E. 2d 779, 782 (S.C. Ct. App. 2009); *see also Zurcher v. Bilton*, 666 S.E. 2d 224, 226 (S.C. 2008) ("Under the doctrine of collateral estoppel, also known as issue preclusion, when an issue has been actually litigated and determined by a valid and final judgment, the determination is conclusive in a subsequent action whether on the same or a different claim.").

Based on the foregoing, it is clear that, in resolving the non-stayed Civil Compensatory Contempt claims[37] in the State Court and Court of Appeals, the Claimants actually litigated the issue of whether Ditech and its predecessors complied with the Administrative Order, and that those courts directly determined that it had done so.  Both courts rejected the Claimants' assertion that Ditech and its predecessors violated the Administrative Order.  Ditech had a full and fair opportunity to raise the issue in those courts, and it was plainly necessary for the courts to resolve that issue in resolving the motions for summary judgment.  Accordingly, the Claimants are barred by application of the doctrine of collateral estoppel from asserting claims for non-monetary relief based on violations of the Administrative Order.

In the Stipulation of Dismissal, Claimants and Debtors agreed to dismiss, with prejudice, all claims for monetary recovery, including attorneys' fees, for Claimants' claims for Civil Compensatory Contempt.  *See* Stipulation of Dismissal at 1.  The parties executed the stipulation after Claimants filed their Claim in the Chapter 11 Cases but before the Court of Appeals issued the Appellate Decision.  The stipulation contains the following carve-out provision:

> This stipulation is made without prejudice to, and specifically preserving, Defendant's claim in the pending bankruptcy (Number 0000020042, amended by Number 0000020043) and Defendant's appeal of non-monetary claims that are pending before the South Carolina Court of Appeals (Number 2019-000575).

*Id.* at 2.

As discussed above, in its decision, the Court of Appeals expressly affirmed the State Court's judgment as to the non-stayed portions of the Civil Compensatory Contempt Claims.  The Consumer Claims Trustee asserts, and the Court agrees, that by application of the doctrine of

---

[37] "Defendants' Counterclaim for Civil Compensatory Contempt is stayed to the extent it seeks a monetary award, but it is not stayed to the extent it seeks only to defend, unwind, enjoin or preclude the foreclosure, and does not seek a monetary award." Summary Judgment Order at 3.

nonmutual collateral estoppel, the Appellate Decision bars Claimants from pursuing the monetary damage claims in this bankruptcy claims process. Although the Court of Appeals decision does not directly address any potential monetary claims Claimants might have had against Debtors for violations of the Administrative Order, the Court of Appeals found that the Debtors fully complied with the requirements of the Administrative Order. It follows that Claimants do not and cannot demonstrate that they are entitled to compensatory relief for violations of the Administrative Order that did not occur. "A party may assert nonmutual collateral estoppel to prevent relitigation of a previously litigated issue unless the party sought to be precluded did not have a fair and full opportunity to litigate the issue in the first proceeding, or unless other circumstances justify providing the party an opportunity to relitigate the issue." *Carrigg v. Cannon*, 552 S.E. 2d 767, 770 (S.C. Ct. App. 2001) (quoting *Wade v. Berkeley Cnty.*, 498 S.E.2d 684, 687 (S.C. Ct. App. 1998)). The Claimants had a full and fair opportunity to litigate the issue of Ditech's compliance with the Administrative Order. They raised the issue twice in the State Court action and lost. They lost again on the same issue on appeal and were denied a writ of certiorari (on the same issue) by the South Carolina Supreme Court. The Claimants cannot demonstrate that other circumstances exist that would justify an opportunity to relitigate the issue in this bankruptcy claims process.

In concluding that the Claimants are collaterally estopped from asserting claims based on alleged violations of the Administrative Order, the Court finds no merit to Claimants' contention that collateral estoppel does not bar their claims because, as applied by the Supreme Court of South Carolina, section 26(a)(1) of the Restatement provides that collateral estoppel does not apply when the parties have agreed to "split" the claim, as here. Surreply at 1 (citing Restatement § 26(1)(a); *Judy v. Judy*, 712 S.E.2d 408 (S.C. 2011)). Restatement § 26(a)(1) and *Judy* are inapposite because

they address application of res judicata to split claims, not collateral estoppel, which is the doctrine at issue herein.[38]

---

[38]  As a general rule, "[w]hen a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement § 24(1); *see also Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000) ("[T]he well-established rule [is] that a plaintiff cannot avoid the effects of res judicata by 'splitting' his claim into various suits, based on different legal theories (with different evidence 'necessary' to each suit)."). The Restatement provides an exception to that general rule. As relevant, it states:

> (1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:
>
>> (a) The parties have agreed in terms or in effect that the plaintiff may split the claim, or the defendant acquiesced therein . . .

Restatement § 26(1)(a). "A main purpose of the general rule [against claim splitting] is to protect the defendant from being harassed by repetitive actions based on the same claim. The rule is thus not applicable where the defendant consents, in express words or otherwise, to the splitting of the claim." *Id.* § 26 cmt. a.

In arguing that section 26(1)(a) bars application of collateral estoppel herein, the Claimants misplace their reliance on *Judy*. In that case, two brothers, James Judy ("James") and Ronnie Judy ("Ronnie"), inherited three parcels of property that were to be distributed equally among them. *Judy*, 712 S.E.2d at 410. They agreed that James would take possession of that parcel that contained a man-made pond, including a dam. *Id.* In May 2003, someone damaged the dam and, in doing so, destroyed the pond. *Id.* The evidence pointed to Ronnie. Later that year, James petitioned the probate court to officially partition the property. *Id.* He initially requested that the court consider Ronnie's alleged destruction of the pond, but he withdrew that claim prior to the court's decision. *Id.* The probate court partitioned the property without considering Ronnie's alleged destruction of the pond. *Id.* Two years later, James filed an action for waste in the state circuit court, alleging that Ronnie destroyed the pond. *Id.* Ronnie moved to dismiss the allegations of waste on the grounds that this lawsuit was barred by the doctrines of collateral estoppel and res judicata, among others. *Id.* at 411. The court denied Ronnie's motion to dismiss, and a jury found in favor of James. On appeal, the state Court of Appeals affirmed the trial court's decision not to dismiss the action on the basis of collateral estoppel, but the appellate court found that the action for waste was barred by application of res judicata. *Id.*

On appeal to the South Carolina Supreme Court, James argued that the Court of Appeals erred in finding that his action for waste was barred by application of res judicata. *Id.* He contended that the subject matter of his waste action was not the same as the partition claim, and therefore the requisite elements of res judicata were not satisfied. *Id.* The South Carolina Supreme Court held that res judicata applied because James should have brought the action for waste with the initial action for partitioning the estate in probate court, or alternatively by bringing both actions together in circuit court. *See id.* at 412–15. In dissent, Chief Justice Toal argued that James's action for waste was excepted from res judicata under Restatement (Second) of Judgments § 26(a)(1), reasoning that Ronnie acquiesced to the splitting of the waste claim from the partition claim, and therefore, he was barred from raising a defense of res judicata. *Id.* at 415–16 ("Ronnie cannot invoke the doctrine of res judicata as protection against a tort action in circuit court, aimed a righting the wrong he allegedly committed, when he allowed that claim to be ignored during the action for partition in probate court.").

The Claimants provide no support for their contention that the Court should limit application of collateral estoppel in this case.  The Court sustains the Objection to the Claimants' claims that are predicated on Ditech's alleged violations of the Administrative Order.

**Whether the Claimants State a Claim for Breach of Contract**

The elements for a breach of contract claim under South Carolina law are "the existence of a contract, its breach, and damages caused by such breach."  *Hotel & Motel Holdings, LLC v. BJC Enters., LLC*, 780 S.E.2d 263, (S.C. Ct. App. 2015) (quoting *S. Glass & Plastics Co. v. Kemper*, 732 S.E.2d 205, 209 (S.C. Ct. App. 2012)).  "The general rule is that for a breach of contract the [breaching party] is liable for whatever damages follow as a natural consequence and proximate result of such breach".  *Id.* (alteration in original) (quoting *Kemper*, 732 S.E.2d at 209).

The Answer and Counterclaims forms the basis for the Claim.  In it, the Claimants argue that Debtors breached the Mortgage Loan by (i) failing to notify the borrower(s) of the assignment of the Mortgage Loan and (ii) violating the implied covenant of good faith and fair dealing by failing to comply with the Administrative Order.  Answer and Counterclaims at 5.  However, the Claimants fail to state a claim for breach of contract.  First,  as previously discussed, the Claimants are collaterally estopped from pursuing claims predicated on Ditech's alleged breach of the Administrative Order.  Moreover, in support of the Claim, they do not refer to any specific assignment or explain why any alleged failure of notification would be a breach of the mortgage contract.  This claim is not pleaded with sufficient particularity.  Moreover, the assignment claim is not asserted against Ditech.  In the Response, Claimants assert a counterclaim for breach of contract, "based on Ditech's predecessor's failure to notify Snyder of an assignment of the mortgage."  Response at 17.  Although they cite to case law regarding contract damages, they do not explain how they were damaged by the alleged failure of Ditech's predecessor to provide notice

24

of the assignment.  No further information about the assignment or Debtor's contractual obligation

to provide notice of it is discernible from Claimants' pleadings.

Accordingly, the Court sustains the Objection to the Breach of Contract Claim.

## Whether the Claimants State a Claim for Violations of the South Carolina Unfair Trade Practices Act

The Claimants allege that the Debtors violated SCUTPA by (i) violating the Administrative

Order; (ii) violating RESPA; and (iii) running afoul of the Attorney Preference Statute.  Answer

and Counterclaims at 6.  To maintain a private cause of action under SCUTPA, "a plaintiff must

establish: (1) the defendant engaged in an unlawful trade practice; (2) the plaintiff suffered actual,

ascertainable damages as a result of the defendant's use of the unlawful trade practice; and (3) the

unlawful trade practice engaged in by the defendant had an adverse impact on the public interest."

*Bessinger v. Food Lion, Inc*, 305 F. Supp. 2d 574, 579 (D.S.C. 2003).  "To be actionable under

SCUTPA, an unfair or deceptive practice or act must adversely affect the public interest."  *In re

Hughes*, 627 B.R. 327, 337 (Bankr. D.S.C. 2021).  The adverse effect on the public interest must

be proved by specific facts.  *Jefferies v. Phillips*, 451 S.E.2d 21, 23 (S.C. Ct. App. 1994)

("[C]onduct which only affects the parties to the transaction provides no basis for a [SCUPTA]

claim.").  An impact on the public interest may be shown if the acts or practices have the potential

for repetition.  *Singleton v. Stokes Motors, Inc.*, 595 S.E.2d 461, 466 (S.C. 2004).  The potential

for repetition may be shown in either of two ways: (1) by showing the same kind of actions

occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by

showing the company's procedures created a potential for repetition of the unfair and deceptive

acts.  *Id.*  The Claimants make broad allegations of violations of RESPA and the Attorney

Preference Statute; however, the Claimants do not provide any evidence that these acts are

repeatable, merely asserting their own claims against the Debtors, and therefore, the SCUTPA

claim must fail as a matter of law. *In re Hughes*, 627 B.R. at 338 ("Plaintiffs have not provided any evidence in the record demonstrating that any of the alleged conduct has potential for repetition or that the same kind of actions occurred in the past. Accordingly, Plaintiff's SCUTPA claim fails as a matter of law.").

The Court will therefore analyze the allegations of RESPA violations and the Attorney Preference Statute independent from a SCUTPA violation. First, as noted above, any assertion of a violation of the Administrative Order is barred by the doctrine of collateral estoppel. Second, the Claimants merely make conclusory allegations that the Debtors have engaged in violations of RESPA. Response at 10. In the Answer and Counterclaims, the Claimants state only that the Debtors violated RESPA through "its failure to provide a 'Servicing Disclosure Statement' under 12 U.S.C. § 2605(a)." Answer and Counterclaims at 3. This section provides "[e]ach person who makes a federally related mortgage loan shall disclose to each person who applies for the loan, at the time of application for the loan, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding." 12 U.S.C. § 2605(a). Under that statute, Gateway would have been required to provide this notice to the Claimants at the time of their application for the Mortgage Loan. The Claimants have not stated a claim for a violation of RESPA.

Third, under South Carolina law, the Attorney Preference Statute provides:

Whenever the primary purpose of a loan that is secured in whole or in part by a lien on real estate is for a personal, family or household purpose . . . [t]he creditor must ascertain prior to closing the preference of the borrower as to the legal counsel that is employed to represent the debtor in all matters of the transaction relating to the closing of the transaction and . . . the insurance agent to furnish required hazard and flood property insurance in connection with the mortgage and comply with such preference.

S.C. CODE ANN. § 37-10-102(a) (2023). Violations of the statute permit monetary recovery of $1,500 to $7,500. *Id.* § 37-10-105(A). The Claimants allege that the late Ms. Snyder was not given a choice regarding her representation of counsel at the time of closing. Response at 18. The Claimants sought to utilize this defense as a setoff to the Foreclosure Judgment. Answer and Counterclaims at 2. The Master-in-Equity concluded that Ms. Snyder, who was not a co-signor on the Note, was not a borrower within the meaning of the statute and struck the defense. Summary Judgment Order at 3. The Court of Appeals found this defense was moot because Ditech waived its right to a deficiency judgment. Appellate Decision at 12. Like violations of the Administrative Order, any assertion of a violation of the Attorney Preference Statute is barred by collateral estoppel.

The Court finds that the Claimants have not demonstrated facts that allege violations of SCUTPA, RESPA or the Attorney Preference Statute. The Court sustains the Objection to the SCUTPA Claim.

## Whether the Claimants Established the Non-Dischargeability of the Claim

The Claimants have not met their burden of demonstrating that they have stated a claim for relief against Ditech. Moreover, in any event, the Claimants have not established the Claim, even if allowed, is non-dischargeable. They contend that it is non-dischargeable pursuant to section 523(a)(6) of the Bankruptcy Code because the Debtors willfully and maliciously violated the Administrative Order. Claim at 4. However, as noted, the State Court and the Court of Appeals both determined that the Debtors did not violate the Administrative Order, much less violate it willfully or with malice. Further, proceedings to determine the dischargeability of a debt must be

brought through an adversary proceeding.  Fed. R. Bankr. P. 4007, 7001(6).[39]  The Claimants have

conceded that they have not done so.  Response to Estimation Motion at 6.  Finally,

section 523(a)(6) does not apply to corporate debtors.  *See* 11 U.S.C. § 1141(d)(3); *see also In re*

*Voyager Digit. Holdings, Inc*, No. 22-10943, 2022 WL 17343493, at *1 (Bankr. S.D.N.Y. Nov. 30,

2022) ("[C]ourts in this District and in this Circuit have consistently held that as a general matter

section 523(a) is not applicable to corporate debtors.") (collecting cases).

The Claimants have not established that the Claim, if any, is nondischargeable.

## Whether the Claim is Entitled to Administrative Expense Priority

The Claim was filed as an unsecured claim that did not qualify as an Administrative

Expense under 11 U.S.C. §503(b)(9).  Claim at 2.  Neither the Claim nor the Response raises the

issue of reclassifying the Claim.  In the Response to Estimation Motion, however, the Claimants

argue that the claim "must be classified as an administrative expense based on the misconduct of

the debtor."  Response to Estimation Motion at 6.

Section 503 of the Bankruptcy Code establishes an administrative expense priority for

certain enumerated categories of estate expenses.  The Claimants bear the burden of establishing

that the Claim is entitled to administrative priority status under the Bankruptcy Code.  *See, e.g.*, *In*

*re Bethlehem Steel Corp.*, 479 F.3d 167, 172 (2d Cir. 2007) ("The burden of proving entitlement

to priority payment . . . rests with the party requesting it" (quoting *Woburn Assocs. v. Kahn (In re*

*Hemingway Transp., Inc.)*, 954 F.2d 1, 5 (1st Cir. 1992))); *In re Drexel Burnham Lambert Grp.*

*Inc.*, 134 B.R. 482, 489 (S.D.N.Y. 1991) ("The burden of proving entitlement to an administrative

expense is on the claimant and the measure of proof is a preponderance of the evidence.").  They

---

[39]   Claimants cite to various cases for the proposition that courts will not elevate form over function if doing so
prejudices a party in a bankruptcy matter.  Response to Estimation Motion at 6.  But those cases do not involve
dischargeability claims, which are governed by specific Rules, and so do not apply here.

have failed to meet that burden. The Court finds that the Claimants have not demonstrated that the

Claim, if any, is entitled to administrative priority status under the Bankruptcy Code.

### Conclusion

Based on the foregoing, the Court sustains the Objection and disallows and expunges the

Claim.[40]

IT IS SO ORDERED.


Dated: New York, New York
      November 7, 2023


                               /s/ *James L. Garrity, Jr.*
                               Hon. James L. Garrity, Jr.
                               U.S. Bankruptcy Judge

---

[40]    Having disallowed and expunged the Claim, the Court need not, and will not, address the Estimation Motion.