| | | |
|---|---|---|
| **UNITED STATES BANKRUPTCY COURT** <br> **SOUTHERN DISTRICT OF NEW YORK** | | **NOT FOR PUBLICATION** |
| ------------------------------------------------------- x | | |
| In re: | : | |
| | : | Case No. 19-10412 (JLG) |
| Ditech Holding Corporation, *et al.*, | : | Chapter 11 |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| ------------------------------------------------------- x | | |

## MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS TRUSTEE'S SIXTH OMNIBUS OBJECTION WITH RESPECT TO THE PROOF OF CLAIM FILED BY DUKADIN RISTOSKI

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10022
By:    Richard Levin

DUKADIN RISTOSKI[2]
*Appearing Pro Se*
5975 Moon Garden Street
Las Vegas, Nevada 89148

---

[1]    On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate") (Case No. 19-10412 (JLG) remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573

[2]    Mr. Ristoski is acting pro se herein and, in that capacity, filed the Claim and Response to the Objection. As set forth below, Mr. Ristoski did not appear at the Sufficiency Hearing. He did not request the Court to adjourn the hearing or otherwise seek an accommodation from the Court with respect to the hearing.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction[3]

Dukadin Ristoski ("Claimant") is acting pro se in this contested matter. On June 2, 2019, Claimant filed Proof of Claim 23314 (the "Claim"), asserting an unliquidated unsecured claim in the sum of $216,495.25 against Ditech Financial, LLC ("Ditech"). Claim at 1–2. On March 13, 2020, the Consumer Claims Trustee filed her Sixth Omnibus Objection (the "Objection")[4] seeking an order disallowing insufficiently supported claims, including the Claim. Claimant filed a response to the Objection on May 16, 2020 (the "Response").[5] In it, he reduced the Claim to the sum of $33,197.82, and submitted supporting documents. On November 9, 2023, the Consumer Claims Trustee replied to the Response (the "Reply").[6]

Pursuant to the Claims Procedures Order,[7] the filing of the Response caused an adjournment of the Objection so that the Court could conduct a Sufficiency Hearing on the Claim. The legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[8] Claims Procedures Order ¶ 3(iv)(a).

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[4] *Consumer Claims Trustee's Sixth Omnibus Objection to Proofs of Claim (Insufficient Documentation Unsecured Consumer Creditor Claims)*, ECF No. 1967.

[5] *Responding to Consumer Claim Trustee's Sixth Omnibus Objection to Proofs of Claim*, ECF No. 2535. The Response does not have internal page numbers and references herein to the Response are to the PDF page number(s).

[6] *Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee's Sixth Omnibus Objection with Respect to the Claim of Dukadin Ristoski (23314)*, ECF No. 4917.

[7] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

[8] Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In filing the Objection, the Consumer Claims Trustee and Plan Administrator initiated a contested matter. *See Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs., Inc.)*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter"). Bankruptcy Rule 9014 governs contested matters. The rule does not explicitly provide for the application of Bankruptcy Rule

2

On November 30, 2023, the Court conducted a Sufficiency Hearing on the Claim. The Consumer Claims Trustee, through counsel appeared at the hearing. Claimant did not appear at the hearing. The Court did not hear argument on the Objection.

The Court has reviewed the Claim, Objection, Response, and Reply, including all documents submitted in support thereof. For the reasons set forth herein, the Court sustains the Objection and disallows the Claim.

## Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

**The Loan**

On or around October 12, 2007, Claimant executed a promissory note in favor of Countrywide Bank, FSB for $266,000.00 (the "Note"),[9] which was secured by a Deed of Trust (the "Mortgage,"[10] and together with the Note, the "Mortgage Loan")[11] on the property at 5975

---

7012. However, Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply." Fed. R. Bankr. P. 9014. Here, the Court did so in the Claims Procedures Order.

[9]    A copy of the Note is annexed as Exhibit A to the Reply.

[10]   A copy of the Mortgage is annexed as Exhibit B to the Reply.

[11]   The Court takes judicial notice of the Note and Mortgage as they are integral to the Claim and Claimant had notice of their contents. *See Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000) (consulting external documents in considering a motion to dismiss where plaintiff had notice of the documents' information and the documents were integral to the claims); *Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (in contract action, court can take judicial notice of underlying contract as a document 'integral to the complaint'); *Ng v. HSBC Mortg. Corp.*, 2010 WL 889256, at *9 n. 13 (E.D.N.Y. Mar. 10 2010) (taking judicial notice of settlement statements in mortgage dispute "because they are integral to the complaint . . . and because the plaintiff had notice of the information contained therein, and in fact, signed them")).

Moon Garden St., Las Vegas, NV 89148-4529 (the "Property"). In 2011, Claimant entered a Home Affordable Modification Program ("HAMP") agreement with BAC Loans Servicing, LP which modified the Mortgage Loan (the "Modification").[12] Under the Modification, the principal balance of the Mortgage Loan increased to $276,391.52, $46,450.12 of which was deferred, and the term of the loan was extended to September 1, 2049. Modification at 2. The Modification altered the Mortgage Loan's interest rate. *Id.* It set a reduced interest rate of 2% as of September 1, 2009, with rate increases to 3% as of September 1, 2014; 4% as of September 1, 2015; 5% as of September 1, 2016; and 5.125% as of September 1, 2017. *Id.* Service of the Mortgage Loan was subsequently transferred to Ditech's predecessor, Green Tree Financial LLC.

**The Chapter 11 Cases**

On February 11, 2019, Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates, including Ditech (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[13] Thereafter, the Court twice extended the General Bar Date for consumer borrowers, ultimately setting the date as June 3, 2019.[14]

---

[12] A copy of the Modification is annexed as Exhibit C to the Reply.

[13] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[14] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

4

On September 26, 2019, the Debtors confirmed their Third Amended Plan,[15] and on September 30, 2019, that plan became effective.[16] The Consumer Claims Trustee is a fiduciary appointed under the Third Amended Plan who, in accordance with the plan, is responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims. *See* Third Amended Plan art. I, § 1.41. The Consumer Claims Trustee has the exclusive authority to object to Consumer Creditor Claims. *See id.* art. VII, § 7.1.

**The Claims Procedures Order**

On November 19, 2019, the Court entered the Claims Procedures Order. Under that order, the Consumer Claims Trustee is authorized to file Omnibus Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order. *See* Claims Procedures Order ¶ 2(i)(a)–(h). A properly filed and served response to an objection gives rise to a "Contested Claim" which will be resolved at a Claim Hearing. *Id.* ¶ 3(iv). The Consumer Claims Trustee has the option of scheduling the Claim Hearing as either a "Merits Hearing" or a "Sufficiency Hearing." *Id.* ¶ 3(iv)(a), (b). A "Merits Hearing" is an evidentiary hearing on the merits of a Contested Claim. A "Sufficiency Hearing" is a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. The legal standard of review that the Court applies at a Sufficiency Hearing is equivalent to the standard applied by the Court on a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *See id.* ¶ 3(iv)(a).

---

[15] *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1326.

[16] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

**The Claim**

On June 2, 2019, Claimant filed the Claim as an unliquidated unsecured claim in the sum of $216,495.25. Claim at 1-2. Claimant filed the Claim on the Official Form 410, Proof of Claim. On the form, Claimant indicates that the basis of the Claim is "Customer Claims." *Id.* He did not annex any documentary evidence in support of the Claim.

**The Objection**

The Objection seeks to disallow the Claim on the grounds that it "contain[s] insufficient information and/or documentation to establish [its] underlying merits." Objection ¶ 4; Objection, Ex. A at 1. The Consumer Claims Trustee contends the Court should disallow the Claim in its entirety to "avoid the possibility that [Claimant] receive[s] [an] improper recover[y] against the Trust, and to ensure that the Trust's beneficiaries are not prejudiced by such improper recover[y] . . . ". Objection ¶ 9.

**The Response**

Claimant filed the Claim in the sum of $216,495.25. However, in his Response, Claimant seeks the allowance of the Claim in the reduced amount of $33,197.82. Response at 1. In support of the Claim, he purports to include "proof/ evidence to support [his] claim for damages caused by Ditech Holding Corporation since 2016 and ongoing consequences [he is] facing due to damages." *Id.* Claimant summarizes the elements of the $33,197.82 Claim, as follows:

(i) Overcharge of Private Mortgage Insurance ("PMI"): $4,333.82.

(ii) Interest rate increases: $3,564

(iii) Damages to Claimant's credit report: $1,300

(iv) Loss of time (at $300 per hour): $24,000

*Id.*

6

**The Reply**

In the Reply, the Consumer Claims Trustee argues that neither the Claim nor the Response satisfy the minimum pleading requirements under Fed. R. Civ. P. 8(a) ("Rule 8(a)") or state a cause of action upon which relief can be granted as required by Rule 12(b)(6). Reply at 5–7.

**The Estimation Motion**

On March 23, 2023, the Consumer Claims Trustee filed a motion to estimate the Claim in the sum of $216,495.25, for purposes of setting a reserve, and to classify it as a non-363(o) Claim, as that term is defined in the Third Amended Plan (the "Estimation Motion").[17] Estimation Motion, Ex. A, at 3. Claimant did not respond to the Estimation Motion. On May 9, 2023, the Court granted the motion.[18]

<h3 style="text-align:center">Applicable Legal Principles</h3>

Under section 502(a) of the Bankruptcy Code, a "claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The filing of a proof of claim executed and filed in accordance with the Bankruptcy Rules constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). Section 502(b) prescribes nine categories of claims that will be disallowed, including that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). If an objection filed pursuant to section 502(b)(1) refutes at least one of the claim's essential allegations, the claimant has the burden to demonstrate the validity of the claim. *See,*

---

[17] *Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4650.

[18] *Order Granting Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4733.

*e.g.*, *Rozier v. Rescap Borrower Claims Tr. (In re Residential Cap., LLC)*, No. 15-cv-3248, 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 11-cv-8444, 2012 WL 1886755, at *3 (S.D.N.Y. May 12, 2012).

In her Reply, the Consumer Claims Trustee seeks to disallow and expunge the Claim because it does not satisfy the pleading threshold of Rule 8(a) and does not state a claim upon which relief can be granted as required by Rule 12(b)(6). In assessing the merits of the Objection, the Court must consider the sufficiency of the allegations in support of the Claim in light of the pleading requirements established by Rules 8(a) and 12(b)(6) and determine whether Claimant has stated a claim for relief.

The function of the pleading "is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Rule 8(a) mandates that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, to meet that standard, a pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8(a) "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "When a complaint does not comply with the requirement that it be short and plain, the court has the power . . . in response to a motion by the defendant . . . to dismiss the complaint." *Salahuddin*, 861 F.2d at 42. Under Rule 8(a), a court may dismiss a complaint that lacks sufficient details. *Samuel v. Bellevue Hosp. Ctr.*, No. 07-cv-6321, 2008 WL 3895575, at *3–4 (S.D.N.Y. Aug. 22, 2008) (dismissing claims pleaded with insufficient detail pursuant to Rule 8(a)); *Jaffe v. Cap. One Bank*, No. 09-cv-4106, 2010 WL 691639, at *5 (S.D.N.Y. Mar. 1, 2010) (finding complaint did

8

not meet Rule 8(a) pleading standards where it presented "unadorned, the-defendant-unlawfully-harmed-me accusation[s]").

Under Rule 12(b)(6), a claim may be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To satisfy Rule 12(b)(6), the claim "must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). In considering whether that standard is met for a particular claim, the Court must assume the truth of all material facts alleged in support of the claim and draw all reasonable inferences in the claimant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, the Court "need not accord 'legal conclusions, deductions or opinions that are couched as factual allegations . . . a presumption of truthfulness.'" *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 591 (S.D.N.Y. 2008) (quoting *Cal. Pub. Empls.' Ret. Sys. v. N.Y. Stock Exch., Inc. (In re NYSE Specialists Sec. Litig.)*, 503 F.3d 89, 95 (2d Cir. 2007)). In short, "[i]n ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the [claim], not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)).

Where a claimant is proceeding pro se, the Court will construe the claim liberally, but the claim must still be supported by specific and detailed factual allegations that provide a fair understanding for the basis of the claim and the legal grounds for recovery against a debtor. *Kimber v. GMAC Mortg., LLC (In re Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (citing *Iwachiw v. N.Y.C. Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005) (summary order)); *see also McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156–57 (2d Cir. 2017) (discussing the policy considerations undergirding liberal construction of pro se litigants' filings).

9

**Analysis**

In his Response, Claimant purports to assert an unsecured claim against Ditech, in the sum of $33,197.82, predicated upon Claimant's "loss of time" ($24,000) and Ditech's alleged (i) overcharges of PMI ($4,333.82), (ii) unauthorized interest increases under the Mortgage Loan ($3,564), and (iii) damage to Claimant's credit report ($1,300). Response at 1.

**Whether the Claim Satisfies Rule 8 Pleading Requirements**

To satisfy the basic pleading requirements of Rule 8(a), a pleading "does not have to set out in detail the facts on which the claim for relief is based." *Owens v. Suter*, 02-cv-8198, 2003 WL 942554, at *1 (S.D.N.Y. Mar. 7, 2003) (quoting 2 Moore's Federal Practice ¶ 8.04[1], at 8–22 (3d ed. 2002)). However, it "must give the court and the defendant 'fair notice of what [the] plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

Construing the Claim in the most favorable light, Claimant has not alleged facts sufficient to state a claim that is plausible on its face against Ditech for either "damages to his credit report" or for "loss of time." Those portions of the Claim do not satisfy the basic pleading requirements under Rule 8(a), as they plainly do not give Ditech "fair notice" of the claims. The Court sustains the Objection to those claims on the grounds that they fail to satisfy the basic pleading requirements under Rule 8(a). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))); *see also Ahmad v. Day*, 647 F.Supp.3d 272, 280 (S.D.N.Y. 2022) ("[E]ven pro se pleadings must contain factual allegations that 'raise a right to relief above the speculative level.'").

10

Claimant's remaining claims are that Ditech overcharged him for PMI and increased the interest rate on his Mortgage Loan in September 2017, which made the mortgage unaffordable. He does not articulate the legal theories under which he pursues relief for either of these alleged acts by Debtor. The Court considers those matters below.

**Whether Claimant Has Stated a Claim Against Ditech**
**Based on Payments of Private Mortgage Insurance**

In October 2007, Claimant purchased the Property for $280,000 and was required to pay PMI on his fixed-rate mortgage. Response at 6, 9. The Consumer Claims Trustee asserts, and the Court agrees, that in alleging that he has overpaid his PMI, Claimant purports to assert a claim against Ditech under the Homeowners Protection Act of 1998, 12 U.S.C. §§ 4901–4910 (the "HPA"). The HPA establishes rules for (i) automatic termination of PMI, and (ii) borrower cancellation of PMI on home mortgages signed on or after July 29, 1999. It distinguishes between automatic termination and cancellation upon the borrower's request.

HPA defines the automatic "termination date" for a fixed-rate mortgage as—

> the date on which the principal balance of the mortgage, based solely on the initial amortization schedule for that mortgage, and irrespective of the outstanding balance for that mortgage on that date, is first scheduled to reach 78 percent of the original value of the property securing the loan.

12 U.S.C. § 4901(18)(A).[19] Pursuant to the statute, on the "termination date," PMI shall automatically terminate if, on that date, the mortgagor is current on the payments required by the terms of the residential mortgage transaction. *Id*. § 4902(b). Based upon Claimant's amortization schedule, the principal balance for his loan was first scheduled to reach 78% of the original value

---

[19] Claimant purchased the Property for $280,000. Under the HPA, the "original value" of a home is "the lesser of the sales price of the property securing the mortgage, as reflected in the contract, or the appraised value at the time at which the subject residential mortgage transaction was consummated." *Id.* § 4901(12).

11

of the property on February 1, 2019. Reply ¶ 24. Accordingly, Claimant's PMI "termination date" under his fixed-rate Mortgage Loan was February 1, 2019. *Id.*

Under the HPA, the "cancellation date," with respect to a fixed-rate mortgage, is—

(i)   the date on which the principal balance of the mortgage—based solely on the initial amortization schedule for that mortgage, and irrespective of the outstanding balance for that mortgage on that date—is first scheduled to reach 80 percent of the original value of the property securing the loan; or
(ii)  based solely on actual payments, reaches 80 percent of the original value of the property securing the loan

12 U.S.C. § 4901(2)(A). On the "cancellation date," the PMI shall be canceled if the mortgagor:

(1) submits a request in writing to the servicer that cancellation be initiated;

(2) has a good payment history with respect to the residential mortgage;

(3) is current on the payments required by the terms of the residential mortgage transaction; and

(4) has satisfied any requirement of the holder of the mortgage (as of the date of a request under paragraph (1)) for—

(A) evidence . . . that the value of the property securing the mortgage has not declined below the original value of the property; and

(B) certification that the equity of the mortgagor in the residence securing the mortgage is unencumbered by a subordinate lien.

12 U.S.C. § 4902(a).

Under the terms of the Mortgage Loan and pursuant to section 4901(2)(A)(i), Claimant's principal balance was first scheduled to reach 80% of the original value of the property on March 1, 2018. Reply ¶ 27. Thus, pursuant to section 4901(2)(A)(i), the "cancellation date" under the Mortgage Loan was March 1, 2018. *Id.*

Effective October 1, 2009, Claimant executed the Modification. [20] Under the Modification, Claimant's new principal balance of the Note was $276,391.52, with $46,450.12 of it deferred, and Claimant's monthly payments decreased from $1,681.30 to $1,046.58. Note at 1; Modification at 2. The loan term was extended to September 1, 2049. Modification at 2, 6. The Modification caused the cancellation date to change. In executing the Modification, Claimant acknowledged that he understood that "the date on which [he] may request cancelation of [his] mortgage insurance may change as a result of the higher unpaid principal balance." *Id.* at 5.

Where, as in Claimant's case, a loan modification reduced the borrowers monthly mortgage payment by 6% or more, HAMP provided borrowers with an additional incentive to maintain their modified mortgage payments. To that end, if such a borrower made timely monthly payments, they would "earn an annual 'pay for performance' principal balance reduction payment equal to the lesser of: (i) $1,000 ($83.33/month), or (ii) one-half of the reduction in the borrower's annualized monthly payment for each month a timely payment is made." U.S. Dep't of Treasury, Home Affordable Modification Program, Supplemental Directive 09-01 at 24 (Apr. 6, 2009), https://www.lb7.uscourts.gov/documents/18c3888.pdf. Moreover, a borrower could "earn the right to receive a 'pay for performance' principal balance reduction payment for payments made during the first five years following execution of the Agreement provided the loan continues to be in good standing as of the date the payment is made." *Id.*

Section 4902(d) of the HPA addresses the impact of mortgage modification on the termination/ cancellation of PMI. It states as follows:

---

[20] The Modification defines the Modification Effective Date as October 1, 2009, and states "[t]he first modified payment will be due on October 1, 2009." Modification at 2. Claimant signed and acknowledged the Modification on February 2, 2011. *Id.* at 6. A nominee for the lender, BAC Home Loans Servicing, LP, executed the Modification on March 16, 2011. *Id.*

13

> If a mortgagor and mortgagee (or holder of the mortgage) agree to a modification of the terms or conditions of a loan pursuant to a residential mortgage transaction, the cancellation date, termination date, or final termination shall be recalculated to reflect the modified terms and conditions of such loan.

12 U.S.C. § 4902(d).

Based upon the terms of the Modification, Claimant's new automatic termination date was December 1, 2026, the date on which the modified principal balance, including the deferred principal balance, was scheduled to first reach 78% of the original value of the Property. Reply ¶ 31 (citing Modification at 2). The earliest date Claimant could request cancellation of PMI was July 1, 2025. *Id.* The termination and cancellation dates do not include the borrower's incentive payments.

On July 1, 2015, Claimant received a principal payment reduction of $5,000. Response at 17. The incentive payments were not a term of the Modification, but Claimant had earned the right to the incentive payment. Reply ¶ 29. As of July 2015, only $346.90 of the Claimant's monthly payment was applied to the principal amount due under the Mortgage Loan. Response at 15. Since the incentive payment applied toward the principal, Claimant's actual balance was reduced to an amount that, under the terms of the Modification, Claimant was not scheduled to reach until much later. *Id.* ¶ 32.

On August 26, 2016, Ditech sent Claimant a Private Mortgage Insurance Disclosure. It advised Claimant of his right to request PMI on his mortgage be cancelled because, based on the actual payments and the incentive payments he earned, his unpaid principal balance had reached 77.71% of the original value of the Property. Response at 20.

On February 6, 2017, Ditech sent a letter to Claimant, concerned that he had recently missed a mortgage payment. *Id.* at 53.

14

On April 24, 2017, Claimant submitted a request to cancel his PMI. *Id.* at 22. The request did not meet the requirements outlined section 4902(a); it did not have a mailing address and did not include any information pertaining to the property value or certification that the property equity was unencumbered. Reply ¶ 35.

On May 10, 2017, Ditech denied Claimant's request to cancel his PMI because Claimant had "made one or more mortgage payments that was either 30 days or more past due within the past 12-month period or 60 days or more past due within the past 24-month period." Response at 25. Claimant does not dispute that he missed a Mortgage Loan payment. The documents attached to his Response show that he missed a payment in early 2017. *Id.* at 53.

On September 6, 2018, Ditech approved Claimant's request to cancel his PMI. *Id.* at 28.

Claimant has failed to demonstrate how Ditech failed to timely cancel his PMI. The record reflects that Claimant—

Failed to reach the automatic termination date either under the original mortgage terms (February 1, 2019) or the Modification (December 1, 2026); and

Failed to meet the scheduled cancellation date under the original mortgage terms (March 1, 2018) or the Modification (July 1, 2025).

Therefore, the only possible basis upon which Claimant could request cancellation was if his actual payments brought the balance below 80% of the original Property value. Although Claimant achieved that, entitling him to request cancellation, he was still ineligible to receive a cancellation. Ditech could not cancel Claimant's PMI because he had missed a mortgage payment in the 12 months preceding his request.

As such, Claimant has not alleged facts that state a claim for relief under HPA against Ditech.

**Whether Claimant Has Stated a Claim Against Ditech**
**Based on Increased Interest Rates Payable Under the Mortgage**

15

Under the Modification the principal balance of the Mortgage Loan was increased to $276,391.52, with the sum of $46,450.12 deferred, and the loan term extended to September 1, 2049. Modification at 2. The Modification indicates that the Mortgage interest rate was 2% as of September 1, 2009. *Id*. Under the Modification, starting on September 1, 2014, the interest rate would increase by 1% each year until reaching 5% on September 1, 2016. *Id*. The interest rate would then increase to 5.125% as of September 1, 2017, and remain at that rate for the remainder of the loan term. *Id.*

In February 2017, in the wake of the interest rate increase, and in an effort to decrease the interest rate under the Mortgage, Claimant applied for a loan modification. Response at 3, 33–39. On June 5, 2017, after evaluating Claimant for Fannie Mae modification options, Ditech denied Claimant's request because his Mortgage was not more than 60 days delinquent and Claimant was not at risk of imminent default. Response at 56. The Claimant complains that the interest rate on the Mortgage increased in September 2017 from 5% to 5.125%. It is unclear if the Claimant is complaining of the interest rate increase or Ditech's failure to offer him a loan modification following the rate increase. *See* Response at 3–4. In either case, Claimant has not demonstrated grounds for relief against Ditech.

To the extent that Claimant is complaining about the interest rate, he does not state a claim for relief against Ditech because Ditech was charging Claimant the rate called for under the Modification. Claimant fares no better to the extent that he purports to challenge Ditech's decision not to offer him a loan modification. Claimant provides no evidence demonstrating that in February 2017, he was sixty or more days behind on his Mortgage payments, and does not assert facts demonstrating that he was at imminent risk of default. Response at 2, 40. In assessing whether Claimant was facing imminent risk of default, Ditech was required to use Freddie Mac's

16

Imminent Default Indicator.[21]  *See* Fannie Mae Servicing Guide § D2-1-02 (Feb. 15, 2017), https://singlefamily.fanniemae.com/media/20151/display.  Because Claimant was less than 60 days delinquent, he was provided a Borrower Response Package and had an eligible hardship.  *See* Fannie Mae Servicing Guide §§ D2-3.2-05, D2-3.2-08, D2-1-02.  The Servicing Guide makes clear that the servicer must follow the procedures, and Fannie Mae will make the final determination.  "If Fannie Mae declines the borrower's request for a mortgage loan modification . . . and the mortgage loan is current . . . the servicer must send an Adverse Action Notice (Form 182) to the borrower within 30 days of receipt of Fannie Mae's decision . . . ."  *See* Fannie Mae Servicing Guide § D2-1-02.

Ditech sent the Adverse Action Notice on June 5, 2017.  On June 27, 2017, Claimant appealed the decision directly to Fannie Mae.  Response at 42.  Claimant does not contend that Fannie Mae reversed its decision.  Claimant also conclusorily alleges that Ditech solicited him for refinancing his Mortgage rather than a modification.  However, the Fannie Mae Servicing Guide clearly states a servicer must not solicit borrowers who are current or less than 30 days delinquent for a workout option.  Fannie Mae Servicing Guide § D2-1-02.  Such allegations are not sufficiently specific or detailed to provide a fair understanding for the basis of the claim and the legal grounds for recovery against Ditech.  Claimant has asserted neither facts nor law that support a claim against Ditech based on the interest rates charged to Claimant under the Mortgage Loan.

---

[21] This has since been revised and as of July 2018, the Freddie Mac Imminent Default Indicator is no longer used.

17

**Conclusion**

Based on the foregoing, the Court sustains the Objection and disallows and expunges the Claim.

IT IS SO ORDERED.

Dated: New York, New York
December 1, 2023

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge