**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x

In re:                                    :   Case No. 19-10412 (JLG)
                                          :
Ditech Holding Corporation, *et al.*,     :   Chapter 11
                                          :
                        Debtors.[1]       :   (Jointly Administered)

------------------------------------------------------- x

**MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS
TRUSTEE'S THIRTY-SECOND OMNIBUS OBJECTION TO PROOFS OF CLAIM
(INSUFFICIENT LEGAL BASIS UNSECURED CONSUMER CREDITOR CLAIMS)
WITH RESPECT TO THE CLAIM OF MICHAEL STRAUSBAUGH**

**A P P E A R A N C E S :**

JENNER & BLOCK LLP
*Attorneys for the Consumer Claims Representative*
1155 Avenue of the Americas
New York, NY 10036
By:   Richard Levin

Michael Strausbaugh
*Appearing Pro Se*
Reg. No. 69878-067
Federal Correctional Institution
P.O. Box 420
Fairton, New Jersey 08320

---

[1]   On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1404 (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412.  Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate") (Case No. 19-10412) remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## Introduction[2]

On March 15, 2019, Michael Strausbaugh (the "Claimant") filed Proof of Claim No. 302 (the "Claim") as an unsecured claim in the amount of $1,500,000 against Ditech Holding Corporation ("Ditech"). Claim at 1–2. In her Thirty-Second Omnibus Claims Objection (the "Objection"),[3] the Consumer Claims Trustee seeks an order disallowing and expunging the Claim. In it, she challenges the legal sufficiency of the Claim. *See* Objection, Ex. A (List of Claims) at 5. The Claimant, acting pro se, responded to the Objection (the "Response").[4] He also filed a motion to amend his claim (the "Motion to Amend"),[5] accompanied by a proposed amended claim (the "Proposed Amended Claim").[6] In her Reply[7] in support of the Objection, the Consumer Claims Trustee addressed the Response and the Motion to Amend.

Pursuant to the Claims Procedures Order,[8] the filing of the Response caused an adjournment of the Objection so that the Court could conduct a Sufficiency Hearing on the Claim. Under that order, the legal standard of review at a Sufficiency Hearing is the same as the standard applied to a motion to dismiss for failure to state a claim upon which relief may be granted under

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Objection, Claims Procedure Order, and the Third Amended Plan.

[3]    *Consumer Claims Trustee's Thirty-Second Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims)*, ECF No. 2875.

[4]    *Michael Strausbaugh's (Claim No. 302) Response to Consumer Claim Trustee's Thirty-Second Omnibus Objection to Proofs of Claim*, ECF No. 3008.

[5]    *Motion for Leave to Amend Proof of Claim*, ECF No. 4425.

[6]    The Proposed Amended Claim is attached to the Motion to Amend Claim at 8–34.

[7]    *Reply of the Consumer Claims Trustee in Support of the Thirty-Second Omnibus Objection with Respect to the Claims of Michael J. Strausbaugh (Claim No. 302); Response to Claimant's Motion to Amend*, ECF No. 4526 ("Reply").

[8]    *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[9] *See* Claims Procedures Order ¶ 3(iv)(a). In accordance with the Claims Procedures Order, the Court conducted a Sufficiency Hearing on the Claim (the "Strausbaugh Sufficiency Hearing") and simultaneously heard argument on the Motion to Amend.[10]  The Consumer Claims Trustee appeared through counsel, and the Claimant appeared pro se.

The Court has reviewed the Claim, Objection, Response, Reply, and the Motion to Amend, together with all documents submitted in support thereof, and has considered the arguments made by the parties in support of their respective positions.  For the reasons set forth below, the Court sustains the Objection, and disallows and expunges the Claim.  The Court denies the Motion to Amend as futile.

## Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

### The Mortgage

On September 4, 2007, the Claimant and his wife, Rebecca Strausbaugh ("Rebecca"), executed a promissory note in the principal amount of $256,000 (the "Note") in favor of Equifirst Corporation ("Equifirst"), which was secured by a mortgage (the "Mortgage")[11] on the property

---

[9]    Rule 12(b)(6) is made applicable herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

[10]    *See* Hearing Transcript ("Hr. Tr."), ECF No. 4669.

[11]    The Note and Mortgage are annexed to the Reply as Exhibit A.

located at 1946 East Berlin Road, New Oxford, Pennsylvania 17350 (the "Property" or the "PA Address"). The Mortgage identifies Equifirst as the lender and Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee for the lender. Mortgage at 1. On November 28, 2011, MERS assigned the Mortgage to Green Tree Servicing, LLC ("Green Tree"). On December 5, 2011, Green Tree recorded the assignment with the Adams County, PA Register and Recorder.[12]

### The Strausbaughs Are Incarcerated and Intentionally Default Under the Mortgage

On March 18, 2011, the Claimant and Rebecca were arrested. Second Amended Complaint ¶ 12.[13] They were held at the Adams County Correctional Complex (the "ACCC") until July 2012 and June 2012, respectively, when they were moved to other correction facilities. *Id.* In or about April 2011, Karen Bowen, the Claimant's mother, notified Green Tree of the arrest and requested that Green Tree send the monthly Mortgage billing statement to her at 513 McArthur Blvd., Warner Robins, Georgia 31093 (the "GA Address"). *Id.* ¶ 13. On May 4, 2011, the Office of the United States Attorney (the "USAO") filed a superseding indictment against the Claimant and Rebecca which alleged criminal forfeiture of the Property, and "filed a lis pendens." *Id.* ¶ 15. Thereafter, the Claimant and Rebecca stopped making Mortgage payments on the advice of the Claimant's attorney and intentionally defaulted on the Mortgage. *Id.* ¶ 18–19.

---

[12]    The Assignment is annexed to the Reply as Exhibit B.

[13]    The Claimant filed the "Second Amended Complaint" in a lawsuit that he commenced in the United States District Court for the Middle District of Pennsylvania. *See Strausbaugh v. Green Tree Servicing LLC*, No 15-01433 (M.D. Pa.) (the "District Court Action"). The docket of the District Court Action is annexed to the Reply as Exhibit F, and citations to documents therein will be denoted by reference to "D. Ct. ECF No. ___." As described below, the Claimant commenced the District Court Action after he exhausted all appeals of the State Foreclosure Judgment taken against him in the State Foreclosure Action. The district court dismissed the Second Amended Complaint. The Claimant relies on that Second Amended Complaint as support for his Claim. *See* Claim at 4–72 ("Second Amended Complaint"). As referenced herein, citations to the Second Amended Claim shall refer to that portion of the Claim according to its internal pagination.

**The State Foreclosure Action**

On January 17, 2012, Green Tree, by and through its counsel, KML Law Group P.C. ("KML"), filed a complaint (the "Foreclosure Complaint") initiating a residential mortgage foreclosure proceeding in the Adams County Court of Common Pleas (the "Trial Court"), to foreclose on the Property (the "State Foreclosure Action"). *See* State Appellate Decision at 1–2; *see also* Second Amended Complaint ¶ 25.[14]   The Sheriff's initial attempts to serve the Strausbaughs with the Foreclosure Complaint at the Property were unsuccessful, as the Property appeared to be vacant.   State Appellate Decision at 2.   According to the Trial Court, on February 17, 2012, Green Tree effected service of process on the Strausbaughs at the GA Address, in accordance with Pennsylvania Rules of Civil Procedure 402 and 404, as evidenced by two affidavits of service filed on February 24, 2012. *Id.*  The Claimant disputes this.  Response at 22.

Neither the Claimant nor Rebecca responded to the Foreclosure Complaint.   State Appellate Decision at 2.  Green Tree sent notices of default to the Strausbaughs at the PA Address and the GA Address. *Id.* at 2.   On July 18, 2012, the Prothonotary of the Trial Court (the "Prothonotary") signed the judgment (the "State Foreclosure Judgment") and issued a Writ of Execution scheduling a sale of the Property (the "Sheriff's Sale") for November 16, 2012.  Second Amended Complaint ¶ 32.

The Claimant asserts that he discovered the existence of the Foreclosure Action on October 16, 2012, when the Pima County Sheriff served him with the Notice of Sheriff's Sale of the Property. *Id.* ¶ 33.  On November 1, 2012, Rebecca was served with the Notice of Sheriff's Sale.

---

[14]   The "State Appellate Decision" is the opinion of the Superior Court of Pennsylvania affirming the Trial Court's denial of Claimant's "Formal Objection, Motion for Reconsideration and Annulment of Final Judgment" in the State Foreclosure Action.  The decision is annexed to the Reply as Exhibit C.  It can also be found at *Green Tree Servicing, LLC v. Strausbaugh*, No. 462 MDA 2013, 2014 WL 10986766 (Pa. Super. Ct. Feb. 27, 2014).

*Id.* ¶ 34.  On November 7, 2012, the Claimant sent Green Tree a "settlement letter . . . asking for lenience, and to not cause the sale of the PA Property conveying that he wanted to cure the default" (the "November Letter").  *Id.* ¶ 35.[15]

On November 13, 2012, Claimant filed his pro se "Petition to Postpone November 16, 2012 Sheriff Sale" in the State Foreclosure Action.  State Appellate Decision at 2.  There, he asserted that he had the means to cure or satisfy the mortgage foreclosure debt and requested a postponement of the Sheriff's Sale.  *Id.*  By order dated November 14, 2012 (the "November 2012 Order"), the Trial Court postponed the Sheriff's Sale until January 18, 2013.  *Id.*  That order provided that Green Tree was not required to further advertise or notice the sale.  *Id.*  On November 16, 2012, the Claimant was served with the November 2012 Order by mail at his address at the United States Penitentiary—Tucson, which was the address that the Claimant used in his Petition to Postpone.  *Id.*  The Claimant did not satisfy the Mortgage.  *Id.* at 6.  On January 18, 2013, the Sheriff sold the Property at the rescheduled sale.  *Id.* at 2.

On January 29, 2013—eleven days after the Sheriff's Sale—the Claimant, acting pro se, filed his Formal Objection; Motion for Reconsideration and Annulment of Final Judgment (the "Formal Objection") in the Trial Court Action.  *See id.* at 3.  In the Formal Objection, the Claimant sought to strike off or open the judgment entered against him, or to set aside the Sheriff's Sale, on the grounds that he had not received notices from the Trial Court and that his due process rights had been violated.  *Id.*  On January 31, 2013, the Trial Court denied the Formal Objection.  *Id.*  On February 5, 2013, the Claimant, acting pro se, filed a Motion to Hold Proceedings in Abeyance and a Notice of Appeal of the Trial Court's Order denying his Formal Objection.  *Id.*  On March 15, 2013, the Trial Court denied the Motion to Hold Proceedings in Abeyance.  *Id.* at 3.  On April

---

[15]    The November Letter is annexed as Exhibit 5 to the Response.

23, 2013, the Claimant filed a motion to annul the State Foreclosure Judgment *nunc pro tunc*.

Second Amended Complaint ¶ 51.  On May 17, 2013, the Trial Court denied the motion.  *Id.*

The Claimant filed an appeal of the Trial Court's denial of his Formal Objection to the

Pennsylvania Superior Court (the "Appellate Court").[16]  In support of the appeal, the Claimant

contended:

> that he was denied his constitutional right to due process.  [Claimant] argues that
> Green Tree failed to serve him with notice of the mortgage foreclosure action.
> [Claimant] also asserts that he was not served with the judgment entered against
> him, or documents related to the Sheriff's sale.  Based upon the lack of service,
> [Claimant] requests [the Appellate Court] to vacate[] the procedures below and
> dismiss all proceedings.
>
> [Claimant] also argues that the trial court failed to afford [him] his "right to
> obtain discovery[.]"  According to [Claimant], such discovery would demonstrate
> that the mortgage contract allowed [him] to use any means to settle that
> discrepancy.

State Appellate Decision at 3–4 (citations omitted).[17]

On February 27, 2014, the Appellate Court ruled against the Claimant and upheld the Trial

Court's denial of the Formal Objection.  *See* State Appellate Decision at 1.  In so ruling, the

Appellate Court considered the Claimant's appeal of the Trial Court's denial of his request to strike

off/open the judgment entered against him, or to set aside the Sheriff's Sale.  The court noted that

a petition to strike a judgment will be granted only where a fatal defect in the judgment is apparent

---

[16]    The Brief in Support of Appeal is annexed as Exhibit H to the Reply.

[17]    In the Brief in Support of Appeal, Claimant presented the following issues on appeal:

> (i) Whether he was denied due process in the service of pleadings, orders, and agreements by the
> Trial Court, by Green Tree, or whether he otherwise had the opportunity to defend against the State
> Foreclosure Action.

> (ii) Whether the Claimant had been deprived of his property without due process of law.

> (iii) Whether the Trial Court erred in denying the Claimant's "Formal Objection; Motion for
> Reconsideration and Annulment of Final Judgment."

State Appellate Decision at 3.

on the face of the record. State Appellate Decision at 4 (citing *Wells Fargo Bank, N.A. v. Vanmeter*, 67 A.3d 14, 17 (Pa. Super. 2013)). After reviewing the record of the Trial Court, the Appellate Court found that "the record discloses that Strausbaugh did not assert a defect on the face of the record. Accordingly, we discern no error in the trial court's refusal to strike off the judgment." *Id.* at 5 (citing *Wells Fargo Bank*, 67 A.3d at 17). It also considered the Claimant's request to open the default judgment. *Id.* The court found that "to open a default judgment, the movant . . . must plead a meritorious defense to the claims raised in the complaint, and provide a reasonable excuse for not filing a responsive pleading." *Id.* at 4–5 (citing *Wells Fargo Bank*, 67 A.3d at 17). Based upon its review of the record, it "discern[ed] no error or abuse of discretion by the trial court in not opening the default judgment." *Id.* (citing *Wells Fargo Bank*, 67 A.3d at 18). The Appellate Court also noted that in denying Claimant's request to set aside the Sheriff's Sale, the Trial Court ruled, as follows:

> Upon review of the record, . . . Strausbaugh was properly served with [Green Tree]'s complaint in mortgage foreclosure as well as all notices and orders related to the proceedings and the sale of the mortgaged property. Additionally, [the Trial C]ourt postponed the Sheriff's sale for a period of two months to allow Strausbaugh to cure or satisfy the mortgage deficiencies. However, Strausbaugh took no such action during that two month period, and the property was ultimately sold at Sheriff's sale. Strausbaugh has failed to present any evidence that he was denied due process of law . . . .

State Appellate Decision at 6 (quoting Supplemental Trial Court Decision at 4, *Green Tree Servicing, LLC v. Michael J. Strausbaugh*, No. 2012 SU 71 (Adams Cnty. Ct. Com. Pl. Feb. 11, 2013)). The Appellate Court "discern[ed] no abuse of discretion by the trial court in not setting aside the Sheriff's sale, and affirm[ed] based on the trial court's reasoning, as set forth above." *Id.*

On March 19, 2014, the Claimant filed a Petition for Allowance to Appeal in the Supreme Court of Pennsylvania. Second Amended Complaint ¶ 53. On September 29, 2014, the Supreme Court of Pennsylvania denied the petition. *Id.* ¶ 54. On December 11, 2014, the Claimant filed a

Petition for a Writ of Certiorari in the United States Supreme Court, which it denied on February

23, 2015.  *Id.* ¶¶ 55–56.

## The District Court Action

On March 25, 2015, the Claimant commenced the District Court Action in the United

States District Court for the Middle District of Pennsylvania.  In the fifty-five-page complaint, he

asserted claims against, among others, Green Tree, the Prothonotary, the service processor, KML,

and his public defender.  In doing so, he invoked the district court's diversity, federal question,

and supplemental jurisdiction.  On November 17, 2017, the Claimant filed a nineteen count Second

Amended Complaint in that action.[18]  In it, he asserted the following claims against Green Tree:

(i)     Count 1—Violations of Pennsylvania's Loan and Interest Protection Law, 41
        Pa. Stat. §§ 101–605 ("Act 6") and Pennsylvania's Homeowner's Emergency
        Mortgage Assistance Act, 35 Pa. Stat. §§ 1680.401c–1680.412c ("Act 91").  *See*
        Second Amended Complaint ¶¶ 57–67.

(ii)    Count 2—Violations of Pennsylvania's Unfair and Deceptive Acts and
        Practices, 73 Pa. Stat. §§ 201-9 to 201-9.2 (i.e., Unfair Trade Practices and
        Consumer Protection Law ("UTPCPL")).  *See* Second Amended Complaint
        ¶¶ 68–75.

(iii)   Count 3—Obtaining a default judgment and/or wrongful foreclosure by
        extrinsic fraud.  *See id.* ¶¶ 76–83.

(iv)    Count 4—Negligent misrepresentations that Strausbaugh had been properly
        served.  *See id.* ¶¶ 84–90.

(v)     Count 5—Unjust Enrichment based on a default judgment and/or wrongful
        foreclosure.  *See id.* ¶¶ 91–99.

(vi)    Count 6—Breach of Covenant.  *See id.* ¶¶ 100–07.

The relief that the Claimant sought under each claim included the reversal of the State

Foreclosure Judgment on the ground that it was obtained by extrinsic fraud.  *See* Second Amended

---

[18]   *See Second Amended Complaint*, D. Ct. ECF No. 49.

Complaint ¶¶ 67(c), 75(c), 83(c), 90(c), 99(c), 107(c). Without limitation, in the Second Amended

Complaint, the Claimant challenged the service of process in the State Foreclosure Action. He

claimed that service of process on him was not completed at the GA Address. *Id.* ¶¶ 28–29. He

alleged that the process server "conducted 'Sewer Service' and returned a fraudulent, notarized

affidavit of service [(the "Alleged False Affidavit of Service")], averring that service was perfected

at the GA address, through what he indicated on the affidavit as [the Claimant]'s and Rebecca's

co-resident, Kelvin Durden." *Id.* ¶ 28. The Claimant said that he did not become aware of the

Alleged False Affidavit of Service until May 2013. *Id.* ¶ 81. He also alleged that when Green

Tree served the Foreclosure Complaint on him, it knew that he was being was being held at the

ACCC, and therefore it was aware that the service processor could not complete service on him at

the GA Address as described in the Alleged False Affidavit of Service. *Id.* ¶ 29.

The Claimant asserted that, throughout the pendency of the State Foreclosure Action, KML

maintained that he was properly served with the Foreclosure Complaint, even after it received

affidavits from Karen Bowen and her husband, attesting to the fact that (i) they co-owned the

premises at the GA Address; (ii) the Claimant and Rebecca never lived at the GA Address; and

(iii) the person named and described in the Alleged False Affidavit of Service as the person who

accepted process was unknown to them, and never resided or visited the GA Address. *Id.* ¶ 53.

On November 27, 2017, Green Tree and the other defendants filed motions to dismiss the

Second Amended Complaint. Green Tree sought to dismiss the complaint pursuant to Rules

12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that the district court

lacked subject-matter jurisdiction over the claims asserted in the complaint, because the complaint

constituted a collateral attack on the State Foreclosure Judgment and was therefore barred by the

*Rooker-Feldman* doctrine, and because the Claimant's counts were barred by res judicata and

collateral estoppel as identical issues and claims were already adjudicated in the State Foreclosure Action.[19]

In substance, in her Report and Recommendation, Magistrate Judge Karoline Mehalchick found that the district court lacked requisite jurisdiction to hear the Second Amended Complaint and recommended that the district court dismiss it on jurisdictional grounds, but without passing on the *Rooker-Feldman* issue. *Strausbaugh v. Greentree Servicing LLC*, No. 1:15-CV-01433, 2018 WL 4691633 (M.D. Pa. Aug. 6, 2018). On September 27, 2019, the district court adopted the Report and Recommendation, dismissing the Second Amended Complaint against Green Tree without prejudice to the Claimant's ability to refile any state law claim in state court. *Strausbaugh v. Greentree Servicing LLC*, No. 1:15-CV-1433, 2018 WL 4680129 (M.D. Pa. Sept. 28, 2018). On February 4, 2019, Claimant appealed the District Court Order to the United States Court of Appeals for the Third Circuit.[20] On May 25, 2021, the Third Circuit affirmed the District Court Order. *Strausbaugh v. Greentree Servicing LLC*, No. 19-1304, 2021 WL 2103602 (3d Cir. May 25, 2021).

**The Chapter 11 Cases**

On February 11, 2019 (the "Petition Date"), Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates (the "Debtors") filed petitions for relief (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court. The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On

---

[19]    *See Motion to Dismiss of Ditech Financial LLC f/k/a Green Tree Servicing LLC*, D. Ct. ECF No.51; *Memorandum of Law of Defendant Ditech Financial LLC f/k/a Green Tree Servicing LLC In Support of Its Motion to Dismiss Plaintiff's Complaint*, D. Ct. ECF No. 61.

[20]    *See Michael Strausbaugh's Notice of Appeal*, D. Ct. ECF No. 109.

February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person

or entity, not including governmental units (as defined by section 101(27) of the Bankruptcy Code)

to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[21]  Thereafter, the Court

twice extended the General Bar Date for consumer borrowers like the Claimant—ultimately to

June 3, 2019.[22]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, and on

September 30, 2019, that plan became effective.[23]  The Consumer Claims Trustee is a fiduciary

appointed under the Third Amended Plan who is responsible for the reconciliation and resolution

of Consumer Creditor Claims and distribution of the Consumer Creditor Net Proceeds from the

Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims in

accordance with the Third Amended Plan.  *See* Third Amended Plan, art. I, ¶ 1.41.  The Consumer

Claims Trustee has the exclusive authority to object to all Consumer Creditor Claims.  *See id.* art.

VII, ¶ 7.1.

**The Claims Procedures Order**

On November 19, 2019, the Court entered the Claims Procedures Order.  Under that order,

the Consumer Claims Trustee is authorized to file Omnibus Objections seeking reduction,

reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d)

and additional grounds set forth in the Claims Procedures Order.  *See* Claims Procedures Order

¶ 2(i)(a)–(h).  A properly filed and served response to an objection gives rise to a "Contested

---

[21]   *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*,
ECF No. 90.

[22]   *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*,
ECF No. 496.

[23]   *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation
and its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative
Expense Claims*, ECF No. 1449.

Claim" that will be resolved at a Claim Hearing. *Id.* ¶ 3(iv). The Consumer Claims Trustee has the option of scheduling the Claim Hearing as either a Merits Hearing or a Sufficiency Hearing. *Id.* ¶ 3(iv)(a), (b). A Merits Hearing is an evidentiary hearing on the merits of a Contested Claim. A Sufficiency Hearing is a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. The legal standard of review that will be applied by the Court at a Sufficiency Hearing is equivalent to the standard applied by the Court on a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

## **The Claim**

On March 15, 2019, the Claimant filed the Claim against Ditech as an unsecured claim in the amount of $1,500,000. *See* Claim at 1–2. The Claimant identifies the basis of the Claim as "Federal Civil Suit (Breach Of covenant, inter alia)." *Id.* at 1. He attached the Second Amended Complaint to support his Claim. Central to the relief that the Claimant is seeking in the Second Amended Complaint is the reversal of the State Foreclosure Judgment on the ground that Green Tree obtained it by extrinsic fraud. The Claimant asserts the following claims against Green Tree:

(i)     Count 1—Violations of Act 6 and Act 91. Second Amended Complaint ¶¶ 57–67.

(ii)    Count 2—Violations of the UTPCPL. *Id.* ¶¶ 68–75.

(iii)   Count 3—Obtaining a default judgment and/or wrongful foreclosure by extrinsic fraud. *Id.* ¶¶ 76–83.

(iv)    Count 4—Negligent misrepresentations that Strausbaugh had been properly served. *Id.* ¶¶ 84–90.

(v)     Count 5—Unjust Enrichment based on a default judgment and/or wrongful foreclosure. *Id.* ¶¶ 91–99.

(vi)    Count 6—Breach of Covenant. *Id.* ¶¶ 100–07.

The Claim seeks actual monetary compensatory damages in the amount of $500,000, punitive damages in the amount of $1,000,000, reversal of the State Foreclosure Judgment, costs, and other just relief.

## The Objection

On October 8, 2020, the Consumer Claims Trustee filed the Objection. In it, she objects to the Claim on the grounds that it "fails to state a basis for liability against the Debtors and is precluded based on a prior court decision." *See* Objection, Ex. A (List of Claims) at 5.

## The Response

In the Response, the Claimant denies that the Claim is precluded by any prior court action and maintains that he has stated claims against Ditech for violations of Act 91 and the UTPCPL, as well as for fraud on the court, unjust enrichment, and breach of covenant. Response at 17–26. He specifically withdraws the claim for violation of Act 6 and the claim for negligent misrepresentation. *Id.* at 17, 23. However, in the Proposed Amended Claim, he purports to reinstate the Act 6 claim.[24]  *See* Proposed Amended Claim art. IIA, ¶ 3, art. IIB, ¶ 3.

The Claimant argues that application of the *Rooker-Feldman* doctrine does not divest the Court of subject-matter jurisdiction over the Claim. First, he says that the doctrine is not applicable because the injury for which he seeks relief is a product of Green Tree's conduct leading to the entry of the default judgment in the State Foreclosure Action, but not the State Foreclosure Action itself. Response at 2. In particular, the Claimant argues that his "alleged injury is Greentree's [sic] conduct that occurred before the judgment itself." *Id.* at 5. He alleges that Green Tree (i) "violated pre-foreclosure notice requirements that allow reinstatement of the mortgage," *id.*

---

[24]    The Court will proceed as though the Claimant has not withdrawn the Act 6 claim.

(citing Second Amended Complaint at 13, 17 & ¶¶ 62, 64, 70A, 73); (ii) used a fraudulent affidavit

of service to obtain a default judgment against him, *id.* at 5 (citing Second Amended Complaint at

20 & ¶¶ 78–80); (iii) "negligently misrepresented [the Claimant]'s proper address for service," *id.*

at 5 (citing Second Amended Complaint at 22 & ¶ 85); (iv) "was unjustly enriched via fraudulent

pre-foreclosure notices and a fraudulent affidavit of service," *id.*; and breached a covenant by not

allowing the Claimant to reinstate the mortgage, *id.*

Second, he asserts that although he is asking the court to reverse the State Foreclosure

Judgment, he is not asking the Court to sit in review of it.  *See id.* at 7–8 ("In [the Claimant]'s

complaint he never invites this court to review the [State Foreclosure Judgment]. . . . [He] did,

however, request 'reversal of the [State Court Judgment] as it was obtained by extrinsic fraud.'"

(quoting Second Amended Complaint ¶¶ 67(c), 75(c), 83(c), 90(c), 99(c), 107(c))).  The Claimant

maintains that there exists an "extrinsic fraud" exception to the *Rooker*-Feldman doctrine and seeks

reversal of the State Court Judgment due to Green Tree's alleged extrinsic fraud on the Trial Court.

*Id.* at 3, 9.  The alleged extrinsic fraud that the Claimant asserts is Green Tree's filing of the Alleged

False Affidavit of Service in the State Foreclosure Action.  *Id.* at 12, 22.  The Claimant alleges that

the Trial Court relied on the affidavit as proof of service despite Green Tree's knowledge that the

Claimant would not receive the Foreclosure Complaint, which was served in Georgia while he was

in a Pennsylvania jail.  *Id.* at 22–23.

The Claimant also argues that his claims are not precluded by res judicata (i.e., claim

preclusion) or collateral estoppel (i.e., issue preclusion).  He says that his claims are not precluded

by res judicata because he is asserting theories of recovery in the bankruptcy case that he could

not have asserted in the State Foreclosure Action.  *Id.* at 13.  He argues that under Pennsylvania

law, he was limited to bringing counterclaims in the State Foreclosure Action that "[were] part of

or incident to the creation of the mortgage relationship itself," and that Green Tree's actions, as alleged in the Second Amended Complaint, "occurred after [the Claimant] had defaulted and thus cannot be part of the incident [sic] to the creation of the mortgage." *Id.* The Claimant also argues that the alleged extrinsic fraud precludes the application of res judicata or invalidates the State Foreclosure Judgment, since, given the Alleged False Affidavit of Service, the Trial Court never obtained personal jurisdiction over him. *Id.* at 10, 12.

As for collateral estoppel, the Claimant argues that although he raised due process claims and challenged the sufficiency of Green Tree's service of the Foreclosure Complaint and other documents related to the State Foreclosure Action in the Trial Court and in the Appellate Court, the "the gravamen of the Second Amended Complaint" is not related to those issues. *Id.* at 15. He argues that the Second Amended Complaint focuses on the alleged "extrinsic fraud on the [Trial Court] committed by Greentree [sic] through the filing of a fraudulent affidavit of service"—an issue that the Claimant maintains he never raised in Pennsylvania state courts. *Id.* at 14–15. He claims that he lacked a full and fair opportunity to litigate this issue because "the case record, which contained the evidence of fraud was concealed from him until after all viable proceedings." *Id.* at 16.

**<u>The Motion to Amend</u>**

The Claimant says that he seeks to amend his claim "to reduce confusion and clarify the claims presented." Motion to Amend at 2. Claimant says that the Proposed Amended Claim does not purport to raise new claims or include different debtors and reduces the overall number of facts and claims while correcting defects in the original proof of claim. *Id.* The Claimant purports to present two categories of claims in the Proposed Amended Claim. The first "addresses Notice of Default and Foreclosure Notices, which were deficient and alleged to have been mailed to

addresses Greentree [sic] knew were not [the Claimant]'s notice address." *Id.* at 3. Claimant asserts that these actions "violated both state law and the provisions of Greentree's [sic] covenant with [the Claimant]." *Id.* The second category "addresses [Claimant's] request to reinstate the [M]ortgage post [State Foreclosure Judgment] to which Greentree [sic] did not respond." *Id.* Under both categories, Claimant purports to assert claims for monetary damages that he says are unrelated to the State Foreclosure Judgment. *Id.* Specifically, the Proposed Amended Claim asserts three alternate causes of action: (i) Breach of Covenant of Good Faith and Fair Dealing; (ii) Violation of "Pennsylvania Unfair and Deceptive Acts and Practices" (i.e., the UTPCPL), and (iii) Violation of Act 6. Proposed Amended Claim art., IIA–B. The Proposed Amended Claim does not assert claims related to "Pennsylvania's Act 91," "wrongful foreclosure," "extrinsic fraud," "fraud on the court," "negligent misrepresentation," or "unjust enrichment."

The Proposed Amended Claim requests $1,500,000 in damages to compensate Claimant for his actual loss of money or property, the cost of litigation, and emotional damages. Proposed Amended Claim at 16. The Claimant also seeks "the loss of all principle [sic] and interest paid toward the mortgage, all money spent on improvements made to the PA Property, the value of the PA Property," and the costs of litigating his "federal suit," which this Court understands to mean the District Court Action, and this "Bankruptcy Action." *Id.* art. IIA, ¶¶ 1(c), 2(c), 3(c), art. IIB, ¶¶ 1(c), 2(c), 3(c).

**The Reply**

In her Reply, the Consumer Claims Trustee argues that by application of the *Rooker-Feldman* doctrine, the Court lacks subject matter jurisdiction to hear the Claim. Reply ¶¶ 20–31. She also asserts that the Claim is barred by application of the doctrines of res judicata and collateral estoppel, *id.* ¶¶ 38–54, and, in any event, that none of the causes of action in support of the Second

Amended Complaint state a claim for relief against the Debtors, *id.* ¶¶ 55–80.  Finally, the Consumer Claims Trustee argues that the Court should deny the Motion to Amend, since amendment to the Claim would be futile because the Proposed Amended Claim fails to state a claim upon which relief can be granted. *Id.* ¶ 3.

## The Sufficiency Hearing

At the Strausbaugh Sufficiency Hearing, the Claimant advised the Court that he was only pursuing the claims contained in the Proposed Amended Claim.  Hr. Tr., ECF No. 4669, at 24:15–21:1.  The Court will address those claims below.

## Applicable Legal Principles

Under section 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  The filing of a proof of claim executed and filed in accordance with the Bankruptcy Rules constitutes "prima facie evidence of the validity and amount of a claim."  Fed. R. Bankr. P. 3001(f).  The objecting party bears the initial burden of persuasion.  *See In re Adelphia Commc'ns Corp.*, No. 02-41729, 2007 WL 601452, at *5 (Bankr. S.D.N.Y. Feb. 20, 2007).

Section 502(b) sets forth the grounds for disallowing a proof of claim filed under section 501 of the Bankruptcy Code.  *See* 11 U.S.C. § 502(b); *see also Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007) ("But even where a party in interest objects [to a claim], the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b)." (quoting 11 U.S.C. § 502(b))).  Section 502(b) prescribes nine categories of claims that will be disallowed.  11 U.S.C. § 502(b).  As relevant, section 502(b) provides that the Court shall determine and allow the amount of a claim subject to an objection as of the bankruptcy petition date "except to the extent that . . . (1) such claim is

unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . ."  11 U.S.C. § 502(b)(1).  If an objection filed pursuant to section 502(b)(1) refutes at least one of the claim's essential allegations, the claimant has the burden to demonstrate the validity of the claim.  *See In re Lehman Bros.*, No. 08-01420, 2015 WL 7451411, at *6 (Bankr. S.D.N.Y. Nov. 23, 2015). "When the burden is shifted back to the claimant, it must then prove by a preponderance of the evidence that under applicable law the claim should be allowed."  *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009).

Courts apply state law in determining whether a claim is allowable under section 502(b)(1). *See In re Hess*, 404 B.R. 747, 749 (Bankr. S.D.N.Y. 2009) ("What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law." (quoting *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161 (1946))); *see also Fisher Bros. Mgmt. Co. v. Genco Shipping & Trading Ltd. (In re Genco Shipping & Trading Ltd.)*, 550 B.R. 676, 680 (S.D.N.Y. 2015) (noting that, as used in section 502(b)(1), the term "[a]pplicable law most often relates to state law").  Since all transactions relevant to this dispute occurred in Pennsylvania, the Court applies that state's law.

## The Claim Objection

### Subject-Matter Jurisdiction

#### Whether the Claims are Barred by the Rooker-Feldman Doctrine

The Consumer Claims Trustee asserts that because each cause of action asserted by the Claimant requires the Court to review and effectively overrule the State Foreclosure Judgment and State Appellate Decision, the Court should dismiss the Claim for lack of subject-matter jurisdiction

under the *Rooker-Feldman* doctrine.  Reply at 10.  By application of the *Rooker-Feldman* doctrine, "lower federal courts lack subject-matter jurisdiction over claims that effectively challenge state-court judgments." *Wilson v. Deutsche Bank Nat'l Tr. (In re Wilson)*, 410 F. App'x 409, 410 (2d Cir. 2011) (summary order). "Underlying the *Rooker–Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).  "The *Rooker-Feldman* doctrine [applies to] cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting the district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).

The *Rooker–Feldman* doctrine applies when four conditions have been met:

(i) The federal-court claimant must have lost in state court.

(ii) The claimant must complain of injuries caused by a state-court judgment.

(iii) The claimant must invite the bankruptcy court to review and reject that judgment.

(iv) The state-court judgment must have been rendered before the bankruptcy court proceedings commenced.

*See Green v. Mattingly,* 585 F.3d 97, 101 (2d Cir. 2009) (citing *Hoblock,* 422 F.3d at 85).

The first and forth requirements are the procedural in nature.  *See McKithen v. Brown*, 481 F.3d 89, 89 (2d Cir. 2015).  The Claimant lost at the Trial Court, the Appellate Court denied his appeal, and both the Pennsylvania Supreme Court and the United States Supreme Court denied review of those decisions.  Moreover, the Trial Court entered the Foreclosure Judgment before the Claimant filed the Claim.  The Court finds that the first and fourth *Rooker-Feldman* requirements are satisfied.  The Claimant does not contest otherwise.

Thus, the application of the *Rooker-Feldman* doctrine turns on whether the Consumer Claims Trustee can demonstrate that the second and third "substantive" elements of the doctrine are satisfied. *McKithen*, 481 F.3d at 97. The second element requires the Claimant to complain of injuries caused by that state court judgment. *Hoblock*, 422 F.3d at 85. The Claimant denies that he is doing so. He maintains that he is complaining that Green Tree (i) violated pre-foreclosure notice requirements; (ii) used the Alleged False Affidavit of Service to fraudulently obtain a default judgment and negligently misrepresented the Claimant's proper address for service; (iii) was unjustly enriched; and (iv) breached the terms of the Mortgage by not allowing its reinstatement. Response at 5. The Claimant argues that since each of these alleged injuries occurred before the entry of the State Foreclosure Judgment, they were not caused by the judgment. Response at 4–5. The Claimant says that his injury "was not created by the foreclosure action, but instead by the very conduct of Greentree [sic], which led to the [State Foreclosure Judgment]." The Claimant cites to *Charles v. Levitt* for the proposition that "where a plaintiff alleges damages directly caused by defendants' misconduct—not by the state court judgment which the misconduct allegedly produced—*Rooker-Feldman* does not bar that claim." Motion to Amend at 4–5 (quoting *Charles v. Levitt*, No. 15-cv-9334, 2016 WL 3982514, at *4 (S.D.N.Y. July 21, 2016), *aff'd and remanded*, 716 F. App'x 18 (2d Cir. 2017) (summary order)). In summary, the Claimant argues that he is not complaining about the foreclosure, but instead complaining about the conduct of Green Tree that led to the State Foreclosure Judgment. *See* Response at 6.

To support his distinction between injuries allegedly caused by Green Tree and injuries caused by the State Foreclosure Judgment, the Claimant relies on this Court's decision in *Wilson v. Residential Cap., LLC, et al.* (*In re Residential Cap.), LLC*, No. 12-12020, 2014 WL 3057111 (Bankr. S.D.N.Y. July 7, 2014). In *Wilson*, the Plaintiff, Jennifer Wilson, brought an adversary

proceeding alleging breach of contract and violations of the North Carolina Unfair and Deceptive

Trade Practices Act against Residential Capital, LLC ("ResCap"), Residential Funding Company,

LLC ("RFC"), among others, based on the foreclosure of her home. Wilson claimed that ResCap

and RFC defrauded the state court by filing false documents which led to the wrongful foreclosure.

*Id.* at 6, 10. Wilson did not seek to set aside the state court's foreclosure order, and this Court

noted that it would not allow her to amend her complaint to do so. *Id.*

The Consumer Claims Trustee argues that the second factor of the *Rooker-Feldman*

doctrine is met because the injury that the Claimant complains of is the loss of the Property, which

was the direct result of the State Foreclosure Judgment. Reply ¶ 24. She also notes that the Second

Amended Complaint seeks monetary damages based on the loss of principal and interest payments

in every single cause of action. *Id.* She asserts that "[s]eeking monetary damages for loss of

property 'is not sufficient to escape the ambit of *Rooker-Feldman* where granting such relief would

still require the federal court to sit in review of a state court judgment.'" *Id.* (quoting *Charles*,

2016 WL 3982514, at *4).

In *McKithen*, the Second Circuit, analyzing this second element, distinguished between a

"*similarity* between a party's state-court and federal-court clams (which is, generally speaking, the

focus of ordinary preclusion law)" and the "*causal relationship* between the state-court judgment

and the injury of which the party complains in federal court." 481 F.3d 97–98. The *Rooker-*

*Feldman* doctrine does not bar federal courts from hearing claims based on the former type of

claim, but they lack subject-matter jurisdiction to hear the latter. *Id.* The Claimant and the

Trustee's arguments fall along this distinction, with the Claimant arguing that the injuries that he

seeks to address predate the foreclosure judgment, while the Trustee argues that the Claimant bases

his Claim on the injury he suffered by the foreclosure.

The Claimant takes two contrary positions. First, attempting to fit his claims into the mold provided by *Wilson*, he emphasizes that his injuries were not created by the State Foreclosure Action, but by the conduct of Green Tree leading to the State Foreclosure Order. Response at 5–6. Second, unlike the plaintiff in *Wilson*, the Claimant asks the Court to reverse the State Foreclosure Judgment. *Id.* at 9.

If the State Foreclosure Order were not the source of the Claimant's injuries, then there would be no sense in asking the Court to reverse it. The Claimant almost exclusively bases his claims on injuries caused by the foreclosure. For each cause of action in the Second Amended Complaint, the Claimant describes his injuries, without limitation, as "Loss of principle [sic] and interest payments, and equity in the PA property"; "Loss of the real property"; and "Loss of appreciated value of the property." *See, e.g.,* Claim ¶ 82. Also, for each cause of action, the Claimant demands "[r]eversal of the State Court judgment as it was obtained by extrinsic fraud." *See, e.g.,* Claim ¶ 83. The Amended Claim states substantially the same injuries. Amended Claim at 14–16.

Though the Consumer Claims Trustee is correct that the Claimant seeks redress for the consequences of the State Foreclosure Judgment, the actions which comprise the basis for the relief he seeks are those of third parties only. Ordinarily, complaints of a third party's actions will not satisfy the second element of the *Rooker-Feldman* doctrine. As the Second Circuit has explained, "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Hoblock*, 422 F.3d at 88. However, the Claimant does not complain only of the actions of third parties; in each cause of action, he seeks reversal of the State Court Judgment and explains that the actions of third parties

led to the loss of the mortgaged property.    Unlike in *Wilson*, where the Court reasoned "that Rooker–Feldman [did] not bar Wilson's UDTPA cause of action because she [was] not complaining of injury caused by the Foreclosure Action, but [was] instead complaining of the very conduct that led to the Foreclosure Order," (*Wilson*, 2014 WL 3057111, at *11), the Claimant's token complaints of the conduct of third-party conduct are betrayed by the injury for which the Claimant ultimately seeks redress: the loss of the Property.    Because each of the Claimant's counts seek redress for the loss of the Property caused by the State Foreclosure Judgment, the second element of the *Rooker-Feldman* doctrine is met.

The third element of the *Rooker-Feldman* doctrine is satisfied if a plaintiff invites review and rejection of the state court judgment.    *Green*, 585 F.3d at 101.    The Claimant argues that he has not requested that the Court review the Foreclosure Judgment.    *See* Response at 7.    He maintains that Courts in the Second Circuit have found that "Rooker-Feldman does not bar claims that seek damages for injuries suffered from the other party's actions which are unrelated to the states court [sic] judgment.    The adjudication of which does not require the federal court to sit in review of the state court judgment."    Motion to Amend at 4

The Consumer Claims Trustee argues that to grant relief to the Claimant, this Court "would have to determine that the State Foreclosure Judgment and State Appellate Decision were wrong or void" and undermine the State Foreclosure Judgment.    Reply ¶¶ 25–26.    The Consumer Claims Trustee argues that the issues surrounding the Alleged False Affidavit of Service and defective Notice of Default underpin all the Claimant's causes of action.    *Id.*    Moreover, she argues that the State Court found that "Strausbaugh was properly served with Green Tree's Complaint in mortgage foreclosure as well as all notices and orders related to the proceedings and the sale of the mortgaged property."    *Id.* (quoting State Appellate Decision at 6).    She contends that were this

Court to determine that service of process was fatally defective, then under Pennsylvania's law, such a determination "would void the State Foreclosure Judgment."  Reply ¶ 26 (citing *Green Acres Rehab. & Nursing Ctr. v. Sullivan*, 113 A.3d 1261, 1268 (Pa. Super. Ct. Apr. 13, 2015)). She also argues that the Claimant's assertions of fraud on the court do not change the result, since the Claimant is seeking punitive damages for fraud during the foreclosure proceeding, which invites review of the foreclosure judgment.  *See* Reply ¶ 27 (citing *Viera v. Specialized Loan Servicing, LLC*, No. 20-00898, 2022 WL 17266765, at *4 (N.D.N.Y. Nov. 29, 2022)).  She also notes that in *Charles*, 2016 WL 3982514, at *1, the court found the plaintiffs' claims were barred by *Rooker-Feldman*.  Reply ¶ 29.  She argues that *Charles* "supports the application of *Rooker-Feldman* here, where the Claimant attempts a back-door attack on the State Foreclosure Judgment by seeking monetary damages resulting from the foreclosure and loss of the Property."  *Id.*

The Claimant concedes that he is seeking the reversal of the State Foreclosure Judgment, but he maintains that he does not seek the Court's review of it.  Response at 3, 7.  He also argues that there is a fraud exception to *Rooker-Feldman*.[25]

The Consumer Claims Trustee is correct; the Claimant's request that the Court review the actions which led to the entry of the State Foreclosure Judgment overlap with those which the Trial Court already determined, and such an overlap is effectively a collateral attack on the State Foreclosure Judgment which is beyond the Court's subject-matter jurisdiction to adjudicate.  This is not akin to a situation, as the Claimant intimates, where a plaintiff asks the court to make determinations that might call into doubt or undermine a state court judgment.  Rather, the

---

[25]    Whatever the view of the Third Circuit, which the Claimant assumes relevant, a blanket fraud exception to the *Rooker-Feldman* doctrine is not recognized in the Second Circuit.  *See Gurdon v. Bank*, No. 15-cv-5674, 2016 WL 721019, at *6 (S.D.N.Y. Feb. 23, 2016) ("there is not a fraud exception to the *Rooker–Feldman* doctrine"), *report and recommendation adopted sub nom. Andrew Gurdon (Ex'r-419 Ests., LLC) v. Doral Bank*, No. 15-cv-5674, 2016 WL 3523737 (S.D.N.Y. June 22, 2016); *see also Kropelnicki v. Siegel*, 290 F.3d 118, 129 (2d Cir. 2002) ("we have never recognized a blanket fraud exception to *Rooker-Feldman*").

Claimant directly challenges the facts necessary to the State Foreclosure Judgment in an admitted effort to reverse it.  For these reasons, the Court disallows and expunges the Claim to the extent it seeks review of the State Foreclosure Judgment.

All four elements of the *Rooker-Feldman* doctrine bar the Court's review of the Claimant's claims.  Still, the Claimant seems to invite the Court, in the alternative, to disregard his requests that the Court review and reject the State Foreclosure Judgment or the injuries caused by it.  *See* Response at 3 (The Claimant is "under the impression that this court can strike the demand to reverse the state court judgement (if this Court determines the demand is inappropriate) versus amending the complaint . . . .").  Consistent with the policies underlying construction of the pleadings of pro se litigants, which impel the Court to "interpret[s] them to raise the strongest arguments that they suggest," it will do so here by interpreting the Claim to not seek review and rejection of the State Foreclosure Judgment or the injuries caused by it.  *Cf. Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (interpreting pro se litigant's submissions "to raise the strongest arguments that they suggest").  In so doing, the Court will interpret the Claim to seek relief for only injuries which predate, and were not caused by, the State Foreclosure Judgment.

## Preclusion

The doctrines of res judicata and collateral estoppel are applicable to motions under Rule 12(b)(6).  *Linden Airport Mgmt. Corp. v. N.Y.C. Econ. Dev. Corp.*, No. 08-3810, 2011 WL 2226625, at *3 (S.D.N.Y. June 1, 2011) ("it is well settled that a court may dismiss a claim on res judicata or collateral estoppel grounds on a Rule 12(b)(6) motion." (quoting *Sassower v. Abrams*, 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993))); *Freeman v. Sikorsky Aircraft Corp.*, 151 F. App'x 91, 92 (2d Cir. 2005) (summary order) ("the affirmative defense of *res judicata* may be raised in

a Rule 12(b)(6) motion 'when all of the relevant facts are shown by the court's own records.'"

(quoting *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992))).

"[T]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred . . . ." *New York v. Sokol (In re Sokol)*, 113 F.3d 303, 306 (2d Cir. 1997); *see also Paralex Assocs. v. Deutsch (In re Deutsch)*, 575 B.R. 590, 597 (Bankr. S.D.N.Y. 2017) ("The law is well settled that a state court judgment must be given preclusive effect, at least for collateral estoppel purposes, in a subsequent federal court proceeding if the state in which the judgment was rendered would do so." (quoting *Wharton v. Shiver (In re Shiver)*, 396 B.R. 110, 117 (Bankr. S.D.N.Y. 2008))).  The underlying foreclosure action was adjudicated in Pennsylvania, so the Court applies Pennsylvania's res judicata and collateral estoppel doctrines.  *New York v. Sokol* (*In re Sokol*), 113 F.3d 303, 306 (2d Cir. 1997) ("the preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred" (citing 28 U.S.C. § 1738; *Allen v. McCurry*, 449 U.S. 90, 95–96 (1980))).

### Claims Barred by Res Judicata

A final judgment on the merits bars a future suit on the same cause of action between the same parties.  *Chada v. Chada*, 756 A.2d 39, 42 (Pa. Super. Ct. 2000).  A default judgment is on the merits and has preclusive effect under res judicata.  *Brown v. Bank of Am.*, No. 1858 WDA 2013, 2014 WL 10919554, at *5 (Pa. Super. Ct. June 20, 2014) (citing *McGill v. Soughtthwark Realty Co.*, 828 A.2d 430, 435 (Pa. 2003)).  In Pennsylvania:

> Four elements common to both actions, sometimes termed the "four identities," *see, e.g.*, *Estate of Tower*, 343 A.2d 671, 674 (Pa. 1975), must be present for res judicata to apply: "an identity of issues, an identity of causes of action, identity of persons and parties to the action, and identity of the quality or capacity of the parties suing or being sued."

*In re Appeal of Coatesville Area Sch. Dist.*, 244 A.3d 373, 379 (Pa. 2021) (quoting *In re Iulo*, 766 A.2d 335, 337 (Pa. 2001)); s*ee also Del Turco v. Peoples Home Sav. Ass'n*, 478 A.2d 456, 461 (Pa. Super. Ct. 1984).

The Claimant concedes that there is an identity of parties to the Claim and the State Court Action, and an identity in the capacities of the parties. *See* Response at 13–14. He denies that there is an identity of issue in the State Foreclosure Action and the Claim. Response at 12. He asserts that in the State Foreclosure Action, Green Tree sued him for $275,755.07 to satisfy the Mortgage default, while the Claim seeks $500,000 in compensation and reversal of the State Foreclosure Judgment. *Id.*; *see also* Second Amended Complaint ¶ 67. The Claimant contends that causes of action underlying the State Court Action and the Claim are different. Response at 13. In the Claim, he seeks damages for the fraudulent behavior of Green Tree in providing the Trial Court with the Alleged False Affidavit of Service. Response at 12. He argues that he was incapable of bringing such a counterclaim in the State Foreclosure Action and thus, it should not be barred here. *Id.*

While the Claimant asserts that his claims are distinct from the causes of action raised in the State Foreclosure Action, "*res judicata* generally is thought to turn on the essential similarity of the underlying events giving rise to various legal claims." *Pagano v. Ventures Tr.*, No. 15-01489, 2016 WL 750272, at *7 (M.D. Pa. Jan. 22, 2016). The essential issue in a res judicata analysis "is whether the ultimate and controlling issues have been decided in a prior proceeding in which the parties had an opportunity to appear and assert their rights." *In re Jones & Laughlin Steel Corp.* 477 A.2d 527, 531 (Pa. Sup. Ct. 1984).

The claim for violations of the UTPCPL relies on both Green Tree's alleged failures to properly notice the Claimant's default and serve the complaint in the State Foreclosure Action

(Second Amended Complaint ¶ 70), and also on allegations that Green Tree "engaged in fraudulent conduct" by "present[ing] a fraudulent affidavit of service of the Complaint for Foreclosure to obtain a default judgment" (Second Amended Complaint ¶ 72).   The Claimant, assuming the allegations in the Second Amended Complaint are true, learned of the facts that he claims would entitle him to relief under the UTPCPL after the State Foreclosure Judgment.   Although he knew these facts while his appeal was pending, he lacked the opportunity to bring this claim for the first time on appeal.   *See* Pa. R. App. P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").   Res judicata does not preclude the UTPCPL claim.

The Claimant's Act 6 claim and his breach of covenant claim present different issues.   As relevant, the Court understands the Claimant's to be making two arguments: first, that the Alleged False Affidavit of Service constituted extrinsic fraud, thereby preventing the Claimant from raising those claims in the Trial Court.   Second, that the Claimant was procedurally barred from presenting these claims in a foreclosure action.

Under Pennsylvania law, "a final judgment challenged on the basis of fraud may be voided only for acts of extrinsic fraud, not for intrinsic fraud."   *Levine v. Litman*, 91 F. App'x 217, 220 (3d Cir. 2004) (citations omitted).   This includes instances where "a party secur[es] a default judgment after falsely certifying that it served the defendant with the complaint."   *Id.*   "Extrinsic fraud operates, not upon the matter pertaining to the judgment, but the manner in which it is procured."   *Britain v. Hope Enters. Found. Inc.,* 163 A.3d 1029, 1037 (Pa. Super. 2017); *see also Kartman v. North Suburban Tree Serv., Inc.* (*In re Kartman*), 354 B.R. 70, 76 (Bankr. W.D. Pa. 2006) ("A judgment will not ordinarily be disturbed on grounds of fraud except for what is known as 'extrinsic' fraud which has been brought to the courts' attention promptly upon its discovery. Extrinsic fraud refers to an act or conduct of the prevailing party that prevented the matter from

being fairly presented to the trier of fact." (citation omitted)).  Typically, the plaintiff seeking to avoid the effect of res judicata must demonstrate that they failed to raise claims or defenses in the prior suit because of fraud, concealment, or misrepresentation.  *See Florimonte v. Borough of Dalton*, No. 3:17-cv-1063, 2017 WL 7542619, at *7 (M.D. Pa. Dec. 14, 2017) (citing *Wicks v. Anderson*, No. 14-0143, 2014 WL 11456596, at *7 n.18 (M.D. Pa. Nov. 25, 2014)).

As to the first point, although the Claimant argues that "the crux of the [Second Amended Complaint] is Greentree's [sic] fraudulent affidavit of service which amounts to extrinsic fraud on the [Trial Court]" (Response at 12), this is not so.  The Claimant's Act 6 claim is based solely on Green Tree's alleged failures to properly notice the Claimant's default per its statutory obligations (Second Amended Complaint ¶¶ 57–67).  Likewise, his breach of covenant claim is based on Green Tree's alleged failures to properly notice the Claimant's default and to respond to his "settlement letter," based its obligations under the Mortgage (Second Amended Complaint ¶¶ 100–07).  The Claimant has not demonstrated a causal relationship between the fraud that he alleges Green Tree committed on the Trial Court and his failure to raise a defense that Green Tree's notices, whether pursuant to statute or the Mortgage, were improper.  He cannot demonstrate such a relationship because he filed the Formal Objection with the Trial Court and, as the Appellate Court noted, he had "failed to plead a meritorious defense to the [State Foreclosure Action]."  State Appellate Decision at 5.

As to the second point, the Claimant's argument that he was procedurally barred from raising his claims in the State Foreclosure Action is unavailing.  While true that "[a] defendant may plead a counterclaim which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose," (Pa. R. Civ. P. No. 1148), that rule would not have barred the Claimant from raising defenses to the foreclosure,

even if those defenses, such as one based on Act 6, arose based on statute, rather than the Mortgage itself. As the court in *Wells Fargo Bank N.A. v. Spivak* observed, "[i]n the residential mortgage context, Act 6 is typically raised as a defense to mortgage foreclosure proceedings." *Wells Fargo Bank N.A. v. Spivak*, 104 A.3d 7, 12 (Pa. Super. Ct. May 19, 2014) (citing *Bennett v. Seave*, 554 A.2d 886, 891 (Pa. 1989)). As is the case here, in *In re Sheed*, 607 B.R. 470 (Bankr. E.D. Pa. 2019), the borrower argued that a state foreclosure action was an in rem proceeding, and she could not have raised her later asserted arguments in that proceeding. *Id*. at 484–87. The bankruptcy court held that non-compliance with pre-foreclosure notice requirements were defenses to the foreclosure action that could have been made and efforts to restyle those defenses as affirmative claims were barred by res judicata. *Id*. at 485–87; *see also Stuart v. Decision One Mortg. Co*., LLC, 975 A.2d 1151, 1154 (Pa. Super. Ct. June 1, 2009) ("The foreclosure suit and the [Plaintiff's] counterclaim involve the same object or matter and share a common factual origin; both actions arise out of the loan transaction, entail a determination of that transaction, and call into question the parties' rights vis-à-vis the loan and mortgage premises."). Likewise, the Claimant had the opportunity to raise his claims here as defenses in the State Foreclosure Action. He is precluded from doing so for the first time now.

### *Issues Barred by Collateral Estoppel*

Under Pennsylvania law, a party is collaterally estopped from litigating an issue if five conditions are met:

> (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.

*Off. of Disciplinary Couns. v. Kiesewetter*, 889 A.2d 47, 50–51 (Pa. 2005) (citing *Off. of Disciplinary Couns. v. Duffield*, 644 A.2d 1186, 1189 (Pa. 1994)).  The party against whom the doctrine is asserted must also have had a "a full and fair opportunity to litigate the issue in the prior action."  *In re Appeal of Coatesville Area Sch. Dist.*, 244 A.3d at 379.

The Consumer Claims Trustee argues that the Claimant's claims are barred by collateral estoppel.  Reply ¶ 49.  The Trustee says that the Appellate Court affirmed the Trial Court's decision—finding that service of the complaint, as well as other notices and orders, were proper, and that the Claimant offered no meritorious defenses to the State Foreclosure Judgment.  *Id.*  The Court understands the Consumer Claims Trustee to mean that the Claimant's factual allegations are barred by collateral estoppel.  *See id.* ¶ 51 ("Here, the facts alleged by the Claimant and underlying all of Claimant's causes of action are directly contrary to the determinations made by the state trial court and state appellate court.").

The Claimant's argument is somewhat unclear, but he appears to say that his allegation that the Trial Court was misled into finding that the Claimant was properly served is different from whether service of the complaint was proper.  *See* Response at 15.  He seems to contend that the Trial Court and Appellate Court could decide whether service of the complaint was facially proper by reviewing the record, but that only the Claimant could have discovered the alleged fraud.  As he writes in the Response:

> For the state courts to find service was improper, they merely had to look at the record when the default judgment was entered and see if Greentree [sic] appeared to comly [sic] with the Pa.Civ.R.P. . . . [Claimant] could not have had a full and fair opportunity to litigate the issue of Greentree's [sic] extrinsic fraud committed on the Adams Count [sic] Court because the case record, which contained the evidence of fraud was concealed from him until after all viable proceedings.

Response at 15–16.

The Appellate Court echoed the Trial Court in holding that "[the Claimant] was properly served with [Green Tree]'s complaint in mortgage foreclosure as well as all notices and orders related to the proceedings and the sale of the mortgaged property."  State Appellate Decision at 6 (citing Supplemental Trial Court Opinion, 2/11/13, at 4).  The Claimant presents the same basic facts here that he presented to the Appellate Court when asking it to find that his due process rights were violated by the allegedly deficient service.  In his Second Amended Complaint, he alleges that Green Tree filed a "fraudulent affidavit of service in the [Trial Court]" despite "know[ing] that [the Claimant] was not properly served at the GA address as he was in the Adams County Correctional Complex in Gettysburg Pennsylvania"; (Second Amended Complaint ¶ 29) and that "Kelvin Durden, whom [sic] was alleged was the co-resident of [the Claimant] and Rebecca at the GA address and allegedly accepted the Foreclosure Complaint, was unknown to them and did not reside at the GA address" (Second Amended Complaint ¶ 52(A)(iii)); and that "Greentree [sic] . . . persisted that [the Claimant] was properly served . . . thus protecting their 'sewer service' – even after being served with affidavits from Karen and William Bowen. . . . These affidavits aver that Karen and William Bowen owned the GA address" (Second Amended Complaint ¶ 53(A)).

The Claimant raised similar issues for the first time at the Appellate Court.  However, the State Appellate Decision nowhere indicates that it adjudicated the merits of the Claimant's improper service arguments that the Claimant raised in his Appellate Court Brief.  Instead, the Appellate Court could not find error in the Trial Court's decision to not strike off the State Foreclosure Judgment because the Claimant did not "assert a defect on the face of the record," and likewise found no abuse of discretion in not setting aside the Sheriff's Sale, "affirm[ing] based on the trial court's reasoning . . . ."  State Appellate Decision at 5–6.  Without an indication that the Appellate Court considered the issue for the first time on appeal, the Court cannot conclude that

there was ever a "final adjudication on the merits" on the issue of whether the Trial Court was

misled into finding that the Claimant was properly served.  Moreover, the Claimant lacked the

opportunity to address the issue before the Trial Court, since his Second Amended Complaint

alleges that he received the record for the first time in May 2013, after his multiple failed requests

to the Prothonotary to have it produced to him.  Second Amended Complaint ¶¶ 45, 49–50.  The

Claimant is not precluded from arguing that the Trial Court was misled into finding that the

Claimant was properly served.

### Legal Sufficiency[26]

Pursuant to the Claims Procedures Order, in reviewing the legal sufficiency of the Claim,

the Court applies the standard to determine the legal sufficiency of a claim under Rule 12(b)(6).

Under Rule 12(b)(6), a claim may be dismissed due to a "failure to state a claim upon which relief

can be granted."  Fed. R. Civ. P. 12(b)(6).  In applying Rule 12(b)(6), the Court "must accept as

true all of the factual allegations set out in [the claim]."  *Gregory v. Daly*, 243 F.3d 687, 691 (2d

Cir. 2001).  The claim "must plead 'enough facts to state a claim to relief that is plausible on its

---

[26]  "On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.,* documents that are 'integral' to the complaint." *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citation omitted); *accord Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  In support of the Reply, the Consumer Claims Trustee annexes the Note, Mortgage, and Assignment.  The Court takes judicial notice of those documents as they are integral to the Claim.  *See Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (holding that a trial court may take judicial notice of underlying contract as a document integral to the complaint); *Ng v. HSBC Mortg. Corp.*, No. 07-cv-5434, 2010 WL 889256, at *9 n.13 (E.D.N.Y. Mar. 10, 2010) (taking judicial notice of settlement statements in a mortgage dispute).

The Claimant and the Consumer Claims Trustee rely on pleadings filed and decisions rendered in, without limitation, the District Court Action and the State Foreclosure Action.  "In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case sub judice." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011); *see Sutton ex rel. Rose v. Wachovia Sec., LLC*, 208 F. App'x 27, 30 (2d Cir. 2006) (summary order) (holding that filings and orders in other courts "[were] undisputably matters of public record").  The documents cited by the Claimant and Consumer Claims Trustee directly bear on the legal sufficiency of the Claim and the merits of the Objection.  Thus, the Court takes judicial notice of those documents and, as necessary, will cite to those documents herein.

face.'" *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Rosenblum v. Thomson Reuters (Mkts.) LLC*, 984 F. Supp. 2d 141, 145 (S.D.N.Y. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 810 (2d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). To satisfy Rule 12(b)(6), "the factual allegations 'must create the possibility of a right to relief that is more than speculative.'" *Allman v. Sony BMG Music Ent.*, No. 06-cv-3252, 2008 WL 2477465, at *1 (S.D.N.Y. 2008) (quoting *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008)). In considering whether that standard is met for a particular claim, the court must assume the truth of all material facts alleged in support of the claim and draw all reasonable inferences in the claimant's favor. *See John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017). "However, 'legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness.'" *Loc. 8A-28A Welfare and 401(k) Retirement Funds v. Golden Eagles Architectural Metal Cleaning and Refinishing*, 277 F. Supp. 2d 291, 294 (S.D.N.Y. 2003) (quoting *Ying Jing Gan v. City of New York*, 996 F.2d 522, 534 (2d Cir. 1993)). In applying Rule 12(b)(6), "the task of this Court . . . is 'merely to assess the legal feasibility of the [Claim], not to assay the weight of the evidence which might be offered in support thereof.'" *Larkin v. Ricenberg*, No. 05-cv-3384, 2006 WL 678964, at *1 (S.D.N.Y. Mar. 17, 2006) (quoting *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000)).

Where a claimant is proceeding pro se, the Court will construe the claim liberally, although the claim must nonetheless be supported by specific and detailed factual allegations that provide a

fair understanding for the basis of the claim and the legal grounds for recovery against a debtor.

*Kimber v. GMAC Mortg., LLC (In Re Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y.

2013) (citing *Iwachiw v. N.Y.C. Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005) (summary

order)); *see also McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156–57 (2d Cir. 2017)

(discussing the policy considerations undergirding liberal construction of pro se litigants' filings).

For the reasons that follow, the Claimant fails to state a claim upon which relief can be granted on

his UTPCPL claim.  Moreover, even if the Claimant's Act 6 and breach of covenant claims were

not barred by res judicata, he would still fail to state a claim upon which relief can be granted on

both of those claims.

### Unfair Trade Practices and Consumer Protection Law

The UTPCPL is designed to protect the public from fraud and unfair or deceptive business

practices.  *Pirozzi v. Penske Olds-Cadillac-GMC, Inc.*, 605 A.2d 373, 376 (Pa. Super. Ct. 1992).

The goal of the statute is "to even the bargaining power between consumers and sellers in

commercial transactions . . . ."  *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d

1010, 1023 (Pa. 2018).

The statute declares that "[u]nfair methods of competition and unfair or deceptive acts or

practices in the conduct of any trade or commerce" are unlawful.  73 Pa. Stat. § 201-3.  Thereafter,

it provides a definition of twenty-one "unfair methods of competition" and "unfair or deceptive

acts or practices."  *See id.* § 201-2(4)(i)–(xxi).  The Court finds that the Claim rests on the

UTPCPL's "catch-all" provision that prohibits "engaging in any other fraudulent or deceptive

conduct which creates a likelihood of confusion or of misunderstanding."[27]  *Id.* § 201-2(4)(xxi).

To state a claim under that provision, the Claimant must allege facts demonstrating the following:

> (1) "a deceptive act, that is conduct that is likely to deceive a consumer acting reasonably under similar circumstances"; (2) the plaintiffs [sic] justifiable reliance on that deceptive act; and (3) that the plaintiff's justifiable reliance resulted in ascertainable loss.

*Corsale v. Sperian Energy Corp*, 374 F. Supp. 3d 445, 459 (W.D. Pa. 2019) (citing *Montanez v. HSBC Mortg. Corp.*, 876 F. Supp. 2d 504, 519 (E.D. Pa. 2012)).

In the Claim and Proposed Amended Claim, the Claimant asserts that Green Tree engaged in deceptive acts by representing to the Trial Court that it had provided the Claimant with a notice of default and served him with the Foreclosure Complaint.  Second Amended Complaint ¶¶ 70–71; Proposed Amended Claim, art. I, ¶¶ 19–21.  He also maintains that Green Tree did not send the Notice of Default to the ACCC and that he relied upon Green Tree to notify him of any actions that he needed to take to cure the default.  Second Amended Complaint ¶¶ 70, 72(A)(iii), 73; Proposed Amended Claim, art. IIA, ¶ 2.  He says that Green Tree ignored his written request to reinstate the Mortgage and that he relied on Green Tree to respond to the letter to avoid the sale of the Property.  Second Amended Complaint ¶¶ 73, 105(b)(i)–(ii); Proposed Amended Claim, art. IIB, ¶ 2.  He asserts that as a consequence of Green Tree's actions, he lost all principal and interest payments on the Mortgage and the value of the Property inclusive of improvements made to the Property.  Proposed Amended Claim, art. IIA, ¶¶ 1(c), 2(c), 3(b), art. IIB, ¶¶ 1(c), 2(c), 3(b).

To the extent the Claimant is alleging that his reliance on the language of the Mortgage caused him to default, that allegation is facially implausible, since the Claimant states that he stopped paying his Mortgage because of a lis pendens filed by the USAO on the Property in

---

[27]  *See* Response at 19–20 (stating standard to state a claim under UTPCPL's catchall provision).

connection with a possible criminal forfeiture action.  Second Amended Complaint ¶¶ 15–19, 23.

In particular, he alleges that "[h]ad [he] been notified that the lis pendens was released and criminal

forfeiture was no longer possible he would have made current any late payments for the PA

property and the judicial proceedings would have never been initiated; it was improper and

negligent advice of [his attorney] and his failure to tell [the Claimant] that the lis pendens was

released that resulted in the default."  Second Amended Complaint ¶ 23(A)–(B).  State Appellate

Decision at 6.  Moreover, even after the Claimant had become aware of the State Foreclosure

Proceedings, and on the Claimant's request (State Appellate Decision at 2), "the [Trial Court]

postponed the Sheriff's sale for a period of two months to allow [the Claimant] to cure or satisfy

the mortgage deficiencies; however, [he] took no such action during that two month period" (State

Appellate Decision at 6).  The Claimant's allegations that he relied on Green Tree's allegedly

deceptive conduct do not square with his allegations that he stopped paying his Mortgage because

of a lis pendens filed by the USAO.  The Court is not bound to try to reconcile these inconsistent

allegations.  *Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*, No. 10-cv-1777, 2011 WL 381612,

at *6 (E.D.N.Y. Feb. 2, 2011) ("Where plaintiff's own pleadings are internally inconsistent, a court

is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in

deciding a motion to dismiss." (quoting *Milner v. Bridal Guide Mag.* (*In re Richartz, Fliss, Clark

& Pope, Inc.*), No. 08-13919, 2010 WL 4502038 (Bankr. S.D.N.Y. Nov. 1, 2010))).  Even if he

did justifiably rely on the allegedly deceptive conduct, that reliance could not have caused his loss,

since the Trial Court allowed him two months to cure his default, which he failed to do.  The

Claimant has failed to state a claim for relief under the UTPCPL.

***Violation of Act 6***

The Claimant contends that Green Tree violated sections 403 and 404 of Act 6. Claim ¶¶ 57–67; Proposed Amended Claim, art. IIA, ¶ 3 art. IIB, ¶ 3. He asserts that as a result of this violation, he lost all principal and interest paid toward the mortgage and the value of the Property, including improvements made to it. Claim ¶ 66; Proposed Amended Claim art. IIA, ¶ 3(c), art. IIB, ¶ 3(c).

Act 6 "is a consumer protection statute for residential mortgage debtors that provides an 'extensive program designed to avoid mortgage foreclosures.'" *Bayview Loan Servicing, LLC v. Lindsay*, 185 A.3d 307 (Pa. 2018) (quoting *Bennett v. Seave*, 554 A.2d 886, 891 (Pa. 1989)); *see Benner v. Bank of Am. N.A.*, 917 F. Supp. 2d 338, 357 (E.D. Pa. 2013) ("Act 6 is a 'comprehensive interest and usury law with numerous functions,' one of which is that 'it offers homeowners with "residential mortgages" a measure of protection from overly zealous "residential mortgage lenders."'" (quoting *In re Graboyes*, 223 F. App'x 112, 114 (3d Cir. 2007))). Sections 403 and 404 contain pre-foreclosure notice, and right to cure provisions respectively. They apply only to "residential mortgages." *See* 41 Pa. Stat. §§ 403(a), 404(a).

A "residential mortgage" is—

> an obligation to pay a sum of money in an original bona fide principal amount of the base figure or less, evidenced by a security document and secured by a lien upon real property located within this Commonwealth containing two or fewer residential units or on which two or fewer residential units are to be constructed and shall include such an obligation on a residential condominium unit.

*Id.* § 101 (definition of "residential mortgage"). For these purposes, the base figure is the level under which the protections of Act 6 apply to residential mortgages. It is adjusted annually for inflation by the Department of Banking. *Id.* § 101 (definition of "base figure").

To qualify as a "residential mortgage" under Act 6, the original bona fide principal amount of the mortgage must meet the definition of "residential mortgage" at the transaction. *Murphy v. Bank of Am., N.A.*, No. 13-5719, 2016 WL 1020969, at *5 (E.D. Pa. Mar. 14, 2016); *Trunzo v. Citi Mortg.*, 43 F. Supp. 3d 517, 534 (W.D. Pa. 2014).   In applying these provisions, courts use the base figure in effect at the time of the transaction.   *See Johnson v. Phelan Hallinan & Schmieg, LLP*, 235 A.3d 1092, 1099 (Pa. 2020).   In other words, if a mortgage does not fall within Act 6's scope on the closing date, it does not later become subject to Act 6 even if the statutory ceiling for Act 6 coverage changes and the mortgage would fall within the re-set ceiling.   *See Trunzo*, 43 F. Supp. 3d at 535 ("Notwithstanding the 2008 amendment, courts have looked to the bona fide principal amount set at the time of the transaction, and not at a subsequent date, for considering whether a residential mortgage comes under Act 6.").

The Claimant originated his Mortgage in 2007.   *See* Note at 1; Proposed Amended Claim art. I, ¶ 1.   At that time, the term "residential mortgage" was defined under Act 6 as "an obligation to pay a sum of money in an original bona fide principal amount of fifty thousand dollars ($50,000) or less."   41 Pa. Stat. § 101 (amended by Act of July 8, 2008, Pa. P.L. 824, No. 57 § 1).[28]   At origination, the principal amount of the loan was $256,000.   The principal amount at origination exceeded $50,000, so Act 6 does not apply.   Accordingly, the Claimant fails to state a claim for relief under Act 6.

---

[28]   In 2008, the principal amount that defines a "residential mortgage" was increased to $217,873, which is a base figure that is annually adjusted for inflation. 41 Pa. Stat. § 101.  In 2013, at the time of the foreclosure of the Property, Act 6 coverage was limited to $234,692.   *See Historical Act 6 Base Figures*, Pa. Dept. of Banking Secs., https://www.dobs.pa.gov/For%20Media/Pages/Act-6-Information.aspx (last visited Dec. 6, 2023).

***Breach of the Covenant of Good Faith and Fair Dealing***

Under Pennsylvania law, "a breach of the covenant of good faith and fair dealing is a breach of contract action, not an independent action for breach of a duty of good faith." *Mony Life Ins. Co. v. Snyder*, 275 F. Supp. 3d 516, 528 (M.D. Pa 2017) (quoting *Hanaway v. Parkesburg Grp. LP*, 132 A.3d 461, 471–72 (Pa. Super. Ct. 2015)). To state a claim of breach of contract under Pennsylvania law, the Claimant must allege facts demonstrating: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resulting damages. *Hart v. Arnold*, 884 A.2d 316, 332 (Pa. Super. Ct. 2005); *see also Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 884 (Pa. Super. Ct. 2000).

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. "When a writing is clear and unequivocal, its meaning must be determined by its contents alone."

*Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001) (citations omitted) (quoting *Robert F. Felte, Inc. v. White*, 302 A.2d 347, 351 (Pa. 1973)). To establish resulting damages, the Claimant must show a causal connection between the breach and the loss. *See 412 North Front St. Assocs., LP v. Spector Gadon & Rosen, PC*, 151 A.3d 646, 657 (Pa. Sup. Ct. Nov. 29, 2016).

Central to the Claimant's breach of contract claim in the Claim and Proposed Amended Claim are his contentions that Green Tree (i) sent the Notices of Default to the wrong address, and (ii) failed to respond to the November Letter. The Court considers those matters below.

Notices of Default

The Claimant asserts that in April 2011, the Claimant's mother notified Green Tree that the Claimant and his wife "were being held in the [ACCC] in Gettysburg, Pennsylvania, and requested the monthly billing statements to be sent to her address at 513 McArthur Blvd., Warner Robins, GA 31093." Second Amended Complaint ¶ 13. The Claimant acknowledges that Green Tree sent a Notice of Default to the PA Address and the GA Address. *Id.* ¶ 20. Nonetheless, he asserts that "[Green Tree] failed to ascertain [the Claimant]'s actual address [i.e., the ACCC] and send the Notice of Default to that address." *Id.* ¶ 105(A). He asserts Green Tree breached paragraph 22 of his Mortgage by sending Notices of Default to the wrong address. *Id.* ¶¶ 102–03.

In the Proposed Amended Claim, the Claimant maintains that Green Tree should have known to send notices under the Mortgage to him at the ACCC. *See* Proposed Amended Claim art. I, ¶ 7. He says that is so because his mother "notified Greentree [sic] in writing that [the Claimant] had been arrested on federal charges, ACCC was his new notice address, but requested that monthly billing statements be sent to her address at 513 McArthur Blvd., Warner Robbins, Georgia." *Id.* The Claimant acknowledges that notices of default were sent to the PA Address and the GA Address. *Id.* art. I, ¶ 12. Still, he contends that after Karen Bowen notified Green Tree that the Claimant was incarcerated at the ACCC, Green Tree breached its duty by sending the Notice of Default to the PA Address and the GA Address, and not to the ACCC. *Id.* art. IIA, ¶ 1(b). The Claimant does not identify the section of the Mortgage that Green Tree allegedly breached, in providing such notice to the PA Address and the GA Address, but not to the ACCC.

The fact that Green Tree sent notices of default to Claimant at the PA Address and GA Address, but not to the ACCC, does not support Claimant's breach of contract claim under either the Claim or Proposed Amended Claim. Paragraph 22 of the Mortgage requires the lender to

provide notice to the borrower prior to acceleration following the breach of any covenant, including the failure to pay.  Mortgage ¶ 22.[29]  Paragraph 15 of the Mortgage addresses how and where notices under the Mortgage must be given.  That paragraph states, in relevant part:

> Notices. All notices by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with the Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise.  The notice address shall be the Property Address unless the Borrower has designated a substitute notice address by notice to Lender.  Borrower shall promptly notify Lender of Borrower's change of address.  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.  There may be only one designated notice address under this Security Instrument at any one time.  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Mortgage ¶ 15.  The Claimant asserts that based on his mother's alleged notice to Green Tree that the Claimant and Rebecca were incarcerated at the ACCC, Green Tree should have ascertained the

---

[29] Paragraph 22 of the Mortgage states:

> Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) the failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorney's fees and costs of title evidence to the extent permitted by Applicable Law.

Mortgage ¶ 22.

Claimant's actual address as the ACCC, not the address specified in the Mortgage, for purposes of satisfying the notice requirements under the Mortgage. Proposed Amended Claim art. I, ¶ 7. However, the Mortgage does not impose such an obligation on Green Tree. Rather, paragraph 15 of the Mortgage obligates the Claimant to notify Green Tree in writing of a change of address.

Even assuming, *arguendo*, that, as asserted in the Proposed Amended Claim, the Claimant's mother notified Green Tree that the ACCC was the Claimant's new address, the Claimant nonetheless has failed to state a claim that Green Tree breached paragraph 22 of the Mortgage for several reasons. First, the plain language of the Mortgage provision permits the Borrower—not a third-party who is a stranger to the agreement—to alter the notice address. Thus, the Claimant's mother lacked authority to change the notice address. Second, the Claimant does not provide any details regarding where his mother sent the request or that Green Tree received it. Third, the notice that the Claimant's mother allegedly sent to Green Tree appears to identify two addresses, while the Mortgage permits only a single designated notice address, and the Claimant acknowledges that the Notices of Default were sent to one of the addresses. Fourth, Green Tree could not have breached a notice provision unless neither the Claimant nor his wife received the notice, which he did not allege. *See* Mortgage ¶ 15 ("Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise."). Lastly, the Claimant's earlier pleadings which allege that Green Tree knew that he was incarcerated and was therefore required to ascertain his address (indicating that such address was not provided to Green Tree) is contradicted by his later allegation that his mother provided written notice to Green Tree that "ACCC was his new notice address."

Response to November Letter

The Claimant asserts that Green Tree did not respond to the November Letter.  Second Amended Complaint ¶ 105(B)(i); Response at 35.  In the Proposed Amended Claim, the Claimant asserts that he "sent a settlement letter to [Green Tree] asking for leniency, to not cause the sale of the PA Property, and conveying that he wanted to cure the default."  Proposed Amended Claim art. I, ¶ 26.  He contends that Green Tree's failure to respond to this letter was a breach of good faith and fair dealing.  *Id.* art. IIB, ¶ 1(b).  He does not identify any section of the Mortgage that Green Tree allegedly breached by not responding to this letter.

The Consumer Claims Trustee does not dispute that the Claimant sent a letter to Green Tree in which he says that he is able to catch up and asks that it not sell the Property.  Though the Claimant does not cite to a specific paragraph of the Mortgage that would require Green Tree to respond to his letter, he cites to paragraph 19 of the Mortgage which describes the right to reinstate the Mortgage after acceleration.  Proposed Amended Claim art. I, ¶ 2.  Paragraph 19 of the Mortgage states that a Borrower cannot reinstate the Mortgage unless it:

> (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.

Mortgage ¶ 19.  At the Strausbaugh Sufficiency Hearing, he also cited to paragraph 25 of the

Mortgage, which permits him to reinstate the Mortgage up to an hour prior to the Sheriff's sale.

Hr. Tr. at 34:1–12.  Paragraph 25 states that:

> Borrower's time to reinstate provided in Section 19 shall extend to one hour prior
> to the commencement of bidding at a sheriff's sale or other sale pursuant to this
> Security Instrument.

Mortgage ¶ 25.

Those above-quoted provisions of the Mortgage do not obligate Green Tree to respond to

the November Letter.  Moreover, the November Letter does not ask Green Tree to provide a payoff

amount or payoff date or other relevant information necessary to effectuate his responsibilities

under paragraph 19.  The letter states:

> I come to you in negotiation and in pursuit of your lenience not to cause the
> November 16th, 2012 sale of my home . . . . I have the opportunity to lease out my
> home which will prove significant in paying my indebtness [sic] to your company,
> as well as to save my castle.  This proposition – and request for your lenience – will
> allow you to receive "in full", every last penny regarding your involvement in this
> matter, versus, the Sheriff's/Court's auction giving you merely what is obtained by
> "the highest bidder." . . . I would ask you to allow me the chance to handle this
> matter without the sale of my home, or, future court action.

November Letter at 1.  Finally, the Claimant does not identify any provision of the Mortgage or

law that would require Green Tree to respond to such a letter.

Claimant's breach of contract claim fails as a matter of law.

### Motion to Amend

The Claimant's Motion to Amend is denied because amendment would be futile.  An

amended pleading is futile if it could not withstand a motion to dismiss.  *Oneida Indian Nation of*

*N.Y. v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir. 2003), *rev'd on other grounds*, 544 U.S. 197

(2005). The Proposed Amended Claim does not substantively alter the claims that the Claimant asserts against Green Tree.  Rather, it streamlines the Second Amended Complaint "to reduce confusion and clarify the claims presented."  Motion to Amend at 2.  Because the Proposed Amended Claim is substantively identical in to the Second Amended Complaint, and because the Court has considered the legal sufficiency of the Proposed Amended Claim together with the Second Amended Claim, the Court's holding that the claims in the Second Amended Complaint fail to state a claim upon which relief can be granted mean that granting the Claimant's Motion to Amend would be futile.

## <u>Conclusion</u>

Based on the foregoing, the Court sustains the Objection, disallows and expunges the Claim, and having considered the Motion to Amend together with the Second Amended Complaint, denies the Motion to Amend as futile.

Dated: New York, New York
       December 7, 2023

                                        /s/ *James L. Garrity, Jr.*
                                        Honorable James L. Garrity, Jr.
                                        United States Bankruptcy Judge