UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

------------------------------------------------------- x
In re:

Ditech Holding Corporation, *et al.*,

                                        Debtors.[1]
------------------------------------------------------- x

Case No. 19-10412 (JLG)

Chapter 11

(Jointly Administered)

# MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS TRUSTEE'S FORTY-SIXTH OMNIBUS OBJECTION WITH RESPECT TO THE PROOF OF CLAIM FILED BY PENNY CRANK

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:    Richard Levin

PENNY CRANK
*Appearing Pro Se*
6788 Thicket Hill
Florence, Kentucky 41042

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[2]

Penny Crank f/k/a Penny D. Williams ("Claimant") is acting pro se in this contested matter. On June 1, 2019, Claimant filed Proof of Claim 23203 (the "Claim") against Ditech Financial LLC ("Ditech") asserting an unsecured claim in the sum of $30,000. Claim at 1. On June 18, 2021, the Consumer Claims Trustee filed her Forty-Sixth Omnibus Objection to Proofs of Claim (the "Objection"),[3] seeking an order disallowing claims that fail to state a legal basis establishing wrongdoing or liability against Ditech giving rise to a right to recovery. On July 16, 2021, Claimant responded to the Objection (the "Response").[4] On December 12, 2023, the Consumer Claims Trustee filed her reply to the Response (the "Reply").[5]

Pursuant to the Claims Procedures Order,[6] the filing of the Response caused an adjournment of the Objection so that the Court could conduct a Sufficiency Hearing on the Claim. The legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[7] Claims Procedures Order ¶ 3(iv)(a).

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[3]  *Consumer Claims Trustee's Forty-Sixth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims)*, ECF No. 3461.

[4]  *Response to Consumer Claims Trustees* [sic] *Forty-Sixth Omnibus Objection to Proof of Claim*, ECF No. 3556.

[5]  *Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee's Forty-Sixth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims) Solely as to the Claim of Penny Crank (Claim No. 23203)*, ECF No. 4942.

[6]  *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

[7]  Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In filing the Objection, the Consumer Claims Trustee and Plan Administrator initiated a contested matter. *See Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs., Inc.)*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter"). Bankruptcy Rule 9014 governs contested matters. The rule does not explicitly provide for the application

2

The Consumer Claims Trustee, through counsel, and Claimant appeared at the December 28, 2023 Sufficiency Hearing (the "December 28 Hearing"), and the Court heard arguments from the parties. The Court has reviewed the Claim, Objection, Response, and Reply, including all documents submitted in support thereof, and has considered the arguments made by the parties in support of their positions.

For the reasons set forth herein, the Court sustains the Objection and disallows the Claim.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

### The Loan

On or around May 13, 2005, Claimant executed a promissory note in the amount of $97,500 in favor of Countrywide Home Loans, Inc. (the "Note"),[8] which was secured by a mortgage (the "Mortgage")[9] on real property located at 902 3rd Avenue, Dayton, Kentucky, 41074-1216 (the

---

of Bankruptcy Rule 7012. However, Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply." Fed. R. Bankr. P. 9014. The Court did so in the Claims Procedures Order.

[8] The Note is annexed as Exhibit A to the Reply. The Court takes judicial notice of the Note and the other documents annexed to the Reply, as they are integral to the Claim. *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) ("[Courts] must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *see Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (holding that, in a contract action, a court can take judicial notice of the underlying contract as a document "integral to the complaint"); *Leon v. Shmukler*, 992 F. Supp. 2d 179, 184 n.1 (E.D.N.Y. 2014) ("It is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records.").

[9] The Mortgage is annexed as Exhibit B to the Reply.

3

"Property") (together, the Note and Mortgage are the "Mortgage Loan"). On June 5, 2009, BAC Home Loan Servicing, LP f/k/a Countrywide Home Loan Servicing LP filed a Lis Pendens Notice[10] providing notice that a foreclosure action against Claimant and several additional individuals had been initiated.[11]

On June 12, 2013, Mortgage Electronic Registration Systems Inc., as nominee for Countrywide Home Loans, Inc., assigned the Mortgage Loan to Ditech's predecessor, Green Tree Servicing, LLC.[12] On or about February 13, 2020, Ditech assigned the Mortgage Loan to New Residential Mortgage LLC.[13]

**The Chapter 11 Cases**

On February 11, 2019, Ditech Holding Corporation and certain of its affiliates, including Ditech (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[14]

---

[10]   The Lis Pendens Notice is annexed as Exhibit C to the Reply.

[11]   *See BAC Home Loan Servicing, LP f/k/a Countrywide Home Loan Servicing, LP v. Penny Crank fka Penny D. Williams, Gus Crank, Jeffrey C. Williams, Rhonda Williams*, No. 09-CI-00829 (Ky. Cir. Ct. June 5, 2009).

[12]   The assignment to Green Tree Servicing, LLC is annexed as Exhibit D to the Reply.

[13]   The assignment to New Residential Mortgage LLC is annexed as Exhibit E to the Reply.

[14]   *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

4

Thereafter, the Court extended the General Bar Date for consumer borrowers twice, ultimately setting the date as June 3, 2019.[15]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, and on September 30, 2019, that plan became effective.[16] The Consumer Claims Trustee is a fiduciary appointed under the Third Amended Plan who, in accordance with the plan, is responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims. *See* Third Amended Plan art. I, § 1.41. The Consumer Claims Trustee has the exclusive authority to object to Consumer Creditor Claims. *See id.* art. VII, § 7.1.

**The Claims Procedures Order**

Under the Claims Procedures Order, the Consumer Claims Trustee is authorized to file Omnibus Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order. *See* Claims Procedures Order ¶ 2(i)(a)-(h). A properly filed and served response to an objection gives rise to a "Contested Claim" that will be resolved at a Claim Hearing. *Id.* ¶ 3(iv). The Consumer Claims Trustee and Plan Administrator have the option of scheduling the Claim Hearing as either a "Merits Hearing" or a "Sufficiency Hearing." *Id.* ¶ 3(iv)(a), (b). A "Merits Hearing" is an evidentiary hearing on the merits of a Contested Claim. A "Sufficiency Hearing" is a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. The legal standard of review that the Court applies at a Sufficiency Hearing is

---

[15] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[16] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

**The Claim**

On June 1, 2019, Claimant filed the Claim as unsecured and in the amount of $30,000. Claim at 1-2. It consists of the Official Form 410, Proof of Claim and a one-page summary of Claimant's allegations in support of the Claim. Claimant lists the basis of the Claim as "Borrower." *Id.* at 2.

In support of the Claim, Claimant asserts that in May 2009, Ditech held two of her mortgage payment checks, forcing her account into a 90-day delinquency, and thereafter commenced a foreclosure suit against her. *Id.* Claimant avers that she had to sell personal property worth $22,000 to cure her default and resolve the foreclosure action. She also asserts that Ditech failed to apply approximately twenty overpayments to the loan.[17] *Id.* at 4. She complains that "[t]he strain and hassle of dealing with [Ditech] has affected the quality of [her] life. It is bully and repeated predatory behavior." *Id.* She says that she is "claiming [$]8,000.00 in damages, and [$]22,000 to replace personal property from forced foreclosure." *Id.*

**The Objection**

On June 18, 2021, the Consumer Claims Trustee filed the Objection seeking to disallow the claims listed therein for "fail[ure] to state a legal basis that establishes wrongdoing or liability on the part of the Debtors that would give rise to compensable recovery by the claimants." Objection ¶ 4. Specifically, the Consumer Claims Trustee objects to the Claim on the ground that

---

[17] The Claimant included the dates of the alleged overpayments but no other information. The stated dates of the alleged overpayments are: 9/22/18, 11/17/18, 2/22/2009, 3/6/2009, 4/14/2009, 9/11/2009, 5/23/11, 7/11/2011, 10/31/2011, 11/28/2011, 1/3/2012, 2/21/2012, 9/6/2013, 1/3/2014, 5/27/2014, 11/24/2014, 6/22/2015, 8/28/2015, 2/29/2016, 6/15/2017. Claim at 4.

6

"Claimant's allegation of failure to property apply payments are directed at predecessor servicer and thus fails to state a cognizable claim against Debtor for which relief can be granted." Objection, Ex. A at 1.

**The Response**

The Claimant explains that the Claim is based on two allegedly "unlawful" and "predatory" actions taken by Ditech in servicing her Mortgage Loan. Ditech (i) withheld her Mortgage payments and, in so doing, forced her account into foreclosure, and (ii) improperly credited her Mortgage payments to her account.[18] Response at 1.

Claimant alleges that Ditech "forcibly and unlawfully attempted to foreclose on [her] property" by holding two checks in May 2009. *Id.* She states she contacted customer service about this, but they hung up on her multiple times and did not answer her questions. *Id.* She complains that "[i]t is unlawful for a financial company to not process payments with the intent to steal property." *Id.* She asserts that on June 1, 2009,[19] Ditech demanded that, on or before June 15, 2009, Claimant pay the sum of $6,626.86, consisting of "3 months of escrow, with reserve and lawyer fees" and that to meet that demand, she had to sell many items of personal property. *Id.*

Claimant states that she "discovered the disappearance of money paid but not applied anywhere while making the claim for forcing foreclosure." *Id.* Claimant acknowledges that this discrepancy does not amount to a significant amount of money, but asserts it "is not a practice any institution should engage in. Stealing from your customer is illegal." *Id.*

She complains that the "corruption and malice" that Ditech allegedly displayed is "unthinkable" and that "this unfair action of intentionally pushing [her] account to foreclosure to

---

[18] The "discrepancy history" is annexed to the Response as Exhibits 2A and 3.

[19] The Response gives this date as "June 1, 2021," which the Court understands to be a typographical error.

gain [her] property has caused extreme stress." *Id.* Claimant seeks to hold Ditech accountable for its "injustice and law breaking" in connection with the "unfair action of intentionally pushing [her] account to foreclosure to gain [her] property." *Id.*

In support of her allegations, Claimant annexes three handwritten pages of what appears to be data from her records. The first page contains a chart with the payment amount, date paid, and check number for each month's payment from January 2008 through May 2009. *Id.* at 2. Below this chart are handwritten notations stating that the two checks mailed in May 2009, each for $800, were returned to her on June 2, 2009. *Id.* She also writes that she paid the $6,626.86 demanded on June 15, 2009, and then "B.A.C. resumed the [account] in Sept. 2009." *Id.* The next page identifies the amount of thirteen unapplied overpayments and the corresponding date for each alleged overpayment. *Id.* at 3. Claimant alleges that the uncredited overpayments total $387.98. *Id.* The last page contains a list of overpayments that she alleges were applied to escrow, but not reflected in the escrow statements. *Id.* at 4. This list provides the transaction date, date of overpayment, and amount of overpayment for each such unapplied overpayment. These overpayments were made between March 2009 and June 2012 and total $194.40. *Id.*

**The Reply**

The Consumer Claims Trustee asserts that the Claim has neither met the pleading requirements of Fed. R. Civ. P. 8(a) ("Rule 8(a)"),[20] Reply ¶¶ 34-37, nor stated a plausible claim for relief against Ditech under Rule 12(b)(6). *Id.* ¶¶ 38-41. She contends that, at best, Claimant's complaints about the rejected and misapplied payments can be loosely construed as a breach of contract claim, and that Claimant has not stated grounds for relief under Kentucky Law. *Id.* ¶¶ 41-54. The Consumer Claims Trustee also asserts that Claimant's contention that "Ditech forcibly

---

[20]   Rule 8 is incorporated herein by Bankruptcy Rule 7008.

8

and unlawfully attempted to foreclose on [her] property", Response at 1, fails to state a claim for wrongful foreclosure under Kentucky law. Reply ¶¶ 55-60.

**The Estimation Motion**

On March 23, 2023, the Consumer Claims Trustee filed a motion seeking to estimate the Claim, among others, for purposes of setting a reserve.[21] The Consumer Claims Trustee sought to estimate the Claim in the sum of $30,000 and to classify it as a non-363(o) claim, as defined in the Third Amended Plan. Claimant did not respond to the motion, and on May 11, 2023, the Court entered an order granting the motion as it relates to the Claim.[22]

## APPLICABLE LEGAL STANDARDS

Pursuant to section 502(a) of the Bankruptcy Code, a claim that is properly filed under Bankruptcy Rule 3001 and section 501 of the Bankruptcy Code is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a); *In re Roman Cath. Diocese of Rockville Ctr.*, 651 B.R. 146, 158 (Bankr. S.D.N.Y. 2023) ("The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules, constitutes *prima facie* evidence of the validity and amount of the claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a)." (quoting 4 COLLIER ON BANKRUPTCY ¶ 502.02[3][e] (16th ed. 2019))). Section 502(b) sets forth the grounds for disallowing a proof of claim filed under section 501 of the Bankruptcy Code. As relevant, section 502(b) of the Bankruptcy Code provides that the Court shall determine and allow the amount of a claim subject to an objection as of the bankruptcy petition date "except to the extent that . . . (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or

---

[21] *Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4650.

[22] *Order Granting Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4733.

9

applicable law for a reason other than because such claim is contingent or unmatured . . . ." 11 U.S.C. § 502(b)(1).  In general, courts apply state law in determining whether a claim is allowable under section 502(b)(1).  *See In re Hess*, 404 B.R. 747, 749 (Bankr. S.D.N.Y. 2009) ("What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law." (quoting *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161 (1946))); *see also In re Genco Shipping & Trading Ltd.*, 550 B.R. 676, 680 (S.D.N.Y. 2015) (noting that as used in section 502(b)(1), the term "[a]pplicable law most often relates to state law").  If an objection filed pursuant to section 502(b)(1) refutes at least one of the claim's essential allegations, the claimant has the burden to demonstrate the validity of the claim.  *See, e.g.*, *Rozier v. Rescap Borrower Claims Tr. (In re Residential Cap., LLC)*, No. 15-cv-3248, 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 11-cv-8444, 2012 WL 1886755, at *3 (S.D.N.Y. May 12, 2012).

Pursuant to the Claims Procedure Order, the legal standard of review applied at a Sufficiency Hearing is equivalent to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *See* Claims Procedure Order ¶ 3(iv)(a).  Under Rule 12(b)(6), the court assesses the sufficiency of the facts alleged in support of the claim in light of the pleading requirements under Rule 8(a) of the Federal Rules of Civil Procedure.  Accordingly, in assessing the merits of the Objection, the Court must consider the sufficiency of the allegations in support of the Claim in light of the pleading requirements established by Rules 8(a) and 12(b)(6) and determine whether Claimant has stated a claim for relief.  The Consumer Claims Trustee asserts that the Court should disallow the Claim because it does not satisfy the pleading standard of Rule

8(a) and, in any event, does not state a claim upon which relief can be granted as required by Rule 12(b)(6).

The Court considers those matters below.

## ANALYSIS

### Whether the Claim Meets the Pleading Requirements of Rule 8(a)

The function of a pleading "is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1998). Rule 8(a)(2) mandates that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(d)(1) is clear that "each allegation in a pleading [must] be simple, concise, and direct" but that "[n]o technical [pleading] form is required." Fed. R. Civ. P. 8(d)(1). At all times, the Court must construe pleadings "so as to do justice." Fed. R. Civ. P. 8(e).

A claimant "is not required to prove his case at the pleading stage." *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *see also Owens v. Suter*, 02-cv-8198, 2003 WL 942554, at *1 (S.D.N.Y. Mar. 7, 2003) (noting that a pleading "does not have to set out in detail the facts on which the claim for relief is based." (quoting 2 MOORE'S FEDERAL PRACTICE ¶ 8.04[1], at 8-22 (3d ed. 2002))). However, "[i]n accordance with the liberal pleading standards of Rule 8, 'a plaintiff must disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369, 384 (Bankr. S.D.N.Y. 2007) (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)). In short, to satisfy Rule 8(a), a pleading must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Anderson*

11

*News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (noting that Rule 8(a) "does not countenance pleadings that are conclusory; it requires factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." (quoting *Twombly*, 550 U.S. at 555)).

Accordingly, dismissal of a pleading under Rule 8 "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin*, 861 F.2d at 42; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984))).

Claimant does not identify legal theories in support of the Claim. However, she clearly asserts that she has been injured by Ditech's alleged wrongful rejection and misapplication of her Mortgage payments and its alleged forcible and unlawful attempt to foreclose the Property. Claim at 4; Response at 1. Construing the Claim liberally and in the light most favorable to the Claimant, this Court finds Claimant has satisfied the Rule 8(a) requirements. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted) ("A document filed *pro se* is 'to be liberally construed', and 'a *pro se* complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))); *Ahmad v. Day*, 647 F. Supp. 3d 272, 280 (S.D.N.Y. 2022).

**Whether the Claim States a Claim for Relief Against Ditech**

A court will disallow and expunge a claim under Rule 12(b)(6), if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In applying Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the Claim in light of the pleading requirements under Rule 8(a). In doing so, the Court "must accept as true all of the factual allegations set out in [the claim]." *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001). The claim "must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Rosenblum v. Thomson Reuters (Markets) LLC*, 984 F. Supp. 2d 141, 145 (S.D.N.Y. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A motion brought under Rule 12(b)(6) challenges only the 'legal feasibility' of a complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554 (2d Cir. 2016) (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). Thus, in ruling on a Rule 12(b)(6) motion a court is "not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).

The Court considers whether Claimant has stated either a claim for wrongful foreclosure or breach of contract.

**Wrongful Foreclosure**

The Consumer Claims Trustee asserts, and the Court agrees, that by alleging Ditech "forced [her] account into foreclosure" and "forcibly and unlawfully attempted to foreclose [her] property," Claimant purports to assert a claim for wrongful foreclosure. Reply ¶ 56. At the

13

December 28 Hearing, Claimant also argued that she was not provided adequate notice prior to the attempted foreclosure. However, reading the Claim in its most favorable light, the Claimant has not, and cannot state a claim for wrongful foreclosure against Ditech. First, the Property was never foreclosed, as Claimant cured her default and reinstated the loan by paying $6,626.86. Response at 1. Moreover, the core of these allegations concerns events that occurred in and around May and June 2009. Ditech did not begin servicing the Mortgage Loan until four years later, on June 12, 2013. *See* Reply, Ex. D. Further, it was BAC Home Loan Servicing, LP f/k/a Countrywide Home Loan Servicing LP that initiated the foreclosure action on the Property—not Ditech. *Id.*, Ex. C. Claimant even acknowledges that Ditech was not servicing her loan at that point, as her handwritten note states that after she avoided foreclosure, "B.A.C. resumed acct in Sept. 2009." Response at 2.

Finally, Kentucky law provides that actions "[f]or the sale of real property under a mortgage, lien, or other encumbrance or charge, except for debts of a decedent" "must be brought in the county in which the subject of the action, or some part thereof, is situated . . . ." Ky. Rev. Stat. § 452.400. Therefore, unlike states that permit non-judicial foreclosures or foreclosures by advertisement, Kentucky is a pure judicial foreclosure state. All foreclosures in Kentucky are treated as civil actions and subject to all accompanying rules and procedures. *Am. Gen. Home Equity, Inc. v. Kestel*, 253 S.W.3d 543, 554 (Ky. 2008) ("Kentucky is a judicial foreclosure state requiring the filing of a circuit court action to pursue foreclosure as a remedy."). It is not likely that a Kentucky court would recognize a wrongful foreclosure cause of action. *Miller v. Caliber Home Loans, Inc.*, No. 16-CV-621, 2018 WL 935439, at *8 (W.D. Ky. Feb. 16, 2018) (finding, in the absence of relevant Kentucky law, that Kentucky's highest court would rule wrongful foreclosure is not a viable claim in Kentucky due to its status as a judicial foreclosure state and

14

that the underlying purpose for the claim is to protect mortgagors where there is no judicial oversight).

Claimant has not stated and cannot state a claim for wrongful foreclosure against Ditech.

**Breach of Contract**

To state a claim for breach of contract under Kentucky law, Claimant must allege facts demonstrating (i) the existence of a contract, (ii) a breach of that contract, and (iii) damages flowing from that breach. *EQT Prod. Co. v. Big Sandy Co., L.P.*, 590 S.W.3d 275, 293 (Ky. Ct. App. 2019). While Claimant does not specifically identify a contract, the Mortgage and Note provide the relevant terms as to Claimant's monthly payments. The Court presumes the contract at issue is the Mortgage, and thus, Claimant has met the first element of a breach of contract claim. *See Poynter v. Ocwen Loan Servicing, LLC*, No. 13-CV-773, 2016 WL 5380926, at *7 (W.D. Ky. Sept. 23, 2016) (discussing breach of mortgage contract claim regarding payments on modification); *Bennett v. Bank of Am., N.A.*, 126 F. Supp. 3d 871 (E.D. Ky. 2015); *Cubar v. Town & Country Bank & Tr. Co.*, 473 S.W.3d 91, 92 (Ky. Ct. App. 2015).

Claimant contends that Ditech breached the Mortgage by holding her payments in May 2009 and not properly applying her overpayments. Response at 1. Claimant does not explain how these actions breached the Mortgage, but she states that "[i]t is unlawful for a financial company to not process payments with intent to steal property" and misapplying overpayments "is not a practice any institution should engage in." *Id.*

However, construing the allegations in the Claim and the Response in a light most favorable to the Claimant, it is clear that she has not alleged facts demonstrating that either Ditech or its predecessor breached the Mortgage. Under the Mortgage, Claimant "shall pay when due the

15

principal of, and interest on, the debt evidence by the Note and any prepayment charges and late charges under the Note." Mortgage, Uniform Covenants ¶ 1. The Mortgage also provides that:

> <u>Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current</u>, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. <u>Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current</u>. <u>If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower</u>. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure.

*Id.* (emphasis added).

Claimant alleges that two of her payments were returned and not cashed in May 2009. To substantiate her allegation, Claimant appends a handwritten ledger of her payment history from January 2008 through May 2009. Response at 2. The payment history includes the month, the amount paid, the date paid, and the check number, if applicable. *Id.*

Under the Note, Claimant's monthly payment was $726.93, with a five percent late fee amounting to $36.35 that would be added for any payments made after the fifteenth of the month. Note ¶¶ 3, 6. According to Claimant's records, only the April 2008 payment was made on time and only three of the payments were for the amount stated in the Note. Response at 2. Her payments for this seventeen-month period ranged from $726.93 to $848.96. *Id.* Given that Claimant was often paying more than her actual monthly payment, she was likely aware of the incurrence of late fees.

Claimant did not make payments for March or April 2009. *Id.* Claimant sent one $800 check on May 5, 2009, and another $800 check on May 15, 2009. *Id.* However, at the time of these payments, Claimant would have owed 3 monthly payments—March, April, and May. Based

16

on only the monthly payment amount, and not considering any incurred late charges, Claimant would have owed $2,180.79.  Claimant's payments of $1,600 were not sufficient to bring the loan current, and therefore, under the terms of the Mortgage, the lender was entitled to reject these payments.

Finally, Claimant asserts that $387.98 of overpayments between January 2008 and February 2012 were not applied anywhere and $194.40 worth of overpayments applied to escrow were not reflected in the escrow statements.  *Id.* at 3-4.  As previously mentioned, these dates do not match the dates listed on the Claim, and only a few of those collective dates are within the period during which Ditech was servicing the loan.  All of the dates on or after June 12, 2013, when Ditech began servicing the loan, are listed only in the Claim, and not in handwritten ledgers included with the Response.  Claim at 4; Response at 3-4.  Claimant does not provide corresponding overpayment amounts for the dates in the Claim.  Claim at 4.

In Exhibit 2A to the Response, Claimant does provide the date of the transaction and the amount of the overpayment, and in Exhibit 3, she includes the transaction date, the date of overpayment, and the amount.  Response at 3-4.  However, from the face of the Claim, it is impossible to determine what amount was due at those times and what payments were made.  This list of dates with the general allegation that overpayments were not applied is not sufficient to establish a breach of contract.  Accordingly, Claimant has not alleged facts demonstrating that Ditech breached the Mortgage.

Moreover, in any event, Claimant fails to state a claim for breach of contract because she has not alleged facts demonstrating that she was injured by reason of the alleged breach.  "In an action for breach of contract, the measure of damages 'is that sum which will put the injured party into the same position he would have been in had the contract been performed.'"  *Barnett v. Mercy*

17

*Health Partners-Lourdes, Inc.*, 233 S.W.3d 723 (Ky. Ct. App. 2007) (citing *Perkins Motors, Inc. v. Autotruck Fed. Credit Union*, 607 S.W.2d 429, 430 (Ky. App. 1980)).  Under Kentucky law, "[c]ontract damages serve to compensate the injured party."  *Jordan v. Hibbeln*, No. 2016-CA-000406, 2018 WL 3090442, at *5 (Ky. Ct. App. June 22, 2018) (citing *Ford Contracting, Inc. v. Kentucky Transp. Cabinet*, 429 S.W.3d 397, 407 (Ky. Ct. App. 2014)).  They must be proven with reasonable certainty and therefore, in general, "uncertain, contingent, and speculative damages" are not recoverable in a claim for breach of contract.  *Ford Contracting*, 429 S.W.3d at 407 (quoting *Spencer v. Woods*, 282 S.W.2d 851, 852 (Ky. 1955)).

Claimant seeks to recover $30,000, consisting of $8,000 in damages and $22,000 for the present value of the personal property sold to pay $6,626.86 to reinstate the Mortgage.  Claim at 4.  Claimant does not provide a basis why she is entitled to recover the $8,000 sum.  She merely states that she is "claiming $8,000.00 in damages."  Claim at 4.  The Response states that there are unallocated overpayments of only $387.98 and $194.40.  Response at 3-4.  These purported damages amount to $582.38—not $8,000.

As for the personal property, Claimant's representation that it is worth $22,000 is conclusory.  Claimant does not identify what type of personal property was sold or provide any other information to substantiate the amount.  The alleged damages are no more than conjecture.  Claimant has not pleaded actual damages, which is an essential element of a breach of contract claim.

Accordingly, Claimant has not stated a claim for breach of contract against Ditech.

## CONCLUSION

Based on the foregoing, the Court sustains the Objection with respect to the Claim and disallows the Claim.

IT IS SO ORDERED.

Dated: New York, New York
January 2, 2024

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge