UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

------------------------------------------------------- x
In re:                                                  :
                                                        :   Case No. 19-10412 (JLG)
                                                        :
Ditech Holding Corporation, *et al.*,                   :   Chapter 11
                                                        :
                                                        :   (Jointly Administered)
                                         Debtors.[1]    :
------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS TRUSTEE'S TWENTY-SIXTH OMNIBUS OBJECTION WITH RESPECT TO THE PROOF OF CLAIM FILED BY JULIE IDA

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:    Richard Levin

JULIE IDA[2]
*Appearing Pro Se*
82 South Railroad Avenue
Staten Island, New York 10305

---

[1]    On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate") (Case No. 19-10412 (JLG) remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573

[2]    Ms. Ida is acting pro se herein and, in that capacity, filed the Claim and Response to the Objection. As set forth below, Ms. Ida did not appear at the Sufficiency Hearing. She did not request the Court to adjourn the hearing or otherwise seek an accommodation from the Court with respect to the hearing.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction[3]

On April 23, 2019, Julie Ida ("Claimant") filed Proof of Claim 1240 (the "Claim") as an unsecured claim against Ditech Financial, LLC ("Ditech") in the sum of $11,000. Claim at 1. On June 12, 2020, the Consumer Claims Trustee filed her Twenty-Sixth Omnibus Objection to Proofs of Claim (the "Objection"),[4] seeking to disallow claims lacking sufficient information or documentations to substantiate the claims. On July 2, 2020, Claimant filed a response to the Objection (the "Response").[5] On December 12, 2023, Consumer Claims Trustee submitted her reply to the Response (the "Reply").[6]

Pursuant to the Claims Procedures Order,[7] the filing of the Response caused an adjournment of the Objection so that the Court could conduct a Sufficiency Hearing on the Claim. The legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[8] Claims Procedures Order ¶ 3(iv)(a).

---

[3]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[4]  *Consumer Claims Trustee's Twenty-Sixth Omnibus Objection to Proofs of Claim (Insufficient Documentation Unsecured Consumer Creditor Claims)*, ECF No. 2542.

[5]  *Response of Consumer Credit Claimant Julie Ida to Consumer Claims Trustee's Twenty-Sixth Omnibus Objection to Proofs of Claim*, ECF No. 2649. Because the Response is not paginated, except where otherwise indicated, the Court will cite to it according to its PDF pagination.

[6]  *Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee's Twenty-Sixth Omnibus Objection with Respect to the Claim of Julie Ida (1240)*, ECF No. 4940.

[7]  *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

[8]  Rule 12(b)(6) is made applicable herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In filing the Objection, the Consumer Claims Trustee and Plan Administrator initiated a contested matter. *See Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs., Inc.)*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter"). Bankruptcy Rule 9014 governs contested matters. The rule does not explicitly provide for the application

On December 28, 2023, the Court conducted a Sufficiency Hearing on the Claim. The Consumer Claims Trustee, through counsel, appeared at the hearing. The Claimant did not appear at the hearing. The Court did not hear argument on the Objection. The Court has reviewed the Claim, Objection, Response, and Reply, including all documents submitted in support thereof.

For the reasons set forth herein, the Court sustains the Objection and disallows the Claim.

### Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background

#### The Loan

On January 7, 1999, Vincent Schettini deeded his interest in real property located at 82 South Railroad Avenue, Staten Island, New York 10305 (the "Property") to himself, Deborah Schettini, and Claimant as joint tenants with a right of survivorship (the "1999 Deed").[9] On July 1, 2004, Vincent and Deborah Schettini, as joint tenants with rights of survivorship, deeded 98%

---

of Bankruptcy Rule 7012. However, Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply." Fed. R. Bankr. P. 9014. Here, the Court did so in the Claims Procedures Order.

[9]     The 1999 Deed is annexed as Exhibit A to the Reply. The Court takes judicial notice of the 1999 Deed and the other documents annexed to the Reply, as they are integral to the Claim. *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) ("[Courts] must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *see Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (holding that, in a contract action, a court can take judicial notice of the underlying contract as a document "integral to the complaint"); *Leon v. Shmukler*, 992 F. Supp. 2d 179, 184 n.1 (E.D.N.Y. 2014) ("It is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records.").

3

of their interest in the Property to Thomas Ida (Claimant's ex-husband) and Julie Ida (the "2004 Deed").[10]   In the 2004 Deed, Vincent Schettini and Maryann Ida (Thomas Ida's mother) each received 1% of the remaining 2% interest on the Property as tenants in common. On or about May 3, 2006, Vincent Schettini deeded his remaining 1% interest in the Property to Thomas Ida and Julie Ida (the "Quitclaim Deed").[11]

On or about May 3, 2006, Thomas Ida and Maryann Ida executed a promissory note in the amount of $300,000 in favor of Suntrust Mortgage, Inc. (the "Note"),[12] which was secured by a mortgage (the "Mortgage")[13] on the Property (together, the Note and Mortgage are the "Mortgage Loan").  On December 22, 2009, Mortgage Electronic Registration Systems Inc., as nominee for Suntrust Mortgage, Inc., assigned the Mortgage to Federal National Mortgage Association ("Fannie Mae").[14]

On August 19, 2016, Thomas Ida and Maryann Ida modified the Mortgage by executing a Home Affordable Modification Program (HAMP) agreement (the "Loan Modification Agreement").[15]  Based on the terms of the Loan Modification Agreement, as of July 1, 2016, the new principal balance under the Note was $586,956.76, with new monthly payments of $2,864.06 beginning due as of August 1, 2016.

---

[10]   The 2004 Deed is annexed as Exhibit B to the Reply

[11]   The Quitclaim Deed is annexed as Exhibit C to the Reply.

[12]   The Note is annexed as Exhibit D to the Reply.

[13]   The Mortgage is annexed as Exhibit E to the Reply.

[14]   The assignment to Fannie Mae is annexed as Exhibit F to the Reply.

[15]   The Loan Modification Agreement is annexed to the Claim at pages 8-19 and to the Response at pages 4-15.

On or about July 25, 2018, Thomas Ida and Maryann Ida received a Notice of Assignment that the Mortgage had been sold, assigned, or transferred to MTGLQ Investors, L.P. ("MTGLQ Investors") with Ditech servicing the Mortgage.  Response at 17.

**The Chapter 11 Cases**

On February 11, 2019, Ditech Holding Corporation and certain of its affiliates, including Ditech (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases").  The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity, not including governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[16] Thereafter, the Court extended the General Bar Date for consumer borrowers, twice, ultimately setting the date as June 3, 2019.[17]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, and on September 30, 2019, that plan became effective.[18]  The Consumer Claims Trustee is a fiduciary appointed under the Third Amended Plan who, in accordance with the plan, is responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed

---

[16]    *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof,* ECF No. 90.

[17]    *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc,* ECF No. 496.

[18]    *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims,* ECF No. 1449.

Consumer Creditor Claims.  *See* Third Amended Plan art. I, § 1.41.  The Consumer Claims Trustee

has the exclusive authority to object to Consumer Creditor Claims.  *See id.* art. VII, § 7.1.

## The Claims Procedures Order

The Claims Procedures Order authorized the Consumer Claims Trustee to file Omnibus

Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth

in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order.  *See*

Claims Procedures Order ¶ 2(i)(a)–(h).  A properly filed and served response to an objection gives

rise to a "Contested Claim" that will be resolved at a Claim Hearing.  *Id.* ¶ 3(iv).  The Consumer

Claims Trustee has the option of scheduling the Claim Hearing as either a "Merits Hearing" or a

"Sufficiency Hearing."  *Id.* ¶ 3(iv)(a), (b).  A "Merits Hearing" is an evidentiary hearing on the

merits of a Contested Claim, while a "Sufficiency Hearing" is a non-evidentiary hearing to address

whether the Contested Claim states a claim for relief against the Debtors.  The legal standard of

review that the Court applies at a Sufficiency Hearing is equivalent to the standard applied by the

Court upon a motion to dismiss for failure to state a claim upon which relief can be granted under

Rule 12(b)(6).  *Id.* ¶ 3(iv)(a).

## The Claim

On April 23, 2019, Claimant filed the Claim in the unsecured amount of $11,000 on the

Official Form 410, Proof of Claim.  Claim at 1.  Claimant states the basis of the claim is that

"Ditech repeatedly refused to accept payments" and "RESPA (servicing error resulting in referral

to foreclosure)."  *Id.*[19]  Claimant annexed the Loan Modification Agreement between Thomas Ida

---

[19]    The term "RESPA" refers to the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §§ 2601-2617, with
its implementing regulations.

and Maryann Ida and Fannie Mae. *Id.* at 8-19.[20]  She also annexed Thomas Ida's and Maryann

Ida's March 2019 mortgage statement from Selene Finance ("Selene"), and a February 2019 notice

of default from Selene to Julie Ida. *Id.* at 6-7, 20.

## The Objection

In the Objection, the Consumer Claims Trustee seeks an order disallowing the Claim

"because [it] lack[s] sufficient information or documentation to substantiate the claim." Objection

¶ 8.  The Consumer Claims Trustee asserts that the Claim is not a valid prepetition claim against

Debtors and asks the Court to disallow it in its entirety "to avoid the possibility [Claimant]

receive[s] an improper recovery against the Trust, and to ensure that the Trust's beneficiaries are

not prejudiced by such improper recoveries . . . ." *Id.* ¶ 9.

## The Response

In the Response, Claimant identifies herself as a co-mortgagor of the Property along with

her ex-husband, Thomas Ida, and ex-mother-in-law, Maryann Ida.  Response at 1.  She says that

"[t]he basis of [her] claim against Ditech is that in servicing [her] mortgage, Ditech made several

errors and violated RESPA in several respects . . . ." *Id.*  She says that the Court should not

disallow the Claim, "because the documented facts demonstrate Ditech's harmful errors." *Id.*

Claimant states that after Thomas Ida and Maryann Ida executed the Loan Modification

Agreement, she timely sent the first "modified" Mortgage payment in the sum of $2,864.06 to

Ditech.[21] *Id.* at 2.  She maintains that "Ditech did not accept [her] payments on the modification,

for reasons that [she does] not understand." *Id.*  Claimant asserts Ditech returned the payments

that she tried to make toward her mortgage. *Id.*  Around July 2018, Claimant was notified that her

---

[20]    The Loan Modification Agreement is executed by Ditech as Fannie Mae's attorney in fact.  Claim at 19.

[21]    A copy of the $2,864.06 check Claimant contends she sent to Ditech is annexed to the Response at page 16.

7

loan had been sold to MTGLQ Investors but says that Ditech still serviced the Mortgage. *Id.* Around November 2018, Selene began to service the loan. *Id.*

By a letter dated February 28, 2019, Selene advised Claimant that the Property was at risk of foreclosure because the loan was 941 days and $108,719.27 in default. *Id.* at 20. Claimant also includes a statement from Selene to Thomas Ida and Maryann Ida reflecting a balance due of $104,013.07 as of December 1, 2018. *Id.* at 18-19.

Claimant maintains that in April 2019, she submitted a "qualified written request" (the "Request") to Ditech, notifying it of its alleged error in not honoring the Loan Modification Agreement and requesting, among other things, Ditech's servicing history. *Id.* at 2, 21. Claimant asserts that Ditech acknowledged receipt of the Request in a letter addressed to Thomas Ida in May 2019. *Id.* at 2. She maintains that in violation of RESPA, she did not receive a substantive response to her request for information or her notice of error. *Id.* at 2, 26.

On July 2, 2019, MTGLQ Investors filed a complaint commencing a foreclosure action on the Property.[22] The complaint alleged that the mortgagors of the Property had not made any Mortgage payments since July 2016.[23] Response at 32. MTGLQ Investors notified the mortgagors via letter dated June 17, 2020, that the outstanding balance on the Mortgage Loan was then $676,200.82. *Id.* at 36. Claimant asserts that this figure is nearly $90,000 more than the balance at the time of the Loan Modification Agreement, which is when Claimant contends Ditech stopped accepting her payments. *Id.* at 3. On March 28, 2022, MTGLQ Investors and Claimant stipulated to cancel the lis pendens and discontinue the foreclosure action.

---

[22]   The complaint is annexed to the Response at pages 30-38.

[23]   *MTGLQ Investors, LP v. Thomas Ida et al.*, No. 19-135366 (N.Y. Sup. Ct. July 2, 2019).

Claimant avers that "Ditech's conduct has been extremely costly to [her], and the cost may well include loss of [her] family home." *Id.* She "understand[s] that Ditech's conduct may constitute breach of contract, deceptive practices under section 349 of New York's General Business Law, and RESPA, all of which may afford [her] some remedy for Ditech's harmful actions." *Id.* She asks that the Claim "be allowed to proceed." *Id.*

**The Reply**

The Consumer Claims Trustee asserts that Claimant fails to adequately plead a claim under Fed. R. Civ. P. 8(a) ("Rule 8(a)"),[24] and, in any event, fails to assert facts sufficient to state a plausible claim upon which relief can be granted against Ditech under Rule 12(b)(6). Reply ¶¶ 20-23. She asserts that Claimant is not a "borrower" or "confirmed successor in interest" under RESPA and thus cannot assert a cause of action under RESPA against Ditech for failure to respond to the Request. *Id.* ¶¶ 25-31. She also contends that Claimant has not alleged facts sufficient to state a plausible claim that Ditech breached the Loan Modification Agreement by not crediting her payments. *Id.* ¶¶ 32-35.

**Applicable Legal Standards**

"The filing of a proof of claim is a prerequisite to a creditor's participation in a bankruptcy case and to the creditor's right to seek relief in the bankruptcy case." *In re Tronox Inc.*, 626 B.R. 688, 740 (Bankr. S.D.N.Y. 2021). Section 502 of the Bankruptcy Code "defines what portions of a claim may be 'allowed,' *i.e.*, recoverable in bankruptcy." *In re LATAM Airlines Grp. S.A.*, 55 F.4th 377, 383 (2d Cir. 2022). A proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). If a party in interest objects, the court must determine the claim's allowance pursuant to section 502(b), which delineates nine specific types of claims that are

---

[24]    Rule 8(a) is made applicable herein pursuant to Bankruptcy Rule 7008.

disallowed.  *Id.* § 502(b).  Under the Bankruptcy Code, a claim that is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured" will be disallowed.  *Id.* § 502(b)(1).  "In deciding whether applicable law renders a claim unenforceable [for purposes of §502(b)(1)], '[t]he basic federal rule in bankruptcy is that state law governs the substance of claims."  *In re Morales*, 506 B.R. 213, 219 (Bankr. S.D.N.Y. 2014) (quoting *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000)).  The objector has the initial burden of presenting evidence sufficient to overcome the claim's presumption of validity.  *In re Regino*, 585 B.R. 322, 326 (Bankr. E.D.N.Y. 2018).  However, "the creditor retains the ultimate burden of persuasion with regard to the validity of the claim."  *In re Live Primary, LLC*, 626 B.R. 171, 188 (Bankr. S.D.N.Y. 2021).

Pursuant to the Claims Procedure Order, the legal standard of review applied at a Sufficiency Hearing is equivalent to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *See* Claims Procedure Order ¶ 3(iv)(a).  Under Rule 12(b)(6), the court assesses the sufficiency of the facts alleged in support of the claim in light of the pleading requirements under Rule 8(a) of the Federal Rules of Civil Procedure.  Accordingly, in assessing the merits of the Objection, the Court must consider the sufficiency of the allegations in support of the Claim in light of the pleading requirements established by Rules 8(a) and 12(b)(6) and determine whether Claimant has stated a claim for relief.  The Consumer Claims Trustee asserts that the Court should disallow the Claim because it does not satisfy the pleading standard of Rule 8(a) and, in any event, does not state a claim upon which relief can be granted as required by Rule 12(b)(6).

The Court considers those matters below.

## Analysis

## Whether The Claim Meets the Pleading Requirements of Rule 8(a)

Under Rule 8(a)(2), a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). To that end, "[p]leadings are to give 'fair notice' of a claim in order to enable the opposing party to answer and prepare for trial, and to identify the nature of the case." *In re WorldCom, Inc. Sec. Litig.*, 303 F. Supp. 2d 385, 388 (S.D.N.Y. 2004) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)); *see also* Fed. R. Civ. P. 8(d)(1) ("each allegation in a pleading [must] be simple, concise, and direct" but "[n]o technical [pleading] form is required."). To satisfy Rule 8(a), a pleading must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Lopez v. Wright*, No. 9:05-CV-1568, 2007 WL 388919, at *2 (N.D.N.Y. Jan. 31, 2007) ("A complaint that fails to comply with [Rule 8(a)] 'presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims.'") (alteration in original) (quoting *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996)). Dismissal of a pleading under Rule 8 "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (quoting *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988)).

Where, as here, the Claimant is acting pro se, the Court must construe the claim "liberally with 'special solicitude' and interpret[] [it] to raise the strongest claims that it suggests." *Hogan v. Fischer,* 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). In that light, that Claimant has alleged sufficient facts to meet the Rule 8(a) standard. Claimant identifies three specific legal theories underpinning her request for recovery: breach of

contract, section 349 of New York's General Business Law, and RESPA. Response at 3. She clearly connects Ditech's alleged action—failure to substantively respond to the Request—with a legal basis that prohibits that action—RESPA. *Id.* at 2. In addition, the Response discusses the terms of the Loan Modification Agreement and Ditech's alleged failure to accept her Mortgage payments under that agreement. The Court finds these allegations amount to more than "labels and conclusions" or "naked assertion[s]" and are sufficient to satisfy the pleading threshold of Rule 8(a). *Twombly*, 550 U.S. at 555.

## Whether the Claim States a Claim for Relief Against Ditech

A court will disallow and expunge a claim under Rule 12(b)(6), if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To satisfy the Rule 12(b)(6) pleading standards, the claim must allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Vengalattore v. Cornell Univ.*, 36 F.4th 87 (2d Cir. 2022) (citing *Iqbal*, 556 US at 678). In assessing whether a claim is facially plausible, the Court accepts all allegations in the Claim as true and draws all reasonable inferences in Claimant's favor. *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021). However, the Court is not "obligated to accept as true legal conclusions couched as factual allegations." *Champion v. Moda Operandi, Inc*., 561 F. Supp. 3d 419, 432 (S.D.N.Y. 2021). "The ultimate issue 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Loughlin v. Goord*, 558 F. Supp. 3d 126, 139 (S.D.N.Y. 2021) (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might

be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

The Court considers the legal sufficiency of the Claim under each of the asserted legal theories below.

## Breach of Contract

There are four elements to a breach of contract claim under New York law: (i) existence of a contract, (ii) adequate performance by the plaintiff pursuant to the contract, (iii) defendant's breach of the contract, and (iv) damages resulting from defendant's breach. *LMEG Wireless, LLC v. Farro*, 140 N.Y.S.3d 593, 596 (App. Div. 2021).

Claimant is not a party to the Note or the Loan Modification Agreement. Still, in the Claim, she is seeking damages occasioned by Ditech's alleged breach of the Loan Modification Agreement. *See* Response at 2 (Claimant asserts that "Ditech did not accept [her] payments on the modification for reasons that [she does] not understand."). The "prudential standing rule . . . normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Warth v. Seldin,* 422 U.S. 490, 509 (1975). "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* at 499. Only parties to the contract and its intended third-party beneficiaries have prudential standing to enforce the contract. *In re Motors Liquidation Co.,* 580 B.R. 319, 340 (Bankr. S.D.N.Y. 2018) (finding that under New York law, "a non-party to a contract that does not contain unambiguous language manifesting an intent to make the non-party a beneficiary of that contract lacks prudential standing to litigate issues related to that contract." (citing *Premium Mortg. Corp. v. Equifax, Inc*., 583 F.3d 103, 108 (2d Cir. 2009))); *see Mendel v. Henry Phipps Plaza West Inc.,* 844 N.E.2d 748, 751 (N.Y. 2006) (alteration in original) ("Parties

asserting third-party beneficiary rights under a contract must establish '(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [their] benefit and (3) that the benefit to [them] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [them] if the benefit is lost.'" (quoting *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 336 (N.Y. 1983))).

New York courts have "sanctioned a third party's right to enforce a contract in two situations: when the third party is the only one who could recover for the breach of contract or when it is otherwise clear from the language of the contract that there was 'an intent to permit enforcement by the third party.'" *Dormitory Auth. v. Samson Constr. Co*., 94 N.E.3d 456, 459 (N.Y. 2018) (quoting *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co*., 485 N.E.2d 208, 212 (N.Y. 1985)).

Both Thomas Ida and Maryann Ida could recover if Ditech breached the Loan Modification Agreement, so Claimant does not fall into the first category of intended beneficiaries. *See Columbus Monument Corp. v. City of Syracuse*, 193 N.Y.S.3d 497, 504 (App. Div. 2023) (finding that a party to the relevant agreements "clearly has an enforcement right with respect to both [agreements], and therefore it cannot be concluded that petitioners are the only parties who can recover under those contracts."); *Greg Beeche, Logistics, LLC v. Cross Country Constr., LLC*, 178 N.Y.S.3d 231, 234 (App. Div. 2022) (holding plaintiff, as a contractor hired by a project's construction manager, was not an intended beneficiary of contract between the project's construction manager and a separate contractor, because, in part, plaintiff "cannot establish that it is the only entity that could recover under the contract"); *In re Fountainebleau Las Vegas Contract Litig.,* 716 F. Supp. 2d 1237, 1250 (S.D. Fla. 2010) (applying New York law to determine plaintiffs as lenders or successor-in-interest to lenders of credit agreement were not intended beneficiaries

because the credit agreement lacked a particular promise to provide plaintiffs' with a legal right to enforce it and the debtor could recover on material breach of credit agreement). Thus, to have standing, the Loan Modification Agreement must indicate an intent that Claimant be able to enforce it.

A non-party qualifies as an intended beneficiary if, for example, the promisor's obligations were rendered directly to that non-party. *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 249 (2d Cir. 2002); *see also La Pecora Bianca Holdings, LLC v. Empowered Hosp. LLC*, No. 19-09655, 2021 WL 1164267, at *3 (S.D.N.Y. Mar. 25, 2021) (holding that on a motion to dismiss, non-parties, not explicitly mentioned in the agreement, could be third party beneficiaries where agreement identifies services rendered to those non-parties). "In determining third-party beneficiary status it is permissible for the court to look at the surrounding circumstances as well as the agreement." *Fin. Assistance, Inc. v. Graham*, 143 N.Y.S.3d 380, 385 (App. Div. 2021) (quoting *Aievoli v. Farley*, 636 N.Y.S.2d 833, 833 (App. Div. 1996)). There is no language in the Loan Modification Agreement that provides Claimant the right to enforce the contract to render her an intended beneficiary. In fact, Claimant is not mentioned at all in the text of the modification. The Schedule of Mortgages annexed to the Loan Modification Agreement acknowledges that Claimant is a party to the Mortgage; her inclusion in the Schedule of Mortgages and exclusion as a party to the modification reflects the parties' intent to exclude Claimant from the agreement. *See* Loan Modification Agreement, Ex. B; *see also US Bank Nat. Ass'n v. Lieberman*, 950 N.Y.S.2d 127, 129-30 (2012) (finding defendant was not intended party of the mortgage despite having title with spouse to property underlying the mortgage because the mortgage specifically included spouse's name and excluded defendant's name). Therefore, Claimant cannot establish that she is an intended third-party beneficiary and lacks standing to pursue a breach of contract claim.

In any event, the facts alleged in support of the Claim do not support Claimant's assertion that Ditech's alleged rejection of the payments constitutes a breach of the Loan Modification Agreement. The agreement states that all covenants in the Mortgage remain in full force and effect, Loan Modification Agreement ¶ 8(b), and covenants in the Mortgage permit Ditech to return any payment or partial payment that is less than the amount due. *See* Mortgage, Covenants ¶ 1.[25] Therefore, Ditech had the right to reject and return any of Claimant's payments if they were less than the amount due at that time and it would not amount to a breach.

In support of her allegation that Ditech rejected her payment, Claimant attaches an image of a personal check dated August 19, 2016, in the amount of $2,864.06 payable to the order of Ditech. Response at 16. The Claim contains no facts demonstrating either that Claimant sent the payment to Ditech, or that payment was returned to her. Moreover, the Loan Modification Agreement is clear that the amount "may adjust periodically," and the new monthly payment amount did not include any amount for escrow and refers the borrower "to the monthly billing statement for the escrow amount owed." Loan Modification Agreement ¶ 2. The Claimant has not alleged facts demonstrating the proper amount of escrow owed when she purportedly mailed the check. Finally, Claimant asserts that payments after August 2016 were returned, but does not provide allegations of the amounts due or paid or any records of attempted payments. This is particularly significant in light of the February 2019 letter indicating that the loan was in default for 941 days since August 1, 2016. Claim at 20.

Claimant has failed to demonstrate that Ditech breached the Loan Modification Agreement by returning her Mortgage payments and thus fails to state a claim for breach of contract. Further,

---

[25]  Specifically, the Mortgage provides that the "Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights." *Id.*

Claimant has not identified any injury caused by any alleged breach of the Loan Modification Agreement. Claimant indicates that "Ditech's conduct has been extremely costly to [her], and the cost may well include loss of [her] family home." Response at 3. "To be recoverable 'damages must be not merely speculative, possible and imaginary, but they must be reasonably certain, and such only as actually follow or may follow from the breach of the contract . . . .'" *Najjar Indus., Inc. v. City of New York*, 451 N.Y.S.2d 410, 414 (App. Div. 1982) (quoting *Wakeman v. Wheeler & Wilson Mfg. Co.*, 4 N.E. 264, 266 (N.Y. 1886)). Claimant's alleged potential injury, including the loss of her home, is conjecture and refers only to a possible future damage. In addition, as previously mentioned, the foreclosure action on the Property was stipulated and dismissed in 2022 and therefore, the possible injury Claimant states did not come to fruition.

Claimant has failed to state a claim for breach of contract against Ditech.

## Deceptive Practices

Section 349(a) of the General Business Law states that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. L. § 349(a). To state a prima facie claim for relief under section 349(a), a plaintiff must allege facts demonstrating "that (1) defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir. 2000) (per curiam) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 647 N.E.2d 741 (N.Y. 1995)).

The Claimant does not allege facts demonstrating deceptive acts by Ditech, let alone deceptive acts directed against customers that were misleading in a material way. Rather, she complains that she sent the payment under the Loan Modification Agreement on time, but that

Ditech rejected her payments for reasons that she did not understand. She claims that her repeated attempts to make further payments resulted in her payments being returned but does not indicate how many or when other payments were rejected and returned. Response at 2. Claimant merely includes an image of a personal check dated August 19, 2016, paid to the order of Ditech in the amount of $2,864.06, which was the amount of the first modified payment. *Id.* at 16. She does not provide any additional details as to when the first payment was sent, she does not provide a record of it being returned, and she fails to state when or what later payments were returned by Ditech.

"The gravamen of a § 349 claim is that the offending act or practice be directed 'against the consuming public,' and not a 'single-shot transaction.'" *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-3291, 2014 WL 4742509, at *15 (E.D.N.Y. Sept. 23, 2014) (quoting *Silverman v. Household Fin. Realty Corp. of New York*, No. 12-3559, 2013 WL 4039381, at *2 (E.D.N.Y. Aug. 5, 2013)); *see also Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 535 (E.D.N.Y. 2015) (alteration in original) ("The critical question is whether 'the acts or practices have a broad [] impact on consumers at large.'" (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d at 744)). The Claimant does not complain about alleged offending acts or practices directed by Ditech against the consuming public. Rather, Claimant complains that in August 2016, she attempted to make payments under the Loan Modification Agreement and that Ditech rejected them. Response at 3. That "one shot transaction" fails to state grounds for relief under section 349(a).

Claimant has failed to state a claim against Ditech under section 349 of the General Business Law.

### Real Estate Settlement Procedures Act

RESPA, with its implementing regulations, is a "consumer-protection statute." *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181 (2d Cir. 2014) (per curiam). Section 2605 of RESPA concerns the "servicing of mortgage loans and administration of escrow accounts." 12 U.S.C. § 2605. Regulation X sets forth procedures that a servicer must follow when presented with a borrower's completed loss mitigation application. *See* 12 C.F.R. § 1024.41; *see also* Real Estate Settlement Procedures Act (Regulation X) Mortgage Servicing Final Rules, 78 Fed. Reg. 10696 (Feb. 14, 2013).

Claimant asserts that Ditech violated RESPA by failing to provide a "substantive response" to her Request. Response at 2. The provision of RESPA relevant to Claimant's allegation states:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

11 U.S.C. § 2605(e)(1)(A).[26]   A mortgage servicer can only be liable under RESPA to a "borrower." *Id.* § 2605(f). Neither the statute nor Regulation X define a "borrower." Courts in

---

[26]   The statute further provides:

> Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—
>
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>
> > (i)    to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
> >
> > (ii)   the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

this circuit hold that "the term 'borrower' under RESPA is 'someone who is personally obligated

under a federally related mortgage loan.'" *Garrasi v. Selene Fin., LP,* 407 F. Supp. 3d 110, 118

(N.D.N.Y. 2019) (quoting *Keen v. Helson*, 930 F.3d 799, 804 (6th Cir. 2019)).

Under amendments to Regulation X promulgated by the Consumer Financial Protection

Bureau, which became effective on April 19, 2018, the term "borrower" includes a "confirmed

successor in interest."  *See* Amendments to the 2013 Mortgage Rules Under the Real Estate

Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z), 81 Fed.

Reg. 72160 (Oct. 19, 2016).  Thus, both borrowers and confirmed successors in interest may assert

their rights against servicers for RESPA violations.  The regulations define the term "successor in

interest" as:

> a person to whom an ownership interest in a property securing a mortgage loan . . .
> is transferred from a borrower, provided that the transfer is:
>
>> (1) A transfer by devise, descent, or operation of law on the death of a joint
>> tenant or tenant by the entirety;
>>
>> (2) A transfer to a relative resulting from the death of a borrower;
>>
>> (3) A transfer where the spouse or children of the borrower become an
>> owner of the property;
>>
>> (4) A transfer resulting from a decree of a dissolution of marriage, legal
>> separation agreement, or from an incidental property settlement agreement,
>> by which the spouse of the borrower becomes an owner of the property; or
>>
>> (5) A transfer into an inter vivos trust in which the borrower is and remains
>> a beneficiary and which does not relate to a transfer of rights of occupancy
>> in the property.

---

(i)     information requested by the borrower or an explanation of why the information
        requested is unavailable or cannot be obtained by the servicer; and
(ii)    the name and telephone number of an individual employed by, or the office or
        department of, the servicer who can provide assistance to the borrower.

11 U.S.C. § 2605(e)(2).

12 C.F.R. § 1024.31.  A successor in interest becomes "confirmed" when "a servicer has confirmed the successor in interest's identity and ownership interest in a property that secures a mortgage loan . . . ."  *Id.*

When Claimant sent her Request to Ditech, she correctly stated that she was a "titleholder and co-mortgagor," since she signed the Mortgage.  Response at 21.  However, she is not a "borrower" as defined by RESPA because as she did not sign the Note securing the Mortgage.  Only Thomas Ida and Maryann Ida signed the Note.  Nor is she a "confirmed successor in interest" because neither Thomas Ida nor Maryann Ida transferred their ownership interest in the Property to her.

Claimant fails to state a claim for relief under RESPA against Ditech.

### Conclusion

Based on the foregoing, the Court sustains the Objection and disallows the Claim.


IT IS SO ORDERED.


Dated: New York, New York
      January 3, 2024


            /s/ *James L. Garrity, Jr.*
            Honorable James L. Garrity, Jr.
            United States Bankruptcy Judge