**UNITED STATES BANKRUPTCY COURT**　　　　　　　NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x
In re:　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:　Case No. 19-10412 (JLG)
Ditech Holding Corporation, *et al.*,　　　:
　　　　　　　　　　　　　　　　　　　　:　Chapter 11
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　Debtors.[1]　　:　(Jointly Administered)
-------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS TRUSTEE'S TWELFTH OMNIBUS OBJECTION WITH RESPECT TO THE PROOFS OF CLAIM FILED BY STEPHANIE AND LARRY JACKSON

## APPEARANCES:

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:　　Richard Levin

STEPHANIE JACKSON[2]
LARRY JACKSON
*Appearing Pro Se*
1322 Griff Street
Chattahoochee, Florida 32324

---

[1]　　On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1404 (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate") remains open and, as of February 22, 2022, all motions, notices, and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number are (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Boulevard, Suite 300, League City, Texas 77573.

[2]　　Ms. Jackson appeared at the Sufficiency Hearing on behalf of herself and Larry Jackson.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

**INTRODUCTION**[3]

On June 3, 2019, Stephanie and Larry Jackson ("Claimants") filed two proofs of claim, Proof of Claim 2068 ("Claim 2068") and Proof of Claim 2099 ("Claim 2099") (each, a "Claim" and collectively, the "Claims"), against Ditech Financial, LLC ("Ditech"). They are acting pro se in this contested matter. The Claims are factually and substantively identical, and each Claim asserts an unsecured claim against Ditech in the sum of $12,589.49. Claims at 1–2.[4] On March 13, 2020, the Consumer Claims Trustee filed her Twelfth Omnibus Objection (the "Objection"),[5] in which she seeks to disallow claims that allegedly lack adequate documentation. On May 2, 2020, Claimants filed their response to the Objection (the "Response").[6] On January 10, 2024, the Consumer Claims Trustee filed her reply to the Response (the "Reply").[7]

Pursuant to the Claims Procedures Order,[8] the Objection was adjourned when Claimants filed the Response to enable the Court to conduct a Sufficiency Hearing on the Claims. At a Sufficiency Hearing, the Court employs the legal standard applied to a motion to dismiss for failure

---

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order, and Third Amended Plan, as applicable.

[4]    Since Claim 2068 and Claim 2099 are identical, the Court addresses them collectively throughout this Memorandum Decision and Order. Each Claim contains six pages. For ease of reference, the Court will cite to Claim 2068.

[5]    *Consumer Claims Trustee's Twelfth Omnibus Objection to Proofs of Claim (Insufficient Documentation Unsecured Consumer Creditor Claims)*, ECF No. 1973.

[6]    *In re: Objection to the Disallowance to my Claim Number 2068*, ECF No. 2479. The Court construes the Response as addressing Claim 2068 and Claim 2099.

[7]    *Reply of Consumer Claims Trustee in Support of the Twelfth Omnibus Objection with Respect to the Claims of Larry and Stephanie Jackson (Claim Nos. 2068, 2099)*, ECF No. 4968.

[8]    *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil

Procedure ("Rule 12(b)(6)").[9]  Claims Procedures Order ¶ 3(iv)(a).

The Consumer Claims Trustee, through counsel, and Ms. Jackson appeared at the

Sufficiency Hearing, and the Court heard arguments from the parties.  The Court has reviewed the

Claims, Objection, Response, and Reply, including all documents submitted in support thereof,

and has considered the arguments made by the parties in support of their positions.

For the reasons set forth herein, the Court sustains the Objection and disallows the Claims.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States

District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska,

C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

### The Loan

On or around February 21, 2001, Claimants executed a promissory note in favor of Jim

Walter Homes, Inc. (the "Note"), in the amount of $278,064, secured by a mortgage (the

"Mortgage")[10] on real property located at 1322 Griff Street, Chattahoochee, Florida 32324 (the

---

[9]    Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  In filing the Objection, the Consumer Claims Trustee initiated a contested matter.  *See Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs., Inc.)*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter").  Bankruptcy Rule 9014 governs contested matters.  The rule does not explicitly provide for the application of Bankruptcy Rule 7012. However, Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply."  Fed. R. Bankr. P. 9014.  The Court did so in the Claims Procedures Order.

[10]    The Mortgage is annexed as part of Exhibit A to the Reply.  The Court takes judicial notice of the Mortgage and the other documents annexed to the Reply because they are matters of public record and are integral to the Claims. *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) ("[Courts] must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial

"Property"). The Mortgage was recorded on June 25, 2001. On or around July 19, 2001, Claimants

executed an amended promissory note (the "Amended Note")[11] in the amount of $292,428, secured

by an amended mortgage (the "Amended Mortgage")[12] on the Property. The Amended Mortgage

was recorded on October 5, 2001.

On January 1, 2012, Jim Walter Homes, Inc. merged with Ditech's predecessor, Green

Tree Servicing, LLC ("Green Tree"). Reply ¶ 3.

## The Chapter 11 Cases

On February 11, 2019, Ditech Holding and certain of its affiliates, including Ditech

(collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in

this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and

assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the

deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General

Bar Date").[13] The Court extended the General Bar Date for consumer borrowers to June 3, 2019.[14]

---

notice."); *see Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (holding that, in a contract action, a court can take judicial notice of the underlying contract as a document "integral to the complaint"); *Leon v. Shmukler*, 992 F. Supp. 2d 179, 184 n.1 (E.D.N.Y. 2014) ("It is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records.").

[11]    The Amended Note is annexed as part of Exhibit A to the Reply. The Amended Note contains a notation that "THIS PROMISSORY NOTE IS BEING EXECUTED TO CORRECT AN ERROR APPEARING IN THAT CERTAIN PROMISSORY NOTE ORIGINALLY EXECUTED BETWEEN THE PARTIES HERETO ON 02/21/2001."

[12]    The Amended Mortgage is annexed as Exhibit B to the Reply.

[13]    *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[14]    *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

On September 26, 2019, the Debtors confirmed their Third Amended Plan, which became effective on September 30, 2019.[15]  The Consumer Claims Trustee has been appointed under the Third Amended Plan as a fiduciary responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims.  *See* Third Amended Plan, art. I, § 1.41.  The Consumer Claims Trustee has the exclusive authority to object to Consumer Creditor Claims.  *See id.* art. VII, § 7.1.

**The Claims Procedures Order**

On November 19, 2019, the Court entered the Claims Procedures Order authorizing the Consumer Claims Trustee to file Omnibus Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order.  *See* Claims Procedures Order ¶ 2(i)(a)–(h).  A properly filed and served response to an objection gives rise to a "Contested Claim." *Id.* ¶ 3(iv). A "Contested Claim" is resolved at a Claim Hearing, which the Consumer Claims Trustee has the option to schedule as either a "Merits Hearing," an evidentiary hearing on the merits of a Contested Claim, or a "Sufficiency Hearing," a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. *Id.* ¶ 3(iv)(a), (b).  The legal standard of review that the Court applies at a Sufficiency Hearing is equivalent to the standard applied upon a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  *Id.* ¶ 3(iv)(a).

---

[15]    *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

## The Claims

The Claims are duplicates.  Each Claim asserts an unsecured claim for "money loaned," and each annexes a single Ditech billing statement from April 2019 (the "Billing Statement").  The Billing Statement shows a total amount due of $1,722.80, representing two regular mortgage payments of $861.40.  There is no narrative explaining the nature and basis of the Claims.  In Part 2, section 7 of Claim 2068, the Claimants state that the amount of their Claim is $12,589.49.  Claim 2068 at 1. This is the same amount of the "Advance Balance" listed on the attached Billing Statement.  *See id.* at 5.  Claimants also filled in Part 2, Section 9 of Claim 2068.  *Id.* at 2.  It asks whether "all or part of the claim is secured."  *Id.*  By checking a box, the Claimants responded "No" to that question.  *Id.*  In that section of the Claim, they also indicated that "the amount of the claim that is unsecured" is $76,890.93—the amount then owing on their mortgage, as shown on the Billing Statement. *Id.* at 2, 5.  In that section, they also assert that the secured claim amount is $0, the property value is $250,000, and the cure amount is $1,722.80, which is also the amount reflected on the Billing Statement. *Id.*  Claimants also completed the "Mortgage Proof of Claim Attachment," which is required only for a claim secured by the debtor's principal residence. *Id.* at 4.  It appears Claimants misunderstood the information requested in Section 9 as referring to their own mortgage, not their claim against Ditech, and that the Claimants did not assert the amount they claim as damages.

## The Objection

The Consumer Claims Trustee objects to the Claims, asserting they "contain insufficient information and/or documentation to establish their underlying merits."  Objection ¶ 4.  The Objection lists the total claim amount for both Claims as $76,890.93.  Objection, Ex. A at 3.

**The Response**

In their one-page Response, the Claimants provide only the following explanation:

We are sending this response in reference to our objection of the disallowance of our claim. The claim should not be disallowed due to following:

-Ditech's excessive and abusive debt collection practices.
-Ditech not notifying us of our mortgage information.
-Ditech failed to issue required debt validation ultimately depriving us of our rights and opportunity to seek information regarding our mortgage.
-Ditech inaccurately transferred records to loan servicers.
-Ditech improperly placed fees on our account causing undue stress and anxiety.
-Ditech did not report payment history to the three major credit bureaus.

Response at 1. The Response does not contain any additional narrative or annex any supporting documents.

**The Reply**

As noted, in the Response, the Claimants assert that the Claims should not be disallowed because of Ditech's alleged (1) excessive abusive debt collection practices, (2) failure to provide information about the mortgage, including debt validation, (3) inaccurately transferring records to loan servicers, (4) improperly placing fees on the account, and (5) failing to report the payment history to the credit bureaus.   In the Reply, the Consumer Claims Trustee correctly asserts that the Claimants do not state what damages they allegedly suffered at the hands of Ditech, or the amount of such damages, and have not articulated any legal theories in support of the Claims.  Reply ¶¶ 23–24.  She argues that the Claims lack sufficient information or explanation to enable her to determine the nature and basis of the Claims and thus they fail to satisfy the minimum pleading requirements of Fed. R. Civ. P. 8(a) ("Rule 8(a)").[16]  *Id.* ¶¶ 22–27.  She also asserts that, in any

---

[16]    Rule 8 is incorporated herein pursuant to Bankruptcy Rule 7008.

event, the Court should dismiss the Claims under Rule 12(b)(6) because under the most liberal reading of the Claims, the Claimants fail to plead any cause of action against Ditech. *Id.* ¶ 28.

As support for the latter argument, the Consumer Claims Trustee asserts that in Florida, (i) debt collection practices are governed by the Fair Debt Collection Practices Act (the "FDCPA") and the Florida Consumer Collection Practices Act (the "FCCPA"), (ii) mortgage servicer obligations are regulated by the Real Estate Settlement Procedures Act ("RESPA"), and (iii) credit reporting is governed by the Fair Credit Reporting Act (the "FCRA"). She explains that, although Claimants do not state any legal basis for the Claims or refer to any specific statutory violations in support of the Claims, in interpreting the Claims of the pro se Claimants liberally, she is construing the Claims as seeking relief under the foregoing statutory schemes. At the Sufficiency Hearing, the Claimants did not object to that construction of their Claims.

**<u>Motion to Estimate</u>**

On March 23, 2023, the Consumer Claims Trustee filed a motion to estimate claims (the "Estimation Motion").[17] As relevant, the Estimation Motion sought to estimate Claim 2068 at $76,890.93 and Claim 2099 at $0.00 for the purpose of setting a distribution reserve. The motion further requested that both Claims be established as Class 6 Consumer Creditor Claims that were not 363(o) unsecured Consumer Creditor Claims, as defined by the Third Amended Plan. Estimation Motion at 17. Pursuant to the Estimation and Classification Order dated May 11, 2023,[18] the Court (i) classified both Claims as non 363(o), Class 6 Consumer Creditor Claims, as

---

[17]    *Consumer Claims Trustee's Motion to Estimate for Purposes of Distribution Reserved and to Classify Certain Proofs of Claim*, ECF No. 4650.

[18]    *Order Granting Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4733.

defined in the Third Amended Plan, and (ii) estimated Claim 2068 at $76,890.93 and Claim 2099 at $0.00 for the purposes of distribution reserves.

## APPLICABLE LEGAL STANDARDS

Pursuant to section 502(a) of the Bankruptcy Code, a claim that is properly filed under Bankruptcy Rule 3001 and section 501 of the Bankruptcy Code is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a); *In re Roman Cath. Diocese of Rockville Ctr.*, 651 B.R. 146, 158 (Bankr. S.D.N.Y. 2023) ("The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules, constitutes *prima facie* evidence of the validity and amount of the claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a)." (quoting 4 Collier on Bankruptcy ¶ 502.02[3][e] (16th ed. 2019))).  If an objection refuting at least one of the claim's essential allegations is asserted, the claimant bears the burden to demonstrate the validity of the claim. *See Rozier v. Rescap Borrower Claims Tr. (In re Residential Cap., LLC)*, No. 15-cv-3248, 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *Hasson v. Motors Liquidation Co. GUC Tr. (In re Motors Liquidation Co.)*, No. 11-cv-8444, 2012 WL 1886755, at *3 (S.D.N.Y. May 21, 2012).

Section 502(b) sets forth the grounds for disallowing a proof of claim filed under section 501 of the Bankruptcy Code.  As relevant, section 502(b) of the Bankruptcy Code provides that the Court shall determine and allow the amount of a claim subject to an objection as of the bankruptcy petition date "except to the extent that (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . ." 11 U.S.C. § 502(b)(1).  In determining, for purposes of § 502(b)(1), "whether applicable law renders a claim unenforceable, '[t]he basic federal rule in bankruptcy is that state law governs the substance of claims.'"  *In re Morales*, 506

B.R. 213, 219 (Bankr. S.D.N.Y. 2014) (alteration in original) (quoting *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000)).

Pursuant to the Claims Procedures Order, the legal standard of review applied at a Sufficiency Hearing is equivalent to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *See* Claims Procedures Order ¶ 3(iv)(a).  Under Rule 12(b)(6), the Court assesses the sufficiency of the facts alleged in support of the claim in light of the pleading requirements under Rule 8(a) of the Federal Rules of Civil Procedure.  Accordingly, in assessing the merits of the Objection, the Court must consider the sufficiency of the allegations in support of the Claims in light of the pleading requirements established by Rules 8(a) and 12(b)(6) and determine whether Claimants have stated a claim for relief.

Under Rule 8(a)(2), a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  To that end, "[p]leadings are to give 'fair notice' of a claim in order to enable the opposing party to answer and prepare for trial, and to identify the nature of the case."  *In re WorldCom, Inc. Sec. Litig.*, 303 F. Supp. 2d 385, 388 (S.D.N.Y. 2004) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)); *see also* Fed. R. Civ. P. 8(d)(1) ("each allegation must be simple, concise, and direct" but "[n]o technical form is required.").  To satisfy Rule 8(a), a pleading must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To satisfy Rule 12(b)(6), the "pleadings must create the possibility of a right to relief that is more than speculative."  *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).  In considering whether that standard is met for a particular claim, the Court must assume the truth of

all material facts alleged in support of the claim and draw all reasonable inferences in the Claimant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, the Court "need not accord 'legal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness.'" *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 591 (S.D.N.Y. 2008) (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)). In short, "[i]n ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)).

Where a claimant is proceeding pro se, the Court will construe the claim liberally, although the claim must nonetheless be supported by specific and detailed factual allegations that provide a fair understanding for the basis of the claim and the legal grounds for recovery against a debtor. *Kimber v. GMAC Mortg., LLC (In re Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (citing *Iwachiw v. N.Y.C. Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005) (summary order)); *see also McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156–57 (2d Cir. 2017) (discussing the policy considerations undergirding liberal construction of pro se litigants' filings).

## ANALYSIS

### Whether Claimants State a Cause of Action Under the Fair Debt Collection Practices Act or the Florida Consumer Collection Practices Act

In Florida, consumer debt collection practices are regulated by both the Florida Consumer Collections Practices Act, Fla. Stat Ann. §§ 559.55–.785 (FCCPA) and the Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p (FDCPA). "The 'FCCPA is a Florida state analogue to the federal FDPCA.'" *Garrison v. Caliber Home Loans, Inc.*, 233 F. Supp. 3d 1282,

1286 (M.D. Fla. 2017) (quoting *Rojas v. Law Offices of Daniel C. Consuegra, P.L.*, 142 F.

Supp. 3d 1206, 1211 (M.D. Fla. 2015)).  Both statutes "regulate—in significant detail—whom a

debt collector may contact concerning a consumer debt and when, where, and how a debt collector

may communicate with a debtor and other persons." *Id.* at 1290.  In part, the Claimants challenge

Ditech's debt collection practices.  They complain about "Ditech's excessive and abusive debt

collection practices."   Response at 1.  They also complain that Ditech failed to issue "required

debt validation" which, they contend, "deprived [them] of [their] rights and opportunity to seek

information regarding [their] mortgage." *Id.*  Below, the Court considers whether those allegations

give rise to claims under the FDCPA or FCCPA.

<u>FDCPA</u>

In 1977, Congress enacted the FDCPA "to eliminate abusive debt collection practices by

debt collectors, to insure that those debt collectors who refrain from using abusive debt collection

practices are not competitively disadvantaged, and to promote consistent State action to protect

consumers against debt collection abuses."  15 U.S.C. § 1692(e); *see also Hawthorne v. Mac

Adjustment, Inc.*, 140 F.3d 1367 (11th Cir. 1998) (noting that Congress passed the FDCPA to

protect consumers from debt collectors' abusive debt collection practices).  Debt collectors are

prohibited from engaging in any conduct that results in harassment, oppression, or abuse in

connection with the collection of a debt.  15 U.S.C. § 1692d.  In addition, they are required to give

written information to consumers regarding their debts.  Accordingly, within five days of the initial

communication with a consumer regarding a debt, debt collectors must provide written notice with

details of the amount owed, the creditor, and the consumer's rights regarding debt dispute.  *Id.*

§ 1692g(a).  Consumers have thirty days within which to dispute the debt.  *Id.* § 1692g(b).  The

FDCPA permits actual damages and, in an action by an individual, additional damages of up to

$1,000.00.  *Id.* § 1692k.  Factors to be considered by the court include the frequency, nature, and intentionality of the noncompliance.  *Id.* § 1692k(b).

To state a claim for relief under the FDCPA, a plaintiff must allege facts demonstrating that "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Ledwitz v. Naderpour & Assocs., PA*, 544 F. Supp. 3d 1305, 1308 (S.D. Fla. 2021) (quoting *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360–61 (S.D. Fla. 2000)).  Under the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

The Claimants have not alleged facts demonstrating that the principal purpose of Ditech's business was to collect debts or that Ditech regularly collected or attempted to collect debts owed or due, or assertedly owed or due, to others.  For that reason, they have not alleged facts sufficient that, if assumed true, would demonstrate that Ditech was a "debt collector" under the FDCPA.

Even if the Claimants had alleged facts that, if assumed true, would demonstrate that Ditech was a debt collector, their failure to allege in more than a conclusory fashion that Ditech engaged in excessive and abusive debt collection practices is fatal to an FDCPA claim  *See Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) ("In addressing the sufficiency of a complaint we accept as true all factual allegations and draw from them all reasonable inferences; but we are not required to credit conclusory allegations or legal conclusions couched as factual allegations." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007))).

Moreover, even as Claimants assert that Ditech failed to issue "required debt validation" which, they contend, "deprived [them] of [their] rights and opportunity to seek information regarding [their] mortgage," they do not provide any factual information to suggest that Ditech had given them notice of the debt or that Claimants had formally disputed the debt.

In short, Claimants have failed to state a claim for relief against Ditech under the FDCPA.

FCCPA

!

The FCCPA is a Florida state-law analog to the FDCPA. Like the FDCPA, the FCCPA prohibits certain consumer debt collection practices. Fla. Stat. Ann. § 559.72.[19] It requires similar elements as the FDCPA to state a claim for relief:

> The first prong is substantially identical to the FDCPA, as the FCCPA only applies to consumer debt. The second prong differs from the FDCPA in that the FCCPA prohibits acts of "persons" and, accordingly, is not limited to "debt collectors." The third prong requires an act or omission prohibited by the FCCPA. In addition to these elements, several subsections of § 559.72 require an allegation of knowledge or intent by the defendant in order to state a cause of action.

*Deutsche Bank Nat. Tr. Co. v. Foxx*, 971 F. Supp. 2d 1106, 1114 (M.D. Fla. 2013) (citations omitted). The Florida statute mirrors the federal rule on civil compensatory damages. Fla. Stat. Ann. § 599.77(2). The FCCPA defines "debt" or "consumer debt" as—

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

Fla. Stat. Ann. § 559.55(6).

The FCCPA lists nineteen "prohibited" collection actions and practices. *Id.* § 559.72(1)-(19). As they relate to debt collection procedures, they provide that no"person" shall "[w]illfully

---

[19]    Though the FCCPA, like the FDCPA, defines the term "debt collector," Fla. Stat. Ann. § 559.55(6), the FCCPA's prohibitions on certain consumer debt collection practices are not limited to debt collectors, but apply more broadly to "persons." Fla. Stat. Ann. § 559.72.

communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family." *Id.* § 559.72(7).  It also bars the use of "profane, obscene, vulgar, or willfully abusive language in communicating with the debtor or any member of her or his family." *Id.* § 559.72(8).  Claimants have not alleged any facts in support of their claim of "excessive and abusive debt collection practices."  Moreover, as relevant to the Claimants' allegations, section 559.72(9) states that "no person" shall—

> Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

*Id.* § 559.55(9).  To establish a violation under that section, "it must be shown that a legal right that did not exist was asserted and that the person had actual knowledge that the right did not exist."  *Pollock v. Bay Area Credit Serv., LLC*, Case No. 08–61101–CIV, 2009 WL 2475167, at *9 (S.D. Fla. Aug. 13, 2009).  Thus, to plead a FCCPA claim, a party must allege "knowledge or intent by the debt collector in order to state a cause of action."  *Kaplan*, 88 F. Supp. 2d at 1363.  It is not enough to plead that the defendant had knowledge.  Under Florida law, "the use of the word 'knows' requires actual knowledge of the impropriety or overreach of a claim."  *In re Cooper*, 253 B.R. 286, 290 (N.D. Fla. 2000).  The Claimants have not done so here and have thus failed to allege facts demonstrating that they are entitled to relief under the FCCPA.  !

**Whether Claimants State a Claim Against Ditech Under the Real Estate Settlement Procedures Act**

RESPA, with its implementing regulations, is a "consumer-protection statute."  *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181 (2d Cir. 2014).  The statute was enacted "to insure that consumers throughout the Nation are provided with greater and more timely information on the

nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a); *see generally Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 444–45 (E.D.N.Y. 2013). RESPA applies to "federally related mortgage loan[s]," a term that includes loans secured by a lien on residential real estate "designed principally for the occupancy of from one to four families," for which the lender is federally regulated or has deposits or accounts insured by the federal government. 12 U.S.C. § 2602(1)(A), (B). A servicer's failure to comply with its RESPA obligations allows a borrower to recover any "actual damages . . . as a result of the failure" and "any additional damages," not to exceed $2,000, if there is "a pattern or practice of noncompliance" with RESPA. *Id.* § 2605(f)(1). To prevail on a RESPA claim, Claimants must show that (1) Ditech failed to comply with a RESPA obligation, and (2) Claimants sustained actual damages based on Ditech's failure to comply. *Baez v. Specialized Loan Servicing, LLC*, 709 F. App'x 979, 982 (11th Cir. 2017) (per curiam).

Claimants' complaint regarding (i) the transfer of records for loan services, (ii) the alleged imposition of fees on Claimants' account, and (iii) alleged failure to notify them of their mortgage information fall within the scope of RESPA. The Court considers whether Claimants state claims for relief under RESPA. !!

Service Transfer Issues

Under RESPA, mortgage servicers must maintain policies and procedures that enable them to manage borrower loans transparently and effectively. 12 C.F.R. § 1024.38. When transferring servicing rights, the transferor servicer must take care to timely provide documentation that will allow the successor-servicer to comply with its legal obligations to the borrower. *Id.* § 1024.38(b)(4)(i). This includes prompt "transfer [of] all information and documents in the

possession or control of the servicer relating to a transferred mortgage loan to a transferee servicer in a form and manner that ensures the accuracy of the information and documents transferred . . . ." *Id.*

Accordingly, Ditech had an obligation to timely transfer complete, accurate records to any successor-servicer. Claimants contend that Ditech "inaccurately transferred records to loan servicers." Response at 1. However, they do not allege any specific inaccuracies, identify the transferred records, or name the servicer to whom these inaccurate records were apparently transferred. Moreover, Claimants fail to address how, if at all, they were damaged by Ditech's allegedly inaccurate records transfer. They have failed to state a claim for relief under RESPA.

Improper Fees

Claimants assert that Ditech improperly placed fees on the account. *Id.* However, (i) Claimants do not state when these fees were assessed or in what amount, and (ii) the only guidance they provide is the Billing Statement, which reflects advances and shows that Claimants were one month behind on their mortgage payments. Claim 2068 at 5. The Billing Statement reflects an advance balance of $12,589.49, including $352.20 that had been advanced on the Claimants' behalf the previous month. *Id.*[20]

Mortgage servicers are required to advance payments to cover expenses when an escrow account contains insufficient funds to timely pay the expense.[21] They are also required to remit funds to the loan owner even if the funds collected from the borrower are insufficient to cover the

---

[20]    The Billing Statement says: "Advances represent money advanced by servicer to pay taxes, insurance and any other amounts currently due that are not part of an escrow account." Claim 2068 at 5.

[21]    Fannie Mae January 2017 Single-Family Servicing Guide, at B-1.1-01, Administering an Escrow Account and Paying Expenses (eff. Nov. 12, 2014), available at https://singlefamily.fanniemae.com/media/20131/display.

amounts owed.[22]  In those instances, a servicer must advance its own funds to cover funds due on delinquent mortgage loans and later seek reimbursement from the borrower.  The Amended Mortgage provides that the mortgagee may advance costs in order to protect its security interest in the property.[23]  Amended Mortgage at 1.

Claimants provide no supporting information to suggest that the itemized advances were inaccurate or unwarranted.[24]  Without factual support for their position that the fees were improper, Claimants fail to establish a claim for relief under RESPA against Ditech.

---

[22]  Fannie Mae January 2017 Single-Family Servicing Guide, at A-2.1-01, General Servicer Duties and Responsibilities (eff. Jun. 10, 2015).

[23]  The mortgagor's obligations, in pertinent part, are set forth as follows:

> [T]o pay all costs and expenses incurred or paid by the Mortgagee in collecting the indebtedness hereby secured or in enforcing or protecting the rights and security of the Mortgagee hereunder, including actual court costs and reasonable attorney's fees if referred to an attorney, . . . to keep all buildings and structures now or hereafter erected upon the mortgaged premises permanently insured against physical damage or loss from fire, lightning . . . .

> It is further covenanted that the Mortgagee may at its option, but in no event shall it be obligated to do so, advance money that should have been paid by Mortgagor hereunder in order to protect said property or the lien in security hereof, and Mortgagor agrees without demand to forthwith repay such money which amount shall bear interest from the date so advanced until paid at the rate of 10% per annum (but in no event shall the rate exceed the maximum rate permitted under Florida law), and shall be considered as so much additional indebtedness secured hereby . . . .

Amended Mortgage at 1.

[24]  The Billing Statement reflects a past due amount of $861.40.  Claim at 5.  The Amended Mortgage includes the following language regarding late payments:

> Upon default of payment by the Mortgagor, the Mortgagee may charge and collect 10% interest on all installments of the amount financed and finance charges payable by the terms of this instrument then owing and all other sums that may hereafter be or become owing, including but not limited to, late charges, attorneys'?fees [sic] and court costs.

Amended Mortgage at 2.  The Billing Statement indicates that late payments are assessed a fee of seven dollars.  Claim at 5.  Based on the limited information on the Billing Statement, it appears that on March 28, 2019, and March 29, 2019, Claimants made multiple payments, the sum of which exceeded a single monthly payment, in an effort to bring a delinquent account current.  Per the Billing Statement, payments are due on the fifth of the month, indicating that the March 29, 2019 payments were late.

Request for Information

Claimants assert that Ditech did not "notify[] [them] of [their] mortgage information." Response at 1.  Under RESPA, a servicer must respond to a borrower's request for information about its mortgage. 12 C.F.R. § 1024.36. However, borrowers must set forth the specific information sought and do so in writing.  *Id.* § 1024.36(a).

Pursuant to section 1024.36(b), "a servicer may, by written notice provided to a borrower, establish an address that a borrower must use to request information."  *Id.* § 1024.36(b).  The servicer must acknowledge receipt of an information request from a borrower within five days and must fully respond to the request within 30 days.  *Id.* § 1024.36(c).  A servicer may extend the time to respond by an additional 15 days.  *Id.* § 1024.36(d)(2)(ii).  In general, a servicer is not required to respond if the information requested is substantially the same as information previously requested, the information is irrelevant, or the request is overbroad or unduly burdensome.  *Id.* § 1024.36(f)(1).

Claimants do not allege facts demonstrating that they made any official request for information from Ditech.  Nor do they identify what information Ditech allegedly failed to provide, or when or how they were damaged by Ditech's alleged failure to respond to the request. Claimants have failed to allege facts sufficient to state a claim under RESPA.

**Whether Claimants State a Cause of Action Under the Fair Credit Reporting Act**

Claimants allege that Ditech "did not report payment history to the three major credit bureaus."  Response at 1.  The Fair Credit Reporting Act governs the accuracy of credit reporting information on consumers.  *See* 15 U.S.C. § 1681.  It is a "comprehensive statutory scheme designed to regulate the consumer reporting industry."  *Ross v. FDIC*, 625 F. 3d 808, 812 (4th Cir. 2010); *see also Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1330, 1333 (S.D. Fla.

2011) ("The FCRA is intended to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." (quoting *Allmond v. Bank of Am.*, No. 07-CV-186-J-33, 2008 WL 2445652, at *3 (M.D. Fla. June 16, 2008))).

Section 1681s-2 imposes duties on furnishers of information to credit reporting agencies ("CRAs," collectively, and each a "CRA"). Section 1681s-2(a) addresses the responsibilities of an information furnisher to provide accurate information to a CRA, and section 1681s-2(b) sets forth the duties of an information furnisher in the face of a dispute regarding the completeness or accuracy of a consumer's credit report. *See* 15 U.S.C. § 1681s-2; *see also Sprague v. Salisbury Bank & Tr. Co.*, 969 F.3d 95, 98–99 (2d Cir. 2020) (discussing application of sections 1681s-2(a) and (b)). The FCRA does not impose upon information furnishers any affirmative duty to report consumer information to CRAs. Moreover, numerous district courts have held that CRAs are not required to include particular accounts or tradelines in a credit report. *Coyle v. Experian Info. Sols.*, No. 19-cv-02645, 2020 WL 3052228, at *2 (N.D. Tex. Jun. 7, 2020) (collecting cases); *see, e.g.*, *Hammer v. Equifax Info. Servs., LLC*, No. 18-CV-1502-C, 2019 WL 7602463, at *3 (N.D. Tex. Jan. 16, 2019) (noting "the weight of authority in other circuits suggests that the FCRA does not impose an affirmative duty upon credit reporting agencies to include all relevant information about Plaintiff"); *Desautel v. Experian Info. Sol., LLC*, No. 19-CV-2836, 2020 WL 2215736, at *3 (D. Minn. May 7, 2020) ( "As a general matter, a CRA has no obligation to include a tradeline on a credit report.").

Under section 1681s-2(a), information furnishers must refrain from knowingly reporting inaccurate information, *see* 15 U.S.C. § 1681s–2(a)(1), and must correct any information they later discover to be inaccurate, *see id.* § 1681s–2(a)(2). The FCRA affords consumers the right to dispute any information reported to a credit reporting agency. *Id.* § 1681g(c)(1)(B)(iii).

20

Moreover, in appropriate circumstances, a consumer may bring an action against any person who willfully or negligently fails to comply with any requirement imposed under the FCRA and, as appropriate, recover actual or statutory damages, punitive damages, costs, and attorney's fees. *See id.* § 1681n (civil liability for willful noncompliance); *id.* § 1681o (civil liability for negligent noncompliance).

"[T]he FCRA does not provide a private cause of action for violations of Section 1681s-2(a)." *Sprague,* 969 F.3d at 99 (citing 15 U.S.C. § 1682s-2(d)); *accord Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) ("[T]he statute plainly restricts enforcement of [15 U.S.C. § 1681s-2(a)] to federal and state authorities."); *see, e.g.*, *Howard v. Mun. Credit Union*, No. 05-cv-7488, 2008 WL 782760, at *7 (S.D.N.Y. Mar. 25, 2008) (granting Rule 12(b)(6) motion to dismiss FCRA claim under section 1681s-2(a) because it does not provide for a private right of action). If a CRA notifies an information furnisher that a consumer has disputed the accuracy of the information, the furnisher must investigate the information. 15 U.S.C. § 1681s-2(b); *Quintana v. Countrywide Home Loans, Inc.*, No. 09-20427-CIV, 2009 WL 10668318, at *7 (S.D. Fla. May 26, 2009) ("[U]nder the plain language of the statute, the duty of a furnisher of credit information to investigate a credit dispute is triggered only after the furnisher receives notice of the dispute *from a consumer reporting agency*, not just the consumer." (quoting *Aklagi v. Nationscredit Fin. Servs. Corp.*, 196 F. Supp. 2d 1186, 1193 (D. Kan. 2002))). Violations under § 1681s-2(b) give rise to a private right of action. *Green v. RBS Nat. Bank*, 288 F. App'x 641, 642 (11th Cir. 2008) (per curiam). However, by itself, a dispute sent by a consumer to the furnisher does not necessarily trigger any duties under section 1681s-2(b).

To state a claim against an information furnisher, Claimants must first state a "supportable allegation that the reported information is inaccurate or incomplete." *Abukhodeir v. AmeriHome*

*Mortg. Co., LLC*, No. 21-CV-563, 2021 WL 3510814, at *3 (M.D. Fla. Aug. 10, 2021) (quoting *Leones v. Rushmore Loan Mgmt. Servs. LLC*, 749 F. App'x 897, 901 (11th Cir. 2018) (per curiam)). In addition, Claimants must allege facts demonstrating that (i) they notified the CRA to dispute the reported information, (ii) the CRA then notified the furnisher of their dispute, and (iii) the furnisher breached one of its duties under 15 U.S.C. § 1681s-2. *Id.* The failure to allege that a notice of inaccuracy was provided to the information furnisher by a CRA is fatal to a claim under section 1681s-2(b). *Markovskaya v. Am. Home Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340, 344 (E.D.N.Y. 2012).

Claimants do not allege that Ditech reported inaccurate information to the CRAs. Nor do they claim to have disputed the reporting with Ditech or the CRAs. Given that there is no affirmative duty to report, that Claimants have not alleged inaccurate reporting, and that there is no private right of action available to them, Claimants have failed to state a claim for relief under the FCRA.

## CONCLUSION

Based on the foregoing, the Court sustains the Objection and disallows the Claims.


IT IS SO ORDERED.


Dated: New York, New York
       January 26, 2024

                                        /s/ *James L. Garrity, Jr.*
                                        Hon. James L. Garrity, Jr.
                                        United States Bankruptcy Judge