**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**In re**

| | |
|---|---|
| **DITECH HOLDING CORPORATION,** *et al* | **Chapter 11** |
| **Debitors** | **Case No. 19-10412 (JLG)** |
| | **(Jointly Administered)** |

**2nd AMENDED CLAIM (COMPLAINT)**

Timothy Dugdale
11759 Arbor Glen Way
Reston, VA 20194
dugdale@atomicquill.com

**INTRODUCTION**

This adversarial case involves two private parties. No government agency is involved so there is no question of immunity. Also there are no pertinent jurisdictional filing deadlines. I have three causes of action. First, Ditech induced me into a contract that they could not fulfill. That made the contract voidable. They failed to immediately refund the check that I gave them in payment for the Certificate of Redemption they promised. Secondly, Ditech committed fraud before and after the breach of the contract. Finally, Ditech should not be discharged from their debts because they are liable for punitive damages. This is a company with a history of dubious shapeshifting that used the bankruptcy process to split into forward and reverse mortgage entities and take away over a billion dollars from the deals. Ditech's consumer creditors are left to knock off what they can from a comparatively measly kitty in this "trust."

I am a *pro se* filer, strictly non-professional as evidenced by my shambolic pleading here. The court is obligated to offer me some leeway, but contrary to the trustee's assertion, I don't want the court to toil on my behalf. All I want is a fair shake.

**A CLAIM IS A CLAIM AND EXCUSABLE NEGLECT**
**The *Pioneer* Factors and *Midland***

Equity abhors a forfeiture. Moreover, any delay in filing my claim was hardly unreasonable, especially considering I was diligently prosecuting my claim against Ditech in another forum and my name appeared on the creditors matrix. A dogged creditor should not kept from the pursuit of his prey by a statute of limitations that has had zero effect on the efficiency of the proceedings at hand.

In *Pioneer* (1993), the Supreme Court advocated an elastic approach to Rules 9006(b)(1) and 3003(c)(3) in Chapter 7 and Chapter 11 bankruptcy proceedings respectively. A claimant needs to show excusable neglect to forgive filing a late claim. In the 2nd Circuit - see *In re: Roman Catholic Diocese of Syracuse, NY* (US Bankruptcy Court, SDNY 2022) - courts are obligated to consider four key factors, with Factor C carrying the most weight.

A. Danger of Prejudice to the Debtor

Mismanagement and malfeasance led Ditech to the tar pit of bankruptcy. But as Machiavelli so famously pronounced, never let a good crisis go to waste. The question of prejudice is misplaced. It belongs squarely on Ditech and their ugly gambit against creditors. Ditech cynically filed for bankruptcy to escape potential ruin at jury trails very much like the

one I was pursuing in Eastern Michigan District Court. To add insult to injury, the restructuring players tried to shirk their responsibilities to aggrieved creditors by circumventing Section 363(o) of the Bankruptcy Code, a safeguard against opportunistic "restructuring" of predatory lenders.

B. Length of Delay and Potential Impact on Judicial Proceedings

The trustee asserts that not only was I late filing my claim but I somehow inconvenienced and disadvantaged creditors who had filed valid claims on time. That's more than a bit rich. I filed my claim as soon as I was thrown out of Eastern Michigan District Court in 2019. During the ensuing years, thanks to the automatic stay under 11 USC 362, I have had no opportunity in this court to voice my adamant objection to the discharge of Ditech's debts and to make an attendant claim for punitive damages. Now it's the second month of 2024 and I have yet have a full *sufficiency* hearing on my claim. Justice delayed is justice denied *for me*. Ditech has already run off to sin some more under new auspices. The trustee is still guarding her pot of gold as the last cases are being heard and I am one of the very last to be heard.

C. Reason for the Delay

Simply put, I was on the job, fighting the same defendant at a number of different venues over a span of years. The record clearly shows that I was diligently pursuing my claims *before* Ditech filed for bankruptcy, *while* Ditech was in bankruptcy and *even now* that they have unfairly slipped the noose of bankruptcy and cashed in. My claims survived Rule 12(b)(6) challenges in DC and Michigan federal court. I did not let my sword sleep in my hand. In *less than a week* after the judge in Eastern Michigan District Court ran me off, I filed my proof of claim. Same plaintiff, same defendant, same issues. The tenacity and the continuity of my pursuit are undeniable. Moreover, Ditech escaped into bankruptcy to scuttle legitimate claims against them. The cynical re-organization of a shameful entity like Ditech should give claimants ample benefit of the doubt when it comes to filing deadlines. There is no public interest whatsoever in allowing the rancid spirit of Ditech to set sail and plunder anew in revamped pirate ships.

D. Good Faith

Throughout my entire litigation history against Ditech I have been acting in good faith and conducting myself as a genial and co-operative litigant.

Ditech entered into a contract with me for a Certificate of Redemption. I sent them a check; they were to fulfill their end of the bargain by presenting me with a Certificate of Redemption. In short, I was going "to get paid" in the form of my home. In *Midland v. Johnson*, the Supreme Court decided such a claim is valid under the Bankruptcy Code even if the statute of limitations has run on the debt. In this circuit, the claim filing deadline of the Bankruptcy Code is considered a statute of limitations. A claim is a claim.

The burden is on the trustee to provide a clear and convincing rationale for why the claim should be barred if I, the creditor, is being stiffed on what's owed him. The trustee contends I can't invoke *Midland* because I can't overcome the time-bar factors of *Pioneer*. She's dead wrong. *Midland* trumps *Pioneer*, regardless of the tension between the Bankruptcy Code and the Fair Debt Collection Practices Act (FDCPA). The validity of the claim is what counts.

The creditors matrix sets a place at the table for you (Schedule #414041270). By filing a claim (Claim #2876), you are allowed to sit down and make a case for why you should eat. You are neither an unexpected nor uninvited guest. And I am not pursuing a "stale debt."

Finally, the court should take note that Ditech sent the matrix notice to a foreign address and they got address wrong. I was residing at 1042 Pelissier, not 1038 Pelissier, which was next door. Under the Bankruptcy Code, this is an exemption to the time-bar as well.

**CAUSES OF ACTION UPON WHICH RELIEF CAN BE GRANTED**

Law is storytelling. Facts may be facts but how you deploy and frame them carries the day. In his October 13, 2023 ruling (*In re: Ditech – The Pratts),* Judge Garrity delivers a thoroughgoing discussion of pleading requirements for fraud, negligence and breach of contract, including for a case that originated in federal court.

> When considering the merits of an objection to the adequacy of a claim under Rule 8(a), the Court is mindful of the "jurisprudential preference for adjudication of cases on their merits rather than on the basis of formalities." Salahuddin, 861 F.2d at 42. Accordingly, dismissal of a pleading under Rule 8 "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin, 861 F.2d at 42; *see also* Swierkiewicz, 534 U.S. at 514 ("Given the Federal Rules' simplified standard for pleading, `[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984))).
>
> ... Accordingly, when pleading scienter, parties "must allege facts that give rise to a strong inference of fraudulent intent." First Cap. Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 179 (2d Cir. 2004) (quoting Moore v. PaineWebber, Inc., 189 F.3d 165, 173 (2d Cir. 1999)). That may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *See* Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994); *accord* ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007). Allegations that are conclusory or unsupported by factual assertions are insufficient. *See* Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986).

Ditech is the indusputable villain in this story. It's a rank obscenity that a company like this was allowed to conduct business as long as they did before escaping into bankruptcy protection.

In 2017, Ditech first tried to kill this case in DC federal court with a motion to dismiss but they failed. I filed in DC court because the CBP was holding me "at the border" with a void removal order. A panel of the DC Circuit Court, the second highest court in the land, ordered this case transferred to the Michigan district court on my summary reversal motion, complete with all the previous pleadings which are now an essential part of the record.

As the movant in a motion for summary judgement in Eastern Michigan, Ditech carried a heavy burden of convincing the court that there was no genuine dispute of material fact. Furthermore, the court was obligated review the facts "in the light most favorable to non-moving party." *Tennial v. UPS* (Sixth Circuit 2012).

This case has <u>already cleared the bar of 12(b)(6)</u> and improper venue. In that light, Ditech's summary judgment gambit before they filed for bankruptcy - curiously for the second time in two years - should be seen as the desperate move of a wounded albeit craven animal.

**1. BREACH OF CONTRACT**

In late February 2017, in response to the February 7 correspondence from Mr. Gary Popovits (File: popovits_dugdale_redemptioncorres.pdf), my wife expressed an interest in keeping the home (the *res*) and she suggested we tap retirement savings to do so. After all, 20441 Olympia had become a family heirloom of sorts and she envisaged deeding the property to our sons either as a place for them to live or as an investment property. We reached out to Ditech who we assumed still held the note because we had received no official word or evidence that the home had been sold off. We sent Ditech a check for the amount they requested (File: Check for Redemption) and waited to receive the Certificate of Redemption. <u>The check is the smoking gun in this case.</u>

On March 25, 2017, Mr. Bejjani, the lawyer for a company called Duggan Homes contacted me, asking for a Certificate of Redemption. He attached a copy of the quit deed which is part of the record of the case. I immediately contacted Ditech's lawyer to ask what the devil was going on. The next morning, they confirmed the house had been sold. Thus began a four day derby of emails and phone calls. Mr. Bejjani, understandably skittish about dealing with Ditech as a fitting broker of a redemption, would neither confirm or deny whom

he represented. I sent emails and placed a couple of calls to the Wayne County Register of Deeds enquiring how I could redeem the property with them. After initial contact, they never followed up.

Days after the redemption period concluded, Mr Bejjani graciously reached out to me and offered to sell me the house for a reasonable "redemption" price below 50k. Alas, I did not have the money to entertain this offer because Ditech did not return my loot in a timely fashion. In point of fact, the very day Mr. Popovits acknowledged Ditech no longer held the house, they should have wired me the 45k. The redemption period was still on. I find it appalling that Ditech contended in previous proceedings that because they eventually got around to returning the money almost two months after the conclusion of the redemption period, there is no claim.

Au contraire. This was a robust breach of contract suit fueled by fraud that was headed straight to a jury in Eastern Michigan District Court. It originated as a diversity case involving property and *general* damages exceeding $75000. Federal jurisdiction, *including over the competing deeds and the subsequent eviction*, was and is crystal clear. I made a point to file in federal court because I believe that's where justice is done in the most efficient and fair manner.

**A Digital Contract is a Contract**

Digital contracts with ironclad proofs are the future of legally binding agreements not just in the United States but around the globe. Indeed, this development is particularly beneficial to people living in societies where contracts are strategically informal, routinely altered or conveniently lost in order for bad actors to steal land, shirk contractual obligations and escape accountability and attendant damages.

In 2000, the Michigan legislature passed Act 305, the UETA (Uniform Electronic Transactions Act) to deal with the reality of electronic communications and contracts. MCL 450.837 provides:

> (1) A record or signature shall not be denied legal effect or enforceability solely because it is in electronic form.
>
> (2) A contract shall not be denied legal effect or enforceability solely because an electronic record was used in its formation.
>
> (3) If a law requires a record to be in writing, an electronic record satisfies the law.
>
> (4) If a law requires a signature, an electronic signature satisfies the law.

MCL 450.843 provides "[i]n a criminal or civil proceeding, evidence of a record or signature shall not be excluded solely because it is in electronic form." Gary Popovits (and the paralegal assigned to do his biding) and I both used digital signatures in our correspondence as we negotiated the redemption contract and executed it. The trustee tries to make hay out of the paralegal's activity but she is being disingenuous. This was a contract that was in its final stages of consummation. A busy lawyer would naturally have a trusted paralegal button up the formalities of a done deal.

In *Zulkiewski v. American General Life* (Mich Appeals 2012), the court suggested "that MCL 450.839 provides for an admittedly broad requirement that an electronic signature is, in fact, what it is purported to be:

> (1) An electronic record or electronic signature is attributable to a person if it is the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.
>
> (2) The effect of an electronic record or electronic signature attributed to a person under subsection (1) is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including any agreements of the parties, and otherwise as provided by law.
>
> And once a signature is found to be attributable to the authorized party, "[w]hether an electronic record or electronic signature has legal consequences is determined by [the UETA] and other applicable law." MCL 450.835(5).

**The Redemption Contract was a Separate Entity?!**

Ditech wanted the DC and Michigan courts to believe that they are somehow immunized from accountability because I defaulted on the mortgage. I defaulted on the mortgage in part because Ditech refused to re-negotiate the loan or allow me to sell the property to a willing buyer. But the sheriff's sale extinguished the mortgage contract and the attendant debt. See *Senters v. Ottawa Savings Bank* (Michigan Supreme Court 1993). The redemption period is a separate entity. Only fraud or mistake allow a plaintiff to revisit the foreclosure process after redemption. But the redemption period <u>can be extended</u> for the very same reasons. Ditech bought this home at the sheriff's sale and their agent acted as if he had the home. That was a mistake in the redemption period. Then Ditech's senior legal counsel contended that Ditech did not give Mr. Popovits authority to negotiate with me for the redemption and thus there could be no contract in any circumstance. If there was no contract and they never could be a contract, why did Ditecth take my money and then not return it until almost two months after they took it.

In short, Ditech couldn't have it both ways. The sheriff's sale extinguished the

mortgage contract, *save for the cover-up fraud of Stewart Derrick*. The Certificate of Redemption was a separate contract strictly governed by statute and prudent judicial oversight.

**2. FRAUD AND NEGLIGENCE**

In calculating the redemption amount, Ditech effectively charged me rent to cover the period from which they bought house at the sheriff's sale until the date they received my redemption payment. Ditech did not own the house and thus had no right to invite me to send money or to charge me rent. Under the Michigan Penal Code 750.218(6)(a), this act of criminal fraud is punishable by imprisonment and fine. Ditech committed this fraud both by post and electronic communication.

I was induced into a bogus contract by Ditech's foreclosure counsel, Gary Popovits, who assumed Ditech still had the house that he himself had purchased at the sheriff's sale. This was more than a mistake, more than negligence and it was Ditech's cockup alone.

Then Ditech doubled down with an aggressive lack of accountability. Their senior counsel, Stewart Derrick, contended that Gary Popovits had no authority to enter into a redemption contract with me. This was an attempt at a coverup and it's fraudulent behavior. From *Hubbard v. Washington Mutual* (ED Michigan 2014):

> Once a foreclosure sale has taken place and the redemption period has run, a court may allow "an equitable extension of the period to redeem" if a plaintiff-mortgagor makes "a clear showing of fraud, or irregularity[.]" *Schulthies v. Barron,* 16 Mich. App. 246, 247-48, 167 N.W.2d 784, 785 (1969); *see also Freeman v. Wozniak,* 241 Mich. App. 633, 637, 617 N.W.2d 46, 49 (2000) ("[I]n the absence of fraud, accident or mistake, the possibility of injustice is not enough to tamper with the strict statutory requirements.") (citing *Senters,* 443 Mich. at 55, 503 N.W.2d at 643). Notably, the purported fraud or irregularity must relate to the foreclosure procedure. *Reid v. Rylander,* 270 Mich. 263, 267, 258 N.W. 630, 631 (1935)(holding that only the foreclosure procedure may be challenged after a sale); *Freeman,* 241 Mich. App. at 636-38, 617 N.W.2d at 49 (reversal of sheriff's sale improper without fraud, accident, or mistake in foreclosure procedure). Thus, while the "validity of sale may be tested" any "underlying equities . . . bearing on the instrument . . . cannot be made triable issues[.]" *Reid,* 270 Mich. at 267, 258 Mich. At 631.

Who was Gary Popovits and why was he directing me to send 45k to an address where Ditech does business? Was this the same Gary Popovits who bought my house at the sheriff's sale and who didn't know that the house had been sold by Ditech to Fannie Mae?

And if, as Stewart Derrick attested, Ditech did not authorize its foreclosure counsel to accept the redemption funds, why did its foreclosure counsel <u>accept the funds, including the illegal rent?</u> Why did he send me a letter dated February 7 "offering" a certificate of redemption in return for an amount calculated on the redemption price PLUS *de facto* rent?! Let's face it: Ditech failed to notify its own foreclosure counsel that it had sold the house and

engaged in criminal fraud by charging rent on a property they didn't own. Then it tried to deny that there was a contract or even pursued a contract.

By moving for redemption, my deed assumed pole position, first amongst equals. The holder of the original deed has 180 days after the first sale of the property to redeem the property. In this case the drop-dead date was March 29, 2017. Duggan Homes was the second buyer of this home during the redemption period; Fannie Mae was the first. And who sold the house to Fannie Mae? None other than Ditech Financial LLC.

In its brief to Eastern Michigan District Court, Ditech suggested that the real party at fault is Duggan Homes because they failed to file the supplemental affidavit of purchaser. If this is true, then Judge Karen Khalil of 17th District Court had no business evicting me from this home in June 2017 especially when I reminded her in open court that I had a pending case in DC District Court in which I had moved to for federal jurisdiction over <u>both the redemption question and the eviction process</u>. Duggan Homes proceeded to sell the house in October 2017. That's pretty fast, curiously so.

Ditech had no business accepting my money and they had an obligation to return it *immediately* after disclosing that they no longer owned the home.

### 3. DISCHARGE OF DEBTS

The record from Eastern Michigan District Court shows I was being diligent and tenacious in my attempt to hold Ditech accountable for their questionable moves. The judge shut down my case which I would have been presented to a jury for compensatory and punitive damages. I moved quickly to this court. Here I have kept my powder dry out of respect for the automatic stay that Judge Garrity imposed during the bankruptcy proceedings. I was and still am vehemently opposed to Ditech's bankruptcy gambit but I didn't dare violate the stay by contesting the bankruptcy proceedings in a futile motion for relief. The stay "chilled" my speech and my ability to press my case in this venue until now.

Think of this claim and all the other valid claims that this court has plowed through over the past four years. That's a lot of used and abused consumers. Ditech's collective misconduct falls squarely under the control of *Kontrick* (S. Court 2004):

> Under § 727(a), the court may not grant a discharge of any debts if the debtor, *inter alia:* (1) is not an individual; (2) has, with intent to defraud a creditor, concealed, transferred, or destroyed property of the estate (A) in the year preceding bankruptcy or (B) during the bankruptcy case; (3) has destroyed books or records; (4) has knowingly (A) given a false oath or account, (B) presented or used a false claim, (C) attempted to obtain money by acting or forbearing to act, or (D) withheld documents relating to the debtor's property or financial affairs; or (5) has failed to explain a loss or deficiency of assets. 11 U. S. C. §§ 727(a)(1)-(5).

**DAMAGES**

I have made two claims upon which this court can deliver relief in the form of compensatory and punitive damages. See Rule 12(b)(6).

Compensatory

Let us assume, *arguendo*, that I managed to secure the Certificate of Redemption and regain my house. It is now valued at some $184,000 (https://www.zillow.com/homedetails/20441-Olympia-St-Redford-MI-48240/88102206_zpid/) with potential monthly rental income of $1400. The trustee wants this court to believe that I would not have been able to pay the remaining debt on the house after redemption. She's dead wrong. I could have gone to court to have that remaining debt wiped out based upon Ditech's egregious conduct in both the foreclosure process and the redemption period. In the alternative, I could have taken out a new mortgage on the house. Closing costs and a line of home equity would have made a $70,000 loan attractive to a number of lenders like Rocket Mortgage who specialize in smaller mortgages in Metro Detroit. The average rate on a 30 year fixed mortgage in 2017 was 3.99% (https://themortgagereports.com/61853/30-year-mortgage-rates-chart).

We would then have hired a real estate agent to find a tenant or entertained a suitable Section 8 applicant. Thus, we could afford to pay even a higher interest rate of 6% on that loan, totaling $537 ($420 for the loan and $117 for taxes and fees) monthly, because we would have a tenant paying at least $1000. And don't forget the COVID-19 pandemic of 2020/20121 and the lusciously low interest rates that banks and lenders were offering for refinancing to people with sparkling credit and equity.

Punitive

Are punitive damages available in bankruptcy proceedings? Absolutely. In *Rocanova v. Equitable Life* (NY Court of Appeals 1994), the panel offered a crack in the door:

> Punitive damages are available where the conduct constituting, accompanying, or associated with the breach of contract is first actionable as an independent tort for which compensatory damages are ordinarily available, and is sufficiently egregious under the *Walker* standard to warrant the additional imposition of exemplary damages. Thus, a private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally.

My claim is on all fours with *Rocanova* and it's not just barking at the panel's decision; it's foaming at the mouth. There is a strong nexus between my claim for compensatory damages and my claim for punitive damages. I was chasing Ditech to collect on a debt and they escaped into this court to avoid accountability.

Let's pull back to a master shot. The facts of my claim extend beyond their particulars to become part of a damning intertextual indictment of how Ditech conducted its business and the terrible impact that business had on so many lives. The mere existence of this trust and the attendant myriad of consumer claims are a testament to the cavalier disregard Ditech had for its clients and the American public, a public subjected for years to Ditech's shabby entreaties to predatory lending on a variety of media platforms. Ditech saw American homeowners as suckers and marks.

But wait there's more. In 2019, this very court ruled that Ditech is not "free and clear" of our consumer claims even though the company moved to sell off its mortgage-serving rights. That should mean that this court can reach beyond the limited pot of the "trust" and into the big dollars that Ditech secured for its reorganization. Punitive damages are intended to "help" the debtor mend his ways. The spirit of Ditech is still out there, making money that I am owed.

In *Cohen* (S. Court 1998), the judges provided guidance on how much I am due for punitive damages.

> The most straightforward reading of § 523(a)(2)(A) is that it prevents discharge of "any debt" respecting "money, property, services, or . . . credit" that the debtor has fraudulently obtained, including treble damages assessed on account of the fraud. See *Field* v. *Mans,* 516 U. S. 59, 61, 64 (1995) (describing § 523(a)(2)(A) as barring discharge of debts "resulting from" or "traceable to" fraud). First, an obligation to pay treble damages satisfies the threshold condition that it constitute a "debt." A "debt" is defined in the Code as "liability on a claim," § 101(12), a "claim" is defined in turn as a "right to payment," § 101(5)(A), and a "right to payment," we have said, "is nothing more nor less than an enforceable obligation." *Pennsylvania Dept. of Public Welfare* v. *Davenport,* 495 U. S. 552, 559 (1990). Those definitions "reflec[t] Congress' broad . . . view of the class of obligations that qualify as a `claim' giving rise to a `debt,' " *id.,* at 558, and they plainly encompass treble damages: An award of treble damages is an "enforceable obligation" of the debtor, and the creditor has a corresponding "right to payment."

Ditech's fraud and negligence cost me the redemption of my house. It makes no difference if I intended to live there or install a tenant. That was my <u>asset.</u> now valued at $184,000 (https://www.zillow.com/homedetails/20441-Olympia-St-Redford-MI-48240/88102206_zpid/).

I remind the court again that at the time Ditech filed for bankruptcy, my case in Eastern Michigan District Court was headed to a jury trial during which I could ask for both

compensatory and punitive damages. A jury of my peers would have been shocked to hear how Ditech thwarted my good faith attempts to stave off foreclosure while stranded in Canada, how Ditech bollixed the redemption and how Ditech had the audacity to charge and collect rent on a property they did not own.

**CONCLUSION**

In the span of five years, I experienced deportation, foreclosure, and eviction. You arrive "at the point where there is no point," to quote a great line from *"Who's Afraid of Virginia Woolf?"*

All the same, I filed this case because I believe the loss of my home was the direct result of Ditech's malfeasance. If we had a contract, they never delivered the Certificate of Redemption. If we didn't have a contract, why did Ditech's foreclosure counsel not only take my money but direct me to make the check payable to Ditech? And the very day that Ditech admitted they didn't have the home, they should have wired me the loot. Then they're legal counsel floated a cover-up. Our contract was void and the redemption period was still on. But without the money, I was helpless in front of a clock ticking louder by the minute. in *Res ipsa loquitur* indeed.

These just aren't my facts. These are <u>the</u> facts and a jury deserved to hear those facts in open court. Again I suggest that Ditech would have been hard pressed to seat a jury that did not contain at least a few citizens whose friends or family had enjoyed Ditech's signature style of loan servicing. I was asking for $50,000 as a floor but after six years of litigation, I invite the court to consider what my toil and tribulations are worth in addition to that modest amount.

Finally, this court should take a very dim view of any attempt by the trustee, a veteran consumer advocate, to invoke as tired and lazy an objection as laches. There was no unreasonable delay in filing my claim. And Ditech was not some honest American citizen who had made a few unfortunate financial decisions or had a bit of bad luck and whose bankruptcy merited speedy absolution. Ditech filed for bankruptcy to escape accountability for countless sins of commission and omission. The cunning plan of its re-organization was always clear - to return to the swamp of infomercial capitalism to feast anew on the American public.

S/Timothy Dugdale
February 2, 2024