**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

In re:
Chapter 11

DITECH HOLDING CORPORATION*, et al.,* Case No. 19-10412 (JLG)

                    Debtors.
(Jointly Administered)

_____


### SUR-REPLY TO
### REPLY OF THE CONSUMER CLAIMS TRUSTEE IN SUPPORT OF THE CONSUMER CLAIMS TRUSTEE'S FORTY-SIXTH OMNIBUS OBJECTION WITH RESPECT TO THE CLAIM OF JAMES TURNER (Claim No. 1012)

Now Comes the litigation parties James and Jeffrey Turner and sets forth below their Sur-Reply to the Consumer Claims Trustee's Forty-Sixth Omnibus Objection (Docket Entry 3461) as it pertains to them. For the reasons that follow the Consumer Claims Trustee's objection should be denied.


Respectively Submitted

*James Turner*                    *Jeffrey Turner*
_____          _____
James E Turner                    Jeffrey B Turner
27401 SW 139th Place
Homestead, FL 33032
(305) 562-9616
Email: keygazer@gmail.com

_____

1. On September 26, 2019, the Court confirmed the Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. The Wind Down Estates, along with the last four digits of their federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Wind Down Estates' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

## SUR-REPLY.

1. The claims against the Debtor are for fraudulent charges categorized as corporate advances being added to the mortgage balance.

2. These fraudulent charges were allegedly made for insurance, inspections, repairs and fees. I estimate these fraudulent charges to be a minimum of $10700.00 and probably in excess of $210,000.00. I am unable to be more precise as the Trustee has refused production of Ditech records.

3. The Consumer Trustee in their reply allege our Response is so disorganized that it is often impossible to discern the factional allegations relevant to the claims against Ditech, forcing the Consumer Claims Trustee to form inferences as to the relevance of the statements made.

4. To support this statement, the trustee erroneously allege the Turners have not filed any documentation to support their claims which statement is misleading.  The Trustee files as "Exhibit K" to her reply a copy of the Circuit Court Counterclaim

but fails to include any of the exhibits attached to that counterclaim. (attached here as Exhibit 1).

5. From paragraph 35 thru 84 of their reply the trustee recites the Turner State Court claims and in great detail attempts to make defenses such that its clear she fully understands the substance of the Turner claims.

6. In support of their counterclaims the Turners attached as exhibits limited financial statements obtained from the Debtor (Attached as Exhibit1-D) even the most unsophisticated person would question the repetitive charges for insurance, inspection, repairs and legal fees spanning several years.

7. The Turner State Court Complaint alleges Violations of Florida Deceptive and Unfair Trade Practice Act, Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing, Violation of the Florida Consumer Collection Practices Act, Unjust Enrichment, Civil Conspiracy, Fraud in the inducement and Breach of Fiduciary Duty against the Debtor.

8. The Counterclaims against the debtor filed by James Turner and Jeffrey Tuner in the Circuit Court for Miami Dade County Florida Case No 2018-018167-CA-01 are currently stayed due to the debtor's bankruptcy.

## History of Mortgage.

9. Fannie Mae employed the debtor and its predecessors Green Tree and Everhome to service the Turners mortgage and their making home affordable loan modification program.

10.    The Debtor previously operated under the business name Green Tree Servicing LLC.

11.     Green Tree Servicing LLC acquired the mortgage service rights and the default servicing platform by merger from Everhome Mortgage Company in 2014.

12.     The Debtor thru its mergers and name change is the business entity solely responsible for the financial accuracy of all alleged corporate disbursements it seeks payment of as a consequence of boarding the Turner loan.

13.     The Debtor conducted business as a servicer of mortgage loans.

14.     The Debtor conducted business as a debt collector when collecting debts on mortgage loans that were in default when it assumed the servicing rights to said defaulted mortgage.

15.     From 2008 thru 2015 the Turners had constantly disputed corporate advances which were added to their mortgage balance with Everhome Mortgage, Green Tree and Ditech. They submitted multiple Qualified written requests seeking records and documents as to who these disputed advances were made. In response limited ledgers were received which confirmed there were improper charges.

16.     On January 12th, 2016 prior to a Circuit Court hearing the Turners and Everhome Mortgage entered into a mortgage modification agreement which removed the issue of sale from the Court Calendar. (Exhibit 2) and resolved the issue of disputed corporate advances. These disputed charges would be removed from the pending modification.

17.     The Turners subsequently submitted all the requested documents and statements required for the modification.

18.     On February 5th, 2016 the Turners were notified they had been approved for the Fannie Mae Home Affordable Modification Program (Exhibit -3). This modification required the Turners to pay three trial payments of $1349.66 on March 1st, 2016, on April 1st, 2016 and May 1st, 2016 for a total of $4048.98. which were all timely paid.

19.     The modification amount was a total of $525,684.53. (Exhibit 4).

20.      Having paid the 3 trial payments James Turner received a call from a Ditech Manager towards the end of May 2016 asking if he had received the modification package, which he had not.

21.     Upon being informed I had not received the package the Ditech manager stated he would investigate and call me back. He did and advised me the package would be overnighted and I would have to immediately sign and return it of I would forfeit the three trial payments and the modification would be void.

22.     On May 26th, 2016 just 5 days before I was due to make the first payment on the modified loan the package arrived.

23.     Upon reviewing the modification document, we were horrified to see the loan amount had been increased by $106,081.59 to $631,766.12. (Exhibit -5).

24.      The Turners immediately called Ditech requesting an explanation and were told there must have been an error in the numbers due to the rush to get the documents overnighted.

25.    Ditech informed the Turners "Time was of the Essence" and they must sign the modification or forfeit the trial payments and the modification would be voided.

26.    Ditech's manager sought to dispel the Turners concerns by advising them *"Item 4 of the modification document",* titled *"Additional Agreements"* contained a paragraph which stated at *"K-ii.  Correct the terms and conditions of this plan if an error is detected after execution of this agreement".* (Trustee confirms this in paragraph 9 of their reply Doc-4970).

27.    The Turners only signed the modification agreement based on the promises of Ditech's manager to correct the amount of the modification.

28.    Commencing June 2016, The Turners made timely payments on the modified mortgage while waiting to receive a corrected modification document.

29.    In August 2016 the Turners again contacted Ditech asking for a corrected mortgage document and were promised their request was being taken care of.

30.    In April 2017 it became clear Ditech was not going to honor its promises to provide corrected documents at which time the decision to stop paying the mortgage was made which would force Ditech into Court where the Turner disputes over fraudulent alleged corporate advances could be resolved.

31.    In September 2017 the Turners received a dunning letter from a Law Firm representing Ditech to which the Turners pursuant to the Fair Debt Collection Practices Act replied on October 7th, 2017 requesting verification of the alleged debt.

32.    On January 26th, 2018 the Turners requested specific details of the alleged corporate advances from the attorneys representing Fannie Mae's and its Agent Ditech. (Exhibit 1-B&C).

33.    Eventually in Response the Turners received from Ditech various ledgers which listed alleged corporate advances for attorney fees, inspections, repairs, insurance disbursements and mod advances, the majority of which were not justified or owed (Exhibit 1-D). Some of which were charged after the making home affordable approval of February 5th, 2016.

34.    A review of the ledger listed Forty-Nine alleged disbursements all made on April 5th, 2016 identified as FC Costs, Court Costs, Skip Trace, Recording Fees, Complaint Filing, Service Process, Title Search, Attorney fees, Appraisal, Clerk Fee, Publication Sale, Bankruptcy Fee, Misc. Filing Fee. These alleged disbursements by the Debtor totaled $15,717.78 These charges were made two months after the Turners loan modification approval of February 5th, 2016.

35.    The ledger further listed Attorney Costs and legal fees in the amount of $15,967.78 which were dated between April 5th, 2016 and October 10th, 2016. There was no justification for these alleged payment of legal fees as the Turners had commenced making their trial payments on March 1st, 2016 and started paying the modified mortgage on June 1st, 2016.

36.    The ledgers received were limited to a small period of time and omitted insurance premiums and advances that had been charged since the inception of the mortgage in 2006. The Turners requested from Ditech a complete ledger, but this request was refused.

37.     The Debtor was required to comply with Fannie Mae's Single-Family servicing guidelines which limited the maximum amount the Debtor could claim for attorney fees for justified legal work related to foreclosure in Florida to $3450.00 (Exhibit 1-A) as of April 12th, 2017 and only authorized the Debtor to charge for property inspections not more frequently than every twenty days and only when necessary. A review of the ledgers (Exhibit 1-D) establish the Debtor was improperly charging for inspections and legal fees throughout 2016 after the Turners had commenced making modified payments.

38.     The Debtor and its predecessor Greentree Servicing wrongfully instituted forced placed insurance, property inspections and legal charges and misrepresented to the Turners this insurance, property inspections and legal charges were legitimate.

39.     The Debtor and its predecessors knew these representations were false but conspired with each other to create a scheme wherein multiple fraudulent disbursements were charged to the Turners account.

40.     One of the most egregious acts of the Debtor and its predecessors was to charge the Turners for flood insurance and unfathomable insurance fees when they knew the Turner property was not in a flood zone and this type of insurance was not required. The Turners had requested evidence of why Flood insurance was being force placed but nothing was forthcoming.

41.     Consequently, the Turners were compelled to obtain a survey of their property and submit in August 2014 to the Federal Emergency Management Agency a request to establish their structure was not subject to the requirement for Flood Insurance. FEMA confirmed it was not. The Debtor however ignored this determination.

42.     The Turners believe the total amount charged to their account for improper and unjustified insurance premiums exceeds $75,000.00 but due to the refusal of the Debtor and the trustee to provide complete financial records the Turners cannot be more precise.

43.     The Debtors unconscionable conduct violated section 14 of the Mortgage which authorized the lender to "do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property." Illegitimate premiums, including kickbacks and inflated insurance premiums, are not "reasonable or appropriate".

44.     The Fannie Mae Home Affordable Mortgage Agreement which the parties executed in May 2016 is a contract subject to Florida law.  Every contract in Florida contains an implied covenant of good faith and fair dealing, requiring that the parties follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations. *Centurion Air Cargo, Inc. v. United Parcel Service Co., 420 F.3d 1146, 1151 (11th Cir. 2005). Where the terms of the contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party." Cox v. CSX Intermodal, Inc., 732 So. 2d 1092, 1097–98 (Fla. 1st DCA 1999)*

45.     To state a claim for breach of the implied covenant of good faith in Florida, *"a plaintiff must allege 'an express term of a contract was violated.'" Hamilton I, 2014 WL 1285859, at *8 (quoting Medinis v. Swan, 955 Case 1:14-cv-21819-CMA Document 41 Entered on FLSD Docket 08/28/14 09:22:36 Page 16 of 28 CASE NO. 14-21819-CIV-ALTONAGA/O'Sullivan 17 So.*

*2d 595, 597 (Fla. 2d DCA 2007)); see Resnick v. AvMed, Inc., 693
F.3d 1317, 1329 (11th Cir. 2012).*

46.     The Debtor breached the express provisions in the
Mortgage sections 15, 18 and 22 of the Mortgage, *states "Lender
must provide notice" "can pay for whatever is reasonable or
appropriate to protect the Lender's interest in the Property."*
The corporate advances charged by the Debtor were not
reasonable or appropriate. These alleged facts show the Debtor
acted in bad faith.

47.     The Debtor in exercising its discretion to force-place
insurance, conduct alleged inspections, and make charges
guised as corporate advances did not excuse them from the
obligation to act in good faith. *See Cox, 732 So. 2d. at 1097
("[T]he parties' intent to be bound by an enforceable contract
raises an implied obligation of good faith to observe reasonable
limits in exercising that discretion, consistent with the parties'
purpose or purposes in contracting."*

48.     The Debtors actions were "unconscionable," motivated by
"bad faith" and self-interest. The Turners seek to hold the
Debtor accountable for not exercising their discretion in good
faith.

49.     Ditech acted in bad faith in contravention of the Turners
reasonable expectations under the Mortgage and Home
Affordable Modification Agreement breaching the implied
covenant of good faith.

50.     The Debtor breached the mortgage and Home Affordable
Modification Agreement when they charged hyper-inflated and
illegitimate non-competitive 'premiums' for force-placed
insurance, property inspections and fraudulent corporate

advances that included undisclosed kickbacks. *These actions satisfy the three basic elements of a breach of contract claim — a Note and Mortgage, material breaches of the Mortgage, and damages to Plaintiff. See Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC, 857 F. Supp. 2d 1294, 1301 (S.D. Fla. 2012) (To prevail on a claim for breach of contract, a plaintiff must establish "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach.") (quoting Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009).*

51.    The Home affordable modification agreement is a special program created by Fannie Mae which has many unique characteristics which are crafted to the individual borrower. One characteristic are financial incentives which provide annual financial payments to James Turner in the form of account credits. The special nature of this agreement clearly creates a fiduciary relationship between the Turners, Fannie Mae, and the Debtor.

52.    The Debtor owes a fiduciary duty to the Turners.  The elements of a breach of fiduciary duty claim in Florida are: *"the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." Gracey v. Eaker, 837 So. 2d 348, 353 (Fla. 2002). A fiduciary duty may be found where "the lender [1] takes on extra services for a customer, [2] receives any greater economic benefit than from a typical transaction, or [3] exercises extensive control." Mahdavieh, 2014 WL 1365425.  Bld'g Educ. Corp. v. Ocean Bank, 982 So. 2d 37, 41 (Fla. 3d DCA 2008)). Further, "an escrow holder generally owes a fiduciary duty to the parties to the escrow transaction.".*

53.    Pursuant to the Home Affordable Modification Agreement Ditech took on extra services by unilaterally establishing and

managing an escrow account over which they exercised extensive control. They received a greater economic benefit for charging excessive amounts for forced-placed premiums, property inspections and fraudulent corporate expenses from which they received impermissible kickbacks or other compensation.

54.    These amounts were greater than what was contemplated in the Mortgage and Home Affordable Modification. Ditech breached their fiduciary duty by intentionally charging amounts covering kickbacks, fees, and other compensation to the Turner escrow account.

55.    The Debtor in assuming the servicing rights to a mortgage is required to use due diligence and have in place a corporate policy that verifies the prior servicer's records for accuracy and compliance with the mortgage terms and applicable law before boarding loans.

56.    The Turner property mortgage and note was in default when Ditech Financial LLC was appointed by The Federal National Mortgage Association to service the Turner loan.

57.    Federal National Mortgage Association guidelines only allow a servicer such as Ditech Financial LLC to charge property inspections not more frequently than every twenty days. (See Paragraph 84 guidelines).

58.    It is undisputed On October 7th, 2017 within 30 days the Turners responded in writing to the debt collectors Phelan Hallinan Diamond & Jones, PLLC disputing the claim of debt and requested verification of the alleged debt from the loan inception July 18th, 2006 to date.

59.    It is undisputed On January 25th, 2018 the Turners received an email from Johnathan Blackmore of Phelan

Hallinan Diamond & Jones, PLLC which was described as a response to the debt verification request (Exhibit 1-B&C) and had attached a copy of a mortgage document and assorted accounting ledgers.

60.    The Mortgage the subject of this action (Exhibit -6) states in item 15 under the heading notices "All notices given by borrower or lender in connection with this instrument must be in writing".

61.    The Debtor pursuant to the terms of mortgage item 15. was required to give written notice to the Turners of their intent to conduct an inspection and the reason for doing so.

62.    Recognizing this limitation the Debtor and its predecessors conspired with each other to devise a fraudulent scheme wherein they repeatedly charged for property inspection fees listed them as corporate advances but failed to provide any notice in writing and never carried out the inspections they charged for.

63.    The January 25th, 2018 communication from Johnathan Blackmore of Phelan Hallinan Diamond & Jones, PLLC contained various Ditech Financial LLC ledgers. These ledgers show during the period April 30th, 2014 – October 6th, 2017. charges for forty-three individual inspection fees all dated April 5th, 2016 consisting of three inspections @ $15.00, one inspection @ $13.50, eight inspections @ $20.00 each and thirty-one inspections @ $10.00 were added to the Turner account.

64.    Ditech Financial LLC and its predecessors as part of its civil conspiracy and fraudulent activity charged the Turners on one single day April 5th, 2016, $528.50 for alleged inspections.

65.     A further analysis of the ledgers shows that from October 6th, 2016 -March 6th, 2017, Ditech Financial LLC charged five inspection fees totaling $75.00 and one attorney fee for $250.00 when according to their own complaint the mortgage was alleged not to be in default until May 1st, 2017.

66.     The Turners assert the Debtor does not conduct the amount of inspections it charges for but keeps the overcharge as a profit and as part of its civil conspiracy scheme.

67.     Ditech Financial LLC as servicer assumed the obligations under the standard form Note and Mortgage agreements entered into by James Turner and all rights and obligations contained therein were subject to the requirements and limitations of federal law and Florida law.

68.     Under the standard form mortgage agreement entered into by James Turner, If the homeowner falls to keep up their property insurance premiums, then Ditech may step in and buy a property Insurance policy on behalf of the homeowner to ensure the homes remains insured. Such policies commonly are referred to as "force-placed Insurance".

69.     In exercising any rights under the standard form mortgage agreement to purchase forced-placed insurance, Ditech had to act in a manner consistent with the implied covenant of good faith and fair dealing Implied in the standard form mortgage which: (a) required Ditech to be honest in its dealings and not purposefully to take actions that would unfairly prevent James Turner from enjoying their rights or benefits under the standard form mortgage agreement or disappoint their reasonable expectations; and (b) required that even when a contract confers decision-making power on a single party, the resulting discretion is nevertheless subject to an obligation that it be exercised in good faith and to observe reasonable limits in

exercising that discretion, consistent with the parties' purpose or purposes In contracting.

70.     From 2008 thru 2016, Ditech and its predecessors acting as agent for AMERICAN SECURITY INSURANCE COMPANY, wrongly claimed that James Turner did not have property flood insurance on the Turner Property as they alleged was required by his mortgage agreement, and purchased force-placed Flood Insurance on the Turner Property through a specialty Insurance carrier named American Security Insurance Company

71.     As a result, James Turners was charged multiple premiums for Flood insurance that was not required as the Turner property is not in a Flood zone.

72.     Commencing 2008 thru 2016 Ditech Financial LLC acting as an agent for American Security Insurance Company Did Force Place Property Insurance on the Turners property and charge premiums to his account that were two to four times greater than the going rate.

73.     The premiums imposed for force-placed insurance are neither bona fide nor reasonable, and do not bear a reasonable relationship to the insurable risk.

74.     Force-placed insurance is frequently placed with an insurance carrier in exchange for commissions, reinsurance fees or other remuneration paid by the insurance company to the mortgage servicers, such as Ditech Financial LLC. Instead of purchasing less expensive policies, which would benefit the borrowers, the mortgage servicers such as Ditech place the policies with the force-placed insurers that pay them commissions, or other remuneration, thus driving up the premiums for force-placed insurance.

75.     Analyzing the partial Ditech ledger received on January 25th, 2018 (Exhibit 1-D), Ditech Financial LLC engaged in the foregoing abusive practices when It force-placed insurance upon James Turner, which benefitted Ditech.

76.     One Ditech ledger (Exhibit 1- D & E) lists 99 insurance disbursements ranging in value from $10 to $4064.38 for the period April 30th, 2014 to October 8th, 2015 totaling thousands of dollars. These records would cause even the most unsophisticated consumer to have cause for concern and conclude they have to be fraudulent.

77.     Ditech Financial LLC purchased force-placed insurance on property owned by James Turner at grossly excessive premiums in exchange for undisclosed commissions, reinsurance fees or other remuneration;

78.     James Turner upon receiving his February 5th, 2016 loan modification approval letter had contacted Ditech Financial to confirm the amounts and was advised the modification amount may change subject to the final closing date, but only by a few hundred dollars.

79.     The January 25th, 2018 communication from Johnathan Blackmore of Phelan Hallinan Diamond & Jones, PLLC had attached an accounting ledger which listed Forty-Nine alleged disbursements all made on April 5th, 2016 identified as FC Costs, Court Costs, Skip Trace, Recording Fees, Complaint Filing, Service Process, Title Search, Attorney fees, Appraisal, Clerk Fee, Publication Sale, Bankruptcy Fee, Misc. Filing Fee. These alleged disbursements by Ditech Financial LLC totaled $15,717.78.

80.     The Attorney Costs and legal fees in the amount of $15,967.78 were charged to the mortgage account of James Turner on April 5th, 2016 and October 10th, 2016.

81.    Florida Law is well settled in all Cases a claim for attorney Fees and legal costs where there is no prevailing party must be pleaded weather based on contract or statute. This requires a party seeking Attorney Fees and costs to file a Motion Pursuant to Florida Rule of Civil Procedure 1.525 within 30 days of the conclusion of the case.

82.    A reading of the mortgage applicable to this case in "item 14" states, "lender may not charge fees that are expressly prohibited by this security instrument or by applicable law" The applicable law to this action is Florida. Thus, Ditech Financial LLC is obligated to comply with Florida Rule of Civil Procedure 1.525.

83.    Neither Ditech Financial LLC or any of its predecessors has ever filed any Motion pursuant to Florida Rule of Civil Procedure 1.525 seeking to claim or recover attorney fees and costs from James Turner.

84.    Ditech Financial LLC and its predecessors have never had a final judgment entered against James Turner where they have been found to be the prevailing party.

85.    Ditech Financial LLC and its predecessors having failed to comply with Florida Law pertaining to Attorney Fees and Costs have improperly charged in excess of $15,717.78 to James Turner for which they had no legal right.

86.    Ditech acted as a debt collector by attempting to collect amounts on behalf of its principle Fannie Mae.

87.    Ditech on behalf of Fannie Mae threatened to collect illegitimate charges from the Turners.

88.    Ditech demanded the Turners pay these charges despite operating under strict servicing guidelines from Fannie Mae.

89.     Ditech Financial LLC was engaged In commerce in the State of Florida, as defined by §501,203(8), Florida Statutes, and are therefore subject to the provisions contained in §501.201 et seq., Florida Statutes, the Florida Deceptive and Unfair Trade Practices Act (FDUTPA).

90.     Ditech Financial LLC was a loan servicer of mortgage loans. Ditech forced James and Jeffrey Turner to purchase a product — insurance — at exorbitant rates . On information and belief, Ditech was paid commissions or other remunerations by the insurance carriers.

91.     Ditech Financial LLC is a debt collector when servicing mortgage loans that were in default when it obtained the servicing rights to said defaulted loan.

92.     James and Jeffrey Turner are "consumer(s)" as defined by §501.203(7), Florida Statutes, and as such is entitled to the protection of FDUTPA.

93.     In exercising any rights under the standard form mortgage agreement to purchase forced-placed insurance, Ditech was required to be honest in its dealings and not purposefully to take actions that would unfairly prevent James Turner,  from enjoying his rights or benefits under the standard form mortgage agreement or disappoint his reasonable expectations; and to exercise any discretion it had under the mortgage agreement in good faith and to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting.

94.      By reason of the conduct alleged herein, the Debtor engaged in unfair and deceptive business practices in violation of FDUTPA, FL St. §501.201, et seq.

95.     Ditech Financial LLC is a debt collector when servicing mortgage loans that were in default when it obtained the servicing rights to said defaulted loan.

96.     James and Jeffrey Turner are "consumer(s)" as defined by §501.203(7), Florida Statutes, and as such is entitled to the protection of FDUTPA.

97.     In exercising any rights under the standard form mortgage agreement to purchase forced-placed insurance, Ditech was required to be honest in its dealings and not purposefully to take actions that would unfairly prevent James Turner, from enjoying his rights or benefits under the standard form mortgage agreement or disappoint his reasonable expectations; and to exercise any discretion it had under the mortgage agreement in good faith and to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting.

98.     This claim is being brought against Ditech Financial LLC on behalf of James and Jeffrey Turner, In servicing the loans, Ditech Financial LLC acts as an agent for The Federal National Mortgage Association who are in direct contractual privity with James Turners. When it took over the servicing of the loan of James Turner, Ditech Financial LLC assumed the obligations of the loan agreement, and the contractual privity of The Federal National Mortgage Association is thereby imputed to Ditech as servicer.

99.     The standard form mortgage agreements of James Turner are binding contracts, Ditech breached the mortgage agreements by engaging in conduct that violated Florida law as alleged herein.

100.     In addition, under Florida law, the mortgage agreement contained an implied covenant of good faith and fair dealing.

The implied, covenant of good faith and fair dealing required each party to the contract to be honest in its dealings and not purposefully to take actions that would unfairly prevent other parties from enjoying their rights or benefits under the contract or disappoint their reasonable expectations.

101.    The implied covenant of good faith and fair dealing further required that even when a contract confers decision-making power on a single party, the resulting discretion is nevertheless subject to an obligation that it be exercised in good faith and to observe reasonable limits In exercising that discretion, consistent with the parties' purpose or purposes in contracting.

102.    Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

103.    Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts, Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.

104.    Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

105.    Ditech Financial LLC has breached the mortgage agreements and the covenant of good faith and fair dealing

contained therein by purchasing force-placed insurance at exorbitant and commercially unreasonable premiums that were typically 2 to 6 times the cost of a typical homeowners' policy and provided less extensive coverage.

106.    Ditech Financial LLC has breached the mortgage agreements and the covenant of good faith and fair dealing contained therein by taking undisclosed commissions, reinsurance fees or other remuneration from insurance carriers in exchange for force-placing insurance with such carriers.

107.    Ditech Financial has breached the mortgage agreements and the covenant of good faith and fair dealing contained therein by purchasing force-placed flood insurance when it knew at all times the Turner property was not in a flood zone and flood insurance was not required.

108.    Ditech Financial has further breached the mortgage agreements and the covenant of good faith and fair dealing contained therein by charging for property inspections that violated its Servicing agreement and which it knew were false, misleading, deceptive and unnecessary.

109.    Ditech Financial has further breached the mortgage agreements and the covenant of good faith and fair dealing contained therein by charging for attorney fees and legal expenses which it knew were improper, false, misleading, deceptive and to which they had no legal right.

110.    James and Jeffrey Turner have sustained damages as a result of Ditech's breach of the mortgage agreements and the covenant of good faith and fair dealing contained therein.

111.    The standard form mortgage agreements of James Turner are binding contracts, The Debtor breached the mortgage

agreements by engaging in conduct that violated Florida law as alleged herein.

112.    In addition, under Florida law, the mortgage agreement contained an implied covenant of good faith and fair dealing. The implied, covenant of good faith and fair dealing required each party to the contract to be honest in its dealings and not purposefully to take actions that would unfairly prevent other parties from enjoying their rights or benefits under the contract or disappoint their reasonable expectations.

113.    The implied covenant of good faith and fair dealing further required that even when a contract confers decision-making power on a single party, the resulting discretion is nevertheless subject to an obligation that it be exercised in good faith and to observe reasonable limits In exercising that discretion, consistent with the parties' purpose or purposes in contracting.

114.    Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

115.    Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts, Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.

116.    Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and

interference with or failure to cooperate in the other party's performance.

117.    The Debtor has breached the mortgage agreements and the covenant of good faith and fair dealing contained therein by purchasing force-placed insurance at exorbitant and commercially unreasonable premiums that were typically 2 to 6 times the cost of a typical homeowners' policy and provided less extensive coverage.

118.    The Debtor has breached the mortgage agreements and the covenant of good faith and fair dealing contained therein by taking undisclosed commissions, reinsurance fees or other remuneration from insurance carriers in exchange for force-placing insurance with such carriers.

119.    The Debtor has breached the mortgage agreements and the covenant of good faith and fair dealing contained therein by purchasing force-placed flood insurance when it knew at all times the Turner property was not in a flood zone and flood insurance was not required.

120.    The Debtor has further breached the mortgage agreements and the covenant of good faith and fair dealing contained therein by charging for property inspections that violated its Servicing agreement and which it knew were false, misleading, deceptive and unnecessary.

121.    The Debtor has further breached the mortgage agreements and the covenant of good faith and fair dealing contained therein by charging for attorney fees and legal expenses which it knew were improper, false, misleading, deceptive and to which they had no legal right.

122.    James and Jeffrey Turner have sustained damages as a result of the Debtors breach of the mortgage agreements and the covenant of good faith and fair dealing contained therein.

123.    The Debtor is in Violation of the Florida Consumer Collection Practices Act, F.S. § 559.72.

124.    The Debtor was in the business of collecting debts and In attempting to collect the debt, has used the United States mails, telephones and other means and instrumentalities of interstate commerce Fla, Stat. § 559.72(9) states, that in collecting consumer debts, no person shall: Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

125.    James and Jeffrey Turner are "debtors" and "consumers" as defined by F.S. § 569.66(2).

126.    Ditech Financial LLC is a "debt collector" as defined by F.S. §559.55(6) in collecting a debt that was delinquent when it obtained the servicing rights to the loan.

127.    The debts of the Turners are "consumer debts" as defined by F.S. §559.65(1), in that they are obligations or alleged obligations of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

128.    Ditech Financial LLC asserted in communications with the Turners they were required to pay for property inspections which Ditech knew violated its Servicing agreement with the Federal National Mortgage Association, the terms of the mortgage and which it knew were false, misleading, deceptive and unnecessary.

129.    Ditech Financial LLC asserted in communications with the Turners they were required to pay for attorney fees and legal expenses which it knew were improper, false, misleading, deceptive and to which they had no legal right, and which violated their servicing agreement with the Federal National Mortgage Association and the terms of the mortgage.

130.    Ditech Financial LLC, acting as agent for the Federal National Mortgage Association, asserted in communications to the Turners that James Turner were required to pay for forced place insurance policies on their property. However, Ditech knew, when making these assertions that the Turners were not in a flood zone and flood insurance was not required.

131.    Ditech Financial LLC thus knew that their claims were not legitimate, and the Turners were not under any legal obligation to pay for force placed flood Insurance.

132.    Ditech Financial LLC had actual knowledge that the Turners did not owe the for-Flood Insurance as they were so notified by the Turners.

133.    In addition, in a suit brought by the Florida Attorney General against Ditech Financial LLC and its predecessors, the Florida Attorney General accuses Ditech of engaging in a pattern and practice of force-placing Insurance policies upon consumers who have policies in effect or are not required to have them.

134.    Ditech Financial has further breached the mortgage agreements and the covenant of good faith and fair dealing contained therein by charging for property inspections that violated its Servicing agreement and which it knew were false, misleading, deceptive and unnecessary.

135.    This intentional and knowing conduct by Ditech Financial
LLC constituted an improper debt collection practice in violation
of the Florida Consumer Collection Practices Act, Fla. Stat. §
559,55, et seq.. Specifically, this intentional and knowing
conduct violated § 559,72(9), which makes It illegal to "[Q]claim,
attempt, or threaten to enforce a debt when such person knows
that the debt is not legitimate or assert the existence of some
other legal right when such person knows that the right does
not exist."

136.    James and Jeffrey Turner asserts a common law claim for
unjust enrichment against Ditech Financial LLC for knowingly
receiving and retaining wrongful benefits and funds which they
charged to the Turners, in so doing, Ditech acted with conscious
disregard for the rights of the Turners.

137.    The Debtors wrongful conduct alleged herein, was unfair,
unconscionable, and oppressive;

138.     As a result of the Ditech's wrongful conduct as alleged
herein, it has been unjustly enriched at the expense of, and to
the detriment of, the Turners.

139.    Ditech's unjust enrichment is traceable to, and resulted
directly and proximately from, the conduct alleged herein.

140.    Under the common law doctrine of unjust enrichment, it
is inequitable for Ditech to be permitted to retain the benefits it
received, and is still receiving, without justification, from its
forced placed insurance policies, property inspections, attorney
fees and costs and practices which it received in an unfair,
unconscionable, and oppressive manner. Ditech's retention of
such funds under circumstances making it inequitable to do so
constitutes unjust enrichment, the financial benefits derived by
Ditech Financial LLC rightfully belong to the Turners

141.    The Debtor Ditech Financial LLC (AKA) Greentree Servicing and its predecessors are guilty of civil conspiracy for wrongfully instituted forced placed insurance, property inspections and legal charges and misrepresented to the Turners this insurance, property inspections and legal charges were legitimate.

142.    The Debtor and its predecessors knew the representations were false but conspired with each other to create a scheme wherein multiple fraudulent disbursements were charged to the Turners account.

143.    The Turners in trying to discover how many fraudulent charges had been made to their account requested debt verification. On January 25th, 2018 they received partial financial records which listed dozens of charges categorized as property inspections, insurance and legal expenses. Any reasonable person can clearly see these charges are fraudulent.

144.    The Debtor and its predecessors in furtherance of their conspiracy is abusing the process of this Court in filing the instant foreclosure case and attempting to use it as a tool to obtain the payment of its fraudulent charges.

145.    The Turners have sustained reasonably foreseeable, consequential and incidental damages as a result of Ditech Financials LLC actions including but not limited to substantial fraudulent charges being added to their account.

146.    The Debtor Breached its Fiduciary Duty with the Turners as it related to the Turner property, mortgage and modification.

147.    As the foregoing describes the Debtors wrongful conduct resulted in the Turners sustaining foreseeable, consequential and incidental damages, including but not limited to increased

costs added to their mortgage, for which they suffer constant emotional distress.

## CONCLUSION

The Turners allegations and exhibits contain sufficient facts to state a claim for relief. They establish the probability that the Debtor added fraudulent and unjust charges to the Turner mortgage balance.

The Turners have been denied full and complete access to the Debtors records that pertain to his account.

The Turners should be permitted to go forward with there claim and given the ability to obtain discovery of these records.

## CONSUMER REPRESENTATIVE COMMUNICATIONS

The Trustee makes an implausible allegation that the disputed charges for insurance, inspections, repairs and legal fees were only booked after the modification offer but provides no explanation as to why this would occur. A review of these improper charges spans a period of years, this allegation is simple not credible.

A further attempt to justify the inspections is made using a bizarre mathematical calculation (paragraph 43 of reply). There were three servicers of the mortgage over an eight-year period why would the Debtor wait until April 5th, 2016 to book the previous 8 years of inspections. This allegation is simple not credible.

The Turners requested from the previous and new Consumer representative records of the Debtor which would provide specific details of who the alleged corporate disbursements were paid to.

Both the previous and new consumer representative has refused to provide this information.

## RELIEVE REQUESTED

For the foregoing reasons the consumer representative's objection to the Turner claim should be denied.

_James Turner_

_____

James E Turner
27401 SW 139th Place
Homestead, FL 33032
(305) 562-9616.
Email keygazer@gmail.com.

_Jeffrey Turner_

_____

Jeffrey B Turner

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Response and OBJECTION was mailed and emailed to the following on 2nd Day of February 2024:

The Chambers of Honorable Judge James L. Garrity Jr.
United States Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, NY 10004-1408
Email CaseFiling@nysb.uscourts.gov

Consumer Claims Trustee,
Ditech Consumer Recovery Trust
C/O Settlement Administrator
PO Box 1607
Blue Bell, PA 19422
Email info@ditech-settlement.com

# EXHIBIT "1"

EXHIBIT A

# Fannie Mae

**Allowable Foreclosure Attorney Fees Exhibit**

The following table contains the maximum attorney's fees that Fannie Mae allows for legal work related to foreclosures for all Fannie Mae mortgage loans. The allowable fee applies for the life of the default and covers all services necessary to complete a routine foreclosure action in the jurisdiction. In the event that a default is cured, such as by a completed loan modification or reinstatement, and the loan subsequently becomes delinquent again, a new allowable fee applies without the need for excess fee approval when the servicer must initiate new foreclosure proceedings.

| State | Non-Judicial Foreclosure | Judicial Foreclosure |
|-------|--------------------------|----------------------|
| Alabama | $1,325[1] | On Approval[2] |
| Alaska | $1,625 | On Approval[2] |
| Arizona | $1,350 | On Approval[2] |
| Arkansas | $1,475 | On Approval[2] |
| California | $1,425 | On Approval[2] |
| Colorado | $1,650 | On Approval[2] |
| Connecticut | N/A | $2,900[3,4,5] |
| Delaware | N/A | $2,350[3] |
| District of Columbia | N/A | $2,700[3] |
| Florida | N/A | $3,450[3,12] |
| Georgia | $1,325 | On Approval[2] |
| Guam | $1,625 | On Approval[2] |
| Hawaii | N/A | $3,775[8] |
| Idaho | $1,250 | On Approval[2] |
| Illinois | N/A | $2,750[3] |
| Indiana | N/A | $2,500[3] |
| Iowa | $1,275 | $2,300[3] |
| Kansas | N/A | $2,250[3] |
| Kentucky | N/A | $2,700[3] |
| Louisiana | N/A | $2,350[3] |
| Maine | N/A | $2,750[3] |
| Maryland | $2,500[6] | On Approval[2] |
| Massachusetts | N/A | $3,000[3,4] |
| Michigan | $1,425 | On Approval[2] |
| Minnesota | $1,450[9] | On Approval[2] |

EXHIBIT B



# Phelan Hallinan Diamond & Jones, PLLC
## 2727 West Cypress Creek Road
## Ft. Lauderdale, FL 33309
### Tel: 954-462-7000
### Fax: 954-462-7001

Lawrence T. Phelan*†                Licensed in PA and NY only
Francis S. Hallinan*+†              Licensed in PA, NJ, NY only
Jay B. Jones*+‡◊                    Licensed in PA, NJ, GA, FL
Emilio R. Lenzi◊                    Licensed in FL
Rosemarie Diamond*+†                Licensed in PA, NJ, NY only

James E. Turner
27401 SW 139th Place
Homestead, FL 33032
keygazer@gmail.com

Re:   27401 SOUTHWEST 139TH PLACE, HOMESTEAD, FL 33032-5532
      Loan No.: 0050410166
      PH # 85493

Dear Mr. Turner,

I am in receipt of your letter of October 7, 2017, wherein you request verification of the debt owed by JAMES TURNER, JR A/K/A JAMES E. TURNER, JR A/K/A JAMES EDWARD TURNER, JR regarding the above referenced loan.

Please see attached:

Copy of Note and Mortgage.
Copy of HUD-1.
Copy of Loan Payment History.

If you have any concerns please contact me so that any issues may be resolved.  Thank you.


Very truly yours,


*/s/Jonathan Blackmore*
Jonathan L. Blackmore, Esq., Florida Bar No. 67902

---

* Please be advised that this firm is a debt collector attempting to collect a debt.  Any information received will be used for that purpose.  If you have previously received a discharge in bankruptcy and this debt was not reaffirmed, this correspondence is not and should not be construed to be an attempt to collect a debt, but only enforcement of a lien against property.

Interest and other items will continue to accrue. The creditor is DITECH FINANCIAL LLC.

Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after receipt of this notice, the debt will be assumed to be valid by our firm. If you notify our office in writing within the thirty (30) day period that the debt or any portion thereof is disputed, we will obtain and provide you with verification of the debt by mail. Upon your written request within the thirty (30) day period, our office will provide you with the name and address of the original creditor, if different from the current creditor.

The law does not require us to wait until the end of the thirty (30) day period before commencing a foreclosure action. If, however, you request proof of the debt or the name and address of the original creditor within the thirty (30) day period that begins with your receipt of this letter, the law requires us to suspend our efforts (through litigation or otherwise) to collect the debt until we mail the requested information to you.

Very Truly Yours,

Phelan Hallinan Diamond & Jones, PLLC
attorneyNamesUnderSig



Received
1/25/18



## Phelan Hallinan Diamond & Jones, PLLC
### 2727 West Cypress Creek Road
### Ft. Lauderdale, FL 33309
### Tel: 954-462-7000
### Fax: 954-462-7001

| | |
|---|---|
| **Lawrence T. Phelan*†** | **Licensed in PA and NY only** |
| **Francis S. Hallinan*+†** | **Licensed in PA, NJ, NY only** |
| **Jay B. Jones*+‡◊** | **Licensed in PA, NJ, GA, FL** |
| **Emilio R. Lenzi◊** | **Licensed in FL** |
| **Rosemarie Diamond*+†** | **Licensed in PA, NJ, NY only** |

James E. Turner
27401 SW 139th Place
Homestead, FL 33032
keygazer@gmail.com

Re:   27401 SOUTHWEST 139TH PLACE, HOMESTEAD, FL 33032-5532
      Loan No.: 0050410166
      PH # 85493

Dear Mr. Turner,

I am in receipt of your letter of October 7, 2017, wherein you request verification of the debt owed by JAMES TURNER, JR A/K/A JAMES E. TURNER, JR A/K/A JAMES EDWARD TURNER, JR regarding the above referenced loan.

Please see attached:

Copy of Note and Mortgage.
Copy of HUD-1.
Copy of Loan Payment History.

If you have any concerns please contact me so that any issues may be resolved.  Thank you.

Very truly yours,

*/s/Jonathan Blackmore*
Jonathan L. Blackmore, Esq., Florida Bar No. 67902

* Please be advised that this firm is a debt collector attempting to collect a debt.  Any information received will be used for that purpose.  If you have previously received a discharge in bankruptcy and this debt was not reaffirmed, this correspondence is not and should not be construed to be an attempt to collect a debt, but only enforcement of a lien against property.

EXHIBITS D

| LOAN_NUMBER | ADVANCE_AMOUNT | TRANSACTION_DATE | REASON_DESCRIPTION |
|---|---|---|---|
| 50410166 | $15.00 | 2018-04-12 | INSPECTION |
| 50410166 | $15.00 | 2018-03-21 | INSPECTION |
| 50410166 | $15.00 | 2018-02-05 | INSPECTION |
| 50410166 | $200.00 | 2017-12-18 | FC TITLE REPORT |
| 50410166 | $15.00 | 2017-12-18 | INSPECTION |
| 50410166 | $15.00 | 2017-12-18 | TRUSTEE DEED |
| 50410166 | $15.00 | 2017-11-07 | INSPECTION |
| 50410166 | $35.00 | 2017-11-04 | ASSIGNMNT MORT F |
| 50410166 | $1,035.00 | 2017-10-17 | FC ATTY FEES |
| 50410166 | $15.00 | 2017-10-16 | INSPECTION |
| 50410166 | $15.00 | 2017-10-06 | INSPECTION |
| 50410166 | $15.00 | 2017-09-06 | INSPECTION |
| 50410166 | $125.00 | 2017-08-31 | REPAIRS |
| 50410166 | $15.00 | 2017-08-16 | INSPECTION |
| 50410166 | $15.00 | 2017-07-14 | INSPECTION |
| 50410166 | $15.00 | 2017-06-08 | INSPECTION |
| 50410166 | $15.00 | 2017-04-11 | INSPECTION |
| 50410166 | $15.00 | 2017-03-06 | INSPECTION |
| 50410166 | $15.00 | 2017-03-06 | INSPECTION |
| 50410166 | $15.00 | 2017-02-10 | INSPECTION |
| 50410166 | $15.00 | 2016-12-09 | INSPECTION |
| 50410166 | $15.00 | 2016-10-11 | INSPECTION |
| 50410166 | $250.00 | 2016-10-10 | FC ATTY FEES |
| 50410166 | -$191.44 | 2016-07-14 | MOD CORP ADVANCE |
| 50410166 | -$999.99 | 2016-07-14 | MOD CORP ADVANCE |
| 50410166 | -$999.99 | 2016-07-14 | MOD CORP ADVANCE |
| 50410166 | -$999.99 | 2016-07-14 | MOD CORP ADVANCE |
| 50410166 | -$999.99 | 2016-07-14 | MOD CORP ADVANCE |
| 50410166 | -$999.99 | 2016-07-14 | MOD CORP ADVANCE |
| 50410166 | -$999.99 | 2016-07-14 | MOD CORP ADVANCE |
| 50410166 | -$999.99 | 2016-07-14 | MOD CORP ADVANCE |
| 50410166 | -$999.99 | 2016-07-14 | MOD CORP ADVANCE |
| 50410166 | -$999.99 | 2016-07-14 | MOD CORP ADVANCE |
| 50410166 | -$999.99 | 2016-07-14 | MOD CORP ADVANCE |
| 50410166 | -$999.99 | 2016-07-14 | MOD CORP ADVANCE |
| 50410166 | -$999.99 | 2016-07-14 | MOD CORP ADVANCE |
| 50410166 | -$999.99 | 2016-07-14 | MOD CORP ADVANCE |
| 50410166 | -$999.99 | 2016-07-14 | MOD CORP ADVANCE |
| 50410166 | -$999.99 | 2016-07-14 | MOD CORP ADVANCE |
| 50410166 | $1,774.39 | 2016-06-27 | RECORDING FEE |
| 50410166 | $125.00 | 2016-06-27 | RECORDING FEE |
| 50410166 | $15.00 | 2016-06-03 | INSPECTION |
| 50410166 | $15.00 | 2016-04-05 | -INSPECTION - EX |
| 50410166 | $15.00 | 2016-04-05 | -INSPECTION - EX |
| 50410166 | $15.00 | 2016-04-05 | -INSPECTION - EX |

| | | | |
|---|---|---|---|
| 50410166 | $15.00 | 2016-04-05 | -INSPECTION - EX |
| 50410166 | -$50.00 | 2016-04-05 | -FC COSTS - PUBL |
| 50410166 | $195.00 | 2016-04-05 | -FC COSTS - PUBL |
| 50410166 | $50.00 | 2016-04-05 | -COURT COSTS |
| 50410166 | $2.40 | 2016-04-05 | -SKIP TRACE/SEAR |
| 50410166 | $0.60 | 2016-04-05 | -SKIP TRACE/SEAR |
| 50410166 | $165.00 | 2016-04-05 | -FC COSTS - PUBL |
| 50410166 | $50.00 | 2016-04-05 | -COURT COSTS |
| 50410166 | $313.00 | 2016-04-05 | -COURT COSTS |
| 50410166 | $15.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $15.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $13.50 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $20.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $20.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $20.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $20.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $20.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $20.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $20.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $20.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |

| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | INSPECTION FEES |
| 50410166 | $10.00 | 2016-04-05 | RECORDING FEES |
| 50410166 | $265.00 | 2016-04-05 | COMPLAINT FILING |
| 50410166 | $365.00 | 2016-04-05 | SERVICE/PROCESS |
| 50410166 | $325.00 | 2016-04-05 | TITLE SEARCH |
| 50410166 | $935.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $200.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $375.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $120.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $85.00 | 2016-04-05 | APPRAISAL |
| 50410166 | $1,125.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $150.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $120.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $240.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $85.00 | 2016-04-05 | APPRAISAL |
| 50410166 | $2,410.03 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $450.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $225.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $109.00 | 2016-04-05 | SERVICE/PROCESS |
| 50410166 | $250.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $60.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $140.00 | 2016-04-05 | CLERK FEE |
| 50410166 | $165.00 | 2016-04-05 | PUBLICATION SALE |
| 50410166 | $550.00 | 2016-04-05 | BANKRUPTCY FEE |
| 50410166 | $150.00 | 2016-04-05 | MISC FILING FEES |
| 50410166 | $825.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $775.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $525.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $145.25 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $350.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $210.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $1,975.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $125.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $75.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $200.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $125.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $125.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $52.50 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $75.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $100.00 | 2016-04-05 | APPRAISAL |
| 50410166 | $175.00 | 2016-04-05 | ATTORNEY FEES |
| 50410166 | $125.00 | 2016-04-05 | TITLE SEARCH |

Outstanding Total- $3,829.39

Account Hist: 82423433
Customer: JAMES TURNER JR

| Source * | Tran Date | Back Date | Tran Amt | Tran Code | Tran Desc | Tran Cat | Due Pd | Prin Paid | Int Paid | Esc Paid | Late Paid | Ins Paid | UAF Paid | Other Pd | Escrow Bal | Prin Bal ** | Tran Cat Des |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GTA | 10/08/15 | | -15.00 | 211 | Disbursement:Insurance Only | 16 | | | | | | | | | | 326,041.48 | Accounts Payable |
| | | | | | Ins 390 | | | 0 | 0 | | | -15.00 | | | | | |
| GTA | 05/26/15 | | 4,012.73 | 150 | Payment:Insurance Only-Cash | E2 | | | | | | | | | | 326,041.48 | Esc Disb-Insurance |
| | | | | | Ins 12 | | | 0 | 0 | | | 4,012.73 | | | | | |
| GTA | 05/26/15 | | -4,012.73 | 210 | Disbursement:Escrow Only | F7 | | | | | | | | | | 326,041.48 | Esc Disb-Hazard/Fire |
| | | | | | Esc 80 | | | 0 | 0 | -4,012.73 | | | | | -107281.52 | | |
| GTA | 05/23/15 | | -4,012.73 | 211 | Disbursement:Insurance Only | 25 | | | | | | | | | | 326,041.48 | Agency Feed |
| | | | | | Ins 12 | | | 0 | 0 | | | -4,012.73 | | | | | |
| GTA | 12/10/14 | 12/04/14 | 50.00 | 150 | Payment:Insurance Only-Cash | 28 | | | | | | | | | | 326,041.48 | CASH - Misc |
| | | | | | Ins 389 | | | 0 | 0 | | | 50.00 | | | | | |
| GTA | 10/31/14 | | -195.00 | 211 | Disbursement:Insurance Only | 16 | | | | | | | | | | 326,041.48 | Accounts Payable |
| | | | | | Ins 389 | | | 0 | 0 | | | -195.00 | | | | | |
| GTA | 10/31/14 | | -50.00 | 211 | Disbursement:Insurance Only | 16 | | | | | | | | | | 326,041.48 | Accounts Payable |
| | | | | | Ins 388 | | | 0 | 0 | | | -50.00 | | | | | |
| GTA | 10/31/14 | | -1,847.42 | 210 | Disbursement:Escrow Only | E7 | | | | | | | | | | 326,041.48 | Esc Disb-County |
| | | | | | Esc 80 | | | 0 | 0 | -1,847.42 | | | | | -103268.79 | | |
| GTA | 09/13/14 | | -2.40 | 211 | Disbursement:Insurance Only | 16 | | | | | | | | | | 326,041.48 | Accounts Payable |
| | | | | | Ins 387 | | | 0 | 0 | | | -2.40 | | | | | |
| GTA | 09/13/14 | | -.60 | 211 | Disbursement:Insurance Only | 16 | | | | | | | | | | 326,041.48 | Accounts Payable |
| | | | | | Ins 386 | | | 0 | 0 | | | -.60 | | | | | |
| GTA | 09/13/14 | | -165.00 | 211 | Disbursement:Insurance Only | 16 | | | | | | | | | | 326,041.48 | Accounts Payable |
| | | | | | Ins 385 | | | 0 | 0 | | | -165.00 | | | | | |
| GTA | 09/13/14 | | -50.00 | 211 | Disbursement:Insurance Only | 16 | | | | | | | | | | 326,041.48 | Accounts Payable |
| | | | | | Ins 384 | | | 0 | 0 | | | -50.00 | | | | | |
| GTA | 09/13/14 | | -313.00 | 211 | Disbursement:Insurance Only | 16 | | | | | | | | | | 326,041.48 | Accounts Payable |
| | | | | | Ins 383 | | | 0 | 0 | | | -313.00 | | | | | |
| GTA | 07/17/14 | | 4,064.38 | 150 | Payment:Insurance Only-Cash | E2 | | | | | | | | | | 326,041.48 | Esc Disb-Insurance |
| | | | | | Ins 11 | | | 0 | 0 | | | 4,064.38 | | | | | |
| GTA | 07/17/14 | | -4,064.38 | 210 | Disbursement:Escrow Only | F7 | | | | | | | | | | 326,041.48 | Esc Disb-Hazard/Fire |
| | | | | | Esc 80 | | | 0 | 0 | -4,064.38 | | | | | 101421.37 | | |
| GTA | 07/16/14 | | -4,064.38 | 211 | Disbursement:Insurance Only | 25 | | | | | | | | | | 326,041.48 | Agency Feed |
| | | | | | Ins 11 | | | 0 | 0 | | | -4,064.38 | | | | | |
| GTA | 07/11/14 | | -388.00 | 210 | Disbursement:Escrow Only | F9 | | | | | | | | | | 326,041.48 | Esc Disb-Flood |
| | | | | | Esc 80 | | | 0 | 0 | -388.00 | | | | | -97356.99 | | |
| GTA | 04/30/14 | | -15.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | | | | | 326,041.48 | Acquisition Activities |
| | | | | | Ins 382 | | | 0 | 0 | | | -15.00 | | | | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| GTA | 04/30/14 | -15.00 | 211 | Disbursement:Insurance Only | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 381 | | 0 | 0 | -15.00 | | |
| GTA | 04/30/14 | -13.50 | 211 | Disbursement:Insurance Only | 77 | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 380 | | 0 | 0 | -13.50 | | |
| GTA | 04/30/14 | -20.00 | 211 | Disbursement:Insurance Only | 77 | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 379 | | 0 | 0 | -20.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 378 | | 0 | 0 | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 377 | | 0 | 0 | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 376 | | 0 | 0 | -10.00 | | |
| GTA | 04/30/14 | -20.00 | 211 | Disbursement:Insurance Only | 77 | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 375 | | 0 | 0 | -20.00 | | |
| GTA | 04/30/14 | -20.00 | 211 | Disbursement:Insurance Only | 77 | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 374 | | 0 | 0 | -20.00 | | |
| GTA | 04/30/14 | -20.00 | 211 | Disbursement:Insurance Only | 77 | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 373 | | 0 | 0 | -20.00 | | |
| GTA | 04/30/14 | -20.00 | 211 | Disbursement:Insurance Only | 77 | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 372 | | 0 | 0 | -20.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 371 | | 0 | 0 | -10.00 | | |
| GTA | 04/30/14 | -20.00 | 211 | Disbursement:Insurance Only | 77 | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 370 | | 0 | 0 | -20.00 | | |
| GTA | 04/30/14 | -20.00 | 211 | Disbursement:Insurance Only | 77 | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 369 | | 0 | 0 | -20.00 | | |
| GTA | 04/30/14 | -20.00 | 211 | Disbursement:Insurance Only | 77 | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 368 | | 0 | 0 | -20.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 367 | | 0 | 0 | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 366 | | 0 | 0 | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 365 | | 0 | 0 | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 364 | | 0 | 0 | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 363 | | 0 | 0 | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 362 | | 0 | 0 | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 361 | | 0 | 0 | -10.00 | | |

| Name | Date | Amount | Num | Account | | | | | | Balance | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 360 | | 0 | 0 | | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 359 | | 0 | 0 | | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 358 | | 0 | 0 | | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 357 | | 0 | 0 | | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 356 | | 0 | 0 | | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 355 | | 0 | 0 | | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 354 | | 0 | 0 | | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 353 | | 0 | 0 | | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 352 | | 0 | 0 | | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 351 | | 0 | 0 | | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 350 | | 0 | 0 | | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 349 | | 0 | 0 | | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 348 | | 0 | 0 | | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 347 | | 0 | 0 | | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 346 | | 0 | 0 | | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 345 | | 0 | 0 | | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 344 | | 0 | 0 | | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 343 | | 0 | 0 | | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 342 | | 0 | 0 | | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 341 | | 0 | 0 | | -10.00 | | |
| GTA | 04/30/14 | -10.00 | 211 | Disbursement:Insurance Only | 77 | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 340 | | 0 | 0 | | -10.00 | | |

4

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GTA | 04/30/14 | -265.00 | 211 | Disbursement:Insurance Only | | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 339 | | 0 | 0 | | | -265.00 | | |
| GTA | 04/30/14 | -365.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 338 | | 0 | 0 | | | -365.00 | | |
| GTA | 04/30/14 | -325.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 337 | | 0 | 0 | | | -325.00 | | |
| GTA | 04/30/14 | -935.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 336 | | 0 | 0 | | | -935.00 | | |
| GTA | 04/30/14 | -200.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 335 | | 0 | 0 | | | -200.00 | | |
| GTA | 04/30/14 | -375.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 334 | | 0 | 0 | | | -375.00 | | |
| GTA | 04/30/14 | -120.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 333 | | 0 | 0 | | | -120.00 | | |
| GTA | 04/30/14 | -85.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 332 | | 0 | 0 | | | -85.00 | | |
| GTA | 04/30/14 | -1,125.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 331 | | 0 | 0 | | | -1,125.00 | | |
| GTA | 04/30/14 | -150.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 330 | | 0 | 0 | | | -150.00 | | |
| GTA | 04/30/14 | -120.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 329 | | 0 | 0 | | | -120.00 | | |
| GTA | 04/30/14 | -240.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 328 | | 0 | 0 | | | -240.00 | | |
| GTA | 04/30/14 | -85.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 327 | | 0 | 0 | | | -85.00 | | |
| GTA | 04/30/14 | -2,410.03 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 326 | | 0 | 0 | | | -2,410.03 | | |
| GTA | 04/30/14 | -450.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 325 | | 0 | 0 | | | -450.00 | | |
| GTA | 04/30/14 | -225.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 324 | | 0 | 0 | | | -225.00 | | |
| GTA | 04/30/14 | -109.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 323 | | 0 | 0 | | | -109.00 | | |
| GTA | 04/30/14 | -250.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 322 | | 0 | 0 | | | -250.00 | | |
| GTA | 04/30/14 | -60.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 321 | | 0 | 0 | | | -60.00 | | |
| GTA | 04/30/14 | -140.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 320 | | 0 | 0 | | | -140.00 | | |
| GTA | 04/30/14 | -165.00 | 211 | Disbursement:Insurance Only | | | | | | | 326,041.48 | Acquisition Activities |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GTA | 04/30/14 | -550.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 318 | | 0 | 0 | | -550.00 | | | |
| GTA | 04/30/14 | -150.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 317 | | 0 | 0 | | -150.00 | | | |
| GTA | 04/30/14 | -825.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 316 | | 0 | 0 | | -825.00 | | | |
| GTA | 04/30/14 | -775.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 315 | | 0 | 0 | | -775.00 | | | |
| GTA | 04/30/14 | -525.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 314 | | 0 | 0 | | -525.00 | | | |
| GTA | 04/30/14 | -145.25 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 313 | | 0 | 0 | | -145.25 | | | |
| GTA | 04/30/14 | -350.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 312 | | 0 | 0 | | -350.00 | | | |
| GTA | 04/30/14 | -210.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 311 | | 0 | 0 | | -210.00 | | | |
| GTA | 04/30/14 | -1,975.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 310 | | 0 | 0 | | -1,975.00 | | | |
| GTA | 04/30/14 | -125.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 309 | | 0 | 0 | | -125.00 | | | |
| GTA | 04/30/14 | -75.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 308 | | 0 | 0 | | -75.00 | | | |
| GTA | 04/30/14 | -200.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 307 | | 0 | 0 | | -200.00 | | | |
| GTA | 04/30/14 | -125.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 306 | | 0 | 0 | | -125.00 | | | |
| GTA | 04/30/14 | -125.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 305 | | 0 | 0 | | -125.00 | | | |
| GTA | 04/30/14 | -52.50 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 304 | | 0 | 0 | | -52.50 | | | |
| GTA | 04/30/14 | -75.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 303 | | 0 | 0 | | -75.00 | | | |
| GTA | 04/30/14 | -100.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 302 | | 0 | 0 | | -100.00 | | | |
| GTA | 04/30/14 | -175.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 301 | | 0 | 0 | | -175.00 | | | |
| GTA | 04/30/14 | -125.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | 326,041.48 | Acquisition Activities |
| | | | | Ins 300 | | 0 | 0 | | -125.00 | | | |
| GTA | 04/30/14 | -96,968.99 | 210 | Disbursement:Escrow Only | QU | | | | | | 326,041.48 | Acquired Negative ESC-Unknown |

EXHIBIT "E"

| Tran Date | Tran Amt | Code | Cal | Due Date | Total | Prin Due | Int | Ins | Escrow | Late | Advnc | UAF | Back Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/06/17 | 15.00 | 633-INSPECTION | | | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 | 0 | |
| 09/06/17 | 15.00 | 633-INSPECTION | | | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 | 0 | |
| 03/31/17 | 125.00 | 633-REPAIRS | | | 125.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 125.00 | 0 | |
| 08/16/17 | 15.00 | 633-INSPECTION | | | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 | 0 | |
| 07/14/17 | 15.00 | 633-INSPECTION | | | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 | 0 | |
| 06/13/17 | -1,908.00 | 351-Hazard Ins Disb | | 05/01/18 | -1,908.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | |
| | 850.95 | 161-Escrow Advance | | 05/01/17 | 850.95 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | |
| 06/08/17 | 15.00 | 633-INSPECTION | | | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 | 0 | |
| 05/26/17 | 0.00 | 172-Payments | | 04/01/17 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 05/26/17 |
| | 960.01 | 172-Payments | | 04/01/17 | 960.01 | 370.55 | 438.45 | 0.00 | 151.01 | 0.00 | 0.00 | -960.01 | 05/26/17 |
| | -960.01 | 172-Payments | | 04/01/17 | -960.01 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 960.00 | 05/26/17 |
| | 960.00 | 172-Payments | | 04/01/17 | 960.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 960.00 | 05/26/17 |
| 04/25/17 | 0.00 | 172-Payments | | 03/01/17 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 04/25/17 |
| | 960.01 | 172-Payments | | 03/01/17 | 960.01 | 369.94 | 439.06 | 0.00 | 151.01 | 0.00 | 0.00 | -960.01 | 04/25/17 |
| | -960.01 | 172-Payments | | 03/01/17 | -960.01 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 960.00 | 04/25/17 |
| | 960.00 | 172-Payments | | 03/01/17 | 960.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 960.00 | 04/25/17 |
| 04/14/17 | 0.00 | 173-Payments | | 02/01/17 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 04/25/17 |
| | 960.01 | 173-Payments | | 02/01/17 | 960.01 | 369.32 | 439.68 | 0.00 | 151.01 | 0.00 | 0.00 | -960.01 | 04/25/17 |
| | 0.00 | 147-Misapp Rev | | 02/01/17 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 -1,148.51 | 0.00 | 0.00 | 188.50 | |
| 04/11/17 | 0.00 | 172-Payments | | 03/01/17 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 05/26/17 |
| | 960.01 | 172-Payments | | 03/01/17 | 960.01 | 0.00 | 0.00 | 0.00 | 151.01 | 0.00 | 0.00 | -960.01 | 05/26/17 |
| | -960.01 | 172-Payments | | 03/01/17 | -960.01 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 960.00 | 05/26/17 |
| | 960.00 | 172-Payments | | 03/01/17 | 960.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 960.00 | 05/26/17 |
| | 15.00 | 633-INSPECTION | | | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 | 0 | |
| 04/03/17 | 416.67 | 175-Prin Payment | | 02/01/17 | 416.67 | 416.67 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 04/03/17 |
| 03/08/17 | 0.00 | 172-Payments | | 01/01/17 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 03/08/17 |
| | 960.01 | 172-Payments | | 01/01/17 | 960.01 | 368.01 | 440.99 | 0.00 | 151.01 | 0.00 | 0.00 | -960.01 | 03/08/17 |
| | -960.01 | 172-Payments | | 01/01/17 | -960.01 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 960.00 | 03/08/17 |
| | 960.00 | 172-Payments | | 01/01/17 | 960.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 960.00 | 03/08/17 |

| Amount / Description | Date | | | | | | | | Date |
|---|---|---|---|---|---|---|---|---|---|
| 809.00 172-Payments | 08/01/16 | 809.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 809.00 | 09/09/16 |
| 1,296.66 172-Payments | 08/01/16 | 1,296.66 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1296.66 | 08/04/16 |
| 0.00 173-Payments | 07/01/16 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 07/20/16 |
| 0.00 173-Payments | 07/01/16 | 1,296.66 | 364.36 | 444.64 | 487.66 | 0.00 | 0.00 | 0 | 07/20/16 |
| 0.00 173-Payments | 06/01/16 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 07/20/16 |
| 0.00 173-Payments | 06/01/16 | 1,296.66 | 363.75 | 445.25 | 487.66 | 0.00 | 0.00 | -2593.32 | 07/20/16 |
| 0.00 143-Balance Adjust | | 0.00 | 91,253.42 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 07/18/16 |
| 0.00 143-Balance Adjust | | 91,253.42 | 91,253.42 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 07/18/16 |
| 0.00 143-Balance Adjust | | 91,253.42 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 07/16/16 |
| 0.01 170-Individual Deposit | 06/01/16 | 0.01 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.01 | 07/15/16 |
| 0.00 143-Balance Adjust | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 07/15/16 |
| -191.44 745-MOD CORP ADVANCE | 04/01/08 | -191.44 | 0.00 | 0.00 | 0.00 | 0.00 | -191.44 | -191.44 | 07/14/16 |
| -999.99 745-MOD CORP ADVANCE | | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | | |
| -999.99 745-MOD CORP ADVANCE | | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | | |
| -999.99 745-MOD CORP ADVANCE | | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | | |
| -999.99 745-MOD CORP ADVANCE | | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | | |
| -999.99 745-MOD CORP ADVANCE | | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | | |
| -999.99 745-MOD CORP ADVANCE | | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | | |
| -999.99 745-MOD CORP ADVANCE | | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | | |
| -999.99 745-MOD CORP ADVANCE | | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | | |
| -999.99 745-MOD CORP ADVANCE | | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | | |
| -999.99 745-MOD CORP ADVANCE | | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | | |
| -999.99 745-MOD CORP ADVANCE | | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | | |
| -999.98 745-MOD CORP ADVANCE | | -999.98 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | | |
| -999.99 745-MOD CORP ADVANCE | | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0 | 07/14/16 |
| -0.17 170-Individual Deposit | 04/01/08 | -0.17 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -0.17 | 07/14/16 |
| 0.01 170-Individual Deposit | 04/01/08 | 191.44 | 0.00 | 0.00 | 0.00 | 0.00 | 191.44 | -191.43 | 07/14/16 |
| 0.01 170-Individual Deposit | 04/01/08 | 999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 999.99 | -999.98 | 07/14/16 |
| 0.01 170-Individual Deposit | 04/01/08 | 999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 999.99 | -999.98 | 07/14/16 |
| 0.01 170-Individual Deposit | 04/01/08 | 999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 999.99 | -999.98 | 07/14/16 |

| Date | Transaction | Eff. Date | Amount | Col1 | Col2 | Col3 | Col4 | Col5 | Col6 | Balance | End Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/06/17 | 15.00 633-INSPECTION | | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 | | 15.00 | |
| | 15.00 633-INSPECTION | 12/01/16 | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 | | 15.00 | |
| 02/22/17 | 0.00 172-Payments | 12/01/16 | 0.00 | 367.40 | 0.00 | 441.60 | 0.00 | 487.66 | 0.00 | 0 | 02/22/17 |
| | 1,296.66 172-Payments | 12/01/16 | 1,296.66 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1296.66 | 02/22/17 |
| | -1,296.66 172-Payments | 12/01/16 | -1,296.66 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 960.00 | 02/22/17 |
| | 960.00 172-Payments | 12/01/16 | 960.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5.00 | 02/22/17 |
| | 5.00 172-Payments | 12/01/16 | 5.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 02/22/17 |
| 02/10/17 | 15.00 633-INSPECTION | 11/01/16 | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 | | 15.00 | |
| 01/25/17 | 0.00 172-Payments | 11/01/16 | 0.00 | 366.79 | 0.00 | 442.21 | 0.00 | 487.66 | 0.00 | 0 | 01/25/17 |
| | 1,296.66 172-Payments | 11/01/16 | 1,296.66 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1296.66 | 01/25/17 |
| | -1,296.66 172-Payments | 11/01/16 | -1,296.66 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 960.01 | 01/25/17 |
| | 960.01 172-Payments | 11/01/16 | 960.01 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 01/25/17 |
| 12/28/16 | 809.00 172-Payments | 11/01/16 | 809.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 809.00 | 12/28/16 |
| 12/09/16 | 15.00 633-INSPECTION | | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 | | 15.00 | |
| 11/29/16 | 0.00 172-Payments | 10/01/16 | 0.00 | 366.18 | 0.00 | 442.82 | 0.00 | 487.66 | 0.00 | 0 | 11/29/16 |
| | 1,296.66 172-Payments | 10/01/16 | 1,296.66 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1296.66 | 11/29/16 |
| | -1,296.66 172-Payments | 10/01/16 | -1,296.66 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 809.00 | 11/29/16 |
| | 809.00 172-Payments | 10/01/16 | 809.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 809.00 | 11/29/16 |
| 11/12/16 | -1,812.10 312-County Tax Disb | 11/01/16 | -1,812.10 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | |
| 11/03/16 | 366.18 172-Payments | 10/01/16 | 366.18 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 366.18 | 11/03/16 |
| 10/13/16 | 0.00 173-Payments | 09/01/16 | 0.00 | 365.57 | 0.00 | 443.43 | 0.00 | 487.66 | 0.00 | -1296.66 | 10/06/16 |
| | 0.00 173-Payments | 09/01/16 | 0.00 | 364.96 | 0.00 | 444.04 | 0.00 | 487.66 | 0.00 | 0 | 10/06/16 |
| | 0.00 173-Payments | 09/01/16 | 1,296.66 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 08/04/16 |
| | 0.00 173-Payments | 08/01/16 | 1,296.66 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1296.66 | 08/04/16 |
| 10/11/16 | 15.00 633-INSPECTION | | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 | | 15.00 | |
| 10/10/16 | 250.00 633-FC ATTY FEES | | 250.00 | 0.00 | 0.00 | 0.00 | 0.00 | 250.00 | | 250.00 | |
| 10/06/16 | 809.00 172-Payments | 08/01/16 | 809.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 809.00 | 10/06/16 |

| Date | Description | Date | Amount | | | | | | Amount | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| | -9,999.99 168-Escr Advance Repay | 04/01/08 | -9,999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 |
| | -9,999.99 168-Escr Advance Repay | 04/01/08 | -9,999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 |
| | -9,999.99 168-Escr Advance Repay | 04/01/08 | -9,999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 |
| | -9,999.99 168-Escr Advance Repay | 04/01/08 | -9,999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 |
| | -9,999.99 168-Escr Advance Repay | 04/01/08 | -9,999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 |
| | -730,027.36 145-Restricted Adj | 04/01/08 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 |
| | 58,598.10 143-Balance Adjust | | 58,598.10 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 |
| | -364,615.69 143-Balance Adjust | | -364,615.69 364,615.69 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 |
| | 8,274.22 132-Late Charge Adj | | 8,274.22 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 |
| 07/07/16 | 1,296.66 172-Payments | 04/01/08 | 1,296.66 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1296.66 | 07/07/16 |
| 06/27/16 | 1,774.39 633-RECORDING FEE | 04/01/08 | 1,774.39 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,774.39 | 0 |
| | 125.00 633-RECORDING FEE | | 125.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 125.00 | 0 |
| 06/08/16 | 1,296.66 172-Payments | 04/01/08 | 1,296.66 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1296.66 | 06/08/16 |
| 06/03/16 | 15.00 633-INSPECTION | | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 | 0 |
| 05/05/16 | 1,349.66 172-Payments | 04/01/08 | 1,349.66 | 292.95 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1349.66 | 05/05/16 |
| 04/09/16 | 0.00 173-Payments | 03/01/08 | 2,262.80 | 0.00 | 1,969.83 | 0.00 | 0.00 | 0.00 | 0.00 | -2262.80 | 04/01/16 |
| | -0.02 168-Escr Advance Repay | 03/01/08 | -0.02 | 0.00 | 0.00 | 0.02 | 0.00 | 0.00 | 0.00 | 0 |
| 04/06/16 | 1,349.66 172-Payments | 03/01/08 | 1,349.66 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1349.66 | 04/01/16 |
| 04/05/16 | 15.00 745-INSPECTION - EX | | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 | 0 |
| | 15.00 745-INSPECTION - EX | | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 | 0 |
| | 15.00 745-INSPECTION - EX | | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 | 0 |
| | 15.00 745-INSPECTION - EX | | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 | 0 |
| | -50.00 745-FC COSTS - PUBL | | -50.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -50.00 | 0 |
| | 195.00 745-FC COSTS - PUBL | | 195.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 195.00 | 0 |
| | 50.00 745-COURT COSTS | | 50.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50.00 | 0 |
| | 2.40 745-SKIP TRACE/SEAR | | 2.40 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2.40 | 0 |
| | 0.60 745-SKIP TRACE/SEAR | | 0.60 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.60 | 0 |
| | 165.00 745-FC COSTS - PUBL | | 165.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 165.00 | 0 |
| | 50.00 745-COURT COSTS | | 50.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50.00 | 0 |
| | 313.00 745-COURT COSTS | | 313.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 313.00 | 0 |
| | 15.00 745-INSPECTION FEES | | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 | 0 |

| Date | Amount | Description | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 75.00 | 745-ATTORNEY FEES | 75.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 75.00 | 0 |
| | 100.00 | 745-APPRAISAL | 100.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00 | 0 |
| | 175.00 | 745-ATTORNEY FEES | 175.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 175.00 | 0 |
| | 125.00 | 745-TITLE SEARCH | 125.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 125.00 | 0 |
| 04/04/16 | 109,110.68 | 161-Escrow Advance | 04/04/16 109,110.68 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 03/04/16 |
| 03/07/16 | 1,344.66 | 100-PMT Regular Payment Cast 36 M: | 1,344.66 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 1344.66 | 03/04/16 |
| | 0.00 | UAF-Unapplied Funds | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | 5.00 | 100-PMT Regular Payment Cast 38 M: | 5.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5.00 | 03/04/16 |
| | 0.00 | UAF-Unapplied Funds | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | 5.00 | 100-PMT Regular Payment Cast 36 M: | 5.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5.00 | 03/01/16 |
| | 0.00 | UAF-Unapplied Funds | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5.00 | |
| 02/12/16 | -15.00 | 211-INS Insurance Disbursemen 16 Ac: | -15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -15.00 | |
| 01/14/16 | -15.00 | 211-INS Insurance Disbursemen 16 Ac: | -15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -15.00 | |
| 12/11/15 | -15.00 | 211-INS Insurance Disbursemen 16 Ac: | -15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -15.00 | |
| 11/11/15 | -1,829.16 | 210-ESC Escrow Disbursement E7 E: | -1,829.16 | 0.00 | 0.00 | 0.00 | 0.00 0.00 -1,829.16 | 0.00 | 0.00 | | 11/1/15 |
| 10/08/15 | -15.00 | 211-INS Insurance Disbursemen 16 Ac: | -15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -15.00 | |
| 05/26/15 | 4,012.73 | 150-INS Insurance Only Paymer E2 E: | 4,012.73 | 0.00 | 0.00 | 0.00 | 4,012.73 | 0.00 | 0.00 | 0.00 | 05/26/15 |
| | 4,012.73 | 210-ESC Escrow Disbursement F7 E: | 4,012.73 | 0.00 | 0.00 | 0.00 | 0.00 4,012.73 | 0.00 | 0.00 | 0.00 | 05/26/15 |
| 05/23/15 | -4,012.73 | 211-INS Insurance Disbursemen 25 Ac: | -4,012.73 | 0.00 | 0.00 | -4,012.73 | 0.00 | 0.00 | 0.00 | 0.00 | 05/26/15 |
| 12/10/14 | 50.00 | 150-INS Insurance Only Paymer 28 C: | 50.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50.00 | 12/04/14 |
| 10/31/14 | -195.00 | 211-INS Insurance Disbursemen 16 Ac: | -195.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -195.00 | 12/04/14 |
| | -50.00 | 211-INS Insurance Disbursemen 16 Ac: | -50.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -50.00 | |
| 09/13/14 | -2.40 | 211-INS Insurance Disbursemen 16 Ac: | -2.40 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -2.40 | 10/31/14 |
| | -0.60 | 211-INS Insurance Disbursemen 16 Ac: | -0.60 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -0.60 | |
| | -165.00 | 211-INS Insurance Disbursemen 16 Ac: | -165.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -165.00 | |
| | -50.00 | 211-INS Insurance Disbursemen 16 Ac: | -50.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -50.00 | |

| Date | Description | | | | | | |
|---|---|---|---|---|---|---|---|
| 07/17/14 | -313.00 211-INS Insurance Disbursment 16 Ac | 0.00 | 0.00 | 0.00 | 0.00 | -313.00 | |
| 07/17/14 | 4,064.38 150-INS Insurance Only Paymer E2 E: | 0.00 | 0.00 | 4,064.38 | 0.00 | 0.00 | 07/17/14 |
| | -4,064.38 210-ESC Escrow Disbursement F7 E: | 0.00 | 0.00 | 0.00 -4,064.38 | 0.00 | 0.00 | 07/17/14 |
| 07/16/14 | -4,064.38 211-INS Insurance Disbursement 25 A( | 0.00 | -4,064.38 | 0.00 | 0.00 | 0.00 | |
| 07/11/14 | -388.00 210-ESC Escrow Disbursement F9 E: | 0.00 | 0.00 | -388.00 | 0.00 | 0.00 | 07/11/14 |
| 04/30/14 | -15.00 211-INS Insurance Disbursment 77 Ac | -15.00 | 0.00 | 0.00 | 0.00 | -15.00 | |
| | -15.00 211-INS Insurance Disbursment 77 Ac | -15.00 | 0.00 | 0.00 | 0.00 | -15.00 | |
| | -13.50 211-INS Insurance Disbursment 77 Ac | -13.50 | 0.00 | 0.00 | 0.00 | -13.50 | |
| | -20.00 211-INS Insurance Disbursment 77 Ac | -20.00 | 0.00 | 0.00 | 0.00 | -20.00 | |
| | -20.00 211-INS Insurance Disbursment 77 Ac | -20.00 | 0.00 | 0.00 | 0.00 | -20.00 | |
| | -10.00 211-INS Insurance Disbursment 77 Ac | -10.00 | 0.00 | 0.00 | 0.00 | -10.00 | |
| | -10.00 211-INS Insurance Disbursment 77 Ac | -10.00 | 0.00 | 0.00 | 0.00 | -10.00 | |
| | -20.00 211-INS Insurance Disbursment 77 Ac | -20.00 | 0.00 | 0.00 | 0.00 | -20.00 | |
| | -20.00 211-INS Insurance Disbursment 77 Ac | -20.00 | 0.00 | 0.00 | 0.00 | -20.00 | |
| | -20.00 211-INS Insurance Disbursment 77 Ac | -20.00 | 0.00 | 0.00 | 0.00 | -20.00 | |
| | -20.00 211-INS Insurance Disbursment 77 Ac | -20.00 | 0.00 | 0.00 | 0.00 | -20.00 | |
| | -10.00 211-INS Insurance Disbursment 77 Ac | -10.00 | 0.00 | 0.00 | 0.00 | -10.00 | |
| | -10.00 211-INS Insurance Disbursment 77 Ac | -10.00 | 0.00 | 0.00 | 0.00 | -10.00 | |
| | -15.00 211-INS Insurance Disbursment 77 Ac | -15.00 | 0.00 | 0.00 | 0.00 | -15.00 | |
| | -15.00 211-INS Insurance Disbursment 77 Ac | -15.00 | 0.00 | 0.00 | 0.00 | -15.00 | |
| | -20.00 211-INS Insurance Disbursment 77 Ac | -20.00 | 0.00 | 0.00 | 0.00 | -20.00 | |
| | -20.00 211-INS Insurance Disbursment 77 Ac | -20.00 | 0.00 | 0.00 | 0.00 | -20.00 | |
| | -20.00 211-INS Insurance Disbursment 77 Ac | -20.00 | 0.00 | 0.00 | 0.00 | -20.00 | |
| | -10.00 211-INS Insurance Disbursment 77 Ac | -10.00 | 0.00 | 0.00 | 0.00 | -10.00 | |
| | -10.00 211-INS Insurance Disbursment 77 Ac | -10.00 | 0.00 | 0.00 | 0.00 | -10.00 | |
| | -10.00 211-INS Insurance Disbursment 77 Ac | -10.00 | 0.00 | 0.00 | 0.00 | -10.00 | |
| | -10.00 211-INS Insurance Disbursment 77 Ac | -10.00 | 0.00 | 0.00 | 0.00 | -10.00 | |
| | -10.00 211-INS Insurance Disbursment 77 Ac | -10.00 | 0.00 | 0.00 | 0.00 | -10.00 | |
| | -10.00 211-INS Insurance Disbursment 77 Ac | -10.00 | 0.00 | 0.00 | 0.00 | -10.00 | |
| | -20.00 211-INS Insurance Disbursment 77 Ac | -20.00 | 0.00 | 0.00 | 0.00 | -20.00 | |
| | -10.00 211-INS Insurance Disbursment 77 Ac | -10.00 | 0.00 | 0.00 | 0.00 | -10.00 | |
| | -10.00 211-INS Insurance Disbursment 77 Ac | -10.00 | 0.00 | 0.00 | 0.00 | -10.00 | |
| | -10.00 211-INS Insurance Disbursment 77 Ac | -10.00 | 0.00 | 0.00 | 0.00 | -10.00 | |
| | -10.00 211-INS Insurance Disbursment 77 Ac | -10.00 | 0.00 | 0.00 | 0.00 | -10.00 | |
| | -10.00 211-INS Insurance Disbursment 77 Ac | -10.00 | 0.00 | 0.00 | 0.00 | -10.00 | |
| | -10.00 211-INS Insurance Disbursment 77 Ac | -10.00 | 0.00 | 0.00 | 0.00 | -10.00 | |
| | -10.00 211-INS Insurance Disbursment 77 Ac | -10.00 | 0.00 | 0.00 | 0.00 | -10.00 | |
| | -10.00 211-INS Insurance Disbursment 77 Ac | -10.00 | 0.00 | 0.00 | 0.00 | -10.00 | |
| | -10.00 211-INS Insurance Disbursment 77 Ac | -10.00 | 0.00 | 0.00 | 0.00 | -10.00 | |
| | -10.00 211-INS Insurance Disbursment 77 Ac | -10.00 | 0.00 | 0.00 | 0.00 | -10.00 | |
| | -10.00 211-INS Insurance Disbursment 77 Ac | -10.00 | 0.00 | 0.00 | 0.00 | -10.00 | |
| | -10.00 211-INS Insurance Disbursment 77 Ac | -10.00 | 0.00 | 0.00 | 0.00 | -10.00 | |

| Amount | Account | Date | | | | | | | Balance | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 0.01 | 170-Individual Deposit | 04/01/08 | 999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 999.99 | -999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 999.99 | -999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 999.99 | -999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 999.99 | -999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 999.99 | -999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 999.99 | -999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 999.99 | -999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 999.99 | -999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 999.99 | -999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 999.99 | -999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 999.99 | -999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 999.99 | -999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 999.99 | -999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 999.99 | -999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 999.99 | -999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 999.99 | -999.98 | 07/14/16 |
| -191.44 | 170-Individual Deposit | 04/01/08 | -191.44 | 0.00 | 0.00 | 0.00 | 0.00 | -191.44 | -191.44 | 07/14/16 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | -999.99 | 07/14/16 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | -999.99 | 07/14/16 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | -999.99 | 07/14/16 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | -999.99 | 07/14/16 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | -999.99 | 07/14/16 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | -999.99 | 07/14/16 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | -999.99 | 07/14/16 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | -999.99 | 07/14/16 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | -999.99 | 07/14/16 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | -999.99 | 07/14/16 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | -999.99 | 07/14/16 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | -999.99 | 07/14/16 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | -999.99 | 07/14/16 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | -999.99 | 07/14/16 |
| 15,191.29 | 170-Individual Deposit | 04/01/08 | 9,110.76 | 0.00 | 0.00 | 0.00 | 9,110.76 | 0.00 | 16191.28 | 07/14/16 |
| -0.11 | 170-Individual Deposit | 04/01/08 | -0.11 | 0.00 | 0.00 | 0.00 | 0.00 | -0.11 | -0.11 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 9,110.76 | 0.00 | 0.00 | 0.00 | 9,110.76 | 0.00 | -9110.75 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 9,999.99 | 0.00 | 0.00 | 0.00 | 9,999.99 | 0.00 | -9999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 9,999.99 | 0.00 | 0.00 | 0.00 | 9,999.99 | 0.00 | -9999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 9,999.99 | 0.00 | 0.00 | 0.00 | 9,999.99 | 0.00 | -9999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 9,999.99 | 0.00 | 0.00 | 0.00 | 9,999.99 | 0.00 | -9999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 9,999.99 | 0.00 | 0.00 | 0.00 | 9,999.99 | 0.00 | -9999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 9,999.99 | 0.00 | 0.00 | 0.00 | 9,999.99 | 0.00 | 0 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 9,999.99 | 0.00 | 0.00 | 0.00 | 9,999.99 | 0.00 | -9999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 9,999.99 | 0.00 | 0.00 | 0.00 | 9,999.99 | 0.00 | -9999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 9,999.99 | 0.00 | 0.00 | 0.00 | 9,999.99 | 0.00 | -9999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 9,999.99 | 0.00 | 0.00 | 0.00 | 9,999.99 | 0.00 | -9999.98 | 07/14/16 |
| 0.01 | 170-Individual Deposit | 04/01/08 | 9,999.99 | 0.00 | 0.00 | 0.00 | 9,999.99 | 0.00 | -9999.98 | 07/14/16 |

| Amount | Description | Date | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 0.01 | 170-Individual Deposit | 04/01/08 | 9,999.99 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 0.01 | 170-Individual Deposit | 04/01/08 | 9,999.99 | 0.00 | 0.00 | 0.00 9,999.99 | 0.00 | 0.00 | |
| 0.01 | 170-Individual Deposit | 04/01/08 | 0.00 | 0.00 | 0.00 | 0.00 9,999.99 | 0.00 -9999.98 | 0 | 07/14/16 |
| -660.27 | 170-Individual Deposit | 04/01/08 | -660.27 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 -9999.98 | 0 07/14/16 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -660.27 | -8999.98 | 0 07/14/16 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | | -999.99 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 15.00 | 745-INSPECTION FEES | 15.00 | 0.00 | 0.00 | | 0.00 | 15.00 | 0 |
| 13.50 | 745-INSPECTION FEES | 13.50 | 0.00 | 0.00 | | 0.00 | 13.50 | 0 |
| 20.00 | 745-INSPECTION FEES | 20.00 | 0.00 | 0.00 | | 0.00 | 20.00 | 0 |
| 20.00 | 745-INSPECTION FEES | 20.00 | 0.00 | 0.00 | | 0.00 | 20.00 | 0 |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | | 0.00 | 10.00 | 0 |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | | 0.00 | 10.00 | 0 |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | | 0.00 | 10.00 | |
| 20.00 | 745-INSPECTION FEES | 20.00 | 0.00 | 0.00 | | 0.00 | 20.00 | |
| 20.00 | 745-INSPECTION FEES | 20.00 | 0.00 | 0.00 | | 0.00 | 20.00 | |
| 20.00 | 745-INSPECTION FEES | 20.00 | 0.00 | 0.00 | | 0.00 | 20.00 | |
| 20.00 | 745-INSPECTION FEES | 20.00 | 0.00 | 0.00 | | 0.00 | 20.00 | |
| 20.00 | 745-INSPECTION FEES | 20.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20.00 | |
| 20.00 | 745-INSPECTION FEES | 20.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | 0 |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | 0 |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | 0 |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | 0 |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | 0 |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |
| 10.00 | 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | |

| Description | | | | | | | |
|---|---|---|---|---|---|---|---|
| 10.00 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | 0 |
| 10.00 745-INSPECTION FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | 0 |
| 10.00 745-RECORDING FEES | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | 0 |
| 265.00 745-COMPLAINT FILING | 265.00 | 0.00 | 0.00 | 0.00 | 0.00 | 265.00 | 0 |
| 365.00 745-SERVICE/PROCESS | 365.00 | 0.00 | 0.00 | 0.00 | 0.00 | 365.00 | 0 |
| 325.00 745-TITLE SEARCH | 325.00 | 0.00 | 0.00 | 0.00 | 0.00 | 325.00 | 0 |
| 935.00 745-ATTORNEY FEES | 935.00 | 0.00 | 0.00 | 0.00 | 0.00 | 935.00 | 0 |
| 200.00 745-ATTORNEY FEES | 200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 200.00 | 0 |
| 375.00 745-ATTORNEY FEES | 375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 375.00 | 0 |
| 120.00 745-ATTORNEY FEES | 120.00 | 0.00 | 0.00 | 0.00 | 0.00 | 120.00 | 0 |
| 85.00 745-APPRAISAL | 85.00 | 0.00 | 0.00 | 0.00 | 0.00 | 85.00 | 0 |
| 1,125.00 745-ATTORNEY FEES | 1,125.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,125.00 | 0 |
| 150.00 745-ATTORNEY FEES | 150.00 | 0.00 | 0.00 | 0.00 | 0.00 | 150.00 | 0 |
| 120.00 745-ATTORNEY FEES | 120.00 | 0.00 | 0.00 | 0.00 | 0.00 | 120.00 | 0 |
| 240.00 745-ATTORNEY FEES | 240.00 | 0.00 | 0.00 | 0.00 | 0.00 | 240.00 | 0 |
| 85.00 745-APPRAISAL | 85.00 | 0.00 | 0.00 | 0.00 | 0.00 | 85.00 | 0 |
| 2,410.03 745-ATTORNEY FEES | 2,410.03 | 0.00 | 0.00 | 0.00 | 0.00 | 2,410.03 | 0 |
| 450.00 745-ATTORNEY FEES | 450.00 | 0.00 | 0.00 | 0.00 | 0.00 | 450.00 | 0 |
| 225.00 745-ATTORNEY FEES | 225.00 | 0.00 | 0.00 | 0.00 | 0.00 | 225.00 | 0 |
| 109.00 745-SERVICE/PROCESS | 109.00 | 0.00 | 0.00 | 0.00 | 0.00 | 109.00 | 0 |
| 250.00 745-ATTORNEY FEES | 250.00 | 0.00 | 0.00 | 0.00 | 0.00 | 250.00 | 0 |
| 60.00 745-ATTORNEY FEES | 60.00 | 0.00 | 0.00 | 0.00 | 0.00 | 60.00 | 0 |
| 140.00 745-CLERK FEE | 140.00 | 0.00 | 0.00 | 0.00 | 0.00 | 140.00 | 0 |
| 165.00 745-PUBLICATION SALE | 165.00 | 0.00 | 0.00 | 0.00 | 0.00 | 165.00 | 0 |
| 550.00 745-BANKRUPTCY FEE | 550.00 | 0.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0 |
| 150.00 745-MISC FILING FEES | 150.00 | 0.00 | 0.00 | 0.00 | 0.00 | 150.00 | 0 |
| 825.00 745-ATTORNEY FEES | 825.00 | 0.00 | 0.00 | 0.00 | 0.00 | 825.00 | 0 |
| 775.00 745-ATTORNEY FEES | 775.00 | 0.00 | 0.00 | 0.00 | 0.00 | 775.00 | 0 |
| 525.00 745-ATTORNEY FEES | 525.00 | 0.00 | 0.00 | 0.00 | 0.00 | 525.00 | 0 |
| 145.25 745-ATTORNEY FEES | 145.25 | 0.00 | 0.00 | 0.00 | 0.00 | 145.25 | 0 |
| 350.00 745-ATTORNEY FEES | 350.00 | 0.00 | 0.00 | 0.00 | 0.00 | 350.00 | 0 |
| 210.00 745-ATTORNEY FEES | 210.00 | 0.00 | 0.00 | 0.00 | 0.00 | 210.00 | 0 |
| 1,975.00 745-ATTORNEY FEES | 1,975.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,975.00 | 0 |
| 125.00 745-ATTORNEY FEES | 125.00 | 0.00 | 0.00 | 0.00 | 0.00 | 125.00 | 0 |
| 75.00 745-ATTORNEY FEES | 75.00 | 0.00 | 0.00 | 0.00 | 0.00 | 75.00 | 0 |
| 200.00 745-ATTORNEY FEES | 200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 200.00 | 0 |
| 125.00 745-ATTORNEY FEES | 125.00 | 0.00 | 0.00 | 0.00 | 0.00 | 125.00 | 0 |
| 125.00 745-ATTORNEY FEES | 125.00 | 0.00 | 0.00 | 0.00 | 0.00 | 125.00 | 0 |
| 52.50 745-ATTORNEY FEES | 52.50 | 0.00 | 0.00 | 0.00 | 0.00 | 52.50 | 0 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -660.26 | 170-Individual Deposit | 04/01/08 | -660.26 | 0.00 | 0.00 | 0.00 | 0.00 | -660.26 | 0.00 | 0 |
| 52,659.75 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 53659.74 | 0 07/14/16 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 0 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | 0.00 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | -999.99 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | -999.99 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | -999.99 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | -999.99 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | -999.99 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | -999.99 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | -999.99 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | -999.99 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | -999.99 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | -999.99 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | -999.99 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | -999.99 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | -999.99 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | -999.99 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | -999.99 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | -999.99 | 0 |
| -999.99 | 170-Individual Deposit | 04/01/08 | -999.99 | 0.00 | 0.00 | -999.99 | 0 |
| 52,659.74 | 170-Individual Deposit | 04/01/08 | 52,659.74 | 0.00 | 0.00 | 0.00 53659.73 | 0  07/14/16 |
| -9,110.76 | 168-Escr Advance Repay | 04/01/08 | -9,110.76 | 0.00 | 0.00 | 0.00 | 0 |
| -9,999.99 | 168-Escr Advance Repay | 04/01/08 | -9,999.99 | 0.00 | 0.00 | 0.00 | 0 |
| -9,999.99 | 168-Escr Advance Repay | 04/01/08 | -9,999.99 | 0.00 | 0.00 | 0.00 | 0 |
| -9,999.99 | 168-Escr Advance Repay | 04/01/08 | -9,999.99 | 0.00 | 0.00 | 0.00 | 0 |
| -9,999.99 | 168-Escr Advance Repay | 04/01/08 | -9,999.99 | 0.00 | 0.00 | 0.00 | 0 |
| -9,999.99 | 168-Escr Advance Repay | 04/01/08 | -9,999.99 | 0.00 | 0.00 | 0.00 | 0 |

**James E Turner**
**27401 SW 139th Place**
**Homestead FL 33032**
**(786) 201-4912**
**Email. keygazer@gmail.com**

April 22nd, 2018

Phelan Hallinan Diamond & Jones. PLLC
Attention: Jonathan L. Blackmore
Florida Bar No: 67902
2727 West Cypress Creek Road
Ft. Lauderdale, FL 33309
Fax: 954-462-7001

REF: PH # 85493

                THIRD STATUTORY NOTICE DISPUTING CLAIM OF DEBT

Dear Mr. Blackmore,

I am in receipt of another letter which is undated but received via email on April 18th, 2018, with a follow up hard copy in the mail received April 21st, 2018.

This letter has attached documents which are the exact same documents you previously sent, and which fail to answer any of my disputes.

As previously stated, these documents do not provide complete evidence of the sums you claim are owed.

The original mortgage was modified in 2016 with new terms, interest rate and duration, thus the modification is also applicable to your claim of debt. The majority of computer print outs you provided are a repetitive duplication.

As you know from my previous letters I have attempted thru Qualified Written Requests to verify the sums your client claim were corporate advances and why the sums detailed in my proposed modification offer dated February 5th, 2016 of $525,684.53 had changed to $631,776.12 an increase of $106,091.59. This increase only occurring after I had made the three trial payments.

The responses thus far deprive me of the ability to authenticate these payments were legitimate, permissible and actually paid.

In my Notice of Dispute to you dated January 26th, 2018 I identified to you examples of charges categorized as "Insurance Disbursements" with various amounts $15, $50, $195, $165, $2.40, $125, $350 etc. amounting to thousands of dollars and charges categorized as "inspection Fees" all undated and costing hundreds. Your client has been asked to provide details of who these alleged payments were made to, they have refused. As recently as March 31st, 2017 there is a charge labelled Repairs for $125.00, clearly fraudulent.

In addition, we see multiple charges for legal fees and costs for which no motions or applications were made seeking the Courts approval. Thus, they are barred.

[1]

For clarification and to insure there is no confusion as to the exact amounts I dispute, I attach copies of the documents you sent with amounts highlighted in orange.

I request copies of bills, invoices, names and address, account numbers of all the parties these alleged payments were made to.

Your client has charged to my account $125,301.93 in alleged corporate advances but when I request specific details of the names, addresses, dates and exact purpose of the advances they produce nothing more than computer print outs. I need the ability to confirm these payments are genuine legal and actually made.

I therefore dispute the validity of your claim pursuant to Federal and State Statutes and request you provide full and detailed documentary evidence of the sums claimed as detailed herein.

Yours Sincerely

James E Turner

[2]

# EXHIBIT "2"

**IN THE CIRCUIT COURT OF THE**
**11TH JUDICIAL CIRCUIT IN AND FOR**
**MIAMI-DADE COUNTY, FLORIDA**

**CIRCUIT CIVIL DIVISION**
**CASE NO:** 2008-CA-037530

Everhome Mortgage Company

Plaintiff(s),

vs.

James E. Turner, Jr.

Defendant(s),

_____/

FILED FOR RECORD
2016 JAN 14 AM 8:11
CLERK, CIRCUIT COUNTY CTS
MIAMI-DADE COUNTY, FLA
CIVIL DIVISION #201

~~ORDER~~
GRANTING/DENYING
PLAINTIFF'S/DEFENDANT'S

Motion to Reschedule Sale

**THIS CAUSE** having come on to be heard on ___January 12, 2016___
on Plaintiff's/~~Defendant's~~ Motion to Reschedule Foreclosure Sale

and the Court having heard arguments of counsel, and being otherwise advised in the premises, it is hereupon

**ORDERED AND ADJUDGED** that said Motion be, and the same is hereby

1. Removed from the Court Calendar upon agreement of both parties.

2. James Turner has a pending loan modification review.

3. Plaintiff may reschedule motion for hearing upon finalization of Mr. Turner's review.

**DONE AND ORDERED** in Chambers at Miami-Dade County, Florida this 12th

day of ___January___, 2016.

CIRCUIT COURT JUDGE

JACQUELINE HOGAN SCOLA
CIRCUIT JUDGE

Copies furnished to: Counsel of Record

117_01-554  3/11    Ugo Nwadike, Esq. — for π

# EXHIBIT "3"



HELP FOR AMERICA'S HOMEOWNERS.

MAKING HOME AFFORDABLE

 **ditech**.

a Walter company

*You may be able to make your payments more affordable.*
### Act now to get the help you need!

February 05, 2016

Ditech Financial LLC
P.O. Box 6172
Rapid City, SD 57709-6172

JAMES TURNER JR
27401 SW 139TH PL
HOMESTEAD FL 33032-5532

Re: Ditech Financial LLC ("Ditech")
    Account Number:  824234538
    Property Address:  27401 SW 139TH PL
                    HOMESTEAD, FL 33032

**THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT. IF YOU ARE CURRENTLY IN BANKRUPTCY OR YOUR ACCOUNT WAS DISCHARGED IN BANKRUPTCY WITHOUT A REAFFIRMATION, THE SERVICER IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DEBT AS YOUR PERSONAL LIABILITY.**

Dear JAMES TURNER JR:

**Congratulations!** You are approved to enter into a trial period plan under the Home Affordable Modification Program. This is the first step towards qualifying for a more affordable mortgage payment. Please read this letter so that you understand all the steps you need to take to modify your mortgage payments.

**What you need to do...**
To accept this offer, you must make your first monthly "trial period payment." To qualify for a permanent modification, you must make the following trial period payments in a timely manner:

| | |
|---|---|
| 1st payment: | $1,349.66 by 03/01/2016 |
| 2nd payment: | $1,349.66 by 04/01/2016 |
| 3rd payment: | $1,349.66 by 05/01/2016 |

After all trial period payments are timely made and you have met all of the applicable qualification requirements, your mortgage will then be permanently modified. (Your existing loan and loan requirements remain in effect and unchanged during the trial period.) **If each payment is not received by Ditech in the month in which it is due, this offer will end and your loan will not be modified under the terms described in this offer.**

If you have any questions or if you cannot afford the trial period payments shown above but want to keep your property, or if you have decided to leave your property but still want to avoid foreclosure, please call us at 1-800-643-0202 as we may be able to help you. (Also, please review the attached "Frequently Asked Questions".)

HAMP Trial Period Plan -Verified-Bankruptcy, 02/25/2104        YAHMPZ04  1.7               LTR-632(BK)

# EXHIBIT "4"



**a Walter company**

Ditech Financial LLC
P.O. Box 6172
Rapid City, SD 57709-6172
Phone: 1-800-643-0202
Fax: 1-866-870-9919
Ditech.com

February 05, 2016

JAMES TURNER JR
27401 SW 139TH PL
HOMESTEAD FL 33032-5532

RE: Ditech Financial LLC ("Ditech")
    Account Number: 824234538
    Property Address: 27401 SW 139TH PL
                 HOMESTEAD, FL 33032

**THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT. IF YOU ARE CURRENTLY IN BANKRUPTCY OR YOUR ACCOUNT WAS DISCHARGED IN BANKRUPTCY WITHOUT A REAFFIRMATION, THE SERVICER IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DEBT AS YOUR PERSONAL LIABILITY.**

Dear JAMES TURNER JR:



Congratulations! You were approved for a modification Trial Period Plan. As part of Ditech's continued commitment to provide our customers with a clear understanding of the terms of their loss mitigation offer, the terms of the proposed modification are listed below.

**THESE ARE NOT YOUR FINALIZED MODIFICATION TERMS AND ARE SUBJECT TO CHANGE.**

| PROPOSED MODIFICATION INFORMATION | | |
|---|---|---|
| The fields below describe the proposed modification that was calculated by Ditech according to the program guidelines (subject to investor restrictions) that were used in your evaluation. If more than one amortization term was listed on your modification Trial Period Plan, please note that this summary was created based upon the terms that provide the lowest principal and interest payment amount. These terms are not the final modification terms and may be subject to change when the final modification calculations are completed. | | |
| 1. Unpaid Principal Balance of the Proposed Modification (Net of Forbearance & Principal Reduction) | This field identifies the beginning principal balance on which you would have been required to pay interest if you had received a modification. | $268,203.84 |
| 2. Interest Rate of the Proposed Modification | This field identifies the starting interest rate of the proposed modified mortgage. | 2.00000% |
| 3. Amortization Term of the Proposed Modification | This field identifies the number of months left to pay the proposed modified mortgage. | 480 |
| 4. Principal and Interest Payment of the Proposed Modification | This field identifies the amount of the monthly principal and interest payment on the proposed modified mortgage. | $812.19 |
| 5. Principal Forbearance Amount of the Proposed Modification | This field identifies the amount of principal your investor may be willing to forbear on the proposed modified mortgage. You will still owe this amount, but you will not be charged interest on it and no payments will be due on this amount until you paid off your account. | $257,480.69 |
| 6. Principal Forgiveness Amount of the Proposed Modification | This field identifies the amount of principal your investor is willing to forgive under the proposed modified mortgage. | $0.00 |

If you wish to discuss your account or have any other questions, please contact your account representative. Your assigned account representative is Alicia C. at 1-800-643-0202, extension 69707; Ditech has designated the following

# EXHIBIT "5"

Lender is a Limited Partnership
organized and existing under the laws of Texas
Lender's address is 12357 Riata Trace Pkwy, Suite C150
Austin, TX 78727

(E) "Note" means the promissory note signed by Borrower and dated July 18, 2006
The Note states that Borrower owes Lender three hundred thirty-one thousand seven
hundred and 00/100                                                                Dollars
(U.S. $331,700.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than August 1, 2036

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: JI

Page 2 of 16

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County          [Type of Recording Jurisdiction]
of Dade Miami-Dade                [Name of Recording Jurisdiction]:
Lot 10, Block 88, of MANDARIN LAKES, according to the plat thereof, as recorded in plat Book 163, at page 40, of the Public Records of Miami-Dade County, Florida.

Parcel ID Number: ▓▓▓▓▓▓▓▓
27401 SW 139th Place
Homestead
("Property Address"):

which currently has the address of
[Street]
[City], Florida 33032          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

Initials: JT.

Page 3 of 16

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

Initials:  JT.

Page 4 of 16

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

Initials: J.T.

Page 5 of 16

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

Initials:  JT

Page 6 of 16

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

Initials: JT.

Page 7 of 16

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Initials:  JT.

Page 8 of 16

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.



Initials: JT

Page 9 of 16

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

Initials: JT

Page 10 of 16

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

Initials: _JT_



unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

Initials: 

Page 12 of 16

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.



Page 13 of 16

Initials: JT.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Attorneys' Fees. As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. Jury Trial Waiver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.



Initials: JT.

Page 14 of 16

interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Account Documents, Lender shall promptly refund to me any Funds held by Lender.

E.  That the Account Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Account Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Account Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Account Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Account Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Account, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Account. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage account is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Account Documents shall continue in full force and effect,

0050410166
HAMP Agreement

PBK

2016051016.1.0.3454-N20150825N

6/8/2015
LTR-602



# EXHIBIT "6"

18:40 06/10/2016

Job Tracking Number: 0004000074519655171985283843226

Investor Account # 1702135530

When Recorded, Return to:
Ditech Financial LLC
7360 South Kyrene Road T214
Tempe, AZ 85283

This document was prepared by Ditech Financial LLC

_____ [Space above This Line for Recording Data] _____

Customer(s)[1]: JAMES E. TURNER JR
Lender/Servicer ("Lender"): Ditech Financial LLC, 7360 S Kyrene Road, Tempe, AZ 85283
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 07/18/2006
Account Number: 0050410166, Recorded 07/31/2006, Book 24770, Page 2914, Instrument Number 2006R0820556
MIN: 100020410001247373
Property Address ("Property"): 27401 SW 139TH PL, HOMESTEAD, FL 33032
New Modified Amount $631,766.12, Unpaid Principle Balance $325,748.53, New Money $306,017.59

**IF YOU ARE IN BANKRUPTCY OR IF YOUR OBLIGATION TO REPAY THIS ACCOUNT WAS DISCHARGED IN BANKRUPTCY, THIS NOTICE IS INFORMATIONAL ONLY. IT IS NOT AN ATTEMPT TO COLLECT THE DEBT. YOU MAY DISREGARD INFORMATION PERTAINING TO PAYMENT REMITTANCE. YOU ARE NOT OBLIGATED TO MAKE PAYMENTS AND ANY AMOUNT(S) YOU DO PAY DITECH IS AT YOUR DISCRETION.**

## HOME AFFORDABLE MODIFICATION AGREEMENT
### (Step Two of Two-Step Documentation Process)

This Modification Agreement ("Agreement"), made this ____ day of ____, 2016, between the Lender and I, amends and supplements 1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated 07/18/2006 and recorded in Book or Liber 24770, at page(s) 2914, and/or Document #2006R0820556

| of the | Clerk of Court | Records of | Miami-Dade County, Florida |
|---|---|---|---|
| | (Name of Records) | | (County and State, or other Jurisdiction) |

and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

27401 SW 139TH PL, HOMESTEAD, FL 33032
(Property Address)
the real property described in the above-referenced Security Instrument.

ORIGINAL

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and

_____

[1] If there is more than one Customer or Mortgagor executing this document, each is referred to as "I." For purposes of this document, words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

0050410166
HAMP Agreement

PBK

6/8/2015
LTR-602

2016051016.1.0.3454-N20150825N