UNITED STATES BANKRUPTCY COURT                    NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
In re:                                              :
                                                    :    Case No. 19-10412 (JLG)
                                                    :    Chapter 11
Ditech Holding Corporation, *et al.*,               :
                                                    :
                                                    :    (Jointly Administered)
                          Debtors.[1]               :
------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS TRUSTEE'S TWENTY-SECOND OMNIBUS OBJECTION WITH RESPECT TO THE PROOF OF CLAIM FILED BY CHARLES HINKLE

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:    Richard Levin


CHARLES HINKLE[2]
*Appearing Pro Se*
1325 Magnolia Street
Marion, Alabama 36756

---

[1]    On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573

[2]    Mr. Hinkle did not appear at the Sufficiency Hearing. Ms. Bennett, who filed the Response jointly with Claimant, appeared on his behalf.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

**INTRODUCTION**[3]

On June 6, 2019, Charles Hinkle ("Claimant" or "Mr. Hinkle") filed Proof of Claim No. 2191 (the "Claim") as an unsecured claim in the amount of $30,000.00 against Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) ("Ditech"). Claim at 1. On May 8, 2020, the Consumer Claims Trustee filed her Twenty-Second Omnibus Objection (the "Objection").[4] In the Objection, the Consumer Claims Trustee seeks to disallow claims, including the Claim, that were both insufficiently supported with information to establishing their underlying merits, and filed after the Extended General Bar Date. Objection ¶ 5; Objection, Ex. A at 2. On June 18, 2020, Claimant, together with Connie Bennett ("Ms. Bennett"), filed a response to the Objection (the "Response").[5] On February 9, 2024, the Consumer Claims Trustee replied to the Response (the "Reply").[6] The Claimant and Ms. Bennett are acting pro se in this contested matter.

Pursuant to the Claims Procedures Order,[7] Claimant's filed Response adjourned the Objection to enable the Court to conduct a Sufficiency Hearing on the Claim. At the Sufficiency Hearing, the Court employs the legal standard of review applied to a motion to dismiss for failure

---

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[4]    *Consumer Claims Trustee's Twenty-Second Omnibus Objection to Proofs of Claim (Insufficient Documentation and Untimely Unsecured Consumer Creditor Claims)*, ECF No. 2320.

[5]    *Response to Motion*, ECF No. 2605.

[6]    *Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee's Twenty-Second Omnibus Objection with Respect to the Claim of Charles Hinkle (2191)*, ECF No. 4995.

[7]    *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[8]  Claims Procedures Order ¶ 3(iv)(a).

The Consumer Claims Trustee, through counsel, and Ms. Bennett,[9] on behalf of the Claimant, appeared at the Sufficiency Hearing, and the Court heard arguments from both sides. The Court has reviewed the Claim, Objection, Response, and Reply, including all documents submitted in support thereof, and has considered the arguments made by the parties in support of their positions.

For the reasons set forth herein, the Court sustains the Objection and disallows the Claim.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

Claimant asserts that Ditech failed to credit a mortgage payment, improperly cancelled his homeowner's insurance and added erroneous fees to the account.  The Claim shows that the

---

[8]   Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  In filing the Objection, the Consumer Claims Trustee and Plan Administrator initiated a contested matter.  *See Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs., Inc.)*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter").  Bankruptcy Rule 9014 governs contested matters.  The rule does not explicitly provide for the application of Bankruptcy Rule 7012.  However, Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply."  Fed. R. Bankr. P. 9014.  The Court did so in the Claims Procedures Order.

[9]   At the Sufficiency Hearing, Ms. Bennett explained that she and the Claimant reside together, and she generally handles the household financials.  The Claimant did not attend the Sufficiency Hearing himself.

3

residence is located at 1325 Magnolia Street, Marion, Alabama 36756 (the "Property").[10]   Claim at 1.   Claimant has not provided, nor has the Consumer Claims Trustee been able to locate, any information on the underlying loan.   Thus, it is unknown who owns the Property, whether the Property is a single-family residence or a manufactured home, how the Property is titled, or when Ditech began servicing the loan.

**The Chapter 11 Cases**

On February 11, 2019, Ditech and certain of its affiliates (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[11]   Thereafter, the Court extended the General Bar Date for consumer borrowers, twice, ultimately setting the date as June 3, 2019 (the "Extended General Bar Date").[12]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, and on September 30, 2019, that plan became effective.[13]   The Consumer Claims Trustee is a fiduciary appointed under the Third Amended Plan responsible for the reconciliation and resolution of

---

[10]   The confirmation of insurance cancellation included in the Response identifies the covered property address as "RT 2 BOX 112 Marion, AL 36756."  Response at 7.

[11]   *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[12]   *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[13]   *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims. *See* Third Amended Plan art. I, § 1.41. The Consumer Claims Trustee has the exclusive authority to object to Consumer Creditor Claims. *See id.* art. VII, § 7.1.

**The Claims Procedures Order**

The Claims Procedures Order authorizes the Consumer Claims Trustee to file Omnibus Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order. *See* Claims Procedures Order ¶ 2(i)(a)–(h). A properly filed and served response to an objection gives rise to a "Contested Claim" to be resolved at a Claim Hearing, which can be scheduled by the Consumer Claims Trustee as either a "Merits Hearing" or a "Sufficiency Hearing." *Id.* ¶ 3(iv)(a), (b). A Merits Hearing is an evidentiary hearing on the merits of a Contested Claim, while a Sufficiency Hearing is a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. At a Sufficiency Hearing, the Court applies the legal standard employed for a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

**The Claim**

On June 6, 2019, Charles Hinkle filed his Claim. He utilized the Proof of Claim, Official Form 410, asserting an unsecured claim in the sum of $30,000.00. Claim at 1. Claimant states the basis of the Claim is "[g]oods sold, service performance." *Id.* Claimant identifies himself as the "owner," presumably of the Property. *Id.* at 2.[14] No other owners are listed on the Claim. The Claim does not include a narrative or any additional documents.

---

[14]    Claimant also mistakenly checks the box indicating "I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004." Claim at 2.

**The Objection**

The Consumer Claims Trustee objects to the Claim and seeks to have it disallowed because it lacks sufficient information and/or documentation to establish its merits and it was filed after the Extended General Bar Date.  Objection ¶ 5.

**The Response**

Claimant and Ms. Bennett jointly filed the Response.[15]  It consists of a handwritten narrative, with facts regarding the Claim, and is supported by three letters to the Claimant from Ditech (the "Ditech Letters"), two copies of the first page of Ms. Bennett's September 2017 statement from Riverdale Credit Union (the "Bank Statements"), a notice of cancellation of insurance, and a handwritten document dated December 21, 2017.

Claimant states Ditech withdrew $430.00 from Ms. Bennett's checking account and charged a $19.00 service fee "for a payment they denied not recieving [sic]."  Response at 1.[16] Claimant contends that Ditech advised him to prove that the "payment" was taken out of the account and to provide bank statements to verify that the $430.00 payment was debited from the account.  *Id.*  The Bank Statements show a debit (via electronic funds transfer) on September 5, 2017, from Ms. Bennett's account of $430.00, on account of "Ditech – Financial Mortgage".  *Id.* at 5-6.  The Bank Statements also reflect a $19.00 debit (via electronic funds transfer) on September 5, 2017, by "PMNTUS SVC FEE SERVICEFEE."  *Id.*  In connection with the $430.00 uncredited payment, Claimant requested a payment history from Ditech, but claims to never have

---

[15]    The correspondence from Ditech attached to the Response is addressed to Charles Hinkle at 1325 Magnolia St., Marion, AL 36756.  Bank statements attached to the Response are addressed to Connie Bennett at 1325 Magnolia St., Marion, AL 36756.  In the absence of additional records, including a Mortgage, Note or financing contract, the Trustee has not ascertained whether both Mr. Hinkle and Ms. Bennett are co-borrowers or co-mortgagors.  Reply at 3, n.2.

[16]    In the narrative, Claimant states the money was withdrawn from his checking account.  Response at 1.  In the December 21, 2017 letter, Claimant indicates the relevant account is Ms. Bennett's account.  *Id.* at 8.  The bank statements provided establish that the withdrawal came from Ms. Bennett's account.  *Id.* at 5-6.

6

received it.  *Id.* at 1.  Claimant also asserts that Ditech cancelled his homeowner's insurance and did not refund his money,[17] that the final billing statement from Ditech showed that he owed $1,700.00, and that a subsequent statement from another company showed that he owed $3,500.00 for fees "Ditech added to [his] account."  *Id.*[18]

Two of the Ditech Letters, dated December 29, 2017, and July 19, 2018, respectively, acknowledge receipt of an inquiry from Claimant and indicate that Ditech is looking into the matter and temporarily ceasing collection activities pending the investigation(s).  *Id.* at 4, 2.  The third Ditech Letter, dated February 21, 2019, relates to a change in Claimant's account number.  *Id.* at 3.

**The Reply**

The Consumer Claims Trustee asserts that the Court should disallow the Claim under Rule 8(a) of the Federal Rules of Civil Procedure ("Rule 8(a)")[19] and/or Rule 12(b)(6).  Reply ¶¶ 23-27.  She says she is not able to evaluate the alleged wrongdoing based on the vague allegations in support of the Claim, and thus, the Claim fails to satisfy the pleading standards of Rule 8(a).  *Id.* ¶¶ 23-24.

Nonetheless, in an effort to read the Claim liberally, the Consumer Claims Trustee interprets the Claims as purporting to assert a claim for breach of contract and claims for relief under the Real Estate Settlement Procedures Act ("RESPA") and Truth in Lending Act ("TILA").  *Id.* ¶ 27.  She contends that even construed as such, the Claim runs afoul of Rule 12(b)(6) because it fails to state a claim for relief against Ditech.  *Id.* ¶¶ 25-65.  Moreover, she states the Claim was filed after the Extended General Bar Date and is time-barred.  *Id.* ¶¶ 67-69.

---

[17]   Annexed to the Response is a Confirmation of Cancellation showing the policy was cancelled at the lienholder's request, effective February 19, 2019.  *Id.* at 7.

[18]   Claimant does not attach any supporting documentation or provide any detail in support of that allegation.

[19]   Rule 8 is incorporated herein pursuant to Bankruptcy Rule 7008.

**The Motion to Estimate**

On March 23, 2023, the Consumer Claims Trustee filed a motion to estimate claims for purposes of setting a reserve and to classify those claims as non-363(o) claims as defined in the Third Amended Plan.[20]   The Consumer Claims Trustee estimated the Claim amount at $30,000. Claimant did not object or respond to the motion. The Court granted the motion setting the Claim at $30,000 and classifying it as a non-363(o) claim.[21]

## LEGAL PRINCIPLES

A proof of claim, which is filed under section 501 of the Bankruptcy Code, is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a).  Section 502(b) of the Bankruptcy Code sets forth the grounds for disallowing a properly filed proof of claim.  *See* 11 U.S.C. § 502(b); *see also HSBC Bank USA, N.A. v. Calpine Corp.,* No. 07 Civ. 3088, 2010 WL 3835200, at *5 (S.D.N.Y. Sept. 15, 2010) ("All claims are allowed unless specifically proscribed by one of the nine exceptions listed in § 502(b)."  (citing *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.,* 549 U.S. 443, 449 (2007))).

In relevant part, section 502(b) states that the Court shall determine the amount of a claim subject to an objection as of the bankruptcy petition date "except to the extent that . . . such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). Courts generally apply state law in determining whether a claim is allowable under section 502(b)(1).  *See In re Hess,* 404 B.R. 747, 749 (Bankr. S.D.N.Y. 2009) ("What claims of

---

[20]   *Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim,* ECF No. 4650.

[21]   *Order Granting Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim,* ECF No. 4733

creditors are valid and subsisting obligations against the bankrupt at the time a petition is filed, is

a question which, in the absence of overruling federal law, is to be determined by reference to state

law." (quoting *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161 (1946))); *see

also Fisher Bros. Mgmt. Co. LLC v. Genco Shipping & Trading Ltd. (In re Genco Shipping &

Trading Ltd.)*, 550 B.R. 676, 680 (S.D.N.Y. 2015) (noting that, as used in section 502(b)(1), the

term "[a]pplicable law most often relates to state law").

The filing of a proof of claim is "prima facie evidence of the validity and amount of a

claim," Fed. R. Bankr. P. 3001(f), which can be overcome if the party objecting under section

502(b) "come[s] forth with evidence which, if believed, would refute at least one of the allegations

essential to the claim." *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010) (quoting

*Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000)).

Because the Claimant is appearing pro se, the Court must "liberally construe [his] pleadings

and briefs submitted" and "read[] such submissions to raise the strongest arguments they suggest."

*Kravitz v. Purcell*, 87 F.4th 111 (2d Cir. 2023) (quoting *Publicola v. Lomenzo*, 54 F.4th 108, 111

(2d Cir. 2022)); *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (stating "a pro se complaint,

however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted

by lawyers" (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))).

Bar dates "are not designed merely as a 'procedural gauntlet' but rather serve 'as an integral

part of the reorganization process' and the efficient administration of bankruptcy cases. *In re

Lehman Bros. Holdings Inc.*, 433 B.R. 113, 119 (Bankr. S.D.N.Y. 2010) (quoting *In re Hooker

Invests., Inc.*, 937 F.2d 833, 840 (2d Cir. 1991)). They are "critically important to the

administration of a successful chapter 11 case." *In re Musicland Holding Corp.*, 356 B.R. 603,

607 (Bankr. S.D.N.Y. 2006). The bar date enables "the parties in interest to ascertain with

9

reasonable promptness the identity of those making claims against the estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization." *In re AMR Corp.,* No. 11-15463, 2016 WL 1068955, at * 2 (Bankr. S.D.N.Y. Mar. 17, 2016) (quoting *In re Best Prods. Co., Inc.,* 140 B.R. 353, 357 (Bankr. S.D.N.Y. 1992)).  Accordingly, bar dates are strictly enforced.  *See In re Residential Cap., LLC,* No. 12-12020, 2020 WL 1228646, at *4 (Bankr. S.D.N.Y. Mar. 12, 2020) ("a strict application of the [bar date] is needed to effectively manage the claims process" (alteration in original) (quoting *In re Lehman Bros. Holdings Inc.,* 433 B.R. at 121)); *In re AMR Corp.,* 492 B.R. 660, 663 (Bankr. S.D.N.Y. 2013) ("The bar date is strictly enforced."); *In re Keene Corp.,* 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995) ("The bar date is akin to a statute of limitations, and must be strictly observed.").

## ANALYSIS

In applying Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the claims in light of the pleading requirements under Rule 8(a).  The rule states that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To satisfy this standard, the complaint must at a minimum 'disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know where there is a legal basis for recovery.'" *Colpitts v. Blue Diamond Growers,* 527 F. Supp. 3d 562, 577 (S.D.N.Y. 2021) (quoting *Harnage v. Lightner,* 916 F.3d 138, 141 (2d Cir. 2019)).

Under Rule 12(b)(6), the Court will disallow the Claim if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The Claim must contain sufficient facts to state a facially plausible claim for relief such that the Court is able "to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

On a motion to dismiss, the Court accepts all allegations as true and draws all reasonable inferences in favor of the non-moving party. *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67 (2d Cir. 2021). However, the Court is not "obligated to accept as true legal conclusions couched as factual allegations." *Champion v. Moda Operandi, Inc.*, 561 F. Supp. 3d 419, 432 (S.D.N.Y. 2021). In ruling on a Rule 12(b)(6) motion, "[t]he court's function is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'" *Havens v. James*, 76 F.4th 103, 116-17 (2d. Cir. 2023) (quoting *Festa v. Loc. 3 Int'l Brotherhood of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990)).

The Claim does not expressly implicate any statutory scheme, or non-bankruptcy law. The Consumer Claims Trustee asserts, and the Court concurs, that servicing of real estate mortgages is generally regulated by RESPA, and consumer credit is generally regulated by TILA. Reply ¶ 27. In an effort to interpret the claim liberally, the Consumer Claims Trustee construes Claimant's complaints as requests for relief under RESPA and TILA. To the extent Claimant alleges that Ditech failed to perform its duties under a mutual agreement, the Trustee construes and analyzes the Claim as an effort by Claimant to assert a breach of contract. *Id.* ¶ 27. The Court agrees with that approach (and notes that at the Sufficiency Hearing, Ms. Bennett did not object to that approach).

The Extended General Bar Date for the filing of consumer borrower claims was June 3, 2019. The Claimant filed the Claim on June 6, 2019, three days past the extended bar date. The Consumer Claims Trustee asserts that the Claim should be disallowed on that basis. Reply ¶¶ 67-

70. Before reviewing whether Claimant has stated a claim for relief against Ditech, the Court considers that matter.

## Whether the Claim Is Time-Barred

Creditors are entitled to receive notice of the bar date. The nature of the notice depends on whether the creditor is known or unknown. A known creditor is one whose identity is either known or "reasonably ascertainable by the debtor." *Tulsa Pro. Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988). An unknown creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 317 (1950).

Ditech bears the burden of demonstrating that the Claimant received adequate notice of the General Bar Date. *In re Massa*, 187 F.3d 292, 296 (2d Cir. 1999). Known creditors are entitled to actual notice of the bar date, and unknown creditors are generally entitled to notice by publication. *See DePippo v. Kmart Corp.*, 335 B.R. 290, 295-96 (S.D.N.Y. 2005) ("While actual notice is required if the creditor is a 'known' creditor, constructive notice is sufficient where a creditor is 'unknown.'"); *In re BGI, Inc.*, 476 B.R. 812, 820 (Bankr. S.D.N.Y. 2013) ("For unknown creditors, constructive notice, such as notice by publication, will suffice.").

As of the Petition Date, there was no pending action between Claimant and Ditech and Claimant was not scheduled as a creditor on Ditech's schedules. Claimant was an unknown creditor of Ditech and was entitled to receive constructive notice of the General Bar Date. *See In re Chemtura Corp.*, No. 09-11233, 2016 WL 11651714, at *12 (Bankr. S.D.N.Y. Nov. 23, 2016) (holding that a "'known' creditor is one whose identity is either known or 'reasonably ascertainable by the debtor'" (quoting *Tulsa Pro. Collection Serv., Inc.*, 485 U.S. at 490)); *In re Drexel Burnham Lambert Grp. Inc.*, 151 B.R. 678, 680-81 (Bankr. S.D.N.Y.) ("For obvious

reasons, debtors need not provide actual notice to unknown creditors. It is widely held that unknown creditors are entitled to no more than constructive notice (i.e., notice by publication) of the bar date."), *aff'd*, 157 B.R. 532 (S.D.N.Y. 1993).

Pursuant to the Court's order, Ditech published Notice of the General Bar Date as well as the procedures for filing claims herein in national editions of the *New York Times* and *USA Today*.[22] The Court found that such publication "shall be deemed good, adequate and sufficient publication notice of the Bar Dates and the Procedures for filing proofs of claim in these Chapter 11 Cases."[23] That notice satisfies due process requirements for unknown creditors like the Claimant. *See In re Motors Liquidation Co.*, 576 B.R. 761, 778 (Bankr. S.D.N.Y. 2017), *aff'd*, 599 B.R. 706 (S.D.N.Y. 2019) (unknown creditor was provided with constructive notice of the claims bar date through publication in global, national, and local newspapers); *In re XO Commc'n, Inc.*, 301 B.R. 782, 795 (Bankr. S.D.N.Y. 2003) (finding that "Teligent was an 'unknown' creditor at the time the Debtor filed its Schedules and, therefore, Teligent's due process rights were satisfied with publication notice in *The Wall Street Journal*."). Accordingly, the notice requirement is satisfied, and the Claimant was therefore required to timely file his Claim.

As the Claimant did not timely file the Claim, the Court considers whether there are grounds for permitting him to assert a late-filed claim. With certain irrelevant exceptions, Bankruptcy Rule 9006(b)(1) states, as follows:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after

---

[22]    *See Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90; *Affidavit of Publication (of Bar Date)*, ECF No. 3387.

[23]    *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90, ¶ 12.

the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b)(1).  This rule governs the permissibility of filing a late claim in a chapter 11 case.  *See Pioneer Inv. Servc. Co. v. Brunswick Associated Ltd. P'ship*, 507 U.S. 380, 389 (1993) ("The 'excusable neglect' standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases but not in Chapter 7 cases."); *see also Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 121 (2d Cir. 2005) ("Rule 9006 governs the admission of proofs of claim filed after a court-ordered bar date." (citing *Pioneer*, 507 U.S. at 382)).

In *Pioneer*, the Supreme Court explained that "excusable neglect" has the same meaning with respect to the filing of late claims as it has when used in Bankruptcy Rule 9006(b)(1). *Pioneer*, 507 U.S. at 389.  The Court held that the determination of what types of neglect will be considered excusable is an equitable one that takes account of all of the surrounding circumstances. "These include . . . [1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.* at 395.

The burden of proof rests with the party asserting excusable neglect.  *In re Enron Corp.*, 419 F.3d at 121.  Typically, "the length of the delay, the danger of prejudice, and the movant's good faith 'usually weigh in favor of the party seeking the extension.'"  *Id.* at 122 (quoting *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003)).  The reason for the delay may be the most important factor.  "While prejudice, length of delay, and good faith might have more relevance in a close[] case, the reason-for-delay factor will always be critical to the inquiry." *Silivanch*, 333 F.3d at 366 n.7 (alteration in original) (quoting *Graphic Commc'ns Int'l Union v.*

14

*Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5-6 (1st Cir. 2001)); *see In re Lehman Bros.*

*Holdings Inc.*, 433 B.R. at 120 (holding that the reason for the delay "is weighed most heavily

because the other factors will typically favor the party seeking the extension").  "A creditor seeking

to file a late claim 'must explain the circumstances surrounding the delay in order to supply the

Court with sufficient context to fully and adequately address the reason for delay factor and the

ultimate determination of whether equities support the conclusion of excusable neglect.'"  *In re*

*Lehman Bros. Holdings Inc.*, 433 B.R. at 120 (quoting *In re Enron Creditors Recovery Corp.*, 370

B.R. 90, 103 (Bankr. S.D.N.Y. 2007)).

Here, the Claimant did not make an excusable neglect argument, he did not acknowledge

that the Claim was filed late, and he did not request an extension of the General Bar Date to file

the Claim.  *See In re Lehman Bros. Holdings Inc.*, 433 B.R. at 120.  Most importantly, the Claimant

did not identify any reason for the lateness of the filing, much less fully explain the circumstances

surrounding that delay, including whether the delay was within the Claimant's control.  *See id.*;

*Silivanch*, 333 F.3d at 366 n.7; *Pioneer*, 507 U.S. at 395.  The Claimant is also silent as to the

length of the delay, the danger of prejudice, and the presence of good faith, which typically weigh

in favor of claimants arguing excusable neglect.  *See In re Enron Corp.*, 419 F.3d at 122.

Accordingly, the Claimant fails to meet his burden to show that his delay in filing the Claim was

the result of excusable neglect.  *Id.* at 121.  The Court denies the Claim as time-barred.

This ruling may seem harsh in light of the fact that the pro se Claimant missed the Extended

Bar Date by a mere three days.  However, in this Circuit, "the equities will rarely if ever favor a

party who 'fail[s] to follow the clear dictates of a court rule,' and . . . where 'the rule is entirely

clear, . . . a party claiming excusable neglect will, in the ordinary course, lose under

the *Pioneer* test.'" *Silivanch*, 333 F.3d at 366-67 (quoting *Canfield v. Van Atta Buick/GMC Truck,*

*Inc.*, 127 F.3d 248, 250-51 (2d Cir. 1997)); *accord In re Roman Cath. Diocese of Rockville Ctr.*, No. 20-12345, 2023 WL 4497418, at \*5 (Bankr. S.D.N.Y. July 12, 2023).  The General Bar Date Order was "entirely clear" with respect to the bar date and the consequences of failing to adhere to the bar date.  Courts in this Circuit have "taken a hard line" in applying the test for excusable neglect, and the Claimant has not shown why an exception should be made here.  *In re Enron Corp.*, 419 F.3d at 122 (quoting *Silivanch*, 333 F.3d at 368).  Moreover, and in any event, as explained below, the Claim fails to state a claim for relief against Ditech.  Accordingly, it would be futile to authorize the Claimant to file the Claim.

## **Whether Claimant States a Claim Under RESPA**

RESPA, 12 U.S.C. §§ 2601-2617, and its implementing regulations, known as Regulation X, 12 C.F.R. §§1024.1-1024.41, establish uniform procedures designated to create greater transparency for borrowers during the real estate settlement process.  It is a "consumer protection statute" calculated to assist consumers to better understand the home purchase and settlement process, including loan servicing.  *Naimoli v. Ocwen Loan Servicing, LLC*, 22 F.4th 376, 381 (2d Cir. 2022).  It applies to federally related mortgage loans.  12 C.F.R. § 1024.5(a).  As relevant, that includes any loan secured by a lien on residential real property.  12 C.F.R §1024.2(b).  Its coverage extends to manufactured or mobile homes when the loan is also secured by a lien on the real property under the home is secured by a lien.[24]

---

[24]   Consumer Fin. Prot. Bureau, *Real Estate Settlement Procedures Act (RESPA) Examination Procedures*, (Mar. 30, 2018) (stating that a loan "secured by a first or subordinate lien on residential real property, located within a State, upon which . . . [a] manufactured home is located or is to be constructed using proceeds of the loan" is included within the definition of federally related mortgage loans), https://www.consumerfinance.gov/compliance/supervision-examinations/real-estate-settlement-procedures-act-respa-examination-procedures/; *see also* Fed. Deposit Ins. Corp., *FAQs About RESPA for Industry* (Nov. 19, 2019) ("[A] loan secured by a manufactured home (mobile home) [is a] covered transaction under RESPA . . . only if the manufactured home is located on real property on which the lender's interest is secured by a lien."), https://www.fdic.gov/news/events/otherevents/2019-11-19-hud-faqs-about-respa-for-industry.pdf.

The Claimant does not allege that his loan is a federally related mortgage loan, and he fails to specify whether the loan is secured by real property. The Consumer Claims Trustee advises that she was unable to locate any information in publicly available records regarding the Property or the land on which the Property sits. Reply ¶ 30. She asserts, and the Court agrees, that if the Property is a manufactured home titled as personal property and Claimant does not own the land on which the home is located, the loan does not fall within the scope of RESPA, and Claimant cannot state a valid claim under RESPA. *Id*. The Claimant has not alleged facts demonstrating that the loan falls within the scope of RESPA.

In any event, Claimant has not demonstrated that Ditech ran afoul of RESPA.

Notice of Error

Claimant labels the allegedly uncredited payment of $430.00 as a "billing error." Response at 8. He contends that he notified Ditech of that error and that after he provided Ditech with the requested bank statements, Ditech stopped answering his calls. *Id.* at 1.

RESPA sets forth error-resolution procedures where a borrower disputes activity on their account. 12 C.F.R. § 1024.35. Upon written notice from the borrower that includes sufficient information to allow the servicer to identify both the mortgage and the alleged error, the servicer must, within five days of receipt, formally acknowledge receipt of the notice of error. 12 C.F.R. § 1024.35(a), (d). Among the errors covered are a servicer's "[f]ailure to accept a payment that conforms to the servicer's written requirements for the borrower to follow in making payments," "[f]ailure to credit a payment to a borrower's mortgage loan account as of the date of receipt in violation of 12 CFR § 1026.36(c)(1)," and "[i]mposition of a fee or charge that the servicer lacks a reasonable basis to impose on the borrower." 12 C.F.R. § 1024.35(b)(1), (3), (5). Within thirty days of receipt of the written notice, servicers must either correct the error and provide the

borrower with a written explanation of the correction or conduct a reasonable investigation and

provide a written explanation of the results of the investigation.  *Id.* §1024.35(e)(1).

"To plead a claim under the RESPA, plaintiff must offer proof either by attaching the letter

or pleading with specificity such facts—such as when the letter was sent and to whom it was

directed, why it was sent, and the contents of the letter—that the Court may determine if the letter

qualifies as [a notice under RESPA]."  *Lopez v. Bayview Loan Servicing, LLC*, No. 16-cv-2610,

2017 WL 3396421, at *8 (S.D.N.Y. Aug. 8, 2017) (alteration in original) (quoting *Kilgore v.*

*Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 538 (E.D.N.Y. 2015)).

Three of the letters that Claimant annexes to the Response are relevant to this discussion.

The first is a letter dated December 21, 2017, in which he disputes a "payment error."  Response

at 8.  He asserts that $430.00 was withdrawn from Ms. Bennett's account on September 5, 2017,

and purports to enclose "a letter from Riverdale Credit Union" reflecting the withdrawal "from

ower [sic] account."  *Id.*  He requests "the error be corrected and that any finance and other charges

related to the dispute [sic] amount be credited as well, and [that he] receive an accurate statement."

*Id.*  He includes his account number in the letter.  *Id.*  The letter is not formally addressed to Ditech,

and Claimant does not provide any mailing receipts or other documentation showing when, where,

and to whom the letter was sent.  The Response also includes a December 29, 2017 letter from

Ditech to Claimant confirming receipt of his inquiry on December 26, 2017.  *Id.* at 4.  In it, Ditech

informs him that it will investigate the matter and provide a written response within thirty days.

*Id.*  Finally, the Response contains a letter from Ditech dated July 19, 2018.  In it, Ditech confirms

that it received Claimant's question about his Ditech account on July 16, 2018.  *Id.* at 2.  The July

2018 request that Ditech's letter references is not provided.  Claimant states that after he notified

Ditech of the error regarding both the $430.00 withdrawal and the $19.00 service fee, Ditech

18

requested a bank statement reflecting the withdrawn amounts. *Id.* at 1. He says that he sent Ditech the bank statements, but then Ditech stopped answering his calls. *Id.*

The two letters from Ditech to Claimant demonstrate that Ditech complied with its initial requirement under RESPA to acknowledge receipt of Claimant's inquiries within five days. Ditech appears to have investigated the matter as Claimant confirms Ditech reached out for the relevant bank statements. Claimant does not indicate whether he received a written explanation from Ditech within the thirty-day time period. Claimant merely indicates that Ditech stopped taking his calls. However, Ditech is required to respond only to a notice of error that is in writing. 12 C.F.R. § 1024.35.

Construing the Claim in a light most favorable to the Claimant, he has not sufficiently alleged Ditech failed to comply with its obligations under RESPA in response to the Notice of Error.

Cancellation of Insurance

Claimant complains that Ditech cancelled his home insurance but did not refund him his money. Response at 1. In support, Claimant includes a "Confirmation of Cancellation" from American Bankers Insurance Company of Florida of a policy effective from August 7, 2018, to August 7, 2019. *Id.* at 7. The cancellation notice to Claimant states that the insurance for property located at RT 2 BOX 112 Marion, AL 36756 was cancelled as of February 19, 2019, at Ditech's request. *Id.* The notice also states that the total premium was $410.00, and with the cancellation, $189.83 is returned. *Id.* Claimant provides no other details regarding the insurance or its cancellation.

Under RESPA, mortgage servicers can obtain hazard insurance on a borrower's behalf to protect their security interest in the property. 12 C.F.R. § 1024.37. A servicer may not charge a

borrower for such insurance unless the servicer has "a reasonable basis to believe that the borrower has failed to comply with the mortgage loan contract's requirement to maintain hazard insurance." *Id.* § 1024.37(b).  Before obtaining its own policy, a servicer must provide written notice, including an explanation of why existing insurance is either insufficient or not being supplied by the borrower.  *Id.*

RESPA addresses the servicer's mandatory cancellation of force-placed insurance in section 1024.37(g).  It states:

> Within 15 days of receiving, from the borrower or otherwise, evidence demonstrating that the borrower has had in place hazard insurance coverage that complies with the loan contract's requirements to maintain hazard insurance, a servicer must:
>
> > (1) Cancel the force-placed insurance the servicer purchased to insure the borrower's property; and
> >
> > (2) Refund to such borrower all force-placed insurance premium charges and related fees paid by such borrower for any period of overlapping insurance coverage and remove from the borrower's account all force-placed insurance charges and related fees for such period that the servicer has assessed to the borrower.

*Id.* § 1024.37(g).  Claimant provides no additional information relating to the insurance issue.  For example, he does not allege facts demonstrating that Ditech failed to provide written notice that it intended to force-place insurance or improperly force-placed the insurance.  He does not state whether he procured and paid for his own insurance or if he paid monthly into an escrow account.

Thus, Claimant does not allege facts sufficient to state a claim against Ditech under RESPA, based on the Cancellation of Insurance.

**Whether Claimant States a Claim for Relief Under TILA**

TILA, like RESPA, is a consumer protection statute, but TILA focuses on regulating consumer credit.  "TILA is designed to promote the provision of accurate and understandable information concerning credit agreements . . . [and] force creditors to be more responsive to their

customers, both by displaying relevant information clearly and by ensuring that [creditors] would respond promptly to complaints regarding billing errors." *Kurz v. Chase Manhattan Bank*, 273 F. Supp. 2d 474, 477 (S.D.N.Y. 2003). It has "the broad purpose of promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers". *Parrish v. Blazer Fin. Servs., Inc.*, 868 So. 2d 406, 410 (Ala. 2003) (quoting *Ford Motor Credit Co. v. Millhollin*, 444 U.S. 555, 559 (1980)). TILA's implementing regulations are set forth in Regulation Z, 12 C.F.R. Pt. 1026, which is accompanied by official interpretations at 12 C.F.R. Pt. 1026, Supp. I, Pts. 1–5 (the "Official Interpretations").[25] TILA requires servicers and creditors to timely credit payments on home loans, credit cards, and other forms of open-end credit. 15 U.S.C. §§ 1639f, 1666c(a).

TILA applies to credit transactions involving loans in which the creditor takes a security interest in real property used or expected to be used as the consumer's principal dwelling. *Id.* § 1603(3). The implementing regulations further impose limitations on mortgages that are subject to the requirements of 12 C.F.R. § 1026.32, prohibit certain acts or practices in connection with credit secured by a dwelling in 12 C.F.R. § 1026.36 and credit secured by a consumer's principal dwelling in 12 C.F.R. § 1026.35.

> Subpart E contains special rules for mortgage transactions. Section 1026.32 requires certain disclosures and provides limitations for closed-end credit transactions and open-end credit plans that have rates or fees above specified amounts or certain prepayment penalties. Section 1026.33 requires special disclosures, including the total annual loan cost rate, for reverse mortgage transactions. Section 1026.34 prohibits specific acts and practices in connection with high-cost mortgages, as defined in § 1026.32(a). Section 1026.35 prohibits specific acts and practices in connection with closed-end higher-priced mortgage loans, as defined in § 1026.35(a). Section 1026.36 prohibits specific acts and practices in connection with an extension of credit secured by a dwelling. Sections 1026.37 and 1026.38 set forth special disclosure requirements for certain closed-end transactions secured by real property or a cooperative unit, as required by § 1026.19(e) and (f).

---

[25] The Official Interpretations can also be found at https://www.consumerfinance.gov/rules-policy/regulations/1026/interp-0/.

12 C.F.R. § 1026.1(d)(5).

Claimant contends that Ditech collected a $430.00 mortgage payment via direct debit but failed to credit the payment to the account. Response at 1. To support his allegations, Claimant provides Ms. Bennett's bank statements, which reflect a withdrawal from "Ditech—Financial Mortgage" for $430.00 on September 5, 2017. Response at 5-6. It also shows a $19.00 charge on the same day for "PMNTUS SVC FEE SERVICEFEE." *Id.* Claimant's name does not appear on any of the bank statements, and Claimant has not provided the note or mortgage to determine whether Ms. Bennett is named on either document. While Claimant does not identify a specific provision of the TILA, these assertions implicate section 1026.36. *See* 12 C.F.R. §1026.36.

Crediting of Payment

For closed-end credit transactions secured by a borrower's principal dwelling, servicers must credit periodic payments to the account as of the date of receipt. 12 C.F.R. § 1026.36(c)(1). Servicers may also place partial payments into suspense accounts, holding the funds in such accounts until sufficient funds exist to cover an entire periodic payment. *Id.* A periodic payment is defined as the amount sufficient to cover the principal, interest, and escrow. *Id.* It need not include funds sufficient to cover fees or non-escrow payments. *Id.*

TILA mandates that servicers promptly credit payments received, except when a delay in crediting does not result in a finance or other charge. 12 C.F.R. § 1026.36(c)(1)(i). The official interpretation to this section further states:

> a mortgage servicer must credit a payment to a consumer's loan account as of the date of receipt. This does not require that a mortgage servicer post the payment to the consumer's loan account on a particular date; the servicer is only required to credit the payment as of the date of receipt. Accordingly, a servicer that receives a payment on or before its due date (or within any grace period), and does not enter the payment on its books or in its system until after the payment's due date (or expiration of any grace period), does not violate this rule as long as the entry does not result in the imposition of a late charge, additional interest, or similar penalty

to the consumer, or in the reporting of negative information to a consumer reporting agency.

12 C.F.R. Pt. 1026, Supp. I, Part 3.

Claimant fails to meet his burden to allege facts demonstrating that Ditech did not in fact credit the $430.00 payment.  For example, there are no billing statements or correspondence from Ditech indicating that the funds were not applied to the account.  Moreover, while the payment appears to have been debited on September 5, 2017, and the bank account shows a positive balance, Claimant provides no information showing what the regularly monthly payment should have been, what the due date of the regular monthly payment was, whether or not there were additional funds due for escrow, whether the account was behind when the payment was remitted, or even if the "Ditech—Financial Mortgage" debit was directed to the appropriate Ditech account.  Claimant's allegation amounts to no more than a conclusory statement insufficient to state a cognizable TILA claim.

<u>Charging a Service Fee</u>

TILA allows servicers to specify the terms by which a payment may be made.  *See* 12 C.F.R. § 1026.36(c)(1)(iii) (indicating that servicers may "specif[y] in writing requirements for the consumer to follow in making payments"); Official Interpretations, 12 C.F.R. Pt. 1026, Supp. I, Pt. 3, § 1026.36(c)(1)(iii), ¶3 (2024) ("Official Interpretations") ("The servicer may specify reasonable requirements for making payments in writing. . . ."); *Fridman v. NYCB Mortg. Co., LLC*, 780 F.3d 773, 782 ("[A] servicer may require customers to pay using a menu of ways that it specifies.").  Absent specific requirements, or an agreement to electronic fund transfer, the servicer

must accept payment "by cash, money order, draft, or other similar instrument in properly

negotiable form." Official Interpretations § 1026.36(c)(1)(iii), ¶ 3.[26]

The Seventh Circuit has indicated that the purpose of § 1026.36(c)(1)(i) is to protect

consumers from incurring penalties as a result of delayed payment crediting:

> Reading TILA to require mortgage servicers to credit electronic authorizations
> when they are received protects consumers from this unwarranted—and possibly
> limit-less—delay. . . . Only TILA's requirement that servicers credit electronic
> authorizations when they are received provides legal assurance that consumers are
> not injured by delays that are out of their hands.

*Fridman*, 780 F.3d at 780. This interpretation is consistent with the Official Interpretations, which

state that no TILA violation occurs when a servicer's delay does not result in late charges,

additional interest, or similar penalties. Official Interpretations § 1026.36(c)(1)(i), ¶ 1.

The Claim and Response are not clear on whether the $19.00 fee was charged by Ditech

(rather than Claimant's bank, for example). However, if the fee was charged by Ditech, it was

charged at the same time as the transaction; indeed, the Claimant describes the $19.00 charge as a

"service fee." Claim at 1. The Claimant fails to state a claim under TILA against Ditech on account

of the fee because he has not demonstrated that it was a late charge penalty. On the face of the

Claim, it appears that the charge is an assessment of a fee for an online payment.

Periodic Statements

Claimant further alleges that Ditech failed to provide accurate periodic statements. He

asserts that Ditech sent him a statement saying he owed $1,700.00, and then another company told

him he owed $3,500.00. Response at 1. He also requested an accurate statement in his letter to

---

[26]    Neither TILA nor Regulation Z mandates that servicers accept payment by credit or debit card, *see id.*; *Fridman*, 780 F.3d at 782, or that they offer consumers the ability to make online payments free of charge. *Kier v. Ocwen Loan Servicing, LLC*, 122 F. Supp. 3d 786, 790-91 (N.D. Ill. 2015) (finding no violation of the prompt crediting rule where servicer imposed a $10 fee for the "rush processing" or "convenience" to pay online to ensure timely payment).

Ditech on December 21, 2017. Response at 8. The Claimant provides no periodic statements by which to evaluate his claims.

TILA does require a servicer of a closed-ended consumer credit transaction secured by a dwelling to provide a periodic statement for each billing cycle that includes: (a) amount due (b) explanation of amount due (c) past payment breakdown (d) transaction activity (e) partial payment information (f) contact information (g) account information, and (h) delinquency information. 12 C.F.R. § 1026.41. Claimant acknowledges Ditech sent him statements stating "they [sic] last statement Ditech sent me" was for only $1,700.00, "and now another company is saying I owe $3,500 for fees [D]itech added to my account." Response at 8. Claimant does not provide the statement from Ditech, the statement from the new company or even the dates the statements were sent. He further fails to provide any details regarding the type of credit transaction to determine which provision of TILA, if any, would apply.

Cancellation of Insurance

Claimant also contends that Ditech cancelled his home insurance and did not refund his money. Response at 1. He provides a confirmation of cancellation that states the home insurance was cancelled at the lienholder's request and a premium of $189.83 was returned. He does not explain how the initial premium was paid, if he initially obtained the insurance, or even what the credit term was, by which the Court could determine if the property insurance premiums are a finance charge as defined by TILA. 12 C.F.R. § 1026.4(d)(2).

TILA does allow a creditor to "reserve the right to refuse to accept, for reasonable cause, an insurer offered by a consumer." 12 C.F.R. §1026.4(d)(2)(i). But it is unclear from the information provided by the Claimant if he is concerned about the cancellation of the insurance or just Ditech's alleged failure to return the premium. Without the credit transaction terms, periodic

statements, or any details regarding the parties' agreements, there is insufficient information by which to substantiate his claims.

The Claimant failed to provide information about the underlying loan contract. Accordingly, he is unable to show whether the amount financed subjected the loan to TILA or that the $430.00 was sufficient to cover a full mortgage payment. He also fails to demonstrate that Ditech did not properly and timely credit the payment or that finance charges in connection with this transaction were erroneously charged. Claimant does not directly assert any claims under TILA and fails to provide sufficient information to enable the Court to liberally construe any claims in his favor.

For all foregoing reasons, Claimant cannot maintain a claim under TILA.

**<u>Whether Claimant States a Breach of Contract Claim</u>**

"A contract cannot be formed without an offer, an acceptance, consideration and mutual assent to terms essential to the contract." *Ex parte Payne*, 741 So. 2d 398, 403 (Ala. 1999). Under Alabama law, the elements of a breach of contract claim are "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Coffman v. Snead Hydraulic & Supply, LLC*, 359 So. 3d 689, 695 (Ala. Civ. App. 2022) (quoting *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009)).

Claimant fails to identify the contract upon which his Claim is based. Accordingly, the Court cannot ascertain the contract terms and assess whether or not they have been breached. Claimant also fails to demonstrate that he performed under the terms of the contract, that Ditech failed to perform, or that Ditech's nonperformance caused him damages. Indeed, Claimant provides no basis or explanation for his $30,000.00 damage amount. He complains about Ditech's

failure to credit a payment of $430.00 plus improper imposition of fees.  Without more, it is not

plausible that he was damaged to the extent of $30,000.00.

Claimant is unable to state a claim for breach of contract.

**The Remaining Claim Is Too Vague to State a Plausible Claim**

Claimant asserts that Ditech's last statement indicated that he owed $1,700.00 and "now

another company is saying I owe [$]3,500 for fees Ditech added to my account."  Response at 1.

Claimant does not provide a copy of either statement.  Claimant does not explain what the "other

company" is or how he has determined that this company is charging fees that Ditech erroneously

added to the account.  Claimant fails to allege facts regarding the nature and basis for these fees,

including whether and why they may have been assessed.  Those vague allegations fail to state a

legal claim against Ditech.

## CONCLUSION

For the foregoing reasons, the Court sustains the Objection and disallows the Claim.


IT IS SO ORDERED.

Dated:  March 1, 2024
        New York, New York


                                        /s/ *James L. Garrity, Jr.*
                                        Honorable James L. Garrity, Jr.
                                        United States Bankruptcy Judge