UNITED STATES BANKRUPTCY COURT                     NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
In re:                                               :
                                                     :    Case No. 19-10412 (JLG)
Ditech Holding Corporation, *et al.*,                :    Chapter 11
                                                     :
                                                     :    (Jointly Administered)
                                      Debtors.[1]     :
-------------------------------------------------------- x

### MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER REPRESENTATIVE'S FORTY-SIXTH OMNIBUS OBJECTION WITH RESPECT TO THE PROOF OF CLAIM FILED BY JAMES TURNER

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Representative*
1155 Avenue of the Americas
New York, New York 10036
By:    Richard Levin


JAMES TURNER
*Appearing Pro Se*
27401 SW 139th Place
Homestead, Florida 33032

---

[1]    On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[2]

On April 12, 2019, James E. Turner ("Claimant") filed Proof of Claim 1012 (the "Claim") as an unsecured claim against Ditech Financial, LLC ("Ditech") for $210,000.00. Claim at 1-2. On June 18, 2021, the Consumer Representative[3] filed her Forty-Sixth Omnibus Objection to Proofs of Claim (the "Objection"),[4] seeking to disallow claims that lack a sufficient legal basis to establish wrongdoing or liability on behalf of the Debtors. On July 19, 2021, Claimant filed a response to the Objection (the "Response").[5] Claimant is acting pro se in this matter. On January 10, 2024, the Consumer Representative filed her reply to the Response (the "Reply").[6]

Pursuant to the Claims Procedures Order,[7] the filing of the Response adjourned the Objection so the Court could conduct a Sufficiency Hearing on the Claim. The legal standard of review at a Sufficiency Hearing is equivalent to the standard applied on a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[8] Claims Procedures Order ¶ 3(iv)(a).

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[3] The Consumer Representative and the Consumer Claims Trustee refer to the same individual and can be used interchangeably.

[4] *Consumer Claims Trustee's Forty-Sixth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims)*, ECF No. 3461.

[5] *Response and Objection to Consumer Claims Trustee's Forty-Sixth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims)*, ECF No. 3561. The Response purports to have been submitted by "the litigation parties [Claimant] and Jeffrey Turner . . . ."

[6] *Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee's Forty-Sixth Omnibus Objection with Respect to the Claim of James Turner (Claim No. 1012)*, ECF No. 4970.

[7] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

[8] Rule 12(b)(6) is made applicable herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In filing the Objection, the Consumer Claims Trustee and Plan Administrator initiated a contested matter. *See Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs., Inc.)*, 562 F.3d 158,

On January 24, 2024, Claimant and the Consumer Representative, through counsel, appeared before the Court.  Claimant was not prepared to go forward with his argument and requested leave to file a surreply to the Reply.  The Court granted his request, and the hearing was adjourned to February 29, 2024.  On February 2, 2024, Claimant filed a surreply to the Reply (the "Surreply").[9]  On February 12, 2024, the Consumer Representative responded to the Surreply (the "Surresponse").[10]  The Court held the adjourned hearing on February 29, 2024.

The Court has considered the Claim, Objection, Response, Reply, Surreply, and Surresponse, the documents submitted in support thereof, and the parties' respective arguments made at the adjourned hearing.  For the reasons set forth herein, the Court sustains the Objection and disallows the Claim.

## **JURISDICTION**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter"); Fed. R. Bankr. P. 3007 advisory committee's note to 1983 amendment ("[t]he contested matter initiated by an objection to a claim is governed by Rule 9014 . . . ."). Bankruptcy Rule 9014 governs contested matters. The rule does not explicitly provide for the application of Bankruptcy Rule 7012. However, Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply." Fed. R. Bankr. P. 9014. Here, the Court did so in the Claims Procedures Order.

[9] *Surreply to Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee's Forty-Sixth Omnibus Objection with Respect to the Claim of James Turner (Claim No. 1012)*, ECF No. 4992.

[10] *Response of the Consumer Claims Trustee to the Sur-Reply of Claimant James Turner to the Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee's Forty-Sixth Omnibus Objection with Respect to the Claim of James Turner (Claim No. 1012)*, ECF No. 4998.

# BACKGROUND

## The Loan

On July 18, 2006, Claimant executed a promissory note (the "Note")[11] with DHI Mortgage Company, Ltd., the lender, in the amount of $331,700.00.  The Note was secured by a mortgage (the "Mortgage,"[12] together with the Note, the "Mortgage Loan") on real property located at 27401 SW 139th Place, Homestead, Florida, 33032 (the "Property"). On July 19, 2008, DHI Mortgage Company, Ltd. assigned the Mortgage to EverHome Mortgage Company ("EverHome").[13]

In 2014, Ditech's predecessor, Green Tree Servicing LLC ("Green Tree"), acquired the mortgage servicing rights to the Property.  On or around September 28, 2017, EverHome assigned the Mortgage to Ditech (the "Ditech Assignment").[14]  In January 2020, Ditech assigned the Mortgage to New Residential Mortgage, LLC.[15]

## Florida State Court Foreclosure Actions

On March 1, 2008, Claimant defaulted on the Mortgage, and on June 27, 2008, EverHome initiated a foreclosure action against Claimant (the "First Foreclosure Action") in the Circuit Court

---

[11] The Note is annexed as Exhibit A to the Reply.  The Court takes judicial notice of the Note and the other documents annexed to the Reply, and the documents annexed to the Response because they are integral to the Claim. *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) ("[Courts] must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *see Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (holding that, in a contract action, a court can take judicial notice of the underlying contract as a document "integral to the complaint"); *Leon v. Shmukler*, 992 F. Supp. 2d 179, 184 n.1 (E.D.N.Y. 2014) ("It is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records.").

[12] The Mortgage is annexed as Exhibit B to the Reply.

[13] The assignment to EverHome is annexed as Exhibit C to the Reply.

[14] The Ditech Assignment is annexed as Exhibit D to the Reply.

[15] The assignment to New Residential Mortgage, LLC is annexed as Exhibit E to the Reply.

in and for Miami Dade County, Florida (the "Florida State Court").[16]   On August 22, 2008,

Claimant filed an answer to the complaint with affirmative defenses and asserted counterclaims

against EverHome.

On August 4, 2011, EverHome filed a motion for summary judgment.  On August 25, 2011,

the Florida State Court entered an order of final judgment of foreclosure (the "Final Judgment of

Foreclosure").[17]   On August 29, 2011, Claimant appealed the judgment, postponing the foreclosure

sale.  On July 11, 2012, Florida's Third District Court of Appeal affirmed the entry of the Final

Judgment of Foreclosure.

On May 26, 2016, while the First Foreclosure Action was pending, Claimant executed a

Home Affordable Modification Agreement (the "Loan Modification")[18] with Ditech, increasing

the principal amount under the Note to $631,766.12, with $364,615.69 of that principal deferred

with 0% interest.  The first payment under the Loan Modification was due on June 1, 2016.  On

July 28, 2016, in light of the modification, EverHome filed a motion to dismiss the First

Foreclosure Action and vacate the Final Judgment of Foreclosure.  On August 1, 2016, the Florida

State Court granted that relief.

On May 30, 2018, Ditech commenced a foreclosure action against Claimant (the "Pending

Foreclosure Action") in the Florida State Court.[19]   In the complaint (the "Pending Foreclosure

---

[16] *See EverHome Mortgage Co. v. James E. Turner, et al.*, Case No. 13-2008-CA-037530-0000-01 (Fla. Miami-Dade Cnty. Ct. 2008).  The complaint is annexed as Exhibit F to the Reply and the docket of the First Foreclosure Action is annexed as Exhibit G to the Reply.

[17] The Final Judgment of Foreclosure is annexed as Exhibit H to the Reply. The judgment totaled $424,562.04, consisting of $326,041.48 in principal and $98,520.56 in interest and fees.

[18] The Loan Modification is annexed as Exhibit I to the Reply.

[19] *See Ditech Financial LLC v. James Turner, Jr, et al*, Case No. 2018-018167-CA-01 (Miami-Dade Cnty. Ct. 2018).

Complaint"),[20] Ditech alleged that Claimant failed to pay the amount due on May 1, 2017, and all

amounts due thereafter.  Pending Foreclosure Complaint ¶ 7.  According to Ditech, the outstanding

balance on the Mortgage was $627,312.62 at the time of the filing.  *Id.* ¶ 11.

On May 22, 2019, Claimant filed his answer (the "Pending Foreclosure Answer"),[21]

consisting of Claimant's answer to the complaint and his affirmative defenses, as well as

counterclaims asserted by Claimant and Jeffrey Turner (the "Turners") against Ditech, the Federal

National Mortgage Association ("Fannie Mae"), and Phelan Hallinan Diamond & Jones PLLC.

The Turners' claims against Ditech were for (i) violations of Florida Deceptive and Unfair Trade

Practice Act ("FDUTPA"), (ii) breach of contract and breach of the covenant of good faith and fair

dealing, (iii) violation of the Florida Consumer Collection Practices Act ("FCCPA"), (iv) unjust

enrichment, (v) civil conspiracy and fraud, and (vi) breach of fiduciary duty.  Pending Foreclosure

Answer ¶¶ 149-292.

On July 22, 2020, in the wake of the commencement of the Chapter 11 Cases, Claimant

and Ditech stipulated to the voluntary dismissal of all counterclaims seeking monetary relief

against Ditech.[22]

**The Chapter 11 Cases**

On February 11, 2019, Ditech Holding Corporation (f/k/a Walter Investment Management

Corp.) and certain of its affiliates, including Ditech (collectively, the "Debtors") filed petitions for

relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases").  The

Debtors remained in possession of their business and assets as debtors and debtors in possession

---

[20] *Complaint*, Reply, Ex. J.

[21] *Defendant/Counter Claimants Answer, Affirmative Defenses and Counterclaims*, Reply, Ex. K.

[22] The stipulation in the Pending Foreclosure Action is annexed as Exhibit L to the Reply.

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On February 22, 2019, the Court

entered an order fixing April 1, 2019, as the deadline for each person or entity to file a proof of

claim in the Chapter 11 Cases (the "General Bar Date").[23]  The General Bar Date was twice

extended for consumer borrowers and the Court ultimately set the date as June 3, 2019.[24]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, and it became

effective on September 30, 2019.[25]  The Third Amended Plan establishes the Consumer

Representative as a fiduciary responsible for the reconciliation and resolution of Consumer

Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer

Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims.  *See* Third

Amended Plan art. I, § 1.41.  As such, the Consumer Representative has the exclusive authority to

object to Consumer Creditor Claims.  *See id.* art. VII, § 7.1.

**The Claims Procedures Order**

Under the Claims Procedures Order, the Consumer Representative is authorized to file

Omnibus Objections seeking reduction, reclassification, or disallowance of claims on the grounds

set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures

Order.  *See* Claims Procedures Order ¶ 2(i)(a)-(h).  A properly filed and served response to an

objection gives rise to a "Contested Claim."  *Id.* ¶ 3(iv).  Contested Claims are resolved at a Claim

Hearing, which the Consumer Representative can schedule as either a "Merits Hearing," an

evidentiary hearing on the merits of a Contested Claim, or a "Sufficiency Hearing," a non-

---

[23] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[24] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[25] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

evidentiary hearing to address whether a Contested Claim states a claim for relief against the Debtors. *Id.* ¶ 3(iv)(a), (b). At a Sufficiency Hearing, the Court applies the legal standard of review applied on a motion to dismiss under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

## The Claim

Claimant filed his proof of claim in the amount of $210,000.00 based on "improper mortgage modification corp. advances." Claim at 2. The Claim consists of the Proof of Claim, Official Form 410, and no other documents.

## The Objection

The Consumer Representative objected to the Claim because "Claimant alleges improper amounts capitalized in loan modification that [C]laimant agreed to and executed in 2016." Objection, Ex. A. at 3. The Objection says that Claimant fails to state a claim upon which relief may be granted and that any of his potential claims are time-barred by the applicable statute of limitations. Objection, Ex. A. at 3.

## The Response

The Response recounts the Pending Foreclosure Action and identifies the counterclaims that Claimant asserted against Ditech in that action. Response ¶¶ 1-2. The counterclaims include: (i) violations of the FDUTPA, (ii) breach of contract, (iii) breach of the covenant of good faith and fair dealing, (iv) violation of the FCCPA, (v) unjust enrichment, (vi) civil conspiracy, (vii) fraud in the inducement, and (viii) breach of fiduciary duty. *Id.* ¶ 4.

Claimant asserts that Ditech's wrongdoing stems from its conduct surrounding the Loan Modification. *Id.* ¶¶ 7-14. Claimant says that he received notice that he had been approved for a

modification of the Mortgage Loan which required that he make three trial payments.[26]  *Id.* ¶ 7.

According to Claimant, the approval letter stated that the modified balance was $525,684.53, but

upon Claimant's completion of the trial payments, the loan amount was increased to $631,766.12.

*Id.* ¶¶ 8-9; Response, Exs. B, C.  Claimant says that he contacted Fannie Mae and Ditech for

clarification about the increase and "[was] told" that the increase was due to corporate advances.

Response ¶ 10.  Claimant maintains that Fannie Mae or Ditech told him that if he did not sign the

modification agreement, he would forfeit the trial payments.  *Id.* ¶ 11.  He also claims that Fannie

Mae or Ditech told him that a provision in the Loan Modification would allow errors to be

corrected after the Loan Modification was executed.  *Id.* ¶ 12.  Claimant asserts that "having been

induced by the promises of Fannie Mae and its agent Ditech as to the ability to correct the terms

of the modification [sic] executed same, avoiding the loss of $4,048.98 in trial payments."  *Id.* ¶

13.

Claimant says that he made timely payments pursuant to the terms of the Loan

Modification while awaiting further information regarding the "corporate advances."  *Id.* ¶ 14.  He

states that Ditech eventually provided him with various ledgers (the "Ledgers")[27] listing "alleged

corporate advances for attorney fees, inspections, repairs, insurance disbursements and mod

advances."  *Id.* ¶ 17.  Claimant asserts that most of these corporate advances, which were only

charged only after the Loan Modification, were not "justified or owed."  *Id.* ¶ 17.[28]  Claimant also

---

[26] Two pages of that notice are annexed to the Response as Exhibit A and Exhibit B.  Exhibit A identifies the monthly trial period payments are $1,349.66.  Exhibit B provides the proposed terms of the modification.

[27] The Ledgers are annexed as Exhibit E to the Response.

[28] For example, Claimant states that the Ledger lists forty-nine disbursements of various categories all "made on" April 5, 2016, totaling $15,717.78.  Response ¶ 18.  He also points to legal fees, totaling $15,967.78, dated between April 5, 2016 and October 10, 2016.  *Id.* ¶ 19.

contends that the Ledgers were incomplete, limited to a small period, and omitted charges for insurance premiums or advances.  *Id.* ¶ 20.

Claimant states that due to Ditech's bankruptcy filing, he and Ditech stipulated that he would withdraw the counterclaims in the Pending Foreclosure Action to the extent they sought damages and attorneys' fees, but Claimant would retain his right to assert set-off or recoupment. *Id.* ¶ 48; Response, Ex. G.

Claimant argues that the Objection does not provide factual or legal support for the assertion that the Claim fails to state a claim upon which relief can be granted or that his possible claims are barred by the applicable statute of limitations.  Response ¶ 52.  Claimant indicates that the Objection's argument that the Claim does not state a claim upon which relief can be granted is "premature" in light of the state court case and "[t]he entry of an order sustaining the consumer representative's objection would be severely prejudicial to the Turners [sic] Florida Case as it could be construed as a judgment on the merits of their Claims in the Circuit Court proceeding." *Id.* ¶¶ 56-57.

## **The Reply**

The Consumer Representative asserts that the Claimant does not meet the pleading standards of Federal Rule of Civil Procedure 8(a) ("Rule 8(a)")[29] because his allegations are nothing more than "a compilation of conclusory statements, legal arguments, recitations or elements, and recitals of statutes."  Reply ¶¶ 30-31.  The Consumer Representative also argues that Claimant "does not articulate the legal theories under which he pursues relief for any of these alleged acts by Debtor," and the Court should dismiss the Claim under Rule 12(b)(6).  *Id.* ¶ 33.

---

[29] Rule 8(a) is made applicable herein pursuant to Bankruptcy Rule 7008.

**The Surreply**

The Surreply largely reasserts and refines Claimant's previous arguments. Claimant also annexes additional exhibits including (i) the Fannie Mae Allowable Foreclosure Attorney Fees schedule, (ii) one page of a debt validation letter from Ditech's counsel, (iii) some, but not all of the pages of the Mortgage, (iv) another ledger from Ditech, (v) an April 22, 2018 letter to Ditech's counsel disputing the debt, and (vi) an order in the First Foreclosure Action rescheduling the foreclosure sale.

Claimant includes additional allegations regarding the circumstances surrounding the Loan Modification. Claimant says that when he received the letter approving him for a modification, he contacted Ditech "to confirm the amounts and was advised the modification amount may change subject to the final closing date, but only by a few hundred dollars." Surreply ¶ 78. Claimant asserts that he received a copy of the modification for his signature on May 26, 2016, less than a week before his first payment under the Loan Modification was due. *Id.* ¶ 22. He says that when he contacted Ditech regarding the increased principal balance, he was told "there must have been an error in the numbers" due to the rush to get him the documents before his payment was due. *Id.* ¶ 24. He states he executed the agreement and began making payments based on Ditech's promise to correct the modified amount. *Id.* ¶¶ 27-28. He says that in April 2017, he decided to stop making his mortgage payments to force Ditech into court because "it became clear Ditech was not going to honor its promises to provide corrected documents." *Id.* ¶ 30.

Claimant states that in September 2017 he received a letter regarding his debt from Ditech's counsel, Phelan Hallinan Diamond & Jones. *Id.* ¶ 31. Claimant says that on October 7, 2017, he responded in writing to dispute the debt and request verification, and on January 25, 2018, he received the Ledgers in an email as a response to the debt verification request. *Id.* ¶¶ 58-59.

He reiterates his claim that the corporate advances identified within the Ledgers were improper and illegitimate. Claimant states that in an attempt to prove to Ditech that the Property did not require flood insurance, he obtained a survey from FEMA. *Id.* ¶ 41. Despite FEMA allegedly confirming the Property was not in a flood zone, he asserts this information did not prompt Ditech to remove the charges for flood insurance and the improper insurance premiums exceed $75,000. *Id.* ¶¶ 41-42. He also alleges that Ditech worked with American Security Insurance Company to force place insurance at inflated prices in exchange for commissions and kickbacks. *Id.* ¶¶ 70-77.

Claimant contends that Ditech is not entitled to seek recovery of attorney fees because it did not file a motion requesting them pursuant to Florida Rule of Civil Procedure 1.525. *Id.* ¶¶ 81-85. Further, he states that there is no justification for the accrual of legal fees between April 5, 2016, and October 10, 2016, because by March 2016 he was making the trial payments under the modification and by June 2016 he made payments under the Loan Modification. *Id.* ¶ 35.

To support his assertion that Ditech violated the FCCPA, Claimant asserts that based on the definitions in the FCCPA, he is a consumer and Ditech is a debt collector. *Id.* ¶¶ 125-126. He states that the debts are consumer debts and Ditech violated Fla. Stat. § 559.72(9) by attempting to collect on a debt it knew was illegitimate or attempting to assert a legal right it did not have with respect to the home inspections, attorney fees, and force placed insurance. *Id.* ¶¶ 124, 127-131. He also contends that Ditech had actual knowledge that the Property did not require flood insurance because Claimant informed them of the FEMA survey. *Id.* ¶¶ 41, 132.

Claimant states that the Consumer Representative's assertions that the corporate advances were only charged, but not incurred, after the modification is implausible and not credible. *Id.* at

28.  He argues that given there were three servicers over the relevant eight-year time frame, it does not make sense that all three would wait until April 5, 2016 to charge for the inspections.  *Id.*

**The Surresponse**

The Surresponse largely focuses on the breach of contract claim, the breach of the implied covenant of good faith and fair dealing claim, and the claims for violations of the FDUTPA and the FCCPA.

The Consumer Representative asserts that Claimant has not pleaded facts demonstrating that he is in privity with Green Tree and cannot maintain a breach of contract claim.[30]  Surresponse ¶¶ 15-18.  She also asserts that the breach of contract claim also fails under Rule 12(b)(6) because Claimant has not sufficiently alleged that the charges for property inspections, attorney fees, or insurance premiums amount to a breach of the Mortgage or that Ditech breached the Loan Modification.  *Id.* ¶¶ 19-51.

The Consumer Representative argues that Claimant's breach of the implied covenant of good faith and fair dealing fails because all Ditech's actions were in accordance with the Fannie Mae Servicing Guide and thus commercially reasonable.  *Id.* ¶¶ 56-60.  She interprets the Surreply as narrowing Claimant's basis for the violation of the FDUTPA claim to only the allegation that Ditech force placed insurance at an exorbitant price in exchange for commissions and kickbacks.  *Id.* ¶ 67.   The Consumer Representative states that the claim under FDUTPA fails because none

---

[30] The Consumer Representative contends that Claimant's argument changed from the Response to the Surreply and he now alleges that the Debtors breached the contract, not Fannie Mae.  Surresponse ¶ 12.  She is correct that Claimant removes mention of Fannie Mae in the Surreply.  However, the Response argued that both Fannie Mae and Ditech breached the Mortgage and the Surreply states the Debtors breached the Mortgage.  *Compare* Response ¶ 38 *with* Surreply ¶ 46.  The Court does not understand this to be a change to Claimant's allegation, but rather Claimant's effort to focus only on allegations against Ditech.  Further, the removal of Fannie Mae in the Surreply has no practical effect because the Court cannot adjudicate a claim against Fannie Mae.

of Ditech's actions fall within the scope of trade or commerce. She also asserts that the claims for violations of the FDUTPA and FCCPA are barred by their applicable statutes of limitations. *Id.* ¶¶ 78, 92.

## <u>DISCUSSION</u>

A proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). If a party in interest objects, the Court must determine a claim's allowance in accordance with the nine grounds set forth for disallowing properly filed proofs of claim in section 502(b). 11 U.S.C. § 502(b). In relevant part, a court will disallow a claim under section 502(b)(1) if it "is unenforceable against the debtor and property of the debtor, under . . . applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1).

"The filing of a proof of claim is a prerequisite to a creditor's participation in a bankruptcy case and to the creditor's right to seek relief in the bankruptcy case." *In re Tronox Inc.*, 626 B.R. 688, 740 (Bankr. S.D.N.Y. 2021). If that filing is executed in accordance with the Bankruptcy Rules, it constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). The objector has the initial burden of presenting evidence sufficient to overcome the claim's presumption of validity. *In re Regino*, 585 B.R. 322, 326 (Bankr. E.D.N.Y. 2018). However, "the creditor retains the ultimate burden of persuasion with regard to the validity of the claim." *In re Live Primary, LLC*, 626 B.R. 171, 188 (Bankr. S.D.N.Y. 2021).

The legal standard of review applied at a Sufficiency Hearing is equivalent to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See* Claims Procedure Order ¶ 3(iv)(a). In assessing the merits of the Objection, the Court considers the sufficiency of Claimant's allegations under Rule 12(b)(6) in conjunction with the relevant pleading standards. *See* 5C Wright & Miller, Fed. Prac. & Proc. Civ. § 1363 (3d ed. 2024) ("A motion to dismiss for

failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).").  "Rule 12(b)(6) also has been used to enforce the special heightened pleading requirements for fraud and mistake prescribed by Federal Rule of Civil Procedure 9(b)." *Id.* § 1357.  Federal Rule of Bankruptcy Procedure 7009, which makes Federal Rule of Civil Procedure 9 applicable in adversary proceedings, also applies in contested matters where a court has not otherwise directed.  Fed. R. Bankr. P. 9014(c).

The Court considers those matters below.

### Whether the Claim Satisfies Rule 8(a)

Rule 8(a)(2) requires a claim contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In reviewing the Claim, the Response, and the Surreply, the Court finds that Claimant has sufficiently alleged facts to provide Ditech with fair notice of the basis of his Claim and satisfy the notice pleading standard.  While the Response is rife with allegations against Fannie Mae—and those allegations are not properly before the Court—Claimant generally asserts sufficiently particular facts regarding what he perceives as Ditech's misconduct and attempts to connect those facts to legal theories.  Ditech had notice of his allegations, and it has been able to understand and respond to them.  Although Claimant is still required to comply with the applicable pleading standards, the Court reads his nonconclusory factual allegations with some leeway, since he is acting pro se. *Green v. Dep't of Educ.*, 16 F.4th 1070, 1074 (2d Cir. 2021) (noting that courts will read pro se complaints "to raise the strongest arguments they suggest" (quoting *McLeod v. Jewish*

15

*Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017))); *Ong v. Park Manor (Middletown Park)*

*Rehab. & Healthcare Ctr.*, 51 F. Supp. 3d 319, 342 (S.D.N.Y. 2014) ("This policy of liberally

construing pro se submissions is driven by the understanding that implicit in the right of self-

representation is an obligation on the part of the court to make reasonable allowances to protect

pro se litigants from inadvertent forfeiture of important rights because of their lack of legal

training." (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006))).  While

"dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable

of cases," *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008), the leniency toward pro se litigants

does not completely relieve them of their duty to satisfy the procedural standards and requirements.

*Cadet v. All. Nursing Staffing of New York, Inc.*, 632 F. Supp. 3d 202, 219 (S.D.N.Y. 2022).

The core of Claimant's Claim arises from the increased principal amount in the Loan

Modification and the alleged improper, unjustifiable corporate advances charged.  The Claim is

not "so confus[ing], ambiguous, vague, or otherwise unintelligible" to warrant dismissal on Rule

8(a) grounds.  *Harnage v. Lightner* 916 F.3d 138, 141 (quoting *Salahuddin v. Cuomo*, 621 F.2d

40, 42 (2d Cir. 1988)).

## Whether Claimant Satisfies Rule 12(b)(6)

Rule 12(b)(6) mandates dismissal if the Claim "fail[s] to state a claim upon which relief

can be granted." Fed. R. Civ. P. 12(b)(6).  A challenge under Rule 12(b)(6) goes only to the legal

sufficiency of the Claim, and so the Court is to take "no account of [the complaint's] basis in

evidence."  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

In evaluating the sufficiency of the Claim, the Court accepts all factual allegations as true

and draws all reasonable references in the light most favorable to Claimant.  *Francis v. Kings Park*

*Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021).  However, "the complaint's factual allegations must

[still] be enough to raise a right to relief above the speculative level . . . *i.e.*, enough to make the claim plausible." *Garvey v. Face of Beauty LLC*, 634 F. Supp. 3d 84, 90 (S.D.N.Y. 2022) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).

The Consumer Representative asserts that Claimant fails to meet the Rule 12(b)(6) standard in relation to any of the following pleaded claims against Ditech: (i) breach of contract; (ii) breach of the implied covenant of good faith and fair dealing; (iii) breach of fiduciary duty; (iv) unjust enrichment; (v) violations under the FDUTPA; (vi) fraud in the inducement; (vii) civil conspiracy; and (viii) violations of the FCCPA.

The Court considers each claim below.

### Breach of Contract

A breach of contract claim under Florida law requires Claimant to prove (i) a valid contract, (ii) a material breach of the contract, and (iii) damages from the breach. *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. Dist. Ct. App. 2017). Only a material breach will support a breach of contract claim. *JF & LN, LLC v. Royal Oldsmobile-GMC Trucks Co.*, 292 So. 3d 500, 508-09 (Fla. Dist. Ct. App. 2020); *see also Verbal v. TIVA Healthcare, Inc.*, 628 F. Supp. 3d 1222, 1229 (S.D. Fla. 2022) ("To constitute a vital or material breach, a defendant's non-performance must be such as to go to the essence of the contract." (quoting *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1313 (11th Cir. 2019))).

Claimant asserts Ditech (i) purchased force placed insurance at "hyper-inflated" and "non-competitive" premiums, Response ¶ 42; (ii) purchased flood insurance despite knowing the Property was not in a flood zone, *id.* ¶ 29; (iii) charged more for attorney fees and legal work

related to the Pending Foreclosure Action than permitted under Fannie Mae's Servicing Guide,[31] *id.* ¶¶ 19, 23; (iv) charged for attorney fees and legal costs between April 5, 2016 and October 10, 2016, that were unjustified; *id.* ¶ 19; Surreply ¶ 35; (v) charged for home inspections conducted more frequently than allowed under the Fannie Mae Servicing Guide, Response ¶ 24; (vi) charged for inspections it did not conduct, Surreply ¶ 66; and (vii) received kickbacks and commissions from insurance carriers for the improperly charged insurance, *id.* ¶ 90.

These breaches cannot form the basis of a breach of contract claim against Ditech because Ditech was not in privity with Claimant when these alleged breaches occurred.  Claimant asserts that "Green Tree Servicing LLC acquired the mortgage service rights and the default servicing platform by merger from Everhome Mortgage Company in 2014."  *Id.* ¶ 11.  As the Consumer Representative notes, Claimant specifically limits the allegations to servicing rights.  Claimant does not allege that Green Tree was or became the owner of the Mortgage when it acquired the servicing rights.[32]

To state a claim for breach of contract, Claimant must demonstrate that he was in privity with Ditech such that Ditech's obligations to perform under the Mortgage ran to Claimant. servicer's responsibilities in determining contractual privity. The servicer in *Hogan v. Praetoria Ins. Co.* asserted that as a servicer it was not a party to the mortgage and could not be held liable for a breach of the implied covenant of good faith and fair dealing and the court agreed.  No. 17-CV-21853, 2018 WL 8266803, at *7 (S.D. Fla. Jan. 11, 2018) ("Plaintiff fails to and cannot state a claim against [the servicer] for breach of the implied covenant of good faith and fair dealing . . .

---

[31] *See* Fannie Mae Servicing Guidelines, Mar. 9, 2016 (the "Fannie Mae Servicing Guide"), https://singlefamily.fanniemae.com/media/19961/display.  This Court refers to the March 2016 version of the guidelines as the applicable version at the time of the Loan Modification.

[32] EverHome had assigned the Mortgage to Ditech on September 28, 2017.  Reply, Ex. D.

as [the servicer] is not a party to the [m]ortgage."); *see also Bank of Am., N.A. v. Zaskey*, No. 15-CV-81325, 2016 WL 2897410, at *7 (S.D. Fla. May 18, 2016) (dismissing breach of implied covenant claim against servicer because borrower failed to allege privity with servicer); *Sekula v. Residential Credit Sols., Inc.*, No. 15CV2104ORL31, 2016 WL 6650712, at *2-3 (M.D. Fla. Nov. 10, 2016) (dismissing claims for breach of contract and breach of implied covenant of good faith and fair dealing against loan servicer that was not a party to the mortgage agreement).

Similarly, Claimant has failed to allege contractual privity with Ditech and cannot state a cause of action for breach of contract.

### Breach of Implied Covenant of Good Faith and Fair Dealing

In asserting a breach of the implied covenant of good faith and fair dealing, Claimant asserts that Ditech used its discretion to "force-place insurance, conduct alleged inspections, and make charges guised as corporate advances" and such actions were "unconscionable" and "motivated by bad faith." Response ¶¶ 39-40.

In response, the Consumer Representative argues that because Claimant was refunded more in corporate advances than he alleged to be fraudulent and because the terms of the modification were "materially better" than those of the Mortgage, he was not damaged. Reply ¶ 52. She also argues that that Claimant failed to "provide any documentation of force-placed insurance or evidence Ditech unnecessarily required him to pay for flood insurance." *Id.*

Under Florida law, the covenant of good faith and fair dealing is implied into virtually all contracts. *Speedway SuperAmerica, LLC v. Tropic Enters., Inc.*, 966 So. 2d 1, 3 (Fla. Dist. Ct. App. 2007). It is a default rule intended to fill the gap left by agreements that lack standards prescribing how a party may decide how to perform under the agreement. *Publix Super Mkt. v. Wilder Corp.*, 876 So. 2d 652, 654 (Fla. Dist. Ct. App. 2004). "[W]here the terms of the contract

afford a party substantial discretion to promote that party's self-interest, the duty to act in good

faith nevertheless limits that party's ability to act capriciously to contravene the reasonable

contractual expectations of the other party." *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097-

98 (Fla. Dist. Ct. App. 1999).   However, "no independent cause of action exists under Florida law

for breach of the implied covenant of good faith and fair dealing." *Burger King Corp. v. Weaver*,

169 F.3d 1310, 1317 (11th Cir. 1999).  A cause of action for breach of the implied covenant cannot

exist "in the absence of breach of an express term of the underlying contract." *Id.* at 1318.  Since

Claimant cannot maintain his breach of contract claim and his breach of implied covenant claim

cannot stand alone, his breach of implied covenant claim must be dismissed.  *See iRenew Bio*

*Energy Sols. LLC v. Harvest Direct, LLC*, No. 12-CV-81109, 2013 WL 12142322, at *4 (S.D. Fla.

May 21, 2013) ("Since Plaintiff failed to state a claim for breach of contract under Florida law, it

cannot set forth a claim for a breach of the implied covenant of good faith and fair dealing.").[33]

*Unjust Enrichment*

Claimant asserts a claim for unjust enrichment.  While maintaining that Claimant cannot

state a breach of contract claim against Ditech because Ditech lacked privity with Claimant, the

Consumer Representative also argues that Claimant cannot maintain an unjust enrichment claim

against Ditech since an express contract exists concerning the same subject matter.  Surresponse ¶

66 (citing *Kovtan v. Frederiksen*, 449 So. 2d 1, 1 (Fla. Dist. Ct. App. 1984)).  At oral argument,

the Consumer Representative argued that this doctrine precludes an unjust enrichment claim where

a contract exists concerning the subject matter regardless of whether that contract is one between

the party asserting the claim and the one against whom it is asserted.   The Consumer

---

[33] Since the Court dismisses the claim for breach of the implied covenant of good faith and fair dealing because it cannot be maintained as an independent claim, it need not address or determine whether Ditech's actions were commercially reasonable.

Representative misinterprets the law.  "Florida law bars unjust enrichment claims only when *both* parties to the lawsuit are *also* parties to a written agreement that covers the same subject matter." *Com. Repairs & Sales, LLC v. Signet Jewelers Ltd.*, No. 17-CV-2439, 2018 WL 3068067, at *2 (M.D. Fla. Feb. 20, 2018) (citing *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. Dist. Ct. App. 1998)).  For that reason, Claimant's privity with a third party under the Mortgage does not preclude him from asserting an unjust enrichment claim against Ditech based on its servicing of the Mortgage.

Under Florida law, an unjust enrichment claim requires that "(1) the plaintiff conferred a benefit on the defendant, (2) the defendant had knowledge of the benefit, (3) the defendant accepted or retained the benefit conferred, and (4) the circumstances indicate that it would be inequitable for the defendant to retain the benefit without paying fair value for it."  *Id.* (citing *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. Dist. Ct. App. 1997)).

Claimant's unjust enrichment claim consists of a recitation of some of the elements of the claim, Surreply ¶¶ 136-39, and an assertion that it would be "inequitable for Ditech to be permitted to retain the benefits it received, and is still receiving, without justification, from its forced placed insurance policies, property inspections, attorney fees and costs and practices which it received in an unfair, unconscionable, and oppressive manner." *Id.* ¶ 140.  Each element of a claim for unjust enrichment requires the existence of a "benefit."  The Claimant has failed to plead facts sufficient to demonstrate how Ditech benefitted from force placing insurance, charging attorney fees to Claimant, or charging him for property inspections.  The claim, as pleaded, does not plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and is thus not plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

21

*Breach of Fiduciary Duty*

Claimant asserts that the special nature of the Loan Modification created a fiduciary relationship between Claimant and Ditech, and that Ditech breached that duty in its management of the escrow account.  Response ¶¶ 43-46.  Specifically, Claimant contends that "Ditech took on extra services by unilaterally establishing and managing an escrow account over which they exercised extensive control.  They received a greater economic benefit for charging excessive amounts for forced-placed premiums, property inspections and fraudulent corporate expenses from which they received impermissible kickbacks or other compensation." *Id.* ¶ 45; Surreply ¶ 53.

To state a claim for a breach of fiduciary duty under Florida law, Claimant must allege facts demonstrating (i) the existence of a fiduciary duty, (ii) a breach of that duty, and (iii) damages proximately caused by that breach. *Brouwer v. Wyndham Vacation Resorts, Inc.*, 336 So. 3d 372, 373 (Fla. Dist. Ct. App. 2022).  "With respect to lender-creditor relationships, Florida courts have recognized that '[g]enerally, the relationship between a bank and its borrower is that of a creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities.'" *SLM Fin. Corp. v. Castellano*, No. 11-CV-105-FTM-29, 2012 WL 717858, at *2 (M.D. Fla. Mar. 6, 2012) (alteration in original) (quoting *Cap. Bank v. MVB, Inc*., 644 So. 2d 515, 518 (Fla. Dist. Ct. App. 1994)).  The exception to that general rule is where the circumstances are such that "the bank knows or has reason to know that the customer is placing his trust and confidence in the bank so to counsel and inform him." *Cap. Bank*, 644 So.2d at 519 (citing *Klein v. First Edina Nat'l Bank*, 196 N.W.2d 619, 623 (Minn. 1972)); *Rana Fin., LLC v. City Nat'l Bank of New Jersey*, 347 F. Supp. 3d 1147, 1153 (S.D. Fla. 2018).  These circumstances typically arise where a bank "(1) takes on extra services for a customer, (2) receives any greater economic benefit

22

than from a typical transaction, or (3) exercises extensive control." *Akiki v. Bank of Am., N.A.*, 632 F. App'x 965, 972 (11th Cir. 2015) (quoting *Cap. Bank*, 644 So. 2d at 519).

Claimant alleges that Ditech took on extra services and received a greater economic benefit than from a typical transaction. Response ¶¶ 45-46. Contrary to Claimant's allegation that Ditech took on extra services by "unilaterally establishing and managing an escrow account over which they exercised extensive control," *id.* ¶ 45, the establishment of the escrow account was not an "extra service." The Mortgage and Loan Modification both required Ditech to hold escrow funds "in an institution whose deposits are insured" and could not charge Claimant for "holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items." Mortgage § 3; Loan Modification § 4, ¶ D. Moreover, Claimant has alleged that Ditech force placed insurance and received a kickback. Response ¶ 45. Although in certain cases, courts have upheld this claim based on similar factual allegations, those cases are distinguishable. For example, in *Gordon v. Chase Home Fin., LLC*, the court held that the "Amended Complaint adequately state[d] a claim for breach of fiduciary duty. . . because Plaintiffs allege that Chase received a greater economic benefit from the typical mortgage transactions in the form of 'kickbacks.'" No. 11-CV-2001-T-33, 2012 WL 750608, at *5 (M.D. Fla. Mar. 7, 2012). However, there, the plaintiff's allegations were not conclusory; there Plaintiff alleged that (i) Chase purchased all force placed insurance exclusively from the insurer; (ii) the cost was two to twenty times higher than the market rate; (iii) Chase had agreements making the insurer the sole provider of such insurance; (iv) Chase committed not to seek competitively priced policies elsewhere; (v) the insurer agreed to pay a kickback of 10-20% of the policy cost to Chase Insurance Agency. *Id.* at *2. Here, Claimant offers only a threadbare and conclusory allegation that Ditech received kickbacks from American Security Insurance Company to force place insurance at inflated prices.

23

The Court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations," *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013), and the mere conclusory allegations of "kickbacks" devoid of any factual support fails to state a claim for breach of Ditech's fiduciary duties to Claimant.

### Florida Deceptive and Unfair Trade Practices Act

In his Surreply, Claimant alleges that Ditech violated the FDUTPA, Fla. Stat. §§ 501.201-501.213, by force placing insurance and receiving kickbacks and commissions for such insurance. Surreply ¶¶ 90-94.

The FDUTPA seeks "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). Claims brought under the FDUTPA require allegations of (i) a deceptive act or unfair practice, (ii) causation, and (iii) actual damages. *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 860 (11th Cir. 2023).

The first element can be satisfied by alleging either a per se violation or a traditional violation. *Plain Bay Sales, LLC v. Gallaher*, No. 18-CV-80581, 2022 WL 409577, at *18 (S.D. Fla. Feb. 10, 2022). "A *per se* violation is established in one of two ways: (1) if the 'law, statute, rule, regulation, or ordinance' expressly constitutes a violation of the FDUTPA or (2) the statute, rule or ordinance proscribes unconscionable, deceptive, or unfair acts or practices and therefore operates as an implied FDUTPA predicate." *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1300 (S.D. Fla. 2018) (quoting Fla. Stat. § 501.203(3)(c)). A traditional violation, on the other hand, is established if plaintiff shows defendant engaged in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. §

501.204(1); *see Webber v. Bactes Imaging Sols., Inc.*, 295 So. 3d 841, 844 (Fla. Dist. Ct. App. 2020).

To the extent that Claimant is attempting to allege a per se violation when he asserts that certain of Ditech's acts violate Fannie Mae Servicing Guide, such an argument is unavailing. Fannie Mae's Servicing Guide is not a law, statute, rule, regulation, or ordinance to serve as the basis for a *per se* violation. It is merely part of the contractual relationship between Fannie Mae and Ditech, as a loan servicer. *See* Fannie Mae Servicing Guide, A1-1-03, Nature of the Contractual Relationship (11/12/2014), at 8 ("These communications [which include the Servicing Guide] are the instructions Fannie Mae provides to enable a servicer to perform its obligations to Fannie Mae under the terms of the MSSC. . . . No borrower or other third party is intended to be a legal beneficiary of the MSSC or to obtain any such rights or entitlement through our seller/servicer communications"); *see also Markle v. HSBC Mortg. Corp. (USA)*, 844 F. Supp. 2d 172, 181-82 (D. Mass. 2011) (relying on a similar provision in the selling guide to dismiss claim by borrower asserting servicer breached its contract with Fannie Mae because the guide and contract do not indicate "an intent to confer upon borrowers a right to enforce servicers' HAMP obligations" and "it would be unreasonable for a borrower to rely on the HAMP guidelines as evidence of intent to extend a right of enforcement to third-party beneficiaries, when the Selling Guide states that it is not so."). Moreover, as the Florida State Court noted in the Pending Foreclosure Action, the Fannie Mae Servicing Guide was part of the contractual relationship between Fannie Mae and Ditech in the Pending Foreclosure Action. *See* Reply, Ex. M at 3 ("Plaintiffs lack standing to assert noncompliance with any of the contract to which they are not a party, including the Guide, as a basis for liability."). Thus, any alleged violation of the Fannie Mae Servicing Guide cannot support a per se violation of the FDUTPA. Claimant has not

identified any other specific statute or law that either expressly or implicitly serves as a predicate for an FDUTPA claim.

Because Claimant cannot demonstrate that Ditech committed a per se deceptive act or engaged in a per se unfair practice, he can satisfy the first element of an FDUTPA claim only by sufficiently alleging a traditional violation.  To do so, he must state facts demonstrating that Ditech committed a "deceptive act" through "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 169 (Fla. Dist. Ct. App. 2015) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)).  Florida courts use an objective test to determine whether an act or practice is likely to mislead a reasonable consumer.  *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016).  "If the statements are 'likely to mislead reasonable consumers,' then it makes no difference if the statements are 'technically or literally true.'" *Coleman v. CubeSmart,* 328 F. Supp. 3d 1349, 1361 (S.D. Fla. 2018) (quoting *F.T.C. v. Peoples Credit First, LLC*, 244 F. App'x 942, 944 (11th Cir. 2007)).  Alternatively, he may demonstrate that Ditech engaged in an "unfair practice," or "one that offends established public policy" and is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1348 (S.D. Fla. 2009) (quoting *PNR, Inc.*, 842 So. 2d at 777; *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006).

Claimant contends that Ditech charged him for force placed insurance when it was not required, obtained the force placed insurance policies at an excessive premium, and ignored a

FEMA survey that indicated that the Property was not in a flood zone.[34]   Whether Ditech was

permitted, under the Mortgage, to take these actions is irrelevant to his FDUTPA claim.  The only

issue is whether doing so was unfair or deceptive.  "[A] claim under FDUTPA is not defined by

the express terms of a contract, but instead encompasses unfair and deceptive practices arising out

of business relationships."  *Rossi v. Darden*, No. 16-21199-CIV, 2016 WL 9254640, at *7 (S.D.

Fla. Nov. 16, 2016) (alteration in original) (quoting *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d

1286, 1293 (M.D. Fla. 2009)). Although allegations "such as failing to seek competitive bids on

the open market, failing to provide borrowers with an opportunity to opt out of having force placed

insurance policies provided by insurers with whom Defendants have a commission arrangement,

backdating policies, and receiving commissions and kickbacks from an insurer which was not then

passed on to the borrower" may present an issue of fact whether a practice offends the FDUTPA,

*Degutis v. Fin. Freedom, LLC*, 978 F. Supp. 2d 1243, 1264-65 (M.D. Fla. 2013), such is not the

situation here.  The Claimant's allegations are entirely conclusory; he offers no allegations in

support of his claim that Ditech "ignored" the FEMA survey, Surreply ¶ 41, nor did he quote or

attach the survey to his Claim or any of his subsequent filings.  The Court cannot simply accept

his bare allegation that the FEMA survey said that flood insurance was unnecessary, nor can it

accept that the premiums for that alleged forced-placed insurance were "two to four times greater

than the going rate." *Id.* ¶ 72.  The Court is compelled to draw on its "experience and common

sense," *Iqbal*, 556 U.S. at 679; doing so requires the conclusion that no reasonable factfinder could

find that Ditech's actions could have been misleading or unfair.  That Ditech might force place

insurance, even insurance that Claimant might think unnecessary, was disclosed to Claimant in the

---

[34] For the same reasons noted earlier, the Court must disregard the Claimant's conclusory allegations of a kickback scheme and does not consider these allegations to form part of the basis for an FDUTPA claim.

Mortgage.  The Mortgage requires him to "keep the improvements now existing or hereafter erected on the Property insured against . . . any other hazards including, but not limited to . . . floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires."  Mortgage § 5.  Thus, even if the Court was required to accept Claimant's conclusory allegations, the possibility that Ditech might decide to force place insurance was one that was clearly disclosed to him.  He cannot make out a plausible claim that Ditech's force placed insurance violated the FDUTPA.

Even if he could make out a plausible FDUTPA claim, his claims would be generally barred by the statute of limitations.  Claimant cannot bring an action for violation of the FDUTPA either more than 4 years after the occurrence of the violation, or more than 2 years after the last payment in a transaction involved in the violation, whichever is later.  Fla. Stat. § 501.207(5).  Claimant first raised his FDUTPA claim in the Claim filed on April 12, 2019.  A majority, but not all, of Claimant's alleged violations occurred before April 12, 2015, *see* Ledgers at 1-8; Surreply, Ex. 1 at 6-25, and such alleged violations are barred by the statute of limitations.

### *Fraudulent Inducement*

A claim for fraudulent inducement has four elements: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induced another to act on it; and (4) consequent injury by the party acting in reliance on the representation."  *Dziegielewski v. Scalero*, 352 So. 3d 931, 934 (Fla. Dist. Ct. App. 2022) (quoting *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)).

Claimant says that when he received the Loan Modification, his principal balance was approximately $106,000 more than the amount stated in his approval letter.  Response ¶¶ 9-10.  Claimant indicates he was especially "horrified" about this because, upon receiving the approval

28

for a modification, he "contacted Ditech Financial to confirm the amounts and was advised the modification amount may change subject to the final closing date, but only by a few hundred dollars." Surreply ¶¶ 23, 78. According to Claimant, he immediately reached out to Ditech who explained that "there must have been an error in the numbers due to the rush to get the documents overnighted." *Id.* ¶ 24. Claimant says that since he received the agreement less than a week before his first payment was due under the Loan Modification, Ditech informed him that time was of the essence and if he did not sign it, the trial payments would be forfeited. Response ¶ 11; Surreply ¶¶ 22, 25. He states that "to dispel the Turners [sic] concerns," Ditech told him that "'[i]tem 4 of the modification document', titled 'Additional Agreements' contained a paragraph which stated at 'K-ii. Correct the terms and conditions of this plan if an error is detected after execution of this agreement.'" Response ¶ 12; Surreply ¶ 26. Claimant says that he "only signed the modification agreement based on the promises of Ditech's manager to correct the amount of the modification." Surreply ¶ 24.

Similar claims have been dismissed under Florida's banking statute of frauds. For example, in *Brake v. Wells Fargo Fin. Sys. Fla., Inc.*, the plaintiffs, borrowers, alleged that the defendant bank fraudulently induced them into executing a mortgage by orally promising, to modify the loan on more favorable terms within two months of its execution. No. 10-CV-338-T-33, 2011 WL 6719215, at *7 (M.D. Fla. Dec. 5, 2011), *report and recommendation adopted*, No. 10-CV-338-T-33, 2011 WL 6412430 (M.D. Fla. Dec. 21, 2011). The defendant moved to dismiss the claim, arguing that it was barred by Florida's banking statute of frauds. *Id.*

Fla. Stat. § 687.0304(2) requires that credit agreements be in writing. *Id.; see also Coral Reef Drive Land Dev., LLC v. Duke Realty Ltd. P'ship*, 45 So. 3d 897, 903 (Fla. Dist. Ct. App. 2010). The statute defines a "credit agreement" in broad terms, encompassing "an agreement to

29

lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." *Brake,* 2011 WL 6719215, at *7 (quoting Fla. Stat. § 687.0304(1)(a)). The purpose of the statute is to protect lenders from liability stemming from communications that a borrower could construe as an agreement. *Id*

Claimant's allegation that Ditech made an oral promise to correct the terms of the Loan Modification falls within the banking statute of frauds for the same reasons as those in *Brake*. Namely, although he asserts that he only signed the modification agreement based on verbal assurances from Ditech, this oral promise to correct the amount of the Loan Modification is a "credit agreement," which Florida's statute of frauds defines broadly to include any arrangement to lend money, extend credit or make any other financial accommodation, and mandates that, to be binding, such agreements must be in writing, contain express consideration, set forth the relevant terms and conditions, and be signed by both parties. Given the absence of a written, signed agreement memorializing the alleged promise, the claim fails to satisfy the banking statute of frauds.

### Civil Conspiracy

Claimant alleges that Ditech and its predecessors "instituted forced placed insurance, property inspections and legal charges and misrepresented to [Claimant] this [sic] insurance, property inspections and legal charges were legitimate." Response ¶ 27. Claimant also says that Ditech conspired with its predecessors to "create a scheme wherein multiple fraudulent disbursements were charged to [Claimant's] account." *Id.* ¶ 28. In her Reply, the Consumer Representative appears to address Claimant's allegations that Ditech conspired with Fannie Mae

as part of the Pending Foreclosure Answer in the Florida State Court.  Reply ¶¶ 77-80.[35]  As a result, she mistakenly asserts that Claimant changed his civil conspiracy allegations from the Response to the Surreply.  Surresponse ¶ 6. However, both submissions allege a conspiracy between Ditech and its predecessors.  *Compare* Response ¶ 28 *with* Surreply ¶¶ 141-42.

The elements of a claim for civil conspiracy are "(1) an agreement between two or more parties[,] (2) to do an unlawful act by unlawful means, (3) the committing of an overt act in pursuance of the conspiracy, and (4) damage to the plaintiff as a result of the act." *Siegmund v. Xuelian Bian*, No. 16-62506-CIV, 2018 WL 1611197, at *14 (S.D. Fla. Apr. 2, 2018) (quoting *Vista Mktg., LLC v. Burkett*, 999 F. Supp. 2d 1294, 1297 (M.D. Fla. 2014)).

A conspiracy claim requires two or more parties.  As the court in *Valdes v. GAB Robins N. Am., Inc.* held, a "civil conspiracy count fail[ed] to state a cause of action because it improperly attempt[ed] to allege a conspiracy between a corporation and its predecessor."  924 So. 2d 862, 865 (Fla. Dist. Ct. App. 2006).  Likewise, here, Claimant alleges that Ditech conspired with its predecessors to "create a scheme wherein multiple fraudulent disbursements were charged to [Claimant's] account."  Response ¶ 28.  For the same reason, the Claimant's civil conspiracy claim fails to state a claim for relief.[36]

---

[35] In this proceeding, Claimant alleges only that Ditech and its predecessors conspired with each other.  Response ¶ 27.  Whether Ditech conspired with Fannie Mae is not before the Court.

[36] Even if the civil conspiracy claim could survive a motion to dismiss, it would make little difference here, since "[c]onspiracy is not a separate or independent tort but is a vehicle for imputing the tortious acts of one coconspirator to another to establish joint and several liability." *Ford v. Rowland*, 562 So. 2d 731, 736 n.2 (Fla. Dist. Ct. App. 1990).  A debtor could not be jointly liable with itself, so this imputation rule is inapplicable here.

***Florida Consumer Collection Practices Act***

Claimant states that his claims in the Ditech Foreclosure Action assert a violation of the FCCPA. Claimant contends that Ditech attempted to collect a debt for flood insurance, attorney fees, and home inspections that it knew were illegitimate. Surreply ¶¶ 128-31.

To state a claim for violation of the FCCPA, Claimant must allege "(1) the defendant is a person within the meaning of the FCCPA, (2) the defendant collected or attempted to collect a debt from the plaintiff, and (3) the defendant committed an act or omission prohibited by the FCCPA when it collected or attempted to collect the debt." *Gause v. Med. Bus. Consultants, Inc.*, 424 F. Supp. 3d 1175, 1203 (M.D. Fla. 2019) (quoting *Baumann v. Prober & Raphael*, No. 15-cv-1951, 2017 WL 10350673, at *2 (M.D. Fla. May 17, 2017)).

Ditech argues that it is not a statutory "debt collector" and thus cannot be liable under the FCCPA. Reply ¶¶ 82-83. Claimant challenges Ditech's conclusion and states that Ditech is a "debt collector" because his loan was delinquent when Ditech obtained the servicing rights. Surreply ¶ 126.

The dispute is immaterial. Unlike its federal counterpart, the Fair Debt Collection Practices Act, the FCCPA does not limit liability to debt collectors. *Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 969 (11th Cir. 2019); *O'Driscoll v. Arbor Grove Condo. Ass'n, Inc.*, No. 22-CV-1984, 2023 WL 3197877, at *3 (M.D. Fla. May 2, 2023). While the FCCPA does not define the term "person," Florida courts have found loan servicers such as Ditech can be held liable under the FCCPA as a "person." *Alvarez v. LoanCare LLC*, No. 20-21837-CIV, 2020 WL 5514410, at

\*2-3 (S.D. Fla. Aug. 28, 2020); *Gann v. BAC Home Loans Servicing LP*, 145 So. 3d 906, 910 (Fla.

Dist. Ct. App. 2014).[37]

Claimant's Surreply clarifies his FCCPA claim so as to specifically assert that Ditech

violated subsection 9 of the FCCPA.  Surreply ¶¶ 123-32.  That subsection provides that no person

shall "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not

legitimate, or assert the existence of some other legal right when such person knows that the right

does not exist."  Fla. Stat. § 559.72(9).  To state a claim under section 559.72(9) of the FCCPA,

Claimant must plead facts demonstrating (i) the existence of an illegitimate debt; (ii) a threat or

attempt to enforce that debt by Ditech; and (iii) Ditech's knowledge that the debt is illegitimate

and not authorized by law or the terms of the Mortgage.  *Davis v. Sheridan Healthcare, Inc.*, 281

So. 3d 1259, 1264 (Fla. Dist. Ct. App. 2019); *see Read v. MFP, Inc.*, 85 So. 3d 1151, 1155 (Fla.

Dist. Ct. App. 2012) (providing examples of § 599.72(9) violations).  A claim based on an alleged

violation of section 559.72(9) of the FCCPA requires Claimant to demonstrate that Ditech

"possessed *actual knowledge* that the threatened means of enforcing the debt was unavailable."

*Meyer v. Fay Servicing, LLC*, 385 F. Supp. 3d 1235, 1243 (M.D. Fla. 2019) (quoting *LeBlanc v.

Unifund CCR Partners*, 601 F.3d 1185, 1192 n.12 (11th Cir. 2010)).   "[T]he use of the word

'knows' requires actual knowledge of the impropriety or overreach of a claim."  *In re Lamb*, 409

B.R. 534, 541 (Bankr. N.D. Fla. 2009).  There can be no recovery under the statute "if the creditor

merely should have known the debt was not legitimate."  *Cornette v. I.C. Sys., Inc.*, 280 F. Supp.

---

[37] Courts have also looked to the definition of "person" under Fla. Stat. § 1.01 in their analysis of the FCCPA. *Kelly v. Davis*, No. 3:10CV392, 2014 WL 12515345, at \*8 (N.D. Fla. July 17, 2014); *Cook v. Blazer Fin. Servs., Inc.*, 332 So. 2d 677, 679 (Fla. Dist. Ct. App. 1976). Section 1.01(3) states "[t]he word "person" includes individuals, children, firms, associations, joint adventures, partnerships, estates, trusts, business trusts, syndicates, fiduciaries, corporations, and all other groups or combinations." Fla. Stat. § 1.01(3).

3d 1362, 1371 (S.D. Fla. 2017) (quoting *Schauer v. Morse Operations, Inc.*, 5 So.3d 2, 6 (Fla. Dist. Ct. App. 2009)).

Claimant states Ditech told him that he was required to pay for property inspections, attorney fees and legal expenses, and force placed insurance policies that Ditech either did not have a legal right to collect or knew were not legitimate.  Surreply ¶¶ 128-31.  The Court addresses each category of charges below.

Force Placed Flood Insurance

In support of his allegation that Ditech violated the FCCPA by force placing flood insurance, Claimant states that Ditech had actual knowledge that such insurance was not required. Surreply ¶ 132.

Courts have held factual allegations of knowledge are sufficient at the motion to dismiss case where, prior to discovery, the plaintiff can only allege circumstantial facts to demonstrate actual knowledge.  *Blake v. Seterus, Inc.*, No. 16-21225-CIV, 2017 WL 543223, at *3 (S.D. Fla. Feb. 9, 2017) (citing *Williams v. Educ. Credit Mgmt. Corp.*, 88 F. Supp. 3d 1338, 1347-48 (M.D. Fla. 2015)).  In *Williams*, the court held that the plaintiff sufficiently alleged actual knowledge where plaintiff and plaintiff's attorney each informed the collector that plaintiff was not the owner of the debt.  88 F. Supp. 3d at 1347-48.   Actual knowledge has also been adequately pleaded where plaintiff alleged that she informed the insurer of its error in force placing insurance and provided proof of her insurance coverage.  *Martorella v. Deutsche Bank Nat. Tr. Co.*, 931 F. Supp. 2d 1218, 1227 (S.D. Fla. 2013); *Soriano v. Rocky Mountain Holdings, LLC*, No. 21-CV-1067-T-33, 2021 WL 3700496, at *2 (M.D. Fla. Aug. 18, 2021) (holding plaintiff's allegation that she contacted her insurance company to notify them that she did not believe she owed them money based on her explanation of benefits was sufficient for actual knowledge under section 559.72(9)).

Claimant cannot satisfy the actual knowledge requirement because he does not allege that he provided Ditech with the survey.  He alleges only that he obtained a survey by FEMA which confirmed that his Property did not require flood insurance, Surreply ¶ 41, and that "[Ditech] had actual knowledge that the Turners did not owe the for-Flood [sic] Insurance as they were so notified by the Turners," *id.* ¶ 132.  He does not say that he gave the survey to Ditech, and as noted earlier, he did not attach the survey to his Claim or any of his subsequent filings.  Even assuming that Claimant told Ditech that it did not need to insure the Property for flooding, Turner has not explained how that would render the force placed insurance an illegitimate debt, given that Ditech was entitled to force place insurance if it so decided.  *See Sharon v. Royal Caribbean Cruises Ltd.*, No. 17-22323-CIV, 2017 WL 11220344, at *5 (S.D. Fla. Oct. 6, 2017), *report and recommendation adopted*, No. 17-22323-CIV, 2017 WL 11220333 (S.D. Fla. Nov. 9, 2017) (holding that "[p]urely informing the Defendant that they did not owe the debt is insufficient to satisfy knowledge on behalf of the Defendant that the debt was in fact illegitimate when attempting to collect it"); *see also Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1373 (S.D. Fla. 2011) (dismissing FCCPA claim because there were no specific allegations regarding defendant's knowledge).  Of course, had Claimant obtained coverage himself and sent proof of coverage to Ditech, he may be able to demonstrate the Ditech had actual notice that the debt on account of the force place insurance was illegitimate.  However, Claimant has not done so here, or much less alleged that he had carried a policy himself.

Attorney Fees

Claimant asserts Ditech also violated the FCCPA when Ditech informed him that he was required to pay for attorney fees and legal expenses that it knew were illegitimate and in violation of the Fannie Mae Servicing Guide and the Mortgage.  Surreply ¶¶ 129-30.  Claimant asserts that

Ditech did not have a legal right to collect attorney fees because it failed to comply with Florida

Rule of Civil Procedure 1.525. *Id.* ¶¶ 81, 85. Florida Rule of Civil Procedure 1.525 states that

"[a]ny party seeking a judgment taxing costs, attorneys' fees, or both shall serve a motion no later

than 30 days after filing of the judgment, including a judgment of dismissal, or the service of a

notice of voluntary dismissal, which judgment or notice concludes the action as to that party." Fla.

R. Civ. P. Rule 1.525. However, this provision is inapplicable since Ditech is not seeking to

recover attorney fees through a judgment from the court. *Iberiabank v. RHN Invs., Ltd.*, 144 So.

3d 583, 584 (Fla. Dist. Ct. App. 2014) ("Rule 1.525 does not apply because the borrowers' motion

was not seeking a judgment to tax fees or costs."). It merely incorporated those fees into the

modified principal—a practice typical in loan modifications. *See Acosta v. Ursula Lehnhart*

*Revocable Living Tr. Dated Aug. 6, 2012*, No. 15-62271-CIV, 2016 WL 11547874, at *6 (S.D.

Fla. Aug. 3, 2016) (characterizing a proposed mortgage modification that rolled delinquent

payments and attorneys' fees into the balance as "a typical offer made in good faith"); *see also*

*Colombo v. Robertson, Anschutz & Schneid, P.L.*, 341 So. 3d 1126, 1127-28 (Fla. Dist. Ct. App.

2022) (holding a law firm did not violate FCCPA by sending the borrower a letter setting forth the

amount due to reinstate the loan where the amount included attorney fees from prior foreclosure

action).

Claimant also argues that Ditech charged more for attorney fees than permitted by Fannie

Mae. However, the maximums identified in the Fannie Mae Servicing Guide do not apply to a

servicer's recovery from a borrower. *See* Fannie Mae Servicing Guide, E-5-04 Allowable

Foreclosure Fees (11/12/2014), at 708 ("Fannie Mae will not reimburse the servicer for any

attorney fees that exceed or are not included within Fannie Mae's maximum allowable foreclosure

fee schedule"). The Fannie Mae Servicing Guide states that "prior to requesting reimbursement

from Fannie Mae[,] the servicer must . . . [e]nsure fees and costs charged to borrowers are permitted under the terms of the note, security instrument, and applicable laws." *See* Fannie Mae Servicing Guide, E-5-02 Servicer Responsibilities Prior to Requesting Reimbursement of Attorney Fees and Costs (11/12/2014), at 706.  Thus, the limit prescribed by Fannie Mae has no bearing on what Ditech could seek to recover from Claimant.  Ditech did not violate the Fannie Mae Servicing Guide by charging attorney fees in excess of $3,450.

He further argues that the $15,967.78 in attorney fees and legal expenses between April 5, 2016 and October 10, 2016 were "unjustif[ied]," since during that period, he had been making trial payments and then Loan Modification payments.  Surreply ¶ 35.[38]  However, Claimant offers no explanation why such fees and legal expenses were "illegitimate," or even if they were, that Ditech possessed actual knowledge that they were so.

<u>Property Inspections</u>

Claimant states that Ditech did not conduct the nearly fifty home inspections charged for in the Ledgers and violated the FCCPA in attempting to collect them.  *Id.* ¶¶ 63-66.  Under the Mortgage, Ditech is permitted to charge Claimant for property inspections if Ditech conducted such inspections to protect its interest in the Property upon Claimant's default.  Mortgage § 14.  Claimant concedes that he was in default as of May 2017, as he stopped paying his mortgage in April 2017.

The Ledgers show six charges for inspections between June 2016 and April 2017.  *See* Ledgers at 1.[39]  Claimant does not claim that Ditech is not entitled to conduct inspections.  Rather,

---

[38] The implausibility of the claim is amplified by the docket in the First Foreclosure Action, which demonstrates that EverHome's counsel was still involved in that action through July 2016 when it filed a motion to dismiss the action and vacate the judgment due to the modification.  *See* Reply, Ex. G.

[39] The dates of the inspections are 6-3-2016, 10-11-2016, 12-09-2016, 2-10-2016, and two charges on 3-6-2017.

he argues that the inspections were more frequent than one every twenty days, as permitted by the Fannie Mae Servicing Guide, and some of the ostensible inspections never took place at all. Surreply ¶¶ 37, 57, 66, 84.

However, Claimant has not pleaded more than conclusory allegations that Ditech acted with actual knowledge that the inspection charges were illegitimate. *See In re Lamb*, 409 B.R. at 541 ("The Plaintiff must plead some basic facts to support its conclusory allegations of knowledge or intent, and this Court will not enter a judgment under the FCCPA without more than the conclusory allegations of the plaintiff."); *see also Lima v. Bank of Am., N.A.*, 249 F. Supp. 3d 1308, 1313 (S.D. Fla. 2017) ("The plaintiff cannot merely plead that the defendant had knowledge, but instead must plead sufficient factual allegations to show how the defendant had that knowledge."). Claimant's mere informing Ditech that he believed these amounts were improper and the allegation that he "disput[ed] the claim of debt and requested verification [from 'the debt collectors Phelan Hallinan Diamond & Jones, PLLC']," Surreply ¶ 58, does not establish that Ditech knew that these debts were illegitimate. *Cf. Arianas v. LVNV Funding LLC*, 132 F. Supp. 3d 1322, 1330 (M.D. Fla. 2015); *Kelly v. Davis,* No. 10CV392, 2014 WL 12515345, at *12 (N.D. Fla. July 17, 2014) (holding that knowledge of a dispute as to the legitimacy of charges "falls short of the statutory knowledge requirement, especially where substantial evidence tends to establish the legitimacy of the debt at issue"); *Sharon v. Royal Caribbean Cruises Ltd.*, No. 17-22323-CIV, 2017 WL 11220344, at *5 (S.D. Fla. Oct. 6, 2017) ("Florida law thus fully supports Defendant's assertion that any allegation by Plaintiffs that the credit card charges are disputed does not equate to actual knowledge of an illegitimate debt on the part of the Defendant.").

Thus, Claimant has not sufficiently pleaded facts demonstrating that Ditech acted with actual knowledge that the charges for home inspections were illegitimate when it attempted to

collect them through the increased principal amount.  Therefore, Claimant cannot state a claim against Ditech for a violation of the FCCPA.

<u>Statute of Limitations</u>

The Consumer Representative contends that even if there is a valid claim for violation of the FCCPA, it is barred by the applicable statute of limitations.  Surresponse ¶ 92.  Violations of the FCCPA must be brought within two years of the date of the alleged violation.  Fla. Stat. § 559.77(4).  Since filing a foreclosure action is not a debt collection activity, *Trent v. Mortg. Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1362 (M.D. Fla. 2007), the relevant dates against which to measure the limitations period are those contained within the Ledgers.  In Claimant's exhibits, the most recent insurance disbursement is for an item with the description "Hazard Ins Disb" for $1,908 dated June 13, 2017.  *See* Surreply, Ex. 1 at 14.  The second most recent item contained therein is dated February 12, 2016.  *Id.* at 18.  The only disbursement that could conceivably be within the limitations period is the one dated June 13, 2017.  As for attorney fees, only the item for $1,035 dated October 2017 falls within the statute of limitations.  Therefore, even if Claimant could maintain an FCCPA claim on the merits, those charges would generally be barred by the limitations period for an FCCPA claim.

## **<u>CONCLUSION</u>**

Based on the foregoing, the Court sustains the Objection and disallows the Claim.


IT IS SO ORDERED.

Dated: March 4, 2024
    New York, New York

/s/ *James L. Garrity, Jr.*
    Hon. Judge James L. Garrity, Jr.
    United States Bankruptcy Judge