JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
RLevin@jenner.com
Richard Levin

*Attorneys for the Consumer Claims Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X
                                         :

In re                                         :        Chapter 11
                                         :

DITECH HOLDING CORPORATION, et al., :        Case No. 19-10412 (JLG)
                                         :

              Debtors.[1]       :        (Jointly Administered)
                                         :

                                         :        Related Docket Nos. 2326
----------------------------------------------------------X

## REPLY OF THE CONSUMER CLAIMS TRUSTEE
## IN SUPPORT OF THE PLAN ADMINISTRATOR AND CONSUMER CLAIMS
## TRUSTEE'S FIFTY-FOURTH OMNIBUS OBJECTION (NO BASIS CONSUMER
## CREDITOR CLAIMS) WITH RESPECT TO THE CLAIM OF
## TRAVIS SMITH (CLAIM 1549)

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "**Third Amended Plan**"), which created the Wind Down Estates. On February 22, 2022, the Court entered the Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief (ECF No. 3903) (the "**Closing Order**"). Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "**Remaining Wind Down Estate**") (Case No. 19-10412 (JLG) remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

The Consumer Claims Trustee submits this reply (the "**Reply**") in support of the *Plan Administrator and Consumer Claims Trustee's Fifty-Fourth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims)* (ECF No. 2326), filed on May 8, 2020 (the "**Fifty-Fourth Omnibus Objection**").[2] The Reply is submitted in opposition to the *Response of Travis Smith* (ECF No. 2664) filed on June 2, 2020 (the "**Response**"). The Consumer Claims Trustee respectfully represents as follows:

<u>Background</u>

<u>Preliminary Statement</u>

1.      Claimant Travis Smith (hereafter "**Claimant**") alleges that he was overcharged interest over the life of the loan and unfairly assessed pay-to-pay fees to make monthly mortgage payments by phone. Based upon the documentation provided and a review of publicly available records, the Trustee is unable to determine the full details of the underlying loan. Claimant provides the first page of a retail installment sales contract, indicating that the property is a manufactured home purchased for $64,130.00 in March 1998 with a thirty-year term at an annual interest rate of nine percent. The Property is located at 442 County Road 2234, Goshen AL, 36035 (the "**Property**").

---

[2] The Fifty-Fourth Omnibus Objection was a joint objection by the Consumer Claims Trustee and the Plan Administrator, because the Claimant asserted a secured claim. By the *Order Granting Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim* [ECF No. 4732],. (the "**Estimation and Classification Order**"), the Claim was classified as an unsecured Consumer Creditor Claim that is not a 363(o) Claim, as those terms are defined in the confirmed Third Amended Plan [ECF 1404]. Accordingly, the Plan Administrator has not remaining interest in, and is no longer a party to, this contested matter.

2.     It is unclear when Debtors began servicing the loan, though Claimant does include a letter dated November 21, 2014 from Green Tree regarding a payment on the account. Response at 5.

### The Claim and the Response

3.     On April 29, 2019, Claimant filed proof of claim 1549 (the "**Claim**") in these chapter 11 cases asserting an unsecured claim in the amount of $70,000.00[3]. Claim at 2. The Claim is based upon Claimant's concern that the principal balance on the loan has not decreased enough since origination, that the parties have been required to pay a monthly fee for making payments by phone, and for poor customer service. *Id.* at 1.

4.     The Plan Administrator and Consumer Claims Trustee filed the Fifty-Fourth Omnibus Objection on May 8, 2020, objecting to the Claim on the basis that such claim was determined to have no merit based on company review.

5.     On June 2, 2020, the Claimant filed his Response to the Fifty-Fourth Omnibus Objection. (ECF No. 2664) In his response, he alleges unfair and unreasonable fees and an unconscionably high interest rate.

6.     On June 12, 2020, a *Notice of Adjournment of Hearing* was filed on the Fifty-Fourth Omnibus Objection (ECF No. 2563). On May 6, 2021, an *Amended Notice of Adjournment of Hearing* was filed on the Fifty-Fourth Omnibus Objection (ECF No. 3359).

---

[3] The precise amount of the claim is unclear from the Claim. However, Claimant clarifies in his response that the amount of damages sought is actually $39,756.00. Response at 2.

3

7.     On June 2, 2020, the Claimant filed his Response to the Fifty-Fourth Omnibus Objection. (ECF No. 2664). In it, Claimant seeks reimbursement of $2,604 for pay-by-phone charges imposed by Ditech. Response at 2. Claimant further seeks $39,756 for "unconscionably high" interest paid over the life of the loan.[4]

8.     Claimant contends that Ditech "demonstrated unfair, abusive and unwarranted practices while servicing my loan". Response at 2. Allegedly, Ditech insisted that Claimant make payments by phone, and charged Claimant between $10-$12 per payment. *Id.* Ditech allegedly "made this method seem appealing because of the threat of larger late fees". *Id.* Claimant estimates that the total expended upon these fees between 2000 and 2013 is $2,604. *Id.* Claimant asks that the court consider awarding them interest on this amount. *Id.*

9.     Claimant next argues that the nine-percent, non-variable interest rate on their loan is illegal and falls into the category of "unconscionably high-interest rates". Response at 2. He argues that it is 100% higher than "the average interest rate of 4.5% over the applicable time frame". *Id.* Based upon Claimant's credit score of over 700, he believes that he should have qualified for an interest rate closer to the market average. *Id.*

10.    Claimant acknowledges that the initial loan agreement was made with Bombardier Capital. Response at 3. However, he claims that after the loan was "sold" to Ditech, Ditech failed to "perform its due diligence to ensure that it was taking on loans that were legal and serviceable". *Id.* By charging Claimant the interest rate

---

[4] Claimant cites to Alabama Legislative Code §6-2-34, which sets forth a six year statute of limitations on various civil personal/real property offenses.

4

over the past seventeen years, Claimant estimates Ditech has caused him to overpay his mortgage by three-hundred percent. *Id.* He calculates the overpayment of the mortgage at $516 per month. *Id.* In keeping with the statute of limitations under Alabama Legislative Code §6-2-34, Claimant seeks just six years of overpayments, for a total of $37,152.00, plus interest. *Id.*

11.     Attached to the Response are four documents. First, an April 2009 checking account statement for Travis and Sarah Smith, showing a $10 "Speedpay" charge. Response at 4. Claimant also includes a November 21, 2014 letter from Green Tree confirming a monthly mortgage payment of $528, which includes a $12.00 service fee paid to Western Union Speedpay. *Id.* at 5.

12.     Claimant attaches a copy of the six-year statute of limitations codified at Alabama Legislature Code §6-2-34, highlighting section (5) "[a]ctions for the recovery of money upon a loan, upon a stated or liquidated account or for arrears of rent due on a parol demise;", and section (9) "[a]ctions upon any simple contract or speciality not specifically enumerated in this section". Response at 6.

13.     Finally, Claimant attaches the first page of the Manufactured Home Real Estate Installment Contract for the purchase of the property (the "**Purchase Contract**"). Response at 7. The Truth-in-Lending Disclosures show that Claimant financed the purchase price of $71,910.00 to be paid in monthly installments over a thirty-year term at the annual rate of nine-percent. *Id.* The total sale price, including anticipated interest payments is $194,370.00. *Id.*

14.     Under the procedure established by the Claim Procedures Order, the filing of the Response caused an adjournment of the Fifty-Fourth Omnibus Objection as to the Claim so that the Court could conduct a Sufficiency Hearing (as defined in the Claim Procedures Order). The claim procedures dictate that the legal standard of review at a Sufficiency Hearing will be the equivalent to the standard applied upon a motion to dismiss for failure to state a claim upon which relief can be granted. See Claim Procedures Order, § 3(iv)(a).

### The Motion to Estimate

15.     On March 24, 2023, the Consumer Claims Trustee and Plan Administrator filed the *Consumer Claims Trustee and Plan Administrator's Joint Omnibus Motion to Reclassify Certain Proofs of Claim and the Consumer Claim's Trustee's Motion to Estimate for Purposes of Distribution Reserves* [ECF No. 4662]. (the "**Estimation Motion**").

16.     The Estimation Motion sought to estimate Claim 1549 at $39,756.00 for the purpose of setting a distribution reserve. The Estimation Motion further requested that the Claim be established as a Class 6 Consumer Creditor Claim that is not a 363(o) unsecured Consumer Creditor Claim, as defined by the Third Amended Plan. Estimation Motion at 17.

17.     By order dated May 10, 2023, Claim 1549 was estimated at $39,756.00 for the purposes of distribution reserves and the claim was classified as a non 363(o), Class 6 Consumer Creditor Claim, as defined in the Third Amended Plan. Estimation and Classification Order at 6.

## Jurisdiction

18.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Reply

### A. Rule 12(b)(6) of the Federal Rules of Civil Procedure Is the Applicable Pleading Standard

19.    A filed proof of claim is "deemed allowed, unless a party in interest…objects." 11 U.S.C. §502(a). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant bears the burden to demonstrate the validity of the claim. *See Residential Capital, LLC*, 2016 WL 796860, at *9 (S.D.N.Y. 2016); *In re Motors Liquidation Co.*, 2012 WL 1886755, at *3 (S.D.N.Y. 2012).

20.    Additionally, section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. § 502(b)(1).

21.    Although claims submitted by *pro se* claimants are construed liberally, such claims must nonetheless be supported by specific and detailed factual allegations that provide a fair understanding for the basis of the claim and the legal grounds for recovery against a debtor. *Kimber v. GMAC Mortgage, LLC* (*In re Residential Capital, LLC*), 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (citing *Iwachiw v. New York City Bd. of Elections*, 126 Fed. Appx. 27, 29 (2d Cir. 2005)). As such, "conclusory allegations, unwarranted factual deductions or legal conclusions

masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). See also *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 413 (S.D.N.Y. 2010); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d. Cir. 1994).

22.     Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed due to a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); see also Fed. R. Bankr. P. 7012 (incorporating Rule 12(b)(6)). The adequacy of the Claim should be analyzed in accordance with the standards established under Rule 12(b)(6), which requires the claimants to allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Owens v. Textron Financial Corp.*, 2014 WL 3887181, at *4 (S.D.N.Y. July 14, 2014) ("Moreover, because plaintiff has not identified any cognizable legal theory applicable here, the Court cannot reasonably infer defendant is liable under any such theory").

23.     A claimant cannot meet this Rule 12(b)(6) standard if the pleadings are clear that an affirmative defense, such as res judicata, bars the claim. *See Thompson v. Cty. of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994).

24.     Here, even a generous reading of the Claim and the Response does not support any viable claim for recovery against the Consumer Creditor Reserve as a matter of law.

### B. Claimant Fails to Adequately Plead a Claim Under Federal Rule of Civil Procedure 8(a)

25.    Under Fed. R. Civ. P. 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" such that a defendant "has fair notice of what the … claim is and the grounds upon which it rests". *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007); *Ashcroft v. Iqbal*, 129 U.S. 1937, 1949-51 (2009). Courts require that a pleading contain "enough facts to state a claim for relief that is plausible on its face". *Twombly* at 770. Each allegation in a pleading must be "simple, concise and direct" but no technical pleading form is required. Fed. R. Civ. P. 8(d)(1). Courts are obliged to construe pleadings "so as to do justice". Fed. R. Civ. P. 8(e).

26.    Dismissal of a pleading under Rule 8 is appropriate where "it presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims". *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

27.    Neither the Claim nor the Response state any legal causes of action. Though Claimant complains of unreasonable fees and interest, and poor customer service, he does not state a valid legal claim against Ditech. The facts provided are too vague to enable the Trustee to evaluate any alleged wrongdoing.

28.    Without sufficient information to ascertain the claims asserted against Debtors, the Trustee is unable to determine the nature and basis of the Claim. This is precisely the problem Rule 8 was designed to prevent. "In accordance with the liberal pleading standards of Rule 8, a plaintiff must disclose sufficient information

to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery". *In re Marketxt Holdings Corp.,* 361 B.R. 369, 384 (Bankr. S.D.N.Y. 2007), citing *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000), quoting *Ricciutti v. N.Y. City Trans. Auth.*, 941 F.2d 119, 123 (2d. Cir. 1991), (internal quotation marks omitted).

## C. Claimant Fails to Assert Facts Sufficient to State a Plausible Claim Under Rule 12(b)(6)

29.     If the Claim is not dismissed for failure to comply with Fed. R. Civ. P. 8, it should be dismissed under Fed. R. Civ. P. 12(b)(6). Claimant fails to plead any causes of action. He makes his concerns clear, but provides insufficient facts to support his contention that Ditech breached any duty or agreement. He does not articulate the legal theories under which he pursues relief for any of these alleged acts by Debtor.

30.     Although pro se pleadings are held to a less stringent standard, liberal construction of those pleadings "does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action". *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014) (citations omitted). Nor is the Trustee required to write the Claimant's complaint for him. Nevertheless, the Trustee will construe an alleged breach of contract claim, as well as claims under the Truth in Lending Act.

i.   **Claimant Fails to State a Claim for Breach of Contract**

a.  **Claimant Cannot Establish Privity of Contract with Debtors**

31.     To establish a breach of contract claim under Alabama law, a plaintiff must demonstrate "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's non-performance, and (4) damages". *Jones v. Alfa Mut. Ins. Co.*, 875 So.2d 1189, 1195 (Ala. 2003) (citations omitted).

32.     Claimant seeks $37,152.00 in damages for what he deems as overpayment on his loan due to an "illegal" interest rate of nine percent. He acknowledges that original financing agreement was with Bombardier Capital, but contends that Ditech failed to "perform its due diligence to ensure that it was taking on loans that were legal and serviceable", and that, in charging that interest rate for "the last 17 years", Ditech further caused Claimant to have "overpaid [his] mortgage by over 300%". Response at 3.

33.     This alleged breach cannot form the basis of a breach of contract claim against Ditech because Ditech was not in privity when the original contract was formed between Claimant and Bombardier Capital. To state a claim for breach of contract, Claimant needed to have shown that he was in privity with Ditech, such that Ditech's obligations to perform under the Mortgage ran to Claimant.

34.     In *James v. Litton Loan Servicing, L.P.*, No. 4:09-CV-147 CDL, 2011 WL 59737 (M.D. Ga. Jan. 4, 2011), the district court granted summary judgment to the defendant servicer on the borrower's breach of contract claim, finding:

> Plaintiffs did not ... allege that they had a contract with Litton, nor
> did they point to any evidence of such contract. As a loan servicer,
> Litton is not a party to or an assignee of the Note itself. In the
> absence of evidence of a contract between Plaintiffs and Litton,
> Plaintiffs' breach of contract claim fails.

(*Id.* at *11); *see also Edwards v. Ocwen Loan Serv., LLC*, 24 F. Supp. 3d 21, 28 (D.D.C.

2014) (dismissing borrower's breach of contract and breach of implied covenant claims

against servicer, finding they were insufficient as a matter of law and noting: "Judges

around the country—including at least two of my colleagues—have held that a loan

servicer, as a lender's agent, has no contractual relationship or privity with the

borrower and therefore cannot be sued for breach of contract.") as adopted by *Bank

of Am., N.A. v. Zaskey*, No. 9:15-CV-81325, 2016 WL 2897410, at *6–7 (S.D. Fla. May

18, 2016).

35.    Absent contractual privity with Ditech, Claimant cannot raise a

claim for contract breach regarding the interest rate set at origination.

### b.  Claimant Does Not Adequately Allege Unconscionability

36.    Even if Claimant could establish the existence of a binding

contract with Debtors, and prove that he performed under the contract but that

Debtors did not, he fails to demonstrate that the "unconscionable" interest rate term

entitles him to damages. Claimant seeks reimbursement of six years' worth of

mortgage payments, for a total of $37,152.00. Response at 7. Even if he could state a

valid legal claim against Ditech regarding the interest rate, he does not demonstrate

why he would be entitled to refund of his entire monthly mortgage payment.

37.    In fact, monetary damages are not available at all as a remedy for

an unconscionable contract term. "The equitable theory of unconscionability has

never been utilized to allow for the affirmative recovery of money damages. The common law does not empower a court addressing allegations of unconscionability to do more than refuse enforcement of the unconscionable section or sections of a contract so as to avoid an unconscionable result". *Cowin Equipment Co., Inc. v. General Motors Corp.*, 734 F.2d 1581, 1582 (11th Cir. 1984). The Alabama Supreme Court cited with approval the ruling in *Cowin* as "holding that the doctrine of unconscionability is not available to obtain affirmative relief, but only as a defense". *Williams v. E.F. Hutton Mortg. Corp.*, 555 So.2d 158, 161 (Ala. 1989), citing *Sanders v. Colonial Bank of Alabama*, 551, So.2d 1045, 1045 (Ala. 1989). *See also Pratt v. Colonial-Sales-Lease Rental, Inc.,* 799 F.Supp. 1132, 1133-34 (N.D. Ala. 1992).

38.     In any event, if the interest rate charge breached the contract, as Claimant alleges, the statute of limitations bars any claim on that basis. The statute of limitations on contract actions in Alabama is six years. § 6-2-34, Ala. Code 1975. The statute of limitations begins to run when the contract is breached. § 6-2-30. *Seybold v. Magnolia Land Co.,* 376 So.2d 1083, 1085 (Ala. 1979) (collecting cases). ("The very basic and long settled rule of construction of our courts is that a statute of limitations begins to run in favor of the party liable from the time the cause of action 'accrues'. The cause of action 'accrues' as soon as the party in whose favor it arises is entitled to maintain an action thereon". *Wheeler v. George*, 39 So.3d 1061, 1084 (Ala. 2009) (citations and internal quotations omitted)). By his account, Claimant paid his mortgage for close to two decades before raising concerns over the interest rate for

the first time during these Chapter 11 Cases. He cannot now object to a contract term

to which he explicitly agreed when he signed the Purchase Contract in May 1998.

> Statutes of limitations are founded in part at least on general experience that claims which are valid usually are not allowed to remain neglected, and that the lapse of years without any attempt to enforce a demand creates a presumption against its original validity or that it has ceased to exist. The basic principle most generally relied on by the authorities is that statutes of limitations are statutes of repose, the object of which is to prevent fraudulent and stale claims from springing up after long periods of time and surprising the parties or their representatives when evidence has become lost or the facts have become obscure from the lapse of time. 53 C.J.S. Limitations of Actions § 1, at 902-903, and authorities cited therein.

*Seybold* at 1086.Any issues Claimant had with the terms of the contract at the time

of origination in 1998 have long been barred.

39.     Claimant concedes the six-year statute of limitations in his

Response but misunderstands its application. He contends that the statute of

limitations bars him only from seeking *damages* that accrued more than six years

ago. In fact, his failure to bring a cause of action of any sort within the applicable

time limits bars him from seeking any monetary relief.

## ii.   Claimants Fail to State a Claim Under the Truth in Lending Act

### a.   Claimant Does Not Allege Any Failure to Disclose Credit Terms

40.     Though Claimant complains of what he characterizes as an

unconscionable interest rate, he does not allege that he ever misunderstood the rate

being charged under the Purchase Contract. Instead, he signed the Purchase

Contract and paid the mortgage for close to twenty years before disputing the interest

rate set at origination. Based upon the records provided, he did not formally dispute

the interest rate with Ditech once it began servicing the loan, instead waiting until years later, once Ditech filed for bankruptcy.

41.     The Truth in Lending Act ("**TILA**") has "the broad purpose of promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers". *Parish v. Blazer Financial Services, Inc.* 868 So. 2d 406, 410 (Ala. 2003), citing *Ford Motor Credit Co. v. Millhollin*, 444 U.S. 555, 559 (1980). TILA's implementing regulations are set forth in Regulation Z, 12 C.F.R. Pt. 1026, which is accompanied by official interpretations at 12 C.F.R. Pt. 1026, Supp. I, Pts. 1-5 (the "Official Interpretations"). TILA requires servicers and creditors to timely credit payments on home loans, credit cards, and other forms of open-end credit. 15 U.S.C. §§1639f, 1666c(a).

42.     TILA applies to credit transactions involving loans where the creditor takes a security interest in the real or personal property intended for use as the borrower's principal dwelling. 15 U.S.C. §1603(3). The implementing regulations further impose limitations on mortgages that are subject to the requirements of 12 C.F.R. §1026.32, prohibit certain acts or practices in connection with credit secured by a dwelling in 12 C.F.R. §1026.36 and credit secured by a consumer's principal dwelling in 12 C.F.R. §1026.35.

> Subpart E contains special rules for mortgage transactions. Section 1026.32 requires certain disclosures and provides limitations for closed-end credit transactions and open-end credit plans that have rates or fees above specified amounts or certain prepayment penalties. Section 1026.33 requires special disclosures, including the total annual loan cost rate, for reverse mortgage transactions. Section 1026.34 prohibits specific acts and practices in connection with high-cost mortgages, as defined in §1026.32(a). Section 1026.35

> prohibits specific acts and practices in connection with closed-end
> higher-priced mortgage loans, as defined in §1026.35(a). Section
> 1026.36 prohibits specific acts and practices in connection with an
> extension of credit secured by a dwelling. Sections 1026.37 and
> 1026.38 set forth special disclosure requirements for certain closed-
> end transactions secured by real property or a cooperative unit, as
> required by § 1026.19(e) and (f).

12 C.F.R. § 1026.1(d)(5).

43.    Under TILA, most closed-end credit disclosures and other obligations are required before consummation, (Reg. Z § 1026.17(b)), so a violation of those duties will run from the date of consummation itself. *Moore v. Mortgage Elec. Registration Sys., Inc.*, 848 F. Supp. 2d 107, 120–121 (D.N.H. 2012) (*pro se*) (one-year limitation period applies to claims under Reg. Z as well as statute, and begins to run on date disclosures should have been made).

44.    TILA and Regulation Z impose other obligations after consummation. Examples include: notifying a consumer when the rate on an adjustable rate loan changes (Reg. Z § 1026.20(c)); crediting mortgage payments as of the date of receipt (15 U.S.C. § 1639f(a)); and providing a periodic statement each billing cycle (15 U.S.C. § 1638(f)(1); Reg. Z § 1026.41.).

45.    Courts addressing post-consummation disclosures and misconduct have agreed that the limitations period should be measured from the date of the disclosure or event—not the date of consummation. See *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 708 (11th Cir. 1998) ("we apply the general rule that equitable tolling applies to all federal statutes unless the statute states otherwise. *Holmberg*, 327 U.S. at 394–95, 66 S.Ct. 582. We therefore agree with the Third, Sixth,

and Ninth Circuits that the statute of limitations in TILA is subject to equitable

tolling."). However, Claimant does not assert any of these matters as violations.

### b. Assignee Liability

46.     Under TILA, Claimant could seek monetary damages from Ditech

only if Ditech were a creditor, not simply a servicer. The loan originated with

Bombardier Capital and Claimant provides nothing to show that the Purchase

Contract was ever assigned to Ditech.

47.     Ditech, as servicer, cannot be held liable under 15.U.S.C. § 1640.

The text of TILA's civil damages provision only provides for creditor liability—not

servicer liability. 15 U.S.C. § 1640(a) ("... any creditor who fails to comply with any

requirement imposed under this part ...").

48.     TILA has specifically addressed the liability of assignees under

the Act and provides:

> [e]xcept as otherwise specifically provided in this subchapter, any
> civil action for a violation of this subchapter or proceeding ... which
> may be brought against a creditor may be maintained against any
> assignee of such creditor only if the violation for which such action or
> proceeding is brought is apparent on the face of the disclosure
> statement, except where the assignment was involuntary.... [A]
> violation apparent on the face of the disclosure statement includes
> but is not limited to (1) a disclosure which can be determined to be
> incomplete or inaccurate from the face of the disclosure statement or
> other documents assigned, or (2) a disclosure which does not use the
> terms required to be used by this subchapter.

15 U.S.C. § 1641(a).

49.     A loan servicer may be liable under TILA only if it currently owns

or previously owned the mortgage note at issue. *See Stump v. WMC Mortgage Corp.,*

No. Civ. A. 02–326, 2005 WL 645238, at *10 (E.D. Pa. Mar.16, 2005) ("As TILA

17

imposes liability only on purchasers and assignees of mortgages, loan servicers cannot be liable under TILA." (citing 15 U.S.C. § 1641(f))); *Clark v. Fairbanks Capital Corp.,* No. 00–C–7778, 2003 WL 21277126, at *3 (N.D. Ill. Jun.2, 2003) ("TILA contains no provision expressly providing for the liability of servicing agents.... However, a servicing agent may be treated as an assignee for liability purposes if it is or was, at some point in time, the owner of the obligation." (citing 15 U.S.C. § 1641(f))). *Patton v. Ocwen Loan Servicing, LLC*, No. 6:11-CV-445-ORL-19, 2011 WL 1706889, at *6 (M.D. Fla. May 5, 2011)

50.    To the extent Claimant alleges Ditech failed to "perform its due diligence to ensure that it was taking on loans that were legal and serviceable", he fails to plead whether Ditech ever owned the loan to establish that Ditech had any obligation to modify the interest rate on the original contract when it began servicing the loan.

51.    Even assuming that Ditech was an assignee, an action for rescission under § 1635 is a distinct cause of action from a civil action for a violation of the TILA's disclosure requirements. See *Rowland v. Novus Fin. Corp.*, 949 F. Supp. 1447, 1458 (D.Haw.1996).

52.    TILA clearly states that if a consumer is eligible for rescission under § 1635, the consumer may seek rescission of the transaction as against the creditor or "as against any assignee of the obligation." 15 U.S.C. § 1641(c) (emphasis added). *Parker v. Potter*, 232 F. App'x 861, 865 (11th Cir. 2007).

53.    Pursuant to Regulation Z,

> The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice [of right to rescind] …, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first.

12 CFR 1026.23(a)(3)(i).

54.     Ditech had no affirmative duty to change the terms of the underlying mortgage contract. Claimant has not shown that Ditech was a creditor or assignee under TILA, such that he could have pursued civil damages. Claimant does not allege any failure to provide notice of right to rescind or material disclosures. Any remedy sought should have been brought against the lender at origination. Claimant failed to do so within the applicable statute of limitations the Purchase Contract was consummated on March 31, 1998. Claimant further fails to plead whether Ditech ever owned the loan or was an assignee. Even if Ditech was liable, the right to rescind expired years ago, and Claimant fails to allege he ever sough to rescind the contract. For each of the foregoing reasons, Claimant is precluded from seeking relief now.

### c.  Speedpay Fees

55.     Claimant contends that Ditech charged "unfair and unreasonable fees" associated with payments made by phone. Response at 1. He estimates that these charges, of between $10 and $12 per payment, occurred between 2000 and 2013 and totaled $2,604. *Id.* In support, he attaches a single bank statement from April 2009, showing a $10.00 fee debited on April 7, 2009 and identified as "Speedpay". Response at 4. He further attaches a letter from Green Tree, dated November 21,

2014, which confirms a bank account debit in the amount of $528.00, which includes "a $12.00 service fee paid to Western Union Speedpay®". *Id.* at 5.

56.     TILA allows servicers to specify the terms in which a payment may be made. See, 12 C.F.R. §1026.36(c)(1)(iii) (indicating that servicers may "specif[y] in writing requirements for the consumer to follow in making payments"); Official Interpretations at §1026.36(c)(1)(iii) ¶ 1 ("The servicer may specify reasonable requirements for making payments in writing".); *Fridman v. NYCB Mortg. Co., LLC*, 780 F.3d 773, 782 (7th Cir. 2015)("[A] servicer may require customers to pay using a menu of ways that it specifies".). In the absence of specific requirements, or an agreement to electronic fund transfer, the servicer must accept payment "by cash, money order, draft, or other similar instrument in properly negotiable form." Official Interpretations at § 1026.36(c)(1)(iii) ¶ 3. There is no requirement under TILA or Regulation Z that servicers accept payment by credit or debit card, see, *Id.*; *Fridman*, 780 F.3d at 782. "Regulation Z thus guarantees a consumer the right to have her mortgage payment credited as soon as she authorizes payment. *See*, *Fridman*, 780 F.3d at 780. It does not, however, guarantee consumers the right to make online payments free of charge." *Kier v. Ocwen Loan Servicing, LLC*, 122 F. Supp. 3d 786, 790 (N.D. Ill. 2015) (finding no violation of the prompt crediting rule where servicer imposed a standard $10 fee to pay online, but did not impose any fee as a result of a delay in processing a timely online payment).

57.     Claimant asserts that Ditech "represented that their Speedpay service, which was $10 per transaction, was the only available payment method to

avoid a late charge". Response at 2. Claimant fails to allege that this statement is inaccurate. According to the terms of the installment agreement, payments were due on the fifth of each month. *Id.* at 7. The Regions Bank statement attached to the Response shows a payment to Green Tree and a Speedpay charge on April 7, 2009, two days past the due date. A payment mailed on the seventh of the month would not likely arrive on time.[5] The Green Tree letter dated November 21, 2014 confirms that Claimant authorized a mortgage payment on October 3, 2014, with a payment date of November 30, 2014. *Id.* at 5. A payment made on the 30th of the month would be well-past the due date.

58.     Beyond the two documents above, Claimant provides no support for his contention that he was unfairly charged a Speedpay fee on a monthly basis for thirteen years. Nor does he suggest that Ditech prohibited him from sending payments by alternative methods, for example by timely remitting a check or money order. Instead, the evidence seems to suggest that Claimant may have regularly been late on his payments, such that wiring the funds to Ditech was, in fact, the only way to avoid late fees.

59.     Moreover, both the bank statement and the Green Tree letter confirm that the Speedpay service fee is not assessed by Ditech but by Western Union Speedpay®, an outside fee-transfer service

---

[5] It is possible that the Purchase Contract (a complete copy of which is not part of the record) provided a short grace period before assessing late fees, but a payment mailed two days after the due date would still be considered late.

60.     Where, as here, an objection refuting at least one of the claim's essential allegations is asserted, the claimant bears the burden to demonstrate the validity of the claim. See *Residential Capital*, LLC, 2016 WL 796860, at *9 (S.D.N.Y. 2016); *In re Motors Liquidation* Co., 2012 WL 1886755, at *3 (S.D.N.Y. 2012). The Claimant has failed to meet her/his/their burden of proof as they has/have provided no specific factual allegations that would support their conclusory statements.

## Reservation of Rights

61.     The Consumer Claims Trustee hereby reserves the right amend, modify, or supplement this Reply.

WHEREFORE the Consumer Claims Trustee respectfully requests entry of an order denying the request for relief in the Claims and such other or relief as is just.

Dated: March 19, 2024
        New York, New York

*/s/ Richard Levin*
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
RLevin@jenner.com
Richard Levin

*Attorneys for the Consumer Claims Trustee*