JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
RLevin@jenner.com
Richard Levin

*Attorneys for the Consumer Claims Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
In re                                                       :   Chapter 11
                                                            :
DITECH HOLDING CORPORATION, et al.,                         :   Case No. 19-10412 (JLG)
                                                            :
        Debtors.[1]                                         :   (Jointly Administered)
                                                            :
                                                            :   Related Docket No. 2141
------------------------------------------------------------X

### REPLY OF THE CONSUMER CLAIMS TRUSTEE IN SUPPORT OF THE CONSUMER CLAIMS TRUSTEE'S FIFTEENTH OMNIBUS <u>OBJECTION WITH RESPECT TO THE CLAIM OF SHERLY WHITE (21543)</u>

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "**Third Amended Plan**"), which created the Wind Down Estates. On February 22, 2022, the Court entered the Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief (ECF No. 3903) (the "**Closing Order**"). Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "**Remaining Wind Down Estate**") (Case No. 19-10412 (JLG) remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

The Consumer Claims Trustee submits this reply (the "**Reply**") in support of the *Consumer Claims Trustee's Fifteenth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims)* (ECF No. 2141), filed on April 10, 2020 (the "**Fifteenth Omnibus Objection**"). The Reply is submitted in opposition to the *Response of Sheryl White* (ECF No. 2533) filed on May 16, 2020 (the "**Response**"). The Consumer Claims Trustee respectfully represents as follows:

## Background

### The Loan

1. On or about October 26, 2005, Steven S. Work and Sheryl L. Work (n.k.a. Sheryl L. White) (hereafter "**Claimant**") executed a promissory note in favor of Ratestar, Inc., in the amount of $180,500.00 (the "**Note**"). The Note was secured by a mortgage (the "**Mortgage**", together with the Note, the "**Mortgage Loan**") on the property located at 109 Magee Hill Road, Hinesburg, Vermont (the "**Property**"). *See* Note and Mortgage, attached as **Exhibits A and B**. [2]

---

[2] "The Court can properly take judicial notice of matters of public record. *See Sutton ex rel. Rose v Wachovia Sec.*, LLC, 208 F. App'x. 27, 30 (2d Cir. 2006) (holding that filings and orders in other courts "are undisputably matters of public record"); *Ferrari v. County of Suffolk*, 790 F.Supp.2d 34, 38 n.4 (E.D.N.Y. 2011) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case sub judice"); *Kaplan v Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) ("[Courts] must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice".); *Leon v. Shmukler*, 992 F.Supp.2d 179, 184 (E.D.N.Y. 2014) ("It is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records"); *Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (in contract action, court can take judicial notice of underlying contract as a document 'integral to the complaint').

2. On November 18, 2008, Mr. Work and Claimant divorced, and Claimant was awarded ownership of the Property. *See* Divorce Decree, attached as **Exhibit C**.

3. On May 23, 2011, the Mortgage was assigned to BAC Home Loan Servicing, LP. *See* 2011 Assignment of Mortgage, attached as **Exhibit D**. On January 14, 2013, Bank of America, N.A. and Green Tree Servicing, LLC initiated state court action to foreclose on the Property. *See* Foreclosure Docket, attached as **Exhibit E**.

4. The Mortgage was assigned to Green Tree Servicing, LLC on June 6, 2013. *See* Assignment of Mortgage, attached as **Exhibit F**.

5. On December 8, 2016, the Claimant entered into an agreement to modify the mortgage agreeing to a new principal balance of $255,434.68 and ongoing monthly payments of $1,601.27 (the "**Modification**"). *See* Modification Agreement, attached as **Exhibit G**. The Modification identifies Fannie Mae as the owner of the Claimant's Mortgage Loan. *Id.* at 3. The state foreclosure action was dismissed on January 23, 2017. *See* Foreclosure Docket, attached as Exhibit E, at 2.

### The Claim and the Response

6. On April 25, 2019, Claimant filed proof of claim 21543 (the "**Claim**") in these chapter 11 cases asserting an unsecured claim in the amount of $174,755.76. Claim at 2. The basis of the Claim is listed as "servicing errors". Claim at 2. There were no documents attached to the Claim.

7. The Consumer Claims Trustee filed the Fifteenth Omnibus Objection on April 20, 2020, objecting to the Claim on the basis that the Claim lacked sufficient information or documentation to substantiate the claim. ECF 2141 at 9.

8. On May 16, 2020, the Claimant filed her Response to the Fifteenth Omnibus Objection. ECF 2533. In her response, she alleges that she requested a principal reduction before Ditech began servicing the mortgage and, based on Ditech's statements attached to her Response, she believes she did receive a principal reduction that was never applied to her balance. Response at 1.

9. She also claims Ditech never responded to her requests for information even after she wrote a letter to them. Response at 1.

10. Her other allegations focus upon "numerous fees" charged to her account including late fees. Response at 1. In support of her claim, she relies on a mortgage statement from Ditech dated November 3, 2016 showing $1,625 in corporate advances, a January 21, 2017 statement showing $960 in corporate advances, a statement dated May 3, 2018 showing past unpaid amounts of $689.49, and a year-end statement dated January 9, 2019 showing $639.37 paid to late fees. Response at 3–4, 7, 10–13.

11. Her remaining allegation is that on April 8, 2019, Ditech failed to issue an escrow overage check in her name only, instead including her co-borrower, Steven Work. Response at 1–2. She asserts that because Mr. Work had transferred title to her and she had sent Ditech "quitclaim documents several times" that Ditech erred by failing to remove Mr. Work's name from the check. Response at 2.

12. Under the procedure established by the Claim Procedures Order, the filing of the Response caused an adjournment of the Fifteenth Omnibus Objection as to the Claim so that the Court could conduct a Sufficiency Hearing (as defined in the Claim Procedures Order). The claim procedures dictate that the legal standard of review at a Sufficiency Hearing will be the equivalent to the standard applied upon a motion to dismiss for failure to state a claim upon which relief can be granted. See Claim Procedures Order, § 3(iv)(a).

13. On May 12, 2020, a *Notice of Adjournment of Hearing* was filed on the Fifteenth Omnibus Objection. ECF 2340.

### The Motion to Estimate

14. On March 23, 2023, the Consumer Claims Trustee filed the *Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim.* [ECF No. 4650]. (the "**Estimation Motion**").

15. The Estimation Motion sought to estimate Claim 21543 at $174,755.76 for the purpose of setting a distribution reserve. The Estimation Motion further requested that the Claim be classified as a Class 6 Consumer Creditor Claims that was not a 363(o) unsecured Consumer Creditor Claim, as defined by the Third Amended Plan. Estimation Motion at 17.

16. By order dated May 11, 2023, Claim 21543 was estimated at $174,755.76 and classified as a Class 6 Consumer Creditor Claim that is not a 363(o) Claim, as defined in the Third Amended Plan. *Order Granting Consumer Claims*

*Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim* at 6. [ECF No. 4733]. (the "**Estimation and Classification Order**").

<u>Jurisdiction</u>

17. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

<u>Reply</u>

**A. Rule 12(b)(6) of the Federal Rules of Civil Procedure Is the Applicable Pleading Standard**

18. A filed proof of claim is "deemed allowed, unless a party in interest…objects." 11 U.S.C. §502(a). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant bears the burden to demonstrate the validity of the claim. *See Residential Capital, LLC*, 2016 WL 796860, at *9 (S.D.N.Y. 2016); *In re Motors Liquidation Co.*, 2012 WL 1886755, at *3 (S.D.N.Y. 2012).

19. Additionally, section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. § 502(b)(1).

20. Although claims submitted by *pro se* claimants are construed liberally, such claims must nonetheless be supported by specific and detailed factual allegations that provide a fair understanding for the basis of the claim and the legal grounds for recovery against a debtor. *Kimber v. GMAC Mortgage, LLC* (*In re*

*Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (citing *Iwachiw v. New York City Bd. of Elections*, 126 Fed. Appx. 27, 29 (2d Cir. 2005)). As such, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). See also *Barberan v. Nationpoint*, 706 F.Supp. 2d 408, 413 (S.D.N.Y. 2010); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d. Cir. 1994).

21. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed due to a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); see also Fed. R. Bankr. P. 7012 (incorporating Rule 12(b)(6)). The adequacy of the Claim should be analyzed in accordance with the standards established under Rule 12(b)(6), which requires the claimants to allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l,* 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); see also *Owens v. Textron Financial Corp.*, 2014 WL 3887181, at *4 (S.D.N.Y. July 14, 2014) ("Moreover, because plaintiff has not identified any cognizable legal theory applicable here, the Court cannot reasonably infer defendant is liable under any such theory").

22. A claimant cannot meet this Rule 12(b)(6) standard if the pleadings are clear that an affirmative defense, such as res judicata, bars the claim. *See Thompson v. Cty. of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994).

23. Here, even a generous reading of the Claim and the Response does not support any viable claim for recovery against the Consumer Creditor Reserve as a matter of law.

### B. The Claimant Fails to Adequately Plead a Claim Under Federal Rule of Civil Procedure 8(a)

24. Under Fed. R. Civ. P. 8(a), complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" such that a defendant "has fair notice of what the … claim is and the grounds upon which it rests". *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007); *Ashcroft v. Iqbal*, 129 U.S. 1937, 1949-51 (2009). Courts require that a pleading contain "enough facts to state a claim for relief that is plausible on its face". *Twombly* at 770. Rule 8 does not require " 'detailed factual allegations', but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation". *Ashcroft* at 678, citing *Twombly* at 555.

25. Neither the Claim nor the Response meet these minimum pleading standards. Claimant fails to allege any cause of action within her claim or Response. Instead, she makes generalized allegations of wrongdoing based upon assumptions not supported by the documents she relies upon as the basis of her claim.

26. Without sufficient information to ascertain the claims asserted against Debtors, the Trustee is unable to determine the nature and basis of the Claim. This is precisely the problem Rule 8 was designed to prevent. "In accordance with the liberal pleading standards of Rule 8, a plaintiff must disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is

complaining about and to know whether there is a legal basis for recovery". *In re Marketxt Holdings Corp.,* 361 B.R. 369, 384 (Bankr. S.D.N.Y. 2007), citing *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000), quoting *Ricciutti v. N.Y. City Trans. Auth.*, 941 F.2d 119, 123 (2d. Cir. 1991), (internal quotation marks omitted).

### C. The Claimant Fails to Assert Facts Sufficient to State a Plausible Claim Under Rule 12(b)(6)

27.  If the Claim is not dismissed for failure to comply with Fed. R. Civ. P. 8, it should be dismissed under Fed. R. Civ. P. 12(b)(6). Claimant fails to plead any causes of action. Her primary concerns are that Ditech failed to credit her payments, erroneously charged her late fees, and issued a check for escrow surplus in both borrowers' names making it impossible for her to cash. She also states that Ditech refused to provide her with information regarding her account even after she wrote a letter requesting the information. She does not articulate the legal theories under which she pursues relief for any of these alleged acts by Debtor.

28.  Although pro se pleadings are held to a less stringent standard, liberal construction of those pleadings "does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action". *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014) (citations omitted). Nor is the Trustee required to write the Claimant's complaint for her.

1. **Claimant Does Not Adequately Allege a Breach of Contract**

   a. **Principal Reduction**

   29. Claimant makes general allegations that she "had requested a principal reduction some years before Ditech began servicing the account, and according to their own statement it would appear that [she] received one. However, they never deducted this payment from the balance." Response at 1. In support of her contention, the Claimant provides a limited summary of Ditech servicing transactions from January 1, 2016 through December 27, 2016 showing a principal adjustment of $90,408.49 and a payment of $30,467.57 on December 27, 2016. Response at 5–6. She also points to an unexplained payment on her payment history dated December 28, 2016 in the amount of $50,287.58.

   30. To state a breach of contract claim under Vermont law, Plaintiff must plead (1) the existence of a contract, (2) breach of the contract, and (3) damages. *See Lapoint v. Dumont Constr. Co.*, 258 A.2d 570, 571 (Vt. 1969).

   31. The Claimant's allegations do not reference a contract. Instead, she states her "claim against Ditech is primarily based upon the mortgage account statements which [Ditech] sent to [her], which show numerous payments made into [her] mortgage account (a principal reduction and interest payments) which were never actually credited to [her] account." Response at 1.

   32. Though Claimant claims relies upon informational statements, she did enter into a Modification on December 8, 2016, less than a month before the alleged offer of a principal reduction. Exhibit G, Modification Agreement, at 1. The

Modification increased the unpaid principal balance from $180,500 at origination to $255,434.68. *Id.* The Modification reduced the interest rate from 5.875% to 3.645%. *Id.* at 2. There is no mention of any principal reduction within the Modification. *See* Exhibit G, Modification.

33. Instead, the informational statements relied upon by the Claimant are merely accountings of the loan modification and the capitalization of the arrearage as required under Fannie Mae's modification options. *See* Fannie Mae Servicing Guide, D2-3.2-05 *Fannie Mae Standard Modification* (9/14/2016), D2-3.2-07 (06/08/2016) *Fannie Mae HAMP Modification*, and D2-3.2-08 *Fannie Mae Streamlined Modification* (9/14/2016).

    b.    **Fees**

34. In her Response, Claimant states "numerous fees were charged to [her] mortgage account". Response at 1. She then attaches an informational statement dated November 3, 2016 with a handwritten note stating "$1,625 worth of charges which Ditech refuses to explain and are likely made in error". Response at 3-4. Claimant provides no other basis for her assertion and fails to note her mortgage was modified on December 8, 2016 which required the capitalization of her arrearages. *See* Fannie Mae Servicing Guide, D2-3.2-05 *Fannie Mae Standard Modification* (9/14/2016), D2-3.2-07 (06/08/2016) *Fannie Mae HAMP Modification*, and D2-3.2-08 *Fannie Mae Streamlined Modification* (9/14/2016).

35. Claimant also includes a January 21, 2017 statement showing $960 in corporate advances. Response at 7. The Modification, as agreed to by the

Claimant, includes a provision which allows all costs and expenses incurred by Ditech to be paid by the borrower. Exhibit G, Modification, at 2, paragraph 3(d). Furthermore, the Modification required Claimant, on the day payments are due, to provide payment for:

> (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Account Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Account Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed.

*Id.* at 3, paragraph 4.

36. Claimant provided insufficient information to enable the Trustee to assess the validity of her allegations. She does not provide any later statements to show Ditech attempted to collect these costs nor does she allege to have paid the corporate advances. In fact, the Payment History for the Account does show the balance consistently going down with each payment made in 2017. Response at 8.

37. Claimant further claims she was charged past unpaid amounts of $689.49 based upon a statement dated May 3, 2018. She also includes a handwritten note on the statement indicating that an account representative stated these fees were for "attorney's fees/foreclosure fees/inspection fees". Response at 10. However, Claimant provides no further information to assess her claim, nor does she indicate if she made her payments on time.

38. Claimant further contends that late fees were assessed to her account due to Ditech repeatedly using an incorrect mortgage account number when

she paid them and that Ditech refused to remove the fees from her account. Response at 1. In support of the claim, the Claimant provides a limited summary of transactions on her account for 2018. The transaction description shows only a listing of payments and how they were applied to her account. Response 11–12. She also provides a year-end statement dated January 9, 2019 showing $639.37 paid to late fees. Response at 11–13.

39. The Claimant does not state when her payments were made or specifically which late fees were added to her account in error. In fact, none of the statements provided show late charges. Instead, they show the Claimant made payments in excess of her monthly mortgage payment.

40. However, Ditech was entitled to charge late fees for any late payments. Claimant's Note states "[i]f the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, [Claimant] will pay a late charge to the Note holder. The amount of the charge will be 5.9% of [the] overdue payment of principal and interest." Exhibit A, Note at 1.

2. Claimant Does Not Adequately Allege a Violation of the Real Estate Settlement Procedures Act

a. Failure to Provide Escrow Surplus Funds to Claimant

41. Her remaining allegation is, on April 8, 2019, Ditech failed to issue an escrow overage check in just her name rather than including her original co-borrower, Steven Work. Response at 1–2. She asserts that because Mr. Work had transferred title to her and she had sent Ditech "quitclaim documents several times"

that Ditech erred by not issuing the escrow overage check in only her name. Response at 2.

42. While the transfer of a home from one spouse to another may be subject to a mortgage, the existence of the mortgage does not by itself prevent the transfer of title and it does not require the lender's consent or oversight. *See, e.g.*, 3 Lawrence R. Ahern, III, the Law of Debtors and Creditors § 8:10, Westlaw (database updated June 2015) (mortgagors may transfer their property interest); 46 AM. JUR. 2d *Mortgages* § 1021 (2014). 46 AM. JUR. 2d, supra note 137, § 1020 ("The interest of a mortgagor in mortgaged property is devisable and descendible. It descends to the heirs of the deceased mortgagor, subject to the mortgage . . . . This rule . . . prevail[s] even where the mortgagor dies after a decree of sale in foreclosure, but before the sale is made.").

43. Nothing about the transfer of title erases the original borrower's obligation to repay the debt.

44. The Modification makes this clear in paragraph 7(b) which states "all rights of recourse to which Lender is presently entitle against any property or any other personas in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender." Exhibit G, Modification, at 5.

45. The Modification further states "[i]f there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Customer for the excess funds in accordance with RESPA." *Id.* at 4.

46. Pursuant to 12 CFR § 1024.17(f)(2)(i), "[i]f an escrow account analysis discloses a surplus, the servicer shall, within 30 days from the date of the analysis, refund the surplus to the borrower if the surplus is greater than or equal to 50 dollars ($50)."

47. Neither the statute nor Regulation X define a "borrower." Courts in this circuit hold that "the term 'borrower' under RESPA is 'someone who is personally obligated under a federally related mortgage loan.'" *Garrasi v. Selene Fin., LP*, 407 F. Supp. 3d 110, 118 (N.D.N.Y. 2019) (quoting *Keen v. Helson*, 930 F.3d 799, 804 (6th Cir. 2019)).

48. In this instance, both Claimant and Mr. Work signed the Note. The Claimant provides no documentation to support that Ditech released Mr. Work from his personal obligation under the Note. As such, Ditech appropriately disbursed the escrow surplus to both borrowers under the Note.

### b. Failure to Respond to Claimant's Request for Information

49. In her Response, Claimant states "numerous fees were charged to [her] mortgage account". Response at 1. She then attaches an informational statement dated November 3, 2016 with a handwritten note stating "$1,625 worth of charges which Ditech refuses to explain and are likely made in error".

50. Pursuant to 12 CFR §1024.36(b), "a servicer may, by written notice provided to a borrower, establish an address that a borrower must use to request information". (emphasis added). The servicer must acknowledge receipt of an information request from a borrower within five days and must fully respond to the request within 30 days. 12 CFR §1024.36(c). A servicer may extend the time for

respond by an additional 15 days. 12 CFR §1024.36(d)(2)(ii). In general, a servicer is not required to respond if the information requested is substantially the same as information previously requested, information is relevant, or the request is overbroad or unduly burdensome. 12 CFR §1024.36(f)(1).

51.   Claimant does not provide any details regarding her request for information including when she made the request, where she sent the request or what information was requested.

52.   Claimant simply does not provide sufficient documentation or factual specificity to substantiate her claim.

### 3.   Claimant Does Not Adequately Allege a Breach of Fiduciary Duty

53.   Claimant also asserts, but only in conclusory form, that Ditech breached a fiduciary duty. Response, at 1–2.

54.   The existence or nonexistence of a fiduciary duty is a question of law to be decided by the court. *See Denis Bail Bonds, Inc. v. State,* 159 Vt. 481, 487, 622 A. 2d 495, 499 (1993). For a lender to become a fiduciary, the relationship has to ripen into one in which the borrower is dependent on, and reposed trust and confidence in, the lender in the conduct of the borrower's affairs. *See Cap. Impact Corp. v. Munro,* 162 Vt. 6, 10, 642 A. 2d 1175, 1177 (1992). "In *Capital Impact,* because the record revealed nothing but a debtor-creditor relationship between the parties, we held that the trial court did not err in declining to find a fiduciary relationship." *McGee v. Vt. Fed. Bank, FSB,* 169 Vt. 529, 726 A. 2d 42, 44 (1999).

55. *Fuller v. Banknorth Mortg. Co.*, 173 Vt. 488, 490–91, 788 A. 2d 14, 17 (2001), summarizes the case law on which the Vermont courts rely to determine the existence of a fiduciary relationship:

> In similar circumstances, we have held that a lender does not take on any duty to the borrower when it undertakes an investigation for its own benefit. *Hughes [v. Holt],* 140 Vt. [38,] at 40, 435 A.2d [687,] at 688 (on claim for negligence against mortgagee bank in performing its appraisal, mortgagor failed to establish that bank owed mortgagor duty of care); *see also McGee v. Vt. Fed. Bank,* 169 Vt. 529, 530, 726 A.2d 42, 44 (1999) (mem.) (noting, on claim that bank breached a fiduciary duty by failing to disclose to mortgagors that insurance required by bank had lapsed, "record revealed nothing but a debtor-creditor relationship between the parties", and fiduciary relationship was not born of such an arrangement); *Rzepiennik v. U.S. Home Corp.,* 221 N.J. Super. 230, 534 A.2d 89, 93 (1987) ("neither the record nor law nor reason supports an inference that [mortgagee], by demanding a certificate of occupancy and inspection certificates, undertook any duty or obligation to inspect the property on behalf of the [mortgagors] or to warrant its condition"). We noted in *Hughes,* "[a]lthough there are cases where a bank goes beyond its role as mortgagee and gets involved in a capacity beyond that of a mere lending agency so that *a duty relationship analogous to that of a seller or broker may come into being,* this is not such a case." *Hughes,* 140 Vt. at 40, 435 A.2d at 688 (emphasis added; internal citation omitted). Given that the trial court made a similar determination in this case, we discern no basis for imposing a duty to disclose on Banknorth. *Cf. Nymark v. Heart Fed. Sav. & Loan Ass'n,* 231 Cal. App.3d 1089, 283 Cal. Rptr. 53, 56–57 (1991) (noting when bank's role does not extend beyond that of conventional lender of money, bank owes no duty such as a "duty to disclose its knowledge that the borrower's intended use of the loan proceeds represents an unsafe investment"); *see also Raynor v. United States,* 604 F. Supp. 205, 207 (D.N.J.1984) (on claim that mortgage company breached its contractual and fiduciary duty by misrepresenting that it had done a thorough inspection of home, court noted that mortgage company inspected property solely for the purpose of determining its adequacy as collateral and therefore plaintiff failed to demonstrate it violated any duty to her); *Block v. Lake Mortgage Co.,* 601 N.E.2d 449, 451–

52 (Ind. Ct. App. 1992) (on constructive fraud claim, court affirmed trial court's conclusion that no fiduciary relationship existed between debtor and creditor).

(footnote omitted). None of the circumstances described in *Fuller* that might give rise to a lender's fiduciary duty to a borrower align with Claimant's allegations of Ditech's failure to credit her payments or any other actions.

56. For the foregoing reasons, Claimant's claim should be disallowed.

### Reservation of Rights

57. The Consumer Claims Trustee reserves the right to amend, modify, or supplement this Reply.

WHEREFORE the Consumer Claims Trustee respectfully requests entry of an order denying the request for relief in the Claims and such other or relief as is just.

Dated: March 20, 2024
New York, New York

/s/ Richard Levin
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
Rlevin@jenner.com
Richard Levin

*Attorneys for Consumer Claims Trustee*