UNITED STATES BANKRUPTCY COURT         NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:                          :     Case No. 19-10412 (JLG)

                                :     Chapter 11

Ditech Holding Corporation, *et al.*,      :

                                :     (Jointly Administered)

                 Debtors.[1]   :

------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS TRUSTEE'S FIFTY-FOURTH OMNIBUS OBJECTION WITH RESPECT TO THE CLAIM OF TRAVIS SMITH

<u>**APPEARANCES**</u>:

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:     Richard Levin

TRAVIS SMITH
*Appearing Pro Se*
442 County Road 2234
Goshen, Alabama 36035

---

[1]     On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1404 (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate") remains open and, as of February 22, 2022, all motions, notices, and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number are (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Boulevard, Suite 300, League City, Texas 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[2]

On April 29, 2019, Travis Smith (the "Claimant") filed Proof of Claim No. 1549 (the "Claim") as a secured claim in the amount of $70,000.00 against Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) ("Ditech").

On May 8, 2020, the Plan Administrator and Consumer Claims Trustee filed the Fifty-Fourth Omnibus Objection (the "Objection").[3]  In the Objection, they seek to expunge and disallow the Claim because it was "determined to have no merit based on Company review."  Objection, Ex. A at 11.  On June 2, 2020, Claimant, together with Sarah Smith ("Ms. Smith"), filed a response to the Objection (the "Response").[4]  In the Response, Claimant purported to decrease the amount of the Claim to $39,756.00.  Response at 2.  On March 20, 2024, the Consumer Claims Trustee[5] replied to the Response (the "Reply").[6]  Claimant and Ms. Smith are proceeding pro se in this contested matter.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[3]    *Fifty-Fourth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims)*, ECF No. 2326.

[4]    *Response*, ECF No. 2664.

[5]    On May 10, 2023, the Court granted the joint motion of the Plan Administrator and Consumer Claims Trustee to estimate the Claim at the sum of $39,756.00, for the purpose of setting a distribution reserve, and to reclassify it as a non-363(o) Consumer Creditor Claim under the Third Amended Plan.  *See Order Granting Consumer Claims Trustee and Plan Administrator's Joint Omnibus Motion to Reclassify Certain Proofs of Claim and Consumer Claims Trustee's Motion to Estimate for for* [sic] *Purposes of Distribution Reserves*, ECF No. 4732.  Upon the entry of that order, the Plan Administrator lost its interest in the Objection.

[6]    *Reply of the Consumer Claims Trustee in Support of the Plan Administrator and Consumer Claims Trustee's Fifty-Fourth Omnibus Objection (No Basis Consumer Creditor Claims) with Respect to the Claim of Travis Smith (Claim 1549)*, ECF No. 5015.

Pursuant to the Claims Procedures Order,[7] the Response adjourned the Objection to enable the Court to conduct a Sufficiency Hearing on the Claim.  At the Sufficiency Hearing, the Court employs the legal standard of review applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[8]  Claims Procedures Order ¶ 3(iv)(a).

On April 25, 2024, the Court conducted a Sufficiency Hearing on the Claim.  The Consumer Claims Trustee appeared through counsel, and the Claimant appeared pro se.  The Court has reviewed the Claim, Objection, Response, and Reply, including all documents submitted in support thereof, and has considered the arguments made by the parties in support of their respective positions.

For the reasons set forth herein, the Court sustains the Objection and disallows the Claim.

## **JURISDICTION**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[7]    *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

[8]    Rule 12(b)(6) is incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  In filing the Objection, the Plan Administrator and Consumer Claims Trustee initiated a contested matter.  *See Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs., Inc.)*, 562 F.3d 158, 162 (2d Cir. 2009) (stating that "when a debtor files an objection to a claim, the objection has initiated a contested matter").  Bankruptcy Rule 9014 governs contested matters.  The rule does not explicitly provide for the application of Bankruptcy Rule 7012.  However, Rule 9014 provides that a bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply."  Fed. R. Bankr. P. 9014.  The Court did so in the Claims Procedures Order.

## BACKGROUND

Claimant and Ms. Smith reside in a manufactured home located at 442 County Road 2234, Goshen, Alabama 36036 (the "Property").  On or around March 18, 1998, they purchased the Property pursuant to a Manufactured Home Real Estate Installment Contract (the "Purchase Contract.").[9]  The Truth in Lending Disclosures show Claimant is paying the $71,900 purchase price in monthly installment payments of $516 over a thirty-year term.  The total sales price, including anticipated interest, is $194,370.00.  Bombardier Capital, Inc. ("Bombardier Capital") financed the Purchase Contract.  At some point prior to November 2014, Green Tree Servicing LLC ("Green Tree") began servicing the loan associated with the Purchase Contract.  Claimant has not provided, nor has the Consumer Claims Trustee been able to locate, any additional details on the loan.

## The Chapter 11 Cases

On February 11, 2019, Ditech and certain of its affiliates (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity to file a

---

[9]    The first page of the Purchase Contract is annexed as Exhibit D to the Response.  The Court takes judicial notice of the documents annexed to the Response because they are integral to the Claim.  *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) ("[Courts] must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *see Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (holding that, in a contract action, a court can take judicial notice of the underlying contract as a document "integral to the complaint"); *Leon v. Shmukler*, 992 F. Supp. 2d 179, 184 n.1 (E.D.N.Y. 2014) ("It is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records.").

proof of claim in the Chapter 11 Cases (the "Bar Date").[10]  The Court extended the Bar Date for consumer borrowers to June 3, 2019.[11]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, which went into effect on September 30, 2019.[12]  The Plan Administrator and Consumer Claims Trustee are fiduciaries under the Third Amended Plan.  *See* Third Amended Plan, art. I, §§ 1.130, 1.184, 1.186. The Plan Administrator is charged with winding down, dissolving, and liquidating the Wind Down Estates and is provided exclusive authority to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Other Secured Claims.  *Id.* art. VII, § 7.1.  The Consumer Claims Trustee is responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims.  *See id.* art. I, § 1.41.  As such, she is exclusively authorized to object to Consumer Creditor Claims.  *Id.* art. VII, § 7.1.

## The Claims Procedures Order

The Plan Administrator and Consumer Claims Trustee are authorized to file objections seeking reduction, reclassification, or disallowance of claims.  Under the Claims Procedures Order, a properly filed and served response to an objection gives rise to a "Contested Claim."  *See* Claims Procedures Order ¶ 3(iv).  Contested Claims are resolved at a Claim Hearing, which can be

---

[10]    *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[11]    *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[12]    *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

scheduled as either a "Merits Hearing," an evidentiary hearing on the merits of a Contested Claim, or a "Sufficiency Hearing," a non-evidentiary hearing to address whether a Contested Claim states a claim for relief against the Debtors.  *Id.* ¶ 3(iv)(a), (b).  At a Sufficiency Hearing, the Court applies the legal standard of review applied on a motion to dismiss under Rule 12(b)(6).  *Id.* ¶ 3(iv)(a).

**The Claim**

Claimant filed a Proof of Claim, Official Form 410 and a one-page explanation in support of the Claim.  Claimant filed the Claim as a secured claim in the sum of $70,000.00.  Claim at 1-2.  As support for the Claim, Claimant states, in substance, that in 1998, he purchased a mobile home for the sum of $69,000.00, that as of 2019, he owed $39,000.00, and that he "[paid] $10 per month for over the phone payments."  *Id.*

**The Objection**

The Consumer Claims Trustee contends that the Court should disallow and expunge the Claim because, based upon the Debtors' books and records, the Claim is meritless.  Objection ¶ 13; Objection, Ex. A at 11.  Alternatively, she contends that, at a minimum, the Court should reclassify the Claim as an Unsecured Consumer Creditor Claim because Claimant improperly asserted that the Claim is secured.  *Id.* ¶ 22.

**The Response**

In the Response, Claimant purported to reduce the Claim to $39,756.  Response at 2.  He says that the Claim consists of $2,604 in "unfair and unreasonable fees" associated with the mortgage payments and $37,152 of "unconscionably high interest rates" over the last six years.  *Id.*

Claimant states that Ditech insisted that he make his monthly mortgage payments over the telephone and that Ditech charged a fee of $10-$12 for each such payment (each payment, a "SpeedPay Charge"). *Id.* He describes this as a demonstration of Ditech's "unfair, abusive, and unwarranted practices" in servicing the loan. *Id.* In support of these allegations, Claimant annexes an April 2009 statement from Regions Bank highlighting a $10 SpeedPay Charge, and a letter dated November 21, 2014, from Green Tree to Ms. Smith confirming authorization of an electronic payment of $528.00, comprised of the monthly mortgage amount and a $12 service fee to Western Union SpeedPay. *Id.* at 4-5. Claimant calculates the damages associated with the SpeedPay Charges to be $2,604, the sum of the monthly SpeedPay Charges since February 2000. *Id.* at 2. Specifically, in the Response, Claimant states as follows:

> Ditech and Greentree demonstrated unfair, abusive, and unwarranted practices while servicing my loan. They preferred and insisted on payments over the phone upon contacting me. They consistently charged me between 10 and 12 dollars for making the payment. They charged this for debiting the money from my account. When I contacted them by phone for a payment they would tell me this was a mortgage payment fee but in fact, it was Ditech et al charging me unreasonable and unnecessary fees each time I made a payment for what they called "SpeedPay" They made this method seem appealing because of the threat of larger late fees. They represented that their Speedpay service, which was $10 dollars per transaction, was the only available payment method to avoid a late charge. I was charged this amount every month from February 2000 to 2013. In 2013 the fee increased to $12.00/ month and remains that currently. The $10/month for 10 years amounts to [$]1,560. The $12 dollars/month for the remaining seven years amounts to [$]1,044. The total of these unreasonable fees is [$]2,604.

*Id.*

Claimant also alleges that Ditech charged "an illegal interest rate of 9%" on the Purchase Contract, which he states is double the average rate of 4.5% over the applicable time period. *Id.* Claimant acknowledges that the initial loan agreement was made with Bombardier Capital, but alleges the loan was "sold" to Ditech, who upheld the interest rate, and "did not perform its due

diligence to ensure that it was taking on loans that were legal and serviceable." *Id.* at 3. Claimant contends that during the seventeen-year period prior to the Petition Date, he "overpaid the mortgage by 300%." *Id.* In the Claim, he seeks to recover $37,152.00 on account of the mortgage payments over the six-year period prior to the Petition Date. *Id.* at 2-3. He explains that he is limiting his Claim to only the last six years of mortgage payments in order to bring the Claim within Alabama's six-year statute of limitations for the commencement of actions. *Id.* In part, Claimant explains as follows:

> I understand that the first 11 years are beyond the statute of limitations in our state for this type of grievance and we have therefore calculated the overpaid mortgage at $ 516/month over the last 6 years which complies with the limitations . . . . This would equal 37,152 dollars owed to us.

*Id.* at 3.

In support of those allegations, Claimant annexes a document titled "The Alabama Legislature Code of Alabama 1975," including the text of Section 6-2-34(1)-(9), "Commencement of actions – Six years," and the first page of the Purchase Contract. *Id.* at 6-7.

**The Reply**

The Consumer Claims Trustee argues the Court should dismiss the Claim because it fails to meet the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure ("Rule 8(a)")[13] and fails to state a plausible claim for relief under Rule 12(b)(6). Reply ¶¶ 25-60. However, taking into consideration the Claimant's pro se status, the Consumer Claims Trustee contends that, at best, the Claim purports to, but fails to, state claims either for breach of contract or for relief under the Truth in Lending Act ("TILA"). *Id.* ¶ 30.

---

[13]   Rule 8 is incorporated herein pursuant to Bankruptcy Rule 7008.

## APPLICABLE LEGAL PRINCIPLES

Section 502 of the Bankruptcy Code "defines what portions of a claim may be 'allowed,' *i.e.*, recoverable in bankruptcy." *In re LATAM Airlines Grp. S.A.*, 55 F.4th 377, 383 (2d Cir. 2022). A proof of claim filed under section 501 of the Bankruptcy Code is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a).  If a party in interest objects, the court must determine whether the claim falls into one of the nine enumerated categories of claims that are disallowed under section 502(b) of the Bankruptcy Code.  *See* 11 U.S.C. § 502(b).  One such category of disallowed claims are claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . ."  *Id.* § 502(b)(1); *see also Ogle v. Fid. & Deposit Co. of Md.*, 586 F.3d 143, 147 (2d Cir. 2009) ("[C]laims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed." (quoting *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 452 (2007))).

A proof of claim filed and executed in accordance with the Bankruptcy Rules constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f).  A claim's prima facie validity can be overcome if the objecting party "come[s] forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010) (quoting *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000)).

The legal standard of review applied at a Sufficiency Hearing is equivalent to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *See* Claims Procedure Order ¶ 3(iv)(a).  Under Rule 12(b)(6), the court assesses the sufficiency of the facts alleged in support of the claim considering the pleading requirements under Rule 8(a).

Rule 8(a)(2) states that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  To meet that standard, the claim must contain sufficient facts that state a facially plausible claim of relief; in other words, the court must be able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Each allegation in a pleading must be "simple, concise and direct," but no technical pleading form is required.  Fed. R. Civ. P. 8(d)(1).  Courts must construe pleadings "so as to do justice."  Fed. R. Civ. P. 8(e).

Under Rule 12(b)(6), the court will dismiss the claim if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In applying that standard, courts consider whether the claim alleges "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line* Pilots *Ass'n Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at 678).  In assessing whether a claim is facially plausible, the courts accept all allegations in the claim as true and draw all reasonable inferences in claimant's favor.  *Francis v. Kings Park Manor, Inc.,* 992 F.3d 67, 72 (2d Cir. 2021).  However, the court is not "obligated to accept as true legal conclusions couched as factual allegations." *Champion v. Moda Operandi, Inc.*, 561 F. Supp. 3d 419, 432 (S.D.N.Y. 2021).  "The ultimate issue 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Loughlin v. Goord*, 558 F. Supp. 3d 126, 139 (S.D.N.Y. 2021) (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)).  When ruling on a motion brought under Rule 12(b)(6), "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side . . . ." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).

The Court must also take Claimant's pro se status into consideration and "liberally construe [his] pleadings and briefs submitted" and "read[] such submissions to raise the strongest arguments they suggest." *Kravitz v. Purcell*, 87 F.4th 111, 119 (2d Cir. 2023) (quoting *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022)); *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (stating "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007))).

Claimant does not dispute the Consumer Claims Trustee's assertion that, at best, the Claim purports to state a claim for breach of contract or for relief under the Truth in Lending Act. Accordingly, in assessing the merits of the Objection, the Court will consider whether the Claim states a claim for relief under TILA or for breach of contract under Alabama law.

## Whether Claimant States a Claim for Breach of Contract

Under Alabama law, the elements of a breach of contract claim consist of "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Dupree v. PeoplesSouth Bank*, 308 So. 3d 484, 490 (Ala. 2020) (quoting *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009)).

Claimant seeks $37,152.00 in damages for what he deems as overpayments on his Purchase Contract due to an "illegal" interest rate of nine percent. Response at 2. He acknowledges that original financing agreement was with Bombardier Capital but contends that Ditech purchased the loan, and failed to "perform its due diligence to ensure that it was taking on loans that were legal and serviceable," and that, in charging that interest rate for "the last 17 years," Ditech further caused Claimant to have "overpaid [his] mortgage by over 300%." *Id.* at 3.

The Consumer Claims Trustee argues that Claimant cannot state a breach of contract claim because (i) Claimant cannot establish privity of contract with Ditech, (ii) Claimant does not

adequately allege unconscionability, and (iii) the statute of limitations has expired.  Reply ¶¶ 31-39.  The Court considers those matters below.

<u>Privity of Contract</u>

Ditech was not in privity with Claimant in 1998 when he entered into the Purchase Contract with Bombardier Capital.  Claimant contends that Bombardier Capital "sold" the loan to Ditech, Response at 3, but does not allege any facts in support of that contention.  At best, the facts alleged demonstrate that Ditech was the loan servicer under the Purchase Contract.  "It is settled under Alabama law that a mortgage servicer, who does not have a contract with the borrower, cannot be sued for breach of contract."  *Driggers v. Caliber Home Loans, Inc.*, No. 19-00850-JB-B, 2021 WL 3009007, at *6 (S.D. Ala. July 15, 2021); *see also Nelson v. Nationstar Mortg., LLC*, 504 F. Supp. 3d 1307, 1315 (S.D. Ala. 2020) ("A breach of contract claim is generally not cognizable against a mere servicer, which is not in contractual privity with the borrower.").

Ditech is not a party to the Purchase Contract and Claimant has not offered an alternate theory under which Ditech could be contractually liable to him.  Without an express contract with Claimant, and as only a servicer of the loan, Ditech cannot be held liable under a breach of contract theory under Alabama law.  *See, e.g.*, *Jackson v. Bank of N.Y. Mellon*, No. CV 16-062-CG-M, 2016 WL 4942085, at *8 (S.D. Ala. July 19, 2016) ("Plaintiffs repeatedly assert that SLS is the servicer of their loan, not their lender. Because they are not a party to the Mortgage, the breach of contract claim against SLS fails as a matter of law."); *Zanaty v. Wells Fargo Bank, N.A.*, No. 16-CV-0277, 2016 WL 6610443, at *6-7 (N.D. Ala. Nov. 9, 2016) (dismissing a breach of contract claim where plaintiff identified defendant as the mortgage servicing company but did not allege the existence of a contract with defendant); *Blake v. Bank of Am., N.A.*, 845 F. Supp. 2d 1206,

1211-13 (M.D. Ala. 2012) (holding that a mortgagor has no standing to sue its mortgagee's servicing company for breach of contract).

The Court finds that Claimant has not sufficiently alleged he was in contractual privity with Ditech. Therefore, Claimant fails to satisfy the first element of a breach of contract claim under Alabama law.

### *Unconscionability of Interest Rate*

Claimant asserts that the loan's nine percent interest rate is "illegal" and "unconscionable." Response at 2. He seeks $37,152 in damages, which he calculates as the reimbursement of six years' worth of payments under the Purchase Contract. *Id.* at 3. However, those allegations do not support a breach of contract claim under Alabama law. In Alabama, it is settled "that the doctrine of unconscionability is not available to obtain affirmative relief, but only as a defense . . . ." *Sanders v. Colonial Bank of Ala.*, 551 So. 2d 1045, 1045 (Ala. 1989) (citing *Cowin Equipment Co. v. General Motors Corp.*, 734 F.2d 1581 (11th Cir. 1984)); *see also Williams v. E.F. Hutton Mortg. Corp.*, 555 So.2d 158, 161 (Ala. 1989) (quoting *Sanders*, 551 So. 2d at 1045).

Even if Claimant could state a plausible legal claim against Ditech regarding the interest rate charged under the Purchase Contract, he cannot show that he would be entitled to recover monetary damages on account of that claim. *See, e.g.*, *Camp v. Ala. Telco Credit Union*, No. 12-CV-2237, 2013 WL 2106727, at *5 (N.D. Ala. May 13, 2013) (dismissing plaintiffs' claim seeking refund from bank of alleged illegal overdraft fees because no affirmative claim for relief under an unconscionability theory exists under Alabama law). For this additional reason, Claimant fails to state a claim for relief under Alabama law.

Statute of Limitations

The statute of limitations on contract claims in Alabama is six years. Ala. Code 1975 § 6-2-34(9). The statutory period to bring a breach of contract action begins to accrue when the contract is breached. *Jakeman v. Lawrence Grp. Mgmt. Co.*, LLC, 151 So. 3d 1083, 1090 (Ala. 2014). Stated more generally, the statute of limitations starts when the first legal injury occurs, and "[a] legal injury occurs when the plaintiff can first maintain an action." *Ex parte Floyd*, 796 So. 2d 303, 308 (Ala. 2001). The case of *McCall ex rel. McCall v. Household Finance Corp.*, 122 So.3d 832 (Ala. Ct. App. 2013), is instructive. There, the plaintiff was party to a loan agreement with the defendant that the parties executed in 1996. In 2011, the plaintiff brought a breach of contract claim against the defendant asserting, among other things, that when he executed the agreement, the repayment plan for his loan was not set up as he anticipated it would have been. He complained that he made regular payments as required by the loan agreement, but the balance of the loan did not decrease as he expected. *Id.* at 835-36. The court found that the alleged breach of contract occurred when the plaintiff executed the loan agreement. *Id.* at 836 ("[Plaintiff's] complaint repeatedly asserts that the repayment plan for the loan was not set up as he anticipated at the inception of the parties' relationship, *i.e.*, in 1996."). The court dismissed the claim as time-barred. *Id.* ("[T]he breach, if any, occurred in 1996 and the six-year statute of limitations had expired by the time the complaint was filed in 2011.").

Here, Claimant agreed to the interest rates at issue when he executed the Purchase Contract. He complains that the interest rate is too high and that, at that time, "[b]ased on our credit scores of over 700 we would certainly have qualified for rates that were more market level." Response at 2. As in *McCall*, in this case, the statute of limitations on a breach of contract claim predicated on an allegedly unfair term as a "breach" was triggered upon execution of the agreement. *See*

*McCall*, 122 So.3d at 836. Claimant executed the agreement in 1998. To the extent that an unfair

term can constitute a breach under Alabama law, any issues Claimant had with the terms of the

contract are long barred. *See id.* Moreover, by his own account, Claimant made payments under

the Purchase Contract for close to twenty years before raising concerns over the interest rate in the

Claim. He is barred by the Alabama statute of limitations from objecting to a contract term to

which he explicitly agreed when he signed the Purchase Contract in 1998. *Id.*

In reaching this conclusion, the Court notes that in the Response, Claimant concedes the

statute of limitations is six years and explains that to abide by the limitations period, he is limiting

his damage claim to six years of mortgage payments. *Id.* at 3. In part, Claimant explains, as

follows:

> I understand that the first 11 years are beyond the statute of limitations in our state
> for this type of grievance and we have therefore calculated the overpaid mortgage
> at $ 516/month over the last 6 years which complies with the limitations . . . . This
> would equal 37,152 dollars owed to us.

*Id.* However, "statutes of limitations are statutes of repose, the object of which is to prevent

fraudulent and stale claims from springing up after long periods of time and surprising the parties

or their representatives when evidence has become lost or the facts have become obscure from the

lapse of time." *Seybold v. Magnolia Land Co.*, 376 So. 2d 1083, 1086 (Ala. 1979). They "are

founded in part at least on general experience that claims which are valid usually are not allowed

to remain neglected, and that the lapse of years without any attempt to enforce a demand creates a

presumption against its original validity or that it has ceased to exist." *Id.*; *see also Bagby Elevator

& Elec. Co. v. McBride*, 291 So. 2d 306, 311 (Ala. 1974) ("Alabama cases bottom a statute of

limitations on a policy of repose and they rest on the presumption that meritorious claims will not

be allowed to slumber until human testimony is lost or human memory fails.").

The limitations period refers to the time during which a litigant may bring a certain claim before it is barred from doing so.  In this case, Claimant's failure to bring a breach of contract claim within six years of the alleged breach bars him from seeking any monetary relief under the Purchase Contract.  This is an additional ground for rejecting the Claim.

### Whether Claimant States a Claim Under the Truth in Lending Act

The Truth in Lending Act is a consumer protection statute that serves "the broad purpose of promoting the informed use of credit by assuring meaningful disclosure of credit terms to consumers." *Parish v. Blazer Fin. Servs, Inc.*, 868 So. 2d 406, 410 (Ala. 2003) (quoting *Ford Motor Credit Co. v. Millhollin*, 444 U.S. 555, 559 (1980)); *see* 15 U.S.C. § 1601(a) (TILA was enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.").  TILA's implementing regulations are set forth in Regulation Z, 12 C.F.R. pt. 1026, which is accompanied by official interpretations at 12 C.F.R. pt. 1026, Supp. I, pts. 1-5 (the "Official Interpretations"). TILA requires servicers and creditors to timely credit payments on home loans, credit cards, and other forms of open-end credit. 15 U.S.C. §§ 1639f, 1666c(a).

TILA applies to credit transactions, like the Purchase Contract, involving loans where the creditor takes a security interest in the real or personal property intended for use as the borrower's principal dwelling.  15 U.S.C. § 1603(3).  The implementing regulations further impose limitations on mortgages that are subject to the requirements of 12 C.F.R. § 1026.32, prohibit certain acts or

practices in connection with credit secured by a dwelling in 12 C.F.R. § 1026.36, and credit secured

by a consumer's principal dwelling in 12 C.F.R. § 1026.35.[14]

### Disclosure of Credit Terms

"TILA requires lenders to provide an array of 'clear and accurate disclosures of terms

dealing with things like finance charges, annual percentage rates of interest, and the borrower's

rights.'" *Rice v. Seterus, Inc.*, No. 17-CV-00732, 2018 WL 513345, at *9 (N.D. Ala. Jan. 23,

2018) (quoting *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998)).  Under TILA, most closed-

end credit disclosures and other obligations are required before consummation.  *See* 12 C.F.R.

§ 1026.17(b).  TILA and Regulation Z impose other obligations after consummation.  Examples

include notifying a consumer when the rate on an adjustable-rate loan changes (12 C.F.R.

§ 1026.20(c)); crediting mortgage payments as of the date of receipt (15 U.S.C. § 1639f(a)); and

providing a periodic statement each billing cycle (15 U.S.C. § 1638(f)(1); 12 C.F.R. § 1026.41.).

Claimant complains of what he characterizes as an unconscionable interest rate under the

Purchase Contract.  However, the record is clear that the rate was disclosed to him before he

executed the agreement, and he does not assert that he ever misunderstood the interest rate charged

under the agreement.  He signed the Purchase Contract and paid the mortgage for close to twenty

years before disputing the contract interest rate.  The record does not demonstrate that he formally

---

[14]    12 C.F.R. § 1026.1(d)(5) provides:

> Subpart E contains special rules for mortgage transactions.  Section 1026.32 requires certain
> disclosures and provides limitations for closed-end credit transactions and open-end credit plans that
> have rates or fees above specified amounts or certain prepayment penalties.  Section 1026.33
> requires special disclosures, including the total annual loan cost rate, for reverse mortgage
> transactions.  Section 1026.34 prohibits specific acts and practices in connection with high-cost
> mortgages, as defined in §1026.32(a).  Section 1026.35 prohibits specific acts and practices in
> connection with closed-end higher-priced mortgage loans, as defined in §1026.35(a).   Section
> 1026.36 prohibits specific acts and practices in connection with an extension of credit secured by a
> dwelling. Sections 1026.37 and 1026.38 set forth special disclosure requirements for certain closed-
> end transactions secured by real property or a cooperative unit, as required by § 1026.19(e) and (f).

disputed the interest rate with Ditech once it began servicing the loan.  In fact, there is no indication

that Claimant challenged the interest rate at any point prior to filing the Claim.  Claimant has failed

to allege facts demonstrating that Ditech violated TILA's pre- or post-consummation disclosure

regulations.

<u>Assignee Liability</u>

TILA provides a private right of action against "any creditor" who violates the

requirements of the statute's credit transactions section, allowing actual damages and, with certain

limitations, statutory damages.  *See* 15 U.S.C. § 1640(a).  Under TILA, the term "creditor"

> refers only to a person who both (1) regularly extends, whether in connection with
> loans, sales of property or services, or otherwise, consumer credit which is payable
> by agreement in more than four installments or for which the payment of a finance
> charge is or may be required, and (2) is the person to whom the debt arising from
> the consumer credit transaction is initially payable on the face of the evidence of
> indebtedness or, if there is no such evidence of indebtedness, by agreement.

*Id.* § 1602(g).  The parallel provision in Regulation Z states:

> Creditor means:
>
> A person who regularly extends consumer credit that is subject to a finance charge
> or is payable by written agreement in more than four installments (not including a
> down payment), and to whom the obligation is initially payable, either on the face
> of the note or contract, or by agreement when there is no note or contract.

12 C.F.R. § 226.2(a)(17)(i) (footnote omitted).

"In order for a person to be considered a creditor under the TILA, she must fall under both

prongs of § 1602(f)."[15]  *Parker v. Potts*, 232 F. App'x 861, 864 (11th Cir. 2007) (per curiam).  The

Purchase Contract originated with Bombardier, not Ditech, and Claimant does not allege

---

[15]    In 2010, section 1602 was amended with the Dodd-Frank Wall Street Reform and Consumer Protection Act, and
subsection 1602(f) was redesignated as subsection 1602(g).  *See* Dodd-Frank Act, Pub. L. No. 111-203,
§ 1100A(1)(A), 124 Stat. 1376, 2107 (2010).

otherwise. Ditech's name does not appear anywhere on the face of the Purchase Contract. Claimant cannot state a claim for relief under section 1602(g). *See Parker*, 232 F. App'x at 865 ("The clear language of the TILA requires that only the person to whom the debt is owed on the face of the mortgage is a creditor.").

TILA specifically addresses the liability of assignees, as follows:

> Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter or proceeding . . . which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary. [A] violation apparent on the face of the disclosure statement includes but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.

15 U.S.C. § 1641(a). "A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation." *See id.* § 1641(f)(1). Claimant has not alleged any facts demonstrating that Ditech ever owned the loan. Thus, Claimant has not sufficiently alleged Ditech, as a servicer, is an assignee under TILA.

Accordingly, the Court finds that Claimant has not sufficiently alleged that Ditech maintains any liability under TILA as a creditor or assignee.

**SpeedPay Fees**

Claimant contends that Ditech charged "unfair and unreasonable fees" associated with payments made by telephone. Response at 1. He contends that these charges of between $10 and $12 per payment, occurred between 2000 and 2013 and total $2,604. *Id.* In support, he attaches a single bank statement from April 2009, showing a $10.00 fee debited on April 7, 2009 and

identified as "Speedpay." *Id.* at 4. He also attaches a letter from Green Tree, dated November 21, 2014, which confirms a bank account debit in the amount of $528.00, which in turn includes "a $12.00 service fee paid to Western Union Speedpay®." *Id.* at 5.

TILA allows servicers to specify the terms in which a payment may be made. *See* 12 C.F.R. § 1026.36(c)(1)(iii) (indicating that servicers may "specif[y] in writing requirements for the consumer to follow in making payments"); Official Interpretations at § 1026.36(c)(1)(iii) ¶ 1 ("The servicer may specify reasonable requirements for making payments in writing"); *Fridman v. NYCB Mortg. Co., LLC*, 780 F.3d 773, 782 (7th Cir. 2015) ("[A] servicer may require customers to pay using a menu of ways that it specifies."). In the absence of specific requirements, or an agreement to electronic fund transfer, the servicer must accept payment "by cash, money order, draft, or other similar instrument in properly negotiable form." Official Interpretations § 1026.36(c)(1)(iii) ¶ 3. "Regulation Z thus guarantees a consumer the right to have her mortgage payment credited as soon as she authorizes payment. It does not, however, guarantee consumers the right to make online payments free of charge." *Kier v. Ocwen Loan Servicing, LLC*, 122 F. Supp. 3d 786, 790 (N.D. Ill. 2015) (citation omitted) (finding no violation of the prompt crediting rule where servicer imposed a standard $10 fee to pay online but did not impose any fee as a result of a delay in processing a timely online payment).

Claimant maintains that Ditech "represented that their SpeedPay service, which was $10 per transaction, was the only available payment method to avoid a late charge." Response at 2. Claimant does not contend that this statement is inaccurate. According to the terms of the Purchase Contract, payments were due on the fifth of each month. *Id.* at 7. The Regions Bank statement attached to the Response shows a payment to Green Tree and a SpeedPay charge on April 7, 2009, two days past the due date. The Green Tree letter dated November 21, 2014, confirms that

Claimant authorized a mortgage payment on October 3, 2014, with a payment date of November 30, 2014. *Id.* at 5. A payment made on the 30th of the month would be well-past the due date.

Claimant provides no other support for his allegation that he was unfairly charged a SpeedPay fee each month. Moreover, Claimant does not allege or suggest that Ditech prohibited him from sending payments by alternative methods, for example by timely remitting a check or money order. Instead, the evidence suggests that Claimant may have regularly been late on his payments, such that wiring the funds to Ditech was, in fact, the only way to avoid late fees.

Claimant's contentions regarding the SpeedPay fees fail to state a claim for relief under TILA.

## **CONCLUSION**

Based on the foregoing, the Court sustains the Objection and disallows the Claim.

IT IS SO ORDERED

Dated: May 16, 2024
New York, New York

*/s/ James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
United States Bankruptcy Judge