UNITED STATES BANKRUPTCY COURT                    NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
In re:                                                 :
                                                       :    Case No. 19-10412 (JLG)
Ditech Holding Corporation, *et al.*,                  :    Chapter 11
                                                       :
                                                       :    (Jointly Administered)
                                       Debtors.[1]     :
-------------------------------------------------------- X

## MEMORANDUM DECISION AND ORDER
## SUSTAINING THE CONSUMER CLAIMS TRUSTEE'S
## THIRTEENTH OMNIBUS CLAIMS OBJECTION TO PROOFS OF CLAIM
## WITH RESPECT TO THE PROOF OF CLAIM OF RONALD D. KISTING, SR.

## APPEARANCES:

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:     Richard Levin

SANDIE LEE KISTING[2]
*Appearing Pro Se*
1045 N Bristol Street
Sun Prairie, Wisconsin 53590

---

[1]    On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1404 (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate") remains open and, as of February 22, 2022, all motions, notices, and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number are (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Boulevard, Suite 300, League City, Texas 77573.

[2]    Ms. Kisting appeared at the Sufficiency Hearing on behalf of her father, Ronald D. Kisting, Sr., in her capacity as a personal representative of his estate.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[3]

On May 29, 2019, Sandie Lee Kisting (the "Claimant") filed Proof of Claim No. 22951 (the "Claim"), in her capacity as a personal representative of the estate (the "Estate") of her deceased father, Ronald D. Kisting, Sr. (the "Decedent" or "Mr. Kisting"). The Claim asserts a secured claim in the amount of $50,000, an unsecured claim for $13,500, and an administrative expense claim in the amount of $120,000 against Ditech Holding Corporation f/k/a Walter Investment Management Corp. ("Ditech Holding Corp."). Claimant is acting pro se in this contested matter.

On January 17, 2020, the Plan Administrator and Consumer Claims Trustee filed their Thirteenth Omnibus Objection to certain claims (the "Objection").[4] In the Objection, they seek to expunge and disallow claims, such as the Claim, that are not only erroneously asserted in part as an administrative expense, priority, and/or secured claim, but also baseless on their merits. On February 14, 2020, Claimant filed a response to the Objection (the "Response").[5] On March 24,

---

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[4]    *Thirteenth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims)*, ECF No. 1745.

[5]    *Response*, ECF No. 1856.

2020, Claimant filed a statement to supplement the Response (the "Statement").[6]  On April 30,

2024, the Consumer Claims Trustee[7] replied to the Response and Statement (the "Reply").[8]

Pursuant to the Claims Procedures Order,[9] Claimant's Response adjourned the Objection

to provide the Court time to conduct a Sufficiency Hearing on the Claim.  At the Sufficiency

Hearing, the Court applies the legal standard of review used in evaluating a motion to dismiss for

failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules

of Civil Procedure ("Rule 12(b)(6)").  Claims Procedures Order ¶ 3(iv)(a).

The Consumer Claims Trustee, through counsel, and Claimant appeared at the Sufficiency

Hearing on May 30, 2024, and the Court heard arguments from the parties.  The Court has reviewed

the Claim, Objection, Response, Statement, and Reply, including all documents submitted in

support thereof, and has considered the arguments made by the parties in support of their positions.

For the reasons set forth herein, the Court sustains the Objection and disallows the Claim.

## **JURISDICTION**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States

---

[6]   *Statement*, ECF No. 2486.

[7]   On May 10, 2023, the Court granted the joint motion of the Plan Administrator and Consumer Claims Trustee to estimate the Claim at the sum of $183,500.00, for the purpose of setting a distribution reserve, and to reclassify it as a non-363(o) Consumer Creditor Claim under the Third Amended Plan.  *See Order Granting Consumer Claims Trustee and Plan Administrator's Joint Omnibus Motion to Reclassify Certain Proofs of Claim and Consumer Claims Trustee's Motion to Estimate for for* [sic] *Purposes of Distribution Reserves*, ECF No. 4732. Upon the entry of that order, the Plan Administrator lost its interest in the Objection, as the Consumer Claims Trustee is solely responsible for reconciling Consumer Creditor Claims.

[8]   *Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee's Thirteenth Omnibus Objection with Respect to the Claim of Creditor Ronald D. Kisting, Sr (22951)*, ECF No. 5054.

[9]   *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632 ("Claims Procedures Order").

District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

On or around October 14, 2003, Mr. Kisting executed a promissory note in favor of Mortgage Investors Corporation in the amount of $44,400 (the "Note")[10] in connection with the purchase of real property located at 28564 Fruit St., Lone Rock, WI 53556 (the "Property").  The Note was secured by a mortgage (the "Mortgage,"[11] together with the Note, the "Loan") on the Property.  On or around November 30, 2017, the Loan was assigned to Ditech Financial LLC ("Ditech").[12]

Mr. Kisting passed away on June 27, 2017.  Response at 1; Statement at 50.  On December 14, 2018, Claimant and Rhonda M. Kisting ("Rhonda") were granted domiciliary papers and authorized as co-personal representatives of the Estate.  Response at 5.[13]

---

[10]    The Note is annexed as Exhibit A to the Reply.  The Court takes judicial notice of the Note and the other documents annexed to the Reply, Response, and Statement as they are matters of public record and are integral to the Claim.  *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) ("[Courts] must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *see Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (holding that, in a contract action, a court can take judicial notice of the underlying contract as a document "integral to the complaint"); *Leon v. Shmukler*, 992 F. Supp. 2d 179, 184 n.1 (E.D.N.Y. 2014) ("It is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records.").

[11]    The Mortgage is annexed as Exhibit B to the Reply.

[12]    The assignment to Ditech is annexed as Exhibit C to the Reply.

[13]    *See In re Est. of Ronald D. Kisting, Sr.*, No. 2018PR000925 (Wis. Cir. Ct., Dane Cnty. Dec. 14, 2018) (the "Probate Proceedings").  The public docket for the Probate Proceedings is available at https://wcca.wicourts.gov.

**The Foreclosure Action**

On February 13, 2018, Ditech initiated an action to foreclose the Property (the "Foreclosure Action") in the Circuit Court of Richland County, Wisconsin (the "Wisconsin State Court").[14]  The Foreclosure Complaint[15] states no payments on the Mortgage were made beginning April 1, 2017, and $29,306.76 was due on the Loan, with interest.  On February 20, 2018, a petition was filed with the probate court of Dane County, Wisconsin (the "Probate Court") to appoint a special administrator for the Estate (the "Special Administration Proceeding").  *See* Statement at 28.[16]  On March 29, 2018, the Probate Court granted the petition and appointed Jennifer Valenti as the special administrator (the "Special Administrator") for the Estate.  *Id*.  On April 2, 2018, the Special Administrator sent correspondences to Mr. Kisting's heirs.  Foreclosure Docket at 5.[17]  On April 9, 2018, the Special Administrator filed an admission of service in the Foreclosure Action on behalf of the Estate.  Foreclosure Docket at 4-5.

Around April 18, 2018, Rhonda emailed the Special Administrator and requested an extension to answer the Foreclosure Complaint, and she indicated she was making efforts to file an answer by April 28, 2018.  Statement at 7.  The email also contained an informal response to the complaint.  Statement at 7-8.

---

[14]    *See Ditech Fin. LLC v. Estate of Ronald D. Kisting Sr.*, No. 2018-cv-000026 (Wis. Cir. Ct, Richland Cnty. Feb. 13, 2018).  The docket sheet for the Foreclosure Action (the "Foreclosure Docket") is annexed as Exhibit E to the Reply.  The public docket is also available at https://wcca.wicourts.gov.

[15]    The complaint filed in the Foreclosure Action (the "Foreclosure Complaint") is annexed as Exhibit D to the Reply.

[16]    *See In the Est. of Ronald D. Kisting Sr.*, No. 2018-PR-000139 (Wis. Cir. Ct., Dane Cnty. Feb. 20, 2018). The docket sheet for the Special Administration Proceeding (the "Special Administration Docket") is included in the Statement.  *See* Statement at 25–29.  The public docket is also available at https://wcca.wicourts.gov.

[17]    The specific individuals, their addresses, and the content of the correspondence are unknown.

On April 19, 2018, Rhonda emailed the Special Administrator and informed her that she "uploaded the answer and a word document containing the content in the emails [Rhonda] sent [the Special Administrator]." Statement at 9.  The Statement annexes an answer and counterclaim form completed by Rhonda in the Foreclosure Action (the "Answer").  Statement at 12-13.  The Answer provides, in relevant part:

> The Plaintiff is asking to foreclose on Ronald D Kisting, Sr's property located at 28564 Fruit St., Lone Rock, WI, 53556.  Our Family is not objecting to the Foreclosure itself and due to my Father's indingency [sic], does not want to drag this out in court.  We all agree on that. . . . We agree to let Ronald D Kisting, Sr's property to be sold and th [sic] bills and mortgage to be paid with the proceeds.  We understand there will be legal fees and more.  The only thing we object to is vacating the house until it's sold and The Family wants to keep ownership until it's sold, so we can clean out personal property (clothes, furniture).

Statement at 12.  The Answer states a copy of an email sent to the Special Administrator was filed with the court.  Despite these representations, the Foreclosure Docket does not reflect that an answer was filed on April 19, 2018, or any other date.  *See* Foreclosure Docket at 2-5.

On May 1, 2018, Ditech filed a notice of motion for default judgment in the Foreclosure Action.  *Id.* at 4.  On May 22, 2018, the Wisconsin State Court entered a judgment of foreclosure in the amount of $35,031.24 with a three-month redemption period (the "Foreclosure Judgment").[18]  The foreclosure auction was scheduled for August 24, 2018, and notice of the foreclosure was published in the Richland Observer, a "public weekly newspaper," on July 19, 2018, July 26, 2018, and August 2, 2018.[19]

On August 24, 2018, the sheriff conducted a sale of the Property at public auction, and it was sold to Ditech for $36,767.12.  *See* Statement at 39.  On September 6, 2018, Ditech filed a motion for confirmation of the sheriff's sale in the Foreclosure Action.  *See* Foreclosure Docket

---

[18]    The Foreclosure Judgment is annexed as Exhibit F to the Reply.

[19]    The affidavit of publication is annexed as Exhibit G to the Reply.

at 3.  On October 2, 2018, the Wisconsin State Court entered an order confirming the sale of the Property.  *See* Statement at 37.

## The Chapter 11 Cases

On February 11, 2019, Ditech Holding Corp. and certain of its affiliates, including Ditech (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases").  The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On February 22, 2019, the Court entered an order fixing April 1, 2019 as the deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[20]  The Court extended the General Bar Date for consumer borrowers to June 3, 2019 (the "Consumer Creditor Bar Date").[21]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, and the Court entered a confirmation order (the "Confirmation Order").[22]  The Third Amended Plan went into effect on September 30, 2019.[23]  The Confirmation Order set the deadline for each person or entity asserting Administrative Expenses Claims to file proofs of claim by November 11, 2019, which was thirty-five (35) days from the date of service of the notice of entry of the Confirmation Order.

---

[20]    *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[21]    *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[22]    *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1404.

[23]    *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

The Plan Administrator and Consumer Claims Trustee are fiduciaries under the Third Amended Plan. *See* Third Amended Plan, art. I, §§ 1.130, 1.184, 1.186. The Plan Administrator is charged with winding down, dissolving and liquidating the Wind Down Estates and has exclusive authority to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims. *Id.* art. VII, § 7.1. The Consumer Claims Trustee, on the other hand, is responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims. *See id.* art. I, § 1.41. As such, she is exclusively authorized to object to Consumer Creditor Claims. *Id.* art. VII, § 7.1.

**The Claims Procedures Order**

The Plan Administrator and Consumer Claims Trustee are authorized to file objections seeking reduction, reclassification, or disallowance of claims. Under the Claims Procedures Order, a properly filed and served response to an objection, omnibus or otherwise, gives rise to a "Contested Claim." *See* Claims Procedures Order ¶ 3(iv). Contested Claims are resolved at a Claim Hearing, which can be designated as either a "Merits Hearing," an evidentiary hearing on the merits of a Contested Claim, or a "Sufficiency Hearing," a non-evidentiary hearing to address whether a Contested Claim states a claim for relief against the Debtors. *Id.* ¶ 3(iv)(a), (b). At a Sufficiency Hearing, the Court applies the legal standard of review applied on a motion to dismiss under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

**The Claim**

In support of the Claim, Claimant has filed with the Court a Proof of Claim, Official Form 410; a February 1, 2019 email from Intuit Mint containing a monthly financial summary for

January 2019; and a copy of a claim asserted against the Estate in the Probate Proceedings by the Wisconsin Department of Health Services in the amount of $22,920.28.

The Proof of Claim, Official Form 410 states the basis of the Claim as "Probate – Illegal foreclosure – father." Claim at 2. There, Claimant designated the amount of the Claim as $50,000. *Id.* However, elsewhere in the Proof of Claim form, Claimant stated that the Claim is secured in the amount of $50,000 and unsecured in the amount of $13,500. *Id.* Claimant also stated that the Claim qualifies as an Administrative Expense under 11 U.S.C. § 503(b)(9) in the amount of $120,000. *Id.*

### The Objection

The Consumer Claims Trustee and Plan Administrator ask that the Court disallow and expunge claims that they have determined have no basis in the amount or priority asserted based upon review of the Debtors' books and records and the supporting documentation. Objection ¶ 13. Specifically, they assert that the Claim "lacks sufficient documentation to support the validity of the claim." Objection, Ex. A at 28.

### The Response

Claimant provides additional information regarding Ditech's alleged misconduct surrounding the foreclosure of the Property. Claimant states that Ditech did not comply with state and federal law "regarding notice to remedy and inform [Mr. Kisting's] heirs of their inheritance." Response at 1. Claimant asserts that Ditech: (i) did not properly serve notice of the sale under Wisconsin law, (ii) refused to communicate with Mr. Kisting's heirs, (iii) refused to disclose bids or buyers, (iv) did not accept appropriate bids, (v) "proceeded behind closed doors, with realtor, to auction off said property, without proper legal notification to State, Federal agencies, heirs et al.," and (vi) sold the Property without the consent of Veterans Administration (the "VA"). Response at 1-2.

9

She also states that after the auction, Rhonda communicated with Ditech and expressed interest in purchasing the Property, but Ditech stated they could not support the sale to the heirs because the thirty-day window to purchase had passed. Response at 2. She says the VA seized the funds from the sale and are holding the funds in a trust that will "default to the State of Wisconsin Probate." Response at 2.

The Response also "preserv[es] the rights" of Nancy Ann Kisting, Mr. Kisting's former spouse, in a seemingly unrelated lawsuit against Ditech where "Nancy was a victim of Ditech mortgage fraud." Response at 2.

Claimant states that Mr. Kisting's heirs "are further requesting return of Estate property and $50,000 plus the $120,000 and legal fees incurred, to remedy and cover loss of house and mortgage payments made while in probate." Response at 3.

Annexed to the Response is the order by the Probate Court granting Claimant and Rhonda's application to serve as personal representatives of the Estate and a notice to creditors with a deadline to file a claim against the Estate in that probate proceeding.

**The Statement**

Claimant supplemented the Response with the Statement which includes a "Timeline for Ronald D Kisting Sr"[24] and related documents. Annexed to the Statement are: (i) emails Rhonda exchanged with Ditech, Ditech's counsel in the Foreclosure Action, or the Special Administrator between April 2018 and April 2019; (ii) the Answer to the Foreclosure Complaint; (iii) letters from Ditech's counsel providing information for reinstating or paying off the Loan; (iv) the Special

---

[24]    Based on the related documents included within the Statement, there appear to be typographical errors within the timeline. For example, the timeline indicates that certain events occurred in 2019, but the underlying documents demonstrate that those events actually occurred in 2018. *See, e.g.*, Statement at 1, 14 (stating an email was sent to a Ditech employee on August 21, 2019, but the annexed email is dated August 21, 2018). The Court will attempt to reconcile these disparities.

Administration Docket; (v) the order confirming the sale of the Property in the Foreclosure Action; (vi) the sheriff's report of sale filed in the Foreclosure Action; (vii) the notice of foreclosure sale in the Foreclosure Action; (viii) a letter from the IRS providing an EIN for the Estate; and (ix) Mr. Kisting's death certificate.

According to the Statement, on August 17, 2018, Rhonda informed Ditech that a family member would like to cure a default under the Mortgage and was completing the requisite paperwork.  Statement at 33.  On August 21, 2018, Rhonda emailed a Ditech representative requesting they "stop" the foreclosure auction scheduled for August 24, 2018, so a relative could finish the necessary paperwork to purchase the Property.  Statement at 15.  She also stated that some family members were not notified of the foreclosure and that she had only learned about the auction by accident when a stranger arrived at the Property to ask questions about the foreclosure auction. *Id.*

On August 23, 2018, in response to Rhonda's request, Ditech's counsel provided a reinstatement letter and a payoff letter.  The reinstatement letter stated that the Loan could be reinstated if Ditech's counsel received certified funds in the amount of $9,804.71 by August 23, 2018.  Statement at 35.  The payoff letter provided that if paid by September 4, 2018, the payoff amount owed was $35,477.77.  Statement at 23.

On August 24, 2018, the foreclosure sale was held for the auction of the Property, which Claimant, Claimant's daughter, and Nancy Kisting, Decedent's ex-spouse, attended.  Statement at 2.[25]  Claimant states they "were going to offer a bid, as well as try[] to stop the auction, since

---

[25]    In the timeline included in the Statement, Claimant provides they attended the auction on August 23, 2019. Statement at 2.  The Court presumes this date is stated in error and that the correct date is August 24, 2018, as that was the scheduled date of the auction.

Ditech was misbehaving." Statement at 2. The Property was sold at auction to Ditech for $36,767.12. Statement at 37, 39.

On November 26, 2018, Rhonda contacted Ditech's counsel and Ditech with a $20,000 cash offer for the Property. On December 17, 2018, Rhonda informed Ditech's counsel that the family had vacated the Property, and her uncle had moved out. She reiterated that the family had hoped to keep the Property but "half of [her] father's life insurance policies did not pay out and [they could not] afford to get a loan or get cash for the whole $36,000.00." Statement at 44.

In April 2019, Rhonda again emailed Ditech's counsel. She inquired as to whether the Property had been sold and indicated she had not received any money from the sale of the Property. Statement at 5.

**The Reply**

In her Reply, the Consumer Claims Trustee asserts that the Claim should be disallowed as it fails to meet the pleading standards of Federal Rule of Civil Procedure 8(a) ("Rule 8(a)") and fails to state a claim upon which relief can be granted as required by Rule 12(b)(6). The Consumer Claims Trustee argues that none of the details provided by Claimant are framed as a cause of action and the Claim does not state any legal theory or laws violated by Ditech to meet the pleading threshold. Reply ¶¶ 40-41.

Moreover, the Consumer Claims Trustee argues that the Claim fails under Rule 12(b)(6) because it does not state a claim for relief. Liberally construing the Claim, the Consumer Claims Trustee asserts that Claimant fails to allege facts demonstrating that either service in the Foreclosure Action or the foreclosure sale itself were improper. Reply ¶¶ 44-59. She also states that there are inadequate allegations to establish that Ditech violated the guidance from the VA. Reply ¶¶ 60-65.

Lastly, the Consumer Claims Trustee contends Claimant's allegations are barred by the principle of res judicata because the foreclosure sale was overseen by a Wisconsin court which determined service and the foreclosure process were proper. Reply ¶¶ 66-76.

## **LEGAL PRINCIPLES**

"A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If a party in interest objects to a proof of claim, the basis for seeking disallowance must be one that is set forth in Section 502(b) of the Bankruptcy Code. *See* 11 U.S.C. § 502(b); *see also HSBC Bank USA, N.A. v. Calpine Corp.*, No. 07-cv-3088, 2010 WL 3835200, at *5 (S.D.N.Y. Sept. 15, 2010) ("All claims are allowed unless specifically proscribed by one of the nine exceptions listed in § 502(b)." (citing *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007))).

For example, under section 502(b)(1), a court will disallow a claim if it "is unenforceable against the debtor and property of the debtor, under . . . applicable law for a reason other than because such claim is contingent or unmatured . . . ." 11 U.S.C. § 502(b)(1). The filing of a proof of claim does amount to "prima facie evidence of the validity and amount of a claim," Fed. R. Bankr. P. 3001(f), but that can be overcome if the party objecting under section 502(b)(1) "come[s] forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010) (quoting *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000)).

When evaluating the Claim, the Court applies the legal standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See* Claims Procedures Order ¶ 3(iv)(a). The Rule 12(b)(6) standard requires courts to accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Green v. Dep't of Educ. of New York*, 16 F.4th 1070,

1076 (2d Cir. 2021).  In ruling on a Rule 12(b)(6) motion, "[t]he court's function is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'"  *Havens v. James*, 76 F.4th 103, 116-17 (2d. Cir. 2023) (quoting *Festa v. Loc. 3 Int'l Brotherhood of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990)).  Rule 12(b)(6) "ensures that, consistent with Rule 8(a), a complaint includes 'sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'"  *Alharbi v. Miller*, 368 F. Supp. 3d 527, 560 (E.D.N.Y. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Accordingly, in applying the legal standards applicable to Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the Claim in light of the pleading standards under Rule 8(a).

The Consumer Claims Trustee asserts that the Court should disallow the Claim because it does not satisfy the pleading standard of Rule 8(a) and it does not state a claim upon which relief can be granted as required by Rule 12(b)(6).  Moreover, she contends that Claimant's allegations are barred by res judicata.

The Court considers those matters below.  In doing so, the Court recognizes that Claimant is appearing pro se, and that it must "liberally construe [Claimant's] pleadings and briefs submitted" and "read[] such submissions to raise the strongest arguments they suggest."  *Kravitz v. Purcell*, 87 F.4th 111, 119 (2d Cir. 2023) (quoting *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022)).

## ANALYSIS

### Whether the Claim Satisfies the Rule 8(a) Pleading Standards

Rule 8(a) requires a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), which is not intended "to impose a great burden upon a plaintiff."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).  The Federal

Rules of Civil Procedure provide that a complaint need only "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 577 (S.D.N.Y. 2021) (quoting *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)).

In short, to satisfy Rule 8(a), a pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Rosenblum v. Thomson Reuters (Markets) LLC*, 984 F. Supp. 2d 141, 145 (S.D.N.Y. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Claimant does not articulate specific legal theories, but she asserts sufficiently particular facts regarding what she perceives as Ditech's misconduct. For example, she clearly alleges that Ditech did not properly effectuate service of process in the Foreclosure Action and that the foreclosure sale was not conducted in accordance with Wisconsin law. Response at 1-2. The Court reads her nonconclusory factual allegations with some leeway since she is acting pro se, and it finds them sufficient to provide Ditech with "fair notice" of the basis of the Claim; Ditech was thus able to respond to them in its Reply. *Liu Jo S.P.A. v. Jenner*, 630 F. Supp. 3d 501, 521 (S.D.N.Y. 2022) ("The key to Rule 8(a)'s requirements is whether adequate notice is given" to inform the opposing party of the nature of the claim. (quoting *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004))).

## Whether the Claim Is Barred by the Foreclosure Action

On May 22, 2018, the Wisconsin State Court entered the Foreclosure Judgment after the Estate defaulted and did not answer the Foreclosure Complaint. The Foreclosure Judgment stated

the complaint was "duly served upon the defendants in the manner provided by law."  Foreclosure

Judgment at 1.  On October 2, 2018, the court confirmed the sale of the Property to Ditech and

determined the bid did not shock the conscience of the court.  Foreclosure Docket at 3.  Claimant

did not challenge or otherwise appeal the Foreclosure Judgment or the order confirming the

Property's sale.  However, in this Claim, Claimant contends that the foreclosure of the Property

was "illegal" for several reasons, including that the service and sale were improper.

Res Judicata[26]

    The Consumer Claims Trustee asserts that the Claim is barred by res judicata because the

foreclosure was overseen by the Wisconsin State Court, which deemed the service and process

were proper.  Reply ¶¶ 66-76.  The Consumer Claims Trustee is correct.

    Res judicata, or claim preclusion, bars a party from relitigating claims that were litigated

or could have been litigated in a prior action.  *Kowske v. Ameriquest Mortg. Co.*, 767 N.W. 2d 309,

315 (Wis. Ct. App. 2009).  The doctrine is applied broadly to achieve fairness to the parties and

sound judicial administration.  *A.B.C.G. Enters., Inc. v. First Bank Se., N.A.*, 515 N.W.2d 904, 906

(Wis. 1994).  "Wisconsin law requires the following essential elements for res judicata to apply:

---

[26]    "[I]t is well settled that a court may dismiss a claim on res judicata or collateral estoppel grounds on a Rule 12(b)(6) motion." *Sassower v. Abrams*, 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993); *see, e.g., Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (affirming dismissal of claims under Rule 12(b) on grounds of res judicata); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir.) ("when all relevant facts are shown by the court's own records, of which the court takes notice, the defense [of res judicata] may be upheld on a Rule 12(b)(6) motion without requiring an answer"), *cert. denied*, 506 U.S. 821 (1992).

    "[T]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred . . . ." *New York v. Sokol (In re Sokol)*, 113 F.3d 303, 306 (2d Cir. 1997); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."); *Paralex Assocs. v. Deutsch (In re Deutsch)*, 575 B.R. 590, 597 (Bankr. S.D.N.Y. 2017) ("The law is well settled that a state court judgment must be given preclusive effect, at least for collateral estoppel purposes, in a subsequent federal court proceeding if the state in which the judgment was rendered would do so." (quoting *Wharton v. Shiver (In re Shiver)*, 396 B.R. 110, 117 (Bankr. S.D.N.Y. 2008))).  The Foreclosure Action was adjudicated in the Wisconsin State Court.  Accordingly, the Court will apply Wisconsin state law in assessing the preclusive effect of the foreclosure judgment.

(1) an 'identity between the parties or their privies in the prior and present suits'; (2) that the 'prior litigation resulted in a final judgment on the merits by a court with jurisdiction'; and (3) an 'identity of the causes of action in the two suits.'" *Lenczner v. Wells Fargo, N.A.*, 2016 WL 4734741, at *5 (W.D. Wis. Sept. 9, 2016) (quoting *Sopha v. Owens-Corning Fiberglass Corp.*, 601 N.W.2d 627, 637 (Wis. 1999)).

The first element is met as the parties are the same here as in the Foreclosure Action. The Claim is brought by Claimant in her capacity as personal representative of the Estate and the Foreclosure Action was asserted against the Estate. In addition, at the time of the Foreclosure Action, Claimant was a beneficiary of the Estate and the Estate's beneficiaries are in privity with the administrator of the Estate. This is because, under Wisconsin law, a beneficiary is in privity with the administrator of an estate if the beneficiary asserts a claim that depends on the same legal right at issue in prior litigation on behalf of the estate. *Pasko v. City of Milwaukee*, 643 N.W.2d 72, 78 (Wis. 2002); *see also Carnes v. C & W Trucking, Co.*, No. 23-CV-294, 2023 WL 8697853, at *2 (W.D. Wis. Dec. 15, 2023) ("Res judicata generally prevents beneficiaries of a trust or estate from relitigating issues concerning the interests of a trust or estate that its representative already litigated."). The rights to the Property here are those that were at issue in the Foreclosure Action. Thus, the first element of res judicata is satisfied.

The second element is met because the Foreclosure Judgment is "a final judgment for the purpose of appeal." *See* Foreclosure Judgment at 4.

The last element relates to the nature of the causes of action and bars claims that were or could have been asserted in a prior action. Wisconsin employs the transactional test to analyze the nature of the claims. *Parks v. City of Madison*, 492 N.W. 2d 365, 368 (Wis. Ct. App. 1992). "Under [that] analysis, all claims arising out of one transaction or factual situation are treated as

being part of a single cause of action and they are required to be litigated together." *Id.* This includes claims that a party may have asserted as a counterclaim or a direct claim in a prior litigation. *A.B.C.G. Enters.*, 515 N.W.2d at 909 ("The principles of res judicata preclude a defendant who may counterclaim in a prior action from bringing a subsequent action on the claim if the action would nullify the initial judgment or impair rights established in the initial action.").[27]

In the Foreclosure Judgment, the Wisconsin State Court directly addressed the issue of service of process, finding the summons and complaint in the Foreclosure Action had been served on the defendants "in the manner provided by law, due proof thereof being on file . . . ." Foreclosure Judgment at 1. In confirming the foreclosure sale, the Wisconsin State Court found the foreclosure sale bid did not shock the conscience of the court. Foreclosure Docket at 3. These are the issues—the propriety of Ditech's service in the Foreclosure Action and the legality of the sale under Wisconsin law—that Claimant challenges through the Claim. Thus, Claimant's claims arise from the same "transaction or factual situation" as that which gave rise to the Foreclosure Action and the third element of res judicata is met.

The Claim is thus barred by application of the res judicata doctrine.

**Whether the Claim States a Claim for Wrongful Foreclosure Against Ditech**

Moreover, and in any event, the Claim fails to state a claim for wrongful foreclosure.

Claimant complains of three main issues related to the foreclosure of the Property. First, Claimant alleges that Ditech "failed to inform or search for heirs or dependents, before listing house for sale" and then auctioned off the Property "without proper legal notification to State, Federal agencies, heirs et al." Response at 1. Second, she claims that Ditech was "not transparent"

---

[27]    The Foreclosure Action resulted in a default judgment. Therefore, under Wisconsin law, the Court limits its analysis of the res judicata effect of that judgment "to the material issuable facts which are well pleaded in the declaration or complaint. The judgment does not extend to issues which were not raised in the pleadings." *Klaus v. Vander Heyden*, 316 N.W. 2d 664, 668 (Wis. 1982) (citing 50 C.J.S. Judgments § 706 (1947)).

in the foreclosure process and "refused to disclose bids or buyers and did not accept appropriate bids per state law." Response at 2. Third, Claimant asserts Ditech sold the Property without the consent of the VA. Response at 2.

Service of Process

Claimant asserts the Estate and Decedent's heirs "were not legally served proper notice under Wisconsin State law and therefore the sale to other buyers is illegal." Response at 2.

The Foreclosure Action was initiated on February 13, 2018, after Mr. Kisting's passing in June 2017. "Upon the death of a person, the title to his property remains suspended until the appointment of a personal representative, at which time it passes to that personal representative." *Lake Arrowhead Ass'n v. Est. of Straub*, 965 N.W.2d 183, n.8 (Wis. Ct. App. 2021) (unpublished table decision) (quoting *Shovers v. Shovers*, 718 N.W.2d 130, 137 (Wis. Ct. App. 2006)).

A personal representative of a decedent's estate "succeeds to the interest of the decedent in all property of the decedent," including the decedent's real property, but only upon the issuance of domiciliary papers by the court. Wis. Stat. § 857.01; *see also In re Higgins*, No. 23-22024, 2023 WL 8823920, at *5 (Bankr. E.D. Wis. Dec. 20, 2023) ("When letters are issued to the personal representative, the personal representative must take possession of the whole of the decedent's estate, including the real property."); *Shovers v. Shovers*, 718 N.W.2d 130, 137 (Wis. Ct. App. 2006) ("Upon the death of a person, the title to his property remains suspended until the appointment of a personal representative, at which time it passes to that personal representative."). The personal representative has the authority to "contest all claims except claims which the personal representative believes are valid . . . ." Wis. Stat. § 857.03(1)

Claimant identifies herself as a co-personal representative of the Estate. Response at 1. The documents annexed to her Response demonstrate that she was not granted the powers and

duties of a personal representative until December 2018. Response at 5. Therefore, at the time Ditech commenced the Foreclosure Action, Claimant was not the personal representative of the Estate.

Ditech, as a party asserting a claim against the Estate, was entitled to petition the probate court for appointment of a special administrator. *See* Wis. Stat. §§ 856.07(2), 867.09;[28] *see also Wisth v. Gorski (In re Est. of Wisth)*, 944 N.W.2d 360 (Wis. Ct. App. 2020) (unpublished table decision) (finding the probate court erred in denying petition for appointment of personal representative because the petition "clearly establishe[d] the need for a personal representative" to address the breach of contract claim against the estate). On February 20, 2018, Ditech filed a petition to appoint a special administrator of the Estate. *See* Special Administration Docket.

Under Wisconsin law, following a hearing, a court may grant a special administrator "the same powers, duties and liabilities as a personal representative, except as expressly limited by the order of the court." Wis. Stat. § 867.17.[29] It may also impose powers and duties greater than those granted by statute if such powers and duties are "necessary to accomplish the purpose for which

---

[28]    Wis. Stat. § 856.07 states:

> (1) GENERALLY. Petition for administration of the estate of a decedent may be made by any person named in the will to act as personal representative or by any person interested.

> (2) AFTER 30 DAYS. If none of those named in sub. (1) has petitioned within 30 days after the death of the decedent, petition for administration may be made by any person who was guardian of the decedent at the time of the decedent's death, any creditor of the decedent, anyone who has a cause of action or who has a right of appeal which cannot be maintained without the appointment of a personal representative or anyone who has an interest in property which is or may be a part of the estate.

Section 867.09 provides that the "[p]etition for the appointment of a special administrator may be made by any person who has standing to petition for administration of the estate under s. 856.07, and waiting periods stated in that section do not apply." Wis. Stat. § 867.09.

[29]    According to the public docket, the petition filed by Ditech was to be heard on March 29, 2018. However, the petition may be granted if there is no objection. The public docket does not indicate that any objections were filed.

the special administrator is appointed." Wis. Stat. § 867.17.  Those powers may include the ability

to accept service on behalf of an estate. *See, e.g.*, *Novak v. Stenz*, 599 N.W.2d 666 (Wis. Ct. App.

1999) (unpublished table decision) (recounting probate court's order that special administrator be

empowered to accept service of summons and complaint for action against estate); *see also United

States v. Est. of Elzie Cockerham*, No. 19-CV-845, 2020 WL 5370768, at *1 (E.D. Wis. Sept. 8,

2020) (concluding that service to the special administrator on behalf of estates was proper); *In re

Estate of Wisth*, 944 N.W. 2d at 360 (explaining that a plaintiff "petitioned for the appointment of

a special administrator for the sole purpose of accepting service on behalf of the estate in a

foreclosure action in which the estate was a named party").

On March 29, 2018, the Probate Court entered an order appointing Jennifer Valenti as the

Special Administrator of the Estate.  "The [C]ourt presumes that [the] special administrator . . .

had the authority—either by statute or by order of the probate court—to accept or receive service

of process on behalf of the estates," *Est. of Elzie Cockerham*, 2020 WL 5370768, at *1, because

on April 9, 2018, an admission of service on behalf of the estate was entered in the Foreclosure

Action.  For that reason, Claimant cannot state a claim for wrongful foreclosure based on an

allegation of improper service of the Foreclosure Action.

Moreover, Claimant cannot state a claim that the publication notice of the sale was

improper.  Under Wisconsin law,

> the sheriff or referee who makes sale of mortgaged premises, under a judgment
> therefor, shall give notice of the time and place of sale as provided under s. 815.31
> or in such other manner as the court shall in the judgment direct. The sheriff or
> referee shall include in the notice of sale the street address, if any, of the real estate
> to be sold and the sum of the judgment.

Wis. Stat. § 846.16.  Section 815.31 requires notice of sale of realty on execution to be published

and posted.  *Id.* § 815.31.  The affidavit of publication confirms that these requirements were met,

Reply, Ex. H, and the publication notice made in the Richland Observer satisfied section 815.31.

*See Fam. Sav. & Loan Ass'n v. Barkwood Landscaping Co.*, 286 N.W.2d 581, 589 (Wis. 1980) ("Notice of sale was posted and published in accordance with [section 815.31]. Since there is no requirement that the notice be personally served on any of the parties, the notice of sale given in this case was sufficient.").

<u>Improper Foreclosure Process</u>

Claimant asserts that Ditech auctioned off the Property "behind closed doors" and "refused to disclose bids or buyers and did not accept bids per state law. [Ditech] was not transparent in who was in the bidding procedure and the offers on the property were unannounced and unclear." Response at 2. Claimant also says that she attended the auction with other family members and a "single buyer wanted to bid and counter offered for lesser amount" but that bid was rejected. Response at 1. On November 26, 2018, Rhonda transmitted an offer from Nancy Kisting to Ditech of a cash settlement of between $20,000 and $27,000 to purchase the Property and settle the debt. Statement at 2.

"[U]nder Wisconsin law a trial court has discretion to refuse to confirm such a sale even though there is no mistake, misapprehension, or inadvertence, where the sale price is not only inadequate, but is so grossly inadequate as to shock the conscience of the court." *Bihlmire v. Hahn*, 143 N.W.2d 433, 437 (Wis. 1966) (quoting *Gumz v. Chickering*, 121 N.W.2d 279, 284 (Wis. 1963)). The Wisconsin State Court determined that this amount "[did] not shock the conscience of the court . . . ." *See* Foreclosure Docket at 3. Notably, Ditech bid a higher amount— $36,767.12—thus negating any other bids. *See* Order Confirming Sale at 1.[30]

The Court finds that Claimant fails to state a claim for wrongful foreclosure based on the process and procedure of the foreclosure sale.

---

[30]    The "Order Confirming Sale" is annexed to the Statement at page 39.

Veterans Administration Consent and Guidance

Claimant also challenges the foreclosure by asserting that Ditech sold the Property without the consent of the VA.  Response at 2.  Claimant provides nothing to support her claim that Ditech proceeded without the consent of the VA or that Ditech violated the VA's guidance. In fact, Claimant states that from "December 2017 to present" the "VA was assisting with potential sale to family or other parties."  Statement at 1.  Yet, she also states that when Rhonda contacted the VA on August 24, 2019, regarding purchasing the Property, the VA directed her to Ditech, *id.* at 2, thus indicating they knew of the foreclosure sale and auction.  The Court therefore cannot credit the Claimant's bare and conclusory allegation that the Property was sold without the consent of the VA.

Claimant asserts that the sale was a "violation of Veteran's Administration laws and loans." Statement at 2.  Pursuant to 38 C.F.R. § 36.4322, the VA requires servicers to calculate the bid amount at the foreclosure sale using the total eligible indebtedness ("TEI") and VA Net Value. VA Servicer Handbook M26-4, Chapter 8, § 8.06 *Foreclosure Bid, and Loan Termination* at 8-5 (February 26, 2019).  The TEI includes the unpaid principal balance, accrued unpaid interest, interest on the unpaid principal balance, interest on advances, and liquidation expenses. VA Servicer Handbook M26-4, Chapter 8, § 8.06, *Foreclosure Bid, and Loan Termination* at 8-5 (February 26, 2019).  The VA Net Value is determined by multiplying the Net Value cost factor and the "as is" value from the Notice of Value issued by the VA.  *Id.* at Chapter 10, Section 10.05 *Acquisition Payment Calculation* at 10-5 (February 26, 2019).  If the VA net value is greater than, or equal to the reported TEI, the servicer should bid the total debt. VA Servicer Handbook M26-4, Chapter 8, § 8.06 *Foreclosure Bid, and Loan Termination* at 8-5 (February 26, 2019).  If the VA Net Value is less than TEI, the servicer should bid the net value.  Claimant has not alleged

what value the Notice of Value, issued by the VA, attributed to the Property, which is necessary to compare the VA net value and the TEI.

In sum, Ditech bid the total debt, and Claimant fails to show that this was in error.  Rhonda told the Special Administrator in April 2018 that she agreed to the amounts due under the Mortgage, the family wanted only to reside in the Property until it sold, and she agreed to the Property being sold for the total debt.  Statement at 8.  Claimant's nonconclusory allegations, assumed true, do not state a facially plausible claim to relief.

## CONCLUSION

For the foregoing reasons, the Court sustains the Objection and disallows the Claim.

IT IS SO ORDERED.

Dated: New York, New York
        June 3, 2024

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
United States Bankruptcy Judge