| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |

---------------------------------------------------------- x
In re:                                                   :
                                                         :   Case No. 19-10412 (JLG)
Ditech Holding Corporation, *et al.*,                    :   Chapter 11
                                                         :
                                        Debtors.[1]      :   (Jointly Administered)
---------------------------------------------------------- X

# MEMORANDUM DECISION AND ORDER
## SUSTAINING THE CONSUMER CLAIMS TRUSTEE'S THIRTIETH OMNIBUS CLAIMS OBJECTION TO PROOFS OF CLAIM WITH RESPECT TO THE PROOF OF CLAIM OF DORIS SAULS

**APPEARANCES:**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:    Richard Levin

DORIS SAULS
*Appearing Pro Se*
3903 Ashwood Drive
Pearland, Texas 77584

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1404 (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate") remains open and, as of February 22, 2022, all motions, notices, and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number are (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Boulevard, Suite 300, League City, Texas 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction

On June 3, 2019, Doris Sauls ("Claimant") filed an unsecured proof of claim, assigned Claim No. 23577 (the "Claim") against Ditech Holding Corporation ("Ditech"), asserting an undetermined amount based on a "Purchase Agreement." On September 18, 2020, the Consumer Claims Trustee filed the Thirtieth Omnibus Objection (the "Objection"),[2] seeking to disallow the Claim, among others, on the basis of insufficient documentation. On October 16, 2020, Claimant filed her Response[3] to the Objection, which alleged that Ditech failed to credit her mortgage payments from 2013 through 2015, leading the successor servicer to try to collect over $40,000 Claimant believed she did not owe. On May 30, 2024, the Consumer Claims Trustee filed a Reply in support of the Objection.[4]

Pursuant to the Claims Procedures Order,[5] the filing of the Response caused an adjournment of the Objection so that the Court could conduct a Sufficiency Hearing on the Claim. Under that order, the legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Claims Procedures Order ¶ 3(iv)(a). In accordance with the Claims Procedures Order, the Court conducted a

---

[2] *Consumer Claims Trustee's Thirtieth Omnibus Objection to Proofs of Claim (Insufficient Documentation Unsecured Consumer Creditor Claims)*, ECF No. 2836.

[3] *Objection to Motion*, ECF No. 2955 ("Response").

[4] *Reply in Support of the Thirtieth Omnibus Objection to Proofs of Claim (Insufficient Documentation Unsecured Consumer Creditor Claims),* ECF No. 5082 ("Reply").

[5] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632 ("Claims Procedures Order").

2

Sufficiency Hearing on the Claim on June 27, 2024. The Consumer Claims Trustee appeared through counsel and Claimant appeared pro se. The Court heard arguments on the Objection.

The Court has reviewed the Claim, Objection, Response, and Reply, including all documents submitted in support thereof, and has considered the arguments made by the parties in support of their respective positions. As explained below, accepting Claimant's well-pleaded factual allegations as true, drawing all reasonable inferences in Claimant's favor, and liberally construing the Claim and Response to raise the strongest arguments that they suggest, the Claim fails to state a plausible claim to relief against Ditech. Accordingly, the Court sustains the Objection and disallows the Claim.

## Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

### The Mortgage

On November 26, 2003, Claimant and her husband, W.J. Sauls, executed a Note in favor of Amerigroup Mortgage Corporation for $76,350.00, which was secured by a Deed of Trust on the property at 3903 Ashwood Drive, Pearland, Texas 77584 (the "Property").[6] The Note had a

---

[6] The "Note" is referenced in the "Deed of Trust," which is a part of Exhibit A to the Reply. However, neither Claimant nor the Consumer Claims Trustee have made the Note part of the record. The Court shall refer to the Note and Deed of Trust together as the "Mortgage." Additionally, the Court takes judicial notice of the Deed of Trust and the other documents annexed to the Reply as they are matters of public record and are integral to the Claim. *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) ("[Courts] must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *see Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (holding that, in a

maturity date of December 1, 2033, Reply, Ex. A at 3, and had a variable interest rate starting at 4.250%, Reply, Ex. A at 25.

Starting January 1, 2007, per the Note's so-called "Adjustable Rate Rider," the Note's interest rate could change annually on January 1. Reply, Ex. A at 25.

**The Chapter 11 Cases**

On February 11, 2019, Ditech and certain of its affiliates (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019 as the deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[7] The Court extended the General Bar Date for consumer borrowers to June 3, 2019.[8]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, and it became effective on September 30, 2019.[9] Under the plan, the Consumer Claims Trustee is appointed as a fiduciary responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash

---

contract action, a court can take judicial notice of the underlying contract as a document "integral to the complaint"); *Leon v. Shmukler*, 992 F. Supp. 2d 179, 184 n.1 (E.D.N.Y. 2014) ("It is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records.").

[7] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[8] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[9] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

4

Pool to holders of Allowed Consumer Creditor Claims. *See* Third Amended Plan, art. I, § 1.41. As such, the Consumer Claims Trustee has the exclusive authority to object to Consumer Creditor Claims. *See id.* art. VII, § 7.1.

**The Claims Procedures Order**

The Consumer Claims Trustee is authorized to file objections seeking reduction, reclassification, or disallowance of Consumer Creditor Claims. Under the Claims Procedures Order, a properly filed and served response to an objection, omnibus or otherwise, gives rise to a "Contested Claim." *See* Claims Procedures Order ¶ 3(iv). Contested Claims are resolved at a Claim Hearing, which can be designated as either a "Merits Hearing," an evidentiary hearing on the merits of a Contested Claim, or a "Sufficiency Hearing," a non-evidentiary hearing to address whether a Contested Claim states a claim to relief against the Debtors. *Id.* ¶ 3(iv)(a), (b). At a Sufficiency Hearing, the Court applies the legal standard of review applied on a motion to dismiss under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

**The Proof of Claim**

On June 3, 2019, Claimant filed the Claim using the Official Form 410, asserting an unsecured claim in an undetermined amount, based on a "Purchase Agreement." Claim at 1. That Proof of Claim was filed without any further narrative or attachments.

**The Objection**

On September 18, 2020, the Consumer Claims Trustee filed the Objection. The Consumer Claims Trustee objected to the Claim on the grounds that it was not substantiated by sufficient documentation.

**The Response**

On October 16, 2020, Claimant filed the Response to the Objection. There, she claims that she is the co-payer, with her husband, of a mortgage serviced by Ditech. Response ¶ B. Claimant alleges that Ditech and its predecessor, Green Tree Servicing LLC ("Green Tree"), had accepted Claimant's payments toward the Mortgage, but failed to credit the payments to their account from 2013 through 2015. Response ¶ C. To evidence the payments, the Response attaches Claimant's bank statements from 2013 through 2015. Response at 3–63. Claimant has hand-marked these statements to identify payments that she made to Green Tree, Ditech, and a so-called "FED CLEARING DEBIT." *Id.* She does not identify the recipient of the "FED CLEARING DEBIT" payments, but the Court assumes she means to allege that those payments were made on account of the Mortgage to her servicer.

Claimant alleges that the new holder of the mortgage, New Residential Investment Corp. ("NewRez"), is trying to collect $41,000 from Claimant. Response ¶ C. According to Claimant, her last payment—presumably under the terms of the Mortgage—"should have occurred on August 1, 2020." *Id.*

**The Estimation and Classification Order**

On September 23, 2022, the Consumer Claims Trustee filed a motion to estimate and classify certain claims (the "Estimation Motion").[10] The Estimation Motion estimated Claimant's claim at $0.00 for purposes of setting a distribution reserve and sought to classify it as a Class 6 Consumer Creditor Claim that is not a 363(o) claim under the Third Amended Plan. Estimation

---

[10] *Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4266.

6

Motion at 10, 17. After discussions with Claimant, the Trustee agreed to estimate the claim at $41,342.02. Reply ¶ 9; *see also* Estimation and Classification Order at 5.[11]

On January 4, 2023, the Court entered the Estimation and Classification Order, estimating Claimant's claim at $41,342.02 and classifying it as a non-363(o) Class 6 Consumer Creditor Claim. Estimation and Classification Order at 2, 5.

**The Reply**

On May 30, 2024, the Consumer Claims Trustee filed the Reply. There, she set out, in detail, her arguments why the Court should disallow Claimant's claim.

The Consumer Claims Trustee argues that Claimant failed to adequately plead a claim under Federal Rule of Civil Procedure 8(a) ("Rule 8(a)"). Reply ¶¶ 18–22. She contends that the Claim fails to meet the minimum pleading standards under Rule 8(a) for three reasons: (i) because it "contains no cause of action, no claim amount and no statement of the relief to which Claimant believes she is entitled," *id.* ¶ 19, (ii) it attaches bank statements without explaining how those statements "support her assertion that these payments were not credited to her account," *id.* ¶ 20, and (iii) because Claimant's belief that "the successor-servicer is showing an outstanding balance on the loan and that she believes the loan should have matured in August 2020" does not state a legal claim, *id*.

The Consumer Claims Trustee also argues that the Claim should be disallowed under Federal Rule of Civil Procedure 12(b)(6). *Id.* ¶¶ 23–43. Although Claimant does not identify any

---

[11] *Order Granting Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4493 ("Estimation and Classification Order").

7

legal claims to relief, the Consumer Claims Trustee says that she will construe claims for breach of contract and violations of the Truth in Lending Act ("TILA"). *Id.* ¶ 25.

### *Breach of Contract*

The Consumer Claims Trustee makes a number of arguments that, in substance, all say that Claimant's breach of contract claim must fail because she has not alleged facts that show she performed her own obligations under the Note. According to the Consumer Claims Trustee, the Claim makes it "impossible to establish whether she made her payments in full" under the Note because "she shows only payments made, not what was owed." *Id.* ¶ 30. The Consumer Claims Trustee argues that because Claimant failed to plead that she met her own obligations under the Note, she has "neglected to meet the second prong of the requirement for breach, which is that she properly tendered performance," as required by Texas law. *Id.* The Consumer Claims Trustee then suggests that Claimant was not making full monthly payments under the Note, because under the Adjustable Rate Rider, the interest on the Note was due to adjust every January, but the bank statements show that her monthly payments did not change every January. *Id.* Finally, the Consumer Claims Trustee contends that Claimant "failed to make a payment in May 2014," and that even though the April 2014 payment was larger than her usual payments, it was "not enough to cover both the April and May amounts due." *Id.* ¶ 31.

The Consumer Claims Trustee also says that the Claim fails to allege a claim for breach of contract claim fails because it "does not show damages." *Id.* ¶ 33. She maintains that the $41,000 Claimant characterizes as damages "represents the outstanding principal balance on the loan, as reported by the successor-servicer on or around October 2020." *Id.* ¶ 34. The Consumer Claims Trustee further argues that Claimant "fails to provide any information supporting her contention that this balance is incorrect," and therefore, Claimant "cannot characterize that amount as a

8

pecuniary loss." *Id.* Moreover, the Consumer Claims Trustee asserts that even if Claimant is correct that the payments she says she made were never credited to her account, those damages would total $22,973.17, not $41,000. *Id.* ¶ 35. She argues that the difference between these two figures "bears no resemblance to her damage claim of $41,000.00 and is inconsistent with her argument that the failure to credit payments was the cause of the $41,000.00 outstanding balance". *Id.*

Finally, the Consumer Claims Trustee says that Texas's statute of limitations for breach of contract claims is four years. She contends that since Claimant filed her claim on June 3, 2019, "at most, any viable claim may have covered non-credited payments in the latter half of 2015, but not earlier." *Id.* ¶ 36.

***Truth in Lending Act***

The Consumer Claims Trustee argues that Claimant "fails to provide documentation to show that Debtors failed to credit roughly twenty-nine consecutive months of payments." *Id.* ¶ 41. The Consumer Claims Trustee says that "as a practical matter, uncredited or late payments owing would have shown on her periodic billing statements; she provides none of these," and that "had the account not been paid for over two years, she would most certainly have been placed into foreclosure proceedings," but that "she does not assert as much, and a review of the public record shows no such litigation." *Id.*

## **Legal Standard**

"A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If a party in interest objects to a proof of claim, the basis for seeking disallowance must be one that is set forth in Section 502(b) of the Bankruptcy Code. *See* 11 U.S.C. § 502(b); *see also HSBC Bank USA, N.A. v. Calpine Corp.*,

9

No. 07-cv-3088, 2010 WL 3835200, at *5 (S.D.N.Y. Sept. 15, 2010) ("All claims are allowed unless specifically proscribed by one of the nine exceptions listed in § 502(b)." (citing *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007))).

For example, under section 502(b)(1), a court will disallow a claim if it "is unenforceable against the debtor and property of the debtor, under . . . applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). The filing of a proof of claim does amount to "prima facie evidence of the validity and amount of a claim," Fed. R. Bankr. P. 3001(f), but that can be overcome if the party objecting under section 502(b)(1) "come[s] forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010) (quoting *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000)).

When evaluating the Claim, the Court applies the legal standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See* Claims Procedures Order ¶ 3(iv)(a). The Rule 12(b)(6) standard requires courts to accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Green v. Dep't of Educ. of New York*, 16 F.4th 1070, 1076 (2d Cir. 2021). In ruling on a Rule 12(b)(6) motion, "[t]he court's function is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'" *Havens v. James*, 76 F.4th 103, 116-17 (2d. Cir. 2023) (quoting *Festa v. Loc. 3 Int'l Brotherhood of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990)).[12] Rule 12(b)(6) "ensures

---

[12] "On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.,* documents that are 'integral' to the complaint." *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991)). Because Sufficiency Hearings consider consumer claims, often by unrepresented claimants whose claims lack detail or do not attach pertinent supportive documentation, it has

that, consistent with Rule 8(a), a complaint includes 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Alharbi v. Miller*, 368 F. Supp. 3d 527, 560 (E.D.N.Y. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Accordingly, in applying the legal standards applicable to Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the Claim in light of the pleading standards under Rule 8(a).

Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard, a complaint only must "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 577 (S.D.N.Y. 2021) (quoting *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)). Further, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding what factual matter to accept as true, the Court is not required to "credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)).

A complaint states a facially plausible claim "when the . . . plead[ed] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, plausibility does not mean probability; it means that the complaint alleges "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *Twombly*, 550 U.S. at 556. Detailed factual allegations are not

---

been the practice of this Court to consider the Consumer Claims Trustee's documentary submissions together with claims as if they were consolidated. The Court does so here.

11

necessary to survive a motion to dismiss, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Claimant does not challenge the Consumer Claims Trustee's construction of the Claim. The Court agrees that, at best, the Claim purports to assert a breach of contract claim and a claim to relief under TILA. Below, the Court considers whether Claimant has stated a claim to relief under either claim.

## Discussion

### Breach of Contract

Under Texas law, a breach of contract claim requires: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App. 2001). A cause of action accrues "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997) (citing *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)). In other words, the claim arises at the time of the breach which "occurs when a party fails to perform a duty required by the contract." *Hoover v. Gregory*, 835 S.W.2d 668, 677 (Tex. App. 1992).

Claimant's breach of contract claim fails to satisfy the pleading requirements set forth in Rule 12(b)(6). Claimant has failed to support her bare assertion that Ditech failed to credit her payments under the Note between 2013 and 2015 with any factual detail. *See Iqbal*, 556 U.S. at 681 ("the conclusory nature of . . . allegations . . . disentitles them to the presumption of truth."). Although Claimant has attached to her Response bank records that appear to show a history of

12

payments to Ditech and Green Tree, the history of payments to those servicers says nothing about whether they credited those payments to her account and are thus not sufficient to permit the Court to draw the inference that Ditech is liable for the misconduct she alleges. *See id.* at 678.

Even if Claimant's allegations were supported with factual allegations to allow the Court to draw such an inference, Claimant has failed to plead that she performed her own obligations under the contract. Again, Claimant offers bank statements to support her claim that she paid the loan servicers. However, she has not pleaded any facts to demonstrate that these are the amounts that she owed under the Mortgage.

Claimant's pleading also fails to plausibly allege that she was damaged as a result of the alleged breach. The Claim and Response include no facts that allow the Court to infer that Ditech is liable for either the $41,000.00 figure she, in her Response, claims represent the outstanding principal balance on the Note as reported by her servicer around October 2020. Because, as mentioned, neither the proof of claim nor the Response plausibly demonstrate that Ditech failed to credit her account, she cannot demonstrate a connection between Ditech's allegedly wrongful conduct and her claim for damages. *See AZZ Inc. v. Morgan*, 462 S.W.3d 284, 289 (Tex. App. 2015) ("the absence of a causal connection between the alleged breach and the damages sought will preclude recovery").[13]

---

[13] At the Sufficiency Hearing, Claimant argued that her credit report's omission of her payment history from 2013–15, taken together with her bank statements showing payments toward her account during that period, demonstrate that Ditech must not have credited her payments during that period. She also argues that the credit reporting agency is a government entity. First, failure to raise these arguments prior to the Sufficiency Hearing "alone is a basis to reject [them]." *In re Navillus Tile, Inc.*, 634 B.R. 847, 855 (Bankr. S.D.N.Y. 2021) (quoting *In re AMR Corp.*, 598 B.R. 365, 384 (Bankr. S.D.N.Y. 2019)). The reasons why courts ordinarily "will not consider arguments raised for the first time in a reply brief," *United States v. Barnes*, 158 F.3d 662, 672 (2d Cir. 1998), or at argument, are manifest here; the argument that the credit reporting agency is actually a government entity is far beyond the scope of the issues that the parties have raised in their papers and to which the Trustee has had the opportunity to consider and respond. Second, although the Trustee concedes that "credit reports . . . would tend to show that Debtors failed to perform under the terms of the mortgage contract," Reply ¶ 32, the Claimant has not attached any such credit reports

13

Even if Claimant could demonstrate a connection between Ditech's allegedly wrongful conduct and her claim for damages, part of the Claim would still fail. Under Texas law, "[a] party asserting a breach of contract claim must sue no later than four years after the day the claim accrues." *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 16.004 (establishing a four-year statute of limitations on breach of contract claims). A claim for breach of contract accrues when that contract is breached. *Stine v. Stewart*, 80 S.W.3d at 592. The Claim is based on Ditech's failure to credit her payments from 2013 through 2015. Claimant filed the Claim on June 3, 2019; as the Trustee correctly notes, Texas's statute of limitations for breach of contract would limit Claimant to maintaining a claim for only the "non-credited payments in the latter half of 2015." Reply ¶ 36.

**Truth in Lending Act**

The Truth in Lending Act, 15 U.S.C. §§ 1601–1667f, "promote[s] the informed use of credit by assuring a meaningful disclosure of credit terms." *Hariprasad v. Master Holdings Inc.*, 788 F. App'x 783, 787 (2d Cir. 2019) (summary order) (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 186 (2d Cir. 2016)). Under TILA, lenders are required to "provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Id.* (quoting *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998)).

TILA was enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing

---

to her submissions nor alleged in those submissions what those credit reports say. For those reasons, the Court does not credit Claimant's arguments made for the first time at the Sufficiency Hearing.

and credit card practices." 15 U.S.C. § 1601(a). The implementing regulations for TILA are set forth in Regulation Z, 12 C.F.R. pt. 1026—accompanied by official interpretations at 12 C.F.R. pt. 1026, Supp. I, pts. 1–5.

TILA applies "to credit transactions secured by real or personal property used or expected to be used as the principal dwelling of the debtor." *Antanuos v. First Nat. Bank of Arizona*, 508 F. Supp. 2d 466, 471 (E.D. Va. 2007) (citing 15 U.S.C. § 1603; 12 C.F.R. § 226.3(b)). The implementing regulations further impose limitations on mortgages that are subject to the requirements of 12 C.F.R. § 1026.32. Regulation Z prohibits certain acts or practices in connection with credit secured by a dwelling, *id.* § 1026.36, and certain types of credit secured by a consumer's principal dwelling, *id.* § 1026.35.

Following the consummation of a purchase contract, including a refinancing, TILA and Regulation Z impose certain obligations on servicers, such as notifying a consumer when the rate on an adjustable-rate loan changes, 12 C.F.R. § 1026.20(c), crediting mortgage payments as of the date of receipt, 15 U.S.C. § 1639f(a), and providing a periodic statement each billing cycle, 15 U.S.C. § 1638(f)(1); 12 C.F.R. § 1026.41. Specifically, TILA requires servicers to credit periodic payments to the consumer's mortgage account "as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency." 12 C.F.R. § 1026.36(c)(1)(i).

For the same reasons that she cannot make out a breach of contract claim, Claimant cannot make out a plausible TILA claim. Although Claimant's bank statements suffice to allege that she made regular mortgage payments, they say nothing about whether Ditech credited those payments to her account, much as account histories, or invoices, or other records might. To be sure, those documents are not necessary to render her claim plausible, but more than conclusory allegations

that Ditech failed to credit those payments are necessary to do so. In short, just as Claimant's assertions that Ditech failed to apply payments against the Note are insufficiently detailed to allow the Court to infer that Ditech is liable for a breaching the Mortgage by failing to credit her payments, they are also insufficiently detailed to allow it to infer that Ditech is liable for violating TILA by failing to credit her payments.

## **Conclusion**

Based on the foregoing, the Court sustains the Objection and disallows and expunges the Claim.

IT IS SO ORDERED.

Dated: June 28, 2024
      New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge