| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |
| ------------------------------------------------------- x<br>In re:                                                                                :<br>                                                                                     :<br>Ditech Holding Corporation, *et al.*,                          :<br>                                                                                     :<br>                                                              Debtors.[1]   :<br>------------------------------------------------------- x | Case No. 19-10412 (JLG)<br>Chapter 11<br>(Jointly Administered) |

## MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS TRUSTEE'S SEVENTY-SECOND OMNIBUS OBJECTION WITH RESPECT TO THE PROOF OF CLAIM FILED BY AVIS L. COLE

**APPEARANCES:**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:   Richard Levin

AVIS L. COLE[2]
*Appearing Pro Se*
743 Wilson Triplett Road
Noxapater, Mississippi 39346

---

[1] On September 26, 2019, the Court confirmed the Third *Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate") (Case No. 19-10412 (JLG)) remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

[2] Ms. Cole is acting pro se herein and, in that capacity, filed the Claim and Response to the Objection. As set forth below, Ms. Cole did not appear at the Sufficiency Hearing. She did not request that the Court adjourn the hearing or otherwise seek an accommodation from the Court with respect to the hearing. Therefore, the Court reviewed the matter on the papers.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### INTRODUCTION[3]

On April 22, 2019, Avis L. Cole ("Claimant") filed Proof of Claim No. 1175 (the "Claim") in the amount of $63,190.00 against Ditech Financial LLC ("Ditech"), $45,190.00 of which Claimant asserted was secured. On March 19, 2021, the Plan Administrator and Consumer Claims Trustee filed their Seventy-Second Omnibus Objection to claims (the "Objection").[4] The Objection seeks to disallow and expunge certain claims, including the Claim, that, upon review, the Plan Administrator and Consumer Claims Trustee deemed meritless or insufficiently supported in the amount or priority asserted. On or around March 30, 2021, Claimant submitted a response to Ditech which the Consumer Claims Trustee filed with the Court on May 20, 2024 (the "Response").[5] On May 30, 2024, the Consumer Claims Trustee[6] submitted a reply in support of the Objection (the "Reply").[7] Claimant is acting pro se in this contested matter.

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[4] *Seventy-Second Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims),* ECF No. 3280.

[5] *Response of Avis Cole to the Plan Administrator and Consumer Claims Trustee's Seventy-Second Omnibus Objection (No Basis Consumer Creditor Claims) (Claim 1175),* ECF No. 5074.

[6] On May 10, 2023, the Court granted the joint motion of the Plan Administrator and Consumer Claims Trustee to estimate the Claim at the sum of $63,190.00, for the purpose of setting a distribution reserve, and to reclassify it as a non-363(o) Consumer Creditor Claim under the Third Amended Plan. *See Order Granting Consumer Claims Trustee and Plan Administrator's Joint Omnibus Motion to Reclassify Certain Proofs of Claim and Consumer Claims Trustee's Motion to Estimate for for* [sic] *Purposes of Distribution Reserves*, ECF No. 4732. Upon the entry of that order, the Plan Administrator lost its interest in the Objection, as the Consumer Claims Trustee is solely responsible for reconciling Consumer Creditor Claims.

[7] *Reply of the Consumer Claims Trustee in Support of the Plan Administrator and Consumer Claims Trustee's Seventy-Second Omnibus Objection (No Basis Consumer Creditor Claims) with Respect to the Claim of Avis Cole,* ECF No. 5078.

Pursuant to the Claims Procedures Order,[8] the Objection was adjourned upon receipt of Claimant's Response so that the Court could conduct a Sufficiency Hearing on the Claim. On June 27, 2024, the Court held a hearing to consider the Claim's sufficiency during which it applied the legal standard of review prescribed for motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Claims Procedures Order ¶ 3(iv)(a).

The Consumer Claims Trustee, through counsel, appeared at the Sufficiency Hearing; Claimant did not appear. The Court has reviewed the Claim, Objection, Response, and Reply, including all documents submitted in support thereof. As explained below, accepting the well-pleaded factual allegations asserted by Claimant in support of the Claim as true, drawing all reasonable inferences in Claimant's favor, and liberally construing the Claim and Response to raise the strongest arguments that they suggest, the Claim fails to state a plausible claim to relief against Ditech. Accordingly, the Court sustains the Objection and disallows and expunges the Claim.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[8] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632 ("Claims Procedures Order").

## BACKGROUND

**The Loan**

On or around June 25, 1998, Claimant purchased a manufactured home (the "Home"), and executed a Manufactured Home Promissory Note, Security Agreement and Disclosure Statement (the "Note"),[9] in the amount of $22,060.00 in favor of Green Tree Financial Servicing Corporation ("Green Tree").[10]

The Federal Truth in Lending Disclosures in the Note show that (i) the loan is a twenty-year loan that accrues simple annual interest at 13% and calls for 240 monthly payments of $258.45, (ii) the amount financed is $22,060, and (iii) the total sale price of the Home (inclusive of a downpayment and projected interest payments) is $63,190. The Bill of Sale for the Home shows a sale price of $22,900.[11] The Home sits at 743 Wilson Triplett Road, Noxapater, Mississippi 39346 (the "Property"). The most current UCC Financing Statement recorded against

---

[9] The Note, in its entirety, is annexed as Exhibit A to the Reply. Claimant only annexed the first page of the Note to the Claim. Claim at 9. For the purposes of clarity and for the sake of completeness, the Court relies on the complete version provided by the Consumer Claims Trustee. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 234 (2d Cir. 2016) (on a motion to dismiss, court may consider entire document mentioned in complaint even if a full copy is not attached). Additionally, the Court takes judicial notice of the Note and the other documents annexed to the Reply as they are integral to the Claim. *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) ("[Courts] must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *see Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (holding that, in a contract action, a court can take judicial notice of the underlying contract as a document "integral to the complaint"); *Leon v. Shmukler*, 992 F. Supp. 2d 179, 184 n.1 (E.D.N.Y. 2014) ("It is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records.").

[10] Green Tree Financial Servicing Corporation changed its name to Conseco Finance Servicing Corp. on October 1, 1999. Conseco Finance Servicing Corp. changed its name to Green Tree Servicing LLC on June 9, 2003, and Green Tree Servicing LLC later merged with Ditech Mortgage Corp. on August 31, 2015.

[11] The Bill of Sale is annexed in Exhibit B to the Reply. Included within Exhibit B is the UCC financing statement from 1998.

4

the Property is dated June 20, 2018, and shows Family Choice Financial, Inc. as the holder of a security interest in the Property.[12]

**The Chapter 11 Cases**

On February 11, 2019, Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates, including Ditech (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019 as the deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[13] The Court extended the General Bar Date for consumer borrowers to June 3, 2019 (the "Consumer Creditor Bar Date").[14]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, which went into effect on September 30, 2019.[15] The Plan Administrator and Consumer Claims Trustee are fiduciaries under the Third Amended Plan. *See* Third Amended Plan, art. I, §§ 1.130, 1.184, 1.186. The Plan Administrator is charged with winding down, dissolving, and liquidating the Wind Down Estates and is provided exclusive authority to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims. *Id.* art. VII, § 7.1. The

---

[12] The UCC filing report is annexed as Exhibit C to the Reply.

[13] O*rder Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[14] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[15] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

5

Consumer Claims Trustee, on the other hand, is responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims. *See id.* art. I, § 1.41. As such, she is exclusively authorized to object to Consumer Creditor Claims. *Id.* art. VII, § 7.1.

**The Claims Procedures Order**

The Claims Procedures Order authorizes the Plan Administrator and Consumer Claims Trustee to file objections seeking reduction, reclassification, or disallowance of claims. A properly filed and served response to an objection gives rise to a "Contested Claim." *See* Claims Procedures Order ¶ 3(iv). Contested Claims are resolved at a Claim Hearing, which can be scheduled as either a "Merits Hearing," an evidentiary hearing on the merits of a Contested Claim, or a "Sufficiency Hearing," a non-evidentiary hearing to address whether a Contested Claim states a claim to relief against the Debtors. *Id.* ¶ 3(iv)(a), (b). At a Sufficiency Hearing, the Court applies the legal standard of review applied on a motion to dismiss under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

**The Claim**

Claimant's Proof of Claim, Official Form 410 indicates that the Claim is based on "fraud, overcharge on loan and harassment." Claim at 1. In the narrative annexed to the Proof of Claim, Claimant states that Ditech "charged [her] $63,190.00" under the contract. She states that she made 240 payments under the terms of the contract, with her final payment in October 2018, and that she received "an extension for 3 months in July of 2018 for the 3 months only." *Id.* Claimant attaches a "Conesco Finance Extension Request" form showing that she applied for a three-month deferral on June 21, 2001. *Id.* at 3-6. She contends that soon after she made the October 2018

6

payment, Ditech "started harassing [her] for more money," "called and made threats to take her trailer," and "filed a [f]alse IRS document." *Id.* at 3.

Claimant attaches billing statements from Ditech from September 2018 and January 2019, *id.* at 7, 11, 13, and a receipt from Walmart, *id.* at 8. The September 2018 billing statement shows the amount due as $7,337.77 and Claimant made a notation on the statement which says "258.45" "240 of 240 last pmt" and "sent 318.05." *Id.* at 7. Claimant includes a receipt from Walmart dated October 10, 2018, reflecting a payment to Ditech in the amount of $318.05. *Id.* at 8. On the receipt, Claimant wrote "240 of 240 last pmt". *Id.* The January 2019 billing statement contains a delinquency notice and states Claimant's account has reached maturity and shows an amount due of $7,504.19. *Id.* at 11. It states an outstanding principal balance of $6,301.28, a deferred balance of $412.83, and a corporate advance of $528.00. *Id.*

In support of her contention that Ditech falsely filed a tax document indicating that she owed them money, Claimant attached a Form 1098 for the year 2018, dated January 23, 2019 (the "IRS 1098 Form"). *Id.* at 12. The form states the outstanding mortgage principal as of January 1, 2018 was $8,145.33, which Claimant circles and notes as false. *Id.* She also writes, "Never made A Loan!" The IRS 1098 Form indicates that she paid $795.50 in interest payments during the 2018 tax year. *Id.* at 3, 12.

**The Objection**

The Plan Administrator and Consumer Claims Trustee request that the Court disallow and expunge claims that are insufficiently supported by evidence in the amount and priority asserted, deemed to have no merit, and/or untimely filed. Objection ¶ 13. Specifically, the Objection states that based on a review of the Debtors' books and records, the Claim lacks merit. Objection, Ex. A at 1.

7

**The Response**

In the Response, Claimant complains that the amount of money she paid for the home is "beyond words" and "more . . . than originally agreed." Response at 1. She reiterates her allegation that someone falsified documents regarding a "loan that [she] never had" and that Ditech "threatened and harassed" her to pay more money. *Id.* She states that "they even sent people to [her] house taking pictures" of the Home after she "sent them the papers showing the last payment date and how much the payment was." *Id.*

She explains that a lawyer was working on her case but quit for personal reasons. *Id.* She maintains that she spoke with a judge in Mississippi who told Claimant that Ditech's actions were illegal and she "had a legitimate case." *Id.* She states she "submitted all the paperwork and and [sic] bank statements from [her] bank plus all the threaten[ing] letters [Ditech] have sent over the years." *Id.*

**The Reply**

The Consumer Claims Trustee argues that Claimant has not met the pleading threshold established by Rule 8(a) of the Federal Rules of Civil Procedure ("Rule 8(a)"). She also asserts the Claim does not sufficiently state a claim upon which relief can be granted and thus, cannot survive a Rule 12(b)(6) challenge.

Although the Claim does not state particular claims on the basis of which it seeks recovery, the Consumer Claims Trustee reads it to assert claims for fraud and unfair debt collection practices. Reply ¶¶ 28-29. The Court agrees and construes it as such.

**LEGAL PRINCIPLES**

Pursuant to section 502(a) of the Bankruptcy Code, a claim that is properly filed under Bankruptcy Rule 3001 and section 501 of the Bankruptcy Code is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a); *In re Roman Cath. Diocese of Rockville Ctr.*, 651 B.R.

8

146, 157 (Bankr. S.D.N.Y. 2023) ("The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules, constitutes *prima facie* evidence of the validity and amount of the claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a)." (quoting 4 COLLIER ON BANKRUPTCY ¶ 502.02[3][e] (16th ed. 2019))). If a party in interest objects and refutes at least one of the claim's essential allegations, the claimant bears the burden to demonstrate the validity of the claim. *See Rozier v. Rescap Borrower Claims Tr. (In re Residential Cap., LLC)*, No. 15-cv-3248, 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010).

Section 502(b) sets forth the grounds for disallowing a proof of claim filed under section 501 of the Bankruptcy Code. As relevant in this contested matter, section 502(b) of the Bankruptcy Code provides that the Court shall determine and allow the amount of a claim subject to an objection as of the bankruptcy petition date "except to the extent that . . . (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). To determine if a claim is allowable under section 502(b)(1), courts generally look to state law. *Fisher Bros. Mgmt. Co. LLC v. Genco Shipping & Trading Ltd. (In re Genco Shipping & Trading Ltd.)*, 550 B.R. 676, 680 (S.D.N.Y. 2015) (noting that as used in section 502(b)(1), the term "'[a]pplicable law' most often refers to state law.").

At the Sufficiency Hearing, the Court evaluates the Claim and Response under the same legal standard of review courts apply on a motion to dismiss under Rule 12(b)(6). *See* Claims Procedures Order ¶ 3(iv)(a). In doing so here, the Court recognizes that Claimant is proceeding pro se and therefore it must "liberally construe [her] pleadings and briefs submitted" and "read[] such submissions to raise the strongest arguments they suggest." *Kravitz v. Purcell*, 87 F.4th 111,

119 (2d Cir. 2023) (quoting *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022)); *see also McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156–57 (2d Cir. 2017) (discussing the policy considerations undergirding liberal construction of pro se litigants' filings).

On a motion to dismiss, the Court accepts all allegations as true and draws all reasonable inferences in favor of the non-moving party. *Francis v. Kings Park Manor, Inc.,* 992 F.3d 67, 72 (2d Cir. 2021). Still, the Court "need not accord 'legal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness.'" *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 591 (S.D.N.Y. 2008) (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)). In ruling on a Rule 12(b)(6) motion, "[t]he court's function is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'" *Havens v. James*, 76 F.4th 103, 116-17 (2d. Cir. 2023) (quoting *Festa v. Loc. 3 Int'l Brotherhood of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990)).[16]

Under Rule 12(b)(6), the Court will disallow the Claim if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Claim must contain sufficient facts to state a facially plausible claim to relief such that the Court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

---

[16] "On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.,* documents that are 'integral' to the complaint." *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citation omitted); *accord Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Because Sufficiency Hearings consider consumer claims, often by unrepresented claimants whose claims lack detail or do not attach pertinent supportive documentation, it has been the practice of this Court to consider the Consumer Claims Trustee's documentary submissions together with claims as if they were consolidated. The Court does so here.

10

## ANALYSIS

In applying Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the claims in light of the pleading requirements under Rule 8(a). To be adequately pleaded, a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8(a)(2) is to provide defendants with fair notice of the claim itself and its basis. *Twombly*, 550 U.S. at 555; *Lopez v. Wright*, No. 9:05-CV-1568, 2007 WL 388919, at *2 (N.D.N.Y. Jan. 31, 2007) ("A complaint that fails to comply with this rule 'presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims.'" (citing *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996))).

The Court finds that Claimant has satisfied the pleading requirements under Rule 8(a). Claimant does not set forth specific legal theories or analysis, but she clearly describes what she alleges as Ditech's wrongdoing. She provides supporting documentation and explains her position based on the facts. While the Consumer Claims Trustee asserts Claimant does not set out particular legal theories, she acknowledges that Claimant "vaguely articulates claims for fraud and unfair debt collection." Reply ¶ 28. The Consumer Claims Trustee had notice of Claimant's allegations, and was able to understand and address them in her Reply. Therefore, the Court finds that the Claim satisfies Rule 8(a) and provides the Consumer Claims Trustee with sufficient notice of the basis of her claims.

The Court will consider whether Claimant sufficiently alleges claims for fraud or unfair debt collection practices to survive a Rule 12(b)(6) challenge below.

**<u>Whether Claimant States a Claim for Fraud Against Ditech</u>**

The Claim is premised on two core allegations. Claimant asserts that Ditech (i) filed a phony IRS document, and (ii) overcharged her on her loan. Under Mississippi law, the elements of fraud are:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.

*Watson Lab'ys, Inc. v. State*, 241 So. 3d 573, 584 (Miss. 2018) (quoting *Trim v. Trim*, 33 So. 3d 471, 478 (Miss. 2010)).

Rule 9(b) of the Federal Rules of Civil Procedure provides that a party alleging fraud must state the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b). Allegations related to the conditions of a person's mind, such as malice, intent, or knowledge, only need to be stated generally. *Id.* "The particularity requirement of Rule 9(b) serves to 'provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit.'" *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (quoting *O'Brien v. Nat'l Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

Claimant asserts that Debtors filed a "[f]alse IRS document" indicating that she owed them money. Claim at 3.[17] However, the facts she alleged in support of the Claim do not support her contention that the form contains false information. Rather, the billing statements she provided

---

[17] In support of that contention, she attaches the IRS Form 1098 reporting an outstanding principal balance of $8,145.33 as of January 1, 2018. *Id.* at 12. The Court construes the handwriting on the form that reads "Never made A Loan!" to indicate that Claimant believes the form reflects a second loan, to which she never agreed. However, it is plain from the face of the form that it merely recites the remaining outstanding balance on the original mortgage loan. She also contends that "[s]omeone falsified documents of a loan that I never had," confirming that Claimant has misconstrued the outstanding balance as a new loan. Response at 1.

12

are consistent with IRS Form 1098, and Claimant provides no other documents to support her claims to the contrary.[18]

Claimant also contends that she made all 240 payments required under the Note as of October 10, 2018, or 242 months and 5 days from the date of the first payment, yet Ditech continued to fraudulently attempt to collect additional amounts not due and owing under the Note. Claim at 8, Exhibit A at 1. To explain why she believes her final payment was due in October 2018 rather than August 2018, she points to her request for extension dated June 21, 2001 (the "Extension Request"). Claim at 5.

However, that does not support the Claim because it demonstrates that she was in default under the Note. In the Extension Request, she acknowledged she was 60 days past due under the Note and requested a three-month deferral for the months of May, June, and July 2001. *Id.* She further acknowledged that, at the time of the request, she owed late fees in the amount of $10 and insurance premiums in the amount of $260. *Id.* The Extension Request also makes clear that interest would continue to accrue during the extension and that "Returned Check Fees, Insurance Premiums, Late Fees, and Other Miscellaneous Charges not paid through the transaction will still be due." *Id.*

The loan accrued simple interest at a rate of thirteen percent. Simple interest loans accrue daily. The Note anticipates late payments and defines the simple interest contract as follows:

> This is a simple interest contract. Interest will accrue upon the unpaid principal balance outstanding from time to time. The Finance Charge, Total of Payments and Payment Schedule were computed based on the assumption the payment will be made on the dates scheduled for payment. Early payments will reduce my final payment. Late payments will increase my final payment. My final payment will

---

[18] The September 12, 2018 billing statement attached to the Claim shows a principal balance of $6,746.34 and a deferred balance of $412.83. Claim at 7. The statement reflects year-to-date principal paid in the amount of $1,398.99, an amount, when added to the existing unpaid principal balance, that totals $8,145.33. *Id.* The billing statement is thus consistent with the IRS Form 1098.

13

> be equal to all unpaid sums due under this Agreement. My promise requires me to pay the final payment on the date due even if the amount of the final payment differs from the amount of the final payment disclosed.

*See* Note ¶ 4. Claimant does not allege facts demonstrating that all of the loan payments were made, let alone that they were timely made.

The September 12, 2018 billing statement reflects a past-due amount of $315.05. Claim at 7. It also shows that the previous payment was received on August 16, 2018—eleven days after the due date. *Id.* Although late fees do not accrue until a payment is more than fifteen days late, simple interest would accrue each day past the due date on the fifth of the month. *See* Note at 1. The same billing statement also shows a deferred balance of $412.83.[19] At best, Claimant has shown she made two monthly payments in the amount $318.05 after the original 240-month term. This is simply insufficient to show that she paid the simple interest, late fees, and other charges that accrued over the life of the loan, especially when she acknowledges that she was 60-days delinquent and obtained a three-month extension in 2001, all during the loan term in which simple interest continued to accrue.

To summarize, Claimant contends that she made 240 payments, totaling $63,190.00 (the "Total Sale Price" listed on the Note). Claim at 1. She provides no information to support this.

---

[19] Claimant also does not account for the possibility that additional charges—such as insurance costs or late fees—could have also accrued over the life of the loan, causing the 240 payments of principal and interest alone to be insufficient to clear her balance. Under the terms of the Note, Claimant was required to maintain insurance premiums on the Property. *See* Note ¶ 10. Claimant had the option of seeking out her own insurance policy or permitting the lender/servicer to advance premiums on her behalf. The Note contained the following language regarding force-placed insurance:

> If you [lender] purchase such insurance, I [borrower] will immediately repay you for any amounts you spend in purchasing such insurance, plus interest up to the contract rate of interest or, at your option, pay you over time as a workout of the obligation. If I owe you for any insurance (or for late charges, attorney fees or collection costs), I understand that I owe an additional sum for these debts beyond my monthly principal and interest payment. My monthly payment will therefore be greater than that stated on page 1 until such additional debts are paid in full.

*Id.*

14

Rather, the Ditech billing statements and the IRS Form 1098 show a substantial outstanding balance on the account following her last payment; Claimant offers no plausible explanation why this balance is erroneous. Given the dearth of supporting documentation, Claimant effectively asks the Court to infer fraud based entirely on unsupported conjecture. Even construing the allegations and documents in the light most favorable to Claimant, the Claim fails to state a claim for fraud under Mississippi law.

**Whether Claimant States a Claim Under the Fair Debt Collection Practices Act**

Consumer debt collection practices are regulated by the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p (the "FDCPA"). "The purpose of the [FDCPA] is to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *McMurray v. ProCollect, Inc.,* 687 F.3d 665, 668 (5th Cir. 2012) (quoting 15 U.S.C. § 1692(e)); *Wood v. N. Mississippi Med. Ctr., Inc.*, No. 20CV42, 2020 WL 8269547, at *2 (N.D. Miss. Oct. 23, 2020) (describing FDCPA as "a broad statute that extensively regulates the methods that debt collectors may use when collecting debt and how debt collectors may communicate with debtors and third parties"). The FDCPA prohibits debt collectors from making false or misleading representations. 15 U.S.C. § 1692e. It also prohibits debt collectors from engaging in any conduct that results in harassment, oppression, or abuse in connection with the collection of a debt. *Id.* § 1692d. An individual may recover its actual damages, plus statutory damages of up to $1,000.00. *Id.* § 1692k.

In support of the Claim, Claimant contends that Ditech attempted to deceive her by collecting a debt that she did not owe. She argues that Ditech filed a "false IRS document," showing an erroneous outstanding principal balance after she believed she had paid off the balance.

15

Claim at 3. Claimant also asserts that Ditech harassed her by calling and demanding additional payments on a loan she had satisfied. *Id*. She maintains that Ditech threatened to foreclose on the Home if she did not make payments, and that Ditech's agents took pictures of the Home. *Id.*; Response at 1.

"The threshold requirements for relief under the FDCPA are that '(1) the plaintiff must be a 'consumer'; (2) the defendant must be a 'debt collector'; and (3) the defendant must have committed some act or omission in violation of the FDCPA.'" *In re Martin*, 617 B.R. 866, 874 (Bankr. S.D. Miss. 2020) (quoting *Snyder v. Cook & Assocs.*, No. 10CV17-SA, 2010 WL 2569189, at *1 (N.D. Miss. June 23, 2010)). The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). That definition expressly excludes any person attempting to collect "a debt which was originated by such person; [or,] a debt which was not in default at the time it was obtained by such person." *Id.* § 1692a(6)(F); *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998) ("As a general matter, creditors are not subject to the FDCPA."); *see Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("[T]he legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors.").

Claimant has not alleged facts demonstrating that the principal purpose of Ditech's business was to collect debts or that Ditech regularly collected or attempted to collect debts owed or due, or assertedly owed or due, to others. Moreover, the record is clear that, in this case, Ditech was not acting as a "debt collector." The loan originated in August 1998 with Green Tree Financial Servicing Corp., which through mergers and name changes eventually became Ditech. The Fifth

16

Circuit has determined, and the Court agrees, that a mortgage company that acquired a loan through merger has not "obtained" the loan for purposes of the FDCPA. *Brown v. Morris*, 243 F. App'x 31, 34-35 (5th Cir. 2007); *see also Pascal v. JPMorgan Chase Bank, Nat. Ass'n*, No. 09-CV-10082 ER, 2013 WL 878588, at *4 (S.D.N.Y. Mar. 11, 2013) ("at least one other circuit court, as well as a number of district courts, have found that where a defendant company acquires a debt through its merger with a previous creditor or servicer of the plaintiff, rather than via a specific assignment, the debt was not 'obtained' while it was in default"). Thus, Ditech is not a debt collector with respect to Claimant, and Claimant fails to state a claim to relief under FDCPA.[20]

## CONCLUSION

For the foregoing reasons, the Court sustains the Objection and disallows the Claim.

IT IS SO ORDERED.

Dated: June 28, 2024
New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge

---

[20] The Claim fails to state a claim to relief under the FDCPA for at least two additional reasons. First, she fails to allege in more than a conclusory fashion that Ditech engaged in misleading and abusive debt collection practices. *See Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) ("In addressing the sufficiency of a complaint we accept as true all factual allegations and draw from them all reasonable inferences; but we are not required to credit conclusory allegations or legal conclusions couched as factual allegations." (citing *Twombly*, 550 U.S. at 557)). Second, Claimant asserts, without more, that Ditech falsified an IRS statement and loan documents to mislead her into paying a debt that she believed she did not owe. She concludes that phone calls and sending people out to photograph the property constituted harassment but does not describe the nature, frequency or duration of these alleged contacts. Although she claims to have submitted documentation of her payments on the loan to the Mississippi Department of Banking and Consumer Finance, she provides no copies of that documentation nor adequately detailed allegations about what that documentation said, and she does not indicate that she ever formally disputed the debt directly with Ditech, per 15 U.S.C. § 1692g(b).

17