```
UNITED STATES BANKRUPTCY COURT                    NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
In re:                                              :
                                                    :      Case No. 19-10412 (JLG)
Ditech Holding Corporation, et al.,                 :      Chapter 11
                                                    :
                                   Debtors.¹        :      (Jointly Administered)
                                                    :
---------------------------------------------------------- x
```

# MEMORANDUM DECISION AND ORDER SUSTAINING THE PLAN ADMINISTRATOR AND CONSUMER CLAIMS TRUSTEE'S THIRTEENTH AND TWENTY-EIGHTH OMNIBUS OBJECTIONS WITH RESPECT TO THE PROOFS OF CLAIM FILED BY TOMMY D. JACKSON

A P P E A R A N C E S :

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:   Richard Levin


TOMMY D. JACKSON
*Appearing Pro Se*
795 Tupelo Street
Vidor, Texas 77662

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### INTRODUCTION[2]

Tommy D. Jackson (the "Claimant") filed Proof of Claim No. 20134 (the "Consumer Claim") in the amount of $37,000.00 against Ditech Holding Corporation (f/k/a Walter Investment Management Corporation) ("Ditech"). Thereafter, Claimant filed Proof of Claim No. 60069, against Ditech Financial LLC ("Ditech Financial") as an administrative expense claim in the amount of $34,350.00 (the "Administrative Claim," and with the Consumer Claim, the "Claims"). Claimant is acting pro se in this contested matter.

On January 17, 2020, the Consumer Claims Trustee and the Plan Administrator jointly filed their Thirteenth Omnibus Objection to claims (the "Thirteenth Objection")[3] and Twenty-Eighth Omnibus Objection to claims (the "Twenty-Eighth Objection")[4] (collectively, the "Objections"), contesting the Consumer Claim and Administrative Claim, respectively. In response to the Objections, Claimant filed substantially identical documents on February 14, 2020, and March 2, 2020 (each, a "Response").[5] On June 26, 2024, the Consumer Claims Trustee[6] replied

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[3] *Thirteenth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims)*, ECF No. 1745.

[4] *Twenty-Eighth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Admin Claims)*, ECF No. 1760.

[5] *Response to Trustee's Twenty-Eighth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Admin Claims)*, ECF No. 1859; *Response to Trustee's Thirteenth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Admin Claims)*, ECF No. 2000.

[6] On March 24, 2023, the Plan Administrator and Consumer Claims Trustee filed the *Consumer Claims Trustee and Plan Administrator's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4662 (the "Estimation Motion"). That motion sought to estimate the Administrative Claim at $0 and the Consumer Claim at $37,000 for the purpose of setting a distribution reserve. Estimation Motion, Ex. A at 1. The Estimation Motion further requested that the Claims be classified as Class 6 Consumer Creditor Claims that were not 363(o) unsecured Consumer Creditor Claims, as defined by the Third Amended Plan. *Id.* ¶ 10. By order dated May 10, 2023, the Administrative Claim was estimated at $0, and the Consumer Claim was estimated at

2

to the Response (the "Reply").[7] On July 11, 2024, Claimant sent his sur-reply to the Consumer Claims Trustee via e-mail, which the Consumer Claims Trustee filed on July 18, 2024 (the "Sur-Reply").[8] On the same day, the Consumer Claims Trustee filed her response to the Sur-Reply (the "Sur-Response").[9]

Pursuant to the Claims Procedures Order,[10] the filing of the Response caused an adjournment of the Objections so that the Court could conduct a Sufficiency Hearing on the Claims. Under that order, the legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Claims Procedures Order ¶ 3(iv)(a). In accordance with the Claims Procedures Order, the Court conducted a

---

$37,000.00, and both Claims were classified as a non 363(o) claim, Class 6 Consumer Creditor Claims, as defined in the Third Amended Plan. *Order Granting Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4732 (the "Estimation and Classification Order") at 5. Upon the entry of that order, the Plan Administrator lost its interest in the Objection, as the Consumer Claims Trustee is solely responsible for reconciling Consumer Creditor Claims.

[7] *Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee's Thirteenth Omnibus Objection with Respect to the Claim of Tommy Jackson (20134) and the Twenty-Eighth Omnibus Objection with Respect to the Claim of Tommy D. Jackson (60069)*, ECF No. 5110.

Because the numbering of the paragraphs within the Reply restarts in the middle of the document and the Reply contains no internal page numbers, references to paragraphs within the Reply will be to those under the heading "Jurisdiction" that begins on PDF page 6.

[8] *Narrative and Documents Submitted by Tommy D. Jackson in Sur-Reply to the Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee's Thirteenth Omnibus Objection and the Twenty-Eighth Omnibus Objection with Respect to the Claims of Tommy D. Jackson (20134 and 60069)*, ECF No. 5140.

Because the Sur-Reply's internal pagination is inconsistent, reference to any page within the Sur-Reply will be to its PDF pagination.

[9] *Response of the Consumer Claims Trustee to the Sur-Reply of Claimant Tommy D. Jackson to the Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee's Thirteenth Omnibus Objection with Respect to the Claim of Tommy Jackson (20134) and the Twenty-Eighth Omnibus Objection with Respect to the Claim of Tommy D. Jackson (60069)*, ECF No. 5142.

[10] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632 ("Claims Procedures Order").

3

Sufficiency Hearing on the Claims on July 25, 2024. The Consumer Claims Trustee appeared through counsel and Claimant appeared pro se. The Court heard arguments on the Objections.

The Court has reviewed the Claims, Objections, Response, Reply, Sur-Reply, and Sur-Response, including all documents submitted in support thereof, and has considered the arguments made by the parties in support of their respective positions. As explained below, accepting Claimant's well-pleaded factual allegations as true, drawing all reasonable inferences in Claimant's favor, and liberally construing the Claims, Response, and Sur-Reply to raise the strongest arguments that they suggest, the Claims fail to state plausible claims for relief against Ditech. Accordingly, the Court sustains the Objections and disallows the Claims.

## **JURISDICTION**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## **BACKGROUND**

**The Loan**

On or around January 12, 2012, Claimant executed a promissory note in favor of Royal United Mortgage LLC ("Royal United Mortgage") in the amount of $52,000 (the "Note"). The Note was secured by a mortgage (the "Mortgage," together with the Note, the "Loan")[11] on real

---

[11] The Mortgage is annexed as Exhibit A to the Reply. The Court takes judicial notice of the Mortgage and the other documents annexed to the Reply as they are integral to the Claim. *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 57 (S.D.N.Y. 2021) ("In deciding [a] motion to dismiss, the Court is limited to the factual allegations of the Complaint, materials that are attached by the Complaint or integral thereto, and matters of which the Court may take judicial notice."); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 462 (S.D.N.Y. 2020) ("Judicial notice may be taken of documents that are 'integral to the complaint,' such that the complaint 'relies heavily upon [the documents'] terms

4

property located at 795 Tupelo Street, Vidor, Texas 77662 (the "Property"). On August 6, 2019, Royal United Mortgage assigned the Mortgage to Ditech Financial,[12] and on February 11, 2020, Ditech Financial assigned it to New Residential Mortgage LLC ("NewRez").[13]

**The Chapter 11 Cases**

On February 11, 2019, Ditech and certain of its affiliates, including Ditech Financial (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[14] The Court extended the General Bar Date for consumer borrowers to June 3, 2019 (the "Consumer Creditor Bar Date").[15]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, and the Court entered a confirmation order (the "Confirmation Order").[16] The Third Amended Plan went into

---

and effect.'" (quoting *Palin v. N.Y. Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019) (alterations in original))); *Ocampo v. JP Morgan Chase Bank, N.A.*, 93 F. Supp. 3d 109, 114 (E.D.N.Y. 2015) (court may consider loan documents and loan transfer documents that are integral to the complaint on a motion to dismiss); *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (taking judicial notice "of relevant matters of public record").

[12] The assignment to Ditech Financial is annexed as Exhibit B to the Reply.

[13] The assignment to NewRez is annexed as Exhibit C to the Reply.

[14] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[15] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[16] *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1404.

5

effect on September 30, 2019.[17] Under the Confirmation Order, the deadline for filing claims for administrative expenses was November 11, 2019.

The Plan Administrator and Consumer Claims Trustee are fiduciaries under the Third Amended Plan. *See* Third Amended Plan, art. I, §§ 1.130, 1.184, 1.186. The Plan Administrator is charged with winding down, dissolving, and liquidating the Wind Down Estates and has exclusive authority to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims. *Id.* art. VII, § 7.1. The Consumer Claims Trustee is responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims. *See id.* art. I, § 1.41. As such, she is exclusively authorized to object to Consumer Creditor Claims. *Id.* art. VII, § 7.1.

**The Claims Procedures Order**

The Plan Administrator and Consumer Claims Trustee are authorized to file objections seeking reduction, reclassification, or disallowance of claims. Under the Claims Procedures Order, a properly filed and served response to an objection, omnibus or otherwise, gives rise to a "Contested Claim." *See* Claims Procedures Order ¶ 3(iv). Contested Claims are resolved at a Claim Hearing, and the Plan Administrator and Consumer Claims Trustee have the option to schedule it as either a "Merits Hearing," or a "Sufficiency Hearing." *Id.* ¶ 3(iv)(a), (b). A Merits Hearing is an evidentiary hearing on the merits of a Contested Claim. *Id.* ¶ 3(iv)(b). A "Sufficiency Hearing" is a non-evidentiary hearing in which the Court applies the legal standard for a motion to dismiss

---

[17] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

under Rule 12(b)(6) to determine whether a Contested Claim states a claim for relief against the Debtors. *Id.* ¶ 3(iv)(a).

**The Claims**

On March 18, 2019, Claimant filed the Consumer Claim for $37,000. He asserts that the claim is based on "insurance." Consumer Claim at 2. As support for the claim, he annexes a $42,000 check from Wright National Flood Insurance Company dated October 30, 2017, payable to Claimant and Ditech Financial. *Id.* at 4.

On November 8, 2019, Claimant filed the Administrative Claim for $34,350. Administrative Claim at 2. He asserts that the basis for the claim is "Borrower." *Id.* There are no documents attached to the Administrative Claim.

**The Objections**

On January 17, 2020, the Consumer Claims Trustee and Plan Administrator filed the Thirteenth Objection seeking to disallow the Consumer Claim on the basis that it did not contain sufficient evidence to support the validity of the claim. Thirteenth Objection ¶ 13; *id*. Ex. A at 11. On January 17, 2020, the Consumer Claims Trustee and Plan Administrator filed the Twenty-Eighth Objection to the Administrative Claim on the grounds that it lacks sufficient supporting documentation and should be disallowed and expunged. Twenty-Eighth Objection ¶ 13; *id*., Ex. A at 24.

**The Response and Sur-Reply**

Claimant says that he holds an unsecured claim totaling about $16,905 against Ditech for Ditech's breach of a contract, which he does not identify. As support for the claim, he alleges that in August 2017, Hurricane Harvey flooded the Property with over seven feet of water, causing $102,000 in damages, with only $42,000 in flood insurance. Sur-Reply at 3; *see also* Sur-Reply,

Ex. 2 (City of Vidor Substantial Damage Estimator).[18] He says when he filed the Consumer Claim, Ditech remained in possession of insurance proceeds totaling $19,500 and that as of February 2020, Shellpoint had released all but $7,989.66 of such proceeds. Response at 1, 6. However, in his Sur-Reply, Claimant alleges that "Ditech and Shellpoint did not release the last $10,000 until January 2020," Sur-Reply at 3, apparently indicating that the proceeds have been completely released.

Claimant alleges that he was unable to repair and reoccupy the Property because Ditech failed to timely release the insurance proceeds to him. Response at 1. He says that the insurance proceeds were held in a restricted escrow account and that Ditech would not provide him with any information about the account or explain what he needed to do to secure release of the insurance proceeds. Sur-Reply at 3-4. He alleges that this made him unable to return to the Property, forcing him to occupy a trailer supplied by the Federal Emergency Management Agency ("FEMA") at a cost of $685 per month. Response at 1. He says that his total expenses for occupying the trailer total $6,225.00. *Id.*[19]

Claimant also complains that "an access issue" arose related to the Property, and the Property needed to be elevated to remove it from the flood plain. Response at 1; Sur-Reply at 4. Apparently in relation to this "access issue," he says that a title insurance company informed him that an insurance claim had been paid. Response at 1. He says that he was not provided with any

---

[18] The City of Vidor Substantial Damage Estimator calculates the cost to replace the damage at $99,660.70, not $102,000. Sur-Reply at 21.

[19] Claimant annexes a letter from FEMA showing that Claimant owed $685 for rent in July 2019, Response at 3-5, and a letter from FEMA suspending rent collection for April 2020 through July 2020 due to the COVID-19 pandemic, Sur-Reply at 101-02.

8

information related to the amount of the claim and has not received a credit to his account—presumably to his Mortgage account balance with NewRez—related to the claim. *Id.* at 1-2.[20]

Claimant asserts a claim against Ditech of "not less than" $10,000.00 (the "Title Insurance Claim").[21] He also says that he was charged $180 for a title search for which he is not liable, and that he is entitled to $500 in attorney's fees that he has incurred by reason of the breach of contract. Response at 2.

Claimant also alleges, in the Sur-Reply, that Ditech wrongfully initiated foreclosure proceedings against him in July 2019 after several of his payments were misapplied or not applied at all. Sur-Reply at 4. On this, he provides billing statements from 2019 and a loan history statement. *Id.*, Exs. 5, 11. He says that he was not aware that the Property had been in foreclosure until January 2020 when he called Shellpoint to inquire about what insurance proceeds remained. *Id.* at 4.

**The Reply and Sur-Response**

The Consumer Claims Trustee appears to argue that the Claims and Response insufficiently allege Ditech Financial's breach by not attaching the relevant contracts, Reply ¶ 19, and by failing to specify the parties, key terms, and details of when or how Ditech Financial breached the contract, *id.* ¶ 20. Assuming the contract is the Mortgage, she contends Claimant has failed to

---

[20] Annexed to the Response is correspondence with Fidelity National Title Insurance Company ("Fidelity"), including a letter dated February 21, 2018 denying his insurance claim, *id.* at 6, and correspondence with Timios, Inc., a title insurance agent. With the Sur-Reply, Claimant provides additional letters from Fidelity regarding the title insurance claim, as well as letters from Shellpoint about the claim and related documents.

[21] In support of the Title Insurance Claim, Claimant provides: a letter dated October 27, 2021, from Flagstar Bank; three Elevation Certificates; Texas Short Form Residential Loan Policy from Fidelity National Title Insurance Co. ("Fidelity"); Response from Shellpoint Mortgage Servicing ("Shellpoint") regarding Claimant's inquiry about his title insurance claim; the survey and easement of the Property; a letter dated August 20, 2018 from Fidelity regarding their review of the title insurance claim filed by Ditech; a letter dated June 25, 2019 from Fidelity acknowledging receipt of a claim; and a complaint submitted by Claimant to the Department of Savings & Mortgage Lending sent on September 20, 2021. Sur-Reply, Exs. 1, 3-4, 7-8, 10, 13-15.

9

allege any factual basis to support his claim, *id.* ¶ 21, and has not shown that he performed under the Mortgage so as to obligate Ditech to release insurance proceeds, Sur-Response ¶¶ 17-18.

The Consumer Claims Trustee says that she "cannot determine any provision within the Mortgage contract that references title insurance, requires Ditech to maintain an Owner's policy for title insurance, or how any title insurance proceeds should be distributed," Reply ¶ 26, and argues that documents submitted with the Sur-Reply contradict Claimant's allegation that a title insurance claim was paid to Ditech, Sur-Response ¶¶ 20-25.

Regarding Claimant's allegation of misapplied payments in July 2019 and wrongful foreclosure initiation, the Consumer Claims Trustee contends that billing statements and loan history documents are consistent, *id.* ¶¶ 26-33, showing Ditech acknowledged and correctly applied his payments, *id.* ¶ 34. While acknowledging Claimant's complaints about Shellpoint blocking payments in January 2020, the Trustee notes that these events, if true, occurred after the servicing transfer from Ditech and were thus out of its control. *Id.* ¶ 35.

## LEGAL PRINCIPLES

"A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If a party in interest objects to a proof of claim, the basis for seeking disallowance must be one that is set forth in Section 502(b) of the Bankruptcy Code. *See* 11 U.S.C. § 502(b); *see also HSBC Bank USA, N.A. v. Calpine Corp.*, No. 07-cv-3088, 2010 WL 3835200, at *5 (S.D.N.Y. Sept. 15, 2010) ("All claims are allowed unless specifically proscribed by one of the nine exceptions listed in § 502(b)." (citing *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007))).

For example, under section 502(b)(1), a court will disallow a claim if it "is unenforceable against the debtor and property of the debtor, under . . . applicable law for a reason other than

10

because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). A proof of claim is "prima facie evidence of the validity and amount of a claim," Fed. R. Bankr. P. 3001(f), which can be overcome if the party objecting under section 502(b)(1) "come[s] forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010) (quoting *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000)).

However, in a Sufficiency Hearing, the Court applies the legal standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See* Claims Procedures Order ¶ 3(iv)(a). The Rule 12(b)(6) standard requires courts to accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Green v. Dep't of Educ. of New York*, 16 F.4th 1070, 1076 (2d Cir. 2021).[22] In ruling on a Rule 12(b)(6) motion, "[t]he court's function is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'" *Havens v. James*, 76 F.4th 103, 116-17 (2d. Cir. 2023) (quoting *Festa v. Loc. 3 IBEW*, 905 F.2d 35, 37 (2d Cir. 1990)).[23] Rule 12(b)(6) "ensures that, consistent with Rule 8(a), a complaint includes 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Alharbi v. Miller*, 368 F. Supp. 3d 527, 560 (E.D.N.Y.

---

[22] In doing so, the Court recognizes that Claimants are appearing pro se, and that it must construe their "submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)).

[23] "On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are 'integral' to the complaint." *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citing *Brass v. American Film Technologies*, 987 F.2d 142, 150 (2d Cir. 1993); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991)). Because Sufficiency Hearings consider consumer claims, often by unrepresented claimants whose claims lack detail or do not attach pertinent supportive documentation, it has been the practice of this Court to consider the Consumer Claims Trustee's documentary submissions together with claims as if they were consolidated. The Court does so here.

19-10412-jlg    Doc 5153    Filed 07/26/24    Entered 07/26/24 17:07:19    Main Document
Pg 12 of 19

2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Accordingly, in applying the legal standards applicable to Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the Claim in light of the pleading standards under Rule 8(a).

Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard, a complaint need only "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 577 (S.D.N.Y. 2021) (quoting *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)). Further, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding what factual matter to accept as true, the Court is not required to "credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)).

A complaint states a facially plausible claim "when the . . . plead[ed] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, plausibility does not mean probability; it means that the complaint alleges "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *Twombly*, 550 U.S. at 556. Detailed factual allegations are not necessary to survive a motion to dismiss, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## ANALYSIS

The elements of a breach of contract claim under Texas law are that "(1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).

There are two contract claims—one based on Ditech's failure to timely pay Claimant flood insurance proceeds, the other based on Ditech's failure to pay Claimant the proceeds of a claim against a title insurance policy and charge of $180 for a title search.[24] As to the first claim, Claimant alleges the existence of a contract, thereby satisfying the first element in a claim for breach of contract. Specifically, in paragraphs 1 and 3 of the Response, he alleges the existence and validity of the Mortgage. Response ¶ 1 ("Debtor was the holder of a mortgage secured by my homestead which it purchased from Royal United Mortgage."); *id.* ¶ 3 ("When I obtained my mortgage, a mortgagee's title policy was issue [sic] with respect to the property."). In contrast, as to the second claim, the Mortgage is silent as to the title policy. The Court finds no other agreement between Ditech and Claimant regarding any obligations of Ditech to Claimant with respect to such a title policy. Thus, the first element of a breach of contract claim with respect to the title policy is not satisfied, and Claimant fails to state a plausible claim to relief based on these allegations.

---

[24] Claimant also asserts that around July 2019, several of his payments were misapplied to his account or not applied at all. Sur-Reply at 4. While Claimant asserts that payments were misapplied, the documents he submitted show that Ditech acknowledged his payments and applied them correctly. Further, Claimant provides documentation proving only that a payment was made on August 10, 2019. Sur-Reply at 119. Without more, the Court cannot "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Claimant does not plausibly allege that Ditech failed to properly account for his payments.

13

As to the second element, the Consumer Claims Trustee argues that "[t]he loan history shows that Claimant was behind on the mortgage when the insurance proceeds check was received by Ditech on November 8, 2017," and "a party in default cannot sue for breach of contract." Sur-Response ¶ 18 (quoting *Stevens v. Deutsche Bank Nat. Trust Co.*, 570 Fed. App'x 402, 403 (5th Cir. 2014) (per curiam)).

The Consumer Claims Trustee's argument is directly contradicted by *Davis v. Ditech Fin. LLC*, No. 45-CV-3421, 2016 WL 6883210, at *4 (S.D. Tex. Aug. 15, 2016). That case involved a dispute between a borrower and Ditech Financial over insurance proceeds from a property damage claim. The borrower alleged that Ditech Financial improperly withheld $26,000 in insurance settlement funds. *Id.* at *4. She claimed that she had repeatedly requested that Ditech send an inspector to the property, per the same provision as in section 5 of the Mortgage here, and even offered to pay for one herself, which Ditech Financial refused. *Id.* at *5.[25] The court noted—as is true here—that Ditech Financial was required to promptly inspect the property before withholding insurance proceeds. *Id.*

Ditech Financial argued that Davis was barred from bringing a breach claim due to her own default on the loan, which occurred approximately four months after Ditech Financial withheld the funds. *Id.* The court rejected this argument. *Id.* at *5-6.

The court echoed the Fifth Circuit's observation in *Information Commc'n Corp. v. Unisys Corp.* that the rule barring defaulting parties from suing for breach had been inconsistently applied in Texas. *Id.* at *5 (citing *Info. Commc'n Corp. v. Unisys Corp.*, 181 F.3d 629, 632-33 (5th Cir. 1999)). Nonetheless, the court rejected Ditech Financial's interpretation of the rule as inconsistent

---

[25] That provision, discussed below, allows the mortgagor to withhold funds from the borrower until it sends an inspector to the property to ensure the work has been completed properly.

14

with case law. It noted that in *Garcia v. Bank of America, N.A.*, the District Court for the Southern District of Texas explained that a debtor's default does not give the creditor "carte blanche to, for instance, charge improper fees or fail to apply payments to the account" to violate the loan agreement. *Id.* (quoting *Garcia v. Bank of America, N.A.*, No. 12-CV-360, 2014 WL 3696269, at *3 (S.D. Tex. July, 23, 2014)).

The court concluded, having surveyed Texas law on the issue, that the borrower was not barred from bringing a breach of contract claim simply because she had defaulted on her loan. *Id.* at *5-6. The complaint stated a plausible claim for breach of contract that should not be dismissed under Rule 12(b)(6). *Id.* at *6. Likewise, here, the possibility that Claimant may have been behind on his Mortgage is not a bar to his maintenance of the Claims. The second element is satisfied.

As to the third element, "[a]s a general rule of thumb, 'a plaintiff suing for breach of contract must point to a specific provision in the contract that was breached by the defendant.'" *Gonzales v. Select Portfolio Servicing, Inc.*, No. 18-CV-0580-C, 2018 WL 6573162, at *4 (N.D. Tex. Oct. 24, 2018) (quoting *Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 971 (N.D. Tex. 2014)). However, such a "rule of thumb" is not an inexorable command. *See Bowen v. Robinson*, 227 S.W.3d 86, 94 (Tex. App. 2006) ("[Texas's notice pleading rule] does not require an allegation of the particular contract provision that allows or precludes recovery."); *Davis*, 2016 WL 6883210, at *4 ("Texas law has no such requirement" that "the Plaintiff . . . identify a specific provision in the contract that was breached."). Although Claimant has not identified a particular provision in the Mortgage that Ditech breached, in reviewing the Mortgage and Response together, it is plain that the alleged breach that Claimant complains of was section 5 of the Mortgage, specifically:

15

1. "Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened," thus obligating the mortgagor, subject to certain conditions, to apply insurance proceeds to the restoration or repair of the Property. Mortgage § 5.

2. "Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly." *Id.*

Claimant alleges that on August 30, 2017, Hurricane Harvey caused significant flooding in the area where his home is located. Response ¶ 1. He says that the Property was inundated with over seven feet of water. *Id.* Although he does not allege that he informed his mortgagor of the flood, the event appears to have triggered a claim under Jackson's flood insurance policy covering the Property, since he alleges that $42,000 in flood insurance proceeds were paid to Ditech. *Id.*

The basis of the breach of contract claim is Ditech's alleged failure to timely release insurance funds to Claimant, and that delay prevented him from repairing the Property, which in turn kept him from reoccupying the Property. *Id.* He explains that "Ditech and Shellpoint did not release the last $10,000 until January 2020. The funds were held in a Restricted Escrow Account, never seen a balance sheet. Was not allowed to view the account." Sur-Reply ¶ 1. Thus, the time between the alleged flooding in August 2017, *id.*, and the release of the last $10,000 in insurance proceeds was about 2 years and 5 months. Under Texas law, "[w]hat constitutes a breach of contract is a question of law, but whether the breaching conduct occurred is a question of fact. And whether a breach is material is also a question of fact." *In re Dall. Roadster, Ltd.*, 846 F.3d 112, 127 (5th Cir. 2017) (citation and footnote omitted).

The holder of the Mortgage had the right to withhold insurance proceeds to the extent that the Mortgage gave it that right. The Consumer Claims Trustee is correct that Claimant has failed

16

to identify exactly which section of the Mortgage the withholding of insurance proceeds violated. However, "under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). As section 5 of the Mortgage makes clear, this discretion is not unlimited and is expressly conditioned upon a prompt inspection of the Property. Mortgage § 5. However, Claimant has not pleaded facts that, assumed true, plausibly allege that the mortgagor withheld proceeds in violation of Claimant's rights under the Mortgage. The Mortgage provides that the mortgagor is permitted to withhold insurance proceeds "until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction." *Id.*

Unlike the plaintiff in *Davis*, Claimant has made no allegation that Ditech failed to inspect his property. He has not gone beyond alleging that Ditech has withheld the insurance proceeds for what he ostensibly contends is an unreasonable amount of time. However, the length of time that Ditech took to perform its obligations is not independently relevant; what is relevant is whether, by waiting to release the insurance proceeds, the mortgagor went beyond its rights under the Mortgage. Under Texas law:

> When construing the plain meaning of a contract's wording, the court must look at the contract as a whole in light of the circumstances present when the contract was entered; each part of the contract is considered against all other parts to determine its meaning, and there is a presumption that the parties intended every part to have some effect.

*Phila. Am. Life Ins. Co. v. Turner*, 131 S.W.3d 576, 590 (Tex. App. 2004). Thus, although "any insurance proceeds . . . shall be applied to restoration or repair of the Property," that does not mean that the mortgagor must disburse those proceeds immediately, since section 5 of the Mortgage also

17

provides that it "may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed." Mortgage § 5. Thus, because "the allegations . . . show that the complained of conduct was 'not only compatible with, but indeed was more likely explained by, lawful' conduct, no claim for relief is stated." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 319, 323 (S.D.N.Y. 2010) (quoting *Iqbal*, 556 U.S. at 680).

In so holding, the Court's does not draw an inference, under Rule 12(b)(6), that such payments by the mortgagor to Claimant were those "progress payments" that were contemplated by the Mortgage; it may not act as a factfinder. However, although, with certain conditions, the Mortgage entitled Claimant to be paid the insurance proceeds, it did not entitle him to be paid those proceeds all at once. Thus, although it is evident from Claimant's allegations that the mortgagor had been making payments over time, rather than at once, *see* Sur-Reply at 3 ("Ditech and Shellpoint did not release the last $10,000 until January 2020"), Claimant has not pleaded sufficient factual material to allow the Court to find that the manner in which it was doing so violated its obligations under the Mortgage. Thus, the Court cannot find that "the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

As to the fourth element, due to what Jackson describes as his inability to fully repair and reoccupy the Property, he states that he was forced to seek alternative housing. Response ¶ 1. He reports having rented a FEMA trailer, incurring costs of $6,225 for this temporary accommodation. *Id.* ¶¶ 1-2. Because Claimant cannot state a claim to relief, the Court has no need to determine whether Claimant has plausibly alleged that he incurred such damages as a result of the failure to pay insurance proceeds.

## CONCLUSION

For the foregoing reasons, the Court sustains the Objections and disallows and expunges the Claims.

IT IS SO ORDERED.

Dated: July 26, 2024
      New York, New York

                                                      /s/ *James L. Garrity, Jr.*
                                                      Honorable James L. Garrity, Jr.
                                                      United States Bankruptcy Judge