**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NOT FOR PUBLICATION

------------------------------------------------------- x

In re:

Ditech Holding Corporation, *et al.*,

Debtors.[1]

------------------------------------------------------- x

Case No. 19-10412 (JLG)

Chapter 11

(Jointly Administered)

## MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS TRUSTEE'S SIXTH OMNIBUS OBJECTION WITH RESPECT TO THE PROOF OF CLAIM FILED BY MYRON AND SANDRA SMITH

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:    Richard Levin


MYRON SMITH
*Appearing Pro Se*
8522 North Fuller Avenue
Fresno, California 93720

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[2]

On May 28, 2019, Myron and Sandra Smith ("Claimants") filed Proof of Claim No. 1893 (the "Claim") as an unsecured claim in the amount of $250,000 against Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) ("Ditech Holding Corp."). On March 13, 2020, the Consumer Claims Trustee filed her Sixth Omnibus Objection to claims (the "Objection").[3] In the Objection, the Consumer Claims Trustee seeks to disallow the Claim and other proofs of claim that lack sufficient information or documentation to establish their underlying merits. On May 2, 2020, Claimants filed a response to the Objection (the "Response").[4] On June 26, 2024, the Consumer Claims Trustee replied to the Response (the "Reply").[5]

In accordance with the Claims Procedures Order,[6] Claimants' filing of the Response adjourned the Objection to enable the Court to conduct a Sufficiency Hearing on the Claim. At a Sufficiency Hearing, the Court evaluates the sufficiency of the Claim under the legal standard of review for motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Claims Procedures Order ¶ 3(iv)(a). On July 25, 2024, the Court held a

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[3] *Consumer Claims Trustee's Sixth Omnibus Objection to Proofs of Claim (Insufficient Documentation Unsecured Consumer Creditor Claims)*, ECF No. 1967.

[4] *Opposition of Claimants Myron & Sandra Smith (Claim No 1896)* [sic] *to Objection of the Consumer Claims Trustee Sixth Omnibus Objection to Proofs of Claim*, ECF No. 2494.

[5] *Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee's Sixth Omnibus Objection with Respect to the Claim of Myron F. and Sandra J. Smith (Claim No. 1893)*, ECF No. 5112.

[6] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632 (the "Claims Procedures Order").

Sufficiency Hearing.  The Consumer Claims Trustee appeared, through counsel, and Myron Smith

appeared pro se, on behalf of the Claimants. The Court heard arguments from the parties.

The Court has reviewed the Claim, Objection, Response, and Reply, including all

documents submitted in support thereof, and has considered the arguments made by the parties at

the Sufficiency Hearing in support of their positions. In reviewing the documents, the Court

accepts Claimants' well-pleaded factual allegations as true, draws all reasonable inferences in

Claimants' favor, and liberally construes the Claim and Response to raise the strongest arguments

that they suggest. As set forth more fully below, the Claim fails to state a plausible claim to relief

against Ditech Holding Corp. and therefore, the Court sustains the Objection and disallows the

Claim.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States

District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska,

C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

### The Loan

On or around June 17, 2003, Claimants executed a promissory note in favor of America's

Wholesale Lender (the "Note"),[7] in the amount of $281,600. The Note was secured by a deed of

---

[7] The Note is annexed as Exhibit A to the Reply. The Court takes judicial notice of the Note and the other documents annexed to the Reply and Response because they are matters of public record and are integral to the Claim. *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 57 (S.D.N.Y. 2021) ("In deciding the motion to dismiss, the Court is limited to the factual allegations of the Complaint, materials that are attached by the Complaint or integral thereto, and matters of which the Court may take judicial notice."); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 462 (S.D.N.Y. 2020) ("Judicial notice may be taken of documents that are 'integral to the complaint,' such that the complaint 'relies heavily upon [the documents'] terms and effect.'" (quoting *Palin v. N.Y. Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019) (alteration in original))); *Ocampo v. JP Morgan Chase Bank, N.A.*, 93 F. Supp. 3d 109, 114 (E.D.N.Y. 2015) (considering loan documents and loan transfer documents that are integral to the complaint on a

trust (the "Deed of Trust,"[8] together with the Note, the "Loan") on real property located at 8522 North Fuller Avenue, Fresno, California 93720 (the "Property").

On November 28, 2018, the Deed of Trust was assigned to Ditech Financial LLC ("Ditech") and on November 26, 2019, Ditech assigned the deed to New Residential Mortgage LLC.[9]

## The Chapter 11 Cases

On February 11, 2019, Ditech Holding Corp. and certain of its affiliates, including Ditech (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[10] The Court twice extended the General Bar Date for consumer borrowers and ultimately set it to June 3, 2019 (the "Consumer Creditor Bar Date").[11]

---

motion to dismiss); *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (taking judicial notice "of relevant matters of public record").

[8] The Deed of Trust is annexed as Exhibit B to the Reply.

[9] The assignments of the Deed of Trust to Ditech and New Residential Mortgage LLC are annexed as Exhibits C and D to the Reply, respectively.

[10] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[11] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

On September 26, 2019, the Debtors confirmed their Third Amended Plan, which became effective on September 30, 2019.[12] The Consumer Claims Trustee is appointed under the Third Amended Plan as a fiduciary responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims. *See* Third Amended Plan, art. I, § 1.41. The Consumer Claims Trustee has the exclusive authority to object to Consumer Creditor Claims. *See id.*, art. VII, § 7.1.

**The Claims Procedures Order**

The Claims Procedures Order authorizes the Consumer Claims Trustee to file Omnibus Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order. *See* Claims Procedures Order ¶ 2(i)(a)–(h). A properly filed and served response to an objection gives rise to a "Contested Claim." *Id.* ¶ 3(iv). A Contested Claim is resolved at a Claim Hearing, which the Consumer Claims Trustee has the option to schedule as either a "Merits Hearing" or a "Sufficiency Hearing." *Id.* ¶ 3(iv)(a), (b). A Merits Hearing is an evidentiary hearing on the merits of a Contested Claim, and a Sufficiency Hearing is a non-evidentiary hearing to address whether the Contested Claim states a claim to relief against the Debtors under the Rule 12(b)(6) legal standard. *Id.* ¶ 3(iv)(a).

**The Claim**

The Claim, which consists only of an Official Form 410, Proof of Claim, asserts an unsecured claim in the amount of $250,000. Claim at 2. Claimants base their claim on "[f]raud in

---

[12] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

collection and infliction of mental and emotional distress." *Id.* They also contend that the Claim is subject to a right of setoff. *Id.*

**The Objection**

The Consumer Claims Trustee objects to certain claims, including the Claim. She asserts that the Claim is not a valid pre-petition claim against Ditech and is not substantiated by sufficient information or documentation. Objection ¶ 8. Thus, she seeks to disallow the Claim.

**The Response**

In the Response, Claimants generally complain that Ditech mishandled Claimants' participation in a state-sponsored renewable energy improvement program called the Property Assessed Clean Energy ("PACE") financing program.

On October 1, 2015, Claimants entered into an agreement with the California Statewide Communities Development Authority to finance the installation of a solar photovoltaic system on the Property in the amount of $38,576.71 (the "PACE Assessment").[13] The agreement was one made under the PACE financing program, which allows homeowners to finance certain renewable energy improvements to their property. *See generally Concepcion v. Ygrene, Inc.*, No. 19-CV-1465, 2020 WL 1493617, at *1 (S.D. Cal. Mar. 27, 2020) (summarizing PACE financing). The PACE Assessment advises property owners to carefully review any of their mortgage agreements or security instruments because entering into an agreement pursuant to the PACE program could be considered a default under those documents. PACE Assessment at 11-12.[14] The reason that

---

[13] The PACE Assessment is annexed as Exhibit E to the Reply.

[14] In full, the relevant provision in the PACE Assessment states as follows:

Existing Instruments. BEFORE ENTERING INTO THIS ASSESSMENT CONTRACT, THE PROPERTY OWNER SHOULD CAREFULLY REVIEW ANY MORTGAGE AGREEMENT(S) OR OTHER SECURITY INSTRUMENT(S) ("EXISTING INSTRUMENTS"), THAT AFFECT THE PROPERTY OR TO WHICH THE PROPERTY OWNER IS A PARTY. THE PROPERTY OWNER'S ENTERING INTO THIS AGREEMENT WITHOUT THE CONSENT OF AN EXISTING LENDER COULD CONSTITUTE

PACE improvements present a risk of default is because improvements financed through PACE programs are repaid to the city or county through special assessments, thereby creating a super-priority lien on the property. *Concepcion*, 2020 WL 1493617, at *1.

Under the terms of the contract, repayment for the solar energy system, with interest and administrative expenses, would be broken into annual installments placed on the Property's county property tax bill for a period of 25 years, beginning in the tax year 2016-17. PACE Assessment at 8, 17. The annual installment payment each year for the special assessment, interest, and anticipated administrative expenses was an estimated $3,753.93. *Id.* at 16.[15]

Claimants allege that neither Ditech nor the Fresno County tax collector notified them that this PACE Assessment had been recorded against their property until 2017. Response ¶ 11. Thus, for about a year, Claimants were unaware that their property taxes had increased due to the PACE program. They assert that Ditech received a supplemental tax bill in 2016 reflecting the additional amount due under the PACE program but failed to make the necessary payment. *Id.* ¶ 14.

Claimants allege that Ditech representatives admitted to receiving the supplemental bill but did not pay it, mistakenly believing it was a duplicate of the annual property tax statement. *Id.* As a result, Ditech remained unaware of the outstanding balance until fall 2017, when they received a second bill under the PACE program. *Id.*

---

AN EVENT OF DEFAULT UNDER SUCH EXISTING INSTRUMENTS. DEFAULTING UNDER AN EXISTING INSRUMENT COULD HAVE SERIOUS CONSEQUENCES TO THE PROPERTY OWNER, WHICH COULD INCLUDE THE ACCELERATION OF THE REPAYMENT OBLIGATIONS DUE UNDER SUCH INSTRUMENT. IN ADDITION, FANNIE MAE AND FREDDIE MAC, THE OWNER OF A SIGNIFICANT PORTION OF ALL HOME MORTGAGES, STATED THAT THEY WOULD NOT PURCHASE HOME LOANS WITH ASSESSMENTS SUCH AS THOSE OFFERED BY THE AUTHORITY. THIS MAY MEAN THAT PROPERTY OWNERS WHO SELL OR REFINANCE THEIR PROPERTY MAY BE REQUIRED TO PREPAY SUCH ASSESSMENTS AT THE TIME THEY CLOSE THEIR SALE OR REFINANCING.

PACE Assessment at 11-12.

[15] The final installment for the tax year of 2040-41 is estimated at $3,754.05 rather than $3,753.93. PACE Assessment at 16.

In September or October 2017, Ditech notified Claimants of a significant increase in their monthly mortgage payment. The new amount, $3,070, was allegedly due to a property reassessment. *Id.* ¶ 12. Claimants contend that this was $1,451 more than the amount stated in their Note and approximately $863.17 more than the amount Claimants calculated as the permitted monthly payment due under the Note for payment of principal, interest, escrow, and the PACE program. *Id.*

Attempting to address the shortfall, Claimants requested in November 2017 that Ditech allow them to repay the amount over more than a year. *Id.* ¶ 15. While Ditech reviewed this request, Claimants continued making monthly payments of $2,050. *Id.*

Claimants say that this attempt at resolution was complicated by inconsistent communications from Ditech. Specifically, between December 29, 2017 and January 30, 2018, Ditech sent multiple notices to Claimants, each citing different past-due amounts. *Id.* ¶ 14. For instance, a January 11, 2018 notice claimed that $5,305.56 was past due, *id.* at 20, while a January 23, 2018 notice of default stated the past-due amount was $13,529.45, including late fees, *id.* at 25.

In response to these varying demands, Claimants began making monthly payments of $2,382.72 from February 1, 2018. *Id.* ¶ 29. However, they allege that despite accepting these payments, Ditech continued to send letters stating the payments were insufficient. *Id.*

Throughout this period, Claimants allege that Ditech engaged in aggressive collection practices. Specifically, they claim that Ditech threatened foreclosure and made daily calls demanding payment as early as the second of each month, even though payments were not considered late until the fifteenth. *Id.* ¶ 6. Furthermore, Claimants assert that Ditech reported inaccurate information to credit bureaus. *Id.* ¶ 30.

As a result, Claimants allege that Ditech and its predecessor, Green Tree Servicing LLC, "have embarked upon a course of conduct intended to inflict negligent and or intentional mental and emotional distress upon [Claimants], have breached the Covenant of Good Faith and Fair Dealing imposed under California law, and/or were negligent in performance of the obligations assumed by contract regarding the servicing of the [Loan]." *Id.* ¶ 4. They also assert that Ditech's conduct amounts to a breach of its contractual obligations to Claimants. *Id.*

**The Reply**

The Consumer Claims Trustee asserts that Claimants fail to state a cognizable claim and that their claims must be dismissed. Specifically, the Consumer Claims Trustee argues that Claimants have not sufficiently alleged that Ditech breached the Loan documents or the covenant of good faith and fair dealing inherent in every contract. Reply ¶¶ 49-78. She contends Ditech had no duty to Claimants, which is necessary to support a negligence claim. *Id.* ¶¶ 79-89. The Consumer Claims Trustee also argues that Claimants do not satisfy the heightened pleading standards that apply to fraud claims. *Id.* ¶¶ 90-100. She states that Claimants have not sufficiently alleged that any of Ditech's actions were extreme or outrageous to give rise to a claim for negligent or intentional infliction of emotional distress. *Id.* ¶¶ 101-07.

**Motion to Estimate**

On March 23, 2023, the Consumer Claims Trustee filed a motion to estimate claims for purposes of setting a reserve and to classify those claims as non-363(o) claims as defined in the

Third Amended Plan.[16] The Consumer Claims Trustee estimated the Claim amount at $250,000. Claimants did not object or respond to the motion, and the Court granted it.[17]

## LEGAL PRINCIPLES

"A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If a party in interest objects to a proof of claim, the basis for seeking disallowance must be one that is set forth in Section 502(b) of the Bankruptcy Code. *See* 11 U.S.C. § 502(b); *see also HSBC Bank USA, N.A. v. Calpine Corp.*, No. 07-cv-3088, 2010 WL 3835200, at *5 (S.D.N.Y. Sept. 15, 2010) ("All claims are allowed unless specifically proscribed by one of the nine exceptions listed in § 502(b)." (citing *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007))).

For example, under section 502(b)(1), a court will disallow a claim if it "is unenforceable against the debtor and property of the debtor, under . . . applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). The filing of a proof of claim does amount to "prima facie evidence of the validity and amount of a claim," Fed. R. Bankr. P. 3001(f), but that can be overcome if the party objecting under section 502(b)(1) "come[s] forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010) (quoting *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000)).

However, when evaluating the Claim at a Sufficiency Hearing, the Court applies the legal standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See* Claims

---

[16] *Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4650.

[17] *Order Granting Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4733.

Procedures Order ¶ 3(iv)(a). The Rule 12(b)(6) standard requires courts to accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Green v. Dep't of Educ. of New York*, 16 F.4th 1070, 1076 (2d Cir. 2021).[18] In ruling on a Rule 12(b)(6) motion, "[t]he court's function is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'" *Havens v. James*, 76 F.4th 103, 116-17 (2d. Cir. 2023) (quoting *Festa v. Loc. 3 IBEW*, 905 F.2d 35, 37 (2d Cir. 1990)).[19] Rule 12(b)(6) "ensures that, consistent with Rule 8(a), a complaint includes 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Alharbi v. Miller*, 368 F. Supp. 3d 527, 560 (E.D.N.Y. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Accordingly, in applying the legal standards applicable to Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the Claim in light of the pleading standards under Rule 8(a).

Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard, a complaint needs only to "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 577 (S.D.N.Y. 2021) (quoting

---

[18] In doing so, the Court recognizes that Claimants are appearing pro se, and that it must construe their "submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)).

[19] "On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are 'integral' to the complaint." *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)). Because Sufficiency Hearings consider consumer claims, often by unrepresented claimants whose claims lack detail or do not attach pertinent supportive documentation, it has been the practice of this Court to consider the Consumer Claims Trustee's documentary submissions together with claims as if they were consolidated. The Court does so here.

*Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)). Further, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding what factual matter to accept as true, the Court is not required to "credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)).

A complaint states a facially plausible claim "when the . . . plead[ed] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, plausibility does not mean probability; it means that the complaint alleges "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *Twombly*, 550 U.S. at 556. Detailed factual allegations are not necessary to survive a motion to dismiss, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## ANALYSIS

Claimants assert that Ditech's actions give rise to claims for (i) breach of contract, (ii) breach of the implied covenant of good faith and fair dealing, (iii) negligence in performing their contractual obligations, (iv) bad faith or fraud, and (v) negligent or intentional infliction of emotional distress. The Court considers those matters below.

## Breach of Contract

Claimants allege Ditech breached their contractual obligations under the Note and Deed of Trust to collect and pay the annual property taxes and assessments from the escrow account. Response ¶¶ 4, 35.

Under California law, a breach of contract claim has four elements: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011); *Martinez v. Welk Grp., Inc.*, 907 F. Supp. 2d 1123, 1131 (S.D. Cal. 2012).

California federal courts are split as to what must be pleaded to establish the existence of a contract and thus satisfy the first element. *Rubie's LLC v. First Am. Title Co.*, No. 18-CV-01052, 2019 WL 2546585, at *5 (E.D. Cal. June 20, 2019). In *Otworth v. S. Pac. Transp. Co.*, a California appellate court stated that "[i]f the action is based on an alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written instrument must be attached and incorporated by reference." 212 Cal. Rptr. 743 (Ct. App. 1985). Most federal district courts have rejected this pleading rule, holding that what suffices to allege the existence of a contract is governed only by the Federal Rules of Civil Procedure. *Rubie's*, 2019 WL 2546585, at *5 (collecting cases); *Nikoopour v. Ocwen Loan Servicing, LLC*, No. 17-CV-2015, 2018 WL 1035210, at *4 (S.D. Cal. Feb. 23, 2018) ("[T]he majority rule in district courts in this circuit rejects application of *Otworth* to federal actions; rather, the sufficiency of the complaint is governed according to the Federal Rules of Civil Procedure and federal law interpreting those rules." (quoting *James River Ins. Co. v. DCMI, Inc.*, No. 11-06345, 2012 WL 2873763, at *3 (N.D. Cal. July 12, 2012))).

The Consumer Claims Trustee relies on *Otworth* to argue that Claimants' failure to attach the Note or Deed of Trust is fatal to their breach of contract claim. Reply ¶¶ 51-52. The Court agrees with the majority of federal courts that have ruled the Federal Rules of Civil Procedure displace the pleading requirements under *Otworth*. Claimants have alleged the existence of a contract, thus satisfying the first element of a breach of contract claim.

Claimants do not satisfy the second or third elements of a breach of contract claim. The Consumer Claims Trustee addresses Claimants' allegations that Ditech breached its contractual obligations under the Note and Deed of Trust. The primary breaches alleged by Claimants, as interpreted by the Consumer Claims Trustee, are: (i) failure to properly collect and pay annual real property taxes from the escrow account, (ii) demanding more than required to pay the PACE Assessment, (iii) adding improper late fees, and (iv) incorrectly reporting payments to credit agencies. *Id.* ¶¶ 49, 63-65. The Court agrees.

### *Escrow Payment Responsibility*

The Consumer Claims Trustee argues that Claimants misunderstand their obligations under the Deed of Trust. While Claimants suggest that Ditech had the sole responsibility to manage the escrow account, the Consumer Claims Trustee points to language in the Deed of Trust that places certain obligations on the borrower. Specifically, Paragraph 3 of the Deed of Trust, titled "Funds for Escrow Items," states that the Borrower "shall promptly furnish to Lender all notices of amounts to be paid under this section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds." *Id.* ¶ 53 (quoting Response, Ex. B at 5).

The Consumer Claims Trustee correctly argues that this language places the responsibility on Claimants, as borrowers, to provide to Ditech notices of amounts to be paid from escrow. Paragraph 3 of the Deed of Trust required Claimants to inform Ditech that it was responsible for paying assessments through the escrow account.[20] While Claimants assert that they were not

---

[20] That section also provides that Claimants, as the borrowers, are responsible to pay "taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property." Deed of Trust § 3. Payments under the PACE program fall within that category because they are assessments added to the Property's taxes that create a superior lien. *Concepcion*, 2020 WL 1493617, at *1.

provided the actual notice or bills for their property taxes, they were aware that their participation in the PACE program would increase their taxes and thus were required to inform Ditech. The Deed of Trust did not impose a duty upon Ditech to investigate.[21]

### *Minimum Escrow Balance*

Claimants argued in their letters to Ditech that they did not believe Ditech had the right to maintain a minimum escrow balance. The Consumer Claims Trustee states that the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-17, allows for a minimum escrow balance of up to one-sixth of the estimated annual escrow account disbursements. Reply ¶ 63 (citing 12 C.F.R. § 1024.17(d)(2)(ii)). The Consumer Claims Trustee argues that this regulatory allowance justifies Ditech's escrow balance requirements.

Section 1024.17(d)(ii) of the RESPA regulations establishes guidelines for determining the lowest monthly balance in escrow accounts and sets a ceiling on how much money servicers can require borrowers to maintain in their escrow accounts at the lowest point in the year. Specifically, it requires that the lowest monthly target balance must not exceed one-sixth of the estimated total annual escrow account disbursement but permits a lower amount if specified by state law or the mortgage document itself. 12 C.F.R. § 1024.17(d)(ii).[22]

---

[21] The Consumer Claims Trustee also counters the allegation that Ditech had failed to make the 2016 PACE payment by reference to the escrow account ledger dated September 13, 2017, which shows that Ditech had expected to pay out $1,743.29 toward the semi-annual tax installment but ultimately paid $3,648.11. Reply ¶ 60 (citing Reply, Ex. F at 2). The Consumer Claims Trustee argues that this higher payment demonstrates that Ditech paid the 2016 PACE assessment. However, the mere fact that Ditech had paid a higher amount than it expected does not mean that the Court can make such an assumption, since its "function on a motion to dismiss is 'not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient.'" *Calpine Corp. v. Rosetta Resources Inc. (In re Calpine Corp.)*, 377 B.R. 808, 812 (Bankr. S.D.N.Y. 2007) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)).

[22] Specifically, the regulation states:

**Lowest monthly balance**. Under aggregate analysis, the lowest monthly target balance for the account shall be less than or equal to one-sixth of the estimated total annual escrow account disbursements or a lesser

If the Consumer Claims Trustee means to construe the alleged "breach" as Ditech's failure to comply with 12 C.F.R. § 1024.17 as made applicable by the Deed of Trust, the Court disagrees because such a failure cannot make out a breach of contract claim. "Section 2609 is implemented by 12 C.F.R. § 1024.17, which courts have . . . concluded does not authorize a private right of action." *Zinetti v. Deutsche Bank Nat'l Tr. Co.*, No. CV 19-1279, 2020 WL 409725, at *4 (D. Del. Jan. 24, 2020), *report and recommendation adopted* 2020 WL 1536092 (D. Del. Feb. 14, 2020). Generally, parties may not cast, as a breach of contract claim, a violation of law for which Congress provided no private right of action. *Grochowski v. Phx. Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) ("no private right of action exists under the relevant statute, the plaintiffs efforts to bring their claims as state common-law claims are clearly an impermissible "end run" around the DBA"); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 585 (7th Cir. 2012) (distinguishing *Grochowski* where the plaintiff "alleged a breach of contract claim under the plain language of the . . . agreement"). Thus, Claimants cannot maintain a breach of contract claim based on a violation of 12 C.F.R. § 1024.17.

### *Late Fees and Credit Reporting*

Claimants allege that Ditech "added late fees" to their mortgage account and reported their payments for less than agreed amounts to credit agencies. Reply ¶¶ 64-65 (citing Response at 7). The Consumer Claims Trustee argues that Claimants failed to provide any specific evidence to support these claims. She notes that Claimants did not allege the amount of late fees charged, provide any credit reports showing inaccuracies, or present a payment history demonstrating improper reporting. *Id.* Moreover, the Consumer Claims Trustee notes that the documents provided

---

amount specified by state law or the mortgage document. The target balances that the servicer derives using these steps yield the maximum limit for the escrow account. Appendix E to this part illustrates these steps.
12 C.F.R. § 1024.17(d)(ii).

by Claimants show a history of late or partial mortgage payments, which would justify the imposition of late fees. The Consumer Claims Trustee argues that the lack of substantiation undermines Claimants' allegations of damages.

The Court agrees. Claimants are not required to substantiate their claims in immaculate detail, but they are required to state a facially plausible claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Claimants' conclusory allegations that "[i]n addition and as part of DITECH's continuing predatory course of conduct, DITECH added monthly late fees to Claimants mortgage account thus causing additional monies being demanded by DITECH," Response ¶ 32, and "[f]urther from and after February 1, 2018, DITECH has notified the credit bureaus of the failure of Claimants to make their mortgage payments. Such conduct was in direct breach of the Agreement with DITECH as set out in Exhibit 2," *id.* ¶ 30, do not allow the Court to draw such an inference.[23]

Accordingly, Claimants fail to state a claim for breach of contract against Ditech.

**Breach of the Covenant of Good Faith and Fair Dealing**

Claimants contend that Ditech breached the implied covenant of good faith and fair dealing. *Id.* ¶ 4. "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." *Guz v. Bechtel Nat'l Inc.*, 8 P.3d 1089, 1110 (Cal. 2000).

---

[23] Exhibit 2, dated January 10, 2018, shows that Ditech had proposed a payment plan to address the escrow shortage. The document explained that the "escrow account has a shortage of $7,894.05." Response, Ex. 2. Exhibit 21, a Notice of Default and Intent to Accelerate dated April 4, 2019, states: "As of the date of this notice, the total amount required to cure the default is $14,829.58, which consists of the following:" including "Late Charges: $1,279.04." Response, Ex. 21. The notice also lists missed payments for February, March, and April of 2019. These documents do nothing to substantiate the Claimants' allegations.

"To plead a breach of the implied covenant, a plaintiff must allege: (1) the parties entered into a contract; (2) the plaintiff fulfilled his or her obligations under the contract; (3) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (4) the plaintiff was harmed by the defendant's conduct." *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1041-42 (S.D. Cal. 2018).

Claimants do not identify the specific contract giving rise to the implied duties. The Court infers that the Note and Deed of Trust are the applicable contracts, because those are the two upon which Claimants largely focus their allegations. Still, Claimants have not identified any contractual rights that were frustrated by Ditech's alleged breach of the covenant, and the Court cannot perceive any. *Lingad v. Indymac Fed. Bank*, 682 F.Supp.2d 1142, 1154 (E.D. Cal. 2010) (granting a motion to dismiss plaintiff's breach of the implied covenant of good faith and fair dealing claim because he did not "identif[y] any express provision [of a contract] which has been frustrated by [the defendant's] conduct").

The breach of covenant claim also fails because it restates the claim for breach of contract. If allegations in support of a breach of covenant claim "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Otake v. Wells Fargo Bank, N.A.*, No. SACV192266JVS, 2020 WL 2527049, at *3 (C.D. Cal. Jan. 31, 2020) (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 272 Cal. Rptr. 387, 400 (Ct. App. 1990)).

Claimants generally allege that Ditech failed to make payments for the special assessments levied on the Property under the PACE Assessment and concealed the true amounts due thereunder. They describe Ditech's lack of transparency regarding the amount due under the PACE

18

program as "bad faith." Response ¶ 13. These same allegations form the basis of Claimants' breach

of contract claim. Thus, the breach of covenant claim is duplicative of Claimants' breach of

contract claim. As such, it fails to state a claim for relief against Ditech. *Cf. Dorros v. JPMorgan*

*Chase Bank, N.A.*, No. CV1008319, 2012 WL 13005961, at *2 (C.D. Cal. June 20, 2012) (granting

motion to dismiss where claims for breach of contract and breach of the implied covenant rely on

the same underlying conduct that defendant misapplied plaintiff's mortgage payments).

**<u>Negligence</u>**

Claimants allege that Ditech was negligent in servicing the Loan. Response ¶ 4.

Specifically, they allege that Ditech assumed a duty to collect and make accurate tax payments to

Fresno County from Claimants' escrow account. *Id.* ¶ 34.

A negligence claim is grounded in duty, breach, injury caused by the breach, and damages.

*Romero v. Los Angeles Rams*, 308 Cal. Rptr. 3d 431, 437 (Ct. App. 2023). "The existence of a

duty of care toward an interest of another worthy of legal protection is the essential prerequisite to

a negligence cause of action, determined as a matter of law by the court." *Saldate v. Wilshire*

*Credit Corp.*, 686 F. Supp. 2d 1051, 1062 (E.D. Cal. 2010) (quoting *Software Design &*

*Application, Ltd. v. Hoefer & Arnett, Inc.*, 56 Cal. Rptr. 2d 756, 760 (Ct. App. 1996)).

Claimants' negligence cause of action fails as a matter of law if there is no duty of care

between Claimants as borrowers and Ditech as the servicers of their loan. Under California law,

loan servicers generally do not owe a duty of care to borrowers. *Castaneda v. Saxon Mortg. Servs.,*

*Inc.*, 687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009) ("As the servicer of the loan, Saxon does not

owe a duty to the borrowers of the loans it services."); *Slaughter v. Wells Fargo Bank, N.A.*, No.

14-7652, 2014 WL 12570167, at *2 (C.D. Cal. Dec. 22, 2014) (holding defendant did not owe

plaintiff a duty of care where the "alleged misconduct is in connection with the servicing of Plaintiff's loan, which does not extend beyond the normal business of a lender").

Here, *Barber v. Citimortgage, Inc.*, No. EDCV131188, 2014 WL 12561627 (C.D. Cal. Sept. 19, 2014) is instructive. The plaintiff in *Barber* asserted a negligence claim based on allegations that defendant was negligent in "sending [a] letter regarding unpaid taxes, initiating an escrow account and raising Plaintiff's monthly payments to cover the taxes advanced by Defendant, and advising Plaintiff to continue making her regular monthly payments." *Id.* at *4. The California district court held that these activities were within the scope of a loan servicer's duties and absent any allegation that the defendant acted outside of that role, it did not owe plaintiff any duty of care. *Id.* Likewise, here, Claimants have not alleged that Ditech went beyond its role as a servicer. Thus, it took on no duties to Claimants whose violation could underlie a negligence claim.

### Fraud and Fraudulent Concealment

Claimants allege that Ditech refused to provide any information about the amount of the escrow shortfall and demanded inconsistent amounts without explanation. They also state that "Ditech fraudulently stated the total amount to be repaid was the sum of $7,894.05, when in fact the true unpaid [PACE] payments was the sum of $5,630.94. Claimants believe this is the amount not paid by Ditech, but have no documents from Ditech to that effect." Response ¶ 18.

Under California law, to make out claim for fraud, a party must allege (i) a knowingly false representation or fraudulent omission by the defendant; (ii) an intent to deceive or induce reliance; (iii) justifiable reliance by plaintiff; and (iv) resulting damages. *Croeni v. Goldstein*, 26 Cal. Rptr. 2d 412, 415 (Ct. App. 1994).

Under California law, the elements of a claim for fraudulent concealment are that:

 (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.

*Avedisian v. Mercedes-Benz USA, LLC*, 43 F. Supp. 3d 1071, 1080 (C.D. Cal. 2014) (quoting

*Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 100 Cal. Rptr. 3d 637, 652 (Ct. App. 2009)).

Under Rule 9(b), "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To do so, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). Put differently, to satisfy Rule 9(b), a plaintiff must "set forth the who, what, when, where and how of the alleged fraud." *United States ex rel. Kester v. Novartis Pharms. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014) (quoting *U.S. ex rel. Polansky v. Pfizer, Inc.*, No. 04 Civ. 704, 2009 WL 1456582, at *4 (E.D.N.Y. May 22, 2009)).

The claims for fraud and fraudulent concealment fail to state claims for relief. Claimants fail to plausibly allege that Ditech made any false or misleading statements. Claimants repeatedly allege that the amounts due for the PACE payments or the amount of the escrow shortfall were inaccurate. However, Claimants concede they have no support for their belief. Response ¶ 18 ("Ditech fraudulently stated the total amount to be repaid was the sum of $7,894.05, when in fact the true unpaid [PACE] payments was the sum of $5,630.94. Claimants believe this is the amount not paid by Ditech, but have no documents from Ditech to that effect.").

Claimants also fail to allege that Ditech knew its representations were false. The Second Circuit has made it clear that while, under Rule 9(b), scienter can be demonstrated by inference, this does not give license to base fraud claims on "speculation and conclusory allegations." *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991). Throughout their Response, Claimants accuse Ditech of "bad faith and fraud" and claim that it acted "fraudulently." Response ¶¶ 14, 18. However, these assertions are conclusory and lack the factual support necessary to make out a claim based on fraud. For instance, where Claimants allege that Ditech misrepresented amounts owed under the escrow account, they do not plead facts showing Ditech knew these statements were false when made. *Id.* ¶ 18. Moreover, Claimants note that Ditech admitted to mistakenly believing a supplemental tax bill was a duplicate. *Id.* ¶ 14. This allegation, assumed true, shows that Ditech's actions were not a product of scienter, but error. Claimants cannot make out a plausible claim sounding in fraud against Ditech.

## Negligent or Intentional Infliction of Emotional Distress

Claimants allege that Ditech engaged in a course of conduct designed to inflict emotional distress. At the core of their claim is Ditech's alleged communications, including daily phone calls demanding immediate payment as early as the second day of each month, despite payments not being due until the fifteenth, *id.* ¶ 6, accompanied by written demands, *id.* ¶ 7. This campaign allegedly extended to reporting late payments to credit bureaus, hampering Claimants' ability to refinance. *Id.* Claimants further assert that Ditech sent inconsistent demands, with at least four letters in about a month demanding different amounts without explanation, *id.* ¶ 28, while refusing to clarify how they calculated the escrow shortfall despite Claimants' repeated requests, *id.* ¶¶ 19-21.

Claimants also allege that Ditech used "the direct threat of foreclosure" to coerce compliance with their payment demands, *id.* ¶ 14, a threat that persisted even after reaching a payment plan agreement, as Ditech continued to send letters stating the agreed-upon payments were insufficient, *id.* ¶ 29. The effect of these actions, according to Claimants, inflicted "mental and emotional distress to Claimants, directly and adversely affected their marriage, and caused damages to their credit rating so that they cannot obtain financing from another mortgage company." *Id.* ¶ 36. In essence, Claimants portray Ditech's actions as a campaign "intended to inflict intentional and/or negligent mental and emotional distress upon the Claimants." *Id.* ¶ 6.

### Negligent Infliction of Emotional Distress

Under California law, negligent infliction of emotional distress ("NIED") is not an independent tort. *Downey v. City of Riverside*, 307 Cal. Rptr. 3d 666, 673 (Ct. App. 2023). Rather, it is a form of the tort of negligence and thus the four elements of a negligence claim—duty, breach, causation, and damages—must be satisfied to make out an NIED claim. *Cf. Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1125 (E.D. Cal. 2014) ("California law recognizes that 'there is no independent tort of negligent infliction of emotional distress' in that '[t]he tort is negligence, a cause of action in which a duty to the plaintiff is an essential element.'" (quoting *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 807 (Cal. 1993))). In summarizing the duty necessary to support an NIED claim, the California Supreme Court stated:

> [U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty. Even then, with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests.

*Potter*, 863 P.2d at 807-08. Ditech has not assumed a duty for Claimants' emotional condition, so Claimants may recover only if their emotional distress stems from Ditech's breach of a legal duty.

*Aguinaldo v. Ocwen Loan Servicing, LLC*, No. 12–CV–01393, 2012 WL 3835080, at *8 (N.D. Cal. Sept. 4, 2012) ("Ocwen owed no duty to protect [plaintiffs] against emotional distress when acting in the regular course of business as their loan servicer.").

As explained, no legal duty of care existed between Ditech and Claimants. Therefore, Claimants cannot maintain a claim against Ditech for negligent infliction of emotional distress. *Watts v. Decision One Mortg. Co., LLC*, No. 09CV0043, 2009 WL 2044595, at *2-3 (S.D. Cal. July 13, 2009) (dismissing NIED claim against loan servicer because "[a]cting in this capacity imposes no legal duty of care on [the servicer]").

### Intentional Infliction of Emotional Distress

A cause of action for intentional infliction of emotional distress requires plaintiff establish:

(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe emotional distress; and (3) the defendant's extreme and outrageous conduct was the actual and proximate cause of the severe emotional distress.

*Crouch v. Trinity Christian Ctr. of Santa Ana, Inc.*, 253 Cal. Rptr. 3d 1, 13 (Ct. App. 2019) (citing *Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009)). Outrageous conduct is conduct that is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Light v. Dep't of Parks & Recreation*, 221 Cal. Rptr. 3d 668, 690 (Ct. App. 2017) (quoting *Christensen v. Superior Ct.*, 820 P.2d 181, 202 (Cal. 1991)). Defendant must also act with the intention to inflict injury or engage in conduct with the realization that it will result in injury. *Hughes v. Pair*, 209 P.3d at 976.

When a plaintiff alleges an emotional distress claim predicated on foreclosure or threatened foreclosure, "courts have found as a matter of law that foreclosing on property" or acts normally associated therewith do not "amount to the 'outrageous conduct' required to support a claim for intentional infliction of emotional distress." *Aguinaldo*, 2012 WL 3835080, at *7; *see also*

*Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010) ("Where a lending party in good faith asserts its right to foreclose according to contract . . . its conduct falls shy of 'outrageous,' however wrenching the effects on the borrower."); *Helmer v. Bank of Am., N.A.*, No. CIV S–12–0733, 2013 WL 1192634, at *6 (E.D. Cal. Mar. 22, 2013) ("Defendant is correct that emotional distress caused by good faith foreclosure, without more, is not enough to state a claim for intentional infliction of emotional distress."). Accordingly, "[t]he act of foreclosing on a home (absent other circumstances) is not the kind of extreme conduct that supports an intentional infliction of emotional distress claim." *Quinteros v. Aurora Loan Servs.*, 740 F. Supp. 2d 1163, 1172 (E.D. Cal. 2010).

Claimants also complain of the repeated telephone calls and letters from Ditech seeking payment before the payment was considered late. Other courts have found similar conduct does not sustain a claim for intentional infliction of emotional distress. *Helmer*, 2013 WL 1192634, at *6 (telephonic conversations and correspondence with defendant mortgage loan servicers insufficient to sustain claim for intentional infliction of emotional distress, even where the conversations allegedly misled plaintiff as to the state of plaintiff's mortgage loan).

The Court finds that Claimants fail to state a claim for negligent or intentional infliction of emotional distress.

## CONCLUSION

For the foregoing reasons, the Court sustains the Objection and disallows the Claim.

IT IS SO ORDERED.

Dated: July 26, 2024
New York, New York                    /s/ *James L. Garrity, Jr.*
                                       Honorable James L. Garrity, Jr.
                                       United States Bankruptcy Judge