UNITED STATES BANKRUPTCY COURT                    NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
In re:                                          :
                                                :   Case No. 19-10412 (JLG)
                                                :
Ditech Holding Corporation, *et al.*,           :   Chapter 11
                                                :
                                                :
                                    Debtors.[1] :   (Jointly Administered)
-------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS TRUSTEE'S FORTY-NINTH OMNIBUS OBJECTION WITH RESPECT TO THE PROOF OF CLAIM FILED BY LEO AND SHARON WROBEL

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:    Richard Levin

LEO WROBEL
*Appearing Pro Se*
100 Ovilla Oaks Drive
Ovilla, Texas 75154

---

[1]    On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[2]

On July 28, 2021, Leo and Sharon Wrobel (the "Claimants") filed Proof of Claim No. 24721 (the "Claim") as an unsecured, unliquidated claim in an undetermined amount against Ditech Holding Corporation ("Ditech").[3]  On October 18, 2021, the Consumer Claims Trustee filed her Forty-Ninth Omnibus Objection (the "Objection").[4]  In the Objection, the Consumer Claims Trustee seeks to disallow the Claim, among others, asserting it does not state a sufficient legal basis to establish liability on the part of Ditech and was not filed timely.  On November 9, 2021, Claimants filed their response to the Objection (the "Response").[5]  On June 27, 2024, the Consumer Claims Trustee replied to the Response (the "Reply").[6]  On July 18, 2024, Claimants filed their Sur-Reply (the "Sur-Reply").[7] On July 18, 2024, the Consumer Claims Trustee filed her Sur-Response (the "Sur-Response").[8] Claimants are acting pro se in this contested matter.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[3] Citations to page numbers within the Claim refer to the document's PDF pagination.

[4] *Consumer Claims Trustee's Forty-Ninth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims)*, ECF No. 3736.

[5] *Response of Leo and Sharon Wrobel to Claim Trustee's Forty-Ninth Omnibus Objection to proofs of Claim Debtor Ditech Holding Corporation et al*, ECF No. 3792.  Citations to page numbers within the Response refer to the document's PDF pagination.

[6] *Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee's Forty-Ninth Omnibus Objection with Respect to the Claim of Leo and Sharon Wrobel (Claim 24721)*, ECF No. 5116.

[7] *Surreply of Claimants Leo and Sharon Wrobel*, ECF No. 5136.

[8] *Response of the Consumer Claims Trustee to the Sur-Reply of Leo and Sharon Wrobel (Claim 24721)*, ECF No. 5116.

In accordance with the Claims Procedures Order,[9] the Objection was adjourned when Claimants filed the Response to enable the Court to conduct a Sufficiency Hearing on the Claim. The legal standard of review applied at a Sufficiency Hearing is equal to the standard on a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").  Claims Procedures Order ¶ 3(iv)(a).

On July 25, 2024, the Court conducted a Sufficiency Hearing.  The Consumer Claims Trustee appeared through counsel and Leo Wrobel appeared on behalf of the Claimants.  The Court heard arguments from the parties. The Court has reviewed the Claim, Objection, Response, and Reply, Sur-Reply, and Sur-Response, including all documents submitted in support thereof, and has considered the arguments made by the parties in support of their positions.

For the reasons set forth herein, the Court sustains the Objection and disallows the Claim.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

### The Loan

On or around October 7, 2005, Sharon Wrobel executed a promissory note in favor of Homecomings Financial Network, Inc. in the amount of $300,800 (the "Note").[10]  The Note was

---

[9] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632 (the "Claims Procedures Order").

[10] The Note is annexed as Exhibit A to the Reply.  The Court takes judicial notice of the Note and the other documents annexed to the Reply, as well as documents annexed to the Claim and Response, because they are integral

secured by a mortgage (the "Mortgage," together with the Note, the "Loan") on real property located at 100 Ovilla Oaks Drive, Ovilla, Texas 75154 (the "Property"). While only Sharon Wrobel signed the Note, both Claimants were signatories to the Mortgage. By October 27, 2021, Claimants paid the Loan in full. *See* Response at 24.

Claimants state that GMAC and Ocwen transferred the Loan to Green Tree, who then transferred it to Ditech. *Id.* at 2. They say that their loan was subsequently serviced by "LoanCare / New Res." *Id.*

### The Chapter 11 Cases

On February 11, 2019, Ditech and certain of its affiliates (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity to file a

---

to the Claim. *Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 632 F. Supp. 3d 402, 436 (S.D.N.Y. 2022) (holding that on a Rule 12(b)(6) motion to dismiss, courts can consider "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are 'integral' to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." (quoting *LeChase Constr. Servs., LLC v. Escobar Constr., Inc.*, No. 18-cv-1021, 2019 WL 2743637, at *6 & n.4 (N.D.N.Y. July 1, 2019))); *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022) (stating that in deciding Rule 12(b)(6) motions to dismiss, courts must consider the entire complaint, documents incorporated by reference, and other matters of which a court can take judicial notice); *Ocampo v. JP Morgan Chase Bank, N.A.*, 93 F. Supp. 3d 109, 114 (E.D.N.Y. 2015) (finding the court properly considered loan documents, loan transfer documents, and filings in a related state court action on a Rule 12(b)(6) motion to dismiss because they were integral to the complaint).

proof of claim in the Chapter 11 Cases (the "General Bar Date").[11]  The Court extended the General

Bar Date for consumer borrowers to June 3, 2019 (the "Consumer Creditor Bar Date").[12]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, which became

effective on September 30, 2019.[13]  The Consumer Claims Trustee is appointed under the Third

Amended Plan as a fiduciary responsible for the reconciliation and resolution of Consumer

Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer

Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims.  *See* Third

Amended Plan, art. I, § 1.41.  The Consumer Claims Trustee has the exclusive authority to object

to Consumer Creditor Claims.  *See id.* art. VII, § 7.1.

### The Claims Procedures Order

The Claims Procedures Order authorizes the Consumer Claims Trustee to file Omnibus

Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth

in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order.  *See*

Claims Procedures Order ¶ 2(i)(a)-(h).  A properly filed and served response to an objection gives

rise to a "Contested Claim," which is resolved at either a "Merits Hearings" or a "Sufficiency

Hearing."  *Id.* ¶ 3(iv).  A Merits Hearing is an evidentiary hearing on the merits of a Contested

Claim.  *Id.* ¶ 3(iv)(b). A Sufficiency Hearing is a non-evidentiary hearing wherein the Court

---

[11] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[12] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[13] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

considers whether the Contested Claim states a claim for relief against the Debtors under the legal standard employed on a Rule 12(b)(6) motion to dismiss.  *Id.* ¶ 3(iv)(a).

**The Claim**

Claimants filed the Proof of Claim, Official Form 410, stating the basis of the Claim is "Borrower" and the amount of the Claim is undetermined.  Claim at 2.  The Claim was filed on July 28, 2021, over two years after the Consumer Creditor Bar Date of June 3, 2019.

Claimants acknowledge that the Claim was filed after the Consumer Creditor Bar Date, but say that their claims "were pending with regulatory agencies prior to the agreements in the Ditech bankruptcy."  *Id.* at 5.  Claimants state that "[i]t may not have been appropriate for [them] to file a Proof of Claim in 2019 at all" because the regulatory matters were "technically unadjudicated."  *Id.*

Claimants complain that Ditech refused to recast their loan as required when they completed the terms of their Home Affordable Modification Program ("HAMP") loan modification.  *Id.* at 4.  The Claim states three items of damages:

1. $26,180 in overpayments for Ditech's failure to recast their loan after completing the five-year HAMP modification in 2015.  This amount represents the difference between what Claimants paid and what they would have paid if the loan had been properly recast, calculated as $340 per month for 77 months.

2. $422.98 in late charges, which Claimants say were incurred due to Ditech not responding in a timely manner to their inquiries.

3. $83.33 in HAMP performance incentives, which Claimants allege were incorrectly withheld by Ditech due to payment recording errors by Ditech's predecessors.

*Id.*  Claimants calculate their total loss to be $26,686.31.  *Id.*

6

To show their damages, the Claim annexes approximately 95 pages of "[s]upporting documentation . . . describing how Ditech and LoanCare / NewRes were the cause of [their] loss, and further contributed to that loss through bad faith practices." *Id.* These documents include a complaint lodged with the Consumer Financial Protection Bureau (the "CFPB") against Ditech,[14] correspondence from Claimants to Ditech, resolution letters from Ditech to Claimants, correspondence with predecessor- and successor-servicers, and correspondence between Claimants and the Texas Department of Savings and Mortgage Lending.

## The Objection

The Consumer Claims Trustee seeks an order from the Court disallowing the Claim "to avoid the possibility that the claimants at issue receive improper recoveries." Objection ¶ 10. The Consumer Claims Trustee asserts that any recovery by Claimants would be improper because the Claim fails to state a legal claim for relief and was not filed timely. Objection, Ex. A at 5.

## The Response

The Response asks the Court to excuse the late filing because Claimants "were unsure as to whether it was proper to file an un-adjudicated claim." Response at 10. Claimants say they filed their Claim because they "stood to lose all financial recourse due to the Ditech bankruptcy if they did not file their claim before the bankruptcy was sealed" and that "these kinds of claims are the very reason Claims Trustee was set up in the first place." *Id.* at 1.

Claimants' complaints center around Ditech's handling of their Loan, which they say originated with GMAC and Ocwen, was acquired by Green Tree, and then transferred to Ditech

---

[14] The complaint alleges that Ditech incorrectly charged Claimants late fees and did not comply with their obligations pursuant to a loan modification. Claim at 12. Claimants assert that when they asked Ditech about the late fees and HAMP incentive payments, Ditech retaliated by threatening foreclosure and issuing a notice of default. *Id.* at 8, 11.

before being serviced by LoanCare/NewRes.  Response ¶ 3.  Claimants assert that when Ditech acquired loan portfolios, including theirs, it often received incomplete or inaccurate loss mitigation data.  *Id.* ¶¶ 5-6.  Despite being "responsible for gathering certain information about those loans from the prior servicer," *id.* ¶ 4, Ditech allegedly had "no process in place to confirm that this data was in fact been [sic] requested or received."  *Id.* ¶ 7.

Claimants contend that Ditech "would not honor an In-Process Modification without conducting its own 'validation,'" even when consumers provided information about their modifications.  *Id.* ¶ 8.  This practice allegedly led to Ditech "unilaterally breach[ing] contracts that consumers negotiated with the prior servicers of their loans."  *Id.* ¶ 16.

When Claimants sent written inquiries about errors in their account, including "performance bonuses under the HAMP program and the requirement for Ditech to recast the Wrobel's [sic] loan," Ditech allegedly failed to recognize these as "qualified written requests" under the Real Estate Settlement Procedures Act ("RESPA").  *Id.* ¶ 9.  Claimants argue that Ditech violated RESPA by not acknowledging receipt of Claimants' qualified written request within 20 days or responding to account errors within 60 days.  *Id.* ¶¶ 18-19.

Claimants allege that Ditech consistently "refused to consider the disputes and deflected the issue by correcting minor errors but side stepping the issue of the Wrobel's [sic] Loan Recast altogether."  *Id.* ¶ 11.  In one instance, Ditech allegedly told Claimants that "they were required to pay their loan down an additional 10 percent (about $28,000 at the time) before Ditech would process their request," despite this not being a HAMP requirement.  *Id.* ¶ 12.

According to Claimants, Ditech repeatedly made false or unsubstantiated representations about their loan terms, including "unpaid balances, payment due dates, interest rates, monthly payment amounts, delinquency statuses, and unpaid fees or other amounts due."  *Id.* ¶¶ 13-15.

They allege that these actions violate the Consumer Financial Protection Act and the Federal Trade Commission Act (the "FTC Act"). *Id.* ¶¶ 14 n.5, 17 n.7 (citing 12 U.S.C. §§ 5531, 5536(a)(1)(B); 15 U.S.C. § 45(a)).

Claimants state they filed complaints with regulatory agencies, but only later learned through an Open Records Act request that LoanCare had denied Claimants' requested recast based on "a single alleged late payment in 2012 that was long since resolved with LoanCare predecessor GMAC." *Id.* ¶¶ 23-25; Supporting Documentation ¶¶ 1-2.[15]  They argue this denial violates Fannie Mae rules for the HAMP program, which "state loans must be recast if in good standing, defined as no more than 90 days past due."  Response ¶ 27.

Claimants allege that Ditech's actions, and those of its successors, have caused them substantial financial harm, with the cost of the un-recast loan at 4.75% interest totaling $40,898, as of the date of the Response.  *Id.* ¶ 28.

Claimants further allege that Ditech and its successors violated various consumer protection laws, including the Fair Debt Collection Practices Act, RESPA, and the FTC Act, for six years and continue to do so.  Supporting Documentation ¶ 5 n.12-14.  They claim they were intimidated by foreclosure notices sent by Ditech, leading them to pay disputed late charges to "buy peace."  *Id.* ¶ 5.

**<u>The Reply</u>**

The Consumer Claims Trustee argues the Court should disallow the Claim as untimely because Claimants filed it over two years past the Consumer Creditor Bar Date.  Reply ¶ 26.  She

---

[15] Citations to "Supporting Documentation" refer to paragraphs in the section of the Response where the numbering is not consecutive with the previous section.

maintains that allowing such a late claim could "disrupt settled expectations embodied in a confirmed plan, create extra work for the [Consumer Claims] Trustee or the party required to examine and object to claims, and inspire other creditors to disregard clear court orders and seek redress, creating a potentially perpetual loop of litigation and threatening the sound and prompt administration of the estate." *Id.* ¶ 36.

The Consumer Claims Trustee emphasizes that the reason for delay is the most critical factor in the excusable neglect analysis. *Id.* ¶ 39. She says that Claimants' explanation—that they were unsure if it was proper to file an unadjudicated claim—is not a valid excuse. *Id.* ¶¶ 41-42. The Consumer Claims Trustee notes that despite being pro se, Claimants have "documented a lengthy history of capable self-advocacy in connection with their loan dispute, spanning four different servicers and two separate regulatory agencies," and they were aware of the bankruptcy and potential claim at the time of filing. *Id.* ¶ 44.

While acknowledging Claimants may have acted in good faith, the Consumer Claims Trustee argues this does not overcome other factors weighing against allowing the late claim. *Id.* ¶¶ 46-47. The Consumer Claims Trustee contends that given the untimely filing, the merits of the Claim need not be addressed. *Id.* ¶ 49. Therefore, the Consumer Claims Trustee urges disallowance to prevent "unjustifi[ed] recover[y] from the Wind Down Estates and Consumer Creditor Reserve to the detriment of other creditors who may hold valid claims." *Id.* ¶ 50.

### Sur-Reply

The Sur-Reply argues that section 523(a)(4) of the Bankruptcy Code make the Claim nondischargeable for what Claimants characterize as Ditech's "bad behavior." Sur-Reply at 1-2. They assert that "the longstanding pattern of bad conduct by Ditech in terms of deflection, denial and delay, as presented in this claim, represents a conscious disregard of a substantial and

unjustifiable risk by any reasonable measure." *Id.* at 3.  Claimants contend that Ditech failed to respond to qualified written requests as required by law, stating it is "indisputable that [RESPA] required Ditech to provide a written response acknowledging receipt of a Qualified Written Request from a consumer for information relating to the servicing of the loan within 20 days." *Id.* (citing 12 U.S.C. § 2605(e)(1)).

The Sur-Reply also appears to argue that Ditech's prior settlements and agreements should prevent it from escaping liability through bankruptcy. Specifically, Claimants point to Ditech's "$63 million settlement in 2016 and entered into a court-sanctioned stipulation" as evidence that the company should not be able to escape its obligations through bankruptcy. *Id.* at 4-5.[16]

Addressing the late filing of their claim, Claimants again explain that they "are not attorneys and were acting with the understanding that it might be ill-advised to file a claim while it was being taken up at the Consumer Financial Protection Bureau and Texas regulatory agencies and had not yet been resolved." *Id.* at 5.  They cite Bankruptcy Rule 9006(b)(1) and the Supreme Court's four factors for evaluating "excusable neglect" to justify their late filing. *Id.* at 5-6 (citing *Pioneer Inv. Serv. Co. v. Brunswick Assoc. L.P.*, 507 U.S. 380 (1993)).

**<u>Sur-Response</u>**

The Consumer Claims Trustee contends that section 523(a)(4) of the Bankruptcy Code is inapplicable here. First, she argues that under Texas law, the Debtors did not owe a fiduciary duty to Claimants. Sur-Response ¶ 13 (citing *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 192 (S.D. Tex. 2007); *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 675 (Tex. App. 1996)). Second, she notes that dischargeability issues must be raised in an adversary

---

[16] Because Claimants have failed to demonstrate excusable neglect for their late filing, the Court does not reach the merits of these arguments.

proceeding. *Id.* ¶ 14 (citing Fed. R. Bankr. P. 7001(6)). Finally, she argues that section 523(a)(4) "does not apply at all in these corporate chapter 11 cases" because Ditech is not an individual debtor. *Id.* (citing 11 U.S.C. § 1141(d)(3)).

The Consumer Claims Trustee also challenges Claimants' reliance on the 2016 stipulated settlement order between the Debtors and certain regulatory agencies. The Sur-Response argues that Claimants lack standing to seek relief for alleged injunctive violations and have not stated a valid claim for relief based on this order. *Id.* ¶¶ 16-18. The Consumer Claims Trustee emphasizes that Claimants are not parties to the order and that any potential relief based on the order is not available through the bankruptcy claims process. *Id.* ¶ 17.

## Motion to Estimate

On March 23, 2023, the Consumer Claims Trustee filed a motion to estimate claims for purposes of setting a reserve and to classify those claims as non-363(o) claims as defined in the Third Amended Plan.[17] The Consumer Claims Trustee estimated the Claim amount at $26,626.31. Claimants did not object or otherwise respond to the motion. The Court granted the motion, setting the Claim at $26,626.31 and classifying it as a non-363(o) claim.[18]

## LEGAL PRINCIPLES

"When a debtor declares bankruptcy, each of its creditors is entitled to file a proof of claim—*i.e.*, a document providing proof of a 'right to payment'—against the debtor's estate." *Rora LLC v. 404 E. 79th St. Lender LLC*, 630 B.R. 876, 887 (E.D.N.Y. 2021) (quoting *Travelers*

---

[17] *Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4650

[18] *Order Granting Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4733.

*Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co*., 549 U.S. 443, 449 (2007)).  The court sets the deadline by which the creditors must file their proof of claim against the debtor's estate, which is otherwise known as the bar date.  Fed. R. Bankr. P. 3003(c)(3).  Fixing a bar date is a necessary step toward achieving a successful reorganization because it "enabl[es] the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims."  *In re Caritas Health Care, Inc.*, 435 B.R. 111 (Bankr. E.D.N.Y. 2010) (quoting *First Fidelity Bank, N.A., N.J. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.)*, 937 F.2d 833, 840 (2d Cir. 1991)).

With certain exceptions not relevant here, section 502(b)(9) of the Bankruptcy Code empowers a court to disallow a claim if "proof of such claim is not timely filed" or filed after the bar date set by the court.  "In a bankruptcy case . . . claimants are only allowed to participate if they (or someone authorized to act for them) affirmatively file claims before the bar date.  If a claimant fails to take that affirmative step, then the claim is barred."  *In re Tronox Inc.*, 626 B.R. 688, 702 (Bankr. S.D.N.Y. 2021), *reconsideration granted in part*, No. 09-10156, 2022 WL 628097 (Bankr. S.D.N.Y. Mar. 3, 2022), *aff'd*, No. 21-cv-10910, 2023 WL 2744136 (S.D.N.Y. Mar. 31, 2023).  However, due process requires that a court may disallow a creditor's late-filed claim under section 502 of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) only "where adequate notice of the bar date is provided."  *In re Roman Cath. Diocese of Rockville Ctr.*, No. 20-12345, 2023 WL 4497418, at *4 (Bankr. S.D.N.Y. July 12, 2023).  Creditors who are "known" to the debtor—or are "reasonably ascertainable" by it, *see Tulsa Pro. Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490 (1988)—are entitled to notice that is "reasonably calculated, under all the circumstances to apprise" them of the pendency of the bar date.  *In re R.H. Macy & Co., Inc.*, 161 B.R. 355, 359 (Bankr. S.D.N.Y. 1993) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339

U.S. 306, 314 (1950)).  Absent this notice, a court may not discharge their claims.  *Grant v. U.S. Home Corp. (In re U.S. Home Corp.)*, 223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998).

In some cases, courts make allowances for those who, despite receiving constitutionally sufficient notice of a bar date, have a sufficiently compelling excuse for their neglect.  Bankruptcy Rule 9006(b)(1) provides that, on a party's motion, "the court for cause shown may at any time . . . permit the act to be done where the failure to act was the result of excusable neglect."  Fed. R. Bankr. P. 9006(b)(1); *see also Midland Cogeneration Venture Ltd. P'ship v. Enron Corp (In re Enron Corp.)*, 419 F.3d 115, 121 (2d Cir. 2005) (explaining that a late-filing claimant bears the burden of proving its excusable neglect).  The Supreme Court has set out a factor test for courts to consider when determining whether a creditor's neglect is excusable.  Those factors are:

> [1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.

*Pioneer Inv. Serv. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 395 (1993).

As applied, the Second Circuit has "taken a hard line" on the test.  *In re Enron Corp.*, 419 F.3d at 122 (quoting *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003)).  Whether a claimant has shown "excusable neglect" depends primarily on the third factor, since a claimant's good faith is rarely at issue, and delay and its attendant prejudice to the debtor and consequences to the proceedings are often—though not always—minor.  *See Silivanch*, 333 F.3d at 366.  Thus, courts assign a greater weight to the third factor than the others.  *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120 (Bankr. S.D.N.Y. 2010).

## ANALYSIS

### Due Process

There is no dispute that the Claim, filed on July 21, 2021, is untimely.  As noted, "[a] threshold inquiry in late claim allowance motions is whether the debtor provided adequate notice of the applicable claims bar date."  *In re RML, LLC*, 657 B.R. 709, 720 (Bankr. S.D.N.Y. 2023). Claimants were provided with notice of the Consumer Creditor Bar Date via mail.  *See* Reply, Ex. C (Affidavit of Service).   Specifically, Sharon Wrobel was served via first class mail at the Property's address. *Id.* at 6, 11. "It is well settled that proof that a letter was properly addressed and placed in the mail system creates a presumption that the letter was received in the usual time by the addressee." *In re AMR Corp.*, 492 B.R. 660, 663 (Bankr. S.D.N.Y. 2013) (citing *Hagner v. U.S.*, 285 U.S. 427 (1932)); *see also In re Navillus Tile, Inc.*, 634 B.R. 847, 854 (Bankr. S.D.N.Y. 2021).  Claimants do not attempt to rebut this presumption, nor do they argue that they did not receive actual notice of the Consumer Creditor Bar Date.  Thus, the Court applies the presumption of service and finds that Claimants had actual notice of the Consumer Creditor Bar Date, thus affording Claimants due process. *Oneida Indian Nation of New York v. Madison Cnty.*, 665 F.3d 408, 429 (2d Cir. 2011) ("although due process does not require actual notice, actual notice satisfies due process—so long as that notice 'apprises [a party] of the pendency of the action and affords [it] an opportunity to respond.'" (alterations in original) (quoting *Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 254 (2d Cir. 1995))).

### Excusable Neglect

Having found that service was constitutionally adequate, the Court thus considers the *Pioneer* factors to determine whether Claimants' late filing was the result of excusable neglect.

*Reason for Delay*

The focus of whether a claimant's neglect was excusable focuses on the reason for the delay, with a particular emphasis on "whether the delay was in the reasonable control of the movant." *In re Motors Liquidation Co.*, 576 B.R. 761, 775 (Bankr. S.D.N.Y. 2017), *aff'd*, 599 B.R. 706 (S.D.N.Y. 2019). It is critical for creditors seeking to file untimely claims to "explain the circumstances surrounding the delay in order to supply the Court with sufficient context to fully and adequately address the reason for delay factor and the ultimate determination of whether equities support the conclusion of excusable neglect." *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007) (citing *Pioneer*, 507 U.S. at 388).

In explaining why they did not file a claim before the Consumer Creditor Bar Date, Claimants evince a lack of understanding of the effect of the bar date. Claimants explain:

> [E]ven though the Wrobel's [sic] claim was not timely filed, the Wrobels stood to lose all financial recourse due to the Ditech bankruptcy if they did not file their claim before the bankruptcy was sealed. Arguably, these kinds of claims are the very reason Claims Trustee was set up in the first place, lest valid claims involving Ditech misconduct are lost forever in the bankruptcy.

Response at 1. Claimants are correct that they could recover on a claim against Ditech only in the Chapter 11 Cases. However, the relevant deadline for them to do so was not before the bankruptcy was "sealed," but by the deadline in the Consumer Creditor Bar Date. In a letter to Epiq, the claims agent in these Chapter 11 Cases, asking for assistance in resolving their potential claims against Ditech, Claimants elaborate:

> It may not have been appropriate for Leo and Sharon Wrobel to file a Proof of Claim in 2019 at all, since their Complaints were technically unadjudicated then, and remain so today. Despite the ambiguity, nothing precludes the involvement of the Committee in helping the Parties reach a solution, so here we are.

Claim at 5.  In the Sur-Reply, Claimants confirm that they knew they could have timely filed the Claim but chose not to. Sur-Reply at 5 (explaining Claimants "were acting with the understanding that it might be ill-advised to file a claim while it was being taken up at the Consumer Financial Protection").

It is evident that Claimants genuinely believed that they could not or should not file a claim earlier due to their pending complaint against Ditech with the CFPB.  However, that belief is mistaken and mistake of law, or a misunderstanding of the claims process, is not a valid basis for finding excusable neglect.  "The Supreme Court has explicitly stated that although the concept of excusable neglect is somewhat elastic, 'inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect.'"  *In re Singer Co. N.V.*, No. M-47, 2002 WL 10452, at *2 (S.D.N.Y. Jan. 3, 2002) (quoting *Pioneer*, 507 U.S. at 392); *see also In re Motors Liquidation Co.*, 576 B.R. at 779 (denying motion to file late claim because "the general rule [is] that a mistake of law does not constitute excusable neglect" (alteration in original) (quoting *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 251 (2d Cir. 1997))).  In *Tronox*, the movants made a similar argument where they asserted "that they did not understand the terms of bar date notices and did not know that the notices applied to their claims."  *In re Tronox Inc.*, 626 B.R. at 732.  Those assertions did not amount to excusable neglect in *Tronox*, and similarly, Claimants' misunderstanding of the claims process and uncertainty as to whether they could or should file claims does not warrant permitting a late-filed claim here.

Moreover, the issues central to the Claim are not new.  Claimants' primary contention is that Ditech failed to recast their mortgage loan in 2015.  Claimants attribute this problem to a payment-application dispute with GMAC in 2012.  Claimants tried to resolve their issues directly with Ditech before ultimately filing a complaint with the CFPB on May 25, 2016.  Claim at 7-10.

Ditech responded to the CFPB complaint in July 2016. *Id.* at 47. Claimants received notice of the extended claims bar date in May 2019.  They annex a notice from Ditech, RMS and the Committee of Consumer Creditors, which states as follows:

> Borrowers will lose their right to sue Ditech and RMS for money because of the bankruptcy, but some money, $10,000,000, is set aside for borrowers who have allowed legal claims against Ditech and RMS.

*Id.* at 6. Still, Claimants waited another two years to file their claim.  Whatever Claimants' subjective beliefs about the merit of litigating their claims outside of this Court, on the most important *Pioneer* factor, Claimants are bound to fail because their failure to adhere to the twice-extended bar date was purposeful and within their control.  *Cf. In re Glob. Aviation Holdings Inc.*, 495 B.R. 60, 64 (Bankr. E.D.N.Y. 2013) ("A claim which is filed late due to conscious disregard of the bar date cannot be saved by Rule 9006(b)(1).").  Accordingly, the Court finds that Claimants' reason for delay weighs against allowing Claimants to file a late claim.

### Danger of Prejudice

The Court next considers the danger of prejudice to Debtors, which "is a more flexible and complex concept than a simple dollar-for-dollar depletion of assets otherwise available for timely filed claims." *Manousoff v. Macy's Ne., Inc. (In re R.H. Macy & Co., Inc.)*, 166 B.R. 799, 802 (S.D.N.Y. 1994)).  Prejudice is not an issue that can be considered in isolation. *In re Enron Corp.*, 419 F.3d at 131. Rather, "[t]he prejudice factor calls for consideration of the overall negative effect, if any, on a debtor and its estate resulting from allowing a late claim." *In re Roman Cath. Diocese of Syracuse*, 638 B.R. 33, 39 (Bankr. N.D.N.Y. 2022) (quoting *In re Lehman Bros. Holdings Inc.*, 433 B.R. at 120); *In re Lyondell Chem. Co.*, 543 B.R. 400, 410 (Bankr. S.D.N.Y. 2016) (stating courts should consider "the adverse impact that a late claim may have on the judicial

administration of the case") (quoting *In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995))).

Debtors serviced an enormous volume of consumer mortgage loans, creating a vast pool of potential claimants, many thousands of whom did file timely claims in these Chapter 11 Cases. The Consumer Claims Trustee represents that "[b]y the time Claimants filed their Claim, a total of 5,457 consumer creditor claims had already been filed, and [she] had already filed 47 of her 63 omnibus claims objections." Reply ¶ 35 (footnote omitted).[19] The Consumer Claims Trustee made significant efforts to examine and object to these claims in the time between the Consumer Claims Bar Date and the filing of the Claim. *Id.*

The fact that Claimants may have been prosecuting complaints with regulatory agencies regarding the Loan cannot serve as a basis for allowing a late claim. To allow such a claim would excuse an unreasonable construction of a claimant's obligations to comply with a Court order, and it would encourage late claims from others who unreasonably believed that they were exempt from the usual procedures of claims administration. In turn, the Consumer Claims Trustee could find herself in a stream of litigation arising from late-filed claims, thus increasing the administrative costs to the estate. *See In re Motors Liquidation*, 598 B.R. 744, 758-59 (Bankr. S.D.N.Y. 2019) ("The mere prospect of litigating additional motions to file post-bar-date proofs of claim is enough to prejudice the debtor."). This would disrupt creditors' settled expectations under the Third Amended Plan and only further deplete the funds available to holders of general unsecured claims, creditors who are already receiving only a percentage of their allowed claims. The danger of prejudice factor weighs in favor of disallowing the Claim.

---

[19] In making this representation, the Consumer Claims Trustee relied on calculations from reports run through an internal case management system populated from the data from the claims register.

***Length of Delay and Potential Impact on Proceedings***

Claimants filed their Claim almost two years after the Third Amended Plan was negotiated and confirmed, with the creation of a fund for Consumer Creditor Claims, and more than two years past the extended bar date of June 3, 2019.  As noted above, allowing such a late claim without a strong excuse would set a disruptive precedent for other potential claimants.  In short, the Court cannot excuse a claim which was filed late for an inexcusable reason; consistency would demand that doing so would likewise compel it to excuse other claims with similarly unpersuasive justifications.

***Claimants' Good Faith***

Claimants contacted the Consumer Claims Trustee on July 21, 2021, requesting her guidance in pursuing their claims against Debtors.  Claim at 100.  In their email, Claimants indicated that they understood the bankruptcy precluded litigation against Debtors and that they had tried unsuccessfully to resolve their issues with the successor-servicer.  *Id.*  In a same-day response, the Consumer Claims Trustee advised that the Claim was well past due and would be considered untimely if filed.  *Id.* at 99.  Claimants filed their claim one week later.  *Id.* at 1.

The Court does not doubt that Claimants believed their excuse for the late-filing was valid.  However, that fact does not overcome their failure to meet the other three *Pioneer* factors—the "good faith" factor is rarely determinative.  *In re Motors Liquidation*, 619 B.R. 63, 80 (Bankr. S.D.N.Y. 2020).  Claimants may well have believed, albeit wrongly, that the filing of claims with regulatory agencies precluded them from seeking relief through the bankruptcy process.  They may also have genuinely hoped to resolve their dispute by working with their successor-servicer.  Nonetheless, Claimants' hesitation to file based upon their own uncertainty of the law does not amount to excusable neglect.

## **CONCLUSION**

For the foregoing reasons, the Court sustains the Objection and disallows the Claim.

IT IS SO ORDERED.


Dated: July 26, 2024
      New York, New York

                /s/ *James L. Garrity, Jr.*
                Honorable James L. Garrity, Jr.
                United States Bankruptcy Judge