UNITED STATES BANKRUPTCY COURT                          NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
In re:                                            :
                                                  :      Case No. 19-10412 (JLG)
                                                  :      Chapter 11
Ditech Holding Corporation, *et al.*,             :
                                                  :
                                                  :      (Jointly Administered)
                                   Debtors.[1]    :
-------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS TRUSTEE'S THIRTY-NINTH OMNIBUS OBJECTION WITH RESPECT TO THE PROOF OF CLAIM FILED BY JESSICA J. ANDERSON

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:    Richard Levin


JESSICA J, ANDERSON[2]
*Appearing Pro Se*
9369 West 67th Avenue
Arvada, Colorado 80004

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

[2] As set forth below, Ms. Anderson's interests are currently being represented by her estate and no representative of the estate appeared at the Sufficiency Hearing. The estate did not request to adjourn the hearing or otherwise seek an accommodation from the Court with respect to the hearing.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[3]

On April 25, 2019, Jessica J. Anderson[4] ("Claimant") filed Proof of Claim No. 21430 (the "Claim") as an unsecured claim in the amount of $19,100.11 against Ditech Holding Corporation f/k/a Walter Investment Management Corporation ("Ditech Holding Corp."). On December 15, 2020, the Consumer Claims Trustee filed her Thirty-Ninth Omnibus Objection (the "Objection").[5] In the Objection, the Consumer Claims Trustee seeks to disallow certain proofs of claim, including the Claim, which she asserts fail to state a legal basis sufficient to establish the Debtors' wrongdoing or liability. On June 1, 2021, Claimant filed a response to the Objection (the "Response").[6]  On May 30, 2024, the Consumer Claims Trustee replied to the Response (the "Reply").[7]

In accordance with the Claims Procedures Order,[8] the Objection was adjourned once Claimant filed her Response so the Court could conduct a Sufficiency Hearing. At a Sufficiency Hearing, the Court evaluates the sufficiency of the Claim under the legal standard of review applied

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[4] Jessica J. Anderson died in September 2022. Her claim is being pursued by her estate. The term "Claimant" shall refer to Ms. Anderson or her estate, as appropriate.

[5] *Consumer Claims Trustee's Thirty-Ninth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims),* ECF No. 3094.

[6] *Response to Ditech Holding Corporation Objection to Proof of Claim*, ECF No. 3524.

[7] *Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee's Thirty-Ninth Omnibus Objection with Respect to the Claim of Jessica J. Anderson (21430),* ECF No. 5080.

[8] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632 ("Claims Procedures Order").

to a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Claims Procedures Order ¶ 3(iv)(a).

On July 25, 2024, the Court held a Sufficiency Hearing at which the Consumer Claims Trustee appeared, through counsel, but no representative of the estate appeared on behalf of Ms. Anderson.  Therefore, the Consumer Claims Trustee elected to rest on her papers and the Court did not hear arguments on the Objection.

The Court has reviewed the Claim, Objection, Response, and Reply, including all documents submitted in support thereof, and has considered the arguments made by the parties in support of their positions.  As explained below, accepting Claimant's well-pleaded factual allegations as true, drawing all reasonable inferences in Claimant's favor, and liberally construing the Claim and Response to raise the strongest arguments that they suggest, the Claim fails to state a plausible claim to relief against Ditech Holding Corp.  Accordingly, the Court sustains the Objection and disallows the Claim.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

On or around October 21, 2002, Claimant executed a promissory note in favor of GMAC Mortgage Corporation (the "Note"), [9] in the amount of $207,100.00, secured by a Deed of Trust

---

[9] The Note is annexed as Exhibit A to the Reply. The Court takes judicial notice of the Note and the other documents annexed to the Reply and Response because they are matters of public record and are integral to the Claim. *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) ("[Courts] must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

(the "Deed of Trust,"[10] together with the Note, the "Loan") on real property located at 9369 West 67th Avenue, Arvada, Colorado 80004 (the "Property").

On January 19, 2010, Claimant filed a voluntary bankruptcy petition for relief under chapter 7 of the Bankruptcy Code in the Colorado bankruptcy court.[11] On September 21, 2010, Claimant signed a modification agreement with GMAC Mortgage, LLC to lower her interest rate and set the new principal balance to $205,718.39 (the "2010 GMAC Modification").[12]

On June 14, 2013, the Loan was modified a second time, as part of which Green Tree Servicing LLC ("Green Tree") agreed to decrease Claimant's monthly payments to $863.13, excluding escrow amounts, and extend the maturity date of the loan an additional 20 years (the "2013 Green Tree Modification").[13] The new principal balance under the Loan, as modified by the 2013 Green Tree Loan Modification, was $206,519.91.

On February 12, 2016, Claimant executed a modification agreement with Ditech Financial LLC ("Ditech") that maintained the same interest rate as the 2013 Green Tree Modification but increased the monthly payments to $868.61 and lengthened the Loan's maturity date by

---

particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *see Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (holding that, in a contract action, a court can take judicial notice of the underlying contract as a document "integral to the complaint"); *Leon v. Shmukler*, 992 F. Supp. 2d 179, 184 n.1 (E.D.N.Y. 2014) ("It is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records.").

[10] The Deed of Trust is annexed as Exhibit B to the Reply.

[11] *In re Anderson*, No. 10-10835 (Bankr. D. Colo. filed Jan. 19, 2010).

[12] The 2010 GMAC Modification is annexed as Exhibit C to the Reply.

[13] The 2013 Green Tree Modification is annexed as Exhibit D to the Reply. The 2013 Green Tree Modification was made as of June 14, 2013, but was not recorded until July 15, 2013.

approximately 5 years (the "2016 Ditech Modification").[14] The new principal balance was $207,832.39.

On December 29, 2016, GMAC Mortgage, LLC assigned the Mortgage to Ditech.[15] On January 12, 2017, Ditech filed a notice of election and demand to foreclose the Property. Response, Ex. B. Between March 2017 and July 2017, Claimant made attempts to modify her loan through the loss mitigation process with Ditech, which is the subject of the Claim. Timeline at 1-2.[16] On July 12, 2017, Claimant again filed a bankruptcy petition in the Colorado bankruptcy court, this time under chapter 13 of the Bankruptcy Code.[17] On January 22, 2020, Ditech assigned the Mortgage to New Residential Mortgage LLC.[18]

**The Chapter 11 Cases**

On February 11, 2019, Ditech Holding Corp. and certain of its affiliates, including Ditech (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019 as the

---

[14] The 2016 Ditech Modification is annexed as Exhibit E to the Reply. The 2016 Ditech Modification was recorded on February 29, 2016.

[15] The assignment to Ditech is annexed as Exhibit F to the Reply.

[16] The "Timeline" refers to the first two pages of the set of Claimant's documents submitted in support of the Claim that are available on the docket at ECF No. 3524-1.

[17] *In re Anderson*, No. 17-16429 (Bankr. D. Colo. filed July 12, 2017).

[18] The assignment to New Residential Mortgage LLC is annexed as Exhibit G to the Reply.

deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[19] The Court extended the General Bar Date for consumer borrowers to June 3, 2019.[20]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, which became effective on September 30, 2019.[21] The Consumer Claims Trustee is appointed under the Third Amended Plan as a fiduciary responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims. *See* Third Amended Plan, art. I, § 1.41. The Consumer Claims Trustee has the exclusive authority to object to Consumer Creditor Claims. *See id.*, art. VII, § 7.1.

**The Claims Procedures Order**

The Claims Procedures Order authorizes the Consumer Claims Trustee to file Omnibus Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order. *See* Claims Procedures Order ¶ 2(i)(a)–(h). A properly filed and served response to an objection gives rise to a "Contested Claim." *Id.* ¶ 3(iv). A Contested Claim is resolved at a Claim Hearing which the Consumer Claims Trustee has the option to schedule as either a "Merits Hearing" or a "Sufficiency Hearing." *Id.* ¶ 3(iv)(a), (b). A Merits Hearing is an evidentiary hearing on the merits of a Contested Claim, and a Sufficiency Hearing is a non-evidentiary hearing to address whether

---

[19] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[20] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[21] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

the Contested Claim states a claim for relief against the Debtors. At a Sufficiency Hearing, the Court applies the legal standard employed for a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

## The Claim

On the Proof of Claim, Official Form 410, Claimant indicates that her claim in the amount of $19,100.11 is based on "Rejection Damages." Claim at 2. In the narrative included with her Claim, Claimant contends that Ditech mishandled and improperly denied her loan modification application. *Id.* at 4. She states that "Ditech literally forced [her] to file bankruptcy in order to keep [her] home." *Id.* Claimant also complains that she received inconsistent information: she alleges that the underwriting department claimed they did not timely receive Claimant's application documents, yet ostensibly different Ditech representatives told her that her application was complete and timely. *Id.*

In support of the Claim, Claimant annexes (i) a June 27, 2017, letter from Ditech informing Claimant she is not eligible for a modification because the foreclosure sale on her Property was within 15 days; (ii) a printout from her Ditech account listing certain documents that were sent electronically on June 2, 2017—ostensibly to Ditech; and (iii) a printout of the results from an online search of the Jefferson County Public Trustee which shows the date of a so-called "NED" or Notice of Election and Demand as January 12, 2017, an original sale date of May 11, 2017, and a scheduled sale date of July 13, 2017—all ostensibly relating to the Property. *Id.* at 5-7.

In her narrative, Claimant also details the damages she believes she incurred, as follows:

| | |
|---|---|
| $12,472.68 - | Ditech fees and charges incurred from Ditech Proof of Claim 8-31-17 |
| [$]617.06 - | Trustee Administrative Fee |
| [$]974.80 - | Attorney Fee listed on Bankruptcy account summary |
| [$]3,567.82 - | Attorney Kimber Z Smith |
| [$]1,467.75 - | Attorney Gattenbein [sic] |
| $19,100.11 - | Total Claimed |

*Id.* at 4. She attaches a document reflecting the balance of required payments from her chapter 13 bankruptcy filing, which includes a claim by Kimber Z. Smith and the trustee's administrative fees. *Id.* at 8. She also provides account statements from the Law Offices of Kimber Z. Smith and the Gantenbein Law Firm. *Id.* at 9-10.

## The Objection

The Consumer Claims Trustee filed the Objection seeking to disallow the claims listed therein because "the proofs of claim fail to state a legal basis that establishes wrongdoing or liability on the part of the Debtors that would give rise to compensable recovery by the claimants." Objection ¶ 4. Specifically, the Consumer Claims Trustee maintains that the basis of the Claim— improper loan modification review—fails because "Claimant had received three prior modifications and so was not eligible for a fourth loan modification." Objection, Ex. A at 1.

## The Response

The Response includes a written response to the Objection as well as the Timeline Claimant created based on her notes of the events that occurred over the course of the loss mitigation review period from March 2017 through July 2017. Response at 1-2; Timeline at 1-2.

In the Response, Claimant disputes the Consumer Claims Trustee's assertion that the Loan had been modified three times and reiterates her allegation that Ditech mishandled her loss mitigation application in 2017. Response at 2. She concedes that she received loan modifications in 2013 and 2016 but asserts that her loan was not modified in 2010. *Id.* In support, Claimant annexes online search results from the Jefferson County, Colorado Clerk & Recorder that list only the 2013 and 2016 modifications. *See* Response, Exs. A, B.

Moreover, Claimant states that Ditech never informed her that her application was denied because of her three prior modifications, and she learned that those modifications rendered her ineligible only when she received the Objection. Response at 2. She asserts that despite receiving

8

letters from Ditech with their justifications for denying her application, none of them mentioned her ineligibility for a modification was due to her three prior modifications. *Id.* Claimant provides letters from Ditech dated May 3, 2017, June 27, 2017, and July 7, 2017, denying her modification application, and a letter dated July 11, 2017, denying her appeal of the June 27, 2017 letter and also separately determining that her loss mitigation application was properly denied. *See* Response, Exs. F, J, L, and M.[22]

Claimant also argues that if she was not eligible for another loan modification in 2017, Ditech should have informed her at the outset of the loss mitigation process. Response at 2. She says that by failing to do so, Ditech deprived her of the time or opportunity to find a different solution to keep her home and forced her to file bankruptcy to stay in her house. *Id.*

Claimant seeks "rejection damages" which she describes as her "hard costs in battling the issue" and reiterates her allegation that Ditech mishandled her loss mitigation application in 2017. *Id.* She further asserts that during the loan modification review period,

> Ditech deliberately manipulated [her] application . . . to ensure failure as the final outcome . . . by giving [her] conflicting requirement information, lying, withholding information regarding loan qualification, requiring new and additional items in order to move applications forward, and refusing to allow support programs they had available to people struggling with similar hardships.

---

[22] The May 3, 2017 letter and June 27, 2017 letters informed Claimant that she was not eligible for modification assistance because the foreclosure sale was within 15 days. *See* Response, Exs. F, J. The July 7, 2017 letter informed Claimant that she was ineligible for the Fannie Mae Capital and Extend (Term) Modification Trial Workout Plan and the Fannie Mae Flex Modification. Response, Ex. L. According to the July 7, 2017 letter, Claimant was ineligible for the Capital and Extend trial workout plan because her account was more than 6 months delinquent, and the hardship was not temporary or had not been resolved. *Id.* It also stated she did not qualify for the flex modification because (i) the foreclosure sale was scheduled within 30 days, (ii) the modified principal and interest payment ("P&I") was not lower than the current P&I, and (3) the modification would not result in a modified P&I that was less than or equal to the pre-modification P&I. *Id.* The July 11, 2017 letter responded to Claimant's appeal request and determined that her modification application was accurately denied because it was incomplete and a complete application was not received 45 days prior to a foreclosure sale. Response, Ex. M.

*Id.* Claimant refers to her timeline and the documents to support her allegations and asserts they "will show information Ditech has claimed in the denial letters as far as deadline and submittal dates is incorrect." *Id.* The supporting documents include various letters from Ditech from March 2017 through July 2017 regarding Claimant's loss mitigation application, lists of documents Claimant uploaded to her online Ditech account in March 2017 and June 2017, a letter to Ditech from Claimant with additional information regarding her income taxes for 2014-16, and records from the Jefferson County Clerk & Recorder web access portal.

## **The Reply**

The Consumer Claims Trustee asserts that the Claim neither meets the pleading standards of Rule 8(a) of the Federal Rules of Civil Procedure ("Rule 8(a)") nor states a claim upon which relief can be granted under Rule 12(b)(6). Reply ¶¶ 34-62. She interprets the Claim as one for breach of the implied covenant of good faith and fair dealing and a claim under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-17. *Id.* ¶¶ 38-39; 52. The Consumer Claims Trustee argues that even construed liberally, the Claim fails under Rule 12(b)(6). Thus, she asks the Court to disallow the Claim.

## **Motion to Estimate**

On March 23, 2023, the Consumer Claims Trustee filed a motion to estimate claims for purposes of setting a reserve and to classify those claims as non-363(o) claims as defined in the Third Amended Plan.[23] The Consumer Claims Trustee estimated the Claim amount at $19,100.11. Claimant did not object or otherwise respond to the motion. On May 11, 2023, the Court granted the motion, setting the Claim at $19,100.11 and classifying it as a non-363(o) claim.[24]

---

[23] *Consumer Claims Trustee's Omnibus Motion*, ECF No. 4650.

[24] *Order Granting Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4733.

## LEGAL PRINCIPLES

The Bankruptcy Code provides that a proof of claim filed under section 501 is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). A proof of claim filed in accordance with the Bankruptcy Rules is afforded a presumption of validity. *See* Fed. R. Bankr. P. 3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."); *see also Rora LLC v. 404 E. 79th St. Lender LLC*, 630 B.R. 876, 887 (E.D.N.Y. 2021). The objecting party can surmount this prima facie evidence by "com[ing] forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Helios & Matheson Analytics, Inc.*, 633 B.R. 115, 119 (Bankr. S.D.N.Y. 2021) (quoting *In re Vivaro Corp.*, 541 B.R. 144, 153-54 (Bankr. S.D.N.Y. 2005)).

If a party in interest objects to a proof of claim, it may only do so on the enumerated grounds set forth in section 502(b) of the Bankruptcy Code. *See* 11 U.S.C. § 502(b); *see also Harbinger Cap. Partners LLC v. Ergen (In re LightSquared Inc.)*, 504 B.R. 321, 339-40 (Bankr. S.D.N.Y. 2013) ("[I]f there is no basis to disallow a claim under section 502, the claim must be allowed." (citing *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007))). In relevant part, section 502(b) states that the Court shall determine and allow the amount of a claim subject to an objection as of the bankruptcy petition date "except to the extent that . . . (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1).

At a Sufficiency Hearing, the Court applies a legal standard of review equivalent to the standard applied in considering Rule 12(b)(6) motions to dismiss for failure to state a claim for

relief. *See* Claims Procedures Order ¶ 3(iv)(a). Rule 12(b)(6) does not require detailed factual allegations, but the facts alleged in the pleading "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In employing the 12(b)(6) standard, the Court accepts all allegations as true and draws all reasonable inferences in favor of the non-moving party. *Austin v. Town of Farmington,* 826 F.3d 622, 625 (2d Cir. 2016). However, it is "not bound to accept 'conclusory allegations or legal conclusions masquerading as factual conclusions.'" *Rolon v. Henneman*, 517 F.3d 140, 148-49 (2d Cir. 2008) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)). Accordingly, dismissal under Rule 12(b)(6) is appropriate if Claimant has not offered well-pleaded factual allegations, that when taken as true, make the claim plausible on its face. *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 790 F. Supp. 2d 106, 113 (S.D.N.Y. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In evaluating the Claim and assessing the merits of the Objection, the Court recognizes that Claimant is proceeding pro se and thus is entitled to the benefit of a more lenient standard than that afforded to litigants represented by counsel. *Chinniah v. FERC*, 62 F.4th 700, 702 (2d Cir. 2023); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). As such, the Court construes Claimant's submissions broadly and interprets them as raising the strongest arguments they suggest. *Rosa v. Doe*, 86 F.4th 1001, 1008 (2d Cir. 2023). However, while provided certain latitudes, "pro se plaintiffs are not relieved of the requirement that they plead enough facts so that their claims are plausible." *Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 434 (S.D.N.Y. 2023).

## ANALYSIS

Claimant's central allegation is that Ditech purposely mishandled and denied her loss mitigation request in 2017. She asserts that this caused her to file her chapter 13 case and to incur "hard costs" of approximately $19,100.11. Claim at 4; Response at 1-2. The Consumer Claims

Trustee argues the Claim fails to meet the pleading standard of Rule 8(a) or state a cognizable claim to defeat dismissal under Rule 12(b)(6). Reply ¶¶ 33-62.

The Court considers those matters below.

## Whether Claimant Satisfies the Rule 8(a) Pleading Standards

"The fundamental purpose of Rule 8(a) . . . is 'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Gomez-Kadawid v. Lee*, No. 20CV01786, 2022 WL 676096, at *3 (S.D.N.Y. Feb. 3, 2022) (quoting *Twombly*, 550 U.S. at 555). Rule 8(a) is a liberal standard and requires only a short and plain statement establishing that complainant is entitled to relief. Fed. R. Civ. P. 8(a). The pleading must provide enough information to "nudge[] [the] claim across the line from conceivable to plausible." *Conradt v. NBC Universal, Inc.*, 536 F. Supp. 2d 380, 388 (S.D.N.Y. 2008) (quoting *Twombly*, 550 U.S. at 570). A pleading is insufficient if it merely provides "'naked assertion[s]' devoid of 'further factual enhancement.'" *DLJ Mortg. Cap., Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 233 (E.D.N.Y. 2010) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

As the Consumer Claims Trustee acknowledges, Claimant provides "a detailed chronology" of events that took place in her efforts to obtain a loan modification. Reply ¶ 34. While Claimant does not explain the specific legal theories underlying the Claim, Claimant has alleged sufficient facts to permit the Consumer Claims Trustee "to have a fair understanding of what the [Claimant] is complaining about and to know whether there is a legal basis for recovery." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 577 (S.D.N.Y. 2021) (quoting *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)). The Court finds that the Claim is not "so confused, ambiguous, vague, or otherwise unintelligible" that its true substance is indiscernible. *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1998).

## Whether the Claim States a Claim for Relief Against Ditech

Claimant does not identify any legal theory or statutory scheme under which she seeks relief, but the Claim complains of Ditech's mishandling of her loss mitigation application. The Consumer Claims Trustee construes these allegations to assert a claim for breach of the implied covenant of good faith and fair dealing under the Deed of Trust and a violation of RESPA. The Court agrees with the Consumer Claims Trustee's characterization of the Claim and will evaluate it accordingly.

### *Breach of Implied Covenant of Good Faith and Fair Dealing*

The mortgage is governed by Colorado law.[25] Colorado reads an implied duty of good faith and fair dealing into every contract. *Univ. of Denver v. Doe*, 547 P.3d 1129, 1140 (Colo. 2024). "[A] necessary predicate for a claim for breach of the covenant of good faith and fair dealing is the existence of a contract, 'as the claim generally must be tied to a specific contract term that allows for discretion on the part of either party.'" *Peace v. Parascript Mgmt., Inc.*, 59 F. Supp. 3d 1020, 1029 (D. Colo. 2014) (quoting *Occusafe, Inc. v. EG & G Rocky Flats, Inc.*, 54 F.3d 618, 624 (10th Cir. 1995)). The relevant contract is the Deed of Trust.

"The good faith performance doctrine attaches to contracts 'to effectuate the intentions of the parties or to honor their reasonable expectations.'" *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006) (quoting *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995)). A party to a contract may rely on the implied covenant "when the manner of performance under a specific contract term allows for discretion on the part of either party." *McDonald v. Zions First National Bank, N.A.*, 348 P.3d 957, 967 (Colo. App. 2015) (quoting *New Design Constr., Inc. v. Hamon*

---

[25] *See* Deed of Trust § 16 ("This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.").

*Contractors, Inc.*, 215 P.3d 1172, 1181 (Colo. App. 2008)). It will apply where, for example, a contract term affords one party discretionary authority to set or control the price, quantity, or time of performance or to deprive the other party of an expected benefit under the contract. *Running Foxes Petroleum, Inc. v. Nighthawk Prod. LLC*, 175 F. Supp. 3d 1279, 1288 (D. Colo. 2016); *Blueradios, Inc. v. Kopin Corp., Inc.*, No. 16-CV-02052, 2022 WL 4549674, at *8 (D. Colo. Aug. 3, 2022). However, it cannot be used to "contradict terms or conditions for which a party has bargained, nor can it inject substantive terms into the parties' contract." *Miller v. Bank of New York Mellon*, 379 P.3d 342, 348 (Colo. App. 2016).

In sum, "[t]o state a claim for breach of [the duty of good faith and fair dealing], the plaintiff must plead that the defendant used 'discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract.'" *Eur. Motorcars of Littleton, Inc. v. Mercedes-Benz USA, LLC*, No. 17-CV-00051, 2017 WL 2629133, at *11 (D. Colo. June 19, 2017) (quoting *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1363 (Colo. App. 1994)).

Claimant contends that Ditech mishandled her loss mitigation application by "giving [her] conflicting requirement information, lying, withholding information regarding loan qualification, stalling, requiring new and additional items in order to move applications forward, and refusing to allow support programs they had available to people struggling with similar hardships." Response at 2.

The Colorado Court of Appeals has previously ruled on a similar issue in *Miller v. Bank of New York Mellon*. There, the plaintiffs agreed to a loan modification but asserted a claim for breach of the implied covenant of good faith and fair dealing, alleging that they accepted the terms of the modified loan under duress because of the threat of foreclosure. *Miller*, 379 P.3d at 345. Plaintiffs

15

alleged they had a reasonable expectation that the banks would not engage in this so-called "dual tracking" and would modify their loan. *Id.* Looking to the terms of the mortgage, the court determined that there was no reasonable expectation that the loan would be modified because none of the terms addressed modification and that, if anything, plaintiffs were trying to impermissibly inject new terms into the documents. *Id.* at 349.

There are several terms in the Deed of Trust that grant Ditech discretion. For example, if Claimant did not maintain property insurance, "Lender may obtain insurance coverage, at Lender's option and Borrower's expense," Deed of Trust § 5; if Claimant abandons the Property, "Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, *id.* § 9; and if Claimant does not cure a default by the specified date, "Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law," *id.* § 22. There is no language in the Deed of Trust granting Ditech discretion on whether to grant a loan modification. As with the loan in *Miller*, the Mortgage specifically gives Ditech the right to foreclose on the Property in the event of default but does not require Ditech to either consider or agree to a modification. *Miller*, 379 P.3d at 349; *Van Romburgh v. Nationstar Mortg. LLC*, No. 19-CV-01962-DDD, 2021 WL 2551297, at *5 (D. Colo. Apr. 22, 2021), *report and recommendation adopted*, No. 19-CV-01962-DDD, 2023 WL 3559584 (D. Colo. Mar. 31, 2023) (granting summary judgment against plaintiff on claim for breach of implied covenant of good faith and fair dealing because servicer was not obligated to accommodate requests to avoid foreclosure and it was entitled to proceed with foreclosure upon plaintiff's failure to cure the default under the loan).

As with the plaintiffs in *Miller*, Claimant had no reasonable expectation that her loan would be modified. Ditech only indicated that it would review her application for a modification. The letters reflect that Ditech considered her application and even delayed the foreclosure once to allow time for Claimant to submit a completed application.

Therefore, the Court finds that Claimant cannot maintain a claim for breach of the implied covenant of good faith and fair dealing.

### Real Estate Settlement Procedures Act

The Claim also implicates the Real Estate Settlement Procedures Act. With its implementing regulations, RESPA is a "consumer protection statute" whose purpose is, in part, to help consumers understand the home purchase and settlement process. *Naimoli v. Ocwen Loan Servicing, LLC*, 22 F.4th 376, 381 (2d Cir. 2022); *see* 12 U.S.C. § 2601 (outlining purposes of RESPA).

RESPA's implementing regulation, known as "Regulation X," is codified at 12 C.F.R. pt. 1024. Under Regulation X, a loan servicer, such as Ditech, is not required to provide a borrower with any particular loss mitigation option, but upon receiving a loss mitigation application, a servicer must follow certain procedures. *See* 12 C.F.R. § 1024.41. Failure to follow the prescribed procedures gives rise to a borrower's private right of action against the servicer. *See id*. § 1024.41(a); 12 U.S.C. § 2605(f).

Specifically, RESPA provides that if a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, it must review the application to determine if it is "complete." 12 C.F.R. § 1024.41(b)(2)(i)(A). Within 5 days of receipt, the servicer must acknowledge receipt of the application in writing to the borrower and indicate therein whether it is complete or incomplete. *Id.* § 1024.41(b)(2)(i)(B).

If the application is complete and the servicer receives it more than 37 days before a foreclosure sale, RESPA requires a loan servicer to evaluate the borrower for all available loss mitigation options and to notify the borrower of its determination as to which options it will offer to the borrower, if any. *Id.* § 1024.41(c)(1).  This evaluation must occur within 30 days of a servicer's receipt of the complete application. *See id.*

If the application is incomplete, the servicer must inform the borrower what other documents must be submitted to complete the application and the deadline to submit those documents. *Id.* § 1024.41(b)(2)(i)(B).  If a borrower fails to provide requested information after a "significant period of time under the circumstances," the servicer may evaluate the incomplete application and offer a loss mitigation option. *Id.* § 1024.41(c)(2)(ii). However, if a servicer elects to do so, it is subject to the requirements of section 1024.41(c) for purposes of its evaluation of the incomplete application. *Id.*

If the servicer evaluates the application and denies it for any available trial or permanent loan modification option, the servicer is required to provide written notice specifying the reason for such denial. 12 C.F.R. § 1024.41(d).

Claimant contends that she submitted a loss mitigation application on March 29, 2017—fewer than 45 days before the scheduled foreclosure on May 11, 2017—and includes a list of documents uploaded to her Ditech account on that date. Timeline at 1; Response, Ex. D. In a letter dated March 29, 2017, Ditech notified Claimant that it received her application. Response, Ex. E at 1. Ditech indicated that her application was incomplete but stated it would review her request within 30 days if she provided certain additional information by April 28, 2017. *Id.* at 2. Such information included her two most recent bank statements and a signed copy of Form 4506-T or Form 4506T-EZ. *Id.* at 2-3. The March 29, 2017 letter, having been sent within the 5-day window,

notifying Claimant of the status of her application, and stating what documents were missing and the deadline by which to provide them, does not establish a RESPA violation. *See* 12 C.F.R. § 1024.41(b)(2)(i).

Claimant does not state that she supplied any of the documents requested in the March 29, 2017 letter. However, in her timeline, Claimant writes "Docs received" on April 5, 2017. Timeline at 1. Even if this notation is meant to indicate that Ditech received all of the documents that were required to complete the application, thus rendering the loss mitigation application complete, April 5, 2017 was fewer than 37 days from the foreclosure date of May 11, 2017. Therefore, RESPA did not require Ditech to evaluate loss mitigation options that may have been available to Claimant. 12 C.F.R. § 1024.41(c)(1).

Claimant says that she submitted a new loss mitigation application on June 2, 2017. Timeline at 1. Under RESPA, Ditech was not required to acknowledge receipt of this new application or indicate what documents, if any, were needed to complete the application because June 2, 2017 was less than 45 days before the July 13, 2017 scheduled foreclosure. *See* 12 C.F.R. § 1024.41(b)(2)(i) ("If a servicer receives a loss mitigation application *45 days or more before a foreclosure sale*, a servicer shall . . .") (emphasis added).

Claimant alleges that on June 6, 2017 or June 8, 2017, Ditech had received all of her documents, Timeline at 1, ostensibly rendering her loss mitigation application complete. However, she also states that on June 7, 2017, she uploaded documents in support of her application and includes, with her Response, a letter she sent to Ditech dated June 7, 2017, with information regarding her income taxes. Timeline at 1; Response, Ex. I. This clearly indicates that the application submitted on June 2, 2017 was not complete and all documents were not received on June 6, 2017 as denoted on the Timeline. Timeline at 1. If the Court takes as true Claimant's

other representation that all documents were received on June 8, 2017, Ditech was not required to review it under section 1024.41(c) because that was less than 37 days from the foreclosure.

On June 27, 2017, Ditech notified Claimant that she was ineligible for a modification because the foreclosure was scheduled within 15 days. Response, Ex. J. Despite that letter and that Ditech was not required to review Claimant's application under RESPA, on July 6, 2017, Ditech sent Claimant a letter confirming that it had received a completed application and would evaluating the account for loss mitigation options. Response, Ex. K. Claimant provides only the first page of the letter, which stated the process takes approximately 30 days and explained the range of responses Claimant could expect to receive. *Id.*

On July 7, 2017, Ditech informed Claimant that it completed its review of her application for two different loan modification options. Response, Ex. L. Ditech's letter stated that Claimant remained ineligible for loss mitigation and provided explanations why Claimant did not qualify for a modification under either the "Fannie Mae Capitalize and Extend (Term) Modification" or the "Fannie Mae Flex Modification." *Id.* at 1.  Claimant contends that all the proffered reasons are erroneous.  Response at 2.

Section 1024.41(d) requires the servicer to state the specific reason or reasons for its decision to deny an application. 12 C.F.R. § 1024.41(d). However, "[f]ew courts have considered the scope of 12 C.F.R. § 1024.41(d) and what specifically must be provided to a borrower whose application for a loan modification is denied." *Nash v. PNC Bank, N.A.*, 2017 WL 1424317, at *3 (D. Md. 2017).  Relying on the language of the regulation and the interpretations released by the Consumer Financial Protection Bureau,[26] courts have found that a lender's vague statement

---

[26] "Although, the CFPB's commentary is not binding authority, courts have found its official interpretations to be 'highly persuasive' when they fill 'a gap in the text of Section 1024.41 and squarely address[ ] the factual situation

denying a modification based on rules or guidelines is not sufficiently specific under section 1024.41(d). *Id.*; *see also Chau v. Select Portfolio Servicing, Inc.*, No. CV 19-12473, 2020 WL 5810439, at *3 (D. Mass. Sept. 30, 2020).

Ditech's July 7, 2017 letter did not provide a vague reason denying Claimant's application but specific reasons consistent with the requirements set forth in the language of the regulation and its interpretation.  Response, Ex. L.  The official interpretation of 12 C.F.R. § 1024.41(d) states:

> If a trial or permanent loan modification option is denied because of a requirement of an owner or assignee of a mortgage loan, the specific reasons in the notice provided to the borrower must identify the owner or assignee of the mortgage loan and the requirement that is the basis of the denial. A statement that the denial of a loan modification option is based on an investor requirement, without additional information specifically identifying the relevant investor or guarantor and the specific applicable requirement, is insufficient.

12 C.F.R. Pt. 1024, Supp. I, § 41(d), cmt. 1.  Ditech states that Fannie Mae is the owner of Claimant's loan and that based on Fannie Mae's requirements, Claimant remained ineligible for a modification.  Response, Ex. L.

Specifically, the letter states that Claimant's loan was ineligible for the Fannie Mae trial workout plan because "the hardship is not temporary and has not been resolved" and that it was ineligible for the Fannie Mae flex modification because "the property is in a non-judicial foreclosure state and the foreclosure sale date is scheduled within 30 days."  Response, Ex. L.  This is sufficient to satisfy section 1024.41(d).  *See Ramirez v. Wells Fargo Bank, N.A.*, No. 19-CV-05074, 2021 WL 9564023 (E.D.N.Y. Mar. 24, 2021) ("In short, the denial letter demonstrates that, in response to Plaintiff's loss mitigation application, Wells Fargo reviewed her application and subsequently sent her a written notice stating the specific basis for its decision to deny the

---

described in the Complaint." *Nash*, 2017 WL 1424317, at *4 (quoting *He v. Ocwen Loan Servicing, LLC*, No. 15-CV-4575(JS), 2016 WL 3892405, at *2 (E.D.N.Y. July 14, 2016)).

application and that she was permitted to appeal said decision. Nothing further is required by the regulation."). Ditech's denial letter complied with section 1024.41(d) and cannot establish a claim for violating RESPA.

Claimant further complains that the Consumer Claims Trustee's argument that her three prior modifications rendered her ineligible for a fourth modification was not among the reasons that Ditech gave in the July 7, 2017 letter for why she was ineligible for a modification. Response at 2. The reason proffered by the Consumer Claims Trustee may have been a possible ground for denying the application, but one that Ditech may have not considered at the time. There is no indication that section 1024.41(d) requires that the servicer state every possible reason why a borrower might not be eligible for a modification. *Jones v. Wells Fargo Bank, N.A.*, No. CV ELH-18-8, 2018 WL 4382916, at *13 (D. Md. Sept. 12, 2018) ("A servicer is not required to determine or disclose whether a borrower would have been denied on the basis of additional criteria if such criteria were not actually considered." (quoting CFPB Official Staff Commentary on Regulation X, F.R.R.S. 6-1444.94, 2014 WL 2195779, at *10 (June 1, 2018))).

It is not clear to the Court why the Consumer Claims Trustee relies on a reason other than the ones stated in the denial letter, nor does the Consumer Claims Trustee provide an explanation. But, as one court explained it, "[s]ection 1024.41(d) does not require courts to determine the wisdom of a lender's decision to deny a loan modification" but rather tasks courts only with "determin[ing] whether the reasons provided for the denial were reasonably specific." *Brosnick v. Wells Fargo Bank, N.A.,* No. 18-60645-CIV, 2018 WL 6807340, at *12 (S.D. Fla. Sept. 25, 2018). The explanations provided in the July 7, 2017 letter were reasonably specific, even if the reasons did not include every conceivable reason.

Claimant also argues that Ditech should not have requested additional documents from her or continued to review her application if Ditech knew at the outset that she was not eligible. Response at 2. There is nothing to suggest that Ditech knew Claimant was ineligible at the outset, as Ditech told Claimant that she remained ineligible only after it reviewed her application and Ditech could not have violated RESPA by requesting additional documents or reviewing her application — that is exactly what section § 1024.41(c) contemplates. Claimant's application was incomplete, and a servicer may only evaluate an incomplete application after it "has exercised reasonable diligence in obtaining documents and information to complete a loss mitigation application." 12 C.F.R. § 1024.41(c)(2)(ii).  Ditech appears to have been making every effort to obtain a complete application so that it could review Claimant's June 2, 2017 application even though not required to under RESPA since it was not complete more than 37 days before the July 13, 2017 foreclosure.  It was not needlessly requesting additional documentation as Claimant suggests.

Claimant has not shown that Ditech's actions throughout the loss mitigation process were inconsistent with the requirements of RESPA and Regulation X. Therefore, to the extent the Claim is based on alleged RESPA violation, it does not state a plausible claim for relief.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court sustains the Objection and disallows the Claim.

IT IS SO ORDERED.

Dated: July 26, 2024
       New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge