**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

In re:

Ditech Holding Corporation, *et al.*,

Debtors.[1]

------------------------------------------------------------ x

Case No. 19-10412 (JLG)

Chapter 11

(Jointly Administered)

**MEMORANDUM DECISION AND ORDER DENYING MICHAEL JAMES BOURFF'S MOTION TO ENFORCE THE PLAN INJUNCTIONS AND CONFIRMATION ORDER AGAINST SHEILA ANN GIBSON, JORDAN A. COLE, COURTNEY M. COLE AND HOLD THEM IN CONTEMPT AND IMPOSE SANCTIONS**

A P P E A R A N C E S :

Michael James Bourff
*Appearing Pro Se*[2]

FIDELITY NATIONAL LAW GROUP
*Attorneys for Sheila Ann Gibson,
Jordan A. Cole, and Courtney M. Cole*
350 Fifth Avenue, Suite 3000
New York, New York 10118
By: Lara A. Chassin

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1326 (the "Third Amended Plan" or "Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412.

Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate") remains open and, as of February 22, 2022, all motions, notices, and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number are 0486. The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Boulevard, Suite 300, League City, Texas 77573.

[2] Bourff lists his address as "178 Broadway, New York, NY 10001 New York, New York 10153."

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction[3]

On February 11, 2019 (the "Petition Date"), Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) ("Ditech Holding") and certain of its affiliates (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As relevant, the Third Amended Plan provided for the Wind Down Estates, Third Amended Plan § 1.186, and permanently enjoined the commencement of actions against the Debtors and any successors of the Debtors, including the Wind Down Estates, *id.* § 10.5 (the "Plan Injunctions").

Michael James Bourff ("Bourff") and Tabitha Baker Cote ("Cote") formerly held title as joint tenants to property known as 7097 Riverside Drive, Sandy Springs, Georgia 30328 (the "Property"). While they owned the Property, they pledged it as collateral for loans they received from Countrywide Home Loans, Inc. ("Countrywide") and National City Bank. Prior to the Petition Date, Cote defaulted under the Countrywide Loan, and Countrywide, as the senior secured creditor, conducted a non-judicial foreclosure of the Property. Najarian Capital, LLC ("Najarian") purchased the Property at the foreclosure sale.

After the Petition Date, Najarian conveyed the Property to Shelia Ann Gibson, Jordan A. Cole, and Courtney M. Cole (collectively, the "Georgia Plaintiffs") pursuant to a Limited Warranty Deed. Thereafter, the Georgia Plaintiffs sued Bourff, Cote, Greystone Capital, L.P. and Path Home

---

[3] Capitalized terms used but not otherwise defined in this section shall have the meaning ascribed to such term below or in the Third Amended Plan and the Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, ECF No. 1404 (the "Confirmation Order").

2

Georgia (collectively, the "Georgia Defendants") in the Georgia Superior Court, Fulton County (the "Superior Court") to quiet title to the Property (the "Quiet Title Action"). The Georgia Plaintiffs hold default judgments against the Georgia Defendants in that action.

Bourff asserts that as of the Petition Date, the Debtor held title to the Property, and under the Third Amended Plan, transferred the Property to the Wind Down Estates. He says that he holds title to the Property as a "successor in interest" to the Wind Down Estates. Bourff argues that by acquiring the Property and commencing the Quiet Title Action, the Georgia Plaintiffs violated the automatic stay under section 362 of the Bankruptcy Code and violated the Plan Injunctions.

The matter before the Court is Bourff's motion pursuant to sections 105(d), 524 and 1141 of the Bankruptcy Code, rules 1015(c), 3020(d), and 9007 of the Federal Rules of Bankruptcy Procedure, and section 10.5 of the Third Amended Plan, for an order (i) enforcing the automatic stay and the Plan Injunctions, and (ii) holding the Georgia Plaintiffs in contempt and imposing monetary sanctions for their alleged violations of the Plan Injunctions and Orders of this Court (the "Motion").[4]

---

[4] *Motion of Michael James Bourff, Successor in Interest to Wind Down Estates, to Enforce the Plan Injunctions and Confirmation Order Against Sheila Ann Gibson, Jordan A. Cole, Courtney M. Cole and Hold Them in Contempt and Impose Sanctions*, ECF No. 5134 (the "Motion") at 4–27 (PDF pag.). Bourff filed a declaration in support of the Motion. *Declaration of Michael James Bourff in Support If* [sic] *His Motion to Enforce Plan Injunctions and Confirmation Order Against Sheila Ann Gibson, Jordan A. Cole, Courtney M. Cole and Hold Them in Contempt and Impose Sanctions*, ECF No. 5134 at 29–34 (PDF pag.) (the "Bourff Declaration" or "Bourff Decl.").

3

Bourff is acting pro se. Through counsel, the Georgia Plaintiffs filed an objection to the Motion (the "Objection").[5] Bourff filed a reply in response to the Objection and in support of the Motion (the "Reply").[6]

The Court heard arguments on the Motion. For the reasons set forth herein, the Court denies the Motion.

## **Jurisdiction**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## **Background**

On April 28, 2005, Tabitha Cote acquired the Property by warranty deed from Curtis H. Ritter and Kelli Bell Ritter.[7] To finance this purchase, Cote obtained a purchase money mortgage loan from Countrywide (the "Countrywide Loan") secured by a deed recorded on May 23, 2005 (the "Countrywide Security Deed").[8] By a quitclaim deed dated January 31, 2007, Cote conveyed

---

[5] *Objection to Motion of Michael James Bourff to Enforce the Plan Injunctions and Confirmation Order Against Sheila Ann Gibson, Jordan A. Cole, Courtney M. Cole and Hold Them in Contempt and Impose Sanctions*, ECF No. 5163 (the "Objection").

[6] *Reply of Michael James Bourff, Successor in Interest to Wind Down Estates, Motion to Enforce the Plan Injunctions and Confirmation Order Against Sheila Ann Gibson, Jordan A. Cole, Courtney M. Cole and Hold Them in Contempt and Impose Sanctions*, ECF No. 5174 (the "Reply").

[7] The warranty deed is attached as Exhibit D to the Objection at PDF page 2. It was recorded on May 23, 2005 in Deed Book 40056 at page 504 in Fulton County, Georgia. Objection ¶ 12.

[8] The Countrywide Security Deed is attached as Exhibit D to the Objection at PDF page 3. On or about December 14, 2011, by virtue of the Assignment of Security Deed recorded in Deed Book 50708, Page 631 of the Fulton County, Georgia real estate records, the Countrywide Security Deed was assigned to the Bank of New York Mellon f/k/a The Bank of New York, as Successor Trustee to JPMorgan Chase Bank, N.A., as Trustee for the Holders of Bear Stearns ALT-A Trust 2005-5, Mortgage Pass-Through Certificates, Series 2005-05. Objection ¶ 13.

4

her interest in the Property to herself and to Bourff. Objection ¶ 14.[9] That day, Bourff obtained a line of credit from National City Bank (the "NCB Note"), evidenced by a deed secured by the Property (the "NCB Security Deed").[10]

Bourff defaulted under the NCB Note. *Id.* ¶ 16. On June 17, 2010, he filed a lawsuit in the Superior Court against Green Tree Servicing LLC ("Green Tree"), alleging unlawful debt collection practices.[11] Green Tree counterclaimed based on Bourff's alleged breach of the NCB Note. On May 30, 2012, the Superior Court granted judgment in Green Tree's favor (the "Green Tree Judgment").[12] In granting that judgment, the court found:

1. On September 14, 2009, RBS Citizens, N.A. ("RBS") acquired the NCB Note, with Mortgage Electronic Registration Systems Inc. acting as RBS's nominee.[13]

2. On May 6, 2009, RBS entered into a subservicing agreement with Green Tree, thus delegating certain loan servicing responsibilities to Green Tree.

3. On July 31, 2009, RBS and Green Tree amended their subservicing agreement and assigned the NCB Note and NCB Security Deed to Green Tree for servicing purposes.

4. On November 17, 2009, RBS executed a limited power of attorney designating Green Tree as its authorized agent and attorney-in-fact.

5. The NCB Note and NCB Security Deed were in default due to Bourff's failure to make the required monthly payments.

---

[9] The deed was recorded in Deed Book 44253 at page 104 in Fulton County, Georgia. Objection ¶ 14.

[10] The NCB Security Deed is attached as Exhibit D to the Objection at PDF page 30.

[11] Complaint, *Bourff v. Green Tree Servicing, LLC*, No. 2010-cv-187098 (Ga. Super. Ct. Fulton Cnty. filed June 17, 2010). The complaint is attached as Exhibit E to the Objection at PDF page 2.

[12] Order Granting Summary Judgment and Final Judgment with Findings of Fact and Conclusions of Law, *Bourff v. Green Tree Servicing LLC*, No. 2010-CV-187098 (Ga. Super. Ct. Fulton Cnty. May 31, 2012). The Green Tree Judgment is attached as Exhibit E to the Objection at PDF page 68.

[13] There is some conflicting evidence on this point, which is immaterial to the Motion. The record shows the NCB Security Deed was later assigned to RBS, as recorded on March 10, 2011. This assignment of security deed is attached as Exhibit D to the Objection at PDF page 38.

5

Green Tree Judgment at 69–73 (PDF pag.). On January 24, 2014, Green Tree recorded a writ of *fieri facias*[14] against the Property with the Clerk of the Superior Court of Fulton County, Georgia. Objection ¶ 17; *Id.*, Ex. F.[15] The writ names Green Tree as the plaintiff in *fieri facias* and Michael Bourff as the defendant in *fieri facias*. It lists the judgment date as May 30, 2012, and indicates that Bourff owed more than $500,000, consisting of a principal amount of $342,064.38, plus interest and fees.

In 2018, Cote was in default under the Countrywide Loan,[16] and Bank of America ("BoA"), as the servicer for the Countrywide Loan, initiated foreclosure proceedings for the Property (the "2018 Foreclosure Action"). *Id.* ¶ 19. In response to BoA's prosecution of that action, on April 2, 2018, Cote commenced a voluntary bankruptcy case in the United States Bankruptcy Court for the Northern District of Florida. *Id.* ¶ 20. On April 3, 2018, prior to the Petition Date, BoA conducted a non-judicial foreclosure of the Property (the "2018 Foreclosure"). Najarian Capital, LLC emerged as the highest bidder at $461,000, as evidenced by the Foreclosure Deed.[17] Thereafter, Cote's bankruptcy case was transferred to the United States Bankruptcy Court for the Southern District of Florida (the "Florida Bankruptcy Court").[18]

---

[14] "A writ of fieri facias is a document issued by a court for the purpose of recording a lien on a judgment debtor's property." *Adams v. Carrington Mortg. Servs., LLC*, No. 1:23-CV-04886, 2024 WL 3390564, at *1 (N.D. Ga. June 24, 2024) (citing *Writs of Fieri Facias*, Magistrate Court Fulton County, Georgia, https://magistratefulton.org/197/Writs-of-Fieri-Facias-FiFa).

[15] The writ is attached as Exhibit F to the Objection.

[16] In December 2011, Countrywide assigned the Countrywide Security Deed to the Bank of New York Mellon. Objection ¶ 13.

[17] The "Deed Under Power" evidencing the foreclosure sale is attached as Exhibit D to the Objection at PDF page 21. At the sale, Bank of America acted as attorney in fact for Bank of New York Mellon. The Court will refer to the Deed Under Power as the "Foreclosure Deed."

[18] Order Transferring Case, *In re Baker*, No. 18-16061 (Bankr. S.D. Fla. Apr. 2, 2018), ECF No. 1.

6

On May 21, 2018, the Florida Bankruptcy Court dismissed Cote's case. On March 15, 2019, that court entered an order confirming that the foreclosure was valid *nunc pro tunc* from the date of the bankruptcy filing (the "Stay Relief Order").[19] Cote appealed the Stay Relief Order to the United States Court of Appeals for the Eleventh Circuit, which affirmed the Florida Bankruptcy Court's ruling.[20]

The Georgia Plaintiffs maintain that on June 4, 2018, following the foreclosure, Najarian filed a dispossessory case against Cote and Bourff in the Magistrate Court of Fulton County, Georgia. *Id.* ¶ 23. They say that on November 20, 2018, the court entered a default judgment, and on August 5, 2019, a Writ of Possession was executed in favor of Najarian, which was subsequently affirmed on appeal. *Id.* ¶ 23.

On March 16, 2020, after the Petition Date, Najarian conveyed the Property to the Georgia Plaintiffs pursuant to the Limited Warranty Deed.[21] The Georgia Plaintiffs say that on February 11, 2021, they obtained a new mortgage on the Property. *Id.* ¶ 24.

On July 20, 2022, Bourff, as "Greystone Capital, LP," filed a dispossessory case in the Magistrate Court of Fulton County, Georgia against an entity called "Path Home Georgia," and the Georgia Plaintiffs as "occupants." *See* Proceeding Against Tenant Holding Over, *Greystone Cap. L.P. v. Path Home Ga.*, No. 22ED231526 (Fulton Cnty. Magis. Ct.).[22] Bourff, using the name

---

[19] Order Granting Bank of America N.A.'s Motion to Reopen Case, for Relief from the Automatic Stay Nunc Pro Tunc to the Petition Date April 2, 2018, and for Prospective Relief, *In re Baker*, No. 18-16061 (Bankr. S.D. Fla. Mar. 15, 2019), ECF No. 24.

[20] Judgment, *In re Baker*, No. 20-10780 (11th Cir. Dec. 29, 2020).

[21] The Warranty Deed is attached as Exhibit A to the Objection.

[22] The Proceeding Against Tenant Holding Over is attached as Exhibit B to the Objection at PDF page 139.

"Michael James," claimed that he was an agent of Greystone Capital, demanded the Property from the Georgia Plaintiffs, and sought past-due rent of $12,000. *Id.*

On February 7, 2023, the Georgia Plaintiffs filed the Quiet Title Action in the Superior Court.[23] On October 19, 2023, that court issued a Default Judgment and Final Order in the Georgia Plaintiffs' favor, determining that the Georgia Plaintiffs were the fee simple owners of the Property free and clear of Bourff's claims. Default Judgment and Final Order at 5, *Gibson v. Greystone Cap. L.P.*, No. 2023-CV-375987 (Ga. Super. Ct. Fulton Cnty. Oct. 19, 2023).

**<u>The Motion</u>**

Bourff says that on the Petition Date, Ditech Holding was "the owner and servicer of a debt secured by" the Property. Bourff Decl. ¶ 2.[24] In the Motion, he maintains that on March 16, 2020, after the Plan had been confirmed, "Debtor, who held legal title as the owner and servicer of a debt secured by the Property, transferred legal title of the Property to Wind Down Estates." Motion ¶ 4.[25] On the same date, the Georgia Plaintiffs recorded the Limited Warranty Deed. Bourff contends that in so doing, the Georgia Plaintiffs "violate[d] the Automatic Stay," because at that time, "legal title to the Property had been '[vested] in the Wind Down Estates free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided pursuant to the Plan, the Confirmation Order, the CCC Settlement, and the GUC Recovery Trust Agreement.'" *Id.* ¶¶ 47–

---

[23] Verified Petition for Quiet Title Relief, Declaratory Judgment, and Slander of Title, *Gibson v. Greystone Cap. L.P.*, No. 2023-CV-375987 (Ga. Super. Ct. Fulton Cnty. Feb. 7, 2023). The petition is attached as Exhibit B to the Objection at PDF page 2.

[24] Prior to the Petition Date, through mergers and name changes, Green Tree became Ditech Financial LLC, one of the Debtors herein. *See In re Ditech Holding Corp.*, No. 19-10412, 2024 WL 3243063, at *9 (Bankr. S.D.N.Y. June 28, 2024).

[25] The Default Judgment and Final Order is attached as Exhibit C to the Objection at PDF page 2.

8

48. Bourff also argues that the Quiet Title Action violates the automatic stay and violates the Plan Injunctions. *Id.* ¶¶ 10, 57–58.

Bourff contends that he has standing to enforce the Plan Injunctions because he is a "successor in interest" to the Wind Down Estates. *Id.* ¶ 13. As support, he references communication with the Wind Down Estates' counsel where "it was agreed upon the security deed and judgment lien assets were abandoned." *Id.* ¶ 23.

Bourff also alludes to the Lien Clarification Order entered on September 7, 2021. *Id.* ¶ 24.[26] He argues that the order "released the security deed and judgment lien secured by the Property," *id.* ¶ 24, and in turn, per Georgia law, "legal title to the Property was automatically, without any further action, conveyed to [Bourff], the owner of the Property." *Id.* ¶ 25 (citing Ga. Code § 44-14-67(a)).[27] Thus, his argument is ostensibly that when he became the "owner" of the Property, he also became the Wind Down Estates' "successor in interest" under the Plan.

The Motion seeks several forms of relief, including an order enforcing the Plan Injunctions by requiring the Georgia Plaintiffs to dismiss the Quiet Title Action with prejudice. *Id.* ¶ 15. It also requests monetary sanctions if the Georgia Plaintiffs do not do so within 21 days. *Id.* ¶ 16.

---

[26] *Order Granting Motion of Plan Administrator for Entry of Order in Aid of Execution of Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors (I) Releasing Wind Down Estate Liens on Property Owned by Borrowers, (II) Clarifying That Third Parties Are Permitted to Commence and Continue Non-monetary Quiet Title Actions, (III) Finding Wind Down Estates and Plan Administrator Need Take No Further Action to Respond to Title/Lien Inquiries, and (IV) Granting Related Relief*, ECF No. 3673 ("Lien Clarification Order").

[27] That section provides:

> In all cases where property is conveyed to secure a debt, the surrender and cancellation of the deed, in the same manner as mortgages are canceled, on payment of the debt to any person legally authorized to receive the same, shall operate to reconvey the title of the property to the grantor or the grantor's heirs, executors, administrators, or assigns.

Ga. Code § 44-14-67(a).

9

**The Objection**

First, the Georgia Plaintiffs contend that Bourff lacks standing to obtain relief in the Chapter 11 Cases. Objection ¶¶ 28–32. They argue that Bourff is not a party in interest under section 1109(b) of the Bankruptcy Code because he is neither a creditor of the Debtor nor able to assert an equitable claim against the estate. *Id.* ¶¶ 31–32. They maintain that any interest that Bourff may have believed he held in the Property was extinguished as a result of the 2018 Foreclosure. *Id.* ¶ 33 (citing *Roylston v. Bank of Am., N.A.*, 660 S.E.2d 412, 420 (Ga. Ct. App. 2008)).

Second, the Georgia Plaintiffs argue that even if Bourff has standing to be heard in these Chapter 11 Cases, he cannot obtain any relief relating to the Property, because it is not, and never has been, property of the Debtors' estate. *Id.* ¶¶ 35–36. They maintain that contrary to Bourff's contentions, on the Petition Date, Najarian, not the Debtor, owned the Property. *Id.* ¶¶ 34, 36.

Third, the Georgia Plaintiffs argue that they properly filed the Georgia Action in the Superior Court. *Id.* ¶ 35. Under Georgia's constitution, Superior Courts have exclusive jurisdiction over cases respecting title to land. *Id.* ¶ 35 (citing Ga. Const. § 4, Para. I).

Fourth, the Georgia Plaintiffs assert that Bourff has not presented grounds for sanctions against them or their counsel. *Id.* ¶¶ 37–44. The Georgia Plaintiffs argue that they did not violate the Confirmation Order or Plan Injunctions because the Quiet Title Action did not affect the Debtor or its affiliates. *Id.* ¶¶ 41–42.

Finally, the Georgia Plaintiffs assert that the Quiet Title Action resulted in no monetary damages against the Debtor or its affiliates, and it only resolved the Property's ownership in favor of the Georgia Plaintiffs. *Id.* ¶ 44. They note that the Final Judgment in the Quiet Title Action

10

declared them as the fee simple owners of the Property and that Bourff and other defendants do not have any ownership interest in the Property. *Id.* ¶ 44.

**The Reply and Letter Motion**

The Reply raises several new arguments and repeats old ones.[28] Bourff argues that the 2018 Foreclosure and issuance of the Foreclosure Deed violated the automatic stay. Reply at 2. To support that claim, he presents two affidavits by an attorney filed in the deed book in Fulton County, Georgia (the "Attorney Affidavits"). *Id.* He says that the first affidavit made it clear to all interested parties that the Foreclosure Deed was void on the Petition Date because BoA conducted the foreclosure sale in violation of the automatic stay. *Id.* at 2 (citing Affidavit, Reply, Ex. B). He says that the second affidavit stated that the 2018 Foreclosure had been "rescinded." *Id.* (citing Affidavit, Reply, Ex. C). Bourff says that these recorded affidavits served as notice of the facts recited in those affidavits and affected the title to the Property. *Id.* at 2 (citing Ga. Code § 44-2-2(b)).[29]

Bourff also contends that the Stay Relief Order and the underlying motion were not served on him or the Debtors. *Id.* at 3. He quotes from a local bankruptcy rule of the Florida Bankruptcy Court regarding who must be served on a motion for relief from the automatic stay, complaining that he was not served as required by that rule. Reply at 3 (citing Bankr. S.D. Fla. Local Rule 4001-1). He appears to argue that the Georgia Plaintiffs should not be allowed to use the Stay Relief

---

[28] A party waives arguments by raising them for the first time in a reply brief. *In re Avaya Inc.*, 573 B.R. 93, 103 (Bankr. S.D.N.Y. 2017) (citing *ABN Amro Verzekeringen BV v. Geologistics Ams., Inc.*, 485 F.3d 85, 97 n.12 (2d Cir. 2007); *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 n.5 (2d Cir. 2006); *Patterson v. Balsamico*, 440 F.3d 104, 113 n.5 (2d Cir. 2006)). The Court will nevertheless consider them below.

[29] Bourff apparently means to cite Ga. Code § 44-2-20, which governs "Recorded Affidavits Relating to Land as Notice of Facts Cited Therein." Ga. Code § 44-2-20. Ga. Code § 44-2-2 governs a different topic: "Duty of Clerk to Record Certain Transaction Affecting Real Estate and Personal Property; Priority of Recorded Instruments; Effect of Recording on Rights Between Parties to Instruments."

11

Order "offensively" against him in a way that violates circuit law on the use of nonmutual offensive issue preclusion. *Id.* at 3–4 (citing *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005)).

The Reply also asserts that the Stay Relief Order violates both his and Ditech's due process rights. *Id.* at 4–5. He claims this violation stems from the fact that they were not served with "any pleadings" on the Stay Relief Order and consequently defaulted. *Id.* at 5 (citing *Mullane v. Cent. Hanover Bank & Tr. Corp.*, 339 U.S. 306 (1950)).

Finally, in a Letter,[30] Bourff asserts that he has a right to discovery in this so-called "contested matter." Letter at 1. He asks for "45 days to allow for discovery and order the parties (and counsel if represented) to appear in person for an evidentiary hearing." *Id.* He seeks to take depositions of the Georgia Plaintiffs. *Id.*

## Discussion

Bourff contends that the Georgia Plaintiffs violated the automatic stay and Plan Injunctions when they recorded the Limited Warranty Deed for the Property and commenced the Quiet Title Action. He asks the Court to order the Georgia Plaintiffs to dismiss the Georgia Action with prejudice. He is not entitled to that relief.

Section 1109(b) of the Bankruptcy Code grants "parties in interest" the right to participate in these Chapter 11 Cases. Specifically, it provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). These examples of parties in interest are not

---

[30] *Michael James Bourff's Request for Adjournment to Conduct Limited Discovery and Reset Hearing Date for In-Person Evidentiary Hearing*, ECF No. 5175 (the "Letter").

12

exhaustive, *In re C.P. Hall Co.*, 750 F.3d 659, 661 (7th Cir. 2014), but are instead "merely illustrative," *In re FRG, Inc.*, 107 B.R. 461, 467 (Bankr. S.D.N.Y. 1989). *See* 11 U.S.C. § 102(3) (rules of construction stating the words "'includes' and 'including' are not limiting").

The Bankruptcy Code does not define the term "party in interest." *Krys v. Off. Comm. of Unsecured Creditors of Refco, Inc. (In re Refco Inc.)*, 505 F.3d 109, 117 (2d Cir. 2007) (citing *Roslyn Savings Bank v. Comcoach Corp. (In re Comcoach Corp.)*, 698 F.2d 571, 573 (2d Cir. 1983)). "The general theory behind [section 1109(b)] is that anyone holding a direct financial stake in the outcome of the case should have an opportunity . . . to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest." *In re Teligent, Inc.*, 640 F.3d 53, 60 (2d Cir. 2011) (quoting Alan Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 1109.01 (16th ed. 2011)). What ties together each of the entities listed in section 1109(b) is "some type of *direct relationship* with the debtor, his property or the process of administering his bankruptcy estate." *In re Residential Cap., LLC*, No. 12-12020, 2013 WL 6698365, at *4 (Bankr. S.D.N.Y. Dec. 19, 2013) (quoting *In re Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988)).

Bourff is not a party in interest because he lacks any relationship with the debtor, its property, or the administration of these proceedings. The Property has no connection to the Chapter 11 Cases because the Debtors had no interest in the Property on the Petition Date. "The filing of a petition creates a bankruptcy estate consisting of all the debtor's assets and rights." *Mission Prod. Holdings v. Tempnology, LLC*, 587 U.S. 370, 373 (2019) (citing 11 U.S.C. § 541). However, it takes into bankruptcy only those interests that it had before the creation of the estate; "[a] debtor's property does not shrink by happenstance of bankruptcy, but it does not expand, either." *Id.* at 381. What those interests are depends on state law. *Butner v. United States*, 440 U.S. 48, 55 (1979) (state law creates and defines property interests "unless some federal interest requires a different

13

result"); *see also In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1101 (2d Cir. 1990) ("Although federal bankruptcy law determines the outer boundary of what may constitute property of the estate, state law determines the 'nature of a debtor's interest' in a given item. . . . Therefore, whereas federal law instructs us that [something] may constitute property of [the] estate, state law determines whether [the debtor]'s interest in the [thing] is sufficient to confer on the estate a property right." (quoting *In re Howard's Appliance Corp.*, 874 F.2d 88, 93 (2d Cir. 1989))).

After Cote's default under the Countrywide Loan, Countrywide foreclosed on the Property. Najarian was the highest bidder at the foreclosure sale. As Cote's senior secured lender, Countrywide held the first priority lien on the Property. Under Georgia law, "[w]here the holder of the senior encumbrance on realty forecloses on the property, the purchaser obtains title free of all inferior liens and any junior liens attach to the surplus of the proceeds." *Hudson v. Dobson*, 580 S.E.2d 268, 271 (Ga. Ct. App. 2003) (quoting *Murray v. Chulak*, 300 S.E.2d 493, 498 (Ga. 1983)). Accordingly, the Foreclosure Deed extinguished any interest in the Property that Ditech hypothetically held prior to the Petition Date (as Green Tree's successor, in turn as RBS's loan servicer, or otherwise). On the Petition Date, Najarian, as the foreclosure buyer—not the Debtor or Bourff—owned the Property. The Debtors held no interest in the Property, and legal title to the Property did not vest in the Debtors' estates. Bourff's only claim to a relationship to these Chapter 11 Cases is one based on his argument that he acceded to Debtors' interest in the Property. But the Debtors had no such interest, and Bourff is a stranger to these Chapter 11 Cases.

Bourff attempts to defeat this conclusion by arguing, in a roundabout way, that the foreclosure sale was invalid. His argument, construed liberally, is: the foreclosure sale violated the automatic stay imposed by Cote's bankruptcy. The argument follows that since the Debtors and Bourff were not given notice of the motion for the Stay Relief Order, which retroactively

14

determined that the foreclosure sale did not violate the automatic stay, the Stay Relief Order is invalid because the Florida Bankruptcy Court was without jurisdiction to enter it.[31]

This Court lacks subject-matter jurisdiction to decide whether Bourff was entitled to notice on the motion for the Stay Relief Order. "When a bankruptcy court is presented with a post-confirmation dispute involving a reorganized debtor, as is the case here, case law requires the court to determine whether the dispute has a 'close nexus' to the bankruptcy case or 'relates back to the effectuation of the Chapter 11 proceeding.'" *In re Ener1, Inc.*, 558 B.R. 91, 95 (Bankr. S.D.N.Y. 2016) (quoting *Donaldson v. Bernstein*, 104 F.3d 547, 553 (3d Cir. 1997)). To decide whether a dispute relates closely enough to the bankruptcy case, the Court must satisfy itself of two requirements:

> First, the matter must have a "close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan or incorporated litigation trust agreement."

*In re Gen. Media, Inc.*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005) (quoting *In re Resorts Int'l, Inc.*, 372 F.3d 154 (3d Cir. 2004)) (collecting cases). "Second, the plan must provide for the retention of jurisdiction over the dispute." *Id.* at 73–74 (citing *Hosp. & Univ. Prop. Damage Claimants v. Johns Manville Corp. (In re Johns-Manville Corp.)*, 7 F.3d 32, 34 (2d Cir. 1993)).

Here, neither requirement is met. The propriety of BoA's alleged failure to serve Bourff, and what effect, if any, that failure has on the Stay Relief Order or the Eleventh Circuit's

---

[31] At oral argument, Bourff clarified that he was not arguing this point on Ditech's behalf, but only in his capacity as a "successor in interest to Ditech." He is not a "successor in interest to Ditech," and the Court will address that point below. But if Bourff were challenging the foreclosure sale on Ditech's behalf, the Court would not credit such a challenge because the right to challenge the Stay Relief Order—assuming they had one—belonged to the Debtors. *See Nisselson v. Marjerry Realty Corp. (In re Port Morris Tile & Marble LP)*, 645 B.R. 500, 512 (Bankr. S.D.N.Y. 2022) (explaining that "[t]he Trustee has 'exclusive standing' to assert causes of action belonging to the estate" (quoting *McHale v. Alvarez (In re 1031 Tax Grp., LLC)*, 397 B.R. 670, 679 (Bankr. S.D.N.Y. 2008))).

15

affirmance of that order, has no connection to this bankruptcy case. Even if Bourff was not served in compliance with the local rule of another court, that fact does nothing to render the Property property of the Debtors' estate.[32] For that reason, Bourff's arguments about his right to service cannot be raised for the first time here.

Bourff also is not the Debtors' "successor in interest," and has no right to enforce, nor is he protected by, the injunctive provisions in the Third Amended Plan. Section 10.5(d) of the Third Amended Plan extends the Plan Injunctions, as relevant here, to "any successors of the Debtors (including the Wind Down Estates), the Reorganized Debtors, Reorganized RMS, and their respective property and interests in property." Third Amended Plan § 10.5(d). These injunctions include, as relevant to Bourff's argument, the following:

> Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors . . . and other parties in interest . . . are permanently enjoined . . . solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished, discharged, or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind . . . against or affecting the Debtors, Reorganized Debtors, Reorganized RMS, GUC Recovery Trust, or the Consumer Creditor Reserve or the property of any of the Debtors, Reorganized Debtors, Reorganized RMS, GUC Recovery Trust or the Consumer Creditor Reserve.

Third Amended Plan § 10.5(b). Bourff argues that when the Georgia Plaintiffs recorded the Limited Warranty Deed and subsequently commenced the Quiet Title Action, they violated the Plan Injunctions because legal title to the Property had vested in the Wind Down Estates free and

---

[32] Nor do the publicly recorded Attorney Affidavits. They establish only that an attorney signed an affidavit stating that the foreclosure sale was rescinded, and that third parties were deemed to be on notice of those statements. They do nothing to render the Property property of the estate. In short, they are not material to this dispute.

16

clear of liens, claims or encumbrances, and he held title to the Property as the "successor in interest" to the Wind Down Estates. Motion ¶¶ 20, 24–25.

Bourff's claim to being the Debtors' "successor in interest" appears to be that the Court issued an order releasing a lien that one of the Wind Down Debtors held in the Property, and per operation of Georgia law, the release of such a lien has the effect of conveying title to him. This is wrong for several reasons. First and foremost, Bourff misunderstands the purpose and effect of that order.

The Third Amended Plan provided for the sale of the Debtors' assets under its mortgage servicing and origination business to a stalking horse buyer. Specifically, it required that the assets "be transferred to and vest in the Forward Stalking Horse Purchaser free and clear of all Liens, Claims . . . charges, or other encumbrances." Third Amended Plan § 5.6. On October 1, 2019, that sale was consummated. Notice of Consumnation at 2.[33] From that point forward, the Wind Down Estates no longer had any interest in those mortgages, because "[p]ursuant to the confirmed Plan, the Debtors' businesses were sold or transferred, and accordingly the mortgages owned or serviced by the Debtors were also sold or transferred, and the sold mortgages are now being serviced by other parties." Motion for Lien Clarification Order ¶ 1.[34]

---

[33] *Notice of Consummation of Sale Transactions Under Forward Stalking Horse Purchase Agreement and Reverse Stalking Horse Purchase Agreement*, ECF No. 1463 ("Notice of Consummation").

[34] *Motion of Plan Administrator for Entry of Order in Aid of Execution of Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors (I) Releasing Wind Down Estate Liens on Property Owned by Borrowers, (II) Clarifying That Third Parties Are Permitted to Commence and Continue Non-Monetary Quiet Title Actions, (III) Finding Wind Down Estates and Plan Administrator Need Take No Further Action to Respond to Title/Lien Inquiries, and (IV) Granting Related Relief*, ECF No. 3565 ("Motion for Lien Clarification Order").

The Wind Down Estates also no longer had any interest in mortgages that they had rejected under the Third Amended Plan. *See* Third Amended Plan art. VIII; Motion for Lien Clarification Order ¶ 13 ("Loans that the Debtors were servicing after the Petition Date were either transferred to the Buyers pursuant to the Plan or transferred to a replacement servicer due to the fact that the applicable servicing agreement(s) were rejected under the Plan.").

17

Although the Wind Down Estates no longer had an interest in these mortgages, the Plan Administrator continued to receive inquiries from successor servicers and Borrowers[35] seeking to resolve title issues impacting their property and to release the mortgage liens encumbering their property. *Id.* ¶ 2. This became a burden to the Plan Administrator. *Id.* ¶¶ 3, 13. To address that problem, the Lien Clarification Order clarified that the Wind Down Estates had abandoned any interests they might have held in the property of Borrowers. In so doing, it relieved the Plan Administrator of the administrative burden of continuing to respond to inquiries and confirmed that the Wind Down Estates had abandoned any liens or interests that they might have held because they had transferred or rejected the mortgages. Lien Clarification Order ¶ 7.

Bourff misunderstands the Lien Clarification Order. It did not release or expunge liens that may have encumbered the Property. It merely clarified that the Wind Down Estates had abandoned interests they might have held in the property of Borrowers encumbered by a mortgage,[36] and that those Borrowers are free to commence and continue title disputes, including quiet title actions, against the Wind Down Estates without violating any bankruptcy stay. *Id.* ¶ 8. However, even if Bourff were correct about the effect of the Lien Clarification Order, the result would be no different. As explained above, in Georgia, foreclosure on a senior lien has the effect of wiping out junior liens.

---

[35] The Third Amended Plan defined a "Borrower" as any individual, as of the Commencement Date, whose current or former mortgage loan or reverse mortgage was originated, serviced, sold, consolidated, or owned by any of the Debtors. Third Amended Plan § 1.23.

[36] When the Debtors' businesses ended, the mortgages that they owned or serviced did not simply disappear. Many are now held and serviced by other entities. The fact that the Wind Down Estates had no interest in the debt that secured the Property after the Lien Clarification Order does not mean that some other parties did not.

18

To put it succinctly, Bourff offers no plausible explanation how he is the Debtors' successor, and the Court cannot see any way that he could be.[37]

Bourff also cannot enforce the automatic stay. As relevant, section 362 of the Bankruptcy Code states that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). Courts in this Circuit have generally limited standing under section 362(k) to individual debtors, the bankruptcy trustee, and individual creditors. *See In re Ampal-American Isr. Corp.*, 502 B.R. 361, 370 (Bankr. S.D.N.Y. 2013). A creditor seeking relief under this section "must allege an injury in his capacity as a creditor of the estate rather than in some other capacity." *Id.* at 371 (collecting cases). Bourff has failed to do so, and he is not a creditor—he has not demonstrated that he has any prepetition claim against the Debtors, 11 U.S.C. § 101(10)(a), or otherwise shown that he is a statutory "creditor," *see* 11 U.S.C. § 101(10)(b)–(c). Since Bourff is not a creditor of the Debtors' estate, he cannot enforce the automatic stay in these Chapter 11 Cases. *See In re Residential Cap. LLC*, 2013 WL 6698365, at *5.

Bourff is a defendant in a state-court action to quiet title to non-estate property. He has not demonstrated that he has any direct financial stake in these Chapter 11 Cases, or even an indirect one. Without a direct financial stake, Bourff is not a party in interest and has no right to be heard.[38]

---

[37] In any event, the Debtor has failed to account for how the Quiet Title Action involves "Claims, Interests, and Causes of Action that will be or are extinguished, discharged, or released pursuant to the Plan," Third Amended Plan § 10.5(b). Bourff explains that the "crux" of the Quiet Title Action "is that on March 16, 2020 [the Georgia Plaintiffs] received legal title to the Property by way of a Limited Warranty Deed and are seeking to have their interests declared superior and any other competing interest of defendants quieted and canceled." Motion ¶ 3. A claim to quiet title to the Property is a post-confirmation claim; the Third Amended Plan did not "extinguish[], discharge[], or release[]" it. Third Amended Plan § 10.5(b).

[38] Bourff is not entitled to discovery in this matter. Even if he could initiate a contested matter, discovery is permitted in contested matters only where the Court does not "direct[] otherwise." Fed. R. Bankr. P. 9014(c). Bourff has failed to give any plausible explanation of what relevant information he might learn by taking "the depositions of

19

**Conclusion**

For the reasons stated above, the Court denies the Motion.

IT IS SO ORDERED.

Dated: August 20, 2024
      New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge

---

each of the Respondents," Letter at 1, who had no involvement in any of the pre-foreclosure conduct that Bourff complains of. Thus, even if he otherwise had some right to discovery, the Court would "direct otherwise."