**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**NOT FOR PUBLICATION**

---------------------------------------------------------- x

In re:                                              :

                                                    :       Case No. 19-10412 (JLG)

Ditech Holding Corporation, *et al.*,               :       Chapter 11

                                                    :
                                                    :       (Jointly Administered)
                                    Debtors.[1]     :

---------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS TRUSTEE'S TWENTY-FIFTH OMNIBUS OBJECTION WITH RESPECT TO THE PROOF OF CLAIM FILED BY WILLIE SANDERS

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:     Richard Levin

SINGLETON LAW FIRM
*Attorneys for Claimant, Willie Sanders*
109 East Milam
Wharton, Texas 11728
By:     Howard Singleton

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[2]

On March 28, 2019, Willie Sanders (the "Claimant") filed Proof of Claim No. 20287 (the "Claim"), through counsel, as an unsecured claim in the amount of $150,000 against Ditech Holding Corp. (f/k/a Walter Investment Management Corp.) ("Ditech"). On June 12, 2020, the Consumer Claims Trustee filed her Twenty-Fifth Omnibus Objection (the "Objection")[3] seeking to disallow proofs of claim, including the Claim, that do not sufficiently state a legal basis to establish liability on the part of Ditech. On July 10, 2020, Claimant filed a response to the Objection (the "Response").[4] On August 1, 2024, the Consumer Claims Trustee replied to the Response (the "Reply").[5] On August 15, 2024, Claimant filed a surreply (the "Surreply").[6]

Pursuant to the Claims Procedures Order,[7] Claimant's filing the Response automatically adjourned the Objection to enable the Court to conduct a Sufficiency Hearing on the Claim. At the Sufficiency Hearing, the Court employs the legal standard of review applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Claims Procedures Order ¶ 3(iv)(a).

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[3] *Consumer Claims Trustee's Twenty-Fifth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims)*, ECF No. 2544.

[4] *Claimant Willie Sander's Response to Consumer Claims Trustee's Twenty-Fifth Omnibus Objection to Proofs of Claim*, ECF No. 2711.

[5] *Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee's Seventeenth Omnibus Objection with Respect to the Claim of Willie Sanders (20287)*, ECF No. 5170.

[6] *Sur-Reply to Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee's Seventeenth Omnibus Objection with Respect to the Claim of Willie Sanders (20287)*, ECF No. 5188 (the "Sur-Reply").

[7] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632 (the "Claims Procedures Order").

Consistent with that standard, the Court accepts Claimant's well-pleaded factual allegations as true and draws all reasonable inferences in Claimant's favor when considering the sufficiency of the Claim.

The Consumer Claims Trustee and Claimant appeared through counsel at the Sufficiency Hearing on August 29, 2024, and the Court heard arguments from the parties. The Court has reviewed the Claim, Objection, Response, and Reply, and Surreply, including all documents submitted in support thereof, and has considered the arguments made by the parties in support of their positions.

As explained below, the Claim fails to state any plausible claim for relief against Ditech and therefore, the Court sustains the Objection and disallows the Claim.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

### The Loan

On or around September 4, 1998, Claimant and his wife, Juanita C. Sanders (the "Sanders"), executed a mechanic's lien contract with power of sale (the "Mechanic's Lien")[8] in

---

[8] The Mechanic's Lien is annexed as Exhibit A to the Reply.

The Court takes judicial notice of the Mechanic's Lien and the other documents annexed to the Reply because they are matters of public record and are integral to the Claim. *Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 632 F. Supp. 3d 402, 436 (S.D.N.Y. 2022) (holding that on a Rule 12(b)(6) motion to dismiss, courts can consider "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are 'integral' to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case."

favor of Jim Walter Homes, Inc. ("Jim Walter Homes") in connection with construction of their home. The loan was in the amount of $219,204.00 and was secured by a lien on property located at 400 Lane, Wharton, Texas 77488 (the "Property"). The Mechanic's Lien describes the Property as "3 acres more or less." *See* Mechanic's Lien at 1; *see also* Mechanic's Lien at 6 (legal description of the Property is the "westmost 3.0 acres"). The lien summarizes the terms of the Retail Installment Contract whereby the Sanders agreed to make monthly payments of $608.90 for a thirty-year period. Mechanic's Lien at 1.[9]

The Mechanic's Lien was recorded on July 14, 1999. On October 25, 2016, Jim Walter Homes, LLC (f/k/a Jim Walter Homes, Inc.) filed a correction to the Mechanic's Lien to revise clerical errors.[10] It added the name of the trustee in the relevant paragraph where it was inadvertently left off and corrected the reference on the first page to indicate that the legal description is included in exhibit "D" and not exhibit "E."

On December 28, 2016, the Mechanic's Lien was assigned to U.S. Bank N.A. as trustee for Mid-State Trust VIII by Ditech Financial LLC, as servicer with delegated authority.[11] That assignment was recorded on May 15, 2017. On July 22, 2021, the lien was assigned to NRZ Passthrough Trust VII, which was recorded on October 5, 2021.[12]

---

(quoting *LeChase Constr. Servs., LLC v. Escobar Constr., Inc.*, No. 18-cv-1021, 2019 WL 2743637, at *6 & n.4 (N.D.N.Y. July 1, 2019))); *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022) (stating that in deciding Rule 12(b)(6) motions to dismiss, courts must consider the entire complaint, documents incorporated by reference, and other matters of which a court can take judicial notice); *Ocampo v. JP Morgan Chase Bank, N.A.*, 93 F. Supp. 3d 109, 114 (E.D.N.Y. 2015) (finding that the court properly considered loan documents, loan transfer documents, and filings in a related state court action on a Rule 12(b)(6) motion to dismiss because they were integral to the complaint).

[9] The Retail Installment Contract is referenced in the Mechanic's Lien, but the actual contract is not provided by either Claimant or the Consumer Claims Trustee.

[10] The correction of the Mechanic's Lien is annexed as Exhibit B to the Reply.

[11] The 2017 assignment is annexed as Exhibit C to the Reply.

[12] The 2021 assignment is annexed as Exhibit D to the Reply.

On May 11, 2022, Claimant entered into a modification agreement (the "Modification") with NewRez LLC d/b/a Shellpoint Mortgage Servicing as Power of Attorney for U.S. Bank N.A.[13]  The cover sheet recorded with the Modification includes a legal description of the Property as the westmost three acres.  *See* Reply, Ex. E at 1.

## Legal Proceedings

On July 3, 2018, a foreclosure sale was conducted wherein Ditech Financial LLC ("Ditech Financial"), who then owned the debt, was the highest bidder and purchased the Property.  On or around September 21, 2018, a substitute trustee recorded a rescission of foreclosure sale seeking to cancel, annul, void, and rescind the July 3, 2018 sale.[14]

On October 1, 2018, Claimant filed a complaint (the "Complaint")[15] against Ditech Financial and U.S. Bank, N.A., as trustee, in the district court of Wharton County, Texas (the "Texas Court").[16]  The Complaint asserted claims of fraud, misrepresentation, conversion, and trespass to try title.  Complaint ¶¶ 13-14.  It also sought a temporary restraining order to enjoin the defendants from selling the Property at foreclosure on October 2, 2018, or attempting to evict Claimant from the Property.  *Id.* ¶¶ 15-23.  The allegations in the Complaint mirror those in the Claim and assert:

> Defendants told Plaintiff it was surveying fenced land and around the house that was to be built and that the fenced area surrounding the house would be the only land securing the loan.  Plaintiff relied upon this representation.  Defendants took advantage of Plaintiff's race, limited education, limited literary skills, and disadvantaged economic status to switch the survey area description for the legal description of all the land Plaintiff owned around his home site.  Despite being told

---

[13] The Modification is annexed as Exhibit E to the Reply.

[14] The Recission of Foreclosure Sale is annexed as Exhibit G to the Reply.

[15] The Complaint is annexed as Exhibit F to the Reply.

[16] *See Sanders v. Ditech Financial, LLC and U.S. Bank, N.A., as Trustee*, No. CV-50862 (Tex. D. Ct. Wharton Cnty. filed October 1, 2018).  The docket for the action filed in the Texas Court is annexed as Exhibit H to the Reply.

of the fraud and misrepresentation, Defendants have refused to correct this area and continued in the wrongful actions to, in essence, steal Plaintiff's property.

*Id.* ¶ 13.

On October 26, 2018, the case was removed to the United States District Court for the Southern District of Texas (the "Federal Court"),[17] on the basis that diversity jurisdiction existed in the case. On February 27, 2019, the defendants moved to dismiss the Complaint or, in the alternative, for judgment on the pleadings (these motions collectively, the "Motion to Dismiss").[18] The defendants argued Claimant failed to plead his fraud claims with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Motion to Dismiss at 5-6. The motion also said that Claimant had not been dispossessed of the Property and thus could not maintain a claim for trespass to try title. *Id.* at 6.

Contemporaneously with the Motion to Dismiss, Ditech Financial filed a notice that it had filed for bankruptcy and was protected by the automatic stay against Claimant's claims. *See* Federal Docket at 2. On March 6, 2019, the Federal Court stayed the case. *Id.*

On January 8, 2020, the parties stipulated to the dismissal of the claims seeking monetary relief against Ditech Financial (the "Stipulation").[19] On January 16, 2020, based on the Stipulation, the Federal Court dismissed the action in part, but held that the claims and defenses not involving monetary damages would remain. *See id.* at 3.

---

[17] *See Sanders v. Ditech Financial LLC*, No. 18-CV-04077 (S.D. Tex. filed Oct. 26, 2018). The federal docket (the "Federal Docket") is annexed as Exhibit I to the Reply.

[18] The Motion to Dismiss is annexed as Exhibit J to the Reply. Exhibit J contains the motion brief but excludes all exhibits because they were merely reproductions of cases cited within the Motion to Dismiss.

[19] The Stipulation is annexed as Exhibit K to the Reply.

On January 22, 2021, Claimant filed both an opposition to the Motion to Dismiss and a motion for leave to amend the Complaint (the "Motion to Amend").[20]  *Id.* at 4.  In the Motion to Amend, Claimant sought "to add facts and details to further clarify and support his causes of action."  Motion to Amend at 1.  On January 27, 2021, the Federal Court denied Claimant's Motion to Amend.  Federal Docket at 4.

On March 16, 2021, the Federal Court entered an order dismissing Claimant's action against Ditech Financial and U.S. Bank, N.A. (the "Opinion on Dismissal")[21] finding that: (i) the allegations in fraud claims were not sufficiently particular to satisfy the heightened pleading requirements under the Federal Rules of Civil Procedure; (ii) Texas law does not recognize a conversion of real property as a cause of action; and (iii) because the fraud and conversion claims fail, Claimant has not undermined the validity of the foreclosure of the Property to sustain a trespass to try title claim.  Opinion on Dismissal at 2-3.  With the Opinion on Dismissal, the Court entered a final dismissal on the docket (the "Final Dismissal") providing that Claimant "takes nothing from Ditech Financial LLC, and U.S. Bank, N.A." and terminating the case.  *See* Federal Docket at 4.

**The Chapter 11 Cases**

On February 11, 2019, Ditech and certain of its affiliates, including Ditech Financial (collectively, the "Debtors"), filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases").  The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On February 22, 2019, the Court entered an order fixing April 1, 2019, as the

---

[20] The Motion to Amend is annexed as Exhibit L to the Reply.

[21] The Opinion on Dismissal is annexed as Exhibit M to the Reply.

deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[22]  The Court extended the General Bar Date for consumer borrowers to June 3, 2019.[23]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, which became effective on September 30, 2019.[24]  The Consumer Claims Trustee is appointed under the Third Amended Plan as a fiduciary responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims.  *See* Third Amended Plan, art. I, § 1.41.  The Consumer Claims Trustee has the exclusive authority to object to Consumer Creditor Claims.  *See id.* art. VII, § 7.1.

**The Claims Procedures Order**

The Claims Procedures Order authorizes the Consumer Claims Trustee to file Omnibus Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order.  *See* Claims Procedures Order ¶ 2(i)(a)-(h).  A properly filed and served response to an objection gives rise to a "Contested Claim," which is resolved at a Claim Hearing that the Consumer Claims Trustee can schedule as either a "Merits Hearing" or a "Sufficiency Hearing."  *Id.* ¶ 3(iv)(a), (b).  A Merits Hearing is an evidentiary hearing on the merits of a Contested Claim.  *Id.* ¶ 3(iv)(b).  A Sufficiency Hearing is a non-evidentiary hearing to address whether the Contested Claim states a

---

[22] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[23] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[24] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

claim for relief against the Debtors under the Rule 12(b)(6) motion to dismiss standard.  *Id.* ¶ 3(iv)(a).

## The Claim

Claimant uses the Proof of Claim, Official Form 410, to file an unsecured claim in the amount of $150,000 based on "[f]raud, misrepresentation, and damages."  Claim at 2.  Claimant does not attach any supporting documentation or provide any further information regarding the Claim.

## The Objection

The Consumer Claims Trustee seeks an order from the Court disallowing claims that lack a sufficient legal basis to establish wrongdoing or liability by Ditech that would entitle any recovery by the claimants.  Objection ¶ 4.  Specifically, the Consumer Claims Trustee states that the Claim is based on the Claimant's purchase and financing of his home in 1998 and therefore, any possible claims are barred by the applicable statutes of limitations.  Objection, Ex. A at 8.

## The Response and Surreply

Claimant alleges claims for promissory estoppel, misrepresentation, fraud, and fraudulent concealment and asserts affirmative defenses of waiver, estoppel, laches, and the unclean hands doctrine.  Response ¶¶ 5-11; Surreply ¶¶ 7-13.  Claimant generally alleges that Ditech's predecessor[25] took advantage of his limited education and disadvantaged economic status to switch the legal description of the relevant property to the three acres of land he owned despite promising that the lien would attach only to approximately one acre.  Response ¶ 4; Surreply ¶¶ 4-5.  These

---

[25] In the Response, Claimant repeatedly refers to Jim Walter Homes as "Creditor's predecessor in interest."  *See, e.g.*, Response ¶ 4.  Claimant also incorrectly identifies Ditech as "Creditors/Ditech" rather than "Debtors/Ditech."  *Id.*  The Court assumes this is a clerical error and by identifying Jim Walter Homes as "Creditor's predecessor in interest," Claimant means Ditech's predecessor in interest.  In the Surreply, Claimant amends these references and now alleges misconduct on the part of "Creditors/Ditech and/or Ditech's *successor* in interests." *See, e.g.*, Surreply ¶ 6 (emphasis added).

allegations are consistent with those in the Complaint.  *Compare* Complaint ¶ 13, *with* Response ¶ 4.  Claimant provides his own declaration (the "Declaration"),[26] which repeats the same points.

According to Claimant, on or around May 31, 1989, the Sanders purchased three acres of land near Wharton, Texas.  Response ¶ 3; Surreply ¶ 3.  The Sanders planned to build their home within an approximately one-acre plot of the land, the boundary of which was fixed by an iron pipe fence welded and installed around 1982.  Response ¶ 4; Surreply ¶ 4.

On or around September 4, 1998, the Sanders signed a Retail Installment Contract with Jim Walter Homes in connection with the construction of their home.  Response ¶ 4; Surreply ¶ 4.  Claimant alleges that a Jim Walter Homes employee—a man he believes to be named "Roy"— surveyed the fenced-off area to secure the loan and assured the Sanders that the lien would apply only to the one-acre plot.  Response ¶ 4; Surreply ¶ 4.  Claimant states that the Sanders relied on the representations from Jim Walter Homes and built their house inside the fenced-in area in 1998 with that belief.  Response ¶ 4; Surreply ¶¶ 4-5; *see also* Declaration at 1 (stating "[t]hey were nice people and we believed what they told us").

The Sanders purportedly did not learn that the legal description of the surveyed land was for the entire three acres of land, and not the fenced-off one-acre plot, until a foreclosure action was commenced in 2018.  Response ¶ 6; Surreply ¶ 8.  Claimant asserts that Jim Walter Homes took advantage of—in his words—his race, limited education and literary skills, and disadvantaged economic status to switch the description of the Property to reflect the full three acres.  Response ¶ 4; Surreply ¶ 5.  In the Declaration, he further states that "[his] wife was also not well educated and was not able to understand the pages and pages of documents Jim Water Home's [sic] people asked [them] to sign."  Declaration at 1.

---

[26] The Declaration is annexed as Exhibit 1 to the Surreply.

In opposing the Objection, Claimant asserts certain affirmative defenses. Specifically, Claimant states that "Ditech and/or Ditech's predecessor in interest's breaches, action and omissions constitute waiver of any right [it] may have to complain of any act or omission by [him]" and that it is "estopped by its own conduct and fraud from alleging that [his] claims are barred by limitations." Response ¶ 9; Surreply ¶ 11 (stating same).

He contends that he reads at a fifth-grade level and "did not discover [Ditech]'s fraudulent actions until his undersigned attorney reviewed the Ditech documents in 2019 and informed [him]." Surreply ¶ 13; *see also* Response ¶ 11. Thus, Claimant argues that the statute of limitations did not begin to run until Debtors attempted to foreclose the Property in 2018 and therefore, his Claim is not time-barred. Surreply ¶ 14.

**The Reply**

The Consumer Claims Trustee contends the Court should disallow the Claim because it fails to state a claim upon which relief can be granted under Rule 12(b)(6). She asserts that dismissal by the Federal Court and the doctrine of res judicata bar the Claim. Reply ¶¶ 36-40. The Consumer Claims Trustee also argues that Claimant fails to establish Ditech engaged in fraud or misrepresentation, *id.* ¶¶ 41-45, or how Ditech violated any contractual, statutory or common law duties, *id.* ¶¶ 51-53. She contends Claimant's promissory estoppel claim fails under the statute of frauds. *Id.* ¶¶ 46-50. Additionally, she argues that the Claim is barred by the applicable statute of limitations. *Id.* ¶¶ 54-67.

**Oral Argument**

At oral argument, the parties advanced a number of positions that they had not briefed in their written submissions. Mr. Sanders, for the first time, challenged the validity of both the Mechanic's Lien and the correction to that lien filed by Ditech in October 2016. He argued that the original Mechanic's Lien was invalid due to a missing legal description, and that the correction

lien was ineffective because it lacked Mr. Sanders's signature and was filed without his knowledge or approval.

Mr. Sanders also claimed that under Texas law, the statute of limitations could not have begun to run until Ditech attempted to foreclose on all three acres of the Property. He apparently means to suggest that the Claim was timely because the legal injury materialized only when Ditech sought to enforce its lien on the full three-acre parcel. Relatedly, because of Ditech's alleged fraudulent concealment, the statute of limitations had been tolled. He argued that because of the alleged misrepresentations about the extent to which the Property would be encumbered and because of his inability to fully understand the documents, he could not have discovered the true nature of the lien until the attempt to foreclose.

Mr. Sanders also asserted that res judicata does not bar his claims here due to the Stipulation. He argued that it allowed for his claims to be brought in this Court, effectively preserving his right to pursue the matter. Apparently in response, the Consumer Claims Trustee argued that collateral estoppel might bar the Claim instead.

### Motion to Estimate

On March 23, 2023, the Consumer Claims Trustee filed a motion to estimate claims for purposes of setting a reserve and to classify those claims as non-363(o) claims as defined in the Third Amended Plan.[27] The Consumer Claims Trustee estimated the Claim amount at $150,000. Claimant did not object or respond to the motion. The Court granted the motion setting the Claim at $150,000 and classifying it as a non-363(o) claim.[28]

---

[27] *Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4650.

[28] *Order Granting Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4733.

## LEGAL PRINCIPLES

"A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If a party in interest objects to a proof of claim, the basis for seeking disallowance must be one that is set forth in Section 502(b) of the Bankruptcy Code. *See* 11 U.S.C. § 502(b); *see also HSBC Bank USA, N.A. v. Calpine Corp.*, No. 07-cv-3088, 2010 WL 3835200, at *5 (S.D.N.Y. Sept. 15, 2010) ("All claims are allowed unless specifically proscribed by one of the nine exceptions listed in § 502(b)." (citing *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007))).

For example, under section 502(b)(1), a court will disallow a claim if it "is unenforceable against the debtor and property of the debtor, under . . . applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). A proof of claim is "prima facie evidence of the validity and amount of a claim," Fed. R. Bankr. P. 3001(f), which can be overcome if the party objecting under section 502(b)(1) "come[s] forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010) (quoting *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000)).

However, in a Sufficiency Hearing, the Court applies the legal standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See* Claims Procedures Order ¶ 3(iv)(a). The Rule 12(b)(6) standard requires courts to accept all factual allegations as true and to draw all reasonable inferences in favor of the non-moving party. *Green v. Dep't of Educ. of New York*, 16 F.4th 1070, 1076 (2d Cir. 2021). In ruling on a Rule 12(b)(6) motion, "[t]he court's function is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'" *Havens v. James*, 76 F.4th 103, 116-17 (2d. Cir. 2023)

(quoting *Festa v. Loc. 3 IBEW*, 905 F.2d 35, 37 (2d Cir. 1990)).[29]  Rule 12(b)(6) "ensures that,

consistent with Rule 8(a), a complaint includes 'sufficient factual matter, accepted as true, to state

a claim to relief that is plausible on its face.'"  *Alharbi v. Miller*, 368 F. Supp. 3d 527, 560

(E.D.N.Y. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Accordingly, in applying

the legal standards applicable to Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of

the facts alleged in support of the Claim in light of the pleading standards under Rule 8(a).

    Under Rule 8, a complaint must contain "a short and plain statement of the claim showing

that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To meet this standard, a complaint

need only "disclose sufficient information to permit the defendant to have a fair understanding of

what the plaintiff is complaining about and to know whether there is a legal basis for

recovery."  *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 577 (S.D.N.Y. 2021) (quoting

*Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)).  Further, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In deciding

what factual matter to accept as true, the Court is not required to "credit conclusory allegations or

legal conclusions couched as factual allegations."  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)

(quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)).

---

[29] "On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits consideration to: (1) the factual allegations
in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in
it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the
complaint relies heavily, *i.e.*, documents that are 'integral' to the complaint." *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d
488, 498 (S.D.N.Y. 2003) (citing *Brass v. American Film Techs.*, 987 F.2d 142, 150 (2d Cir. 1993); *Chambers v. Time
Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir.
1991)). Because Sufficiency Hearings consider consumer claims, often by unrepresented claimants whose claims lack
detail or do not attach pertinent supportive documentation, it has been the practice of this Court to consider the
Consumer Claims Trustee's documentary submissions together with claims as if they were consolidated. The Court
does so here.

A complaint states a facially plausible claim "when the . . . plead[ed] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  However, plausibility does not mean probability; it means that the complaint alleges "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim.  *Twombly*, 550 U.S. at 556.  Detailed factual allegations are not necessary to survive a motion to dismiss, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## ANALYSIS

Claimant asserts claims of fraud and promissory estoppel.  He also contends that Ditech violated its "contractual, statutory, and common law duties."  Response ¶ 9; Surreply ¶ 10.  The Consumer Claims Trustee argues that Claimant cannot satisfy the Rule 12(b)(6) legal standard because he fails to state a plausible claim under any of his asserted legal theories.  Reply ¶¶ 41-53.  She also states that the Claim is barred by the doctrine of res judicata and application of the statute of limitations.  *Id.* ¶¶ 36-40, 54-67.  The Court considers those matters below.

### Whether the Claim Is Precluded by the Prior Dismissal

The Consumer Claims Trustee argues that the Claim is barred by application of the doctrine of res judicata.  Reply ¶¶ 36-40.  Claimant did not address this argument in the Surreply, but at the Sufficiency Hearing he argued that res judicata does not preclude the Claim.  He stated that he stipulated to the dismissal of any and all claims against Ditech Financial for monetary relief, but those seeking nonmonetary relief remained before the Federal Court.  *See* Stipulation ¶¶ 6-7.  He argued the Stipulation bifurcated his claims and therefore, the claims before the Federal Court are not the same as the claims currently before this Court.  In response, the Consumer Claims Trustee asserted that if claim preclusion does not apply, then the related doctrine of collateral estoppel, or

issue preclusion, would nevertheless preclude the Claim. These arguments were not submitted to the Court in the written briefs.  However, the Court will consider the applicability of the two preclusion doctrines below.

**_Collateral Estoppel_**

To successfully assert collateral estoppel, a party must establish: "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *JPMorgan Chase Bank, N.A. v. Pro. Pharmacy II*, 508 S.W.3d 391, 416 (Tex. App. 2014) (citing *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994)).  The Texas Supreme Court has determined that since collateral estoppel is an affirmative defense, the party asserting it "ha[s] the burden of pointing out the issue they wish[] to be estopped." *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 802 (Tex. 1994).

The Consumer Claims Trustee argues that Judge Hughes' ruling on the non-monetary claims in the Federal Court should have preclusive effect on the monetary claims here.  However, the Federal Court's decision was based on the insufficiency of the pleadings, not on any factual findings.  It is thus unclear what facts the Consumer Claims Trustee believes Mr. Sanders is precluded from arguing in this proceeding.

The Federal Court found that Mr. Sanders had "pleaded [his] claim with vague allegations and legal conclusions." Opinion on Dismissal at 2.  The Federal Court's ruling that the pleadings were insufficient does not equate to a finding that the underlying facts alleged by Sanders are false and it does not preclude him from alleging them again here.  It merely indicates that the claims were not pleaded with enough specificity to survive a motion to dismiss.  Because the Consumer Claims Trustee does not explain what facts she believes Mr. Sanders is precluded from contesting

here, the Court cannot find that the application of collateral estoppel defeats any aspect of Mr. Sanders's Claim.

*Res Judicata*

The doctrine of *res judicata* precludes the same parties from litigating claims in a subsequent suit based on the same cause of action if there has been a final judgment on those claims. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "The preclusive effect of a federal-court judgment is determined by federal common law." *Id.* (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-08 (2001)). "For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits. *Id.*, n.4 (citing *Semtek Int'l Inc*, 531 U.S. at 508). Here, the federal action was removed from the Texas Court to the Federal Court based on diversity jurisdiction. Accordingly, Texas law determines the claim preclusive effect of the Opinion on Dismissal.[30]  *See Johnson-Williams v. Citimortgage, Inc.*, 750 F. App'x 301, 304 (5th Cir. 2018) (per curiam) (applying Texas preclusion law because "the rendering [Texas] federal court heard the case based on diversity jurisdiction, [and] federal common law conveniently directs us to apply the law of the state in which that court sits" (citing *Snow Ingredients, Inc. v. SnoWizard, Inc.,* 833 F.3d 512, 521 n.9 (5th Cir. 2016))); *see also Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020).

Texas law would not prelude Mr. Sanders's claim. Under Texas law, claim preclusion has three elements: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2)

---

[30] The Consumer Claims Trustee argues that since the prior judgment was entered by a federal court, federal law determines the res judicata effect. Reply ¶ 36 (citing *Robinson v. Nat'l Cash Register Co.*, 808 F.2d 1119, 1124 (5th Cir. 1987)). She sets forth the Fifth Circuit's test for determining the preclusive effect of a judgment to argue the Claim is barred and asks the Court to apply the same test. *Id.* ¶¶ 36-40. However, as explained, the correct standard against which the preclusive effect of a judgment should be assessed is the standard that a Texas state court would apply. *Dotson v. Atl. Specialty Ins. Co.*, 24 F.4th 999, 1002-03 (5th Cir.); *see also Hammervold v. Blank*, 3 F.4th 803, 809 n.4 (5th Cir. 2021) (applying Texas preclusion law but noting that there are no relevant differences between preclusion under Texas law and as applied by the Fifth Circuit).

identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 225 (Tex. 2022) (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)).

The first element requires a final judgment on the merits by a court of competent jurisdiction. "With respect to the first element, a dismissal with prejudice constitutes a final determination on the merits for [claim preclusion] purposes." *United Specialty Ins. Co. v. Farmers Ins. Exch.*, No. 13-19-00127-CV, 2020 WL 6343341, at *8 (Tex. App. Oct. 29, 2020) (citing *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 640 (Tex. 2004)); *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Services, Inc.*, 500 S.W.3d 26, 40-41 (Tex. App. 2016). The Federal Court's dismissal at the motion to dismiss phase is a final judgment on the merits.

The second element requires identity of parties or those in privity with them. In the action in Federal Court, Claimant asserted claims against Ditech Financial and the Claim is against Ditech. This element is met because the relevant parties are identical or in privity. Ditech Financial is an affiliate of Ditech and is in privity for purposes of res judicata because Ditech's interests were represented by Ditech Financial in the federal action. *Samuel v. Fed. Home Loan Mortg. Corp.*, 434 S.W.3d 230, 234-35 (Tex. App. 2014).

For the third element's "same claims" requirement, Texas courts apply the "transactional test." *Johnson-Williams*, 750 F. App'x at 304 (citing *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007)). Essentially, the test evaluates "whether the two actions under consideration are based on 'the same nucleus of operative facts.'" *Ries v. Paige (In re Paige)*, 610 F.3d 865, 872 (5th Cir. 2010) (quoting *Osherow v. Ernst & Young, LLP (In re Intelogic Trace, Inc.)*, 200 F.3d 382, 386 (5th Cir. 2000)); *accord Barr v. Resol. Tr. Corp. ex rel. Sunbelt Fed. Sav.*,

837 S.W.2d 627, 630 (Tex. 1992) ("A determination of what constitutes the subject matter of a

suit necessarily requires an examination of the factual basis of the claim or claims in the prior

litigation. . . . Any cause of action which arises out of those same facts should, if practicable, be

litigated in the same lawsuit.").

Here, both actions center on the 1998 loan transaction with Jim Walter Homes and the

alleged misrepresentation regarding the property description in the loan documents. In the federal

action, Claimant asserted claims of fraud, misrepresentation, conversion, and trespass to try title.

Complaint ¶¶ 13-14. Similarly, the Claim alleges "[f]raud, misrepresentation, and damages."

Claim at 2. Both actions share key factual allegations. In both cases, Claimant contends that on

September 4, 1998, he executed a mechanic's lien contract with Jim Walter Homes for the

construction of his home, and a Jim Walter Homes employee misrepresented that the lien would

apply only to a one-acre plot of land, rather than the entire three-acre property. Response ¶ 4;

Complaint ¶ 13. Additionally, in both proceedings, Claimant argued that Jim Walter Homes (and

subsequently Ditech) took advantage of his race, limited education, and disadvantaged economic

status to switch the property description in the loan documents. Response ¶ 4; Complaint ¶ 13.

Thus, the basic dispute in both actions revolves around the allegedly false representation that the

lien applies only to the approximately one-acre plot where the house was built. These are the core

operative facts from which both actions arise.

Although the Claim may include additional legal theories or seek different relief, the

underlying factual basis remains the same as in the federal action. As the Texas Supreme Court

has explained, "Any cause of action which arises out of those same facts should, if practicable, be

litigated in the same lawsuit." *Barr*, 837 S.W.2d at 630. Similarly, in discussing the transactional

test the Fifth Circuit explained that "[a] party may not avoid the preclusive affect [sic] of res

judicata by asserting a new theory or a different remedy. The nucleus of facts defines the claim rather than the legal theory posed or recovery sought." *Matter of Howe*, 913 F.2d 1138, 1144 n. 10 (5th Cir. 1990).

This action is based on the same claims as were raised or could have been raised in the first action. The factual allegations both focus on the same loan transaction, the same alleged misrepresentation, and the same disputed property description.

But this does not end the inquiry. Texas courts generally follow the Restatement Second of Judgments, which provides exceptions to the general rule against claim splitting. Section 26(1)(c) of the Restatement provides:

> The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief.

RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(c) (Am. L. Inst. 1982). Put simply, the exception applies when a court cannot grant a remedy due to a jurisdictional limitation, thus allowing a plaintiff to pursue these claims in another court.

While Texas courts have not explicitly adopted section 26(1)(c), they would likely support its application. The Texas Supreme Court, in *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 453 (Tex. 2007), distinguished between voluntary restrictions in class actions and involuntary jurisdictional restrictions; in rejecting section 26(1)(c)'s application there, it observed that the rule "more appropriately applies" to jurisdictional restrictions placed on courts like bankruptcy courts or administrative agencies. *See also In re Super Van Inc.*, 92 F.3d 366, 371 (5th Cir. 1996) (adopting § 26(1)(a) of the Restatement as aligning with the purpose of res judicata and discouraging "unsavory tactical maneuvers").

20

Here, the Stipulation in the Federal Court recognized that certain claims could not be brought there due to the bankruptcy proceedings. When the Federal Court dismissed the monetary claims based on the Stipulation and later dismissed the remaining claims, it did not preclude Mr. Sanders from pursuing such claims here. Res judicata does not bar Mr. Sanders' Claim.

## **Whether Claimant States a Plausible Claim to Relief Against Ditech**

### *Fraud*

The crux of Claimant's fraud-based allegations is that the property securing the Mechanic's Lien consists of all three acres of the Property and not a one-acre subsection. He claims he was misled to believe it was only one acre because a Jim Walter Homes employee represented that fact to him in 1998.

A fraud claim under Texas law requires:

> (1) [T]he defendant made a material misrepresentation; (2) the defendant knew the representation was false or made the representation recklessly without any knowledge of its truth; (3) the defendant made the representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation; and (4) the plaintiff suffered an injury by actively and justifiably relying on that representation.

*Stolts v. Wells Fargo Bank, NA*, 31 F. Supp. 3d 876 (S.D. Tex. 2014) (alteration in original) (quoting *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 217 (Tex. 2011)).

#### Imputation of Fraud

According to Claimant, Ditech, as a successor to Jim Walter Homes, is liable for Jim Walter Homes's misrepresentations. *See* Response ¶ 4; Surreply ¶¶ 4-5. Claimant does not support that proposition by reference to legal authority, and Texas law appears to support the opposite. Facing a similar argument, in *Belanger v. BAC Home Loans Servicing, L.P.*, the District Court for the Western District of Texas wrote that it found no Texas case holding that a transferee of a note could be held vicariously liable for the transferor's torts. 839 F. Supp. 2d 873, 876 (W.D. Tex.

2011).  The court further observed that many jurisdictions reject assignee liability for the original lender's actions.  *Id.* at 876-77 (collecting cases).

Here, Claimant has not alleged any facts showing Ditech's involvement in the loan origination.  The mere fact that Ditech is a transferee of the promissory note does not make it liable for Jim Walter Homes's alleged misrepresentations.

### Material Misrepresentation and Knowledge

Though Claimant alleges that a Jim Walter Homes employee misled him about what property secured the Mechanic's Lien at the time of the loan's origination in 1998, he makes no allegation that Ditech misled him, nor does he allege its involvement in the loan origination process or execution of the Mechanic's Lien.  Still, even if Jim Walter Homes's alleged misrepresentation could be imputed to Ditech, Claimant has not established that Ditech knew of the falsity of the representation.  Rather, he relies primarily on conclusory allegations:

> Claimant Willie Sanders would further show that Ditech and/or Ditech's predecessor in interest concealed or failed to disclose material facts within the knowledge of Ditech and/or Ditech's predecessor in interest, that Ditech and/or Ditech's predecessor in interest knew that Claimant Willie Sanders did not have knowledge of the same and did not have equal opportunity to discover the truth, and that Ditech and/or Ditech's predecessor in interest intended to induce Claimant Willie Sanders to enter into the transaction made the basis of this suit by such concealment or failure to disclose.

Response ¶ 5.  He says that "Ditech and/or Ditech's predecessor in interest had actual knowledge of Ditech and/or Ditech's predecessor in interest's scam to claim more than the 1 acre house lot as security for the construction loan," Response ¶ 10, and "[d]espite being told of this fraud and misrepresentation, Creditors/Ditech and/or Ditech's predecessor in interests [sic] have refused to correct this area acreage legal description and continued in its wrongful actions to, in essence, steal Claimant's property," Response ¶ 4.  Allegations such as these are insufficient to demonstrate that Ditech knew any representation was untrue.  Claimant alleges the fraud claim only in a conclusory

manner, short of what is required when pleading fraud under the Rule 9(b) pleading standard. At most, Claimant plausibly alleges that Ditech was aware Claimant disputed the description of the Property contained within the Mechanic's Lien. This does not mean that it had actual knowledge of the falsity of Jim Walter Homes's alleged misrepresentation.

### *Justifiable Reliance*

Under Texas law, fraud claims require plaintiffs to demonstrate both actual and justifiable reliance. *Clements v. HLF Funding*, No. 05-19-01295-CV, 2021 WL 3196962, at *8 (Tex. App. July 28, 2021) (citing *Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 554 (Tex. 2019)). While the justifiability of reliance is generally a question of fact, courts may negate this element as a matter of law "when circumstances exist under which reliance cannot be justified." *Id.* (citing *Mercedes-Benz USA*, 583 S.W.3d at 558).

In arm's-length transactions, Texas law imposes a duty of diligence on the party alleging fraud. The Texas Supreme Court has explained that "the defrauded party must exercise ordinary care for the protection of his own interests." *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 425 (Tex. 2015) (quoting *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962)). That duty "is not excised by mere confidence in the honesty and integrity of the other party." *Id.* (quoting *Thigpen*, 363 S.W.2d at 251)).

Claimant does not allege that Ditech or Jim Walter Homes withheld documents from him or prevented him from consulting others before signing. Claimant states that even though the Sanders did not fully understand them, they nonetheless signed the documents because Jim Walter Homes were "nice people," and the Sanders believed them. This "mere confidence," as a matter of law, cannot give rise to reasonable reliance.

Claimant has not stated a plausible claim against Ditech for fraud.

23

### *Statute of Limitations*

Any fraud claim in this case is barred by the statute of limitations. Under Texas law, fraud

claims must be brought within four years of the date they accrued. Tex. Civ. Prac. & Rem. Code

§ 16.004(a)(4). However, in some circumstances, Texas law tolls the statute of limitations

While Texas applies the "discovery rule," which delays the accrual of the claim until the

injury was or should have been discovered, this rule applies only if the injury is both inherently

undiscoverable and objectively verifiable. *Husk v. Deutsche Bank Nat. Tr. Co.*, No. CIV.A. H-12-

1630, 2013 WL 960679, at *2 (S.D. Tex. Mar. 12, 2013). Relatedly, "the doctrine of fraudulent

concealment delays application of the statute of limitations. When the fraud is concealed, the

doctrine tolls the limitations period 'until the fraud is discovered or could have been discovered

with reasonable diligence.'" *Hunton v. Guardian Life Ins. Co. of Am.*, 243 F. Supp. 2d 686, 699

(S.D. Tex. 2002), *aff'd*, 71 F. App'x 441 (5th Cir. 2003) (unpublished).

Here, the discovery rule was not implicated because the alleged misrepresentation was not

inherently undiscoverable. The question is whether the Sanders's injury "was the type of injury

that generally is discoverable by the exercise of reasonable diligence." *HECI Expl. Co. v. Neel*,

982 S.W.2d 881, 886 (Tex. 1998).[31] The Sanders both signed the Mechanic's Lien, which plainly

---

[31] At oral argument, Mr. Sanders argued, for the first time, that the legal injury rule delayed the accrual of his claims until September 2018 because the Mechanic's Lien was a contingent claim that did not cause injury until Ditech attempted to foreclose on all three acres. Although he waived this argument by failing to raise it in his written submissions, the argument would fail even if the Court were to consider it.

In *Dunmore v. Chicago Title Ins. Co.*, the Texas Court of Appeals considered when legal injury occurred in the context of a statute of limitations defense to claims arising from an erroneous property description. 400 S.W.3d 635, 640-42 (Tex. App. 2013). Relying on the principle that a cause of action accrues "when facts come into existence that authorize a claimant to seek a judicial remedy," it concluded that the injury occurred when "appellants knew or should have known about their injury on August 24, 2001, the date of the real estate closing." *Id.* at 640, 642. It explicitly rejected an argument that the discovery rule tolled accrual of the cause of action until "the corrected Warranty Deed 2 was filed . . . in the . . . real property records." *Id.* at 641-42.

For the same reason, here, the statute of limitations began to run in 1998 when the lien was created, not when foreclosure was attempted in 2018.

described the extent of the property encumbered as measuring three acres. Mechanic's Lien at 3-4. Because the information was readily available on the face of the document, the injury here was the type of injury that the Sanders could have discovered through reasonable diligence, even assuming, as Mr. Sanders claims, he did not understand what the document meant. Moreover, the alleged fraud could have been discovered with reasonable diligence, so the fraudulent concealment doctrine did not toll the statute of limitations.

The Claim accrued, if at all, no later than September 4, 1998, when the Mechanic's Lien was signed. *See* Mechanic's Lien at 3-4. However, the Claimant did not assert the fraud claims until filing his action in the Texas Court in 2018, approximately 20 years after the contract and lien were signed. This falls far outside the applicable four-year statute of limitations, rendering the claim time-barred.

**Promissory Estoppel**

In addition to the fraud claim, Claimant asserts a claim for promissory estoppel based on the same underlying allegations. Response ¶¶ 5-7. The crux of the claim revolves around the alleged promise made by a Jim Walter Homes employee that the Mechanic's Lien would apply to only one of the three acres comprising the Property.

"Promissory estoppel applies to bar the application of the statute of frauds and allow the enforcement of an otherwise unenforceable oral agreement when (1) the promisor makes a promise that he should have expected would lead the promisee to some definite and substantial injury; (2) such an injury occurred; and (3) the court must enforce the promise to avoid the injury." *Exxon v. Breezevale Ltd.*, 82 S.W. 3d 429, 438 (Tex. App. 2002); *see also Garcia v. Lucero*, 366 S.W. 3d 275, 280 (Tex. App. 2012) (to establish promissory estoppel under Texas law, claimant must

demonstrate "(1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to her detriment.").

Claimant contends that he has stated a claim for promissory estoppel because the oral promise made by the Jim Walter Homes employee satisfies these requirements. The Consumer Claims Trustee disagrees, arguing that the promissory estoppel claim fails under the statute of frauds. She cites to *Sullivan v. Leor Energy, LLC*, which explains that for promissory estoppel to apply in cases governed by the statute of frauds, the agreement subject to the oral promise must already exist in writing at the time the promise is made. 600 F.3d 542, 549 (5th Cir. 2010). Thus, her argument rests on the application of Tex. Bus. & Com. Code §§ 26.01 and 26.02(b); she contends that both the Retail Installment Contract and the Mechanic's Lien fall within the purview of the statute of frauds. She also says that the alleged oral promise is subject to the statute because it involves an agreement exceeding $50,000 in value.

First, Tex. Bus. & Com. Code § 26.02(b) pertains to loan agreements made by "financial institutions," which "means a state or federally chartered bank, savings bank, savings and loan association, or credit union, a holding company, subsidiary, or affiliate of such an institution, or a lender approved by the United States Secretary of Housing and Urban Development for participation in a mortgage insurance program under the National Housing Act." Tex. Bus. & Com. Code § 26.02(a)(1). None of Claimant's allegations establish that Jim Walter Homes was a financial institution.

Second, it is not clear that the oral promise regarding the scope of the Mechanic's Lien fits any of the types of agreements outlined in Texas's statute of frauds. Tex. Bus. & Com. Code § 26.01 enumerates certain types of agreements that must be in writing to be enforceable. These include, among others, "a promise by one person to answer for the debt, default, or miscarriage of

another person," "a contract for the sale of real estate," and "a lease of real estate for a term longer than one year."  Tex. Bus. & Com. Code § 26.01(b)(2), (4), (5).

The alleged oral promise about the Mechanic's Lien's scope does not clearly fall into any of these categories.  The promise relates to the extent of a lien's application, which appears distinct from a sale or lease of property.  Furthermore, a Mechanic's Lien, by its nature, is a security interest that arises from unpaid work on a property, not a loan agreement or real estate transaction.  The Consumer Claims Trustee has not cited any authority explaining how such agreements map onto the categories of agreements outlined by Tex. Bus. & Com. Code § 26.01(b).

Still, the court must deny the promissory estoppel claim.  Promissory estoppel is only available under Texas law if there is no legally valid contract between the parties.  *Jhaver v. Zapata OffShore Co.*, 903 F.2d 381, 385, 385 n.11 (5th Cir. 1990).  Even then, the statute of limitations for a promissory estoppel claim is four years from when the promisor breaches its promise to the promisee.  Tex. Civ. Prac. & Rem. Code § 16.051; *see also Prestige Ford Garland Ltd. P'ship v. Morales*, 336 S.W.3d 833, 836 (Tex. App. 2011).

Here, the Mechanic's Lien is a legally valid contract between the parties, precluding a promissory estoppel claim.  Even if it were not, the cause of action accrued when the Mechanic's Lien was recorded on July 14, 1999, because this was when the alleged promise was breached by encumbering all three acres.  For the same reasons as stated above regarding the fraud claim, neither the fraudulent concealment doctrine nor the discovery rule toll the limitations period because the Mechanic's Lien plainly described the extent of the property encumbered as measuring three acres.  Therefore, the promissory estoppel claim is barred by the four-year statute of limitations.  *See, e.g.*, *Morales,* 336 S.W.3d at 837-38 (finding the promissory estoppel claim accrued when defendant signed a lease agreement despite being promised it was a sales contract

and not when she finished making lease payments and was not granted ownership of the car); *Arizpe v. Principal Life Ins. Co.,* 398 F. Supp. 3d 27, 58-60 (N.D. Tex. 2019) (finding a promissory estoppel claim filed in 2017 time barred because claim arose in 2011 when plaintiff signed an insurance policy under the belief that its terms matched a previously received illustration).

**<u>Breach of Contractual, Statutory, and Common Law Duties</u>**

Claimant conclusorily alleges that Ditech violated its "contractual, statutory and common law duties" but fails to plead with specificity what duty Debtors had to Claimant or to cite any statute or contract provision that was violated.  Response ¶ 9; Surreply ¶ 10.  A breach of a fiduciary duty claim first requires Claimant to establish a fiduciary relationship between Ditech and himself.  However, courts have routinely held that no such relationship exists between lenders and borrowers under Texas law.  *See Casterline v. Indy Mac/One W.*, 761 F. Supp. 2d 483, 491-92 (S.D. Tex. 2011) (collecting cases); *see also Fraley v. BAC Home Loans Servicing, LP*, No. 11-cv-1060-N, 2012 WL 779130, at *8 (N.D. Tex. Jan. 10, 2012) (dismissing gross negligence claim because, "as mortgagor, Defendants did not owe a legal duty to Plaintiff"), *adopted by* 2012 WL 779654 (N.D. Tex. Mar. 9, 2012); *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 192-93 (S.D. Tex. 2007), *aff'd*, 269 F. App'x 523 (5th Cir. 2008) (per curiam).

Claimant has not alleged or established any fiduciary or special relationship with Ditech and cannot maintain an action for a breach of any such duty.  Because Claimant has otherwise failed to state a plausible claim to relief, his Claim must be disallowed.

## **CONCLUSION**

For the foregoing reasons, the Court sustains the Objection and disallows the Claim.


IT IS SO ORDERED.


Date:   August 31, 2024
        New York, NY

                                    /s/ *James L. Garrity, Jr.*
                                    HONORABLE JAMES L. GARRITY, JR.
                                    UNITED STATES BANKRTUPCY JUDGE