UNITED STATES BANKRUPTCY COURT                         NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
In re:                                                :
                                                      :   Case No. 19-10412 (JLG)
                                                      :   Chapter 11
Ditech Holding Corporation, *et al.*,                 :
                                                      :
                                                      :   (Jointly Administered)
                                        Debtors.[1]   :
-------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS TRUSTEE'S TWENTY-FIFTH OMNIBUS OBJECTION WITH RESPECT TO THE PROOF OF CLAIM FILED BY DAVID KEGLEY

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:    Richard Levin


DAVID KEGLEY[2]
*Appearing Pro Se*
7641 State Route 55
Urbana, Ohio 43078

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

[2] Mr. Kegley is acting pro se herein and, in that capacity, filed the Claim and Response to the Objection. As set forth below, Mr. Kegley did not appear at the Sufficiency Hearing.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

**INTRODUCTION**[3]

On April 7, 2019, David Kegley (the "Claimant") filed Proof of Claim No. 20466 (the

"Claim")[4] as an unsecured claim in an undetermined amount against Ditech Holding Corporation

(f/k/a Walter Investment Management Corp.) ("Ditech"). On June 12, 2020, the Consumer Claims

Trustee filed her Twenty-Fifth Omnibus Objection to Proofs of Claim (the "Objection").[5] In the

Objection, the Consumer Claims Trustee seeks to disallow proofs of claim, including the Claim,

that do not state a sufficient legal basis to establish liability on the part of Ditech. On July 1, 2020,

Claimant filed a response to the Objection (the "Response").[6] On August 1, 2024, the Consumer

Claims Trustee replied to the Response (the "Reply").[7] Claimant is acting pro se in this contested

matter.

Pursuant to the Claims Procedures Order,[8] the Objection was adjourned upon Claimant's

filing of the Response so the Court could conduct a Sufficiency Hearing on the Claim. At a

Sufficiency Hearing, the Court employs the legal standard of review applied to a motion to dismiss

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[4] The Claim amended Proof of Claim No. 20463, which was filed on April 7, 2019, less than an hour before the Claim was filed. Claim No. 20463 was asserted against Ditech Financial LLC ("Ditech Financial"). While largely similar, the Claim annexes two additional pages of documents.

[5] *Consumer Claims Trustee's Twenty-Fifth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims)*, ECF No. 2544.

[6] *Response*, ECF No. 2665.

[7] *Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee's Twenty-Fifth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims) with Respect to the Claim of David Kegley (Claim 20466)*, ECF No. 5168.

[8] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632 (the "Claims Procedures Order").

for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Claims Procedures Order ¶ 3(iv)(a).

On August 29, 2024, the Court held a Sufficiency Hearing on the Claim. The Consumer Claims Trustee appeared through counsel and informed the Court that Claimant indicated to counsel that he no longer wished to pursue the Claim. The Court adjourned the hearing to September 26, 2024, and requested that the Consumer Claims Trustee coordinate with Claimant to file a notice of withdrawal of the Claim. Claimant did not withdraw the Claim and did not appear on September 26, 2024, at the adjourned Sufficiency Hearing. The Consumer Claims Trustee suggested, and the Court agreed, to consider the matter solely based upon the documents filed of record. The Court did not hear argument from the Consumer Claims Trustee. The Court issues this Memorandum Decision and Order based on its review of the Claim, Objection, Response, and Reply, including all documents submitted in support thereof.

As explained below, accepting Claimant's well-pleaded factual allegations as true, drawing all reasonable inferences in Claimant's favor, and liberally construing the Claim and Response to raise the strongest arguments that they suggest, the Claim fails to state a plausible claim to relief against Ditech. Accordingly, the Court sustains the Objection and disallows the Claim.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

# BACKGROUND

## The Loan

On or around September 20, 1999, Claimant executed a Manufactured Home Retail Installment Contract and Security Agreement (the "Purchase Contract")[9] for the purchase of a manufactured home, which sits on real property located at 1011 Walker Hill Way, Newport, Tennessee 37821 (the "Property"). Green Tree Financial Corp.-Alabama ("Green Tree") financed the Purchase Contract, which had a principal balance of $29,114.64. Purchase Contract at 1. The Purchase Contract was a simple-interest contract with an interest rate of 11.75%. *Id.* at 2. According to the Truth in Lending Disclosures, Claimant financed $26,950.00 of that balance at an annual percentage rate of 12.80% to be paid in monthly installments of $293.89 over a thirty-year term beginning November 1, 1999. *Id.* at 1. The total payments, including anticipated interest, would amount to $105,800.40. *Id.* Considering Claimant's down payment of $1,500, the total sales price of the manufactured home was $107,300.40. *Id.*

## The Chapter 11 Cases

On February 11, 2019, Ditech and certain of its affiliates (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019,

---

[9] The Purchase Contract is annexed to the Claim at pages 6-9. The Court considered the Purchase Contract and the other documents annexed to the Claim and Reply in making its determination because they are integral to the Claim. *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 57 (S.D.N.Y. 2021) ("In deciding [a] motion to dismiss, the Court is limited to the factual allegations of the Complaint, materials that are attached by the Complaint or integral thereto, and matters of which the Court may take judicial notice."); *Ocampo v. JP Morgan Chase Bank, N.A.*, 93 F. Supp. 3d 109, 114 (E.D.N.Y. 2015) (court may consider loan documents and loan transfer documents that are integral to the complaint on a motion to dismiss); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 462 (S.D.N.Y. 2020) ("Judicial notice may be taken of documents that are 'integral to the complaint,' such that the complaint 'relies heavily upon [the documents'] terms and effect.'" (quoting *Palin v. N.Y. Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019) (alterations in original))).

the Court entered an order fixing April 1, 2019, as the deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[10] The Court extended the General Bar Date for consumer borrowers to June 3, 2019.[11]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, which became effective on September 30, 2019.[12] The Consumer Claims Trustee is appointed under the Third Amended Plan as a fiduciary responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims. *See* Third Amended Plan, art. I, § 1.41. The Consumer Claims Trustee has the exclusive authority to object to Consumer Creditor Claims. *See id.* art. VII, § 7.1.

### The Claims Procedures Order

The Claims Procedures Order authorizes the Consumer Claims Trustee to file Omnibus Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order. *See* Claims Procedures Order ¶ 2(i)(a)–(h). A properly filed and served response to an objection gives rise to a "Contested Claim." *Id.* ¶ 3(iv). A Contested Claim is resolved at a Claim Hearing, which the Consumer Claims Trustee has the option to schedule as either a "Merits Hearing" or a "Sufficiency Hearing." *Id.* ¶ 3(iv)(a), (b). The Consumer Claims Trustee's Sufficiency Hearing is

---

[10] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[11] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[12] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

the matter before the Court. A Sufficiency Hearing is a non-evidentiary hearing to address whether

the Contested Claim states a claim to relief against the Debtors. At a Sufficiency Hearing, the

Court applies the legal standard employed for a motion to dismiss for failure to state a claim upon

which relief can be granted under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

## The Claim

The Claim asserts a claim against Ditech in an undetermined amount. Claim at 1-2.

Claimant annexed the Purchase Contract to the Claim. *Id.* at 6-9. He states the basis of the Claim

as "Borrower" and that he disputes his account balance. *Id.* at 2, 4.

The Claim includes a letter Claimant addressed to Green Tree's successor, Ditech

Financial, dated July 12, 2017 (the "July 2017 Letter"), disputing the balance of his account. *Id.* at

4. The thrust of Claimant's complaint is that he financed only $26,950.00 in 1999, made payments

on that loan for nearly 18 years, but his account balance reflected that he still owed $27,064.08 in

2017. *Id.*  The letter annexes an amortization schedule generated by Green Tree as of August 8,

2012, which states that after the first payment, the balance was $29,114.64, *id.* at 10, which he

claims is higher than the amount a Truth in Lending Act disclosure on the Purchase Contract shows

he had financed, *id.* at 4. Claimant suggests that his initial balance should have been only

$26,950.00. *Id.* at 4. The Claim does not identify the amount by which Claimant believes he was

overcharged, but it is clear that Claimant disputes at least the $2,164.64 difference between the

$29,114.64 amount that is shown on the amortization schedule and the $26,950.00 that Claimant

says he financed.

To argue that the wrong principal balance was applied to his account, Claimant contends

that, at the Purchase Contract's 12.8% annual percentage rate, $318.00 paid monthly would satisfy

a $29,114.64 balance in 30 years, yet the Purchase Contract calls only for monthly payments of

$293.89. *Id.* at 4. According to his calculations, the $293.89 monthly payment would, at the same

6

interest rate, be enough to pay down a principal amount of $26,950.00. *Id.* at 5. Therefore, he suggests that the principal must have been only $26,950.00. *Id.* at 4.

## The Objection

The Consumer Claims Trustee contends the Court should disallow the Claim because it "assert[s] incorrect loan accounting and principal balance." Objection, Ex. A at 6. She says that the Claim fails to state a claim for which relief can be granted because, "[a]fter review of the Debtors [sic] books and records, principal balance reflected on amortization schedule matches principal balance in loan contract, and combination of late payments and simple interest loan explain slow decrease in principal balance over time." *Id.*

## The Response

In the Response, Claimant reiterates that the August 2012 amortization schedule incorrectly showed a beginning balance of $29,114.64, rather than $26,950.00. Response at 1. He again points out the discrepancy between the figure in that amortization and the Truth in Lending Act disclosures in his Purchase Contract. *Id.*

## The Reply

The Consumer Claims Trustee argues that Claimant has not stated a plausible claim to relief. Although Claimant does not identify any legal theories under which he is entitled to recover, the Consumer Claims Trustee responds to the Claim as though Claimant has asserted claims under the Truth in Lending Act ("TILA") and for breach of contract. Reply ¶ 23. The Consumer Claims Trustee argues that Claimant cannot state a claim to relief under TILA because the initial principal balance of $29,114.64 that Claimant complains of matches the principal balance stated in the Purchase Contract. *Id.* ¶¶ 24-31. She also argues that Claimant cannot satisfy the elements of a breach of contract claim under Tennessee law and, in any event, such a claim is barred by the applicable statute of limitations. *Id.* ¶¶ 30-37.

**Motion to Estimate**

On September 23, 2022, the Consumer Claims Trustee filed a motion to estimate claims for purposes of setting a reserve and to classify those claims as non-363(o) claims as defined in the Third Amended Plan.[13] The Consumer Claims Trustee estimated the Claim amount at $0. On October 12, 2022, Claimant filed a response to the motion stating the maximum amount that should be reserved for the Claim was $30,000.00.[14] On December 29, 2022, the Court granted the Consumer Claims Trustee's motion, but estimated the Claim at $30,000.00.[15]

## LEGAL PRINCIPLES

A proof of claim filed under section 501 of the Bankruptcy Code is deemed allowed absent an objection from a party in interest. 11 U.S.C. § 502(a). If a claim is executed and filed in accordance with the Bankruptcy Rules, such filing is "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). A party in interest may also object and seek to disallow the proof of claim under one of the enumerated grounds set forth in section 502(b). 11 U.S.C. § 502(b).

However, in considering the Objection, the Court employs a legal standard equivalent to the one used on motions to dismiss pursuant to Rule 12(b)(6). *See* Claims Procedure Order ¶ 3(iv)(a). "On a motion to dismiss, th[e] [c]ourt 'must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor,' and grant dismissal where the complaint fails to state a claim 'that would entitle the plaintiff to relief.'" *Commerzbank AG v. U.S. Bank,*

---

[13] *Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Allowance / Distribution Reserve and to Classify Certain Proofs of Claim*, ECF No. 4226.

[14] *In Response to: Consumer Claim Trustee Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4345.

[15] *Order Granting Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4493.

*N.A.*, 100 F.4th 362, 374 (2d Cir. 2024) (quoting *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d

292, 300 (2d Cir. 2003)). In other words, Claimant must state a facially plausible claim for relief

such that the Court can reasonably infer that Ditech is liable for the unlawful actions or misconduct

he alleges. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007))). "Where a complaint pleads facts that are merely consistent with a

defendant's liability, it stops short of the line between possibility and plausibility of entitlement to

relief." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 178 (2d Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009)).

While the Court employs the Rule 12(b)(6) standard to determine the legal sufficiency of

the Claim,[16] it also recognizes that Claimant is proceeding pro se. Pro se litigants must still allege

facts sufficient to state a facially plausible claim, but the Court will construe their pleadings

broadly and interpret them to raise the strongest arguments they suggest. *Cagle v. Weill Cornell

Med.*, 680 F. Supp. 3d 428, 434 (S.D.N.Y. 2023).

## ANALYSIS

Claimant generally alleges that the initial principal balance, as reflected in the amortization

schedule, is greater than the amount he agreed to finance when he executed the Purchase Contract.

Because he was charged more than he contends was agreed, his principal balance exceeded the

total amount he had financed after eighteen years of payments. The Consumer Claims Trustee

---

[16] "On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are 'integral' to the complaint." *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citation omitted); *accord Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Because Sufficiency Hearings consider consumer claims, often by unrepresented claimants, whose claims lack detail or do not attach pertinent supportive documentation, it has been the practice of this Court to consider the Consumer Claims Trustee's documentary submissions together with claims as if they were consolidated. The Court does so here.

construes that Claim to purport to assert claims under TILA and for breach of contract. The Court agrees that is a fair reading of the Claim.

## Whether Claimant States a Plausible Claim to Relief Under the Truth in Lending Act

The Truth in Lending Act is a consumer protection statute that serves "the broad purpose of promoting the informed use of credit by assuring meaningful disclosure of credit terms to consumers." *Baker v. Sunny Chevrolet, Inc.*, 349 F.3d 862, 864 (6th Cir. 2003) (quoting *Ford Motor Credit Co. v. Millhollin*, 444 U.S. 555, 559 (1980)); *see also Turner v. E-Z Check Cashing of Cookeville, TN, Inc.*, 35 F. Supp. 2d 1042, 1047 (M.D. Tenn. 1999) ("TILA is a comprehensive regulatory scheme intended to deter the predatory extension of credit which can disrupt the national economy and increase the personal bankruptcy rate. Its provisions are intended to aid the unsophisticated consumer in determining the total costs of financing." (citation omitted)). TILA's implementing regulations are set forth in Regulation Z, 12 C.F.R. Pt. 1026. These implementing regulations are accompanied by the Bureau of Consumer Financial Protection's official interpretations at 12 C.F.R. Pt. 1026, Supp. I, Pts. 1-5 (the "Official Interpretations").[17]

TILA and Regulation Z impose certain credit disclosure obligations on lenders. 12 C.F.R. § 1026.17. In pertinent part, lenders must disclose, *inter alia*, (1) the identity of the creditor, (2) the amount financed, (3) an itemization of the amount financed, (4) the finance charge, (5) the annual percentage rate, (6) the payment schedule, and (7) total sales price. *Id.* § 1026.18. The amount financed is the principal loan amount less any downpayment, plus any other amounts that the lender financed, less any prepaid finance charges. *Id.* § 1026.18(b). The lender must also separately state the prepaid finance charges. *Id.* § 1026.18(c)(iv).

---

[17] The Official Interpretations can also be found at https://www.consumerfinance.gov/rules-policy/regulations/1026/interp-0/.

When a lender lists the finance charge, it must include a description such as "the dollar amount the credit will cost you." *Id.* § 1026.18(d). It must also state the annual percentage rate with a description such as "the cost of your credit as a yearly rate." *Id.* § 1026.18(e). The disclosures must also list the number, amounts, and timing of the scheduled payments. *Id.* § 1026.18(g). The total sales price and—for a fixed-rate mortgage—the interest rate at consummation, are also required in the initial disclosures. *Id.* § 1026.18(j), (s).

The Purchase Contract contains these disclosures. There is a section titled "Itemization of the Amount Financed" that shows the principal balance as $29,114.64, the prepaid finance charges as $2,164.64, and the amount financed as the difference between these numbers: $26,950.00. Purchase Contract at 1. The Purchase Contract states that the annual percentage rate is 12.80%, the finance charge is $78,850.40, the amount financed is $26,950.00, the total of payments is $105,800.40, and the total sale price with the $1,500 downpayment totals $107,300.40. Purchase Contract at 1. The annual percentage rate and finance charge sections include the brief descriptions contemplated by section 1026.18. *Compare* Purchase Contract at 1, *with* 12 C.F.R. § 1026.18(d), (e). Thus, although "[a] private right of action under TILA arises on the date a violation of that statute occurs," *St. Maarten v. J.P. Morgan Chase Bank, N.A.*, No. 20-CV-762, 2021 WL 2217503, at *5 (E.D.N.Y. Jan. 14, 2021) (citing *Dae Hyuk Kwon v. Santander Consumer USA*, 742 F. App'x 537, 540 (2d Cir. 2018)), Claimant has not plausibly alleged that Ditech violated TILA.

Even if Claimant had otherwise plausibly alleged that Ditech violated TILA, a claim for damages ordinarily must be asserted no later than one year from the date of the violation. *Id.* (citing *Dae Hyuk Kwon*, 742 F. App'x at 540); 15 U.S.C. § 1640(e). Under TILA, most closed-end credit disclosures and other obligations are required before the date of consummation. *See* 12 C.F.R. § 1026.17(b). Claimant filed the Claim in April 2019, far later than the Purchase Contract's

September 2000 consummation. Therefore, any claim that Claimant may have had under TILA is time-barred. 15 U.S.C. § 1640(e).

## Whether Claimant States a Plausible Claim for Breach of Contract

Under Tennessee law, to state a claim for breach of contract, Claimant must allege facts demonstrating "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Whitworth v. City of Memphis*, 689 S.W.3d 579, 584 (Tenn. Ct. App. 2023) (quoting *Tolliver v. Tellico Vill. Prop. Owners Ass'n*, 579 S.W.3d 8, 25 (Tenn. Ct. App. 2019)).

There is no dispute that the Purchase Contract is an enforceable contract, thus satisfying the first element.

As for the breach, Claimant alleges that Ditech required repayment of $29,114.64, even though he financed only $26,950.00. Claim at 4; Response at 1. This is not a breach of the Purchase Contract because this is what the Purchase Contract stated was the principal balance. Specifically, the eleventh item in the "Itemization of the Amount Financed" section of the Purchase Contract shows that the principal balance is $29,114.64. Purchase Contract at 1. Moreover, this section is consistent with the amortization schedule, which shows the initial principal balance as $29,114.64.

In his letter to Ditech Financial, Claimant complains that he has been making monthly payments under the Purchase Contract for nearly eighteen years, and his outstanding balance in July 2017 is greater than the amount he originally financed in September 1999. Claim at 4.

Claimant's factual allegations are not inconsistent with the terms of the Purchase Agreement. The Purchase Contract states it is a simple interest contract with an annual interest rate of 11.75%, and provides:

> Interest will accrue upon the unpaid principal balance outstanding from time to time until paid in full. The Finance Charge, Total of Payments and Payment Schedule

were computed based on the assumption that payment will be made on the dates scheduled for payment. Early payments will reduce my final payment. Late payments will increase my final payment. My final payment will be equal to all unpaid sums due under this Contract. My promise requires me to pay the final payment on the date due even if the amount of the final payment differs from the amount of the final payment disclosed.

Purchase Contract at 2, ¶ 7.

A simple interest loan accumulates interest daily. At the start of the Purchase Contract, the daily interest accrual based on 11.75% rate on the outstanding principal of $29,114.64 was approximately $9.37. This information is reflected on the amortization schedule included in the Claim. Claim at 10. According to the schedule, Claimant made his first payment under the agreement on November 24, 1999. That was 23 days after it was due on November 1, 1999, and 54 days after the loan originated. *Id.* By the time Claimant made his first payment in the amount of $293.89, called for under the agreement, he had amassed interest arrears of $505.98. *Id.* His entire first payment was applied to the interest on the loan and even after his payment, the unpaid interest still totaled $212.09. *Id.* Claimant then made his second installment payment 26 days later in the amount of $293.89. *Id.* Over the 26-day period, Claimant accumulated $243.62 in additional interest, bringing the total amount due in interest at the time of his payment to $455.71. The second installment payment of $293.89 was applied to the outstanding interest balance, bringing the total amount of interest due $161.82. *Id.*

This pattern of late payments persisted at least through August 2012. Claim at 10-13. During this period, Claimant paid just $712.92 of the principal but $43,510.50 in interest. Claimant does not contend that he made any of these payments on time or that Ditech did not properly credit his payments. Claimant's allegations thus do not show that Ditech breached the Purchase Contract.

Claimant also asserts that the initial principal amount reflected on the amortization table is incorrect, which the Court construes to allege that Ditech breached the Purchase Agreement by

charging him based on a principal amount greater than that to which it was entitled under the terms of the Purchase Contract. Claimant supports this conclusion by using a mortgage calculator to calculate monthly payments based on an interest rate of 12.8%. *Id.* at 4-5. In doing so, Claimant conflates the annual percentage rate ("APR") and the interest rate. The interest rate is the cost the borrower pays to the lender to borrow the money, while the APR is that interest rate plus additional fees charged by the lender.[18] Claimant is correct that the monthly payment on a thirty-year loan of $29,114.64 at the interest rate of 12.8% would be roughly $318.00. However, the same loan at the interest rate of 11.75% would require a monthly payment of $293.89, which is the amount listed on the Purchase Contract and attached amortization table. Therefore, Claimant has not plausibly alleged that Ditech breached the Purchase Agreement by charging monthly installments of $293.89.

Claimant's breach of contract claim also fails because the facts he alleges in support of the Claim do not show that he suffered damages. *Leedy v. Hickory Ridge, LLC*, 663 S.W.3d 537, 549 (Tenn. Ct. App. 2022) ("In a breach of contract action, damages resulting from the breach are a necessary element of the claim." (quoting *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011)), *appeal denied* (Feb. 8, 2023). "The purpose of assessing damages in a breach of contract suit is to place the plaintiff, as nearly as possible, in the same position he would have had if the contract had been performed." *ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 639 (6th Cir. 2020) (quoting *Wilhite v. Brownsville Concrete Co.*, 798 S.W.2d 772, 775 (Tenn. Ct. App. 1990)).

---

[18] *What is the Difference Between a Loan Interest Rate and the APR?*, CONSUMER FINANCIAL PROTECTION BUREAU, https://www.consumerfinance.gov/ask-cfpb/what-is-the-difference-between-a-loan-interest-rate-and-the-apr-en-733/#:~:text=A%20loan's%20interest%20rate%20is,fees%20charged%20with%20the%20loan. (Jan. 30, 2024).

Claimant has not plausibly alleged that any damages that he suffered, including an inflated principal balance or otherwise, are a result of Ditech's breach of the Purchase Contract.

In any event, any possible breach of contract claim is time-barred. In Tennessee, the statute of limitations for bringing a breach of contract action is six years. Tenn. Code Ann. § 28-3-109. All of Claimant's allegations relate to the terms of the Purchase Contract itself, executed in September 1999. By the time he had filed his Claim in April 2019, nearly 20 years had passed.

Accordingly, Claimant has not plausibly alleged the Ditech breached the Purchase Contract.

## **CONCLUSION**

For the foregoing reasons, the Court sustains the Objection and disallows the Claim.

IT IS SO ORDERED.

Date:   September 27, 2024
       New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge