| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | **NOT FOR PUBLICATION** |

------------------------------------------------------- x
In re:                                                  :
                                                        :   Case No. 19-10412 (JLG)
Ditech Holding Corporation, *et al.*,                   :   Chapter 11
                                                        :
                                          Debtors.[1]   :   (Jointly Administered)
                                                        :
------------------------------------------------------- x

# MEMORANDUM DECISION AND ORDER SUSTAINING THE THIRTY-EIGHTH OMNIBUS OBJECTION TO PROOFS OF CLAIM WITH RESPECT TO THE PROOF OF CLAIM FILED BY NICHOLAS T. RUSSELL

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:    Richard Levin


NICHOLAS T. RUSSELL
*Appearing Pro Se*
101 East Potomac Street
Williamsport, Maryland 21795

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### INTRODUCTION[2]

On May 31, 2019, Nicholas T. Russell ("Claimant") filed Proof of Claim No. 1991 (the "Claim") as a priority claim in the amount of $35,000 against the Debtors in these Chapter 11 Cases.[3] On February 21, 2020, the Plan Administrator and Consumer Claims Trustee filed their Thirty-Eighth Omnibus Objection to Proofs of Claim (the "Objection"),[4] in which they sought to disallow and expunge certain claims, including the Claim, that lack merit or fail to provide a sufficient basis to support the claim's validity in the amount or priority asserted. On March 17, 2020, Claimant, acting pro se, filed a response to the Objection (the "Response"),[5] thereby adjourning the Objection. On August 1, 2024, the Consumer Claims Trustee[6] replied to the Response (the "Reply").[7]

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[3] Claimant did not identify a specific debtor in his Claim. However, Ditech Financial LLC ("Ditech") serviced Claimant's loan, evident by a letter it sent to Claimant which is annexed to the Claim. *See* Claim at 24-25. Therefore, the Court assumes that Ditech is the relevant debtor.

[4] *Thirty-Eighth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims)*, ECF No. 1884.

[5] *Opposition*, ECF No. 2400.

[6] On March 24, 2023, the Plan Administrator and Consumer Claims Trustee filed the *Consumer Claims Trustee and Plan Administrator's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4662. That motion sought to estimate the Claim at $35,000 for the purpose of setting a distribution reserve. It also asserted the Claim was improperly filed as a priority claim and sought to reclassify it as a non 363(o) Class 6 Consumer Creditor Claim, as defined by the Third Amended Plan. By order dated May 10, 2023, the Court granted the motion for the requested relief. *Order Granting Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4732. Upon the entry of that order, the Plan Administrator lost its interest in the Objection, as the Consumer Claims Trustee is solely responsible for reconciling Consumer Creditor Claims.

[7] *Reply of the Consumer Claims Trustee in Support of the Thirty-Eighth Omnibus Claims Objection to Proofs of Claim (No Basis Consumer Creditor Claims) with Respect to the Claim of Nicholas Russell (Claim 1991)*, ECF No. 5166.

Pursuant to the Claims Procedures Order,[8] Claimant's filed Response adjourned the Objection to provide time for the Court to conduct a hearing to consider the sufficiency of the Claim. At a Sufficiency Hearing, the Court employs the legal standard of review applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Claims Procedures Order ¶ 3(iv)(a).

On September 26, 2024, the Court held a Sufficiency Hearing to consider the Claim. The Consumer Claims Trustee appeared through counsel, and Claimant appeared pro se.[9] The Court heard arguments from the parties. The Court has reviewed the Claim, Objection, Response, and Reply, including all documents submitted in support thereof, and has considered the arguments made by the parties in support of their positions.

In accordance with the Rule 12(b)(6) standard and Claimant's pro se status, the Court accepted Claimant's well-pleaded factual allegations as true, drew all reasonable inferences in Claimant's favor, and liberally construed the Claim and Response to raise the strongest arguments that they suggest. However, as explained below, the Claim fails to state a claim to relief against Ditech.

Accordingly, the Court sustains the Objection and disallows the Claim.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334

---

[8] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632 (the "Claims Procedures Order").

[9] The hearing on the Claim was originally scheduled for August 29, 2024. Prior to the hearing, Claimant contacted counsel for the Consumer Claims Trustee and requested an adjournment so he could obtain counsel. On August 29, 2024, Claimant did not appear at the hearing. However, on the record of the hearing, the Court adjourned the Sufficiency Hearing until September 26, 2024. Claimant appeared at the September 26 hearing without counsel.

and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

**The Loan**

On or around September 11, 2007, Claimant executed a promissory note in favor of Bank of America, N.A. (the "Note"), [10] in the amount of $318,624.00 with a term of thirty years at a fixed interest rate of 6.875%. The Note was secured by a mortgage (the "Mortgage,"[11] together with the Note, the "Loan") on real property located at 39615 Potomac Avenue, Leonardtown, Maryland 20650 (the "Property"). On November 26, 2012, the Loan was assigned to Green Tree Servicing LLC ("Green Tree"), Ditech's predecessor.[12]

On February 18, 2013, Green Tree offered Claimant an opportunity to modify the Note through a so-called "Trial Period Plan" (the "TPP Offer").[13] The TPP Offer required Claimant to make a down payment of $10,000 by March 11, 2013, and then make three trial payments of $2,525.30 by the first of April, May, and June 2013. TPP Offer at 1. The TPP Offer warned: "If

---

[10] The Note is annexed as Exhibit A to the Reply. The Court takes judicial notice of the Note and the other documents annexed to the Reply because they are integral to the Claim. *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 57 (S.D.N.Y. 2021) ("In deciding [a] motion to dismiss, the Court is limited to the factual allegations of the Complaint, materials that are attached by the Complaint or integral thereto, and matters of which the Court may take judicial notice."); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 462 (S.D.N.Y. 2020) ("Judicial notice may be taken of documents that are 'integral to the complaint,' such that the complaint 'relies heavily upon [the documents'] terms and effect.'" (quoting *Palin v. N.Y. Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019) (alterations in original))); *Ocampo v. JP Morgan Chase Bank, N.A.*, 93 F. Supp. 3d 109, 114 (E.D.N.Y. 2015) (court may consider loan documents and loan transfer documents that are integral to the complaint on a motion to dismiss); *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (taking judicial notice "of relevant matters of public record").

[11] The Mortgage is annexed as Exhibit B to the Reply.

[12] The assignment to Green Tree is annexed as Exhibit C to the Reply.

[13] The TPP Offer is annexed as Exhibit E to the Reply. Claimant provided only the first page of the TPP Offer. *See* Claim at 26; Response at 3. For clarity, the Consumer Claims Trustee provided the offer letter in its entirety. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 234 (2d Cir. 2016) (on a motion to dismiss, court may consider entire document mentioned in complaint even if a full copy is not attached.)

4

you miss a payment or do not fulfill any other terms of your trial period, this offer will end and your mortgage will not be modified." *Id.* at 2.

Claimant alleges that he made the three requisite payments and confirmed with Green Tree's representatives over the telephone that all three payments were received. Claim at 5. He also alleges that he made a $10,000 payment on March 11, 2013. Response at 4. In a letter to Claimant, Green Tree stated that he never made a payment for May 1, 2013, and thus, the Trial Period Plan was cancelled. Claim at 8.

In November 2013, Claimant again applied for a modification. *Id.* at 18. On December 23, 2013, he was approved for a Home Affordable Modification Program ("HAMP") Trial Period Plan. *Id.* at 8, 17. On May 1, 2014, Claimant and Green Tree entered into a loan modification agreement (the "Modification").[14] Under the Modification, the new principal balance was set to $336,946.79, with a step-rate interest beginning at 2.00%. Modification ¶ 3. The Modification also extended the maturity date to September 1, 2045. *Id.*

**The Chapter 11 Cases**

On February 11, 2019, Ditech Holding Corp. and certain of its affiliates, including Ditech (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[15] The Court extended the General Bar Date for consumer borrowers to June 3, 2019

---

[14] The Modification is annexed as Exhibit D to the Reply.

[15] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

(the "Consumer Creditor Bar Date").[16]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, which went into effect on September 30, 2019.[17] The Plan Administrator and Consumer Claims Trustee are fiduciaries under the Third Amended Plan. *See* Third Amended Plan, art. I, §§ 1.130, 1.184, 1.186. The Plan Administrator is charged with winding down, dissolving and liquidating the Wind Down Estates and is provided exclusive authority to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims. *Id.* art. VII, § 7.1. The Consumer Claims Trustee, on the other hand, is responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims. *See id.* art. I, § 1.41. As such, she is exclusively authorized to object to Consumer Creditor Claims. *Id.* art. VII, § 7.1.

**The Claims Procedures Order**

The Plan Administrator and Consumer Claims Trustee are authorized to file objections seeking reduction, reclassification, or disallowance of claims. Under the Claims Procedures Order, a properly filed and served response to an objection, omnibus or otherwise, gives rise to a "Contested Claim." *See* Claims Procedures Order ¶ 3(iv). Contested Claims are resolved at a Claim Hearing, which can be scheduled as either a "Merits Hearing" or a "Sufficiency Hearing." *Id.* ¶ 3(iv)(a), (b). A Merits Hearing is an evidentiary hearing on the merits of a Contested Claim, whereas a "Sufficiency Hearing" is a non-evidentiary hearing in which the Court applies the Rule

---

[16] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[17] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

12(b)(6) legal standard to determine whether a Contested Claim states a claim to relief against the Debtors. *Id.*

**The Claim**

Claimant filed an Official Form 410, Proof of Claim for $35,000. Claim at 1.[18] Claimant asserts that the Claim is based upon "Money Loaned" and is entitled to priority under 11 U.S.C. § 507(a) because Ditech "messed up [his] payments." *Id.* at 1-2.

Claimant asserts that he made all three payments required under the TPP Offer and did not miss the May 2013 payment. *Id.* at 5. He states that Green Tree's customer service representatives verified that Green Tree had received his payments, *id.*, and that one of his payments has never been cashed or returned to him. *Id.* at 10. Claimant alleges that it was not until September 2013 that he learned that Green Tree had not received one of his payments. *Id.* at 22.

In a January 9, 2014 letter, apparently to Green Tree, Claimant stated that his modification was finally settled in December 2013, but that over $30,000 in interest was added to his account based on Green Tree's mishandling of the first modification. *Id.* at 11. In that letter, Claimant requested that his interest rate be reduced to 0% and that he be paid $10,000. *Id.* In a February 11, 2014 letter, Green Tree said it would not reduce his interest rate to 0% or pay him $10,000. *Id.* at 21.

**The Objection**

In the Objection, the Consumer Claims Trustee and Plan Administrator objected to claims they contended had no basis and sought an order from the Court disallowing and expunging such

---

[18] With the Claim, Claimant annexes correspondence to and from Ditech, or its predecessor, Green Tree, relating to a modification of the loan. Claimant also annexes his personal notes recounting telephone calls to Ditech representatives from March 2013 through December 2013 and a June 9, 2016 letter from Ditech stating that he must submit his dispute in writing. Claim at 24. It is not clear if or how this referenced dispute relates to the loan modifications.

7

claims. The Objection states that the listed claims "are not merely unsecured Consumer Creditor Claims that have been erroneously asserted in part as an administrative expense, priority, and/or secured claim, but rather are Claims that have no basis at all in their entirety based on the Debtors' books and records and the supporting documentation submitted by the Borrower, if any." Objection ¶ 13.

**The Response**

In the Response, Claimant opposes the disallowance and expungement of his Claim and summarizes his Claim as "[$]35,000 due to charging excess interest due to delays caused by Dietech [sic] losing payments due to chaos from Dietech [sic]." Response at 1. Within the Response is a letter dated May 27, 2019, in which Claimant writes:

> Ditech Lost my Payment told me not to send any payments wait to hear from Ditech it turns out there [sic] payment center was closed and relocated causing me to pay back interest and causing me a hardship $35,000.00 is a [sic] estimate could be more or less it went on for maybe a year please investigate.

*Id.* at 2. Claimant attaches statements from his checking account for March and April 2013. *Id.* at 12, 14. The statements show a payment to Green Tree on March 28, 2013, for $2,525.30. *Id.*

**The Reply**

The Consumer Claims Trustee seeks an order from the Court disallowing the Claim, arguing that it fails to state a claim for relief under Rule 12(b)(6). Claimant does not identify any legal theories, but the Consumer Claims Trustee responds to the Claim through the lens of breach of contract. Reply ¶ 33. The Consumer Claims Trustee argues that Claimant fails to state a claim that Ditech breached the terms of the TPP Offer and maintains that he has failed to allege damages. *Id.* ¶¶ 34-50. Moreover, the Consumer Claims Trustee asserts that Claimant's purported breach of contract claim is barred by the statute of limitations and that the Modification superseded the TPP Offer. *Id.* ¶¶ 51-55.

8

**Oral Argument**

At the Sufficiency Hearing, Claimant advised that he is a party to a class action lawsuit and that a year and a half ago, he was advised by mail that he had been awarded $35,000. He represented that he has since learned that payment would not be forthcoming. He complained that Ditech has gone back on its promise to pay him. Claimant did not provide documentation to support his claim. In any event, his representations do not support the contention that he has an allowed claim against the Consumer Creditor Recovery Trust.

## **LEGAL PRINCIPLES**

"A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If a party in interest objects to a proof of claim, the basis for seeking disallowance must be one that is set forth in section 502(b) of the Bankruptcy Code. *See* 11 U.S.C. § 502(b); *see also HSBC Bank USA, N.A. v. Calpine Corp.*, No. 07-cv-3088, 2010 WL 3835200, at *5 (S.D.N.Y. Sept. 15, 2010) ("All claims are allowed unless specifically proscribed by one of the nine exceptions listed in § 502(b)." (citing *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007))).

For example, under section 502(b)(1), a court will disallow a claim if it "is unenforceable against the debtor and property of the debtor, under . . . applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). A proof of claim is "prima facie evidence of the validity and amount of a claim," Fed. R. Bankr. P. 3001(f), which can be overcome if the party objecting under section 502(b)(1) "come[s] forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010) (quoting *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000)).

9

However, in a Sufficiency Hearing, the Court applies the legal standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See* Claims Procedures Order ¶ 3(iv)(a). The Rule 12(b)(6) standard requires courts to accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Green v. Dep't of Educ. of New York*, 16 F.4th 1070, 1076 (2d Cir. 2021).[19] In ruling on a Rule 12(b)(6) motion, "[t]he court's function is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'" *Havens v. James*, 76 F.4th 103, 116-17 (2d. Cir. 2023) (quoting *Festa v. Loc. 3 IBEW*, 905 F.2d 35, 37 (2d Cir. 1990)).[20] Rule 12(b)(6) "ensures that, consistent with Rule 8(a), a complaint includes 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Alharbi v. Miller*, 368 F. Supp. 3d 527, 560 (E.D.N.Y. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Accordingly, in applying the legal standards applicable to Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the Claim in light of the pleading standards under Rule 8(a).

Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard, a complaint need only "disclose sufficient information to permit the defendant to have a fair understanding of

---

[19] In doing so, the Court recognizes that Claimant is appearing pro se, and that it must construe his "submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)).

[20] "On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are 'integral' to the complaint." *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citing *Brass v. American Film Technologies*, 987 F.2d 142, 150 (2d Cir. 1993); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)). Because Sufficiency Hearings consider consumer claims, often by unrepresented claimants whose claims lack detail or do not attach pertinent supportive documentation, it has been the practice of this Court to consider the Consumer Claims Trustee's documentary submissions together with claims as if they were consolidated. The Court does so here.

what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 577 (S.D.N.Y. 2021) (quoting *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)). Further, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding what factual matter to accept as true, the Court is not required to "credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)).

A complaint states a facially plausible claim "when the . . . plead[ed] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, plausibility does not mean probability; it means that the complaint alleges "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *Twombly*, 550 U.S. at 556. Detailed factual allegations are not necessary to survive a motion to dismiss, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## **ANALYSIS**

In sum, Claimant alleges that he incurred approximately $35,000 in damages because Ditech failed to apply one of his trial modification payments, which led them to rescind the TPP Offer in February 2013. As the Consumer Claims Trustee notes, Claimant does not identify any specific legal theories. However, his factual allegations allow the Court to construe his allegations as a claim for breach of contract, and factual allegations alone are what matters. *Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 57 (2d Cir. 2012) (quoting *Albert v. Carovano*, 851 F.2d

11

561, 571 n.3 (2d Cir. 1988) (en banc)).

**Whether Claimant States a Breach of Contract Claim Against Ditech**

Claimant plausibly alleges that Debtors breached the TPP Offer. To state a claim for breach of contract under Maryland law, "a plaintiff must simply show that 'the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation.'" *WSC/2005 LLC v. Trio Ventures Assocs.*, 190 A.3d 255, 267 (Md. 2018) (quoting *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001)). Damages from the breach are not an element of the claim. *Taylor*, 776 A.2d at 651.

The Consumer Claims Trustee seems to suggest that Claimant had no right to require Green Tree to grant him a modification, even if he satisfied his obligations under the TPP Offer. *See* Reply ¶ 37. The Court disagrees.

Courts have come to various conclusions on whether trial period plan ("TPP") offers are enforceable contracts. The result depends primarily on how courts interpret the language of a given TPP offer.[21] For example, in *Thomas v. JPMorgan Chase & Co.*, the court held that no enforceable contract existed where a TPP offer explicitly stated that it did not modify loan documents and required a fully executed modification agreement. 811 F. Supp. 2d 781, 796-97 (S.D.N.Y. 2011). Although that TPP used "some misleading language" in stating that that the servicer would provide the borrower with a modification if the borrower complied with the TPP, it also "unequivocally state[d] that the TPP does not constitute a permanent modification of the original loan." *Id.* at 796.

Other courts have come to different conclusions based on similar contractual language. For

---

[21] The court in *In re Jenkins*, 488 B.R. 601, 612-17 (Bankr. E.D. Tenn. 2013) has comprehensively surveyed these cases, many of which are discussed below.

12

example, the Seventh Circuit, in *Wigod v. Wells Fargo Bank, N.A.*, rejected, based on ordinary principles of Illinois contract law, a servicer's argument that "its obligation to send [a borrower] a permanent Modification Agreement was triggered only if and when it actually sent [the borrower] a Modification Agreement." 673 F.3d 547, 563 (7th Cir. 2012). That interpretation would have rendered "an otherwise straightforward offer into an illusion." *Id.*

The Ninth Circuit agreed. In *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878 (9th Cir. 2013), that court considered whether a servicer was contractually obligated to offer a permanent mortgage modification to a borrower who complied with the requirements of a TPP offer. The Ninth Circuit noted the *Wigod* court's interpretation of the server's argument as being suspect because it implied that banks should be allowed to avoid their promises to borrowers simply by choosing not to send a signed modification agreement, even if borrowers had fulfilled all their requirements of the TPP offer. *Id.* at 883.

The Ninth Circuit emphasized that while *Wigod* applied Illinois contract law and *Corvello* dealt with California law, there was "no material difference" between the two states' laws. *Id.* at 884. Adopting the *Wigod* court's reasoning, the Ninth Circuit interpreted the TPP offer to require the servicer to offer a permanent modification to a borrower who met its obligations under a TPP offer, unless the servicer timely notified the borrower that it did not qualify for a permanent modification. *Id.*

*Wigod* and *Corvello* are well-reasoned and persuasive, but their application here depends on the parity of Maryland's contract law with the contract law at issue in those cases. In *Wigod*, the court relied on the following principles from Illinois contract law: First, the court examined whether the TPP constituted a valid offer under Illinois law. The court noted that an offer must induce a reasonable belief in the recipient that they can bind the sender by accepting. *Wigod*, 673

13

F.3d at 562. The court found that the language of the TPP, which promised to provide a permanent modification if certain conditions were met, was sufficient to create a reasonable belief. *Id.* Next, the court considered whether there was adequate consideration to support the contract. Under Illinois law, consideration can be a detriment to the offeror, a benefit to the offeree, or a bargained-for exchange. *Id.* at 563. The court determined that Wigod's promise to "agree[] to open new escrow accounts, to undergo credit counseling (if asked), and to provide and vouch for the truth of her financial information" were "cognizable legal detriments." *Id.* at 564. The court then addressed whether the contract terms were sufficiently definite to be enforceable. Illinois law requires that a contract's essential terms be definite and certain enough to ascertain the parties' agreement. *Id.* While some terms of the permanent modification were left open, the court found that the TPP was sufficiently definite because the HAMP guidelines provided a standard for determining the permanent modification terms. *Id.* at 565. The court also explained that when one party has discretion to set open terms, it must exercise that discretion reasonably, and not arbitrarily. *Id.*

The same principles of contract that the *Wigod* court applied under Illinois law also apply under Maryland law. *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 85 (4th Cir. 2016) (explaining that an offer is "the 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it'" (quoting *Prince George's Cnty. v. Silverman*, 472 A.2d 104, 112 (Md. Ct. Spec. App. 1984))); *Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 455-56 (D. Md. 2020) (stating that "[t]o be binding and enforceable, contracts ordinarily require consideration . . . [which] 'may be established by showing a benefit to the promisor or a detriment to the promisee'" (quoting *Cheek v. United Healthcare of the Mid-Atlantic, Inc.*, 835 A.2d 656, 661 (Md. 2003))); *Questar*

14

*Builders, Inc. v. CB Flooring, LLC*, 978 A.2d 651, 670 (Md. 2009) (noting that "Maryland contract law generally implies an obligation to act in good faith and deal fairly with the other party or parties to a contract" (citing *Clancy v. King*, 954 A.2d 1092, 1106 (Md. 2008))); *Julian v. Christopher*, 575 A.2d 735, 739 (Md. 1990) (recognizing that "in a lease, as well as in other contracts, 'there exists an implied covenant that each of the parties thereto will act in good faith and deal fairly with the others'" (quoting *Food Fair v. Blumberg*, 200 A.2d 166, 174 (Md. 1964))).

Applying those principles and Maryland law to the matter at hand, the first issue is whether Claimant has alleged the existence of a contract. As noted above, under Maryland law, a valid contract requires three elements: offer, acceptance, and consideration. *WSC/2005 LLC*, 190 A.3d at 267. Claimant has plausibly established all three elements.

The TPP Offer constitutes a valid offer under Maryland law. An offer is a manifestation of willingness to enter into a bargain that justifies the offeree in understanding that their assent will conclude the bargain. *Galloway*, 819 F.3d at 85. The TPP Offer states that if Claimant makes the required payments, "your mortgage will be permanently modified in accordance with the terms of your modification agreement."[22] This language clearly manifests a willingness to enter into a

---

[22] The Court thinks that Consumer Claims Trustee's reliance on *Stovall v. SunTrust Mortg., Inc.*, No. CIV.A.10-2836, 2011 WL 4402680 (D. Md. Sept. 20, 2011), apparently to argue that this language did not oblige Green Tree to potentially offer Claimant a permanent modification, is misplaced. Although that court noted that borrowers have no express or implied private cause of action under HAMP, it recognized that a plaintiff may bring a breach of contract claim that stems from a TPP offer. *Id.* at *11. However, it also noted that courts reject such claims where the breach is not "independent of HAMP." *Id.* (quoting *Bourdelais v. J.P. Morgan Chase*, No. 3:10-CV-670, 2011 WL 1306311, at *4 (E.D. Va. Apr. 1, 2011)).

The Court respectfully disagrees with this aspect of the reasoning in *Stovall*. Permitting a claimant to bring a breach of contract action based on a servicer's violation of the terms of a TPP offer only so long as they are "independent of HAMP" offers a key with no lock, since TPP offers are made pursuant to HAMP. *Id.* (citing *Allen v. CitiMortgage, Inc.*, No. CIV. CCB-10-2740, 2011 WL 3425665, at *4 (D. Md. Aug. 4, 2011)). Separately, the reasoning in *Bourdelais*, which *Stovall* quotes at length, relies upon *Wigod v. Wells Fargo Bank, N.A.*, No. 10 CV 2348, 2011 WL 250501 (N.D. Ill. Jan. 25, 2011). As explained above, the Seventh Circuit, in relevant part, reversed that decision. Again, although not binding, the Court finds the Seventh Circuit's and Ninth Circuit's decisions on this

15

bargain and invites Claimant's assent to it. As for the second element, Claimant plausibly alleges that he accepted this offer. Specifically, Claimant alleges that he accepted the offer by making the required payments under the TPP Offer. Claim at 5. Finally, the TPP Offer involves mutual consideration, thus satisfying the third element of a valid contract. Under Maryland law, consideration may be established by showing a benefit to the promisor or a detriment to the promisee. *Cherdak*, 437 F. Supp. 3d at 455-56. Here, Claimant's consideration consists of his down payment and three trial payments. This financial commitment is one beyond that for which he would be responsible under the Mortgage, and was thus a detriment to Claimant and a benefit to Green Tree. Conversely, Green Tree's consideration includes its promise to forbear from foreclosure during the trial period and to offer a permanent modification if Claimant complied with the TPP terms.

Next, the Court must determine whether Claimant has plausibly alleged that Green Tree breached its obligations under the TPP Offer. He has.

The TPP Offer presents a two-step modification process, creating distinct obligations at different stages. First, upon Claimant's acceptance of the TPP Offer, Green Tree was obligated to "not refer [his] account to foreclosure, or . . . suspend the next legal action in the foreclosure proceedings." TPP Offer at 1. This initial obligation required Green Tree to forbear from foreclosure while Claimant attempted to fulfill the TPP requirements. This step is not at issue.

The second step involved Green Tree's obligation to offer a permanent modification upon Claimant's successful completion of the TPP. Specifically, the TPP Offer stated, "Once [Claimant] ha[s] successfully made each of the payments above by their due dates, [Claimant]

---

issue persuasive, and the principles under which those decisions were reached are equally applicable under Maryland contract law. For those reasons, the Court finds the Consumer Claims Trustee's argument unavailing.

16

ha[s] submitted two signed copies of [the] modification agreement, and we have signed the modification agreement, your mortgage will be permanently modified in accordance with the terms of your modification agreement." *Id.* at 2. This language plainly created an obligation whereby Green Tree promised to offer a permanent modification if Claimant fulfilled the TPP Offer's requirements.[23]

Regarding the breach of these obligations, Claimant alleges that he made the three requisite payments and confirmed with representatives over the telephone that all three were received. Claim at 5. According to the terms of the TPP Offer, this triggered Green Tree's obligation to offer a permanent modification. Instead, Claimant alleges that Green Tree wrongly claimed he missed the May 2013 payment and cancelled the TPP Offer as a result. *Id.* at 8.

With his Claim and Response, Claimant includes handwritten notes indicating that a Green Tree representative confirmed receipt of all payments under the TPP Offer. *Id.* at 28. Additionally, Claimant's notes mention a specific check number for the May payment, *id.* at 40, and a bank statement showing a payment to Green Tree on March 28, 2013, for $2,525.30, the exact amount required under the TPP. Response at 12, 14.[24]

Taking these factual allegations as true, as required at this stage of the proceedings, Claimant has plausibly alleged that Green Tree breached its obligation to offer a permanent modification after Claimant fulfilled the requirements under the TPP Offer. By cancelling the

---

[23] The Court has no need to go beyond the facts alleged to consider whether Green Tree could have complied with its obligations under the TPP Offer by determining, for reasons other than Claimant's failure to pay the trial payments, that Claimant was ineligible for a permanent modification.

[24] The Consumer Claims Trustee's argues that "Claimant offers no records to show that the payment was made" and "provides no copies of the check, no mailing receipt, no corresponding bank statement, no evidence of returned mail." Reply ¶ 36. But this is a Sufficiency Hearing—the Court does not resolve issues of fact at a Sufficiency Hearing. Instead, it applies the same standard as it would on a motion to dismiss. Claims Procedures Order § 3(iv)(a). "The Court cannot resolve such a factual dispute on a motion to dismiss but must take the plaintiffs' allegations as true." *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 347 (S.D.N.Y. 2014). All Claimant must do to is state what facts entitle him to relief. Fed. R. Civ. P. 8(a); *Iqbal*, 556 U.S. at 678.

TPP Offer even though Claimant pleaded his satisfaction of its terms, Claimant has plausibly alleged that Green Tree breached the terms of the TPP Offer.[25]

However, Claimant has no remedy for the breach. Claimant's breach of contract claim is barred by the statute of limitations. In general, under Maryland law, "[a] civil action at law shall be filed within three years from the date it accrues." Md. Code Ann., Cts. & Jud. Proc. § 5-101. To determine when "a cause of action for breach of contract accrues," the court must determine "when the contract is breached, and when 'the breach was or should have been discovered.'" *Patriot Constr., LLC v. VK Elec. Servs., LLC*, 290 A.3d 1108, 1120 (Md. Ct. Spec. App. 2023) (quoting *Boyd v. Bowen*, 669, 806 A.2d 314 (Md. 2002)). This date is left to "judicial determination, and may be a question of law, a question of fact, or a mixed question of law and fact." *Boyd v. Bowen*, 806 A.2d 314, 333 (Md. Ct. Spec. App. 2002).

Ordinarily, courts do not consider a statute of limitations defense on a motion to dismiss. *State Auto. Mut. Ins. Co. v. Lennox*, 422 F. Supp. 3d 948, 964 (D. Md. 2019). However, where the limitations period can be gleamed from a claimant's factual allegations, the court may do so. *Cf. id.* (explaining that "[w]hen it appears on the face of the complaint that the limitation period has run, a defendant may properly assert a limitations defense through a Rule 12(b)(6) motion to dismiss." (alteration in original) (quoting *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 985 (D. Md. 2002))).

---

[25] The Consumer Claims Trustee's Reply includes a section with the heading "The HAMP Modification Superseded the Standard Modification Offer," that states "Claimant acknowledges that despite any dispute he had with respect to the consummation of the Standard Modification Offer, he agreed to the terms of the HAMP Modification, even before signing it." Reply ¶ 54. The Reply states, citing to the wrong legal standard, that "[t]he Claimant has failed to meet her/his/their burden of proof as they has/have provided no specific factual allegations that would support their conclusory statements." *Id.* ¶ 56 (citing *In re Residential Cap., LLC*, No. 15 CIV. 3248, 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *In re Motors Liquidation Co.*, No. 09-50026 REG, 2012 WL 1886755, at *3 (S.D.N.Y. May 21, 2012)). However, whether Claimant's eventual HAMP modification superseded the terms of the TPP Offer is unrelated to whether he accrued a claim upon Green Tree's breach of the TPP Offer.

The limitations period is clear from Claimant's factual allegations, and his Claim exceeds it. At the latest, Claimant learned that he was not entitled to the TPP Offer in September 2013. *See* Claim at 33 ("Christopher Banks called me said I'm missing payment and my agreement was violated" and "supervisor he called back wants bank statements I cannot prove I made payments."). Thus, the limitations period was three years from this date. Claimant does not claim to have filed an action for Green Tree's breach of the TPP Offer by September 2016. Therefore, the Claim is time-barred.

## CONCLUSION

For the foregoing reasons, the Court sustains the Objection and disallows the Claim.

IT IS SO ORDERED.

Dated: September 27, 2024
      New York, New York

/s/ *James L. Garrity, Jr.*
HONORABLE JAMES L. GARRITY, JR.
UNITED STATES BANKRUPTCY JUDGE