| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | **NOT FOR PUBLICATION** |

```
------------------------------------------------------ x
  In re:                                                :
                                                        :   Case No. 19-10412 (JLG)
  Ditech Holding Corporation, et al.,                   :   Chapter 11
                                                        :
                                      Debtors.¹         :   (Jointly Administered)
                                                        :
------------------------------------------------------ x
```

## MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS TRUSTEE'S SECOND OMNIBUS OBJECTION WITH RESPECT TO THE PROOF OF CLAIM FILED BY KATHERINE M. ECKENROD

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:     Richard Levin

KATHERINE M. ECKENROD[2]
*Appearing Pro Se*
P.O. Box 5411
Austin, Texas 78763

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

[2] Ms. Eckenrod is acting pro se herein and, in that capacity, filed the Claim and Response to the Objection. As set forth below, Ms. Eckenrod did not appear at the Sufficiency Hearing. She did not request the Court adjourn the hearing or otherwise seek an accommodation from the Court with respect to the hearing.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[3]

Katherine M. Eckenrod (the "Claimant") timely filed Proof of Claim No. 21059 (the "Claim") as an unsecured claim in the amount of $18,040.11 against Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) ("Ditech"). The Consumer Claims Trustee filed her Second Omnibus Objection (the "Objection")[4] seeking to disallow certain claims, including the Claim, that she contends do not contain sufficient information or documentation to establish their underlying merits. Claimant, who is proceeding pro se in this contested matter, filed a response to the Objection (the "Response").[5] The Consumer Claims Trustee replied to the Response (the "Reply").[6]

Pursuant to the Claims Procedures Order,[7] Claimant's filed Response adjourned the Objection to enable the Court to conduct a Sufficiency Hearing on the Claim. At the Sufficiency Hearing, the Court employs the legal standard of review applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Claims Procedures Order ¶ 3(iv)(a). On September 26, 2024, the Court held a Sufficiency Hearing to consider the Claim. The Consumer Claims Trustee appeared

---

[3]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[4]   *Consumer Claims Trustee's Second Omnibus Objection to Proofs of Claim (Insufficient Documentation Unsecured Consumer Creditor Claims)*, ECF No. 1963.

[5]   *Response to the Consumer Claims Trustee's Second Omnibus Objection to Proofs of Claims – Insufficient Documentation Unsecured Consumer Creditor Claims*, ECF No. 2510.

[6]   *Reply of the Consumer Claims Trustee in Support of the Second Omnibus Objection with Respect to the Claim of Katherine Eckenrod (21059)*, ECF No. 5201.

[7]   *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632 (the "Claims Procedures Order").

through counsel, but Claimant did not appear at the hearing. The Court did not hear argument from the Consumer Claims Trustee.

The Court has reviewed the Claim, Objection, Response, and Reply, including all documents submitted in support thereof. In making its determination, the Court accepted Claimant's well-pleaded factual allegations as true, drew all reasonable inferences in Claimant's favor, and liberally construed the Claim and Response to raise the strongest arguments they suggest. As explained below, the Court finds that the Claim fails to state plausible claims for relief against Ditech. Accordingly, the Court sustains the Objection and disallows the Claim.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

On or around February 7, 2003, Claimant executed a promissory note in favor of Heritage Mortgage, Inc. in the amount of $204,000.00 (the "Note").[8] The Note was secured by a mortgage

---

[8] The Note is annexed as Exhibit A to the Reply. The Court takes judicial notice of the Note and the other documents annexed to the Reply because they are integral to the Claim and publicly available. *Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 632 F. Supp. 3d 402, 436 (S.D.N.Y. 2022) (holding that on a Rule 12(b)(6) motion to dismiss, courts can consider "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are 'integral' to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." (quoting *LeChase Constr. Servs., LLC v. Escobar Constr., Inc.*, No. 18-cv-1021, 2019 WL 2743637, at *6 & n.4 (N.D.N.Y. July 1, 2019))); *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022) (stating that in deciding Rule 12(b)(6) motions to dismiss, courts must consider the entire complaint, documents incorporated by reference, and other matters of which a court can take judicial notice); *Ocampo v. JP Morgan Chase Bank, N.A.*, 93 F. Supp. 3d 109, 114 (E.D.N.Y. 2015) (finding the court properly considered loan documents, loan transfer documents, and filings in a related state court action on a Rule 12(b)(6) motion to dismiss because they were integral to the complaint).

3

(the "Mortgage,"[9] together with the Note, the "Loan") on real property located at 11304 Nutwood Cove, Austin, Texas 78726 (the "Property").

On November 24, 2010, Claimant filed a voluntary petition under chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas (the "Chapter 13 Bankruptcy").[10] At the time of Claimant's bankruptcy, CitiMortgage, Inc. ("CitiMortgage") was servicing the Loan. It filed an amended proof of claim against Claimant asserting a secured claim in the amount of $159,221.34, with arrears of $21,946.83 (the "CitiMortgage Claim").[11] With its amended claim, CitiMortgage attached a referral escrow analysis dated March 23, 2011, reflecting that $13,379.87 of the stated arrears consisted of a pre-petition escrow shortage and payments to the escrow account had not been made since at least July 2010. *See* CitiMortgage Claim at 34-35.

In April 2013 and March 2014, CitiMortgage filed notices of mortgage payment change in the Chapter 13 Bankruptcy, each of which contained the annual escrow analysis for the corresponding year (respectively, the "2013 Escrow Statement"[12] and "2014 Escrow Statement"[13]).

On September 29, 2014, the chapter 13 trustee filed a notice of final cure payment to confirm that the total arrearage of $21,946.83 from the CitiMortgage Claim had been satisfied and the ongoing monthly mortgage payments were being paid monthly by Claimant. *See* Bankruptcy

---

[9]   The Mortgage is annexed as Exhibit B to the Reply.

[10]  *See In re Eckenrod*, No. 10-13257 (Bankr. W.D. Tx. Nov. 24, 2010) (the "Chapter 13 Bankruptcy").

[11]  The CitiMortgage Claim is annexed as Exhibit E to the Reply.

[12]  The 2013 Escrow Statement is annexed as Exhibit F to the Reply.

[13]  The 2014 Escrow Statement is annexed as Exhibit G to the Reply.

4

Docket at 14 (docket entry 96).[14]  On or around October 11, 2014, CitiMortgage transferred its claim to Green Tree Servicing, LLC ("Green Tree") because Green Tree began servicing Claimant's loan as of September 1, 2014.[15]  According to the claims register in the Chapter 13 Bankruptcy, on or around October 20, 2014, Green Tree filed a response to the notice of final cure payment confirming that all pre-petition arrears had been paid in full.

On November 28, 2014, the bankruptcy court for the Western District of Texas entered a discharge order and on December 30, 2014, the chapter 13 trustee filed her final report. *See* Bankruptcy Docket at 14 (docket entries 106, 108).  The Chapter 13 Bankruptcy was closed soon thereafter.

**The Chapter 11 Cases**

On February 11, 2019, Ditech and certain of its affiliates (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[16]  The Court extended the General Bar Date for consumer borrowers to June 3, 2019.[17]

---

[14]  The docket for the Chapter 13 Bankruptcy is annexed as Exhibit D to the Reply (the "Bankruptcy Docket").

[15]  The claim transfer is annexed as Exhibit J to the Reply.  The claim transfer includes a Notice of Servicing Transfer.

[16]  *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[17]  *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

On September 26, 2019, the Debtors confirmed their Third Amended Plan, which became effective on September 30, 2019.[18] The Consumer Claims Trustee is appointed under the Third Amended Plan as a fiduciary responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims. *See* Third Amended Plan, art. I, § 1.41. The Consumer Claims Trustee has the exclusive authority to object to Consumer Creditor Claims. *See id.* art. VII, § 7.1.

**The Claims Procedures Order**

The Claims Procedures Order authorizes the Consumer Claims Trustee to file Omnibus Objections seeking reduction, reclassification, or disallowance of claims on the grounds set forth in Bankruptcy Rule 3007(d) and additional grounds set forth in the Claims Procedures Order. *See* Claims Procedures Order ¶ 2(i)(a)–(h). A properly filed and served response to an objection gives rise to a "Contested Claim." *Id.* ¶ 3(iv). A Contested Claim is resolved at a Claim Hearing which the Consumer Claims Trustee has the option to schedule as either a "Merits Hearing" or a "Sufficiency Hearing." *Id.* ¶ 3(iv)(a), (b). A Merits Hearing is an evidentiary hearing on the merits of a Contested Claim, and a Sufficiency Hearing is a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors under the legal standard employed for a Rule 12(b)(6) motion to dismiss. *Id.* ¶ 3(iv)(a).

---

[18] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

**The Claim**

The Claim asserts an unsecured claim against Ditech in the amount of $18,040.11 based on an "[u]nwarranted levy of charge on escrow." Claim at 2. Claimant filed the Proof of Claim, Official Form 410 but did not provide any information or documentation in support of the Claim.

**The Objection**

The Consumer Claims Trustee objects to the Claim and asks the Court for an order disallowing it. The Consumer Claims Trustee asserts the Claim lacks the information or documentation necessary to substantiate the Claim and thus, is not a valid pre-petition claim against the Debtors. Objection ¶ 8; Objection, Ex. A at 4.

**The Response**

The Response summarizes the basis of the Claim as the "[a]ssignment of undocumented escrow fees totaling $18,040.11 to the Claimant's escrow account by Ditech Holding Corporation, et al." Response at 1. In support, Claimant annexes an incomplete annual escrow account disclosure statement from Ditech Financial LLC dated July 18, 2017. Response at 2-3.[19] It shows a shortage of $18,040.11 but does not provide any facts or legal claims in support of the contention that the shortage was erroneously levied or that Claimant ever paid it. The statement provides that Claimant's monthly payment will increase as of September 1, 2017, and that the escrow account has a shortage of $18,040.11. Response at 2. It provides Claimant with the option to either pay the entire shortage now or spread payment out over twelve months. Response at 2.

---

[19] For purposes of clarity, the Consumer Claims Trustee attached the document in its entirety. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 234 (2d Cir. 2016) (on a motion to dismiss, court may consider entire document mentioned in complaint even if a full copy is not attached.) The complete escrow statement dated July 18, 2017 (the "2017 Escrow Statement") is annexed as Exhibit C to the Reply.

7

**The Reply**

The Consumer Claims Trustee argues that Claimant neither satisfies the pleading standards of Rule 8(a) of the Federal Rules of Civil Procedure ("Rule 8(a)") nor states a cognizable cause of action entitled to relief under Rule 12(b)(6). Reply ¶¶ 25-40. While the Consumer Claims Trustee asserts the Claim is not adequately pleaded, she acknowledges that Claimant is a pro se litigant and thus liberally construes the Claim. Claimant's allegations relate to her escrow fees and the Mortgage sets forth the parties' obligations regarding payment of property taxes and other escrow items. Therefore, the Consumer Claims Trustee interprets the Claim as asserting a claim for breach of contract. Reply ¶ 28.

The Consumer Claims Trustee argues that Ditech did not breach the Mortgage because it complied with the Real Estate Settlement Procedures Act ("RESPA") in calculating the necessary funds for Claimant's escrow account as required by the terms of the Mortgage. Reply ¶¶ 30-38. As support, she relies on escrow analyses, including the 2017 Escrow Statement, and tax records. She also reviews documents CitiMortgage filed in the Claimant's Chapter 13 Bankruptcy. The Consumer Claims Trustee also states that Claimant has failed to demonstrate her performance under the contract, Ditech's breach, or any damages associated with the alleged breach of contract. Reply ¶¶ 38-39. Finally, the Consumer Claims Trustee argues that any such claim is barred by the applicable statute of limitations. Reply ¶¶ 36-37.

**Motion to Estimate**

On March 23, 2023, the Consumer Claims Trustee filed a motion to estimate claims for purposes of setting a reserve and to classify those claims as non-363(o) claims as defined in the Third Amended Plan.[20] The Consumer Claims Trustee estimated the Claim amount at $18,040.11.

---

[20] *Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4650.

Claimant did not object or respond to the motion and on May 11, 2023, the Court entered an ordering granting the requested relief.[21]

## LEGAL PRINCIPLES

The allowance and disallowance of proofs of claims filed against a bankruptcy estate are governed by section 502 of the Bankruptcy Code. Section 502(a) states a claim filed under section 501 will be deemed allowed if no party in interest objects to the claim. 11 U.S.C. § 502(a). If a party in interest does object, it must do so under one of the enumerated grounds set forth in section 502(b). *Id.* § 502(b)(1); *Harbinger Cap. Partners LLC v. Ergen (In re LightSquared Inc.)*, 504 B.R. 321, 340 n.26 (Bankr. S.D.N.Y. 2013) ("The Bankruptcy Code could not be more clear: a claim, proof of which is filed, shall be allowed unless it falls within one of the exceptions set forth in Section 502(b)." (quoting *Dove–Nation v. eCast Settlement Corp. (In re Dove–Nation))*, 318 B.R. 147, 152 (8th Cir. BAP 2004))). Under section 502(b), the Court shall determine and allow the amount of a claim subject to an objection as of the bankruptcy petition date unless "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . ." 11 U.S.C. § 502(b)(1).

At a Sufficiency Hearing, the Court applies the legal standard for a Rule 12(b)(6) motion to dismiss to evaluate the Claim. *See* Claims Procedure Order ¶ 3(iv)(a). Accordingly, the Court will disallow the Claim if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In applying the Rule 12(b)(6) standard, the Court limits its review to the Claim and Response, the documents incorporated by reference or relied upon, and matters of which it

---

[21] *Order Granting Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4733.

9

may take judicial notice. *DLJ Mortg. Cap., Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 233 (E.D.N.Y. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).[22]

Rule 12(b)(6) "ensures that, consistent with Rule 8(a), a complaint includes 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Alharbi v. Miller*, 368 F. Supp. 3d 527, 560 (E.D.N.Y. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As such, the Court assesses the sufficiency of factual allegations in light of the pleading standards under Rule 8(a). In doing so, the Court assumes all of Claimant's factual allegations are true and draws all reasonable inferences in her favor. *Aquino v. Uber Techs., Inc.*, 671 F. Supp. 3d 338, 344 (S.D.N.Y. 2023).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it states a claim that is plausible, that is, a claim in which the factual allegations "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[The] plausibility pleading standard is forgiving, [but] it is not toothless." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020). To state a plausible claim, it is not necessary for the factual allegations to contain significant details, but they cannot be conclusory statements or merely provide "a sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678. The plausibility standard "considers 'the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable.'" *Kominis v. Starbucks Corp.*, 692 F. Supp. 3d 236, 245 (S.D.N.Y. 2023) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)).

---

[22] Because Sufficiency Hearings consider consumer claims, often by unrepresented claimants whose claims lack detail or do not attach pertinent supportive documentation, it has been the practice of this Court to consider the Consumer Claims Trustee's documentary submissions together with claims as if they were consolidated. The Court does so here.

Additionally, when evaluating the Claim, the Court will afford some leniency to Claimant as a pro se litigant and construe her submissions as raising the strongest arguments suggested. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the Court still requires Claimant to plead facts sufficient to assert a plausible claim. *Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 434 (S.D.N.Y. 2023) ("[P]ro se plaintiffs are not relieved of the requirement that they plead enough facts so that their claims are plausible.").

## ANALYSIS

### Whether the Claim Satisfies the Rule 8(a) Pleading Standards

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the adverse party has "notice of the nature of the claim against it, including which of its actions gave rise to the claims upon which the complaint is based." *E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 32 (2d Cir. 2006). To satisfy the pleading standard under Rule 8(a)(2), the Claim and Response must set forth sufficient factual allegations to enable the Court to reasonably draw an inference that Ditech is liable for the alleged wrongdoing, or put simply, to state a claim against Ditech that is plausible on its face. *Twombly*, 550 U.S. at 570.

While Rule 8(a) "does not require 'detailed factual allegations,'" the pleading must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "In accordance with the liberal pleading standards of Rule 8, 'a plaintiff must disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369, 384 (Bankr. S.D.N.Y. 2007) (quoting *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir. 2000)).

11

Accordingly, dismissal of a pleading under Rule 8 "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d. Cir. 1988).

Claimant does not identify legal theories in support of the Claim. However, she clearly provides what she perceives to be improper escrow charges and provides corresponding documentation in support of the Claim. Construing the Claim liberally and in the light most favorable to the Claimant, this Court finds Claimant has satisfied the Rule 8(a) requirements. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("A document filed pro se is 'to be liberally construed', and 'a pro se complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))).

**Whether the Claim States a Claim for Relief Against Ditech**

Claimant complains of unwarranted and undocumented escrow charges on her account as reflected in the 2017 Escrow Statement. Claim at 2; Response at 1. The Mortgage provides the parties' obligations with regard to the escrow account, so the Consumer Claims Trustee interprets Claimant's allegations as a claim for breach of the mortgage contract. The Court agrees with the Consumer Claims Trustee's construction. Since Claimant does not challenge the characterization of her Claim, the Court analyzes the Claim as asserting a breach of contract under Texas law.[23]

To state a claim for breach of contract under Texas law, the claimant must allege facts demonstrating that "(1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). A cause

---

[23] *See* Mortgage ¶ 15 ("This Security Instrument shall be governed by federal law and the laws of Texas.").

of action accrues "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997) (citing *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)). Generally, a breach of contract claim accrues either "when the contract is breached or when the claimant has notice of facts sufficient to place him on notice of the breach." *Middaugh v. InterBank*, 528 F. Supp. 3d 509, 538 (N.D. Tex. 2021) (quoting *Slusser v. Union Bankers Ins. Co.*, 72 S.W.3d 713, 717 (Tex. App. 2002).

The Mortgage is the governing contract. It sets forth the parties' obligations regarding the payment of property taxes and other escrowed items. The second and third elements require the Court to consider each party's respective contractual obligations and performance. Under the terms of the Mortgage, the escrow account is utilized to provide payments for items such as taxes and assessments, leasehold payments, and premiums for insurance. Mortgage ¶ 3, at 4. Unless the lender waives borrower's obligation, the funds for the escrow account are collected by the lender from the borrower's monthly installment payments. Mortgage ¶ 3, at 4-5. Specifically, it provides:

> Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items…
>
> If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments.

Mortgage ¶ 3, at 5.

Since the Mortgage explicitly incorporates the Real Estate Settlement Protections Act ("RESPA"), a breach of contract claim can be premised on sufficiently pleaded allegations that

13

Ditech violated RESPA by improperly levying charges to Claimant's escrow account. *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 196 (5th Cir. 2016) (citing *Smith v. JPMorgan Chase Bank, N.A.*, 519 F. App'x 861, 864 (5th Cir. 2013)); *Mitchem v. Mortg. Elec. Registration Servs., Inc.*, No. 12-CV-1762, 2013 WL 3870038, at *5 (N.D. Tex. July 26, 2013), *aff'd sub nom. Mitchem v. Fed. Nat. Mortg. Ass'n*, 571 F. App'x 298 (5th Cir. 2014) (construing similar language as expressly incorporating RESPA for a breach of contract claim). Regulation X, the corresponding regulations to RESPA provisions, sets forth the requirements of a loan servicer, such as Ditech, in relation to an escrow account. 12 C.F.R. § 1024.17. Mortgage servicers are permitted to charge the borrower a sum equal to one-twelfth of the total annual escrow payments which the servicer anticipates advancing on the borrower's behalf. *Id.* § 1024.17(c)(1)(ii). The servicer is entitled to maintain a cushion of funds in the escrow account of no greater than one-sixth of the estimated total annual payments. *Id.* In establishing an ongoing escrow payment, the servicer may base that amount on the prior year's escrow distribution. *Id.* § 1024.17(c)(7). If, after running an escrow analysis computation, a servicer discovers an escrow shortage that is greater than one month's escrow account payment, the servicer may require the borrower to repay the shortage over a twelve-month period. *Id.* § 1024.17(f).

According to the 2017 Escrow Statement, Claimant's escrow account had a negative balance of $10,792.47 as of April 2016, which Claimant paid down to $6,400.31 by November 2016. 2017 Escrow Statement at 2. The county property taxes in the amount of $9,044.18 were paid on December 28, 2016. *Id.* Once Ditech advanced the property taxes of $9,044.18 in December 2016, the negative balance increased to $14,895.47. *Id.*

The amount paid for property taxes for the Property in December 2016 was $9,044.18 and Ditech anticipated taxes in the same amount for 2017. *Id.* Based on that estimate, Ditech increased

14

Claimant's monthly escrow payment from $549.02 to $753.68.[24] *Id.* In accordance with RESPA, Ditech was permitted to include a two-month cushion in the escrow account of $1,507.32 ($753.68 multiplied by 2, or one-sixth the estimate of total annual payments). In projecting the next computation year, Ditech anticipated a negative escrow balance of $16,532.75 once the 2017 property taxes were paid. *Id.* With the cushion, the total projected shortage was $18,040.11. Ditech attempted to collect the shortage and gave Claimant the option of paying that shortage in full or in twelve monthly payments of $1,503.34. *Id.* at 1.

Under the terms of the Mortgage, Ditech was permitted to require funding of the escrow account and Claimant was obligated to keep the account liquid and current. Nothing on the face of the 2017 Escrow Statement reflects any errors or supports Claimant's assertion that she was being overcharged. Rather, the calculations are consistent with RESPA requirements when considering the balance on the account as of April 2016 was more than negative $10,000. *See* 12 C.F.R. § 1024.17(f). While the Claimant did make some payments, they were insufficient to overcome the arrearage and Claimant has not alleged any facts that the balance as of April 2016 was inaccurate. Claimant has also failed to provide any support that she performed under the Mortgage or for her contention that Ditech failed to perform its obligations. As such, Claimant cannot maintain a breach of contract claim against Ditech.

Even had Claimant adequately pleaded that she performed and Ditech breached the Mortgage, she nonetheless fails to state a claim for relief because she has not alleged facts demonstrating that she suffered any damages. To recover contract damages, Claimant must show a pecuniary loss as the result of a breach. *Abraxas Petroleum v. Hornburg*, 20 S.W.3d 741,758 (Tex. App. 2000). Attaching the escrow statement alone does little to illustrate damages

---

[24] $9,044.18 divided by 12 = $753.68 per month. *See* 12 C.F.R. § 1024.17(c)(1)(ii).

proximately caused by Ditech's breach. "[T]he absence of a causal connection between the alleged breach and damages sought will preclude recovery." *AZZ Inc. v. Morgan*, 462 S.W.3d 284, 289 (Tex. App. 2015).

## **CONCLUSION**

For the foregoing reasons, the Court sustains the Objection and disallows the Claim.

IT IS SO ORDERED.

Dated: September 30, 2024
      New York, New York

/s/ *James L. Garrity, Jr.*
HONORABLE JAMES L. GARRITY, JR.
UNITED STATES BANKRUPTCY JUDGE
