JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
RLevin@jenner.com
Richard Levin

*Attorneys for the Consumer Claims Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                       :
In re                                                   :            Chapter 11

DITECH HOLDING CORPORATION, et al.,    :            Case No. 19-10412 (JLG)

                Debtors.[1]                           :            (Jointly Administered)

                                                        :            Related Docket Nos. 2318
------------------------------------------------------------X

## RESPONSE OF THE CONSUMER CLAIMS TRUSTEE
## TO THE SUR-REPLY OF DEBORAH WARNER (CLAIM 22916)

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "**Third Amended Plan**"), which created the Wind Down Estates. On February 22, 2022, the Court entered the Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief (ECF No. 3903) (the "**Closing Order**"). Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "**Remaining Wind Down Estate**") (Case No. 19-10412 (JLG) remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

The Consumer Claims Trustee submits this reply (the "**Reply in Response to Sur-Reply**") in support of the *Consumer Claims Trustee's Twentieth Omnibus Objection to Proofs of Claim (Insufficient Documentation Unsecured Consumer Creditor Claims)* (ECF No. 2318), filed on May 8, 2020 (the "**Twentieth Omnibus Objection**") and the *Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee' Twentieth Omnibus Objection to Proofs of Claim with Respect to the Claim of Deborah Warner* (ECF 5222) (the "**Reply**"). The Consumer Claims Trustee respectfully represents as follows:

### Preliminary Statement

1. This Claim is based upon Claimant's allegation that Ditech improperly accused her of not paying her taxes.. In her Sur-Reply, Claimant provides statements to show she never defaulted on her escrow.

### Substantive Background and Summary of Argument

2. On or about August 23, 2007, Deborah Warner[2] (hereafter "**Claimant**") executed a promissory note in favor of Homecomings Financial, LLC (f/k/a Homecomings Financial Network, Inc.) in the amount of $256,000.00 (the "**Note**"). The Note was secured by a mortgage (the "**Mortgage**") on two separate parcels located at 24864 State Highway 44, Millville, CA 96062 ("the **Property**") (together the Note and Mortgage are the "**Mortgage Loan**"). These included a parcel identified by parcel number 093-280-017-000 ("**Parcel A**"), and a parcel identified by parcel number 093-100-013-000 ("**Parcel B**").

---

[2] Both the Note and Mortgage are executed by Claimant and Gary Paul Warner; the Claim is filed in Claimant's name alone.

2

3. The crux of Claimant's complaint is she never defaulted on her escrow payments yet Ditech failed to pay her property taxes for five years, and erroneously added those costs on to her mortgage. Response at 1. Claimant also acknowledges that, around June 2018, Ditech advanced $13,163.88 in property tax payments on Parcel B, which represented unpaid taxes for the years 2012 through and including 2016. *Id.* at 3-5. She seeks recovery of the entire $13,163.88, plus additional damages of $15,508.16.[3]

4. The Trustee construed the Claims as a de facto breach of contract claim. Under that analysis, Ditech was permitted by the terms of the Mortgage contract to advance payment of the delinquent property taxes if Claimant failed to do so. Claimant provided no information or allegation to support that she paid the property taxes. Therefore, she could not show that she was damaged by Ditech's advancing of the property taxes which were duly owed. In her Sur-reply, Claimant generally suggests that she never failed to make an escrow payment and that her ex-husband was responsible for the delinquencies which forced her into foreclosure.

5. For ease of reference, the Trustee addresses the issues raised in the Sur-Reply in the same order.

### A. The Claimant Fails to Introduce Any New Information in the Sur-reply to Support a Plausible Claim Under Rule 12(b)(6)

6. In her Claim, Claimant lists the basis of her claim as "Contract/Executory Contract". Claim at 2. In her Response, she asserts that Ditech did not pay the property taxes for five years and then sought reimbursement from her after

---

[3] Claimant seeks total damages of $28,672.04, itemized as follows (1) $13,163.88 advanced by Ditech for her property taxes (2) $3,150.24 in payments made to a paralegal, (3) $257.57 in miscellaneous costs, and (4) $12,100.35 in uncategorized damages. Response at 2.

3

satisfying the tax arrears. These bare-bones assertions do not present sufficient facts to state a claim for relief that is plausible on its face. Nothing submitted with the Sur-reply provides sufficient additional facts to state a claim for relief.

    i.    **The Foreclosure**

    7.    In her Response, Claimant writes, "[W]hen the new mortgage co. brought [sic] us (Shellpoint) they sent me a notice of foreclosure for non-payment for 6 months". Response at 1. In the Reply, the Trustee construed this sentence to mean that Shellpoint had filed a foreclosure against Claimant. Reply at 4. In her Sur-reply, Claimant clarifies that Shellpoint never sent her a foreclosure notice, but Ditech did back in 2016. Sur-reply at 1. After receiving this foreclosure, she claims, she took her ex-husband back to court to regain possession of the property. *Id.*

    8.    She attaches a Minute Order from the Shasta County Superior Court dated May 31, 2016, granting Claimant exclusive use of the Property. Sur-reply at 3. At that time, Claimant represented to the court that her husband owed $5,000 in mortgage arrears and $5,000 in delinquent property taxes. *Id.* She claimed there was no homeowner's insurance on the Property. *Id.*

    9.    An expert witness testified that the Property was in poor condition. *Id.* The Property had previously been listed for sale but according to the witness, was priced too high and had received no interested buyers. *Id.* The witness further testified that neither Claimant nor her husband had been willing to lower the sale price. *Id.* The witness suggested it may be appropriate to do a short sale. *Id.* The Court ordered Claimant's husband to vacate the Property by June 24, 2016 and directed Claimant to contact the mortgage company to find out the remaining balance. *Id.*

10. Claimant attaches these family court orders to explain that it was not the delinquent property taxes that forced her into foreclosure, but her divorce. Sur-reply at 1. Unfortunately, it does not matter. The status of Claimant's divorce did not change the obligations of both Claimant and her now former husband to continue to perform under the terms of the Mortgage. All that the Minute Order establishes is that Claimant knew the property was in substantial arrears back in 2016 and that both her realtor and the Court suggested a short sale as a viable resolution option.

ii. **The Billing Statements**

11. Claimant contends that she never defaulted on her escrow and paid it every month. Sur-reply at 2. In support, she cites to the attached billing statements issued between October 16, 2017 and November 18, 2019. *Id.* at 15-43 Although the billing statements appear to be chronologically consecutive, Claimant's handwritten notes regarding checks paid are not always consistent with the amount credited to her account on the following month's statement. For example, on the statement dated February 15, 2018, Claimant's handwritten note indicates that she wrote check #5006 in the amount of $1,378.96 on March 1, 2018. *Id.* at 23. The next statement provided by Claimant, dated March 16, 2018, does not show a credit for the March 1, 2018 payment in the "Transaction Activity Since Last Statement" section. *Id.* at 25. On the right-hand side of the March 16, 2018 statement in the "Explanation of Amount Due" column under the "Delinquency Notice" heading, the statement shows that a payment received on March 12, 2018 was applied to the payment due November 1, 2017. *Id.*

12. It is therefore clear based on a review of the billing statements provided by Claimant that there are missing statements. Claimant does not attach every

billing statement to her pleadings, and they are not available in the public record. However, her Sur-reply relies on the billing statements in an effort to establish her argument that she made all of her payments towards escrow and that Ditech's assessment of the escrow deficiency was erroneous. In an effort to ensure that Claimant's payments during the time period were properly credited, the Trustee accessed the periodic statement history from October 16, 2017 through November 18, 2019.

13. Though courts generally may not consider material extraneous to the complaint on a motion to dismiss due to lack of notice to the plaintiff, where a plaintiff has actual notice of the materials and has relied on those materials in framing her complaint, that material may be considered. *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991). Mere notice or possession of the materials to the plaintiff is not enough—instead, plaintiff must have relied on the terms and effects of a document in drafting her complaint. *Chambers v. Time Warner, Inc.,* 282 F. 3d 147, 153 (2d. Cir. 2002). Where extraneous materials are not mentioned or relied upon in the plaintiff's complaint or the nexus to the contract is "too attenuated to render [it] integral to the complaint", those materials may not be considered. *Nicosia v. Amazon.com, Inc.,* 834 F. 3d 220, 234 (2d Cir. 2016). In *Nicosia*, the court did consider an entire document mentioned in the complaint although a full copy was not attached; it excluded only materials not integral to the complaint and those of which plaintiff explicitly disputed the authenticity and accuracy. *Id.* at 235.

14. Here, Claimant attaches periodic billing statements which appear at first glance to be chronologically complete, given that she provides one for every month between October 2017 and December 2018, with the sole exception of May 2018. Sur-

6

reply at 15–42. The statements Claimant provides and her handwritten notes on them tend to suggest that the checks she provided were not properly applied. But by including all of the periodic billing statements for this time period, it is clear that each of Claimant's monthly mortgage payments were properly credited by Ditech. *See* attached **Exhibit "A"**.

| Handwritten Date | Sur-reply Page # | Check # | Amount | Application Date | Exhibit "A" Page # |
|---|---|---|---|---|---|
| 11/1/17 | 15 | 3095 | $1,382.90 | 11/15/17 | 5 |
|  | 17 |  | $2,860.79[4] | 11/16/17 | 17 |
| 12/1/17 | 17 | 3094 | $1,400.00 | 12/9/17 | 7 |
| 1/1/18 | 19 | 5000 | $2,400.00 | 1/5/18 | 11 |
| 2/1/18 | 21 | 3100 | $1,378.96[5] | 2/15/18 | 15 |
| 3/1/18 | 23 | 5006 | $1,378.96 | 3/13/18 | 19 |
| 4/1/18 | 25 | 3109 | $1,378.96 | 4/9/18 | 23 |
| 5/1/18 | 27 | 3115 | $1,378.96 | 5/4/18 | 27 |
|  |  |  | $1,378.96 | 5/31/18 | 29 |
| 7/1/18 | 29 | 3143 | $1,578.96 | 7/17/18 | 33 |
| 8/1/18 | 31 | 3144 | $1,378.96 | 8/6/18 | 33 |
| 9/1/18 | 33 | 3154 | $1,378.96 | 9/6/18 | 37 |
| 10/1/18 | 35 | 3161 | $1,378.96 | 10/4/18 | 39 |
| 11/1/18 | 37 | 3165 | $1,378.96 | 11/7/18 | 41 |
| 12/1/18 | 39 | 3173 | $1,378.96 | 12/7/18 | 43 |
| 1/1/19 | 41 | 3180 | $1,378.96 | 1/25/19 | 47 |
| 2/1/19 | 41 | 3184 | $1,378.96 | 3/8/19[6] | 50 |

---

[4] According to Claimant's handwritten notes on the October 16, 2017 billing statement, she made a payment in the amount of $1,392.90 (Sur-reply at 15), but the November 16, 2017 billing statement shows claimant made a payment of $2,500. On 11/16/17, Ditech pulled $360.79 from the suspense account to cover two full mortgage payments ($1,467.89 + $1,392.90 = $2,860.79) and applied that to the payments due for July 2017 and August 2017. Sur-reply at 17. The application of payments by Ditech are consistent with the requirements under the Truth in Lending Act regulations. *See* 12CFR § 1026.36(c)(1). Claimant provides no explanation for why Ditech credited her $2,500 if she only paid $1,392.90. The Consumer Claims Trustee was unable to find any additional statements between October 16, 2017 and November 16, 2017 to explain the difference.

[5] Here, claimant's payment of $1,378.96 was insufficient to cover the payment of $1,392.90 then owing for November 1, 2017. Ditech thus pulled $13.94 from the suspense account in order to create a full payment of $1,392.90. Ostensibly, Claimant did not intentionally underpay on February 1, 2018 as this was the proper ongoing monthly payment due at that point in time.

[6] By the time this payment was credited, Claimant's monthly payment had risen to $2,641.92. It was thus added to funds in suspense to allocate for a full payment and was credited to the payment due for December 1, 2018.

7

15. Claimant is thus correct that she made her monthly payments towards escrow between October 2017 and November 2019. However, this does not show that she never defaulted in her escrow. In fact, the first billing statement attached, dated October 16, 2017, shows a negative escrow balance of $1,667.25. Sur-reply at 15. Therefore, even assuming she was regularly funding the escrow account between October 2017 and November 2019, those regular payments would be insufficient to bring the escrow balance current.

16. Moreover, the billing statements corroborate the argument advanced by the Trustee in her Reply—that the primary source of the escrow deficiency was Claimant's own failure to pay the property taxes on one of the two parcels located on the property. The June 15, 2018 statement shows a tax disbursal advanced on June 4, 2018 in the amount of $10,808.68, bringing the overall escrow balance to a negative $11,895.48. Sur-reply at 29. As of the date of the final statement provided by Claimant in her Sur-reply, dated November 18, 2019, the negative escrow balance was $10,398.70. *Id.* at 43.

17. The documentation presented shows that the property taxes were not paid for five years, commencing in 2012. Response at 4. By the time Claimant allegedly regained possession of the Property in June 2016, she acknowledged that her now ex-husband was behind on the Mortgage in the amount of $5,000.00 and delinquent on property taxes in the amount of $5,000.00. According to the October 16, 2017 billing statement, the Mortgage was past due in the amount of $6,018.95. Sur-reply at 15.

18. Unfortunately for Claimant, despite making monthly payments between October 2017 and November 2019, she was simply too far behind to catch up.

8

The October 16, 2017 billing statement shows that the payment that posted on October 11, 2017 was applied to her June 1, 2017 payment. Sur-reply at 15. She remained three to four months behind for at least the next two years. *See* Exhibit "A".

19. Finally, the billing statements also support the Trustee's assertion that the delinquent property taxes advanced by Ditech in June 2018 were ultimately built into Claimant's monthly escrow payment. The October 4, 2018 billing statement shows a required monthly escrow payment of $168.20. *See* Exhibit "A" at 39. The November 7, 2018 billing statement shows a required monthly escrow payment of $1,431.16. *Id.* at 41.

## Reservation of Rights

20. The Consumer Claims Trustee hereby reserves the right amend, modify, or supplement this Reply.

WHEREFORE the Consumer Claims Trustee respectfully requests entry of an order denying the request for relief in the Claims and such other or relief as is just.

Dated: November 5, 2024
New York, New York

*/s/ Richard Levin*
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
RLevin@jenner.com
Richard Levin

*Attorneys for the Consumer Claims Trustee*