**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Richard W. Slack
Alexander Welch

*Attorneys for the Plan Administrator*
*on Behalf of the Wind Down Estates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
:
In re                                                    :    Chapter 11
:
DITECH HOLDING CORPORATION, *et al.*,                    :    Case No. 19-10412 (JLG)
:
Debtors.[1]                                              :    (Jointly Administered)
:
------------------------------------------------------------X

# REPLY OF PLAN ADMINISTRATOR IN FURTHER SUPPORT OF THE PLAN ADMINISTRATOR'S FORTY-SEVENTH OMNIBUS OBJECTION TO PROOFS OF CLAIM (NO BASIS CONSUMER CREDITOR ADMIN CLAIMS)

---

[1] On September 26, 2019, the Court entered the *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (Docket No. 1404) (the "**Confirmation Order**"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief* (Docket No. 3903) (the "**Closing Order**"). Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Pursuant to the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "**Remaining Wind Down Estate**") (Case No. 19-10412 (JLG) shall remain open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates shall be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

TO THE HONORABLE JAMES L. GARRITY, JR.,
UNITED STATES BANKRUPTCY JUDGE:

The Plan Administrator,[2] on behalf of Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and its debtor affiliates (excluding Reorganized RMS) (collectively, the "**Wind Down Estates**"), submits this reply (the "**Reply**") in further support of the *Forty-Seventh Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims)* (ECF No. 2147) (the "**Forty-Seventh Omnibus Objection**") with respect to proof of claim number 60006 (the "**Claim**") filed by Charles McSpadden ("**Claimant**"), and in opposition to the response (ECF No. 2395) (the "**Response**") filed by Claimant.

The Claim involves a detainer action initiated in Monroe County, Tennessee by Ditech Financial LLC ("**Ditech**") against Claimant concerning Claimant's mobile home. According to Claimant, a hearing was held even though Claimant sought a continuance. As a result, the parties showed up at the hearing with counsel. As a result of discussions among the parties at the hearing, the action was dismissed without prejudice. Claimant contends that Ditech should pay his counsel's legal fees of $2,500 for having to attend the hearing, and then seeks $25,000 in punitive damages as an administrative expense claim. The Claim should be denied and expunged in its entirety because there is well-established Supreme Court precedent that each litigant pays his own attorney's fees (*i.e.*, the "**American Rule**") even where a case is dismissed, and punitive damages are not available as a matter of law given general unsecured claims in these chapter 11 cases are not being paid in full.

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (the "**Plan**") (ECF No. 1326) or the Confirmation Order, as applicable.

2

**Background**

1. On September 3, 2019, Ditech initiated a detainer action (the "**Action**") against Claimant in the State of Tennessee, County of Monroe. The Action sought to take possession of Claimant's "double-wide mobile home." Claim ¶ 5, at 5. Claimant's affidavit submitted in opposition to the Action states that at the time of the Action, Claimant owed money on the installment contract on the mobile home and that he had defenses to the Action that Claimant wished to present. *See id.* ¶ 3(c), (h), at 9. Notably, just one year before the Action, Ditech had obtained relief from the automatic stay in the joint chapter 13 case of Claimant and his wife to enforce its rights against Claimant's mobile home. *See* Order Granting Amended Motion for Relief from Stay, *In re McSpadden*, No. 1:17-bk-10004-NWW (Bankr. E.D. Tenn. Oct. 4, 2018), ECF No. 99 (in its request for relief from the automatic stay, Ditech asserted that under the confirmed chapter 13 plan, Claimant's son was to make payments regarding the mobile home directly to Ditech, but Claimant and his son had failed to make such monthly payments since May 20, 2017). Claimant asserts that Ditech "improperly" served Claimant's son instead of Claimant in the Action, and as a result, Claimant "was forced to retain counsel" in the Action. Response ¶ 2, at 1.

2. On October 10, 2019, Claimant filed a motion to continue, seeking an order from the state court to continue the October 16th hearing in the Action. *See id.* at 13. Claimant alleges that Ditech had informed Claimant that Ditech would not agree to continue the Action. *See* Claim at 5.

3. On October 16, 2019, a hearing was held on the Action. Claimant asserts that his counsel appeared at the hearing and provided Ditech's counsel with a statement from Ditech demonstrating that Claimant was now current on payments with respect to Claimant's mobile home. *See id.* at 5-6.

4. On the same day, the Action was dismissed without prejudice.

3

5. On November 6, 2019, Claimant filed the Claim, which asserts an administrative expense claim for "$2,500.00 damages plus $25,000.00 punitive damages" on the basis that the papers were improperly served on Claimant's son instead of Claimant, Claimant sought, but was not granted, a consensual continuance of a hearing in the Action and therefore Claimant was forced to hire an attorney to appear at the hearing, and the act of showing up to court was "very upsetting to both [Claimant and his wife]." *Id.* ¶¶ 2, 6-9, at 5.

6. On April 10, 2020, the Plan Administrator filed the Forty-Seventh Omnibus Objection, objecting to the Claim on the basis that it has no merit based on the Plan Administrator's review.

7. On May 11, 2020, Claimant filed the Response, which clarified that $2,500 of the claim amount is for legal fees incurred by Claimant in connection with his counsel's appearance at the hearing, and the remaining $25,000 of the claim amount is for punitive damages. *See* Response at 1-2.

8. On June 14, 2021, Claimant passed away.[3]

## Jurisdiction

9. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## The Claim Should be Denied and Expunged

**A. Claimant is Not Entitled to Attorney's Fees as a Matter of Law.**

10. It is well-established Supreme Court precedent that each litigant pays his own attorney's fees even in matters where a litigant "wins" or an action is dismissed. *See, e.g.*, *Hardt v.*

---

[3] This information was provided by Claimant's attorney in an email to the Plan Administrator's counsel on October 25, 2023, although the Plan Administrator has not received any documents or other evidence that the Claim has been properly transferred or to whom the Claim has been transferred (to the extent that it has been).

4

*Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53, 130 S. Ct. 2149, 2156–57, 176 L. Ed. 2d 998 (2010) ("Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.") (internal quotations omitted); *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126, 135 S. Ct. 2158, 2164, 192 L. Ed. 2d 208 (2015) (same). Deviation from the American Rule "requires either a statutory or contractual basis." *United States v. Shelmidine (In re Shelmidine)*, 519 B.R. 385, 388 n.4 (Bankr. N.D.N.Y. 2014).

11. There is no contractual or other basis that would provide for a deviation from the American Rule here. "To determine whether Congress intended to depart from the American Rule presumption, the Court first looks to the language of the section at issue." *Peter v. NantKwest, Inc.*, 140 S. Ct. 365, 372 (2019) (internal quotations omitted). Claimant raises no contractual support. Claimant does cite two Tennessee statutes, Tenn. Code Ann. §§ 29-39-102 and 29-39-104 (collectively, the "**Tennessee Statutes**"), which specify circumstances under which compensatory and punitive damages, respectively, may be awarded in an action. *See* Response at 2. Neither statute provides for a deviation from the American Rule nor do they mention attorney's fees in any capacity whatsoever. "Congress must provide a sufficiently specific and explicit indication of its intent to overcome the American Rule's presumption against fee shifting." *Peter*, 140 S. Ct. at 372 (internal quotations omitted). There is no "specific and explicit indication" from Congress contained in the Tennessee Statutes.

12. Ultimately, Claimant does not cite to any statutory or contractual basis that would support a deviation from the American Rule here. Therefore, Claimant's request for $2,500 in attorney's fees should be denied.

**B.     Claimant is Not Entitled to Punitive Damages as a Matter of Law.**

13.     Under section 726 of the Bankruptcy Code, punitive damages are only allowed if general unsecured claims are paid in full. *See* 11 U.S. Code § 726; *In re Motors Liquidation Co.*, 590 B.R. 39, 63 (S.D.N.Y. 2018) ("Specifically, the Bankruptcy Code provides for full repayment of the claims of general unsecured creditors before any punitive damages may be paid."), *aff'd*, 943 F.3d 125 (2d Cir. 2019). Accordingly, where a chapter 11 debtor is unable to satisfy all unsecured claims in full, punitive damages are unavailable as a matter of law. *Id.* ("Accordingly, punitive damages would never be available against a debtor, like Old GM, which was unable to repay its general unsecured claims in full.").

14.     This Court has already found that punitive damages in this case are unavailable because "[u]nder the Third Amended Plan, general unsecured creditors receive only a pro rata share of their claims." *See Memorandum Decision Granting the Plan Administrator's Motion for Judgment on the Pleadings* (Adv. Pro. No. 19-01255; Docket No. 15) at 29-30. Therefore, Claimant is not entitled to punitive damages.

15.     In addition, "[p]unitive damages are generally imposed to punish the actual wrongdoer and to deter him from acting illegally again." *E.E.O.C. v. Nichols Gas & Oil, Inc.*, 688 F. Supp. 2d 193, 204 (W.D.N.Y. 2010); *see also Matterof Johns-Manville Corp.*, 68 B.R. 618, 627 (Bankr. S.D.N.Y. 1986), *aff'd sub nom. In re Johns-Manville Corp.*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) ("The purpose of punitive damages, furthermore, is to punish tortfeasors and deter them from their wrongful conduct."). However, Ditech has no operating business, no longer services mortgages, and has no employees. The chapter 11 case of Ditech is closed pursuant to the Closing Order, and the Plan Administrator is in the process of liquidating the remaining assets of the Wind Down Estates. There is no future conduct for punitive damages to deter.

*See In re Motors Liquidation Co.*, Case No. 09–50026, 2012 WL 10864205, at *11 (Bankr. S.D.N.Y. Aug. 6, 2012), *aff'd sub nom. Shah v. Motors Liquidation Co. GUC Tr.*, 12 Civ. 8783 (JPO), 2013 WL 12085091 (S.D.N.Y. June 3, 2013), *aff'd sub nom. In re Motors Liquidation Co.*, 566 F. App'x 87 (2d Cir. 2014) ("Disallowance of punitive damages claims is particularly appropriate in a liquidating case, including a liquidating chapter 11 case, where there is no future conduct to deter; the people guilty of the misconduct would not be punished for it; and the victims of the punitive damages would in reality be only other, wholly innocent, creditors.").

16. An award of punitive damages here would wholly fail to serve the purpose punitive damages are intended to address, and this provides an independent basis to deny punitive damages (even if they could theoretically be awarded here). Accordingly, Claimant's request for punitive damages should be denied.

## **Reservation of Rights**

17. The Wind Down Estates hereby reserve the right to amend, modify, or supplement this Reply.

*[This Space Intentionally Left Blank]*

7

**WHEREFORE** the Wind Down Estates respectfully request that the Court deny and expunge the Claim in its entirety and provide such other and further relief as is just.

Dated: November 7, 2024
     New York, New York

/s/ *Richard W. Slack*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Richard W. Slack
Alexander Welch

*Attorneys for the Plan Administrator
on Behalf of the Wind Down Estates*