| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | NOT FOR PUBLICATION |
| ------------------------------------------------------- x<br>In re:                                                                             :<br>                                                                                     :<br>Ditech Holding Corporation, *et al.*,                       :<br>                                                                                     :<br>                                                            Debtors.[1]  :<br>------------------------------------------------------- x | Case No. 19-10412 (JLG)<br>Chapter 11<br><br>Jointly Administered |

**MEMORANDUM DECISION AND ORDER SUSTAINING
THE FIFTY-FOURTH OMNIBUS OBJECTION TO PROOFS OF CLAIM
WITH RESPECT TO THE PROOF OF CLAIM FILED BY JULIE MONTFORT**

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:    Richard Levin


JULIE MONTFORT[2]
*Appearing Pro Se*
13221 Southwest 192nd Terrace
Miami, Florida 33177

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

[2] Ms. Montfort is acting pro se herein and, in that capacity, filed the Claim and the Response to the Objection. As set forth below, Ms. Montfort did not appear at the Sufficiency Hearing. She did not request the Court to adjourn the hearing or otherwise seek an accommodation from the Court with respect to the hearing.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### INTRODUCTION[3]

Julie D. Montfort (the "Claimant") is acting pro se herein. She timely filed Proof of Claim No. 1912 (the "Claim") as a secured claim in the amount of $34,888.49 against Ditech Financial, LLC ("Ditech Financial"). The Plan Administrator and the Consumer Claims Trustee jointly filed their Fifty-Fourth Omnibus Objection (the "Objection")[4] seeking to disallow proofs of claim, including the Claim, that do not provide sufficient information or documentation to substantiate liability on the part of Ditech Financial. Claimant filed a response to the Objection (the "Response").[5] The Consumer Claims Trustee[6] replied to the Response (the "Reply").[7] In substance, the Consumer Claims Trustee contends that the Court should disallow the Claim because it fails to state a claim for relief against Ditech Financial.

Pursuant to the Claims Procedures Order,[8] Claimant's filed Response adjourned the Objection to provide time for the Court to conduct a Sufficiency Hearing on the Claim. At a

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[4] *Fifty-Fourth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims)*, ECF No. 2326.

[5] *Response of Julie Montfort*, ECF No. 2558.

[6] On March 24, 2023, the Plan Administrator and Consumer Claims Trustee filed the *Consumer Claims Trustee and Plan Administrator's Joint Omnibus Motion to Reclassify Certain Proofs of Claim and Consumer Claims Trustee's Motion to Estimate for Purposes of Distribution Reserves*, ECF No. 4662. The motion sought to estimate the Claim at $34,888.49 for the purpose of setting a distribution reserve. It also asserted the Claim was improperly filed as a secured claim and sought to reclassify it as a non-363(o), Class 6 Consumer Creditor Claim, as defined by the Third Amended Plan. By order dated May 10, 2023, the Court granted the motion for the requested relief. *Order Granting Consumer Claims Trustee and Plan Administrator's Joint Omnibus Motion to Reclassify Certain Proofs of Claim and Consumer Claims Trustee's Motion to Estimate for Purposes of Distribution Reserves*, ECF No. 4732. Upon the entry of that order, the Plan Administrator lost its interest in the Objection, as the Consumer Claims Trustee is solely responsible for reconciling Consumer Creditor Claims.

[7] *Reply of the Consumer Claims Trustee in Support of the Fifty-Fourth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims) with Respect to the Claim of Julie Montfort (Claim 1912)*, ECF No. 5220.

[8] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

2

Sufficiency Hearing, the Court employs the legal standard of review applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Claims Procedures Order ¶ 3(iv)(a). On November 21, 2024, the Court held the Sufficiency Hearing. The Consumer Claims Trustee appeared through counsel. The Claimant did not appear at the hearing. The Court did not hear argument on the Objection and is considering this matter based upon the papers submitted.

The Court has reviewed the Claim, Objection, Response, and Reply, including all documents submitted in support thereof, and has considered the arguments made therein by the parties in support of their positions. In doing so, and in accordance with Rule 12(b)(6), the Court has accepted Claimant's well-pleaded factual allegations as true, and has drawn all reasonable inferences in Claimant's favor. In light of Claimant's pro se status, the Court has liberally construed the Claim and Response to raise the strongest arguments that they suggest.

As explained below, the Claim fails to state a claim to relief against Ditech Financial. Accordingly, the Court sustains the Objection and disallows the Claim.

## **JURISDICTION**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

**The Loans**

On or around April 27, 2007, Claimant executed an adjustable rate note in the amount of $432,000.00 ("First Note") and a promissory note in the amount of $54,000.00 ("Second Note"), both in favor of GN Mortgage, LLC.[9] The First Note and Second Note were each secured by the real property located at 13221 SW 192nd Terrace, Miami, Florida 33177 (the "Property") pursuant to separate mortgages executed by Claimant and her spouse, Jean Edwing Montfort, (the "First Mortgage" and "Second Mortgage," respectively).[10] On May 4, 2007, both mortgages were recorded in Miami-Dade County.

**The Chapter 11 Cases**

On February 11, 2019, Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates, including Ditech Financial (collectively, the "Debtors"), filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession and control of their business and assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity to file a

---

[9] The First Note and Second Note are annexed as Exhibits A and C to the Reply, respectively. The Court takes judicial notice of the First Note, Second Note, and the other documents annexed to the Reply as they are matters of public record and takes them into consideration because they are integral to the Claim. *Bellin v. Zucker*, 6 F.4th 463, 472 (2d Cir. 2021) (stating that when ruling on a Rule 12(b)(6) motion to dismiss, courts must consider the entire complaint, including documents incorporated therein by reference and other matters of which a court may take judicial notice); *Cohen v. Cap. One Funding, LLC*, 489 F. Supp. 3d 33, 46 (E.D.N.Y. 2020) ("Facts drawn from integral documents, even those not expressly incorporated by reference, are fair game in the context of a Rule 12(b)(6) motion."); *Cardoso v. Wells Fargo Bank, N.A.*, No. 21-8189, 2022 WL 4368109, at *1 n.1 (S.D.N.Y. Sept. 20, 2022) (determining a mortgage loan document is integral where the claim concerned allegations of misconduct in relation to an attempted modification and foreclosure of a mortgage and therefore considering it on a Rule 12(b)(6) motion to dismiss).

[10] The First Mortgage is annexed as Exhibit B to the Reply. The Second Mortgage is annexed as Exhibit D to the Reply (together, the Second Note and Second Mortgage are the "Second Loan").

proof of claim in the Chapter 11 Cases (the "General Bar Date").[11] The Court extended the General Bar Date for consumer borrowers to June 3, 2019.[12]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, which went into effect on September 30, 2019.[13] The Plan Administrator and Consumer Claims Trustee are fiduciaries under the plan. *See* Third Amended Plan, art. I, §§ 1.130, 1.184, 1.186. The Plan Administrator is charged with winding down, dissolving and liquidating the Wind Down Estates and is provided exclusive authority to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims. *Id.* art. VII, § 7.1. The Consumer Claims Trustee is responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims. *See id.* art. I, § 1.41. As such, she is exclusively authorized to object to Consumer Creditor Claims. *Id.* art. VII, § 7.1.

**The Claims Procedures Order**

Under the Claims Procedures Order, a properly filed and served response to a claim objection, omnibus or otherwise, gives rise to a "Contested Claim." *See* Claims Procedures Order ¶ 3(iv). A Contested Claim is resolved at a hearing, which can be scheduled as either a "Merits Hearing," an evidentiary hearing on the merits of the Contested Claim, or a "Sufficiency Hearing," a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against

---

[11] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[12] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[13] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

5

the Debtors. *Id.* ¶ 3(iv)(a)-(b). At a Sufficiency Hearing, the Court applies the legal standard of review applied to a motion to dismiss under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

**The Claim**

In Claimant's Official Form 410, Proof of Claim, she asserts a claim in the amount of $34,888.49 based on "money loaned." Claim at 1-2. Claimant contends the Claim is fully secured by "financing statements." *Id*. at 2. Claimant mistakenly lists herself as the debtor and Ditech Financial as the creditor. *Id*. at 1.

In support of the Claim, Claimant submitted a document addressed "To Whom It May Concern." *Id*. at 3. In it, she states that on "8/21/2018" she received a Suspension of Statements and Notice of Charge-Off from Ditech Financial ("Charge-Off Notice"), but has continued to pay Ditech Financial $200.00 per month as requested. *Id*. Claimant states that when she received notice of the Chapter 11 Cases, she called Ditech Financial to find out the amount due under her account because she was no longer receiving monthly statements. *Id*. Claimant states that the representative she spoke with on the telephone told her that her account balance was $34,888.49 (which she assumed was correct) and that she would receive written account information by mail. *Id*. Claimant alleges that Ditech Financial did not provide the written information, and instead, on May 18, 2019, she received a letter from Ditech Financial stating that she was required to submit a written request for the account information. *Id*.

Claimant attaches copies of monthly billing statements from September of 2017 and August of 2018 to the Claim. They state that Claimant's account became delinquent on June 1, 2013. *Id*. at 17-22. She includes a copy of the Charge-Off Notice. *Id*. at 11.[14] The notice states:

---

[14] The Suspension of Statements and Notice of Charge-Off, annexed as page 11 of the Claim, is not dated, but the contents are consistent with Claimant's description of the Charge-Off Notice. Accordingly, the Court will assume that this is the Charge-Off Notice Claimant asserts she received on August 21, 2018.

6

> Your account has been charged off and Ditech will not charge any additional fees or interest on the account. This means that Ditech will no longer provide you with a periodic statement for each billing cycle as the full amount is now due and owing.
> . . .
> The balance on the account has not been canceled or forgiven and your obligation to resolve the balance on the account remains.

*Id*. at 11.[15]

The Post Charge-Off Payment History reports dated August 21, 2018, and May 14, 2019, attached to the Claim indicate that the mortgage loan obligation refers to the Second Loan, in the amount of $54,000.00. *See id*. at 11, 13 (stating the outstanding balance on the loan as of November 30, 2023, was $52,450.33). Claimant also annexes two letters from Ditech Financial, each dated August 18, 2021, regarding the amount due on Claimant's account. The first letter provides that the payoff amount on her loan was $36,488.49, as of August 21, 2018. *Id*. at 6-7. In the second letter, Ditech Financial agreed to a temporary, six-month payment arrangement (the "Payment Arrangement Notice"). *Id*. at 8-9. According to the Payment Arrangement Notice, Claimant could reduce her delinquency by making monthly payments in the amount of $200.00 beginning September 15, 2018, through February 15, 2019. *Id*. at 8. The Payment Arrangement Notice also directs Claimant to contact Ditech Financial on February 15, 2019, to establish further payment arrangements. *Id*. at 8.

Finally, Claimant annexes two letters from Ditech Financial, dated August 18, 2021, and May 14, 2019, respectively, that appear to be in response to a request for documents from Claimant. Each letter states that the documents requested by Claimant are enclosed, however, neither letter identifies the enclosed documents, or states what documents were requested, or when Claimant requested them. *Id*. at 12.

---

[15] The Charge-Off Notice additionally provides that Claimant's account may be transferred to another servicer, but that Claimant remains liable to Ditech Financial for her mortgage loan obligation. Claim at 11.

**The Objection**

The Consumer Claims Trustee and Plan Administrator seek entry of an order disallowing and expunging the Claim, or alternatively, reclassifying the Claim as an unsecured Consumer Creditor Claim. Objection ¶ 12. They contend that the upon review of the Debtors' books and records, they determined that the Claim lacks merit. Objection Ex. A at 8.

**The Response**

Claimant contends that the Court should not disallow the Claim because "Shellpoint, Wind Down Estates, Ditech, Green [T]ree, GMAC, [and] all these consecutive[] servicers or banks" handled her loan in "unfair[] and careless ways." Response at 1. She demands that "they rectify how they conduct their business." *Id*. Claimant asserts that although she has made her mortgage payment, Ditech Financial has sent her delinquency notices. She says that her loan was transferred multiple times from 2007-2020, and "every time that happened, there were always some type of confusing statement stipulating that I was delinquent, which I was not." *Id*. She says this made it difficult for her to ascertain her ongoing balance and monthly payment obligation. *Id*.

Claimant states she has continued to pay Shellpoint, the new loan servicer, even though the current balance of her account is "way too high" and exceeds what she believes is the amount due. *Id.* at 1-2. She refers to the documents submitted with the Claim to prove she has paid her loan to date and does not submit any additional documentation. *Id.*

**The Reply**

The Consumer Claims Trustee asserts that the Claim, as supplemented by the Response, does not satisfy the pleading standards of Rule 8(a) of the Federal Rules of Civil Procedure ("Rule 8(a)") because it merely states that the Second Loan was charged off and generally outlines Claimant's frustrations with Ditech Financial. Reply ¶¶ 23-26. The Consumer Claims Trustee contends that Claimant acknowledges the amount of the Claim is the outstanding balance of the

8

Second Loan, but fails to explain why she is entitled to damages in the amount owed on her account. *Id*. The Consumer Claims Trustee states that the Claim lacks sufficient information for her to ascertain the nature and basis of the Claim. *Id*. ¶ 26.

Acknowledging that Claimant is proceeding pro se, the Consumer Claims Trustee liberally construes the Claim. *Id.* ¶ 28. Based on Claimant's complaints regarding treatment of her account by multiple loan servicers, the Consumer Claims Trustee interprets the Claim, as supplemented by the Response, as a request for relief under the Real Estate Settlement Procedures Act ("RESPA"). *Id.* Specifically, she construes the Claim to assert that Ditech violated RESPA's requirements that loan servicers respond to requests for information and provide periodic statements. *Id.* ¶¶ 32-43.

The Consumer Claims Trustee maintains that even as liberally construed, the Claim runs afoul of Rule 12(b)(6), and fails to state a claim for relief under RESPA. *Id.* ¶¶ 29-46. The Consumer Claims Trustee also notes that the Court lacks jurisdiction to adjudicate any potential claims Claimant may be asserting against other loan servicers, such as Shellpoint or GMAC. *Id.* ¶ 45.

## LEGAL PRINCIPLES

A claim properly filed under Section 501 of the Bankruptcy Code is "deemed allowed" absent an objection. 11 U.S.C. § 502(a). Such claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). A court may only disallow a claim if a party in interest has objected, and upon notice and hearing, the court finds the claim falls under one of the exceptions found in Section 502(b) of the Bankruptcy Code. 11 U.S.C. § 502(b); *In re Manhattan Jeep Chrysler Dodge, Inc.*, 602 B.R. 483, 491 (Bankr. S.D.N.Y. 2019) ("Section 502 of the Bankruptcy Code provides generally that a proof of claim should be allowed except to the extent it is objectionable on various grounds."). As relevant to the Objection, section 502(b)(1) provides that a claim may be disallowed to the extent it is "unenforceable against the debtor and

property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re Residential Cap., LLC*, 513 B.R. 446, 458 (Bankr. S.D.N.Y. 2014) (citing *In re W.R. Grace & Co.,* 346 B.R. 672, 674 (Bankr. D. Del. 2006)).

The merits of the Claim are not at issue. A Sufficiency Hearing is a non-evidentiary hearing to address whether a Contested Claim "has failed to state a claim against the Debtors which can be allowed and should be dismissed pursuant to Bankruptcy Rule 7012." Claims Procedures Order ¶ 3(iv)(a); *see* Fed. R. Bankr. P. 7012(b) (quoting Fed. R. Civ. P. 12(b)) (applying the federal standard under Rule 12(b)(6) motion to dismiss standard to adversary proceedings). The function of a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Havens v. James*, 76 F.4th 103, 116-17 (2d Cir. 2023) (quoting *Festa v. Loc. 3 IBEW*, 905 F.2d 35, 37 (2d Cir. 1990)) (internal quotations omitted).[16] Rule 12(b)(6) "ensures that, consistent with Rule 8(a), a complaint includes 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Alharbi v. Miller*, 368 F. Supp. 3d 527, 560 (E.D.N.Y. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Accordingly, in applying the legal standards applicable to Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the Claim in light of the pleading standards under Rule 8(a).

---

[16] "On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are 'integral' to the complaint." *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citing *Brass v. American Film Techs.*, 987 F.2d 142, 150 (2d Cir. 1993); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)). Because Sufficiency Hearings consider consumer claims, often by unrepresented claimants whose claims lack detail or do not attach pertinent supportive documentation, it has been the practice of this Court to consider the Consumer Claims Trustee's documentary submissions together with claims as if they were consolidated. The Court does so here.

Rule 8 calls for a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To satisfy this standard, the complaint must at a minimum 'disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)); *see Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) ("[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level.").

The Rule 12(b)(6) standard requires courts to accept all factual allegations as true and to draw all reasonable inferences in favor of the non-moving party. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). Further, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding what factual matter to accept as true, the Court is not required to "credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Where, as here, the [Claim] was filed *pro se,* it must be construed liberally to raise the strongest arguments it suggests. Nonetheless, [the] *pro se* [Claim] must state a plausible claim for

11

relief." *Walker v. Schult,* 717 F.3d 119, 124 (2d Cir. 2013) (internal citations, quotation marks, and brackets omitted); *see also Kimber v. GMAC Mortg., LLC* (*In re Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) ("Complaints drafted by *pro se* plaintiffs are to be construed liberally, but they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the plaintiff is complaining about and ... whether there is a legal basis for recovery.'") (quoting *Iwachiw v. New York City Bd. of Elections,* 126 F. App'x 27, 29 (2d Cir. 2005)).

## ANALYSIS

### Whether the Claim Satisfies the Pleading Standards of Rule 8(a)

The Consumer Claims Trustee contends that the Claim, as supplemented by the Response, does not meet Rule 8(a)'s minimum pleading standards. She says that the Claim does little more than to assert that the loan was charged off and that Claimant entered into an agreement to continue making payments on the charged-off balance. Reply ¶ 24. She describes the Response as generally outlining Claimant's frustration with the number of servicers that handled her mortgage and Claimant's confusion about the amount of the debt. *Id.* She says that none of it is framed as a cause of action or legal claim, and, in any event, that Claimant does not explain how the Claim amount is tied to any damages. *Id.* ¶ 25. However, in the Claim, Claimant has alleged facts, and submitted documentation, in support of her Claim that the payments were mishandled, and that she was unable to determine the amount due and owing under the loan. In construing these factual allegations liberally, the Court finds that they provide the Consumer Claims Trustee with notice of the Claim, in satisfaction of Rule 8(a)'s standards.

**Whether Claimant States a Claim Against Ditech**

Claimant asserts that Ditech did not provide information she requested and ceased to provide her with monthly billing statements, which ultimately led to her confusion about the remaining balance on the Second Loan. As such, the Consumer Claims Trustee construes the Claim as a request for relief under RESPA, specifically its requirements that loan servicers respond to certain requests for information and provide consumers with periodic statements. Claimant does not challenge that interpretation of the Claim.

The Real Estate Settlement Procedures Act is a "consumer protection statute that regulates the real estate settlement process." *Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006). It is codified at 12 U.S.C. §§ 2601, *et seq*. RESPA's implementing regulations, collectively known as "Regulation X," are set forth in 12 C.F.R. §§ 1024.1–1024.41. "RESPA, as a remedial consumer-protection statute, should be construed liberally in order to best serve Congress's intent." *Renfroe v. Nationstar Mortg.*, LLC, 822 F.3d 1241, 1244 (11th Cir. 2016) (citing *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 707 (11th Cir. 1998)). The statute was enacted "to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a); *see generally Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 444-45 (E.D.N.Y. 2013). Under RESPA, mortgage servicers are required to maintain policies and procedures that enable them to manage borrower loans transparently and effectively. 12 C.F.R. § 1024.38.

RESPA applies to "federally related mortgage loan[s]," a term that includes loans secured by a lien on residential real estate "designed principally for the occupancy of from one to four families," for which the lender is federally regulated or has deposits or accounts insured by the

13

federal government. 12 U.S.C. § 2602(1)(A)-(B). That includes loans "secured by a first or subordinate lien on residential real property." 12 C.F.R. §1024.2(b). The Second Loan is secured by a lien on the Property and is thus subject to RESPA's coverage.

RESPA imposes various duties on mortgage loan servicers. 12 U.S.C. § 2605. To state a claim under RESPA, Claimant must allege facts demonstrating that Ditech Financial failed to comply with a RESPA obligation, and Claimant sustained actual damages based on Ditech Financial's failure to comply. *Baez v. Specialized Loan Servicing, LLC*, 709 F. App'x 979, 982 (11th Cir. 2017) (per curiam). As relevant, RESPA requires mortgage loan servicers who receive a "qualified written request" ("QWR") for action or information from a borrower to respond and, if necessary, to act within statutorily mandated periods of time. *See* 12 U.S.C. § 2605(e)(1)-(2). A servicer's failure to comply with its RESPA obligations allows a borrower to recover any "actual damages ... as a result of the failure" and "any additional damages," not to exceed $2,000, if there is "a pattern or practice of noncompliance" with RESPA. *Id*. § 2605(f)(1).

***Duty to Respond to Consumer Requests for Information Under RESPA***

Claimant asserts that she made a request over the telephone for information regarding the balance on her account, and that "[o]ver the phone someone gave [her] this amount of $34,888.49." Claim at 3. She says that the person on the telephone offered to send "the written information over the mail," and Claimant consented. *Id*. However, Claimant says that the letter she subsequently received on May 18, 2019 did not contain "the information [she] was waiting for." *Id.* Claimant does not allege that she made a written request for information, although the Post Charge-Off Payment history attached to the Claim and dated May 14, 2019, appears to confirm the outstanding balance amount she was provided verbally by the Ditech Financial representative. Moreover, although she complains that the documentation received required her to submit a written request

14

for information, this directive was consistent with RESPA's requirements. *See* 12 C.F.R. § 1024.36(b).

To state a claim against Ditech Financial based on its alleged failure to respond to her request for information, Claimant must allege facts demonstrating that (1) Ditech Financial is a loan servicer; (2) Ditech Financial received a QWR from Claimant; (3) the QWR relates to servicing a mortgage loan; (4) Ditech Financial failed to respond to the QWR adequately; and (5) Claimant is entitled to actual or statutory damages. *Walker v. Branch Banking & Tr. Co.*, 237 F. Supp. 3d 1326, 1331 (S.D. Fla. 2017) (citing *Porciello v. Bank of Am., N.A.,* No. 8:14-CV-1511-T-17, 2015 WL 899942 (M.D. Fla. Mar. 3, 2015)). Claimant "must offer proof either by attaching the letter or pleading with specificity such facts—such as when the letter was sent and to whom it was directed, why it was sent, and the contents of the letter—that the Court may determine if the letter qualifies as a QWR or notice of error." *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 538 (E.D.N.Y. 2015) (citing *Miller v. HSBC Bank U.S.A., N.A.*, No. 13-7500, 2015 WL 585589, at *10 (S.D.N.Y. Feb. 11, 2015) (collecting cases)); *see also Correa v. BAC Home Loans Servicing LP*, No. 6:11-CV-1197-ORL-22, 2012 WL 1176701, at *8 (M.D. Fla. Apr. 9, 2012) (explaining plaintiff did not establish the servicer received a QWR where plaintiff failed to allege sufficient facts showing that it contained the required information under § 2605(e)). Claimant cannot meet that burden.

Moreover, Claimant has the burden to prove damages, which are an essential element in pleading a RESPA claim. *McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009), *aff'd*, 398 F. App'x 467 (11th Cir. 2010) (citing *In re Tomasevic*, 273 B.R. 682, 687 (Bankr. M. D. Fla. 2002)); *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d at 1246. Claimant may recover actual damages, but must "show that damages were proximately caused" by Ditech Financial's

15

violation of RESPA. *McLean*, 595 F. Supp. 2d at 1365; *see also Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 264 (S.D.N.Y. 2017) (quoting *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-3291, 2012 WL 1372260, at *5 (E.D.N.Y. Apr. 18, 2012)) ("[A] plaintiff seeking actual damages under § 2605 must allege that the damages were proximately caused by the defendant's violation of RESPA.") (internal quotations omitted).

The Claimant does not plead any facts to show that she sent Ditech Financial a QWR, and that Ditech Financial failed to respond to it. *Jones v. ABN AMRO Mortg. Grp., Inc.*, 551 F. Supp. 2d 400, 411 (E.D. Pa. 2008) ("Plaintiffs do not specifically allege that . . . . any correspondence met the requirements of a RESPA QWR."), *aff'd* 606 F.3d 119 (3d Cir. 2010); *see also Scocca v. Cendant Mortg. Corp.*, No. 04-704, 2004 WL 2536837, at *3 (E.D. Pa. Nov. 9, 2004) (dismissing a RESPA QWR claim in part because "[i]n his amended complaint, plaintiff never claims that he sent defendant a qualified written request"). Moreover, the Claimant has not pleaded facts to show that she suffered damages as a direct result of Ditech Financial's RESPA violation. Claimant says that "[m]y personal reason for objecting why I should not be disallowed, expunged, on my loan it's simply because to the fact that: Shellpoint, Wind Down Estate Ditech, Green [T]ree, GMAC, all these consecutive servicers or banks which were handling my loan had acted on a [v]ery unfairness and careless ways on my regards." Response at 1. She complains that her loan had been transferred "from one company to another" between 2007–2020 and "every time that happened" there were "some type of confusing statement stipulating that [she] was delinquent." *Id.*

At best, Claimant's complaints about her receipt of "confusing statement[s]" in the wake of servicing transfers are vague. She does not allege facts in support of the Claim. For example, she does not identify the dates of the statements, which entity issued them, or why she believed the delinquent notices were issued in error. She has not stated a claim for relief under RESPA that

16

is plausible on its face. Moreover, to the extent Claimant seeks adjudication of any potential claims against Shellpoint, GMAC or any other servicer of her loan, this Court lacks jurisdiction to provide her any relief.

Therefore, any RESPA claim fails as a matter of law.

***Duty to Provide Periodic Statements Under TILA***

Claimant alleges that Ditech Financial's failure to send her monthly periodic billing statements added to her confusion over the ongoing balance on the Second Loan. Claim at 3, Response at 1. The Consumer Claims Trustee analyzes this claim as a RESPA violation, noting that the general rule under RESPA is that servicers must provide regular monthly billing statements to borrowers. Reply ¶ 38 (citing 12 C.F.R. § 1026.41). However, while parts of 12 C.F.R. § 1026.1, *et. seq.*, were issued to implement RESPA, a claim for relief for failure provide periodic statements is analyzed under the Truth in Lending Act ("TILA"). *See Izmirligil v. Select Portfolio Servicing, Inc.*, No. 17-6157, 2020 WL 1941192, at *10 (E.D.N.Y. Apr. 22, 2020) (internal citations omitted) (explaining that 12 C.F.R. § 1026.41 is implemented pursuant to 15 U.S.C. § 1638(f) and a claimant may be entitled to statutory damages for violations of TILA pursuant to 15 U.S.C. § 1640(a)); *Shaffer v. Servis One, Inc.*, 347 F. Supp. 3d 1039, 1045 (M.D. Fla. 2018) ("The Federal Truth in Lending Act ("TILA") Regulation Z requires [] a servicer, to send monthly mortgage statements. 12 C.F.R. § 1026.41.").

The Truth in Lending Act is a consumer protection statute that "regulates consumer credit transactions and requires certain meaningful disclosures." *Correa v. BAC Home Loans*, 2012 WL 1176701, at *8; *see also Parker v. DeKalb Chrysler Plymouth*, 673 F.2d 1178, 1181 (11th Cir. 1982) (TILA "creates a system of disclosure that improves the bargaining posture of all borrowers."); *Lamirand v. Fay Servicing, LLC*, 38 F.4th 976, 980 (11th Cir. 2022) (TILA "ensur[es] that consumers receive both regular and accurate information about their mortgage

17

loans."). TILA Regulation Z requires lenders "disclose the identity of the creditor, the amount being financed, the annual percentage rate, the total sale price, and the total amount of payment." *Bragg v. Bill Heard Chevrolet, Inc*., 374 F.3d 1060, 1065 (11th Cir. 2004); *see also Lamirand,* 38 F.4th at 980 (explaining that under TILA, lenders "must inform homeowners of (among other things) the amount due on their loans, the due date for payment, and any details on the loans' delinquency."). It is codified at 15 U.S.C. § 1601*, et seq.* TILA's implementing regulations are set forth in Regulation Z, 12 C.F.R. pt. 1026. These regulations are accompanied by the Bureau of Consumer Financial Protection's official interpretations at 12 C.F.R. Pt. 1026, Supp. I, Pts. 1-5.[17]

TILA applies to credit transactions involving loans where the creditor takes a security interest in the real or personal property intended for use as the borrower's principal dwelling. 15 U.S.C. § 1603(3). Under TILA, most closed-end credit disclosures and other obligations are required before consummation. *See* 12 C.F.R. § 1026.17(b). TILA and Regulation Z impose other obligations after consummation. As relevant here, the lender must provide a periodic statement each billing cycle*. See* 15 U.S.C. § 1638(f)(1); 12 C.F.R. § 1026.41; *Lamirand*, 38 F.4th at 980. However, under TILA, servicers are exempt from mailing periodic statements where (i) the loan has been charged-off and the servicer has agreed not to charge any additional fees or interest and (ii) where the servicer provides to the borrower within thirty days of the charge-off or most recent periodic statement notice "clearly and conspicuously labeled 'Suspension of Statements and Notice of Charge Off – Retain This Copy for Your Records.'" 12 C.F.R. § 1026.41(e)(6)(i).[18]

---

[17] The Official Interpretations can also be found at https://www.consumerfinance.gov/rules-policy/regulations/1026/interp-0/.

[18] The statute further provides:

> The periodic statement must clearly and conspicuously explain that, as applicable, the mortgage loan has been charged off and the servicer will not charge any additional fees or interest on the account; the servicer will no longer provide the consumer a periodic statement for each billing cycle; the lien on the property remains in place and the consumer remains liable for the mortgage loan obligation and any obligations arising from or related to the property, which may include property

Based upon the facts alleged by Claimant, that exception is applicable here. The letter entitled "Suspension of Statements and Notice of Charge-Off" is attached to the Claim. Claim at 11. Its title and contents comport with all the informational requirements set forth in section 1026.41(6)(i). According to the pay history, the loan was in fact charged off in November 2013, at which time the balance was $52,450.33. *Id.* at 13-16. Claimant had been making regular monthly, interest-free payments since December 1, 2013. *Id.* In total, between November 2013 and April 26, 2019, Claimant paid $17,561.84, reducing the balance to $34,888.49 as of May 14, 2019. *Id.* The billing statements attached to the Claim also show that Ditech Financial was not charging fees or interest on the account. The payments applied according to each of the billing statements are consistent with the overall pay history.

Claimant does not allege facts demonstrating that Ditech Financial was obligated to send her periodic statements following the charge-off of the loan. Claimant has not stated a claim for relief under TILA.

## **CONCLUSION**

Based on the foregoing, the Court sustains the Objection and disallows the Claim.

Dated: November 22, 2024
      New York, New York

                                               /s/ *James L. Garrity, Jr.*
                                               Honorable James L. Garrity, Jr.
                                               United States Bankruptcy Judge

---

taxes; the consumer may be required to pay the balance on the account in the future, for example, upon sale of the property; the balance on the account is not being canceled or forgiven; and the loan may be purchased, assigned, or transferred.

15 U.S.C. § 1026.41(e)(6)(i)(B).