UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

-------------------------------------------------------------x

In re:                                                  :

                                                        :       Case No. 19-10412 (JLG)

Ditech Holding Corporation, *et al.*,                   :       Chapter 11

                                                        :

                                                        :

                                         Debtors.[1]    :       Jointly Administered

-------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER SUSTAINING THE PLAN ADMINSTRATOR'S TWENTY-EIGHTH OMNIBUS OBJECTION TO PROOFS OF CLAIM WITH RESPECT TO THE PROOF OF CLAIM FILED BY GREGORY BUSH

**A P P E A R A N C E S :**

WEIL, GOTSHAL & MANGES LLP
*Attorneys for the Plan Administrator*
*on Behalf of the Wind Down Estates*
767 Fifth Avenue
New York, New York 10153
By:     Richard Slack

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:     Richard Levin

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

GREGORY BUSH
*Appearing Pro Se*
5082 Stickney Road
Oneida, NY 13421

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### INTRODUCTION[2]

Gregory Bush ("Claimant") is acting pro se herein. He filed two proofs of claim in these Chapter 11 Cases. On April 25, 2019, Claimant timely filed Proof of Claim No. 1430 ("Claim 1430"), as a general unsecured claim against Ditech Financial, LLC ("Ditech") in the sum of $47,168.41. On October 31, 2019, Claimant filed Proof of Claim No. 24557 ("Claim No. 24557") as an Administrative Expense Claim in the amount of $99,238.01 against Ditech.

Claim No. 1430 is not before the Court. The Plan Administrator previously objected to Claim No. 1430, and the Court disallowed and expunged the claim. The matter before the Court is the Plan Administrator's Twenty-Eighth Omnibus Objection (the "Objection")[3] seeking to disallow and expunge Claim No. 24557 on the grounds that Claimant has not provided sufficient support to establish the validity of the claim in the amount and priority asserted. Claimant filed a response to the Objection (the "Response").[4] The Plan Administrator and the Consumer Claims

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[3] *The Plan Administrator's Twenty-Eighth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Admin Claims)*, ECF No. 1760.

[4] *Response of Gregory Bush*, ECF No. 1909.

Trustee filed a joint reply in further support of the Objection (the "Reply").[5] In substance, the Plan Administrator and the Consumer Claims Trustee argue that the Court should disallow and expunge Claim No. 24557 because it fails to state a claim for relief against Ditech. Alternatively, they contend that Claimant has not alleged facts demonstrating that Claim No. 24557 is entitled to administrative priority status and that, at best, the claim is a time-barred Consumer Creditor Claim.

Pursuant to the Claims Procedures Order,[6] Claimant's filed Response adjourned the Objection to provide time for the Court to conduct a Sufficiency Hearing on Claim No. 24557. At a Sufficiency Hearing, the Court employs the legal standard of review applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Claims Procedures Order ¶ 3(iv)(a). The Court conducted a Sufficiency Hearing on the Claim. The Plan Administrator and Consumer Claims Trustee appeared through their respective counsel, and Claimant appeared pro se. The Court heard arguments from the parties at the hearing.

The Court has reviewed Claim No. 24557, the Objection, the Response, and the Reply, including all documents submitted in support thereof, and has considered the arguments made by the parties in support of their respective positions. In doing so, and in accordance with the Rule 12(b)(6), the Court has accepted Claimant's well-pleaded factual allegations as true, and has drawn all reasonable inferences in Claimant's favor. In light of Claimant's pro se status, the Court has liberally construed Claim No. 24557 and the Response to raise the strongest arguments that they suggest. As explained below, Claimant fails to allege facts demonstrating that Claim No. 24557

---

[5] *Joint Reply of Plan Administrator and Consumer Claims Trustee in Further Support of the Plan Administrator's Twenty-Eighth Omnibus Objection to Proofs of Claims (No Basis Consumer Credit Admin Claims) with Respect to Claim No. 24557 Filed by Gregory Bush,* ECF No. 5232.

[6] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

qualifies as an Administrative Expense Claim, and that its states a claim to relief against Ditech.

Accordingly, the Court sustains the Objection and disallows and expunges Claim No. 24557.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States

District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska,

C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

### The Loan

On or around June 30, 2008, Claimant executed a promissory note in favor of Countrywide

Bank, FSB (the "Note"), in the amount of $160,000, secured by a mortgage (the "Mortgage,"

together with the Note, the "Loan") on real property located at 5082 Stickney Road, Oneida, New

York 13421 (the "Property"). Reply ¶ 1.[7]

On August 28, 2012, the Mortgage was assigned from Mortgage Electronic Registration

Systems, Inc., as nominee for Countrywide Bank, FSB, to Bank of America (the "First

Assignment"). *Id.* ¶ 2.[8] On May 16, 2013, the Mortgage was assigned from Bank of America,

---

[7] The Note and Mortgage are annexed to the Reply as Exhibit A and Exhibit B, respectively. The Court takes judicial notice of the Note, Mortgage, and the other documents annexed to the Reply. "On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are 'integral' to the complaint." *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)). Because Sufficiency Hearings consider consumer claims, often by unrepresented claimants whose claims lack detail or do not attach pertinent supportive documentation, it has been the practice of this Court to consider the Plan Administrator or the Consumer Claims Trustee's documentary submissions together with claims as if they were consolidated. The Court does so here.

[8] The First Assignment is annexed as Exhibit C to the Reply.

N.A., to Green Tree Servicing, LLC (the "Second Assignment"). *Id*. ¶ 3.[9] On February 20, 2020, the Mortgage was assigned from Ditech Financial, LLC f/k/a Green Tree Servicing, LLC to New Residential Mortgage, LLC (the "Third Assignment"). *Id*.[10]

**The Chapter 11 Cases**

On February 11, 2019, Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates, including Ditech (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[11] The Court extended the General Bar Date for consumer borrowers to June 3, 2019.[12]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, and the Court entered a confirmation order (the "Confirmation Order").[13] The Third Amended Plan went into

---

[9] The Second Assignment is annexed as Exhibit D to the Reply.

[10] The Third Assignment is annexed as Exhibit E to the Reply.

[11] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[12] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[13] *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1404.

effect on September 30, 2019.[14] Under the Confirmation Order, the deadline for filing Administrative Expense Claims was November 11, 2019.

The Plan Administrator is a fiduciary under the Third Amended Plan. *See* Third Amended Plan, art. I, §§ 1.130, 1.184, 1.186. The Plan Administrator is charged with winding down, dissolving and liquidating the Wind Down Estates and is provided exclusive authority to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims. *Id.* art. VII, § 7.1. The Consumer Claims Trustee is responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims. *See id.* art. I, § 1.41. As such, she is exclusively authorized to object to Consumer Creditor Claims. *Id.* art. VII, § 7.1.

**The Claims Procedures Order**

Under the Claims Procedures Order, a properly filed and served response to a claim objection, omnibus or otherwise, gives rise to a "Contested Claim." *See* Claims Procedures Order ¶ 3(iv). A Contested Claim is resolved at a hearing, which can be scheduled as either a "Merits Hearing," an evidentiary hearing on the merits of the Contested Claim, or a "Sufficiency Hearing," a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. *Id.* ¶ 3(iv)(a)-(b). At a Sufficiency Hearing, the Court applies the legal standard of review applied to a motion to dismiss under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

---

[14] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

**The Claims**

Claimant timely filed Claim No. 1430 on April 25, 2019, as an unsecured claim in the sum of $47,168.41. Claim No. 1430 at 1.[15] The claim consists of two Official Form 410 Proofs of Claim, an unsigned copy of the Note (including an amortization schedule), a "Payment History," and a Billing Statement dated March 16, 2019. *Id.* at 1-16. Claimant asserts that the "basis of the claim" is "Money overpaid," *id.* at 2, and "Breach of Contract. Payments to Debtor are current, but not properly credited[,]" *id* at 5. Claim No. 1430 was among the claims at issue in the Consumer Claims Trustee's First Omnibus Objection to Claims.[16] The Court sustained the objection to Claim No. 1430 and disallowed and expunged the claim.[17]

In Claim No. 24557, Claimant asserts an unsecured Administrative Expense Claim against Ditech in the sum of $99,238.01. Claim No. 24557 at 1-2.[18] Claimant states the basis of Claim No. 24557 is "insurance." *Id.* at 2. He says that the full amount of Claim No. 24557 qualifies for administrative expense priority under section 503(b)(9) of the Bankruptcy Code. *Id.* That section provides that creditors who have delivered goods to the Debtor within twenty days prior to the petition date are entitled to administrative expense priority for the value of those goods. *See* 11 U.S.C. § 503(b)(9).

In support of the claim, Claimant annexes two documents with the heading "New York Central Mutual." *Id.* at 4-5. The first document consists of the record of a check sent by "Onegroup

---

[15] Page citations are to the PDF page numbers of Claim 1403.

[16] *Consumer Claims Trustee's First Omnibus Objection to Proofs of Claim (Insufficient Documentation Unsecured Consumer Creditor Claims*, ECF No. 1962.

[17] *Order Granting Consumer Claims Trustee's First Omnibus Objection to Proofs of Claim (Insufficient Documentation Unsecured Consumer Creditor Claims)*, ECF No. 2303, p. 7.

[18] Page citations are to the PDF page numbers of Claim 24557.

NY Inc" to the "insured" in the amount of $78,238.01 "in payment of: fire." *Id.* at 4. It does not

include a copy of the check, although it includes the check date and number. *Id.*

The second document consists of the record of a check sent by "Onegroup NY Inc" to the

"insured" in the amount $6,000 "in payment of: fire adjuster estimate settlement letter." *Id.* at 5. It

includes a copy of the check, dated April 16, 2019. *Id.* The check is payable to the order of Ditech

Mortgage Company, Amy M. Bush, and Gregory K. Bush. *Id.*

Claimant also annexes a statement purporting to account for the balance of Claim 24557,

as follows:

> The additional $15,000 is for temporary housing that is necessary because my home
> is uninhabitable. in asserting his Claim. The insurance company paid the rental for
> 9 months. The house would've been completed if Ditech had released the funds in
> a reasonable time.

*Id.* at 6.[19] With the two checks aggregating $84,238.01, this amount makes up the total amount of

Claim No. 24557. *Id.* at 2, 4-6.

## The Objection

The Plan Administrator seeks entry of an order disallowing and expunging Claim No.

24557. Objection ¶ 12. The Plan Administrator contends that based upon the Debtors' books and

records, there is no amount due or owing on the specified claims in the amount and priority

asserted. *Id.* ¶ 17. Specifically, the Plan Administrator asserts that Claim No. 24557 lacks sufficient

documentation to support its validity. Objection Ex. A at 5.

## The Response

In his single page Response, Claimant asserts that "[t]his claim has been made because of

Ditech's failure to perform their fiduciary responsibility as dictated by the mortgage." As support

---

[19] Claimant does not state why the insurance company made the rental payments or explain why his house is uninhabitable.

he attaches what he describes as "Ditech's accounting of a loan previously provided to me."[20] He maintains that the accounting shows that "in direct violation of the contract," Ditech "received funds and applied them to the Unapplied Funds." He says that no partial payments were made on the loan, so "zero funds" should have been applied to Unapplied Funds.

Claimant maintains that since November 28, 2016, he has made loan payments electronically via direct bank transfer, and made an additional transfer of $1,657.37. He contends that Ditech failed to acknowledge these payments and twice started foreclosure proceedings against him. He asserts that Ditech refused to accept a March 2019 payment. Claimant says that the accounting shows that although he has made payments in excess of the "amount required," he owes $3,102.86 more than he borrowed. He says, "[t]he only way this can happen is through creative accounting."

Finally, he asserts that the $ 15,975.86 reflected in the attachment as "accrued unpaid interest" came as a "surprise" to him. He maintains that "[p]er the contract, interest is to be paid first, then principle once the interest is paid." He contends that "[s]tatements that Ditech has sent to me reflect that principle was being paid down."

**The Reply**

The Plan Administrator and the Consumer Claims Trustee contend that the Court should disallow and expunge Claim No. 24557 in its entirety on the merits, whether as an Administrative Expense Claim or as a Consumer Creditor Claim. Reply ¶ 10. They argue that the Response focuses on Ditech's alleged misapplication of payments under the Mortgage and, as such, addresses issues related to Claim No. 1430—not to Claim No. 24557. They assert that since the Court has

---

[20] The attachment is Shellpoint Mortgage Servicing's "Validation Of Debt Notice" dated December 12, 2019. In the Response, Claimant asserts that Shellpoint has acquired the Mortgage.

disallowed Claim No. 1430, it should not consider arguments in the Response that address Claim 1430. *Id.* ¶¶ 15-17.

The Plan Administrator and Consumer Claims Trustee also contend that the Response provides no support for Claim No. 24557. They say that construing the Response and Claim No. 24557 in a light most favorable to the Claimant, they purport to state a claim against Ditech for breach of fiduciary duty or breach of contract, based on Ditech's alleged failure to release insurance proceeds to Claimant on a timely basis. However, the Plan Administrator and the Consumer Claims Trustee argue that Claim No. 24557, as supplemented by the Response, does not support a claim against Ditech for such relief, as a matter of law. *Id.* ¶¶ 15, 18-22, 45-46. They also argue that Claim No. 24557 is not entitled to an Administrative Expense Claim status, and that the Court should reclassify it as a Consumer Creditor Claim. They contend that, as reclassified, even if Claim No. 24557 is allowable on the merits, the Court should disallow it as late-filed. *Id.* ¶¶ 12, 49-50.

## **LEGAL PRINCIPLES**

A claim properly filed under Section 501 of the Bankruptcy Code is "deemed allowed" absent an objection. 11 U.S.C. § 502(a). Such claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). A court may only disallow a claim if a party in interest has objected, and upon notice and hearing, the court finds the claim falls under one of the exceptions found in Section 502(b) of the Bankruptcy Code. 11 U.S.C. § 502(b); *In re Manhattan Jeep Chrysler Dodge, Inc.*, 602 B.R. 483, 491 (Bankr. S.D.N.Y. 2019) ("Section 502 of the Bankruptcy Code provides generally that a proof of claim should be allowed except to the extent it is objectionable on various grounds."). As relevant to the Objection, section 502(b)(1) provides that a claim may be disallowed to the extent it is "unenforceable against the debtor and

property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re Residential Cap., LLC*, 513 B.R. 446, 458 (Bankr. S.D.N.Y. 2014) (citing *In re W.R. Grace & Co.,* 346 B.R. 672, 674 (Bankr. D. Del. 2006)).

A Sufficiency Hearing is a non-evidentiary hearing to address whether a Contested Claim "has failed to state a claim against the Debtors which can be allowed and should be dismissed pursuant to Bankruptcy Rule 7012." Claims Procedures Order ¶ 3(iv)(a). *See* Fed. R. Bankr. P. 7012(b) (quoting Fed. R. Civ. P. 12(b)) (applying the federal standard under Rule 12(b)(6) motion to dismiss standard to adversary proceedings). The function of a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Havens v. James*, 76 F.4th 103, 116-17 (2d Cir. 2023) (quoting *Festa v. Loc. 3 Int'l Bhd. Of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990)). Rule 12(b)(6) "ensures that, consistent with Rule 8(a), a complaint includes 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Alharbi v. Miller*, 368 F. Supp. 3d 527, 560 (E.D.N.Y. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Accordingly, in applying the legal standards applicable to Rule 12(b)(6) to Claim No. 24557, the Court assesses the sufficiency of the facts alleged in support of the claim in light of the pleading standards under Rule 8(a) of the Federal Rules of Civil Procedure.

Rule 8 calls for a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To satisfy this standard, the complaint must at a minimum 'disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (quoting *Kittay v. Kornstein*,

230 F.3d 531, 541 (2d Cir. 2000)); *see Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) ("[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level.").

The Rule 12(b)(6) standard requires courts to accept all factual allegations as true and to draw all reasonable inferences in favor of the non-moving party. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Further, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding what factual matter to accept as true, the Court is not required to "credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Where, as here, the [Claim] was filed *pro se,* it must be construed liberally to raise the strongest arguments it suggests. Nonetheless, [the] *pro se* [Claimant] must state a plausible claim for relief." *Walker v. Schult,* 717 F.3d 119, 124 (2d Cir. 2013) (internal citations, quotation marks, and brackets omitted); *see also Kimber v. GMAC Mortg., LLC (In re Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) ("Complaints drafted by *pro se* plaintiffs are to be construed liberally, but they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the plaintiff is

complaining about and ... whether there is a legal basis for recovery.'") (quoting *Iwachiw v. New York City Bd. of Elections,* 126 F. App'x 27, 29 (2d Cir. 2005)).

<u>ANALYSIS</u>

Claim No. 24557 alleges that the Debtors owe Claimant $99,238.01 on the basis of "insurance." Claimant attaches evidence of checks from the New York Central Mutual Fire Insurance Company in the amounts of $78,238.01 and $6,000.00, respectively, and a statement that the additional $15,000 is for "temporary housing that his necessary because [Claimant's] house is uninhabitable" and that the "house would've been completed if [Debtors] had released the funds in a reasonable time." Claim No. 24557 at 2, 6. Although Claimant checked the box on Form 410 for administrative expense priority under section 503(b)(9), the Claim is otherwise silent with respect to the basis of the claimed priority.

Claim No. 1430 is a general unsecured claim that is unrelated to Claim No. 24557. As support for Claim No. 1430, Claimant asserts that he and his wife "are mortgagors whose loan was acquired by Ditech. Ditech has received all sums due, misapplied payments." Claim No. 1430 at 5. He contends that "[they] owe Ditech $133,056.85 upon their note & mortgage balance, *not* $180,225.26, as asserted by Ditech in it attached Billing Statement. *Id.* The Response buttresses those arguments, as Claimant asserts that:

> (a) the Debtors did not properly credit Claimant's payments because the Debtors received payments from Claimant and applied them to "Unapplied Funds . . . in direct violation of the contract," failed to acknowledge certain electronic payments made by Claimant, and refused a March 2019 payment made by Claimant, and

> (b) the Debtors generally engaged in "creative accounting" resulting in Claimant owing "more than borrowed" despite making payments "in excess of the amount required."

Response at 1. However, as noted, the Court previously disallowed and expunged Claim No. 1430. That claim is not before the Court in this matter.

In any event, those contentions lend no support to Claim No. 24557. Claim No. 1430 is not

an administrative expense claim. Claimant does not allege facts demonstrating how Ditech's

alleged failure to properly credit his mortgage payments bears on his Administrative Expense

Claim. The Response does not allege facts in support of Claim No. 24557. The Response is

relevant to the Claim No 24457 only to the extent that it asserts that Ditech "failed to perform [its]

fiduciary duties and breached its obligations to pay insurance proceeds to Claimant." *Id.*

The Court first considers whether Claimant has alleged facts demonstrating grounds for

according Claim No. 24457 Administrative Expense Claim status. Thereafter, the Court will

consider whether Claimant has stated either a claim for breach of fiduciary duties or breach of

contract against Ditech.

**Whether Claimant States Grounds For According**
**Claim No. 24557 Administrative Expense Claim Status**

A claimant that asserts a priority bears the burden of establishing its entitlement to priority.

*See, e.g.*, *In re Bethlehem Steel Corp.*, 479 F.3d 167, 172 (2d Cir. 2007) ("The burden of proving

entitlement to priority payment. . . rests with the party requesting it.") (internal quotation marks

and citations omitted); *In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. 482, 489 (Bankr.

S.D.N.Y. 1991) ("The burden of establishing entitlement to priority rests with the claimant and

should only be granted under extraordinary circumstances[.]") (internal quotation marks and

citation omitted).

Claim No. 24557 purports to assert an administrative expense priority claim against Ditech

under section 503(b)(9) of the Bankruptcy Code. That section provides administrative expense

priority for "the value of any goods received by the debtor within 20 days before the date of

commencement of a case under this title in which the goods have been sold to the debtor in the

ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9). Claimant does not state a claim

for priority treatment under section 503(b)(9) because he does not allege facts demonstrating that he provided goods to the Debtors, let alone during the twenty days prior to the commencement of the case. *See In re Great Atl. & Pac. Tea Co., Inc.*, 657 B.R. 572, 585 (Bankr. S.D.N.Y. 2024) ("Section 503(b)(9) is a unique part of the Bankruptcy Code because it accords administrative claim status to the amount owed to a provider of goods who delivered goods to a debtor during the twenty days prior to the date that the debtor filed for bankruptcy for what otherwise would have been an unsecured claim.").

## Whether Claim No. 24557 States a Claim Against Ditech

### *Breach of Fiduciary Duty*

Under New York law, the elements of a claim for breach of fiduciary duty are: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Johnson v. Nextel Commc'ns, Inc.,* 660 F.3d 131, 138 (2d Cir. 2011) (citations omitted).

In broad strokes, "a fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another." *Blank v. TriPoint Glob. Equities, LLC,* 338 F. Supp. 3d 194, 221 (S.D.N.Y. 2018) (citation omitted); *see also Teachers Ins. & Annuity Ass'n of Am. v. Wometco Enters.,* 833 F.Supp. 344, 349-50 (S.D.N.Y. 1993) ("New York law inquires whether one person has reposed trust or confidence in the integrity and fidelity of another who thereby gains a resulting superiority or influence over the first.") (citation omitted).

It is well settled under New York law that a lender is not in a fiduciary relationship with a borrower, and thus a lender does not owe a borrower any special duties. *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F.Supp. 2d 222, 236 (E.D.N.Y. 2013). Similarly, "a mortgage servicer owes no duty of care to a borrower." *Best v. Bank of Am., N.A.*, No. 14-CV-6546, 2015 WL

5124463, at *7 (E.D.N.Y. Sept. 1, 2015). However, in "unusual circumstances" a fiduciary relationship may arise even between a borrower and lender "if there is either a confidence reposed which invests the person trusted with an advantage in treating with the person so confiding, or an assumption of control and responsibility[.]" *Manufacturers Hanover Tr. Co. v. Yanakas*, 7 F.3d 310, 318 (2d Cir. 1993) (internal quotations and citations omitted). Accordingly, to state a breach of fiduciary duty claim against Ditech, Claimant must allege facts demonstrating that his relationship with Ditech was more than a mortgage servicer/borrower relationship.

Claimant states that Ditech failed to "perform their fiduciary responsibility as dictated by the mortgage." Response at 1. However, Claimant has failed to allege facts demonstrating the existence of a "special relationship" between himself and Ditech beyond that created by the Mortgage. As such, he has not alleged facts demonstrating that he had a fiduciary relationship with Ditech. *See, e.g., Iannuzzi v. Am. Mortg. Network, Inc*., 727 F. Supp. 2d 125, 138 (E.D.N.Y. 2010) ("Those facts, as a matter of law, are insufficient to establish a fiduciary relationship. In short, plaintiffs do not point to any evidence from which a rational jury could conclude that plaintiffs reposed trust or confidence in [defendant] whereby [defendant] gained superiority or influence over plaintiffs."); *Citibank, N.A. v. Silverman*, 925 N.Y.S.2d 442, 445 (1st Dep't 2011) ("[Defendant's] conclusory allegations that his relationship with plaintiff was more than that of a lender and borrower and that he relied on plaintiff's advice are insufficient to raise the inference that [the] bank-borrower relationship was special.") (citation omitted). In short, there are no plausible facts asserted in Claim 24557 that suggest that there was any type of special relationship between Claimant and Ditech. Claimant fails to state a claim for breach of fiduciary duty against Ditech.

*Breach of Contract*

Under New York law, "[t]he essential elements for pleading a cause of action to recover damages for breach of contract are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach." *Dee v. Rakower*, 976 N.Y.S.2d 470, 474 (2d Dep't 2013) (citing *Elisa Dreier Reporting Corp. v. Global Naps Networks, Inc.,* 921 N.Y.S.2d 329, 333 (2d Dep't 2011); *Brualdi v. IBERIA Lineas Aeraes de España, S.A.,* 913 N.Y.S.2d 753, 754-55 (2d Dep't 2010); *JP Morgan Chase v. J.H. Elec. of N.Y., Inc.,* 893 N.Y.S.2d 237, 239 (2d Dep't 2010); *Furia v. Furia,* 498 N.Y.S.2d 12, 13 (2d Dep't 1986)).

Damages for breach of contract are intended to "give the injured party the benefit of the bargain by awarding a sum of money that will ... put that party in as good a position as it would have been in had the contract been performed." *Goodstein Constr. Corp. v. City of New York,* 604 N.E.2d 1356, 1360 (N.Y. 1992) (citation omitted). "Without a clear demonstration of damages, there can be no claim for breach of the contract." *Milan Music, Inc. v. Emmel Comm. Booking, Inc.,* 829 N.Y.S.2d 485, 486 (1st Dep't 2007).

A breach of contract claim will withstand a motion to dismiss only if plaintiff "allege[s] the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated." *Sirohi v. Trustees of Columbia Univ.,* No. 97-7912, 1998 WL 642463, at *2 (2d Cir. Apr. 16, 1998). Accordingly, a cause of action for breach of contract composed entirely of "conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co., Inc.,* 87 F.3d 65, 70 (2d Cir. 1996).

Claimant asserts that his house would have been completed if Debtors had released his insurance proceeds in a reasonable time. As support for that contention, he attaches evidence of two checks from the New York Central Mutual Fire Insurance Company to Claimant for $78,238.01 and $6,000, respectively. *See* Claim No. 24557 at 4-5. Claimant provides no explanation for how the checks relate to Claim No. 24557. The Court understands Claimant to allege that Ditech owes Claimant the amount of insurance checks received by the Claimant and states that the Debtors owe claimant an additional $15,000 "for temporary housing that is necessary because my house is uninhabitable." *Id.* at 4-6. The Response does not address these allegations or provide any support for them.

To the extent Claimant's house was damaged and the two checks were issued to Claimant by an insurance company on account of the damages, neither Claim No. 24457 nor the Response provides any basis or explanation as to why the Debtors would additionally owe Claimant the amount of those insurance checks or the cost of Claimant's temporary housing as a result of not being able to stay at his home. These conclusory and vague allegations are not sufficient to state a claim for breach of contract against Ditech. *See In re Residential Cap., LLC*, 529 B.R. 806, 818 (Bankr. S.D.N.Y. 2015) (debtor's mere allegation of mortgage company "improperly credited monies, or delayed crediting monies, to interest and principal" is too vague and fails to meet the applicable pleading standards for a breach of contract claim). Claimant fails to state a claim for breach of contract against Ditech.

## <u>CONCLUSION</u>

Based on the foregoing, the Court sustains the Objection and disallows Claim No. 24557.

The Court need not, and does not, address the remaining points raised by the Plan Administrator

and Consumer Claims Trustee in support of the Objection.

IT IS SO ORDERED.


Dated:  December 5, 2024
        New York, New York

                                        /s/ *James L. Garrity, Jr.*
                                        Honorable James L. Garrity, Jr.
                                        United States Bankruptcy Judge