| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | NOT FOR PUBLICATION |
| ----------------------------------------------------------x<br>In re:               :<br>                     :<br>Ditech Holding Corporation, *et al.*,    :<br>                     :<br>                   Debtors.[1]  :<br>----------------------------------------------------------x | Case No. 19-10412 (JLG)<br>Chapter 11<br><br>Jointly Administered |

## MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS TRUSTEE'S THIRTY-NINTH OMNIBUS OBJECTION TO PROOFS OF CLAIM WITH RESPECT TO THE PROOF OF CLAIM FILED BY JACQUELINE SKORCZ

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:    Richard Levin

JACQUELINE SKORCZ
*Appearing Pro Se*
1234 Main Street
Newark, NJ 07102

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### INTRODUCTION[2]

Jacqueline Skorcz (the "Claimant") is acting pro se herein. She timely filed Proof of Claim No. 1262 (the "Claim") as an unsecured claim in the amount of $58,610.99 against Ditech Holding Corp. (f/k/a Walter Investment Management Corp.) ("Ditech"). The Consumer Claims Trustee filed the Thirty-Ninth Omnibus Objection (the "Objection")[3] seeking to disallow proofs of claim, including the Claim, that do not provide a sufficient legal basis to establish liability on the part of Ditech. Claimant filed a response to the Objection (the "Response").[4] The Consumer Claims Trustee replied to the Response and in further support of the Objection (the "Reply").[5] In substance, the Consumer Claims Trustee contends that the Court should disallow the Claim because it fails to state a claim for relief against Ditech.

Pursuant to the Claims Procedures Order,[6] Claimant's filed Response adjourned the Objection to provide time for the Consumer Claims Trustee to request the Court to conduct a Sufficiency Hearing on the Claim. At a Sufficiency Hearing, the Court employs the legal standard of review applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Claims

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[3] *Thirty-Ninth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims)*, ECF No. 3094.

[4] *Response of Jacqueline Skorcz*, ECF No. 3193.

[5] *Reply of the Consumer Claims Trustee in Support of the Thirty-Ninth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims) with Respect to the Claim of Jacqueline Skorcz (Claim 1262)*, ECF No. 5239.

[6] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

Procedures Order ¶ 3(iv)(a). The Court conducted the Sufficiency Hearing. The Consumer Claims Trustee appeared through counsel, and Claimant appeared pro se. The Court heard arguments from the parties at the hearing.

The Court has reviewed the Claim, Objection, Response, and Reply, including all documents submitted in support thereof, and has considered the arguments made by the parties in support of their positions. In doing so, and in accordance with the Rule 12(b)(6), the Court has accepted Claimant's well-pleaded factual allegations as true, and has drawn all reasonable inferences in Claimant's favor. In light of Claimant's pro se status, the Court has liberally construed the Claim and Response to raise the strongest arguments that they suggest.

As explained below, the Claim fails to state a claim to relief against Ditech. Accordingly, the Court sustains the Objection and disallows the Claim.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

### The Loan

Vaine E. George ("Vaine") and Verda R. George ("Verda," with Vaine, the "Georges"), both deceased, owned a manufactured home located at 712 Grant 55, Hensley, Arkansas 72065 (the "Property"), that was purchased through a loan with Ditech. Claim at 3.[7] Vaine predeceased

---

[7] Page citations are to the PDF page numbers of Claim 1262.

3

Verda. Claimant is Vaine's and Verda's daughter. The Court understands that Claimant is the administrator of Verda's estate.[8]

On or about October 7, 2002, the Georges executed a Manufactured Home Retail Installment Contract and Security Agreement ("Loan Contract")[9] in favor of Conseco Finance Servicing Corp. in the amount of $54,039.82. The Loan Contract was secured by a security interest on the Property. Conesco perfected its security interest in the Property by filing a Certificate of Title in the State of Arkansas ("Certificate of Title"). The Certificate of Title lists a vehicle identification number associated with the Property and provides the owners of the Property are the Georges.[10] The issue date is "01/08/2003."

**The Chapter 11 Cases**

On February 11, 2019, Ditech and certain of its affiliates (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession and control of their business and assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity to file a

---

[8] Claimant filed the Claim as the current creditor, but lists Vaine and Verda, and the Estate of Vaine E. or Verda R. George as "other names the creditor used with the debtor." Claim at 1.

[9] Claimant does not attach the Loan Contract to any of her pleadings, and it is not available in the public record. However, in the Claim, Claimant relies on the Loan Contract to establish her alleged injuries and it is integral to the Claim. The Court takes judicial notice of the Loan Contract. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) (court may consider extraneous documents of which plaintiff already has knowledge and/or possession, so long as plaintiff relied on such documents in bringing suit). The Loan Contract is annexed as Exhibit A to the Reply.

[10] The vehicle identification number is NF L227AB58269CY12.

proof of claim in the Chapter 11 Cases (the "General Bar Date").[11] The Court extended the General Bar Date for consumer borrowers to June 3, 2019.[12]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, which went into effect on September 30, 2019.[13] The Consumer Claims Trustee is a fiduciary under the plan. She is responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims. Third Amended Plan, art. I, § 1.41. As such, she is exclusively authorized to object to Consumer Creditor Claims. *Id.* art. VII, § 7.1.

**The Claims Procedures Order**

Under the Claims Procedures Order, a properly filed and served response to a claim objection, omnibus or otherwise, gives rise to a "Contested Claim." *See* Claims Procedures Order ¶ 3(iv). A Contested Claim is resolved at a hearing, which can be scheduled as either a "Merits Hearing," an evidentiary hearing on the merits of the Contested Claim, or a "Sufficiency Hearing," a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. *Id.* ¶ 3(iv)(a)-(b). At a Sufficiency Hearing, the Court applies the legal standard of review applied to a motion to dismiss under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

---

[11] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[12] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[13] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

**The Claim**

In Claimant's Official Form 410, Proof of Claim, she asserts an unsecured claim in the amount of $58,610.99 based on "Unpaid Insurance Claims – See attached explanation." Claim at 1-2. In support of the Claim, Claimant annexed a document titled "Attachment to Proof of Claim Form – Submitted by Jacqueline Skorcz" dated April 23, 2019. *Id*. at 3. It provides a short narrative explaining that she is filing the Claim on behalf of the Georges, who are now deceased. *Id*.

Claimant states that the Property was "purchased through a loan with Ditech" and "was insured by policies administered by Ditech." *Id*. Claimant does not attach the referenced loan documents or insurance policies. Claimant further asserts, in substance, that the Property was damaged by "uncontrollable acts of nature," and that she submitted a number of insurance claims to be made whole from the damages. *Id*. She says that Ditech has acknowledged responsibility for payment of funds to her, based on the damage claims. *Id*. Claimant identifies damages "currently unrecovered for" based on a "contractor's estimate." *Id*. She attaches a document titled "Proposal" with the subject line "RE: Refurbish of 712 Grant 55, Hensley, AR 72065." *Id*. at 4-5. That appears to be the estimate she refers to (the "Estimate"). *Id*. at 3-5. The Estimate states that it was prepared by "Carson Services, Inc" on April 21, 2019, for "Jackie Skorcz." *Id*. at 4. It proposes "to provide labor and material to perform the following work to correct water damage from March 2013 and the subsequent mold damage caused by this over the last 6+ years." *Id*. The Estimate totals $58.610.99, and includes an itemized list of corrective actions to be completed. *Id*. at 4-5.

**The Objection**

The Consumer Claims Trustee seeks entry of an order disallowing and expunging the Claim. Objection ¶ 3. She contends that, based upon review of the Debtors' books and records, the Claim fails to adequately state a legal basis which would establish liability on the part of the

Debtors. *Id*. ¶ 8. The Consumer Claims Trustee denies that Ditech withheld insurance proceeds from the Georges and asserts that Ditech's books and records show that Ditech paid the remaining insurance proceeds by check dated February 21, 2019 (the "February 2019 Check") and that the Georges cashed the check on April 19, 2019. *Id*. Ex. A at 5.

**The Response**

Claimant contends that the Court should deny the Objection, allow the Claim, and grant her fees and costs incurred in responding to the Objection. Response at 2. She acknowledges that the Georges received the February 2019 Check, but contends that additional proceeds were owed and never paid. *Id*. ¶ 3. Specifically, she asserts she (i) received "Check #610273278" (the "Check") in the sum of $4,975.57 (the "Insurance Proceeds"), (ii) endorsed the check and returned it to Ditech for endorsement, and (iii) Ditech did not return it. *Id*. ¶ 4. As support for that contention, Claimant attaches an insurance report from American Bankers Insurance Co. showing an allowed claim in the amount of $4,975.57. *Id.* Ex. A. The report is dated September 13, 2012, and lists Vaine as the insured, and August 18, 2012, as the date of loss.[14]

Claimant does not include a copy the Check. *See id*. She annexes a check receipt dated September 24, 2012, which includes Claimant's handwritten notes, as follows:

> "[Check] had to be returned for endorsement by Greentree. I had to pay $18.95 processing. $15.00 to FedEx, without return [label] after mother deceased, upon request for reissuance and release to Jackie Skorcz (Mcguire) they proceeded to begin canceling policies, resist acknowledging refusal communicating, cash held Payments for over 24 months drawing interest off [my] funds, then send [back] always to meet their deceptive negligence [ ] to keep money."[15]

---

[14] The insurance report is annexed as Exhibit A to the Response.

[15] The check receipt is annexed as Exhibit B to the Response.

7

*Id*. Ex. B. Claimant asserts that she made "multiple attempts to ascertain the status of the missing check" and that Ditech "continuously responded with letters stating the account was being reviewed and the inquiry was being investigated." *Id.* ¶ 5.[16] Finally, she asserts that due to Ditech's continued delays in providing payment of Insurance Proceeds, she was unable to make necessary repairs to the Property, which resulted in significant damages in the amount of $58,610.99, "as evidenced by the [Estimate]." *Id*. ¶ 6.[17]

**The Reply**

The Consumer Claims Trustee asserts, in substance, that the Claim, as supplemented by the Response, does not satisfy the pleading standards of Rule 8(a) of the Federal Rules of Civil Procedure ("Rule 8(a)") because it lacks sufficient information for her to ascertain the nature and basis of the Claim. Reply ¶¶ 22-24. The Consumer Claims Trustee asserts that Claimant's "primary concern" is "Debtor's failure to return an insurance proceeds check in September 2012 in the amount of $4,975.57." *Id*. ¶ 25 (citing Response ¶¶ 5-6). She contends that although Claimant "do[es] not articulate the legal theories under which [she] pursue[s] relief for any of [the] alleged acts by Debtor," *id*., given Claimant's pro se status, she interprets the Claim, as supplemented by the Response, as a request for relief for breach of contract and for relief under the Real Estate Settlement Procedures Act ("RESPA"), *id*. ¶ 26. Specifically, she construes the Claim to assert that Ditech breached its obligation to provide insurance proceeds and violated RESPA's requirements that loan servicers respond to requests for information. *Id*. ¶¶ 27-33, 38-41.

---

[16] As Exhibit C to the Response, Claimant attaches letters addressed to Vaine, from Green Tree, dated May 29, 2013, and June 13, 2013, respectively, which acknowledge that Green Tree received inquiries from Claimant regarding the Loan Contract account on "05/17/13" and "05/21/13," respectively. In substance, each letter provides that Green Tree will send a written response to the inquiry within sixty days of its receipt of the inquiry. *Id*.

[17] Claimant includes the Estimate in Exhibit D to the Response.

The Consumer Claims Trustee maintains that even as liberally construed, the Claim runs afoul of Rule 12(b)(6), and fails to allege facts supporting a breach of a contract, (and, in any event, is time-barred under Arkansas law), and fails to state a claim for relief under RESPA. *Id.* ¶¶ 27-41.

**The Motion to Estimate**

On March 23, 2023, the Consumer Claims Trustee filed a motion seeking to estimate the Claim at $58,610.99 for the purpose of setting a distribution reserve.[18] It also sought to reclassify the Claim as a non-363(o), Class 6 Consumer Creditor Claim, as defined by the Third Amended Plan. By order dated May 11, 2023,[19] the Court granted the motion for the requested relief.

## LEGAL PRINCIPLES

A claim properly filed under section 501 of the Bankruptcy Code is "deemed allowed" absent an objection. 11 U.S.C. § 502(a). Such claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). A court may only disallow a claim if a party in interest has objected, and upon notice and hearing, the court finds the claim falls under one of the exceptions found in Section 502(b) of the Bankruptcy Code. 11 U.S.C. § 502(b); *In re Manhattan Jeep Chrysler Dodge, Inc.*, 602 B.R. 483, 491 (Bankr. S.D.N.Y. 2019) ("Section 502 of the Bankruptcy Code provides generally that a proof of claim should be allowed except to the extent it is objectionable on various grounds."). As relevant to the Objection, section 502(b)(1) provides that a claim may be disallowed to the extent it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To

---

[18] Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim, ECF No. 4650.

[19] Order Granting Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim, ECF No. 4733.

9

determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re Residential Cap., LLC*, 513 B.R. 446, 458 (Bankr. S.D.N.Y. 2014) (citing *In re W.R. Grace & Co.,* 346 B.R. 672, 674 (Bankr. D. Del. 2006)).

The merits of the Claim are not at issue. A Sufficiency Hearing is a non-evidentiary hearing to address whether a Contested Claim "has failed to state a claim against the Debtors which can be allowed and should be dismissed pursuant to Bankruptcy Rule 7012." Claims Procedures Order ¶ 3(iv)(a). *See* Fed. R. Bankr. P. 7012(b) (quoting Fed. R. Civ. P. 12(b)) (applying the federal standard under Rule 12(b)(6) motion to dismiss standard to adversary proceedings). The function of a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Havens v. James*, 76 F.4th 103, 116-17 (2d Cir. 2023) (quoting *Festa v. Loc. 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990)).[20] Rule 12(b)(6) "ensures that, consistent with Rule 8(a), a complaint includes 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Alharbi v. Miller*, 368 F. Supp.3d 527, 560 (E.D.N.Y. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Accordingly, in applying the legal standards applicable to Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the Claim in light of the pleading standards under Rule 8(a) of the Federal Rules of Civil Procedure.

---

[20] "On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are 'integral' to the complaint." *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citing *Brass v. American Film Techs.*, 987 F.2d 142, 150 (2d Cir. 1993); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)). Because Sufficiency Hearings consider consumer claims, often by unrepresented claimants whose claims lack detail or do not attach pertinent supportive documentation, it has been the practice of this Court to consider the Consumer Claims Trustee's documentary submissions together with claims as if they were consolidated. The Court does so here.

Rule 8 calls for a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To satisfy this standard, the complaint must at a minimum 'disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)); *see Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) ("[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level.").

The Rule 12(b)(6) standard requires courts to accept all factual allegations as true and to draw all reasonable inferences in favor of the non-moving party. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Further, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding what factual matter to accept as true, the Court is not required to "credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Where, as here, the [Claim] was filed *pro se,* it must be construed liberally to raise the strongest arguments it suggests. Nonetheless, [the] *pro se* [Claimant] must state a plausible claim

11

for relief." *Walker v. Schult,* 717 F.3d 119, 124 (2d Cir. 2013) (internal citations, quotation marks, and brackets omitted); *see also Kimber v. GMAC Mortg., LLC (In re Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) ("Complaints drafted by *pro se* plaintiffs are to be construed liberally, but they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the plaintiff is complaining about and . . . whether there is a legal basis for recovery.'" (quoting *Iwachiw v. New York City Bd. of Elections,* 126 F. App'x 27, 29 (2d Cir. 2005) (summary order))).

## ANALYSIS

### Whether Claimant States a Claim Against Ditech

#### *Breach of Contract*

In support of the Claim, Claimant asserts that, on behalf of Vaine and Verda, she "has sought to recover the proceeds under a certain insurance policy or policies." Claim at 3. She says that: (i) at various times, the Property was damaged by uncontrollable acts of nature, (ii) the Property was insured by insurance policies administered by Ditech, (iii) Claimant submitted a number of insurance claims to be made whole from the damages, and (iv) Ditech has acknowledged responsibility for payment of funds to the Claimant, based on the damage claims. *Id.* She says that there are damages to the Property "currently unrecovered for, in the amount of $58,610.99." *Id.* She attaches the Estimate to the Claim.

In her Response, the Claimant clarifies that she received insurance proceeds on February 21, 2019, but alleges "that additional proceeds were owed and never paid." Response ¶ 3. Specifically, she complains that the Check was "sent to *Creditor for insurance* proceeds; however, Creditor had to endorse the [C]heck and then return it to Debtor for Debtor's endorsement. After which, Debtor never returned the [C]heck." *Id.* ¶ 4. She maintains that "[a]s a result of Debtor's

12

continued delays in providing payment of [I]nsurance [P]roceeds, Creditor was unable to make necessary repairs to the mobile home resulting in significant damages in the amount of $58,610.99 . . . ." *Id.* ¶ 6.

Under Arkansas law, to state a claim for breach of contract, the plaintiff must allege facts showing (1) the existence of an enforceable contract, (2) an obligation on the part of the defendant under the contract, (3) a failure to perform the obligation, and (4) resulting damages. *Smith v. Eisen*, 245 S.W.3d 160, 168 (Ark. App. 2006). Claimant has failed to state a claim for breach of contract against Ditech under Arkansas law.

First, Claimant fails to provide the insurance policy that Ditech allegedly breached. Claimant fails to allege what insurance claims were made, as Claimant simply states that Claimant "submitted a number of insurance claims." Claim at 3. The record is also unclear as to what insurance proceeds were paid out or even the amount of insurance available.

The Loan Contract called for the borrowers to insure the Property against loss, expense or damage and to list the Debtors as loss payee on the insurance policy. Loan Contract ¶ 16. The borrowers agreed that the insurance company could make any payments due under the policy directly to Debtors and the Debtors could "do whatever [Debtors] think is necessary to be sure that any proceeds of the insurance will be used to repair the Manufactured Home or pay off [the Loan] Contract." *Id*. Thus, pursuant to the Loan Contract, Ditech was entitled to receive the Insurance Proceeds, and to apply them either to pay down the Loan or repair the Property—in its discretion. Claimant does not allege facts demonstrating that Ditech was obligated to release the Insurance Proceeds to her, or that Ditech breached any written or oral agreement as to the application of those proceeds.

13

Finally, Claimant fails to allege facts demonstrating how she was damaged by Ditech's alleged failure to release the Insurance Proceeds. Claimant provides an insurance adjuster's report, dated September 13, 2012, that estimates repair costs at $7,605.78 or $2,630.21 in excess of the Insurance Proceeds. Response ¶¶ 3-4. She does not account for the difference between the Insurance Proceeds and repair costs, or demonstrate how the alleged failure to remit the Insurance Proceeds gave rise to damages totaling $58,610.99. Instead, Claimant attaches a proposal from Carson Services, Inc. dated nearly seven years after Ditech's alleged breach of the Loan Contract, showing repair costs in excess of the amount of money originally loaned to the borrowers. *Id*. at 10-11. Claimant has failed to state a claim for breach of contract against Ditech.

Even if Claimant could allege facts in support of a breach of contract claim against Ditech, that claim is time-barred under Arkansas law. "For breach of contract, the true test [under Arkansas law] in determining when a cause of action arises or accrues is to establish the time when the plaintiff could have first maintained the action to a successful conclusion." *Oaklawn Bank v. Alford*, 845 S.W.2d 22, 24 (Ark. App. 1993). "A cause of action for breach of contract accrues the moment the right to commence an action comes into existence, and occurs when one party has, by words or conduct, indicated to the other that the agreement is being repudiated or breached." *Shelter Mut. Ins. Co. v. Nash*, 184 S.W.3d 425, 428 (Ark. 2004) (citation omitted); *see also Chapman v. Alexander*, 817 S.W.2d 425, 426 (Ark. 1991) ("In ordinary tort and contract actions, the statute of limitations begins to run upon the occurrence of the last element essential to the cause of action."); *see e.g., Dupree v. Twin City Bank,* 777 S.W.2d 856, 858-59 (Ark. 1989) ("The cause of action for breach of contract accrued when performance by the bank was due . . . ."); *Reece v. Bank of New York Mellon, Trustee for CIT Mortg. Loan Trust 2007-1*, 381 F.Supp. 3d 1009, 1018-

14

19 (E.D. Ark. 2019) (cause of action accrued upon the date of breach, which was on the date of nonpayment under the loan).

Claimant asserts that after she received the Check, she sent it to Ditech by FedEx. Response at 5. Claimant alleges Ditech breached the Loan Contract by failing to endorse the Check and to return it to her. *Id*. The check receipt is dated September 24, 2012. *Id*. Under Arkansas law, actions upon written contracts must be filed within five years of the alleged breach. Ark. Code § 16-56-111; *see also Reece*, 381 F.Supp. 3d at 1018 ("[Plaintiff's] breach of contract claim accrued on or about March 1, 2010, and without tolling, the five-year statute of limitations on [Plaintiff's] breach of contract claim would have run on or about March 1, 2015.").

Vaine died on August 6, 2006, and Verda died on October 29, 2012.[21] Claimant asserts that the breach of contract action accrued in September 2012. Verda did not commence a breach of contract action against Ditech prior to her death. Under Arkansas law, a breach of contract claim exists beyond the decedent's death. *McDonald v. Pettus*, 988 S.W.2d 9, 16 (Ark. 1999). By statute, a representative, administrator, or executor of an estate may bring a contract action after the decedent's death. *See* Ark. Code § 28-49-104 (1987); *see also McDonald*, 988 S.W.2d at 16 (recognizing "that the rights and liabilities under a contract, including rights under a contract requiring personal skill, pass by operation of law to the executor or administrator of a deceased person" (citations omitted)).

Accordingly, under Arkansas law, Claimant, as the administrator of Verda's estate, had standing to bring suit against Ditech for its alleged breaches of the Loan Contract. However, pursuant to section 16-56-117(a) of the Arkansas Code, to be timely, Claimant had to commence

---

[21] *See* https://www.smithfamilycares.com/obituaries/Vaine-George/sympathy and https://www.smithfamilycares.com/obituaries/verda-george.

15

that action within one year after Verda's death.[22] Claimant failed to do so. Accordingly, any breach of contract claim against Ditech under Arkansas law is time-barred.

Bar by a statute of limitation is typically an affirmative defense, which the defendant must plead and prove. *See John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 133 (2008); Fed. R. Civ. P. 8(c). A defendant does not render a complaint defective by pleading an affirmative defense. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980). Accordingly, the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense. *See Ellul v. Congregation of Christian Bros.,* 774 F.3d 791, 798 n.12 (2d Cir. 2014) ("Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.,* 547 F.3d 406, 425 (2d Cir. 2008))); *accord Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter." (citations omitted)).

---

[22] That section states as follows:

> If any person entitled to bring any actions specified in this act dies before the expiration of the time limited for the commencement of the suit, and if the cause of action survives to his or her representatives, then his or her executors or administrators may commence the suit after the expiration of such time and within one (1) year after his or her death, but not after that period.

Ark. Code § 16-56-117(a).

Here, it is clear from the face of the Claim that the Claim is time-barred. Accordingly, even assuming Claimant could allege facts stating a claim for breach of contract, the Court would nonetheless disallow and expunge the Claim as time-barred.

***Whether Claimant has Stated a Claim for a RESPA Violation***

Claimant asserts that Ditech frequently failed to respond to her requests for information regarding the Loan Contract and, particularly, the insurance payments. Claim at 3. She states she has "made multiple attempts to ascertain the status of the missing check" and that "Debtor continuously responded with letters stating the account was being reviewed and the inquiry was being investigated." Response ¶ 5. Claimant contends that the delays in providing her the Insurance Proceeds resulted in significant damage to the Property. *Id*. ¶ 6.

"RESPA was intended to reform the real estate settlement or closing process to give consumers 'greater and more timely information' on the nature and the amount of settlement costs and to protect them 'from unnecessarily high settlement charges.'" *Watt v. GMAC Mortg. Corp.*, 457 F.3d 781, 783 (8th Cir. 2006) (citing 12 U.S.C. § 2601(a)). RESPA is codified at 12 U.S.C. §§ 2601, *et seq*. RESPA's implementing regulations, collectively known as "Regulation X," are set forth in 12 C.F.R. §§ 1024.1-1024.41. Under RESPA, mortgage servicers are required to maintain policies and procedures that enable them to manage borrower loans transparently and effectively. 12 C.F.R. § 1024.38.

RESPA applies to "federally related mortgage loan[s]." 12 U.S.C. § 2602(1). That includes loans secured by a lien on residential real estate "designed principally for the occupancy of from one to four families," for which the lender is federally regulated or has deposits or accounts insured by the federal government. *Id*. at § 2602(1)(A)-(B). That embraces loans "secured by a first or subordinate lien on residential real property . . . ." 12 C.F.R. § 1024.2(b)(9)(1). In Arkansas, a

17

manufactured home is deemed real property only if it is permanently affixed to a foundation on property which is owned by the owner of the manufactured home. Ark. Code § 14-86-102(a)(1).[23] The Loan Contract also does not show any security interest in real property. Rather, it is secured by a lien on the Property pursuant to a Certificate of Title for a vehicle. Claimant has failed to allege facts demonstrating that the manufactured home was permanently affixed to or on land owned by the Georges. Accordingly, RESPA does not apply to the Loan Contract.

As relevant, RESPA requires servicers to "promptly facilitate communication with any potential or confirmed successors in interest regarding the property" upon receiving notice of the death of a borrower or transfer of property securing a mortgage. 12 C.F.R. § 1024.38(b)(vi)(A). And, "[u]pon receiving notice of the existence of a potential successor in interest," a servicer must "promptly determine the documents the servicer reasonably requires to confirm that person's identity and ownership interest in the property and promptly provide to the potential successor in interest a description of those documents and how the person may submit a written request under § 1024.36(i)." *Id*. § 1024.38(b)(vi)(B).

Even if RESPA applied to the Loan Contract, Claimant fails to show that Ditech received notice of the existence of a potential successor in interest. In fact, the letters from Green Tree, addressed to Vaine, state that Green Tree had received requests for information from Mr. George. Response at 7-8. The letters suggest that Ditech had no notice of a potential successor in interest. Absent such notice, Ditech was not obligated to facilitate communication with Claimant. *See* 12 C.F.R. § 1024.38(b)(vi)(A).

---

[23] "A mobile home or manufactured home of any width or description permanently affixed to a foundation on property which is owned by the owner of the mobile home or manufactured home shall be deemed real property for the purposes of the creation of special improvement districts and collection of assessments relative thereto." Ark. Code § 14-86-102(a)(1).

18

## CONCLUSION

Based on the foregoing, the Court sustains the Objection and disallows the Claim.

IT IS SO ORDERED.

Dated: December 12, 2024
    New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge