UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re:                                                          :
                                                                :
Ditech Holding Corporation, *et al.*,                           :
                                                                :
                                              Debtors.[1]        :
------------------------------------------------------------x

NOT FOR PUBLICATION

Case No. 19-10412 (JLG)
Chapter 11

Jointly Administered

**MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS
TRUSTEE'S TWENTIETH OMNIBUS OBJECTION TO PROOFS OF CLAIM WITH
RESPECT TO THE PROOF OF CLAIM FILED BY DEBORAH WARNER**

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:      Richard Levin

DEBORAH WARNER
*Appearing Pro Se*
24864 State Highway 44
Millville, CA 96062

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[2]

Deborah Warner (the "Claimant") timely filed Proof of Claim No. 22916 (the "Claim") as an unsecured claim in an undetermined amount against Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) ("Ditech"). The Consumer Claims Trustee filed her Twentieth Omnibus Objection (the "Objection")[3] seeking to disallow unsecured proofs of claim, including the Claim, that lack sufficient information or documentation to establish their underlying merits. Claimant, acting pro se,[4] filed a response to the Objection (the "Response").[5] The Consumer Claims Trustee replied to the Response (the "Reply").[6] Claimant filed a Sur-Reply in response to the Reply (the "Sur-Reply").[7] The Consumer Claims Trustee filed a response to the Sur-Reply (the "Sur-Response").[8] In sum, the Consumer Claims Trustee argues that the Claim fails to state a claim for relief against Ditech and accordingly, the Court should disallow and expunge the Claim.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[3] *Consumer Claims Trustee's Twentieth Omnibus Objection to Proofs of Claim (Insufficient Documentation Unsecured Consumer Creditor Claims)*, ECF No. 2318.

[4] Counsel for the Claimant filed the Claim, but Claimant has acted pro se in all subsequent proceedings.

[5] *Response of Deborah Warner*, ECF No. 2629.

[6] *Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee's Twentieth Omnibus Objection with Respect to the Claim of Deborah Warner (Claim 22916)*, ECF No. 5222.

[7] *Sur-Reply of Deborah Warner to the Consumer Claims Trustee's Twentieth Omnibus Objection to Proofs of Claim (Claim No. 22916)*, ECF No. 5244.

[8] *Response of the Consumer Claims Trustee to the Sur-Reply of Deborah Warner (Claim 22916)*, ECF No. 5252.

Pursuant to the Claims Procedures Order,[9] Claimant's filed Response adjourned the Objection to provide time for the Consumer Claims Trustee to schedule a Sufficiency Hearing on the Claim. At a Sufficiency Hearing, the Court employs the legal standard of review applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Claims Procedures Order ¶ 3(iv)(a).

The Court held the Sufficiency Hearing. The Consumer Claims Trustee appeared through counsel, and Claimant appeared pro se. At the hearing, the Court heard arguments from the Consumer Claims Trustee's counsel and the Claimant.

The Court has reviewed the Claim, Objection, Response, Reply, Sur-Reply, and Sur-Response, including all documents submitted in support thereof, and has considered the arguments made by the parties in support of their positions. In doing so, and in accordance with the Rule 12(b)(6), the Court has accepted Claimant's well-pleaded factual allegations as true, and has drawn all reasonable inferences in Claimant's favor. In light of Claimant's pro se status, the Court has liberally construed the Claim, Response, and Sur-Reply to raise the strongest arguments that they suggest.

As explained below, the Claim fails to state a claim to relief against Ditech. Accordingly, the Court sustains the Objection and disallows the Claim.

---

[9] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632 (the "Claims Procedures Order").

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

### The Loan

On or around August 23, 2007, Claimant and her former husband, Gary Paul Warner, executed a promissory note in favor of Homecomings Financial, LLC (f/k/a Homecomings Financial Network, Inc.) (the "Note"), in the amount of $256,000.00, secured by a mortgage (the "Mortgage," together with the Note, the "Loan")[10] on the real property located on two separate parcels, identified by parcel number 093-280-017,000 ("Parcel A"), and parcel number 093-110-013-000 ("Parcel B"), respectively, at 24864 State Highway 44, Millville, California 96062 (the "Property"). The Mortgage was recorded in Shasta County, California.

On February 12, 2014, the Mortgage was assigned to Green Tree Servicing LLC and on February 5, 2020, the Mortgage was assigned to New Residential Mortgage LLC.[11] On January

---

[10] The Note and Mortgage are annexed to the Reply as Exhibits A and B, respectively. The Court takes judicial notice of the Note, Mortgage, and the other documents annexed to the Reply and considers them in its determination because they are matters of public record and/or integral to the Claim. *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 219 (S.D.N.Y. 2023) ("'Any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference,' as well as any matters of which judicial notice may be taken, are deemed included in the complaint, so the Court may consider them without converting the motion to dismiss into a motion for summary judgment." (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002))); *Press v. Primavera*, 685 F. Supp. 3d 216, 224 (S.D.N.Y. 2023) ("The Second Circuit has made clear that a court may take judicial notice of publicly filed documents."); *Bloom v. A360 Media LLC*, No. 23-CV-11024, 2024 WL 2812905, at *3 (S.D.N.Y. June 3, 2024) (considering defendant's exhibits on a motion to dismiss because they "provide the entire basis for plaintiff's claims" and are thus integral to the amended complaint).

[11] The Corporate Assignment of Deed of Trust to Green Tree Servicing, Inc. and the Corporate Assignment of Deed of Trust to New Residential Mortgage LLC are annexed to the Reply as Exhibits C and D, respectively.

19, 2021, Claimant and her former husband entered into an agreement with NewRez LLC d/b/a Shellpoint Mortgage Servicing ("NewRez") to modify the Loan, adjusting the principal balance and interest rate.[12]

### The Chapter 11 Cases

On February 11, 2019, Ditech and certain of its affiliates (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession and control of their business and assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[13] The Court extended the General Bar Date for consumer borrowers to June 3, 2019.[14]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, which went into effect on September 30, 2019.[15] The Consumer Claims Trustee is a fiduciary under the plan. *See* Third Amended Plan, art. I, § 1.41. The Consumer Claims Trustee is responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed

---

[12] The Modification Agreement with NewRez is annexed to the Reply as Exhibit E.

[13] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[14] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[15] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

Consumer Creditor Claims. *See id.* art. I, §§ 1.36-1.38. As such, she is exclusively authorized to object to Consumer Creditor Claims. *Id.* art. VII, § 7.1.

**The Claims Procedures Order**

Under the Claims Procedures Order, a properly filed and served response to a claim objection, omnibus or otherwise, gives rise to a "Contested Claim." *See* Claims Procedures Order ¶ 3(iv). A Contested Claim is resolved at a hearing, which can be scheduled as either a "Merits Hearing," an evidentiary hearing on the merits of the Contested Claim, or a "Sufficiency Hearing," a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. *Id.* ¶ 3(iv)(a)-(b). At a Sufficiency Hearing, the Court applies the legal standard of review applied to a motion to dismiss under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

**The Claim**

Claimant asserts an unsecured claim in an "undetermined" amount, based on a "Contract/Executory Contract." Claim at 2. She states the Claim is subject to a right of setoff by property identified as "24864 State Hwy, Millville, CA 96062." *Id.* Claimant filed the Proof of Claim, Official Form 410, but did not provide any information or documentation in support of her Claim.

**The Objection**

The Consumer Claims Trustee objects to the Claim and seeks an order disallowing the Claim in its entirety. Objection ¶ 9. The Trustee states that upon review of the Claim and the Debtor's books and records, the Claim lacks sufficient information or documentation to substantiate the Claim. *Id.* ¶ 4.

**The Response**

In response to the Objection, Claimant asserts that the total amount of her Claim is $28,672.04. Response at 2. She explains:

> Ditech did not pay the property taxes for 5 years. Then when they did, they added on to my mortgage. Then when the new mortgage co. brought us (Shellpoint) they sent me a notice of foreclosure for nonpayment for 6 months. When I called them to explain what had happened they didn't care, they just want my home!

*Id.* at 1. She states that "[a]s a result of Ditech['s] actions[,] these last 4 years have been a real nightmare and [have] caused a great deal of distress." *Id.* at 2.

In support of the Response, she states she is sending papers "from the Calif. tax Board (payment of late taxes paid) in the amount of $13,163.88," papers relating to payments made to a paralegal in the amount of $3,150.24 and "miscellaneous cost[s]" in the amount of $257.57, and a "letter of default in the amount of [$]12,100.35 for a total of [$]28,672.04." *Id.* at 1-2. Claimant attaches a two-page summary of tax history for Parcel B ("Parcel B Tax History")[16] from the Shasta County Tax Collector's Property Tax System, as of "05/18/2020." The summary shows a default date of "06/30/2013," a redemption amount of $13,163.88, and a redemption date of "06/08/2018." Parcel B Tax History at 1. The history shows that, during the corresponding fiscal years, no taxes were paid for the 2012 tax year through 2016 tax year. *Id.* at 2. Claimant includes a partial copy of a check from CoreLogic Tax Services, LLC payable to the Shasta County Tax Collector in the amount of $13,163.88, dated "06-JUN-18," which appears to be payment to redeem the Property (the "Redemption Check").[17]

---

[16] The Parcel B Tax History is annexed as pages 3-4 of the Response.

[17] The Redemption Check is annexed as page 5 of the Response.

The Parcel B Tax History and Redemption Check appear to be the "papers" from the "Calif[ornia] [T]ax Board" showing "late taxes paid" in the amount of $13,163.88. Response at 1. The Court understands that the "payments made to a paralegal in the amount of $3,150.24" that Claimant mentions are evidenced by the copies of two separate wire transfer requests from Claimant to Rockingham Equity, PMA, dated January 24, 2020, and March 23, 2020, respectively ("Wire Transfer Requests").[18] *Id.* at 1. The first request is for a transfer in the amount of $2,400.24, the second requests a transfer of $750.00, for a total of $3,150.24. Wire Transfer Requests at 1-2. At the top of the first wire transfer request, Claimant has handwritten: "payments for paralegal 1-2." *Id.* at 1.

Claimant also includes the first page of a letter serving as a notice of default ("Notice of Default")[19] from the mortgage servicer, NewRez LLC f/k/a/ New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing, to Gary Paul Warner and Deborah L. Warner, dated March 30, 2020. The notice states that the Note is in default, beginning with the missed payment on August 1, 2019. Notice of Default at 1. It provides that "[t]he amount due is **$25,264.23** good through **04/30/2020**" and that failure to cure will result in acceleration of the loan balance and foreclosure of the Property. *Id.* At the top of the Notice of Default, Claimant has handwritten: "25,264.23 – 13,163.88 [=] 12,100.35." *Id*. This is likely "the letter of default in the amount of [$]12,100.35" providing "notice of foreclosure for nonpayment for 6 months" that Claimant describes. Response at 1-2.

---

[18] The Wire Transfer Requests are annexed as pages 6-7 of the Response.

[19] The Notice of Default is annexed as page 8 of the Response. The bottom of the Notice of Default states "Page 1 of 3" but only the first page is included in the Response.

The documents described above do not show any "miscellaneous cost[s] to [Claimant] in the [a]mount of $257.57." *Id.* at 1. No other documents are annexed in support of the Response.

**The Reply**

The Consumer Claims Trustee contends that the Claim, as supplemented by the Response, does not present sufficient facts to state a plausible claim for relief against Ditech and therefore fails to meet the pleading requirements under Rule 12(b)(6). Reply ¶¶ 22-23. The Consumer Claims Trustee notes that Claimant lists the basis of her Claim as "Contract/Executory Contract." *Id.* ¶ 23.

In deference to Claimant's pro se status, the Consumer Claims Trustee liberally construes the Claim as a claim for breach of contract. *Id.* ¶ 24. She interprets the Claim, as supplemented by the Response, as a claim for monetary damages in the amount of $28,672.04 based on Ditech's alleged breach of the Mortgage. *Id.* ¶¶ 35, 39-40. The Consumer Claims Trustee interprets the Claim to allege that Ditech breached the Mortgage terms by failing to pay the unpaid Property taxes for five years, and then advancing the unpaid Property taxes and adding the arrearages to Claimant's Mortgage. *Id.* ¶¶ 28-34.

The Consumer Claims Trustee argues that the facts demonstrate Ditech did not breach the Mortgage, and contends that in seeking reimbursement of Property tax payments through force-placed escrow, Ditech did what it was permitted to do under the Mortgage and pursuant to the Real Estate Settlement Procedures Act ("RESPA"). *Id.* ¶¶ 32-34. She contends that Claimant has failed to allege facts demonstrating that Ditech breached the Mortgage or how any such breach caused damages to Claimant. *Id.* ¶¶ 34-37.

Specifically, the Consumer Claims Trustee states that "Claimant seems to suggest that Ditech's attempts to collect the Property tax arrearages from her is what forced the home into

foreclosure." *Id.* ¶ 36. The Consumer Claims Trustee maintains that the arrearages did not cause foreclosure, which was sought (but never consummated) after Claimant had been in default for eight months, with an arrearage of $12,944.00. *Id.* ¶ 36-37. Moreover, the Notice of Default was sent nearly two years after the advancement of unpaid taxes, and states a cure amount of $25,264.23, which "exceeds the property tax advances alone by $12,100.35." *Id.* ¶ 37. Therefore, "[e]ven if demand for repayment of the tax advances contributed to the delinquency, Claimant has failed to show that the $13,163.88 in taxes were not her liability or that Ditech erroneously advanced them." *Id.* ¶ 39. The Consumer Claims Trustee asserts that Claimant was responsible for paying the Property taxes and, in fact, had paid the taxes for Parcel A, but failed to pay the taxes for Parcel B. *Id.* ¶ 30. In support, she attaches the Shasta County Property Tax Bills for the years 2016-2017, 2017-2018, and 2018-2019 for Parcel A (the "Parcel A Tax Bills") and Parcel B (the "Parcel B Tax Bills"), respectively.[20]

The Consumer Claims Trustee concludes that Claimant has failed to state a viable claim for recovery against Ditech and cannot meet the Rule 12(b)(6) standard. *Id.* ¶¶ 21-22.

**The Sur-Reply**

In her Sur-Reply, Claimant provides a letter addressed "To whom this may concern" that purports to explain errors she has found in the statements she received from Shellpoint. Sur-Reply at 4. She explains that Shellpoint never sent a notice of foreclosure to her; it was Ditech who sent Claimant a notice of foreclosure in 2016. *Id.* This prompted her to take her "[e]x-husband back to court[] to receive the house back." *Id.* She contends the divorce proceedings put her in foreclosure and states that she is "not suggesting that the taxes put [her] in foreclosure." *Id.* In support, she annexes a copy of a Minute Order issued in the divorce proceedings on May 31, 2016, by the

---

[20] The Parcel A Tax Bills and Parcel B Tax Bills are annexed to the Reply as Exhibit F and Exhibit G, respectively.

Superior Court of California for the County of Shasta ("Minute Order").[21] She also includes copies of the same Parcel A Tax Bills and Parcel B Tax Bills that the Consumer Claims Trustee annexed to the Reply.[22]

As reflected in the Minute Order, Claimant advised the county court that her ex-husband was "behind $5,000.00 in mortgage payments, behind $5,000.00 in property taxes, and there [was] no current homeowner's insurance on the [P]roperty." Minute Order at 1. As of May 31, 2016, Claimant believed the Loan balance was $284,000.00 and the court directed her to "contact the mortgage company to find out the remaining balance." *Id.* at 1-2.

Claimant also contends that she paid her escrow every month and did not default on it. Sur-Reply at 4. In support, she annexes billing statements issued by Ditech for the period of October of 2017 to December of 2018, as well as a statement from November of 2019 ("Ditech Billing Statements").[23] The statements include a summary of Claimant's account information, a breakdown of Claimant's past payments, and an explanation of the amount due and past due each month. Ditech Billing Statements at 1-29. They also indicate Claimant's escrow balance each month and disbursements made by Ditech, such as tax advances. *See id.* at 14. Claimant contends that based on the statements, "you can see that the amount has been paid." Sur-Reply at 4.

---

[21] Minute Order, *Warner v. Warner*, 04 CV FL 0152733, Superior Court of the State of Cal. for the Cnty. of Shasta (May 31, 2016). The Minute Order is annexed as pages 5-6 to the Sur-Reply.

[22] Claimant annexes copies of the Parcel A Tax Bills and Parcel B Tax Bills as pages 47-49 and 45-46, 51 to the Sur-Reply, respectively.

[23] Claimant annexes the Ditech Billing Statements as pages 15-44 of the Sur-Reply but does not include a complete record of the statements from October 2017 to November 2019. A comprehensive record of the Ditech Billing Statements she relies on are annexed as Exhibit A of the Sur-Response.

**The Sur-Response**

The Consumer Claims Trustee contends that, even as supplemented by the Sur-Reply, the Claim and Response fail to state a claim for relief against Ditech. Sur-Response ¶ 6. She argues that Claimant does not allege facts or provide information to support that she paid the Property taxes, and therefore cannot show how she was damaged by Ditech advancing taxes. *Id.* ¶ 4. The Consumer Claims Trustee states that the Minute Order shows Claimant knew about the substantial arrears, but still failed to cure the default. *Id.* ¶ 10. She maintains that, regardless of whether the tax arrears or the divorce forced her into foreclosure, Claimant was obligated to perform under the terms of the Mortgage and failed to do so. *Id.*

The Consumer Claims Trustee also argues that the Ditech Billing Statements do not show that Claimant paid her escrow each month and the escrow deficiency was in error. *Id.* ¶¶ 11-12. She contends that (i) the Ditech Billing Statements are incomplete, as some of the monthly statements are not included, and (ii) Claimant's handwritten notes, which seem to suggest payments were improperly applied, are inconsistent with the amounts credited to her account. *Id.* ¶¶ 11-14. In response, the Consumer Claims Trustee annexes a complete billing statement history (the "Complete Ditech Billing Statements")[24] for the same period, showing that Claimant made monthly payments and Ditech properly applied Claimant's monthly payments. *Id.* ¶¶12-14.

"Claimant is thus correct that she made her monthly payments towards escrow between October 2017 and November 2019. However, this does not show that she never defaulted in her escrow . . . . those regular payments [were] insufficient to bring the escrow balance current." *Id.* ¶ 15. According to the Consumer Claims Trustee, the Complete Ditech Billing Statements show that

---

[24] The Complete Ditech Billing Statements are annexed as Exhibit A to the Sur-Response.

the escrow deficiency was caused by the failure to pay property taxes and the advanced tax arrears were built into the monthly escrow payments. *Id.* ¶¶ 16-19.

## Motion to Estimate

On September 23, 2022, the Consumer Claims Trustee filed a motion to estimate claims ("Motion to Estimate")[25] for purposes of setting a reserve and to classify those claims as non-363(o), Class 6 Consumer Creditor Claims, as defined in the Third Amended Plan. In the motion, the Consumer Claims Trustee estimated the Claim amount as $0.00 for the purpose of setting a distribution reserve, but "[b]y agreement," estimated the Claim "at $28,672.04" as a non-363(o) claim. Motion to Estimate, Ex. A at 3; Reply ¶ 15. The Court granted the motion, setting the Claim at $28,672.04 and classifying it as a non-363(o) claim.[26]

## LEGAL PRINCIPLES

A claim properly filed under section 501 of the Bankruptcy Code is "deemed allowed" absent an objection. 11 U.S.C. § 502(a). Such claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). A court may only disallow a claim if a party in interest has objected, and upon notice and hearing, the court finds the claim falls under one of the exceptions found in section 502(b) of the Bankruptcy Code. 11 U.S.C. § 502(b); *In re Manhattan Jeep Chrysler Dodge, Inc.*, 602 B.R. 483, 491 (Bankr. S.D.N.Y. 2019) ("Section 502 of the Bankruptcy Code provides generally that a proof of claim should be allowed except to the extent it is objectionable on various grounds."). As relevant to the Objection, section 502(b)(1)

---

[25] *Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4266.

[26] *Order Granting Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4493. Exhibit A to the order contains a clerical error, stating that the estimated amount of the Claim is "$28,6702.04" rather than $28,672.04, the amount of the Claim asserted by Claimant in her Response.

provides that a claim may be disallowed to the extent it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re Residential Cap., LLC*, 513 B.R. 446, 458 (Bankr. S.D.N.Y. 2014) (citing *In re W.R. Grace & Co.,* 346 B.R. 672, 674 (Bankr. D. Del. 2006)).

The merits of the Claim are not at issue herein**.** A Sufficiency Hearing is a non-evidentiary hearing to address whether a Contested Claim "has failed to state a claim against the Debtors which can be allowed and should be dismissed pursuant to Bankruptcy Rule 7012." Claims Procedures Order ¶ 3(iv)(a). *See* Fed. R. Bankr. P. 7012(b) (quoting Fed. R. Civ. P. 12(b)) (applying the federal standard under Rule 12(b)(6) motion to dismiss standard to adversary proceedings). The function of a motion to dismiss is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'" *Havens v. James*, 76 F.4th 103, 116-17 (2d Cir. 2023) (quoting *Festa v. Loc. 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990)).[27]

The Rule 12(b)(6) standard requires courts to accept all factual allegations as true and to draw all reasonable inferences in favor of the non-moving party. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). Further, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

---

[27] "On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are 'integral' to the complaint." *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citing *Brass v. American Film Techs.*, 987 F.2d 142, 150 (2d Cir. 1993); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)). Because Sufficiency Hearings consider consumer claims, often by unrepresented claimants whose claims lack detail or do not attach pertinent supportive documentation, it has been the practice of this Court to consider the Consumer Claims Trustee's documentary submissions together with claims as if they were consolidated. The Court does so here.

14

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding

what factual matter to accept as true, the Court is not required to "credit conclusory allegations or

legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir.

2014) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)). A claim is facially plausible

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

a defendant has acted unlawfully." *Id.*

"Where, as here, the [Claim] was filed *pro se,* it must be construed liberally to raise the

strongest arguments it suggests. Nonetheless, [the] *pro se* [Claim] must state a plausible claim for

relief." *Walker v. Schult,* 717 F.3d 119, 124 (2d Cir. 2013) (internal citations, quotation marks, and

brackets omitted); *see also Kimber v. GMAC Mortg., LLC* (*In re Residential Cap., LLC)*, 489 B.R.

489, 494 (Bankr. S.D.N.Y. 2013) ("Complaints drafted by *pro se* plaintiffs are to be construed

liberally, but they must nonetheless be supported by specific and detailed factual allegations

sufficient to provide the court and the defendant with 'a fair understanding of what the plaintiff is

complaining about and . . . whether there is a legal basis for recovery.'" (quoting *Iwachiw v. New

York City Bd. of Elections,* 126 F. App'x 27, 29 (2d Cir. 2005) (summary order))).

## ANALYSIS

Claimant states that the Claim is based on "Contract/Executory Contract." Claim at 2. The

governing contract is the Mortgage.[28] Under California law, the elements of a cause of action for

breach of contract are "(1) the contract, (2) plaintiff's performance or excuse for nonperformance,

---

[28] The Mortgage provides that the governing law is the law of the jurisdiction in which the Property is located -
California. Mortgage § 16.

(3) defendant's breach, and (4) the resulting damages to plaintiff.'" *Bushell v. JPMorgan Chase Bank, N.A.,* 220 Cal. App. 4th 915, 921 (Cal. Ct. App. 2013) (citation omitted); *see also CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (Cal. Ct. App. 2008) ("A cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach.") (citation omitted). The Court considers whether Claimant has stated a claim for breach of contract against Ditech.

The Mortgage provides that Claimant "shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3." Mortgage § 1. As relevant, Section 3 directs Claimant to make an escrow payment to Ditech "on the day Periodic Payments are due under the Note, until the Note is paid in full," in an amount equal to amounts due for "taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property," unless that requirement is waived by Ditech. *Id*. § 3. In the event of such waiver, Claimant is responsible for paying the taxes directly to the taxing authorities. *Id*.

Irrespective of whether Claimant paid the taxes and assessments directly or through escrow payments, the Mortgage is clear that it is Claimant's responsibility to "pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument . . . ." *Id*. § 4. In the event that Claimant fails to make those payments, the Mortgage provides that Ditech "may do and pay for whatever is reasonable or appropriate to protect [its] interest in the Property," including "paying any sums secured by a lien which has priority over this Security Instrument . . . ." *Id*. § 9. Finally, as relevant, the Mortgage provides that "[a]ny amounts disbursed by [Ditech] under this Section 9 shall become additional debt of

[Claimant] secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment." *Id.*

The essence of Claimant's complaint is that she never defaulted on her escrow payments under the Mortgage, Ditech failed to pay the Property taxes for five years, and after paying those taxes, erroneously added those costs on to the Mortgage. Response at 1. She seeks to recover the $13,163.88 Ditech paid in Property taxes, plus additional damages of $15,508.16.[29]

Claimant has not alleged facts demonstrating that she performed under the Mortgage. She relies on the Parcel B Tax History and the Parcel B Tax Bills, but these documents show that she failed to pay the Property taxes from 2012 through 2016. Parcel B Tax History at 1-2; Parcel B Tax Bills at 1-3. Moreover, the Ditech Billing Statements that Claimant relies on undermine her contention that she was not in default on her escrow. The statements show that although Claimant made monthly payments towards the escrow between October 2017 and November 2019, she nonetheless was in default under the Mortgage. For example, the first billing statement attached to the Sur-Reply, dated October 16, 2017, shows a negative escrow balance of $1,667.25. Ditech Billing Statements at 1. Therefore, even assuming she was regularly funding the escrow account between October 2017 and November 2019, those regular payments would be insufficient to bring the escrow balance current.

---

[29] Claimant seeks total damages of $28,672.04, itemized as follows:

(1) $13,163.88 advanced by Ditech for her property taxes

(2) $3,150.24 in payments made to a paralegal,

(3) $257.57 in miscellaneous costs, and

(4) $12,100.35 in uncategorized damages.

Response at 2.

The Complete Ditech Billing Statements show that the primary source of the escrow deficiency was Claimant's failure to pay the property taxes on Parcel B. Claimant was responsible for paying property taxes on Parcel A and Parcel B. The Parcel A Tax Bills show that the taxes on Parcel A, which were substantially less than those due on Parcel B, were current during the tax period from July 1, 2016, to June 30, 2019. Parcel A Tax Bills at 1-3. The Parcel B Tax Bills show that the taxes on Parcel B were delinquent during the same time period. Parcel B Tax Bills at 1-3. The Parcel B Tax History shows that the property taxes were not paid for five years, commencing in 2012. Parcel B Tax History at 1-2. Claimant regained possession of the Property in June 2016. She acknowledges that, at that time, her now ex-husband was behind on the Mortgage in the amount of $5,000.00 and delinquent on property taxes in the amount of $5,000.00. Minute Order at 1. According to the October 11, 2017 billing statement, the Mortgage was past due in the amount of $6,018.95. Complete Ditech Billing Statements at 2. Despite making monthly payments between October 2017 and November 2019, Claimant was too far behind to catch up. The October 11, 2017 billing statement shows that the payment that posted on October 10, 2017 was applied to her June 1, 2017 payment. *Id*. She remained three to four months behind for at least the next two years.

The June 15, 2018 statement shows a tax disbursal advanced on June 4, 2018 in the amount of $10,808.68, bringing the overall escrow balance to a negative $11,895.48. Complete Ditech Billing Statements at 30. As of the date of the final statement provided by Claimant in her Sur-Reply, dated November 18, 2019, the negative escrow balance was $10,398.70. *Id*. at 69; Ditech Billing Statements at 14. The Parcel B Tax History and Parcel B Tax Bills indicate that the arrears, in the amount of $13,163.88 (including penalties) were paid on June 8, 2018. Parcel B Tax History at 1-2; Parcel B Tax Bills at 2; *see also* Redemption Check at 1. The Complete Ditech Billing

Statements also support the Consumer Claims Trustee's assertion that the delinquent property taxes advanced by Ditech in June 2018 were ultimately built into Claimant's monthly escrow payment. The October 4, 2018 billing statement shows a required monthly escrow payment of $168.20. *See* Complete Ditech Billing Statements at 40. The November 7, 2018 billing statement shows a required monthly escrow payment of $1,431.16. *Id*. at 42.

Claimant has failed to alleged facts demonstrating that in making the property tax payments, Ditech breached the Mortgage. To the contrary, under the Mortgage, Ditech was permitted to protect its security interest in the Property by advancing funds to satisfy potential liens. *See* Mortgage § 9 ("If [] Borrower fails to perform the covenants and agreements contained in this [Mortgage] . . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property . . . . Lender's actions can include, but are not limited to: [] paying any sums secured by a lien which has priority over this [Mortgage] . . . ."). After Ditech advanced the property tax arrears in June 2018, it was permitted under RESPA to collect the shortage created by the advance.[30] Claimant contends that Ditech added the property tax arrearages to her Mortgage but provides no documentation to support her contention. Response at 1. The Consumer Claims Trustee contends, and the Court agrees that the more plausible explanation is that Ditech sought reimbursement of the property tax payments via force-placed escrow, as permitted by the Mortgage and RESPA. Without any supporting information to suggest otherwise, Claimant fails to show that Ditech has breached any of its obligations under the Mortgage contract.

---

[30] RESPA sets the requirements for management of escrow accounts. 12 C.F.R. §1024.17. Mortgage servicers are permitted to charge the borrower a sum equal to one-twelfth of the total annual escrow payments which the servicer anticipates advancing on the borrower's behalf. *Id*. § 1024.17(c)(1)(ii). The servicer is entitled to maintain a cushion of funds in the escrow account of no greater than one-sixth of the estimated total annual payments. *Id*. In establishing an ongoing escrow payment, the servicer may base that amount on the prior year's escrow distribution. *Id*. § 1024.17(c)(7). If, after running an escrow analysis computation, a servicer discovers an escrow shortage that is greater than one month's escrow account payment, the servicer may require the borrower to repay the shortage over a twelve-month period. *Id*. § 1024.17(f).

Under California law, the measure of damages in a contract breach is the amount which would compensate the aggrieved party, or the amount likely to flow therefrom. Cal. Civ. Code § 3300 ("For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."). California courts have thus interpreted damages for breach to be "ordinarily confined to those which would naturally arise from the breach, or which might have been reasonably contemplated or foreseen by the parties at the time they contracted, as the probable result of the breach." *Allen v. Jones*, 104 Cal. App. 3d 207, 210 (Cal. Ct. App. 1980) (citations omitted). "The test for causation in a breach of contract . . . action is whether the breach was a substantial factor in causing the damages." *U.S. Ecology, Inc. v. State of California,* 129 Cal. App. 4th 887, 894 (Cal. Ct. App. 2005). "Implicit in the element of damage is that the defendant's breach caused the plaintiff's damage." *Orcilla v. Big Sur, Inc*., 244 Cal. App. 4th 982, 1004 (Cal. Ct. App. 2016) (citing *Troyk v. Farmers Group, Inc.* 171 Cal. App. 4th 1305, 1352 (Cal. Ct. App. 2009)).

Claimant has failed to allege facts demonstrating that she was damaged by Ditech's payment of the property taxes and has not demonstrated that Ditech breached the Mortgage by paying them. She has failed to do so because, as discussed above, Ditech had a contractual right to pay the taxes after Claimant failed to do so. Moreover, and in any event, Claimant has provided no basis on which to grant any damages. Claimant seeks damages totaling $28,672.04. Response at 1. Of this, $13,163.88 represents the taxes paid. *Id.* Claimant fails to demonstrate why she is entitled to the refund of taxes duly paid on her behalf. Claimant also seeks $3,150.24 for paralegal costs and $257.57 in miscellaneous costs. *Id.* She has not demonstrated grounds under the

Mortgage, or otherwise, to recover those fees. The same holds true for the $12,100.35 amount

sought. Claimant asserts that this amount constitutes the difference between the cure amount of

$25,264.23 listed on a March 30, 2020 default letter, and the $13,163.88 tax bill paid in June 2018.

*See* Notice of Default at 1. However, the record is clear that the Notice of Default was issued by

the successor-servicer, Shellpoint Mortgage Servicing, nearly two years after the advanced taxes.

Claimant does not provide any evidence to suggest that the Loan was not in default. Even if the

demand for repayment of the tax advances contributed to the delinquency, Claimant has failed to

show that the $13,163.88 in taxes were not her liability or that Ditech erroneously advanced them.

## CONCLUSION

Based on the foregoing, the Court sustains the Objection and disallows the Claim.

IT IS SO ORDERED.


Dated:  December 30, 2024
        New York, New York


                                        /s/ *James L. Garrity, Jr.*
                                        Honorable James L. Garrity, Jr.
                                        United States Bankruptcy Judge