| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK**<br>-------------------------------------------------------- x<br>In re:                                                                         :<br>                                                                                    :<br>Ditech Holding Corporation, *et al.*,                      :<br>                                                                                    :<br>                                                   Debtors.[1]      :<br>-------------------------------------------------------- x | NOT FOR PUBLICATION<br><br>Case No. 19-10412 (JLG)<br>Chapter 11<br><br>Jointly Administered |

### MEMORANDUM DECISION AND ORDER SUSTAINING THE SEVENTEENTH OMNIBUS OBJECTION TO PROOFS OF CLAIM AND THE TWENTY-SIXTH OMNIBUS OBJECTION TO PROOFS OF CLAIM WITH RESPECT TO THE PROOFS OF CLAIM FILED BY GAIL SMITH

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:     Richard Levin


GAIL SMITH[2]
*Appearing Pro Se*
169 McGee Road
Canon, GA 30520

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

[2] Ms. Smith is acting pro se herein and, in that capacity, filed the Claims, the Responses, and Supplemental Response. As set forth below, Ms. Smith did not appear at the Sufficiency Hearing. She did not request the Court to adjourn the hearing or otherwise seek an accommodation from the Court with respect to the hearing.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[3]

Gail Smith ("Claimant") is acting pro se herein. On April 25, 2019, Claimant timely filed Proof of Claim No. 21385 (the "First Claim") as a secured claim in an undetermined amount against Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) ("Ditech"). On November 11, 2019, Claimant filed Proof of Claim No. 60202 as an Administrative Expense Claim in an undetermined amount against Ditech (the "Second Claim," together with the First Claim, the "Claims"). The Plan Administrator and the Consumer Claims Trustee jointly filed the Seventeenth Omnibus Objection (the "Seventeenth Omnibus Objection")[4] and the Twenty-Sixth Omnibus Objection (the "Twenty-Sixth Omnibus Objection,"[5] together with the Seventeenth Omnibus Objection, the "Objections") seeking to disallow proofs of claim, including the First Claim and Second Claim, respectively, that lack sufficient information or documentation to support the validity of the claim on the part of Ditech.

Claimant filed a response to the Seventeenth Omnibus Objection (the "First Claim Response"),[6] and a response to the Twenty-Sixth Omnibus Objection (the "Second Claim

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[4] *Seventeenth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims)*, ECF No. 1749, pp. 11-15.

[5] *Twenty-Sixth Omnibus Claims Objections to Proofs of Claim (No Basis Consumer Creditor Claims)*, ECF No. 1758, pp. 9-15.

[6] *Response of Gail Smith to the Seventeenth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims)*, ECF No. 1897.

2

Response,"[7] together with the First Claim Response, the "Responses"). Thereafter, Claimant filed a supplemental response to the Objections (the "Supplemental Response").[8] The Plan Administrator and Consumer Claims Trustee filed a joint reply in further support of the Objections (the "Reply").[9] In substance, they contend that the Court should disallow the Claims because neither states a claim for relief against Ditech. Alternatively, they request that if the Claims are not disallowed and expunged entirely, that the Court re-classify the Claims as unsecured Consumer Creditor Claims.

Pursuant to the Claims Procedures Order,[10] Claimant's filed Responses adjourned the Objections to provide time for the Plan Administrator and Consumer Claims Trustee to schedule a Sufficiency Hearing on the Claims. At a Sufficiency Hearing, the Court employs the legal standard of review applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Claims Procedures Order ¶ 3(iv)(a).

The Court held the Sufficiency Hearing. The Plan Administrator and Consumer Claims Trustee appeared through their respective counsel. Claimant did not appear at the hearing. The Court did not hear argument on the Objections and is considering these matters based upon the papers submitted.

---

[7] *Response of Gail Smith to the Twenty-Sixth Omnibus Claims Objections to Proofs of Claim (No Basis Consumer Creditor Claims)*, ECF No. 1898.

[8] *Supplemental Response of Gail Smith*, ECF No. 2628.

[9] *Joint Reply of Plan Administrator and Consumer Claims Trustee in Further Support of the Seventeenth and Twenty-Sixth Omnibus Objections to Proofs of Claim (No Basis Consumer Creditor Claims)*, ECF No. 5271.

[10] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632 (the "Claims Procedures Order").

3

The Court has reviewed the Claims, Objections, Responses, Supplemental Response, and Reply, including all documents submitted in support thereof, and has considered the arguments made by the parties in support of their respective positions. In doing so, and in accordance with the Rule 12(b)(6), the Court has accepted Claimant's well-pleaded factual allegations as true, and has drawn all reasonable inferences in Claimant's favor. In light of Claimant's pro se status, the Court has liberally construed the Claims, the Responses, and Supplemental Response to raise the strongest arguments that they suggest. As explained below, the Claims fail to state claims to relief against Ditech. Accordingly, the Court sustains the Objections and disallows and expunges the Claims. The Court need not, and does not consider, the Plan Administrator's and Consumer Claims Trustee's alternative requests for relief.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

**The Loan**

On October 29, 2001, Claimant executed a manufactured home Retail Installment Contract and security agreement in the principal amount of $54,599.00 (the "Retail Installment Contract")[11]

---

[11] "On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are 'integral' to the complaint." *Calcutti v. SBU, Inc.,* 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)). Because Sufficiency Hearings consider consumer claims, often by unrepresented claimants whose claims lack detail or do not attach pertinent supportive documentation, it has

4

in favor of Origen Financial, Inc., to finance the purchase of a 2002 Fleetwood Glenbrook manufactured home (the "Property"). The Retail Installment Contract was secured by a security interest on the Property. The contract called for Claimant to make 360 monthly payments of $436.30, starting on December 10, 2001, with a total repayment amount of $157,068, including interest at a fixed rate of 8.25% per annum. The cash sale price of the Property, including taxes, was $64,563.00. Claimant put down a $10,000.00 downpayment and agreed to finance the balance.

**The Chapter 11 Cases**

On February 11, 2019, Ditech and certain of its affiliates (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[12] The Court extended the General Bar Date for consumer borrowers to June 3, 2019.[13]

---

been the practice of this Court to consider the Consumer Claims Trustee's documentary submissions together with claims as if they were consolidated. The Court does so here.

An incomplete copy of the Retail Installment Contract is annexed to the Supplemental Response. A complete copy of the Retail Installment Contract is annexed to the Reply as Exhibit A. The Court takes judicial notice of the Retail Installment Contract annexed to the Reply, because it is a matter of public record and is integral to the Claims. *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 57 (S.D.N.Y. 2021) ("In deciding the motion to dismiss, the Court is limited to the factual allegations of the Complaint, materials that are attached by the Complaint or integral thereto, and matters of which the Court may take judicial notice."); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 462 (S.D.N.Y. 2020) ("Judicial notice may be taken of documents that are 'integral to the complaint,' such that the complaint 'relies heavily upon [the documents'] terms and effect.'" (quoting *Palin v. N.Y. Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019) (alteration in original))); *Ocampo v. JP Morgan Chase Bank, N.A.*, 93 F. Supp. 3d 109, 114-15 (E.D.N.Y. 2015) (considering loan documents and loan transfer documents that are integral to the complaint on a motion to dismiss); *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (taking judicial notice "of relevant matters of public record").

[12] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[13] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

5

On September 26, 2019, the Debtors confirmed their Third Amended Plan, which went into effect on September 30, 2019.[14] The Plan Administrator and Consumer Claims Trustee are fiduciaries under the Third Amended Plan. *See* Third Amended Plan, art. I, §§ 1.41, 1.130, 1.184, 1.186. The Plan Administrator is charged with winding down, dissolving and liquidating the Wind Down Estates and is provided exclusive authority to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims. *Id.* art. VII, § 7.1. The Consumer Claims Trustee is responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims. *Id.* art. I, § 1.41. As such, she is exclusively authorized to object to Consumer Creditor Claims. *Id.* art. VII, § 7.1.

**The Claims Procedures Order**

The Plan Administrator and Consumer Claims Trustee are authorized to file objections seeking reduction, reclassification, or disallowance of claims. Under the Claims Procedures Order, a properly filed and served response to an objection, omnibus or otherwise, gives rise to a "Contested Claim." *See* Claims Procedures Order ¶ 3(iv). Contested Claims are resolved at a Claim Hearing, which can be scheduled as either a "Merits Hearing," an evidentiary hearing on the merits of a Contested Claim, or a "Sufficiency Hearing," a non-evidentiary hearing to address whether a Contested Claim states a claim for relief against the Debtors. *Id.* ¶ 3(iv)(a)-(b). At a Sufficiency Hearing, the Court applies the legal standard of review applied on a motion to dismiss under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

---

[14] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

6

**The Claims**

*The First Claim*

Claimant timely filed the First Claim as a secured claim against Ditech on the basis of "Customer Claims." First Claim at 1-2. Claimant contends the First Claim is secured by a "Manufactured home." *Id.* at 2. Claimant lists the amount of the claim as "undetermined" but states that the amount of the claim that is secured is "$38,000.00." *Id.* She does not state the "[a]mount of the claim that is unsecured," but asserts the value of the Property as $38,000.00. *Id.* The First Claim does not otherwise provide any additional explanation or documentation with respect to the nature or amount of the claim.[15]

*The Second Claim*

Claimant filed the Second Claim as an administrative expense claim against Ditech in an undetermined amount. Second Claim at 1-2. She states the amount of the Second Claim includes interest or other charges, but does not attach a statement itemizing such charges as required by Bankruptcy Rule 3001(c)(2)(A). *Id.* at 2. She states the basis of the claim is "Other Basis" and "Fake escrow account." *Id.* The Second Claim does not otherwise provide any additional explanation or documentation with respect to the nature or amount of the claim.

**The Objections**

The Consumer Claims Trustee and Plan Administrator seek entry of orders disallowing and expunging the Claims. Seventeenth Omnibus Objection ¶ 12; Twenty-Sixth Omnibus Objection ¶ 12. They contend that, based upon review of the Debtors' books and records, each

---

[15] Claimant states that the First Claim amends a prior claim already filed, Claim No. 20789, filed on "04/19/2019" (the "Original Claim"). First Claim at 1. The Original Claim was disallowed and expunged on the basis that it was amended and superseded by the First Claim. *Order Granting Third Omnibus Objection to Proofs of Claim (Amended and Superseded Claims)*, ECF No. 1780.

7

claim "lacks sufficient documentation to support the validity of the claim." Seventeenth Omnibus Objection Ex. A at 13; Twenty-Sixth Omnibus Objection Ex. A at 21.

**The Responses**

*First Claim Response*

In her First Claim Response, Claimant clarifies the amount of the First Claim is $38,000.00. First Claim Response at 1. Claimant contends that "[t]his claim should not be disallowed, expunged, reduced or reclassified for reasons of fraud, harassment, damage to credit, not applying payments correctly." First Claim Response at 1. She states that "[i]n year 19 I am still paying more interest than principal in a payment and mental and emotional distress arising from Ditech." *Id*.

*Second Claim Response*

In her Second Claim Response, she states the claim amount is "unliquidated to be determined." Second Claim Response at 1. She asserts that "[t]he claim should not be disallowed, expunged, reduced or reclassified for reasons of fraud, harassment, damage to credit, along with mental and emotional distress arising from Ditech." *Id*.

**The Supplemental Response**

In further support of the Claims, Claimant submitted a Supplemental Response, which consists of a Supplemental Submission to the Seventeenth Omnibus Objection ("First Claim Supplemental Response") and a Supplemental Submission to the Twenty-Sixth Omnibus Objection ("Second Claim Supplemental Response").[16]

---

[16] The First Claim Supplemental Response is included in the Supplemental Response at pages 1-4. The Second Claim Supplemental Response is included in the Supplemental Response at pages 5-7. Page numbers refer to the PDF page numbers of the Supplemental Response.

8

*First Claim Supplemental Response*

Claimant asserts that the First Claim "should not disallowed, expunged, reduced or reclassified." Supplemental Response at 2. In substance, she complains that:

- She has already paid more than the Property is worth.
- Ditech falsely created problems with the loan.
- She is a victim of inflated prices and Ditech's mortgage scam.
- Ditech transferred the Retail Installment Contract to Shellpoint, and disallowing or expunging the First Claim will leave her with no remedy against Ditech or Shellpoint.
- She has not received documents from Ditech or Shellpoint other than documents showing what they say is owed under the Retail Installment Contract.

*Id.* at 2-3.

*Second Claim Supplemental Response*

Claimant asserts that the Second Claim "should not disallowed, expunged, reduced or reclassified." Supplemental Response at 6. As support, she essentially makes the same points that she raised in the First Claim Supplemental Response. *Id.* at 6-7.

*Supplemental Response – Supporting Documentation*

As support for the Supplemental Response, Claimant annexes documents, including a partial copy of the Retail Installment Contract, which shows a finance charge of $102,489, the amount financed of $54,599, and total repayment of $157,068. Supplemental Response at 8-12. She also includes notice from Green Tree Servicing LLC ("Green Tree") denying her application for assistance under the Home Affordable Modification Program ("HAMP"), which stated her loan was not eligible for modification because the "note securing [her] loan is not a mortgage" and Green Tree services her "loan on behalf of an investor or group of investors that has not given us the contractual authority to modify your loan under [HAMP]." *Id*. at 13. She attaches two statements from Shellpoint regarding her debt balance and overdue payment amounts. *Id*. at 14-

9

15. She also includes two letters from Shellpoint: (i) a "Validation of Debt Notice" dated March 20, 2020, showing the total amount of Claimant's debt as "$40,744.68," *id*. at 16-17, and (ii) a notice that the servicing of her installment contract is being transferred from Ditech to Shellpoint, dated March 17, 2020, *id*. at 18. Claimant attaches a final escrow disclosure statement from Ditech, dated "03/17/2020" (the "Escrow Statement"). *Id*. at 19. Finally, Claimant includes a letter from Ditech dated "03/02/20" regarding "Pending Lender-Placed Insurance – Status Change," notifying Claimant of Ditech's decision to not purchase a Lender-Placed Insurance Policy ("Insurance Notice"). *Id*. at 20.

**The Reply**

The Consumer Claims Trustee and Plan Administrator argue that the Claims, as supplemented by the Responses and Supplemental Response, do not state viable claims for recovery. Reply ¶ 14. Construing the Claims liberally, the Consumer Claims Trustee and Plan Administrator interpret the First Claim as a claim for breach of contract, but argue Claimant fails to state a claim for relief. *Id*. ¶ 20. They contend that the Second Claim is facially insufficient to state a legally cognizable claim against Ditech. *Id*. ¶ 29.

The Consumer Claims Trustee and Plan Administrator state that the Retail Installment Contract explicitly required Claimant to maintain property insurance, and, in the event of noncompliance, authorized Ditech to establish an escrow account to pay for lender-placed insurance. *Id*. ¶ 22. They argue Claimant did not provide any evidence to substantiate her claims regarding the misapplication of payments. *Id*. ¶ 26. Further, they assert that Claimant's allegations of fraud, harassment, and damage to credit are conclusory and lack specific factual support. *Id*. ¶¶ 28, 29.

10

They further argue that the Claims do not qualify as secured or administrative expense claims. *Id*. ¶¶ 30-38. They state that the Retail Installment Contract established a lien on the Property in favor of Ditech, not Claimant, and Claimant failed to allege facts demonstrating that the Second Claim was entitled to administrative expense priority. *Id*.

## **LEGAL PRINCIPLES**

A claim properly filed under section 501 of the Bankruptcy Code is "deemed allowed" absent an objection. 11 U.S.C. § 502(a). Such claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). A court may only disallow a claim if a party in interest has objected, and upon notice and hearing, the court finds the claim falls under one of the exceptions found in section 502(b) of the Bankruptcy Code. 11 U.S.C. § 502(b); *In re Manhattan Jeep Chrysler Dodge, Inc.*, 602 B.R. 483, 491 (Bankr. S.D.N.Y. 2019) ("Section 502 of the Bankruptcy Code provides generally that a proof of claim should be allowed except to the extent it is objectionable on various grounds."). As relevant to the Objection, section 502(b)(1) provides that a claim may be disallowed to the extent it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re Residential Cap., LLC*, 513 B.R. 446, 458 (Bankr. S.D.N.Y. 2014) (citing *In re W.R. Grace & Co.,* 346 B.R. 672, 674 (Bankr. D. Del. 2006)).

The merits of the Claims are not at issue herein**.** A Sufficiency Hearing is a non-evidentiary hearing to address whether a Contested Claim "has failed to state a claim against the Debtors which can be allowed and should be dismissed pursuant to Bankruptcy Rule 7012." Claims Procedures Order ¶ 3(iv)(a). *See* Fed. R. Bankr. P. 7012(b) (quoting Fed. R. Civ. P. 12(b)) (applying the federal standard under Rule 12(b)(6) motion to dismiss standard to adversary proceedings). The function

of a motion to dismiss is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'" *Havens v. James*, 76 F.4th 103, 116-17 (2d Cir. 2023) (quoting *Festa v. Loc. 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990)).

The Rule 12(b)(6) standard requires courts to accept all factual allegations as true and to draw all reasonable inferences in favor of the non-moving party. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). Further, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding what factual matter to accept as true, the Court is not required to "credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Where, as here, the [Claims were] filed *pro se,* [they] must be construed liberally to raise the strongest arguments [they] suggest[]. Nonetheless, [the] *pro se* [Claims] must state . . . plausible claim[s] for relief." *Walker v. Schult,* 717 F.3d 119, 124 (2d Cir. 2013) (internal citations, quotation marks, and brackets omitted); *see also Kimber v. GMAC Mortg., LLC* (*In re Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) ("Complaints drafted by *pro se* plaintiffs are to be construed liberally, but they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of

12

what the plaintiff is complaining about and ... whether there is a legal basis for recovery.'" (quoting *Iwachiw v. New York City Bd. of Elections,* 126 F. App'x 27, 29 (2d Cir. 2005) (summary order))).

## ANALYSIS

### Whether Claimant States a Claim Against Ditech

#### *The First Claim*

Claimant asserts that she has a $38,000.00 claim secured by the fair market value of the Property. *See* First Claim at 2; First Claim Response at 1. She says that the claim is based on "Customer Claims," First Claim at 1, and that it "should not be disallowed, expunged, reduced or reclassified for reasons of fraud, harassment[,] damage to credit, [and] not applying payments correctly," First Claim Response at 1. In support of those claims, Claimant focuses on Ditech's alleged breaches of the underlying contract—the Retail Installment Contract, and its alleged wrongdoing generally in connection with that contract. *See* Supplemental Response at 2-3. [17]

As to the latter, Claimant contends that Ditech falsely created problems with the loan, and that she is a victim of inflated prices and Ditech's fraud, including a "mortgage scam." *Id*. at 2. However, she has alleged no facts in support of Ditech's alleged fraud,[18] a mortgage scam, or other

---

[17] The Retail Installment Contract is "governed by the laws of the state where the Manufactured Home is located." Retail Installment Contract ¶ 21. The Property is located in Georgia, therefore Georgia law applies. *Hassett v. Revlon (In re O.P.M. Leasing Serv., Inc.)*, 23 B.R. 104, 111 (Bankr. S.D.N.Y. 1987) ("It is settled law that the parties' bona fide choice of law in a contract will be honored where the chosen state has some relation to the agreement." (citations omitted)).

[18] In Georgia, fraud claims must be pled with specificity. O.C.G.A. § 9-11-9(b) ("In all averments of fraud or mistake, the circumstance constituting fraud or mistake shall be stated with particularity."); *Fortson v. Freeman*, 721 S.E.2d 607, 609 (Ga. Ct. App. 2011). Moreover, breach of contract, without more, does not constitute fraud. *See Odelia v. Alderwoods (Georgia), LLC*, 823 F. App'x 742, 748 (11th Cir. 2020) (unpublished) ("'In actions for fraud, actionable representations must relate to past or existing facts and cannot consist of mere broken promises.' Moreover, '[a] mere breach of a contract is not fraud.'" (quoting *Ga. Mobile Home Dev. Corp. v. Kuter*, 168 S.E.2d 858, 861 (Ga. Ct. App. 1969))). Claimant has failed to allege any specific facts to state a cause of action for fraud or resulting damages. *See Odelia,* 823 F. App'x at 748 ("Under the circumstances, it is impossible to say that [Defendants] engaged in fraud given that [Plaintiff] cannot identify a single misrepresentation made to her when she entered into the contract.").

13

wrongdoing by Ditech. None of the documents that she has submitted in support of the First Claim, support such claims.

Claimant fares no better with her breach of contract claim. At issue is the Retail Installment Contract. Under Georgia law:

> The elements for a breach of contract claim . . . are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken. Proof of damages is an essential element to a claim for breach of contract, and a failure to prove damages is fatal to plaintiff's claim.

*Ajigbolamu v. Milne*, 902 S.E.2d 687, 690 (Ga. Ct. App. 2024) (citations omitted); *accord Wright v. Wells Fargo Bank, N.A.,* No. 1:15-CV-02416, 2015 WL 12159206, at *5 (N.D. Ga. Oct. 8, 2015) ("Under Georgia law, the essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." (internal quotations and citation omitted)). For these purposes, "a breach of contract may arise in any one of three ways, namely, by renunciation of liability under the contract, by failure to perform the engagement, or by doing something which renders performance impossible." *Hanham v. Access Mgmt. Grp. L.P.,* 825 S.E.2d 217, 221 (Ga. 2019) (quoting *Cooley v. Moss*, 51 S.E. 625, 625 (Ga. 1905)); *see also Douglas v. McNabb Realty Co.*, 52 S.E.2d 550, 552 (Ga. Ct. App. 1949) ("A contract is breached by a party to it who is bound by its provisions to perform some act toward its consummation, and who, without legal excuse on his part and through no fault of the opposite party, declines to do so.").

Claimant has not alleged facts demonstrating either that Ditech breached the Retail Installment Contract or that she was not in breach of the agreement. Claimant asserts that Ditech breached the Retail Installment Contract by failing to properly credit her installment payments and creating a fake escrow account. First Claim Response at 1; Supplemental Response at 3. Claimant has alleged no facts in support of those claims, and the documents that she annexed to the

14

Supplemental Response do not support them. For example, in support of her contention that Ditech falsely set up an escrow account, she attaches the Retail Installment Contract, which requires Claimant to insure the Property against physical damage for the term of the contract at her own expense. Retail Installment Contract at 1. Under that agreement, Ditech was allowed, but not required, to obtain the minimum coverage should Claimant fail to maintain minimum property insurance. *Id.* The costs of the coverage, plus interest at the contractual rate, would be added to the total debt. *Id.* Claimant fails to allege facts or provide documentation demonstrating that she had obtained the minimum coverage as required by the Retail Installment Contract.

Moreover, the documents Claimant provides show that Ditech had acted consistently with the Retail Installment Contract by obtaining minimum insurance coverage of the Property and requesting Claimant repay those amounts. In support of the Claims, Claimant attaches the Insurance Notice and the Escrow Statement. Supplemental Response at 19-20. The Escrow Statement shows Ditech paid out $122.34 in hazard insurance from August 2019 through January 2020 and that Claimant made no payments toward these disbursements. *Id.* at 19. The Insurance Notice states that Ditech would not be purchasing lender-placed insurance and to disregard any previous notices stating otherwise. *Id.* at 20. Ditech advised Claimant that if she did not purchase her own property insurance, the collateral would not be covered in the event of a loss. *Id.* Claimant has not stated any facts showing that she performed under the Retail Installment Contract, and the documents indicate that she failed to obtain proper insurance and had defaulted on her payments under the agreement.

At best, Claimant complains that "[i]n year 19, I am still paying more interest than principal in a payment . . . ." First Claim Response at 1. However, without more, the fact that Claimant's mortgage payments exceed the value of the Property is not evidence of any wrongdoing or a breach

15

of contract by Ditech. Indeed, the Retail Installment Contract shows that the cash sale price of the Property was $64,563.00, but the total dollar amount of all payments with financing would be $157,068.00. Retail Installment Contract at 1.[19]

Claimant has failed to allege facts demonstrating that Ditech's conduct constitutes a breach of the Retail Installment Contract or that she complied with the agreement herself. The Retail Installment Contract authorized Ditech to take the actions at issue in the First Claim. Claimant has not asserted that Ditech breached a particular provision of the Retail Installment Contract, and therefore, has failed to state a claim for breach of contract. *Anderson v. Deutsche Bank Nat'l Tr. Co.,* No. 1:11-CV-4091, 2012 WL 3756512, at *1, (N.D. Ga. Aug. 27, 2012) ("[A] plaintiff asserting a breach of contract claim must allege a particular contractual provision that the defendants violated to survive a motion to dismiss."), *adopted by* 2012 WL 3756435, at *1, (N.D. Ga. Aug. 27, 2012); *Brooks v. Branch Banking and Tr. Co.*, 107 F. Supp. 3d 1290, 1296 (N.D. Ga. 2015) ("But these allegations fail to state a claim for breach of contract because Plaintiff never alleged a contractual provision Defendant breached.").

Moreover, Claimant has failed to allege facts demonstrating that she has suffered damages. To succeed in a breach of contract claim, a plaintiff must prove both the breach and the damages resulting from the breach. *See Moore v. Lovein Funeral Home, Inc.*, 852 S.E.2d 876, 880 (Ga. Ct. App. 2020). "Damages are given as compensation for the injury sustained as a result of the breach of a contract." O.C.G.A. § 13-6-1. Georgia law "permits the recovery of both general and consequential damages in a breach of contract case, '[r]emote or consequential damages are not recoverable unless they can be traced solely to the breach of the contract or unless they are capable

---

[19] In addition to these payments, Claimant's May 28, 2020 mortgage statement shows overdue payments totaling $6,825.98 from nearly ten months of non-payment. Supplemental Response at 14.

16

of exact computation, . . . and are independent of any collateral enterprise entered into in contemplation of the contract.'" *Ajigbolamu,* 902 S.E.2d at 690 (quoting O.C.G.A. § 13-6-8).

"The measure of damages for breach of contract is the amount which will compensate the injured person for a loss which a fulfillment of the contract would have prevented or the breach of it entailed. That is, the injured person is, so far as it is possible to do so by a monetary award, to be placed in the position he would have been if the contract had been fully performed." *Caldwell v. Church*, 836 S.E.2d 594, 600 (Ga. Ct. App. 2019) (internal quotation marks omitted) (quoting *Accent Walls v. Parker*, 292 S.E.2d 509, 510 (Ga. Ct. App. 1982)). The plaintiff bears the burden of proving its damages "by evidence which furnishes the jury with sufficient data to enable them to calculate the amount with reasonable certainty. Proof of damages cannot be left to speculation, conjecture and guesswork." *Olagbegi v. Hutto*, 740 S.E.2d. 190, 193 (Ga. Ct. App. 2013) (internal quotation marks omitted) (quoting *Hurst Boiler & Welding Co. v. Firstline Corp.*, 426 S.E.2d 22, 23 (Ga. Ct. App. 1992)). In evaluating whether the damages flowing from a breach of contract were proven with sufficient certainty, Georgia courts require competent evidence from which to calculate with reasonable certainty the damages arising from the breach. *See Hosp. Auth. of Charlton Cnty. v. Bryant*, 277 S.E.2d 322, 324 (Ga. Ct. App. 1981) (the burden is on the plaintiff to furnish evidence sufficient for a jury to calculate damages stemming from the breach with reasonable certainty); *see also Am. Infoage v. Only Sol. Software*, 870 S.E.2d 47, 51 (Ga. Ct. App. 2022) (same).

Claimant states that the First Claim totals $38,000. However, she alleges no facts demonstrating that she has suffered any damages by reason of Ditech's actions under the agreement. For example, Claimant does not state, with any specificity, which payments were made and, of the payments that were made, which ones were wrongly applied. Nor does Claimant allege

17

that she made any payments on the alleged falsely created escrow account. Instead, the documentation attached to the Claim shows that Claimant made no payments to the escrow account. *See* Supplemental Response at 19.

Claimant's conclusory and vague allegations and attached documentation fail to state a claim for relief against Ditech. Accordingly, the Court disallows and expunges the First Claim.[20]

***The Second Claim***

In her Administrative Expense Claim form, Claimant asserts an undetermined amount against Ditech based on "other basis" and a "fake escrow account." The claim does not include facts regarding the nature of the claim or calculation of the alleged damages. In the Second Claim Response, she asserts that the claim "should not be disallowed, expunged, reduced or reclassified for reasons of fraud, harassment, damage to credit, along with mental and emotional distress arising from Ditech." Second Claim Response at 1.

For the reasons stated above, these conclusory allegations are facially insufficient to state a legally cognizable claim. The Court disallows and expunges the Second Claim.

---

[20] Claimant also alleges she suffered emotional distress and damage to her credit score. First Claim Response at 1. However, damages for emotional distress are not recoverable in a breach of contract action under Georgia law. *See Wright v. Wells Fargo Bank, N.A.*, 2015 WL 12159206, at *5 ("Plaintiff's damages for 'embarrassment, mental anguish and emotional distress' are not recoverable under a breach of contract claim."). Further, Claimant has not alleged facts demonstrating that her credit score was damaged or that Ditech caused such damage. Rather, Claimant has provided documentation that demonstrates that she defaulted under the terms of the Retail Installment Contract, by failing to make payments, which may have impacted her credit score. She does not allege she performed under the contract, and her vague claim for damage to her credit score is insufficient to support a claim for damages. *See id.* at *6 (finding that Plaintiff had not alleged facts that plausibly show Defendant's conduct caused the negative impact on her credit score).

**CONCLUSION**

Based on the foregoing, the Court sustains the Objections and disallows the Claims on the grounds that they do not state legally cognizable claims against Ditech. The Court need not, and does not, consider the Plan Administrator's and Consumer Claims Trustee's alternative requests for relief.

IT IS SO ORDERED.

Dated: January 3, 2025
New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge