**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x

In re:                                                 :
                                                       :
Ditech Holding Corporation, *et al.*,                  :
                                                       :
                                     Debtors.[1]       :

------------------------------------------------------- x

**NOT FOR PUBLICATION**

Case No. 19-10412 (JLG)
Chapter 11

Jointly Administered

## MEMORANDUM DECISION AND ORDER SUSTAINING THE FIFTY-FOURTH OMNIBUS OBJECTION TO PROOFS OF CLAIM WITH RESPECT TO THE PROOF OF CLAIM FILED BY PATRICK A. DAVIS

**A P P E A R A N C E S :**

WEIL, GOTSHAL & MANGES LLP
*Attorneys for the Plan Administrator*
*on Behalf of the Wind Down Estates*
767 Fifth Avenue
New York, New York 10153
By:    Richard Slack

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:    Richard Levin

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

PATRICK A. DAVIS[2]
*Appearing Pro Se*
6801 Highway 412 E
Slaughter, Louisiana 70777

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

**INTRODUCTION**[3]

Patrick A. Davis (the "Claimant") is acting pro se herein. He timely filed Proof of Claim

No. 21234 (the "Claim") as a secured claim in the amount of $22,389.55 against Green Tree

Servicing Corp. ("Green Tree"). The Plan Administrator and the Consumer Claims Trustee jointly

filed their Fifty-Fourth Omnibus Objection (the "Objection")[4] seeking to disallow proofs of claim,

including the Claim, that do not provide sufficient information or documentation to substantiate

liability on the part of the Debtors. Claimant filed a response to the Objection (the "Response").[5]

The Plan Administrator and the Consumer Claims Trustee filed a reply in support of the Objection

(the "Reply").[6]

The Plan Administrator and Consumer Claims Trustee ask the Court to disallow the Claim

on the grounds of res judicata based on the dismissal with prejudice of the Claimant's Civil Action

---

[2] Mr. Davis is acting pro se herein and, in that capacity, filed the Claim and the Response to the Objection. As set forth below, Mr. Davis did not appear at the Sufficiency Hearing. He did not request the Court to adjourn the hearing or otherwise seek an accommodation from the Court with respect to the hearing.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[4] *Fifty-Fourth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims)*, ECF No. 2326.

[5] *Claimant's Response in Opposition to the Fifty-Fourth Omnibus Claims Objection to Proofs of Claim*, ECF No. 2524.

[6] *Reply of the Consumer Claims Trustee in Support of the Fifty-Fourth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims) with Respect to the Claim of Patrick A. Davis (Claim 21234)*, ECF No. 5272.

in the Louisiana District Court alleging the same claims against Green Tree that underlie the Claim. They also assert that those claims fail to state claims for relief against Green Tree. Alternatively, they ask the Court to re-classify the Claim as an unsecured Consumer Creditor Claim if it does not disallow the Claim.

Pursuant to the Claims Procedures Order,[7] Claimant's filed Response adjourned the Objection to provide time for the Plan Administrator and Consumer Claims Trustee to schedule a Sufficiency Hearing on the Claim. At a Sufficiency Hearing, the Court employs the legal standard of review applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Claims Procedures Order ¶ 3(iv)(a). The Court conducted the Sufficiency Hearing. The Plan Administrator and the Consumer Claims Trustee appeared through their respective counsel. Claimant did not appear at the hearing. The Court did not hear argument on the Objection and is considering this matter based upon the papers submitted.

The Court has reviewed the Claim, Objection, Response, and Reply, including all documents submitted in support thereof, and has considered the arguments made therein by the parties in support of their positions. In doing so, and in accordance with Rule 12(b)(6), the Court has accepted Claimant's well-pleaded factual allegations as true, and has drawn all reasonable inferences in Claimant's favor. In light of Claimant's pro se status, the Court has liberally construed the Claim and Response to raise the strongest arguments that they suggest.

As explained below, the Claim, as supplemented by the Response, fails to state a claim to relief against Green Tree. Accordingly, the Court sustains the Objection and disallows the Claim.

---

[7] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632 (the "Claims Procedures Order").

The Court does not consider the Plan Administrator's and Consumer Claims Trustee's alternative requests for relief.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

### The Loan

On or around September 9, 2002, Claimant executed a building contract and promissory note ("Note") in favor of Jim Walter Homes, Inc. ("JW Homes") to finance the construction of a residence on certain property known as Lot 10, Block 22, Ingleside Subdivision, Shreveport, Louisiana (the "Property"). The Note was secured by an Act of Mortgage (the "Mortgage") on the Property.[8] The Mortgage was recorded in Caddo Parish, Shreveport, Louisiana on December 20, 2002.

### The Chapter 11 Cases

On February 11, 2019, Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates, including Green Tree (collectively, the "Debtors"), filed

---

[8] The Mortgage is annexed as Exhibit A-3 to the Response, at page 11. Citations to the Response and its Exhibits are to the PDF page numbers of the Response. The Court takes judicial notice of the Mortgage and the documents cited or relied upon for the facts pled therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. The Court likewise takes judicial notice of the Complaint filed in the Civil Action and annexed as an exhibit to the Response, and of the amendments to that complaint. *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 180 (2d Cir. 2008) (citing *GICC Capital Corp. v. Technology Fin. Group, Inc.*, 67 F.3d 463, 465 (2d Cir. 1995)). A court may take into account any written instrument attached to the complaint, as well as statements and documents "incorporated in [the complaint] by reference" without converting a motion to dismiss into one for summary judgment. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotations omitted).

petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession and control of their business and assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[9] The Court extended the General Bar Date for consumer borrowers to June 3, 2019.[10]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, which went into effect on September 30, 2019.[11] The Plan Administrator and Consumer Claims Trustee are fiduciaries under the plan. *See* Third Amended Plan, art. I, §§ 1.130, 1.184, 1.186. The Plan Administrator is charged with winding down, dissolving and liquidating the Wind Down Estates and is provided exclusive authority to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims. *Id.* art. VII, § 7.1. The Consumer Claims Trustee is responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims. *See id.* art. I, § 1.41. As such, she is exclusively authorized to object to Consumer Creditor Claims. *Id.* art. VII, § 7.1.

---

[9] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[10] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[11] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

## The Claims Procedures Order

Under the Claims Procedures Order, a properly filed and served response to a claim objection, omnibus or otherwise, gives rise to a "Contested Claim." *See* Claims Procedures Order ¶ 3(iv). A Contested Claim is resolved at a hearing, which can be scheduled as either a "Merits Hearing," an evidentiary hearing on the merits of the Contested Claim, or a "Sufficiency Hearing," a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. *Id.* ¶ 3(iv)(a)-(b). At a Sufficiency Hearing, the Court applies the legal standard of review applied to a motion to dismiss under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

## The Claim

In Claimant's Official Form 410, Proof of Claim, he asserts a secured claim against Green Tree in the amount of $22,389.55. Claim at 1–2. He states the basis of the Claim is "Debtor quitclaimed to another [without] notice." *Id*. at 2. Claimant contends the Claim is fully secured by a lien on real estate. *Id*. He states the basis of perfection is "Mortgage & 1099-C." *Id*. He also contends that the Claim is based on a lease and the amount necessary to cure any default as of the date of the petition is $17,830.66. *Id*. Claimant annexes a signed document dated April 23, 2019, titled "Attachment of Explanations to Accompany Official Form 410-Proof of Claim" to further explain the basis of the Claim, security interest, and setoff amount ("Claim Explanation").[12]

---

[12] The Claim Explanation is included as PDF pages 4–6 of the Claim. Claimant also annexes two copies of a document titled "Statement Concerning Supporting Documents to Accompany Official Form 410-Proof of Claim," as pages 7–8 of the Claim. The statement lists, but does not include copies of, four documents to support the claim: (a) Instrument 1390882 "Cash Sale Deed," (b) Instrument 1825539 "Act of Mortgage," (c) Instrument 1997533 "Notice to Clerk of Court/Request for Injunction," and (d) Instrument 2329345 "Notice of Amendment to Mortgage."

***Basis of the Claim***

Claimant states that the basis of the Claim is the residence on the Property, which was constructed and financed by JW Homes in 2002. Claim Explanation at 1. In the Claim, he refers to the Mortgage, but does not include a copy of it, or of any of the other documents he discusses. *Id.*

Claimant explains that in 2006, JW Homes assigned the Mortgage to Walter Mortgage Servicing Inc. ("WM Servicing") pursuant to a "Louisiana Assignment of Mortgage" recorded in the "1st Judicial District Court of Louisiana" (the "Assignment").[13] *Id.* at 1–2. He alleges that he was not informed of the Assignment and "disagrees with the amount of the Mortgage" as stated therein. *Id.* at 2. He contends the "amount transferred as mortgaged" to WM Servicing was "$119,134.00 more than the amount originally financed" by JW Homes. *Id.*

Claimant alleges that "the Mortgagee" attempted to foreclose on the Property in 2006 without notifying him (the "Seizure"). Claim Explanation at 2. He states that an "attorney ad hoc" notified him of the pending foreclosure several months later, "at which time the proceedings were ended due to the [Claimant's] rights pursuant to the Service-member's Civil Relief Act ["SCRA"]] . . . ." *Id.*[14]

Claimant states that in 2007, "the Mortgagee" issued him an "IRS Form 1099-C 'Cancellation of Debt'" (the "Form 1099-C").[15] Claim Explanation at 2. Claimant "understood the Mortgagee to have cancelled $33,479.55 of the original principal [under the Mortgage] of

---

[13] Claimant notes that WM Servicing lists the same address on the Assignment that JW Homes listed on the Mortgage. Claim Explanation at 2. A copy of the Assignment is annexed as Exhibit F to the Response, at page 25.

[14] The Servicemember's Civil Relief Act is found at 50 U.S.C. §§ 3901, et. seq.

[15] Claimant does not attach a copy of the Form 1099-C to the Claim, but he annexes a copy as Exhibit E-1 to the Response, at page 24.

$60,890.00, leaving a principal balance of $27,410.45 owed [to] the Mortgagee by the [Claimant]."
*Id*. Claimant also contends that "the Mortgagee" stated on the Form 1099-C that the "2007 Fair

Market Value" of the Property was $49,800.00, which Claimant did not dispute. *Id*.

He asserts that in May of 2013, Green Tree recorded a "Quit Claim Deed, Vendor's Lien

and Special Mortgage" (the "Quit Claim Deed") against the Property. *Id*. He complains that he

was not provided notice of the Quit Claim Deed or of Green Tree's relationship with JW Homes

or WM Servicing. *Id*. Claimant contends that the Quit Claim Deed lists the principal amount of

the Mortgage as $47,550.60, "the same being $2,249.40 less than the 2007 Fair Market Value of

the dwelling as stated by the Mortgagee." *Id*.

Based on this, Claimant is "submitting" the Claim for the "2007 Fair Market Value" of the

Property (which he states was $49,800.00) "minus the remaining principal subsequent to the 2007

[c]ancellation of $33,475.55 of the original principal" under the Mortgage (which was

$27,410.45), for a Claim amount of $22,389.55. *Id*.

***Security Interest***

Claimant states he holds a "third party responsible" for the payment of $259.17 per month

for 180 months (amounting to $46,650.60), "the same having commenced in the year 2013 and

collected toward the Special Mortgage." Claim Explanation at 3. Claimant "wishes to consider the

Debtor's past, present, and future collection of lease/rental proceeds from the [Special Mortgage]

as security to [Claimant]." *Id.*

***Right to Setoff***

Claimant asserts a setoff amount of $17,830.66, arising out of the Civil Action. Claim

Explanation at 3. He contends this amount is equal to the amount of the installment payments

previously made on the Mortgage, and is a "recoupment" pursuant to the SCRA. *Id.*

**The Civil Action**

On December 1, 2017, Claimant filed a complaint commencing an action (the "Civil Action")[16] against WM Servicing and Mid State Homes, doing business as JW Homes (the "Complaint"),[17] in the United States District Court for the Western District of Louisiana (the "Louisiana Court"). Claimant subsequently amended the Complaint to add Green Tree as a defendant (the "Amended Complaint").[18] On August 16, 2018, Claimant filed a Second Amended Complaint.[19] That complaint includes claims based on breach of the Mortgage, Second Amended Complaint ¶¶ 15, 32, 60, violations of sections 3952, 3953, 4041, and 4042 of the SCRA, *id.* ¶¶ 49–50, and a violation of article 3476 of the Louisiana Civil Code ("Article 3476"), *id.* ¶¶ 9, 63.

On March 12, 2019, the Louisiana Court granted the defendants' Second Motion to Dismiss, and dismissed the Second Amended Complaint with prejudice pursuant to Rule 12(b)(6) for failure to state a claim. *Davis v. Mid State Homes*, No. 17-CV-01556, 2019 WL 1179417 at *7 (W.D. La. Mar. 12, 2019).[20] The Louisiana Court held that the statute of limitations for the SCRA claims had expired and that those claims were time barred. *Id.* at *4.[21] The court relied on the Ninth Circuit's reasoning in *McGreevey v. PHH Mortgage Corp.*, 897 F.3d 1037, 1042 (9th Cir. 2018),

---

[16] The Civil Action is the case styled *Davis v. Mid State Homes*, No. 17-CV-01556 (W.D. La. filed Dec. 1, 2017).

[17] The Complaint is annexed as Exhibit G-1 and Exhibit G-2 to the Response, at pages 29-30.

[18] *Amended Complaint*, *Davis v. Mid State Homes*, No. 17-CV-01566 (W.D. La. Jan. 25, 2018), La. ECF No. 4. References to "La. ECF No. __" are to documents filed on the electronic docket under Case No. 17-CV-01556.

[19] *Second Amended Complaint*, *Davis v. Mid State Homes*, No. 17-CV-01556 (W.D. La. Aug. 16, 2018), La. ECF No. 26 (the "Second Amended Complaint").

[20] *See also Judgment Granting Second Motion to Dismiss*, *Davis v. Mid State Homes*, No. 17-CV-01556 (W.D. La. Mar. 12, 2019), La. ECF No. 40.

[21] The Court noted that it was unclear how sections 3952 and 4041 related to Claimant's claims against the defendants, and did not address those sections. *Id.* at *4 n.5. The Court also did not address whether Claimant could bring a private cause of action under section 4042.

which held that the SCRA was subject to the federal catchall statute of limitations, 28 U.S.C. § 1658(a), which bars claims brought after four years. *Id*. The Louisiana Court found that the statute of limitations began to run in 2006, when Claimant alleges the Property was seized, and expired in 2010. *Id*. at *5. To the extent notice may have been required to trigger the statute of limitations, the court found that Claimant had notice that the Property was in danger of foreclosure in November of 2006, eleven years prior to filing the Civil Action. *Id*. The court rejected Claimant's contention that he was unaware of any issues with his ownership of the Property until December 2016. *Id*.

The Louisiana Court also held that Claimant's remaining claims, including his claim for breach of the Mortgage, failed to satisfy minimum pleading standards or were too vague and conclusory to state valid claims for relief. *Id*. at *6.

## The Objection

The Consumer Claims Trustee and Plan Administrator seek entry of an order disallowing and expunging the Claim, or alternatively, reclassifying the Claim as an unsecured Consumer Creditor Claim. Objection ¶ 12. They contend that the upon review of the Debtors' books and records, they determined that the Claim lacks merit. Objection Ex. A at 4.

## The Response

The Response consists of seven pages of argument, Response at 1–6, 34, and approximately twenty-four exhibits annexed in support, *id*. at 7–33. In the Response, Claimant purports to buttress his contention that the Claim should not be disallowed, expunged, reduced, or reclassified. *Id*. at 1–6. Claimant explains that from 2001–2002, a residence was constructed on

the Property. *Id*. at 1. He lived at the Property until 2006,[22] when he relocated to his current residence as a displaced worker. *Id*. He clarifies that the Claim affects his prior residence and, in support, annexes a copy of the Mortgage. *Id*. In 2005, Claimant enlisted in the Army National Guard (the "National Guard") and served ten weeks of active duty at Fort Knox, Kentucky, from May 2005 to July 2005. *Id*. at 2.[23] After returning from Fort Knox, he served several weeks on active duty as a recruiting assistant for the National Guard. *Id*. He also served four days on active duty in response to Hurricane Katrina. *Id*. From September 2005 to January 2006, Claimant was stationed in Fort Sam Houston, Texas, on active duty for training. *Id*. at 2.[24] In February of 2006, Claimant was hired full time in Baton Rouge, Louisiana. *Id*. at 3.

In 2005, before Claimant departed for Fort Sam Houston, JW Homes notified him that his payments on the Note were past due, and the Property was in jeopardy of foreclosure (the "Foreclosure Notice").[25] Response at 2–3. In response to the Foreclosure Notice, Claimant filed a notice to clerk of court/request for injunction (the "Request for Injunction")[26] to stay the foreclosure because of his "rights pursuant to the [SCRA]." *Id*. at 3. In the Request for Injunction, Claimant stated that he filed for unemployment in April 2005, and "return[ed] to making partial payments on the . . . [M]ortgage" in July 2005. Request for Injunction at 2. He attached copies of

---

[22] Claimant annexes four copies of his Louisiana driver's license as Exhibit A-1 to the Response, at page 9. The first license was issued November 1, 2007, and bears the same address as the Property. The remaining three licenses appear to be issued on or after December 29, 2011, and bear the address of Claimant's current residence.

[23] A copy of his Order for deployment at Fort Knox, Kentucky, is annexed as Exhibit B-2 to the Response, at page 14.

[24] A copy of his Order for deployment at Fort Sam Houston, Texas and a copy of his Diploma from Fort Sam Houston are annexed as Exhibit B-3 and Exhibit B-4 to the Response, at pages 15 and 16, respectively.

[25] A copy of the Foreclosure Notice is annexed as Exhibit C to the Response, at page 17.

[26] A copy of the Request for Injunction is annexed as Exhibit C-1 and Exhibit C-2 to the Response, at pages 18–19.

his deployment orders to the Request for Injunction and forwarded a copy to JW Homes. Response at 3.

In March of 2006, after Claimant began working at his job in Baton Rouge, WM Servicing filed a notice of seizure (the "Notice of Seizure")[27] against the Property in the 1st Judicial District of Louisiana, seeking to satisfy a claim of $64,392.07. Notice of Seizure at 1. Claimant says he first learned of the Seizure in a letter from an attorney appointed to represent him. Response at 3.[28] He informed the attorney that he had been on active duty from September 2005 through January 2006, and did not receive the Notice of Seizure. *Id*. The attorney notified the court, and the Property was not sold. *Id*.

Claimant explains that WM Servicing issued Claimant the Form 1099-C in 2007, which Claimant recorded against the Mortgage on December 28, 2010 (the "Notice of Amendment to Mortgage").[29] Claimant states he mailed a copy of the notice to WM Servicing, but they did not respond in opposition. Response at 3.

Claimant argues that his Claim should not be expunged because in May of 2013, WM Servicing reassigned the Mortgage to Green Tree without notice to him and, thereafter, Green Tree assigned their rights to the Property to a third party via the Quit Claim Deed.[30] *Id*. at 4. Claimant reiterates that in 2017 he commenced the Civil Action and provides a copy of the Complaint. *Id*. He says the Civil Action was referred to the U.S. Court of Appeals for the Fifth Circuit (the "Fifth Circuit") but was "postponed" in the wake of the commencement of the Chapter 11 Cases. *Id*.

---

[27] A copy of the Notice of Seizure is annexed as Exhibit D to the Response, at page 20.

[28] Claimant annexes copies of two letters from the attorney as Exhibit D-1 and Exhibit D-2 to the Response, at pages 21 and 22, respectively. The first letter is dated May 15, 2006, and the second is not dated.

[29] A copy of the Notice of Amendment to Mortgage is annexed as Exhibit E to the Response, at page 23.

[30] A copy of the Quit Claim Deed is annexed as Exhibit F-1 to the Response, at page 26.

Claimant annexes a copy of an order issued by the Fifth Circuit. In substance, it states that Claimant's appeal was dismissed as of September 24, 2019, for want of prosecution and due to Claimant's failure to timely pay the filing and docketing fee (the "Order Dismissing Appeal").[31] Claimant has added a signed statement to the Order Dismissing Appeal, stating that he refrained from prosecuting the appeal because he received notice of the bankruptcy and decided to submit the Claim. Order Dismissing Appeal at 1. Claimant argues that although Green Tree recorded the Quit Claim Deed in 2013, during the Civil Action in 2017, Green Tree contended they were free to quit claim the Property because of the Seizure in 2006. Response at 4.

Claimant purports to assert claims under the SCRA and Article 3476. He contends that, pursuant to the SCRA, he is entitled to recover the total amount of all installment payments that he made toward the Property. *Id*. at 2. He purports to reassert his rights under the SCRA to apply for benefits against the premature attempt to foreclose on the Property in 2006. *Id*. at 4. He argues that the SCRA entitles a "Servicemember who is dispossessed of any property by a finance or mortgage company while deployed on active duty to be reimbursed of all payments made to such company or less." *Id*. at 5. He asserts that the SCRA "requires the repossessor to refrain from [f]oreclosing on a person's home for a period of at least six months following the end of a deployment on Active Duty." *Id*. In support, he attaches a summary of sections of the SCRA ("SCRA Summary")[32] to the Response.

Claimant maintains that the amount of the Claim pursuant to the SCRA is less than the fair market value of the Property minus the balance owed on the Mortgage. Response at 5. He states

---

[31] A copy of the Order Dismissing Appeal is annexed as Exhibit G-3 to the Response, at page 31.

[32] A copy of the SCRA Summary is annexed as Exhibit H to the Response, at page 32. In the SCRA Summary, Claimant states he opposes the Debtors expunging the Claim because "the Debtor in acting as Mortgagee in the year 2006 did file an action" to seize and sell the Property within less than one year after he completed a tour of active duty. SCRA Summary at 1.

that the defendants in the Civil Action contended his Complaint was time barred, but they had not yet cancelled his Mortgage. *Id*. He asserts that he was not evicted from the Property, was informed the sale of the Property was cancelled, and was issued the Form 1099-C. *Id*.

Claimant argues that "Louisiana law requires [the] [M]ortgage on the [P]roperty have priority over any adverse mortgage and that all payments made toward the adverse mortgage are to be applied to my [M]ortgage in that it is the original mortgage." *Id*. He contends that he has not relinquished his ownership or any of his rights to the equity in the Property, and did not abandon the Property for failure to pay the Mortgage. *Id*. at 6. Rather, he was displaced due to employment difficulties, but had the intention of paying the Mortgage. *Id*.

Claimant further opposes the Debtors classifying the Property as a "Wind Down Estate" unless he receives an equitable settlement to use as a down payment to replace the Property. Response at 6. He states the Property was his residence from 2002 until 2006. *Id*. He contends that the Seizure was unlawful and the Mortgage was assigned without notice to him. *Id*. He represents that WM Servicing quit claimed his Property to a third party and "issued a mortgage" to the third party "with monthly payments that are approximately 50% less than the payments on the [Mortgage]." *Id*. Claimant states he has no explanation for the favorable treatment to the third party. *Id*.

In support of his claim under Article 3476, Claimant argues that the "action in mortgaging" the Property to a third party "has inherently caused an uncivil and unlawful character of ownership[.]" *Id*. He asserts that Louisiana law requires property ownership be both civil and equivocal, and argues that assigning the Mortgage to a third party without notice caused "an equivocal nature of ownership." *Id*. Claimant annexes an "Image of a Copy of Louisiana Civil Code Article 3476 – Attributes of Possession," which states: "The possessor must have a corporeal

possession, or civil possession preceded by corporeal possession, to acquire a thing by prescription. The possession must be continuous, uninterrupted, peaceable, public, and unequivocal."[33] Claimant "demand[s] that a settlement be made on this matter in [his] favor so that [he] as a consumer might [] resume the privilege of home ownership." *Id*.

**The Reply**

The Plan Administrator and the Consumer Claims Trustee contend that the Claim does not support any viable claim for recovery. They assert that the Claim is barred by application of the doctrine of res judicata, and should be dismissed, with prejudice. Reply ¶¶ 7–10. They maintain that the claims in the Civil Action are substantively the same as those asserted in the Claim, and therefore, the Louisiana Court's decision to dismiss in the Civil Action bars the Claim. *Id*. ¶ 10.

Moreover, they contend that even if the Claim is not barred by res judicata, the Court should disallow it for the same reasons that the Louisiana Court dismissed the Civil Action. *Id*. ¶¶ 11–29. Specifically, they argue that the Claim is time barred under the SCRA and fails to state a claim under the SCRA. *Id*. ¶¶ 17–22. They contend that, even liberally construed, Claimant's non-SCRA allegations are too vague and conclusory to otherwise state a cause of action and would be time barred regardless. *Id*. ¶¶ 23–29.

Alternatively, the Plan Administrator and Consumer Claims Trustee request the Court re-classify the Claim as a Consumer Creditor Claim because the Claim is not a secured claim and is not subject to a right of setoff. *Id*. ¶¶ 30–35.

---

[33] The "Image of a Copy of Louisiana Civil Code Article 3476 – Attributes of Possession" is annexed as Exhibit I to the Response, at page 33. Claimant has added text to the exhibit: "By a Cash Sale Deed and an Act of mortgage and the Certificate of Debt Cancellation I was the original possessor as owner of the affected property. The Debtors caused a violation of the afore mentioned State law in Louisiana by granting a third party a Quitclaim, Vendor's Lien and Special Mortgage on my property without notifying me and referred to their 2006 attempt to Seize and Sell as grounds for their actions. They created an uncivil and equivocal character of possession."

## LEGAL PRINCIPLES

A claim properly filed under section 501 of the Bankruptcy Code is "deemed allowed" absent an objection. 11 U.S.C. § 502(a). Such claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). A court may only disallow a claim if a party in interest has objected, and upon notice and hearing, the court finds the claim falls under one of the exceptions found in section 502(b) of the Bankruptcy Code. 11 U.S.C. § 502(b); *In re Manhattan Jeep Chrysler Dodge, Inc.*, 602 B.R. 483, 491 (Bankr. S.D.N.Y. 2019) ("Section 502 of the Bankruptcy Code provides generally that a proof of claim should be allowed except to the extent it is objectionable on various grounds."). As relevant to the Objection, section 502(b)(1) provides that a claim may be disallowed to the extent it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re Residential Cap., LLC*, 513 B.R. 446, 458 (Bankr. S.D.N.Y. 2014) (citing *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006)).

The merits of the Claim are not at issue**.** A Sufficiency Hearing is a non-evidentiary hearing to address whether a Contested Claim "has failed to state a claim against the Debtors which can be allowed and should be dismissed pursuant to Bankruptcy Rule 7012." Claims Procedures Order ¶ 3(iv)(a). *See* Fed. R. Bankr. P. 7012(b) (quoting Fed. R. Civ. P. 12(b)) (applying the federal standard under Rule 12(b)(6) motion to dismiss standard to adversary proceedings). The function of a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Havens v. James*, 76 F.4th 103, 116–17 (2d Cir. 2023) (quoting *Festa v. Loc. 3 IBEW*, 905 F.2d 35, 37 (2d Cir. 1990)). Rule 12(b)(6) "ensures that, consistent with Rule 8(a), a complaint includes 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Alharbi v. Miller*, 368 F.

Supp. 3d 527, 560 (E.D.N.Y. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Accordingly, in applying the legal standards applicable to Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the Claim in light of the pleading standards under Rule 8(a).

Rule 8 calls for a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To satisfy this standard, the complaint must at a minimum 'disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)); *see Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64 (2d Cir. 2014) ("[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level.").

The Rule 12(b)(6) standard requires courts to accept all factual allegations as true and to draw all reasonable inferences in favor of the non-moving party. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Further, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding what factual matter to accept as true, the Court is not required to "credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Where, as here, the [Claim] was filed *pro se,* it must be construed liberally to raise the strongest arguments it suggests. Nonetheless, [the] *pro se* [Claimant] must state a plausible claim for relief." *Walker v. Schult,* 717 F.3d 119, 124 (2d Cir. 2013) (internal citations, quotation marks, and brackets omitted); *see also Kimber v. GMAC Mortg., LLC (In re Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) ("Complaints drafted by *pro se* plaintiffs are to be construed liberally, but they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the plaintiff is complaining about and . . . whether there is a legal basis for recovery.'" (quoting *Iwachiw v. New York City Bd. of Elections,* 126 F. App'x 27, 29 (2d Cir. 2005) (summary order))).

## ANALYSIS

Claimant argues that he is owed $22,389.55 "unliquidated," Claim at 2, which is the amount of the fair market value of the Property less the unpaid principal due and owing, as listed on the Form 1099-C, Claim Explanation at 2. Claimant requests that the Claim be considered secured by the monthly payment amounts listed on the Quit Claim Deed. Claim Explanation at 3; Quit Claim Deed. Claimant also represents that the Claim is subject to a setoff, in the amount he sought to recover in the Civil Action. Claim at 2; Claim Explanation at 3.

Construing the Claim liberally, Claimant requests relief under sections 3952 and 3953 of the SCRA because he did not receive notice of the Assignment, Seizure and sale of the Property, or the Quit Claim Deed recorded by Green Tree. Claim Explanation at 2–3; SCRA Summary. He also alleges that Green Tree violated Article 3476. Response at 6, Ex. I. He requests a recoupment of the total amount of payments made toward the Mortgage or a settlement in his favor. Response at 2, 5.

**<u>Whether the Claim is Precluded by Res Judicata</u>**

The doctrine of res judicata provides that "a final judgment on the merits of an action

precludes the parties or their privies from relitigating issues that were or could have been raised in

that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). On a Rule 12(b)(6) motion, courts may

dismiss a claim based on the doctrine of res judicata. *Bd. of Managers of 195 Hudson St. Condo.*

*v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 470 (S.D.N.Y. 2009).

Federal common law governs the preclusive effect of prior federal court judgments in

federal-question cases.[34] *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("For judgments in federal-

question cases . . . . courts participate in developing 'uniform federal rule[s]' of res judicata, which

this Court has ultimate authority to determine and declare." (citing *Semtek Intern. Inc. v. Lockheed*

*Martin Corp.*, 531 U.S. 497 (2001))); *accord Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d

512, 521 (5th Cir. 2016). In determining whether res judicata bars a claim under federal law,

federal courts employ a four-part test:

> (1) the parties are identical or in privity;
> (2) the judgment in the prior action was rendered by a court of competent jurisdiction;
> (3) the prior action was concluded by a final judgment on the merits; and
> (4) the same claim or cause of action was involved in both actions.

*Snow Ingredients,* 833 F.3d at 521 (quoting *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 571

(5th Cir. 2005)). The Court addresses each element in turn.

***(1) The parties are identical or in privity***

The parties in the Civil Action were Claimant, WM Servicing, Mid State Homes d/b/a JW

Homes, and Green Tree. *See* Civil Action. Claimant filed the Claim against Green Tree, but asserts

---

[34] As the amount in controversy in the Civil Action is $17,830.66, and the claims in the Civil Action are brought under the SCRA, the Court assumes the Louisiana Court had federal question jurisdiction over the Civil Action. *McGreevey v. PHH Mortg*. Corp., 897 F.3d 1037, 1042–44 (9th Cir. 2018) (holding that the SCRA provided a basis for federal question jurisdiction).

claims against JW Homes and WM Servicing in the Claim Explanation and Response. Second

Amended Complaint. The first element is therefore satisfied, as the parties in the Civil Action and

the Claim are identical.

### (2) The judgment in the prior action was rendered by a court of competent jurisdiction

It is uncontested that the Louisiana Court had jurisdiction over the Civil Action. The second

element is satisfied.

### (3) The prior action was concluded by final judgment on the merits

The Civil Action concluded by the dismissal of Claimant's claims—including, among

other, those for violating the SCRA, Article 3476, and the Mortgage—with prejudice, pursuant to

Rule 12(b)(6) for failure to state a claim. *Davis v. Mid State Homes*, 2019 WL 1179417 at *5–7.

"Generally, a federal court's dismissal with prejudice is a final judgment on the merits for res

judicata purposes. It is well established that Rule 12(b)(6) dismissals are made on the merits."

*Stevens v. Bank of Am., N.A.*, 587 F. App'x 130, 133 (5th Cir. 2014) (unpublished) (internal

citations omitted). Accordingly, the dismissal constitutes a final judgment on the merits, in

satisfaction of the third element.

### (4) The same claim or cause of action was involved in both actions

The Fifth Circuit uses a "transactional test to determine whether two suits involve the same

cause of action, asking whether the facts in the two suits are 'related in time, space, origin, or

motivation, whether they form a convenient trial unit,'" or in other words, "whether they are based

on the 'same nucleus of operative facts.'" *Snow Ingredients*, 833 F.3d at 521 (citing *N.Y. Life Ins.

Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000)). The issue is whether the two actions are

predicated on the same facts. Res judicata bars relitigating the same facts, even if a party argues a

new legal theory or requests different relief. *Id*. at 522 (citing *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co*., 20 F.3d 663, 665 (5th Cir. 1994)).

The Civil Action and the Claim are based on the same facts and allegations, and Claimant's legal theories and requested relief in the Civil Action are identical to the theories and relief sought in the Claim, as supplemented by the Response. In the Second Amended Complaint and the Claim, Claimant describes his periods of leave due to active duty and the events related to the Mortgage and Property. He explains that the claims are based on the assignments of the Mortgage, Claimant's failure to receive the Notice of Seizure, the Form 1099-C, and the Quit Claim Deed. Therefore, the claims asserted in the Civil Action and the Claim are based on the same nucleus of operative facts and transactions.

In the Civil Action, Claimant asserted claims pursuant to sections 3952 and 3953 of the SCRA and Article 3476, as well as claims for breach of contract. Claimant requests the same relief in his Claim. In the Response, Claimant specifically cites to sections 3952 and 3953 of the SCRA. Response at 2; SCRA Summary. He states, "I [c]laim my right to recover from the Debtor the total amount of all installments/payments that I made toward the affected property and that my recoupment of those payments is pursuant to the Servicemember's Civil Relief Act." Response at 2. He further asserts a right to setoff in the amount of $17,830.66, which he expressly states is equal to the amount of his claim in the Civil Action for the installment payments, and constitutes a "recoupment" pursuant to the SCRA. Claim Explanation at 2. Not only does this demonstrate that the claims for relief are identical, but further supports that both actions are predicated on the same nucleus of operative facts.

In the Response, Claimant references Article 3476 as another basis for relief against Green Tree, just as in the Second Amended Complaint. To the extent he asserts claims for breach of

contract that differ from those in the Civil Action, such claims are based on the same contract, the

Mortgage, and therefore, could have been raised in the Civil Action. *See Allen*, 449 U.S. at 94.

As all four elements required for the application of res judicata are met, Claimant is barred

from relitigating the claims against Green Tree that underlie the Claim. On that basis, the Court

disallows and expunges the Claim.

## **Whether the Claim States a Cause of Action Against Green Tree**

Alternatively, the Court disallows the Claim because it fails to state a claim for relief

against Green Tree.

### *The SCRA Claim is Time Barred*

The SCRA does not include a statute of limitations. *McGreevey v. PHH Mortgage Corp.*,

897 F.3d 1037, 1039–40 (9th Cir. 2018). The Ninth Circuit has held that the federal "catch all"

statute of limitations in 28 U.S.C. § 1658(a) applies to private suits alleging violations of section

3953 of the SCRA. *Id*. at 1040. Under the statute, an action must be commenced within four years

after the cause of action accrues. 28 U.S.C. § 1658(a).

Under sections 3952 and 3953 of the SCRA, a violation occurs, and therefore, a cause of

action accrues, when (i) an installment contract is rescinded or terminated for a breach that

occurred before or during active service; or (ii) the property securing an obligation is repossessed,

seized, foreclosed on, or sold during or within a year after active service. 50 U.S.C. §§ 3952, 3953.

Claimant states that he received the Notice of Seizure in 2006. Claim Explanation at 2.

The Notice of Seizure states that a writ of seizure and sale was issued on February 24, 2006, and

the sale of the Property was scheduled for July 5, 2006. Notice of Seizure at 1. Accordingly, the

statute of limitations expired in 2010—seven years prior to the Civil Action and nine years prior

to the Claim. Therefore, to the extent it relies on SCRA causes of action, the Claim is time barred. 28 U.S.C. § 1658(a).

Bar by a statute of limitation is typically an affirmative defense, which the defendant must plead and prove. *See John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 133 (2008); Fed. R. Civ. P. 8 (c). A defendant does not render a complaint defective by pleading an affirmative defense. *See Gomez v. Toledo,* 446 U.S. 635, 640 (1980). Accordingly, the possible existence of a statute of limitations defense is not ordinarily a ground for dismissal under Rule 12(b)(6), unless the complaint itself establishes the defense. *See Ellul v. Congregation of Christian Bros.,* 774 F.3d 791, 798 n.12 (2d Cir. 2014) ("Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.,* 547 F.3d 406, 425 (2d Cir. 2008))); *accord Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter." (citations omitted)).

Here, it is clear from the face of the Claim that the Claim is time barred, as Claimant expressly complains that the Seizure in 2006 violated the SCRA. Accordingly, Claimant fails to state a claim for relief against Green Tree under the SCRA.

### *The SCRA Claims Fail to State Claims for Relief*

Furthermore, Claimant does not allege sufficient facts to state a claim for relief under sections 3952 and 3953 of the SCRA. Section 3952 prohibits a lender from rescinding or

terminating installment contracts for the purchase of real property and from repossessing a servicemember's property for a breach of contract that occurred before or during military service. 50 U.S.C. § 3952(a). In a hearing based on section 3952, a court may "order repayment to the servicemember of all or part of the prior installments or deposit as a condition of terminating the contract and resuming possession of the property" or "may make other disposition as is equitable to preserve the interests of all parties." *Id*. § 3952(c).

Claimant requests relief in the form of recoupment of all previous installment payments made under the Mortgage and requests an equitable settlement in his favor. Response at 2, 6. However, section 3952 does not apply to the Mortgage. *Rummans v. HSBC Bank USA Natl. Assn. as Tr. for MASTR Reperforming Loan Tr. 2005-2*, No. 3:22-CV-02046, 2024 WL 495955, at *7 (N.D. Tex. Jan. 23, 2024), *report and recommendation adopted,* No. 3:22-CV-02046, 2024 WL 495258 (N.D. Tex. Feb. 8, 2024) ("By its plain language, however, section 3952(a) does not apply to the facts at issue here. [Plaintiff's] lawsuit does not involve an installment purchase contract for, or lease of, the Property."). Claimant has failed to allege any facts demonstrating that the Mortgage is an installment contract for the purchase of the Property; instead he puts forth facts indicating the Mortgage secured the amounts due under the building contract. Claim Explanation at 1; Mortgage at 1. He has failed to allege facts in support of a claim under section 3952.

Section 3953 states that a sale, foreclosure, or seizure of property for a breach of a mortgage agreement during or within a year of a period of military service is invalid except "upon a court order granted before such sale, foreclosure, or seizure with a return made and approved by the court . . . ." 50 U.S.C. § 3953(c)(1). The SCRA does not offer complete and impenetrable protection against foreclosure; rather it "requires a lender to obtain a court order before foreclosing on or selling property owned by a current or recent servicemember . . . ." *Sibert v. Wells Fargo*

*Bank, N.A.*, 863 F.3d 331, 332 (4th Cir. 2017); *accord Griggs v. Miller,* 870 S.E.2d 578, 584 (2022). This procedure serves the purpose of the SCRA, namely "to prevent default judgments from being entered against members of the armed services in circumstances where they might be unable to appear and defend themselves." *Dae Hyutz Kwon v. Santander Consumer USA*, 742 F. App'x 537, 539 (2d Cir. 2018) (summary order) (quoting *United States v. Kaufman*, 453 F.2d 306, 308–09 (2d Cir. 1971)).

Claimant does not seek to invalidate a sale, foreclosure, or seizure of the Property, and section 3953 does not apply to assignments or the Quit Claim Deed. *See* 50 U.S.C. § 3953. He states that the Seizure was a violation of the SCRA, but notes that once his attorney notified the court that he was on military leave, the Property was not sold. Response at 2. Accordingly, there is no sale or foreclosure of the Property to invalidate. Moreover, section 3953 does not provide a basis for monetary recovery; it states that the violator is subject to criminal liability. 50 U.S.C. § 3953(d). Accordingly, Claimant has failed to allege facts to support a Claim for relief under section 3953 of the SCRA.

### *Claimants Other Claims Fail to State a Claim for Relief*

Claimant alleges that Green Tree violated Article 3476. Response at 6, Ex. I. Article 3476 provides the attributes of prescription, or adverse possession: "The possessor must have corporeal possession, or civil possession preceded by corporeal possession, to acquire a thing by prescription. The possession must be continuous, uninterrupted, peaceable, public, and unequivocal." La. C.C. art. 3476. Prescription is the method by which an individual may acquire a servitude. *Id*. art. 705; *Katz v. Creel*, 391 So. 3d 1119, 1124 (La. App. 1st Cir. 2024). Claimant states that Green Tree "caused an equivocal nature of ownership" but Louisiana law requires ownership be "civil and equivocal." Response at 6. Claimant seems to confuse the elements of

prescription, which are asserted to acquire property rights, as mandatory legal requirements. Claimant has failed to allege sufficient facts to state a claim for prescription under Article 3476, and there is no other basis for relief it could support.

To the extent Claimant requests relief for breach of contract or fraud, such claims are vague or conclusory. Claimant asserts the amount of the Claim is $22,389.55, which he states is the principal balance remaining that was listed on the Form 1099-C less the 2007 Fair Market Value. Claim Explanation at 2. Claimant does not explain why he is entitled to relief in this amount or the basis for employing this calculation. Claimant has failed to state sufficient facts to support a claim for relief.

## **CONCLUSION**

For the foregoing reasons, the Court sustains the Objection and disallows the Claim. The Court does not, consider the alternative requests for relief.

IT IS SO ORDERED.


Dated:  January 16, 2025
        New York, New York


/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge