**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NOT FOR PUBLICATION

------------------------------------------------------- x

In re:                                                   :

                                                         :

Ditech Holding Corporation, *et al.*,                    :

                                                         :

                                          Debtors.[1]    :

------------------------------------------------------- x

Case No. 19-10412 (JLG)
Chapter 11

Jointly Administered

**MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS
TRUSTEE'S TWENTY-SIXTH OMNIBUS OBJECTION TO PROOFS OF CLAIM
WITH RESPECT TO THE PROOF OF CLAIM FILED BY JAMES RAY**

**A P P E A R A N C E S:**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:    Richard Levin

JAMES RAY
*Appearing Pro Se*
801 Kerri Road
Hopkins, South Carolina 29061

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**


## INTRODUCTION[2]

James Ray ("Claimant") is acting pro se herein. He timely filed Proof of Claim No. 21229 (the "Claim") as an unsecured claim in the amount of $120,919.00 against Green Tree Servicing Corp. (f/k/a Conseco Finance Servicing Corp.) ("Green Tree"). The Consumer Claims Trustee filed the Twenty-Sixth Omnibus Objection (the "Objection")[3] seeking to disallow proofs of claim, including the Claim, that do not provide sufficient information or documentation to substantiate liability on the part of Green Tree.

Claimant filed a response to the Objection (the "Response").[4] The Consumer Claims Trustee[5] filed a reply in further support of the Objection (the "Reply").[6] In substance, the Consumer Claims Trustee contends that the Court should disallow the Claim because it fails to

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[3] *Twenty-Sixth Omnibus Objection to Proofs of Claim (Insufficient Documentation Unsecured Consumer Creditor Claims)*, ECF No. 2542.

[4] *Response of James Ray*, ECF No. 2669.

[5] On March 23, 2023, the Consumer Claims Trustee filed the *Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4650. The motion sought to estimate the Claim at $120,919.00 for the purpose of setting a distribution reserve. It also sought to classify the Claim as a non-363(o), Unsecured Consumer Creditor Claim, as defined by the Third Amended Plan. By order dated May 11, 2023, the Court granted the motion for the requested relief. *Order Granting Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4733.

[6] *Reply of the Consumer Claims Trustee in Support of the Twenty-Sixth Omnibus Objection to Proofs of Claim (Insufficient Documentation Unsecured Consumer Creditor Claims) with Respect to the Claim of James Ray (Claim 21229)*, ECF No. 5267.

state a claim for relief against Green Tree. Claimant filed a sur-reply in response to the Reply (the "Sur-Reply").[7] The Consumer Claims Trustee did not respond to the Sur-Reply.

Pursuant to the Claims Procedures Order,[8] Claimant's filed Response adjourned the Objection to provide time for the Consumer Claims Trustee to schedule a Sufficiency Hearing on the Claim. At a Sufficiency Hearing, the Court employs the legal standard of review applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Claims Procedures Order ¶ 3(iv)(a). The Court held the Sufficiency Hearing. The Consumer Claims Trustee appeared through counsel. The Claimant appeared pro se. The Court heard arguments from both parties.

The Court has reviewed the Claim, Objection, Response, Reply, and Sur-Reply, including all documents submitted in support thereof, and has considered the arguments made therein by the parties in support of their positions. In doing so, and in accordance with Rule 12(b)(6), the Court has accepted Claimant's well-pleaded factual allegations as true, and has drawn all reasonable inferences in Claimant's favor. In light of Claimant's pro se status, the Court has liberally construed the Claim, Response, and Sur-Reply to raise the strongest arguments that they suggest.

As explained below, the Claim fails to state a claim to relief against Green Tree. Accordingly, the Court sustains the Objection and disallows the Claim.

---

[7] *Sur-Reply of James Ray to the Consumer Claims Trustee's Twenty-Sixth Omnibus Objection to Proofs of Claim (Claim No. 21229)*, ECF No. 5244. The Sur-Reply was not executed, and was filed untimely on December 6, 2024.

[8] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

### The Loan

On or around September 19, 2000, James Ray and Zinta Ray (the "Rays") executed a promissory note in in favor of Conseco Finance Servicing Corp. ("Conseco") in the amount of $80,750.00 (the "Note").[9] Under the terms of the Note, Claimant agreed to pay a "balloon payment" due October 15, 2015, in the amount of $72,475.26. Note at 1. The Note is secured by a mortgage (the "Mortgage," together with the Note, the "Loan")[10] on the real property located at 801 Kerri Road, Hopkins, South Carolina 29061 (the "Property"). Reply ¶ 1. On September 29, 2000, the Mortgage was recorded in Richland County, South Carolina. Reply Ex. B at 1.

---

[9] A copy of the Note is annexed as Exhibit A to the Reply. The Court takes judicial notice of the Note, and the other documents annexed to the Reply as they are matters of public record and takes them into consideration because they are integral to the Claim. *Bellin v. Zucker*, 6 F.4th 463, 472 (2d Cir. 2021) (stating that when ruling on a Rule 12(b)(6) motion to dismiss, courts must consider the entire complaint, including documents incorporated therein by reference and other matters of which a court may take judicial notice); *Cohen v. Cap. One Funding, LLC*, 489 F. Supp. 3d 33, 46 (E.D.N.Y. 2020) ("Facts drawn from integral documents, even those not expressly incorporated by reference, are fair game in the context of a Rule 12(b)(6) motion."); *Cardoso v. Wells Fargo Bank, N.A.*, No. 21-8189, 2022 WL 4368109, at *1 n.1 (S.D.N.Y. Sept. 20, 2022) (determining a mortgage loan document is integral where the claim concerned allegations of misconduct in relation to an attempted modification and foreclosure of a mortgage and therefore considering it on a Rule 12(b)(6) motion to dismiss).

[10] A copy of the Mortgage is annexed as Exhibit B to the Reply.

On June 21, 2016, Ditech Financial LLC (f/k/a Green Tree) ("Ditech") assigned the Loan (the "Loan Assignment") to Wells Fargo Bank N.A., as Trustee for Green Tree 2008-MH1 ("Wells Fargo").[11]

**The Chapter 11 Cases**

On February 11, 2019, Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates, including Green Tree (collectively, the "Debtors"), filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession and control of their business and assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[12] The Court extended the General Bar Date for consumer borrowers to June 3, 2019.[13]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, which went into effect on September 30, 2019.[14] The Consumer Claims Trustee is a fiduciary under the plan. *See* Third Amended Plan, art. I, § 1.41. The Consumer Claims Trustee is responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed

---

[11] A copy of the Loan Assignment is annexed as Exhibit C to the Reply.

[12] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[13] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[14] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

Consumer Creditor Claims. *See id.* art. I, §§ 1.36–1.38. As such, she is exclusively authorized to object to Consumer Creditor Claims. *Id.* art. VII, § 7.1.

**The Claims Procedures Order**

Under the Claims Procedures Order, a properly filed and served response to a claim objection, omnibus or otherwise, gives rise to a "Contested Claim." *See* Claims Procedures Order ¶ 3(iv). A Contested Claim is resolved at a hearing, which can be scheduled as either a "Merits Hearing," an evidentiary hearing on the merits of the Contested Claim, or a "Sufficiency Hearing," a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. *Id.* ¶ 3(iv)(a)–(b). At a Sufficiency Hearing, the Court applies the legal standard of review applied to a motion to dismiss under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

**The Claim**

The Claim includes two Official Form 410, Proofs of Claim, both of which list Claimant as the "creditor" and "Zinta Ray" as "other names the creditor used with the debtor." Claim at 1, 4.[15] First, the Claim asserts an unsecured claim in the amount of $120,919.00 based on "Rejection Damages." *Id*. at 1–2. Claimant contends the Claim is subject to a right to set off and lists the property as "Mortgage." *Id*. Second, Claimant states the basis of the Claim as "Illegal loan Practice," but does not provide an amount claimed. *Id*. at 4.

In support of the Claim, Claimant annexes a letter from the Consumer Financial Protection Bureau ("CFPB") dated September 2, 2016 (the "CFPB Letter"). *Id*. at 6. The letter is addressed to "James E Ray and Zinta T Ray." *Id*. It states that the CFPB and the Federal Trade Commission ("FTC") settled charges against Green Tree for mishandling requests for mortgage short sales, failing to honor in-process loan modifications, and tricking consumers into paying convenience

---

[15] Page citations are to the PDF page numbers of the Claim.

fees. *Id*. The letter indicates a check is enclosed in the amount of $53.82 because Claimant was

identified as a borrower entitled to compensation under the settlement. *Id*.

Claimant also annexes an "Itemization" of the charges and expenses included in the Claim,

as follows: (i) $1,210.00 for "Legal Bankruptcy filing," (ii) $100,000 in "Punitive Damage for

Filing," (iii) "two years" of monthly payments in the amount of $361.00,[16] and (iv) "13.75%" for

"Ditech Int[e]rest Rate." *Id*. at 7–8. He lists the total amount of the Claim as $120,919.00. *Id*. at 1,

8.

## The Objection

The Consumer Claims Trustee seeks entry of an order disallowing the Claim due to

insufficient information or documentation. Objection ¶ 4. She contends that the upon review of the

Debtors' books and records, she determined that the Claim lacks merit. *Id*. ¶¶ 4, 8.

## The Response

Claimant submits a document in "opposition to the [O]bjection," stating "I was asked to

provide a narrative (through email dated June 15, 2020 and phone conversation with Ditech

Settlement representative) to explain what Ditech or Greentree . . . did wrong and how I arrived at

the damages." Response at 1. He refers to the CFPB Letter and asserts that "[t]he CFPB under

Title X of HR.1173 and Section 1011 establishes and specifically gives it the authority to prohibit

unfair, deceptive abusive lending acts committed by mortgage lenders." *Id*. (emphasis omitted).

Claimant explains that the Loan was "initially with [Conseco] and included a balloon," so

as it neared maturity, he and his spouse attempted on "numerous occasions" to modify the Loan

with Green Tree. *Id*. at 2. Claimant states they requested help under the Home Affordable

Modification Program (the "HAMP") and received "instructions on how to file . . . ." *Id*. Claimant

---

[16] Claimant lists $941.00 for "Ditech Mortgage payment," less $580.00 for "2014 Re-fi payment," for the total amount of $361.00. Claim at 8.

says he then submitted the "necessary documents" to Green Tree, but received no response from Green Tree "after numerous calls and continuous documentation request[s] by Greentree in which we complied . . . ." *Id*. He argues "[t]he CFPB through its investigation validated the above event which under the HAMP we were entitled to have a loan modified." *Id*.

Claimant contends that in July of 2012, prior to submitting a HAMP application, he and his spouse attempted to refinance the Loan with American Financial Resources and were approved. Response at 2. He contends that at the "closing of the [refinancing] loan Green Tree would not accept the payoff amount they initially quoted and required an additional five thousand dollars." *Id*. He asserts that "[t]hough we paid our mortgage and [the mortgage] was current at the time we were unable to get the approval for the additional funds." *Id.* He says he was unable to provide a copy of the "loan document." *Id*. Claimant states that he attached a copy of "the appraisal" to the Response, but does not annex any documents. *See id*. at 1–4.

Claimant complains that there has been "other behavior such as overzealous attempts to collect on payments only a day or two late that fell within the ten day grace period." Response at 2–3. He contends that the Claim amount "reflects the additional payments in interest and principle resulting from Greentree's refusal to comply with laws governing mortgage lending, there is no demand for punitive damages which we feel we are entitled to." *Id*. at 3. He alleges that as a result, he and his wife were "forced" to file bankruptcy to "protect" themselves from "Ditech foreclosing on the home." *Id*.

Claimant further asserts that "Ditech has continued to some degree the behavior of Greentree in refusing to honor the agreement it entered into under our bankruptcy agreement by refusing to modify the loan." Response at 2–3. He contends that Ditech has "continually inflated" the Loan balance. *Id*. at 3. In support, he references a notice of default letter "dated 1/13/2016

identifying the amount as $80,012.77" and "statements starting in 2019 through 2020 stating the balance to be as much as $728,650.08." *Id*. The letter and statements are not attached to the Response. Claimant states he made "numerous calls to inquire about the discrepancy" but was "simply told this [was] what their records reflected." *Id*.

Finally, Claimant states that the Consumer Claims Trustee is "within [her] right under the plan to object" to the Claim but maintains that dismissal of the Claim would deny him of "any means to be made whole[,] as the pursuant to the agreement of the plan[,] [Claimant] would forever be barred from seeking damages or otherwise from Ditech or its affiliates." *Id*. Based on this, Claimant requests the Court allow the Claim "to proceed." *Id*.

**The Reply**

Acknowledging that Claimant is proceeding pro se, the Consumer Claims Trustee liberally construes the Claim. Reply ¶ 43. The Consumer Claims Trustee interprets the Claim, as supplemented by the Response, as a claim (i) of entitlement to a permanent loan modification under the HAMP, *id*. ¶¶ 44–52, (ii) for breach of contract, *id*. ¶¶ 53–61, (iii) for violations of the Real Estate Settlement Procedures Act ("RESPA"), *id*. ¶¶ 62–68, and the Fair Debt Collection Practices Act (the "FDCPA"), *id*. ¶¶ 69–80, and (iv) for punitive damages, *id*. ¶¶ 81–84.

The Consumer Claims Trustee argues that even a generous reading of the Claim does not support any viable claim for recovery as a matter of law. *Id*. ¶ 41. The Consumer Claims Trustee contends that Claimant has failed to state a claim under the HAMP because the HAMP does not provide a private cause of action unless a borrower shows the existence of a trial payment plan agreement ("TPP Agreement") and seeks to enforce it, which Claimant has not alleged. *Id*. ¶¶ 44–48. She argues that any breach of contract action against Ditech (as Green Tree's successor) fails because Claimant has not alleged the existence of an agreement between Ditech and Claimant, *id*.

¶¶ 58–60, and any such claim is barred by South Carolina's three-year statute of limitations, *id*. ¶¶ 61–62. She contends that the RESPA claim fails because Claimant has not alleged that he submitted a completed loss mitigation application to Green Tree, *id*. ¶¶ 65–67, any claim would be barred by a three-year statute of limitations, *id*. ¶ 68, and RESPA does not allow punitive damages or damages for his inability to refinance the Loan, *id*. ¶ 69.

The Consumer Claims Trustee asserts that Claimant has failed to state a claim under the FDCPA because he has not alleged that either Green Tree or Ditech was a debt collector under the FDCPA or that either of them engaged in acts prohibited by the FDCPA. *Id*. ¶¶ 75–77. She also asserts that any claim under the FDCPA is time barred, *id*. ¶ 78, and Claimant's requested damages are not available under the FDCPA, *id*. ¶ 79.

Finally, she contends that Claimant is not entitled to recover punitive damages because such damages are unavailable against an insolvent chapter 11 debtor. *Id*. ¶ 84.

### The Litigation History

On August 15, 2016, Wells Fargo filed a foreclosure action against the Rays.[17] In the complaint (the "Foreclosure Complaint"),[18] Wells Fargo alleged that the balloon payment under the Loan was due and demanded full payment of $69,929.56, at an interest rate of 13.74%, plus attorney's fees and reasonable costs. Wells Fargo also filed a Notice of Mortgagor's Right to Foreclosure Intervention,[19] which advised Claimant of his eligibility for foreclosure intervention programs and the related deadlines.

---

[17] *Wells Fargo Bank N.A. as Trustee for Green Tree 2008 MH-1 v. James E. Ray, Zinta T. Ray, CACH, LLC*, Case No. 2016-CP-40-04867, Court of Common Pleas, Richland County, South Carolina (Aug. 15, 2006). A copy of the State Court docket is annexed to the Reply as Exhibit D.

[18] A copy of the Foreclosure Complaint is annexed to the Reply as Exhibit E.

[19] *See* State Court Docket.

On November 11, 2016, Zinta Ray filed a petition for relief under chapter 13 of the Bankruptcy Code (the "Zinta Ray Bankruptcy").[20] On November 14, 2016, the bankruptcy court issued an Order Regarding Procedures for Loss Mitigation/Mortgage Modification (the "LM/MM Order").[21] The LM/MM Order stated that the Court preferred that any modification applications during the pendency of an active bankruptcy be submitted through a designated portal. The purpose of the portal was to "reduce[] disputes by enabling parties interested in [loss mitigation] to more quickly communicate and exchange all necessary documentation in a secure and transparent online environment while preserving the record of communication . . . ." LM/MM Order at 1. Further, use of the portal enabled the Court to intervene more seamlessly in any potential dispute. *Id.*

An order confirming Ms. Ray's Amended Chapter 13 Plan was entered on February 2, 2017.[22] The Amended Plan provided that Ms. Ray would make payments on the mortgage directly to the servicer and ordered her to seek loss mitigation options on the mortgage using the Bankruptcy Court's designated portal.[23]

On June 10, 2020, Shellpoint Mortgage Servicing ("Shellpoint") was servicing the mortgage for Wells Fargo and moved for relief from the automatic stay in Ms. Ray's chapter 13 case.[24] The parties agreed to resolve the motion through a settlement order (the "Settlement

---

[20] *In re Zinta Theresa Ray*, Case No. 16-05735 (Bankr. D.S.C., Nov. 11, 2016). A copy of the bankruptcy docket is annexed to the Reply as Exhibit F.

[21] A copy of the LM/MM Order is annexed to the Reply as Exhibit G.

[22] *Order Confirming Plan and Resolving Motions*, S.C. ECF No. 23. References to "S.C. ECF No. __" are to documents filed on the electronic docket of *In re Zinta Ray,* Case No. 16-05735 (Bankr. D.S.C.).

[23] A copy of the Amended Plan is annexed to the Reply as Exhibit H.

[24] *Motion for Relief of Co-Debtor Stay*, S.C. ECF No. 42.

Order")[25] entered on July 13, 2020, the terms of which ordered the parties to revisit loss mitigation options using the portal.

On September 9, 2020, Ms. Ray filed a notice of voluntary conversion from a Chapter 13 to a Chapter 7 bankruptcy.[26] On November 30, 2020, Shellpoint filed an Affidavit of Non-Compliance,[27] stating that Ms. Ray had failed to comply with the terms of the Settlement Order by neglecting to submit a loan modification application or open a filing in the court's designated portal. The Bankruptcy Court subsequently granted Shellpoint's request for relief from the stay.[28]

On December 21, 2020, Ms. Ray obtained a discharge order and her bankruptcy case was closed.[29] The Foreclosure Action was restored to the active docket on January 5, 2021. *See* State Court Docket. The Foreclosure Action was briefly stayed again after Claimant filed a separate bankruptcy action but was restored following dismissal of Claimant's bankruptcy filing. *Id*. That action is currently pending.

### The Sur-Reply

Claimant contends that the Sur-Reply "is necessary to highlight critical facts and legal violations omitted or misconstrued by the Trustee [in the Reply]." Sur-Reply at 1. He asserts that he has valid claims against the Debtors, "due to the Debtors' repeated failures to comply with federal mortgage servicing laws, consent orders, and principles of equity and good faith in bankruptcy proceedings." *Id.*

---

[25] A copy of the Settlement Order is annexed to the Reply as Exhibit I.

[26] *Notice of Voluntary Conversion Chapter 13 to Chapter 7*, S.C. ECF No. 52.

[27] A copy of the Affidavit of Non-Compliance is annexed to the Reply as Exhibit J.

[28] *Order*, S.C. ECF No. 75.

[29] *Order Discharging Debtor, Discharging Trustee, and Closing Case*, S.C. ECF No. 78.

In support of those arguments, Claimant first asserts that between November 2012 and March 2017, he and his wife repeatedly applied for loan modifications ("LLM applications") with Green Tree and later Ditech (post-merger), and the Debtors consistently failed to provide the legally required responses. *Id.*[30] He maintains that the Debtors ignored or delayed responses, in contravention of their consumer protection obligations. *Id.* Second, he notes that Green Tree consented to an order imposing permanent injunctions to protect borrowers seeking loan modifications (the "CFPB/FTC Consent Order").[31] *Id.* at 1–2. He states that Debtors failed to abide by the consent order, which forced Ms. Ray into bankruptcy. *Id.* at 2.

Next, Claimant says that beginning in January 2019, Claimant's mortgage balance "inexplicably soared to $728,650.08, with no coherent explanation from the Debtors." Sur-Reply at 2. He says that despite inquiries, the alleged inflated balance remained on the books. *Id.* He also complains that in transferring the loan servicing to Shellpoint, the Debtors did not provide timely notice to him, impairing his ability to make timely payments, causing financial harm. *Id.* Finally, he says that the Debtors failed to disclose foreclosure actions fully and accurately in their bankruptcy filings, in violation of "the transparency required in bankruptcy proceedings," which raises concerns about bad faith and incomplete disclosures. *Id.*

---

[30] He contends that those efforts included:

> November 2012: LLM application submitted to Green Tree.
> January 2016: LLM application submitted after Ditech's succession to Green Tree.
> March 3, 2017: LLM application submitted via the DMM portal through Claimants' bankruptcy counsel.

Sur-Reply at 1.

[31] The Court understands Claimant to be referring to the *Stipulated Order for Permanent Injunction and Monetary Judgment*, *Federal Trade Commission* et. al. *v. Green Tree Servicing LLC*, Case No. 15-cv-02064 (D. Minn. April 23, 2015), available at https://files.consumerfinance.gov/f/201504_cfpb_consent-order-green-tree.pdf.

Based on these allegations, Claimant argues that Ditech violated statutory and regulatory requirements governing mortgage servicing. Sur-Reply at 2. He contends that the "inflated" Loan balance "suggest[s] potential violations of the Truth in Lending Act ('TILA'), 15 U.S.C. § 1641(g), which mandates timely and accurate disclosures following changes in ownership or servicing." *Id.* He argues that the Debtors' failure to provide notice was a violation of TILA and section 2605 of RESPA. *Id.*

Claimant contends that federal courts give substantial weight to investigations and enforcement actions by federal agencies like the CFPB and FTC when adjudicating consumer protection cases.[32] He maintains that "[a]gency-driven enforcement is a critical mechanism that courts use to ensure compliance with consumer protection laws. By relying on these agencies' determinations, courts safeguard borrowers like Claimants from exploitative or deceptive practices." Sur-Reply at 3. He argues that, in this case, "the CFPB and FTC's prior consent order and related investigations into Green Tree's (and thus the Debtors') practices provide a strong evidentiary foundation that supports [his] allegations." *Id.* He asks the Court to "recognize[] the probative value of such findings . . . ." *Id.*

Finally, Claimant argues that judicial estoppel and the clean hands doctrine warrant denying the Debtors any relief. *Id.* at 3. He contends that the doctrine of judicial estoppel "prevents a party from asserting a position in one proceeding and later contradicting it in another" and that the clean hands doctrine prohibits a party engaged in wrongdoing from obtaining equitable relief. *Id.* Based on the Debtors' "failure to disclose foreclosure actions and other critical facts" and

---

[32] He asserts that these agencies possess the expertise and statutory authority to uncover, document, and remedy violations. Sur-Reply at 3. As support, he cites to *CFPB v. Gordon*, 819 F.3d 1179 (9th Cir. 2016), and *CFPB v. CashCall, Inc.*, No. CV 15-7522, 2018 WL 485963, at *2 (C.D. Cal. Jan. 19, 2018). He says those cases underscore that courts routinely accept federal agency findings as credible evidence of wrongdoing in complex mortgage servicing disputes. He also says that the Supreme Court has recognized the FTC's role as an "expert body." *Id.* (citing *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374 (1965)).

contradictory statements regarding loan ownership and servicing, he requests that the court apply these doctrines to preclude the Debtors from gaining advantage from their own misconduct *Id*. at 3–4.

Based on these arguments, Claimant requests the Court: (1) sustain the Claims based on the Debtors' failure to comply with federal statutes and the CFPB/FTC Consent Order, (2) deny the Debtors' requested relief, and (3) grant further equitable relief to ensure the Debtors do not profit from their wrongful conduct and to restore Claimants to the position they would have been in had the Debtors "observed their legal and equitable duties." *Id*. at 4.

## <u>LEGAL PRINCIPLES</u>

A claim properly filed under section 501 of the Bankruptcy Code is "deemed allowed" absent an objection. 11 U.S.C. § 502(a). Such claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). A court may only disallow a claim if a party in interest has objected, and upon notice and hearing, the court finds the claim falls under one of the exceptions found in section 502(b) of the Bankruptcy Code. 11 U.S.C. § 502(b); *In re Manhattan Jeep Chrysler Dodge, Inc*., 602 B.R. 483, 491 (Bankr. S.D.N.Y. 2019) ("Section 502 of the Bankruptcy Code provides generally that a proof of claim should be allowed except to the extent it is objectionable on various grounds."). As relevant to the Objection, section 502(b)(1) provides that a claim may be disallowed to the extent it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re Residential Cap., LLC*, 513 B.R. 446, 458 (Bankr. S.D.N.Y. 2014) (citing *In re W.R. Grace & Co.,* 346 B.R. 672, 674 (Bankr. D. Del. 2006)).

The merits of the Claim are not at issue**.** A Sufficiency Hearing is a non-evidentiary hearing to address whether a Contested Claim "has failed to state a claim against the Debtors which can be allowed and should be dismissed pursuant to Bankruptcy Rule 7012." Claims Procedures Order ¶ 3(iv)(a); *see* Fed. R. Bankr. P. 7012(b) (quoting Fed. R. Civ. P. 12(b)) (applying the federal standard under Rule 12(b)(6) motion to dismiss standard to adversary proceedings). The function of a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Havens v. James*, 76 F.4th 103, 116–17 (2d Cir. 2023) (quoting *Festa v. Loc. 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990)) (internal quotations omitted).[33] Rule 12(b)(6) "ensures that, consistent with Rule 8(a), a complaint includes 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Alharbi v. Miller*, 368 F. Supp. 3d 527, 560 (E.D.N.Y. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Accordingly, in applying the legal standards applicable to Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the Claim in light of the pleading standards under Rule 8(a).

Rule 8 calls for a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To satisfy this standard, the complaint must at a minimum 'disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis

---

[33] "On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are 'integral' to the complaint." *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citing *Brass v. American Film Techs.*, 987 F.2d 142, 150 (2d Cir. 1993); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991)). Because Sufficiency Hearings consider consumer claims, often by unrepresented claimants whose claims lack detail or do not attach pertinent supportive documentation, it has been the practice of this Court to consider the Consumer Claims Trustee's documentary submissions together with claims as if they were consolidated. The Court does so here.

for recovery.'" *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)); *see Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) ("[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level.").

The Rule 12(b)(6) standard requires courts to accept all factual allegations as true and to draw all reasonable inferences in favor of the non-moving party. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). Further, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding what factual matter to accept as true, the Court is not required to "credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Where, as here, the [Claim] was filed *pro se,* it must be construed liberally to raise the strongest arguments it suggests. Nonetheless, [the] *pro se* [Claim] must state a plausible claim for relief." *Walker v. Schult,* 717 F.3d 119, 124 (2d Cir. 2013) (internal citations, quotation marks, and brackets omitted); *see also Kimber v. GMAC Mortg., LLC* (*In re Residential Cap., LLC*), 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) ("Complaints drafted by *pro se* plaintiffs are to be construed liberally, but they must nonetheless be supported by specific and detailed factual allegations

sufficient to provide the court and the defendant with 'a fair understanding of what the plaintiff is complaining about and . . . whether there is a legal basis for recovery.'" (quoting *Iwachiw v. New York City Bd. of Elections,* 126 F. App'x 27, 29 (2d Cir. 2005) (summary order))).

## ANALYSIS

### Whether Claimant States a Claim Against the Debtors

Claimant asserts the basis of the Claim is "rejection damages" and "illegal loan practice." Claim at 2, 4. As the Consumer Claims Trustee notes, Claimant does not identify any specific legal theories in support of the Claim. Reply ¶ 42. The Consumer Claims Trustee construes the Claim as a claim for breach of contract and a request for relief under the HAMP, the RESPA loss mitigation requirements, and the FDCPA. Claimant does not challenge that interpretation of the Claim. However, in the Sur-Reply, he asserts that Debtors violated the CFPB/FTC Consent Order, TILA, RESPA, and bankruptcy disclosure requirements. Sur-Reply at 1–2. He also requests the Court apply judicial estoppel and the "clean hands doctrine." *Id*. at 3.

### *Whether Claimant States a Right to Relief Under the HAMP*

The Home Affordable Modification Program "was part of Congress's response to the financial and housing crisis that struck the country in the fall of 2008. It provided an incentive for lenders to modify mortgages so that struggling homeowners could stay in their homes." *Spaulding v. Wells Fargo Bank, N.A*., 714 F.3d 769, 772 (4th Cir. 2013). "The HAMP provides financial incentives to participating mortgage servicers to modify the terms of eligible loans and aims to financially assist homeowners who have defaulted on their mortgages or who are in imminent risk of default." *Thomas v. Enter. Bank of S.C.*, No. 1:16-CV-02793, 2018 WL 1456738, at *2 (D.S.C. Mar. 23, 2018) (citation omitted), *aff'd*, 739 F. App'x 186 (4th Cir. 2018) (unpublished).

In the Claim, Claimant essentially seeks to enforce the HAMP guidelines, as he contends that he is entitled to a permanent loan modification. Response at 2. However, the law is clear that,

as a general rule, a borrower is not entitled to relief under the HAMP based upon the lender's failure to grant a loan modification. "In analyzing the HAMP, courts have consistently found that the 'denial of loan modification under HAMP [or other similar programs] does not create a private cause of action.'" *Carrington v. Mnuchin*, No. CIV.A. 5:13-03422, 2014 WL 4249876, at *9 (D.S.C. Aug. 27, 2014) (quoting *Weber v. Bank of Am., N.A.*, C/A No. 0:13-cv-01999, 2013 WL 4820446, at *4 (D.S.C. Sept. 10, 2013) (collecting cases)); *see also Marks v. Bank of Am., N.A.*, No. 03:10-cv-08039, 2010 WL 2572988, at *5–7 (D. Ariz. June 22, 2010) ("Nowhere in the HAMP Guidelines, nor in the [legislation authorizing the creation of the HAMP], does it expressly provide for a private right of action. Rather, Congressional intent expressly indicates that compliance authority was delegated solely to Freddie Mac.").

The exception to that rule is where a borrower shows the existence of a TPP Agreement and seeks to enforce a contract action against a lender or servicer. *Spaulding v. Wells Fargo Bank, N.A.*, 920 F. Supp. 2d 614, 618 (D. Md. 2012) ("The applicable case law is clear that, absent a TPP Agreement, a suit that seeks the general enforcement of the HAMP guidelines must fail."), *aff'd*, 714 F.3d 769 (4th Cir. 2013).

Claimant does not assert the existence of a TPP Agreement. Nor does he provide documentation of such an agreement or allege that he tendered timely and full payments under an agreement. He merely states that Green Tree refused to modify the Loan. Accordingly, he fails to state a claim for relief under the HAMP. *See, e.g., Thomas*, 2018 WL 1456738 at *2 (rejecting claim that lender violated the provisions set forth in the HAMP by refusing to work with borrowers in the loan modification process.); *Stovall v. Suntrust Mortg., Inc.,* No. CIV.A. RDB–10–2836, 2011 WL 4402680, at *11 (D. Md. Sept. 20, 2011) (plaintiff's breach of contract claim failed to state a cause of action independent of the HAMP).

In asserting a right to relief under the HAMP, Claimant construes the CFPB Letter (and the investigation that preceded it) as proof that he was entitled to have his loan modified under the HAMP. Response at 2 ("The CFPB through its investigation validated the above event[34] which under the HAMP we were entitled to have a loan modified"). However, Claimant misplaces his reliance on the letter.

The CFPB is a regulatory body created by statute and tasked with the authority to "implement and, where applicable, enforce Federal consumer financial law consistently for the purpose of ensuring that all consumers have access to markets for consumer financial products and services and that markets for consumer financial product services are fair, transparent and competitive." 12 U.S.C. § 5511. The CFPB Letter explains that, in connection with the resolution of a federal lawsuit filed by the CFPB and the FTC against Green Tree, Claimant was entitled to a compensation check in the amount of $53.82. Claim at 6. It states that Green Tree "broke the law by mishandling requests for mortgage short sales, failing to honor in-process loan modifications and tricking consumers into paying convenience fees." *Id.* Further, it advises that Claimant is receiving the check because "your mortgage loan was serviced by Green Tree Servicing" and because the company agreed to compensate borrowers who "may have been harmed by its unlawful practices." *Id.* The CFPB Letter does not provide that Claimant had a right to have the Loan modified under the HAMP. He misplaces his reliance on the CFPB Letter.

Accordingly, he fails to state a claim for relief under the HAMP.

---

[34] The Court interprets the phrase "validated the above event" to mean that Claimant assumed that the CFPB's investigation specifically included an audit of his account with Green Tree and concluded that Green Tree had failed to honor his in-process loan modification.

### Whether Claimant States a Claim for Breach of Contract

To state a breach of contract claim under South Carolina law, a party must allege facts demonstrating the existence of a contract, breach, and damages caused by the breach. *Branche Builders, Inc. v. Coggins*, 686 S.E.2d 200, 202 (S.C. Ct. App. 2009) ("The elements for breach of contract are the existence of the contract, its breach, and the damages caused by such breach." (citation omitted)); *accord Hotel & Motel Holdings, LLC v. BJC Enters., LLC*, 780 S.E.2d 263, 272 (S.C. Ct. App. 2015).

"A contract is an obligation which arises from actual agreement of the parties manifested by words, oral or written, or by conduct." *Regions Bank v. Schmauch,* 582 S.E.2d 432, 439 (S.C. Ct. App. 2003). Accordingly, a valid and enforceable contract requires "a meeting of the minds between the parties with regard to all essential and material terms of the agreement." *Player v. Chandler*, 382 S.E.2d 891, 893 (S.C. 1989). In short, "[t]here must be an offer, there must be an acceptance, and there must be a meeting of the minds of the parties involved." *Hughes v. Edwards*, 220 S.E.2d 231, 234 (S.C. 1975). The breaching party is liable for damages that follow as a "natural consequence" and "proximate result of such breach." *Maro v. Lewis*, 697 S.E.2d 684, 688 (S.C. Ct. App. 2010) (quoting *Fuller v. E. Fire & Cas. Ins. Co.*, 124 S.E.2d 602, 610 (S.C. 1962)). In other words, the measure of damages is the loss actually suffered as a result of the breach. *Id*. (quoting *Minter v. GOCT, Inc.*, 473 S.E.2d 67, 70 (S.C. Ct. App. 1996)).

Claimant purports to allege two breaches of contract: (i) Green Tree's failure to enter into the HAMP loan modification, Response at 2, and (ii) as Green Tree's successor, Ditech's failure to "honor the agreement it entered into under our bankruptcy agreement by refusing to modify the loan," *id*. at 3. As set forth below, Claimant fails to state a breach of contract claim against Green Tree or Ditech. Moreover, in any event, any such claim is time-barred.

***Breach of Contract – HAMP TPP Agreement***

To state a claim for breach of contract on account of the HAMP loan modification, Claimant must allege facts demonstrating the existence of a TPP Agreement, and a breach of that agreement. *Allen v. CitiMortgage, Inc.,* No. CIV CCB-10-2740, 2011 WL 3425665, at *5 (D. Md. Aug. 4, 2011) ("[E]ven if a private right of action does not exist under HAMP, the [plaintiffs] may be permitted to assert a breach of contract claim stemming from the TPP Agreement as long as they have stated a proper claim in their amended complaint.").

Claimant asserts that "as the loan neared maturity" he attempted to modify it on "numerous occasions." Response at 2. However, he fails to state when he tried to modify the loan, what steps he took in order to do so, or whether he qualified for a modification. He says that he "request[ed] help in November 2012 under the . . . Home Affordable Modification Program." *Id*. He asserts that he received "the necessary documents and instructions on how to file" and "submitted [the documents] to Green Tree" but "received no response after numerous calls." *Id.* He claims to have received repeated requests for documentation from Green Tree "in which [he] complied but to no avail." *Id*. These facts, even if true, do not demonstrate that Claimant and Green Tree agreed to the essential and material terms of a TPP Agreement. Claimants broad and conclusory allegations about Green Tree's failure to modify the Loan over a period of years are far too vague to demonstrate a meeting of the minds as to the essential and material terms of the agreement. Claimant has failed to allege a breach of a HAMP TPP Agreement.

***Breach of Contract – Loan Modification Agreement***

Claimant asserts that Ditech (as Green Tree's successor) refused to "honor the agreement it entered into under our bankruptcy agreement by refusing to modify the loan." Response at 3.

Claimant has the burden of alleging facts demonstrating the formation of a contract. He has failed to do so.

The Court construes Claimant's allegation to refer to LM/MM Order entered in the Zinta Ray Bankruptcy. On November 14, 2016, the Bankruptcy Court ordered Ms. Ray and Wells Fargo to participate in loss mitigation efforts. *See* LM/MM Order § I. It required Wells Fargo to communicate with Ms. Ray regarding loss mitigation options through a bankruptcy portal and encouraged Ms. Ray to upload any related documents to the same portal. *Id.* §§ III, IV. Claimant has not alleged facts demonstrating that Ms. Ray complied with these directives. Claimant has not even alleged, that he or his wife ever submitted a completed application. Claimant has not alleged facts demonstrating that Green Tree was party to a loan modification agreement with Ms. Ray and that it breached such agreement.

### Statute of Limitations

In South Carolina, the statute of limitations for actions based on contracts is three years. S.C. Code § 15-3-530. The statute of limitations begins to run once the claimant knew or should have known that she had a cause of action. *Id.* § 15-3-535. The Claim was filed in 2019, therefore any cause of action for breach of contract that accrued prior to 2016 is time-barred. The facts demonstrate that in 2012, Claimant knew of the cause of action against Green Tree when he requested relief under the HAMP. Response at 2. Therefore, to the extent the Claim purports to assert a cause of action in breach of contract, it is barred by the statute of limitations.

Bar by a statute of limitation is typically an affirmative defense, which the defendant must plead and prove. *See John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 133 (2008); Fed. R. Civ. P. 8(c). A defendant does not render a complaint defective by pleading an affirmative defense. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980). Accordingly, the possible existence of a

statute of limitations defense is not ordinarily a ground for dismissal under Rule 12(b)(6), unless the complaint itself establishes the defense. *See Ellul v. Congregation of Christian Bros.,* 774 F.3d 791, 798 n.12 (2d Cir. 2014) ("Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.,* 547 F.3d 406, 425 (2d Cir. 2008))); *accord Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter." (citations omitted)).

Here, it is clear from the face of the Claim, as supplemented by the Response, that any breach of contract claim is time barred, as Claimant expressly complains that he was entitled to a modification of the Loan under the HAMP in 2012. Accordingly, Claimant fails to state a claim for breach of contract.

### Whether Claimant States a Claim Under RESPA

The Real Estate Settlement Protections Act "is designed to protect potential homeowners by requiring lenders to provide certain amounts of information throughout the loan settlement process." *Mangum v. First Reliance Bank*, No. 4:16-CV-02214, 2017 WL 1062534, at *2 (D.S.C. Mar. 21, 2017*); see also Smith v. Nationstar Mortg., LLC*, No. 2:15-CV-0888, 2015 WL 13759742, at *5 (D.S.C. Aug. 3, 2015) (RESPA "[is] a federal law which protects consumers from wrongful treatment by banks and other institutions involved in the closing process for home purchases.") (citation omitted).

Under RESPA, mortgage servicers are required to maintain policies and procedures that enable them to manage borrower loans transparently and effectively. 12 C.F.R. § 1024.38. RESPA applies to "federally related mortgage loan[s]," a term that includes loans secured by a lien on residential real estate "designed principally for the occupancy of from one to four families," for which the lender is federally regulated or has deposits or accounts insured by the federal government. 12 U.S.C. § 2602(1)(A)–(B). That includes loans "secured by a first or subordinate lien on residential real property." 12 C.F.R. §1024.2(b). The Loan is secured by a lien on the Property and is thus subject to RESPA's coverage. RESPA imposes various duties on mortgage loan servicers. 12 U.S.C.§§ 2605(a)–(e).

### (i)      Loss Mitigation Procedures

Loss mitigation refers to the steps mortgage servicers take to work with a mortgage borrower to avoid foreclosure. RESPA governs loss mitigation procedures; the procedures are implemented by 12 C.F.R. § 1024.41, known as Regulation X, enacted by the CFPB. *Mangum*, 2017 WL 1062534, at *2. As relevant, under section 1024.41, "prior to pursuing a foreclosure, servicers need to provide borrowers an opportunity to submit a completed loan modification application (known as the 'loss mitigation rule')." *Mangum*, 2017 WL 1062534, at *2. Without limitation, the loss mitigation rule requires servicers "to make a good faith effort to contact borrowers to inform them of loss mitigation options." *Id.* (citing 12 C.F.R. § 1024.39).

Where a loan servicer receives a complete loss mitigation application more than thirty-seven days before a foreclosure sale, then, within thirty days of receiving the complete loss mitigation application, a servicer must (i) evaluate the borrower for all loss mitigation options available to the borrower; and (ii) provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on

behalf of the owner or assignee of the mortgage. 12 C.F.R. § 1024.41(c). However, "[n]othing in [§] 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." *Mangum*, 2017 WL 1062534, at *3 (quoting 12 C.F.R. § 1024.41(a)). Accordingly, "the loss mitigation rule does not require a borrower actually receive a loan modification; instead, it requires simply that a completed application be properly processed and considered." *Id.* at *3 (citation omitted). Still, borrowers may appeal a loss mitigation decision within fourteen days of the offer, after which a servicer must provide a written notice of their decision on the appeal within thirty days. 12 C.F.R. § 1024.41(h)(2).

Borrowers may seek relief for RESPA violations, including violations of section 1024.41. 12 U.S.C. § 2605. However, alleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiff also must allege that the breach resulted in actual damages. *See* 12 U.S.C. § 2605(f)(1)(A) ("Whoever fails to comply with this section shall be liable to the borrower . . . [for] any actual damages to the borrower as a result of the failure . . . ."). If a loan servicer fails to comply with the provisions of section 2605, a borrower is entitled to any actual damages as a result of the failure. *Id.* At the pleading stage, a borrower must allege facts demonstrating some actual pecuniary loss, and a causal relationship between the alleged damages and the RESPA violation. *Padilla v. One W. Bank*, No. 10-04080, 2010 WL 5300900, at *6 (N.D. Cal. Dec. 20, 2010) (citation omitted); s*ee Champion v. Bank of America, N.A.*, No. 5:13-CV-00272, 2014 WL 25582, at *4 (E.D.N.C. Jan. 2, 2014) ("Without any allegation of actual damages due to the violations, plaintiff has failed to state a RESPA claim.").

Claimant alleges that he submitted a loan modification package to Green Tree, but does not allege that the application was complete or timely submitted. Response at 2. He states he did not receive a response, but complied with multiple document requests from Green Tree. *Id.* He

does not state he received a loss mitigation decision or offer, or indicate he appealed a loss mitigation decision.

Green Tree had no obligation to process an incomplete loan modification application. *See Mangum*, 2017 WL 1062534, at *3. However, Green Tree had a duty to exercise reasonable diligence to obtain documents to complete the application. 12 C.F.R. § 1041(c). The "multiple document requests" Claimant mentions suggests Green Tree may have received an incomplete application, and was attempting to obtain additional documents and information to complete Claimant's application, in compliance with RESPA. Regardless of whether the application was complete, Green Tree had no obligation to offer a loan modification to Claimant. *See Mangum*, 2017 WL 1062534, at *3.

Moreover, even if Claimant could allege a RESPA violation, he has failed to allege actual damages caused by that violation. Claimant asserts damages in the amount of "additional payments in interest and principal resulting from Greentree's refusal to comply with laws governing mortgage lending" and punitive damages in the amount of $100,000. Claim at 8; Response at 3. These additional payments appear to be alleged overpayments due to Claimant's inability to refinance the Loan. Claim at 8. Claimant does not demonstrate how Green Tree's alleged violation of the loss mitigation procedures caused Claimant's inability to refinance the Loan with a third party. Claimant also does not explain the basis of the punitive damages. Moreover, RESPA does not provide for punitive damages, and caps any additional damages for patterns of noncompliance (which Claimant does not allege) at $2,000. 12 U.S.C. § 2605(f)(1).

Finally, and in any event, any RESPA claim is barred by the statute of limitations. The statute of limitations to bring a claim for noncompliance with the loss mitigation and notice requirements under RESPA is three years. 12 U.S.C. § 2614 (providing three years to bring an

action for a violation of section 2605); *Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 470 (D. Md. 2012) ("Claims brought under § 2605 are governed by a three-year statute of limitations . . . . The limitations period begins to run 'from the date of the occurrence of the violation,' which generally refers to the date of closing for loan origination violations." (internal citations omitted)). Claimant alleges he was entitled to a modification as early as 2012. Response at 2. Accordingly, the statute of limitations expired in 2015, and Claimant's RESPA claims regarding loss mitigation are time-barred.

### (ii)    Notice of Transfer

In the Sur-Reply, Claimant alleges that Debtors failed to comply with RESPA's required notice of changes to servicing, "causing financial harm." Sur-Reply at 2. RESPA "imposes certain requirements in servicing transactions to inform the mortgagee of the identity of his mortgage servicer." *Harrell v. Freedom Mortg. Corp.*, 976 F.3d 434, 441 (4th Cir. 2020) (citing 12 U.S.C. § 2605(b)–(c)). "RESPA provides that when the servicer of a loan changes, the borrower is entitled to notice. 12 U.S.C. § 2605(b)(1), (c)(1), 24 C.F.R. § 3500.21(d)(1)(i). Specifically, the transferor must provide notice not less than fifteen days before the effective transfer of the loan, 12 U.S.C. § 2605(b)(2)(A), 24 C.F.R. § 3500.21(d)(2)(i)(A), and the transferee must provide notice not more than 15 days after the date of effective transfer. 12 U.S.C. § 2605(c)(2)(A), 24 C.F.R. § 3500.21(d)(2)(i)(B)." *Champion,* 2014 WL 25582, at *3 (quoting *Abels v. Bank of Am., N.A.,* No. 2:11-CV-2904, 2013 WL 1163753, at *9 (E.D. Cal. Mar. 20, 2013), *report and recommendation adopted,* No. 2:11-CV-2904, 2013 WL 3338649 (E.D. Cal. June 27, 2013)).

To state a claim for a violation of the RESPA notice requirements, Claimant must allege facts demonstrating "whether [Green Tree] was a loan servicer, when the alleged transfer took place, what entities were involved in the transfer, and what specific damages [Claimant] suffered

due to the lack of notice." *Grant*, 871 F. Supp. 2d at 471. "However, RESPA provides two different notice requirements depending on the status of the party." *Ward v. Sec. A. Mortg. Elec. Registration Sys., Inc*., 858 F. Supp. 2d 561, 573 (E.D.N.C. 2012). The transferor is required to provide notice at least fifteen days prior to the transfer of servicing, while the transferee or assignee is required to provide notice within fifteen days after. *Id*; 12 U.S.C. § 2605(b)–(c).

Claimant alleges that he received notice of servicing transfers "well outside the statutory timeframe, impairing [his] ability to maintain timely payments." Sur-Reply at 2. He does not allege whether Green Tree was the Loan servicer. He states that "[a]fter the servicing transfer to Shell[p]oint on March 1, 2020, Shell[p]oint indicated that Green Tree remained the mortgage's owner . . . ." *Id*. While Claimant seems to suggest that the transferee is Shellpoint, he does not identify any other entities involved in the transfer.

Further, Claimant does not state when he received notice. Nor does he indicate if the alleged untimely notice was given prior to or after the transfer. If prior, his allegations implicate the unidentified transferor, but if after the transfer, his allegations implicate Shellpoint. *Ward*, 858 F. Supp. 2d at 573 ("Plaintiffs' allegation that they were not given notice 15 days prior to the transfer implicates the unnamed assignor, not [defendant]—the transferee. Accordingly, Plaintiffs fail to state a claim under 12 U.S.C. § 2605(c) against [defendant] as its notice requirements were triggered after the transfer of the loan to [defendant].") Regardless, these allegations do not implicate Green Tree. Claimant fails to state a claim against Green Tree under section 2605(b) or section 2605(c) of RESPA, as he has not alleged Green Tree was the transferor or transferee such that the notice requirements were triggered. *Id*; *see also Grant,* 871 F. Supp. 2d at 471 ("Plaintiff provides no such factual allegations to support her claim. Indeed, beyond her 'legal conclusion'

that 'Defendants . . . failed to inform [her] of the actual transfer,' she sets forth no information at all about this issue.").

Even had Claimant sufficiently alleged sufficient information about the alleged Loan transfer, he has failed to allege specific damages from the lack of notice. He states the untimely notice impaired his ability to make timely payments and caused financial harm, without further detail. These general allegations are insufficient for a RESPA claim. *See Davis v. Bowens,* No. 1:11-CV-691, 2012 WL 2999766, at *5 (M.D.N.C. July 23, 2012) ("Further, the Amended Complaint does not allege actual damages due to any lack of notice of any change in servicers, but instead offers only a general allegation of harm from all combined actions of all Defendants. RESPA claims require more." (citations omitted)), *opinion and recommendation adopted,* 2012 WL 4462184 (M.D.N.C. Sept. 25, 2012). Moreover, the Claim amount is based on Claimant's inability to refinance the Loan and alleged punitive damages; it does not reflect damages for Claimant's late payments. *See* Claim at 8; Response at 3. Accordingly, Claimant fails to state a claim for relief under RESPA.

### *Whether Claimant States a Claim Under TILA*

"TILA 'has the broad purpose of promoting "the informed use of credit" by assuring "meaningful disclosure of credit terms" to consumers.'" *Ward,* 858 F. Supp. 2d at 566 (citing *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1980); 15 U.S.C. § 1601(a)). Under TILA, "creditors are required 'to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights.'" *Wilson v. Wells Fargo Bank, N.A*., C/A No. 2:21-01980, 2021 WL 8362388, at *5 (D.S.C. Sept. 9, 2021) (quoting *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998)), *report and recommendation adopted*, C/A No. 2:21-1980, 2022 WL 2914490 (D.S.C. July 25, 2022). Thus,

"[o]nly creditors and assignees are subject to liability under TILA" and a servicer is not considered an assignee "'unless the servicer is or was the owner of the obligation.'" *Ward*, 858 F. Supp. 2d at 566–67 (first citing 15 U.S.C. §§ 1640, 1641(a); then quoting 15 U.S.C. §1641(f)(1)).

Claimant asserts that the alleged "inflated" Loan balance suggests potential violations of TILA, 15 U.S.C. § 1641(g). Sur-Reply at 2. Section 1641(g) provides: "[N]ot later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer . . . ." 15 U.S.C. § 1641(g)(1). To state a claim against Green Tree for violations of TILA's mandated disclosures, Claimant must "allege facts which render plausible the conclusion that the TILA mandated disclosures were not made." *Ward*, 858 F. Supp. 2d at 569 (citing *Hudson v. Bank of Am., N.A.*, No. 3:09-CV-462, 2010 WL 2365588, at *5 (E.D. Va. June 11, 2010)). Claimant must also show that the alleged violation of TILA caused detrimental reliance. *Jaldin v. ReconTrust Co., N.A.*, 539 F. App'x 97, 103 (4th Cir. 2013) (unpublished) ("Detrimental reliance is an element of a TILA claim for actual damages.").

As a threshold matter, Claimant must allege that Green Tree is a creditor or an assignee such that TILA applies. *See Ward*, 858 F. Supp. 2d at 566. Claimant states that in March of 2020, Shellpoint notified him that Green Tree remained the owner of the Mortgage. Sur-Reply at 2. He argues that Shellpoint's notice "indicat[es] that required ownership transfer notices under TILA were never properly provided." *Id*. Section 1641(g) requires the new owner of a mortgage to provide notice of the transfer. Shellpoint's notice stating that Green Tree remained the owner of the Mortgage indicates there was no ownership transfer, thus no notice was required. Moreover, Claimant's complaints about an inflated Loan balance are unrelated to a transfer of ownership. His allegation that the Loan balance "suggest[s] potential violations," *id,* of TILA is insufficient to

state a claim for relief above the speculative level. *Wilson*, 2021 WL 8362388, at \*5 (citing *McCleary-Evans v. Maryland Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015) (a plaintiff must plead enough to raise a right to relief above the speculative level)). Therefore, Claimant has not alleged facts demonstrating a plausible violation of section 1641(g).

Even if Claimant had properly alleged a violation of TILA's disclosure requirements, he has not alleged facts showing he suffered actual damages as a result. He claims that failure to comply with TILA deprived him of crucial information and caused financial harm. Sur-Reply at 3. His Claim does not include any explanation of how the alleged violation caused detrimental reliance. He has failed to state a claim for actual damages under TILA. *See Wilson*, 2021 WL 8362388, at \*5; *Jaldin*, 539 F. App'x at 103.

### Whether Claimant States a Claim Under the FDCPA

Claimant argues that the CFPB "under Title X of HR.1173 and Section 1101 establishes and specifically gives it the authority to prohibit unfair, deceptive abusive lending acts committed by mortgage lenders." Response at 2. He also complains about Green Tree's alleged "overzealous attempts to collect on payments only a day or two late that fell within the ten day grace period." *Id.* at 2–3. The Court finds no support for Claimant's reference to "Title X of HR.1173 and Section 1101." However, the Court understands Claimant to purport to assert a claim against Green Tree under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq., and will review the Claim in that light.

"Congress enacted the FDCPA with the goal of eliminating abusive, deceptive, and unfair debt collection practices." *Clark v. Absolute Collection Serv., Inc.,* 741 F.3d 487, 490 (4th Cir. 2014); *see* 15 U.S.C. § 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using

abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.").

To state a claim for relief under the FDCPA, Claimant must allege facts demonstrating that: "'(1) [he] has been the object of collection activity arising from consumer debt; (2) [Green Tree] is a debt collector as defined by the FDCPA; and (3) [Green Tree] has engaged in an act or omission prohibited by the FDCPA.'" *Boosahda v. Providence Dane LLC,* 462 F. App'x 331, 333 n. 3 (4th Cir. 2012) (unpublished) (quoting *Ruggia v. Wash. Mut.,* 719 F. Supp. 2d 642, 647 (E. D. Va. 2010), *aff'd*, 442 F. App'x 816 (4th Cir. 2011)); *accord Quinlin v. CarringtonMortgage Serv.*, *LLC*, No. 0:13-1502, 2014 WL 3495838, at *6 (D.S.C. July 14, 2014). The Claim satisfies the first element of a claim for relief under the FDCPA, as Claimant alleges facts demonstrating he has been the object of collection activity arising from consumer debt. *See* Claim at 4; Response at 3. However, even construing the Claim in the light most favorable to Claimant, it fails to allege facts in support of the second and third element of an FDCPA claim.

First, Claimant has not alleged facts demonstrating that Green Tree is a "debt collector." Under the FDCPA, a "debt collector is defined as (1) 'any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts' or (2) any person 'who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'" *Brown v. Wachovia Bank*, No. 8:10-CV-1816, 2011 WL 5024297 at *3 (D.S.C. Sept. 30, 2011) (quoting 15 U.S.C. § 1692a(6)), *report and recommendation adopted*, No. CA 8:10-1816, 2011 WL 5024294 (D.S.C. Oct. 20, 2011). However, under section 1692(a)(6)(F)(iii), any entity attempting to collect "a debt which was not in default at the time it was obtained by such [entity]" is not a "debt collector." 15 U.S.C. § 1692a(6)(F)(iii). It is "well-settled . . . that . . . mortgage servicing companies are not debt collectors

and are statutorily exempt from liability under the FDCPA, to the extent that they take action to collect debts that were not in default at the time they acquired the debts.'" *Adam v. Wells Fargo Bank, N.A.,* No. CIV.A. ELH-09-2387, 2011 WL 3841547, at *38 (D. Md. Aug. 26, 2011) (emphasis omitted) (quoting *Scott v. Wells Fargo Home Mortgage*, 326 F. Supp. 2d 709, 718 (E.D. Va. 2003), *aff'd sub nom. Scott v. Wells Fargo & Co.*, 67 F. App'x 238 (4th Cir. 2003) (unpublished)) (collecting cases).

Claimant does not allege that the principal purpose of Green Tree's business is the collection of debts, that Green Tree regularly collects debts due to another, or that the Loan was in default when Green Tree acquired it from Conseco. Claimant alleges facts that suggest the Loan was not in default until after Green Tree acquired it. Claimant alleges that in July 2012, he requested a payoff amount from Green Tree, suggesting that by at least 2012, Green Tree acquired the Loan. Response at 2. The Foreclosure Complaint states that the Loan was in default as of August of 2015, approximately three years later. Foreclosure Complaint ¶ 38. Claimant has failed to allege facts demonstrating that Green Tree is a debt collector under the FDCPA.

Second, Claimant has not alleged that Green Tree engaged in conduct prohibited by the FDCPA. The FDCPA bars a "debt collector" from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. That conduct includes such acts as (1) the use or threat of violence, (2) the use of obscene language, (3) publication of a list of consumers who allegedly refuse to pay debts, (4) advertising the collateral for sale in an effort to coerce payment of the debt, (5) calling repeatedly with the intent to annoy, abuse or harass. *Id*. Claimant states that Green Tree engaged in "overzealous attempts to collect on payments only a day or two late that fell within a ten day grace period." Response at 3. He does not identify the timing or frequency of this contact. Claimant

has not alleged any facts demonstrating that Green Tree has harassed or abused him and fails to sufficiently allege the third element of an FDCPA claim.

Moreover, an FDCPA claim would be barred by the one-year statute of limitations. 15 U.S.C. § 1692k(d). "Ordinarily, the statute of limitations begins to run when the communication that violates the FDCPA is sent." *Richardson v. Shapiro & Brown, LLP*, 751 F. App'x 346, 349 (4th Cir. 2018) (unpublished) (internal quotation marks omitted). Accordingly, any claim based on communications sent prior to 2018 would be barred by the statute of limitations. Claimant does not allege a specific time period, but the Loan was transferred in 2016, so any communications from Green Tree prior to the transfer would be barred by the statute of limitations.

Finally, Claimant has not requested damages permitted under the statute. The FDCPA permits actual damages and, for individuals, additional damages up to $1,000. 15 U.S.C. § 1692k. Claimant requests damages for the additional costs incurred due to a failed refinancing attempt, which is unrelated to any "overzealous" collection attempts, and punitive damages, which are unavailable under the statute.

### Whether Claimant's Request for Punitive Damages is Otherwise Allowed

Claimant is not entitled to recover punitive damages from the Debtors. Punitive damages are available to claimants only after all general unsecured claims are paid in full. *See In re Motors Liquidation Co.*, 590 B.R. 39, 63 (S.D.N.Y. 2018) ("Specifically, the Bankruptcy Code provides for full repayment of the claims of general unsecured creditors before any punitive damages may be paid."). Under the Plan, unsecured creditors in these Chapter 11 Cases will receive a pro rata share, so punitive damages are not available.

### *Whether Judicial Estoppel Applies*

Judicial estoppel is "an equitable doctrine that prevents a party who has successfully taken a position in one proceeding from taking the opposite position in a subsequent proceeding . . . ." *Kiawah Island Util., Inc. v. Westport Ins. Corp.*, No. 2:19-CV-1359, 2019 WL 5395966, at *3 (D.S.C. Oct. 22, 2019) (quoting *King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998)). "[T]he doctrine is invoked to prevent a party from 'playing fast and loose with the courts,' from 'blowing hot and cold as the occasion demands,' or from attempting 'to mislead the [courts] to gain unfair advantage.'" *King*, 159 F.3d at 196 (quoting *Lowery v. Stovall*, 92 F.3d 219, 223, 225 (4th Cir. 1996)).

For judicial estoppel to apply to bar a claim, the following elements must be met:

(1) the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation;
(2) the position sought to be estopped must be one of fact rather than law or legal theory;
(3) the prior inconsistent position must have been accepted by the court; and
(4) the party sought to be estopped must have intentionally misled the court to gain unfair advantage.

*Kiawah Island,* 2019 WL 5395966, at *3 (quoting *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assur. Co., Inc.*, 867 F.3d 449, 458 (4th Cir. 2017), *cert. denied sub nom. Applied Underwriters Captive Risk Assur. Co. v. Minnieland Private Day Sch., Inc.*, 583 U.S. 1102 (2018)).

Claimant asserts that the "Debtors' failure to disclose foreclosure actions and other critical facts, coupled with contradictory statements about loan ownership and servicing, calls for judicial estoppel to prevent the Debtors from benefiting from their inconsistent conduct." Sur-Reply at 3. He argues that application of the doctrine of judicial estoppel will "preclude the Debtors from obtaining relief related to the foreclosure actions, servicing transfers, or other matters compromised by their misconduct and misrepresentations." *Id*. at 4.

There is no merit to those contentions. The Consumer Claims Trustee is not seeking relief related to the foreclosure actions and servicing transfers. In the Objection, she seeks to disallow and expunge the Claim. Claimant's vague assertions regarding Debtors' alleged "failure to disclose foreclosure actions and other critical facts," and their alleged "contradictory statements about loan ownership and servicing," have no bearing on the Objection. Rather, at issue is whether the facts alleged by Claimant in support of the Claim state a claim for relief against Green Tree. The doctrine of judicial estoppel has no application to the Objection.

### *Whether the Unclean Hands Doctrine Applies*

Claimant asserts that the Debtors have not acted with the transparency and integrity required of parties before this Court, because they have failed to comply with mortgage servicing laws, consent order obligations, and bankruptcy disclosure requirements. Sur-Reply at 3. He contends that "the clean hands doctrine prohibits any party engaged in wrongdoing from obtaining equitable relief," *id.*, and, in this case, "preclude[s] the Debtors from obtaining relief related to the foreclosure actions, servicing transfers, or other matters compromised by their misconduct and misrepresentations," *id.*, at 4.

"The doctrine of unclean hands is based on the equitable maxim which states, '[w]hoever comes into equity must come with clean hands.'" *In re Lafferty,* 469 B.R. 235, 245 (Bankr. D.S.C. 2012) (quoting *In re King,* No. 10–05756, 2010 WL 5173191, at *4 (Bankr. D.S.C. Sept. 13, 2010)). "A court can deny relief under the doctrine of unclean hands only when there is a close nexus between a party's unethical conduct and the transactions on which that party seeks relief." *Republic of Rwanda v. Uwimana (In re Uwimana),* 274 F.3d 806, 810 (4th Cir. 2001); *see also Freedom Med., Inc. v. Janssen (In re Janssens),* 449 B.R. 42, 65 (Bankr. D. Md. 2010) ("'The primary principle guiding application of the unclean hands doctrine is that the alleged inequitable

conduct must be connected, *i.e.,* have a relationship, to the matters before the court for resolution. We will not refuse relief to a party merely because it has engaged in misconduct which is unrelated to its claims before the court.'" (quoting *New Valley Corp. v. Corp. Prop. Assocs. 2 & 3,* 181 F.3d 517, 525 (3d Cir. 1999))). Application of this equitable doctrine is committed to the sound discretion of the Court. *In re Choquette*, 290 B.R. 183, 190 (Bankr. D. Mass. 2003).

The exercise of that discretion favors the Trustee. The Debtors' alleged failure to comply with mortgage servicing laws, consent order obligations, and bankruptcy disclosure requirements is unrelated to whether Claimant has stated a claim for relief against the Debtors. The doctrine of unclean hands does not bar the Consumer Claims Trustee from pursuing the Objection.

## **CONCLUSION**

Based on the foregoing, the Court sustains the Objection and disallows Claim No. 21229.

IT IS SO ORDERED.

Dated:  January 23, 2025
New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge