**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x

In re:                                                :

Ditech Holding Corporation, *et al.*,                 :

                                          Debtors.[1]  :

------------------------------------------------------------------ x

**NOT FOR PUBLICATION**

Case No. 19-10412 (JLG)
Chapter 11

Jointly Administered

**MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS**
**TRUSTEE'S EIGHTEENTH OMNIBUS OBJECTION TO PROOFS OF CLAIM WITH**
**RESPECT TO THE PROOF OF CLAIM FILED BY HELEN THOMAS**

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:    Richard Levin

HELEN THOMAS
*Appearing Pro Se*
317 Woodlawn Avenue
Atmore, Alabama 36502

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[2]

Helen Thomas ("Claimant") is acting pro se herein. She filed Proof of Claim No. 1972 (the "Claim") as an unsecured claim in the amount of $1,657.00, and a secured claim of $20,000, against Ditech Holding Corp. (f/k/a Walter Investment Management Corp.) ("Ditech"). The Plan Administrator and Consumer Claims Trustee filed the Eighteenth Omnibus Objection (the "Objection")[3] seeking to disallow proofs of claim, including the Claim, as "No Basis Consumer Creditor Claims." Claimant filed a response to the Objection (the "Response").[4] The Consumer Claims Trustee[5] filed a reply in support of the Objection (the "Reply").[6] In substance, the Consumer Claims Trustee asks the Court to disallow the Claim because it fails to state a claim for relief against Ditech.

Pursuant to the Claims Procedures Order,[7] Claimant's filed Response adjourned the Objection to provide time for the Plan Administrator to schedule a Sufficiency Hearing on the

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[3] *Eighteenth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims)*, ECF No. 1750.

[4] *Response of Helen Thomas*, ECF No. 1795.

[5] On March 24, 2023, the Plan Administrator and Consumer Claims Trustee filed the *Consumer Claims Trustee and Plan Administrator's Joint Omnibus Motion to Reclassify Certain Proofs of Claim and Consumer Claims Trustee's Motion to Estimate for Purposes of Distribution Reserves*, ECF No. 4662. The motion sought to estimate the Claim at $0.00 for the purpose of setting a distribution reserve. It also asserted the Claim was improperly filed as a secured claim and sought to reclassify it as a non-363(o), Class 6 Consumer Creditor Claim, as defined by the Third Amended Plan. By order dated May 10, 2023, the Court granted the motion for the requested relief. *Order Granting Consumer Claims Trustee and Plan Administrator's Joint Omnibus Motion to Reclassify Certain Proofs of Claim and Consumer Claims Trustee's Motion to Estimate for Purposes of Distribution Reserves*, ECF No. 4732. Upon the entry of that order, the Plan Administrator lost its interest in the Objection, as the Consumer Claims Trustee is solely responsible for reconciling Consumer Creditor Claims.

[6] *Reply of the Consumer Claims Trustee in Support of the Eighteenth Omnibus Objection (No Basis Consumer Creditor Claims) Solely with Respect to the Claim of Helen Thomas (Claim 1972)*, ECF No. 5303.

[7] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632 (the "Claims Procedures Order").

Claim. At a Sufficiency Hearing, the Court employs the legal standard of review applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Claims Procedures Order ¶ 3(iv)(a). The Court conducted the Sufficiency Hearing. The Consumer Claims Trustee appeared through counsel. Claimant appeared pro se. The Court heard arguments from the parties at the hearing.

The Court has reviewed the Claim, Objection, Response, and Reply, including all documents submitted in support thereof, and has considered the arguments made therein by the parties in support of their positions. In doing so, and in accordance with Rule 12(b)(6), the Court has accepted Claimant's well-pleaded factual allegations as true, and has drawn all reasonable inferences in Claimant's favor. In light of Claimant's pro se status, the Court has liberally construed the Claim and Response to raise the strongest arguments that they suggest.

As explained below, the Claim, as supplemented by the Response, fails to state a claim to relief against Ditech. Accordingly, the Court sustains the Objection and disallows the Claim.

## **JURISDICTION**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

### The Loan

On or around August 25, 1998, Claimant executed a Manufactured Home Retail Installment Contract and Security Agreement (the "Purchase Contract")[8] in favor of Green Tree Financial Corp. ("Green Tree") in the amount of $22,421.00. The manufactured home was located at 41 North 21st Avenue, Atmore, Alabama 36502 (the "Property"). The Purchase Contract was secured by a security interest in the Property, perfected by Green Tree's filing of a Certificate of Title in the State of Alabama. The certificate lists a vehicle identification number associated with the Property[9] and an issue date of "09/29/1998."

### The Chapter 11 Cases

On February 11, 2019, Ditech and certain of its affiliates, including Green Tree (collectively, the "Debtors"), filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession and control of their business and assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[10] The Court extended the General Bar Date for consumer borrowers to June 3, 2019.[11]

---

[8] Claimant does not attach a complete copy of the Purchase Contract to any of her pleadings, and it is not available in the public record. The Consumer Claims Trustee annexed a copy of the Purchase Contract as Exhibit A to the Reply. In the Claim, Claimant relies on the Purchase Contract to establish her alleged injuries, and it is integral to the Claim. The Court takes judicial notice of the Purchase Contract. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) (court may consider extraneous documents of which plaintiff already has knowledge and/or possession, so long as plaintiff relied on such documents in bringing suit).

[9] The vehicle identification number is listed as SSDAL252252.

[10] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof,* ECF No. 90.

[11] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc,* ECF No. 496.

On September 26, 2019, the Debtors confirmed their Third Amended Plan, which went into effect on September 30, 2019.[12]

The Plan Administrator and Consumer Claims Trustee are fiduciaries under the plan. *See* Third Amended Plan, art. I, §§ 1.130, 1.184, 1.186. The Plan Administrator is charged with winding down, dissolving and liquidating the Wind Down Estates and is provided exclusive authority to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims. *Id.* art. VII, § 7.1. The Consumer Claims Trustee is responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims. *See id.* art. I, § 1.41. As such, she is exclusively authorized to object to Consumer Creditor Claims. *Id.* art. VII, § 7.1.

**The Claims Procedures Order**

Under the Claims Procedures Order, a properly filed and served response to a claim objection, omnibus or otherwise, gives rise to a "Contested Claim." *See* Claims Procedures Order ¶ 3(iv). A Contested Claim is resolved at a hearing, which can be scheduled as either a "Merits Hearing," an evidentiary hearing on the merits of the Contested Claim, or a "Sufficiency Hearing," a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. *Id.* ¶ 3(iv)(a)–(b). At a Sufficiency Hearing, the Court applies the legal standard of review applied to a motion to dismiss under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

---

[12] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

**The Claim**

In Claimant's Official Form 410, Proof of Claim, she asserts an unsecured claim in the amount of $1,657.00. Claim at 1.[13] Claimant also asserts a secured claim of $20,000 and an unsecured portion of $2,421.00. *Id*. at 2. The basis of the Claim is listed as "Goods Sold." *Id*. at 1. In support of the Claim, she attaches a billing statement from Ditech, dated May 7, 2019. *Id*. at 3. The statement lists the principal balance of the loan as $1,657.03 and a past due amount of $231.97. *Id*.

**The Objection**

The Plan Administrator and Consumer Claims Trustee seek entry of an order disallowing and expunging the Claim as a "No Basis Consumer Creditor Claim." Objection ¶ 13. They contend that (i) there is no evidence to support the validity of the No Basis Consumer Creditor Claims, in the amount and priority asserted, or (ii) the No Basis Consumer Creditor Claims have already been paid or otherwise satisfied. *Id*. ¶ 13, Ex. A at 12.

**The Response[14]**

Claimant contends that the Purchase Contract provides that the purchase price for the manufactured home was $22,421.00, to be paid in 240 monthly payments. Response at 1. She states that the Purchase Contract shows, under the "Truth in Lending Act Disclosures" section of the contract, that the actual amount charged was $59,496.20. *Id*. She complains the amount charged was almost triple the amount of the purchase price and that she had to pay $35,894.20 in financing charges, which was more than the price of the manufactured home. In support, she includes a copy

---

[13] Page citations are to the PDF page numbers of the Claim.

[14] Claimant filed a second response; however, it consists of a duplicate the first response, and the remainder of the document are pages from the Eighteenth Omnibus Objection. *Response of Helen Thomas*, ECF No. 2155. Accordingly, all references to the Response are to ECF No. 1795.

of the first page of the Purchase Contract, *id.* at 2, a Simple Interest Loan repayment schedule dated July 22, 2013, *id.* at 3–7, and a Mortgage Interest Statement, *id.* at 9.

Claimant asserts that she was charged $25,894.20 in finance charges at 11.75% interest and that she made monthly payments for 253 months. *Id.* at 2. She attaches a copy of a credit report ("Credit Report") showing the 253 payments. *Id.* at 10. The report shows that she made 83% of her payments on time, indicating which months she did not make timely payments with an "X." *Id.* She highlights some of the months marked as late and contends that during those months, her loan was being modified. *Id.* at 1. She maintains that that these payments were not late, but being modified, and complains this has caused her credit score to drop. *Id.*

She states, in substance, that during her research she came across information about the Home Ownership and Equity Protection Act ("HOEPA"). *Id.* She requests the Court consider the amendments to the Truth in Lending Act "dealing with customer's rights" and HOEPA. *Id.* In support, she includes a copy of a document titled "Home Ownership and Equity Protection Act," on which she has handwritten "Debt.org." *Id.* at 8. The document provides information about HOEPA protection against predatory lending. *Id.*

She further alleges that Ditech committed fraudulent acts, including "[h]igh interest rate, changing number of payments scheduled, as well as overcharging on financing." *Id.* at 1. She requests reimbursement for 80% of her finance charge "as an act of overcharging and fraud." *Id.* She states that her Claim is set at $1,657.00, which is "just a slap in [her] face due to the fact that [Ditech] has [been] taking advantage of hard working people like [her]self." *Id.* She contends that paying more in finance charges than principal for twenty-one years is wrong and unlawful. *Id.*

**The Reply**

Due to Claimant's pro se status, the Consumer Claims Trustee liberally construes the Claim, as supplemented by the Response. Reply ¶ 19. She interprets the Claim as purporting to allege claims for violations of the Truth in Lending Act ("TILA"), breach of the Purchase Contract, fraud, relief under HOEPA, and violations of the Fair Credit Reporting Act ("FCRA"). *Id*. ¶ 20. She argues that even a generous reading of the Claim does not support any viable claim for relief. *Id*.

The Consumer Claims Trustee contends that Claimant cannot state a claim for violations of TILA because the disclosures called for by TILA are evident on the face of the Purchase Contract. *Id*. ¶¶ 25–27. She also says that TILA claims are barred by the statute of limitations. *Id*. ¶¶ 28–29. She argues that Claimant cannot state a breach of contract claim because Claimant has not shown that Ditech failed to perform under the Purchase Contract and cannot demonstrate damages. *Id*. ¶¶ 35–36.

The Consumer Claims Trustee maintains that Claimant cannot state a fraud claim because she has not identified a false misrepresentation by Ditech, let alone that such misrepresentation was knowing, intentional, or reckless or that she justifiably relied on it. *Id*. ¶¶ 40–41. She also contends that Claimant cannot meet the heightened pleading standard applicable to fraud claims. *Id*. ¶ 42–43.

The Consumer Claims Trustee also asserts that Claimant fails to allege facts showing that she qualifies for protection under HOEPA and any such claim would be time barred. Reply ¶¶ 46–49. Finally, she contends that Claimant cannot state claim for violation of the FCRA because she has not provided sufficient allegations of harm in support of the Claim. *Id*. ¶ 54.

## LEGAL PRINCIPLES

A claim properly filed under section 501 of the Bankruptcy Code is "deemed allowed" absent an objection. 11 U.S.C. § 502(a). Such claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). A court may only disallow a claim if a party in interest has objected, and upon notice and hearing, the court finds the claim falls under one of the exceptions found in section 502(b) of the Bankruptcy Code. 11 U.S.C. § 502(b); *In re Manhattan Jeep Chrysler Dodge, Inc.*, 602 B.R. 483, 491 (Bankr. S.D.N.Y. 2019) ("Section 502 of the Bankruptcy Code provides generally that a proof of claim should be allowed except to the extent it is objectionable on various grounds."). As relevant to the Objection, section 502(b)(1) provides that a claim may be disallowed to the extent it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re Residential Cap., LLC*, 513 B.R. 446, 458 (Bankr. S.D.N.Y. 2014) (citing *In re W.R. Grace & Co.,* 346 B.R. 672, 674 (Bankr. D. Del. 2006)).

The merits of the Claim are not at issue**.** A Sufficiency Hearing is a non-evidentiary hearing to address whether a Contested Claim "has failed to state a claim against the Debtors which can be allowed and should be dismissed pursuant to Bankruptcy Rule 7012." Claims Procedures Order ¶ 3(iv)(a); *see* Fed. R. Bankr. P. 7012(b) (quoting Fed. R. Civ. P. 12(b)) (applying the federal standard under Rule 12(b)(6) motion to dismiss standard to adversary proceedings). The function of a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Havens v. James*, 76 F.4th 103, 116–17 (2d Cir. 2023) (quoting *Festa v. Loc. 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 37 (2d

Cir. 1990)) (internal quotations omitted).[15] Rule 12(b)(6) "ensures that, consistent with Rule 8(a), a complaint includes 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Alharbi v. Miller*, 368 F. Supp. 3d 527, 560 (E.D.N.Y. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Accordingly, in applying the legal standards applicable to Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the Claim in light of the pleading standards under Rule 8(a).

Rule 8 calls for a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To satisfy this standard, the complaint must at a minimum 'disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)); *see Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) ("[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level.").

The Rule 12(b)(6) standard requires courts to accept all factual allegations as true and to draw all reasonable inferences in favor of the non-moving party. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Further, "a complaint must contain sufficient factual matter,

---

[15] "On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are 'integral' to the complaint." *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citing *Brass v. American Film Techs.*, 987 F.2d 142, 150 (2d Cir. 1993); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)). Because Sufficiency Hearings consider consumer claims, often by unrepresented claimants whose claims lack detail or do not attach pertinent supportive documentation, it has been the practice of this Court to consider the Consumer Claims Trustee's documentary submissions together with claims as if they were consolidated. The Court does so here.

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding what factual matter to accept as true, the Court is not required to "credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Where, as here, the [Claim] was filed *pro se,* it must be construed liberally to raise the strongest arguments it suggests. Nonetheless, [the] *pro se* [Claimant] must state a plausible claim for relief." *Walker v. Schult,* 717 F.3d 119, 124 (2d Cir. 2013) (internal citations, quotation marks, and brackets omitted); *see also Kimber v. GMAC Mortg., LLC (In re Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) ("Complaints drafted by *pro se* plaintiffs are to be construed liberally, but they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the plaintiff is complaining about and . . . whether there is a legal basis for recovery.'" (quoting *Iwachiw v. New York City Bd. of Elections,* 126 F. App'x 27, 29 (2d Cir. 2005) (summary order))).

## ANALYSIS

## Whether Claimant States a Claim for Relief Against Ditech

Claimant requests reimbursement for 80% of her finance charges as damages because those charges exceeded the purchase price under the Purchase Contract. Response at 1. She mentions TILA in connection with the disclosure section of the Purchase Contract. *Id*. She complains the 253 monthly payments she made exceeded the 240 provided under the Purchase Contract. *Id*. She requests the Court consider HOEPA and Ditech's alleged fraudulent conduct. *Id*. The Court concurs with the Consumer Claims Trustee and will interpret these allegations as purporting to assert claims for breach of contract and fraud, and for violations of TILA, relief under HOEPA, and violations of the FCRA.

### *Whether Claimant States a Claim for Breach of Contract*

To state a claim for breach of contract under Alabama law,[16] Claimant must allege: (1) the existence of a valid contract, (2) her own performance under the contract, (3) Ditech's nonperformance, and (4) damages. *Jones v. Alfa Mut. Ins. Co*., 875 So.2d 1189, 1195 (Ala. 2003) (citations omitted). As the party asserting a breach of contract claim, Claimant "must prove every element of that claim; the failure to prove any one element necessarily results in a judgment for the opposing party." *Ex Parte Steadman*, 812 So. 290, 295 (Ala. 2001).

The Purchase Contract is the governing contract. It calls for Claimant to make 240 monthly payments over the life of the loan. Purchase Contract at 1. The payments were due on the fifth day

---

[16] The Purchase Contract is governed by Alabama law, as Alabama is the jurisdiction in which the Property is located, and the Certificate of Title was filed. *See* Purchase Contract at 1, 6-7; Ala. Code § 7-1-301 (providing that the Alabama Uniform Commercial Code applies to transactions bearing an appropriate relation to the state); Ala. Code § 7-9A-109(a)(1) (providing that Article 9A of the Alabama Uniform Commercial Code governs transactions creating a security interest in personal property or fixtures); *Green Tree-AL LLC v. Dominion Res., L.L.C.,* 104 So. 3d 177, 180 (Ala. Civ. App. 2011) ("A manufactured home is unquestionably personal property at the time of its sale." (citing Ala. Code § 32–20–20(a))).

of each month. *Id*. Claimant contends that she made 253 payments to pay off the loan. Response at 1. She says Ditech violated the Purchase Contract by requiring her to make the additional thirteen payments. *Id*.

The pay history attached to the Response identifies the mortgage as an 11.75% simple interest loan, meaning that interest accrues on a daily basis at the annual rate of 11.75%. Response at 3–7. To pay off the loan in 240 payments, Claimant would have needed to submit each payment on the fifth day of each month throughout the twenty-year term of the loan. She did not do so. The pay history shows months in which her monthly payment was applied entirely to interest, with none applied to principal, because Claimant either missed payments or made late payments. *Id*.

For example, Claimant missed her June 2001 payment. *Id*. at 4. The next payment she made was on July 3, 2001, in the amount of $243.00. *Id*. The payment was fifty-six days late, and had been accruing daily interest in the amount of $6.94, for total overdue interest in the amount of $145.64. *Id*. This amount, added to the regular monthly payment of $243.00, totaled $388.64. *Id*. Therefore, the entirety of her $243.00 payment went to interest, and none was applied to principal reduction. *Id*. Claimant made two payments in August of 2001, but because of the accruing interest, the entirety of those payments was also applied to interest. *Id*. As such, no funds were applied to principal until October 2001. *Id*. This pattern repeated several times during the life of the loan, such that it took Claimant an additional thirteen months to pay the loan in full.

Claimant maintains that although the Credit Report shows late payments from October of 2018 through January of 2019, she did not miss payments because the loan was being modified. *Id*. at 1, 10. However, even if Claimant made timely payments from October of 2018 through January of 2019, Claimant does not allege that she made timely payments each month for the term of the Purchase Contract. The Credit Report states she made 83% of payments on time and shows

she failed to make timely payments in April of 2017, August of 2017 and May of 2018. *Id*. at 10. The payment history and amortization schedule indicate that Claimant failed to make timely payments on the fifth of each month. *Id*. at 3–7. Claimant has failed to state facts demonstrating that she performed under the Purchase Contract. Her pleadings do not show that Ditech failed to perform under the terms of the Purchase Contract. As a consequence, Claimant cannot demonstrate a breach of contract or damages for breach of contract. "The party asserting a breach-of-contract claim must prove every element of that claim; the failure to prove any one element necessarily results in a judgment for the opposing party." *Ex Parte Steadman*, 812 So. at 295.

Generally, damages for breach of contract are measured as the sum that would put the injured party in the position she would have been had the contract not been breached. *Id*. (quotations and citations omitted). Claimant requests damages in the amount of 80% of the $35,894.20 finance charge, or $28,691.36. Response at 1. The Purchase Contract does not provide such relief in the event of default and Claimant does not otherwise explain why she is entitled to such amount. Even had Claimant established Ditech's breach, she has failed to state sufficient facts demonstrating that such breach caused her to suffer $28,691.36 in damages. Claimant has failed to state a claim for breach of the Purchase Contract.

### *Whether Claimant States a Claim for Fraud*

To state a claim for fraud under Alabama law, Claimant must allege (1) a false representation concerning an existing material fact, (2) Ditech's awareness of the falsity of the representation (or reckless regard for the veracity of the representation), (3) justifiable reliance, and (4) damage resulting from that reliance. Ala. Code § 1975; *Ex Parte Lumpkin and Ina Black Realty*, 702 So.2d 462, 465–466 (Ala. 1997) (citations omitted).

Claimant states Ditech's "fraudulent acts" are as follows: "High interest rate, changing of number of payment[s] scheduled, as well as overcharging on financing." Response at 1. She requests damages in the amount of 80% of her financing charge as "money to be reimbursed back to me as an act of overcharging and fraud." *Id*. Claimant fails to allege sufficient facts demonstrating that Ditech made a false representation concerning an existing material fact. She does not state that the high interest rate, number of payments scheduled, or charges incurred were false statements. Nor does she describe such conduct with particularity.

Moreover, Claimant does not allege that Ditech knowingly or recklessly made a false representation, or that she relied on it to her detriment, and that such reliance caused damages in the amount she claims. Rather, it appears that Claimant misunderstood the disclosures regarding finance charges on the face of the Purchase Contract. However, that misunderstanding does not give rise to a fraud claim.

In pleading fraud, Claimant must meet the heightened pleading standards set forth in Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)").[17] It provides that that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). That rule applies when the claim sounds in fraud. *Rombach v. Chang*, 355 F.3d 164, 167 (2d Cir. 2004). Rule 9(b) applies to state law claims, such as fraud, brought in a federal court. *See Fisher v. APP Pharms., LLC*, No. 08-CV-11047, 2011 WL 13266819, at *6 n.8 (S.D.N.Y. Feb 28, 2011). Pleading fraud with particularity includes alleging facts sufficient to support "the who, what, when, where, and how: the first paragraph of any newspaper story." *Silvester v. Selene Fin., LP*, No. 18-CV-02425, 2021 WL 861080, at *2

---

[17] Rule 9 is incorporated herein pursuant to Bankruptcy Rule 7009.

(S.D.N.Y. Mar. 8, 2021) (quoting *Backus v. U3 Advisors, Inc.*, No. 16-CV-8990, 2017 WL 3600430, at *9 (S.D.N.Y. Aug. 18, 2017)).

When pleading scienter, a plaintiff "must allege facts that give rise to a strong inference of fraudulent intent." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004) (emphasis omitted) (quoting *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999)). A plaintiff can meet that standard by "(1) alleging facts to show that defendant[] had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *PetEdge, Inc. v. Garg.*, 234 F. Supp. 3d 477, 491 (S.D.N.Y. 2017) (alteration in original) (internal citation omitted).

By simply using the term fraud and generally implying fraudulent intent, Claimant fails to meet these heightened pleading standards. Her conclusions about the unfavorable terms of her loan do not give rise to a valid claim for fraud.

### *Whether Claimant States a Claim for Violation of TILA*

TILA was enacted with "the broad purpose of promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers." *Parrish v. Blazer Fin. Servs., Inc.*, 868 So.2d 406, 410 (Ala. 2003) (citing *Ford Motor Credit Co. v. Millhollin*, 444 U.S. 555, 559 (1980)). "TILA is a disclosure statute whose fundamental purpose is to provide information to facilitate comparative credit shopping and thereby promote the informed use of credit." *Tr. Loan & Discount Co. v. Carswell*, 435 So. 2d 114, 117 (Ala. Civ. App. 1983) (citing *Brown v. Marquette Sav. & Loan Ass'n*, 686 F.2d 608, 612 (7th Cir. 1982)). TILA is codified at 15 U.S.C. § 1601, *et seq.,* and its implementing regulations are set forth in Regulation Z, 12 C.F.R. pt. 1026. These

regulations are accompanied by the Bureau of Consumer Financial Protection's official interpretations at 12 C.F.R. Pt. 1026, Supp. I, Pts. 1–5.[18]

TILA applies to credit transactions involving loans of more than $50,000[19] where the creditor takes a security interest in the real or personal property intended for use as the borrower's principal dwelling. 15 U.S.C. § 1603(3).[20] Under TILA, most closed-end credit disclosures and other obligations are required before consummation. *See* 12 C.F.R. § 1026.17(b). Lenders must disclose the amount financed, *id*. § 1026.18(b), the annual interest rate, *id*. § 1026.18(e), and the interest rate at consummation, *id*. § 1026.18(s). *See also Bragg v. Bill Heard Chevrolet, Inc*., 374 F.3d 1060, 1065 (11th Cir. 2004) (explaining that Regulation Z requires lenders to "disclose the identity of the creditor, the amount being financed, the annual percentage rate, the total sale price, and the total amount of payment.").

The amount financed is the principal loan amount less any downpayment and prepaid finance charges, plus any additional amounts financed. 12 C.F.R. § 1026.18(b). Prepaid finance

---

[18] The Official Interpretations can also be found at https://www.consumerfinance.gov/rules-policy/regulations/1026/interp-0/.

[19] Effective December 31, 2011, the qualifying amount is adjusted annually for inflation. 15 U.S.C. §1603(3) n.1. Effective January 1, 2019, the amount is $57,200. 83 Fed. Reg. 59,276 (Nov. 23, 2018).

[20] The implementing regulations further impose limitations on mortgages that are subject to the requirements of 12 C.F.R. § 1026.32 and prohibit certain acts or practices in connection with credit secured by a dwelling in 12 C.F.R. §1026.36 and credit secured by a consumer's principal dwelling in 12 C.F.R. §1026.35.

> Subpart E contains special rules for mortgage transactions. Section 1026.32 requires certain disclosures and provides limitations for closed-end credit transactions and open-end credit plans that have rates or fees above specified amounts or certain prepayment penalties. Section 1026.33 requires special disclosures, including the total annual loan cost rate, for reverse mortgage transactions. Section 1026.34 prohibits specific acts and practices in connection with high-cost mortgages, as defined in §1026.32(a). Section 1026.35 prohibits specific acts and practices in connection with closed-end higher-priced mortgage loans, as defined in §1026.35(a). Section 1026.36 prohibits specific acts and practices in connection with an extension of credit secured by a dwelling. Sections 1026.37 and 1026.38 set forth special disclosure requirements for certain closed-end transactions secured by real property or a cooperative unit, as required by § 1026.19(e) and (f).

12 C.F.R. § 1026.1(d)(5).

charges must be itemized separately and are defined as the cost of consumer credit as a dollar amount and include charges imposed directly or indirectly by the creditor as a condition of the extension of credit. *Id*. §§ 1026.18(c)(iv), 1026.40. Examples of finance charges include, without limitation, "service, transaction, activity and carrying charges" as well as "points, loan fees, assumption fees . . . and similar charges." *Id*. §1026.40(b).

Claimant alleges that she paid almost triple the price of her manufactured home. Response at 1. She states that the TILA disclosures on the Purchase Contract show the amount charged for the manufactured home is $59,496.20, but that she was charged $35,894.20 in finance charges at 11.75% interest. *Id*.

Each of the required disclosures is evident on the face of the Purchase Contract. The Purchase Contract discloses "[t]he amount of credit provided to me or on my behalf," or the amount financed, as $22,421.00. Purchase Contract at 1. It shows an Annual Percentage Rate of 11.75%. *Id*. The Purchase Contract identifies the finance charge as "[t]he dollar amount the credit will cost me," in the amount of $35,894.20. *Id*. The sum of these two figures is $58,315.20, which is identified as "[t]he amount I will have paid after I have made all payments as scheduled." *Id*. Additionally, Claimant's downpayment is added into the "Total Sale Price" of $59,496.00, which is identified as "[t]he total cost of my purchase on credit, including my down payment of $1,181." *Id*. No other finance charges are included in the Purchase Contract.

Moreover, the initial principal balance shown on the payment history schedule attached to the Response is consistent with the disclosures provided in the Purchase Contract. *See* Response at 3–7. As all of the required disclosures under TILA were provided, Claimant has failed to state a plausible claim for a TILA violation.

Moreover, from the face of the Claim, it is clear that any TILA claim is time-barred.[21] The

loan originated in 1998. The statute of limitations on TILA claims is one year. 15 U.S.C. § 1640(e);

12 C.F.R. § 226.23; *In re Cmty. Bank of Northern Virginia,* 418 F.3d 277, 305 (3d Cir. 2005). "A

violation occurs when a 'consumer becomes contractually obligated on a credit transaction.'"

*McMaster v. CIT Group/Consumer Fin., Inc*., No. CIV.A. 04-339, 2006 WL 1314379, at *4 (E.D.

Pa. May 11, 2006) (quoting 12 C.F.R. § 226.2(13)). The loan originated in 1998, and the statute

of limitations lapsed in 1999. Claimant filed the Claim in 2019. Any TILA claim is barred by the

statute of limitations.

### *Whether Claimant is Entitled to Relief Under HOEPA*

The HOEPA was a 1994 amendment to TILA which applied specifically to high-interest

rate mortgages and mandated additional, conspicuous disclosures regarding mortgage terms before

consummation of the transaction. 15 U.S.C. §§ 1602, 1639; *see also Godfrey v. Nationwide Vinyl

Siding & Home Improvement, LLC*, 912 F. Supp. 2d 1320, 1327–28 (S.D. Ala. 2012) ("TILA, as

amended by HOEPA, requires lenders to make certain additional disclosures to borrowers in 'high-

cost' or 'high-rate' mortgage loan transactions." (citations omitted)).

To qualify for protection under HOEPA, one of two factors must be established: (1) the

annual percentage rate of the loan at consummation must exceed by more than 10% the applicable

---

[21] Bar by a statute of limitation is typically an affirmative defense, which the defendant must plead and prove. *See John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 133 (2008); Fed. R. Civ. P. 8(c). A defendant does not render a complaint defective by pleading an affirmative defense. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980). Accordingly, the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense. *See Ellul v. Congregation of Christian Bros.,* 774 F.3d 791, 798 n.12 (2d Cir. 2014) ("Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.,* 547 F.3d 406, 425 (2d Cir. 2008))); *accord Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter." (citations omitted)).

yield on treasury securities, or (2) the total points and fees payable by the consumer at or before

closing must be greater than 8% of the total loan amount, or $400.00. 15 U.S.C. §§ 1602(a)(aa)(1)

(1994) (current version at 15 U.S.C. § 1602(bb)); s*ee also Howard v. Bayrock Mortg. Corp.*, No.

CIV.A. 09-0820, 2010 WL 4628120, at *2 (S.D. Ala. Nov. 4, 2010) ("HOEPA applies in this case

only if 'the total points and fees payable by the consumer at or before closing will exceed . . . 8

percent of the total loan amount . . . ." (quoting 15 U.S.C. § 1602(aa)(1)(B))). "[HOEPA] defines

'total points and fees' as including, in relevant part, 'all items included in the finance charge,

except interest or the time-price differential' and 'all compensation paid to mortgage brokers.'"

*Godfrey*, 912 F. Supp. 2d at 1328 (quoting 15 U.S.C. § 1602(bb)(4)(A)–(B)).

    Claimant has not alleged that Ditech violated any of the HOEPA disclosure requirements.

Moreover, Claimant has failed to state a claim for relief under HOEPA, as she does not allege facts

demonstrating that the threshold for HOEPA was met. *See Marks v. Chicoine*, No. C 06-06806,

2007 WL 160992 at *8 (N.D. Cal. Jan. 18, 2007) (court dismissed claim for violation of HOEPA

where plaintiff failed to allege facts that would support a conclusion that HOEPA applied to the

loan at issue); *see also Justice v. Countrywide Home Loans, Inc*., No. 3:05-CV-008, 2006 WL

141746 at *2 (E.D. Tenn. Jan. 18, 2006) (where complaint alleged that excessive fees were charged

in violation of HOEPA but failed to specify such fees, dismissal was appropriate, since "the bare

incantation of statutory terms, without corresponding allegations to support recovery, does not

state a claim."). Finally, from the face of the Purchase Contract it is clear that HOEPA does not

apply. When Claimant entered into the Purchase Contract in 1998, the rate for 20-year Constant

Maturity Treasury Securities was above 5%.[22] As a result, HOEPA would apply if the interest on

---

[22]    Federal    Reserve    Board,    Selected    Interest    Rates    (December    21,    1998),
https://www.federalreserve.gov/releases/h15/19981221/.

the loan exceeded 10% more than 5%, or 15%. However, the interest rate under the Purchase Contract was 11.75%. Accordingly, Claimant cannot allege facts demonstrating that HOEPA applied to the loan.

Moreover, from the face of the Claim, it is clear that any HOEPA claim is time-barred.[23] The statute of limitations on HOEPA claims is one year. 15 U.S.C. § 1640(e); *see also Est. of Davis v. Wells Fargo Bank*, 633 F.3d 529, 537 (7th Cir. 2011) (one year statute of limitations for damages and three-year statute of limitations for rescission under HOEPA). The Purchase Contract was originated on August 25, 1998, and Claimant did not assert a HOEPA violation until filing her Claim on May 31, 2019. Accordingly, Claimant's action for damages for violations of HOEPA are barred by the statute of limitations.

### Whether Claimant States a Claim Under the FCRA

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 52 (2007). The FCRA governs the accuracy of credit reporting information on consumers. *See* 15 U.S.C. § 1681; *see also Milgram v. Chase Bank USA, N.A.*, 72 F.4th 1212, 1217 (11th Cir. 2023) (per curiam) ("Congress enacted the [FCRA] to protect consumers from unfair reporting methods while also ensuring that the credit system would retain the accuracy required by the banking system to efficiently allocate credit.").

Under section 1681s-2(a), information furnishers must refrain from knowingly reporting inaccurate information, *see* 15 U.S.C. § 1681s-2(a)(1), and must correct any information they later discover to be inaccurate, *see id.* § 1681s-2(a)(2). Accordingly, "[t]he FCRA imposes two duties

---

[23] *See supra* note 19.

on furnishers. First, 'furnishers have a duty not to furnish information about a consumer to a reporting agency if the furnisher "knows or has reasonable cause to believe" that the information is inaccurate.' Second, furnishers must take certain actions once notified that a consumer disputes the accuracy or completeness of his or her furnished information." *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1366 (11th Cir. 2024) (internal citations omitted).

The FCRA affords consumers the right to dispute any information reported to a credit reporting agency ("CRA"). *See* 15 U.S.C. § 1681g(c)(1)(B)(iii). A consumer may bring a civil cause of action against any person who willfully or negligently fails to comply with any requirement imposed under FCRA and, as appropriate, recover actual or statutory damages, punitive damages, costs, and attorneys' fees. *See id.* §§ 1681n (civil liability for willful noncompliance), 1681o (civil liability for negligent noncompliance); *see also Younger v. Experian Info. Sols., Inc.*, No. 2:15-CV-00952, 2017 WL 5465527, at * 5 (N.D. Ala. Sept. 22, 2017) ("The FCRA creates a private right of action against [CRAs] for the negligent, *see* 15 U.S.C. § 1681o, or willful, *see* 15 U.S.C. § 1681n, violation of any duty imposed under the statute." (quoting *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir.), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015)).

However, section 1681s-2(d) specifically limits enforcement of section 1681s-2(a) exclusively to federal agencies and officials and select state officials. *See* 15 U.S.C. § 1681s-2(d). Accordingly, "the FCRA does not provide a private cause of action for violations of Section 1681s-2(a)." *Sprague v. Salisbury Bank and Tr. Co.*, 969 F.3d 95, 99 (2d Cir. 2020) (citing § 1682s-2(d)); *accord Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) ("[T]he statute plainly restricts enforcement of [§ 1681s-2(a)] to federal and state authorities."); *Felts v. Wells Fargo*

*Bank, N.A.*, 893 F.3d 1305, 1312 (11th Cir. 2018) ("Consumers have no private right of action against furnishers for reporting inaccurate information to [CRAs] regarding consumer accounts.").

The only provision of the FCRA that is actionable against a furnisher, such as Ditech, arises when the furnisher fails to conduct a reasonable investigation in response to a dispute communicated to it by a CRA. *See* 15 U.S.C. § 1681s-2(b). By itself, a dispute sent directly to the furnisher does not trigger any duties under section 1681s-2(b). *See Holden*, 98 F.4th at 1367; *Felts*, 893 F.3d at 1313. Accordingly, to succeed on an FCRA claim, Claimant must demonstrate the Ditech provided inaccurate or incomplete information to a CRA and that [Ditech's] investigation of such was unreasonable. *Holden*, 98 F.4th at 1367 (quotations and citations omitted).

Claimant fails to allege any facts in support of her request for relief under the FCRA. Claimant alleges that Ditech reported late payments to credit bureaus, causing damage to her credit score. Response at 1. She claims that the months showing on the credit report as delinquent occurred during the process of a loan modification but does not explain why it would have led to payments being late or insufficient. *Id*. Moreover, she does not allege Ditech reported inaccurate information to a CRA or that she disputed any inaccurate reporting with a CRA. As such, Claimant has failed to state a claim under the FCRA. *Holden*, 98 F.4th at 1367 ("Because [plaintiffs] cannot identify inaccurate or incomplete information that [defendant] provided to the consumer reporting agencies, they cannot prevail.").

## **CONCLUSION**

For the foregoing reasons, the Court sustains the Objection and disallows the Claim.

IT IS SO ORDERED.


Dated:  February 6, 2025
         New York, New York

                                        /s/ *James L. Garrity, Jr.*
                                        Honorable James L. Garrity, Jr.
                                        United States Bankruptcy Judge