UNITED STATES BANKRUPTCY COURT                    NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
In re:                                             :
                                                   :   Case No. 19-10412 (JLG)
                                                   :
Ditech Holding Corporation, *et al.*,              :   Chapter 11
                                                   :
                                                   :   (Jointly Administered)
                                   Debtors.[1]     :
-------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER
## SUSTAINING THE TWENTY-EIGHTH OMNIBUS OBJECTION
## WITH RESPECT TO THE PROOF OF CLAIM FILED BY LORETTA CRONIN

**A P P E A R A N C E S :**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:     Richard Levin


LORETTA CRONIN
*Appearing Pro Se*[2]
92 Wedgewood Avenue
Woodbridge, New Jersey 07095

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

[2] Ms. Cronin is acting pro se herein and, in that capacity, filed the Claim, Responses to the Objection, and Sur-Reply. As set forth below, Ms. Cronin did not appear at the Sufficiency Hearing. She did not request the Court adjourn the hearing or otherwise seek an accommodation from the Court with respect to the hearing.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[3]

Loretta Cronin ("Claimant") is acting pro se herein. She filed Proof of Claim No. 2494 (the "Claim") as an administrative expense claim in the amount of $25,000.00 against Ditech Holding Corp. (f/k/a Walter Investment Management Corp.) ("Ditech"). The Plan Administrator filed his Twenty-Eighth Omnibus Objection (the "Objection")[4] seeking to disallow proofs of claim, including the Claim, as "No Basis Consumer Admin Claims."

Claimant filed a response to the Objection (the "First Response").[5] Claimant subsequently submitted her Second Response,[6] Third Response,[7] and Fourth Response[8] (collectively with the First Response, the "Responses"). The Consumer Claims Trustee filed a reply in support of the Objection (the "Reply").[9] In substance, the Consumer Claims Trustee asks the Court to disallow the Claim because it fails to state a claim for relief against Ditech and because it is time barred. Claimant filed a Sur-Reply in response to the Reply (the "Sur-Reply").[10]

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[4] *Twenty-Eighth Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims)*, ECF No. 1760.

[5] *Response of Loretta Cronin*, ECF No. 1804.

[6] *Letter Filed by Loretta Cronin*, ECF No. 4276.

[7] *Letter Filed by Loretta Cronin*, ECF No. 5147.

[8] *Letter Filed by Loretta Cronin*, ECF No. 5288.

[9] *Reply of the Consumer Claims Trustee in Support of the Twenty-Eighth Omnibus Objection (No Basis Consumer Creditor Admin Claims) Solely with Respect to the Claim of Loretta Cronin (Claim 2494)*, ECF No. 5301.

[10] *Sur-Reply of Loretta Cronin*, ECF No. 5322.

Pursuant to the Claims Procedures Order,[11] Claimant's filed Response adjourned the Objection to provide time for the Plan Administrator to schedule a Sufficiency Hearing on the Claim. At a Sufficiency Hearing, the Court employs the legal standard of review applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Claims Procedures Order ¶ 3(iv)(a). The Court conducted the Sufficiency Hearing. The Consumer Claims Trustee appeared through counsel. Claimant did not appear at the hearing. The Court did not hear argument on the Objection and is considering this matter based upon the papers submitted.

The Court has reviewed the Claim, Objection, Responses, Reply, and Sur-Reply, including all documents submitted in support thereof, and has considered the arguments made therein by the parties in support of their positions. In doing so, and in accordance with Rule 12(b)(6), the Court has accepted Claimant's well-pleaded factual allegations as true, and has drawn all reasonable inferences in Claimant's favor. In light of Claimant's pro se status, the Court has liberally construed the Claim, Responses, and Sur-Reply to raise the strongest arguments that they suggest.

As explained below, the Claim, as supplemented by the Responses and Sur-Reply, fails to state a claim to relief against Ditech. Accordingly, on that basis, the Court sustains the Objection and disallows the Claim.[12]

## **JURISDICTION**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States

---

[11] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632 (the "Claims Procedures Order").

[12] The Court does not address the Consumer Claims Trustee's additional argument that the Claim is time-barred.

District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

### The Loans

On or around August 20, 2004, Claimant and her spouse, Joseph Cronin, executed a promissory note in the amount of $199,000.00 (the "First Note") and a note in the amount of $20,000.00 (the "Second Note"), both in favor of GMAC Mortgage Corporation DBA ditech.com ("GMAC"). The First Note and Second Note were each secured by a mortgage (the "First Mortgage" and "Second Mortgage," respectively)[13] on the real property located at 92 Wedgewood Avenue, Woodbridge, New Jersey 07095 (the "Property"). On September 10, 2004, the First Mortgage and Second Mortgage (together, the "Loans") were recorded in Middlesex County, New Jersey.

On August 6, 2014, Mortgage Electronic Registration Systems, Inc., as nominee for GMAC assigned the First Mortgage to Green Tree Servicing LLC ("Green Tree") (the "First Assignment").[14] On January 17, 2020, Ditech Financial LLC (f/k/a Green Tree) assigned the First Mortgage to New Residential Mortgage LLC (the "Second Assignment").[15]

---

[13] The First Mortgage and Second Mortgage are annexed to the Reply as Exhibit A and Exhibit B, respectively. The Court takes judicial notice of the mortgages, and the other documents annexed to the Reply as they are matters of public record and takes them into consideration because they are integral to the Claim. *Bellin v. Zucker*, 6 F.4th 463, 472 (2d Cir. 2021) (stating that when ruling on a Rule 12(b)(6) motion to dismiss, courts must consider the entire complaint, including documents incorporated therein by reference and other matters of which a court may take judicial notice); *Cohen v. Cap. One Funding, LLC*, 489 F. Supp. 3d 33, 46 (E.D.N.Y. 2020) ("Facts drawn from integral documents, even those not expressly incorporated by reference, are fair game in the context of a Rule 12(b)(6) motion."); *Cardoso v. Wells Fargo Bank, N.A.*, No. 21-8189, 2022 WL 4368109, at *1 n.1 (S.D.N.Y. Sept. 20, 2022) (determining a mortgage loan document is integral where the claim concerned allegations of misconduct in relation to an attempted modification and foreclosure of a mortgage and therefore considering it on a Rule 12(b)(6) motion to dismiss).

[14] The First Assignment is annexed to the Reply as Exhibit C.

[15] The Second Assignment is annexed to the Reply as Exhibit D.

**The Chapter 11 Cases**

On February 11, 2019, Ditech and certain of its affiliates, including Green Tree (collectively, the "Debtors"), filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession and control of their business and assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[16] The Court extended the General Bar Date for consumer borrowers to June 3, 2019.[17] On September 26, 2019, the Debtors confirmed their Third Amended Plan, which went into effect on September 30, 2019.[18] Under the Confirmation Order, the deadline for filing Administrative Expense Claims was November 11, 2019 (the "Administrative Claim Bar Date").

The Plan Administrator and Consumer Claims Trustee are fiduciaries under the plan. *See* Third Amended Plan, art. I, §§ 1.130, 1.184, 1.186. The Plan Administrator is charged with winding down, dissolving and liquidating the Wind Down Estates and is provided exclusive authority to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims. *Id.* art. VII, § 7.1. The Consumer Claims Trustee is responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of

---

[16] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[17] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[18] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

Allowed Consumer Creditor Claims. *See id.* art. I, § 1.41. As such, she is exclusively authorized to object to Consumer Creditor Claims. *Id.* art. VII, § 7.1.

**The Claims Procedures Order**

Under the Claims Procedures Order, a properly filed and served response to a claim objection, omnibus or otherwise, gives rise to a "Contested Claim." *See* Claims Procedures Order ¶ 3(iv). A Contested Claim is resolved at a hearing, which can be scheduled as either a "Merits Hearing," an evidentiary hearing on the merits of the Contested Claim, or a "Sufficiency Hearing," a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. *Id.* ¶ 3(iv)(a)–(b). At a Sufficiency Hearing, the Court applies the legal standard of review applied to a motion to dismiss under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

**The Claim**

Claimant did not submit an Official Form 410, Proof of Claim. Instead, she submitted a three-page handwritten letter, executed October 9, 2019, and addressed to "EPIQ Corporate." Claim at 1.[19] She states she is filing administrative expense claims against Ditech in the amount of $25,000.00. *Id.* at 1, 3. As the basis for the Claim, she asserts Ditech should have to pay her for "ruining [her] credit, the money lost applying for loans and the interest that [she] would have saved over the years. Thousands of dollars." *Id.* at 2.

Claimant explains that Ditech "has [her] listed as being behind one payment on [her] (2) two loans." Claim at 1. She claims that she sent copies of bank statements to Ditech to show she didn't miss any payments, but "they still have me owing $5,641.44 as a missed payment." *Id.* at 2. Claimant says that according to Ditech, she owes over $5,641.44 for a "[l]ate payment" on the

---

[19] Page citations are to the PDF page numbers of the Claim.

6

First Mortgage and for "optional insurance" on both the First Mortgage and the Second Mortgage. *Id*. She claims that she did not sign up for optional insurance for the Second Mortgage. *Id*. She alleges that Ditech "kept changing the month" in which she missed a payment, so she sent Ditech copies of bank statements for "the whole year," at which point Ditech stopped "telling her the month." *Id*.

Claimant says she has "written to [the] Banking Dept of Florida, Banking Dept New Jersey, Ditech itself, Congressmen for this district [and] even President Trump to no avail." Claim at 1. She claims she applied to refinance the Loans, for which she paid a total of $900.00 to Quicken Loans, but was turned down because "Ditech said I was behind." *Id*. She alleges this has cost her "thousands of dollars in high interest rates." *Id*. Claimant asks for $25,000 "[f]or all the work and cost of loans [plus] cheaper loan payments for about 6 year[s] and ruined credit." Claim at 3.

Claimant annexes 124 pages of documents in support of the Claim, including copies of:

(i)     Monthly Information Statements from Green Tree.

(ii)    Annual Escrow Account Disclosure Statements.

(iii)   Bank account statements from TD Bank (the "TD Bank Statements").

(iv)    Correspondence with Green Tree, Ditech, and congressmen.

(v)     Payment history records for the Loans ("Payment History").

She also provides a copy of a Deposit Agreement between her and Quicken Loans, dated February 9, 2015. Claim at 5–6. The agreement provides that, as part of the loan application process, Quicken Loans requires a good faith deposit of $500.00, which may or may not be refundable depending on the status of Claimant's loan. *Id*. at 5. However, it states that if Claimant's application "is denied or withdrawn, for any reason, [Quicken Loans] will refund [her] deposit minus the actual cost of [her] appraisal and credit report." *Id*. The Deposit Agreement provided an

estimated payoff amount of $165,000.00 and proposed monthly payment amount of $1,547.67, calculated using an interest rate of 4.250% and a term of thirty years. *Id*. at 6.

Claimant includes a copy of a letter addressed to Congressman Leonard Lance dated July 21, 2015. Claim at 117–18. In it, she explains that Ditech has insisted she is a month behind on her payments and keeps tacking on late charges. *Id*. at 118. She claims Ditech calls her every day to ask what she plans to do with the house. *Id*. She also includes a copy of a letter she received from Congressman Frank Pallone Jr., dated October 6, 2015. *Id.* at 34. The Congressman advises that he sent an inquiry to Ditech on Claimant's behalf and he has received a reply from Ditech. *Id*. Claimant includes a copy of a letter from Ditech addressed to the Congressman dated September 28, 2015 (the "Resolution Letter"). *Id*. at 121. The Court understands this is the letter the Congressman refers to.

In the Resolution Letter, Ditech represents that, pursuant to the Congressman's request, they have researched Claimant's claim regarding a missing payment in November of 2012. *Id*. Ditech refers to two accounts, which the Court understands are accounts for the First Mortgage and Second Mortgage. Ditech explains that a payment toward the First Mortgage was received on August 31, 2012 (the "August 31 Payment"), in satisfaction of the payment due August 1, 2012. *Id*. Ditech states their records show that another payment was not received until October 1, 2012, which was applied to the payment due under the Mortgage on September 1, 2012. *Id*. Ditech states that after that date, Claimant's account has maintained a rolling delinquency. *Id*.

The Resolution Letter further states that Claimant's bank statements from 2012 show a payment was debited from her account on September 4, 2012 (the "September 4 Debit"). *Id*. Ditech is unable to determine if the August 31 Payment was debited from Claimant's bank account on September 4, 2012, or if the September 4 Debit was for a separate payment. *Id*. They request

additional bank statements from Claimant in order to confirm the August 31 Payment and the September 4 Debit were two separate payments. *Id*.

Ditech states that their records do not show missing payments on account of the Second Mortgage, and that such account has been paid according to the contract. *Id*. However, Ditech claims that, as of the date of the Resolution Letter, the Second Mortgage was past due for the September payment, and the First Mortgage was past due for the August and September payments. *Id*.

## The Objection

The Plan Administrator seeks entry of an order disallowing and expunging the Claim as a "No Basis Consumer Credit Admin Claim." Objection ¶ 13. The Plan Administrator contends that (i) there is no evidence to support the validity of the No Basis Consumer Creditor Claims, in the amount and priority asserted, or (ii) the No Basis Consumer Creditor Claims have already been paid or otherwise satisfied. *Id*. ¶ 13, Ex. A at 12.

## Motion To Estimate and Reclassify Claim

In 2023, while the Objection was pending, the Court granted the Plan Administrator's and Consumer Claims Trustee's jointly filed Estimation and Classification Motion.[20] *See* Estimation and Classification Order.[21] As relevant, the order (i) reclassifies the Claim as an unsecured claim that is not an administrative expense claim, and estimates it at $25,000 for the purpose of setting a distribution reserve; and (ii) establishes the Claim as a Class 6 Consumer Creditor Claim that is

---

[20] *Consumer Claims Trustee and Plan Administrator's Joint Omnibus Motion to Reclassify Certain Proofs of Claim and Consumer Claims Trustee's Motion to Estimate for Purposes of Distribution Reserves* (the "Estimation and Classification Motion"), ECF No. 4662.

[21] *Order Granting Consumer Claims Trustee and Plan Administrator's Joint Omnibus Motion to Reclassify Certain Proofs of Claim and Consumer Claims Trustee's Motion to Estimate for Purposes of Distribution Reserves* (the "Estimation and Classification Order"), ECF No. 4732.

not a 363(o) unsecured Consumer Creditor Claim, as defined by the Third Amended Plan. *See id.* at 5. The order is clear that "[it] has no res judicata, estoppel, or other effect on the validity, allowance, or disallowance of any claim" and it "expressly reserve[s]" the Consumer Claims Trustee's "rights to object [to any claim] on any basis." *Id.* It also provides that "pending objections by . . . the Plan Administrator to the claims [at issue in the motion] are not impacted or altered by the Order." *Id.*

The Plan vests the Plan Administrator with the exclusive authority to object to Administrative Expense Claims. In the Objection, the Plan Administrator challenges both the validity and priority status of the Claim. Objection ¶ 13. The Estimation and Classification Order moots the objection to the status of the Claim, because it fixes the Claim as an unsecured Class 6 Consumer Creditor Claim not entitled to administrative priority status. However, although the Plan Administrator's objection to the merits of the Claim is pending, with the reclassification of the Claim, the Plan Administrator has lost its interest in the Objection. The Plan vests the Consumer Claims Trustee with the exclusive authority to reconcile and resolve objections to Consumer Creditor Claims. Pursuant to the Estimation and Classification Order, the Consumer Claims Trustee is permitted to pursue the Objection.

**The Responses**

The Responses consist of four handwritten letters executed by Claimant. The First Response, addressed to Epiq Corporation and Ditech Holding Corp., was submitted timely. First Response at 1. The remaining Responses are addressed to the Court and were submitted after the deadline to respond to the Objection.

***The First Response***

Claimant states that she made multiple attempts to clear up the "so called late payment." First Response at 1. To that end, she wrote letters to the "Dept of Banking Florida, Dept of Banking N.J.," and New Jersey state senators and legislators. *Id.*

She claims she has spent eight years of her life working to clear up the late payment issue, but despite all her time, effort, and "ruined credit," she "can't get a refinance." *Id.* She states the cost to apply for refinancing loans was "$500 here, $600 there" and that she sent Ditech that amount, "which did nothing at all they just kept taking." *Id.* She claims her ruined credit is "because of [D]itech" and that "[she] deserve[s] better than this." *Id.* Claimant requests the Claim be reconsidered and asks what she can do next. *Id*. She then asks "[i]f I could have gotten refinance at the low 2-3% [interest rate] instead of pay[ing] 10% + 6.75% on [the Loans] how much money would I have saved? Also why doesn't Ditech show up on Credit reports?" *Id.*

***The Second Response***

In the Second Response, Claimant requests notice of the outcome of the Objection. Second Response at 1.

***The Third Response***

In the Third Response, Claimant says she was harassed, cheated, and overcharged by Green Tree and Ditech. Third Response at 1. She alleges they ruined her credit, so she joined a class action suit. *Id.* She explains she is widowed, unemployed, and doesn't have her own home. *Id.* She says she has tried "to get help to no avail" and asks the Court to "steer[]" her in the right direction. *Id.*

11

*The Fourth Response*

In the Fourth Response, Claimant complains that "Ditech stole money from me with over charging and total mishandling of my mortgage." Fourth Response at 1.

## The Reply

The Consumer Claims Trustee explains that, given Claimant's pro se status, she liberally construes the Claim, as supplemented by the Responses. Reply ¶ 27. She interprets the Claim as purporting to allege claims for breach of the First Mortgage and violations of the Fair Credit Reporting Act ("FCRA"). *Id*. She argues that even a generous reading of the Claim does not support any viable claim for relief. *Id*.

The Consumer Claims Trustee contends that Claimant has failed to state a claim for breach of contract because any damages that Claimant has suffered arise out of Claimant's failure to make timely payments under the First Mortgage, *id*. ¶ 33, and any such claim is time-barred by New Jersey's four-year statute of limitations, *id*. ¶ 34. She asserts that Claimant has failed to state a claim under the FCRA because Claimant has not alleged that Ditech reported inaccurate information to a credit bureau, or that she disputed any negative credit reporting with Ditech or a credit reporting agency. *Id*. ¶ 42. As such, she fails to allege that any negative reporting by Ditech to the credit bureaus was inaccurate, let alone that she disputed the reporting and Ditech failed to correct it. *Id*. The Consumer Claims Trustee maintains that the documents provided by Claimant show that Claimant was delinquent on the mortgages and, therefore, her FCRA claim fails. *Id*. ¶ 43.[22]

---

[22] The Consumer Claims Trustee contends that, even if Claimant could state a claim for relief in support of the Claim, the Claim is time-barred, as a late-filed Consumer Creditor Claim. Reply ¶¶ 44–51. The Court need not, and does not, address this argument.

Finally, the Consumer Claims Trustee asserts that Claimant does not sufficiently explain her claims regarding the optional insurance placed on the Second Mortgage, other than to allege that she did not authorize it. Reply ¶¶ 52–55. The Consumer Claims Trustee contends that, without more, she is unable to ascertain any legal claim. *Id.* ¶ 55.

**The Sur-Reply**

Claimant's Sur-Reply consists of her handwritten letter, addressed to the Court. Sur-Reply at 1. She asserts that she has a complaint with Ditech and received a letter stating she could add to her Claim. *Id.* She explains she is widowed and "can not afford any lawyers to help [her] out." *Id.* She says she has difficulty understanding the legal language. *Id.*

Claimant asserts that Ditech "lied and cheated [her] out of money" in order to take the Property. *Id.* She contends that through the Chapter 11 Cases, Ditech cheated "a whole lot of people" and should do something to help. *Id.* She argues "we can't all be liars" and are not trying to do what Ditech "did to all of us." *Id.*

## LEGAL PRINCIPLES

A claim properly filed under section 501 of the Bankruptcy Code is "deemed allowed" absent an objection. 11 U.S.C. § 502(a). Such claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). A court may only disallow a claim if a party in interest has objected, and upon notice and hearing, the court finds the claim falls under one of the exceptions found in section 502(b) of the Bankruptcy Code. 11 U.S.C. § 502(b); *In re Manhattan Jeep Chrysler Dodge, Inc.*, 602 B.R. 483, 491 (Bankr. S.D.N.Y. 2019) ("Section 502 of the Bankruptcy Code provides generally that a proof of claim should be allowed except to the extent it is objectionable on various grounds."). As relevant to the Objection, section 502(b)(1) provides that a claim may be disallowed to the extent it is "unenforceable against the debtor and

property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re Residential Cap., LLC*, 513 B.R. 446, 458 (Bankr. S.D.N.Y. 2014) (citing *In re W.R. Grace & Co.,* 346 B.R. 672, 674 (Bankr. D. Del. 2006)).

The merits of the Claim are not at issue**.** A Sufficiency Hearing is a non-evidentiary hearing to address whether a Contested Claim "has failed to state a claim against the Debtors which can be allowed and should be dismissed pursuant to Bankruptcy Rule 7012." Claims Procedures Order ¶ 3(iv)(a); *see* Fed. R. Bankr. P. 7012(b) (quoting Fed. R. Civ. P. 12(b)) (applying the federal standard under Rule 12(b)(6) motion to dismiss standard to adversary proceedings). The function of a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Havens v. James*, 76 F.4th 103, 116–17 (2d Cir. 2023) (quoting *Festa v. Loc. 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990)) (internal quotations omitted).[23] Rule 12(b)(6) "ensures that, consistent with Rule 8(a), a complaint includes 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Alharbi v. Miller*, 368 F. Supp. 3d 527, 560 (E.D.N.Y. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Accordingly, in applying the legal standards applicable to Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the Claim in light of the pleading standards under Rule 8(a).

---

[23] "On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are 'integral' to the complaint." *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citing *Brass v. American Film Techs.*, 987 F.2d 142, 150 (2d Cir. 1993); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)). Because Sufficiency Hearings consider consumer claims, often by unrepresented claimants whose claims lack detail or do not attach pertinent supportive documentation, it has been the practice of this Court to consider the Consumer Claims Trustee's documentary submissions together with claims as if they were consolidated. The Court does so here.

Rule 8 calls for a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To satisfy this standard, the complaint must at a minimum 'disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)); *see Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) ("[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level.").

The Rule 12(b)(6) standard requires courts to accept all factual allegations as true and to draw all reasonable inferences in favor of the non-moving party. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Further, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding what factual matter to accept as true, the Court is not required to "credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Where, as here, the [Claim] was filed *pro se,* it must be construed liberally to raise the strongest arguments it suggests. Nonetheless, [the] *pro se* [Claimant] must state a plausible claim

for relief." *Walker v. Schult,* 717 F.3d 119, 124 (2d Cir. 2013) (internal citations, quotation marks, and brackets omitted); *see also Kimber v. GMAC Mortg., LLC (In re Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) ("Complaints drafted by *pro se* plaintiffs are to be construed liberally, but they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the plaintiff is complaining about and . . . whether there is a legal basis for recovery.'" (quoting *Iwachiw v. New York City Bd. of Elections,* 126 F. App'x 27, 29 (2d Cir. 2005) (summary order))).

## ANALYSIS

### Whether Claimant States a Claim for Relief Against Ditech

Claimant asserts that she entitled to recover damages because Ditech failed to properly credit her payments and charged her for optional insurance without her authorization. Claim at 1-2. She maintains this harmed her credit score and resulted in the denial of her application to refinance the First Mortgage. *Id*. The Court interprets these allegations as claims for breach of contract and for violation of the FCRA.

### *Whether Claimant States a Claim for Breach of Contract*

Under New Jersey law,[24] the elements for a valid breach of contract claim are: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom, and (4) that the party stating the claim performed its own contractual obligations." *Am. Fin. Resources, Inc. v. Countrywide Home Loans Servicing, LP*, No. 12-7141, 2013 WL 6816394, at *4 (D.N.J. Dec. 23, 2013) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007)); *accord Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016). "The party bringing the action has the

---

[24] The First Mortgage and Second Mortgage are governed by the law of the jurisdiction in which the Property is located, which is New Jersey. First Mortgage § 16; Second Mortgage § 13.

burden of establishing each element in order to establish breach of contract." *Cargill Glob. Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 579 (D.N.J. 2010) (citing *Nolan v. Control Data Corp.*, 579 A.2d 1252, 1262 (N.J. Super. Ct. App. Div. 1990)). Once a party sufficiently pleads the existence of a contract, she must identify the specific provisions or portions of the contract that were allegedly breached and explain how the other party breached such obligation. *Faison v. Wells Fargo Bank N.A.*, No. 18-11755, 2020 WL 7488895, at *4 (D.N.J. Dec. 21, 2020); *Frederico v. Home Depot*, 507 F.3d 188, 203–04 (3d Cir. 2007) (affirming dismissal where plaintiff did not disclose how the defendant breached the agreement).

The First Mortgage is the contract at issue.[25] Claimant contends that Ditech breached the mortgage by erroneously failing to credit her November 2012 payment.[26] She says that error caused her thousands of dollars in damages. Claim at 1. The Consumer Claims Trustee asserts that Claimant was in breach of the First Mortgage. As support, she relies on the documents submitted by Claimant in support of the Claim.[27]

The First Mortgage states that "all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3." Mortgage ¶ 2. It directs that "such payments shall be applied to each Periodic Payment in the order in which it became due" and that "[a]ny remaining amounts shall be applied first to late charges, second to any other amounts due under this Security

---

[25] Below, the Court considers Claimant's request for relief under the Second Mortgage.

[26] That payment was due before Ditech before Ditech began servicing the First Mortgage in February 2013. Claim at 117.

[27] The Trustee notes that in a letter dated September 28, 2015, Ditech explained that Claimant did not make her August 2012 payment until September 4, 2012, and did not make her September 2012 payment until October 1, 2012; as of the date of the letter, she had maintained a rolling delinquency ever since. Claim at 120.

Instrument, and then to reduce the principal balance of the Note." *Id.* It provides that late payments

will be applied, as follows:

> If Lender receives a payment from Borrower for a delinquent Periodic Payment
> which includes a sufficient amount to pay any late charge due, the payment may
> be applied to the delinquent payment and the late charge. If more than one
> Periodic Payment is outstanding, Lender may apply any payment received from
> Borrower to the repayment of Periodic Payments if, and to the extent that, each
> payment can be paid in full.

*Id.* In 2012, Claimant's Periodic Payment totaled $1,903.37, and consisted of principal and interest

in the amount of $1,225.28, optional insurance in the amount of $34.44, and escrow in the amount

of $643.65. Claim at 60.

The pay histories annexed to the Claim show that Claimant's mortgage payment was due

on the first of each month. *See* Claim at 63–64, 81–99, 101–115. They also show that Claimant

did not make some of her mortgage payments on a timely basis. For example:

(i)     The payment due August 1, 2012, was not received until August 31,
        2012, in the amount of $2,012.00.

(ii)    The payment due September 1, 2012, was not received until October 1,
        2012, in the amount $1,992.10.

(iii)   The payment due October 1, 2012, was not received until October 29,
        2012, in the amount of $1,900.00.

*(iv)*  The payment due November 1, 2012, was not received until December
        7, 2012, in the amount of $1,900.00.

*Id*. at 89, 121. In addition, Claimant's TD Bank Statements show that during the time period of

July 14, 2012, through December 13, 2012, Claimant's account was not debited in July or August.

*See id*. at 15–16; 73–75. Her account was debited on (i) September 4, 2012, *id*. at 15, (ii) October

2, 2012, *id*. at 17, (iii) October 30, 2012, *id*. at 19, and (iv) December 10, 2012, *id*. at 21.

Although Claimant states she did not miss any of the Periodic Payments, the documents she includes in support of the Claim demonstrate that she failed to make timely Periodic Payments. The late payments were applied in the order they became due, in accordance with the First Mortgage. Claimant has failed to allege facts demonstrating that Ditech failed to properly credit her payments in breach of the First Mortgage. Claimant has failed to allege facts that could support a claim for breach of contract.

First, she does not identify a specific provision of the First Mortgage that Ditech allegedly breached. *See Faison*, 2020 WL 7488895, at *4 ("But Plaintiffs still fail to identify any specific portions of the mortgage and trial payment plan that were breached. Thus, Plaintiffs fail to state a breach of contract claim."); *Skypala v. Mortg. Elec. Registration Sys., Inc*., 655 F. Supp. 2d 451, 459 (D.N.J. 2009) (dismissing breach of contract claim because where plaintiff "vaguely allude[d] to a breach of contract" without identifying specific provisions). Moreover, the facts she relies on in support of the Claim demonstrate that she breached the First Mortgage by making late and partial Premium Payments. Any resulting damages— whether through late fees, damage to credit, or inability to refinance the loan to obtain a lower rate of interest—arose out of Claimant's, not Ditech's, breach of the mortgage. *See Frederico v. Home Depot*, 507 F.3d 188 at 204 (plaintiff's failure to allege her own performance warranted dismissal because the court could not determine that the damages were not caused by plaintiff's own non-performance); *see also Marino v. Brighton Gardens of Mountainside*, 697 F. Supp. 3d 224, 234 (D.N.J. 2023) ("a party in breach of contract cannot rely on the other party's subsequent failure to perform to excuse its own prior breach" (quoting *City of Trenton v. Cannon Cochran Mgmt. Servs., Inc*., No. A-5576-09T1, 2011 WL 3241579, at *4 (N.J. Super. Ct. App. Div. Aug. 1, 2011))).

Moreover, in any event, on the face of the Claim, a claim for breach of contract is time-barred.[28] Under the applicable New Jersey statute of limitations, claims for breach of contract must be brought within six years. N. J. Stat. § 2A:14-1.[29] "The contract limitations period runs from the time of the opposing party's breach or repudiation of the contract." *Thomas v. Jersey Mortg. Co.*, No. 13-0648, 2016 WL 4705449, at *12 (D.N.J. Sept. 8, 2016). Claimant alleges that Ditech failed to properly credit her payments toward the First Mortgage in November of 2012. Claim at 1. Therefore, the statute of limitations for such claim expired in November of 2018, almost a year before Claimant submitted the Claim, and any such claim is time-barred.

Claimant cannot state a breach of contract claim against Ditech.

### Whether Claimant States a Claim Regarding Optional Insurance Under the Second Mortgage

Claimant contends that Ditech placed "optional insurance" on her Second Mortgage which she did not approve. Claim at 1. She provides no further explanation in support of that contention.

---

[28] Bar by a statute of limitation is typically an affirmative defense, which the defendant must plead and prove. *See John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 133 (2008); Fed. R. Civ. P. 8(c). A defendant does not render a complaint defective by pleading an affirmative defense. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980). Accordingly, the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense. *See Ellul v. Congregation of Christian Bros.,* 774 F.3d 791, 798 n.12 (2d Cir. 2014) ("Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.,* 547 F.3d 406, 425 (2d Cir. 2008))); *accord Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter." (citations omitted)).

[29] The Consumer Claims Trustee states that the applicable statute of limitations is four years, pursuant to section 12A:2-725 of the New Jersey Statutes. Reply ¶ 34. However, section 12A:2-725 governs the statute of limitations in contracts for the sale of goods. N.J. Stat. § 12A:2-275. For breach of contract claims "other than one which concerns the trade or merchandise between merchant and merchant," section 2A:14-1 applies. N.J. Stat. § 2A:14-1 ("This section shall not apply to any action for breach of any contract for sale governed by N.J.S.12A:2-725."). Here, Claimant has alleged breach of the mortgages, which is subject to the six-year statute of limitations under section 2A:14-1. *See Smith v. CitiMortgage, Inc*., 702 F. Supp. 3d 247, 253 (D.N.J. 2023) (applying six-year statute of limitations to a cause of action for breach of a mortgage).

However, in support of the Claim, she includes a portion of an annual escrow disclosure statement dated December 12, 2013, which has, in handwriting, the words "Stop Insurance plus optional insurance $34.44." Claim at 26-28. She circles the new monthly total mortgage payment. *Id*. at 26. The escrow statement shows a shortage of $731.67. *Id.* at 28.

Notwithstanding Claimant's assertions, the documents filed in support of the Claim indicate that Claimant was responsible for making "optional insurance" payments. For example, the Claim includes a letter from Ditech dated August 12, 2013, that indicates that $34.44 of her monthly payment of $1,903.37, is earmarked for "optional insurance." Claim at 60. Moreover, an escrow "short-year-history statement" issued by GMAC on February 8, 2013, shows that, of her monthly payment of $1,903.37, a sum of $39.56 was designated for "Opt. Items & Shortage Payment." *Id*. at 123.

Claimant does not provide sufficient explanation of her complaint regarding this optional insurance, except to conclude that she did not authorize it. The Court is unable to ascertain any legal claim.

### Whether Claimant States a Claim Under the FCRA

Claimant alleges that Ditech's failure to properly credit her payments resulted in damage to her credit score such that she could not obtain approval for refinancing. Claim at 1-2.

The FCRA governs the accuracy of credit reporting information on consumers. *See* 15 U.S.C. § 1681. To that end, "[t]he FCRA imposes a variety of duties on credit reporting agencies and the persons or entities that 'furnish' information to them." *Esperance v. Diamond Resorts*, No. 1:18-CV-10237, 2022 WL 1718039, at *4 (D.N.J. May 27, 2022); *see also Cortez v. Trans Union, LLC*, 617 F.3d 688, 708 (3d Cir. 2010) ("[The FCRA] was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that

utilize, relevant, and current information in a confidential and responsible manner."(quoting *Guimond v. Trans Union Credit Info Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)).

Section 1681s-2(a) of the FCRA imposes a duty on credit furnishers, such as Ditech, to provide accurate information to consumer reporting agencies ("CRA"). 15 U.S.C. § 1681s-2(a). Specifically, information furnishers must refrain from knowingly reporting inaccurate information, *id.* § 1681s–2(a)(1), and must correct any information they later discover to be inaccurate, *id.* § 1681s–2(a)(2). The FCRA affords consumers the right to dispute any information reported to a credit reporting agency. *Id.* § 1681g(c)(1)(B)(iii). It also vests them with the right to bring a civil cause of action against any person who willfully or negligently fails to comply with any requirement imposed under the FCRA. In appropriate circumstances, an aggrieved consumer may recover actual or statutory damages, punitive damages, costs, and attorney's fees. *See id.* § 1681n (civil liability for willful noncompliance); *id.* § 1681o (civil liability for negligent noncompliance).[30]

However, "the FCRA does not provide a private cause of action for violations of Section 1681s-2(a)." *Sprague v. Salisbury Bank & Tr. Co.*, 969 F.3d 95, 98–99 (2d Cir. 2020) (citing § 1682s-2(d)). Section 1681s-2(a) "is enforceable only by a governmental body and not through a private right of action." *Ruff v. Am.'s Servicing Co.,* No. 07-0489, 2008 WL 1830182, at *4 (W.D. Pa. Apr. 23, 2008).

The only provision of the FCRA that is actionable against a credit furnisher, such as Ditech, arises when the furnisher fails to conduct a reasonable investigation in response to a dispute

---

[30] "[T]o prevail on a claim under the FCRA, a plaintiff must prove both that the defendant used or obtained the plaintiff's credit report for an impermissible purpose, *see* 15 U.S.C. § 1681b(f), and that the violation was either willful or negligent, 15 U.S.C. §§ 1681n, 1681o." *Reilly v. Vivint Solar*, No. 1:18-CV-12356, 2021 WL 261084, at *5 (D.N.J. Jan. 26, 2021). The Court does not interpret the Claim as claim under section 1681n or 1681o, as Claimant has not alleged any facts to suggest Ditech obtained her credit report for an impermissible use.

communicated to it by a consumer reporting agency. *See* 15 U.S.C. § 1681s-2(b); *see also Esperance v. Diamond Resorts*, 2022 WL 1718039, at *4. To state a claim under section 1681s-2(b), Claimant must allege that (1) she sent notice of disputed information to a CRA, (2) the CRA then notified Ditech of the dispute, and (3) Ditech failed to investigate and modify the inaccurate information. *Bowen v. Bank of Am.,* No. 14-3531, 2015 WL 5542489, at *3 (D.N.J. Sept. 18, 2015). By itself, a dispute sent directly to the furnisher does not trigger any duties under section 1681s-2(b). The failure to allege that a notice of inaccuracy was provided to the information furnisher by a CRA is fatal to an FCRA § 1681s-2(b) claim. *Markovskaya v. Am. Home Mortg. Servicing, Inc.,* 867 F. Supp. 2d 340, 344 (E.D.N.Y. 2012).

Claimant has not alleged that Ditech reported inaccurate information to a CRA. She states Ditech ruined her credit. Third Response at 1. She asks why Ditech has not appeared on her credit reports. First Response at 1**.** The FCRA does not impose upon information furnishers any affirmative duty to report consumer information to CRAs. Moreover, numerous district courts have held that CRAs are not required to include particular accounts or tradelines in a credit report. *Coyle v. Experian Info. Sols*., No. 3:19-cv-02645, 2020 WL 3052228, at *2 (N.D. Tex. Jun. 7, 2020) (collecting cases); *see, e.g., Hammer v. Equifax Info. Servs., LLC,* No. 3:18-CV-1502-C, 2019 WL 7602463, at *3 (N.D. Tex. Jan. 16, 2019) (noting "the weight of authority in other circuits suggests that the FCRA does not impose an affirmative duty upon credit reporting agencies to include all relevant information about Plaintiff"); *Desautel v. Experian Info. Sol., LLC*, No. 19-CV-2836, 2020 WL 2215736, at *3 (D. Minn. May 7, 2020) ("As a general matter, a CRA has no obligation to include a tradeline on a credit report.").

Claimant does not allege that Ditech reported inaccurate information to the credit bureaus. Nor does she claim to have disputed the reporting with Ditech or the CRAs. She states that she

notified her local congressmen and state banking departments, but does not demonstrate facts indicating she sent notice to a CRA.[31] Claim at 1. Moreover, even if a CRA notified Ditech of the dispute, Claimant has not shown Ditech failed to investigate or that any negative information was inaccurate. In fact, Claimant includes copies of letters from Green Tree and Ditech demonstrating that Ditech investigated and attempted to resolve the dispute. *See* Claim at 11, 36, 120-21. The TD Bank Statements and Payment History she provides indicate that she was delinquent on the Loans, contradicting any claim that Ditech reported inaccurate negative information. Claimant has failed to state facts sufficient to allege a violation of the FCRA.

Claimant has failed to allege that any negative reporting by Ditech to the credit bureaus was inaccurate, much less that she disputed the reporting and that Ditech failed to correct it. Given that there is no affirmative duty to report, she also fails to establish that the lack of a tradeline on her credit report gives rise to any cognizable claim against Ditech. As a practical matter, the documents Claimant relies on show that Claimant was in fact delinquent on her mortgage. The pay histories show rolling delinquencies and funds placed into suspense. Claimant attaches a notice from Green Tree offering her loss mitigation assistance. Claim at 119. A resolution letter from 2015 indicates that she is behind on both of her mortgages. *Id*. at 120.

Claimant fails to state a claim for relief under the FCRA.

---

[31] "The term 'consumer reporting agency' means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C.A. § 1681a(f). Claimant has not alleged that she requested assistance from anyone that falls under this definition.

## **CONCLUSION**

For the foregoing reasons, the Court sustains the Objection and disallows the Claim.

IT IS SO ORDERED.


Dated: February 7, 2025
       New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge