UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

----------------------------------------------------------x

In re:                                 :

Ditech Holding Corporation, *et al.*,    :

                        Debtors.[1]  :

----------------------------------------------------------x

Case No. 19-10412 (JLG)
Chapter 11

Jointly Administered

## MEMORANDUM DECISION AND ORDER DENYING MOTION TO AMEND THE FINAL ORDER

**A P P E A R A N C E S :**

Michael James Bourff
*Appearing Pro Se*[2]

FIDELITY NATIONAL LAW GROUP
*Attorneys for Sheila Ann Gibson,*
*Jordan A. Cole, and Courtney M. Cole*
711 Third Avenue, 8th Floor
New York, New York 10117
By:    Lara A. Chassin, Esq.

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1404 (the "Third Amended Plan" or "Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412.

Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number are (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

[2] Bourff lists his address as "178 Broadway, New York, NY 10001 New York, New York 10153."

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

**INTRODUCTION**[3]

Michael James Bourff ("Bourff") and Tabitha Baker Cote ("Cote") formerly held title as joint tenants to property known as 7097 Riverside Drive, Sandy Springs, Georgia 30328 (the "Property"). While they owned the Property, they pledged it as collateral for loans they received from Countrywide Home Loans, Inc. ("Countrywide") and National City Bank. Prior to the Petition Date, Cote defaulted under the Countrywide Loan, and Countrywide, as the senior secured creditor, conducted a non-judicial foreclosure of the Property. The foreclosure sale extinguished all subordinate and junior interests against the Property. Najarian Capital, LLC ("Najarian") purchased the Property at the foreclosure sale.

Eleven months later, on February 11, 2019 (the "Petition Date"), Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) ("Ditech" or "Debtor") and certain of its affiliates (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

After the Petition Date, Najarian conveyed the Property to Shelia Ann Gibson, Jordan A. Cole, and Courtney M. Cole (collectively, the "Georgia Plaintiffs") pursuant to a Limited Warranty Deed. Thereafter, the Georgia Plaintiffs sued Bourff, Cote, Greystone Capital, L.P. and Path Home Georgia (collectively, the "Georgia Defendants") in the Georgia Superior Court, Fulton County

---

[3] Capitalized terms used but not otherwise defined in this section shall have the meaning ascribed to such term below or in the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1326 (the "Third Amended Plan" or "Plan") and the *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1404 (the "Confirmation Order").

(the "Georgia Superior Court") to quiet title to the Property (the "Quiet Title Action"). The Georgia Plaintiffs hold default judgments against the Georgia Defendants in that action.

As relevant, the Third Amended Plan provided for the Wind Down Estates, Third Amended Plan § 1.186, and permanently enjoined the commencement of actions against the Debtors and any successors of the Debtors, including the Wind Down Estates, *id.* § 10.5 (the "Plan Injunctions"). Bourff asserts that as of the Petition Date, the Debtor held title to the Property, and under the Third Amended Plan, transferred the Property to the Wind Down Estates. He says that he holds title to the Property as a "successor in interest" to the Wind Down Estates. Bourff argues that by acquiring the Property and commencing the Quiet Title Action after the Petition Date, the Georgia Plaintiffs violated the automatic stay under section 362 of the Bankruptcy Code and violated the Plan Injunctions.

After the Petition Date, Bourff filed a motion against the Georgia Plaintiffs pursuant to sections 105(d), 524 and 1141 of the Bankruptcy Code, rules 1015(c), 3020(d), and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and section 10.5 of the Third Amended Plan, for an order (i) enforcing the automatic stay and the Plan Injunctions, and (ii) holding the Georgia Plaintiffs in contempt and imposing monetary sanctions for their alleged violations of the Plan Injunctions and Orders of this Court (the "Bourff Motion").[4] The Georgia

---

[4] *Motion of Michael James Bourff, Successor in Interest to Wind Down Estates, to Enforce the Plan Injunctions and Confirmation Order Against Sheila Ann Gibson, Jordan A. Cole, Courtney M. Cole and Hold Them in Contempt and Impose Sanctions*, ECF No. 5134.

Plaintiffs filed an objection to the Bourff Motion.[5] Bourff filed a reply in response to the objection and in support of the Bourff Motion.[6]

The Court denied the Bourff Motion (the "Decision and Order").[7] The matter before the Court is Bourff's motion to amend the Decision and Order pursuant to Bankruptcy Rule 9023 and Local Bankruptcy Rule 9023-1 (the "Motion").[8] The Georgia Plaintiffs filed an objection and response to the Motion (the "Objection").[9] The Court held a hearing on the Motion. At the hearing, Bourff appeared pro se, and the Georgia Plaintiffs appeared through counsel. For the reasons set forth herein the Court denies the Motion.

## <u>JURISDICTION</u>

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

---

[5] *Objection to Motion of Michael James Bourff to Enforce the Plan Injunctions and Confirmation Order Against Sheila Ann Gibson, Jordan A. Cole, Courtney M. Cole and Hold Them in Contempt and Impose Sanctions*, ECF No. 5163.

[6] *Reply of Michael James Bourff, Successor in Interest to Wind Down Estates, Motion to Enforce the Plan Injunctions and Confirmation Order Against Sheila Ann Gibson, Jordan A. Cole, Courtney M. Cole and Hold Them in Contempt and Impose Sanctions*, ECF No. 5174.

[7] *Memorandum Decision and Order Denying Michael James Bourff's Motion to Enforce the Plan Injunctions and Confirmation Order against Sheila Ann Gibson, Jordan A. Cole, Courtney M. Cole and Hold Them in Contempt and Impose Sanctions,* ECF No. 5190.

[8] *Michael James Bourff's Rule 59(e) Motion to Amend the Final Order*, ECF No. 5214.

[9] *Objection and Response in Opposition of Sheila Ann Gibson, Jordan A. Cole, and Courtney M. Cole to Michael James Bourff's Rule 59(e) Motion to Amend the Final Order*, ECF No. 5238.

## BACKGROUND[10]

### Original Property Ownership and Loans

In 2005, Cote obtained a purchase money mortgage loan from Countrywide (the "Countrywide Loan") to finance the purchase of the Property. Decision and Order at 4. By a quitclaim deed dated January 31, 2007, Cote conveyed her interest in the Property to herself and to Bourff. *Id.* at 4–5. That day, Bourff obtained a line of credit from National City Bank (the "NCB Note"), evidenced by a deed secured by the Property (the "NCB Security Deed"). *Id.* at 5. Bourff defaulted under the NCB Note due to failure to pay. *Id.* On June 17, 2010, he filed a lawsuit in the Georgia Superior Court against Green Tree Servicing LLC ("Green Tree"), alleging unlawful debt collection practices. *Id.* Green Tree counterclaimed based on Bourff's alleged breach of the NCB Note. *Id.* On May 30, 2012, the Georgia Superior Court granted judgment in Green Tree's favor (the "Green Tree Judgment"). *Id.*

### Green Tree Judgment Lien

On January 24, 2014, Green Tree recorded a writ of *fieri facias*[11] against the Property with the Clerk of the Georgia Superior Court of Fulton County. *Id.* at 6. The writ names Green Tree as the plaintiff in *fieri facias* and Michael Bourff as the defendant in *fieri facias*. *Id.* It lists the judgment date as May 30, 2012, and indicates that Bourff owed more than $500,000 (the "Judgment Lien"). *Id.*

---

[10] The facts are set forth in the Decision and Order. Except as necessary, they will not be repeated herein.

[11] "A writ of fieri facias is a document issued by a court for the purpose of recording a lien on a judgment debtor's property." *Adams v. Carrington Mortg. Servs., LLC*, No. 1:23-CV-04886, 2024 WL 3390564, at *1 (N.D. Ga. June 24, 2024) (citing *Writs of Fieri Facias*, Magistrate Court Fulton County, Georgia, https://magistratefulton.org/197/Writs-of-Fieri-Facias-FiFa).

**Foreclosure and Property Sale**

In 2018, Cote was in default under the Countrywide Loan, and Bank of America ("BoA"), as the servicer for the Countrywide Loan, initiated foreclosure proceedings for the Property (the "2018 Foreclosure Action"). Decision and Order at 6. In response to BoA's prosecution of that action, on April 2, 2018 (the "Cote Petition Date"), Cote commenced a voluntary bankruptcy case under chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Florida (the "Florida Bankruptcy Case"). *Id.* On April 3, 2018, prior to the Petition Date, BoA conducted a non-judicial foreclosure of the Property (the "2018 Foreclosure"). *Id.* Najarian emerged as the highest bidder at $461,000, as evidenced by the Foreclosure Deed. *Id.* Thereafter, Cote's bankruptcy case was transferred to the United States Bankruptcy Court for the Southern District of Florida (the "Florida Bankruptcy Court"). *Id.*

**Florida Bankruptcy Court Proceedings**

On May 21, 2018, the Florida Bankruptcy Court dismissed Cote's case. Decision and Order at 7. On March 15, 2019, that court entered an order confirming that the 2018 Foreclosure was valid *nunc pro tunc* from the Cote Petition Date (the "Florida Stay Relief Order"). *Id.* Cote appealed the Florida Stay Relief Order to the United States Court of Appeals for the Eleventh Circuit, which affirmed the Florida Bankruptcy Court's ruling. *Id.*

**Post-Foreclosure Transfer**

The Georgia Plaintiffs maintain that on June 4, 2018, following the foreclosure, Najarian filed a dispossessory proceeding against Cote and Bourff in the Magistrate Court of Fulton County, Georgia. *Id.* They say that on November 20, 2018, the court entered a default judgment, and on August 5, 2019, a writ of possession was executed in favor of Najarian, and Bourff's subsequent appeal was denied. *Id.* On March 16, 2020, after the Petition Date, Najarian conveyed the Property

to the Georgia Plaintiffs pursuant to the Limited Warranty Deed (the "Post-Foreclosure Transfer"). *Id.* The Georgia Plaintiffs say that on February 11, 2021, they obtained a new mortgage on the Property. *Id.*

## Subsequent Legal Actions

On July 20, 2022, Bourff, acting as "Greystone Capital, LP," initiated a dispossessory proceeding in the Magistrate Court of Fulton County, Georgia, against "Path Home Georgia" and the Georgia Plaintiffs as "occupants." In this case, Bourff claimed he was an agent of Greystone Capital. He sought possession of the Property from the Georgia Plaintiffs and demanded $12,000 in past-due rent. Decision and Order at 7–8. Subsequently, on February 7, 2023, the Georgia Plaintiffs filed the Quiet Title Action in the Georgia Superior Court at Fulton County, seeking to establish clear title to the Property. *Id.* at 8. On October 19, 2023, the Georgia Superior Court entered a default judgment and final order in the Georgia Plaintiffs' favor, declaring them the fee simple owners of the Property, free from claims by Bourff or other defendants. *Id.*

In the Bourff Motion, Bourff sought to enforce the Plan Injunctions and Confirmation Order against the Georgia Plaintiffs, and to hold them in contempt and impose sanctions against them. Bourff contended that the Georgia Plaintiffs "violate[d] the Automatic Stay," when they recorded their Limited Warranty Deed because legal title to the Property had vested in the Wind Down Estates. Decision and Order at 8. Bourff also contended that he has standing to enforce the Plan Injunctions because he is a "successor in interest" to the Wind Down Estates. *Id.* at 9. Bourff sought several forms of relief, including an order enforcing the Plan Injunctions by requiring the Georgia Plaintiffs to dismiss the Quiet Title Action with prejudice, as well as monetary sanctions if the Georgia Plaintiffs did not do so within twenty-one days. *Id.* at 9.

The Georgia Plaintiffs objected to the Bourff Motion arguing that (i) Bourff lacked standing, (ii) the Property was never property of the Debtors' estate, (iii) the Quiet Title Action was proper, (iv) there were no grounds for sanctions as they did not violate the Confirmation Order or Plan Injunctions, and (v) the Quiet Title Action resulted in no monetary damages against the Debtor or its affiliates. They also noted that the judgment in the Quiet Title Action declared them as the fee simple owners of the Property and that Bourff did not have any ownership interest in the Property. Decision and Order at 10–11.

In his reply to the Georgia Plaintiffs' objection, Bourff raised several new arguments. *Id.* at 11. Bourff argued that the 2018 Foreclosure and issuance of the Foreclosure Deed violated the automatic stay. *Id.* Bourff also contended that the Florida Stay Relief Order was not properly served on him (or the Debtor) in violation of his due process rights, therefore making the foreclosure invalid. *Id.* at 11–12, 14–15. He also asserted that the Florida Stay Relief Order violated both his and Ditech's due process rights. *Id.* at 12. Bourff also filed a letter asserting he had a right to discovery in this case. *Id.*

**The Decision and Order**

The Court denied the Bourff Motion. The Court held that Bourff was not a party in interest as he lacked any relationship to the Debtor, its property, or the administration of these Chapter 11 Cases. Decision and Order at 12. The Court determined that, as of the Petition Date, the Debtor had no interest in the Property. *Id.* at 13. "The Foreclosure Deed extinguished any interest in the Property that Ditech hypothetically held prior to the Petition Date (as Green Tree's successor, in turn as RBS's loan servicer, or otherwise)." *Id.* at 14. The Court also held that it did not have subject-matter jurisdiction to entertain Bourff's argument concerning the Stay Relief Order's

validity. *Id.* at 14–15. Finally, the Court held that Bourff was not a successor in interest to the Debtor. *Id.* at 16–19.

**The Motion**

In the Motion, Bourff argues the Court erred in determining that he did not possess party in interest standing. Motion at 3. Bourff references the Supreme Court's recent decision in *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268 (2024) ("*Kaiser Gypsum*"), which he argues is an intervening change of controlling law. Motion at 5. Bourff contends that *Kaiser Gypsum* stands for the proposition that any party with a financial interest which may be directly and adversely affected by the Third Amended Plan has standing as a party in interest. *Id.* at 4. Bourff further argues that he and the Debtor were somehow parties to a "contract" created by Georgia state law under the Judgment Lien. *Id.* Bourff contends that the lien was dealt with in the Plan because the Debtor transferred it to the Wind Down Estates. *Id.* He asserts that the Court then entered a wind down order that abandoned the lien. *Id.*[12] Bourff states "the only question for the Court to answer is did the Judgment Lien, to which the Debtor was the legal owner of, exist on the [Petiton] Date." *Id.*

Second, Bourff argues the Court erred when it determined it lacked subject matter jurisdiction to rule on the merits of the Bourff Motion. *Id.* at 5. As the Court noted in its Decision and Order, "[w]hen a bankruptcy court is presented with a post-confirmation dispute involving a reorganized debtor . . . case law requires the court to determine whether the dispute has a 'close nexus' to the bankruptcy case or 'relates to the effectuation of the Chapter 11 proceeding.'"

---

[12] *See also Order Granting Motion of Plan Administrator for Entry of Order in Aid of Execution of Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors (I) Releasing Wind Down Estate Liens on Property Owned by Borrowers, (II) Clarifying That Third Parties Are Permitted to Commence and Continue Nonmonetary Quiet Title Actions, (III) Finding Wind Down Estates and Plan Administrator Need Take No Further Action to Respond to Title/Lien Inquiries, and (IV) Granting Related Relief,* ECF No. 3673 ("Lien Clarification Order").

Decision and Order at 15 (citing *In re Ener1, Inc.,* 558 B.R. 91, 95 (Bankr. S.D.N.Y. 2016)). In making that determination, the Court first considers whether the matter has a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan or incorporated litigation trust agreement. *Id.* Second, it considers whether the plan provides for the retention of jurisdiction over the dispute. *Id.* (citing *In re Gen. Media, Inc.,* 335 B.R. 66, 73–74 (Bankr. S.D.N.Y. 2005)).

Bourff argues that he has met these requirements because he is a "borrower" as defined by the Third Amended Plan, and because the Plan provides for this Court to retain jurisdiction over all matters arising in, under, and related to the Chapter 11 Cases for purposes including the recovery of all assets of the Debtors and property of the Debtors' estate and adjudicate any disputes with respect thereto. Motion at 6; *see also* Plan, art. XI, § 11.1. Bourff couches this dispute as concerning whether certain property was an asset of the Debtor's estate as of the Petition Date, therefore giving this Court subject-matter jurisdiction. Motion at 7.

Bourff also contends that the Court erred when it determined it did not have subject matter jurisdiction to determine whether the lack of notice of the Florida Bankruptcy Court violated his constitutional right to due process. *Id.* Bourff cites to *Mullane v. Central Hanover Bank & Trust Corporation*, 339 U.S. 306 (1950), for the proposition that failure to effect notice violated his constitutional rights. *Id.*

Third, Bourff argues that the Court erred when it determined that he cannot enforce section 362(k) of the Bankruptcy Code. *Id.* at 8. Paradoxically, Bourff agrees with the Court that "only the Debtor and creditors can enforce that section," but later argues, "the Court ruling that Movant cannot enforce 11 U.S.C. § 362(k) in response to his assertion the Florida Stay Relief Order violated the automatic stay was clear error." *Id.* at 8–9. Bourff appears to be seeking to "enforce"

10

section 362(k) by moving the Court to determine the Florida Stay Relief Order to be void *ab initio*. *Id.* at 9.

Fourth, Bourff argues the Court failed to rule on the Georgia Plaintiffs' collateral estoppel issue. Motion at 9. Bourff cites the Decision and Order for the proposition that the Court stated it would rule on "all the issues raised in the [r]eply brief." *Id.* Bourff argues the Florida Stay Relief Order was enforced against him without the Court determining whether Bourff was collaterally estopped from relitigating. *Id.* He argues collateral estoppel is an affirmative defense that must be raised by the Georgia Plaintiffs, who also carry the burden of proving, by clear and convincing evidence, that all the elements of collateral estoppel apply to enforce the Florida Stay Relief Order. *Id.*

Finally, Bourff argues the Florida Bankruptcy Court changed the meaning and effect of the Florida Stay Relief Order. He contends that the order did not terminate, annul, modify, or condition the automatic stay and that a *nunc pro tunc* order cannot change the past. Motion at 11. He cites to *Roman Cath. Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 589 U.S. 57, 65 (2020), as support for the contention that a *nunc pro tunc* order "presupposes" that a court has made a decree that was not entered on account of "inadvertence." *Id.* (citing *Roman Cath. Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 589 U.S. 57, 65 (2020)). He further argues that the use of a *nunc pro tunc* order is not allowed to circumvent the automatic stay entered by this Court as of the Petition Date. *Id.* Bourff states that the Stay Relief Order was *ultra vires*, and a legal nullity. *Id.* Finally, Bourff argues that the Florida Stay Relief Order "does not grant retroactive relief to confirm a foreclosure sale for the simple, indisputable, fact the order does not say that." *Id.* at 12.

**The Reply**

The Georgia Plaintiffs argue the Court should deny the Motion on substantive and procedural grounds. Objection ¶¶ 5–6. First, they assert that the Motion is untimely, as Rule 59 of the Federal Rules of Civil Procedure ("Rule 59"), as made applicable herein by Bankruptcy Rule 9023 and Local Bankruptcy Rule 9023-1, requires that such motions be filed within fourteen days of the entry of judgment. *Id.* ¶ 13. Bourff filed the Motion three days past this deadline, rendering his request for relief procedurally barred. *Id.* ¶ 14. Second, the Georgia Plaintiffs contend that the Motion fails to meet the strict standard for reconsideration, which requires a showing of an intervening change in controlling law, newly discovered evidence, or a clear error that would prevent manifest injustice. *Id.* ¶ 16. They contend that instead of presenting any new basis for reconsideration, Bourff reiterates arguments already considered and rejected by the Court. *Id.* ¶¶ 17–18.

The Georgia Plaintiffs argue that Bourff lacks standing in this proceeding, as he does not have "party in interest" status with any claim to the Property. Objection ¶¶ 24–25. They emphasize that the 2018 Foreclosure extinguished any interest related to Judgment Lien, removing any rights he might assert over the Property as a junior lienholder under Georgia law. *Id.* ¶ 23. The Georgia Plaintiffs note that Bourff's reliance *Kaiser Gypsum* decision is misplaced, as that case pertains to parties with direct financial responsibility in bankruptcy proceedings, which is not applicable to Bourff's situation. *Id.* ¶ 24.

Additionally, the Georgia Plaintiffs assert that the Court lacks subject matter jurisdiction over Bourff's claims related to the Florida Stay Relief Order. *Id.* ¶ 39. They say that the order, which validated the 2018 Foreclosure, does not bear a "close nexus" to the Chapter 11 Cases, and that the Plan does not retain jurisdiction over matters relating to the Stay Relief Order. *Id.* ¶ 45.

They emphasize that even if the Court had jurisdiction over the Florida Stay Relief Order, the order was issued by the Florida Bankruptcy Court and affirmed on appeal, and therefore, cannot be re-litigated here. *Id.* ¶ 46.

## LEGAL PRINCIPLES

Bankruptcy Rule 9023 and Local Bankruptcy Rule 9023-1 make Federal Rule 59 applicable in bankruptcy proceedings, except that such motions must be filed within fourteen days after the entry of judgment. Fed. R. Bankr. P. 9023; L. Bankr. R. 9023-1. Rule 59(e) permits motions to "alter or amend a judgment." Fed. R. Civ. P. 59(e). The standard for granting a motion for reconsideration is "strict." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Generally, courts deny such motions unless the moving party can demonstrate that a court overlooked "controlling decisions or data" that could reasonably be expected to "alter the conclusion reached by the court." *Id.* A court should not grant a motion for consideration "where the moving party seeks solely to relitigate an issue already decided," but if the moving party introduces "additional relevant case law and substantial legislative history" that was not previously considered, a court has discretion to reconsider its earlier ruling. *Id.* Courts generally take a narrow view of the rule "in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered . . . ." *Range Rd. Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 391–92 (S.D.N.Y. 2000). "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' . . . ." *Analytical Survs., Inc. v. Tonga Partners, L.P.,* 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012) (quoting *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir.1998)).

<u>ANALYSIS</u>

**<u>Bourff's Motion for Reconsideration is Untimely.</u>**

A motion for reconsideration must be served without fourteen days after the entry of judgment. Bankr. L. Bankr. R. 9023-1(a); Fed. R. Bankr. P. 2023. On August 20, 2024, the Court issued its Decision and Order. Bourff filed the Motion on September 6, 2024, seventeen days later. September 3, 2024, was the deadline for filing the Motion.

The Court is without authority to enlarge time for filing the Motion. *See* Fed. R. Bankr. P. 9006(b)(2) ("The court may not enlarge the time for taking action under Rules 1007(d), 2003(a) and (d), 7052, 9023, and 9024"). Accordingly, the Court denies the Motion as untimely. *See Matter-of-Kossoff PLLC*, No. 21-10699, 2023 WL 3404907, at *2 (Bankr. S.D.N.Y. May 11, 2023) ("[Litigant] asked the Court to accept his late Motion to Reconsider on the ground of excusable neglect. The Court, however, is precluded from doing so pursuant to Bankruptcy Rule 9006(b)(2)").

During the hearing, Bourff asserted that under "the service rule," his status as a *pro se* litigant, and his failure to obtain electronic notices from the Court, he is entitled to an automatic three-day extension of time in which to file the Motion. The Court understands Bourff to rely on Bankruptcy Rule 9006(f) which states as follows:

> (f) Additional Time After Certain Service. When a party may or must act within a specified time after being served and service is made by mail or under Fed. R. Civ. P. 5(b)(2)(D) (leaving with the clerk) or (F) (other means consented to), 3 days are added after the period would otherwise expire under (a).

Fed. R. Bankr. P. 9006(f).

Bankruptcy Rule 9006(f) provides additional time to file documents when the filling deadlines run from service of documents. The rule accounts for potential delays in the receipt of

documents when service is made by mail or other indirect methods. However, the three-day extension provided by Bankruptcy Rule 9006(f) does not apply to the entry of a decision because the time for filing a reconsideration motion begins when the order at issue was entered, not when it was served. *See Buczek v. KeyBank N.A.*, No. 20-1046, 2022 WL 3648567, at *4 (W.D.N.Y. Aug. 24, 2022), *aff'd sub nom. In re Buczek*, No. 22-2045, 2023 WL 7180644 (2d Cir. Nov. 1, 2023) (Rule 9006(f) does not apply to notice of appeal because the time for filing an appeal runs from the date the order was entered, not from a time of service); *see also In re 231 Fourth Ave. Lyceum, LLC*, 513 B.R. 25, 30 (Bankr. E.D.N.Y. 2014) (holding the time to file a motion under Bankruptcy Rule 9023 is measured from the entry of judgment).

At issue here is whether Bourff has shown grounds to warrant reconsideration of the Court's previous rulings, which found that he lacked standing and that the Court lacked subject-matter jurisdiction over his claims. As explained below, even if the Motion was timely filed, Bourff failed to show any grounds for relief under Rule 59(e).

**Bourff Lacks Standing.**

***The Property Is Not Property of Ditech's Estate.***

Bourff claims his proceeding is "a dispute over whether certain property was an asset of the estate on the [Petition] Date." Motion at 7. And Bourff insists "the property in dispute became part of the estate on the [Petition] Date." Motion at 8.

But Ditech never owned the Property. At most, Ditech held a Judgment Lien against the Property. Bourff argues that he has rights to the Property due to this lien, but in Georgia, a judgment lien does not convey ownership.[13] In April 2018, prior to the Petition Date, Najarian

---

[13] As relevant, Georgia law provides that "[a]ll judgments obtained in the superior courts, magistrate courts, or other courts of this state shall be of equal dignity and shall bind all the property of the defendant in judgment, both

purchased the Property. *See* Bourff Motion at 33. The foreclosure was initiated by BoA as the servicer of the Countrywide Loan, which financed the Property purchase. Under Georgia law, the foreclosure extinguished all junior liens, including the writ of *fieri facias* held by Green Tree (predecessor to Ditech). Decision and Order at 14 (citing *Hudson v. Dobson*, 580 S.E.2d 268, 271 (Ga. App. 2003)). As of the Petition Date, neither Ditech nor Bourff had any interest in the Property because Najarian owned the Property.

A bankruptcy court's jurisdiction extends to "all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate . . . ." 28 U.S.C. § 1334(e). It is settled that a debtor's estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Because the foreclosure occurred before the Petition Date, the Property was not part of the Debtors' estate. Accordingly, Bourff's various theories that he is a representative of estate interests ignores the fundamental premise: the Property that Judgment Lien was attached to, or the writ of *fieri facias* was attached to, was never part of the Debtors' estate. Bourff lacks any cognizable interest in the proceeding. *See In re Regency Holdings (Cayman), Inc.*, 216 B.R. 371, 375 (Bankr. S.D.N.Y. 1998) (property that would not have been property of the estate cannot be recovered).

Bourff argues there has been an "intervening change of controlling law with respect to party in interest standing and further demonstrated the Court committed clear error by overlooking the fact the Judgment Lien was an asset of the estate on the [Petition] Date." Motion at 5. Bourff misplaces his reliance on *Kaiser Gypsum* to support his claim of standing. In *Kaiser Gypsum*, the

---

real and personal, from the date of such judgments except as otherwise provided in this Code." GA. CODE ANN. § 9-12-80. *See also Crossroads Bank of Georgia v. Corim, Inc.*, 418 S.E.2d 601, 602 n.2 (1992) (explaining a judgment lien is often described as "floating" because the lien covers property acquired by the debtor subsequent to the rendition and execution of the judgment against the debtor).

Supreme Court emphasized that section 1109(b) of the Bankruptcy Code grants standing to parties

who may be directly impacted by the proposed reorganization plan. *Kaiser Gypsum*, 602 U.S. at

269. In *Kaiser Gypsum*, an insurer was contractually obligated to defend and indemnify the debtors

for covered asbestos injury claims, up to $500,000 per claim. *Id.* at 275. That insurer argued the

proposed reorganization plan was collusive and lacked the same disclosure requirements for

insured and uninsured claims, which could expose that insurer to millions in fraudulent claims,

and the plan altered its contractual rights. *Id.* at 276. That case is inapposite here.

In the Decision and Order, the Court held that "[w]ithout a direct financial stake, Bourff is

not a party in interest and has no right to be heard." Decision and Order at 18. In other words,

unlike that insurer in *Kaiser Gypsum*, Bourff as a stranger to the Debtors' estate, has no obligations,

claims, or financial stake that could be affected by the Plan. Any purported interest is nonexistent

to confer him standing. *See Kaiser Gypsum,* 602 U.S. at 284 (quoting 7 COLLIER ON BANKRUPTCY

¶1109.03.) ("[A] party in interest is 'not intended to include literally every conceivable entity that

may be involved in or affected by the chapter 11 proceedings."). Unlike that insurer in *Kaiser*

*Gypsum*, who had financial obligations directly tied to and affected by the debtors' liabilities and

reorganization plan, Bourff's purported connection is at best based on a misinterpretation of

bankruptcy law, and *Kaiser Gypsum* does not alter this conclusion.

Finally, Bourff contends that the Wind Down Estates' abandonment of the Judgment Lien

revives his interest in the Property and gives him standing in the bankruptcy case. Motion at 5.

However, this argument is incorrect under bankruptcy law. "If the claims sought to be asserted in

the proposed complaint were covered by the Abandonment Order, they cannot now be asserted on

behalf of the Debtor's estate regardless of their merit." *In re Grossinger's Assocs.*, 184 B.R. 429,

432 (Bankr. S.D.N.Y. 1995). The law regarding abandoned assets is clear: "the order of

abandonment is final and bars the claim in question from being asserted by the Trustee or anyone else on behalf of the debtor's estate." *Id.* at 433. Therefore, Bourff's argument regarding the Wind Down Estates' abandonment fails because bankruptcy law cannot create property rights through abandonment, nor transfer an interest to Bourff where none existed before. The Court already addressed the effect of the Wind Down Estates' abandonment under the Lien Clarification Order, Decision and Order at 18, and Bourff fails to show any basis for reconsideration.

### *The Judgment Lien Was Extinguished in the 2018 Foreclosure.*

Bourff argues his status as a former debtor entitles him a surviving interest in the Property after a valid foreclosure. Bourff contends the Court "committed clear error by overlooking the fact the Judgment Lien was an asset of the estate on the [Petition] Date." Motion at 5. Bourff argues that "the only question for the Court to answer is whether the Judgment Lien existed on the [Petition] Date" and contends the writ of *fieri facias* is a "contract" that grants him a direct financial stake in the Property because the asset was abandoned by Wind Down Estates. *Id.* at 4.

The Georgia Plaintiffs counter that even if Bourff claims his standing based on the Judgment Lien that was somehow transferred to the Wind Down Estates, this argument fails because the lien was already extinguished after 2018 Foreclosure. Objection ¶ 23. They state that in Georgia, when the senior lienholder foreclosed on the Property in the 2018 Foreclosure, all junior liens, including the Judgment Lien, were extinguished. *Id.* That means Bourff no longer had any interest in the Property. Therefore, any claim he asserts as being a "successor in interest" to the Debtors is without merit because the Debtors held no interest in the Property as of the Petition Date. They assert that no lien remained for Wind Down Estates to abandon, making Bourff's claim of having standing through the lien untenable. *Id.* ¶ 18. Additionally, the Lien Clarification Order did not restore or revive any previously extinguished liens but simply allowed for the abandonment

of any interest that may have existed, which in this case was none. *Id.* The Court agrees with the Georgia Plaintiffs.

In the Decision and Order, the Court explained: "the Foreclosure Deed extinguished any interest in the Property that Ditech hypothetically held prior to the Petition Date (as Green Tree's successor, in turn as RBS's loan servicer, or otherwise)." Decision and Order at 14. Even if Bourff asserts that the Green Tree Judgment somehow gives him standing, this interest was also extinguished after 2018 Foreclosure. Georgia law is clear that foreclosure sales extinguish all junior liens, including the Green Tree Judgment. In other words, no lien remained for the Wind Down Estates to abandon. The Court has already determined that this foreclosure wiped out any lien Bourff might have had. *Id.* at 14. This issue has been fully adjudicated, and Bourff presents no grounds for reconsideration.

Bourff appears to be asserting that he still owes money to Ditech, even after the 2018 Foreclosure that extinguished the Judgment Lien. Motion at 4. He seems to be asserting that this unpaid debt gives him standing in this bankruptcy case and that the abandonment of the lien or its cancellation under Georgia law somehow reconveyed an interest in the Property to him. *Id.* at 4. This was already addressed by the Court previously and Bourff is not raising any new arguments. Decision and Order at 17.

The 2018 Foreclosure extinguished the Judgment Lien. Under Georgia law, foreclosure on a senior lien wipes out all junior liens, including the one held by Green Tree. At this point, the Judgment Lien no longer existed, meaning no lien could be abandoned or reconveyed to Bourff. *Peretti v. Authentic Brands Grp. LLC*, 33 F.4th 131, 138 (2d Cir. 2022) (a grantor cannot validly "convey more than he owns" (citing *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007))).

19-10412-jlg    Doc 5389    Filed 02/28/25    Entered 02/28/25 15:12:10    Main Document
Pg 20 of 27

And even if Bourff still owed Ditech money after the 2018 Foreclosure, that is irrelevant for reconveyance purposes under GA. CODE ANN. § 44-14-67 (2024).[14] Under this statute, for title or a lien interest to revert to the debtor, the debt must be fully paid to the creditor. Since Bourff has not alleged that he fully paid the debt, there is no legal basis for reconveyance of any lien interest to him. Simply owing money does not trigger reconveyance under Georgia law. *Patel v. J.P. Morgan Chase Bank*, *N.A.*, 757 S.E.2d 460, 462 (Ga. App.) (2014) ("However, as a matter of law, title does not pass back to the grantor in the absence of full payment of the debt" (interpreting GA. CODE ANN. § 44-14-67(a))); *Taylor, Bean & Whitaker Mortg. Corp. v. Brown*, 583 S.E.2d 844, 847 (Ga. 2003) ("[B]ecause the debt that the conveyance was made to secure has not been fully paid, [the appellee] was not entitled to cancellation of the security deed."); *see also Mak v. Argent Mrtg. Co., LLC*, No. 07-02806, 2009 WL 2997916, at *7 (N.D. Ga. Sept. 15, 2009) (holding despite erroneous cancellation of security deed, bank "retained its security interest in the property by operation of GA. CODE ANN. § 44-14-67(a) because the mortgage debt had never been paid"); *accord Poff v. Bank of America, Bank*. No. 08-53493, 2010 WL 5257223, at *3 (Bankr. M.D. Ga. Dec. 17, 2010) (same).

Finally, even if Bourff had paid Ditech in full, this payment would merely satisfy the debt owed to Ditech and would not affect the extinguished Judgment Lien or the foreclosed Property. Once the foreclosure occurred, the Judgment Lien was extinguished, and any payment afterward would simply settle the remaining debt without reviving or affecting the lien or the Property itself. In other words, even if the debt were fully paid, it would not reinstate the Judgment Lien or affect the ownership of the Property, which had already been transferred through foreclosure. *See In re*

---

[14] While not referring to any statutes in his Motion for Reconsideration, previously Bourff cited to GA. CODE. ANN § 44-14-67 as his purported legal authority. Bourff Motion ¶ 25.

*Crawley*, 412 B.R. 777, 783 (Bankr. E.D. Va. 2009) ("Once the properties have gone to foreclosure, any remaining liability would of course be unsecured, with the result that any payment obligation that survived foreclosure would no longer constitute payment on a secured debt.").

To the extent that Bourff argues his Judgment Lien survived the 2018 Foreclosure and vested, or that sale is invalid, or the Georgia court's interpretation of the law is incorrect, the Court declines to entertain this claim. This argument seeks to invalidate the decisions made by the Georgia courts and unwind the foreclosure sale, which is beyond the authority of the Court. The 2018 Foreclosure was finalized before the Petition Date, and Georgia courts have jurisdiction over the validity and effects of this sale. Therefore, "for purposes of this bankruptcy proceeding, the Court is bound by the judgment of foreclosure and cannot reexamine the underlying mortgages." *In re 473 W. End Realty Corp.*, 507 B.R. 496, 504 (Bankr. S.D.N.Y. 2014).

As such, there is no basis for reconsideration, and the Court has already addressed these issues. Decision and Order at 14. Bourff failed to put forth any facts, law, or argument warranting reconsideration of the Court's prior findings that the Property was not part of the Debtors' estate, or that he has any interest in the Debtors' estate.

**The Court Lacks Subject Matter Jurisdiction to Rule on the Merits of Bourff's Motion.**

As a preliminary matter, Bourff forfeited any challenges to the Florida Bankruptcy Case by not raising them in the Bourff Motion. "Arguments raised for the first time on a motion for reconsideration are therefore untimely." *In re Sears Holdings Corp.*, No. 18-23538, 2022 WL 16703174, at *2 (Bankr. S.D.N.Y. Nov. 3, 2022) (internal citations omitted) (citing *Cruz v. Barnhart*, 2006 WL 547681, at *1 (S.D.N.Y. Mar. 7, 2006)). On this basis alone, the Court finds Bourff waived any challenges to the Florida Stay Relief Order.

Nevertheless, even if the Court were to consider the argument, the Court finds that Bourff failed to show any grounds warranting the Court to reconsider its Decision and Order. Essentially, Bourff seeks to inject himself into a real estate transaction that is unrelated to him and challenge the Florida Stay Relief Order, even though he was not a party to that transaction, asserting some rights over the Property now held by parties entirely unconnected to him. Both the Property and Bourff's alleged interests therein are outside of this Court's jurisdiction.[15]

> To establish post-confirmation jurisdiction in bankruptcy court, a party "invoking the bankruptcy court's post-confirmation jurisdiction must satisfy two requirements." First, the matter requires a "close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan . . . ." Second, the chapter 11 plan "must provide for the retention of jurisdiction over the dispute."

*In re Old Carco LLC*, 636 B.R. 347, 355 (Bankr. S.D.N.Y. 2022) (quoting *In re Gen. Media, Inc.*, 335 B.R. at 73); *accord Hosp. & Univ. Prop. Damage Claimants v. Johns Manville Corp. (In re Johns-Manville Corp.)*, 7 F.3d 32, 34 (2d Cir. 1993)). Here, Bourff failed to show both.

### Bourff's Matter Has No Nexus To The Bankruptcy Estate.

Bourff contends the matters he raised that involve the Property "affect the interpretation, consummation, execution, or administration of the confirmed plan therefore have the requisite close nexus for the Court to have subject matter jurisdiction over all the issues raised in the Motion and briefing." Motion at 7. The Georgia Plaintiffs point out that Bourff's "re-hashed arguments" failed to demonstrate the Court overlooked any issue. Objection ¶ 19. Furthermore, they assert that the Court's jurisdiction under the Plan only extends to matters involving property of the estate,

---

[15] Bourff incorrectly argues the Court "only possesses partial subject matter jurisdiction over the proceeding" Motion at 7. In reality, the Court retains jurisdiction to enforce the Plan provisions and injunctions, and while it has authority to address matters closely tied to the Plan's implementation, it lacks subject matter jurisdiction over disputes that do not relate to the estate or its administration. *See* Decision and Order at 16.

which does not include the Property. In that light, they contend that the Court correctly found that it lacks jurisdiction over Bourff's claims.

The Court agrees with the Georgia Plaintiffs. For jurisdiction to be retained, the dispute must have a close nexus with the implementation of the Plan. As the Court previously determined, the Property was never part of the Debtors' estate, and therefore, any post-confirmation disputes regarding it do not affect the Plan or the estate. Bourff had no interest in the Property as of the Petition Date, and the Property was not property of the Debtors' estate as of the Petition Date. The Property was sold at foreclosure nearly a year before the Petition Date. The foreclosure extinguished any junior liens, including the Judgment Lien, effectively terminating any interest Bourff might have had in the Property. As the Court already explained, "the foreclosure sale terminated [debtor's] interest in [his] home." *In re Abbott*, 447 F. App'x 232, 233–34 (2d Cir. 2011) (summary order).

In other words, the Property and matters related to the Property are entirely separate from the Debtors' estate. The sale of the Property before the Petition Date makes it irrelevant to the Plan or the estate. This issue was fully explained, Decision and Order at 14, and Bourff failed to show any basis for reconsideration.

To the extent Bourff argues the existence of "a dispute over whether certain property was an asset of the estate on the [Petition] Date," Motion at 7–8, the Court lacks jurisdiction to make determinations about the Property that was never part of the bankruptcy estate. *See Richmond v. P.B. No. 7, LLC*, No. 14-5957, 2015 WL 805029, at *8 (E.D.N.Y. Feb. 25, 2015) (rejecting a federal appellate court can unwind the sale, taking it out of the hands of a third party and restoring it to the debtor). Since the Property was not part of the Debtors' estate as of the Petition Date, and Bourff had no interest in the Property as of the Petition Date, Bourff's matter does not meet the

necessary nexus. Decision and Order at 13 ("Bourff is not a party in interest because he lacks any relationship with the debtor, its property, or the administration of these proceedings."). Accordingly, the Court finds Bourff failed to set forth new law or facts to show that the Court has subject matter jurisdiction over his matter.

### Bourff's Claims Are Beyond the Court's Retained Jurisdiction.

Bourff contends the Court has subject matter jurisdiction over his Motion because he is a "borrower" as defined by the Third Amended Plan. Bourff argues this Court "specifically retained jurisdiction to decide certain issues post confirmation exactly like the ones presented in the Motion" because the Plan provides for this Court to retain jurisdiction over certain matters and the matter he raises was provided for in the Plan. Motion at 6–7. Bourff also disputes the Florida Bankruptcy Court's *nunc pro tunc* Stay Relief Order and the subsequent real estate transaction involving the Property between Najarian and the Georgia Plaintiffs. Specifically, he insists the Florida Bankruptcy Court's order violated this Court's automatic stay. *Id.* at 9. In addition, Bourff claims this Court relied on the Florida Stay Relief Order without applying the principles of collateral estoppel. *Id.* at 9–10. Finally, he asserts that he did not invoke section 362(k) for damages but rather seeks to have the 2018 Foreclosure declared void. *Id.* at 8–9. He further claims that the Florida Bankruptcy Court violated his due process rights. *Id.* at 7. At its core, Bourff attempts to insert himself into the Post-Foreclosure Transfer between Najarian and the Georgia Plaintiffs, despite having no connection to it. Neither Ditech nor Bourff was a party to that transaction, and the transfer occurred well after the 2018 Foreclosure.

The Georgia Plaintiffs argue that the Court lacks subject-matter jurisdiction over Bourff's claims regarding the Florida Stay Relief Order, because the Property was sold prior to the Petition Date and was not part of the Debtors' estate. Objection ¶ 40. They urge the Court not to relitigate

24

issues which have been thoroughly litigated in the Florida Stay Relief Order and by the Eleventh Circuit. Objection ¶ 44.

Bourff requests relief that is beyond the Court's authority. The Court notes that "once confirmation occurs, the bankruptcy court's jurisdiction shrinks." *In re Gen. Media, Inc.*, 335 B.R. at 73. The *nunc pro tunc* order issued by the Florida Bankruptcy Court validated the 2018 Foreclosure, which occurred in April 2018—before the Petition Date. Additionally, the Limited Warranty Deed recorded in 2020 pertains to the Property, which had already been sold in April 2018. Therefore, none of these decisions or transactions implicate the Court's jurisdiction, as the Property was never part of the Debtors' estate.

Furthermore, this Confirmation Order only pertains to property that is already part of the Debtors' estate, which the Property never was. Bourff is asking the Court to fashion remedies that would impact the Property that was never part of the bankruptcy estate. The power of the Court only extends to "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This Court's authority is "based on its jurisdiction over property of the estate." *In re Prudential Lines Inc.*, 928 F.2d 565, 575 (2d Cir. 1991). As such, the Court is without authority to issue any relief concerning the Florida Bankruptcy Court's actions or the 2018 Foreclosure. The Court already considered and rejected Bourff's arguments regarding the Florida Stay Relief Order, Decision and Order at 15, and there is no new argument or evidence that warrants reconsideration.

 Similarly, Bourff's argument related to section 362(k) fails because the Property has no connection to the bankruptcy estate. The Court's authority is limited to property within the bankruptcy estate, pursuant to section 541(a)(1), and here, the transaction between Najarian and the Georgia Plaintiffs falls outside that jurisdiction. As previously noted, the sale of the Property

as well as any subsequent real estate transactions are wholly independent of both Ditech and Bourff. Therefore, the Court lacks power to fashion remedies under section 362(k). *Matter of Stanndco Devs., Inc.*, 534 F.2d 1050, 1053 (2d Cir. 1976) (holding suits against persons concerning property which is not that of the debtor do not interfere with the reorganization of the debtor's estate and therefore are not enjoinable by the bankruptcy court).

Finally, Bourff's argument regarding collateral estoppel is misplaced. When the Court recognized a valid foreclosure sale in the Decision and Order, the Court acknowledged the legal reality of the foreclosure sale under the Georgia law and the Court simply declared it cannot fashion a relief that Bourff requested. Bourff is attacking the "[Stay Relief Order] as being a void decree and a nullity in this Court." Motion at 10. However, because the requested relief pertains to the Property that was never part of the Debtors' estate, and transaction that is unrelated to him or the Debtors' estate, the Court lacks authority to grant the requested relief by revisiting the Florida Bankruptcy Court's rulings or invalidate real estate transactions involving parties with no connection to the Debtors or their estate. *In re MF Glob. Inc.*, 462 B.R. 36, 39 (Bankr. S.D.N.Y. 2011) (holding bankruptcy courts do not have the power to grant the relief that exceeds their statutory authority).

Accordingly, the Court finds that Bourff has failed to present any new law or facts to show that the Court has jurisdiction over the Bourff's claims or his matters have any relationship with the Debtor, its property, or the administration of these proceedings.

## **CONCLUSION**

Based on the foregoing, the Court denies the Motion.

IT IS SO ORDERED.


Dated: February 28, 2025
New York, New York

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge