**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**NOT FOR PUBLICATION**

-------------------------------------------------------------- x

In re:

Ditech Holding Corporation, *et al.*,

Debtors.[1]

:
:
:
:
:
:
:
:

Case No. 19-10412 (JLG)
Chapter 11

(Jointly Administered)

-------------------------------------------------------------- x

**MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS
TRUSTEE'S SEVENTY-SECOND OMNIBUS OBJECTION WITH RESPECT TO THE
PROOF OF CLAIM FILED BY REBECCA TOMBLIN AND JOANN MEADOWS**

**A P P E A R A N C E S:**

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:     Richard Levin


REBECCA TOMBLIN & JOANN MEADOWS
*Appearing Pro Se*[2]
1102 Crooked Creek Road
Peach Creek, West Virginia 25639

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

[2] As set forth below, Ms. Tomblin appeared pro se at the Sufficiency Hearing on behalf of the Claimants.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### INTRODUCTION[3]

Rebecca Tomblin and Joann Meadows (together, "Claimants") timely filed Proof of Claim

No. 1613 (the "Claim") as a secured claim in the amount of $51,403.00 against Ditech Holding

Corporation (f/k/a Walter Investment Management Corp.) ("Ditech"). The Plan Administrator and

Consumer Claims Trustee jointly filed the Seventy-Second Omnibus Objection (the "Objection")[4]

seeking to disallow proofs of claim, including the Claim, as "No Basis Consumer Creditor

Claims." Ms. Tomblin, acting pro se,[5] submitted a response to the Objection (the "Response").[6]

The Consumer Claims Trustee[7] filed a reply in further support of the Objection (the "Reply").[8] In

substance, the Consumer Claims Trustee contends that the Court should disallow the Claim

because it fails to state a claim for relief against Ditech.

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[4] *Seventy-Second Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims),* ECF No. 3280.

[5] Counsel for Claimants filed the Claim, but Claimants have acted pro se in all subsequent proceedings.

[6] *Response of Rebecca Tomblin,* ECF No. 3434.

[7] On March 24, 2023, the Plan Administrator and Consumer Claims Trustee filed the *Consumer Claims Trustee and Plan Administrator's Joint Omnibus Motion to Reclassify Certain Proofs of Claim and Consumer Claims Trustee's Motion to Estimate for Purposes of Distribution Reserves,* ECF No. 4662. The motion sought to estimate the Claim at $51,403.00 for the purpose of setting a distribution reserve. *Id.,* Ex. A at 3. It also asserted the Claim was improperly filed as a secured claim and sought to classify the Claim as a non-363(o), Unsecured Consumer Creditor Claim, as defined by the Third Amended Plan. *Id.* By order dated May 10, 2023, the Court granted the motion for the requested relief. *Order Granting Consumer Claims Trustee and Plan Administrator's Joint Omnibus Motion to Reclassify Certain Proofs of Claim and Consumer Claims Trustee's Motion to Estimate for Purposes of Distribution Reserves,* ECF No. 4732. Upon the entry of that order, the Plan Administrator lost its interest in the Objection, as the Consumer Claims Trustee is solely responsible for reconciling Consumer Creditor Claims.

[8] *Reply of the Consumer Claims Trustee in Support of the Seventy-Second Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims) with Respect to the Claim of Rebecca J. Tomblin and Joann Meadows (Claim 1613),* ECF No. 5346.

Pursuant to the Claims Procedures Order,[9] Ms. Tomblin's filed Response adjourned the Objection to provide time for the Consumer Claims Trustee to schedule a Sufficiency Hearing on the Claim. At a Sufficiency Hearing, the Court employs the legal standard of review applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Claims Procedures Order ¶ 3(iv)(a). The Court held the Sufficiency Hearing. The Consumer Claims Trustee appeared through counsel and Ms. Tomblin appeared pro se. The Court heard arguments from the parties at the hearing.

The Court has reviewed the Claim, Objection, Response, and Reply, including all documents submitted in support thereof, and has considered the arguments made therein by the parties in support of their positions. In doing so, and in accordance with Rule 12(b)(6), the Court has accepted Claimants' well-pleaded factual allegations as true, and has drawn all reasonable inferences in Claimants' favor. In light of Claimants' pro se status, the Court has liberally construed the Claim and Response to raise the strongest arguments that they suggest.

As explained below, the Claim fails to state a claim to relief against Ditech. Accordingly, the Court sustains the Objection and disallows the Claim.

## <u>JURISDICTION</u>

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[9] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

# BACKGROUND

## The Loan

On or around June 23, 2000, Claimants financed the purchase of a home from Mid State

Trust IV and Jim Walter Homes, Inc. (the "Note").[10] The loan was in the amount of $60,000.00

and carried a thirty-year term with a fixed simple interest rate of eleven percent (the "Purchase

Contract"). The Note is secured by a Deed of Trust (the "Mortgage") on the real property located

at 1102 Crooked Creek Road, Peach Creek, West Virginia 25639 (the "Property"). The Mortgage

was recorded in Logan County, West Virginia, on December 18, 2000.

## The Chapter 11 Cases

On February 11, 2019, Ditech and certain of its affiliates, including Green Tree Servicing

LLC ("Green Tree") (collectively, the "Debtors"), filed petitions for relief under chapter 11 of the

Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession and

---

[10] "On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are 'integral' to the complaint." *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citing *Brass v. American Film Techs.*, 987 F.2d 142, 150 (2d Cir. 1993); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991)). Because Sufficiency Hearings consider consumer claims, often by unrepresented claimants whose claims lack detail or do not attach pertinent supportive documentation, it has been the practice of this Court to consider the Consumer Claims Trustee's documentary submissions together with claims as if they were consolidated. The Court does so here.

Copies of the Origination Documents, including the Note, Mortgage, and Purchase Contract are annexed as Exhibit A to the Reply. The Court takes judicial notice of the Origination Documents annexed to the Reply and considers them herein because they are matters of public record and/or integral to the Claim. *Bellin v. Zucker*, 6 F.4th 463, 472 (2d Cir. 2021) (stating that when ruling on a Rule 12(b)(6) motion to dismiss, courts must consider the entire complaint, including documents incorporated therein by reference and other matters of which a court may take judicial notice); *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 219 (S.D.N.Y. 2023) ("'[A]ny written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference,' as well as any matters of which judicial notice may be taken, are deemed included in the complaint, so the Court may consider them without converting the motion to dismiss into a motion for summary judgment." (quoting *Chambers v. Time Warner, Inc*., 282 F.3d 147, 152 (2d Cir. 2002))); *Press v. Primavera*, 685 F. Supp. 3d 216, 224 (S.D.N.Y. 2023) ("The Second Circuit has made clear that a court may take judicial notice of publicly filed documents . . . ."); *Bloom v. A360 Media LLC*, No. 23-CV-11024, 2024 WL 2812905, at *3 (S.D.N.Y. June 3, 2024) (considering defendant's exhibits on a motion to dismiss because they "provide the entire basis for plaintiff's claims" and are thus integral to the amended complaint).

control of their business and assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[11] The Court extended the General Bar Date for consumer borrowers to June 3, 2019.[12]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, which went into effect on September 30, 2019.[13] The Plan Administrator and Consumer Claims Trustee are fiduciaries under the plan. *See* Third Amended Plan, art. I, §§ 1.130, 1.184, 1.186. The Plan Administrator is charged with winding down, dissolving and liquidating the Wind Down Estates and is provided exclusive authority to object to all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Intercompany Claims. *Id.* art. VII, § 7.1. The Consumer Claims Trustee is responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims. *See id.* art. I, § 1.41. As such, she is exclusively authorized to object to Consumer Creditor Claims. *Id.* art. VII, § 7.1.

## The Claims Procedures Order

Under the Claims Procedures Order, a properly filed and served response to a claim objection, omnibus or otherwise, gives rise to a "Contested Claim." *See* Claims Procedures Order

---

[11] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[12] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[13] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

¶ 3(iv). A Contested Claim is resolved at a hearing, which can be scheduled as either a "Merits Hearing," an evidentiary hearing on the merits of the Contested Claim, or a "Sufficiency Hearing," a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. *Id.* ¶ 3(iv)(a)–(b). At a Sufficiency Hearing, the Court applies the legal standard of review applied to a motion to dismiss under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

## **The Claim**

In their Official Form 410, Proof of Claim, Claimants assert a secured claim against Ditech in the amount of $51,403.00. Claim at 1–2.[14] They list the basis of the Claim as "mortgage loan." *Id*. at 2. As the basis for perfection, Claimants state "See attached Complaint." *Id*. Claimants attach a complaint they filed in the Circuit Court for Logan County, West Virginia against Ditech (the "State Court Complaint"). *Id*. at 5–19. Claimants also attach an Official Form 410A, Mortgage Proof of Claim Attachment, which is incomplete, *id*. at 4, and stipulations executed by Ms. Tomblin and Ms. Meadows, in which they agree not to seek recovery in excess of $74,999.00 in relation to the State Court Complaint, *id*. at 20–21.

## **The State Court Action**

On January 11, 2016, Claimants filed the State Court Complaint, initiating civil proceedings against Ditech (the "State Court Case").[15] On September 7, 2016, an Order to Arbitrate was entered in that action. The State Court Case has since been closed.[16]

---

[14] Page citations are to the PDF page numbers of the Claim.

[15] *Rebecca J. Tomblin and Joann Meadows v. Ditech Financial, LLC*, Case No. CC-23-2016-C-4, Circuit Court of Logan County, West Virginia (Jan. 11, 2016). A copy of the State Court Case docket (the "State Court Docket") is annexed as Exhibit F to the Reply.

[16] The State Court Docket does not reflect whether the arbitration occurred or the outcome of the arbitration if it occurred. At the hearing, Ms. Tomblin advised that she was not aware of an arbitration proceeding.

In the State Court Complaint, Claimants allege that, between December 5, 2004, and May 9, 2007, Mid-State Homes and Walter Mortgage LLC misapplied their Mortgage payments, mishandled their escrow account by applying surplus Mortgage payments to interest rather than the escrow shortage, and caused insurance to be erroneously force-placed on the Property by failing to properly apply the escrow payments. State Court Complaint ¶ 7. Claimants state that Mid-State Homes and Walter Mortgage LLC merged on July 1, 2007, and they subsequently remitted their monthly payments to Walter Mortgage Company. *Id.* ¶¶ 8–9. They allege that between July 1, 2007, and December 31, 2011, Walter Mortgage Company erroneously applied monthly Mortgage payments to insurance rather than principal and interest and generally misapplied Mortgage payments, forcing the account into delinquency. *Id.* ¶ 10.

Claimants assert that on or about March 13, 2012, Walter Mortgage Company merged with Green Tree, and they subsequently remitted their monthly payments to Green Tree. State Court Complaint ¶¶ 11–12. Claimants allege that between January 1, 2012, and August 31, 2015, Green Tree placed approximately thirty payments into an Unapplied Funds Account rather than applying the payments to the Mortgage. *Id.* ¶ 13.

Claimants outline Green Tree's efforts in 2014 and 2015 to collect on the alleged Mortgage delinquencies, such as filing a Notice of Default and Right to Cure, providing written correspondence notifying Claimants of Green Tree's intent to gain possession of the Property, and sending representatives to their home to discuss the delinquencies. *Id.* ¶¶ 14–18. Claimants allege that on November 29, 2014, they spoke with a Green Tree phone representative named "John," and requested a loan modification. *Id.* ¶ 17. They allege that during the phone call, "John" verbally advised them not to make the November 2014, December 2014, and January 2015 Mortgage payments, as they would be deferred to the back of the loan. *Id.* ¶ 19. By April 2015, the deferral

7

had not been processed. *Id.* ¶ 28. Claimants also allege that on January 12, 2015, Green Tree

notified them of loss mitigation options available, after which Claimants requested information

from Green Tree regarding the options, and Green Tree did not respond. *Id.* ¶ 22. On September

24, 2015, Ditech notified Claimants that a foreclosure action would be initiated, *id.* ¶ 35, and on

October 27, 2015, a Notice of Trustee Sale was issued, and the sale was scheduled, *id.* ¶ 37.

　　Based on these allegations, Claimants purport to assert the following causes of action:

(1)　Breach of Contract,
(2)　Breach of Covenant of Good Faith and Fair Dealing,
(3)　Violations of the West Virginia Consumer Credit and Protection Act (the "WVCCPA") for (a) unlawful debt collection,[17] (b) erroneous misapplication of payments,[18] (c) unlawfully placing payments in the unapplied funds account,[19] and (d) communications with consumer represented by counsel,[20]
(4)　Violations of the West Virginia Residential Mortgage Lender, Broker and Servicer Act (the "WVRMLBSA") for (a) advising Claimants not to make payments[21] and (b) knowingly violating the WVCCPA,[22]
(5)　Negligence,
(6)　Declaratory and Equitable Relief, and
(7)　Tort of Outrage.

State Court Complaint ¶¶ 44–82. Claimants seek actual and punitive damages, cancellation of the

debt, statutory damages, an order requiring Ditech to retract all negative credit reporting, and fees

and costs. *Id.* at 14.

---

[17] Claimants allege unlawful debt collection under W Va. Code §§ 46A-2-127, 46A-2-125, 46A-2-128, 46A-2-124, 46A-6-104, 46A-5-105. State Court Complaint ¶ 52.

[18] Claimants allege Ditech violated W Va. Code § 46A-2-115(c). *Id.* ¶ 56.

[19] Specifically, Claimants allege this constitutes a violation of W Va. Code § 46A-2-115(c). *Id.* ¶ 60.

[20] Claimants allege the communications violated W Va. Code §§ 46A-2-128(e), 46A-2-127, 46A-2-125, 46A-2-124, 46A-5-105. *Id.* ¶ 64.

[21] Specifically, Claimants allege the conduct was in violation of W Va. Code § 31-17-8(m)(9). *Id.* ¶ 68.

[22] Claimants allege this is a violation of W Va. Code § 31-17-8(m)(10). *Id.* ¶ 72.

**The Objection**

The Plan Administrator and Consumer Claims Trustee seek entry of an order disallowing the "No Basis Consumer Claims," including the Claim. Objection ¶ 12. They contend that (i) there is insufficient evidence to support the validity of the No Basis Consumer Creditor Claims, in the amount and priority asserted, or (ii) the No Basis Consumer Creditor Claims have no merit. *Id*. ¶ 13, Ex. A at 4.

**The Response**

The Response consists of a letter from Ms. Tomblin addressed to the Court, opposing disallowance and expungement of the Claim. Response at 1.[23] She alleges that the Note has been sold repeatedly, without notice. *Id.* at 2. She complains that each assignee would call and harass her and tell her she was behind on the Mortgage. *Id.* She states that she was not behind on her payments, but sent them "whatever crazy amount they demanded" because they would threaten to foreclose on the Property. *Id.* She contends that after sending the money, her statements would reflect that the payments were unapplied. *Id.* She claims that when she called to inquire why the payments were not applied, the representative would tell her the funds were being held in a lockbox and would be applied to the next statement, but they never were applied. *Id.* She states she has "no clue where the money went." *Id.*

Ms. Tomblin explains that she retained an attorney to help her, and directed Green Tree to contact her attorney, but Green Tree would still call her and harass her. Response at 3. She complains that Green Tree raised her monthly payments from $571.30 to $718.00. *Id.* She asserts that her attorney informed her that "they found a numerous amount of laws and violations that been broken by Green Tree." *Id.*

---

[23] Page citations are to the PDF page numbers of the Response.

She alleges that "[o]nce [Ditech] took over, they began harassing me as well with the same thing." She says she told them to contact her attorney. *Id.* She contends that during the Covid-19 pandemic, Ditech sent representatives to her home eight times. *Id.* She states "I was scared for my life, quite literally because if I would have been exposed by them, I probably wouldn't be here today." *Id.*

She requests compensation for "all the money I have paid into all these companies in the amount of $100,000." Response at 4. She explains "[t]hat would include all the times they have called and harassed me and sent people to my home; even after I asked them to contact my attorney." *Id.* She states Green Tree and Ditech each called her twenty-five times. *Id.* She asserts that "[t]here is no dollar amount that could ever be paid if myself or daughter, or even granddaughters would have been exposed to COVID-19 from the carelessness of Ditech sending people to my home." *Id.*

Finally, Ms. Tomblin explains that her attorney is no longer representing her because he is not admitted to practice law in this Court. *Id.* She states she is now representing herself. *Id.* She explains that she filed the Response after the deadline due her daughter's passing. *Id.* at 5.

In support of the Response, Ms. Tomblin attaches a letter from Claimants' attorney, dated August 20, 2020, addressed to the "Creditor Recovery Trustee." Response at 6. The letter states that counsel for Claimants had previously submitted supporting documentation to the Claims Processing Center and that such documentation was enclosed again on a thumb drive. Ms. Tomblin also includes a letter from counsel dated May 22, 2020, addressed to the Claims Processing Center. *Id.* at 7. The letter states that requested supporting documentation is enclosed, including affidavits by Claimants, the origination file from Ditech, an Account History produced by Ditech, proofs of

payment and hazard insurance, monthly statements and communications to and from Claimants. *Id.* Ms. Tomblin also includes a copy of the Claim and its attachments. *Id.* at 9–29.

### The Reply

Acknowledging that Claimants are proceeding pro se, the Consumer Claims Trustee liberally construes the State Court Complaint as the basis of the Claim. Reply ¶¶ 3, 38. She interprets the Claim as purporting to assert claims for (i) breach of contract, (ii) violations of the Truth in Lending Act ("TILA"), (iii) breach of the covenant of good faith and fair dealing, (iv) violations of the West Virginia Consumer and Credit Protection Act, (v) violations of the West Virginia Residential Mortgage Lender, Broker, and Servicer Act, (vi) the tort of outrage, (vii) negligence, and (viii) a request declaratory relief. The Consumer Claims Trustee argues that Claimants fail to provide any support for their conclusory allegations in support of these claims and that many of the claims are time-barred. *Id.* ¶ 42.

The Consumer Claims Trustee argues that Claimants fail to state a claim for breach of contract because Green Tree's records show that it properly applied Claimants' Mortgage payments. *Id.* ¶¶ 47–51. In support, the Consumer Claims Trustee attaches copies of Green Tree's periodic billing statements for the Loan from January 11, 2012, through August 12, 2015 (the "Billing Statements").[24] She also argues the Debtors had no obligation to offer Claimants a loan modification or take any other action before being entitled to foreclose on the Property upon default, and therefore, did not breach the loan by exercising their discretion to foreclose. *Id.* ¶¶ 52–55. The Consumer Claims Trustee asserts that, absent a valid breach of contract claim, Claimants cannot allege a violation of the covenant of good faith and fair dealing. *Id.* ¶¶ 62–64.

---

[24] The Billing Statements are annexed as Exhibit C to the Reply.

The Consumer Claims Trustee argues that Claimants have failed to state a claim for violation of TILA because the Billing Statements show that the Debtors credited payments to Claimants' account when the payments were received and that any TILA claim is time-barred. *Id.* ¶¶ 56–61. She argues that Claimants have failed to state a claim for unlawful debt collection in violation of the West Virginia Consumer and Credit Protection Act because it is subject to a heightened pleading standard, which Claimants have failed to meet. *Id.* ¶¶ 67–70. She also asserts that Claimants' claims under the statute for misapplication of payments and communication with a consumer represented by an attorney are insufficiently pled or fail as a matter of law. *Id.* ¶¶ 71–82.

The Consumer Claims Trustee contends that Claimants' claims under the West Virginia Residential Mortgage Lender, Broker and Servicer Act fail because the statute is inapplicable. *Id.* ¶ 83. Further, she argues that the claims for the tort of outrage are insufficiently pled, *id.* ¶¶ 96–99, and that Claimants' negligence claim is time-barred, *id.* ¶¶ 100–101. She argues that Claimants' requests for declaratory relief and punitive damages are not available in these Chapter 11 Cases. *Id.* ¶¶ 102–107.

## **LEGAL PRINCIPLES**

A claim properly filed under section 501 of the Bankruptcy Code is "deemed allowed" absent an objection. 11 U.S.C. § 502(a). Such claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). A court may only disallow a claim if a party in interest has objected, and upon notice and hearing, the court finds the claim falls under one of the exceptions found in section 502(b) of the Bankruptcy Code. 11 U.S.C. § 502(b); *In re Manhattan Jeep Chrysler Dodge, Inc.*, 602 B.R. 483, 491 (Bankr. S.D.N.Y. 2019) ("Section 502 of the Bankruptcy Code provides generally that a proof of claim should be allowed except to the

extent it is objectionable on various grounds."). As relevant to the Objection, section 502(b)(1)

provides that a claim may be disallowed to the extent it is "unenforceable against the debtor and

property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To

determine whether a claim is allowable by law, bankruptcy courts look to "applicable

nonbankruptcy law." *In re Residential Cap., LLC*, 513 B.R. 446, 458 (Bankr. S.D.N.Y. 2014)

(citing *In re W.R. Grace & Co.,* 346 B.R. 672, 674 (Bankr. D. Del. 2006)).

The merits of the Claim are not at issue. A Sufficiency Hearing is a non-evidentiary hearing

to address whether a Contested Claim "has failed to state a claim against the Debtors which can

be allowed and should be dismissed pursuant to Bankruptcy Rule 7012." Claims Procedures Order

¶ 3(iv)(a); *see* Fed. R. Bankr. P. 7012(b) (quoting Fed. R. Civ. P. 12(b)) (applying the federal

standard under Rule 12(b)(6) motion to dismiss standard to adversary proceedings). The function

of a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely

to determine whether the complaint itself is legally sufficient." *Havens v. James*, 76 F.4th 103,

116–17 (2d Cir. 2023) (internal quotation marks omitted) (quoting *Festa v. Loc. 3 Int'l Bhd. of

Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990)). Rule 12(b)(6) "ensures that, consistent with Rule

8(a), a complaint includes 'sufficient factual matter, accepted as true, to state a claim to relief that

is plausible on its face.'" *Alharbi v. Miller*, 368 F. Supp. 3d 527, 560 (E.D.N.Y.

2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Accordingly, in applying the legal

standards applicable to Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts

alleged in support of the Claim in light of the pleading standards under Rule 8(a).

Rule 8 calls for a complaint to contain "a short and plain statement of the claim showing

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To satisfy this standard, the complaint

must at a minimum 'disclose sufficient information to permit the defendant to have a fair

understanding of what the plaintiff is complaining about and to know whether there is a legal basis

for recovery.'" *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (quoting *Kittay v. Kornstein*,

230 F.3d 531, 541 (2d Cir. 2000)); *see Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir.

2014) ("[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed

or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above

the speculative level.").

The Rule 12(b)(6) standard requires courts to accept all factual allegations as true and to

draw all reasonable inferences in favor of the non-moving party. *Chambers v. Time Warner, Inc.*,

282 F.3d 147, 152 (2d Cir. 2002). Further, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at

678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding what factual

matter to accept as true, the Court is not required to "credit conclusory allegations or legal

conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir.

2014) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)). A claim is facially plausible

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

a defendant has acted unlawfully." *Id.*

"Where, as here, the [Claim] was filed *pro se,* it must be construed liberally to raise the

strongest arguments it suggests. Nonetheless, [the] *pro se* [Claim] must state a plausible claim for

relief." *Walker v. Schult,* 717 F.3d 119, 124 (2d Cir. 2013) (internal citations, quotation marks, and

brackets omitted); *see also Kimber v. GMAC Mortg., LLC* (*In re Residential Cap., LLC*), 489 B.R.

489, 494 (Bankr. S.D.N.Y. 2013) ("Complaints drafted by *pro se* plaintiffs are to be construed

liberally, but they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the plaintiff is complaining about and . . . whether there is a legal basis for recovery.'" (quoting *Iwachiw v. New York City Bd. of Elections,* 126 F. App'x 27, 29 (2d Cir. 2005) (summary order))).

## ANALYSIS

### Whether Claimants State a Claim Against the Debtors[25]

The Consumer Claims Trustee construes the Claim as purporting to assert each of the causes of action in the State Court Complaint and a claim under TILA. The Court concurs with that assessment, and will interpret the Claim accordingly.

### *Whether Claimants State a Claim for Breach of Contract*

Claimants allege that Ditech failed to properly post payments and misapplied payments. They argue that Ditech failed to process loan modifications and loss mitigation application requests. Further, they assert that Ditech exercised its discretion to foreclose in bad faith.

To state a claim for breach of contract under West Virginia law, Claimants must allege facts demonstrating the following elements: (1) a contract exists between the parties; (2) a defendant failed to comply with a term in the contract; and (3) damage arose from the breach. *See Wince v. Easterbrooke Cellular, Corp*., 681 F. Supp. 2d 688, 693 (N.D. W. Va. 2010). When determining whether a defendant failed to comply with a term in a contract, the court must construe the contract according to the plain and unambiguous contract language. *Wittenberg v. Wells Fargo Bank, N.A*., 852 F. Supp. 2d 731, 749 (N.D. W. Va. 2012).

---

[25] The Purchase Contract is governed by the law of the jurisdiction in which the Property is located, which is West Virginia. Purchase Contract ¶ 16. The State Court Complaint was filed in West Virginia and seeks relief under West Virginia law.

In West Virginia, the statute of limitations for a claim for breach of a written contract is ten years. W. Va. Code § 55-2-6. The Claim was filed in April 2019, therefore any claims for alleged breaches prior to 2009 are time-barred. The Court need not and does not address any of contract claims that arose prior to 2009.[26]

The Purchase Contract is the governing contract. It provides that, commencing with the first payment due date of September 5, 2000, the Claimants were responsible for making monthly payments in the amount of $571.30 on the fifth day of each month for a period of thirty years. Purchase Contract at 1. It further provides that installment payments made more than fifteen days after the scheduled due date are subject to a late fee equal to the lesser of a $10.00 or 5% of the unpaid portion of the installment. *Id.* The Annual Percentage Rate of 11% began accruing thirty days before the due date of the first scheduled installment. *Id.*

Claimants assert that on April 13, 2010, they made a payment in the amount of $1,142.60 for the months of March 2010 and April 2010. State Court Complaint ¶ 10. They claim that Debtors erroneously posted the entire payment against only the April 2010 payment, causing them to remain behind. *Id.* Claimants do not provide proof of payment or a billing statement to confirm what was paid or owed at that time. The payment of $1,142.60 represents two monthly payments

---

[26] Bar by a statute of limitation is typically an affirmative defense, which the defendant must plead and prove. *See John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 133 (2008); Fed. R. Civ. P. 8(c). A defendant does not render a complaint defective by pleading an affirmative defense. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980). Accordingly, the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense. *See Ellul v. Congregation of Christian Bros.,* 774 F.3d 791, 798 n.12 (2d Cir. 2014) ("Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.,* 547 F.3d 406, 425 (2d Cir. 2008))); *accord Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter." (citations omitted)).

under the terms of the Purchase Contract. By April 13, 2010, when made, the payment was already late for both the March 5, 2010, payment (39 days late) and the April 5, 2010, payment (8 days late). However, the facts alleged do not demonstrate how posting the payment to the April 2010 payment would have caused Claimants to "remain behind."

Claimants also assert that on May 27, 2010, they made a payment of $1,341.35 for the months of May and June 2010 and Debtors posted it only to the June payment. State Court Complaint ¶ 10. However, by May 27, 2010, the May payment was already 22 days late and would have incurred a late charge. *See* Purchase Contract at 1; Reply ¶ 48. In any event, Claimants do not state sufficient facts to support their contention that the payment was made or applied in breach of the Purchase Contract.

Claimants generally allege that, between January 1, 2012, and August 31, 2015, more than thirty payments were placed in an Unapplied Funds Account rather than being properly posted to the monthly Mortgage payments. State Court Complaint ¶ 13. However, that claim is belied by the Billing Statements. Claimants made numerous ordinary monthly payments which were properly credited to the Mortgage account. In fact, the Billing Statements show that from April 12, 2012, through January 10, 2013, no late charges or past due amounts appear on the statements and Claimants timely made their monthly payments of $571.30. Billing Statements at 5–14. However, from February 11, 2013, through September 5, 2015, Claimants carried a past due balance and remained delinquent. *Id.* at 15–45. During those periods where the Mortgage was underpaid, Ditech placed funds in the Unapplied Funds Account, but then posted them properly once the next payment was provided. For example, in August of 2014, the unapplied funds balance was $571.92, but after Claimants made three payments in the amount of $435.00 in September of 2014, the

unapplied funds balance decreased to $0.24 in October of 2014. *Id.* at 33–35. The unapplied funds balance never exceeded $621.30 over this period. *Id*. at 25–45; Reply ¶ 50.

Claimants have failed to allege facts demonstrating that Ditech failed to perform under the terms of the Mortgage. They fail to provide any documentation or details of Debtors' alleged non-performance. Instead, the Billing Statements show that Claimants regularly failed to perform under the terms of the Loan for a period of several years and maintained a delinquent balance. *See* Billing Statements at 15–45.[27] They have failed to allege that any damages were caused by Ditech rather than as a result of their own non-performance. The breach of contract claim as to misapplied payments fails to state a claim for relief under West Virginia law.

### Failure to Offer Loan Modification and Process Loan Modification Application

Claimants allege that Debtors breached the Purchase Contract by "failing to process loan modifications and application requests." State Court Complaint ¶ 46. The Court understands this claim is based on an alleged phone conversation between Claimants and a Ditech representative on November 29, 2014, during which the representative allegedly advised that Debtors would defer the November 2014, December 2014, and January 2015 payments. *Id*. ¶ 19. However, Claimants do not point to any contract or contact provision that was breached by Debtors by failing to process their request for loss mitigation.

### Exercising Discretion to Foreclose in Bad Faith

Claimants also allege that Debtors breached the Purchase Contract by "exercising its discretion to foreclose in bad faith." State Court Complaint ¶ 46. However, the Purchase Contract explicitly provides that, in the event of default by the borrower, the servicer may declare the entire

---

[27] Where "the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint." *Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1232–33 (S.D.N.Y. 1994), *aff'd*, 43 F.3d 1458 (2d Cir. 1994) (table decision).

balance of the loan immediately due and owing. Purchase Contract ¶ 5. The Note also contains an

acceleration clause. Reply Ex. A at 7. The Mortgage gives the Debtors an unqualified right to

foreclose in the event of default by the borrower. *Id*. Ex. A at 10. The Billing Statements show that

the loan was frequently in default, therefore, Claimants have not shown that Debtors breached the

loan by exercising their discretion to foreclose.

### *Whether Claimants State a Claim Under TILA*

"The purpose of TILA is 'to assure a meaningful disclosure of credit terms' in order to

improve consumer decision[]making and 'to protect the consumer against inaccurate and unfair'

credit practices." *Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 239 (4th Cir. 2019)

(quoting 15 U.S.C. § 1601(a)). TILA is a remedial consumer protection statute, with the goal of

protecting consumers. *Id*. TILA's implementing regulations are set forth in Regulation Z, 12

C.F.R. Pt. 1026, which is accompanied by official interpretations at 12 C.F.R. Pt. 1026, Supp. I,

Pts. 1–5 (the "Official Interpretations").[28] Under TILA, servicers are required to timely credit

payments on home loans, credit cards, and other forms of open-end credit. 15 U.S.C. §§ 1639f,

1666c(a). Specifically, for closed-end credit transactions secured by a borrower's principal

dwelling, servicers must credit periodic payments to the account as of the date of receipt, except

when a delay in crediting does not result in a finance or other charge. 12 C.F.R. § 1026.36(c)(1)(i).

The Official Interpretation provides that a mortgage servicer must credit a payment to a consumer's

loan account as of the date of receipt. *Id*. § 1026.36, Supp. I, com. 36(c)(1)(i)-1. However, a

mortgage servicer is not required to post the payment to the consumer's loan account on a

particular date; it is only required to credit the payment as of the date of receipt. *Id*. Accordingly,

---

[28] The Official Interpretations may be found at https://www.consumerfinance.gov/rules-policy/regulations/1026/interp-36/.

a servicer that receives a payment on or before its due date may enter the payment on its books or in its system after the payment's due date, "as long as the entry does not result in the imposition of a late charge, additional interest, or similar penalty to the consumer, or in the reporting of negative information to a consumer reporting agency." *Id*. Servicers may also place partial payments into suspense accounts, holding the funds in such accounts until sufficient funds exist to cover an entire periodic payment. *Id*. § 1026.36(c)(1).

The Billing Statements show that the Debtors credited Claimants' Mortgage payments to their account when received. *See generally* Billing Statements. Claimants provide no evidence to the contrary by way of, for example, cancelled checks or mailing receipts. Moreover, they do not allege facts detailing Debtors' delays in crediting Mortgage payments. Rather, the Billing Statements show that Claimants frequently made late payments, which resulted in funds being held in suspense until there was a sufficient balance to cover the entire payment. *See id*. at 15–45. Claimants have failed to allege facts demonstrating that Ditech violated TILA.

Moreover, to state a claim for relief under TILA, Claimants must also show that they detrimentally relied on the Debtors' misrepresentations. *Jaldin v. ReconTrust Co., N.A*., 539 F. App'x 97, 103 (4th Cir. 2013) (unpublished) ("Detrimental reliance is an element of a TILA claim for actual damages." (citing *Turner v. Beneficial Corp*., 242 F.3d 1023, 1026 (11th Cir. 2001))). Claimants have not alleged facts showing that they relied on any alleged misrepresentations.

Finally, an action under the TILA "may be brought . . . within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Each of the alleged payments which Claimants contend were not applied properly were made between 2004 and 2016. The Claim was filed in April 2019, at least three years after the last of the alleged violations occurred. Accordingly, any claims under TILA for misapplication of payments would be time-barred.

### *Whether Claimants State a Claims for Breach of the Covenant of Good Faith and Fair Dealing*

Claimants allege that Debtors violated the implied covenant of good faith and fair dealing by misapplying Mortgage payments and attempting to collect on a debt that was not owed. They also seem to allege that Debtors breached the covenant of good faith and fair dealing by exercising their discretion to foreclose in bad faith. However, in West Virginia, a claim for breach of the implied covenant of good faith and fair dealing is not a stand-alone cause of action. It does not exist absent a valid claim for breach of contract. *See Evans v. United Bank, Inc*., 235 W. Va. 619, 627 (W. Va. 2015) (citing *Powell v. Bank of Am., N.A*., 842, F. Supp. 2d 966, 981 (S.D. W. Va. 2012)); *accord Wittenberg v. Wells Fargo Bank, N.A*., 852 F. Supp. 2d 731, 750 (N.D. W. Va. 2012). As such, Claimants' failure to adequately plead a breach of contract claim as to the allegedly misapplied payments precludes any claim for breach of the implied covenant of good faith and fair dealing.

### *Whether Claimants State a Claim for Violation of the WVCCPA*

Claimants assert that Debtors misrepresented delinquencies on the Mortgage account and attempted to collect a debt that Claimants did not owe, in violation of numerous provisions of the West Virginia Consumer and Credit Protection Act. State Court Complaint ¶¶ 51–55. The purpose of the WVCCPA is to "protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue for relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action." *State ex. Rel McGraw v. Scott Runyan Pontiac-Buick, Inc*., 461 S.E.2d 516, 523 (W. Va. 1995). The WVCCPA should be construed liberally in favor of the consumer. *Dunlap v. Friedman's Inc*., 582 S.E.2d 841, 846 (W. Va. 2003).

### W. Va. Code § 46A-2-127

Under the WVCCPA, debt collectors are prohibited from using fraudulent, deceptive, or misleading representations to collect or attempt to collect claims or information concerning consumers. W. Va. Code § 46A-2-127. Claimants' allegation that Debtors misrepresented the amount owing on the Loan amounts is a claim of fraud which is subject to the heightened pleading standards required for fraud claims. *See Fisher v. APP Pharms., LLC*, No. 08-CV-11047, 2011 WL 13266819, at *6 n.8 (S.D.N.Y. Feb. 28, 2011) ("The particularity requirement of Federal Rule 9(b) applies to state law claims of fraud." (citing *Eternity Global Master Fund Ltd. v. Morgan Guaranty Tr. Co.*, 375 F.3d 168, 186–87 (2d Cir. 2004))). The heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)") applies to "allegation[s] that [have] the substance of fraud," and not simply to "causes of action or elements of fraud." *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 629 (4th Cir. 2008).

Under West Virginia law, the essential elements of a fraud claim are "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that the plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." *Horton v. Tyree*, 104 W. Va. 238, 242 (W. Va. 1927). In "alleging fraud . . . the circumstances constituting fraud a party shall state with particularity the circumstances constituting fraud . . . ." W.Va. R. Civ. P. 9(b).

Claimants allege that the Debtors misrepresented alleged delinquencies regarding their Mortgage account, including an escrow shortage, and then subsequently notified Claimants that their Mortgage was in arrears as a result of failure to pay. State Court Complaint ¶ 51. However, the factual allegations preceding the causes of action listed in the State Court Complaint span a period of twelve years. Claimants' complaints broadly include misapplication of payments,

erroneous accounting of escrow reserves, and a verbal offer of a deferral that was never consummated. To the extent Claimants seek relief under W. Va. Code § 46A-2-127, they fail to allege their claim with the specificity required in pleading a fraud claim under state or federal law.

Even so, Claimants' allegations also fail as a matter of law. West Virginia courts have held that where a mortgage servicer provides periodic statements as required by federal law, errors on those statements will not necessarily amount to violations of § 46A-2-127. *See Perrine v. Branch Banking & Trust Co.*, No. 2:17-cv-70, 2018 WL 11372226, at *5 (N.D. W. Va. Sept. 25, 2018) (holding billing statements were not "false representations" under § 46A-2-127 because they were mailed "in an effort to comply with federal and state law" and even if the statements were incorrect, BBT's conduct was not "fraudulent, deceptive or misleading"); *Rice v. Green Tree Servicing, LLC*, No. 3:14-CV-93, 2015 WL 5443708, at *12 (N.D. W. Va. Sept. 15, 2015) (holding that the inclusion of misinterpreted charges on periodic billing statements did not amount to a false misrepresentation). Claimants interpret Debtors' attempts at collecting on the Mortgage debt between 2004 and 2016 as multiple incidents of misrepresentation. However, as evidenced by the Billing Statements, it is not clear that Debtors erroneously misapplied payments at all, much less misrepresented amounts owed. Even if Claimants disagreed with the arrears or escrow accounting, they cannot sustain a claim for misrepresentation if Debtors were simply complying with federal law in keeping Claimants apprised of the monthly account status.

### W. Va. Code §§ 46A-2-124, 46A-2-125, 46A-2-128

Claimants' remaining WVCCPA claims are insufficiently pled. The WVCCPA prohibits debt collectors from unreasonably oppressing or abusing any person in connection with the collection of a debt. W. Va. Code § 46A-2-125. Oppressive behavior is defined under the statute as use of profane or obscene language, phone harassment, or calling any person more than thirty

23

times per week at unusual times designed to annoy or threaten. Additionally, debt collectors may not use threats or coercion in connection with the attempted collection of a debt. W. Va. Code § 46A-2-124. Examples of prohibited conduct include threats of violence, false accusations, or threats to humiliate a debtor. *See id*. Further, under the WVCCPA, unconscionable means may not be employed in connection with the collection of any debt. W. Va. Code § 46A-2-128. However, Claimants do not allege any collection attempts that fall under these categories or identify any prohibited behavior engaged in by Ditech.

### W. V. Code §§ 46A-5-105, 46A-6-104

Under the WVCCPA, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are prohibited. W. Va. Code § 46A-6-104. Claimants allege violations of this statute, but they do not identify which subsection of this lengthy statute was allegedly violated. *See* State Court Complaint ¶ 52. Claimants also list section 46A-5-105 on the State Court Complaint, but do not explain its application. *See id*. The statute provides that willful violations of the WVCCPA may permit the cancellation of the debt where it is not secured by a security interest. W. V. Code § 46A-5-105. Claimants list the Claim as a debt secured by a security interest in the Property, and therefore, this statute is not applicable. Claimants fail to state a claim for relief under section 46A-5-105 of the West Virginia Code.

### W. Va. Code § 46A-2-115(c)

Finally, Claimants assert that Debtors erroneously posted payments in order to create an "alleged" delinquency to the amount due or owing under section 46A-2-115(c) of the West Virginia Code. State Court Complaint ¶ 56. Claimants misplace their reliance on this statute. Their allegation that Debtors erroneously misapplied payments for the purpose of creating an artificial delinquency is actually a fraud claim, subject to the heightened pleading standards discussed

above. The statute relates to limitations on default charges in connection with installment payment

contracts for consumer loans. Although the statute requires payments to be credited upon receipt

against payments due, it also provides the following: "partial amounts received during the period

set forth in subdivision (3) subsection (b) of this section do not create an automatic duty to reinstate

and may be returned by the creditor. Default charges shall be accounted for separately. Those

recoverable charges set forth in said subsection arising during the period described therein may be

added to principal." W. Va. Code § 46A-2-115(c).

Claimants additionally assert that the placement of payments into an Unapplied Funds

Account rather than posting them to the account is a violation of W. Va. Code § 46A-2-115(c).

State Court Complaint ¶ 60. However, based on the Billing Statements, and for the reasons

discussed in the prior section, Claimants fail to state a claim for relief under this provision.

### *Whether Claimants State a Claim for Violation of the WVRMLBSA*

**W.Va. Code § 31-17-8(m)(9)**
**Alleged Verbal Offer of Deferral**

Claimants allege damages under the West Virginia Residential Mortgage Lender, Broker

and Servicer Act based on Debtors' alleged verbal offer of a deferral on or around November 2014.

State Court Complaint ¶ 68–75. Specifically, Claimants allege Debtors violated section 31-17-

8(m)(9) of the West Virginia Code, which prohibits lenders from advising borrowers not to make

timely payments. *Id.* ¶¶ 68–71. However, the statute specifically confines the prohibition to

advising or recommending against making timely payments during the loan closing or refinancing

process. W.Va. Code § 31-17-8(m)(9) ("In making any primary or subordinate mortgage loan, a

licensee may not, and a primary or subordinate mortgage lending transaction may not, contain

terms which . . . Advise or recommend that the consumer not make timely payments on an existing

loan preceding loan closure of a refinancing transaction . . . ."). This statute is thus inapplicable to Claimants' claim.

The Consumer Claims Trustee also analyzes the verbal offer of a deferral as a fraud claim under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601–2617 ("RESPA"). Claimants do not allege that the Debtors violated RESPA. However, their allegations are insufficient to support a claim of fraud under RESPA.

RESPA applies to "federally related mortgage loan[s]," a term that includes loans secured by a lien on residential real estate "designed principally for the occupancy of from one to four families," for which the lender is federally regulated or has deposits or accounts insured by the federal government. 12 U.S.C. § 2602(1)(A)–(B). That includes loans "secured by a first or subordinate lien on residential real property." 12 C.F.R. §1024.2(b). The Mortgage is secured by a lien on the Property and is thus subject to RESPA's coverage.

RESPA imposes various duties on mortgage loan servicers. 12 U.S.C. § 2605. RESPA's implementing regulations, collectively known as "Regulation X," are set forth in 12 C.F.R. §§ 1024.1–1024.41. Under Regulation X, mortgage servicers are required to maintain policies and procedures that enable them to manage borrower loans transparently and effectively. 12 C.F.R. § 1024.38. Regulation X also governs loss mitigation procedures, which is a process mortgage servicers and borrowers may use to avoid foreclosure.

Loss mitigation procedures are triggered by the receipt of a loss mitigation application. 12 C.F.R. § 1024.41. Although borrowers may seek relief for violations of section 1024.41, nothing in the section imposes a duty on servicers to provide borrowers with any specific loss mitigation option. *Id.* § 1024.41(a); 12 U.S.C. § 2605(f). A servicer has flexibility to establish its own application requirements and to decide the type and amount of information it will require from

borrowers applying for loss mitigation options, but the term "application" is to be construed "expansively." *See* Official Interpretations of Reg. X § 1024.41(b)(1)-2. *See also* Section-by-Section Analysis, § 1024.41(b), 78 Fed. Reg. 10,696, 10,825 (Feb. 14, 2013) ("Because a servicer must exercise reasonable diligence in making a loss mitigation application complete, the Bureau believes appropriate communication with a borrower that expresses an interest in a loss mitigation option is to clarify the borrower's intention regarding the submission and to obtain information from the borrower to make a loss mitigation application complete."). An application may be oral, however, in order to be construed as an "application" under the rules, the borrower must express an interest in seeking any form of foreclosure avoidance, and the borrower must provide some information that a servicer would normally use in determining whether a borrower qualified for a loss mitigation option. *See* Official Interpretations of Reg. X § 1024.41(b)(1)-3, *McKerracher v. Green Tree Servicing, LLC*, 2015 WL 9942621, at *5 (W.D. Mich. Dec. 17, 2015) (servicer had duty under § 1024.41(b)(2) to respond to borrower's requests for assistance made in telephone calls to servicer). A servicer must comply with section 1024.41(i) for a borrower's loss mitigation application, "unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application." 12 C.F.R. § 1024.41(i).

Claimants assert that in November of 2014 they requested a loan modification and were offered a deferral. State Court Complaint ¶¶ 17–18. They also allege that Green Tree notified them of loss mitigation options available in January of 2015. *Id*. ¶ 22. They do not allege that they submitted a loss mitigation application or the requisite information for a loss mitigation application. They also do not allege that the Debtors failed to comply with RESPA's loss

mitigation procedures. Therefore, Claimants' complaints about the November 2014 loss mitigation communications are not a violation of RESPA.

Additionally, Claimants fail to state a claim for fraud based on the verbal offer of a deferral. In analyzing a fraud claim, the court must "distinguish between actual fraud and artfully pleaded breach of contract claims" as a claim for fraud "cannot be predicated on statements which are promissory in their nature, or constitute expressions of intention, and an actionable representation cannot consist of mere broken promises, unfulfilled predictions or expectations, or erroneous conjectures as to future events." *White v. National Steel Corp.*, 938 F.2d 474, 478 (4th Cir. 1991) (quoting *Janssen v. Carolina Lumber Co.*, 73 S.E.2d 12, 17 (W. Va. 1952)). However, there is an exception to the bar on promissory fraud when "the non-existence of the intention to fulfill the promise at the time it was made is shown." *Croston v. Emax Oil Co.,* 195 W.Va. 86, 464 S.E.2d 728, 732 (W. Va. 1995).

Claimants allege that the Debtors' representative, "John," offered them a deferral over the phone, which the Debtors failed to provide. State Court Complaint ¶¶ 19, 28. They assert that Green Tree did not grant a deferral because Claimants failed to contact Green Tree within a week of the requested deferral. *Id*. ¶ 28. Claimants do not allege that "John" or the Debtors did not intend to grant a deferral if Claimants called back within one week. As such, these allegations are, in essence, complaints of a broken promise, and cannot serve as the basis of a fraud claim. Moreover, Claimants do not allege facts demonstrating that this claim fails within the exception to the bar on promissory fraud. Without more, Claimants do not sufficiently plead a fraud claim with respect to the verbal deferral.

**W.Va. Code § 31-17-8(m)(10)**
**Knowing Violation of Applicable State or Federal Law**

Claimants additionally assert Ditech violated section 31-17-8(m)(10) of the West Virginia Code, State Court Complaint ¶ 72, which prevents lenders from knowingly violating "any provision of any other applicable state or federal law regulating primary or subordinate mortgage loans, including, without limitation, § 46A-1-1 *et seq.* of this code," W.V. Code § 31-17-8(m)(10). Claimants do not identify which provision of state or federal law Ditech allegedly violated, nor do they allege such violation was a "knowing" violation. Moreover, as discussed above, Claimants have not demonstrated that the Debtors violated RESPA, and thus, a RESPA violation cannot serve as the basis of their claim under section 31-17-8(m)(10). They have failed to allege facts sufficient to state a claim for violations of this broad section and do not establish its applicability to the cause of actions stated in their Claim.

Moreover, violations of section 31 are treated as misdemeanors, and convictions may result in up to six months in county jail or up to $500 in fines. W. Va. Code § 31-17-18. Claimants have not sought such damages in the Claim nor do the amounts requested correspond with such fine. Claimants have failed to allege sufficient facts to state a claim for violation of the WVRMLBSA.

*Whether Claimants State a Claim for the Tort of Outrage*

To state a claim for the tort of outrage under West Virginia law, the following elements must be alleged: (1) the wrongdoer's conduct was intentional or reckless, (2) the conduct was outrageous and intolerable such that it offends generally accepted standards of decency and morality, (3) there is a causal connection between the conduct and the emotional distress, and (4) the emotional distress was severe. *Harless v. First Nat'l. Bank in Fairmont*, 169 W.Va. 673, 694–695 (W. Va. 1982). The tort of outrage is synonymous with intentional or reckless infliction of emotional distress. *Williamson v. Harden*, 585 S.E. 2d 369, 373 (W. Va. 2003). Thus, a defendant's

conduct "must be more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct." *Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381, 383 (10th Cir. 1988). The liability for such conduct "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Travis v. Alcon Laboratories, Inc.*, S.E. 2d 419, 425–426 (W. Va. 1998). Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question of fact. *Id.* at 428.

In the State Court Complaint, Claimants allege "[Ditech's] actions as set forth above are sufficiently egregious to constitute the tort of outrage." State Court Complaint ¶ 82. To the extent Claimants are alleging that Ditech intentionally conducted erroneous accounting on the Mortgage and then proceeded to collect on it, they fail to provide any support for the contention that Ditech's conduct was reckless or intentional. Claimants also fail to demonstrate that they made their payments in a timely manner, making it impossible to attribute any reasonable causal connection between Ditech's collection attempts and their alleged emotional distress. In sum, Claimants fail to allege what conduct was intentional or reckless, how it was outrageous and intolerable, or that it resulted in any sort of emotional distress. They have failed to state a claim for the tort of outrage.

### *Whether Claimants State a Claim for Negligence*

Under West Virginia law, to establish a claim for negligence, Claimants must allege that Debtors (1) owed a duty to Claimants, (2) negligently breached that duty, and (3) that Claimants' injuries were proximately caused by Debtors' conduct. *C.C. and J.C. v. Harrison Co. Board of Education*, 859 S.E. 2d 762, 771 (W. Va. 2021). In West Virginia, negligence may be averred generally. W. Va. R. Civ. P. 9(b). Claimants contend Debtors owed them a duty to provide accurate information regarding the Loan and accurate notice of their payments, that Debtors misrepresented amounts due, and that such misrepresentations were negligent, reckless, willful or wanton. State

Court Claim ¶¶ 76–79. However, in West Virginia, the statute of limitations on a claim for negligence is two years. W. Va. Code § 55-2-12. Claimants' general claims for negligence occurred prior to the State Court Complaint that was filed in 2016, and therefore, their claims for negligence are time-barred.

### Whether Claimants Are Entitled to Declaratory Relief

In the State Court Complaint, Claimants ask the court to declare that the Debtors are equitably estopped from collecting interest and late fees unless and until Debtors begin to properly credit Claimants' payments. State Court Complaint ¶¶ 80–81. However, as discussed above, the Billing Statements demonstrate that Debtors properly credited Claimants' payments and otherwise complied with the terms of the Loan.[29] Moreover, such a request is beyond the scope of the Claims Procedures and outside the power of the bankruptcy court. Under section 101(5) of the Bankruptcy Code, a claim is a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment. 11 U.S.C. § 101(5)(B).

### Whether Claimants Are Entitled to Punitive Damages

Claimants request punitive damages in the State Court Complaint. State Court Complaint at 14. However, even if Claimants had properly pled damages, Claimants are not entitled to recover punitive damages from the Debtors. Punitive damages are available to claimants only after all general unsecured claims are paid in full. *See In re Motors Liquidation Co.*, 590 B.R. 39, 63 (S.D.N.Y. 2018) ("Specifically, the Bankruptcy Code provides for full repayment of the claims of general unsecured creditors before any punitive damages may be paid."). Under the Plan,

---

[29] Additionally, as the Consumer Claims Trustee points out, the Logan County West Virginia Property Records indicate that the Property was sold on June 25, 2024. A copy of the search of the Logan County Property Records is attached to the Reply as Exhibit G.

unsecured creditors in these Chapter 11 Cases will receive a pro rata share, so punitive damages

are not available.

## **<u>CONCLUSION</u>**

Based on the foregoing, the Court sustains the Objection and disallows Claim No. 1613.

IT IS SO ORDERED.

Dated:  February 28, 2025
         New York, New York

<u>/s/</u> *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge