**UNITED STATES BANKRUPTCY COURT**                    NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
In re:                                         :
                                               :    Case No. 19-10412 (JLG)
Ditech Holding Corporation, *et al.*,          :    Chapter 11
                                               :
                                               :    (Jointly Administered)
                                Debtors.[1]    :
------------------------------------------------------------ x

**MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS
TRUSTEE'S THIRTY-FOURTH OMNIBUS OBJECTION WITH RESPECT TO THE
PROOF OF CLAIM FILED BY JESS GUZY AND SYLVIA GUZY**

<u>A P P E A R A N C E S</u> :

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:    Richard Levin


JESS GUZY & SYLVIA GUZY
*Appearing Pro Se*[2]
433 Cottonwood Lane
Schaumburg, Illinois 60193

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

[2] Mr. Guzy and Mrs. Guzy are acting pro se herein. Mr. Guzy appeared and was heard at the Sufficiency Hearing on behalf of both Claimants.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[3]

Jess Guzy and Sylvia Guzy (together, "Claimants") are acting pro se herein. They timely

filed Proof of Claim No. 23544 (the "Claim") as an unsecured claim in an undetermined amount

against Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) ("Ditech"). The

Consumer Claims Trustee filed the Thirty-Fourth Omnibus Objection (the "Objection")[4] seeking

to disallow proofs of claim, including the Claim, that do not provide sufficient information or

documentation to substantiate liability on the part of Ditech.

Claimants submitted their First Response[5] and Second Response[6] (together, the

"Responses")[7] to the Objection. The Consumer Claims Trustee filed a reply in further support of

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and Third Amended Plan, as applicable.

[4] *Consumer Claims Trustee's Thirty-Fourth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims),* ECF No. 2959.

[5] *Response of Jess and Sylvia Guzy to the Consumer Claims Trustee's Thirty-Fourth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims) (Claim No. 23544)*, ECF No. 5335 at 4–10. Page citations are to the PDF page numbers of the First Response.

[6] *Response of Jess Guzy and Sylvia Guzy*, ECF No. 5336.

[7] During the Sufficiency Hearing, the Court authorized Claimants to supplement the Responses to include additional documents in support of the Claim that they were not able to locate until the day before the hearing. *See Minutes of Proceeding*, ECF No. 5398. Mrs. Guzy submitted the documents to the Court (the "Supplemental Documents"). *See Statement Filed by Sylvia C Guzy*, ECF No. 5399. On March 3, 2025, the Consumer Claims Trustee responded to the Supplemental Documents. *Supplemental Response of the Consumer Claims Trustee to Supplemental Filing by Jess A. Guzy and Sylvia Guzy (Claim 23544)*, ECF No. 5393. The Court has considered the information and matters set forth in the Supplemental Documents and the Trustee's response to the Supplemental Documents in reaching its determination herein.

the Objection (the "Reply").[8] In substance, the Consumer Claims Trustee contends that the Court should disallow the Claim because it fails to state a claim for relief against Ditech.

Pursuant to the Claims Procedures Order,[9] Claimants' filed Responses adjourned the Objection to provide time for the Consumer Claims Trustee to schedule a Sufficiency Hearing on the Claim. At a Sufficiency Hearing, the Court employs the legal standard of review applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Claims Procedures Order ¶ 3(iv)(a). The Court held the Sufficiency Hearing. The Consumer Claims Trustee appeared through counsel and Mr. Guzy appeared pro se. The Court heard argument from the parties at the hearing.

The Court has reviewed the Claim, Objection, Responses, and Reply, including all documents submitted in support thereof, and has considered the arguments made by the parties in support of their positions. In doing so, and in accordance with Rule 12(b)(6), the Court has accepted Claimants' well-pleaded factual allegations as true, and has drawn all reasonable inferences in Claimants' favor. In light of Claimants' pro se status, the Court has liberally construed the Claim and Responses to raise the strongest arguments that they suggest.

As explained below, the Claim fails to state a claim to relief against Ditech. Accordingly, the Court sustains the Objection and disallows the Claim.

---

[8] *Reply of the Consumer Claims Trustee in Support of the Consumer Claims Trustee's Thirty-Fourth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor Claims) with Respect to the Claim of Jess A. Guzy and Sylvia Guzy (Claim 23544)*, ECF No. 5350.

[9] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

### The Loan

On or around July 29, 2005, Jess A. Guzy and Sylvia C. Guzy executed a promissory note in favor of ABN AMRO Mortgage Group, Inc. ("ABN") in the amount of $359,650.00 (the "Note"). The Note is secured by a mortgage (the "Mortgage," together with the Note, the "Loan")[10] on the real property located at 433 Cottonwood, Schaumburg, Illinois 60193 (the "Property"). The Mortgage was recorded in Cook County, Illinois, on August 10, 2005.

---

[10] "On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are 'integral' to the complaint." *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citing *Brass v. American Film Techs.*, 987 F.2d 142, 150 (2d Cir. 1993); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991)). Because Sufficiency Hearings consider consumer claims, often by unrepresented claimants whose claims lack detail or do not attach pertinent supportive documentation, it has been the practice of this Court to consider the Consumer Claims Trustee's documentary submissions together with claims as if they were consolidated. The Court does so here.

A copy of the Mortgage is annexed as Exhibit A to the Reply. The Court takes judicial notice of the Mortgage, and the other documents annexed to the Reply, and considers them herein because they are matters of public record and/or integral to the Claim. *Bellin v. Zucker*, 6 F.4th 463, 472 (2d Cir. 2021) (stating that when ruling on a Rule 12(b)(6) motion to dismiss, courts must consider the entire complaint, including documents incorporated therein by reference and other matters of which a court may take judicial notice); *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 219 (S.D.N.Y. 2023) ("'[A]ny written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference,' as well as any matters of which judicial notice may be taken, are deemed included in the complaint, so the Court may consider them without converting the motion to dismiss into a motion for summary judgment." (quoting *Chambers*, 282 F.3d at 152 )); *Press v. Primavera*, 685 F. Supp. 3d 216, 224 (S.D.N.Y. 2023) ("The Second Circuit has made clear that a court may take judicial notice of publicly filed documents . . . ."); *Bloom v. A360 Media LLC*, No. 23-CV-11024, 2024 WL 2812905, at *3 (S.D.N.Y. June 3, 2024) (considering defendant's exhibits on a motion to dismiss because they "provide the entire basis for plaintiff's claims" and are thus integral to the amended complaint).

On December 30, 2014, CitiMortgage, Inc. Successor by Merger to ABN assigned the Mortgage to Green Tree Servicing LLC ("Green Tree").[11] On February 26, 2018, Ditech Financial LLC (f/k/a Green Tree) assigned the Mortgage to New Residential Mortgage LLC ("New Rez") but retained servicing the Note and Mortgage until servicing was transferred about a year later.[12]

## The Chapter 11 Cases

On February 11, 2019, Ditech and certain of its affiliates (collectively, the "Debtors"), filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession and control of their business and assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[13] The Court extended the General Bar Date for consumer borrowers to June 3, 2019.[14]

On September 26, 2019, the Debtors confirmed their Third Amended Plan, which went into effect on September 30, 2019.[15] The Consumer Claims Trustee is a fiduciary under the plan. *See* Third Amended Plan, art. I, § 1.41. The Consumer Claims Trustee is responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed

---

[11] A copy of the assignment to Green Tree is annexed as Exhibit B to the Reply.

[12] A copy of the assignment to New Rez is annexed as Exhibit C to the Reply.

[13] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[14] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[15] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

Consumer Creditor Claims. *See id.* art. I, §§ 1.36–1.38. As such, she is exclusively authorized to object to Consumer Creditor Claims. *Id.* art. VII, § 7.1.

### The Claims Procedures Order

Under the Claims Procedures Order, a properly filed and served response to a claim objection, omnibus or otherwise, gives rise to a "Contested Claim." *See* Claims Procedures Order ¶ 3(iv). A Contested Claim is resolved at a hearing, which can be scheduled as either a "Merits Hearing," an evidentiary hearing on the merits of the Contested Claim, or a "Sufficiency Hearing," a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. *Id.* ¶ 3(iv)(a)–(b). At a Sufficiency Hearing, the Court applies the legal standard of review applied to a motion to dismiss under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

### The Claim

Claimants filed their Official Form 410, Proof of Claim, as an unsecured claim in an undetermined amount on the basis of "loan servicing." Claim at 1–2.[16] Under "Current Creditor" they list "New Rez." *Id*. at 1.

In support of the Claim, Claimants annex an undated letter, addressed "To whom it may concern," and signed by Mr. Guzy. *Id*. at 4. Mr. Guzy states that Ditech offered a "recast" on the Mortgage "from a home modification loan." *Id*. He claims that they sent "all the papers back immediately" but did not hear from Ditech. *Id*. Mr. Guzy says Claimants called Ditech and were told that Ditech did not receive the papers, so Claimants faxed the papers to Ditech. *Id*. He asserts that Ditech confirmed receipt of the faxed papers, but did not process them because one of the pages was not legible. *Id*.

---

[16] Page citations are to the PDF page numbers of the Claim.

Mr. Guzy says that Claimants sent the papers in a third time via fax and were told they would be processed. *Id*. He states that Claimants received a letter from Ditech the following week notifying them that the Loan was being transferred to New Rez (the "Servicing Transfer Letter").[17] *Id*. Mr. Guzy says Claimants were told they would have to work with New Rez to process the recast due to the Loan transfer, but that Ditech would send everything over to New Rez. *Id*.

Claimants argue that "[Ditech] basically knew they were selling the [L]oan and did not care to help us lower our payment per the recast offer they had extended to us." *Id*. They state that they are still trying to complete the recast with New Rez. *Id*. Claimants contend that they are currently paying $400.00 more per month "because [Ditech] could not service our loan properly." *Id*. They complain that they have been overpaying since February of 2019 and request that Ditech reimburse them "for poor serving of our loan." *Id*.

Claimants annex a copy of an MHA Recast Offer Letter they received from Ditech (the "Recast Offer Letter"). Claim at 5–7. The letter is dated February 1, 2019, and states that Claimants successfully completed a mortgage modification through the Home Affordable Modification Program ("HAMP"). *Id*. at 5. It explains that Claimants earned performance incentives through HAMP, which were applied to reduce the outstanding principal balance of the Mortgage and would allow Claimants to pay off the remaining balance earlier. *Id*. The letter then provides Claimants the option to lower their monthly payment through a one-time recast, or re-amortization, of the interest-bearing portion of the Loan account (the "Recast Offer"). *Id*. It explains that if the Claimants did not pay off their account early, under the recast they would pay an additional

---

[17] Claimants do not attach the Servicing Transfer Letter to any of their pleadings, and it is not available in the public record. However, their Claim relies on the transfer of servicing to establish their alleged injuries, and it is integral to their complaints. *See Chambers,* 282 F.3d at 153 (court may consider extraneous documents of which plaintiff already has knowledge and/or possession, so long as plaintiff relied on such documents in bringing suit). A copy of the Servicing Transfer Letter is annexed as Exhibit D to the Reply.

$35,379.53 in interest over the life of the Loan. *Id*. at 6. The letter also reminds Claimants that, under their modification, their interest rate was scheduled to increase to 3.625% on May 1, 2019. *Id*. at 7. It provides that acceptance of the Recast Offer was conditioned on the following:

- You must sign and return this recast-offer letter by March 03, 2019.
- Eligible customers participating in the optional recast will receive a Recast Agreement that will formally change the principal and interest payment. This document is time sensitive and usually mailed out within 90 days from receipt of the signed recast offer letter.
- To be eligible for the optional recast, customers must be current and must remain in good standing. Additionally, the incentive payment must have been received.

*Id*. at 7. At the top of the Recast Offer Letter, Claimants wrote "Mailed 2/11/19." *Id*. at 5.

Claimants attach a letter from Ditech, dated March 11, 2019. Claim at 8. The letter included a copy of a proposed Agreement for Modification of a Mortgage (the "Proposed Recast Agreement"). *Id*. at 9–10. The letter required Claimants to remain in good standing under the Mortgage to qualify for the offer. *Id*. at 8. It also required Claimants to sign and return the Proposed Recast Agreement by April 10, 2019. *Id*. Claimants do not provide an executed copy of the Proposed Recast Agreement, nor do they allege submitting the signed Proposed Recast Agreement to the Debtors. *Id.* at 4, 10.

**The Objection**

The Consumer Claims Trustee seeks entry of an order disallowing the Insufficient Legal Basis Unsecured Consumer Claims, including the Claim, for failure to state a legal basis that establishes the Debtors' liability. Objection ¶ 3. She construes the Claim as one for failure to process Claimants' request for amortization recast prior to the servicing transfer. *Id*. Ex. A at 1. She contends that the obligation to complete any modification was on the successor servicer, not the prior servicer, and therefore, the Claim fails to state a claim upon which relief may be granted. *Id*.

**The Responses**

***The First Response***

The First Response consists of an undated letter addressed to the Court, signed by Mr. Guzy, opposing disallowance of the Claim. First Response at 4. He states that Claimants had a HAMP loan with Ditech and were credited incentives that were supposed to be used to do a recast. *Id*. He explains that he is disabled and had "difficulty refinancing the home" but "[t]he loan helped us out tremendously as we were able to keep living in our home." *Id*. He contends that Claimants "have been overpaying since 2/11/2019 because [Ditech] did not care to help us finish the HAMP Program as it was setup to help home owners in need." *Id*. He claims that the "overpayments" over two years add up to $9,083.77 and "every month it adds up another $419.84." *Id*. He states that he "had to take money out of [his] IRA to cover these additional costs." *Id*. He asserts that New Rez told Claimants that Ditech "made a mistake" and that New Rez could not help them because "the numbers do not work out." *Id*. at 5. He says that New Rez told them that a recast would not save Claimants any money, would increase the length of the Loan, and "would be like starting all over again with a 30-year mortgage." *Id*.

In support, Claimants annex a document titled "ReCast Difference Promised," consisting of handwritten calculations of the difference between what was "promised" and what was "paid" by Claimants. *Id*. at 6. Based on the calculations, Claimants allege that, from February of 2019 through December of 2020, they overpaid $9,083.77. *Id*. Claimants also include duplicate copies of the Recast Offer Letter and the first page of the Modification Agreement that were annexed to the Claim. *Id*. at 7–9.

Lastly, Claimants attach a copy of another undated letter signed by Jess Guzy, which is addressed "To whom it may concern." *Id*. at 10. The letter begins: "Hello our loan just got

9

transferred over to you from [Ditech]." *Id.* It then explains that Ditech offered Claimants a recast on the Mortgage, but they were eventually told that Ditech could not process the recast because the Mortgage was being transferred to New Rez. *Id.* Mr. Guzy states that Ditech advised him and his wife that they "would have to work with the new lender New Rez to process the recast and that[] they would send everything over to you." *Id.*

Mr. Guzy says he was notified that New Rez had received all of the information regarding the Mortgage, but that a representative told him that New Rez had not received anything regarding a recast. *Id.* He states that representatives told him the minimum to get a recast is $10,000 and that information regarding the Loan had not been populated due to the transition. *Id.* He requested that a manager take over the issue. *Id.*

### The Second Response

Claimants submitted a three-page letter addressed to the Court to explain why they disagree with the disallowance of their Claim. Second Response at 1. They complain of "[p]oor and abusive customer service" by Ditech. *Id.* They contend that they spoke with many Ditech representatives "with plenty of time to do [the] recast and within the dated time from [the Recast Offer Letter] on February 1, 2019." *Id.* at 2. Claimants state they sent the paperwork to Ditech by mail on February 11, 2019, and February 19, 2019, and by fax on February 25, 2019, but Ditech gave them reasons why it couldn't process the paperwork each time. *Id.* They state they called Ditech multiple times because they could not afford an increase in payments. *Id.*

Claimants also state that "[t]he new loan rate from New Rez is now 3.625 percent up from 3.000 percent and is almost the same amount [they are] paying already." *Id.* at 1. They say that when they asked New Rez about the higher rate, New Rez told them that Ditech's "numbers were all wrong." *Id.* Claimants also assert that Mr. Guzy has not been receiving notices in the Chapter

19-10412-jlg   Doc 5406   Filed 03/08/25   Entered 03/08/25 19:59:33   Main Document
Pg 11 of 21

11 Cases and that they had received emails that listed the wrong dates, causing them to miss filing deadlines. *Id*. Claimants state that they spoke with the Consumer Claims Trustee after receiving documents from her that were "already past the time to be filed by January 10, 2024." *Id*. They argue that the Consumer Claims Trustee "knew on December 22[] that [they] wanted to contest the disallowance [of the Claim] and then scheduled a meeting on January 8, 2025 . . . knowing [they] had to file by the 9th." *Id*. They contend that "she stall[ed] [them] into waiting and then [did] not inform [them] of the date to file by 1/9/2025." *Id*.

**The Motion to Estimate**

On September 23, 2022, the Consumer Claims Trustee filed a motion to estimate claims (the "Estimation Motion").[18] The Estimation Motion sought to estimate Claim No. 23544 at $0.00 for the purpose of setting a distribution reserve. Estimation Motion Ex. A at 1. The Estimation Motion further requested that the Claim be established as a Class 6 Consumer Creditor Claims that was not a 363(o) unsecured Consumer Creditor Claims, as defined by the Third Amended Plan. *Id*. ¶ 16. Claimants did not respond to the motion. By order dated December 1, 2022, the Claim was estimated at $0.00 and classified as a non 363(o), Class 6 Consumer Creditor Claim, as defined in the Third Amended Plan.[19]

**The Reply**

Acknowledging that Claimants are proceeding pro se, the Consumer Claims Trustee liberally construes the Claim. Reply ¶¶ 27–28. The Consumer Claims Trustee interprets the Claim, as supplemented by the Responses, as a claim for breach of contract or for violations of the Real

---

[18] *Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4266.

[19] *See Order Granting Consumer Claims Trustee's Omnibus Motion to Estimate for Purposes of Distribution Reserves and to Classify Certain Proofs of Claim*, ECF No. 4418.

Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, et seq. ("RESPA"). *Id*. ¶ 28. She contends that even a generous reading of the Claim does not support any viable claim for recovery as a matter of law. *Id*. ¶ 25.

The Consumer Claims Trustee argues that Claimants fail to plead any causes of action or articulate legal theories under which they pursue relief. *Id*. ¶ 26. She asserts that Claimants' primary concern is Ditech's failure to recast the Mortgage before transferring service to New Rez. *Id*. She contends that Claimants have failed to demonstrate the existence of an enforceable contract because they have failed to properly allege acceptance of the Proposed Recast Agreement. *Id*. ¶ 37. She argues that the Recast Offer was not an agreement, *id*. ¶¶ 33–34, Claimants have not alleged that they signed and returned the Proposed Recast Agreement, *id*. ¶¶ 29, 36, and Ditech did not sign the offer or the agreement, *id*. ¶ 35. She maintains that Ditech cannot be held liable for breaching a contract that was not accepted. *Id*. ¶ 37. Moreover, she argues that Claimants have failed to allege that they suffered any damages from failure to recast the Loan. *Id*. ¶¶ 45–51.

Finally, the Consumer Claims Trustee contends that Claimants have failed to state a claim for violation of RESPA because they have not demonstrated that Ditech failed to meet its obligations in transferring servicing of the Mortgage. *Id*. ¶¶ 39–42, 44. She argues that even if Ditech had violated RESPA, Claimants cannot state a claim for relief under RESPA because they have no private right of action. *Id*. ¶ 43.

## LEGAL PRINCIPLES

A claim properly filed under section 501 of the Bankruptcy Code is "deemed allowed" absent an objection. 11 U.S.C. § 502(a). Such claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). A court may only disallow a claim if a party in interest has objected, and upon notice and hearing, the court finds the claim falls under

one of the exceptions found in section 502(b) of the Bankruptcy Code. 11 U.S.C. § 502(b); *In re Manhattan Jeep Chrysler Dodge, Inc.*, 602 B.R. 483, 491 (Bankr. S.D.N.Y. 2019) ("Section 502 of the Bankruptcy Code provides generally that a proof of claim should be allowed except to the extent it is objectionable on various grounds."). As relevant to the Objection, section 502(b)(1) provides that a claim may be disallowed to the extent it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re Residential Cap., LLC*, 513 B.R. 446, 458 (Bankr. S.D.N.Y. 2014) (citing *In re W.R. Grace & Co.,* 346 B.R. 672, 674 (Bankr. D. Del. 2006)).

The merits of the Claim are not at issue**.** A Sufficiency Hearing is a non-evidentiary hearing to address whether a Contested Claim "has failed to state a claim against the Debtors which can be allowed and should be dismissed pursuant to Bankruptcy Rule 7012." Claims Procedures Order ¶ 3(iv)(a); *see* Fed. R. Bankr. P. 7012(b) (quoting Fed. R. Civ. P. 12(b)) (applying the federal standard under Rule 12(b)(6) motion to dismiss standard to adversary proceedings). The function of a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Havens v. James*, 76 F.4th 103, 116–17 (2d Cir. 2023) (internal quotation marks omitted) (quoting *Festa v. Loc. 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990)). Rule 12(b)(6) "ensures that, consistent with Rule 8(a), a complaint includes 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Alharbi v. Miller*, 368 F. Supp. 3d 527, 560 (E.D.N.Y. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Accordingly, in applying the legal standards applicable to Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the Claim in light of the pleading standards under Rule 8(a).

Rule 8 calls for a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To satisfy this standard, the complaint must at a minimum 'disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)); *see Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) ("[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level.").

The Rule 12(b)(6) standard requires courts to accept all factual allegations as true and to draw all reasonable inferences in favor of the non-moving party. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Further, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding what factual matter to accept as true, the Court is not required to "credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Where, as here, the [Claim] was filed *pro se,* it must be construed liberally to raise the strongest arguments it suggests. Nonetheless, [the] *pro se* [Claim] must state a plausible claim for

relief." *Walker v. Schult,* 717 F.3d 119, 124 (2d Cir. 2013) (internal citations, quotation marks, and brackets omitted); *see also Kimber v. GMAC Mortg., LLC* (*In re Residential Cap., LLC*), 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) ("Complaints drafted by *pro se* plaintiffs are to be construed liberally, but they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the plaintiff is complaining about and . . . whether there is a legal basis for recovery.'" (quoting *Iwachiw v. New York City Bd. of Elections,* 126 F. App'x 27, 29 (2d Cir. 2005) (summary order))).

## ANALYSIS

## Whether Claimants State a Claim Against the Debtors

Claimants assert the basis of the Claim is "loan servicing." Claim at 2. They contend that Ditech failed to process the recast they had offered to Claimants prior to transferring servicing of the Loan to New Rez. *Id*. at 4. They request Ditech reimburse them for poor servicing of the Loan. *Id*. The Court interprets their claims as purporting to assert a claim for breach of contract or for violations of RESPA.

### *Whether Claimants State a Claim for Breach of Contract*

To state a claim for breach of contract under Illinois law,[20] Claimants must allege the following elements: "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007) (citing *MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*, 845 N.E.2d 22, 30 (Ill. App. Ct. 2006)).

---

[20] The Mortgage is governed by the law of the jurisdiction in which the Property is located, which is Illinois. Mortgage ¶ 16.

A breach of contract claim "must be predicated on a valid and enforceable contractual obligation." *Ass'n Benefit Servs. Inc.*, 493 F.3d at 849. Whether a contract exists is a matter of law for determination by the court. *Id*. The underlying contract is the Mortgage, however, the terms of the Mortgage do not require Ditech to recast the Loan. As such, the Court must determine whether the Recast Offer or the Proposed Recast Agreement constitutes an enforceable contract.

"For a transaction to constitute a contract, the basic requirements are the existence of an offer, acceptance, and consideration." *Arbogast v. Chicago Cubs Baseball Club, LLC*, 194 N.E.3d 534, 542 (Ill. App. Ct. 2021). An offer "ripen[s] into a contract" when "it is accepted." *Moore v. Lewis*, 366 N.E.2d 594, 599 (Ill. App. Ct. 1977). Under Illinois law, the "test for an offer is whether it induces a reasonable belief in the recipient that he can, by accepting, bind the sender." *Wigod v. Wells Fargo Bank, N.A*., 673 F.3d 547, 561 (7th Cir .2012) (quoting *Boomer v. AT & T Corp*., 309 F.3d 404, 415 (7th Cir. 2002) (internal quotation marks omitted)). If the alleged promise is conditioned on the promisor's "own future action or approval," then "there is no binding offer." *Wigod*, 673 F.3d at 561 (emphasis omitted).

Claimants have failed to allege that the Recast Offer was a binding offer. The Recast Offer Letter required Claimants to sign and return the letter by March 3, 2019, after which they would receive a recast agreement. Claim at 7. To accept the Recast Offer, Claimants were required to sign and return the Proposed Recast Agreement by April 10, 2019. *Id*. at 8. Their account had to remain current to qualify for the offer. *Id*. Neither the Recast Offer Letter nor the Proposed Recast Agreement was signed by Ditech. Thus, the offer to enter into an agreement was not binding, as it was contingent on Ditech's future approval. *Cf. Wigod*, 673 F.3d at 561 (finding valid offer and acceptance where Wells Fargo had executed a trial period plan agreement and borrower had met the conditions therein).

Even if the Recast Offer was binding, Claimants do not allege that they accepted the Recast Offer by returning the Proposed Recast Agreement by April 10, 2019. Claimants contend that they sent the Recast Offer Letter back three times, on February 11, 2019, February 19, 2019, and February 25, 2019. Second Response at 2. They do not allege that they signed and returned the Proposed Recast Agreement. Claimants have failed to allege facts demonstrating that they accepted the Recast Offer, let alone that their acceptance would produce an enforceable agreement. *See Thompson Fine Art, Ltd. v. Union League Club of Chicago*, No. 1-21-0391, 2022 WL 1511352, at *5 (Ill. App. Ct. May 12, 2022) ("A communication 'is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent.'" (citing Restatement (Second) of Contracts § 26 (1981))). They have failed to show that the Proposed Recast Agreement is an enforceable contract, and therefore, cannot state a claim for breach of contract.

Even had Claimants demonstrated the Proposed Recast Agreement was enforceable against Ditech, they have failed to allege how failure to implement the agreement has damaged them. To recover damages for breach of contract, Claimants must establish an actual loss or measurable damages resulting from the breach. *In re Illinois Bell Telephone Link-Up II & Late Charge Litigation*, 994 N.E.2d 553, 558 (Ill. App. Ct. 2013); *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) (plaintiff has the burden of showing that they suffered damages). Merely showing a contract has been breached without demonstrating actual damage does not suffice to state a claim for breach of contract. *TAS Distrib. Co.*, 491 F.3d at 631. Therefore, Claimants "must establish both '[that] [they] sustained damages . . . [and] [they] must also establish a reasonable basis for computation of those damages." *Id.* at 632 (quoting *Ellens v. Chicago Area Office Fed. Credit Union*, 576 N.E.2d 263, 267 (Ill. App. Ct. 1991)). The proper measure of

damages is the amount that would put Claimants in the position they had been in had the contract been performed. *In re Illinois Bell*, 994 N.E.2d at 558. However, damages should not put Claimants in a better position, or in other words, damages should not provide a windfall recovery. *Id; see also Wanderer v. Plainfield Carton Corp.*, 351 N.E.2d 630, 635 (Ill. App. Ct. 1976) (collecting cases).

Claimants allege that Ditech's failure to finalize the Proposed Recast Agreement caused them to pay thousands of dollars in overpayments. First Response at 4–6; Second Response at 1. Specifically, Claimants allege that they have overpaid a total of $9,083.77 over two years and continue to overpay $419.84 per month. First Response at 4. To calculate their alleged damages, Claimants take the difference of the monthly payment without recast compared to the monthly payment with recast over 30 payments. *Id*. at 6. Claimants also allege damages based on the increase in their interest rate from 3.000% to 3.625%. Second Response at 1.

The increase in interest rate was a term included in the HAMP modification agreement, not the Proposed Recast Agreement. Claim at 6–7. The Recast Offer made clear the scheduled interest rate would not change. *Id*. at 5. The Proposed Recast Agreement similarly did not affect the interest rate. *Id*. at 9–10.

The Recast Offer was made because the Claimants had earned $10,000 in pay for performance incentives through HAMP. *Id*. at 5. Application of the incentive would allow Claimants to pay off the interest-bearing principal before the maturity date of February 1, 2036, if they continued paying the scheduled principal and interest payments in the amount of $1,637.54. *Id*. at 9. The Recast Offer gave Claimants the option to lower their principal and interest payments to $1,176.74 per month, which would result in their not paying off the interest-bearing principal until February 1, 2036. *Id*. at 6. If they opted to lower their payments, then the interest-bearing

principal would decrease more slowly and would ultimately result in Claimants paying $35,379.53 in additional interest over the remaining life of the Mortgage. *Id.*

As such, Claimants have been paying the monthly payments as scheduled and were not overcharged. In fact, the failure to recast has prevented Claimants from paying additional interest over the remaining term of the Loan such that any award of damages would result in a windfall to Claimants. Claimants have failed to demonstrate actual damages, and any breach of contract claim fails as a matter of law. *See In re Illinois Bell*, 994 N.E.2d at 559 ("Damages are an essential element of a breach of contract action and a claimant's failure to prove damages entitles the defendant to judgment as a matter of law.").

### *Whether Claimants State a Claim Under RESPA*

Claimants allege that the basis of the Claim is "loan servicing." Claim at 2. Under RESPA, mortgage servicers are required to maintain policies and procedures that enable them to manage borrower loans transparently and effectively. 12 C.F.R. § 1024.38. RESPA applies to "federally related mortgage loan[s]," a term that includes loans secured by a lien on residential real estate "designed principally for the occupancy of from one to four families," for which the lender is federally regulated or has deposits or accounts insured by the federal government. 12 U.S.C. § 2602(1)(A)–(B). That includes loans "secured by a first or subordinate lien on residential real property." 12 C.F.R. § 1024.2(b). The Loan is secured by a lien on the Property and is thus subject to RESPA's coverage.

RESPA, as implemented by Regulation X, governs loss mitigation procedures and loan servicing transfers. *See* 12 C.F.R. §§ 1024.38(b)(2)–(4). It provides general servicing policies, procedures, and requirements including facilitating transfer of information during servicing transfers. 12 C.F.R § 1024.38. Under Regulation X, during the transfer of servicing of a loan, the

transferor and transferee must provide notice to the borrower. 12 C.F.R. § 1024.33. It mandates that a transfer does not affect a borrower's ability to accept or reject a loss mitigation option offered based upon receipt of a loss mitigation application. 12 C.F.R § 1024.41(k)(5). Consistent with policies and procedures maintained under section 1024.38(b)(4), the transferor servicer must timely transfer, and the transferee servicer must obtain, documents and information regarding such acceptances and rejections, and the transferee servicer must provide the borrower with any timely accepted loss mitigation option, even if the borrower submitted the acceptance to the transferor servicer.

As Claimants indicate, Ditech and New Rez provided notice of the servicing transfer on March 1, 2019, in compliance with RESPA. Claim at 4; Servicing Transfer Letter at 1. Moreover, Claimants had not submitted a loss mitigation application prior to the transfer of servicing. The Recast Offer and Proposed Recast Agreement were offered based on the Claimants' receipt of incentive payments under the HAMP program. *See* Claim at 5. In any event, Ditech provided New Rez the information regarding the Recast Offer and Proposed Recast Agreement. First Response at 5. After receiving the information, New Rez disagreed with the Recast Offer, stating if they did the recast it would not save the Claimants any money. *Id*. Ditech had already informed Claimants that the recast would ultimately cost them more in interest over the life of the Loan. *Id*. at 7. Claimants' allegations demonstrate that Ditech did provide New Rez with the details of the Proposed Recast Agreement and met their obligations as the transferor servicer.

Even if Claimants had alleged a RESPA violation, Claimants do not have right of action under section 1024.38. *Golbeck v. Johnson Blumberg & Associates, LLC*, No. 16-CV-6788, 2017 WL 3070868, at *9 (N.D. Ill. July 19, 2017) (dismissing claim under section 1024.38 because the section does not provide a private right of action); Mortgage Servicing Rules Under the Real Estate

Settlement Procedures Act (Regulation X), 78 Fed.Reg. 10696, 10778–79 (Feb. 14, 2013) ("allowing a private right of action for the provisions that set forth general servicing policies, procedures, and requirements would create significant litigation risk"). Claimants have failed to allege facts demonstrating that Ditech violated RESPA or failed to meet any of their obligations in transferring the servicing of the Mortgage to New Rez.

***Claimants' Other Claims Fail to State a Claim for Relief***

Claimants' complaints of "[p]oor and abusive customer service" and assertions regarding communications with the Consumer Claims Trustee are vague or conclusory. Second Response at 1. Claimants do not provide sufficient facts to support a legal cause of action or claim for relief.

### CONCLUSION

Based on the foregoing, the Court sustains the Objection and disallows Claim No. 23544.

IT IS SO ORDERED.

Dated: March 7, 2025
New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge