UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

---------------------------------------------------------------x

In re:                                                    :

                                                          :        Case No. 19-10412 (JLG)

Ditech Holding Corporation, *et al.*,                      :        Chapter 11

                                                          :

                                                          :

                                     Debtors.[1]           :        Jointly Administered

---------------------------------------------------------------x


**MEMORANDUM DECISION AND ORDER SUSTAINING THE CONSUMER CLAIMS
TRUSTEE'S FIFTY-NINTH OMNIBUS OBJECTION TO PROOFS OF CLAIM
WITH RESPECT TO THE PROOF OF CLAIM FILED BY KRISTINE ANN BISTLINE**


**A P P E A R A N C E S:**


JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, New York 10036
By:    Richard Levin


LAW OFFICES OF ANDREW JAY KULICK
*Attorneys for the Claimant*
21704 West Golden Triangle Road, Suite 312
Saugus, California 91350-2617
By:    Andrew Jay Kulick

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### INTRODUCTION[2]

Kristine Ann Bistline ("Claimant") is represented by counsel herein. She filed Proof of

Claim No. 324 (the "Claim") as an unsecured claim in the amount of $684,342.38, plus costs,

against Ditech Financial LLC ("Ditech"). The Consumer Claims Trustee (the "Trustee") filed the

Fifty-Ninth Omnibus Objection (the "Objection")[3] seeking to disallow proofs of claim, including

the Claim, that do not state a sufficient legal basis to establish Ditech's liability. Claimant filed a

response to the Objection (the "Response").[4] The Trustee filed a reply in support of the Objection

(the "Reply").[5] In substance, the Trustee asks the Court to disallow the Claim because it fails to

state a claim for relief against Ditech. Claimant filed a sur-reply in response to the Reply (the "Sur-

Reply").[6] The Trustee filed a response to the Sur-Reply (the "Sur-Response").[7] Claimant objected

to the Sur-Response (the "Sur-Response Objection").[8]

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection, Claims Procedures Order and the Plan, as applicable.

[3] *Fifty-Ninth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Consumer Creditor Claims)*, ECF No. 4264.

[4] *Claimant Kristine Ann Bistline's Response to the Consumer Claims Trustee's Fifty-Ninth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Consumer Creditor Claims)*, ECF No. 4303. The Response consists of a Memorandum of Points and Authorities, a declaration executed by Claimant ("Bistline Declaration"), a declaration executed by Claimant's counsel ("Kulick Declaration"), and nineteen exhibits. Page citations refer to the PDF pages of the Response, Bistline Declaration, Kulick Declaration, and each exhibit, respectively.

[5] *Reply of the Consumer Claims Trustee in Support of the Fifty-Ninth Omnibus Objection with Respect to the Claim of Kristine Ann Bistline (Claim 324)*, ECF No. 5383.

[6] *Claimant Kristine Ann Bistline's Sur-Reply to the Consumer Claims Trustee's Reply to the Fifty-Ninth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Consumer Creditor Claims)*, ECF No. 5413.

[7] *Response of the Consumer Claims Trustee to the Sur-Reply of Kristine Ann Bistline (Claim 324)*, ECF No. 5423.

[8] *Claimant Kristine Ann Bistline's Objection to the Sur-Reply filed by the Consumer Claims Trustee's to the Sur-Reply filed by Claimant Regarding the Fifty-Ninth Omnibus Objection to Proofs of Claim (Insufficient Legal Basis Unsecured Consumer Creditor's Claims)*, ECF No. 5425.

Pursuant to the Claims Procedures Order,[9] Claimant's filed Response adjourned the Objection to provide time for the Trustee to schedule a Sufficiency Hearing on the Claim. At a Sufficiency Hearing, the Court employs the legal standard of review applied to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of Federal Rules of Civil Procedure.[10] Claims Procedures Order ¶ 3(iv)(a). The Court conducted the Sufficiency Hearing. The Trustee and Claimant appeared through their respective counsel. The Court heard arguments from the parties at the hearing.

The Court has reviewed the Claim, Objection, Response, Reply, Sur-Reply, Sur-Response, and Sur-Response Objection, including all documents submitted in support thereof, and has considered the arguments made therein by the parties in support of their positions. In doing so, and in accordance with Rule 12(b)(6), the Court has accepted Claimant's well-pleaded factual allegations as true, and has drawn all reasonable inferences in Claimant's favor.

As explained below, the Claim, as supplemented by the Response and Sur-Reply, fails to state a claim to relief against Ditech. Accordingly, the Court sustains the Objection and disallows the Claim.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States district court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[9] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632 (the "Claims Procedures Order"); *Order Amending Claim Hearing Procedures*, ECF No. 5011 ("Amended Claims Procedures Order").

[10] Hereinafter, citations to the Federal Rules of Civil Procedure will be to "Rule __".

## BACKGROUND

### The Loan

On or about April 23, 2007, Claimant executed a promissory note in favor of Washington Mutual Bank, FA ("Washington Mutual Bank") in the amount of $300,000.00 (the "Note"). The Note was secured by a mortgage (the "Mortgage") on the property located at 2541 West Avenue K-9, Lancaster, CA 93536 (the "Property"). Together, the Note and Mortgage constitute the "Mortgage Loan." Reply ¶ 1; Reply Exhibits A and B.

According to Claimant, the Federal Home Loan Mortgage Corporation ("Freddie Mac") claims it acquired the beneficial interest in the Mortgage Loan on May 25, 2007, from JPMorgan Chase Bank, N.A. ("JPMorgan Chase Bank"). Response, p. 3, lines 7-12. However, Claimant contends this is contrary to JPMorgan Chase Bank's position that it acquired the beneficial interest in the Mortgage Loan on September 25, 2008, and contradicts publicly available evidence that the FDIC was not appointed as the receiver of Washington Mutual Bank until September 25, 2008. Response, p. 3, lines 13-20; Response Exhibits 3 and 4.

Claimant alleges that sometime between when the beneficial interest and servicing rights in the Mortgage Loan were acquired by JPMorgan Chase Bank and when the servicing transferred to Ditech, the Note was altered (which is a crime under California Penal Code, § 476) to reflect that it had been endorsed by Cynthia Riley "without recourse," even though Ms. Riley had stopped working as an endorser of notes six months prior to when Claimant entered into the Mortgage Loan. Response, p. 3, lines 21-27; Response Exhibits 5, 6, and 7.

According to the Trustee, on October 22, 2012, JPMorgan Chase Bank, as successor in interest by purchase from FDIC as receiver of Washington Mutual Bank, assigned the deed of trust to Homeward Residential, Inc. Reply ¶ 2; Reply Exhibit C. On December 9, 2015, Homeward

Residential, Inc. assigned the deed of trust to Ocwen Loan Servicing, LLC ("Ocwen"). Reply ¶ 3; Reply Exhibit D. On January 8, 2016, Ocwen assigned the deed of trust to Ditech. Reply ¶ 4; Reply Exhibit E. On July 31, 2020, Ditech assigned the deed of trust to Specialized Loan Servicing, LLC. Reply ¶ 5; Reply Exhibit F.

Claimant alleges that in 2013, Ocwen, who was then servicing the Mortgage Loan, acknowledged receiving a $276,953.53 principal payment from Claimant, which was never credited by Green Tree Servicing LLC ("Green Tree") (later Ditech). Response, p. 4, lines 4-6; Response Exhibit 8. Claimant contends that because this sum was never credited to her account, she suspended her monthly mortgage payments, resulting in the Notice of Default and election to sell being recorded against her residence. Response, p. 4, lines 8-10.

The Trustee states that Claimant defaulted on the Mortgage Loan in March 2015. Reply ¶ 6; Reply Exhibits J and K. Following the default, Ditech sent two letters to Claimant, one on September 15, 2015, and another on January 26, 2016. Reply ¶ 6; Reply Exhibits J and K. According to the Trustee, on March 4, 2016, Ditech recorded the Notice of Default against the Property. Reply ¶ 7; Reply Exhibit P.

Claimant asserts that on November 4, 2016, she provided to Ditech a first-lien home loan modification application seeking to modify whatever existing principal was due after crediting her $276,953.53 payment made towards principal. Response, p. 4, lines 11-13. The Trustee contends that the sale of the Property was originally scheduled for August 30, 2016, and that the November 4 submission was actually a follow-up to an earlier, incomplete application from September 28, 2016. Sur-Response ¶¶ 18-19; Sur-Response Exhibit 2.

California's Homeowner's Bill of Rights (California civil code, § 2924 et seq.) (the "HBOR") prohibits a mortgage servicer, trustee or beneficiary from initiating and conducting a

foreclosure sale while a first-lien home loan modification application is pending. Response, p. 4, lines 14-17. Despite emails from Claimant's counsel to Ditech's counsel prior to the scheduled foreclosure sale date advising of this law, a public auction foreclosure sale of the Property was conducted on November 22, 2016. Response, p. 4, lines 20-23; Response Exhibit 9.

Claimant alleges that thereafter, Freddie Mac caused to be posted on the Property a notice to vacate due to the fact that it now owned the Property as a result of the foreclosure sale. Response, p. 4, lines 24-26; Response Exhibit 10. Claimant contends that Ditech, realizing that it had violated California law, requested permission from Freddie Mac to "roll back" the sale, stating to Freddie Mac that the request was being made due to a violation of California law; Freddie Mac agreed to the rescission. Response, pp. 4-5, lines 27-28, 1; Response Exhibit 11; Sur-Reply, p. 11, lines 14-18.

However, Claimant alleges that because neither Ditech nor Freddie Mac requested a withdrawal of, or caused to be recorded a formal rescission of the Notice of Default and election to sell, she became unable to freely market, refinance, or sell the Property. Response, p 5. Lines 2-6. She claims she could not enter into a listing agreement with a real estate broker as title to the Property remained in doubt due to the completed foreclosure sale. *Id.* Also, she contends she has been unable to obtain credit, which is necessary to fund her sole proprietor business, due to alleged monthly mortgage delinquency being reported to credit bureaus by Freddie Mac's mortgage servicers, including Ditech. Response, p. 5, lines 6-9.

Claimant further alleges that she has been harassed at all hours of the day and night by people coming onto the Property to inspect it due to a second notice of trustee's sale that Ditech instructed to be published and posted on the Property, which she received in March 2018. Response, p. 5, lines 10-13. She claims this was intended to harass, intimidate, and inconvenience

her since in order to be effective, the notice of trustee's sale must be recorded, which the trustee never did. Response, p. 5, lines 12-15; Response Exhibits 12 and 13.

Claimant also alleges she was illegally charged by Ditech for mortgage insurance and property taxes as a debit towards an escrow account, even though she opted out of both at the time she entered the Mortgage Loan and is current with both. Response, p. 5, lines 15-20. She contends these actions violate the Rosenthal Fair Debt Collections Practice Act (California civil code § 1788 et seq.) (the "RFDCPA"). Response, p. 5, lines 18-20.

## The Chapter 11 Cases

On February 11, 2019 (the "Petition Date"), Ditech Holding Corp. (f/k/a Walter Investment Management Corp.) and certain of its affiliates, including Ditech and Green Tree (collectively, the "Debtors"), filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession and control of their business and assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[11] The Court extended the General Bar Date for consumer borrowers to June 3, 2019.[12] On September 26, 2019, the Debtors confirmed their Plan, which went into effect on September 30, 2019 (the "Effective Date").[13]

---

[11] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[12]*Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[13] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

The Trustee is a fiduciary under the Plan. *See* Plan, art. I, § 1.41. The Trustee is responsible for the reconciliation and resolution of Consumer Creditor Claims and the distribution of the Consumer Creditor Net Proceeds from the Consumer Creditor Recovery Cash Pool to holders of Allowed Consumer Creditor Claims. *See id*. As such, she is exclusively authorized to object to Consumer Creditor Claims. *Id.* art. VII, § 7.1.

The Plan provides that, all remaining property[14] of the Debtors' Estates vests in the Wind Down Estates.[15] *See* Plan, art. X, § 10.1. Thus, on or after the Effective Date, the Wind Down Estates may take any action including the "use, acquisition, sale, lease and disposition of property" and "the entry into transactions, agreements, understandings, or arrangements, whether in or other than in the ordinary course of business. . . ." *Id*. Additionally, "[a]fter the Effective Date, the Reorganized Debtors[16] . . . may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules." Plan, art. V, § 5.7(g)(ii).

The Plan includes an injunction provision (the "Plan Injunction") permanently enjoining all parties who may hold claims for monetary damages from "commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors" with respect to, among other things, claims and Causes of

---

[14] Except for property of the Debtors' Estates that was acquired by the Forward Stalking Horse Purchaser or the Reverse Stalking Horse Purchaser, as applicable. *See* Plan, art. X, § 10.1.

[15] "Wind Down Estates means, solely with respect to the Sale Transaction, the Debtors (excluding Reorganized RMS) pursuant to and under the Plan on or after the Effective Date." Plan, art. I, § 1.186.

[16] "Reorganized Debtors means, solely with respect to the Reorganization Transaction, the Debtors, as reorganized pursuant to and under the Plan on or after the Effective Date." Plan, art. I, § 1.149.

Action[17] that will be or are extinguished, discharged, or released. Plan, art. X, § 10.5(b). This Court also retained non-exclusive jurisdiction over "all matters arising in, arising under, and related to the Chapter 11 Cases . . ." *Id*. art. XI, § 11.1. Among other things, this was for the purpose "to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate . . ." and "to hear, adjudicate, decide, or resolve any and all matters related to Article X of the Plan, including, without limitation, the releases, discharge, exculpations, and injunctions issued thereunder." *Id*. art. XI, §§ 11.1(f), 11.1(n).

### The Claims Procedures Order

Under the Claims Procedures Order, a properly filed and served response to a claim objection, omnibus or otherwise, gives rise to a "Contested Claim." *See* Claims Procedures Order ¶ 3(iv). A Contested Claim is resolved at a hearing, which can be scheduled as either a "Merits Hearing," an evidentiary hearing on the merits of the Contested Claim, or a "Sufficiency Hearing," a non-evidentiary hearing to address whether the Contested Claim states a claim for relief against the Debtors. *Id.* ¶ 3(iv)(a)-(b). At a Sufficiency Hearing, the Court applies the legal standard of review applied to a motion to dismiss under Rule 12(b)(6). *Id.* ¶ 3(iv)(a).

---

[17] "Causes of Action means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, loss, debt, damage, judgment, account, defense, remedies, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Commencement Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws). Causes of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim." Plan, art. I, § 1.26.

**The Litigation**

On or around March 4, 2016, a notice of default against the Property (the "Notice of Default") was recorded,[18] scheduling a foreclosure sale for November 22, 2016 (the "2016 Foreclosure Sale"). *See* Reply, Exhibit AA at 12; Response Exhibit 1 at 8. The sale was held, but Ditech rescinded the sale on November 30, 2016. *See* Response p. 4, lines 20-22; Response Exhibit 11.

**Bistline I**

On May 16, 2016, Claimant filed a complaint against multiple defendant servicers, including Ditech, in the Superior Court for the County of Los Angeles, case number BC620568 ("Bistline I"). Reply ¶ 10; Reply Exhibits G and H. The complaint asserted the following causes of action: (1) Request for Stay of Non-Judicial Foreclosure and Injunctive Relief for violation of California Civil Code §2923.5 or 2923.55; (2) Cancellation of Instruments; (3) Quiet Title; (4) Declaratory Relief; and (5) Slander of Title. Reply ¶ 10; Reply Exhibit H.

In her complaint, Claimant alleged that Ditech had recorded a Notice of Default in violation of the non-judicial foreclosure statutes and asserted that the multiple assignments of the deed of trust were void. Reply ¶ 11; Reply Exhibit H.

Bistline I was subsequently removed to the United States District Court for the Central District of California on June 24, 2016. Reply ¶ 12; Reply Exhibit I. On September 6, 2016, the district court granted the motion to dismiss the second and third Claims with leave to amend. Sur-Response ¶ 14; Reply Exhibit V. Claimant filed her first amended complaint on September 16, 2016. Sur-Response ¶ 1; Reply Exhibit W.

---

[18] Neither of the parties include a copy of the Notice of Default.

On November 28, 2016, after Claimant had filed a first amended complaint, the district court granted motions to dismiss filed by Ditech, Homeward Residential, Inc., Ocwen, and JPMorgan Chase Bank, without leave to amend, as to some of the claims for relief. Reply ¶ 13; Reply Exhibit J. The court ruled: (1) Ditech was not liable for recording or filing a false instrument, (2) Ditech had the authority to record a substitution of trustee, (3) Plaintiff failed to allege that she was not in default at the time the Notice of Default was filed, (4) Plaintiff's allegations of slander of title are too conclusory to support the claim, and (5) Plaintiff's claims for declaratory and injunctive relief were derivative and failed on that basis. *Id.*

In that same order, the Court also directed Claimant to show cause why Ditech should not be granted summary judgment as to her allegations that Ditech failed to notify her of loss mitigation options. Reply ¶ 14; Reply Exhibit J. On March 10, 2017, the court granted summary judgment to Ditech on that issue. Reply ¶ 14; Reply Exhibit K.

Claimant timely appealed the decision to the United States Court of Appeals for the Ninth Circuit on April 6, 2017. Reply ¶ 15; Reply Exhibit I. The Ninth Circuit affirmed on October 18, 2019. Reply ¶ 15; Reply Exhibit L. The appeals court concluded (1) Claimant lacked standing to challenge the validity of the assignments, (2) her slander of title claim was covered by litigation privilege, and (3) Claimant was not entitled to amend the complaint to include a claim under the Fair Debt Collection Practices Act because she had not previously raised that claim. *Id.* The court declined to take judicial notice of a consummated foreclosure because the documents she submitted "do not show beyond a reasonable dispute that a foreclosure occurred." *Id.*

Claimant contends that while Bistline I was pending, a separate lawsuit was filed on November 23, 2016, the day after the foreclosure sale occurred, due to Ditech's alleged violation of HBOR's dual tracking prohibition. This lawsuit named as defendants Ditech and Freddie Mac,

identified as case number MC029749. Claimant states this case was dismissed without prejudice based on the expectation that Ditech would comply with California's HBOR. Sur-Reply, p. 15, fn. 6, lines 17-28; Sur-Reply Exhibit 9.

### *Bistline II*

Claimant alleges that in April 2018, after Ditech published a second notice of trustee's sale, she filed Bistline II in the Los Angeles Superior Court, North Court District against Ditech and Freddie Mac. Response, p. 5, lines 21-23; Reply at 6; Reply Exhibits M and N. The Trustee identifies the case number as MC027909, filed on April 19, 2018. Reply ¶ 16; Reply Exhibit M.

On June 22, 2018, Ditech and Freddie Mac filed a demurrer, motion to strike, and motion to dismiss for forum non conveniens. *Id.* At a hearing on September 11, 2018, the court granted the dismissal, but on res judicata grounds, based on Bistline I. *Id.* Claimant states that the court dismissed the case without prejudice and instructed her that if she wished to proceed with those claims, she must do so in Federal court. Sur-Reply, p. 6, lines 7-12; Sur-Reply Exhibit 4. A Judgment of Dismissal as to Ditech and Freddie Mac was entered on October 2, 2018, and Claimant filed a Notice of Appeal on October 12, 2018. Reply ¶ 18; Reply Exhibit M.

On August 17, 2020, the California Court of Appeal reversed and remanded, stating that "the instant appeal from the judgment of dismissal, which was without prejudice to Bistline pursuing her remedies in federal court, is not mooted by the new action that she filed in the district court on October 18, 2018." Reply, Exhibit O. The court further stated, "if this Court were to dismiss the instant appeal as moot, the defendants in the new district court action (i.e., Bistline III) may cite the trial court's res judicata ruling herein to argue that the new action is barred by res judicata. Moreover, Bistline is entitled to litigate her claims in an appropriate forum of her choosing." Sur-Reply, p. 6, lines 13-28; Sur-Reply Exhibit 5; Reply Exhibit O.

The California Court of Appeal noted that the fifth and ninth causes of action were not directed at Ditech, and dismissed the appeal as to the sixth, seventh, and eighth causes of action which sought monetary damages against Ditech and were permanently enjoined by the Plan confirmed on September 26, 2019. Reply ¶ 17; Sur-Reply, p. 7, lines 1-11; Reply Exhibit O; Sur-Reply Exhibit 5. The Court expressly noted that the res judicata defense could be reasserted. Reply ¶ 17; Reply Exhibit O.

Claimant states that after remand, she filed a first amended complaint in Bistline II, deleting her monetary claims against Ditech while preserving her equitable claims. She contends this allowed her to conduct discovery on Ditech. Sur-Reply, p. 7, lines 12-14; Reply Exhibit AA.

On May 23, 2023, the court issued a Memorandum Decision granting Freddie Mac's motion for summary judgment. Reply ¶ 24; Reply Exhibit P. The court observed that Bistline I adjudicated the legality of some of the same foreclosure activities that Claimant challenged again in Bistline II. "Though Plaintiff's claims in Bistline II may be based on different alleged violations, these are merely different theories of liability, and Plaintiff should therefore have raised them in Bistline I." *Id.* The court found that all causes of action leading up to the foreclosure sale were thus precluded, and that the federal courts' decisions in Bistline III entirely precluded Claimant's second, third, fourth, ninth, tenth, and eleventh causes of action in Bistline II. *Id.*

On August 3, 2023, Claimant appealed. Reply ¶ 27; Reply Exhibit Q. In her opening brief, filed November 27, 2024, Claimant contends that the claims raised in Bistline II should not be barred by res judicata since Freddie Mac was not a named defendant in Bistline I and thus lacks privity to raise the affirmative defense. Reply ¶ 27. Further, Claimant argues that the Merrill doctrine does not apply because Freddie Mac expressly authorized the loan servicer to foreclose in its servicer manual. Reply ¶ 27; Reply Exhibit R.

*Bistline III*

On October 18, 2018, while the Bistline II appeal was pending in the California Court of

Appeal, Claimant filed another complaint in United States district court against Ditech and Freddie

Mac, case number 2:18-cv-08995 ("Bistline III"). Reply ¶ 18; Response, p. 5, lines 21-25; Reply

Exhibits S and T.

The complaint listed five causes of action for injunctive relief and three causes of action

against Ditech relating to its assessment of escrow costs and its alleged mishandling of the

November 4, 2016 loan modification application. Reply ¶ 19; Reply Exhibit T. The three claims

against Ditech were: (1) sixth, for fraud for charging homeowner's insurance and property taxes

and for fraudulent representations in connection with the 2016 Loan Modification; (2) seventh, for

negligence asserting violations of HBOR as to the implementation and processing of the 2016

Loan Modification; and (3) eighth, for Ditech's alleged failure to provide a written determination

on the loan modification application and for proceeding with a foreclosure sale during the

pendency of the modification application. Reply ¶ 20; Reply Exhibit T.

Claimant alleges that a default against Ditech as to that complaint was entered by the clerk

of the court on November 28, 2018 (the "Clerk's Default"). Response, p. 5, lines 23-25; Response

Exhibits 1 and 2. The Trustee contends that the default was vacated on February 22, 2019. Reply

¶ 50; Reply Exhibit S.

Ditech filed a Notice of Bankruptcy Filing and Suggestion of Automatic Stay on February

15, 2019. Reply ¶ 21; Reply Exhibit S. Claimant states that the Court stayed all monetary and

equitable claims made against Ditech after receiving notice of the bankruptcy. Response, p. 5, lines

26-28; Response Exhibit 14.

On July 9, 2019, the district court dismissed Claimant's HBOR and negligence claims against Freddie Mac without leave to amend on the basis that the court lacked subject matter jurisdiction over these claims pursuant to the Rooker-Feldman doctrine. Reply ¶ 72; Sur-Reply, p. 6, lines 7-12; Reply Exhibit X.

On July 22, 2019, Claimant filed her first amended complaint asserting eight claims for relief including claims for breach of contract and wrongful foreclosure against Freddie Mac. Reply ¶¶ 72-73; Reply Exhibit Y.

On December 16, 2019, the district court granted Freddie Mac's motion for summary judgment. In part, it found Claimant "failed to 'offer any evidence suggesting she suffered any damage' or 'injury' as a result of Freddie Mac's alleged breach." Reply ¶ 73; Sur-Response ¶ 5; Reply Exhibit Z. The court found that even if Claimant could establish her performance or Freddie Mac's breach, she could not establish damages as a matter of law. Reply Exhibit Z at 8. Plaintiff had alleged that Freddie Mac breached the contract by recording a substitution of trustee, but the court determined that she had failed to demonstrate any monetary harm. *Id.* at 8. While acknowledging that injunctive relief could be proper in a breach of contract case with a showing of irreparable injury and inadequacy of legal remedies, the court found that Plaintiff had not argued that either requirement was met. *Id.* The court further noted that since the sale of Plaintiff's property had been rescinded and Plaintiff remained in possession and was the owner of the Property, it was "unclear how Freddie Mac's alleged improper substitution of trustee has harmed Plaintiff at all, let alone caused injury sufficient to merit injunctive relief." *Id.* at 9.

In reviewing the wrongful foreclosure claim, the court determined that regardless of whether a sale took place, Claimant had "not stated any damages she has in fact suffered." *Id.* at 10. The court noted that while Claimant argued several categories of damages a plaintiff bringing

a wrongful foreclosure claim could recover - including damages to credit, infliction of emotional distress, and punitive damages - she did not argue that she had in fact suffered any of those damages. *Id.* The court emphasized that this failure was "especially problematic" considering that Claimant "currently has possession of, owns, and lives in the Subject Property." *Id.* Without any suggestion or evidence as to what damages Plaintiff had actually suffered, the court found that Plaintiff could not prove her wrongful foreclosure claim as a matter of law. *Id.*

Claimant filed a Notice of Appeal to the Ninth Circuit on December 14, 2020. Reply ¶ 21; Reply Exhibit S. On May 25, 2022, the Ninth Circuit affirmed the dismissal of the case against Freddie Mac. Reply ¶ 22; Reply Exhibit U. The Ninth Circuit specifically addressed Claimant's argument that Freddie Mac had not met its burden of production regarding emotional distress damages. Reply Exhibit U. The court found that Freddie Mac had met its burden by providing evidence that the foreclosure sale had been rescinded, Claimant remained in possession of the Property, Freddie Mac took no other action to obtain the Property, there was no pending foreclosure sale, and Claimant engaged in loss mitigation efforts. Reply Exhibit U. The Ninth Circuit concluded: "[b]ecause Bistline failed to produce any evidence that she suffered damages, evidence which was solely in her possession, we will affirm the district court's judgment." Reply ¶ 22; Reply Exhibit U.

### *Discovery in Bistline II After Remand*

Claimant alleges that after Specialized Loan Servicing (the "SLS") acquired the servicing rights to her home loan through the Bankruptcy Court, and after three motions to compel based on a subpoena served on SLS had been granted, SLS turned over 8,000 pages of documentation, uncategorized and stuffed into four banker boxes, going back to her home loan's inception. Sur-Reply, p. 12, lines 4-9.

Claimant contends that upon review of these documents, it was uncovered that the principal sum due on her Note serviced by Ditech had been paid off to Ocwen in 2013, which thereafter assigned its mortgage servicing rights to Ditech, evidencing that Claimant had never been in default. Sur-Reply, p. 12, lines 10-13.

Claimant states that during the deposition of Freddie Mac's person most knowledgeable, the witness acknowledged that there was a factual dispute as to whether Claimant had been properly credited with the principal payment. Claimant quotes the witness as stating, "I would say there's a discrepancy from what Ocwen was reporting to us and what they appear to report on that 1098." Sur-Reply, p. 12, lines 14-23, 1; Sur-Reply Exhibit 8.

### The Claim

On March 18, 2019, Claimant filed Claim No. 324.[19] In Claimant's Official Form 410, Proof of Claim, she asserts an unsecured claim in the amount of $684,342.38 plus costs. Claim at

---

[19] On the same date, Claimant also filed Claim No. 325, which was identical to Claim No. 324. On April 25, 2019, Claimant filed Claim No. 21488 in an undetermined amount on the basis of "litigation." This claim annexed complaints from both Bistline I and Bistline II. The Trustee objected to Claim No. 325 and No. 21488 as a duplicate claim. *Consumer Claims Trustee's Eighth Omnibus Objection (Duplicate Unsecured Consumer Creditor Claims,* ECF 1969. On April 23, 2020, both claims were disallowed. *Order Granting Consumer Claims Trustee's Eighth Omnibus Objection to Proofs of Claim (Duplicate Unsecured Consumer Creditor Claims),* ECF No. 2279.

On April 22, 2020, the GUC Recovery Trust also filed an objection to Claim No. 325. *See Motion for Omnibus Objection to Claim(s) Ditech Holding Corporation GUC Recovery Trust's First Omnibus Objection to Proofs of Claim (Duplicative Claims),* ECF 2215. On April 23, 2020, the objection was withdrawn. *See Notice of Withdrawal of Ditech Holding Corporation GUC Recovery Trust's First Omnibus Objection to Proofs of Claim (Duplicative Claims),* ECF 2238).

The Trustee initially objected to Claim No. 324 on the basis that it lacked sufficient documentation to support the claim. *See Consumer Claims Trustee's Thirtieth Omnibus Objection to Proofs of Claim (Insufficient Documentation Unsecured Consumer Creditor Claims),* ECF 2836. On October 8, 2020, the Trustee withdrew that objection. *See Notice of Withdrawal of Consumer Claims Trustee's Thirtieth Omnibus Objection to Proofs of Claim (Insufficient Documentation Unsecured Consumer Creditor Claims),* ECF 2872.

1.[20] The basis of the Claim is listed as "Violation of Statute, Personal Injury." *Id*. In support of the Claim,[21] Claimant annexes a copy of the Bistline III Clerk's Default. *Id*. at 3.

Claimant later explains that the Claim against Ditech is based on violations of California's HBOR, which prohibits a mortgage servicer from initiating and conducting a foreclosure sale while a first-lien home loan modification application is pending, as well as prohibiting other mortgage servicing related activities while that application is pending. *See* Sur-Reply, p. 7, lines 16-27.

Claimant argues that her losses include "mental and physical anguish, anger, frustration, depression, loss of sleep, eye, neck and back strain reflected in significant weight gain", loss of room to rent ($28,000), attorney's fees ($227,924.99), court costs ($32,656.64), loans taken out to fund her sole proprietorship ($88,205.88), and the principal payment of $276,953.53 allegedly not credited to her loan account, totaling $653,741.04. Reply ¶ 39.

**The Objection**

The Trustee seeks entry of an order disallowing and expunging the Claim because it fails to state a legal basis that establishes wrongdoing or liability on the part of the Debtors that would give rise to compensable recovery. Objection ¶ 3-4. The Trustee contends that upon review of the

---

[20] Page citations are to the PDF page numbers of the Claim.

[21] Claimant alleges that as requested by the Trustee, she supplemented her response with documentation. Sur-Reply, p. 3, lines 7-8. She contends that on September 18, 2020, the Trustee acknowledged in an email that an initial objection for insufficient documentation was filed in error, stating "This is to confirm that the insufficient documentation objection was filed in error with respect to Ms. Bistline's claim (#324). I will withdraw the objection. I have the documents that you sent and will reach out if I have any further questions." Sur-Reply, p. 3, lines 7-14; Sur-Reply Exhibit 1.

Claimant alleges that the Trustee made no further inquiries but instead participated in defense strategy sessions with Ditech's California attorneys from September 21-30, 2021. Sur-Reply, p. 3, lines 15-19; Sur-Reply Exhibit 2. She claims she was shocked when her counsel received an email from the Trustee on September 22, 2022, providing "advance notice of the objection to Ms. Bistline's claim" and stating that "as originally filed, the claim relies on a judgment that has since been vacated. It cannot serve as the basis of the claim." Sur-Reply, pp. 3-4, lines 20-22, 1-22; Sur-Reply Exhibit 3.

Debtors' books and records, she determined that the Claim fails to state a claim upon which relief may be granted. *Id*. ¶ 4, Exhibit A at 1.

**The Response[22]**

Claimant states that the basis of her claim is violation of statute and personal injury requesting monetary damages from Ditech, referencing a lawsuit filed in the United States District Court, Central District of California, case number 18-cv-08895. Response, p. 2, lines 6-10. Claimant notes that on November 28, 2019, a default was entered against Ditech which has never been vacated. *Id.* p. 2, lines 11-14.

According to Claimant, she entered into a fixed rate home loan with Washington Mutual Bank on April 24, 2007, secured by a deed of trust for the Property. *Id.* p. 3, lines 4-6. Claimant asserts that Freddie Mac claims it acquired the beneficial interest in the loan on May 25, 2007, which contradicts JPMorgan Chase Bank's argument that it acquired the beneficial interest as successor-in-interest on September 25, 2008. *Id.* p. 3, lines 13-20.

Claimant alleges that the Note was altered, which is a crime under California Penal Code § 476, to reflect an endorsement by Cynthia Riley "without recourse," even though Ms. Riley had stopped working as an endorser six months prior to Claimant entering into the loan. *Id.* p. 3, lines 21-27.

Claimant contends that she continued making payments but ran into trouble with servicers who failed to properly credit her monthly payments despite numerous Qualified Written Requests for an accounting. *Id.* p. 4, lines 1-3. Claimant states that in 2013, Ocwen, who was then servicing

---

[22] Claimant notes that contrary to the Trustee's statement that no previous request for relief had been made, the Trustee had previously objected to her claim on September 18, 2020, and then withdrew the objection on October 8, 2020. Response, p. 1, lines 23-27.

the loan, acknowledged receiving a $276,953.53 principal payment from her, which was never credited by Green Tree. *Id.* p. 3-4, lines 28, 4-6.

Because this sum was never credited, Claimant suspended her monthly mortgage payments, resulting in a Notice of Default and election to sell being recorded against her residence. *Id.* p. 4, lines 8-10. On November 4, 2016, Claimant provided Ditech with a first-lien home loan modification application. *Id.* p. 4, lines 11-13.

Claimant argues that HBOR prohibits initiating and conducting a foreclosure sale while a first-lien home loan modification application is pending. *Id.* p. 4, lines 14-19. Despite emails from Claimant's counsel advising Ditech's counsel of this law, a foreclosure sale was conducted on November 22, 2016. *Id.* p. 4, lines 20-23.

Claimant claims that Ditech, realizing it violated California law, requested permission from Freddie Mac to "roll back" the sale, which Freddie Mac provided. *Id.* p. 4, lines 27-28. However, because neither Ditech nor Freddie Mac filed a rescission of the Notice of Default and election to sell, Claimant has been unable to market, refinance, or sell the Property, and unable to obtain credit necessary to fund her sole proprietor business. *Id.* p. 5, lines 2-9.

Claimant also alleges harassment by people coming onto the Property to inspect it due to a second notice of trustee's sale as instructed by Ditech, and claims she has been illegally charged for mortgage insurance and property taxes as debits toward an escrow account, even though she opted out of both when entering the loan and is current with both. *Id.* p. 5, lines 10-20.

These issues culminated in Claimant filing a lawsuit against Ditech and Freddie Mac, with a Clerk's Default entered against Ditech on November 28, 2018. *Id.* p. 5, lines 21-25. According to Claimant, the court stayed all monetary and equitable claims against Ditech after receiving notice of the bankruptcy. *Id.* p. 5, lines 26-28.

20

Claimant states that during discovery, Ditech admitted it failed to comply with California law by not providing the required legal notices before conducting a foreclosure sale, instead sending them to its own counsel in "error." *Id.* p. 6, lines 6-10. Additionally, discovery disclosed that the $276,953.53 paid toward principal in 2013 matches the exact sum needed to pay off the loan as of April 15, 2013. *Id.* p. 6, lines 11-14.

Claimant argues that personal injury damages, both special and general, proximately causing harm to a borrower due to negligence, violation of statute, and fraud as a result of a wrongful foreclosure are recoverable. *Id.* p. 6, lines 19-24.

Claimant states that nothing was heard from the Trustee for almost three years, which has prejudiced her as court rulings have been made relying on the fact she had a viable claim. *Id.* p. 6-7, lines 28, 1-3. On September 26, 2022, Ms. Tara Twomey emailed Claimant's representative stating that the claim relies on a judgment that has been vacated and cannot serve as the basis of the claim. *Id.* p. 7, lines 3-14.

Claimant's representative requested evidence of the pleading vacating the judgment but received no response, necessitating this response filing. *Id.* p. 7-8, lines 22-28, 1-5.

**The Reply**

The Trustee argues that the Claim should be dismissed under Rule 12(b)(6) as Claimant fails to state a claim in which relief can be granted. Reply ¶ 48. The Trustee contends that the Clerk's Default cited by Claimant is not preclusive, as Claimant's reliance on this default is misplaced because it was vacated on February 22, 2019. *Id.* ¶¶ 49-50.

The Trustee argues that Claimant's claims are barred by res judicata or collateral estoppel. *Id.* ¶ 51. The Trustee notes that the dispute underlying this matter relates back to 2016, and since then, there have been two completed federal trial court decisions against Claimant relating to the

foreclosure (Bistline I and Bistline III), which were affirmed by the Ninth Circuit, and a third trial court decision against Claimant (Bistline II) that has been appealed for the second time. *Id.* ¶ 51. The Trustee points out that Claimant has yet to establish any entitlement to relief in any forum. *Id.* ¶ 51.

The Trustee explains that res judicata describes the preclusive effect of a final judgment on the merits and prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. *Id.* ¶ 53. Collateral estoppel, or issue preclusion, "precludes relitigation of issues argued and decided in prior proceedings." *Id.* ¶ 53.

The Trustee notes that prerequisite elements for applying these doctrines are: (1) a claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding. *Id.* ¶ 53. She says that a "claim" or "cause of action" is defined as "the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory advanced." *Id.* ¶ 54. This is known as the "primary rights theory" where "[w]hen two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." *Id*. The primary right in an action against foreclosure proceedings is the plaintiff's "ownership interest in the Property." *Id.*

The Trustee argues that under res judicata, "all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date." *Id.* ¶ 55. She contends that Claimant's allegations that Debtors did not have the right to collect on her Mortgage are barred by res judicata. *Id.* ¶ 56. The Trustee notes that at the heart of Claimant's argument is her belief that Debtors did not validate or prove the underlying mortgage debt. *Id.*

The Trustee summarizes several allegations made by Claimant about the Note being altered, failure to credit payments, and void mortgage assignments. *Id.* ¶¶ 56-58. The Trustee argues that in Bistline I, the district court dismissed claims related to the validity of assignments without leave to amend, finding Claimant could not establish standing to challenge the validity of the assignments. *Id.* ¶ 58.

The Trustee notes that in Bistline I the district court granted Debtors' motion to dismiss the first amended complaint as to Claims II-IV and granted Debtors' summary judgment motion against Claimant on Claim I, with the Ninth Circuit affirming on October 18, 2019. *Id.* ¶ 60. She also argues that in Bistline II, the state court found Claimant was attempting to relitigate the same matter on different theories of liability which should have been raised in Bistline I. *Id.* ¶ 61.

The Trustee argues that in Bistline III, Claimant alleged that the assignments of the Mortgage were void, but the court found Claimant had no evidence of injury as the foreclosure sale was rescinded, with the Ninth Circuit affirming this decision. *Id.* ¶ 62. She argues that although the rulings in Bistline III involved only Freddie Mac, Claimant is barred by collateral estoppel on these issues and may not relitigate them against Debtors. *Id.* ¶ 63. The Trustee contends that both California and federal courts have recognized that successive actions challenging foreclosure activities are based on a single primary right. *Id.*

The Trustee argues that Claimant's claims under HBOR are also barred by res judicata. *Id.* ¶ 65. The Trustee notes that Claimant alleged Debtors violated HBOR by conducting a foreclosure sale on November 22, 2016 while her loss mitigation application submitted on November 4, 2016 was pending. *Id.* The Trustee recounts the litigation history of these HBOR claims in Bistline I, II, and III, arguing that the courts have already ruled on these claims. *Id.* ¶¶ 68-73. She argues that even if Claimant's claims against Debtors for violations of HBOR are not barred by res judicata,

the Claim should still be disallowed as Claimant fails to state a claim upon which relief may be granted. *Id.* ¶ 74.

The Trustee contends that Claimant appears to misread California civil code § 2924.10, which requires a mortgage servicer to provide written acknowledgment of receipt of documentation within five business days of receipt, and argues that Debtors provided a timely acknowledgement. *Id.* ¶¶ 79-80. The Trustee argues that California courts have stated that "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Id.* ¶ 92. The Trustee notes that California law generally provides that a servicer or lender owes no duty of care to a borrower during modification discussions. *Id.*

The Trustee argues that Debtors owed no duty to Claimant as a matter of law, although Claimant alleges that Debtors owed her a duty under HBOR. *Id.* ¶ 93. The Trustee contends that finding a duty of care based on HBOR would be inconsistent with the remedies it affords. *Id.*

The Trustee argues that Claimant fails to state a claim under RFDCPA. *Id.* ¶ 94. The Trustee notes that Claimant alleges she was harassed at all hours by "unknown" people coming onto the Property, but does not claim Debtors were the ones harassing her. *Id.* The Trustee argues that publication of the notice of sale was not a communication to a third party that Debtors knew or had reason to believe would defame Claimant, as non-judicial foreclosure documents are subject to privilege under California civil code. *Id.* ¶ 100. The Trustee contends that Claimant's only factual allegation that Debtors acted with malice is that the notice of sale was never recorded, but by Claimant's own admission, she had stopped paying her Mortgage Loan and does not allege that she tendered the amount in arrears. *Id.* ¶ 102.

The Trustee argues that where an objection refuting at least one of the claim's essential allegations is asserted, Claimant bears the burden to demonstrate the validity of the claim, and Claimant has failed to meet this burden as they have provided no specific factual allegations that would support their conclusory statements. *Id.* ¶ 106.

**The Sur-Reply**

In her Sur-Reply, Claimant explains that she filed a Proof of Claim with the Trustee on March 19, 2019, which was initially acknowledged as an error. Sur-Reply, p. 3, lines 4-14. However, the Trustee later filed an objection on September 23, 2022, contending there was "insufficient legal basis" for her claim. *Id.* p. 5, lines 6-9.

The Sur-Reply explains that the underlying basis of Claimant's unsecured claim against Ditech stems from violations of HBOR. *Id.* p. 7, lines 16-17. Claimant contends that the Court should apply state substantive law, in this case HBOR. *Id.* p. 7, lines 18-23.

According to Claimant, both Ditech as the mortgage servicer and Freddie Mac as the beneficiary were jointly and severally liable for violations of HBOR. *Id.* p. 8-9, lines 25, 1-5. She argues that HBOR imposes statutory duties on mortgage servicers, beneficiaries, or trustees, creating liability for negligence per se. *Id.* p. 9, lines 7-11.

Claimant states that on November 4, 2016, while her first lawsuit (Bistline I) was pending, she provided Ditech a home loan modification application. *Id.* p. 10, lines 7-9. She alleges that during the review process, Ditech caused a foreclosure of her home on November 22, 2016, because Ditech failed to properly notify her that her application was being denied. *Id.* p. 10, lines 10-15.

Claimant further argues that Ditech admitted violating California law by requesting permission from Freddie Mac to "roll back" and rescind the foreclosure sale, stating the request

was due to "violation of the STATE OF CA law." *Id.* p. 11, lines 14-18. Despite the rescission, Claimant contends that Ditech and Freddie Mac did not record a formal rescission of the Notice of Default, which damaged her credit and business. *Id.* p. 11, lines 19-25. Claimant claims SLS acquired the servicing rights to her home loan, and upon reviewing the documents provided, "it was uncovered that the principle sum due on her Mortgage Loan serviced by Ditech had been paid off, to Ocwen in 2013, which thereafter assigned its mortgage servicing rights to Ditech, evidencing the fact that Claimant had never been default." *Id.* p. 12, lines 10-13.

Claimant responds to the Trustee's res judicata argument by citing California law that res judicata does not bar claims arising after the initial complaint is filed. *Id.* p. 14, lines 13-15. She argues that her claims related to HBOR violations that occurred while Bistline I was in litigation were not required to be litigated in that action and could be properly asserted in a second lawsuit. *Id.* p. 14-15, lines 24-25, 1-7.

Claimant also argues that none of her claims for monetary damages against Ditech were actually litigated in Bistline II due to the bankruptcy or in Bistline III, which was dismissed based on the Rooker-Feldman doctrine. *Id.* p. 15, lines 8-14. Additionally, she notes that under California law, a judgment "is not final for purposes of res judicata during the pendency of and until the resolution of the appeal." *Id.* p. 15-16, lines 15, 1-3.

Finally, Claimant requests that if the Court grants the Trustee's motion to dismiss, she should be granted leave to amend her Proof of Claim, citing Rule 15(a) which states that leave to amend "shall be freely given when justice so requires." *Id.* p. 16, lines 11-13. She offers to provide additional documentation discovered during the four years after her Proof of Claim was filed. *Id.* p. 16, lines 24-28.

**The Sur-Response**

The Trustee argues that Claimant has tried and failed three times to assert her claim against Debtors and Freddie Mac, who owns her Mortgage and is in privity with the Debtors for purposes of the Claim. Sur-Response ¶ 1. All her claims but one have been dismissed, with her only remaining claim being for violation of HBOR. *Id*. This claim was not dismissed against Freddie Mac because of the Merrill doctrine, which is unique to Freddie Mac and does not affect the Claim against the Debtors. *Id*. The Trustee argues that prior judgments against Claimant protect the Debtors from having to re-litigate the Claim, and even if they do not, her Claim does not adequately allege claims for relief under HBOR or otherwise and must be disallowed. *Id*.

The Trustee explains that Claimant alleges violations of HBOR and relies upon those alleged violations to support her claims for negligence per se, common law negligence, and fraud. *Id*. ¶ 2. The Trustee states that Claimant alleges in a conclusory manner that Debtors violated HBOR's prohibition on "dual tracking" under California Civil Code § 2923.6 by failing to notify Claimant of the decision on her November 4, 2016 loss mitigation application before the foreclosure sale held on November 22, 2016. *Id*.

The Trustee notes that section 2923.5 requires a mortgage servicer to wait thirty days after initial contact with the borrower before recording a notice of default. *Id.* ¶ 3. Section 2923.6 prohibits a mortgage servicer from recording a notice of default or conducting a trustee's sale if "a borrower submits a complete application for a first lien loan modification" at least five business days before a scheduled foreclosure sale. *Id.* Once a borrower submits a complete application or related document, the mortgage servicer must provide written acknowledgment within five business days. *Id.*

The Trustee notes that completeness is defined by when the borrower supplies the required documents to the mortgage servicer, not when the servicer completes its review. *Id.* ¶ 4. If a borrower complies with those initial requirements, the "application is complete." *Id.*

The Trustee presents a chronological table of events related to the foreclosure process and litigation from May 2015 to August 3, 2023. *Id.* ¶ 5. This timeline includes Claimant's default, Ditech's communications regarding loss mitigation options, the recording of the Notice of Default, Claimant's multiple lawsuits (Bistline I, II, and III), the submission of her loan modification application, the trustee's sale, the rescission of the sale, and various court decisions regarding her claims. *Id.*

The Trustee argues that Claimant's losses in three prior California actions preclude her from obtaining relief in this proceeding. *Id.* ¶ 6. For Bistline I, the Trustee acknowledges Claimant's Claim is based primarily on violation of California's HBOR based alleged failure to offer loan mitigation options before recording a notice of sale. *Id.* However, the Trustee contends that Ditech offered loan modification options through notices in September 2015 and January 2016, and nothing suggests Claimant sought a loan modification in response to those notices. *Id.*

The Trustee argues that Bistline I properly determined that Ditech did not violate HBOR section 2923.5 when recording the Notice of Default on March 4, 2016, and because those events occurred before Claimant filed her complaint in Bistline I, that determination is binding in this proceeding. *Id.* ¶ 7. The Trustee contends that the later loan modification application allegedly submitted on November 4, 2016 (but which appears to have been submitted earlier) would not retroactively revive section 2923.5's prohibitions or permit Claimant to assert a violation of section 2923.6's anti-dual-tracking provision. *Id.* ¶ 8.

The Trustee argues that allowing Claimant to rely on section 2923.6 would permit gamesmanship in the litigation and loan modification process, essentially allowing a borrower to wait for foreclosure to begin, file an action under HBOR, then submit a modification application to further delay foreclosure after a court determines the servicer complied with section 2923.5's notice requirements. *Id.*

The Trustee notes that Claimant does not expressly state why Bistline III would not be binding but refers to the district court's reference to Rooker-Feldman doctrine. *Id.* ¶ 9. The Trustee argues that the district court dismissed Claimant's HBOR, negligence, and wrongful foreclosure claims against Freddie Mac, finding that Claimant did not suffer any damages—a determination affirmed by the Ninth Circuit and found res judicata in Bistline II. *Id.*

For Bistline II, the Trustee acknowledges Claimant's argument that the decision is on appeal and California does not give res judicata effect to a decision that is on appeal. *Id.* ¶ 10. Nevertheless, the Trustee argues that this Court can still rely on the persuasive reasoning of that decision, which determined that all claims related to the foreclosure process are now barred. *Id.*

The Trustee argues that even if the prior decisions do not bind Claimant, her Claim should be dismissed for the same reasons the California courts dismissed them. *Id.* ¶ 11. The Trustee contends that the record fails to support a claim for violation of California's HBOR. *Id.* The Trustee points out that Claimant fails to allege the November 4, 2016 application was her first application, that there had been a material change in circumstances since the first fair opportunity to be evaluated, or that she submitted a "complete" application as required by HBOR. *Id.* ¶ 12. Additionally, the Trustee argues that Claimant may not assert a monetary claim for an HBOR violation, as the statute limits remedies depending on whether a trustee's deed upon sale has been recorded. *Id.*

The Trustee argues that although Claimant's allegations focus on the sale that took place on November 22, 2016, she had been in default since May 2015 and had extensive communications with Debtors before her alleged initial loss mitigation application dated November 4, 2016. *Id.* ¶ 13. The Trustee points to a September 2015 letter in which Debtors offered Claimant a Trial Period Plan ("TPP") and informed her that successful completion would result in a modification and fixed interest rate. *Id.* ¶ 14. Claimant fails to allege that she accepted the TPP or provided a "Borrower Response Package" by the deadline. *Id.* ¶ 15.

The Trustee explains that the California Legislature enacted HBOR to ensure borrowers have a meaningful opportunity to obtain loss mitigation options, while also recognizing the need to prevent unnecessary delays in the foreclosure process. *Id.* ¶ 16. The Trustee argues that in this instance, as determined by the Court in Bistline I, Claimant was given a fair opportunity to be evaluated for loss mitigation options. *Id.* ¶ 17.

The Trustee contends that Claimant fails to adequately allege that her first loan modification application was not submitted until November 4, 2016. *Id.* ¶ 18. The Trustee points out that the sale was originally scheduled for August 30, 2016, and Claimant provides no explanation for why it was postponed. *Id.* The Trustee notes that the subject line of the November 4, 2016 email ("ATTACHED LOAN MODIFICATION PACKAGE PER YOUR 9/28/2016 WHICH HAD BEEN PREVIOUSLY FAXED AND SENT BY CERTIFIED MAIL") suggests the November 4 submission was not the first attempt but that there was a previous, though incomplete, modification application dated nearly two months before the November foreclosure sale. *Id.* ¶ 19.

The Trustee argues that Claimant fails to adequately allege that her loan modification applications were complete. *Id.* ¶ 20. The Trustee details the contents of Claimant's November

2016 submission, noting that it included documents dated from August through October 2016, effectively confirming that whatever was submitted on September 28, 2016 was incomplete. *Id.*

The Trustee points out that the Uniform Borrowers Assistance Form (the "UBA Form") requires specific documents for a complete Borrower Response Package, including a signed federal income tax return for self-employed borrowers like Claimant. *Id.* ¶ 21. The Trustee disputes Claimant's assertion in her Sur-Reply that signed tax returns are not required, citing the UBA Form itself and the Freddie Mac Single Family Seller/Servicer Guide. *Id.* ¶ 22-23.

The Trustee argues that Claimant's application was incomplete regardless of when it was submitted. *Id.* ¶ 24-25. If submitted on September 28, 2016, the Form 4506-T Request for Transcript of Tax Return (the "Form 4506-T") dated October 10, 2016 would have been missing. *Id.* ¶ 24. If submitted on November 4, 2016, Claimant failed to provide her most recent profit/loss statement and complete bank statements. *Id.* Most importantly, Claimant failed to provide her signed federal income tax return, rendering her application incomplete. *Id.* ¶ 25.

The Trustee argues that Claimant's bare assertions that her application was complete are insufficient. *Id.* ¶ 26. The Trustee notes that courts typically uphold such claims only with much more robust factual allegations than what Claimant has provided. *Id.* ¶ 27.

The Trustee argues that Claimant attempts to shift blame for the deficiencies in her application by alleging late communication from Debtors, but a letter shows that Debtors' February 2017 letter was responding to Claimant's February 14, 2017 application, not one from fall 2016. *Id.* ¶ 28. Additionally, the Trustee argues that Claimant fails to allege a material change in her financial circumstances since she was previously evaluated, which might support a right to submit a new application after being offered a modification in September 2015. *Id.* ¶ 29.

The Trustee argues that Claimant's UBA Form listed her hardship as beginning in 2012 and described it as "long-term or permanent," but instead of providing a detailed explanation, she simply wrote "attorney fees" on the form. *Id*. The Trustee cites a case where it found similar bare bones statements insufficient to overcome the purpose of section 2923.6(g), which is meant to relieve mortgage servicers from evaluating multiple loan modification applications submitted for the purpose of delay. *Id*. ¶ 30.

The Trustee argues that Claimant is not entitled to pre-sale damages for an alleged HBOR violation. *Id*. ¶ 31. The Trustee explains that under HBOR, a borrower may seek injunctive relief for violations if a trustee's deed upon sale has not been recorded, and may only seek actual economic damages if a trustee's deed has been recorded and the violation was not corrected before recordation. *Id*.

The Trustee states that while a foreclosure sale occurred on November 22, 2016, a trustee's deed upon sale was not prepared, signed, or recorded. *Id*. ¶ 32. Debtors immediately requested approval to rescind the sale, which Freddie Mac approved, and the sale was rescinded on November 30, 2016. *Id*. Since no trustee's deed was recorded and any purported violations were cured by rescinding the sale, the Trustee argues that Claimant cannot obtain relief under HBOR. *Id*. ¶ 33.

The Trustee acknowledges Claimant's argument that remedies under HBOR are "non-exclusive" and she may sue for other claims under California law: negligence per se, common law negligence, and fraud. *Id*. ¶ 34. The Trustee argues that Claimant does not adequately plead any of these claims. *Id*. ¶¶ 35-58.

Regarding negligence per se, the Trustee explains the four elements required under California Evidence Code section 669(a). *Id*. ¶ 35-36. The Trustee argues that Claimant has failed

to meet her burden to allege these elements, as she fails to allege any statute or regulation that required Debtors to treat her modification with due care. *Id.* ¶ 38. The Trustee underscores that HBOR does not apply because Claimant's November 4, 2016 application was submitted after she had been afforded a fair opportunity to be evaluated in 2015 and was incomplete. *Id.*

For common law negligence, the Trustee outlines the required elements and argues that a financial institution generally owes no duty of care to a borrower when its involvement does not exceed its conventional role as a lender. *Id.* ¶ 39. The Trustee cites California Supreme Court cases where it concluded there was no duty for a lender to process, review, and respond carefully to loan modification applications. *Id.* ¶ 40.

The Trustee argues that because Claimant failed to adequately allege her November 4, 2016 application was complete, it did not meet HBOR's requirements, and thus Debtors did not owe a duty of care to review it. *Id.* ¶ 41. The Trustee also invokes the economic loss rule, which bars recovery in tort for purely economic losses. *Id.* ¶ 42.

The Trustee argues that Claimant entered into an agreement specifying rights and obligations regarding the Mortgage Loan, which gave Debtors the right to seize and sell the property if payments stopped. *Id.* ¶ 44. Imposing a duty on Debtors regarding the loss mitigation application would be contrary to the rights and obligations in the loan contract. *Id.*

The Trustee cites the California Supreme Court's reasoning that a lender's handling of a modification application is part of its process to decide whether to adhere to the existing contract or offer new terms, and is part of its assessment of how to recoup money owed. *Id.* ¶ 45. The Trustee argues that Claimant is asking the Court to acknowledge a negligence-based duty broader than HBOR's narrow affirmative duties, which the California Supreme Court declined to create

given that Congress and the California Legislature have passed detailed regulations specifying lenders' obligations. *Id.* ¶ 46.

Regarding fraud, the Trustee defines the elements required under California law and the heightened pleading standard under Rule 9(b). *Id.* ¶ 47-51. The Trustee argues that Claimant does not meet these requirements. *Id.* ¶ 52. The Trustee argues that Claimant's allegation that Debtors committed fraud by falsely stating she had received proper notice of her application denial fails the particularity requirement of Rule 9(b), as she does not cite any specific letter, date, author, or provide the letter as an exhibit. *Id.* ¶ 53. Similarly, her allegation about Debtors' written statement that denial notice was properly given fails the particularity requirement. *Id.* ¶ 54.

The Trustee argues that Claimant's allegations of fraud regarding the alleged payoff of her Mortgage Loan are equally vague, despite her claimed review of 8,000 pages of documents. *Id.* ¶ 55. The Trustee states that Claimant provides no documentation of the payment or factual allegations about who paid off the Mortgage Loan, when, or why she was unaware until later that it had been paid off. *Id.* She also fails to allege how or whether Debtors knew of any falsity. *Id.*

The Trustee argues that instead of providing the letter allegedly showing fraud, Claimant provides an excerpt of Barbara Hagar's deposition that is insufficient to determine the contents of the "disengagement letter" or what documents were requested. *Id.* ¶ 56. The Trustee notes that a letter dated October 2016 would have preceded a November 4 modification application and thus could not have addressed it. *Id.* Ms. Hagar testified that sending the letter to Debtor's counsel rather than Claimant was "an error," negating any allegation it was sent with intent to deceive. *Id.*

The Trustee states that after searching the records from prior proceedings, the only relevant letter found was dated November 14, 2016, which, contrary to Claimant's description, was not a

34

notice of denial regarding her loss mitigation application but rather stated Debtors were investigating her inquiry and would respond within thirty business days. *Id.* ¶ 57.

Finally, the Trustee argues that Claimant fails to sufficiently plead damages based on the alleged fraud. *Id.* ¶ 58. While she claims that Debtors' failure to rescind the Notice of Default prevented her from obtaining insurance, financing vehicles, or refinancing properties, she fails to allege she cured or attempted to cure the defaults. *Id.* The record shows a history of defaults on her Mortgage Loan and does not show how her alleged difficulties obtaining financing resulted from the alleged fraud rather than her own defaults. *Id.*

**The Sur-Response Objection**

Claimant objects to the Sur-Response, on the basis that responses are limited to a motion and a reply, unless authorized by the Court. Sur-Response Objection at 3. Claimant requests, in the alternative, leave to address the new issues raised in the Sur-Response. Sur-Response Objection at 6. She says she was not noticed for a hearing on lack of documentation and the Trustee should have asked for more documentation. *Id.* at 5.

## LEGAL PRINCIPLES

A claim properly filed under section 501 of the Bankruptcy Code is "deemed allowed" absent an objection. 11 U.S.C. § 502(a). Such claim constitutes "prima facie evidence of the validity and amount of a claim." Fed. R. Bankr. P. 3001(f). A court may only disallow a claim if a party in interest has objected, and upon notice and hearing, the court finds the claim falls under one of the exceptions found in section 502(b) of the Bankruptcy Code. 11 U.S.C. § 502(b); *In re Manhattan Jeep Chrysler Dodge, Inc.*, 602 B.R. 483, 491 (Bankr. S.D.N.Y. 2019) ("Section 502 of the Bankruptcy Code provides generally that a proof of claim should be allowed except to the extent it is objectionable on various grounds."). As relevant to the Objection, section 502(b)(1)

35

provides that a claim may be disallowed to the extent it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re Residential Cap., LLC*, 513 B.R. 446, 458 (Bankr. S.D.N.Y. 2014) (citing *In re W.R. Grace & Co.,* 346 B.R. 672, 674 (Bankr. D. Del. 2006)).

The merits of the Claim are not at issue**.** A Sufficiency Hearing is a non-evidentiary hearing to address whether a Contested Claim "has failed to state a claim against the Debtors which can be allowed and should be dismissed pursuant to Bankruptcy Rule 7012." Claims Procedures Order ¶ 3(iv)(a); *see* Fed. R. Bankr. P. 7012(b) (quoting Rule 12(b)) (applying the federal standard under Rule 12(b)(6) motion to dismiss standard to adversary proceedings). The function of a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Havens v. James*, 76 F.4th 103, 116-17 (2d Cir. 2023) (quoting *Festa v. Loc. 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990)) (internal quotations omitted). Rule 12(b)(6) ensures that, consistent with Rule 8(a), a complaint includes 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Alharbi v. Miller*, 368 F. Supp. 3d 527, 560 (E.D.N.Y. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Accordingly, in applying the legal standards applicable to Rule 12(b)(6) to the Claim, the Court assesses the sufficiency of the facts alleged in support of the Claim in light of the pleading standards under Rule 8(a).

Rule 8 calls for a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To satisfy this standard, the complaint must at a minimum 'disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis

for recovery.'" *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)); *see Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) ("[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level.").

The Rule 12(b)(6) standard requires courts to accept all factual allegations as true and to draw all reasonable inferences in favor of the non-moving party. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Further, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding what factual matter to accept as true, the court is not required to "credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## ANALYSIS

### The Sur-Response Objection is Overruled

As an initial matter, the Court addresses the procedural issues raised in the Sur-Response Objection. Claimant argues the Sur-Response should not be considered because, generally, such responses are not permitted unless expressly authorized by the Court. Sur-Response Objection at

3. She contends that she received notice ("Notice")[23] that she was specifically authorized to file a sur-reply, but nothing within the Notice indicated that a sur-response was permitted. *Id*.

Pursuant to the Claims Procedures Order, as amended, the Trustee "may file and serve on Claimant by email and first class mail a response to a surreply at least 7 days before the Sufficiency Hearing." Amended Claims Procedures Order ¶ 3(vi)(b)(III). Moreover, the Notice that Claimant cites to specifically provides: "[i]f you file and serve a Sur-reply by March 13, 2025, the Trustee may file an additional response at least seven days before the hearing." Notice at 3. The Trustee filed the Sur-Response on March 20, 2025, seven days prior to this hearing. The Sur-Response is timely and thus permitted by the Claims Procedures Order. The Court overrules the Sur-Response Objection.

In the event the Court overrules the Sur-Response Objection, Claimant requests leave to respond to the Sur-Response to address the new issues raised by the Trustee. Sur-Response Objection at 6. She says these new issues are (i) the UBA Form signed by Claimant, related to her failure to provide signed individual tax returns with her loan modification application, (ii) the Trustee's attempt to justify the foreclosure on the Property, and (iii) Claimant's burden to provide sufficient evidence supporting her Claim related to negligence per se, negligence, and fraud. *Id*. at 3-5. Claimant says foreclosure was improper because Freddie Mac did not follow its own Seller/Servicing Guide procedures. *Id*. at 3.

However, these matters appear to be elaborations on arguments Claimant has already addressed in her previous submissions rather than genuinely new issues requiring additional response. For instance, Claimant previously discussed the documentation requirements for her loan

---

[23] Claimant cites the *Notice of Hearing on Consumer Claims Trustee's Fifty-Ninth Omnibus Objection (Insufficient Legal Basis Unsecured Consumer Creditor Claims) With Respect to the Claim of Kristine Ann Bistline (Claim 324)*, ECF No. 5386.

modification application in both her Response and Sur-Reply. Similarly, she has already presented arguments regarding Ditech's foreclosure actions and her theories of liability. Moreover, under the Claims Procedures Order, there is no provision entitling Claimant to file a response to the Trustee's Sur-Response. For these reasons, the Court respectfully denies Claimant's request for leave to file an additional response. *See G&G Closed Cir. Events, LLC v. Pacheco*, No. 20-CV-7457 (LJL), 2021 WL 4296649, at *3 (S.D.N.Y. Sept. 20, 2021) ("[T]he decision to permit a party to file supplemental submissions is within the Court's discretion.").

## Whether Claimant States a Claim for Relief Against Ditech

Claimant is requesting monetary damages based on "violation of statute" and "personal injury." Claim at 1; Response at 2, lines 6-10. She appears to be basing her Claim, in part, on the Bistline III Clerk's Default. Claim at 3; Response p. 2, lines 11-14. She alleges Ditech violated HBOR by foreclosing while the loan modification application was pending. Response, p. 4, lines 20-23; Sur-Reply, p. 7, lines 14-18. She argues Ditech, along with Freddie Mac, is jointly and severally liable for violations of HBOR. Sur-Reply p. 9, lines 25-28. She also contends Ditech violated RFDCPA by posting the notice of trustee's sale on the Property and illegally charging her for mortgage insurance and property taxes. Response p. 5, lines 10-20. She claims she has suffered personal injury damages due negligence, negligence per se, and fraud. Response at 6 lines 19-26; Sur-Reply p. 9, lines 6-11.

In broad strokes, the Trustee argues that the Clerk's Default is not preclusive, the claims are barred by res judicata and collateral estoppel, and Claimant fails to state a claim for relief for violation of HBOR, violation of RFDCPA, negligence, negligence per se, or fraud. The Court will address each in turn.

### Whether the Bistline III Clerk's Default is Preclusive

Claimant annexes a copy of the Clerk's Default to the Claim and Response. She says it has never been vacated. Response, p. 2, lines 2-9. The Bistline III Clerk's Default was entered on November 29. 2018, pursuant to Rule 55. *See* Bistline III Clerk's Default.

"Rule 55 provides a two-step process, first, a party must obtain a clerk's entry of default under Rule 55(a); second, the party must obtain a default judgment under Rule 55(b)." *Douglas v. Kalanta*, No. 1:21-cv-01535, 2022 WL 815746, at *1 (E.D. Cal. Mar. 17, 2022). Rule 55(a) addresses entering a default: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Rule 55(a). However, "[t]he court may set aside an entry of default for good cause." Rule 55(c). "Even if entry of default has been made by the court clerk, granting a default judgment is not automatic; rather, it is left to the sound discretion of the court." *PepsiCo v. Triunfo-Mex, Inc.,* 189 F.R.D. 431, 432 (C.D. Cal. 1999).

Claimant appears to overstate the legal significance of the Clerk's Default. Claimant does not allege that a default judgment was ever entered against Ditech in Bistline III. What Claimant relies on is merely a clerk's entry of default under Rule 55(a), not a default judgment under Rule 55(b). This distinction is significant, as courts have recognized that "[a] default entry is not a judgment. The mere fact that a defendant's default has been entered does not constitute an adjudication of any of the issues raised in the complaint." *Lonati, S.P.A. v. Soxnet, Inc.*, No. CV 20-5539, 2022 WL 2784816, at *2 (C.D. Cal. June 7, 2022). Without a default judgment, Claimant cannot rely on the clerk's entry of default as a basis for collecting damages or as having any preclusive effect in this proceeding.

*Whether the Claim is Precluded by Res Judicata*

Before analyzing whether the Claim is precluded by res judicata, it is important to establish which law governs this determination. When federal courts consider the preclusive effect of prior judgments in a bankruptcy proceeding where the underlying case was based on diversity jurisdiction, they must apply the preclusion law of the state in which the judgment was rendered. In this case, Bistline I was a diversity action in federal court in California applying California substantive law, and both parties have consistently cited and relied upon California preclusion law in their arguments. The Supreme Court has established that "the law that would be applied by state courts in the State in which the federal diversity court sits" controls res judicata determinations. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). Indeed, state law governs the application of res judicata and collateral estoppel in cases where the prior judgment involved the application of state law. *Tutor Perini Bldg. Corp. v. New York City Reg'l Ctr., LLC*, 525 F. Supp. 3d 482, 513 (S.D.N.Y. 2021). Additionally, res judicata can properly be considered at this stage of proceedings, as courts have recognized that "res judicata can be raised and considered on a pre-trial motion to dismiss." *Gitnik v. Home Depot U.S.A., Inc.*, No. 07 CIV. 1244, 2007 WL 2728358, at *3 (S.D.N.Y. Sept. 18, 2007). Accordingly, the Court will apply California law to determine whether the Claim is barred by res judicata.

The Trustee contends that res judicata describes "the preclusive effect of a final judgment on the merits" that "prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." Reply ¶ 53. The Trustee articulates three elements required for res judicata under California law: "(1) [a] claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a

party or in privity with a party to the prior proceeding." *Id.* Claimant does not dispute this is the correct standard in California. Sur-Reply, p. 13, lines 3-9.

First, the Court finds the claim raised here is identical to a claim litigated in the prior proceeding. The Trustee asserts that both California and federal courts have recognized that successive actions challenging the foreclosure activities are based on a single primary right. Reply ¶ 63. Indeed, "[t]o determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have "consistently applied the 'primary rights' theory." *Ochoa v. NDeX W. LLC*, No. B246702, 2014 WL 3858458, at *6 (Cal. Ct. App. Aug. 6, 2014). As explained by the California Supreme Court, this theory provides that "one injury gives rise to only one claim for relief." *Boeken v. Philip Morris USA*, Inc., 48 Cal.4th 788, 798 (2010). The theory holds that a cause of action is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. *Crowley v. Katleman*, 8 Cal.4th 666, 681 (1994). *Crowley* further establishes that "[t]he most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action." *Id.* at 681-82.

Under this theory, courts "determine the causes of action alleged in the complaint 'based on the injury to the plaintiff, not on the legal theory or theories advanced to characterize it.'" *Choi v. Sagemark Consulting*, 18 Cal.App.5th 308, 335 (2017). A plaintiff who pleads several purported causes of action which allege an invasion of the same primary right has stated only one cause of action. *Id.* As articulated in *Crowley*, "[t]he primary right must also be distinguished from the remedy sought: 'The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other.'" *Crowley*, 8 Cal.4th at 682.

The Trustee argues that under res judicata, "all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date." Reply ¶ 55. The Trustee contends that the "primary right in an action against foreclosure proceedings is the plaintiff's 'ownership interest in the property.'" *Id.* ¶ 54.

Claimant argues that res judicata does not bar her Claim because "under California law, res judicata does not bar claims arising after the initial complaint is filed." Sur-Reply, p. 14, lines 8-10. She contends that her Claim related to HBOR violations occurring while Bistline I was in litigation "were not required to be litigated in that action" and could be "properly asserted in a second lawsuit." *Id.* p. 14, lines 16-22. In addition, Claimant argues Bistline I's conclusion that she lacked standing renders that decision not on the merits. *Id.* p.14, n.5.

The case of *In re Aurora Com. Corp.* provides guidance for the present matter as it addressed an analogous situation. In *Aurora*, a California borrower ("Horner") filed a claim in bankruptcy court against Aurora Commercial Corp. after having previously litigated similar issues in a California superior court. In 2012, Horner had filed an action in a California superior court seeking to quiet title on her California property, alleging that the deed of trust she executed "was incorrect, false, and or otherwise misplaced and untrue, due to [the defendants'] actions in creating and or otherwise generating said [deed of trust]." *In re Aurora Com. Corp.*, No. 19-B-10843, 2021 WL 1255668, at *3 (S.D.N.Y. Apr. 1, 2021), *aff'd*, No. 21-1164, 2022 WL 1925939 (2d Cir. June 6, 2022).

Later, in bankruptcy court, Horner filed a proof of claim seeking both to quiet title on the property and money damages, this time specifically alleging that the note and deed of trust "were forged and counterfeited." *Id.* The bankruptcy court disallowed Horner's claim based on res judicata, and the district court affirmed this decision.

The district court engaged in a detailed analysis of how California's primary rights theory applies to successive mortgage-related litigation. The court noted that while the two lawsuits were "not identical in every way"—with the first action seeking only to quiet title and the second seeking both quiet title and damages, and with forgery being explicitly alleged only in the second action—the determinative factor was that "the 'right' alleged to have been violated in each action is the same: her right to possess the property unencumbered by a legally deficient debt." *Id.* at *4.

The district court found persuasive the California Court of Appeal's decision in *Lucore v. U.S. Bank, N.A.*, which involved plaintiffs who had first sued to cancel a foreclosure alleging false documents and misrepresentation, then later brought a second action asserting mortgage fraud, breach of contract, and "fraudulent documentation recordation." *Lucore v. U.S. Bank, N.A.*, No. D065486, 2014 WL 7222494, at *2 (Cal. Ct. App. Dec. 19, 2014). The *Lucore* plaintiffs argued that their second action raised new issues "including the fraudulent assignment of the deed of trust, notary fraud, [and] forgery of the assignment documents." *Id.* at 3. The *Lucore* court rejected this argument, finding that both actions "set out common rights: the right to title to their property due to an invalid or defective assignment of the rights under their loan and flaws in the securitization process." *Id.* at 7.

On appeal of the *Aurora* decision, the Second Circuit affirmed, specifically addressing borrower's argument that res judicata did not apply because her Claims were based on "new rights acquired" after the initial action, both because "the ensuing foreclosure changed the nature of the action and because her later discovery that the deed of trust was forged renders this a distinct claim." *In re Aurora Com. Corp.*, No. 21-1164, 2022 WL 1925939, at *2 (2d Cir. June 6, 2022) (summary order). The Second Circuit rejected this argument, finding that "the factual developments surrounding the foreclosure do not change the nature of the action, which concerns

her 'right to possess [her] property unencumbered by a legally deficient debt,' just as her prior action did." *Id.*

The parallels between *Aurora* and this case are substantial. In both cases, claimants first brought actions challenging rights based on their ownership in the property, then later asserted claims based on allegedly new discoveries or developments regarding the same underlying property. The Claimant, as did the plaintiff in *Aurora,* seeks to avoid res judicata by arguing that her later claims involved new facts or legal theories not presented in the first action. In *Aurora,* the court looked beyond the specific legal theories or newly alleged facts to recognize that the fundamental "primary right" at issue remained the same; the Court shall do the same herein.

The Court finds that the Trustee's argument regarding California's primary rights theory is well-supported. Under California law, when two actions involve the same primary right—here, Claimant's right based on her ownership in the Property—they constitute the same cause of action for res judicata purposes, even if different facts or legal theories are advanced in the second action. *Boeken*, 48 Cal.4th at 798; *Crowley*, 8 Cal.4th at 681 (holding that "the violation of a single primary right gives rise to but a single cause of action"). The fact that loan modification discussions and the foreclosure process continued after the filing of Bistline I does not create a new cause of action based on a different primary right.

Claimant's contention that res judicata does not bar claims arising after the initial complaint misreads California's primary rights theory. Under this theory, as explained by the district court in *Aurora*, what matters is not when particular events occurred, but rather the nature of the primary right at issue. 2021 WL 1255668, at *4. Here, as in *Aurora*, the fundamental right at issue remains the right to possess the Property unencumbered by a legally deficient debt. This primary right encompasses Claimant's allegations regarding the loan modifications, assignments, and

45

foreclosure processes at issue here. And Claimant's purported new facts alleging against Ditech do not "give rise to the vindication of a different primary right" as they are still concerning the same interests in the Property that were litigated in Bistline I. *Id.* at *2.

In other words, while Claimant argues that events occurring after the filing of Bistline I created new claims, these subsequent events implicate the same primary right that was already litigated in Bistline I. California courts have consistently held that where the same primary right is involved, res judicata bars subsequent claims even if based on different factual events. *See Lucore*, 2014 WL 7222494, at *7. In both Bistline I and the Claim, Claimant is asserting her right to possess the Property unencumbered by a legally deficient debt.

To the extent Claimant argues that certain issues in her Claim were not expressly determined in Bistline I, *Aurora* already rejected this understanding. "The doctrine of collateral estoppel bars a party from relitigating 'an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point,'" while "the doctrine of res judicata 'operates to prevent the parties or their privies to a prior action from litigating any matter that was or could have been decided in a previous suit.'" *Aurora*, 2021 WL 1255668, at *4 (quoting *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991) and *Stone v. Williams*, 970 F.2d 1043, 1054 (2d Cir. 1992)).

The *Aurora* court clearly explained this distinction: "[t]hat the court did not expressly determine the validity of the 2005 deed of trust in its decision in the 2012 action would prevent collateral estoppel from applying here, but it does not prevent the application of res judicata in this case." *Id.* The fact that certain issues were not expressly determined in Bistline I does not prevent the application of res judicata to claims arising from the same primary right. In Bistline I, the Ninth Circuit already addressed Claimant's attempt to add new claims, noting that "Bistline did not raise

46

this issue below, nor did she present new facts or explain why she had failed to include the new claim in her earlier complaints." This confirms that Claimant had the opportunity to raise these claims in the original litigation but failed to do so, which is precisely when res judicata principles apply to bar subsequent litigation on the same primary right.

Second, the Court finds the prior proceedings have resulted in a final judgment on the merits. There is no dispute that Bistline I resulted in a final judgment on the merits that was affirmed by the Ninth Circuit on October 18, 2019. Reply ¶ 15; Reply Exhibit L. Claimant's argument that Bistline I's conclusion regarding her lack of standing diminished its preclusive effect is meritless. The Ninth Circuit concluded that: (1) Claimant lacked standing to challenge the validity of the beneficial interest in her deed of trust in a pre-foreclosure action (2) her slander of title claim was covered by litigation privilege, and (3) Claimant was not entitled to amend the complaint to include a claim under the Fair Debt Collection Practices Act because she had not previously raised that claim. Reply Exhibit U ¶ 1-3. The court also specifically "declined to take judicial notice of a consummated foreclosure because the documents she submitted 'do not show beyond a reasonable dispute that a foreclosure occurred.'" *Id.* ¶ 4. These determinations constitute final judgments on substantive legal issues that carry full preclusive effect, and there is no merit to Claimant's contrary contention. *See Weissman v. Mut. Prot. Tr.*, No. B290812, 2019 WL 2265351, at *8 (Cal. Ct. App. May 28, 2019) ("for the purposes of claim preclusion, 'a dismissal with prejudice is the equivalent of a final judgment on the merits, barring the entire cause of action.'").

While Claimant argues that, under California law, a judgment "is not final for purposes of res judicata during the pendency of and until the resolution of the appeal," Sur-Reply, p. 15-16, lines 15, 1-3, this argument pertains to Bistline II, which is currently on appeal. Indeed, under

California law, "a judgment that is on appeal is not final for purposes of applying the doctrines of claim and issue preclusion." *Boblitt v. Boblitt*, 190 Cal. App. 4th 603, 606 (2010). However, the current analysis focuses on the preclusive effect of Bistline I, which has resulted in a final judgment affirmed by the Ninth Circuit. For the analysis here, the Court is not according any preclusive effect to Bistline II. The fact that Bistline II is pending appeal does not diminish the preclusive effect of the separate, final judgment in Bistline I.

Third, the Court finds Ditech is a party to the prior proceeding. Ditech was a named defendant in Bistline I alongside JPMorgan Chase Bank, Homeward Residential, Inc., and Ocwen—all entities in the chain of servicing and assignment for the same Mortgage Loan. *See* Reply Exhibit H; Reply ¶ 10. Although the Ninth Circuit's memorandum disposition noted that it "does not address claims against Ditech Financial LLC" because "the appeal as to Ditech has been closed for administrative purposes because it has filed for bankruptcy", there is no dispute that the district court's rulings constitute final judgments on the merits against Claimant and in favor of Ditech. *See* Reply Exhibit L at 2, n.2. The district court dismissed claims related to the validity of assignments without leave to amend and granted summary judgment specifically to Ditech on the claim that it failed to notify Claimant of loss mitigation options Reply ¶¶ 58, 60; Reply Exhibit K. With no avenue remaining to continue pursuing Bistline I against Ditech, these judgments are final for purposes of res judicata. *Silliman v. Silliman*, No. G050731, 2015 WL 1576611, at *9 (Cal. Ct. App. Apr. 7, 2015) ("The doctrine of res judicata applies only to judgments and orders that are final in the sense that no further judicial act remains to be done to end the litigation."). Claimant was unquestionably a direct party to that litigation, completing the requirements for the third element.

Based on the arguments presented and focusing on the preclusive effect of Bistline I, res judicata bars the Claim. Under California's "primary rights theory," the Claim is concerning the foreclosure activities based on her ownership in the Property. Bistline I addressed claims involving this same primary right, resulting in a final judgment on the merits affirmed by the Ninth Circuit. As Ditech was a defendant and Claimant was a plaintiff in that proceeding, all elements of res judicata are satisfied. The Court finds that Claimant is litigating the exact same rights in her Claim as were conclusively decided in Bistline I, and therefore Bistline I bars her Claim.

### *Whether the Claim is Precluded by Issue Preclusion*

Before analyzing whether the Claim is precluded by issue preclusion, the Court reviews which law governs this determination. When federal courts consider the preclusive effect of prior judgments in a bankruptcy proceeding, they must determine whether to apply federal or state law rules of preclusion. The Supreme Court has determined that when federal or state courts are asked to give preclusive effect to a federal judgment entered in a diversity case, the second court should apply the law that would be applied by the state courts in the state in which the federal diversity court sits. *Semtek Int'l Inc.*, 531 U.S. at 508; *see also NAS Electronics, Inc. v. Transtech Electronics Pte Ltd.*, 262 F. Supp. 2d 134, 143 (S.D.N.Y. 2003) ("the rule announced in *Semtek* applies . . . where the preclusive effect of a federal decision in a diversity case is being litigated in federal court.").

Here, Bistline III was heard in a federal court based on diversity jurisdiction, applying California substantive law, and both parties have consistently cited and relied upon California preclusion law in their arguments. Where a claim "is based on state law . . . was pending in state court before the bankruptcy, . . . the rules applicable to diversity actions should apply." *In re Gawker Media LLC*, 571 B.R. 612, 626 (Bankr. S.D.N.Y. 2017). Additionally, issue preclusion

can properly be raised at the motion to dismiss stage, as Rule 12(b)(6) permits dismissal when it is clear from the face of the complaint that an affirmative defense such as collateral estoppel bars a claim. *Gitnik*, 2007 WL 2728358, at *3; *see also Boyd v. Freeman*, 18 Cal. App. 5th 847, 855 (2017) ("The bar rule is properly raised as a defense on demurrer when all relevant facts "are within the complaint or subject to judicial notice."). Accordingly, the Court will apply California law to determine whether the Claim is barred by issue preclusion.

The Trustee argues that collateral estoppel precludes relitigation of issues argued and decided in prior proceedings. Reply ¶ 53. Under California law, which applies when determining the preclusive effect of California state court judgments, *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (federal courts must give full faith and credit to state court judgments under 28 U.S.C. § 1738), issue preclusion requires the proponent to establish five threshold elements:

> (1) the issue sought to be precluded from relitigation is identical to that decided in a former proceeding;
>
> (2) the issue was actually litigated in the former proceeding;
>
> (3) the issue was necessarily decided in the former proceeding;
>
> (4) the decision in the former proceeding is final and on the merits; and
>
> (5) the party against whom preclusion is sought was the same as, or in privity with, the party to the former proceeding.

*In re Plyam*, 530 B.R. 456, 462 (B.A.P. 9th Cir. 2015) (citing *Lucido v. Super. Ct.*, 51 Cal. 3d 335, 341 (1990)); *see also In re Howell*, No. 6:13-BK-29922-MH, 2021 WL 1328588, at *5 (B.A.P. 9th Cir. Apr. 9, 2021), *aff'd*, No. 21-60031, 2023 WL 5925886 (9th Cir. Sept. 12, 2023).

Specifically, the Trustee contends that in Bistline III, the district court granted summary judgment to Freddie Mac, finding that Claimant "failed to 'offer any evidence suggesting she

suffered any damage' or 'injury' as a result of Freddie Mac's alleged breach." Sur-Response ¶ 5; Reply ¶ 72; Reply Exhibit Z. The Ninth Circuit affirmed this finding, stating: "[b]ecause Bistline failed to produce any evidence that she suffered damages, evidence which was solely in her possession, we will affirm the district court's judgment." Reply ¶ 22; Reply Exhibit U.

The Trustee argues that although the rulings in Bistline III involved only Freddie Mac, Claimant is barred by collateral estoppel from relitigating these issues against Debtors. Reply ¶ 63. Claimant does not address issue preclusion regarding the Bistline III judgment. She merely argues that none of her Claim for monetary damages against Ditech were actually litigated in Bistline III, which according to Claimant was dismissed based on the Rooker-Feldman doctrine. Sur-Reply p. 15, lines 3, 10.

First, the Court finds the issues are identical. In Bistline III, the district court addressed whether Claimant suffered damages from the foreclosure activities that she was taking issues with. The court stated: "[r]egardless of whether a sale took place, Plaintiff has not stated any damages she has in fact suffered." Reply Exhibit Z at 10. The court noted that while "Plaintiff argues several categories of damages a plaintiff bringing a wrongful foreclosure claim can recover —including damages to credit, infliction of emotional distress, and punitive damages," Plaintiff did "not argue that she has in fact suffered any of those damages here." *Id.* The Ninth Circuit affirmed this ruling, stating: "we conclude that the burden shifted to Bistline to produce evidence that she in fact suffered damages here. Because Bistline failed to produce any evidence that she suffered damages, evidence which was solely in her possession, we will affirm the district court's judgment." Reply Exhibit U at 5.

In her Claim, she asserts that Ditech's foreclosure activities related to the same alleged November 2016 foreclosure that caused her damages. The issue of whether Claimant suffered damages from these foreclosure activities is the same issue that was decided in Bistline III.

Second, the issue was actually litigated in Bistline III. Under California law, "[a]n issue is actually litigated '[w]hen [it] is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined . . . . A determination may be based on a failure of . . . proof . . . .'" *Mills v. U.S. Bank*, 166 Cal. App. 4th 871, 896 (2008). In Bistline III, both the district court and the Ninth Circuit expressly addressed the damages issue. The district court conducted a thorough analysis of Claimant's breach of contract and wrongful foreclosure claims arising out of her Mortgage, and determined that Claimant could not establish damages as a matter of law. Reply Exhibit Z at 8-10. The district court specifically found that Claimant had "not stated any damages she has in fact suffered." *Id*. The court emphasized that Claimant's failure to provide evidence of damages was "especially problematic" considering that Claimant "currently has possession of, owns, and lives in the Subject Property." *Id*.

Significantly, Claimant directly contested this damages determination on appeal to the Ninth Circuit. As noted in the Ninth Circuit decision, "Bistline contends that the district court erred in holding that Freddie Mac met its burden of production with respect to Bistline's wrongful foreclosure claim." Reply Exhibit U at 4. She specifically argued "that Freddie Mac only provided evidence negating Bistline's claim for economic damages and argues that because Freddie Mac did not provide evidence negating Bistline's claim for damages arising from emotional distress, Freddie Mac did not meet its burden of production and Bistline should not have been required to produce evidence that she suffered emotional harm." *Id*. The Ninth Circuit expressly rejected this argument, finding that "Freddie Mac met its burden of production" and that "the burden shifted to

Bistline to produce evidence that she in fact suffered damages here." *Id.* at 5. This record clearly demonstrates the issue was properly raised, vigorously contested, submitted for determination, and determined.

Third, the issue of damages was necessarily decided in Bistline III. The district court's finding that Claimant had "not stated any damages she has in fact suffered" was central to its dismissal of her claims, as damages are an essential element of those claims. Reply Exhibit Z at 10. The Ninth Circuit addressed and affirmed this finding, explicitly concluding that "Bistline failed to produce any evidence that she suffered damages, evidence which was solely in her possession." Reply Exhibit U at 5. The Ninth Circuit's resolution of the damages issue formed the explicit basis for its affirmance of the district court's judgment. This determination was both necessary to the final judgment and the product of full adversarial litigation on this precise issue.

Fourth, the Court finds there was a final judgment on the merits. The district court's grant of summary judgment to Freddie Mac in Bistline III was affirmed by the Ninth Circuit on May 25, 2022. Reply ¶¶ 22-23; Reply Exhibit U. While Claimant argues that Bistline III did not adjudicate her Claim against Ditech due to the bankruptcy stay, this argument misses the crucial point: the Ninth Circuit's ruling conclusively determined that Claimant failed to prove she suffered any damages whatsoever from the foreclosure activities. The Ninth Circuit explicitly stated that "Bistline failed to produce any evidence that she suffered damages, evidence which was solely in her possession." Reply Exhibit Z at 10. This finding is not limited to claims against Freddie Mac but represents a determination about the absence of damages resulting from the foreclosure events—the same damages Claimant now seeks from Ditech. The bankruptcy stay prevented litigation against Ditech specifically, but it did not prevent the court from making factual determinations about whether Claimant suffered damages from the events underlying the Claim.

The Ninth Circuit's affirmance conclusively resolved this fundamental issue, making the judgment final and applicable to Claimant's Claim regardless of which entity she pursues.

Fifth, the Court finds Ditech and Freddie Mac were in privity for purposes of issue preclusion. Claimant argues "Ditech, as the mortgage servicer and Freddie Mac, the beneficiary are jointly and severally liable to Claimant for violations of California's HBOR." Sur-Reply, p. 9, lines 6-11. Indeed, the relationship between Ditech as servicer and Freddie Mac as owner of the mortgage establishes privity for purposes of issue preclusion, since a mortgage servicer acts as an agent of the owner of the loan instrument, and California courts have consistently recognized this relationship creates privity. In *Nelson v. Wells Fargo Bank, N.A.* No. B229120, 2012 WL 695527, at *5 (Cal. Ct. App. Mar. 5, 2012), the California Court of Appeal noted that "'[a] loan servicer acts only as the agent of the owner of the instrument,'" and held that "[t]he loan servicer is in privity with the owner of the loan instrument." (citations omitted). Similarly, in *Shetty v. Ameriquest Mortg. Co.,* No. B315537, 2023 WL 411410, at *6 (Cal. Ct. App. Jan. 26, 2023), the court found that multiple loan servicers were in privity with each other because they "share[d] 'an identity or community of interest'" such that they acted as "virtual representatives" of each other in litigation. Courts have consistently recognized that mortgage servicers and owners of mortgages share a sufficient commonality of interest to establish privity. *Best v. Bank of Am.*, No. 14-CV-6546, 2015 WL 5124463, at *3 (E.D.N.Y. Sept. 1, 2015) ("district courts generally have found there to be privity between a mortgage servicer and the owner of [the] mortgage."). This principle has been consistently applied across numerous decisions. *See Fequiere v. Tribeca Lending*, No. 14-CV-812, 2016 WL 1057000, at *7 (E.D.N.Y. Mar. 11, 2016) (finding privity where "by [the] plaintiff's own contention, [the party] serviced [the] plaintiff's mortgage"); *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 423 (S.D.N.Y. 2008) ("GMAC's interest in the mortgage loan

was represented by MERS because GMAC serviced the loan at the time of the foreclosure action

. . . ."); *See also Zap v. Federal Home Loan Mortgage Corp.*, 2016 WL 2992147, at \*5-6 (N.D.N.Y.

May 20, 2016) (finding privity between mortgage servicer and owner because they "share an

interest in preserving the value of the loan"); *Gibson v. Bank of Am., N.A.*, No. 16-2689, 2017 WL

11685868, at \*5 (E.D.N.Y. July 14, 2017) (holding servicer and owner in privity where both were

involved in the same alleged misconduct related to loan modification and foreclosure).

The Court finds all elements of issue preclusion under California law are satisfied. The

issue of whether Claimant suffered any damages from the foreclosure activities is identical to the

issue decided in Bistline III, was actually litigated, necessarily decided, and resulted in a final

judgment. Ditech and Freddie Mac were in privity as mortgage servicer and loan owner—a

relationship California courts recognize as establishing privity. Accordingly, issue preclusion

applies, and Claimant's claims against Ditech—all of which arise from the foreclosure activities—

are barred because the Ninth Circuit already determined she suffered no damages from these

activities, which is an essential element of each of her claims. *Kazolias v. IBEW LU 363*, No. 09-

7222, 2010 WL 11655375, at \*4 (S.D.N.Y. June 3, 2010) ("The court has wide discretion when

determining whether to apply collateral estoppel.") (citing *Trs. of ALA-Lithographic Indus.*

*Pension Plan v. Quality Color Graphics, Inc.*, No. 99 CV 11795, 2001 WL 274266, at \*2

(S.D.N.Y. Mar. 20, 2001)).

### *Whether Claimant States a Claim Under California's HBOR*

Although the Court has determined that the Claim is barred by res judicata and issue

preclusion, the Court will nonetheless analyze the legal sufficiency of the Claim under California

state law. This analysis provides another independent ground for dismissal. The Claim as

submitted contained limited documentation, primarily the Clerk's Default, but Claimant's position

has evolved through her Response, Sur-Reply, and accompanying declarations, which collectively present a more expansive narrative regarding the foreclosure activities and their purported consequences. In evaluating whether these claims state a claim for relief, the Court must apply federal pleading standards to assess the validity of state law claims. *See In re Residential Cap.*, LLC, 531 B.R. 1, 12 (Bankr. S.D.N.Y. 2015) ("Federal pleading standards apply when assessing the validity of a proof of claim."), *on reconsideration in part*, 537 B.R. 161 (Bankr. S.D.N.Y. 2015). The parties do not dispute that federal procedural law governs this analysis, as evidenced by their citations to federal procedural authorities. Under these standards, the Court must be mindful "[a] federal court in this position must apply the law of the state as it exists, and must not engage in an attempt to change or expand state substantive law." *In re WorldCom, Inc.*, 368 B.R. 308, 331 n.5 (Bankr. S.D.N.Y. 2007), *aff'd*, No. 07-10507, 2010 WL 11530595 (S.D.N.Y. May 25, 2010), *aff'd sub nom. In re Worldcom, Inc.*, 424 F. App'x 32 (2d Cir. 2011).

Claimant alleges that on November 4, 2016, she applied for a first lien home loan modification under California's HBOR. Response at 4; Sur-Reply, p. 10, lines 7-10. She nominated her attorney as her "single point of contact" with Ditech and sent the application both electronically and via certified mail to Ditech's attorney. Bistline Declaration ¶ 17. Claimant explains that after three months, she received a response to her home loan modification application from Ditech on February 17, 2017. *Id.* ¶ 21. She contends that subsequent correspondence between her representative and Ditech contained statements regarding supplemental documentation and alleged that materials were not timely sent despite USPS receipts showing delivery. *Id.* ¶ 22. She contends that while her application was pending, "a public auction foreclosure sale of [C]laimant's property was conducted on November 22, 2016" in violation of California Civil Code § 2923.6, which prohibits a mortgage servicer from conducting a trustee's sale while a complete first lien

loan modification application is pending. Response at 4; Sur-Reply, p. 7, lines 24-27. Claimant asserts that this practice of conducting a foreclosure sale during a pending loan modification application is a violation of California's "dual tracking prohibition." Response at 6; Sur-Reply, p. 11, lines 2-5.

The Trustee argues that Claimant's loan modification application was incomplete, that Ditech was not obligated to consider a new application when Claimant had already been afforded an opportunity for modification, and that any HBOR violation was remedied when Ditech rescinded the foreclosure sale without recording a trustee's deed upon sale. Reply ¶¶ 74-93.

The HBOR legislation was enacted to ensure borrowers have "a meaningful opportunity to obtain available loss mitigation options" while balancing the need for an efficient foreclosure process. Cal. Civ. Code § 2923.4(a). Under former section 2923.6 and current section 2924.11, when a borrower submits a complete loan modification application, a mortgage servicer "shall not record a notice of sale or conduct a trustee's sale" until the borrower has received a written determination. Cal. Civ. Code § 2923.6(c) (former); § 2924.11(a) (current).

A prerequisite for these protections is that the application must be "complete." The statute defines a complete application as one where "a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer." Cal. Civ. Code § 2923.6(h); § 2924.11(f). As the California Court of Appeal explained in *Lewine v. BSI Fin. Servs.*, No. B293975, 2021 WL 235179, at *5-6 (Cal. Ct. App. Jan. 25, 2021), "a borrower is entitled to written notice of a denial of a loan modification application and an appeal therefrom only if the borrower has submitted a *complete* application."

The *Lewine* court addressed a situation similar to this case, where a borrower claimed HBOR violations despite failing to provide all requested documentation. The court held that the

borrower was not entitled to HBOR protections because her application was incomplete as she failed to provide a requested pension benefit statement. *Id.* at \*7. The court emphasized that HBOR's notice and appeal provisions "do not apply to incomplete loan modification applications." *Id.* at \*6.

Here, Claimant alleges she provided Ditech the requested tax paperwork and that the foreclosure was not due to her failure to provide a completed loan modification. Sur-Reply, p. 10, lines 12-13. However, this allegation is conclusory, as she fails to allege what documents were provided. She states she provided an authorization for Ditech to retrieve her signed tax returns from the IRS, but does not allege she provided any other documents. *See id.* In addition, she alleges that Ditech denied her application because she had not supplied Ditech with her signed tax returns. *Id.* In her complaint in Bistline II, she alleges that "at the time she submitted both her November 4, 2016 application and provided the supplemental documentation requested by Ditech on March 10, 2017, her 2016 tax returns were not completed, nor were these tax returns due until April 16, 2017." Reply Ex. N at 19. Although Claimant disputes whether the tax returns were properly requested, claiming Ditech "never notified either the plaintiff or her counsel that 2016 tax returns were needed," *id.*, and that Ditech had only "requested a signed 'Income Tax Document' without describing what a signed 'Income Tax Document' is," *id.* at 20, she does not allege she actually provided the tax documentation Ditech required. Furthermore, although she disputes these requirements, HBOR expressly defers to the mortgage servicer's document requirements in determining completeness. Cal. Civ. Code § 2923.6(h); § 2924.11(f).

Even assuming Claimant had adequately alleged her application was complete, her claim would still fail because HBOR provides no monetary remedy under these circumstances. As explained in *Lacken v. Select Portfolio Serv., Inc.*, No. G053997, 2018 WL 948198, at \*4 (Cal. Ct.

App. Feb. 20, 2018), "[t]he relief available under HBOR depends on whether a foreclosure sale has been conducted." Additionally, HBOR contains a safe harbor provision: "[a] mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not be liable for any violation that it has corrected and remedied prior to the recordation of the trustee's deed upon sale." Cal. Civ. Code § 2924.12(c). This provision was recently applied in *Courtois v. Nationstar Mortg., LLC*, 2025 WL 400048, at *8-9 (Cal. Ct. App. Feb. 5, 2025), where the court found that rescission of a notice of default cured the alleged HBOR violations and triggered the safe harbor protection.

In her later filings, Claimant alleges that after the November 22, 2016 foreclosure sale occurred, "Ditech, realizing that it had violated California law, requested permission from Freddie Mac to 'roll back' the sale, stating to Freddie Mac that the request was being made due to a violation of California law. Freddie Mac agreed to the rescission" Sur-Reply, p. 14, lines 14-17. However, Claimant contends that "because neither Ditech nor Freddie Mac requested a withdrawal of, or caused to be recorded a formal rescission of the Notice of Default and [e]lection to [s]ell," she became "unable to freely market, refinance, or sell the Property" as "title to the Property remained in doubt due to the completed foreclosure sale" Response, p. 5, lines 1-9. Under HBOR's safe harbor provision, a mortgage servicer "shall not be liable for any violation that it has corrected and remedied prior to the recordation of the trustee's deed upon sale." Cal. Civ. Code § 2924.12(c). The statute's plain language indicates that preventing the completion of foreclosure through a recorded trustee's deed is sufficient to trigger the safe harbor, without requiring formal rescission of notices of default.

For these reasons, the Court finds that Claimant has failed to state a claim for violation of California's HBOR. She has not adequately alleged that her loan modification application was complete as defined by HBOR, and even if a violation had occurred, Ditech's rescission of the

foreclosure sale before recording a trustee's deed upon sale precludes monetary recovery under HBOR's safe harbor provision. Cal. Civ. Code § 2924.12(c).

### *Whether Claimant States a Claim for Negligence*

To establish a negligence claim under California law, a plaintiff must demonstrate: (1) the existence of a duty; (2) breach of that duty; (3) causation; and (4) resulting damages. *Paz v. State of California*, 22 Cal.4th 550, 559 (2000); *Sharon P. v. Arman, Ltd.*, 21 Cal. 4th 1181, 1188 (1992). A complaint is fatally defective if it fails to sufficiently plead facts showing a duty of care, injury or damage. *Sinai Temple v. Kaplan*, 54 Cal. App. 3d 1103, 1113 (1976). Claimant alleges that Ditech owed her duties under California's HBOR and Freddie Mac servicing guidelines regarding her home loan modification application. Sur-Reply, p. 9, lines 25-28.

The Trustee argues that California law generally does not impose a duty of care on lenders or loan servicers during modification discussions. According to the Trustee, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089 (1998); *see also Wagner v. Benson*, 101 Cal. App. 3d 27, 35 (1980).

Claimant contends that California's HBOR's provisions are "non-exclusive" under California civil code § 2924.12(h), allowing her to pursue common law negligence claims alongside statutory claims. She relies on *Sciarratta v. U.S. Bank Nat'l Ass'n*, 247 Cal. App. 4th 552 (2016), arguing that personal injury damages resulting from wrongful foreclosure are recoverable. However, section 2924.12(h) merely addresses attorney's fees for prevailing parties in HBOR actions, stating: "[a] court may award a prevailing borrower reasonable attorney's fees

and costs in an action brought pursuant to this section." This provision does not create an independent cause of action or duty.

Claimant's reliance on *Sciarratta* is misplaced. That case addressed whether a homeowner must demonstrate prejudice beyond the wrongful foreclosure itself when the foreclosing entity's interest is void. *Sciarratta*, 247 Cal. App. 4th at 565-566. The court held that when a non-debtholder forecloses, the homeowner suffers prejudice by losing her home to an entity with no legal right to take it. *Id.* at 566. However, *Sciarratta* did not address whether a lender owes a duty of care in processing loan modifications, which is the issue here. Moreover, unlike the entity in *Sciarratta*, Ditech rescinded the foreclosure sale, and Claimant remains in possession of the Property.

The California Supreme Court directly addressed the duty question in *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905 (2022). The court held that "a lender does not owe a borrower a tort duty of care to process, review and respond carefully to a loan modification application." *Id.* at 914. The court's decision was based primarily on the economic loss rule, which "bars recovery in negligence for pure economic losses when such claims would disrupt the parties' private ordering, render contracts less reliable as a means of organizing commercial relationships, and stifle the development of contract law." *Id.* at 923-924.

The *Sheen* court emphasized that the economic loss rule applies when parties are in a contractual relationship and the claim arises from that contract, even if not explicitly asserting breach of contract. *Id.* at 930 ("Plaintiff's claim here is not independent of the original mortgage contract, not because his claim merely relates to the subject of that agreement, but because it is based on an asserted duty that is contrary to the rights and obligations clearly expressed in the loan

contract."). The court determined that imposing a duty to handle loan modifications with due care would contradict the foreclosure rights already established in the mortgage contract. *Id.*

Relevant to this case, the *Sheen* court rejected the argument that mortgage servicers owe borrowers a duty because borrowers are "captive" during the modification process. *Id.* at 931-935. The court explained that borrowers are in this position precisely because of their contractual relationship with the lender or servicer, and this fact does not justify creating a tort duty that would contravene the contract terms. *Id.*

In this case, like in *Sheen*, Claimant had a mortgage contract with Ditech that established their respective rights and obligations. Imposing a duty on Ditech to process loan modifications with due care would impede Ditech's contractual foreclosure rights by adding obligations not contained in the original agreement. Furthermore, Claimant fails to sufficiently allege specific acts constituting a breach of duty or how such breach directly caused her alleged damages. Her claims of emotional distress and financial harm fails to establish causation as well.

For these reasons, under the authority of *Sheen*, Claimant has failed to state a claim for common law negligence.

### Whether Claimant States a Claim for Negligence Per Se

The negligence per se doctrine, codified in section 669(a) of the California Evidence Code, creates a presumption of negligence when a plaintiff establishes: (1) the defendant violated a statute; (2) the violation proximately caused injury; (3) the injury resulted from an occurrence the statute was designed to prevent; and (4) the plaintiff was within the class of persons the statute was designed to protect. *Taulbee v. EJ Distribution Corp.*, 35 Cal. App. 5th 590, 596 (2019).

Claimant alleges in her subsequent filings that Ditech's alleged HBOR violations establish negligence per se. She contends that HBOR's remedies are "non-exclusive" under California Civil

Code § 2924.12(h), citing *Sciarratta* to support her claim for damages. However, *Sciarratta* focused on whether a homeowner must demonstrate prejudice for a wrongful foreclosure claim when the foreclosing entity had no legal right to foreclose. *Id.* at 565-568. The court did not address negligence per se or hold that HBOR violations automatically establish such a claim.

The California Supreme Court in *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905 (2022), while primarily addressing common law negligence, also provided guidance relevant to negligence per se claims based on HBOR violations. The Court carefully examined HBOR's statutory framework and found it significant that the legislature created a comprehensive scheme with specific remedies for violations. *Id.* at 947.

Specifically, the *Sheen* court observed that "neither HBOR nor any other state or federal statute or regulation applies here to impose a duty along the lines sketched by plaintiff." *Id.* at 921. While discussing HBOR, the court emphasized the role of the legislature in creating statutory remedies: "[t]he Legislature, on the other hand, 'has at its disposal a wider range of options and superior access to information about the social costs and benefits of each' policy." *Id.* at 944 (quoting *Aas v. Superior Court*, 24 Cal. 4th 627, 652 (2000)). The court concluded that the legislature could determine whether for additional homeowner protections could be afforded but declined to create a judicial remedy. *Id.* at 947. This reasoning applies equally to negligence per se claims, which would effectively create a judicial remedy beyond what the legislature established in HBOR. The *Sheen* court recognized that the California Legislature "have passed detailed regulations specifying in minutia the obligations of lenders" and concluded that layering tort liability on top of this framework would be inappropriate. *Id.* at 945.

Here, Claimant's November 4, 2016 application was submitted after she had already been afforded an opportunity for evaluation, and the application was incomplete as she failed to provide

required documentation. Since the predicate statutory violation has not been adequately alleged, the negligence per se claim cannot succeed. Moreover, following *Sheen's* guidance, recognizing a negligence per se claim based on alleged HBOR violations would create a judicial remedy beyond what the legislature intended.

Additionally, Claimant makes only generalized assertions about damages without establishing a causal connection between specific statutory violations and particular injuries. Conclusory statements about harm from HBOR violations are insufficient without factual allegations establishing how each alleged violation caused damages.

For these reasons, Claimant has failed to state a claim for negligence per se.

### Whether Claimant Has Stated a Claim for Fraud

Under California law, fraud is defined as an "intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." Cal. Civ. Code § 3294(c)(3). The elements of fraud are: (1) a misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).

Claimant alleges Ditech committed fraud by making a series of "material and intentional written misrepresentations of facts" regarding her loan modification application. Reply Exhibit N, ¶ 76. Specifically, she alleges Ditech: (1) failed to timely acknowledge receipt of her application; (2) falsely claimed her supplemental documentation was untimely; (3) falsely claimed she failed to provide required tax returns that had never been previously requested; and (4) delayed the modification process to secure a higher interest rate or attract buyers at a trustee's sale. *Id.* ¶¶ 73-105.

The Trustee argues Claimant fails to meet the particularity requirements of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Rules 9(b). A party must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). In a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991).

Regarding Claimant's assertion that a principal payment of $276,953.53 was never properly credited, the Court finds this lacks the specificity required by Rule 9(b) and fails to meet basic plausibility standards. Claimant's declaration merely states that in 2013, "a principal payment of $276,953.53 was received by Ocwen." Bistline Declaration ¶ 10. This statement does not specify who made this alleged payment, when exactly in 2013 it was made, by what method it was transmitted, or how Claimant confirmed it was received. In addition, despite alleging this substantial payment occurred in 2013, Claimant indicates she continued making monthly payments through August 2012 and only later suspended payments after receiving no response to her inquiries about an accounting discrepancy. *Id.* ¶¶ 5-6, 10-12. She does not allege that an accounting discrepancy referenced relates to the alleged $276,953.53 payment. During this same timeframe, she was seeking loan modifications from multiple lenders. *Id.* ¶¶ 6-7. Without specifying what "the issue" refers to, Claimant states she "escalated the issue with Freddie Mac," and received only the generic response to "take up this issue up with the mortgage servicer." *Id.* ¶ 10, with no further details provided about follow-up actions or responses. The declaration does not specify whether this issue directly concerned the alleged principal payment.

65

Claimant fails to provide the full names of the Ditech employees involved, their authority to speak on behalf of Ditech, or the complete content of the alleged misrepresentations. The Court agrees with the Trustee that these deficiencies render the fraud claim inadequately pled under Rule 9(b)'s heightened standard. In addition, the Court finds Claimant's chronology simply not plausible; after claiming to have made a significant principal payment, she continued making monthly payments and pursued loan modifications. *See In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 424 (S.D.N.Y. 2021), *aff'd sub nom. Tapinekis v. Pace Univ.*, No. 22-1058-CV, 2024 WL 2764146 (2d Cir. May 30, 2024) ("[W]here a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss."); *see also Pierce v. Fordham Univ., Inc.*, No. 15-CV-4589, 2016 WL 3093994, at *2 (S.D.N.Y. June 1, 2016), *aff'd*, 692 F. App'x 644 (2d Cir. 2017) ("It is well established that, where a plaintiff's 'own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss.'").

More fundamentally, the Trustee argues Claimant fails to adequately plead damages resulting from the alleged fraud. The Court credits that argument. The case of *Orozco v. JPMorgan Chase Bank, N.A.*, No. D059878, 2013 WL 2484776 (Cal. Ct. App. June 11, 2013) is instructive.

In *Orozco*, the California Court of Appeal emphasized that "[t]o recover for fraud, the plaintiff must prove 'detriment proximately caused' by the defendant's tortious conduct. Deception without resulting loss is not actionable fraud." *Id*. at *4 (quoting *Goehring v. Chapman University*, 121 Cal. App. 4th 353, 364 (2004)). The court explained that under California law, a defrauded party is limited to recovering out-of-pocket damages that restore the plaintiff to the financial position enjoyed before the fraudulent transaction. *Id*.

As relevant here, the *Orozco* court rejected the plaintiff's damage theory based on alleged fraud, stating: "[e]ssentially, Orozco seeks to recover monetary damages for his own or a third party's lost opportunity to overspend, and he has not cited nor have we located any authority providing for such recovery." *Id.* at *4. The court also rejected claims for loss of potential future profits from property appreciation as "too remote, speculative, or uncertain" for a viable fraud claim. *Id.* at *5.

Here, Claimant contends she is entitled to "monetary damages for any amounts of interest she *would* have to pay after November 4, 2016, *should* she refinance the Property at the current interest rate." Reply Exhibit N ¶ 103 (emphasis added). This theoretical damage calculation based on what she might pay in the future if she were to refinance is precisely the type of speculative "lost opportunity" damages rejected in *Orozco*. She does not allege she actually refinanced at a higher rate or suffered concrete out-of-pocket losses directly attributable to Ditech's alleged misrepresentations.

Similarly, Claimant's allegations regarding her credit score (Bistline Declaration ¶¶15-16), or she was "unable [to] freely market, refinance, or sell the property," (Response, p. 5, lines 2-6), echo the speculative damages rejected in *Orozco*. She fails to allege specific transactions that were thwarted or concrete financial losses that resulted directly from Ditech's alleged fraud rather than from her own default status.

The Court agrees with the Trustee that Claimant fails to state a claim for fraud because she has not adequately pleaded damages resulting from the alleged fraud. As in *Orozco*, Claimant's speculative claims about potential refinancing costs and lost opportunities are insufficient to support a fraud claim as a matter of law.

### *Whether Claimant States a Claim Under the California RFDCPA*

In her Response, Claimant alleges that Ditech violated RFDCPA. She claims she was "harassed at all hours of the day and night by people coming onto the property to inspect it due to a second notice of trustee's sale that Ditech instructed to be published and posted on the Property, which she received in March 2018." Response, p. 5, lines 10-15; *see also* Bistline Declaration ¶ 23. She also contends that Ditech "illegally charged" her for mortgage insurance and property taxes "as [a] debit towards an escrow account, even though she opted out of both at the time she entered the Subject Loan and is current with both." Response, p. 5, lines 15-20.

The RFDCPA prohibits debt collectors "from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts . . . . Banned practices include threats of physical violence, harassment, use of profane language, calls to third parties in attempts to collect a debt, and false representations about the identity of the debt collector. *Barcarse v. Arvest Cent. Mortg. Corp.*, No. 2D CIV. B290707, 2019 WL 1915223, at *5 (Cal. Ct. App. Apr. 30, 2019)

The Trustee argues that Claimant fails to state a viable claim under RFDCPA. The Court agrees with the Trustee.

First, the Court finds Claimant does not adequately allege Ditech engaged in behaviors prohibited by RFDCPA, such as threats, use of profane language, harassment, or telephone calls without identification. While she claims she was harassed by "unknown" people coming onto the Property, she does not allege any facts establishing that Ditech was directly responsible for these actions or how Ditech would be liable for third parties under RFDCPA.

Second, the Court finds Claimant's allegations concerning the notice of trustee's sale are insufficient. She alleges Ditech instructed publication of this notice but provides no factual basis

for this assertion. Moreover, she does not allege how the publication of a notice of trustee's sale, a standard step in California's non-judicial foreclosure process, would constitute a violation of RFDCPA's prohibitions.

Third, the Court finds Claimant's allegations regarding improper charges for mortgage insurance and property taxes lack sufficient factual detail. She declares that when she initially entered the agreement, she had "opted out of monthly charges for homeowner's insurance and property taxes to [be] held in an escrow account." Bistline Declaration ¶ 4. Despite providing JPMorgan Chase Bank supporting documentation of this agreement, she contends that various servicers continued to impose such charges. *Id.* ¶ 5. She makes a conclusory statement that she was "illegally charged" but fails to provide basic facts such as why these charges were improper, how Ditech was involved, whether Ditech lacked any basis for imposing them, or how the charges violated her agreement. More importantly, Claimant does not explain how such charges, even if improper, would constitute prohibited conduct under RFDCPA against Ditech.

Moreover, California courts have consistently held that actions taken to facilitate a non-judicial foreclosure do not constitute "debt collection" under RFDCPA. In *Dumalanta v. OneWest Bank, N.A.*, the court explained that "actions taken to facilitate a non-judicial foreclosure, such as sending the notice of default and notice of sale, are not attempts to collect 'debt' as that term is defined by the [the Act]." No. H043002, 2017 WL 5591733, at *2 (Cal. Ct. App. Nov. 21, 2017). The court reasoned that "the object of a non-judicial foreclosure is to retake and resell the security, not to collect money from the borrower." *Id*.

Similarly, in *Barcarse*, the California Court of Appeal emphasized that "[t]he non-judicial foreclosure scheme would be eviscerated if a borrower undisputedly in default could allege that foreclosure is an unfair debt collection practice under RFDCPA." 2019 WL 1915223, at *5. The

court further explained that non-judicial foreclosure "does not in and of itself collect a debt, but rather calls for the vesting and divesting of title to real property according to the parties' prior agreement." *Id.*

This principle is echoed in *Starr v. OneWest Bank, FSB*, where the court plainly stated that "foreclosing under a trust deed is not debt collection under the [RFDCPA]." No. G047442, 2013 WL 5937004, at *3 (Cal. Ct. App. Nov. 6, 2013). The court clarified that RFDCPA applies specifically to the collection of consumer debts arising from consumer credit transactions, which is distinct from the foreclosure process.

Claimant's allegations fundamentally relate to Ditech's foreclosure activities—specifically the publishing of a notice of trustee's sale and potential hazard insurance requirements. Even accepting all her factual allegations as true, these activities fall outside the scope of RFDCPA based on established California law. Even accepting Claimant's allegations regarding the status of her loan, the activities she describes fall within California's non-judicial foreclosure process, which California courts have consistently held are outside the scope of RFDCPA as they do not constitute "debt collection" under the statute.

The Court finds that Claimant has failed to state a claim for relief under RFDCPA.

**Whether Claimant is Entitled to Leave to Amend the Claim**

Claimant requests leave to amend her Claim under Rule 15(a). However, where the bar date to file a proof of claim has passed and a creditor seeks to file an amended proof of claim, "the decision to allow the amendment of the claim is committed to the discretion of the bankruptcy judge." *In re Residential Capital, LLC*, 507 B.R. 477, 493 (Bankr. S.D.N.Y. 2014) (quoting *In re Asia Global Crossing, Ltd.*, 324 B.R. 503, 507 (Bankr. S.D.N.Y. 2005) (internal citations omitted)). "Federal Rule of Bankruptcy Procedure 3003(c)(3) directs bankruptcy courts to

establish a bar date beyond which proofs of claim are disallowed in a chapter 11 case. The bar date

is critically important to the administration of a successful chapter 11 case for it is intended to be

a mechanism providing the debtor and its creditors with finality." *Id*. (internal quotations and

citations omitted).

In making its determination, courts apply a two-step inquiry, evaluating (1) whether the

amended claim relates back to the original proof of claim and (2) whether it would be equitable to

allow the amendment. *Id*. at 494. A claim relates back to the original if it corrects a default,

describes the claim with greater particularity, or pleads a new theory of recovery based on the same

facts. *Id*. In assessing whether an amendment is equitable, courts consider the following five

factors:

> (1) undue prejudice to opposing party;
>
> (2) bad faith or dilatory behavior on the part of Claimant;
>
> (3) whether other creditors would receive a windfall were the amendment not allowed;
>
> (4) whether other claimants might be harmed or prejudiced; and
>
> (5) the justification for the inability to file the amended claim at the time the original claim was filed.

*Id*.

Here, Claimant requests to amend her Claim based on purported "vast amount of evidence"

discovered in the four years following the Claim's filing. Sur-Reply, p. 16, lines 24-27. However,

amendment would be futile for three independent reasons. First, as thoroughly analyzed above, the

Claim is barred by res judicata based on the final judgment in Bistline I, where the same primary

right—her ownership interest in the Property in relation to the foreclosure activities—was litigated

to conclusion. Second, her Claim is precluded by issue preclusion based on the Bistline III finding

that she suffered no damages from the foreclosure activities—a determination made after full discovery and litigation on this precise issue. Third, even considering the merits, she fails to state a claim under HBOR, negligence, negligence per se, fraud, or RFDCPA. The Court finds that amendment would not overcome the legal barriers facing Claimant's case. Furthermore, Claimant has already had multiple opportunities to present her case here—filing duplicate claims 324, 325, and 21488, and submitting both a Response and Sur-Reply in this proceeding—yet has consistently failed to articulate a legally sufficient claim. Given this extensive litigation history spanning multiple forums and her repeated unsuccessful attempts to relitigate the same controversy, allowing amendment would merely perpetuate piecemeal litigation without any reasonable prospect of a different outcome. The Court therefore denies her request for leave to amend. *See Gen. Star Indem. Co. v. Platinum Indem. Ltd.*, No. 00-4960, 2002 WL 31159106, at *2 (S.D.N.Y. Sept. 27, 2002) ("The allowance or denial of an opportunity to amend a complaint is within the discretion of the district court.").

## CONCLUSION

For the foregoing reasons, the Court sustains the Objection and disallows the Claim.

IT IS SO ORDERED.


Dated:  May 3, 2025
      New York, New York


                          /s/ *James L. Garrity, Jr.*
                          Hon. James L. Garrity, Jr.
                          U.S. Bankruptcy Judge